*AP-76,207*

***** **DEATH PENALTY** *****
## Volume Two

# C L E R K ' S   R E C O R D

Volume of __2__ Of __3__
Trial Court Cause Number __F08-24667-Y__
In the __CRIMINAL__ District Court __NO. 7__
of Dallas County, Texas,

Honorable __MIKE SNIPES__, Judge Presiding.

_____

__THE STATE OF TEXAS__ , Plaintiff

vs.

__JAMES GARFIELD BROADNAX__ , Defendant

_____

Appealed to the Court of
Criminal Appeals of Texas at Austin, Texas

_____

Name __John Tatum__
Address __990 S. Sherman, Richardson, TX  75081__
Telephone No. __972.705.9200__
Fax No. __972.690.9901__
SBOT No. __19672500__
Attorney for: __James Garfield Broadnax__

**FILED IN
COURT OF CRIMINAL APPEALS

JAN 06 2010

Louise Pearson, Clerk**

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas
_____ day of _____ , _____ .

Signature of Clerk _____
Name of Clerk _____
Title _____

_____

Appellate Court Cause No.
Filed in the Court of Criminal Appeals of Texas at Austin, Texas
this __18th__ day of __December__ , __2009__ .

GARY FITZSIMMONS, DALLAS COUNTY DISTRICT CLERK

By __Ana McDaniel__ , Deputy

SCANNED

_____ DATE

JAMES GARFIELD BROADNAX                              PAGE    4

F08-24667-Y

=============================================================

Motion to Quash Subpoena    (01 Jun 09)                    Vol. 2-280

Supplemental Motion to Quash Subpoena and Motion          Vol. 2-285
for Reconsideration of Non-Party Shaun Rabb    (01 Jun 09)
Exhibit 1, Exhibit A, B, C, D, E. F, G, H, I, Exhibit 2, Exhibit 3,
Exhibit A (Sharla Alford), Exhibit B (Ellen Goldberg), Exhibit 4 &
Exhibit 5

Discovery and Notice of Extraneous (5th)                  Vol. 2-370
Discovery 5, Inventory      (04 Jun 09)

State's Response to Motions to Quash Media                 Vol. 2-407
Subpoenas    (09 Jun 09)

State's Notice of Intent to Use Business Records           Vol. 2-414
Accompanied by Affidavit    (10 Jun 09)
- Elizabeth Lutton, Dallas Sheriff's Office

State's Notice of Intent to Use Business Records           Vol. 2-433
Accompanied by Affidavit    (10 Jun 09)
- Scott Seacat, Value Added Communication (VAC)

Reply to State's Response to Motions to Quash             Vol. 2-462
Media Subpoenas of Non-Party Shaun Rabb
Exhibits 1, 2, Exhibit A, & Exhibit 3    (12 Jun 09)

Reply to Response to Motion to Quash Subpoena,            Vol. 2-501
and Motion to Reconsider    (12 Jun 09)

Non-Parties Steve Pickett and Troy Larkins' Joinder        Vol. 2-505
and Adoption of Non-Party Sean Rabb's Supplemental
Motion to Quash Subpoena, Motion for Reconsideration,
and Reply to State's Response to Motions to Quash
Media Subpoenas    (15 Jun 09)
Exhibit 1, 2 & 3 - Exhibit A,  Exhibit 4 - Exhibit A

Non-Party Ellen Goldberg's Motion to Reconsider          Vol. 2-520
Court's Denial of Motion to Quash Subpoena
(15 Jun 09)

JAMES GARFIELD BROADNAX                                    PAGE   5

F08-24667-Y

========================================================================

Amended Order on Movants' Motions to Quash/Denied          Vol. 2-524
(16 Jun 09)

Defendant's List of Expert Witnesses    (22 Jun 09)       Vol. 2-525

State's Potential Witnesses ** Amended June 22, 2009  **   Vol. 2- 527
(Not File Marked)

State's Response to Defense Motion to Disclose             Vol. 2-530
Experts    (Not File Marked)

Defendant's List of Expert Witnesses     (23 Jun 09)      Vol. 2-533

Discovery and Notice of Extraneous   (6th)                Vol. 2-535
(24 Jun 09)

Emergency Motion to Stay Pre-Trial Hearing of             Vol. 2-537
Non-Parties Shaun Rabb, Stephen Pickett, and
Troy Larkins    (24 Jul 09)

Clerk's Certification that Appellate Record is True and   Vol. 2-541
Correct

CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| JAMES BROADNAX | § | CRIMINAL DISTRICT COURT # 7 |

## MOTION TO QUASH SUBPOENA

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rebecca Lopez, a nonparty witness, who files this Motion to Quash Subpoena, as follows:

### I.

Rebecca Lopez is a reporter employed by WFAA-TV in Dallas. Ms. Lopez expects to be present in the courtroom during the trial of this case to report for WFAA-TV.

### II.

On or about May 20, 2009, Ms. Lopez received an email forwarding a subpoena to appear at 8:30 a.m., June 1, 2009. Exhibit 1. Ms. Lopez moves to quash the subpoena for the reasons set forth below.

### III.

The subpoena was not properly served by email in accordance with article 24.04(a)(3) of the Code of Criminal Procedure. Furthermore, the subpoena fails to comport with article 24.01(a) in that there is no trial or evidentiary hearing requiring her testimony set at the time specified in the subpoena.

MOTION TO QUASH SUBPOENA – Page 1
5524441v.1

00280

## IV.

The State has not shown that any knowledge Ms. Lopez may have is both material and favorable to the prosecution in this case. *See Coleman v. State*, 966 S.W.2d 525 (Tex. Crim. App. 1998).

## V.

The subpoena must be quashed under the new shield law, the Free Flow of Information Act (the "Act"), codified as articles 38.11 and 38.111 of the Code of Criminal Procedure. The subpoena has not been signed by District Attorney Craig Watkins as required by the shield law. Article 38.11, section 4(d). Moreover, the broadcast of Ms. Lopez interview of the defendant, which previously was produced to the State by WFAA-TV with a business records affidavit, is self-authenticating. Article 38.111. (These provisions are effective immediately and are not affected by Section 3 of the Act, HB 670.) To the extent the State seeks evidence that has not already been obtained, such as mental impressions not already formed, such newly obtained evidence would not be affected by Section 3 of the Act and therefore is subject to the standards of article 38.11, section 5(a)-(b) which have not been satisfied here.

WHEREFORE PREMISES CONSIDERED nonparty Rebecca Lopez prays that, after hearing the court grant this motion to quash the subpoena and for such other and further relief as to which she may be entitled.

002S1

Respectfully submitted,

Paul C. Watler
State Bar No. 20931600
Shannon M. Zmud
State Bar No. 24047169

JACKSON WALKER, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion to Quash Subpoenas has been served on this the 1st day of June, 2009 in the manner indicated below.

*Via Facsimile or Hand Delivery*
David Alex
Assistant District Attorney
133 N. Industrial Blvd.
Dallas, TX 75207

Shannon M. Zmud

**MOTION TO QUASH SUBPOENA** – Page 3
5524441v.1

00282

**From**: BARGER DAVID N <DAVID.BARGER@dallascounty.org>
**To**: Lopez, Rebecca
**Cc**: ALEX DAVID M <DAVID.ALEX@dallascounty.org>
**Sent**: Wed May 20 19:54:25 2009
**Subject**: Broadnax Cap Murder Trial

Rebecca,

I've attached a subpoena for 6/1/09 in CDC #7, Judge Michael Snipes' court. You or the station's attorney can contact Asst. D.A. David Alex with any questions. His cell #972-983-2900. I will also deliver a copy of the subpoena to Sandy Roten in your legal department.

Thanks.

David

Lt. David Barger
Dallas District Attorney's Office
Investigation Division
133 N. Industrial Blvd. LB 19
Dallas, TX  75207-4399
214-653-3614
http://dallasda.com/investigation-division.html

00283

Case 3:15-cv-01758-N   Document 38-6   Filed 06/28/16   Page 8 of 165   PageID 910

THE STATE OF TEXAS
TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
OF THE STATE OF TEXAS – GREETINGS:
YOU ARE HEREBY COMMANDED TO SUMMON

REBECCA LOPEZ, WFAA CH 8 NEWS
UNKNOWN
DALLAS, TEXAS

To be and appear before the <u>CRIMINAL</u> District Court   <u>#7</u> of Dallas County, Texas at the courthouse of said County, in the City of Dallas, on the <u>1ST</u> day of <u>JUNE</u> , 20 <u>09</u> , at <u>8:30</u> o'clock <u>A.</u> M., Then and there to testify as a witness in behalf of the <u>STATE</u> in a criminal Action pending in said court, wherein THE STATE OF TEXAS is plaintiff, and <u>JAMES BROADNAX</u> Defendant N o. <u>F08-24667-Y</u>

**DUECES TECUM** (IF APPLICABLE)                    ☒ NOT APPLICABLE
and that he bring with him and produce in said Court, at said time and place,

desired as evidence in said Criminal action, to-wit:  in a certain suit pending in said court.

and there remain from day to day and from term to  term until discharged by the Court HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

**OUT OF COUNTY** (IF APPLICABLE)                    ☒ NOT APPLICABLE
DISOBEDIENCE OF this Subpoena is punishab le by fine not exceeding $500, to be collected as fines and costs in other criminal cases.

WITNESS MY OFFICIAL SIGNATURE. THIS   20TH day of  MAY , 20 09

Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas

By _____ Deputy
         T. JACKSON

---

NO F08-24667-Y

CRIMINAL DISTRICT COURT #7
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS
VS.

JAMES BROADNAX.

CAPITAL MURDER

SUBPOENA

ISSUED
This <u>20TH</u> day of <u>MAY</u>, 20 <u>09</u>
Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas
By <u>T. JACKSON</u> Deputy

ATTORNEY:

DAVID ALEX
ASSISTANT DISTRICT ATTORNEY
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207
214-653-3600

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS, TEXAS  75207

Cause No. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | DALLAS COUNTY TEXAS |
| | § | |
| JAMES BROADNAX | § | CRIMINAL COURT # 7 |

## SUPPLEMENTAL MOTION TO QUASH SUBPOENA AND MOTION FOR RECONSIDERATION OF NON-PARTY SHAUN RABB

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Shaun Rabb ("Rabb") non-party in the foregoing matter and files this Supplemental Motion to Quash Subpoena and Motion for Reconsideration and would respectfully show the Court the following:

### I.
### INTRODUCTION

On May 27, 2009, Rabb filed a Motion to Quash, including a request for a hearing, in the foregoing case relying upon the newly enacted reporter's privilege. *See* Exhibit 1. On May 28, 2009, this Court entered an Order Denying the Motion to Quash without a hearing. *See* Exhibit 2. The Court ruled that the newly enacted reporter's privilege did not apply because by its terms, "this Act applies only to information, documents, or items or the source of any information, document or item obtained or prepared for publication in a news medium or communication service provider on or after the effective date of this Act." The Court held that the Act does not apply retroactively. Rabb respectfully disagrees with this holding and files this Motion in support of same. On May 29, 2009, non-party Ellen Goldberg (an NBC reporter) filed a Motion to Quash based on defective service of subpoena, the best evidence rule, and the statutory reporter's privilege. *See* Exhibit 3. Rabb supports Goldberg's Motion and files this Motion expanding on Section 3 of the statutory reporter's privilege and its applicability and asserting common law bases for granting the motion to quash.

00285

## II.

## PROCEDURAL BACKGROUND AND SUMMARY OF ARGUMENT

On or about June 23, 2008 Rabb, a reporter for KDFW Fox 4 ("KDFW"), conducted an interview of defendant James Broadnax ("Broadnax"). The entire interview was taped and has been posted, in its entirety, on the KDFW website since shortly after the interview was conducted.[1] Rabb was not the first reporter to interview Broadnax. Before Broadnax spoke to Rabb, he gave interviews to several other local television stations. Shortly thereafter, the Dallas County District Attorney's Office (the "DA's Office"), subpoenaed the video outtakes of these interviews from the television stations, including KDFW. Like other stations, KDFW complied with the subpoena, producing all tapes of its interview with Broadnax. *See* Exhibit 1(B). To alleviate any need for further production or testimony, KDFW also gave the DA's Office an affidavit from the station's custodian of records, which establishes the tapes authenticity as a business record. *See* Exhibit 1(C).

On May 20, 2009, the DA's Office attempted to issue a second subpoena – this time for Rabb to testify as a State's witness in the case against Broadnax. It is not a duces tecum subpoena; therefore, Section 3 of the newly enacted reporter's privilege does not apply to the subpoena at issue. This subpoena is for the reporter – not for the "information, documents or items" gathered by the reporter. *See* Tex. H.B. 670, 81st Leg., R.S. (2009); Act of May 13, 2009, 81st Leg., R.S., H.B. 670 (to be codified at Tex. Code of Crim. Proc. arts. 38.11 and 38.111)(the "Act"). *See* Exhibit 1(D). By the plain meaning of the statute, Section 3 of the newly enacted legislation speaks solely to the items gathered prior to the enactment of the legislation. Section 3 of the Act does not vitiate the testimonial privilege of the reporter, only the product of his or her

---

[1] The entire interview can be found on the KDFW website located at the following link: http://www.myfoxdfw.com/dpp/news/GRAPHIC_VIDEO_F_Victims_Families

**Supplemental Motion to Quash and Motion to Reconsider - Page 2 of 15**

00286

reporting which was gathered prior to the enactment of the bill. The rest of the legislation is effective immediately as provided by Section 4 of the Act. *See also,* Exhibit 1(E). Furthermore, the procedural requirements of the Act, including that the subpoena be signed by the elected District Attorney are in immediate effect and have not been complied with herein.

Finally, there are multiple common law bases for granting Rabb's Supplemental Motion to Quash including the fact that the reporter's testimony is not the best evidence of the statements made by Rabb, and the best evidence has already been produced to the State in the form of the authenticated interview in its entirety. The reporter's fuzzy recollection of an interview that took place almost a year ago is not relevant nor is it material to the State's case and it is merely cumulative and duplicative of information that the State has from the three other reporters subpoenaed as well as all of the interviews produced by each of them. The speculative nature of any testimony Rabb could provide would be highly prejudicial, misleading and confusing and not admissible under Rule 403; and, more importantly, any opinions that he formed and espoused would be subject to objection for invading the province of the jury and irrelevant and inadmissible as an opinion by a non-expert. Finally, the subpoena at issue does not comply with Texas Code of Criminal Procedure 24.03, and there is no reason – other than harassment – to require one to be present on June 1, 2009 when the pretrial hearing is set for seven weeks later.

## III.
## ARGUMENTS AND AUTHORITIES

Rabb did not witness the crime and has no personal knowledge pursuant to Rule 602 regarding any potential criminal conduct nor does he have discoverable knowledge regarding the underlying issues. Rabb conducted a jailhouse interview after-the-fact, much like the three other reporters who have been subpoenaed to appear before the Court. His was not the first of the interviews, and the entirety of what was said to him has been produced to the DA's Office.

00287

**A.     The Testimony Sought is Not the Best Evidence as Required by Texas Rule of Evidence 1002.**

Assuming it is the criminal defendant's statements to Rabb that are of interest to the prosecution, a copy of the entire jailhouse interview was provided to the DA's Office with an authenticating affidavit almost a year ago, and the entire interview has been posted on the KDFW website for all the world to see for almost a year now.   Rabb had no additional conversations with the criminal defendant and his recollection of what transpired in one interview almost a year ago is much more speculative than an actual tape of the interview.  Thus, the State already has the best evidence of the interview — an authenticated copy of the interview, a complete rendition of what transpired. *See* Texas Rules of Evidence 1001-1004.

To the extent the State is trying to get Rabb to testify as to Broadnax's state of mind, the best evidence of Broadnax's state of mind during the interview is the taped interview itself. *See* Tex. R. Evid. 1002, 1003; *Overton v. State*, 409 S.W.2d 556, 559 (Tex. Crim. App. – 1973).  In *Overton*, the Court of Criminal Appeals (reviewing a Dallas County District Court ruling) found that the best evidence to prove the contents of documents concerning a robbery was the documents themselves because they were much more reliable, complete and accurate than an employee's description thereof. *See also, Ramsey v. Jones v. Enterprises*, 810 S.W.2d 902 (Tex. App.--Beaumont 1991, writ denied)(documents are best evidence; oral testimony about same is inadmissible).  Rabb cannot recall every detail regarding an interview that took place almost a year ago.  His testimony on this issue would thus be far more speculative and far less reliable than the videotape of the interview itself.  The interview is already available to the Court and the jury, and Rabb's testimony concerning same would be inadmissible.

<u>Supplemental Motion to Quash and Motion to Reconsider</u> - Page 4 of 15

00288

**B.    A Reporter's Mental Impressions Would Be Inadmissible and Invade the Province of the Jury.**

There is also no basis for compelling Rabb to testify about the mental impressions he may have formed during his interview with Broadnax. Nor are those mental impressions admissible. Whatever opinion Rabb has formed is subject to objection of invading the province of the jury and irrelevant, and not admissible as an opinion by a non expert. Rabb's speculative testimony concerning Broadnax's state of mind, based on his imperfect recollection, would be highly prejudicial, misleading and confusing. Tex. R. Evid. 403 (relevant evidence should be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

**C.    Texas Code of Criminal Procedure 24.03 and the Common Law Require the State to Show Rabb's Testimony Would Be Highly Material and Relevant (Not Merely Cumulative).**

Texas Code of Criminal Procedure 24.03 requires that an application for subpoena state that the testimony of the witness is material to the State or to the defense. The subpoena issued to Rabb made no such statement. The requirement of materiality is an important one and is one that has been consistently re-iterated by the Texas Court of Criminal Appeals. Texas courts have made clear that parties in criminal proceedings — whether they are prosecutors or defendants — are barred from subjecting non-party witnesses to the considerable time and expense of appearing in court, unless they make a particularized showing that the testimony sought is highly material and relevant (not merely cumulative) to their case. When a person is subpoenaed as a witness in a criminal case, it is the burden of the party seeking the testimony to establish the matters to which the witness might testify, and the relevance and *demonstrable materiality* of those matters to the success of the prosecution or defense. *See Coleman v. State*, 966 S.W.2d

00289

525, 527-28 (Tex. Crim. App. 1998); *see also*, Texas Rules of Evidence 401 and 402. The Texas Code of Criminal Procedure and case law limit compulsory process to "material" witnesses and evidence. *See* Tex. Code Crim. Proc. art. 24.03; *Coleman*, 966 S.W.2d 525; *Dix & Dawson*, 41 Texas Practice: Criminal Practice & Procedure §27.51 at p. 764 (1995).

Rabb was not an eyewitness to any crime and had no prior (or subsequent) relationship or contact with the criminal defendant. The State has offered nothing to establish that his testimony is relevant and material to the State's case. Once one files to quash such a subpoena, the burden of producing substantial evidence sufficient to overcome the claim shifts to the party issuing the subpoena. *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983); *Dallas Morning News Co. v. Garcia*, 822 S.W.2d 675, 680 (Tex. App. – San Antonio 1991, orig. proceeding); *Channel Two Television Co. v. Dickerson*, 725 S.W.2d 470, 472 (Tex. App. – Hou. [1st Dist.] 1987, orig. proceeding). Thus, the DA's Office, as the issuer of the subpoena, must make a plausible showing to the trial court that Rabb's testimony would be both material and favorable to its position. *See also, Branzburg v. Hayes*, 408 U.S. 665, 92 S. Ct. 2646 (1972). At the time of the issuance of the Court's Order on May 28, 2009, the State was not required to make such a showing – the Motion to Quash was denied without a hearing.

There is nothing material that Rabb can add to the case at hand. His testimony is not needed to authenticate the tape for several reasons. First, it is self-authenticating under the new reporter's privilege. *See* Tex. Code Crim. Proc. art. 38.111. Second, the State has a business records affidavit proving up the interview and has had it for almost a year now. Third, presumably the Jail records all of these conversations, and the State has a copy from the Jail that can be proven up by the jailhouse personnel. Regardless, Rabb's testimony would merely be cumulative of others, and, as such, would not be material under Article 24.03 of the Texas Code

00290

of Criminal Procedure and likely would be inadmissible under Rule 403 — permitting exclusion on the grounds that it would be a "needless presentation of cumulative evidence."

In *Coleman*, the Texas Court of Criminal Appeals confirmed that general rules concerning subpoenas apply when a reporter is subpoenaed from a media organization in a criminal case.[2] More specifically, the Court applied a relevance and materiality test to determine a reporter did not have to testify. In *Coleman*, as here, the reporter's knowledge was duplicative, and therefore, the "relevance and importance" of the testimony could not be shown, and the subpoena issued was properly quashed. 966 S.W.2d 525, 528. *See Gohring v. State*, 967 S.W.2d 459 (Tex. App. – Beaumont 1998, no writ)(court granted motion to quash subpoena for reporter's notes when party issuing the subpoena made no plausible showing to the court that the reporter's testimony would actually be material and favorable to his theories).

It is important to note that Rabb was not an eyewitness to a crime. It is when a reporter has been the eyewitness to a crime that relevance and materiality have been found by the highest criminal court, and the reporter has taken the stand. *See, e.g., Ex parte Grothe*, 687 S.W.2d 736 (Tex. Crim. App. 1984); *Healey v. McMeans*, 884 S.W.2d 772 (Tex. Crim. App. 1994).[3] The facts in this case, however, are similar to those in *State v. Lyon* and *Campbell v. Klevenhagen* because the party subpoenaed was not an eye-witness to criminal activity. *See State v. Lyon*, 19 Med. L. Rptr. 2153 (Dallas Crim. Dist. Ct. 1991)[4](notes taken by reporters at press conference held by murder defendant and his attorney are not necessary or critical to maintenance of prosecution); *see also, Campbell v. Klevenhagen*, 760 F. Supp. 1206, 18 Med. L. Rptr. 2113

---

[2] This is the most recent case from the highest criminal court in the State addressing the issue.

[3] In *Healey v. McMeans* and in *Ex parte Grothe*, the materials held by the news organization were actual photographs of the crime taking place and incriminating comments about the crime at issue made by the accused — both of which were crucial to the case and could not be obtained from alternative sources. Rabb, in our case, has no such critical information or knowledge.

[4] A true and correct copy of which is attached hereto as Exhibit 4 for the Court's convenience.

00291

(S.D. Tex. 1991)(reporter was not required to disclose his confidential source in a murder trial where evidence sought from reporter was speculative, hearsay, and cumulative). In both *Lyon* and *Klevenhagen*, the reporter did not have to take the stand. In *Lyon*, the Dallas County Judge granted the motion to quash because the need for the information sought was speculative and was not material and relevant to the merits of the case. In *Klevenhagen*, the reporter refused to testify before the trial court and was held in contempt of court. The contempt ruling was overturned when the latter court found the evidence sought was cumulative. Unlike the materials sought in *Healey* and *Grothe* where the reporter was forced to testify, there is absolutely nothing that Rabb could testify about that the parties do not already possess and that would in any way impact the outcome of this case.

**D.    Section 3 of the Statutory Reporter's Privilege Does Not Apply to the Testimonial Privilege – It Only Applies to Material Produced by a Reporter.**

As mentioned in Rabb's prior Motion to Quash, Texas has recently enacted a reporter's privilege entitled the Texas Free Flow of Information Act. *See* Act of May 13, 2009, 81st Leg. R.S., H.B. 670 (to be codified at Tex. Code of Crim. Proc. arts. 38.11 and 38.111); Exhibit 1(D). In denying Rabb's Motion to Quash, this Court relied on Section 3 of the Act as a basis for ruling that the reporter's privilege does not apply; however, the section relied upon, by its own terms, only applies to <u>information gathered</u> prior to the date of the Act but not to the reporter and the reporter's testimony. The express terms of the section state "This Act only applies *to* information, documents or items ... prepared for publication .. on or after the effective date of this Act." The way that the Court has interpreted this Section, to date, is to read into the Section the word "if" rather than "to" and, by doing so, the Court limits the privilege in its entirety to after May 13, 2009. That is not how the statute reads nor is it what was intended. Courts must follow the plain language in the statute. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *State v.*

<u>Supplemental Motion to Quash and Motion to Reconsider</u> - Page 8 of 15

00292

*Johnson*, 198 S.W.3d 795 (Tex. Crim. App. 2007). The plain language of Section 3 only applies to items gathered prior to the effective date, and those materials have already been produced to the State and are self-authenticating. The reporter cannot be required to testify under the terms of the Act after May 13, 2009. A procedural statute controls litigation from its effective date, and it may be applied to trials for offenses committed before its effective date and to proceedings pending at the time of its enactment. *Goodlow v. State*, 766 S.W.2d 352, 354 (Tex. App. – Texarkana 1989, pet. ref'd); *Rodriguez v. State*, 779 S.W.2d 884, 885 (Tex. App. – Corpus Christi 1989, *aff'd by*, 779 S.W.2d 884 (Tex. Crim. App. 1991). Furthermore, evidentiary rules that are in existence at the time of trial are the ones that should be used. *Musgrove v. State*, 82 S.W.3d 34 (Tex. App. – San Antonio 2002, pet. ref'd). Thus, it is clear that the evidentiary requirements under the new Texas Free Flow of Information Act apply to the trial and pre-trial matters in the case at hand.

**E.    Procedural Changes in the Law Are Not Prohibited by the Ex Post Facto Clause, and Courts Have Universally Applied them Retrospectively.**

The enactment of a reporter's privilege is a change in procedural law that applies retroactively pursuant to well established Texas law. *See, e.g., Holt v. State*, 2 Tex. 363 (Tex. 1847). Among other things, the special procedural requirement that the elected District Attorney sign subpoenas to media personnel became effective on May 13, 2009, and the subpoena at issue does not comply with the new law. *See* Tex. Code Crim. P. art. 38.11, section 4(d). Further, the provision that broadcasts are self-authenticating is another purely procedural aspect of the legislation that also takes effect immediately and is not affected by Section 3 of the Act. *See* Tex. Code Crim. P. art. 38.111 and H.B. 670 §4.

Procedural changes in the law are not within the prohibition imposed by the Texas Constitution on the retroactive application of laws. *See Grimes v. State*, 807 S.W.2d 582 (Tex. Crim. App. 1991); *Ex parte Allen*, 699 S.W.2d 886 (Tex. App. – Dallas 1985, pet. ref'd). What is

00293

meant by "procedure" in this context refers to changes in the process by which a criminal case is adjudicated as opposed to changes in substantive law of crimes. *Musgrove v. State*, 82 S.W.3d 34 (Tex. App. – San Antonio 2002, pet. ref'd)(the retroactive application of procedural laws is not considered ex post facto). A litigant has no vested right in procedural mechanisms -- even if the change in law results in less testimony being available. *Id.* at 37-38 (Change in Tex. R. Evid. 606(b) concerning circumstances under which a juror can testify is not a violation of the Constitution); *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620 (1898); *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n of Texas*, 573 S.W.2d 502, 504-505 (Tex. 1978); *Cooper v. State*, 769 S.W.2d 301, 306 (Tex. App. – Hou. [1st Dist.] 1989, no pet.).

Because it has long been the law in Texas that the prohibition as to ex post facto laws, Constitution, art. 1, section 14, only extends to substantive changes in the law, it is clear that the reporter's privilege can and should be applied retroactively as to the testimonial privilege for the reporter (as distinguished from the materials subject to Section 3). *See, e.g. Holt v. State*, 2 Tex. 363 (Tex. 1847). Laws which do not amend substantive law by defining criminal acts or providing for penalties are procedural in nature and are not within the prohibition against ex post facto laws. *Ex parte Johnson*, 697 S.W.2d 605, 607 (Tex. Crim. App. 1985); *Rodriguez v. State*, 779 S.W.2d 884 (Tex. App. – Corpus Christi 1989), *aff'd by* 808 S.W.2d 496 (Tex. Crim. App. 1991). The enactment of a reporter's privilege in Texas is not a change in substantive law; thus, it does apply to the testimonial subpoena issued to Rabb in this matter. To preserve his argument under the statutory reporter's privilege as grounds for appeal (if necessary), Rabb asserts that his testimony is covered by the reporter's privilege and is not subject to Section 3 because the journalist's qualified testimonial privilege is broader than the mere items gathered in the newsgathering process. With regard to a reporter being forced to testify, the decision must be

<u>Supplemental Motion to Quash and Motion to Reconsider</u> - Page 10 of 15

governed by the newly established reporter's privilege pursuant to the immediate effect provision contained in Section 4 of the Act.[5] Under the express terms of the Act, unpublished information, would have to be, among other things, central to the investigation or prosecution of the case (and there had to have been exhaustion of alternative sources). Furthermore, the information sought cannot be speculative. *See* Tex. Code of Crim. P. art. 38.11, sec. 5(a)-(b). These and other requirements of the reporter's privilege cannot be satisfied here, and, as a result, Rabb's Supplemental Motion to Quash and Motion to Reconsider should be granted.

F.      **Forcing Rabb (and Other Reporters) to Testify and be Subject to the Witness Rule so They Cannot Report on the Trial would be an Unconstitutional Prior Restraint and Would Violate the First Amendment to the United States Constitution and Article 1, Section 8 of the Texas Constitution.**

The State has subpoenaed reporters from four different television stations who interviewed the criminal defendant to appear and be sworn in more than seven weeks prior to the article 28.01 hearing in this case. Further, the Assistant District Attorney has indicated that he cannot guarantee that the Rule barring witnesses from speaking about the case will not be invoked when the witnesses are sworn in on June 1, 2009. *See* Exhibit 5. Invocation of the Rule would have the practical effect of preventing further coverage by these employees of this trial. In circumstances, such as these, the Court must conduct a First Amendment balancing test. *See Ex parte Grothe*, 687 S.W.2d 736, 740 (Tex. Crim. App. 1984). Invoking the Rule will create an unlawful prior restraint and effectively cease reporting on the trial. The alternative would be to pick a new reporter to cover the trial which would be a person who does not have any familiarity with the case. Further, with the declining number of personnel in Texas newsrooms, there are

---

[5] In Corpus Christi, in a case with facts substantially similar to the ones herein, Judge Sandra L. Watts applied the new law at issue and quashed a subpoena issued to KIII-TV3 and its reporter/journalist, Katy Kiser on May 26, 2009. Like KDFW FOX 4, the KIII-TV 3 reporter had interviewed a criminal defendant almost a year ago, and KIII-TV 3 had already produced a self-authenticating copy of the broadcast at issue to the State. The Court held that the reporter's privilege applied and the reporter did not have to testify. See Exhibit 1(I).

00295

simply fewer reporters to choose from to cover matters. If this Court does not quash the subpoenas, invokes the Rule and shuts down the reporting on this trial, justice will not be served.

### G. Swearing the Witness In Seven Weeks Before Pre-trial and Calling Him To Testify in the Same Case Multiple Times Is Unnecessary and Harassing.

There is no reason for Rabb or any of the other reporters to have to come to court on June 1, 2009. There is no hearing set that day. Further, according to counsel, the Article 28.01 hearing is not set until July 23, 2009. When asked if the June 1, 2009 date could be moved to the same date or shortly before the Article 28.01 hearing, the Assistant District Attorney refused to do so. *See* Exhibit 5. The rationale expressed by the Assistant District Attorney was because he did not want to have the subpoena issued multiple times. This position flies in the face of the very terms of the subpoena which command the person who has been subpoenaed to appear from day to day and from term to term until the judge releases him or her. So, a single subpoena will assure a witnesses' attendance. It is not the proper administration of justice to drag multiple witnesses to a non-event.

Furthermore, compelling testimony of reporters at multiple proceedings in every case in which they have spoken to a litigant, especially in circumstances similar to these,[6] causes serious detriment to the press's future ability to gather and disseminate news of matters of public concern and coverage of judicial proceedings. This type of unnecessary fishing expedition and harassment by the State is exactly what the constitutional protections and common law are designed to prevent. There is a very real concern for any media organization in a situation like this that the journalist will appear to be an investigative arm of law enforcement or a research tool for the government. Moreover, the threat of administrative and judicial intrusion into the

---

[6] In this instance, the reporter spoke to the criminal defendant, after-the-fact, and the reporter has nothing additional to offer through testimony than information that was already provided to the State through the self-authenticating jailhouse interview.

<u>Supplemental Motion to Quash and Motion to Reconsider</u> - Page 12 of 15

00296

newsgathering and editorial process could become so great, and the burden imposed by the steady stream of subpoenas resulting from stories about important or controversial matters so overwhelming, that the media will be deterred from reporting on such issues. Because "journalists typically gather information about accidents, crimes, and other matters of special interest that often give rise to litigation," the "consequent diversion of journalistic effort and disruption of newsgathering activity" is potentially substantial if the subpoena in this case were the norm. *O'Neil v. Oak Grove Const., Inc.*, 71 N.Y.2d 521, 527, 528 N.Y.S. 1, 3 (1988). Ultimately, it is the public that suffers.

By requiring the four reporters who conducted jailhouse interviews to all appear on June 1 (for no hearing at all), on July 23 for the Article 28.01 pretrial hearing, and at the trial, the Assistant District Attorney is merely harassing the witnesses and imposing unnecessary burden and expense on their employers. Furthermore, in addition to the financial harm caused by this unnecessary appearance, another very significant practical impact if reporters are hauled into court multiple times throughout a case whenever they talk to a criminal defendant, is that reporters will quit conducting interviews and accountability of the government and prosecutors will become nonexistent.

