\* \* \* \* \*  **DEATH PENALTY**  \* \* \* \* \*
Supplemental
Volume One

# C L E R K ' S   R E C O R D

Volume of  **1**  Of  **2**
Trial Court Cause Number  **F08-24667-Y**
In the  **CRIMINAL**  District Court  **NO. 7**
of Dallas County, Texas,

Honorable  **MIKE SNIPES**, Judge Presiding.

**THE STATE OF TEXAS**  , Plaintiff

vs

**JAMES GARFIELD BROADNAX**, Defendant

Appealed to the Court of
Criminal Appeals of Texas at Austin, Texas

**FILED IN**
**COURT OF CRIMINAL APPEALS**

JAN 0 6 2010

Name  **John Tatum**
Address  **990 S. Sherman, Richardson, TX  75081**
Telephone No.  **972.705.9200**
Fax No.  **972.690.9901**
SBOT No.  **19672500**
Attorney for:  **James Garfield Broadnax**

**Louise Pearson, Clerk**

RECEIVED IN
COURT OF CRIMINAL APPEALS

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas
_____ day of _____ , _____ .

JAN 0 4 2010

**Louise Pearson, Clerk**

Signature of Clerk _____
Name of Clerk _____
Title _____

Appellate Court Cause No. _____
Filed in the Court of Criminal Appeals of Texas at Austin, Texas
this  **21st**  day of  **December**  , **2009** .

GARY FITZSIMMONS, DALLAS COUNTY DISTRICT CLERK

By  **Ana McDaniel**  , Deputy

SCANNED

DATE

JAMES GARFIELD BROADNAX

VS

THE STATE OF TEXAS

CAUSE NO.    F08-24667-Y

IN THE CRIMINAL DISTRICT COURT

NO. 7, OF DALLAS, COUNTY, TEXAS

# SUPPLEMENTAL

# INDEX

Defendant's Pretrial Motions    (02 Apr 09)    Vol. 1-01
Index of Motions    Vol. 1-02
- Motion to Declare Article 37.071, §2(a) of the    Vol. 1-06
  Code of Criminal Procedure Unconstitutional on its
  Face for Lack of Standards
- Motion to Preclude Death as a Sentencing Option    Vol. 1-11
  and to Declare Texas Death Penalty Statute
  Unconstitutional, Because of Juror's Inability to Predict
  Future Dangerousness
- Motion to Preclude the Prosecution from Seeking the    Vol. 1-17
  Death Penalty
- Motion to Quash Based on Unconstitutionality of Texas    Vol. 1-31
  Capital Sentencing Scheme
- Motion to Declare Jury Selection Procedure    Vol. 1-44
  Unconstitutional
- Motion to Preclude the Death Penalty as A Sentencing    Vol. 1-49.
  Option   (Denial of Equal Protection)
- Motion to Declare Article 37.071, §2(a) of the Code of    Vol. 1-54
  Criminal Procedure Unconstitutional on its Face Under Due
  Course of Law and Due Process
- Defendant's Motion to Present Written Questionaires to    Vol. 1-62
  Venire
- Motion to Compel Disclosure of State's Jury Selection Data    Vol. 1-67
- Motion to Videotape the Individual Voir Dire    Vol. 1-71
- Request that the Trial Court Allow Counsel to Inform the    Vol. 1-76
  Jury that a Live Sentence, Not a Mistrial, Results from a
  Failure to Unanimously Answer the Special Issues and
  Motion for a Requested Instruction
- Motion to Qualify 42 Venirepersons Before Requiring the    Vol. 1-83
  Exercise of Peremptory Strikes
- Motion to Question Venirepersons Regarding the Burden of    Vol. 1-88
  Proof on the Mitigation Special Issue

JAMES GARFIELD BROADNAX

PAGE  2

F08-24667-Y

========================================================

Defendant's Pretrial Motions (Continued)

- Omnibus Pretrial Motion    Vol. 1-92
- Motion for Discovery in Death Penalty Case    Vol. 1-106
- Motion for the State to Disclose Names and Addresses    Vol. 1-116
  of Persons Offering Testimony Under Texas Rules of
  Evidence 702, 703, 705
- Motion to Discover Criminal Records of Witnesses    Vol. 1-121
- Motion to Discover the Portions of the Defendant's    Vol. 1-125
  Statements that the State Intends to Use at Trial
- Motion to Allow Incarcerated Defendant Access to a    Vol. 1-129
  Hot Meal
- Motion for Discovery of Victim Impact Testimony    Vol. 1-133
- Motion in Limine Regarding Victim Character and Impact    Vol. 1-137
  Evidence
- Motion in Limine Regarding Character Witnesses    Vol. 1-142
- Motion in Limine Regarding Photographs and/or    Vol. 1-146
  Videos
- Defendant's Request for Notice of Extraneous Acts and    Vol. 1-150
  Character Evidence
- Defendant's Application for Probation    Vol. 1-153
- Motion for Discovery, Production and Inspection of    Vol. 1-157
  Evidence
- Motion in Limine Regarding Prior Convictions    Vol. 1-172
- Motion Requesting Notice of State's Intent to Use Prior    Vol. 1-176
  Convictions for Impeachment
- Motion for Hearing on Admissibility of Any Statement by    Vol. 1-180
  Defendant Whether Written or Oral or Evidence Resulting
  From Same
- Motion for Limiting Instructions to the Jury - Extraneous    Vol. 1-186
  Offenses
- Defendant's Motion Regarding Victim Character/Impact    Vol. 1-192
  Testimony After Mosley vs.State
- Motion in Limine Regarding Statements by the Defendant    Vol. 1-197
- Motion to Suppress Statements Made to the Media    Vol. 1-201
- Motion for Discovery Related to DNA    Vol. 1-205
- Motion for Discovery, Production and Rule 702 Hearing    Vol. 1-210
- Motion to Preserve Right to File Additional Motions    Vol. 1-224
- Motion for to Exclude Evidence of Unadjudicated Extraneous    Vol. 1-228
  Offenses During the Punishment Phase

JAMES GARFIELD BROADNAX

F08-24667-Y

PAGE  3

=================================================================

Defendant's Pretrial Motions (Continued)

- Motion in Limine to Preclude Testimony Concerning Violent       Vol. 1-232
Acts Committed by Others in Prison
- Motion to Introduce the Testimony of Defendant's Family        Vol. 1-237
and Friends Regarding Their Feelings on the Prospect of a
Death Sentence and the Impact an Execution Would Have
on Them
- Motion in Limine to Exclude Psychiatric or Psychological       Vol. 1-249
Testimony Concerning Future Dangerousness
- Memorandum of Law in Support of Defendant's Motion            Vol. 1-254
in Limine to Exclude Psychiatric or Psychological Testimony
Concerning Furture Dangerousness
- Motion for Jury Instruction   (Failure of Jurors to Agree on   Vol. 1-281
Answers to Instructions)
- Requested Instruction to the Jury Regarding Residual Doubt     Vol. 1-286
as Mitigation
- Motion to Allow the Defense to Close Arguments on Special      Vol. 1-290
Issue No. 2 or 3 - Mitigation
- Defendant's Proposed Punishment Charge                        Vol. 1-295
Clerk's Certification that Appellate Record is True and          Vol. 1-307
Correct

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

# DEFENDANT'S

# PRETRIAL

# MOTIONS



LAMONICA LITTLES
FILED
2009 APR -2 AM 8: 50
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
DEPUTY

00001

INDEX OF MOTIONS

## *MOTIONS REGARDING THE UNCONSTITUTIONALITY OF ART. 37.071, TEXAS CODE OF CRIMINAL PROCEDURE*

1. MOTION TO DECLARE ARTICLE 37.071 OF THE CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACT FOR LACK OF STANDARDS.

2. MOTION TO PRECLUDE DEATH AS A SENTENCING OPTION AND TO DECLARE TEXAS DEATH PENALTY STATUTE UNCONSTITUTIONAL BECAUSE OF JUROR'S INABILITY TO PREDICT FUTURE DANGEROUSNESS.

3. MOTION TO PRECLUDE THE PROSECUTION FROM SEEKING THE DEATH PENALTY.

4. MOTION TO QUASH BASED ON UNCONSTITUTIONALITY OF TEXAS CAPITAL SENTENCING SCHEME.

5. MOTION TO DECLARE JURY SELECTION PROCEDURE UNCONSTITUTIONAL.

6. MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION (DENIAL OF EQUAL PROTECTION).

7. MOTION TO DECLARE ARTICLE 37.071 UNCONSTITUTIONAL ON ITS FACE UNDER DUE COURSE OF LAW AND DUE PROCESS.

## *MOTIONS REGARDING JURY SELECTION*

8. DEFENDANT'S MOTION TO PRESENT WRITTEN QUESTIONNAIRES TO VENIRE.

9. MOTION TO COMPEL DISCLOSURE OF STATE'S JURY SELECTION DATA.

2

10. MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE.

11. REQUEST THAT THE TRIAL COURT ALLOW COUNSEL TO INFORM THE JURY THAT A LIFE SENTENCE, NOT A MISTRIAL, RESULTS FROM A FAILURE TO UNANIMOUSLY ANSWER THE SPECIAL ISSUES AND MOTION FOR A REQUESTED INSTRUCTION.

12. MOTION TO QUALIFY 42 VENIREPERSONS BEFORE REQUIRING THE EXERCISE OF PEREMPTORY STRIKES.

13. MOTION TO QUESTION VENIREPERSONS REGARDING THE BURDEN OF PROOF ON THE MITIGATION SPECIAL ISSUE.

## *MOTIONS RELEVANT TO TRIAL MATTERS*

14. OMNIBUS PRETRIAL MOTION.

15. MOTION FOR DISCOVERY IN A DEATH PENALTY CASE. 24 July 0830

16. MOTION FOR THE STATE TO DISCLOSE NAMES AND ADDRESSES OF PERSONS OFFERING TESTIMONY UNDER TEXAS RULES OF EVIDENCE 702, 703, 705.

17. MOTION TO DISCOVER CRIMINAL RECORDS OF WITNESSES. ✓

18. MOTION TO DISCOVER THE PORTIONS OF THE DEFENDANT'S 23 July STATEMENTS THAT THE STATE INTENDS TO USE AT TRIAL.

19. MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS TO A HOT MEAL.

20. MOTION FOR DISCOVERY OF VICTIM IMPACT TESTIMONY. ✓

21. MOTION IN LIMINE REGARDING VICTIM CHARACTER AND IMPACT EVIDENCE.

22. MOTION IN LIMINE REGARDING CHARACTER WITNESSES.

3

23. MOTION IN LIMINE REGARDING PHOTOGRAPHS A/OR VIDEOS.

24. DEFENDANT'S REQUEST FOR NOTICE OF EXTRANEOUS ACTS AND CHARACTER EVIDENCE.

25. DEFENDANT'S APPLICATION FOR PROBATION.

26. MOTION FOR DISCOVERY, PRODUCTION AND INSPECTION OF EVIDENCE.

27. MOTION IN LIMINE REGARDING PRIOR CONVICTIONS.

28. MOTION REQUESTING NOTICE OF STATE'S INTENT TO USE PRIOR CONVICTIONS FOR IMPEACHMENT.

29. MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BE DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME.

30. MOTION FOR LIMITING INSTRUCTIONS TO THE JURY - EXTRANEOUS OFFENSES.

31. DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER MOSLEY V. STATE.

32. MOTION IN LIMINE REGARDING STATEMENTS BY THE DEFENDANT.

33. MOTION TO SUPPRESS STATEMENTS MADE TO THE MEDIA.

34. MOTION FOR DISCOVERY RELATED TO DNA.

35. MOTION FOR DISCOVERY, PRODUCTION AND RULE 702 HEARING.

36. MOTION TO PRESERVE RIGHT TO FILE ADDITIONAL MOTIONS.

4

## *MOTIONS RELEVANT TO A PUNISHMENT PHASE.*

37.   MOTION TO EXCLUDE EVIDENCE OF UNADJUDICATED EXTRANEOUS OFFENSES DURING THE PUNISHMENT PHASE.

38.   MOTION IN LIMINE TO PRECLUDE TESTIMONY CONCERNING VIOLENT ACTS COMMITTED BY OTHERS IN PRISON.   *?*

39.   MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM.   *?*

40.   MOTION IN LIMINE TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS.   *Denied*

     AND MEMORANDUM IN SUPPORT OF THE MOTION.

## *MOTIONS REQUESTING SPECIFIC JURY INSTRUCTIONS*

41.   MOTION FOR JURY INSTRUCTION (FAILURE OF JURORS TO AGREE ON ANSWERS TO INSTRUCTIONS).

42.   REQUESTED INSTRUCTION TO THE JURY REGARDING RESIDUAL DOUBT AS MITIGATION.

42.   MOTION TO ALLOW THE DEFENSE TO CLOSE ARGUMENTS ON SPECIAL ISSUE NO. 2 OR 3 REGARDING MITIGATION.

43.   DEFENDANT'S REQUESTED JURY INSTRUCTIONS. IN PUNISHMENT CHARGE.

5

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO DECLARE
## ARTICLE 37.071, §2(a) OF THE CODE OF CRIMINAL PROCEDURE
## UNCONSTITUTIONAL ON ITS FACE
## FOR LACK OF STANDARDS

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, the Defendant in the above entitled and numbered cause, and pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, moves the Court as follows:

I.

Article I, §13 of the Texas Constitution forbids the cruel or unusual punishment of Texans. *See, e.g., Francis v. State*, 877 S.W.2d 441 (Tex.App. — Austin, 1994, *pet. ref'd*). Because Article 37.07(1), §2(a) gives no guidance whatsoever to the admissibility of evidence, sentences imposed under this statute are "cruel and unusual in the same way that being struck by lightning is cruel and unusual." *Furman v. Georgia*, 408 U.S. 238, 309 (1972)(Stewart, J., concurring). The Defendant's sentence will be determined on an unconstitutionally unreliable basis.

6

> The exact scope of the constitutional phrase "cruel and unusual" has not been detailed by this Court. . . . The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. ***While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized <u>standards</u>***. . . . [T]he words of the Amendment are not precise, and . . . their scope not static. The Amendment must draw its meaning from the ***evolving standards*** of decency that mark the progress of a maturing society.

*Trop v. Dulles*, 356 U.S. 86, 99-101 (1958)(emphasis added).  Eighth Amendment jurisprudence, then, requires that punishment be assessed within the limits of "civilized standards." Because there is no standard at all under Article 37.071, §2(a) it is violative of Article I, §13 of the Texas Constitution and the Eighth and Fourteenth Amendments to the United States Constitution.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion* has been personally delivered to the Dallas County District Attorney's Office on this the ___2___ day of April, 2009.

_____
Attorney for the Defendant

8

9

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.


_____

JUDGE PRESIDING

10

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO PRECLUDE DEATH AS A SENTENCING OPTION AND TO DECLARE TEXAS DEATH PENALTY STATUTE UNCONSTITUTIONAL, BECAUSE OF JUROR'S INABILITY TO PREDICT FUTURE DANGEROUSNESS

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Declare the Texas Death Penalty Statute to be Unconstitutional and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Tex. C. Crim. P. Art. 37.071(2)(b)(1) requires a jury during the penalty phase of a capital trial to answer the following question:

> "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"

4. The ability to accurately predict whether or not a person would commit criminal acts

11

of violence is not within the ability of the lay people on the jury. The probability that a person will commit future violence is not a prediction that even the psychiatric community can make, particularly in the long run. The unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession. *American Psychiatric Association Task Force on Clinical Aspects of the Violent Individual*, "Clinical Aspects of the Violent Individual" (1974) and *Amicus Brief of the American Psychiatric Association (APA) in Barefoot v. Estelle*, (1983). The APA, in its brief, said that the primary finding of the task force was that judgments concerning the long-run potential for future violence and the dangerousness of a given individual are "fundamentally of very low reliability," adding that the state of the art regarding predictions of violence is very unsatisfactory.

5. The unreliability of long term predictions of future dangerousness is acknowledged even today by those who take the position that there is some ability to predict dangerousness. "Using modern assessment tools, however, there is a growing body of data to suggest that psychiatrists can, in fact, predict violence more accurately than many believe–**at least in the short term**. Ken Hausman, "Predicting Violence Risk Possible but Complex" *Psychiatric News*, Vol 36, Number 13 (2001). These predictions of violence, even if more accurate than in the past, come in a civil setting where a determination is made about possible civil commitment, not in the context of a capital murder case where the issue is whether someone is going to live or die, and not simply whether to suspend or limit their civil liberties for a short period of time.

> "Despite the pervasiveness of violence risk assessment in mental health law, research continues to indicate that the unaided abilities of mental health professionals to perform this task are modest at best". *MacArthur Research Network on Mental Health and the*

12

*Law,* "Executive Summary," at 1. ( April, 2001).

6. The consideration for the jury must necessarily be a long-term consideration, as a defendant who is given a life sentence will not be eligible for parole for 40 calendar years. The ability to make such long-term predictions is rendered more unreliable by the propensity of a person to commit violence to "age out" as he grows older. *See Sorensen, Jonathan R. and Rocky L. Pilgrim,* Criminology: AnActuarial Risk Assesment of Violence Posed by Capital Murder Defendants, *Journal of Law and Criminology,* 90 J. Crim. L. & Criminology, 1251, 1255 (2000).

7. The State will often make the argument that the Defendant is a "future danger" to prison society because he has an anti-social personality. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)states: at page 648:

> Anti-social Personality Disorder has a chronic course but may become less evident or remit as the individual grows older, particularly by the fourth decade of life. Although this remission tends to be particularly evident with respect to engaging in criminal behavior, there is likely to be a decrease in the full spectrum of antisocial behaviors and substance abuse. (DSM-IV) at 648.

8. The jurors are not instructed to consider either the unreliability of long-term predictions nor the "aging-out" effect noted by the DSM-IV. This makes the application of the Texas Death Penalty statute both arbitrary and capricious. It further denies this Defendant a fair trial and due process of law.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that:

1. Art. 37.071 be found to be unconstitutional and the death penalty be precluded as a sentencing option for the jury that is sworn to decide this case;

**13**

2. In the alternative, that the jury that is empaneled to decide this case be instructed as to the unreliability of long term predictions of future dangerousness; and

3. The jury be instructed that as a person ages, their propensity to commit violent acts remits, particularly in the 4th decade of life; and

4. That the Defendant has such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ⎯ day of _April_ , 2002.

Attorney for the Defendant

15

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

16

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO PRECLUDE THE PROSECUTION FROM SEEKING THE DEATH PENALTY

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, Defendant, by and through his attorney of record, and files this Motion to Preclude Prosecution from Seeking the Death Penalty, and as grounds therefore would show this Honorable Court as follows:

A.    Background.

In view of the many different capital sentencing schemes that have been in operation in Texas in the post-*Furman* era,[1] the Texas death penalty has been arbitrarily imposed and, thus, is unconstitutional under the Eighth and Fourteenth Amendments. In order to understand the basis of this claim, this Court must recognize the large number of discrete capital sentencing schemes that

---

[1]    *See Furman v. Georgia*, 408 U.S. 238 (1972).

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 1

17

have been in operation in Texas capital cases since the early 1970's, when the modern death penalty statutes were enacted in the wake of the Supreme Court's decision in *Furman*.[2] At a capital murder trial in 2001, a capital defendant's sentencing jury will be instructed pursuant to TEX. CODE CRIM. PROC. art. 37.071 (Vernon Supp. 2001). As discussed below, this is one of many different capital sentencing schemes in operation in Texas since 1973.

Of the many hundreds of persons sentenced to death in Texas since the "modern" capital sentencing statute was enacted,[3] the vast majority were sentenced under jury instructions that simply tracked the unadorned "special issues" contained in the original version TEX. CODE CRIM. PROC. art. 37.071(b) (Vernon 1989). *See generally* P.M. McClung, JURY CHARGES FOR TEXAS CRIMINAL PRACTICE 75-78 (rev. ed. 1981). After the landmark decision in *Penry v. Lynaugh*, 492 U.S. 302 (1989), however, the consistency in Texas capital sentencing instructions quickly disappeared, both as a result of legislative action and unsupervised judicial improvising by trial courts. *See generally* Peggy M. Tobolowsky, *What Hath Penry Wrought?: Mitigating Circumstances and the Texas Death Penalty*, 19 AMER. J. CRIM. L. 345 (1992). In 1991, the Texas

---

[2]    *See* Michael Kuhn, *House Bill 200: The Legislative Attempt to Reinstate Capital Punishment in Texas*, 11 HOUS. L. REV. 410, 416-23 (1974); *see also* David Crump, *Capital Murder: The Issues in Texas*, 14 HOUSTON L. REV. 531, 532-33 & nn.7-8 (1977); Stephen W. MacNoll, Note, *A Constitutional Analysis of the Texas Death Statute*, 15 AM. J. CRIM. L. 69, 79-80 (1988).

[3]Defendant is aware of no source that collects all of the capital trials that have occurred in Texas since the post-*Furman* statute was enacted. As of November 8, 2001, 253 defendants have been executed in Texas since *Furman*. *See Texas Department of Criminal Justice - Executed Offenders, at* http://www/tdcj.state.tx.us/stat/executedoffenders.htm (last updated october 22, 2001); Sean Fitgerald, *Walking a Constitutional Tightrope: Discretion, Guidance, and the Texas Capital Sentencing Scheme*, 28 HOUS. L. REV. 663, 665 n.12 (1991); see also NAACP Legal Defense Fund, *Death Row U.S.A. Reporter, 1976-93* (Texas' death row has grown by approximately 20-50 inmates per year since 1973).

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 2

18

Legislature enacted an amended, post-*Penry* version of Article 37.071, which modified the "special issue" format. This statute applies to all crimes committed on or after September 1, 1991; under the 1991 version of the statute, the old version of Article 37.071 applied to all crimes committed before September 1, 1991. TEX. CODE CRIM. PROC. art. 37.071(2)(i) (Vernon Supp. 2001). Again in 1993, the Texas Legislature enacted yet another amended version of Article 37.071. That statute, which became effective September 1, 1993, amended the "special issue" format applicable to all crimes committed before September 1, 1991. TEX. CODE CRIM. PROC. Art. 37.071(1) (Vernon Supp. 2001)).

Roughly speaking, the various types of Texas capital sentencing instructions in the post-*Furman* era can be broken down into seven different categories, although at least two categories contain sub-sets:

    (i)    The unadorned "special issues" in the pre-1991 version of Article 37.071. That statute was in effect for all capital murder trials from January 1, 1974 until the date on which *Penry* was decided on June 26, 1989. For capital murders committed before September 1, 1991, it also was in effect for many cases tried from June 26, 1989 until August 30, 1993, when Art. 37.071 was amended (discussed *supra*).[4]

---

[4]    That statute, in pertinent part, reads as follows:

    (b)    On conclusion of the presentation of the evidence, [at the sentencing phase of a capital murder trial] the court shall submit the following three issues to the jury:

        (1)    whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

        (2)    whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

        (3)    if raised by the evidence, whether the conduct of the defendant in killing

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 3

**19**

(ii)    The 1991 amended version of the statute. This version of the sentencing instructions has been applied in all capital murder trials for murders committed on or after September 1, 1991. This version of the statute is applicable to Defendant's case.[5]

---

the deceased was unreasonable in response to the provocation, if any, by the deceased.

. . . .

(e)    If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. . . . .

There have been countless trials at which such instructions were submitted, both before and after *Penry*. *See, e.g., Stewart v. State*, 686 S.W.2d 118, 121-124 (Tex. Crim. App. 1984); *see also State v. McPherson*, 851 S.W.2d 846, 849 & n. 8 (Tex. Crim. App. 1992).

[5]    Simply put, that amended statute eliminated the "deliberateness" and "provocation" special issues and added two new special issues, one of which was directly in response to *Penry*.

The first new special issue asked:

[I]n cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

TEX. CODE CRIM. PROC. art. 37.071(b)(2).

The new "*Penry* issue" asks:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

*See id.* art. 37.071(e)(1).

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 4

**20**

(iii)    The pre-1991 statute with an extra-statutory "*Quinones*"-type instruction.[6] This version of the sentencing instructions was applied at a number of Texas capital murder trials both before and after *Penry* was decided. There have been several versions of this extra-statutory charge, each containing material differences.[7]

(iv)    The pre-1991 statute with an extra-statutory "*Penry*"-type "fourth special issue."[8] This version of the sentencing instructions has been applied to certain trials after *Penry* for a capital murder committed before September 1, 1991.

---

[6]    In *Quinones v. State*, the Court of Criminal Appeals held that it was not error for the trial court to have refused to submit the following extra-statutory instruction to the capital defendant's sentencing jury:

"Evidence presented in mitigation of the penalty may be considered should the jury desire, in determining the answer to any of the special issues."

592 S.W.2d 933, 947 (Tex. Crim. App. 1980).

[7]    See *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993); *Fuller (Tyrone) v. State*, 827 S.W.2d 919, 936-37 (Tex. Crim. App. 1992); *Rios v. State*, 846 S.W.2d 310, 315-16 (Tex. Crim. App. 1992); *Boggess v. State*, 855 S.W.2d 645, 647 (Tex. Crim. App. 1991). [The author's original footnote compared these cases with the instruction given in his case. Attorneys may wish to consider this tactic.]

[8]    See, e.g., *State v. McPherson*, 851 S.W.2d at 847-50.

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 5

21

(v)    The pre-1991 statute with a "nullification" instruction.[9] This version of the sentencing instructions has been applied at a large number of trials after *Penry* for capital murders committed before September 1, 1991. There have been several different versions of this extra-statutory instruction, each containing material differences.[10]

(vi)    The pre-1991 statute in which "deliberately" is broadly defined.[11] This version of the sentencing instructions has been applied in certain trials since *Penry* was decided for capital murders committed before September 1, 1991.

(vii)    The 1993 version of the statute as applied to all crimes committed on or before August 30, 1991.[12] This version of the statute will apply to any trial or re-trial that commences after August 29, 1993, for capital murders committed on or before August 30, 1991.

---

[9]    *See, e.g., San Miguel v. State*, 864 S.W.2d 493, 495(Tex. Crim. App. 1993); *Fuller (Aaron) v. State*, 829 S.W.2d 191, 209 n. 5 (Tex. Crim. App. 1992). The prototypical "nullification" instruction is found in *Fuller*, and reads as follows:

> When you deliberate about the questions posed in the Special Issues, you are to consider any mitigating circumstances supported by the evidence presented in both phases of the trial. A mitigating circumstance may be any aspect of the defendant's character and record or circumstances of the crime which you believe makes a sentence of death inappropriate in this case. If you find there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the Special Issues. If you determine, in consideration of this evidence, that a life sentence, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, you are instructed to answer at least one of the Special Issues under consideration "No."

*Fuller*, 829 S.W.2d at 209 n.5.

[11]    *See, e.g., Martinez v. State*, 867 S.W.2d 30 (Tex.Crim.App. 1993).

[12]    TEX. CODE CRIM. PROC. art. 37.0711. This version of the statute contains all three of the "old" special issues. *Id.* (b)(1)-(b)(3). It further provides that, if the jury returns affirmative answers to all three special issues, then the trial court should further submit to jurors the new, *Penry*-type special issue enacted in the 1991 amendment. *Id.* (e). This version of the statute instructs jurors that "[i]f a defendant is convicted of an offense under Section 19.03(a)(7), Penal Code, the court shall submit the [special] issues . . . only with regard to the conduct of the defendant in murdering the deceased individual first named in the indictment." *Id.* (h).

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 6

22

Note that the above categories of cases reveal three significant contradictions in the Court of Criminal Court's capital sentencing jurisprudence during the last two decades: First, there is the contradiction between *Quinones v. State, supra*, and its progeny and the many recent cases in which the Court has given its imprimatur to the very instruction rejected in *Quinones. See, e.g., Fuller (Tyrone) v. State*, 827 S.W.2d at 936-37. Second, there is the contradiction between *Stewart v. State*, 686 118, 121-24 (Tex. Crim. App. 1980), where the court held that the previous version of article 37.071 did not violate the constitution by failing to contain provisions concerning mitigation evidence, and at least one case in which the Court has given its imprimatur to an extra-statutory charge specifically permitting jurors to consider specific mitigating evidence. *See McPherson v. State*, 851 S.W.2d at 847-50. Also relevant in this regard are the many recent cases in which the Court of Criminal Appeals has given its stamp of approval to "nullification" instructions. *See, e.g., Fuller (Aaron) v. State*, 829 S.W.2d at 209. Finally, there is the contradiction between the Court's consistent refusal to require trial courts to define "deliberately" as used in the first special issue, *see, e.g., Russell v. State*, 665 S.W.2d 771, 779-80 (Tex. Crim. App. 1983), and the Court's imprimatur of a trial judge's extra-statutory definition of the term in *Martinez v. State*, 867 S.W.2d at 37.

B.    Argument.

In numerous cases, the United States Supreme Court has stated, in keeping with our Nation's federalism, that "we are unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." *Spaziano v. Florida*, 468 U.S. 447, 464 (1984) (citations omitted). The Court has stated, however, that *within* a single state, there must be consistency in the treatment of capital defendants who are subject to the death penalty. *Id.* at 460 (stating, "[i]f a State has

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 7

determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not.") (citations omitted). Thus, "'each distinct [state] system must be examined on an individual basis.'" *See Pulley v. Harris*, 465 U.S. 37, 45 (1984) (quoting *Gregg v. Georgia*, 428 U.S. 153, 195 (1976).

