*AP-76207*

REPORTER'S RECORD

VOLUME 4 OF _____ VOLUMES

TRIAL COURT CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE CRIMINAL DISTRICT |
| VS. | ) | COURT NO. 7 |
| JAMES GARFIELD BROADNAX | ) | Of DALLAS COUNTY, TEXAS |

**ORIGINAL**

========================================================

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2010

Louise Pearson, Clerk

PRETRIAL HEARING

========================================================

On the 21ST day of APRIL, 2009, the following proceedings came on to be heard in the above-entitled and -numbered cause to be heard before the Honorable MICHAEL SNIPES, Judge presiding, held in Dallas, Dallas County, Texas;

Proceedings reported by machine shorthand; computer-aided transcription.

SHARON HAZLEWOOD, CSR          972-739-3906
CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TEXAS

A P P E A R A N C E S

FOR THE STATE OF TEXAS:


HONORABLE DAVID M. ALEX
SBOT NO. 24003256
HONORABLE LISA SMITH
SBOT NO. 00787131
HONORABLE GORDON HIKEL
SBOT NO. 00787696
HONORABLE ANDREA HANDLEY
SBOT NO. 08898800
HONORABLE ELAINE EVANS
SBOT NO. 24032880
133 N. INDUSTRIAL BLVD.
FRANK CROWLEY COURTHOUSE
DALLAS, TEXAS 75207
TEL. 214-653-3600


FOR THE DEFENDANT:

HONORABLE BRAD LOLLAR
SBOT NO. 12508700
1700 COMMERCE ST, STE. 404
DALLAS, TEXAS 75201
TEL. 214-384-8178

HONORABLE DOUGLAS H. PARKS
SBOT NO. 15520000
321 CALM WATER LANE
HOLLY LAKE RANCH, TEXAS 75765
TEL. 903-769-3120

HONORABLE KERI MALLON
SBOT NO. 24049165
DALLAS COUNTY PUBLIC DEFENDERS OFFICE
133 N. INDUSTRIAL BLVD., LB 2
FRANK CROWLEY COURT BLDG.
DALLAS, TEXAS  75207
TEL. 214-653-3550

VOLUME 4

PRETRIAL HEARING

APRIL 21ST, 2009                                    PAGE    VOL.

PROCEEDINGS.................................    3      4

CASE CALLED BY THE COURT...................    3      4

HEARING....................................    3      4

ADJOURNMENT................................   37      4

REPORTER'S CERTIFICATE.....................   38      4

REPORTER'S RECORD

VOLUME 4 OF _____ VOLUMES

TRIAL COURT CAUSE NO. F08-24667-Y

| | |
|---|---|
| THE STATE OF TEXAS | ) IN THE CRIMINAL DISTRICT |
| | ) |
| | ) |
| VS. | ) COURT NO. 7 |
| | ) |
| JAMES GARFIELD BROADNAX | ) Of DALLAS COUNTY, TEXAS |

============================================================

PRETRIAL HEARING

============================================================

On the 21ST day of APRIL, 2009, the following proceedings came on to be heard in the above-entitled and -numbered cause to be heard before the Honorable MICHAEL SNIPES, Judge presiding, held in Dallas, Dallas County, Texas;

Proceedings reported by machine shorthand; computer-aided transcription.

---

VOLUME 4

PRETRIAL HEARING

APRIL 21ST, 2009                                    PAGE   VOL.

PROCEEDINGS................................    3      4
CASE CALLED BY THE COURT..................    3      4
HEARING...................................    3      4
ADJOURNMENT...............................   37      4
REPORTER'S CERTIFICATE....................   38      4

---

A P P E A R A N C E S

FOR THE STATE OF TEXAS:

HONORABLE DAVID M. ALEX
SBOT NO. 24003256
HONORABLE LISA SMITH
SBOT NO. 00787131
HONORABLE GORDON HIKEL
SBOT NO. 00787696
HONORABLE ANDREA HANDLEY
SBOT NO. 08898800
HONORABLE ELAINE EVANS
SBOT NO. 24032880
133 N. INDUSTRIAL BLVD.
FRANK CROWLEY COURTHOUSE
DALLAS, TEXAS 75207
TEL. 214-653-3600

FOR THE DEFENDANT:

HONORABLE BRAD LOLLAR
SBOT NO. 12508700
1700 COMMERCE ST, STE. 404
DALLAS, TEXAS 75201
TEL. 214-384-8178

HONORABLE DOUGLAS H. PARKS
SBOT NO. 15520000
321 CALM WATER LANE
HOLLY LAKE RANCH, TEXAS 75765
TEL. 903-769-3120

HONORABLE KERI MALLON
SBOT NO. 24049165
DALLAS COUNTY PUBLIC DEFENDERS OFFICE
133 N. INDUSTRIAL BLVD., LB 2
FRANK CROWLEY COURT BLDG.
DALLAS, TEXAS 75207
TEL. 214-653-3550

---

3

P R O C E E D I N G S

(Court convened.)

