AP-76207

REPORTER'S RECORD

VOLUME 5 OF _____ VOLUMES

TRIAL COURT CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE CRIMINAL DISTRICT |
| | ) | |
| VS. | ) | COURT NO. 7 |
| | ) | |
| JAMES GARFIELD BROADNAX | ) | Of DALLAS COUNTY, TEXAS |

**ORIGINAL**

=================================================================

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2010

Louise Pearson, Clerk

JURY PANEL VOIR DIRE

=================================================================

On the 24TH day of APRIL, 2009, the following proceedings came on to be heard in the above-entitled and -numbered cause to be heard before the Honorable MICHAEL SNIPES, Judge presiding, held in Dallas, Dallas County, Texas;

Proceedings reported by machine shorthand; computer-aided transcription.

*SHARON HAZLEWOOD, CSR          972-739-3906*
*CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TEXAS*

APPEARANCES

FOR THE STATE OF TEXAS:

    HONORABLE DAVID M. ALEX
    SBOT NO. 24003256
    HONORABLE LISA SMITH
    SBOT NO. 00787131
    HONORABLE GORDON HIKEL
    SBOT NO. 00787696
    HONORABLE ANDREA HANDLEY
    SBOT NO. 08898800
    HONORABLE ELAINE EVANS
    SBOT NO. 24032880
    133 N. INDUSTRIAL BLVD.
    FRANK CROWLEY COURTHOUSE
    DALLAS, TEXAS 75207
    TEL. 214-653-3600


FOR THE DEFENDANT:

    HONORABLE BRAD LOLLAR
    SBOT NO. 12508700
    1700 COMMERCE ST, STE. 404
    DALLAS, TEXAS 75201
    TEL. 214-384-8178

    HONORABLE DOUGLAS H. PARKS
    SBOT NO. 15520000
    321 CALM WATER LANE
    HOLLY LAKE RANCH, TEXAS 75765
    TEL. 903-769-3120

    HONORABLE KERI MALLON
    SBOT NO. 24049165
    DALLAS COUNTY PUBLIC DEFENDERS OFFICE
    133 N. INDUSTRIAL BLVD., LB 2
    FRANK CROWLEY COURT BLDG.
    DALLAS, TEXAS  75207
    TEL. 214-653-3550

i

## VOLUME 5

## JURY PANEL VOIR DIRE

APRIL 24TH, 2009

|  | PAGE | VOL. |
|---|---|---|
| PROCEEDINGS. | 3 | 5 |
| CASE CALLED BY THE COURT | 3 | 5 |
| VOIR DIRE BY THE COURT | 3 | 5 |
| ADJOURNMENT | 65 | 5 |
| REPORTER'S CERTIFICATE | 66 | 5 |

REPORTER'S RECORD

VOLUME 5 OF _____ VOLUMES

TRIAL COURT CAUSE NO. F08-24667-Y

THE STATE OF TEXAS ) IN THE CRIMINAL DISTRICT
)
)
)
VS. ) COURT NO. 7
)
)
JAMES GARFIELD BROADNAX ) Of DALLAS COUNTY, TEXAS

===========================================================

JURY PANEL VOIR DIRE

===========================================================

On the 24TH day of APRIL, 2009, the following proceedings came on to be heard in the above-entitled and -numbered cause to be heard before the Honorable MICHAEL SNIPES, Judge presiding, held in Dallas, Dallas County, Texas;

Proceedings reported by machine shorthand; computer-aided transcription.

---

VOLUME 5

JURY PANEL VOIR DIRE

APRIL 24TH, 2009                                    PAGE   VOL.

PROCEEDINGS................................    3      5
CASE CALLED BY THE COURT..................    3      5

VOIR DIRE BY THE COURT....................    3      5

ADJOURNMENT...............................   65      5

REPORTER'S CERTIFICATE....................   66      5

---

APPEARANCES

FOR THE STATE OF TEXAS:

HONORABLE DAVID M. ALEX
SBOT NO. 24003256
HONORABLE LISA SMITH
SBOT NO. 00787131
HONORABLE GORDON HIKEL
SBOT NO. 00787696
HONORABLE ANDREA HANDLEY
SBOT NO. 08898800
HONORABLE ELAINE EVANS
SBOT NO. 24032880
133 N. INDUSTRIAL BLVD.
FRANK CROWLEY COURTHOUSE
DALLAS, TEXAS 75207
TEL. 214-653-3600

FOR THE DEFENDANT:

HONORABLE BRAD LOLLAR
SBOT NO. 12508700
1700 COMMERCE ST, STE. 404
DALLAS, TEXAS 75201
TEL. 214-384-8178

HONORABLE DOUGLAS H. PARKS
SBOT NO. 15520000
321 CALM WATER LANE
HOLLY LAKE RANCH, TEXAS 75765
TEL. 903-769-3120

HONORABLE KERI MALLON
SBOT NO. 24049165
DALLAS COUNTY PUBLIC DEFENDERS OFFICE
133 N. INDUSTRIAL BLVD., LB 2
FRANK CROWLEY COURT BLDG.
DALLAS, TEXAS 75207
TEL. 214-653-3550

---

PROCEEDINGS

(Court convened; jury panel present.)

THE COURT: Good morning, ladies and gentlemen. Can you hear me in the back all right?

My name is Mike Snipes. I'm the presiding Judge for Criminal District Court Number 7.

I want to thank all of you for being here on time this morning for this very important duty that you're about -- about to engage in.

The case that you're going to be participating in is the State of Texas versus James Broadnax. This is Cause Number F08-24667.

The first thing I need for you to do is to please stand and raise your right hand so that I can administer the oath. The answer to the oath will be "I do."

(Panel of Venire sworn.)

THE COURT: Take your seats, please.

Again, I do want to appreciate [sic] you all being here. You're not going to be here all that terribly long this morning. I'll be talking to you for about 15 minutes and then after that, you're going to be filling out a questionnaire. And it just depends on how long it takes you to fill out the questionnaire, so you won't be here very long.

4

The first thing I want to do in this case is I want to introduce the outstanding lawyers for both sides in this case.

For the State of Texas, is Mr. David Alex.

MR. ALEX: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: Mr. Gordon Hikel.

MR. HIKEL: Good morning, ladies and gentlemen.

PANEL OF VENIRE: Good morning.

THE COURT: Ms. Andrea Handley.

MS. HANDLEY: Good morning, ladies and gentlemen.

PANEL OF VENIRE: Good morning.

THE COURT: And Miss Elaine Evans.

MS. EVANS: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: And for the defense is Mr. Brad Lollar.

MR. LOLLAR: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: Mr. Doug Parks.

MR. PARKS: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: And Miss Keri Mallon.

5

MS. MALLON: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: All of these lawyers have practiced in front of me before. I can assure you, they're outstanding lawyers with the highest ethical standards.

The defendant in this case is Mr. James Broadnax. And that's him there.

Mr. Broadnax is charged with capital murder. The range of punishment for capital murder is either life in prison without parole or death by lethal injection. The law gives the State the right to choose whether they pursue the death penalty or not, and in this case, they have exercised that right and decided to pursue the death penalty. That's why you are all here.

You are what is called a special venire, meaning we called you just for this case. Usually we do not bring jurors down on Fridays, but the law allows us to do so, and the reason we bring so many of you down is because in a death penalty case, we are going to be talking to you one at a time. We are not -- we're doing that today, so don't worry about that.

