1

AP-76207

REPORTER'S RECORD

VOLUME 17 OF _____ VOLUMES ORIGINAL

CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE CRIMINAL DISTRICT |
| | ) | |
| VERSUS | ) | COURT NUMBER 7 OF |
| | ) | |
| JAMES GARFIELD BROADNAX | ) | DALLAS COUNTY, TEXAS |

---------------------------
INDIVIDUAL VOIR DIRE
---------------------------

**FILED IN**
**COURT OF CRIMINAL APPEALS**

**SEP 1 6 2010**

**Louise Pearson, Clerk**

On the 8th day of June, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause; and the following proceedings were had before the HONORABLE QUAY PARKER, Judge Presiding, held in Dallas, Dallas County of Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.

HEATHER H. VEZINA, CSR
214.653.5786

A P P E A R A N C E S


MS. ANDREA HANDLEY
SBOT NO. 08898800
-and-
MR. GORDON HIKEL
SBOT NO. 00787696
-and-
MS. ELAINE EVANS
SBOT NO. 24032880
        ASSISTANT DISTRICT ATTORNEYS
        CRIMINAL DISTRICT ATTORNEY'S OFFICE
        DALLAS COUNTY, TEXAS
        FRANK CROWLEY COURTS BUILDING
        133 NORTH INDUSTRIAL BOULEVARD
        DALLAS, TEXAS 75207-4399

        APPEARING ON BEHALF OF THE STATE OF TEXAS


MR. BRAD LOLLAR
SBOT NO. 12508700
        ATTORNEY AT LAW
        1700 COMMERCE STREET
        SUITE 404
        DALLAS, TEXAS 75201
        (214) 384-8178
-and-
MR. DOUGLAS H. PARKS
SBOT NO. 15520000
        ATTORNEY AT LAW
        321 CALM WATER LANE
        HOLLY LAKE RANCH, TEXAS 75765
        (214) 521-2670 (DALLAS OFFICE)
        (903) 769-3120 (HOLLY LAKE OFFICE)
-and-
MS. KERI MALLON
SBOT NO. 24049165
        ASSISTANT PUBLIC DEFENDER
        DALLAS COUNTY PUBLIC DEFENDER'S OFFICE
        FRANK CROWLEY COURTS BUILDING
        133 NORTH INDUSTRIAL BOULEVARD
        DALLAS, TEXAS 75207-4399
        (214) 653-3550

        APPEARING ON BEHALF OF THE DEFENDANT

HEATHER H. VEZINA, CSR
214.653.5786

INDIVIDUAL QUESTIONING OF PROSPECTIVE JURORS
CHRONOLOGICAL INDEX

(VOLUME 17)

JUNE 8, 2009

| PROSPECTIVE JUROR | State | Defense | Page | Vol. |
|---|---|---|---|---|
| JOHN MAGUIRE | 9 | 45 | | 17 |
| Defense's challenge for cause | | | 83 | |
| Court's ruling | | | 85 | |
| Defense's objection to Court's ruling | | | 85 | |
| Venireperson accepted | | | 85 | |
| FELIX CASTRO | 97 | | | 17 |
| State's challenge for cause | | | 104 | |
| Court's ruling | | | 104 | |
| Venireperson excused for cause | | | 104 | |
| ANSEL RIDDLE | 106 | | | 17 |
| State's challenge for cause | | | 108 | |
| Court's ruling | | | 108 | |
| Venireperson excused for cause | | | 108 | |
| KAREN ALEXANDER | 109 | | | 17 |
| State's challenge for cause | | | 111 | |
| Court's ruling | | | 112 | |
| Venireperson excused for cause | | | 112 | |
| DELORES MERCER | 113 | | | 17 |
| State's challenge for cause | | | 115 | |
| Court's ruling | | | 116 | |
| Venireperson excused for cause | | | 116 | |
| CHARLES DAVIS | 118 | | | 17 |
| State's challenge for cause | | | 119 | |
| Court's ruling | | | 119 | |
| Venireperson excused for cause | | | 119 | |
| ANDREW MURPHY | 124 | 182 | | 17 |
| Defense's challenge for cause | | | 214 | |
| Court's ruling | | | 214 | |
| Venireperson excused for cause | | | 214 | |

INDIVIDUAL QUESTIONING OF PROSPECTIVE JURORS
ALPHABETICAL INDEX

(VOLUME 17)

| PROSPECTIVE JUROR | State | Defense | Vol. |
|---|---|---|---|
| KAREN ALEXANDER | 109 | | 17 |
| FELIX CASTRO | 97 | | 17 |
| CHARLES DAVIS | 118 | | 17 |
| JOHN MAGUIRE | 9 | 45 | 17 |
| DELORES MERCER | 113 | | 17 |
| ANDREW MURPHY | 124 | 182 | 17 |
| ANSEL RIDDLE | 106 | | 17 |

| | | |
|---|---|---|
| Court adjourned.............................215 | | 17 |
| Court Reporter's certificate................216 | | 17 |

HEATHER H. VEZINA, CSR
214.653.5786

PROCEEDINGS

(8:54 a.m.)

(Open court, defendant present.)

(Venireperson Maguire enters courtroom.)

THE COURT: Good morning, I'm Quay Parker.

VENIREPERSON MAGUIRE: I'm John Maguire.

THE COURT: I'm a Senior District Judge from McKinney. Go ahead and have a seat right there.

Thank you, ladies and gentlemen. Be seated, please.

Heather, I'd like for the record to reflect this is Prospective Juror No. 289, John Maguire, Jr.

And, Mr. Maguire, this is your questionnaire that you filled out over a month ago.

VENIREPERSON MAGUIRE: All right.

THE COURT: So the attorneys will be asking you some questions, I'm sure, about some of your answers and responses to the questions on the questionnaire. Anyway, thank you for being here this morning.

VENIREPERSON MAGUIRE: No problem.

THE COURT: We appreciate your time and your jury service. As I said, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney. Judge Snipes, who's the Presiding Judge in this case and the one that addressed the group when y'all met about over a month

ago --

VENIREPERSON MAGUIRE: Uh-huh.

THE COURT: -- has asked me to assist him in the jury selection process, so that explains to you what I'm doing here today.

VENIREPERSON MAGUIRE: All right.

THE COURT: And also consequently --

VENIREPERSON MAGUIRE: Yeah.

THE COURT: -- why you're here today. So, anyway, you'll recall that when Judge Snipes did talk to the group as a whole, at some point in the proceedings, he had everybody stand up, raise their right hand, he administered the oath of a prospective juror. Do you recall that?

VENIREPERSON MAGUIRE: Yes.

THE COURT: Okay. Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON MAGUIRE: Yes.

THE COURT: Very good. I'll just remind you you're still under that oath. And what you've been sworn to do are actually two things, to give truthful answers, which we know you'll do anyway.

VENIREPERSON MAGUIRE: Uh-huh.

THE COURT: But also to be responsive to each and every question asked to you by the attorneys.

Now, let me kind of tell you what's going to happen. Now, did you have time to read your jury guide?

VENIREPERSON MAGUIRE: Yeah.

THE COURT: Juror guide, I guess I should say?

VENIREPERSON MAGUIRE: Yes, I did.

THE COURT: And it kind of gives you a preview of some of the law, procedural aspects, and the special issues that are going be involved in the trial of this case. And that's what the attorneys are going to talk to you about. They're going to explain, probably in more detail than the little guide, the little pamphlet here, they're going to explain the law to you, and then they're going to ask you questions, getting your ideas, your thoughts, your opinions, if you will, about the law as it applies to this case. Okay?

VENIREPERSON MAGUIRE: Yeah.

THE COURT: There's not going to be anything that's going to be embarrassing. There's not going to be anything that's right or wrong answers. So it's not a quiz that you've got to pass or anything like that.

VENIREPERSON MAGUIRE: All right.

THE COURT: Just relax, and if you don't understand the question, just ask the attorney to repeat it or rephrase it, or ask me and I'll tell them to, if

need be.

So let me introduce you to the attorneys now that are going be participating in this.

VENIREPERSON MAGUIRE: All right.

THE COURT: This is Andrea Handley.

MS. HANDLEY: Good morning.

THE COURT: And she'll be talking to you this morning.

Seated next to her is Mr. Gordon Hikel.

MR. HIKEL: Good morning, sir.

THE COURT: They're both assistant district attorneys. There's a third one that will probably come in, Ms. Elaine Evans, and she's also an assistant district attorney. And the three of them comprise the prosecution team.

VENIREPERSON MAGUIRE: All right.

THE COURT: And I think there's another attorney here, too, from the DA's office --

MS. HANDLEY: Yes, sir.

THE COURT: -- that will be participating when the trial actually starts, the evidence starts. So, anyway.

Then seated next to me, Mr. Brad Lollar.

MR. LOLLAR: Good morning.

THE COURT: And next to him, Mr. Doug Parks.

MR. PARKS: Hello.

THE COURT: And on the end down there, Ms. Keri Mallon.

MS. MALLON: How are you?

THE COURT: These three lawyers are the Defense team, and they represent Mr. James Broadnax --

VENIREPERSON MAGUIRE: All right.

THE COURT: -- who's the defendant in this case. He's their client. All right?

Ms. Handley.

MS. HANDLEY: Thank you, Your Honor.

JOHN MAGUIRE, JR.

Venireperson No. 289, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. Good morning again, Mr. Maguire. How are you?

A. I'm doing all right.

Q. All right. Fantastic. As the Judge said, my name's Andrea Handley. I'm an assistant district attorney. I am in charge of or taking part in the actual selection of the jury that will sit in this particular case. Mr. David Alex will be presenting the evidence to you.

And what we're doing here is all of those hundreds of people that we brought down, we're bringing them all in one at a time and we're talking to them.

A. Yeah.

Q. And believe it or not, we've read all their questionnaires, too, and it's been some pretty interesting reading. But what we're looking for, Mr. Maguire, is we're trying to get together a pool of individuals that are technically qualified to sit on the jury.

If you are declared qualified today, it doesn't necessarily mean you will automatically be on the jury. Because after a juror is qualified, we can still come back, look at the juror and elect whether or not to include them on the jury or dismiss them from the jury. So we're talking to everybody one at a time to determine.

Now, some people are just, quite frankly, not qualified in that they may say, look, I'll give the death penalty every time in any murder case. It doesn't matter. That person's not qualified to sit on a jury because they've already made up their mind.

Some people say, I cannot take part in anything that would involve the death of another human being. I will not return a verdict on that regardless of what the evidence is. They're not qualified because they're not willing to consider the evidence and they're not willing to follow the law in the particular case.

In order to be a qualified juror, you have to be an individual that will agree to follow the law, that will agree to consider all the evidence in the case, that will base their verdict on the evidence in the case and that will ultimately, fair to say, not do anything automatically, not come in and say, well, if you show me that, I'm going to tell you I'll automatically answer that question yes. That's not a qualified juror because they're telling us, I'm basing my decision on something else and not a consideration of the evidence, not a meaningful consideration of it.

I don't believe you've sat on jury duty before; is that correct?

A. I have not been selected.

Q. I believe that your wife did. You made a notation --

A. Yes.

Q. -- about that. And that jury, that resulted in a hung jury is your understanding, wasn't it?

A. Yeah.

Q. They just simply could not reach a consensus on the evidence in that case and a consensus on what the verdict would be --

A. That's correct.

Q. -- and so the jury was declared hung. And in all likelihood, the case had to be tried all over again. That happens sometimes in cases.

Let me tell you a little bit about the law, a little bit about how jury trials work. I'll then get specifically into a death penalty case and how it works and how in a lot of ways, it's similar, and in many ways, it's entirely different.

In Texas, we have what's call a bifurcated trial system where the trial is really in two parts, kind of two mini trails. In the first trial, you are to determine one question and one question only: Is the defendant guilty of the charge that he has been indicted on? If you find that individual guilty, then and only then do you go on to the punishment phase where you consider the evidence again, you consider additional evidence, and then you return a verdict for the punishment in that case. And I'm sure you're heard the expression, let the punishment fit the crime. That's basically what the criminal system is all about. It's the same in the first part, let the verdict fit the crime. Okay?

Regardless of if it's a death penalty case or if it's theft of a bicycle, there are fundamental principles of law that apply in every case. That's what

13

we're talking about where a juror has to be able to follow the law in order to be qualified. Some of those fundamental principles of law, I'm sure you've already heard of. They're in writings. You see them in the newspaper, on the television on the popular shows. They're long-standing laws. They make sense. They're based in common sense. And they are fundamentally fair and an instrumental part of our system.

Obviously, one of those laws is that the defendant may have been indicted at this point. You as a juror are not to consider an indictment as a piece of evidence. All it is, is it tells the defendant what he's been charged with. It tells me as a representative of the State what I need to prove in order to find him guilty. Some people may say, where there's smoke, there's fire. Well, it doesn't apply in the criminal system. It's just a piece of paper at this point. It's not evidence against him.

And that goes to my -- to my burden of proof. Everything always goes to the burden of proof for the State. As we sit here today, James Broadnax is to be presumed innocent. And the reason he enjoys that presumption of innocence is because I haven't proved a single thing to you. The State has the burden of proof. I have the obligation of proving all elements of the

14

indictment to you beyond a reasonable doubt. And only if and until I am able to do that, you are to maintain or presume that he is innocent. Does that make sense to you, sir?

A. Yes.

Q. Are those laws that you could follow?

A. Yeah.

Q. And as I stated, I carry the burden of proof. The Defense has no burden of proof whatsoever in a criminal case. They could figuratively or literally sit and work a crossword puzzle if they wanted to. I know these gentlemen. I don't believe they would. But they only really have one obligation, and that's to show up. And they're already fulfilling that obligation.

You always look to the State. You never say, well, he needs to prove he's innocent. And I think you can understand that's also fair, correct?

A. (Moving head up and down.)

Q. I bring the charges. I ought to bring the proof in the case. Because of that burden of proof, because that is mine, all individuals -- I enjoy this right, you enjoy this right, the defendant enjoys the right, that right, that Fifth Amendment right where you don't -- right to remain silent. You've probably heard of it?

A. (Moving head up and down.)

15

Q. In other words, I can't make a defendant testify in a criminal case. That's his decision and his decision alone. And there's probably a million reasons why somebody would or wouldn't want to testify in a criminal case. But the point being, if a defendant elects to exercise that Constitutional right, that the jury may not use that as evidence against him. In other words, if I put my entire case on, I rest my case, it goes to deliberation, if you go back there and say, the State didn't quite prove it to me, they're about -- just about a hair close to proving it to me beyond a reasonable doubt, but because he didn't testify, I'm going to hold that against him and I'm going to help the State out and find him guilty, you can't do that. You understand that, sir?

A. (Moving head up and down.)

Q. Is that also a law that you believe you could follow?

A. Yes.

Q. Okay. I have the burden of proof to prove every element of the offense to you. I don't get points for five out of six. I have to prove them all. The law states that all elements of the offense are equally important, to prove to you who did it, when they did it, where they did it, how they did it, who they -- they

16

robbed or took the life of, and that they did it intentionally. If I fail to maintain the burden on any one of those elements, then you are -- by law, you must return a verdict of not guilty.

I'll give you an outlandish example that would go to test or help make the point of a juror having to be able to follow the law. And this is an out-there hypothetical, but let's say you're called upon to sit on a murder case, and in the indictment -- and I have to prove what's in the indictment -- I have alleged that the defendant murdered an individual by shooting them with a firearm. I put everything on the -- on in my testimony. Let's say a defendant even says, yeah, I killed him and I'm glad I did. But I bring the medical examiner to the stand and she testifies, well, this person is dead, but they didn't die from a gunshot wound, they died because they were stabbed. Can you see that I have failed to prove that element in my indictment?

A. Yeah.

Q. Okay. And your obligation as a juror would be to return a verdict of not guilty. Do you understand that?

A. Yeah.

Q. You -- you would have to do that, and then I would suggest you go upstairs and tell my boss that I

17

have a problem figuring out a case.

A. I think he would have locked you out of the courtroom.

Q. He probably would have, and right out of the building. But it's an -- it's an out-there example to test your qualifications. You may not want to do it, you may not be happy about it, but you're required to do it, and would you do that, sir?

A. Yes.

Q. Would you follow the law? Any questions about any of those laws or your ability to follow the law?

A. No.

Q. Before we talk about capital murder, I want to talk to you just about murder.

In Texas, capital murder is actually a very exclusive, if you will, category of offenses to which the death penalty is an option. The death penalty is never automatic under any circumstances. It's merely an option. In a death -- a capital murder case, one thing that you can always bank on is that it is the intentional taking of another person's life. It's not the accidentally killed the guy or I just meant to scare him and he died or I just meant to hurt him really bad and he died. It is the intentional taking of the person's life.

18

If I were to take a gun out of my briefcase right now and shoot my co-counsel 10 times, I'm sure you would admit, that's pretty bad, huh?

A. Yeah.

Q. He's a nice guy. But that would be pretty bad, wouldn't it?

A. Yeah.

Q. As bad as that sounds, that's not a capital murder case, though. I have intentionally killed this gentleman here. I've shot him several times, but it's not a capital murder case. A capital murder case --

(Ms. Evans enters courtroom.)

Q. (BY MS. HANDLEY) And this is Elaine Evans, she's also an attorney for the State.

VENIREPERSON MAGUIRE: Hello.

Q. (BY MS. HANDLEY) A capital murder case is an intentional murder with an aggravating factor, and that's what makes it capital. It's kind of murder plus, if you will.

So, for example, a capital murder would be murder of a child under six years of age or the intentional murder of a police officer while he's in the line of duty or the intentional murder or two or more people during the same criminal episode or it is the intentional murder of a person while in the course of

19

committing another felony offense. I'm breaking into a person's home, I intentionally kill the homeowner while I'm stealing from them or I am intentionally killing the person that I am robbing or trying to rob. So it is murder plus something else.

Before we get to the whole capital murder thing, I will tell you that I have said several times that it is the intentional murder of a person and it is also plus the aggravating factor. There could be a situation where, as the State, I may fail to prove that aggravating factor. I may prove to you it is an intentional murder, but I may fail to prove, for example, that it was in the course of a robbery. That doesn't mean that we all go home or that the defendant necessarily goes home with you. It just means that you would be obligated to return a verdict of not guilty to capital murder. You may then be called upon to determine: Is he guilty of something else? He's not guilty of capital murder. She didn't prove robbery, but he is guilty of intentional murder. We call that a lesser-included offense.

There's several different ways an individual could commit a murder depending on what their -- their intent was and depending on what was going through their mind. There's first-degree murder. There's

20

manslaughter, which is less than that. There's criminally negligent homicide. So there's everything from me shooting Mr. Hikel, that's a murder, to me driving down the road and texting on my phone and not paying attention and looking up and hitting somebody and causing their death. That's also a murder, but it's not an intentional murder because my intent was different there.

Anything below a capital murder, Mr. Maguire, is subject, then, to the jury determining what the punishment should be in the case. If you're guilty of capital murder, one of two things is going to happen. You're going to -- you will definitely receive life in prison without parole, but there's also the possibility that you may receive the death sentence. So there's two verdicts in a capital murder.

Anything below that, everything is open to a wide range of punishment. In a first-degree murder, for example, a jury would then be called upon to decide after having found him guilty, moving into the second phase, let's let the punishment fit the crime. Let's look at the evidence again. Let's look at anything else that is shown to us, offered into evidence for our consideration, and let's let the punishment fit the crime.

It's a fundamental proposition of law right

21

now that in order to be a qualified juror, you couldn't say what you would always do in a first-degree murder case because you've heard no evidence. And I'm sure you can imagine that there are millions of ways an individual could commit first-degree murder. What should happen to them could depend on the evidence in the case.

In terms of making snap judgments, if I were to say to you, consider, if you will, a 35-year-old able-bodied, sound-mind man who -- who plans out, premeditates the murder, the intentional murder, of a helpless 10-year-old boy, and, in fact, does it. What do you think should happen to that guy?

A. If it doesn't qualify for a capital murder case, then I would say life in prison.

Q. It sounds pretty bad, doesn't it?

A. Yeah.

Q. It's just a snap --

A. Yeah.

Q. -- right there. Because, yeah, a lot of people say, well, not just life in prison, but maybe under the prison, because that sounds terrible. And a lot of people are envisioning maybe the guy who takes an AK-47, walks out to the playground, finds a kid, shoots him. You know, yeah, that's a pretty bad case.

Let me tell you another way that you could

22

commit a first-degree murder, the intentional murder of a 10-year-old boy. That 35-year-old man I just told you about, that's actually the boy's father. He has been a stellar husband, a fantastic father to his son, the world revolves around that boy to him. He's been a Scout leader with him. He's been a good provider. He's never been in trouble a day of his life. He does volunteer work. He's -- he's just -- just a perfect guy.

Well, that 10-year-old boy has been diagnosed with a terminal form of cancer. He is going to die. He is not going to get better, and that's just the facts. And he's over at Children's Medical Hospital. He's been there a·long time. He sits with him every day, and he watches his son suffer, because it's not bad enough that his boy is going to die, but now his boy is literally writhing in pain every second that he is alive.

And that dad, after sitting there holding his hand day and night, sleeping on a cot next to him, finally decides, I cannot let my little guy suffer anymore. He goes and he finds some morphine in a nurse's cabinet. He comes back, puts a big dose of morphine into the IV tube to give him an overdose. He holds him in his arms until he dies, and, in fact, the boy does die. Did he kill that boy?

23

A. Yeah.

Q. He did. Did he intend to kill that boy?

A. Yeah.

Q. Did he do everything that was necessary in order to see that that went through?

A. Yep.

Q. Okay. That's a first-degree murder, Mr. Maguire, just like it's a first-degree murder for the guy who went out to the playground. So a jury would be called upon in any murder case to go, okay, let me -- let me let the punishment fit the crime. Let me look at the surrounding circumstances, the person who did it, and do they deserve five years in prison, do they deserve life in prison, or do they deserve something in between? It's always based on the evidence. Do you see how that's possible now?

A. Yep.

Q. And if you were called upon to assess punishment in a first-degree case or any lesser-included murder offense, would you be able to consider the entire range of punishment?

A. Yeah, I think so.

Q. And would you first consider the evidence and then the circumstances of it and then base your verdict on the evidence?

24

A. Yeah.

Q. You won't make any snap decisions, in other words?

A. No.

Q. Okay. That's -- that's kind of how -- a prevailing theme through all criminal cases, Mr. Maguire, is that everything is always based on the evidence and everything always, it depends. You can't really say what would you do now or wouldn't you always do this. Well, it depends. It depends on what you show me. And I haven't shown you anything in this case so far, have I?

A. No.

Q. Not a thing. Let's talk about capital murder then. If I prove to you beyond a reasonable doubt, and I will tell you there is no definition for beyond a reasonable doubt. It's whatever you think it is. Okay? It's not beyond all doubt whatsoever. In order for me to prove that, I think you'd have to be standing out there watching the crime. Then you'd be a witness and not a juror. So reasonable doubt is whatever you think it is, sir. I've heard a lot of people say that if I have a reasonable doubt, then it's a doubt based on reason and common sense, and that's fair enough.

So if, though, I prove to you beyond a reasonable doubt that a defendant is guilty of capital

25

murder, for example, the intentional murder of a person during the course of the actual commission of a robbery or attempting to commit a robbery, then am I entitled to a verdict of guilty of capital murder. Okay? If I don't --

A. (Moving head up and down.)

Q. -- you've -- we've already talked about. That's the first phase of the trial, and it is entirely separate from the second phase.

After you return your verdict of capital murder, now you go into the punishment phase. A lot of people think before they come down here individually and they read the special issues that a jury goes back into a jury room and they -- how many people think death penalty and how many people think life, that it's just kind of an open debate on what they should do. That's actually not the way it happens at all, and I think you see now from reading the special issues that the way a jury arrives as to a verdict of life in prison without parole or death is based strictly on how you answer the questions or how you answer the special issues.

What's important here, Mr. Maguire, is that as you go into the second phase of the trial, remember there was the presumption of innocence at the first phase of the trial?

26

A. Yeah.

Q. There's also a presumption now. And the presumption is, is that the proper thing to do for the particular case is for the defendant to be given a life sentence. I mean, only one of two things can happen if you're guilty of capital murder, so he's already got that sentence, doesn't he?

A. Yeah.

Q. Well, the presumption is that that is the right thing to do at that point, and I will tell you it's because you've just gone into the punishment phase, haven't you?

A. (Moving head up and down.)

Q. Have you considered any of the evidence in the punishment phase yet?

A. No.

Q. No. So only if and until I can prove to you that a death penalty is the proper thing to do, you are to presume that a life sentence is the proper thing to do. Is that a law that you could also follow?

A. Yeah.

Q. Okay. And, in other words, you can't say, well, anybody who intentionally killed somebody and did it in the course of committing another felony ought to automatically receive the death penalty. You're not a

27

qualified juror then because you've made that snap decision. You've jumped to that conclusion or that assumption. So going into this now, it's presumed that life in prison is the proper thing to do, and that doesn't change unless I have you answer those questions yes, yes, and no.

So let's start off with the first special issue, we call them. We also refer to this, sir, as the future dangerousness issue. Okay? And we've -- we've started this phase now. We're presuming that life is the appropriate thing to do. And the first question I'm having you answer after considering the evidence in the case is this: Do you find beyond a reasonable doubt that there is a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

Like I said, we call it the future dangerousness issue. In other words, we're asking you to make a prediction. Do you believe this particular defendant will be a future danger, a danger in the future?

A. (Moving head up and down.)

Q. You make that determination by considering all the evidence again. You may now reconsider everything you've heard in the first part of the trial, and you may

28

now hear additional pieces of evidence too. And you take that evidence to answer the question. Once again, we didn't write these laws. These are written by our lawmakers, but they didn't define any of these terms for you. It does start with: Do you find from the evidence beyond a reasonable doubt, which ought to tell you, who are you looking to, to prove it?

A. To you.

Q. To the State. And you're looking for me to prove it to you beyond a reasonable doubt. Have I proved to you that there is a probability. It doesn't say possibility; it says a probability. Would you see the difference between the two; that anything is possible, right?

A. Yep.

Q. Okay. Some people say that a probability is, is something that is more likely than not. Would you agree with that?

A. Yes.

Q. And you do see a difference between the two. Do I -- have I proved to you that it's more likely than not that the defendant will commit criminal acts of violence? Criminal acts of violence also are not defined for you. It is for you to decide what is a criminal act of violence. What it doesn't say is that the defendant

will commit another murder or the defendant will commit an assault or that the defendant will be -- make violent threats of violence. It doesn't articulate what a criminal act of violence is. That's for you to decide.

If Ms. Evans is sitting here minding her business, if I just balled up my fist and socked her in the face, do you think you might consider that a criminal act of violence?

A. I'd consider it violent.

Q. Okay. And whether or not it's a crime, you know, do you think she could press charges?

A. Probably.

Q. Probably. That's for you to decide what is or isn't a criminal act of violence. It goes further, though, and it says acts of violence that will constitute a continuing threat to society. He's been found guilty of capital murder, so what's the best sentence he could possibly get now?

A. The best?

Q. Uh-huh.

A. Life in prison.

Q. Life in prison. We see the word "society." When I hear "society," I usually think of us in the outside world driving our car, going to the grocery store, going to work. Well, the defendant is presumably, unless he escapes, he'll be spending the rest of his life in prison. And do you see how that word "society" could also include a prison as a society?

A. Yeah. I hadn't thought of it that way before. Yeah.

Q. Sure. A lot of people haven't. The inmates, they live there, they sleep there, they play there, they work there maybe, they go to school there. They -- they -- whatever. That's where they live and that's where they operate, right? And I think you may also agree with me that there's more than just inmates in a prison, aren't there?

A. Yes.

Q. Who else is there?

A. Well, there's janitors, guards, cooks, you name it.

Q. Sure. Educators, nurses, doctors, wardens, guards. All kinds of people who come to visit even, so it's a society in and of itself. Well, I have to prove to you that he's -- more likely than not, he's going to be a future danger in whatever society he's in. How do you think I could prove that to you? What would you need to hear or see or know in order to answer that question yes or no?

A. I'd have to understand a lot about his history and his background.

Q. Okay.

A. Are there things that are just prevalent in the way he acts --

Q. Uh-huh.

A. -- so...

Q. Sometimes you can tell a lot about a man by how he's lived his life maybe?

A. Yeah.

Q. Okay. I will tell you this, that the law states to you that you may consider the circumstances of the offense. You know, what you found him guilty of capital murder for, you may consider that, and you could base your decision yes or no strictly based on that. Some people might be able to look at one act and one act alone and say, I can answer that question based just on what he did. Some people say, I think I need a little bit more. Do you think you're one of those two categories?

A. If you're asking me I have to make a choice, I would need more.

Q. Okay. And I hear exactly what you're saying and I think you make a good point, so you're telling me that just because you found somebody guilty of intentionally committing a murder and doing it in the course of committing a robbery, you're not going to automatically say, yeah, they're a future danger?

A. No.

Q. And you understand that that would be inappropriate also? You will wait to hear the evidence --

A. (Moving head up and down.)

Q. -- you will wait to reconsider the evidence, and you'll base your verdict on that evidence, correct, sir?

A. Yeah, I would.

Q. Okay. If you answer that question no, then -- then the defendant, that presumption of life in prison without parole stands, and that's what the defendant will get and we all go home. Okay? It's over with.

If you answer that question yes, he is a future danger, we're not over yet. You move on now to the second special issue. This is something we also call the parties issue. In the State of Texas, if you aid, assist, encourage, direct, in other words, if you participate in the commission of a criminal offense with another individual or individuals, you can be just as guilty of it as -- as -- you can all be equally guilty. You could all be found guilty of the same thing.

For example, if my co-counsel here, Elaine, and I sit down at my kitchen table tonight, we both talk about and plan out the robbery of our local 7-Eleven.

**33**

She goes and buys a gun. I go and buy the bullets. We get in her car together. She hands me the gun. I load it. She says, I'm going to sit out here in the parking lot and watch for people. If I hear anything, I'm going to honk the horn. You go in and rob that store. And I get ready to go in, and I say, I don't have a ski mask, I don't have anything to hide my face; and she says, don't worry about it, just kill any witnesses. I go in, I rob the clerk, I shoot the clerk, I come back out, I got the money, we take off. Am I guilty of capital murder? I've robbed and killed the clerk.

A. If you did it on purpose, yes.

Q. Yeah. Do you think she could be held guilty of capital murder?

A. Yeah.

Q. Okay. The law says that if she participated and she -- with the gun and the -- helped arrange, drove me up there and she was the lookout, the law says that, in addition, in order to find her guilty of capital murder, you have to find that she should have anticipated somebody was going to die. Does that make sense to you?

A. Yeah.

Q. And in the Special Issue Number 2, it says not only does she have to have participated in it and not only that she should have anticipated but that she

**34**

actually anticipated that somebody was going to die. When she said, don't leave any witnesses, that might be a piece of evidence that you could consider in making that determination. So you're asked do you think that either the defendant, is he the actual triggerman --

A. Yeah.

Q. -- me, or is it the person who actually and actively participated in it and knew somebody was going to die? Make sense?

A. Yeah.

Q. That's the second issue you answer. If you say, no, the defendant wasn't the actual triggerman, and, no, he never anticipated somebody was going to die, then you answer that question no, and a life sentence stands. Okay?

A. (Moving head up and down.)

Q. And we all go home. If, however, Mr. Maguire, you say, yes, I do think he was the triggerman or an active party, you answer that question yes. Answering 1 and 2 yes means that he is sitting squarely now on the death verdict, okay --

A. Uh-huh.

Q. -- on a sentence of death. He has earned the death penalty at that point, but it's still not over with. There's one last thing that you have to do and

**35**

that's that Special Issue Number 3, which is really, again, quite a -- quite a mouthful, quite a lot of verbiage on there.

But, basically, Mr. Maguire, what it's telling you to do is this, it's saying you've got to go back now and you have to reconsider all the evidence in the case, look at everything in the case. And if you find that there's something about this particular case, the circumstances of the offense, this particular defendant that you feel mitigates his moral culpability or lessens his accountability and you think that that mitigating circumstance is substantial or sufficient enough, you may turn that death sentence that he's sitting on now into a life sentence. Okay? I can't ask you right now or I could ask you what do you think would be mitigating or what do you think would be aggravating, but what's -- what's important is that a qualified juror will go, I can't tell you what I would do right now. Do you know enough about the case to say whether or not you would render a death verdict?

A. Actually, I know nothing about it except what I've read, so...

Q. Right. Do you know enough about the case to tell me whether or not you would find a particular thing mitigating in this circumstance?

**36**

A. No.

Q. Because you haven't heard anything. And it reads: Do you find, taking into consideration all of the evidence. Again, you're going back looking at everything in the offense, including the circumstances of the offense, the defendant's character, his background and his moral culpability, so you're looking at all those things, that there is a sufficient mitigating circumstance or circumstances that would lead you to believe that a life sentence is actually more appropriate than a death sentence.

I think one way to look at that is that you could go back, look at all the evidence and put it all into one of three categories. You may look at a circumstance of the offense and say, I actually think that's aggravating. I think it's harsh. You may look at something about a defendant and say, well, I think that's mitigating. I think it's -- it lessens. Or you may look at something and say, I don't think it's either. I think it's -- I don't -- I don't think it's either. Put everything into one of three categories, and everything that you found mitigating, it calls upon for you to now go back and look at what you think is mitigating and ask yourself: Is it sufficiently mitigating to turn the verdict from death into life? Does that make sense to

37

you, sir?

A. Yeah.

Q. Is that an exercise that you think you could engage in?

A. It would be an interesting process, I think.

Q. Yeah.

A. Yeah.

Q. And I know you've got some opinions in your questionnaire, for example, and that's what your questionnaire is at this point. It's your opinions.

A. Okay.

Q. You know, we're strictly asking you that. We asked you some things. For example, we'd asked you about intoxication on pages 5 and 6, and you had marked that I believe you agree with the law, you know, that it does not -- voluntary intoxication doesn't constitute a defense --

A. No.

Q. -- to the commission of a crime. It does not. But what you can do is look at evidence of intoxication, be it by alcohol or be it by drugs, you can look at it in terms of whether or not it's an aggravating or a mitigating circumstance in a particular case. Does that make sense to you also?

A. Yeah.

38

Q. And is that something that you would be willing to do? If there was evidence of that, would you at least consider it --

A. Yeah.

Q. -- before deciding whether or not you felt it was mitigating or aggravating?

A. (Moving head up and down.)

Q. We asked you about whether or not -- we'd asked you, for example, about what makes a person dangerous on page 8. You said their decision to use their background as an excuse for the actions. I believe that very few people are -- and part of my thing is cut off here -- something mean or dangerous without making a conscious decision. That's one of the things you can look at. You know, are his actions based on how he was raised? Are they based on -- on -- or are they just based on a conscious decision to just be mean? You know, that's one of those things you'd look at.

You may find that maybe the defendant in the criminal act that he took part in, maybe he's the guy that stayed behind and tried to save the life of the victim and then turned all his buddies in, you know, or maybe he's just the mean son of a gun with no good excuse for doing what he did. But the point is, is that you look at everything and then you decide if it's mitigating

39

and then how far it goes.

A. Uh-huh.

Q. Any questions about any of those special issues?

A. No.

Q. All right. It sounds to me like you're a man who -- I think you understand the law.

A. Yeah.

Q. Does that make sense?

A. Yeah.

Q. That you could follow the law?

A. Try to, yeah.

Q. Okay.

A. Definitely.

Q. That you will always consider all the evidence in the case?

A. Yeah.

Q. And that you'll base your verdict, your verdict of guilty or not guilty on the evidence in the case, and you'll base your answers to the special issues on evidence in the case?

A. Yes.

Q. Okay. Let's see here. I'll just bring this up because I thought this was interesting. On page 10, your wife was in jury duty, that your wife was in jury duty and it was a hung jury, and you said, my wife indicated

40

that a few members of the jury said, you can't or don't understand what it is like to be a minority.

A. Yeah.

Q. So, I take it, maybe that was a holdup or a problem in that particular case?

A. Yeah.

Q. Okay.

A. There were two people.

Q. Okay. I'll tell you that that might be something for you to consider in a case. Somebody might consider that a circumstance that needs some consideration. Are you at least willing, able to consider it and then base your decision on whether or not you think it's aggravating or mitigating or doesn't make any difference whatsoever?

A. I don't know how being a minority would justify an action --

Q. Okay.

A. -- so...

Q. Would you -- if somebody said, let me tell you how it does, would you listen to them at least first?

A. I'd listen to them.

Q. Okay.

A. I don't know how they would change my mind, but I would listen.

41

Q. I gotcha. Okay. So you see what I'm getting at is that anything can be mitigating, and so there's oftentimes a consideration of that.

On the issue of basing your --

MS. HANDLEY: What?

Q. (BY MS. HANDLEY) My co-counsel is bringing to my attention that you might have heard something about this case?

A. No.

Q. You were -- they were indicating the indictment in this case. You haven't heard anything --

A. No.

Q. -- about this case? Okay. I'm sorry. And which may become important that sometimes some people have heard stuff about the case and we have to caution them that you can't use that as evidence in the particular case.

A. Yeah. I can honestly say I've never heard of this before.

Q. Okay.

A. When I left the jury room, I forgot the name, so...

Q. Okay. Okay. Okay. Evidence comes strictly from one place in a criminal case, and that's from the witness stand, from the witness stand. All right.

42

I'm going to stop my -- well, let me ask you. I might have a little bit more time here. We asked you about the death penalty. You said you think it's appropriate in some murder cases, not all murder cases.

A. Uh-huh.

Q. And you also put on the scale of 1 to 10, you put down a 10. Can you tell me how you came up to that -- that number?

A. The question, where's that at?

Q. On page 4. I beg your pardon. Right in the middle there.

A. You know, I guess I -- the context there is, is do I believe it's something that should be used? And I would say, yes, it definitely should be used.

Q. Okay.

A. You know, if somebody is guilty of the crime based upon the definition and, you know, part of the options, one of them is, you know, capital punishment, then, you know, I believe that if that's the right answer, that's the right answer.

Q. I've heard some people say, if I think the death penalty is the appropriate thing to do in the case, then my feeling is it's a 10; if I think it's not, then it's a 1. It's either it is or it isn't --

A. Yeah.

43

Q. -- you know.

A. Fair.

Q. Okay. We asked you about a -- about the criminal justice system and such as that and asked you about prosecutors and police officers, and I know we asked you the first thing you think of and you said defense lawyers working the system. Now, have you come in with any kind of bias against defense attorneys?

A. No. No.

Q. Okay. And I don't say that to embarrass you or put you on the --

A. No. You get defense lawyers working the system basically from TV.

Q. That's absolutely right.

A. It's just --

Q. You know what?

A. You asked what comes into my mind, and that's what comes into my mind.

Q. The same would hold true for the television with prosecutors, too. Nobody loves those shows more than I do, and I'll tell you --

A. My daughter.

Q. Maybe your daughter. Maybe your daughter and I have this in common in that we love pure fiction. You know, I have to completely suspend disbelief in order to

44

just get through one of those shows because they're wholly inaccurate a lot of the time.

All right, then, Mr. Maguire. Just to sum up, you're saying that you would follow the law --

A. Yes.

Q. -- in any particular criminal case; that at this point you'll presume the defendant innocent?

A. Yeah.

Q. If we prove him guilty of capital murder, you will presume that a life sentence is the appropriate thing to do only if and until I prove to you otherwise?

A. Yeah.

Q. You will base your verdict on the evidence in the case?

A. Yes.

Q. You'll give thoughtful and meaningful consideration to the evidence in the case?

A. Yes.

Q. You don't have your mind made up already?

A. No.

Q. It always depends on what the circumstances are, but you will consider each one of those issues separately?

A. Yeah.

Q. Okay. All right. Any questions for me?

45

A. Not right now, no.

Q. Thank you, Mr. Maguire. I appreciate it.

THE COURT: Thank you, Ms. Handley.

Do you-all want to take a short recess. Would you like about five minutes --

VENIREPERSON MAGUIRE: I'm fine.

THE COURT: -- to get something to drink, or go to the bathroom or anything?

VENIREPERSON MAGUIRE: No, I'm fine.

MR. LOLLAR: We're fine.

THE COURT: Good to go.

Mr. Lollar?

MR. LOLLAR: Thank you, Judge.

THE COURT: Yes, sir.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. LOLLAR:

Q. Good morning. How are you, Mr. Maguire?

A. I'm good.

Q. Good. Let me reintroduce myself. I'm Brad Lollar. This is Doug Parks, Keri Mallon, and James Broadnax.

Mr. Maguire, we've heard what you had to say and we've, of course, read your questionnaire. I just want to talk to you here today to find out what your feelings are and to see whether or not we feel that you'd

46

be a qualified juror here in the case.

A. Okay.

Q. And as the Judge has explained, what we're doing is qualifying a group of 50 jurors out of that big group that you ran into about -- Friday morning here about a month ago. And then from that group of 50, we'll select the jurors in the case. So this is not the end time. It's just to see if you're going to go to the next round.

A. I understand.

Q. Go to the super playoffs or the super regionals. Now, what I want to do with you first is talk about some things you put in your questionnaire, and then we'll talk about the law involved both in the guilt or innocence phase of a criminal trial and then particularly the issues that separate this type of a case from the normal case.

A. Okay.

Q. Okay? And, again, there are no right or wrong answers. Nothing you can say is a wrong answer. You haven't taken an oath to follow any particular law. You would have to take that oath should you get to the next round, but you're not there yet. The only oath you've taken is to tell us the truth. Okay?

A. Okay.

47

Q. So, with that in mind, let me go to some of your questionnaires. I see that you live in Coppell?

A. Yes.

Q. And that you work for, let's see here.

A. Ace Cash Express.

Q. Right. Ace Cash Express. And you are the vice president of corporate systems. What is that?

A. Ace is about an 1800-unit retail financial services company.

Q. Right. I've seen them all around, yeah.

A. If there's a computer system in the corporate office, I'm responsible for it --

Q. Okay.

A. -- so...

Q. All right.

A. If it's in the stores, it's not my problem.

Q. And have you worked in that type of business all of your professional life?

A. 28 years.

Q. 28 years. Very good. And I see that you're married and your wife works for a commercial insurance --

A. She's a -- she's a --

Q. -- commercial insurance underwriters?

A. She works for American States Insurance.

Q. Okay. And you have two children, one at Coppell

48

High School and one at Faith Christian School?

A. That's correct.

Q. Is your son a senior this year?

A. He was until last Wednesday. He just graduated.

Q. Just graduated. Well, congratulations. I asked that because I went to my nephew's graduation, well, my wife's nephew's graduation yesterday.

A. Yeah.

Q. So congratulations to you and to him.

A. Thank you.

Q. What's he going to do?

A. He doesn't have a clue.

Q. Well, good.

A. If he had his choice, he'd play video games.

Q. All right. Well, let's see. Turning to the substantive issues here in your questionnaire. We asked you on page 2 the best argument for the death penalty is taking another's life should result in the ultimate potential penalty, the loss of your own. We asked you on page 4 for what crimes do you think the death penalty should be available in Texas, and you said murder that is premeditated or during another crime, so murder committed with the addition of another felony offense --

A. Yeah.

Q. -- or a murder that is premeditated,

49

intentional, in your mind would qualify, if you were the king of Texas, for the death penalty; is that correct?

A. If I were the king of Texas?

Q. Yes.

A. If it was -- if you planned it, you know, I don't know what would cause me to not consider it, something that would be viable as an alternative.

Q. Okay.

A. Yeah.

Q. Well, let me stop and talk about one word there and compare that one word that we're talking about. You said premeditated, and premeditated, I guess, means thinking about it before you did it?

A. Thinking about it before I did it and then going and actually doing it.

Q. Okay. Now, you understand in Texas, that word "premeditated" is not found in our law books. Okay? Instead we have the word "intentional."

A. Uh-huh.

Q. And one of the things that the State is required to do in this type of a case for it to be a capital murder case is for the State to prove beyond any reasonable doubt that the murder was committed intentionally. Okay?

A. (Moving head up and down.)

50

Q. And what that means is that the defendant formed in his mind the intent to cause the death of the victim. Okay? In other words, not to wound him, not to wing him, not to just harm him in some way short of causing death, but it's required that the State prove beyond any reasonable doubt that the defendant formed the intent to cause death and did whatever it took to get to that end.

A. Uh-huh.

Q. Okay? Now, is that kind of what you mean when you say the word "premeditated?"

A. You know, one of the questions I had on this is when does intent occur, you know?

Q. Uh-huh.

A. If I go in knowing that I have a gun, knowing that I'm going to commit a robbery --

Q. Uh-huh.

A. -- knowing that if I think anything's going to happen, I would potentially shoot the person --

Q. Uh-huh.

A. -- I'm in there prepared to do that.

Q. Right.

A. So, I guess, the concept of when does intent occur is a tough one.

Q. Well, and let me address that issue. Now, some people tell us that if it's shown to me that a person

51

took a loaded gun to a crime scene, that shows me that they had in their mind the intent to use it if need be.

A. Yeah.

Q. Is that the way you believe?

A. That's a tough one. I don't know how -- right now without a lot of thought on it.

Q. Uh-huh.

A. There's -- I plan on going in there and shooting this person, that's very different, I think, than I plan on taking that gun in there, then you make a decision. The key is, is that decision then -- is that intent right then? I would say yes.

Q. Yes. Our law says that intent can be formed in the blink of an eye, that it's not something that is required that the State show you was thought about over a period of hours or days or weeks.

A. Yeah.

Q. But it is something that the State requires or the law requires the State to prove is there -- is at some point the person on trial formed the intent to cause the death of an individual.

A. Yeah.

Q. And they did that. Okay?

A. (Moving head up and down.)

Q. Now, if a jury has a doubt about that, then the

52

jury can still find a defendant guilty of an offense; it's just not capital murder. Okay?

A. Uh-huh.

Q. And that is the distinguishing thing. We have what we call lesser mental states, culpable mental states in the State of Texas, and that there's four of them. The top one is intentional. Okay? The second one is what's called knowingly. If a person acts knowingly in regards to his actions, then he may not have intended to cause it, but he knew that it might result in the death. Okay? A third one is called recklessly. If a person commits a death recklessly, then that's at a different level of offense that we call manslaughter. Okay? So you start off at the top with knowingly. That's capital murder in that respect. I'm sorry. Intentionally is capital murder in that respect. Knowingly is murder, for which a person can receive as punishment anywhere from five years in the penitentiary up to 99 years or life. The third one is recklessly, for which a person can receive two to 20 years. And then there is a fourth one which is called if a person acts with criminal negligence. Okay?

Let me give you some examples. If I am in the course of robbing, say, a 7-Eleven and I tell the clerk who I'm robbing, okay, I've gotten your money now

53

and I'm fixing to leave, don't follow me around the counter or I'm going to shoot you in the kneecap so I can assure that I can get away and you won't see where I go. Okay? And, unfortunately, the person does just that. He comes around the counter to chase after the robber. As they're leaving, the robber turns around and shoots him in the kneecap. Okay?

Well, they have knowingly committed an act that is clearly dangerous to human life. Okay? Now, they may not have done that act with the intention of causing death, but it may turn out that in shooting him in the kneecap, the bullet breaks the femoral artery and the person bleeds to death before the police or ambulance can get there. Okay? So you see where that is a person who is engaged in the commission of a robbery and committed an act clearly dangerous to human life that resulted in the death of an individual but did not do so intentionally. Do you see the distinction in the two, as opposed to the robber who goes in, tells the clerk to give him the money, shoots him in the head right after they give him the money? That's two different things --

A.   Yeah.

Q.   -- according to the law. Do you see that?

A.   Yeah.

Q.   Okay. All right. And the law would say that in

54

that first instance where the evidence would not reflect that the defendant intentionally caused the death, that if the person was charged with capital murder in that instance that the jury would find him not guilty of capital murder because the State hadn't shown that he intentionally caused the death but instead find him guilty of a lesser-included offense of murder. Okay?

A.   Uh-huh.

Q.   Does that make sense to you?

A.   Yeah.

Q.   Okay. Now, recklessly causing the death is something like this. If you go outside on New Year's Eve at midnight, okay, you may hear people firing off their guns into the air in celebration of it being midnight. Okay? Well, sometimes those bullets come up and come down and hurt someone or kill someone. Well, you can see where the person who fired that shot probably didn't intend to cause death, might not even have knowingly did that action, but, certainly, they were reckless about whether or not they caused the death of the individual that might be a block away. They recognized that there was a substantial, significant risk in shooting the gun off up into the air, and they consciously disregarded the risk and shot the gun anyway. And that's the test when we're talking about somebody acting recklessly. They

55

were aware of the risk and did it anyway, and that resulted in the death.

A.   Okay.

Q.   So that's what we call reckless. If the jury finds that a person acted recklessly, so like in this instance, a person's in there robbing the 7-Eleven again and not meaning to hurt the cashier at the booth there, or whatever it is, fires a gun up into the air and the bullet bounces off a light fixture and comes down and strikes the person and kills them, okay, they haven't acted intentionally, they haven't acted knowingly. In that instance, they have acted recklessly. They were aware of the risk that if you fire a gun up in the air, it might hit somebody.

A.   All right.

Q.   But they disregarded that risk and did it anyway. Okay? So there we have an example of a reckless death, a reckless homicide committed during the course of a robbery that would not qualify for capital murder or murder. Okay? See how that may --

A.   Yeah.

Q.   -- come up? Those are what we call lesser-included offenses of an indictment, and it depends on the culpable mental state of the defendant. In other words, what the person was thinking at the time of the

56

commission of the offense. Our law specifically allows either side to present evidence to the jury about the state of mind of the defendant at the time of the commission of the offense. Okay? And it goes to those culpable mental states. Okay?

Now, the fourth type of culpable mental states we have here in Texas is what's called with criminal negligence. Okay? And that's when we don't have a knowing, intentional, or reckless act, but we have an act that was committed because the person should have been aware of the risk but wasn't. Okay? Because of whatever reason, if, for instance, I'm driving down the road in my car and, you know, I'm fiddling around looking for a CD disk to put into my CD player in the car and I'm just not paying attention, okay, and somebody walks in front of me and I run them down and kill them. Well, I didn't intentionally do that. I didn't knowingly do that. I didn't recklessly do that. I did that with criminal negligence. Okay? And sometimes negligence can arise up to the point where it's a criminal offense, and that's what we're talking about today with criminal negligence.

A.   Okay.

Q.   Do you think you'd be able to look at the evidence the State presents?

57

A. Yes.

Q. And even if the State's to show you that it's an offense committed during the course of a robbery that you would hold the State to that burden of proof to show that it was an intentional murder that was committed during the course of the robbery before you'd find a defendant guilty of capital murder?

A. Yeah.

Q. Okay. And all that goes back to, again, what you talked about here on page 4 of your questionnaire when you said that murder that's premeditated or during another crime. So you see now our word that we're looking for is intentionally rather than premeditated.

A. Okay.

Q. Okay. Does that make sense to you?

A. Yeah.

Q. Do you follow that? Okay. Now, a couple questions down below that, we asked you: Do you think there are some crimes which call for the death penalty solely because of their severe facts and circumstances, regardless of whether or not the guilty person committed prior violent acts? And you said, yes, I don't believe a person should receive a lesser penalty because they haven't committed prior violent acts. So you mean just because they haven't?

58

A. That's correct.

Q. Is that correct?

A. That's correct.

Q. And is that the way you feel?

A. Yes.

Q. Okay. And in looking at that, are you saying that you don't believe that a person should receive a lesser penalty such as life without parole rather than the death penalty regardless of whether or not they've committed prior violent acts?

A. That wouldn't be my -- if that was -- you know, if you get to the third question --

Q. Uh-huh.

A. -- and it was obvious that the person intended to do it, obvious the person planned it out --

Q. Uh-huh.

A. -- and did everything, they could have been a choir boy up until that time and I would still think that they should consider the death penalty.

Q. Okay. All right. So really that issue goes to actually two of the special issues, Number 1 and to Number 3?

A. Yeah.

Q. And I'll talk to you more about that here in just a second. Now, we asked you right below that: If

59

you believe in using the death penalty, how strongly on a scale of 1 to 10 do you hold that belief? You've indicated that you're a 10 on that scale.

A. Uh-huh.

Q. What did you mean by that?

A. You know, I -- as I answered that, that would be if I were able to answer all those questions --

Q. Uh-huh.

A. -- then I would strongly support and say, yes, the death penalty should be used.

Q. Okay.

A. You know, I don't think I would go in there and say, prove to me that it shouldn't be used, you know. I think if it's based upon, you know, everything that's presented that that's --

Q. Okay.

A. -- the right answer, I could give that as the answer.

Q. Okay. All righty. Let's see. We ask you on the next page: Do you think that spending a lifetime in prison is equivalent to the death penalty? And you said no. So in looking at the two punishments, death or life without parole, for a person who's been found guilty of capital murder, do you feel that the death penalty is more of a punishment than life without parole?

60

A. I think so, yes.

Q. Okay. We asked you below that: What purposes, if any, do you believe the death penalty serves? And you say, it is the most severe punishment available and may influence certain individuals who are considering a criminal act. Is that a deterrent effect of the death penalty?

A. I think so, you know, at least the way I am. I'm always thinking about --

Q. Uh-huh.

A. -- cause and effect. You know, if I -- if I do something, I think about the repercussions of it. One of them could be the death penalty if I was going to commit a criminal act.

Q. Okay. Do you think a life without parole sentence would have the same deterrent effect?

A. No.

Q. Okay. All right. In the next question, we asked you: What would be important to you in deciding whether a person received the death sentence rather than a life sentence in a capital murder case? Your answer was, their intent.

A. Uh-huh.

Q. Okay. And whether they were fully aware of their actions. Well, again, you see now that for any

61

conviction for capital murder, the State has to show that intent to cause death.

A. Yeah.

Q. Okay. Not just for some of them, but for all of them. Okay? Do you understand?

A. Yes.

Q. Okay. So you wouldn't even be considering the death penalty unless you found that it was an intentionally caused murder. Okay?

A. Okay.

Q. Whether they were fully aware of their actions. What do you mean by that?

A. You know, that's a -- that's a tough one. You know, I know I'm going in with a gun to rob a store. I'm aware of my actions. I know what I'm doing.

Q. Okay.

A. You know, I don't necessarily think that -- it's kind of like I know that I'm getting behind a car and driving if I've been drinking all night.

Q. Uh-huh.

A. I still know I'm getting behind the car and driving. I'm aware of what I'm getting in there to do.

Q. Okay.

A. I may not make a good decision, but I'm aware of what I'm doing.

62

Q. Okay. So it's the awareness of the act that would be important to you?

A. Yeah.

Q. And I'm trying to think of a situation where a person could be intentionally robbing somebody and then intentionally killing them where they would not be aware of their act.

A. I don't know if I could come up with one. I mean...

Q. Well, it would seem to me that if the State proves beyond a reasonable doubt that the person was in the commission of a robbery --

A. Yeah.

Q. -- and you know what a robbery is, that's taking a gun and sticking it in somebody's face --

A. Yeah.

Q. -- and asking for their property or money, and then intentionally kills them, I'm trying to figure a situation where they would not be aware of what they were doing.

A. I think I would go back to your four levels.

Q. Uh-huh.

A. You know, shooting a gun up in the air --

Q. Okay.

A. -- and the bullet coming down and striking

63

someone --

Q. Okay.

A. -- across that -- that I'm not aware.

Q. Okay.

A. I wasn't aware I did that. You know, I intentionally shot the gun --

Q. Okay.

A. -- but I wasn't aware of --

Q. Down at the bottom of page 5, we tell you what the law is in Texas: Voluntary intoxication does not constitute a defense to the commission of a crime. And you said you agree with that. Well, that is the law. It is not a defense.

A. Uh-huh.

Q. However, our law says that that can be considered by a jury in terms of mitigating the punishment for a person who committed an act while they were voluntarily intoxicated. And I believe that you state on the next page there at the top of page 6, and us telling you that law, you said, only if the individual was not voluntarily under the influence. Okay? So there's a bit of a difference there that I see in your response. And do I take it that -- by that you mean if a person was voluntarily intoxicated, they had knowingly and willfully ingested the alcohol or the drugs that got

64

them to a point where they were intoxicated --

A. Uh-huh.

Q. -- okay, that that would not be an issue that you would pay particular mind to? The difference would be if they were involuntarily intoxicated, like, for instance, somebody slipped something into their drink or --

A. Yeah.

Q. -- you know, something like that; is that correct?

A. That's correct.

Q. Okay. I thought that's what you meant. I wanted to make sure about that. Okay.

Down at the bottom, we ask you: How would you feel about a psychiatrist, psychologist, or other mental health professional testifying on a capital murder case as an expert witness? And you say, I think that in most instances, they can provide valuable input. I also believe that the potential exists for them to be selected for the sole reason to support one side's opinion without regard to facts.

All right. I have heard that from many jurors. That's not something that is unique to your questionnaire. Tell me why you think that.

A. You know, again, back to a comment I made

65

earlier, that may be as much from what you see and hear on TV.

Q. Uh-huh.

A. You know, an individual whose profession is to testify as a psychiatrist for defense attorneys --

Q. Uh-huh.

A. -- that's what they do, you know.

Q. Okay.

A. They're not going to get selected by the defense attorney if they don't tend to lean towards, you know, justifying or defending acts of an --

Q. Okay.

A. -- you know, I don't know how they would be unbiased.

Q. So if you were selected as a juror in a case such as this and we called a psychiatrist, would you think that that is a type of a person who would have been selected by us because they tend to favor our position?

A. Default answer would be yeah.

Q. Okay.

A. I mean, now, I guess the question then would be, and I don't know what the procedures are when you provide, you know, here's this person's qualifications.

Q. Uh-huh.

A. You know, if the qualifications are such that

66

that's not their role, you know, and I do things, I have consultants that come in, they do one thing and one thing only.

Q. Uh-huh.

A. That's why we hire them.

Q. Okay.

A. You know, if that's what that person does for a living, then I would consider they're going to give an answer that's for one reason.

Q. If that is the default answer that you would give if we called a psychiatrist, are you saying that you would not pay attention to what they had to say?

A. No. I guess maybe I'm not explaining it right. If -- if you called a psychiatrist, you know, the one thing I would want to know, and I don't know whether this is something that's presented as part of the process --

Q. Uh-huh.

A. -- is this a psychiatrist who's called that, you know, their specialty is providing expert witness for defense teams?

Q. Uh-huh.

A. Then I would probably struggle with thinking, are they going to say anything other than the answer that the Defense wants them to hear. I'm not sure I'm --

Q. Any expert called by either side can be

67

cross-examined by the other side as to prior testimony that they've given in other cases --

A. Yeah.

Q. -- who's called them in other cases, whether or not they're being paid to be here today. Of course, I can tell you that experts don't come down here voluntarily.

A. They're not going to show up without being paid. Yeah.

Q. Any side that calls an expert is expected to pay for their services.

A. I understand. Uh-huh.

Q. So when you -- when y'all hire an expert in your field --

A. Yeah. That's a tough one. You know, I'd have to listen, you know.

Q. All right. Would you close your mind to listening to the testimony --

A. No.

Q. -- of an expert presented by either side?

A. No.

Q. Okay. We ask you on page 7 if criminal laws treating criminal -- if criminal laws treat criminal defendants too harshly. And you said that you strongly disagree with that statement. Why do you think that?

68

Down at the bottom there.

A. Okay. You know, I believe, you know, we have a very good justice system and I believe that, you know, punishments are warranted if you're proven guilty, so I don't believe you can be too harshly punished, you know, if you're proven guilty and, you know, treated fairly --

Q. Okay.

A. -- from the judicial standpoint.

Q. All right. All right. On page 8, we ask you: What do you think makes a person dangerous? And I'm sorry. Mine kind of got cut off --

A. That's all right.

Q. -- on the left-hand there, but you've got yours there.

A. If you can read my writing, you're doing well.

Q. Their decisions to use their background as an excuse for their actions. Is that what you wrote there?

A. Yes.

Q. And what do you mean by that?

A. If they are -- if -- if, you know, they justify what they do because of their circumstances in life.

Q. Okay.

A. That --

Q. By that you mean that you think that there are people who justify their actions by their circumstances?

69

A. Yeah.

Q. Okay.

A. Yeah.

Q. And if evidence is presented about their background, would you think that that would be presented so as to make it an excuse for their actions?

A. You know, again, it's -- if you're talking about when you get to the special issue questions --

Q. Uh-huh.

A. -- and you're supposed to consider that or you should take that into consideration, then I would; but if you're talking about the act of a crime --

Q. Okay.

A. -- and that single crime, what you'd done previously, to me, wouldn't matter.

Q. Well, let me talk to you about that particular answer there. And combine that with the answer you gave on the next question, do you think -- some people feel genetics, circumstances of birth, upbringing, and environment should be considered when determining the proper punishment. What do you think? You say, people make decisions, and excuses are just the justification for what someone chooses to do. Okay.

So particularly in regard to those two answers, I get a picture of you in my mind that tells me

70

that in making a determination about what the proper sentence is for a defendant on trial who has been found guilty of an intentional murder, who has been shown to have been committing that intentional murder during the course of a robbery?

A. Uh-huh.

Q. Okay. All right. And I think that's the last issue I wanted to talk to you about from your questionnaire, but let's talk in terms of these special issues here. Okay?

A. Uh-huh.

Q. Because these are different from any other type of punishment that we have, punishment phase that we have in any other kind of a case in Texas. For instance, you know, what type of a case was your wife on?

A. It was a robbery and rape.

Q. Okay. So that could either be an aggravated robbery and an aggravated rape or a regular robbery and a regular rape, so we'll talk about first degrees or second degrees.

A. Yeah. I don't know what it was. I don't have a clue. She didn't want to talk about it.

Q. There are penalty ranges involved in each of those offenses. First degree would be five to life.

A. Uh-huh.

71

Q. Second degree is two to 20. Okay? And so when a jury in those type of cases has found a person guilty, then they listen to additional testimony brought by the State, additional testimony brought by the defendant, and then they go back and pick a number somewhere between those -- that penalty range, between the low and the high.

On the first degree, they can take a five-year. They can put a five-year sentence on it. They can put a life sentence. They can put 60, 45, 20, 15, whatever. And that is what they do. That's what the jury's supposed to do in that type of a case.

Now, that is different than what we ask a jury to do in a capital murder case. Okay? And, first of all, to put us in the right place in your consideration of these three special issues, let's tell you where you are. You've already found that a person, and you and 11 other jurors have found unanimously that a person on trial intentionally caused the death of the victim during the course of the commission of a robbery. Okay? So that's where you are. You've already done that.

A. Yeah.

Q. And then you get into the penalty phase of the trial. Again, the State can present testimony; the

72

defendant can present testimony. But then you go back as a jury and you're required to answer these three special issues in this order, okay, 1, 2, and 3. Now, some people tell us in looking at Special Issue Number 1, and let's read that together. Okay? Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society? Okay. So breaking that down into its different parts, you first see that the burden is on the State again to show that that answer should be yes beyond a reasonable doubt. Okay?

So by saying that, there is a presumption that the answer to that issue is no, even for a person who has been found guilty of capital murder.

A. Uh-huh.

Q. Okay. Now, some jurors tell us if the State has shown me a person who, number one, was voluntarily engaged in a robbery, and, number two, has proved to me beyond a reasonable doubt that that person intentionally caused the death of the victim during the course of that robbery, then that is, to me, the type of person who's always going to be a future danger. Okay? Other jurors say, no, not necessarily. What do you feel?

A. To be honest with you?

73

Q. Yes.

A. I hadn't thought of it that way until this morning.

Q. Yeah.

A. You know.

Q. Well, we don't expect you to.

A. Yeah.

Q. This is all new.

A. I don't know if I have an answer.

Q. Okay.

A. You know, I -- you know -- you know, everything up till thinking of it this way here, you're told you're not supposed to consider all of those other things.

Q. Uh-huh.

A. And then you're told to consider all these other things.

Q. Right.

A. So it's like, okay, well. So I would have to -- I would have to consider it, you know.

Q. Well, right. But what I'm saying is, I tend to believe that jurors believe what they put on their questionnaires.

A. I agree. You know, and I'm not saying I -- I -- I believe everything I've said here. I truly do.

Q. Okay. Uh-huh.

74

A. You know, when you -- I would -- I would have to look at, you know, it from that perspective.

Q. Uh-huh.

A. And I would do my best to answer it from that perspective.

Q. Do you think you would be able to do that?

A. Yeah. Mainly because I thought about it a lot more today than I've ever thought about it before.

Q. Well, you've never seen it before. Have you ever seen the three special issues in a capital murder case?

A. Unless it was in what you handed us when we filled out the questionnaire the first time, no.

Q. It wasn't in there.

A. So, you know, I'm thinking about something I never thought about before.

Q. Right.

A. In a context I've never thought about before.

Q. And that's right. We won't -- and, again, there's no right or wrong answer here. We're just trying to find out how you honestly feel about it.

Now, again, taking the perspective that by the time the jury is asked to look at these special issues, you have found the person guilty of capital murder, so we're talking about an intentional murderer

75

who was committing a robbery.

A. Uh-huh.

Q. Okay. And let me ask the question again: Do you think that that type of a person who would do a robbery voluntarily and then intentionally kill the victim, intentionally cause the death of the victim is the type of person who would always be a future danger?

A. They would have a significantly higher potential to be a, you know, future danger.

Q. Okay.

A. I don't know if I could use the word always or not.

Q. Okay. Let me turn that around a little bit. Would you be able to presume that that person would not be a future danger?

A. I believe so.

Q. Okay.

A. Yeah. Honestly, I believe I could, yes.

Q. Okay. Would you be able to hold the State to the burden of proof in that case?

A. Yeah.

Q. To prove the issue beyond a reasonable doubt? See, some people tell us, Mr. Maguire, that this special issue requires me to look into the future, okay, as opposed to looking at what they've done in the past, and

76

that's exactly right. It says, is this the type of person that probably would commit criminal acts of violence in the future that will constitute a continuing threat to society? So you can look at it this way and say, we don't punish somebody for what they've already done, we give them give them the death penalty for what they're likely to do in the future. See how that's --

A. Yeah.

Q. -- exactly what that question is asking a jury to determine --

A. Uh-huh.

Q. -- is the future likelihood of what a person's going to do? You also note that they use probability instead of the word "possibility." What does that word "probability" mean to you?

A. You know, if you were looking at it at a 50/50, it's greater than 50 percent.

Q. Okay. And that's right. They could have used the word "possibility," but they didn't. And they chose these words very carefully, and they put in probability as opposed to possibility. So, you know, what the legislature is telling us is that the State has got to prove that the person's probably going to be a future danger, even if he's in the penitentiary, because that's what we're talking about.

77

A. Uh-huh.

Q. Okay? So is this the type of person that's probably going to continue to commit criminal acts of violence against other inmates or against the wardens, jailers, nurses, whoever he might be around in that context of what his society's going to be, which is going to be the penitentiary.

A. Yeah.

Q. Okay? Do you see how that --

A. Yeah.

Q. -- that's what that question is really asking?

A. Yes.

Q. Okay. Would you be able to hold the State to that burden of proof?

A. Yeah.

Q. Okay. Now, understand that if the jury answers that question no, that the State hasn't proven to me that he's going to be a future danger, okay, that that's the end of your deliberations. You write that on the verdict sheet to go back and tell the Judge, and the Judge at that point sentences the defendant to life without parole. Okay?

And let me ask this, now, some people have different ideas what -- how long do you think a person actually has to spend in the penitentiary if they get a

78

life without parole sentence?

A. Life without parole?

Q. Uh-huh.

A. I believe that's till their death.

Q. That's correct. Okay. You'd be surprised at the answers we get on that from jurors. Some people --

A. The word "without" --

Q. -- say 20 years --

A. -- is kind of hard to --

Q. It means exactly what it says.

A. Yeah.

Q. Okay?

A. Okay.

Q. All right. When we talk about Special Issue Number 3, let's just jump right to that, some people tell us --

THE COURT: Can you see it?

VENIREPERSON MAGUIRE: Yeah.

Q. (BY MR. LOLLAR) -- if the State has proven to me that a defendant's guilty of capital murder and they've proven to me beyond a reasonable doubt that he's going to be a future danger --

A. Uh-huh.

Q. -- okay, really there are no circumstances that can be shown to me which is going to let me avoid the

79

imposition of the death penalty in that case. Okay? If you show me he's a capital murderer and I believe beyond a reasonable doubt he will continue to inflict violent acts on others, even in the penitentiary, that that does it for me, I'm not going to avoid a death sentence for that person.

A. Are you asking if I believe that?

Q. Yes.

A. I would be one of the people you would have to convince that that shouldn't be, you know.

Q. What shouldn't be?

A. That it shouldn't be the death penalty. So if I'm being told to take that into consideration, I believe I would, but I would probably be one of the people who would say, you know, it would be very challenging for me to say there's some other reason why you shouldn't.

Q. Okay. All right.

A. So if I've answered 1 yes, I would -- Number 3 would be hard to answer anything but yes.

Q. Okay. But for instance --

A. If I'm asked to consider it, I would.

Q. -- some people tell us that the age of the defendant might be something that they would consider in assessing moving back away from the death penalty towards a life sentence without parole. Do you feel that you

80

would be able to give consideration to the age of the defendant, who's clearly old enough to be prosecuted as an adult?

A. I don't think -- I don't think age would make a difference to me.

Q. So that's not something you would consider?

A. No.

Q. All right. Let's talk about this issue of voluntary intoxication. If a person has voluntarily made themselves intoxicated as a result of alcohol or drugs, is that something that you think you would be able to move away from the death penalty to a life sentence based upon?

A. I guess the only thing I would say is I might consider that if it was the first time they had ever taken some type of drug --

Q. Okay.

A. -- and it had a reaction that even they would realistically say they couldn't have anticipated.

Q. Okay.

A. But I --

Q. How about this issue of the life history of a person, whether or not they've been raised with a silver spoon in their mouth or whether they've been raised in poverty with neglect, that type of thing? Would that be

81

something that would move you away from a death penalty, possibly, and towards a life sentence?

A. I think it would be very hard to move me away from a -- from that -- for those reasons.

Q. I'm sorry?

A. I think it would be very hard for me to move away from the death penalty for those reasons.

Q. Okay. For what reasons?

A. For the way you were raised or, you know, how hard your, quote/unquote, life has been.

Q. And some people -- let me ask this and see what your opinion is. If friends and relatives of the person on trial, the people that know him best, come down and tell you that this action that they did was an aberration of behavior for them, that they're not normally like that, some people say that would make a difference; some people say that wouldn't make a difference to me.

A. I -- I don't know if it would make a difference to me.

Q. Would you give that any consideration at all?

A. It would have to be in the context of, say, like I said, if that was the first time they had ever taken some narcotic.

Q. Okay.

A. Then I could say, yeah, I can agree with that,

82

that's probably not the way that person normally was.

Q. And then lastly, this issue about whether or not, and this goes back to one of the questions you gave us here, whether or not that person had engaged in violent behavior before the day of the offense. Okay? And I believe you indicated to us in one of your questions there on page 3 or 4, page 4, I don't believe that a person should receive a lesser penalty because they haven't committed prior violent acts.

A. That's correct.

Q. And is that something that in answering Special Issue Number 3, if that were presented to you as a mitigating factor that they had not committed prior violent acts, I take it then that your answer would be that that would not --

A. I don't know.

Q. -- be something you would consider?

A. I don't know how it would mitigate their intentional, you know, crime.

Q. So it wouldn't?

A. No.

Q. Okay. All right. I think my time is up. Thank you, Mr. Maguire.

A. No problem.

THE COURT: All right. Thank you,

83

Mr. Maguire, and I'm going to ask you to step out with my bailiff while I confer with the attorneys. Just leave that there and we'll bring you back in, in just a minute.

(Venireperson Maguire exits courtroom.)

THE COURT: Thank you, ladies and gentlemen. Be seated.

All right. Ms. Handley, does the State have a challenge for cause?

MS. HANDLEY: We do not. We believe Mr. Maguire is qualified.

THE COURT: All right. And, Mr. Lollar, does the Defense have a challenge for cause?

MR. LOLLAR: We do, Your Honor.

THE COURT: Okay. Go ahead and dictate it into the record, please.

MR. LOLLAR: If it will please the Court, thank you, your Honor. We feel that this juror has clearly expressed that he will pay no mind, he will not give meaningful consideration, he will not give any consideration to such mitigating factors as was already expressed to the Court we will present in Mr. Broadnax's defense should we arrive at that portion of the trial. Such mitigating factors recognized by the Supreme Court as age, lack of significant prior criminal history or

84

violent behavior, life history that brought him to that point, and friends and relatives saying that this is aberrant behavior for him.

We feel that under the Supreme Court's rulings in Eddings versus Oklahoma, E-d-d-i-n-g-s; Morgan versus Illinois; and Lockett, L-o-c-k-e-t-t, versus Ohio, this juror is not a qualified juror to be considered on this type of a jury. We feel that the Supreme Court has clearly said that if a juror refuses to consider any relevant mitigating evidence, the juror is unqualified to sit. If they say that they would give it no weight, then they are not qualified to sit. If they say that the evidence, the mitigating evidence is irrelevant to them, and, again, if they would not give any such -- or such evidence any weight at all, then the juror is not qualified to sit, so we suggest he is not qualified to sit in this case.

THE COURT: All right. Thank you.

Does the State wish to be heard on this?

MS. HANDLEY: Briefly, Your Honor.

I think Mr. Maguire's testimony specifically coming from the Defense voir dire is rife with his ability and willingness to consider the evidence in this case. I've taken very specific notes on what this gentleman has stated, and he's been consistently stating

85

with respect to the special issues that I will consider it and even said, aren't you supposed to wait until you consider that, I will do that.

With respect to Mr. Lollar's consideration about age and drugs, he's also stated that he would give consideration to age. I might consider that. He even talked about it in context of his personal feelings about how he would swear drugs and age and voluntary intoxication, so I think he's demonstrated, Your Honor, a willingness and an ability to look at all the evidence in the case and base his decision on that after meaningful consideration. We believe he's qualified.

THE COURT: All right. Thank you.

The Defense's challenge for cause is denied. Okay. And he will be Number 19, I believe. Is that correct?

MS. HANDLEY: Is that right?

MR. LOLLAR: Yes, sir.

THE COURT: Number 19.

MR. PARKS: Let the record reflect, please, that this is a juror who is unacceptable to the Defense.

THE COURT: Yes, sir. So noted.

Okay. Bring Mr. Maguire back in, please.

(Venireperson Maguire enters courtroom.)

THE COURT: Mr. Maguire, come on back in.

86

Just have a seat right here for just a moment.

Thank you, ladies and gentlemen. Be seated, please.

All right. Mr. Maguire, you're going to be Prospective Juror No. 19.

VENIREPERSON MAGUIRE: Okay.

THE COURT: Now, that doesn't mean you're on the jury. It just simply -- what we're doing -- I think one of the attorneys explained it to you. We're qualifying --

VENIREPERSON MAGUIRE: Yeah.

THE COURT: -- about 40 people, or, excuse me, about 50 people. I'm sorry. 40 would be --

MR. LOLLAR: Too few.

THE COURT: -- too few, wouldn't it? Okay. Sorry about that. We're qualifying about 50 people.

VENIREPERSON MAGUIRE: All right.

THE COURT: And then the jury will come from that 50 people.

VENIREPERSON MAGUIRE: Okay.

THE COURT: And you're Number 19, so we've got a ways to go yet --

VENIREPERSON MAGUIRE: Okay.

THE COURT: -- until we get our panel, as we're calling it. And then from that, then the attorneys

87

will make their strikes, and those that aren't struck for one reason or another by either side, then the first 12 that aren't struck qualify for the jury, so --

VENIREPERSON MAGUIRE: Okay.

THE COURT: -- anyway. But what I do want you to do, we anticipate that Judge Snipes is going to start evidence in this case August the 10th, and we also anticipate that that is going to take approximately two weeks, maybe not quite that long, don't think it will take any longer than two weeks.

So what I'm going to ask you to do right now is to pencil in on your calendar that two-week period. Do you know of anything that's going on in your life right now that would prevent you from being able to, if you should be on the jury, that would prevent you from being able --

VENIREPERSON MAGUIRE: No.

THE COURT: -- to be here --

VENIREPERSON MAGUIRE: No.

THE COURT: -- for that two-week period?

VENIREPERSON MAGUIRE: No.

THE COURT: Okay. Now, that doesn't mean -- again, you'll be noticed -- notified probably, I'm going to say, the last part of July --

VENIREPERSON MAGUIRE: Okay. That's what I

88

was going to ask.

THE COURT: -- by Judge Snipes and telling you whether or not you're on the jury.

VENIREPERSON MAGUIRE: Okay.

THE COURT: And, of course, if you're not, well, then, you don't report for jury service on August the 10th.

VENIREPERSON MAGUIRE: And we will be brought back in?

THE COURT: No. You won't be brought back in.

VENIREPERSON MAGUIRE: Okay.

THE COURT: Now, if you're on the jury, yes.

VENIREPERSON MAGUIRE: Well, then, obviously.

THE COURT: Then you'll be -- you'll be noticed to appear for jury service on August the 10th, and that's when Judge Snipes will administer the oath of a juror to you.

VENIREPERSON MAGUIRE: I'm assuming that would not be moved up? I have plans for --

THE COURT: We kind of doubt that because he's given up ample time and I think --

MR. LOLLAR: That won't --

89

THE COURT: -- all the subpoenas and everything for witnesses --

VENIREPERSON MAGUIRE: Okay.

THE COURT: -- and whatnot are scheduled for that week and the following week --

VENIREPERSON MAGUIRE: All right.

THE COURT: -- and so I don't think it would be moved up. I think -- you know, now, if I don't get my job done, you know, Judge Snipes may have to move it back, but I don't anticipate that will happen either. I think we're right on schedule.

VENIREPERSON MAGUIRE: Okay.

THE COURT: So it looks like August the 10th is a good date.

VENIREPERSON MAGUIRE: All right.

THE COURT: And he's more than likely not going to change that, so I think you can kind of count on that.

VENIREPERSON MAGUIRE: Okay.

THE COURT: Also, you came in here indicating that you didn't know anything about this case?

VENIREPERSON MAGUIRE: That's correct.

THE COURT: And that you couldn't remember the style of the case when you left here --

VENIREPERSON MAGUIRE: I knew what was style

90

was, but I didn't know --

THE COURT: -- so you never had an opportunity to go back, I hope, and look in the archives --

VENIREPERSON MAGUIRE: No.

THE COURT: -- or anything like that? And that's the way I want to keep you.

VENIREPERSON MAGUIRE: All right.

THE COURT: I don't want you -- I don't want you knowing anything about this because you're going to be required by your oath that Judge Snipes will give you that you're going to make your decisions or render your verdicts in this case based solely upon the evidence that you'll see here and receive in the trial of the case along with the law that Judge Snipes will give to you in his charges to the jury. Okay?

VENIREPERSON MAGUIRE: All right.

THE COURT: All right. So I'm going to ask you again not to go back and --

VENIREPERSON MAGUIRE: Research.

THE COURT: -- look at any old newspaper articles --

VENIREPERSON MAGUIRE: No problem.

THE COURT: -- get back in the archives or anything like that in the Dallas Morning News or into the

91

TV accounts. And if anything comes up in the future, you know, any newspaper articles appear about the trial, and specifically during the course of the trial, I'm sure Judge Snipes will continue to admonish the jury not to read any newspaper articles or listen to any TV accounts of the trial. And I'll just ask you to do that for me between now and August the 10th as well.

VENIREPERSON MAGUIRE: Okay.

THE COURT: Okay? All right.

Anything further from the --

MS. HANDLEY: Nothing further.

MR. LOLLAR: No.

THE COURT: All right. Well, thank you very much, Mr. Maguire. Thank you for being here today.

VENIREPERSON MAGUIRE: No problem.

THE COURT: Appreciate your time.

VENIREPERSON MAGUIRE: All right. Thank you.

(Venireperson Maguire exits courtroom.)

THE COURT: And why don't we take about a 10-minute recess here.

(Recess, 10:24-10:36.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson Castro enters courtroom.)

92

THE COURT: Come in, Mr. Castro. How are you this morning? Go ahead and have a seat right there, please, sir.

Thank you, ladies and gentlemen. Be seated, please.

And, Heather, I'd like for the record to reflect that that is Prospective Juror No. 252, Felix Castro, C-a-s-t-r-o.

VENIREPERSON CASTRO: Yes, sir.

THE COURT: How are you this morning, Mr. Castro?

VENIREPERSON CASTRO: Fine.

THE COURT: Good. Thank you for being here. I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, just right up the road here a little ways. And Judge Michael Snipes is the Presiding Judge in this case and the one you saw when everybody got together, oh, it's probably been over a month ago now.

VENIREPERSON CASTRO: Yes, sir.

THE COURT: Anyway, Judge Snipes has asked me to assist him in this jury selection process in this capital murder case. And while he's upstairs in his courtroom taking care of the day-to-day matters of the court, well, I'm down here assisting him by going through this individual voir dire. So that explains to you what

93

I'm doing here today instead of Judge Snipes, and also why you're here today.

VENIREPERSON CASTRO: Yes, sir.

THE COURT: Okay. And you'll recall it's been, like I said, probably over a month ago now that everybody got together and Judge Snipes addressed the group, and at some point in the proceedings, he had everybody on the panel to stand up --

VENIREPERSON CASTRO: Uh-huh.

THE COURT: -- raise their right hand, he administered the oath of a prospective juror to each panel member. Do you recall that, Mr. Castro?

VENIREPERSON CASTRO: Yes, sir.

THE COURT: All right. Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON CASTRO: Yes, sir.

THE COURT: Very good. I'll just remind you, you're still under that oath that was administered to you. And just by way of reminder, what he did swear you to do or what you have been sworn to do is to give truthful answers.

VENIREPERSON CASTRO: Yes.

THE COURT: But we know you'd do that anyway. And, also, to be responsive to each and every question that's asked to you by any of the attorneys that

94

are involved in this trial. Okay?

VENIREPERSON CASTRO: Yes, sir.

THE COURT: And so let me also give you your questionnaire because I know it's been over a month since you've seen that, and they, I'm sure, will have questions for you concerning some of your answers and responses to the questions that are contained in there.

VENIREPERSON CASTRO: Uh-huh. Well, I tried to do the -- I try to write down the right things that --

THE COURT: Yeah.

VENIREPERSON CASTRO: -- you know, that --

THE COURT: And let me tell you just a little bit about this session that we're going to have here today.

VENIREPERSON CASTRO: Uh-huh.

THE COURT: Now, did you have an opportunity to read your little --

VENIREPERSON CASTRO: Yes.

THE COURT: -- juror guide?

VENIREPERSON CASTRO: Yes.

THE COURT: Okay. That briefly tells you something about the law and something about the procedural aspects and then those three special issues --

VENIREPERSON CASTRO: Uh-huh.

THE COURT: -- that the attorneys are going

95

to talk to you in more detail about today. And what they're going to do, Mr. Castro, is to explain the law to you probably in more detail than what is contained in here.

VENIREPERSON CASTRO: Uh-huh.

THE COURT: And then once you understand it, because we know you don't know anything about it --

VENIREPERSON CASTRO: No, sir.

THE COURT: -- and nobody does when they come in here, so we don't expect anybody to know it. But they're going to explain it to you, and then when you understand it, then they're going to ask you questions to get your ideas, your thoughts, you know, how you feel, your opinions, if you will, about how you feel about the law, some of the procedural aspects, or about the special issues that are involved.

VENIREPERSON CASTRO: Uh-huh.

THE COURT: Okay?

VENIREPERSON CASTRO: All right.

THE COURT: So there's no right or wrong answers I guess is what I'm telling you.

VENIREPERSON CASTRO: Uh-huh.

THE COURT: There's no right or wrong answers. This is not a quiz that you've got to pass, you know. Okay?

96

VENIREPERSON CASTRO: Oh, okay.

THE COURT: All right. Just how you feel about it.

Now, let me introduce the attorneys to you, and then I'll turn it over to them and they will start talking to you.

This is Ms. Elaine Evans --

MS. EVANS: Good morning.

THE COURT: -- seated right here. And next to her is Ms. Andrea Handley.

MS. HANDLEY: Good morning.

THE COURT: And then next to her is Mr. Gordon Hikel.

MR. HIKEL: Good morning, Mr. Castro.

THE COURT: And all three of these ladies and gentleman are assistant district attorneys here in Dallas County. And they, along with one or two other attorneys, are charged with the responsibility of prosecuting this case, so they're the prosecution team, if you will, or part -- most of the prosecution team. Like I say, there's maybe one or two other attorneys that might participate in the trial that aren't here today. Okay?

And then seated on my side of the table right next to me down here is Mr. Brad Lollar.

97

MR. LOLLAR: Good morning.

THE COURT: And next to him is Mr. Doug Parks.

MR. PARKS: Good morning.

THE COURT: And then on the very end down there is Ms. Keri Mallon.

MS. MALLON: Good morning.

THE COURT: And all three of these attorneys comprise the Defense team, and they represent Mr. James Broadnax on the very end down there who's the defendant and their client in this case. All right? Very good.

Ms. Evans, I believe we're ready for your voir dire.

MS. EVANS: Thank you, Your Honor.

THE COURT: Yes, ma'am.

FELIX CASTRO,

Venireperson No. 252, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Good morning, Mr. Castro.

A. Good morning, ma'am.

Q. I want to first ask you, how do you feel about being here today as a potential juror?

A. I've got to do what I have to do.

Q. Okay. And you mentioned just now that on your

98

questionnaire you tried to write down the right things?

A. Yeah. I've got sloppy writing. I didn't --

Q. I could read it.

A. I'm not too educated --

Q. That's --

A. -- so excuse me.

Q. That's okay. I'll tell you what. If somebody tried to read whatever I wrote down, even when I was trying my hardest to print and write it down, they would still be saying, now, what did you say there. I have horrible writing, so I could read your answers just fine.

But I did want to ask you about, you said that you tried to write down the right things, and then on page 2 regarding any moral, religious, or personal beliefs with regards to sitting in judgment against another human, you said, I'm trying to do the right thing. What do you mean by that when you say you're trying to do the right thing?

A. It's hard to judge someone.

Q. Uh-huh.

A. And really and truthful, I think I -- well, it's very difficult because that's a hard position to be in, to judge someone, because in different cases, in different times or whatever, it's just difficult, you

99

know, to -- for me to say, hey, you know, going around saying wrong, wrong, right, yes, it's difficult.

Q. Certainly. I think I understand what you're meaning. Do you have any sort of moral or religious or personal belief that would prevent you from sitting in judgment and doing your duty as a juror, just following the law and the evidence?

A. Ma'am, I'll be truthful. I think it would bother me a little.

Q. Okay.

A. Because I never -- I've been in jury duties before --

Q. Uh-huh.

A. -- in Chicago, here, and I've served, but in a case like this --

Q. Okay.

A. -- I -- I -- I -- it's -- it's difficult.

Q. Okay. And when you say you've been on jury duty before, in fact, have you served on a jury before?

A. Yes, ma'am.

Q. Okay. And I saw that. How long ago was that?

A. Quite a while. Maybe five years. Five years, I think, Cabell Court and here, I came and I served. It's been a while. They pick me every year, but --

Q. Okay.

100

A. -- it's difficult. It's different cases --

Q. I understand.

A. -- like stealing cars, hijacking a car --

Q. Okay.

A. -- you know, with a couple in there, and -- but when it comes to losing lives and all that, it's -- it's difficult.

Q. Okay. And when you say the jury you sat on about five years ago, that had to do with like a carjacking --

A. Yes, ma'am.

Q. -- is that right? And what you're talking about, you're saying it's difficult in a capital murder case, right, like you're here to serve on today, correct?

A. (Moving head up and down.)

Q. Is that a yes?

A. Yes, ma'am.

Q. Okay. And, basically, you understand that it's the State's position that we -- we are seeking the death penalty. We believe we have the type and the quality and the quantity of evidence that after a jury hears all of that evidence, they will render a verdict of guilty on capital murder.

A. Uh-huh.

Q. And then with regard to the special issues that

101

you would be called upon to look at in the punishment phase, that second phase of the trial, we believe that we have the type and the quality and the quantity of evidence that would lead you to answer the special issues yes, yes, and no, which would then render a sentence of death. The Judge would have no choice if after you answer those special issues, yes, yes, and no but to sign the death warrant for this individual seated here at the end of the table. Do you see Mr. Broadnax down at the end of the table?

A. Yes, ma'am.

Q. We're talking about you participating in a process that could ultimately -- the evidence could lead you to a sentence of death. And so you would be participating in a process where you'd have a hand at killing an individual. Is that what you mean, that you think it might be a bit difficult?

A. Yes. I did a lot of thinking because I read the article in the paper when that incident happened.

Q. Okay.

A. And I felt real bad for the individuals. You know, it -- it -- it -- you know, their families, because I've got five kids, and, you know, to -- to -- to -- somebody to lose their lives like that, it's -- it's very sad --

102

Q. Okay.

A. -- the way they -- they -- you know, they didn't have any money on them and whatever they had, they were trying to offer it to them, and he said, you know, that they -- they took their lives instead. So it was -- for me, it's emotional because I think that it doesn't have -- nothing has to be that violent, you know.

Q. Okay.

A. But it happened.

Q. And, Mr. Castro, based on what you read in the newspaper --

A. Uh-huh.

Q. -- is this where you read it?

A. Yes, ma'am.

Q. Did you form an opinion already as to the guilt of this individual, the person responsible?

A. In -- in my way of thinking --

Q. Uh-huh.

A. -- yes.

Q. You have? Okay.

A. I'm not going to lie to you because --

Q. No. We just -- there's no right or wrong answers. We just want you to be honest here today.

So the law says that you're to presume an individual innocent; but based on what you read, you have

103

already formed an opinion as to the guilt of the individual charged?

A. Yes, ma'am.

Q. Okay.

A. I mean, I hate to -- I don't want to lie to you.

Q. We -- hey, we just want the truth here today. That's why we're talking to so many people. Okay, Mr. Castro?

A. Yes, ma'am. And --

Q. Thank you.

THE COURT: All right. Well, Mr. Castro --

Do you have any questions, Mr. Lollar?

MR. LOLLAR: No, we don't, Judge.

THE COURT: Okay.

MR. LOLLAR: Thank you.

THE COURT: Mr. Castro, I want to thank you so much for being here today, and I'm going to excuse you from any further jury service in this case. All right?

VENIREPERSON CASTRO: All right.

THE COURT: But we do thank you for your time and for being here today. Thank you, sir. Just leave that with us, if you would, and that, and we'll take care of it for you.

VENIREPERSON CASTRO: Okay.

THE COURT: Thank you so much. Appreciate

104

your time.

VENIREPERSON CASTRO: Thank you, y'all. Have a good day.

THE COURT: Thank you. You too.

(Venireperson Castro exits courtroom.)

THE COURT: Okay. Does the State have a challenge for cause?

MS. EVANS: Your Honor, the State would challenge this juror for cause. He can't follow the presumption of innocence.

THE COURT: Okay.

MR. LOLLAR: We have no objection.

THE COURT: The State's challenge for cause will be granted, and Mr. Castro has been excused from further jury service in this case. All right.

Now, I guess we're ready for -- well, that's it for the morning, isn't it?

MR. LOLLAR: I think that's it.

THE COURT: Okay. All right. Oh, good. We're getting to leave early for lunch.

MS. HANDLEY: Who's the gentleman sitting out there?

THE COURT: Is that another of our -- oh, you're talking about Jose?

MS. HANDLEY: Yeah.

105

THE COURT: He's got some business with the folks out here. Okay.

Anything else?

MR. LOLLAR: I don't believe so, Judge.

THE COURT: All right. Be back here at 1:15.

(Recess, 10:52-1:26 p.m.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson Riddle enters courtroom.)

THE COURT: Mr. Riddle, come in and have a seat right there, if you would, please, sir. All right.

Thank you very much, ladies and gentlemen. Be seated, please.

All right. Mr. Riddle, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, and I'm assisting Judge Snipes in this jury selection process, so that's what I'm doing here today.

VENIREPERSON RIDDLE: Okay.

THE COURT: And, consequently, why you're here today.

VENIREPERSON RIDDLE: Yes, sir.

THE COURT: The attorneys are going to talk to you just a little bit, and I don't think this will take very long.

106

So, Mr. Hikel, I'm just going to go ahead and turn him over to you.

MR. HIKEL: Thank you, Your Honor.

THE COURT: Yes, sir.

ANSEL RIDDLE,

Venireperson No. 515, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Mr. Riddle, good afternoon, sir.

A. Good afternoon.

Q. Let me ask you just for the record, is your first name -- is it Ansel?

A. A-n-s-e-l, Ansel.

Q. Okay. Mr. Riddle, do you remember about back in, I believe, April, you filled --

A. Yes, sir.

Q. -- out this questionnaire? I think this is your --

THE COURT: This is it right here. I'm sorry. Mr. Riddle, there you are.

VENIREPERSON RIDDLE: Oh, that's all right.

Q. (BY MR. HIKEL) Okay. And on the very first page of that questionnaire at the very bottom where you are given those five choice that reflect -- which one best represents your view of the death penalty, you circled

107

number five.

A. Uh-huh.

Q. Do you see it there?

A. Uh-huh.

Q. Okay. And where you circled it, you said that I could never under any circumstances return a verdict which assessed the death penalty. Is that still how you feel today?

A. Yes, sir.

Q. Okay. All right.

MR. HIKEL: No further questions.

THE COURT: Any questions, Mr. Lollar? Mr. Parks?

MR. PARKS: No.

THE COURT: All right.

Thank you, Mr. Riddle. We appreciate you being here. So I told you it wasn't going to take very long.

VENIREPERSON RIDDLE: Okay.

THE COURT: But we do appreciate your time and effort that you made to be with us.

VENIREPERSON RIDDLE: Okay.

THE COURT: Just leave that there. Thank you very much. You are excused.

(Venireperson Riddle exits courtroom.)

108

THE COURT: Okay. All right. Mr. Hikel, do you have a challenge for cause?

MR. HIKEL: Yeah, the State would move to challenge Juror No. 515, Mr. Riddle, in light of his view that he's against the death penalty under any circumstances.

THE COURT: Okay. Mr. Lollar, any objection?

MR. LOLLAR: No, Your Honor.

THE COURT: Thank you. Mr. Riddle, then, will be excused -- or excuse me. I'm sorry. State's challenge for cause will be granted. All right. That takes care of him.

So looks like Ms. Alexander; is that correct?

MR. HIKEL: Yes, Your Honor.

THE COURT: All right. Ms. Alexander, please.

THE BAILIFF: All rise for the juror.

(Venireperson Alexander enters courtroom.)

THE COURT: Come in, Ms. Alexander, if you would, please, ma'am. Just have a seat right there.

VENIREPERSON ALEXANDER: Okay.

THE COURT: How are you this afternoon?

VENIREPERSON ALEXANDER: Good.

THE COURT: Good. I want to give these to my bailiff here. Thank you.

Let the record reflect this is Prospective Juror No. 485, Karen Ann Alexander. And, Ms. Alexander, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, and I'm assisting Judge Snipes in this jury selection process, so that's what I'm doing here today and what you're doing here today.

VENIREPERSON ALEXANDER: Okay.

THE COURT: So I don't think this will take very long, so I'm just going to turn you over to the attorneys that are going to talk to you. And Mr. Gordon Hikel is an assistant DA and he's going to talk to you now.

MR. HIKEL: Thank you, Your Honor.

KAREN ANN ALEXANDER, Venireperson No. 485, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Hi, Ms. Alexander. How are you today?

A. Hi. Good. Thanks.

MR. HIKEL: Can she have the questionnaire?

THE COURT: Yes, sir. Excuse me. I'm sorry.

Q. (BY MR. HIKEL) Ms. Alexander, what the Judge has just given to you there is your questionnaire you filled out back, I believe, in April. Do you remember filling that out?

A. Yes.

Q. Yes, April. Okay. On the very first page of the questionnaire, you were asked the question about your -- which one of those five choices best represents your feeling of the death penalty. Do you have it there?

A. Uh-huh.

Q. Okay. And you circled number four, which reads, I believe that the death penalty is appropriate in some murder cases, but I could never return a verdict which assessed the death penalty.

Is that the choice that you had circled, ma'am?

A. Yes.

Q. Okay. Is that still how you feel today?

A. Yes.

Q. Okay. I know you made an exception to Hitler on page 2 --

A. Yeah.

Q. -- but, okay. But as it pertains to this case, regardless, you will not be able to return a verdict which assessed the death penalty, correct?

A. Correct.

Q. Okay. And you still feel that way today?

A. I do.

Q. Okay.

MR. HIKEL: I have no further questions.

THE COURT: Mr. Lollar?

MR. LOLLAR: Are you going to China tomorrow?

VENIREPERSON ALEXANDER: I am.

THE COURT: Oh, how nice.

VENIREPERSON ALEXANDER: I'm excited.

THE COURT: Well, have you got two tickets? I'd kind of like to go.

MR. LOLLAR: Thank you, Ms. Alexander.

VENIREPERSON ALEXANDER: Thank you.

THE COURT: You bet. Enjoy your trip.

VENIREPERSON ALEXANDER: Thank you.

THE COURT: Thank you so much for being here.

(Venireperson Alexander exits courtroom.)

THE COURT: Okay. Mr. Hikel?

MR. HIKEL: Judge, the State would move to challenge Juror No. 485, Ms. Alexander, for cause, in light of the fact that she said she could never under any circumstances return a verdict which assessed the death penalty.

THE COURT: Any objection, Mr. Lollar or Mr. Parks?

MR. LOLLAR: No.

THE COURT: Thank you. State's challenge for cause will be granted. Okay. Very good.

Ms. Mercer, it looks like. Delores Mercer.

THE BAILIFF: All rise for the juror.

(Venireperson Mercer enters courtroom.)

THE COURT: Hi, Ms. Mercer. Come on in and have a seat right here for me, if you would, please, ma'am. How are you this afternoon?

VENIREPERSON MERCER: I guess all right.

THE COURT: Well, good. Good.

Thank you, ladies and gentlemen. Be seated, please.

VENIREPERSON MERCER: I was sick yesterday.

THE COURT: Sick yesterday?

VENIREPERSON MERCER: Yes.

THE COURT: There's a lot of that stuff going around.

This is Prospective Juror No. 646, Delores Annette Mercer, M-e-r-c-e-r.

Ms. Mercer, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, and I'm assisting Judge Snipes in this jury selection process

113

while he's upstairs with the daily routine of the court, and so he's asked me to come and conduct and preside over the jury selection process in this capital murder case. So I think we're just going to get right into the questions from the attorneys now. And Mr. Gordon Hikel is going to -- he's an assistant district attorney here, and he'll be talking to you now. All right?

MR. HIKEL: Thank you, Your Honor. Could she have her questionnaire, please?

THE COURT: There you go, Ms. Mercer.

VENIREPERSON MERCER: Thank you. I didn't know I was going to have to need these.

DELORES MERCER,
Venireperson No. 646, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Ms. Mercer, again, my name is Gordon Hikel, and just very briefly, the questionnaire the Judge just gave to you, do you remember filling that out back in April in this building?

A. Uh-huh. Yes, sir.

Q. Okay. And on the very first page of the questionnaire, you were asked a question about which one of those five choices best represents your feelings about the death penalty. And I believe you circled number one,

114

at the very bottom, the very bottom right there, uh-huh. Did you circle number one?

A. Yeah, I did.

Q. And you said there that, by making the choice, you said you believe that the death penalty is appropriate in all murder cases?

A. Well, I don't understand everything because I don't read or write.

Q. Okay.

A. And with me as a mother of three adults, if anything happened to them, if they were murdered, I do believe in the death sentence.

Q. Okay.

A. Because I do watch a lot of programs that have things like that in it.

Q. Okay. And so your feeling, then, today still is that, if you had it your way, whenever there's a murder case, at least in Texas, you believe that that crime, any murder case, that the death penalty should be an option?

A. Yeah.

Q. Okay. You understand that that is not the law in Texas?

A. No. Like I say, I don't read or write or any of that because --

Q. All right.

115

A. -- I was an abused child when I was growing up --

Q. Okay.

A. -- so...

Q. And -- okay. The choice that you circled there, number one, you -- you still feel that way then, correct?

A. Yeah.

Q. Okay. All right.

MR. HIKEL: No further -- no more questions of Ms. Mercer.

MR. LOLLAR: No questions.

THE COURT: All right.

MR. HIKEL: Thank you.

THE COURT: Thank you very much, Ms. Mercer. I'm going to excuse you. Thank you very much for being here.

(Venireperson Mercer exits courtroom.)

THE COURT: Okay. Mr. Hikel?

MR. HIKEL: Two things. We move to challenge Juror No. 646 for cause. Number one, she said that, as reflected in the question there, she believes the death penalty is appropriate in all murder cases. In addition to that, as she mentioned on the record, she does not know how to read and write, and I believe that is reflected in the 18-page questionnaire which except

116

for one page is completely blank, Your Honor.

MR. LOLLAR: No objection.

THE COURT: Let the record reflect that I'm looking at the juror's questionnaire and every question is blank with the exception of the contact information that's filled out on the front page and that's it.

MR. HIKEL: And page 13 about her children.

THE COURT: Oh, okay. And page 13 about the family history, about her, you know, kiddos, and that sort of thing. Other than that, nothing. All right. Very good. Thank you very much.

Any objection to the State's challenge for cause?

MR. LOLLAR: No, Your Honor.

THE COURT: Then Prospective Juror No. 4 -- excuse me, 646, Delores Annette Mercer, will be -- the State's challenge for cause will be granted. Okay.

Mr. Davis next.

THE BAILIFF: All rise for the juror.

(Venireperson Davis enters courtroom.)

THE COURT: Mr. Davis, come on in, please, sir. How are you this afternoon?

VENIREPERSON DAVIS: Fine.

THE COURT: Good. Just go ahead and have a seat right there, if you would, please, sir.

117

And I'd like for the record to reflect that this is Prospective Juror No. 593, Charles Edward Davis. And, Mr. Davis, I'm Judge Quay Parker.

VENIREPERSON DAVIS: Okay.

THE COURT: I'm a Senior District Judge, but from McKinney.

VENIREPERSON DAVIS: All right.

THE COURT: And Judge Snipes has asked me to assist him in the jury selection process in this capital murder case. So that explains to you what I'm doing here today instead of Judge Snipes. He's upstairs in his courtroom taking care of the daily matters, in other words.

VENIREPERSON DAVIS: Uh-huh.

THE COURT: So I'm down here helping him pick this jury. So, anyway, I don't think this will take very long, and Mr. Gordon Hikel who is an assistant district attorney here is going to ask you a couple of questions. And then if the other attorneys have any questions, I'll let them do so at that time. Okay?

VENIREPERSON DAVIS: Okay.

THE COURT: Mr. Hikel.

MR. HIKEL: Thank you, Your Honor.

THE COURT: Uh-huh.

MR. HIKEL: Could he get his questionnaire?

118

THE COURT: Yes, sir.

There is your questionnaire, Mr. Davis.

CHARLES DAVIS,
Venireperson No. 593, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Mr. Davis, good afternoon again, sir.

A. Uh-huh.

Q. Mr. Davis, do you recall, I believe it was back in April, you came to this building and you filled out a questionnaire?

A. Yeah.

Q. Okay. On the very first page of the questionnaire, almost at the bottom, you were asked a question there about which one of these five views best represents your feelings about the death penalty. And I believe you circled number five; is that correct?

A. Uh-huh.

Q. Okay. And number five said that I could never under any circumstances return a verdict which assessed the death penalty.

A. Yeah.

Q. Was that the choice you circled?

A. Yes.

Q. Okay. Do you still feel that way today?

119

A. Yeah.

Q. Okay. All right.

MR. HIKEL: I have no further questions.

MR. LOLLAR: We don't have any questions.

THE COURT: Very good. Thank you, Mr. Davis. We appreciate you being here. You can just leave that with me.

MR. HIKEL: Thank you, Mr. Davis.

THE COURT: And thank you so much for your time.

VENIREPERSON DAVIS: Okay. Thank you.

THE COURT: Good to meet you. Thank you, sir.

(Venireperson Davis exits courtroom.)

THE COURT: All right. Mr. Hikel?

MR. HIKEL: Judge, the State would move to challenge Juror No. 593, Mr. Charles Davis, for cause in light of his answer that he could never return a verdict which assessed the death penalty, that being his answer today as was reflected in his questionnaire as filled out back in April.

THE COURT: Mr. Lollar?

MR. LOLLAR: No objection.

THE COURT: Thank you. Prospective Juror No. 593, Charles Edward Davis, State's challenge for

120

cause will be granted.

Okay. Now I guess we're down to Mr. Murphy, right?

THE BAILIFF: Yes, sir.

THE COURT: Y'all ready?

MR. HIKEL: Yes, sir.

THE COURT: Okay. Bring Mr. Murphy in, please.

THE BAILIFF: All rise for the juror.

(Venireperson Murphy enters courtroom.)

THE BAILIFF: Right here, sir.

THE COURT: Mr. Murphy, how are you, sir?

VENIREPERSON MURPHY: Okay.

THE COURT: Just go ahead and have a seat right there, if you would, please, sir. Just go ahead and have a seat.

Thank you, ladies and gentlemen. Be seated, please.

Heather, I want the record to reflect that this is Prospective Juror No. 357, Andrew Murphy, M-u-r-p-h-y. Correct, Mr. Murphy?

VENIREPERSON MURPHY: Yes, sir.

THE COURT: All right. Mr. Murphy, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas. And I'm down here assisting Judge

121

Snipes who is the Presiding Judge in this case in the jury selection process.

VENIREPERSON MURPHY:  Right.

THE COURT:  And Judge Snipes is upstairs in his courtroom taking care of the daily matters of the court while I'm -- he's got me down here picking this jury for him.

VENIREPERSON MURPHY:  Okay.

THE COURT:  Okay?  And so that explains to you what I'm doing here today instead of Judge Snipes, and, consequently, that's why you're here today, too.

VENIREPERSON MURPHY:  Yes, sir.

THE COURT:  Yes, sir.  And we appreciate you being here today.  Now, Mr. Murphy, do you recall, and it's probably been over a month ago, when everybody came down to central jury --

VENIREPERSON MURPHY:  Yes, sir.

THE COURT:  -- and Judge Snipes talked to you at that time?

VENIREPERSON MURPHY:  Right.

THE COURT:  You filled out your questionnaire?

VENIREPERSON MURPHY:  Right.

THE COURT:  And there's a copy of it.  I know you haven't seen it in probably over a month, but,

122

anyway --

VENIREPERSON MURPHY:  No.

THE COURT:  -- the attorneys will be asking you questions about some of your answers and responses.

VENIREPERSON MURPHY:  Okay.

THE COURT:  So you may need to refer to that, and you're welcome to do so.  They will tell you what question and what page they're on and you can turn to it.  All right?

VENIREPERSON MURPHY:  All right.

THE COURT:  Okay.  Anyway, you recall that day at some point in the proceedings, Judge Snipes had everybody stand up --

VENIREPERSON MURPHY:  Right.

THE COURT:  -- and raise their right hand and he administered the oath of a prospective juror to each panel member?  Do you recall that?

VENIREPERSON MURPHY:  Yes, sir.

THE COURT:  Good.  Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON MURPHY:  Yes.

THE COURT:  Very good.  Let me just remind you that you're still under that oath, and what you have sworn to do --

VENIREPERSON MURPHY:  Right.

123

THE COURT:  -- is to, number one, give truthful answers, but I'm sure you would anyway.

VENIREPERSON MURPHY:  Yeah.

THE COURT:  And, number two, to be responsive to each and every question that's asked to you either by myself or the attorneys that are involved in the case.  All right?

VENIREPERSON MURPHY:  Yes, sir.

THE COURT:  Okay.  Very good.  Now, let me just introduce the attorneys that are going to be talking to you today.  First is Mr. Gordon Hikel sitting right here.

MR. HIKEL:  Mr. Murphy.

THE COURT:  And next to him is Ms. Andrea Handley.

MS. HANDLEY:  Hello.

THE COURT:  And then next to her is Ms. Elaine Evans.

MS. EVANS:  Good afternoon.

THE COURT:  All three of these ladies and gentleman are assistant district attorneys here in Dallas County, and there's two other members of the prosecution team, I think at least one other member --

MS. HANDLEY:  Yes, sir.

THE COURT:  -- of the prosecution team

124

that's not here today.  But these three ladies and gentleman are charged with the responsibility of prosecuting this case.  So one of them will be -- Mr. Hikel will be talking to you today for the State of Texas.

Now, seated next to me down here is Mr. Brad Lollar, and next to him is Mr. Doug Parks, and on the very end down there is Ms. Keri Mallon.  And they're the three attorneys that are the Defense team in this case.  And then seated next to Ms. Mallon down there is Mr. James Broadnax, and he's the defendant in this case and their client.  Okay?

All right.  Mr. Hikel, I believe we're ready for your voir dire.

MR. HIKEL:  Thank you, Your Honor.

ANDREW MURPHY,
Venireperson No. 357, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE
BY MR. HIKEL:

Q.  Mr. Murphy, again, good afternoon, sir.

A.  How you doing?

Q.  I'm doing well.  How are you doing today?

A.  I'm doing good.

Q.  Okay.  Mr. Murphy, I'm just going to explain this process to you.  If at any point in time during this

125

process I ask you any questions you don't understand or anything, please don't hesitate to tell me you don't understand what I'm asking you, and I'll repeat it. And if we -- I'm to ask you any question that may be embarrassing or anything, please know that our intention here is not to embarrass you or anything. Our intention here is just to ask you as a potential juror what are your thoughts and your ideas and your feelings about the law.

And, obviously, before we can ask you that question, I will endeavor to tell you what the law is as it will be applicable to this case; and then once I tell you that, I will then ask you the questions about what are your thoughts and ideas about the law as I've explained them to you. Okay?

A. (Moving head up and down.)

Q. The questionnaire sitting in front of you, let me just -- let's just jump into that, some things we need to clarify. Do you remember filling out that questionnaire back I believe it was April in this building?

A. Yes.

Q. Okay. Will you flip to the very last page for us, page 18. I just want to clarify something.

A. Last page.

126

Q. All right. And the question that it asks you there, I'll let you read it to yourself.

A. The last one?

Q. The question, it says here, you were asked, I have never been convicted of any felony, I've never been convicted of any kind of theft or shoplifting regardless of value.

A. Right.

Q. I am not under indictment nor am I under any legal accusation for any grade of theft or any felony.

A. Right.

Q. And then you were asked the question, As applied to you, is the above statement true and correct, yes or no? And you left yours blank.

A. I probably just got tired.

Q. Okay. We understand that. And so today as you sit there in light of that question, is the answer yes or is the answer no?

A. About this question here?

Q. Yes. Meaning that you've never before been convicted of a felony?

A. That's right.

Q. Okay.

A. That's yes.

Q. Okay. You don't have any -- well, hold on

127

before you circle yes because if you circle yes --

A. Uh-huh.

Q. Hold on a second. Let me make sure you understand that. No theft conviction, shoplifting, or anything?

A. That's right.

Q. And you're not currently under any indictment or any legal accusation as we speak today --

A. No.

Q. -- is that correct? All right. Okay. So the statement is true and correct, then you can check yes now.

A. (Witness complies.)

Q. Okay. All right. Along the same lines, if you would turn to page 9 in the questionnaire also, please.

A. Number 9?

Q. Page 9, yes, sir. When you get to page 9, let me know.

THE COURT: The page numbers are at the bottom of the page there, Mr. Murphy.

A. 9?

Q. (BY MR. HIKEL) Uh-huh.

A. Okay.

Q. Are you there?

A. Yeah.

128

Q. Okay. The very first question on page 9 asks about whether or not do you know anyone who is now or has been in jail or prison. Do you see that question there?

A. Yes.

Q. And you circled yes.

A. That's right.

Q. Okay. And then the question, it says, if yes, please give details. There are no details there. Could you tell us why?

A. I know a lot of people. I don't know how to answer that. I said the reason I didn't give no details, probably too -- too much.

Q. Too many people?

A. Too many, yeah.

Q. Okay. Some of those persons that this applied to would be family members and non family members?

A. Both ways.

Q. Okay. Could you tell us some of the family members that that would be applicable to?

A. Would in-laws be family?

Q. Sure, yeah.

A. Do you want details about what the deal is and --

Q. Right. It says, for example, person charged in the first category there. Who is the person charged?

129

A.   I would say Eddie Robertson. He was charged with I guess what you call it, homicide by -- somebody got killed in a car accident and they determined that it was his fault.

THE REPORTER:  What was the name again, please?

VENIREPERSON MURPHY:  Eddie Robertson.

Q.   (BY MR. HIKEL) That was a manslaughter charge or something, or vehicular --

A.   I don't recall what the -- the details of what the charge was, but that's -- that's what he was charged with.

Q.   Okay.

A.   That he was at fault for the --

Q.   Right.

A.   -- person's death.

Q.   All right. What is his relation to you, relationship to you?

A.   He's a brother-in-law.

Q.   All right. Do you remember approximately when that was?

A.   About how long it's been?

Q.   Correct.

A.   Probably been about 20 years, 15 years at least, at least that long.

130

Q.   Okay. And was he sent to prison or --

A.   Yes.

Q.   And where was that?

A.   Where did he do?

Q.   Yeah. Was it in Texas or --

A.   Texas.

Q.   Texas. All right.

A.   That happened in Harrison County.

Q.   Okay. Harris County. All right.

A.   Not Harris, Harrison.

Q.   Harrison. I'm sorry.

A.   Uh-huh.

Q.   And then he was sentenced -- how long was he sentenced to prison for? What was that?

A.   I think it must have been 16 or 17 years, at least that.

Q.   All right.

A.   You know, I didn't really keep no real record or nothing, nothing like that.

Q.   All right. Okay. Who else besides Mr. Robertson, Eddie Robertson, does this question apply to?

A.   Would this apply to?

Q.   Yes, sir.

A.   You work in a public place, man, you just know

131

tons of people.

Q.   Sure. Uh-huh.

A.   Just any --

Q.   Let's just narrow it to family then, if there's more. I know it asks for anyone, but in terms of saving time, like family members, if there's any other family members.

A.   That would be the only one that stands out in my mind --

Q.   Okay.

A.   -- that I recall.

Q.   All right. Meaning that there could be more, but at this point, you don't remember?

A.   I don't remember all of them. It's just -- you know, I'd have to just sit down and jot this down, then go back over it, and --

Q.   Uh-huh. Right.

A.   -- I'm not as young as I used to be.

Q.   I understand. Now, you said you work in a public place so you know a lot of people. Would that be the customers that you know of also --

A.   Lot of customers.

Q.   -- at your shop? Okay. You said yes?

A.   Yes.

Q.   Okay. And do you have a close relationship with

132

these customers, you know them well enough that --

A.   Just casual.

Q.   Casual.

A.   It's a customer thing. That's all. I don't -- I don't -- I don't do them kind of relationships.

Q.   Okay. All right. But without necessarily -- if you don't remember their names, could you give us some idea of what are the categories of crimes that you know they've been convicted of? What are some of the crimes that you know of?

A.   Lots of them I know have just been convicted of such things as drug trafficking and things like that.

Q.   All right. Okay.

A.   Some murders.

Q.   Okay. Those that you know have been convicted of murders, you know, in this business we use a word, we call it, for lack of a better term, ordinary murder. We understand there's nothing ordinary about murder, but we use that word to distinguish it from what we call capital murder, which we'll talk to you about which is why you're here today. Those that you know of who have been convicted of murder, do you know what happened in those instances, any details about it?

A.   I would call it some -- you know, you get all the gossip.

133

Q. Right.

A. I would say just some of it's just passion.

Q. Okay. They killed someone in sudden passion or heat of passion or something?

A. That's right.

Q. Okay. And these are just -- these are customers you're talking about that you know?

A. Just different individuals, you know, I've met over the years.

Q. Okay. And are they still in prison, those who were convicted of murder?

A. Some. Some of them.

Q. Uh-huh.

A. Some, you know, are out.

Q. Okay. The ones that are already out of prison, how long, as far as you know, were they sent to prison for before they got out?

A. I think as long as I can just kind of recall --

Q. Uh-huh.

A. -- about 20 years.

Q. 20 years. What are your thoughts about that? Knowing what you know about the facts of the crime and the sentence they got, what are your thoughts about that, the length of their sentence or anything like that, any thoughts or ideas or feelings about that?

134

A. Well, I think that he asked for it.

Q. "He" meaning that the person who did the crime or the person who was the victim?

A. No. The person that -- not the one, the victim, the one who did the crime, he asked for it.

Q. Okay.

A. I figure that's for sure.

Q. Okay. All right. And in light of the sentence being, you said, about 20 years, you thought that was long enough, too short?

A. No, I thought it was short. You can't -- how can you give back somebody's life?

Q. Uh-huh. So you thought in those cases -- that case where he killed someone, he should have gotten more time?

A. If he did it, well, that's -- that's what he asked for.

Q. Okay. "He" meaning the person who did the crime?

A. You know, you never take nothing you can't give back to somebody.

Q. Okay. Now, this person that you're talking about that got 20 years that you feel is not enough, is this the same set of facts you're talking about where you believe that that person was killed due to sudden passion

135

or is it a different crime you're talking -- a different instance you're talking about?

A. Well, you know, the passion thing --

Q. Uh-huh.

A. -- I feel that way about murder, period.

THE REPORTER: I'm sorry?

A. I feel that way about it, period.

Q. (BY MR. HIKEL) Meaning?

A. That you never take away nothing you can't give back.

Q. Even in the heat of sudden passion?

A. That's it. You shouldn't do it.

Q. All right. So these customers of yours that you know about, the one or more that may have committed murder of sudden passion, you're telling us that even in that instance, you're saying that you don't think it's right to take something you can't give back?

A. That's it.

Q. Okay.

A. I could take your pen, but I could change my mind and bring you a new one.

Q. All right. Okay. But because --

A. But I can't cut your finger; I can't fix it.

Q. All right. So since the death is inevitable, you believe that you shouldn't do that at all?

136

A. You shouldn't do that. Uh-huh.

Q. All right. Now, you understand that the law in Texas is this now in terms of when a murder -- when someone is murdered, that not every murder is a death penalty case; you understand that, correct?

A. Right.

Q. Okay. I mean, for example, if I get mad with my colleague here on my left, and I, you know, kill her, laugh about it, stomp on her after she dies, I can't bring her back because I killed her.

A. Right.

Q. You understand just that alone, even though I've murdered her, and the State wants to charge me with a crime, it would not be a case where I'm eligible for the death penalty, even though it's a murder. Do you understand that? And the reason being is this, that under Texas law, before a person can be charged with a crime that is eligible for the death penalty, it could be where you kill a police officer in the line of duty, you kill a child under the age of six, you kill multiple persons in the same criminal episode, transaction, or as in this situation, you have a murder plus an aggravating factor.

For example, some of the aggravating factors that have to accompany the intentional killing of someone

137

under Texas law are things like in the course of a robbery, you know, I want your property, whether it be a pen or it be a Rolex watch or whatever the property is, I want your property, I intentionally kill you, take your property, or in the course of burglarizing your house or in the case of an aggravated sexual assault, you kill someone intentionally, or in retaliation for something, or for money. Those are the kind of aggravating factors where under the Texas law, there's an intentional murder plus something. And if we can prove the plus something, murder plus, then the person would be eligible for what's called the death penalty. Do you understand the difference there?

A.   Yes, sir.

Q.   Okay. Now, we talked some more about these three things back there called special issues. But before we can get to those special issues, I'm going to walk you through the process that we have to follow, the State, before we can get there. Okay?

Now, I'll tell you right now what our objective is. Do you see the young man sitting there at the end of the table? You understand, the Judge introduced you, he's the defendant in this case? And our goal, the State, this State on this side here, is that we believe that the evidence -- we have the type of

138

evidence, the quality of evidence, and the quantity of evidence that will lead 12 fair and impartial jurors to say, yes, we have proven beyond a reasonable doubt that that defendant there committed the crime of capital murder. Okay? We believe also that once the juror -- jurors answer that question that, yes, we've proven that, then you go to the next stage, the second stage of the trial called the punishment stage where we will ask the jurors to look at these three special issues, 1, 2, and 3, and we will talk about them some more. But we believe we have the kind of evidence that will lead 12 fair and impartial jurors to answer the question Special Issue Number 1 yes; Special Issue Number 2 yes, Special Issue Number 3 no. And if those three issues are answered like that, yes, yes, and no, the Judge will have no choice under the law but to sentence that defendant to death. That's our objective. Do you understand that?

A.   Yes.

Q.   Okay. Do you believe that you can partake in a process like that, Mr. Murphy, that could, we don't know, but that could inevitably lead to that young man, that defendant, being executed for the crime we believe he committed in this case? Do you understand that?

A.   If those three things apply.

Q.   Okay. So you're telling us that if we prove to

139

you, you'll hold us to our burden?

A.   Right.

Q.   Because we have to prove Number 1 to you beyond a reasonable doubt?

A.   Right.

Q.   We have to prove Number 2 to you beyond a reasonable doubt?

A.   Correct.

Q.   But as applied to Number 3, neither side has a burden of proof. Okay? We don't have to prove that to you; just you consider every single thing that you heard in the trial and you decide if the answer to Number 3 is yes or no. If you say to Number 3, the answer is no, he gets the death penalty sentence. If you say yes, he gets the life sentence. Okay?

Now, so let's talk about this process now. Under our law, Texas law, every person who is accused of a crime, there's certain fundamental rights that he or she has. If you're accused of a crime, you will have these right also. Number one is what's called the presumption of innocence. Even though we have filed an indictment, which is this document sitting in front of you here, which basically is a piece of paper that tells a citizen what he's accused of, it tells the State what we have to prove. That indictment is no evidence of any

140

guilt against the defendant, Mr. Broadnax. As he sits here today, you don't know anything about him, do you?

A.   No, sir.

Q.   Okay. If I were to ask you right now if he's guilty or innocent, your decision would be what?

A.   Was he guilty or --

Q.   Or not -- guilty or not guilty, what would your decision be?

A.   My decision would be that --

Q.   Not guilty?

A.   -- he's not guilty --

Q.   Right.

A.   -- because I don't know.

Q.   Exactly. You haven't heard anything as of yet?

A.   I haven't heard nothing.

Q.   No evidence yet, right?

A.   No.

Q.   As he sits here, he's to be presumed innocent?

A.   Yes.

Q.   Okay. Not only is it his right, but it's the right of any person accused of a crime.

A.   Anybody.

Q.   Okay. Number two is witnesses. You understand in this case if you are a juror, that witnesses come into the court to testify. The law says that you cannot start

141

off any category of witnesses, whether they be police officers, whether they be clergy, whether they be lawyers, you can't give them a leg up or a leg down simply because they are a police officer or clergy or priest. Okay?

A.   Uh-huh.

Q.   You understand that, right? Do you agree with that?

A.   That's right.

Q.   Now, you have to listen to what they have to say when they take the witness stand.

A.   Right.

Q.   And then you evaluate what they say as to whether or not you believe all of what they've said, some, or none. Okay? But when they start testifying, you can't say, ah, police officer, I believe everything he tells me. It wouldn't be fair.

A.   I don't believe that.

Q.   Right. Okay. Now, at the same time, now, you can't say, oh, please, police officers, I know they're going to lie before they even begin talking. You can't say that either because that wouldn't be fair to the State or to the witness.

A.   No, sir.

Q.   Okay. And you can -- you can follow that?

142

A.   That's right.

Q.   All right. Another fundamental principle is, and you've probably seen this on TV a lot, called the Fifth Amendment. That's where when a person's accused of a crime, he or she has the absolute right to remain silent.

A.   Silent.

Q.   So, for example, we've charged in this case here, it's a hypothetical case, where the State said that this person killed this person here by shooting him with a gun. All right? And that's what we said, and we put it in the indictment, which means we've got to prove it. All right?

A.   That's right.

Q.   Here we are on trial. Now you're a juror. And we've proven everything, except this one thing. The medical examiner comes into the courtroom and testifies that, yeah, that person is dead, sure enough, I did the autopsy, but I didn't find any gunshot wounds. I found 50 stab wounds. Okay? Now, we have alleged in the indictment the person died from being shot.

A.   Right.

Q.   The medical examiner said, no, he wasn't shot, he was stabbed. In that situation, you understand you would have to find the defendant not guilty, correct?

143

A.   Right.

Q.   Tell me why is that.

A.   Well, you got in here gun.

Q.   Right.

A.   The medical examiner said knife.

Q.   There you go. Now, even though there is a dead body, even though the defendant may have said, I did it and everything --

A.   Right.

Q.   -- if we don't prove it --

A.   He didn't do it.

Q.   There you go. You can't give it -- you can't give us a leg up.

A.   Huh-uh.

Q.   Now, good. Also, I mentioned a couple of times this term, if you recall, that we have to prove beyond a reasonable doubt that the person being accused of the crime committed the crime. So, for example, this is a death penalty case. Now, whether we're talking about the theft of a bicycle or in this case a death penalty case, the burden of proof is still the same. It is beyond a reasonable doubt.

A.   Right.

Q.   Now, notice now I didn't say beyond all doubt. I didn't say beyond every possible doubt. What is the

144

term I used?

A.   Reasonable.

Q.   Reasonable doubt.

A.   Reasonable doubt.

Q.   Which means what?

A.   I'd say you can prove it without reasoning that it happened. It's that's the way it is.

Q.   Okay. In other words, you may have some doubt, for example, but it's a doubt based upon reason and common sense?

A.   Right.

Q.   You know, because, for example --

A.   But if you have more reason than I have doubts --

Q.   Right.

A.   -- then we've got to go with you.

Q.   Okay. As long as -- right -- I prove my stuff in my indictment, okay --

A.   Right.

Q.   -- that the defendant --

A.   That's it.

Q.   -- on a certain date, Dallas County, State of Texas, committed the crime --

A.   Right.

Q.   -- you know, and, as I said in this case, was

145

Q. killed somebody in the course of committing a robbery, and I prove each of those elements and you're convinced beyond a reasonable doubt, what is your verdict?

A. What is it?

Q. Yeah, if you're convinced beyond a reasonable doubt.

A. That -- that it happened?

Q. Correct.

A. He's guilty.

Q. Okay. And if I don't prove it to you beyond a reasonable doubt, what's your verdict?

A. He's innocent.

Q. Okay. Not guilty, right?

A. Uh-huh.

Q. Okay. All right. So now we've talked about indictment is no proof of anything. We talked about a presumption of innocence, his Fifth Amendment right to remain silent, that I've got to prove it to you beyond a reasonable doubt, and that when a witness comes in, you start off every witness on the same level, but once you hear what they have to say, then you make your decision, do I believe him or not, and you evaluate the witnesses from their testimony in court, right?

A. Right.

Q. So far are you with me?

146

A. Right.

Q. All right. Now, I want you to keep all those principles in mind. Let's talk about you are now a juror, the 12 of you. Have you been a juror before, Mr. Murphy?

A. Yes.

Q. Okay. What kind of case was that?

A. I think it was -- was that a --

Q. I tell you what. Let me help you remember. Was there six of you or was there 12 of you?

A. It was 12 of us.

Q. 12 of you?

A. Uh-huh.

Q. So was it in this building here?

A. Yes, it was in this building.

Q. All right. So it was a criminal case?

A. It was a criminal case.

Q. All right.

A. I forgot exactly what it was.

Q. Okay. Do you remember what the verdict was, the jurors reached a verdict?

A. We got a verdict. It was -- supposedly, the defendant, he lost the case.

Q. Uh-huh. Okay. You did find the person guilty?

A. Yes.

147

Q. Okay. And did you guys assess punishment or did the judge assess punishment?

A. The judge.

Q. The jury -- the judge?

A. Uh-huh.

Q. Okay. So you guys heard the evidence, you found him guilty?

A. Right.

Q. And then he went into the other part called the punishment where the judge assessed the punishment?

A. Right.

Q. Okay. In this case here, a death penalty case here, same thing happens where you'll have 12 jurors. And remember when you served as a juror back in that case, were you guys all together or were you in 12 separate rooms?

A. We was all together.

Q. Okay. Now, very important now, why do you think they have the 12 of you together as opposed to 12 separate rooms when you're asked to reach your decision?

A. Well, so you can deliberate and talk about what the circumstances --

Q. Good.

A. -- are that you're looking at there.

148

Q. Right.

A. Uh-huh.

Q. And so you 12 are together because there is an expectation as a juror that you deliberate, discuss --

A. Find out, discuss, and there may be some things I'm not too clear on --

Q. Okay.

A. -- that we can all discuss it.

Q. All right.

A. And then I can make a better decision.

Q. Okay. As to whether or not the State has proven to you --

A. Exactly.

Q. -- that he's guilty?

A. Right.

Q. Okay. In this case, it's the same thing. Okay? There will be 12 of you. We'll present evidence in the form of witnesses and you would answer that question. Okay? If we answer the question and prove to you beyond a reasonable doubt and then you come back in as a juror, the foreman signed the form that says, the State has proven beyond a reasonable doubt that he's guilty, you come back and then we go into the second part of the trial, the second stage called the punishment.

A. Right.

149

Q. Now, in that particular case that you served on, when you found the person guilty, given the fact that the judge was setting punishment, I assume you guys were sent home? You guys left?

A. We left, went home --

Q. Okay.

A. -- after it was over. I think that's what that was about was whether this guy was running a movie house without a permit.

Q. Okay. All right.

A. And that's what it ended up being that that's what he was doing.

Q. All right.

A. And then I believe that once we said that he -- that he's guilty of that --

Q. Right.

A. -- but then the judge could make the decision to close that down.

Q. Right. Okay. So you guys, your duty was done once you reached the verdict?

A. Once we decided that that's what he was doing and that's what he's guilty of, then the judge had to make his decision.

Q. Right.

A. Said, look, you was -- you was found guilty of

150

running the movie house without a permit.

Q. Okay. Now --

A. So now I can close it down.

Q. Okay. Now, in this case now where there's a death penalty, if we prove to you beyond a reasonable doubt that the defendant is guilty of committing the crime as we have alleged, we're going to the second stage of the trial called the punishment. Now, you will hear evidence, the same as what you did in the first part, you will hear evidence again.

A. Right.

Q. Okay. The purpose, though, of you hearing additional evidence in the punishment stage is this: The same way in the first part you've got to presume the defendant innocent until we, the State, prove whether or not he's guilty beyond a reasonable doubt, when the second stage of the trial begins and you hear all the evidence, it is for the purpose of deciding has the State proven to me in the punishment stage beyond a reasonable doubt Issue Number 1? Now let's look at Issue Number 1. Can you see from that far? Can you read it?

A. Okay. Yeah.

Q. All right. Notice what it says now. Do you find from the evidence beyond a reasonable doubt that there is -- I'm going to talk about some words in there,

151

that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society? Now, let me ask you this, Mr. Murphy: In this particular case, this is a death penalty case, correct, you're aware of that?

A. Right.

Q. Did you read the little questionnaire --

MR. PARKS: We would object to that. It's not a death penalty case. It's a capital murder case in which the State is seeking the death penalty.

MR. HIKEL: I'll restate it, Judge.

THE COURT: Okay. Thank you. I appreciate that.

Q. (BY MR. HIKEL) Okay. Mr. Murphy, this is a case, a capital murder case in which the State is seeking the death penalty. Now, did you read the questionnaire? When you sat outside waiting to come inside, did you read the brochure the Judge gave you?

A. Yeah, I looked at it.

Q. All right. Assuming now that you're a juror in this case, you have found the defendant guilty as charged of capital murder, what is the best sentence the defendant can hope for at that point? The moment you find him guilty, what sentence does he get?

A. Based on this, what's in that, that he would get

152

the death penalty.

Q. Well, you remember the brochure you read out there when you were sitting outside --

A. Uh-huh.

Q. -- that in a capital murder case where we are seeking the death penalty, the State, once someone is found guilty, he's automatically sitting on what's called life without parole.

A. Right.

Q. Okay?

A. Uh-huh.

Q. So you are to presume, if you find him guilty, there's a presumption that the proper thing to do is to give him life in prison without parole unless the State can then prove these special issues to you. That's the reason why if you find him guilty, the trial isn't over. You don't go home. You go into the other part, the other stage called the punishment where you answer these three special issues. Okay?

Now, you'll notice Number 1 says, we have to prove, the State of Texas has to prove beyond a reasonable doubt that there's a probability. Now, when you see the word "probability," what does -- what does that mean to you?

A. It's not for sure, but it's possible.

153

Q. Okay. Well, do you see a difference between the word "possible" and the word "probable"? Would you agree with me that anything is possible?

A. Anything's possible, but probable is probably what we intend to do. It's what we're going to do.

Q. All right. Some juries have told us here that the word "probable" -- and there's no definition. Just the same way that the term "beyond a reasonable doubt" is left up to you what it means to you as a juror, same with the word "probability." But what most people tell us is the word "probability" means more likely than not.

A. That's right.

Q. Okay? Because it's possible that, you know, I can run the 100-meter dash in 9 seconds and beat, you know, whoever the world champion is right now, Usain Bolt. The problem is while it's possible, it ain't probable. Now, I can win it if I'm the only one who shows up and if I run by myself, I'll win it. Okay? But it's not possible -- it's -- it's not probable for me to do that because I can't run that fast. Possible but not probable. So the word "probable" means more likely than not. Okay?

Now, notice what it says now, probability that the defendant would commit criminal acts of violence. So we're asking you in a sense as a juror to

154

predict the future. Now, I know you're thinking, oh, that's a risky proposition, but notice what it says, though. We're not asking you strictly in the blind just sitting there and guessing, trying to speculate. What we're asking you to do is -- and we didn't write this here, the legislators in Texas wrote this -- they said do you find from the evidence, the evidence we present in court, beyond a reasonable doubt that there's a probability the defendant would commit criminal acts of violence.

Now, how would you think, Mr. Murphy, that the State of Texas can go about proving that to you if you were a potential juror? If we're asking you to predict the future, so to speak, is he a future danger, what would be some of the things you would want us to bring to you as a potential juror to help you answer that question? What would you want to know?

A. Well, study the history of these kind of people with this kind of behavior.

Q. All right. So you want to know something about the history of -- do you mean all death penalty cases or just the defendant's history?

A. Well, then you couldn't do him because that may be the first time --

Q. Okay.

155

A. -- that he was accused. Now, you -- and the ones that -- I'd call it you need to just go and look at the history --

Q. Uh-huh.

A. -- of what they call the repeat offender.

Q. Okay. So, in other words, if there's a criminal history, you expect --

A. Yeah.

Q. -- to hear about it?

A. Yes.

Q. Okay. Now, notice now what Special Issue Number 1 says. Now, as a juror, based on the facts alone, the same facts you heard in the guilt/innocence stage which is that we have to prove to you that the defendant intentionally, in other words, it was his conscious objective --

A. Right.

Q. -- to kill somebody.

A. Right.

Q. It wasn't an accident. He didn't shoot him like in the kneecap and the person bled to death. It was his intent. He set about to kill this person, to take the person's property. Okay? Now, before we can be deciding Issues Number 1, 2, and 3, the only way we get to them is if you have found the person guilty of capital murder.

156

If you find him guilty of murder, we don't even talk about these three issues here. We talk about, like your customer who got the 20 years you felt wasn't enough, if you find a person guilty of just murder either because we didn't prove that there was the aggravating factor, the robbery, or we didn't prove that he did it intentionally. Maybe we would prove that he shot him in the knee and the person bled to death or something like that. Okay? Then you will decide the range of punishment from five years to life for just murder. But if you find him guilty of capital murder, then we get to these issues here, 1, 2, and 3. And you've got to decide them in the order as they're given to you, 1, 2, and 3.

Now, the law says that you as a juror in answering that question Number 1, you can make that decision based solely on the facts of the case. Do you understand that?

A. Right.

Q. Now, but here's the point, though, very important, Mr. Murphy, if you find him guilty of intentionally killing somebody while taking their property and you go into the second stage called the punishment, you cannot have a mind that says, hey, I already found him guilty of capital murder, I know the answer to that Number 1 is yes right away, not until you

157

do what with the rest of the jurors; deliberate, correct?

A. Right.

Q. And discuss?

A. That's right.

Q. Okay?

A. Uh-huh.

Q. So you always in each of these instances have to keep an open mind.

A. Sure.

Q. And you can't make any decision until you hear the? The what?

A. The case.

Q. What is the sixth word there? What is the sixth word there on Special Issue Number 1?

A. Evidence. The evidence.

Q. Right. Okay?

A. Uh-huh.

Q. Until you hear the evidence, that's when you could make up your mind.

A. Right.

Q. But the law says, though, you can make up your mind based -- and to answer Number 1 based only on the facts of the case if that's all the State chooses to present to you in the punishment phase. Okay?

A. Uh-huh.

158

Q. All right. Now, we talked about if you find the defendant guilty of capital murder, what is the very best sentence he can get at this point if the trial were --

A. Life.

Q. Life without parole.

A. Without parole.

Q. Which means what? He's going to die where?

A. In --

Q. In jail.

A. In jail.

Q. Okay. When you hear the word "society," all right, what comes to mind when you hear the word "society"?

A. I think about where we live.

Q. Where me and you live?

A. Yeah.

Q. Where you go shopping in the grocery store --

A. Exactly.

Q. -- where you go to church, and the neighborhood, right?

A. Right. Yeah.

Q. But if the defendant is sentenced to prison, to life in prison without parole because you found him guilty of capital murder, what would his society constitute? What would it be, his society? Where would

159

that be?

A. Where would the defendant's society be?

Q. Uh-huh.

A. What would it constitute?

Q. Yes, sir.

A. Well, if he's guilty of all of that, it would be just what's on that board there.

Q. Well, now, wait a minute now. If you find him guilty of capital murder in the first stage of the trial, and the trial were to stop, what is the very best sentence he will get at that point? Life in prison, correct?

A. Right. Uh-huh.

Q. So he will spend the rest of his life in prison?

A. Right.

Q. So his society will be where he is, right?

A. Right.

Q. Okay. Which would be what? Other inmates?

A. Other inmates, prison.

Q. Prison wardens?

A. Uh-huh.

Q. Guards?

A. That's his -- that's his life.

Q. Nurses?

A. Uh-huh.

160

Q. Teachers, perhaps?

A. Right.

Q. Clergy?

A. That's it.

Q. Okay. So all these other people constitute the society where the defendant lives, right?

A. Right.

Q. Now, the legislature understood that because even though they understand that if he's found guilty of capital murder, he's going to spend life in prison without parole, they still ask you this question, though, will he be a continuing threat to that society in which he lives, the prison society? Now, have you ever heard any news or do you believe that there's violence that occurs in society -- in prison societies?

A. Yes, sir.

Q. Okay. Now, we'll have to prove it to you that he will constitute a continuing threat even if he's in prison.

A. Right.

Q. We've got to prove to you that beyond a reasonable doubt. Okay?

A. (Moving head up and down.)

Q. Now, let's assume we bring enough evidence, we prove that to you, and you answer the question yes.

161

Okay? You move on to Issue Number 2. Now, if you were to answer Special Issue Number 1 no, the trial stops, the foreman signs the paper, because if you say he's not a continuing threat, then there's no point in considering 2 and 3. The trial stops and he gets the sentence from the judge of life without the possibility of parole. Okay?

A. All right.

Q. But if you answer Number 1 yes to you beyond a reasonable doubt, we move on to Number 2. And Number 2 just simply says this. I'll read it. You can just follow me. It says: Do you find from the evidence -- there's that word again, evidence -- beyond a reasonable doubt that the defendant caused the death of the deceased, all right, or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that human life would be taken?

Now, Mr. Murphy, let me tell you this. I'm a lawyer and I've got to read that thing every single day because it even confuses me. Now, here's what it means basically. It's what we call in Texas the law of parties. Okay? And all it means is this: If me and my colleague here sit down and we discuss, these are tough economic times, I'm a DA, I don't make enough money, I need to hit a lick. Do you know what this means, to hit a lick? Do you know what it means?

162

A. Well, I guess you need to try to get some money.

Q. Get some money. All right. So you know what we're going to do, we're going hit a lick. All right?

A. Uh-huh.

Q. And I decide, I tell her, I say, look, right by where I live in Richardson, there is this nice grocery store, and I notice every night around midnight, there's only one clerk left in there, a female. It's going to be an easy target. I don't have a gun, though. And she says, oh, not a problem. I have a gun. She hands me the gun. And I say, here's the deal, I'm going to go in there, we're going to rob the store and get some money, because we need money. As DAs, we don't make enough money. She drives the car and says, Gordon, I'll be waiting right here for you, she's revving the engine. And I go in the store. And as I'm walking, I say, oh -- her name is Ms. Handley -- Ms. Handley, I forgot my mask. She said, not a problem, don't leave any witnesses, though. All right?

I go in the store, rob the cash register, and I put the gun to the clerk's head and I blow the clerk away, kill the clerk and I took the money. What crime have I committed?

A. What you -- what crime would you call that?

Q. Uh-huh. Murder the clerk and rob him or her.

163

What is that?

A. I'd call that capital.

Q. Capital murder, exactly. Because why? There is murder --

A. Uh-huh.

Q. -- and there is your aggravating factor called robbery.

A. Right.

Q. Right?

A. Uh-huh.

Q. No doubt what I intend to do when I put the gun to the head and I pull the trigger, correct?

A. Right.

Q. Now, so I can be charged with capital murder.

A. Yes.

Q. Sitting in the car outside waiting for me, she tells me, don't leave any witnesses, but she never came in the store.

A. Right.

Q. What could she be charged with?

A. Same crime.

Q. Why?

A. Because she told you, don't leave no witnesses.

Q. Exactly. She aided me --

A. Yeah.

164

Q. -- or she assisted me --

A. Right.

Q. -- or she abetted me, right?

A. Right.

Q. So the law says she shouldn't catch a break because she didn't come in the store, correct?

A. That's right.

Q. Now, but you understand that you, as a juror, though, have to decide based upon the facts, based upon the evidence, again, look at that word here, the sixth word again, do you find from the --

A. Evidence.

Q. -- evidence, okay --

A. Uh-huh.

Q. -- that Ms. Handley in that scenario either aided me or assisted me or abetted me or something like that?

A. Yeah.

Q. Okay?

A. Right.

Q. Now, if you say yes that Ms. Handley in that scenario is just as guilty as me, the gunman, you answered yes to that issue, then you move on to Number 3. If you answer no, though, to Number 2, what happens? What happens with the trial? You say yes to

165

Number 1, no to Number 2, what happens at the trial?

A. Well, you just go back to life then.

Q. Uh-huh. You do what now?

A. You get life in prison.

Q. Very good.

A. Without parole.

Q. There you go. You're listening. You're following, Mr. Murphy. Exactly. The trial stops.

A. It stops.

Q. You never get to Number 3 because before you can get to Number 3, you've got to answer Number 1 yes, if we prove it to you beyond a reasonable doubt, Number 2 yes, if we prove it beyond a reasonable doubt, and only then do you get to Number 3.

Now, the difference if you look between or among 2 -- 1 and 2 and 3 is you don't see in Number 3 the words "beyond a reasonable doubt." See, what you find in Number 3 is --

THE COURT: Can you see that all right, sir, Mr. Murphy?

VENIREPERSON MURPHY: Uh-huh.

Q. (BY MR. HIKEL) -- it says do you find, taking into consideration all of the evidence, notice that, all of the evidence, which means the facts of the crime --

A. Right.

166

Q. -- and everything under the sun that comes in to you in the courtroom.

A. Right.

Q. Because, you remember now, the same with what you hear about in TV and newspaper is not evidence in the courtroom. Okay?

A. Uh-huh.

Q. Evidence means what comes to you in the courtroom. So look at Number 3 now. Notice in Number 3, it doesn't even use the words beyond a reasonable doubt. And here's the reason why, Mr. Murphy. 1 and 2, we've got to prove it to you beyond a reasonable doubt, the State. Number 3, no one has to prove it to you. We've got to bring it in the courtroom as evidence. Now, you may hear all kinds of evidence, the defendant's background, maybe he was abused as a child, maybe he's a young man, maybe his mom fed him dog food when he was a baby boy, maybe his daddy got killed in the Vietnam War. You may hear all these different things about his background.

A. Right.

Q. Because notice what it says, from the evidence, including the circumstances of the offense, the defendant's character and background, and the personal, moral culpability of the defendant. You hear all of that

167

stuff. You may hear from doctors, psychiatrists, all of that stuff. Okay. Now, here's the thing, though. You may hear all this evidence. Okay? Now, look at what it says now. And once you hear all the evidence, it says that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than the death sentence be imposed.

Now, so here's -- here's what all of that means. Go back to Number 1. Okay? Now, the first part of the trial is over. You found the person guilty of capital murder. You go out. You come back in. The State puts on more evidence. If you answer Number 1 yes, you move on to Number 2. If you answer 2 yes, move on to Number 3. Number 3 is the chance for the jury to say, okay, I've answered yes to 1, yes to 2. He's looking at a death sentence. But I can't say death just yet until I've considered this final issue. It's almost your chance to say, okay, he -- the State has proven to me the death sentence is appropriate rather than life, but is there something that I find, not that it's mitigating, right, his background, his childhood, how hard it was, psychiatrist, not mitigating, but what is the word that comes right before the word "mitigating"?

A. Sufficient.

168

Q. Sufficient?

A. Uh-huh.

Q. Now, Mr. Murphy, there's a reason why the legislators put that word in there, sufficient. Because you may agree that all those things you hear may be mitigating.

A. Uh-huh.

Q. But the law didn't say you answer that yes if it's mitigating. The law asks you is it sufficiently --

A. Sufficient.

Q. -- mitigating, which means what? Here we go, Mr. Murphy. As my illustration, here's this window. All right? You find him guilty of capital murder. The best he can get right now is life without parole, correct?

A. Right.

Q. If you answer Number 1 yes, window's closed a little bit. Because once the window slams shut, he gets the death penalty. But here you are. Here's the window. Number 1, you say yes. Window's closed a little bit. Number 2, says yes, window's closed a little bit. But notice now the window still isn't closed because you have to consider the evidence on Issue Number 3. Okay?

A. Uh-huh.

Q. And you may hear all these different things. And, Mr. Murphy, you have a right, you have a right as a

169

juror to determine when you hear about his age and his background and his upbringing, you can categorize them and say, well, in my mind, is that mitigating sufficiently or is it aggravating. It's up to you. You can categorize them. It's entirely up to you. But I cannot overemphasize in this case the sixth word on that board Number 3. What is the sixth word in Issue Number 3?

A.   Issue Number 3?

Q.   Uh-huh. The sixth word.

A.   Consideration.

Q.   Consideration. Now, what it means in this context, Mr. Murphy, is this: You cannot have a pre made-up-mind as to what piece of evidence you hear here as an example whether you will say yes, it is, or it isn't until you are with the other jurors deliberating.

A.   Uh-huh.

Q.   So you've got to keep an open mind that whatever you hear, whether it's his age or whatever, I'm going to consider it, and I will answer this question: Do I find it to be aggravating or mitigating? And if you say it's mitigating, do I find it to be sufficient mitigating? Does it rise to that level in my mind as a juror that I think, you know what, yeah, he deserves life without parole versus the death penalty. Okay? Do you

170

understand me so far?

A.   (Moving head up and down.)

Q.   If you answer that question no, his background, his character, his age, all that stuff, is not sufficiently mitigating, what's the sentence he's earned? You say yes to 1, yes to 2, and no to 3, what is the sentence that the Judge has to impose?

A.   Life without parole.

Q.   Well, look at it now. You say, yes, he's a future danger, right?

A.   Uh-huh.

Q.   You say yes to Number 2, which is that either he killed the person or he was a party to the death, and you get to Number 3 and you say, no, I don't find anything about his background that is sufficient mitigating circumstances to warrant a sentence of life without parole, and you say no to Number 3. What sentence does he get?

A.   He get the death penalty.

Q.   The death penalty. Okay?

A.   Yeah.

Q.   Now, do you have any questions about those three issues or anything that I've covered?

A.   No, sir.

Q.   Now, let's say that you were talking to one of

171

your customers in your shop, you know, and what would you tell them as to why we should have a death penalty? Let's say they're talking, you know, and they say, you know what, I don't know, you get involved in a philosophical discussion with them about the death penalty and -- because look at your questionnaire on the very first page -- and you tell them, yeah, I'm in favor of the death penalty, and they ask you to explain. What would you tell them?

A.   What would I tell them?

Q.   Uh-huh. As that -- as that question asks you on the first page.

A.   I'd say, well, you would need to have sufficient evidence about the reason you going to give them the death penalty --

Q.   Okay.

A.   -- because you couldn't just do it because of emotion.

Q.   All right.

A.   No.

Q.   And what would be -- and what would you tell them? And let's say I'm your customer. I say, okay, I agree with you, Mr. Murphy, we should have, you know, sufficient evidence. Now, by sufficient, I hope you understand that we've got to prove to you not just by

172

sufficient evidence but by evidence beyond a reasonable doubt.

A.   Got to have -- got to have the real thing.

Q.   Okay.

A.   There's no doubt about the situation.

Q.   Okay. Now, remember now, not all doubts, only doubts based upon what? Reason.

A.   Reason.

Q.   Okay. Now, and I say to you, hey, Mr. Murphy, I agree with you that we should have it, but you say if we have sufficient evidence. Meaning what?

A.   That you -- it would fit the deal of all of the things of the reason you did that.

Q.   Okay. That it would fit the things is the reason why you did it?

A.   Yeah.

Q.   What do you mean by that? Help us.

A.   Well, you may have lowered yourself to say you wanted to obtain all of that candy there.

Q.   Uh-huh.

A.   And you went to whatever to get it. If you had to commit that to get it, then that's what you do.

Q.   Okay. Now, I want to make sure you understand now that under Texas law, and particularly in a case with the death penalty, we don't have to prove motive.

173

A.  Uh-huh.

Q.  In other words, we don't have to prove why the person commits the crime.  Now, if we are alleging, though, as we do in this case, that there was an intentional killing in the course of a robbery, we've got to prove that something was taken from the person --

A.  Right.

Q.  -- who was robbed, the victim.

A.  Exactly.

Q.  But why, we don't have to prove.  Because let me ask you this:  If I kill my colleague right here in front of -- right here I kill her in front of you, I just stab her and I kill her.  Does it matter to the State why I killed her, what my motive is?

A.  No.

Q.  So and the next thing, too, you can't get into a person's head to figure out why they did something they did.

A.  Why did they do that.

Q.  Right.  Now, it's important you understand, though, that while we don't have to prove motive, we've got to prove he did it intentionally.

A.  He intended to do it.

Q.  Right?

A.  Right.

174

Q.  Okay.  Now, on the flip side of that now, same customer asks you, well, you know what, why not -- why not do away with the death penalty and have life without parole, why not do that instead?

A.  No.

Q.  Why?

A.  Why not do -- why do -- why not do away with it?

Q.  Yeah.

A.  Because you don't -- I just wouldn't do away with it.

Q.  If you're governor for a day, let's say, you know, the voters vote you into office, governor for a day of Texas, the great big State of Texas, and you have the ability to change any law, would you pass a law that does away with the death penalty or would you keep the law in Texas for the death penalty?

A.  I would keep it.

Q.  Would you change anything about it?

A.  No.  Based on that, no.

Q.  Okay.  Because you do understand, though, as a juror, if you find him guilty, you don't go back in the room and say, hey, by a show of hands, who thinks he ought to live or die.  You understand you don't do that, right?

A.  Uh-huh.

175

Q.  You understand before you can answer the question as to what his ultimate sentence is, whether it is life without parole or death, you have to go through those special issues, correct?

A.  Right.

Q.  Okay.  Now, we've got to prove Number 1 how?  What's the standard we've got to prove it by?  What's the magic words?

A.  Evidence.

Q.  Okay.  But beyond a?

A.  Reasonable doubt.

Q.  Number 2?

A.  With the evidence.

Q.  Beyond?

A.  A reasonable doubt.

Q.  And Number 3, evidence, but no burden, correct?

A.  Right.

Q.  Okay.

MR. HIKEL:  Just a moment while I look at the questionnaire.

THE COURT:  Yes, sir.

Q.  (BY MR. HIKEL) Now, I'm always hesitant to ask this question, but on page 7, and I'm not going to get my feelings hurt, you can tell me.  We asked you on page 7, we --

176

A.  7.  Okay.

Q.  -- give you one, two, three, four categories of persons there and ask you what comes to mind when you first think of them, and you left them blank.  Is that because you don't want us to know what you think about us or what?  Are you scared to tell us?

A.  No.  Just some things I just --

Q.  Just left it blank?

A.  Just left it blank.  And, you know, I figured -- the way I figured it, I didn't have enough time to -- to do it in the proper manner.

Q.  Okay.

A.  And if you don't -- if you're not going to do it in the proper manner, don't just do something.

Q.  Okay.

A.  Because I figure it's too important.

Q.  Okay.

A.  See, rather than just say, well, I'll just put this down, put that down, just fill it in and get up and leave --

Q.  Right.

A.  -- no.

Q.  You're going to be thoughtful about it?

A.  I would have to look it over and I'd have to think over it and look over it and make sure.

177

Q. Right.

A. And if I can't do it like that, well, I would just rather not put nothing.

Q. Okay.

A. Because that's not you.

Q. Yeah. I understand. Look at page 9, Mr. Murphy, where you have about law enforcement on page 9.

A. 9?

Q. Yes.

A. Yes.

Q. The third from the bottom questions that asks, Have you, your spouse, family member, blah, blah, blah, law enforcement. You checked yes. See the third question from the bottom?

A. One, two, three.

Q. Third from the bottom.

THE COURT: Mr. Murphy, this one right here.

VENIREPERSON MURPHY: Okay.

Q. (BY MR. HIKEL) Right.

A. Yeah.

Q. You put yes, but you didn't give us details. How does that apply? How is that question yes?

A. How does it apply?

Q. Uh-huh.

178

A. I got a brother who is a retired police officer.

Q. You've got a brother who's a retired police officer?

A. Uh-huh.

Q. From what department?

A. Not in this state.

Q. From a different -- from what state?

A. California.

Q. California. Okay. All right. And one last thing, on page 10. Help us understand on page 10 where you have, have you or your spouse ever been a juror in a civil or criminal case or a grand jury, you put yes. And you put -- I think you have cold and old. Help us understand what you meant by that, Mr. Murphy.

A. I don't know why did I put that, cold? I don't know what I was thinking about that day.

Q. It was a long day, wasn't it?

A. A long day. Longest day I had in a long time.

Q. I understand, Mr. Murphy.

A. Let's see here. Might have been some kind of code enforcement or something.

Q. Okay. But the answer yes, yes still applies, right?

A. Right. Uh-huh.

Q. And who would that person be, you or your

179

spouse?

A. She.

Q. Do you remember what kind of case it was?

A. I believe it was someone trying to sue this company for --

Q. A civil, for money?

A. Right.

Q. Okay.

A. For money, a civil thing.

Q. Okay. And so this question would apply to you in two cases: One, your wife in that case, and then you as a juror which you've already told us before?

A. Uh-huh.

Q. Is that yes?

A. Right.

Q. Okay. All right. Before I pass you, Mr. Murphy, the lawyers will ask you some questions too, and just as you told me that you -- you've going to wait until you hear the evidence, evidence, evidence, evidence?

A. Right.

Q. To be qualified as a juror, the law does require you to be able to consider all the evidence presented before you --

A. Right.

180

Q. -- before you can make up your mind and make a decision?

A. Right.

Q. Do you understand that?

A. Yes, sir.

Q. Any questions you have of me about anything at all?

A. No, sir.

Q. All right.

MR. HIKEL: Pass the juror.

THE COURT: Okay. Mr. Parks, I believe you're going to inquire of this juror.

MR. PARKS: Yes, sir. Can we take about five, Judge?

THE COURT: You need to take about five minutes? Okay. Mr. Murphy, we're going to take about a five-minute recess, so if you'd like to get a drink of water or use the bathroom or whatever you need to do, my bailiff will assist you in that. All right?

VENIREPERSON MURPHY: All right.

THE COURT: Thank you, sir. We'll be back here in about five minutes.

VENIREPERSON MURPHY: All right.

THE COURT: You can leave your stuff right where it is.

181

VENIREPERSON MURPHY: I'll get a drink of water.

THE COURT: All right. We'll be in recess for five minutes.

(Recess, 2:36-2:48.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

THE COURT: Come in, Mr. Murphy, just go ahead and have a seat again there if you would, please, sir.

VENIREPERSON MURPHY: All right.

THE COURT: And just go ahead and have a seat. There's your questionnaire back, and, Mr. Murphy, I was looking it over during our break, and I noticed that when Mr. Hikel was going through it, I just kind of noticed that there were several blank questions there.

VENIREPERSON MURPHY: Right.

THE COURT: And how well do you read and write? You went through the 12th grade?

VENIREPERSON MURPHY: Right. Uh-huh.

THE COURT: And so you read and write good enough, I mean, you read the newspaper?

VENIREPERSON MURPHY: Right.

THE COURT: You do?

VENIREPERSON MURPHY: Right. Uh-huh.

182

THE COURT: Okay. Okay. All right. Then I believe Mr. Parks, you're going to interview --

MR. PARKS: Yes, sir.

THE COURT: -- Mr. Murphy? All right. You may proceed.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. PARKS:

Q. Mr. Murphy, my name is Doug Parks. I'm going to have a few questions for you, but I'll tell you, Mr. Murphy, you're going to have to talk a lot louder than you've been talking if you expect me to hear you.

A. Okay.

Q. I got most of what you were saying to Mr. Hikel, but sometimes it was an effort, and I know y'all are sitting close to each other.

A. Right.

Q. But we're a little bit further away.

A. Right.

Q. So speak up for me, if you don't mind, please, sir.

A. All right, sir.

Q. Mr. Murphy, I've got to -- I wanted to go back to your questionnaire and visit with you about a few things here before we get into talking about these issues and about the trial itself. Okay?

183

A. All right.

Q. Because as the Judge said, you know, there were some issues here that we like to see our jurors tell us about so that we can know a little bit more about them --

A. Right.

Q. -- that you didn't fill out. And I'm going to start on the front page and I know Mr. Hikel took a run at this. I'm going to take another run at it. Okay?

A. All right.

Q. Where we asked you if you're in favor of the death penalty, and if you are, explain your answer. And I understand that you told Mr. Hikel that you would need sufficient evidence before you could assess the death penalty?

A. That's right.

Q. And I appreciate that.

A. Uh-huh.

Q. But I think what we're trying more to get to here is your philosophy about it, why we should have the death penalty, what purpose do you believe that the death penalty serves that a life penalty would not?

A. That a life penalty would not?

Q. Yes, sir.

A. If a person just is not caring, just take your life or take somebody's life for some property, for that

184

reason, I -- I think it would be sufficient to do that.

Q. Okay. So let me make sure I'm understanding what you're saying. Basically, if I understand you correctly, if it's a case where a person has intentionally --

A. Right.

Q. -- taken another person's life in order to get their property --

A. Right.

Q. -- that that's a person who should receive the death penalty?

A. Yes, sir.

Q. Okay. And you see why we want to flesh these things out?

A. If it's going to be assessed --

Q. Sorry?

A. If he's going to assess it, that would be -- that would be a reason to do it.

Q. Okay. And do you believe that that would be a proper case for the assessment of the death penalty?

A. If you just take someone's life just to get some property?

Q. You bet. Is that -- is that your answer?

A. That's right.

Q. All right. Okay. Mr. Murphy, I know that this

185

is not something that -- you've never -- you've never been down here and gone through this process before, have you, in a capital murder case?

A. No, sir.

Q. And I know it's, you know, everything that we say is being taken down by the court reporter, you know that?

A. Right.

Q. But they can't take down facial expressions or things of that kind. So when I asked you that question, I -- my impression was you looked at me like I didn't have good sense for even asking you a question like that. Would that kind of be a fair characterization?

A. That's the way I see it. If you go to that extent --

Q. Yes, sir.

A. -- to take somebody's property --

Q. Yes, sir.

A. -- no, huh-uh, you have no regard for life.

Q. I'm sorry. I didn't hear you.

A. You have no regard for life.

Q. You have no regard for life?

A. That's -- you don't deserve to live in society like that.

Q. Fair enough. We're going to talk about that a

186

little bit more in a minute, Mr. Murphy.

But I wanted to talk to you, how long -- how many years did you -- were you a barber?

A. I'm still a barber.

Q. Still a barber, that's true. You're retired, though, now, or are you?

A. No. I -- I call that my hobby.

Q. Well, I understand that you do, but --

A. No. I retired from -- from the -- from transportation.

Q. Okay.

A. I worked a little -- little stint with Delta.

Q. With who?

A. Delta Airline.

Q. Delta Airlines. All right. I saw that you were retired?

A. Right. I -- I retired out of there.

Q. Okay.

A. Uh-huh.

Q. Okay. And what did you do for Delta?

A. I was what you call a customer service agent.

Q. Okay. How many years were you with them?

A. 25.

Q. Now, did you go to barber college before or after you left Delta?

187

A. I went to barber college after high school.

Q. Okay. Before --

A. Before Delta.

Q. Before Delta?

A. Yes, sir.

Q. So during the time that you worked with Delta, did you -- as a hobby, did you style hair?

A. Yes, sir.

Q. Okay. Well, where did you work, generally? Did you have a shop that you worked in?

A. I worked at different people's shops and I had a little shop myself.

Q. Okay. Where -- where were you? Where were some of the shops that you worked? Do you remember the names of them?

A. Well, I worked at Juanita's for a little while. I had another one that I set up, worked about two or three years in that. I'm still in -- still got this building that I've been and I've still got a little old place.

Q. Okay. The reason I'm asking all these questions about that, Mr. Murphy, quite frankly is that one of my all-time favorite people on the radio was a fellow named Leon who was a barber. And he got to calling in on the Norm Hitzges show and asked him such good sports

188

questions that they finally just hired him to come to work for the radio station. He was from South Dallas. Did you like Leon?

A. Yes, sir.

Q. Did you ever have a chance to meet him?

A. I never met him on a personal basis.

Q. In fact, I was sorry whenever Norm went over to The Ticket and left KLIF. They cut Leon off. I haven't heard Leon since then. I used to enjoy listening to him. Anyway, that's -- that's got nothing to do with what we're doing here for today.

A. Right.

Q. But that's the reason I was asking you all those barber questions.

Back to your questionnaire a little bit, Mr. Murphy. Over on page 4, down about the middle of the page there.

A. Yes.

Q. We asked you if you believe in using the death penalty, how strongly on a scale of 1 to 10 do you hold that belief? And I think you may have misunderstood the question. You answered it yes instead of giving us a number from 1 to 10. Could you give me some estimate of how strongly between 1 and 10 you favor the death penalty?

189

A. 7.

Q. About a 7. All right.

A. I just didn't want to put that down.

Q. Okay.

A. I didn't think it was necessary.

Q. Well, you know, we -- I know these are long questionnaires, and to some extent, they're a little bit invasive.

A. That's partially why I didn't -- didn't put that.

Q. Do you understand why we ask those questions, though, Mr. Murphy? This is --

A. Well, I know why you asked them because it's all concerning somebody's well-being probably.

Q. Did you find them to be a little bit invasive to your privacy?

A. Well, for me, but even at it being invasive, the person that is facing this, well, they have been invasive, so you just have to do things based on the rules and the law.

Q. Sure. I'm confused about one of your answers on page 5, and then there's a couple of questions you didn't answer that I really would like to have an answer to.

A. Well, which one is that?

Q. About halfway down, again, we asked what

190

purposes, if any, do you believe life without the possibility of parole serves, and -- and the answer that you put was, you wrote close, c-l-o-s-e, close. And I didn't frankly understand what that meant. Could you -- could you explain that for me a little bit?

A. Let's see now what it says here. What purpose, if any, do you believe, yeah, possibility of parole. Let's see there. Well, what did you want to know about that?

Q. Well, I'm just kind of -- I didn't understand your answer, and I was hoping you might be able to fill that out for me a little bit.

A. No. How did you put it when you said the -- what is the purpose, what purpose? Now, what did you want to know about that?

Q. Well, just what that question asks: What purpose do you believe the life without parole serves? Does it serve a purpose or is there a reason, a good reason, for us to have it?

A. It's a good reason to have it.

Q. Why is -- why -- what good reason do you believe there is?

A. Well, the person might not deserve the death penalty.

Q. Okay.

191

A. But we still might need to administer justice.

Q. Okay. Fair enough. Now, the next question right after that is basically the same thing. What purpose, if any, do you believe the death penalty serves? And you didn't answer that for us. And, again, I guess the same question: What do you believe -- what -- why should we have the death penalty?

A. Why should we have it? I think we should have it because it could serve as a possibility of a deterrent --

Q. Okay.

A. -- to crime. I just didn't want to get into answering all that. Some of it I didn't know how to answer it.

Q. Sure.

A. If you don't know how to answer it, maybe I'm not legal-minded enough to give all of the things in the terms that it need to be delivered in. See, it would take me more time to do that.

Q. Sure. I understand.

A. Uh-huh.

Q. And I'm not trying to -- do you understand what my job is?

A. Uh-huh. Right.

Q. My job is to try to defend my client as best I

192

can.

A. Right.

Q. I'm not trying to pick on you, Mr. Murphy.

A. Exactly.

Q. Okay?

A. And I can see -- I look at this here as -- as dealing with a client.

Q. Uh-huh.

A. Because it may have something to do with someone's -- some family's personal -- it has got something to do with family, one way or the other.

Q. Okay. I'm not sure that I understand what you're saying.

A. You got somebody that's facing the negative part of this, and you've got somebody that's looking at it as a positive. If this is done and there's some things -- satisfaction on this, it's a win/lose thing for someone, for this party, it's a loss for the other party. So that's what this is.

Q. Okay.

A. That's what we call it. But, see, if you face the facts of the situation, you got to call it the way it is.

Q. Okay. Fair enough. Let me -- let me go on and finish up this page 5 because there's a very important

193

question that we asked you right at the bottom of that page.

A. One reason I didn't fill some of this thing in, I thought you would probably just throw it in the trash anyway.

Q. Well, we don't do that. We read them.

A. I see.

Q. See that last question, the State -- the law in the State of Texas is voluntary intoxication does not constitute a defense to the commission of a crime. And it asks: Do you agree with this law? And -- and you didn't give us an answer on that. Do you agree with that law or not, Mr. Murphy?

A. Volunteer law of intoxication, does that constitute a crime. If you intoxicated, it's a crime, in public.

Q. I'm sorry?

A. Public intoxication is a crime.

Q. I understand that, but that's -- that's not what the question is asking us about. See, what -- what -- what this question is asking us, Mr. Murphy, is it's saying to you --

A. Do I agree with it?

Q. Okay. Do you agree with it?

A. Yeah.

194

Q. Okay. Fair enough. That's all I'm trying to find out. What I'm not sure about is: Do you agree with me that voluntary intoxication is not a defense or do you agree with me that public intoxication is against the law?

A. Public intoxication is against the law.

Q. Yes, sir.

A. And voluntary intoxication is not a defense.

Q. Okay. To anything?

A. No.

Q. Right?

A. Huh-uh.

Q. Okay.

A. No.

Q. All right. Now, if you would just flip to page -- one time to the very top of page 6, and we go on with that theme and say: The law in Texas further provides that evidence of intoxication may be considered in mitigation of punishment. Do you agree with this law? And you answered that no. Do you feel like you understood what we were asking you there, Mr. Murphy?

A. No. Do I agree with this law about being intoxicated? Well, that's the law.

Q. Yes, sir, that's the law. And you indicated to us that you don't agree with that law; is that fair to

195

say?

A. No, that ain't fair to say.

Q. Okay.

A. It's fair to say that I was just tired and I needed to get up and get out that day.

Q. Okay. You tell us over on page 7 that you believe police officers are more likely to tell the truth than the average person. Can you tell us why it is you feel that way?

A. Why?

Q. Yes, sir.

A. Well, they took an oath.

Q. Okay. You believe if --

A. I believe that on an eighty-twenty, I believe that they would probably tell you the facts quicker than the average citizen.

Q. Do you believe that if they were to testify in court that that would be something that you would always believe whatever it was they were testifying about?

A. I would believe it to a degree.

Q. Okay. Explain that to me a little bit.

A. Well, see, they would have to have that to mitigate the circumstances there, to -- to see, you know, I'd have to hear -- I'd have to hear what he had to say about it, whatever that is we is looking at.

196

Q. So you're not going to automatically believe --

A. Oh, no. No. We don't get no S&H Green Stamps. No. No.

Q. Okay. All right.

A. Huh-uh. See, this is somebody's life.

Q. Okay. Just want to make sure.

A. No. No. Huh-uh. We don't give nobody no automatics, no.

Q. All right. Now, one other thing and then I'm going to go ahead and start talking to you about some of these other issues. But, if you would, turn over to page 8 for me, please, Mr. Murphy.

A. Okay.

Q. Down nearly to the bottom but not that last one, the next to the last, you see the one that talks about genetics and circumstances of birth?

A. On the next to the last one?

Q. Yeah, from the bottom.

A. Okay. What about it?

Q. Well, I'm not sure I understand your answer to it. What it asks is, is that some people feel that genetics, circumstances of birth, upbringing, and environment should be considered when determining the proper punishment of someone convicted of a crime. What do you think? And you say, no. And then there's a word

197

behind that, that I'm frankly -- I can't make out, and I'm not sure what that says. Can you tell me?

A. What has genetics got to do with the evidence and circumstances?

Q. Well, and to your way of thinking, it may have nothing to do with it. That's why -- that's why we're asking.

A. No.

Q. You don't feel like any of these things, genetics, circumstances of birth --

A. No.

Q. -- upbringing, or environment have anything to do with -- with assessing a proper punishment; is that fair to say?

A. That's what I would say.

Q. Okay. All right. Well, I thought that's what I understood --

A. Uh-huh.

Q. -- but I wanted to make sure. And we'll talk about that again probably some more in just a minute. But I want to switch over at this point, Mr. Murphy, to the actual trial of the case and make sure that we're all on the same page with that. You understand that Mr. Broadnax is charged with capital murder, right?

A. Right.

198

Q. Have you seen the indictment? There's an indictment up there somewhere.

A. This right here?

Q. Have you read that?

A. Yeah, I looked through it.

Q. Okay. You understand that that's what the State of Texas has got to prove beyond a reasonable doubt?

A. Right.

Q. If they don't, then Mr. Broadnax is entitled to a guilty -- to a verdict of not guilty, or guilty of some other offense if the State has proven some other offense.

A. Right.

Q. But not guilty of capital murder. Does that make sense to you?

A. Yes, sir.

Q. And if they do prove what they have put in that indictment beyond a reasonable doubt, then the State's entitled to a verdict of guilty of capital murder, right?

A. Right.

Q. Now, you've read what it is they have to prove. Take -- take another look at it, if you would, please, Mr. Murphy.

A. What particular?

Q. You see what they have to prove? Starting with,

199

did unlawfully then and there probably is what it says.

A. This is not the one I had.

THE COURT: Yeah. Yeah, that's the one he's looking for, yeah.

A. This is the one I had. Now, what -- what part of it?

Q. (BY MR. PARKS) Well, there's some formal parts that I'm not interested in, but the part that says, begins that on or about a certain day in Dallas County, Texas.

A. Let's see now. I don't see that.

THE BAILIFF: This is the indictment right here.

THE COURT: Oh, the indictment? Is that what you're looking for?

THE BAILIFF: This right here.

THE COURT: Oh, I'm sorry.

Q. (BY MR. PARKS) See what it is the State has to prove?

A. Dallas County, State of Texas, July 2008.

Q. Mr. Murphy, why don't you go ahead and read it out loud.

A. What -- what part of it are you looking at? Publish -- Pine Hurst Village -- something --

Q. Look down there where the date is, basically

200

where it says, on or about a certain date in Dallas County, Texas.

A. On or about the 19th day of June AD 2008, Dallas County, State of Texas, state -- and did unlawfully -- shooting in the -- okay. What about it?

Q. If the State of Texas proves that to you beyond a reasonable doubt, what do you think ought to happen to a person that would do what that indictment says?

A. If the State proves that, are you talking about these three things right here, right?

Q. No. I'm just talking about if they prove that, what do you think ought to happen to a guy like that?

A. Well, I think these three things apply.

Q. Okay. You think he thought to be found guilty?

A. Yeah. You need to find -- you need to find everything to be exactly right.

Q. Okay. And after you find him guilty, you go into the punishment phase?

A. Right.

Q. And these three questions apply, right?

A. Right.

Q. Okay. You understand that the State of Texas has the burden of proof?

A. Right.

Q. That Mr. Broadnax is to be presumed to be

201

innocent?

A. Right.

Q. Can you do that?

A. Yes.

Q. Okay. And that they have to prove everything to you beyond a reasonable doubt?

A. They got to.

Q. You understand all that?

A. They got to.

Q. All right.

A. That's why I didn't answer some of these things in this -- this other.

Q. Okay.

A. Because that's a -- why should I answer that? I'm -- all of it's got to be done without a shadow of a doubt.

Q. Okay.

A. What do I need this for? I need that. That's what I'm going to be -- have to look at that.

Q. Okay. I'm not -- you mean -- you're referring to your questionnaire?

A. This questionnaire.

Q. Okay.

A. That's a good thing, I believe. I think it's a good thing. This is the first time I ever been mailed

202

out or come down and had to fill out one of these things. And I said, man, I've got to go back to school to learn how to be a juror. I thought this thing is supposed to be set up and based like this, that we get and establish what it is and the way it is and the facts about it and we make our decision based on without a shadow of a doubt.

Q. Well, let me ask you about that. Basically what the law says -- beyond a shadow of a doubt is a phrase that we hear on television, Mr. Murphy, but the law says beyond a reasonable doubt. Do you see any difference between beyond a reasonable doubt and beyond a shadow of a doubt?

A. It all means the same to me.

Q. Okay. And that would be what?

A. That we got to know for sure that what he is accused of --

Q. Okay.

A. -- I got to prove it without any doubt, any -- any -- any doubt.

Q. Would you say that that means beyond all possible doubt?

A. To me, that would be.

Q. Okay.

A. That's the way I would -- I wouldn't want to do

203

it unless it was -- all the facts was there.

Q. Okay. Now --

A. You could have the facts, but if you didn't prove it to me, no.

Q. Then not guilty is what's coming out of your mouth, right?

A. That's what you're going to get. That's what you're going to get from me. If you didn't prove it to me, you see, all of this here, this some good stuff, but we still got to prove that it happened.

Q. Sure.

A. That's just the way it is --

Q. Okay.

A. -- to the -- to the one sitting there.

Q. Now, I want you to assume for me, Mr. Murphy, and I want you to understand that we're not conceding just because we talk about these issues.

A. Huh-uh.

Q. We're not conceding; you understand that?

A. No. That's what I just told you. That's a good thing.

Q. Sure.

A. But we got to know the facts.

Q. I understand. Now --

A. We can't have any doubt.

204

Q. I understand. I want you to assume for me, okay, you haven't heard the facts --

A. No.

Q. -- you don't know whether he's --

A. I don't know.

Q. -- guilty or not guilty.

A. I don't even know.

Q. But I want you to assume for the purposes of this discussion, okay, that you have been selected in a capital murder case. It doesn't mean this case.

A. Right.

Q. But just assume that you've been selected in a capital murder case. The State's seeking the death penalty.

A. Right.

Q. And they have proven the case to you to the standard that you require.

A. Right.

Q. And you and 11 other people have voted that the defendant is guilty.

A. Right.

Q. And you now move into the punishment phase where you have to consider these questions.

A. Right.

Q. Okay?

205

A. Uh-huh.

Q. So put yourself there in your mind. This first question asks you do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing danger to society or threat to society.

Now, I want to make sure that you understand that in the context of that question, Mr. Murphy, you would have already decided that the person that you're answering that question about is an intentional murderer. He killed someone else because that's what he wanted to do. Okay? That's what intentional means in our law.

A. Uh-huh.

Q. Not an accident, it's not self-defense, the person's not insane, not acting under duress of any kind. Okay? He decided that he wanted to kill that person, had no justification or excuse in the law, did it anyway. Okay? And did it in order to take his property. Okay? So that would have to be true by the evidence before you would ever get to that first question, right?

A. Right. Uh-huh.

Q. Okay. Now, the law says that a juror can take

206

the facts of the case alone and answer that first question yes if they believe that the facts of the case alone answers that question yes; that is, if they believe that a person who is an intentional killer and killed someone during the course of the commission of a robbery, that that's just the kind and type of person that the facts alone would always tell them that this is a person who would probably be a future danger. Other people don't feel that way. You know, all people have different opinions and attitudes about these issues. How do you feel about that? Do you think that an intentional murderer would always probably commit acts of violence in the future?

A. No.

Q. Okay. Is that something that the State would have to prove --

A. They'd have to prove it to me.

Q. -- to you beyond a reasonable doubt?

A. That's right.

Q. So just because you found somebody -- and let me be honest with you, Mr. Murphy. I've had a hard time figuring out where you're coming from. Okay? It's not a criticism of you.

A. It doesn't matter if it is.

Q. I understand. I've had a hard time --

207

A. You entitled.

Q. See, I can't decide whether you're a person -- based on what you've told us when you first started talking to us, I can't decide if you're a person who's going to automatically answer this question yes or if my client's got a chance with you if you find him guilty.

A. Well, you see, what you've got to do is -- is have the evidence.

Q. Uh-huh.

A. If you've got the evidence, and if the other people, the other party doesn't prove what he's saying, that's who -- that's who -- that's who's going to have to save him, you see, and the other guy got to mess up --

Q. See --

A. -- and then put it on the table.

Q. Do you understand that we don't have to prove that answer is no?

A. No.

Q. The answer is no until the State and unless the State can prove that it's yes.

A. Right.

Q. And so what I'm now hearing you say, Mr. Murphy, is that if you're on the jury and if you -- if you find Mr. Broadnax guilty of capital murder, even if you find that he intentionally killed in the course of a robbery,

208

that you can answer that question no and assess the life penalty if the State doesn't prove to you he's going to be a future danger in the penitentiary; is that what you're saying to me?

A. You'd have to prove that he going to be a danger.

Q. Okay. And if they don't?

A. Well, then, we can't just do something. In other words, you don't -- you don't get no S&H Green Stamps. They don't do that anymore.

Q. And, you know, I guess sort of, Mr. Murphy, you know a lot of times, I'm worried that people think that if they don't give the death penalty, the defendant just gets to go home.

A. No.

Q. You understand that the life penalty is a substantial penalty, don't you?

A. Well, I -- I understand that. And to get to go home, to see what -- you have to have a description of what -- which home is he going to.

Q. Well, the home he's going to is the one where -- that he'll die in.

A. Okay. Well, that's home.

Q. And that's the home that they've got to prove that he would be a danger in.

**209**

A. You know, if you make -- if you make your choice.

Q. Okay. I think after all of this time, I'm beginning to understand more of what you're -- what you're telling us, Mr. Murphy, and I appreciate that.

A. See, I mean, I believe that a man makes his own choice.

Q. Okay.

A. And once you make your choice, then you got to present me the evidence --

Q. Right.

A. -- that that is your choice and that's your decision.

Q. Okay.

A. Then I'll have to go with it. It may not be what you anticipated or wanted, but I didn't make the choice. You did.

Q. Okay. So here's the thing. Let's say that you're in this jury and you're now contemplating the right answer to Special Issue Number 1. You know that the law presumes that the answer is no. And you know that the law requires the State to prove that he would be a future danger before you could answer it yes. And you're putting them to their -- to their burden, right?

A. Uh-huh.

**210**

Q. Would it matter to you if you heard that the defendant had a long history of violent offenses? Would that tell you something about whether he'd be a danger in the future?

A. Well, see, I couldn't make my decision based on nothing but the case that we working on. I can't do -- we can't -- we can't retry or try him for but the one case.

Q. Well, let me make sure you understand how this process works. Once you get into the punishment phase --

A. I'm -- I'm -- I'm just there for what -- for this offense. I'm not there to look back at his past history.

Q. Okay. That's true in the first phase of the trial --

A. Right.

Q. -- Mr. Murphy, you know, whether he's guilty or not guilty.

A. Right. We talking about that section right there.

Q. Okay. You don't think --

A. The first phase.

Q. Okay. Do you -- here's what I'm trying to understand. Do you believe that you couldn't hear about such things or are you -- are you saying that such things

**211**

wouldn't matter to you?

A. It all depends, but I figure that we need to hear about all of it.

Q. And you can?

A. Uh-huh.

Q. I mean, once you get to the punishment phase, the State can put on evidence not only that he committed this offense, but if he committed other offenses in the past, they could tell you about those, whether or not he was ever found guilty. I mean, if he was convicted of other offenses, they could show you that.

A. Right.

Q. If he was just accused of other things --

A. Right.

Q. -- that had never gone to trial --

A. Right.

Q. -- they could show you that.

A. Uh-huh.

Q. So I guess what I'm asking you is this, is that if you heard evidence that a particular person had a history of violence in the past --

A. Right.

Q. -- would that be something that you believe would be helpful in your determining whether they would probably commit acts of violence in the future?

**212**

A. Well, I think we need to take care of this one first. Then once we take care of that, then we'll go to that. What we got him on trial for, we want that, want to finish with that first.

Q. Okay.

A. Then if you want to retry him for the other things, that would be, you know --

Q. Well, no, that's -- that's not at all what I'm talking about, Mr. Murphy. I'm talking about answering Special Issue Number 1.

A. See, if I'm on the jury, well, I'm here to hear what you're talking about right now, this, this.

Q. Yes, sir.

A. That's what I'm here for.

Q. That's exactly right at the guilt/innocence stage of the trial.

A. Of this right here.

Q. Okay.

A. And I just don't see any reason that we need to be concerned, because we need to be concerned with this.

Q. All right.

A. Because if --

MR. LOLLAR: Let the record show he's pointing out the indictment.

A. -- if -- yes.

213

THE COURT: Let the record show Mr. Murphy is talking about the indictment.

A. In other words, this is what we're working on. This is what we're working on. Now, if you want me to go with that thing about the alleged things happened back here, well, why have we got all of it in this? And why don't we -- just -- let's just get this.

Q. (BY MR. PARKS) Well, I understand and I'm trying to -- you're right, Mr. Murphy, that at the guilt/innocence stage of the trial, that document is all that's important.

A. That's all. That's all I want to be concerned with.

Q. I understand.

A. That's the reason I didn't fill all this in. What has that got to do with what you want me on to do now?

Q. Okay.

MR. PARKS: Judge, can we take a little bit of a recess, please?

THE COURT: Yeah. Yeah, let's take about a five-minute recess.

(Venireperson Murphy exits courtroom.)

(Recess, 3:26-3:27.)

(Open court, defendant present.)

214

THE COURT: Are you finished? Do you have any other questions you want to ask, Mr. Parks?

MR. PARKS: No, I have no further questions.

THE COURT: Okay. Then does the State have a challenge for cause?

MS. HANDLEY: We do not.

THE COURT: Okay.

MR. PARKS: Defense would challenge the juror for cause, Your Honor. We believe that based upon his questionnaire and his answers, both to Mr. Hikel and to myself, that he does not understand the process and would not be a fair and impartial juror.

THE COURT: Yeah. Yeah. And I will grant the Defense's challenge for cause. Okay.

Well, ladies and gentlemen.

THE BAILIFF: Do you want to bring him back in?

MS. HANDLEY: Do we need to bring him back in?

THE COURT: Yeah. I'll bring him back in, just to tell him thank you.

MS. HANDLEY: But we are done for the day?

THE COURT: We are done. At least as far as I'm concerned, we are.

Yes, bring him back in, please.

215

(Venireperson Murphy enters courtroom.)

THE COURT: Mr. Murphy, come on in here, please, sir, and just go ahead and have a seat there.

Thank you, ladies and gentlemen, be seated, please.

Mr. Murphy, I wanted to bring you back and thank you for your time this afternoon. We appreciate the time and effort you've made to be with us this afternoon and answering all these questions. I'm going to excuse you from further jury service in this particular case.

VENIREPERSON MURPHY: Okay.

THE COURT: So you're free to go and don't have to worry about.

VENIREPERSON MURPHY: All right.

THE COURT: I knew that would make you sad.

VENIREPERSON MURPHY: Yes, sir.

THE COURT: Thank you, Mr. Murphy.

MS. HANDLEY: Thank you for your time, Mr. Murphy.

THE COURT: We're off the record.

(End of proceedings, 3:29 p.m.)

216

CERTIFICATE

THE STATE OF TEXAS   )

COUNTY OF DALLAS    )

I, Heather H. Vezina, Deputy Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE 17th DAY OF December 2009.

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

217

DISCLOSURE

Note: Supreme Court Rule Adopted and Promulgated in Conformity with Chapter 52 of the Government Code, V.T.C.A.

Please be advised that pursuant to Supreme Court Rule IV, B.4. With regards to disclosure, I, to the best of my knowledge, have no existing or past financial, business, professional, family or social relationships with any of the parties or their attorneys which might reasonably create an appearance of partiality, except as follows:



_____

_____

_____

_____

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

-- | also | 218

## –

-- (76:7) (203:24)

------------------------ (1:11) (1:12)

## A

aberrant (84:3)
aberration (81:14)
abetted (164:3) (164:16)
ability (17:11) (84:23) (85:10) (174:14)
able (13:1) (14:2) (16:7) (23:20) (31:15) (40:12) (56:24) (59:7) (74:6) (75:14) (75:19) (77:13) (80:1) (80:11) (87:14) (87:16) (110:23) (179:23) (190:11)
able-bodied (21:9)
above (126:13) (216:7)
above-entitled (1:19)
above-styled (216:11)
absolute (142:5)
absolutely (43:14)
abused (115:1) (166:16)
accepted (3:7)
accident (129:3) (155:20) (205:16)
accidentally (17:22)
accompany (136:25)
according (53:23)
accountability (35:11)
accounts (91:1) (91:5)
accusation (126:10) (127:8)
accused (139:17) (139:19) (139:24) (140:21) (142:4) (143:17) (155:1) (202:17) (211:13)
ace (47:5) (47:6) (47:8)
across (63:3)
act (28:24) (29:4) (29:8) (29:14) (31:15) (38:20) (53:8) (53:10) (53:16) (56:9) (56:10) (60:6) (60:14) (62:1) (62:7) (63:17) (69:12)
acted (55:5) (55:11) (55:12)
acting (54:25) (205:17)
action (40:17) (54:19) (81:14)
actions (38:11) (38:15) (52:9) (60:25) (61:11) (61:15) (68:17) (68:25) (69:6)
active (34:19)
actively (34:8)
acts (27:15) (28:22) (28:23) (29:15) (31:4) (52:8) (52:21) (57:22) (57:24) (58:10) (65:11) (72:7) (76:2) (77:3) (79:4) (82:9) (82:14) (151:2) (153:24) (154:9) (205:5) (206:12) (211:25)
actual (9:20) (25:2) (34:5) (34:12) (197:22)
actually (6:21) (8:21) (17:15) (22:3) (25:16) (34:1) (34:7) (35:21) (36:10) (36:15) (49:15) (58:21) (77:25) (161:14)
addition (33:19) (48:23) (115:23)
additional (12:16) (28:1) (71:3) (71:4) (150:13)
address (50:24)
addressed (5:25) (93:6)
adjourned (4:13)
administer (88:19) (191:1)
administered (6:13) (93:11) (93:18) (122:16)
admit (18:3)
admonish (91:4)
adopted (217:2)
adult (80:3)
adults (114:10)
advised (217:5)
after (10:11) (20:19) (22:18) (25:10) (27:12) (53:5) (53:20) (85:11) (100:21) (101:6) (136:9) (149:7) (186:25) (187:1) (191:3) (200:17) (209:3)
afternoon (106:9) (106:10) (108:24) (112:11) (116:22) (118:7) (123:19) (124:20) (215:7) (215:9)
again (9:16) (12:2) (12:16) (20:22) (27:24) (28:2) (35:2) (36:4) (46:19) (55:6) (57:9) (60:25) (64:25) (69:7) (71:25) (72:11) (74:19) (74:22) (75:3) (84:14) (87:23) (90:19) (113:17) (118:7) (124:20) (129:5) (150:10) (161:12) (164:10) (164:11) (181:9) (189:25) (191:5) (197:20)
against (13:18) (15:7) (15:13) (43:8) (77:4) (98:16) (108:5) (140:1) (194:4) (194:6)
age (18:21) (79:22) (80:1) (80:4) (83:25) (85:5) (85:6) (85:8) (136:20) (169:1) (169:19) (170:4)
agent (186:21)

aggravated (70:17) (70:18) (137:6)
aggravating (18:17) (19:9) (19:11) (35:16) (36:16) (37:22) (38:6) (40:14) (136:22) (136:24) (137:8) (156:5) (163:6) (169:4) (169:21)
ago (5:14) (6:1) (46:6) (92:18) (93:5) (99:21) (100:9) (121:15)
agree (11:3) (11:4) (28:17) (30:11) (37:15) (63:12) (73:23) (81:25) (141:7) (153:2) (168:5) (171:23) (172:10) (193:11) (193:12) (193:23) (193:24) (194:2) (194:4) (194:19) (194:22) (194:25)
ahead (5:8) (83:15) (92:2) (106:1) (116:24) (120:14) (120:15) (181:9) (181:12) (196:10) (199:21) (215:3)
aid (32:17)
aided (163:24) (164:16)
ain't (153:16) (195:2)
air (54:14) (54:23) (55:8) (55:13) (62:23)
airline (186:14)
airlines (186:15)
alcohol (37:21) (63:25) (80:10)
alex (9:22)
alexander (3:13) (4:5) (108:14) (108:17) (108:20) (108:21) (108:23) (108:25) (109:4) (109:9) (109:16) (109:20) (109:25) (111:8) (111:10) (111:13) (111:14) (111:16) (111:19) (111:22)
alive (22:17)
all (5:15) (6:6) (7:22) (8:4) (8:16) (9:7) (9:9) (9:17) (9:18) (9:24) (10:1) (10:3) (11:4) (12:2) (12:20) (13:12) (13:25) (14:21) (15:22) (15:23) (19:14) (24:6) (24:17) (25:17) (27:23) (30:18) (32:13) (32:21) (32:22) (34:17) (35:6) (36:3) (36:7) (36:13) (38:22) (39:5) (39:14) (41:25) (42:4) (44:3) (44:25) (47:10) (47:15) (47:17) (48:15) (53:25) (55:15) (57:9) (58:20) (59:7) (59:19) (60:18) (61:4) (61:19) (64:22) (67:17) (68:9) (68:12) (70:7) (71:15) (73:8) (73:13) (73:15) (78:14) (79:17) (80:8) (81:20) (82:22) (82:25) (83:8) (83:12) (84:15) (84:18) (85:10) (85:13) (86:4) (86:17) (89:1) (89:6) (89:15) (90:8) (90:17) (90:18) (91:9) (91:13) (91:17) (91:24) (93:14) (95:19) (96:2) (96:15) (97:8) (97:11) (100:6) (100:21) (103:11) (103:18) (103:19) (104:15) (104:19) (105:5) (105:9) (105:12) (105:15) (106:21) (107:10) (107:15) (108:1) (108:12) (108:17) (108:19) (112:7) (112:12) (113:7) (114:6) (114:25) (115:8) (115:12) (115:22) (116:10) (116:19) (117:7) (119:2) (119:15) (120:9) (120:23) (122:9) (122:10) (123:7) (123:20) (124:13) (126:1) (127:10) (127:14) (129:17) (129:20) (130:7) (130:9) (130:17) (130:20) (131:12) (131:14) (132:4) (132:6) (132:13) (132:24) (134:8) (135:13) (135:22) (135:24) (135:25) (136:2) (141:14) (142:2) (142:11) (142:13) (143:24) (145:15) (146:2) (146:16) (146:18) (147:15) (147:17) (148:8) (148:9) (149:10) (149:13) (150:17) (150:23) (151:20) (153:6) (154:20) (154:21) (157:23) (158:1) (158:11) (159:6) (160:5) (161:7) (161:14) (161:21) (162:2) (162:3) (162:19) (165:19) (165:23) (166:15) (166:19) (166:25) (167:1) (167:3) (167:4) (167:9) (168:5) (168:12) (168:24) (170:4) (171:19) (172:6) (172:12) (172:19) (178:9) (179:16) (179:23) (180:7) (180:9) (180:19) (180:20) (180:23) (181:3) (181:7) (181:11) (182:1) (182:4) (182:21) (183:1) (183:9) (184:25) (186:15) (187:21) (188:13) (189:2) (189:13) (191:13) (191:17) (194:1) (194:15) (196:4) (196:9) (197:16) (197:22) (201:8) (201:10) (201:15) (202:14) (202:21) (203:1) (203:9) (206:9) (209:3) (211:2) (211:3) (212:8) (212:21) (213:6) (213:10) (213:12) (213:15) (215:9) (215:15) (216:8) (216:11)
alleged (16:10) (142:20) (150:7) (213:5)
alleging (173:3)
allows (56:1)
all-time (187:23)
almost (118:14) (167:18)
alone (15:3) (31:15) (136:12) (155:13) (206:1) (206:3) (206:7)
along (90:15) (96:17) (127:14)
alphabetical (4:1)
already (10:20) (13:3) (14:14) (25:7) (26:6) (44:19) (71:17) (71:21) (76:5) (83:21) (102:15) (103:1) (133:15) (156:24) (179:12) (205:10)
also (6:7) (6:24) (8:13) (14:17) (15:17) (18:14) (19:9) (20:6) (20:14) (26:2) (26:20) (27:8) (28:23) (30:3) (30:10) (32:4) (32:16) (37:24) (42:6) (64:18) (76:13) (85:5) (87:7) (89:20) (93:1) (93:24) (94:3) (127:15) (131:21) (138:5) (139:20) (143:15)

alternative                                                      attempting                    219

alternative (49:7)
always (13:20)(14:15)(17:20)(21:2)(23:15)(24:7)(24:8)
(24:9)(39:14)(44:21)(60:9)(72:23)(75:7)(75:11)(157:7)
(175:22)(195:18)(206:7)(206:12)
ambulance (53:13)
amendment (14:23)(142:4)(145:17)
american (47:24)
among (165:16)
ample (88:24)

**–**

-and- (2:4)(2:5)(2:15)(2:19)

**A**

andrea (2:3)(8:5)(9:19)(96:10)(123:14)
andrew (3:21)(4:10)(120:20)(124:16)
ann (109:4)(109:16)
annette (112:22)(116:16)
another (8:17)(10:22)(17:21)(19:1)(21:25)(26:24)
(29:1)(32:20)(48:22)(48:23)(57:12)(87:2)(98:17)
(104:23)(142:2)(161:16)(183:8)(184:7)(187:17)(198:22)
another's (48:18)
ansel (3:11)(4:11)(106:5)(106:12)(106:13)
a-n-s-e-l (106:13)
answer (11:8)(25:20)(25:21)(27:5)(27:12)(28:2)(30:23)
(31:16)(32:10)(32:14)(34:11)(34:14)(34:19)(42:20)
(46:20)(59:7)(59:17)(59:18)(60:21)(65:19)(66:9)(66:10)
(66:23)(69:17)(72:2)(72:11)(72:14)(73:9)(74:4)(74:20)
(79:19)(82:14)(101:4)(101:7)(119:18)(119:19)(126:17)
(126:18)(128:11)(138:6)(138:12)(139:12)(139:13)
(148:18)(148:19)(152:18)(154:16)(156:25)(157:22)
(160:25)(161:2)(161:8)(164:24)(165:11)(167:13)(167:14)
(168:8)(168:16)(169:20)(170:3)(175:1)(178:22)(183:11)
(184:23)(189:23)(190:2)(190:11)(191:5)(191:14)(191:16)
(193:12)(196:20)(201:11)(201:14)(206:1)(207:5)(207:17)
(207:19)(208:1)(209:20)(209:21)(209:23)
answered (59:6)(79:18)(138:14)(164:23)(167:16)
(188:22)(194:20)
answering (34:19)(82:11)(156:15)(191:13)(205:11)
(212:9)(215:9)
answers (5:17)(6:21)(7:20)(39:19)(46:20)(69:25)
(77:16)(78:6)(93:21)(94:6)(95:21)(95:24)(98:11)
(102:23)(122:4)(123:2)(189:21)(206:3)(214:10)
anticipate (87:6)(87:8)(89:10)
anticipated (33:20)(33:25)(34:1)(34:13)(80:19)
(161:16)(209:16)
any (10:18)(16:2)(17:10)(17:11)(17:18)(23:10)(23:19)
(24:2)(26:14)(28:4)(33:8)(34:2)(39:3)(40:15)(43:8)
(44:6)(44:25)(46:21)(49:22)(50:5)(60:3)(60:25)(66:25)
(67:10)(70:12)(70:14)(81:20)(83:20)(84:9)(84:14)
(84:15)(87:10)(90:21)(91:2)(91:5)(93:25)(98:15)(99:4)
(102:3)(103:12)(103:18)(107:6)(107:12)(108:5)(108:7)
(111:23)(112:1)(114:18)(114:23)(116:12)(117:19)
(118:20)(119:4)(124:25)(125:1)(125:4)(126:5)(126:6)
(126:9)(126:10)(126:25)(127:7)(127:8)(131:6)(132:23)
(133:24)(139:25)(140:21)(141:1)(142:19)(157:10)
(160:14)(162:18)(163:17)(170:22)(174:14)(180:6)(190:1)
(190:7)(191:4)(197:9)(202:11)(202:19)(202:20)(203:25)
(205:17)(212:19)(214:2)(216:15)(217:9)
anybody (26:23)(95:10)(140:22)
anymore (22:21)(208:10)
anyone (128:2)(131:5)
anything (7:18)(7:20)(7:21)(10:22)(11:6)(20:9)(20:17)
(20:22)(24:11)(28:13)(33:4)(33:7)(36:2)(41:2)(41:11)
(45:8)(66:23)(79:19)(87:13)(89:21)(90:6)(90:10)(90:25)
(91:1)(91:10)(95:7)(105:3)(114:11)(125:2)(125:5)
(125:6)(127:5)(133:24)(140:2)(140:14)(145:16)(153:3)
(170:14)(170:23)(174:18)(180:6)(194:9)(197:12)
anything's (50:17)(153:4)
anyway (5:19)(6:10)(6:22)(8:22)(54:24)(55:1)(55:17)
(87:5)(92:20)(93:24)(117:16)(122:1)(122:11)(123:2)
(188:10)(193:5)(205:20)
anywhere (52:17)
appear (88:18)(91:2)
appearance (217:10)
appearing (2:10)(2:24)
applicable (125:12)(128:19)

applied (126:12)(128:15)(139:9)
applies (7:16)(178:22)
apply (12:25)(13:16)(130:21)(130:23)(138:24)(177:23)
(177:24)(179:10)(200:13)(200:20)
appreciate (5:21)(45:2)(91:16)(103:25)(107:16)
(107:20)(119:6)(121:13)(151:12)(183:16)(209:5)(215:7)
appropriate (27:11)(36:10)(42:4)(42:22)(44:10)
(110:11)(114:6)(115:22)(167:20)
approximately (87:8)(129:20)
april (106:15)(110:2)(110:5)(113:19)(118:10)(119:21)
(125:20)
archives (90:4)(90:24)
are (6:21)(7:9)(7:10)(8:3)(9:4)(9:5)(9:16)(10:7)
(10:9)(10:16)(12:11)(12:24)(13:7)(13:11)(14:2)(14:6)
(15:23)(16:3)(21:4)(21:22)(26:18)(28:3)(28:7)(28:23)
(31:3)(38:12)(38:15)(38:16)(40:12)(44:21)(45:17)
(45:25)(46:19)(47:6)(55:22)(57:19)(58:6)(60:5)(65:22)
(65:25)(66:11)(66:23)(68:4)(68:20)(68:24)(69:22)
(70:12)(70:23)(71:17)(71:21)(78:24)(79:7)(84:12)(89:4)
(92:1)(92:10)(94:1)(94:7)(94:25)(95:16)(96:16)(96:18)
(100:19)(105:23)(106:20)(106:23)(107:24)(108:24)
(109:12)(109:20)(111:6)(112:11)(116:22)(120:12)(123:6)
(123:10)(123:21)(124:2)(124:9)(124:22)(125:7)(125:14)
(127:19)(127:24)(128:8)(132:8)(132:9)(133:6)(133:10)
(133:14)(133:15)(133:21)(133:23)(137:1)(137:8)(138:14)
(140:24)(141:4)(142:15)(145:25)(146:3)(147:25)(148:3)
(152:5)(152:12)(161:22)(168:18)(169:16)(173:3)(176:6)
(182:14)(183:11)(186:6)(189:6)(195:7)(199:23)(200:9)
(210:25)(214:1)(214:22)(214:23)(214:24)
aren't (30:12)(85:2)(87:1)(87:3)(96:22)
argument (48:17)
arise (56:20)
arms (22:24)
around (22:5)(47:10)(53:1)(53:5)(53:6)(56:13)(75:13)
(77:5)(99:1)(112:20)(162:7)
arrange (33:17)
arrive (83:23)
arrives (25:18)
artery (53:12)
article (101:19)
articles (90:22)(91:2)(91:5)
articulate (29:3)
ask (7:14)(7:24)(7:25)(35:14)(35:15)(36:23)(42:1)
(59:19)(64:14)(67:22)(68:9)(71:13)(75:3)(77:23)(81:11)
(83:1)(87:11)(88:1)(90:18)(91:6)(95:12)(97:22)(98:13)
(106:11)(117:18)(125:1)(125:4)(125:7)(125:10)(125:13)
(138:8)(140:4)(151:1)(160:11)(171:8)(173:11)(175:22)
(176:3)(179:17)(189:11)(202:8)(214:2)
asked (6:3)(6:25)(34:4)(37:13)(38:8)(42:2)(43:3)
(43:4)(43:6)(43:17)(48:5)(48:16)(48:19)(57:18)(58:25)
(60:2)(60:19)(74:23)(79:21)(92:20)(93:25)(110:6)
(113:2)(113:23)(117:8)(118:14)(123:5)(126:4)(126:12)
(134:1)(134:5)(134:17)(147:20)(175:24)(183:10)(185:10)
(187:25)(188:19)(189:13)(189:25)(193:1)
asking (5:16)(27:18)(31:19)(37:12)(62:17)(76:9)
(77:11)(79:7)(122:3)(125:3)(153:25)(154:3)(154:5)
(154:13)(185:12)(187:21)(188:13)(193:20)(193:21)
(194:21)(197:7)(211:19)
asks (126:1)(128:1)(131:5)(168:9)(171:11)(174:2)
(177:12)(190:16)(193:11)(196:21)(205:3)
aspects (7:8)(94:23)(95:15)
assault (29:2)(137:6)
assess (23:18)(147:1)(147:2)(183:13)(184:17)(208:1)
assessed (107:7)(110:13)(110:24)(111:24)(118:20)
(119:19)(147:10)(184:15)
assessing (79:24)(197:13)
assessment (184:20)
assist (6:3)(32:18)(92:21)(117:9)(180:19)
assistant (2:7)(2:21)(8:11)(8:13)(9:19)(96:16)
(109:13)(113:6)(117:17)(123:21)
assisted (164:1)(164:16)
assisting (92:24)(105:17)(109:6)(112:25)(120:25)
assume (149:3)(160:24)(203:15)(204:1)(204:8)(204:12)
assuming (88:21)(151:20)
assumption (27:3)
assure (53:3)
attempting (25:3)

attention                                                        blow                                    220

**attention** (20:5)(41:7)(56:15)(66:12)
**attitudes** (206:10)
**attorney** (2:13)(2:17)(7:24)(8:14)(8:18)(9:20)(18:14)
(65:10)(113:6)(117:18)
**attorneys** (2:7)(5:16)(6:25)(7:10)(8:2)(8:12)(43:8)
(65:5)(83:2)(86:9)(86:25)(93:25)(94:25)(96:4)(96:16)
(96:18)(96:21)(97:8)(105:23)(109:12)(113:5)(117:19)
(122:3)(123:6)(123:10)(123:21)(124:9)(217:9)
**attorney's** (2:7)
**august** (87:7)(88:6)(88:18)(89:13)(91:7)
**automatic** (17:18)
**automatically** (10:10)(11:7)(11:8)(26:25)(31:25)
(152:7)(207:5)
**automatically believe** (196:1)
**automatics** (196:8)
**autopsy** (142:19)
**available** (48:21)(60:4)
**average** (195:8)(195:16)
**avoid** (78:25)(79:5)
**aware** (55:1)(55:13)(56:11)(60:24)(61:11)(61:15)
(61:22)(61:24)(62:6)(62:19)(63:3)(63:5)(63:8)(151:5)
**awareness** (62:1)
**away** (53:3)(54:21)(79:24)(80:12)(81:1)(81:3)(81:7)
(135:9)(156:25)(162:22)(174:3)(174:7)(174:9)(174:15)
(182:17)

### B

**baby** (166:18)
**back** (10:12)(15:9)(22:22)(25:13)(33:9)(35:6)(36:4)
(36:13)(36:23)(57:9)(62:21)(64:25)(71:5)(72:1)(77:20)
(79:24)(82:3)(83:3)(85:23)(85:25)(88:9)(88:10)(89:10)
(90:3)(90:19)(90:24)(105:5)(106:14)(110:2)(113:19)
(118:9)(119:21)(125:20)(131:16)(134:12)(134:21)
(135:10)(135:17)(136:10)(137:16)(147:14)(148:20)
(148:23)(165:2)(167:10)(167:12)(174:21)(180:21)
(181:13)(182:22)(188:15)(202:2)(210:12)(213:5)(214:16)
(214:18)(214:20)(214:25)(215:6)
**background** (31:1)(36:6)(38:10)(68:16)(69:5)(166:16)
(166:20)(166:24)(167:22)(169:2)(170:3)(170:15)
**bad** (17:23)(18:3)(18:5)(18:8)(21:15)(21:24)(22:14)
(101:21)
**bailiff** (83:2)(91:24)(105:9)(108:19)(109:2)(112:7)
(116:19)(120:4)(120:9)(120:11)(180:19)(181:7)(199:12)
(199:16)(214:16)
**balled** (29:6)
**bank** (17:20)
**barber** (186:3)(186:4)(186:5)(186:24)(187:1)(187:24)
(188:14)
**base** (11:5)(23:24)(31:13)(32:8)(39:17)(39:19)(40:13)
(44:13)(85:11)
**based** (13:7)(23:15)(24:7)(24:22)(25:20)(31:14)(31:16)
(38:15)(38:16)(42:17)(59:14)(80:12)(90:13)(102:10)
(102:25)(144:9)(151:25)(155:12)(156:16)(157:22)(164:9)
(172:7)(174:19)(189:19)(202:4)(202:6)(207:3)(210:5)
(214:9)
**basically** (12:20)(35:4)(43:13)(100:18)(139:23)
(161:20)(184:3)(191:3)(199:25)(202:8)
**basing** (11:10)(41:4)
**basis** (188:6)
**bathroom** (45:8)(180:18)
**beat** (153:14)
**because** (10:11)(10:20)(10:24)(11:9)(13:23)(14:20)
(15:12)(16:16)(20:7)(21:3)(21:19)(21:21)(22:14)(26:11)
(27:1)(31:23)(36:2)(39:23)(44:1)(48:6)(54:5)(56:10)
(56:11)(57:20)(57:23)(57:25)(65:18)(68:21)(70:12)
(74:7)(76:24)(82:8)(88:23)(90:10)(94:4)(95:7)(98:23)
(98:24)(99:11)(101:18)(101:22)(102:6)(102:21)(114:7)
(114:14)(114:24)(127:1)(135:22)(136:10)(139:3)(140:13)
(141:4)(141:22)(144:12)(148:3)(153:13)(153:20)(154:23)
(156:4)(158:23)(160:8)(161:3)(161:19)(162:13)(163:3)
(163:23)(164:6)(165:10)(166:4)(166:22)(168:4)(168:17)
(168:21)(171:6)(171:17)(173:10)(174:9)(174:20)(176:5)
(176:16)(177:5)(183:2)(189:13)(191:9)(192:9)(192:25)
(201:14)(203:17)(205:12)(206:20)(212:20)(212:22)
**become** (41:14)
**been** (6:20)(10:4)(11:15)(12:13)(13:10)(13:13)(22:3)
(22:5)(22:6)(22:7)(22:9)(22:13)(29:16)(56:11)(58:17)

(59:23)(61:19)(65:17)(70:2)(70:3)(70:4)(72:15)(80:23)
(80:24)(81:10)(84:25)(92:18)(93:5)(93:20)(94:4)(99:11)
(99:18)(99:24)(104:14)(121:15)(126:5)(126:20)(128:3)
(129:22)(129:24)(130:15)(132:9)(132:11)(132:15)
(132:21)(146:4)(178:11)(178:20)(182:11)(185:2)(187:19)
(189:18)(201:25)(204:9)(204:12)
**before** (1:21)(11:14)(17:13)(19:6)(25:12)(30:4)(38:5)
(41:19)(49:13)(49:14)(53:13)(57:6)(74:8)(74:9)(74:16)
(74:18)(82:5)(99:12)(99:19)(125:10)(126:20)(127:1)
(133:17)(136:17)(137:17)(137:19)(141:21)(146:4)
(155:23)(165:10)(167:24)(175:1)(179:12)(179:16)
(179:24)(180:1)(182:24)(183:13)(185:2)(186:24)(187:2)
(187:3)(187:4)(205:22)(209:23)
**beg** (42:10)
**begin** (141:21)
**beginning** (209:4)
**begins** (150:17)(199:9)
**behalf** (2:10)(2:24)
**behavior** (81:15)(82:5)(84:1)(84:3)(154:19)
**behind** (38:21)(61:18)(61:21)(197:1)
**being** (5:19)(10:23)(15:5)(40:16)(54:14)(67:5)(67:8)
(79:13)(87:14)(87:16)(91:14)(92:13)(97:23)(103:17)
(103:21)(107:17)(111:17)(115:16)(119:6)(119:19)
(121:14)(134:9)(136:16)(138:22)(142:21)(143:17)
(149:11)(185:6)(189:17)(194:22)
**belief** (59:2)(99:5)(188:21)
**beliefs** (98:16)
**believe** (10:3)(11:13)(11:16)(14:12)(15:17)(27:19)
(36:10)(37:15)(38:11)(42:13)(42:19)(51:4)(57:22)(58:7)
(59:1)(60:3)(63:18)(64:19)(68:2)(68:3)(68:5)(73:21)
(73:24)(75:16)(75:18)(78:4)(79:2)(79:7)(79:13)(82:6)
(82:7)(83:10)(85:12)(85:15)(97:12)(100:20)(101:2)
(105:4)(106:15)(110:2)(110:11)(113:25)(114:5)(114:12)
(114:18)(115:24)(118:9)(118:17)(124:13)(125:20)
(134:25)(135:25)(137:25)(138:5)(138:10)(138:19)
(138:22)(141:14)(141:16)(141:18)(145:22)(149:14)
(160:14)(179:4)(180:11)(182:2)(183:20)(184:19)(188:19)
(190:1)(190:7)(190:17)(190:21)(191:4)(191:6)(195:7)
(195:13)(195:14)(195:17)(195:19)(195:20)(201:24)
(206:2)(206:3)(209:6)(210:24)(211:23)(214:9)
**believes** (115:21)
**below** (20:9)(20:17)(57:18)(58:25)(60:2)
**besides** (130:20)
**best** (29:17)(29:19)(48:17)(74:4)(81:13)(106:24)
(110:7)(113:24)(118:15)(151:22)(158:2)(159:10)(168:13)
(191:25)(217:6)
**bet** (111:15)(184:23)
**better** (22:11)(132:17)(148:10)
**between** (23:14)(28:13)(28:20)(71:5)(71:6)(91:7)
(153:1)(165:15)(188:24)(202:12)
**beyond** (14:1)(15:11)(24:14)(24:15)(24:17)(24:24)
(27:13)(28:6)(28:10)(49:22)(50:5)(62:11)(72:6)(72:11)
(72:20)(75:22)(78:21)(79:2)(138:3)(139:3)(139:6)
(143:16)(143:21)(143:24)(143:25)(145:3)(145:5)(145:10)
(145:18)(148:19)(148:22)(150:5)(150:16)(150:19)
(150:24)(152:21)(153:8)(154:8)(160:21)(161:8)(161:12)
(165:12)(165:13)(165:17)(166:10)(166:12)(172:1)
(175:10)(175:14)(198:7)(198:18)(200:6)(201:6)(202:9)
(202:11)(202:12)(202:21)(205:3)(206:18)
**bias** (43:8)
**bicycle** (12:24)(143:20)
**bifurcated** (12:9)
**big** (22:22)(46:4)(174:13)
**birth** (69:19)(196:16)(196:22)(197:10)
**bit** (12:4)(12:5)(31:17)(42:2)(63:22)(75:13)(94:13)
(101:17)(105:24)(168:17)(168:19)(168:20)(182:17)
(183:4)(186:1)(188:15)(189:7)(189:15)(190:5)(190:12)
(195:21)(213:19)
**blah** (177:13)
**blank** (116:1)(116:5)(126:14)(176:4)(176:8)(176:9)
(181:16)
**bled** (155:21)(156:8)
**bleeds** (53:13)
**blind** (154:3)
**blink** (51:14)
**block** (54:21)
**blow** (162:21)

board                                                          castro                              221

board  (159:7)(169:7)
body  (143:7)
bolt  (153:16)
books  (49:17)
booth  (55:7)
boss  (16:25)
both  (8:11)(32:24)(46:14)(128:17)(214:10)
bother  (99:9)
bottom  (63:9)(64:14)(68:1)(106:23)(114:1)(118:14)
(127:20)(177:12)(177:15)(177:17)(193:1)(196:14)(196:18)
boulevard  (2:9)(2:22)(216:21)(217:19)
bounces  (55:9)
boy  (21:11)(22:2)(22:5)(22:9)(22:15)(22:24)(22:25)
(23:2)(58:18)(166:18)
boy's  (22:3)
brad  (2:12)(8:23)(45:19)(96:25)(124:6)
break  (164:5)(181:14)
breaking  (19:1)(72:9)
breaks  (53:12)
briefcase  (18:1)
briefly  (84:9)(94:21)(113:18)
bring  (14:19)(16:14)(39:22)(83:3)(85:23)(120:7)
(135:21)(136:10)(154:16)(160:24)(166:14)(214:16)
(214:18)(214:20)(214:25)(215:6)
bringing  (9:25)(41:6)
broadnax  (1:7)(9:6)(13:21)(45:21)(97:10)(101:9)
(124:11)(140:1)(197:24)(198:9)(200:25)(207:24)
broadnax's  (83:22)
brochure  (151:18)(152:2)
brother  (178:1)(178:2)
brother-in-law  (129:19)
brought  (9:25)(71:3)(71:4)(84:1)(88:9)(88:10)
buddies  (38:22)
building  (2:8)(2:22)(17:5)(113:20)(118:10)(125:21)
(146:14)(146:15)(187:19)
bullet  (53:12)(55:9)(62:25)
bullets  (33:1)(54:15)
burden  (13:19)(13:20)(13:24)(14:8)(14:9)(14:20)
(15:20)(16:2)(57:4)(72:10)(75:20)(77:14)(139:1)
(139:10)(143:21)(175:16)(200:23)(209:24)
burglarizing  (137:5)
business  (29:6)(47:17)(105:1)(132:16)(217:8)
but  (6:24)(10:5)(14:12)(15:5)(15:12)(16:8)(16:14)
(16:15)(17:5)(17:7)(18:5)(18:10)(19:12)(19:19)(20:6)
(20:14)(21:20)(22:15)(28:4)(33:25)(34:24)(35:4)(35:17)
(37:20)(38:24)(40:24)(44:22)(46:23)(50:5)(51:18)
(52:10)(53:11)(53:17)(54:6)(54:19)(55:16)(56:9)(56:11)
(61:4)(61:24)(63:8)(68:13)(69:11)(70:9)(72:1)(73:20)
(76:19)(79:14)(79:19)(79:20)(80:21)(87:5)(89:10)(90:1)
(93:23)(95:10)(98:13)(99:14)(99:24)(100:5)(101:7)
(102:9)(102:25)(103:20)(107:20)(110:12)(110:22)(117:5)
(121:25)(123:2)(124:1)(129:11)(131:5)(131:13)(132:6)
(132:18)(135:20)(135:22)(135:23)(137:16)(138:10)
(138:16)(138:21)(139:9)(140:20)(141:15)(142:19)(144:9)
(144:13)(145:20)(149:17)(152:25)(153:4)(153:10)
(153:18)(153:20)(154:2)(156:10)(156:19)(157:21)
(158:22)(161:8)(161:15)(163:17)(164:8)(167:17)(167:20)
(167:23)(168:8)(168:18)(168:20)(169:5)(172:1)(172:10)
(173:10)(175:10)(175:16)(175:23)(177:22)(178:22)
(182:9)(182:14)(182:17)(183:18)(185:9)(186:2)(186:8)
(188:13)(189:17)(191:1)(192:21)(193:19)(196:11)
(196:14)(197:19)(197:21)(198:14)(199:8)(202:10)(203:3)
(203:9)(203:23)(204:8)(204:12)(209:16)(210:6)(210:7)
(211:2)(211:8)(214:22)
buy  (33:1)
buys  (33:1)

---
                              C
---

cabell  (99:23)
cabinet  (22:22)
calendar  (87:12)
california  (178:8)(178:9)
call  (12:9)(19:20)(27:8)(27:17)(32:16)(52:5)(52:13)
(55:4)(55:22)(57:19)(129:2)(132:17)(132:19)(132:24)
(155:2)(155:5)(161:20)(162:24)(163:2)(186:7)(186:21)
(192:21)(192:22)
called  (16:8)(19:17)(20:19)(23:10)(23:18)(52:8)

(52:11)(52:21)(56:7)(65:16)(66:11)(66:14)(66:18)
(66:25)(67:4)(101:1)(137:12)(137:16)(138:8)(139:20)
(142:3)(147:9)(148:24)(150:8)(152:7)(152:18)(156:22)
(163:6)
calling  (86:25)(187:24)
calls  (36:22)(67:10)
calm  (2:17)
came  (1:19)(42:7)(89:20)(99:23)(118:10)(121:15)
(163:17)
can  (10:11)(14:17)(16:17)(17:20)(21:4)(26:5)(26:17)
(31:7)(31:16)(32:20)(32:21)(37:20)(37:21)(38:14)(41:2)
(41:18)(42:7)(46:20)(51:13)(52:1)(52:17)(52:19)(53:2)
(53:3)(53:14)(54:16)(56:19)(63:15)(64:18)(66:25)(67:6)
(68:5)(68:15)(71:8)(71:9)(71:10)(71:25)(72:1)(76:4)
(78:17)(78:25)(81:25)(89:17)(109:22)(119:6)(122:8)
(125:10)(127:11)(133:18)(134:12)(136:17)(137:10)
(137:17)(137:19)(138:19)(141:25)(144:6)(147:22)(148:8)
(148:10)(150:3)(150:21)(151:23)(152:15)(153:14)
(153:17)(154:12)(155:23)(156:15)(157:21)(158:3)
(161:10)(163:14)(165:10)(165:19)(168:14)(169:2)(169:5)
(175:1)(175:24)(180:1)(180:13)(180:24)(183:4)(192:1)
(192:6)(195:8)(197:2)(201:3)(205:25)(207:20)(208:1)
(211:4)(211:7)(213:19)
cancer  (22:10)
candy  (172:19)
cannot  (10:21)(22:20)(140:25)(156:23)(169:6)(169:13)
can't  (15:1)(15:14)(24:8)(26:22)(35:14)(35:18)(40:1)
(41:16)(104:9)(134:11)(134:20)(135:9)(135:17)(135:23)
(136:9)(141:3)(141:16)(141:20)(141:21)(143:12)(153:20)
(157:10)(167:17)(173:16)(177:2)(185:9)(197:1)(203:25)
(207:2)(207:4)(208:8)(210:6)(210:7)
capital  (17:13)(17:15)(17:19)(18:8)(18:11)(18:16)
(18:18)(18:20)(19:6)(19:17)(19:19)(20:9)(20:12)(20:16)
(21:13)(24:13)(24:25)(25:4)(25:10)(26:6)(29:17)(31:12)
(33:10)(33:14)(33:19)(42:18)(44:9)(49:21)(52:2)(52:14)
(52:16)(54:3)(54:5)(55:19)(57:7)(59:24)(60:21)(61:1)
(64:16)(71:14)(72:15)(74:10)(74:24)(78:20)(79:2)
(92:22)(100:13)(100:23)(113:3)(117:9)(132:19)(138:4)
(151:9)(151:15)(151:22)(152:5)(155:25)(156:11)(156:24)
(158:2)(158:24)(159:9)(160:10)(163:2)(163:3)(163:14)
(167:12)(168:13)(185:3)(197:24)(198:14)(198:19)
(204:10)(204:13)(207:24)
car  (29:24)(33:2)(56:13)(56:14)(61:18)(61:21)(100:3)
(129:3)(162:14)(163:16)
care  (92:23)(103:23)(108:13)(117:12)(121:5)(212:1)
(212:2)
carefully  (76:20)
caring  (183:24)
carjacking  (100:10)
carry  (14:8)
cars  (100:3)
case  (5:24)(7:10)(7:16)(9:9)(9:22)(10:18)(11:1)(11:4)
(11:5)(11:23)(12:2)(12:6)(12:18)(12:23)(12:25)(14:10)
(14:20)(15:2)(15:5)(15:8)(16:9)(17:1)(17:19)(18:9)
(18:11)(18:16)(20:11)(21:3)(21:6)(21:13)(21:24)(23:10)
(23:19)(24:11)(26:4)(27:13)(35:7)(35:8)(35:19)(35:23)
(37:23)(39:15)(39:18)(39:20)(40:5)(40:10)(41:8)(41:11)
(41:13)(41:15)(41:17)(41:24)(42:22)(44:6)(44:14)
(44:17)(46:1)(46:7)(46:16)(46:17)(49:21)(49:22)(60:21)
(64:17)(65:15)(70:14)(70:15)(71:12)(71:14)(74:11)
(75:20)(79:1)(84:17)(84:24)(85:11)(87:7)(89:21)(89:24)
(90:13)(90:14)(92:17)(92:22)(96:19)(97:11)(99:15)
(100:14)(103:18)(104:15)(110:22)(113:3)(114:18)
(114:19)(117:10)(121:1)(123:7)(124:3)(124:9)(124:11)
(125:12)(134:14)(136:5)(136:14)(137:6)(137:23)(138:23)
(140:24)(142:8)(142:9)(143:19)(143:20)(144:25)(146:7)
(146:16)(146:17)(146:23)(147:12)(147:15)(148:16)
(149:1)(150:4)(151:4)(151:5)(151:9)(151:15)(151:21)
(152:5)(156:16)(157:12)(157:23)(169:6)(172:24)(173:4)
(178:16)(179:3)(179:11)(184:4)(184:20)(185:3)(197:22)
(204:10)(204:13)(204:16)(206:1)(206:2)(210:6)(210:8)
(215:11)
cases  (12:3)(24:6)(42:4)(67:2)(67:4)(71:2)(98:24)
(100:1)(110:12)(114:6)(115:22)(134:13)(154:21)(179:11)
cash  (47:5)(47:6)(162:20)
cashier  (55:7)
castro  (3:8)(4:6)(91:25)(92:1)(92:8)(92:9)(92:11)

c-a-s-t-r-o                                     considered                          222

(92:12)(92:19)(93:3)(93:9)(93:12)(93:13)(93:16)(93:22)
(94:2)(94:8)(94:11)(94:15)(94:18)(94:20)(94:24)(95:2)
(95:5)(95:8)(95:17)(95:19)(95:22)(96:1)(96:14)(97:16)
(97:20)(102:10)(103:8)(103:11)(103:16)(103:19)(103:24)
(104:2)(104:5)(104:14)
c-a-s-t-r-o  (92:8)
casual  (132:2)(132:3)
catch  (164:5)
categories  (31:18)(36:14)(36:21)(132:8)(176:2)
categorize  (169:2)(169:5)
category  (17:16)(128:25)(141:1)
cause  (1:3)(1:20)(3:6)(3:9)(3:10)(3:11)(3:12)(3:14)
(3:15)(3:16)(3:17)(3:19)(3:20)(3:21)(3:22)(49:6)(50:2)
(50:7)(51:20)(52:10)(54:18)(60:11)(61:2)(75:6)(83:9)
(83:13)(85:14)(104:7)(104:9)(104:13)(108:2)(108:12)
(111:22)(112:5)(115:20)(116:13)(116:17)(119:17)(120:1)
(161:14)(214:5)(214:9)(214:14)(216:11)
caused  (54:2)(54:6)(54:20)(61:9)(71:19)(72:21)(161:13)
causing  (20:6)(50:4)(53:11)(54:11)
caution  (41:15)
celebration  (54:14)
central  (121:16)
certain  (60:5)(139:18)(144:22)(199:9)(200:1)
certainly  (54:19)(99:3)
certificate  (4:14)
certification  (216:22)(217:20)
certify  (216:6)(216:13)
challenge  (3:6)(3:9)(3:11)(3:14)(3:16)(3:19)(3:21)
(83:9)(83:13)(85:14)(104:7)(104:9)(104:13)(108:2)
(108:4)(108:12)(111:22)(112:4)(115:20)(116:12)(116:17)
(119:17)(119:25)(214:5)(214:8)(214:14)
challenging  (79:15)
chambers  (216:12)
champion  (153:15)
chance  (167:15)(167:19)(188:5)(207:6)
change  (27:5)(40:24)(89:17)(135:20)(174:14)(174:18)
chapter  (217:3)
character  (36:6)(166:24)(170:4)
characterization  (185:13)
charge  (9:20)(12:13)(129:8)(129:11)(136:13)
charged  (13:13)(54:3)(96:18)(103:2)(124:2)(128:24)
(128:25)(129:1)(129:11)(136:17)(142:8)(151:21)(163:14)
(163:20)(197:24)
charges  (14:19)(29:11)(90:16)
charles  (3:18)(4:7)(117:2)(118:3)(119:17)(119:25)
chase  (53:5)
check  (127:11)
checked  (177:14)
chicago  (99:14)
child  (18:21)(115:1)(136:20)(166:16)
childhood  (167:22)
children  (47:25)(116:7)
children's  (22:12)
china  (111:6)
choice  (31:19)(48:14)(101:6)(106:24)(110:14)(114:4)
(115:5)(118:23)(138:15)(209:2)(209:7)(209:9)(209:12)
(209:17)
choices  (110:7)(113:24)
choir  (58:18)
chooses  (69:23)(157:23)
chose  (76:19)
christian  (48:1)
chronological  (3:1)
church  (158:19)
circle  (114:2)(127:1)
circled  (106:25)(107:5)(110:10)(110:14)(113:25)
(115:5)(118:17)(118:23)(128:5)
circumstance  (35:12)(35:25)(36:9)(36:15)(37:23)
(40:11)(167:5)
circumstances  (17:18)(23:12)(23:24)(31:11)(35:9)
(36:5)(36:9)(44:21)(57:20)(68:21)(68:25)(69:19)(78:24)
(107:6)(108:6)(111:24)(118:20)(147:23)(166:23)(167:6)
(170:16)(195:23)(196:16)(196:22)(197:4)(197:10)
citizen  (139:24)(195:16)
civil  (178:12)(179:6)(179:9)
clarify  (125:19)(125:24)
clear  (148:6)

clearly  (53:9)(53:16)(80:2)(83:19)(84:9)
clergy  (141:2)(141:4)(160:3)
clerk  (33:9)(33:11)(52:25)(53:19)(162:8)(162:22)
(162:25)
clerk's  (162:21)
client  (9:9)(97:11)(124:12)(191:25)(192:7)
client's  (207:6)
close  (15:11)(67:17)(131:25)(149:18)(150:3)(182:15)
(190:3)
c-l-o-s-e  (190:3)
closed  (168:16)(168:19)(168:20)(168:21)
clue  (48:12)(70:22)
co-counsel  (18:2)(32:23)(41:6)
code  (178:21)(217:4)
cold  (178:13)(178:15)
colleague  (136:8)(161:22)(173:11)
college  (186:24)(187:1)
combine  (69:17)
come  (8:12)(10:12)(11:7)(25:12)(30:18)(33:9)(43:7)
(54:15)(55:22)(62:8)(66:2)(67:6)(81:13)(85:25)(86:18)
(92:1)(95:10)(105:11)(108:21)(112:9)(113:2)(116:21)
(140:24)(148:20)(148:23)(151:17)(164:6)(167:12)(181:8)
(202:1)(215:2)
comes  (22:22)(41:23)(43:17)(43:18)(53:5)(55:9)(91:1)
(100:6)(142:17)(145:19)(158:12)(166:1)(166:8)(167:24)
(176:3)
coming  (62:25)(84:22)(203:5)(206:22)
comment  (64:25)
commerce  (2:13)
commercial  (47:21)(47:23)
commission  (25:2)(32:19)(37:19)(53:15)(56:1)(56:4)
(62:12)(63:11)(71:20)(193:10)(206:5)
commit  (19:23)(21:5)(22:1)(25:3)(27:14)(28:22)(29:1)
(50:15)(60:13)(72:7)(76:2)(77:3)(151:2)(153:24)(154:9)
(172:22)(205:5)(206:12)(211:25)
commits  (52:12)(173:3)
committed  (48:22)(49:23)(53:8)(53:16)(55:18)(56:10)
(57:3)(57:5)(57:21)(57:24)(58:10)(63:17)(82:9)(82:13)
(135:14)(138:4)(138:23)(143:18)(144:23)(162:23)(211:7)
(211:8)
committing  (19:1)(26:24)(31:24)(31:25)(70:4)(75:1)
(145:1)(150:6)
common  (13:7)(24:23)(43:24)(144:10)
company  (47:9)(179:5)
compare  (49:11)
completely  (43:25)(116:1)
complies  (127:13)
comprise  (8:14)(97:9)
computer  (47:11)
computer-aided  (1:24)
computerized  (1:23)
conceding  (203:16)(203:19)
concept  (50:22)
concerned  (212:20)(213:12)(214:24)
concerning  (94:6)(189:14)
conclusion  (27:2)
conduct  (113:2)
confer  (83:2)
conformity  (217:3)
confused  (189:21)
confuses  (161:19)
congratulations  (48:5)(48:9)
conscious  (38:13)(38:17)(155:16)
consciously  (54:23)
consensus  (11:22)(11:23)
consequently  (6:7)(105:20)(121:11)
consider  (10:25)(11:4)(12:16)(13:11)(21:8)(23:20)
(23:23)(29:7)(29:9)(31:11)(31:13)(34:3)(38:3)(39:14)
(40:10)(40:11)(40:13)(44:22)(49:6)(58:19)(66:8)(69:10)
(73:13)(73:15)(73:19)(79:21)(79:23)(80:6)(80:15)
(82:17)(84:9)(84:23)(85:1)(85:3)(85:6)(139:11)(168:22)
(169:20)(179:23)(204:23)
consideration  (11:11)(11:12)(20:23)(36:3)(40:12)
(41:3)(44:17)(69:11)(71:16)(79:13)(80:1)(81:20)(83:20)
(83:21)(85:4)(85:6)(85:12)(165:23)(169:11)(169:12)
considered  (26:14)(63:16)(69:20)(84:7)(167:18)
(194:18)(196:23)

considering                                    day-to-day                        223

considering (27:12)(27:23)(60:5)(61:7)(161:4)
consistently (84:25)
constitute (27:15)(29:15)(37:16)(63:11)(72:8)(76:3)
(151:2)(158:25)(159:4)(160:5)(160:18)(193:10)(193:15)
(205:6)
constitutional (15:6)
consultants (66:2)
contact (116:5)
contained (94:7)(95:3)
contains (216:7)
contemplating (209:19)
context (42:12)(74:18)(77:6)(81:21)(85:7)(169:13)
(205:9)
continue (77:3)(79:3)(91:4)
continuing (27:16)(29:16)(72:8)(76:3)(151:3)(160:12)
(160:18)(161:4)(205:6)
convicted (126:5)(126:6)(126:21)(132:9)(132:11)
(132:15)(132:22)(133:11)(196:24)(211:10)
conviction (61:1)(127:4)
convince (79:10)
convinced (145:2)(145:5)
cooks (30:15)
coppell (47:2)(47:25)
copy (121:24)
corporate (47:7)(47:11)
correct (11:14)(11:25)(14:17)(32:8)(48:2)(49:2)(58:1)
(58:2)(58:3)(64:10)(64:11)(78:5)(82:10)(85:16)(89:22)
(100:14)(108:15)(110:24)(110:25)(115:6)(118:17)
(120:21)(126:13)(127:10)(127:11)(129:23)(136:5)(139:8)
(142:25)(145:8)(151:5)(157:1)(159:12)(163:12)(164:6)
(168:14)(175:4)(175:16)(216:7)
correctly (184:4)(216:14)
cot (22:19)
could (11:22)(14:6)(14:10)(15:17)(19:9)(19:23)(21:5)
(21:6)(21:25)(26:20)(29:11)(29:17)(30:2)(30:22)(31:13)
(32:22)(33:13)(34:3)(35:15)(36:13)(37:3)(39:10)(58:17)
(59:17)(60:13)(62:5)(62:8)(70:17)(75:11)(75:18)(76:18)
(81:25)(98:3)(98:11)(101:13)(107:6)(110:12)(111:23)
(113:8)(117:25)(118:19)(119:18)(128:8)(128:18)(131:12)
(132:7)(135:20)(136:18)(138:20)(138:21)(149:17)
(157:19)(163:20)(183:13)(188:23)(190:4)(190:5)(191:9)
(203:3)(209:23)(211:9)(211:11)(211:17)
couldn't (21:1)(80:19)(89:23)(154:23)(171:17)(210:5)
(210:24)
counsel (216:9)
count (89:17)
counter (53:2)(53:5)
county (1:7)(1:22)(2:8)(2:21)(96:17)(123:22)(130:8)
(130:9)(144:22)(199:9)(199:20)(200:2)(200:4)(216:3)
(216:6)
couple (57:17)(100:5)(117:18)(143:15)(189:22)
course (18:25)(19:13)(25:2)(26:24)(31:24)(45:23)
(52:24)(55:18)(57:3)(57:6)(67:5)(70:5)(71:20)(72:21)
(88:5)(91:3)(137:1)(137:5)(145:1)(173:5)(206:5)(207:25)
court (1:6)(4:13)(4:14)(5:3)(5:5)(5:7)(5:16)(5:21)
(6:3)(6:7)(6:9)(6:16)(6:19)(6:24)(7:4)(7:7)(7:18)
(7:23)(8:5)(8:7)(8:11)(8:17)(8:20)(8:25)(9:2)(9:5)
(9:8)(45:3)(45:7)(45:11)(45:14)(78:17)(82:25)(83:6)
(83:12)(83:15)(83:17)(83:22)(83:24)(84:8)(84:18)
(85:13)(85:19)(85:22)(85:25)(86:7)(86:12)(86:15)
(86:18)(86:21)(86:24)(87:5)(87:18)(87:20)(87:22)(88:2)
(88:5)(88:10)(88:13)(88:17)(88:23)(89:1)(89:4)(89:7)
(89:13)(89:16)(89:20)(89:23)(90:2)(90:6)(90:9)(90:18)
(90:21)(90:24)(91:9)(91:16)(91:20)(91:23)(92:1)
(92:10)(92:13)(92:20)(92:24)(93:4)(93:10)(93:14)
(93:17)(93:23)(94:3)(94:10)(94:12)(94:16)(94:19)
(94:21)(94:25)(95:6)(95:9)(95:18)(95:20)(95:23)(96:2)
(96:9)(96:12)(96:15)(97:2)(97:5)(97:8)(97:15)(99:23)
(103:11)(103:14)(103:16)(103:20)(103:25)(104:4)(104:6)
(104:11)(104:13)(104:19)(104:23)(105:1)(105:5)(105:8)
(105:11)(105:20)(105:23)(106:4)(106:19)(107:12)
(107:15)(107:20)(107:23)(108:1)(108:7)(108:10)(108:17)
(108:21)(108:24)(109:1)(109:10)(109:23)(111:5)(111:9)
(111:11)(111:15)(111:17)(111:20)(112:1)(112:4)(112:9)
(112:13)(112:17)(112:19)(113:1)(113:10)(115:12)
(115:14)(115:18)(116:3)(116:8)(116:15)(116:21)(116:24)
(117:5)(117:8)(117:15)(117:22)(117:24)(118:1)(119:5)

(119:9)(119:12)(119:15)(119:22)(119:24)(120:5)(120:7)
(120:12)(120:14)(120:23)(121:4)(121:6)(121:9)(121:13)
(121:18)(121:21)(121:24)(122:3)(122:6)(122:11)(122:15)
(122:19)(122:22)(123:1)(123:4)(123:9)(123:14)(123:17)
(123:20)(123:25)(127:19)(140:25)(145:23)(151:12)
(154:8)(165:19)(175:21)(177:18)(180:11)(180:15)
(180:21)(180:24)(181:3)(181:6)(181:8)(181:12)(181:18)
(181:21)(181:24)(182:1)(182:4)(185:6)(195:18)(199:3)
(199:14)(199:17)(213:1)(213:21)(213:25)(214:1)(214:4)
(214:7)(214:13)(214:20)(214:23)(215:2)(215:13)(215:16)
(215:18)(215:21)(216:4)(216:5)(216:12)(216:20)(217:2)
(217:5)(217:18)
courtroom (5:4)(17:3)(18:12)(83:5)(85:24)(91:19)
(91:25)(92:23)(104:5)(105:10)(107:25)(108:20)(111:19)
(112:8)(115:17)(116:20)(117:12)(119:14)(120:10)(121:5)
(142:17)(166:2)(166:6)(166:9)(166:14)(213:23)(215:1)
courts (2:8)(2:22)
court's (3:6)(3:7)(3:9)(3:12)(3:14)(3:17)(3:19)(3:22)
(84:4)
covered (170:23)
create (217:10)
crime (12:19)(12:22)(20:21)(20:24)(23:11)(24:19)
(29:10)(37:19)(42:16)(48:22)(51:1)(57:12)(63:11)
(69:12)(69:14)(82:19)(114:18)(133:22)(134:2)(134:5)
(134:19)(135:1)(136:14)(136:18)(138:4)(138:22)(139:18)
(139:19)(140:21)(142:5)(143:18)(144:23)(150:7)(162:23)
(162:24)(163:21)(165:24)(173:3)(191:12)(193:10)
(193:15)(193:18)(196:24)
crimes (48:20)(57:19)(132:8)(132:9)
criminal (1:5)(2:7)(12:20)(13:16)(14:10)(15:2)(15:4)
(18:24)(24:6)(27:15)(28:22)(28:23)(28:24)(29:4)(29:7)
(29:14)(32:19)(38:20)(41:24)(43:4)(44:6)(46:15)(52:21)
(56:8)(56:19)(56:20)(56:21)(60:6)(60:14)(67:22)(67:23)
(72:7)(76:2)(77:3)(83:25)(136:21)(146:16)(146:17)
(151:2)(153:24)(154:9)(155:6)(178:12)(205:5)(216:5)
(216:20)(217:18)
criminally (20:2)
criticism (206:23)
cross-examined (67:1)
crossword (14:11)
crowley (2:8)(2:22)
csr (216:19)(217:17)
culpability (35:10)(36:7)(166:25)
culpable (52:5)(55:24)(56:5)(56:6)
currently (127:7)
customer (132:4)(156:3)(171:22)(174:2)(186:21)
customers (131:21)(131:22)(132:1)(133:6)(135:13)
(171:1)
cut (38:12)(68:11)(135:23)(188:8)

### D

dad (22:18)
daddy (166:18)
daily (113:1)(117:12)(121:5)
dallas (1:7)(1:22)(2:8)(2:9)(2:14)(2:18)(2:21)(2:23)
(90:25)(96:17)(123:21)(144:22)(188:2)(199:9)(199:20)
(200:1)(200:3)(216:3)(216:6)(216:21)(217:19)
danger (27:20)(30:21)(32:1)(32:15)(72:23)(75:7)(75:9)
(75:15)(76:24)(77:18)(78:22)(154:14)(170:10)(205:6)
(206:8)(208:3)(208:6)(208:25)(209:23)(210:3)
dangerous (38:9)(38:13)(53:9)(53:16)(68:10)
dangerousness (27:9)(27:18)
das (162:13)
da's (8:18)
dash (153:14)
date (89:14)(144:22)(199:25)(200:1)
daughter (43:22)(43:23)
david (9:22)
davis (3:18)(4:7)(116:18)(116:20)(116:21)(116:23)
(117:2)(117:3)(117:4)(117:7)(117:14)(117:21)(118:2)
(118:3)(118:7)(118:9)(119:6)(119:8)(119:11)(119:14)
(119:17)(119:25)
day (1:18)(22:7)(22:13)(22:19)(82:5)(104:3)(122:12)
(161:18)(174:11)(174:12)(178:16)(178:17)(178:18)
(195:5)(199:9)(200:3)(214:22)(216:17)
days (51:16)
day-to-day (92:23)

dead                                                                    doesn't              224

dead  (16:15)(142:18)(143:6)
deal  (128:22)(162:11)(172:12)
dealing  (192:7)
death  (10:18)(10:22)(12:6)(12:23)(17:17)(17:19)(20:6)
(20:15)(25:14)(25:19)(26:18)(26:25)(34:21)(34:23)
(34:24)(35:13)(35:20)(36:11)(36:25)(42:3)(42:21)
(48:17)(48:20)(49:2)(50:2)(50:4)(50:7)(51:21)(52:10)
(52:12)(53:11)(53:13)(53:17)(54:2)(54:6)(54:11)(54:18)
(54:20)(55:2)(55:18)(57:19)(58:9)(58:19)(59:1)(59:10)
(59:21)(59:22)(59:24)(60:3)(60:6)(60:13)(60:20)(61:2)
(61:8)(71:19)(72:21)(75:6)(76:6)(78:4)(79:1)(79:5)
(79:12)(79:24)(80:12)(81:1)(81:7)(100:19)(101:6)
(101:8)(101:14)(106:25)(107:7)(108:5)(110:8)(110:11)
(110:13)(110:24)(111:24)(113:25)(114:5)(114:12)
(114:19)(115:22)(118:16)(118:21)(119:19)(129:16)
(135:24)(136:4)(136:15)(136:18)(137:12)(138:16)
(139:14)(143:19)(143:20)(147:12)(150:5)(151:4)(151:9)
(151:10)(151:16)(152:1)(152:6)(154:21)(155:21)(156:8)
(161:13)(161:14)(167:7)(167:17)(167:20)(168:18)
(169:25)(170:13)(170:19)(170:20)(171:2)(171:5)(171:8)
(171:15)(172:25)(174:3)(174:16)(174:16)(175:3)(183:11)
(183:13)(183:20)(184:11)(184:20)(188:19)(188:24)
(190:23)(191:4)(191:7)(204:13)(208:13)
debate  (25:16)
deceased  (161:14)(161:15)
decide  (20:19)(28:24)(29:4)(29:13)(38:25)(139:12)
(156:9)(156:12)(162:5)(164:9)(207:2)(207:4)
decided  (149:21)(205:10)(205:18)
decides  (22:20)
deciding  (38:5)(60:19)(150:18)(155:23)
decision  (11:10)(15:2)(27:2)(31:14)(38:10)(38:14)
(38:17)(40:13)(51:10)(51:11)(61:24)(85:11)(140:5)
(140:8)(140:9)(145:21)(147:21)(148:10)(149:17)(149:23)
(156:16)(157:10)(180:2)(202:6)(209:13)(210:5)
decisions  (24:2)(68:16)(69:22)(90:12)
declared  (10:9)(12:1)
default  (65:19)(66:10)
defend  (191:25)
defendant  (2:24)(5:3)(9:8)(12:13)(13:10)(13:12)
(14:22)(15:1)(15:5)(16:11)(16:13)(19:14)(24:25)(26:4)
(27:14)(27:20)(28:22)(28:25)(29:1)(29:2)(29:25)(32:11)
(32:12)(34:5)(34:12)(35:10)(36:17)(38:19)(44:7)(50:1)
(50:6)(52:1)(54:2)(55:24)(56:3)(57:6)(70:2)(71:4)
(72:1)(72:7)(77:21)(79:23)(80:2)(91:23)(97:10)(105:8)
(124:11)(137:23)(138:4)(138:16)(138:22)(140:1)(142:25)
(143:7)(144:20)(146:23)(150:6)(150:15)(151:1)(151:21)
(151:23)(153:24)(154:9)(155:15)(158:2)(158:22)(160:6)
(161:13)(166:25)(181:6)(204:20)(205:5)(208:13)(210:2)
(213:25)
defendants  (67:24)
defendant's  (36:6)(78:20)(154:22)(159:2)(166:15)
(166:24)
defender  (2:21)
defender's  (2:21)
defending  (65:11)
defense  (3:4)(4:4)(9:6)(14:9)(37:17)(43:7)(43:8)
(43:12)(45:15)(63:11)(63:13)(65:5)(65:9)(66:20)(66:24)
(83:13)(83:23)(84:22)(85:21)(97:9)(124:9)(182:6)
(193:10)(194:3)(194:8)(214:8)
defense's  (3:6)(3:7)(3:21)(85:14)(214:14)
define  (28:4)
defined  (28:23)
definitely  (20:13)(39:13)(42:14)
definition  (24:15)(42:17)(153:7)
degree  (70:24)(71:1)(71:8)(195:20)
degrees  (70:19)(70:20)
deliberate  (147:22)(148:4)(157:1)
deliberating  (169:16)
deliberation  (15:9)
deliberations  (77:19)
delivered  (191:18)
delores  (3:16)(4:9)(112:6)(112:21)(113:13)(116:16)
delta  (186:12)(186:14)(186:15)(186:20)(186:25)(187:3)
(187:4)(187:6)
demonstrated  (85:9)
denied  (85:15)
department  (178:5)

depend  (21:6)
depending  (19:23)(19:24)
depends  (24:8)(24:10)(44:21)(55:23)(211:2)
deputy  (216:4)(216:20)(217:18)
description  (208:19)
deserve  (23:13)(23:14)(185:23)(190:23)
deserves  (169:24)
detail  (7:12)(95:1)(95:3)
details  (128:8)(128:11)(128:22)(129:10)(132:23)
(177:22)
determination  (27:23)(34:4)(70:1)
determine  (10:15)(12:12)(19:18)(76:10)(169:1)
determined  (129:3)
determining  (20:10)(69:20)(196:23)(211:24)
deterrent  (60:6)(60:16)(191:10)
diagnosed  (22:10)
dictate  (83:15)
did  (6:10)(7:2)(7:6)(11:16)(15:24)(15:25)(16:1)
(16:14)(22:24)(23:2)(23:4)(23:12)(26:23)(31:17)(33:12)
(38:24)(49:13)(49:14)(50:7)(51:23)(53:17)(54:18)(55:1)
(55:16)(56:18)(58:17)(59:5)(63:5)(81:14)(93:19)(94:16)
(98:10)(98:13)(101:18)(102:15)(114:2)(114:3)(130:4)
(134:2)(134:5)(134:16)(134:18)(142:18)(143:7)(146:24)
(147:1)(150:9)(151:7)(151:16)(151:17)(156:6)(161:14)
(172:13)(172:15)(173:17)(173:18)(173:19)(173:22)
(178:15)(186:3)(186:20)(186:24)(187:7)(187:9)(188:3)
(188:5)(189:15)(190:8)(190:13)(190:14)(199:1)(200:4)
(205:19)(205:20)(209:17)
didn't  (15:10)(15:12)(16:16)(19:19)(28:3)(28:4)
(54:17)(56:17)(56:17)(70:22)(76:19)(89:21)(90:1)(98:2)
(102:2)(113:11)(128:11)(130:18)(142:19)(143:11)
(143:24)(143:25)(154:5)(155:20)(156:5)(156:6)(164:6)
(168:8)(176:10)(177:22)(183:6)(185:11)(185:20)(189:3)
(189:5)(189:9)(189:22)(190:4)(190:10)(191:5)(191:12)
(191:13)(193:3)(193:12)(201:11)(203:3)(203:8)(209:16)
(213:15)
die  (16:16)(22:11)(22:15)(22:24)(33:21)(34:1)(34:9)
(34:13)(158:7)(174:23)(208:22)
died  (16:16)(17:23)(17:24)(142:21)
dies  (22:24)(136:9)
difference  (28:13)(28:20)(40:15)(63:22)(64:4)(80:5)
(81:16)(81:17)(81:18)(137:13)(153:1)(165:15)(202:11)
different  (12:8)(19:22)(20:7)(51:9)(52:12)(53:21)
(70:12)(71:13)(72:9)(77:24)(98:24)(98:25)(10:):1)
(133:8)(135:1)(166:19)(168:24)(178:7)(187:11)(206:9)
difficult  (98:23)(98:25)(99:2)(99:17)(100:1)(100:7)
(100:13)(101:17)
dire  (1:12)(9:14)(45:15)(84:22)(92:25)(97:13)(97:18)
(106:7)(109:18)(113:15)(118:5)(124:14)(124:18)(182:6)
direct  (32:18)
disagree  (67:25)
disbelief  (43:25)
disclosure  (217:6)
discuss  (148:4)(148:5)(148:8)(157:3)(161:22)
discussion  (171:5)(204:9)
disk  (56:14)
dismiss  (10:13)
disregarded  (54:23)(55:16)
distinction  (53:18)
distinguish  (132:19)
distinguishing  (52:4)
district  (1:5)(2:7)(5:7)(5:23)(8:11)(8:14)(9:19)
(92:14)(96:16)(105:16)(109:5)(112:24)(113:6)(117:5)
(117:18)(120:24)(123:21)(216:5)(216:20)(217:18)
doctors  (30:17)(167:1)
document  (139:22)(213:10)
does  (14:3)(21:11)(22:7)(22:24)(28:5)(33:21)(33:24)
(36:25)(37:15)(37:19)(37:23)(39:8)(40:21)(50:12)
(50:22)(53:4)(54:9)(57:15)(63:10)(66:7)(76:14)(79:4)
(83:8)(83:13)(84:19)(95:9)(104:6)(115:24)(130:21)
(151:24)(152:23)(169:23)(170:17)(173:13)(174:14)
(177:23)(177:24)(179:22)(190:18)(193:9)(193:14)
(198:14)(214:4)(214:11)
doesn't  (10:10)(10:18)(13:16)(19:13)(21:13)(21:15)
(26:7)(27:5)(28:11)(28:25)(29:3)(37:16)(40:14)(48:12)
(86:7)(87:22)(102:6)(166:10)(204:10)(206:24)(207:11)
(208:2)

dog                                    evidence                    225

dog  (166:17)
doing  (6:5)(9:17)(9:24)(31:24)(38:24)(46:3)(49:15)
(61:15)(61:25)(62:20)(68:15)(86:8)(93:1)(99:6)(105:18)
(109:7)(109:8)(117:10)(121:10)(124:21)(124:22)(124:23)
(149:12)(149:21)(188:11)
done  (53:10)(69:14)(71:21)(75:25)(76:6)(89:9)(149:19)
(192:16)(201:15)(214:22)(214:23)
don't  (7:23)(11:13)(14:12)(14:23)(15:21)(25:5)(33:6)
(33:7)(34:2)(36:19)(36:20)(40:1)(40:16)(40:24)(43:10)
(44:19)(49:6)(51:5)(53:1)(56:8)(57:22)(58:7)(59:12)
(61:17)(62:8)(65:10)(65:13)(65:22)(66:15)(67:6)(68:5)
(70:21)(73:6)(73:9)(75:11)(76:5)(80:4)(81:18)(82:7)
(82:16)(82:18)(87:9)(88:6)(89:7)(89:8)(89:10)(90:9)
(91:20)(95:7)(95:10)(103:5)(103:13)(105:4)(105:24)
(109:10)(114:7)(114:8)(114:23)(117:16)(119:4)(125:1)
(125:2)(126:25)(128:10)(129:10)(131:13)(131:14)(132:4)
(132:5)(132:7)(135:16)(138:20)(139:10)(140:2)(140:13)
(141:18)(143:10)(145:10)(152:17)(156:1)(161:23)(162:9)
(162:13)(162:18)(163:17)(163:23)(165:16)(170:14)
(171:4)(172:25)(173:2)(173:10)(173:21)(174:9)(174:21)
(174:23)(176:5)(176:13)(176:14)(178:15)(182:19)
(185:23)(191:16)(193:6)(194:25)(196:2)(196:7)(197:9)
(198:9)(199:11)(199:21)(204:4)(204:5)(204:7)(206:9)
(207:16)(208:7)(208:9)(208:10)(208:13)(208:17)(210:21)
(212:19)(213:7)(215:13)
dose  (22:22)
doubt  (14:1)(15:12)(24:14)(24:16)(24:17)(24:20)
(24:22)(24:25)(27:13)(28:6)(28:10)(49:23)(50:6)(51:25)
(62:11)(72:6)(72:12)(72:20)(75:22)(78:21)(79:3)(88:23)
(138:3)(139:4)(139:7)(143:17)(143:22)(143:24)(143:25)
(144:3)(144:4)(144:8)(144:9)(145:3)(145:6)(145:11)
(145:19)(148:20)(148:22)(150:6)(150:16)(150:20)
(150:24)(152:22)(153:8)(154:8)(160:22)(161:9)(161:13)
(163:11)(165:12)(165:13)(165:17)(166:10)(166:12)
(172:2)(172:5)(175:11)(175:15)(198:7)(198:18)(200:7)
(201:6)(201:16)(202:7)(202:9)(202:11)(202:12)(202:13)
(202:19)(202:20)(202:22)(203:25)(205:4)(206:18)
doubts  (144:14)(172:6)(172:7)
doug  (8:25)(45:20)(97:2)(124:7)(182:8)
douglas  (2:16)
down  (9:2)(9:25)(14:18)(14:25)(15:16)(20:4)(25:6)
(25:12)(26:13)(27:22)(32:6)(32:24)(34:16)(38:7)(42:7)
(49:25)(51:24)(54:16)(55:9)(56:12)(56:16)(57:18)
(62:25)(63:9)(64:14)(67:6)(68:1)(72:9)(81:13)(92:24)
(94:9)(96:25)(97:5)(97:10)(98:1)(98:8)(98:9)(98:14)
(100:15)(101:9)(117:15)(120:2)(120:25)(121:6)(121:16)
(124:6)(124:8)(124:10)(125:16)(131:15)(141:3)(149:18)
(150:3)(160:23)(161:22)(170:2)(176:19)(185:2)(185:6)
(185:9)(188:16)(189:3)(189:25)(196:14)(199:25)(202:1)
drink  (45:7)(64:6)(180:17)(181:1)
drinking  (61:19)
drives  (162:14)
driving  (20:4)(29:24)(56:12)(61:19)(61:22)
drove  (33:17)
drug  (80:16)(132:12)
drugs  (37:21)(63:25)(80:10)(85:5)(85:8)
due  (134:25)
duress  (205:17)
during  (18:24)(25:2)(48:22)(55:18)(57:3)(57:5)(57:11)
(70:4)(71:20)(72:21)(91:3)(124:25)(181:14)(187:6)
(206:5)
duties  (99:11)
duty  (11:13)(18:23)(39:24)(99:6)(99:18)(136:19)
(149:19)

**E**

each  (6:25)(44:22)(70:23)(93:11)(93:24)(122:17)
(123:5)(145:2)(157:7)(182:15)
earlier  (65:1)
early  (104:20)
earned  (34:23)(170:6)
easy  (162:9)
economic  (161:23)
eddie  (129:1)(129:7)(130:21)
eddings  (84:5)
e-d-d-i-n-g-s  (84:5)
educated  (98:4)

educators  (30:17)
edward  (117:2)(119:25)
effect  (60:6)(60:11)(60:16)
effort  (107:21)(182:14)(215:8)
eighty-twenty  (195:14)
either  (34:4)(36:19)(36:20)(42:24)(56:2)(66:25)
(67:20)(70:17)(87:2)(89:10)(123:6)(141:22)(156:4)
(164:15)(170:12)
elaine  (2:6)(8:13)(18:13)(32:23)(96:7)(123:18)
elect  (10:12)
elects  (15:5)
element  (15:21)(16:18)
elements  (13:25)(15:23)(16:3)(145:2)
eligible  (136:14)(136:18)(137:11)
else  (11:11)(19:5)(19:18)(20:22)(30:14)(105:3)
(130:20)(205:12)
embarrass  (43:10)(125:6)
embarrassing  (7:19)(125:5)
emotion  (171:18)
emotional  (102:6)
encourage  (32:18)
end  (9:2)(46:7)(50:7)(77:19)(97:5)(97:10)(101:9)
(101:10)(124:8)(137:22)(215:22)
endeavor  (125:11)
ended  (149:11)
enforcement  (177:7)(177:14)(178:21)
engage  (37:4)
engaged  (53:15)(72:19)(82:4)
engine  (162:15)
enjoy  (14:21)(14:22)(111:15)(188:9)
enjoys  (13:22)(14:22)
enough  (22:15)(24:23)(35:13)(35:19)(35:23)(80:2)
(132:1)(134:10)(134:23)(142:18)(156:3)(160:24)(161:23)
(162:13)(176:10)(181:22)(185:25)(191:2)(191:17)
(192:24)(194:1)
enters  (5:4)(18:12)(85:24)(91:25)(105:10)(108:20)
(112:8)(116:20)(120:10)(215:1)
entire  (15:8)(23:20)
entirely  (12:8)(25:8)(169:5)
entitled  (25:3)(198:9)(198:19)(207:1)
environment  (69:20)(196:23)(197:12)
envisioning  (21:22)
episode  (18:24)(136:21)
equally  (15:23)(32:21)
equivalent  (59:21)
escapes  (30:1)
establish  (202:5)
estimate  (188:23)
evaluate  (141:13)(145:22)
evans  (2:6)(8:13)(18:12)(18:13)(29:5)(96:7)(96:8)
(97:12)(97:14)(97:19)(104:8)(123:18)(123:19)
eve  (54:12)
even  (16:13)(30:18)(54:18)(57:2)(61:7)(72:14)(76:24)
(79:4)(80:18)(85:2)(85:6)(98:8)(135:11)(135:15)
(136:12)(136:15)(139:21)(141:21)(143:6)(143:7)(156:1)
(160:9)(160:18)(161:19)(166:10)(185:12)(189:17)(204:7)
(207:24)
ever  (74:8)(74:10)(80:15)(81:22)(160:13)(178:11)
(188:5)(201:25)(205:22)(211:10)
every  (6:25)(10:18)(12:25)(15:20)(22:13)(22 16)
(93:24)(99:24)(116:4)(123:5)(136:4)(139:11)(139:17)
(143:25)(145:20)(161:18)(162:7)
everybody  (6:12)(10:14)(92:17)(93:6)(93:8)(121:15)
(122:13)
everything  (13:20)(16:12)(20:2)(20:17)(23:4)(24:7)
(24:8)(27:24)(35:7)(36:4)(36:21)(38:25)(58:17)(59:14)
(73:11)(73:24)(89:2)(114:7)(141:16)(142:16)(143:8)
(166:1)(185:5)(200:16)(201:5)
evidence  (8:21)(9:22)(10:24)(10:25)(11:4)(11:5)
(11:11)(11:23)(12:16)(12:17)(13:12)(13:18)(15:7)
(20:22)(20:23)(21:3)(21:6)(23:15)(23:23)(23:25)(24:7)
(26:14)(27:12)(27:24)(28:1)(28:2)(28:5)(32:5)(32:7)
(32:8)(34:3)(35:6)(36:4)(36:13)(37:20)(38:2)(39:14)
(39:18)(39:20)(41:16)(41:23)(44:13)(44:17)(54:1)(56:2)
(56:25)(69:4)(72:6)(84:10)(84:13)(84:15)(84:23)(85:10)
(87:7)(90:13)(99:7)(100:21)(100:22)(101:4)(101:13)
(137:25)(138:1)(138:2)(138:11)(139:25)(140:16)(147:6)

exactly                                                    flesh                    226

(148:17) (150:9) (150:10) (150:13) (150:18) (150:24) (154:7)
(157:15) (157:18) (160:24) (161:11) (161:12) (164:10)
(164:12) (164:13) (165:23) (165:24) (166:5) (166:8) (166:14)
(166:15) (166:22) (167:3) (167:4) (167:13) (168:22) (169:14)
(171:14) (171:24) (172:1) (172:11) (175:9) (175:13) (175:16)
(179:19) (179:20) (179:23) (183:13) (194:18) (197:3) (205:3)
(205:22) (207:8) (207:10) (209:10) (211:7) (211:20) (216:8)
exactly   (31:21) (76:1) (76:9) (78:10) (140:14) (146:19)
(148:13) (158:18) (163:3) (163:24) (165:8) (173:9) (192:4)
(200:16) (212:15)
examination   (9:14) (45:15) (97:18) (106:7) (109:18)
(113:15) (118:5) (124:18) (182:6)
examiner   (16:14) (142:17) (142:23) (143:5)
example   (16:5) (17:5) (18:20) (19:12) (20:19) (25:1)
(32:23) (37:9) (37:13) (38:9) (55:17) (128:24) (136:7)
(136:24) (142:8) (143:18) (144:9) (144:12) (169:15)
examples   (52:23)
except   (35:21) (115:25) (142:16) (217:10)
exception   (110:19) (116:5)
excited   (111:10)
exclusive   (17:16)
excuse   (38:11) (38:23) (68:17) (69:6) (86:12) (98:6)
(103:17) (108:11) (109:23) (115:15) (116:16) (205:19)
(215:10)
excused   (3:10) (3:12) (3:15) (3:17) (3:20) (3:22) (104:14)
(107:24) (108:11)
excuses   (69:22)
executed   (138:22)
exercise   (15:6) (37:3)
exhibits   (216:14)
existing   (217:7)
exists   (64:19)
exits   (83:5) (91:19) (104:5) (107:25) (111:19) (115:17)
(119:14) (213:23)
expect   (73:6) (95:10) (155:7) (182:11)
expectation   (148:4)
expected   (67:10)
expert   (64:17) (66:19) (66:25) (67:10) (67:13) (67:20)
experts   (67:6)
expires   (216:22) (217:20)
explain   (7:11) (7:13) (95:2) (95:11) (124:24) (171:8)
(183:11) (190:5) (195:21)
explained   (46:3) (86:9) (125:15)
explaining   (66:13)
explains   (6:4) (92:25) (117:10) (121:9)
express   (47:5) (47:6)
expressed   (83:19) (83:22)
expression   (12:19)
expressions   (185:9)
extent   (185:15) (189:7)
eye   (51:14)

**F**

face   (29:7) (33:7) (62:15) (192:21)
facial   (185:9)
facing   (189:18) (192:14)
fact   (21:11) (22:24) (99:19) (111:23) (149:2) (188:7)
factor   (18:17) (19:9) (19:11) (82:13) (136:23) (156:5)
(163:6)
factors   (83:21) (83:24) (136:24) (137:8)
facts   (22:12) (57:20) (64:21) (133:22) (134:24) (155:12)
(155:13) (156:16) (157:23) (164:9) (165:24) (192:22)
(195:15) (202:5) (203:1) (203:3) (203:23) (204:2) (206:1)
(206:2) (206:7)
fail   (16:2) (19:10) (19:12)
failed   (16:17)
fair   (11:6) (13:7) (14:17) (24:23) (43:2) (138:2) (141:17)
(141:22) (185:13) (185:25) (191:2) (192:24) (194:1) (194:25)
(195:2) (195:4) (197:14) (214:12)
fairly   (68:6)
faith   (48:1)
families   (101:22)
family   (116:9) (128:16) (128:18) (128:20) (131:4) (131:6)
(177:13) (192:11) (217:8)
family's   (192:10)
fantastic   (9:18) (22:4)
far   (24:11) (39:1) (133:16) (145:25) (150:21) (170:1)

(214:23)
fast   (153:20)
father   (22:3) (22:4)
fault   (129:4) (129:14)
favor   (65:18) (171:7) (183:10) (188:24)
favorite   (187:23)
fed   (166:17)
feel   (35:10) (45:25) (58:4) (59:24) (64:15) (69:18) (72:24)
(74:21) (79:25) (83:18) (84:4) (84:8) (95:13) (95:14) (96:2)
(97:22) (107:8) (110:17) (111:1) (115:6) (118:25) (134:23)
(135:5) (135:7) (194:20) (195:9) (196:21) (197:9) (206:9)
(206:11)
feeling   (42:23) (110:8) (114:16)
feelings   (45:25) (85:7) (113:24) (118:16) (125:8) (133:25)
(175:24)
felix   (3:8) (4:6) (92:7) (97:16)
fellow   (187:23)
felony   (19:1) (26:24) (48:23) (126:5) (126:10) (126:21)
felt   (38:5) (101:21) (156:3)
female   (162:8)
femoral   (53:12)
few   (38:11) (40:1) (86:14) (86:15) (182:9) (182:23)
fiction   (43:24)
fiddling   (56:13)
field   (67:14)
fifth   (14:23) (142:4) (145:17)
figuratively   (14:10)
figure   (62:18) (134:7) (173:17) (176:16) (211:2)
figured   (176:9) (176:10)
figuring   (17:1) (206:22)
filed   (139:21)
fill   (176:19) (183:6) (190:11) (193:3) (202:1) (213:15)
filled   (5:14) (74:13) (106:15) (110:1) (116:6) (118:10)
(119:20) (121:21)
filling   (110:2) (113:19) (125:19)
final   (167:18)
finally   (22:20) (188:1)
financial   (47:8) (217:7)
find   (12:14) (13:14) (15:14) (27:13) (28:5) (33:19) (33:20)
(35:8) (35:24) (36:3) (38:19) (45:24) (52:1) (54:4) (54:6)
(57:6) (72:5) (74:21) (142:19) (142:25) (146:24) (148:5)
(150:24) (151:24) (152:12) (152:16) (154:7) (156:1) (156:4)
(156:11) (156:20) (158:1) (159:8) (161:11) (164:11) (165:17)
(165:22) (167:21) (168:13) (169:20) (169:22) (170:14)
(174:21) (189:15) (194:2) (200:15) (200:17) (205:3) (207:6)
(207:23) (207:24)
finds   (21:23) (22:21) (55:5)
fine   (45:6) (45:9) (45:10) (92:12) (98:12) (116:23)
finger   (135:23)
finish   (192:25) (212:4)
finished   (214:1)
fire   (13:16) (55:13)
firearm   (16:12)
fired   (54:17)
fires   (55:8)
firing   (54:13)
first   (12:11) (12:21) (23:23) (25:8) (25:24) (27:7) (27:11)
(27:25) (40:21) (43:6) (46:12) (54:1) (70:19) (70:24) (71:8)
(71:14) (72:10) (74:13) (80:15) (81:22) (87:2) (97:22)
(106:12) (106:22) (110:5) (113:22) (118:13) (123:11) (128:1)
(128:25) (150:9) (150:14) (154:24) (159:9) (167:10) (171:7)
(171:12) (176:4) (201:25) (205:2) (205:22) (206:1) (207:3)
(210:14) (210:22) (212:2) (212:4)
first-degree   (19:25) (20:18) (21:2) (21:5) (22:1) (23:7)
(23:8) (23:19)
fist   (29:6)
fit   (12:19) (12:21) (20:21) (20:24) (23:11) (172:12)
(172:14)
five   (15:22) (23:13) (45:5) (52:18) (70:24) (99:22) (100:9)
(101:23) (106:24) (107:1) (110:7) (113:24) (118:15) (118:17)
(118:19) (156:10) (180:14) (180:15) (180:22) (181:4)
five-minute   (180:17) (213:22)
five-year   (71:9)
fix   (135:23)
fixing   (53:1)
fixture   (55:9)
flesh   (184:13)

HEATHER H. VEZINA, CSR

flip                                                          got                            227

flip  (125:23)(174:1)(194:15)
folks  (105:2)
follow  (11:1)(11:3)(13:2)(14:6)(15:18)(16:7)(17:10)
(17:11)(26:20)(39:10)(44:4)(46:21)(53:1)(57:17)(104:9)
(137:18)(141:25)(161:11)
following  (1:18)(1:20)(89:5)(99:6)(165:8)
follows  (9:13)(97:17)(106:6)(109:17)(113:14)(118:4)
(124:17)(217:11)
food  (166:17)
for  (3:6)(3:9)(3:10)(3:11)(3:12)(3:14)(3:15)(3:16)
(3:17)(3:19)(3:20)(3:21)(3:22)(5:11)(5:19)(10:5)
(12:17)(13:20)(15:21)(18:14)(18:20)(19:12)(20:18)
(20:23)(21:13)(23:8)(24:15)(24:17)(25:1)(26:3)(26:4)
(28:4)(28:9)(28:24)(29:4)(29:13)(31:13)(32:23)(33:4)
(36:22)(37:9)(37:13)(38:9)(38:11)(38:24)(40:10)(43:19)
(44:25)(47:4)(47:12)(47:21)(47:24)(48:17)(48:20)(49:2)
(49:21)(49:22)(52:16)(52:19)(55:19)(56:12)(56:14)
(57:13)(57:19)(59:23)(60:25)(61:1)(61:4)(62:17)(63:17)
(64:5)(64:19)(64:20)(65:5)(66:7)(66:9)(66:19)(67:11)
(68:17)(69:6)(69:23)(70:2)(70:14)(72:14)(76:5)(76:6)
(79:5)(79:15)(79:20)(81:4)(81:6)(81:7)(81:8)(81:9)
(81:15)(83:9)(83:13)(84:3)(85:14)(86:1)(87:1)(87:3)
(87:20)(88:6)(88:18)(88:22)(89:2)(89:4)(91:6)(91:14)
(91:24)(92:6)(92:13)(94:6)(97:12)(99:1)(101:8)(101:21)
(102:5)(103:17)(103:20)(103:21)(103:23)(104:7)(104:9)
(104:13)(104:16)(104:17)(104:20)(105:9)(106:11)(108:2)
(108:12)(108:19)(111:17)(111:22)(112:5)(112:7)(112:10)
(115:16)(115:20)(116:1)(116:12)(116:17)(116:19)(117:1)
(119:9)(119:17)(119:25)(120:9)(121:7)(124:4)(124:14)
(125:23)(126:10)(128:24)(129:14)(130:14)(131:5)
(132:17)(133:17)(134:1)(134:5)(134:7)(134:17)(136:7)
(136:14)(136:18)(136:24)(137:7)(137:8)(137:11)(138:22)
(142:8)(143:18)(144:9)(144:12)(150:18)(151:23)(152:25)
(153:19)(156:10)(162:15)(163:16)(167:15)(174:11)
(174:12)(174:16)(179:5)(179:6)(179:9)(181:4)(181:7)
(182:9)(182:19)(183:25)(184:20)(185:12)(185:19)
(185:21)(185:22)(186:20)(187:16)(188:2)(188:11)
(189:17)(190:5)(190:12)(190:19)(191:5)(192:17)(192:18)
(196:12)(199:4)(199:15)(201:18)(202:16)(203:15)(204:1)
(204:8)(210:7)(210:11)(212:3)(212:6)(212:14)(214:5)
(214:9)(214:14)(214:22)(215:7)(215:19)(216:5)(216:9)
foregoing  (216:7)
foreman  (148:21)(161:3)
forgot  (41:21)(146:19)(162:17)
form  (22:10)(102:15)(148:18)(148:21)
formal  (199:7)
formed  (50:1)(50:6)(51:13)(51:20)(103:1)
found  (20:20)(29:16)(31:12)(31:23)(32:22)(36:22)
(49:17)(59:23)(61:8)(70:2)(71:2)(71:17)(71:18)(72:15)
(74:24)(142:19)(147:6)(149:2)(149:25)(151:21)(152:7)
(155:25)(156:24)(158:23)(160:9)(167:11)(200:14)
(206:20)(211:10)
four  (52:6)(62:21)(110:10)(176:2)
fourth  (52:20)(56:6)
frank  (2:8)(2:22)
frankly  (10:16)(187:22)(190:4)(197:1)
free  (215:13)
friday  (46:5)
friends  (81:12)(84:2)
from  (5:7)(5:23)(8:18)(10:13)(16:16)(19:3)(20:3)
(25:9)(25:17)(28:5)(36:25)(41:24)(41:25)(43:13)(46:6)
(46:16)(52:17)(64:22)(65:1)(68:8)(70:8)(70:12)(72:5)
(74:2)(74:4)(78:6)(79:24)(80:12)(81:1)(81:4)(81:7)
(84:22)(86:18)(86:25)(87:14)(87:15)(91:10)(92:14)
(99:5)(103:18)(104:14)(105:16)(109:5)(112:24)(113:5)
(117:6)(120:24)(132:19)(142:21)(145:23)(150:21)
(150:24)(154:7)(156:10)(161:5)(161:11)(164:11)(166:22)
(167:1)(173:6)(177:12)(177:15)(177:17)(178:5)(178:7)
(186:9)(188:2)(188:23)(196:18)(203:8)(205:3)(206:22)
(215:10)
front  (56:16)(116:6)(125:17)(139:22)(173:11)(173:12)
(183:7)
fulfilling  (14:14)
fully  (60:24)(61:11)
fundamental  (12:24)(13:3)(20:25)(139:18)(142:2)
fundamentally  (13:7)
further  (29:14)(91:10)(91:11)(103:18)(104:15)(107:11)

(111:4)(115:9)(119:3)(182:17)(194:17)(214:3)(215:10)
(216:13)
future  (27:9)(27:17)(27:20)(27:21)(30:21)(32:1)
(32:15)(72:23)(75:7)(75:9)(75:15)(75:24)(76:3)(76:7)
(76:12)(76:23)(77:18)(78:22)(91:1)(154:1)(154:14)
(170:10)(206:8)(206:13)(208:3)(209:23)(210:4)(211:25)

---

## G

games  (48:14)
garfield  (1:7)
gave  (69:17)(82:3)(113:18)(151:18)
generally  (187:9)
genetics  (69:19)(196:16)(196:22)(197:3)(197:10)
gentleman  (18:10)(84:25)(96:16)(104:21)(123:21)(124:2)
gentlemen  (5:9)(14:12)(83:7)(86:2)(92:4)(105:13)
(112:14)(120:17)(214:15)(215:4)
get  (10:6)(12:5)(15:21)(19:6)(22:11)(29:18)(32:13)
(33:2)(33:6)(43:12)(44:1)(45:7)(46:22)(50:7)(53:3)
(53:14)(58:12)(65:9)(69:8)(69:25)(71:24)(77:25)(78:6)
(86:24)(89:8)(90:24)(95:13)(113:4)(117:25)(127:17)
(132:24)(136:7)(137:17)(137:19)(151:24)(151:25)
(155:24)(156:11)(158:3)(159:11)(162:1)(162:2)(162:12)
(165:4)(165:10)(165:11)(165:14)(168:14)(170:14)
(170:18)(170:19)(171:4)(172:21)(172:22)(173:16)
(175:23)(176:19)(180:17)(181:1)(182:24)(183:18)(184:7)
(184:21)(191:12)(195:5)(196:2)(202:4)(203:7)(203:8)
(205:22)(208:9)(208:18)(210:10)(211:6)(213:7)
gets  (139:14)(161:5)(168:17)(208:14)
getting  (7:14)(41:1)(61:18)(61:21)(61:22)(104:20)
give  (6:21)(10:17)(16:5)(22:23)(44:16)(52:23)(53:20)
(53:21)(59:17)(66:8)(66:11)(76:6)(80:1)(81:20)(83:20)
(84:11)(84:14)(85:5)(90:11)(90:15)(93:20)(94:3)(109:1)
(123:1)(128:8)(128:11)(132:7)(134:12)(134:20)(135:9)
(135:17)(141:3)(143:12)(143:13)(152:14)(171:14)(176:2)
(177:22)(188:23)(191:17)(193:12)(196:7)(208:13)
given  (26:4)(67:2)(88:24)(106:24)(110:1)(149:2)
(156:13)(216:16)
gives  (7:7)
giving  (188:22)
glad  (16:14)
goal  (137:24)
goes  (13:19)(13:20)(15:8)(19:15)(22:21)(25:13)(29:14)
(33:1)(39:1)(53:19)(56:4)(57:9)(58:20)(82:3)
going  (7:1)(7:9)(7:10)(7:11)(7:13)(7:14)(7:18)(7:19)
(8:3)(11:8)(15:12)(15:13)(19:24)(20:12)(20:13)(22:10)
(22:11)(22:15)(27:3)(29:24)(29:25)(30:20)(31:25)(33:3)
(33:4)(33:21)(34:1)(34:8)(34:13)(36:4)(42:1)(46:8)
(48:11)(49:14)(50:15)(50:17)(51:8)(53:2)(60:13)(61:14)
(65:9)(66:8)(66:23)(67:8)(72:23)(76:13)(76:23)(77:3)
(77:6)(77:18)(78:21)(78:25)(79:5)(83:1)(86:4)(87:6)
(87:8)(87:11)(87:13)(87:23)(88:1)(89:17)(90:10)(90:12)
(90:18)(92:24)(94:13)(94:25)(95:2)(95:11)(95:12)(99:1)
(102:21)(103:17)(105:23)(106:1)(107:17)(109:11)
(109:12)(109:13)(111:6)(112:20)(113:4)(113:6)(113:12)
(115:15)(117:18)(123:10)(124:24)(137:17)(141:21)
(150:7)(150:25)(153:5)(158:7)(160:10)(162:3)(162:8)
(162:11)(162:12)(169:19)(171:14)(175:23)(176:13)
(176:23)(179:18)(180:12)(180:16)(181:15)(182:2)(182:8)
(182:10)(183:6)(183:8)(184:15)(184:17)(185:25)(196:1)
(196:10)(201:19)(203:7)(203:8)(207:5)(207:12)(208:2)
(208:5)(208:20)(208:21)(215:9)
gone  (26:11)(185:2)(211:15)
good  (5:5)(6:19)(8:6)(8:10)(8:24)(9:16)(22:6)(31:22)
(38:23)(45:11)(45:17)(45:18)(45:19)(47:20)(48:13)
(61:24)(68:3)(89:14)(92:13)(93:17)(96:8)(96:11)(96:14)
(97:1)(97:4)(97:7)(97:11)(97:20)(97:21)(104:3)(104:19)
(106:9)(106:10)(108:25)(109:1)(109:21)(112:5)(112:13)
(116:11)(116:24)(118:7)(119:5)(119:12)(122:19)(122:22)
(123:9)(123:19)(124:20)(124:23)(143:15)(147:24)(165:5)
(181:21)(185:12)(187:25)(190:18)(190:20)(190:21)
(201:24)(201:25)(203:9)(203:20)
gordon  (2:4)(8:9)(96:13)(109:12)(113:5)(113:17)
(117:17)(123:11)(162:14)
gossip  (132:25)
got  (7:21)(26:6)(33:9)(35:5)(37:8)(63:25)(68:11)
(68:13)(76:22)(86:22)(92:17)(93:6)(95:24)(97:24)(98:2)
(101:23)(105:1)(111:11)(121:6)(126:15)(129:3)(133:17)

gotcha                                                    hears                                    228

(133:23) (134:23) (142:12) (143:3) (144:16) (145:18)
(146:22) (150:14) (156:3) (156:12) (160:21) (161:18)
(165:11) (166:12) (166:14) (166:18) (169:18) (171:25)
(172:3) (173:5) (173:22) (175:6) (175:7) (178:1) (178:2)
(182:13) (182:22) (187:18) (187:19) (187:24) (188:10)
(192:10) (192:14) (192:15) (192:22) (197:3) (198:7) (201:7)
(201:9) (201:15) (202:2) (202:16) (202:19) (203:10) (203:23)
(207:6) (207:7) (207:10) (207:13) (208:24) (209:9) (212:3)
(213:6) (213:16)
gotcha   (41:1)
gotten   (52:25) (134:14)
government   (217:4)
governor   (174:11) (174:12)
grade   (126:10) (181:19)
graduated   (48:4) (48:5)
graduation   (48:6) (48:7)
grand   (178:12)
grant   (214:13)
granted   (104:14) (108:12) (112:5) (116:17) (120:1)
great   (174:13)
greater   (76:17)
green   (196:2) (208:9)
grocery   (29:24) (158:17) (162:6)
group   (5:25) (6:11) (46:4) (46:6) (93:7)
growing   (115:1)
guards   (30:15) (30:18) (159:22)
guess   (7:4) (42:12) (49:12) (50:22) (65:21) (66:13) (80:14)
(95:21) (104:16) (112:12) (120:2) (129:2) (162:1) (191:6)
(208:11) (211:19)
guessing   (154:4)
guide   (7:2) (7:4) (7:12) (94:19)
guilt   (46:14) (102:15) (103:1) (140:1)
guilt/innocence   (155:13) (212:15) (213:10)
guilty   (12:13) (12:14) (13:15) (15:14) (16:4) (16:21)
(19:16) (19:18) (19:19) (19:20) (20:12) (20:20) (24:25)
(25:4) (26:6) (29:16) (31:12) (31:23) (32:21) (32:22) (33:10)
(33:13) (33:19) (39:18) (42:16) (44:9) (52:1) (54:4) (54:7)
(57:7) (57:21) (59:23) (68:4) (68:6) (70:3) (71:2) (72:15)
(74:24) (78:20) (100:22) (140:5) (140:6) (140:7) (140:10)
(140:11) (142:25) (145:9) (145:13) (146:24) (147:7) (148:14)
(148:22) (149:2) (149:15) (149:22) (149:25) (150:6) (150:16)
(151:21) (151:24) (152:7) (152:12) (152:16) (155:25) (156:1)
(156:4) (156:11) (156:20) (156:24) (158:2) (158:24) (159:6)
(159:9) (160:9) (164:22) (167:11) (168:13) (174:21) (198:10)
(198:14) (198:19) (200:14) (200:17) (203:5) (204:6) (204:20)
(207:6) (207:24) (210:17) (210:18) (211:10)
gun   (18:1) (33:1) (33:2) (33:17) (38:23) (50:14) (51:1)
(51:10) (54:22) (54:24) (55:8) (55:13) (61:14) (62:15)
(62:23) (63:6) (142:11) (143:3) (162:9) (162:10) (162:11)
(162:21) (163:11)
gunman   (164:22)
guns   (54:14)
gunshot   (16:16) (142:19)
guy   (17:22) (18:5) (21:12) (21:22) (22:8) (22:20) (23:9)
(38:20) (149:8) (200:12) (207:13)
guys   (147:1) (147:6) (147:15) (149:3) (149:4) (149:19)

## H

had   (1:20) (6:12) (12:2) (37:14) (45:22) (48:14) (50:11)
(51:2) (63:24) (66:12) (80:15) (80:18) (81:22) (82:4) (82:13)
(90:2) (93:7) (100:9) (102:3) (110:14) (114:17) (122:12)
(149:22) (172:21) (178:18) (187:11) (187:17) (195:24)
(199:2) (199:5) (202:1) (205:19) (206:21) (206:25) (210:2)
(211:15) (211:20)
hadn't   (30:4) (54:5) (73:2)
hair   (15:11) (187:7)
halfway   (189:25)
hand   (6:12) (22:19) (93:10) (101:15) (122:15) (216:16)
handed   (74:12)
handley   (2:3) (8:5) (8:6) (8:19) (9:10) (9:11) (9:15) (9:19)
(18:13) (18:16) (41:5) (41:6) (45:3) (83:8) (83:10) (84:20)
(85:17) (91:11) (96:10) (96:11) (104:21) (104:25) (123:15)
(123:16) (123:24) (162:17) (164:15) (164:21) (214:6)
(214:18) (214:22) (215:19)
hands   (33:2) (162:10) (174:22)
happen   (7:2) (20:13) (21:5) (21:12) (26:5) (50:18) (89:10)
(200:7) (200:12)

happened   (101:19) (102:9) (114:11) (130:8) (132:22)
(144:7) (145:7) (203:10) (213:5)
happens   (12:3) (25:17) (147:13) (164:25) (165:1)
happy   (17:7)
hard   (78:9) (79:19) (81:3) (81:6) (81:10) (98:20) (98:23)
(167:22) (206:21) (206:25)
hardest   (98:9)
harm   (50:4)
harris   (130:9) (130:10)
harrison   (130:8) (130:10) (130:11)
harsh   (36:16)
harshly   (67:24) (68:5)
has   (6:3) (12:13) (13:1) (13:24) (14:9) (22:3) (22:9)
(34:23) (46:3) (51:25) (61:1) (70:2) (70:3) (71:2) (72:15)
(72:17) (72:19) (76:22) (77:25) (78:19) (80:9) (81:10)
(83:18) (84:8) (84:25) (92:20) (102:7) (104:14) (109:25)
(117:8) (128:2) (139:9) (139:19) (142:5) (148:11) (148:21)
(150:18) (152:21) (166:13) (167:19) (170:7) (184:4) (192:10)
(197:3) (198:7) (198:11) (199:18) (200:23) (213:16)
hasn't   (77:17)
hate   (103:5)
have   (5:8) (7:2) (11:2) (11:15) (12:9) (13:10) (13:25)
(14:13) (15:20) (15:22) (16:9) (16:10) (16:17) (16:24) (17:1)
(17:2) (17:4) (18:9) (19:7) (24:11) (24:18) (24:21) (26:14)
(27:5) (28:10) (28:21) (30:19) (30:25) (31:19) (33:6) (33:7)
(33:20) (33:24) (33:25) (34:25) (35:6) (41:7) (41:15) (42:2)
(43:7) (43:24) (43:25) (44:19) (46:22) (47:17) (47:25)
(48:12) (49:18) (50:14) (52:4) (52:9) (53:8) (53:10) (54:18)
(55:12) (55:17) (56:7) (56:9) (56:10) (58:17) (60:16) (64:22)
(65:17) (66:1) (67:15) (68:2) (70:4) (70:13) (70:21) (71:18)
(73:9) (73:18) (73:19) (74:1) (74:9) (74:24) (75:8) (76:18)
(77:23) (79:9) (80:19) (81:21) (83:8) (83:13) (86:1) (88:22)
(89:9) (92:2) (93:20) (94:5) (94:13) (94:16) (97:24) (98:10)
(99:4) (99:19) (100:20) (101:3) (101:6) (101:15) (102:3)
(102:7) (102:20) (102:25) (103:12) (104:3) (104:6) (104:12)
(105:11) (108:2) (108:22) (109:22) (110:8) (111:4) (111:11)
(112:10) (113:9) (113:12) (114:14) (116:24) (117:19) (119:3)
(119:4) (120:14) (120:16) (122:23) (126:5) (126:25) (130:15)
(131:15) (131:25) (132:11) (132:15) (132:21) (134:14)
(135:14) (136:22) (136:25) (137:18) (137:25) (138:3)
(138:11) (138:15) (139:3) (139:6) (139:10) (139:19) (139:21)
(139:25) (141:10) (142:20) (142:25) (143:7) (143:16) (144:8)
(144:13) (145:21) (146:4) (147:13) (147:19) (150:7) (151:21)
(152:20) (153:6) (155:14) (155:25) (156:23) (157:7) (160:13)
(160:17) (162:9) (162:10) (162:23) (164:9) (168:21) (168:25)
(169:13) (170:22) (171:2) (171:13) (171:23) (172:3) (172:10)
(172:11) (172:18) (172:25) (173:2) (173:10) (173:21) (174:3)
(174:13) (175:3) (176:10) (176:24) (177:7) (177:13) (178:11)
(178:13) (178:20) (180:6) (181:9) (181:12) (182:9) (182:10)
(183:19) (185:2) (185:12) (185:19) (185:21) (185:22)
(187:10) (188:5) (188:21) (189:18) (189:19) (189:23)
(190:19) (190:20) (191:7) (191:8) (192:9) (195:22) (195:24)
(197:5) (197:12) (198:1) (198:4) (198:17) (198:21) (198:25)
(201:5) (201:19) (203:3) (203:25) (204:9) (204:16) (204:19)
(204:23) (205:10) (205:21) (206:9) (206:16) (206:17) (207:8)
(207:12) (207:16) (208:5) (208:19) (209:15) (213:6) (214:1)
(214:3) (214:4) (215:3) (215:14) (217:7)
haven't   (13:23) (24:11) (26:12) (30:6) (36:2) (41:11)
(46:21) (55:10) (55:11) (57:24) (57:25) (82:9) (121:25)
(140:14) (140:15) (188:8) (204:2)
having   (16:6) (20:20) (27:12)
head   (14:18) (14:25) (15:16) (25:6) (26:13) (27:22) (32:6)
(34:16) (38:7) (49:25) (51:24) (53:20) (100:15) (125:16)
(160:23) (162:21) (163:12) (170:2) (173:17)
health   (64:16)
hear   (28:1) (29:23) (30:23) (31:21) (32:4) (33:4) (54:13)
(65:1) (66:24) (145:21) (150:8) (150:10) (150:17) (155:9)
(157:10) (157:18) (158:11) (158:12) (166:5) (166:15)
(166:19) (166:25) (167:1) (167:3) (167:4) (168:5) (168:24)
(169:1) (169:14) (169:19) (179:19) (182:11) (185:20)
(195:24) (202:10) (210:24) (211:3) (212:11)
heard   (1:19) (12:18) (13:4) (14:24) (21:3) (24:21) (27:25)
(36:2) (41:7) (41:11) (41:15) (41:18) (42:21) (45:22) (64:22)
(84:19) (139:11) (140:14) (140:15) (147:6) (155:13) (160:13)
(188:9) (204:2) (210:1) (211:20)
hearing   (150:12) (207:22)
hears   (100:21)

heat                                                          i'm                    229

| | |
|---|---|
| **heat**  (133:4) (135:11) | **his**  (15:2) (22:4) (22:7) (22:14) (22:15) (22:19) (22:23) |

**heat**  (133:4) (135:11)
**heather**  (5:11) (92:6) (120:19) (216:4) (216:19) (217:17)
**he'd**  (48:14) (210:3)
**held**  (1:21) (33:13)
**he'll**  (30:1) (113:7) (208:22)
**hello**  (9:1) (18:15) (123:16)
**help**  (15:13) (16:6) (146:9) (154:16) (172:17) (178:10)
(178:13)
**helped**  (33:17)
**helpful**  (211:24)
**helping**  (117:15)
**helpless**  (21:11)
**her**  (8:9) (29:5) (29:6) (33:2) (33:19) (96:10) (96:12)
(113:9) (116:7) (116:9) (123:17) (136:8) (136:9) (136:10)
(136:13) (162:5) (162:17) (162:25) (173:12) (173:13) (173:14)
**here**  (5:19) (6:5) (6:9) (7:13) (8:18) (9:24) (13:21) (18:10)
(25:12) (25:22) (29:5) (32:23) (33:3) (38:12) (39:22) (42:2)
(45:24) (46:1) (46:5) (47:4) (48:16) (56:7) (57:10) (58:24)
(67:5) (67:6) (70:10) (73:12) (73:24) (74:20) (82:4) (86:1)
(87:18) (89:20) (89:24) (90:14) (91:14) (91:21) (92:13)
(92:15) (92:24) (96:25) (97:23) (99:14) (99:23) (100:14)
(101:8) (102:23) (103:6) (103:17) (103:21) (105:2) (105:5)
(105:18) (105:21) (106:19) (107:17) (109:2) (109:7) (109:8)
(111:18) (112:10) (113:6) (115:16) (117:10) (117:15)
(117:18) (119:6) (120:11) (120:25) (121:6) (121:10) (121:11)
(121:14) (123:12) (123:21) (124:1) (124:6) (125:6) (125:7)
(126:4) (126:19) (132:21) (136:8) (137:24) (139:23) (140:2)
(140:18) (142:9) (142:10) (142:15) (143:3) (146:14) (147:12)
(147:13) (153:6) (154:6) (156:2) (156:12) (161:22) (162:15)
(164:10) (168:11) (168:18) (169:14) (173:11) (173:12)
(177:18) (178:20) (180:22) (182:24) (183:3) (183:19) (185:2)
(188:11) (190:6) (192:6) (198:3) (199:13) (199:16) (200:10)
(203:9) (212:11) (212:14) (212:17) (213:6) (215:2)
**hereby**  (216:6)
**here's**  (65:23) (156:19) (161:19) (162:11) (166:11) (167:2)
(167:9) (168:12) (168:18) (209:18) (210:23)
**he's**  (9:9) (13:12) (14:16) (18:5) (18:22) (19:18) (22:5)
(22:6) (22:8) (22:12) (22:13) (26:6) (29:16) (30:20) (30:21)
(31:8) (35:13) (38:20) (38:23) (76:24) (77:18) (78:21) (79:2)
(84:25) (85:5) (85:9) (85:12) (88:24) (89:16) (92:22) (105:1)
(108:5) (109:13) (113:1) (113:2) (113:6) (117:11) (121:6)
(124:11) (129:19) (137:23) (139:24) (140:4) (140:11)
(140:18) (145:9) (145:12) (148:14) (148:22) (149:15)
(149:22) (150:16) (152:7) (158:7) (159:6) (160:9) (160:10)
(160:18) (161:3) (166:16) (167:16) (170:5) (170:9) (184:17)
(199:3) (204:4) (207:11) (208:2) (208:21) (210:17) (212:23)
**hesitant**  (175:22)
**hesitate**  (125:2)
**hey**  (99:1) (103:6) (156:23) (172:9) (174:22)
**hide**  (33:7)
**high**  (48:1) (71:7) (187:1)
**higher**  (75:8)
**hijacking**  (100:3)
**hikel**  (2:4) (8:9) (8:10) (20:3) (96:13) (96:14) (106:1)
(106:3) (106:8) (106:22) (107:11) (108:1) (108:3) (108:16)
(109:13) (109:15) (109:19) (109:22) (109:25) (111:4)
(111:20) (111:21) (113:5) (113:8) (113:16) (113:17) (115:9)
(115:13) (115:18) (115:19) (116:7) (117:17) (117:22)
(117:23) (117:25) (118:6) (119:3) (119:8) (119:15) (119:16)
(120:6) (123:11) (123:13) (124:4) (124:13) (124:15) (124:19)
(127:22) (129:8) (135:8) (151:11) (151:14) (165:22) (175:19)
(175:22) (177:20) (180:10) (181:15) (182:13) (183:7)
(183:12) (214:10)
**him**  (6:3) (8:25) (13:14) (13:18) (15:7) (15:13) (15:14)
(16:13) (17:22) (17:23) (18:10) (20:20) (21:23) (22:5) (22:6)
(22:13) (22:19) (22:23) (31:12) (44:9) (48:9) (50:3) (50:4)
(53:6) (53:11) (53:20) (53:21) (54:4) (54:6) (81:13) (84:1)
(84:3) (92:21) (92:24) (97:2) (106:2) (108:13) (117:9)
(117:15) (121:7) (123:14) (124:7) (140:2) (142:10) (145:22)
(147:7) (151:24) (152:12) (152:14) (152:16) (154:23)
(155:20) (156:1) (156:7) (156:11) (156:20) (156:24) (158:23)
(159:8) (162:25) (166:17) (168:13) (174:21) (187:25) (188:1)
(188:5) (188:6) (188:10) (200:17) (207:6) (207:13) (210:7)
(212:3) (212:6) (214:16) (214:18) (214:20) (214:21) (214:25)
**hire**  (66:5) (67:13)
**hired**  (188:1)

**his**  (15:2) (22:4) (22:7) (22:14) (22:15) (22:19) (22:23)
(30:1) (30:25) (31:1) (31:8) (35:10) (35:11) (36:6) (36:7)
(38:15) (38:22) (48:14) (50:2) (52:9) (77:6) (84:22) (85:7)
(85:11) (90:16) (92:22) (108:4) (117:11) (117:25) (119:18)
(119:19) (119:20) (121:5) (129:4) (129:17) (140:20) (145:17)
(149:23) (155:15) (155:21) (158:24) (158:25) (159:14)
(159:16) (159:23) (166:17) (166:18) (166:19) (167:22)
(169:1) (169:2) (169:19) (170:3) (170:4) (170:15) (175:2)
(205:20) (209:6) (210:12) (214:10)
**history**  (30:25) (80:22) (83:25) (84:1) (116:9) (154:18)
(154:21) (154:22) (155:3) (155:7) (210:2) (210:13) (211:21)
**hit**  (55:14) (161:24) (162:3)
**hitler**  (110:19)
**hitting**  (20:5)
**hitzges**  (187:25)
**hobby**  (186:7) (187:7)
**hold**  (15:12) (43:19) (57:4) (59:2) (75:19) (77:13) (126:25)
(127:3) (139:1) (188:20)
**holding**  (22:18)
**holds**  (22:23)
**holdup**  (40:4)
**holly**  (2:18) (2:19)
**home**  (19:2) (19:14) (19:15) (32:13) (34:17) (149:4) (149:5)
(152:17) (208:14) (208:19) (208:20) (208:21) (208:23)
(208:24)
**homeowner**  (19:2)
**homicide**  (20:2) (55:18) (129:2)
**honest**  (72:25) (102:23) (206:21)
**honestly**  (41:18) (74:21) (75:18)
**honk**  (33:5)
**honor**  (9:11) (83:14) (83:18) (84:20) (85:9) (97:14) (104:8)
(106:3) (108:9) (108:16) (109:15) (113:8) (116:1) (116:14)
(117:23) (124:15) (214:9)
**honorable**  (1:21)
**hope**  (90:3) (151:23) (171:24)
**hoping**  (190:11)
**horn**  (33:5)
**horrible**  (98:11)
**hospital**  (22:12)
**hours**  (51:16)
**house**  (137:5) (149:8) (150:1)
**how**  (9:4) (9:16) (12:5) (12:6) (12:7) (15:25) (23:15) (24:5)
(25:14) (25:15) (25:20) (30:2) (30:21) (31:7) (38:15) (39:1)
(40:16) (40:21) (40:24) (42:7) (45:17) (51:5) (55:20) (59:1)
(64:14) (65:13) (74:21) (76:7) (77:9) (77:24) (80:22) (81:9)
(82:18) (85:8) (92:1) (92:10) (95:13) (95:14) (96:2) (97:22)
(99:21) (107:7) (108:24) (109:20) (110:17) (111:9) (112:11)
(115:24) (116:22) (120:12) (124:21) (124:22) (128:10)
(129:22) (130:13) (133:16) (134:11) (154:11) (167:22)
(175:6) (177:23) (177:24) (181:18) (186:2) (186:22) (188:20)
(188:24) (190:13) (191:13) (191:16) (202:3) (206:10) (210:9)
**however**  (34:17) (63:15)
**huh**  (18:3)
**huh-uh**  (143:14) (185:19) (194:12) (196:5) (196:7) (203:18)
**human**  (10:22) (53:9) (53:16) (98:17) (161:16)
**hundreds**  (9:25)
**hung**  (11:20) (12:1) (39:25)
**hurst**  (199:24)
**hurt**  (17:23) (54:16) (55:7) (175:24)
**husband**  (22:4)
**hypothetical**  (16:8) (142:9)

## I

**i'd**  (5:11) (29:9) (30:25) (40:22) (67:15) (92:6) (111:12)
(117:1) (131:15) (144:6) (155:2) (163:2) (171:13) (176:24)
(195:24)
**idea**  (132:8)
**ideas**  (7:14) (77:24) (95:13) (125:8) (125:14) (133:25)
**i'll**  (6:19) (7:25) (10:17) (11:8) (12:5) (16:5) (39:22)
(40:9) (43:21) (58:24) (91:6) (93:17) (96:5) (98:7) (99:8)
(117:20) (125:3) (126:2) (137:20) (151:11) (153:18) (161:10)
(162:14) (176:18) (181:1) (182:9) (209:15) (214:20)
**illinois**  (84:6)
**illustration**  (168:12)
**i'm**  (5:5) (5:6) (5:7) (5:17) (5:22) (6:5) (9:17) (9:19)
(11:8) (11:10) (12:18) (13:3) (15:12) (15:13) (16:14) (18:2)
(19:1) (19:3) (21:3) (27:11) (33:3) (33:4) (41:1) (41:13)

imagine                                                                    job    230

(42:1) (45:6) (45:9) (45:18) (45:19) (47:12) (50:15) (50:20)
(52:15) (52:25) (53:1) (53:2) (56:12) (56:13) (56:14) (60:9)
(61:14) (61:15) (61:18) (61:21) (61:22) (61:24) (61:25)
(62:4) (62:18) (63:3) (66:13) (66:24) (68:10) (73:20) (73:23)
(74:15) (79:5) (79:13) (79:21) (81:5) (83:1) (86:13) (87:11)
(87:23) (88:21) (90:18) (91:3) (92:14) (92:24) (93:1) (94:5)
(95:21) (98:4) (98:17) (102:21) (103:17) (105:15) (105:16)
(105:17) (105:18) (106:1) (106:19) (108:11) (109:5) (109:6)
(109:7) (109:11) (109:23) (111:10) (112:23) (112:24)
(115:15) (116:3) (117:3) (117:5) (117:10) (117:15) (120:23)
(120:24) (120:25) (121:6) (121:10) (123:2) (124:22) (124:23)
(124:24) (125:3) (125:4) (130:11) (131:18) (135:6) (136:14)
(137:17) (148:6) (150:25) (153:17) (161:17) (161:23)
(162:11) (162:16) (169:19) (171:7) (171:22) (175:22)
(175:23) (182:8) (183:6) (183:8) (184:2) (185:20) (186:4)
(187:18) (187:21) (189:21) (190:10) (191:16) (191:22)
(192:3) (192:12) (193:17) (194:1) (194:2) (196:9) (196:20)
(197:1) (197:2) (199:8) (199:17) (200:11) (201:15) (201:19)
(201:20) (207:22) (208:12) (209:3) (210:11) (210:12)
(210:23) (211:19) (212:8) (212:9) (212:11) (212:14) (213:8)
(214:24) (215:9)
imagine   (21:4)
impartial   (138:2) (138:12) (214:12)
important   (15:24) (25:22) (35:17) (41:14) (60:19) (62:2)
(147:18) (156:20) (173:20) (176:16) (192:25) (213:11)
impose   (170:7)
imposed   (167:8)
imposition   (79:1)
impression   (185:11)
imprisonment   (167:7)
inaccurate   (44:2)
inappropriate   (32:4)
incident   (101:19)
include   (10:13) (30:3)
included   (216:10)
including   (36:5) (166:23)
index   (3:1) (4:1)
indicated   (39:25) (59:3) (82:6) (194:24)
indicating   (41:10) (89:21)
indicted   (12:13) (13:10)
indictment   (13:11) (14:1) (16:9) (16:10) (16:18) (41:10)
(55:23) (126:9) (127:7) (139:22) (139:25) (142:12) (142:21)
(144:18) (145:16) (198:1) (198:2) (198:18) (199:12) (199:14)
(200:8) (212:24) (213:2)
individual   (1:12) (3:1) (4:1) (11:3) (12:14) (16:11)
(19:22) (21:4) (32:20) (51:21) (53:17) (54:20) (63:20) (65:4)
(92:25) (101:8) (101:16) (102:16) (102:25) (103:2)
individually   (25:12)
individuals   (10:7) (14:21) (32:20) (60:5) (101:21) (133:8)
industrial   (2:9) (2:22) (216:21) (217:19)
inevitable   (135:24)
inevitably   (138:21)
inflict   (79:3)
influence   (60:5) (63:21)
information   (116:5)
ingested   (63:25)
in-laws   (128:20)
inmates   (30:6) (30:11) (77:4) (159:18) (159:19)
innocence   (13:23) (25:24) (46:14) (104:10) (139:21)
(145:17)
innocent   (13:22) (14:3) (14:16) (44:7) (102:25) (140:5)
(140:18) (145:12) (150:15) (201:1)
input   (64:18)
inquire   (180:12)
insane   (205:17)
inside   (151:17)
instance   (54:1) (54:4) (55:6) (55:12) (56:12) (64:6)
(70:14) (79:20) (135:2) (135:16)
instances   (64:18) (132:23) (157:7)
instead   (49:18) (54:6) (76:14) (93:1) (102:5) (117:11)
(121:10) (174:4) (188:22)
instrumental   (13:8)
insurance   (47:21) (47:23) (47:24)
intend   (23:2) (54:18) (153:5) (163:11)
intended   (52:9) (58:14) (161:15) (173:23)
intent   (19:24) (20:7) (50:2) (50:6) (50:12) (50:22) (51:2)
(51:11) (51:13) (51:20) (60:22) (61:2) (155:22)

intention   (53:10) (125:5) (125:6)
intentional   (17:20) (17:24) (18:17) (18:22) (18:23)
(18:25) (19:8) (19:12) (19:20) (20:7) (21:10) (22:1) (25:1)
(49:1) (49:18) (52:7) (56:9) (57:5) (70:3) (70:4) (74:25)
(82:19) (136:25) (137:9) (173:5) (205:11) (205:13) (206:4)
(206:11)
intentionally   (16:2) (18:9) (19:2) (19:3) (26:23) (31:23)
(49:24) (52:15) (53:18) (54:2) (54:6) (55:11) (56:17) (57:13)
(61:9) (62:5) (62:6) (62:18) (63:6) (71:19) (72:20) (75:5)
(75:6) (137:4) (137:7) (155:15) (156:7) (156:21) (173:22)
(184:5) (207:25)
interested   (199:8)
interesting   (10:5) (37:5) (39:23)
interview   (182:2)
into   (12:6) (19:1) (20:20) (20:23) (22:22) (25:11) (25:13)
(25:23) (26:11) (27:3) (35:14) (36:3) (36:14) (36:21) (36:25)
(43:17) (43:18) (46:5) (54:14) (54:23) (55:8) (56:14) (64:6)
(69:11) (71:24) (72:9) (75:24) (79:13) (83:16) (90:25)
(113:4) (125:18) (140:24) (142:17) (147:9) (148:23) (152:17)
(156:22) (165:23) (173:16) (174:12) (182:24) (191:12)
(200:18) (204:22) (210:10)
intoxicated   (63:18) (63:24) (64:1) (64:5) (80:10) (193:15)
(194:23)
intoxication   (37:14) (37:16) (37:20) (63:10) (80:9) (85:9)
(193:9) (193:14) (193:18) (194:3) (194:4) (194:6) (194:8)
(194:18)
introduce   (8:2) (96:4) (123:10)
introduced   (137:23)
invasive   (189:8) (189:15) (189:17) (189:19)
involuntarily   (64:5)
involve   (10:22)
involved   (7:9) (46:14) (70:23) (94:1) (95:16) (123:6)
(171:4)
irrelevant   (84:13)
isn't   (29:14) (42:24) (104:17) (152:16) (168:21) (169:16)
issue   (27:8) (27:9) (27:18) (32:16) (32:17) (33:23) (34:11)
(35:1) (41:4) (50:24) (58:20) (64:3) (69:8) (70:8) (72:4)
(72:14) (75:22) (75:24) (78:14) (80:8) (80:22) (82:2) (82:12)
(138:12) (138:13) (150:20) (155:11) (157:14) (161:1) (161:2)
(164:23) (167:18) (168:22) (169:7) (169:9) (209:20) (212:10)
issues   (7:9) (25:13) (25:18) (25:21) (39:3) (39:19) (44:22)
(46:16) (48:16) (58:21) (70:10) (71:16) (72:3) (74:10)
(74:24) (85:1) (94:23) (95:16) (100:25) (101:4) (101:7)
(137:16) (137:17) (138:9) (138:14) (152:15) (152:19)
(155:24) (156:2) (156:12) (170:23) (175:4) (182:24) (183:3)
(196:11) (203:17) (206:10)
its   (72:9)
it's   (7:20) (10:4) (12:7) (12:8) (12:20) (12:23) (12:24)
(13:17) (17:5) (17:18) (17:21) (18:10) (18:18) (20:6) (20:25)
(21:17) (22:14) (23:8) (23:14) (24:16) (24:17) (24:22)
(25:15) (26:10) (27:3) (28:21) (29:10) (30:19) (32:13)
(34:24) (35:4) (35:5) (36:16) (36:18) (36:19) (36:20) (37:10)
(37:22) (38:25) (40:14) (42:3) (42:13) (42:23) (42:24)
(43:15) (46:8) (47:16) (50:5) (50:25) (51:14) (52:2) (56:20)
(57:2) (59:14) (61:17) (62:1) (69:7) (73:18) (76:17) (92:18)
(93:4) (94:4) (98:20) (98:22) (98:25) (99:2) (99:17) (99:23)
(100:1) (100:6) (100:13) (100:18) (101:24) (102:6) (121:15)
(129:22) (131:14) (132:4) (133:2) (135:16) (136:15) (140:20)
(142:9) (144:7) (144:9) (148:16) (151:8) (151:9) (152:25)
(153:5) (153:13) (153:16) (153:19) (161:20) (162:8) (167:18)
(167:21) (168:9) (169:4) (169:5) (169:19) (169:21) (173:20)
(176:16) (184:4) (184:15) (185:15) (189:13) (190:20) (192:17)
(192:18) (193:15) (193:21) (195:4) (201:15) (201:24)
(205:16) (206:22) (207:20)
itself   (30:19) (182:25)
i've   (18:10) (24:21) (33:10) (35:22) (41:18) (42:21)
(47:10) (52:25) (61:19) (73:24) (74:8) (74:18) (79:18)
(84:24) (97:24) (98:2) (99:11) (99:14) (101:23) (125:14)
(126:5) (133:8) (136:12) (145:18) (161:18) (167:16) (167:18)
(170:23) (182:22) (187:19) (202:2) (206:21) (206:25)

J

jail   (128:3) (158:9) (158:10)
jailers   (77:5)
james   (1:7) (9:6) (13:21) (45:20) (97:9) (124:11)
janitors   (30:15)
job   (89:9) (191:23) (191:25)

HEATHER H. VEZINA, CSR

john                                                    law                                231

john  (3:5)(4:8)(5:6)(5:12)(9:12)
jose  (104:24)
jot  (131:15)
juanita's  (187:16)
judge  (1:21)(5:7)(5:22)(5:23)(5:24)(6:10)(9:18)
(45:13)(46:3)(77:20)(87:6)(88:2)(88:19)(89:9)(90:11)
(90:15)(91:4)(92:14)(92:16)(92:20)(93:1)(93:6)(98:20)
(98:24)(101:6)(103:13)(105:4)(105:15)(105:16)(105:17)
(109:5)(109:6)(109:25)(111:21)(112:23)(112:24)(112:25)
(113:18)(117:3)(117:5)(117:8)(117:11)(119:16)(120:24)
(120:25)(121:1)(121:4)(121:10)(121:18)(122:12)(137:22)
(138:15)(147:2)(147:3)(147:4)(147:10)(149:3)(149:17)
(149:22)(151:11)(151:18)(161:6)(170:7)(180:14)(183:2)
(213:19)
judgment  (98:16)(99:6)
judgments  (21:7)
judicial  (68:8)
july  (87:24)(199:20)
jump  (78:15)(125:18)
jumped  (27:2)
june  (1:18)(3:3)(200:3)
juries  (153:6)
juror  (3:4)(4:4)(5:12)(6:13)(7:4)(10:11)(10:12)(11:2)
(11:9)(13:1)(13:11)(16:6)(16:20)(21:1)(24:20)(27:1)
(35:17)(46:1)(65:15)(83:18)(84:7)(84:9)(84:10)(84:15)
(85:21)(86:5)(88:20)(91:24)(92:7)(93:11)(94:19)(97:23)
(99:6)(104:9)(105:9)(108:4)(108:19)(109:4)(111:22)
(112:7)(112:21)(115:20)(116:15)(116:19)(117:2)(119:17)
(119:24)(120:9)(120:20)(122:16)(125:7)(138:5)(140:24)
(142:15)(146:4)(147:14)(148:4)(148:20)(151:20)(153:9)
(153:25)(154:13)(154:16)(155:12)(156:14)(164:8)(169:1)
(169:23)(174:21)(178:11)(179:12)(179:22)(180:10)
(180:12)(181:7)(202:3)(205:25)(214:9)(214:12)
jurors  (3:1)(4:1)(46:4)(46:7)(64:23)(71:18)(72:17)
(72:23)(73:21)(78:6)(138:2)(138:6)(138:9)(138:12)
(146:21)(147:13)(157:1)(169:16)(183:3)
juror's  (116:4)
jury  (5:22)(6:4)(7:2)(9:21)(10:8)(10:11)(10:13)
(10:19)(11:13)(11:19)(11:20)(12:1)(12:5)(15:6)(20:10)
(20:19)(23:9)(25:13)(25:14)(25:18)(39:24)(39:25)(40:1)
(41:21)(51:25)(52:1)(54:4)(55:4)(56:2)(63:16)(71:2)
(71:14)(72:2)(74:23)(76:9)(77:16)(84:8)(86:8)(86:18)
(87:3)(87:15)(88:3)(88:6)(88:13)(88:18)(90:16)(91:4)
(92:21)(99:11)(99:18)(99:19)(100:8)(100:21)(103:18)
(104:15)(105:17)(109:6)(112:25)(113:3)(117:9)(117:16)
(121:2)(121:7)(121:16)(147:4)(167:15)(178:12)(207:23)
(209:19)(212:11)(215:10)
jury's  (71:12)
just  (6:19)(7:23)(7:24)(10:16)(11:22)(13:17)(15:10)
(17:14)(17:22)(17:23)(19:15)(21:17)(21:20)(22:2)(22:8)
(22:11)(23:8)(25:15)(26:11)(29:6)(30:11)(31:3)(31:16)
(31:23)(32:20)(33:8)(38:16)(38:17)(38:23)(39:22)
(43:15)(44:1)(44:3)(45:23)(46:8)(48:4)(48:5)(50:4)
(52:2)(53:4)(56:15)(57:24)(58:25)(61:4)(69:22)(74:20)
(78:15)(83:2)(83:3)(86:1)(86:8)(91:6)(92:15)(93:17)
(93:19)(94:12)(96:2)(97:25)(98:11)(98:25)(99:6)
(102:22)(102:23)(103:6)(103:21)(105:24)(106:1)(106:11)
(107:23)(108:22)(109:11)(110:1)(113:4)(113:18)(116:24)
(119:6)(120:14)(120:15)(122:22)(123:10)(124:24)(125:7)
(125:18)(125:24)(126:15)(130:25)(131:4)(131:14)
(131:15)(132:2)(132:11)(133:2)(133:6)(133:8)(133:18)
(136:12)(139:11)(153:7)(154:3)(154:22)(155:2)(156:4)
(156:10)(159:7)(161:10)(164:22)(165:2)(167:17)(171:17)
(171:25)(173:12)(174:9)(175:19)(176:7)(176:8)(176:9)
(176:14)(176:18)(176:19)(177:3)(179:18)(181:8)(181:12)
(181:15)(183:24)(184:21)(188:1)(189:3)(189:19)(190:10)
(190:16)(191:12)(193:4)(194:15)(195:4)(196:6)(197:20)
(200:11)(203:12)(203:17)(203:20)(204:12)(206:6)
(206:20)(208:8)(208:13)(210:11)(211:13)(212:19)(213:7)
(214:21)(215:3)
just any  (131:3)
justice  (43:4)(68:3)(191:1)
justification  (69:22)(205:19)
justify  (40:16)(68:20)(68:25)
justifying  (65:11)

## K

karen  (3:13)(4:5)(109:4)(109:16)
keep  (90:7)(130:18)(146:2)(157:8)(169:18)(174:15)
(174:17)
keri  (2:20)(9:3)(45:20)(97:6)(124:8)
key  (51:11)
kid  (21:23)
kiddos  (116:9)
kids  (101:23)
kill  (19:2)(22:25)(23:2)(33:8)(54:16)(56:16)(75:5)
(136:8)(136:19)(136:20)(137:4)(137:6)(155:18)(155:22)
(161:15)(162:22)(173:11)(173:12)(173:13)(205:18)
killed  (16:13)(17:22)(18:9)(26:23)(33:11)(129:3)
(133:3)(134:14)(134:25)(136:10)(142:10)(145:1)(166:18)
(170:13)(173:14)(205:12)(206:4)(207:25)
killer  (206:4)
killing  (19:3)(62:6)(101:16)(136:25)(156:21)(173:5)
kills  (55:10)(62:18)
kind  (7:1)(7:7)(12:10)(18:18)(24:5)(25:15)(43:8)
(50:9)(61:18)(68:11)(70:14)(78:9)(88:23)(89:17)
(111:12)(126:6)(132:5)(133:18)(137:8)(138:11)(146:7)
(154:8)(154:19)(178:20)(179:3)(181:15)(185:10)
(185:13)(190:10)(205:18)(206:6)
kinds  (30:18)(166:15)
king  (49:2)(49:3)
kitchen  (32:24)
klif  (188:8)
knee  (156:8)
kneecap  (53:2)(53:7)(53:12)(155:21)
knew  (34:8)(52:10)(89:25)(215:16)
knife  (143:5)
know  (6:22)(14:11)(21:24)(29:11)(30:23)(31:.2)(35:19)
(35:21)(35:23)(37:8)(37:12)(37:15)(38:15)(38:17)
(38:22)(40:16)(40:24)(42:12)(42:16)(42:17)(42:18)
(42:19)(43:1)(43:5)(43:16)(43:25)(49:5)(49:6)(50:11)
(50:12)(51:5)(56:13)(58:11)(59:6)(59:12)(59:13)(59:14)
(60:8)(60:11)(61:13)(61:14)(61:15)(61:17)(61:18)
(61:21)(62:8)(62:14)(62:23)(63:5)(64:9)(64:25)(65:4)
(65:7)(65:10)(65:13)(65:22)(65:23)(65:25)(66:1)(66:7)
(66:14)(66:15)(66:19)(67:15)(67:16)(68:2)(68:3)(68:5)
(68:6)(68:20)(69:7)(70:15)(70:21)(73:5)(73:9)(73:11)
(73:19)(73:23)(74:1)(74:2)(74:15)(75:9)(75:11)(76:16)
(76:21)(79:10)(79:15)(81:9)(81:13)(81:18)(82:16)
(82:18)(82:19)(87:13)(89:8)(89:9)(89:21)(90:1)(91:2)
(93:23)(94:4)(94:11)(95:7)(95:10)(95:13)(95:25)(99:1)
(100:5)(101:22)(101:23)(102:2)(102:4)(102:7)(110:19)
(113:12)(115:24)(116:9)(121:25)(125:5)(127:18)(128:2)
(128:10)(130:18)(130:25)(131:5)(131:15)(131:20)
(131:21)(132:1)(132:8)(132:10)(132:11)(132:15)(132:16)
(132:21)(132:22)(132:24)(133:7)(133:8)(133:14)(133:16)
(133:22)(134:20)(135:3)(135:14)(136:8)(137:2)(138:20)
(140:2)(140:13)(141:20)(144:12)(144:25)(153:13)
(153:15)(154:1)(154:17)(154:20)(156:24)(161:24)
(161:25)(162:2)(169:24)(171:1)(171:3)(171:4)(171:23)
(174:2)(174:12)(176:5)(176:9)(178:15)(178:16)(182:14)
(183:2)(183:4)(183:7)(184:25)(185:5)(185:6)(189:6)
(189:13)(190:8)(190:15)(191:13)(191:16)(195:23)
(202:16)(203:23)(204:4)(204:5)(204:7)(206:9)(208:11)
(208:12)(209:1)(209:20)(209:21)(210:17)(212:7)
knowing  (50:14)(50:17)(56:9)(90:10)(133:22)
knowingly  (52:8)(52:14)(52:16)(53:8)(54:18)(55:11)
(56:17)(63:24)
knowledge  (217:7)

## L

lack  (83:25)(132:17)
ladies  (5:9)(83:6)(86:2)(92:4)(96:15)(105:13)(112:14)
(120:17)(123:20)(124:1)(214:15)(215:4)
lake  (2:18)(2:19)
lane  (2:17)
last  (34:25)(48:4)(70:7)(87:24)(125:23)(125:25)
(126:3)(178:9)(193:8)(196:14)(196:15)(196:17)
lastly  (82:2)
laugh  (136:9)
law  (2:13)(2:17)(7:8)(7:13)(7:15)(11:1)(11:3)(12:4)
(12:25)(13:2)(13:3)(15:17)(15:22)(16:3)(16:7)(17:10)

lawmakers                                                              magic                    232

(17:11) (20:25) (26:20) (31:10) (33:16) (33:18) (37:15)
(39:6) (39:10) (44:4) (46:14) (46:21) (49:17) (51:13) (51:19)
(53:23) (53:25) (56:1) (63:10) (63:12) (63:15) (63:20)
(90:15) (94:22) (95:2) (95:15) (99:7) (102:24) (114:21)
(125:9) (125:11) (125:14) (136:2) (136:17) (137:1) (137:9)
(138:16) (139:17) (140:25) (156:14) (157:21) (161:20)
(164:5) (168:8) (168:9) (172:24) (174:14) (174:15) (177:7)
(177:14) (179:22) (189:20) (193:8) (193:11) (193:13)
(193:14) (194:5) (194:6) (194:17) (194:20) (194:22) (194:23)
(194:24) (194:25) (202:9) (202:10) (205:14) (205:19)
(205:25) (209:21) (209:22)
lawmakers  (28:4)
laws  (13:6) (13:9) (14:6) (17:11) (28:3) (67:22) (67:23)
lawyer  (161:18)
lawyers  (9:5) (43:7) (43:12) (141:3) (179:17)
lead  (36:9) (101:4) (101:13) (138:2) (138:11) (138:21)
leader  (22:6)
lean  (65:10)
learn  (202:3)
least  (38:2) (40:12) (40:21) (60:8) (114:18) (123:23)
(129:24) (129:25) (130:16) (214:23)
leave  (34:2) (53:1) (83:2) (103:22) (104:20) (107:23)
(119:7) (162:18) (163:17) (163:23) (176:20) (180:24)
leaving  (53:6)
left  (41:21) (89:24) (126:14) (136:8) (149:4) (149:5)
(153:9) (162:8) (176:4) (176:8) (176:9) (186:25) (188:8)
left-hand  (68:13)
leg  (141:3) (143:13)
legal  (126:10) (127:8)
legal-minded  (191:17)
legislators  (154:6) (168:4)
legislature  (76:22) (160:8)
length  (133:24)
leon  (187:24) (188:3) (188:8) (188:9)
less  (20:1)
lessens  (35:11) (36:18)
lesser  (52:5) (57:23) (58:8) (82:8)
lesser-included  (19:21) (23:19) (54:7) (55:23)
let  (7:1) (8:2) (12:4) (12:19) (12:21) (20:21) (20:24)
(21:25) (22:22) (23:10) (23:11) (40:20) (42:1) (45:19) (47:1)
(49:10) (50:24) (52:23) (69:16) (75:3) (75:13) (77:23)
(78:25) (81:11) (85:20) (94:3) (94:12) (96:4) (106:11)
(109:3) (116:3) (117:20) (122:22) (123:9) (125:17) (126:2)
(127:3) (127:17) (146:9) (151:3) (161:17) (173:10) (184:2)
(192:24) (202:8) (206:20) (210:9) (212:23) (213:1)
let's  (16:8) (16:13) (20:21) (20:22) (20:24) (24:13) (27:7)
(39:22) (47:4) (48:15) (59:19) (70:9) (71:16) (72:5) (78:15)
(80:8) (125:18) (131:4) (139:16) (146:3) (150:20) (160:24)
(170:25) (171:3) (171:22) (174:11) (178:20) (190:6) (190:8)
(199:11) (209:18) (213:7) (213:21)
level  (52:13) (145:20) (169:23)
levels  (62:21)
lick  (161:24) (161:25) (162:3)
lie  (102:21) (103:5) (141:21)
life  (16:1) (17:21) (17:25) (20:14) (21:14) (21:20) (22:7)
(23:13) (25:15) (25:19) (26:4) (26:19) (27:4) (27:10) (29:21)
(29:22) (30:1) (31:8) (32:11) (34:14) (35:14) (36:10) (36:25)
(38:21) (44:10) (47:18) (48:18) (52:18) (53:9) (53:16) (58:8)
(59:22) (59:25) (60:15) (60:21) (68:21) (70:24) (71:10)
(77:21) (78:1) (78:2) (79:25) (80:12) (80:22) (81:2) (81:10)
(84:1) (87:13) (134:12) (139:15) (152:8) (152:14) (156:10)
(158:4) (158:5) (158:23) (159:11) (159:14) (159:23) (160:10)
(161:6) (161:16) (165:2) (165:4) (167:6) (167:20) (168:14)
(169:24) (170:8) (170:16) (174:3) (175:3) (183:21) (183:22)
(183:25) (184:7) (184:21) (185:19) (185:21) (185:22) (190:1)
(190:17) (196:5) (208:1) (208:16)
lifetime  (59:20)
light  (55:9) (108:4) (111:23) (119:18) (126:17) (134:8)
like  (5:11) (7:21) (23:8) (27:17) (39:5) (40:2) (45:5)
(54:12) (55:5) (61:18) (64:5) (64:9) (73:18) (81:15) (81:21)
(89:13) (90:6) (90:25) (92:6) (93:5) (96:21) (99:15) (100:3)
(100:9) (100:14) (101:24) (108:14) (111:12) (112:6) (114:15)
(114:23) (117:1) (130:19) (131:6) (132:12) (133:24) (137:1)
(138:14) (138:20) (155:20) (156:2) (156:8) (164:16) (177:2)
(180:17) (183:3) (185:11) (185:12) (185:24) (188:3) (189:23)
(194:20) (197:9) (200:12) (202:4)
likelihood  (12:2) (76:12)

likely  (28:17) (28:21) (30:20) (76:7) (89:16) (153:11)
(153:21) (195:7)
line  (18:23) (136:19)
lines  (127:14)
listen  (40:21) (40:22) (40:25) (67:16) (71:3) (91:5)
(141:10)
listening  (67:18) (165:7) (188:9)
literally  (14:10) (22:16)
little  (7:12) (12:4) (12:5) (22:20) (31:17) (42:2) (75:13)
(92:15) (94:13) (94:17) (99:9) (105:24) (151:7) (168:17)
(168:19) (168:20) (182:17) (183:4) (186:1) (186:12) (187:12)
(187:16) (187:19) (188:15) (189:7) (189:15) (190:5) (190:12)
(195:21) (213:19)
live  (30:7) (30:9) (47:2) (158:14) (158:15) (162:6)
(174:23) (185:23)
lived  (31:8)
lives  (100:6) (101:24) (102:5) (160:6) (160:13)
living  (66:8)
load  (33:2)
loaded  (51:1)
local  (32:25)
locked  (17:2)
lockett  (84:6)
l-o-c-k-e-t-t  (84:6)
lollar  (2:12) (8:23) (8:24) (45:10) (45:12) (45:13) (45:16)
(45:20) (78:19) (83:12) (83:14) (83:17) (85:18) (86:14)
(88:25) (91:12) (96:25) (97:1) (103:12) (103:13) (103:15)
(104:12) (104:18) (105:4) (107:12) (108:7) (108:9) (111:5)
(111:6) (111:13) (112:1) (112:3) (115:11) (116:2) (116:14)
(119:4) (119:22) (119:23) (124:7) (212:23)
lollar's  (85:4)
long  (22:13) (77:24) (87:9) (99:21) (105:25) (107:18)
(109:11) (117:17) (129:22) (129:25) (130:13) (133:16)
(133:18) (134:10) (144:17) (178:17) (178:18) (186:2) (189:6)
(210:2)
longer  (87:10)
longest  (178:18)
long-standing  (13:6)
look  (10:12) (10:17) (14:15) (20:21) (20:22) (23:11)
(31:15) (35:7) (36:12) (36:13) (36:14) (36:16) (36:18)
(36:23) (37:20) (37:21) (38:14) (38:18) (38:25) (56:24)
(74:2) (74:23) (75:24) (76:4) (85:10) (90:3) (90:21) (101:1)
(138:9) (149:25) (150:20) (155:2) (162:5) (164:10) (165:15)
(166:9) (167:3) (170:9) (171:6) (175:19) (176:24) (176:25)
(177:6) (192:6) (198:22) (199:25) (201:19) (210:12)
looked  (151:19) (185:11) (198:5)
looking  (10:5) (20:5) (28:7) (28:9) (36:4) (36:7) (56:13)
(57:13) (58:6) (59:22) (72:4) (75:25) (76:16) (116:4)
(147:25) (167:16) (181:14) (192:15) (195:25) (199:4)
(199:15) (199:23)
lookout  (33:18)
looks  (89:13) (108:14) (112:6)
lose  (101:24)
losing  (100:6)
loss  (48:19) (192:18)
lost  (146:23)
lot  (12:7) (21:19) (21:21) (24:21) (25:11) (30:6) (30:25)
(31:7) (33:4) (35:2) (44:2) (51:6) (74:7) (101:18) (112:19)
(114:14) (128:10) (131:20) (131:22) (142:3) (182:10) (208:12)
lots  (132:11)
loud  (199:22)
louder  (182:10)
love  (43:24)
loves  (43:20)
low  (71:6)
lowered  (172:18)
lunch  (104:20)

## M

ma'am  (97:15) (97:21) (99:8) (99:20) (100:11) (100:17)
(101:11) (102:14) (103:3) (103:9) (108:22) (110:15) (112:11)
machine  (1:24)
mad  (136:7)
made  (10:20) (11:16) (27:1) (44:19) (64:25) (80:9) (107:21)
(110:19) (215:8)
made-up-mind  (169:14)
magic  (175:8)

maguire                                                    murder                    233

maguire  (3:5)(4:8)(5:4)(5:6)(5:12)(5:13)(5:15)(5:20)
(6:2)(6:6)(6:8)(6:15)(6:18)(6:23)(7:3)(7:6)(7:17)
(7:22)(8:4)(8:16)(9:7)(9:12)(9:16)(10:6)(18:15)(20:10)
(23:8)(24:6)(25:22)(34:17)(35:4)(44:3)(45:2)(45:6)
(45:9)(45:17)(45:22)(75:23)(78:18)(82:23)(83:1)(83:5)
(83:11)(85:23)(85:24)(85:25)(86:4)(86:6)(86:11)(86:17)
(86:20)(86:23)(87:4)(87:17)(87:19)(87:21)(87:25)(88:4)
(88:8)(88:12)(88:15)(88:21)(89:3)(89:6)(89:12)(89:15)
(89:19)(89:22)(89:25)(90:5)(90:8)(90:17)(90:20)(90:23)
(91:8)(91:14)(91:15)(91:17)(91:19)
maguire's  (84:21)
mailed  (201:25)
mainly  (74:7)
maintain  (14:2)(16:2)
make  (13:6)(14:3)(15:1)(16:6)(24:2)(27:19)(27:23)
(29:2)(31:19)(31:22)(33:21)(34:9)(36:25)(37:24)(39:8)
(40:14)(51:10)(54:9)(57:15)(61:24)(64:13)(69:6)(69:22)
(80:4)(81:16)(81:17)(81:18)(87:1)(90:12)(127:3)
(145:21)(148:10)(149:17)(149:23)(156:15)(157:10)
(157:19)(157:21)(161:23)(162:13)(172:23)(176:25)
(180:1)(184:2)(196:6)(197:1)(197:19)(197:22)(198:15)
(202:6)(205:8)(209:1)(209:9)(209:16)(210:5)(210:9)
(215:16)
makes  (18:18)(38:9)(68:10)(209:6)
making  (21:7)(34:3)(38:13)(70:1)(114:4)
mallon  (2:20)(9:3)(9:4)(45:20)(97:6)(97:7)(124:8)
(124:10)
man  (21:9)(22:2)(31:7)(39:5)(130:25)(137:21)(138:21)
(166:17)(202:2)(209:6)
manner  (176:11)(176:14)
manslaughter  (20:1)(52:13)(129:8)
many  (12:7)(25:14)(25:15)(64:22)(103:7)(128:13)
(128:14)(186:3)(186:22)
marked  (37:14)
married  (47:21)
mask  (33:6)(162:18)
matter  (10:19)(69:15)(173:13)(206:24)(210:1)(211:1)
matters  (92:23)(117:12)(121:5)
may  (10:17)(13:10)(13:15)(15:6)(17:6)(17:7)(19:10)
(19:11)(19:12)(19:17)(20:15)(27:24)(27:25)(30:10)
(31:11)(31:13)(35:13)(36:14)(36:16)(36:18)(38:19)
(41:14)(52:9)(53:10)(53:11)(54:13)(55:20)(60:4)(61:24)
(65:1)(89:9)(122:6)(125:4)(135:14)(143:7)(144:8)
(148:5)(154:23)(166:15)(166:19)(167:1)(167:3)(168:5)
(168:24)(172:18)(182:5)(188:21)(192:9)(194:18)(197:5)
(209:15)
maybe  (21:20)(21:22)(30:8)(31:8)(38:19)(38:20)(38:23)
(40:4)(43:23)(66:13)(87:9)(96:21)(99:22)(156:7)
(166:16)(166:17)(166:18)(191:16)
mckinney  (5:8)(5:23)(92:15)(105:16)(109:6)(112:24)
(117:6)(120:25)
mean  (10:10)(19:14)(26:5)(38:13)(38:17)(38:23)(50:9)
(57:24)(59:5)(61:12)(62:9)(63:23)(65:21)(68:19)(68:24)
(76:15)(86:7)(87:22)(98:18)(101:16)(103:5)(136:7)
(152:24)(154:21)(172:17)(181:22)(201:20)(204:10)
(209:6)(211:6)(211:10)
meaning  (55:7)(99:4)(126:20)(131:12)(134:2)(134:18)
(135:8)(172:11)
meaningful  (11:12)(44:16)(83:20)(85:11)
means  (19:15)(34:20)(49:12)(50:1)(78:10)(142:12)
(144:5)(153:9)(153:11)(153:21)(158:7)(161:19)(161:21)
(161:24)(161:25)(165:24)(166:8)(167:10)(168:11)
(169:12)(202:14)(202:21)(205:13)
meant  (17:22)(17:23)(64:12)(178:14)(190:4)
medical  (16:14)(22:12)(142:17)(142:23)(143:5)
meet  (119:12)(188:5)
member  (93:12)(122:17)(123:23)(177:13)
members  (6:17)(40:1)(93:15)(122:20)(123:22)(128:16)
(128:19)(131:6)(131:7)
mental  (52:5)(55:24)(56:5)(56:6)(64:16)
mentioned  (97:25)(115:23)(143:15)
mercer  (3:16)(4:9)(112:6)(112:8)(112:9)(112:12)
(112:16)(112:18)(112:22)(112:23)(113:10)(113:11)
(113:13)(113:17)(115:10)(115:15)(115:17)(116:16)
m-e-r-c-e-r  (112:22)
merely  (17:18)
mess  (207:13)

met  (5:25)(133:8)(188:6)
michael  (92:16)
middle  (42:11)(188:16)
midnight  (54:13)(54:14)(162:7)
might  (29:7)(31:15)(34:2)(40:9)(40:10)(41:7)(42:2)
(52:10)(54:18)(54:21)(55:14)(77:5)(79:23)(80:14)(85:6)
(96:22)(101:17)(178:20)(190:11)(190:23)(191:1)(217:9)
million  (15:3)
millions  (21:4)
mind  (10:20)(19:25)(40:24)(43:17)(43:18)(44:19)(47:1)
(49:1)(50:2)(51:2)(56:3)(64:4)(67:17)(69:25)(83:19)
(131:9)(135:21)(146:3)(156:23)(157:8)(157:19)(157:22)
(158:12)(169:3)(169:18)(169:23)(176:3)(180:1)(182:19)
(205:2)
minding  (29:5)
mine  (14:21)(68:11)
mini  (12:11)
minority  (40:2)(40:16)
minute  (83:4)(159:8)(186:1)(197:20)
minutes  (45:5)(180:16)(180:22)(181:4)
misunderstood  (188:21)
mitigate  (82:18)(195:23)
mitigates  (35:10)
mitigating  (35:12)(35:16)(35:25)(36:8)(36:18)(36:22)
(36:23)(36:24)(37:23)(38:6)(38:25)(40:14)(41:2)(63:16)
(82:13)(83:21)(83:24)(84:10)(84:13)(167:5)(167:21)
(167:23)(167:24)(168:6)(168:9)(168:11)(169:3)(169:21)
(169:22)(170:5)(170:15)
mitigation  (194:19)
mom  (166:17)
moment  (86:1)(151:23)(175:19)
money  (33:10)(52:25)(53:20)(53:21)(62:17)(102:3)
(137:8)(161:23)(162:1)(162:2)(162:12)(162:13)(162:14)
(162:22)(179:6)(179:9)
month  (5:14)(5:25)(46:6)(92:18)(93:5)(94:4)(121:15)
(121:25)
moral  (35:10)(36:7)(98:15)(99:4)(166:25)
more  (7:12)(18:23)(28:17)(28:21)(30:11)(30:20)(31:17)
(31:20)(36:10)(42:2)(43:20)(58:24)(59:25)(74:8)(89:16)
(95:1)(95:3)(115:9)(131:5)(131:12)(134:14)(135:14)
(137:15)(138:10)(144:13)(153:11)(153:21)(167:13)
(183:4)(183:18)(186:1)(191:19)(195:7)(197:20)(209:4)
morgan  (84:5)
morning  (5:5)(5:19)(8:6)(8:8)(8:10)(8:24)(9:16)
(45:17)(46:5)(73:3)(90:25)(92:2)(92:10)(96:8)(96:11)
(96:14)(97:1)(97:4)(97:7)(97:20)(97:21)(104:17)
morphine  (22:21)(22:22)
most  (60:4)(64:18)(96:20)(153:10)(182:13)
mother  (114:10)
motive  (172:25)(173:14)(173:21)
mouth  (80:24)(203:6)
mouthful  (35:2)
move  (32:15)(80:12)(81:1)(81:3)(81:6)(89:9)(108:3)
(111:21)(115:19)(119:16)(161:1)(161:9)(164:23)(167:14)
(204:22)
moved  (88:22)(89:8)
movie  (149:8)(150:1)
moving  (14:18)(14:25)(15:16)(20:20)(25:6)(26:13)
(27:22)(32:6)(34:16)(38:7)(49:25)(51:24)(79:24)
(100:15)(125:16)(160:23)(170:2)
much  (65:1)(91:14)(103:17)(103:25)(105:13)(107:24)
(111:17)(115:14)(115:16)(116:11)(119:9)(128:12)
multiple  (136:20)
murder  (10:18)(16:9)(17:13)(17:14)(17:15)(17:19)
(18:9)(18:11)(18:16)(18:17)(18:18)(18:20)(18:21)
(18:22)(18:23)(18:25)(19:5)(19:6)(19:8)(19:12)(19:17)
(19:19)(19:20)(19:23)(19:25)(20:3)(20:6)(20:7)(20:9)
(20:12)(20:16)(20:18)(21:2)(21:5)(21:10)(21:13)(22:1)
(23:7)(23:8)(23:10)(23:19)(24:13)(25:1)(25:4)(25:11)
(26:6)(29:1)(29:17)(31:13)(31:24)(33:10)(33:14)(33:19)
(42:4)(44:9)(48:21)(48:22)(48:25)(49:22)(49:23)(52:2)
(52:15)(52:16)(54:3)(54:5)(54:7)(55:19)(55:20)(57:5)
(57:7)(57:11)(59:24)(60:21)(61:1)(61:9)(64:16)(70:3)
(70:4)(71:14)(72:15)(74:10)(74:25)(78:20)(92:22)
(100:13)(100:23)(110:12)(113:3)(114:6)(114:17)(114:19)
(115:22)(117:10)(132:17)(132:18)(132:20)(132:22)
(133:11)(135:5)(135:15)(136:3)(136:4)(136:15)(136:22)

murdered                                                    numbered                                234

| | |
|---|---|
| (137:9) (137:11) (138:5) (151:9) (151:15) (151:22) (152:5) (155:25) (156:1) (156:4) (156:10) (156:11) (156:24) (158:2) (158:24) (159:9) (160:10) (162:25) (163:3) (163:4) (163:14) (167:12) (168:13) (185:3) (197:24) (198:14) (198:19) (204:10) (204:13) (207:24)<br>**murdered**  (16:11) (114:11) (136:4) (136:13)<br>**murderer**  (74:25) (79:2) (205:12) (206:12)<br>**murders**  (132:14) (132:16)<br>**murphy**  (3:21) (4:10) (120:2) (120:7) (120:10) (120:12) (120:13) (120:20) (120:21) (120:22) (120:23) (121:3) (121:8) (121:12) (121:14) (121:17) (121:20) (121:23) (122:2) (122:5) (122:10) (122:14) (122:18) (122:21) (122:25) (123:3) (123:8) (123:13) (124:16) (124:20) (124:24) (127:20) (129:7) (138:20) (146:5) (151:4) (151:14) (154:11) (156:20) (161:17) (165:8) (165:20) (165:21) (166:11) (168:3) (168:12) (168:25) (169:13) (171:23) (172:9) (177:7) (177:18) (177:19) (178:14) (178:19) (179:17) (180:16) (180:20) (180:23) (181:1) (181:8) (181:11) (181:13) (181:17) (181:20) (181:23) (181:25) (182:4) (182:8) (182:10) (182:22) (184:25) (186:1) (187:22) (188:16) (189:12) (192:3) (193:13) (193:21) (194:21) (196:12) (197:21) (198:23) (199:21) (202:10) (203:15) (205:9) (206:21) (207:22) (208:11) (209:5) (210:17) (212:9) (213:1) (213:9) (213:23) (215:1) (215:2) (215:6) (215:12) (215:15) (215:17) (215:18) (215:20)<br>**m-u-r-p-h-y**  (120:21)<br>**must**  (16:3) (130:15)<br>**myself**  (45:19) (123:6) (153:18) (187:12) (214:11) | (17:7) (17:21) (18:8) (18:11) (19:16) (19:18) (20:4) (20:6) (21:20) (22:11) (22:14) (24:13) (24:17) (24:19) (25:16) (26:25) (28:17) (28:21) (28:23) (29:10) (30:20) (31:25) (32:15) (33:23) (33:24) (34:24) (35:19) (35:24) (37:16) (37:19) (37:22) (38:5) (38:8) (39:18) (40:13) (42:4) (42:23) (45:1) (45:25) (46:7) (46:23) (47:16) (49:6) (49:17) (50:3) (50:4) (51:14) (52:2) (52:9) (53:10) (53:17) (54:1) (54:4) (54:18) (54:20) (55:7) (55:19) (56:15) (57:21) (58:9) (61:4) (61:24) (62:6) (62:19) (63:3) (63:10) (63:13) (63:21) (64:3) (64:23) (65:9) (66:1) (66:12) (66:13) (66:24) (67:5) (67:8) (72:24) (73:13) (73:23) (75:12) (75:14) (79:5) (80:6) (80:23) (81:15) (82:1) (82:3) (82:4) (82:13) (82:15) (83:10) (83:19) (83:20) (84:7) (84:12) (84:14) (84:15) (84:16) (87:9) (88:3) (88:5) (88:22) (89:16) (90:19) (91:4) (95:24) (98:4) (102:21) (110:23) (114:21) (115:24) (124:1) (125:6) (126:9) (127:7) (128:2) (130:10) (131:18) (134:4) (134:23) (136:4) (136:14) (140:7) (140:10) (140:11) (140:20) (141:14) (142:25) (145:13) (145:22) (148:6) (148:11) (150:16) (151:9) (152:25) (153:11) (153:19) (153:20) (153:22) (154:3) (156:25) (161:3) (161:14) (162:10) (162:18) (166:5) (167:21) (167:23) (170:4) (171:25) (172:6) (174:2) (174:3) (174:4) (174:7) (175:23) (176:13) (177:3) (177:5) (178:6) (183:21) (183:22) (183:24) (185:1) (190:23) (191:17) (191:22) (192:3) (192:12) (193:9) (193:13) (193:19) (194:2) (194:3) (194:8) (196:1) (196:14) (196:20) (197:2) (198:10) (198:14) (199:2) (199:8) (201:20) (203:5) (203:16) (203:19) (204:6) (205:16) (205:17) (206:22) (209:15) (210:12) (210:18) (211:7) (211:9) (212:8) (214:6) (214:11) (214:12)<br>**notation**  (11:17)<br>**note**  (76:13) (217:2)<br>**noted**  (85:22)<br>**notes**  (84:24) |

**N**

| | |
|---|---|
| **name**  (30:15) (41:21) (106:12) (113:17) (129:5) (162:17) (182:8)<br>**named**  (187:23)<br>**names**  (132:7) (187:14)<br>**name's**  (9:19)<br>**narcotic**  (81:23)<br>**narrow**  (131:4)<br>**nearly**  (196:14)<br>**necessarily**  (10:10) (19:15) (61:17) (72:24) (132:6)<br>**necessary**  (23:4) (189:5)<br>**need**  (8:1) (13:14) (30:22) (31:17) (31:20) (51:2) (113:12) (122:6) (125:18) (155:2) (161:24) (162:1) (162:13) (171:13) (180:15) (180:18) (183:12) (191:1) (191:18) (200:15) (201:18) (211:2) (212:1) (212:19) (212:20) (214:18)<br>**needed**  (195:5)<br>**needs**  (14:16) (40:11)<br>**negative**  (192:14)<br>**neglect**  (80:25)<br>**negligence**  (52:22) (56:8) (56:19) (56:22)<br>**negligent**  (20:2)<br>**neighborhood**  (158:19)<br>**neither**  (139:9)<br>**nephew's**  (48:6) (48:7)<br>**never**  (14:15) (17:17) (22:6) (34:13) (41:18) (74:9) (74:16) (74:18) (90:2) (99:11) (107:6) (110:12) (111:23) (118:19) (119:18) (126:5) (126:20) (134:20) (135:9) (163:17) (165:10) (185:1) (188:6) (211:15)<br>**new**  (54:12) (73:8) (135:21)<br>**news**  (90:25) (160:14)<br>**newspaper**  (13:5) (90:21) (91:2) (91:5) (102:11) (166:5) (181:22)<br>**next**  (8:9) (8:23) (8:25) (22:19) (46:8) (46:22) (59:20) (60:18) (63:19) (69:18) (96:9) (96:12) (96:25) (97:2) (116:18) (123:14) (123:17) (124:6) (124:7) (124:10) (138:7) (173:16) (191:2) (196:15) (196:17)<br>**nice**  (18:5) (111:9) (162:6)<br>**night**  (22:19) (61:19) (162:7)<br>**nobody**  (43:20) (95:9) (196:7)<br>**non**  (128:16)<br>**none**  (141:15)<br>**nor**  (126:9)<br>**norm**  (187:25) (188:7)<br>**normal**  (46:16)<br>**normally**  (81:15) (82:1)<br>**north**  (2:9) (2:22) (216:21) (217:19)<br>**not**  (7:18) (7:19) (7:20) (10:3) (10:12) (10:17) (10:19) (10:23) (10:24) (10:25) (11:1) (11:6) (11:7) (11:9) (11:11) (11:15) (11:22) (13:11) (13:18) (15:6) (16:4) (16:21) (17:6) | **nothing**  (35:21) (46:20) (91:11) (102:7) (116:10) (130:19) (132:18) (134:20) (135:9) (140:15) (177:3) (188:10) (197:6) (210:6)<br>**notice**  (143:24) (150:23) (152:20) (153:23) (154:2) (155:11) (162:7) (165:23) (166:9) (166:22) (168:21)<br>**noticed**  (87:23) (88:18) (181:14) (181:16)<br>**notified**  (87:23)<br>**now**  (7:1) (7:2) (8:2) (10:16) (18:2) (21:1) (22:15) (23:16) (24:9) (25:11) (25:17) (26:2) (27:3) (27:10) (27:24) (28:1) (29:18) (32:15) (34:20) (35:6) (35:14) (35:15) (35:18) (36:22) (43:7) (45:1) (46:12) (49:16) (50:9) (50:24) (51:6) (51:25) (52:25) (53:9) (54:11) (56:6) (57:12) (57:17) (58:25) (60:25) (65:21) (71:13) (72:3) (72:17) (74:22) (77:16) (77:23) (86:7) (87:11) (87:14) (87:22) (88:13) (89:8) (91:7) (92:18) (93:5) (94:16) (96:4) (97:25) (98:10) (104:16) (109:14) (113:5) (113:7) (120:2) (121:14) (123:9) (124:6) (127:12) (128:2) (131:19) (134:22) (136:2) (136:3) (137:15) (137:20) (139:16) (140:4) (141:10) (141:19) (142:15) (142:20) (143:6) (143:15) (143:19) (143:24) (145:15) (146:2) (146:3) (147:18) (149:1) (150:2) (150:3) (150:4) (150:8) (150:20) (150:23) (151:3) (151:16) (151:20) (152:20) (152:22) (153:15) (153:17) (153:23) (154:1) (154:11) (155:1) (155:11) (155:12) (155:23) (156:14) (156:19) (158:1) (159:8) (160:8) (160:13) (160:17) (160:24) (161:1) (161:17) (161:19) (163:14) (164:8) (164:21) (165:3) (165:15) (166:4) (166:9) (166:14) (167:2) (167:3) (167:4) (167:9) (167:10) (168:3) (168:14) (168:21) (169:12) (170:9) (170:22) (170:25) (171:24) (172:6) (172:9) (172:23) (172:24) (173:3) (173:20) (174:1) (175:6) (175:22) (186:6) (186:24) (190:6) (190:14) (191:2) (194:15) (196:9) (198:21) (199:5) (199:11) (203:2) (203:15) (203:24) (204:22) (205:8) (205:25) (207:22) (209:19) (212:12) (213:4) (213:17)<br>**number**  (1:6) (33:23) (35:1) (42:8) (58:21) (58:22) (71:5) (72:4) (72:18) (72:19) (78:15) (79:18) (82:12) (85:15) (85:19) (86:21) (107:1) (110:10) (113:25) (114:2) (115:6) (115:20) (118:17) (119:16) (123:1) (123:4) (127:16) (138:13) (138:14) (139:3) (139:6) (139:9) (139:12) (139:13) (139:20) (140:23) (150:20) (152:20) (155:24) (156:15) (156:25) (157:14) (157:22) (161:1) (161:2) (161:8) (161:9) (164:24) (165:1) (165:10) (165:11) (165:12) (165:14) (165:16) (165:18) (166:9) (166:13) (167:10) (167:13) (167:14) (167:15) (168:16) (168:19) (168:20) (168:22) (169:7) (169:9) (170:12) (170:14) (170:17) (175:6) (175:12) (175:16) (188:23) (209:20) (212:10)<br>**numbered**  (1:20) (216:11) |

numbers                                                    our                           235

| | |
|---|---|
| numbers  (127:19)<br>nurses  (30:17)(77:5)(159:24)<br>nurse's  (22:21) | (140:20)(140:23)(141:5)(141:15)(141:19)(141:25)<br>(142:20)(144:8)(144:17)(144:18)(145:10)(145:13)<br>(145:15)(146:7)(146:20)(146:24)(147:1)(147:6)(147:12) |

**O**

oath  (6:13)(6:17)(6:20)(46:21)(46:22)(46:23)(88:19)
(90:11)(93:11)(93:15)(93:18)(122:16)(122:20)(122:23)
(195:12)
object  (151:8)
objection  (3:7)(104:12)(108:8)(112:1)(116:2)(116:12)
(119:23)
objective  (137:21)(138:17)(155:16)
obligated  (19:16)
obligation  (13:25)(14:13)(14:14)(16:20)
obtain  (172:19)
obvious  (58:14)(58:15)
obviously  (13:9)(88:16)(125:10)
occur  (50:12)(50:23)
occurred  (216:11)
occurs  (160:15)
off  (27:7)(33:10)(38:12)(52:14)(54:13)(54:23)(55:9)
(68:11)(141:1)(145:20)(188:8)(215:21)
offender  (155:5)
offense  (15:21)(15:23)(19:1)(19:21)(23:20)(31:12)
(32:19)(35:9)(36:5)(36:6)(36:15)(48:23)(52:1)(52:13)
(54:7)(56:1)(56:4)(56:20)(57:3)(82:5)(166:23)(198:11)
(198:12)(210:12)(211:8)
offenses  (17:16)(55:23)(70:24)(210:2)(211:8)(211:11)
offer  (102:4)
offered  (20:23)(216:15)
office  (2:7)(2:18)(2:19)(2:21)(8:18)(47:12)(174:12)
(216:16)
officer  (18:22)(136:19)(141:4)(141:16)(178:1)(178:3)
officers  (43:5)(141:2)(141:20)(195:7)
official  (216:4)(216:20)(217:18)
oftentimes  (41:3)
ohio  (84:6)
okay  (6:16)(7:16)(12:22)(15:20)(16:20)(23:7)(23:10)
(24:5)(24:16)(25:4)(26:22)(27:9)(28:16)(29:10)(31:2)
(31:10)(31:21)(32:10)(32:13)(33:16)(34:15)(34:21)
(35:14)(37:11)(39:12)(39:22)(40:7)(40:9)(40:18)(40:23)
(41:1)(41:13)(41:20)(41:23)(42:15)(43:3)(43:10)(44:25)
(46:2)(46:18)(46:19)(46:24)(46:25)(47:13)(47:25)(49:8)
(49:16)(49:17)(49:24)(50:3)(50:9)(51:23)(52:2)(52:7)
(52:11)(52:13)(52:22)(52:25)(53:4)(53:7)(53:9)(53:14)
(53:25)(54:7)(54:11)(54:13)(54:15)(55:3)(55:10)(55:17)
(55:20)(56:4)(56:5)(56:8)(56:11)(56:15)(56:19)(56:23)
(57:9)(57:14)(57:15)(57:17)(58:6)(58:20)(59:11)(59:16)
(59:19)(60:2)(60:15)(60:18)(60:24)(61:4)(61:5)(61:7)
(61:9)(61:10)(61:16)(61:23)(62:1)(62:24)(63:2)(63:4)
(63:7)(63:21)(64:3)(64:12)(64:13)(65:8)(65:12)(65:20)
(66:6)(67:22)(68:2)(68:7)(68:22)(69:2)(69:13)(69:23)
(70:7)(70:10)(70:17)(71:1)(71:14)(71:21)(72:3)(72:5)
(72:9)(72:12)(72:17)(72:23)(73:10)(73:18)(73:25)(75:3)
(75:10)(75:13)(75:17)(75:19)(75:24)(76:18)(77:2)(77:9)
(77:13)(77:16)(77:18)(77:22)(78:5)(78:12)(78:13)
(78:24)(79:1)(79:17)(79:20)(80:17)(80:20)(81:8)(81:24)
(82:5)(82:22)(83:15)(85:15)(85:23)(86:6)(86:15)(86:20)
(86:23)(87:4)(87:22)(87:25)(88:4)(88:12)(89:3)(89:12)
(89:19)(90:16)(91:8)(91:9)(93:4)(94:1)(94:21)(95:18)
(95:25)(96:1)(96:23)(97:25)(98:7)(99:10)(99:16)(99:18)
(99:21)(99:25)(100:4)(100:8)(100:18)(101:20)(102:1)
(102:8)(102:20)(103:4)(103:7)(103:14)(103:24)(104:6)
(104:11)(104:19)(105:2)(105:19)(106:14)(106:22)(107:5)
(107:10)(107:19)(107:22)(108:1)(108:7)(108:23)(109:9)
(110:5)(110:10)(110:17)(110:19)(110:22)(111:1)(111:3)
(111:20)(112:5)(113:22)(114:9)(114:13)(114:16)(114:21)
(115:3)(115:5)(115:8)(115:18)(116:8)(116:17)(117:4)
(117:20)(117:21)(118:13)(118:19)(118:25)(119:2)
(119:11)(120:2)(120:7)(120:13)(121:8)(121:9)(122:5)
(122:11)(123:9)(124:12)(124:24)(125:15)(125:23)
(126:16)(126:23)(126:25)(127:10)(127:14)(127:23)
(128:1)(128:7)(128:15)(128:18)(129:13)(130:1)(130:9)
(130:20)(131:10)(131:23)(131:25)(132:6)(132:13)
(132:15)(133:3)(133:6)(133:10)(133:15)(134:6)(134:8)
(134:18)(134:22)(135:19)(135:22)(136:7)(137:15)
(137:19)(138:5)(138:19)(138:25)(139:10)(139:15)(140:4)

(147:18)(148:7)(148:11)(148:16)(148:19)(149:6)(149:10)
(149:19)(150:2)(150:4)(150:12)(150:22)(151:12)(151:14)
(152:10)(152:19)(153:1)(153:13)(153:18)(153:22)
(154:25)(155:6)(155:11)(155:23)(156:9)(157:5)(157:16)
(157:24)(158:11)(159:18)(160:5)(160:17)(160:22)(161:1)
(161:6)(161:21)(164:13)(164:19)(166:6)(167:2)(167:3)
(167:10)(167:16)(167:19)(168:22)(169:25)(170:20)
(171:16)(171:22)(172:4)(172:6)(172:9)(172:14)(172:23)
(174:1)(174:20)(175:6)(175:10)(175:18)(176:1)(176:12)
(176:15)(176:17)(177:4)(177:19)(178:9)(178:22)(179:8)
(179:10)(179:16)(180:11)(180:16)(182:1)(182:12)
(182:25)(183:8)(184:2)(184:13)(184:19)(184:25)(186:11)
(186:18)(186:20)(186:22)(187:2)(187:9)(187:13)(187:21)
(189:4)(190:25)(191:2)(191:11)(192:5)(192:12)(192:20)
(192:24)(193:24)(194:1)(194:9)(194:13)(195:3)(195:6)
(195:13)(195:21)(196:4)(196:6)(196:13)(196:19)(197:16)
(198:6)(200:5)(200:14)(200:17)(200:22)(201:5)(201:13)
(201:17)(201:20)(201:23)(202:15)(202:18)(202:24)
(203:2)(203:13)(204:2)(204:9)(204:25)(205:13 (205:18)
(205:20)(205:21)(205:25)(206:15)(206:22)(208:7)
(208:23)(209:3)(209:8)(209:14)(209:18)(210:14)(210:21)
(210:23)(212:5)(212:18)(213:18)(214:4)(214:7)(214:14)
(215:12)
oklahoma  (84:5)
old  (80:2)(90:21)(178:13)(187:19)
once  (28:2)(95:6)(125:12)(138:5)(145:20)(149:14)
(149:20)(149:21)(152:6)(167:4)(168:17)(209:9)(210:10)
(211:6)(212:2)
one  (5:24)(6:16)(8:12)(10:1)(10:14)(12:12)(13:9)
(14:13)(16:3)(17:19)(20:12)(26:5)(31:15)(31:18)(34:25)
(36:12)(36:14)(36:21)(38:14)(38:17)(41:24)(42:18)
(44:1)(44:22)(47:25)(48:1)(49:10)(49:11)(49:20)(50:11)
(50:23)(51:5)(52:7)(52:11)(52:19)(52:20)(60:12)(61:13)
(62:8)(64:20)(66:2)(66:9)(66:14)(67:15)(72:18)(79:9)
(79:14)(82:3)(82:6)(86:9)(87:2)(92:17)(93:14)(96:17)
(96:21)(106:24)(110:7)(113:23)(113:25)(114:2)(115:6)
(115:20)(116:1)(118:15)(122:19)(123:1)(123:23)(124:3)
(126:3)(131:8)(134:4)(134:5)(135:14)(135:21)(139:20)
(142:16)(153:17)(162:8)(166:13)(170:25)(176:2)(177:16)
(177:18)(178:9)(179:11)(187:17)(187:22)(189:21)
(189:24)(192:11)(193:3)(194:16)(196:9)(196:14)(196:15)
(196:17)(199:2)(199:3)(199:5)(202:1)(203:14)(208:21)
(210:7)(212:1)
ones  (133:15)(155:2)
only  (12:12)(12:14)(14:1)(14:13)(26:5)(26:17)(33:24)
(33:25)(44:11)(46:23)(63:20)(66:3)(80:14)(131:8)
(140:20)(153:17)(155:24)(157:22)(162:8)(165:13)(172:6)
(211:7)
open  (5:3)(20:17)(25:16)(91:23)(105:8)(157:8)(169:18)
(181:6)(213:25)(216:12)
operate  (30:10)
opinion  (64:20)(81:12)(102:15)(103:1)
opinions  (7:15)(37:8)(37:10)(95:14)(206:10)
opportunity  (90:3)(94:16)
opposed  (53:19)(75:25)(76:21)(147:19)
option  (17:17)(17:19)(114:19)
options  (42:18)
order  (11:2)(13:2)(13:14)(21:1)(23:4)(24:17)(30:23)
(33:19)(43:25)(72:3)(156:13)(184:7)(205:20)
ordinary  (132:17)(132:18)
other  (15:1)(15:7)(24:2)(26:22)(27:18)(32:18)(50:3)
(55:24)(64:15)(66:23)(67:1)(67:2)(67:4)(70:12)(70:14)
(71:18)(72:23)(73:13)(73:15)(77:4)(79:16)(96:17)
(96:21)(116:10)(117:12)(117:19)(123:22)(123:23)(131:6)
(144:8)(147:9)(152:17)(155:6)(155:15)(159:18)(159:19)
(160:5)(169:16)(173:2)(182:15)(192:11)(192:18)(196:9)
(196:11)(198:11)(201:12)(204:19)(206:8)(207:10)
(207:11)(207:13)(208:9)(211:8)(211:11)(211:13)(212:6)
(213:3)(214:2)(216:8)
others  (79:4)
otherwise  (44:11)
ought  (14:19)(26:24)(28:6)(174:23)(200:7)(200:12)
our  (13:8)(20:23)(28:3)(29:24)(32:25)(49:17)(51:13)
(56:1)(57:12)(63:15)(65:18)(86:24)(104:23)(125:5)

out                                                                    point                                    236

(125:6) (137:20) (137:23) (138:17) (139:1) (139:17) (181:14)
(183:3) (202:6) (205:14)
out   (5:14) (15:13) (15:22) (17:1) (17:2) (17:4) (18:1)
(21:9) (21:23) (23:9) (24:18) (32:25) (33:3) (33:9) (45:24)
(46:4) (53:11) (58:15) (74:13) (74:21) (83:1) (104:22)
(105:2) (106:17) (110:2) (110:3) (113:19) (116:6) (118:10)
(119:20) (121:21) (125:19) (131:8) (133:14) (133:15)
(133:17) (148:5) (152:2) (167:12) (173:17) (183:6) (184:14)
(186:17) (190:12) (194:2) (195:5) (197:1) (199:22) (202:1)
(203:5) (206:22) (212:24)
outlandish   (16:5)
outside   (29:24) (54:12) (151:17) (152:3) (163:16)
out-there   (16:7) (17:5)
over   (5:14) (5:25) (12:2) (22:12) (32:13) (32:15) (34:24)
(51:15) (92:18) (93:5) (94:4) (96:5) (106:2) (109:11) (113:2)
(121:15) (121:25) (131:16) (133:9) (149:7) (152:16) (167:11)
(176:24) (176:25) (181:14) (188:7) (188:16) (195:6) (196:11)
(197:21)
overdose   (22:23)
overemphasize   (169:6)
own   (48:19) (209:6)

## P

page   (3:4) (38:10) (39:23) (42:10) (48:17) (48:20) (57:10)
(59:20) (63:9) (63:19) (67:22) (68:9) (82:7) (98:15) (106:22)
(110:5) (110:20) (113:22) (116:1) (116:6) (116:7) (116:8)
(118:13) (122:8) (125:23) (125:24) (125:25) (127:15)
(127:17) (127:19) (127:20) (128:1) (171:7) (171:12) (175:23)
(175:24) (177:6) (178:10) (183:7) (188:16) (188:17) (189:22)
(192:25) (193:2) (194:16) (195:6) (197:23)
pages   (37:14)
paid   (67:5) (67:8)
pain   (22:16)
pamphlet   (7:12)
panel   (6:16) (86:24) (93:8) (93:12) (93:15) (122:17)
(122:19)
paper   (13:17) (101:19) (139:23) (161:3)
pardon   (42:10)
parker   (1:21) (5:5) (5:22) (92:14) (105:16) (109:5)
(112:23) (117:3) (120:24)
parking   (33:3)
parks   (2:16) (8:25) (9:1) (45:20) (85:20) (97:3) (97:4)
(107:13) (107:14) (112:2) (124:7) (151:8) (180:11) (180:13)
(182:2) (182:3) (182:7) (182:8) (199:7) (199:18) (213:8)
(213:19) (214:2) (214:3) (214:8)
parole   (20:14) (25:19) (32:12) (58:8) (59:23) (59:25)
(60:15) (77:22) (78:1) (78:2) (79:25) (152:8) (152:14)
(158:5) (158:6) (158:23) (160:11) (161:6) (165:6) (167:7)
(168:14) (169:25) (170:8) (170:17) (174:4) (175:3) (190:2)
(190:7) (190:17)
part   (9:20) (10:21) (12:21) (13:8) (27:25) (38:12) (38:20)
(42:17) (66:16) (87:24) (96:20) (147:9) (148:23) (150:9)
(150:14) (152:17) (167:10) (192:14) (199:5) (199:8) (199:23)
partake   (138:19)
partiality   (217:10)
partially   (189:9)
participate   (32:19) (96:22)
participated   (33:16) (33:24) (34:8)
participating   (8:3) (8:20) (101:12) (101:15)
particular   (9:21) (11:1) (26:4) (27:19) (35:8) (35:9)
(35:24) (37:23) (40:5) (41:7) (44:6) (46:21) (64:4) (69:16)
(149:1) (151:4) (198:24) (211:20) (215:11)
particularly   (46:15) (69:24) (172:24)
parties   (32:17) (161:21) (216:10) (216:15) (217:9)
parts   (12:10) (72:10) (199:7)
party   (34:19) (170:13) (192:18) (207:11)
pass   (7:21) (95:24) (174:14) (179:16) (180:10)
passion   (133:2) (133:3) (133:4) (134:25) (135:3) (135:11)
(135:15)
past   (75:25) (210:12) (211:9) (211:21) (217:7)
pay   (64:4) (66:12) (67:10) (83:19)
paying   (20:5) (56:15)
pen   (135:20) (137:3)
penalty   (10:18) (12:6) (12:23) (17:17) (25:14) (26:18)
(26:25) (34:24) (42:3) (42:22) (48:17) (48:19) (48:20) (49:2)
(57:19) (57:23) (58:8) (58:9) (58:19) (59:1) (59:10) (59:21)
(59:24) (60:3) (60:7) (60:13) (61:8) (70:23) (71:6) (71:24)

(76:6) (79:1) (79:12) (79:24) (80:12) (81:1) (81:7) (82:8)
(100:20) (106:25) (107:7) (108:5) (110:8) (110:11) (110:13)
(110:24) (111:25) (113:25) (114:5) (114:19) (115:22)
(118:16) (118:21) (119:19) (136:5) (136:15) (136:18)
(137:12) (139:14) (143:19) (143:20) (147:12) (150:5) (151:5)
(151:9) (151:10) (151:16) (152:1) (152:6) (154:21) (168:18)
(169:25) (170:19) (170:20) (171:2) (171:6) (171:8) (171:15)
(172:25) (174:3) (174:15) (174:16) (183:11) (183:14)
(183:20) (183:21) (183:22) (184:11) (184:20) (188:20)
(188:25) (190:24) (191:4) (191:7) (204:14) (208:2) (208:13)
(208:16) (208:17)
pencil   (87:12)
penitentiary   (52:18) (76:24) (77:7) (77:25) (79:4) (208:3)
people   (9:25) (10:16) (10:21) (13:15) (18:24) (2⁁:19)
(21:22) (24:21) (25:12) (25:14) (25:15) (28:16) (30:6)
(30:18) (31:15) (31:17) (33:4) (38:12) (40:8) (41:14) (42:21)
(50:25) (54:13) (68:25) (69:18) (69:21) (72:4) (75:23)
(77:23) (78:6) (78:15) (79:9) (79:14) (79:22) (81:11) (81:13)
(81:16) (81:17) (86:12) (86:13) (86:16) (86:19) (103:7)
(128:10) (128:13) (131:1) (131:20) (153:10) (154:18) (160:5)
(187:23) (196:21) (204:19) (206:8) (206:9) (207:11) (208:12)
people's   (187:11)
percent   (76:17)
perfect   (22:8)
perhaps   (160:1)
period   (51:16) (87:12) (87:20) (135:5) (135:7)
permit   (149:9) (150:1)
person   (16:15) (18:25) (19:4) (19:8) (23:12) (25:1) (34:7)
(38:9) (50:18) (50:25) (51:9) (51:20) (52:8) (52:11) (52:17)
(52:19) (52:21) (53:4) (53:13) (53:14) (54:3) (54:17) (55:5)
(55:10) (55:25) (56:10) (57:21) (57:23) (58:7) (58:14)
(58:15) (59:23) (60:20) (62:5) (62:11) (63:17) (63:24)
(65:17) (66:7) (68:10) (71:2) (71:17) (71:19) (72:14) (72:18)
(72:20) (72:22) (74:24) (75:4) (75:7) (75:14) (76:2) (77:2)
(77:24) (79:6) (80:9) (80:23) (81:12) (82:1) (82:4) (82:8)
(102:16) (128:24) (128:25) (134:2) (134:3) (134:4) (134:18)
(134:22) (134:25) (136:17) (137:11) (139:17) (140:21)
(142:10) (142:18) (142:21) (143:17) (146:24) (149:2)
(155:21) (155:22) (155:25) (156:4) (156:8) (167:11) (170:13)
(173:3) (173:6) (178:25) (183:24) (184:4) (184:10) (189:18)
(190:23) (195:8) (200:8) (205:10) (205:19) (206:4) (206:6)
(206:7) (207:2) (207:4) (211:20)
personal   (85:7) (98:15) (99:5) (166:24) (188:6) (192:10)
persons   (128:15) (136:21) (176:3)
person's   (10:19) (17:21) (17:24) (19:2) (55:6) (65:23)
(76:12) (76:23) (129:16) (142:4) (155:23) (173:17) (184:7)
(205:17)
perspective   (74:2) (74:5) (74:22)
pertains   (110:22)
phase   (12:15) (20:20) (25:8) (25:9) (25:11) (25:23) (25:24)
(26:11) (26:15) (27:10) (46:15) (70:13) (71:24) (101:2)
(157:24) (200:18) (204:22) (210:10) (210:14) (210:22) (211:6)
philosophical   (171:5)
philosophy   (183:19)
phone   (20:4)
phrase   (202:9)
pick   (71:5) (99:24) (117:16) (192:3)
picking   (121:6)
picture   (69:25)
piece   (13:11) (13:17) (34:3) (139:23) (169:14)
pieces   (28:1)
pine   (199:24)
place   (41:24) (71:15) (130:25) (131:20) (187:20)
plan   (32:25) (51:8) (51:9)
planned   (49:5) (58:15)
plans   (21:9) (88:22)
play   (30:7) (48:14)
player   (56:14)
playground   (21:23) (23:9)
playoffs   (46:11)
please   (5:10) (83:16) (83:17) (85:20) (85:23) (86:3) (92:3)
(92:5) (105:12) (105:14) (108:18) (108:22) (112:10) (112:15)
(113:9) (116:21) (116:25) (120:8) (120:15) (120:18) (125:2)
(125:5) (127:15) (128:8) (129:6) (141:20) (181:9) (182:19)
(196:12) (198:22) (213:20) (214:25) (215:3) (215:5) (217:5)
plus   (18:18) (19:5) (19:9) (136:22) (137:10) (137:11)
point   (6:11) (13:10) (13:17) (15:5) (16:6) (26:10) (31:22)

| pointing | puts |
|---|---|
| | 237 |

<table>
<tr><td>

pointing (34:24) (37:10) (38:24) (44:7) (51:20) (56:20) (64:1) (77:21) (84:2) (93:7) (122:12) (124:25) (131:13) (151:23) (156:19) (158:3) (159:11) (161:4) (197:21)

pointing (212:24)

points (15:21)

police (18:22) (43:5) (53:13) (136:19) (141:1) (141:4) (141:16) (141:20) (178:1) (178:2) (195:7)

pool (10:6)

popular (13:5)

portion (83:23)

portions (216:8)

position (65:18) (98:23) (100:19)

positive (192:16)

possibility (20:15) (28:12) (76:14) (76:19) (76:21) (161:6) (190:2) (190:7) (191:9)

possible (23:16) (28:13) (143:25) (152:25) (153:2) (153:3) (153:4) (153:13) (153:16) (153:19) (153:20) (202:22)

possibly (29:18) (81:2)

potential (48:19) (64:19) (75:8) (97:23) (125:7) (154:13) (154:16)

potentially (50:18)

poverty (80:25)

pre (169:13)

predict (154:1) (154:14)

prediction (27:19)

premeditated (48:22) (48:25) (49:12) (49:17) (50:10) (57:11) (57:13)

premeditates (21:10)

prepared (50:20)

present (5:3) (56:2) (71:25) (72:1) (83:22) (91:23) (105:8) (148:17) (154:7) (157:24) (181:6) (209:10) (213:25)

presented (59:15) (66:16) (67:20) (69:4) (69:5) (82:12) (179:23)

presenting (9:22)

presents (56:25)

preside (113:2)

president (47:7)

presiding (1:21) (5:24) (92:16) (121:1)

press (29:11)

presumably (29:25)

presume (14:3) (26:19) (44:7) (44:10) (75:14) (102:24) (150:14) (152:12)

presumed (13:22) (27:3) (140:18) (200:25)

presumes (209:21)

presuming (27:10)

presumption (13:23) (25:24) (26:2) (26:3) (26:9) (32:11) (72:13) (104:10) (139:21) (145:17) (152:13)

pretty (10:4) (18:3) (18:5) (21:15) (21:24)

prevailing (24:6)

prevalent (31:3)

prevent (87:14) (87:15) (99:5)

preview (7:8)

previously (69:15)

priest (141:5)

principle (142:2)

principles (12:25) (13:3) (146:3)

print (98:9)

prior (57:22) (57:24) (58:10) (67:1) (82:9) (82:13) (83:25)

prison (20:14) (21:14) (21:20) (21:21) (23:13) (23:14) (25:19) (27:4) (29:21) (29:22) (30:2) (30:3) (30:12) (32:11) (59:21) (128:3) (130:1) (130:14) (133:10) (133:15) (133:16) (152:14) (158:22) (158:23) (159:11) (159:14) (159:19) (159:20) (160:10) (160:13) (160:15) (160:19) (165:4)

privacy (189:16)

probability (27:14) (28:11) (28:12) (28:16) (72:7) (76:13) (76:15) (76:20) (151:1) (152:22) (152:23) (153:10) (153:11) (153:23) (154:9) (205:4)

probable (153:2) (153:4) (153:7) (153:17) (153:19) (153:21)

probably (7:11) (8:12) (14:24) (15:3) (17:4) (29:12) (29:13) (54:17) (66:22) (76:2) (76:23) (77:3) (79:14) (82:1) (87:23) (92:18) (93:5) (95:3) (121:15) (121:25) (126:15) (128:12) (129:24) (142:3) (153:4) (189:14) (193:4) (195:15) (197:20) (199:1) (206:8) (206:12) (211:25)

problem (5:20) (17:1) (40:5) (47:16) (82:24) (90:23) (91:15) (153:16) (162:10) (162:18)

procedural (7:8) (94:23) (95:15)

procedures (65:22)

</td><td>

proceed (182:5)

proceedings (1:19) (1:20) (1:23) (6:11) (93:7) (122:12) (215:22) (216:9) (216:14)

process (6:4) (37:5) (66:16) (92:21) (101:13) (101:15) (105:18) (109:7) (112:25) (113:3) (117:9) (121:2) (124:25) (125:1) (137:18) (138:20) (139:16) (185:2) (210:10) (214:11)

produced (1:24)

profession (65:4)

professional (47:18) (64:16) (217:8)

programs (114:14)

promulgated (217:3)

proof (13:20) (13:24) (14:8) (14:9) (14:19) (14:20) (15:20) (57:4) (75:20) (77:14) (139:10) (143:21) (145:16) (200:23)

proper (26:3) (26:18) (26:19) (27:4) (69:21) (70:1) (152:13) (176:11) (176:14) (184:20) (196:24) (197:13)

property (62:17) (137:2) (137:3) (137:4) (137:5) (155:23) (156:22) (183:25) (184:8) (184:22) (185:17) (205:21)

proposition (20:25) (154:2)

prosecuted (80:2)

prosecuting (96:19) (124:3)

prosecution (8:15) (96:19) (96:20) (123:22) (123:25)

prosecutors (43:5) (43:20)

prospective (3:1) (3:4) (4:1) (4:4) (5:12) (6:13) (86:5) (92:7) (93:11) (109:3) (112:21) (116:15) (117:2) (119:24) (120:20) (122:16)

prove (13:14) (14:16) (15:10) (15:20) (15:22) (15:24) (16:10) (16:18) (19:10) (19:11) (19:12) (19:19) (24:14) (24:18) (24:24) (26:17) (28:7) (28:10) (30:19) (30:22) (44:9) (44:11) (49:22) (50:5) (51:19) (59:13) (75:22) (76:23) (137:10) (138:25) (139:3) (139:6) (139:10) (139:25) (142:12) (143:10) (143:16) (144:6) (144:17) (145:2) (145:10) (145:18) (148:19) (150:5) (150:15) (152:15) (152:21) (155:14) (156:5) (156:6) (156:7) (160:17) (160:21) (160:25) (165:12) (165:13) (166:12) (166:13) (171:25) (172:25) (173:2) (173:6) (173:10) (173:21) (173:22) (175:6) (175:7) (198:7) (198:17) (198:21) (198:25) (199:19) (200:11) (201:5) (202:19) (203:4) (203:8) (203:10) (206:16) (206:17) (207:11) (207:16) (207:20) (208:2) (208:5) (208:24) (209:22)

proved (13:23) (28:10) (28:21) (72:19)

proven (68:4) (68:6) (77:17) (78:19) (78:21) (138:3) (138:6) (142:16) (148:11) (148:22) (150:19) (167:19) (198:11) (204:16)

proves (62:11) (200:6) (200:9)

provide (64:18) (65:23)

provider (22:6)

provides (194:18)

providing (66:19)

proving (13:25) (15:11) (154:12)

psychiatrist (64:15) (65:5) (65:16) (66:11) (66:14) (66:18) (167:23)

psychiatrists (167:1)

psychologist (64:15)

public (2:21) (130:25) (131:20) (193:16) (193:18) (194:4) (194:6)

publish (199:24)

pull (163:12)

punish (76:5)

punished (68:5)

punishment (12:15) (12:18) (12:19) (20:11) (20:18) (20:21) (20:24) (23:11) (23:18) (23:21) (25:11) (26:11) (26:15) (42:18) (52:17) (59:25) (60:4) (63:17) (69:21) (70:13) (101:1) (138:8) (147:1) (147:2) (147:10) (148:24) (149:3) (150:8) (150:13) (150:19) (152:18) (156:10) (156:23) (157:24) (194:19) (196:24) (197:13) (200:18) (204:22) (210:10) (211:6)

punishments (59:22) (68:4)

pure (43:24)

purpose (33:12) (150:12) (150:18) (183:20) (190:6) (190:14) (190:17) (190:18) (191:4)

purposes (60:2) (190:1) (204:8)

pursuant (217:5)

put (15:8) (16:12) (36:13) (36:20) (42:6) (42:7) (43:11) (46:13) (56:14) (71:9) (71:10) (71:15) (73:21) (76:20) (142:11) (162:21) (163:11) (168:4) (176:18) (176:19) (177:3) (177:22) (178:12) (178:13) (178:15) (189:3) (189:9) (190:3) (190:13) (198:17) (205:2) (207:15) (211:7)

puts (22:22) (167:13)

</td></tr>
</table>

putting                                                     responsible          238

| | |
|---|---|
| putting (209:24)<br>puzzle (14:11) | reasonable (14:1)(15:11)(24:14)(24:16)(24:20)(24:22)(24:25)(27:13)(28:6)(28:10)(49:23)(50:6)(62:11)(72:6)(72:12)(72:20)(75:22)(78:21)(79:3)(138:3)(139:4)(139:7)(143:17)(143:22)(144:2)(144:3)(144:4)(145:3)(145:5)(145:11)(145:19)(148:20)(148:22)(150:5)(150:16)(150:19)(150:24)(152:3)(153:8)(154:8)(160:22)(161:9)(161:12)(165:12)(165:13)(165:17)(166:10)(166:12)(172:1)(175:11)(175:15)(198:7)(198:18)(200:7)(201:6)(202:11)(202:12)(205:4)(206:18) |

## Q

qualifications (17:6)(65:23)(65:25)
qualified (10:7)(10:9)(10:11)(10:17)(10:19)(10:24)(11:2)(11:9)(13:2)(21:1)(27:1)(35:17)(46:1)(83:11)(84:7)(84:12)(84:16)(85:12)(179:22)
qualify (21:13)(49:1)(55:19)(87:3)
qualifying (46:4)(86:10)(86:16)
quality (100:20)(101:3)(138:1)
quantity (100:21)(101:3)(138:1)
quay (1:21)(5:5)(5:22)(92:14)(105:15)(109:5)(112:23)(117:3)(120:24)
question (6:25)(7:24)(11:9)(12:12)(27:11)(28:2)(30:23)(31:16)(32:10)(32:14)(34:14)(34:19)(42:9)(58:12)(60:18)(65:21)(69:18)(75:3)(76:9)(77:11)(77:17)(93:25)(110:6)(113:23)(115:21)(116:4)(118:15)(122:8)(123:5)(125:4)(125:11)(126:1)(126:4)(126:12)(126:17)(126:19)(128:1)(128:3)(128:7)(130:21)(138:6)(138:12)(148:18)(148:19)(154:17)(156:15)(160:11)(160:25)(169:20)(170:3)(171:11)(175:2)(175:15)(177:15)(177:23)(179:10)(185:10)(185:12)(188:22)(190:16)(191:2)(191:6)(193:1)(193:8)(193:20)(193:21)(205:3)(205:9)(205:11)(205:23)(206:2)(206:3)(207:5)(208:1)
questioning (3:1)(4:1)
questionnaire (5:13)(5:18)(37:9)(37:10)(45:23)(46:13)(48:16)(57:10)(64:24)(70:9)(74:13)(94:4)(98:1)(106:17)(106:23)(109:22)(110:1)(110:6)(113:9)(113:18)(113:23)(115:25)(116:4)(117:25)(118:2)(118:11)(118:14)(119:20)(121:22)(125:17)(125:20)(127:15)(151:7)(151:16)(171:6)(175:20)(181:13)(182:23)(188:15)(201:21)(201:22)(214:10)
questionnaires (10:4)(47:2)(73:22)(189:7)
questions (5:17)(5:18)(7:14)(17:10)(25:20)(27:5)(39:3)(44:25)(50:11)(57:18)(59:7)(69:8)(82:3)(82:7)(94:5)(94:7)(95:12)(103:12)(107:11)(107:12)(111:4)(113:5)(115:9)(115:11)(117:19)(117:20)(119:3)(119:4)(122:4)(125:1)(125:13)(170:22)(177:12)(179:17)(180:6)(181:16)(182:9)(187:21)(188:1)(188:14)(189:11)(189:22)(200:20)(204:23)(214:2)(214:3)(215:9)
quicker (195:15)
quite (10:16)(15:10)(35:2)(87:9)(99:22)(187:22)
quiz (7:21)(95:24)
quote/unquote (81:10)

reasonably (217:10)
reasoning (144:6)
reasons (15:3)(81:4)(81:7)(81:8)
recall (6:10)(6:14)(93:4)(93:12)(118:9)(121:14)(122:11)(122:17)(129:10)(131:11)(133:18)(143:16)
receive (20:13)(20:15)(26:25)(52:17)(52:20)(57:23)(58:7)(82:8)(90:14)(184:10)
received (60:20)
recess (45:4)(91:21)(91:22)(105:7)(180:17)(181:3)(181:5)(213:20)(213:22)(213:24)
reckless (54:19)(55:4)(55:17)(55:18)(56:9)
recklessly (52:11)(52:12)(52:19)(54:11)(54:25)(55:5)(55:12)(56:18)
recognized (54:21)(83:24)
reconsider (27:24)(32:7)(35:6)
record (1:1)(1:24)(5:11)(83:16)(85:20)(92:6)(106:11)(109:3)(115:23)(116:3)(117:1)(120:19)(130:18)(212:23)(213:1)(215:21)(216:10)
refer (27:8)(122:6)
referring (201:20)
reflect (5:11)(54:1)(85:20)(92:7)(106:24)(109:3)(116:3)(117:1)(120:19)
reflected (115:21)(115:25)(119:20)
reflects (216:14)
refuses (84:9)
regard (64:21)(69:24)(100:25)(185:19)(185:21)(185:22)
regarding (98:15)
regardless (10:23)(12:23)(57:21)(58:9)(110:23)(126:6)
regards (52:9)(98:16)(217:6)
regionals (46:11)
register (162:20)
regular (70:18)(70:19)
reintroduce (45:19)
relation (129:17)
relationship (129:18)(131:25)
relationships (132:5)(217:8)
relatives (81:12)(84:2)
relax (7:23)
relevant (84:10)
religious (98:15)(99:4)
remain (14:24)(142:5)(145:18)
remember (25:23)(89:23)(106:14)(110:2)(113:19)(125:19)(129:20)(131:13)(131:14)(132:7)(146:9)(146:20)(147:14)(152:2)(166:4)(172:6)(179:3)(187:14)
remind (6:19)(93:17)(122:22)
reminder (93:19)
render (35:20)(90:12)(100:22)(101:5)
repeat (7:24)(125:3)(155:5)
repercussions (60:12)
rephrase (7:25)
report (88:6)
reported (1:23)(216:12)
reporter (129:5)(135:6)(185:6)(216:5)(216:20)(217:18)
reporter's (1:1)(1:24)(4:14)(216:10)
represent (9:6)(97:9)
representative (13:13)
represents (106:25)(110:7)(113:24)(118:16)
requested (216:9)
require (179:22)(204:17)
required (17:7)(49:20)(50:5)(51:15)(72:2)(90:11)
requires (51:18)(51:19)(75:24)(209:22)
research (90:20)
respect (52:15)(52:16)(85:1)(85:4)
respective (216:15)
response (63:23)
responses (5:18)(94:6)(122:4)
responsibility (96:18)(124:2)
responsible (47:12)(102:16)

## R

radio (187:23)(188:2)
raise (6:12)(93:10)(122:15)
raised (38:15)(80:23)(80:24)(81:9)
ran (46:5)
ranch (2:18)
range (20:18)(23:20)(71:6)(156:9)
ranges (70:23)
rape (70:16)(70:18)(70:19)
rather (57:13)(58:8)(60:20)(167:7)(167:20)(176:18)(177:3)
reach (11:22)(147:20)
reached (146:21)(149:20)
reaction (80:18)
read (7:2)(10:3)(25:13)(35:22)(45:23)(68:15)(72:5)(91:5)(94:17)(98:3)(98:8)(98:11)(101:18)(102:10)(102:13)(102:25)(114:8)(114:23)(115:24)(126:2)(150:21)(151:7)(151:16)(151:17)(152:2)(161:10)(161:18)(181:18)(181:21)(181:22)(193:6)(198:4)(198:21)(199:21)
reading (10:5)(25:18)
reads (36:3)(110:10)
ready (33:6)(97:12)(104:16)(120:5)(124:13)
real (101:21)(130:18)(172:3)
realistically (80:19)
really (12:10)(14:13)(17:23)(24:8)(35:1)(58:20)(77:11)(78:24)(98:22)(130:18)(189:23)
reason (13:22)(24:22)(56:12)(64:20)(66:9)(79:16)(87:2)(128:11)(136:16)(144:9)(144:13)(152:16)(166:11)(168:3)(171:14)(172:7)(172:8)(172:13)(172:15)(184:1)(184:18)(187:21)(188:13)(190:18)(190:19)(190:20)(190:21)(193:3)(212:19)(213:15)

responsive                                                    scared                          239

responsive (6:24)(93:24)(123:5)
rest (15:8)(30:1)(157:1)(159:14)
restate (151:11)
result (48:18)(52:10)(80:10)
resulted (11:19)(53:17)(55:2)
retail (47:8)
retaliation (137:7)
retired (178:1)(178:2)(186:5)(186:9)(186:16)(186:17)
retry (210:7)(212:6)
return (10:23)(12:17)(16:4)(16:21)(19:16)(25:10)
(107:6)(110:12)(110:23)(111:24)(118:20)(119:18)
revolves (22:5)
revving (162:15)
richardson (162:6)
riddle (3:11)(4:11)(105:10)(105:11)(105:15)(105:19)
(105:22)(106:5)(106:9)(106:14)(106:20)(106:21)(107:16)
(107:19)(107:22)(107:25)(108:4)(108:10)
rife (84:22)
right (5:8)(5:15)(6:6)(6:12)(7:20)(7:22)(8:4)(8:16)
(9:7)(9:9)(9:17)(9:18)(14:21)(14:22)(14:23)(14:24)
(15:6)(17:4)(18:2)(20:25)(21:19)(26:9)(28:14)(30:10)
(35:15)(35:18)(35:23)(39:5)(41:25)(42:10)(42:19)
(42:20)(43:14)(44:3)(44:25)(45:1)(46:19)(47:6)(47:10)
(47:15)(48:15)(50:21)(51:5)(51:11)(53:20)(53:25)
(55:15)(58:20)(58:25)(59:17)(60:18)(64:22)(66:13)
(67:17)(68:9)(68:12)(70:7)(71:15)(73:17)(73:20)(74:17)
(74:19)(74:20)(76:1)(76:18)(78:14)(78:15)(79:17)(80:8)
(82:22)(82:25)(83:8)(83:12)(84:18)(85:13)(85:17)(86:1)
(86:4)(86:17)(87:11)(87:14)(89:6)(89:11)(89:15)(90:8)
(90:17)(90:18)(91:9)(91:13)(91:17)(92:2)(92:15)(93:10)
(93:14)(94:9)(94:9)(95:19)(95:20)(95:23)(96:2)(96:9)(96:25)
(97:11)(98:1)(98:14)(98:17)(98:19)(99:2)(100:12)
(100:14)(102:22)(103:11)(103:18)(103:19)(104:15)
(104:19)(105:5)(105:12)(105:15)(106:19)(106:21)
(107:10)(107:15)(108:1)(108:12)(108:17)(108:22)
(112:10)(112:12)(113:4)(113:7)(114:1)(114:25)(115:8)
(115:12)(116:10)(116:25)(117:7)(119:2)(119:15)(120:3)
(120:11)(120:15)(120:23)(121:3)(121:20)(121:23)(122:9)
(122:10)(122:14)(122:15)(122:25)(123:7)(123:11)
(124:13)(126:1)(126:8)(126:11)(126:22)(127:6)(127:10)
(127:14)(128:6)(128:24)(129:15)(129:17)(129:20)(130:7)
(130:9)(130:17)(130:20)(131:12)(131:17)(132:6)(132:13)
(133:1)(133:5)(134:8)(135:13)(135:17)(135:22)(135:24)
(136:2)(136:6)(136:11)(137:20)(139:2)(139:5)(139:20)
(140:4)(140:12)(140:16)(140:20)(140:21)(141:7)(141:9)
(141:12)(141:19)(142:1)(142:2)(142:5)(142:11)(142:13)
(142:14)(142:22)(143:1)(143:4)(143:9)(143:23)(144:11)
(144:15)(144:17)(144:19)(144:24)(145:13)(145:15)
(145:17)(145:23)(145:24)(146:1)(146:2)(146:16)(146:18)
(147:8)(147:11)(148:1)(148:9)(148:15)(148:25)(149:10)
(149:13)(149:16)(149:19)(149:24)(150:11)(150:23)
(151:6)(151:20)(152:9)(153:6)(153:12)(153:15)(154:20)
(155:17)(155:19)(156:18)(156:25)(157:2)(157:4)(157:16)
(157:20)(158:1)(158:12)(158:20)(158:21)(159:13)
(159:15)(159:16)(159:17)(160:2)(160:6)(160:7)(160:20)
(161:7)(161:14)(162:2)(162:3)(162:5)(162:15)(162:19)
(163:8)(163:9)(163:13)(163:19)(164:2)(164:3)(164:4)
(164:7)(164:20)(165:19)(165:25)(166:3)(166:21)(167:22)
(167:24)(168:13)(168:14)(168:15)(168:25)(170:10)
(171:19)(173:7)(173:11)(173:12)(173:20)(173:24)
(173:25)(174:24)(175:5)(175:17)(176:21)(177:1)(177:18)
(177:20)(178:9)(178:23)(178:24)(179:7)(179:15)(179:16)
(179:21)(179:25)(180:3)(180:9)(180:19)(180:20)(180:23)
(180:24)(181:3)(181:11)(181:17)(181:20)(181:23)
(181:25)(182:1)(182:4)(182:16)(182:18)(182:21)(183:1)
(183:5)(183:9)(183:15)(184:6)(184:9)(184:24)(184:25)
(185:8)(186:15)(186:17)(188:12)(189:2)(191:3)(191:24)
(192:2)(193:1)(194:11)(194:15)(196:4)(196:9)(197:16)
(197:24)(197:25)(198:3)(198:8)(198:13)(198:19)(198:20)
(199:12)(199:16)(200:10)(200:16)(200:19)(200:20)
(200:21)(200:24)(201:2)(201:10)(203:6)(204:11)(204:15)
(204:18)(204:21)(204:24)(205:23)(205:24)(206:19)
(207:21)(209:11)(209:20)(209:24)(210:16)(210:19)
(211:12)(211:14)(211:16)(211:22)(212:12)(212:15)
(212:17)(212:21)(213:9)(215:15)

rights (139:18)
righty (59:19)

rise (91:24)(105:9)(108:19)(112:7)(116:19)(120:9)
(169:23)(181:7)
risk (54:22)(54:24)(55:1)(55:13)(55:16)(56:11)
risky (154:2)
road (20:4)(56:13)(92:15)
rob (19:4)(33:5)(33:8)(61:14)(162:12)(162:20)(162:25)
robbed (16:1)(33:11)(173:8)
robber (53:5)(53:6)(53:19)
robbery (19:13)(19:19)(25:2)(25:3)(31:25)(32:25)
(50:15)(53:15)(55:19)(57:3)(57:6)(62:12)(62:14)(70:5)
(70:16)(70:18)(71:20)(72:19)(72:22)(75:1)(75:5)(137:2)
(145:1)(156:6)(163:7)(173:5)(206:5)(207:25)
robbing (19:4)(52:24)(52:25)(55:6)(62:5)
robertson (129:1)(129:7)(130:21)
role (66:1)
rolex (137:3)
room (25:14)(41:21)(174:22)
rooms (147:16)(147:20)
round (46:9)(46:23)
routine (113:1)
rule (217:2)(217:6)
rules (189:20)
ruling (3:6)(3:7)(3:9)(3:12)(3:14)(3:17)(3:19)(3:22)
rulings (84:5)
run (56:16)(153:14)(153:18)(153:20)(183:7)(183:8)
running (149:8)(150:1)

## S

sad (101:25)(215:16)
said (5:22)(9:18)(19:7)(27:17)(34:2)(38:10)(39:25)
(40:1)(40:20)(42:3)(43:6)(48:21)(49:12)(57:11)(57:22)
(59:21)(63:12)(63:20)(67:24)(73:24)(81:22)(84:9)(85:2)
(93:5)(98:13)(98:17)(102:4)(107:5)(111:23)(114:4)
(114:5)(115:20)(118:19)(128:11)(131:19)(131:23)(134:9)
(141:14)(142:9)(142:11)(142:23)(143:5)(143:7)(144:25)
(149:14)(149:25)(154:6)(162:18)(183:2)(190:13)(202:2)
same (12:21)(18:24)(32:22)(43:19)(60:16)(127:14)
(134:24)(136:21)(141:19)(143:21)(145:20)(147:13)
(148:16)(150:9)(150:14)(153:8)(153:9)(155:13)(163:21)
(166:4)(174:1)(191:3)(191:6)(197:23)(202:14)
sat (11:13)(100:8)(151:17)
satisfaction (192:17)
save (38:21)(207:13)
saving (131:5)
saw (92:17)(99:21)(186:15)
say (7:5)(10:17)(10:21)(11:6)(11:7)(13:15)(14:16)
(15:9)(16:8)(16:13)(21:2)(21:8)(21:14)(21:20)(24:8)
(24:21)(26:22)(28:11)(28:16)(28:25)(31:16)(31:17)
(32:1)(33:6)(34:11)(34:18)(35:19)(36:15)(36:17)(36:19)
(41:18)(42:14)(42:21)(43:10)(45:22)(46:20)(50:10)
(51:12)(52:24)(53:25)(59:9)(59:13)(60:4)(64:17)(66:12)
(66:23)(69:21)(72:24)(76:5)(78:8)(79:15)(79:16)(80:14)
(80:19)(81:16)(81:17)(81:21)(81:25)(84:11)(84:12)
(87:24)(96:21)(98:10)(98:18)(99:1)(99:18)(100:8)
(114:23)(129:1)(133:2)(138:3)(139:13)(139:14)(141:10)
(141:13)(141:16)(141:20)(141:22)(143:24)(143:25)
(144:6)(145:21)(161:3)(162:5)(162:11)(162:16)(164:21)
(164:25)(167:15)(167:17)(167:19)(168:8)(168:19)(169:3)
(169:15)(169:21)(170:6)(170:9)(170:12)(170:11)(170:17)
(170:25)(171:3)(171:13)(171:22)(172:9)(172:10)(172:18)
(174:11)(174:22)(176:18)(185:6)(194:17)(195:1)(195:2)
(195:4)(195:24)(196:25)(197:14)(197:15)(202:21)
(207:22)(209:18)
saying (31:21)(35:5)(44:4)(58:6)(66:11)(72:13)(73:20)
(73:23)(84:2)(98:10)(99:2)(100:13)(135:16)(182:13)
(184:3)(192:13)(193:22)(207:11)(208:4)(210:25)
says (16:13)(28:12)(29:15)(33:3)(33:7)(33:16)(33:18)
(33:23)(51:13)(63:15)(76:1)(78:10)(102:24)(126:4)
(128:7)(128:24)(140:25)(148:21)(150:23)(152:20)
(153:23)(154:2)(155:12)(156:14)(156:23)(157:21)
(161:10)(161:11)(162:10)(162:14)(164:5)(165:22)
(166:22)(167:4)(168:20)(190:6)(197:2)(199:1)(199:8)
(200:1)(200:8)(202:9)(202:10)(205:25)
sbot (2:3)(2:5)(2:6)(2:12)(2:16)(2:20)
scale (42:6)(59:2)(59:3)(188:20)
scare (17:22)
scared (176:6)

scenario                                                society                                    240

scenario  (164:15)(164:22)
scene  (51:1)
schedule  (89:11)
scheduled  (89:4)
school  (30:8)(48:1)(187:1)(202:2)
scout  (22:5)
seal  (216:16)
seat  (5:8)(86:1)(92:2)(105:12)(108:22)(112:10)
(116:25)(120:14)(120:16)(181:9)(181:13)(215:3)
seated  (5:9)(8:9)(8:23)(83:7)(86:2)(92:4)(96:9)
(96:24)(101:8)(105:14)(112:14)(120:17)(124:6)(124:10)
(215:4)
second  (20:20)(22:16)(25:9)(25:23)(32:16)(34:11)
(52:7)(58:25)(70:19)(71:1)(101:2)(127:3)(138:7)
(148:23)(148:24)(150:7)(150:17)(156:22)
seconds  (153:14)
section  (210:19)
see  (13:4)(16:17)(23:5)(23:15)(25:17)(28:12)(28:20)
(29:22)(30:2)(30:23)(39:22)(41:1)(45:25)(46:8)(47:2)
(47:4)(47:20)(48:15)(53:3)(53:14)(53:18)(53:23)(54:16)
(55:20)(57:12)(59:19)(60:25)(63:22)(65:1)(72:10)
(75:23)(76:7)(77:9)(78:17)(81:11)(90:14)(101:9)(107:3)
(128:3)(137:21)(150:21)(152:23)(153:1)(165:16)(165:17)
(165:19)(176:18)(177:14)(178:20)(183:3)(184:13)
(185:14)(190:6)(190:8)(191:18)(192:6)(192:21)(193:7)
(193:8)(193:20)(195:22)(195:23)(196:5)(196:15)(198:25)
(199:11)(199:18)(202:11)(203:9)(207:2)(207:7)(207:13)
(207:14)(208:19)(209:6)(210:5)(212:11)(212:19)
seeking  (100:19)(151:10)(151:15)(152:6)(204:13)
seem  (62:10)
seen  (47:10)(74:9)(74:10)(94:5)(121:25)(142:3)(198:1)
select  (46:6)
selected  (11:15)(64:19)(65:9)(65:15)(65:18)(204:9)
(204:12)
selection  (6:4)(9:21)(92:21)(105:17)(109:7)(112:25)
(113:3)(117:9)(121:2)
self-defense  (205:16)
senior  (5:7)(5:23)(48:3)(92:14)(105:16)(109:5)
(112:24)(117:5)(120:24)
sense  (13:6)(13:7)(14:3)(24:23)(33:21)(34:9)(36:25)
(37:24)(39:8)(54:9)(57:15)(144:10)(153:25)(185:12)
(198:15)
sent  (130:1)(133:16)(149:3)
sentence  (20:15)(26:5)(26:7)(26:19)(29:17)(34:14)
(34:23)(35:13)(35:14)(36:10)(36:11)(44:10)(60:16)
(60:20)(60:21)(70:2)(71:9)(71:10)(78:1)(79:5)(79:25)
(80:12)(81:2)(101:5)(101:14)(114:12)(133:23)(133:24)
(134:8)(138:16)(139:14)(139:15)(151:22)(151:24)(158:3)
(159:11)(161:5)(167:6)(167:8)(167:17)(167:20)(170:5)
(170:7)(170:16)(170:17)(175:2)
sentenced  (130:13)(130:14)(158:22)
sentences  (77:21)
separate  (25:8)(46:16)
separately  (44:23)
serve  (100:14)(190:18)(191:9)
served  (99:14)(99:19)(99:23)(147:14)(149:1)
serves  (60:3)(183:21)(190:2)(190:17)(191:5)
service  (5:22)(88:6)(88:18)(103:18)(104:15)(186:21)
(215:10)
services  (47:9)(67:11)
session  (94:13)
set  (134:24)(155:22)(187:17)(202:4)
setting  (149:3)
several  (18:10)(19:7)(19:22)(181:16)
severe  (57:20)(60:4)
sexual  (137:6)
shadow  (201:15)(202:7)(202:9)(202:12)
she  (16:15)(19:19)(29:11)(33:1)(33:2)(33:3)(33:7)
(33:13)(33:16)(33:17)(33:18)(33:20)(33:24)(33:25)
(34:2)(47:24)(70:22)(109:22)(111:23)(113:9)(115:20)
(115:21)(115:23)(136:9)(139:19)(142:5)(162:9)(162:10)
(162:14)(162:18)(163:16)(163:17)(163:20)(163:23)
(163:24)(164:1)(164:3)(164:5)(164:6)(179:2)
sheet  (77:20)
she'll  (8:7)
she's  (8:13)(18:13)(47:22)(162:15)
shoot  (18:2)(33:9)(50:18)(53:2)(155:20)

shooting  (16:11)(20:3)(51:8)(53:11)(54:22)(62:23)
(142:10)(200:5)
shoots  (21:23)(53:6)(53:20)
shop  (131:23)(171:1)(187:10)(187:12)
shoplifting  (126:6)(127:4)
shopping  (158:17)
shops  (187:11)(187:14)
short  (45:4)(50:4)(134:10)(134:11)
shot  (18:10)(54:17)(54:24)(63:6)(142:21)(142:23)
(156:7)
should  (7:4)(20:11)(21:5)(21:12)(25:16)(33:20)(33:25)
(42:13)(42:14)(46:22)(48:18)(48:21)(56:10)(57:23)
(58:7)(58:19)(59:10)(69:11)(69:20)(72:11)(82:8)(83:23)
(87:15)(114:19)(134:14)(171:2)(171:23)(172:10)(183:19)
(184:10)(191:7)(191:8)(196:23)(201:14)
shouldn't  (59:13)(79:10)(79:11)(79:12)(79:16)(135:12)
(135:25)(136:1)(164:5)
show  (11:7)(14:13)(24:10)(51:15)(57:2)(57:4)(61:1)
(67:8)(72:11)(79:2)(174:22)(187:25)(211:11)(211:17)
(212:23)(213:1)
shown  (20:23)(24:11)(50:25)(54:5)(70:3)(72:18)(78:25)
shows  (13:5)(43:20)(44:1)(51:1)(153:18)
shut  (168:17)
sick  (112:16)(112:17)
side  (56:2)(66:25)(67:1)(67:10)(67:20)(87:2)(96:24)
(137:24)(139:9)(174:1)
side's  (64:20)
sign  (101:7)
signed  (148:21)
significant  (54:22)(83:25)
significantly  (75:8)
signs  (161:3)
silent  (14:24)(142:6)(142:7)(145:18)
silver  (80:23)
similar  (12:7)
simply  (11:22)(86:8)(141:4)(161:10)
since  (94:4)(135:24)(188:9)
single  (13:24)(69:14)(139:11)(161:18)
sir  (8:10)(8:19)(14:4)(15:15)(17:8)(24:21)(27:8)
(32:8)(37:1)(45:14)(85:18)(85:22)(92:3)(92:9)(92:19)
(93:3)(93:13)(93:16)(94:2)(95:8)(103:21)(105:12)
(105:22)(106:4)(106:9)(106:16)(107:9)(109:23)(113:21)
(116:22)(116:25)(118:1)(118:7)(119:13)(120:4)(120:6)
(120:11)(120:12)(120:15)(120:22)(121:12)(121:13)
(121:17)(122:18)(123:8)(123:24)(124:20)(127:17)
(130:24)(137:14)(140:3)(141:24)(159:5)(160:16)(165:19)
(170:24)(175:21)(180:5)(180:8)(180:13)(180:21)(181:10)
(182:3)(182:20)(182:21)(183:23)(184:12)(185:4)(185:16)
(185:18)(187:5)(187:8)(188:4)(194:7)(194:24)(195:11)
(198:16)(212:13)(215:3)(215:17)
sit  (9:21)(10:7)(10:19)(13:21)(14:10)(16:8) 32:24)
(33:3)(84:11)(84:12)(84:16)(84:17)(126:17)(131:15)
(161:22)
sits  (22:13)(140:1)(140:18)
sitting  (22:18)(29:5)(34:20)(35:14)(98:16)(99:5)
(104:21)(123:11)(125:17)(137:21)(139:22)(152:3)(152:7)
(154:4)(163:16)(182:15)(203:14)
situation  (19:10)(62:4)(62:19)(136:22)(142:24)(172:5)
(192:22)
six  (15:22)(18:21)(136:20)(146:10)
sixth  (157:13)(164:10)(169:6)(169:7)(169:10)
ski  (33:6)
slams  (168:17)
sleep  (30:7)
sleeping  (22:19)
slipped  (64:6)
sloppy  (98:2)
smoke  (13:15)
snap  (21:7)(21:17)(24:2)(27:1)
snipes  (5:23)(6:10)(87:6)(88:2)(88:19)(89:9)(90:11)
(90:15)(91:4)(92:16)(92:20)(93:1)(93:6)(105:17)(109:6)
(112:25)(117:8)(117:11)(121:1)(121:4)(121:10)(121:18)
(122:12)
social  (217:8)
societies  (160:15)
society  (27:16)(29:16)(29:22)(29:23)(30:2)(30:3)
(30:19)(30:21)(72:9)(76:4)(151:3)(158:11)(158:13)

society's                                                    sure                                  241

(158:24)(158:25)(159:2)(159:16)(160:6)(160:12)(160:13)
(160:15)(185:23)(205:6)(205:7)
society's (77:6)
socked (29:6)
sole (64:20)
solely (57:20)(90:13)(156:16)
some (5:17)(6:11)(7:8)(10:4)(10:16)(10:21)(13:2)
(13:15)(22:21)(28:16)(31:14)(31:17)(37:8)(37:13)
(40:11)(41:14)(42:4)(42:21)(46:12)(47:1)(50:4)(50:24)
(51:20)(52:23)(57:19)(61:4)(69:18)(72:3)(72:17)(75:23)
(77:23)(78:6)(78:15)(79:16)(79:22)(80:16)(81:11)
(81:16)(81:23)(93:7)(94:6)(95:15)(105:1)(110:11)
(122:4)(122:12)(125:18)(128:15)(128:18)(132:7)(132:9)
(132:14)(132:24)(133:2)(133:12)(133:14)(136:24)
(137:15)(138:10)(141:15)(144:8)(148:5)(150:25)(153:6)
(154:15)(162:1)(162:2)(162:12)(176:7)(178:20)(179:17)
(183:3)(183:25)(184:21)(187:13)(188:23)(189:7)(191:13)
(192:10)(192:16)(193:3)(196:10)(196:21)(197:20)
(198:10)(198:11)(199:7)(201:11)(203:9)
somebody (15:4)(20:5)(26:23)(31:23)(33:21)(34:1)
(34:8)(34:13)(40:10)(40:20)(42:16)(54:25)(55:14)
(56:15)(62:5)(64:6)(76:5)(98:7)(101:24)(129:2)(134:21)
(145:1)(155:18)(156:21)(192:14)(192:15)(206:20)
somebody's (62:15)(134:12)(183:25)(185:17)(189:14)
(196:5)
someone (54:16)(63:1)(69:23)(98:20)(98:24)(133:3)
(134:14)(136:4)(136:25)(137:7)(152:6)(179:4)(192:17)
(196:24)(205:12)(206:5)
someone's (184:21)(192:10)
something (11:10)(19:5)(19:18)(23:14)(28:17)(32:16)
(35:8)(36:17)(36:19)(38:1)(38:13)(40:10)(41:7)(42:13)
(45:7)(49:7)(51:14)(51:18)(54:12)(60:12)(64:6)(64:9)
(64:23)(66:16)(74:15)(79:23)(80:6)(80:11)(81:1)(82:11)
(82:17)(94:22)(125:24)(129:9)(133:4)(135:17)(137:7)
(137:10)(154:20)(156:8)(164:16)(167:21)(173:6)(173:17)
(176:14)(178:21)(192:9)(192:11)(195:18)(199:24)
(206:15)(208:8)(210:3)(211:23)
something that (185:1)
sometimes (12:3)(31:7)(41:14)(54:15)(56:19)(182:14)
somewhere (71:5)(198:2)
son (22:4)(22:14)(38:23)(48:3)
sorry (41:13)(52:15)(68:11)(81:5)(86:13)(86:16)
(106:20)(108:11)(109:24)(130:11)(135:6)(184:16)
(185:20)(188:7)(193:17)(199:17)
sort (99:4)(116:10)(208:11)
sound-mind (21:9)
sounds (18:8)(21:15)(21:21)(39:5)
south (188:2)
speak (127:8)(154:14)(182:19)
special (7:9)(25:13)(25:18)(25:21)(27:7)(32:16)
(33:23)(35:1)(39:3)(39:19)(58:21)(69:8)(70:9)(71:16)
(72:2)(72:4)(74:10)(74:23)(75:23)(78:14)(82:11)(85:1)
(94:23)(95:15)(100:25)(101:4)(101:7)(137:16)(137:17)
(138:9)(138:12)(138:13)(152:15)(152:19)(155:11)
(157:14)(161:2)(175:4)(209:20)(212:10)
specialty (66:19)
specific (84:24)
specifically (12:6)(56:1)(84:21)(91:3)
speculate (154:4)
spend (77:25)(159:14)(160:10)
spending (30:1)(59:20)
spoon (80:24)
sports (187:25)
spouse (177:13)(178:11)(179:1)
squarely (34:20)
stab (142:20)(173:12)
stabbed (16:17)(142:24)
stage (138:7)(138:8)(148:24)(150:7)(150:13)(150:17)
(150:19)(152:18)(155:14)(156:22)(159:9)(212:16)(213:10)
stamps (196:2)(208:10)
stand (6:12)(16:15)(41:25)(93:8)(122:13)(141:11)
standard (175:7)(204:17)
standing (24:18)
standpoint (68:8)
stands (32:12)(34:14)(131:8)
start (27:7)(28:5)(52:14)(87:7)(96:5)(140:25)(141:15)
(145:20)(183:7)(196:10)

started (27:10)(207:3)
starting (198:25)
starts (8:21)
state (1:5)(2:10)(3:4)(4:4)(9:14)(13:14)(13:21)
(13:24)(14:15)(15:9)(15:13)(18:14)(19:10)(28:9)(32:17)
(49:20)(49:22)(50:5)(51:15)(51:18)(51:19)(52:6)(54:5)
(55:24)(56:3)(56:25)(57:4)(61:1)(62:10)(63:19)(71:4)
(71:25)(72:10)(72:17)(75:19)(76:22)(77:13)(77:17)
(78:19)(83:8)(84:19)(97:18)(104:6)(104:8)(106:7)
(108:3)(109:18)(111:21)(113:15)(118:5)(119:16)(124:4)
(124:18)(136:13)(137:19)(137:24)(139:24)(141:23)
(142:9)(144:22)(148:11)(148:21)(150:15)(150:18)
(151:10)(151:15)(152:6)(152:14)(152:21)(154:12)
(157:23)(166:13)(167:13)(167:19)(173:13)(174:13)
(178:6)(178:7)(193:8)(193:9)(198:6)(198:11)(199:18)
(199:20)(200:4)(200:6)(200:9)(200:22)(206:15)(207:19)
(207:20)(208:2)(209:22)(211:7)(214:4)(216:2)(216:6)
stated (14:8)(84:25)(85:5)
statement (67:25)(126:13)(127:11)
states (15:23)(31:10)(47:24)(52:5)(56:5)(56:7)
state's (3:9)(3:11)(3:14)(3:16)(3:19)(57:2)(100:19)
(104:13)(108:11)(112:4)(116:12)(116:17)(119:25)
(198:18)(204:13)
stating (84:25)
station (188:2)
stayed (38:21)
stealing (19:3)(100:3)
stellar (22:4)
stenotype (1:23)
step (83:1)
sticking (62:15)
still (6:20)(10:11)(34:24)(52:1)(58:18)(61:21)(93:18)
(98:10)(107:7)(110:17)(111:1)(114:16)(115:6)(118:25)
(122:23)(133:10)(143:21)(160:11)(168:21)(178:22)
(186:4)(186:5)(187:18)(187:19)(191:1)(203:10)
stint (186:12)
stomp (136:9)
stood (6:17)(93:15)(122:20)
stop (42:1)(49:10)(159:10)
stops (161:2)(161:5)(165:8)(165:9)
store (29:25)(33:5)(61:14)(158:17)(162:7)(162:12)
(162:16)(162:20)(163:18)(164:6)
stores (47:16)
street (2:13)
strictly (25:20)(31:14)(37:12)(41:23)(154:3)
strikes (55:10)(87:1)
striking (62:25)
strongly (59:1)(59:9)(67:24)(188:20)(188:24)
struck (87:1)(87:3)
struggle (66:22)
study (154:18)
stuff (41:15)(112:19)(144:17)(167:1)(167:2)(170:4)
(180:24)(203:9)
style (89:24)(89:25)(187:7)
subject (20:10)
subpoenas (89:1)
substantial (35:12)(54:22)(208:17)
substantive (48:16)
such (43:4)(58:8)(65:16)(65:25)(83:21)(83:24)(84:14)
(132:12)(187:25)(210:25)
sudden (133:3)(134:25)(135:11)(135:15)
sue (179:4)
suffer (22:14)(22:20)
sufficient (35:12)(36:8)(167:5)(167:25)(168:1)(168:4)
(168:10)(169:22)(170:15)(171:13)(171:24)(172:1)
(172:11)(183:13)(184:1)
sufficiently (36:24)(168:9)(169:4)(170:5)
suggest (16:25)(84:16)
suite (2:14)
sum (44:3)
sun (166:1)
super (46:11)
support (59:9)(64:20)
supposed (69:10)(71:12)(73:13)(85:2)(202:4)
supposedly (146:22)
supreme (83:24)(84:4)(84:8)(217:2)(217:5)
sure (5:17)(12:18)(13:3)(18:2)(21:3)(30:6)(30:17)

surprised                                                    that                        242

(64:13)(66:24)(91:3)(94:5)(123:2)(127:3)(128:21)
(131:2)(134:7)(142:18)(152:25)(157:9)(172:23)(176:25)
(184:2)(189:21)(191:15)(191:20)(192:12)(194:2)(196:6)
(196:20)(197:2)(197:19)(197:22)(202:16)(203:11)
(203:22)(205:8)(210:9)
surprised  (78:5)
surrounding  (23:12)
suspend  (43:25)
swear  (85:8)(93:19)
switch  (197:21)
sworn  (6:20)(93:20)(122:24)
system  (12:10)(12:20)(13:8)(13:17)(43:4)(43:7)(43:12)
(47:11)(68:3)
systems  (47:7)

## T

table  (32:24)(96:24)(101:9)(101:10)(137:22)(207:15)
take  (10:21)(18:1)(28:1)(33:10)(40:4)(45:4)(46:22)
(63:23)(69:11)(71:8)(79:13)(82:14)(87:8)(87:10)(91:20)
(103:23)(105:25)(107:17)(109:10)(117:16)(134:20)
(135:9)(135:17)(135:20)(137:4)(141:11)(155:22)(180:13)
(180:15)(180:16)(183:8)(183:24)(183:25)(184:21)(185:9)
(185:17)(191:19)(198:22)(205:20)(205:25)(212:1)(212:2)
(213:19)(213:21)
taken  (46:21)(46:24)(80:16)(81:22)(84:24)(161:16)
(173:6)(184:7)(185:6)
takes  (21:22)(108:13)
taking  (9:20)(17:21)(17:24)(36:3)(48:18)(51:10)
(62:14)(74:22)(92:23)(117:12)(121:5)(156:21)(165:22)
talk  (6:10)(7:11)(17:13)(17:14)(24:13)(32:24)(45:24)
(46:12)(46:13)(49:10)(58:24)(69:16)(70:8)(70:9)(70:19)
(70:22)(78:14)(80:8)(95:1)(105:23)(109:12)(109:13)
(132:20)(138:10)(139:16)(146:3)(147:22)(150:25)(156:1)
(156:2)(182:10)(185:25)(186:2)(197:19)(203:17)
talked  (25:7)(57:10)(85:7)(121:18)(137:15)(145:15)
(145:16)(158:1)
talking  (8:7)(10:1)(10:14)(13:1)(49:11)(54:25)(56:21)
(69:7)(69:12)(74:25)(76:25)(96:6)(100:12)(101:12)
(103:7)(104:24)(113:7)(123:10)(124:4)(133:7)(134:22)
(134:24)(135:1)(135:2)(141:21)(143:19)(170:25)(171:3)
(182:11)(182:24)(196:10)(200:9)(200:11)(207:4)(210:19)
(212:9)(212:12)(213:2)
talks  (196:15)
target  (162:9)
teachers  (160:1)
team  (8:15)(9:6)(96:19)(96:20)(97:9)(123:23)(123:25)
(124:9)
teams  (66:20)
technically  (10:7)
television  (13:5)(43:19)(202:10)
tell  (7:1)(7:25)(11:8)(12:4)(16:25)(19:7)(21:25)
(24:15)(26:10)(28:6)(31:7)(31:10)(35:18)(35:24)(40:9)
(40:20)(42:7)(43:21)(46:24)(50:25)(52:24)(63:9)(64:24)
(67:6)(71:16)(72:4)(72:17)(75:23)(77:20)(78:15)(79:22)
(81:14)(94:12)(98:7)(122:7)(125:2)(125:11)(125:12)
(128:9)(128:18)(137:20)(143:2)(146:9)(153:10)(161:17)
(162:5)(171:2)(171:7)(171:9)(171:10)(171:21)(175:24)
(176:6)(182:9)(183:3)(195:6)(195:7)(195:8)(195:15)
(197:2)(206:7)(210:3)(211:9)(214:21)
telling  (11:10)(31:22)(35:5)(63:20)(76:22)(88:2)
(95:21)(135:15)(138:25)(209:5)
tells  (13:12)(13:13)(53:19)(69:25)(94:21)(139:23)
(139:24)(141:17)(163:17)
tend  (65:10)(65:18)(73:20)
term  (132:17)(143:16)(144:1)(153:8)
terminal  (22:10)
terms  (21:7)(28:4)(37:22)(63:16)(70:9)(131:5)(136:3)
(191:18)
terrible  (21:21)
test  (16:6)(17:6)(54:24)
testified  (9:13)(97:17)(106:6)(109:17)(113:14)(118:4)
(124:17)
testifies  (16:15)(142:17)
testify  (15:1)(15:4)(15:12)(65:5)(140:25)(195:17)
testifying  (64:16)(141:15)(195:19)
testimony  (16:12)(67:1)(67:18)(71:3)(71:4)(71:25)
(72:1)(84:21)(145:23)

texas  (1:5)(1:7)(1:22)(2:8)(2:9)(2:10)(2:14)(2:18)
(2:23)(12:9)(17:15)(32:17)(48:21)(49:2)(49:3)(49:16)
(52:6)(56:7)(63:10)(70:14)(92:15)(112:24)(114:18)
(114:22)(120:25)(124:5)(130:5)(130:6)(130:7)(136:3)
(136:17)(137:1)(137:9)(139:17)(144:23)(152:21)(154:6)
(154:12)(161:20)(172:24)(174:13)(174:16)(193:9)
(194:17)(198:7)(199:10)(199:20)(200:2)(200:4)(200:6)
(200:22)(216:2)(216:6)(216:21)(217:19)
texting  (20:4)
than  (7:12)(20:1)(28:17)(28:21)(30:11)(30:20)(36:11)
(43:20)(51:9)(57:13)(58:8)(59:25)(60:20)(66:23)(71:13)
(74:8)(76:17)(87:10)(89:16)(95:3)(116:10)(144:13)
(153:11)(153:21)(167:7)(167:20)(176:18)(182:11)(195:8)
(195:15)
thank  (5:9)(5:19)(9:11)(45:2)(45:3)(45:13)(48:10)
(82:22)(82:25)(83:6)(83:18)(84:18)(85:13)(86:2)(91:13)
(91:14)(91:17)(92:4)(92:13)(97:14)(103:10)(103:15)
(103:16)(103:20)(103:21)(103:25)(104:2)(104:4)(105:13)
(106:3)(107:16)(107:23)(108:10)(109:2)(109:15)(111:13)
(111:14)(111:16)(111:17)(112:4)(112:14)(113:8)(113:11)
(115:13)(115:14)(115:15)(116:11)(117:23)(119:5)(119:8)
(119:9)(119:11)(119:12)(119:24)(120:17)(124:15)
(151:12)(180:21)(214:21)(215:4)(215:7)(215:18)(215:19)
thanks  (109:21)
that  (5:14)(5:24)(6:4)(6:10)(6:14)(6:17)(6:20)(7:9)
(7:21)(8:3)(8:12)(8:20)(9:21)(9:25)(10:7)(10:17)
(10:19)(10:22)(10:23)(11:3)(11:4)(11:5)(11:6)(11:8)
(11:9)(11:14)(11:16)(11:19)(11:23)(12:3)(12:13)(12:14)
(12:18)(12:25)(13:9)(13:19)(13:22)(14:2)(14:3)(14:6)
(14:14)(14:20)(14:21)(14:22)(14:23)(15:6)(15:7)(15:13)
(15:14)(15:17)(15:23)(16:1)(16:5)(16:10)(16:17)(16:18)
(16:22)(16:24)(16:25)(17:8)(17:20)(18:5)(18:8)(19:4)
(19:7)(19:8)(19:10)(19:13)(19:14)(19:15)(19:20)(20:1)
(20:15)(20:17)(20:22)(21:1)(21:4)(21:12)(21:21)(21:25)
(22:2)(22:5)(22:9)(22:15)(22:16)(22:18)(22:23)(23:2)
(23:4)(23:5)(24:7)(24:18)(24:21)(24:25)(25:13)(25:15)
(25:18)(25:22)(26:3)(26:6)(26:9)(26:10)(26:18)(26:19)
(26:20)(27:1)(27:2)(27:3)(27:4)(27:10)(27:13)(27:15)
(27:23)(28:2)(28:11)(28:13)(28:16)(28:17)(28:18)
(28:21)(28:22)(28:25)(29:2)(29:7)(29:15)(30:2)(30:4)
(30:11)(30:20)(30:22)(30:23)(31:3)(31:10)(31:11)
(31:13)(31:14)(31:16)(31:22)(32:3)(32:8)(32:10)(32:11)
(32:14)(33:5)(33:16)(33:18)(33:20)(33:21)(33:25)(34:1)
(34:2)(34:3)(34:4)(34:14)(34:19)(34:20)(34:24)(34:25)
(35:1)(35:8)(35:10)(35:11)(35:13)(35:17)(36:8)(36:9)
(36:10)(36:12)(36:22)(36:25)(37:3)(37:12)(37:14)
(37:15)(37:23)(38:1)(38:2)(38:11)(38:19)(38:20)(38:21)
(38:24)(39:8)(39:10)(39:14)(39:17)(39:24)(40:1)(40:4)
(40:5)(40:9)(40:11)(41:2)(41:3)(41:7)(41:14)(41:16)
(42:8)(42:9)(42:13)(42:19)(43:4)(43:10)(43:24)(44:4)
(44:6)(44:10)(45:25)(46:4)(46:5)(46:6)(46:16)(46:22)
(47:1)(47:2)(47:4)(47:7)(47:17)(47:20)(48:6)(48:21)
(48:25)(49:2)(49:7)(49:11)(49:16)(49:20)(49:23)(50:1)
(50:5)(50:6)(50:7)(50:9)(50:14)(50:15)(50:17)(50:20)
(50:24)(50:25)(51:1)(51:4)(51:10)(51:11)(51:13)(51:14)
(51:15)(51:18)(51:23)(51:25)(52:4)(52:6)(52:10)(52:13)
(52:15)(52:16)(53:3)(53:4)(53:9)(53:10)(53:11)(53:14)
(53:16)(53:23)(53:25)(54:1)(54:2)(54:3)(54:4)(54:5)
(54:9)(54:17)(54:19)(54:21)(55:1)(55:5)(55:12)(55:13)
(55:16)(55:19)(55:20)(56:10)(56:17)(56:18)(57:2)(57:3)
(57:4)(57:5)(57:9)(57:11)(57:12)(57:15)(57:17)(57:18)
(58:2)(58:4)(58:6)(58:7)(58:11)(58:14)(58:18)(58:20)
(58:24)(58:25)(59:2)(59:3)(59:5)(59:6)(59:13)(59:15)
(59:17)(59:20)(59:24)(60:2)(60:6)(60:25)(61:1)(61:8)
(61:12)(61:17)(61:18)(62:1)(62:10)(62:11)(63:3)(63:5)
(63:12)(63:15)(63:18)(63:20)(63:22)(63:23)(63:25)
(64:3)(64:9)(64:13)(64:17)(64:19)(64:22)(64:23)(64:24)
(65:1)(65:17)(65:25)(66:2)(66:7)(66:10)(66:11)(66:18)
(66:23)(67:2)(67:6)(67:10)(67:24)(67:25)(68:3)(68:17)
(68:19)(68:23)(68:24)(69:5)(69:10)(69:11)(69:14)
(69:16)(69:17)(69:25)(70:1)(70:4)(70:13)(70:17)(71:6)
(71:11)(71:12)(71:13)(71:17)(71:18)(71:22)(72:5)(72:6)
(72:7)(72:8)(72:9)(72:10)(72:11)(72:13)(72:14)(72:20)
(72:21)(72:22)(73:2)(73:21)(74:2)(74:4)(74:6)(74:22)
(75:4)(75:13)(75:14)(75:20)(75:23)(76:2)(76:3)(76:9)
(76:13)(76:14)(76:22)(76:23)(77:5)(77:9)(77:11)(77:14)
(77:16)(77:17)(77:18)(77:19)(77:21)(78:6)(78:15)

that's                                                there                    243

(78:20) (78:21) (78:24) (79:1) (79:4) (79:6) (79:7) (79:10)
(79:12) (79:13) (79:22) (79:23) (79:25) (80:11) (80:15)
(80:18) (80:25) (81:1) (81:4) (81:13) (81:14) (81:15) (81:16)
(81:17) (81:20) (81:22) (81:25) (82:1) (82:4) (82:8) (82:11)
(82:12) (82:13) (82:14) (82:15) (83:3) (83:18) (83:19)
(83:23) (84:1) (84:2) (84:4) (84:8) (84:9) (84:11) (84:12)
(85:1) (85:3) (85:5) (85:6) (85:11) (85:16) (85:17) (85:21)
(86:7) (86:16) (86:19) (86:25) (87:1) (87:3) (87:6) (87:8)
(87:9) (87:12) (87:14) (87:15) (87:20) (87:22) (88:21)
(88:23) (88:25) (89:5) (89:10) (89:17) (89:18) (89:21)
(89:23) (90:6) (90:11) (90:12) (90:13) (90:15) (90:25) (91:6)
(92:7) (92:25) (93:5) (93:12) (93:15) (93:18) (93:23) (93:25)
(94:5) (94:7) (94:9) (94:11) (94:13) (94:21) (94:25) (95:16)
(95:24) (96:21) (96:22) (97:25) (98:14) (98:18) (99:5)
(99:21) (100:6) (100:9) (100:12) (100:16) (100:18) (100:19)
(100:21) (100:22) (100:25) (101:2) (101:4) (101:13) (101:16)
(101:19) (101:24) (102:4) (102:6) (102:7) (102:24) (103:22)
(104:23) (106:23) (106:24) (107:5) (107:7) (107:21) (107:23)
(108:5) (108:12) (108:14) (109:12) (110:3) (110:11) (110:14)
(110:17) (111:1) (111:23) (112:19) (113:19) (114:4) (114:5)
(114:14) (114:15) (114:17) (114:18) (114:19) (114:21)
(114:24) (115:5) (115:6) (115:21) (115:23) (115:24) (116:3)
(116:9) (116:10) (117:1) (117:10) (117:20) (118:17) (118:19)
(118:23) (118:25) (119:7) (119:18) (119:19) (120:19) (121:9)
(121:19) (122:7) (122:11) (122:17) (122:20) (122:23) (123:6)
(123:10) (124:9) (125:4) (125:5) (125:10) (125:13) (125:18)
(125:19) (126:1) (126:16) (126:17) (126:20) (127:4) (127:10)
(128:3) (128:11) (128:15) (128:19) (129:3) (129:8) (129:14)
(129:21) (129:25) (130:3) (130:8) (130:14) (130:16) (130:19)
(131:8) (131:11) (131:12) (131:20) (131:21) (132:1) (132:8)
(132:10) (132:12) (132:15) (132:19) (132:21) (133:7)
(133:15) (133:21) (133:23) (133:24) (133:25) (134:1) (134:2)
(134:4) (134:9) (134:13) (134:22) (134:23) (134:25) (135:5)
(135:7) (135:9) (135:13) (135:14) (135:15) (135:16) (135:25)
(136:1) (136:2) (136:4) (136:5) (136:12) (136:16) (136:18)
(136:25) (137:18) (137:24) (137:25) (138:2) (138:3) (138:4)
(138:5) (138:6) (138:11) (138:15) (138:16) (138:17) (138:19)
(138:20) (138:21) (138:23) (138:25) (139:10) (139:11)
(139:18) (139:23) (139:25) (140:9) (140:24) (140:25) (141:7)
(141:8) (141:18) (141:22) (141:25) (142:9) (142:18) (142:24)
(143:2) (143:16) (143:17) (144:6) (144:20) (145:7) (145:18)
(145:19) (146:7) (146:8) (147:14) (147:25) (148:4) (148:8)
(148:14) (148:18) (148:21) (148:22) (149:1) (149:2) (149:7)
(149:11) (149:14) (149:15) (149:18) (149:21) (150:6)
(150:21) (150:24) (151:1) (151:2) (151:5) (151:8) (151:13)
(151:20) (151:23) (151:25) (152:5) (152:13) (152:22)
(152:24) (153:3) (153:6) (153:8) (153:13) (153:20) (153:24)
(154:8) (154:11) (154:12) (154:16) (154:23) (155:1) (155:2)
(155:14) (156:5) (156:6) (156:7) (156:9) (156:14) (156:15)
(156:17) (156:23) (156:25) (159:1) (159:6) (159:7) (159:11)
(160:8) (160:9) (160:12) (160:14) (160:17) (160:21) (160:25)
(161:12) (161:13) (161:16) (161:18) (162:24) (163:1) (163:2)
(164:8) (164:10) (164:15) (164:17) (164:21) (164:23)
(165:19) (165:23) (166:1) (166:25) (167:2) (167:5) (167:6)
(167:9) (167:21) (167:23) (168:4) (168:5) (168:8) (169:3)
(169:6) (169:18) (169:23) (170:3) (170:4) (170:7) (170:12)
(170:15) (170:23) (170:25) (171:11) (171:25) (172:10)
(172:12) (172:13) (172:14) (172:17) (172:19) (172:22)
(172:24) (173:4) (173:6) (173:19) (173:21) (174:1) (174:4)
(174:14) (174:19) (174:23) (176:4) (176:19) (177:2) (177:12)
(177:23) (178:14) (178:15) (178:16) (178:25) (179:11)
(179:14) (179:18) (180:4) (180:19) (181:15) (181:16) (183:3)
(183:4) (183:6) (183:12) (183:16) (183:20) (183:21) (183:22)
(183:25) (184:1) (184:10) (184:17) (184:18) (184:19)
(184:23) (184:25) (185:5) (185:7) (185:10) (185:13) (185:14)
(185:24) (185:25) (186:7) (186:8) (186:15) (187:6) (187:10)
(187:14) (187:17) (187:18) (187:19) (187:22) (188:1)
(188:21) (189:3) (189:10) (189:18) (189:23) (189:24) (190:2)
(190:4) (190:5) (190:9) (190:12) (190:15) (190:16) (191:3)
(191:5) (191:13) (191:18) (191:19) (192:12) (193:1) (193:6)
(193:8) (193:12) (193:14) (193:19) (194:3) (194:4) (194:17)
(194:18) (194:20) (194:25) (195:2) (195:4) (195:5) (195:6)
(195:9) (195:14) (195:15) (195:17) (195:18) (195:21)
(195:22) (195:25) (196:14) (196:15) (196:21) (197:1) (197:2)
(197:13) (197:20) (197:22) (197:23) (198:4) (198:6) (198:14)
(198:17) (199:8) (199:9) (199:11) (199:14) (200:6) (200:8)
(200:9) (200:11) (200:12) (200:22) (200:25) (201:3) (201:5)

(201:8) (201:14) (201:18) (201:19) (202:4) (202:8) (202:10)
(202:15) (202:16) (202:21) (202:23) (203:10) (203·16)
(203:19) (204:9) (204:12) (204:17) (204:19) (205:4) (205:5)
(205:8) (205:9) (205:10) (205:11) (205:18) (205:21) (205:22)
(205:25) (206:1) (206:2) (206:3) (206:4) (206:6) (206:7)
(206:9) (206:11) (206:15) (207:16) (207:17) (207:20)
(207:23) (207:25) (208:1) (208:3) (208:5) (208:10) (208:12)
(208:16) (208:18) (208:22) (208:24) (208:25) (209:5) (209:6)
(209:12) (209:18) (209:20) (209:21) (209:22) (210:1) (210:3)
(210:6) (210:19) (210:24) (210:25) (211:2) (211:7) (211:11)
(211:15) (211:17) (211:19) (211:20) (211:23) (212:2) (212:3)
(212:4) (212:7) (212:19) (213:5) (213:9) (213:10) (213:16)
(214:9) (214:11) (215:16) (216:6) (216:13) (217:5)
that's   (7:10) (7:19) (7:20) (11:9) (11:25) (12:19) (12:25)
(14:13) (14:17) (15:2) (18:3) (18:8) (18:17) (20:3) (20:6)
(21:24) (22:3) (22:11) (23:7) (23:15) (24:5) (24:23) (25:7)
(25:16) (29:4) (29:13) (30:9) (32:12) (34:11) (35:1) (36:16)
(36:17) (37:9) (38:14) (38:17) (41:24) (42:19) (42:20)
(43:14) (43:17) (48:2) (51:5) (51:9) (52:12) (52:14) (53:21)
(54:24) (55:4) (56:8) (56:21) (57:11) (58:1) (58:3) (59:14)
(59:15) (61:13) (62:14) (64:11) (64:12) (64:23) (65:7) (66:1)
(66:5) (66:7) (66:9) (66:16) (67:15) (68:12) (70:7) (71:11)
(71:21) (74:19) (76:1) (76:7) (76:18) (76:24) (77:2) (77:11)
(77:18) (78:4) (78:5) (80:6) (82:1) (82:10) (87:13) (87:25)
(88:19) (89:22) (90:7) (93:25) (98:5) (98:7) (98:23) (103:7)
(104:16) (104:18) (105:18) (106:21) (109:7) (116:5) (121:11)
(123:5) (124:1) (126:22) (126:24) (127:6) (128:6) (129:11)
(132:4) (133:5) (134:7) (134:16) (135:12) (135:18) (138:17)
(141:9) (142:1) (142:4) (142:11) (142:14) (144:7) (144:21)
(149:7) (149:11) (149:21) (149:22) (152:15) (153:12) (154:2)
(157:4) (157:18) (157:23) (159:23) (160:4) (164:7) (172:22)
(177:5) (183:15) (184:10) (184:24) (185:14) (185:23) (186:5)
(188:10) (188:13) (189:9) (192:14) (192:15) (192:19)
(192:21) (193:19) (194:1) (194:23) (194:24) (197:6) (197:15)
(197:16) (198:6) (199:3) (201:11) (201:14) (201:18) (201:24)
(202:25) (203:7) (203:12) (203:20) (205:12) (205:13) (206:6)
(206:19) (207:12) (208:23) (208:24) (209:12) (210:14)
(212:8) (212:14) (212:15) (213:11) (213:12) (213:13)
theft   (12:24) (126:6) (126:10) (127:4) (143:20)
their   (6:12) (9:9) (10:3) (10:20) (11:5) (19:23) (19:24)
(20:6) (38:10) (51:2) (54:13) (57:20) (60:22) (60:25) (61:11)
(62:7) (62:17) (64:6) (66:1) (66:19) (67:11) (68:16) (68:17)
(68:21) (68:25) (69:4) (69:6) (73:21) (78:4) (80:24) (82:18)
(87:1) (93:10) (97:11) (101:22) (101:24) (102:5) (122:15)
(124:12) (132:7) (133:24) (145:23) (156:21) (184:8) (209:24)
(217:9)
them   (7:25) (8:14) (10:1) (10:13) (13:4) (15:22) (16:11)
(19:3) (21:6) (27:8) (40:21) (40:22) (41:16) (42:18) (47:10)
(52:6) (55:10) (56:16) (60:13) (61:4) (61:5) (62:6) (62:18)
(64:1) (64:19) (66:5) (66:24) (67:4) (76:6) (81:15) (84:13)
(96:5) (102:3) (102:4) (114:11) (117:20) (124:3) (125:15)
(131:14) (132:1) (132:5) (132:11) (133:12) (138:10) (141:3)
(155:24) (156:13) (169:2) (169:5) (171:2) (171:5) (171:7)
(171:9) (171:10) (171:14) (171:22) (176:4) (183:4) (186:22)
(187:15) (189:13) (189:15) (193:6) (206:7) (209:24)
theme   (24:6) (194:17)
themselves   (80:10)
then   (7:13) (8:23) (12:5) (12:14) (12:15) (12:17) (16:3)
(16:24) (19:17) (20:10) (20:19) (21:14) (23:24) (24:14)
(24:19) (24:22) (25:3) (27:1) (32:10) (32:11) (34:13) (38:22)
(38:25) (39:1) (40:13) (42:19) (42:22) (42:23) (44:3) (46:6)
(46:13) (46:15) (49:14) (51:10) (51:11) (51:12) (51:25)
(52:9) (52:12) (52:20) (59:9) (62:5) (62:18) (65:21) (66:8)
(66:22) (69:11) (71:3) (71:5) (71:24) (72:1) (72:22) (73:15)
(75:5) (81:25) (82:2) (82:14) (84:11) (84:15) (86:18) (86:25)
(87:2) (88:6) (88:15) (88:17) (94:23) (95:6) (95:11) (95:12)
(96:5) (96:12) (96:24) (97:5) (98:14) (100:25) (101:5)
(108:10) (114:16) (115:6) (116:15) (117:19) (123:17)
(124:10) (125:12) (125:13) (126:12) (127:11) (128:7)
(130:13) (131:4) (131:15) (137:11) (138:7) (141:13) (144:16)
(145:21) (147:9) (148:10) (148:20) (148:23) (149:14)
(149:17) (149:22) (152:15) (154:23) (156:9) (156:11) (161:4)
(164:23) (165:2) (165:13) (172:22) (179:11) (182:1) (188:9)
(189:22) (196:9) (196:25) (198:9) (198:18) (199:1) (203:5)
(207:15) (208:8) (209:9) (209:15) (212:2) (212:6) (214:4)
there   (5:8) (9:2) (12:24) (15:9) (19:9) (20:8) (21:4)
(21:19) (22:13) (22:18) (24:15) (24:18) (25:24) (27:14)

there's                                              threat                        244

(28:11) (30:7) (30:8) (30:12) (30:14) (31:3) (33:18) (35:3) (36:8) (38:2) (40:8) (42:11) (42:12) (46:19) (46:23) (49:10) (50:20) (51:8) (51:10) (51:19) (52:20) (53:14) (54:21) (55:6) (55:7) (55:17) (57:19) (59:12) (61:22) (63:19) (63:22) (68:1) (68:13) (68:14) (68:17) (68:24) (69:17) (70:23) (72:6) (72:13) (74:14) (78:24) (82:7) (83:3) (92:2) (94:7) (97:6) (97:10) (98:10) (100:5) (104:22) (105:12) (106:20) (107:3) (107:23) (108:22) (110:1) (110:8) (113:10) (114:1) (114:4) (115:5) (115:21) (116:25) (118:2) (118:15) (120:15) (124:8) (124:10) (126:2) (126:17) (127:20) (127:24) (128:3) (128:8) (128:25) (131:12) (137:13) (137:16) (137:19) (137:21) (138:4) (143:6) (143:12) (146:10) (147:25) (148:3) (148:5) (148:17) (150:25) (151:1) (152:3) (154:4) (156:5) (157:13) (157:14) (159:7) (162:6) (162:8) (162:12) (163:3) (163:6) (165:7) (167:5) (167:21) (168:4) (172:19) (173:4) (176:3) (181:9) (181:16) (183:2) (186:17) (188:17) (190:8) (190:18) (190:22) (194:21) (195:23) (198:2) (199:1) (199:25) (203:1) (203:14) (205:2) (205:4) (210:11) (210:12) (210:20) (215:3)
**there's** (7:18) (7:19) (8:12) (8:17) (13:15) (13:16) (15:3) (19:22) (19:25) (20:1) (20:2) (20:14) (20:16) (26:2) (30:11) (30:15) (34:25) (35:8) (41:2) (47:11) (51:8) (52:6) (63:22) (74:20) (79:16) (95:20) (95:23) (96:21) (102:22) (112:19) (114:17) (121:24) (123:22) (131:4) (131:6) (132:18) (137:9) (139:18) (150:4) (152:13) (152:22) (153:7) (154:8) (155:6) (160:14) (161:4) (161:12) (162:7) (168:3) (172:5) (181:13) (189:22) (192:16) (192:25) (196:25) (198:1) (199:7)
**these** (9:5) (14:12) (28:3) (28:4) (70:9) (70:12) (71:16) (72:2) (73:15) (74:23) (76:20) (96:15) (97:8) (109:1) (113:12) (118:15) (123:20) (124:1) (132:1) (133:6) (135:13) (137:15) (138:9) (139:20) (152:15) (152:18) (154:18) (156:2) (156:12) (157:7) (160:5) (161:22) (166:19) (168:24) (182:24) (184:13) (187:21) (189:6) (196:11) (197:9) (200:10) (200:13) (200:20) (201:11) (202:1) (203:17) (204:23) (206:10) (215:9)
**they** (9:6) (10:17) (11:22) (13:6) (13:7) (14:10) (14:11) (14:12) (15:24) (15:25) (16:1) (16:16) (16:17) (23:13) (23:14) (25:12) (25:13) (25:14) (25:16) (28:4) (30:7) (30:8) (30:9) (30:10) (38:16) (40:24) (41:10) (51:2) (51:23) (53:8) (53:10) (53:21) (54:19) (54:20) (54:21) (54:23) (54:25) (55:10) (55:11) (55:12) (55:16) (57:23) (57:25) (58:17) (58:19) (60:24) (61:11) (62:6) (62:19) (63:17) (63:24) (64:1) (64:5) (64:18) (65:7) (65:10) (65:13) (65:18) (66:2) (66:12) (66:23) (68:20) (68:21) (71:3) (71:5) (71:8) (71:9) (71:10) (71:11) (73:21) (75:8) (76:13) (76:18) (76:19) (76:20) (77:25) (79:23) (80:15) (80:18) (80:19) (81:14) (81:22) (82:9) (82:13) (84:11) (84:12) (84:14) (94:5) (95:9) (96:5) (96:17) (97:9) (98:9) (99:24) (100:22) (102:2) (102:3) (102:5) (114:11) (122:7) (129:3) (133:3) (133:10) (133:16) (133:17) (133:23) (141:1) (141:2) (141:4) (141:10) (141:11) (141:13) (141:15) (141:21) (145:21) (147:19) (154:6) (155:5) (160:9) (160:11) (171:3) (171:8) (173:17) (173:19) (185:9) (188:1) (188:8) (189:18) (195:12) (195:15) (195:17) (195:19) (195:22) (198:9) (198:17) (198:21) (198:25) (200:11) (201:5) (201:7) (201:9) (204:16) (206:2) (206:3) (208:7) (208:10) (208:13) (211:9) (211:11) (211:17) (211:24)
**they -- whatever** (30:9)
**they'd** (206:17)
**they're** (7:11) (7:13) (7:14) (8:11) (10:24) (10:25) (11:10) (13:4) (13:6) (14:14) (15:10) (32:1) (44:1) (53:6) (65:9) (66:8) (67:5) (67:8) (76:7) (81:15) (95:2) (95:11) (95:12) (96:19) (122:8) (124:8) (141:20) (156:13) (171:3) (189:7)
**they've** (10:20) (58:9) (67:2) (75:25) (76:5) (78:20) (80:23) (80:24) (132:9) (141:14) (208:24)
**thing** (13:24) (17:19) (19:7) (24:13) (26:3) (26:10) (26:18) (26:19) (27:4) (27:11) (32:22) (34:25) (35:24) (38:12) (42:22) (43:6) (44:11) (52:4) (66:2) (66:15) (80:14) (80:25) (98:18) (98:19) (116:10) (132:4) (135:3) (139:11) (142:16) (147:13) (148:16) (152:13) (161:18) (167:2) (172:3) (173:16) (178:10) (179:9) (191:3) (192:17) (193:3) (196:9) (201:24) (201:25) (202:3) (203:21) (209:18) (213:5)
**things** (6:21) (20:12) (26:5) (31:3) (36:8) (37:13) (38:14) (38:18) (46:13) (49:20) (53:21) (66:1) (73:13) (73:16) (94:9) (98:1) (98:14) (114:15) (115:19) (125:18) (132:12) (137:1) (137:16) (138:24) (148:5) (154:15) (166:19) (168:5) (168:24) (172:13) (172:14) (176:7) (182:24) (184:14) (185:10) (189:19) (191:17) (192:16) (197:9) (200:10) (200:13) (201:11) (202:2) (210:25) (211:13) (212:7) (213:5)
**think** (8:17) (14:16) (17:2) (21:12) (23:22) (24:16) (24:18)

(24:20) (25:12) (25:14) (25:15) (25:17) (29:7) (29:11) (29:23) (30:10) (30:22) (31:17) (31:18) (31:22) (33:13) (34:4) (34:18) (35:11) (35:15) (35:16) (36:12) (36:15) (36:16) (36:17) (36:18) (36:19) (36:20) (36:23) (37:3) (37:5) (39:6) (40:14) (42:3) (42:21) (42:23) (43:6) (48:20) (50:17) (51:9) (56:24) (57:18) (58:18) (59:12) (59:14) (59:20) (60:1) (60:8) (60:12) (60:15) (61:17) (62:4) (62:21) (64:17) (64:24) (65:17) (67:25) (68:10) (68:24) (69:5) (69:18) (69:21) (70:7) (74:6) (75:4) (77:24) (80:4) (80:11) (81:3) (81:6) (82:22) (84:21) (85:9) (86:8) (87:9) (88:24) (89:7) (89:8) (89:11) (89:17) (98:22) (99:3) (99:8) (99:23) (101:17) (102:6) (104:18) (105:24) (106:17) (109:10) (113:4) (117:16) (123:23) (130:15) (133:18) (134:1) (135:16) (146:8) (147:18) (149:7) (154:11) (158:14) (169:24) (176:4) (176:5) (176:25) (178:13) (183:18) (184:1) (188:21) (189:5) (191:8) (196:25) (200:7) (200:12) (200:13) (200:14) (201:24) (206:11) (208:12) (209:3) (210:21) (212:1)
**thinking** (49:13) (49:14) (55:25) (60:9) (66:22) (73:12) (74:15) (101:18) (102:17) (154:1) (178:16) (197:5)
**thinks** (174:22)
**third** (8:12) (52:11) (52:19) (58:12) (177:12) (177:14) (177:17)
**this** (5:12) (5:13) (5:19) (5:24) (7:10) (7:16) (8:3) (8:5) (8:8) (9:8) (9:21) (13:10) (13:17) (14:21) (14:22) (16:7) (16:15) (18:9) (18:13) (24:9) (24:11) (27:3) (27:8) (27:10) (27:13) (27:19) (31:10) (32:16) (35:5) (35:8) (35:9) (35:25) (37:10) (39:22) (39:23) (41:7) (41:11) (41:13) (41:19) (43:24) (44:6) (45:20) (46:7) (46:16) (48:3) (49:21) (50:11) (51:9) (54:12) (55:5) (65:16) (65:23) (66:15) (66:18) (72:3) (73:2) (73:8) (73:12) (75:23) (76:1) (76:4) (77:2) (77:23) (80:8) (80:22) (81:11) (81:14) (82:2) (82:3) (83:18) (84:2) (84:7) (84:8) (84:17) (84:19) (84:23) (84:24) (85:21) (87:7) (89:21) (90:10) (90:13) (92:2) (92:10) (92:17) (92:21) (92:25) (94:1) (94:13) (95:24) (96:7) (96:19) (97:11) (99:15) (101:8) (102:13) (102:16) (103:18) (104:9) (104:15) (105:17) (105:24) (106:17) (106:19) (108:24) (109:3) (109:6) (109:10) (110:22) (112:11) (112:21) (112:25) (113:3) (113:20) (116:22) (117:2) (117:9) (117:16) (118:10) (120:20) (121:1) (121:6) (124:3) (124:9) (124:11) (124:25) (125:12) (125:20) (126:19) (128:15) (130:21) (130:23) (131:13) (131:15) (132:16) (134:22) (134:24) (136:3) (136:16) (136:22) (137:23) (137:24) (138:23) (139:16) (139:22) (140:24) (142:3) (142:8) (142:10) (142:16) (143:16) (143:18) (143:20) (144:25) (146:14) (146:15) (147:12) (148:16) (149:8) (150:4) (150:13) (151:3) (151:4) (151:14) (151:21) (151:25) (154:5) (154:6) (154:19) (155:22) (158:3) (160:11) (161:10) (161:17) (161:21) (161:24) (162:6) (167:3) (167:18) (168:12) (169:6) (169:12) (169:13) (169:20) (173:4) (173:11) (175:23) (176:19) (177:18) (178:6) (179:4) (179:10) (180:12) (183:8) (184:25) (185:2) (187:18) (189:12) (189:18) (192:6) (192:15) (192:16) (192:17) (192:18) (192:19) (192:25) (193:3) (193:11) (193:21) (194:19) (194:22) (196:5) (197:21) (198:3) (199:2) (199:5) (199:12) (199:16) (201:12) (201:18) (201:22) (201:25) (202:3) (202:4) (203:9) (204:9) (204:10) (205:2) (206:7) (207:5) (209:3) (209:19) (210:9) (210:12) (211:8) (211:19) (212:1) (212:12) (212:17) (212:20) (213:3) (213:4) (213:6) (213:7) (213:15) (215:7) (215:8) (215:10) (216:13) (216:17)
**those** (9:24) (13:2) (13:9) (14:6) (16:3) (17:11) (27:5) (31:18) (36:7) (38:18) (39:3) (43:20) (44:1) (44:22) (54:15) (55:22) (56:4) (59:7) (69:24) (70:24) (71:2) (71:6) (73:13) (81:4) (81:7) (87:1) (94:23) (101:7) (106:24) (110:7) (113:24) (128:15) (132:15) (132:21) (132:22) (133:10) (134:13) (137:8) (137:17) (138:14) (138:24) (145:2) (146:2) (168:5) (170:22) (175:4) (188:13) (189:11) (211:9)
**though** (18:9) (24:24) (29:15) (136:12) (136:15) (139:21) (143:6) (143:7) (150:12) (154:3) (156:19) (157:21) (160:9) (160:11) (162:9) (162:19) (164:9) (164:24) (167:2) (173:4) (173:21) (174:20) (186:6) (189:12)
**thought** (30:4) (39:23) (51:6) (51:15) (64:12) (73:2) (74:7) (74:8) (74:16) (74:18) (134:9) (134:11) (134:13) (193:4) (197:16) (200:14) (202:3)
**thoughtful** (44:16) (176:23)
**thoughts** (7:15) (95:13) (125:8) (125:14) (133:21) (133:23) (133:25)
**threat** (27:16) (29:16) (72:8) (76:4) (151:3) (160:12) (160:18) (161:4) (205:6)

threats                                                    used                        245

threats (29:3)
three (8:14)(9:5)(36:14)(36:21)(71:16)(72:2)(74:10)
(94:23)(96:15)(97:8)(114:10)(123:20)(124:1)(124:9)
(137:16)(138:9)(138:14)(138:24)(152:18)(156:2)(170:22)
(176:2)(177:16)(187:18)(200:10)(200:13)(200:20)
through (19:24)(23:5)(24:6)(44:1)(92:24)(137:18)
(175:3)(181:15)(181:19)(185:2)(198:5)
throw (193:4)
ticket (188:8)
tickets (111:11)
till (73:12)(78:4)
time (5:21)(6:17)(7:2)(10:1)(10:14)(10:18)(22:13)
(42:2)(44:2)(46:7)(55:25)(56:3)(58:18)(74:13)(74:23)
(80:15)(81:22)(82:22)(88:24)(91:16)(93:15)(103:21)
(104:1)(107:20)(117:20)(119:10)(121:19)(122:20)
(124:25)(131:6)(134:15)(141:19)(154:24)(176:10)
(178:18)(187:6)(191:19)(194:16)(201:25)(206:21)
(206:25)(209:3)(215:7)(215:8)(215:19)
times (18:2)(18:10)(19:7)(98:25)(143:15)(161:23)
(208:12)
tired (126:15)(195:4)
to come (188:1)
today (6:5)(6:9)(10:9)(13:21)(45:24)(56:21)(67:5)
(74:8)(91:14)(93:1)(93:2)(94:14)(95:1)(96:22)(97:23)
(100:14)(102:23)(103:6)(103:17)(103:21)(105:18)
(105:21)(107:8)(109:7)(109:8)(109:20)(110:17)(111:1)
(114:16)(117:11)(118:25)(119:20)(121:10)(121:11)
(121:14)(123:11)(124:1)(124:4)(124:22)(126:16)(127:8)
(132:21)(140:2)(188:11)
together (10:6)(33:2)(72:5)(92:18)(93:6)(147:15)
(147:17)(147:19)(148:3)
told (22:2)(73:12)(73:15)(79:13)(107:17)(153:6)
(163:23)(179:12)(179:18)(183:12)(203:20)(207:3)
tomorrow (111:7)
tonight (32:24)
tons (131:1)
too (8:18)(10:4)(28:1)(43:20)(67:24)(68:5)(86:14)
(86:15)(98:4)(104:4)(121:11)(128:12)(128:13)(128:14)
(134:10)(148:6)(173:16)(176:16)(179:17)
took (6:17)(16:1)(38:20)(50:7)(51:1)(93:15)(102:5)
(122:20)(162:22)(183:7)(195:12)
top (52:7)(52:14)(63:19)(194:16)
tough (50:23)(51:5)(61:13)(67:15)(161:22)
towards (65:10)(79:24)(81:2)
trafficking (132:12)
trails (12:11)
transaction (136:21)
transcription (1:25)(216:8)(216:13)
transportation (186:10)
trash (193:4)
treat (67:23)
treated (68:6)
treating (67:23)
trial (7:9)(8:21)(12:10)(12:11)(25:8)(25:23)(25:25)
(27:25)(46:15)(51:20)(70:2)(71:19)(71:25)(81:13)
(83:23)(90:14)(91:2)(91:3)(91:6)(94:1)(96:22)(101:2)
(138:8)(139:12)(142:15)(148:24)(150:8)(150:17)(152:16)
(158:3)(159:9)(159:10)(161:2)(161:5)(164:25)(165:1)
(165:8)(167:11)(182:25)(197:22)(210:15)(211:15)(212:3)
(212:16)(213:10)
trials (12:5)
tried (12:2)(38:21)(94:8)(98:1)(98:8)(98:14)
trigger (163:12)
triggerman (34:5)(34:12)(34:18)
trip (111:15)
trouble (22:7)
true (43:19)(126:13)(127:11)(186:5)(205:21)(210:14)
(216:7)
truly (73:24)(216:14)
truth (46:24)(103:6)(195:7)
truthful (6:21)(93:21)(98:22)(99:8)(123:2)
try (39:11)(94:9)(162:1)(191:25)(210:7)
trying (10:6)(19:4)(62:4)(62:18)(74:20)(98:9)(98:17)
(98:19)(102:4)(154:4)(179:4)(183:18)(191:22)(192:3)
(194:1)(210:23)(213:8)
tube (22:23)
turn (35:13)(36:24)(53:11)(75:13)(96:5)(106:2)

(109:11)(122:8)(127:15)(196:11)
turned (38:22)
turning (48:15)
turns (53:6)
two (6:21)(12:10)(12:11)(18:23)(20:12)(20:16)(26:5)
(28:13)(28:20)(31:18)(40:8)(47:25)(52:20)(53:18)
(53:21)(58:21)(59:22)(69:24)(71:1)(72:19)(87:8)(87:10)
(96:17)(96:21)(111:11)(115:19)(123:4)(123:22)(140:23)
(176:2)(177:16)(179:11)(187:17)
two-week (87:12)(87:20)
type (46:16)(47:17)(49:21)(56:6)(65:17)(70:12)(70:15)
(71:2)(71:12)(72:22)(75:4)(75:7)(76:1)(77:2)(80:16)
(80:25)(84:8)(100:20)(101:3)(137:25)(206:6)

## U

uh-huh (6:2)(6:23)(29:20)(31:5)(34:22)(39:2)(42:5)
(49:19)(50:8)(50:13)(50:16)(50:19)(51:7)(52:3)(54:8)
(58:13)(58:16)(59:4)(59:8)(60:10)(60:23)(61:20)(62:22)
(63:14)(64:2)(65:3)(65:6)(65:24)(66:4)(66:17)(66:21)
(67:12)(69:9)(70:6)(70:11)(70:25)(72:16)(73:14)(73:25)
(74:3)(75:2)(76:11)(77:1)(78:3)(78:23)(93:9)(94:8)
(94:15)(94:24)(95:5)(95:17)(95:22)(98:21)(99:13)
(100:24)(102:12)(102:18)(107:2)(107:4)(110:9)(113:21)
(114:1)(117:14)(117:24)(118:8)(118:18)(127:2)(127:22)
(130:12)(131:2)(131:17)(133:13)(133:19)(134:13)(135:4)
(136:1)(141:6)(145:14)(146:13)(146:24)(147:5)(148:2)
(152:4)(152:11)(155:4)(157:6)(157:17)(157:25)(159:3)
(159:13)(159:21)(159:25)(162:4)(162:25)(163:5)(163:10)
(164:14)(165:3)(165:21)(166:7)(168:2)(168:7)(168:23)
(169:10)(169:17)(170:11)(171:11)(172:20)(173:1)
(174:25)(177:25)(178:4)(178:24)(179:13)(181:20)
(181:25)(183:17)(186:19)(191:21)(191:24)(192:8)
(197:18)(205:1)(205:15)(205:24)(207:9)(209:25)(211:5)
(211:18)
ultimate (48:18)(175:2)
ultimately (11:6)(101:13)
unacceptable (85:21)
unanimously (71:18)
unbiased (65:14)
under (6:20)(17:18)(18:21)(21:20)(63:21)(84:4)(93:18)
(107:6)(108:5)(111:23)(118:20)(122:23)(126:9)(127:7)
(136:17)(136:20)(137:1)(137:9)(138:16)(139:17)(166:1)
(172:24)(205:17)(216:16)
understand (7:24)(14:17)(15:14)(16:21)(30:25)(32:3)
(39:6)(40:2)(46:10)(49:16)(61:5)(67:12)(77:16)(95:6)
(95:12)(99:3)(100:2)(100:18)(114:7)(114:21)(125:1)
(125:3)(126:16)(127:4)(131:19)(132:18)(136:2)(136:5)
(136:12)(136:16)(137:12)(137:22)(138:17)(138:23)
(140:23)(141:7)(142:24)(156:17)(160:9)(164:8)(170:1)
(171:25)(172:23)(173:20)(174:20)(174:23)(175:1)(177:6)
(178:10)(178:14)(178:19)(180:4)(183:12)(184:3)(186:8)
(189:11)(190:4)(190:10)(191:20)(191:22)(192:12)
(193:19)(196:20)(197:23)(198:6)(200:22)(201:8)(203:16)
(203:19)(203:24)(204:1)(205:8)(206:25)(207:16)(208:16)
(208:18)(209:4)(210:9)(210:24)(213:8)(213:14)(214:11)
understanding (11:20)(184:2)
understood (160:8)(194:21)(197:17)
underwriters (47:23)
unfortunately (53:4)
unique (64:23)
unlawfully (199:1)(200:4)
unless (27:5)(30:1)(61:8)(74:12)(152:14)(203:1)
(207:19)
unqualified (84:10)
until (14:2)(22:24)(26:17)(44:11)(48:4)(58:18)(73:2)
(85:2)(86:24)(150:15)(156:25)(157:10)(157:18)(167:17)
(169:16)(179:19)(207:19)
upbringing (69:19)(169:2)(196:22)(197:12)
upon (16:8)(19:17)(20:19)(23:10)(23:18)(36:22)(42:17)
(59:14)(80:13)(90:13)(101:1)(144:9)(164:9)(172:7)
(214:9)
upstairs (16:25)(92:22)(113:1)(117:11)(121:4)
usain (153:15)
use (15:7)(38:10)(41:16)(51:2)(68:16)(75:11)(76:13)
(132:16)(132:19)(166:10)(180:18)
used (42:13)(42:14)(59:10)(59:13)(76:18)(131:18)
(144:1)(188:9)

using                                                                              were                    246

| | |
|---|---|
| **using** (59:1)(188:19) | **waiting** (151:17)(162:15)(163:16) |
| **usually** (29:23) | **walk** (137:18) |

**V**

**valuable** (64:18)
**value** (126:7)
**vehicular** (129:9)
**venireperson** (3:7)(3:10)(3:12)(3:15)(3:17)(3:20)(3:22)(5:4)(5:6)(5:15)(5:20)(6:2)(6:6)(6:8)(6:15)(6:18)(6:23)(7:3)(7:6)(7:17)(7:22)(8:4)(8:16)(9:7)(9:13)(18:15)(45:6)(45:9)(78:18)(83:5)(85:24)(86:6)(86:11)(86:17)(86:20)(86:23)(87:4)(87:17)(87:19)(87:21)(87:25)(88:4)(88:8)(88:12)(88:15)(88:21)(89:3)(89:6)(89:12)(89:15)(89:19)(89:22)(89:25)(90:5)(90:8)(90:17)(90:20)(90:23)(91:8)(91:15)(91:17)(91:19)(91:25)(92:9)(92:12)(92:19)(93:3)(93:9)(93:13)(93:16)(93:22)(94:2)(94:8)(94:11)(94:15)(94:18)(94:20)(94:24)(95:5)(95:8)(95:17)(95:19)(95:22)(96:1)(97:17)(103:19)(103:24)(104:2)(104:5)(105:10)(105:19)(105:22)(106:6)(106:21)(107:19)(107:22)(107:25)(108:20)(108:23)(108:25)(109:9)(109:17)(111:8)(111:10)(111:14)(111:16)(111:19)(112:8)(112:12)(112:16)(112:18)(113:11)(113:14)(115:17)(116:20)(116:23)(117:4)(117:7)(117:14)(117:21)(118:4)(119:11)(119:14)(120:10)(120:13)(120:22)(121:3)(121:8)(121:12)(121:17)(121:20)(121:23)(122:2)(122:5)(122:10)(122:14)(122:18)(122:21)(122:25)(123:3)(123:8)(124:17)(129:7)(165:21)(177:19)(180:20)(180:23)(181:1)(181:11)(181:17)(181:20)(181:23)(181:25)(213:23)(215:1)(215:12)(215:15)(215:17)
**verbiage** (35:3)
**verdict** (10:23)(11:5)(11:24)(12:17)(12:21)(16:4)(16:21)(19:16)(23:24)(25:4)(25:10)(25:19)(32:8)(34:21)(35:20)(36:25)(39:17)(44:13)(77:19)(100:22)(107:6)(110:12)(110:23)(111:24)(118:20)(119:18)(145:3)(145:11)(146:20)(146:21)(146:22)(149:20)(198:10)(198:19)
**verdicts** (20:16)(90:13)
**versus** (1:6)(84:5)(84:6)(169:25)
**very** (6:19)(17:15)(38:11)(47:20)(51:9)(68:3)(76:20)(79:15)(81:3)(81:6)(84:24)(91:13)(93:17)(97:5)(97:10)(97:11)(98:23)(101:24)(105:13)(105:25)(106:22)(106:23)(107:17)(107:24)(109:11)(110:5)(112:5)(113:18)(113:22)(114:1)(115:14)(115:15)(116:11)(117:17)(118:13)(119:5)(122:22)(123:9)(124:8)(125:23)(128:1)(147:18)(156:19)(158:2)(159:10)(165:5)(171:7)(192:25)(194:16)
**vezina** (216:4)(216:19)(217:17)
**viable** (49:7)
**vice** (47:6)
**victim** (38:22)(50:2)(71:20)(72:21)(75:6)(134:3)(134:4)(173:8)
**video** (48:14)
**vietnam** (166:18)
**view** (106:25)(108:4)
**views** (118:15)
**village** (199:24)
**violence** (27:15)(28:23)(28:25)(29:3)(29:4)(29:8)(29:14)(29:15)(72:8)(76:3)(77:4)(151:2)(153:25)(154:10)(160:14)(205:5)(206:12)(211:21)(211:25)
**violent** (29:2)(29:9)(57:22)(57:24)(58:10)(79:3)(82:5)(82:9)(82:14)(84:1)(102:7)(210:2)
**visit** (30:18)(182:23)
**voir** (1:12)(9:14)(45:15)(84:22)(92:25)(97:13)(97:18)(106:7)(109:18)(113:15)(118:5)(124:14)(124:18)(182:6)
**vol** (3:4)(4:4)
**volume** (1:2)(3:2)(4:2)
**volumes** (1:2)
**voluntarily** (63:18)(63:21)(63:24)(67:7)(72:18)(75:5)(80:9)
**voluntary** (37:16)(63:10)(80:9)(85:8)(193:9)(194:3)(194:8)
**volunteer** (22:7)(193:14)
**vote** (174:12)
**voted** (204:19)
**voters** (174:12)

**W**

**wait** (32:4)(32:7)(85:2)(159:8)(179:18)

**waiting** (151:17)(162:15)(163:16)
**walk** (137:18)
**walking** (162:16)
**walks** (21:23)(56:15)
**want** (15:4)(17:6)(17:13)(45:4)(45:24)(46:12)(66:15)(70:22)(87:5)(90:7)(90:9)(97:22)(98:13)(102:23)(103:5)(103:6)(103:16)(109:1)(120:19)(125:24)(128:22)(137:2)(137:4)(146:2)(154:15)(154:17)(154:20)(172:23)(176:5)(184:13)(189:3)(190:8)(190:15)(191:12)(196:6)(197:21)(202:25)(203:15)(203:16)(204:1)(204:8)(205:8)(212:3)(212:6)(213:4)(213:12)(213:16)(214:2)(214:16)
**wanted** (14:11)(64:13)(70:8)(172:19)(182:22)(186:2)(197:19)(205:13)(205:18)(209:16)(215:6)
**wants** (66:24)(136:13)
**war** (166:18)
**wardens** (30:17)(77:4)(159:20)
**warrant** (101:8)(167:6)(170:16)
**warranted** (68:4)
**was** (12:1)(19:13)(19:24)(20:7)(23:4)(25:24)(33:18)(33:21)(34:1)(34:8)(34:13)(34:18)(38:2)(38:6)(38:15)(39:23)(39:24)(39:25)(40:4)(48:4)(49:5)(49:23)(51:15)(54:3)(54:22)(55:25)(56:10)(57:5)(58:11)(58:14)(60:13)(60:21)(61:8)(62:11)(63:21)(63:24)(70:15)(70:16)(70:21)(72:18)(74:12)(75:1)(80:15)(81:14)(81:22)(82:1)(83:21)(88:1)(89:25)(90:1)(93:18)(98:8)(99:21)(102:5)(112:16)(113:12)(115:1)(118:9)(118:23)(119:20)(125:20)(129:1)(129:4)(129:5)(129:8)(129:11)(129:14)(129:21)(130:1)(130:3)(130:5)(130:13)(130:14)(134:3)(134:9)(134:11)(134:25)(140:6)(142:24)(144:25)(146:7)(146:8)(146:9)(146:10)(146:11)(146:14)(146:15)(146:16)(146:17)(146:19)(146:20)(146:22)(147:17)(149:7)(149:8)(149:12)(149:19)(149:21)(149:25)(155:1)(155:15)(155:21)(156:5)(166:16)(166:17)(167:22)(170:13)(173:4)(173:6)(173:8)(178:16)(178:17)(179:3)(179:4)(181:14)(181:15)(182:14)(185:11)(186:21)(187:23)(187:24)(188:2)(188:7)(188:13)(189:5)(190:3)(190:11)(195:4)(195:19)(203:1)(211:10)(211:13)
**wasn't** (11:20)(34:12)(56:11)(63:5)(63:8)(74:14)(107:17)(142:23)(155:20)(156:3)(178:17)
**watch** (33:4)(114:14)(137:3)
**watches** (22:14)
**watching** (24:19)
**water** (2:17)(180:18)(181:2)
**way** (21:25)(25:17)(25:18)(30:4)(31:4)(36:12)(50:4)(51:4)(58:4)(60:8)(73:2)(73:12)(76:4)(81:9)(82:1)(90:7)(93:19)(102:2)(102:17)(111:1)(114:17)(115:6)(118:25)(135:5)(135:7)(144:7)(150:14)(153:8)(155:24)(176:10)(185:14)(192:11)(192:22)(195:9)(197:5)(202:5)(202:25)(203:12)(206:9)
**ways** (12:7)(19:22)(21:4)(86:22)(92:16)(128:17)
**we'd** (37:13)(38:8)
**wednesday** (48:4)
**week** (89:5)
**weeks** (51:16)(87:9)(87:10)
**weight** (84:11)(84:15)
**welcome** (122:7)
**well** (11:7)(13:16)(14:16)(16:15)(21:20)(22:9)(24:9)(26:9)(26:22)(29:25)(30:15)(30:19)(36:17)(42:1)(48:5)(48:6)(48:13)(48:15)(49:10)(50:24)(53:8)(54:15)(54:16)(56:16)(60:25)(62:10)(63:12)(68:15)(69:16)(73:6)(73:18)(73:20)(74:9)(88:6)(88:15)(91:7)(91:13)(92:24)(94:8)(98:22)(103:11)(104:16)(111:11)(112:13)(114:7)(124:22)(126:25)(132:1)(134:1)(134:16)(135:3)(143:3)(147:22)(152:2)(153:1)(154:18)(154:23)(159:6)(159:8)(162:1)(165:2)(169:3)(170:9)(171:13)(172:18)(174:2)(176:18)(177:2)(181:18)(186:8)(187:9)(187:16)(189:6)(189:13)(189:17)(189:18)(189:24)(190:8)(190:10)(190:16)(190:23)(193:6)(194:23)(195:12)(195:22)(196:20)(197:5)(197:16)(199:7)(200:13)(202:8)(207:7)(208:8)(208:18)(208:21)(208:23)(210:5)(210:9)(212:1)(212:8)(212:11)(213:6)(213:8)(214:15)
**we'll** (46:6)(46:13)(70:19)(83:3)(103:22)(132:20)(148:17)(160:17)(180:21)(181:3)(197:19)(212:2)
**well-being** (189:14)
**went** (23:5)(23:9)(48:6)(147:9)(149:5)(172:21)(181:19)(187:1)(188:7)
**were** (1:20)(6:16)(16:17)(18:1)(21:7)(23:18)(40:8)

we're                                          window's                                    247

(41:10)(49:1)(49:3)(54:19)(55:1)(55:12)(59:7)(60:24)
(61:11)(62:19)(63:18)(64:1)(64:5)(65:15)(76:16)(81:9)
(82:12)(93:14)(102:3)(110:6)(113:23)(114:11)(118:14)
(122:19)(126:4)(126:12)(133:11)(133:16)(140:4)(147:15)
(149:3)(152:3)(154:13)(158:3)(159:10)(161:1)(170:25)
(181:16)(182:13)(183:2)(186:3)(186:15)(186:22)(187:13)
(194:21)(195:17)(195:19)(216:12)
**we're**  (9:24)(9:25)(10:1)(10:5)(10:6)(10:14)(13:1)
(27:10)(27:18)(32:15)(37:12)(45:10)(46:3)(49:11)
(54:25)(56:21)(57:12)(74:20)(74:25)(76:25)(86:8)(86:9)
(86:16)(86:25)(89:11)(94:13)(97:12)(101:12)(103:7)
(104:16)(104:20)(113:4)(120:2)(124:13)(143:19)(150:7)
(153:5)(153:25)(154:3)(154:5)(154:13)(162:3)(162:12)
(180:16)(182:17)(183:18)(185:25)(188:11)(197:6)
(197:22)(203:16)(203:19)(213:3)(213:4)(215:21)
**we've**  (10:3)(25:7)(27:9)(45:22)(45:23)(86:21)(138:6)
(142:8)(142:12)(142:16)(144:16)(145:15)(160:21)
(166:11)(166:13)(171:25)(173:5)(173:21)(175:6)(175:7)
**what**  (6:4)(6:20)(7:10)(9:24)(10:5)(10:24)(11:23)
(12:20)(12:25)(13:12)(13:14)(18:18)(19:23)(19:24)
(20:11)(21:2)(21:5)(21:11)(24:8)(24:10)(25:16)(28:24)
(28:25)(29:3)(29:13)(30:22)(31:12)(31:16)(31:21)
(32:12)(35:4)(35:15)(35:16)(35:18)(35:21)(36:23)(37:9)
(37:20)(38:9)(38:24)(40:2)(41:1)(41:5)(43:16)(43:17)
(43:18)(44:21)(45:22)(45:24)(46:3)(46:12)(47:7)(48:20)
(49:6)(50:1)(50:9)(52:5)(55:4)(55:22)(55:25)(56:21)
(57:9)(59:5)(60:2)(60:19)(61:12)(61:15)(61:22)(61:25)
(62:14)(62:19)(63:9)(64:12)(65:1)(65:7)(65:22)(66:7)
(66:12)(68:10)(68:17)(68:19)(68:21)(69:14)(69:21)
(69:23)(70:1)(70:15)(70:21)(71:11)(71:13)(72:24)
(73:20)(73:21)(74:12)(75:25)(76:5)(76:6)(76:9)(76:12)
(76:14)(76:21)(76:25)(77:6)(77:11)(77:24)(78:10)
(79:11)(81:8)(81:11)(84:24)(86:8)(87:5)(87:11)(87:25)
(89:25)(92:25)(93:19)(93:20)(95:1)(95:3)(95:21)(97:24)
(98:7)(98:10)(98:18)(99:3)(100:12)(101:16)(102:10)
(102:25)(105:18)(109:7)(109:8)(109:25)(117:10)(121:10)
(122:8)(122:23)(125:3)(125:7)(125:11)(125:13)(128:22)
(129:2)(129:5)(129:10)(129:11)(129:17)(130:14)(132:8)
(132:9)(132:19)(132:22)(133:21)(133:22)(133:23)
(134:16)(137:20)(139:24)(140:5)(140:7)(141:10)(141:13)
(141:14)(142:11)(143:25)(144:5)(145:3)(145:4)(145:21)
(146:7)(146:9)(146:19)(146:20)(147:22)(149:7)(149:11)
(149:12)(149:21)(149:22)(150:9)(150:23)(151:22)
(151:24)(152:23)(153:5)(153:9)(153:10)(153:23)(154:2)
(154:4)(154:15)(154:17)(155:5)(155:11)(157:1)(157:11)
(157:13)(158:2)(158:7)(158:12)(158:24)(158:25)(159:4)
(159:10)(159:18)(161:19)(161:20)(161:24)(161:25)
(162:2)(162:22)(162:24)(163:1)(163:11)(163:20)(164:24)
(164:25)(165:1)(165:3)(165:17)(166:4)(166:8)(166:22)
(167:3)(167:9)(167:23)(168:11)(169:7)(169:12)(169:14)
(169:24)(170:6)(170:17)(171:1)(171:4)(171:8)(171:10)
(171:21)(172:7)(172:11)(172:17)(172:22)(173:14)(174:2)
(175:2)(176:3)(176:5)(176:6)(178:5)(178:7)(178:14)
(178:16)(179:3)(182:13)(183:18)(183:20)(184:3)(186:20)
(186:21)(188:11)(189:25)(190:4)(190:6)(190:8)(190:14)
(190:16)(190:21)(191:3)(191:6)(191:7)(191:22)(192:12)
(192:19)(192:21)(193:19)(193:20)(193:21)(194:2)
(194:21)(195:24)(196:19)(196:21)(196:24)(197:2)(197:3)
(197:15)(197:16)(198:6)(198:17)(198:21)(198:24)
(198:25)(199:1)(199:5)(199:15)(199:18)(199:23)(200:5)
(200:7)(200:8)(200:12)(201:18)(201:19)(202:5)(202:8)
(202:15)(202:16)(203:7)(203:20)(205:12)(205:13)(207:3)
(207:7)(207:11)(207:22)(208:3)(208:19)(208:20)(209:4)
(209:16)(210:11)(210:23)(211:19)(212:3)(212:8)(212:12)
(212:14)(213:3)(213:4)(213:16)
**whatever**  (24:16)(24:20)(30:21)(50:7)(55:8)(56:12)
(71:11)(98:8)(98:25)(102:3)(137:3)(169:18)(169:19)
(172:21)(180:18)(195:19)(195:25)
**whatnot**  (89:4)
**what's**  (7:1)(12:9)(16:10)(25:22)(29:17)(35:17)(48:11)
(52:8)(56:7)(137:11)(139:20)(145:11)(151:25)(152:7)
(159:7)(170:5)(175:7)(203:5)
**whatsoever**  (14:9)(24:17)(40:15)
**when**  (5:25)(6:10)(8:21)(15:24)(29:23)(34:2)(41:21)
(50:9)(50:12)(50:22)(54:24)(56:8)(57:11)(65:22)(67:13)
(69:8)(69:20)(71:1)(74:1)(74:12)(78:14)(88:19)(89:24)
(92:17)(95:9)(95:11)(98:8)(98:18)(99:18)(100:6)(100:8)

(101:19)(115:1)(121:15)(127:17)(129:20)(136:3)(141:11)
(141:15)(142:4)(145:19)(147:14)(147:20)(149:2)(150:16)
(151:17)(152:3)(152:22)(157:18)(158:11)(158:12)
(163:11)(166:17)(169:1)(176:3)(181:15)(185:10)(190:13)
(196:23)(207:3)
**whenever**  (114:17)(188:7)
**where**  (12:10)(12:15)(13:1)(13:15)(14:23)(15:25)
(19:10)(30:9)(30:10)(53:3)(53:14)(54:1)(54:17)(56:20)
(62:4)(62:6)(62:19)(64:1)(71:17)(71:21)(101:15)
(102:13)(106:23)(107:5)(130:3)(130:4)(134:14)(134:24)
(136:14)(136:19)(137:9)(138:8)(142:4)(142:9)(147:10)
(147:13)(150:4)(152:5)(152:18)(158:7)(158:14)(158:15)
(158:17)(158:19)(158:25)(159:2)(159:25)(160:6)(162:6)
(177:7)(178:10)(180:25)(183:10)(184:4)(187:9)(187:13)
(199:25)(200:1)(204:22)(206:22)(208:21)
**where's**  (42:9)
**whether**  (10:12)(29:10)(35:19)(35:24)(37:22)(38:5)
(38:8)(40:13)(45:25)(54:20)(57:21)(58:9)(60:20)(60:24)
(61:11)(66:15)(67:4)(80:23)(80:24)(82:2)(82:4)(88:3)
(128:2)(137:2)(141:1)(141:2)(141:14)(143:19)(148:11)
(149:8)(155:10)(169:15)(169:19)(175:2)(204:4)(207:2)
(210:3)(210:17)(211:9)(211:24)
**which**  (6:22)(17:16)(20:1)(28:6)(35:1)(41:14)(52:17)
(52:19)(52:21)(57:19)(77:6)(78:25)(101:5)(106:24)
(107:7)(110:10)(110:12)(110:24)(111:24)(113:23)
(115:25)(118:15)(118:20)(119:19)(132:20)(139:22)
(139:23)(142:12)(144:5)(151:10)(151:15)(155:14)(158:7)
(159:18)(160:12)(165:24)(168:11)(170:12)(179:12)
(189:24)(208:20)(216:11)(217:9)
**while**  (18:22)(18:25)(19:2)(63:17)(83:2)(92:22)(99:22)
(99:24)(113:1)(121:6)(153:16)(156:21)(173:21)(175:19)
(187:16)
**who**  (15:24)(15:25)(21:9)(21:22)(23:9)(23:12)(26:23)
(28:6)(30:14)(30:18)(34:7)(39:6)(52:25)(53:15)(53:19)
(54:17)(60:5)(63:17)(65:17)(68:25)(70:2)(70:3)(72:15)
(72:18)(75:1)(75:4)(75:7)(79:14)(85:21)(117:17)(121:1)
(128:2)(128:25)(130:20)(132:21)(133:10)(134:2)(134:3)
(134:5)(134:18)(139:17)(153:17)(156:3)(173:8)(174:22)
(178:1)(178:25)(184:10)(186:13)(187:24)(206:1)(206:8)
(207:12)
**whoever**  (77:5)(153:15)
**whole**  (6:11)(19:6)
**wholly**  (44:2)
**who's**  (5:23)(9:8)(59:23)(66:18)(67:4)(72:22)(80:2)
(97:10)(104:21)(178:2)(207:4)(207:12)
**whose**  (65:4)
**why**  (6:9)(15:3)(64:24)(66:5)(67:25)(79:16)(91:20)
(93:2)(103:7)(105:20)(121:11)(128:9)(132:20)(143:2)
(147:18)(152:16)(163:3)(163:22)(166:11)(168:3)(171:2)
(172:15)(173:2)(173:10)(173:13)(173:17)(173:19)(174:2)
(174:4)(174:6)(174:7)(178:15)(183:19)(184:13)(189:9)
(189:11)(189:13)(190:21)(191:7)(191:8)(195:8)(195:10)
(197:6)(199:21)(201:11)(201:14)(213:6)
**why do**  (174:7)
**wide**  (20:18)
**wife**  (11:16)(39:24)(39:25)(47:21)(70:15)(179:11)
**wife's**  (48:7)
**will**  (5:16)(7:15)(8:12)(8:20)(9:21)(9:22)(10:10)
(10:23)(11:3)(11:4)(11:5)(11:6)(17:16)(18:19)(19:7)
(20:13)(21:8)(24:15)(26:10)(27:20)(28:22)(29:1)(29:2)
(29:15)(31:10)(32:4)(32:7)(32:12)(35:18)(39:14)(44:10)
(44:13)(44:22)(76:3)(79:3)(83:17)(83:19)(83:20)(83:22)
(85:1)(85:3)(85:15)(86:18)(87:1)(87:9)(88:8)(88:19)
(89:10)(90:11)(90:15)(91:4)(94:5)(95:14)(96:5)(96:20)
(100:22)(104:14)(105:24)(108:11)(108:12)(109:10)
(110:23)(112:5)(116:16)(116:17)(117:16)(120:1)(122:3)
(122:7)(124:3)(124:4)(125:11)(125:12)(125:13)(125:23)
(138:2)(138:8)(138:10)(138:11)(138:15)(139:19)(148:17)
(150:8)(150:10)(156:9)(159:11)(159:14)(159:16)(160:12)
(160:18)(169:15)(169:20)(179:17)(180:19)(214:13)
**willfully**  (63:25)
**willing**  (10:25)(11:1)(38:1)(40:12)
**willingness**  (84:23)(85:10)
**win**  (153:17)(153:18)
**win/lose**  (192:17)
**window**  (168:12)(168:17)(168:18)(168:21)
**window's**  (168:16)(168:19)(168:20)

wing    (50:3)
wish    (84:19)
with    (13:13)(16:11)(18:17)(19:15)(22:6)(22:10)(22:13)
(27:7)(28:5)(28:18)(30:11)(32:13)(32:19)(33:17)(34:25)
(37:15)(38:23)(43:8)(43:19)(46:12)(47:1)(48:23)(52:14)
(52:21)(53:10)(54:3)(56:7)(56:18)(56:21)(61:14)(62:8)
(63:12)(66:22)(67:25)(69:17)(72:25)(80:23)(80:25)
(81:25)(83:1)(83:2)(84:22)(85:1)(85:4)(90:15)(96:17)
(96:18)(98:16)(100:5)(100:9)(100:25)(103:22)(105:1)
(107:21)(113:1)(114:10)(116:5)(119:7)(124:2)(129:2)
(129:12)(131:25)(136:7)(136:13)(136:17)(141:7)(142:10)
(144:16)(145:25)(153:3)(153:9)(154:19)(157:1)(163:14)
(163:20)(164:25)(166:4)(169:16)(171:5)(171:23)(172:10)
(172:24)(174:3)(174:7)(174:10)(174:15)(175:13)(182:23)
(186:12)(186:13)(186:22)(187:6)(188:10)(192:7)(192:9)
(192:11)(193:11)(193:12)(193:23)(193:24)(194:2)(194:4)
(194:17)(194:19)(194:22)(194:25)(197:3)(197:6)(197:13)
(197:23)(197:24)(198:25)(206:21)(207:6)(209:15)(212:4)
(212:20)(213:5)(213:13)(213:16)(215:8)(217:3)(217:6)
(217:9)
without    (20:14)(25:19)(32:12)(38:13)(51:6)(58:8)
(59:23)(59:25)(60:15)(64:20)(67:8)(77:21)(78:1)(78:2)
(78:7)(79:25)(132:6)(144:6)(149:9)(150:1)(152:8)
(152:14)(158:5)(158:6)(158:23)(160:11)(161:6)(165:6)
(167:7)(168:14)(169:24)(170:8)(170:16)(174:3)(175:3)
(190:1)(190:17)(201:15)(202:6)(202:19)
witness    (24:19)(41:25)(64:17)(66:19)(127:13)(141:11)
(141:23)(145:19)(145:20)
witnesses    (33:8)(34:2)(89:2)(140:23)(140:24)(141:1)
(145:22)(148:18)(162:19)(163:17)(163:23)
won't    (24:2)(53:3)(74:19)(88:10)(88:25)
word    (29:22)(30:2)(49:10)(49:11)(49:16)(49:18)(50:10)
(57:12)(75:11)(76:14)(76:19)(78:7)(132:16)(132:19)
(152:23)(153:2)(153:7)(153:10)(153:11)(153:21)(157:13)
(157:14)(158:11)(158:12)(161:12)(164:10)(164:11)
(167:23)(167:24)(168:4)(169:6)(169:7)(169:10)(196:25)
words    (15:1)(15:7)(24:3)(26:22)(27:18)(32:18)(50:3)
(55:25)(76:20)(117:13)(144:8)(150:25)(155:6)(155:15)
(165:17)(166:10)(173:2)(175:8)(208:9)(213:3)
work    (12:5)(14:11)(22:8)(29:25)(30:8)(47:4)(130:25)
(131:19)(187:9)(188:2)
worked    (47:17)(186:12)(187:6)(187:10)(187:11)(187:14)
(187:16)(187:17)
working    (43:7)(43:12)(210:6)(213:3)(213:4)
works    (12:6)(47:21)(47:24)(210:10)
world    (22:4)(29:24)(153:15)
worried    (208:12)
worry    (33:8)(215:14)
would    (10:22)(11:24)(14:12)(15:4)(16:6)(16:20)(16:24)
(16:25)(17:2)(17:4)(17:8)(17:10)(18:3)(18:5)(18:20)
(19:16)(20:19)(21:2)(21:14)(23:9)(23:20)(23:23)(24:9)
(27:14)(27:15)(28:12)(28:17)(30:22)(31:20)(32:3)(32:9)
(35:15)(35:16)(35:18)(35:20)(35:24)(36:9)(37:5)(38:1)
(38:2)(40:16)(40:20)(40:21)(40:24)(40:25)(42:14)
(43:19)(44:4)(45:5)(46:22)(49:1)(49:6)(49:7)(50:18)
(51:12)(53:25)(54:1)(54:4)(55:19)(57:4)(58:18)(59:6)
(59:9)(59:12)(60:16)(60:19)(62:2)(62:6)(62:10)(62:19)
(62:21)(64:3)(64:4)(64:14)(65:13)(65:16)(65:17)(65:19)
(65:21)(66:8)(66:10)(66:12)(66:15)(66:22)(67:17)(69:5)
(69:11)(70:24)(72:7)(72:8)(73:18)(73:19)(74:1)(74:4)
(74:6)(75:4)(75:7)(75:8)(75:14)(75:19)(76:2)(77:13)
(79:9)(79:14)(79:15)(79:18)(79:19)(79:21)(79:23)(80:1)
(80:4)(80:6)(80:11)(80:14)(80:18)(80:25)(81:1)(81:3)
(81:6)(81:16)(81:18)(81:20)(81:21)(82:14)(82:15)
(82:17)(82:18)(84:11)(84:14)(85:5)(85:8)(86:13)(87:14)
(87:15)(88:22)(89:7)(98:9)(99:5)(99:8)(101:1)(101:4)
(101:5)(101:6)(101:14)(103:22)(104:8)(105:12)(108:3)
(108:22)(111:21)(112:10)(116:25)(119:16)(120:15)
(123:2)(127:15)(128:16)(128:19)(128:20)(129:1)(130:23)
(131:8)(131:20)(132:24)(133:2)(136:14)(137:11)(140:5)
(140:7)(140:9)(142:25)(148:18)(151:1)(151:2)(151:8)
(151:25)(153:2)(153:24)(154:9)(154:11)(154:15)(154:17)
(156:7)(158:24)(158:25)(159:2)(159:4)(159:6)(159:18)
(161:16)(162:24)(171:1)(171:9)(171:10)(171:13)(171:21)
(172:12)(172:14)(174:14)(174:15)(174:17)(174:18)
(176:24)(177:2)(178:25)(179:10)(181:9)(183:12)(183:21)
(183:22)(184:1)(184:17)(184:18)(184:19)(185:13)

(189:23)(191:18)(193:4)(194:15)(195:15)(195:18)
(195:20)(195:22)(196:11)(197:15)(198:22)(200:8)
(202:15)(202:21)(202:23)(202:25)(205:5)(205:6)(205:10)
(205:21)(205:22)(206:7)(206:8)(206:12)(206:15)(208:25)
(209:22)(210:1)(210:2)(211:23)(211:24)(212:7)(214:8)
(214:12)(215:16)
wouldn't    (15:4)(18:6)(24:9)(58:11)(61:7)(69 15)
(81:17)(82:20)(86:15)(141:17)(141:22)(174:9)(202:25)
(211:1)
wound    (16:16)(50:3)
wounds    (142:19)(142:20)
write    (28:3)(77:19)(94:9)(98:1)(98:9)(98:14)(114:8)
(114:23)(115:24)(154:5)(181:19)(181:21)
writhing    (22:16)
writing    (68:15)(98:2)(98:11)(216:9)
writings    (13:4)
written    (28:3)
wrong    (7:20)(46:19)(46:20)(74:20)(95:20)(95:23)(99:2)
(102:22)
wrote    (68:17)(98:8)(154:6)(190:3)

## Y

y'all    (5:25)(67:13)(104:2)(120:5)(182:14)
yeah    (6:8)(7:3)(7:17)(10:2)(11:21)(14:7)(16:13)
(16:19)(16:23)(18:4)(18:7)(21:16)(21:18)(21:19)(21:24)
(23:1)(23:3)(23:22)(24:1)(26:1)(26:8)(26:21)(30:4)
(30:5)(31:9)(32:1)(32:9)(33:13)(33:15)(33:22)(34:6)
(34:10)(37:2)(37:6)(37:7)(37:25)(38:4)(39:7)(39:9)
(39:11)(39:16)(40:3)(40:6)(41:18)(42:25)(44:8)(44:12)
(44:24)(47:10)(48:8)(48:24)(49:9)(51:3)(51:17)(51:22)
(53:22)(53:24)(54:10)(55:21)(57:8)(57:16)(58:23)(61:3)
(62:3)(62:13)(62:16)(64:8)(65:19)(67:3)(67:9)(67:15)
(69:1)(69:3)(70:21)(71:23)(73:4)(73:7)(74:7)(75:18)
(75:21)(76:8)(77:8)(77:10)(77:15)(78:11)(78:18)(81:25)
(86:11)(94:10)(98:2)(104:25)(108:3)(110:21)(114:3)
(114:20)(115:7)(118:12)(118:22)(119:1)(123:3)(127:25)
(128:14)(128:21)(130:5)(142:18)(145:5)(150:22)(151:19)
(155:8)(158:16)(158:21)(163:25)(164:18)(169:24)
(170:21)(171:7)(172:16)(174:8)(177:6)(177:21)(190:7)
(193:25)(196:18)(198:5)(199:3)(199:4)(200:15)(213:21)
(214:13)(214:20)
year    (48:3)(99:24)
years    (18:21)(23:13)(47:19)(47:20)(52:18)(52:20)
(78:8)(99:22)(100:9)(129:24)(130:15)(133:9)(133:20)
(133:21)(134:9)(134:23)(156:3)(156:10)(186:3)(186:22)
(187:18)
year's    (54:12)
yep    (23:6)(23:17)(28:15)
yes    (6:15)(6:18)(7:6)(8:19)(11:9)(11:18)(14:5)(15:19)
(17:9)(27:6)(28:19)(30:13)(30:24)(31:14)(32:14)(33:12)
(34:18)(34:19)(34:20)(39:21)(42:14)(44:5)(44:15)
(44:18)(45:14)(47:3)(49:4)(51:12)(51:13)(57:1)(57:22)
(58:5)(59:9)(60:1)(61:6)(68:18)(72:11)(73:1)(75:18)
(77:12)(79:8)(79:18)(79:19)(85:18)(85:22)(88:14)(92:9)
(92:19)(93:3)(93:13)(93:16)(93:22)(94:2)(94:18)(94:20)
(97:15)(99:2)(99:20)(100:11)(100:16)(100:17)(101:5)
(101:7)(101:11)(101:18)(102:14)(102:19)(103:3)(103:9)
(105:22)(106:4)(106:16)(107:9)(108:16)(109:23)(110:4)
(110:5)(110:16)(110:18)(112:18)(113:21)(118:1)(118:24)
(120:4)(120:6)(120:22)(121:12)(121:13)(121:17)(122:18)
(122:21)(123:8)(123:24)(125:22)(126:13)(126:17)
(126:20)(126:24)(127:1)(127:11)(127:17)(128:4)(128:5)
(128:7)(130:2)(130:24)(131:23)(131:24)(137:14)(138:3)
(138:6)(138:13)(138:15)(138:18)(139:13)(139:14)
(140:19)(146:6)(146:15)(146:25)(155:10)(156:25)(159:5)
(160:16)(160:25)(161:8)(163:15)(164:21)(164:23)
(164:25)(165:11)(165:12)(167:13)(167:14)(167:16)
(168:8)(168:16)(168:19)(168:20)(169:15)(170:6)(170:9)
(170:12)(175:21)(177:10)(177:11)(177:14)(177:22)
(177:23)(178:12)(178:22)(179:14)(180:5)(180:13)(182:3)
(183:23)(184:12)(185:16)(185:18)(187:5)(187:8)(188:4)
(188:18)(188:22)(194:7)(194:24)(195:11)(198:16)(201:4)
(206:2)(206:3)(207:5)(207:20)(209:23)(212:13)(212:25)
(214:25)(215:17)
yesterday    (48:7)(112:16)(112:17)
yet    (26:15)(32:15)(46:23)(86:22)(140:14)(140:16)
(167:17)

you

**you** (5:9) (5:14) (5:17) (5:19) (6:4) (6:13) (6:16) (6:19) (6:25) (7:1) (7:2) (7:7) (7:11) (7:13) (7:14) (7:15) (7:23) (8:2) (8:7) (9:4) (9:11) (9:16) (9:23) (10:9) (10:10) (11:2) (11:7) (11:8) (11:16) (12:4) (12:11) (12:14) (12:15) (12:16) (12:17) (13:4) (13:10) (13:24) (14:1) (14:2) (14:4) (14:6) (14:15) (14:17) (14:21) (14:23) (15:9) (15:14) (15:17) (15:21) (15:24) (16:3) (16:5) (16:17) (16:21) (16:24) (16:25) (17:2) (17:6) (17:8) (17:10) (17:14) (17:16) (17:20) (18:2) (18:18) (19:7) (19:11) (19:15) (19:17) (20:13) (20:15) (21:1) (21:2) (21:3) (21:8) (21:12) (21:24) (21:25) (22:2) (23:15) (23:18) (23:20) (23:23) (24:2) (24:8) (24:9) (24:10) (24:11) (24:14) (24:15) (24:16) (24:20) (24:24) (25:10) (25:11) (25:17) (25:20) (25:23) (26:10) (26:12) (26:14) (26:17) (26:18) (26:20) (26:22) (27:5) (27:12) (27:13) (27:18) (27:19) (27:23) (27:24) (27:25) (28:1) (28:5) (28:6) (28:7) (28:8) (28:10) (28:11) (28:12) (28:17) (28:20) (28:21) (28:24) (29:4) (29:7) (29:10) (29:11) (29:13) (30:2) (30:10) (30:15) (30:20) (30:22) (31:7) (31:10) (31:11) (31:12) (31:13) (31:18) (31:22) (31:23) (32:3) (32:4) (32:7) (32:10) (32:14) (32:15) (32:17) (32:18) (32:20) (32:21) (32:22) (33:5) (33:12) (33:13) (33:20) (33:21) (34:3) (34:4) (34:11) (34:13) (34:18) (34:19) (34:25) (35:5) (35:6) (35:7) (35:10) (35:11) (35:13) (35:15) (35:16) (35:18) (35:19) (35:23) (35:24) (36:2) (36:3) (36:9) (36:12) (36:14) (36:16) (36:18) (36:22) (36:23) (37:1) (37:3) (37:12) (37:13) (37:14) (37:15) (37:20) (37:21) (37:24) (38:1) (38:2) (38:5) (38:8) (38:9) (38:10) (38:14) (38:17) (38:19) (38:22) (38:24) (38:25) (39:6) (39:10) (39:14) (39:25) (40:1) (40:9) (40:10) (40:12) (40:14) (40:20) (40:21) (41:1) (41:7) (41:10) (41:11) (41:16) (42:2) (42:3) (42:6) (42:7) (42:12) (42:16) (42:17) (42:18) (42:19) (43:1) (43:3) (43:4) (43:6) (43:7) (43:10) (43:11) (43:12) (43:16) (43:17) (43:21) (43:24) (44:4) (44:9) (44:11) (44:13) (44:19) (44:22) (45:2) (45:3) (45:5) (45:13) (45:17) (45:22) (45:24) (46:5) (46:12) (46:13) (46:20) (46:21) (46:22) (47:2) (47:4) (47:6) (47:17) (47:25) (48:9) (48:10) (48:17) (48:19) (48:20) (48:21) (49:1) (49:5) (49:11) (49:13) (49:16) (50:9) (50:10) (50:11) (50:12) (51:4) (51:10) (51:15) (52:14) (52:23) (53:2) (53:3) (53:14) (53:18) (53:23) (54:9) (54:12) (54:13) (54:16) (55:13) (56:13) (56:24) (57:2) (57:3) (57:10) (57:11) (57:12) (57:15) (57:17) (57:18) (57:22) (57:24) (58:4) (58:6) (58:7) (58:11) (58:12) (58:24) (58:25) (59:1) (59:2) (59:5) (59:6) (59:12) (59:13) (59:14) (59:19) (59:20) (59:21) (59:24) (60:2) (60:3) (60:8) (60:11) (60:15) (60:19) (60:25) (61:5) (61:7) (61:8) (61:12) (61:13) (61:17) (62:2) (62:14) (62:23) (63:5) (63:9) (63:12) (63:18) (63:20) (63:23) (64:4) (64:9) (64:12) (64:14) (64:15) (64:17) (64:24) (64:25) (65:1) (65:4) (65:7) (65:10) (65:13) (65:15) (65:16) (65:22) (65:23) (65:25) (66:1) (66:7) (66:10) (66:11) (66:14) (66:18) (67:6) (67:13) (67:15) (67:16) (67:17) (67:22) (67:24) (67:25) (68:2) (68:3) (68:5) (68:6) (68:9) (68:10) (68:15) (68:17) (68:19) (68:20) (68:24) (69:5) (69:7) (69:8) (69:10) (69:16) (69:17) (69:18) (69:21) (69:25) (70:8) (70:14) (71:17) (71:18) (71:21) (71:24) (72:1) (72:5) (72:10) (72:24) (72:25) (73:5) (73:6) (73:11) (73:19) (73:23) (74:1) (74:2) (74:6) (74:9) (74:12) (74:15) (74:21) (74:24) (75:4) (75:9) (75:14) (75:19) (76:4) (76:13) (76:15) (76:16) (76:21) (77:9) (77:13) (77:19) (77:24) (78:17) (79:2) (79:7) (79:9) (79:10) (79:15) (79:16) (79:25) (80:6) (80:11) (81:1) (81:9) (81:14) (81:20) (82:3) (82:6) (82:12) (82:17) (82:19) (82:23) (82:25) (83:1) (83:3) (83:6) (83:18) (84:18) (85:2) (85:13) (86:2) (86:9) (87:6) (87:11) (87:13) (87:14) (87:15) (88:3) (88:6) (88:10) (88:20) (89:8) (89:9) (89:17) (89:20) (89:21) (89:23) (89:24) (90:2) (90:7) (90:9) (90:10) (90:11) (90:15) (90:19) (91:1) (91:6) (91:13) (91:14) (91:16) (92:2) (92:4) (92:10) (92:13) (92:17) (92:25) (93:12) (93:14) (93:18) (93:19) (93:20) (93:25) (94:3) (94:6) (94:11) (94:12) (94:16) (94:21) (95:1) (95:3) (95:6) (95:7) (95:11) (95:12) (95:13) (95:14) (95:21) (95:24) (96:2) (96:4) (96:6) (96:20) (97:14) (97:22) (97:25) (98:1) (98:7) (98:10) (98:13) (98:14) (98:17) (98:18) (98:25) (99:1) (99:4) (99:5) (99:18) (99:19) (100:5) (100:8) (100:18) (101:1) (101:4) (101:6) (101:9) (101:12) (101:14) (101:16) (101:21) (101:22) (101:23) (102:2) (102:4) (102:7) (102:10) (102:13) (102:15) (102:20) (102:21) (102:23) (102:25) (103:5) (103:10) (103:12) (103:15) (103:16) (103:17) (103:20) (103:21) (103:22) (103:23) (103:25) (104:2) (104:4) (105:12) (105:13) (105:24) (106:2) (106:3) (106:11) (106:14) (106:15) (106:20) (106:23) (106:25) (107:3) (107:5) (107:7) (107:16) (107:17) (107:21) (107:24) (108:2) (108:10) (108:21) (108:24) (109:2) (109:11) (109:12) (109:13) (109:15) (109:20) (110:1) (110:2) (110:6) (110:8) (110:10) (110:14) (110:17) (110:19) (110:23) (111:1) (111:6) (111:11) (111:13) (111:14) (111:15) (111:16) (111:17) (112:4) (112:10) (112:11) (112:14) (113:7) (113:8) (113:10) (113:11) (113:19) (113:23) (113:25) (114:2) (114:4) (114:5) (114:17) (114:18) (114:21) (115:5) (115:6) (115:13) (115:14) (115:15) (116:9) (116:11) (116:22) (116:25) (117:10) (117:18) (117:23) (118:9) (118:10) (118:14) (118:17) (118:23) (118:25) (119:5) (119:6) (119:8) (119:9) (119:11) (119:12) (119:24) (120:12) (120:15) (120:17) (121:10) (121:13) (121:14) (121:19) (121:21) (121:25) (122:4) (122:6) (122:7) (122:8) (122:11) (122:17) (122:19) (122:23) (123:2) (123:5) (123:11) (124:4) (124:15) (124:21) (124:22) (124:25) (125:1) (125:2) (125:3) (125:4) (125:6) (125:7) (125:10) (125:11) (125:13) (125:15) (125:17) (125:19) (125:23) (126:1) (126:2) (126:4) (126:12) (126:13) (126:14) (126:16) (126:25) (127:1) (127:3) (127:11) (127:14) (127:17) (127:24) (128:2) (128:3) (128:5) (128:9) (128:18) (128:22) (129:2) (129:17) (129:18) (129:20) (130:18) (130:25) (131:13) (131:14) (131:19) (131:20) (131:21) (131:23) (131:25) (132:1) (132:7) (132:8) (132:10, (132:15) (132:16) (132:20) (132:21) (132:22) (132:24) (133:7) (133:8) (133:14) (133:16) (133:22) (134:9) (134:11) (134:12) (134:13) (134:20) (134:23) (134:24) (135:3) (135:9) (135:12) (135:13) (135:16) (135:17) (135:21) (135:25) (136:1) (136:2) (136:5) (136:8) (136:12) (136:15) (136:19) (136:20) (136:22) (137:2) (137:4) (137:6) (137:12) (137:18) (137:20) (137:21) (137:22) (137:23) (138:7) (138:17) (138:19) (138:23) (139:1) (139:3) (139:6) (139:11) (139:12) (139:13) (139:14) (139:19) (139:23) (140:2) (140:4) (140:14) (140:23) (140:24) (140:25) (141:3) (141:7) (141:10) (141:13) (141:14) (141:16) (141:19) (141:21) (141:25) (142:24) (143:3) (143:6) (143:12) (143:16) (144:6) (144:8) (144:12) (144:13) (144:16) (144:25) (145:10) (145:18) (145:19) (145:20) (145:21) (145:22) (145:25) (146:2) (146:3) (146:4) (146:9) (146:10) (146:12) (146:20) (146:24) (147:1) (147:6) (147:14) (147:15) (147:18) (147:19) (147:22) (148:3) (148:4) (148:12) (148:17) (148:18) (148:19) (148:20) (148:22) (149:1) (149:2) (149:3) (149:4) (149:19) (149:20) (149:25) (150:5) (150:8) (150:9) (150:12) (150:17) (150:21) (150:23) (151:3) (151:7) (151:12) (151:16) (151:17) (151:18) (151:21) (151:23) (152:2) (152:3) (152:12) (152:15) (152:16) (152:17) (152:18) (152:23) (152:24) (153:1) (153:2) (153:9) (153:13) (153:14) (153:25) (154:3) (154:5) (154:7) (154:11) (154:12) (154:13) (154:15) (154:16) (154:17) (154:20) (154:21) (154:23) (155:1) (155:2) (155:7) (155:13) (155:14) (155:25) (156:1) (156:3) (156:4) (156:9) (156:11) (156:13) (156:14) (156:15) (156:16) (156:20) (156:22) (156:23) (156:25) (157:7) (157:10) (157:18) (157:21) (157:24) (158:1) (158:11) (158:12) (158:15) (158:17) (158:19) (158:23) (159:8) (160:11) (160:13) (160:14) (160:17) (160:21) (160:25) (161:1) (161:3) (161:8) (161:10) (161:11) (161:17) (161:24) (161:25) (162:1) (162:2) (162:15) (162:24) (163:23) (164:8) (164:11) (164:21) (164:22) (164:23) (164:24) (164:25) (165:2) (165:3) (165:4) (165:7) (165:10) (165:12) (165:14) (165:15) (165:16) (165:19) (165:22) (166:2) (166:4) (166:5) (166:8) (166:12) (166:13) (166:14) (166:19) (166:25) (167:1) (167:2) (167:4) (167:11) (167:12) (167:13) (167:14) (168:5) (168:8) (168:9) (168:13) (168:16) (168:18) (168:19) (168:21) (168:24) (168:25) (169:1) (169:2) (169:4) (169:5) (169:13) (169:14) (169:15) (169:16) (169:19) (169:21) (169:24) (169:25) (170:3) (170:6) (170:9) (170:12) (170:13) (170:14) (170:17) (170:22) (170:25) (171:1) (171:3) (171:4) (171:7) (171:8) (171:9) (171:11) (171:13) (171:14) (171:17) (171:21) (171:23) (171:24) (171:25) (172:9) (172:10) (172:12) (172:13) (172:15) (172:17) (172:18) (172:21) (172:22) (172:23) (173:11) (173:12) (173:16) (173:20) (174:2) (174:9) (174:11) (174:12) (174:13) (174:14) (174:15) (174:18) (174:20) (174:21) (174:23) (175:1) (175:3) (175:24) (176:2) (176:3) (176:4) (176:5) (176:6) (176:9) (176:13) (177:5) (177:7) (177:13) (177:14) (177:22) (178:1) (178:12) (178:13) (178:14) (178:25) (179:3) (179:10) (179:11) (179:16) (179:17) (179:18) (179:19) (179:23) (179:24) (180:1) (180:4) (180:6) (180:15) (180:18) (180:19) (180:21) (180:24) (181:9) (181:18) (181:19) (181:21) (181:22)

you-all

you've

(181:24)(182:4)(182:9)(182:11)(182:13)(182:19)(182:23)
(183:2)(183:6)(183:10)(183:11)(183:12)(183:13)(183:20)
(184:3)(184:13)(184:19)(184:21)(184:23)(185:3)(185:5)
(185:6)(185:10)(185:11)(185:12)(185:14)(185:19)
(185:20)(185:21)(185:22)(185:23)(186:2)(186:3)(186:6)
(186:8)(186:15)(186:20)(186:21)(186:22)(186:24)
(186:25)(187:6)(187:7)(187:9)(187:10)(187:13)(187:14)
(188:3)(188:5)(188:13)(188:19)(188:20)(188:21)(188:22)
(188:23)(188:24)(189:6)(189:11)(189:13)(189:15)
(189:19)(189:22)(190:1)(190:3)(190:4)(190:5)(190:7)
(190:8)(190:11)(190:13)(190:14)(190:17)(190:21)(191:4)
(191:5)(191:6)(191:16)(191:22)(192:3)(192:14)(192:21)
(192:22)(193:1)(193:4)(193:11)(193:12)(193:15)(193:22)
(193:24)(194:2)(194:3)(194:15)(194:19)(194:20)(194:21)
(194:24)(194:25)(195:6)(195:8)(195:13)(195:17)
(195:18)(195:23)(196:10)(196:11)(196:15)(196:25)
(197:2)(197:9)(197:23)(198:1)(198:4)(198:6)(198:15)
(198:22)(198:25)(199:21)(199:23)(200:6)(200:7)(200:9)
(200:12)(200:14)(200:15)(200:17)(200:22)(201:3)(201:6)
(201:8)(201:20)(202:8)(202:11)(202:21)(203:3)(203:8)
(203:9)(203:15)(203:16)(203:19)(203:20)(204:1)(204:2)
(204:4)(204:8)(204:9)(204:16)(204:17)(204:19)(204:22)
(204:23)(205:3)(205:8)(205:9)(205:22)(206:9)(206:10)
(206:11)(206:18)(206:20)(206:21)(206:23)(207:1)(207:3)
(207:6)(207:7)(207:13)(207:16)(207:22)(207:23)(207:24)
(208:1)(208:2)(208:9)(208:11)(208:16)(208:17)(208:19)
(209:1)(209:9)(209:16)(209:17)(209:20)(209:21)(209:23)
(210:1)(210:3)(210:9)(210:10)(210:17)(210:21)(210:23)
(210:24)(210:25)(211:1)(211:4)(211:6)(211:9)(211:11)
(211:17)(211:19)(211:20)(211:23)(212:6)(212:7)(213:4)
(213:16)(214:1)(214:2)(214:16)(214:21)(215:4)(215:6)
(215:7)(215:10)(215:16)(215:18)(215:19)
you-all   (45:4)
you'd   (24:18)(24:19)(38:18)(45:25)(56:24)(57:6)
(69:14)(78:5)(93:23)(101:15)(180:17)(208:5)
you'll   (6:10)(6:22)(32:8)(39:17)(39:19)(44:7)(44:16)
(87:23)(88:17)(90:14)(93:4)(139:1)(147:13)(152:20)
young   (131:18)(137:21)(138:21)(166:17)
your   (5:13)(5:17)(5:21)(7:2)(7:14)(7:15)(9:11)(11:16)
(11:20)(16:20)(17:6)(17:11)(23:24)(25:10)(31:14)(32:8)
(37:8)(37:9)(37:10)(39:17)(39:19)(39:23)(39:24)(40:13)
(41:4)(42:10)(43:23)(44:13)(44:19)(45:23)(45:24)
(46:13)(47:1)(47:18)(47:21)(48:3)(48:16)(48:19)(49:1)
(52:25)(57:10)(60:21)(62:21)(63:22)(64:23)(67:13)
(67:17)(70:8)(70:15)(71:15)(77:19)(81:10)(81:12)(82:6)
(82:14)(83:14)(83:18)(84:20)(85:9)(87:12)(87:13)
(90:11)(90:12)(91:16)(94:3)(94:6)(94:17)(95:13)(95:14)
(97:12)(97:14)(97:25)(98:11)(99:6)(103:20)(104:1)
(104:8)(106:3)(106:11)(106:18)(106:25)(107:20)(108:9)
(108:16)(109:15)(110:1)(110:8)(111:15)(113:8)(113:24)
(114:16)(114:17)(116:1)(116:14)(117:23)(118:2)(118:16)
(119:9)(121:21)(122:4)(124:14)(124:15)(125:8)(125:14)
(131:23)(133:21)(133:23)(135:20)(135:23)(137:2)(137:4)
(137:5)(140:5)(140:7)(145:3)(145:11)(145:21)(147:20)
(149:19)(156:2)(157:19)(157:21)(163:6)(167:18)(171:1)
(171:6)(171:22)(177:13)(178:11)(178:21)(179:11)(180:1)
(180:24)(181:13)(182:23)(183:11)(183:19)(183:24)
(184:23)(188:15)(189:16)(189:21)(190:11)(196:20)
(197:5)(201:21)(203:5)(205:2)(209:1)(209:9)(209:12)
(211:24)(214:9)(215:7)(215:19)
your -- which   (110:7)
you're   (6:9)(6:20)(12:18)(16:8)(17:7)(20:11)(20:13)
(26:6)(26:25)(28:9)(31:18)(31:19)(31:21)(31:22)(31:25)
(34:4)(36:4)(36:7)(39:5)(44:4)(46:8)(46:23)(47:20)
(59:3)(68:4)(68:6)(68:15)(69:7)(69:10)(69:12)(72:2)
(73:12)(73:15)(86:4)(86:7)(86:21)(88:3)(88:5)(88:13)
(90:10)(90:12)(93:2)(93:18)(98:18)(99:3)(100:12)
(100:13)(100:14)(102:24)(104:24)(105:20)(109:8)
(121:11)(122:7)(122:23)(127:7)(132:20)(133:7)(134:22)
(134:24)(135:1)(135:2)(135:15)(135:16)(138:25)(139:19)
(142:15)(145:2)(145:5)(147:20)(147:25)(151:5)(151:20)
(154:1)(165:7)(174:11)(176:13)(176:23)(180:12)(182:2)
(182:10)(183:10)(184:3)(186:5)(192:13)(196:1)(199:15)
(201:20)(203:7)(203:8)(205:10)(206:22)(207:2)(207:4)
(207:23)(208:4)(209:4)(209:5)(209:19)(209:24)(212:12)
(213:9)(215:13)
yours   (68:13)(126:14)(135:13)

yourself   (36:24)(126:2)(172:18)(205:2)
you've   (6:20)(7:21)(11:13)(13:3)(14:24)(21:3)(25:7)
(26:11)(27:1)(27:2)(27:25)(35:5)(37:8)(46:23)(59:2)
(68:13)(71:17)(71:21)(74:9)(94:5)(95:24)(99:18)
(126:20)(142:3)(150:14)(156:12)(165:11)(169:18)(178:2)
(179:12)(179:18)(182:11)(185:1)(192:15)(198:21)
(204:12)(207:3)(207:7)(207:10)(215:8)