## IV.
## CONCLUSION AND PRAYER

Texas criminal courts must enforce non-party subpoena rules without regard to the status of the non-party witness and without favoring the State, the criminal defendant or the non-party witness. If courts are permitted to ignore the requirements of Article 24.03, and to compel non-parties (who have no knowledge material or relevant to the case) to testify at the whim of a prosecutor or defendant, the public-at-large will suffer. Prosecutors and criminal defendants will be able to drag any person — a government official, company executive, community activist or

**Supplemental Motion to Quash and Motion to Reconsider - Page 13 of 15**

00207

celebrity — into court for an improper purpose, such as bolstering a party's credibility in front of the jury, sensationalizing the trial, or silencing the media. Forced compliance with such frivolous subpoenas places an unreasonable and expensive burden on the non-party. It also creates tremendous doubt about the integrity of the legal system and whether laws are being applied equally. For a media organization, such subpoenas will raise the cost of newsgathering and result in less news coverage. In fact, knowing that reporters can be hauled into court to testify in a criminal trial every time they interview a criminal defendant will ensure that media conducts fewer interviews. Who then will fulfill the role of being a government watchdog? More importantly, permitting such an abuse of Rabb's rights, a non-party witness, sends a signal to the public at large that the average Texas citizen — with fewer resources and less immediate access to the public airwaves than a reporter for a media organization — cannot trust Texas courts to enforce the law and to protect citizens' rights.

WHEREFORE PREMISES CONSIDERED, Movant Shaun Rabb hereby requests that this motion be set for hearing, and that upon such hearing the Court reconsider and vacate its prior ruling and (1) grant this motion; (2) quash the trial subpoena for Shaun Rabb; (3) enter a protective order; and (4) grant such other and further relief to which Rabb may be justly entitled.

<u>**Supplemental Motion to Quash and Motion to Reconsider**</u> - **Page 14 of 15**

00298

Respectfully Submitted,

SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By: _Laura Lee Prather_
Laura Lee Prather
Texas State Bar No. 16234200
919 Congress Avenue, Suite 1250
Austin, Texas 78701-3656
Tel.: (512) 481-8400
Fax.: (512) 481-8444

**ATTORNEYS FOR SHAUN RABB**

## CERTIFICATE OF CONFERENCE

Telephone conferences were attempted or had with Assistant District Attorney David Alex on May 26, 27, 28, and 29, as well as electronic communications, on May 29, 2009. Agreement could not be reached on the substance of this motion; therefore, it is being presented to this Court for determination.

_Laura Lee Prather_
Laura Lee Prather

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was served on all counsel of record via hand delivery on __1 st__ day of June 2009.

_Laura Lee Prather_
Laura Lee Prather

Supplemental Motion to Quash and Motion to Reconsider - **Page 15 of 15**

# Exhibits

1.    Motion to Quash Subpoena of Non-party Shaun Rabb

2.    Order Denying Shaun Rabb's Motion to Quash Subpoena

3.    Non-party Ellen Goldberg's Motion to Quash Trial Subpoena

4.    State v. Lyon, 19 Med. L. Rptr. 2153 (Dallas Crim. Dist. Ct. 1991)

5.    Email Correspondence from May 29, 2009 from Assistant District Attorney David Alex Concerning Need of Journalists' to Appear Seven Weeks Prior to Pre-trial Hearing and Invocation of the Witness Rule

DL/2303195v1

00300

Cause No. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES BROADNAX | § | CRIMINAL COURT # 7 |

**MOTION TO QUASH SUBPOENA OF NON-PARTY SHAUN RABB**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KDFW FOX 4 and Shaun Rabb ("Rabb") (collectively herein, "Movants"), non-parties in the foregoing matter and file this Motion to Quash Subpoena of Shaun Rabb, and would respectfully show the Court the following:

I.

**SUMMARY OF ARGUMENT**

THE STATE'S SUBPOENA SERVED UPON MOVANTS SHOULD BE QUASHED BECAUSE IT VIOLATES THE RECENTLY ENACTED TEXAS FREE FLOW OF INFORMATION ACT, UNDER WHICH JOURNALISTS HAVE A QUALIFIED TESTIMONIAL PRIVILEGE IN CRIMINAL PROCEEDINGS.

II.

**BACKGROUND**

1.1    KDFW FOX 4 is a television station located in Dallas, Dallas County, Texas and licensed as such by the Federal Communications Commission.

1.2    Rabb is a television journalist employed by KDFW FOX 4. *See* Rabb Aff., Exhibit A. On or about June 19, 2008 KDFW FOX 4 aired a news broadcast that included an interview that Rabb had conducted with the Defendant in this case. Rabb conducted the interview in his capacity as a journalist for KDFW FOX 4. *Id.*

MOTION TO QUASH AND OBJECTIONS TO THE SUBPOENA OF SHAUN ROBB    Page 1



**EXHIBIT**

tabbies

\

00301

1.3     On or about June 25, 2008, the Dallas County District Attorney's Office served KDFW FOX 4 with a Subpoena requesting a copy of the broadcast. *See* Exhibit B. KDFW FOX 4 complied with the subpoena and produced an entire copy of the interview between Rabb and the Defendant as well as a business records affidavit proving up same. *See* Affidavit of Jay R. Soules a true and correct copy of which is attached hereto as Exhibit C.

1.4     On May 13, 2009, Texas Governor Rick Perry signed into law, Texas House Bill 670, also known as the Free Flow of Information Act, which establishes a qualified testimonial privilege for journalists. *See* Tex. H.B. 670, 81st Leg., R.S. (2009); Act of May 13, 2009, 81st Leg., R.S., H.B. 670, (to be codified at TEX. CODE OF CRIM. PROC. ANN. arts. 38.11 and 38.111)(the "Act"). *See* Exhibit D. The Act became effective immediately once it was signed into law by the Governor. *See* Press Release of Gov. Perry, Exhibit E. Under the Act, Texas journalists and media outlets enjoy certain protections, including the following:

> Except as otherwise provided by this article, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process <u>may not compel a journalist to testify regarding or to produce or disclose in an official proceeding (1) any confidential or nonconfidential unpublished information, document, or item obtained or prepared while acting as a journalist; or (2) the source of any information, document, or item described by subdivision (1).</u> A subpoena or other compulsory process may not compel the parent, subsidiary, division or affiliate of a communication service provider or news medium to disclose the unpublished information, documents or items or the source of any information, documents, or items that are privileged from disclosure under subsection (a).

*See* Act of May 13, 2009, 81st Leg., R.S., H.B. 670 at § 3(a) - (b) (to be codified at TEX. CODE OF CRIM. PROC. ANN. arts. 38.11 and 38.111). *See* Exhibit D.

1.5     The Act also requires that a subpoena of a journalist issued by an attorney representing the State, <u>must be signed by the elected district attorney, elected criminal district attorney, or</u>

MOTION TO QUASH AND OBJECTIONS TO THE SUBPOENA OF SHAUN ROBB                    Page 2

00302

elected county attorney, as applicable. *See* Act of May 13, 2009, 81st Leg. R.S., HB 670 at § 4(d)(to be codified at TEX. CODE OF CRIM. PROC. ANN. arts. 38.11 and 38.111); Exhibit D.

1.6    Furthermore, the Act also states that extrinsic evidence of the authenticity of evidence in a criminal proceeding is not required with respect to a recording that purports to be a broadcast by a television station. *See Id.* at Article 38.111; Exhibit D.

1.7    Despite the prior production of the entire interview between Rabb and the criminal defendant – which is both self authenticating and for which a business records affidavit was produced prior to the enactment of the Texas Free Flow of Information Act, the State served Rabb with a second subpoena on Friday, May 22, 2009 at approximately 5:50 p.m. *See* Exhibit F, a true and correct copy of the subpoena at issue.

1.8    The State has indicated that Rabb is required to testify as a witness in this case in order to "authenticate" the aired broadcasts in question, which is already in the State's possession. Under the Act, no such testimony is needed in order to authenticate the aired broadcasts in question. *See Act,* Tex. Code of Crim. Pro. art. 38.111. As provided for in Article 38.111, Movants ask the Court to take judicial notice, under Rule 201, Texas Rules of Evidence, that KDFW FOX 4 holds a license under the Federal Communications Commission, which was also in effect at the time of the aired broadcasts in question. *See* Exhibits A and G. Thus, Rabb should not be required to appear as a witness to testify in this case, because his testimony is not necessary for purposes of authenticating the aired broadcasts in question.

1.9    Alternatively, and in the event the State has subpoenaed Rabb in order to attempt to elicit testimony beyond the mere authentication of the aired broadcasts in question, those efforts should also fail, because the Act provides that journalists, like Rabb, have a qualified testimonial privilege concerning unpublished information. *See Act,* Tex. Code of Crim. Proc. art. 38.11, Section 5. Rabb

MOTION TO QUASH AND OBJECTIONS TO THE SUBPOENA OF SHAUN ROBB                Page 3

00303

hereby asserts and invokes said privilege. Given that the State already has in its possession the aired broadcasts in question, the State cannot make the clear and specific showing required to overcome the privilege under Section 5 of the Act.

2.0    Furthermore, the subpoena at issue does not comply with the requirements under the Act because it is not signed by the elected criminal district attorney as required under Section 4(d) of the Act. *See Act.*, Texas Code of Crim. Proc. art. 38.11, Section 4(d).

2.1    Movants made several attempts to resolve this matter with the State prior to filing this Motion including in house counsel for KDFW FOX 4 calling and speaking with the Assistant District Attorney. During the course of the conversation between KDFW FOX 4's in house counsel and the State's attorney, counsel informed the State about the new law of which he was unaware, and the Assistant District Attorney indicated that it did not matter because he was sure Rabb was going to testify. *See* Exhibit G.

2.2    On May 26, 2009, outside counsel for Rabb also contacted the State's attorney in an effort to resolve this matter prior to court intervention, however, she was never able to have a substantive conversation with the State's attorney. Rabb's counsel called the State's attorney at the time he said he would be available to discuss the subpoena, but, to date, the call has not been returned. After leaving a phone message, Rabb's counsel immediately sent a copy of the new Act to the State's attorney in a further effort to resolve this matter and avoid the necessity of filing of this Motion to Quash. *See* Exhibit H.

2.3    Based on the foregoing, the State's Subpoena should be quashed, and the State should reimburse Movants for their fees and costs as provided under Section 9 of Art. 38.11 of the Act. Additionally, given that the State had prior notice of Movants' intent to seek relief under the Act, the

00304

State should also be required to reimburse Movants for their reasonable and necessary attorneys' fees incurred in preparing and presenting this Motion to the Court.

2.4    Finally, in a case with facts substantially similar to the ones herein, Judge Sandra L. Watts applied the new law at issue and quashed a subpoena issued to KIII-TV3 and its reporter/journalist, Katy Kiser earlier this week. Like KDFW FOX 4, the KIII-TV 3 reporter had interviewed a criminal defendant and KIII-TV 3 had already produced a copy of the broadcast at issue. In light of the reporter's privilege, the Court held the Assistant District Attorney had no right to call the journalist to testify in the criminal proceeding. A true and correct copy of the order is attached hereto as Exhibit I.

## III.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Movants pray that the Subpoena to Rabb be QUASHED, that the Court sustain their objections to the Subpoena and that Rabb not be required to testify in this case under the said Subpoena or any other Subpoena. Movants further pray that they be reimbursed for their costs and for the reasonable and necessary attorneys' fees incurred in preparing and presenting this Motion. Movants further pray for general relief and for such other relief to which they may be justly entitled.

00305

Respectfully Submitted,

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
Laura Lee Prather
Texas State Bar No. 16234200
919 Congress Avenue, Suite 1250
Austin, Texas 78701-3656
Tel.: (512) 481-8400
Fax.: (512) 481-8444

## ATTORNEYS FOR SHAUN ROBB AND KDFW FOX 4

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was served on all counsel of record via fax on _27th_ day of May 2009.

_____
Laura Lee Prather

MOTION TO QUASH AND OBJECTIONS TO THE SUBPOENA OF SHAUN ROBB          Page 6

00306

# Exhibits

A.   Affidavit of Shaun Rabb

B.   Subpoena to KDFW FOX 4 dated June 25, 2008 requesting copies of all audio/video broadcast tapes (or digital media), out-takes (recorded but not aired)

C.   Business Records Affidavit of Jay R. Soules, Custodian of Records for KDFW FOX 4 (which was enclosed with a copy of the complete interview between Shaun Rabb and James Broadnax)

D.   The Texas Free Flow of Information Act, Tex. H.B. 670, 81st Leg., R.S. (2009); Act of May 13, 2009, 81st Leg. R.S., H.B. 670 (to be codified at Tex. Code of Crim. Proc. Ann. arts. 38.11 and 38.111) – the Texas Reporter's Privilege Statute

E.   News Release from Governor Rick Perry regarding H.B. 670, dated May 13, 2009 announcing that the bill takes effect immediately.

F.   Subpoena to Shaun Rabb, KDFW FOX 4 demanding appearance on June 1, 2009 to testify as a witness on behalf of the State in Criminal Court #7 of Dallas County, Texas

G.   Affidavit of Carolyn Forrest

H.   Correspondence from Laura Lee Prather to Assistant District Attorney David Alex enclosing a copy of HB 670, dated May 26, 2009

I.   Order Granting Motion to Quash Subpoena signed by Honorable Sandra Watts in State of Texas v. Kenneth Hubbard, Cause No. 08-CR-3439-B in Nueces County, Texas dated May 26, 2009

DL/2302745v1

00307

## AFFIDAVIT OF SHAUN RABB

STATE OF TEXAS                          §
                                        §
COUNTY OF _____                      §
                                        §

BEFORE ME, the undersigned authority, a Notary Public, in and for Dallas County, Texas, on this day personally appeared SHAUN RABB, who, being duly sworn upon his oath, deposes and stated the following:

"My name is SHAUN RABB. I am over 18 years of age. I have never been convicted of any crime or offence involving moral turpitude. I am fully competent to testify to the factual matters contained in this affidavit. All matters contained herein are based my personal knowledge and are true and correct.

1.    For a substantial portion of my livelihood, I gather, compile, prepare, collect, record, write, edit, report and/or investigate news or information that is disseminated by KDFW FOX 4. In my capacity as a journalist, I reported during a news broadcast aired by KDFW FOX 4 on or about June 19, 2008. The broadcast included an interview that I, as a journalist, had conducted with Mr. James Broadnax, who is the Defendant in the case styled, State of Texas v. James Broadnax, Cause No. F08-24667-Y, pending in Criminal District Court #7 of Dallas County, Texas.

2.    On or about May 22, 2009, I received a subpoena by hand delivery at approximately 5:50 p.m. from David Alex, Assistant District Attorney for Dallas County, at my place of employment, KDFW FOX 4 in Dallas, Texas. A copy of the subpoena I received is attached to this affidavit.

Further Affiant Sayeth Not.

_____
Shaun Rabb

Sworn and subscribed to before me, the undersigned authority, by SHAUN RABB, on this ____ day of _____, 2009.

_____
Notary Public in and for
The State of Texas

MONICA MARTINEZ
Notary Public, State of Texas
My Commission Expires
December 16, 2012

**EXHIBIT**

A

DL/2302525v1

00308

00309

THE STATE OF TEXAS
TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
OF THE STATE OF TEXAS – GREETINGS:
YOU ARE HEREBY COMMANDED TO SUMMON

SHAUN RABB, FOX 4 NEWS
UNKNOWN
DALLAS, TEXAS

To be and appear before the CRIMINAL District Court #7 of Dallas County, Texas at the courthouse of said County, in the City of Dallas, on the 1ST day of JUNE, 20 09, at 8:30 o'clock A. M., Then and there to testify as a witness in behalf of the STATE in a criminal Action pending in said court, wherein THE STATE OF TEXAS is plaintiff, and JAMES BROADNAX Defendant No. F08-24667-Y

DUCES TECUM (IF APPLICABLE)                                   ☒ NOT APPLICABLE
and that he bring with him and produce in said Court, at said time and place.

desired as evidence in said Criminal action, to-wit: in a certain suit pending in said court.

and there remain from day to day and from term to term until discharged by the Court
HEREIN FAIL NOT, But at this Writ make due return, showing how you have executed the same.

OUT OF COUNTY (IF APPLICABLE)                                 ☒ NOT APPLICABLE
A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as Fines and costs in other criminal cases.

WITNESS MY OFFICIAL SIGNATURE, this 20th day of MAY, 20 09

Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas
By _____ Deputy
T. JACKSON

---

NO. F08-24667-Y

CRIMINAL DISTRICT COURT #7
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS
VS.

JAMES BROADNAX.

CAPITAL MURDER

SUBPOENA

ISSUED
This 20TH day of MAY, 20 09
Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas
By T. JACKSON Deputy

ATTORNEY:

DAVID ALEX
ASSISTANT DISTRICT ATTORNEY
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207
214-653-3600

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS, TEXAS 75207

06/25/2008 11:13 FAX                                                                                    @001



## CRAIG WATKINS
### CRIMINAL DISTRICT ATTORNEY
### DALLAS COUNTY, TEXAS

June 25, 2008

To: News Director

Subject: Evidence preservation

ATTN- Jay Soules
Fox 4 News
400 N. Griffin St.
Dallas, TX 75202
Fax 214-720-3263

The Dallas District Attorney's Office is investigating the Garland, Texas capital murder involving the suspects James Broadnax and Demarius Cummings; victims are Matthew Butler and Stephen Swan. This offense occurred Thursday, June 9, 2008 and there was subsequent media coverage from your station.

Grand jury subpoena applications are pending for COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES (OR DIGITAL MEDIA), OUT-TAKES (RECORDED BUT NOT AIRED) regarding interviews with these suspects and related news stories. The Dallas District Attorney's Office requests that this information be preserved.

If you have any questions please call my cell #, 214-549-9074.

David N. Barger, Lt./ Investigation Division



**EXHIBIT**

B

Frank Crowley Courts Building • 133 N. Industrial Blvd., L.B. 19 • Dallas, Texas 75207-4399 • 214/653-3600

00310

07/07/2008 12:41 FAX    ☑001



# CRAIG WATKINS

### CRIMINAL DISTRICT ATTORNEY
Frank Crowley Courts Building
133 N. Industrial Boulevard, L.B. 19
Dallas, Texas 75207-4399
Office: 214.653.3600

## FACSIMILE COVER SHEET

DATE: July 7, 2008

TOTAL PAGES, Including Cover: 6

| To:  Jay Soukes | Dept./Agency: KDFW Ch 4 |
|---|---|
| Fax #:  214-720-3263 | Phone #:  214-720-3314 |

From: David Barger, Lt./ Inv. Division          Direct #:214-653-3614    Fax#:214-653-2924

Email:  dbarger@dallascounty.org

Comments:

**Grand Jury subpoena attached regarding James Broadnax news stories.**

CONFIDENTIALITY NOTICE

The information contained in this facsimile message is privileged and confidential and is intended only for the exclusive use of the addressee. The term privileged and confidential includes, without limitation, attorney-client privileged communications, attorney work product, and any other proprietary information. Nothing in this facsimile is intended by the attorney to constitute a waiver of the confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any use, disclosure, dissemination, duplication, distribution or the taking of any action because of this communication is unauthorized and strictly prohibited. If you have received this facsimile transmission in error, please notify us by telephone immediately so that we can arrange for the return of the original documents.

00311

07/07/2008 12:41 FAX                                                                    ☑002

| IN RE INVESTICATION | | IN THE GRAND JURY OF |
|---|---|---|
| OF | | DALLAS COUNTY, TEXAS |
| JAMES BROADNAX | | JULY TERM, A.D., 2008 |

## LAW ENFORCEMENT AGENCY REQUEST FOR APPLICATION FOR ISSUANCE OF SUBPOENA DUCES TECUM SUMMONING PERSON TO APPEAR BEFORE GRAND JURY

TO THE FOREMAN OF THE GRAND JURY OF DALLAS COUNTY:

I, David N. Barger, a peace officer under the laws of the State of Texas, do hereby request that the Foreman of the Grand Jury of the County of Dallas, State of Texas make application to the District Court of Dallas County for issuance of a subpoena duces tecum summoning CUSTODIAN of RECORDS (or designee) for:

KDFW Channel 4, 400 N. Griffin St., Dallas, Texas and to produce the following records or documents for use in a legitimate law enforcement investigation which is being conducted under auspices of the Grand Jury:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

I hereby certify that the testimony of the said witness is believed to be material.

David N. Barger
Investigator, Dallas District Attorney
Frank Crowley Courts Building
133 N. Industrial Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3614

Grand Jury Subpoena
Page 1 of 5

00312

07/07/2008 12:41 FAX                                                                    @003

| IN RE INVESTIGATION | IN THE GRAND JURY OF |
|---|---|
| OF | DALLAS COUNTY, TEXAS |
| JAMES BROADNAX | JULY TERM, A.D., 2008 |

## APPLICATION FOR ISSUANCE OF SUBPOENA DUCES TECUM SUMMONING PERSON TO APPEAR BEFORE GRAND JURY

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Foreman of the Grand Jury of the County of Dallas, State of Texas, and pursuant to TEX. CODE CRIM. PROC. ANN. art. 20.11 (Vernon 1977), requests that the Court issue forthwith a subpoena duces tecum summoning CUSTODIAN of RECORDS (or designee) for: KDFW Channel 4, 400 N. Griffin St., Dallas, Texas to appear before the Dallas County Grand Jury, Frank Crowley Courts Bldg., 133 N. Industrial Blvd. , Dallas, Texas, forthwith late of July 21, 2008 , and to produce for the said Grand Jury at the said time and place the following records and documents:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

The testimony of the said witness is believed to be material.

_____
Foreman of The Grand Jury

Grand Jury Subpoena
Page 2 of 5

00313

07/07/2008 12:41 FAX                                                                 ☺004

*CDC #1*

IN RE INVESTIGATION

OF

JAMES BROADNAX

IN THE GRAND JURY OF

DALLAS COUNTY, TEXAS

JULY TERM, A.D., 2008

## SUBPOENA DUCES TECUM
## SUMMONING WITNESS TO
## APPEAR BEFORE GRAND JURY

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS, TO THE SHERIFF OF DALLAS COUNTY, TEXAS OR ANY CONSTABLE OR PEACE OFFICER OF THE STATE OF TEXAS ............. GREETINGS:

YOU ARE COMMANDED TO SUMMON............ CUSTODIAN of RECORDS (or designee) for: KDFW Channel 4, 400 N. Griffin St., Dallas, Texas to appear before the Dallas County Grand Jury, Frank Crowley Courts Bldg., 133 N. Industrial Blvd., Dallas, Texas, forthwith late of July 21, 2008 , and to produce for the said Grand Jury at the said time and place the following records and documents:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA WILL INTERFERE WITH AN ONGOING CRIMINAL INVESTIGATION AND IS, THEREFORE, NOT AUTHORIZED. NOTICE: UNDER TEX. CODE CRIM. PROC. ANN. art. 24.05 (Vernon 1977) REFUSAL TO OBEY THIS SUBPOENA MAY RESULT IN THE IMPOSITION OF A FINE.

Grand Jury Subpoena
Page 3 of 5

*00314*

07/07/2008 12:41 FAX                                                                          ☒005

CDC#1

| IN RE INVESTIGATION | | IN THE GRAND JURY OF |
|---|---|---|
| OF | | DALLAS COUNTY, TEXAS |
| JAMES BROADNAX | | JULY TERM, A.D., 2008 |

*In lieu of personally appearing before the said Grand Jury at the said time and place, the said witness may comply with this subpoena by furnishing true and correct copies of the aforesaid records to the following-named person at the following address:*

**David N. Berger, Lt./Investigation Division**
**Dallas District Attorney**
**Frank Crowley Courts Building 11th Floor**
**133 N. Industrial Blvd., LB 19**
**Dallas, Texas 75207-4399**
**(214) 653-3614**

HEREIN FAIL NOT, but of this writ make due return, showing how you have executed the same.

WITNESS MY OFFICIAL SIGNATURE, this _____ day of _____,
A.D., 2008.

JUDGE,
_____ District Court ___
Dallas County, Texas

Grand Jury Subpoena
Page 4 of 5

00315

07/07/2008 12:41 FAX                                                                                          ☑008

IN RE INVESTIGATION                    |      IN THE GRAND JURY OF

OF                                     |      DALLAS COUNTY, TEXAS

JAMES BROAD JAX                        |      JULY TERM, A.D., 2008

## RETURN

CAME TO HAND on this _____ day of _____, A.D., 2008, and executed by summoning the within-named witness on the _____ day of _____, A.D., 2008.

Criminal District Attorney, Dallas County, Texas

By _____ Investigator

**Sheriff, Constable or Peace Officer**

Grand Jury Subpoena
Page 5 of 5

00316

IN RE GRAND JURY PROCEEDINGS:

Subpoena duces t)cum for production of documents regarding James Broadnax

## AFFIDAVIT OF JAY R. SOULES

STATE OF TEX/.S          §
                         §
COUNTY OF D/.LLAS        §

BEFORE ME, the undersigned authority, personally appeared Jay R. Soules, who, being by me duly sworn deposed as follows:

1.    "My name is Jay R. Soules, I am over the age of eighteen years, am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

2.    "I am a custodian of records of NW Communications of Texas, Inc., on behalf of its television KDFW FOX 4, ("KDFW FOX 4") in Dallas, Texas.

3.    "Attached hereto is a true and correct copy of the KDFW FOX 4 reports and out-takes concerning the murder of Matthew Butler and Stephen Swan in Garland, TX on June 19, 2008 including interviews of suspects James Broadnax and Damarius Cummings. These said tapes are kept by KDFW FOX 4 in the regular course of business, and it was the regular course of business of KDFW FOX 4 for an employee or representative of KDFW FOX 4, with knowledge of the act, event, condition, opinion or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or an exact



EXHIBIT

C

00317

duplicate of the original reports that aired concerning the murder of Matthew Butler and Stephen Swan in Garland, TX on June 19, 2008 including interviews of suspects James Broadnax and Damarius Cummings."

Further Affiant sayeth not.

Jay R. Soules



[printed name and title]

SWORN TO AND SUBSCRIBED before me on the ___ day of July, 2008.

[Seal]    MARY F. KNIGHT
          My Commission Expires
          July 28, 2011

Notary Public, State of Texas

MARY F. Knight
[printed name]

My Commission Expires:

July 28, 2011

- 2 -

00318

H.B. No. 67

AN ACT

relating to a qualified privilege of a journalist not to testify.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.   Chapter 22, Civil Practice and Remedies Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C. JOURNALIST'S QUALIFIED TESTIMONIAL PRIVILEGE IN CIVIL PROCEEDINGS

Sec. 22.021.   DEFINITIONS. In this subchapter:

(1)   "Communication service provider" means a person or the parent, subsidiary, division, or affiliate of a person who transmits information chosen by a customer by electronic means, including:

(A)   a telecommunications carrier, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(B)   a provider of information service, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(C)   a provider of interactive computer service, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230); and

(D)   an information content provider, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230).

(2)   "Journalist" means a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider and includes:

(A)   a person who supervises or assists in gathering, preparing, and disseminating the news or information; or

(B)   notwithstanding the foregoing, a person who is or was a journalist, scholar, or researcher employed by an institution of higher education at the time the person obtained or prepared the requested information, or a person who at the time the person obtained or prepared the requested information:

(i)   is earning a significant portion of the person's livelihood by obtaining or preparing information for dissemination by a news medium or communication service provider; or

(ii)   was serving as an agent, assistant, employee, or supervisor of a news medium or communication service provider.

(3)   "News medium" means a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including:

(A)   print;
(B)   television;
(C)   radio;

EXHIBIT

D

00319

      (D)  photographic;
      (E)  mechanical;
      (F)  electronic; and
      (G)  other means, known or unknown, that are accessible to the public.
     (4)  "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant, including a proceeding under Rule 202, Texas Rules of Civil Procedure.
     (5)  "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:
      (A)  an officer, employee, or agent of government;
      (B)  a juror;
      (C)  an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;
      (D)  an attorney or notary public when participating in the performance of a governmental function; or
      (E)  a person who is performing a governmental function under a claim of right, although the person is not legally qualified to do so.
    Sec. 22.022.  PURPOSE. The purpose of this subchapter is to increase the free flow of information and preserve a free and active press and, at the same time, protect the right of the public to effective law enforcement and the fair administration of justice.
    Sec. 22.023.  PRIVILEGE. (a) Except as otherwise provided by this subchapter, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding:
     (1)  any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist; or
     (2)  the source of any information, document, or item described by Subdivision (1).
    (b)  A subpoena or other compulsory process may not compel the parent, subsidiary, division, or affiliate of a communication service provider or news medium to disclose the information, documents, or items or the source of any information, documents, or items that are privileged from disclosure under Subsection (a).
    Sec. 22.024.  LIMITED DISCLOSURE GENERALLY. After notice and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any information, document, or item or the source of any information, document, or item obtained while acting as a journalist, if the person seeking the information, document, or item or the source of any information, document, or item makes a clear and specific showing that:
     (1)  all reasonable efforts have been exhausted to obtain the information from alternative sources;
     (2)  the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information;
     (3)  reasonable and timely notice was given of the demand for the information, document, or item;

00320

(4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist;

(5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and

(6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Sec. 22.025. NOTICE. An order to compel testimony, production, or disclosure to which a journalist has asserted a privilege under this subchapter may be issued only after timely notice to the journalist, the journalist's employer, or a person who has an independent contract with the journalist and a hearing. The order must include clear and specific findings as to the showing made by the person seeking the testimony, production, or disclosure and the clear and specific evidence on which the court relied in issuing the court's order.

Sec. 22.026. PUBLICATION OF PRIVILEGED INFORMATION. Publication or dissemination by a news medium or communication service provider of information, documents, or items privileged under this subchapter is not a waiver of the journalist's privilege.

Sec. 22.027. NEWS MEDIA RECORDINGS. Extrinsic evidence of the authenticity of evidence as a condition precedent to the admissibility of the evidence in a civil proceeding is not required with respect to a recording that purports to be a broadcast by a radio or television station that holds a license issued by the Federal Communications Commission at the time of the recording. The court may take judicial notice of the recording license as provided by Rule 201, Texas Rules of Evidence.

SECTION 2. Chapter 38, Code of Criminal Procedure, is amended by adding Articles 38.11 and 38.111 to read as follows:

Art. 38.11. JOURNALIST'S QUALIFIED TESTIMONIAL PRIVILEGE IN CRIMINAL PROCEEDINGS

Sec. 1. DEFINITIONS. In this article:

(1) "Communication service provider" means a person or the parent, subsidiary, division, or affiliate of a person who transmits information chosen by a customer by electronic means, including:

(A) a telecommunications carrier, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(B) a provider of information service, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(C) a provider of interactive computer service, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230); and

(D) an information content provider, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230).

(2) "Journalist" means a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider and includes:

(A) a person who supervises or assists in

00321

gathering, preparing, and disseminating the news or information; or

(B) notwithstanding the foregoing, a person who is or was a journalist, scholar, or researcher employed by an institution of higher education at the time the person obtained or prepared the requested information, or a person who at the time the person obtained or prepared the requested information:

(i) is earning a significant portion of the person's livelihood by obtaining or preparing information for dissemination by a news medium or communication service provider; or

(ii) was serving as an agent, assistant, employee, or supervisor of a news medium or communication service provider.

(3) "News medium" means a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including:

(A) print;
(B) television;
(C) radio;
(D) photographic;
(E) mechanical;
(F) electronic; and
(G) other means, known or unknown, that are accessible to the public.

(4) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(5) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

(A) an officer, employee, or agent of government;
(B) a juror or grand juror;
(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;
(D) an attorney or notary public when participating in the performance of a governmental function; or
(E) a person who is performing a governmental function under a claim of right, although the person is not legally qualified to do so.

Sec. 2. PURPOSE. The purpose of this article is to increase the free flow of information and preserve a free and active press and, at the same time, protect the right of the public to effective law enforcement and the fair administration of justice.

Sec. 3. PRIVILEGE. (a) Except as otherwise provided by this article, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding:

(1) any confidential or nonconfidential unpublished information, document, or item obtained or prepared while acting as a journalist; or

(2) the source of any information, document, or item

00322

described by Subdivision (1).

(b)  A subpoena or other compulsory process may not compel the parent, subsidiary, division, or affiliate of a communication service provider or news medium to disclose the unpublished information, documents, or items or the source of any information, documents, or items that are privileged from disclosure under Subsection (a).

Sec. 4.  PRIVILEGE CONCERNING CONFIDENTIAL SOURCES.  (a)  A journalist may be compelled to testify regarding or to disclose the confidential source of any information, document, or item obtained while acting as a journalist if the person seeking the testimony, production, or disclosure makes a clear and specific showing that the source of any information, document, or item:

(1)  was observed by the journalist committing a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist;

(2)  is a person who confessed or admitted to the journalist the commission of a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist;

(3)  is a person for whom probable cause exists that the person participated in a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist; or

(4)  disclosure of the confidential source is reasonably necessary to stop or prevent reasonably certain death or substantial bodily harm.

(b)  If the alleged criminal conduct is the act of communicating, receiving, or possessing the information, document, or item, this section does not apply, and Section 5 governs the act.