In *Furman v. Georgia*, 408 U.S. 238 (1972), the chief constitutional infirmity that the controlling Members of the Court pointed to in their respective concurring opinions was *arbitrariness. Id.* at 274 (Brennan, J., concurring) (stating, "[i]n determining whether a punishment comports with human dignity, we are aided . . . by . . . a second principle inherent in [the Eighth Amendment Cruel and Unusual Punishments] Clause -- that the State must not arbitrarily inflict a severe punishment."); *id.* at 309 (Stewart, J., concurring) (stating, "[t]hese death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual."); *see also Spaziano*, 468 U.S. at 460.

The above discussion of the various sentencing schemes concurrently[13] in operation in Texas, "a distinct system," *Gregg*, 428 U.S. at 195, amply demonstrate that the present Texas death penalty system is being implemented in an "arbitrary" manner. At least seven categories of similarly situated capital defendants have been treated disparately. Put another way, it is certainly conceivable that, *ceteris paribus*, a single hypothetical Texas capital defendant would be given a

---

[13]   Although since August 29, 1993, all trials have been tried under either art. 37.071 or art. 37.0711, the pre-1991 version of Art. 37.071 was still in operation in many cases up until August 30, 1993.

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 8

24

different sentence[14] depending on which of the seven different sentencing schemes was in operation at his trial. This is quintessential arbitrariness -- the very type condemned in *Furman*.

Defendant recognizes that the Texas Legislature was certainly justified in amending Art. 37.071(b) as it did in 1991; indeed, *Penry* certainly appeared to require such. *See* Shelley Clarke, Note, *A Reasoned Moral Response: Rethinking Texas' Capital Sentencing Statute After Penry v. Lynaugh*, 69 TEX. L. REV. 407, 411-14 (1990). If that were the only other scheme concurrently in operation with the pre-1991 version of Art. 37.071, in all likelihood Defendant would never have made this claim. But that is not what happened in the wake of *Penry*.

Rather, numerous trial courts throughout this state and the Texas Legislature have haphazardly created, in addition to the prevailing pre-1991 capital sentencing scheme, a total of at least six new, distinct capital sentencing schemes that have governed similarly or identically situated Texas capital defendants. Particularly noteworthy is the Court of Criminal Appeals' failure to impose uniformity among the practices adopted by the trial courts. Nor is the Legislature free from its share of the blame. By waiting until August 30, 1993, to amend Art. 37.071 as it applies to trials or retrials of capital defendants who committed their crimes before September 1, 1991, the Legislature has sowed the seeds of arbitrariness and inconsistency. Under both identical and analogous circumstances, other States have not dealt with seemingly sweeping invalidations of their post-*Furman* death penalty statutes in such a chaotic manner. *See, e.g.,* OREGON REVISED STATUTES, § 163.150 (1999); *State v. Wagner*, 786 P.2d 93, 99-100 (Ore. 1990); *cf.* OHIO REVISED

---

[14]    Of course, in a Texas capital case, where a defendant has been found guilty of capital murder, the only sentencing options are a life sentence and a death sentence.

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 9

25

CODE §§ 2929.02-06 (1997 and Supp. 2001); *State v. Melchior*, 381 N.E.2d 195, 200 (Ohio 1978); David J. Benson, *Constitutionality of Ohio's New Death Penalty Statute*, 14 TOL. L. REV. 77 (1982) **[cannot locate the Benson article to verify]**.

*Fetterly v. Paskett*, presents an analogous situation to the instant case. In that case, the Ninth Circuit condemned an instance of "*Furman* arbitrariness" within a single state's capital sentencing system. 997 F.2d 1295 (9th. Cir. 1993). In particular, the court in dicta stated that a federal constitutional violation occurred when the Idaho Supreme Court refused to apply the clear mandate of state capital sentencing law, which governed the weighing of aggravating factors against mitigating factors, to all similarly situated capital defendants. *Id.* at 1299. The court's reasoning is cogent and should be applied to Texas' experience:

> In *Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court held that states can impose the death penalty for certain crimes without running afoul of our Constitutional prohibition against cruel and unusual punishment, but only if the manner in which the penalty is selected "provide[s] a meaningful basis for *distinguishing* the few cases in which [the penalty] imposed from the many cases in which it is not." *Id.* at 427 . As pointed out by Justice Stevens, "this Court's decisions have made clear that States may impose this ultimate sentence *only if they follow procedures* that are designed to assure reliability in sentencing determinations." *Barclay v. Florida*, 463 U.S. 939, 958-59, 103 S.Ct. 3418, 3429, 77 L.Ed. 1134 (1983) (Stevens, J., concurring) (emphasis added). Part of the requirement of reliability is "'that the [aggravating and mitigating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case.'" *Id.* at 954 (quoting *Proffitt v. Florida*, 428 U.S. 242, 251, 96 S. Ct. 2960, 2966, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)) (internal quotations omitted).
>
> . . . .

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 10

26

> Because Fetterly may not have been sentenced to death as prescribed by Idaho Code § 19-2515(c), this goal of similar sentences in similar cases may not have been met.

*Id.*

Although Texas' experience is different in that it involves a global violation of all Texas capital defendants' rights to be free from arbitrary, inconsistent capital sentencing procedures, while Idaho apparently only violated one or a few defendants' rights, *Fetterly*'s reasoning applies equally to Texas. The bottom line is that Texas courts and the state Legislature, without any discernible rational basis, have haphazardly turned Texas' capital sentencing scheme into a patch-work quilt. Because similarly situated Texas capital defendants -- including this Defendant -- have been unjustifiably sentenced to death under radically different sentencing schemes, this Court must vacate Defendant's death sentence.[15]

---

[15] Defendant adopts all of the arguments made *supra* with respect to a state constitutional claim. Although Defendant has primarily cited federal Eighth Amendment authority herein, he intends that this Court should separately consider his claim under the Texas and U.S. Constitutions. As the Court of Criminal Appeals has noted, it can and should interpret the Texas Constitution in a more expansive manner than the federal Constitution. *Heitman v. State*, 815 S.W.2d 681, 688-89 (Tex. Crim. App. 1991); *Ex Parte Hererra*, 860 S.W.2d 106, 106-07 (Tex. Crim. App. 1993) (Maloney, J., dissenting); *see also* Judge Rusty Duncan, *Terminating the Guardianship: A New Role for State Court*, 19 ST. MARY'S L.J. 809, 822 (1988).

Particularly noteworthy is the fact the Texas Constitution proscribes "cruel *or* unusual punishments," while the U.S. Constitution proscribes "cruel *and* unusual punishments." Texas Const. Art. I, § 13. Obviously, despite apparent implicit claims to the contrary by courts and commentators, the Texas Constitution, based on its plain language, was intended offer broader protections than the U.S. Constitution. *Cf. People v. Anderson*, 493 P.2d 880, 883-87 (Cal. 1972), *overruled by statute* (attributing textual significance to state constitutional proscription against "cruel *or* unusual punishments"). Because Defendant's primary argument here is that the many sentencing schemes operating concurrently inject arbitrariness into the Texas capital sentencing scheme, at the very least Defendant's death sentence is "unusual."

MOTION TO PRECLUDE PROSECUTION
<u>FROM SEEKING THE DEATH PENALTY</u>, Page 11

27

## CONCLUSION

In conclusion, this Court should hold that the State of Texas cannot constitutionally seek the death penalty against Defendant.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 12

28

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was hand delivered on the

Dallas District Attorney's office on this the ⟶2⟵ day of April, 2009.

_____

**Attorney for the Defendant**

MOTION TO PRECLUDE PROSECUTION
FROM SEEKING THE DEATH PENALTY, Page 14

CAUSE NO. F08-24629–FY
CAUSE NO. F08-24667–FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

30

CAUSE NO. F0 8-24629-FY
CAUSE NO. F0 8-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO QUASH BASED ON UNCONSTITUTIONALITY OF TEXAS CAPITAL SENTENCING SCHEME

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion to Quash Based on Unconstitutionality of Texas Capital Sentencing Scheme, and in support of said motion would show:

I.

A. The Texas death penalty scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because a death sentence imposed under article 37.071 is not subject to meaningful appellate review. A death penalty statute which is not subject to meaningful appellate review is unconstitutional. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909 (1976).

The Texas Court of Criminal Appeals has expressly held that the so-called "mitigation" issue is not legally or logically subject to sufficiency review on appeal. E.g., Colella v. State, 915 S.W.2d 834 (Tex. Crim. App. 1995); Lawton v. State, 913 S.W.2d 542 (Tex. Crim. App. 1995); Broussard v. State, 910 S.W.2d 952 (Tex. Crim. App. 1995). Because the mitigation issue contained in Article 37.071§2(e) is open-ended and unstructured --i.e., not enumerating a list of mitigating and aggravating factors and not

31

requiring jurors to make specific "findings" in this regard--the Court of Criminal Appeals has no way to know which aggravating and mitigating factors that jurors considered. Thus, the appellate court has no way to know how, and indeed whether, the jury considered all of the constitutionally relevant mitigating evidence offered at trial. In this way, meaningful appellate review is impossible.

And recent court decisions indicate that even the first special issue under article 37.071§2(b)(1) has become incapable of meaningful review on appeal. See Martinez v. State, 924 S.W.2d 695 (Tex. Crim. App. 1996) (Baird & Maloney, J.J., dissenting).

The second special issue, the so-called "anti-parties" instruction is legally meaningless in Texas. Every person who has been found guilty of intentionally or knowingly causing the death of an individual in the first phase of the trial will necessarily meet the requirements for an affirmative answer to the second special issue. See Lawton v. State, 913 S.W.2d 542 (Tex. Crim. App. 1995).

B. Meaningful appellate review of a death penalty verdict is also required under Article I, §§ 3, 3a, 10, 13, and 19 of the Texas Constitution and Article 44.251 of the Texas Code of Criminal Procedure.

II.

A. The statutory "mitigation" special issue is unconstitutional because it fails to place the burden of proof on the state regarding aggravating evidence. The Supreme Court has held that the Eighth Amendment requires the State to prove the existence of aggravating factors during the capital punishment phase. See, e.g., Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 3055 (1990) ("State's method of allocating burdens of proof [during capital sentencing phase cannot] lessen the State's burden... to prove the existence of aggravating circumstances"). In order to understand why Walton applies to the statutory "mitigation" special issue, the Court must recognize that this special issue is a conduit for aggravating (as well as mitigating) factors. By asking jurors to determine whether there are "sufficient ... mitigating circumstances," the statutory special issue in effect tells jurors to consider any possible aggravating factors that may outweigh the mitigating factors present in the case. Although the statute does not explicitly use the term "aggravating circumstance," clearly that is how a reasonable juror would interpret the

32

statute. Cf. Johnson v. Texas, 509 U.S. 350, 113 S.Ct. 2658 (1993) (describing jurors' determination of answer to "future dangerousness" special issue to require balancing of aggravating and mitigating circumstances). Because the statute is silent about whether the state or the defense has the burden of proof on aggravating factors, and moreover, because the language of the special issue implies that the burden to disprove aggravating circumstances is on the defense, the statute is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution.

B. This failure of the statute to allocate to the state the burden of proof beyond a reasonable doubt concerning mitigation evidence also violates Article I, §§ 3, 3a, 10, 13 and 19 of the Texas Constitution. Under the "due course of law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law. McFarlane v. State, 254 S.W.2d 136, 137 (Tex. Crim. App. 1953). When the burden of proof is shifted to the defendant, the state's burden has essentially been reduced. See e.g., Corbarrubio v. State, 675 S.W.2d 749 (Tex. Crim. App. 1983) overruled in part, Lawrence v. State, 700 S.W.2d 208 (Tex. Crim. App. 1985), and Elliot v. State, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

### III.

The statutory "mitigation" special issue is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because it permits the very type of open-ended discretion condemned by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726 (1972). In Furman, in which the Supreme Court struck down capital punishment as it then was being administered, the chief constitutional infirmity that the controlling members of the Court pointed to in their respective concurring opinions was arbitrariness. In particular, the Court condemned the open-ended, unstructured discretion that was given to capital sentencing juries. See also, Gregg v. Gerogia, 428 U.S. 153, 96 S.Ct. 2909 (1976); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154 (1984).

In the years following the Supreme Court's decision in Penry v. Lynaugh, 109

33

S.Ct.2934 (1989), the Texas Legislature enacted a new capital sentencing scheme that sought to cure the constitutional defect in the former capital sentencing scheme identified by the Court in Penry. The new statutory "Penry" special issue contained in Article 37.071 of the Texas Code of Criminal Procedure, provides as follows:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Five members of the modern Supreme Court have, directly or indirectly, condemned an open-ended, unstructured capital sentencing instruction--such as Texas' statutory "Penry" special issue--as violative of the Eighth and Fourteenth Amendments to the United States Constitution. See Penry v. Lynaugh, 492 U.S. 302, 360, 109 S.Ct. 2934, 2969 (1989) (Scalia, J. dissenting, joined by Rehnquist, C.J., White, J. & Kennedy, J.) ("In holding that the jury had to be free to deem Penry's mental retardation and sad childhood relevant for whatever propose it wished, the Court has come full circle, not only permitting but requiring what Furman once condemned."); Graham v. Collins, 506 U.S. 461, 496, 113 S.Ct. 892, 903-15 (1993) (Thomas, J. concurring) ("Penry reintroduces the very risks that we had sought to eliminate through the simple directive that States in all events provide rational standards for capital sentencing."). In dicta, Justice Thomas has explicitly suggested that the type of sentencing scheme in operation at defendant's trial violates Furman. See Graham, 506 U.S. at 495 n.9, 113 S.Ct. at 913 n.9 (discussing the present Texas capital sentencing statute).

## IV.

A. The Texas capital sentencing statute's definition of "mitigating evidence" is unconstitutional because it limits the Eighth Amendment concept of "mitigation" to factors that render a capital defendant less morally "blameworthy" for commission of the capital murder. The present Texas capital sentencing statute defines "mitigating evidence" as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." Tex. Code Crim. Proc. Ann. arts. 37.071 §2(c)(4) & 37.0711 §3(f)(3) (Vernon 1994). This definition of "mitigating evidence" is unconstitutionally narrow. The

34

Supreme Court has held that constitutionally relevant mitigating evidence is not simply that type of mitigating evidence that relates to a capital defendant's moral culpability or blameworthiness for the crime, but also includes any mitigating evidence relevant to a defendant's character, history, or circumstances of the crime that militates in favor of a life sentence. See e.g., Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669 (1986). Numerous types of constitutionally relevant mitigating evidence thus have nothing to do with a capital defendant's moral culpability or blameworthiness -- such as a history of positive character traits, kindness shown toward children, or artistic talent. Although the statutory "Penry" special issue speaks of "the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant," the statute's separate definition of "mitigating evidence" limits jurors' consideration of such evidence to those mitigating factors that specifically implicate the defendant's moral blameworthiness. Therefore, the statute's limited definition of "mitigating evidence" violates the Eighth and Fourteenth Amendments to the United States Constitution.

B. The Texas capital sentencing statute, which limits the jury to consideration of the special issues, does not permit the jury to consider and give effect to all the mitigating circumstances which exist concerning defendant, in violation of Article I, §§ 10, 13 and 19 of the Texas Constitution.


## V.

The "mitigation" special issue is unconstitutional because it fails to require that mitigation be considered. A juror is required to consider all mitigation. After the juror has considered the mitigation, it is then up to the juror to determine what effect to give the mitigation. Capital murder statutes that have survived constitutional scrutiny all require that the jury be told that it must consider all mitigating evidence. E.g., Johnson v. Texas, 509 U.S. 350, 113 S.Ct. 2658 (1993); Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190 (1990); Blystone v. Pennsylvania, 494 U.S. 299, 110 S.Ct. 1078(1990). Failure to mandate consideration of mitigating evidence makes this statute unconstitutional in violation of the Eighth Amendment.

35

## VI.

The Texas capital punishment scheme unconstitutionally chills defendant's ability to present relevant mitigating evidence to the jury, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I §§ 10, 13, and 19 of the Texas Constitution.

## VII.

The unconstitutional chilling effect described in paragraph VI above denies defendant the effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I §10 of the Texas Constitution.

## VIII.

The Texas death penalty scheme gives prosecutors unfettered discretion in deciding whether to seek the death penalty in any particular case in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 13 and 19 of the Texas Constitution.

## IX.

Article 37.071 of the Texas Code of Criminal Procedure mandates that the "jury should return a special verdict of 'yes' or 'no' on each issue submitted." It further requires the court to instruct the jury that it may not answer "yes" unless it agrees unanimously, and that it may not answer "no" unless 10 or more jurors agree. The article mandates a life sentence if the jury is unable to agree on a special verdict. And the article provides that nobody inform jurors that a failure to agree on a special issue will result in a life sentence. These provisions considered together violate the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution for the following reasons:

1. Informing a juror that he shall answer the questions "yes" or "no" might reasonably cause this juror to shift his position to satisfy the requirements of the "10-12" rule.

2. The statutory prohibition against informing jurors of the impact of his individual vote relieves him of psychological responsibility for the jury's collective

36

decision to impose death as punishment.

3. The statutory prohibition fails to provide the jury with accurate information concerning the sentencing process in Texas. See State v. Williams, 392 So.2d 619, 633 (La. 1980)(on rehearing); State v. Ramseur, 524 A.2d 188, 284 (N.J. 1987); Kubat v. Thieret, 867 F.2d 351, 369-73 (7th Cir.), cert. denied, 493 U.S. 874, 110 S.Ct. 206 (1989). See also Andres v. United States, 333 U.S. 740, 752, 68 S.Ct. 880, 886 (1948) (federal capital case).

4. The statutory 10 vote prerequisite to a "no" response establishes an artificial numerical threshold which bears no relationship to conditions required by Texas law for assessment of a life sentence. See, R. Clary, Voting for Death: Lingering Doubts About the Constitutionality of Texas' Capital Sentencing Procedure, 19 St.M.L.J. 353, 374-75 (1987).

5. The statutory "10-12" provision violates the constitutional principles discussed in Mills v. Maryland, 486 U.S. 376, 108 S.Ct. 1860 (1988); see also McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227 (1990). The "10-12" provision requires that, in order for the jury to return answers to the special issues that would result in a life sentence, (i) at least ten jurors must vote "no" in answering the first special issue, (ii) at least ten jurors must vote "no" in answering the second special issue, or (iii) at least ten jurors must vote "yes" in answering the "mitigation" special issue. Defendant contends that this "10-12" provision violates the Eighth and Fourteenth Amendments because there is a reasonable possibility that, under the present Texas capital sentencing scheme, all twelve jurors in a capital case could believe that a life sentence would be appropriate under state law, but because at least ten jurors could not collectively agree on their answer to any one of the special issues, the jury could not return a life sentence.

## X.

The Texas capital punishment scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14 and 19 of the Texas Constitution, because it does not provide for the possibility of a life sentence without parole, which virtually insures that the jury will impose a death sentence.

37

XI.

In non-capital cases, jurors are informed of the law of parole. See Tex. Code Crim. Proc. Ann. art. 37.07 §4. The legislative decision not to give a comparable instruction in capital cases is intended to harm the rights of the capital defendant and does in fact harm his rights, because a jury which knew that the defendant would have to serve at least 40 calendar years on a life sentence before becoming eligible for parole would be much more likely to give a life sentence. Forbidding jurors this material information violates defendant's right to the equal protection of the laws, guaranteed by the Fourteenth Amendment of the United States Constitution, and Article I §§ 3 and 3a of the Texas Constitution.

XII.

The Texas capital punishment scheme, which permits the admission of unadjudicated extraneous offenses at punishment, does not comport with the heightened reliability required by the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14, and 19 of the Texas Constitution.

XIII.

The Texas death penalty scheme is a mandatory one, in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14, and 19 of the Texas Constitution.

XIV.

The Texas death penalty scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 14 and 19 of the Texas Constitution, because it does not define the various terms and phrases used in the special issues in ways that would permit the jury to give full mitigating significance to those terms.

XV.

The terms in the first special issue--probability, criminal acts of violence, and continuing threat to society-- are undefined and are vague and imprecise. As such, they do not guide the sentencer's discretion. It violates the Eighth and Fourteenth Amendments of the United States Constitution for the state to use aggravating factors to determine the

38

death sentence which do not guide discretion due to vagueness and imprecision. <u>See</u> <u>Stringer v. Black</u>, 503 U.S. 222, 112 S.Ct. 1130 (1992).

### XVI.

The procedure by which the death penalty is imposed in Texas denies the defendant protection from cruel and unusual punishment. A close analysis of the statute reveals that the system for imposition of the death penalty permits arbitrary and unchecked discrimination amounting to a denial of equal protection under the law. Pursuant to the provisions of the Texas statutes, two persons could commit capital offenses under similar circumstances, yet one could receive the death penalty and the other life imprisonment. The special issue submission pursuant to Article 37.071 provides no real standard for the guidance of juries in death penalty cases. Turning to the issues themselves, one can readily see that they are couched in nebulous terms that defy a realistic answer. There is no properly defined policy for assisting jurors with the life and death question. The only guidance which the court gives the jury under Article 37.071, concerning capital punishment, is simply to submit these rather meaningless issues, affirmative answers to which result in a mandatory death sentence. Consequently, the defendant is not adequately protected from jurors acting arbitrarily and with caprice in arriving at the awesome decision between life and death.

### XVII.

The Defendant has a right to be free from punishment imposed arbitrarily and capriciously in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I §§13 and 19 of the Texas Constitution. The special issues procedure set out in Article 37.071 allows total discretion to a jury to make unfavorable findings against a defendant, and such findings may be based on any prejudices the jury may have, individually or as a whole.

### XVIII.

Article 37.071 is so vague and indefinite as to be incapable of interpretation by reasonable men and is therefore facially void as violating the Defendant's rights to due process and due course of law and fundamental fairness guaranteed by the Fifth and

**39**

Fourteenth Amendments to the Constitution of the United States and Article I §§ 10, 13 and 14 of the Texas Constitution.

## XIX.

The statutes upon which said prosecution is based are violative of the Eighth Amendment to the United States Constitution and Article I §§ 13 and 19 of the Texas Constitution in that the death penalty is not a deterrent to future homicides.

## XX.

Article 37.071 is violative of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article §§ 10, 13 and 19 of the Texas Constitution in that whether there is a "probability" the defendant would commit violent criminal acts in the future is a "vague" and indefinite inquiry because there is always some mathematical probability that any person might commit a violent act in the future and the statute provides no guidelines or other statutory limitations upon the factors to be considered by the jury in making that determination.

## XXI.

Death by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13, and 19 of the Texas Constitution.

## XXII.

Capital punishment is per se violative of the Eighth Amendment protection against cruel and unusual punishment and the Fourteenth Amendment right to due process of law. The death penalty cannot be justified as furthering any of the accepted purposes of punishment.

## XXIII.

The Texas death penalty scheme does not provide for meaningful appellate review because it does not require a proportionality review, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

## XXIV.

Interpreting Article 35.13 of the Texas Code of Criminal Procedure to require

40

peremptory challenges to be made prior to examination of the entire jury panel in capital cases only denies the right to effective assistance of counsel, a fair and impartial jury, due process, due course, and equal protection under the laws as guaranteed by the United States and Texas Constitutions.

### XXV.

The death penalty in Texas is, and for many years has been, administered in a manner that purposefully discriminates against members of minority races in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

### XXVI.

The Texas death penalty scheme does not properly narrow the class of persons eligible for the ultimate punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §§ 10, 13 and 19 of the Texas Constitution.

### XXVII.

Under Texas law, a capital jury may not be informed that the defendant would have to serve at least 40 years in prison before becoming eligible for parole on a life sentence. Without such information , a jury will not have an accurate and proper understanding of the parole system in Texas. That is, the jury will be required to predict the defendant's future danger to society without knowing how long he will have to be incarcerated. Such an uninformed prediction promotes arbitrary, capricious and standardless sentencing, in violation of the Eighth and Fourteenth Amendments and Article I, §§ 10, 13, and 19 of the Texas Constitution, and fails to promote the concept of individualized sentencing and heightened reliability required by those constitutional provisions.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the indictment be quashed and the prosecution dismissed.

41

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Quash was served on the Dallas County District Attorney's Office by personal delivery on the 2 day of April, 2009.

_____

Attorney for the Defendant

42

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____   GRANTED

_____   DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.


_____

JUDGE PRESIDING

43

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO DECLARE JURY SELECTION PROCEDURE UNCONSTITUTIONAL

---

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Defendant in the above entitled and numbered cause, by and through his attorney of record, and files this Motion to declare the jury selection procedure in capital murder cases unconstitutional for the following reasons.

I.

The procedure for the selection of jurors in a capital murder case violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Texas Constitution and is therefore unconstitutional.

III.

Article 35.16(b)(1) of the Texas Code of Criminal Procedure provides that the State may challenge for cause a juror who has conscientious scruples in regard to the infliction of the punishment of death for crime, in a capital case, where the State is seeking the death penalty. This criteria is in direct conflict with Witherspoon v. Illinois, 88 S.Ct. 1770 (1968) and Wainwright v. Witt, 105 S.Ct. 844 (1985). In Witt the criteria was established as to whether a juror's view on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

44

### III.

While the trial judge may well instruct the prospective jurors in the language of Witherspoon and Witt; so long as the language of Article 35.16(b)(1) uses the term "conscientious scruples" the prospective jurors will automatically equate Witt's criteria with conscientious scruples; and will claim to be disqualified when in truth and in fact they are not disqualified. Article 35.16(b)(1) violates the Defendant's right of due process and is therefore clearly unconstitutional.

### IV.

In addition during the voir dire of the jury panel by the Court, the prospective jurors will be instructed in regards to the punishment procedure in Article . 37.071 of the Texas Code of Criminal Procedure. This article prohibits the prospective jurors from being informed of the effect of a failure of a jury to agree on the issues submitted to them. They are only informed that the jury may not answer the special issue "yes" unless they agree unanimously and may not answer the issue "no" unless 10 or more jurors agree. Such instruction results in a false and misleading inference that the jury must arrive at a verdict and therefore violates due process because of its coercive effect on the jury. Without accurate instruction the jurors will be misled into believing that a "hung jury" at the punishment stage of the trial would result in a re-trial of the entire case which normal jurors would seek to avoid. Such a denial of this aspect of the law violates the Eighth and Fourteenth Amendments to the United States Constitution.

### V.

In all criminal prosecutions the accused has a right to a trial by an impartial jury. This Sixth Amendment right has been held to mean a trial by ones peers or ones equals. A "death-qualified" jury is by definition not composed of ones equals but is composed of individuals who are prejudiced against anyone charged with a capital offense. Numerous studies have shown that such juries are prosecution prone and more likely to vote for a conviction than are jurors in non-death qualified panels. Furthermore, death qualification

45

excludes a large portion of certain groups from jury service, i.e.: blacks, Hispanics and females, resulting in stacking the deck against the Defendant. A "death-qualified" jury violates the defendant's right to due process and equal protection of the laws.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that after notice and hearing this Motion be granted and Articles 36.16(b)(1) and 37.071 of the Texas Code of Criminal Procedure be held unconstitutional.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net

ATTORNEY FOR DEFENDANT

46

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the 2 day of April, 2009.

_____
Attorney for the Defendant

47

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

48

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION (DENIAL OF EQUAL PROTECTION)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. Code. Crim. Proc. Ann. arts 1.05, 1.06 and 1.09 and Rule 404(b) of the Texas Rules of Evidence, and moves the Court to preclude the death penalty as a sentencing option and in support thereof would show the court the following:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty.

3. Tex.Code Crim. Proc. Ann. art. 37.071 fails to provide a method by which a mechanism whereby the state determines the death worthiness of the Defendant. This failure eliminates rationality and consistency in the decision to seek death and violates the Defendant's right to due process as set out in the 14th Amendment to the United States Constitution and Article

49

Article 1, Section 19 of the Texas Constitution.

4. The decision as to which defendant is to be subjected to the death penalty varies from county to county. There are likely 254 different methods in determining which cases shall be prosecuted as capital cases. Often the decision can turn on the county's willingness to fund the defense. In many counties of the state it is unlikely that a 72 year old man who claimed that he did not intend to shoot a police officer and who, following the shooting, summoned help for the officer would face the death penalty. When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied. *Bush v. Gore*, 531 U.S. _____, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). This decision of the United States Supreme Court involved varying standards used to count votes in a presidential election. Certainly the life of a citizen deserves equal consideration.

5. The 14th Amendment to the United States Constitution assures each citizen's equal protection under the law. The Texas system for capital prosecution denies this equal protection to this Defendant. Pursuant to Tex.C.Crim.P. Art. 104.004, the criminal justice division of the governor's office may distribute money appropriate by the legislature for the extraordinary costs of investigation or prosecution of an offense under Section 19.03 of the Texas Penal Code (Capital Murder). The county is not eligible for reimbursement for costs of the defense of one who is charged with an offense under Section 19.03. This Defendant is denied equal protection under the laws of the State of Texas.

6. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole. Texas Penal Code 12.31. It is only when the state seeks the death penalty

50

that the prescribed statutory maximum can be exceeded and then only if the finder of fact concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society". Tex. C. Crim. P. 37.071(2)(b)(1).

6. A fact that increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in the indictment and proved to the jury beyond a reasonable doubt. *Apprendi v. New Jersey*, ____, U.S. ____, 120 S.Ct. 2348 (2000). Evidence of the Defendant's future dangerousness must be presented to the grand jury and alleged in the indictment, if such dangerousness is found to be true by the grand jurors. The indictment returned against this Defendant fails to make this allegation and the death penalty should be precluded as a sentencing option.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
Bklollar@sbcglobal.net

51

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ⎵ day of April, 2009.

_____

Attorney for the Defendant

52

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
|---|---|---|
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____  GRANTED

_____  DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

53

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE
## ARTICLE 37.071, §2(a) OF THE CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE UNDER DUE COURSE OF LAW AND DUE PROCESS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, the Defendant in the above entitled and numbered cause, and pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, moves the Court as follows:

I.

Article 37.071, §2(a) of the Code of Criminal Procedure provides in pertinent part:

In the proceeding, evidence may be presented by the state and the defendant or the defendant's counsel as to any matter *that the court deems relevant to sentence*, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas.

54

## II.

By permitting trial courts to decide case-by-case what issues are relevant to punishment without first declaring a policy or fixing a standard by which the courts may decide relevancy, 37.071, §2(a) of the Code of Criminal Procedure deprives the Defendant of due course of law under Article I, §19 of the Texas Constitution and due process under the 14th Amendment to the United States Constitution because (1) it introduces arbitrariness into punishment proceedings, (2) it eliminates his right to a review of trial court decisions, and (3) because it undermines the Texas adversary system.

### (1) Arbitrariness

Article 37.071 §2(a)'s phrase "any matter the court deems relevant" meets the very definition of arbitrariness. *See Black's Law Dictionary*, p. 96 (West 5th ed. 1989)(arbitrariness is "Conduct or acts based alone upon one's will, and not upon any course of reasoning and exercise of judgment;" "Without adequate determining principle") Arbitrary punishment is that punishment "which is left to the decision of the judge, in distinction from those defined by statute." *Id.* What is relevant and therefore admissible is left completely to the unfettered whim of each different trial judge in Texas. Each trial court may admit not only evidence which *is* relevant, but any evidence a particular judge *deems* relevant. Each judge under this statute is a legislature unto himself. Under any definition, there is no more arbitrary statute than the present one.

Page 2 of 7

55

**(2) Right to Appeal Eliminated**

The Defendant has a right to a meaningful review of decisions complained of at the trial court level. *See Evitts v. Lucy*, 469 U.S. 387, 396-99, 105 S.Ct. 830, 835-36, 83 L.Ed.2d 821 (1985). *See also* Tex. Const. Art. V, §6. Under this statute, however, there can be no meaningful appellate review of trial court decisions as to the relevance and admissibility of evidence because no objective standard exists. Whatever a particular trial court subjectively "deems" relevant to the proceedings is admissible. There is no standard against which the trial court's decision may be measured. If the trial court admits evidence as relevant, the decision can never be error, whether there is an objection or not, because such evidence *is* relevant whenever the judge *deems* it relevant. By eliminating any objective standard by which to guide trial courts, Article 37.071, §2(a) also eliminates any method by which an appellate court may gauge the propriety of the trial court evidentiary decisions, thereby precluding any meaningful review of trial court decisions regarding relevancy and admissibility of punishment evidence.

**(3) Adversary System Undermined**

The adversarial system is fundamental to Texas. *See Morrison v. State*, 845 S.W.2d 882 (Tex.Crim.App. 1992). The adversary system presupposes, among other things, that the State and the defense will act as partisan advocates in a criminal trial. Where issues are unnamed and undefined they are impossible to dispute. If there is no specific issue to be

56

disputed (or resolved) then there is effectively no adversary "system" at all in the punishment phase of a Texas criminal case. Thus, by having no named or defined punishment issues which may be disputed, the Legislature has also undermined the integrity of the adversarial process for punishment trials.

## III.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. *Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.* Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms."

*Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, 228 (1972)(emphasis added). Under this statutory provision, Defendant challenges the constitutionality of Article 37.071, §2(a) of the Code of Criminal Procedure on the second and "more important aspect of the vagueness doctrine . . ., [namely] 'the requirement that a legislature establish minimal guidelines to govern law enforcement.' [citation omitted] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal

Page 4 of 7

57

predilections.'" *Kolender v. Lawson*, 46 1 U.S. 352, 357-358 (1983)(quoting *Smith v. Goguen*, 415 U.S. 566, 574-575 (1974)).

The phrase **"*any matter the court deems relevant to sentencing*,"** is about as uncertain a "standard" which the English language can produce. From this statutory wording no one can know what the relevant issues are at the punishment phase of a Texas criminal trial. "(A) law must be sufficiently definite that its terms and provisions may be known, understood and applied; otherwise, it is void and unenforceable." *Floyd v. State*, 575 S.W.2d 21, 23 (Tex.Crim.App. 1978); *Ex Parte Granviel,* 561 S.W.2d 503 (Tex.Crim.App. 1978). Indeed, the judiciary itself is at a loss to know the relevant matters of a criminal punishment trial without legislative guidance. *See Grunsfeld v. State*, 843 S.W.2d 521, 547 (Tex.Crim.App. 1992)(Clinton, J., concurring)(reviewing same provision for non-death penalty cases). If the courts themselves are unable to know what is prohibited from admission as evidence in a criminal punishment trial from the face of the statute, then the law is void for vagueness because it makes it impossible for the judiciary to construe the statute and tell when it has been violated. Because the legislature has failed to declare exactly what matters in Texas criminal punishment trials , but instead appears to have attempted to shift the policy issues to the judiciary, the statute is void for vagueness under Article I, §19 of The Texas Constitution, and under the Fifth and Fourteenth Amendments to the United States Constitution. *See May v. State*, 765 S.W.2d 438 (Tex.Crim.App. 1989)(finding harassment statute unconstitutionally vague).

Page 5 of 7

58

Respectfully submitted,

Bradley K. Lollar
Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

Page 6 of 7

59

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion* has been personally delivered to the Assistant District District Attorney's Office on this the _____ day of April, 2009.

_____
Attorney for the Defendant

Page 7 of 7

60

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
|---|---|---|
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and fore going *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to whi ch ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

61

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## DEFENDANT'S MOTION TO PRESENT
## WRITTEN QUESTIONAIRES TO VENIRE

---

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 and moves the Court to allow the Defendant to submit written questions to the venire and in support thereof would show:

1. The Defendant stands charged by indictment with the offense of capital murder and will be allowed to conduct individual *voir dire* on each member of the venire. In order to conduct this individual *voir dire* in the most complete manner but also to avoid lengthy and repetitious questioning, the Defendant has prepared a list of written questions that Defendant would ask each and every member of the venire.

2. Providing the venire with an opportunity to provide answers to written questions will

62

have the following benefits:

(a) This process will be fair to both the State and the Defendant by providing both parties with information that is necessary to intelligently exercise both peremptory challenges and challenges for case.

(b) The veniremen will likely give a more accurate response if they are able to see the question, review the question as often as may be necessary, and give responses that are not influenced by responses from other jurors and the manner in which the question is phrased by counsel.

(c) By allowing the panel to fill out these questions prior to their individual examination, the Court will save valuable time and still provide the Defendant and the State with the information essential to a capital murder case. The time spent by the jurors completing the questionnaire would not be Court time.

3. To deny this information to the Defendant would be to deny Defendant his rights to a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution.

4. The Defendant moves the Court to Order that the Clerk of the Court provide each of the veniremen a copy of the questionnaire with instructions that the questionnaires be completed and returned to the office of the clerk at least _____ days prior to trial. The Defendant respectfully moves the Court to provide Defendant and the State a copy of the responses provided by the jurors.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Court allow Defendant to submit written questions to the venire prior to their individual *voir dire*.

63

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

64

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of April, 2009.

_____
Attorney for the Defendant

65

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

66

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO COMPEL DISCLOSURE OF STATE'S JURY SELECTION DATA

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant in the above-styled and numbered case, by and through his attorney of record, and moves this Honorable Court to compel the Dallas County District Attorney's Office, to disclose to Defendant the information and data compiled on prospective jurors in this case and for good cause therefore would show the following:

### I.

The State of Texas has vast and wide reaching resources in compiling data on prospective jurors not available to the Defendant.

### II.

The Dallas County District Attorney compiles lists of prospective jurors who have served on juries previously in criminal cases indicating the verdict, if any, which said jury rendered.

### III.

The State of Texas has access to and utilizes "rap sheet" retrieval methods available to the State to determine prior arrests or convictions of prospective jurors. The Defendant does not have access to private and confidential information gathered by law

67

enforcement agencies regarding arrests and convictions of prospective jurors.

IV.

These vast investigative resources of the District Attorney's Office in gathering information regarding prospective jurors provides a nonreciprocal benefit to the State which interferes with and denies to the Defendant the ability to secure a fair trial and violates the due process and fundamental fairness requirements of the Fifth, and Fourteenth Amendments to the Constitution of the United States, the comparable amendments to the Constitution of the State of Texas and further deprives this indigent Defendant of the basic tools to adequately defend the charges against him by reason of his poverty in violation of the Constitutional right to the equal protection of the laws.

V.

The Defendant also urges this Motion on a theory that the prosecution has a state and federal constitutional statutory duty to reveal evidence or information favorable to the defense pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 2.01 of the Code of Criminal Procedure and the principles enunciated in Brady v. Maryland, 373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court order and compel the Dallas County District Attorney's Office to permit the Defendant to view and copy the data and information compiled by the Government on prospective jurors in this cause, and for such other and further relief as this Honorable Court should deem just and proper.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

68

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Compel was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____

Attorney for the Defendant

69

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

7C

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

## MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and moves this Court to videotape the individual voir dire and make the tapes part of the record for an appeal. In support of this motion, Defendant would show:

I.

The Defendant "has a statutory and constitutional right to an 'adequate' appellate record at (the) State's expense" because he is indigent. Dunn v. State, 733 S.W.2d 212, 214 n.3 (Tex. Crim. App. 1987).

II.

An adequate record includes a complete record of the voir dire. Austell v State, 638 S.W.2d 888, 890 (Tex. Crim. App. 1982).

III.

The record of the individual voir dire will be incomplete and inadequate if it is not videotaped.

71

IV.

An appeal of an adverse ruling on a <u>Batson</u> objection may turn on whether the attire or haircut of one juror was different than the attire or haircut of other venirepersons. <u>See, e.g.</u>, <u>Woods v. State</u>, 801 S.W.2d 932, 936-37 (Tex. App. - Austin 1990); <u>Vann v. State</u>, 788 S.W.2d 899, 903-05 (Tex. App. - Dallas 1990).

V.

Counsel cannot seriously be expected to verbally describe the appearance of every juror.

VI.

Moreover, "'(t)he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record.'" <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 n.9 (1985) (citation omitted).

VII.

Appellate courts compensate for this "lack of clarity in the printed record" by giving great deference to the rulings of "the trial judge who sees and hears the juror." <u>Wainwright v. Witt</u>, 469 U.S. at 425-26.

VIII.

That doctrine was developed over a century ago when the record for an appeal was made with a fountain pen. <u>See</u> <u>Wainwright v. Witt</u>, 469 U.S. at 428 n.9 (citing <u>Reynolds v. United States</u>, 98 U.S. 145, 156-157 (1879)).

IX.

When "advances in scientific knowledge" make a legal practice obsolete, it should be modified to preserve its purpose. <u>Berger v. United States</u>, 388 U.S. 41, 49 (1967).

X.

Rule 11(a) of the Texas Rules of Appellate Procedure requires the court reporter to transcribe her notes of the voir dire upon request for the purpose of insuring as complete a record in criminal proceedings as possible. <u>Morris v. State</u>, 411 S.W.2d 730 (Tex. Crim. App. 1967)

72

## XI.

The statute has been interpreted to prohibit the use of a mechanical recording in lieu of a transcript of the reporter's notes if the defendant objected, Soto v State, 671 S.W.2d 43 (Tex. Crim. App. 1984), but it does not bar the use of a mechanical recording to supplement the written transcript.

## XII.

A videotape of the individual voir dire will contribute to the accuracy of appellate review because the Court of Criminal Appeals will be able to see and hear everything that the trial judge did.

## XIII.

The obsolete practices of relaying on a written transcript of the voir dire gives the state an unfair advantage. A competent prosecutor can get almost any prospective juror to equivocate and the slightest vacillation in the written record makes the judge's ruling on a challenge for cause virtually immune to appellate review.

## XIV.

The cost of videotaping the voir dire is minimal.

## XV.

A videotape of the voir dire will not delay or disrupt the trial.

WHEREFORE, PREMISES CONSIDERED, the Court should have a videotape of the individual voir dire made and include it in the record for appeal.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Suite 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

73

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ⟍2⟋ day of April, 2009.

_____
Attorney for the Defendant

74

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

75

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## REQUEST THAT THE TRIAL COURT ALLOW COUNSEL TO INFORM THE JURY THAT A LIFE SENTENCE, NOT A MISTRIAL, RESULTS FROM A FAILURE TO UNANIMOUSLY ANSWER THE SPECIAL ISSUES AND MOTION FOR A REQUESTED INSTRUCTION

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, the Defendant in the above styled and numbered cause, and pursuant to the 6th, 8th, and 14th Amendments to the United States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, moves the Court as follows:

I.

Article 37.071 §2(g) of the Code of Criminal Procedure ensures that there can be no mistrial in a capital case. There is always a sentence in capital cases, unlike any other case. The expense, length and seriousness of a capital murder trial is well-known to jurors, as they experience and observe it firsthand. Naturally, they do not wish for the case to have to be

76

retried. Nevertheless, the jury is told nothing of how the procedural law really works. By refusing to tell the jury the truth, the "myth of the capital mistrial" prevails.

Article 37.071 §2(g) of the Code of Criminal Procedure violates the Equal Protection Clause of the Fourteenth Amendment as well as Article I, §3 of the Texas Constitution. Every juror takes an oath to render a verdict. *See* Tex. Code Crim. Proc. art. 35.22. In non-death penalty cases, the jury must return a verdict or a mistrial is declared. *See* Tex. Code Crim. Proc. art. 37.07 §3(c). Judges are authorized to inform juries that a mistrial will occur from their collective failure to agree on a verdict. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (overruled on other grounds). It is also recognized that juries are aware that a failure to agree results in a mistrial. Jurors by definition seek to come to a collective decision.

In death penalty cases, no mistrial arises from the failure of the jury to return a verdict, *See* Tex. Code Crim. Proc. art.37.071 §2(g), yet judges are specifically prohibited from so informing juries. This state of affairs permits the mistrial myth to coerce jury punishment verdicts where coercion of any kind is unnecessary to produce a verdict, and is this fundamentally unfair under the Due Process Clause of the 14th Amendment as well as Article I, §19 of the Texas Constitution.

II.

The equal protection provisions of the state and federal constitutions are violated

77

where a statutory classification is not rationally related to a legitimate governmental interest. *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988); *Henderson v. State*, 962 S.W.2d 544, 560 (Tex.Crim.App. 1997). While the Supreme Court is "unwilling to say that there is any one right way for a State to set up its capital sentencing scheme," a State must administer the death penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984). Article 37.071 §2(g) is unconstitutional because it requires or permits jurors in death penalty cases to deliberate on punishment issues under the misconception of the effect of a failure to agree, while jurors in non-death penalty cases deliberate under an accurate understanding of the consequences of a failure to agree on a punishment.

The only legitimate governmental interest for which this provision may have been created is the finality of verdicts. However, this goal is in no way advanced by blinding jurors to the truth of their failure to agree. Whatever capital jurors decide at the punishment trial, there can be no mistrial, and the interests the State may have in avoiding such a mistrial do not exist. Thus, it cannot be said that refusing to inform capital jurors accurately about the consequences of a failure to agree is rationally related to this or any other legitimate governmental interest, as it has no effect on such an interest whatsoever.

78

It may be that the Legislature feared that jurors holding out for a life sentence would be encouraged to maintain their position should they learn that their verdict will have the effect of producing a life sentence. However, this view assumes that jurors will somehow disobey their oaths. Such an expectation is contrary to the legal presumption that jurors do follow their oaths. Moreover, even were a single hold-out seeking a life sentence in good conscience, such a juror does not violate her oath to render a true verdict on the punishment issues. A juror who in good conscience cannot answer one of the special issues in a particular way does violate her oath if she votes against her own beliefs. If the Legislature's purpose was to blind capital jurors and leave them deliberating under a misapprehension of law, while leaving jurors in all other cases to fulfill their duty under an accurate understanding, then the Legislature has created a distinction with no rational relationship to any legitimate governmental goal, contrary to the state and federal Equal Protection guarantees.

## IV.

Article 37.071 §2(g) of the Code of Criminal Procedure also reduces the heightened reliability required under the cruel and/or unusual punishment provisions under the state and federal constitutions cited above. A verdict produced from a misleading notion of the consequences of a failure to agree is necessarily unreliable.

Page 4 of 6

79

## V.

Notwithstanding the unconstitutionality of this provision, the Court should also instruct the jury as follows, or words to the effect:

You are instructed to deliberate and, if you can in good conscience, return answers to these special issues. No mistrial results in a failure of the jurors to agree on the punishment issues. However, every juror should listen to, respect and consider the views of the other jurors and agree if, in good conscience, you can.

Therefore, the Defendant moves the Court to declare Article 37.071§2(g) unconstitutional on any or all of the bases stated herein and relieve the jurors of the misconception that a failure to agree could result in a mistrial.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

Page 5 of 6

80

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Objection and Motion*

was personally delivered to the Dallas County District Attorney's Office on this the

2 day of April, 2009.

_____

Attorney for the Defendant

Page 6 of 6

81

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

82

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION TO QUALIFY 42 VENIREPERSONS BEFORE REQUIRING THE EXERCISE OF PEREMPTORY STRIKES

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, the Defendant in the above entitled and numbered cause, and pursuant to Article 35.13 and 35.25 of the Code of Criminal Procedure, the 6th, 8th, and 14th Amendments to the United States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, moves the Court as follows:

I.

The Court has proposed that peremptory strikes be exercised at the completion of the voir dire of each individual juror. This procedure compels defense counsel to decide whether to peremptorily strike a juror before subsequent jurors have been examined. Counsel is thereby made to select jurors before gathering information from the jurors necessary to make an intelligent decision regarding these peremptory strikes.

83

## II.

The constitutional provisions cited above guarantee a defendant the right to the intelligent use of his peremptory strikes. This proposed method for exercising peremptory strikes undermines, if not violates, this right at this crucial stage of trial. The Court of Criminal Appeals has acknowledged that Due Process and Equal Protection guarantees are violated by precluding the capital defendant the same right to make sensible and circumspect use of his peremptory strikes as noncapital defendants. *See Sannne v. State*, 609 S.W.2d 762 (Tex.Crim.App. 1980). More recently, the Court recognized that noncapital defendants do in fact have an advantage over capital defendants. *Busby v. State*, 990 S.W.2d 263 (Tex.Crim.App. 1999).

## III.

Neither Article 35.13 nor Article 35.25 of the Code of Criminal Procedure requires this procedure. An alternative method which avoids these constitutional problems has been recognized by the Court of Criminal Appeals:

> [Q]uestion a number of venirepersons individually with no action being taken on individuals except challenges for cause. After forty-two persons have been qualified and questioned ... the parties then make their strikes and objections much the same as in a noncapital case.

*Rousseau v. State*, 824 S.W.2d 579, 582 n.4 (Tex.Crim.App. 1992).

84

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

85

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion to Qualify 42 Venirepersons* was personally delivered to the Dallas County District Attorney's Office on this ___ day of April, 2009.

_____

Attorney for the Defendant

86

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

87

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## MOTION TO QUESTION VENIREPERSONS REGARDING THE BURDEN OF PROOF ON THE MITIGATION SPECIAL ISSUE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and makes this Motion to Question Veniremen Regarding the Burden of Proof on the Mitigation Special Issue, and as grounds therefore would respectfully show as follows:

I.

Defendant contends that the State has the burden of proof on the special issue dealing with mitigation. That is, the Defendant contends that the answer to the issue must be "yes" unless and until the State proves beyond a reasonable doubt that there are no mitigating circumstances whish would justify a life sentence rather than a death sentence. The Defendant requests permission to voir dire each and every venireman to assure that the venireman can follow the law in this regard. These questions are submitted to demonstrate that such questioning would be appropriate and would be designed to elicit information from the venireman so that the Defendant can intelligently exercise his peremptory challenges as well as have effective assistance of counsel. To these matters the Defendant is entitled on the basis of the Sixth Amendment to the United States Constitution, as well as Article I, Sections 10 and 15 of the Texas Constitution.

88

II.

Specifically, the Defendant would ask each and every juror the following questions:

1. Could you hold the State to it's burden of proof beyond a reasonable doubt in answering the special issue regarding mitigation?

2. Do you agree with the law that requires the State to satisfy you, beyond a reasonable doubt, that there is not sufficient mitigating evidence to justify a life sentence, rather than a death sentence?

3. Whether you agree with the law or not could you follow that law?

WHEREFORE, PREMISES CONSIDERED, the Defendant requests the opportunity to voir dire each and every venireman on the above-listed questions. The questions are necessary to render effective assistance of counsel and to allow the Defendant to intelligently exercise his peremptory challenges.

Respectfully submitted,

Bradley K. Lollar
State Bar No. 12508700
1700 Commerce St., Ste. 404
Tel. (214) 384-8178
bklollar@sbcglobal.net
ATTORNEY FOR DEFENDANT

89

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing

Motion was served on the Dallas County District Attorney's Office by personal delivery

on the ___ day of April, 2009.

_____

Attorney for the Defendant

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

91

**CAUSE NO. F08-24629-FY**
**CAUSE NO. F08-24667-FY**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## OMNIBUS PRETRIAL MOTION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the defendant in the above styled and numbered cause, pursuant to Art. 39.14, Texas Code of Criminal Procedure, and files this his Omnibus Pretrial Motion, requesting and pleading the following:

I.

### EXCULPATORY OR MITIGATORY EVIDENCE

The defendant requests the disclosure of any and all exculpatory and/or mitigatory evidence or evidence favorable to the defendant in any way which the prosecution or any law enforcement agency may have in its possession or within its knowledge of or which it has a duty to inquire concerning this defendant or this case. Kyles v. Whitley 115 S. Ct. 1555 (1995), Brady v. Maryland,

92

373 U.S. 83 (1963), <u>Ex Parte Adams</u>, 768 S.W.2d 281 (Tex. Cr. App. 1989), and <u>O'Rarden v. State</u>, 777 S.W.2d 455.

*"We extend <u>Brady</u> to include the required revelation to an accused, even absent request, of exculpatory or mitigatory evidence in the possession of prosecutors, police agencies, and other parts of the prosecutorial team."* U. S. Supreme Court, <u>Kyles v. Whitley</u>, supra.

[✓] GRANTED          [ ] DENIED

## II.

## IDENTIFICATION HEARING

The defendant requests an identification hearing outside the presence of the jury.

[ ] GRANTED          [ ] DENIED          [ ] WAIVED    *Abeyance*

## III.

## CONFESSIONS/ STATEMENTS HEARING    *set for July 23 08 30*

The defendant requests a sub rosa hearing prior to the introduction of any statements allegedly made by the defendant, either orally or in writing, to determine the voluntariness and admissibility of them, and requests disclosure of these statements prior to trial.

<u>Jackson v. Denno</u>, 378 U.S. 368 (1964).

[ ] GRANTED          [ ] DENIED

OMNIBUS PRETRIAL MOTION - Page 2

93

## IV.

## DISCLOSURE OF PHYSICAL EVIDENCE AND TEST RESULTS

The defendant requests the production and disclosure of all physical evidence or tangible items, objects, and matters not the work product of the State which are or may be relevant to the guilt or innocence or punishment of the accused, and which evidence will or may be offered by the State in the trial of this cause. Further, the defendant requests the State to produce, prior to trial, any laboratory reports or expert opinions pertaining to any tests conducted at the request of the State or any law enforcement agency on any physical or tangible evidence.

[ ] GRANTED          [ ] DENIED

## V.

## LIST OF WITNESSES



The defendant requests a list of witnesses who will or may be called by the State at the guilt/innocence phase of the trial or the punishment phase. Hoagland v. State, 494 S.W.2d 186 (Tex. Cr. App. 1973).

[ ] GRANTED          [ ] DENIED

OMNIBUS PRETRIAL MOTION - Page 3

94

## VI.

## IMPEACHMENT EVIDENCE / EXTRANEOUS OFFENSES

Pursuant to Rule 404 (b), Texas Rules of Criminal Evidence, and Sec. 38.37 of the Code of Criminal Procedure, the defendant:

a) requests notice of the State's intent to use extraneous offenses at trial, and

b) requests a hearing out of the presence of the jury before any evidence of:

1) extraneous transactions, or

2) evidence of other crimes, wrongs, or acts allegedly committed by the defendant,

3) or reputation testimony,

4) or impeachment by conviction of prior offenses,

is offered by the State, in order to determine admissibility of this evidence.

c) Further, pursuant to Article 37.07 Tx. Code of Criminal Procedure, the defendant requests a hearing outside the presence of the jury to determine the relevance of any:

1) prior criminal record,

2) reputation or character evidence, or

3) extraneous crime or bad act allegedly committed by him, which the State would seek to introduce before the jury in the punishment phase of the trial.

d) and the defendant requests specific notice of any such matter prior to trial.

**The defendant specifically objects to the introduction of extraneous non-charged offense evidence before the jury in any form, or at any stage of the proceeding.**

[X] GRANTED                [ ] DENIED

OMNIBUS PRETRIAL MOTION - Page 4

95

## VII.

## JURY SHUFFLE

The defendant requests that a shuffle be made of the jury panel.

abor

[ ] GRANTED          [ ] DENIED          [ ] WAIVED

## VIII.

## ARRAIGNMENT

The defendant requests arraignment out of the presence of the jury.

[/] GRANTED          [ ] DENIED

## IX.

## COMPLETE RECORD OF TRIAL

The defendant requests that a complete record be made of the trial, including voir dire, all testimony, bench conferences, and argument of counsel.

[/] GRANTED          [ ] DENIED

OMNIBUS PRETRIAL MOTION - Page 5

96

## X.

## WRITTEN STATEMENTS/ REPORTS MADE OR READ BY WITNESSES

The defendant requests that the State make available to counsel any and all written statements made or adopted by a witness who testifies, and/or any statements used by a witness to refresh his memory as to the events involved in the trial, at such time as the State passes the witness for cross-examination.

[/] GRANTED                [ ] DENIED

## XI.

## GRAND JURY TESTIMONY

The defendant requests that counsel for the defendant be permitted to examine the testimony of each witness who testified before the Grand Jury at such time as they are passed for cross-examination, and to be advised, prior to trial, of the names of any persons who testified in regard to this case at the Grand Jury hearing. Dennis v. U.S., 384 U. S. 855 (1966).

[ ] GRANTED           [/] DENIED           [ ] INAPPLICABLE

## XII.

## PROOF OF LEGALITY OF SEIZURE OF PHYSICAL EVIDENCE

The defendant requests a hearing outside the presence of the jury to determine the admissibility of any physical evidence recovered during the investigation of this case and which the District Attorney intends to offer as evidence herein, and would request that the Court suppress this

OMNIBUS PRETRIAL MOTION - Page 6

97

evidence if the Court determines that the evidence was obtained in violation of the United States Constitution or Federal Law or the Constitution or laws of the State of Texas. Art. 38.23, Code of Criminal Procedure.

[ ] GRANTED                    [ ] DENIED

*Victim's car / No standing. Search incident to arrest.*

## XIII.

### IMPEACHMENT EVIDENCE OF STATE'S WITNESSES

The defendant requests that the Court order the State to produce, prior to trial:

a)  all criminal records of witnesses that they intend to call to the stand in the trial of this case, and further,

b)  to determine and disclose any pending criminal charges that prospective witnesses may have.

Further, the defendant requests that the State disclose to the defendant:

c)  whether it has made, promised, or implied any promises, benefits, or concessions to any prospective witness in order to induce or influence his testimony, and

d)  to determine and disclose whether any such benefits or inducements have been made to any witness by any law enforcement agency or by any other individual,

e)  or whether any individual has coerced, forced, or threatened the witness in any way in order to procure the witnesses testimony.

[ ] GRANTED                    [ ] DENIED

98

## XIV.

## CERTIFIED DOCUMENTS

The defendant requests notice of the State's intent to offer certified documents in evidence in the trial of this case, and requests disclosure of them prior to trial.

[√] GRANTED                [ ] DENIED

## XV.

## ELECTION OF PUNISHMENT

In the event of conviction, the defendant elects to have the (Jury) (Judge) assess punishment.

[√] GRANTED                [ ] DENIED

## XVI.

## REQUEST FOR REASONABLE EXPENDITURES

The defendant requests that the Court allow reasonable and necessary expenses for the use of an investigator and/or expert witness in the preparation for trial in this cause.