THE COURT: This is State of Texas versus James Broadnax, Cause Number F08-24667.

Ms. Evans, could I ask you to call Ms. O'Neal in the staff's attorney's office? The number is 5859.

MS. EVANS: Uh-huh. Yes, Judge.

THE COURT: If that's busy, try 5724.

This is a hearing on a variety, or shall we say, a plethora of motions that have been filed by both sides.

And, Mr. Alex, can you succinctly tell me how we can quickly dispose of as many as possible of these without a bunch of litigation?

MR. ALEX: Judge, I would rec -- I would suggest that perhaps the trial motions which start with 14 through 36, if we were -- if we were pressed for time, would probably do all the parties the best good.

The first seven are constitutional motions, which I think the State will argue against and the defense will argue for, so there will probably be argument as it relates to those.

THE COURT: Are you talking about -- when you say 14 through whatever, what are you referring to?

4

MR. ALEX: That's the -- the number of the motion in the -- in the index of the pretrial motions. Do you have the index?

THE COURT: Yeah. Okay.

MR. ALEX: So motions relevant to trial matters, 14 through 36, would at least get all parties -- I think we've got a lot of agreements there. That would be done pretty quickly.

THE COURT: Okay. All right.

MR. ALEX: And then --

THE COURT: Stop. Stop.

MR. ALEX: Okay.

THE COURT: Okay. As to 14 through 36, which ones do you oppose?

MR. ALEX: The -- the first one, Judge, is -- if you don't mind, I'll go through it quickly -- Roman Numeral I, Judge, we've agreed to. That's just Brady.

Roman Numeral II, I think we --

THE COURT: Whoa, whoa, whoa. We've got 14 through 36, and now you're talking about Roman numerals.

MR. ALEX: Well, inside of the 14 is an omnibus pretrial motion.

THE COURT: Okay. So you're talking about

5

Number 14.

MR. ALEX: Yes, sir.

THE COURT: Okay.

MR. ALEX: And it's titled Omnibus Pretrial Motion.

THE COURT: What page is that?

MR. ALEX: That is going to be Page 92, Your Honor.

THE COURT: Okay. I'll tell you what. I'm going to -- I'm going to take over.

MR. ALEX: Okay.

THE COURT: Okay. As to the Omnibus Pretrial Motion contained on Page 92 of the defense motion book, the motion for exculpatory or mitigating evidence is granted.

And, Mr. Lollar, will there actually be a need for an identification hearing?

MR. LOLLAR: Judge, if we could hold that?

THE COURT: You don't know yet?

MR. LOLLAR: Don't know yet.

THE COURT: Okay. That's held in abeyance.

I love how antiquated the law can be.

With regard to the confessions or statement hearing, there will be no sub rosa hearing.

6

There may be a hearing. Now, do you need one?

MR. LOLLAR: Judge, we have filed a separate motion -- first of all, it's our understanding that the defendant made no statements -- well, I take that back. There is a statement made to police. We will need to have a hearing in regard to that statement.

THE COURT: Okay.

MR. LOLLAR: There are additionally statements to which we have filed a separate motion concerning the defendant's statements made to the media.

THE COURT: Right. Those are not Jackson versus Denno though.

MR. LOLLAR: Correct.

THE COURT: Okay. Now, with regard to this, what is your suggestion as to the best time to have this hearing?

MR. LOLLAR: Well, I think we are going to have several of the motions that are going to require actual live testimony, and we need to just agree on a date in advance of trial for us to have that set of hearings.

THE COURT: Okay. What's our trial date on this?

7

MR. LOLLAR: Sir?

THE COURT: What's our trial date?

MR. ALEX: It's July --

MR. LOLLAR: July 27th.

THE COURT: Okay. And what's the Friday before that?

MR. LOLLAR: That would be --

THE COURT: 26, 25 -- 24?

MS. EVANS: Yes.

THE COURT: Okay. July 24th, starting at 8:30, and all day, will be every single litigated motion hearing that we need to do. Every one of them.

MR. LOLLAR: Could I suggest we start that on Thursday instead of Friday?

THE COURT: Yep. And -- and your suggestion is granted.