You will be set up for appointments in the future. And we do not need to talk to all of you at

6

one time. That's the reason you'll fill out the questionnaire, because whether or not you sit as a juror will be based in large part on the answers that you give to the questionnaire.

This is our elected District Attorney Mr. Craig Watkins there.

MR. WATKINS: Good morning.

PANEL OF VENIRE: Good morning.

THE COURT: That process saves all of you a bunch of time. Otherwise, we'd have to speak to every single one of you one at a time in numerical order, and that would just take forever. As it stands, it takes us about seven weeks to do this, and so it just takes awhile. This is the beginning process for that.

I'm going to talk to you about some general principles of law this morning. Then you'll fill out the questionnaires, and then anyone who is disqualified to serve as jurors will line up and I will talk to you individually. And anybody that wishes to use an exemption can also line up and I will talk to you.

Now, Mr. Alex, where are we having them line up?

MR. ALEX: The line will start right here,

7

sir.

THE COURT: Okay. The line will start right here to the left. I will not, though, talk to anybody who has any other reason that they can't serve. Things like vacations and so forth. It's not because I don't want to talk to you, it's just because if I -- if I talk to all of you individually, we'd be here all day and then some. It's just too much.

So that's why I tell you, it's very important to be forthcoming on the questionnaire. We will read the questionnaires. Any issues you have at all, just put it in your questionnaire and then we'll know about it.

Our plan is that we we're going to start the individual voir dire, that is, individual jury selection where we talk to you one at a time, beginning on May the 26th. That's the day after Memorial Day. That is our hope. We have to go in numerical order, so we start at the beginning and move through the jury list.

We will bring three of you down at 9:30 in morning and we'll bring two of you down at 1:30 in the afternoon.

Each side has approximately 45 minutes to talk to you, the potential jurors.

So what we do is, we have you come up to the court and when it is your turn to come into the courtroom, you'll actually sit on the witness stand and answer questions from the lawyers for both sides, potentially me.

I like to tell you that in advance so that you can get in your head what the schedule's going to be on this because it may be somewhat intimidating for people. Many people have never been on the witness stand before. I understand that. I promise you that none of these lawyers will do anything unfair or will abuse you in any way.

I'll be presiding over this situation, or possibly another judge in -- in my place so that I can try other cases.

We cannot predict how long a juror may last on the witness stand. Some jurors take five minutes. The lawyers may decide they don't want you as a juror. Or it could go the full 45 minutes for either side -- for each side. That's why we have three of you here before lunch and two of you in the afternoon.

What I'm saying is, if you're one of the three, you may be the last one called into the courtroom. You need to be sure and bring something to read, something to do while you're waiting.

If we're going to talk to you, you will receive a phone call from my court coordinator, Sharon Johnson. That's her, this nice lady over here in the pink. Please make sure you put on the questionnaire all the correct telephone numbers that you have. You will receive at least 48 hours' notice in advance, and hopefully more time than that.

We do -- do have to go in numerical order, so we do not have a lot of flexibility on when you need to come down, but we understand you have lives. We try to work with you as best as we can, but when we call you and tell you what your slot is, pretty much we really need you then.

As I'm sure you can understand, this is an extremely important case. We can maybe bring you in the afternoon instead of the morning, but usually nothing more than that, so you pretty much need to come down when we ask you to.

We're hoping to begin the actual trial of this case on July 27th. We're setting aside two weeks for the trial. It probably won't take that long, but we're setting that time aside just to be safe.

So if you've got something going on the week of July 27th, vacation, something like that, then that would be something you would write on your questionnaire. And really, anything else along those lines because the trial could be pushed back another week or something like that.

When you do fill out your questionnaire, it's very important you write very clearly. Some of you may think you have great penmanship, but I can assure you that I've been reading over hundreds of these and it gets hard for us to read them at times, so please print. It makes it much easier on us. Even if you have nice penmanship, please print.

Hold on a second.

It's also very important that you bear down and write really hard. Make it very clear, because we make copies in order to have a set for each attorney. Don't worry about these questionnaires. They are confidential. By that, I mean, nobody else is going to see them.

For those not selected to be on the jury, you questionnaires are destroyed. And the people that actually sit on the jury, your questionnaires are saved, but they're under seal so they're not available to the general public to look at.

Your names are under seal after the trial, so for the rest of you that don't end up on the jury, your questionnaires will be destroyed, as I said.

Questionnaires are a big timesaver because otherwise, we'd have to talk to every single one of you, and virtually limitless amounts of time, so we don't want to do that. It's very important you fill everything out.

Let me go back to the oath that you took just a minute ago. The oath I gave you said that you would tell the truth, and that means answering the questions truthfully. Sometimes people don't take that very seriously. It's very important that you answer everything under oath very truthfully. We've had people in the past that wanted to make a joke out of the questionnaire and wrote what they thought were funny answers. If you do that, that's not going to be good for you.

Conceivably, you could be held in contempt. Now, that's not going to happen. Y'all aren't going to do that. You wouldn't be here this morning if you weren't taking this seriously, and I know that and I appreciate that.

If you don't fill everything out, we'll bring you down to answer questions that you did not fill out. You don't -- you do not save yourself any time by not filling something out. It is to your benefit to fill out every single blank space.

12

When you finish filling out your questionnaire, then you will turn it in to one of the bailiffs and they will give you an instruction sheet. If you do not hear from us in the first couple of weeks, don't worry about that.

That does not mean you're off the hook because as I said, it is going to probably take us about seven weeks to pick this jury, so you could potentially not be called until week seven.

I'd love to be able to call each of you when we're not going to use you for this jury and say you're finished, but there's no way, with the volume of people that we have here. We just don't have the manpower to call you and tell you that we're not going to need your service.

Also, I would ask you not to call and find out if you're not going to be serving, because obviously, if all of you called, that would shut down my coordinator's office, and as I said, we're trying lots and lots of other cases. She wouldn't be doing anything but answering those phone calls, so please remember our time constraints.

Be sure all of your phone numbers are correct and on the questionnaire. Most people have home, work and cell phone numbers, so please make sure

13

we have all your numbers so we can reach you.

Also, if for some reason we need to cancel you, we're going to get ahold of you to tell you not to come down, so that works to your benefit also to have your numbers correctly.

Let me ask you about a few areas of law that apply in this type of case, and the law requires that I cover this with you at this point. You do not have to memorize it, but just to orient you -- and whoever's got their cell phone on, if you'd cut that off, I'd appreciate it.

I will tell you first that an Indictment is no evidence of guilt. It's just a piece of paper that lets the State know what it is they have to prove. It gives the defense notice of what it is that the allegations are against them so that they can defend themselves.

The Indictment in this case reads as follows:

(As read:) In the name and by the authority of the State of Texas: The Grand Jury of Dallas County, do present that one James Garfield Broadnax, Defendant, on or about June the 19th, 2008, in the County of Dallas and the State of Texas, did unlawfully then and there intentionally cause the death

14

of Stephen Swan, an individual, hereinafter called the deceased, by shooting the deceased with a firearm, a deadly weapon, and the defendant was then and there in the course of committing and attempting to commit the offense of robbery of the deceased. Against the peace and dignity of the State, signed by Mr. Craig Watkins, your District Attorney, and by the foreman of the Grand Jury.

Now, some of you may think you know a little bit about this case. On the questionnaire there are some questions where we ask you about that. Please give careful thought to those answers. It is very important information for us to know about.