(c)  Notwithstanding Subsection (b), if the information, document, or item was disclosed or received in violation of a grand jury oath given to either a juror or a witness under Article 19.34 or 20.16, a journalist may be compelled to testify if the person seeking the testimony, production, or disclosure makes a clear and specific showing that the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained. In this context, the court has the discretion to conduct an in camera hearing. The court may not order the production of the confidential source until a ruling has been made on the motion.

(d)  An application for a subpoena of a journalist under Article 24.03, or a subpoena of a journalist issued by an attorney representing the state under Article 20.10 or 20.11, must be signed by the elected district attorney, elected criminal district attorney, or elected county attorney, as applicable. If the elected district attorney, elected criminal district attorney, or elected county attorney has been disqualified or recused or has resigned, the application for the subpoena or the subpoena must be signed by the person succeeding the elected attorney. If the elected officer is not in the jurisdiction, the highest ranking assistant to the elected officer must sign the subpoena.

Sec. 5.  PRIVILEGE CONCERNING UNPUBLISHED INFORMATION, DOCUMENT, OR ITEM AND NONCONFIDENTIAL SOURCES.  (a)  After service

00323

of subpoena and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any unpublished information, document, or item or the source of any information, document, or item obtained while acting as a journalist, other than as described by Section 4, if the person seeking the unpublished information, document, or item or the source of any information, document, or item makes a clear and specific showing that:

(1)  all reasonable efforts have been exhausted to obtain the information from alternative sources; and

(2)  the unpublished information, document, or item:

(A)  is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure; or

(B)  is central to the investigation or prosecution of a criminal case and based on something other than the assertion of the person requesting the subpoena, reasonable grounds exist to believe that a crime has occurred.

(b)  The court, when considering an order to compel testimony regarding or to produce or disclose any unpublished information, document, or item or the source of any information, document, or item obtained while acting as a journalist, should consider the following factors, including but not limited to whether:

(1)  the subpoena is overbroad, unreasonable, or oppressive;

(2)  reasonable and timely notice was given of the demand for the information, document, or item;

(3)  in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist; and

(4)  the subpoena or compulsory process is being used to obtain peripheral, nonessential, or speculative information.

(c)  A court may not consider a single factor under Subsection (b) as outcome-determinative in the decision whether to compel the testimony or the production or disclosure of the unpublished information, document, or item, or the source of any information, document, or item.

Sec. 6.  NOTICE. An order to compel testimony, production, or disclosure to which a journalist has asserted a privilege under this article may be issued only after timely notice to the journalist, the journalist's employer, or a person who has an independent contract with the journalist and a hearing. The order must include clear and specific findings as to the showing made by the person seeking the testimony, production, or disclosure and the clear and specific evidence on which the court relied in issuing the court's order.

Sec. 7.  PUBLICATION OF PRIVILEGED INFORMATION. Publication or dissemination by a news medium or communication service provider of information, documents, or items privileged under this article is not a waiver of the journalist's privilege regarding sources and unpublished information, documents, or items.

Sec. 8.  PUBLISHED INFORMATION. This article does not apply to any information, document, or item that has at any time been published or broadcast by the journalist.

Sec. 9.  REIMBURSEMENT OF COSTS.  The subpoenaing party shall pay a journalist a reasonable fee for the journalist's time and

00324

costs incurred in providing the information, item, or document subpoenaed, based on the fee structure provided by Subchapter F, Chapter 552, Government Code.

Art. 38.111.  NEWS MEDIA RECORDINGS. Extrinsic evidence of the authenticity of evidence as a condition precedent to the admissibility of the evidence in a criminal proceeding is not required with respect to a recording that purports to be a broadcast by a radio or television station that holds a license issued by the Federal Communications Commission at the time of the recording. The court may take judicial notice of the recording license as provided by Rule 201, Texas Rules of Evidence.

SECTION 3.  This Act applies only to information, documents, or items or the source of any information, document, or item obtained or prepared for publication in a news medium or communication service provider on or after the effective date of this Act.

SECTION 4.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2009.


_____           _____
     President of the Senate                        Speaker of the House


        I certify that H.B. No. 670 was passed by the House on April 2, 2009, by the following vote:  Yeas 146, Nays 0, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 670 on April 30, 2009, by the following vote:  Yeas 146, Nays 0, 1 present, not voting.


                                            _____
                                               Chief Clerk of the House


        I certify that H.B. No. 670 was passed by the Senate, with amendments, on April 28, 2009, by the following vote:  Yeas 31, Nays 0.


                                            _____
                                               Secretary of the Senate


APPROVED: _____
                  Date


          _____
                Governor

00325

## Texas Legislature Online
## Actions

**Bill:** HB 670          **Legislative Session:** 81(R)          **Author:** Martinez Fischer

**Actions:** (descending date order)

Viewing Votes: Most Recent House Vote | Most Recent Senate Vote

| | Description | Comment | Date ▼ | Time | Journal Page |
|---|---|---|---|---|---|
| E | Effective immediately | | 05/13/2009 | | |
| E | Signed by the Governor | | 05/13/2009 | | 3680 |
| E | Sent to the Governor | | 05/04/2009 | | 2554 |
| S | Signed in the Senate | | 05/04/2009 | | 1947 |
| H | Signed in the House | | 05/04/2009 | | 2427 |
| H | Reported enrolled | | 05/04/2009 | 07:57 AM | 2554 |
| S | House concurs in Senate amendment(s)-reported | | 04/30/2009 | | 1872 |
| H | Record vote | RV#411 | 04/30/2009 | | 2160 |
| H | Text of Senate Amendment(s) | | 04/30/2009 | | 2160 |
| H | House concurs in Senate amendment(s) | | 04/30/2009 | | 2160 |
| H | Senate Amendments Analysis distributed | | 04/28/2009 | 10:26 PM | |
| H | Senate Amendments printed and distributed | | 04/28/2009 | 10:05 PM | |
| H | Senate passage as amended reported | | 04/28/2009 | | 2007 |
| S | Record vote | | 04/28/2009 | | 1707 |
| S | Passed | | 04/28/2009 | | 1707 |
| S | Read 3rd time | | 04/28/2009 | | 1707 |
| S | Record vote | | 04/28/2009 | | 1706 |
| S | Three day rule suspended | | 04/28/2009 | | 1706 |
| S | Vote recorded in Journal | | 04/28/2009 | | 1706 |
| S | Passed to 3rd reading | | 04/28/2009 | | 1706 |
| S | Amendment withdrawn | | 04/28/2009 | | 1706 |
| S | Motion withdrawn | | 04/28/2009 | | 1706 |
| S | Motion to table | | 04/28/2009 | | 1706 |
| S | Amendment(s) offered | FA1 Williams | 04/28/2009 | | 1705 |
| S | Read 2nd time | | 04/28/2009 | | 1705 |
| S | Rules suspended-Regular order of business | | 04/28/2009 | | 1705 |
| S | Placed on intent calendar | | 04/22/2009 | | |
| S | Committee report printed and distributed | | 04/20/2009 | 02:55 PM | |
| S | Recommended for local & uncontested calendar | | 04/20/2009 | | |
| S | Reported favorably as substituted | | 04/20/2009 | | 1226 |
| S | Testimony taken in committee | | 04/15/2009 | | |
| S | Considered in public hearing | | 04/15/2009 | | |
| S | Scheduled for public hearing on . . . | | 04/15/2009 | | |
| S | Referred to Jurisprudence | | 04/07/2009 | | 911 |

00326

| S | Read first time | | 04/07/2009 | 911 |
|---|---|---|---|---|
| S | Received from the House | | 04/06/2009 | 888 |
| H | Reported engrossed | | 04/03/2009 07:50 AM | 1093 |
| H | Record vote | RV#91 | 04/02/2009 | 1045 |
| H | Passed as amended | | 04/02/2009 | 1045 |
| H | Amended | 1-Martinez Fischer | 04/02/2009 | 1045 |
| H | Read 3rd time | | 04/02/2009 | 1044 |
| H | Record vote | RV#86 | 04/01/2009 | 1022 |
| H | Passed to engrossment as amended | | 04/01/2009 | 1022 |
| H | Amended | 1-Martinez Fischer | 04/01/2009 | 1022 |
| H | Read 2nd time | | 04/01/2009 | 1022 |
| H | Placed on Major State Calendar | | 04/01/2009 | |
| H | Considered in Calendars | | 03/30/2009 | |
| H | Committee report sent to Calendars | | 03/27/2009 | |
| H | Committee report printed and distributed | | 03/26/2009 10:45 PM | |
| H | Comte report filed with Committee Coordinator | | 03/26/2009 | 989 |
| H | Reported favorably as substituted | | 03/23/2009 | |
| H | Testimony taken/registration(s) recorded in committee | | 03/23/2009 | |
| H | Committee substitute considered in committee | | 03/23/2009 | |
| H | Vote reconsidered in committee | | 03/23/2009 | |
| H | Considered in public hearing | | 03/23/2009 | |
| H | Reported favorably w/o amendment(s) | | 03/16/2009 | |
| H | Considered in public hearing | | 03/16/2009 | |
| H | Left pending in committee | | 03/02/2009 | |
| H | Testimony taken/registration(s) recorded in committee | | 03/02/2009 | |
| H | Considered in public hearing | | 03/02/2009 | |
| H | Scheduled for public hearing on . . . | | 03/02/2009 | |
| H | Referred to Judiciary & Civil Jurisprudence | | 02/18/2009 | 326 |
| H | Read first time | | 02/18/2009 | 326 |
| H | Filed | | 01/16/2009 | |

00327



## OFFICE OF THE GOVERNOR
### Rick Perry

For Immediate Distribution
May 13, 2009
News Release

Governor's Press Office: 512-463-1826
Allison Castle: allison.castle@governor.state.tx.us
Katherine Cesinger: kcesinger@governor.state.tx.us

## Gov. Perry Signs House Bill 670

AUSTIN – Gov. Rick Perry has signed House Bill 670, which provides a qualified privilege to prevent journalists who receive a subpoena from having to testify or produce documents gathered while acting as a journalist. The bill also allows journalists to protect their sources in certain cases.

"This was a complex issue that required thoughtful consideration, and I am pleased that lawmakers were able to strike a balance between protecting the rights of the people and the press," Gov. Perry said. "I want to thank Rep. Martinez Fisher and Sen. Ellis for their work on this bill."

Exceptions to the bill include instances when the requestors have proven that they have exhausted all reasonable efforts to get the information elsewhere, the subpoena does not ask for more than is necessary, and the interest in obtaining the information outweighs the public's interest in protecting journalists.

Journalists are also required to identify a confidential source in a criminal case if the source was observed by the journalist committing a felony, confessed to the journalist that he committed a felony, or if there is probable cause to believe that the confidential source committed a felony and the prosecutor has exhausted all efforts to obtain the source's identity. The journalist could also be made to reveal the source if disclosure is necessary to prevent certain death or substantial bodily harm.

This bill takes effect immediately.

# # #



EXHIBIT

E

Case 3:15-cv-01758-N   Document 38-6   Filed 06/28/16   Page 53 of 165   PageID 955

00329

THE STATE OF TEXAS
TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
OF THE STATE OF TEXAS – GREETINGS:
YOU ARE HEREBY COMMANDED TO SUMMON

SHAUN RABB, FOX 4 NEWS
UNKNOWN
DALLAS, TEXAS

To be and appear before the CRIMINAL District Court   #7 of Dallas County, Texas at the courthouse of said County, in the City of Dallas, on the 1ST day of JUNE, 20 09, at 8:30 o'clock A. M., Then and there to testify as a witness in behalf of the STATE in a criminal Action pending in said court, wherein THE STATE OF TEXAS is plaintiff, and JAMES BROADNAX Defendant No. F08-24667-Y

**DUECES TECUM (IF APPLICABLE)**                              ☒ NOT APPLICABLE
and that he bring with him and produce in said Court, at said time and place,

desired as evidence in said Criminal action, to-wit: in a certain suit pending in said court.

and there remain from day to day and from term to term until discharged by the Court
HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

**OUT OF COUNTY (IF APPLICABLE)**                              ☒ NOT APPLICABLE
A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as Fines and costs in other criminal cases.

WITNESS MY OFFICIAL SIGNATURE, this 20TH day of MAY, 20 09

                                                                    Gary Fitzsimmons
                                                                    Clerk District Courts
                                                                    Dallas County, Texas

Bs                                                                  Deputy
T. JACKSON

---

NO. F08-24667-Y

CRIMINAL DISTRICT COURT #7
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS
VS.

JAMES BROADNAX,

CAPITAL MURDER

SUBPOENA

ISSUED
This 20TH day of MAY, 20 09
Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas
By T. JACKSON Deputy

EXHIBIT
F

ATTORNEY:

DAVID ALEX
ASSISTANT DISTRICT ATTORNEY
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207
214-653-3600

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS, TEXAS 75207

## AFFIDAVIT OF CAROLYN FORREST

STATE OF GEORGIA                  §
                                  §
                                  §
COUNTY OF DEKALB                  §

BEFORE ME, the undersigned authority, a Notary Public, in and for DeKalb County, Georgia, on this day personally appeared CAROLYN FORREST, who, being duly sworn upon her oath, deposes and stated the following:

"My name is CAROLYN FORREST. I am over 18 years of age. I have never been convicted of any crime or offence involving moral turpitude. I am fully competent to testify to the factual matters contained in this affidavit. All matters contained herein are based my personal knowledge and are true and correct.

1.    I am the Vice President Legal Affairs for Fox Television Stations, Inc. In that capacity, I act as in-house counsel for KDFW FOX 4, a television station in Dallas, Dallas County, Texas, which operates under a license issued by the Federal Communications Commission. My duties include overseeing the compliance with subpoenas received by KDFW FOX 4 and its employees.

2.    On or about June 19, 2008 KDFW FOX 4 aired a news broadcast that included an interview Shaun Rabb conducted with criminal defendant James Broadnax. Shortly after the broadcast aired, KDFW FOX 4 received a subpoena from the Dallas County District Attorneys' Office requesting a copy of the interview. KDFW FOX 4 complied with the request and provided a complete copy of the interview between reporter Shaun Rabb and criminal defendant James Broadnax along with a business records affidavit signed by the custodian of records for KDFW FOX 4. These materials were supplied to the Dallas County District Attorneys' Office on or about July 9, 2008.

3.    On our about May 20, 2009, KDFW FOX 4 received a second subpoena in the State v. James Broadnax case – this one was delivered by email and was for the testimony of Shaun Rabb. The subpoena was issued by Assistant District Attorney David Alex. Upon receiving the subpoena, I called Mr. Alex to discuss the subpoena and to try to resolve the issues without court intervention. I informed him of the newly enacted Texas Free Flow of Information Act and offered to send him a copy of the new law that provides a reporter's privilege for Texas journalists. He responded that he was not interested in trying to work out a compromise and that the law did not really matter because this is a capital case, and Rabb was going to appear on Monday, June 1, 2009 and testify.

DL/2302692v1

EXHIBIT
G

00330

Further Affiant Sayeth Not.

_____
Carolyn Forrest

Sworn and subscribed to before me, the undersigned authority, by CAROLYN FORREST, on this __27th__ day of __May__, 2009.

_____
Notary Public in and for
The State of Georgia



JOAN E GIBBS
NOTARY PUBLIC
DEKALB COUNTY, GEORGIA
My Commission Expires
10-30-2009

Page 2 of 2

DL/2302692v1

919 CONGRESS AVENUE, SUITE 1250   AUSTIN, TEXAS 78701-3656
www.sdma.com   512.481.8400 phone   512.481.8444 fax

## Sedgwick
### DETERT, MORAN & ARNOLD LLP

May 26, 2009

*Via Facsimile (214) 653-2924*
David Alex
Assistant District Attorney
Dallas County District Attorneys Office
133 N. Industrial Blvd., LB 19
Dallas, Texas 75207

Re: State of Texas v. James Broadnax; Cause No. F08-24667-Y; Criminal District Court No. 7, Dallas County, Texas

Dear Mr. Alex:

I represent KDFW and reporter Shaun Rabb. I am writing this letter in furtherance to our brief discussion this morning about the subpoena served on Mr. Rabb. As we discussed, I will be out of town on June 1, 2009 and since there are no pretrial matters in this case until July 23, 2009, it is my understanding that we can agree on a different date and mutually convenient time for a Motion to Quash to be heard should one be necessary.

I am hopeful, however, that no such motion will be necessary. To that end, I am sending you a copy of the recent reporter's privilege passed into law in Texas on May 13, 2009. Pursuant to the newly enacted statute, Mr. Rabb's testimony should not be compelled because KDFW has already given you the entirety of the interview between Mr. Rabb and the criminal defendant. It is my understanding that these materials were given to you prior to the Act becoming law so a business records affidavit was included in the materials provided. Under the existing law, the tape would be self authenticating as well. *See* Texas Code of Criminal Procedure Art. 38.111. The new law provides for reimbursement of costs when a journalist is required to testify and should we have to file a Motion to Quash we will seek reimbursement of said costs and fees. Further, the subpoena issued does not comply with the requirements outlined in the law and as such cannot be enforced.

Please call me after you have had a chance to review HB 670. I can be reached on my direct line at (512) 481-8414.

Sincerely,

Laura Lee Prather
Sedgwick, Detert, Moran & Arnold LLP

D)./2302568v1

**EXHIBIT**

H

*Celebrating 75 Years of Service 1933-2008*

H.B. No. 67

AN ACT

relating to a qualified privilege of a journalist not to testify.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Chapter 22, Civil Practice and Remedies Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C. JOURNALIST'S QUALIFIED TESTIMONIAL PRIVILEGE IN CIVIL PROCEEDINGS

Sec. 22.021.  DEFINITIONS. In this subchapter:

(1) "Communication service provider" means a person or the parent, subsidiary, division, or affiliate of a person who transmits information chosen by a customer by electronic means, including:

(A) a telecommunications carrier, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(B) a provider of information service, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(C) a provider of interactive computer service, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230); and

(D) an information content provider, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230).

(2) "Journalist" means a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider and includes:

(A) a person who supervises or assists in gathering, preparing, and disseminating the news or information; or

(B) notwithstanding the foregoing, a person who is or was a journalist, scholar, or researcher employed by an institution of higher education at the time the person obtained or prepared the requested information, or a person who at the time the person obtained or prepared the requested information:

(i) is earning a significant portion of the person's livelihood by obtaining or preparing information for dissemination by a news medium or communication service provider; or

(ii) was serving as an agent, assistant, employee, or supervisor of a news medium or communication service provider.

(3) "News medium" means a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including:

(A) print;

(B) television;

(C) radio;

00333

(D)  photographic;

(E)  mechanical;

(F)  electronic; and

(G)  other means, known or unknown, that are accessible to the public.

(4)  "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant, including a proceeding under Rule 202, Texas Rules of Civil Procedure.

(5)  "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

(A)  an officer, employee, or agent of government;

(B)  a juror;

(C)  an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;

(D)  an attorney or notary public when participating in the performance of a governmental function; or

(E)  a person who is performing a governmental function under a claim of right, although the person is not legally qualified to do so.

Sec. 22.022.  PURPOSE. The purpose of this subchapter is to increase the free flow of information and preserve a free and active press and, at the same time, protect the right of the public to effective law enforcement and the fair administration of justice.

Sec. 22.023.  PRIVILEGE. (a) Except as otherwise provided by this subchapter, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding:

(1)  any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist; or

(2)  the source of any information, document, or item described by Subdivision (1).

(b)  A subpoena or other compulsory process may not compel the parent, subsidiary, division, or affiliate of a communication service provider or news medium to disclose the information, documents, or items or the source of any information, documents, or items that are privileged from disclosure under Subsection (a).

Sec. 22.024.  LIMITED DISCLOSURE GENERALLY. After notice and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any information, document, or item or the source of any information, document, or item obtained while acting as a journalist, if the person seeking the information, document, or item or the source of any information, document, or item makes a clear and specific showing that:

(1)  all reasonable efforts have been exhausted to obtain the information from alternative sources;

(2)  the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information;

(3)  reasonable and timely notice was given of the demand for the information, document, or item;

00334

(4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist;

(5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and

(6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure.

Sec. 22.025. NOTICE. An order to compel testimony, production, or disclosure to which a journalist has asserted a privilege under this subchapter may be issued only after timely notice to the journalist, the journalist's employer, or a person who has an independent contract with the journalist and a hearing. The order must include clear and specific findings as to the showing made by the person seeking the testimony, production, or disclosure and the clear and specific evidence on which the court relied in issuing the court's order.

Sec. 22.026. PUBLICATION OF PRIVILEGED INFORMATION. Publication or dissemination by a news medium or communication service provider of information, documents, or items privileged under this subchapter is not a waiver of the journalist's privilege.

Sec. 22.027. NEWS MEDIA RECORDINGS. Extrinsic evidence of the authenticity of evidence as a condition precedent to the admissibility of the evidence in a civil proceeding is not required with respect to a recording that purports to be a broadcast by a radio or television station that holds a license issued by the Federal Communications Commission at the time of the recording. The court may take judicial notice of the recording license as provided by Rule 201, Texas Rules of Evidence.

SECTION 2. Chapter 38, Code of Criminal Procedure, is amended by adding Articles 38.11 and 38.111 to read as follows:

Art. 38.11. JOURNALIST'S QUALIFIED TESTIMONIAL PRIVILEGE IN CRIMINAL PROCEEDINGS

Sec. 1. DEFINITIONS. In this article:

(1) "Communication service provider" means a person or the parent, subsidiary, division, or affiliate of a person who transmits information chosen by a customer by electronic means, including:

(A) a telecommunications carrier, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(B) a provider of information service, as defined by Section 3, Communications Act of 1934 (47 U.S.C. Section 153);

(C) a provider of interactive computer service, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230); and

(D) an information content provider, as defined by Section 230, Communications Act of 1934 (47 U.S.C. Section 230).

(2) "Journalist" means a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider and includes:

(A) a person who supervises or assists in

00335

gathering, preparing, and disseminating the news or information; or

(B) notwithstanding the foregoing, a person who is or was a journalist, scholar, or researcher employed by an institution of higher education at the time the person obtained or prepared the requested information, or a person who at the time the person obtained or prepared the requested information:

(i) is earning a significant portion of the person's livelihood by obtaining or preparing information for dissemination by a news medium or communication service provider; or

(ii) was serving as an agent, assistant, employee, or supervisor of a news medium or communication service provider.

(3) "News medium" means a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including:

(A) print;
(B) television;
(C) radio;
(D) photographic;
(E) mechanical;
(F) electronic; and
(G) other means, known or unknown, that are accessible to the public.

(4) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(5) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

(A) an officer, employee, or agent of government;
(B) a juror or grand juror;
(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;
(D) an attorney or notary public when participating in the performance of a governmental function; or
(E) a person who is performing a governmental function under a claim of right, although the person is not legally qualified to do so.

Sec. 2. PURPOSE. The purpose of this article is to increase the free flow of information and preserve a free and active press and, at the same time, protect the right of the public to effective law enforcement and the fair administration of justice.

Sec. 3. PRIVILEGE. (a) Except as otherwise provided by this article, a judicial, legislative, administrative, or other body with the authority to issue a subpoena or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding:

(1) any confidential or nonconfidential unpublished information, document, or item obtained or prepared while acting as a journalist; or

(2) the source of any information, document, or item

00336

described by Subdivision (1).

(b)  A subpoena or other compulsory process may not compel the parent, subsidiary, division, or affiliate of a communication service provider or news medium to disclose the unpublished information, documents, or items or the source of any information, documents, or items that are privileged from disclosure under Subsection (a).

Sec. 4.  PRIVILEGE CONCERNING CONFIDENTIAL SOURCES.  (a)  A journalist may be compelled to testify regarding or to disclose the confidential source of any information, document, or item obtained while acting as a journalist if the person seeking the testimony, production, or disclosure makes a clear and specific showing that the source of any information, document, or item:

(1)  was observed by the journalist committing a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist;

(2)  is a person who confessed or admitted to the journalist the commission of a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist;

(3)  is a person for whom probable cause exists that the person participated in a felony criminal offense and the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained or prepared while acting as a journalist; or

(4)  disclosure of the confidential source is reasonably necessary to stop or prevent reasonably certain death or substantial bodily harm.

(b)  If the alleged criminal conduct is the act of communicating, receiving, or possessing the information, document, or item, this section does not apply, and Section 5 governs the act.

(c)  Notwithstanding Subsection (b), if the information, document, or item was disclosed or received in violation of a grand jury oath given to either a juror or a witness under Article 19.34 or 20.16, a journalist may be compelled to testify if the person seeking the testimony, production, or disclosure makes a clear and specific showing that the subpoenaing party has exhausted reasonable efforts to obtain from alternative sources the confidential source of any information, document, or item obtained. In this context, the court has the discretion to conduct an in camera hearing. The court may not order the production of the confidential source until a ruling has been made on the motion.

(d)  An application for a subpoena of a journalist under Article 24.03, or a subpoena of a journalist issued by an attorney representing the state under Article 20.10 or 20.11, must be signed by the elected district attorney, elected criminal district attorney, or elected county attorney, as applicable. If the elected district attorney, elected criminal district attorney, or elected county attorney has been disqualified or recused or has resigned, the application for the subpoena or the subpoena must be signed by the person succeeding the elected attorney. If the elected officer is not in the jurisdiction, the highest ranking assistant to the elected officer must sign the subpoena.

Sec. 5.  PRIVILEGE CONCERNING UNPUBLISHED INFORMATION, DOCUMENT, OR ITEM AND NONCONFIDENTIAL SOURCES.  (a)  After service

00337

of subpoena and an opportunity to be heard, a court may compel a journalist, a journalist's employer, or a person with an independent contract with a journalist to testify regarding or to produce or disclose any unpublished information, document, or item or the source of any information, document, or item obtained while acting as a journalist, other than as described by Section 4, if the person seeking the unpublished information, document, or item or the source of any information, document, or item makes a clear and specific showing that:

(1)  all reasonable efforts have been exhausted to obtain the information from alternative sources; and

(2)  the unpublished information, document, or item:

(A)  is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure; or

(B)  is central to the investigation or prosecution of a criminal case and based on something other than the assertion of the person requesting the subpoena, reasonable grounds exist to believe that a crime has occurred.

(b)  The court, when considering an order to compel testimony regarding or to produce or disclose any unpublished information, document, or item or the source of any information, document, or item obtained while acting as a journalist, should consider the following factors, including but not limited to whether:

(1)  the subpoena is overbroad, unreasonable, or oppressive;

(2)  reasonable and timely notice was given of the demand for the information, document, or item;

(3)  in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist; and

(4)  the subpoena or compulsory process is being used to obtain peripheral, nonessential, or speculative information.

(c)  A court may not consider a single factor under Subsection (b) as outcome-determinative in the decision whether to compel the testimony or the production or disclosure of the unpublished information, document, or item, or the source of any information, document, or item.

Sec. 6.  NOTICE. An order to compel testimony, production, or disclosure to which a journalist has asserted a privilege under this article may be issued only after timely notice to the journalist, the journalist's employer, or a person who has an independent contract with the journalist and a hearing. The order must include clear and specific findings as to the showing made by the person seeking the testimony, production, or disclosure and the clear and specific evidence on which the court relied in issuing the court's order.

Sec. 7.  PUBLICATION OF PRIVILEGED INFORMATION. Publication or dissemination by a news medium or communication service provider of information, documents, or items privileged under this article is not a waiver of the journalist's privilege regarding sources and unpublished information, documents, or items.

Sec. 8.  PUBLISHED INFORMATION. This article does not apply to any information, document, or item that has at any time been published or broadcast by the journalist.

Sec. 9.  REIMBURSEMENT OF COSTS.  The subpoenaing party shall pay a journalist a reasonable fee for the journalist's time and

00338

costs incurred in providing the information, item, or document subpoenaed, based on the fee structure provided by Subchapter F, Chapter 552, Government Code.

Art. 38.111. NEWS MEDIA RECORDINGS. Extrinsic evidence of the authenticity of evidence as a condition precedent to the admissibility of the evidence in a criminal proceeding is not required with respect to a recording that purports to be a broadcast by a radio or television station that holds a license issued by the Federal Communications Commission at the time of the recording. The court may take judicial notice of the recording license as provided by Rule 201, Texas Rules of Evidence.

SECTION 3. This Act applies only to information, documents, or items or the source of any information, document, or item obtained or prepared for publication in a news medium or communication service provider on or after the effective date of this Act.

SECTION 4. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2009.


_____    _____
President of the Senate                          Speaker of the House


I certify that H.B. No. 670 was passed by the House on April 2, 2009, by the following vote: Yeas 146, Nays 0, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 670 on April 30, 2009, by the following vote: Yeas 146, Nays 0, 1 present, not voting.

                                                 _____
                                                      Chief Clerk of the House


I certify that H.B. No. 670 was passed by the Senate, with amendments, on April 28, 2009, by the following vote: Yeas 31, Nays 0.

                                                 _____
                                                      Secretary of the Senate

APPROVED: _____
                          Date


_____
          Governor

00339

**Texas Legislature Online
Actions**

**Bill:** HB 670        **Legislative Session:** 81(R)          **Author:** Martinez Fischer

**Actions:** (descending date order)
Viewing Votes: Most Recent House Vote | Most Recent Senate Vote

| Description | Comment | Date | Time | Journal Page |
|---|---|---|---|---|
| E  Effective immediately | | 05/13/2009 | | |
| E  Signed by the Governor | | 05/13/2009 | | 3680 |
| E  Sent to the Governor | | 05/04/2009 | | 2554 |
| S  Signed in the Senate | | 05/04/2009 | | 1947 |
| H  Signed in the House | | 05/04/2009 | | 2427 |
| H  Reported enrolled | | 05/04/2009 | 07:57 AM | 2554 |
| S  House concurs in Senate amendment(s)-reported | | 04/30/2009 | | 1872 |
| H  Record vote | RV#411 | 04/30/2009 | | 2160 |
| H  Text of Senate Amendment(s) | | 04/30/2009 | | 2160 |
| H  House concurs in Senate amendment(s) | | 04/30/2009 | | 2160 |
| H  Senate Amendments Analysis distributed | | 04/28/2009 | 10:26 PM | |
| H  Senate Amendments printed and distributed | | 04/28/2009 | 10:05 PM | |
| H  Senate passage as amended reported | | 04/28/2009 | | 2007 |
| S  Record vote | | 04/28/2009 | | 1707 |
| S  Passed | | 04/28/2009 | | 1707 |
| S  Read 3rd time | | 04/28/2009 | | 1707 |
| S  Record vote | | 04/28/2009 | | 1706 |
| S  Three day rule suspended | | 04/28/2009 | | 1706 |
| S  Vote recorded in Journal | | 04/28/2009 | | 1706 |
| S  Passed to 3rd reading | | 04/28/2009 | | 1706 |
| S  Amendment withdrawn | | 04/28/2009 | | 1706 |
| S  Motion withdrawn | | 04/28/2009 | | 1706 |
| S  Motion to table | | 04/28/2009 | | 1706 |
| S  Amendment(s) offered | FA1 Williams | 04/28/2009 | | 1705 |
| S  Read 2nd time | | 04/28/2009 | | 1705 |
| S  Rules suspended-Regular order of business | | 04/28/2009 | | 1705 |
| S  Placed on intent calendar | | 04/22/2009 | | |
| S  Committee report printed and distributed | | 04/20/2009 | 02:55 PM | |
| S  Recommended for local & uncontested calendar | | 04/20/2009 | | |
| S  Reported favorably as substituted | | 04/20/2009 | | 1226 |
| S  Testimony taken in committee | | 04/15/2009 | | |
| S  Considered in public hearing | | 04/15/2009 | | |
| S  Scheduled for public hearing on . . . | | 04/15/2009 | | |
| S  Referred to Jurisprudence | | 04/07/2009 | | 911 |

00340

| | | | |
|---|---|---|---|
| S Read first time | | 04/07/2009 | 911 |
| S Received from the House | | 04/06/2009 | 888 |
| H Reported engrossed | | 04/03/2009  07:50 AM | 1093 |
| H Record vote | RV#91 | 04/02/2009 | 1045 |
| H Passed as amended | | 04/02/2009 | 1045 |
| H Amended | 1-Martinez Fischer | 04/02/2009 | 1045 |
| H Read 3rd time | | 04/02/2009 | 1044 |
| H Record vote | RV#86 | 04/01/2009 | 1022 |
| H Passed to engrossment as amended | | 04/01/2009 | 1022 |
| H Amended | 1-Martinez Fischer | 04/01/2009 | 1022 |
| H Read 2nd time | | 04/01/2009 | 1022 |
| H Placed on Major State Calendar | | 04/01/2009 | |
| H Considered in Calendars | | 03/30/2009 | |
| H Committee report sent to Calendars | | 03/27/2009 | |
| H Committee report printed and distributed | | 03/26/2009  10:45 PM | |
| H Comte report filed with Committee Coordinator | | 03/26/2009 | 989 |
| H Reported favorably as substituted | | 03/23/2009 | |
| H Testimony taken/registration(s) recorded in committee | | 03/23/2009 | |
| H Committee substitute considered in committee | | 03/23/2009 | |
| H Vote reconsidered in committee | | 03/23/2009 | |
| H Considered in public hearing | | 03/23/2009 | |
| H Reported favorably w/o amendment(s) | | 03/16/2009 | |
| H Considered in public hearing | | 03/16/2009 | |
| H Left pending in committee | | 03/02/2009 | |
| H Testimony taken/registration(s) recorded in committee | | 03/02/2009 | |
| H Considered in public hearing | | 03/02/2009 | |
| H Scheduled for public hearing on . . . | | 03/02/2009 | |
| H Referred to Judiciary & Civil Jurisprudence | | 02/18/2009 | 326 |
| H Read first time | | 02/18/2009 | 326 |
| H Filed | | 01/16/2009 | |

00341

05/26/2009 15:39 FAX                                                                    ☑001

```
*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

TX/RX NO            2480
RECIPIENT ADDRESS   167*12146532924
DESTINATION ID
ST. TIME            05/26 15:35
TIME USE            03'20
PAGES SENT          11
RESULT              OK
```

**Sedgwick**
  DETERT, MORAN & ARNOLD LLP

919 CONGRESS, SUITE 1250   AUSTIN, TEXAS 78701

www.sdma.com   512.481.8400 phone   512.481.8444 fax

## Facsimile Transmittal Sheet

DATE:  May 26, 2009

TIME:  3:25 PM

NUMBER OF PAGES:  2 (Including cover page)

If any portion of the following document is
illegible or missing, please call our Fax Center
at 512.481.8444 as soon as possible.