[√] GRANTED            [ ] DENIED            [ ] INAPPLICABLE

99

## XVII.

## REQUEST FOR DEFENDANT TO BE FREE OF IMPEACHMENT

The defendant moves the Court, pursuant to Rule 609 (a), to allow him to testify at the guilt/innocence phase of the trial free from impeachment by any or all of his prior convictions that the State has given notice of an intent to use for such purpose, and requests a sub rosa hearing in regard to this matter, Theus v. State, 845 S.W.2d 874 (Tx. Cr. App. 1992).

[ ] GRANTED          [ ] DENIED          [ ] INAPPLICABLE

## XVIII.

## BATSON HEARING          Abeyance

The defendant requests that the Court strictly enforce Art. 35.261, Tx. Code of Criminal Procedure and moves that any information that is learned by the State about a prospective juror in this case from any source outside of the courtroom that the State intends to use in exercising their peremptory challenges, i.e., information about a juror other than that disclosed by a juror in questioning during voir dire or in their juror information cards, except that information which is work product of the State, e.g., a prospective juror's prior criminal record, be shared with the defense before such time that the lists are struck, so that inquiry might be made of the juror as to the accuracy and relevance of the information.

This request is made to protect the defendant's and the juror's rights guaranteed under Batson v. Kentucky and its progeny, J.E.B. v. Alabama and its progeny, and under Art. 35.261, Tx. Code of Criminal Procedure.

[ ] GRANTED          [ ] DENIED

OMNIBUS PRETRIAL MOTION - Page 9

100

WHEREFORE, PREMISES CONSIDERED, the defendant prays that a hearing be held on this Motion and that the Court order the State to produce the requested items as designated above and permit the defendant to inspect, copy, photograph and conduct any necessary analytical tests on such items. The items are not privileged and are within the proper scope of discovery by the defendant.

The defendant prays that this Motion be in all things granted by the Court.

Respectfully submitted,

Bradley K. Lollar
Attorney for the Defendant
Texas Bar No. 12508700
1700 Commerce. St., Ste. 404
Dallas, Texas  75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

OMNIBUS PRETRIAL MOTION - Page 10

101

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Omnibus Pretrial Motion has been personally served upon the Assistant District Attorney of Dallas County, Texas appointed to the prosecution of this case, on this the 2 day of April , 2009.

_____
Bradley K. Lollar

Attorney for the Defendant

OMNIBUS PRETRIAL MOTION - Page 11

102

## ORDER

On this the _____ day of _____, 2009, came on to be heard the foregoing Defendant's Omnibus Pretrial Motion and the Court, after due deliberation, finds as marked in the body of the Motion and orders disclosures to the Defense as requested.

_____

JUDGE PRESIDING

OMNIBUS PRETRIAL MOTION - Page 12

103

## DEFENDANT'S REQUESTS OF THE PROSECUTION

TO THE HONORABLE MEMBERS OF THE PROSECUTION:

COMES NOW the defendant in the above styled and numbered cause and would make his request that the members of the prosecution, in advance of trial, and regardless of whether they have been ordered to do so by the trial court:

1) Disclose any and all exculpatory and/or mitigatory evidence or evidence favorable to the defendant in any way;

2) Pursuant to Rule 404 (b) of the Texas Rules of Evidence, the defendant requests notice of the State's intent to offer extraneous conduct of the defendant, or bad acts, in the trial of this case;

3) Make available to the defendant a list of witnesses that they intend to call in this case;

4) Make available offense reports and witness statements;

5) Make available for inspection by the defendant physical evidence relevant to the case, and reports of laboratory tests or findings and opinions of experts:

6) Make available statements allegedly made by the defendant or any co-defendants, if any;

7) Make available Grand Jury testimony relevant to this case;

8) Make inquiry to determine if any witness they intend to call has a criminal record or pending cases, and disclose the findings of the inquiry to the defendant;

9) Pursuant to Rule 609 (a) and (f), Texas Rules of Evidence, the defendant requests notice of the State's intent to impeach him with prior convictions in the event that he testifies, and further the defendant requests notice of the State's intent to offer impeaching evidence if _____ or _____ is called as a witness.

10) The defendant requests notice of the State's intent to use certified documents in evidence in the trial.

The above requests are made in the interest of justice.

**OMNIBUS PRETRIAL MOTION - Page 13**

104

Respectfully Submitted,

BRADLEY K. LOLLAR
Attorney For The Defendant
Bar Card 12508700
311 N. Market, Suite 300
Dallas, Texas 75202
Tel. (214) 672-9333

105

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION FOR DISCOVERY IN DEATH PENALTY CASE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above-styled and numbered case, by and through his attorney of record, and files this Motion for Discovery in Death Penalty Case and in support thereof would show:

I.

The Defendant moves this Court to order the State to produce and permit the inspection and analysis of and copying and/or photographing of, by or on behalf of the Defendant, the following designated items:

1. All evidence, whether written or oral, of the range and severity of the prior criminal record of the Defendant, including that as a juvenile. In this connection, the Defendant requests the Court to order the prosecuting authorities to tender all files and documents in their possession or under their control dealing with the prosecution of the Defendant in this case for any offenses other than the one which is the subject of the instant indictment.

_____√_GRANTED

_____ DENIED

In addition, the following requests are made:

(a)        Copies of all complaints, informations and indictments

106

previously filed against the Defendant for cases other than the above cause.

_____✓_ GRANTED

_____ DENIED

(b) Copies of statements of all witnesses secured in connection with the investigation of any prior cases against the Defendant.

_____✓_ GRANTED

_____ DENIED

(C) Copies of arrest reports and offense reports made in connection with the prosecution of any prior cases against the defendant.

_____✓_ GRANTED

_____ DENIED

(d) Copies of any statement of facts or transcription of a court reporter's notes of any prior trials or hearings in cases dealing with the prosecution of Defendant for any prior offense.

_____ GRANTED

_____✓_ DENIED

2. Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that the Defendant has previously expressed that he has committed or will commit any acts of violence.

_____✓_ GRANTED

_____ DENIED

3. Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that Defendant has at any time in his life expressed any of the following:

**107**

(a) A willingness to kill;

(b) A desire to kill;

(c) An ability to kill;

_____✓____ **GRANTED**

_____ **DENIED**

4. Any statement, whether written or oral, of any possible witness which indicates directly or indirectly that the Defendant has previously expressed anything that could reasonably be interpreted to mean that Defendant posed or poses a threat to society.

_____✓____ **GRANTED**

_____ **DENIED**

5. Any statements or admissions of the Defendant made to third parties which show or tend to show a propensity for acts of violence.

_____✓____ **GRANTED**

_____ **DENIED**

6. Any statements or admissions of the Defendant made to third parties which show or tend to show a propensity to pose a threat to society.

_____✓____ **GRANTED**

_____ **DENIED**

7. Any evidence, whether written or oral, of prior specific misconduct (including all of such incidents with a description of each detailing when and where the same occurred, who was involved, and the full names, addresses and telephone numbers of those persons involved) whether charged or not that might be interpreted as showing that Defendant has a propensity for violence or has in the past been violent.

_____✓____ **GRANTED**

_____ **DENIED**

**108**

8. Any evidence, whether written or oral, of prior specific misconduct ( including all of such incidents with a description of each detailing when and where the same occurred, who was involved, and the full names, addresses and telephone numbers of those persons involved) whether charged or not that might be interpreted as showing that Defendant poses a threat to society.

*except addresses*    ✓ GRANTED

_____ DENIED

9. Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to any efforts of the Defendant to rehabilitate himself.

✓ GRANTED

_____ ~~DENIED~~

10. Any evidence, whether written or oral, of Defendant's employment records, including statements of any witnesses relative to his performance of any job or jobs.

✓ GRANTED

_____ DENIED

11. Any evidence, whether written or oral, of Defendant's school records including statements of any witnesses relative to his performance or attendance at school or schools.

✓ GRANTED

_____ DENIED

12. Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to remorse in connection with the crime charged in the instant indictment, or any lack thereof.

_____ GRANTED

_____ DENIED

109

13. Any evidence, whether written or oral, including letters and statements of witnesses, but not limited thereto, which relates to whether or not the conduct of the Defendant might reasonably be anticipated to be altered in the future.

      ✓ **GRANTED**

      _____ **DENIED**

14. A copy of all records of Defendant's behavior while incarcerated at the Dallas County Jail, and at the Institutional Division of the Texas Department of Criminal Justice.

      ✓ **GRANTED**

      _____ **DENIED**

15. A copy of all records compiled and kept by the Dallas County Adult Probation Office and the Dallas County Juvenile Probation Department concerning Defendant's conduct as a probationer in all other cases.

      / **GRANTED**

      _____ **DENIED**

16. An opportunity to examine the files of the Dallas County District Attorney's Office for all cases in its possession in which Defendant has been the subject of prosecution, either as an adult or juvenile.

      ✓ **GRANTED**

      _____ **DENIED**

17. A list of the names, addresses, and telephone numbers of all persons the state intends to call as witnesses at the punishment phase of this trial.

      ✓ **GRANTED**

      _____ **DENIED**

18. All evidence in the prosecution's possession or available to the prosecution which is favorable to the Defendant on the issue of punishment, including but not limited

**110**

to evidence disclosing:

(a). The Defendant has no significant history of prior violent criminal activity;

(b). The offense was committed when the Defendant was under the influence of extreme mental or emotional disturbance;

(c). The victim was a participant in the Defendant's conduct;

(d). The Defendant was an accomplice and his participation was relatively minor;

(e). The Defendant acted under extreme duress or under the substantial domination of another person;

(f). The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and

(g). Partial or total negation of any evidence offered by the state in support of any alleged aggravating circumstance.

_____✓_GRANTED

_____ DENIED

19. Any other evidence of the circumstances of the crime or the character and record of another party to the crime that would tend to show that the other party was more culpable, more dominant, or more dangerous than the Defendant.

_____✓_GRANTED

_____ DENIED

20. Any other evidence that is probative of a negative answer to one or more of the special issues provided for by article 37.071§2(b) or an affirmative answer to the mitigation issue in article 37.071§2(e).

_____✓_GRANTED

_____ DENIED

111

21. Any other evidence of any aspect of the Defendant's character and record or the circumstances of the crime that may call for a sentence less than death.

_____✓_____ **GRANTED**

_____ **DENIED**

**II.**

In support of the Motion, the Defendant would show the Court as follows:

1. The items requested are in the exclusive possession, custody and control of the State of Texas or the United States Government by and through its agents, the police or the prosecuting attorney's office, and the Defendant has no other means of ascertaining the disclosures requested.

2. The items requested are not privileged.

3. The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5. In order for Defendant's counsel to effectively investigate and defend against any and all extraneous and/or unadjudicated acts of misconduct that the State may present at trial in this cause, counsel is entitled to discovery of such acts with sufficient notice. Granting Defendant's request for discovery will avoid any last minute investigation which may delay the trial and/or hinder Defendant's counsel from properly conducting voir dire and other responsibilities during trial.

6. Because both adjudicated and unadjudicated offenses are admissible in evidence in the punishment phases of a trial pursuant to art. 37.071, Tex. Code Crim. Proc. Ann., to deny the Defendant access to the evidence available to the State to sustain its burden of proof in this stage of the trial would deny the Defendant due process of law as guaranteed under the Fourteenth Amendment to the United States Constitution as well as the Defendant's rights under art. 39.14, Tex. Code Crim. Proc. Ann., article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution and the Fourth, Fifth, Sixth and Eighth

112

Amendments to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Motion for Discovery be granted in all things.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net

ATTORNEY FOR DEFENDANT

113

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____

Attorney for the Defendant

114

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing Motion made by the Defendant, and, after due consideration it is the judgement of the Court that the Motion be:

_____ GRANTED


_____ DENIED, TO WHICH RULING THE Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____

Judge Presiding


115

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION FOR THE STATE TO DISCLOSE NAMES AND ADDRESSES OF PERSONS OFFERING TESTIMONY UNDER TEXAS RULES OF EVIDENCE 702, 703, 705

---

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the Defendant, James Garfield Broadnax to ask this Court to order the State to provide Defense Counsel with the names and addresses of all persons the State intends to call that will offer evidence under Rules 702, 703, and 705 of the Texas Rules of Evidence. Defendant makes this request under the authority of Texas Code of Criminal Procedure, 39.14(b). In support of this motion the Defendant would respectfully show as follows:

### I.

The Defendant is charged with the capital murder. The State of Texas publicly announced they will seek the death penalty against the defendant.

### II.

It is likely the State of Texas will call one or more witnesses to offer their expert opinions during the trial of this case. The defendant requires notice of persons

116

that the State will call to offer evidence under Rules 702, 703, and 705 of the Texas Rules of Evidence because such persons will likely offer technical and complex evidence. A person may testify under Texas Rule of Evidence 702 only if he has "scientific, technical or other specialized knowledge." **Tex. R. Crim. Evid. 702.** Defense counsel can not offer effective assistance of counsel and prepare an articulate and viable defense regarding testimony involving scientific, technical, or specialized knowledge without some notice of what type of evidence is likely to be offered. Defense counsel cannot effectively cross examine any expert from any field put forth by the State without some prior warning of the subject area from which the expert will testify. Defense counsel would like to be knowledgeable enough to cross-examine any expert from any field of knowledge without advance notice or warning but alas, they are not. Fairness and substantial due process require the defendant be given notice of persons that the State will call to offer evidence under Rules 702, 703, and 705 of the Texas Rules of Evidence.

WHEREFORE, the defendant requests this Court order the State to provide Defense Counsel with the names and addresses of all persons the State intends to call that will offer evidence under Rules 702, 703, and 705 of the Texas Rules of Evidence. Defendant requests the Court order the State to provide such a list no later than twenty (20) days before the date the trial (voir dire) begins, in accord with art. 39.14(b) of the Texas Code of Criminal Procedure.

117

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
Bklollar@sbcglobal.net

118

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Motion for the State to Disclose Names and Addresses of Persons Offering Testimony Under Texas Rules of Evidence702, 703, and 705, was served on opposing counsel of the Dallas County District Attorney's Office.

_____
Attorney for the Defendant

119

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING


120

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO DISCOVER CRIMINAL RECORDS OF WITNESSES

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, Defendant in the above-entitled and numbered cause, by and through his undersigned attorney of record, and moves this Honorable Court to require the Dallas County District Attorney (the "District Attorney") and his office to make available to Defendant and his counsel, any and all criminal records which any of the State's witnesses, or possible witnesses, may have in this cause, and in support of such motion would show the Court as follows:

I.

The District Attorney's Office has access to the criminal records of all potential witnesses who may be called during the trial in this cause. Should any of the State's witnesses be guilty of criminal acts or misconduct, the Defendant could use these facts for impeachment purposes. Thus, if the State does not reveal these records to Defendant, the State will be secreting evidence that could alter the verdict in this case.

121

WHEREFORE, PREMISES CONSIDERED, Defendant moves this Honorable Court to require the District Attorney's Office to reveal any criminal records of any witness in this case whom the District Attorney's Office will or may call.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

122

## CERTIFICATE OF SERVICE

I hereby certify that on the ___2___ day of April, 2009, a true and correct copy of the foregoing Motion was hand-delivered to the offices of the Criminal District Attorney of Dallas County.

_____

Attorney for the Defendant

123

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

124

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION TO DISCOVER THE PORTIONS OF THE DEFENDANT'S STATEMENTS THAT THE STATE INTENDS TO USE AT TRIAL

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, Defendant, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code. Crim. Proc. Article 1.05, and Rules 1.06 and 1.07 of the Texas Rules of Criminal Evidence, files this Motion to Discover the Portions of the Defendant's Statement Which the State Intends to Use at Time of Trial and in support thereof would show the Court:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is in possession of statements allegedly made by the Defendant.

3. At the trial of this cause, it is anticipated that the State will seek to offer into evidence the alleged statements in order to convict the Defendant. Prior to its introduction, the State will, in all probability, seek to edit the alleged statement and redact portions of the statement.

00125

4.    In order to afford the Defendant effective assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Texas Constitution, defense counsel must know, prior to trial, what portions of the alleged statements the State will redact. Without knowing, prior to trial, the portions of the statements the State will redact, defense counsel will not be able to adequately prepare his defense to the allegations in the indictment.

5.    Defense counsel should be provided with a redacted copy of the statement well in advance of trial.

WHEREFORE, PREMISES CONSIDERED, the Defendant requests that this Motion be sustained and relief granted as prayed for herein.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

00126

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 2 day of April, 2009.

_Attorney for the Defendant

00127

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and forego ing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____

JUDGE PRESIDING

128

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION TO ALLOW INCARCERATED DEFENDANT ACCESS TO A HOT MEAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and moves this Court for an order allowing him access to a hot meal while incarcerated, and in support thereof, would show:

I.

Defendant is incarcerated in the Dallas County Jail and is being brought to Court each day for voir dire examination. This requires he be fed a cold bologna sandwich at lunch each day. On most days he is returned to his cell after the evening meal has been served, requiring that he be fed a cold sandwich. It is anticipated that voir dire will last several weeks. To deprive Defendant of a daily hot meal for that length of time constitutes cruel and unusual punishment.

II.

Defendant requests that he be permitted a daily hot meal, either at midday or evening during the time he is in trial for the above referenced matter.

00129

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion and enter an order granting him access to a daily hot meal during the days he is in Court in the above referenced matter and for such other relief as the Court deems appropriate.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net

ATTORNEY FOR DEFENDANT

00130

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ___ day of April, 2009.

_____

Attorney for the Defendant

00131

CAUSE NO. F08-24629–FY
CAUSE NO. F08-24667–FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

00132

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY OF VICTIM IMPACT TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion for Discovery of Victim Impact Testimony, and as grounds therefore would show:

I.

Defendant has filed his Motion in Limine Regarding Victim Character and Impact Evidence. Defendant contends that victim impact testimony is not admissible in this case. However, if the Court intends to allow such testimony, the Defendant has a right to discover the nature and scope of this testimony so that the Defendant may receive effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I §10 of the Texas Constitution.

II.

Due process as protected by the Fifth and Fourteenth Amendments, and Article I

00133

§19 of the Texas Constitution, as well as Article 1.04 of the Texas Code of Criminal Procedure dictates that this information be disclosed to the Defendant. The right to be informed of the nature of the accusation against the Defendant and the right to confront and effectively cross examine the witnesses against the Defendant, also as guaranteed by the Sixth Amendment to the United States Constitution, Article I §10 of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure provide authority for the Defendant's request that this information be disclosed.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net

ATTORNEY FOR DEFENDANT

134

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ____ day of April, 2009.

Attorney for the Defendant

00135

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

136

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION IN LIMINE REGARDING VICTIM CHARACTER AND IMPACT EVIDENCE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant in the above-styled and numbered case, by and through his attorney of record, and moves this Honorable Court to order the State to approach the bench and give him an opportunity for a hearing and to object to victim character or victim impact evidence and/or request a limiting instruction before such evidence is introduced before the jury. In support of this motion, Defendant would show:

### I.

Although there is nothing in the federal constitution that prohibits the State from introducing victim impact evidence at a capital sentencing trial, Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597 (1991), in Texas, such evidence must be relevant in order to be admissible. Tex. Code Crim. Proc. art. 37.071§2(a); Tex. R. Evid. 401, 402. Defendant would argue that any evidence of the victim's character or any evidence of the impact of this offense on the victim's family is not relevant to any issue that the jury is asked to decide at either phase of the trial of a capital case. In addition, Defendant would show that the prejudicial impact of such testimony would substantially outweigh the probative value thereof.

00137

## II.

Specifically, evidence of the victim's worth and the impact of the capital murder on members of her family is inadmissible because it is irrelevant to the special issue concerning future dangerousness. Armstrong v. State, 718 S.W.2d 686, 695-96 (Tex. Crim. App. 1985).

## III.

Defendant would argue that victim impact evidence and character evidence is also irrelevant to the Penry special issue. See, Ford v. State, 919 S.W.2d 107 (Tex. Crim. App. 1996)(Clinton, J., dissenting).

## IV.

Because it is irrelevant and therefore inadmissible, Defendant moves in limine that the State refrain from direct or indirect reference to the following matters, at voir dire, in the opening or closing statements, in the evidence portion of the trial and otherwise:

1.      Evidence or assertions that the deceased was peaceable, law-abiding, truthful, honest, a good person, a good family member, a good provider, or possessed positive personal qualities:

2.      Evidence or assertions about the deceased's personal characteristics which are irrelevant to the guilt/innocence of the Defendant or to his punishment;

3.      Evidence or assertions about the emotional impact of the crime on the family of the deceased;

4.      Evidence or assertions of the deceased's family members' opinions or characteristics of the alleged offense; and / or

5.      Evidence or assertions of the deceased's family members' opinions and characteristics of the Defendant.

## V.

If the Court does find that victim impact and character evidence is relevant to the Penry special issue, the defendant should have an opportunity to object that its probative value is substantially outweighed by its prejudicial impact before the jury hears it. The

00138

Defendant should also have an opportunity to request a limiting instruction that such evidence cannot be considered to answer any other special issue.

WHEREFORE, PREMISES CONSIDERED, the Court should order the State to approach the bench and give him an opportunity to object to victim character or victim impact evidence before the jury hears such evidence

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

139

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____
Attorney for the Defendant

140

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

141

CAUSE NO. F08–24629-FY

CAUSE NO. F08–24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION IN LIMINE REGARDING CHARACTER WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant in the above-styled and numbered case, by and through his attorney of record, and respectfully requests that the Court instruct the State not to mention, allude to, or refer in any manner to any character evidence concerning the Defendant in the presence of the jury until a hearing has been held outside the presence of the jury to determine the qualifications of any character witness, and in support of this motion Defendant would show the following:

I.

Defendant anticipates that the State will call witnesses to testify about the Defendant's character either at the guilt/innocence or, if necessary, the punishment phase of the trial.

II.

It is well settled that the opponent is entitled to test the qualifications of any character witness outside the presence of the jury. This rule is meant to prevent the receipt of incurably harmful evidence by the jury. See, Jones v. State, 641 S.W.2d 545, 551-52 (Tex. Crim. App. 1982).

142

WHEREFORE, PREMISES CONSIDERED, Defendant moves that the Court grant this Motion and hold a hearing outside the presence of the jury prior to the testimony of all character witnesses called by the state, so that the Defendant may test their qualifications to testify about the Defendant's character.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

143

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the ____ day of April, 2009.

_____

Attorney for the Defendant

144

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____  GRANTED

_____  DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

145

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, |
| | | TEXAS |

## MOTION IN LIMINE REGARDING PHOTOGRAPHS AND/OR VIDEOS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and moves the Court to order the State not to proffer crime scene photographs in the presence of the jury until the Court has conducted a hearing and had an opportunity to rule on their admissibility, and in support of such motion Defendant would show:

I.

The Defendant believes that at some point in the trial the State may attempt to introduce crime scene photographs and/or videos depicting the bodies of the complainants in the above referenced case..

II.

These crime scene photographs are highly prejudicial in that they would influence and inflame the jury to convict and punish the Defendant out of all proportion to their weight as probative evidence in a burglary o f a habitation case. For this reason, Defendant would be denied a fair trial if such photographs were admitted.

146

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion and order the State not to mention or allude to any such photographs, display any such photographs in the presence of the jury or proffer any such photographs without first advising the Court of this intention, so that the jury may be removed and a hearing held to determine the admissibility of the photographs.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

147

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ___2___ day of April, 2009.

_____
Attorney for the Defendant

148

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

149

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## DEFENDANT'S REQUEST FOR NOTICE OF EXTRANEOUS ACTS AND CHARACTER EVIDENCE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, in accordance with Rule 404(b) of the Texas Rules of Criminal Evidence and Article 37.07 §3(g) of the Texas Code of Criminal Procedure and requests in advance of trial reasonable notice of the intent of the State to introduce any evidence of Defendant's character or of extraneous acts alleged to have been committed by the Defendant herein.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

150

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorneys Office by personal delivery on the 2 day of April, 2009.

_____

Attorney for the Defendant

151

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____   GRANTED

_____   DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

152

CAUSE NO. F 08-24629-FY

CAUSE NO. F 08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

### DEFENDANT'S APPLICATION FOR PROBATION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause and represents that he has never before been convicted of a felony offense in this State or in any other state, or in the Federal jurisdiction, and he prays that in the event of conviction of a lesser-included offense in this cause that the imposition of sentence herein be suspended and that he be placed on probation as provided by law.

Respectfully submitted,

_____

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

153

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared James Garfield Broadnax, who being by me first duly sworn deposes and on his oath states that he is the defendant in the above cause, that he has read the contents of the foregoing Application for Probation, and that all matters and things in the foregoing Application for Probation are in all respects true and correct.

_____
Defendant

SUBSCRIBED AND SWORN TO before me this _____ day of April, 2009.

Gary Fitzpatrick
DISTRICT CLERK, Dallas County, Texas

By _____
    Deputy District Clerk

154

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ___ day of April, 2009.

_____
Attorney for the Defendant

155

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

156

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## MOTION FOR DISCOVERY, PRODUCTION AND INSPECTION OF EVIDENCE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion for Discovery, Production, and Inspection of Evidence and in support thereof would show the Court as follows:

I.

The Defendant moves the Court to order the District Attorney to produce and permit the inspection of and the copying and/or photographing of, by or on behalf of the Defendant, the following designated items :

A. STATEMENTS OF DEFENDANT

1. All confessions, admissions and statements, in writing, signed by the Defendant, in connection with this offense with which the Defendant is hereby indicted.

_____GRANTED

_____DENIED

157

2. All confessions, admissions and statements, oral in nature and set down and preserved under Article 38.22 of the Texas Code of Criminal Procedure, made by the Defendant in connection with the offense with which the Defendant is hereby indicted.

_____GRANTED

_____DENIED

3. All oral, written or recorded statements of the Defendant, and memoranda of said statements made to any investigating officer or any member of any law enforcement agency, or to any third party, which are in the possession of or within the knowledge of the District Attorney's Office or any agent thereof, including any law enforcement agency.

_____GRANTED

_____DENIED

4. All oral and written statements made by the Defendant before the Grand Jury and transcribed by a reporter, in connection with the offense with which the Defendant is herein indicted.

_____GRANTED

_____DENIED

5. All handwritten and typed notes made by all law enforcement officers prior to, during and after the Defendant was interrogated which concern any confessions, admissions or statements made by the Defendant to law enforcement officers concerning this case.

_____GRANTED

_____DENIED

6. Any written or electronically recorded waiver alleged by the State to have been signed by the Defendant concerning the Defendant's right to counsel prior to the making of any written or oral statements.

158

_____GRANTED

_____DENIED

## B. WITNESSES AND THEIR STATEMENTS

7. The names, addresses, and telephone numbers of all witnesses that the State in good faith expects to call in its case in chief and in rebuttal, during both the guilt/innocence stage and the punishment stage of Defendant's trial.

_____GRANTED

_____DENIED

8. The names, addresses and telephone numbers of all persons interviewed by any employee, agent, or official of the State of Texas or subdivision thereof, or the United States government, concerning this case who in reasonable likelihood may not be used as a witness at the trial of this case, but who may have knowledge of facts material to the guilt or innocence of the Defendant or his reputation or criminal record, if any.

_____GRANTED

_____DENIED

9. The names of all subjects who were interrogated and/or arrested in conjunction with this offense, including their respective names, addresses, telephone numbers, occupations, physical descriptions and photographs.

_____GRANTED

_____DENIED

10. Any statements, whether written or oral, by the Defendant or any Co-defendant or Co-conspirator, either indicted or unindicted, which the State of Texas intends to introduce to show the existence of a conspiracy or evidence of acting in concert, the date of such statements or evidence, the time of such statements or evidence, and the place where such statements or evidence took place.

_____GRANTED

159

_____DENIED

11. All confessions, admissions or statements given by co-defendants, parties, accomplices or co-conspirators which the state intends to offer into evidence in Defendant's trial.

_____GRANTED

_____DENIED

12. All statements made by any party or witness to this alleged offense, in the possession of or within the knowledge of the District Attorney or any of his agents, including any law enforcement agency, whether such statements were written or oral, which might in any manner be material to either the guilt or innocence of the Defendant or to the punishment, if any, to be set in this case.

_____GRANTED

_____DENIED

13. All writings used to refresh the recollection of witnesses, as provided in Rule 611 of the Texas Rules of Criminal Evidence.

_____GRANTED

_____DENIED

14. The names and addresses of all persons who testified at the Grand Jury proceedings which culminated in Defendant's indictment in this case.

_____GRANTED

_____DENIED

15. A written transcription of the testimony of all of the witnesses who appeared and testified before the Grand Jury regarding the facts of this case; or in the alternative, that the Court order the prosecutor to immediately order said transcription of all of said testimony in order that it will be available and in the possession of the prosecutor at time of trial. In further support of this request, the Defendant submits the following particularized needs:

161

a. To cross examine and impeach said witness;

b. To discover prior inconsistent statements;

c. To test the credibility of said witness;

d. To test the recollection of said witness.

_____GRANTED

_____DENIED


## C. OBJECTS OR TANGIBLE THINGS

16. All objects and tangible property now in the possession of the State or its agents and alleged by the State to have been taken or used by the Defendant or any Co-conspirator during the course of the commission of the offense with which the Defendant is herein indicted.