MR. LOLLAR: Okay. And if we lap over into Friday, then that won't interfere with anything.

THE COURT: All right. I agree with that. So it will be July 23rd starting at 8:30 for all hearings.

MR. ALEX: And that is a non-jury week, Judge, so if you -- once we went through them all, if you thought maybe that wasn't enough time, then we could potentially go earlier than that.

8

THE COURT: Okay. So that is set for -- let's do that one first. July 23rd, 8:30.

MR. LOLLAR: Yes, sir.

THE COURT: Disclosure of physical evidence is granted.

List of witnesses is granted.

When are you going to have that, Mr. Alex?

MR. ALEX: Judge, I was looking at the calendar, and I was going to propose that when we start the -- we start individuals on -- on May 26th, that would be a whole -- actually, almost two months before the trial. I would -- I would -- it would be pretty exhaustive at that point.

THE COURT: When did you think it was?

MR. ALEX: I'm sorry?

THE COURT: When did you say?

MR. ALEX: May 26th.

THE COURT: Is that okay, Mr. Lollar?

MR. LOLLAR: Yes, sir.

THE COURT: All right. 26 May, witness list filed.

As to the request for impeachment evidence/extraneous offenses, the Court does order that the notice be given of that. And that notice will take the form of both a notice in a traditional sense, and

9

then what was previously recommended by the State, which was to give sort of a -- an overall disclosure to make sure that everything was covered. If we do both, it can't hurt.

So the motion refers to hearings. What's the reason for that, Mr. Lollar?

MR. LOLLAR: In the event that the State has some extraneous transactions or other things like that, we do request a hearing outside the presence of the jury so that the Court can do the balancing required by Rules 403 and 404.

THE COURT: Okay. Is there such evidence, Mr. Alex?

MR. ALEX: Judge, in -- in -- in the State's case-in-chief, I don't anticipate that we would be putting in anything other than the -- the capital murders that we're talking about here and now, and if something should come up, if the defendant should testify, open the door, or through cross-examination, if we think something is opened up, we would surely approach the Court and in -- in way of a Motion in Limine, -- and I think there's also a Motion in Limine -- we wouldn't just go into it without first approaching.

THE COURT: Well, there's no reason for

10

any hearings.

MR. ALEX: Judge, could I just ask for one thing?

At the bottom of Page 95, -- and I don't know if this is part of the motion, -- there's just a statement, and if we're going to grant this, I think we need to maybe excise that statement and -- or at least for clarification. It appears that he wants -- if we're granting that, are we granting also this objection that no extraneous material can come in? It's a little confusing there.

THE COURT: Okay. It's not confusing to me.

MR. ALEX: Okay.

THE COURT: The Court will follow the Rules of Evidence --

MR. ALEX: Thank you, sir.

THE COURT: -- like the Court always does. Exactly, without exception. No more, no less.

MR. ALEX: Thank you, sir.

THE COURT: The Jury shuffle is in abeyance.

Request for arraignment is granted.

Regular trial is granted.

Written statements is granted.

11

Grand Jury testimony is denied unless somebody can show me why we need to do that.

MR. ALEX: And I checked into it, Judge. There was nobody who testified at -- at the Grand Jury that was recorded, so it's not applicable to this case.

THE COURT: Right.

Okay. Proof of legality of search in this case, was there a search warrant in this case.

MR. ALEX: There was not a search warrant, Judge. There was an arrest in Texarkana in which evidence was seized out of the victim's car that the defendant was driving. And if they want a Motion to Suppress on that, I'll have -- I can have the officers from Texarkana come down as early as you'd like for them to. I don't know if that's what --

THE COURT: So it's a search incident to arrest?

MR. ALEX: Yeah, that was a search incident to arrest.

THE COURT: Is that what you're challenging, Mr. Lollar?

MR. LOLLAR: Yes, sir.

THE COURT: We'll have that hearing on the 23rd.

MR. ALEX: And if I may, Judge, I -- I

12

think I'll do a bit of a trial brief on that because it may -- it may diffuse the notion that we need live testimony, because the defendant would have been driving the victim's car. I'm not sure he'd have standing to contest that, but I'll brief it and give counsel an opportunity to respond.

THE COURT: And actually, let's handle that now. If that's the case, how does he have standing?

MR. LOLLAR: He wouldn't.

THE COURT: Correct. There will be no hearing on that. So that motion is denied.

Impeachment evidence of State's witnesses is granted.

Certified documents. Are there any, Mr. Alex?