Now the presumption of innocence. The law says that all persons charged with a crime are presumed innocent unless and until the State can prove them guilty of the offense beyond a reasonable doubt.

Mr. Broadnax stands charged before you today -- stands before you today, rather, with a presumption of innocence. You must presume that he's innocent unless and until the State can prove beyond a reasonable doubt all of the elements set out in the Indictment. They have to prove each and every one of them, and if they fail on even one of the elements, then by law, you're required to return a verdict of not

15

guilty.

The burden of proof. The defendant is never required to prove his innocence. The burden always stays on the State to prove their case beyond a reasonable doubt.

If you are selected as a juror on this case, your job is to listen to all the evidence and to base your verdict on the law and -- and evidence applicable to this -- this case.

If, at the conclusion of the first phase of the trial, what is referred to as the guilt/innocence phase of the trial, you find that the State proved their case beyond a reasonable doubt, then you will have to find the defendant guilty. But if the State fails to prove its case beyond a reasonable doubt, then you will return a verdict of not guilty.

If the defendant is found not guilty, that is the conclusion of the trial.

If you find the defendant guilty, then we go to the punishment phase of the trial, and that is where you will hear other information to help you decide what your verdict should be.

In the punishment phase you get two questions, or Special Issues, that you have to answer either yes or no. It is your answer to those two

16

questions or issues that tell me what the sentence should be, whether it's life without parole or a sentence of death.

Now, what is capital murder? You may be thinking, I told you that somebody could potentially be put to death for this offense. What would you have to do? Since I've read to you the Indictment already, you know that in this case the defendant is charged with intentionally taking the life of a person while in the course of committing or attempting to commit robbery. To get to this punishment, it has to be murder plus something else. That means the State must prove murder plus some other aggravating factor that makes it even worse than a regular murder.

A regular murder, for lack of a -- a better description, is knowingly and intentionally taking another person's life without legal justification. We're not talking about self-defense or accident or anything like that. We're talking about the knowing and intentional taking of a person's life.

A murder can become a capital murder if it is an intentional murder plus an aggravated -- an aggravating factor. Some examples of capital murder are intentional murder of a police officer while acting in their official capacity as a police officer, or

17

intentional murder of a child under the age of six years, or intentional murder in the commission of another felony offense.

Here, it has been alleged that there was an intentional murder in the course of robbery. The State is only required to prove those things mentioned in the Indictment. They are not required to prove motive or that this was a premeditated case or that it was planned out. They are only required to prove the elements of the crime as set out in the Indictment.

Some of you may think about, well, I've heard of other cases and I wonder why they are not capital murders. That's because it was not an intentional murder plus something else, the necessary aggravating factor.

I'm now going to talk to you about qualifications and exemptions. Remember, I cannot talk to you about other issues besides qualifications and exemptions today. Put your concerns and issues on your questionnaire.

If you do not get in the line, -- rather, if you do get in the line and the -- and the line may be long and you wait and you get all the way up to us and you say, I just don't think I want to do this, or I have a work problem, I'm going to send you back to your

18

seat and you will have wasted your time standing in that line, so please don't do that.

It's very important that you answer your questionnaires correctly and truthfully. This is a serious case. This is serious business. We're going to have a serious trial. I'm going to make sure that both sides get a fair trial, and we're going to do this by the rules. You-all have to cooperate with that process in order to make it fair. I'm sure that's what all of you want in any kind of a situation like that. That's a fair trial.

So when I call the disqualification issues, these are mandatory. So if you fall into any of these disqualification issues, you must come forward because you cannot serve as a juror. And after I talk about disqualifications, I'm going to talk about exemptions, and those are up to you, whether you want to claim an exemption or not. You don't have to.

So first I'm going to go through disqualifications, and if you fall into one of these categories, you need to get over here, stand in line. The bailiffs will help you. And then after we're finished, we'll talk to you.

The first qualification is you must be 18 years of age or older. So if you're not 18 or older,

19

you need to come up here and get in line, I doubt we're going to have anybody on that.

You must be a citizen of Dallas County. You need to be sure you are still going to be a citizen of Dallas County on July 27th, 2009 when we're going to be trying the case. So if you know you're going to be moving between now and then into a different county, then I need to talk to you about that because you won't be able to serve on this case.

Sometimes, too, with students, we have the parents' address and you've been summoned on that address, but if that's not where you're going to be on July 27th, then you cannot serve.

You must be a citizen of the United States. If you're not here as a citizen, you cannot serve as a juror.

You must be qualified to vote. All right. Here's what that means. That means you must be able to vote. It doesn't mean that you just failed to register. That doesn't get you out of it. But if you're not qualified to vote, then you can't serve and we need you up here.

You must all be of sound mind and good moral character. All of y'all are that.

You must be able to read and write the

20

English language.

If you are legally blind, you can't serve as a juror.

Now this one's a little bit tricky, so pay attention to this. You must not have served as a juror in the last three months in a county court, or six months in a district court for more than five days.

If you've been a juror in the last three months in a county court, that's a trial with a six-person jury, but you served less than six days, then you're fine. You're not disqualified.

If you've been a juror in a district court, that's a trial with a twelve-person jury in the last six months and you served less than six days, you're still okay. If you served more, then you need to come tell me.

You must not have been convicted of any theft. If you have any theft conviction, whether it's misdemeanor or felony, in this state or any other state, it doesn't matter, you can't serve as a juror. If you've been convicted of any kind of felony, you cannot serve as a juror, and once again you need to come forward and we'll take your name off the list.

Finally, if you're under Indictment for any accusation at all, if you are currently indicted

21

for any felony, or you're charged with a misdemeanor theft, then you cannot serve as a juror.

So if you've got pending cases that are felonies or misdemeanor theft, then we need to talk to you about that because you can't serve as a juror at this point. These are the mandatory ones and we need to speak to you, so if you fall into any of those categories, please stand up and come over here now.

Okay. On your questionnaire, if you would, please, put A down because you're a morning panel -- we're going to have an afternoon panel this morning and we'll need to put P on that -- up in the top-right corner of the questionnaire, if you would.

The next category is what are called exemptions. These are voluntary. That means you don't have to use these exemptions. You can if you want to, though.

If you're over 70, then you can exercise that exemption and get in line over here.

If you have custody of a child under ten years of age and you must leave that child without adequate care, and what I mean by that is if you had jury service and it would mean that the child did not have adequate care, then you can exercise a potential exemption.

22

That does not mean you usually work and your child goes to daycare and so you think that gets me out of jury duty. A lot of people have that. It's if you would come down here to serve as a juror and that would result in your leaving the child without adequate care.

If you're a high school student, you can use an exemption.

If you're enrolled and attending college, you can use an exemption. That does not mean you're hoping to go to college or you got an application in. It means that you're actually there now.

If you are an officer or employee of the Texas legislature, then you can exercise an exemption.

If you're the primary caretaker of an invalid, somebody depends on you to take care of them, there's nobody else that could do it.

And finally, if you've served on a jury of six or twelve people in Dallas County at either the George Allen or Frank Crowley court since April 28th, 2008.

So everybody that's in that line over there should fit into one of these categories, and when you get up to the table, if you'll just tell me which category you're in.

23

In a moment, the questionnaires are going to be handed out to you. Please remember the instructions I gave you about filling those out. Hopefully we will see many of you. I appreciate your coming down. And I hope we haven't made this too painful for you.