TO:

| NAME | COMPANY | TELEPHONE | FACSIMILE |
|------|---------|-----------|-----------|
| David Alex | Dallas County District Attorneys | | (214) 653-2924 |
| Assistant District Attorney | Office | | |

FROM:

| NAME: | Laura Lee Prather | FAX BACK NUMBER: | 512.481.8444 |
|-------|-------------------|------------------|--------------|
| OFFICE: | Austin | OUR FILE NO.: | 3546-10 |

RE:   State of Texas v. James Broadnax; Cause No. F08-24667-Y; Criminal District Court No. 7, Dallas
      County, Texas

MESSAGE:

00342

08-CR-3439-B

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 117TH JUDICIAL DISTRICT |
| | § | |
| KENNETH HUBBARD | § | |
| AGG SEXUAL ASSAULT | § | NUECES COUNTY, TEXAS |

## ORDER GRANTING MOTION TO QUASH SUBPOENA

On this day came on to be heard the Motion to Quash Subpoena filed by non-parties, KIII-TV3 and its reporter/journalist, Katy Kiser. Having reviewed the Motion, its exhibits, applicable authorities and the argument of counsel, the Court finds that, in accordance with the provisions of the newly-enacted Free Flow of Information Act, the Motion is well-taken and that the Motion should be and it is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Subpoena issued at the request of the State of Texas and served on Katy Kiser summoning her to testify as a witness for the State in this cause is hereby QUASHED.

It is further ORDERED that no other subpoenas in this cause, directed at either KIII-TV3 or Katy Kiser, shall be issued nor served on either KIII-TV3 or Katy Kiser without leave of this Court first being obtained.

SIGNED this ____ day of _____, 2009.

STATE OF TEXAS
COUNTY OF NUECES

This above and foregoing is a true and
correct copy as the same appears on
file and/or recorded in the appropriate
records of Nueces County, Texas
I hereby certify on _____
May 26, 2009

PATSY PEREZ
NUECES COUNTY DISTRICT CLERK
CLERK OF THE DISTRICT AND COUNTY COURTS AT LAW

Hon. Sandra L. Watts
Presiding Judge, 117th District Court

EXHIBIT
I

00343

05/27/2009 16:46 FAX 46??                    SMM DALLAS                                      ☒001

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO               2077
CONNECTION TEL                  92146532924
SUBADDRESS
CONNECTION ID
ST. TIME               05/27 16:37
USAGE T                08'57
PGS. SENT              46
RESULT                 OK
```

Sedgwick
DETERT, MORAN & ARNOLD LLP

910 CONGRESS, SUITE 1250   AUSTIN, TEXAS 78701

www.sdma.com   512.481.8400 phone   512.481.8444 fax

## Facsimile Transmittal Sheet

DATE:   May 27, 2009

TIME:   3:17 PM

NUMBER OF PAGES: 46 (including cover page)

If any portion of the following document is
illegible or missing, please call our Fax Center
at 512.481.8444 as soon as possible.

TO:

| NAME | COMPANY | TELEPHONE | FACSIMILE |
|------|---------|-----------|-----------|
| Bradley K. Lollar | Public Defender | | 214-653-3539 |
| David Alex | Asst. District Attorney | | 214-653-2924 |

FROM:

NAME:   Laura Lee Prather                PAX BACK NUMBER:   512.481.8444

OFFICE:   Austin                          OUR FILE NO.:

RE:   The State of Texas v. James Broadnax; Cause No. F08-24667-Y; In the Criminal District Court
      Number 7

MESSAGE:   The attached document is being filed today. Attached is your courtesy copy. Please call if you have any
           questions. Thanks!

00344

```
**********************
***   TX REPORT   ***
**********************

TRANSMISSION OK

TX/RX NO            2076
CONNECTION TEL                92146633539
SUBADDRESS
CONNECTION ID
ST. TIME           05/27 16:17
USAGE T            07'46
PGS. SENT          46
RESULT             OK
```

# Sedgwick
### DETERT, MORAN & ARNOLD LLP

919 CONGRESS, SUITE 1250   AUSTIN, TEXAS 78701

www.sdma.com   512.481.8400 *phone*   512.481.0444 *fax*

## Facsimile Transmittal Sheet

DATE:   May 27, 2009

TIME:   3:17 PM

NUMBER OF PAGES: 46 (including cover page)

If any portion of the following document is
illegible or missing, please call our Fax Center
at 512.481.8444 as soon as possible.

**TO:**

| NAME | COMPANY | TELEPHONE | FACSIMILE |
|---|---|---|---|
| Bradley K. Lollar | Public Defender | | 214-653-3539 |
| David Alex | Asst. District Attorney | | 214-653-2924 |

**FROM:**

NAME:   Laura Lee Prather          FAX BACK NUMBER:   512.481.8444

OFFICE:   Austin                   OUR FILE NO.:

RE:   The State of Texas v. James Broadnax; Cause No. F08-24667-Y; In the Criminal District Court Number 7

MESSAGE:   The attached document is being filed today. Attached is your courtesy copy. Please call if you have any questions. Thanks!

00345

CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT OF |
| VS. | * | DALLAS COUNTY, TEXAS |
| JAMES BROADNAX | * | CRIMINAL COURT #7 |

## O R D E R

Before the Court is Movants' Motion to Quash the subpoena of non-party Shaun Rabb. The Dallas County District Attorney's Office served KDFW Fox 4 with the subpoena on June 25, 2008.

The Movants' cite the recently enacted Texas Free Flow of Information Act in support of their Motion to Quash. By its terms, "this Act applies only to information, documents, or items or the source of any informtion, document or item obtained or prepared for publication in a news medium or communication service provider on or after the effective date of this Act." (Emphasis added.) The Act does not apply retroactively.

The effective date of the Act was May 13, 2009. The subpoenaed broadcast was dated June 19, 2008. It is clear then that the Act does not apply to the subpoenaed broadcast.

Accordingly, without otherwise addressing the merits of the Movants' Motion to Quash, the motion is DENIED.

SO ORDERED.

_____    28 MAY
JUDGE MICHAEL R. SNIPES        2009
CRIMINAL DISTRICT COURT 7
DALLAS COUNTY, TEXAS

EXHIBIT

2

# Vinson&Elkins

Marc A. Fuller  mfuller@velaw.com
Tel 214.220.7881  Fax 214.999.7881

May 29, 2009

**BY HAND DELIVERY**
Ms. LaMonica Littles, Chief Clerk
Criminal District No. 7
Frank Crowley Courts Bldg.
133 N. Industrial Blvd., 7th Floor
Dallas, TX 75207

Re:    *The State of Texas v. James Broadnax*, Cause No. F08-24667-Y in the District Court of Dallas County, Texas, Criminal Court #7

Dear Ms. Littles:

    I enclose for filing an original and two copies of Non-Party Ellen Goldberg's Motion to Quash Trial Subpoena.

    Please file the original and return the file-stamped copies to my messenger. Thank you for your assistance.

Sincerely,

Marc A. Fuller

Enclosures
Dallas 1568368v1

c:    David Alex, Esq. (w/encl.) (via fax and U.S. Mail)

**EXHIBIT**
3

Vinson & Elkins LLP  Attorneys at Law
Abu Dhabi  Austin  Beijing  Dallas  Dubai  Hong Kong  Houston
London  Moscow  New York  Shanghai  Tokyo  Washington

Trammell Crow Center, 2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Tel 214.220.7700  Fax 214.220.7716  www.velaw.com

00347

CASE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| JAMES BROADNAX. | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| | § | CRIMINAL COURT No. 7 |
| | § | |

## NON-PARTY ELLEN GOLDBERG'S MOTION TO QUASH TRIAL SUBPOENA

TO THE HONORABLE COURT:

Ellen Goldberg files this Motion to Quash Trial Subpoena, and respectfully shows this Court the following:

### I.    Background

On June 23, 2008 Ellen Goldberg, a reporter for KXAS NBC-5 ("NBC-5"), conducted an interview of defendant James Broadnax. The entire interview was taped. Before Broadnax spoke to Goldberg, he gave interviews to several other local television stations. In the first interview, Broadnax initially denied killing two men outside a Christian recording studio in Garland a few days earlier. But, as the interview progressed, he began to change his story and eventually confessed to the two murders.[1] During later interviews (including a brief interview with Goldberg), Broadnax gave similar confessions.

Shortly thereafter, the Dallas County District Attorney's Office (the "DA's Office") subpoenaed the video outtakes of these interviews from the television stations, including NBC-5. Like other stations, NBC-5 complied with the subpoena, producing all tapes of its interview with Broadnax. To alleviate any need for further production or testimony, NBC-5 gave the DA's

---

[1] That interview is broadcast in its entirety on the CBS-11 website, http://cbs11tv.com/video/?id=29586@ktvt.dayport.com.

MOTION TO QUASH SUBPOENA                                                              PAGE 1

00348

Office an affidavit from the station's custodian of records, which establishes the tapes' authenticity as business records.[2]

On May 20, 2009, the DA's Office attempted to issue a second subpoena—this time for Goldberg to testify as a State's witness in the case against Broadnax. The new subpoena was not served on Goldberg. Instead, it was emailed to Sharla Alford, the assistant to the news director for NBC-5.[3] Counsel for NBC-5 has attempted to confer with the DA's office regarding the defective service of the subpoena and to understand what evidence the DA's Office seeks from Goldberg. Despite these attempts, however, the DA's Office has refused to withdraw the subpoena.

## II.     Summary of Argument

Ellen Goldberg should not be compelled to testify because she was never properly served with the subpoena. Instead, that subpoena was emailed, without request for acknowledgment of receipt, to the NBC-5 news director's assistant, Sharla Alford. Ms. Alford is not authorized to accept service of the subpoena on Goldberg's behalf. Moreover, the email sent to Ms. Alford did not comply with the requirements for electronic transmission under Article 24.04 of the Texas Code of Criminal Procedure.

Even if Goldberg had been properly served, she should not be compelled to provide testimony for the State. It is impossible to imagine what Goldberg's testimony would add to the admissible evidence currently in the State's possession. The State already has the entire taped interview that Goldberg conducted with Broadnax. It also has a business records affidavit from NBC-5 to establish the authenticity of the tapes. These video tapes are the best evidence of what

---

[2] A copy of that affidavit is attached to the Affidavit of Sharla Alford ("Alford Affidavit") as Exhibit A.
[3] A copy of the email is attached as Exhibit B to the Alford Affidavit.

MOTION TO QUASH SUBPOENA                                                          PAGE 2

00349

Broadnax said and did during his interview with Goldberg. There is no reason to force Goldberg to provide her own account of the interview, which would be based on her imperfect recollections from nearly one year ago.

## III.    Argument and Authorities

### A.    Goldberg Has Not Been Properly Served With The Subpoena.

The subpoena at issue was not properly served on Goldberg. As noted above, it was emailed to the assistant to the station's news director, Sharla Alford. Ms. Alford is not authorized to accept the subpoena on Goldberg's behalf, nor is she required to do so under law.[4] Moreover, even if the email had been sent to Goldberg, it would not have satisfied the requirements for electronic service under Article 24.04 of the Texas Code of Criminal Procedure. Article 24.04(a)(3) allows email service of a subpoena only if the email is accompanied by a request for acknowledgment of receipt by the witness. TEX. CODE CRIM. P. art. 24.04(a)(3). There was no such request here.[5]  Furthermore, the email did not contain the required "notice that an acknowledgment of receipt of the subpoena must be made in a manner enabling verification of the person acknowledging receipt." TEX. CODE CRIM. P. art. 24.04(c). Based on this defective service, the subpoena should be quashed.

### B.    Goldberg's Testimony Is Unnecessary And Immaterial.

Even if service had been proper, it is clear that Goldberg has nothing to add to the evidence already in the possession of the DA's Office. As noted above, Goldberg's entire interview with Broadnax was taped, and the DA's Office has those tapes. To the extent that the

---

[4] Alford Affidavit ¶ 6.
[5] *Id.* ¶ 5; Ex. B.

00350

State wishes to introduce the tapes into evidence, it has a business records affidavit sufficient to establish their authenticity. It does not need Goldberg's testimony.[6]

Moreover, there is no basis for Goldberg to testify about the mental impressions she formed during her interview with Broadnax, including regarding Broadnax's state of mind. Nor are those mental impressions even admissible. Surely, the best evidence of Broadnax's state of mind during the interview is the taped interview itself. *See* TEX. R. EVID. 1002, 1003; *Ramsey v. Jones Enters*, 810 S.W.2d 902, 905 (Tex. App.—Beaumont 1991, writ denied); *Overton v. State*, 490 S.W.2d 556, 559 (Tex. Crim. App.—1973). Goldberg cannot be expected to accurately recount every important detail regarding what Broadnax said and did during the June 2008 interview. Her testimony on this issue would therefore be far more speculative and far less reliable than the video record itself, which is available to the Court and the jury. In addition, to the extent that any inferences regarding Broadnax's state of mind during the June 2008 interview can be drawn, that task is properly within the province of the Court or the jury—not a reporter. Goldberg's speculative testimony on this point, based on her imperfect recollection, would be highly prejudicial, misleading, and confusing. *Cf.* TEX. R. EVID. 403 (relevant evidence should be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence").

There is no other colorable reason why Goldberg should be required to provide testimony in this case. In fact, this is just the sort of speculative fishing expedition that courts have rejected in similar cases. For example, the Texas Court of Criminal Appeals has held that a party seeking testimony from a reporter must show that the testimony is material. *See Coleman v. State*, 966

---

[6] In fact, it is not even clear that Goldberg is the appropriate witness to authenticate these tapes, even if live testimony is needed.

<u>MOTION TO QUASH SUBPOENA</u>                                                    PAGE 4

00351

S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (affirming trial court's order granting motion to quash subpoena of reporters, where requesting party had failed to make showing that reporter testimony would be material); *see also Gohring v. State*, 967 S.W.2d 459, 465 (Tex. App.—Beaumont 1998, no writ). This authority, which is based on a simple relevancy test, not the application of a "reporter's privilege," is consistent with Justice Lewis Powell's admonition in *Branzburg v. Hayes* that the "courts will be open" to journalists who need protection from subpoenas like this one, which are overbroad, harassing, and do not seek any relevant evidence. *See* 408 U.S. 665, 710 (1972) (Powell, J., concurring).

### C.    The Subpoena Must Be Quashed Based On Texas's New Shield Law.

Given the defective service, as well as the irrelevance and immateriality of Goldberg's testimony, the Court need not decide whether the subpoena can be enforced consistent with Texas's newly enacted shield law, the Free Flow of Information Act, Tex. H.B. 670 (to be codified at TEX. CODE OF CRIM. P. Arts. 38.11 and 38.111) ("the Shield Law"). NBC-5 is aware that the Court has already held, in response to another television station's motion, that the Shield Law does not apply here. NBC-5 respectfully disagrees with this holding. To preserve its argument under the Shield Law as grounds for appeal (if necessary), however, NBC-5 briefly notes that the subpoena does not comply with the Shield Law's special procedural requirements, including that the subpoena must be signed by the elected District Attorney. *See* TEX. CODE CRIM. P. art. 38.11, section 4(d). Moreover, the Shield Law explicitly provides that broadcasts are self-authenticating.[7] TEX. CODE CRIM. P. art. 38.111. Both of these provisions take effect immediately and are not affected by Section 3 of the Act. *See* HB 670 § 4. Furthermore, to the extent that the DA's Office seeks evidence that has not already been obtained, such as mental

---

[7] Goldberg's entire interview of Broadnax is broadcast at NBC-5's website, http://www.nbcdfw.com/news/local/Jailhouse_Interview__James_Broadnax_Dallas-Fort_Worth.html.

MOTION TO QUASH SUBPOENA                                                      PAGE 5

00352

impressions that have not already been formed, such newly obtained evidence also would not be affected by Section 3 of the Act and therefore would be subject to the requirements of the Shield Law (such as the exhaustion of alternative sources and a "clear and specific showing" that the information being sought is material and essential to the case), which cannot be satisfied here. *See* TEX. CODE CRIM. P. art. 38.11, section 5(a)-(b).

IV.    Conclusion

WHEREFORE, Ellen Goldberg respectfully requests that this Court: (1) grant this motion; (2) quash the trial subpoena; (3) enter a protective order; and (4) grant such further relief to which she may be entitled.

Respectfully submitted,

Thomas S. Leatherbury
  State Bar No. 12095275
Marc A. Fuller
  State Bar No. 24032210
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
214-220-7881
214-999-7881 (fax)

**ATTORNEYS FOR ELLEN GOLDBERG**

00353

## CERTIFICATE OF CONFERENCE

Telephone conferences were held on May 27 and 28, 2009 with Assistant District Attorney David Alex on the merits of this motion. Agreement could not be reached; therefore, it was presented to the Court for determination.

_____
Marc A. Fuller

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served by fax and mail to counsel below on this 29th day of May, 2009.

David Alex, Esq.
Assistant District Attorney
133 N. Industrial Blvd., LB 19
Dallas, TX 75207

_____
Marc A. Fuller

1567632_1.DOC

MOTION TO QUASH SUBPOENA                                                    PAGE 7

00354

CASE NO. F08-24667-Y

THE STATE OF TEXAS,                    §          IN THE DISTRICT COURT

v.                                     §

JAMES BROADNAX,                        §          DALLAS COUNTY, TEXAS

                                       §          CRIMINAL COURT No. 7

## AFFIDAVIT OF SHARLA ALFORD

STATE OF TEXAS              §

COUNTY OF DALLAS            §

Before me, the undersigned Notary Public, on this day personally appeared Sharla Alford, who being duly sworn according to law on her oath deposed and said:

1. My name is Sharla Alford. I am over eighteen years of age, have never been convicted of a crime, and am fully competent to make this Affidavit.

2. I am an assistant to the news director at KXAS-TV NBC-5 ("NBC-5").

3. In June 2008, NBC-5 received a subpoena from the Dallas District Attorney's Office, requesting copies of video tapes of an interview that NBC-5 reporter Ellen Goldberg had conducted with James Broadnax (the "June 2008 Subpoena").

4. NBC-5 complied fully with the June 2008 Subpoena, producing all tapes of the interview and the broadcasts in which interview footage was used. In addition, NBC-5 provided a business records affidavit, a copy of which is attached as Exhibit A.

5. On May 20, 2009, I received the email attached as Exhibit B. The email attached a subpoena for Ms. Goldberg, which is also attached in Exhibit B.

1

00355

6. I was not (and still am not) authorized to accept service of this subpoena on Ms. Goldberg's behalf.

FURTHER AFFIANT SAYETH NOT.

SHARLA ALFORD

Before me the undersigned notary public on this day personally appeared Sharla Alford, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 29th day of May

NOTARY PUBLIC

MY COMMISSION EXPIRES: 8-9-2011

1568250_1.DOC

2

00356

## Grand Jury Subpoena

THE STATE OF TEXAS ) 
COUNTY OF DALLAS )

### AFFIDAVIT

Before me, the undersigned authority, personally appeared SHARLA ALFORD, who, being by me duly sworn, deposed as follows:

My name is SHARLA ALFORD, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

1.    I am the Custodian of Records for NBC Subsidiary (KXAS-TV), a Division of Station Venture Operations, LP ("KXAS") and I am responsible for responding to the Subpoena in the above-captioned matter (the "Subpoena"). I have the authority to certify the videotape of the requested footage and copies of it.

Exhibit A

00357

2.     Attached hereto is video footage that is an exact duplicate of the original footage described in the Subpoena.  This video footage is from KXAS-TV, a Division of Station Venture Operations, L.P.  Said video footage is kept by KXAS in the regular course of business, and it was the regular course of business of KXAS for an employee or representative of KXAS, with knowledge of the acts, events, conditions, opinions or information recorded, to make the record or transmit information thereof to be included in such record.  Such record was made at or near the time of the events, or reasonably soon thereafter.



SHARLA ALFORD
EXECUTIVE ASSISTANT
NBC SUBSIDIARY (KXAS-TV), A Division of Station Venture Operations L.P.

AFFIANT

SWORN TO AND SUBSCRIBED before me on the __11__ day of July, 2008.

MARTHA STALLARD
My Commission Expires
August 9, 2011

Notary Public, State of Texas

Notary's printed name:

Martha Stallard

My commission expires: __8-9-2011__

☑002

07/07/2008 11:57 FAX

IN RE INVESTIGATION

OF

JAMES BROADNAX

IN THE GRAND JURY OF

DALLAS COUNTY, TEXAS

JULY TERM, A.D., 2008

## LAW ENFORCEMENT AGENCY REQUEST FOR APPLICATION FOR ISSUANCE OF SUBPOENA DUCES TECUM SUMMONING PERSON TO APPEAR BEFORE GRAND JURY

TO THE FOREMAN OF THE GRAND JURY OF DALLAS COUNTY:

I, David N. Barger, a peace officer under the laws of the State of Texas, do hereby request that the Foreman of the Grand Jury of the County of Dallas, State of Texas make application to the District Court of Dallas County for issuance of a subpoena duces tecum summoning CUSTODIAN of RECORDS (or designee) for:
KXAS Channel 5, 3900 Barnett St., Ft. Worth, Texas and to produce the following records or documents for use in a legitimate law enforcement investigation which is being conducted under auspices of the Grand Jury:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

I hereby certify that the testimony of the said witness is believed to be material.

David N. Barger
Investigator, Dallas District Attorney
Frank Crowley Courts Building
133 N. Industrial Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3614

Grand Jury Subpoena
Page 1 of 5

00359

☑003

07/07/2008 11:58 FAX

IN RE INVESTIGATION

OF

JAMES BROADNAX

IN THE GRAND JURY OF

DALLAS COUNTY, TEXAS

JULY TERM, A.D., 2008

## APPLICATION FOR ISSUANCE OF SUBPOENA DUCES TECUM SUMMONING PERSON TO APPEAR BEFORE GRAND JURY

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Foreman of the Grand Jury of the County of Dallas, State of Texas, and pursuant to TEX. CODE CRIM. PROC. ANN. art. 20.11 (Vernon 1977), requests that the Court issue forthwith a subpoena duces tecum summoning CUSTODIAN of RECORDS (or designee) for: KXAS Channel 5, 3900 Barnett St., Ft. Worth, Texas to appear before the Dallas County Grand Jury, Frank Crowley Courts Bldg., 133 N. Industrial Blvd. , Dallas, Texas, forthwith date of July 21, 2008 , and to produce for the said Grand Jury at the said time and place the following records and documents:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

The testimony of the said witness is believed to be material.

Foreman of The Grand Jury

Grand Jury Subpoena
Page 2 of 5

00360

@004

07/07/2008 11:58 FAX

ⒶⒷⒸ #1

| | IN THE GRAND JURY OF |
|---|---|
| IN RE INVESTIGATION | |
| | DALLAS COUNTY, TEXAS |
| OF | |
| | JULY TERM, A.D., 2008 |
| JAMES BROADNAX | |

## SUBPOENA DUCES TECUM
## SUMMONING WITNESS TO
## APPEAR BEFORE GRAND JURY

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS, TO THE SHERIFF OF DALLAS COUNTY, TEXAS OR ANY CONSTABLE OR PEACE OFFICER OF THE STATE OF TEXAS ............. GREETINGS:

YOU ARE COMMANDED TO SUMMON............. CUSTODIAN of RECORDS (or designee) for: KXAS Channel 5, 3900 Barnett St., Ft. Worth, Texas to appear before the Dallas County Grand Jury, Frank Crowley Courts Bldg., 133 N. Industrial Blvd. , Dallas, Texas, forthwith date of July 21, 2008 , and to produce for the said Grand Jury at the said time and place the following records and documents:

COPIES OF ALL AUDIO/VIDEO BROADCAST TAPES, OUT-TAKES (RECORDED BUT NOT AIRED), INTERVIEW NOTES AND CORRESPONDENCE REGARDING THE MURDER OF MATTHEW BUTLER AND STEPHEN SWAN IN GARLAND, TEXAS ON JUNE 19, 2008 INCLUDING INTERVIEWS OF THE SUSPECTS JAMES BROADNAX AND DAMARIUS CUMMINGS.

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA WILL INTERFERE WITH AN ONGOING CRIMINAL INVESTIGATION AND IS, THEREFORE, NOT AUTHORIZED. NOTICE: UNDER TEX. CODE CRIM. PROC. ANN. art. 24.05 (Vernon 1977), REFUSAL TO OBEY THIS SUBPOENA MAY RESULT IN THE IMPOSITION OF A FINE.

Grand Jury Subpoena
Page 3 of 5

00361

☑ 005

07/07/2008 11:58 FAX

ODC #1

IN RE INVESTIGATION

OF

JAMES BROADNAX

IN THE GRAND JURY OF

DALLAS COUNTY, TEXAS

JULY TERM, A.D., 2008

*In lieu of personally appearing before the said Grand Jury at the said time and place, the said witness may comply with this subpoena by furnishing true and correct copies of the aforesaid records to the following-named person at the following address:*

David N. Barger, Lt./Investigation Division
Dallas District Attorney
Frank Crowley Courts Building 11th Floor
133 N. Industrial Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3614

HEREIN FAIL NOT, but of this writ make due return, showing how you have executed the same.

WITNESS MY OFFICIAL SIGNATURE, this ___ day of ___, A.D., 2008.

JUDGE,
___ District Court ___
Dallas County, Texas

Grand Jury Subpoena
Page 4 of 5

00362

☑008

07/07/2008 11:58 FAX

IN RE INVESTIGATION

OF

JAMES BROADNAX

IN THE GRAND JURY OF

DALLAS COUNTY, TEXAS

JULY TERM, A.D., 2008

### RETURN

CAME TO HAND on this _____ day of _____, A.D., 2008, and executed by summoning the within-named witness on the _____ day of _____, A.D., 2008.

Criminal District Attorney, Dallas County, Texas

By _____ Investigator

_____
**Sheriff, Constable or Peace Officer**

Grand Jury Subpoena
Page 5 of 5

00363

**Alford, Sharla (NBC Universal, KXAS)**

| | |
|---|---|
| **From:** | BARGER DAVID N [DAVID.BARGER@dallascounty.org] |
| **Sent:** | Wednesday, May 20, 2009 3:01 PM |
| **To:** | Alford, Sharla (NBC Universal, KXAS) |
| **Cc:** | ALEX DAVID M |
| **Subject:** | Broadnax Cap Murder Trial |

**Attachments:** Goldberg Subpoena.pdf

Sharla,

I've attached a subpoena for Ellen Goldberg for an appearance on 6/1/09 in CDC #7, Judge Michael Snipes' court. Ms. Goldberg or the station's attorney can contact Asst. D.A. David Alex with any questions. His cell #972-989-2900.

Thanks,

Lt. David Barger
Dallas District Attorney's Office
Investigation Division
133 N. Industrial Blvd, LB 19
Dallas, TX 75207-4399
214-653-3614
http://dallasda.com/investigation-division.html

**Exhibit B**

5/29/2009

00364

NO F08-24667-Y

THE STATE OF TEXAS
TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
OF THE STATE OF TEXAS – GREETINGS:
YOU ARE HEREBY COMMANDED TO SUMMON

CRIMINAL DISTRICT COURT #7
DALLAS COUNTY, TEXAS

ELLEN GOLDBERG, KXAS CH 5 NEWS
UNKNOWN
DALLAS, TEXAS

THE STATE OF TEXAS
VS.

To be and appear before the CRIMINAL District Court #7 of Dallas County, Texas at the courthouse of said County, in the City of Dallas, on the 1ST day of JUNE , 20 09 , at 8:30 o'clock A. M., Then and there to testify as a witness in behalf of the STATE in a criminal Action pending in said court, wherein THE STATE OF TEXAS is plaintiff, and JAMES BROADNAX Defendant No. F08-24667-Y

JAMES BROADNAX.

CAPITAL MURDER

SUBPOENA