_____GRANTED

_____DENIED


17. All weapons alleged by the State to have been used by the Defendant, co-defendants, co-conspirators, parties, accomplices, complainants or witnesses in this case, including ammunition, shells, cartridges, bullets, slugs, wadding, projectiles, missiles, and fragments recovered from the scene or any person.

_____GRANTED

_____DE-NIED


18. All articles of clothing, including shirts, pants, undergarments and shoes allegedly belonging to the Defendant or to the victim which the State intends to introduce as evidence in the trial.

_____GRANTED

_____DENIED


162

19. All contraband drugs, controlled substances and paraphernalia which were seized as a result of the investigation of this case in order to permit the Defendant to have an opportunity to examine the same and to obtain an expert to examine, test, weigh and inspect said evidence.

_____GRANTED

_____DENIED

20. All video tapes, documents, papers, books, accounts, letters, objects and tangible things which are the property of the Defendant and which are in the possession, custody and control of the State.

_____GRANTED

_____DENIED

21. All physical evidence in possession or control of the state which the state intends to offer at trial in this case.

_____GRANTED

_____DENIED

22. A complete inventory of all items taken from the crime scene(s) or items that have been linked to the crime scene(s) or to the deceased or to either the Defendant or any co-defendant, or any person acting with the Defendant or any co-defendant in this case. Defendant would further request that the court order the state in its inventory to provide an itemization of the person from which the item was seized, the date it was seized, and the place that it was seized from, as well as any indication that latent fingerprints were lifted or attempted to be lifted from the item, and the person identified as having made those fingerprints, if any.

23. All search and arrest warrants and affidavits in support thereof together with any consent to search used or exhibited at the time of the arrest of the Defendant or in the investigation of the offense for which Defendant has been indicted.

163

_____GRANTED

_____DENIED


24. All recorded incoming telephone calls to "911" or the sheriff's office or the police station requesting assistance at the time this incident was reported.

_____GRANTED

_____DENIED


25. All recorded communications between the dispatcher and law enforcement agents who were called to the scene in this case.

_____GRANTED

_____DENIED


## D. PHOTOGRAPHS

26. All photographs, drawings and charts made by the State or any agent thereof, including any law enforcement agency, which were made with reference to this case, including but not limited to all photographs, drawings and charts of the scene of the crime and the scene of the Defendant's arrest.

_____GRANTED

_____DENIED


27. All photographic negative prints whether or not heretofore developed by the agent of the District Attorney or any law enforcement agency, which were made in the investigation of this case.

_____GRANTED

_____DENIED


28. All photographs of suspects which were shown to all witnesses to the alleged offense, concerning the identity of the perpetrator of the offense for which the Defendant has been indicted.

164

_____GRANTED

_____DENIED

29. All photographs of the Defendant which were used in conjunction with the investigation of this case, including any photographs which may have been shown by any law enforcement officer to any potential witness in this case.

_____GRANTED

_____DENIED

## E. REPORTS

30. All fingerprints, palm prints, footprints, tool marks, and tire tracks, and reports conducted with respect to said prints and tracks, of all persons and vehicles which were obtained from the scene of the alleged offense for which the Defendant is herein indicted.

_____GRANTED

_____DENIED

31. All reports of scientific tests, experiments and comparisons, and all other reports of experts and the name, address, and telephone number of each such person who made such report or performed such test, experiment or comparison, including but not limited to reports pertaining to weapons, bullets, shots, waddings, cartridge cases, tool marks, blood, bodily fluids, breath, urine, hair, threads, drugs and controlled substances, fingerprints, and medical or psychological examinations.

_____GRANTED

_____DENIED

32. A list of the names, addresses and professions of all expert witnesses the prosecution intends to call at trial, along with each expert's qualifications, the subject and a description of his or her contemplated testimony, and his or her report.

_____GRANTED

_____DENIED

165

33. All autopsy reports based on an examination of the decedent.

_____GRANTED

_____DENIED

34. All medical reports which show or tend to show the physical condition of the victim at or about the time of the commission of the alleged offense.

_____GRANTED

_____DENIED

F. LINE-UPS

35. All photographs made of all line-ups conducted in this case, including the line-up wherein the Defendant was one of the participants.

_____GRANTED

_____DENIED

36. The names and addresses of any person who was shown line-ups or photographs or showups of any suspects, including the Defendant, whether or not Defendant was identified.

_____GRANTED

_____DENIED

37. The police form used by law enforcement authorities to identify all participants in the line-up wherein the Defendant was a participant, which includes information as to each participant in the line-up and as to each witness who was present at said line-up.

_____GRANTED

_____DENIED

38. A copy of the witness' line-up identification form given to each witness who

166

attended the line-up wherein the Defendant was a participant in this case.

_____GRANTED

_____DENIED

### G. PRIOR CRIMINAL RECORDS AND OTHER WITNESS INFORMATION

39. The prior criminal record of the following persons:

a. The Defendant,

b. Each Co-conspirator,

c. The Decedents,

d. Each Informant,

e. All State's Witnesses;

Including all arrests and convictions, whether as a juvenile or as a adult, including but not limited to:

a. All felony convictions and all misdemeanor convictions involving moral turpitude;

b. All felony convictions and all misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence;

c. All felony and misdemeanor cases which have resulted in the person being placed on probation, wherein the period of probation has not expired;

d. All pending felony and misdemeanor offenses.

Furthermore, the State should be ordered to request the proper law enforcement authorities to obtain a full and complete criminal record of all such witnesses and reveal same to the Defendant and the State should not be permitted to respond to this motion by advising the Court that the prosecutor does not have any indication in his file of any prior criminal record of such witnesses.

_____GRANTED

_____DENIED

40. Any deals, arrangements, agreements, threats, payments, or promises made for any witness for the State in this case which could conceivably influence the testimony of such

167

witness.

          _____GRANTED

          _____DENIED

41. Any evidence as to the competency of any prospective witness, including a history of mental illness or psychiatric care which the State may be aware of.

          _____GRANTED

          _____DENIED

## H. EXCULPATORY EVIDENCE

42. Any evidence in any form which is in any way exculpatory or favorable to the Defendant.

          _____GRANTED

          _____DENIED

## I. THE LOCATION OF RECOVERY

43. The prosecutor should be required to identify the location of recovery, the time of recovery, and the name of the person who recovered each item provided to the Defendant pursuant to this Motion for Discovery. Such information is necessary to determine whether or not such evidence is objectionable at the time of trial on the grounds that the evidence has not been properly identified or that the chain of custody has not been properly proved or that the evidence was taken in violation of the Defendant's rights under the laws and Constitution of the State of Texas and the Constitution of the United States.

          _____GRANTED

          _____DENIED

## II.

In further support hereof, the Defendant would show this Court that the production of all of the above evidence is the only fair and proper method of showing the good faith of

168

the District Attorney in this case, the truth of all such matters which the District Attorney intends to introduce in evidence against the Defendant, and to insure that the Defendant has adequate time to inspect, examine, and test all of such evidence for its respective validity, authenticity and identity.

### III.

In support of this motion, the Defendant would show the Court as follows:

1. The items requested are in the exclusive possession, knowledge, custody or control of the State of Texas by and through its agents, and the Defendant has no other means of ascertaining the disclosures requested.

2. The items requested are not privileged.

3. The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5. That absent such discovery the Defendant's rights under Article 39.14 of the Texas Code of Criminal Procedure, Article 1, Sections 10 and 19 of the Constitution of the State of Texas.

6. That absent such discovery the Defendant's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America will be violated to his irreparable injury and thus deprive the Defendant of a fair trial herein.

169

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that this Honorable Court will grant this the Defendant's Motion for Discovery, Production and Inspection of Evidence in all things, or in the alternative, that this Court will set this matter down for a hearing prior to trial on the merits and that at such hearing this motion will be in all things granted.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

170

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion  was served on the Dallas County District Attorney's Office by personal delivery on the ____ day of April, 2009.

Attorney for the Defendant

171

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

## MOTION IN LIMINE REGARDING PRIOR CONVICTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and respectfully requests that the Court instruct the State not to mention, allude to, or refer to in any manner any prior convictions or alleged violations of the law by the Defendant in this cause in the presence of the jury until a hearing has been held outside the presence of the jury to determine the following:

1. Whether the conviction is either a felony or a misdemeanor involving moral turpitude;

2. Whether the conviction occurred at a time so remote as to have no bearing on the present credibility of said witness;

3. Whether the Defendant now on trial is the same person so previously convicted;

4. Whether the prior conviction is a final conviction, and no direct appeal therefrom is pending in the state or federal appellate courts;

5. Whether the prior conviction resulted in the probation of a sentence which was

172

previously discharged;

6. Whether the prior conviction was obtained at a time when the Defendant was indigent and without counsel and in the absence of an effective waiver of counsel;

7. Whether the probative value of admitting this conviction for the purpose of attacking the witness' credibility outweighs its prejudicial effect to the Defendant. Theus v. State, 845 S.W.2d 874 (Tex. Crim. App. 1992); Tex. R. Crim. Evid. 609 (Vernon Special Pamphlet 1994).

WHEREFORE, PREMISES CONSIDERED, the Defendant requests that this motion be in all things granted.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

173

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009..

_____

Attorney for the Defendant

174

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

175

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## MOTION REQUESTING NOTICE OF STATE'S INTENT TO USE PRIOR CONVICTIONS FOR IMPEACHMENT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause and moves the Court to require the State of provide advance written notice of intent to use any prior convictions for the impeachment of James Garfield Broadnax and in support of this motion the Defendant would show:

I.

Such notice is required by rule 609(f) of the Texas Rules of Criminal Evidence.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be in all things granted.

176

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Suite 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

177

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____
Attorney for the Defendant

178

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____  GRANTED

_____  DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.


_____

JUDGE PRESIDING


179

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, Defendant in the above-styled cause, by and through Defendant's attorneys, and respectfully requests the Court to hold a hearing in advance of the trial as set out in Article 28.01, V.A.C.C.P., on the admissibility of: (1) statements made by the Defendant; (2) acts tantamount to statements made by the Defendant; (3) statements made in the presence of the Defendant which Defendant did not deny in response; or (4) any physical items, statements or witnesses obtained as a result of same, or evidence/testimony discovered from same. In support of this Motion, Defendant respectfully shows the Court as follows:

I.

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN
OR ORAL OR EVIDENCE RESULTING FROM SAME, Page 1

180

Defendant makes this request based upon the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 9, 10 and 19 of the Texas Constitution and Article 15.01, 38.21, 38.22 and 38.23, V.A.C.C.P., a defendant's right to testify before the judge and out of the presence of the jury on the facts surrounding the obtaining of a confessions claimed to be involuntary as set out in Jackson v. Denno, 378 U.S. 368 (1964), and the doctrine of the fruit of the poison tree in Wong Sun v. U.S., 371 U.S. 471 (1963).

II.

Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

III.

In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, involuntary, and are therefore inadmissible.

IV.

THIS MOTION IS SOUGHT BY THE DEFENDANT AS A CONTINUING MOTION TO SUPPRESS ANY AND ALL STATEMENTS OR ACTS. IT IS SOUGHT TO SUPPRESS EVIDENCE AS THE SAME EXISTS AT THE TIME OF THE HEARING ON THIS MOTION TO SUPPRESS, OR AT ANY TIME DURING TRIAL WHEN EVIDENCE APPEARS, SUBSEQUENT TO THE INITIAL SUPPRESSION HEARING, TO BE THE SUBJECT OF THIS MOTION. DEFENDANT MOVES THIS HONORABLE COURT TO CONSIDER THIS MOTION

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN
OR ORAL OR EVIDENCE RESULTING FROM SAME, Page 2

181

AS CONTINUING FROM THE DATE OF FILING TO THE TIME THIS CASE IS FINALLY CONCURRED.

V.

Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury, should this case be tried to a jury, concerning: (1) statements made by the Defendant; (2) acts tantamount to statements made by the Defendant; and (3) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminative or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

VI.

It is further urged, if the hearing is held prior to the empaneling of the jury, that the jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. The judicial preference for holding a pretrial hearing to prevent the stopping of a trial midstream to hold a hearing was endorsed by the Court of Criminal Appeals in Martinez vs. State, 437 S.W.2d 842 at 849 (1969). Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful voir dire regarding the prospective jurors' attitudes toward a confession when the same may, if fact, be held inadmissible by the Court.

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN
OR ORAL OR EVIDENCE RESULTING FROM SAME, Page 3

182

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility of any statements by Defendant, at the conclusion of which, such statements by Defendant be ruled inadmissible.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN
OR ORAL OR EVIDENCE RESULTING FROM SAME, Page 4

183

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of April, 2009.

_____
Attorney for the Defendant

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN
OR ORAL OR EVIDENCE RESULTING FROM SAME, Page 5

184

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| VS. | §<br>§<br>§ | DISTRICT COURT # 7 |
| JAMES GARFIELD BROADNAX | §<br>§ | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

185

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION FOR LIMITING INSTRUCTIONS TO THE JURY - EXTRANEOUS OFFENSES

COMES NOW James Garfield Broadnax, the Defendant, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. C. Crim. Proc. Articles 1.05, 1.06 and 1.09 and Rule 404(b) of the Texas Rules of Evidence and move the Court for jury instructions concerning extraneous offenses and in support thereof would show:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty.

3. If the State intends to introduce in its case-in-chief evidence of other crimes, wrongs or acts other than that arising in the same transaction, the Defendant hereby gives timely notice of its right and request to have reasonable notice of such acts, in advance of trial pursuant to

186

Texas Rule of Evidence 404(b). Further, the State should be required to advise the Court and counsel for the Defendant of the specific purpose for which such evidence is being offered. Additionally, notice of any other unadjudicated offenses that the State intends to offer evidence of during the penalty phase of the trial should be given in order to avoid any unfair surprise to this Defendant.

4. Movant requests the Court, in performing its "gatekeeping" function with respect to extraneous offenses, to hold a hearing, in advance of trial, to determine if the State's evidence "clearly proves that an offense was committed and that the Defendant was the perpetrator". *Kemp v. State,* 846 S.W. 2d 289, 307 (Tex. Crim. App. 1992) and *Kutzer v. State,* 994 S.W. 2d 180, 1888 (Tex. Crim. App. 1999). In doing so, the Court should consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. The admission of extraneous acts during a capital trial must be closely scrutinized. *Davis v. State,* 597 S.W. 2d 358, 361 (Tex. Crim. App. 1980).

5. Movant requests that if evidence of extraneous, unadjudicated offenses is admitted, that immediately after the admission, the jury be orally instructed that the evidence is to be considered for the limited purpose for which the evidence has been found to be admissible. Further, that the jury cannot consider against the Defendant such collateral crimes, unless it has been shown to their satisfaction, beyond a reasonable doubt, that the Defendant is guilty of those acts. *Mitchell v. State,* 931 S.W. 2d 950, 954 (Tex. Crim. App. 1996) and *Ex Parte Varelas,* _____ S.W. 3d _____, (Tex. Crim. App. 2001).

187

6. Movant further requests that when the jury is instructed upon the whole case, that it further be given written instructions that (a) the evidence of extraneous crimes, wrongs or acts can only be considered for the purpose for which the Court admitted such evidence and (b) it cannot consider the crimes, wrongs or acts against the Defendant unless it believes, beyond a reasonable doubt, that the acts were committed and the defendant committed those acts. *Harrell v. State*, 884 S.W. 2d 154, 157 (Tex. Crim. App. 1994).

7. Should the State intend to offer evidence of extraneous, unadjudicated offenses during the penalty phase of the trial, the Court, in addition to the other "gatekeeping" functions should determine if such evidence is relevant to the Defendant's "deathworthiness". *Rachal v. State*, 917 S.W. 2d 799, 807 (Tex. Crim. App. 1996).

8. Movant further requests that the jury be instructed that during any penalty phase deliberations they are not to consider the Defendant's guilt of this indicted charge in determining if he was the perpetrator of the extraneous acts.

In submitting and arguing this motion to the Court, the Defendant does not waive any of his objections to the blatantly unconstitutional practice of allowing the state to use evidence of unadjudicated conduct in its attempt to secure a sentence of death.

188

Wherefore premises considered Movant prays that upon hearing, this Court sustain this Motion and relief be granted as prayed for herein.

Respectfully submitted,

Bradley K. Lollar
Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
Bklollar@sbcglobal.net

189

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _____ day of _____, 2009.

_____
Attorney for the Defendant

**190**

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
|---|---|---|
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---
## ORDER
---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING


191

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER <u>MOSLEY VS. STATE</u>

---

COMES NOW, James Garfield Broadnax, the Defendant, by and through his attorneys of record, and files this his Motion Regarding Victim Character/Impact Testimony After *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), and as grounds therefor would show the following:

1. The Court of Criminal Appeals has issued a significant opinion on the issue of victim impact and character evidence. In that opinion, written by Judge Keller, the Court informs us that:

> Our jurisprudence in this area has been somewhat inconsistent and confusing at times. We take this opportunity to announce a consistent, if not always clear-cut rule to be followed in future cases: Both victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the Defendant, and as rebuttal to the defendant's mitigating evidence. Rule 403 limits the admissibility of such evidence when the evidence predominantly encourages comparisons based upon the greater or lesser worth or morality of the victim. When the focus of the evidence shifts from

192

humanizing the victim and illustrating the harm caused by the defendant to measuring the worth of the victim compared to other members of society then the State exceeds the bounds of permissible testimony. We recognize that this standard does not draw a bright and easy line for determining when evidence concerning the victim is admissible and when it is not. Trial judges should exercise their sound discretion in permitting some evidence about the victim's character and the impact on others' lives while limiting the amount and scope of such testimony. Considerations in determining whether testimony should be excluded under Rule 403 should include the nature of the testimony, the relationship between the witness and the victim, the amount of testimony to be introduced, and the availability of other testimony relating to victim impact and character. And, mitigating evidence introduced by the defendant may also be considered in evaluating whether the State may subsequently offer victim-related testimony.

983 S.W.2d at 262 (footnote omitted).

## 2.   VICTIMS DEFINED BY INDICTMENT

This opinion did not broaden the right of the State to include victim impact or character evidence about people not named in the indictment. Only those named in the indictment are properly considered as "victims." *See Cantu v. State* 939 S.W.2d 627, 637 (Tex. Crim. App. 1997).

## 3. DISCOVERY AND HEARING NECESSARY

Counsel requests that the State be required to detail in writing exactly which witness will testify and the substance of the testimony regarding victim impact. Counsel further requests that the Court conduct a pretrial hearing to evaluate each witness's testimony and demeanor. Only with this pretrial disclosure and hearing can the Court properly engage in the balancing test now required by the Court of Criminal Appeals in *Mosley*, and only in that manner can Counsel render effective assistance in deciding whether to waive submission of the mitigation special issue to prevent the State's introducing the victim testimony.

193

4. *BRADY* IMPLICATED

If the State attempts to offer victim impact or character evidence to create a sympathetic picture of the victims, the State is also obligated to disclose, and indeed to discover, any information which is to the contrary. The "anti–victim impact" evidence sought includes conviction and arrest records, problems in school, work or family, and any other character-related information which, in fairness, might rebut the good character or impact evidence as offered by the State. This evidence must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Motion be in all things sustained.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bkdollar@sbcglobal.net

194

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been furnished to counsel for the State by hand-delivery of a copy of same this the ____ day of _____, 2009.

_____
Attorney for the Defendant

195

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____  GRANTED

_____  DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____

JUDGE PRESIDING


196

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION IN LIMINE REGARDING STATEMENTS BY THE DEFENDANT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause, by and through the attorney of record, and respectfully requests this honorable Court to instruct the prosecution not to mention, allude to, or refer to, directly or indirectly, during any stage of this trial, including but not limited to the voir dire examination, opening statements, and the direct and cross-examination of any witness, the fact that the Defendant herein may have made a statement immediately after he was detained and/or arrested in this cause, to any law enforcement official or agent thereof, or to the media, until such time as a hearing has been conducted out of the hearing of the jury to determine the admissibility of any such testimony.

The Defendant further requests that this Court instruct the prosecution to advise the Court prior to eliciting any such testimony in order for the Court to excuse the jury and conduct a hearing outside the presence of the jury, without the necessity of counsel for the Defendant having to object to said testimony and request that the hearing be held outside the presence of the jury.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the honorable Court will grant this his Motion In Limine.

197

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

198

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING


200

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion in Limine was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____

Attorney for the Defendant

199

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

## MOTION TO SUPPRESS STATEMENTS MADE TO THE MEDIA

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax, the Defendant in the above-styled and numbered cause, by and through his attorney of record, and moves this Court to excuse the jury before any evidence of an admission or confession by the Defendant to any media representative/agent of the State, whether written or oral, is admitted in order to determine the admissibility of such statements. Defendant makes this request based on the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, 13 and 19 of the Texas Constitution and Articles 38.21 through 38.23 of the Texas Code of Criminal Procedure. In support of this motion, Defendant would show:

I.

It is anticipated that the State of Texas will attempt to introduce evidence statements made to the media by the defendant since the occurrence of his arrest.

At the time these statements were made by the Defendant, he was under arrest, in custody and substantially deprived of his freedom.

201

II.

These statements were made without the Defendant being sufficiently warned of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Article 38.22 of the Texas Code of Criminal Procedure.

III.

These statements were involuntary and the result of inducement, pressure and coercion by law enforcement agents, specifically, officers of the Dallas County Sheriff's office..

IV.

These statements were taken in violation of the Defendant's right to remain silent under the United States and Texas Constitutions.

V.

These statements were taken in violation of the Defendant's right to counsel under the United States and Texas Constitutions.

These statements were made after the defendant had invoked his right to counsel upon being magistrated in the Dallas County jail and after the Magistrate Judge had approved appointment of counsel, but before counsel had been appointed.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this motion be granted and all statements make by him to any law enforcement agent be suppressed. Defendant further requests that the Court make and file written Findings of Fact and Conclusions of Law regarding these matters.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce Street, Suite 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net
ATTORNEY FOR DEFENDANT

202

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the ___ day of April, 2009.

_____

Attorney for the Defendant

203

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

204

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 of |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

---

## MOTION FOR DISCOVERY RELATED TO DNA

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax the Defendant in the above-styled and numbered cause, by and through his attorney of record, and files this Motion for Discovery, in the event that the District Attorney intends to offer any evidence regarding DNA:

I.

Defendant moves the Court, pursuant to Article 39.14 of the Texas Code of Criminal Procedure, to order the District Attorney to permit defense counsel to inspect and copy, or in the alternative, to order the District Attorney to provide copies to the Defendant of the following items:

1. Copies of the regular format, running conditions or protocol used by any laboratory for the techniques employed in this case.

2. Copies of all log books, diagrams, charts, notes, memoranda and worksheets regarding test results and analysis of evidence in this case.

205

3. Copies of all laboratory records of quality control of all blind trials or proficiency tests conducted by any laboratory involved in this case.

II.

In support of this Motion, the Defendant would show the Court the following:

1. The items requested are in the exclusive possession, custody and control of the State of Texas by and through its agents, the police, or the prosecuting attorney's office, and the Defendant has no other means of ascertaining the disclosures requested.

2. The items requested are not privileged.

3. The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5. That absent such discovery the Defendant's rights under Article 39.14 of the Texas Code of Criminal Procedure, Article I, Section 10 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America will be violated, to his irreparable injury and thus deprive the Defendant of a fair trial herein.

III.

The Defendant respectfully requests this Court to make this Motion applicable to any testing agency which has conducted, or been involved or associated with conducting tests on evidence in the case pending against the Defendant herein.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be granted.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201

206

(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing

Motion was served on the Dallas County District Attorney's Office by personal delivery

on the _____ day of April, 2009.

Attorney for the Defendant

208

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| VS. | §<br>§ | DISTRICT COURT # 7 |
| JAMES GARFIELD BROADNAX | §<br>§ | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing Motion made by the Defendant, and, after due consideration it is the judgement of the Court that the Motion be:

_____ GRANTED

_____ DENIED, TO WHICH RULING THE Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
Judge Presiding

209

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 OF |
| | § | |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY, PRODUCTION AND RULE 702 HEARING

(Defendant's motion asking the Court to require the State to provide to the Court and Counsel for the Defendant documentation that is relevant to the Court's determination of the admissibility of opinion testimony, a pre-trial hearing to determine the admissibility of that testimony and other relief)

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes James Garfield Broadnax, attorney for the Defendant, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. R. Crim.P. 39.14 (a) and (b) and Tex.R.Evid. 104, 702, 703 and 705, requests that the court to order the State to provide to the defendant any documentation that is relevant to the Court's determination of the admissibility of opinion testimony and requests a pre-trial hearing to determine the admissibility of that testimony. In support thereof, the Defendant would show the following:

210

1. The Defendant has been indicted by the Dallas County grand jury for the offense of capital murder;

2. The State is seeking the death penalty;

3. The Defendant anticipates that during trial of this case the State will call one or more witnesses who will offer opinions that are either scientific in nature or are based upon personal training or experience. The admissibility of such opinions are governed by Tex.R Evid. 702, 703, 705 and *Daubert v. Merrell Dow*, 113 S.Ct. 2786 (1993), *Kumho Tire Company v. Carmichael*, 119 S.Ct. 1167 (1999), *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992) and *Jordan v. State* 928 S.W.2d 550 (Tex.Crim.App.1996) and *Nenno v. State*, 970 S.W. 2d 549 (Tex. Crim. App. 1998).

4. The proponent of scientific evidence bears the burden of demonstrating by clear and convincing evidence that the evidence is reliable. This is accomplished by showing : (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory and (3) proper application of the technique on the occasion in question. *Kelly, supra.*

211

Prior to the offer of scientific evidence, the trial court must conduct a hearing outside the presence of the jury to determine whether the proponent has established all three criteria. This pre-admission determination is required whether the science at issue is novel or well established. *Jackson v. State*, 17 S.W. 3rd 664 (Tex.Crim.App. 2000).

5. The United States Supreme Court has said:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert., supra* at page 482;

212

6. This Court must find that the opinion evidence is not only reliable, but that it is relevant under Tex. R. Evid. 401, that it meets the standard set in Rule 702 and that it "assists the trier of fact [in] understanding the evidence [in] determining a fact in issue." If the trial judge finds the proposed expert testimony meets both the Rule 401 and Rule 702 requirements, then the judge must perform a Rule 403 analysis to determine whether the evidence should, in fact, be presented to the jury. *Morales v State*, 32 S.W. 3d 862 (Tex.Crim.App. 2000) at page 6;

This Court is the "gatekeeper" that must screen expert testimony for scientific reliability. Evidentiary reliability is based on scientific validity. *Jordan, supra at page 6;*

7. The Texas Court of Criminal Appeals, identified the following factors that the trial judge could consider in performing its "gatekeeper function":

(a) the extent to which the underlying scientific theory and technique are accepted, as valid, by the relevant scientific community, if such a community can be ascertained;

(b) the qualifications of the expert(s) testifying;

213

(c) the existence of literature supporting or rejecting the underlying scientific theory and technique; specifically, this Court should be provided citations to empirical studies supporting the opinion and citations to articles or chapters in scientific treatises or journals supporting the opinion.

The Nenno Court, at page 562, said:

"To the extent that a fact finder could decide that the absence of peer review casts doubt on the credibility of the testimony, such affects the weight of the evidence rather than its admissibility"

(d) the potential rate of error of the technique;

(e) the availability of other experts to test and evaluate the technique;

(f) the clarity with which the underlying scientific theory and technique can be explained to the court;

214

(g) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly,* at page 573

8. Should the Court determine that the testimony to be offered is in a field of science that is based upon experience and training, as opposed to a scientific method, the Court's review of the reliability of the science is even more important and the Court must find:

(a) whether the field of expertise is a legitimate one;

(b) whether the subject matter of the expert's testimony is within the scope of that field; and

(c) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Nenno,* at page 561;

9. The Court of Criminal Appeals in *Nenno v. State*, 970 S.W.2s 549 (Tex. Crim.App.1998) said that not only were the criteria described in *Kelly, supra* (peer review, rate of error, etc.) not categorically ruled out when reviewing the reliability of

215

opinions based on "soft science" but in addition, the Court listed the following **additional** criteria for the trial court to consider:

(i)    interviews conducted by the witness while in the field in which he is to express and opinion;

(ii)   the facts of the cases in which he conducted those interviews;

(iii)  statistical research performed in the field in which the witness is to express an opinion. Specifically, the witness should provide to the Court data collected by the witness or those under his or her supervision and provide the data collection instruments that were used, the data collection procedures and the statistical analysis applied to the date in forming the opinion to be proffered.

10.    The United States Supreme Court has held that the reliability standard announced in *Daubert* applies to all expert testimony regardless of whether it is scientific expert testimony or clinical opinion expert testimony. *Kumho Tire Company v. Carmichael,*

216

119 S.Ct. 1167 (1999). All of the material that is sought by this motion is relevant to reliability of opinions based upon "soft or hard science" testimony. The Supreme Court of Texas has held that *Daubert*, and therefore *Robinson*, applies to all expert testimony–"Whether the expert would opine on economic valuation, **advertising psychology** (emphasis added), or engineering, application of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Gammill v. Jack Williams Chevrolet*, Inc., 972 S.W. 2d 713 (Tex. 1998).