MR. ALEX: There will be, Judge. It will be certified documents and there will also be business records that we will introduce, and I'll have those filed in a timely manner, probably at the same time I file the list of witnesses.

THE COURT: Okay. So that motion is granted.

Election of punishment's granted, although I do want a separate form for that.

13

MR. LOLLAR: Yes, sir.

THE COURT: Reasonable expenditures is granted.

Was there really a case -- off the record.

(Off-the-record discussion was had.)

THE COURT: Back on the record.

That motion is denied.

Batson hearing.

MR. LOLLAR: We ask that be held, Your Honor.

THE COURT: Okay. And that would appear to take care of all of the so-called omnibus motions.

Is there anything else in there that you want to take up, Mr. Lollar?

MR. LOLLAR: No, sir.

THE COURT: Okay. So, we have 34 minutes. What next, Mr. Alex?

MR. ALEX: 15 -- actually, there's 15 through 36 are all trial-related motions.

The omnibus was just the tip of the iceberg.

THE COURT: Okay. All right. As to 15 through 36, are there any of those that you agree to?

MR. ALEX: Yes, sir. I will agree, if we start with 15, it's a Motion For Discovery in death

14

penalty case, I agree to Roman Numeral I.

THE COURT: Have we got -- these have motions within the motions.

MR. ALEX: Yes, sir.

THE COURT: All right. Okay. Next?

MR. ALEX: And on Page 107, we agreed to subsection A --

THE COURT: Hold on. I'll tell you what. I'm going to do this again.

MR. ALEX: Okay.

THE COURT: A is granted.

B is granted.

C is granted.

D, it seems like I need to deny that. What's that all about, Mr. Lollar?

MR. LOLLAR: In regard to any prior trials or hearings, in cases dealings with the prosecution of the defendant, first of all, I don't think there have been any, so I think it's moot.

THE COURT: It's denied as moot.

Any statement, whether written or oral of any possible witness, to the extent that the State has that, it's granted.

MR. ALEX: And, Judge, if I can, I hate to interrupt. I -- I intend to turn over everything I

15

have to the defense.

THE COURT: Right.

MR. ALEX: And if there's other stuff out there in another state or -- or -- I just can't be held to that.

THE COURT: I understand that.

MR. ALEX: All right. I've done your job. You're right.

Okay. A lot of these are, for the record, granted to the extent the State either has it or is capable of doing it, so 3 is granted. But that doesn't mean, for the record, that Mr. Alex has got to get in his car and drive around the country looking for this stuff. He doesn't.

Same as to 4, 5, 6, 7.

And what I mean by that is, all of these things are not things which Mr. Alex has normal capacity, or Mr. Hikel, or Ms. Handley would -- would have access to, but if it's somehow presented to them, then they have to give it up. That's all that means.

MR. ALEX: We understand completely, Your Honor.

Can I -- can I make one request, Judge, as it relates to the foregoing rulings on the motions that address addresses and telephone numbers? There's

16

certain witnesses that have requested that I not turn over their addresses and telephone numbers to the defense. And if need be, I -- I told them that the defense would -- it wouldn't stop the defense from talking to them.

I could bring them to court and let them talk to them if they prefer that. There's just always that -- that gray area when it comes to address and telephone numbers, especially of civilians, when I turn it over. Obviously, if the Court orders me to, I will.

THE COURT: No, I'm not going to order you to do that. You don't have to do that.

MR. ALEX: Okay.

THE COURT: The witnesses have the complete right to talk to any lawyers they want to. On the other hand, they don't have to. But that doesn't mean that they -- either side's lawyers are required to give up addresses for people. They just can't prevent the other side from going and talking to them. That's the law on that.

MR. ALEX: Thank you, Judge.

THE COURT: So 8 is granted, except for addresses and phone numbers.

Now, having said all that, I -- I believe that I've been extremely magnanimous to the defense

17

with regard to your requests for investigators and so forth, and they can go out and find all this out. I mean, God help them, okay?

MR. LOLLAR: And if we have a particular difficulty or a particularized need, then I'll come and --

THE COURT: Right.

MR. LOLLAR: -- make a request --

THE COURT: Right.

MR. LOLLAR: -- in that regard.

THE COURT: 9 is granted.

10 is granted.

All of this is with the caveat that I previously stated. This doesn't mean that Mr. Alex has got to drive around the country looking for this.

11's granted.

12's granted:

13 through 17 are granted.

18 through 20 are granted.

21 is granted.

All right. That takes care of that.

Now we're back to Motion for the State to Disclose Names and Addresses of Persons Offering Testimony, in other words, expert witnesses.