I'll leave you with this thought. Probably most of you did not know when you were getting ready to go -- go to work this morning or doing whatever you were going to do that you'd have to be -- come down here and be asked your opinion about the death penalty, but that's exactly what we're going to do on this questionnaire.

We're going to ask each of you what you think about the death penalty. Write down your initial response and what you think about that. But between now and the time that you potentially get called down here, I'd advise you to do a lot of thinking about it because it's obviously something a lot of people have problems with or issues with because, of course, it's very, very serious.

I know this is not easy. It's a serious thing. You think through this between now and the time that you come down here, it will be a lot better for you and for us as well.

FIRM NAME

Page 20 to 23 of 66

And so with that, I want to say thank you again this morning. You can start filling out your questionnaires as soon as you have them. If you don't know your juror number, there are those around us who have lists, so just ask for that.

Do not talk about this case or anything else you have heard about today. You may say you're a potential juror in a capital murder case, but that's about it, because if you do, surely enough the person you're talking to is going to say, Oh, I remember the case, and they're going to start telling you about it.

Finally, we all know that there's all kinds of ways to find out information about any event that's happened, particularly today in the -- in the day of the internet, so you can't do any research on the case. Doing so would be a violation of this Court's order and subject you to contempt of court, and I don't want to do that, I can assure you.

Thank you again for being down here, and let's get those questionnaires done.

PROSPECTIVE JUROR: This defendant was a student at A.W. Spence Middle School between 1998 and 2006, I may have know him.

THE COURT: Okay. You need to go over there and stay.

PROSPECTIVE JUROR: Okay. Can I go ahead and fill out the questionnaire in case that doesn't disqualify me?

THE COURT: Yeah.

PROSPECTIVE JUROR: Good morning.

THE COURT: Good morning. What situation do you think you have?

PROSPECTIVE JUROR: I'm a citizen of Ellis County now. I have recently moved and my driver's license has never been changed, so that's why --

THE COURT: And what is your name?

PROSPECTIVE JUROR: Keesha Butler.

THE COURT: Keesha Butler?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything else from either side?

MR. LOLLAR: No.

MS. HANDLEY: Do we need to get her juror number or anything, Judge?

THE COURT: Yes.

MS. HANDLEY: Have you got that on you, ma'am?

PROSPECTIVE JUROR: Yes. If I can find it in this here.

MR. LOLLAR: Do you just want to take

those up as they are disqualified?

THE COURT: Yeah. Anything else?

MS. HANDLEY: Nothing else.

PROSPECTIVE JUROR: Yes. I put my new address on the bottom of the thing.

MS. HANDLEY: Thank you.

THE COURT: You're excused. Bye-bye.

Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: What do you have for us?

PROSPECTIVE JUROR: I'm a school teacher and I'm retiring June the 4th and my wife and I are moving to Tulsa.

THE COURT: Okay. Good. Thank you, sir.

Have you got this thing, your summons?

PROSPECTIVE JUROR: Yes. I apologize. I've been scribbling on it. I didn't realize --

THE COURT: That's okay. Thank you for your service.

PROSPECTIVE JUROR: Thank you.

THE COURT: All right. You're free to go.

MS. HANDLEY: Do you just want to say who it is for the record? Maybe we should have them do their name and number, and that way we know.

THE COURT: That was Herbert McDaniel.

And the first lady's name was Keesha Butler. 832 and 369.

Morning, ma'am.

PROSPECTIVE JUROR: Hi.

THE COURT: Have you got your summons?

PROSPECTIVE JUROR: Yes, I do.

THE COURT: This is Juror Number 1984, Stefannie Golden.

What do you have, ma'am?

PROSPECTIVE JUROR: We have our house for sale and we have a contract on a house in Sulphur Springs, contingent on the sale of our house. We got a contract last night of a potential buyer of our house here, and all of this would take place probably in June.

THE COURT: Okay.

PROSPECTIVE JUROR: I can't say for sure it's going to sell, you know. I can't --

MR. LOLLAR: Congratulations.

PROSPECTIVE JUROR: Yeah, we -- we've been -- you know, we were kind of worried about that.

MR. LOLLAR: We don't have any objection.

MS. HANDLEY: We have no objections, Your Honor.

PROSPECTIVE JUROR: Okay. Thank you.

28

MS. HANDLEY: Congratulations on selling that house.

PROSPECTIVE JUROR: Oh, thank you. Thank you.

THE COURT: Have you got your juror summons?

PROSPECTIVE JUROR: I handed it to somebody when I came in, sir.

THE COURT: Okay. What's your name?

PROSPECTIVE JUROR: David Rose.

THE COURT: David Rose?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: R-O-S-E?

PROSPECTIVE JUROR: Like the flower.

THE COURT: All right, sir. What's your situation?

PROSPECTIVE JUROR: I'm going to be a resident of Johnson County by the time the trial comes around. My wife and I are closing on a house in two weeks in Alvarado.

THE COURT: Any objection from Mr. Rose -- any objection from the State?

MS. HANDLEY: No objection from the State.

MR. LOLLAR: No, Your Honor.

THE COURT: That's David Rose.

29

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Thank you.

PROSPECTIVE JUROR: I've been waiting 14 years for this, and now, man. Because I did the last nine in the Navy, so I had to always cancel all these. Thank you very much.

THE COURT: How are you, sir? Have you got your summons?

PROSPECTIVE JUROR: I do not.

MS. HANDLEY: Some of them have expressed that they handed it over to somebody already.

THE COURT: What's your name?

PROSPECTIVE JUROR: My name is Gary Holycross.

THE COURT: Like the college?

PROSPECTIVE JUROR: Yes. H-O-L-Y-C-R-O-S-S.

THE COURT: Okay. What do you have for us?

PROSPECTIVE JUROR: I recently moved to Tarrant County in the last two weeks.

THE COURT: Okay.

MR. LOLLAR: No objection.

THE COURT: Okay. You're excused. Thank you, sir, for coming down.

30

PROSPECTIVE JUROR: Thank you.

THE COURT: Have you got your summons, ma'am?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Okay. What's your name?

PROSPECTIVE JUROR: Kitari Lewis.

THE COURT: Kitari Lewis, K-I-T-A-R-I; Lewis, L-E-W-I-S. This is juror 1356. What do you have, ma'am?

PROSPECTIVE JUROR: Misdemeanor petit theft out of West Covena, California, back in about 1988.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: You're excused, ma'am. Thank you for coming down this morning.

Hi there, ma'am. How are you?

PROSPECTIVE JUROR: Good morning.

THE COURT: Can I have your summons? This is Carolyn Pettey, P-E-T-T-E-Y, Juror Number 1327. And what do you have for us, ma'am?

PROSPECTIVE JUROR: 17 year-old drug felony.

THE COURT: Okay. Felony conviction?

31

PROSPECTIVE JUROR: Uh-huh.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection, Your Honor.

THE COURT: You're excused, ma'am. Thank you.

Good morning, sir. Have you got your jury summons?

PROSPECTIVE JUROR: Yes.

THE COURT: This is Richard Almos, A-L-M-O-S. Juror Number 2198.

PROSPECTIVE JUROR: I have a VSCS conviction, or -- a VSCS conviction?

THE COURT: What's that?

PROSPECTIVE JUROR: Vice taking drugs.

COURT REPORTER: I'm sorry. You need to speak up a little louder.