DUECES TECUM (IF APPLICABLE)                    ☒ NOT APPLICABLE
and that he bring with him and produce in said Court, at said time and place,

ISSUED
This 20TH day of MAY, 20 09
Gary Fitzsimmons
Clerk, District Courts
Dallas County, Texas
By T. JACKSON Deputy

desired as evidence in said Criminal action, to-wit: in a certain suit pending in said court.

and there remain from day to day and from term to term until discharged by the Court
HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

OUT OF COUNTY (IF APPLICABLE)                    ☒ NOT APPLICABLE
A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as Fines and costs in other criminal cases.

ATTORNEY:

DAVID ALEX
ASSISTANT DISTRICT ATTORNEY
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207
214-653-3600

WITNESS MY OFFICIAL SIGNATURE,      20TH day of MAY , 20 09
                                    Fitzsimmons
                                    District Courts
                                    nty Texas

                By                          Deputy
                        AC    ON

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS, TEXAS 75207

*St. Peter Herald v. St. Peter*      *Texas v. Lyon*                                    19 Med. L. Rptr.    2153

and economically outside the [of the] general public. Such a [ra]tionalization is frightening. The [bas]ically contending that govern[ment] cover-ups save the city time and [this] is undoubtedly true. Gov[ernmenta]l cover-ups also save the city's [from] embarrassment and ac[tiv]ity. It seems fundamental that a[n effec]tive democracy cannot function [in an] informed constituency. Con[sequence] constituency of this truism is [the] task. When the public actively [info]rmation about its government's [wrong]ing, then, every effort should be [made to] accommodate this interest. Ar[guing that] the public will eventually dis[cover a set]tlement or active litigation does [not ade]quately address the issue. A [claimant] can wait several years before [final] bringing suit and settlements on [a filed] claim could occur years after [alleged] wrongdoing. Little or no ac[countabil]ity is left for the responsible [governm]ent officials or departments at [that] time.

[The Ci]ty also urges that the public has [no polic]y to inject extraneous issues [into a law]suit, clouding the actual dis[pute. The] municipality believes a par[ticular law]suit is being muddied by irrel[evant] or tangential issues, the [municip]ality certainly has the opportuni[ty to inf]orm the public of this belief. It [is] equally likely, however, that the [public] will more readily recognize the [true na]ture projected by the lawsuit, [seeing the] forest for the trees, and the [issues] aimed to be extraneous and irrel[evant to] the municipality will actually be [the im]portant policy considerations [the city] would like to avoid. It is only by [posing] and addressing the inadequa[cies and i]niquities within a governmen[t entit]y that a governmental entity will [be "of] the people, by the people, [for the] people." The City of St. [Peter w]ould rather sweep the dispute at [issue un]der the rug and hope that any [problem i]ssues this dispute might involve [might] go away. I find this extremely

[The] majority seems to agree that the [rationa]lizations behind shielding [the notic]e of claim from public scrutiny [are at b]est tenuous. Yet the majority also [finds th]at such policy determinations are [for the] legislature. It appears, however, [that the] majority has nonetheless taken it [upon the]mselves to edit the confusing ["retained in anticipation of a [civil] civil legal action" to make the

phrase intelligible. The majority has basically ignored the word "pending" and allowed the statute to protect all data "retained in anticipation of a civil legal action." Rewriting poorly crafted statutory language seems to be as much a function of the legislature as analyzing the likely policy ramifications of a statute.

Additionally, the in camera review by the trial court should not be considered an effective judicial check on the clearly overbroad discretion granted to the city attorney to determine whether a civil legal action is pending. In order for such a review to be meaningful, the court would have to allow counsel for the parties to participate and present arguments outlining how the language used in the specific document either does or does not "threaten litigation." This is not a situation wherein the trial court is merely analyzing proffered evidence to determine its admissibility in a trial. Rather, the document being analyzed is the actual subject of the dispute.

The public has a right to know when a citizen has alleged its government has committed a legal wrong. The newspapers should be allowed to see the notice of claim letter as Minn. Stat. §13.39 was not meant to protect such a document.

---

## TEXAS v. LYON

### Texas Criminal District Court
### Dallas County

STATE OF TEXAS v. RICHARD LYON, No. F-9141619, December 13, 1991

**NEWSGATHERING**

Forced disclosure of information—Disclosure of unpublished information—In criminal actions (§60.1005)

Reporters have qualified First Amendment privilege not to disclose unpublished notes and other resource materials subpoenaed in criminal action; state's failure to show that notes taken by reporters at press conference held by murder defendant and his attorney are necessary or critical to maintenance of

prosecution, or to show compelling need for disclosure of such information, warrants quashing of subpoena.

---

Reporters file motions to quash subpoenas entered in criminal prosecution. Motions granted.

Robert P. Latham, of Jackson & Walker, Dallas, Texas, for reporters.

*Full Text of Opinion*

Creuzot J.:

The Court has been presented with the motions to quash two subpoenas, one served on KDFW-TV, Inc. and Jim Reed of KDFW, as records custodian, and a second served on Lori Montgomery, a reporter employed by the *Dallas Times Herald*, a daily newspaper, (hereinafter "Petitioners") by the State of Texas. The Court has conducted a hearing on said motions and for reasons hereinafter enumerated finds that the motions to quash should be in all things *GRANTED*.

On or about March 22, 1991, Defendant Richard Lyon and his attorney Dan Guthrie held a press conference to comment on stories that the police had identified Richard Lyon as the prime suspect in the death of his wife. Various members of the media attended the press conference. The Times Herald Printing Company, publisher of *Dallas Times Herald* ("Times Herald") assigned reporter Lori Montgomery to attend the press conference and prepare reports on the proceedings for possible publication. Likewise, KDFW, Inc., the operator of a television station in Dallas, assigned a camera crew and a reporter to cover the press conference. Approximately six days prior to the trial of Richard Lyon for the murder of his wife, the government served a subpoena duces tecum upon Lori Montgomery and upon KDFW-TV seeking unpublished information regarding the March 22, 1991 press conference.[1] Petitioners assert a qualified

---

[1] The subpoena served upon KDFW T.V. requested "any and all videos of the press conference held by Richard Lyon and Dan Guthrie on March 22, 1991." The subpoena served upon Lori Montgomery of the Times Herald requested "any and all reports, tapes, accounts, notes and documents of any nature pertaining to Richard A. Lyon." Published or broadcast accounts of the press conference were not in issue.

EXHIBIT

4

19 Med. L. Rptr. 2154

*Texas v. Lyon*

privilege under the First Amendment to the United States Constitution and Article 1 Section 8 of the Texas Constitution which, they argue, requires the subpoenas to be quashed.

The prosecuting attorney who caused the subpoenas to be served upon Petitioners indicated to Petitioners' counsel and the Court that the government was seeking notes, outtakes or tapes from the March 22, 1991 press conference. The State contends that notes, outtakes or tapes which Petitioners might have of the press conference would be relevant to the issues of disqualification of defense counsel and impeachment of Defendant or Defendant's attorney regarding statements Defendant's attorney made at the press conference. Accordingly, the Court is presented with a conflict between the First Amendment privileges of the press and the ability of counsel in a criminal proceeding to discover information relating to a criminal investigation.

The questions of when to allow a qualified privilege protecting reporters and what showing is necessary to overcome it is well established in our state law. Article 1 §8 of the Texas Constitution provides that " . . . no law shall ever be passed curtailing the liberty of speech or of the press." The courts interpret this to mean that once the qualified privilege is asserted, the party seeking disclosure of the outtakes, investigative materials, and notes must demonstrate that there is a compelling and overriding need for the information. Specifically, when a member of the press is subpoenaed in a case when the press is not a party, there is a qualified privilege which shifts the burden to the party seeking the information to establish that 1) the reporter has information *highly* relevant to a claim or defense in the underlying litigation; 2) there is a compelling need for disclosure sufficient to override the First Amendment privilege; and 3) the information is unavailable from any other sources less chilling of First Amendment freedoms. *Channel Two Television Co. v. Dickerson,* 725 S.W.2d 470 [13 Med.L.Rptr. 2133] (Tex. App.—Houston [1st Dist] 1987 no writ) (citing *United States v. Burke,* 700 F.2d 70, 76–77 [9 Med.L.Rptr. 1211] (2d Cir. 1983), cert. den'd. 464 U.S. 816, 104 S.Ct. 72, 78 L. Ed. 2d 85 (1983). The latter element requires, in most instances, a showing that the party seeking the information has unsuccessfully at-

tempted to obtain the information from the other sources.

The State asserts that the Petitioners have no qualified privilege to withhold documents, outtakes, notes or testimony at a criminal trial, or, alternatively, that the state has shown the necessity for the information and has thereby, overcome the qualified privilege.

The gathering of news, as well as its reporting, is an activity protected by the First Amendment to the United States Constitution. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed. 2d 626 [1 Med.L.Rptr. 2617] (1972). The protection afforded is not altered by the fact that the case pending is criminal rather than civil. *Channel Two Television Co. v. Dickerson,* 725 S.W.2d 470, 472 (Tex. App.—Houston [1st Dist] 1987) no writ; relying on *New York Times v. Sullivan,* 376 U.S. 254, 265, 84 S.Ct. 710, 718 [1 Med.L.Rptr. 1527] (1964). The job of the media is to gather as much information as it possibly can with respect to all facets of activity of interest and importance to readers. If it does its job well, it logically will be the repository of much information concerning controversial or highly publicized events which take place in the area which it serves. As recognized by the court in *United States v. Cuthbertson* (5th Cir. 1980) 630 F.2d 139 [6 Med.L.Rptr. 1933], the interests of the press that form the foundation of the qualified privilege are not diminished because the nature of the underlying proceeding out of which the request for the information arises is a criminal trial. *Id.* at 147. The court in *Cuthbertson* ruled that the privilege extends not only to the protection of confidential sources, but also to unpublished notes or other resource material held by the press which is the subject of the subpoena duces tecum in this case. *Id.*

The State next suggests that it needs to see the investigative material or work product first before a showing can be made sufficient to overcome the first part of the test outlined above. That procedure however, is not contemplated by the privilege. If the State's contention in this regard were the law, it would surely swallow up the rule because the press would constantly be called upon to divulge the very information they have a privilege to protect. The State has, therefore, failed to sustain its burden of prov-

*Texas v. Lyon*

*Bedingfield v. The Birmingham News Co.*    19 Med. L. Rptr.  2155

ibtain the information from
irces.

asserts that the Petitioners
ilified privilege to withhold
outtakes, notes or testimony
l trial, or, alternatively, that
shown the necessity for the
and has thereby, overcome
privilege.

:ring of news, as well as its
an activity protected by the
lment to the United States
*Branzburg v. Hayes,* 408
S.Ct. 2646, 33 L.Ed. 2d 626
otr. 2617] (1972). The pro-
led is not altered by the fact
pending is criminal rather
*'hannel Two Television Co. v.*
!5 S.W.2d 470, 472 (Tex.
ton [1st Dist] 1987) no writ;
:w *York Times v. Sullivan,* 376
65, 84 S.Ct. 710, 718 [1
1527] (1964). The job of
to gather as much informa-
sibly can with respect to all
vity of interest and impor-
ers. If it does its job well, it
be the repository of much
concerning controversial or
ized events which take place
hich it serves. As recognized
in *United States v. Cuthbertson*
I980) 630 F.2d 139 [6
1933], the interests of the
orm the foundation of the
'ilege are not diminished be-
ture of the underlying pro-
if which the request for the
irises is a criminal trial. *Id.*
"court in *Cuthbertson* ruled
lege extends not only to the
confidential sources, but
iblished notes or other re-
ial held by the press which
of the subpoena duces te-
ase. *Id.*

iext suggests that it needs to
itigative material or work
before a showing can be
it to overcome the first part
itlined above. That proce-
;, is not contemplated by the
he State's contention in this
the law, it would surely
the rule because the press
ntly be called upon to di-
y information they have a
rotect. The State has, there-
sustain its burden of prov-

ing by substantial evidence the first
prong of the test.

Next, the State has failed to demon-
strate that the notes, tape recordings,
outtakes or testimony are necessary or
critical to the maintenance of its prosecu-
tion of Defendant Lyon. The United
States Supreme Court has held that in-
formation that the press obtains by its
investigations is protected. *Branzburg v.
Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33
L. Ed. 2d 626 (1972). Since *Branzburg,*
other courts have discussed more fully
the chilling affect that discovery of the
journalistic process would have on the
uncovering of news. *See Larouche v. Na-
tional Broadcasting Co.,* 780 F.2d 1134,
1139, [12 Med.L.Rptr. 1585] (4th Cir.
1986) cert den'd. 492 U.S. 818, 107 S.Ct.
79, 93 L. Ed. 2d 34 (1986).; *United States
v. Cuthbertson,* 630 F.2d 139, 147 (3rd
Cir. 1980) cert den'd. 454 U.S. 1056 102
S.Ct. 604, 70 L. Ed. 2d 594 (1981).

The State's asserted need for the infor-
mation from Petitioners is based on spec-
ulation and a series of contingencies un-
related to the main claim. The State's
rationale is that the Defendant's attorney
during the press conference identified
three potential suspects other than the
Defendant, thereby making himself a po-
tential witness, and if the Defendant
seeks to call his attorney as a witness to
reveal those suspects, then the States
could also call Defendant's attorney as a
witness and thus, seek his disqualifica-
tion; if the Defendant testifies the State
will seek to question the Defendant con-
cerning the identity of those three poten-
tial suspects.

In applying the second prong of the
three prong test to determine whether the
qualified privilege was overcome by the
State, the Court finds that the need for
this evidence bears at most a remote,
tenuous and speculative relationship to
the actual merits of the State's case
against Defendant. The Court notes that
the three part test outlined above is most
often utilized to balance a reporter's
privileges with the State's or the ac-
cused's rights to information regarding
criminal conduct. Here, the reporters
were not witnesses to criminal conduct
and the information they possess, if any,
is far removed from the criminal conduct
at issue. The State has not presented the
Court with any authority indicating that
a reporter's qualified privilege can be
overcome by a need for information that

might possibly be relevant to a motion to
disqualify an attorney or might be rel-
evant to impeach Defendant by using
statements of his attorney. Therefore, the
State has failed to satisfy the second part
of the test.

The third-prong need not be addressed
as counsel for the State in his argument
before the Court indicated that there
were numerous other individuals present
at the March 22 press conference and
that some of those persons could or
would be called as witnesses.

The likelihood or even possibility of
court ordered disclosure of investigative
material in a civil or a criminal case
diminishes the flow of news by encourag-
ing self censorship by newsgatherers. To
make the press, in effect, the investigative
arm of every civil or criminal litigant
throughout the State of Texas inevitably
will constrict the flow of information to
the press, and ultimately to us all.

The Motions to Quash are in all
things GRANTED.

IT IS SO ORDERED.

---

# BEDINGFIELD v. THE
# BIRMINGHAM NEWS CO.

## Alabama Supreme Court

HOYT BEDINGFIELD v. THE
BIRMINGHAM NEWS CO., No.
1901321, February 28, 1992

### NEWSGATHERING

Access to records—In general
(§38.01)

Statutory right of access—State
open records acts (§44.17)

Internal audit report of Alabama city
council offices is "public writing" subject
to Alabama public records statute, Ala.
Code 36-12-40, and is not exempt from
disclosure.

---

Action by newspaper seeking disclo-
sure of audit reports. From decision of

## Prather, Laura

| | |
|---|---|
| **From:** | David Alex [DAVID.ALEX@dallascounty.org] |
| **Sent:** | Friday, May 29, 2009 4:21 PM |
| **To:** | Prather, Laura |
| **Cc:** | LISA SMITH |

**Subject:** RE: Shaun Rabb subpoena

Mr. Rabb needs to be in court Monday per the subpoena. I can not give you anything in writing regarding the Wit Rule because I'm not the Judge and without authority to bind the court. The MTQ has been denied, there is no legal bar. Mr. Rabb is a witness and from this point on I will treat him like any other witness who has been subpoenaed for court. If you have a legal motion to file, file it and we'll discuss the merits in front of the Judge.

By the way, after we spoke, I saw Mr. Rabb getting on the elevator as I was getting off. I don't think coming to the courthouse is a huge inconvenience.

**From:** Prather, Laura [laura.prather@sdma.com]
**Sent:** Friday, May 29, 2009 2:11 PM
**To:** David Alex
**Subject:** Shaun Rabb subpoena

Hi David,

I left you a voicemail message a few minutes ago explaining the following. Mr. Rabb understands he is under subpoena. He and his employer are concerned, however, if he is sworn in on Monday -- for testimony to be provided at a pretrial hearing seven weeks later, it will interfere with his reporting ability. You've mentioned that the Rule will not be invoked, but is there a way we can get that in writing so we don't have to worry about seeking some sort of relief from the court on this issue. Also do we know Mr Lollar's position on the issue. Lastly, we are happy to agree to continuing the subpoena until july 23 without the need for reissuance or service which may be the preferable way to handle the issue for all involved.
Please let me know. Thanks and take care,

Laura

The information in this email is intended for the named recipients only. It may contain privileged and confidential matter. If you have received this email in error, please notify the sender immediately by replying to this email. Do not disclose the contents to anyone. Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



**EXHIBIT**

5

5/31/2009

00369

NO. <u>F08 24629 Y</u>
<u>F08 24667 Y</u>

| STATE OF TEXAS | § | IN THE CRIMINAL |
|---|---|---|
| VS. | § | DISTRICT COURT # 7 |
| BROADNAX, JAMES | § | DALLAS COUNTY, TX |

## DISCOVERY and NOTICE OF EXTRANEOUS (5th)

The enclosed Discovery filed with the Court is for **Discovery Purposes Only.** In addition, copies of the enclosed Discovery was turned over to Counsel for the Defendant.

Also, Pursuant to TEX. CODE CRIM. PRO. ART. 38.37, TEX. R. CRIM. EVID. 404(B), and CODE CRIM. PRO. ART. 37.07, the State of Texas is hereby giving you notice of intent to use during presentation of State's case in chief, or during punishment, in the above-captioned and numbered criminal actions, **Any and All** extraneous crimes, wrongs or acts included in this discovery turned over to the defense.

Received By:

On __6/4__, 2009

00370

NO. <u>F08 24629 Y</u>
<u>F08 24667 Y</u>

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE CRIMINAL** |
| **VS.** | § | **DISTRICT COURT #7** |
| **BROADNAX, JAMES** | § | **DALLAS COUNTY, TX** |

### *Discovery 5, Inventory*

**CD (x1)**    Jail phone calls  9-16-08  to  3-14-09  turned over in March 2009

**CD (x1)**    Jail phone calls, Broadnax, 4-16-09  to  5-26-09

**DVD (x1)**    Texarkana Police Dept, In-Car Video from unit 279

**CD (x1)**    DSO Jail Disciplinary Records (1st)
Title history for  1991 Cadillac, Dymon Smith  ——�auincluded hard copy
Title history for 1995 Ford Crown Vic,  Jean and Craig Swan �seincluded hard copy
Hope PD, Arkansas, booking sheet for Broadnax 2007 PMJ ▸included hard copy
Hope High School, Arkansas, School Records with Business Record
Affidavit

Received By:

_Kevin Mallon_

On __6/4__ , 2009

00371



State of Texas vs James Broadnax

F08-24667  Cap Murder

Dallas County Jail
Broadnax Phone Calls
4/16/09 to 5/26/09

Court



State of Texas vs James Broadnax

F08-24667  Cap Murder



Dallas County Jail
Broadnax Phone Calls
9/16/08 to 3/14/09

Court

00372



State of Texas vs James Broadnax
F08-24667  Cap Murder

DISCOVERY

Broadnax Hearing N9909724
Miller Hearing N9909725
DSO Discipline Rec & Affidavit
Hope School Records
HPS Affidavit
HPD Fingerprints & Affid

Court



State of Texas vs James Broadnax
F08-24667  Cap Murder

DISCOVERY

Texarkana Police Dept.
In-car video from Unit 279
es not include Broadnax traffic s
not activ

Court

00373

| | |
|---|---|
| **STATE OF TEXAS** | **IN CRIMINAL DISTRICT COURT #7 IN AND FOR** |
| **v.** | |
| **JAMES BROADNAX** | **DALLAS COUNTY, TEXAS** |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared _Lt. Jim Bush_,
who, being by me duly sworn, deposed as follows:

My name is _Lt. Jim Bush_, I am of sound mind, capable of making
this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of **Hope Police Department, Hope, Arkansas**. Attached
hereto are ___3___ pages of records from **Hope Police Department**. These said ___3___
pages of records are kept by **Hope Police Department** in the regular course of business, and it
was the regular course of business of **Hope Police Department** for an employee or
representative of **Hope Police Department**, with knowledge of the act, event, condition,
opinion, or diagnosis, recorded to make the record or to transmit information thereof to be
included in such record; and the record was made at or near the time or reasonably soon
thereafter. The records attached hereto are the original or exact duplicates of the original.


_Lt. Jim Bush_
AFFIANT


SWORN TO AND SUBSCRIBED before me on the _21_ day of _May_, 20_09_.
My commission expires: _March 29, 2017_

Notary Public,
State of _Arkansas_

Notary's printed name:

_Amber Collums_
_Amber Collums_
signature

AMBER COLLUMS
MY COMMISSION # 12359604
EXPIRES: March 29, 2017
Hempstead County

AMBER COLLUMS
MY COMMISSION #12359604
EXPIRES: March 29, 2017
Hempstead County

00374

Case 3:15-cv-01758-N   Document 38-6   Filed 06/28/16   Page 99 of 165   PageID 1001

HEMPSTEAD COUNTY SHERIFF'S DEPARTMENT
TRACKING CARD INFORMATION

07-1364

BROADWAY
LAST NAME

James
FIRST NAME

Q
MIDDLE

10 / 30 / 88
DATE OF BIRTH

621 26 2774
SOCIAL SECURITY #

California
PLACE OF BIRTH

M
SEX

B
RACE

6'2
HEIGHT

140
WEIGHT

BRN
EYES

BLK
HAIR

903 Spring Hill Hope, Ark 71801
ADDRESS/CITY, ST./ZIP CODE OF PERSON FINGERPRINTED

Townsend
ARRESTING OFFICER(S)

05/23/07
DATE OF ARREST

Poss of control sub
CHARGE

00375

1 of 3

LEAVE BLANK

STATE USAGE

NOT RECORD

| SUBMISSION | APPROXIMATE CLASS | AMPUTATION | SCAR |

STATE USAGE

STAPLE HERE

LEAVE BLANK

**BROADNAX, JAMES G** LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

SIGNATURE OF PERSON FINGERPRINTED

*James Broadnax*

ALIASES/MAIDEN
LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

SOCIAL SECURITY NO.
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

LEAVE BLANK

| FBI NO. | STATE IDENTIFICATION NO | DATE OF BIRTH MM DD YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| | | 10/30/1988  M | B | 602 | 140 | BRN | BLK | |

| 1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | 4. R. RING | 5. R. LITTLE |

| 6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | 9. L. RING | 10. L. LITTLE |

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY   L. THUMB   R. THUMB   RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

2 of 3

00376

## FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE
### CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, CLARKSBURG, WV 26306

0000035245

PRIVACY ACT OF 1974 (P.L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT

| JUVENILE FINGERPRINT | DATE OF ARREST | ORI | |
|---|---|---|---|
| SUBMISSION       YES ☐ | MM  DD  YY | CONTRIBUTOR ADDRESS | AR0290100 PD HOPE, AR |
| TREAT AS ADULT   YES ☐ | 05/23/2007 | REPLY  YES ☐ DESIRED? | |

| SEND COPY TO: (ENTER ORI) | DATE OF OFFENSE | PLACE OF BIRTH (STATE OR COUNTRY) | COUNTRY OF CITIZENSHIP |
|---|---|---|---|
| | 05/23/2007  MM DD YY | CALIFORNIA | USA |

| MISCELLANEOUS NUMBERS | SCARS, MARKS, TATTOOS, AND AMPUTATIONS | | |
|---|---|---|---|
| | | | |

| | RESIDENCE/COMPLETE ADDRESS | CITY | STATE |
|---|---|---|---|
| 903 SPRING HILL | | HOPE | AR |

| OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER) | LOCAL IDENTIFICATION/REFERENCE | PHOTO AVAILABLE? YES ☐ |
|---|---|---|
| S-23-07 | Jacket: 33607  OCA: 070523183 | PALM PRINTS TAKEN? YES ☐ |

| EMPLOYER: IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY. IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO. | OCCUPATION |
|---|---|
| ONIC | |

| CHARGE/CITATION | DISPOSITION |
|---|---|
| 1. 4-101  - POSS. OF CONTROLLED SUBSTANCE | 1. |
| 2. | 2. |
| 3. | 3. |
| ADDITIONAL | ADDITIONAL |
| ADDITIONAL INFORMATION/BASIS FOR CAUTION | STATE BUREAU STAMP |

PD-249(REV. 6-11-93)  GPO U.S. GOVERNMENT PRINTING OFFICE: 2005-310-412/80083

3 OF 3

00377



# Texas Department of Transportation
VEHICLE TITLES & REGISTRATION DIVISION•1925 E BELTLINE RD, STE 100•CARROLLTON, TEXAS 75006

May 21, 2009

STATE OF TEXAS
COUNTY OF DALLAS:

I, Debbra L. Johnson, do hereby certify that I am a CUSTODIAN OF RECORDS for the Texas Department of Transportation and that the information shown on the attached

☒    Complete Title History, Title No. **05743139539124209**

Pages 1 through **14**

☐    Partial Title History, Title No.

Pages 1 through

☐    Title/Registration Verification Printout, Title No.

☐    Other:

is, to the best of my knowledge, a true and correct copy of records on file with this Department.

CUSTODIAN OF RECORDS
Texas Department of Transportation

D12-273-1 (Rev. 8-92)

THE TEXAS PLAN
REDUCE CONGESTION • ENHANCE SAFETY • EXPAND ECONOMIC OPPORTUNITY • IMPROVE AIR QUALITY
INCREASE THE VALUE OF OUR TRANSPORTATION ASSETS

*An Equal Opportunity Employer*

00378

*Texas Department of Transportation*

## TITLE APPLICATION RECEIPT