11.   So as to aid the Court in its "gatekeeping" function to determine the reliability of the offered opinion, the State should be required to provide the Court, at least 30 days prior to trial, the following:

(a) a concise and specific statement of each expert opinion the State intends to introduce at trial;

(b) the name, address and curriculum vita of each witness the State intends to qualify as an expert in order to present such testimony;

217

(c) all literature supporting or rejecting the underlying theory, methodology or technique used or relied upon by each State witness that will provide opinion testimony at trial. This information will allow the Court to determine if the relevant theory, methodology or technique has been subjected to review by the witnesses's peers and if the purported science is generally accepted in the field.

(d) the results of any tests that have been performed on the science or methodology relied upon by each State witness that will provide opinion testimony at trial. This information will allow the Court to determine if the basis for the opinion has been or can be subjected to testing to determine its reliability;

(e) the names of each person about whom a witness to be called by the state has expressed an opinion in the past and the opinion expressed as to each by the State's witness. This information will allow the Court to determine if a known or potential rate of error exists;

(f) a listing of any standards that control the technique or methodology used to arrive at any opinion that may be expressed at trial. This will allow the Court to

218

determine if there is an accepted protocol for gathering relevant information and interpreting that information in arriving at an opinion;

(g) the qualifications that allow the witnesses to form and express the opinions. This will allow the Court to determine if the opinion of the witness is based on scientific knowledge and training or is merely an opinion based on personal belief, bias or prejudice.

(h) a list of each interview conducted by the witness while in the field in which he is to express and opinion;

(i) the facts in each of the cases in which he conducted those interviews;

(j) statistical research performed in the field in which the witness is to express an opinion with supporting documentation as outlined in Paragraph 9 (iii) above.

12. If some of the described material goes to the weight that a jury should give the testimony, as is stated in Nenno, supra at page 562, then it should be provided to the

219

Defendant as impeachment material under *U.S. v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. In addition and as provided for in Tex. C.Crim. Proc. Art. 39.14(a) counsel for the Defendant should be given the opportunity to not only examine, but to copy any documents that are provided to the Court pursuant to its Order.

WHEREFORE, PREMISES CONSIDERED, Counsel for the Defendant prays that upon hearing of this motion the Court:

(1) Order the State to provide to the Court those documents that have been identified in this motion as being important to the Court's "gatekeeping" function;

(2) Order that counsel for the Defendant be allowed to photocopy each of the documents, if any, produced by the State in support of the witness's opinion testimony;

(3) Order that this matter be set for a pre-trial hearing at which the State be required to establish, under the cited authority, the reliability of any opinions that are to be offered at trial;

220

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the 2 day of April, 2009.

_____

Attorney for the Defendant

222

(4) Order that this hearing be set sufficiently in advance of trial so that the accused can

arrange for necessary rebuttal testimony should any of the State's opinion testimony be

found to be scientifically reliable and helpful to the trier of fact; and

(5) Such other and further relief to which the Defendant, or his counsel, may show

himself to be entitled.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
Bklollar@sbcglobal.net

221

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| VS. | §<br>§<br>§ | DISTRICT COURT # 7 |
| JAMES GARFIELD BROADNAX | §<br>§ | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing Motion made by the Defendant, and, after due consideration it is the judgement of the Court that the Motion be:

_____    GRANTED

_____    DENIED, TO WHICH RULING THE Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
Judge Presiding

223

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION TO PRESERVE RIGHT TO FILE ADDITIONAL MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Broadnax, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Preserve Right to File Other Motions, and for good and sufficient cause would show unto the Court as follows:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Defense counsel is not always able to present every pertinent motion at the initial pre-trial motion hearing in that, even with due diligence, they may not learn of the relevance of a particular motion until after said hearing; for example, a Motion to Quash due to a defective indictment based on a recent Court of Criminal Appeals or federal court ruling, or a Motion to Suppress based on evidence that is produced as a result of a Pre-Trial Motion hearing.

224

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
Bklollar@sbcglobal.net

225

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of April, 2009.

_____
Attorney for the Defendant

226

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____

JUDGE PRESIDING

227

CAUSE. NO. F08-24629-FY
CAUSE. NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION FOR TO EXCLUDE EVIDENCE OF UNADJUDICATED EXTRANEOUS OFFENSES DURING THE PUNISHMENT PHASE

TO THE HONORABLE JUDGE OF S AID COURT:

COMES NOW the Defendant in the above-styled and numbered case, by and through his attorney of record, and files this Motion to Exclude Evidence of Unadjudicated Extraneous Offenses During the Punishment Phase, and in support thereof would show the following:

I.

Permitting the introduction of unadjudicated extraneous offenses at punishment is not consistent with the heightened reliability required in capital litigation.

II.

Although there is substantial authority to the contrary, defendant submits that to permit introduction of unadjudicated extraneous offenses at the punishment phase of a capital trial denies him his right to due process, due course, and equal protection of the law as guaranteed by the United States and Texas Constitutions.

III.

To permit the State to introduce evidence of unadjudicated offenses to a jury which has just convicted a defendant of capital murder violates the basic premise of a fundamentally fair trial embodied in the due process and due course of law provisions of the state and federal constitutions. State v. Bobo, 727 S.W.2d 945 (Tenn. 1987). As the

228

Washington Supreme Court has held:

> To allow the jury which has convicted defendant of aggravated first degree murder to consider evidence of other crimes of which defendant has not been convicted is, in our opinion, unreasonably prejudicial to defendant...In effect, to allow such evidence is to impose upon a defendant who stands in peril of his life the burden of defending, before the jury that has already convicted him, new charges of criminal activity. Information relating to defendant's criminal past should therefore be limited to his record of convictions.

State v. Bartholomew, 654 P.2d 1170, 1184 (Wash. 1982) (en banc).

Thus, a jury which has already found a defendant guilty of capital murder would not be fair and impartial in viewing evidence of other accusations made against him. That jury would be predisposed toward finding of guilt and would not require independent proof beyond a reasonable doubt utilizing those alleged offenses in answering the special issues.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Court grant this Motion to Exclude Evidence of Unadjudicated Extraneous Offenses During the Punishment Phase, and for such other and further relief to which Defendant may be justly entitled..

Respectfully submitted,

Bradley K. Lollar
1700 Commerce St., Ste. 404
Dallas, Texas 75201
(214) 384-8178
State Bar No. 12508700
bklollar@sbcglobal.net

ATTORNEY FOR DEFENDANT

229

## CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion to Exclude was served on the Dallas County District Attorney's Office by personal delivery on the _____ day of April, 2009.

_____
Attorney for the Defendant

230

CAUSE NO. F08-246 29-FY
CAUSE NO. F08-246 67-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____  GRANTED

_____  DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

231

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## MOTION IN LIMINE TO PRECLUDE TESTIMONY CONCERNING VIOLENT ACTS COMMITTED BY OTHERS IN PRISON

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, James Garfield Broadnax, the Defendant, by counsel, and pursuant to the 6th and 14th Amendment to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution, Tex. R. Evid. 104, and Tex. C. Crim. Proc. Article 1.03(5), and moves the Court to preclude testimony concerning violent acts committed by offenders other than Defendant and in support thereof would show the court the following:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact-finding than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. Movant reasonably anticipates that the State will offer evidence concerning the

232

"potential" for violence in the Texas Department of Criminal Justice (TDCJ). This testimony will include isolated incidences of violence in maximum security facilities. These acts were committed by others in the past, under often unknown security rules, measures and regulations, and as such have no relevancy to the Defendant.

4. These alleged incidents of violence will have naturally occurred prior to this Defendant ever entering TDCJ. They may be isolated and may never occur again, especially if TDCJ has since implemented policies of intervention and prevention that are designed to prevent such acts. This analysis reveals how simplistic and speculative such evidence can make the sentencing process. The speculation that is inherent in the anticipated testimony denies to the Court, and to this Defendant, the heightened reliability in the sentencing requirement that is mandated by the 8th and 14th Amendments to the United States Constitution.

5. The jury's consideration of such evidence will violate the Constitutional requirement that sentencing of a defendant in a capital case be "individualized" as to that defendant. Jurek v. Texas, 428 US 262 (1976) and Woodson v. North Carolina, 428 US 280, 303-305, (1976).

Wherefore premises considered, Movant prays that upon hearing herein, this Court order that during the penalty phase of the Defendant's trial, the State be precluded from offering any evidence of prior acts of violence in TDCJ that have been committed by offenders other than this Defendant and any evidence that is not otherwise individualized to this Defendant.

233

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

234

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Motion in Limine to Preclude Testimony Concerning Violent Acts Committed by Others has been furnished to counsel for the State by hand-delivery of a copy of s ame this the _____ day of April, 2009.


_____

Attorney for Defendant

235

CAUSE NO. FO8-24629-FY
CAUSE NO. FO8-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____day of_____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

236

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

**MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, James Garfield Broadnax, the Defendant herein and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 & 19 of the Texas Constitution and offers the following in support of this Motion:

**THE EIGHTH AMENDMENT REQUIRES THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT, AS MITIGATION EVIDENCE DURING HIS SENTENCING HEARING, TESTIMONY FROM HIS FAMILY AND FRIENDS REGARDING NOT ONLY THEIR FEELINGS ABOUT WHETHER THEIR LOVED ONE SHOULD BE EXECUTED, BUT ALSO THE IMPACT THAT AN EXECUTION WOULD HAVE ON THEM.**

237

A.    Introduction.

Defendant moves this Court to permit him to question his family members and friends regarding two topics: (i) whether Defendant's family and friends want Defendant to live or die; and (ii) what the impact would be on such persons if Defendant were in fact sentenced to death and ultimately executed.

B.    Controlling authority from the lower courts.

Pursuant to the ethical duties imposed on members of the Bar, undersigned counsel calls the following judicial decisions to this Court's attention.

In *Fuller v. State*, 827 S.W.2d 919 (Tex.Crim.App. 1992), the Court of Criminal Appeals rejected a capital defendant's argument that Supreme Court decisions such as *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982), require that a sentencing jury be permitted to consider mercy pleas from a capital defendant's family members during the sentencing phase. The court held that since testimony from a capital defendant's family regarding their feelings about the possible execution of their loved one does not relate to "evidence concerning his background, character, or the circumstances surrounding the offense," it is not admissible under *Lockett* and its progeny. Presumably, in view of *Fuller*, the Court of Criminal Appeals' holding also applies to testimony from the family of the victim as to the impact that an execution would have on them.

The current state of the law in Texas regarding victim impact is even more unclear with the recent cases of *Smith v. State*, 919 S.W.2d 96 (Tex.Crim.App. 1996), *Ford v. State*, 919 S.W.2d 107 (Tex.Crim.App. 1996) and *Mosley v. State*, 983 S.W.2d 249 (Tex.Crim.App. 1998).

Similarly, the Fifth Circuit has held that "[t]hough [mercy pleas from a capital defendant's

**238**

family] may well impact a jury's decision, they are not mitigating evidence" required to be admitted under the Eighth Amendment. *See*, *Kelly v. Lynaugh*, 862 F.2d 1126, 1133 n. 12 (5th Cir. 1988). *But, see*, *People v. Mickle*, 814 P.2d 290, 321 (Cal. 1991) ("[A] capital defendant is entitled to introduce at the penalty phase the opinions of family and friends about the appropriateness of the death sentence."); *Romarne v. State*, 305 S.E.2d 93, 251 Ga. 208, 216-17 (Ga. 1983) (same).

Defendant contends that, while these decisions may control this Court's disposition of this Motion, they were wrongly decided. This Motion is being filed in order to challenge *Fuller* and *Kelly* in the U.S. Supreme Court. Defendant will also request the Court of Criminal Appeals to overrule *Fuller*.

C.    *Payne v. Tennessee.*

In *Payne v. Tennessee*, 111 S.Ct. 2597 (1991), the U.S. Supreme Court removed the prior *per se* bar on the introduction of "victim impact statements" by the prosecution as part of aggravating evidence during a capital sentencing hearing. *Id.* at 2603. Chief Justice Rehnquist's opinion for the Court in *Payne* noted that in the context of mitigating evidence, the Court's decisions have allowed the sentencer to consider "'any relevant mitigating evidence' that a defendant proffers in support of a sentence less than death," 111 S.Ct. at 2606 (citing *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)), and that a capital defendant should be "treated as a 'uniquely individual human being'" during capital sentencing. *Id.* at 2606-007 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). The Chief Justice then concluded, comparing aggravation and mitigation evidence, that what is good for the goose is good for the gander: that a sentencing jury should be permitted to know about the individual characteristics of

239

the murder victim -- as well as of the convicted capital defendant -- which necessarily includes evidence about the victim's family and their reaction to the murder. *See*, 111 S.Ct. at 2607-09. He held that it was not a bar to introducing such aggravating evidence because it "was [not] related to the circumstances of Payne's brutal crimes." *Id.* at 2609. As the Chief Justice noted:

> Human nature being what it is, capable lawyers trying cases to juries try to convey to the jurors that <u>the people involved in the underlying events [i.e., including the victim's survivors] are . . . living human beings who have something to be gained or lost from the jury's verdict</u>. Under the aegis of the Eighth Amendment, we have given the broadest latitude to the defendant to introduce relevant mitigating evidence reflecting his own individual personality. ...[W]e now reject the view . . . that a State may not permit the prosecutor to similarly argue to the jury the human cost of the crime of which the defendant stands convicted. ..."[J]ustice, though due to the accused, is due to the accuser also. ...We are to keep the balance true." (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934).

*Id.* (emphasis added).

Justice O'Connor's concurrence in *Payne* also sheds some light on the Court's reasoning. She noted at the outset of her opinion that "[a] State may decide that the jury, before determining whether a convicted murder should receive the death penalty, should know the full extent of the harm caused by the crime, <u>including its impact on the victim's family</u>. . ." *Id.* at 2611. She later noted, like the Chief Justice, that a victim should be portrayed to the jury as a "unique human being" -- which includes knowledge of the victim's family's reaction to the murder. *See, Id.* at 2612.

Justice Scalia's concurring opinion echoed Chief Justice Rehnquist's reciprocity arguments: "The Court correctly observes the injustice of requiring the exclusion of relevant aggravating evidence during the capital sentencing, while requiring the admission of all relevant mitigating evidence. ...[T]he Eighth Amendment permits parity between mitigating and

**240**

aggravating factors." *Id.* at 2613.

Justice Souter's concurring opinion noted, like the Court's opinion did (*Id.* at 2605), that "traditionally" criminal conduct has been punished in view of the degree of harm, if any, caused. Hence, he argued, a victim impact statement was relevant because it allowed the jury to better know this "traditional" factor in assessing punishment. *Id.* at 2614. Such aggravating evidence was considered "morally relevant" and allowed for a "reasoned moral response" from the jury. It also permitted the jury to better know the victim as a "uniquely individual human being," whose unique personality was in part a product of his family. *Id.* at 2614-15. As Justice Souter stated:

> Just as defendants know that they are not faceless human ciphers, they know that their victims are not faceless fungibles, and <u>just as defendants appreciate the web of relationship and dependencies in which they live, they know that their victims are not human islands, but individuals with parents or children, spouses or friends, or dependents.</u> Thus, when a defendant chooses to kill . . . this choice necessarily relates to a whole human being and threatens the association of others, who may be distinctly hurt.

*Id.* at 2616 (emphasis added).

The collective reasoning of the Court and the concurring opinions in *Payne* applies equally to testimony from a capital defendant's family and friends about their feelings regarding the possible execution of their loved one and the impact that an execution would have on them.

Such testimony is relevant to mitigation in at least three ways: first, it goes directly to the question of mercy, a quintessential element of mitigation. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (plurality) ("Nothing in any of our cases suggests that the decision to afford an individual mercy violates the Constitution."); *People v. Sanchez*, 115 Ill.2d 238, 269 (Ill. 1987) ("mercy" recognized as important part of mitigation); *State v. Petary*, 781 S.W.2d 534, 541 (Mo. 1989) (same).

241

Any objective standard of human decency permits close relatives and friends to ask the jury not to impose death on their loved one. Preventing a capital defendant's relatives and friends from expressing such opinions, and instructing a sentencing jury to disregard them, is as cruel and unusual as can be imagined. Allowing the jury to consider such testimony surely aids in eliciting a "reasoned moral response." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Mercy is an integral part of the traditional Western notion of dispensing justice. *See, e.g.*, John Milton, Paradise Lost, Book X, line 77 ("so temper justice with mercy"); William Shakespeare, The Merchant of Venice, Act 4, Scene 1, lines 184 et seq.; Holy Bible, New Testament, Matthew 5:5; Old Testament, Mica 6:8. If the exclusion from the jury's consideration of such a basic human response as a mother's concern for her child's life -- which hardly disappears when he is convicted of capital murder -- does not violate the Eighth Amendment, then nothing does.

In *Saffle v. Parks*, 110 S.Ct. 1257, 1266 (1990) (Brennan, J., dissenting), Justice Brennan quoted the Tenth Circuit's en banc opinion below, which recognized that, "mercy, humane treatment, compassion, and consideration of the unique humanity of the defendant . . . have all been affirmed as relevant considerations in the penalty phase of a capital case." *Id.* at 1266 (quoting *Parks v. Brown*, 860 F.2d 1545, 1556 (10th Cir. 1988) (en banc). Such factors, of course, were of the very type relied upon by the *Payne* Court in holding that the prosecution's use of victim impact statements was proper during a capital sentencing hearing *(see* discussion *supra)*, albeit with reference to the victims' family.

To not apply the same considerations to the testimony of a capital defendant's relatives regarding their feelings about the possible execution of their loved one would be as "unfair" and "imbalanced" an approach during sentencing as the Court's prior approach in *Booth v. Maryland*,

242

524 U.S. 905 (1998), which Chief Justice Rehnquist so condemned in *Payne*. *See,* 111 S.Ct. at 2609. Once again, what is good for the goose is good for the gander. If *Payne* permits testimony from the victim's relatives regarding their feelings about the crime as part of the prosecution's presentation of aggravating circumstances, the Court should likewise permit testimony of the capital defendant's relatives regarding their feelings about the proposed punishment as part of the defense's presentation of mitigating circumstances.

A second way that such testimony is relevant as mitigating evidence is that it evinces that a particular defendant may still possess enough redeeming qualities as a human being to warrant his life being spared. The clear message sent to a jury by such testimony is that the defendant's life, until the murder, had enough positive elements to lead his family members to express their love by pleading that a life sentence be imposed. *Mickle*, 814 P.2d at 321. (Such testimony "exemplif[ies] the feelings held toward the defendant by a person with whom he [has] a significant relationship" and "bears on his overall character and humanity" (citation omitted)); *cf. Martin v. Dugger*, 686 F.Supp. 1523, 1538-41 (S.D. Fla. 1988) (quoting extensive testimony from capital defendant's relative in which numerous pleas for mercy were interspersed with discussions of defendant's character and background).

Third, as was extensively discussed in *Payne* with respect to the testimony of the victim's survivors used as aggravation evidence, but equally applicable to testimony of the defendant's relatives used as mitigation evidence, testimony from the defendant's family aids the sentencing jury in seeing the defendant as a "uniquely individual human being." He is part of a family who still loves him, notwithstanding his crime, and that family, just like the victim's family, has a vested interest in the jury's verdict. To refuse to consider the defendant's family's feelings, which in many cases would be juxtaposed to the victim's family's feelings, simply because the former is

243

related to a convicted capital murderer would violate a basic principle of our criminal jurisprudence: the criminal law does not visit the sins of one family member upon the remainder of his family.[1]

Just as Chief Justice Rehnquist argued the need to convey to a jury that "the people involved in the underlying events [i.e., the victim's survivors] are . . . living human beings, with something to be gained or lost from the jury's verdict," *Id.* at 2609, a capital sentencing jury should likewise know that a capital defendant also has a family of "living human beings," who care deeply about what verdict the jury reaches. Just as Justice Souter noted of a murder victim, a capital defendant such as *Brown* is not a "human island." He has "a web of relationships and dependencies." He is "an individual[] with parents or children, [a] spouse[] or friends, or dependents." The jury's choice that the State of Texas should kill Mr. *Brown* "necessarily relates to the whole human being and threatens the association of others, who may be distinctly hurt." *Payne*, 111 S.Ct. at 2616. And just as Justice O'Connor noted that a jury cannot fully know a murder victim as a "unique human being" without knowing of the impact of the crime on the victim's family, *see Id.* at 2611, neither can a jury know of the capital defendant as a "uniquely individual human being," *see, Woodson v. North Carolina,* 428 U.S. at 304, without hearing the defendant's family's feelings about the possible execution of their loved one.

In non-capital cases, countless courts in various ways have taken into consideration a criminal defendant's family in imposing a particular sentence. *See, e.g., State v. Laird,* 547 So.2d 1, 3 (La. App. 1989); *United States v. Denardi,* 892 F.2d 269, 271 (3rd Cir. Pa. 1989); *United*

---

[1] This was even recognized by the Framers of the Constitution. *See,* U.S. Const. Art. III, Sec. 3, Clause 2 (punishment for treason may not work "Corruption of Blood"). *See also, King v. Smith,* 392 U.S. 309, 336 n.5 (1968) (Douglas, J., concurring).

244

*States v. Ramos*, 1989 U.S. Dist. LEXIS 16493 at *2 (E.D. Pa. 1989); *United States v. Moran*, 601 F.Supp. 205 (D.Me. 1985); *United States v. Ramos*, 605 F.Supp. 277, 279 (S.D. N.Y. 1985); *Irizzary v. United States*, 58 F.R.D. 65 (D.Mass. 1973); *United States v. Orlando*, 206 F.Supp. 419, 420-21 (E.D. N.Y. 1962). As the First Circuit noted in *United States v.Villarin Gerena*, 553 F.2d 723 (1st Cir. 1977), "[t]hat any sentence may be a hardship to [a criminal defendant's] family is undeniable, the consequences of any crime are rarely visited only upon the actor and the immediate victim." Since "traditionally," *cf. Payne*, 111 S.Ct. at 2614 (Souter, J. concurring), a criminal defendant's family has not been irrelevant to non-capital sentencing, <u>a fortiori</u> it should not be excluded from capital sentencing.

In sum, almost every argument made by the majority and concurring members in *Payne* regarding the propriety of victim impact statements applies with equal force to a capital defendant's right to offer testimony by his family regarding their feelings about the prospect of losing their loved one. Thus, especially in view of *Payne*'s reasoning, the Court of Criminal Appeals decision in *Fuller v. State, supra,* was wrongly decided.

D.    <u>Defendant's Right to put on a Bill of Exception.</u>

Assuming that this Court denies Defendant the right to introduce such testimony to the jury, Defendant requests the right to make a bill of exception in narrative form for the purposes of appeal. As will be explained in such a bill, counsel for Defendant would ask numerous friends and family members of Defendant whether they wished for Defendant's life to be spared. Defendant would also ask such persons about what impact that a death sentence and execution would have on them.

245

WHEREFORE, PREMISES CONSIDERED, Movant prays that upon hearing hereof the court find that testimony from the family of the Defendant, all as set out herein, is admissible and that the Defendant have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted,

_____
Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

246

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____, 200_.

_____

Counsel for Defendant

247

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____ GRANTED

_____ DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

248

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the Defendant, _____, and pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex. R. Crim. P. 28.01 and Tex. R. Evid. 401, 403, 702, 703 and 705, and for the reasons set forth below and in the attached *Memorandum of Law*, the Defendant respectfully moves this Court to exclude all psychiatric or psychological expert <u>opinion testimony offered by the State as to §the probability that the Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. Code Crim. Proc. Ann. Art. 37.071 § (2)(b)(1)(Vernon Supp. 2001).</u>

1. The Defendant has been indicted by the _____ County Grand Jury for the offense of capital murder;

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact-finding <u>**than**</u>

1

249

would be true in a noncapital case.  Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993); Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. It is anticipated that the State will  call one or more witnesses to offer psychiatric or psychological expert opinions or predictions as to the Defendant's eligibility for the death penalty under Tex. Code Crim. Proc. Ann. Art. 37.071 § (2)(b)(1) (Vernon Supp. 2001).

The admissibility of these opinions is governed by Tex. R. Evid. 401, 403, 702, 703, and 705 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kuhmo Tire Co. v. Carmichael, 526 U.S. 137 (1999); Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992); E.I. du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995); Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713 (Tex. 1998); Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998).

4. Psychiatric or psychological predictions as to a whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," are inadmissible because they do not meet the standards for reliability articulated in the rules of evidence and the common law. Such predictions are unreliable due to: (a) their overwhelming rate of error; (b) their lack of acceptance in the relevant scientific community; (c) the subjective, inconsistent, ad-hoc, and standardless manner in which they are formed; and (d) the absence of a proper and adequately reliable data source upon which to base them.   Any testimony the State seeks to

250

admit incorporating such predictions does not satisfy the reliability requirement of Tex. R. Evid. 702, and must be excluded.

5. Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because they do not meet the standards for relevance articulated in the rules of evidence and the common law.  Such predictions are irrelevant because they do not assist the juror in determining a question of fact.

Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because any probative value is substantially outweighed by the danger of unfair prejudice pursuant to Tex. R. Evid. 403.

WHEREFORE, Defendant respectfully requests that the Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant will commit future criminal acts of violence such that he will constitute a continuing threat to society.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

3

251

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion and supporting Memorandum of Law was personally delivered to the Dallas County District Attorney's Office on this the _____ day of April, 2009.

_____

**ATTORNEY FOR DEFENDANT**

252

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
JUDGE PRESIDING

253

## MEMORANDUM OF LAW IN SUPPORT OF

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE

## PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING

## FUTURE DANGEROUSNESS

Pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex.C. Crim. P. 28.01 and Tex. R. Evid. 401, 403, 702, 703 and 705, Defendant requests that this Court exclude all psychiatric or psychological expert opinion testimony offered by the State as to the probability that Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. C. Crim. P. Art. 37.071 § (2)(b)(1) (Vernon Supp. 2001). Defendant respectfully submits that such testimony does not meet the requirements of Rules 702 or 403.

## I. INTRODUCTION

For expert testimony to be admitted as evidence under Tex.R.Evid. 702, a trial court must determine whether such testimony is reliable and relevant. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 720 (Tex. 1998). The trial court performs a "gatekeeping role" for the admission of such evidence. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); see also Kuhmo Tire Co. v. Carmichael, 526 U.S. 137 (1999); Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992); E.I. du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995); Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998). The proponent of expert testimony bears the strict burden of proving both the reliability and relevance of such testimony before it may be admitted into evidence. Robinson, 923 S.W. 2d at 557.

Additionally, evidence deemed reliable and relevant must be excluded if "its probative value is substantially outweighed by the danger of prejudice, confusion of the issues, or

5

254

misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

In the penalty phase of a capital trial, a court must evaluate psychiatric or psychological testimony that predicts a defendant's continuing threat to society under Art. 37.071 § (2)(b)(1), or "future dangerousness," using these reliability, relevance, and prejudice considerations. Nenno, 970 S.W.2d 549 (performing a reliability, relevance, and prejudice inquiry for psychiatric testimony in penalty phase of capital murder trial); Joiner v. State, 825 S.W.2d 701 (Tex. Crim. App. 1992) (same). When evaluated for reliability, relevance, and prejudice, the gross impropriety and inadmissibility of psychiatric and psychological predictions of future dangerousness becomes clear. The admission of testimony that incorporates these predictions violates the rules of evidence, the constitutional rights of the accused, and the common law.

## II.  ARGUMENT

1.  PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE UNRELIABLE, AND MUST BE EXCLUDED UNDER TEX. R. EVID. 702.

The reliability of expert testimony rests on a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and may properly be applied to the facts in issue. Daubert, 509 U.S. at 593-94. A preliminary assessment of reliability is guided by (a) the validity of the underlying scientific theory (b) the validity of the technique applying the theory and (c) the proper application of the technique on the occasion in question. Kelly, 824 S.W.2d at 573; Nenno, 970 S.W.2d at 561. Questions of validity and proper application are to be guided by certain factors, which include, but are not limited to:

(a) The qualifications, experience, and skill of the person testifying;

255

(b) The extent to which the reasoning or methodology can be and has been tested;

(c) The extent to which the reasoning or methodology relies upon the subjective interpretation of the person testifying;

(d) Whether the reasoning or methodology has been subjected to peer review and/or publication, and whether the theory or technique has been rejected in such literature;

(e) The availability of other experts to test and evaluate the technique;

(f) The potential or known rate of error of the reasoning or methodology;

(g) Whether the reasoning or methodology has been generally accepted as valid by the relevant scientific community;

(h) The non-judicial uses which have been made of the reasoning or methodology;

(i) The clarity with which the underlying theory and technique can be explained to the court.

Daubert, 509 U.S. at 593; Gammill, at 972 S.W.2d at 720; Kelly, 824 S.W.2d at 573.