How many experts you got, Mr. Alex?

18

MR. ALEX: Oh, I anticipate at least, if we're counting the medical examiner and DNA and the traditional experts, probably about four or five. The only one that would be special to this case would probably be Dr. Price, who may even be testifying in rebuttal.

And if -- counsel and I will probably get together with our expert witnesses, Judge, and -- and -- and get those hearings scheduled for the Court on one of those two days, depending on, you know, who we think we're going to actually call.

THE COURT: Okay.

MR. ALEX: And I do intend to also give the notice -- the notice that's requested here.

THE COURT: Aren't there pretty much plain vanilla experts? I mean, the usual ones I see up here?

MR. ALEX: Judge, these are the ones that usually testify. I'm not going to Arizona or anywhere to fly an expert to -- Dr. Price testifies in almost all of the states.

THE COURT: Why do we need to have a hearing on this, Mr. Lollar?

MR. LOLLAR: Well, Dr. Price, if I am thinking of the right guy, is the future dangerousness guy.

19

MR. ALEX: No. Dr. Randy Price is going to be the -- he would -- he would talk about if there's any issues raised about the defendant's mental health. He would either be rebutting that or he would be testifying to the records that would already be in evidence.

THE COURT: We would need to have a hearing about that. That is novel, but --

MR. ALEX: Sure.

MR. LOLLAR: Yes, sir.

Yeah, I'm not asking for a hearing on a medical examiner, --

THE COURT: Right. Or any DNA guy or --

MR. LOLLAR: -- if it's one of ours out at SWIFS.

No, I don't think about any DNA.

THE COURT: Is there a DNA expert?

MR. ALEX: There will -- there will be a -- it's minimal, Judge, because of the effect of it is minimal in this case.

THE COURT: All right. So there's no reason to have a hearing on that.

MR. LOLLAR: I don't think so, but if we could hold that, and I'll find out once I know what it is.

20

THE COURT: Okay. Let's tentatively set expert witness hearings to the extent that we need to have them. And I'm discouraging that because I'm dubious as to whether we need that or not for Friday the 24th at 8:30.

Is there anything else within 16, Mr. Lollar?

MR. LOLLAR: No, sir.

THE COURT: Okay. 17 is granted.

18 is -- well, we'll figure that out at 8:30 on the 23rd.

Okay. What's 19 about?

MR. LOLLAR: Judge, let me explain. In a case like this, the defendant is brought to court every day, Monday through Thursday, I believe, in our case. They get him up before 5:00 o'clock before they feed him breakfast in the morning. They have him over here at lunch, during the lunch hour. They get a bologna sandwich, and frequently they get them back past the time they are fed a meal at night, so --

THE COURT: Do I have the authority to do this?

MR. LOLLAR: Yes, sir. Frequently done.

THE COURT: I do?

MR. LOLLAR: Yes, sir.

21

THE COURT: I'm looking at my guy over there.

MR. LOLLAR: You just tell them to save him a hot meal.

THE COURT: Okay. Then I'll do it. If I have the authority to do it. I didn't know I did.

MR. LOLLAR: Yes, sir.

THE COURT: Motion for Discovery of Victim Impact Testimony.

You -- you don't have any opposition to that, do you, Mr. Alex?

MR. ALEX: Judge, if I read this correctly, and part of the problem I have with this one is, it -- almost always in the guilt/innocence phase you're going to have somebody introduce the victims, and they're -- that's one of their jobs, is to introduce the victims and personalize them to the jury.

But then in the punishment phase, they're allowed -- there is allowance for a limited amount of victim impact. I don't know -- would you want to have a hearing? Do you want to hear that -- we need to do that twice? I mean, there's -- I mean, it's pretty clear. We do it in every murder case. The victim gets introduced by a family member.

The only thing that would be different

22

here is that in punishment, there's a specific set of laws that basically say that you can't go overboard with it. But it is relevant. Now, if it --

MR. LOLLAR: Well, I think that's -- that's the import of the motion. As Mr. Alex has said, it is a limited amount of information that could be given. Without having a hearing to find out what they're going to say, then we can't limit it.

THE COURT: This is as to punishment, correct?

MR. LOLLAR: Both. In guilt or innocence and punishment.

MR. ALEX: Well, Judge, that's the way --

MR. LOLLAR: There are limitations on how much the State's allowed to get into.

MR. ALEX: Well, that's how a trial works. We only can put in what's relevant and limited. We can't do each witness that way. And this is pretty simple stuff. I mean, I'm not going to be asking the witness who's testifying, you know, can you not sleep at night in guilt/innocence. It's pretty simple stuff.