PROSPECTIVE JUROR: Drug conviction.

THE COURT: Is it a felony conviction?

PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Any objection?

MR. LOLLAR: No.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down here, sir.

MS. HANDLEY: Thank you, sir.

32

THE COURT: Good morning, sir.

PROSPECTIVE JUROR: Hi.

THE COURT: Can I have your jury summons?

This is Michael Chase, Juror Number 2313.

What do you have, sir?

PROSPECTIVE JUROR: I live in Alfreda, Georgia, now, so --

THE COURT: Okay. Thank you for coming down.

PROSPECTIVE JUROR: Thank you.

THE COURT: You're excused.

PROSPECTIVE JUROR: Thank you.

MR. LOLLAR: No objection.

PROSPECTIVE JUROR: Embarrassed.

THE COURT: This is Kathy Pruett, P-R-U-E-T-T, Juror Number 1347.

What do you have, ma'am?

PROSPECTIVE JUROR: I have a misdemeanor theft, I think, for $21 a long time ago. I went to jail for it.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

PROSPECTIVE JUROR: Huh?

MS. HANDLEY: We're saying no objection.

PROSPECTIVE JUROR: Okay. Thank you.

33

THE COURT: You're excused.

MS. HANDLEY: You don't need to be embarrassed. Thank you.

THE COURT: Good morning, sir. How are you?

PROSPECTIVE JUROR: All right.

THE COURT: This is James Sturdivant, S-T-U-R-D-I-V-A-N-T, Juror Number 1833.

What's your situation, sir?

PROSPECTIVE JUROR: I can't read or write.

THE COURT: Can't read or write.

PROSPECTIVE JUROR: Yeah.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: All right. Thank you for coming down.

PROSPECTIVE JUROR: Yes, sir. Thank you.

THE COURT: You're free to go.

Good morning. Let me see your juror summons.

This is Roberto Lopez.

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Juror Number 1154.

What's your situation, sir?

PROSPECTIVE JUROR: I'm not a citizen.

34

THE COURT: You're not a citizen?

PROSPECTIVE JUROR: No, sir.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thanks for coming down.

PROSPECTIVE JUROR: You're welcome.

THE COURT: You're excused.

If I didn't say this, if you can't understand or speak the English language, you also need to be in this line.

Good morning, sir. Have you got your jury summons?

PROSPECTIVE JUROR: No, sir. No English. [Speaking Spanish].

MR. LOLLAR: No objection.

THE COURT: This is Isidro Solis, I-S-I-D-R-O. Solis, S-O-L-I-S, Juror Number 2375. He's excused for not speaking English.

Thank you, sir.

MS. HANDLEY: Thank you, sir.

MR. LOLLAR: Thank you.

MS. HANDLEY: No objection.

THE COURT: Hello. Good morning, ma'am. How are you?

PROSPECTIVE JUROR: There's a lot of

35

things that I do not understand in English.

THE COURT: Okay.

PROSPECTIVE JUROR: And I don't know how to write that good either.

THE COURT: Okay. This is Lucia, L-U-C-I-A, --

PROSPECTIVE JUROR: Uh-huh.

THE COURT: -- Caballero, C-A-B-A-L-L-E-R-O.

PROSPECTIVE JUROR: Uh-huh.

THE COURT: This is Juror Number 1778.

Any objection to her being excused?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, ma'am, for coming down.

PROSPECTIVE JUROR: Thank you.

THE COURT: Good morning, sir. Have you got your jury summons?

PROSPECTIVE JUROR: Yes.

THE COURT: This is Billy Wyatt, Juror Number 1473.

What do you have for us, sir?

PROSPECTIVE JUROR: I got in trouble in '90.

36

THE COURT: Yes, sir.

PROSPECTIVE JUROR: I had a drug conviction.

THE COURT: Is that a felony conviction, sir?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Any objection?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection, Your Honor.

THE COURT: Thank you for coming down. Good morning, ma'am.

PROSPECTIVE JUROR: Hi.

THE COURT: Have you got your jury summons?

This is Leigh Childress, L-E-I-G-H. Childress, common spelling. Juror Number 204.

And what do you have for us, ma'am?

PROSPECTIVE JUROR: I have a daughter that's eight-years-old. I'm responsible for her. She doesn't go to daycare. I have to get her after school.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Okay. Thank you for coming down.

PROSPECTIVE JUROR: Thank you.

37

THE COURT: We appreciate you.

Good morning, sir.

PROSPECTIVE JUROR: How you doing?

THE COURT: This is Sherman Evans, --

PROSPECTIVE JUROR: Yeah.

THE COURT: Juror Number 41.

What do you have for us, sir?

PROSPECTIVE JUROR: Me and my wife have custody of two grandkids, and one is nine and one eight.

THE COURT: Okay.

PROSPECTIVE JUROR: And I -- I work days, during the days, so we kind of -- where she -- I get home, she's leaving. When she gets home, I'm leaving.

THE COURT: Any objection?

MR. LOLLAR: No, Your Honor.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down.

MS. HANDLEY: Thank you, sir.

PROSPECTIVE JUROR: Uh-huh.

THE COURT: Good morning, ma'am.

PROSPECTIVE JUROR: Good morning.

I have two kids, one ten and one nine.

THE COURT: Okay. And you have to take care of them?

38

PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Can you elaborate on that a little bit?

PROSPECTIVE JUROR: Well, I work, so after -- after work there's no one to help, you know, take care of them after school hours.

THE COURT: This is Amie Byrd. A-M-I-E, Byrd, B-Y-R-D, Juror Number 2240.

Any objection?

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: Good morning, ma'am.

PROSPECTIVE JUROR: Morning.

THE COURT: This is Rosalinda Cepeda, R-O-S-A-L-I-N-D-A, C-E-P-E-D-A, Juror Number 2269.

What do you have, ma'am?

PROSPECTIVE JUROR: I have three children under the age of ten.

THE COURT: Okay.

PROSPECTIVE JUROR: I pick up after school. And one's a three-year-old that I take care of.

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down,

39

ma'am.

MR. HIKEL: Thank you, Judge.

PROSPECTIVE JUROR: I have a child that's nine and I also been convicted of a felony.

THE COURT: Okay. Any objection?

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: You're excused. Thank you for coming down.

MS. HANDLEY: What's her name?

THE COURT: Michelle Smith, Juror Number 1748.

PROSPECTIVE JUROR: I was charged with a Class C theft.

THE COURT: Hold on a second.

This is Randall Ware, R-A-N-D-A-L-L, Juror Number 2400.

Charged with or convicted of?

PROSPECTIVE JUROR: Convicted.

THE COURT: Of theft.

PROSPECTIVE JUROR: Of theft.

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: You're excused, sir. Thank you.

40

PROSPECTIVE JUROR: Thank you.

THE COURT: Good morning, ma'am. How are you?

PROSPECTIVE JUROR: Okay. I was convicted of a felony in 1983.

MR. PARKS: No objection.

THE COURT: This is Reba Hodge. This is Juror Number 1649.

No objection from the State?

MS. HANDLEY: No objection.

THE COURT: You're excused.

PROSPECTIVE JUROR: Thank you.

THE COURT: Morning, ma'am.

This is Lori Tinker, L-O-R-I. Juror Number 760.

What do you have for us, ma'am?

PROSPECTIVE JUROR: Yes. I just served on a jury within the last year here in this building for a drunk driving case.