```
0574 3139 5391 2420 99
```

COUNTY: DALLAS

PLATE NO: GVJ961
DOCUMENT NO: 05743139539124209

TAC NAME: DAVID CHILDS
DATE: 04/03/2008
TIME: 12:42PM
EMPLOYEE ID: 10R1393

EFFECTIVE DATE: 04/03/2008
EXPIRATION DATE: 3/2009
TRANSACTION ID: 05743139539124209

OWNER NAME AND ADDRESS
DYMON L SMITH
2250 DATHE
DALLAS, TX 75215

REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
PLATE TYPE: PASSENGER PLT
ORGANIZATION:
STICKER TYPE: WS

VEHICLE IDENTIFICATION NO: 1G6CD53B3M4244657        VEHICLE CLASSIFICATION: PASS
YR/MAKE: 1991/CADI   MODEL: DFW  BODY STYLE: 4D    UNIT NO:
EMPTY WT: 3700    CARRYING CAPACITY: 0      GROSS WT: 3700    TONNAGE: 0.00   TRAILER TYPE:
BODY VEHICLE IDENTIFICATION NO:                              TRAVEL TRLR LNG/WDTH: 0
PREV OWNER NAME: MCCLURE MOTORS            PREV CITY/STATE: GARLAND, TX

INVENTORY ITEM(S)                  YR
PASSENGER PLT
WINDSHIELD STICKER                 2009

VEHICLE RECORD NOTATIONS
RELEASE OF PERSONAL INFO RESTRICTED

| FEES ASSESSED | | |
|---|---|---|
| TITLE APPLICATION FEE | $ | 13.00 |
| TBRP FEE | $ | 20.00 |
| SALES TAX FEE | $ | 50.00 |
| WINDSHIELD STICKER | $ | 40.50 |
| REG FEE-DPS | $ | 1.00 |
| REFLECTORIZATION FEE | $ | 0.30 |
| CNTY ROAD BRIDGE ADD-ON FEE | $ | 10.00 |
| AUTOMATION FEE (LARGE CNTY) | $ | 1.00 |
| TOTAL | $ | 135.80 |

ODOMETER READING: EXEMPT    BRAND:
OWNERSHIP EVIDENCE: REPOSSESSION
1ST LIEN

SALES TAX CATEGORY: SALES/USE

| | | |
|---|---|---|
| Sales Tax Date: | 03/22/2008 | |
| Sales Price | $ | 800.00 |
| Less Trade In Allowance | $ | 0.00 |
| Taxable Amount | $ | 800.00 |
| Sales Tax Paid | $ | 50.00 |
| Less Other State Tax Paid | $ | 0.00 |
| Tax Penalty | $ | 0.00 |
| TOTAL TAX PAID | $ | 50.00 |

2ND LIEN

3RD LIEN

Batch No: 4313953901        Batch Count: 20

**GVJ961**

## 03 09

**DALLAS**                    M4244657

**VOID**
DO NOT USE/
NO USE

ORIGINAL
VTR-500-RTS (REV. 7/2008) DHT157490

00379

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE
→ SHADED AREAS ARE TO BE COMPLETED BY THE SELLER ←
→ TYPE OR PRINT NEATLY IN INK ←

**TAX OFFICE USE ONLY**

Tax Collector: David Childs
Date: 4-3-08
County: Dallas
Transaction Number: 124209

County Use Only

| 1. Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style |
|---|---|---|---|
| 1G6CD53B3M4244657 | 1991 | CADIL | 4 DR |

| 5. Model | 6. Odometer Reading | 7. Empty Weight | 8. Carrying Capacity (lbs.) | 9. Tonnage |
|---|---|---|---|---|
| SEDAN-D-VI | 294,333 | 3700 | | |

☐ SPV $
☐ Appraisal Value $

| 10. Trailer Type | 11. Plate No. | 12. Vehicle Unit No. |
|---|---|---|
| ☐ Semi ☐ Full | GVJ961 | |

13. Applicant's/Additional Applicant's Social Security Numbers (See * below) or Federal Tax ID Number

14. Applicant's/Owner's Name(s)
DYMON L SMITH
Address: 2250 DATHE
City, State, Zip Code: DALLAS TX 75215
County Name: Dallas

14a. Registrant's Name (Renewal Notice Recipient)
Address
City, State, Zip Code
County Name

☐ Statement of Fact for Non-Disclosure, VTR-171, Attached.

14b. Vehicle Physical Location
City, State, Zip Code

15. Previous Owner's Name: McClure Motors
Address: 4109 Forest Ln
City, State, Zip Code: Garland TX 75042

15a. GDN – Dealer Use Only
P15851

**THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN**

16. 1st Lien Date: 3/22/2008
1st Lienholder Name
Address
City, State, Zip Code

16a. Additional Lien(s)?
☑ YES (If additional liens are to be recorded, attach Form VTR-267.)

17. FOR CORRECTED TITLE, CHECK REASON(S)
☐ Change in Vehicle Description ☐ VIN ☐ No Change in Ownership ☐ Add Lien ☐ Remove Lien ☐ Odometer Brand ☐ Odometer Reading
☐ Year ☐ Make ☐ Body Style ☐ Other

18. ODOMETER DISCLOSURE – FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

I, McClure Motors
** (Name of Seller/Agent)
, state that the odometer now reads 294,333 (no tenths).

THE MILEAGE SHOWN IS ☒ A – Actual Mileage ☐ N – Not Actual Mileage WARNING – ODOMETER DISCREPANCY ☐ X – Mileage Exceeds Mechanical Limits
** IF NO SELLER/AGENT, TITLE APPLICANT SHOULD CHECK ONE OF THE 3 BOXES ABOVE UNLESS NUMBER 6 INDICATES "EXEMPT."

**MOTOR VEHICLE TAX STATEMENT**

19. CHECK ONLY IF APPLICABLE
☐ I hold Motor Vehicle Retailer's (Rental) Permit No.___ and will satisfy the minimum tax liability (V.A.T.S., Tax Code, §152.046 (c)).
☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002 (c)).

| 20. DESCRIPTION OF VEHICLE TRADED IN (if any) | Year N/A | Make N/A | Vehicle Identification Number N/A | 20a. ADDITIONAL TRADE – INS? (Y/N) |
|---|---|---|---|---|

21. SALES AND USE TAX COMPUTATION
(a) Sales Price ($ N/A rebate has been deducted) $ 800.00
(b) Less Trade - In Amount, Describe in Item 20 Above $( 0.00 )
(c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, Describe in Item 20 Above $( )
(d) Taxable Amount (Item a. minus b./Item c.) $ 800.00
(e) 6.25% Tax on Taxable Amount (Multiply Item d. by .0625) $ 50.00
(f) Late Tax Payment Penalty ☐ 5% or ☐ 10% $
(g) Tax Paid to ___ (STATE) $
(h) AMOUNT OF TAX AND PENALTY DUE (Item e. plus Item f. minus Item g.) $ 50.00

☐ $90 New Resident Tax - (Previous State) ___
☐ $5 Even Trade Tax
☐ $10 Gift Tax
☐ $65 Rebuilt Salvage Fee
☐ 2.5% Emissions Fee (Diesel Vehicles 1996 and Older > 14,000 lbs) ___
☐ 1% Emissions Fee (Diesel Vehicles 1997 and Newer > 14,000 lbs) ___
☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because ___
☐ $28 or $33 APPLICATION FEE FOR CERTIFICATE OF TITLE (Contact your County Tax Assessor-Collector for the correct fee!)

**I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

22. _____ Signature of SELLER, DONOR, OR TRADER    PRINTED NAME (Same as signature)    Date 3-22-08

23. Dymon Smith Signature of PURCHASER, DONEE, OR TRADER    Dymen Smith PRINTED NAME (Same as signature)    Date 3,22,08

RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT (MARRIED PERSONS)
WE, THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS APPLICATION FOR TITLE, SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF EITHER OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR.
NON-MARRIED PERSONS ARE REQUIRED TO EXECUTE A RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT FOR A MOTOR VEHICLE, FORM VTR-122.

SIGNATURE ___ Date ___
SIGNATURE ___ Date ___

WARNING: Transportation Code, §501.155, provides that falsifying information on title transfer documents is a third-degree felony offense punishable by not more than ten (10) years in prison or not more than one (1) year in a community correctional facility. In addition to imprisonment, a fine of up to $10,000 may also be imposed.
* NOTE: Transportation Code, §501.0235, REQUIRES that the applicant's social security number be provided when applying for a certificate of title. If the applicant does not have a social security Number, Form VTR-171, Statement of Fact for Non-disclosure of a Social Security Number, must accompany this application. This information is requested for owner identification purposes.

Form-130-U (Rev. 8/2008)

00380

# TEXAS CERTIFICATE OF TITLE

VEHICLE TITLES AND REGISTRATION DIVISION

?9815182

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1G6CD53B3M4244657 | 1991 | CADI | 4D |

TITLE/DOCUMENT NUMBER     DATE TITLE ISSUED

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| DFW | | 3700 | 250XGS |

05732939210151538   05/18/2007

PREVIOUS OWNER

MCCLURE MOTORS GARLAND TX

ODOMETER READING

EXEMPT

OWNER

SHAWNTE LAWSON
10928 AUDELIA RD #615
DALLAS, TX 75243

REMARK(S)

X _____

SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER |
|---|---|
| 05/02/2007 | MCCLURE MOTORS 4109 FOREST LN GARLAND, TX 75042 |

1ST LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

| DATE OF LIEN | 2ND LIENHOLDER |
|---|---|

2ND LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

| DATE OF LIEN | 3RD LIENHOLDER |
|---|---|

3RD LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

## RIGHTS OF SURVIVORSHIP AGREEMENT

WE, THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____ DATE

SIGNATURE _____ DATE

SIGNATURE _____ DATE

FORM 30-C REV. 5/2002     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

00381

**WHEN VEHICLE IS SOLD, THE OWNER MUST ASSIGN AND FURNISH THIS CURRENT LICENSE RECEIPT, AND SIGNED APPLICATION FOR TITLE (FORM 130-U) INDICATING SALES PRICE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY.**

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Dymon Smith   2250 Dathe   Dalles   TX   7525

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ Exempt     ODOMETER READING (No. tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale 3-22-08

Signature of Seller/Agent     Jerry Theis     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING (No. tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING (No. tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING (No. tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS) _____

SURRENDERED

00382



# Affidavit for Repossessed Motor Vehicle

VTR-264 (Rev. 4/2005)
DHT # 142371

This form, along with other transfer documents, must be submitted to the county tax office for processing.

| YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|
| 1991 | Cad. | 4D |

| VEHICLE IDENTIFICATION NUMBER | TEXAS CERTIFICATE OF TITLE DOCUMENT NUMBER |
|---|---|
| 1G6CD53B3M4246S7 | 05732939210151538 |

This vehicle was repossessed because of the failure of the former owner(s) to meet the obligation in the matter of settlement of the terms of encumbrances on said vehicle, and this repossession is not made with intent to defeat the purpose of the Texas Motor Vehicle Safety Responsibility Act.

**METHOD OF REPOSSESSION:** PLEASE MARK THE APPROPRIATE BOX.
SUPPORTING DOCUMENTS MUST BE ATTACHED TO THE TITLE APPLICATION WITH THIS AFFIDAVIT.

☑ **TERMS OF SECURITY (LIEN) AGREEMENT**
If a lien is not recorded on the Texas Title, a certified copy of the Security (Lien) Agreement must be attached, and the lienholder must apply for a Texas Certificate of Title in the lienholder's name before a transfer of the vehicle ownership can be perfected.

☐ **SEQUESTRATION**
The original or a certified copy of the Sheriff's Bill of Sale must be attached to the title transaction.
(A Writ of Sequestration ordering a sheriff or constable to seize property may be issued by Judges and Clerks of the District and County Courts and Justices of the Peace.)

☐ **FLOOR PLAN LIEN**

P 15851
DEALER'S GENERAL DISTINGUISHING NUMBER

McCLure motors
PRINT DEALER'S NAME

When a "Floor Plan" lien covers vehicles in a dealer's inventory, and if the dealer is in default under the terms of the security agreement, the lienholder may repossess and transfer ownership without securing title in the dealer's name. In such instances, an application for title in the name of the purchaser must be supported by the following documentation:

1. Manufacturer's certificate or certificate of title properly assigned to the dealership and reassigned to the purchaser by the lienholder.

2. Affidavit for Repossessed Motor Vehicle, Form VTR-264.

3. Photocopy of the Security Agreement or Secretary of State's Form UCC-1.

This is to certify that the undersigned has repossessed the above motor vehicle.

McCLure motors
SIGNATURE OR NAME OF LIENHOLDER          BY AUTHORIZED AGENT

Jerry Theis                                971-276-9028
PRINTED NAME OR NAME OF LIENHOLDER (SAME AS SIGNATURE)          (AREA CODE) TELEPHONE NUMBER

Before me this day personally appeared the above affiant who by me being duly sworn upon oath says that the statements set forth above are true and correct.

Subscribed and sworn to before me this _____2ND_____ day of _____April_____ , year 2008 .

Notary Public

Rick McClure          DALLAS          County, Texas
Notary Public

RICK MC CLURE
MY COMMISSION EXPIRES
August 18, 2008

WARNING: TRANSPORTATION CODE §501.155 PROVIDES THAT FALSIFYING INFORMATION ON ANY REQUIRED STATEMENT OR APPLICATION IS A THIRD-DEGREE FELONY.

Vehicle Titles and Registration Division
Texas Department of Transportation
Austin TX 78779-0001

00383



**Texas Department of Transportation**
TITLE APPLICATION RECEIPT



0573 2939 2101 5153 82

COUNTY   DALLAS

PLATE NO   250XGS
DOCUMENT NO   05732939210151538

TAC NAME   DAVID CHILDS
DATE   05/10/2007          EFFECTIVE DATE   12/01/2006
TIME   03 15PM            EXPIRATION DATE   11/2007
EMPLOYEE ID   11T2022      TRANSACTION ID   05732939210151538

OWNER NAME AND ADDRESS
SHAWNTE LAWSON
10928 AUDELIA RD #615
DALLAS   TX 75243

REGISTRATION CLASS   PASSENGER-LESS/EQL 6000
PLATE TYPE   PASSENGER PLT
STICKER TYPE   WS

VEHICLE IDENTIFICATION NO   1G6CD53B3M4244657        VEHICLE CLASSIFICATION   PASS
YR/MAKE   1991/CADI   MODEL   DFW   BODY STYLE   4D   UNIT NO
EMPTY WT   3700     CARRYING CAPACITY   0       GROSS WT   3700   TONNAGE   0 00   TRAILER TYPE
BODY VEHICLE IDENTIFICATION NO                            TRAVEL TRLR LNG/WDTH   0
PREV OWNER NAME   MCCLURE MOTORS           PREV CITY/STATE   GARLAND   TX

VEHICLE RECORD NOTATIONS
RELEASE OF PERSONAL INFO RESTRICTED

FEES ASSESSED
TITLE APPLICATION FEE            $        13 00
TERP FEE                         $        20 00
SALES TAX FEE                    $         0 00
TRANSFER                         $         2 50
                    TOTAL        $        35 50

ODOMETER READING   EXEMPT   BRAND
OWNERSHIP EVIDENCE   TEXAS TITLE
1ST LIEN              DATE   05/02/2007
MCCLURE MOTORS
4109 FOREST LN
GARLAND   TX 75042

2ND LIEN

3RD LIEN

SALES TAX CATEGORY | EXEMPT
PERMIT NO | 22547099295
Sales Tax Date | 05/02/2007
Sales Price $ | 0 00
Less Trade In Allowance $ | 0 00
Taxable Amount $ | 0 00
Sales Tax Paid $ | 0 00
Less Other State Tax Paid $ | 0 00
Tax Penalty $ | 0 00
TOTAL TAX PAID $ | 0 00
Batch No   3293921001          Batch Count   32

CERTIFICATE OF TITLE WILL BE MAILED TO 1st LIENHOLDER

ORIGINAL
VTR 500 RTS (REV 3/2001) DHT157490

00384

## APPLICATION FOR TEXAS CERTIFICATE OF TITLE
→ SHADED AREAS ARE TO BE COMPLETED BY THE SELLER ←
→ TYPE OR PRINT NEATLY IN INK ←

**TAX OFFICE USE ONLY**

Tax Collector: David Childs   County: Dallas
Date: 5-10-07   Transaction Number: 15-1539

| 1 Vehicle Identification Number | 2 Year | 3 Make | 4 Body Style |
|---|---|---|---|
| 1G6CD53B3M4244657 | 1991 | CADIL | 4 DR |

| 5 Model | 6 Odometer Reading | 7 Empty Weight | 8 Carrying Capacity (lbs) | 9 Tonnage |
|---|---|---|---|---|
| SEDAN D-VI | | 37 | | |

This space for VTR Use Only

10 Trailer Type  ☐ Semi ☐ Full   11 Plate No   12 Vehicle Unit No

13 Applicant's/Additional Applicant's Social Security Numbers (See below) or Federal Tax ID Number

14 Applicant's/Owner's Name(s)

SHAWNTE LAWSON
Address: 10928 AUDELIA RD #615
City State Zip Code: DALLAS TX 75243   Dallas   County Name

14a Registrant's Name (Renewal Notice Recipient)
Address
City State Zip Code   County Name

☐ Statement of Fact for Non Disclosure VTR 171 Attached

14b Vehicle Physical Location
City State Zip Code

| 15 Previous Owner's Name | 15a GDN – Dealer Use Only |
|---|---|
| McClure Motors | |
| Address 4109 Forest Ln | P15851 |
| City State Zip Code Garland      TX 75042 | |

**THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN**

| 16 1st Lien Date | 1st Lienholder Name McClure Motors | 16a Additional Lien(s)? ☐ YES (If additional liens are to be recorded attach Form VTR 267 ) |
|---|---|---|
| 5/02/2007 | Address 4109 Forest Ln | |
| | City State Zip Code Garland TX 75042 | |

17 FOR CORRECTED TITLE   ☐ Change in Vehicle Description   ☐ VIN   ☐ No Change in Ownership   ☐ Add Lien   ☐ Remove Lien   ☐ Odometer Brand   ☐ Odometer Reading
CHECK REASON(S)   ☐ Year ☐ Make ☐ Body Style ☐ Other

18 ODOMETER DISCLOSURE – FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP  FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT

I ___ McClure Motors ___ (Name of Seller/Agent) ___ state that the odometer now reads _____ (no tenths)

THE MILEAGE SHOWN IS  ☐ A Actual Mileage  ☐ N – Not Actual Mileage   WARNING – ODOMETER DISCREPANCY  ☐ X – Mileage Exceeds Mechanical Limits
IF NO SELLER/AGENT TITLE APPLICANT SHOULD CHECK ONE OF THE 3 BOXES ABOVE UNLESS NUMBER 6 INDICATES EXEMPT

**MOTOR VEHICLE TAX STATEMENT**

19 CHECK ONLY IF APPLICABLE

☐ I hold Motor Vehicle Retailer's (Rental) Permit No _____ and will satisfy the minimum tax liability (VATS Tax Code §152 046 (c))
☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (VATS Tax Code §152 002 (c))

| 20 DESCRIPTION OF VEHICLE TRADED IN (if any) | Year N/A | Make N/A | Vehicle Identification Number N/A | 20a ADDITIONAL TRADE – INS? (Y/N) |
|---|---|---|---|---|

21 SALES AND USE TAX COMPUTATION

(a) Sales Price (8 __N/A__ Rebate has been deducted)   $ 3 495 00
(b) Less Trade In Amount  Describe in Item 20 Above   $ ( 0 00 )
(c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction  Describe in Item 20 Above   $ ( )
(d) Taxable Amount (Item e minus Item b/Item c )   $ 3 495 00
(e) 6 25% Tax on Taxable Amount (Multiply Item d by 0625)   $ 218 44
(f) Late Tax Payment Penalty ☐ 5% or ☐ 10%   $
(g) Tax Paid to __TX__ (STATE)   $
(h) AMOUNT OF TAX AND PENALTY DUE (Item e plus Item f minus Item g )   $ 0 00

☐ $90 New Resident Tax  (Previous State) _____
☐ $5 Even Trade Tax
☐ $10 Gift Tax
☐ $65 Rebuilt Salvage Fee
☐ 2 5% Emissions Fee (Diesel Vehicles 1996 and Older  14 000 lbs) _____
☐ 1% Emissions Fee (Diesel Vehicles 1997 and Newer > 14 000 lbs) _____
☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because
Seller Financed Sale 2-254 70-9929 5
☐ $28 or $33 APPLICATION FEE FOR CERTIFICATE OF TITLE (Contact your County Tax Assessor-Collector for the correct fee )

**I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF**

22  Signature of SELLER DONOR OR TRADER: Richard McClure   PRINTED NAME (Same as signature): Richard McClure   Date: 5-2-07

23  X Signature of PURCHASER DONEE OR TRADER: Shawnte Lawson   PRINTED NAME (Same as signature): X Shawnte Lawson   Date: 5-2-07

RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT (MARRIED PERSONS)
WE THE PERSONS WHOSE SIGNATURES APPEAR HEREIN HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS APPLICATION FOR TITLE  SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF EITHER OF THE PERSONS NAMED IN THE AGREEMENT THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR
NON MARRIED PERSONS ARE REQUIRED TO EXECUTE A RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT FOR A MOTOR VEHICLE FORM VTR 122

SIGNATURE _____ Date _____
SIGNATURE _____ Date _____

WARNING  Transportation Code §501 155 provides that falsifying information on title transfer documents is a third-degree felony offense punishable by not more than ten (10) years in prison or not more than one (1) year in a community correctional facility  In addition to imprisonment, a fine of up to $10 000 may also be imposed

NOTE  Transportation Code §501 0235 REQUIRES that the applicant's social security number be provided when applying for a certificate of title  If the applicant does not have a social security Number Form VTR 171 Statement of Fact for Non-disclosure of a Social Security Number must accompany this application  This information is requested for owner identification purposes

Form 130-U  (Rev 4/2004)

00385

# TEXAS CERTIFICATE OF TITLE

# ORIGINAL

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1G6CD53B3M4244657 | 1991 | CADI | 4D |

| | | | | DOCUMENT NUMBER | DATE TITLE ISSUED |
|---|---|---|---|---|---|
| | | | | 00022200045549596 | 12/16/94 |

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| DFW | | 3700 | GBW64V |

ODOMETER READING
044600

PREVIOUS OWNER

CREST CADILLAC INC PLANO

REMARK(S)

ACTUAL MILEAGE

OWNER

TERRY B ZIMMERMAN
SONJA E ZIMMERMAN
1808 HEATHER GLEN CR
ALLEN, TX 75002

X_____

SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

DATE OF LIEN        1ST LIENHOLDER

NONE

1ST LIEN RELEASED _____
                                DATE

BY _____
        AUTHORIZED AGENT

DATE OF LIEN        2ND LIENHOLDER

2ND LIEN RELEASED _____
                                DATE

BY _____
        AUTHORIZED AGENT

DATE OF LIEN        3RD LIENHOLDER

3RD LIEN RELEASED _____
                                DATE

BY _____
        AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT ACCORDING TO THE RECORDS OF THE TEXAS DEPARTMENT OF TRANSPORTATION THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIEN(S) AS SHOWN

DO NOT ACCEPT TITLE SHOWING ERASURE ALTERATION OR MUTILATION

Texas
Department
of Transportation

FORM 30-C REV 8 94        18018712

VEHICLE TITLES AND REGISTRATION DIVISION

00386

Case VEHICLE 01-0750-1 Document 33-6 Filed 06/08/06 Page 1 of 65 PageID 1018

**MOTOR VEHICLE IS SOLD. TITLE MUST BE ASSIGNED TO THE PURCHASER AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY**

► FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT

## ASSIGNMENT OF TITLE

The undersigned hereby certifies the vehicle described on this title is free and clear of all liens, except as noted herein, and has been transferred to the following named person and address

**CREST CADILLAC** — **2701 N CENTRAL PLANO, TX 75075**

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

► **EXEMPT**
☐1 The mileage stated is in excess of its mechanical limits
☐2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

Date Sold 12-4-06 — Sonja E Zimmerman — TERRY B ZIMMERMAN / SONJA E ZIMMERMAN

I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent: C A Pickard — Printed Name: C A PICKARD

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following named person and address

**McCLURE MOTORS 4109 FOREST LN, GARLAND, TX, 75042**

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

► **EXEMPT**
☐1 The mileage stated is in excess of its mechanical limits
☐2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

Date Sold 12-8-06 — C A Pickard — Dealer Name: Crest Cadillac — C.A. PICKARD — P-22350

I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent: Richard McClure — Printed Name: Richard McClure

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following named person and address

**SHAWNTE LAWSON 10928 Audelia Rd #415 DALLAS, TX, 75243**

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

► **EXEMPT**
☐1 The mileage stated is in excess of its mechanical limits
☐2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

Date of Sale 5-2-07 — Dealer's Name: McClure Motors — Richard McClure — P-15851

I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent: Richard McClure — Printed Name: Richard McClure

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted herein and has been transferred to the following named person and address

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

►
☐1 The mileage stated is in excess of its mechanical limits
☐2 The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY

**SURRENDERED**

Date of Sale / Dealer Name / Dealer No

I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent / Printed Name

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

00387

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE

45549596

### TYPE OR PRINT IN INK

## TAX OFFICE USE ONLY

Tax Collector KEN MAUN    County COLLIN

Date 112194    Transaction Number Z685348

**VTRD USE ONLY**

| 1. Vehicle Identification Number | | 2. Year | 3. Make | 4. Body Style | 5. Model | 6. Odometer Reading |
|---|---|---|---|---|---|---|
| 1G6CD53B3M4244657 | | 91 | CAD | 4D | | A44600 |
| 7. Empty Weight | 8. Carrying Capacity (lbs.) | 9. Tonnage | 10. Trailer Type ( ) Semi ( ) Full | 11. Plate No | 12. Vehicle Unit No. | 13. Owner I.D. No. (Employer I.D. or SSN *see below) |
| 3700 | | | | GBW64V | | NA |

| 14. | Applicant's Name (Purchaser, Donee, Trader) Address City, State, Zip Code | TERRY B ZIMMERMAN SONJA E ZIMMERMAN 1808 HEATHER GLEN CR ALLEN TX 75002 8614 |
|---|---|---|

14a. Renewal Notice Info. Name (If Different From 14) Address City, State, Zip Code

14b. Vehicle Location Info. (If Different From 14) Address, City, State, Zip Code

15. Previous Owner (Seller, Donor, Trader) CREST CADILLAC INC PLANO TX    15a. GDN – Dealer Use Only
City, State

## THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN

| 16. 1st Lien Date | 1st Lienholder Name NONE Address City, State, Zip Code | 16a Additional Lien(s)? ☐ YES (If additional liens are to be recorded attach Form VTRD-267). |
|---|---|---|

17. FOR CORRECTED TITLE, CHECK REASON BELOW

☐ Change in Vehicle Description

☒ No Change in Ownership

18. ODOMETER INFORMATION TO BE COMPLETED BY TRANSFEROR (SELLER/AGENT) FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT. MILEAGE SHOWN IS:

☒ A – Actual Mileage    ☐ N – Not Actual Mileage    ☐ X – Mileage Exceeds Mechanical Limits

I, _____ (Print Name of Seller) _____ state that the odometer now reads A44600 (no tenths).

## MOTOR VEHICLE TAX AFFIDAVIT

19. CHECK ONLY IF APPLICABLE

☐ I hold Motor Vehicle Retailer's (Rental) Permit No. _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code, Sec. 152.046[c]).

☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, Sec. 152.002[c]).

| 20. DESCRIPTION OF VEHICLE TRADED IN (if any) | Year | Make | Vehicle Identification Number | 20a ADDITIONAL TRADE-INS? (Y/N) |
|---|---|---|---|---|
| | | | | |

21. SALES AND USE TAX COMPUTATION

☐ (a) Sales Price    $ _____    ☐ $15 New Resident Tax – (Previous State) _____

(b) Less Trade-In Amount, Describe in Item 20 Above    $ (_____)    ☐ $5 Even Trade Tax

(c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, Describe in Item 20 Above    $ (_____)    ☐ $10 Gift Tax

(d) Taxable Amount (Item a minus Item b./Item c.)    $ _____    ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because

(e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625)    $ _____    RELEASE OF LIEN – NCO

(f) Tax Paid to _____ (STATE)    $ (_____)

(g) AMOUNT OF TAX DUE (Item e. minus Item f.)    $ _____    ☒ $13 APPLICATION FEE FOR CERTIFICATE OF TITLE

## I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

22 SELLER, DONOR, OR TRADER
SIGN HERE _____    By _____    Date _____

23. TITLE APPLICANT, PURCHASER, DONEE, OR TRADER
SIGN HERE *Sonja E Zimmerman*    By _____    Date 112194

**WARNING:** V.A.T.S., Article 6687-1, provides that falsifying information on title transfer documents is a third-degree felony offense punishable by not more than ten (10) years in prison or not more than one (1) year in a community correctional facility. In addition to imprisonment, a fine of up to $10,000 may also be imposed.

* You are not required by law to disclose your social security number. However, primarily because of duplication of individuals' names, this information is requested for our records maintenance program to assist in identifying the true owner of a vehicle.

Form 130-U    Rev. 12-93

00388

Case 3:15-cv-01766-N Document 30-5 Filed 06/20/16 Page 113 of 165 PageID 1015

# TEXAS CERTIFICATE OF TITLE

## ORIGINAL

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1G6CD53B3M4244657 | 1991 | CAD | 4DR |

**TITLE NUMBER** · **DATE TITLE ISSUED**
33450913 01/17/92

| MODEL | MFG CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| | | 3700 | GBW64V |

**DEPARTMENTAL USE ONLY**
3561827

**PREVIOUS OWNER**
CREST CADILLAC INC PLANO TX

**ODOMETER READING**
005934

**OWNER**
TERRY B ZIMMERMAN
SONJA E ZIMMERMAN
1808 HEATHER GLEN CIR
ALLEN, TX 75002

**REMARK(S)**
ACTUAL MILEAGE

X.......
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

**DATE OF LIEN** **1ST LIENHOLDER**
11/29/91 FIRST CITY BANK
PO BOX 50108
DALLAS, TX 75250

OCT 25 1994

1ST LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

**DATE OF LIEN** **2ND LIENHOLDER**

2ND LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

**DATE OF LIEN** **3RD LIENHOLDER**

3RD LIEN RELEASED _____ DATE

BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT ACCORDING TO THE RECORDS OF THE STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIEN(S), AS SHOWN.

**DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.**

ARNOLD W. OLIVER, P.E., ENGINEER-DIRECTOR

DIAN K. NEILL, DIRECTOR, DIVISION OF MOTOR VEHICLES

FORM 30-C REV (4-90)
6477958

00389

Case: VEHICLE IS SOLD TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT USE RECEIPT AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY.

**FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

### ASSIGNMENT OF TITLE

Name of Purchaser ___ Street ___ City ___ Zip ___

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale ___ ODOMETER READING (no tenths) ___

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature ___ Printed Name (same as signature) ___

### FIRST REASSIGNMENT DEALER ONLY

Name of Purchaser ___ Street ___ City ___ Zip ___

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale ___ ODOMETER READING (no tenths) ___

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature ___ Printed Name (same as signature) ___

### SECOND REASSIGNMENT DEALER ONLY

Name of Purchaser ___ Street ___ City ___ State ___ Zip ___

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale ___ ODOMETER READING (no tenths) ___ Dealer No ___

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature ___ Printed Name (same as signature) ___

Signature of buyer/agent ___ Printed Name (same as signature) ___

### THIRD REASSIGNMENT DEALER ONLY

Name of Purchaser ___ Street ___ City ___ State ___ Zip ___

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale ___ ODOMETER READING (no tenths) ___ Dealer No ___

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature ___ Printed Name (same as signature) ___

Signature of buyer/agent ___ Printed Name (same as signature) ___

### LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE.
1ST LIEN IN FAVOR OF (NAME & ADDRESS) ___

00390

**7685348**

**TAX COLLECTOR'S RECEIPT FOR TEXAS TITLE APPLICATION/REGISTRATION/MOTOR VEHICLE TAX**

**7685348**

| 1. DATE OF RECEIPT | 2. Validation/Stick No. | 3. Plates Issued | | 4. Texas license no. | RECEIPT NUMBER |
|---|---|---|---|---|---|
| 112194 | VERIFIED | 10 | 95 | GBW64V | |

GBW64V VERIF. ZIMMERMAN

| 5. | Transfer of current registration | Registration fee paid no plates issued | Registration fee paid new plates issued |
|---|---|---|---|

| 6. OWNER | TERRY B ZIMMERMAN |
|---|---|
| Name, street address, city state, zip | SONJA E ZIMMERMAN |
| | 1808 HEATHER GLEN CR |
| | ALLEN TX 75002 8614 |

| 30. 1ST LIENHOLDER | |
|---|---|
| Name and mailing address | |
| Date of lien | NONE |

| 7. Classification | 8. Tonnage | 9. Empty weight | 10. Carrying capacity | 11. Gross weight |
|---|---|---|---|---|
| 01 | | 3700 | | |

| 31. 2ND LIENHOLDER, name, city, state |
|---|
| Date of lien |

| 12. Year | 13. Make | 14. Body style | 15. Prev license no. |
|---|---|---|---|
| 91 | CADI | 4D | GBW64V |

| 32. SELLER (Name of previous owner, city, state) |
|---|
| CREST CADILLAC INC PLANO TX |

| 16. Vehicle identification number | 17. Odometer | 18. Surrendered title no. |
|---|---|---|
| 1G6CD53B3M4244657 | A44600 | 33450913 |

| 33. | $5 Even trade | $10 Gift | $15 New resident |
|---|---|---|---|
| | Exempt | RELEASE OF LIEN - NCO | |

| 19. Index number | 20. Diesel fee | 21. Penalty | 22. No. of mos. | 23. Total reg./Trans. fee |
|---|---|---|---|---|
| 3561827 | | | 12 | |

| 34. Sales price | 35. Trade-in | 36. Taxable value |
|---|---|---|

| 24. Tax Assessor-Collector | 25. Title appl. fee |
|---|---|
| KEN MAUN | 13.00 |

| 37. Tax | 38. Tax paid to other state | 39. Penalty | 40. TAX & PENALTY PAID |
|---|---|---|---|

| 26. County | 27. County no | 28. Deputy | 29. Local Fees |
|---|---|---|---|
| COLLIN | V 043 | CJS | |

CJS

Form 31 (Rev. 10/93)

# TAX AND TITLE COPY 1

00391

THE LAST DAY OF

GBW64V

GROSS WGT        REGISTRATION FEE

33450913      3700   50.80  OCT 1995
911 CADI         4D          DATE EXPIRES

1G6CD53B3M4244657        000000000

3700                         PASS

NAME AND ADDRESS OF OWNER (IF ADDRESS IS INCORRECT, PLEASE
MARK OUT AND PRINT NEW ADDRESS AND ZIP CODE BELOW.)

TERRY B ZIMMERMAN, SONJA E ZIMMERM
1808 HEATHER GLEN CIR
ALLEN, TX 75002-8614

SEP 27 1994

TEXAS LICENSE RECEIPT & TITLE VERIFICATION
TEXAS DEPARTMENT OF TRANSPORTATION
THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES

00392

# Texas Department of Transportation

VEHICLE TITLES & REGISTRATION DIVISION•1925 E BELTLINE RD, STE 100•CARROLLTON, TEXAS 75006

May 21, 2009

STATE OF TEXAS
COUNTY OF DALLAS:

I, Debbra L. Johnson, do hereby certify that I am a CUSTODIAN OF RECORDS for the Texas Department of Transportation and that the information shown on the attached

☒    Complete Title History, Title No. **04330137180113533**

     Pages 1 through **13**

☐    Partial Title History, Title No.

     Pages 1 through

☐    Title/Registration Verification Printout, Title No.

☐    Other:

is, to the best of my knowledge, a true and correct copy of records on file with this Department.

CUSTODIAN OF RECORDS
Texas Department of Transportation

D12-273-1 (Rev. 8-92)

THE TEXAS PLAN
REDUCE CONGESTION • ENHANCE SAFETY • EXPAND ECONOMIC OPPORTUNITY • IMPROVE AIR QUALITY
INCREASE THE VALUE OF OUR TRANSPORTATION ASSETS

*An Equal Opportunity Employer*

00303

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE
## → TYPE OR PRINT NEATLY IN INK ←

**TAX OFFICE USE ONLY**

Tax Category: _Ly Main_
Date: _10-18-01_    Transaction Number: _____

| 1. Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style |
|---|---|---|---|
| 2FALP73W5SX153100 | 1995 | Ford | 4 DR |

| 5. Model | 6. Odometer Reading | 7. Empty Weight | 8. Carrying Capacity (ton) | 9. Tonnage |
|---|---|---|---|---|
| Crown Vic | 113495 | 3700 | | |

This space for WTR Use Only

| 10. Title Type | 11. Plate No. | 12. Vehicle Unit No. | 13. Applicant's Social Security Number (one if none) or Federal Tax ID Number | 13a. Additional Applicant's Social Security Numbers |
|---|---|---|---|---|
| | RCP 06B | | 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 | |

14. Applicant's name(s)
(Owner/Title Recipient): Jean Swan / Craig Swan
Address: P.O. Box 1090    Collin County Name
City State Zip Code: Celina, TX 75009

14b. Repairman's Name
(Removal of Mechanic Recipient)
Address
City State Zip Code    County Name

☐ Statement of Fact for Non-Disclosure, VTR-171, Attached.

14c. Vehicle Physical Location: 11555 Preston Estates Dr.
City State Zip Code: Celina, TX 75009

15. Previous Owner's Name: DONALD WALLEN
Address: 2905 OAK SPRINGS
City State Zip Code: GARLAND, TX 75044

15a. CDN – Dealer Use Only

## THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN

| 16. 1st Lien Date | 1st Lienholder Name | |
|---|---|---|
| | Address: _None_ | 16a. Additional Lien(s)? ☐ YES (If additional liens are to be recorded, submit Form VTR-267.) |
| | City, State Zip Code | |

17. FOR CORRECTED TITLE, ONE OR MORE ITEM(S):
☐ Change in Vehicle Description  ( ) VIN  ( ) Year  ( ) Make  ( ) Body Style  ( ) Other
☐ No Change In Ownership  ☐ Add Lien  ☐ Remove Lien  ☐ Odometer Brand  ☐ Odometer Reading

18. ODOMETER DISCLOSURE – FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

I _Donald Wallen_ state that the odometer now reads _113495_ (no tenths).
(Name of Seller/Agent)

THE MILEAGE SHOWN IS ☒ A – Actual Mileage  ☐ B – Not Actual Mileage  WARNING – ODOMETER DISCREPANCY. ☐ X – Mileage Exceeds Mechanical Limits

** IF NO SELLER/AGENT TITLE APPLICANT SHOULD CHECK ONE OF THE 3 BOXES ABOVE UNLESS NUMBER 8 INDICATES "EXEMPT"

## MOTOR VEHICLE TAX STATEMENT

19. CHECK ONLY IF APPLICABLE
☐ I hold Motor Vehicle Retailer's (Rental) Permit No. _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code, §152.046 (c))
☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002 (c)).

| 20. DESCRIPTION OF VEHICLE TRADED IN (if any) | Year | Make | Vehicle Identification Number | 20a. ADDITIONAL TRADE - INS? (Y/N) |
|---|---|---|---|---|

21. SALES AND USE TAX COMPUTATION
☒ (a) Sales Price ($ _____ trade-in has been deducted) ....... $ 4500
(b) Less Trade - In Amount, Describe in Item 20 Above ....... $ (_____)
(c) For Dealers/Lessors / Rental ONLY – Fair Market Value Deduction, Describe in Item 20 Above ....... $ _____
(d) Taxable Amount (Item c, minus Item b /Item c) ....... $ 4500
(e) 6.25% Tax on Taxable Amount (Multiply Item d, by .0625) ....... $ 281.25
(f) Tax Paid to _____ (STATE) ....... $ _____
(g) AMOUNT OF TAX DUE (Item e, minus Item f) ....... $ 281.25

☐ $90 New Resident Tax - (Previous State) _____
☐ $5 Even Trade Tax
☐ $10 Gift Tax
☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because _____

☒ $13 APPLICATION FEE FOR CERTIFICATE OF TITLE

## I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

22. Signature of SELLER, DONOR, OR TRADER: _Donald Wallen_
PRINTED NAME (Same as signature): DONALD WALLEN    Date: 10/15/01

23. Signature of PURCHASER, DONEE, OR TRADER: _Jean Swan / Craig Swan_
PRINTED NAME (Same as signature): Jean Swan / Craig Swan    Date: 10/15/01

RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT
WE, THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS APPLICATION FOR TITLE, SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF EITHER OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR.
SIGNATURE: _Jean Swan_    10-15-01
SIGNATURE: _Craig Swan_    10/15/01

WARNING    Transportation Code §501.155, provides that falsifying information on this transfer document is a third - degree felony punishable by not more than ten (10) years in prison or not more than one (1) year in a community correctional facility. In addition to imprisonment, a fine of up to $10,000 may also be imposed.

NOTE    Transportation Code §501.0235, REQUIRES that the applicant's social security number be provided when applying for a certificate of title. If an applicant does not have a social security number, Form VTR-171, Statement of Fact for Non-Disclosure of a Social Security Number, must accompany this application. This information is requested for owner identification purposes.

Form-130-U (Rev 7/2000)

00394