The above-listed factors [Daubert and Kelly factors] are germane to evaluating the reliability of both scientific and non-scientific expert testimony, "[w]hether the expert would opine on economic valuation, advertising psychology, or engineering …." Gammill, 972 S.W.2d at 725; see also Moore v. Ashland Chemical, Inc. 151 F.3d 269 (5th Cir. 1998) (holding that clinical medical expert's testimony was not admissible because it did not fulfill the Daubert factors); Perez v. State, 25 S.W.3d 830 (Tex. App.-Houston [1st Dist.] 2000) (applying Daubert analysis to non-scientific expert); American Tourmaline Fields v. International Paper Co., No. CIV.A.3:96CV3363D, 1999 WL 242690 at *4 (N.D. Tex. April 19, 1999) (same). As such, the above listed principles

7

256

govern the admissibility of psychiatric and psychological testimony, which is based on a combination of training, experience, and scientific inquiry. Nenno, 970 S.W.2d at 560-62. See also Muhammad v. State, 46 S.W.3d 493, 506-507 (Tex. App. – El Paso [8th Dist.] 2001) (using the Kelly factors to determine whether psychological evidence should be admitted); Green v. State, 55 S.W.3d 633, 639-41 (Tex. App. – Tyler [12th Dist.] 2001)(same). In evaluating "fields of study aside from the hard sciences," courts should tailor the above analysis to examine closely the data collection procedures, such as personal interviews, document review, or statistical analysis, conducted by the witness in question. Nenno, 970 S.W.2d at 562.

### A. Psychiatric or psychological predictions of future dangerousness, as generally performed and offered, fail to meet the Rule 702 standards of reliability.

In general, psychiatric or psychological testimony as to whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," in capital cases is an ad-hoc determination solicited by a hypothetical fact pattern presented to the witness by the State. Occasionally, a limited record review accompanies the hypothetical fact pattern. The hypothetical fact pattern primarily incorporates the facts of the specific crime for which the defendant has been convicted. Occasionally, the hypothetical fact pattern will incorporate supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence, to be considered in the ad-hoc determination.

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, must be excluded because they fail to meet adequate standards for reliability.

257

### i.     The proponent of the expert testimony bears the burden of proving the reliability of the expert's testimony.

The proponent of psychiatric or psychological predictions of a defendant's future dangerousness bears the burden of proving the reliability of such predictions. Robinson, 923 S.W. 2d at 557. In order to satisfy this burden the proponent must demonstrate his experience and skill in a sub-specialty of forensic psychology or psychiatry that addresses the prediction of future dangerousness of criminal defendants in capital cases. A general degree in psychiatry or psychology is not sufficient to establish expertise in the predictions of future dangerousness in capital cases.  See Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)(holding that a testifying expert must have expertise on the very matter about which he is to give an opinion and that a medical degree is not sufficient to establish this expertise).  The proffered expert also bears the burden of proving his skill in predicting the future dangerousness of criminals. Experience testifying as an expert witness on the issue at hand is not sufficient to establish reliability.  In fact, absent a showing of the reliability of the proffered testimony, the Texas Supreme Court has squarely rejected the testimony of those who have had long histories of testifying by noting that "'the only review the plaintiffs' experts' work has received has been by judges and juries, and the only place their theories and studies have been published is in the pages of the federal and state reporters.'" Merrell Dow Pharmaceuticals v. Havner, 953 S.W.2d 706, 726 (Tex. 1997)(quoting Daubert v. Merrell Dow Pharamceuticals, Inc., 43 F.3d 1311, 1318 (9th Cir. 1995)). Furthermore, experience in the field is not sufficient to establish expertise if such experience is not skillful.  See Sosa v. State, 841 S.W.2d 912, 916 (Tex. App. - Houston [1ˢᵗ Dist.] 1992) (rejecting testimony of proffered "graphoanalysis" expert who had been a graphoanalyst for fifteen years and had reviewed thousands of handwriting samples because testimony otherwise not proved reliable).

258

In order to demonstrate this skill, the expert should be asked to proffer specific publications on the reliability and acceptability of the methodologies employed in predicting future dangerousness. See Castellow v. Chevron, 97 F.Supp.2d 780, 794-95 (S.D. Tex. 2000)(rejecting experts' testimony who did not point to medical or scientific literature supporting their conclusions); Green, 55 S.W.3d at 640 (rejecting expert's testimony who did not provide the trial court with any actual authorities supporting his analysis); American Tourmaline Fields, 1999 WL 242690 at *3 (N.D. Tex. 1999) (rejecting testimony of proffered expert who had not provided court with copies of articles upon which he purported to rely and could not recall the name or citation for any articles that had discussed his technique). Further, the methodologies that the proffered expert employs in predicting future dangerousness must be consistent with the methodologies and principles of predicting future dangerousness that are detailed in those publications the expert brings to the court's attention. See Green, 55 S.W.3d at 640 (rejecting expert's testimony when expert did not indicate that he had followed the methodologies of the "authorities" that he cited); Bennett v. PRC Public Sector, Inc., 931 F.Supp. 484, 494 (S.D. Tex. 1996) (rejecting expert's testimony noting that the methodology he employed was not consistent with the methodologies described by experts and literature in the field that he had named).

      ii.     **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable, and therefore inadmissible, due to the overwhelming potential rate of error of such predictions.**

It is generally accepted by the scientific community that psychiatrists and psychologists are more often incorrect in their assessments of future dangerousness than they are correct. The American Psychiatric Association [APA], has consistently maintained that "[t]he unreliability of psychiatric predictions of long-term future

**259**

dangerousness is by now an established fact within the profession." Barefoot v. Estelle, 463 U.S. 880, 920 (1983)(Blackmun, J., dissenting) (quoting Brief Amicus Curiae for the American Psychiatric Association [hereinafter APA Brief]); see also Flores v. Johnson, 210 F.3d 456, 463 (5th Cir. 2000)(Garza, J., specially concurring)(noting that the scientific community's rejection of the reliability of predictions of future dangerousness is "as true today as it was in 1983"). Predictions that a person will be dangerous in the future are wrong two out of three times. Barefoot, 463 U.S. at 920 (citing APA Brief at 9, 13); J. Monahan, The Clinical Prediction of Violent Behavior 47-49 (1981); C. Slobogin, Dangerousness and Expertise, 133 U. Pa. L. Rev. 97, 111-17 (1984) (citing results of the major studies: Baxstrom study: 20% accuracy; Thornberry Study: 20% accuracy; New York study 14% accuracy: Kozol study: 34.7% accuracy; Paxtuxent study: 41.3% accuracy; Wenk study: 8% accuracy). As such, a jury member could more accurately predict dangerousness by flipping a coin rather than relying on an expert psychologist or psychiatrist's testimony. Because the conclusions drawn from ad-hoc psychiatric or psychological predictions of future dangerousness are more often wrong than right, the amorphous and undefined methodologies they employ should be deemed unreliable. See General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997)(holding that "conclusions and methodology are not entirely distinct from one another" and that erroneous conclusions may indicate a faulty underlying methodology).

Even the more generous studies, done under the most controlled settings, indicate that predictions of future dangerousness will be accurate only half of the time. As such, these predictions are no better than chance determinations of who will be dangerous in the future. Randy Otto, On the Ability of Mental Health Professionals to "Predict Dangerousness": A Commentary on Interpretations of the "Dangerousness" Literature, 18 Law & Psych. Rev. 43, 64 & n.65 (1994); See also Melvin Goldzband, Dangerousness: A

**260**

Mutating Concept Passes Through the Literature, 26 J. Am Acad. Psych. & L. 649, 651 (1998)(noting that predictions of dangerousness are increasingly demanded by courts but because of their unreliability such predictions are "inherently fruitless" and "possibly dangerous."); George B. Palermo, et al. On the Predictability of Violent Behavior, 36 J. Forensic Sci. 1435, 1442 (1991)(noting that supportive scientific studies for the accuracy of long-term predictions of violence are lacking); David Freedman, False Prediction of Future Dangerousness: Error Rates and the Psychopathy Checklist-Revised, 29 J. Am. Acad. Psych. & L. 89, 92 (2001)("The prediction of complex behaviors such as violence remains exceedingly difficult and uncertain, and the plethora of new instruments fails to reach a scientifically reliable or valid standard of performance to be used to make decisions about a person's life or liberty in any setting.").

The reliability of psychiatric and psychological predictions of future dangerousness is tenuous when one considers how Texas courts have treated the admissibility of polygraph evidence. The Texas Court of Criminal Appeals has erected a "policy-based barrier to the admission of the existence and results of polygraph tests." Reed v. State, 48 S.W.3d 856, 860-61 (Tex. App. – Texarkana [6th Dist.] 2001). The court has held polygraph testimony categorically inadmissible "because it is not objective, but rather subjective, unreliable, and unduly persuasive." Reed, 48 S.W.3d at 863. The polygraph technique accurately predicts truth or deception "between seventy and ninety percent of the time." United States v. Posada, 57 F.3d 428, 434 (5th Cir. 1995). The best estimates of the accuracy of future dangerousness predictions indicate that they are correct merely fifty percent of the time. Psychiatric and psychological predictions of future dangerousness, which are both less reliable and more subjective than polygraph tests, should similarly be deemed inadmissible.

12

261

Research and literature that may indicate a more accurate prediction rate of future dangerousness is based on methods of prediction that are very different from those used in capital trials. More accurate prediction rates are garnered from studies in which clinicians have the opportunity to observe behavior in a mental health facility over an extended period of time. The procedure that the Defendant anticipates will be used by the State in this trial instead has been an ad-hoc determination of dangerousness based upon a hypothetical scenario provided by the State and thereby is inadmissable.

> iii. **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not generally accepted in the relevant scientific community.**

The American Psychiatric Association [APA] has insisted that psychiatrists are not qualified to make determinations of long-term future dangerousness and has consistently urged that expert psychiatric expert testimony on future dangerousness be deemed inadmissible. The APA has urged that "[a]bsent an in-depth psychiatric examination and evaluation, the psychiatrist cannot exclude alternative diagnoses; nor can he assure that the necessary criteria for making the diagnosis in question are met. As a result, he is unable to render a medical opinion with a reasonable degree of certainty." Flores, 210 F.3d at 467 (Garza, J., specially concurring) (quoting APA Brief). "The scientific community virtually unanimously agrees that psychiatric testimony on future dangerousness, is to put it bluntly, unreliable and unscientific." Flores, 210 F.3d at 463 (Garza, J., specially concurring). As an indication of the strength of the scientific community's rejection of this sort of ad-hoc psychiatric and psychological determinations, the APA expelled Dr. James Grigson because he consistently testified as to a defendant's future dangerousness without personal examination. Bruce Vincent, A Dearth of Work for 'Doctor Death'; the Once Ubiquitous James Grigson Now Finds Little Demand for his Testimony in Texas Capital Murder Sentencings, Texas Lawyer, Dec. 4, 1995, at 4.

12

262

A testifying expert cannot establish that his methodologies are accepted in the relevant scientific community through "mere assurances [] as to the accuracy of his own methods and results, in the absence of other credible supporting evidence." Castellow, 97 F.Supp.2d at 792 (citations omitted). See also Robinson, 923 S.W.2d at 559 (holding that an expert's "self-serving statements that his methodology was generally accepted and reasonably relied upon by other experts in the field are not sufficient to establish the reliability of the technique and theory underlying his opinion"). Thus, the proffered expert's assertion that the scientific community accepts his methodologies is not sufficient in light of the overwhelming rejection of this testimony by the scientific community.

> iv. **Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are purely subjective.**

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are "simply subjective testimony without any scientific validity." Flores, 210 F.3d at 45 8 (Garza, J., specially concurring). Each psychiatric or psychological prediction of future dangerousness is determined in a different manner. There is no established and consistent methodology applied or required for psychiatric or psychological analyses of future dangerousness, and "standards controlling the operation of the technique are nonexistent." Id at 465-66; see also Kenneth B. Dekleva, Psychiatric Expertise in the Sentencing Phase of Capital Murder Cases, 29 J. Am. Acad. Psych. & L. 58, 60 (2001)("'specific'... guidelines for making dangerousness predictions in forensic populations do not currently exist").

An ad-hoc determination of dangerousness is not externally verifiable by other experts. There has been no "testing" of the methodologies used in the predictions of each

263

expert. The factors an expert uses in determining dangerousness are not weighted and do not correspond to any graded scale of factors that would contribute to or predict dangerousness. Other experts looking at the same data are unable to determine whether the testifying expert's particular weighting of such factors is accurate. Thus, peer review of predictions of future dangerousness is rare, and "peer review of making such predictions has been uniformly negative." Flores, 210 F.3d at 465-66 (Garza, J., specially concurring)(citing G. Morris, Defining Dangerousness: Risking a Dangerousness Definition, 10 J. Contemp. Legal Issues 61, 85-86 (1999); see also William M. Grove & Paul E. Meehl, Comparative Efficiency of Informal (Subjective, Impressionistic) and Formal (Mechanical, Algorithmic) Prediction Procedures: The Clinical-Statistical Controversy, 2 Psych. Pub. Pol'y & L. 293, 320 (1996) (noting that clinical experiences cannot resolve disputes among psychologists because each can appeal to his own unique clinical experiences which lack an objective referent). Testimony that is "subjective and 'not readily re-produceable [sic]'" by others in the field should not be admissible. Green, 55 S.W.3d at 638.

Key terms and concepts of the witness' testimony are amorphous and inexact. The scope of dangerousness and the length of time at issue are not defined. Concepts such as "conscience," "malice," and "evil," upon which determinations of dangerousness rely, are not adequately defined by the testifying witness.

> v.  **Ad-hoc psychiatric or psychological predictions are unreliable due to the absence of a reliable data source upon which to base a determination of dangerousness.**

As an essential component of assessing the reliability of the proffered testimony, "the underlying data should be independently evaluated in determining if the opinion itself is reliable." Havner, 953 S.W.2d at 713. The data set upon which the testifying expert here

rests is not reliable and therefore the expert's opinion should not be admissible. The data set upon which the testifying expert relies has been prepared by the prosecution, and the testifying witness has not verified the data provided her. As such, the data upon which this determination is based has not been compiled objectively, and the data has been specifically compiled to prove dangerousness. Compilation of data in this manner has been held to "give rise[] to a 'common-sense skepticism' regarding the expert's evaluation" which has proved fatal to the reliability of such testimony. Munoz v. Orr, 200 F.3d 291, 301 (5th Circ. 2000)(citations omitted); see also Castellow, 97 F.Supp.2d at 797 (rejecting reliability of proffered expert noting that the "detailed investigation" upon which the witness relied was prepared by Plaintiff's investigator); Green, 55 S.W.3d at 638 (rejecting reliability of proffered expert noting that witness had not independently investigated data provided him).

Further, ad-hoc determinations based on a hypothetical fact pattern prepared and presented by the State are unreliable because they do not incorporate any personal interviewing, investigation, or background examination. Testimony which relies only on a hypothetical provided by the State decidedly lacks any of the investigation, examination, or interviewing that courts have stipulated as the bedrock of a testifying mental health professional and proper clinical opinion provider. Testifying experts "whose convictions about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests [may] properly be viewed by the district court as lacking the objectivity" that is required to assure the reliability of the testimony. Castellow, 97 F.Supp.2d at 792 (quoting Claar v. Burlington Northern Railway Co., 29 F.3d 499, 503 (9th Cir.1994)).

The Texas Criminal Court of Appeals has acknowledged "the pivotal role that psychiatry has come to play in criminal proceedings" and has characterized that role as one

265

to conduct an "investigative process" which includes examinations and interviews of the defendant in which "psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury." Jackson v. State, 992 S.W.2d 469, 473 (Tex. Crim. App. 1999) (quoting Ake v. Oklahoma, 470 U.S. 68, 79 (1985)). The Supreme Court in Ake v. Oklahoma stipulated that a "competent psychiatrist" is one "who will conduct an appropriate examination." Ake, 470 U.S. at 83. Finally, the Texas Court of Criminal Appeals has held that psychiatrists assist the jury by "laying out their investigative and analytic process to the jury." Jackson, 992 S.W.2d at 473. It is thus clearly recognized that an essential role of a mental health professional in court is .

The lack of investigation makes this method particularly unreliable because, without more information the testifying expert is unable to rule out other diagnoses and hypotheses with regard to the defendant. See Paul S. Appelbaum, Hypotheticals, Psychiatric Testimony, and the Death Sentence, 12 Bull. Am. Acad. Psych. & L. 169 (1984). The expert is unable to ascertain all the facts that might make these alternate hypotheses or diagnoses more plausible for the defendant's situation. See Mata v. State, 46 S.W.3d 902, 915 (Tex. Crim. App. 2001)(rejecting expert's testimony that did not take into account facts that the court found salient to the analysis). An expert's inability or failure to rule out other hypotheses for the question at issue has proved fatal to the reliability of his proffered testimony. See Bennett v. PRC Public Sector, Inc., 931 F. Supp. 484, 492 (S.D. Tex. 1996)(limited fact collection impeded expert's ability to rule out other causes of Plaintiff's injury and indicated that expert's testimony was unreliable).

  vi. **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not used outside the judicial/legal context.**

The Texas Supreme Court has asked of experts whether the methodology or study they employ "was prepared only for litigation" and whether it has "been used or relied upon

**266**

outside the courtroom." Havner, 953 S.W.2d at 726. The expert testimony in this case is decidedly prepared only in the context of litigation and, given its lack of acceptance within the scientific community, would never be relied upon outside of the courtroom. While it is true that determinations of future dangerousness are used in involuntary civil commitments of individuals, psychotherapists' liability for their patients' actions, and post-jail detention of sexual predators and other inmates, these are all judicial uses of determinations of future dangerousness. Predictions about future dangerousness are non-existent outside of these judicial contexts.

Furthermore, the predictions of future dangerousness in these contexts are predictions of dangerousness in the short term; whereas future dangerousness predictions in capital cases are predictions of behavior in the long term. There is no procedure in Texas for reevaluating determinations of future dangerousness during the span of the defendant's sentence. A capital murder offender will not be eligible for parole until he has served a full 40 years sentence. Thus, the prediction of future dangerousness may concern behavior that extends for over most, if not all, of the defendant's life. Whereas short-term predictions may be made with some degree of accuracy, long-term predictions cannot be made accurately or reliably. See Grant H. Morris, Defining Dangerousness: Risking a Dangerous Definition, 10 J.Contemp. L. Issues 61, 78 (1999); Douglas Mossman, Dangerous Decisions: An Essay on the Mathematics of Involuntary Hospitalization, 2 U. Chi. L. School Round Table 95, 97 (1995).

B.    **The Psychopathy Checklist Revised [PCL-R] is an unreliable method for predicting a defendant's dangerousness in the future.**

In certain instances, the Psychopathy Checklist Revised [PCL-R], a psychiatric tool used to diagnose and assess for the presence of psychopathic traits, is utilized as a basis for predicting a defendant's future dangerousness. High scores on the PCL-R have been used to

18

267

predict a defendant's "continuing threat to society." J.F. Edens, et al., Psychopathy and the Death Penalty: Can the Psychopathy Checklist-Revised Identify Offenders Who Represent a "Continuing Threat to Society?", J. Pscyh. L. (forthcoming Winter 2001).

The PCL-R is both more objective and more accurate than the ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State. It has been held to be the most reliable known indicator of future dangerousness. Muhammad, 46 S.W.3d at 506. Despite this comparative reliability, the PCL-R is not a reliable enough basis upon which to admit a proffered expert's testimony. The PCL-R is unreliable primarily because of its very high false-positive rates. The PCL-R has been estimated to predict violent behavior with a false positive rate of between 54.3 and 75%. This indicates that the PCL-R predicts violence at a rate worse than chance. See David Freedman, Flase Prediction of Future Dangerousness: Error Rates and the Psychopathy Checklist-Revised, 29 J. Am. Acad. Psych. & L. 89, 92 (2001). The PCL-R is further unreliable for predicting future dangerousness because it does not evaluate the potential psychopathy as modified by age of the evaluee. Thus, the PCL-R cannot indicate how dangerous an evaluee will be when he is released from prison decades into the future. See Edens, et al., supra at *__. It has been shown that risk of violence decreases significantly with age. J. Sorenson & R. Pilgrim, Criminology: An Actuarial Risk Assessment of Violence Posed by Capital Murder Defendants, 90 J. Crim. L. & Criminology 1251, 1266 (2000). Finally, research examining the relationship between psychopathy and violence within institutions and prison settings has indicated that this relationship is, at best, tenuous and weak. Thus, researchers have concluded that "the position[,] that PCL-R score s for any one offender provide much useful information regarding his relative or absolute risk for future institutional violence while incarcerated[,] clearly is untenable." Edens et al. , supra at *; see also Freedman, supra at 94.

268

Thus, while the PCL-R is touted as the most reliable indicator of dangerousness, this reliability is merely reliable *comparatively* to the completely inaccurate ad-hoc predictions made currently by testifying experts. Because of the above listed factors, even the PCL-R is not a reliable enough tool upon which to admit psychological or psychiatric expert testimony of future dangerousness. Expert psychological or psychiatric testimony that does not rely on the PCL-R and which is instead merely an ad-hoc determination, should be therefore *a fortiori* inadmissible.

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are unreliable. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

2. **PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE IRRELEVANT, AND MUST BE EXCLUDED UNDER TEX. R. EVID. 702.**

Even if found to be reliable, expert testimony must be shown to be relevant to a factual issue in question. In determining relevance, expert testimony should be admitted only when it will aid the jury in making inferences regarding fact issues more effectively. United Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997) (affirming trial court's exclusion of expert testimony on blood-banking procedure and industry); Glasscock v. Income Prop. Servs. , 888 S.W.2d 176, 180 (Tex. App.-Houston [1st Dist.] 1994) (reversing trial court exclusion of expert testimony regarding security procedures in commercial office buildings because not an area of expertise within knowledge of reasonable juror). Psychiatric and psychological predictions of future dangerousness do not aid the jury in determining questions of fact, and are therefore inadmissible as they are not relevant under Tex. R. Evid. 702.

When the jury is equally competent to form an opinion regarding ultimate fact issues, the expert's testimony as to these issues should be excluded. K-Mart Corp. v.

**269**

Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000)("That a witness has knowledge, skill, expertise, or training does not necessarily mean that the witness can assist the trier-of-fact."); Williams v. State, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994)(same). If a purported expert testifies to an analysis based on factors that an average layperson juror would generally be aware of and utilize absent the expert testimony, such testimony is irrelevant. Douglas v. State, No. 01-98-01151-CR, 2001 WL 1048533, at *7 (Tex. App.-Houston [1st Dist.] Aug. 31, 2001) (affirming exclusion of expert testimony regarding the voluntariness of defendant's confession). Testimony that might be "of some benefit" to the jury is not admissible unless the jury would not be qualified to answer the question without the benefit of the expert's specialized knowledge. Speer v. State, 890 S.W.2d 87, 96-97 (Tex. App. - Houston [1st Dist.] 1994) (affirming exclusion of expert testimony regarding defendant's "dependent personality disorder").

Psychiatric predictions of future dangerousness are not offered in every capital case. There are many instances in which juries decide the special question of future dangerousness without consideration of psychiatric testimony. See, e.g., Jasper v. State, No. 73,817, 2001 WL 1504674, at *1-2 (Tex. Crim. App. Nov. 28, 2001) (affirming jury finding of future dangerousness based on facts of crime, evidence of escalating criminal activity, and lack of remorse); Conner v. State, No. 73,591, 2001 WL 1043248, at *4 (Tex. Crim. App. Sep 12, 2001) (affirming jury finding of future dangerousness based on defendant's prior criminal history); Trevino v. State, 991 S.W.2d 849, 854 (Tex. Crim. App. 1999) (same); Salazar v. State, 38 S.W.3d 141, 146 (Tex. Crim. App. 2001) (affirming jury finding of future dangerousness based on facts of offense alone). As such, it is clear that jurors are qualified under the law (assuming anyone is capable of making these predictions) to answer the future dangerousness question, and unreliable psychiatric testimony regarding the same point is not helpful and must be excluded. Similarly, the mere fact that future

21

270

dangerousness can be and often has been determined without the use of an expert, solidifies the fact that experts are not necessary to make the determination of future dangerousness.

In cases where the State offers psychiatric expert testimony regarding future dangerousness, as described in Section IA, above, predictions are ad-hoc determinations solicited by a hypothetical fact pattern presented orally to the witness by the State. This hypothetical fact pattern is generally limited to the facts of the specific crime for which the defendant has been convicted, although occasionally incorporates supplemental evidence, such as extraneous offenses committed by the defendant, uncharged prior misconduct, and limited character evidence. As described above, the proffered "expert" rarely has interviewed or investigated the defendant personally. See supra Section I.A.v. The factors used in constructing the hypothetical are sufficient, independent of any psychiatric or psychological analysis, to form the basis of a jury determination. Jasper, 2001 WL 1502674 at *1-2; Conner, 2001 WL1043248 at *4; Trevino, 991 S.W.2d at 854; Salazar, 38 S.W.2d at 146.

Further, a psychiatric or psychological "spin" or interpretation of these same facts is unreliable. See supra Section I. Because psychiatric and psychological predictions of dangerousness have been shown to be grossly unreliable, they have no relevance to a jury's determination of the factual question. Unreliable information cannot be considered helpful, and therefore relevant, to a jury. See Morales v. State, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000) ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue as is required by Rule 702."); Griffith v. State, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998) ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts."); Bennett, 931 F.Supp. at 500 (finding testimony unreliable where "completely lacks specificity" and "borders on sheer speculation," and therefore irrelevant).

271

Psychiatric or psychological predictions of future dangerousness rely exclusively on matters within the average juror's common knowledge, and thus should be excluded. K-Mart Corp, 24 S.W.3d at 361. Whereas relevant scientific or expert testimony assists a juror by introducing new facts or expertise, psychiatric predictions of future dangerousness merely "tell the jury how they should view the facts." Id. This is not sufficient to meet the necessary criteria for relevance. See also Flores v. State, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993) (Clinton, J., dissenting) (noting that expert psychiatric testimony regarding future dangerousness does not "add[] anything of substance to whatever inference of future dangerousness may be gleaned from the facts themselves."); Speer, 890 S.W.2d at 97 (finding that psychiatric testimony regarding defendant's dependent personality disorder could be found within the range of a layperson's knowledge).

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are irrelevant. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

3.    **PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS CREATE AN UNACCEPTABLE DANGER OF UNFAIR PREJUDICE AND NEEDLESS PRESENTATION OF CUMULATIVE EVIDENCE AND MUST BE EXCLUDED UNDER TEX. R. EVID. 403.**

Psychiatric or psychological predictions of future dangerousness are irrelevant and unreliable, and thus, inadmissible under Tex. R. Evid. 702. However, even if such predictions were to be found reliable and relevant, they are inadmissible under Tex. R. Evid. 403, under which reliable and relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; Morales, 32 S.W.3d at 865-66; Kelly, 824 S.W.2d at 572. Presentation to the jury of psychiatric or psychological predictions of future

272

dangerousness creates an unacceptable risk of prejudice and needless cumulative evidence, and is impermissible under Rule 403.

In determining whether the prejudicial potential of evidence outweighs its probative value, courts are to consider (a) how compelling evidence serves to make more or less probable a fact of consequence; (b) the potential the evidence in question will impress the jury in an irrational and indelible way; (c) the extent of the proponent's need for such evidence; and (d) how much trial time will be consumed in the admission of such evidence. Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).

The mere possibility that the jury will infer specialized knowledge or skill from the expert's presence, when in fact as has been demonstrated there is no such expertise, creates an unfair risk of substantial prejudice. As stated, an expert in this are provides no additional information that a jury does not possess, therefore his presence can only have the negative effect of prejudicing the jury to believe that his opinion is somehow more informed then their own. However, because the expert's opinion is unreliable, and irrelevant, its unfair prejudicial effect substantially outweighs any probative value.

### A. Because psychiatric predictions of a defendant's future dangerousness are unreliable and irrelevant, they do not make any more or less probable a fact of consequence in capital sentencing proceedings.

Psychiatric or psychological predictions of a defendant's future dangerousness, because of unreliability and lack of relevance alone, as described in Sections I and II, above, create an unacceptable danger for unfair prejudice. The flawed underlying methodology and high potential rate of error render psychiatric or psychological future dangerousness predictions insignificant as to whether future danger is any more or less probable. See Morales, 32 S.W.3d at 865 ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue...."); Griffith,

273

983 S.W.2d at 288 ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts.")

**B. Psychiatric or psychological predictions of a defendant's future dangerousness impress the jury in an inappropriate, irrational, and indelible way.**

Expert testimony is placed under additional evidentiary constraints because courts have reasoned that jurors are unable to evaluate such testimony thoroughly and, therefore, give it excessive weight regardless of its reliability and veracity. Gammill, 972 S.W.2d at 722 (citing Robinson, 923 S.W.2d at 553). See also Kelly, 824 S.W.2d at 573. In capital sentencing proceedings, there are four preexisting juror biases that compound the general tendency of unchecked acceptance of expert testimony. These biases affect jurors' perceptions of the likelihood of violent recidivism, the opportunities for recidivism, the accuracy of clinical expert testimony in general and the accuracy of expert predictions of future dangerousness specifically. Such biases reduce the effectiveness of traditional methods of adversarial testing in capital sentencing proceedings. The result is unfair prejudice that might not arise in other legal contexts.