To introduce the witness to the jury and to do it twice, is just to sort of put that witness through some pretty tough testimony twice.

MR. LOLLAR: And our position is that for

23

the Court to make decisions about the relevance of the testimony and the limitations of the testimony, that we need to do that in advance of the trial.

THE COURT: Okay.

MR. PARKS: It can be done by a proffer, and it won't have to ... well, ...

THE COURT: All right. This appears to me to be form over substance again. As in all murder cases that I've seen, there have been numerous now, I'm sure your first witness is going to be somebody to identify the victims, and that's basically it. They identify the victims, talk about how they know them, just so the jury knows that there's someone that knows this victim.

It has nothing to do about whether they can sleep at night or so forth, and all of that sleeping at night and stuff happens during the punishment phase. So there will be nothing unusual about it.

And so the discovery of the victim impact testimony, though, what exactly are you asking for? There is no need for a hearing on this. I've decided that. But what are you talking about as far as discovery?

MR. LOLLAR: Well, I think it goes --

24

this -- the following motion goes more into what we would object to in terms of requiring the -- the witness's testimony to be relevant to either guilt or innocence, if called during that phase of the trial, or relevant to one of the Special Issues in the punishment phase.

THE COURT: Okay.

MR. LOLLAR: And again, there's a balancing test that --

THE COURT: Yeah, I'm with you.

What exactly, during the guilt/innocence -- that's what I'm worried about now -- are you planning on doing as far as putting your victims on the stand to say that this is my poor-blooded brother or whatever?

MR. ALEX: Judge, I will do what I -- I do in every case, and that is personalize the victim to the jury: Who is he, where was he born, did he work, what did he do for a living. It's just an introduction of the victim to the jury.

I won't be asking the witness -- in fact, what I typically have to do is instruct the witness five or six times not to -- because it's the normal practice of a witness to want to start talking about how much they miss the victim, --

25

THE COURT: Right.

MR. ALEX: -- so it is my practice to -- to tell them, this is not the time.

THE COURT: Right.

MR. ALEX: And if we do it pretrial, we'll just have them up there crying two times instead of one. It's very difficult for the survivor of someone who was brutally murdered to get up there --

THE COURT: Right.

MR. ALEX: -- and testify once.

THE COURT: We're not going to have a hearing on it.

MR. ALEX: And I think -- I mean, I -- I think every witness's testimony has to be relevant, and I don't see how this witness is going to be any different than any other witness in this case. It just sounds like an advisory opinion to me, like how far can we push this in -- in pretrial to make the State give us a script of what they're going to ask the witness.

MR. LOLLAR: Well, I think that's the purpose of having a hearing, I mean, to see how far you can push it.

MR. ALEX: Well, --

THE COURT: Okay. Okay. Okay. Okay. Don't talk amongst yourselves.

26

MR. ALEX: My response would be, Judge, it's just -- it's just not necessary. It's just like any other witness that testifies, and we certainly can't do that with every witness that would testify and have the State proffer to the defense what they're going to ask to make sure that there's nothing -- I'm an officer of the Court. I'm going to do my job.

THE COURT: Okay. Okay. Okay. Okay. I will handle that as it comes up, so there will be no ruling on that one way or another.

What's the Motion in Limine regarding character witnesses, Mr. Lollar?

MR. LOLLAR: The same type of thing, Judge. To make sure that the evidence that is admitted before the jury is relevant to one of the issues, or relevant to guilt or innocence, and that the balancing test has been undertaken by the Court.

THE COURT: Okay. The motion is granted. The Court will follow Texas Rule of Evidence 404(a) and 608(a).

Photographs. What's that about, Mr. Lollar?

MR. LOLLAR: Judge, we would ask the Court to make a -- an examination of the -- any type of photographic or video depiction of the victims in the

27

case prior to the time they're displayed to the jury, to make sure that they are -- that the probativeness is not outweighed by prejudicial value.

THE COURT: All right. But that's something I do in every murder case.

MR. LOLLAR: Very good.

THE COURT: So it's --

MR. ALEX: What I would suggest, Judge, is that we've done this in your court before, with all the evidence we plan on introducing, I will give defense counsel a schedule of evidence and perhaps have a bit of a -- a pretrial with the evidence that I'm going to offer so that the defense will know what the objections would be, and the Judge could give the preliminary ruling at that time.

THE COURT: Okay. I'll do that.

MR. ALEX: And, we could -- I mean, we've -- we've got two days to do this, and it's probably the easiest way for me to get all the evidence down for him to look at as well that I plan on offering.