THE COURT: Okay. Do you remember when you served?

PROSPECTIVE JUROR: I don't remember the exact date. It was last spring, so --

MR. LOLLAR: April the 28th is the effective date.

41

THE COURT: All right.

PROSPECTIVE JUROR: Yeah.

MR. LOLLAR: Has it been since then?

PROSPECTIVE JUROR: I think so, but I don't have the exact date.

MR. LOLLAR: All right. We don't have any objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down. You're free to go.

MS. HANDLEY: Okay. Thanks.

MR. LOLLAR: Thank you, ma'am.

THE COURT: Good morning, ma'am.

PROSPECTIVE JUROR: Good morning.

THE COURT: How are you?

PROSPECTIVE JUROR: I'm fine.

THE COURT: This is Jesse Hester. This is Juror Number 1855.

What do you have for us, ma'am?

PROSPECTIVE JUROR: I have a mother that's 86-years-old and she has dementia, and I, you know, takes care of her and I left her at home this morning and she was asking me, you know, some questions as to how long I was going to be here and I told her I didn't know.

42

MR. LOLLAR: We have no objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down. You're excused.

PROSPECTIVE JUROR: Thank you.

THE COURT: Good morning, ma'am.

PROSPECTIVE JUROR: Good morning.

THE COURT: This is Nadine Tichy.

PROSPECTIVE JUROR: That's very good.

THE COURT: T-I-C-H-Y. And this is Juror Number 1234.

What do you have for us, ma'am?

PROSPECTIVE JUROR: My mother's got Alzheimer's and emphysema. I'm the total caregiver. I -- I got a caregiver for Friday and Monday, but --

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: You're excused. Thank you, ma'am.

PROSPECTIVE JUROR: Thank you.

MS. HANDLEY: Thank you very much.

THE COURT: Good morning, ma'am. This is Ban, B-A-N, Thi, T-H-I, Quang, Q-U-A-N-G. Juror Number 630.

Good morning, ma'am.

43

PROSPECTIVE JUROR: Good morning.

THE COURT: What do you have for us?

PROSPECTIVE JUROR: Oh, I cannot --

THE COURT: Can't speak English?

PROSPECTIVE JUROR: Under -- yes, cannot understand language.

THE COURT: You're excused. Thank you very much.

Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: This is Scott Guarnero, G-U-A-R-N-E-R-O. This is Juror Number 453.

What do you have for us, sir?

PROSPECTIVE JUROR: I'm currently attending UTD and I'm going to be taking summer classes.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down, sir. I teach at UTD, by the way.

PROSPECTIVE JUROR: Oh, do you? What department?

THE COURT: Public policy admin law.

PROSPECTIVE JUROR: Oh, okay. I'm not in that.

January 14, 1988

44

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: How are you? This is Jaymie, J-A-Y-M-I-E, Esquivel, Juror Number 1438.

What do you have for us, ma'am?

PROSPECTIVE JUROR: I'm asking for exemption because I am attending college. I am attending college right now. Right now I'm enrolled in one on-line course, but during the summer I have two courses, and it starts in May and ends in August, so --

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down.

PROSPECTIVE JUROR: Thank you.

THE COURT: Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: How you doing?

This is Paul Palmer. This is Juror Number 1489.

What do you have, sir?

PROSPECTIVE JUROR: What I have is that I'm just -- I have sole custody of two young children, and at the end of this month I'll be moving to Louisiana.

MR. LOLLAR: No objection.

45

THE COURT: Good enough for me.

MS. HANDLEY: No objection.

THE COURT: Thank you, sir. You're excused.

Good morning, ma'am. How are you?

PROSPECTIVE JUROR: Good. How are you?

THE COURT: Doing good.

This is Courtney Penton, P-E-N-T-O-N, Juror Number 2274.

What do you have for us this morning, ma'am?

PROSPECTIVE JUROR: Oh, I'm enrolled in school.

THE COURT: All right. Where is that?

PROSPECTIVE JUROR: North Lake.

THE COURT: North Lake.

PROSPECTIVE JUROR: Uh-huh. In Irving.

THE COURT: You doing good?

PROSPECTIVE JUROR: Yeah. Really good.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, ma'am. Good luck.

PROSPECTIVE JUROR: Thanks.

THE COURT: This is Reginia, R-E-G-I-N-I-A, O'Mann, M-A-N-N, juror 2326.

46

What do you have for us this morning, ma'am?

PROSPECTIVE JUROR: I was on a jury this year already.

THE COURT: This year?

PROSPECTIVE JUROR: Uh-huh. In this courtroom.

THE COURT: Okay.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, ma'am.

MS. HANDLEY: Thank you.

THE COURT: Thank you for coming down.

PROSPECTIVE JUROR: Thank you.

THE COURT: Good morning, ma'am.

PROSPECTIVE JUROR: Hi.

THE COURT: This is Maria Johnson, Juror Number 1106.

Thank you for coming down this morning, ma'am.

What do you have for us?

PROSPECTIVE JUROR: What?

THE COURT: Do you speak English?

PROSPECTIVE JUROR: Not -- not that good. No.

47

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down, ma'am.

MR. LOLLAR: Thank you.

THE COURT: You're free to go.

Good morning, ma'am.

PROSPECTIVE JUROR: Good morning.

THE COURT: This is Reina Castellon, R-E-I-N-A, C-A-S-T-E-L-L-O-N. Juror Number 1058.

What do you have for us, ma'am?

PROSPECTIVE JUROR: I'm attending college.

THE COURT: Okay. You are? Good for you. Where?

PROSPECTIVE JUROR: Mountain View College.

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you. You're excused.

This is Lakeshia Ward, L-A-K-E-S-H-I-A, Ward, Juror Number 1661.

What have you got for us?

PROSPECTIVE JUROR: Well, I have four kids all under the age of eleven, and around that time they will not have any care.

THE COURT: Any objection?

48

MS. MALLON: No objection.

MS. HANDLEY: No objections.

THE COURT: Thank you for coming down, Miss Ward.

Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: This is Veronica Morales, M-O-R-A-L-E-S, Juror Number 895.

What do you have for us this morning?

PROSPECTIVE JUROR: I have five children.

COURT REPORTER: You said five?

PROSPECTIVE JUROR: I'm sorry?

COURT REPORTER: You have five children?

PROSPECTIVE JUROR: No, I have three. Three children are alone. This is -- this is like during the trial that we have someone who takes care of them. Is that the other trial, or just for today or --

THE COURT: During the trial.

PROSPECTIVE JUROR: Oh, because I have a nine- and eleven-year-old, so they're going to be on summer vacation.

THE COURT: Okay. Any objection?

MR. PARKS: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, ma'am.

49

Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: How are you?

PROSPECTIVE JUROR: Good morning.

THE COURT: This is Denise Goff-Moore, G-O-F-F dash M-O-O-R-E, Juror Number 1954.

How are you today, ma'am?

PROSPECTIVE JUROR: Fine. And you?

THE COURT: Good.

What do you have for us?

PROSPECTIVE JUROR: I work for the Department of Defense for the Army Air Force Exchange Service and I put in for deployment, and I don't know when my date's coming up.

THE COURT: Okay. Where are you going? Iraq or Afghanistan?

PROSPECTIVE JUROR: Well, they -- they pick a place or us. Probably Kuwait.

THE COURT: That easy duty.

PROSPECTIVE JUROR: Well, that's easy, and then we go to Iraq on the tail end.