TEXAS CERTIFICATE OF TITLE

## ORIGINAL

3779 7053

2FALP73WJSXL53100    1995    FORD    4D

OST8533620009930    02/20/1999

3700    RCP053

D L PETERSON TRUST HUNT VALLEY MD    75000

DONALD WALLEN
2905 OAK SPRINGS
GARLAND, TX 75044

ACTUAL MILEAGE

*Donald Wallen*

SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON OR A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE

DATE OF LIEN    1ST LIENHOLDER

NONE    1ST LIEN RELEASED _____ DATE

    BY _____ AUTHORIZED AGENT

2ND LIEN    2ND LIENHOLDER    2ND LIEN RELEASED _____ DATE

    BY _____ AUTHORIZED AGENT

3RD LIEN    3RD LIENHOLDER    3RD LIEN RELEASED _____ DATE

    BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS

SIGNATURE (ISSUED)

RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT
WE THE HUSBAND AND WIFE WHOSE SIGNATURES APPEAR HEREIN HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THE CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY AND IN THE EVENT OF DEATH OF EITHER THE HUSBAND OR THE WIFE THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR

FORM 30-C REV 11 97

DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION

## ASSIGNMENT OF TITLE

Jean Swan — P.O. Box 1090 — Celina — TX — 75009

ODOMETER DISCREPANCY

DONALD MILLER

Jean Swan    Craig Swan

## FIRST REASSIGNMENT DEALER ONLY

| Name of Purchaser | Street | City | State | Zip |
|---|---|---|---|---|

WARNING - ODOMETER DISCREPANCY

## SECOND REASSIGNMENT DEALER ONLY

| Name of Purchaser | Street | City | State | Zip |
|---|---|---|---|---|

WARNING - ODOMETER DISCREPANCY

## THIRD REASSIGNMENT DEALER ONLY

| Name of Purchaser | Street | City | State | Zip |
|---|---|---|---|---|

WARNING - ODOMETER DISCREPANCY

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF NAME & ADDRESS

00396

5435649·5001

BANK OF AMERICA TEXAS NA
1925 W JOHN W CARPENTER F
IRVING,              TX   75063

▼ DETACH HERE ▼

## TEXAS CERTIFICATE OF TITLE

### ORIGINAL

1FDEE14H0SHAA3578   1984   FORD   NA

1/2   7000   HY0919

PARK CITIES FORD DALLAS

CLOYCE C CLARK JR
MARTHA C CLARK
3783 VANCOUVER
DALLAS, TX 75229

ACTUAL MILEAGE

UNLESS OTHERWISE NOTED BY LAW IT IS A VIOLATION OF STATE LAW TO SIGN THE
NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR COVERAGE THE FALSE
INFORMATION ON A CERTIFICATE OF TITLE.

07/06/94 BANK OF AMERICA TEXAS NA
1925 W JOHN W CARPENTER F
IRVING, TX 75063

9-9-96

IT IS HEREBY CERTIFIED THAT ACCORDING TO THE RECORDS OF THE TEXAS
DEPARTMENT OF TRANSPORTATION, THE PERSON HEREIN NAMED IS THE OWNER OF
THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS, AS SHOWN.
DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

17568217

00397

WHEN VEHICLE IS SOLD, TITLE HOLDER MUST REMOVE AND PRESENT THIS TITLE, CURRENT LICENSE RECEIPT, AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR COLLECTOR WITHIN 20 WORKING DAYS TO AVOID ANY PENALTY.

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

X BEVERLY J HAYS 302 E WALNUT ST Celina TX 75009

X 136,617

8-18-00

BEVERLY J HAYS

BEVERLY J HAYS



**Texas Department of Transportation**

TITLE APPLICATION RECEIPT



COUNTY: DALLAS
STICKER NO: 119355078A
PLATE NO: RFPM5R
DOCUMENT NO: 95749336200094930

TAG NAME: DAVID ENNIS
DATE: 03/11/1999
TIME: 5:53AM
EMPLOYEE ID: 0410075

EFFECTIVE DATE: 03/11/1999
EXPIRATION DATE: 1/2000
TRANSACTION ID: 95749336200094930

OWNER NAME AND ADDRESS
DONALD WALTER
2909 OAK SPRINGS
GARLAND, TX 75041

REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
PLATE TYPE: PASSENGER PTT
STICKER TYPE: WS

VEHICLE IDENTIFICATION NO: JFALP/3R53F153TH0        VEHICLE CLASSIFICATION: PASS
YR/MAKE: 1975/FORD   MODEL:        BODY STYLE: 4D    UNIT NO:
EMPTY WT: 3709    CARRYING CAPACITY: 0    GROSS WT: 3709   TONNAGE: 0.00   TRAILER TYPE:
BODY VEHICLE IDENTIFICATION NO:                         TRAVEL TRLR LENGTH: 0
PREV OWNER NAME: M L PETERSON TRUST       PREV CITY/STATE: HUNT VALLEY, MD

INVENTORY ITEM(S)            30
WINDSHIELD STICKER           2000

VEHICLE RECORD NOTATIONS
ACTUAL MILEAGE

| FEES ASSESSED | | |
|---|---|---|
| TITLE APPLICATION FEE | $ | 13.00 |
| SALES TAX FEE | $ | 468.75 |
| WINDSHIELD STICKER | $ | 50.80 |
| CITY ROAD BRIDGE ADD-ON FEE | $ | 10.00 |
| TOTAL | $ | 549.55 |
| METHOD OF PAYMENT AND PAYMENT AMOUNT: | | |
| CHECK #4709 | $ | 549.55 |

ODOMETER READING: 75000    BRAND: A
OWNERSHIP EVIDENCE: TEXAS TITLE
1ST: LIEN

| AMOUNT PAID | $ | 549.55 |
|---|---|---|
| CHANGE DUE | | 0.00 |
| SALES TAX CATEGORY: | SALES/USE | |
| SALES TAX DATE: | 02/01/1996 | |
| SALES PRICE | $ | 7,500.00 |
| TRADE IN ALLOWANCE | $ | 0.00 |
| TAXABLE AMOUNT | $ | 7,500.00 |
| SALES TAX PAID | $ | 468.75 |
| OTHER STATE TAX PAID | $ | 0.00 |
| TAX PENALTY | $ | 0.00 |
| TOTAL TAX PAID | $ | 468.75 |

BATCH NO: 4933620001        BATCH COUNT: 4

2ND LIEN

3RD LIEN

THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES.

ORIGINAL
VTR-500 ITS (REV 11/625) (REV 1/96)

00399

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE
## ➤ TYPE OR PRINT NEATLY IN INK ◄

TAX OFFICE USE ONLY

Tax Office: DAVID CHILDS
Date: 02111995
County: DALLAS
Transaction Number: 097463368...

| Vehicle Identification Number | Year | Make | Body Style |
|---|---|---|---|
| 2FALP73W5SX153100 | 1995 | FORD | 4 DR SEDAN |

| Color | Empty Weight | Carrying Capacity | Empty/Gross Weight | Vehicle |
|---|---|---|---|---|
| VICTORIA | 75,000 | [illegible] 3700 | | |

▲ VTR USE ONLY ▲

| License Plate | Tons | Class/Series | Previous Texas Title/Document Number |
|---|---|---|---|
| (1995) (TX) | REPOBB | | [redacted] |

Applicant Name / Purchaser / Owner / Trust
DONALD WALLEN
2905 OAK SPRINGS
GARLAND, TX  75044

Previous Owner Name / Trust
B.L. PETERSON TRUST
307 INTERNATIONAL CIRCLE
HUNT VALLEY, MD  21030-1337

THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN

First Lien Holder Name:  [illegible]

□ Statement of Fact for Non Disclosure, VTR 171, Attached

Purchase / Dealer and Seller — I STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT

B.L. PETERSON TRUST  BY: [signature]  ...for the odometer now reads  75,000  (no tenths)

The mileage shown is  □ A - Actual Mileage   □ N - Not Actual Mileage   □ X - Mileage Exceeds Mechanical Limits

MOTOR VEHICLE TAX STATEMENT

Check only if applicable:

□ This new motor vehicle ... Purchase Price _____
□ ...

| Description of Vehicle Traded In (if any) | Year | Make | Vehicle Identification Number | Net Amount of Trade (if any) |
|---|---|---|---|---|
| | | | | |

Sales and Use Tax Computation:

□ 1) Sales Price  $ 1560.00
  (F) Less Trade In Amount as set above
  (G) Less Rebate/Dealer/Manufacturer — For Motor Vehicle ...
  3) Taxable Amount  $ _____
  4) Amount (Line 3 Minus Line 5)  $ _____
  5) 6.25% Tax on Taxable Amount (Multiply Line 3 by .0625)  $ 97.50
  6) Tax Paid to _____ (STATE)  $ _____
  7) Amount of Tax Due (Item 3 Minus Item 6)  $ _____

□ $10 New Resident Tax (Previous State)  _____
□ $5 Even Trade Tax
□ $15 Gift Tax
□ Exemption Claimed Under Texas Motor Vehicle Sales and Use Tax Law Because
_____
_____
□ $13 APPLICATION FEE FOR CERTIFICATE OF TITLE

I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Seller / Donor / Trader:  B.L. PETERSON TRUST
Signature: [signature]   Printed Name: [signature]   Date: 2/1/95

Purchaser / Donee / Trader:
Signature: [signature]   Printed Name: W. DONALD WALLEN   Date: 2/11/95

WARNING: [illegible legal warning text]





00402

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE

6565583

### TYPE OR PRINT IN INK

**TAX OFFICE USE ONLY** David Childs Dallas

| | | | |
|---|---|---|---|
| Tax Collector | 022395 | County | B 675940 |
| Date | | Transaction Number | |

**VTRD USE ONLY**

| 1 Vehicle Identification Number | 2 Year | 3 Make | 4 Body Style | 5 Model | 6 Odometer Reading |
|---|---|---|---|---|---|
| 2FALP73W5SX153100 | 1995 | FORD | 4D | Cr.Vic | 20 |

| 7 Empty Weight | 8 Carrying Capacity (lbs.) | 9 Tonnage | 10 Trailer Type ( )Semi ( )Full | 11 Plate No | 12 Vehicle Unit No | 13 Owner I.D No (Employer I.D. or SSN *see below) |
|---|---|---|---|---|---|---|
| 3700 | | | | RCP06B | | |

| 14 | Applicant's Name (Purchaser, Donee, Trader) | D.L. Peterson Trust |
|---|---|---|
| | Address | 307 International Circle |
| | City, State, Zip Code | Hunt Valley, MD 21030 |

| 14a | Renewal Notice Info. Name (If Different From 14) |
|---|---|
| | Address |
| | City, State, Zip Code |

| 14b | Vehicle Location Info. (If Different From 14) Address, City, State, Zip Code |
|---|---|

| 15 | Previous Owner (Seller, Donor, Trader) | Lynchburg Ford | 15a GDN – Dealer Use Only |
|---|---|---|---|
| | City, State | Baltimore, MD 21203 | 27F701 |

### THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN

| 16 1st Lien Date | 1st Lienholder Name | S/A PHH Vehicle Management Services | 16a Additional Lien(s)? |
|---|---|---|---|
| 2/16/95 | Address | P.O. B7X 13267 | ☐ YES (If additional liens are to be recorded attach Form VTRD-267) |
| | City, State, Zip Code | Baltimore, MD 21263 | |

| 17 FOR CORRECTED TITLE, CHECK REASON BELOW | 18 ODOMETER, INFORMATION TO BE COMPLETED BY TRANSFEROR (SELLER/AGENT). FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT. MILEAGE SHOWN IS: |
|---|---|
| ☐ Change in Vehicle Description | ☑ A – Actual Mileage ☐ N – Not Actual Mileage ☐ X – Mileage Exceeds Mechanical Limits |
| ☐ No Change in Ownership | I, Lynchburg Ford (Print Name of Seller) state that the |
| | odometer now reads 20 (no tenths). |

### MOTOR VEHICLE TAX AFFIDAVIT

**19 CHECK ONLY IF APPLICABLE**
☐ I hold Motor Vehicle Retailer's (Rental) Permit No. _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code, Sec. 152.046(c))
☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, Sec 152.002(c)).

| 20 DESCRIPTION OF VEHICLE TRADED IN (if any) | Year 1992 | Make Ford | Vehicle Identification Number 2FACP73W1NX138601 | 20a ADDITIONAL TRADE-INS? (Y/N) |
|---|---|---|---|---|

**21 SALES AND USE TAX COMPUTATION**

| | | | |
|---|---|---|---|
| ☑ (a) Sales Price | $ 19202.50 | ☐ $15 New Resident Tax – (Previous State) _____ | |
| ☒ (b) Less Trade-In Amount, Describe in Item 20 Above | $ ( 0 ) | ☐ $5 Even Trade Tax | |
| (c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, Describe in Item 20 Above | $ 3462.04 | ☐ $10 Gift Tax | |
| (d) Taxable Amount (Item a minus Item b./Item c) | $ 15740.46 | ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because _____ | |
| (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625) | $ 983.78 | | |
| (f) Tax Paid to _____ (STATE) | $ | | |
| (g) AMOUNT OF TAX DUE (Item e. minus Item f) | $ 983.78 | ☑ $13 APPLICATION FEE FOR CERTIFICATE OF TITLE | |

### I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

| 22 SELLER, DONOR, OR TRADER SIGN HERE | Lynchburg Ford | By | Date 2-16-95 |
|---|---|---|---|
| 23 TITLE APPLICANT, PURCHASER, DONEE, OR TRADER SIGN HERE | DL Peterson Trust | By | Date 2-16-95 |

**WARNING:** V.A.T.S., Article 6687-1, provides that falsifying information on title transfer documents is a third-degree felony offense punishable by not more than ten (10) years in prison or not more than one (1) year in a community correctional facility. In addition to imprisonment, a fine of up to $10,000 may also be imposed.

* You are not required by law to disclose your social security number. However, primarily because of duplication of individuals' names, this information is requested for our records maintenance program to assist in identifying the true owner of a vehicle.

Form 130-U Rev. 12-93

00403



## CERTIFICATE OF ORIGIN FOR A VEHICLE

DATE
**JANUARY 20,1995**

INVOICE NO
**X153100        2**

VEHICLE IDENTIFICATION NO
**2FALP73W5SX153100**

YEAR
**1995**

MAKE
**FORD**

BODY TYPE
**CROWN VICTORIA 4 DR SEDAN**

SHIPPING WEIGHT
**3607 LBS.**

| H.P. (S A.E.) | G.V.W.R | NO. CYLS. | SERIES OR MODEL |
|---|---|---|---|
| **41.47** | **N/R** | **8** | **P73** |

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

**LYNCHBURG FORD FOR PHH**

**P. O. BOX 17260**
**BALTIMORE          MD 21203**

**27F701**

It is further certified that this was the first transfer of such new motor vehicle in ordinary trade and commerce.

**F49041665**

**MEMO DATA (NOT A LIEN)**
-----------------------------

FORD MOTOR COMPANY

**FINANCE SOURCE   070001**

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)

**SIGNET MARYLAND**
**POST OFFICE BOX 1077**
**BALTIMORE          MD**
**                   21203**

**DEARBORN, MICHIGAN**
CITY - STATE

00404

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interest other than those disclosed herein and warrant title to the vehicle

FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) **D.L. PETERSON TRUST**

ADDRESS **387 INTERNATIONAL CIRCLE HUNT VALLEY, MD 21030**

I certify to the best of my knowledge that the odometer reading is ............................................ No Tenths

DEALER **LYNCHBURG FORD FOR PHH 8348**

State of **MARYLAND**

County of

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this **16** day of **Feb** 19 **95**

............................ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN ...

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S)

ADDRESS

I certify to the best of my knowledge that the odometer reading is ............................................ No Tenths

DEALER

State of

County of

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this ........ day of ........ 19 ....

............................ Notary Public

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S)

ADDRESS

I certify to the best of my knowledge that the odometer reading is ............................................ No Tenths

DEALER

State of

County of

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this ........ day of ........ 19 ....

............................ Notary Public

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S)

ADDRESS

I certify to the best of my knowledge that the odometer reading is ............................................ No Tenths

DEALER

State of

County of

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this ........ day of ........ 19 ....

............................ Notary Public

**ODOMETER DISCLOSURE FOR RETAIL SALE**

WARNING ODOMETER DISCREPANCY

20

8348

Date of Sale **01/31/95**

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this ........ day of ........ 19 ....

Notary Public

**DL PETERSON TRUST**
**SAME AS ABOVE**

**MARYLAND**

**LIENHOLDER**

**S/A PHH VEHICLE MANAGEMENT SERVICES**
**P.O. BOX 13267, BALTIMORE, MD 21203**

REV 3-91

00405

Case 3:15-cv-01750-N Document 38-6 Filed 06/28/16 Page 130 of 165 PageID 1032

# B675940

## TAX COLLECTOR'S RECEIPT FOR TEXAS TITLE APPLICATION/REGISTRATION/MOTOR VEHICLE TAX

## B675940

RECEIPT NUMBER

| 1. 022395 | 2. Validation sticker no. 8826116W-W | 3. Expires last day of → Month 01 | Year 96 | 4. Texas license no. RCP06B | RCP06B |
|---|---|---|---|---|---|

| 5. | ☐ Transfer of current registration | ☐ Registration fee paid- no plates issued | XXX Registration fee paid- new plates issued | 30. 1ST LIENHOLDER Name and mailing address | S/A PHH Vehicle Management Serv PO Box 73267 Baltimore MD 21203 |
|---|---|---|---|---|---|

| 6. OWNER Name, street address, city state, zip | D L Peterson Trust 307 International Circle Hunt Valley MD 21030 |
|---|---|

| Date of lien 021695 | |

| 31. 2ND LIENHOLDER, name, city, state |

| 7. Classification 01 | 8. Tonnage | 9. Empty weight 3700 | 10. Carrying capacity | 11. Gross weight |
|---|---|---|---|---|

| Date of lien NONE | |

| 12. Year 95 | 13. Make Ford | 14. Body style. 4d | | 15. Prev. license no. MCo |
|---|---|---|---|---|

| 32. SELLER (Name of previous owner, city, state) Lynchburg Ford Baltimore MD |

| 16. Vehicle identification number 2FALP73W5SX153100 | 17. Odometer A 20 | 18. Surrendered title no. Mco |
|---|---|---|

| 33. | ☐ $5 Even trade | ☐ $10 Gift | ☐ $15 New resident |
|---|---|---|---|
| | ☐ Exempt | | |

| 19. Index number NA | 20. Diesel fee | 21. Penalty | 22. No. of mos. 12 | 23. Total reg/Trans. fee 58.80 |
|---|---|---|---|---|

| 34. Sales price 19202.50 | 35. Trade-In 3462.04 | 36. Taxable value 15740.46 |
|---|---|---|

| 24. Tax Assessor-Collector David Childs | 25. Title appl fee 13.00 |
|---|---|

| 37. Tax 983.78 | 38. Tax paid to other state | 39. Penalty | 40. TAX & PENALTY PAID 983.78 |
|---|---|---|---|

| 26. County Dallas | 27. County no 057 | 28. Deputy CGRAHAM | 29. Local Fees 10.00 |
|---|---|---|---|

| rec total 1065.58 |

Form 31 (Rev. 10/93)

**TAX AND TITLE COPY**

00406

F08-24667-Y

| | | |
|---|---|---|
| State of Texas | § | In the Criminal |
| v. | § | District Court No. 7 |
| James Garfield Broadnax | § | Dallas County, Texas |

## STATE'S RESPONSE TO
## MOTIONS TO QUASH MEDIA SUBPOENAS

The State files this response opposing the motions to quash the subpoenas issued for three news reporters: Shaun Rabb (Channel 4), Rebecca Lopez (Channel 8), and Ellen Goldberg (Channel 5). These reporters conducted video-recorded, "jailhouse" interviews of the defendant, James Garfield Broadnax, and his co-defendant, Demarius Dwight Cummings, regarding the murders of Steven Swan and Matthew Butler.[1]

With the exception of the interviews by Rebecca Lopez (Channel 8),[2] complete, unredacted copies of the video-recorded interviews have already been produced in response to Grand Jury subpoenas issued last year. On the State's application, subpoenas were also recently issued for each of the reporters to appear to testify as witnesses at the defendant's trial. The reporters (hereinafter referred to as "the movants") oppose any effort to compel their testimony, citing the recently enacted "journalist's privilege." The movants' reliance on this privilege is misplaced.

### New Privilege is Inapplicable in this Case

The "journalist's privilege" was enacted by the Texas Legislature on May 13, 2009 and made effective that same date. Act of May 13, 2009, 81st Leg., R.S., H.B. 670,

---

[1] Steve Pickett, a news reporter with Channel 11, also conducted interviews with Broadnax and Cummings. Neither Pickett nor Channel 11 has moved to quash the subpoena for Pickett's appearance. Furthermore, Channel 11 provided a complete, unredacted copy of the recordings of Pickett's interviews in response to the Grand Jury subpoenas issued last year.

[2] To date, Channel 8 has produced only those portions of the interviews that were aired on television.

1

§ 2 (to be codified at TEX. CODE CRIM. PROC. ANN. art. 38.11). The enabling provision of this new law states that the privilege "applies only to information, documents, or items or the source of any information, document, or item obtained or prepared for publication in a news medium or communication service provider on or after the effective date of this Act." Thus, under the plain language of the Act, a journalist cannot claim the privilege as to any information, document, or item obtained or prepared before May 13, 2009.

The movants interviewed the defendant and co-defendant on June 23, 2008 – almost a year before the effective date of the newly enacted privilege. The movants' testimony would necessarily relate to any information, document, or item they obtained or prepared in 2008, when they conducted the interviews. Consequently, under the statute's enabling language, the newly enacted privilege does not encompass their testimony.

The movants dispute the State's interpretation of the enabling language. They argue it only relates to *materials* obtained by them before May 13, 2009 – not any *testimony* they could provide regarding the same. According to the movants, the new statute affords them a blanket privilege against testifying, regardless of when they obtained the "information, document, or item" they have been called to testify about. This is an ill-founded and nonsensical interpretation of the statutory language, which disregards the plain meaning of the phrase "information, document, or item" and the context in which the legislature employed it.

The statute affords a journalist two types of privilege. The first protects against compelled testimony; the second protects against compelled disclosure or production. Both types of privilege arise, however, from any "information, document, or item

2

U0408

obtained or prepared" by the journalist. *See* TEX. CODE CRIM. PROC. ANN. art. 38.11, § 3. Thus, the use of the phrase "information, document, or item" in the Act's enabling provision is not merely a reference to the privilege against disclosure or production. Rather, it is a reference to the testimonial privilege as well. As the enabling language does not otherwise expressly except the testimonial privilege from its provisions, the newly enacted privilege clearly does not apply to evidence obtained by a journalist before May 13, 2009, no matter what form that evidence is presented in at trial, i.e., testimonial, documentary, or otherwise.

**Reporter's Testimony is Not Privileged Under New Law**

Even assuming the newly enacted statutory privilege governed in this case, the movants' testimony is excepted from its protection. *See* TEX. CODE CRIM. PROC. ANN. art. 38.11, § 5. Under article 38.11, § 5, this Court may compel a journalist to testify regarding any unpublished information, document, or item obtained while acting as a journalist, if the person seeking the unpublished information, document, or item makes a clear and specific showing that:

(1) all reasonable efforts have been exhausted to obtain the information from alternative sources; and

(2) the unpublished information, document, or item:

(A) is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure; or

(B) is central to the investigation or prosecution of a criminal case and based on something other than the assertion of the person requesting the subpoena, reasonable grounds exist to believe that a crime has occurred.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.11, § 5(a).

3

00409

The movants contend this exception does not apply because the State has no need for their testimony about the interviews. They assert the State has all it needs in the recordings of the interviews and that their testimony would be cumulative and inadmissible.

The movants fail to acknowledge that the defendant has filed a motion to suppress the video-recorded statements he made during their interviews. In that motion, the defendant alleges that the statements were "involuntary and the result of inducement, pressure and coercion by law enforcement agents . . ." *See* "Motion to Suppress Statements Made to Media" (filed April 2, 2009). It was only after the defendant raised this issue that the State sought to secure the movants' testimony.[3]

On April 21, 2009, this Court granted the defendant's request for a hearing on this motion; the hearing is currently scheduled for July 23, 2009. By ordering a hearing, the Court has put the State to its burden of proving by a preponderance of the evidence that the statements obtained by the movants are voluntary and admissible. *See* *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (enunciating State's burden of proof at hearing on motion to suppress confession). If at trial, the statements are admitted before the jury and the defense raises evidence of involuntariness, the State must assume the burden of proving their admissibility beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005).

While the recordings of the interviews, in and of themselves, are certainly

---

[3] The movants also argue that the subpoenas are invalid because they were not personally signed by Dallas County District Attorney Craig Watkins. In support of this contention, the movants cite section 4(d) of the newly enacted article 38.11. This requirement is located section 4 of the statute, the portion that codifies the "confidential source" privilege. Thus, it only applies to subpoenas issued for the journalist's source. Because the subpoenas at issue did not pertain to any confidential source, the requirement that the District Attorney sign the subpoena application was inapplicable.

4

00410

probative of the knowing and voluntary nature of the defendant's statements, there are facts relevant to the Court's inquiry at the suppression hearing that cannot be established by the recordings alone. For instance, the recordings cannot establish whether the movants acted as agents of the State. The movants themselves are clearly the best, if not only, source of information on that issue. Moreover, any conversations the movants had with a jailer or other peace officer in their efforts to obtain the interviews would certainly be relevant to the issue of whether the movants were State agents.

In addition, the movants are potential witnesses to the statements and actions of the defendant's jailers and, thus, they may have information bearing on the defendant's claims that his recorded statements were coerced by them. To the extent these observations were not captured on film, the movants themselves are the primary, if not the only, source of such information.

The movants are also witnesses to the defendant's physical and mental condition at the time of the interviews. While the video-recordings contain some evidence of the defendant's condition, the movants may have observed aspects of the defendant's appearance and demeanor that are not reflected on film. To the extent the movants can offer insight into the defendant's condition, their testimony would again be probative of the knowing and voluntary nature of his statements.

The State has no desire to inhibit the movants' coverage of the defendant's trial. Moreover, the State intends to make every effort to minimize the inconvenience to the movants, just as the State would do with any other witness it subpoenaed. The State cannot, however, proceed to trial without the movants' testimony.

5

00411

Unquestionably, the defendant's statements to the movants are seminal to the State's capital murder prosecution of the defendant. The only witnesses to the murders are the defendant and co-defendant, and the statements given to the movants constitute the only direct evidence of who shot and killed the victims. As the defense is moving to exclude the recorded statements into evidence, the State has no option but to challenge their suppression. To succeed in carrying its burden of proof in the suppression hearing and at trial, the State must call the movants as witnesses.

In sum, allowing the movants to invoke a testimonial privilege on these matters would inhibit the proper litigation of the defendant's suppression motion and, thus, possibly subvert justice, a result clearly not intended by the newly enacted statute.

For all the foregoing reasons, the State respectfully asks this Court to deny the movants' supplemental motion to quash and motion to reconsider.

Respectfully submitted by,

Craig Watkins
Criminal District Attorney
Dallas County

Lisa Smith (00787131)
Assistant District Attorney
133 N. Industrial Blvd, LB-19
Dallas, TX 75207-4399
(214) 653-3630 (office)
(214) 653-3643 (fax)
lbsmith@dallascounty.org

6

00412

<u>Certificate of Service</u>

The State emailed a copy of this response to counsel for the movants, Laura Prather (laura.prather@sdma.com), Marc A. Fuller (mfuller@velaw.com), Shannon M. Zmud, (szmud@jw.com), and Anthony Bongiorno (Anthony.bongiorno@cbx.com), and defendant's counsel, Doug Parks (doughparks@aol.com) and Brad Lollar (bklollar@sbcglobal.net), on June 9, 2009.

*Lisa Smith*

Lisa Smith

00413

NO. F08 24667 Y
NO. F08 24629 Y

| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| | § | DISTRICT COURT # |
| VS. | § | |
| | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES BROADNAX | § | APRIL TERM, 2009 |

## STATE'S NOTICE OF INTENT TO USE BUSINESS RECORDS ACCOMPANIED BY AFFIDAVIT

COMES NOW THE STATE OF TEXAS and hereby gives notice of filing business records accompanied by affidavit pursuant to Rule 902(10) of the Texas Rules of Evidence.

Name of Affiant:     **Elizabeth Lutton**

Employer of Affiant: **Dallas Sheriff's Office (DSO)**

Subject:    **James Broadnax,**
            **Jail Incident Reports**

· CRAIG WATKINS
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

BY: _____
DAVID ALEX
ASSISTANT DISTRICT ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion and Affidavit were [ X ] hand-delivered, [ ] mailed, [ ] faxed, to Defendant's Attorney of record on this the 10ᵗʰ day of **June**, 2009.

_____
DAVID ALEX
ASSISTANT DISTRICT ATTORNEY

00414

STATE OF TEXAS

v.

JAMES BROADNAX

IN CRIMINAL DISTRICT
COURT #7 IN AND FOR

DALLAS
COUNTY, TEXAS

## AFFIDAVIT

Before me, the undersigned authority, personally appeared *Elizabeth Lutton*
who, being by me duly sworn, deposed as follows:

My name is *Elizabeth Lutton* , I am of sound mind, capable of making
this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of **Dallas Sheriff's Office (DSO), Dallas County, Texas**.
Attached hereto are **17** pages of records from **DSO**. These said **17** pages of records are kept by
**DSO** in the regular course of business, and it was the regular course of business of **DSO** for an
employee or representative of **DSO**, with knowledge of the act, event, condition, opinion, or
diagnosis, recorded to make the record or to transmit information thereof to be included in such
record; and the record was made at or near the time or reasonably soon thereafter. The records
attached hereto are the original or exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the __3rd__ day of __June__ , 20 __0 9__ .

My commission expires: __Sept. 9, 2012__

DORA ELIA ELIZONDO
Notary Public
STATE OF TEXAS
My Comm. Exp. Sep. 09, 2012

Notary Public,
State of Texas
Notary's printed name:

00415



#090272

To:        JAMES GARDIELD BROADNAX        Report Number:   N9909725

Bookin Number:   08047374  ZEU66

Jail:        NORTH TOWER

You are herewith notified that a written offense report dated on the 21 day of 1/2009 alleges that you have violated the following jail rule(s):

E03: Fighting. Miller, Trevaun 08031230

**You shall be given a full and fair hearing as soon as is practical after 24 hours from** The serving of this notice for the alleged offense, at which time you shall be given the opportunity to be heard. You have the right to call up to 2 witnesses on your behalf at the time of this service. You must designate, by name, the witnesses you plan to call. If you are unable to read or to comprehend the charges, you may be represented by Another inmate or by a staff member of the Dallas County Sheriff's department, if such A person is willing to assume that responsibility. A determination of innocence or guilt Shall be made by the disciplinary board following the hearing. If you are found guilty, The penalty for the above violation(s) may include any or all of the following:

1. Denial of visiting and/or commissary privileges for up to 30 days.
2. Denial of telephone for upto 30 days.
3. Confinement in a disciplinary housing unit for up to 30 days.
4. Confinement in an administrative custody housing unit.

RECEIVED
JAN 2 8 2009
By

You are further advised that you may give verbal notice of appeal before the board, And that you have the right to appeal, in writing, the board's decision to the division Commander of the facility that you are confined in.

Dated at Dallas County Jail this 21 Day of 1/2009

                    Lupe Valdez, sheriff
                    Dallas, Texas

RECEIVED
IN THE OFFICE OF
JAN 2 3
GARY LINDSEY,
CHIEF DEPUTY

O - Polk 589
-------------------------------
                (officer)

Which said notice of disciplinary board hearing consisting of 2 separate pages numbered 1 of 3 and 2 of 3 and 3 of 3 is by the reference incorporated herein for all purposes.

15-DAYS

Dallas County Jail System Disciplinary Hearing          *Page 2 of 4*

## Confirmation of Service

I certify that on this the 21 day of 1/2009, I personally served an offense notice upon JAMES GARDIELD BROADNAX  in housing unit   at the Dallas County Jail, Dallas, Texas, and that a true and exact copy of the aforementioned notice is attached hereto and made a part hereof.

_O Polk S8u_

(officer)

## Receipt of Service

I acknowledge receipt of this service.

_James Broadnax_                                         _1/21/09_
(Inmate's Signature)                                     (Date)

I wish to designate the following persons as witnesses on my behalf:

_o. Polk S8c/_ -------------------------- aka ------------------------------------
_SL Sh   7195_ -------------------------- aka ------------------------------------

## Disciplinary board's Procedure and Determination

Date of Hearing ......01-26-09......          Time ...........................

Inmate's Name, Number, Housing unit: .................................................
.................................................................................

Brief Summary and Remarks: _Inmate Broadnax waived His Right to a Disciplinary Hearing_

Decision:......_15- Days Full Restriction_.....................
.................................................................................
.................................................................................
.................................................................................

Member: ......................................
Member: ......................................
Member: ......................................

Which said notice of disciplinary board hearing consisting of 2 separate pages numbered 1 of 3 and 2 of 3 is by this reference incorporated herein for all purposes.



Dallas County Jail System Disciplinary Hearing

## Inmate option to waive disciplinary Hearing

**Inmate Name:** JAMES GARDIELD BROADNAX          **Bookin Number:** 08047374

**Date Notified:** 01/21/2009     **Time Notified:** 16:03:00          **Tank** NORTH TOWER

**Jail Violation:**

E03: Fighting.

You have the option to waive your disciplinary hearing. If you decide to waive your right to a disciplinary hearing, you will receive the minimum restriction time, rather than having a hearing and risk receiving the maximum restriction time. If you wish to waive your right to a hearing, in accordance with the Dallas County jail rules, the consequences will be the following:

Section A Violation: 2 Days full restriction
Section B Violation: 5 Days full restriction
Section C Violation: 5 Days full restriction
Section D Violation: 10 Days full restriction
Section E Violation: 15 Days full restriction

The consequences will include:
Loss of Television
Loss of Commissary
Loss of Telephone - except for Attorney and Clergy
Loss of Visitation - except for Attorney and Clergy

......JB........ I wish to waive my right to a disciplinary hearing.
................ I refuse to waive my right to a disciplinary hearing.

_James Broadnax_
Inmate Signature

_0 Polk 5861_
Officer Signature

Office Comments:

00418



# DALLAS COUNTY JAIL
## Incident Report

| | | | |
|---|---|---|---|
| | | **Report:** | N9909725 |
| **Date:** 01/21/2009 | **Time:** 16:03:00 | **Location of Incident:** | NORTH TOWER |

**Inmate Name:** JAMES GARDIELD BROADNAX    **Bookin Number:** 08047374

**R:** B    **S:** M    **DOB:** 10/30/1988    **I.D.#:**

**Quarters:** 2 WEST GYM    **Violation:** E03: Fighting.

**Comments:**    E 03 FIGHTING TO WIT: MILLER, TREVAUN #08031230

**Narrative:** ON 1/21/09 AT APPROXIMATELY 3:20 PM TWO UNIDENTIFIED INMATES WERE SEEN FIGHTING EACH OTHER WITH CLOSED FISTS IN THE TWO WEST GYM AREA. THE TWO INMATES WERE ORDERED TO STOP FIGHTING BUT REFUSED TO COMPLY. THE GYM WAS ENTERED AND SECURED BY SRT POLK, BRYANT, BATLEY, AND MYSELF AND THE INMATES WERE RESTRAINED USING MINIMUM FORCE. THE INMATES WERE IDENTIFIED BY ARMBAND AS BROADNAX, JAMES #08047374, AND MILLER, TREVAUN #08031230. THEY WERE ESCORTED OUT OF THE GYM AREA SEPARATELY BACK TO TWO EAST UPPERS. BOTH MILLER AND BROADNAX REFUSED TO SEE THE NURSE AND A MEDICAL REFUSAL WAS COMPLETED. AFFIDAVITS WERE COMPLETED AND PICTURES WERE TAKEN AND ARE ATTACHED TO THE REPORT. A MAJOR BOARD HEARING WAS FILED ON BOTH MILLER AND BROADNAX FOR FIGHTING AND THEY WERE ADVISED OF THEIR RIGHT TO WAIVE THE BOARD HEARING. A NOTATION WAS MADE ON BOTH INMATES BUFFCARDS TO BE KEPT SEPARATE. SGT KLEPPELID WAS NOTIFIED.

SGT KLEPPELID #6356
3RD WATCH NORTH TOWER

*Sgt Kleppelid #6356*

DSO CONTRERAS #6831
3RD WATCH NORTH TOWER

*Contreras 6831*

Reviewed / CPL _____ SGT _____ LT _____ CAPT _____ CHIEF _____

00419



# SHERIFF'S DEPARTMENT

### JIM BOWLES, SHERIFF

## FRANK CROWLEY COURTS BUILDING
### 133 N. INDUSTRIAL BLVD., LB-31
### DALLAS, TEXAS 75207-4313

## REFUSAL FOR MEDICAL ASSISTANCE

DATE: _1/21/09_    TIME _3:20 pm_

I, _Broadnax, James_    BNO# _08047374_ TANK# _2FU66_

DO HEREBY REFUSE TO:

( ) TAKE MY PRESCRIBED MEDICATION
( ) TAKE MY PRESCRIBED TREATMENTS
(X) SEE THE NURSE
( ) SEE THE DOCTOR
( ) SEE THE DENTIST
( ) GO TO PARKLAND HOSPITAL FOR TREATMENT
( ) GO TO X-RAY
( ) OTHER, DESCRIBE _____

I MAKE THIS REFUSAL OF MY OWN WILL WITHOUT COERCION FROM ANYONE. I WILL NOT HOLD THE DALLAS COUNTY HEALTH DEPARTMENT OR THE DALLAS COUNTY SHERIFF'S DEPARTMENT RESPONSIBLE FOR ANY RESULTING COMPLICATION.

WITNESS _Carter 6871_

SIGNED _James Broadnax_
(INMATE'S NAME)

WITNESS _Bryant #3844_

00420

# AFFIDAVIT IN ANY FACT

SERVICE NUMBER: N9909725

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME _____
A NOTARY PUBLIC IN AND FOR SAID COUNTY, STATE OF TEXAS, ON THIS DAY
PERSONALLY APPEARED:
**JAMES BROADNAX**

WHO, AFTER BEING BY ME DULY SWORN, ON OATH DEPOSED AND SAYS: **REFUSED**

x _James Broadnax_

NAME: **JAMES BROADNAX**

BNO: **08047374**

WITNESS: _R Polk 5861_
ADDRESS: 500 COMMERCE
CITY: DALLAS
PHONE #:_____

WITNESS: _DSO Johnson #7195_
ADDRESS: 500 COMMERCE
CITY: DALLAS

PHONE #:_____