Jurors in capital cases have a predisposed tendency to overestimate the likelihood of violent recidivism. Capital jurors estimate the probability that a defendant charged with capital murder, and given a life sentence, will commit another homicide between 25 and 50%, whereas studies show the likelihood to be approximately 0.2% over a forty-year term. J.R. Sorenson & R. Pilgrim, Criminology: An Actuarial Risk Assessment of Violence Posed by Capital Murder Defendants, 90 J. Crim. L. & Criminology 1251, 1269 (2000). Jurors estimate the probability that a criminal defendant convicted of a violent crime will continue to engage in assaultive behavior between 50 and 85%. Again, studies show this sense to be greatly exaggerated; the risk of additional violent crimes in general is approximately 16%. Sorenson & Pilgrim, supra, at 1269. Jurors in capital cases also have

274

a predisposed tendency to overestimate the opportunity defendants will have to commit acts of violence in the outside community. Studies in Texas indicate that, on average, jurors believe a defendant sentenced to life in prison will be paroled after fifteen years, whereas under Texas law, defendants given a life sentence after conviction for a capital crime must serve forty years before becoming eligible for parole. V.T.C.A., Gov't Code § 508.145(b) (2001); Sorenson & Pilgrim, supra at 1255.

Furthermore, jurors also believe clinicians to be capable of predicting future dangerousness at a far more accurate rate than empirical studies have suggested. D.A. Krauss & B.D. Sales, The Effects of Clinical and Scientific Expert Testimony on Juror Decision Making in Capital Sentencing, 7 Psych. Pub. Pol'y & L. 267, 276, 301 (2001). Finally, jurors have an extreme predisposition toward acceptance of "clinical" opinion expert testimony, which is based on a subjective, personal assessment of the evaluee. Krauss & Sales, supra at 305. Psychiatric or psychological predictions of a defendant's future dangerousness, particularly those based on an expert's ad-hoc analysis of a hypothetical fact pattern prepared and presented by the State, are clinical determinations. Id. Jurors weigh clinical opinion testimony heavily in final decisions and often fail to distinguish between more and less accurate clinical opinion testimony. Id.

In general, jurors do not scrutinize expert testimony as intensely as lay testimony and the presumption of credibility for expert witnesses is falsely enhanced. "Consequently a jury more readily accepts the opinion of an expert witness as true simply because of his or her designation as an expert." Gammill, 972 S.W.2d at 722 (citing Robinson, 923 S.W.2d 549); see also Flores v. Johnson, 210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J., specially concurring)("the problem here is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education (not to mention designation as an 'expert') gives him significant

26

**275**

credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact"); Krauss & Sales, supra at 273; C. Haney, Violence and the Capital Jury: Mechanisms of Moral Disengagement and the Impulse to Condemn to Death, 49 Stan. L. Rev. 1447, 1469-70 & n.113 (1997) ("In this light, capital penalty trials sometimes become forums in which grossly prejudicial and unreliable predictions of future dangerousness are presented with the imprimatur of state authority.") (citations omitted).

The preexisting tendencies of jurors in capital cases to overestimate the likelihood of violent recidivism, the opportunities criminal defendants have for recidivism, as well as the accuracy of clinical predictions of future dangerousness and the veracity and reliability of clinical predictions in general, reinforce the disproportionate credence jurors generally give expert testimony. These tendencies combined create a dangerous and unacceptable risk of prejudice in capital sentencing proceedings.

Adversarial testing is not a sufficient safeguard against the prejudicial effect of psychiatric or psychological predictions of future dangerousness. Faulty presuppositions and disproportionate acceptance of expert testimony may cause jurors to discredit expert testimony and cross-examination offered to counter a psychiatric or psychological determination of future dangerousness. Krauss & Sales, supra at 276; E.H. Mantell, A Modest Proposal to Dress the Emperor: Psychiatric & Psychological Opinion in the Courts, 4 Widener J. Pub. L. 53, 65-66 (1994) ("Given a choice between an expert who says that he can predict with certainty that the defendant, whether confined in prison or free in society, will kill again, and an expert who says merely that no such prediction can be made, members of the jury charged by law with making the prediction surely will be tempted to opt for the expert who claims he can help them in performing their duty, and who predicts dire consequences if the defendant is not put to death."). The "apparent endorsement" of a medical or scientific community can be extremely detrimental to a defendant's substantive

276

rights. Perez v. State, 25 S.W. 3d 830, 841 (Tex. App.- Houston [1ˢᵗ Dist.] 2000) (finding trial court erred in allowing state's expert witness testimony as to "child abuse accommodation syndrome").

Adversarial procedures are generally insufficient to remove the prejudice caused by psychiatric or psychological predictions of a defendant's future dangerousness. Krauss & Sales, supra at 305. The ability to impeach, or discredit, expert witnesses through cross-examination is limited. Opposing counsel is allowed to question the expert using statements contained in treatises and authoritative scientific materials, however, such cross-examination is limited to publications that the witness recognizes as authoritative or publications upon which the expert has relied. Reynolds v. Warthan, 896 S.W.2d 823, 827 (Tex. App. - Tyler [12th Dist.] 1995)(citing Carter v. Steere Tank Lines, Inc., 835 S.W.2d 176, 182 (Tex. App. - Amarillo [7ᵗʰ Dist.] 1992, writ denied). See also Bowles v. Bourdon, 219 S.W.2d 779, 783. (Tex. 1949). This detracts from the ability to legitimately subject the testimony to the rigors of adversarial testing when it is apparent that most of the expert's testimony in these cases will not be based on clinical studies, treatises, or other published materials, but rather on an ad-hoc analysis of the state's hypothetical.

Unreliable psychiatric opinion testimony creates a risk that the jury will be impressed in an irrational and indelible way. The prejudicial potential of such testimony is great and parties confronted with such testimony have limited, if any, means to rebut or remove the prejudicial impact.

C.  **The State has a limited need to present psychiatric or psychological prediction of a defendant's future dangerousness because such evidence is cumulative to other evidence already presented to the jury.**

The State has no pressing "need" for the admission of psychiatric or psychological predictions of future dangerousness, because it has a variety of other means available to prove the Art. 37.071 § (2)(b)(1) special question. The predictions, are generally ad-hoc

277

determinations solicited by a hypothetical fact pattern generally limited to the facts of the specific crime for which the defendant has been convicted, occasionally incorporating supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence. The hypothetical fact pattern, with or without the supplemental evidence, and resulting psychiatric or psychological prediction of future dangerousness, needlessly presents cumulative evidence, specifically prohibited by Rule 403.

Such predictions are needless because they lack validity or reliability and thus, offer nothing to the jury in addition to the mere repeat recitation of the facts of the crime, or other evidence, that has already been presented and made a part of the record. Merely cumulative evidence that serves no additional purpose must be excluded. Sims v. Brackett, 885 S.W.2d 450, 454 (Tex. App. – Corpus Christi [13th Dist.] 1994) (reversing trial court exclusion of expert medical witness testimony as to cause of patient's intestinal leak because not *"merely cumulative"*)(emphasis added). See also Pace v. Sadler, 966 S.W.2d 685 (Tex. App. – San Antonio [4th Dist.] 1998) (excluding personal narrative describing facts already on the record in medical malpractice case because cumulative and would have only served to prejudice defendants).

The admission of unreliable psychiatric predictions of a defendant's future dangerousness sheds no credible scientific, medical, or other light on the individual circumstances of the defendant at issue. The potential rate of error of such predictions, described in Section I.A.ii, above, shows that a witness providing the opinion is no more qualified to accurately do so than any of the members of the jury panel might be. Because the jurors otherwise have access to the underlying evidence presented to the opinion witness in the hypothetical fact pattern, and have the authority to base their determination of future dangerousness on this data alone, the opinion testimony itself is useless except for its prejudicial potential. See, e.g., Long v. State, 823 S.W.2d 259 (Tex. Crim. App. 1991)

278

(excluding autopsy photographs in murder case, even though relevant and probative, because of prejudicial nature and cumulative effect where less gruesome photographs were already in the record); Penry v. Johnson, 215 F.3d 504, 513 (5th Cir. 2000)(Dennis, J., dissenting) (expressing concern regarding the "cumulative effect and reinforcement" of the "erroneous" admission of psychiatric testimony regarding future dangerousness); see also Jasper, 2001 WL 1502674 at *1-2; Conner, 2001 WL1043248 at *4; Trevino, 991 S.W.2d at 854; Salazar, 38 S.W.2d at 146 (juries may find future dangerousness based on the facts of the offense alone or some combination of the facts of the offense, the defendant's prior criminal history, and juror interpretation of remorse or other character evidence).

Psychiatric testimony offering a prediction of a defendant's future dangerousness is cumulative to other testimony or evidence already presented to the jury. As a result, such testimony, especially given its overwhelming potential for unfair prejudice, indelible and irrational impression on the jury, and consumption of judicial resources and time, must be excluded under Rule 403.

**D. The interests of efficiency, preservation of judicial resources, and the rules of evidence demand the exclusion of psychiatric predictions of a defendant's future dangerousness.**

Because psychiatric and psychological predictions of future dangerousness impress the jury in an irrational and indelible manner, do not serve to make the fact of a defendant's future dangerousness any more or less probable, and do not fill a need of the proponent of such predictions that would not be met otherwise, the predictions consume an unnecessary amount of time in the sentencing phase of a capital trial.

For the reasons articulated above, the minimal, if any, probative value of psychiatric or psychological predictions of future dangerousness is outweighed by the danger of unfair prejudice such predictions cause. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 403.

279

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant will constitute a continuing threat to society, or Defendant's future dangerousness.

Respectfully submitted,

Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

280

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## MOTION FOR JURY INSTRUCTION
**(Failure of Jurors to Agree on Answers to Instructions)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant by and through his attorneys of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution moves the Court as follows:

1. Tex. C. Crim. P. Article 37.071(2)(d)(2) requires the court to charge the jury that it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously and it may not answer any issue "no" unless 10 or more jurors agree;

2. The Court is required by Tex. C. Crim. P. Article 37.071(2)(f)(2) to charge the jury that it may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes" unless 10 or more jurors agree.

3. These instructions are confusing to jurors. In an attempt to reduce such confusion and without waiving the Defendant's assertion that both of the above cited Articles are unconstitutional as set out the Defendant's motion filed herein, the Defendant moves the

1

281

Court to charge the jury as follows:

**Instruction No. 1 (future dangerousness)**

"If the jury is unable to agree unanimously to an answer to Special Issue No 1 above, the foreperson is instructed not to sign the jury form or answer to instruction No. 1 (continuing threat to society), but shall so notify the bailiff and return to the courtroom.

**Instruction No. 2 (complicity)**

"If the jury is unable to agree unanimously to an answer to Special Issue No. 2 (party) above, the foreperson is instructed not to sign the jury form or answer to instruction No. 2, but shall so notify the bailiff and return to the courtroom.

**Instruction No. 3**

"If at least one, but fewer than 10, jurors are able to answer "yes" to Instruction No. 3 (mitigation), the foreperson is instructed not to sign the jury form or answer to instruction No. 5 , but shall so notify the bailiff and return to the courtroom.

4. This method of instructing the jury is supported by the reasoning of the Court of Criminal Appeals in *McFarland v. State*, 928 S.W. 2d 482, 519-520 (Tex. Crim. App. 1996).

5. The Defendant requests that the jurors be also provided with the following instructions:

**Instruction No. ____**

In arriving at an answer to Instruction No. 5 (mitigation) you are instructed that mitigating evidence does not have to be proven to you beyond a reasonable doubt. Each juror may consider any evidence that the juror believes is true. No two

2

282

jurors have to agree on the truth of the same mitigating evidence. A juror may answer Instruction No 5 with a "yes" for any reason that justifies that response in the mind of the juror.

6. The Defendant still maintains that Tex. C. Crim. P. Article 37.071 is unconstitutional as set out in his motion filed herein. These instructions are requested in an attempt to lessen the harm inflicted upon the Defendant by the sections cited above. Instructing the jury as requested will not eliminate harm, prejudice, or unfairness to the Defendant or juror confusion that results from the Court's compliance with the mandates of Tex. C. Crim. P. Article 37.071(2)(d)(2) and 37.071(2)(f)(2).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that upon hearing hereof the court order that the jury be instructed as requested herein and that the Defendant have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted,

Bradley K. Lollar
Attorney for the Defendant
State Bar No.12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Telephone: (214) 384-8178
bklollar@sbcglobal.ne

3

283

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____, 2009.

_____
Counsel for Defendant

4

284

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## ORDER

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing *Motion* by Defendant. After consideration of the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

285

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

## REQUESTED INSTRUCTION TO THE JURY
## REGARDING RESIDUAL DOUBT AS MITIGATION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES James Garfield Broadnax, the Defendant in the above entitled and numbered cause, and pursuant to the 6th, 8th, and 14th Amendments to the United States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, moves the Court to instruct the jury as follows:

At the trial on guilt or innocence, the standard for proof was "beyond a reasonable doubt." You were instructed that it does not mean proof beyond all doubt. However, in this punishment trial, you are free to consider any residual doubt you may have, to whatever degree, as mitigation in answering the third special issue. Therefore, if you have a residual doubt about the motivation for, or the extent or nature of, the Defendant's guilt, you may consider that as a factor and rely upon it in deciding the whether there are mitigating circumstances which would warrant a sentence of life rather than death.

The Defendant is entitled to this instruction under the authority of *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986); *Lockhart v. McCree*, 476 U.S. 162 (1986); and *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). *See also Cantu v. State*, 939 S.W.2d 627, 640 (Tex.Crim.App. 1997)("subjective standards of the jury" determine mitigation).

286

Residual doubt about whether the prosecution proved every element of the offense beyond a reasonable doubt by itself is not mitigating. *See Franklin v. Lynaugh*, 487 U.S. 164 (1988). However, evidence of the circumstances of the offense can be mitigating. A juror can find the elements of the offense and return a guilty verdict, while still harboring doubts or concerns regarding the Defendant's motive for his action, as well as the nature or extent of the Defendant's guilt. This requested instruction assures the juror that he or she may consider doubts arising from a lack of evidence in the same way he or she may consider the evidence itself. In short, doubts regarding issues unresolved by the prosecution and technically irrelevant to the issue of guilt are a mitigating factor, and the jury should be so instructed. Failure to give these instructions will violate Article I, §§10, 13, 15 and 19 of the Texas Constitution as well as the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the jury in this case be so instructed.

Respectfully submitted,

Bradley K. Lollar
Attorney for the Defendant
State Bar No. 12508700
1700 Commerce St., Ste. 404
Dallas, Texas 75201
Tel. (214) 384-8178
bklollar@sbcglobal.net

2

287

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Requested Jury Instructions* was personally delivered to the Dallas County District Attorney's Office on this the 2 day of April, 2009.

_____

Attorney for the Defendant

3

288

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came

on to be considered the above and foregoing *Motion* by Defendant. After consideration of

the requests, it is hereby ordered:

_____    GRANTED

_____    DENIED, to which ruling the Defendant respectfully and timely
excepts, under the previously expressed constitutional bases.


_____
JUDGE PRESIDING

289

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

**MOTION TO ALLOW THE DEFENSE TO CLOSE ARGUMENTS
ON SPECIAL ISSUE NO. 2 or 3 - MITIGATION**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the Defendant, James Garfield Broadnax, by and through his attorneys of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. Code Crim. Proc. Ann. art. 28.01 makes this his Motion to Close Arguments on Special Issue #2 (or #3) - Mitigation and as grounds therefor would show the Court the following:

1. The Defendant has been indicted for capital murder.

2. The state is seeking the death penalty.

3. Although there is no mandate for the procedure under Tex. Code. Crim Proc. Ann. art. 37.071, the State is generally permitted to make the concluding argument to the jury. The justification for this is the fact that the State has the burden of proof on the "Future Dangerousness" and "Ant-Parties" issues, should it be appropriate to submit this latter charge to the jury. *Id.* 37.071 § (2)(b)(1)-(2), (c).

1

290

4. Tex. Code Crim. Proc. Ann. art 36.07, "Order or Argument", recognizing the burden on the State, provides that the State's counsel shall have the right to make the concluding address to the jury. This is clearly referring to the guilt/innocence phase of a trial and makes no reference to the appropriate procedures for a capital offense. In any event, procedures governing capital cases are separately addressed in art. 37.07 1.

5. Additionally, art. 36.01, the "Order of Proceeding in Trial," does not specify the order of argument for the punishment phase of the trial.

6. As stated, art. 37.071 governs the procedure in a capital case. The only reference to order of argument is contained in art. 37.071 § (2)(a) which provides:

> "The state and the defendant or the defendant's counsel shall be
> permitted to present argument for or against sentence of death"

Arguably, this places the argument of defense counsel as the concluding argument as it is listed last.

7. Allowing the State to conclude the argument in the penalty phase cannot be justified by the rationale that the "State has the burden" on the mitigation issue. Although art 37.071 § (2)(c) does place a burden of "beyond a reasonable doubt" as to the future dangerousness and anti-parties issue. However, the state has no such burden with respect to the mitigation issue described in art. 37.071 § (2)(e)(1). In fact, the burden of proof is impermissibly shifted to the Defendant by the language of art. 37.071 § (2)(f)(2) that requires that at least 10 jurors agree to a "yes" answer to the mitigating issue. [Yet, **the "no" answer requires a unanimous response, so it could be argued that the higher burden is on the state**]. This in effect shifts the burden back to the Defendant and misleads the jurors as to the ultimate responsibility for the sentence of life or death–is it one (1) juror that can "hang up" the jury, resulting in a life sentence, which is the law under art. 37.071 § (2)(g), or are ten (10) jurors required to agree on "life" before a life sentence is imposed, as they are led to believe? This burden is cemented by the admonition to

2

291

the defense and court that the jury cannot be advised of the result of their failure to agree on an issue. In other words, they cannot be told that the vote of one juror can result in a life sentence.

8. Furthermore, this burden shifting is aggravated by the language of Tex. Code Crim. Proc. Ann. art. 37.071 § (2)(e)(1) that requires the jury to co nsider the following in answering the mitigation issue:

"Whether taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the **personal moral culpability of the defendant**, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

The statute requires the jury to weigh mitigating evidence against "moral culpability" when the jury has already found that the defendant is, at least, legally culpable. The defendant then has a "super burden" to carry in that his mitigating evidence has to be greater than the moral culpability that was sufficient for the the jury to return a verdict of guilty.

9. The importance of being able to respond to the final arguments of the State, regarding whether or not there is sufficient mitigation in Defenda nt's case, cannot be overstated. Defendant's counsel makes this request in order to provide the Defendant with effective assistance of counsel as guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution and Articles 1 &13 of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this Motion be SUSTAINED and that he have such other and further re-lief to which he may show himself to be entitled.

3

292

## CERTIFICATE OF SERVICE

I hereby certify that a true an-d correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ⎯ day of April, 2009.

_____
Attorney for the Defendant

5

293

CAUSE NO. F08-24629-FY
CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## ORDER

---

BE IT REMEMBERED that on this the _____ day of _____, 2009, came on to be considered the above and foregoing Motion made by the Defendant, and, after due consideration it is the judgement of the Court that the Motion be:

_____ GRANTED

_____ DENIED, TO WHICH RULING THE Defendant respectfully and timely excepts, under the previously expressed constitutional bases.

_____
Judge Presiding

294

CAUSE NO. F08-24629-FY

CAUSE NO. F08-24667-FY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| | § | |
| VS. | § | DISTRICT COURT # 7 |
| | § | |
| JAMES GARFIELD BROADNAX | § | OF DALLAS COUNTY, TEXAS |

---

## DEFENDANT'S PROPOSED PUNISHMENT CHARGE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW James Garfield Broadnax the Defendant in the above-styled and numbered cause, by and through his attorney of record, and makes the following proposals for the Court's punishment charge, and further requests certain additional instructions:

I.

Defendant requests that, if this Court overrules his motion to exclude evidence of unadjudicated extraneous offenses and "bad acts", this Court should at least submit the following limiting instructions:

During the punishment phase, the state has introduced evidence of one or more unadjudicated extraneous offenses-that is, crimes against the laws of Texas allegedly committed by the defendant for which he has not been convicted in a court of law or other non-criminal "bad acts". In deciding whether the Defendant committed any alleged unadjudicated extraneous offenses or bad acts, the jury must not consider the fact that the defendant committed the capital murder alleged in the

295

indictment. That is, you should not presume that the defendant has a propensity to commit criminal acts generally, merely because you have convicted him of committing the crime of capital murder. The state must prove to you beyond a reasonable doubt that the Defendant committed any unadjudicated extraneous offenses.

Furthermore, if you find that the Defendant committed one or more unadjudicated extraneous offenses, you must not consider that fact in deciding whether he committed other unadjudicated extraneous offenses alleged by the state.

The State has introduced evidence that the Defendant has committed unadjudicated criminal offenses and/or bad acts. You shall only consider such evidence in answering the special issue that deals with the issue of "continuing threat" and not for any other purpose.

The State has introduced evidence that the Defendant has committed unadjudicated criminal offenses and/or bad acts. You shall only consider such evidence if the State proves to you that the Defendant in fact committed such crimes or bad acts. You shall presume that the Defendant is innocent of such alleged crimes or bad acts unless and until the State proves beyond a reasonable doubt that the Defendant committed such crimes or bad acts.

Defendant contends that he is entitled to these instructions under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____ GRANTED

_____ DENIED

II.

Assuming that this Court denies Defendant's motion to entirely exclude evidence

296

of unadjudicated extraneously offenses during the sentencing phase, Defendant requests that the Court at least submit special verdict forms that require the jury to specify whether jurors unanimously found each and every alleged unadjudicated extraneous offense to have occurred. Such special verdict forms are required to assure meaningful appellate review of a jury's affirmative answer to the "future dangerousness" issue. Meaningful appellate review is required by the Eighth and Fourteenth Amendments.

_____GRANTED

_____ DENIED

### III.

Defendant requests that this Court submit, along with the "Penry" or mitigation special issue, special verdict forms listing all possible mitigating factors raised by the evidence in this case. Jurors should be instructed to list which factors, if any, that they considered in answering the mitigation special issue. Such special verdict forms are required to assure meaningful appellate review of the jury's answer to the mitigation special issue. Meaningful appellate review is required by the Eighth and Fourteenth Amendments.

_____GRANTED

_____ DENIED

### IV.

Defendant requests the following special instruction:

**The law requires that you *must consider* any and all mitigating factors that are established by the evidence. That is, if one or more particular mitigating factors is proven by the evidence, whether that evidence was offered by the state or the defense, you must at least consider that evidence in mitigation of punishment. What weight you assign to any or all mitigating factors is within your judgment by you cannot assign a mitigating factor no weight by excluding it from your**

297

consideration entirely.

Defendant contends that he is entitled to this instruction under the Eighth and Fourteenth Amendments.

_____GRANTED

_____ DENIED

## V.

Defendant requests the following special instruction:

**You are instructed that in answering the mitigation special issue, you must not consider the subject matter of the first special issue - namely, whether the Defendant poses a future threat to society-for any purpose.**

Defendant contends that he is entitled to this instruction both as a matter of statutory construction and under the Eighth and Fourteenth Amendments.

_____GRANTED

_____ DENIED

## VI.

Defendant requests the following instruction:

**In considering the special issues and deciding whether there is a sufficient mitigating factor or factors to warrant a life sentence, the prosecution has the burden to prove the existence of any and all aggravating factors. It is not the burden of the Defendant in the first instance to disprove the existence of any aggravating factors.**

Defendant contends that he is entitled to this instruction under the Eighth and Fourteenth Amendments. See, e.g., Walton v. Arizona, 110 S.Ct. 3047 (1990).

_____GRANTED

_____ DENIED

298

## VII.

Defendant requests the following definitional instruction:

The term "mitigating" evidence or "mitigating factors" as used herein means any type of evidence relating to the Defendant's background, character, or the circumstances of the crime that would militate in favor of a life sentence rather than a death sentence. Evidence may be mitigating even if it does not relate in any way to the Defendant's moral culpability or moral blameworthiness for the capital murder listed in the indictment.

Defendant contends that he is entitled to the definition under the Eighth and Fourteenth Amendments.

_____GRANTED

_____ DENIED

## VIII.

Defendant requests the following instruction:

You are instructed that if the jury is unable to agree on either a Yes or No answer, as previously explained in this charge, that the failure to answer a Special Issue will cause the Defendant to receive a life sentence.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____ DENIED

## IX.

Defendant requests the following instruction:

You are instructed that certain evidence introduced to you has been

299

offered in mitigation of the Defendant's punishment. That evidence, including youth and mental health testimony, may only be considered by you as mitigation of his punishment.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____DENIED

## X.

Defendant requests the following instruction:

If you decide that an aspect of the Defendant's character and record or circumstances of the crime is a mitigating circumstance, you must not give it aggravating effect. Thus, if in your judgment, a mitigating circumstance independently calls for a life sentence even though it also tends to support a "yes" answer to a Special Issue, you must not answer the Special Issue "yes", but rather you should answer it "no".

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____DENIED

## XI.

Defendant requests the following instruction:

You are instructed that you are not to consider the impact of this offense

300

on the victim in the case in chief in answering the Special Issue concerning whether the Defendant will be a continuing threat to society.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____ DENIED

## XII.

Defendant requests the following instruction:

**You are instructed that you are not to consider the impact of this offense on the victim of any alleged extraneous offenses. Such evidence is not cognizable under any of the Special Issues.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____ DENIED

## XIII.

Defendant requests the following instruction:

**You are instructed that mitigating circumstances are not intended as a justification or excuse for a killing or to reduce it to a lesser degree of crime. Instead, a mitigating circumstance is a fact or group of facts which has one of two purposes: (1) a mitigating circumstance may extenuate or reduce the moral**

301

culpability of this Defendant for this crime, or (2) a mitigating circumstance may make the Defendant less deserving of the extreme punishment of death.

Our law requires consideration of more than just the bare facts of the crime. A mitigating circumstance may stem from any of the diverse frailties of humankind.

It would be your duty to consider as a mitigating circumstance any aspect of the Defendant's background, character, age, education, environment, behavior and habits which makes him less deserving of the extreme punishment of death.

You may consider as a mitigating circumstance any circumstance which tends to justify the penalty of life imprisonment or that the Defendant contends as a basis for a sentence less than death.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____GRANTED

_____ DENIED

## XIV.

Defendant requests the following instruction:

The mitigating circumstances are factors that you should take into account as reasons for deciding to impose a sentence of life imprisonment. You should pay careful attention to each of those factors. Any one of them, standing alone, may be sufficient to support a decision that life imprisonment is the appropriate punishment for Defendant. However, you should not limit your consideration of mitigating circumstances mentioned. You may also consider any other circumstances relating to the case or to Defendant as reasons for imposing a sentence of life imprisonment.

302

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____**GRANTED**

_____**DENIED**

## XV.

Defendant requests the following instruction:

**If you see fit, and regardless of your findings on the other issues, you are always free to afford Defendant mercy in these proceedings and sentence him to life imprisonment. This decision is solely in your discretion and not controlled by any rule of law. Each juror may decide to grant mercy to Defendant with or without an articulable reason. You may, in particular, decide to grant mercy to the Defendant because of any feelings of sympathy for the Defendant arising from the evidence in the case.**

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.

_____**GRANTED**

_____**DENIED**

## XVI.

Defendant requests the following instruction:

**The prosecution must prove beyond a reasonable doubt that there is a probability that the Defendant will commit criminal acts of violence on a continuing**

303

basis. This probability exists only if it is substantially more likely than not that he will continually commit crimes of violence. To determine whether a probability exists beyond a reasonable doubt, you must decide whether you have a reasonable doubt about any of the facts which you believe must be true to conclude that it is substantially more likely than not that the Defendant will continually commit violent crimes. If you have a reasonable doubt about the truth of any of these facts, you must answer this Special Issue "no" even if the controlling facts are probably true.

Criminal acts of violence are illegal acts which result in physical injury or the threat of physical injury to living persons. Crimes against property or nonviolent crimes are not criminal acts of violence even if they pose a threat to society.

To answer this Special Issue "yes", you must find that the Defendant's violent conduct will probably continually threaten society as long as he lives. Thus, if you do not believe that it is substantially more likely than not that the Defendant will continue to commit violent crimes, you must answer this Special Issue "no", even if you believe that there is some probability that he will commit one or more criminal acts of violence in the future.

When you decide whether the Defendant will continually commit violent crimes, you must consider the fact that if given a life sentence he will be sentenced to life in prison and will therefore not live among society in the free world. Thus, if you believe that the Defendant will not continually commit violent crimes in prison, you must answer this Special Issue "no" even if you believe there is a likelihood he would do so if he was a free man.

Defendant contends that he is entitled to this instruction under the Sixth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment.


_____ GRANTED

304

_____ **DENIED**

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be granted.

Respectfully submitted,

Bradley K. Lollar
1700 Commerce Street, Suite 404
Dallas, TX 75201
(214) 384-8178
State Bar No. 12508700

ATTORNEY FOR DEFENDANT

305

CERTIFICATE OF SERVICE

I hereby certify to the Court that a true and correct copy of the above and foregoing Motion was served on the Dallas County District Attorney's Office by personal delivery on the 2 day of April, 2009.

_____

Attorney for the Defendant

306

## CERTIFICATION

| The State of Texas | § |
| County of Dallas | § |

I, Gary Fitzsimmons, Clerk of the __Criminal District Court No. 7__ of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas this __21st__ day of __December__ , __2009__ .

Signature of Clerk: *Ana McDaniel*

Name of Clerk: Ana McDaniel

Title: Deputy Clerk

00307