THE COURT: All right. How is 24 different than anything else than my previous ruling on that?

MR. LOLLAR: It's not.

28

THE COURT: Okay. So 24 is granted in the same way I've previously stated with regard to extraneous offense notice.

And the defendant is eligible for probation, Mr. Lollar?

MR. LOLLAR: He is, Your Honor.

THE COURT: All right. So I'll need a separate application for that.

MR. LOLLAR: Yes, sir.

THE COURT: Motion for Discovery is -- is granted, consistent with the authorities in the State of Texas and the United States.

Motion in Limine regarding prior convictions is granted.

MR. ALEX: Judge, could I request that -- can you give me one second to catch up with you?

Did we -- did we address 22 at all? I know we addressed 21, which was the --

THE COURT: I granted 22. And I specifically cited rule 404(a) and 608(a).

MR. ALEX: Okay. I thought that was 21, but I'll -- I'll catch up.

And then -- where are we at now? Are we on 27?

THE COURT: 28.

29

27 was granted.

28 is granted.

MR. ALEX: I'm sorry, Judge. On -- on 27, are we going to have a hearing?

THE COURT: No, no hearing. Just -- it means that you've got to give everybody's prior criminal record.

MR. ALEX: I understand.

THE COURT: And then we follow 608 and 609.

MR. ALEX: 27 was requesting a hearing, that's why I was asking.

THE COURT: Okay. No hearings.

29 is moot because it's encompassed within our 8:30, 23 July hearing.

Limiting instructions to the jury, I'll give those if they're appropriate.

Motion to Suppress Statements Made to the Media. I'm skipping ahead there because that's important. Let's have that on the 23rd.

MR. ALEX: And, Judge, if I may, I will -- I will -- if the Court entertains that, I will also do a trial brief on that. It may -- it may or may not alleviate the need for live testimony, and there's probably at least four videos that average maybe 30, 45

30

minutes each, and if I do it with a trial brief and counsel responds, then my request would be for the Court to look at those videos at its leisure --

THE COURT: Yeah, I'll do that.

MR. ALEX: -- and then to make a ruling or hear arguments, however the Court decides.

THE COURT: I mean, the -- the potential objection on this is going to be a 401, 403 objection, correct?

MR. LOLLAR: Yes, sir. And additionally, Fifth Amendment, Sixth Amendment, and Fourteenth Amendment. Article I, Section 9, 10 and 19. That's due course.

THE COURT: How is it Fifth Amendment?

MR. LOLLAR: Sir?

THE COURT: How is it Fifth Amendment?

MR. LOLLAR: Due process.

THE COURT: Oh. All right. Okay.

MR. ALEX: Which number was that? I'm sorry.

THE COURT: That's Number 33.

MR. ALEX: Okay.

THE COURT: What's 31 about, Mr. Lollar?

MR. LOLLAR: 31? It goes back to the issue of relevance, requiring the State to prove

31

relevance of character impact testimony.

THE COURT: Okay. And I previously ruled on that, correct?

MR. LOLLAR: Yes, sir.

THE COURT: All right. 32 appears to be encompassed within the -- the hearings at 8:30 on 23 July.

MR. LOLLAR: Yes, sir.

THE COURT: Okay. Discovery related to DNA, you're basically just going to give them whatever you got on that, right, Mr. Alex?

MR. ALEX: Yes, sir. And I think what counsel was asking for is for all the underlying data, probably the whole file from the analyst, and that shouldn't be a problem. This is DPS, and I don't know if they'll feel comfortable just mailing him a packet with the whole file, so he may have to work it out with the investigator, whatever, on getting a copy of it from them, but I will certainly make sure that they understand your ruling for them to give it, --

THE COURT: Right.

MR. ALEX: -- and I don't think it will be a problem.

THE COURT: All right. Okay. We've already talked about 35.

32

36 is granted.

37 is denied, unless somehow the State's trying to do something that's not consistent with the Code of Criminal Procedure or the Rules of Evidence.

Is there going to be any evidence about violent acts committed by others in prison, Mr. Alex?

MR. ALEX: What? I'm sorry, Judge. Which one are we on?

THE COURT: Number 38.

MR. ALEX: 38? There will be, potentially, Judge, a witness that will be testifying to the prison system and the potential for violence in the prison system, especially since one of the issues is going to revolve around what is the community in which the potential for violence could happen.

And that's -- that's a witness that's probably testifying in every -- every one of these cases that I've seen.

THE COURT: Do you have any authority for that being precluded, Mr. Lollar?