THE COURT: Okay. Any objection?

MS. HANDLEY: No objection.

MR. PARKS: No objection.

THE COURT: Thank you. Thank you for your

50

service.

PROSPECTIVE JUROR: Thank you. Thank you.

MS. HANDLEY: Thank you, ma'am. Appreciate it.

THE COURT: Good morning, sir. How are you?

PROSPECTIVE JUROR: Pretty good.

I didn't understand your misdemeanor charges, what you said, because I was -- about eight years ago, I was charged with a drug charge.

THE COURT: Were you convicted?

PROSPECTIVE JUROR: Well, I pled guilty.

THE COURT: Okay. That means you were convicted.

PROSPECTIVE JUROR: Yeah. Yeah.

THE COURT: But it was a misdemeanor.

PROSPECTIVE JUROR: Right.

THE COURT: And it was a drug charge.

PROSPECTIVE JUROR: Right. It was a possession of marijuana. I served --

THE COURT: If that's all it is, he's still qualified.

MS. HANDLEY: I think so.

THE COURT: All right. You're still qualified, sir.

51

PROSPECTIVE JUROR: Okay. That's fine.

THE COURT: Only if you have a felony conviction.

PROSPECTIVE JUROR: Okay. That's fine. All right.

THE COURT: If you could go fill out your questionnaire.

He's not excused.

Felix Canno. He's not excused.

This is Hiep Vuong, H-I-E-P, V-U-O-N-G, Juror Number 1863.

Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: What do you have for us, sir?

PROSPECTIVE JUROR: I had a problem -- a problem today because I had a four-year-old daughter leave with my wife at home. (Inaudible) and my wife already called today and she got a baby --

COURT REPORTER: I didn't hear that, Judge.

THE COURT: Okay. It's this: Small child. Any objection?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, sir. You're free

52

to go.

He probably doesn't speak English either.

Good morning, sir.  Can I have your jury summons?

PROSPECTIVE JUROR:  Oh, yeah.  Sorry about that.

THE COURT:  This is Sean Fleming, S-E-A-N.  This is Juror Number 2068.

What do you have, sir?

PROSPECTIVE JUROR:  I'm concerned that I may know the defendant from him being a student at my school when I was teaching at A.W. Spence Middle School.

THE COURT:  Did he go there?

MR. LOLLAR:  I don't know.  Do we know that?  His mother's right around the corner.

A.W. Smith?

PROSPECTIVE JUROR:  Spence.

MR. LOLLAR:  A.W. Spence?

PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  Why do you think you know him?

PROSPECTIVE JUROR:  I recognize his face and name.

THE COURT:  Okay.  Were you classmates with him?

53

PROSPECTIVE JUROR:  No.  I was a teacher there.

THE COURT:  Okay.  Teacher.

PROSPECTIVE JUROR:  If he's the same individual, he was a discipline problem.

THE COURT:  Sir, why don't you step to the side for just a second.

PROSPECTIVE JUROR:  You bet.

THE COURT:  This is Deborah Harsha.

PROSPECTIVE JUROR:  Yes.

THE COURT:  H-A-R-S-H-A, Juror Number 1297.

What do you have for us, ma'am?

PROSPECTIVE JUROR:  Oh, I can speak and I can write, but not perfect.

THE COURT:  No English.

MR. PARKS:  No objection.

MS. HANDLEY:  No objection.

THE COURT:  Thank you for coming down.

PROSPECTIVE JUROR:  Thank you so much.

MS. HANDLEY:  I think we're just going to have the -- the teacher fill out the questionnaire and put all of that information in there, but this guy, I don't think, is --

THE COURT:  All right.  Where is the

54

teacher?

MR. LOLLAR:  We think he did go there.

THE COURT:  You think he did.

MR. LOLLAR:  Yes, sir.

THE COURT:  Any objection?

MR. LOLLAR:  No.

THE COURT:  Any objection?

MS. HANDLEY:  No.

THE COURT:  You're free to go, sir.  Thank you.

PROSPECTIVE JUROR:  Sorry about that.  Have to be honest, though.

THE COURT:  Sure.

Yes, sir.  Good morning.

PROSPECTIVE JUROR:  Good morning, Judge.  Respectfully, based on the timeframe that you outlined this morning, I am requesting a business hardship.  I'm in the process of writing a book on the economics and management of financial crisis, which is time sensitive, and the manuscript has to be in by the year end.

THE COURT:  And you may be excused, sir, but that doesn't fit into --

PROSPECTIVE JUROR:  Okay.  Well, that's --

THE COURT:  -- one of the categories.  I

55

apologize.

PROSPECTIVE JUROR:  That's all right.

THE COURT:  Thank you.  You need to fill out the questionnaire, sir.

PROSPECTIVE JUROR:  Okay.

THE COURT:  What juror was that, do you remember?

This is Rosalinda Marin, M-A-R-I-N.  Juror Number 1487.

What's your situation, ma'am?

PROSPECTIVE JUROR:  Well, I'm expected to give birth July 8th.  So hoping that everything goes good, we're going to move back to Chicago, which is where I was born.

MR. LOLLAR:  No objection.

MS. HANDLEY:  No objection.

THE COURT:  Thank you for coming down.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Good morning, sir.

PROSPECTIVE JUROR:  Good morning.  You know, it didn't occur to me until this morning that I have a hearing loss, and I didn't know it was a medical impairment until I was hearing trying to listen to the -- the Judge.

THE COURT:  Okay.  This is Lee Larson.

56

PROSPECTIVE JUROR: I'm a disa -- I'm a disabled veteran, and all this is verifiable.

THE COURT: This is Lee Larson. This is Juror Number 1133.

Any objection?

MR. LOLLAR: No, sir.

MS. HANDLEY: No objections.

THE COURT: Thank you for coming down.

MS. HANDLEY: Thank you.

MR. LOLLAR: Thank you, sir.

THE COURT: Good morning, sir.

This is Humberto --

PROSPECTIVE JUROR: Garcia-Salas.

THE COURT: Garcia-Salas.

PROSPECTIVE JUROR: Yes, sir. Yes, Judge.

THE COURT: H-U-M-B-E-R-T-O, Garcia-Salas, S-A-L-A-S. Juror Number 1731.

Do you speak English, sir?

PROSPECTIVE JUROR: Well, I speak it, but only since I stay here. I always tried to travel to speak it, and I don't want to be --

THE COURT: Any objection?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: You're free to go.

57

PROSPECTIVE JUROR: Thank you.

MS. HANDLEY: Thank you, sir.

THE COURT: Good morning.

PROSPECTIVE JUROR: Hi.

THE COURT: Have you got your juror summons?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: This is Tara Green. This is Number 1238.

How are you, Ms. Green?

PROSPECTIVE JUROR: Doing well. Thank you.

THE COURT: What is your situation?

PROSPECTIVE JUROR: My husband and I share responsibility for our children this summer. We work an alternating work schedule so as not to have day care. That's an expense we had to reduce this past year.

THE COURT: Any objection?

MR. LOLLAR: No.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down, ma'am.

PROSPECTIVE JUROR: Thank you. I appreciate it.

58

PROSPECTIVE JUROR: I try to fill out, but I don't understand, you know. Like many persons, that's why I just --

THE COURT: This is Mr. Wolde --

PROSPECTIVE JUROR: Yes, sir.