SUBSCRIBED AND SWORN TO BEFORE ME

THIS **21** DAY OF **JANUARY**   A.D. **2009**

_____

NOTARY PUBLIC, DALLAS COUNTY, TEXAS

00421

# AFFIDAVIT IN ANY FACT

INCIDENT NUMBER

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME _____
A NOTARY PUBLIS IN AND FOR SAID COUNTY, STATE OF TEXAS, ON THIS DAY PERSONALLY
APPEARED _____

WHO, AFTER BEING BY ME DULY SWORN, ON OATH DEPOSED AND SAYS:

X _James Broadnax_

NAME:

BNO: O8047374

WITNESS: O-Pall 5861
ADDRESS: 500 COMMERCE
CITY: DALLAS

PHONE #: _____

WITNESS: Cart6531
ADDRESS: 500 COMMERCE
CITY: DALLAS

PHONE #: _____

SUBSCRIBED AND SWORN TO BEFORE ME

THIS          DAY OF                A.D.

_____

NOTARY PUBLIC, DALLAS COUNTY, TEXAS

00422



00423



McCAII #1560
6-21-08  6:45am

# DALLAS COUNTY SHERIFF'S DEPARTMENT

Deniela  1077722

| BNO | BOOKIN NAME | RACE | SEX | DOB | PRINT OUT | DATE | TIME | JID |
|---|---|---|---|---|---|---|---|---|
| 08047374 | BROADNAX , JAMES GARDIELD | B | M | 10/30/88 | | 06/21/08 | 3:23:18 AM | TX0570000 |

| | | HT | WGT | SOC NO | LICENSE | ST | TRUSTY |
|---|---|---|---|---|---|---|---|
| | | 6'3" | 160 | 602262794 | | | |

ADDRESS
PINEHURST VILLAGE 104     TEXARKANA     AR

| ARREST AGENCY | DATE | TIME | LAI |
|---|---|---|---|
| TX0571100 | 06/21/08 | 02:51:00 | |

| ARRESTING OFFICERS | | TRN |
|---|---|---|
| 708 | | 9174212621 |

| CUSTODY | CELL | OPER |
|---|---|---|
| | | Hughes, Monee |

| CHG | DATE | TRS | OFFENSE | WARRANT-NO | INDICTMENT | MAG-DT/TM | DISPO | SENTENCE | FINE | COST | BEGINS | ENDS | EARLY | APP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C01 | 06/21/08 | A001 | CAPITAL MURDER OF MULTIPLE PERS | f0824629 | Yes | | | | | | | | | No |

3 P/ν

2 Elu 66

**MAXIMUM CUSTODY**

| D | DATE | OFFENSE | WARRANT NO | TRN | MAG-DATE | LIFTED | REASON | REMARKS |
|---|---|---|---|---|---|---|---|---|

**BEHAVIORAL** Close **OBSERVATION**

CHG #90824629J ADDED PER PC  WRNT...........TVAR_GHESE2 062108

RIGHT INDEX FINGERPRINT
AT BOOKIN          AT RELEASE

HOW RELEASED**          DATE          TIME          OK BY

BOOKING OFFICER          RELEASING OFFICER

| DATE | DOWN & OUTS | DATE | ATTORNEY | DATE | INCIDENTS |
|---|---|---|---|---|---|
| | | | | 6/2/16 | T/F 3PM T/11PM |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DSO PROPERTY ISSUED | INMATE CLOTHING AT INTAKE | RELEASED INFORMATION |
|---|---|---|
| SLIDES __1__ COVERALLS __1__ Blanket __1__ WASHCLOTHS __ | PANTS ____ SHIRT ____ BELT ____ COAT ____ VEST ____ TIE ____ | DATE _____ |
| TOWELS __1__ SOX __2__ Boxers U-SHORTS __1__ | SWEATER ____ HAT/CAP ____ SHOES/BOOTS ____ | I HAVE RECEIVED/RELEASED ALL MY CLOTHING |
| | OTHER _____ | |
| X _____ INMATES SIGNATURE | PHONE   USED/REFUSED   DEPUTY _____ | X _____ INMATES SIGNATURE |

0042S

DALLAS COUNTY JAIL SYSTEM DISCIPLINARY BOARD PAGE 1 OF 3

TO - BROADNAX JAMES GARDIELD                          REPORT# - N0805076

BNO - 08047374                    I.D. # - 1077722

JAIL - NORT2EU 66 B.O.                     TIME - _____

YOU ARE HEREWITH NOTIFIED THAT A WRITTEN OFFENSE REPORT DATED ON THE 24
DAY OF JULY , 2008 ALLEGES THAT YOU HAVE VIOLATED THE FOLLOWING JAIL
RULE(S):

D 13: DISRUPTION OF ANY INSTITUTIONAL ACTIVITY.;  SHAKEDOWN

JUL 2 0 2008

YOU SHALL BE GIVEN A FULL AND FAIR HEARING WITHIN TEN (10) DAYS (EXCLUDING
WEEKENDS AND HOLIDAYS) OF THE SERVING OF THIS NOTICE FOR THE ALLEGED OFFENSE,
AT WHICH TIME YOU SHALL BE GIVEN THE OPPORTUNITY TO BE HEARD. YOU HAVE THE
RIGHT TO CALL UP TO TWO WITNESSES ON YOUR BEHALF AT THE TIME OF THIS SERVICE.
YOU MUST DESIGNATE, BY NAME, THE WITNESSES YOU PLAN TO CALL. IF YOU ARE
UNABLE TO READ OR TO COMPREHEND THE CHARGES, YOU MAY BE REPRESENTED BY ANOTHER
INMATE OR BY A STAFF MEMBER IN THE DALLAS COUNTY SHERIFF'S DEPARTMENT IF SUCH
PERSON IS WILLING TO ASSUME THAT RESPONSIBILITY. A DETERMINATION OF INNOCENCE
OR GUILT SHALL BE MADE BY THE DISCIPLINARY BOARD FOLLOWING THE HEARING. IF
YOU ARE FOUND GUILTY, THE PENALTY FOR THE ABOVE VIOLATIONS(S) MAY INCLUDE ANY
OR ALL OF THE FOLLOWING:

    1. DENIAL OF VISITING AND/OR COMMISSARY PRIVILEGES FOR UP TO 25 DAYS.
    2. DENIAL OF TELEPHONE FOR UP TO 25 DAYS.
    3. CONFINEMENT IN A DISCIPLINARY HOUSING UNIT FOR UP TO 25 DAYS.
    4. LOSS OF COUNTY GOOD-TIME CREDIT.

YOU ARE FURTHER ADVISED THAT YOU MAY GIVE VERBAL NOTICE OF APPEAL BEFORE THE
BOARD, AND THAT YOU HAVE THE RIGHT TO APPEAL, IN WRITING, THE BOARD"S DECISION
WITHIN THREE(3) DAYS TO THE DEPUTY COMMANDER OF THE DETENTION SERVICES BUREAU.

DATED AT DALLAS COUNTY JAIL THIS 24 DAY OF JULY , 2008.

                                        TIME - _____
                                        LUPE VALDEZ, SHERIFF
                                        DALLAS, TEXAS

_____
(OFFICER)

WHICH SAID NOTICE OF DISCIPLINARY BOARD HEARING CONSISTING OF TWO (2) SEPARATE
PAGES NUMBERED 1 OF 3 AND 2 OF 3 AND 3 OF 3 IS BY THIS REFERENCE INCORPORATED
HEREIN FOR ALL PURPOSES.

00426

I CERTIFY THAT ON THIS THE 24 DAY OF JULY         , 2008, I  PERSONALLY SERVED
AN OFFENSE NOTICE UPON BROADNAX JAMES GARDIELD                 IN HOUSING
UNIT NORT2EU 66  AT THE DALLAS COUNTY JAIL, DALLAS, TEXAS, AND THAT A  TRUE AND
EXACT  COPY OF  THE  AFOREMENTIONED NOTICE  IS ATTACHED HERETO AND  MADE A PART
HEREOF.

TIME - 12:30 ___.                              _____
                                              (OFFICER)

*******************************************************************************

### RECEIPT OF SERVICE

I ACKNOWLEDGE RECEIPT OF THIS SERVICE.

_____        _____
(INMATE'S SIGNATURE)                   (DATE)

I WISH TO DESIGNATE THE FOLLOWING PERSONS AS WITNESSES ON MY BEHALF:

_____ AKA ___6731_____
_____ AKA ___7207_____

*******************************************************************************

### DISCIPLINARY BOARD'S PROCEDURE AND DETERMINATION

DATE OF HEARING  7-28-08              TIME _____

INMATE'S NAME: BROADNAX JAMES GARDIELD

BOOKIN # 08047374 INCIDENT # N0805076

BRIEF SUMMARY AND REMARKS: Inmate Broadnax is classified
as Behavioral observation

DECISION: Dismissed

                              MEMBER: _____
                              MEMBER: _____
                              MEMBER: _____

WHICH SAID NOTICE OF DISCIPLINARY BOARD HEARING CONSISTING OF TWO (2) SEPARATE
PAGES NUMBERED 1 OF 3 AND 2 OF 3 IS BY THIS REFERENCE  INCORPORATED HEREIN FOR
ALL PURPOSES.

INCIDENT REPORT NUMBER   08050766

INMATE OPTION TO WAIVE DISCIPLINARY HEARING

INMATE NAME: BROADNAX JAMES GARDIELD                    BNO# 08047374

DATE NOTIFIED: 07/24/08    TIME NOTIFIED: 04.05 AM TANK: NORT2EU 66

JAIL VIOLATION:
D 13: DISRUPTION OF ANY INSTITUTIONAL ACTIVITY.;   SHAKEDOWN


YOU HAVE THE OPTION TO WAIVE YOUR DISCIPLINARY HEARING. IF YOU DECIDE TO WAIVE
YOUR RIGHT TO A DISCIPLINARY HEARING, YOU WILL RECEIVE THE MINIMUM RESTRICTION
TIME, RATHER THAN  HAVE A HEARING AND RISK  RECEIVING THE  MAXIMUM RESTRICTION
TIME. IF YOU WISH TO WAIVE YOUR RIGHT TO A HEARING, IN ACCORDANCE WITH THE
DALLAS COUNTY JAIL RULES, THE CONSEQUNCES WILL BE THE FOLLOWING:

SECTION A VIOLATION:    2 DAYS FULL RESTRICTION
SECTION B VIOLATION:    5 DAYS FULL RESTRICTION
SECTION C VIOLATION:    5 DAYS FULL RESTRICTION
SECTION D VIOLATION: 10 DAYS FULL RESTRICTION
SECTION E VIOLATION: 15 DAYS FULL RESTRICTION

THE CONSEQUENCES WILL INCLUDE:
LOSS OF TELEVISION
LOSS OF COMMISSARY
LOSS OF TELEPHONE- EXCEPT FOR ATTORNEY AND CLERGY
LOSS OF VISITATION- EXCEPT FOR ATTORNEY AND CLERGY


_____ I WISH TO WAIVE MY RIGHT TO A DISCIPLINARY HEARING.


_____        _____
            INMATE SIGNATURE                    OFFICER SIGNATURE


OFFICE COMMENTS:

00428

INCIDENT REPORT                                    PRINTER TTNB
DALLAS COUNTY JAIL                    REPORT # N0805076

DATE  07/24/08  TIME  04:05 A LOCATION OF INCIDENT-2EAST UPPER 66

INMATES NM-BROADNAX JAMES GARDIELD              R-B S-M DOB 10/30/1988

     BOOK-IN NUMBER -08047374  I.D. NUMBER-1077722      QUARTERS-NORT2EU 66


D 13: DISRUPTION OF ANY INSTITUTIONAL ACTIVITY.;  SHAKEDOWN

NARRATIVE:ON 07/23/2008 AT APPROXIMATELY 11 30 PM WHILE CONDUCTING SHAKEDOWN

ON 2EAST UPPERS PER SGT.SCOTT. AN INMATE IDENTIFIED BY ARMBAND AS BROADNAX,

JAMES BNO# 08047374 WAS ORDERED TO INTERLOCK HIS HANDS BEHIND HIS HEAD,AND

PLACE HIS ELBOWS ON THE WALL.HE FAILED TO COMPLY WITH THE ORDERS GIVEN AND WAS

TAKEN TO THE GROUND BY SRT'S ABRAHAM, BROWN, GIBSON AND MYSELF. HE WAS SUBDUED

IN A DOUBLE WRISTLOCK, AND TAKEN TO THE NURSES STATION WHERE HE WAS EVALUATED

BY NURSE J ASHLEY. HIS VITAL SIGNS APPEARED TO BE  NORMAL, AND WAS ESCORTED

BACK TO HIS HOUSING AREA WITHOUT INCIDENT. SGT.MCNIEL WAS NOTIFIED. PHOTOS

WERE TAKEN AND ATTACHED TO THIS REPORT. A MAJOR BOARD HEARING WAS FILED.

BROADNAX RECEIVED A COPY OF HIS CONFIRMATION OF SERVICE.


SGT.MCNIEL #2622                          SRT.KIRVIN #6910
FIRST WATCH SUPERVISOR                    FIRST WATCH REPORTING OFFICER
NORTH TOWER                               NORTH TOWER

SUPERVISOR                                REPORTING OFFICER
     REVIEWED / CPL ____  SGT ____  LT ____  CAPT ____  CHIEF ____

00429

## BROADNAX, JAMES G. #08047374
## 2 EAST UPPER 66        7/23/08



00430



McCATT #1580
6-21-08  6:45am

# DALLAS COUNTY SHERIFF'S DEPARTMENT

LDaniels    1077722

00431

| BNO | BOOKIN NAME | RACE | SEX | DOB | PRINT OUT | DATE | TIME | JID |
|---|---|---|---|---|---|---|---|---|
| 08047374 | BROADNAX , JAMES GARDIELD | B | M | 10/30/88 | | 06/21/08 | 3:23:18 PM | TX0570000 |

| | | HT | WGT | SOC NO | LICENSE | ST | TRUSTY |
|---|---|---|---|---|---|---|---|
| | | 6'3" | 160 | 602262794 | | | |

ADDRESS
PINEHURST VILLAGE 104        TEXARKANA        AR

| ARREST AGENCY | DATE | TIME | LAI |
|---|---|---|---|
| TX0571100 | 06/21/08 | 02:51:00 | |

| ARRESTING OFFICERS | | TRN |
|---|---|---|
| 708 | | 9174212621 |

CUSTODY          CELL   OPER
                        Hughes, Monee

| CHG | DATE | TRS | OFFENSE | WARRANT-NO | INDICTMENT | MAG-DT/TM | DISPO | SENTENCE | FINE | COST | BEGINS | ENDS | EARLY | APP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C01 | 06/21/08 | | A001 CAPITAL MURDER OF MULTIPLE PERS | | f0824629 Yes | | | | | | | | | No |

**MAXIMUM CUSTODY**

2ELL 66

| | DATE | OFFENSE | WARRANT NO. | TRN | MAG-DATE | LIFTED | REASON | REMARKS |
|---|---|---|---|---|---|---|---|---|

**PSYCHATORAL** close **OBSERVATION**

CHG #90824629J ADDED PER PC  WRNT.............TVARGHESE2 062108

RIGHT INDEX FINGERPRINT
AT BOOKIN        AT RELEASE

HOW RELEASED**                    DATE    TIME    OK BY

BOOKING OFFICER        RELEASING OFFICER

Case 3:15-cv-01758-N    Document 38-6    Filed 06/28/16    Page 156 of 165    PageID 1058

00432

| DATE | DOWN & OUTS | DATE | ATTORNEY | DATE | INCIDENTS |
|------|-----------|------|----------|------|-----------|
| | | | | 6/16/ | T/F 3P 7/0 8P |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| DSO PROPERTY ISSUED | INMATE CLOTHING AT INTAKE | RELEASED INFORMATION |
|---------------------|--------------------------|---------------------|
| SLIDES ___/___ COVERALLS ___/___ WASHCLOTHS ___/___ | PANTS _____ SHIRT _____ BELT _____ COAT _____ VEST _____ TIE _____ | DATE _____ |
| TOWELS ___/___ SOX ___2___ Blanket BOXERS/SHORTS ___/___ | SWEATER _____ HAT/CAP _____ SH-OES/BOOTS _____ | I HAVE RECEIVED/RELEASED ALL MY CLOTHING |
| | OTHER _____ | |
| X _____ INMATES SIGNATURE | PHONE   USED/REFUSED   DEPUTY _____ | X _____ INMATES SIGNATURE |

NO. F08 24667 Y
NO. F08 24629 Y

| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| | § | DISTRICT COURT #7 |
| VS. | § | |
| | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES BROADNAX | § | APRIL TERM, 2009 |

### STATE'S NOTICE OF INTENT TO USE BUSINESS RECORDS ACCOMPANIED BY AFFIDAVIT

COMES NOW THE STATE OF TEXAS and hereby gives notice of filing business records accompanied by affidavit pursuant to Rule 902(10) of the Texas Rules of Evidence.

Name of Affiant: **Scott Seacat**

Employer of Affiant: **Value Added Communications (VAC)**

Subject: **James Broadnax,**
**Log – Telephone Calls, 09/15/08 to 06/07/09**


CRAIG WATKINS
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

BY: _____
DAVID ALEX
ASSISTANT DISTRICT ATTORNEY


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion and Affidavit were [ X ] hand-delivered, [ ] mailed, [ ] faxed, to Defendant's Attorney of record on this the 10th day of **June**, 2009.

_____
DAVID ALEX
ASSISTANT DISTRICT ATTORNEY

00433



STATE OF TEXAS                    IN CRIMINAL DISTRICT
                                          COURT #7 IN AND FOR

v.

                                          DALLAS
JAMES BROADNAX                   COUNTY, TEXAS

## AFFIDAVIT

Before me, the undersigned authority, personally appeared **Scott Seacat**, who, being by me duly sworn, deposed as follows:

My name is **Scott Seacat**, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of **Value Added Communications (VAC), Plano, Texas**. Attached hereto are **27** pages of records from **VAC**. These said **27** pages of records are kept by **DSO** in the regular course of business, and it was the regular course of business of **VAC** for an employee or representative of **VAC**, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

_Scott G Seacat_
AFFIANT

SWORN TO AND SUBSCRIBED before me on the _8th_ day of _June_ , 20_09_ .

My commission expires: _11-8-2010_

DAN'L SIMPSON
Notary Public
STATE OF TEXAS
Commission Exp. 11-08-2010

Notary Public,
State of Texas
Notary's printed name:

_Dan'l Simpson_

00434

*** SENSITIVE-LIMITED OFFICIAL USE ***

Run Date : 06/08/2009

## Inmate Telephone System

Run Time: 11:28:45

## Inmate Call Records

Page 1 of 27

From: 09/01/2008 - 00:00:00
Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 6/7/2009 9:22:17 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 6/7/2009 9:20:44 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 6/3/2009 6:03:05 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/31/2009 5:55:35 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/31/2009 5:50:24 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/31/2009 5:49:27 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/28/2009 6:16:36 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/26/2009 9:00:49 PM | 0 | 2149570298 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/26/2009 7:23:15 PM | 1 | 2149570298 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/26/2009 7:22:26 PM | 0 | 2149570298 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/26/2009 5:36:22 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/25/2009 9:31:57 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/25/2009 8:01:54 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/23/2009 8:06:47 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/22/2009 3:43:49 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/21/2009 2:10:08 PM | 0 | 9726175682 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/21/2009 2:08:50 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/21/2009 2:06:19 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/19/2009 11:23:10 AM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/18/2009 3:28:28 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/17/2009 2:33:18 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/16/2009 3:29:43 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/16/2009 3:29:11 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/16/2009 3:28:57 PM | 0 | 8707726653 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/16/2009 3:28:09 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/16/2009 3:17:38 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/15/2009 9:01:10 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/13/2009 5:35:53 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/11/2009 2:34:28 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/10/2009 5:28:37 PM | 1 | 9726175682 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/10/2009 5:28:02 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/10/2009 5:27:07 PM | 0 | 2142985389 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/10/2009 5:03:51 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/9/2009 7:55:42 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/9/2009 3:45:54 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/7/2009 3:46:05 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/6/2009 6:12:06 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/5/2009 1:09:33 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/4/2009 6:39:58 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/4/2009 11:10:19 AM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 5:56:57 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 4:09:03 PM | 0 | 8707726653 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 4:05:45 PM | 0 | 8706393146 | North | VAC Requested Block |

00435

*** SENSITIVE-LIMITED OFFICIAL USE ***

**Inmate Telephone System**

**Inmate Call Records**

Run Date : 06/08/2009
Run Time: 11:28:45

Page 2  of 27

From: 09/01/2008 - 00:00:00
Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Hud Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 4:05:23 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 4:03:36 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/3/2009 4:01:03 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 5/1/2009 5:53:53 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/30/2009 2:32:55 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/30/2009 2:32:44 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/30/2009 1:31:00 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/29/2009 7:16:58 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/29/2009 7:16:46 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/29/2009 5:49:23 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/28/2009 4:30:43 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/28/2009 4:28:00 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/28/2009 4:26:41 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/27/2009 5:34:20 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/27/2009 1:54:52 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/27/2009 1:54:32 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:04:39 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:04:28 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:03:28 PM | 1 | 9726175682 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:02:47 PM | 0 | 2142985983 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:02:16 PM | 0 | 2142985983 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 8:01:55 PM | 1 | 2142985983 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/26/2009 7:59:27 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/25/2009 9:40:52 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 10:06:24 PM | 1 | 2142985983 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 10:04:29 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 6:30:10 PM | 1 | 2142985983 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 6:28:50 PM | 1 | 9726175682 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 6:26:54 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 2:44:23 PM | 1 | 2142985983 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 2:42:39 PM | 1 | 9726175682 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/24/2009 2:41:21 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/22/2009 5:51:00 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/21/2009 8:32:59 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/21/2009 8:30:57 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/21/2009 6:06:56 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/21/2009 6:05:49 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/20/2009 2:41:55 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/20/2009 2:40:47 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/19/2009 4:56:07 PM | 0 | 8707031009 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/19/2009 4:52:36 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/19/2009 4:50:33 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/19/2009 4:50:16 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/19/2009 4:48:27 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/18/2009 4:03:43 PM | 0 | 2149986676 | North | Carrier Blocked Called |

00436

*** SENSITIVE-LIMITED OFFICIAL USE ***

Run Date : 06/08/2009

**Inmate Telephone System**

Run Time: 11:28:45

**Inmate Call Records**

Page 3 of 27

From: 09/01/2008 - 00:00:00

Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 4/17/2009 7:12:16 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/17/2009 7:11:53 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/16/2009 9:46:24 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/16/2009 3:38:21 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/16/2009 3:17:36 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/16/2009 3:03:15 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/16/2009 3:02:33 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/15/2009 3:30:02 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/15/2009 3:29:06 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/14/2009 5:28:33 PM | 0 | 8707031009 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/14/2009 5:28:16 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/13/2009 10:16:21 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/13/2009 9:33:02 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/13/2009 9:17:47 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/13/2009 8:36:18 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/13/2009 8:35:45 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/12/2009 6:15:50 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/12/2009 6:12:54 PM | 1 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/12/2009 6:11:13 PM | 1 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/12/2009 6:09:03 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/12/2009 6:08:44 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/11/2009 6:02:21 PM | 12 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/11/2009 3:47:07 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/11/2009 3:45:45 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/11/2009 3:44:35 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/10/2009 5:07:38 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/9/2009 7:44:43 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/8/2009 6:05:02 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/7/2009 6:00:50 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/7/2009 6:00:24 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/7/2009 11:07:17 AM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/7/2009 11:01:59 AM | 3 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 8:26:37 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 8:11:42 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 8:11:06 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 8:10:07 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 5:43:36 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 5:42:34 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/6/2009 5:41:56 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/5/2009 6:08:21 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/5/2009 6:07:05 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/5/2009 5:29:40 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 8:23:05 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 8:21:40 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 8:20:31 PM | 0 | 9726623474 | North | Call not accepted |

00437

*** SENSITIVE-LIMITED OFFICIAL USE ***

Run Date : 06/08/2009

Inmate Telephone System

Run Time: 11:28:45

Inmate Call Records

Page 4 of 27

From: 09/01/2008 - 00:00:00

Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 8:19:50 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 5:54:28 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 5:13:28 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 4:36:17 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 4:29:28 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 4:28:23 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/4/2009 3:21:41 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/3/2009 9:23:28 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/3/2009 9:00:55 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/3/2009 7:13:14 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/3/2009 7:12:55 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 8:52:51 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 8:50:06 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 4:05:11 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 3:53:09 PM | 0 | 8107854873 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 3:52:27 PM | 0 | 8104499914 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 3:49:55 PM | 0 | 8707726653 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/2/2009 3:47:58 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 9:36:38 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 8:36:22 PM | 15 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 6:21:35 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 5:58:50 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 5:02:10 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 4/1/2009 5:00:50 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 10:26:03 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 10:25:54 PM | 0 | 9726623474 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 10:24:52 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 10:24:01 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 7:04:23 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 5:02:22 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 5:01:08 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/31/2009 2:22:11 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/30/2009 7:25:30 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/30/2009 7:24:33 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/30/2009 7:23:04 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 8:35:52 PM | 15 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 8:00:22 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:58:34 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:56:37 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:56:26 PM | 0 | 8707031009 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:53:30 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:52:12 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/29/2009 7:50:21 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 9:03:17 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 9:02:10 PM | 0 | 2149986676 | North | Carrier Blocked Called |

00438

*** SENSITIVE-LIMITED OFFICIAL USE ***

Run Date : 06/08/2009                  Inmate Telephone System
Run Time: 11:28:45                     Inmate Call Records                              Page 5 of 27

From: 09/01/2008 - 00:00:00
Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC
User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 8:38:46 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 8:38:30 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 6:21:05 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 4:33:58 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 4:32:45 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 4:31:09 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 3:20:45 PM | 15 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 3:19:56 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/28/2009 3:19:30 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 8:04:28 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 8:03:31 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 8:01:40 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 4:46:38 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 4:32:54 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/27/2009 3:17:52 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 9:50:51 PM | 15 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 9:37:56 PM | 13 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 9:37:06 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 9:36:55 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 2:59:46 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/26/2009 2:59:26 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/25/2009 9:25:02 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/25/2009 8:31:10 PM | 15 | 9726623474 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/25/2009 8:30:34 PM | 0 | 9726623474 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/25/2009 8:29:46 PM | 0 | 9726623474 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/25/2009 8:28:31 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/24/2009 4:50:32 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/24/2009 2:04:43 PM | 0 | 2149463286 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/24/2009 2:04:13 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/24/2009 1:58:14 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/24/2009 1:56:55 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/23/2009 3:21:31 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/22/2009 7:27:09 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/22/2009 6:03:21 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/22/2009 5:46:39 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/22/2009 5:43:03 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/21/2009 2:27:05 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/21/2009 2:25:17 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/21/2009 2:24:03 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 10:04:09 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 10:03:08 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 10:02:54 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 3:54:08 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 3:44:33 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 3:44:18 PM | 0 | 8703101913 | North | Carrier Blocked Called |

*** SENSITIVE-LIMITED OFFICIAL USE ***

**Inmate Telephone System**

**Inmate Call Records**

Run Date: 06/08/2009

Run Time: 11:28:45

Page 6 of 27

From: 09/01/2008 - 00:00:00

Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date/Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 3/20/2009 3:44:00 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/19/2009 5:30:00 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/19/2009 5:28:47 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/19/2009 5:17:55 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/18/2009 6:17:07 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/18/2009 11:23:01 AM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/18/2009 11:22:47 AM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/18/2009 11:22:21 AM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/16/2009 7:11:38 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/16/2009 7:11:02 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/16/2009 7:10:49 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/16/2009 6:08:00 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/16/2009 6:07:48 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/15/2009 6:14:50 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/15/2009 6:14:26 PM | 0 | 2109607581 | North | Invalid Area Code or |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/15/2009 6:14:08 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/15/2009 6:13:56 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/15/2009 6:13:42 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 4:17:33 PM | 0 | 8104499914 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 4:16:56 PM | 0 | 8107854873 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:37:15 PM | 0 | 2143218322 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:36:34 PM | 0 | 2142210301 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:32:20 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:32:05 PM | 0 | 8707031090 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:30:26 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:30:07 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/14/2009 3:29:49 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/13/2009 7:26:44 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/13/2009 7:26:33 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/13/2009 7:24:29 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/13/2009 7:23:46 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/12/2009 4:06:36 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/12/2009 2:56:25 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/12/2009 2:49:52 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/11/2009 5:25:12 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/11/2009 5:24:04 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/11/2009 5:23:23 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/10/2009 6:17:38 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/10/2009 6:17:07 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/10/2009 6:16:50 PM | 0 | 2149986676 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/10/2009 5:18:45 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/9/2009 2:24:55 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/9/2009 2:24:31 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/9/2009 2:23:27 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:28:42 PM | 7 | 2149986676 | North | Completed Call |

*** SENSITIVE-LIMITED OFFICIAL USE ***

Run Date : 06/08/2009                    Inmate Telephone System

Run Time: 11:28:45                         Inmate Call Records                          Page  7  of  27

From: 09/01/2008 - 00:00:00

Thru: 06/08/2009 - 23:59:00

Terminal Making Request: TXUN9570DC

User ID: dbarger

| Inmate Name | Inmate ID | Start Date Time | Duration | Number Called | Jail Facility | Completion Code |
|---|---|---|---|---|---|---|
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:28:02 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:27:47 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:27:29 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:27:15 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 6:26:45 PM | 0 | 2149986676 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 5:32:47 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/8/2009 5:32:10 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/7/2009 8:56:29 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/7/2009 8:56:10 PM | 0 | 8703101913 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/7/2009 7:04:24 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/7/2009 7:03:12 PM | 1 | 8703101913 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/7/2009 4:47:59 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 10:14:47 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 10:14:04 PM | 0 | 2149608571 | North | Ring no answer or busy |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 10:13:20 PM | 1 | 8703101913 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 6:17:19 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 6:17:00 PM | 0 | 2149607581 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 6:15:33 PM | 1 | 8703101913 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 5:58:58 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/6/2009 4:51:35 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/5/2009 5:49:56 PM | 1 | 8703101913 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/5/2009 5:49:13 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/5/2009 5:48:46 PM | 0 | 8707031009 | North | Carrier Blocked Called |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/4/2009 5:27:21 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/4/2009 5:00:26 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/4/2009 4:58:50 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/2/2009 2:34:08 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/1/2009 3:16:57 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/1/2009 3:10:51 PM | 5 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/1/2009 3:09:43 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 3/1/2009 3:09:21 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/28/2009 3:50:41 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/28/2009 3:49:49 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 2:43:11 PM | 7 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 2:28:38 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 2:21:17 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 2:18:18 PM | 0 | 2149986676 | North | Call not accepted |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 10:09:38 AM | 5 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/27/2009 9:35:41 AM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/26/2009 3:59:45 PM | 15 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/26/2009 3:15:30 PM | 6 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/25/2009 6:38:29 PM | 0 | 8706393146 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/25/2009 6:38:16 PM | 0 | 8707736653 | North | VAC Requested Block |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/25/2009 6:34:03 PM | 4 | 2149986676 | North | Completed Call |
| BROADNAX, JAMES GARDIELD | 2725502 | 2/25/2009 6:15:24 PM | 0 | 2145863296 | North | VAC Requested Block |

00441