MR. LOLLAR: Well, we think the -- the logic of it would preclude it, Your Honor. They're going to talk about events --

THE COURT: No. Authority.

MR. LOLLAR: -- that this defendant will

33

not have participated in.

THE COURT: Is there any authority to support your position?

MR. LOLLAR: Authority? No.

MR. PARKS: Well, --

MR. LOLLAR: Well, hold on. Hold on.

MR. PARKS: Judge, if I can interrupt. I have expanded on that particular motion in one that I filed that -- that names A.P. Merrilot who is the person that the State is now generally calling.

THE COURT: I think my staff attorneys are going to need to take a look at that.

MR. PARKS: Sales -v- State is quoted in that. Generally, the State agrees to it.

MR. ALEX: I'm sorry? I didn't hear the last part.

THE COURT: Well, while we're messing around with that, I don't want to waste any time. As to 39, the State's not going to oppose that, are they?

MR. ALEX: Judge, there's -- there's absolutely no authority for that at all. That's one of the issues that the appellate court -- I mean, my appellate lawyer, Christi Dean, has that looked up, and --

THE COURT: What's the harm of letting

34

them do that?

MS. DEAN: It's irrelevant and --

THE COURT: How is that harmful?

MR. ALEX: How is it harmful, Judge?

THE COURT: Yeah. To anybody's case.

MR. ALEX: To -- to allow in material that's not relevant to the jury, it is very confusing to the jury in that respect because there -- they will be considering things that the law has basically said is not relevant.

THE COURT: Okay. I'm going to -- I'll take a look at that. I doubt that there's any authority on that one way or the other, and my initial inclination is to allow it, but I'll take a look at that and see what the law says. I don't think that's going to hurt anybody, but I'll look at it.

The -- Number 40, Motion in Limine to Exclude Psychiatric Or Psychological Testimony Concerning Future Dangerousness is denied.

Motion for jury instruction. What's that about, Mr. Lollar?

MR. LOLLAR: Judge, I think we need to hold that till the appropriate time. That is just to give you notice of things we're going to be requesting in the Jury Charge, if we get to that portion.

35

THE COURT: Okay. Speaking of the appropriate time, I think that now is the appropriate time to stop this hearing, and we'll continue it as need be, probably before the 23rd of July.

We would have started earlier, but we've got this jail issue, and I've got a jury trial and I don't really want to do anything else on this case today.

Yes, sir.

MR. LOLLAR: Might we -- might we address one issue?

THE COURT: Yes, sir.

MR. LOLLAR: And that has to do with the individual voir dire. One of our motions is to allow us to videotape the examination of the individual jurors as we question them.

THE COURT: Uh-huh.

MR. LOLLAR: I brought for the Court what we would be using sitting up here in the back of the courtroom --

THE COURT: Is there any objection from the State on that?

MR. ALEX: Yes, sir.

THE COURT: What?

MR. ALEX: Judge, I will speak to that and

36

I will let Miss Dean speak to it as well.

The -- we're going to be asking these folks about probably some of their most personal things. It's got to be -- what we see in here is the chilling effect just from being -- sitting over here, but they're going to be sitting over here. They're going to have the focus of the whole Court on them, and we're trying to get from them the truth about how they feel about somebody's life --

THE COURT: Hold on. Do you have any authority for that?

MR. LOLLAR: The courts have consistently held that as advances in science and technology come along, we ought to utilize them. I can get you authority to that. And the bottom line is this would preserve for meaningful appellate review things such as, I strike them because of their facial expressions, I struck them because of the way their body was turned, and allow an appellate court to meaningfully go back and look, apart from the cold record which is made.

THE COURT: That's an excellent motion. It's denied, unless you can show me some authority for it.

Anything else?

MR. LOLLAR: Not at this time.

37

THE COURT: All right. Good. We're in recess.

Thank you very much, everybody.

MR. ALEX: And, Judge, we'll -- we'll get together on the other motions, and if there's anything that we definitely need a ruling on so we can continue to go over them, we'll get with you and set another date. Is that all right?

THE COURT: Yes.

(Court adjourned.)

38

THE STATE OF TEXAS )

COUNTY OF DALLAS   )

I, SHARON HAZLEWOOD, Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do HEREBY CERTIFY that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

Witness my hand this the 1st day of _____ June , 2010.

_Sharon Hzld_

SHARON HAZLEWOOD, CSR
Certified Shorthand Reporter
Official Court Reporter
Criminal District Court No. 7
972-739-3906
Texas CSR No. 628
Expiration Date:  12/31/10