THE COURT: I'm going to spell it for you. Juror Number 659. M-I-S-T-I-R, W-O-L-D-E, M-A-R-I-A-M, does not speak English. Any objection?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you, ma'am.

PROSPECTIVE JUROR: Okay. Thank you.

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning. All right. Just not very fluent in English.

THE COURT: This is Rito Medellin, R-I-T-O, M-E-D-E-L-L-I-N, Juror Number 518, does not speak English.

Any objection?

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: Thank you for coming down.

PROSPECTIVE JUROR: Thank you, sir.

THE COURT: Hi. Good morning.

This is Arlene Rischer, R-I-S-C-H-E-R,

59

Juror Number 2160.

What do you have, ma'am?

PROSPECTIVE JUROR: I've just got some health issues with myself.

THE COURT: What is that?

PROSPECTIVE JUROR: I got floaters in both eyes. They're bugging me. And I got arthritis in this hand.

THE COURT: You've got arthritis in the left hand and something wrong with her eyes.

PROSPECTIVE JUROR: Floaters in both eyes.

THE COURT: Floaters.

PROSPECTIVE JUROR: Uh-huh.

THE COURT: Any objection?

MR. LOLLAR: No, Your Honor.

MS. HANDLEY: No objection.

THE COURT: You're free to go, ma'am. Thank you.

PROSPECTIVE JUROR: Bless you.

THE COURT: This is Jaslyn Calligan, J-A-S-L-Y-N, C-A-L-L-I-G-A-N. This is Juror Number 379.

Good morning, ma'am.

PROSPECTIVE JUROR: Hi.

THE COURT: What's your situation?

60

PROSPECTIVE JUROR: 1984 theft charge.

THE COURT: Charge or conviction?

PROSPECTIVE JUROR: Charge. I think the lawyer dropped it down to a misdemeanor later.

THE COURT: Misdemeanor theft?

PROSPECTIVE JUROR: I think so. I don't remember.

MR. PARKS: Did you pay a fine?

PROSPECTIVE JUROR: Yes.

THE COURT: Thank you, ma'am. You're excused.

All right. Yes, sir. Can I have your summons?

How are you?

PROSPECTIVE JUROR: I'm fine.

THE COURT: This is Nihad Redzik, N-I-H-A-D, R-E-D-Z-I-C. Juror Number 488.

What's your situation, sir?

PROSPECTIVE JUROR: I just when -- when I decided the question I read, first I don't think I'm going to be able to understand everything on the questions.

THE COURT: Okay. Any objection for no English?

MR. LOLLAR: No objection.

61

MS. HANDLEY: No objection.

THE COURT: Thank you, sir.

MS. HANDLEY: Thank you, sir.

PROSPECTIVE JUROR: Thank you.

PROSPECTIVE JUROR: I don't fall under any of your restrictions or your --

THE COURT: Have you got a jury summons?

PROSPECTIVE JUROR: Yes, sir.

But the issue that I have, the second gentlemen, Matthew Butler, I went to high school with that guy.

THE COURT: Who is Matthew Butler?

PROSPECTIVE JUROR: He's the one that died in front of Zoo [sic] Music in Garland, off of Garland Road.

THE COURT: Any objection?

MS. HANDLEY: No objection.

THE COURT: You're excused.

PROSPECTIVE JUROR: Yeah. Yeah, I just rather him have a fair trial because I knew that guy.

MS. HANDLEY: Appreciate your honesty.

THE COURT: You're Kevin Nguyen?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: This is Juror Number 1534, Kevin Nguyen, N-G-U-Y-E-N.

62

PROSPECTIVE JUROR: I was filling out this and I just remember -- I mean, I move --

THE COURT: I need your summons, ma'am.

PROSPECTIVE JUROR: Sure. I think I live in -- even though it's my Richardson address, I believe -- I believe -- I think everything in Collin County. I know like that's where we pay like the taxes and things like that, so I'm not sure if I'm in Dallas County, although I've been coming to Dallas juror, you know, for 20 years or so. So I don't have a problem filling it out, but I don't want that to be a problem more.

MR. LOLLAR: They can check back here and see if she falls in Dallas or Collin County.

MR. HIKEL: I can have them check.

THE COURT: Okay. Go check.

PROSPECTIVE JUROR: Okay. Because I'm not sure.

THE COURT: Sure.

PROSPECTIVE JUROR: Sorry about that.

THE COURT: Good morning, sir. How are you?

PROSPECTIVE JUROR: When I got to the question here where it says were you a victim, and I was, about three years ago. I was stabbed over 40

63

times.

THE COURT: All right. That's --

PROSPECTIVE JUROR: No, I mean, I'm trying to say -- I was just letting you -- I was trying to find out.

THE COURT: All right. Fill out -- fill out the rest of the questionnaire and --

PROSPECTIVE JUROR: Okay.

THE COURT: -- we'll see about you later.

PROSPECTIVE JUROR: Okay.

THE COURT: Thank you, sir.

PROSPECTIVE JUROR: Thank you.

THE COURT: He's filling out the questionnaire.

Do you have your summons?

PROSPECTIVE JUROR: Yes, sir, I do.

THE COURT: This is Gary Brooks, Juror Number 1919.

Yes, sir?

PROSPECTIVE JUROR: I have -- I'm a police officer. I'm a retired police officer now. I've been in trial with this DA here before.

THE COURT: Okay.

PROSPECTIVE JUROR: And I just wanted to make sure that didn't mess anything up.

64

THE COURT: Not yet, sir.

PROSPECTIVE JUROR: Okay. Thank you.

THE COURT: It might eventually.

MS. HANDLEY: Just put that in your questionnaire. Thank you.

THE COURT: Do I need to stay down here?

MR. LOLLAR: I don't think so.

THE COURT: What did we find out?

MR. HIKEL: She actually votes in Collin County, so in an abundance of caution --

MR. LOLLAR: No objection.

MS. HANDLEY: No objection.

THE COURT: This is Anna Cobian, C-O-B-I-A-N, Juror Number 1817, does not live in Dallas County.

Thank you, ma'am.

(Brief break.)

THE COURT: Back on the record on the Broadnax case.

This is Tracey Thornton, spelled T-R-A-C-E-Y, Thornton, T-H-O-R-N-T-O-N. This is Juror Number 526.

Ma'am, I understand that you have remembered that you have a theft conviction; is that right?

65

PROSPECTIVE JUROR: Uh-huh.

THE COURT: Okay. And that's a yes?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: And would you tell us about that?

PROSPECTIVE JUROR: I had closed out my banking account in like in 2000, and it was one check that was still out and I didn't know it, so when it came back and I had got stopped for a ticket, they took me to jail for that. It was theft by check under 20.

THE COURT: Okay. So you actually had a conviction on it?

PROSPECTIVE JUROR: Yeah.

THE COURT: Okay. Well, thank you, ma'am. Any objection?

MS. MALLON: No objection.

MS. EVANS: No objection.

THE COURT: You're excused.

PROSPECTIVE JUROR: Okay.

(Court adjourned.)

66

THE STATE OF TEXAS )

COUNTY OF DALLAS )

I, SHARON HAZLEWOOD, Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do HEREBY CERTIFY that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and -numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

Witness my hand this the _____ day of _____, 2010.

_____

SHARON HAZLEWOOD, CSR
Certified Shorthand Reporter
Official Court Reporter
Criminal District Court No. 7
972-739-3906
Texas CSR No. 628
Expiration Date: 12/31/10