AP-76207

REPORTER'S RECORD

VOLUME 18 OF ____ VOLUMES

ORIGINAL

CAUSE NO. F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE CRIMINAL DISTRICT |
| | ) | |
| VERSUS | ) | COURT NUMBER 7 |
| | ) | |
| JAMES GARFIELD BROADNAX | ) | DALLAS COUNTY, TEXAS |

---------------------------

INDIVIDUAL VOIR DIRE

---------------------------

FILED IN
COURT OF CRIMINAL APPEALS

SEP 1 6 2010

Louise Pearson, Clerk

On the 9th day of June, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause; and the following proceedings were had before the HONORABLE QUAY PARKER, Judge Presiding, held in Dallas, Dallas County of Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.

HEATHER H. VEZINA, CSR
214.653.5786

A P P E A R A N C E S


MS. ANDREA HANDLEY
SBOT NO. 08898800
-and-
MR. GORDON HIKEL
SBOT NO. 00787696
-and-
MS. ELAINE EVANS
SBOT NO. 24032880
    ASSISTANT DISTRICT ATTORNEYS
    CRIMINAL DISTRICT ATTORNEY'S OFFICE
    DALLAS COUNTY, TEXAS
    FRANK CROWLEY COURTS BUILDING
    133 NORTH INDUSTRIAL BOULEVARD
    DALLAS, TEXAS 75207-4399

        APPEARING ON BEHALF OF THE STATE OF TEXAS


MR. BRAD LOLLAR
SBOT NO. 12508700
    ATTORNEY AT LAW
    1700 COMMERCE STREET
    SUITE 404
    DALLAS, TEXAS 75201
    (214) 384-8178
-and-
MR. DOUGLAS H. PARKS
SBOT NO. 15520000
    ATTORNEY AT LAW
    321 CALM WATER LANE
    HOLLY LAKE RANCH, TEXAS 75765
    (214) 521-2670 (DALLAS OFFICE)
    (903) 769-3120 (HOLLY LAKE OFFICE)
-and-
MS. KERI MALLON
SBOT NO. 24049165
    ASSISTANT PUBLIC DEFENDER
    DALLAS COUNTY PUBLIC DEFENDER'S OFFICE
    FRANK CROWLEY COURTS BUILDING
    133 NORTH INDUSTRIAL BOULEVARD
    DALLAS, TEXAS 75207-4399
    (214) 653-3550

        APPEARING ON BEHALF OF THE DEFENDANT

CHRONOLOGICAL VENIREPERSON INDEX

(VOLUME 18)

JUNE 9, 2009

VENIREPERSON            State       Defense       Page       Vol.

GRICELDA HERRERA          6                                    18
State's challenge for cause..................8
Court's ruling..............................9
Venireperson excused for cause..............9

LISA DAVISON            14          57                         18
Defense's challenge for cause..............93
Court's ruling............................95
Defense's objection to Court's ruling.......95
Venireperson accepted.......................95

CARL JACKSON          106         154                         18
Venireperson accepted.....................174

ERLINDA RENDON        179                                     18
State's challenge for cause...............180
Court's ruling...........................181
Venireperson excused for cause............181

ROGER SCHLUETER       182                                     18
State's challenge for cause...............183
Court's ruling...........................184
Venireperson excused for cause............184

ALAINA RHODES         186                                     18
State's challenge for cause...............187
Court's ruling...........................188
Venireperson excused for cause............188

MATTHEW BOEHME        190                                     18
State's challenge for cause...............192
Court's ruling...........................192
Venireperson excused for cause............192

LAURA GRUENAU         197         239                         18
Defense's challenge for cause..............257
Court's ruling...........................258
Venireperson excused for cause............258

ALPHABETICAL VENIREPERSON INDEX

(VOLUME 18)

| VENIREPERSON | State | Defense | Vol. |
|---|---|---|---|
| MATTHEW BOEHME | 190 | | 18 |
| LISA DAVISON | 14 | 57 | 18 |
| LAURA GRUENAU | 197 | 239 | 18 |
| GRICELDA HERRERA | 6 | | 18 |
| CARL JACKSON | 106 | 154 | 18 |
| ERLINDA RENDON | 179 | | 18 |
| ALAINA RHODES | 186 | | 18 |
| ROGER SCHLUETER | 182 | | 18 |

Court adjourned...........................259    18

Court Reporter's certificate...............260    18

HEATHER H. VEZINA, CSR
214.653.5786

PROCEEDINGS

(9:00 a.m.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson Herrera enters courtroom.)

THE COURT: Good morning, Ms. Herrera. How are you this morning? Come in and have a seat right there, please, ma'am, if you would.

VENIREPERSON HERRERA: Thank you.

THE COURT: Thank you, ladies and gentlemen. Be seated, please.

Heather, this is Prospective Juror No. 771, Gri- --

VENIREPERSON HERRERA: Gricelda.

THE COURT: -- Gricelda Herrera. And good morning, Ms. Herrera.

VENIREPERSON HERRERA: Good morning.

THE COURT: How are you this morning?

VENIREPERSON HERRERA: Good.

THE COURT: I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, and I'm assisting Judge Snipes who is the Presiding Judge over this case in the jury selection process and so we're going to just talk to you very briefly this morning, I think. And let's see. I guess we're -- let's see.

Ms. Handley, are you going to do this one?

MS. HANDLEY: Yes, sir.

THE COURT: Okay. Then you may proceed.

MS. HANDLEY: Thank you, Your Honor.

GRICELDA HERRERA,

Venireperson No. 771, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. Good morning, Ms. Herrera.

A. Good morning.

Q. Appreciate you being here.

A. Thank you.

Q. I only have a couple questions for you. Do you recall filling out this questionnaire when you came down here that day in the big panel?

A. Uh-huh.

Q. On the first page of the questionnaire, do you have it in front of you?

A. Yes, ma'am.

Q. You stated that you were not in favor of the death penalty because of your religion, that you are a Catholic and you do not believe in the death penalty; is that correct?

A. That's correct.

Q. You also circled number four in reference to your -- what represents your feelings. You said, I believe the death penalty is appropriate in some murder cases, but I could never return a verdict which assessed the death penalty. Is that still your feelings, ma'am?

A. Yes.

Q. And on the second page when we asked you if you have any moral, religious, or personal beliefs that would either prevent you from sitting in judgment of another human being or from returning a verdict which resulted in the execution of another human being, you said that you do have beliefs that would prevent you from doing that; is that correct?

A. Okay. Where did you read that?

Q. The second and third question.

A. Okay. All right.

Q. Is that still your feeling, ma'am?

A. Yes.

Q. Okay. That's all the questions I have for you. Thank you, ma'am.

THE COURT: Mr. Lollar, do you have any questions?

MR. LOLLAR: We have no questions. Thank you, Ms. Herrera.

THE COURT: All right. Thank you, Ms. Herrera, for being here.

VENIREPERSON HERRERA: All right.

THE COURT: I'm going to excuse you and you're free to leave.

VENIREPERSON HERRERA: Okay.

THE COURT: And thank you very much for your time and your service today.

VENIREPERSON HERRERA: Thank you.

THE COURT: And just let me keep your questionnaire if you would, please, ma'am.

VENIREPERSON HERRERA: Oh, okay. "m sorry.

THE COURT: Thank you.

VENIREPERSON HERRERA: I leave that?

THE COURT: Yeah, just leave that where it is.

VENIREPERSON HERRERA: Thank you.

THE COURT: Thank you so much. Appreciate you being here.

(Venireperson Herrera exits courtroom.)

All right. Thank you. You can be seated.

Okay. Ms. Handley, does the State have a challenge for cause?

MS. HANDLEY: We do, Your Honor. We would challenge Juror No. 771 that she has a bias against the law that we have a right to depend on.

THE COURT: Okay. And any objection,

9

Mr. Lollar?

MR. LOLLAR: No, Your Honor.

THE COURT: All right. The State's challenge for cause for Prospective Juror No. 771, Gricelda Herrera, is granted.

All right. Are we ready for Ms. Davison? Is that right?

MS. HANDLEY: Lisa Davison.

THE COURT: Ms. Davison.

THE BAILIFF: All rise for the juror.

(Venireperson Davison enters courtroom.)

THE COURT: Come in, Ms. Davison. How are you this morning?

VENIREPERSON DAVISON: I'm doing great. How are y'all?

THE COURT: I'm fine. Thank you. And we're all well. Thank you. And be seated there.

Thank you, ladies and gentlemen, be seated, please.

And good morning once again.

VENIREPERSON DAVISON: Good morning.

THE COURT: I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas. And Judge Michael Snipes is the Presiding Judge over this capital murder case. And Judge Snipes has asked me to assist him

10

in presiding over the jury selection process, and so that explains to you what I'm doing here today instead of Judge Snipes and, also, consequently, why you're here today.

VENIREPERSON DAVISON: Right.

THE COURT: So we do have your questionnaire that you filled out probably over a month ago.

VENIREPERSON DAVISON: Uh-huh.

THE COURT: And you'll recall, I'm sure, that when all of you met in central jury, Judge Snipes talked to the group. At some point in the proceedings, he asked everybody to stand up, raise their right hand, and he administered the oath of a prospective juror to the panel members. Do you recall that?

VENIREPERSON DAVISON: Yes, I do.

THE COURT: Okay. Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON DAVISON: Yes.

THE COURT: Very good. I'll just remind you that you're still under your oath. And what you've been sworn to do is to give us truthful answers, but we know you'd do that anyway, but also to be responsive to each and every question that's asked to you by the attorneys.

VENIREPERSON DAVISON: Okay.

THE COURT: Now, let me tell you kind of how

11

this is going to go. Have you had an opportunity to read your little orientation guide?

VENIREPERSON DAVISON: I have.

THE COURT: Okay. That briefly goes over some of the law and procedural aspects, special issues that are going to be involved in the trial of this case. Now, what the attorneys are going to do this morning with you, they're going to explain the law in more detail than what you've got in here. This is just to kind of introduce you to it because we know nobody has seen or heard about anything like this before, more than likely, you know --

VENIREPERSON DAVISON: Right.

THE COURT: -- in your life. And it's all new, and so we're trying to give you a little absorption time out there, and then when you come in here, they're going to expand on the law, explain it to you. When you understand it -- and if you don't understand it, tell them, you know, and they will -- they will rephrase it or they will explain it a different way to you.

VENIREPERSON DAVISON: Okay.

THE COURT: But once you understand it, then they're going to start asking you questions concerning -- wanting to get your thoughts, your ideas, your opinions concerning the law, the procedural aspects, the special

12

issues that are involved in the trial of the case. Okay?

VENIREPERSON DAVISON: Okay.

THE COURT: And so there's no right or wrong answers to any of these questions. It's not a quiz that you've got to pass. So I just want you to relax. And if you don't understand something, we'll ask them to rephrase it or explain it to you or ask it again and then just -- and be audible with your answers because my court reporter is taking down everything that everybody says, the questions, your answers. And when you're nodding your head, I understand what your answer is.

VENIREPERSON DAVISON: Okay.

THE COURT: But she can't write that on her machine, you see.

VENIREPERSON DAVISON: Okay.

THE COURT: So you'll have to answer yes or no or something like -- you know, or give an answer, an audible answer.

VENIREPERSON DAVISON: Okay.

THE COURT: Uh-huhs and huh-uhs are bad for her too, so...

VENIREPERSON DAVISON: Okay.

THE COURT: Very good. Now, then, let me introduce you to the attorneys that are going to be

13

involved in the trial of this case. Ms. Andrea Handley.

MS. HANDLEY: Good morning.

THE COURT: And next to her is Ms. Elaine Evans, and next to her is Mr. Gordon Hikel. And these three ladies and gentleman are assistant district attorneys, and they're charged, along with another team member that's not here in court today, but with the responsibility of prosecuting this case.

And then seated next to me on this side of the table, going down, Mr. Brad Lollar.

MR. LOLLAR: Good morning.

THE COURT: Next to him, Mr. Doug Parks, and then on the very end down there, Ms. Keri Mallon.

MS. MALLON: Good morning.

VENIREPERSON DAVISON: Good morning.

THE COURT: And these three attorneys comprise the Defense team, and they represent Mr. James Broadnax who is the defendant in this case. All right?

VENIREPERSON DAVISON: Okay.

THE COURT: Very good.

Ms. Handley.

MS. HANDLEY: Thank you, Your Honor.

THE COURT: Yes, ma'am.

LISA DAVISON,
Venireperson No. 392, testified as follows:

14

VOIR DIRE EXAMINATION BY THE STATE
BY MS. HANDLEY:

Q. Good morning again, Ms. Davison.

A. Good morning.

Q. Appreciate you being here.

A. Thank you.

Q. Thank you for your time. Let me tell you what we're doing. We brought hundreds of people down to court that day, had everybody fill out a questionnaire. We have since then read all these questionnaires and we are literally bringing everybody down. And what we're hoping to do is find a group of people that are qualified to sit on a case such as this. Some people are just flat-out not qualified, and we can gather a lot of that just from reading their questionnaire.. For example, the people who say, under no circumstances whatsoever could I ever return the death verdict or a verdict that resulted in the execution of somebody is not qualified because they already have a bias against the death penalty and just couldn't do it.

A. I understand.

Q. Another person who wouldn't be qualified is some people say, I think anybody who ever commits murder should be executed, regardless. That person is also not qualified because they've already made up their mind.

15

They are not willing to look at the circumstances of the particular offense and then decide what is appropriate. They're not qualified either.

I've looked at your questionnaire, and I believe you're one of those jurors that's in the middle, and quite possibly may be qualified to sit on this case. If you're qualified, it doesn't necessarily mean you're automatically on the jury. What we're doing is getting 50 people that are qualified. And after that, we each have our opportunity to go through and decide who will ultimately sit on the jury. Does that make sense to you?

A. It does make sense.

Q. I think you have sat on a criminal case before as a juror, I saw that from your questionnaire, back in the '90s?

A. I have.

Q. And in that case, it looks like you returned a verdict of guilty but the judge assessed punishment in the case?

A. That is correct.

Q. Was that 12 people that were on the jury or six?

A. I think there was only six of us.

Q. Okay. That might have been a misdemeanor case then.

A. It was a DWI case.

16

Q. A DWI, that's a misdemeanor case. And I'll tell you that I'm going to make an assumption that because you sat on that jury in that particular case and were selected, that both sides felt that you were qualified.

A. Yes.

Q. And that means that you were willing to follow the law and base your verdict on the evidence in the case, not make any assumptions, not jump to any conclusions.

I glean that, Ms. Davison, from looking at your questionnaire and I think you've got that in front of you. Even on page 1 there when we ask you about the death penalty, you made the statement, so long as the punishment fits the crime --

A. Right.

Q. -- that you could do it. And I'll tell you, you hit the nail on the head right there. There is nothing automatic about the death penalty. Never. The punishment of the death verdict must fit the crime. It must fit the circumstances of the particular offense. And you won't know that until you see that. So you're right on the money there when you say let the punishment fit the crime, because not all cases that may be eligible for the death penalty are appropriate for the death penalty.

A.  I agree.

Q.  I think you appreciate that, and I see you say you agree with that.  We also asked you a question about, you know, should the jury do the right thing versus follow the law, and you put there on page 11, you had said, the law is the law and you should respect it and you should abide by it.  That's another fundamental element of any criminal case is that you don't have to like the law, but you have to follow the law and you have to abide by the law.  Be it a citizen on the street, we abide by the laws.  If you're a juror on the case, you have to follow the law too.  And you've offered that out there for us, and, again, I think you've hit the nail on the head with that.

We asked you kind of a parlor question there about is it better for 10 guilty men to go free than one to be -- you know, convicted, one innocent man to go to jail.  And I think that's just the kind of question that maybe offers a lot of debate, but you did make the statement that I would agree with it wholeheartedly, and you said the innocent should prevail.  And I think, again, you're right on the money there.  If an individual is innocent, that at no cost are they to be convicted or spend time in prison.

A.  That's true.

Q.  I think that would be heinous.  Okay.  That's -- I get that feeling about you, ma'am, that you're already on the same page with us, and also when we asked you about how you feel about being a juror, you said, I'm not excited to serve but I will if chosen.  And I'll tell you that's another thing that tells me that potentially you may be the kind of person that would be appropriate for this case.  A lot of people don't come up and knock on the courthouse door and go, I want to serve today.

A.  That is -- I was hoping not.

Q.  Okay.  I haven't seen -- well, I see some people who are anxious to get on a jury, and I'm -- I'm a little wary of their motivations, quite frankly.  I think anybody who's anxious to get on a case like this, I have to question their true motivation.  So nobody should be excited about doing this, but I appreciate that I think you recognize it is a duty at times.  And that if you were a qualified person and you are called upon to do it that you would take it seriously, that you would give all the evidence meaningful consideration and that you'll base your verdict on the evidence.  Am I correct in that assumption?

A.  You are correct.

Q.  A qualified juror, I'll pin it down to this, ma'am, I think a qualified juror is a person who says,

first of all, I will follow the law, I will base my evidence on the -- or I will base my verdicts in the case on the evidence in the case and nothing else, I will give consideration to all the evidence in the case before I return that verdict, and I will jump to no conclusions, I won't come in and say I will always do this or I will always do that before I've even heard a piece of evidence.  A qualified juror will say I will wait to hear the evidence and then I will tell you what I can do.  Does that sound like you?

A.  Yes, it does.

Q.  Okay.  You haven't come in here with any automatic preconceived notions on what should happen in any criminal case?

A.  Absolutely not.

Q.  Okay.  Okay.  I want to talk to you, then, a little bit about criminal cases and how they operate and how they are very much alike and how they are also different from a death penalty case.

In all criminal cases, this applied to your DWI case and this applies in this death penalty case, there are fundamental principles of law that apply all the time.  First and foremost, ma'am, as we sit here today, you are to presume the defendant innocent at this point, and the reason being is because I haven't proven a

thing to you, have I?

A.  No.

Q.  He's been indicted, but the law states the indictment is no evidence of guilt.  It merely tells him what he's been charged with and it tells me what I am obligated to prove to you before you can return a verdict of guilty.  It always comes back to the State.  He's presumed innocent because I haven't fulfilled my burden of proof to you yet.  And only if and until I can prove to you each and every element of the offense as set out in that indictment, you're to presume him innocent.  If I do prove that to you beyond a reasonable doubt, then I'm entitled to a verdict of guilty.  Do you understand those propositions?

A.  I do understand.

Q.  Every -- I have to prove every element of the offense.  I don't get points for proving five out of six.  I've got to prove it all.  And I'll give you a crazy example just to illustrate my point to you.  I have to prove to you who did it, when they did it, where they did it, Dallas County, how they did it, and who they did it to.  The indictment states, ma'am, that -- that -- let's say -- let's -- because we're not going to talk about this case, but let's say you're called upon to sit on a murder case, and the indictment alleges that the

defendant ended the life of another person by shooting them with a firearm. Do you understand that's an element that I would have to prove to you beyond a reasonable doubt --

A. Yes.

Q. -- that they killed him by shooting him? Let's say in that case the defendant even says, yeah, I killed the guy and I'm glad I did it, I meant to do it. Okay? We have a confession there. But the medical examiner takes the stand and says, this person's dead, but they didn't die from a gunshot wound. They died because they were stabbed. Have I proved my element?

A. No.

Q. Okay. What would be your obligation in that case?

A. Not guilty.

Q. Absolutely right. That's a far-out example, but that goes to illustrate my point that you must always follow the law. Because it's not your fault. I'm the one who messed up.

You understand that a defendant has a right not to testify in a case. That's a right I enjoy. It's a right you enjoy. It's a Constitutional right. And if a defendant elects not to testify in his trial, the law states you may not use that as evidence against him. In

other words --

A. I understand.

Q. -- if I finish my case, you go back to deliberate, you look at all the evidence, and you say the State didn't quite make it. They're about a hair shy of proving this guy guilty beyond a reasonable doubt. But since he didn't testify, I'm going to use that as evidence against him and I'm going to find him guilty anyway. You can't do that.

A. Can't do that.

Q. And I see you shaking your head no. You're absolutely right on that too. Those are the principles of law that apply, you know. And you as a juror, one of the things that you have to do is judge the credibility of the witnesses in the case and judge the credibility of the evidence in the case. And that's what you did when you sat on the DWI case. And the law states that all the evidence in the case that you use to return your verdict comes to you from the witness stand. It can --

A. Exactly.

Q. -- come to you in the form of somebody testifying, in the form of a document, demonstrative evidence that may be a piece that you could hold and look at, you know, but it comes to you from the witness stand and no place else. I think you've mentioned you've heard

a little bit about this case; is that true?

A. Probably.

Q. Okay.

A. Most -- I mean, I'm -- I hear all the news, so I did probably hear about it --

Q. The law --

A. -- at some time.

Q. The law states that that's not something you can then use as evidence against the defendant. You can't say, let me tell you --

A. Absolutely not.

Q. Okay. Absolutely, then. You understand that.

A. The media can't try the case, and that's how I would have heard it.

Q. You're absolutely right on that. In terms of people taking the stand, you have to judge their credibility too. And the law states that you can't automatically say I will always believe this certain group of people before I even hear them testify. And you've stated that with respect to police officers, that they're human, too, and they make mistakes also.

A. They do.

Q. So you will wait to test the credibility of the witnesses before they hit the stand; is that correct?

A. That is correct.

Q. But tell me, who is -- who is Jerry Stanley?

A. He is my cousin.

Q. Okay. He's a police officer?

A. Yes, he is.

Q. Okay. Well, you've already stated that you don't have a bias automatically in favor of police officers or anything?

A. I do not.

Q. So any kind of relation you have to law enforcement, that's not going to bias you in the case then?

A. That is true.

Q. Okay. Okay. And he's certainly not, I don't believe, expected to testify in this particular case.

Again, everything that you do in this case depends on the evidence in this case. Let's talk a little bit now specifically about capital murder but let's also talk about murder.

A. Uh-huh.

Q. And a lot of people don't know the different nuances and the things in the law until they actually come here, you know, and sit down and get a personal education on it. But we asked you about death penalty cases on, let me see here, turn to page 4, if you would. And the first question we asked you is: For what crimes

25

do you think the death penalty should be available in Texas? You said murder and possibly other crimes if deemed necessary.

I'll tell you that in the State of Texas, the offense of capital murder, and that's the only offense to which the death penalty -- where a person may be eligible for the death penalty, nothing's automatic, but it's actually a very narrowly defined category of crimes. Okay? It's not just murder.

If I were to pull a gun out of my briefcase right now, turn to my co-counsel and just shoot her, you know, and then laugh about it and stomp on her body, I think you'd agree with me that that's pretty heinous, isn't it?

A. I would agree.

Q. And that would be an intentional murder, wouldn't it?

A. That would.

Q. I can't -- I am not eligible for the death penalty in that case, though, because that crime doesn't fit that category of capital murders.

A capital murder is -- it's always an intentional murder. It's never an accidental murder. It's never a reckless or I was being negligent and I killed the person. It's always an intentional murder.

26

It is that. Okay?

A. Okay.

Q. Where you meant to cause the death of the person. It wasn't an accident. There wasn't a legal justification like self-defense. That's a defense and that's something entirely different. It is an intentional murder without legal justification. But it's something else also. It's an intentional murder plus something else in order to be a capital murder. For example, it's an intentional murder of a peace officer while he's in the line of duty or it's the intentional murder of a child under six years of age or it's the intentional murder of two or more people at the same time or the intentional murder of a person in the course of committing or attempting to commit another felony offense. Do you see how there's that additional --

A. I do.

Q. -- aggravating factor that we have to prove in order for it to be a capital murder? Otherwise it's just a murder. Okay?

A. Okay.

Q. So that's my obligation as a representative of the State is to not only prove to you that there was an intentional murder but that there was also an aggravating factor. Okay?

27

A. And that makes it the capital.

Q. That's what makes it a capital and that's what makes the defendant eligible for the death penalty, but it's not automatic. Okay?

A. Okay.

Q. Does that make sense to you?

A. That makes sense.

Q. Let me give you an example of just murder. You know, let's say that I've alleged in an indictment a capital murder, a murder plus one of those aggravating factors. You as a jury might go back and look at the evidence in the case and say, I believe there was an intentional murder here. That's true. He's guilty of that, but I don't think the State proved that aggravating factor. Okay?

A. Okay.

Q. If that happens, are they guilty of capital?

A. No.

Q. Are they guilty of first-degree murder, an intentional murder?

A. Yes.

Q. Yes. So you may not be looking now at a death sentence versus a life sentence, but now you're going to be called upon to decide what do we do in the case of somebody who commits a first-degree murder, an

28

intentional murder. And in this situation, it's not life sentence or death penalty, but it's actually a range of punishment that you look at then.

A. Okay.

Q. You let the punishment fit the crime.

A. Exactly.

Q. Just as you've said there. And you're offered that wide range of punishment to consider. You have to first look at the facts of the offense and then decide where it fits in that category.

And at this point, you can't say I can tell you what I'll always do in a first-degree murder because you haven't --

A. I haven't heard the --

Q. -- heard any evidence.

A. -- evidence.

Q. You can't make any snap decisions. If I were to -- for example, let me give you an illustration -- tell you to envision a 35-year-old man, able-bodied, sound mind, knows what he's doing, who plans out, thinks about it, plans out and does actually murder, end the life of a helpless 10-year-old boy. Now you've got to assess punishment in that case. What do you think?

A. I'd have to hear the evidence.

Q. You do. Because there's never two cases that

29

are alike. I'll submit that to you. You know, a lot of people say they hear that and he killed a 10-year-old helpless boy, I'm going to put him under the prison for life. Well, you could envision the guy who takes a gun, goes out to the playground, sees a little boy on the swing set and just shoots him. That would be horrible, wouldn't it?

A. That would.

Q. And that's the kind of guy that you might not have any sympathy for. Well, let me change that scenario for you to illustrate my point there. Let's say that 35-year-old man is actually the father of that 10-year-old boy. He's been a great husband his whole life. He's been a great father to that boy. He's been a good citizen. He's a hard worker. He provides for his family. Loves them and does everything for them. The sun and the moon rise and set around that little boy of his. Well, that little boy has developed incurable cancer and he's sitting at Children's Medical Hospital, and he's not going to get better. He's going to die. And if that weren't bad enough, he's dying slowly and he's dying painfully.

And that daddy sits there every day by that bed, holds that little boy's hand every second of his life and cries more tears than his son possibly could.

30

He sees him writhe in pain every second of his life. And out of nothing but sheer love and devotion, he decides he's going to end his little man's suffering. And he goes and he finds a lot of morphine. He comes back into the room. He injects the bottle of morphine into his IV. He holds his little guy until he dies, and he dies in his arms. Did he intend to kill that boy?

A. Yes.

Q. Did he do everything that he needed to do in order to make it happen?

A. Yes.

Q. Okay. That is an intentional murder.

A. Yes, it is.

Q. Might be a little different from the guy who just picked a kid off in the playground, isn't it?

A. Yes.

Q. They're both subject to the same range of punishment.

A. Yes.

Q. And that goes to that proposition of it always depends on what the evidence is in the case, doesn't it?

A. Yes.

Q. You always have to let the verdict fit the evidence, don't you?

A. Yes.

31

Q. And you have to let the punishment fit the crime. That's what we're talking about in these criminal cases. That's a murder case. Okay?

Let's talk about capital murder, though. Because you may be called upon to look at if we didn't prove an element of capital, something called a lesser-included offense. Was it just a first-degree murder? Maybe it was a manslaughter. Maybe it was negligent. So that -- that could happen. If it does, I take it you will listen to the evidence and do what's the proper thing?

A. Yes.

Q. Let's talk about capital murder cases now, Ms. Davison. In a capital murder case, there is, of course, the intentional murder plus there is the additional aggravating factor. In Texas, we have what's called a bifurcated trial system, which means that actually trials are in two parts. The first part of any criminal trial is the phase where the jury is called upon to decide one factor only, and that is, is the person guilty of the charge as set out in the indictment? That's all you're concerning yourself with at that point, correct?

A. Right.

Q. If we fail to carry that burden, your verdict

32

would be?

A. Not guilty.

Q. And we go home. If it's a lesser, you know, we talked about that. If I prove to you beyond a reasonable doubt that a defendant is, in fact, guilty of the offense of capital murder, then what are you called upon to do?

A. Guilty.

Q. What's your verdict?

A. A guilty verdict.

Q. That's right. That's the first part of the trial. Okay? Once that happens, we now go into the second phase of the trial, and that's the punishment phase of the trial. It is a -- it's like a separate mini trial. Okay? You didn't make any conclusions or jump to any conclusions in the first part of the case, did you?

A. No.

Q. And you based your verdict on the evidence in the case, didn't you?

A. Yes.

Q. And did you give thoughtful consideration to all the evidence in the case before you returned your verdict?

A. Yes.

Q. You're going to do the same thing in the second phase now, in the second part of the trial. And what

doesn't happen -- I think a lot of people have this idea about capital murder cases, is the jury doesn't go back now and say, okay, how many vote for life in prison without parole, how many vote for death. It doesn't work like that. Whether a person, a defendant, receives a life sentence or a sentence of death depends on how you answer three questions. I believe you've had an opportunity to read those questions, right?

A. Yes.

Q. They're not very clear at first, but I'll submit to you they're really actually not that hard to understand, and I want to walk through those three questions with you.

A. Okay.

Q. Okay? If -- that's how you reach your sentence is how you answer the questions. Everything you did in the first part about considering the evidence, not jumping to any conclusions applies now. Remember how the defendant enjoyed a presumption of innocence in the first part of the trial?

A. Yes.

Q. You presumed him innocent until I proved to you otherwise, right? There's a presumption that applies in the second phase of the trial, too. Okay? Now, he's been found guilty of capital murder, so only one of two things can happen to him now. What is that?

A. Death or life.

Q. That's right. The best he could hope for is a life sentence. That's automatic right now. He's sitting on a life sentence, isn't he?

A. Yes.

Q. Well, the law says that just as you presumed him innocent in the first part of the trial, because I hadn't proved to you otherwise, you must now presume that the life sentence he is sitting on right now is the proper sentence. Okay?

A. Right.

Q. And the reason you have to presume that that sentence is the proper sentence is because I haven't proven to you that it's not.

A. Right.

Q. Does that make sense to you?

A. Right.

Q. In order for that life sentence to become a death sentence, I need to prove to you beyond a reasonable doubt that it should be a death sentence. Make sense to you?

A. Yes.

Q. Sound fair to you?

A. Yes.

Q. Sure. We do that by -- by, again, asking you now to -- all the evidence you saw in the first part of the case, we're asking you to review it again. Okay? Look at all the evidence that was offered before and now you might hear additional evidence. Now you might hear things about the defendant. Now you might hear if he has a past. Now you might hear about his family situation. Now you're going to hear all of those things that are going to help you decide if it should be a death sentence versus the life sentence that it is right now.

A. Okay.

Q. Make sense?

A. Okay.

Q. Okay. The first question we ask you, we actually call it a special issue, but it's also a question, and we refer to it, ma'am, as the future dangerousness issue. And, remember, I have to prove to you that the answer to this should be yes. Because right now the answer to this is no --

A. Right.

Q. -- because I haven't proved anything to you.

A. Right.

Q. And it says, Do you find from the evidence beyond a reasonable doubt that there's a probability the defendant will commit criminal acts of violence that will constitute a continuing threat to society? In other words, I'm asking you, do you think it's -- it's a probability that he's going to commit future acts of violence, that he's going to be a danger in the future? I'm asking you to predict the future. Okay? Do you think that's possible?

A. If you -- if your evidence supports it.

Q. Sure. If I give you enough, then maybe you can answer that question yes.

A. Maybe. Uh-huh.

Q. But can you say right now if somebody's going to be a future danger --

A. No.

Q. -- in a case --

A. No.

Q. -- like this? Because at this point, ma'am, understand where you are right now is you've found this person of intent -- guilty of intentional murder, haven't you?

A. Yes.

Q. Okay. And some people might say, well, if you've proved to me he intended to kill somebody and you've proved to me that he did it in the course of committing another felony offense, then I think that question should automatically be answered yes. Do you

37

believe that?

A. No.

Q. Okay. I'll submit to you that -- that you really can't say if you're a juror in the case because you haven't really --

A. I haven't --

Q. -- maybe you haven't heard enough or you haven't reconsidered the evidence at least. What they don't do in this special issue, ma'am, is they don't define these terms for you. The lawmakers wrote these questions, not us. These are your lawmakers who wrote these.

Let's go through it. When it starts out, do you find from the evidence beyond a reasonable doubt, that ought to always tell you something. Anytime you see that, who are you looking to for the proof?

A. The State.

Q. You're looking to the State. Have I proved to you beyond a reasonable doubt that there is a probability? It doesn't say a possibility; a probability. Do you see the difference between a possibility? Anything's possible, isn't it?

A. Right.

Q. Some people say that a probability is something that's more likely than not. Would you agree with that?

A. Yes.

38

Q. It doesn't say absolutely either. It says is it more likely than not that a defendant will commit criminal acts of violence. That's not defined for you either. It doesn't say that he will commit another murder, that he will commit another felony, that he will commit an assault, that he will make violent threats against people. It doesn't articulate what they are. That's for you to decide what is a criminal act of violence.

You know, if I -- my court reporter sitting here, just minding her business, if I just balled up my fist and hit her in the face, do you think that might be a criminal act of violence?

A. Yes.

Q. Sure. It's for you to decide. Okay? That would constitute a continuing threat to society. At this point, he's sitting on a life sentence, isn't he?

A. Yes.

Q. So where's he going to spend the rest of his life, presumably?

A. In prison.

Q. In prison. Unless he escapes, he's going to be in prison.

A. Right.

Q. Do you see how a prison could also be a society?

39

A. I do.

Q. There are people who not only live there, eat there, watch TV there, whatever they -- the inmates, right, but there's also people like wardens and nurses and doctors, educators, clergy, visitors. It's a society in and of itself, isn't it?

A. It is.

Q. Okay. So the question becomes, have I proved to you that more likely than not, he'll commit some criminal acts of violence that will be a continuing threat to that society in which he is in? Okay?

A. Okay.

Q. Now, you can look at what he did in committing that offense that you found him guilty of to help you decide that question. And as a matter of fact, you can reconsider that and say, based just on what he did, I think I can answer that question yes. But -- but you can also say, that's not enough, I think I need a little bit more. Do you see the difference there?

A. Yes.

Q. But the point being, and I think you've already answered this clearly, just because he's committed a non justifiable first-degree murder and during the -- and a robbery, are you saying you would automatically say this is yes?

40

A. No.

Q. You haven't even heard the circumstances --

A. No.

Q. -- of the --

A. No.

Q. Okay. But you could do that. You could also ask to look at something more or look at something else. What do you think you would need to see or hear or know in order for you to answer that question yes or no? What kind of things, evidence, would help you?

A. I mean, you would have to prove to me that he's -- that he would most likely --

Q. How do you --

A. -- be --

Q. -- think I'd prove that to you? What kind of things would I have to show you to -- for you to decide whether or not somebody would be a future danger to society?

A. I don't -- I don't have specifics.

Q. Right.

A. I don't know what to say specifically, but you would -- I mean, I'm going to have to think that he's definitely a threat to even the prisoners for me to put him to death.

Q. And I'll agree with you, I think that's

41

absolutely correct.

A. Uh-huh.

Q. That's exactly what they're asking you. Some people say, I'd like to see has he ever done something before in his life outside of this offense. Would that make a difference to you?

A. No.

Q. Okay. So just because somebody's never been violent before doesn't necessarily mean they couldn't be violent in the future; is that what you're saying?

A. That is true.

Q. Some people say they'd like to take a good close look at the evidence in the case, which you've told us you would do at this point --

A. Yes.

Q. -- and that would help you make your mind up. But so you think it's possible to answer that question; you just need some evidence to help you answer that question?

A. Yes.

Q. Okay.

A. That is true.

Q. And I can't pinpoint you down to what you'd have to see at this point.

A. No.

42

Q. It's kind of like, well, I've got to wait till I get there.

A. Right.

Q. I've got to see what you've got --

A. Right.

Q. -- before I can tell you yes or no.

A. Yeah, I can't --

Q. If I can't prove that to you, Ms. Davison, if you go, they haven't proved to me that he would be a danger to the other inmates, to paraphrase what you say, then your answer to that question is no.

A. Absolutely.

Q. And if your answer to that question is no, then what is the sentence in that case, what's he already sitting on?

A. Life.

Q. Then it stays at life. Okay?

A. Right.

Q. And that's it. He goes to prison for life, and you go home. Okay? If, however, I prove to you that more likely than not he will be, okay, then the answer to that question is?

A. Yes.

Q. Yes. Okay?

A. Uh-huh.

43

Q. If you answer that question yes, then you move on to the second special issue. Okay?

THE COURT: Can you see?

VENIREPERSON DAVISON: You're okay.

Q. (BY MS. HANDLEY) It doesn't mean you're finished at this point. We haven't reached a conclusion as to what should happen. It just means now you move on to the second special issue. It's a little wordy. A lot of people look at that and go, I have no idea what that means, so let me try to give you an example. All right?

A. Okay.

Q. In Texas, we have something called the law of parties, which basically states this, it says that -- that -- sometimes I think you can see that a lot of crimes are committed not just by one person but two or more people at the same time. They're acting together to commit a crime, correct?

A. Correct.

Q. The law states that -- that if an individual is aiding, assisting, encouraging, directing, in other words, if he is participating in the commission of a crime, he could be found just as guilty of committing it as everybody else. Does that make sense to you?

A. I agree.

Q. And in a capital murder case, it goes a little

44

step further in terms because we're talking about somebody has been killed. Okay? So let me give you an illustration.

Let's say my co-counsel and I go to my house tonight. We're a little low on cash. We're Government workers. We don't make a lot of dough. We need to get some quick money. So we're sitting at my kitchen table, and I say, hey, there's a 7-Eleven down the road, not a lot of foot traffic there, elderly clerk works there. I think it would be easy to rob that place. She says, sounds like a great idea. So she goes and she gets a gun. She goes and buys a gun from Bass Pro Shop. I go and I buy some bullets. We meet back at my house. We get in her car. She drives us up to the 7-Eleven. She parks out front. She says, I'm going to sit here and wait. I'm going to keep an eye out. If there's anybody coming, I'll honk the horn, I'll let you know. Here's the gun. And I say, okay.

I'm getting ready to go in. I say, I forgot my mask. She says, don't worry about it. Just don't leave any witnesses. I go in the store, I rob the clerk of her money out of the till, and then I shoot the clerk three times to ensure that she's dead. Am I guilty of capital murder?

A. Yes.

Q.   Have I killed somebody intentionally?

A.   Yes.

Q.   Have I done it during the course of --

A.   Yes.

Q.   -- committing a robbery?  Okay.  Do you think she could be guilty --

A.   Yes.

Q.   -- of capital murder?  Why do you think that?

A.   She supplied you the gun --

Q.   Yeah.

A.   -- and she took you.  She was your lookout.

Q.   She was an active participant in it, wasn't she?

A.   Yes.

Q.   The law states in order for you to find her guilty of capital murder, though, you have to find that she should have anticipated somebody would die.  Okay?  And the law further states that in order for that party to be eligible, it's not automatic, but eligible for the death penalty, you need to find that she actually did anticipate somebody would die.

You know, in this case, she said, well, don't leave any witnesses and handed me a gun.  You might look at that and be able to decide for yourself whether or not she anticipated somebody would die.  Does that make sense to you?

A.   It does.

Q.   So the question is asking you, do you find from the evidence that defendant is the actual triggerman, so to speak, me; or is the defendant, at the very least then, an active participant in it that knew somebody was going to die, anticipated?

A.   Okay.

Q.   Make sense?

A.   Makes sense.

Q.   If you don't think that, if you don't think that's true, not the triggerman, didn't know somebody was going to die, the answer is no.

A.   Absolutely.

Q.   If you think that is true, I've proved that to you beyond a reasonable doubt, your answer is yes.  Okay?  Do you understand that?

A.   I understand.

Q.   If you've answered that question yes now also, yes, a future danger, yes, an active participant in it, then I will tell you at that point, the defendant is now sitting on a death penalty.  Okay?  The sentence would now be death at this point.  He's at least sitting on it, but you're not finished with the case yet.  Okay?

A.   Okay.

Q.   Remember how you stated in your questionnaire

there, let the punishment fit the crime?

A.   Exactly.

Q.   That comes into play here, okay, on this third special issue.  We also call this special issue the mitigating circumstances issue.  And basically what it's telling you, ma'am, is this:  It's saying that, all right, once again, you, as a juror, you need to go back and you need to look at all the evidence in the case again.  Okay?  Look at everything and reconsider everything.

And -- and after you do that, if there's something there that you find sufficiently mitigating to turn that sentence of death that he's on right now into a life sentence, then that's what you do.  In other words, we also call it a safety net issue.  Okay?

A.   Okay.

Q.   What we're not going to do is put you in a position where you feel like your hands were tied, you know.  There might be something about this case, there might be something about this defendant that even though he's a capital murderer, even though he's a future danger and a participant in it, there's something about this case in particular that tells you that the right thing to do is to turn it into a life sentence versus a death sentence.

I can't tell you -- I can't ask you right now, tell me what's mitigating, tell me what would turn a life sentence, you know, from a death sentence --

A.   Huh-uh.

Q.   -- because you might not know.  Do you know anything about the facts of this case?

A.   None.

Q.   Can you tell me that there will or won't be mitigating evidence in this case?

A.   No.

Q.   Some people can say, well, I don't think background necessarily makes a difference, but the point is, will you at least consider everything first --

A.   Yes.

Q.   -- before saying whether or not it's mitigating or not?

A.   Yes.

Q.   I think a way to look at this is you look at the question there and evidence may fall into one of three categories.  Something about the offense of the case, something about the defendant may be mitigating, in other words, it lessens a person's moral culpability; or something about the case or the defendant may be aggravating, might be really bad, you know; or a piece of evidence about the cas may be neither.  It's not

49

mitigating. It's not aggravating. It's neither. Okay?

All the evidence that you thought might be mitigating, you have to go back now and look at that again and ask yourself, well, it's mitigating, but is it sufficiently mitigating --

A. Okay.

Q. -- to turn it from a death sentence to a life sentence? There could be a hundred mitigating things about a particular person or particular fact situation, but it doesn't necessarily mean it's sufficiently mitigating. Does that make sense to you?

A. Yes.

Q. Okay. You had mentioned a few things in your questionnaire, for example, we'd asked you a question on page 8 about a person's upbringing -- let's go to page 8 here -- and we said to you, let's see, it is like the second question from the bottom: Some people feel genetics, circumstances of birth, upbringing, and environment should be considered when determining the proper punishment of someone convicted of a crime. What do you think? You said, I agree to some degree but also expect others to make a change for the better.

I agree with your answer there. What we're talking about there is, you know, genetics, circumstances of birth, upbringing, environment, what they're saying in

50

Special Issue Number 3 is we'd like you to take a look at that in this case, okay, and take a good meaningful look at that in this case and do you think there's something about the defendant's background that's mitigating? Maybe he had a poor upbringing. Maybe he was raised in a closet, fed dog food his whole life, and had cigarettes put out on him. Well, maybe that's mitigating because I feel bad for him. And then ask yourself, but is that sufficiently mitigating to turn that verdict into life.

A. Okay.

Q. Does that make sense?

A. It does.

Q. So while -- while you do make a fair statement that I think people should make a change for the better, will you at least consider that before coming to your --

A. Yes.

Q. -- your conclusion in that? We also asked you a lot of questions about intoxication. Okay? And I believe that the questions on intoxication -- let's go to page 6, if you would, please. Actually, beginning on the bottom of page 5, we told you that voluntary intoxication does not constitute a defense to the commission of a crime. That's the law. And -- and you agree with the law there. You say, if a person chooses to be intoxicated, then -- then don't -- don't blame the drug.

51

Alcohol or drugs can make you intoxicated. And you're right. That's the law. But then on page 6 it says: The law in Texas further provides that evidence of intoxication may be considered in mitigation of punishment. That word "mitigation," is that what we're talking about here in Special Issue Number 3?

A. Yes.

Q. And basically what the law in Texas is saying is that it's not a legal excuse to the defense of the crime necessarily. Okay? But you can consider it in deciding how you're going to let the punishment fit the crime. Does that make sense to you there?

A. Yes.

Q. Okay. And would you be willing to at least give it some consideration before you decide whether --

A. Yes.

Q. -- it should apply or not? You said you don't agree with that. It's not a defense. Well, you're right. Intoxication is most times voluntary. So it's -- I appreciate that's your personal opinion, but you will at least look at it if it's a factor in this case and decide if it makes a difference?

A. Yes.

Q. It looks to me like you've -- you've had some -- some personal situations with some family and some

52

friends that they've been involved in. It looks like mostly alcohol or something here. Does that also involve --

A. Possession of methamphetamine.

Q. Okay. Possession of methamphetamine. May I ask who that was in your family?

A. My best friend.

Q. Your best friend. How is she doing with that now?

A. She's clean.

Q. She's clean. That's fantastic.

A. Ten weeks.

Q. That's fantastic. That's a tough row to hoe, but that's great. I think you can understand that methamphetamine is a powerful drug, isn't it?

A. That's what I hear.

Q. Yeah. And that it can change how you act sometimes?

A. Yes, it does.

Q. And that maybe you'll do something that you don't normally do, under the influence, correct?

A. (Moving head up and down.)

Q. Does it -- maybe it doesn't make an excuse --

A. No. No.

Q. -- for it.

53

A.   No.

Q.   But you might look at it in the context of why the person did what they did or how they acted; is that fair to say?

A.   I will say --

Q.   And some people --

A.   -- that's fair.

Q.   And some people might say, well, I find that mitigating.  Other people might say, I don't find that it's mitigating at all, you know.  It's up to your personal choice how you feel about that.

A.   Right.

Q.   Okay.  So I'm understanding that's something you can do, then, in a case like this --

A.   Yes.

Q.   -- is look at everything.  So let's -- let me see if there's -- do you have any questions for me so far about this process?

A.   Not so far.

Q.   Okay.  Okay.  Because we both have an opportunity to talk to you in this case, but you've said that -- that you could return a verdict in a proper case --

A.   Yes.

Q.   -- a death penalty case?  And let me just ask

54

you how you feel about the death penalty in general.  I mean, do you think it is a -- if you were governor for a day, would you get rid of it?

A.   No, I would not get rid of it.

Q.   Okay.

A.   I think that we need it.

Q.   Okay.

A.   I'm not going to be real anxious to hand it down.

Q.   All right.

A.   But I do see that there is a need for it --

Q.   Okay.

A.   -- in some cases.

Q.   What purpose do you think it serves?

A.   Justice.

Q.   Okay.  Okay.  Do you think that justice could be reached by just putting a person in prison for the rest of their life versus the death sentence?

A.   I'm not a big advocate of the prison system.  I don't know that there's enough incentive for it to make the prisoners be better.  But that would be my hope, would be that the defendant could possibly turn his life -- his or her life around.

Q.   You understand that if you did -- if you were on a case where the death sentence, death penalty was -- was

55

voted on --

A.   Yes.

Q.   -- by the jury, that that's it, that's all?

A.   That's it.

Q.   That's what's going to happen.  And it doesn't matter if the defendant then goes to prison and -- and finds a cure for cancer or brings peace to the Middle East.  What's done is done.

A.   That is true.

Q.   Okay.  And you're okay with that?

A.   Yes.

Q.   Okay.  All right.  All right.  So in conclusion, then, because I just want to make sure I understand you on this, you don't have any problem with any of the laws that apply in a case like this?

A.   I do not.

Q.   You could follow the law?

A.   I could follow the law.

Q.   Will you wait to hear the evidence before you reach your verdict?

A.   Yes.

Q.   And if I don't prove to you beyond a reasonable doubt the elements of this offense, will you find the defendant not guilty of that particular offense?

A.   Yes, I will.

56

Q.   And if the defendant is guilty of any kind of lesser-included offense, will you assess the punishment within that range?

A.   Yes.

Q.   Will you do what you think is proper for the particular case and the particular facts?

A.   Yes.

Q.   Can you say what you would do in this case at all right now?

A.   Absolutely not.

Q.   Do you have to wait and hear the evidence?

A.   Yes.

Q.   Okay.  And will you do that?

A.   Yes.

Q.   And if you find a person guilty of capital murder, are you automatically going to find that they're a future danger?

A.   No.

Q.   Okay.  Are you going to wait to hear the evidence first?

A.   Absolutely.

Q.   Okay.  And if you find that they're a future danger, are you automatically going to answer the next questions no and yes?

A.   No.

57

Q. Okay. Okay.

A. No.

Q. You'll judge each question on its own merits?

A. Yes.

Q. You'll judge each question on the evidence in the case?

A. Yes.

Q. Okay. And you'll wait till you hear the evidence and consider it before you reach your conclusions?

A. Yes.

Q. Okay. Thank you for answering my questions, Ms. Davison.

A. Thank you.

Q. I appreciate it.

THE COURT: Thank you, Ms. Handley.

Mr. Parks.

MR. PARKS: Thank you, Your Honor.

THE COURT: Yes, sir.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. PARKS:

Q. Ms. Davison, my name is Doug Parks.

A. Good morning.

Q. Good morning. Have you ever seen one of those old puppets in the back of a car when their heads just

58

bob up and down. Do you feel anything like that this morning?

A. Somewhat, yes.

Q. Somewhat. Okay. Well, I want to try to hear a little something from you, Ms. Davison, rather than just hearing you say yes to what the prosecutor's got to say to you.

A. Okay.

Q. Learn a little bit more about you. This is the only chance we'll ever have to do that.

A. Okay.

Q. And to my way of thinking, that's the real purpose of what we're doing here --

A. Okay.

Q. -- in voir dire.

THE COURT: Just a minute Mr. Parks. Let me just ask Ms. Davison, do you need to take a short recess --

VENIREPERSON DAVISON: No.

THE COURT: -- or anything like that?

VENIREPERSON DAVISON: I'm okay.

THE COURT: Are you okay?

VENIREPERSON DAVISON: I'm good.

THE COURT: Do you need any water or anything?

59

VENIREPERSON DAVISON: No. I'm okay.

THE COURT: Okay. All right. Excuse me, Mr. Parks --

MR. PARKS: That's fine.

THE COURT: -- for that interruption. I just neglected to ask her that.

MR. PARKS: Sure.

THE COURT: Go ahead.

Q. (BY MR. PARKS) All right. Let me see where I was. All right. We were talking about us just talking and learning a little something about you. I like to tell jurors, Ms. Davison, that, just to give you a little bit of a road map, I'll talk to you a little bit about your questionnaire, probably not a whole lot, but some just to make sure that I understand where you're coming from. Then we'll talk about the guilt/innocence stage of the trial for a little while, and then we'll talk about the special issues. Okay?

A. Okay.

Q. I want to tell you that there are no right or wrong answers to any of these questions.

A. Okay.

Q. So long as they're your honest answer. You don't have to agree with me. I don't -- I'm not going to tell you what you need to say in order to be on this

60

jury. You just tell me how you honestly feel about these issues --

A. Okay.

Q. -- and we'll be fine. Okay?

A. Okay.

Q. You tell us that -- that you do agree with the death penalty, and I believe you told Ms. Handley that you do see a need for it?

A. I do.

Q. That if you were the governor of the State of Texas, you would have the law, and that's fine. And that the purpose that you see in the death penalty is one that serves justice; is that fair to say?

A. That is fair.

Q. Okay. Well, we'll probably talk about that a little bit more as we get a little further into this. But I wanted to flesh out a little bit on your questionnaire. On the front page, you tell us that you agree with the death penalty so long as the punishment fits the crime. And I'm wondering what you had in mind, if anything, Ms. Davison, when you wrote that. What -- what sort of crime do you believe that the death penalty is appropriate for? What -- what fact situation do you have in mind, if you do?

A. I don't really have -- I mean, I said on --

61

later in my questionnaire that murder --

Q. Uh-huh.

A. -- in some cases.

Q. Right.

A. And not in all cases, so I don't have a predetermined -- I don't --

Q. Okay. And it sort of leads me where I was going --

A. Okay.

Q. -- which is the discussion on the very top of page 4 where you tell us what you've just said, that you believe the death penalty should be available for murder and possibly other crimes if deemed necessary. And, again, I was wondering if you had any particular situation in mind there.

A. I don't. That would be for the State or the prosecution to do, to present the evidence for me to return that verdict.

Q. Okay.

A. And I had to say that because I have no idea what crimes would even warrant the death penalty.

Q. Okay. And that leads me into something that I want to make sure that we're together on before we go forward here, because studies have told us that as many as 20 percent of jurors who serve on these kinds of

62

cases, even after they've finished the trial and they're interviewed after they've returned their verdict, as many as 20 percent of them believe that it was mandatory that they assess the death penalty once they found the defendant guilty, that that's what they had to do. You understand that that's not the law?

A. I understand that's not the law.

Q. You understand that the law is always satisfied with the life penalty?

A. Yes.

Q. That, in fact, it presumes the life penalty?

A. Exactly.

Q. And regardless of the facts and circumstances, if a jury returns the life penalty in a death penalty case, no one has a right to second-guess them or suggest even that they did the wrong thing. Do you understand that?

A. I understand.

Q. And you understand that the jurors are in service of the law and they're not to take sides?

A. Exactly.

Q. Okay. Sometimes I fear that we have jurors who believe that because we're spending a great deal of time and effort on these cases, that translates, obviously, into a great deal of money, that if they were to go back

63

in the jury room after all of this time and expense and money expended on the part of the State of Texas, and they're citizens of the State of Texas, citizens of Dallas County and it's their money that's been spent and their public servants whose time has been devoted to it, that they are under some obligation to return a death penalty to make it all worthwhile. Do you feel --

A. Absolutely not.

Q. Do you feel like that at all?

A. Absolutely not.

Q. Fair enough. You've indicated that on the scale of 1 to 10 that you're an 8. That would put you not to the extreme for it but significantly in favor of the death penalty; is that a fair interpretation of that?

A. Yes. If the evidence warrants the death penalty.

Q. Okay. I believe, Ms. Davison, that for right now -- oh, one other thing I wanted to talk to you about over on page 5, we ask all jurors, do you believe in an eye for an eye. And we get all kinds of answers, either yes or no, but all kinds of answers to the next question. What does that mean to you? Because it means something different to nearly everybody. What does an eye for an eye mean for you?

A. I was raised with the belief that if I shot your

64

toe off that you should shoot mine off.

Q. Okay.

A. That's how -- that's how I see that statement, eye for an eye and tooth for a tooth.

Q. You see in the context of a -- of a capital murder case --

A. That's not possible.

Q. -- in the event that you find someone guilty of capital murder, then obviously you have found that that person took another person's life. Some jurors tell us that for them, an eye for an eye means just that. You proved to me that a person took a life, then I'm going --

A. Take a life.

Q. -- to give the death penalty; is that the way you feel?

A. Yes.

Q. Okay. Fair enough. Let's talk about, a little bit about the guilt/innocence phase of the trial at this point, Ms. Davison. Do you believe that you've understood all the concepts that the prosecutor talked to you about? That the State of Texas has the burden of proof?

A. Yes.

Q. That Mr. Broadnax is presumed to be innocent where he sits here in the courtroom this morning?

65

A. That is correct.

Q. That they have to prove everything that they have put in that indictment, those elements that you've talked about, and they have to prove those beyond a reasonable doubt to all the members of the jury before the jury would be justified in returning a guilty verdict? Do you understand all --

A. I understand.

Q. -- those concepts? Now, it's not uncommon, in fact, it's almost a given that jurors will tell us that they understand all of those things, Ms. Davison. And I believe that almost all of our jurors do believe those things. I don't necessarily think that they always really afford the accused citizen the presumption of innocence that the law is saying -- says they're entitled to. It's one thing to say, I understand the concept of presumption of innocence. I think it's something entirely different to say, and I do, in fact, presume that person to be innocent.

I say that because I think that it is counterintuitive for us as human beings to presume accused citizens to be innocent. I think that it is actually more likely that we presume that an accused citizen is guilty. And I say that because I know from my own experience at what I do, and I'm a criminal defense

66

lawyer, and from members of my family and the people that I talk to, you pick up the newspaper in the morning and you see that someone has been arrested for some heinous offense, and the first thing you say to yourself, I suggest, is, boy, I'm glad they got that guy off the street.

A. Not necessarily.

Q. But it's not an uncommon thing, would you say?

A. It's not an uncommon thing.

Q. And that's the sort of thing that we have to make a conscious decision to disregard, and I think most people can do that if they make that conscious decision. Are you able to do that, do you think?

A. Yes.

Q. And -- and you do presume Mr. Broadnax to be innocent?

A. Absolutely.

Q. Okay. Now, when we talk about the elements of the offense in that indictment, Ms. Davison, I know that Ms. Handley talked to you about the manner and means portion of that indictment, and that -- that's what we refer to when we talk about how the indictment says a killing took place. Do you remember she said that, you know, if the indictment says shot with a gun and the evidence shows stabbed with a knife, then they haven't

67

proven that element and you should return a verdict of not guilty?

A. Exactly.

Q. You understand that. And that goes to all the elements in that indictment. And we can't talk to jurors about the facts of the case --

A. Okay.

Q. -- that's actually in consideration, so that there's no way for a juror to know what parts of that indictment are not going to be contested and what parts of that indictment are going to be contested. In any individual case, it may be a situation where the identity is contested. The defendant says, you know, it wasn't me. You've got the wrong person, and there's a big fight over whether or not they've got the right person. Theoretically, I suppose it could even be whether or not the offense occurred in the right county. They allege Dallas County, and there may be some issue as to whether or not the offense actually occurred in Dallas County; not so much whether the defendant did it but where he did it.

A. Right.

Q. And it might be that the contested issue goes to the state of mind of the defendant at the time the offense was committed. See, they've got to prove that

68

this was an intentional killing.

A. All right.

Q. And the law allows either side to introduce evidence of the condition of the defendant's mind at the time the offense was committed. So that based upon what that evidence might be, it might be evidence of mental illness that does not rise to the level of insanity, it might be a level of intoxication that was not voluntary, it might be a level of intoxication that was voluntary that impacted upon that person's state of mind at the time that might cause a jury to believe that he did not act intentionally or at least have a reasonable doubt about whether or not he did.

And then you would next consider whether the accused acted knowingly. And the evidence might again raise a reasonable doubt whether he had that state of mind.

A. Okay.

Q. And then you would next consider, you know, in going down the line through recklessly and criminally negligent, criminal negligence, so that could be something that could be contested.

What a juror has got to be able to do, just as Ms. Handley said, is not to jump to conclusions before you have heard all of the evidence at the guilt/innocence

stage of the trial. Okay?

A. I understand.

Q. Again, the studies that are conducted show that as many as 40 percent of our jurors make up their mind about what to do in the case after they've heard opening statements and before they've ever heard one word of evidence. Okay? So we caution people, don't do that. Don't make up your mind about the case based on what the lawyers say to you. We're not going to ever testify. Okay?

A. I understand.

Q. What we say is not evidence. You only get the evidence from the witness stand. Does that make sense to you?

A. Yes.

Q. And you can't fairly consider and deliberate your verdict until you've heard all of the evidence?

A. All of it, right.

Q. Right. Then you can retire with the other members of the jury, follow the law and make a determination. Now, right now, Ms. Davison, you've told us on your oath that you'll tell us the truth.

A. Yes, I did.

Q. If you're one of the 12 jurors who sit on this case, you will take another oath that -- that tells us, promises on your oath that you will a true verdict render according to the law and the evidence. And you understand the difference between --

A. Yes.

Q. -- those two oaths?

A. Yes.

Q. And do you believe that you would be able to do that?

A. Yes, I do.

Q. Okay. Ms. Davison, and I'll be real honest with you, based upon your questionnaire, and I think that I'm comfortable in saying that we're probably in agreement here, you -- based on your questionnaire, you look like a real strong State's juror. Okay?

THE REPORTER: Excuse me. Strong what?

MR. PARKS: State's juror.

Q. (BY MR. PARKS) That if you sit on this jury, just based on your questionnaire --

A. Okay.

Q. -- that what you're most likely going to do is assess the death penalty. Do you agree with that?

A. No.

Q. Okay.

A. Absolutely not.

Q. So if we read you that way, we would be --

A. Yes.

Q. -- misreading you; is that what you're saying?

A. Yes. Yes.

Q. All right. That leads me into what I want to talk to you about with respect to the punishment phase --

A. Okay.

Q. -- of a capital murder trial. And -- and please don't jump to the conclusion that we are conceding anything in this case. Okay?

A. Okay.

Q. We're not. Just because I'm talking to you about the punishment phase doesn't mean that we're conceding we're going to get there.

A. I understand.

Q. I get nervous sometimes. I think, you know, people sit over there maybe and they're reading things into this that they ought not to be reading into it. This is the only chance we have to talk to you.

A. I understand.

Q. And so we've got to do it now. So let me -- let me set the context, if you will, Ms. Davison, for where a jury is when they are confronted with these special issues, because one thing is certain. If the State has failed to prove that the accused committed any offense, then this jury, when they return their verdict according to the law and the evidence, you're going to return a verdict of not guilty --

A. Not guilty.

Q. -- and don't ever see these special issues.

A. Right.

Q. Or if, based upon the evidence, the State has failed to prove capital murder but has proven some lesser-included offense, then the jury is going to go back and determine within the range of punishment what the appropriate punishment is, and we won't ever see these special issues.

A. Right.

Q. Right? So it's only when a jury has determined from the evidence beyond a reasonable doubt that the defendant's guilty of capital murder are they ever faced with having to answer these special issues. Okay?

A. Right.

Q. So what does that tell you about the defendant at that point in time --

A. If I --

Q. -- if you're -- if you're called upon to answer Special Issue Number 1?

A. That he was -- that he was found guilty of -- of the crime.

Q. So what do you know about him at that point in

time?

A. That he has life in prison.

Q. Okay. And that?

A. That he's found -- been found guilty of the crime.

Q. He's an intentional murderer?

A. Right.

Q. Who killed another human being because he wanted to without any legal excuse or justification, and he did that during the course of the commission of another serious felony offense?

A. Right.

Q. Whatever -- whatever else you may know about him, you would have to know that, or you would have never gotten to that --

A. Right.

Q. -- question.

A. Right.

Q. Does that make sense to you?

A. Yes.

Q. When we say someone acts intentionally in killing another person, what does that mean to you, Ms. Davison?

A. That he intended to do the crime.

Q. Exactly. That's what he wanted to do.

A. Right.

Q. It wasn't an accident.

A. Right.

Q. He wasn't acting in self-defense. Nobody made him do it.

A. Right.

Q. We call that duress. You know, a situation where somebody snatches the banker's wife and kids and says I'm going kill them if you don't go clean out the vault, then he's not -- he's not intending to commit the offense. He's doing it under duress.

A. Right.

Q. So it's not duress; nobody's making him do it. It's not an accident. He's not insane.

A. Right.

Q. That's an excuse, a legal excuse. So it's he did it because he wanted to, formed that as his goal, did whatever it took.

A. Right.

Q. Make sense to you?

A. Yes.

Q. All right. Now, the law, of course, recognizes, Ms. Davison, that not all capital murderers will constitute a future danger.

A. Right.

Q. If it didn't recognize that, it would -- there would be no need in asking that question. Okay? Although the law recognizes that that question will always be asked about an intentional murderer. Okay?

A. Okay.

Q. So we come back around to the question that Ms. Handley put to you, and that would be -- and I want to revisit that in a few minutes or a little bit, anyway.

What sort of evidence would you be looking for in trying to determine whether the defendant in the case that you're a juror on is one of those, as our criminal -- Court of Criminal Appeals has described as a few incorrigibles who cannot even be put in prison without fear of assaults on others and those who can be safely locked up in our penitentiary system? What -- what distinguishes one from the other? Do you have any thoughts about what would be --

A. I have no preconceived notion. I -- no, I -- I mean, the evidence would have to prove to me that he would be -- that he would constitute a threat to society inside our prison walls.

Q. And -- and that's kind of where, from my standpoint, Ms. Davison, we kind of bog down, because I don't know, you know, whether you're saying it would take evidence for me to make an answer of yes to that or would I just have a gut feeling about that, you know, I'll know it when I get there, but I can't --

A. I would hope that I would know it when I get there. I can't sit here and tell you that I would come back with a death penalty.

Q. Some jurors -- okay. I understand. Some jurors tell us, and I -- I think there are about three major categories as far as this is concerned. You may not fit into one of them, but here's what we kind of hear from jurors. We have some jurors who say to us, hey, you know, that calls upon me to determine whether a person will live or die based on a prediction of the future of what beyond a reasonable doubt I believe a defendant would probably do in the future, and we're just simply not capable as human beings of making that kind of determination, and I'm not going to ever condemn someone to death based on what I think might happen in the future. And so they say basically that they'd never answer that question yes because they're just not capable of doing that. Okay?

Other jurors on the other extreme say, you know, anybody who is the kind and type of person who would determine to kill another human being and do it during the course of a commission of another felony is

just the kind and type of person who may not absolutely commit acts of violence in the future but would probably commit acts of criminal violence in the future and would constitute a continuing danger, so I'm going to always answer that question yes if I have found a person guilty of capital murder. Do you believe you fit in either of those two camps?

A.   I don't think so.

Q.   Okay. There's a third category, as I indicated to you, who sort of take the position, I'm not going to automatically answer that question yes. I can consider that a person might not be a future danger even though they're a capital murderer. I can keep an open mind to the possibility they wouldn't be a future danger, but I'm going to make the Defense prove to me that he's not. Now, I will tell you, Ms. Davison, that that's not what the law provides. Okay? The law provides that the State of Texas has to prove that a person would be a future danger, and the Defense doesn't have to prove that they would not be. I'm just saying that some jurors, regardless of what the law says, fit in that category and tell us that. Do you feel that you fit there?

A.   No.

Q.   Okay.

A.   The State has the burden of proof.

Q.   State has got the burden of proof. All right. Let's talk about what might be relevant to that particular special issue. Some jurors say to us that what a person has done in the past would help them answer that question either yes or no on the theory that the best predictor of the future is what has happened in the past. You've told us that you consider that to be totally irrelevant. Is that the way you feel about it?

A.   Yes.

Q.   So if the State were to show you in an individual case where you were a juror that the defendant not only had killed this particular person, but had killed people before, assaulted people before, had been incarcerated before, and had assaulted guards and inmates, that would mean -- that would be meaningless to you in answering that question?

A.   No.

Q.   Would it be relevant to you?

A.   It would be relevant in some of it, yes.

Q.   Okay.

A.   I would -- I would go into it with an open mind and --

Q.   I understand that.

A.   -- look at the evidence.

Q.   But it's kind of like the guilt/innocence

stage. You go into it with an open mind, but you'd be looking for some kind of evidence to show you that the person was guilty, right?

A.   I would be looking at the prosecution to present that this person's guilty. I mean, I have no -- I can't say what I would do until I see it all.

Q.   I'm not asking you that, Ms. Davison. I'm just asking -- I'm trying to get some handle on what would be important to you.

MS. HANDLEY: Your Honor, I think that this juror just answered the question the best she can.

MR. PARKS: Well, if -- if the State would kindly let me do this my way.

THE COURT: Go ahead. Go ahead, Mr. Parks.

Q.   (BY MR. PARKS) I'll be the determiner of when I'm happy with what I'm hearing. Okay, Ms. Davison?

A.   Okay.

Q.   The point I'm trying to make is, is that in proving Special Issue Number 1, you would want evidence, wouldn't you?

A.   Yes.

Q.   Now, do you believe that just because the person is guilty of capital murder that that proves to you that he would be a continuing danger?

A.   No.

Q.   So you're going to be looking for something more than just the fact that he's guilty; am I right about that?

A.   Yes.

Q.   Okay. Now, the prosecutor termed that a little bit more. You get to decide what's enough for you. You know, it's not up to me or the prosecutor to suggest to you how much more evidence you have to have. You have to have enough that it satisfies you, because you're the decision maker. Does that make sense to you?

A.   Yes, it makes sense.

Q.   So it doesn't -- you know, if you want to, you can -- you can make it just a little bit more, but you don't have to. You can make it as much as you want to. Okay? Let's say, for instance, you heard a case where you found the defendant guilty of capital murder but you learned that he had never been convicted of a felony before in his entire life, that there were no -- there was no proof of any violence toward anybody before, that he had not assaulted anybody during any time that he'd ever been incarcerated. Well, do you think that that might, then, form your answer to Special Issue Number 1, whether he would be a future danger?

A.   Again, I don't -- I guess I don't understand the question because I'm not -- I mean, you're -- what are

81

you asking me?

Q. Well, Ms. Davison, I'm just trying to find out what you think might or might not be important to you in answering that question by way of evidence. I mean, the State's got to show you evidence, right?

A. Right.

Q. I'm just kind of trying to figure out what sort of evidence you think might be relevant to answer Special Issue Number 1 aside from the fact that the person's guilty?

A. Okay. In order to get to that, I would have to -- I mean, he's already spending life in prison.

Q. Yes, ma'am.

A. They have to be able to show to me that he would commit criminal acts of violence --

Q. Yes, ma'am.

A. -- and that would continue to threaten society. How -- how they were going to do that and what they would have to do in order for me to -- I don't know. That's up to them.

Q. Okay. But -- and you have no idea what sort of evidence you might consider in that?

A. No.

Q. Okay. But -- but you've told us that prior -- prior criminal record or lack of prior criminal record

82

would not be relevant to you in answering that question. Am I right about that or not? I don't care which way it is, Ms. Davison. I really don't.

A. I would -- I would say that if the -- you know, if he -- yeah, if -- some of his prior -- if he's killed prior, then, yes, I would have to lean toward that I could say yes on that question.

Q. Okay. And -- and the flip side of that coin is, is if there was no prior acts -- criminal acts of violence, would that also be relevant?

A. Yes.

Q. Okay. Fair enough. Because that's part of the things that you have to take into consideration in making this prediction of the future. You've got to base it on something, right?

A. Right.

Q. Okay. Fair enough. All right. I'm going to skip over Question Number 2. That is the parties issue. Do you believe that you understood basically what that's about from the prosecutor's --

A. Yes.

Q. -- questions to you? Okay. Let's go to Special Issue Number 3 --

THE COURT: Can you see?

VENIREPERSON DAVISON: Yes.

83

Q. (BY MR. PARKS) -- Ms. Davison, and I want to revisit your questionnaire a little bit in talking to you about that question. The difference in Special Issue Number 3 and the other issues that have been before you is that there are no -- there is no burden of proof on that issue. The State does not have to prove to you that there are no mitigating factors that would be sufficient to change a death sentence to a life sentence. We don't have to prove to you that there are from a -- from a strict standpoint. I think you would probably expect that we'd want to do our best and try to do that, but the law doesn't require it.

In theory, if -- if the State got a verdict of guilty and we went into the punishment phase, the State could stand up and say, we rest, we have no additional evidence, just consider the facts that you heard at the guilt/innocence stage of the trial, and the Defense could stand up and say, we rest, we have no additional evidence either. Okay? And if you got to Special Issue Number 3, you still would have an obligation to review all of the evidence, even though no evidence had specifically been offered for that purpose. Do you understand that?

A. Yes. It says taking into consideration all of the evidence.

84

Q. Right.

A. Yes.

Q. When it speaks to the defendant's character, does anything come to mind to you, what character means to you in the context of that question? I mean, what do you think that the question is asking you to consider there?

A. The defendant's character and background.

Q. Uh-huh.

A. The prosecution would inform us of that information --

Q. Okay. Well, what -- what --

A. -- in the -- in the punishment phase in Question 1, right?

Q. Well, you might hear some of that, yeah. I'm trying to get to --

A. Because she stated that in the punishment phase --

Q. Uh-huh.

A. -- then that's when we would hear from the character witnesses and -- and past offenses and such as that.

Q. If there are any, yeah.

A. Right.

Q. But what I'm trying to get to is, is what does

character and background mean to you? What -- what -- I --

A. His morals.

Q. -- mean, education or lack of education?

A. His education, his upbringing.

Q. Okay. You understand that a determination of what would be mitigating is up to you --

A. Yes.

Q. -- as a juror, and what weight to be given to the mitigating evidence is up to you as a juror. Okay?

A. Okay.

Q. So that you can hear evidence of how a person was raised. He might have been raised in a good, close, and loving home, had everything that he ever wanted or desired; or it might be that you would hear evidence that he was brought up in a horrible situation; or it's something in between. But there's no requirement that a particular level, for instance, of mistreatment -- there's no requirement that a juror waits to see whether or not a person's been raised in a closet and fed dog food and cigarettes put out on him. There's nothing in the law that says mitigation or mistreatment has to rise to that level. Do you understand that?

A. I understand.

Q. It can be whatever you as an individual juror believes that it ought to be.

A. Correct.

Q. Does that make sense?

A. Yes.

Q. Okay. You've told us in your questionnaire on page 5, I want to revisit this a minute, where we tell you that the law in the State of Texas is such that voluntary intoxication does not constitute a defense to a crime. And you've indicated you agree with that law, right?

A. Yes.

Q. And then we flip over to the next page and it says, The law in Texas further provides that evidence of intoxication may, and that is the keyword there, may be considered in mitigation of punishment. Do you agree with this law, and you say no. Now, there's nothing wrong with saying no because when the law uses the word "may," they mean just that; otherwise, the law uses the word "shall." Okay?

A. Okay.

Q. So it didn't say that you shall consider it in mitigation. It says that you may consider it as mitigation in your discretion.

A. Right.

Q. Some jurors think that it should be considered in mitigation. Some jurors believe that it should not be considered in mitigation. That's up to their own personal beliefs and opinions in that matter. Now, do you think that you've changed your mind about that issue during -- during the course of the voir dire or do you still believe that that's something that you don't believe ought to be considered in mitigation?

A. I don't think that it should be used.

Q. Okay. And we're talking about the voluntary intoxication.

A. Voluntary.

Q. Not somebody slipped something a in drink that they didn't know about.

A. Right.

Q. But voluntary. So would it be -- would it be fair to say, Ms. Davison, that if you heard evidence of voluntary intoxication in a case, that's not something that you could give consideration to in answering Special Issue Number 3?

A. Right.

Q. Okay. Fair enough. What about age? Now, here's the law in the State of Texas. The law says that a person cannot be subjected to the death penalty unless they are at least 18 years of age at the time the offense was committed. Okay? So 18 years of age or older. Some jurors say that age would be a factor that they would consider in answering Special Issue Number 3. Other jurors say as long as they were legally adults, that age doesn't matter whether they were 18 or 21 or 37.

A. That's true. It doesn't matter.

Q. Is that the way you feel about it?

A. Yes.

Q. So if a defendant were in the younger range, 18 to 23, 24, that would not be a factor for you; am --

A. No.

Q. -- I right in that? Okay. Fair enough. Something else that people occasionally mention to us is the difference between if there's more than one person involved in the offense, who was the leader and who was the follower. Now, take into consideration they're both guilty of the offense, do you think it would make you any difference who was the leader and who was the follower?

A. No, not if they were both participating in the crime.

Q. Okay. Regardless of who the shooter was?

A. Right.

Q. Okay. Fair enough. What about circumstances of a person's raising, if there's, I guess for lack of a better word, do you think that those are -- I guess the easier way to ask this is again what we're told by

89

prospective jurors. Some prospective jurors say to us that factors such as child abuse, either physical abuse, mental abuse, sexual abuse, or extreme poverty, those sorts of things would be important to them in making a determination. Other jurors say, you know, a lot of people go through those kinds of things without committing criminal offenses. None of us has had a perfect upbringing. That wouldn't be a factor at all. How do you -- how does that play with you? How do you feel?

A.   It wouldn't be a factor. We all have -- have our battles.

Q.   Okay. So I guess to use the example that Ms. Handley used, raised in a closet and fed dog food?

A.   That's unfortunate.

Q.   It's unfortunate, but it doesn't have anything to do with the case?

A.   Has nothing to do with the crime that they have been accused of.

Q.   Sure. And in all honestly, Ms. Davison, does it kind of basically come around to what you told me earlier about an eye for an eye to you?

A.   Yes.

Q.   Once the State has proven to you beyond any reasonable doubt that a defendant has intentionally

90

killed someone else because they wanted to, that the right and proper punishment for that person is to lose their life also?

A.   That is true.

Q.   And you believe that if you sat on the jury in that sort of a case that that would be your inclination once they -- once they found -- they convinced you that he was guilty that your verdict is going be a death penalty; is that fair to say?

A.   No.

Q.   No. What would make --

A.   We still have the --

Q.   What would make the difference?

A.   We still have the special issues. If I find him guilty --

Q.   Okay.

A.   -- then he's got life in prison.

Q.   Okay.

A.   They still have to do these before I can give him the death penalty.

Q.   Okay. Let me ask you this then. Let's -- I want you to assume, A, that they found him guilty because, obviously, they wouldn't have -- you wouldn't see these questions unless you had. I want you to assume further that you've heard evidence that convinced you

91

that Special Issue Number 1 is yes, and you've answered it yes, you and the other members of the jury. And if you're given Special Issue Number 2, I don't think anybody's told you that you may not even ever see Special Issue Number 2. That's not automatically given. It depends on the evidence that you hear at the trial, and the Judge will make a decision later on whether to give Special Issue Number 2 or not.

A.   Okay.

Q.   You would absolutely be given Number 1, and you would absolutely be given Number 3. It's just that Number 3 might be Number 2 --

A.   Okay.

Q.   -- if they didn't give Number 2. Make sense to you?

A.   Okay.

Q.   All right. Well, let's assume that you got 1 and you got 2 and you answered both of them yes, so now you've got a guilty intentional murderer who you believe from the evidence is going to be a continuing danger to society. Right?

A.   Okay.

Q.   Now, you're at Special Issue Number 3, and you're asked to consider mitigating factors and whether or not they would be sufficient to change a death penalty

92

to a -- to a life penalty. In all honesty, Ms. Davison, if you believed Special Issue Number 1 was yes and that you were answering these questions about a person you thought would commit criminal acts of violence in the future, could you ever answer Special Issue Number 3 in such a way that he would get a life penalty?

A.   Yes.

Q.   Put him right back in the penitentiary that you had said he would be a danger in?

A.   Yes. That's -- that's --

Q.   How does -- how does your belief on eye for an eye fit in, factor into that, if it does?

A.   I -- because I hope that justice prevails.

Q.   Okay.

A.   And if the defendant does not deserve the death penalty, I would hope that it wouldn't be me that would give it to him. I don't -- I --

Q.   Okay. I'm not sure I follow you about that, but that's --

A.   If -- if I have said that, yes, they've proven to me that he would be a threat --

Q.   Uh-huh.

A.   -- but then there's mitigating circumstances over here that -- that they have proven, then I can't put the defendant to death.

93

Q. Okay. I'm with you. Okay. Fair enough. Thank you, Ms. Davison.

MR. PARKS: I believe that's all the questions I have.

THE COURT: All right. Thank you, Mr. Parks.

Ms. Davison, I'm going to ask you to step out with my bailiff for just a moment while I confer with the attorneys, and then I'll bring you back and give you a result. All right?

VENIREPERSON DAVISON: Okay.

THE COURT: Thank you for your time.

(Venireperson Davison exits courtroom.)

THE COURT: Thank you. Be seated.

All right. Ms. Handley, do you have a challenge for cause on Prospective Juror No. 392, Lisa Davison?

MS. HANDLEY: We do not. We believe she's qualified.

THE COURT: Okay. Mr. Parks, does the Defense have a challenge for cause on Lisa Davison?

MR. PARKS: We do, Your Honor.

THE COURT: Okay. Go ahead and dictate it into the record.

MR. PARKS: We would challenge Ms. Davison

94

for cause for the reason that based upon her answers, Your Honor, she would -- Special Issue Number 3, the mitigation special issue, would be of no consequence to her. While I admit that she said that she could answer that question yes, that there were sufficient mitigating circumstances, she rejected as a -- as relevant to the answering of that special issue all of the things, really, that the special issue calls upon her to consider. The defendant's character and his background, those things are irrelevant to her. She said that. She said that voluntary intoxication would not be a consideration for her at all. She said that on her questionnaire. She said that in her responses to me. She said that age would not be something that she'd consider. She said that background, whether or not he had been sexually abused, physically abused, mentally abused, lived in poverty, none of those things would be a consideration for her. That's exactly what Special Issue Number 3 speaks to.

She would not consider whether -- evidence that he was a follower and not a leader on the issue. All of those are things that we believe this jury will hear and we'll asking the jury, if it comes to that, to consider as sufficient mitigation to change a death sentence to a life sentence if they get to that point.

95

And, consequently, to seat this juror would be a violation of Mr. Broadnax's rights under the Eighth, Fourteenth, and Sixth Amendments of the United States Constitution, their equivalents in the State Constitution, and would violate the Supreme Court's holdings on Lockett v. Ohio, Morgan v. Illinois, and Eddings v. Oklahoma.

THE COURT: Okay. Ms. Handley, does the State have a response or --

MS. HANDLEY: Briefly, Your Honor. I believe a juror can give whatever weight they feel a particular issue deserves in mitigating, or whether or not something's mitigating or not. This juror's been consistent, Your Honor, even through much prompting to the otherwise. She has steadfastly maintained that she has to wait and hear the evidence in the case, that she cannot do that right now. She hasn't heard anything, and that, no, she does not have an inclination to go one way or the other, wouldn't do that, and towards the end even stated, well, they still have to prove these special issues to me before I can return a verdict of death. I believe that she is qualified, Your Honor.

THE COURT: State's challenge -- excuse me. I'm sorry. Defendant's challenge for cause is denied.

MR. PARKS: Your Honor, may the record

96

reflect that this is a juror who is not acceptable to the Defense?

THE COURT: Yes, sir, the record will so reflect. Okay. She is Number 20.

All right. Bring Ms. Davison back in for me if you would, please.

THE BAILIFF: Ms. Davison.

(Venireperson Davison enters courtroom.)

THE COURT: Ms. Davison, just go ahead and have a seat right there again, if you would, please, ma'am.

Thank you. Be seated, please, ladies and gentlemen.

And, Ms. Davison, you have been qualified as a prospective juror in this case, Number 20 to be exact. And what I'm going ask you to do is a couple of things for me, if you would, please. That doesn't necessarily mean -- it means you're going to be on a panel of, I think the lawyers explained to you what we're doing is qualifying like 50 people, 48 to 50 people --

VENIREPERSON DAVISON: Okay.

THE COURT: -- as a panel, and then each side will take strikes, make strikes, and then those 12 people that aren't struck by either side then will become the jury.

You will find that out whether or not you're on this jury, I'm going to say, at the latest, at the end of July.

VENIREPERSON DAVISON: Okay.

THE COURT: All right. Now, what I'd like for you to do, the two things I was going to ask you to do, we anticipate the evidence in this case, that Judge Snipes will begin evidence in this case on August the 10th, which is a Monday.

VENIREPERSON DAVISON: Okay.

THE COURT: I'd like for you to kind of pencil in on your calendar right now that week and the following week.

VENIREPERSON DAVISON: Okay.

THE COURT: We anticipate that this case may take about two weeks to try, hopefully. Don't think it will take any longer than that. And hopefully it might conclude --

VENIREPERSON DAVISON: Okay.

THE COURT: -- even earlier than that, but I think that would give him plenty of time to try the case --

VENIREPERSON DAVISON: Okay.

THE COURT: -- those two weeks. So the week of August the 10th and then that following week, which I guess would be the 17th.

VENIREPERSON DAVISON: 17th.

THE COURT: Yeah. So, anyway, those two weeks, if you would, and I think that would take you through the 21st would be that following Friday.

VENIREPERSON DAVISON: Okay.

THE COURT: So the 10th through the 21st, and, of course, you'll have the weekend off in between there, so those 10 days, working days.

VENIREPERSON DAVISON: Okay.

THE COURT: And the other thing is now -- and I believe that you did say that you knew nothing about this case; is that correct? I mean, you don't --

VENIREPERSON DAVISON: No.

THE COURT: -- recall ever hearing anything about it?

VENIREPERSON DAVISON: No.

THE COURT: So you don't have any preconceived ideas about, you know, what happened or what --

VENIREPERSON DAVISON: No.

THE COURT: -- what some newspaper account said happened --

VENIREPERSON DAVISON: Right.

THE COURT: -- or some TV report, anything like that? Well, I want to keep you that way.

VENIREPERSON DAVISON: Okay.

THE COURT: I don't want you to go home, now that you know you have the possibility of being a juror in this case, and go get on the Internet and go back in the archives of the newspaper and try to find, you know --

VENIREPERSON DAVISON: Right.

THE COURT: -- newspaper articles concerning this case --

VENIREPERSON DAVISON: I understand.

THE COURT: -- or old TV reports. Also, from this point forward, if there is any publicity, pretrial publicity, before the trial actually starts --

VENIREPERSON DAVISON: Okay.

THE COURT: -- then I don't want you to read those newspaper articles, if any. I don't want you to listen to those TV reports, if any.

VENIREPERSON DAVISON: Okay.

THE COURT: Okay? And I'm sure that Judge Snipes during the course of the trial will continue, if there is any coverage of the trial --

VENIREPERSON DAVISON: Okay.

THE COURT: -- then I'm sure Judge Snipes will continue to admonish the jury not to read or not to watch the TV or the radio --

VENIREPERSON DAVISON: Okay.

THE COURT: -- listen to the radio accounts. Okay?

VENIREPERSON DAVISON: Okay.

THE COURT: But, anyway, if you'll do those two things for me. Mark that on your calendar and kind of watch the -- you know, keep from reading the newspapers and that sort of thing and don't go back and dig any old information out.

VENIREPERSON DAVISON: Okay.

THE COURT: All right. Very good.

VENIREPERSON DAVISON: Thank you

THE COURT: Thank you. Thank you for your time.

VENIREPERSON DAVISON: All right.

THE COURT: Appreciate it very much.

(Venireperson Davison exits courtroom.)

THE COURT: Why don't we take about a 10-minute recess.

(Recess, 10:39-10:53.)

(Open court, defendant present.)

THE COURT: Mr. Jackson. Yeah, Mr. Jackson.

THE BAILIFF: All rise for the juror.

101

(Venireperson Jackson enters courtroom.)

THE COURT: Good morning, Mr. Jackson. How are you this morning? Just go ahead and have a seat there, if you would, please, sir. Thank you. And let's see. You may need that, yeah, that little deal there. We won't let you forget your book when you leave.

VENIREPERSON JACKSON: All right.

THE COURT: It doesn't look like anything that --

VENIREPERSON JACKSON: I brought it in this morning to keep myself awake, and that was a really bad idea.

THE COURT: Didn't help much?

VENIREPERSON JACKSON: No. No.

THE COURT: Well, Mr. Jackson, we're glad to have you here this morning. I want to thank you for your time in advance. I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, just right up the road here. And Judge Michael Snipes is the Presiding Judge over this capital murder case, and he's asked me to assist him in the jury selection process. And he's upstairs in his courtroom taking care of the everyday matters of the court --

VENIREPERSON JACKSON: Right.

THE COURT: -- while I'm down here assisting

102

him by picking this jury. So, anyway, that's what I'm doing here today instead of Judge Snipes, and, consequently, that's why you're here today as well. So, anyway, you will recall about, well, it's been over a month ago now, I guess, that you all met in central jury. There was probably, what, three or 400 of you or something like that?

VENIREPERSON JACKSON: Uh-huh.

THE COURT: Judge Snipes addressed the group at that time. At some point in the proceedings, he asked the entire panel to stand, raise their right hand, he administered the oath of a prospective juror to each panel member. Do --

VENIREPERSON JACKSON: Yes.

THE COURT: Do you recall that?

VENIREPERSON JACKSON: Yes, sir.

THE COURT: Well, good. Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON JACKSON: Yes.

THE COURT: Good. All right. Well, let me just remind you you're still under that oath, and what you've been sworn to do are really two things, to give truthful answers, which we know you would do anyway, but also to be responsive to each and every question that's asked to you by the attorneys that will be participating

103

in the voir dire examination or the -- that's just what we call this little question and answer period.

VENIREPERSON JACKSON: Sure.

THE COURT: Okay? Now, have you had an opportunity to read the kind of introductory guide here, juror's introductory guide --

VENIREPERSON JACKSON: Yes, I went through it.

THE COURT: -- that I've given to you? Okay. And that's just kind of to make you aware, because I'm sure you've never had an occasion to really think about the law that's involved or the procedural aspects that are involved in capital murder trials, and so this is just kind of a little introductory thing.

What's going to happen here today, the lawyers that are going talk to you are going to explain the law in more detail than what you've got here. And then once you understand the law, then they're going to ask you questions about how you feel about it. Just getting your ideas, your thoughts, your opinions, if you will --

VENIREPERSON JACKSON: Right.

THE COURT: -- about the law, the procedural aspects, the special issues that would be involved in the trial of this case. Okay?

104

VENIREPERSON JACKSON: Okay.

THE COURT: Now, no right or wrong answers.

VENIREPERSON JACKSON: Uh-huh.

THE COURT: It's not a quiz that you've got to pass.

VENIREPERSON JACKSON: Sure.

THE COURT: You know, it's just how you feel about it. That's what they're looking for.

VENIREPERSON JACKSON: Okay.

THE COURT: Okay? All right. Now, then, at some point in time also back on that day --

VENIREPERSON JACKSON: Yeah.

THE COURT: -- you filled out a questionnaire, and so that's your original questionnaire that you filled out. And I know you haven't seen it in over a month, but they're going to have questions about some of your responses, I'm sure.

VENIREPERSON JACKSON: Sure.

THE COURT: And they're going to want to get you to turn to a certain page or question and then they're going to ask you questions about why you answered this way or what you were thinking about when you put the -- you know, put that response down, something of that nature. But, again, no right or wrong answers, just really how you felt about it or what you were thinking at

105

the time. Okay?

VENIREPERSON JACKSON: Okay.

THE COURT: Let me give you an introduction to the attorneys here. This is Ms. Andrea Handley.

MS. HANDLEY: Good morning.

VENIREPERSON JACKSON: Good morning.

THE COURT: And she'll be talking to you this morning. Next to her is Ms. Elaine Evans, and then Mr. Gordon Hikel down here.

MR. HIKEL: Good morning.

THE COURT: And all three of these ladies and gentleman are assistant district attorneys. There's one or two more that's on the prosecution team that aren't here today, but these three are on the prosecution team, and they're charged with the responsibility of prosecuting this case.

Then seated next to me down the table here is the Defense team. Mr. Brad Lollar.

MR. LOLLAR: Good morning.

THE COURT: Mr. Doug Parks next to him. On the very end there, Ms. Keri Mallon.

MS. MALLON: Good morning.

VENIREPERSON JACKSON: Good morning.

THE COURT: And then they, as I said, comprise the Defense team. These attorneys are the

106

Defense team for Mr. James Broadnax on the very end down here who is their client and the defendant in the case. All right? All right.

Ms. Handley.

MS. HANDLEY: Thank you, Your Honor.

CARL JACKSON

Venireperson No. 544, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. Good morning, again. How are you?

A. I'm all right. Just -- just flagging a little bit this morning, but, you know.

Q. Why are you flagging? What have you been up to?

A. Oh, it wasn't that. It was I -- I rushed out to make sure I got here on time, so I didn't have really as much of a breakfast as I should have, so I'm in a bit of a sugar down right at this moment, but...

Q. Most important meal of the day --

A. Yeah.

Q. -- you know. I'd offer you some of my juice, but I drank out of it. I can't make any guarantees about --

MR. LOLLAR: Here's a little candy bar.

VENIREPERSON JACKSON: Thank you.

THE COURT: It looks like there's some mints

107

there. They're in neutral territory. Help yourself to those, if you want.

Q. (BY MS. HANDLEY) Absolutely.

THE COURT: I've got some packets of sugar.

VENIREPERSON JACKSON: Not the highest nutritional content, but it'll do. Help me stay awake.

Q. (BY MS. HANDLEY) If you need something, Mr. Jackson, you let us know.

As the Judge said, my name is Andrea Handley. I'm an assistant district attorney, and myself and my colleagues here, we are in charge of helping to select the jury for this particular case. What we're doing is talking to everybody individually about their questionnaire, talking to them a little bit about the law, and finding out whether or not the individual is qualified to sit as a juror. Just because you're qualified doesn't mean that you'll ultimately be selected to sit as a juror in the case, but potentially you could be. Now, we are slated to go to trial on this case on August 10th.

A. Okay.

Q. And we believe, best estimate, that it will take two weeks to try this case. We normally work kind of business hours, you know, 9:00 to 5:00, break for lunch, such as that. What I can't tell you is how long a jury

108

will deliberate.

A. Right.

Q. That's -- I -- I can't estimate for that. Some people will come back in a couple hours. Some people it's taken them, you know, a week to deliberate. So we're looking, at the very least, maybe two weeks in this case, 9:00 to 5:00. Now, you do have a full-time job; is that correct?

A. Yeah. And I didn't -- when -- when they -- I heard the restrictions on, you know, what I could use as an excuse, I didn't feel that I had anything that qualified, but I will say I do a full-time job that is very full-time because it's a small business.

Q. Yeah.

A. And then on top of that, I have a college course that I'm taking, but the homework on that's about 10 hours on top of everything else I'm doing.

Q. Okay.

A. So there may be a bit of a -- I mean, I'll -- I'll sit, but there may be a time kind of issue for me.

Q. Well, let's talk a little bit about that. What do you do for a living?

A. I'm the office manager for Universal Melody Services.

Q. Okay.

109

A. I run collections, receivables. I help with payroll when it goes out every -- so, I mean, I pretty much touch almost everything that goes on in that office.

Q. Okay. Is it fair to say a lot of people depend on you being at the office?

A. Yes.

Q. Are your responsibilities pretty high at the office?

A. Yes.

Q. Are you the kind of guy, and I see this in offices a lot of times, that you're the guy who knows how to do this and really nobody else is -- is qualified to do it; if you're not there, it kind of falls apart?

A. No. I -- I -- I take a lot of effort to make sure that I've -- it's not -- there's not one person who can replace me, but I take a lot of time to try to make sure there are a number of people that when I'm gone, they can still survive.

Q. Okay.

A. This isn't about my place of business. I will say, my place of business, the huge season is right when this is going on.

Q. Right.

A. Because it's back to school and --

Q. Right.

110

A. -- that's when we rent almost all the instruments.

Q. I gotcha. Kind of like hitting a --

A. But I mean, that's not --

Q. Kind of like hitting an accountant during tax time or something?

A. Exactly.

Q. Maybe any other time of the year, but this time of the year is really a big burden at work --

A. Yeah.

Q. -- a lot going on at work. Okay. Okay. How many people in your office?

A. I've got -- just like office people or in the whole building?

Q. Office people, the people you work with.

A. The people I work with, there's only about four or five.

Q. Okay. Okay. So with you not there, we're down to three or four people?

A. Yeah.

Q. Okay. You said you also go to school. You're studying bachelor of science, I believe, in accounting and finance?

A. Yes.

Q. Did you bring one of those books with you today?

111

A. Yes.

Q. Do you also use that as a doorstop?

A. Or I use it for power lifting, one of the two.

Q. Sure. Sure. What kind -- when do you go to school? When do you do your classes?

A. In the evening. I've only got one class this semester, but it's the summer semester so it's a little bit compressed, and this is the Capsim course.

Q. Okay. And how many nights a week do you go to that?

A. Just once.

Q. Just once. What night of the week do you go?

A. Wednesday.

Q. On Wednesday nights. What are the hours?

A. It's going to be 6:00 to 10:00.

Q. 6:00 to 10:00.

A. But if something like this is going on, I'm pretty sure I can get my professor to at least be lenient on when I get there.

Q. Okay. He'll give you some hedge time if you have to be late or something?

A. Right.

Q. But you do need to at least attend?

A. Right.

Q. Okay. Do you have -- when do you expect to

112

finish that?

A. I believe it will be early August.

Q. Okay.

A. So that may actually be -- when we start, we may be out of it.

Q. Okay. Okay. I certainly appreciate you saying that maybe you can move your schedule around and get some people to help you, and I appreciate that. The question becomes, Mr. Jackson, you know, some people tell us that, look, I've got all this going on at work, this is a pretty big crunch time at work.

A. Uh-huh.

Q. My absence is going to be noticed. I'm going to be thinking about the office. I'm going to be -- I'm going to be distracted about what's going on at the office or distracted also by what's going on at school and such as that. Do you think you're going to be distracted at all?

A. I don't know that there's any way I couldn't be a little bit. I don't know that it would be a -- I'm pretty good about leaving that stuff --

Q. Yeah.

A. -- where -- being where I need to be.

Q. Uh-huh.

A. But, again, the time of the year, it may be I'd

113

still think about it --

Q. Okay.

A. -- a little bit.

Q. So you're going to be thinking about your stuff at work?

A. During or --

Q. Uh-huh.

A. Probably not during. Probably after. It's what -- what my big problem would be would be the hours I'm not in the court --

Q. Right.

A. -- I would be scrambling to do a bunch of stuff.

Q. All right. All right. So we've got you scrambling then?

A. Yeah.

Q. Okay. All right. Are you good at scrambling?

A. That is my job, so, like I said, that's why I give it out to a bunch of people.

Q. Sure. Let me ask you this: Mr. Jackson, are you going to be able to give a hundred percent of your time and attention to this case?

A. If asked to, I can.

Q. Okay. Let's talk about your questionnaire. Okay? Because what we're doing is, you know, a lot of people say I can -- I can follow the law. As a matter of

114

fact, you put on here, I do not believe that the death penalty ever ought to be invoked. I'm looking at page 1.

A. Sure.

Q. As long as the law provides for it, I could assess it under the proper set of circumstances. And then I've gone through your questionnaire and I've seen that you're very -- you've got a lot of opinions about the death penalty and the system in general and such as that. And so what -- you know, a lot of people say they can follow the law, but maybe what we need to know is or what I need to know, at least, is about how you really do feel about this law.

A. Uh-huh.

Q. You know, and how your feelings affect your decisions that you would make in a case like this. And, again, Mr. Jackson, there's no right or wrong answers here.

A. Sure.

Q. Nobody's going to write a report to your employer saying, you know, Mr. Jackson has an opinion like this and the State doesn't believe that. That -- that would be utter nonsense, but I think that you can appreciate that I would like know your --

A. Right.

Q. -- fair and candid opinions on this. So it

115

is -- it is, then, fair to say that you -- you are not in favor of the death penalty?

A. In general, I think it's probably just expedient more than anything else. I don't -- I mean, I think there are probably better ways that, you know, things can be figured out. I don't -- I don't spend a whole lot of time thinking about it --

Q. Okay.

A. -- so it's --

Q. Okay.

A. -- you know.

Q. How do you think it's expedient?

A. Well, not in -- not in terms of court time, I guess, anymore; but I just think rather than, you know, having to deal with the person after the trial, having to find something productive to do with them, it's just -- I think sometimes it's just faster. It -- it makes, I guess, the family feel better, but, I mean, in general, I don't know that that's really what we should be doing.

Q. What do you think, and I know you don't know a thing about Andrea Handley, but what do you -- why do you think I'm seeking the death penalty in this case?

A. I don't know very much about this case, so I'm going to guess whatever the crime was, was so, I guess, well, for lack of a better term, it was so extreme that

116

it warrants, you know, what you're seeking.

Q. Right.

A. I'm guessing it's not just, you know, a weird circumstance happened and a shot was fired and someone died. I'm guessing that you're believing there was a conscious thought --

Q. Uh-huh.

A. -- that could have easily been avoided and it simply wasn't.

Q. I'll tell you, Mr. Jackson, I don't know how much you know about the law, but not all murder cases are -- are -- is the defendant subject to or eligible --

A. Right.

Q. -- I'll say this, for the death penalty, because there's nothing automatic about it. Just because you find a person guilty of capital murder doesn't mean they automatically get the death penalty. And I will tell you that we do not seek the death penalty on every capital murder case that comes across our desks or is submitted to our office. We're actually very selective about it. And in terms of expediency, do you think that that's factored in to our equation?

A. No. I -- I -- when I wrote a lot of those, they were more in the general scope of how it comes across in numbers. I mean, it's -- I don't think anybody takes

117

what they're doing lightly. I don't think there's anybody who's going, this seems like a good idea, let's do it. I think it's probably very -- I mean, I think it's probably a heartfelt decision on every one of them.

Q. Uh-huh. Uh-huh.

A. But, again, I'm not exposed to the courtroom. I'm more exposed to the gross numbers that come out, and, you know, I mean, I guess, you know, the prosecutor right now is dealing with the Innocence League, so there's -- whenever I see things that it seems -- it seems like things have been getting through the system that really shouldn't, it's just -- it just brings up questions.

Q. Sure. Sure. Because we do have the -- the prosecution integrity unit and Mr. Watkins has been revisiting cases that are -- that are pretty old --

A. Yeah.

Q. -- if you've been following the news. Now we have DNA --

A. Right.

Q. -- and we're able to show and prove that based on that, that the person is -- should not be in prison, that they are actually innocent and they are exonerated on that. Knowing, following Mr. Watkins and his -- his efforts in the Innocence Project and such as that, and yet seeing that we're still seeking death on an

118

individual, what does that tell you?

A. Well, I mean, I believe that the prosecutor's office believes that the crime itself was extreme enough to warrant it. I mean, I don't know. Again, I don't know too many of the specifics of the case.

Q. Right.

A. But, I mean, I'm guessing that for whatever reason, the -- there is enough there that you feel that this should be pursued as a death penalty case.

Q. Does the Innocence Project and what our current DA is doing, does that -- does that change your opinion about our integrity or what we're doing down here, our decision-making?

A. Yeah, to a -- to a large part, it does. I mean, especially when -- and I'll just take this to an office setting just outside, or what I'm used to, when people are willing to really look at what they're doing, it makes you question what they're doing a lot less because there's already a system in place where they're basically checking themselves. And maybe with, you know, outside people, we get it in accounting all the time, if you've got auditors in all the time, you're not too worried about what the accountants are doing. I mean, you could be, but the more people are willing to open up what they're doing, the less you worry about when they see --

119

you know, they see things --

Q. Right.

A. -- that you may not necessarily know enough about to disagree with.

Q. Yeah. And I might have taken this out of context. Do you think we're doing something less? You mean --

A. No. No. No. No. When I'm saying -- or if you're talking in the context of if you're doing the Innocence Project, what I'm saying is --

Q. Okay.

A. -- it makes me question less the motives when you're --

Q. I gotcha.

A. -- when you basically have an open door on everything that you've ever done.

Q. Right. Right. Okay. I noticed in -- also in your questionnaire through some of your answers, let's look at page number 2 where we asked you the best argument against the death penalty. Are you with me?

A. Yeah.

Q. And you said, too often it appears to be invoked on -- in -- on -- I think it says -- inequit- --

A. Inequitable fashion.

Q. -- inequitable fashion. Pardon me. And that

120

the system is too imperfect too. But you said there, inequitable fashion. What do you mean there?

A. I speak -- I'm -- that -- that's just demographics. I don't see -- I mean, and -- and that's a tricky thing to do. Again, I don't -- I don't live in this area. I don't know the social demographics of crime and all that. I really don't. But I do always -- there is a question mark that goes off in my head whenever things appear to be -- when there seems to be a dominant demographic represented in something like this.

Q. Do you think the fact that the defendant in this case is African-American is factored in to our decision to seek the death penalty?

A. No.

Q. Okay. But when you say inequitable, you're looking at the -- at the numbers. Am I understanding like how many African-Americans, how many Hispanics, how many --

A. Yeah. When I -- when I speak, I'm speaking in generalities. I don't have a lot of -- I mean, I don't watch a lot of courtroom shows.

Q. Okay.

A. I don't do anything like that. I just -- when I -- when I see numbers, I'm a numbers guy to begin with, that always puts a little question mark in my head. Now,

121

truth be told, I don't know enough about what's going on --

Q. Okay.

A. -- to really have a huge --

Q. Will that factor in to your decision or affect how you -- you come to your conclusion on these cases, the fact that the defendant is a minority?

A. No.

Q. Okay. Do you think it should?

A. No. I mean, it -- the law is the law --

Q. Okay.

A. -- so...

Q. Okay. And you're confident that that has not factored in to our decision to seek the death penalty here, or are you still a little suspicious?

A. Well, I mean, I'm going to say no because I don't know anything coming into it.

Q. Okay.

A. I mean, I -- I -- I don't think so.

Q. All right.

A. But, I --

Q. You think it still happens, though?

A. I would say probably a lot less than -- than, you know, a -- some people would think, but --

Q. Sure. Sure.

122

A. -- I think everybody has a little bit of, you know, just the way their mind works.

Q. Okay.

A. It doesn't necessarily need to be something overt, but --

Q. Yeah. Yeah. Okay. And as you said, in all fairness, you're not down here every day looking at the cases that we select to seek the death penalty on --

A. Right.

Q. -- and so you're not involved in our thought process on whether we should or shouldn't do it. You've also talked about the system being imperfect because it is a system of -- of men and women. It is a system of people. And people are fallible and people are imperfect.

A. Right.

Q. And we have seen from the Innocence Project from these cases that we're reviewing now from 20, 30 years ago that those individuals were convicted on the testimony of people, and that those were people who found that there was evidence beyond a reasonable doubt to find them guilty, correct?

A. Uh-huh.

Q. And now we see that that may not be the case.

A. Right.

123

Q. They might not have been guilty. Cases will always be decided by people. You know that, don't you?

A. Yes.

Q. We don't feed facts into a computer and -- and get a verdict spit out. We always decide that on -- we always have people decide cases. So having said that, do you always -- wouldn't there always be room, then, for error?

A. Oh, I do believe there's always going to be -- there's always going to be error.

Q. Uh-huh.

A. I don't know that going into the courtroom, you want to think that way, but, I mean, there's a -- there's the truth there --

Q. Yeah.

A. -- that I wouldn't argue with.

Q. And as long as men and women are deciding cases, there is always the possibility of convicting an innocent man, is there not?

A. Yes.

Q. Are you comfortable being a part of something like that where such a huge error could be made?

A. Comfortable. I don't know that I'd use the word comfortable. I mean, I -- I guess I could -- I could deal with that. There -- I think that afterwards there

124

would always be -- I think there would always be, you know, questioning --

Q. Uh-huh.

A. -- if I thought better or, you know, again. But to me, I always -- I'm very introspective when it comes to decisions I make anyway.

Q. Uh-huh. Uh-huh.

A. So I guess I don't want to say comfortable because I'm not going to be just like, oh, okay.

Q. Uh-huh. Uh-huh.

A. But I'm not going to -- at the same time, it's not something that would, you know, drive me insane to have to do that.

Q. Right. Right. And I guess what I'm -- what I'm trying to feel you out about is, you know, how much of that skepticism or that knowledge that there's always room for error would -- would play into how you look at the evidence or ultimately reach your verdict?

A. I would say probably, yeah, I am -- I am naturally pretty skeptical, so I would say the case -- I would probably be looking at things more in a total than individual because I think, you know, people can say silly things at one time that doesn't necessarily invalidate everything they've ever said.

Q. Right.

125

A.   I would say -- in total, I would have no problem coming up with something. I would say individually, I'd just have to see everything in context.

Q.   Gotcha.

A.   But I do -- can be skeptical of motives and things like that.

Q.   Okay. Okay. Are you a big-picture kind of person?

A.   Yes.

Q.   You're also into accounting and finance, and I know that the devil's always in the details, right?

A.   Which is the opposite, yes.

Q.   Where you could -- you could turn a corporation on its head by one point off, couldn't you?

A.   Uh-huh.

Q.   Okay.

A.   If you do it enough times.

Q.   Sure. And, I mean, so are you -- are you a big-picture kind of guy or are you going to focus on a small piece? What are you more inclined to do there?

A.   Well, at work, I'm -- I'm inclined -- I -- I know how to hunt for details. I can do that. I'm big picture in the sense that as much as small details are great and they tell you -- they can flag and tell you that something's wrong, that's generally not the story.

126

The details are not the story. The story is everything together.

Q.   Uh-huh. Let's say -- let's say I have two kids. I've got a boy and a girl that are both the same age, and they are just incorrigible. And I bake a cake for the -- for the Sunday church bakery.

A.   Uh-huh.

Q.   And I put it on the counter, and I say, don't anybody touch this cake. All right? This is for the Sunday bake-off. It's not for you.

I go out to the store to run some errands and I come home and I look and there's a big old chunk of cake gone.

A.   Okay.

Q.   A big chunk right out of the cake. And I call these two into my kitchen and I say, there's a piece of cake missing here. Who did this? And they both go, it wasn't me.

A.   Right.

Q.   But I've got one with some crumbs on her mouth. Okay? A little bit of crumbs on her mouth. And I say, you've got crumbs on your mouth, are you sure it wasn't you? It wasn't me. He put the crumbs on my mouth and he's setting me up for this. I never touched that cake. How confident are you that my daughter's the one that ate

127

that cake?

A.   I'd say pretty close to a hundred percent.

Q.   Okay.

A.   Or -- or maybe, maybe didn't take the cake, maybe, but at least got part of it, so...

Q.   Got part of it?

A.   Yeah.

Q.   What about the fact that she might have been set up?

A.   That would be impressive for kids, but, I mean...

Q.   You don't have any kids, do you?

A.   I suppose it's possible, but in -- yeah, in that -- yeah, in that context, though, I'd find it extremely unlikely.

Q.   Okay. So your -- your mind doesn't immediately go to, well, maybe she didn't, maybe somebody snuck over and is setting her up?

A.   No, not -- not if the -- not if it's sitting right there.

Q.   Sure. Sure. Okay. Okay. All right. And with respect to the death penalty, like you said, you're not -- you're not for it. If you had your -- your druthers, if you were governor for a day, would you abolish the death penalty?

128

A.   No. I'd probably do more research. I don't know that I -- you know, my feelings on the death penalty right now are very rough. I don't -- I haven't given it a whole lot of thought. It's just a general feeling I have about it.

Q.   Do you think there's still a --

A.   I would -- I would like to look at it and see if there were more effective ways of dealing with things --

Q.   Uh-huh.

A.   -- but I don't know that I could immediately say, well, that's going to be the best thing for everybody is for me to just get rid of it.

Q.   Yeah. Because I'll tell you in very general terms, Mr. Jackson, when you say better ways for dealing with it, ultimately what happens is if a person is found guilty of capital murder, there's one of two punishments that they can get. They can get life in prison without parole or they can receive a sentence of death. And life in prison without parole means just that. Okay?

A.   Right.

Q.   And, granted, I'm speaking very generally now to you. But if a person is assessed the death penalty, then they are put in a section -- a separate section of the penitentiary. You might have heard it referred to as death row.

129

A. Right.

Q. And they will wait there until the date of their execution and pretty much in isolation of other persons. Anybody else who is not on death row, there will -- there will be a classification, what kinds of crimes they committed and such as that, but for the most part, they're in amongst what we call the general population.

A. Uh-huh.

Q. Okay? And as you may be aware of, in the Texas penitentiary, there are people that are serving all kinds of crimes, time for everything from first-degree murder all the way down to stealing a brand-new Cadillac, you know, from aggravated robbery, putting a gun to somebody's head and stealing their wallet all the way down to the guy who's had his third DWI. Okay? Everybody's in there amongst each other, so there are people in there for property crimes and there are people who are in there because they are just mean motor scooters, pretty dangerous, they've done dangerous things --

A. Right.

Q. -- at least. I don't -- I think it's fair to say that prison isn't a great place to live. I wouldn't like it. Okay? I wouldn't like it. And -- and outside of not having the freedom to do what I want and walk

130

around my backyard, I wouldn't like having to live amongst all these other people out there. Might not get along too well with them. Okay? But, nevertheless, I did what I did and I'm in prison. I'm sure -- have you heard that prison can be rough, it can be violent and dangerous?

A. Oh, yes. Yeah.

Q. What do you think about that?

A. The fact that -- well, I mean, I -- I'm not particularly fond of the things I've heard about prison. Again, it comes back to things that I don't spend -- I haven't spent a whole lot of time --

Q. Sure.

A. -- thinking about. It's not anywhere in anything that I can directly affect, which is probably why I don't think about it.

Q. Is the fact that I committed a crime bad enough that I have to go to prison, that I may be subject to a little bit of violence there or some assaultive behavior from one of the other people in general population, isn't that just part of -- of doing time?

A. Well, I don't think violence against yourself is really -- I mean, no. I mean, I don't think that's part of it. I think that's just the way the system is.

Q. Do you think that if I'm in there serving time

131

for a DWI, do I have a right to be safe?

A. I would say from a society standpoint, I'd rather that you were safe because I don't want you coming out from a DWI even more screwed up than when you went in.

Q. What if I'm serving life in prison, do I have a right to be safe and not injured or harmed by other inmates?

A. I believe all human beings have rights. I don't know that just because they have committed a crime that they are -- they are just -- you know, free, you know --

Q. Fodder for --

A. They're -- they're not -- they're not targets because --

Q. Right. They shouldn't be fodder for the prey.

A. Right.

Q. We -- we've called upon them to do time in prison and time only. And we don't say that part of that means that you -- people can pick on you and beat you up or steal your stuff. Okay?

A. Right.

Q. Okay. So those people deserve a right to be safe?

A. Yes.

Q. Okay. Do you think that that's a protection

132

that we should -- should look at, take into consideration?

A. In the courtroom?

Q. The safety -- the safety of the other inmates in prison.

A. I mean, as an actual initiative in Texas, probably. I would definitely think that would be something we should look at.

Q. In a death penalty case, Mr. Jackson, what we're looking at is, as I said, if the person is guilty of capital murder, they will either serve life in prison without parole, and that means no parole.

A. Right.

Q. It's not a wink and a nod. Or they will be given the death sentence. And the question doesn't become for you as a juror, let me go back and see, do I think he should get life? Do I think he should get death? It's actually a process of answering questions.

A. Right.

Q. And based on the answer to the question will determine life versus death. That first question that we had you look at was what we refer to as the future dangerousness issue, and it speaks to that situation where we -- we ask you, do you think more likely than not this particular defendant, if he's given a life sentence,

133

which he's got a life sentence --

A. Right.

Q. -- do you think more likely than not while he's there in prison that he's going to commit criminal acts of violence to the people within his society?

A. Uh-huh.

Q. Okay? So we're speaking to that, you know, do you think that he's going to hurt anybody, or whatever you think a crime of violence is. And it's not just other inmates in the prison, is it?

A. No. Guards, people who are -- I mean, I guess, just -- I don't know too much about it. I mean, I'm sure there's just probably clerical and service people.

Q. Well, I'll tell you, there's teachers --

A. Yeah.

Q. -- that come in there. There's doctors and nurses. Dentists come in there. There's clergy that comes in there. There are -- there are visitors that come in there, people who come to see their -- their family. So we're not speaking to just, you know, is he a danger to other inmates, but also could he be a danger to the other people in the society.

And that's the question you have to ask yourself, because if you believe he is, that more likely than not he'll commit criminal acts of violence towards

134

the other people in that society, then that answer would be yes, and it moves him closer --

A. Right.

Q. -- to the death penalty. Do you understand that?

A. Yes.

Q. Do you think that's a fair consideration?

A. Yes.

Q. Okay. That you understand we're not asking you maybe necessarily to assess the death sentence because of what he's done but because of what he potentially may do?

A. Right.

Q. How violent do you think a person would potentially have to be before you think that that question should be yes and he should be closer to that death sentence?

A. I'd be kind of curious as to is the violence more of an innate thing or a situational thing. If it seems to be a pattern of they're violent no matter what their situation, they reach for it very quickly, then I would probably start answering. If I start thinking there's a violence -- and there's a contextual basis for that violence, and there always seems -- I guess there's always a contextual basis, but I guess I would say which do I think is more dominant there, there's the person or

135

there's the environment. And if I'm starting to think it's the person and not the environment, then I would be more inclined to answer yes to that question.

Q. I see. I see. Do you think people are just inherently bad?

A. Inherently bad, no. But I think everybody has their own individual, I guess, psychological makeup.

Q. Uh-huh.

A. And that doesn't -- again, that doesn't necessarily mean you're going to be bad. It may just mean, you know, if you're not bad, you're probably a stronger person than a lot of people because you don't, you know, you -- you may have that quick fuse anyway.

Q. Uh-huh.

A. And, of course, if you know that, then, you know, you're never going to be violent anyway. You're probably going to be a lot less violent than a lot of people --

Q. Uh-huh.

A. -- who don't have that problem.

Q. Right.

A. I think it's -- it's just a question of the person in total. I think psychologically, it's a big thing, but it's also a lot of self-awareness.

Q. Yeah. Let me ask you a little bit about this

136

because some people may say that, well, you know, he's bad because he had it rough as a child, or he's -- he's bad because he was from a single parent or he was -- I mean, how much of this plays into -- how much of this is just excuse making versus actually being a legitimate reason for who they are and what they are?

A. I don't know. I mean, causes are never excuses. I mean, it's -- I don't know if I knew all this information that that would be -- I don't consider that an excuse. I mean, it may be a cause. If I'm being asked -- you know, I guess the questions you're asking me, I may -- how would -- how will I say this? So far, the questions I'm being asked, I would not think that that would play into it. I mean, that it's unfortunate that people have that life, but I don't know that the law really changes because I had a bad childhood, or if it does, maybe I just have to be more familiar with it.

Q. Do you think it would be -- for example, do you think it would be because I was raised by a single parent, that's what made me violent?

A. I'd need more than that. I was raised by a single parent, so, I mean, I'd need -- I'd need a big picture again --

Q. Sure.

A. -- and details.

137

Q. Do you think that that would be enough to make a person violent?

A. Well, if you just mean like a small -- something like that?

Q. Yeah.

A. No.

Q. Okay. Do you think that a person not having finished their education would make them violent?

A. No.

Q. Do you think that a person who was on -- let me see here. I guess I'm asking you, maybe, what makes you violent? Is there one thing that makes you violent or is it more of a --

A. I think it's --

Q. -- choice to be violent?

A. I think it's -- I think it's -- it's a reaction to the situation. I mean, I think we all have our predispositions. Some of us are naturally a little more aggressive than others.

Q. Uh-huh.

A. There's self-control and then there's -- you could be in a very bad situation.

Q. Yeah.

A. You know, there are some people who will be in the worst situation in the world and still won't do

138

anything we would consider morally bad. They would rather -- they would rather take the bad consequence of not doing something bad.

Q. Sure. If a person is violent in the free world --

A. Uh-huh.

Q. -- you know, the world in which you and I live, if a person is violent in the free world, where, you know, you have a lot of options, you have a lot of places to go, there's -- you know what I'm saying? There's a lot of things you can do out here in the free world.

A. Right.

Q. We're confronted with a lot of things, and you have a lot of choices --

A. Right.

Q. -- in the free world. Well, if a person is violent in the free world where there's choices, how do you think that would equate them into whether or not they would be violent in the prison where they don't have a lot of choices?

A. That would be trickier. I would -- I guess I would want to know what were the -- in that case, it would be the context of what happened in the free world. If it was -- you know, if it was just a fight, you know, that's -- I mean, that -- that -- that can happen in

139

prison, as controlled as it is.

Q. Uh-huh. Does that make it right?

A. No.

Q. No?

A. I'm just -- in the --

Q. I gotcha.

A. Yeah, in the context of that question. I -- again, I think I would just probably have to just kind of see the context of all of it.

Q. Uh-huh. Do you have any particular scenario in mind where you think the death penalty would be an appropriate verdict?

A. I do believe if we start looking at the environment of -- of the defendant, and I start seeing just not -- I mean, not a few things. I mean, I don't mean like he's a single -- you know, a mother. I don't see lack of education. But I start seeing one thing after another, then I start -- there is a part of me that thinks this was a bad situation to begin with, and only the best people in the world would come out okay. If I start believing that the deck was so stacked, that this may have been close to inevitable, I may veer away from the death penalty. Because, again, I guess, I think if you could do what -- in life imprisonment, is there the ability to get counseling?

140

Q. I suppose.

A. Supposedly?

Q. You can't force anybody.

A. No, you can't force it. But I guess what I'm saying is if I truly believe that it may be a normal human being in an impossible situation, then, yes, I'm -- that would be enough for me to say the death penalty doesn't need to be applied here.

Q. Uh-huh.

A. This is -- this was a deck-stacked situation.

Q. Sure.

A. You weren't going to come out of this a winner. It didn't matter.

Q. And I'll tell you, that's really what the Special Issue Number 3 goes to is where if you found somebody is guilty of capital murder, and keeping in mind that's the intentional taking of --

A. Right.

Q. -- a life while in the course of committing another felony offense. If you find that's true and they're guilty and you find that I believe it's more likely than not --

A. Uh-huh.

Q. -- he's going to be a future danger to the society in which he's in, then the defendant's looking at

**141**

a death penalty at that point. But that Special Issue Number 3 is I think what you're speaking to there about was he -- was the deck stacked against him where it just seemed so many things were maybe against him that it just seemed to be an inevitable outcome. And the Court asks you or the law asks you to look at that. They say, he's a future danger, he's a capital murderer, he'll kill somebody -- he's killed somebody, he meant to do it and he did it, and while he was doing it, he was robbing them at the same time. Well, we're going to let you look at all these other factors and decide if maybe it shouldn't be a death penalty, maybe there's so much mitigating against him and his circumstance and his background that it dictates that a life sentence is really the more appropriate thing to do. Is that kind of where you're going with that?

A. Yeah, that's basically what I'm saying.

Q. And you spoke to, you know, if it was just so stacked against him. What kind of things are you thinking of when you say just so stacked against him?

A. I do think -- again, while it's not things like -- I mean, it's not something generic like single mother, but absentee parents, no support system, if you're not financially -- I won't say well off, but I think that also goes to support. If there's almost no

**142**

support system in place, then it's very hard to stay level, to be -- to be centered if you have no -- no background for what's right and wrong, if that's not what you're taught, if you're just kind of left out on your own all the time and you're in, basically, the survival mode of, you know, not -- I mean, I guess it would be a world outside of what I'm used to, but --

Q. Sure.

A. -- I mean, where you basically -- you try to survive and that's all you do but that's all you've been taught and that's --

Q. Are you speaking to not having had a parent who sets a good example to you?

A. Part of it.

Q. Or not having a support system, if not maybe a parent, an -- an extended family?

A. Things are going wrong. You only have yourself to rely on, well, then, you know, I mean, well, then, you're going to do what you have to do.

Q. And you say do what you have to do. Well, you know, I don't have anybody who will give me the money and I don't have a job to make the money, but I'd really like to have a car --

A. Yeah. I mean, I -- I don't know -- see, and that's what I'm saying. I don't know that

**143**

environmentally speaking I would say, well, then, you know, shooting somebody is the way to go.

Q. Uh-huh.

A. But, again, it's not a situation I've ever been in, so I don't -- I mean, that -- that would seem a little petty, but...

Q. Yeah. And I guess that's what I'm looking for, and I'm not trying to pin you down --

A. No.

Q. -- but when you say, you know, this deck is stacked and there's just no other options, are you thinking about a guy who just had to feed his family or something?

A. That's more what I'm thinking. I'm thinking about that there's an actual need, not a want.

Q. I gotcha.

A. I mean, to me, a car is a want, but...

Q. Okay. There are necessities --

A. Well, I -- I guess in Dallas, actually, a car is not a want, but --

Q. Yeah.

A. -- yeah, but...

Q. There's the bus system, I guess.

A. Yeah.

Q. We -- we can't all -- I don't know a lot about

**144**

you, but not everybody's raised with a silver spoon in their mouth, right? I mean, sometimes -- I'm sure, I have no doubt you're working hard to get where you're going, right?

A. Right.

Q. Nobody's giving you anything, are they?

A. No.

Q. Okay. Okay. That was just --

A. But I was going to say, that said, I mean, I have no doubt the number of things I was given as a child and maybe even early 20s to -- to, you know, kind of ground myself.

Q. Sure. You had a -- it sounds like -- you say you were raised by a single parent. This was your mother?

A. Who eventually remarried and --

Q. All right.

A. -- but she -- and -- but, yeah, I mean, I -- I'm -- I'm very blessed with what I have now and I don't forget that that --

Q. Sure.

A. -- is a very different situation than a lot of other people have.

Q. I take it she was a hardworking woman?

A. Yes.

145

Q. Okay. She was there to help you out if you needed it?

A. Uh-huh.

Q. Okay.

A. Although she was kind of a -- I mean, she was a worker, so, you know, she was -- I don't know that she was emotionally there for me all the time, but, you know, she did what she had to do.

Q. And yet you turned out okay?

A. Well, I hope.

Q. That is yet to be seen?

A. Yeah, I mean...

Q. Okay. Okay. Let's see here.

THE COURT: When did we -- when did we start?

MS. HANDLEY: I don't know.

MR. HIKEL: 11:06.

THE COURT: 11:06. Okay.

MS. HANDLEY: Really? What time is it now? How much time do I have?

THE COURT: You've got about --

MR. HIKEL: Nine, ten minutes.

THE COURT: Yeah. Yeah.

Q. (BY MS. HANDLEY) I guess what I want to know from you, bottom line, Mr. Jackson, because I'll tell

146

you, in all fairness, I'm reading your questionnaire and I'm thinking, I don't think this guy would ever really give the death penalty. Is that fair for me to think that?

A. Well, no, if you asked, I mean, if I'm in the context of this trial --

Q. Uh-huh.

A. -- and that's what it tells -- and that's what the law says I need to do --

Q. Uh-huh.

A. -- I -- I mean, there's another question in there, and I think I wrote it, because it was the best way I could think to say it, was my feelings on the death penalty don't go into the courtroom. They're -- they are for my dealings with the legislator -- legislature.

Q. Okay.

A. I'm -- if I'm in a courtroom, I'm there to do a job the way I'm told how to do it.

Q. I see. I see. And in terms of you saying that maybe someday it will be -- it may become irrelevant, is that in the hopes that maybe we won't have people killing each other in a capital murder --

A. I think that it --

Q. -- circumstance or --

A. -- I think there -- yeah, there's probably some

147

out -- I mean, there's probably some societal factors in there that if they were ever -- you know, maybe you wouldn't have to -- you wouldn't have to deal with it.

Q. God willing, huh?

A. Or at least not to this level. I mean, I don't -- I think there's always going to be people. I mean, I don't think there's going to be a utopia where it disappears, but...

Q. Okay. Okay. Yeah. It would be nice --

A. Yeah.

Q. -- if we didn't have a necessity for it, wouldn't it?

A. But, yeah, I tend to think in terms of things slowly going away.

Q. Sure. Your comment about -- about the death penalty being a tool of revenge for the victim's family, expand on that a little bit for me there.

A. I -- a lot of times when I have these discussions, and I'm just going to take it -- a lot of times, that's the feedback I get is, well, then, where is the justice for the family, that if the defendant doesn't die, then there's no justice.

Q. Uh-huh.

A. When I -- I put it in the ugliest terms I can because that's what I think is -- in some aspects, there

148

are some people that, quite frankly, they're not allowed to do it themselves, and so they would rather have the system do it --

Q. Uh-huh.

A. -- because they can't see justice in any other way.

Q. Uh-huh. Do --

A. So when I say revenge, I don't mean -- yeah, that's exactly what I mean. I mean, they're not -- they're not interested in justice. It's just justice in this particular case allows them to have it.

Q. Do you think there's anything wrong with that, that if somebody murdered my brother just because they wanted his car, shot him in the head just to take his -- or just to take, you know, five bucks out of his pocket, is there anything wrong with me saying I think that person should be dead too?

A. I think that's human. I don't know that there's moralistically anything wrong with that. I think -- but I do think when you start making judgment calls like that, when you start saying that someone deserves to die, you have pretty much removed all of your ground standing between you and the person who's already committed the crime.

Q. Uh-huh. And I'll tell you that we don't have

you base a decision strictly on what the family says --

A. Right.

Q. -- or their opinions, necessarily. I mean, there are certain things you have to go through in the law in order to get to that --

A. Uh-huh.

Q. -- to that place. Would you take that person's thoughts into consideration, that family?

A. I would say I would take it into consideration, but they would actually be somewhat far down on my list. I would be more concerned about the facts surrounding the crime and --

Q. If -- if it was a defendant's mother up there crying and saying, don't kill my boy, and then it was a victim's mother over there crying saying, he killed my boy, he should die too, which side do you lean towards?

A. This is going to sound -- well, this is cynical, but I'm going to say I would probably not be too -- I would not probably give either side -- I mean, both sides are too close.

Q. Uh-huh.

A. I mean, I guess, emotionally I would feel for them.

Q. Uh-huh.

A. But in the context of what I'm doing, I mean, I don't know -- well, I'm sure there are mothers who wouldn't come out there and cry for their child on either side. I mean, I'm sure those people do exist, but I would expect an emotional outpouring from both sides --

Q. Yeah.

A. -- and, you know, telling me what was great about the person who is now deceased and what is great about the person who is now up on trial, so...

Q. Do you think that's important, though, that you look at the particular defendant, who he was, what contributions he may or may not have made in society versus the person who he killed and what contributions they may have made and not made in society; or do you think we all run around on an equal basis out here?

A. Oh, yeah, I mean, as far as I'm concerned, you know, what you've done in your life doesn't -- I mean, it's like anything else. Well, I don't want to bring it back to numbers, but I'm going to say what you did in the past doesn't necessarily mean what you're going to do in the future and vice versa, so --

Q. I guess --

A. -- I don't -- I don't -- I guess I don't make value judgments on human beings. I don't say one is more important than the other because I'm not God and I don't know.

Q. I'm going to ask you a parlor trick kind of question.

A. Sure.

Q. This is just one of those, what would you do if, you know. A person -- a person's going to be killed. Okay?

A. Okay.

Q. Somebody's going to die, and no getting around that. And you have your choice, Mr. Jackson --

A. Okay.

Q. -- of who's going to die. It's going to be the guy who's slinging the dope on the corner or it's going to be the guy who -- who's never committed an offense in his life and just gets up at 5:00 every day and goes to work, a good working Joe. Which one dies?

A. Well, in that parlor trick where I can't get out of it, then the dope dealer dies.

Q. Okay.

A. But, I mean, that's, yeah. I mean, as simplified as that is --

Q. Yeah.

A. -- there's no out, so...

Q. Right. And even then, nevertheless, you do have to kind of make a decision based on --

A. You -- yeah. I mean, you can go with past. I mean, if somebody has to die, I mean, I suppose that is a valid criteria. I don't have anything else to judge with.

Q. If I show you in this case, Mr. Jackson, beyond a reasonable doubt that the defendant in this case did intentionally take the life of a -- of a person in the course of robbing him, would you return a verdict of guilty of capital murder?

A. Yes.

Q. If I prove to you beyond a reasonable doubt that it's more likely than not that this defendant will commit criminal acts of violence while he's in the penitentiary, will you answer that question yes?

A. Yes.

Q. Okay. And knowing that that would result in the death penalty, you are able and willing to do that?

A. Yes.

Q. Okay. And if I do that and then you go on to Special Issue Number 3, if you, after looking at all the evidence in the case don't believe that there is a sufficient mitigating circumstance to overturn that verdict, will you still stand behind that death penalty knowing somebody's going to die?

A. Yes.

Q. Thank you. I have no further questions. Thank

153

you, Mr. Jackson.

THE COURT: All right. Thank you.

Mr. Lollar, are you going to be the one or Mr. Parks?

MS. MALLON: I'm going to be the one.

THE COURT: Oh, Ms. Mallon. Excuse me. I'm sorry. Ms. Mallon, you may proceed.

MS. MALLON: Thank you, Judge.

THE COURT: Oh, let me ask you, first of all, do you need to take a short recess? Are you okay? Do you want to get a drink of water?

VENIREPERSON JACKSON: Water would be good.

THE COURT: Okay. Why don't we take about a five-minute recess then, and let him kind of relax a minute and get a cup of water, and my bailiff will assist you with that, whatever you need to do.

(Recess, 11:44-11:49.)

(Open court, defendant present.)

(Venireperson Jackson enters courtroom.)

THE COURT: Yes, sir. Come on in and just go ahead and have a seat there again.

Thank you, ladies and gentlemen. Be seated.

MR. LOLLAR: He had to buy his water?

VENIREPERSON JACKSON: Yeah.

154

THE COURT: We were talking about the water fountains being out of -- out of whack.

VENIREPERSON JACKSON: Seemed like a bit of a cruel joke. I got out there and said, why would they do this to me?

THE COURT: All right. Ms. Mallon, you may proceed.

MS. MALLON: Thank you, Judge.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MS. MALLON:

Q. Hello, Mr. Jackson.

A. Hello.

Q. How are you doing?

A. Doing all right.

Q. These are some interesting questions, huh?

A. Yeah. Yeah.

Q. I have to say, though, you seem very, very smart, and you have a really good grasp of everything, so I don't think this is going to take me -- take me very long.

A. Okay.

Q. Famous last words from a lawyer.

A. Yeah.

Q. But I will try my best. One thing that you said, I think you said, my feelings on the death penalty

155

don't go into the courtroom. Is that what you said?

A. Yes.

Q. I want to tell you, being opposed to the death penalty does not disqualify you from being a potential juror.

A. Right.

Q. Okay? So I just wanted to make sure you understand that. And I do have a couple questions about your questionnaire.

A. Sure.

Q. Okay. On page 7, and this is just because I'm more curious than anything. When you're talking about defense lawyers --

A. Uh-huh.

Q. -- sometimes wasting the best defenses on those who need it the least.

A. Oh, okay. Where are we going with this?

Q. Oh, I'm sorry. On the --

A. No. No. No. I -- no, I heard the question. It was just I was trying to look for it, so, oh, here it is. Go ahead.

Q. What did you mean by that? I'm just curious.

A. No. Actually, I do need to read it.

Q. It's about the top of the page, What is the first thing that comes to mind when you think of the

156

following: police officers, prosecutors, defense lawyers, private investigators.

A. Oh. Oh.

Q. Do you see where I'm at?

A. That -- that's more of a -- I was going to say, that's more of a public -- you know, when you talk about the really high-powered defense lawyers. I'm not really talking about the rank and file. I'm talking, you know, when you get the huge cases that are out there, and there's -- well, again, whatever goes in the courtroom, a lot of times you don't see, but there may be a question as to, you know, would -- was there someone who actually did have a case that would have been better served by -- in a defense of that quality than -- rather than somebody who really did and just happened to have the money.

Q. I gotcha.

A. I mean, it's not -- you know, that's just -- that's the world, so...

Q. Sure. I understand. I was just curious what that meant.

A. Uh-huh.

Q. As you can imagine, we get all kinds of answers --

A. Sure.

Q. -- to that particular question. Okay. Another

157

thing I wanted to make sure that I expressed to you, you know, this is the only chance that we get to talk to you --

A. Sure.

Q. -- before we're actually in the trial. So even though we're going to be talking about punishment in these special issues, I don't want you to take that in any way, shape, or form that we're conceding guilt, that we think Mr. Broadnax --

A. Right.

Q. -- is guilty. Okay? It's just we have to talk about these right now.

A. Uh-huh.

Q. Okay? And you understand the generic terms, and I don't mean to say generic in that they're not important, but proof beyond a reasonable doubt.

A. Yes.

Q. And that as Mr. Broadnax sits here right now, he's innocent, the presumption of innocence, right?

A. Right.

Q. And you don't expect us to prove anything to you, do you --

A. Correct.

Q. -- as the Defense? Okay. The burden is always with these people right here, right?

158

A. Right.

Q. Okay. With that said, I'm just going to go ahead and move on to the special issues and talk a little bit about the law --

A. Okay.

Q. -- and how it applies to these issues. So if we get to these special issues, a jury has already determined that a person is guilty of capital murder. Okay?

A. Correct.

Q. So what that means is that they intentionally took another life, and in this case, you know, in the course of a robbery.

A. Right.

Q. Okay? So you've gotten there. 12 of you have determined beyond a reasonable doubt that this person is a -- is a guilty capital murderer, right?

A. Uh-huh.

Q. So then you get to Special Issue Number 1, and I think you have it written in front of you there and you also have it on the board there. And will you just read over that again with me because I don't think you actually -- you should have it in front of you.

A. This one?

Q. Yeah. Just Special Issue Number 1.

159

A. I've got it. Okay.

Q. Okay. And, you know, we call this the future dangerousness issue. And I'm just kind of curious, what -- what would you want to see, what kind of evidence would you want to see, if you can tell me, that would convince you a person is a future danger?

A. The facts I would want to see would be a history that is kind of functioning independent of their environment.

Q. Okay.

A. It doesn't seem to matter what situation they're in, the pattern is still there. That -- that's pretty much what I would want to see.

Q. Okay. Their history as in a criminal or violent history?

A. More a violent history than a criminal history because, I mean, criminal could be, you know, something just -- he stole something and that's -- I mean, it's not good, but it's not necessarily violent either.

Q. Okay. So would a lack of violent history matter to you as well?

A. Yes.

Q. Okay. And some jurors have told us that -- well, let me ask you this. It says, Do you find from the evidence beyond a reasonable doubt that there is a

160

probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society? When you hear probability, what does that mean to you?

A. Well, I think in terms of numbers, so, I mean, a probability would be something probably greater than -- well, that's tricky. But I -- I would say we're talking like between -- I mean, more than 30 percent at least.

Q. More than 30 percent?

A. Yeah. I mean, it's -- there's just -- there's got to be something in my mind that thinks, as the time goes on, we're just waiting for something to happen.

Q. Okay. We've heard the term more likely than not.

A. Right.

Q. Is that kind of --

A. That works. More likely than not.

Q. Okay. So you --

THE COURT: Can you see? Excuse me. I'm sorry.

VENIREPERSON JACKSON: Yeah.

Q. (BY MS. MALLON) Basically in assuming probability in constituting a continuing threat to society, can you see that you're having to make a prediction?

161

A. Yes.

Q. Okay. Of something that's going to happen in the future?

A. (Moving head up and down.)

Q. And do you also see how it says "acts"? So it's not one. They have to prove to you beyond a reasonable doubt that there's a probability that the defendant would commit criminal acts of violence. Okay?

A. Okay.

Q. Okay. Now, when you get to Special Issue Number 1, since the burden's on the prosecution, that means that the presumption is life.

A. Right.

Q. Life without parole. Does that make sense --

A. Yes.

Q. -- to you? Okay. That also presumes that the answer to Special Issue Number 1 is no, until they can prove otherwise.

A. Right.

Q. Okay? And what the legislature is trying to do here is make sure that the people that get sentenced to death are the worst of the worst. Does that make sense to you?

A. Yes.

Q. That these people cannot even be in the

162

penitentiary without hurting someone.

A. Okay.

Q. Okay. And do you agree with that?

A. Yes, that makes sense.

Q. Okay. Okay. That makes sense to you. Do you think you would have a difficulty in making a prediction like that?

A. Yeah. I mean, just based on the nature, I think I would have a difficulty. I mean, I could do it, but it wouldn't -- I mean, it wouldn't be something that I would, you know, in five seconds go, oh, sure, definitely.

Q. Okay.

A. I mean, unless something -- I mean, unless the evidence was so overwhelming. I'm assuming that because we're going to be in a trial, it's not going to be --

Q. Okay.

A. -- ridiculously lopsided.

Q. Okay. But you're not going to hold them to a higher burden than beyond a reasonable doubt, would you?

A. No.

Q. Okay. Okay. I think you just appreciate the nature of Special Issue Number 1.

A. Right.

Q. Okay. Okay. I'm going move on to Special Issue

163

Number 3. And if you'll read through that again with me.

A. Okay.

Q. Just -- you don't have to read it out loud.

A. Okay. Good.

Q. You have enough school at night. I won't make you read it out loud.

A. Thank you. Okay.

Q. Okay. So if you get to Special Issue Number 3, you have already found a person guilty of capital murder, so they intentionally committed a murder.

A. Right.

Q. Okay? And you have already determined that someone is going to be a future danger. Now, Special Issue Number 2, the reason I skipped over it is because it may or may not play a part in our -- in our case. Okay?

A. Okay.

Q. So I'm not even going to talk about it. But you've answered yes to Special Issue Number 1, and now you're at Special Issue Number 3. And only until 12 jurors find that there is not sufficient mitigation would a person receive the death penalty. Okay?

A. Okay.

Q. And that is each individual juror's personal

164

moral judgment that they make on that --

A. Right.

Q. -- that -- that issue. Okay? What's -- and I -- we talked -- you talked about mitigation with the prosecutor. And I'm trying to get a grasp on what you were saying because it sounded like -- and I may be wrong -- that when you kept saying, you know, the deck was stacked against him, it sounded to me like it has to be pretty -- it has to be something pretty extreme in order to be mitigation. Is that how you feel?

A. I don't know that it has to be extreme. It's just really hard for me to speak in general.

Q. Sure.

A. So, again, I'm kind of coming up with that because I really just don't know. It doesn't -- doesn't need to be -- well, I mean, no, I mean -- when I say stacked, I just basically mean that I'm seeing, when I -- when I look at a -- just a regular human being, I'm seeing that something like this was almost likely. I'm kind of -- I'm kind of making the assumption that this may be just a regular human being in a bad situation, and, you know, things worked out that way.

Q. Okay.

A. It's not -- I guess what I'm saying, my threshold is more in -- it's hard for me to kind of say

165

this would do it or this would do it. It's more do I feel that, me, personally confronted with the same issue, may be exactly this -- in this exact same situation or maybe not even me but just in general, you know, people that I know. I mean, I just -- that's what I kind of have to shoot for.

Q. Let me give you some examples, okay --

A. Okay.

Q. -- and hypotheticals. And these are things that jurors have said in the past.

A. Okay.

Q. In Texas, you cannot be executed unless you're over the age of 18. But some jurors have told us that, you know, a young person --

A. Uh-huh.

Q. -- you know, late teens, early 20s, the age of a person when they committed the crime may be mitigation to them. How do you feel about that?

A. I would say it would depend on how young. And, again, that's -- that's tricky because I think people mature at a different rate and I think, again, some people are exposed to other things at a much younger age.

Q. Okay.

A. So more context. I mean, I guess I would need more context. But I would say generally I would think

166

that would be a safe assumption that under 18 you probably wouldn't because you would assume they haven't seen enough or would be still making what we would consider still are mistakes because, you know, they're not -- they're not even fully formed yet --

Q. Right.

A. -- as people.

Q. All right. would you agree with me that 18-, 19-, 20-year-olds can still be pretty immature?

A. Oh, yeah.

Q. Okay.

A. Yeah.

Q. Okay. Other jurors have told us that if there's testimony from friends and family --

A. Uh-huh.

Q. -- that this particular act was completely out of character for them and they had never done anything like that in the past --

A. Uh-huh.

Q. -- what do you think about that? Would that matter to you?

A. Friends and family, I think it would matter. I think on both sides -- well, I mean, I think it would matter.

Q. Okay.

167

A. Again, if -- if there's -- but I would look in more totality. I mean, if they're not bringing anything else to the table that says, well, we can't find any other evidence of this, then, yeah, definitely, that's -- that would -- I mean, that's definitely a big -- that would be big for me.

Q. Okay. In a situation where there were two -- two individuals committing a crime --

A. Uh-huh.

Q. -- and one was the follower as opposed to the leader --

A. Uh-huh.

Q. -- what do you think about that?

A. I don't know that -- I guess if I felt that the follower was following because he feared for his own life, maybe that would play more into it; but just knowing that he was a follower really wouldn't be too big.

Q. Okay. What about -- well, in looking at Special Issue Number 3, the defendant's character and background, and I think we've already touched on this, how they were raised.

A. Uh-huh.

Q. And am I correct in saying that that is something you would consider, that --

168

A. I would -- I would think it would be important as far as knowing what -- yeah, I mean it would be important to me.

Q. And I think you hit it on the head when you said, you know, sometimes people aren't taught right from wrong.

A. Right.

Q. You know, they aren't taught what we were growing up, single parent or not, you know, and I think that -- I think that's true. And is that something you would consider?

A. I would consider it.

Q. Okay. And I -- one of my co-counsel here had said, you know, anybody -- you can make a dog bad, you know.

A. Uh-huh.

Q. And, unfortunately, you know, parents can make people bad. You know, they can make their kids bad. Do you agree with that?

A. Yes.

Q. Okay. Okay. What about abuse? Is that something you could consider, whether it's physical or sexual?

A. Yes, I would consider that.

Q. Okay. How about intoxication, voluntary

169

intoxication? Not as a defense, not --

A. Right.

Q. -- as an excuse, but just as mitigation for an offense?

A. You know, I actually asked myself that question on the way in here because I wasn't really sure how I would fall on it. And I don't know that I'm going to have a definitive answer now either. I guess part of me wants to say they knew what they were doing, but a lot of us -- I mean, there's a lot of people who get intoxicated that they never run into that situation. So if I were to be pushed on it, probably I would not find it that mitigating, maybe a little bit mitigating, but --

Q. Okay. Well --

A. Because the initial choice was still there, but it's -- it's, I guess, how intoxicated are we talking? Are they -- are they now doing things completely out of character? And if that -- if that answer is yes, then, yes, I would find that mitigating.

Q. So is it fair to say it's something you would consider?

A. I would consider it, yes.

Q. Okay. Okay. And in all these things, you know, what you find mitigating, I may not find mitigating, and Mr. Parks, you know, may feel something completely

170

different, you know. So this is -- the law says that this decision is based on your personal moral judgment, something very personal to you.

A. Right.

Q. Okay? And it's okay if all 12 of you disagree on what that is.

A. Right.

Q. Okay? The law also says that although you have to deliberate with the other 11 jurors, you don't have to justify your answer, you don't have to debate your answer, you don't have to list reasons why you believe either life without parole is the appropriate sentence or the death penalty is the appropriate sentence. Does that make sense to you?

A. Yes.

Q. Okay. And if you were back in the jury room on a capital murder case and you were down to Special Issue Number 3 and you had determined either way, let's say you were the one juror who felt the opposite of what the 11 other jurors felt, would you be able to withstand 11 other people yelling at you, telling you you're making the wrong decision?

A. Yes, because I have to live with myself the next day.

Q. Okay. And, you know, a personal moral judgment,

171

that's something so personal to us that it's to be respected, right? Do you agree with that?

A. Yeah.

Q. Okay. Okay. And if someone is demanding that you explain why you're making your decision, you know, the law says you do not have to -- you -- you don't even have to be able to articulate it to yourself. Okay? If you think life without parole is the appropriate answer, you don't have to articulate it to anybody else or even yourself. Does that make sense?

A. Yes.

Q. Okay. Because it's very personal. It's like, you know, we compare it to how you want to raise your kids or what church you're choosing or what religious belief you're choosing.

A. Uh-huh.

Q. Okay?

MS. HANDLEY: Excuse me, Ms. Mallon. Your Honor, I'll object only to the extent if there's an implication here that the juror doesn't have to actually deliberate with the other jurors about Special Issue Number 3. I do think that all jurors have to go back there and deliberate in a particular case. So if the suggestion is that you don't have to talk about it or -- or, you know, I would take issue with that.

172

MR. PARKS: Judge, there's nothing in the law that says that the juror has to do more than give careful consideration to his or her verdict. And that's what deliberation means, careful and consideration, careful consideration; not debate, not justify, or anything of the things the State would like to suggest it means.

THE COURT: Well, I think Special Issue Number 3 is pretty self-explanatory. It says, Do you find, taking into consideration all the evidence including circumstances of the offense, defendant's character, background. It kind of gives you a laundry list of things that you can consider, and then you make up your own mind individually. That's the way I understand Special Issue Number 3 is to be considered by each individual juror. Is that --

MR. PARKS: That's fine.

MS. MALLON: Okay. Thank you, Judge.

Q. (BY MS. MALLON) And I think I started that question by saying I'm not telling you, you don't deliberate. You do deliberate. You do deliberate. But what I'm telling you is you don't have to, and it goes the same -- you know, I wouldn't expect you to demand from any of the other 11 jurors, you know, to defend or debate their reasons for the decision they're making.

173

Does that make sense to you?

A. Yes.

Q. Okay. Okay. And it doesn't have to be the -- the terminology is sufficient mitigation. It can be one thing. It can be a hundred things. That decision is up to you. Does that make sense?

A. Yes.

Q. Okay. Because I may find one thing to be mitigating, but that may not be sufficient for Mr. Parks. He may need two or more. That's why it's each individual juror's own personal moral judgment. Does that make sense?

A. Yes.

Q. Okay. And this is a situation where on Special Issue Number 1, it takes all 12 of you to find beyond a reasonable doubt that he is going to be a future danger. Okay? And on Special Issue Number 3, it takes all 12 of you to find that there is not sufficient mitigation in order for the sentence to be a death penalty. Okay?

A. Okay.

Q. If one person on that jury says, yes, there is sufficient mitigation, I think life without parole is the appropriate sentence, then that's what's going to happen. Okay? Does that make sense?

A. Yes.

174

Q. Okay. Let me just look here and see if I have anything else. I think that's all I have. Thank you, Mr. Jackson.

A. Thank you.

THE COURT: All right. Thank you, Ms. Mallon.

All right. Would you please step out, Mr. Jackson, with my bailiff and let me confer with the attorneys. And then I'll bring you back --

VENIREPERSON JACKSON: Okay.

THE COURT: -- and have a result for you.

VENIREPERSON JACKSON: All right.

THE COURT: Yes, sir. Thank you.

(Venireperson Jackson exits the courtroom.)

THE COURT: Thank you. Be seated.

All right. Ms. Handley, does the State have a challenge for cause?

MS. HANDLEY: We do not.

THE COURT: And does the Defense have a challenge for cause?

MR. LOLLAR: We do not.

THE COURT: All right. Mr. Jackson, bring him back in if you would, please. Number 21.

THE BAILIFF: Mr. Jackson.

(Venireperson Jackson enters the courtroom.)

175

THE COURT: Go ahead and have a seat there, Mr. Jackson. Mr. Jackson, you have been selected as Prospective Juror Number 21, I guess.

VENIREPERSON JACKSON: Okay.

THE COURT: What we're doing right now, we're qualifying a panel of 48 to 50 people. And at which time then, once we get those 48 to 50 people qualified, then each side will have so many peremptory challenges or strikes --

VENIREPERSON JACKSON: Okay.

THE COURT: -- we call them. And the first 12 folks that aren't struck by -- by either side then comprise the jury.

VENIREPERSON JACKSON: Okay.

THE COURT: So now you have a very -- you know, when you came in here today, now you do have the possibility of being on this jury.

VENIREPERSON JACKSON: Okay.

THE COURT: And there's a couple of things I need to kind of make you aware of. We anticipate Judge Snipes will start the evidence in this case on August the 10th --

VENIREPERSON JACKSON: Okay.

THE COURT: -- which is a Monday, and I think this was already -- I think Ms. Handley might have

176

discussed this with you early on in her voir dire examination, but for the next two weeks, so that goes from August the 10th through the 21st. Of course there wouldn't be any court on Saturday or Sunday over the weekend, so it's just those 10 working days in those -- that two-week period that you would need to be available for jury service. You're going to find out whether or not you're on the jury, I'm going to say, in late July --

VENIREPERSON JACKSON: Okay.

THE COURT: -- you know, somewhere along -- I don't think any later than late July. They'll try to give you two or three weeks advance notice, but if you'll go ahead and pencil that -- those dates in on your calendar --

VENIREPERSON JACKSON: Okay.

THE COURT: -- and not -- and try not to be scheduling anything else so you would be available should you be on the jury. Okay?

VENIREPERSON JACKSON: Okay.

THE COURT: The other thing is, when you came in, you said you didn't remember anything about any pretrial publicity or anything about this case?

VENIREPERSON JACKSON: Correct.

THE COURT: Hadn't heard anything or read about it in the newspaper, heard about it on TV that you

177

recall, so --

VENIREPERSON JACKSON: Right.

THE COURT: -- I want to keep you exactly like that.

VENIREPERSON JACKSON: Okay.

THE COURT: I don't want you to go back in the archives of old newspapers articles and try to find out, you know, newspaper accounts about this particular -- or TV reports or anything like that.

VENIREPERSON JACKSON: Sure.

THE COURT: Also, in the future, from this point forward, should there be any pretrial publicity, newspaper accounts, TV reports, anything like that, then I'll ask you to refrain from either reading it in the -- about it in the newspaper, listening to it on TV or on the radio.

VENIREPERSON JACKSON: Okay.

THE COURT: All right? Okay.

Ms. Handley, anything further from the State?

MS. HANDLEY: Nothing further.

THE COURT: Anything further?

MR. LOLLAR: No, Your Honor.

THE COURT: Okay. Thank you very much, Mr. Jackson, and you will be notified. Thank you, sir.

178

VENIREPERSON JACKSON: Okay. Do I leave this stuff here?

THE COURT: Yes. Just leave that right there where it is. Thank you very much.

(Venireperson Jackson exits courtroom.)

THE COURT: Ladies and gentlemen, let's recess for lunch. Be back at 1:15.

(Recess, 12:12-1:19.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson Rendon enters courtroom.)

THE COURT: Come in, Ms. Rendon. How are you today?

VENIREPERSON RENDON: Fine. Thank you.

THE COURT: Just go ahead and have a seat right there, if you would, for me, please, ma'am.

Thank you, ladies and gentlemen. Be seated, please.

And, Heather, I'd like for the record to reflect this is Prospective Juror No. 522, Erlinda, is that correct, E-r-l-i-n-d-a?

VENIREPERSON RENDON: E-r.

THE COURT: Huh?

VENIREPERSON RENDON: E-r.

THE COURT: Yeah. E-r-l-i-i-n-d-a?

179

VENIREPERSON RENDON: Uh-huh.

THE COURT: Rendon, R-e-n-d-o-n, correct?

VENIREPERSON RENDON: Yes, sir.

THE COURT: Okay. Thank you for being here this afternoon, Ms. Rendon.

VENIREPERSON RENDON: You're welcome.

THE COURT: And so I'm going to go ahead and turn you over to the attorneys. And Ms. Elaine Evans will be the one talking to you for the State of Texas.

Ms. Evans, you may proceed.

MS. EVANS: Thank you, Your Honor.

ERLINDA RENDON,

Venireperson No. 522, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Good afternoon.

A. Good afternoon.

Q. Ms. Rendon, do you recall filling out the questionnaire whenever you were here in the group with the big panel?

A. Uh-huh.

Q. And I believe whenever you filled out the questionnaire, you circled regarding your feelings on the death penalty that you could never under any circumstance return a verdict which assessed the death penalty; is

180

that correct?

A. Yes, ma'am.

Q. And is that still how you feel today?

A. Yes.

Q. Okay. And that's because you think God is the only one that can take a life; is that fair to say?

A. Yes.

Q. Okay. Thank you.

THE COURT: Any questions?

MR. LOLLAR: We have no questions.

THE COURT: Okay. Thank you very much, Ms. Rendon. We appreciate your being here so much, and you're free to go.

VENIREPERSON RENDON: Thank you.

THE COURT: You're being excused. Thank you, ma'am.

(Venireperson Rendon exits courtroom.)

THE COURT: All right. Ms. Evans, does the State have a challenge for cause?

MS. EVANS: Your Honor, the State would challenge Juror No. 522, Ms. Rendon, in that she's not qualified to serve as a juror in this case.

THE COURT: Any objection to that, Mr. Lollar?

MR. PARKS: No, Your Honor.

181

THE COURT: Okay. State's challenge for cause on Prospective Juror 522, Erlinda Rendon, R-e-n-d-o-n, I guess, is granted.

Very good. Next one is --

MR. HIKEL: Schlueter.

THE COURT: -- Schlueter.

THE BAILIFF: Roger Schlueter.

THE COURT: Roger Schlueter. Okay. Are we ready for Mr. Schlueter?

MS. HANDLEY: Yes, Your Honor.

THE COURT: Okay. Bring him in.

THE BAILIFF: All rise for the juror.

(Venireperson Schlueter enters courtroom.)

THE COURT: Come in, Mr. Schlueter. How are you this afternoon?

VENIREPERSON SCHLUETER: Fine.

THE COURT: Good. Go ahead and have a seat right there, if you would, please, sir. I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, just up the road here. And I'm assisting Judge Snipes who is the Presiding Judge in this jury selection process.

So this is Prospective Juror No. 533, Roger Schlueter, S-c-h-l-u-e-t-e-r; is that correct?

VENIREPERSON SCHLUETER: That's correct.

182

THE COURT: All right. Very good. Thank you, Mr. Schlueter. I'm going to let the attorneys just begin talking with you at this time, and Ms. Elaine Evans will be the one that will be discussing certain parts of your --

VENIREPERSON SCHLUETER: Okay.

THE COURT: -- questionnaire. And I'll give that to you because --

VENIREPERSON SCHLUETER: Oh, okay.

THE COURT: -- it's probably been over a month since you've seen it.

VENIREPERSON SCHLUETER: Yeah.

THE COURT: She may have some questions for you concerning it.

VENIREPERSON SCHLUETER: Okay.

THE COURT: All right? Thank you.

Ms. Evans.

MS. EVANS: Thank you, Your Honor.

ROGER SCHLUETER,

Venireperson No. 533, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Good afternoon, Mr. Schlueter. I see from your questionnaire that you're a Jehovah's Witness; is that correct?

183

A. Yes. Yes, I am.

Q. And based on that religious belief, it appears that that would prevent you from putting something to death --

A. Yes, it will.

Q. -- is that correct?

A. That's correct.

Q. And is that still how you feel --

A. That's how I feel --

Q. -- today?

A. That's how I feel today.

Q. Okay. Thank you.

THE COURT: Any questions?

MR. LOLLAR: Sir, don't feel that your time has been wasted. We've got to bring everybody down --

VENIREPERSON SCHLUETER: Oh, okay.

MR. LOLLAR: -- no matter what they put down here. And it's just part of the process.

VENIREPERSON SCHLUETER: Okay.

MR. LOLLAR: Thank you.

VENIREPERSON SCHLUETER: Oh.

THE COURT: Yes, sir. Thank you, Mr. Schlueter. We appreciate your time very much.

VENIREPERSON SCHLUETER: Okay. Thank you.

THE COURT: Thank you, sir.

184

(Venireperson Schlueter exits courtroom.)

THE COURT: Thank you. Be seated.

Okay. Ms. Evans, does the State have a challenge for cause?

MS. EVANS: The State challenges Juror No. 533 in that his religious beliefs prevent him from sentencing someone to death.

MR. LOLLAR: We have no objections.

THE COURT: All right. Thank you. Prospective Juror No. 533, Roger Schlueter, the State's challenge for cause is granted, and Mr. Schlueter's excused from further jury service in this case. Okay. That takes care of that one.

And Ms. Rhodes, Alaina Rhodes, yes.

THE BAILIFF: All rise for the juror.

(Venireperson Rhodes enters courtroom.)

THE COURT: Come in, Ms. Rhodes. How are you this afternoon?

VENIREPERSON RHODES: Fine. Thank you.

THE COURT: Just go ahead and have a seat right there, if you would, please, ma'am. I'll get that out of your way. Thank you.

Thank you, ladies and gentlemen, be seated.

And, Heather, this is Prospective Juror No. 581, Alaina --

185

VENIREPERSON RHODES: Alaina (pronunciation).

THE COURT: Alaina?

VENIREPERSON RHODES: Yes.

THE COURT: Alaina Rhodes, R-h-o-d-e-s. Ms. Rhodes, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, just right up the road here.

VENIREPERSON RHODES: Okay. Nice to meet you.

THE COURT: And I'm assisting Judge Snipes in the jury selection process in this case.

VENIREPERSON RHODES: Okay.

THE COURT: That's why I'm here today instead of Judge Snipes. I think the lawyers have a few questions for you.

VENIREPERSON RHODES: Okay.

THE COURT: And I don't think this will take very long, but I'm going to give you your questionnaire that you filled out --

VENIREPERSON RHODES: Oh, okay.

THE COURT: -- over a month ago now, I imagine it was.

VENIREPERSON RHODES: Uh-huh.

THE COURT: And so they may have some questions concerning some of your answers and responses

186

to that. All right? Ms. Elaine Evans will be the one that will be talking to you today. Okay?

VENIREPERSON RHODES: Okay.

THE COURT: Ms. Evans.

MS. EVANS: Thank you, Your Honor.

ALAINA RHODES,
Venireperson No. 581, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE
BY MS. EVANS:

Q. Good afternoon, Ms. Rhodes.

A. Good afternoon.

Q. I've looked at your questionnaire, and it appears that regarding the death penalty, you say, I could not be responsible for taking someone's life even if they are responsible for taking someone else's life. Is that how you feel?

A. Yes, ma'am.

Q. Okay. And I see with regards to the death penalty, you circled number five on your questionnaire that says, I could never under any circumstances return a verdict which assessed the death penalty. Is that still how you feel today?

A. Yes, ma'am.

Q. Okay. Thank you.

THE COURT: Any questions?

187

MR. LOLLAR: Well, Ms. Rhodes, let me assure you, we apologize for taking your time, but your time has not been wasted. We have got to do this. We've got to bring everybody down --

VENIREPERSON RHODES: Yes.

MR. LOLLAR: -- and make sure that that is still their opinion.

VENIREPERSON RHODES: Uh-huh.

MR. LOLLAR: Under the law, a person such as yourself who doesn't believe in the death penalty at all cannot serve as a juror in this type of a case. Okay?

VENIREPERSON RHODES: (Moving head up and down.)

MR. LOLLAR: That doesn't sound fair, does it? But that's the law. Okay. Thank you, Ms. Rhodes. We appreciate it.

THE COURT: Yes. Thank you, Ms. Rhodes. And I am going to excuse you. Thank you very much. Appreciate it. Yes, ma'am. Thank you for your service.

VENIREPERSON RHODES: Have a good day.

THE COURT: Bye-bye.

(Venireperson Rhodes exits courtroom.)

THE COURT: Thank you. Be seated. And, Ms. Evans, does the State have a challenge for cause?

MS. EVANS: Yes, sir. The State would

188

challenge Juror No. 581. She could not under any circumstance return a verdict of death.

MR. LOLLAR: No objection.

THE COURT: Thank you. State's challenge for cause, Prospective Juror No. 581, Alaina Rhodes, is granted.

Okay. Then the last one we have, Matthew Boehme.

THE BAILIFF: All rise for the juror, Mr. Boehme.

(Venireperson Boehme enters courtroom.)

THE COURT: Okay. Mr. Boehme, come on in, if you would, please, sir. Just right here.

VENIREPERSON BOEHME: Fantastic.

THE COURT: Just -- just have a seat here. Thank you so much for being here this afternoon.

VENIREPERSON BOEHME: Certainly.

THE COURT: And, Heather, this is Prospective Juror No. 652, Matthew Boehme, B-o-e-h-m-e, correct?

VENIREPERSON BOEHME: Yes, sir.

THE COURT: Boehme. All right. Mr. Boehme, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas. And Judge Snipes, who's the Presiding Judge in this case, has asked me to assist him in the

189

jury selection process.

VENIREPERSON BOEHME: Yes, sir.

THE COURT: So that explains to you what I'm doing here today instead of Judge Snipes. He's upstairs in his courtroom taking care of the matters of the -- the daily matters of the court --

VENIREPERSON BOEHME: Yes, sir.

THE COURT: -- while I'm down here helping him out in this case. I don't think this will take very long. Here is your jury questionnaire that you filled out some -- a month ago or so.

VENIREPERSON BOEHME: Yes, sir.

THE COURT: Maybe over a month now. And I'm sure the attorneys will have some questions concerning some of your responses to this, and so I want you to have that available to you so you can --

VENIREPERSON BOEHME: Oh, yes, sir.

THE COURT: -- refer to it. And the prosecutor that's going to be talking to you is Ms. Elaine Evans.

And, Ms. Evans, you may proceed at this time.

MS. EVANS: Thank you, Your Honor.

MATTHEW BOEHME,
Venireperson No. 652, testified as follows:

190

VOIR DIRE EXAMINATION BY THE STATE
BY MS. EVANS:

Q. Good afternoon, Mr. Boehme.

A. Hello.

Q. All right. Looking at your questionnaire that you filled out --

A. Uh-huh.

Q. -- about a month ago regarding the death penalty, you circled number four?

A. Uh-huh.

Q. I believe that the death penalty is appropriate in some murder cases, but I could never return a verdict which assessed the death penalty.

A. Uh-huh.

Q. Is that still how you feel today?

A. I didn't really feel any of the answers quantified necessarily, so I kind of picked the closest one to it. I mean, I could return a verdict as such, but I wouldn't feel really great about it. I'd rather -- logically -- it's kind of a dichotomy of logic and emotion. I would like to keep someone alive logically just on the off chance that they can provide something for society; but emotionally, if a case is heinous enough, then I can pretty easily be swayed to a more emotional support of the death penalty.

191

Q. Okay. I understand that. And also looking at your questionnaire, it appears that you know and had heard quite a bit about this case?

A. Yes, ma'am.

Q. Is that correct?

A. Yes, ma'am.

Q. In fact, you say, this case is one that gave me quite an emotional reaction.

A. Uh-huh.

Q. Fair to say?

A. Uh-huh.

Q. Based on the information that you've heard about this case, do you feel that you've already contemplated the guilt or innocence of the individual charged?

A. Yeah, strongly tending toward judgment on it.

Q. Okay. And you believe --

A. That could be a media -- you know, the media influence over me, but --

Q. That's okay.

A. -- still, honestly speaking, yeah.

Q. You've already made up your mind?

A. Largely, I would say so.

Q. Thank you, sir.

A. Okay.

THE COURT: Mr. Lollar?

192

MR. LOLLAR: We don't have any questions. Thank you.

THE COURT: All right. Thank you, Mr. Boehme. We appreciate very much you being here with us today.

VENIREPERSON BOEHME: Thank you.

THE COURT: Thank you for your time.

(Venireperson Boehme exits courtroom.)

THE COURT: Okay. Ms. Evans, does the State have a challenge for cause?

MS. EVANS: Yes, Your Honor. The State would challenge Juror No. 652 on the basis that he's already formed an opinion as to the guilt of the defendant on trial.

MR. LOLLAR: No objection.

THE COURT: Okay. State's challenge for cause on Prospective Juror No. 652, Matthew Boehme, B-o-e-h-m-e, the challenge for cause is granted.

All right. Now, I think that does all of our -- now we're down to Ms. Gruenau.

THE BAILIFF: Gruenau.

THE COURT: Is that how you pronounce that? So are we ready for Ms. Gruenau?

MS. EVANS: Sure.

THE COURT: All right. Bring her in,

193

please.

THE BAILIFF: All rise for the juror.

(Venireperson Gruenau enters courtroom.)

THE COURT: Hi, Ms. Gruenau.

VENIREPERSON GRUENAU: Hi, how are you?

THE COURT: How are you doing?

VENIREPERSON GRUENAU: I'm good.

THE COURT: Just come in and have a seat there.

VENIREPERSON GRUENAU: Thank you.

THE COURT: Make yourself comfortable.

Thank you, ladies and gentlemen, be seated, please, and let the record reflect this is Prospective Juror No. 356, Laura Gruenau, G-r-u-e-n-a-u.

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: Is that correct?

VENIREPERSON GRUENAU: Correct.

THE COURT: Am I pronouncing it correctly?

VENIREPERSON GRUENAU: Gruenau.

THE COURT: Gruenau. All right. Ms. Gruenau, I am Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas.

VENIREPERSON GRUENAU: Nice to meet you.

THE COURT: And nice to meet you. Glad to have you here this afternoon. Thank you for your time.

194

Judge Snipes, who is the Presiding Judge in this particular case, has asked me to assist him in the jury selection process, so that explains to you what I'm doing here today instead of Judge Snipes who's upstairs in his courtroom taking care of the day-to-day matters of the court while I'm down here in the jury selection process --

VENIREPERSON GRUENAU: Okay.

THE COURT: -- in this case. So, anyway, and, consequently, that's why you're here today, too. You recall probably it's been over a month ago now --

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: -- what, 400, 500 folks met in central jury and Judge Snipes addressed the group at that time, as you recall, and you filled out your questionnaire --

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: -- at some point in time, and also at some point in the proceedings, Judge Snipes had everybody stand -- on the panel stand up, raise their right hand and he administered the oath of a prospective juror to the panel members. Do you recall that?

VENIREPERSON GRUENAU: Yes.

THE COURT: And were you one of the panel members that stood and took the oath at that time?

195

VENIREPERSON GRUENAU: Yes, correct.

THE COURT: All right. Very good. I'll just remind you that you're still under that oath. And what you've been sworn to do --

VENIREPERSON GRUENAU: Okay.

THE COURT: -- is to give truthful answers, but we know you'd do that anyway, and also to be responsive to each and every question that's asked to you by the attorneys. All right?

VENIREPERSON GRUENAU: Okay.

THE COURT: All right. Now, then, you -- let's see here. Let me -- you've read your little orientation guide, correct?

VENIREPERSON GRUENAU: Yes.

THE COURT: All right. That gives you kind of a little introduction to what the attorneys are going to be talking to you about this afternoon. Kind of the way this is going to happen is that the attorneys are going to tell you about the law in more detail than what you've read in your little orientation guide.

VENIREPERSON GRUENAU: Okay.

THE COURT: And then once you understand the law or the procedural aspects of the case or the special issues, then they're going to ask you questions about it, and it's -- all they're trying to do is get your

196

responses, your thoughts, your opinions --

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: -- and your ideas --

VENIREPERSON GRUENAU: Okay.

THE COURT: -- about the law, the procedural aspects or the special issues, whatever they're talking to you about. Okay? So I guess I'm telling you there's no right or wrong answers to any of these questions, just how you feel about it.

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: And this is not a test or anything like that, that you've got to pass in order to be on this jury --

VENIREPERSON GRUENAU: Okay.

THE COURT: -- or anything like that. So let me introduce the attorneys to you. This is Ms. Andrea Handley.

MS. HANDLEY: Hi.

THE COURT: And, Ms. Handley, are you going to be the one talking to her?

MS. HANDLEY: Yes, sir.

THE COURT: Okay. All right. And then seated next to her is Ms. Elaine Evans, and then next to Ms. Evans is Mr. Gordon Hikel.

VENIREPERSON GRUENAU: Hello.

197

THE COURT: And there's other -- one or two other members of the prosecution team. All these ladies and gentleman here are assistant district attorneys here in Dallas County, and they're a part of the prosecution team and charged with the responsibility of prosecuting this case.

And seated next to me down here is Mr. Brad Lollar, Mr. Doug Parks, and Ms. Keri Mallon. And they're the three attorneys that are the Defense team, and they represent Mr. James Broadnax on the very end down there who is the defendant in this case.

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: All right?

All right. Ms. Handley, we're ready for your voir dire.

MS. HANDLEY: Thank you, Your Honor, I appreciate it.

LAURA GRUENAU,

Venireperson No. 356, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. How are you doing today?

A. I'm fine. Thank you.

Q. Yeah. Good to be inside? I know you work outside most of the time, don't you?

198

A. I do, yes. Uh-huh.

Q. As the Judge said, my name is Andrea Handley. I'm an assistant district attorney, and myself and my colleagues, we're in charge of selecting the jury for this particular case. And what we're doing is calling down every person who showed up that day that you did. We're reading their questionnaires and we're bringing them in one at a time to talk to them. We get the opportunity, then, to talk to you a little bit, see how you feel about the law, see if you can follow the law, tell you how these cases work.

And if you're a qualified juror at this point, it doesn't necessarily mean you're going to be on the jury, but you'll go into a pool of 50 people who are qualified, and then we will select 12 people from that pool of qualified jurors. Okay?

So I have 45 minutes to talk to you, and you noticed some people came in and out really quick?

A. Uh-huh.

Q. And I'll submit to you that they were not qualified, not even to a point that we needed to talk to them any more because some people say, look, under no circumstances could I ever return a death penalty verdict. It doesn't matter what the evidence shows. Well, they're not qualified. There are some other people

199

on the flip side who will say, look, if you show me any kind of murder, show me where to sign, I'll do it. I don't care. They're not qualified either. We don't need that kind of a juror in a case like this. They've already made up their mind. It would be wholly and completely inappropriate, particularly in a case like this.

You, on the other hand, have demonstrated that -- that you're receptive to the death penalty, that -- I've seen through your questionnaire that you've made several statements that tell me I think you have a pretty good appreciation for what's going on. You stated in some parts that it depends on the facts presented. You stated in part the law is the law. And these are things that indicate to me that -- that you might be the person who will follow the law --

A. Uh-huh.

Q. -- in a case, and that you will ultimately base your verdict on the evidence in the case and not something else. Am I right in that impression there?

A. You're correct. Uh-huh.

Q. I don't want to put words in your mouth. I'll probably do a lot of the talking. If you have a different opinion, you jump right in --

A. Okay.

200

Q. -- and you tell me. Okay? I'm not looking for you to nod your head yes to everything I say. Okay? But I do have a lot of ground to cover. I'll tell you, Ms. Gruenau (pronunciation)? Gruenau (pronunciation)?

A. Correct.

Q. I'll tell you, Ms. Gruenau, what a qualified juror is, is a person who will follow the law, first of all. You don't have to like the law, but you have to follow the law. That that person will base their verdict on the evidence in the case and nothing else, not what they heard at the coffee shop or what they heard from their coworkers. That will return their verdict based strictly on the evidence in the case, and that they will then let the punishment fit the crime. That regardless of what the punishment is in the case, ultimately their verdict that they will render will be based on the facts and their verdict will be what is appropriate for that particular case. Okay? That's a qualified juror. Some people can do it. Some people can't do it. Have you ever sat on a jury before?

A. No, ma'am.

Q. Okay. I'll tell you a little bit, I'll give you a little primer on -- on how things work in criminal cases. In Texas, we have what's called a bifurcated trial system, which means trials are in two parts. In

201

the first part of the trial, the jury is called upon to do one thing and that is to determine whether or not the State has proved to them beyond a reasonable doubt that the defendant is guilty of the charge that they've been indicted for. If you find the person is not guilty, that's it. Okay?

There might be some other things that could happen, but if you find the person is guilty, then you move on to the punishment phase, and that's where that expression, let the punishment fit the crime, that's where that comes into play. That's where you now consider the offense again. You may hear additional evidence now peculiar to that particular defendant in the case. You will take all that evidence into consideration and base your verdict on that particular evidence. Okay?

A.   Uh-huh.

Q.   A death penalty case is -- is similar in some sense to other cases and it's lot different than other cases too. Okay? In Texas, we have what is called capital murder, and a person is only eligible for the death penalty if they are guilty of capital murder. There's nothing automatic about the death penalty. It has to be arrived at by a consideration of the evidence, and it has to be arrived at by a jury agreeing that that is the proper thing to do. Okay? Nothing is automatic

202

in these cases. We asked you about -- about murder cases in general. You said, I feel that -- on the first page -- do you have your questionnaire?

A.   Yes.

Q.   You said, I feel that it is justified punishment for the crime committed of murder. And then on page 4 at the very top we asked you: For what crimes do you think the death penalty should be available in Texas? And you put down murder. Okay. Let me -- let me explain something to you. Not all persons convicted of murder are eligible for the death penalty.

A.   Uh-huh.

Q.   Only persons convicted of capital murder. In a capital murder, what you always have, without a question about it, what you always have in a person who's committed capital murder is an intentional murder, meaning they meant to kill the person. They intended to do it. Okay? If I were to pull a gun out of my briefcase right now, turn to my co-counsel who's minding her business, unprovoked, and just shoot her three times and laugh about it, I think you would agree that's a pretty heinous murder, isn't it?

A.   Uh-huh.

Q.   I cannot get the death penalty for that, though, because it's not technically a capital murder. It was an

203

intentional murder, but not a capital murder. Capital murder is a murder, intentional murder, plus an aggravating factor. And it's actually a very narrowly defined category of cases. For example, the intentional murder of a peace officer while he's in the line of duty or the intentional murder of a child under six years of age or the intentional murder of two or more people at the same time or the intentional murder of a person while I am committing or attempting to commit another felony offense, burglary, sexual assault, robbery. So it's that intentional murder plus that aggravating factor.

A.   Okay.

Q.   If I cannot prove that aggravating factor to you, then the verdict should be and must be not guilty of capital murder. Okay?

A.   (Moving head up and down.)

Q.   Now, you've put on here, though, that you think that the crimes that it should apply for are murder, and then I mentioned to you they don't all apply and I saw you nodding your head.

A.   Uh-huh.

Q.   And did you know that or what are your feelings about that?

A.   No. I mean, I'm saying, okay, I can agree, I follow what you mean by the --

204

Q.   Okay.

A.   -- by the definition.

Q.   Do you have any qualms with that? Do you think all murder cases should be eligible?

A.   No. I'm sure there's -- there could be, you know, circumstances, you know, involved in any -- all different cases, so...

Q.   And I would submit to you that you're right. No two cases are alike. I've been doing this almost twenty years and no two defendants have ever been alike and no two crimes have ever been alike, particularly murder cases. But in order for me to have a jury return a verdict of guilty of capital, I've got to have that intentional plus that aggravating factor.

So let's step back a minute, and -- and let me tell you that -- that if I fail to prove to you that aggravating element, it doesn't necessarily mean a defendant will go home and ride the elevator downstairs with you.

A.   Okay.

Q.   It could mean simply that he's not guilty of capital murder but you would be called upon to consider if he's guilty of something else. Is he guilty, then, of just murder?

A.   Uh-huh.

205

Q. Okay. And these are what we call lesser-included offenses. And anything could happen below that. If I fail to carry that higher burden, he might still be guilty of something else. Okay? He might still be guilty of an intentional murder. In a Texas trial system, then you would be called upon as a juror now to assess the punishment for a person who's committed an intentional murder. And it's not life or death now. That's not the choice, because that's a death penalty case. That's a capital murder case. Instead, you're called upon to assess the punishment for that individual within a range of options.

A. Uh-huh.

Q. You could give that person anywhere from five years in prison all the way up to 99 years or life in prison. Okay? But, again, the verdict that you render has to be based on what?

A. What you're guilty of.

Q. And -- and when you let the punishment fit the crime, what are you looking to, to come up with that verdict, that number, if you will?

A. What number am I looking to come up with?

Q. What are you -- what's going to help you determine what they should get?

A. The evidence that's proved.

206

Q. The evidence. I'll submit to you there's probably a million different ways somebody could commit first-degree murder. What's important for a juror to understand is that we can't make any automatic assumptions as to what should happen in any criminal case. Have you heard any evidence in this case whatsoever?

A. Huh-uh.

Q. Do you already know what you're going to do in this case?

A. No.

Q. Do you need to hear the evidence in this case first?

A. Well, yes.

Q. Capital murder sounds bad, doesn't it?

A. Uh-huh.

Q. Murder sounds bad, doesn't it? There's a lot of ways you could commit a first-degree murder. Let's say, for example, you sat on a -- on a murder case, you are now called upon to assess punishment anywhere within five to 99 years or life, and envision, if you will, a situation with a 35-year-old able-bodied, sound-mind man. Okay? And that man thinks about and even plans how he is going to take the life of a 10-year-old helpless boy. And, in fact, he plans it out and he does it. He

207

kills a helpless 10-year-old boy. What's your snap feeling on that right there as to what that guy should get?

A. I mean, I would say death.

Q. Okay. Well, you know it's not an option?

A. I know that's not the option, but, I mean...

Q. Because it sounds bad --

A. Right.

Q. -- doesn't it?

A. Exactly.

Q. It sounds heinous, doesn't it?

A. Uh-huh.

Q. A lot of people will say, well, give him five years to 99, I think it should be 99 and under the prison.

A. Right.

Q. Well, let me change the factual scenario for you a little bit here just to illustrate the different ways you could commit a first-degree intentional murder. That 35-year-old man, that same man, he's actually the father of that boy. Okay? He has been a good husband. He has been a wonderful father. He's been a fantastic provider. He's been an asset to the community, doing volunteer work and volunteering at his boy's school. He's a Cub Scout leader for that little guy. The sun and

208

the moon revolves around that little boy for him.

Well, that little boy is currently at Children's Medical Hospital, and he's been diagnosed with cancer and it's fatal cancer, and he's going to die. There's absolutely nothing that they can do to save that young man. And if that weren't cruel enough that he is going to die, he's also suffering, and he suffers every single second that he's alive. And his father sits by that bed with him day and night. He sleeps on a cot there, and he probably cries more tears than his son ever could. And he watches his boy suffer.

And out of sheer motivation, driven only by a love for that boy, he decides he's going to go to that nurse's cabinet, get a bottle of morphine, comes back, he shoots it into his son's IV, holds his little man in his arms until he dies in his arms. Okay? Did he intend to kill that boy?

A. Well, now that you've added all the emotions into it, you know, it's just -- I mean, you just make it harder when you put all that into it, but...

Q. Do you see my point, though?

A. Yeah, I totally see your point, I mean.

Q. Did he intend to kill him?

A. Well, of course.

Q. Did he do everything that he needed to do to

209

commit that intentional murder --

A. Uh-huh.

Q. -- of that 10-year-old boy?

A. Uh-huh.

Q. Yeah. You might see it as being a far cry different from the guy who goes and gets an AK-47 and drives up to the local park, picks out a 10-year-old and shoots him in the head. They're both first-degree murders, aren't they?

A. Uh-huh.

Q. But the facts of the case would dictate what should happen in the case. Do you agree with me? Do you have a different feeling on that?

A. I mean, you would say yes, but, I mean, when you have to follow the law and what was committed --

Q. Uh-huh.

A. -- and the level of the -- the crime committed, I mean, that's -- you pay the price for --

Q. Right.

A. -- what's set for that crime, no matter what.

Q. He did what he did, didn't he?

A. Yeah.

Q. The question becomes, though, could you assess that punishment for either one of those somewhere within the range of five years to 99 years or life?

210

A. I could.

Q. Okay.

A. Yeah.

Q. And would you base your verdict on what should happen, the punishment, based on the circumstances of the offense --

A. Uh-huh.

Q. -- and the evidence in the case?

A. (Moving head up and down.)

Q. Okay. And that was a way-out-there example, okay --

A. Oh.

Q. -- just to illustrate to you the law. I'm not going to say it hasn't happened before, but that illustrates the law to you. Okay? There are propositions or fundamental principles of law that apply in every criminal case, be it talking about the theft of a bicycle all the way up to capital murder. It never changes. As we sit here today, Ms. Gruenau, you are to presume the defendant innocent. Okay?

A. (Moving head up and down.)

Q. And the reason you're to presume him innocent is because I haven't proven a thing to you, have I?

A. No, you haven't.

Q. And so the law states, as we sit here now, you

211

must presume him innocent. He has been indicted, but all the indictment is, is a piece of paper that tells me what I have to prove and it tells his attorneys and him what he's been charged with. It's no evidence whatsoever in a case, and the law states that you can't consider it evidence. Do you agree with that?

A. Yes.

Q. Would you follow that?

A. Yes.

Q. Some would say, well, where there's smoke, there's fire. He must be guilty of something. You can think whatever you want at home; but in a court of law, you can't use it as evidence --

A. Exactly.

Q. -- against him. So he's innocent right now. That's your presumption, only if and until I prove to you beyond a reasonable doubt otherwise. There's no definition of reasonable doubt. It's whatever you think it is. Some people say to me, it means I'd have to be really sure.

A. Uh-huh.

Q. Some say, it means to me I'd have to be 95 percent sure. It's whatever you think it is. It's not beyond all doubt, but it's a reasonable doubt. Does that make sense --

212

A. Yes.

Q. -- to you? Do you have any different definitions there?

A. No.

Q. Okay. It's always my burden of proof. When I say "my," I mean the State. You know, we bring the charges. We ought to have to bring the proof, right? There's never a burden on the defendant's side over there. They don't have to do anything other than show up, because that's what the law states. I brought the charges, I should have to prove it. He shouldn't have to come in and prove he's innocent. Do you agree with that?

A. Uh-huh.

Q. Any different feelings on that?

A. No.

Q. Are those laws that you could follow?

A. Yes.

Q. The law also states -- you've probably heard of your Fifth Amendment right not to testify?

A. Uh-huh.

Q. Basically what that means is that -- is that -- is that you -- if a defendant elects to -- to exercise his Constitutional right, it's a right you have and it's a right I have, everybody in here has that right. If he elects to exercise that Constitutional right not to take

213

the stand and testify, the law states you can't use it against him.

And basically what that would mean, to illustrate, is if I put on all the evidence in my case, you go back to the jury room and you look at it, and you say, you know what, the State didn't quite prove the case to me beyond a reasonable doubt, they got close, about this close, but they didn't quite prove it to me. So the fact that the defendant didn't testify, I'm going to use that as evidence against him and I'm going to find him guilty anyway. You can't do that, can you?

A. No.

Q. All right. Could you follow that law also?

A. Yes.

Q. I have to prove to you every element of the indictment. I don't get points for proving five out of six. You know, every element. That indictment alleges in there exactly what I have to prove to you beyond a reasonable doubt. I have to prove them all. They're all equally important. Okay?

Let me give you another kind of far-out example that would go to a person's qualifications to sit on a jury. The indictment -- let's say you're sitting on a murder case, and the indictment alleges that a defendant has killed another individual by shooting him

214

with a gun. Okay? I have to prove that to you. Well, the defendant gives a confession and says, I killed that guy and I'm glad I did. I'd do it again. Okay? But now the medical examiner takes the stand and says, oh, he's dead, but he didn't die of a gunshot wound. He was stabbed to death. Have I proved to you that he killed him by shooting him with a gun?

A. No.

Q. Have I proved my case?

A. No.

Q. What is your verdict?

A. That he died by stabbing.

Q. Is your verdict guilty?

A. Oh, I'm sorry. Not guilty.

Q. Not guilty?

A. Yes.

Q. And that goes, again, to the importance of following the law in the case. You may not like it. It's not your fault. It's my fault. And I'll tell you, I don't need a leg up in any of this. I'm not looking for people who are going to just do what I ask them to do, who are going to wink and nod at me. I want people who are going to come in, demand the evidence, review the evidence, and if it doesn't cut it, if I haven't gotten there, then by all means, tell me. Okay? It's part of

215

the system. It wouldn't be part of it if it wasn't that way. It's just fundamentally fair. But do you have a problem with any of that?

A. No.

Q. I'm looking at your questionnaire, and I get the impression, you tell me if I'm wrong, that I think you have a pretty low threshold for crime and nonsense out there? Yeah?

A. Correct.

Q. And I'll tell you, just because you feel that way doesn't necessarily mean you're not qualified. You know, I wish we had -- I'm glad we have citizens like that. But what some might say, well, you're a State's juror. You're law and order, so you're a State's juror, so you're going to come in and do whatever Ms. Handley tells you to do. Are you going to do that?

A. No.

Q. Okay. You also put in here that you're an independent thinker.

A. Uh-huh.

Q. Okay. So that's where we are with the -- with the criminal laws and such as that. You don't have to like them, but you do have to follow them.

One more thing about that. We asked you about officer credibility. And we asked each juror: Do

216

you think police officers are more inclined to tell the truth than the average citizen? And you had put in there yes, and you also put in there, I hope so. And I think we would all hope so. They're held to a higher standard.

A. Uh-huh.

Q. They have specialized training. There's nothing wrong with feeling that way, that thinking they would or hoping that they would, but the law states this, is that at this point, you're to start everybody off on an equal playing field, a level playing field, that you cannot say just because somebody's a police officer, I'll always believe what they have to say. You have to instead wait for them to take the stand, listen to what they say, look at them, and then decide their credibility. Does that make sense to you?

A. Yes.

Q. Is that something that you think you can do?

A. Yes.

Q. And the same is true for the other side. You can't say just because a guy with a -- with a bunch of felony convictions is going to take the stand, I'm not going to believe a word he says. You've got to wait first and listen.

A. Right.

217

Q. Okay. Let's -- let's talk now about capital murder. Okay? I have to prove to you that intentional murder, and I have to prove to you that aggravating factor.

A. Uh-huh.

Q. And keep this in mind, that when I say intentional murder, I mean it wasn't an accident. Okay? It wasn't a I just meant to hurt the guy but he died. It wasn't I just wanted to shoot him in the leg to scare him but he died. It wasn't I killed him in self-defense, you know.

A. Uh-huh.

Q. It is not any kind of a justification of self-defense or something like that. It's not an oops or I didn't mean to. It is an, absolutely, I meant to kill him and I did what I had to do. Kind of like the father with the son. He meant to kill him, didn't he?

A. Uh-huh.

Q. And he did what he had to do. It's an intentional murder. If I prove to you beyond a reasonable doubt there was an intentional murder and it was in the course of somebody actually robbing somebody or at least trying to rob them, then I'm entitled to a verdict of guilty of capital murder. Okay?

A. (Moving head up and down.)

218

Q. Can and will you do that?

A. Uh-huh.

Q. If I fail to do that, what's your verdict going to be?

A. Not guilty.

Q. Okay. Now, that just goes to the person's guilt, you know. Now we're going to talk about what kind of punishment that person should receive in a capital murder case.

A. Uh-huh.

Q. Keeping in mind, ma'am, that there is nothing automatic about a death penalty case. Just because a person is found guilty of capital murder does not mean that they automatically will get the death penalty, and it doesn't necessarily mean they automatically should get the death penalty. All of that will depend on the facts in the case. What you don't do is you don't go back to the room with the other jurors, sit down and go, okay, how many think he should get life without parole and how many think he should get death. And a lot of people think that that's the way it's done, and it's actually not. The Judge had you read those special issues?

A. Uh-huh.

Q. The way you arrive at your verdict is by answering those questions. And depending on how those

219

questions are answered will tell us if the person will get life or the person will receive the death sentence. Okay? Any questions there? Are you following me?

A. Uh-huh.

Q. As we go into the second phase of the trial, that bifurcated system, that second part, it's like a separate mini trial. Okay? All those -- now, remember that presumption of innocence at the beginning?

A. (Moving head up and down.)

Q. And that presumption was there because I hadn't proved anything to you, had I?

A. Right. No.

Q. Okay. And you have waited for me to give you the evidence, you considered the evidence, and then you returned your verdict.

A. Uh-huh.

Q. Well, just like there was a presumption of innocence in the first part, going into the second part of the trial now, you have to presume that the life sentence is the appropriate thing to do. Okay? And the reason you have to presume it's the appropriate thing to do is because I have to prove to you it's not.

A. Uh-huh.

Q. And until I prove to you that death is the appropriate thing to do, you are to maintain that a life

220

sentence is the proper thing to do. Does that make sense?

A. Yes.

Q. Because if you're guilty of capital murder, only one of two things can happen, right?

A. Uh-huh.

Q. You're either going to get the death sentence or you're going to get life in prison without parole. And life means that, without parole. Okay? So he's already sitting on a life sentence. That does not change. That will never change until I prove to you beyond a reasonable doubt that it should change.

Some people may say, look, if he's guilty of capital murder, he intentionally killed somebody, he did it in the course of a felony, I'm going to automatically think that he should get the death penalty. Are you that kind of individual?

A. No.

Q. Okay. Instead, what you need to do is wait and hear the evidence and decide the special issues with that.

A. (Moving head up and down.)

Q. Let's look at the special issues now. Okay? That first one, Special Issue Number 1, we refer to that as the future dangerousness issue. And when the

221

lawmakers wrote these issues for you, they did not necessarily define the terms in there, but what I'm having to prove to you is in order for you to answer that question yes, I'm having to prove to you that the particular defendant in the case is going to be a future danger, that he's going to do some kind of criminal acts of violence in the future that's going to be a threat to whatever society he's in. Okay?

A. Uh-huh.

Q. Starting at the beginning, Do you find from the evidence beyond a reasonable doubt. Anytime you see that, what does that tell you, if you're looking -- who's proving to you beyond a reasonable doubt?

A. You are.

Q. I am. You're always looking to me. Are you ever looking to them to prove it otherwise?

A. Huh-uh.

Q. No. And you have to say yes or no.

A. I'm sorry.

Q. That's okay.

A. No.

Q. So have I proved to you beyond a reasonable doubt that there's a probability, there's no definition of probability either. Do you see, though, that a probability is different from a possibility?

222

A. Yes.

Q. Anything is possible, right?

A. Right.

Q. Some say probability is more likely than not. Would you agree with that?

A. Uh-huh. Yes.

Q. Do you have a different idea about that?

A. No.

Q. Okay. That the defendant will commit criminal acts of violence. What it doesn't say is that he will commit another murder or have I proved to you that he will commit an assault or have I proved to you that he will hit somebody in the jail. It doesn't exactly enumerate what the criminal act of violence is. It didn't limit it, right?

A. Correct.

Q. It's whatever you think it is. Okay? If -- if I were to ball my first up right now and just smack my co-counsel in the head, she's minding her business over here, do you think that might be a criminal act of violence?

A. Yes.

Q. Okay. And some may; some may not. You know, it's entirely up to you to decide that. If I prove to you it's more likely than not the defendant will commit a

223

criminal act of violence that will constitute a continuing threat to society, he's sitting on a life sentence right now, right?

A. Correct.

Q. Where is he going to be the rest of his life?

A. Sitting in prison.

Q. Sitting in prison. So do you -- do you see how the definition of society, at least for a defendant, could also include prison as a society?

A. Yes.

Q. Okay. They -- they live there. They work there.

A. Uh-huh.

Q. They play there. They eat there. And there's also other people that come to the prisons too, aren't there --

A. Yes.

Q. -- who aren't inmates? Guards, nurses, educators, clergy, visitors, families and children even come in.

A. Uh-huh.

Q. So the question is: Is he going to be a future danger to the people within that prison society? Okay? I have to prove to you that he is going to be that. What kind of things do you think you would have to hear or

224

know or see outside of what the person's done before, outside of the criminal act you found him guilty of, what would help you decide in answering that question yes or no?

A. If there's a history of violence, crimes committed, depending on the circumstances of the crimes committed.

Q. Sure.

A. Family life.

Q. Okay.

A. That's --

Q. Yeah. And I can't pin you down to anything right now --

A. Yeah.

Q. -- but, you know, it's all my obligation to prove it to you, to bring it to you, to bring you that kind of evidence. I'll tell you this, that you are now asked to and can look at the crime itself that you found him guilty of, and you can look at that in helping you to decide that question. Okay? Just the crime itself could help you answer that question yes or no. But it's fair for you to also say, no, I need something else besides just that, and I see you nodding your head yes.

A. Uh-huh.

Q. You'd like to see something else besides just

225

the crime then?

A. Yes.

Q. Okay. And that's fair enough. So, in other words, if I prove to you that somebody intentionally committed a murder and they did it while trying or actually committing a robbery, are you automatically going to answer this yes?

A. No.

Q. Okay. Are you telling me that you need to reconsider that evidence and see something more --

A. Yes.

Q. -- in order to answer this yes or no?

A. Yes.

Q. Okay. There's a lot of -- and, again, I think you've hit the nail on the head there. Whether or not somebody's a future danger would depend entirely on the evidence. I don't know that you could automatically say now, without more, that somebody would or wouldn't be. You might see a guy who's just been incorrigible his whole life and has committed three prior murders, you know, or you might see a guy who's never -- never done a thing wrong in his life --

A. Uh-huh.

Q. -- and is just a -- and just a peach of a guy outside of this horrible thing, you know. But that's

226

what you would decide to answer that question there. If you say no to that, if I haven't proved to you they're a future danger, then that's it. Okay? He's already sitting on a life sentence and he stays at that life sentence.

A. Uh-huh.

Q. And you go home and that's the end of the show. Okay? And he goes to prison for life, for the rest of his life.

If, however, I prove to you that he is a future danger, then we're not finished yet. You have to answer that next special issue, and that has to do with something we have in Texas called the law of parties, which basically means that, figuratively speaking, you don't have to be the triggerman in a criminal case in order to be held liable for a criminal offense.

Ms. Evans and I go home tonight and plan out the robbery of our local 7-Eleven and we plot it out together and she goes and buys the gun and I go and buy the bullets and then we take her car down to the 7-Eleven and she hands me the gun and I load it. I'm getting ready to go in. She says, I'll sit here and I'll watch as a lookout for you. Great.

I'm getting ready to go in the store, and I say, darn it, I forgot to bring the mask, and she says,

227

just don't leave any witnesses. I go in there, I rob the clerk of all her money, and I shoot her three times in order to kill her. Am I guilty of capital murder? I shot the clerk and I robbed her.

A. Yes.

Q. Do you think she should be held guilty of capital murder?

A. Yes.

Q. Okay. The law states that if she aided, assisted, encouraged, or directed, in other words, if she participated in the crime, then she -- you can be just as guilty as the triggerman.

A. Uh-huh.

Q. In a capital murder case, you're going to have to go one step farther. You're going to actually find that not only did she participate, but she actually anticipated somebody would die.

A. Uh-huh.

Q. Okay? You'd make that decision, again, based on the evidence in the case.

A. Yes.

Q. Okay. So you would decide was the defendant the actual triggerman, so to speak, or was he an active participant in the case and knew somebody was going to die. Any questions about that?

228

A. No.

Q. Okay. If you answer that question no, we stop. It's a life sentence. If you answer that question yes, he's sitting now on a death sentence. Okay? It's not over yet, though. There's that final special issue that comes into account there. Okay? And I know that's quite a -- quite a mouthful there. So let me just kind of paraphrase for you and tell you what's going on, or we can read it together. Do you find taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed? That is a run-on sentence, isn't it?

Let me tell you what's going on here. We also call it the safety net issue. Okay? And what we're not going to do in the State of Texas is we're not going to send 12 people in to decide such an issue as this, life versus death, and say that we're going to foreclose all your options. Okay? And, basically, what Issue Number 3 there is telling you is it's saying look at everything again. Bring all the evidence back in and

229

look at everything again. Look at the crime that happened. Look at the defendant. Look at his background. Look at his character. Look at his moral culpability. Is there something about everything that you're seeing that tells you that even though we're sitting on a death sentence now, the right thing to do for this particular defendant in this particular case is to turn it into a life sentence? Okay?

A. Uh-huh.

Q. In other words, is there some kind of mitigating circumstance, something that lessens his moral culpability, lessens it so much to the point that the right thing to do is give him a life sentence in this case? Do you understand what we're talking about there?

A. Yes.

Q. I can't tell you what is or isn't a mitigating circumstance. It's entirely up to you. And the fact of the matter is, all the jurors don't have to agree on what's mitigating. You know, some people might say, well, I think -- I think youth is a mitigating circumstance. And other people might say, I don't think it matters how old you are, as long as you're an adult. Some people may say, well, I think that he's had a clean record up to this point is mitigating. And others might say, it doesn't matter, you don't get two tries at this,

230

you know. And even then, just because it's mitigating, the question becomes is it sufficiently mitigating? In other words, if you look at everything and categorize it, maybe, you could put the evidence, is it mitigating, is it aggravating --

A. Uh-huh.

Q. -- or is it neither? And then after you do that, you go back and you look at the mitigating and say, okay, it's mitigating, whatever it may be, but is it sufficient? Does make sense to you?

A. Yes.

Q. Do you have any questions about that?

A. No.

Q. We asked you in your -- in your questionnaire here a few things about intoxication, for example. And the law states that intoxication is not a defense. Okay? It's not a defense. But in a capital murder case, it is something that you can consider in terms of mitigating evidence, you know. Because you even put in here, you said that you were looking in the case of life versus death, you were saying -- you said what would be important to you is knowing that they were in their right mind, okay, that that would be a consideration that you would take into account in determining life versus death. Am I misreading that?

231

A. Huh-uh.

Q. Well, that's something that you might look at. You might look and say, well, you know what, guilty of capital murder, and we're talking about an intentional murder, I think they're a future danger based on what they showed me, but I'm looking at the fact that they were intoxicated by drugs or by alcohol, and I know it's not a defense, but I think that if he hadn't been that way, he probably wouldn't have done this. I think that if he -- he weren't intoxicated, he wouldn't be maybe a dangerous guy. You know, it's something you can consider.

A. Uh-huh.

Q. Or you could go the other opposite and you could go, it doesn't matter, you chose to put it in your mouth, you know, it starts --

A. Yeah. I think that was my point is if you start out sober, nonintoxicated with, you know, drugs or alcohol or whatever you choose, then I think you're capable of mentally comprehending the law, but I think what I meant by saying of right mind is, you know, before you intoxicate yourself, you know what you're doing.

Q. Right.

A. You know what I mean?

Q. I do. I think I do. Do you see, though, how

232

the law gives you that -- that option there that you can at least consider those elements of the offense, and if intoxication were a piece of evidence that was presented to you, that you'd be called upon to look at it --

A. Uh-huh.

Q. -- and decide does that make a difference to me?

A. Right.

Q. And does it make a big enough difference to me to turn this verdict over? Do you -- do you think that that's an exercise that you can engage in where you're willing to look at all the evidence again?

A. I could do that. I could do that.

Q. And do you -- do you think that even if you found somebody guilty of capital murder and felt they were a future danger, are you still willing to do that, though? Are you still willing to go to the last point and reconsider whether or not you should turn the verdict over?

A. Oh, I could definitely reconsider, but...

Q. Okay. Do you think it's fair to do that?

A. I think it's definitely fair. I mean, it depends on the outcome, but you can always reconsider.

Q. Sure. Sure. Do you think it's ever possible that -- that a person who intended to kill somebody and did it in a robbery to take their property, and assuming

233

will be a threat to the people that he lives with in the prison, do you think it's ever possible there could be anything to turn that verdict around from death to life?

A. I think it -- I think it really just depends on the circumstances.

Q. Okay. I'll submit to you I -- yeah.

A. I think things are just situational and given the evidence, that's, you know, provided. I mean, there is reconsideration, but I'm not saying that that would change a -- you know, a decision.

Q. I could sit here and ask you now how you feel about age or drugs or family or criminal record, and how you feel right now about whether something is important to you or not, the fact of the matter is, if you hear the evidence in the case, will you look at it in the context of the case and then make your decision?

A. (Moving head up and down.)

Q. All right. And you're saying -- you're

A. Yes.

Q. -- nodding your head yes? Okay?

MS. HANDLEY: How much time?

MR. HIKEL: We started at 1:40.

MR. PARKS: Eight minutes.

MS. HANDLEY: Eight minutes.

Q. (BY MS. HANDLEY) Do you have any questions for

234

me on how this works?

A. No.

Q. Okay. Okay. I just want to see if there isn't something that I've missed in your -- so you understand the difference between murder and capital murder?

A. Yes.

Q. And you said here on page 2 that there was no argument against the death penalty. What do you mean by that?

A. Where?

Q. Page 2, we asked you the best argument against the death penalty is; and you said, none.

A. I just couldn't come up with a good argument against it.

Q. Okay. If -- if the evidence didn't show that he was a future danger or the evidence showed that there was something to mitigate against a death sentence, would that be an argument against it?

A. Yeah, that's a good argument. I just, at the time, filling out the questionnaire --

Q. Okay.

A. -- it was I just couldn't think of one.

Q. Sure. On page 4, you said that on the -- on the scale of how strongly your beliefs are about the death penalty, you put a 10. How did you come up with 10?

235

A. Oh, on -- oh, how strongly I feel about --

Q. Yeah.

A. Just because I'm either one way or -- I mean, either I'm for it or I'm against it, so I picked 10.

Q. Okay. I've heard some other people say if I'm going with the death penalty on a case, I better be thinking a 10 --

A. Uh-huh.

Q. -- and if I'm not, it's a 1. Okay. Okay. Again, you talked in here about it always depends on the facts presented whether somebody should get life without parole. And, again, it tells me you need to know the facts of the case first before you decide. Some people would ask you, ma'am, they would say, well, aren't you inclined to say that somebody who's guilty of capital murder, somebody who intentionally, not accidentally, killed somebody and robbed them, aren't you inclined to say that they should always get the death penalty or they would always be a future danger. Do you feel that way?

A. No.

Q. Okay. Okay. Let's see here. You mentioned a lot throughout here about people mentally lacking thought process or -- or their state of mind. I'll submit to you that becomes very important in any criminal case. If I can't prove to you that the defendant's actions were

236

intentional, if I can't prove to you an intentional murder, am I able to prove a capital murder?

A. No.

Q. No. So you'd have to look at that and decide that maybe their actions weren't even intentional. Maybe there's something about their mind that they were incapable of forming that intent so maybe they're guilty of some other kind of murder --

A. Uh-huh.

Q. -- but not an intentional murder. Do you -- do you understand --

A. Yes.

Q. -- how that could happen? Would that offend you that even though somebody's charged with a capital that if I can't prove intentional, they might be guilty of something a lot less?

A. No.

Q. Okay. Okay. And also, you know, you put on almost the last page here, we asked you about jury duty; you said, I would feel that I'm fulfilling my duty as a citizen. Do you think it's your duty as a citizen to do what I ask of you as a representative of the State in a criminal case like this?

A. Maybe not necessarily you. I'm just saying as a citizen in general, I'm fulfilling --

237

Q. Yeah. And I guess that's what I'm getting at --

A. Okay.

Q. -- is -- is you're not here to do everything I ask you to do.

A. Right.

Q. And I've heard it said that some people say, well, I just assumed that, you know, the right thing to do will be the thing to do that the State is asking for. Is that how you feel?

A. No. No.

Q. Okay. Okay. You're an independent thinker --

A. Yes.

Q. -- as you put in here?

A. Yes.

Q. All right. Just to summarize, ma'am, then I'm hearing that you're going to give careful consideration to all the evidence in the case?

A. Yes.

Q. That you'll hold me to my burden of proof; you're always going to look to me on that, right?

A. Yes.

Q. If I -- you're going to base your verdicts on the facts of the case --

A. Correct.

Q. -- the evidence in the case? And have you

238

already drawn any conclusions about what you will --

A. No.

Q. -- or won't do in this particular case? And, also, keeping in mind that last issue, I've talked about burdens and proof and all that, there's no -- nobody has a burden of proof on that. I don't have to prove anything to you. They don't have to prove anything to you. It's there for you. It's there for you to look at and decide whether or not you think there's sufficient mitigating evidence to turn it around, and that's your decision alone. Okay? I appreciate you talking to me. Thank you very much.

A. You're welcome.

MS. HANDLEY: Pass the witness.

THE COURT: All right. Thank you, Ms. Handley.

Would you like to take a short break?

VENIREPERSON GRUENAU: Yes. Can I go get a drink of water?

THE COURT: Take a five-minute recess.

(Recess, 2:16-2:25.)

(Open court, defendant present.)

(Venireperson Gruenau enters courtroom.)

THE COURT: Ms. Gruenau, just go ahead and have a seat there. Did you get something to drink

239

there?

VENIREPERSON GRUENAU: Yes.

THE COURT: That's good.

All right. Thank you, ladies and gentlemen. Be seated, please.

Mr. Lollar.

MR. LOLLAR: Thank you, Judge.

THE COURT: Yes, sir.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. LOLLAR:

Q. Well, you found some water.

A. Yes.

Q. Good. Where did you have to go to?

A. To the vending machine in the central jury room.

Q. Well, good. I didn't even know they had one down here. Now we know.

Well, I'm Brad Lollar, and this is Doug Parks, Keri Mallon. We represent James Broadnax back here. And, Ms. Gruenau, it's our opportunity to talk to you now. What we're trying to do is find people who can be fair to the State and fair to the defendant in the case.

One thing I wanted to talk to you about, I saw that when you filled out your questionnaire here about a month ago, you had just started a new job?

240

A. Uh-huh.

Q. And I see you're still with them --

A. Yes.

Q. -- Southern Botanical. Now, I don't know if the Judge has explained this to you or not yet. We are going to start the testimony in this case August the 10th, and it's going to go on for about two weeks --

A. Uh-huh.

Q. -- we think. Now, some jurors get paid while they're down here serving on jury duty. Others don't. What is your situation?

A. Oh, you mean being paid by my company?

Q. Right.

A. I'm not really sure about that, but they are aware that there is the potential that I would be called for a two-week time period.

Q. And have they indicated to you that you'd be paid for that time period?

A. No, they haven't. Actually, I guess we just haven't touched on that subject really.

Q. Okay.

A. It hadn't come up because we didn't know for sure, and probably after today, we might discuss that a little bit further.

Q. Okay. I see that as part of your job duties,

241

you oversee a landscape crew?

A. Yes.

Q. And if you weren't there, is there somebody who could take your place?

A. Yes. Uh-huh.

Q. Okay. So it wouldn't be a situation where the job just wouldn't get done if you're not there?

A. No, it wouldn't. It would be -- it's covered.

Q. Now, if your company is a company that pays you even in your absence on jury duty, that's great. But what if they're not?

A. If they're not -- and you say this is only a two-week time period?

Q. Uh-huh. We think. That's our best estimate.

A. It's not -- you think? Okay. It could go longer?

Q. Potentially. We don't think so, but potentially.

A. Okay.

Q. One thing we can never predict is how long a jury is going to be out deliberating.

A. Right. Right. Right. Right. That's just something I'd have to discuss with them.

Q. Is that --

A. Two weeks is not going to kill me. If it's a

242

month, then I'd have to look at that.

Q. Well, if it's a month --

A. I'll have to discuss with them and see.

Q. Okay. All right. All right. So that's not something we need to worry about then?

A. Not right now. I'll have to -- I'll have to find out, I mean --

Q. Okay.

A. -- if --

Q. Okay. Okay. Because that's -- you know, we understand when people have time constraints --

A. Uh-huh.

Q. -- and if they tell us in all honesty, if I'm a juror in this case, because of the restraints on me and my job, particularly if it's a job where they're not getting paid while they're down here, that they tell us honestly that, really, my -- I would not be able to give a hundred percent attention to the trial.

A. Uh-huh.

Q. And we don't like to put jurors in that situation.

A. Uh-huh.

Q. And that's why we have 800 jurors out here that we had called down to fill out the questionnaires.

A. Right.

243

Q. So you're telling me we don't have to worry about that?

A. No. No.

Q. Okay. All righty. The purpose, again, is to find 12 jurors who can be fair to both sides.

A. Uh-huh.

Q. Okay? And as you can imagine, when we talk about a death penalty case, a case in which the State is seeking death, people have very strong feelings about being on that type of a jury. The four jurors who were with you here earlier, all four of them told us that under no circumstances could they ever assess a death penalty, period. Their feelings are so strong on that.

Now, reading your questionnaire, and tell me if I'm wrong, it seems to me like you are a person who is strongly in favor of the death penalty.

A. Uh-huh.

Q. And I say that because I see various things throughout your questionnaire. On the first page, I feel this is a justified penalty for the crime committed of murder.

A. Correct.

Q. Right?

A. Uh-huh.

Q. We asked you on the second page the best

244

argument for the death penalty, killing someone is punishable by death. And then we asked you if you could even think of an argument against the death penalty, and you couldn't. Well, you said, not one, right?

A. Right.

Q. And then over here on page 4, second question -- or first question, What crimes do you think the death penalty should be available. And you said murder. Okay?

A. (Moving head up and down.)

Q. And the next question, Do you agree with the law in the State of Texas, intentionally taking a life without legal justification in the course of committing or attempting to commit robbery is a capital offense for which the death penalty may be imposed. And you said, being of sound mind and murdering for personal gain, if proven guilty, would constitute using the death penalty.

A. Yes.

Q. Right? On the scale of 1 to 10, you put that you were a 10 in favor of the death penalty.

A. Yes.

Q. Okay. And then down at the bottom. We ask, have you, your spouse, or close family members' views on the death penalty changed in the past five years? And you said, no, yours have not changed. I agree with the death penalty.

245

A. Uh-huh.

Q. And the next page, we asked if you've seen any movies, TV shows, read any books or articles dealing with the death penalty. And you said yes. And how did that make you -- how did they influence your opinion? You said, they made me more in favor of the death penalty. Okay? So you see where I'm going here?

A. Uh-huh.

Q. It seems to me -- well, let's keep on going. Just list them all. Do you believe in an eye for an eye? Yes. Do you believe life in prison is equivalent to the death penalty? No. Okay? We asked you: What would be important to you in deciding whether a person received a death sentence rather than a life sentence in a capital murder case? And your answer was: Knowing they were of sound mind willfully taking another's life for their own personal gain. Okay?

A. Uh-huh.

Q. And it seems to me that if you found a person guilty of doing exactly that, a person who is not legally insane, who is not incompetent --

A. Right.

Q. -- and if they willfully took another person's life for their own personal gain, that's a case in which you would assess the death penalty?

246

A. Yes.

Q. Okay. And then we ask other types of questions. We tell you what the law is in regard to voluntary intoxication. And when we say "intoxication," we mean either by alcohol or by drugs. Okay?

A. (Moving head up and down.)

Q. If you're intoxicated by the use of drugs, that's the same thing as being intoxicated by the use of alcohol under the law.

A. Uh-huh.

Q. And if we say that if you're voluntarily intoxicated, in other words, if somebody -- you know, you've seen the situations where a person's at a bar and somebody slips something into their drink, okay, we're not talking about that type of a situation. We're talking about a person who voluntarily ingested the drug or alcohol --

A. Uh-huh.

Q. -- became intoxicated as a result of that, and then did a criminal act. Well, the law says that's not a defense. Okay? And you agreed with that?

A. Yes.

Q. Even saying this reasoning is a joke.

A. Uh-huh.

Q. I -- that's fine. But then the law says, also,

247

at the top of page 6, we told you what the law is, that evidence of intoxication can be considered in mitigation of punishment.

A. Uh-huh.

Q. And you said you didn't agree with that?

A. Right.

Q. Punishment should be given whether -- and part of my questionnaire got cut off. What -- what did you say?

A. Whether intoxicated or not.

Q. Whether intoxicated or not. Okay. So, by that, I take it that you mean that you would not ever feel that evidence of intoxication should be considered as a mitigating factor?

A. Correct.

Q. Okay. All right. All right. Over on page 8, about two-thirds of the way down, three-fourths of the way down, it says, Some people feel genetics, circumstances of birth, upbringing, and environment should be considered when determining proper punishment of someone convicted of a crime. What do you think? You said, society does a good job of informing what is right or wrong. A crime is a crime.

A. Uh-huh.

Q. Is that what you --

248

A. That's what I put. Uh-huh.

Q. Okay. All right. All right. I think that's it that I need to talk to you. But, see, my point is, it just appears to me that in this -- and, again, this is perfectly all right, this is perfectly acceptable. I don't have the right to challenge your beliefs about the criminal justice system.

A. Right.

Q. Okay? Nobody here does. Okay? You're entitled to these beliefs. That's fine. But, you see what we're talking about is a case where if you find a defendant guilty, a jury's going to have a choice between assessing a death sentence and assessing a life without parole.

A. Uh-huh.

Q. And it just seems to me, now that you know what type of a case we're talking about and you know what the various components of that are, and let me briefly go through those.

We're talking about a capital murder where it is alleged that a defendant intentionally caused the death of an innocent victim and did that during the course of robbing that victim, taking their property from them at gunpoint.

A. Uh-huh.

Q. Okay? And it just seems to me, based upon your

249

questionnaire, that that is exactly the type of case that you feel the death penalty was made for?

A. Yes.

Q. Is that right?

A. Yes.

Q. So the question becomes, and this is where -- this is where I really have to ask you to be honest with us.

A. Okay.

Q. Okay? If -- well, why wouldn't you assess a death penalty if the defendant did what they say he did?

A. I mean, I wouldn't. If they can prove that he did it, then I would.

Q. You would assess the death penalty?

A. Yes.

Q. Okay. And, Ms. Gruenau, I think that's an honest answer from you, and I appreciate you being honest with us. And that's what we're down here trying to do is find 12 people who can be fair to the defendant and to the State --

A. Uh-huh.

Q. -- certainly. But the fact of the matter is, if you find a defendant guilty of this type of a capital murder, you're going to vote in such a way to assess a death penalty; is that correct?

250

A. Yes.

Q. That's all the questions we have.

MS. HANDLEY: I have a follow-up question, Your Honor.

MR. LOLLAR: No. We're not doing follow-up.

THE COURT: Wait a minute. I'm -- I'm doing this, I mean, or I'll do the follow-up.

MS. HANDLEY: I simply want to inquire would she still hold us to our burden of proof in this case.

THE COURT: And that was where I was about to go.

MS. HANDLEY: Thank you, Your Honor.

THE COURT: You understand, Ms. Gruenau, that the death penalty is not an automatic sentence?

VENIREPERSON GRUENAU: (Moving head up and down.)

THE COURT: And what is the -- what is the default sentence, after you found a defendant guilty of capital murder, where -- what is the -- what is the presumption starting out, the punishment?

VENIREPERSON GRUENAU: It would be life --

THE COURT: Yeah.

VENIREPERSON GRUENAU: -- without parole.

THE COURT: And you understand that's the law. Can you follow that law?

251

VENIREPERSON GRUENAU: Yes.

THE COURT: Or would you automatically answer those questions in such a way as to give the death sentence?

VENIREPERSON GRUENAU: Then you would follow the special issues --

THE COURT: Okay.

VENIREPERSON GRUENAU: -- until you --

THE COURT: But -- but would you listen to the evidence and let the evidence dictate the answers, your answers --

VENIREPERSON GRUENAU: Yes.

THE COURT: -- to the special issues --

VENIREPERSON GRUENAU: Yes.

THE COURT: -- or would you just automatically say, well, I need to -- if I'm going to give the death penalty to the defendant, I need to answer that one yes and that one yes and that one no, and I know that's going to give the death penalty and that's the way I'm going to do it, regardless of the evidence? Would you do that?

VENIREPERSON GRUENAU: Yes.

THE COURT: You would do that automatically?

VENIREPERSON GRUENAU: No, I wouldn't -- do the death penalty automatically?

252

THE COURT: Yes.

VENIREPERSON GRUENAU: No, without going through those.

THE COURT: Okay. Well, you explain to me what you understand what you have to do to get through those special issues.

VENIREPERSON GRUENAU: You have to answer yes, yes, and then this one is a no.

THE COURT: Yeah, that's -- that's the -- that's the answers that would --

VENIREPERSON GRUENAU: Right.

THE COURT: -- bring a death penalty about, and it would be binding on Judge Snipes. He wouldn't have any choice in the matter but if the jury answers those questions in that pattern --

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: -- or in that way, then he would have to assess the death penalty. But what do you base your decision in Special Issue Number 1 on?

VENIREPERSON GRUENAU: The evidence provided.

THE COURT: Okay. And who do you look to for that?

VENIREPERSON GRUENAU: The State.

THE COURT: Can you do that?

253

VENIREPERSON GRUENAU: Yes.

THE COURT: What's the State's burden of proof in proving Special Issue Number 1?

VENIREPERSON GRUENAU: Beyond a reasonable doubt.

THE COURT: Okay. Can you told them to that burden?

VENIREPERSON GRUENAU: Yes.

THE COURT: You understand -- you understand the Special Issue Number 1, I'm still --

VENIREPERSON GRUENAU: Oh, yes.

THE COURT: -- talking about Number 1. Number 2, don't know whether you'll get that or not. That's up to Judge Snipes, and that will depend on the evidence that's -- that he hears during the course of the trial whether he submits Special Issue Number 2 to the jury or not.

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: But you understand that?

VENIREPERSON GRUENAU: Uh-huh. Yes.

THE COURT: Okay. May be in the charge; may not be in the charge. If it's not in the charge, then Special Issue Number 3 will be Special Issue Number 2.

VENIREPERSON GRUENAU: Uh-huh.

THE COURT: Okay? But you're always going

254

to see 1. You're always going to see 3, for sure. Possibly you could see 2.

VENIREPERSON GRUENAU: Okay.

THE COURT: All right. Now, what's the -- who has the burden of proof?

VENIREPERSON GRUENAU: Neither.

THE COURT: There you go. And what are you going to do on Special Issue Number 3?

VENIREPERSON GRUENAU: Well, take -- you can take into consideration the mitigating circumstances.

THE COURT: Okay.

VENIREPERSON GRUENAU: You have a -- you -- this is your last option of whether to decide on the death penalty or life without parole.

THE COURT: Uh-huh. Sometimes we call that the safety net.

VENIREPERSON GRUENAU: Yeah.

THE COURT: I don't know whether that term was used when you were being talked to or not, but we hear that quite frequently, you know, safety net. Is that going to be -- are you going to give -- are you -- are you really going to do that, or, I mean, are you going to consider that evidence, and if you saw mitigating evidence that was sufficient --

VENIREPERSON GRUENAU: If it came to that

255

point --

THE COURT: Yeah.

VENIREPERSON GRUENAU: -- and we needed to, yes.

THE COURT: Well, you're always going to need to. Do you understand that?

VENIREPERSON GRUENAU: Yes.

THE COURT: Because it's going to be submitted, and so you've got to -- you know, can you give it -- what's the word I'm looking for?

MS. HANDLEY: Meaningful?

THE COURT: Huh?

MS. HANDLEY: Meaningful consideration.

THE COURT: Meaningful. There you go. Meaningful consideration.

VENIREPERSON GRUENAU: Yes.

THE COURT: Can you give it meaningful consideration, or are you just going to say, I know I've got to look at that, but --

VENIREPERSON GRUENAU: No. I would give it meaningful consideration. Yes.

THE COURT: Okay. Do you think that there's anything after you have found a defendant guilty of a heinous act of murdering somebody while in the course of robbing them, taking property, regardless of how much it

256

was, it could be very little or it could be a whole lot, but, you know, doing that, and then you find that there is -- you find that he would be a continuing threat to society, that he will probably commit -- what is it -- there's a probability that he would commit future acts of violence in the society where he resides, which would be in the prison society --

VENIREPERSON GRUENAU: Yeah.

THE COURT: -- or atmosphere, you found that yes. Is there any way that you could look at this and say, you know, I think there's mitigating circumstances here that are sufficient that I think a life sentence is more appropriate than the death sentence? Could you ever do that or not? If you can't, you can't; if you can, you can.

VENIREPERSON GRUENAU: No. I mean, if I decided that he -- there's a probability that he would commit crimes, then, I mean, if I decided yes on that, then --

THE COURT: Well, that's the only way you get to Number 3, you know.

VENIREPERSON GRUENAU: Right.

THE COURT: So if you -- if you say yes to Number 1, then there isn't anything that you're going to hear that would be sufficient -- sufficiently mitigating

**257**

circumstances?

VENIREPERSON GRUENAU: There could be if there was new evidence provided, but...

THE COURT: Well, the evidence you're going to -- you're going to hear is -- you've already heard everything by the time you start answering these questions.

VENIREPERSON GRUENAU: Then probably not, no.

THE COURT: No. Okay. All right. Well, thank you, Ms. Gruenau.

Anything further, Mr. Lollar?

MR. LOLLAR: No, Judge.

THE COURT: Okay. Would you step outside with my bailiff for just a moment and let me confer with the attorneys.

VENIREPERSON GRUENAU: Sure.

(Venireperson Gruenau exits courtroom.)

THE COURT: Okay. Okay. Thank you. Be seated.

Ms. Handley, does the State have a challenge for cause?

MS. HANDLEY: We do not.

THE COURT: Mr. Lollar?

MR. LOLLAR: We do have a challenge for

**258**

cause.

THE COURT: Okay. Go ahead and dictate it into the record.

MR. LOLLAR: The juror has indicated to us that she would never find any mitigating circumstances sufficient to avoid the death sentence if she found the defendant guilty and found the answer to Special Issue Number 1 to be yes.

THE COURT: Okay.

MS. HANDLEY: I think the question is would she consider it, and she said she would consider it. We can't pin her down to what she will or won't find mitigating at this point.

THE COURT: Okay. I'm going to grant the defendant's challenge for cause. Okay.

THE BAILIFF: Are you ready for Ms. Gruenau?

THE COURT: Yeah, bring her in.

(Venireperson Gruenau enters courtroom.)

THE COURT: Ms. Gruenau, just come in and have a seat again here briefly, if you would. And I just wanted to bring you back and thank you for being here with us today and going through this and --

VENIREPERSON GRUENAU: Sure.

THE COURT: -- I know it's not an easy

**259**

exercise, and we appreciate your being here. And I thank you on behalf of myself and on behalf of Judge Snipes --

VENIREPERSON GRUENAU: Okay.

THE COURT: -- and all the attorneys that have participated in this. I'm going to excuse you from any further jury service in this case. All right?

VENIREPERSON GRUENAU: All right.

MR. LOLLAR: Thank you.

MS. HANDLEY: Thanks, appreciate it.

THE COURT: Thank you so much for being here.

We are done for the day. Thank you.

(End of proceedings, 2:26 p.m.)

**260**

C E R T I F I C A T E

THE STATE OF TEXAS   )

COUNTY OF DALLAS     )

I, Heather H. Vezina, Deputy Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE 11th DAY OF December, 2009.

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

261

DISCLOSURE

Note: Supreme Court Rule Adopted and Promulgated in Conformity with Chapter 52 of the Government Code, V.T.C.A.

Please be advised that pursuant to Supreme Court Rule IV, B.4. With regards to disclosure, I, to the best of my knowledge, have no existing or past financial, business, professional, family or social relationships with any of the parties or their attorneys which might reasonably create an appearance of partiality, except as follows:

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

always            262

------------------------
_____
**–**
_____
------------------------

**A**

**abide**  (17:7)(17:10)
(17:11)
**ability**  (139:25)
**able**  (45:23)(66:13)
(68:23)(70:7)(81:14)
(113:20)(117:20)(152:16)
(170:20)(171:7)(236:2)
(242:17)
**able-bodied**  (28:19)
(206:22)
**abolish**  (127:25)
**above**  (260:7)
**above-entitled**  (1:19)
**above-styled**  (260:11)
**absence**  (112:13)(241:10)
**absentee**  (141:23)
**absolutely**  (19:15)
(21:17)(22:12)(23:11)
(23:12)(23:15)(38:1)
(41:1)(42:12)(46:13)
(56:10)(56:21)(63:8)
(63:10)(66:17)(70:24)
(77:1)(91:10)(91:11)
(107:3)(208:5)(217:15)
**absorption**  (11:15)
**abuse**  (89:2)(89:3)
(168:21)
**abused**  (94:16)(94:17)
**acceptable**  (96:1)(248:5)
**accepted**  (3:9)(3:11)
**accident**  (26:4)(74:2)
(74:14)(217:7)
**accidental**  (25:23)
**accidentally**  (235:16)
**according**  (70:2)(71:25)
**account**  (98:22)(228:6)
(230:24)
**accountant**  (110:5)
**accountants**  (118:23)
**accounting**  (110:22)
(118:21)(125:10)
**accounts**  (100:3)(177:8)
(177:13)
**accused**  (65:14)(65:22)
(65:23)(68:15)(71:24)
(89:19)
**across**  (116:19)(116:24)
**act**  (38:8)(38:13)(52:17)
(68:12)(166:16)(222:14)
(222:20)(223:1)(224:2)
(246:20)(255:24)
**acted**  (53:3)(68:15)
**acting**  (43:16)(74:4)
**actions**  (235:25)(236:5)
**active**  (45:12)(46:5)
(46:19)(227:23)
**acts**  (35:25)(36:3)(38:3)
(39:10)(73:21)(77:2)
(77:3)(81:15)(82:9)(92:4)
(133:4)(133:25)(152:12)
(160:1)(161:5)(161:8)
(221:6)(222:10)(256:5)
**actual**  (46:3)(132:6)
(143:15)(227:23)
**actually**  (24:21)(25:8)
(28:2)(28:21)(29:12)
(31:18)(33:11)(35:15)
(45:19)(50:20)(65:23)
(67:8)(67:19)(99:14)
(112:4)(116:20)(117:22)
(132:18)(136:5)(143:19)
(149:10)(155:23)(156:12)

(157:5)(158:23)(169:5)
(171:20)(203:3)(207:20)
(217:22)(218:21)(225:6)
(227:15)(227:16)(240:19)
**added**  (208:18)
**additional**  (26:16)
(31:16)(35:5)(83:16)
(83:19)(201:12)
**addressed**  (102:9)(194:14)
**adjourned**  (4:13)
**administered**  (10:13)
(102:12)(194:21)
**admit**  (94:4)
**admonish**  (99:25)
**adopted**  (261:2)
**adult**  (229:22)
**adults**  (88:3)
**advance**  (101:17)(176:12)
**advised**  (261:5)
**advocate**  (54:19)
**affect**  (114:14)(121:5)
(130:15)
**afford**  (65:14)
**african-american**  (120:12)
**african-americans**
**after**  (15:9)(47:11)
(62:1)(62:2)(63:1)(69:5)
(113:8)(115:15)(139:18)
(152:19)(230:7)(240:23)
(250:18)(255:23)
**afternoon**  (179:5)
(179:16)(179:17)(181:15)
(182:23)(184:18)(186:10)
(186:11)(188:16)(190:3)
(193:25)(195:17)
**afterwards**  (123:25)
**again**  (9:20)(12:8)(14:3)
(17:13)(17:22)(24:15)
(35:1)(35:3)(47:7)(47:9)
(49:4)(61:14)(68:15)
(69:3)(80:24)(88:25)
(96:10)(104:24)(106:10)
(112:25)(114:16)(117:6)
(118:4)(120:5)(124:4)
(130:11)(135:9)(136:23)
(139:8)(139:23)(141:21)
(143:4)(153:21)(156:10)
(158:22)(163:1)(164:14)
(165:20)(165:21)(167:1)
(201:12)(205:16)(214:3)
(214:17)(225:14)(227:19)
(228:25)(229:1)(232:11)
(235:10)(235:12)(243:4)
(248:4)(258:21)
**against**  (8:23)(14:19)
(21:25)(22:8)(23:9)(38:7)
(119:20)(130:22)(141:3)
(141:4)(141:13)(141:19)
(141:20)(164:8)(211:15)
(213:2)(213:10)(234:8)
(234:11)(234:14)(234:17)
(234:18)(235:4)(244:3)
**age**  (26:12)(87:21)
(87:24)(87:25)(88:1)
(88:3)(94:14)(126:5)
(165:13)(165:16)(165:22)
(203:7)(233:12)
**aggravated**  (129:13)
**aggravating**  (26:18)
(26:24)(27:10)(27:14)
(31:16)(48:24)(49:1)
(203:3)(203:11)(203:13)
(204:14)(204:17)(217:3)
(230:5)
**aggressive**  (137:19)
**ago**  (10:7)(102:5)
(122:19)(185:21)(189:11)

(190:8)(194:11)(239:25)
**agree**  (17:1)(17:3)
(17:20)(25:13)(25:15)
(37:24)(40:25)(43:24)
(49:21)(49:23)(50:23)
(51:18)(59:24)(60:6)
(60:19)(70:21)(86:9)
(86:15)(162:3)(166:8)
(168:19)(171:2)(202:21)
(203:24)(209:12)(211:6)
(212:12)(222:5)(229:18)
(244:10)(244:24)(247:5)
**agreed**  (246:21)
**agreeing**  (201:24)
**agreement**  (70:12)
**ahead**  (59:8)(79:14)
(93:23)(96:9)(101:3)
(153:21)(155:21)(158:3)
(175:1)(176:13)(178:15)
(179:7)(181:17)(184:20)
(238:24)(258:2)
**aided**  (227:9)
**aiding**  (43:20)
**alaina**  (3:17)(4:10)
(184:14)(184:25)(185:1)
(185:3)(185:5)(186:6)
(188:5)
**alcohol**  (51:1)(52:2)
(231:7)(231:19)(246:5)
(246:9)(246:17)
**alike**  (19:18)(29:1)
(204:9)(204:10)(204:11)
**alive**  (190:21)(208:8)
**all**  (5:4)(7:15)(7:18)
(7:24)(8:1)(8:19)(9:3)
(9:6)(9:10)(9:17)(10:10)
(11:14)(13:18)(14:10)
(16:23)(18:19)(19:1)
(19:4)(19:20)(19:22)
(20:18)(22:4)(22:17)
(23:4)(31:22)(32:20)
(35:2)(35:4)(35:8)(43:10)
(47:6)(47:8)(49:2)(53:10)
(54:10)(55:3)(55:12)
(56:9)(59:2)(59:9)(59:10)
(61:5)(63:1)(63:7)(63:9)
(63:19)(63:20)(63:21)
(64:20)(65:5)(65:7)
(65:11)(65:12)(67:4)
(68:2)(68:25)(69:17)
(69:18)(71:4)(74:22)
(74:23)(78:1)(79:6)
(82:17)(83:21)(83:24)
(89:8)(89:11)(89:20)
(91:17)(92:1)(93:3)(93:5)
(93:10)(93:15)(94:7)
(94:12)(94:22)(96:5)
(97:5)(100:12)(100:16)
(100:25)(101:7)(102:5)
(102:20)(104:10)(105:11)
(106:3)(106:11)(110:1)
(112:10)(112:18)(113:13)
(113:16)(116:11)(118:21)
(118:22)(120:7)(121:20)
(122:6)(126:9)(127:21)
(129:10)(129:12)(129:14)
(130:2)(131:9)(136:8)
(137:17)(139:9)(141:11)
(142:5)(142:10)(143:25)
(144:17)(145:7)(146:1)
(148:22)(150:14)(152:19)
(153:2)(153:10)(154:6)
(154:14)(156:22)(166:8)
(169:23)(170:5)(171:22)
(172:10)(173:15)(173:17)
(174:2)(174:5)(174:7)
(174:12)(174:16)(174:22)

(177:18)(178:10)(180:18)
(181:12)(182:1)(182:16)
(184:9)(184:15)(186:1)
(187:10)(188:9)(188:22)
(190:5)(192:3)(192:19)
(192:25)(193:2)(193:20)
(195:2)(195:9)(195:11)
(195:15)(195:25)(196:22)
(197:2)(197:13)(197:14)
(200:8)(201:14)(202:10)
(203:19)(204:4)(204:6)
(205:15)(208:18)(208:20)
(210:18)(211:1)(211:24)
(213:4)(213:13)(213:19)
(214:25)(216:4)(218:16)
(219:7)(224:15)(227:2)
(228:10)(228:23)(228:25)
(229:18)(232:11)(233:18)
(237:15)(237:17,(238:5)
(238:15)(239:4)(242:4)
(242:13)(243:4)(243:11)
(245:10)(247:16)(248:2)
(248:5)(250:2)(254:4)
(257:10)(259:4)(259:6)
(259:7)(260:8)(260:11)
**allege**  (67:17)
**alleged**  (27:9)(248:20)
**alleges**  (20:25)(213:17)
(213:24)
**allowed**  (148:1)
**allows**  (68:3)(148:11)
**almost**  (65:10)(65:12)
(109:3)(110:1)(141:25)
(164:19)(204:9)(236:19)
**alone**  (238:11)
**along**  (13:6)(130:3)
(176:10)
**alphabetical**  (4:1)
**already**  (14:19)(14:25)
(18:2)(24:5)(39:21)
(42:14)(81:12)(118:19)
(148:23)(158:7)(163:10)
(163:13)(167:21)(175:25)
(191:13)(191:21)(192:13)
(199:5)(206:9)(220:9)
(226:3)(238:1)(257:5)
**also**  (6:25)(10:3)(10:22)
(14:24)(17:3)(18:3)
(19:18)(23:21)(24:18)
(26:8)(26:24)(35:15)
(38:25)(39:4)(39:18)
(40:6)(46:18)(47:4)
(47:15)(49:21)(50:17)
(52:2)(82:10)(90:3)
(99:12)(102:24)(104:11)
(110:21)(111:2)(112:16)
(119:17)(122:12)(125:10)
(133:21)(135:24)(141:25)
(158:21)(161:5)(161:16)
(170:8)(177:11)(191:1)
(194:19)(195:7)(208:7)
(212:18)(213:13)(215:18)
(216:3)(223:9)(223:15)
(224:22)(228:19)(236:18)
(238:4)(246:25)
**although**  (75:3)(145:5)
(170:8)
**always**  (19:6)(19:7)
(20:7)(21:18)(23:18)
(25:22)(25:25)(28:12)
(30:20)(30:23)(37:14)
(62:8)(65:13)(75:4)(77:4)
(120:7)(120:25)(123:2)
(123:5)(123:6)(123:7)
(123:9)(123:10)(123:18)
(124:1)(124:5)(124:16)
(125:11)(134:23)(134:24)

amendment                                                                                    assessed    263

(147:6) (157:24) (202:14)
(202:15) (212:5) (216:12)
(221:15) (232:22) (235:10)
(235:18) (235:19) (237:20)
(253:25) (254:1) (255:5)
amendment (212:19)
amendments (95:3)
amongst (129:7) (129:16)
(130:2)

—

-and- (2:4) (2:5) (2:15)
(2:19)

A

andrea (2:3) (13:1)
(105:4) (107:9) (115:21)
(196:17) (198:2)
another (7:8) (7:10)
(13:6) (14:22) (17:7) (18:6)
(21:1) (26:15) (36:24)
(38:4) (38:5) (64:10)
(69:25) (73:8) (73:10)
(73:22) (76:24) (76:25)
(139:18) (140:20) (146:11)
(156:25) (158:12) (203:9)
(213:21) (213:25) (222:11)
(245:23)
another's (245:16)
answer (12:12) (12:17)
(12:18) (12:19) (33:7)
(33:16) (35:18) (35:19)
(36:9) (39:17) (40:9)
(41:17) (41:18) (42:11)
(42:13) (42:21) (43:1)
(46:12) (46:15) (49:23)
(56:23) (59:23) (72:16)
(72:21) (76:1) (76:20)
(77:5) (77:11) (78:4)
(80:22) (81:8) (92:5) (94:4)
(103:2) (132:20) (134:1)
(135:3) (152:13) (161:17)
(169:8) (169:18) (170:10)
(170:11) (171:8) (221:3)
(224:21) (225:7) (225:12)
(226:1) (226:12) (228:2)
(228:3) (245:15) (249:17)
(251:3) (251:17) (252:7)
(258:7)
answered (36:25) (39:22)
(46:18) (79:11) (91:1)
(91:18) (104:21) (163:20)
(219:1)
answering (57:12) (78:16)
(81:4) (82:1) (87:18) (88:2)
(92:3) (94:7) (132:18)
(134:21) (218:25) (224:3)
(257:6)
answers (10:21) (12:5)
(12:9) (12:11) (59:21)
(63:20) (63:21) (94:1)
(102:23) (104:2) (104:24)
(114:16) (119:18) (156:23)
(185:25) (190:16) (195:6)
(196:8) (251:10) (251:11)
(252:10) (252:14)
anticipate (45:20) (97:7)
(97:15) (175:20)
anticipated (45:16)
(45:24) (46:6) (227:17)
anxious (18:12) (18:14)
(54:8)
any (7:7) (7:20) (8:25)
(12:5) (16:8) (17:8) (19:12)
(19:14) (24:9) (28:15)
(28:17) (29:10) (31:18)
(32:14) (32:15) (33:18)

(44:21) (45:22) (53:17)
(55:14) (56:1) (58:24)
(59:21) (61:14) (67:11)
(71:24) (73:9) (75:17)
(80:19) (80:20) (84:23)
(88:16) (89:24) (97:17)
(98:18) (99:13) (99:17)
(99:18) (99:22) (100:10)
(106:21) (110:8) (112:19)
(127:12) (139:10) (148:5)
(157:8) (167:3) (172:24)
(176:4) (176:11) (176:21)
(177:12) (179:24) (180:9)
(180:23) (183:13) (186:20)
(186:25) (188:1) (190:16)
(192:1) (196:8) (198:22)
(199:1) (204:3) (204:6)
(206:4) (206:5) (206:6)
(212:2) (212:14) (214:20)
(215:3) (217:13) (219:3)
(227:1) (227:25) (230:12)
(233:25) (235:24) (238:1)
(245:2) (245:3) (252:14)
(256:10) (258:5) (259:6)
(260:15) (261:9)
anybody (14:23) (18:14)
(44:16) (76:23) (80:19)
(80:20) (116:25) (117:2)
(126:9) (129:4) (133:8)
(140:3) (142:21) (168:14)
(171:9)
anybody's (91:4)
anymore (115:14)
anything (11:11) (24:7)
(35:21) (48:6) (58:1)
(58:20) (58:25) (60:21)
(71:9) (84:4) (89:16)
(95:17) (98:15) (98:25)
(101:8) (108:11) (115:4)
(120:23) (121:17) (130:15)
(138:1) (144:6) (148:12)
(148:16) (148:19) (150:17)
(152:2) (155:12) (157:21)
(166:17) (167:2) (172:6)
(174:2) (176:17) (176:21)
(176:22) (176:24) (177:9)
(177:13) (177:19) (177:22)
(196:12) (196:15) (205:2)
(212:9) (219:11) (222:2)
(224:12) (233:3) (238:7)
(255:23) (256:24) (257:12)
anything's (37:21)
anytime (37:14) (221:11)
anyway (10:22) (22:9)
(75:9) (98:3) (100:6)
(102:1) (102:4) (102:23)
(124:6) (135:13) (135:16)
(194:9) (195:7) (213:11)
anywhere (130:14)
(205:14) (206:20)
apart (109:13)
apologize (187:2)
appeals (75:13)
appear (120:9)
appearance (261:10)
appearing (2:10) (2:24)
appears (119:22) (183:2)
(186:13) (191:2) (248:4)
applied (19:20) (140:8)
applies (19:21) (33:18)
(33:23) (158:6)
apply (19:22) (22:13)
(51:17) (55:15) (203:18)
(203:19) (210:16)
appreciate (6:11) (8:16)
(14:5) (17:2) (18:16)
(51:20) (57:15) (100:17)

(112:6) (112:8) (162:22)
(180:12) (183:23) (187:16)
(187:19) (192:4) (197:17)
(238:11) (249:17) (259:1)
(259:9)
appreciate that (114:23)
appreciation (199:12)
appropriate (7:2) (15:2)
(16:24) (18:7) (60:23)
(72:10) (139:12) (141:15)
(170:12) (170:13) (171:8)
(173:23) (190:11) (200:17)
(219:20) (219:21) (219:25)
(256:13)
archives (99:6) (177:7)
are (5:7) (5:18) (6:1)
(6:21) (9:6) (9:12) (9:15)
(11:6) (11:7) (12:1) (12:21)
(12:25) (13:5) (14:10)
(14:12) (14:13) (15:1)
(15:9) (16:24) (17:23)
(18:12) (18:18) (18:23)
(19:18) (19:22) (19:24)
(22:12) (27:17) (27:19)
(29:1) (31:18) (32:6) (35:8)
(36:17) (37:11) (37:15)
(38:7) (39:2) (39:24)
(43:15) (56:16) (56:19)
(56:23) (58:22) (59:20)
(62:19) (63:6) (66:13)
(67:10) (67:11) (69:3)
(71:8) (71:22) (72:15)
(76:8) (80:25) (83:5) (83:7)
(83:9) (84:23) (87:24)
(88:24) (94:10) (94:22)
(101:3) (102:22) (103:13)
(103:16) (105:12) (105:14)
(105:25) (106:10) (106:13)
(107:11) (107:19) (109:7)
(109:10) (109:17) (111:14)
(113:16) (113:19) (115:1)
(115:5) (117:15) (117:22)
(118:17) (118:23) (118:24)
(119:20) (121:15) (122:14)
(123:17) (123:21) (125:7)
(125:18) (125:19) (125:20)
(125:23) (126:1) (126:4)
(126:5) (126:22) (126:25)
(128:3) (128:23) (129:10)
(129:16) (129:17) (129:18)
(131:11) (133:11) (133:18)
(135:4) (136:6) (136:7)
(137:18) (137:24) (141:19)
(142:12) (142:17) (143:11)
(143:18) (144:6) (146:14)
(148:1) (149:4) (149:20)
(150:1) (152:16) (153:3)
(153:10) (154:13) (154:15)
(155:17) (156:9) (161:22)
(165:9) (165:22) (166:4)
(169:16) (169:17) (178:12)
(181:8) (181:14) (184:17)
(186:15) (192:23) (193:5)
(193:6) (195:16) (195:18)
(196:19) (197:3) (197:9)
(197:22) (198:14) (198:25)
(199:14) (200:25) (201:21)
(202:11) (203:18) (203:22)
(204:9) (205:1) (205:20)
(205:23) (206:19) (210:15)
(210:19) (212:16) (214:21)
(214:22) (214:23) (215:16)
(215:21) (216:1) (219:1)
(219:3) (219:25) (220:16)
(221:14) (221:15) (224:17)
(225:6) (225:9) (229:22)
(232:15) (232:16) (233:7)

(234:24) (240:5) (240:14)
(243:13) (243:15) (248:17)
(254:7) (254:21) (254:22)
(255:18) (256:12) (258:16)
(259:12)
are -- are (116:12)
area (120:6)
aren't (96:24) (105:14)
(168:5) (168:8) (175:12)
(209:9) (223:15) (223:18)
(235:14) (235:17)
argue (123:16)
argument (119:20) (234:8)
(234:11) (234:13) (234:18)
(234:19) (244:1) (244:3)
arms (30:7) (208:16)
around (29:17) (54:23)
(75:6) (89:21) (112:7)
(130:1) (150:14) (151:8)
(208:1) (233:3) (238:10)
arrested (66:3)
arrive (218:24)
arrived (201:23) (201:24)
articles (99:9) (99:17)
(177:7) (245:3)
articulate (38:7) (171:7)
(171:9)
aside (81:9)
ask (12:7) (12:8) (16:12)
(35:14) (40:7) (48:1) (49:4)
(50:8) (52:5) (53:25)
(58:17) (59:6) (63:19)
(88:25) (90:21) (93:7)
(96:16) (97:6) (103:19)
(104:21) (113:19) (132:24)
(133:23) (135:25) (151:1)
(153:9) (159:24) (177:14)
(195:24) (214:21) (233:11)
(235:14) (236:22) (237:4)
(244:21) (246:2) (249:7)
asked (7:6) (9:25) (10:12)
(10:23) (17:3) (17:15)
(18:3) (24:23) (24:25)
(49:14) (50:17) (75:4)
(91:24) (101:20) (102:10)
(102:25) (113:22) (119:19)
(136:11) (136:13) (146:5)
(169:5) (188:25) (194:2)
(195:8) (202:1) (202:7)
(215:24) (215:25) (224:18)
(230:14) (234:11) (236:19)
(243:25) (244:2) (245:2)
(245:12)
asking (11:23) (35:1)
(35:3) (36:2) (36:5) (41:3)
(46:2) (75:2) (79:7) (79:8)
(81:1) (84:6) (94:23)
(134:9) (136:11) (137:11)
(237:8)
asks (141:5) (141:6)
aspects (11:5) (11:25)
(103:12) (103:24) (147:25)
(195:23) (196:6)
assault (38:6) (203:10)
(222:12)
assaulted (78:13) (78:14)
(80:20)
assaultive (130:19)
assaults (75:15)
assess (28:23) (56:2)
(62:4) (70:21) (114:5)
(134:10) (205:7) (205:11)
(206:20) (209:23) (243:12)
(245:25) (249:10) (249:14)
(249:24) (252:18)
assessed (7:3) (15:18)
(128:22) (179:25) (186:21)

(190:13)

**assessing** (248:12) (248:13)

**asset** (207:23)

**assist** (9:25) (101:21) (153:15) (188:25) (194:2)

**assistant** (2:7) (2:21) (13:5) (105:12) (107:10) (197:3) (198:3)

**assisted** (227:10)

**assisting** (5:21) (43:20) (101:25) (181:20) (185:10)

**assume** (90:22) (90:24) (91:17) (166:2)

**assumed** (237:7)

**assuming** (160:22) (162:15) (232:25)

**assumption** (16:2) (18:22) (164:20) (166:1)

**assumptions** (16:8) (206:5)

**assure** (187:1)

**ate** (126:25)

**atmosphere** (256:9)

**attempting** (26:15) (203:9) (244:13)

**attend** (111:23)

**attention** (113:21) (242:18)

**attorney** (2:13) (2:17) (107:10) (198:3)

**attorneys** (2:7) (10:23) (11:7) (12:25) (13:6) (13:16) (93:9) (102:25) (105:4) (105:12) (105:25) (174:9) (179:8) (182:2) (189:14) (195:9) (195:16) (195:18) (196:16) (197:3) (197:9) (211:3) (257:16) (259:4) (261:9)

**attorney's** (2:7)

**audible** (12:9) (12:19)

**auditors** (118:22)

**august** (97:8) (97:25) (107:20) (112:2) (175:21) (176:3) (240:6)

**automatic** (16:18) (19:13) (25:7) (27:4) (34:4) (45:18) (116:15) (201:22) (201:25) (206:4) (218:12) (250:14)

**automatically** (15:8) (23:18) (24:6) (36:25) (39:24) (56:16) (56:23) (77:11) (91:5) (116:17) (218:14) (218:15) (220:15) (225:6) (225:17) (251:2) (251:16) (251:23) (251:25)

**available** (25:1) (61:12) (176:6) (176:17) (189:16) (202:8) (244:8)

**average** (216:2)

**avoid** (258:6)

**avoided** (116:8)

**awake** (101:11) (107:6)

**aware** (103:10) (129:9) (175:20) (240:15)

**away** (139:22) (147:14)

---

**B**

---

**bachelor** (110:22)

**back** (15:14) (20:7) (22:3) (27:11) (30:4) (33:2) (44:13) (47:7) (49:3) (57:25) (62:25) (72:9) (75:6) (76:6) (92:8) (93:9) (96:5) (99:5) (100:9) (104:11) (108:4) (109:24) (130:11) (132:16) (150:18)

(170:16) (171:22) (174:9) (174:23) (177:6) (178:7) (204:15) (208:14) (213:5) (218:17) (228:25) (230:8) (239:18) (258:22)

**background** (48:12) (50:4) (84:8) (85:1) (94:9) (94:15) (141:13) (142:3) (167:20) (172:12) (228:12) (229:3)

**backyard** (130:1)

**bad** (12:21) (29:21) (48:24) (50:8) (101:11) (130:17) (135:5) (135:6) (135:10) (135:11) (136:2) (136:3) (136:16) (137:22) (138:1) (138:2) (138:3) (139:19) (164:21) (168:14) (168:18) (206:15) (206:17) (207:7)

**bailiff** (5:4) (9:10) (93:8) (96:7) (100:25) (153:15) (174:8) (174:24) (178:10) (181:7) (181:12) (184:15) (188:9) (192:21) (193:2) (257:15) (258:16)

**bake** (126:5)

**bake-off** (126:10)

**bakery** (126:6)

**ball** (222:18)

**balled** (38:11)

**banker's** (74:8)

**bar** (106:23) (246:13)

**base** (16:7) (18:21) (19:1) (19:2) (82:14) (149:1) (199:18) (200:9) (201:15) (210:4) (237:22) (252:18)

**based** (32:17) (39:16) (68:5) (69:8) (70:11) (70:13) (70:18) (72:6) (76:13) (76:18) (94:1) (117:20) (132:20) (151:24) (162:8) (170:2) (183:2) (191:12) (200:12) (200:16) (205:17) (210:5) (227:19) (231:5) (248:25)

**basically** (43:13) (47:5) (51:8) (76:19) (82:19) (89:21) (118:19) (119:15) (141:17) (142:5) (142:9) (160:22) (164:17) (212:21) (213:3) (226:14) (228:23)

**basis** (134:22) (134:24) (150:14) (192:12)

**bass** (44:12)

**battles** (89:12)

**beat** (131:19)

**became** (246:19)

**become** (34:19) (96:25) (132:16) (146:20)

**becomes** (39:8) (112:9) (209:23) (230:2) (235:24) (249:6)

**bed** (29:24) (208:9)

**been** (10:20) (15:23) (20:3) (20:5) (29:13) (29:14) (33:25) (41:8) (44:2) (52:1) (63:4) (63:5) (66:3) (73:4) (78:13) (80:17) (80:21) (83:4) (83:22) (85:13) (85:20) (89:19) (94:16) (95:13) (96:14) (102:4) (102:22) (106:13) (116:8) (117:11) (117:14) (117:17) (123:1) (127:8) (139:22) (142:10) (143:4) (156:13) (175:2) (182:10) (183:15) (187:3)

(194:11) (195:4) (201:4) (204:9) (204:10) (204:11) (207:21) (207:22) (207:23) (208:3) (211:1) (211:4) (225:19) (231:8)

**before** (1:21) (11:11) (15:13) (19:4) (19:7) (20:6) (23:19) (23:24) (32:21) (35:4) (41:5) (41:9) (42:6) (48:15) (50:15) (51:15) (55:19) (57:9) (61:23) (65:5) (68:24) (69:6) (78:13) (78:14) (80:18) (80:19) (83:4) (90:19) (95:21) (99:14) (134:14) (157:5) (200:20) (210:14) (224:1) (231:21) (235:13)

**begin** (97:8) (120:24) (139:19) (182:3)

**beginning** (50:20) (219:8) (221:10)

**behalf** (2:10) (2:24) (259:2)

**behavior** (130:19)

**behind** (152:22)

**being** (6:11) (7:9) (7:10) (7:25) (8:17) (14:5) (18:4) (19:25) (25:24) (39:21) (73:8) (76:24) (99:4) (109:5) (112:23) (122:12) (123:21) (136:5) (136:10) (136:13) (140:6) (147:16) (154:2) (155:3) (155:4) (164:18) (164:21) (175:17) (179:4) (180:12) (180:15) (188:16) (192:4) (209:5) (240:12) (243:10) (244:15) (246:8) (249:17) (254:19) (258:22) (259:1) (259:10)

**beings** (65:21) (76:16) (131:9) (150:23)

**belief** (63:25) (92:11) (171:15) (183:2)

**beliefs** (7:7) (7:11) (87:3) (184:6) (234:24) (248:6) (248:10)

**believe** (6:22) (7:2) (15:5) (23:18) (24:14) (27:12) (33:7) (37:1) (50:19) (60:7) (60:22) (61:12) (62:3) (62:23) (63:17) (63:19) (64:19) (65:12) (68:11) (70:7) (76:14) (77:6) (79:22) (82:19) (87:1) (87:6) (87:7) (90:5) (91:19) (93:3) (93:18) (94:22) (95:11) (95:22) (98:12) (107:22) (110:22) (112:2) (114:1) (114:21) (118:2) (123:9) (131:9) (133:24) (139:13) (140:5) (140:21) (152:20) (170:11) (179:22) (187:10) (190:11) (191:16) (216:13) (216:23) (245:10) (245:11)

**believed** (92:2)

**believes** (86:1) (118:3)

**believing** (116:5) (139:21)

**below** (205:3)

**besides** (224:22) (224:25)

**best** (34:4) (52:7) (52:8) (78:6) (79:11) (83:11) (107:22) (119:19) (128:11) (139:20) (146:12) (154:24) (155:15) (234:11) (241:14) (243:25) (261:6)

**better** (17:16) (29:20)

(49:22) (50:14) (54:21) (88:24) (115:5) (115:18) (115:25) (124:4) (128:14) (156:13) (235:6)

**between** (37:20) (70:3) (85:17) (88:13) (98:8) (148:23) (160:8) (234:5) (248:12)

**beyond** (20:12) (21:3) (22:6) (32:4) (34:20) (35:24) (37:13) (37:18) (46:15) (55:22) (65:4) (72:14) (76:14) (89:24) (122:21) (152:4) (152:10) (157:16) (158:16) (159:25) (161:6) (162:20) (173:15) (201:3) (211:17) (211:24) (213:7) (213:18) (217:20) (220:11) (221:11) (221:13) (221:22) (253:4)

**bias** (8:23) (14:19) (24:6) (24:10)

**bicycle** (210:18)

**bifurcated** (31:17) (200:24) (219:6)

**big** (6:15) (54:19) (67:14) (110:9) (112:11) (113:9) (125:22) (126:12) (126:15) (135:23) (136:22) (167:5) (167:6) (167:18) (179:20) (232:8)

**big-picture** (125:7) (125:19)

**binding** (252:13)

**birth** (49:18) (49:25) (247:19)

**bit** (19:17) (23:1) (24:17) (39:18) (58:9) (59:13) (60:16) (60:17) (64:18) (75:8) (80:6) (80:13) (83:2) (106:12) (106:16) (107:14) (108:19) (108:21) (111:8) (112:20) (113:3) (122:1) (126:21) (130:19) (135:25) (147:17) (154:3) (158:4) (169:13) (191:3) (198:9) (200:22) (207:18) (240:24)

**blame** (50:25)

**blessed** (144:19)

**board** (158:21)

**bob** (58:1)

**body** (25:12)

**boehme** (3:19) (4:4) (188:8) (188:10) (188:11) (188:12) (188:14) (188:17) (188:19) (188:21) (188:22) (189:2) (189:7) (189:12) (189:17) (189:24) (190:3) (192:4) (192:6) (192:8) (192:17)

**b-o-e-h-m-e** (188:19) (192:18)

**bog** (75:24)

**book** (101:6)

**books** (110:25) (245:3)

**botanical** (240:4)

**both** (16:4) (30:17) (53:20) (88:15) (88:18) (91:18) (126:4) (126:17) (149:19) (150:4) (166:23) (209:8) (243:5)

**bottle** (30:5) (208:14)

**bottom** (49:17) (50:21) (145:25) (244:21)

**boulevard** (2:9) (2:22) (260:21) (261:19)

**boy** (28:22) (29:3) (29:5)

boy's                                                                                                    case        265

(29:13)(29:14)(29:17)
(29:18)(30:7)(66:5)
(126:4)(149:14)(149:16)
(206:25)(207:1)(207:21)
(208:1)(208:2)(208:11)
(208:13)(208:17)(209:3)
boy's   (29:24)(207:24)
brad   (2:12)(13:10)
(105:18)(197:7)(239:17)
brand-new   (129:12)
break   (107:24)(238:17)
breakfast   (106:16)
briefcase   (25:10)(202:19)
briefly   (5:24)(11:4)
(95:10)(248:17)(258:21)
bring   (93:9)(96:5)
(110:25)(150:17)(174:9)
(174:22)(181:11)(183:15)
(187:4)(192:25)(212:6)
(212:7)(224:16)(226:25)
(228:25)(252:12)(258:18)
(258:22)
bringing   (14:11)(167:2)
(198:7)
brings   (55:7)(117:12)
broadnax   (1:7)(13:18)
(64:24)(66:15)(106:1)
(157:9)(157:18)(197:10)
(239:18)
broadnax's   (95:2)
brother   (148:13)
brought   (14:8)(85:16)
(101:10)(212:10)
bucks   (148:15)
building   (2:8)(2:22)
(110:14)
bullets   (44:13)(226:20)
bunch   (113:12)(113:18)
(216:21)
burden   (20:8)(31:25)
(64:21)(77:25)(78:1)
(83:5)(110:9)(157:24)
(162:20)(205:3)(212:5)
(212:8)(237:19)(238:6)
(250:9)(253:2)(253:7)
(254:5)
burdens   (238:5)
burden's   (161:11)
burglary   (203:10)
bus   (143:23)
business   (38:11)(107:24)
(108:13)(109:20)(109:21)
(202:20)(222:19)(261:8)
but   (7:3)(10:21)(10:22)
(11:22)(12:14)(13:7)
(15:18)(17:9)(17:19)
(18:5)(18:16)(20:3)
(20:24)(21:9)(21:10)
(21:17)(22:6)(22:24)
(24:1)(24:17)(24:23)
(25:8)(26:7)(26:24)(27:3)
(27:14)(27:23)(28:2)
(30:2)(33:10)(35:15)
(36:11)(39:4)(39:17)
(39:21)(40:6)(40:21)
(41:17)(43:15)(45:18)
(46:23)(48:12)(49:4)
(49:10)(49:21)(50:8)
(51:2)(51:10)(51:20)
(52:14)(53:2)(53:21)
(54:11)(54:21)(59:14)
(60:17)(63:13)(63:21)
(66:8)(67:20)(72:7)(76:3)
(76:10)(77:2)(77:14)
(78:12)(78:25)(79:1)
(80:13)(80:16)(81:21)
(81:24)(83:11)(84:25)

(85:17)(87:15)(89:16)
(92:18)(92:23)(97:20)
(100:6)(102:23)(104:16)
(104:24)(105:14)(106:12)
(106:17)(106:21)(107:6)
(107:18)(108:12)(108:16)
(108:20)(109:16)(110:4)
(110:8)(111:7)(111:17)
(111:23)(112:25)(114:10)
(114:22)(115:14)(115:18)
(115:21)(116:11)(117:6)
(118:7)(118:24)(120:1)
(120:7)(120:15)(121:21)
(121:24)(122:5)(123:13)
(124:4)(124:11)(125:5)
(126:20)(127:5)(127:10)
(127:13)(128:10)(128:22)
(129:6)(130:3)(133:21)
(134:11)(134:24)(135:6)
(135:24)(136:15)(139:17)
(140:4)(141:1)(141:23)
(141:24)(142:7)(142:10)
(142:22)(143:4)(143:6)
(143:10)(143:17)(143:20)
(143:22)(144:1)(144:9)
(144:18)(145:7)(147:8)
(147:13)(148:19)(149:10)
(149:18)(149:25)(150:3)
(150:18)(151:19)(154:24)
(156:11)(157:16)(159:19)
(160:7)(162:9)(162:19)
(163:19)(165:4)(165:13)
(165:25)(167:1)(167:16)
(169:3)(169:9)(169:13)
(169:15)(172:21)(173:9)
(176:2)(176:12)(185:18)
(187:2)(187:15)(190:12)
(190:18)(190:23)(191:18)
(195:7)(198:14)(200:2)
(200:8)(201:8)(203:1)
(204:12)(204:22)(205:16)
(207:6)(208:20)(209:11)
(209:14)(210:14)(211:1)
(211:12)(211:24)(213:8)
(214:3)(214:5)(215:2)
(215:13)(215:23)(216:9)
(217:8)(217:10)(221:2)
(224:15)(224:21)(225:25)
(227:16)(230:9)(230:17)
(231:6)(231:8)(231:20)
(232:19)(232:22)(233:9)
(236:10)(240:14)(241:10)
(241:17)(246:25)(248:3)
(248:10)(249:22)(251:9)
(252:14)(252:18)(253:19)
(253:25)(254:19)(255:19)
(256:2)(257:3)
buy   (44:13)(153:24)
(226:19)
buys   (44:12)(226:19)
bye-bye   (187:21)

C

cabinet   (208:14)
cadillac   (129:12)
cake   (126:5)(126:9)
(126:13)(126:15)(126:17)
(126:24)(127:1)(127:4)
calendar   (97:12)(100:7)
(176:14)
call   (35:15)(47:4)
(47:15)(74:7)(103:2)
(126:15)(129:7)(159:2)
(175:11)(205:1)(228:19)
(254:15)
called   (18:18)(20:24)
(27:24)(31:5)(31:6)

(31:17)(31:19)(32:6)
(43:12)(72:21)(131:17)
(200:24)(201:1)(201:19)
(204:22)(205:6)(205:11)
(206:20)(226:13)(232:4)
(240:15)(242:24)
calling   (198:5)
calls   (76:12)(94:8)
(148:20)
calm   (2:17)
came   (1:19)(6:14)
(175:16)(176:21)(198:18)
(254:25)
camps   (77:7)
can   (8:19)(14:14)(19:9)
(20:6)(20:9)(22:19)(23:8)
(28:11)(34:1)(36:8)
(36:11)(39:13)(39:15)
(39:17)(42:6)(43:3)
(43:14)(48:8)(48:11)
(51:1)(51:10)(52:14)
(52:17)(53:14)(56:8)
(66:12)(69:19)(75:15)
(77:11)(77:13)(79:11)
(80:13)(80:14)(82:24)
(85:12)(85:25)(90:19)
(95:11)(95:21)(109:16)
(109:18)(111:18)(112:7)
(113:22)(113:25)(114:10)
(114:22)(115:5)(124:22)
(125:5)(125:22)(125:24)
(128:17)(128:18)(130:5)
(130:15)(131:19)(138:11)
(138:25)(147:24)(151:25)
(156:22)(159:5)(160:19)
(160:24)(161:17)(166:9)
(168:14)(168:17)(168:18)
(172:13)(173:4)(173:5)
(180:6)(189:16)(190:22)
(190:24)(198:10)(200:19)
(203:24)(208:5)(211:11)
(213:11)(216:18)(218:1)
(220:5)(224:18)(224:19)
(227:11)(228:9)(230:18)
(231:11)(232:1)(232:10)
(232:22)(238:18)(239:20)
(241:20)(243:5)(243:7)
(247:2)(249:12)(249:19)
(250:25)(252:25)(253:6)
(254:9)(255:9)(255:17)
(256:14)(256:15)
cancer   (29:19)(55:7)
(208:4)
candid   (114:25)
candy   (106:23)
cannot   (75:14)(87:23)
(95:17)(161:25)(165:12)
(187:11)(202:24)(203:13)
(216:11)
can't   (12:14)(22:9)
(22:10)(23:9)(23:13)
(23:17)(25:19)(28:11)
(28:17)(37:4)(41:23)
(42:7)(42:8)(48:1)(67:5)
(69:16)(76:3)(76:5)(79:5)
(92:24)(106:21)(107:25)
(108:3)(140:3)(140:4)
(143:25)(148:5)(151:16)
(167:3)(200:19)(206:4)
(211:5)(211:13)(213:1)
(213:11)(216:21)(224:12)
(229:16)(235:25)(236:1)
(236:15)(256:14)(258:12)
capable   (76:16)(76:20)
(231:20)
capital   (9:24)(24:17)
(25:5)(25:21)(25:22)

(26:9)(26:19)(27:1)(27:2)
(27:10)(27:17)(31:4)
(31:6)(31:13)(31:14)
(32:6)(33:2)(33:25)
(43:25)(44:24)(45:8)
(45:15)(47:21)(56:15)
(64:5)(64:9)(71:7)(72:7)
(72:15)(74:23)(77:6)
(77:13)(79:23)(80:16)
(101:20)(103:13)(116:16)
(116:18)(128:16)(132:11)
(140:16)(141:7)(146:22)
(152:8)(158:8)(158:17)
(163:10)(170:17)(201:20)
(201:21)(202:13)(202:14)
(202:16)(202:25)(203:1)
(203:15)(204:13)(204:22)
(205:10)(206:15)(210:18)
(217:1)(217:24)(218:8)
(218:13)(220:4)(220:14)
(227:3)(227:7)(227:14)
(230:17)(231:4)(232:14)
(234:5)(235:15)(236:2)
(236:14)(244:13)(245:14)
(248:19)(249:23)(250:19)
capsim   (111:8)
car   (44:14)(57:25)
(142:23)(143:17)(143:19)
(148:14)(226:20)
care   (82:2)(101:22)
(184:13)(189:5)(194:5)
(199:3)
careful   (172:3)(172:4)
(172:5)(237:16)
carl   (3:10)(4:8)(106:6)
carry   (31:25)(205:3)
cas   (48:25)
case   (5:22)(9:25)(11:6)
(12:1)(13:1)(13:8)(13:18)
(14:13)(15:6)(15:13)
(15:17)(15:19)(15:23)
(15:25)(16:1)(16:3)(16:8)
(17:8)(17:11)(18:8)
(18:14)(19:2)(19:3)(19:4)
(19:14)(19:19)(19:21)
(20:24)(20:25)(21:7)
(21:15)(21:22)(22:3)
(22:15)(22:16)(22:17)
(22:18)(23:1)(23:13)
(24:10)(24:14)(24:15)
(24:16)(25:20)(27:12)
(27:24)(28:23)(30:21)
(31:3)(31:14)(32:15)
(32:18)(32:21)(35:3)
(36:14)(37:4)(41:13)
(42:14)(43:25)(45:21)
(46:23)(47:8)(47:19)
(47:23)(48:6)(48:9)
(48:20)(48:23)(50:2)
(50:3)(51:21)(53:14)
(53:21)(53:23)(53:25)
(54:25)(55:15)(56:6)
(56:8)(57:6)(62:15)(64:6)
(67:6)(67:12)(69:5)(69:8)
(69:25)(71:9)(75:12)
(78:11)(80:15)(87:17)
(89:17)(90:6)(95:16)
(96:15)(97:7)(97:8)
(97:15)(97:22)(98:13)
(99:5)(99:10)(101:20)
(103:25)(105:16)(106:2)
(107:12)(107:18)(107:19)
(107:23)(108:7)(113:21)
(114:15)(115:22)(115:23)
(116:19)(118:5)(118:9)
(120:12)(122:24)(124:20)
(132:9)(138:22)(148:11)

cases                                                                    consistent  266

(152:4)(152:5)(152:20)
(156:13)(158:12)(163:16)
(170:17)(171:23)(175:21)
(176:22)(180:22)(184:12)
(185:11)(187:11)(188:25)
(189:9)(190:23)(191:3)
(191:7)(191:13)(194:2)
(194:9)(195:23)(197:6)
(197:11)(198:5)(199:4)
(199:6)(199:18)(199:19)
(200:10)(200:13)(200:15)
(200:18)(201:14)(201:17)
(205:10)(206:6)(206:10)
(206:12)(206:19)(209:11)
(209:12)(210:8)(210:17)
(211:5)(213:4)(213:6)
(213:24)(214:9)(214:18)
(218:9)(218:12)(218:17)
(221:5)(226:15)(227:14)
(227:20)(227:24)(229:7)
(229:14)(230:17)(230:20)
(233:15)(233:16)(235:6)
(235:13)(235:24)(236:23)
(237:17)(237:23)(237:25)
(238:3)(239:22)(240:6)
(242:14)(243:8)(245:15)
(245:24)(248:11)(248:16)
(249:1)(250:9)(259:6)
cases   (7:3)(16:23)
(19:17)(19:20)(24:24)
(28:25)(31:3)(31:13)
(33:2)(54:13)(61:3)(61:5)
(62:1)(62:24)(116:11)
(121:6)(122:8)(122:18)
(123:1)(123:6)(123:17)
(156:9)(190:12)(198:11)
(200:24)(201:18)(201:19)
(202:1)(203:4)(204:4)
(204:7)(204:9)(204:12)
cases that   (117:15)
cash   (44:5)
categories   (48:20)(76:9)
categorize   (230:3)
category   (25:8)(25:21)
(28:10)(77:9)(77:21)
(203:4)
catholic   (6:22)
cause   (1:3)(1:20)(3:5)
(3:6)(3:8)(3:12)(3:13)
(3:15)(3:16)(3:17)(3:18)
(3:20)(3:21)(3:22)(3:23)
(8:21)(9:4)(26:3)(68:11)
(93:16)(93:21)(94:1)
(95:24)(136:10)(174:17)
(174:20)(180:19)(181:2)
(184:4)(184:11)(187:24)
(188:5)(192:10)(192:17)
(192:18)(257:22)(258:1)
(258:15)(260:11)
caused   (248:20)
causes   (136:7)
caution   (69:7)
centered   (142:2)
central   (10:10)(102:5)
(194:14)(239:14)
certain   (23:18)(71:23)
(104:20)(149:4)(182:4)
certainly   (24:13)(112:6)
(188:17)(249:22)
certificate   (4:14)
certification   (260:22)
(261:20)
certify   (260:6)(260:13)
challenge   (3:5)(3:8)
(3:12)(3:15)(3:17)(3:20)
(3:22)(8:21)(8:23)(9:4)
(93:16)(93:21)(93:25)

(95:23)(95:24)(174:17)
(174:20)(180:19)(180:21)
(181:1)(184:4)(184:11)
(187:24)(188:1)(188:4)
(192:10)(192:12)(192:16)
(192:18)(248:6)(257:21)
(257:25)(258:15)
challenges   (175:9)(184:5)
chambers   (260:12)
chance   (58:10)(71:18)
(157:2)(190:22)
change   (29:10)(49:22)
(50:14)(52:17)(83:8)
(91:25)(94:24)(118:11)
(207:17)(220:10)(220:11)
(220:12)(233:10)
changed   (87:4)(244:23)
(244:24)
changes   (136:16)(210:19)
chapter   (261:3)
character   (84:3)(84:4)
(84:8)(84:21)(85:1)(94:9)
(166:17)(167:20)(169:18)
(172:12)(228:11)(229:3)
charge   (31:21)(107:11)
(198:4)(201:4)(253:21)
(253:22)
charged   (13:6)(20:5)
(105:15)(191:14)(197:5)
(211:4)(236:14)
charges   (212:7)(212:11)
checking   (118:20)
child   (26:12)(89:2)
(136:2)(144:10)(150:2)
(203:6)
childhood   (136:16)
children   (223:19)
children's   (29:19)(208:3)
choice   (53:11)(137:15)
(151:9)(169:15)(205:9)
(248:12)(252:14)
choices   (138:14)(138:17)
(138:20)
choose   (231:19)
chooses   (50:24)
choosing   (171:14)(171:15)
chose   (231:15)
chosen   (18:5)
chronological   (3:1)
chunk   (126:12)(126:15)
church   (126:6)(171:14)
cigarettes   (50:6)(85:21)
circled   (6:5)(179:23)
(186:19)(190:9)
circumstance   (116:4)
(141:13)(146:24)(152:21)
(179:24)(188:2)(228:14)
(229:11)(229:17)(229:21)
circumstances   (14:16)
(15:1)(16:20)(40:2)(47:5)
(49:18)(49:24)(62:13)
(88:22)(92:23)(94:6)
(114:5)(172:11)(186:20)
(198:23)(204:6)(210:5)
(224:6)(228:11)(228:14)
(233:5)(243:12)(247:19)
(254:10)(256:11)(257:1)
(258:5)
citizen   (17:10)(29:15)
(65:14)(65:24)(216:2)
(236:21)(236:25)
citizens   (63:3)(65:22)
(215:12)
class   (111:6)
classes   (111:5)
classification   (129:5)
clean   (52:10)(52:11)

(74:9)(229:23)
clear   (33:10)
clearly   (39:22)
clergy   (39:5)(133:17)
(223:19)
clerical   (133:13)
clerk   (44:9)(44:21)
(44:22)(227:2)(227:4)
client   (106:2)
close   (41:12)(85:13)
(127:2)(139:22)(149:20)
(213:7)(213:8)(244:22)
closer   (134:2)(134:15)
closest   (190:17)
closet   (50:6)(85:20)
(89:14)
co-counsel   (25:11)(44:4)
(168:13)(202:19)(222:19)
code   (261:4)
coffee   (200:11)
coin   (82:8)
colleagues   (107:11)
(198:4)
collections   (109:1)
college   (108:15)
come   (5:7)(9:12)(11:16)
(18:8)(19:6)(19:12)
(22:21)(24:22)(75:6)
(76:5)(84:4)(89:21)
(108:4)(117:7)(121:6)
(126:12)(133:16)(133:17)
(133:19)(139:20)(140:12)
(150:2)(153:20)(178:12)
(181:14)(184:17)(188:12)
(193:8)(205:20)(205:22)
(212:12)(214:23)(215:15)
(223:15)(223:20)(234:13)
(234:25)(240:22)(258:20)
comes   (20:7)(22:19)
(22:24)(30:4)(47:3)
(94:23)(116:19)(116:24)
(124:5)(130:11)(133:18)
(155:25)(201:11)(208:14)
(228:6)
comfortable   (70:12)
(123:21)(123:23)(123:24)
(124:8)(193:11)
coming   (44:17)(50:15)
(59:15)(121:17)(125:2)
(131:3)(164:14)
comment   (147:15)
commerce   (2:13)
commission   (43:21)
(50:22)(73:10)(76:25)
commit   (26:15)(35:25)
(36:3)(38:2)(38:4)(38:5)
(38:6)(39:9)(43:17)
(74:10)(77:2)(77:3)
(81:15)(92:4)(133:4)
(133:25)(152:11)(160:1)
(161:8)(203:9)(206:2)
(206:18)(207:19)(209:1)
(222:9)(222:11)(222:12)
(222:25)(244:13)(256:4)
(256:5)(256:18)
commits   (14:23)(27:25)
committed   (39:22)(43:15)
(67:25)(68:5)(71:24)
(87:25)(129:6)(130:17)
(131:10)(148:23)(151:13)
(163:11)(165:17)(202:6)
(202:16)(205:7)(209:15)
(209:17)(224:6)(224:7)
(225:5)(225:20)(243:20)
committing   (26:15)
(36:24)(39:13)(43:22)
(45:5)(89:7)(140:19)

(167:8)(203:9)(225:6)
(244:12)
community   (207:23)
company   (240:12)(241:9)
compare   (171:13)
completely   (166:16)
(169:17)(169:25)(199:6)
components   (248:17)
comprehending   (231:20)
compressed   (111:8)
comprise   (13:17)(105:25)
(175:13)
computer   (123:4)
computer-aided   (1:24)
computerized   (1:23)
conceding   (71:8)(71:13)
(157:8)
concept   (65:16)
concepts   (64:20)(65:9)
concerned   (76:9)(149:11)
(150:15)
concerning   (11:23)
(11:25)(31:22)(99:9)
(182:14)(185:25)(189:14)
conclude   (97:18)
conclusion   (43:6)(50:17)
(55:12)(71:8)(121:6)
conclusions   (16:9)(19:5)
(32:14)(32:15)(33:18)
(57:10)(68:24)(238:1)
condemn   (76:17)
condition   (68:4)
conducted   (69:3)
confer   (93:8)(174:8)
(257:15)
confession   (21:9)(214:2)
confident   (121:13)
(126:25)
conformity   (261:3)
confronted   (71:22)
(138:13)(165:2)
conscious   (66:11)(66:12)
(116:6)
consequence   (94:3)(138:2)
consequently   (10:3)
(95:1)(102:3)(194:10)
consider   (28:8)(48:13)
(50:15)(51:10)(57:9)
(68:14)(68:19)(69:16)
(77:11)(78:7)(81:22)
(83:16)(84:6)(86:21)
(86:22)(88:2)(91:24)
(94:9)(94:15)(94:20)
(94:24)(136:9)(138:1)
(166:4)(167:25)(168:11)
(168:12)(168:22)(168:24)
(169:21)(169:22)(172:13)
(201:12)(204:22)(211:5)
(230:18)(231:12)(232:2)
(254:23)(258:11)
consideration   (18:20)
(19:4)(32:20)(51:15)
(67:8)(82:13)(83:24)
(87:18)(88:15)(94:12)
(94:18)(132:2)(134:7)
(149:8)(149:9)(172:3)
(172:4)(172:5)(172:10)
(201:14)(201:23)(228:10)
(230:23)(237:16)(254:10)
(255:13)(255:15)(255:18)
(255:21)
considered   (49:19)(51:4)
(86:15)(86:25)(87:2)
(87:7)(172:15)(219:14)
(247:2)(247:13)(247:20)
considering   (33:17)
consistent   (95:14)

constitute                                                                                    dallas    267

constitute (36:1)(38:16) (50:22)(74:24)(75:21) (77:4)(86:8)(160:2) (223:1)(244:16)
constituting (160:23)
constitution (95:4)(95:5)
constitutional (21:23) (212:23)(212:25)
constraints (242:11)
contains (260:7)
contemplated (191:13)
content (107:6)
contested (67:10)(67:11) (67:13)(67:23)(68:22)
context (53:2)(64:5) (71:21)(84:5)(119:6) (119:9)(125:3)(127:14) (138:23)(139:7)(139:9) (146:6)(149:25)(165:24) (165:25)(233:15)
contextual (134:22) (134:24)
continue (81:17)(99:21) (99:25)
continuing (36:1)(38:16) (39:10)(77:4)(79:24) (91:20)(160:2)(160:23) (223:2)(256:3)
contributions (150:11) (150:12)
controlled (139:1)
convicted (17:17)(17:23) (49:20)(80:17)(122:19) (202:10)(202:13)(247:21)
convicting (123:18)
convictions (216:22)
convince (159:6)
convinced (90:7)(90:25)
corner (151:12)
corporation (125:13)
correct (6:23)(6:24) (7:12)(15:20)(18:21) (18:23)(23:24)(23:25) (31:23)(41:1)(43:17) (43:18)(52:21)(65:1) (86:2)(98:13)(108:8) (122:22)(157:23)(158:10) (167:24)(176:23)(178:21) (179:2)(180:1)(181:24) (181:25)(182:25)(183:6) (183:7)(188:20)(191:5) (193:16)(193:17)(195:1) (195:13)(199:21)(200:5) (215:9)(222:16)(223:4) (237:24)(243:22)(247:15) (249:25)(260:7)
correctly (193:18) (260:14)
cost (17:23)
cot (208:9)
could (7:3)(14:16) (16:16)(22:23)(29:4) (29:25)(31:9)(34:3) (38:25)(40:6)(43:22) (45:6)(49:8)(53:22) (54:16)(54:22)(55:17) (55:18)(67:16)(68:21) (68:22)(82:7)(83:15) (83:18)(87:18)(92:5) (94:4)(107:18)(108:10) (114:4)(116:8)(118:23) (123:22)(123:24)(125:13) (128:10)(133:21)(137:22) (139:24)(146:13)(159:17) (162:9)(168:22)(179:24) (186:14)(186:20)(188:1) (190:12)(190:18)(191:17)

(198:23)(201:7)(204:5) (204:21)(205:2)(205:14) (206:2)(206:18)(207:19) (208:11)(209:23)(210:1) (212:16)(213:13)(223:9) (224:20)(225:17)(230:4) (231:14)(232:12)(232:19) (233:2)(233:11)(236:13) (241:4)(241:15)(243:12) (244:2)(254:2)(256:1) (256:10)(256:13)(257:2)
couldn't (14:20)(41:9) (112:19)(125:14)(234:13) (234:22)(244:4)
counsel (260:9)
counseling (139:25)
counter (126:8)
counterintuitive (65:21)
county (1:7)(1:22)(2:8) (2:21)(20:21)(63:4) (67:17)(67:18)(67:19) (197:4)(260:3)(260:6)
couple (6:13)(96:16) (108:4)(155:8)(175:19)
course (26:14)(31:15) (36:23)(45:3)(73:10) (74:22)(76:25)(87:5) (98:8)(99:21)(108:15) (111:8)(135:15)(140:19) (152:7)(158:13)(176:3) (208:24)(217:22)(220:15) (244:12)(248:22)(253:15) (255:24)
court (1:6)(4:13)(4:14) (5:3)(5:6)(5:10)(5:15) (5:18)(5:20)(6:3)(7:20) (7:24)(8:2)(8:5)(8:8) (8:11)(8:13)(8:16)(8:25) (9:3)(9:9)(9:12)(9:16) (9:22)(10:6)(10:9)(10:16) (10:19)(10:25)(11:4) (11:14)(11:22)(12:4) (12:9)(12:14)(12:17) (12:21)(12:24)(13:3) (13:7)(13:12)(13:16) (13:20)(13:23)(14:8) (38:10)(43:3)(57:16) (57:19)(58:16)(58:20) (58:22)(58:24)(59:2) (59:5)(59:8)(75:13) (79:14)(82:24)(93:5) (93:12)(93:14)(93:20) (93:23)(95:8)(95:23) (96:3)(96:9)(96:22)(97:5) (97:11)(97:15)(97:20) (97:24)(98:3)(98:7) (98:11)(98:15)(98:18) (98:22)(98:25)(99:3) (99:9)(99:12)(99:16) (99:20)(99:24)(100:3) (100:6)(100:12)(100:14) (100:17)(100:19)(100:22) (100:23)(101:2)(101:8) (101:13)(101:15)(101:23) (101:25)(102:9)(102:15) (102:17)(102:20)(103:4) (103:9)(103:23)(104:2) (104:4)(104:7)(104:10) (104:13)(104:19)(105:3) (105:7)(105:11)(105:20) (105:24)(106:25)(107:4) (113:10)(115:13)(141:5) (145:14)(145:18)(145:21) (145:23)(153:2)(153:6) (153:9)(153:13)(153:18) (153:20)(154:1)(154:6) (160:19)(172:8)(174:5)

(174:11)(174:13)(174:15) (174:19)(174:22)(175:1) (175:5)(175:11)(175:15) (175:19)(175:24)(176:4) (176:10)(176:16)(176:20) (176:24)(177:3)(177:6) (177:11)(177:18)(177:22) (177:24)(178:3)(178:6) (178:9)(178:12)(178:15) (178:23)(178:25)(179:2) (179:4)(179:7)(180:9) (180:11)(180:15)(180:18) (180:23)(181:1)(181:6) (181:8)(181:11)(181:14) (181:17)(182:1)(182:7) (182:10)(182:13)(182:16) (183:13)(183:22)(183:25) (184:2)(184:9)(184:17) (184:20)(185:3)(185:5) (185:10)(185:13)(185:17) (185:21)(185:24)(186:4) (186:25)(187:17)(187:21) (187:23)(188:4)(188:12) (188:15)(188:18)(188:22) (189:3)(189:6)(189:8) (189:13)(189:18)(191:25) (192:3)(192:7)(192:9) (192:16)(192:22)(192:25) (193:4)(193:6)(193:8) (193:11)(193:16)(193:18) (193:20)(193:24)(194:6) (194:9)(194:13)(194:18) (194:24)(195:2)(195:6) (195:11)(195:15)(195:22) (196:3)(196:5)(196:11) (196:15)(196:19)(196:22) (197:1)(197:13)(211:12) (238:15)(238:20)(238:22) (238:24)(239:3)(239:8) (250:6)(250:10)(250:13) (250:17)(250:22)(250:24) (251:2)(251:7)(251:9) (251:13)(251:15)(251:23) (252:1)(252:4)(252:9) (252:12)(252:17)(252:22) (252:25)(253:2)(253:6) (253:9)(253:12)(253:19) (253:21)(253:25)(254:4) (254:7)(254:11)(254:15) (254:18)(255:2)(255:5) (255:8)(255:12)(255:14) (255:17)(255:22)(256:9) (256:20)(256:23)(257:4) (257:10)(257:14)(257:19) (257:24)(258:2)(258:9) (258:14)(258:18)(258:20) (258:25)(259:4)(259:10) (260:4)(260:5)(260:12) (260:20)(261:2)(261:5) (261:18)
courthouse (18:9)
courtroom (5:5)(8:18) (9:11)(64:25)(93:13) (96:8)(100:18)(101:1) (101:22)(117:6)(120:21) (123:12)(132:3)(146:14) (146:17)(153:19)(155:1) (156:10)(174:14)(174:25) (178:5)(178:11)(180:17) (181:13)(184:1)(184:16) (187:22)(188:11)(189:5) (192:8)(193:3)(194:5) (238:23)(257:18)(258:19)
courts (2:8)(2:22)
court's (3:6)(3:8)(3:9) (3:13)(3:15)(3:18)(3:20) (3:23)(95:5)

cousin (24:2)
cover (200:3)
coverage (99:22)
covered (241:8)
coworkers (200:12)
crazy (20:19)
create (261:10)
credibility (22:14) (22:15)(23:17)(23:23) (215:25)(216:15)
crew (241:1)
cries (29:25)(208:10)
crime (16:14)(16:19) (16:23)(25:20)(28:5) (31:2)(43:17)(43:22) (47:1)(49:20)(50:23) (51:9)(51:11)(60:20) (60:22)(72:24)(73:5) (73:24)(86:9)(88:19) (89:18)(115:24)(118:3) (120:6)(130:17)(131:10) (133:9)(148:24)(149:12) (165:17)(167:8)(200:14) (201:10)(202:6)(205:20) (209:17)(209:20)(215:7) (224:18)(224:20)(225:1) (227:11)(229:1)(243:20) (247:21)(247:23)
crimes (24:25)(25:2) (25:9)(43:15)(61:13) (61:21)(129:5)(129:11) (129:17)(202:7)(203:18) (204:11)(224:5)(224:6) (244:7)(256:18)
criminal (1:5)(2:7) (15:13)(17:8)(19:14) (19:17)(19:20)(31:2) (31:19)(35:25)(38:3) (38:8)(38:13)(39:9) (65:25)(68:21)(75:13) (77:3)(81:15)(81:25) (82:9)(89:7)(92:4)(133:4) (133:25)(152:12)(159:14) (159:16)(159:17)(160:1) (161:8)(200:23)(206:5) (210:17)(215:22)(221:6) (222:9)(222:14)(222:20) (223:1)(224:2)(226:15) (226:16)(233:12)(235:24) (236:23)(246:20)(248:7) (260:5)(260:20)(261:18)
criminally (68:20)
criteria (152:2)
crowley (2:8)(2:22)
cruel (154:4)(208:6)
crumbs (126:20)(126:21) (126:22)(126:23)
crunch (112:11)
cry (150:2)(209:5)
crying (149:14)(149:15)
csr (260:19)(261:17)
cub (207:25)
culpability (48:22) (228:12)(229:4)(229:12)
cup (153:15)
cure (55:7)
curious (134:17)(155:12) (155:22)(156:19)(159:3)
current (118:10)
currently (208.2)
cut (214:24)(247:8)
cynical (149:17)

**D**

daddy (29:23)
daily (189:6)
dallas (1:7)(1:22)(2:8)

danger                                                                                                                      didn't    268

| | | | |
|---|---|---|---|
| (2:9)(2:14)(2:18)(2:21) | (25:19)(26:3)(27:3) | (80:10)(91:7)(117:4) | (108:1)(108:5)(170:9) |
| (2:23)(20:21)(63:4) | (27:22)(28:2)(33:4)(33:6) | (120:12)(121:5)(121:14) | (171:21)(171:23)(172:21) |
| (67:18)(67:19)(143:19) | (34:2)(34:20)(34:21) | (149:1)(151:24)(170:2) | deliberating (241:21) |
| (197:4)(260:3)(260:6) | (35:9)(40:24)(45:19) | (170:22)(171:5)(172:25) | deliberation (172:4) |
| (260:21)(261:19) | (46:21)(46:22)(47:13) | (173:5)(227:19)(233:10) | demand (172:23)(214:23) |
| danger (36:4)(36:12) | (47:24)(48:3)(49:7) | (233:16)(238:11)(252:19) | demanding (171:4) |
| (40:17)(42:10)(46:19) | (53:25)(54:1)(54:18) | decision-making (118:13) | demographic (120:10) |
| (47:21)(56:17)(56:23) | (54:25)(60:7)(60:12) | decisions (28:17) | demographics (120:4) |
| (74:24)(77:4)(77:12) | (60:19)(60:22)(61:12) | (114:15)(124:6) | (120:6) |
| (77:14)(77:19)(79:24) | (61:21)(62:4)(62:14) | deck (139:21)(141:3) | demonstrated (199:8) |
| (80:23)(91:20)(92:9) | (63:6)(63:14)(63:15) | (143:10)(164:7) | demonstrative (22:22) |
| (133:21)(140:24)(141:7) | (64:14)(70:21)(76:6) | deck-stacked (140:10) | denied (95:24) |
| (159:6)(163:14)(173:16) | (76:18)(83:8)(87:23) | deemed (25:3)(61:13) | dentists (133:17) |
| (221:6)(223:23)(225:16) | (90:8)(90:20)(91:25) | default (250:18) | depend (8:24)(109:4) |
| (226:3)(226:11)(231:5) | (92:15)(92:25)(94:24) | defend (172:24) | (165:19)(218:16)(225:16) |
| (232:15)(234:16)(235:19) | (95:21)(114:1)(114:8) | defendant (2:24)(5:3) | (253:14) |
| dangerous (129:19) | (115:2)(115:22)(116:14) | (13:18)(19:24)(21:1) | depending (218:25)(224:6) |
| (130:6)(231:11) | (116:17)(116:18)(117:25) | (21:7)(21:21)(21:24) | depends (24:16)(30:21) |
| dangerousness (35:17) | (118:9)(119:20)(120:13) | (23:9)(27:3)(32:5)(33:5) | (33:6)(91:6)(199:13) |
| (132:23)(159:3)(220:25) | (121:14)(122:8)(127:22) | (33:19)(35:6)(35:25) | (232:22)(233:4)(235:10) |
| darn (226:25) | (127:25)(128:2)(128:18) | (38:2)(46:3)(46:4)(46:20) | deputy (260:4)(260:20) |
| date (129:2) | (128:22)(128:25)(129:4) | (47:20)(48:21)(48:23) | (261:18) |
| dates (176:13) | (132:9)(132:15)(132:18) | (54:22)(55:6)(55:24) | described (75:13) |
| daughter's (126:25) | (132:21)(134:4)(134:10) | (56:1)(62:5)(67:13) | deserve (92:15)(131:22) |
| davison (3:7)(4:5)(9:6) | (134:16)(139:11)(139:23) | (67:20)(67:24)(72:18) | deserves (95:12)(148:21) |
| (9:8)(9:9)(9:11)(9:12) | (140:7)(141:1)(141:12) | (75:11)(76:14)(78:11) | desired (85:15) |
| (9:14)(9:21)(10:5)(10:8) | (146:3)(146:13)(147:15) | (80:16)(88:8)(89:25) | desks (116:19) |
| (10:15)(10:18)(10:24) | (152:16)(152:22)(154:25) | (92:15)(92:25)(100:22) | detail (11:8)(103:17) |
| (11:3)(11:13)(11:21) | (155:3)(161:22)(163:23) | (106:2)(116:12)(120:11) | (195:19) |
| (12:3)(12:13)(12:16) | (170:13)(173:19)(179:24) | (121:7)(132:25)(139:14) | details (125:11)(125:22) |
| (12:20)(12:23)(13:15) | (179:25)(183:4)(184:7) | (147:21)(150:10)(152:5) | (125:23)(126:1)(136:25) |
| (13:19)(13:24)(14:3) | (186:13)(186:18)(186:21) | (152:11)(153:18)(160:1) | determination (69:21) |
| (16:10)(31:14)(42:8) | (187:10)(188:2)(190:8) | (161:7)(178:9)(192:14) | (76:17)(85:6)(89:5) |
| (43:4)(57:13)(57:22) | (190:11)(190:13)(190:25) | (197:11)(201:4)(201:13) | determine (72:9)(75:11) |
| (58:5)(58:17)(58:19) | (198:23)(199:9)(201:17) | (204:18)(210:20)(212:22) | (76:12)(76:24)(132:21) |
| (58:21)(58:23)(59:1) | (201:21)(201:22)(202:8) | (213:9)(213:25)(214:2) | (201:2)(205:24) |
| (59:12)(60:21)(63:17) | (202:11)(202:24)(205:8) | (221:5)(222:9)(222:25) | determined (72:13) |
| (64:19)(65:11)(66:19) | (205:9)(207:4)(214:6) | (223:8)(227:22)(228:13) | (158:8)(158:16)(163:13) |
| (69:21)(70:10)(71:21) | (218:12)(218:14)(218:16) | (229:2)(229:7)(238:22) | (170:18) |
| (73:23)(74:23)(75:24) | (218:20)(219:2)(219:24) | (239:21)(248:11)(248:20) | determiner (79:15) |
| (77:16)(79:7)(79:16) | (220:7)(220:16)(228:4) | (249:11)(249:19)(249:23) | determining (49:19) |
| (81:2)(82:3)(82:25)(83:1) | (228:15)(228:22)(229:6) | (250:18)(251:17)(255:23) | (230:24)(247:20) |
| (87:16)(89:20)(92:1) | (230:21)(230:25)(233:3) | (258:7) | developed (29:18) |
| (93:2)(93:7)(93:11) | (234:8)(234:12)(234:17) | defendants (204:10) | devil's (125:11) |
| (93:13)(93:17)(93:21) | (234:24)(235:6)(235:18) | defendant's (50:4)(68:4) | devoted (63:5) |
| (93:25)(96:5)(96:7)(96:8) | (243:8)(243:9)(243:12) | (72:15)(84:3)(84:8)(94:9) | devotion (30:2) |
| (96:9)(96:14)(96:21) | (243:16)(244:1)(244:2) | (95:24)(140:25)(149:13) | diagnosed (208:3) |
| (97:4)(97:10)(97:14) | (244:3)(244:7)(244:14) | (167:20)(172:11)(212:8) | dichotomy (190:20) |
| (97:19)(97:23)(98:2) | (244:16)(244:19)(244:23) | (228:11)(235:25)(258:15) | dictate (93:23)(209:11) |
| (98:6)(98:10)(98:14) | (244:25)(245:4)(245:6) | defender (2:21) | (251:10)(258:2) |
| (98:17)(98:21)(98:24) | (245:12)(245:14)(245:25) | defender's (2:21) | dictates (141:14) |
| (99:2)(99:8)(99:11) | (248:13)(248:21)(249:2) | defense (3:4)(4:3) | did (7:13)(17:19)(20:20) |
| (99:15)(99:19)(99:23) | (249:11)(249:14)(249:25) | (13:17)(26:5)(50:22) | (20:21)(21:8)(22:16) |
| (100:2)(100:5)(100:11) | (250:14)(251:3)(251:17) | (51:9)(51:18)(57:20) | (23:5)(30:7)(30:9)(32:15) |
| (100:13)(100:16)(100:18) | (251:19)(251:25)(252:12) | (65:25)(77:15)(77:19) | (32:20)(33:16)(36:23) |
| day (1:18)(6:15)(14:9) | (252:18)(254:14)(256:13) | (83:18)(86:8)(93:21) | (39:13)(39:16)(45:19) |
| (29:23)(54:3)(104:11) | (258:6) | (96:2)(105:18)(105:25) | (53:3)(54:24)(62:16) |
| (106:18)(122:7)(127:24) | debate (17:19)(170:10) | (106:1)(154:9)(155:13) | (67:20)(68:11)(68:13) |
| (151:14)(170:24)(187:20) | (172:5)(172:25) | (156:1)(156:7)(156:14) | (69:23)(73:9)(74:17) |
| (198:6)(208:9)(259:12) | deceased (150:7) | (157:24)(169:1)(174:19) | (98:12)(110:25)(126:17) |
| (260:17) | decide (15:2)(15:10) | (197:9)(230:16)(230:17) | (130:4)(141:9)(145:8) |
| days (98:9)(176:5) | (27:24)(28:9)(31:20) | (231:8)(239:9)(246:21) | (145:14)(150:18)(152:5) |
| day-to-day (194:5) | (35:9)(38:8)(38:15) | defenses (155:15) | (155:22)(156:13)(156:15) |
| dead (21:10)(44:23) | (39:15)(40:16)(45:23) | defense's (3:8)(3:9) | (198:6)(203:22)(208:16) |
| (148:17)(214:5) | (51:15)(51:22)(80:6) | (3:22) | (208:23)(208:25)(209:21) |
| deal (62:23)(62:25) | (123:5)(123:6)(141:11) | define (37:9)(221:2) | (214:3)(217:16)(217:19) |
| (101:5)(115:15)(123:25) | (216:15)(220:20)(222:24) | defined (25:8)(38:3) | (220:14)(221:1)(225:5) |
| (147:3) | (224:3)(224:20)(226:1) | (203:4) | (227:16)(232:25)(234:25) |
| dealer (151:17) | (227:22)(228:21)(232:6) | definitely (40:23) | (238:25)(239:13)(245:4) |
| dealing (117:9)(128:8) | (235:13)(236:4)(238:9) | (132:7)(162:12)(167:4) | (245:5)(246:20)(247:8) |
| (128:14)(245:3) | (254:13) | (167:5)(232:19)(232:21) | (248:21)(249:11)(249:13) |
| dealings (146:15) | decided (123:2)(256:17) | definition (204:2) | didn't (21:11)(22:5) |
| death (6:21)(6:22)(7:2) | (256:18) | (211:18)(221:23)(223:8) | (22:7)(31:5)(32:14) |
| (7:4)(14:17)(14:19) | decides (30:2)(208:13) | definitions (212:3) | (32:18)(46:11)(75:1) |
| (16:13)(16:18)(16:19) | deciding (51:10)(123:17) | definitive (169:8) | (86:21)(87:13)(91:14) |
| (16:24)(19:19)(19:21) | (245:13) | degree (49:21) | (101:13)(106:15)(108:9) |
| (24:23)(25:1)(25:6)(25:7) | decision (66:11)(66:12) | deliberate (22:4)(69:16) | (108:11)(127:4)(127:17) |

die                                                                                                            elects    269

(140:13) (147:11) (176:21)
(190:16) (209:21) (213:6)
(213:8) (213:9) (214:5)
(217:15) (217:17) (222:15)
(234:15) (239:15) (240:22)
(247:5)
**die** (21:11) (29:20)
(45:16) (45:20) (45:24)
(46:6) (46:12) (76:13)
(147:22) (148:21) (149:16)
(151:8) (151:11) (152:1)
(152:23) (208:4) (208:7)
(214:5) (227:17) (227:25)
**died** (21:11) (116:5)
(214:12) (217:8) (217:10)
**dies** (30:6) (151:15)
(151:17) (208:16)
**difference** (37:20)
(39:19) (41:6) (48:12)
(51:22) (70:3) (83:3)
(88:13) (88:17) (90:13)
(232:6) (232:8) (234:5)
**different** (11:20) (19:19)
(24:20) (26:6) (30:14)
(63:23) (65:18) (144:22)
(165:21) (170:1) (199:24)
(201:18) (204:7) (206:2)
(207:18) (209:6) (209:13)
(212:2) (212:14) (221:25)
(222:7)
**difficulty** (162:6) (162:9)
**dig** (100:10)
**dire** (1:12) (6:7) (14:1)
(57:20) (58:15) (87:5)
(103:1) (106:8) (154:9)
(176:1) (179:14) (182:21)
(186:8) (190:1) (197:15)
(197:20) (239:9)
**directed** (227:10)
**directing** (43:20)
**directly** (130:15)
**disagree** (119:4) (170:5)
**disappears** (147:8)
**disclosure** (261:6)
**discretion** (86:23)
**discuss** (240:23) (241:23)
(242:3)
**discussed** (176:1)
**discussing** (182:4)
**discussion** (61:10)
**discussions** (147:19)
**disqualify** (155:4)
**disregard** (66:11)
**distinguishes** (75:17)
**distracted** (112:15)
(112:16) (112:18)
**district** (1:5) (2:7)
(5:21) (9:23) (13:5)
(101:18) (105:12) (107:10)
(181:19) (185:6) (188:23)
(193:22) (197:3) (198:3)
(260:5) (260:20) (261:18)
**dna** (117:18)
**doctors** (39:5) (133:16)
**document** (22:22)
**does** (8:20) (15:11)
(15:12) (19:10) (19:11)
(27:6) (28:21) (29:16)
(31:9) (34:17) (43:23)
(45:24) (46:1) (49:11)
(50:11) (50:12) (50:22)
(51:12) (52:2) (52:19)
(52:23) (63:22) (63:23)
(68:7) (69:13) (72:18)
(73:19) (73:22) (80:10)
(83:6) (84:4) (84:25) (86:3)
(86:8) (89:9) (89:20)

(92:11) (92:12) (92:15)
(93:20) (95:8) (95:18)
(118:1) (118:10) (118:11)
(118:14) (136:17) (139:2)
(155:4) (160:3) (161:14)
(161:22) (170:13) (171:10)
(173:1) (173:6) (173:12)
(173:24) (174:16) (174:19)
(180:18) (184:3) (187:14)
(187:24) (192:9) (192:19)
(206:25) (211:24) (216:15)
(218:13) (220:1) (220:10)
(221:12) (230:10) (232:6)
(232:8) (247:22) (248:9)
(257:21)
**doesn't** (15:7) (25:20)
(30:21) (33:1) (33:2) (33:4)
(37:19) (38:1) (38:4) (38:7)
(41:9) (43:5) (49:10)
(52:23) (55:5) (71:12)
(77:19) (80:12) (83:12)
(88:4) (88:5) (89:16)
(96:17) (101:8) (107:17)
(114:21) (116:16) (122:4)
(124:23) (127:16) (132:15)
(135:9) (140:8) (147:21)
(150:16) (150:19) (159:11)
(164:15) (171:20) (173:3)
(187:10) (187:14) (198:13)
(198:24) (204:17) (206:15)
(206:17) (207:9) (207:11)
(214:24) (215:11) (218:15)
(222:10) (222:13) (229:25)
(231:15)
**dog** (50:6) (85:21) (89:14)
(168:14)
**doing** (7:11) (9:14) (10:2)
(14:8) (15:8) (18:16)
(28:20) (52:8) (58:13)
(74:11) (76:21) (96:19)
(102:2) (107:13) (108:17)
(113:24) (115:19) (117:1)
(118:11) (118:12) (118:17)
(118:18) (118:23) (118:25)
(119:6) (119:9) (130:21)
(138:3) (141:9) (149:25)
(154:13) (154:14) (169:9)
(169:17) (175:5) (189:4)
(193:6) (194:3) (197:22)
(198:5) (204:9) (207:23)
(231:22) (245:20) (250:5)
(250:6) (256:2)
**dominant** (120:9) (134:25)
**done** (41:4) (45:3) (55:8)
(78:4) (119:16) (129:19)
(134:11) (150:16) (166:17)
(218:21) (224:1) (225:21)
(231:9) (241:7) (259:12)
**don't** (11:18) (12:7)
(17:8) (18:8) (20:17) (24:6)
(24:13) (24:20) (27:14)
(30:24) (37:8) (37:9)
(40:19) (40:21) (44:6)
(44:20) (45:22) (46:10)
(48:11) (50:25) (51:17)
(52:21) (53:9) (54:20)
(55:14) (55:22) (59:24)
(60:25) (61:5) (61:6)
(61:16) (65:13) (69:7)
(69:8) (71:8) (72:4) (74:9)
(75:25) (77:8) (80:14)
(80:24) (81:19) (82:2)
(82:3) (83:8) (87:6) (87:8)
(91:3) (92:17) (97:16)
(98:13) (98:18) (99:3)
(99:16) (99:17) (100:9)
(100:19) (112:19) (112:20)

(115:4) (115:6) (115:19)
(115:20) (115:23) (116:10)
(116:25) (117:1) (118:4)
(120:4) (120:5) (120:6)
(120:7) (120:20) (120:23)
(121:1) (121:17) (121:19)
(123:2) (123:4) (123:12)
(123:23) (124:8) (126:8)
(127:12) (128:1) (128:3)
(128:10) (129:22) (130:11)
(130:16) (130:22) (130:23)
(131:3) (131:9) (131:18)
(133:12) (135:12) (135:20)
(136:7) (136:8) (136:9)
(136:15) (138:19) (139:15)
(139:16) (142:21) (142:22)
(142:24) (142:25) (143:5)
(143:25) (144:19) (145:6)
(145:16) (146:2) (146:14)
(147:6) (147:7) (148:8)
(148:18) (148:25) (149:14)
(150:1) (150:17) (150:22)
(150:23) (150:24) (152:2)
(152:20) (153:13) (154:19)
(155:1) (156:11) (157:7)
(157:15) (157:21) (158:22)
(163:4) (164:11) (164:15)
(167:14) (169:7) (170:9)
(170:10) (170:11) (171:6)
(171:9) (171:24) (172:20)
(172:22) (176:11) (177:6)
(183:14) (185:17) (189:9)
(192:1) (197:25) (199:3)
(199:22) (200:8) (203:19)
(212:9) (213:16) (214:20)
(215:22) (218:17) (225:17)
(226:15) (227:1) (229:18)
(229:21) (229:25) (238:6)
(238:7) (240:4) (240:10)
(241:17) (242:20) (243:1)
(248:6) (253:13) (254:18)
**door** (18:9) (119:15)
**doorstop** (111:2)
**dope** (151:12) (151:17)
**doubt** (20:12) (21:4)
(22:6) (32:5) (34:21)
(35:24) (37:13) (37:18)
(46:15) (55:23) (65:5)
(68:12) (68:16) (72:14)
(76:14) (89:25) (122:21)
(144:3) (144:10) (152:5)
(152:10) (157:16) (158:16)
(159:25) (161:7) (162:20)
(173:16) (201:3) (211:17)
(211:18) (211:24) (213:7)
(213:19) (217:21) (220:12)
(221:11) (221:13) (221:23)
(253:5)
**doug** (13:12) (57:22)
(105:20) (197:8) (239:17)
**dough** (44:6)
**douglas** (2:16)
**down** (6:14) (12:10)
(13:10) (13:13) (14:8)
(14:11) (18:24) (24:22)
(41:23) (44:8) (52:22)
(54:9) (58:1) (68:20)
(75:24) (101:25) (104:23)
(105:9) (105:17) (106:1)
(106:17) (110:18) (118:12)
(122:7) (129:12) (129:15)
(143:8) (149:10) (161:4)
(170:17) (183:15) (183:17)
(187:4) (187:13) (189:8)
(192:20) (194:6) (197:7)
(197:10) (198:6) (202:9)
(203:16) (210:9) (210:21)

(217:25) (218:18) (219:9)
(220:22) (224:12) (226:20)
(233:17) (239:16) (240:10)
(242:16) (242:24) (244:9)
(244:21) (246:6) (247:17)
(247:18) (249:18) (250:16)
(258:12)
**downstairs** (204:18)
**drank** (106:21)
**drawn** (238:1)
**drink** (87:12) (153:11)
(238:19) (238:25) (246:14)
**drive** (124:12)
**driven** (208:12)
**drives** (44:14) (209:7)
**drug** (50:25) (52:15)
(246:16)
**drugs** (51:1) (231:7)
(231:18) (233:12) (246:5)
(246:7)
**druthers** (127:24)
**duress** (74:7) (74:11)
(74:13)
**during** (39:23) (45:3)
(73:10) (76:25) (80:20)
(87:5) (99:21) (110:5)
(113:6) (113:8) (248:21)
(253:15)
**duties** (240:25)
**duty** (18:17) (26:11)
(203:5) (236:19) (236:20)
(236:21) (240:10) (241:10)
**dwi** (15:25) (16:1) (19:21)
(22:17) (129:15) (131:1)
(131:4)
**dying** (29:21) (29:22)

**E**

**each** (10:22) (15:9)
(20:10) (57:3) (57:5)
(96:22) (102:12) (102:24)
(129:16) (146:22) (163:25)
(172:16) (173:11) (175:8)
(195:8) (215:25)
**earlier** (89:21) (97:20)
(243:11)
**early** (112:2) (144:11)
(165:16) (176:1)
**easier** (88:25)
**easily** (116:8) (190:24)
**east** (55:8)
**easy** (44:10) (258:25)
**eat** (39:2) (223.14)
**eddings** (95:7)
**education** (24:23) (85:4)
(85:5) (137:8) (139:17)
**educators** (39:5) (223:19)
**effective** (128:8)
**effort** (62:24) (109:14)
**efforts** (117:24)
**eight** (233:23) (233:24)
**eighth** (95:2)
**either** (7:8) (15:3) (38:1)
(38:4) (63:20) (68:3) (77:6)
(78:5) (83:19) (89:2)
(96:24) (132:11) (149:19)
(150:2) (159:19) (169:8)
(170:12) (170:18) (175:12)
(177:14) (199:3) (209:24)
(220:7) (221:24) (235:3)
(235:4) (246:5)
**elaine** (2:6) (13:3)
(105:8) (179:8) (182:3)
(186:1) (189:20) (196:23)
**elderly** (44:9)
**elects** (21:24) (212:22)
(212:25)

element                                                                                    factual    270

element (17:8)(20:10)
(20:16)(21:2)(21:12)
(31:6)(67:1)(204:17)
(213:15)(213:17)
elements (55:23)(65:3)
(66:18)(67:5)(232:2)
elevator (204:18)
eligible (16:23)(25:7)
(25:19)(27:3)(45:18)
(116:12)(201:20)(202:11)
(204:4)
else (19:3)(22:25)(26:8)
(26:9)(40:7)(43:23)
(73:13)(88:12)(90:1)
(108:17)(109:12)(115:4)
(129:4)(150:17)(152:2)
(167:3)(171:9)(174:2)
(176:17)(199:20)(200:10)
(204:23)(205:4)(224:22)
(224:25)
else's (186:15)
emotion (190:21)
emotional (150:4)
(190:25)(191:8)
emotionally (145:7)
(149:22)(190:23)
emotions (208:18)
employer (114:20)
encouraged (227:10)
encouraging (43:20)
end (13:13)(28:21)(30:3)
(95:19)(97:2)(105:21)
(106:1)(197:10)(226:7)
(259:13)
ended (21:1)
enforcement (24:10)
engage (232:10)
enjoy (21:22)(21:23)
enjoyed (33:19)
enough (29:21)(36:8)
(37:7)(39:18)(54:20)
(63:11)(64:17)(80:6)
(80:9)(82:12)(82:17)
(87:21)(88:11)(88:22)
(93:1)(118:3)(118:8)
(119:3)(121:1)(125:17)
(130:17)(137:1)(140:7)
(163:6)(166:3)(190:24)
(208:6)(225:3)(232:8)
ensure (44:23)
enters (5:5)(9:11)(96:8)
(101:1)(153:19)(174:25)
(178:11)(181:13)(184:16)
(188:11)(193:3)(238:23)
(258:19)
entire (80:18)(102:11)
entirely (26:6)(65:18)
(222:24)(225:16)(229:17)
entitled (20:13)(65:15)
(217:23)(248:9)
enumerate (222:14)
environment (49:19)
(49:25)(135:1)(135:2)
(139:14)(159:9)(247:19)
environmentally (143:1)
envision (28:19)(29:4)
(206:21)
equal (150:14)(216:10)
equally (213:20)
equate (138:18)
equation (116:22)
equivalent (245:11)
equivalents (95:4)
e-r (178:22)(178:24)
erlinda (3:12)(4:9)
(178:20)(179:12)(181:2)
e-r-l-i-n-d-a (178:21)

(178:25)
errands (126:11)
error (123:8)(123:10)
(123:22)(124:17)
escapes (38:22)
especially (118:15)
estimate (107:22)(108:3)
(241:14)
evans (2:6)(13:4)(105:8)
(179:8)(179:10)(179:11)
(179:15)(180:18)(180:20)
(182:3)(182:17)(182:18)
(182:22)(184:3)(184:5)
(186:1)(186:4)(186:5)
(186:9)(187:24)(187:25)
(189:20)(189:21)(189:23)
(190:2)(192:9)(192:11)
(192:24)(196:23)(196:24)
(226:17)
even (16:12)(19:7)(21:7)
(23:19)(40:2)(40:23)
(47:20)(47:21)(61:21)
(62:1)(62:16)(67:16)
(75:14)(77:12)(83:21)
(91:4)(95:14)(95:19)
(97:20)(131:4)(144:11)
(151:23)(157:5)(161:25)
(163:19)(165:4)(166:5)
(171:6)(171:9)(186:14)
(198:21)(206:23)(223:19)
(229:5)(230:1)(230:19)
(232:13)(236:5)(236:14)
(239:15)(241:10)(244:3)
(246:23)
evening (111:6)
event (64:8)
eventually (144:16)
ever (14:16)(14:23)
(41:4)(57:24)(58:10)
(69:6)(69:9)(72:4)(72:10)
(72:15)(76:17)(80:21)
(85:14)(91:4)(92:5)
(98:15)(114:2)(119:16)
(124:24)(143:4)(146:2)
(147:2)(198:23)(200:20)
(204:10)(204:11)(208:10)
(221:16)(232:23)(233:2)
(243:12)(247:12)(256:13)
every (10:23)(20:10)
(20:16)(29:23)(29:24)
(30:1)(102:24)(109:2)
(116:18)(117:4)(122:7)
(151:14)(195:8)(198:6)
(208:7)(210:17)(213:15)
(213:17)
everybody (10:12)(12:10)
(14:9)(14:11)(43:23)
(63:23)(107:13)(122:1)
(128:12)(135:6)(183:15)
(187:4)(194:20)(212:24)
(216:10)
everybody's (129:16)
(144:1)
everyday (101:22)
everything (12:10)
(24:15)(29:16)(30:9)
(33:16)(47:9)(47:10)
(48:13)(53:16)(65:2)
(85:14)(108:17)(109:3)
(119:16)(124:24)(125:3)
(126:1)(129:11)(154:18)
(200:2)(208:25)(228:25)
(229:1)(229:4)(230:3)
(237:3)(257:6)
evidence (16:7)(18:20)
(18:21)(19:2)(19:3)(19:4)
(19:8)(19:9)(20:4)(21:25)

(22:4)(22:8)(22:16)
(22:18)(22:23)(23:9)
(24:16)(27:12)(28:15)
(28:16)(28:24)(30:21)
(30:24)(31:10)(32:17)
(32:21)(33:17)(35:2)
(35:4)(35:5)(35:23)(36:7)
(37:8)(37:13)(40:10)
(41:13)(41:18)(46:3)
(47:8)(48:9)(48:19)
(48:25)(49:2)(51:3)
(55:19)(56:11)(56:20)
(57:5)(57:9)(61:17)
(63:15)(66:25)(68:4)
(68:6)(68:15)(68:25)
(69:7)(69:12)(69:13)
(69:17)(70:2)(72:1)(72:6)
(72:14)(75:10)(75:20)
(76:1)(78:24)(79:2)
(79:19)(80:8)(81:4)(81:5)
(81:8)(81:22)(83:16)
(83:19)(83:21)(83:22)
(83:25)(85:10)(85:12)
(85:15)(86:13)(87:16)
(90:25)(91:6)(91:20)
(94:20)(95:16)(97:7)
(97:8)(122:21)(124:18)
(152:20)(159:4)(159:25)
(162:15)(167:4)(172:10)
(175:21)(198:24)(199:19)
(200:10)(200:13)(201:13)
(201:14)(201:15)(201:23)
(205:25)(206:1)(206:6)
(206:12)(210:8)(211:4)
(211:6)(211:13)(213:4)
(213:10)(214:23)(214:24)
(219:14)(220:20)(221:11)
(224:17)(225:10)(225:17)
(227:20)(228:10)(228:25)
(230:4)(230:19)(232:3)
(232:11)(233:8)(233:15)
(234:15)(234:16)(237:17)
(237:25)(238:10)(247:2)
(247:13)(251:10)(251:20)
(252:20)(253:15)(254:23)
(254:24)(257:3)(257:4)
(260:8)
exact (96:15)(165:3)
exactly (22:20)(28:6)
(41:3)(47:2)(62:12)
(62:21)(67:3)(73:25)
(94:18)(110:7)(148:9)
(165:3)(177:3)(207:10)
(211:14)(213:18)(222:13)
(245:20)(249:1)
examination (6:7)(14:1)
(57:20)(103:1)(106:8)
(154:9)(176:2)(179:14)
(182:21)(186:8)(190:1)
(197:20)(239:9)
examiner (21:9)(214:4)
example (14:15)(20:19)
(21:17)(26:10)(27:8)
(28:18)(43:10)(49:14)
(89:13)(136:18)(142:13)
(203:4)(206:19)(210:10)
(213:22)(230:15)
examples (165:7)
except (261:10)
excited (18:5)(18:16)
excuse (8:2)(51:9)
(52:23)(59:2)(70:15)
(73:9)(74:16)(95:23)
(108:11)(136:5)(136:10)
(153:6)(160:19)(169:3)
(171:18)(187:18)(259:5)
excused (3:6)(3:13)

(3:16)(3:18)(3:21)(3:23)
(180:15)(184:12)
excuses (136:8)
executed (14:24)(165:12)
execution (7:10)(14:18)
(129:3)
exercise (212:22)
(212:25)(232:10)(259:1)
exhibits (260:14)
exist (150:3)
existing (261:7)
exits (8:18)(93:13)
(100:18)(174:14)(178:5)
(180:17)(184:1)(187:22)
(192:8)(257:18)
exonerated (117:22)
expand (11:17)(147:17)
expect (49:22)(83:10)
(111:25)(150:4)(157:21)
(172:23)
expected (24:14)
expediency (116:21)
expedient (115:3)(115:12)
expended (63:2)
expense (63:1)
experience (65:25)
expires (260:22)(261:20)
explain (11:8)(11:17)
(11:20)(12:8)(103:16)
(171:5)(202:9)(252:4)
explained (96:19)(240:5)
explains (10:2)(189:3)
(194:3)
exposed (117:6)(117:7)
(165:22)
expressed (157:1)
expression (201:10)
extended (142:16)
extent (171:19)
extreme (63:13)(76:22)
(89:3)(115:25)(118:3)
(164:9)(164:11)
extremely (127:15)
eye (44:16)(63:20)
(63:23)(63:24)(64:4)
(64:11)(89:22)(92:11)
(92:12)(245:10)

## F

face (38:12)
faced (72:15)
fact (32:5)(39:15)(49:9)
(60:23)(62:11)(65:10)
(65:18)(80:2)(81:9)
(114:1)(120:11)(121:7)
(127:8)(130:9)(130:17)
(191:7)(206:25)(213:9)
(229:17)(231:6)(233:14)
(249:22)
factor (26:18)(26:25)
(27:15)(31:16)(31:20)
(51:21)(88:1)(88:9)(89:8)
(89:11)(92:12)(121:5)
(203:3)(203:11)(203:13)
(204:14)(217:4)(247:14)
factored (116:22)
(120:12)(121:14)
factors (27:11)(83:7)
(89:2)(91:24)(141:11)
(147:1)
facts (28:9)(48:6)(56:6)
(62:13)(67:6)(83:16)
(123:4)(149:11)(159:7)
(199:13)(200:16)(209:11)
(218:16)(235:11)(235:13)
(237:23)
factual (207:17)

fail                                                                                                        found    271

fail (31:25) (204:16) (205:3) (218:3)
failed (71:24) (72:7)
fair (34:24) (50:13) (53:4) (53:7) (60:13) (60:14) (63:11) (63:14) (64:17) (82:12) (82:17) (87:16) (87:21) (88:11) (88:22) (90:9) (93:1) (109:4) (114:25) (115:1) (129:22) (134:7) (146:3) (169:20) (180:6) (187:14) (191:10) (215:2) (224:21) (225:3) (232:20) (232:21) (239:21) (243:5) (249:19)
fairly (69:16)
fairness (122:7) (146:1)
fall (48:19) (169:7)
fallible (122:14)
falls (109:13)
familiar (136:17)
families (223:19)
family (29:16) (35:7) (51:25) (52:6) (66:1) (115:18) (133:20) (142:16) (143:12) (147:16) (147:21) (149:1) (149:8) (166:14) (166:22) (224:9) (233:12) (244:22) (261:8)
famous (154:22)
fantastic (52:11) (52:13) (188:14) (207:22)
far (53:17) (53:19) (76:9) (136:12) (149:10) (150:15) (168:2) (209:5)
far-out (21:17) (213:21)
farther (227:15)
fashion (119:24) (119:25) (120:2)
faster (115:17)
fatal (208:4)
father (29:12) (29:14) (207:20) (207:22) (208:8) (217:16)
fault (21:19) (214:19)
favor (6:20) (24:6) (63:13) (115:2) (243:16) (244:19) (245:6)
fear (62:22) (75:15)
feared (167:15)
fed (50:6) (85:20) (89:14)
feed (123:4) (143:12)
feedback (147:20)
feel (18:4) (47:18) (49:18) (50:8) (53:11) (54:1) (58:1) (60:1) (63:7) (63:9) (64:15) (77:22) (78:8) (88:6) (89:10) (95:11) (103:19) (104:7) (108:11) (114:12) (115:18) (118:8) (124:15) (149:22) (164:10) (165:2) (165:18) (169:25) (180:3) (183:8) (183:9) (183:11) (183:14) (186:16) (186:22) (190:15) (190:16) (190:19) (191:13) (196:9) (198:10) (202:2) (202:5) (215:10) (233:11) (233:13) (235:1) (235:19) (236:20) (237:9) (243:19) (247:12) (247:18) (249:2)
feeling (7:16) (18:2) (76:2) (128:4) (207:2) (209:13) (216:8)
feelings (7:1) (7:4) (114:14) (128:2) (146:13) (154:25) (179:23) (203:22)

(212:14) (243:9) (243:13)
felony (26:15) (36:24) (38:5) (73:11) (76:25) (80:17) (140:20) (203:9) (216:22) (220:15)
felt (16:4) (104:25) (167:14) (170:19) (170:20) (232:14)
few (49:13) (75:8) (75:14) (139:15) (185:14) (230:15)
field (216:11)
fifth (212:19)
fight (67:14) (138:24)
figuratively (226:14)
figure (81:7)
figured (115:6)
file (156:8)
fill (14:9) (242:24)
filled (10:7) (104:13) (104:15) (179:22) (185:19) (189:10) (190:6) (194:15) (239:24)
filling (6:14) (179:18) (234:20)
final (228:5)
finance (110:23) (125:10)
financial (261:7)
financially (141:24)
find (14:12) (22:8) (35:23) (37:13) (45:14) (45:15) (45:19) (46:2) (47:12) (53:8) (53:9) (55:23) (56:15) (56:16) (56:22) (64:8) (81:2) (90:14) (97:1) (99:6) (115:16) (116:16) (122:21) (127:14) (140:20) (140:21) (159:24) (163:22) (167:3) (169:12) (169:19) (169:24) (172:10) (173:8) (173:15) (173:18) (176:7) (177:7) (201:5) (201:8) (213:10) (221:10) (227:15) (228:9) (239:20) (242:7) (243:5) (248:11) (249:19) (249:23) (256:2) (256:3) (258:5) (258:12)
finding (107:15)
finds (30:4) (55:7)
fine (9:16) (59:4) (60:4) (60:11) (172:17) (178:14) (181:16) (184:19) (197:23) (246:25) (248:10)
finish (22:3) (112:1)
finished (43:5) (46:23) (62:1) (137:8) (226:11)
fire (211:11)
firearm (21:2)
fired (116:4)
first (6:17) (19:1) (19:23) (24:25) (28:9) (31:18) (32:10) (32:15) (33:10) (33:17) (33:19) (34:8) (35:2) (35:14) (48:13) (56:20) (66:4) (132:21) (153:9) (155:25) (175:11) (200:7) (201:1) (202:2) (206:13) (216:24) (219:18) (220:24) (222:18) (235:13) (243:19) (244:7)
first-degree (27:19) (27:25) (28:12) (31:7) (39:23) (129:11) (206:3) (206:18) (207:19) (209:8)
fist (38:12)
fit (16:19) (16:20) (16:23) (25:21) (28:5)

(30:23) (31:1) (47:1) (51:11) (76:9) (77:6) (77:21) (77:22) (92:12) (200:14) (201:10) (205:19)
fits (16:14) (28:10) (60:20)
five (20:17) (110:17) (148:15) (162:11) (186:19) (205:14) (206:20) (207:13) (209:25) (213:16) (244:23)
five-minute (153:14) (238:20)
flag (125:24)
flagging (106:11) (106:13)
flat-out (14:13)
flesh (60:17)
flip (82:8) (86:12) (199:1)
focus (125:19)
fodder (131:12) (131:15)
folks (175:12) (194:13)
follow (16:6) (17:5) (17:9) (17:12) (19:1) (21:19) (55:17) (55:18) (69:20) (92:18) (113:25) (114:10) (198:10) (199:16) (200:7) (200:9) (203:25) (209:15) (211:8) (212:16) (213:13) (215:23) (250:25) (251:5)
follower (88:15) (88:17) (94:21) (167:10) (167:15) (167:17)
following (1:18) (1:20) (97:13) (97:25) (98:5) (117:17) (117:23) (156:1) (167:15) (214:18) (219:3)
follows (6:6) (13:25) (106:7) (179:13) (182:20) (186:7) (189:25) (197:19) (261:11)
follow-up (250:3) (250:5) (250:7)
fond (130:10)
food (50:6) (85:21) (89:14)
foot (44:9)
for (3:5) (3:6) (3:8) (3:12) (3:13) (3:15) (3:16) (3:17) (3:18) (3:20) (3:21) (3:22) (3:23) (5:4) (6:13) (7:18) (7:25) (8:5) (8:21) (9:4) (9:6) (9:10) (12:21) (14:7) (14:15) (16:24) (17:13) (17:16) (18:7) (20:17) (24:25) (25:7) (25:19) (26:9) (26:19) (27:3) (28:18) (29:3) (29:10) (29:11) (29:15) (29:16) (33:3) (33:4) (34:3) (34:19) (37:10) (37:15) (38:3) (38:8) (38:15) (40:9) (40:16) (40:23) (42:19) (45:14) (45:17) (45:18) (45:23) (49:14) (49:22) (50:8) (50:14) (52:25) (53:17) (54:2) (54:11) (54:17) (54:20) (55:7) (56:5) (57:12) (59:5) (59:17) (60:8) (60:23) (61:12) (61:16) (61:17) (63:13) (63:17) (63:20) (63:23) (63:24) (64:4) (64:11) (65:21) (66:3) (67:9) (71:21) (75:11) (76:1) (79:2) (80:1) (80:6) (80:15) (81:19) (83:22) (85:18) (88:9) (88:23) (89:22) (90:2) (92:11)

(93:8) (93:12) (93:16) (93:21) (94:1) (94:12) (94:18) (95:24) (96:5) (96:17) (97:6) (97:11) (100:7) (100:14) (100:25) (101:16) (104:8) (106:1) (107:12) (107:24) (108:3) (108:20) (108:22) (108:23) (111:3) (114:4) (115:25) (116:14) (118:7) (123:7) (124:17) (125:22) (126:6) (126:9) (126:10) (126:24) (127:10) (127:23, (127:24) (128:11) (128:12) (128:14) (129:6) (129:11) (129:17) (131:1) (131:12) (131:15) (132:16) (134:20) (134:22) (136:6) (136:18) (140:7) (142:3) (143:7) (145:7) (146:3) (146:15) (147:11) (147:16) (147:17) (147:21) (149:22) (150:2) (155:20) (160:12) (164:12) (164:25) (165:6) (166:17) (167:6) (167:15) (169:3) (172:25) (173:9) (173:19) (174:11) (174:17) (174:20) (176:2) (176:7) (178:7) (178:10) (178:16) (178:19) (179:4) (179:9) (180:19) (181:1) (181:9) (181:12) (182:13) (184:4) (184:11) (184:15) (185:15) (186:14) (186:15) (187:2) (187:19) (187:24) (188:5) (188:9) (188:16) (190:23) (192:7) (192:10) (192:16) (192:18) (192:23) (193:2) (193:25) (197:14) (198:4) (199:12) (200:1) (200:17) (201:5) (201:20) (202:6) (202:7) (202:11) (202:24) (203:4) (203:18) (204:12) (205:7) (205:11) (206:3) (206:19) (207:17) (207:25) (208:1) (208:13) (209:18) (209:20) (209:24) (213:16) (214:21) (215:7) (216:14) (216:20) (219:13) (221:1) (221:3) (223:8) (224:22) (226:8) (226:16) (226:23) (228:8) (229:7) (230:15) (233:25) (235:4) (237:8) (238:8) (240:7) (240:16) (240:18) (240:22) (243:20) (244:1) (244:15) (244:15) (245:10) (245:16) (245:24) (249:2) (252:23) (254:1) (255:10) (257:15) (257:22) (257:25) (258:15) (258:16) (258:22) (259:10) (259:12) (260:5) (260:9)
force (140:3) (140:4)
foreclose (228:22)
foregoing (260:7)
foremost (19:23)
forget (101:6) (144:20)
forgot (44:19) (226:25)
form (22:21) (22:22) (80:22) (157:8)
formed (74:17) (166:5) (192:13)
forming (236:7)
forward (61:24) (99:13) (177:12)
found (33:25) (36:17) (39:14) (43:22) (62:4) (64:9) (72:23) (73:4) (77:5)

fountains                                                                government  272

**fountains**  (80:16)(90:7)(90:22) (122:20)(128:15)(140:15) (163:10)(218:13)(224:2) (224:18)(232:14)(239:11) (245:19)(250:18)(255:23) (256:9)(258:6)(258:7)
**fountains**  (154:2)
**four**  (6:25)(110:16) (110:19)(190:9)(243:10) (243:11)
**fourteenth**  (95:3)
**frank**  (2:8)(2:22)
**frankly**  (18:13)(148:1)
**free**  (8:3)(17:16) (131:11)(138:4)(138:8) (138:11)(138:16)(138:17) (138:23)(180:13)
**freedom**  (129:25)
**frequently**  (254:20)
**friday**  (98:5)
**friend**  (52:7)(52:8)
**friends**  (52:1)(166:14) (166:22)
**from**  (5:21)(7:8)(7:9) (7:11)(9:23)(14:14) (15:14)(16:10)(19:19) (21:11)(22:19)(22:24) (30:14)(35:23)(37:13) (44:12)(46:2)(48:3)(49:7) (49:17)(58:5)(59:16) (65:24)(66:1)(69:13) (72:14)(75:17)(75:23) (76:10)(81:9)(82:20) (83:9)(84:20)(91:20) (99:13)(100:8)(101:18) (122:17)(122:18)(129:11) (129:13)(130:20)(131:2) (131:4)(136:3)(139:22) (145:25)(150:4)(154:22) (155:4)(159:24)(166:14) (168:5)(172:24)(176:3) (177:11)(177:14)(177:19) (181:19)(182:23)(183:3) (184:6)(184:12)(185:7) (188:23)(193:22)(198:15) (200:11)(205:14)(209:6) (221:10)(221:25)(233:3) (248:22)(249:17)(259:5)
**front**  (6:18)(16:11) (44:15)(60:18)(158:20) (158:23)
**fulfilled**  (20:8)
**fulfilling**  (236:20) (236:25)
**full-time**  (108:7) (108:12)(108:13)
**fully**  (166:5)
**functioning**  (159:8)
**fundamental**  (17:7) (19:22)(210:16)
**fundamentally**  (215:2)
**further**  (44:1)(45:17) (51:3)(60:16)(86:13) (90:25)(152:25)(177:19) (177:21)(177:22)(184:12) (240:24)(257:12)(259:6) (260:13)
**fuse**  (135:13)
**future**  (35:16)(36:3) (36:4)(36:5)(36:12) (40:17)(41:10)(46:19) (47:21)(56:17)(56:22) (74:24)(76:13)(76:15) (76:19)(77:2)(77:3) (77:12)(77:14)(77:18) (78:6)(80:23)(82:14) (92:5)(132:22)(140:24)

(141:7)(150:20)(159:2) (159:6)(161:3)(163:14) (173:16)(177:11)(220:25) (221:5)(221:7)(223:22) (225:16)(226:3)(226:11) (231:5)(232:15)(234:16) (235:19)(256:5)

## G

**gain**  (244:15)(245:17) (245:24)
**garfield**  (1:7)
**gather**  (14:14)
**gave**  (191:7)
**general**  (54:1)(114:8) (115:3)(115:18)(116:24) (128:4)(128:13)(129:7) (130:20)(164:12)(165:4) (202:2)(236:25)
**generalities**  (120:20)
**generally**  (125:25) (128:21)(165:25)
**generic**  (141:22)(157:14) (157:15)
**genetics**  (49:18)(49:24) (247:18)
**gentleman**  (13:5)(105:12) (197:3)
**gentlemen**  (5:11)(9:18) (96:13)(153:22)(178:6) (178:17)(184:23)(193:12) (239:4)
**get**  (11:24)(18:2)(18:12) (18:14)(20:17)(24:22) (29:20)(42:2)(44:6) (44:14)(54:3)(54:4) (60:16)(63:20)(69:12) (71:13)(71:15)(76:3) (76:4)(79:8)(80:6)(81:11) (84:16)(84:25)(92:6) (94:25)(99:5)(104:19) (111:18)(111:19)(112:7) (116:17)(118:21)(123:5) (128:12)(128:17)(130:2) (132:17)(139:25)(144:3) (147:20)(149:5)(151:16) (153:11)(153:15)(156:9) (156:22)(157:2)(158:7) (158:19)(161:10)(161:21) (163:9)(164:5)(169:10) (175:7)(184:21)(195:25) (198:8)(202:24)(205:24) (207:3)(208:14)(213:16) (215:5)(218:14)(218:15) (218:19)(218:20)(219:2) (220:7)(220:8)(220:16) (229:25)(235:11)(235:18) (238:18)(238:25)(240:9) (241:7)(252:5)(253:13) (256:21)
**gets**  (44:11)(151:14) (209:6)
**getting**  (15:8)(44:19) (103:20)(117:11)(151:8) (226:21)(226:24)(237:1) (242:16)
**girl**  (126:4)
**give**  (10:21)(11:15) (12:18)(18:19)(19:3) (20:18)(27:8)(28:18) (32:20)(36:8)(43:10) (44:2)(51:14)(59:12) (64:14)(87:18)(90:19) (91:7)(91:14)(92:17) (93:9)(95:11)(97:21) (102:22)(105:3)(111:20) (113:18)(113:20)(142:21)

(146:3)(149:19)(165:7) (172:2)(176:12)(182:7) (185:18)(195:6)(200:22) (205:14)(207:13)(213:21) (219:13)(229:13)(237:16) (242:17)(251:3)(251:17) (251:19)(254:21)(255:9) (255:17)(255:20)
**given**  (65:10)(85:9) (91:3)(91:5)(91:10) (91:11)(103:9)(128:3) (132:15)(132:25)(144:10) (233:7)(247:7)(260:16)
**gives**  (172:12)(195:15) (214:2)(232:1)
**giving**  (144:6)
**glad**  (21:8)(66:5) (101:15)(193:24)(214:3) (215:12)
**glean**  (16:10)
**goal**  (74:17)
**god**  (147:4)(150:24) (180:5)
**goes**  (11:4)(21:18)(29:5) (30:4)(30:20)(42:19) (43:25)(44:11)(44:12) (55:6)(67:4)(67:23) (109:2)(109:3)(120:8) (140:15)(141:25)(151:14) (156:10)(160:12)(172:22) (176:2)(209:6)(214:17) (218:6)(226:8)(226:19)
**going**  (5:23)(6:1)(8:2) (11:1)(11:6)(11:7)(11:8) (11:17)(11:23)(12:25) (13:10)(16:2)(20:23) (22:7)(22:8)(24:10) (27:23)(29:3)(29:20) (30:3)(32:24)(35:8)(35:9) (36:3)(36:4)(36:11) (38:19)(38:22)(40:22) (44:15)(44:16)(46:6) (46:12)(47:17)(51:11) (54:8)(55:5)(56:16) (56:19)(56:23)(59:24) (61:8)(64:12)(67:10) (67:11)(68:20)(69:9) (70:20)(71:13)(72:1) (72:8)(74:9)(76:17)(77:4) (77:10)(77:15)(80:1) (81:18)(82:17)(90:8) (91:20)(93:7)(96:16) (96:18)(97:2)(97:6) (103:15)(103:16)(103:18) (104:16)(104:19)(104:21) (109:22)(110:11)(111:15) (111:17)(112:10)(112:13) (112:14)(112:15)(112:16) (112:17)(113:4)(113:20) (114:19)(115:24)(117:2) (121:1)(121:16)(123:9) (123:10)(123:12)(124:9) (124:11)(125:19)(128:11) (133:4)(133:8)(135:10) (135:16)(135:17)(140:12) (140:24)(141:10)(141:16) (142:17)(142:19)(144:4) (144:9)(147:6)(147:7) (147:14)(147:19)(149:17) (149:18)(150:18)(150:19) (151:1)(151:5)(151:8) (151:11)(151:12)(152:23) (153:3)(153:5)(154:19) (155:17)(156:5)(157:6) (158:2)(161:2)(162:16) (162:19)(162:25)(163:14) (163:19)(169:7)(173:16)

(173:23)(176:7)(176:8) (179:7)(182:2)(185:18) (187:18)(189:19)(195:16) (195:18)(195:19)(195:24) (196:19)(198:13)(199:12) (205:23)(206:9)(206:24) (208:4)(208:7)(208:13) (210:14)(213:9)(213:10) (214:21)(214:22)(214:23) (215:15)(215:16)(216:22) (216:23)(218:3)(218:7) (219:18)(220:7)(220:8) (220:15)(221:5)(221:6) (221:7)(223:5)(223:22) (223:24)(225:7)(227:14) (227:15)(227:24)(228:8) (228:18)(228:20)(228:22) (235:6)(237:16)(237:20) (237:22)(240:5)(240:7) (241:21)(241:25)(245:7) (245:9)(248:12)(249:24) (251:16)(251:19)(251:20) (252:2)(253:25)(254:1) (254:8)(254:21)(254:22) (254:23)(255:5)(255:8) (255:18)(256:24)(257:4) (257:5)(258:14)(258:23) (259:5)
**gone**  (109:17)(114:6) (126:13)
**good**  (5:6)(5:15)(5:17) (5:19)(6:9)(6:10)(9:20) (9:21)(10:19)(12:24) (13:2)(13:11)(13:14) (13:15)(13:20)(14:3) (14:4)(29:15)(41:12) (50:2)(57:23)(57:24) (58:23)(85:13)(100:12) (101:2)(102:17)(102:20) (105:5)(105:6)(105:10) (105:19)(105:22)(105:23) (106:10)(112:21)(113:16) (117:2)(142:13)(151:15) (153:12)(154:18)(159:19) (163:5)(179:16)(179:17) (181:4)(181:17)(182:1) (182:23)(186:10)(186:11) (187:20)(190:3)(193:7) (195:2)(197:24)(199:12) (207:21)(234:13)(234:19) (239:3)(239:13)(239:15) (247:22)
**gordon**  (2:4)(13:4) (105:9)(196:24)
**got**  (11:9)(12:6)(16:11) (20:18)(28:22)(42:1) (42:4)(58:6)(66:5)(67:14) (67:15)(67:25)(68:23) (71:20)(78:1)(81:5) (82:14)(83:13)(83:19) (90:17)(91:17)(91:18) (91:19)(103:17)(104:4) (106:15)(107:4)(110:13) (111:6)(112:10)(113:13) (114:7)(118:22)(126:4) (126:20)(126:22)(127:5) (127:6)(133:1)(145:21) (154:4)(159:1)(160:11) (183:15)(187:3)(196:12) (204:13)(213:7)(216:23) (247:8)(255:9)(255:19)
**gotcha**  (110:3)(119:14) (125:4)(139:6)(143:16) (156:16)
**gotten**  (73:15)'158:15) (214:24)
**government**  (44:5)(261:4)

governor                                                              have    273

governor (54:2)(60:10)
(127:24)
grant (258:14)
granted (9:5)(128:21)
(181:3)(184:11)(188:6)
(192:18)
grasp (154:18)(164:5)
great (9:14)(29:13)
(29:14)(44:11)(52:14)
(62:23)(62:25)(125:24)
(129:23)(150:6)(150:7)
(190:19)(226:23)(241:10)
greater (160:6)
gri- (5:13)
gricelda (3:5)(4:7)
(5:14)(5:15)(6:5)(9:5)
gross (117:7)
ground (144:12)(148:22)
(200:3)
group (10:11)(14:12)
(23:19)(102:9)(179:19)
(194:14)
growing (168:9)
gruenau (3:22)(4:6)
(192:20)(192:21)(192:23)
(193:3)(193:4)(193:5)
(193:7)(193:10)(193:14)
(193:15)(193:17)(193:19)
(193:20)(193:21)(193:23)
(194:8)(194:12)(194:17)
(194:23)(195:1)(195:5)
(195:10)(195:14)(195:21)
(196:2)(196:4)(196:10)
(196:14)(196:25)(197:12)
(197:18)(200:4)(200:6)
(210:19)(238:18)(238:23)
(238:24)(239:2)(239:19)
(249:16)(250:13)(250:15)
(250:21)(250:23)(251:1)
(251:5)(251:8)(251:12)
(251:14)(251:22)(251:24)
(252:2)(252:7)(252:11)
(252:16)(252:20)(252:24)
(253:1)(253:4)(253:8)
(253:11)(253:18)(253:20)
(253:24)(254:3)(254:6)
(254:9)(254:12)(254:17)
(254:25)(255:3)(255:7)
(255:16)(255:20)(256:8)
(256:16)(256:22)(257:2)
(257:8)(257:11)(257:17)
(257:18)(258:17)(258:19)
(258:20)(258:24)(259:3)
(259:7)
g-r-u-e-n-a-u (193:14)
guarantees (106:21)
guards (78:14)(133:11)
(223:18)
guess (5:25)(80:24)
(88:23)(88:24)(89:13)
(98:1)(102:5)(115:14)
(115:18)(115:24)(117:8)
(123:24)(124:8)(124:14)
(133:11)(134:23)(134:24)
(135:7)(136:11)(137:11)
(138:21)(139:23)(140:4)
(142:6)(143:7)(143:19)
(143:23)(145:24)(149:22)
(165:24)(167:14)(169:8)
(169:16)(175:3)(181:3)
(196:7)(237:1)(240:19)
guessing (116:3)(116:5)
(118:7)
guide (11:2)(103:5)
(103:6)(195:13)(195:20)
guilt (20:4)(157:8)

(191:14)(192:13)(218:7)
guilt/innocence (59:16)
(64:18)(68:25)(78:25)
(83:17)
guilty (15:18)(17:16)
(20:7)(20:13)(21:16)
(22:6)(22:8)(27:13)
(27:17)(27:19)(31:21)
(32:2)(32:5)(32:7)(32:9)
(33:25)(39:14)(43:22)
(44:23)(45:6)(45:15)
(55:24)(56:1)(56:15)
(62:5)(64:8)(65:6)(65:24)
(67:2)(72:2)(72:3)(72:15)
(72:23)(73:4)(77:5)(79:3)
(79:5)(79:23)(80:2)
(80:16)(81:10)(83:14)
(88:16)(90:8)(90:15)
(90:22)(91:19)(116:16)
(122:22)(123:1)(128:16)
(132:10)(140:16)(140:21)
(152:8)(157:11)(158:8)
(158:17)(163:10)(201:4)
(201:5)(201:8)(201:21)
(203:14)(204:13)(204:21)
(204:23)(205:4)(205:5)
(205:18)(211:11)(213:11)
(214:13)(214:14)(214:15)
(217:24)(218:5)(218:13)
(220:4)(220:13)(224:2)
(224:19)(227:3)(227:6)
(227:12)(231:3)(232:14)
(235:15)(236:7)(236:15)
(244:16)(245:20)(248:12)
(249:23)(250:18)(255:23)
(258:7)
gun (25:10)(29:4)(44:12)
(44:18)(45:9)(45:22)
(66:24)(129:13)(202:18)
(214:1)(214:7)(226:19)
(226:21)
gunpoint (248:23)
gunshot (21:11)(214:5)
gut (76:2)
guy (21:8)(22:6)(29:4)
(29:9)(30:6)(30:14)(66:5)
(109:10)(109:11)(120:24)
(125:19)(129:15)(143:12)
(146:2)(151:12)(151:13)
(207:2)(207:25)(209:6)
(214:3)(216:21)(217:8)
(225:19)(225:21)(225:24)
(231:11)

─────────── H ───────────

had (1:20)(11:1)(14:9)
(17:5)(33:7)(49:13)(50:5)
(50:6)(51:24)(60:20)
(61:14)(61:20)(62:5)
(68:16)(78:12)(78:13)
(78:14)(80:17)(80:20)
(83:22)(85:14)(89:7)
(90:24)(92:9)(94:16)
(103:4)(103:11)(108:11)
(127:23)(129:15)(132:22)
(136:2)(136:16)(142:12)
(143:12)(144:13)(145:8)
(153:24)(166:17)(168:13)
(170:18)(191:2)(194:19)
(215:12)(216:2)(217:16)
(217:19)(218:22)(219:11)
(229:23)(239:15)(239:25)
(242:24)
hadn't (34:8)(176:24)
(219:10)(231:8)(240:22)
hair (22:5)
hand (10:12)(29:24)

(54:8)(102:11)(194:21)
(199:8)(260:16)
handed (45:22)
handle (79:8)
handley (2:3)(6:1)(6:2)
(6:4)(6:8)(8:20)(8:22)
(9:8)(13:1)(13:2)(13:21)
(13:22)(14:2)(43:5)
(57:16)(60:7)(66:20)
(68:24)(75:7)(79:10)
(89:14)(93:15)(93:18)
(95:8)(95:10)(105:4)
(105:5)(106:4)(106:5)
(106:9)(107:3)(107:7)
(107:10)(115:21)(145:16)
(145:19)(145:24)(171:18)
(174:16)(174:18)(175:25)
(177:19)(177:21)(181:10)
(196:17)(196:18)(196:19)
(196:21)(197:14)(197:16)
(197:19)(198:2)(215:15)
(233:21)(233:24)(233:25)
(238:14)(238:16)(250:3)
(250:8)(250:12)(255:11)
(255:13)(257:21)(257:23)
(258:10)(259:9)
hands (47:18)(226:21)
happen (19:13)(30:10)
(31:9)(33:1)(34:1)(43:7)
(55:5)(76:18)(103:15)
(138:25)(160:12)(161:2)
(173:24)(195:18)(201:8)
(205:2)(206:5)(209:12)
(210:5)(220:5)(236:13)
happened (78:6)(98:19)
(98:23)(116:4)(138:23)
(156:15)(210:14)(229:2)
happens (27:17)(32:11)
(121:22)(128:15)
happy (79:16)
hard (29:15)(33:11)
(142:1)(144:3)(164:12)
(164:25)
harder (208:20)
hardworking (144:24)
harmed (131:7)
has (8:23)(9:25)(11:10)
(21:21)(29:18)(35:6)
(41:4)(44:2)(62:15)(63:5)
(64:21)(66:3)(68:23)
(71:23)(72:6)(72:7)
(72:13)(73:2)(75:13)
(77:18)(77:25)(78:1)
(78:4)(78:6)(85:22)(89:7)
(89:18)(89:24)(89:25)
(95:15)(95:16)(114:20)
(117:14)(121:13)(122:1)
(135:6)(152:1)(158:7)
(164:8)(164:9)(164:11)
(172:2)(183:15)(187:2)
(188:25)(194:2)(201:3)
(201:23)(201:24)(205:17)
(207:21)(211:1)(212:24)
(213:25)(225:20)(226:12)
(238:5)(240:5)(254:5)
(258:4)
hasn't (95:17)(210:14)
have (5:7)(6:13)(6:18)
(7:7)(7:11)(7:18)(7:20)
(7:22)(8:20)(8:24)(10:6)
(11:1)(11:3)(12:17)
(14:10)(14:19)(15:10)
(15:13)(15:16)(15:23)
(17:8)(17:9)(17:12)
(18:14)(20:1)(20:16)
(20:19)(21:3)(21:9)
(21:12)(22:14)(23:14)

(23:16)(24:6)(24:9)
(26:18)(28:8)(28:24)
(29:10)(30:23)(31:1)
(31:16)(33:1)(34:13)
(35:17)(37:17)(39:8)
(40:11)(40:16)(40:19)
(40:22)(41:23)(43:9)
(43:12)(45:1)(45:3)
(45:15)(45:16)(49:3)
(53:17)(53:20)(55:14)
(56:11)(57:24)(58:10)
(59:24)(60:11)(60:24)
(60:25)(61:5)(61:20)
(61:24)(62:22)(64:9)
(65:2)(65:3)(65:4)(66:10)
(68:12)(68:25)(71:18)
(73:14)(75:17)(75:19)
(75:20)(76:2)(76:11)
(77:5)(77:19)(79:5)(80:8)
(80:9)(80:14)(81:11)
(81:14)(81:19)(81:21)
(82:6)(82:13)(83:4)(83:6)
(83:9)(83:15)(83:18)
(83:20)(85:13)(89:11)
(89:16)(89:18)(90:12)
(90:14)(90:19)(90:23)
(92:20)(92:24)(93:4)
(93:15)(93:21)(95:9)
(95:18)(95:20)(96:10)
(96:14)(98:8)(98:18)
(99:4)(101:3)(101:16)
(103:4)(104:16)(106:13)
(106:15)(106:16)(108:7)
(108:15)(111:21)(111:25)
(116:8)(117:11)(117:13)
(117:18)(119:5)(119:15)
(120:20)(121:4)(122:17)
(123:1)(123:6)(124:13)
(125:1)(125:3)(126:3)
(127:8)(127:12)(128:5)
(128:24)(130:4)(130:18)
(131:1)(131:6)(131:9)
(131:10)(133:23)(134:14)
(135:13)(135:20)(136:15)
(136:17)(137:17)(138:9)
(138:14)(138:19)(139:8)
(139:10)(139:22)(142:2)
(142:17)(142:19)(142:20)
(142:21)(142:22)(142:23)
(144:3)(144:10)(144:19)
(144:23)(145:20)(146:21)
(147:3)(147:11)(147:18)
(148:2)(148:11)(148:22)
(148:25)(149:4)(150:11)
(150:13)(151:9)(151:23)
(152:2)(152:25)(153:21)
(154:17)(154:18)(155:8)
(156:13)(156:15)(157:11)
(158:15)(158:20)(158:21)
(158:23)(159:23)(161:6)
(162:6)(162:9)(163:4)
(163:6)(163:10)(163:13)
(165:6)(165:10)(165:13)
(166:13)(169:8)(170:8)
(170:9)(170:10)(170:11)
(170:23)(171:6)(171:7)
(171:9)(171:20)(171:22)
(171:24)(172:22)(173:3)
(174:1)(174:2)(174:11)
(174:16)(174:19)(175:1)
(175:2)(175:8)(175:15)
(175:16)(175:25)(178:15)
(180:10)(180:19)(181:17)
(182:13)(184:3)(184:8)
(184:20)(185:14)(185:24)
(187:3)(187:20)(187:24)
(188:7)(188:15)(189:14)

haven't                                                                                                  how        274

(189:15)(192:1)(192:10)
(193:8)(193:25)(198:17)
(199:8)(199:11)(199:23)
(200:3)(200:8)(200:19)
(200:24)(201:19)(202:3)
(202:14)(202:15)(204:3)
(204:10)(204:11)(204:12)
(204:13)(206:6)(209:13)
(209:15)(210:23)(211:3)
(211:19)(211:22)(212:2)
(212:7)(212:9)(212:11)
(212:23)(212:24)(213:15)
(213:18)(213:19)(214:1)
(214:6)(214:9)(215:2)
(215:7)(215:12)(215:22)
(215:23)(216:7)(216:13)
(217:2)(217:3)(219:13)
(219:19)(219:21)(219:22)
(221:18)(221:22)(222:7)
(222:11)(222:12)(223:24)
(223:25)(226:11)(226:13)
(226:15)(227:14)(229:18)
(230:12)(231:9)(233:25)
(236:4)(237:25)(238:6)
(238:7)(238:25)(239:13)
(240:17)(241:23)(242:1)
(242:3)(242:6)(242:11)
(242:23)(243:1)(243:9)
(244:22)(244:24)(248:6)
(248:12)(249:7)(250:2)
(250:3)(252:5)(252:7)
(252:14)(252:18)(254:12)
(255:23)(257:21)(257:25)
(258:21)(259:5)(261:7)
**haven't** (18:11)(19:12)
(19:25)(20:8)(28:13)
(28:14)(34:14)(35:21)
(36:18)(37:5)(37:6)(37:7)
(40:2)(42:9)(43:6)(66:25)
(104:15)(128:3)(130:12)
(166:2)(210:23)(210:24)
(214:24)(226:2)(240:19)
(240:20)
**having** (72:16)(115:15)
(123:6)(129:25)(130:1)
(137:7)(142:12)(142:15)
(160:24)(221:3)(221:4)
**head** (12:12)(16:17)
(17:14)(22:11)(52:22)
(120:8)(120:25)(125:14)
(129:14)(148:14)(161:4)
(168:4)(187:12)(200:2)
(203:16)(203:20)(209:8)
(210:9)(210:21)(217:25)
(219:9)(220:22)(222:19)
(224:23)(225:15)(233:17)
(233:20)(244:9)(246:6)
(250:15)
**heads** (57:25)
**hear** (19:8)(23:4)(23:5)
(23:19)(28:24)(29:2)
(35:5)(35:6)(35:7)(35:8)
(40:8)(52:16)(55:19)
(56:11)(56:19)(57:8)
(58:4)(76:10)(84:15)
(84:20)(85:12)(85:15)
(91:6)(94:23)(95:16)
(160:3)(201:12)(206:12)
(220:20)(223:25)(233:14)
(254:20)(256:25)(257:5)
**heard** (1:19)(11:11)
(19:7)(22:25)(23:14)
(28:14)(28:15)(37:7)
(40:2)(68:25)(69:5)(69:6)
(69:17)(80:15)(83:17)
(87:16)(90:25)(95:17)
(108:10)(128:24)(130:5)

(130:10)(155:19)(160:13)
(176:24)(176:25)(191:3)
(191:12)(200:11)(206:6)
(212:18)(235:5)(237:6)
(257:5)
**hearing** (58:6)(79:16)
(98:15)(237:16)
**hears** (253:15)
**heartfelt** (117:4)
**heather** (5:12)(178:19)
(184:24)(188:18)(260:4)
(260:19)(261:17)
**he'd** (80:20)
**hedge** (111:20)
**heinous** (18:1)(25:13)
(66:3)(190:23)(202:22)
(207:11)(255:24)
**held** (1:21)(216:4)
(226:16)(227:6)
**he'll** (39:9)(111:20)
(133:25)(141:7)
**hello** (154:11)(154:12)
(190:4)(196:25)
**help** (35:9)(39:14)
(40:10)(41:16)(41:18)
(78:4)(101:13)(107:1)
(107:6)(109:1)(112:8)
(145:1)(205:23)(224:3)
(224:21)
**helping** (107:11)(189:8)
(224:19)
**helpless** (28:22)(29:3)
(206:24)(207:1)
**her** (12:14)(12:22)(13:3)
(13:4)(25:11)(25:12)
(38:11)(38:12)(44:14)
(44:22)(45:14)(54:23)
(59:6)(94:1)(94:4)(94:8)
(94:10)(94:12)(94:13)
(94:18)(105:8)(126:20)
(126:21)(127:18)(172:3)
(176:1)(192:25)(196:20)
(196:23)(202:20)(222:19)
(226:20)(227:2)(227:3)
(227:4)(258:12)(258:18)
**here** (6:11)(6:15)(7:25)
(8:17)(10:2)(10:3)(11:9)
(11:16)(13:7)(14:5)
(19:12)(19:23)(24:22)
(24:24)(27:13)(38:11)
(44:15)(47:3)(49:16)
(51:6)(52:2)(58:13)
(61:24)(64:25)(70:13)
(76:5)(92:24)(101:16)
(101:19)(101:25)(102:2)
(102:3)(103:5)(103:15)
(103:17)(105:4)(105:9)
(105:14)(105:17)(106:2)
(106:15)(107:11)(114:1)
(114:17)(118:12)(121:15)
(122:7)(126:17)(137:11)
(138:11)(140:8)(145:13)
(150:14)(155:20)(157:18)
(157:25)(161:21)(168:13)
(169:6)(171:20)(174:1)
(175:16)(178:2)(179:4)
(179:19)(180:12)(181:20)
(183:18)(185:7)(185:13)
(188:13)(188:15)(188:16)
(189:4)(189:8)(189:10)
(192:4)(193:25)(194:4)
(194:6)(194:10)(195:12)
(197:3)(197:7)(203:17)
(207:18)(210:19)(210:25)
(212:24)(215:18)(222:20)
(226:22)(228:18)(230:15)
(230:20)(233:11)(234:7)

(235:10)(235:21)(235:22)
(236:19)(237:13)(239:16)
(239:19)(239:24)(240:10)
(242:16)(242:23)(243:11)
(244:6)(245:7)(248:9)
(249:18)(256:12)(258:21)
(258:22)(259:1)(259:11)
**hereby** (260:6)
**here's** (44:17)(76:10)
(87:22)(106:23)
**herrera** (3:5)(4:7)(5:5)
(5:6)(5:9)(5:14)(5:15)
(5:16)(5:17)(5:19)(6:5)
(6:9)(7:23)(7:25)(8:1)
(8:4)(8:7)(8:10)(8:12)
(8:15)(8:18)(9:5)
**he's** (20:3)(20:5)(20:7)
(24:3)(24:13)(26:11)
(27:13)(28:20)(29:13)
(29:14)(29:15)(29:19)
(29:20)(29:21)(29:22)
(30:3)(33:24)(34:4)(36:3)
(36:4)(38:17)(38:22)
(39:22)(40:12)(40:22)
(46:22)(47:13)(47:21)
(73:4)(73:6)(74:10)
(74:11)(74:14)(77:15)
(80:2)(81:12)(82:5)
(90:17)(101:20)(101:21)
(126:24)(132:25)(133:1)
(133:3)(133:4)(133:8)
(134:11)(136:1)(136:2)
(139:16)(140:24)(140:25)
(141:6)(141:7)(141:8)
(152:12)(157:19)(189:4)
(192:12)(203:5)(204:21)
(204:23)(207:20)(207:22)
(207:23)(207:25)(208:3)
(208:4)(208:7)(208:8)
(208:13)(211:4)(211:15)
(212:12)(214:4)(220:9)
(220:13)(221:6)(221:8)
(223:2)(226:3)(228:4)
(229:23)
**hey** (44:8)(76:11)
**high** (109:7)
**higher** (162:20)(205:3)
(216:4)
**highest** (107:5)
**high-powered** (156:7)
**hikel** (2:4)(13:4)(105:9)
(105:10)(145:17)(145:22)
(181:5)(196:24)(233:22)
**him** (9:25)(13:12)(20:4)
(20:11)(21:6)(21:25)
(22:8)(29:3)(29:6)(30:1)
(33:22)(34:1)(34:7)
(39:14)(40:24)(50:7)
(50:8)(72:25)(73:14)
(74:5)(74:13)(85:21)
(90:14)(90:20)(90:22)
(92:8)(92:17)(97:21)
(101:21)(102:1)(105:20)
(134:2)(141:3)(141:4)
(141:13)(141:19)(141:20)
(148:14)(152:7)(153:14)
(164:8)(174:23)(181:11)
(184:6)(188:25)(189:9)
(194:2)(207:13)(208:1)
(208:9)(208:23)(209:8)
(210:2)(211:1)(211:3)
(211:15)(213:2)(213:10)
(213:25)(214:7)(217:9)
(217:10)(217:16)(217:17)
(224:2)(224:19)(229:13)
**his** (21:24)(29:13)
(29:15)(29:18)(29:24)

(29:25)(30:1)(30:3)(30:5)
(30:6)(30:7)(35:7)(38:19)
(41:5)(50:6)(54:22)
(54:23)(74:17)(80:18)
(82:5)(85:3)(85:5)(94:9)
(101:22)(117:23)(129:15)
(133:5)(141:13)(143:12)
(148:14)(148:15)(151:14)
(153:24)(167:15)(172:3)
(184:6)(189:5)(194:4)
(207:24)(208:8)(208:10)
(208:11)(208:15)(208:16)
(211:3)(212:23)(223:5)
(225:19)(225:22)(226:9)
(229:2)(229:3)(229:11)
**hispanics** (120:17)
**history** (159:7)(159:14)
(159:15)(159:16)(159:20)
(224:5)
**hit** (16:17)(17:13)
(23:24)(38:12)(168:4)
(222:13)(225:15)
**hitting** (110:3)(110:5)
**hoe** (52:13)
**hold** (22:23)(162:19)
(237:19)(250:9)
**holdings** (95:6)
**holds** (29:24)(30:6)
(208:15)
**holly** (2:18)(2:19)
**home** (32:3)(42:20)
(85:14)(99:3)(126:12)
(204:18)(211:12)(226:7)
(226:17)
**homework** (108:16)
**honest** (59:23)(70:10)
(249:7)(249:17)
**honestly** (60:1)(89:20)
(191:20)(242:17)
**honesty** (92:1)(242:13)
**honk** (44:17)
**honor** (6:4)(8:22)(9:2)
(13:22)(57:18)(79:10)
(93:22)(94:2)(95:10)
(95:14)(95:22)(95:25)
(106:5)(171:19)(177:23)
(179:11)(180:20)(180:25)
(181:10)(182:18)(186:5)
(189:23)(192:11)(197:16)
(250:4)(250:12)
**honorable** (1:21)
**hope** (34:3)(54:21)(76:4)
(92:13)(92:16)(145:10)
(216:3)(216:4)
**hopefully** (97:16)(97:17)
**hopes** (146:21)
**hoping** (14:11)(18:10)
(216:9)
**horn** (44:17)
**horrible** (29:6)(85:16)
(225:25)
**hospital** (29:19)(208:3)
**hours** (107:24)(108:4)
(111:14)(113:9)
**house** (44:4)(44:13)
**how** (5:6)(5:18)(9:12)
(9:14)(10:25)(18:4)
(19:17)(19:18)(20:21)
(23:13)(26:16)(33:3)
(33:4)(33:6)(33:15)
(33:16)(33:18)(38:25)
(40:13)(46:25)(51:11)
(52:8)(52:17)(53:3)
(53:11)(54:1)(60:1)(64:3)
(66:22)(80:8)(81:18)
(85:12)(89:9)(92:11)
(101:2)(103:19)(104:7)

however                                                                    interpretation 275

(104:25) (106:10) (107:25)
(109:11) (110:11) (111:9)
(114:11) (114:14) (115:12)
(116:10) (116:24) (120:17)
(121:6) (124:15) (124:17)
(125:22) (126:25) (134:13)
(136:4) (136:12) (138:17)
(145:20) (146:18) (154:13)
(158:6) (161:5) (164:10)
(165:18) (165:19) (167:21)
(168:25) (169:6) (169:16)
(171:13) (178:12) (180:3)
(181:14) (183:8) (183:9)
(183:11) (184:17) (186:16)
(186:22) (190:15) (192:22)
(193:5) (193:6) (196:9)
(197:22) (198:9) (198:11)
(200:23) (206:23) (218:19)
(218:25) (223:7) (229:22)
(231:25) (233:11) (233:12)
(233:21) (234:1) (234:24)
(234:25) (235:1) (236:13)
(237:9) (241:20) (245:4)
(245:5) (255:25)
**however** (42:20) (226:10)
**huge** (109:21) (121:4)
(123:22) (156:9)
**huh** (147:4) (154:15)
(178:23) (255:12)
**huh-uh** (48:4) (206:8)
(221:17) (231:1)
**huh-uhs** (12:21)
**human** (7:9) (7:10) (23:21)
(65:21) (73:8) (76:16)
(76:24) (131:9) (140:6)
(148:18) (150:23) (164:18)
(164:21)
**hundred** (49:8) (113:20)
(127:2) (173:5) (242:18)
**hundreds** (14:8)
**hunt** (125:22)
**hurt** (133:8) (217:8)
**hurting** (162:1)
**husband** (29:13) (207:21)
**hypotheticals** (165:9)

---

**I**

---

**i -- we** (164:4)
**i'd** (28:24) (40:15) (41:4)
(97:5) (97:11) (106:20)
(112:25) (123:23) (125:2)
(127:2) (127:14) (128:1)
(131:2) (134:17) (136:21)
(136:22) (142:22) (178:19)
(190:19) (211:19) (211:22)
(214:3) (241:23) (242:1)
**idea** (33:1) (43:9) (44:11)
(61:20) (81:21) (101:12)
(117:2) (222:7)
**ideas** (11:24) (98:19)
(103:20) (196:3)
**identity** (67:12)
**if the** (127:19)
**i'll** (10:19) (16:1)
(16:16) (18:5) (18:24)
(20:18) (25:4) (28:12)
(29:1) (33:10) (37:3)
(40:25) (44:17) (59:13)
(70:10) (76:2) (79:15)
(93:9) (108:19) (108:20)
(116:10) (116:14) (118:15)
(128:13) (133:14) (140:14)
(145:25) (148:25) (171:19)
(174:9) (177:14) (182:7)
(184:21) (195:2) (198:20)
(199:2) (199:22) (200:3)
(200:6) (200:22) (206:1)

(214:19) (215:10) (216:12)
(224:17) (226:22) (233:6)
(235:23) (242:3) (242:6)
(250:7)
**illinois** (95:6)
**illness** (68:7)
**illustrate** (20:19)
(21:18) (29:11) (207:18)
(210:13) (213:4)
**illustrates** (210:15)
**illustration** (28:18)
(44:3)
**i'm** (5:20) (5:21) (8:2)
(8:10) (9:14) (9:16) (9:22)
(10:2) (10:9) (16:2) (18:4)
(18:12) (20:12) (21:8)
(21:19) (22:7) (22:8) (23:4)
(29:3) (36:2) (36:5) (40:22)
(44:15) (44:16) (44:19)
(53:13) (54:8) (54:19)
(58:21) (58:23) (59:1)
(59:24) (60:20) (64:12)
(65:25) (66:5) (70:11)
(71:11) (74:9) (76:17)
(77:4) (77:10) (77:14)
(77:20) (79:7) (79:8)
(79:16) (79:18) (80:25)
(81:2) (81:7) (82:17)
(84:15) (84:25) (92:18)
(93:1) (93:7) (95:24)
(96:16) (97:2) (99:20)
(99:24) (101:17) (101:25)
(102:1) (103:11) (104:17)
(106:11) (106:16) (107:10)
(108:16) (108:17) (108:23)
(109:17) (111:17) (112:13)
(112:14) (112:20) (113:10)
(114:2) (115:22) (115:23)
(116:3) (116:5) (117:6)
(117:7) (118:7) (118:16)
(119:8) (119:10) (120:3)
(120:19) (120:24) (121:16)
(124:5) (124:9) (124:11)
(124:14) (125:21) (125:22)
(128:21) (130:4) (130:9)
(130:25) (131:6) (133:12)
(135:1) (136:10) (136:13)
(137:11) (138:10) (139:5)
(140:4) (140:6) (141:17)
(142:7) (142:25) (143:7)
(143:8) (143:14) (144:2)
(146:1) (146:2) (146:5)
(146:17) (146:18) (147:19)
(149:18) (149:25) (150:1)
(150:3) (150:15) (150:18)
(150:24) (151:1) (153:5)
(153:6) (155:11) (155:18)
(155:22) (156:4) (156:7)
(156:8) (158:2) (159:3)
(160:19) (162:15) (162:25)
(163:19) (164:5) (164:14)
(164:17) (164:18) (164:19)
(164:20) (164:24) (169:7)
(172:20) (172:22) (176:8)
(179:7) (181:18) (181:19)
(181:20) (182:2) (185:6)
(185:10) (185:13) (185:18)
(188:23) (189:3) (189:8)
(189:13) (193:7) (193:21)
(194:3) (194:6) (196:7)
(197:23) (198:3) (200:1)
(203:24) (204:5) (210:13)
(213:9) (213:10) (214:3)
(214:14) (214:20) (215:5)
(215:6) (215:12) (216:22)
(217:23) (220:15) (221:2)
(221:4) (221:19) (226:21)

(226:24) (231:6) (233:9)
(235:3) (235:4) (235:5)
(235:9) (236:20) (236:24)
(236:25) (237:1) (237:15)
(239:17) (240:14) (242:13)
(243:15) (245:7) (250:6)
(251:16) (251:20) (253:10)
(255:10) (258:14) (259:5)
**i'm -- i'm** (144:19)
**imagine** (156:22) (185:22)
(243:7)
**immature** (166:9)
**immediately** (127:16)
(128:10)
**impacted** (68:10)
**imperfect** (120:1)
(122:12) (122:15)
**implication** (171:20)
**importance** (214:17)
**important** (79:9) (81:3)
(89:4) (106:18) (150:9)
(150:24) (157:16) (168:1)
(168:3) (206:3) (213:20)
(230:22) (233:13) (235:24)
(245:13)
**imposed** (228:16) (244:14)
**impossible** (140:6)
**impression** (199:20)
(215:6)
**impressive** (127:10)
**imprisonment** (139:24)
(228:15)
**inappropriate** (199:6)
**incapable** (236:7)
**incarcerated** (78:14)
(80:21)
**incentive** (54:20)
**inclination** (90:6) (95:18)
**inclined** (125:20)
(125:21) (135:3) (216:1)
(235:15) (235:17)
**include** (223:9)
**included** (260:10)
**including** (172:11)
(228:10)
**incompetent** (245:21)
**incorrigible** (126:5)
(225:19)
**incorrigibles** (75:14)
**incurable** (29:18)
**independent** (159:8)
(215:19) (237:11)
**index** (3:1) (4:1)
**indicate** (199:15)
**indicated** (63:11) (77:9)
(86:9) (240:17) (258:4)
**indicted** (20:3) (201:5)
(211:1)
**indictment** (20:4) (20:11)
(20:22) (20:25) (27:9)
(31:21) (65:3) (66:19)
(66:21) (66:22) (66:24)
(67:5) (67:10) (67:11)
(211:2) (213:16) (213:17)
(213:23) (213:24)
**individual** (1:12) (17:22)
(43:19) (67:12) (78:11)
(85:25) (107:15) (118:1)
(124:22) (135:7) (163:25)
(172:16) (173:11) (191:14)
(205:11) (213:25) (220:17)
**individually** (107:13)
(125:2) (172:14)
**individuals** (122:19)
(167:8)
**industrial** (2:9) (2:22)
(260:21) (261:19)

**inequit-** (119:23)
**inequitable** (119:24)
(119:25) (120:2) (120:15)
**inevitable** (139:22)
(141:5)
**influence** (52:21)
(191:18) (245:5)
**inform** (84:10)
**information** (84:11)
(100:10) (136:9) (191:12)
**informing** (247:22)
**ingested** (246:16)
**inherently** (135:5) (135:6)
**initial** (169:15)
**initiative** (132:6)
**injects** (30:5)
**injured** (131:7)
**inmates** (39:3) (42:10)
(78:15) (131:8) (132:4)
(133:10) (133:21) (223:18)
**innate** (134:18)
**innocence** (33:19) (65:15)
(65:17) (117:9) (117:24)
(118:10) (119:10) (122:17)
(157:19) (191:14) (219:8)
(219:18)
**innocent** (17:17) (17:21)
(17:23) (19:24) (20:8)
(20:11) (33:22) (34:8)
(64:24) (65:19) (65:22)
(66:16) (117:22) (123:18)
(157:19) (210:20) (210:22)
(211:1) (211:15) (212:12)
(248:21)
**inquire** (250:8)
**insane** (74:14) (124:12)
(245:21)
**insanity** (68:7)
**inside** (75:22) (197:24)
**instance** (80:15) (85:18)
**instead** (10:2) (102:2)
(185:14) (189:4) (194:4)
(205:10) (216:13) (220:19)
**instruments** (110:2)
**integrity** (117:14)
(118:12)
**intend** (30:7) (208:16)
(208:23)
**intended** (36:21) (73:24)
(202:17) (232:24)
**intending** (74:10)
**intent** (236:7)
**intent -- guilty** (36:18)
**intentional** (25:16)
(25:23) (25:25) (26:7)
(26:8) (26:10) (26:11)
(26:13) (26:14) (26:24)
(27:13) (27:20) (28:1)
(30:12) (31:15) (36:18)
(68:1) (73:6) (75:4) (91:19)
(140:17) (202:16) (203:1)
(203:2) (203:4) (203:6)
(203:7) (203:8) (203:11)
(204:14) (205:5) (205:8)
(207:19) (209:1) (217:2)
(217:7) (217:20) (217:21)
(231:4) (236:1) (236:5)
(236:10) (236:15)
**intentionally** (45:1)
(68:12) (73:21) (89:25)
(152:6) (158:11) (163:11)
(220:14) (225:4) (235:16)
(244:11) (248:20)
**interested** (148:10)
**interesting** (154:15)
**internet** (99:5)
**interpretation** (63:14)

interruption                                                                just    276

| | | | |
|---|---|---|---|
| interruption (59:5) | (220:24) (220:25) (226:12) | (253:22) (255:8) (258:25) | (68:24) (71:8) (199:24) |
| interviewed (62:2) | (228:5) (228:19) (228:21) | itself (39:6) (118:3) | jumping (33:18) |
| into (30:4) (30:5) (32:11) | (228:23) (238:4) (252:19) | (224:18) (224:20) | june (1:18) (3:3) |
| (47:3) (47:13) (47:24) | (253:3) (253:10) (253:16) | i've (15:4) (19:7) (20:18) | juror (5:4) (5:12) (8:23) |
| (48:19) (50:9) (60:16) | (253:23) (254:8) (258:7) | (27:9) (42:1) (42:4) (46:14) | (9:4) (9:10) (10:13) (15:14) |
| (61:22) (62:25) (71:4) | issues (11:5) (12:1) | (103:9) (107:4) (109:15) | (17:11) (18:4) (18:24) |
| (71:17) (76:10) (78:21) | (59:18) (60:2) (71:23) | (110:13) (111:6) (112:10) | (18:25) (19:8) (22:13) |
| (79:1) (82:13) (83:14) | (72:4) (72:11) (72:16) | (114:6) (126:4) (126:20) | (37:4) (47:7) (67:9) (68:23) |
| (83:24) (88:15) (92:12) | (83:4) (90:14) (95:21) | (130:10) (143:4) (159:1) | (70:14) (70:16) (75:12) |
| (93:24) (121:17) (123:4) | (103:24) (157:7) (158:3) | (186:12) (199:10) (204:9) | (78:11) (79:11) (85:9) |
| (123:12) (124:17) (125:10) | (158:6) (158:7) (195:24) | (204:13) (234:4) (235:5) | (85:10) (85:19) (85:25) |
| (126:16) (132:1) (136:4) | (196:6) (218:22) (220:20) | (237:6) (238:4) (255:18) | (93:16) (95:1) (95:11) |
| (136:14) (138:18) (146:14) | (220:23) (221:1) (251:6) | | (96:1) (96:15) (99:4) |
| (149:8) (149:9) (155:1) | (251:13) (252:6) | **J** | (100:25) (102:12) (107:16) |
| (167:16) (169:11) (172:10) | it'll (107:6) | | (107:18) (132:16) (155:5) |
| (198:14) (201:11) (201:14) | its (57:3) (125:14) | jackson (3:10) (4:8) | (170:19) (171:20) (172:2) |
| (208:15) (208:19) (208:20) | it's (11:14) (12:5) | (100:23) (100:24) (101:1) | (172:16) (175:3) (178:10) |
| (219:5) (219:18) (228:6) | (21:19) (21:22) (21:23) | (101:2) (101:7) (101:10) | (178:20) (180:21) (180:22) |
| (228:9) (229:8) (230:24) | (25:8) (25:9) (25:22) | (101:14) (101:15) (101:24) | (181:2) (181:12) (181:23) |
| (246:14) (254:10) (258:3) | (25:23) (25:24) (25:25) | (102:8) (102:14) (102:16) | (184:5) (184:10) (184:15) |
| intoxicate (231:22) | (26:7) (26:8) (26:10) | (102:19) (103:3) (103:7) | (184:24) (187:11) (188:1) |
| intoxicated (50:25) | (26:11) (26:12) (26:19) | (103:22) (104:1) (104:3) | (188:5) (188:9) (188:19) |
| (51:1) (169:10) (169:16) | (27:4) (28:1) (28:2) (32:3) | (104:6) (104:9) (104:12) | (192:12) (192:17) (193:2) |
| (231:7) (231:10) (246:7) | (32:13) (34:15) (35:15) | (104:18) (105:2) (105:6) | (193:14) (194:22) (198:12) |
| (246:8) (246:12) (246:19) | (36:2) (38:15) (39:5) | (105:23) (106:6) (106:24) | (199:4) (200:7) (200:18) |
| (247:10) (247:11) | (41:17) (42:1) (43:8) | (107:5) (107:8) (112:9) | (205:6) (206:3) (215:14) |
| intoxication (50:18) | (45:18) (47:5) (47:6) | (113:19) (114:16) (114:20) | (215:25) (242:14) (258:4) |
| (50:19) (50:21) (51:4) | (48:15) (48:25) (49:1) | (116:10) (128:14) (132:9) | jurors (15:5) (59:12) |
| (51:19) (68:8) (68:9) (86:8) | (49:4) (49:10) (51:9) | (145:25) (151:9) (152:4) | (61:25) (62:19) (62:22) |
| (86:14) (87:10) (87:17) | (51:18) (51:19) (51:21) | (153:1) (153:12) (153:19) | (63:19) (64:10) (65:10) |
| (94:11) (168:25) (169:1) | (53:10) (63:4) (65:9) | (153:25) (154:3) (154:11) | (65:12) (67:5) (69:4) |
| (230:15) (230:16) (232:3) | (65:10) (65:16) (65:17) | (160:21) (174:3) (174:8) | (69:24) (76:7) (76:11) |
| (246:4) (247:2) (247:13) | (66:8) (66:9) (72:13) | (174:10) (174:12) (174:14) | (76:22) (77:20) (78:3) |
| introduce (11:10) (12:25) | (74:13) (74:14) (74:16) | (174:22) (174:24) (174:25) | (86:25) (87:1) (88:1) (88:3) |
| (68:3) (196:16) | (78:25) (80:7) (85:16) | (175:2) (175:4) (175:10) | (89:1) (89:5) (159:23) |
| introduction (105:3) | (89:16) (91:11) (102:4) | (175:14) (175:18) (175:23) | (165:10) (165:13) (166:13) |
| (195:16) | (104:4) (104:7) (108:5) | (176:9) (176:15) (176:19) | (170:9) (170:20) (171:21) |
| introductory (103:5) | (108:13) (109:15) (109:24) | (176:23) (177:2) (177:5) | (171:22) (172:24) (198:16) |
| (103:6) (103:14) | (111:7) (111:15) (113:8) | (177:10) (177:17) (177:25) | (218:18) (229:18) (240:9) |
| introspective (124:5) | (115:3) (115:9) (115:12) | (178:1) (178:5) | (242:20) (242:23) (243:5) |
| invalidate (124:24) | (115:16) (115:17) (116:3) | jail (17:18) (222:13) | (243:10) |
| investigators (156:2) | (116:25) (117:3) (117:4) | james (1:7) (13:17) | juror's (95:13) (103:6) |
| invoked (114:2) (119:22) | (117:12) (124:11) (126:10) | (106:1) (197:10) (239:18) | (163:25) (173:11) |
| involve (52:3) | (127:13) (127:19) (128:4) | jehovah's (182:24) | jury (5:23) (10:1) (10:10) |
| involved (11:6) (12:1) | (129:22) (130:14) (132:14) | jerry (24:1) | (15:8) (15:11) (15:21) |
| (13:1) (52:1) (88:14) | (132:18) (133:9) (135:2) | job (108:7) (108:12) | (16:3) (17:4) (18:12) |
| (103:12) (103:13) (103:24) | (135:22) (135:23) (135:24) | (113:19) (142:22) (146:18) | (27:11) (31:19) (33:2) |
| (122:10) (204:6) | (136:8) (136:14) (137:14) | (239:25) (240:25) (241:7) | (55:3) (60:1) (62:14) (63:1) |
| irrelevant (78:8) (94:10) | (137:16) (140:21) (141:21) | (242:15) (247:22) | (65:5) (65:6) (68:11) |
| (146:20) | (141:22) (142:1) (143:4) | joe (151:15) | (69:20) (70:17) (71:22) |
| isn't (25:14) (30:15) | (148:10) (150:17) (151:11) | joke (154:4) (246:23) | (71:25) (72:8) (72:13) |
| (34:5) (37:21) (38:17) | (151:12) (152:11) (155:24) | judge (1:21) (5:20) (5:21) | (90:5) (91:2) (94:22) |
| (39:6) (52:15) (109:20) | (156:17) (157:11) (159:18) | (5:22) (9:22) (9:23) (9:24) | (94:23) (96:25) (97:2) |
| (129:23) (130:20) (202:22) | (159:19) (160:10) (161:5) | (9:25) (10:3) (10:10) | (99:25) (101:21) (102:1) |
| (228:16) (229:16) (234:3) | (162:16) (164:11) (164:24) | (15:18) (22:14) (22:15) | (102:6) (107:12) (107:25) |
| (256:24) | (164:25) (165:1) (168:22) | (23:16) (57:3) (57:5) (91:7) | (158:7) (170:16) (173:21) |
| isolation (129:3) | (169:16) (169:20) (170:5) | (97:7) (99:20) (99:24) | (175:13) (175:17) (176:7) |
| issue (35:15) (35:17) | (171:1) (171:12) (173:10) | (101:17) (101:18) (101:19) | (176:8) (176:18) (181:21) |
| (37:9) (43:2) (43:8) (47:4) | (176:5) (182:10) (183:18) | (101:20) (102:2) (102:9) | (184:12) (185:11) (189:1) |
| (47:5) (47:15) (50:1) (51:6) | (190:20) (194:11) (195:25) | (107:9) (152:2) (153:8) | (189:10) (194:2) (194:6) |
| (67:18) (67:23) (72:22) | (201:18) (202:25) (203:3) | (154:8) (172:1) (172:18) | (194:14) (196:13) (198:4) |
| (78:3) (79:19) (80:22) | (203:10) (205:8) (207:5) | (175:20) (181:18) (181:19) | (198:14) (200:20) (201:1) |
| (81:9) (82:18) (82:23) | (208:4) (208:19) (211:4) | (181:20) (181:21) (185:6) | (201:24) (204:12) (213:5) |
| (83:3) (83:6) (83:20) (87:4) | (211:18) (211:23) (211:24) | (185:7) (185:10) (185:14) | (213:23) (236:19) (239:14) |
| (87:19) (88:2) (91:1) (91:3) | (212:5) (212:23) (214:19) | (188:23) (188:24) (188:25) | (240:10) (241:10) (241:21) |
| (91:5) (91:8) (91:23) (92:2) | (214:25) (215:2) (217:14) | (189:4) (193:21) (193:22) | (243:10) (252:14) (253:17) |
| (92:5) (94:2) (94:3) (94:7) | (217:19) (218:21) (219:6) | (194:1) (194:4) (194:14) | (259:6) |
| (94:8) (94:18) (94:21) | (219:21) (219:22) (222:17) | (194:19) (198:2) (218:22) | jury's (248:12) |
| (95:12) (108:20) (132:23) | (222:24) (222:25) (224:15) | (239:7) (240:5) (252:13) | just (5:23) (8:8) (8:13) |
| (140:15) (141:1) (152:19) | (224:21) (228:3) (228:4) | (253:14) (257:13) (259:2) | (10:19) (11:9) (12:6) (12:9) |
| (158:19) (158:25) (159:3) | (228:24) (229:17) (230:1) | judgment (7:8) (148:20) | (14:13) (14:14) (14:19) |
| (161:10) (161:17) (162:23) | (230:9) (230:17) (231:7) | (164:1) (170:2) (170:25) | (17:18) (20:19) (25:9) |
| (162:25) (163:9) (163:15) | (231:11) (232:20) (232:21) | (173:11) (191:15) | (25:11) (26:19) (27:8) |
| (163:20) (163:21) (164:3) | (232:23) (233:2) (235:9) | judgments (150:23) | (28:7) (29:6) (30:15) (31:7) |
| (165:2) (167:20) (170:17) | (236:21) (238:8) (239:19) | juice (106:20) | (34:7) (38:11) (39:16) |
| (171:21) (171:25) (172:8) | (240:7) (241:8) (241:15) | july (97:3) (176:8) | (39:22) (41:8) (41:18) |
| (172:15) (173:15) (173:17) | (241:25) (242:2) (242:15) | (176:11) | (43:7) (43:15) (43:22) |
| | | jump (16:8) (19:5) (32:14) | |

just a                                                                                                      leads    277

(44:20)(53:25)(54:17)
(55:13)(57:25)(58:5)
(58:16)(58:17)(59:6)
(59:10)(59:12)(59:15)
(60:1)(61:11)(64:11)
(68:23)(70:18)(71:11)
(76:2)(76:15)(76:20)
(77:1)(77:20)(79:7)
(79:11)(79:22)(80:2)
(80:13)(81:2)(81:7)
(83:16)(86:18)(91:11)
(93:8)(96:9)(101:3)
(101:18)(102:21)(103:1)
(103:10)(103:14)(103:19)
(104:7)(104:24)(106:11)
(107:16)(110:13)(111:11)
(111:12)(115:3)(115:14)
(115:16)(115:17)(116:3)
(116:15)(117:12)(118:15)
(118:16)(120:3)(120:23)
(122:2)(124:9)(125:3)
(126:5)(128:4)(128:12)
(128:19)(129:18)(130:21)
(130:24)(131:10)(131:11)
(133:9)(133:12)(133:13)
(133:20)(135:4)(135:10)
(135:22)(136:5)(136:17)
(137:3)(138:24)(139:5)
(139:8)(139:15)(141:3)
(141:4)(141:18)(141:20)
(142:4)(143:11)(143:12)
(144:8)(147:19)(148:10)
(148:13)(148:14)(148:15)
(151:4)(151:14)(153:20)
(155:7)(155:11)(155:20)
(155:22)(156:15)(156:17)
(156:19)(157:11)(158:2)
(158:21)(158:25)(159:3)
(159:18)(160:10)(160:12)
(162:8)(162:22)(163:4)
(164:12)(164:15)(164:17)
(164:18)(164:21)(165:4)
(165:5)(167:16)(169:3)
(174:1)(176:5)(178:3)
(178:15)(181:20)(182:2)
(183:18)(184:20)(185:7)
(188:13)(188:15)(190:22)
(193:8)(195:3)(196:8)
(202:20)(204:24)(207:18)
(208:19)(210:13)(214:21)
(215:2)(215:10)(216:12)
(216:21)(217:8)(217:9)
(218:6)(218:12)(219:17)
(222:18)(224:20)(224:23)
(224:25)(225:19)(225:24)
(227:1)(227:11)(228:7)
(230:1)(233:4)(233:7)
(234:3)(234:13)(234:19)
(234:22)(235:3)(236:24)
(237:7)(237:15)(238:24)
(239:25)(240:19)(241:7)
(241:22)(245:10)(248:4)
(248:15)(248:25)(251:15)
(255:18)(257:15)(258:20)
(258:21)
just a   (225:24)
justice   (54:15)(54:16)
(60:13)(92:13)(147:21)
(147:22)(148:5)(148:10)
(248:7)
justifiable   (39:23)
justification   (26:5)
(26:7)(73:9)(217:13)
(244:12)
justified   (65:6)(202:5)
(243:20)
justify   (170:10)(172:5)

**K**

keep   (8:8)(44:16)(77:13)
(99:1)(100:8)(101:11)
(177:3)(190:21)(217:6)
(245:9)
keeping   (140:16)(218:11)
(238:4)
kept   (164:7)
keri   (2:20)(13:13)
(105:21)(197:8)(239:18)
keyword   (86:14)
kid   (30:15)
kids   (74:8)(126:4)
(127:10)(127:12)(168:18)
(171:14)
kill   (30:7)(36:22)(74:9)
(76:24)(141:7)(149:14)
(202:17)(208:17)(208:23)
(217:15)(217:17)(227:3)
(232:24)(241:25)
killed   (21:6)(21:7)
(25:25)(29:2)(44:2)(45:1)
(73:8)(78:12)(78:13)
(82:5)(90:1)(141:8)
(149:15)(150:12)(151:5)
(213:25)(214:2)(214:6)
(217:10)(220:14)(235:17)
killing   (66:23)(68:1)
(73:22)(146:21)(244:1)
kills   (207:1)
kind   (10:25)(11:9)
(17:15)(17:18)(18:7)
(24:9)(29:9)(40:10)
(40:15)(42:1)(56:1)
(75:23)(75:24)(76:10)
(76:16)(76:23)(77:1)
(78:25)(79:2)(81:7)
(89:21)(97:11)(100:7)
(103:5)(103:10)(103:14)
(107:23)(108:20)(109:10)
(109:13)(110:3)(110:5)
(111:4)(125:7)(125:19)
(134:17)(139:8)(141:15)
(141:19)(142:4)(144:11)
(145:5)(151:1)(151:24)
(153:14)(159:3)(159:4)
(159:8)(160:16)(164:14)
(164:20)(164:25)(165:5)
(172:12)(175:20)(190:17)
(190:20)(195:15)(195:17)
(199:2)(199:4)(213:21)
(217:13)(217:16)(218:7)
(220:17)(221:6)(223:25)
(224:17)(228:7)(229:10)
(236:8)
kindly   (79:13)
kinds   (61:25)(63:20)
(63:21)(89:6)(129:5)
(129:10)(156:22)
kitchen   (44:7)(126:16)
knew   (46:5)(98:12)
(136:8)(169:9)(227:24)
knife   (66:25)
knock   (18:8)
know   (10:21)(11:10)
(11:12)(11:19)(12:18)
(16:21)(17:4)(17:17)
(22:13)(22:24)(24:20)
(24:22)(25:12)(27:9)
(29:1)(32:3)(38:10)(40:8)
(40:21)(44:17)(45:21)
(46:11)(47:19)(48:3)
(48:5)(48:24)(49:24)
(53:10)(54:20)(65:24)
(66:19)(66:24)(67:9)
(67:13)(68:19)(71:15)

(72:25)(73:13)(73:14)
(74:7)(75:25)(76:2)(76:4)
(76:12)(76:23)(80:7)
(80:12)(81:19)(82:4)
(87:13)(89:5)(98:19)
(99:4)(99:7)(100:8)
(102:23)(104:7)(104:15)
(104:23)(106:12)(106:20)
(107:8)(107:24)(108:5)
(108:10)(112:9)(112:19)
(112:20)(113:24)(114:9)
(114:10)(114:11)(114:14)
(114:20)(114:23)(115:5)
(115:11)(115:14)(115:19)
(115:20)(115:23)(116:1)
(116:3)(116:10)(116:11)
(117:8)(118:4)(118:5)
(118:20)(119:1)(119:3)
(120:6)(121:1)(121:17)
(121:24)(122:2)(123:2)
(123:12)(123:23)(124:2)
(124:4)(124:12)(124:15)
(124:22)(125:11)(125:22)
(128:2)(128:10)(129:13)
(131:10)(131:11)(133:7)
(133:12)(133:20)(135:11)
(135:13)(135:15)(135:16)
(136:1)(136:7)(136:8)
(136:11)(136:15)(137:24)
(138:7)(138:9)(138:10)
(138:22)(138:24)(139:16)
(141:18)(142:6)(142:18)
(142:21)(142:24)(142:25)
(143:2)(143:10)(143:25)
(144:11)(145:6)(145:7)
(145:16)(145:24)(147:2)
(148:15)(148:18)(150:1)
(150:6)(150:16)(150:25)
(151:5)(156:6)(156:8)
(156:12)(156:17)(157:2)
(158:12)(159:2)(159:17)
(162:11)(164:7)(164:11)
(164:15)(164:22)(165:4)
(165:5)(165:14)(165:16)
(166:4)(167:14)(168:5)
(168:8)(168:9)(168:14)
(168:15)(168:17)(168:18)
(169:5)(169:7)(169:23)
(169:25)(170:1)(170:25)
(171:5)(171:13)(171:25)
(172:23)(172:24)(175:16)
(176:10)(177:8)(191:2)
(191:17)(195:7)(197:24)
(203:22)(204:6)(206:9)
(207:5)(207:6)(208:19)
(212:6)(213:6)(213:17)
(215:12)(217:11)(218:7)
(222:23)(224:1)(224:15)
(225:17)(225:21)(225:25)
(228:6)(229:19)(230:1)
(230:19)(231:3)(231:7)
(231:11)(231:16)(231:18)
(231:21)(231:22)(231:24)
(233:8)(233:10)(235:12)
(236:18)(237:7)(239:15)
(239:16)(240:4)(240:22)
(242:10)(246:12)(248:15)
(248:16)(251:18)(253:13)
(254:18)(254:20)(255:9)
(255:18)(256:2)(256:11)
(256:21)(258:25)
knowing   (117:23)(152:15)
(152:23)(167:17)(168:2)
(230:22)(245:15)
knowingly   (68:15)
knowledge   (124:16)(261:7)
knows   (28:20)(109:11)

**L**

lack   (81:25)(85:4)
(88:23)(115:25)(139:17)
(159:20)
lacking   (235:22)
ladies   (5:10)(9:18)
(13:5)(96:12)(105:11)
(153:22)(178:6)(178:17)
(184:23)(193:12)(197:2)
(239:4)
lake   (2:18)(2:19)
landscape   (241:1)
lane   (2:17)
large   (118:14)
largely   (191:22)
last   (154:22)(188:7)
(232:16)(236:19)(238:4)
(254:13)
late   (111:21)(165:16)
(176:8)(176:11)
later   (61:1)(91:7)
(176:11)
latest   (97:2)
laugh   (25:12)(202:21)
laundry   (172:12)
laura   (3:22)(4:6)
(193:14)(197:18)
law   (2:13)(2:17)(8:24)
(11:5)(11:8)(11:17)
(11:25)(16:7)(17:5)(17:6)
(17:9)(17:10)(17:12)
(19:1)(19:22)(20:3)
(21:19)(21:24)(22:13)
(22:17)(23:6)(23:8)
(23:17)(24:9)(24:21)
(34:7)(43:12)(43:19)
(45:14)(45:17)(50:23)
(50:24)(51:2)(51:3)(51:8)
(55:17)(55:18)(60:11)
(62:6)(62:7)(62:8)(62:20)
(65:15)(68:3)(69:20)
(70:2)(72:1)(74:22)(75:3)
(77:17)(77:21)(83:12)
(85:22)(86:7)(86:9)
(86:13)(86:16)(86:17)
(86:18)(87:22)(103:12)
(103:17)(103:18)(103:23)
(107:15)(113:25)(114:4)
(114:10)(114:12)(116:11)
(121:10)(136:15)(141:6)
(146:9)(149:5)(158:4)
(170:1)(170:8)(171:6)
(172:2)(187:9)(187:15)
(195:19)(195:23)(196:5)
(198:10)(199:14)(199:16)
(200:7)(200:8)(200:9)
(209:15)(210:13)(210:15)
(210:16)(210:25)(211:5)
(211:12)(212:10)(212:18)
(213:1)(213:13)(214:18)
(215:14)(216:9)(226:13)
(227:9)(230:16)(231:20)
(232:1)(244:10)(246:3)
(246:9)(246:20)(246:25)
(247:1)(250:25)
lawmakers   (37:10)(37:11)
(221:1)
laws   (17:11)(55:14)
(212:16)(215:22)
lawyer   (66:1)(154:22)
lawyers   (69:9)(96:19)
(103:16)(155:13)(156:2)
(156:7)(185:14)
leader   (88:14)(88:17)
(94:21)(167:11)(207:25)
leads   (61:7)(61:22)(71:4)

league                                                                                          make    278

**league** (117:9)
**lean** (82:6)(149:16)
**learn** (58:9)
**learned** (80:17)
**learning** (59:11)
**least** (37:8)(46:4)
(46:22)(48:13)(50:15)
(51:14)(51:21)(68:12)
(87:24)(108:6)(111:18)
(111:23)(114:11)(127:5)
(129:22)(147:5)(155:16)
(160:8)(217:23)(223:8)
(232:2)
**leave** (8:3)(8:12)(8:13)
(44:21)(45:22)(101:6)
(178:1)(178:3)(227:1)
**leaving** (112:21)
**left** (142:4)
**leg** (214:20)(217:9)
**legal** (26:4)(26:7)(51:9)
(73:9)(74:16)(244:12)
**legally** (88:3)(245:20)
**legislator** (146:15)
**legislature** (146:15)
(161:20)
**legitimate** (136:5)
**lenient** (111:18)
**less** (118:18)(118:25)
(119:6)(119:12)(121:23)
(135:17)(236:16)
**lessens** (48:22)(229:11)
(229:12)
**lesser** (32:3)
**lesser-included** (31:7)
(56:2)(72:8)(205:2)
**let** (8:8)(10:25)(12:24)
(14:7)(16:22)(23:10)
(24:24)(27:8)(28:5)
(28:18)(29:10)(30:23)
(31:1)(43:10)(44:2)
(44:17)(47:1)(51:11)
(53:16)(53:25)(58:16)
(59:9)(71:20)(79:13)
(90:21)(101:6)(102:20)
(105:3)(107:8)(113:19)
(132:16)(135:25)(137:10)
(141:10)(153:9)(153:14)
(159:24)(165:7)(174:1)
(174:8)(182:2)(187:1)
(193:13)(195:12)(196:16)
(200:14)(201:10)(202:9)
(204:15)(205:19)(207:17)
(213:21)(228:7)(228:18)
(248:17)(251:10)(257:15)
**let's** (5:25)(20:23)
(20:24)(21:6)(24:16)
(24:18)(27:9)(29:11)
(31:4)(31:13)(37:12)
(44:4)(49:15)(49:16)
(50:19)(53:16)(64:17)
(78:2)(80:15)(82:22)
(90:21)(91:17)(101:4)
(108:21)(113:23)(117:2)
(119:18)(126:3)(145:13)
(170:18)(178:6)(195:12)
(204:15)(206:18)(213:23)
(217:1)(220:23)(235:21)
(245:9)
**level** (68:7)(68:8)(68:9)
(85:18)(85:23)(142:2)
(147:5)(209:17)(216:11)
**liable** (226:16)
**life** (11:14)(21:1)
(27:23)(28:1)(28:22)
(29:4)(29:14)(29:25)
(30:1)(33:3)(33:6)(34:2)
(34:4)(34:5)(34:10)

(34:19)(35:10)(38:17)
(38:20)(41:5)(42:16)
(42:17)(42:19)(47:14)
(47:24)(48:3)(49:7)(50:6)
(50:9)(54:18)(54:23)
(62:9)(62:11)(62:14)
(64:10)(64:12)(64:13)
(73:2)(80:18)(81:12)
(83:8)(90:3)(90:17)(92:1)
(92:6)(94:25)(128:17)
(128:18)(131:6)(132:11)
(132:17)(132:21)(132:25)
(133:1)(136:15)(139:24)
(140:19)(141:14)(150:16)
(151:14)(152:6)(158:12)
(161:12)(161:14)(167:16)
(170:12)(171:8)(173:22)
(180:6)(186:14)(186:15)
(205:8)(205:15)(206:21)
(206:24)(209:25)(218:19)
(219:2)(219:19)(219:25)
(220:8)(220:9)(220:10)
(223:2)(223:5)(224:9)
(225:20)(225:22)(226:4)
(226:8)(226:9)(228:3)
(228:15)(228:22)(229:8)
(229:13)(230:20)(230:24)
(233:3)(235:11)(244:11)
(245:11)(245:14)(245:16)
(245:24)(248:13)(250:21)
(254:14)(256:12)
**lifting** (111:3)
**lightly** (117:1)
**like** (11:11)(12:18)
(15:17)(17:9)(18:14)
(19:10)(26:5)(32:13)
(33:5)(36:16)(39:4)(41:4)
(41:12)(42:1)(44:11)
(47:18)(49:17)(50:1)
(51:24)(52:1)(53:14)
(55:15)(58:1)(58:20)
(59:11)(63:9)(70:13)
(78:25)(96:20)(97:5)
(97:11)(99:1)(101:8)
(102:7)(106:25)(110:3)
(110:5)(110:13)(111:17)
(113:17)(114:15)(114:21)
(114:23)(117:2)(117:10)
(120:10)(120:17)(120:23)
(123:22)(124:9)(125:6)
(127:22)(128:7)(129:24)
(130:1)(137:3)(137:4)
(139:16)(141:22)(142:22)
(144:13)(148:20)(150:17)
(154:3)(160:8)(162:7)
(164:6)(164:8)(164:19)
(166:18)(171:12)(172:6)
(177:4)(177:9)(177:13)
(178:19)(190:21)(196:12)
(196:15)(199:4)(199:6)
(200:8)(214:18)(215:12)
(215:23)(217:14)(217:16)
(219:6)(219:17)(224:25)
(236:23)(238:17)(242:20)
(243:15)
**like -- i** (141:22)
**likely** (11:11)(37:24)
(38:2)(39:9)(40:12)
(42:21)(65:23)(70:20)
(132:24)(133:3)(133:24)
(140:22)(152:11)(160:13)
(160:17)(164:19)(222:4)
(222:25)
**limit** (222:15)
**line** (26:11)(68:20)
(145:25)(203:5)
**lisa** (3:7)(4:5)(9:8)

(13:24)(93:16)(93:21)
**list** (149:10)(170:11)
(172:13)(245:10)
**listen** (31:10)(99:18)
(100:3)(216:14)(216:24)
(251:9)
**listening** (177:15)
**literally** (14:11)
**little** (11:2)(11:15)
(18:12)(19:17)(23:1)
(24:17)(29:5)(29:17)
(29:18)(29:24)(30:3)
(30:6)(30:14)(39:18)
(43:8)(43:25)(44:5)(58:5)
(58:9)(59:11)(59:12)
(59:13)(59:17)(60:16)
(60:17)(64:17)(75:8)
(80:5)(80:13)(83:2)
(101:5)(103:2)(103:14)
(106:11)(106:23)(107:14)
(108:21)(111:7)(112:20)
(113:3)(120:7)(121:15)
(122:1)(126:21)(130:19)
(135:25)(137:18)(143:6)
(147:17)(158:3)(169:13)
(195:12)(195:16)(195:20)
(198:9)(200:22)(200:23)
(207:18)(207:25)(208:1)
(208:2)(208:15)(240:24)
(256:1)
**live** (39:2)(76:13)
(120:5)(129:23)(130:1)
(138:7)(170:23)(223:11)
**lived** (94:17)
**lives** (233:1)
**living** (108:22)
**load** (226:21)
**local** (209:7)(226:18)
**locked** (75:16)
**lockett** (95:6)
**logic** (190:20)
**logically** (190:20)
(190:21)
**lollar** (2:12)(7:20)
(7:22)(9:1)(9:2)(13:10)
(13:11)(105:18)(105:19)
(106:23)(153:3)(153:24)
(174:21)(177:23)(180:10)
(180:24)(183:14)(183:17)
(183:20)(184:8)(187:1)
(187:6)(187:9)(187:14)
(188:3)(191:25)(192:1)
(192:15)(197:8)(239:6)
(239:7)(239:10)(239:17)
(250:5)(257:12)(257:13)
(257:24)(257:25)(258:4)
(259:8)
**long** (16:13)(59:23)
(60:19)(88:3)(107:25)
(114:4)(123:17)(154:20)
(185:18)(189:10)(229:22)
(241:20)
**longer** (97:17)(241:16)
**look** (15:1)(22:4)(22:23)
(27:11)(28:3)(28:9)(31:5)
(35:4)(39:13)(40:7)
(41:13)(43:9)(45:23)
(47:8)(47:9)(48:18)(49:3)
(50:1)(50:2)(51:21)(53:2)
(53:16)(70:13)(78:24)
(101:8)(112:10)(118:17)
(119:19)(124:17)(126:12)
(128:7)(132:1)(132:8)
(132:22)(141:6)(141:10)
(150:10)(155:20)(164:18)
(167:1)(174:1)(198:22)
(199:1)(213:5)(216:14)

(220:13)(220:23)(224:18)
(224:19)(228:24)(229:1)
(229:2)(229:3)(230:3)
(230:8)(231:2)(231:3)
(232:4)(232:11)(233:15)
(236:4)(237:20)(238:8)
(242:1)(252:22)(255:19)
(256:10)
**looked** (15:4)(186:12)
**looking** (16:10)(27:22)
(37:15)(37:17)(75:10)
(79:2)(79:4)(80:1)(104:8)
(108:6)(114:2)(120:16)
(122:7)(124:21)(132:10)
(139:13)(140:25)(143:7)
(152:19)(167:19,(190:5)
(191:1)(200:1)(205:20)
(205:22)(214:20)(215:5)
(221:12)(221:15)(221:16)
(230:20)(231:6)(255:10)
**lookout** (45:11)(226:23)
**looks** (15:17)(51:24)
(52:1)(106:25)
**lopsided** (162:18)
**lose** (90:2)
**lot** (14:14)(17:19)(18:8)
(24:20)(29:1)(30:4)(33:1)
(43:8)(43:14)(44:6)(44:9)
(50:18)(59:14)(89:5)
(109:4)(109:11)(109:14)
(109:16)(110:11)(113:24)
(114:7)(114:9)(115:6)
(116:23)(118:18)(120:20)
(120:21)(121:23)(128:4)
(130:12)(135:12)(135:17)
(135:24)(138:9)(138:11)
(138:13)(138:14)(138:20)
(143:25)(144:22)(147:18)
(147:19)(156:11`(169:9)
(169:10)(199:23)(200:3)
(201:18)(206:17)(207:13)
(218:20)(225:14)(235:22)
(236:16)(256:1)
**loud** (163:4)(163:7)
**love** (30:2)(208:13)
**loves** (29:16)
**loving** (85:14)
**low** (44:5)(215:7)
**lunch** (107:24)(178:7)

## M

**ma'am** (5:8)(6:19)(7:4)
(7:16)(7:19)(8:9)(13:23)
(18:2)(18:25)(19:23)
(20:22)(35:16)(36:16)
(37:9)(47:6)(81:13)
(81:16)(96:11)(178:16)
(180:2)(180:16)(184:21)
(186:17)(186:23)(187:19)
(191:4)(191:6)(200:21)
(218:11)(235:14)(237:15)
**machine** (1:24)(12:15)
(239:14)
**made** (14:25)(16:13)
(74:4)(123:22)(136:20)
(150:11)(150:13)(191:21)
(199:5)(199:11)(245:6)
(249:2)
**maintain** (219:25)
**maintained** (95:15)
**major** (76:8)
**make** (15:11)(15:12)
(16:2)(16:8)(17:19)(22:5)
(23:21)(27:6)(28:17)
(30:10)(32:14)(34:17)
(34:22)(35:12)(38:6)
(41:6)(41:16)(43:23)

maker            moral    279

(44:6)(45:25)(46:8)
(49:11)(49:22)(50:11)
(50:13)(50:14)(51:1)
(51:12)(52:23)(54:20)
(55:13)(59:15)(61:23)
(63:7)(66:11)(66:12)
(69:4)(69:8)(69:13)
(69:20)(73:19)(74:20)
(76:1)(77:15)(79:18)
(80:10)(80:13)(80:14)
(86:3)(88:16)(90:11)
(90:13)(91:7)(91:14)
(96:23)(103:10)(106:15)
(106:21)(109:14)(109:16)
(114:15)(124:6)(137:1)
(137:8)(139:2)(142:22)
(150:22)(151:24)(155:7)
(157:1)(160:24)(161:14)
(161:21)(161:22)(163:6)
(164:1)(168:14)(168:17)
(168:18)(170:14)(171:10)
(172:13)(173:1)(173:6)
(173:12)(173:24)(175:20)
(187:6)(193:11)(206:4)
(208:19)(211:25)(216:16)
(220:1)(227:19)(230:10)
(232:6)(232:8)(233:16)
(245:5)
maker (80:10)
makes (27:1)(27:2)(27:3)
(27:7)(46:9)(48:12)
(51:22)(80:11)(115:17)
(118:18)(119:12)(137:11)
(137:12)(162:4)(162:5)
makeup (135:7)
making (74:13)(76:16)
(82:13)(89:4)(136:5)
(148:20)(162:6)(164:20)
(166:3)(170:21)(171:5)
(172:25)
mallon (2:20)(13:13)
(13:14)(105:21)(105:22)
(153:5)(153:6)(153:7)
(153:8)(154:6)(154:8)
(154:10)(160:22)(171:18)
(172:18)(172:19)(174:6)
(197:8)(239:18)
man (17:17)(28:19)
(29:12)(123:19)(206:23)
(207:20)(208:6)(208:15)
manager (108:23)
mandatory (62:3)
manner (66:20)
man's (30:3)
manslaughter (31:8)
many (33:3)(33:4)(61:24)
(62:2)(69:4)(110:12)
(111:9)(118:5)(120:17)
(120:18)(141:4)(175:8)
(218:19)(218:20)
map (59:13)
mark (100:7)(120:8)
(120:25)
mask (44:20)(226:25)
matter (39:15)(55:6)
(87:3)(88:4)(88:5)
(113:25)(134:19)(140:13)
(159:11)(159:20)(166:21)
(166:22)(166:24)(183:17)
(198:24)(209:20)(229:18)
(229:25)(231:15)(233:14)
(249:22)(252:14)
matters (101:23)(189:6)
(194:5)(229:22)
matters of (189:5)
matthew (3:19)(4:4)
(188:7)(188:19)(189:24)

(192:17)
mature (165:21)
may (6:3)(15:6)(16:23)
(18:7)(21:25)(22:23)
(25:6)(27:22)(31:5)
(48:19)(48:21)(48:23)
(48:25)(51:4)(52:5)
(67:12)(67:18)(73:13)
(76:9)(77:1)(86:14)
(86:18)(86:22)(91:4)
(95:25)(97:15)(101:5)
(108:19)(108:20)(112:4)
(112:25)(119:3)(122:24)
(129:9)(130:18)(134:11)
(135:10)(135:13)(136:1)
(136:10)(136:12)(139:22)
(140:5)(146:20)(150:11)
(150:13)(153:7)(154:6)
(156:11)(163:16)(164:6)
(164:21)(165:3)(165:17)
(169:24)(169:25)(173:8)
(173:9)(173:10)(179:10)
(182:13)(185:24)(189:21)
(201:12)(214:18)(220:13)
(222:23)(229:23)(230:9)
(244:14)(253:21)
maybe (17:19)(31:8)
(36:8)(36:10)(37:7)(50:5)
(50:7)(52:20)(52:23)
(71:16)(108:6)(110:8)
(112:7)(114:10)(118:20)
(127:4)(127:5)(127:17)
(134:10)(136:17)(137:11)
(141:4)(141:11)(141:12)
(142:15)(144:11)(146:20)
(146:21)(147:2)(165:4)
(167:16)(169:13)(189:13)
(230:4)(231:10)(236:5)
(236:7)(236:24)
mckinney (5:21)(9:23)
(101:18)(181:19)(185:7)
(188:24)(193:22)
meal (106:18)
mean (15:7)(23:4)(40:11)
(40:22)(41:9)(43:5)
(49:10)(54:2)(60:25)
(63:22)(63:24)(71:12)
(73:22)(75:20)(78:15)
(79:5)(80:25)(81:4)
(81:12)(84:5)(85:1)(85:4)
(86:18)(96:18)(98:13)
(107:17)(108:19)(109:2)
(110:4)(115:4)(115:18)
(116:16)(116:25)(117:3)
(117:8)(118:2)(118:4)
(118:7)(118:14)(118:23)
(119:7)(120:2)(120:4)
(120:20)(121:10)(121:16)
(121:19)(123:13)(123:24)
(125:18)(127:11)(129:18)
(130:9)(130:23)(132:6)
(133:11)(133:12)(135:10)
(135:11)(136:4)(136:7)
(136:8)(136:10)(136:14)
(136:22)(137:3)(137:17)
(138:25)(139:15)(139:16)
(141:22)(142:6)(142:9)
(142:18)(142:24)(143:5)
(143:17)(144:2)(144:9)
(144:18)(145:5)(145:12)
(146:5)(146:11)(147:1)
(147:5)(147:7)(148:8)
(148:9)(149:3)(149:19)
(149:22)(149:25)(150:3)
(150:15)(150:16)(150:19)
(151:19)(151:25)(152:1)
(155:22)(156:17)(157:15)

(159:17)(159:18)(160:3)
(160:5)(160:8)(160:10)
(162:8)(162:9)(162:10)
(162:14)(164:16)(164:17)
(165:5)(165:24)(166:23)
(167:2)(167:5)(168:2)
(169:10)(190:18)(198:13)
(203:24)(204:17)(204:21)
(207:4)(207:6)(208:19)
(208:22)(209:14)(209:18)
(212:6)(213:3)(215:11)
(217:7)(217:15)(218:13)
(218:15)(231:24)(232:21)
(233:8)(234:8)(235:3)
(240:12)(242:7)(246:5)
(247:12)(249:12)(250:7)
(254:22)(256:16)(256:18)
mean by (203:25)
meaning (202:17)
meaningful (18:20)(50:2)
(255:11)(255:13)(255:14)
(255:15)(255:17)(255:21)
meaningless (78:15)
means (16:6)(31:17)
(43:7)(43:10)(63:22)
(64:11)(66:20)(84:4)
(96:18)(128:19)(131:19)
(132:12)(158:11)(161:11)
(172:4)(172:7)(200:25)
(211:19)(211:22)(212:21)
(214:25)(220:9)(226:14)
meant (21:8)(26:3)
(141:8)(156:20)(202:17)
(217:8)(217:15)(217:17)
(231:21)
media (23:13)(191:17)
medical (21:9)(29:19)
(208:3)(214:4)
meet (44:13)(185:8)
(193:23)(193:24)
melody (108:23)
member (13:7)(102:13)
members (10:14)(10:17)
(65:5)(66:1)(69:20)(91:2)
(102:18)(194:22)(194:25)
(197:2)
members' (244:22)
men (17:16)(122:13)
(123:17)
mental (68:6)(89:3)
mentally (94:16)(231:20)
(235:22)
mention (88:12)
mentioned (22:25)(49:13)
(203:19)(235:21)
merely (20:4)
merits (57:3)
messed (21:20)
met (10:10)(102:5)
(194:13)
methamphetamine (52:4)
(52:5)(52:15)
michael (9:24)(101:19)
middle (15:5)(55:7)
might (15:23)(27:11)
(29:9)(30:14)(35:5)(35:6)
(35:7)(36:21)(38:12)
(45:22)(47:19)(47:20)
(48:5)(48:24)(49:2)(53:2)
(53:8)(53:9)(67:23)(68:6)
(68:8)(68:9)(68:11)
(68:15)(76:18)(77:12)
(78:2)(80:22)(81:3)(81:8)
(81:22)(84:15)(85:13)
(85:15)(91:12)(97:17)
(119:5)(123:1)(127:8)
(128:24)(130:2)(175:25)

(199:15)(201:7)(205:4)
(209:5)(215:13)(222:20)
(225:19)(225:21)(229:19)
(229:21)(229:24)(231:2)
(231:3)(236:15)(240:23)
(261:9)
million (206:2,
mind (14:25)(28:20)
(41:16)(60:20)(60:24)
(61:15)(67:24)(68:4)
(68:10)(68:17)(69:4)
(69:8)(77:13)(78:21)
(79:1)(84:4)(87:4)(122:2)
(127:16)(139:11)(140:16)
(155:25)(160:11)(172:14)
(191:21)(199:5)(217:6)
(218:11)(230:23)(231:21)
(235:23)(236:6)(238:4)
(244:15)(245:16)
minding (38:11)(202:19)
(222:19)
mine (64:1)
mini (32:13)(219:7)
minority (121:7)
mints (106:25)
minute (58:16)(86:6)
(153:15)(204:15)(250:6)
minutes (75:8)(145:22)
(198:17)(233:23)(233:24)
misdemeanor (15:23)(16:1)
misreading (71:2)(230:25)
missed (234:4)
missing (126:17)
mistakes (23:21)(166:4)
mistreatment (85:18)
(85:22)
mitigate (234:17)
mitigating (47:5)(47:12)
(48:2)(48:9)(48:15)
(48:21)(49:1)(49:3)(49:4)
(49:5)(49:8)(49:11)(50:4)
(50:7)(50:9)(53:9)(53:10)
(83:7)(85:7)(85:10)
(91:24)(92:23)(94:5)
(95:12)(95:13)(141:12)
(152:21)(169:13)(169:19)
(169:24)(173:9)(228:13)
(229:10)(229:16)(229:19)
(229:20)(229:24)(230:1)
(230:2)(230:4)(230:8)
(230:9)(230:19)(238:10)
(247:14)(254:10)(254:24)
(256:11)(256:25)(258:5)
(258:13)
mitigation (51:4)(51:5)
(85:22)(86:15)(86:22)
(86:23)(87:1)(87:2)(87:7)
(94:3)(94:24)(163:22)
(164:4)(164:10)(165:17)
(169:3)(173:4)(173:18)
(173:22)(247:2)
mode (142:6)
moment (93:8)(106:17)
(257:15)
monday (97:9)(175:24)
money (16:22)(17:22)
(44:7)(44:22)(62:25)
(63:2)(63:4)(142:21)
(142:22)(156:15)(227:2)
month (10:7)(102:5)
(104:16)(182:11)(185:21)
(189:11)(189:13)(190:8)
(194:11)(239:25)(242:1)
(242:2)
moon (29:17)(208:1)
moral (7:7)(48:22)
(164:1)(170:2)(170:25)

moralistically                                                                                    not      280

**moralistically** (148:19)
**morally** (138:1)
**morals** (85:3)
**more** (11:8)(11:11)
(26:13)(29:25)(37:24)
(38:2)(39:9)(39:19)(40:7)
(42:21)(43:16)(58:9)
(60:16)(65:23)(80:1)
(80:6)(80:8)(80:13)
(88:13)(103:17)(105:13)
(115:4)(116:24)(117:7)
(118:24)(124:21)(125:20)
(128:1)(128:8)(131:4)
(132:24)(133:3)(133:24)
(134:18)(134:25)(135:3)
(136:17)(136:21)(137:13)
(137:18)(140:21)(141:14)
(143:14)(149:11)(150:23)
(152:11)(155:12)(156:5)
(156:6)(159:16)(160:8)
(160:9)(160:13)(160:17)
(164:25)(165:1)(165:24)
(165:25)(167:2)(167:16)
(172:2)(173:10)(190:24)
(195:19)(198:22)(203:7)
(208:10)(215:24)(216:1)
(222:4)(222:25)(225:10)
(225:18)(245:6)(256:13)
**morgan** (95:6)
**morning** (5:6)(5:7)(5:16)
(5:17)(5:18)(5:24)(6:9)
(6:10)(9:13)(9:20)(9:21)
(11:7)(13:2)(13:11)
(13:14)(13:15)(14:3)
(14:4)(57:23)(57:24)
(58:2)(64:25)(66:2)
(101:2)(101:3)(101:11)
(101:16)(105:5)(105:6)
(105:8)(105:10)(105:19)
(105:22)(105:23)(106:10)
(106:12)
**morphine** (30:4)(30:5)
(208:14)
**most** (23:4)(40:12)
(51:19)(66:11)(70:20)
(106:18)(129:6)(197:25)
**mostly** (52:2)
**mother** (139:16)(141:23)
(144:15)(149:13)(149:15)
**mothers** (150:1)
**motivation** (18:15)
(208:12)
**motivations** (18:13)
**motives** (119:12)(125:5)
**motor** (129:18)
**mouth** (126:20)(126:21)
(126:22)(126:23)(144:2)
(199:22)(231:15)
**mouthful** (228:7)
**move** (43:1)(43:7)(112:7)
(158:3)(162:25)(201:9)
**moves** (134:2)
**movies** (245:3)
**moving** (52:22)(161:4)
(187:12)(203:16)(210:9)
(210:21)(217:25)(219:9)
(220:22)(233:17)(244:9)
(246:6)(250:15)
**much** (8:5)(8:16)(19:18)
(67:20)(80:8)(80:14)
(95:14)(100:17)(101:13)
(106:16)(109:3)(115:23)
(116:11)(124:15)(125:23)
(129:3)(133:12)(136:4)
(141:12)(145:20)(148:22)

(159:13)(165:22)(177:24)
(178:4)(180:11)(180:12)
(183:23)(187:18)(188:16)
(192:4)(229:12)(233:21)
(238:12)(255:25)(259:10)
**murder** (7:2)(9:25)
(14:23)(20:25)(24:17)
(24:18)(25:2)(25:5)(25:9)
(25:16)(25:22)(25:23)
(25:25)(26:7)(26:8)(26:9)
(26:10)(26:12)(26:13)
(26:14)(26:19)(26:20)
(26:24)(27:8)(27:10)
(27:13)(27:19)(27:20)
(27:25)(28:1)(28:12)
(28:21)(30:12)(31:3)
(31:4)(31:8)(31:13)
(31:14)(31:15)(32:6)
(33:2)(33:25)(36:18)
(38:5)(39:23)(43:25)
(44:24)(45:8)(45:15)
(56:16)(61:1)(61:12)
(64:6)(64:9)(71:7)(72:7)
(72:15)(77:6)(79:23)
(80:16)(101:20)(103:13)
(116:11)(116:16)(116:19)
(128:16)(129:11)(132:11)
(140:16)(146:22)(152:8)
(158:8)(163:10)(163:11)
(170:17)(190:12)(199:2)
(201:20)(201:21)(202:1)
(202:6)(202:9)(202:10)
(202:13)(202:14)(202:16)
(202:22)(202:25)(203:1)
(203:2)(203:5)(203:6)
(203:7)(203:8)(203:11)
(203:15)(203:18)(204:4)
(204:11)(204:22)(204:24)
(205:5)(205:8)(205:10)
(206:3)(206:15)(206:17)
(206:18)(206:19)(207:19)
(209:1)(210:18)(213:24)
(217:2)(217:3)(217:7)
(217:20)(217:21)(217:24)
(218:9)(218:13)(220:4)
(220:14)(222:11)(225:5)
(227:3)(227:7)(227:14)
(230:17)(231:4)(231:5)
(232:14)(234:5)(235:16)
(236:2)(236:8)(236:10)
(243:21)(244:8)(245:15)
(248:19)(249:24)(250:19)
**murdered** (148:13)
**murderer** (47:21)(73:6)
(75:4)(77:13)(91:19)
(141:7)(158:17)
**murderers** (74:23)
**murdering** (244:15)
(255:24)
**murders** (25:21)(209:9)
(225:20)
**must** (16:19)(16:20)
(21:18)(34:9)(203:14)
(211:1)(211:11)
**myself** (101:11)(107:10)
(144:12)(169:5)(170:23)
(198:3)(259:2)

## N

**nail** (16:17)(17:13)
(225:15)
**name** (57:22)(107:9)
(198:2)
**narrowly** (25:8)(203:3)
**naturally** (124:20)
(137:18)
**nature** (104:24)(162:8)

(162:23)
**nearly** (63:23)
**necessarily** (15:7)(41:9)
(48:12)(49:10)(51:10)
(65:13)(66:7)(96:17)
(119:3)(122:4)(124:23)
(134:10)(135:10)(149:3)
(150:19)(159:19)(190:17)
(198:13)(204:17)(215:11)
(218:15)(221:2)(236:24)
**necessary** (25:3)(61:13)
**necessities** (143:18)
**necessity** (147:11)
**need** (34:20)(39:18)
(40:8)(41:18)(44:6)
(45:19)(47:7)(47:8)(54:6)
(54:11)(58:17)(58:24)
(59:25)(60:8)(75:2)
(101:5)(107:7)(111:23)
(112:23)(114:10)(114:11)
(122:4)(136:21)(136:22)
(140:8)(143:15)(146:9)
(153:10)(153:16)(155:16)
(155:23)(164:16)(165:24)
(173:10)(175:20)(176:6)
(199:3)(206:12)(214:20)
(220:19)(224:22)(225:9)
(235:12)(242:5)(248:3)
(251:16)(251:17)(255:6)
**needed** (30:9)(145:2)
(198:21)(208:25)(255:3)
**neglected** (59:6)
**negligence** (68:21)
**negligent** (25:24)(31:9)
(68:21)
**neither** (48:25)(49:1)
(230:7)(254:6)
**nervous** (71:15)
**net** (47:15)(228:19)
(254:16)(254:20)
**neutral** (107:1)
**never** (7:3)(16:18)
(25:23)(25:24)(28:25)
(41:8)(73:14)(76:19)
(80:17)(103:11)(126:24)
(135:16)(136:7)(151:13)
(166:17)(169:11)(179:24)
(186:20)(190:12)(210:18)
(212:8)(220:11)(225:21)
(241:20)(258:5)
**nevertheless** (130:3)
(151:23)
**new** (11:15)(239:25)
(257:3)
**news** (23:4)(117:17)
**newspaper** (66:2)(98:22)
(99:6)(99:9)(99:17)
(176:25)(177:8)(177:13)
(177:15)
**newspapers** (100:9)(177:7)
**next** (13:3)(13:4)(13:9)
(13:12)(56:23)(63:21)
(68:14)(68:19)(86:12)
(105:8)(105:17)(105:20)
(170:23)(176:2)(181:4)
(196:23)(197:7)(226:12)
(244:10)(245:2)
**nice** (147:9)(185:8)
(193:23)(193:24)
**night** (111:12)(163:6)
(208:9)
**nights** (111:9)(111:14)
**nine** (145:22)
**nobody** (11:10)(18:15)
(74:4)(109:12)(238:5)
(248:9)
**nobody's** (74:13)(114:19)

(144:6)
**nod** (132:14)(200:2)
(214:22)
**nodding** (12:11)(203:20)
(224:23)(233:20)
**non** (39:23)
**none** (48:7)(89:7)(94:17)
(234:12)
**nonintoxicated** (231:18)
**nonsense** (114:22)(215:7)
**normal** (140:5)
**normally** (52:21)(107:23)
**north** (2:9)(2:22)
(260:21)(261:19)
**not** (6:20)(6:22)(12:5)
(13:7)(14:14)(14:18)
(14:24)(15:1)(15:3)(16:8)
(16:23)(18:4)(18:10)
(19:15)(20:23)(21:16)
(21:19)(21:22)(21:24)
(21:25)(23:8)(23:11)
(24:8)(24:10)(24:13)
(25:9)(25:19)(26:23)
(27:4)(27:22)(28:1)(29:9)
(29:20)(32:2)(33:10)
(33:11)(33:17)(34:15)
(37:10)(37:24)(38:2)
(38:3)(39:2)(39:9)(39:18)
(40:17)(42:21)(43:15)
(44:8)(45:18)(45:24)
(46:11)(46:23)(47:17)
(48:5)(48:15)(48:16)
(48:25)(49:1)(50:22)
(51:9)(51:17)(51:18)
(53:19)(54:4)(54:8)
(54:19)(55:16)(55:24)
(56:10)(59:14)(59:24)
(61:5)(62:6)(62:7)(62:20)
(63:8)(63:10)(63:12)
(64:7)(65:9)(66:7)(66:8)
(66:9)(67:2)(67:10)
(67:15)(67:16)(67:19)
(67:20)(68:7)(68:8)
(68:11)(68:13)(68:24)
(69:9)(69:12)(70:24)
(71:11)(71:17)(72:2)
(72:3)(74:10)(74:13)
(74:14)(74:23)(76:9)
(76:16)(76:17)(76:20)
(77:1)(77:10)(77:12)
(77:15)(77:16)(77:20)
(78:12)(79:7)(80:7)
(80:20)(80:25)(81:3)
(82:1)(82:2)(83:6)(85:20)
(86:8)(87:1)(87:12)
(87:17)(88:9)(88:18)
(91:4)(91:5)(91:8)(91:25)
(92:15)(92:18)(93:18)
(94:11)(94:14)(94:15)
(94:20)(94:21)(95:13)
(95:18)(96:1)(97:1)
(99:25)(104:4)(107:5)
(107:15)(109:13)(109:15)
(110:4)(110:18)(113:8)
(113:10)(114:1)(115:1)
(115:13)(116:3)(116:11)
(116:18)(117:6)(117:21)
(118:22)(119:3)(121:13)
(122:7)(122:10)(122:24)
(123:1)(123:19)(124:9)
(124:11)(124:12)(125:25)
(126:1)(126:10)(127:19)
(127:23)(129:4)(129:25)
(130:2)(130:9)(130:14)
(131:7)(131:13)(132:14)
(132:24)(133:3)(133:9)
(133:20)(133:25)(134:9)

not here                                                                ought    281

(135:2) (135:11) (136:13)
(137:7) (138:3) (138:18)
(139:15) (140:22) (141:21)
(141:22) (141:24) (142:3)
(142:6) (142:12) (142:15)
(143:4) (143:8) (143:15)
(143:20) (144:1) (147:5)
(148:1) (148:9) (148:10)
(149:18) (149:19) (150:11)
(150:13) (150:24) (152:11)
(155:4) (156:7) (156:17)
(157:15) (159:18) (159:19)
(160:14) (160:17) (161:6)
(162:16) (162:19) (163:16)
(163:19) (163:22) (164:24)
(165:4) (166:5) (167:2)
(168:9) (169:1) (169:12)
(169:24) (171:6) (172:5)
(172:20) (173:9) (173:18)
(174:18) (174:21) (176:8)
(176:16) (180:21) (186:14)
(187:3) (188:1) (196:11)
(198:20) (198:21) (198:25)
(199:3) (199:19) (200:1)
(200:10) (201:2) (201:5)
(202:10) (202:25) (203:1)
(203:14) (204:21) (205:8)
(205:9) (207:5) (207:6)
(210:13) (211:24) (212:19)
(212:25) (214:14) (214:15)
(214:18) (214:19) (214:20)
(215:11) (216:22) (217:13)
(217:14) (218:5) (218:13)
(218:22) (219:22) (220:10)
(221:1) (222:4) (222:23)
(222:25) (225:15) (226:11)
(227:16) (228:4) (228:20)
(230:16) (230:17) (231:8)
(232:17) (233:9) (233:14)
(235:9) (235:16) (236:10)
(236:24) (238:9) (240:5)
(240:14) (241:7) (241:11)
(241:12) (241:15) (241:25)
(242:4) (242:6) (242:15)
(242:17) (244:4) (244:24)
(245:20) (245:21) (246:15)
(246:20) (247:10) (247:11)
(247:12) (250:5) (250:14)
(253:13) (253:17) (253:22)
(254:19) (256:14) (257:8)
(257:23) (258:25)
**not here** (237:3)
**note** (261:2)
**nothing** (16:17) (19:3)
(30:2) (85:21) (86:16)
(89:18) (98:12) (116:15)
(172:1) (177:21) (200:10)
(201:22) (201:25) (208:5)
(216:7) (218:11)
**nothing's** (25:7)
**notice** (176:12)
**noticed** (112:13) (119:17)
(198:18)
**notified** (177:25)
**notion** (75:19)
**notions** (19:13)
**now** (10:25) (11:7) (12:24)
(24:17) (25:11) (27:22)
(27:23) (28:22) (31:13)
(32:11) (32:25) (33:3)
(33:18) (33:24) (34:1)
(34:4) (34:9) (34:10) (35:2)
(35:4) (35:5) (35:6) (35:7)
(35:8) (35:10) (35:19)
(36:11) (36:17) (39:13)
(43:7) (46:18) (46:20)
(46:22) (47:13) (48:2)

(49:3) (52:9) (56:9) (63:18)
(65:9) (66:18) (69:21)
(71:20) (74:22) (77:16)
(79:22) (80:5) (86:16)
(87:3) (87:21) (88:15)
(91:18) (91:23) (95:17)
(97:5) (97:12) (98:11)
(99:3) (102:5) (103:4)
(104:2) (104:10) (107:19)
(108:7) (117:9) (117:17)
(120:25) (122:18) (122:24)
(128:3) (128:21) (144:19)
(145:19) (150:7) (150:8)
(157:12) (157:18) (161:10)
(163:14) (163:20) (169:8)
(169:17) (175:5) (175:15)
(175:16) (185:21) (189:13)
(192:19) (192:20) (194:11)
(195:11) (201:11) (201:13)
(202:19) (203:17) (205:7)
(205:8) (206:20) (208:18)
(210:25) (211:15) (214:3)
(217:1) (218:6) (218:7)
(219:7) (219:19) (220:23)
(222:18) (223:3) (224:13)
(224:17) (225:18) (228:4)
(229:6) (233:11) (233:13)
(239:16) (239:20) (240:4)
(240:9) (241:9) (242:6)
(243:14) (248:15) (254:4)
**nuances** (24:21)
**number** (1:6) (6:25) (50:1)
(51:6) (72:22) (79:19)
(80:22) (81:9) (82:18)
(82:23) (83:4) (83:20)
(87:19) (88:2) (91:1) (91:3)
(91:5) (91:8) (91:10)
(91:11) (91:12) (91:14)
(91:23) (92:2) (92:5) (94:2)
(94:19) (96:4) (96:15)
(109:17) (119:19) (140:15)
(141:2) (144:10) (152:19)
(158:19) (158:25) (161:10)
(161:17) (162:23) (163:1)
(163:9) (163:15) (163:20)
(163:21) (167:20) (170:18)
(171:22) (172:9) (172:15)
(173:15) (173:17) (174:23)
(175:3) (186:19) (190:9)
(205:21) (205:22) (220:24)
(228:24) (252:19) (253:3)
(253:10) (253:12) (253:13)
(253:16) (253:23) (254:8)
(256:21) (256:24) (258:8)
**numbered** (1:20) (260:11)
**numbers** (116:25) (117:7)
(120:16) (120:24) (150:18)
(160:5)
**nurses** (39:4) (133:17)
(223:18)
**nurse's** (208:14)
**nutritional** (107:6)

**O**

**oath** (10:13) (10:17)
(10:20) (69:22) (69:25)
(70:1) (102:12) (102:18)
(102:21) (194:21) (194:25)
(195:3)
**oaths** (70:5)
**object** (171:19)
**objection** (3:9) (8:25)
(180:23) (188:3) (192:15)
**objections** (184:8)
**obligated** (20:6)
**obligation** (21:14)
(26:22) (63:6) (83:21)

(224:15)
**obviously** (62:24) (64:9)
(90:23)
**occasion** (103:11)
**occasionally** (88:12)
**occurred** (67:17) (67:19)
(260:11)
**off** (30:15) (64:1) (66:5)
(98:8) (120:8) (125:14)
(141:24) (190:22) (216:10)
(247:8)
**offend** (236:13)
**offense** (15:2) (16:20)
(20:10) (20:17) (25:5)
(25:6) (26:16) (28:9) (31:7)
(32:5) (36:24) (39:14)
(41:5) (48:20) (55:23)
(55:24) (56:2) (66:4)
(66:19) (67:17) (67:19)
(67:25) (68:5) (71:24)
(72:8) (73:11) (74:11)
(87:24) (88:14) (88:16)
(140:20) (151:13) (169:4)
(172:11) (201:12) (203:10)
(210:6) (226:16) (228:11)
(232:2) (244:13)
**offenses** (84:21) (89:7)
(205:2)
**offer** (106:20)
**offered** (17:12) (28:7)
(35:4) (83:22) (260:15)
**offers** (17:19)
**office** (2:7) (2:18) (2:19)
(2:21) (108:23) (109:3)
(109:5) (109:8) (110:12)
(110:13) (110:15) (112:14)
(112:16) (116:20) (118:3)
(118:15) (260:16)
**officer** (24:3) (26:10)
(203:5) (215:25) (216:12)
**officers** (23:20) (24:7)
(156:1) (216:1)
**offices** (109:11)
**official** (260:4) (260:20)
(261:18)
**often** (119:22)
**ohio** (95:6)
**oklahoma** (95:7)
**old** (57:25) (99:12)
(100:10) (117:15) (126:12)
(177:7) (229:22)
**older** (87:25)
**once** (9:20) (11:22)
(32:11) (47:7) (62:4)
(89:24) (90:7) (103:18)
(111:11) (111:12) (175:7)
(195:22)
**one** (6:1) (10:16) (15:5)
(17:16) (17:17) (21:20)
(22:13) (27:10) (31:20)
(33:25) (43:15) (48:19)
(57:24) (60:12) (62:15)
(63:18) (65:16) (69:6)
(69:24) (71:23) (75:12)
(75:17) (76:10) (88:13)
(95:18) (102:17) (105:13)
(109:15) (110:25) (111:3)
(111:6) (117:4) (124:23)
(125:14) (126:20) (126:25)
(128:16) (130:20) (137:12)
(139:17) (150:23) (151:4)
(151:15) (153:3) (153:5)
(154:24) (158:24) (161:6)
(167:10) (168:13) (170:19)
(173:4) (173:8) (173:21)
(179:9) (180:6) (181:4)
(182:4) (184:13) (186:1)

(188:7) (190:18) (191:7)
(194:24) (196:20) (197:1)
(198:8) (201:2) (209:24)
(215:24) (220:5) (220:24)
(227:15) (234:22) (235:3)
(239:15) (239:23) (241:20)
(244:4) (251:18) (252:8)
**only** (6:13) (15:22) (20:9)
(25:5) (26:23) (31:20)
(33:25) (39:2) (58:10)
(69:12) (71:18) (72:13)
(78:12) (110:16) (111:6)
(131:18) (139:19) (142:17)
(157:2) (163:21) (171:19)
(180:6) (201:20) (202:13)
(208:12) (211:16) (220:4)
(227:16) (241:12) (256:20)
**oops** (217:14)
**open** (5:3) (77:13) (78:21)
(79:1) (100:22) (118:24)
(119:15) (153:18 (178:9)
(238:22) (260:12)
**opening** (69:5)
**operate** (19:17)
**opinion** (51:20) (114:20)
(118:11) (187:7) (192:13)
(199:24) (245:5)
**opinions** (11:24) (87:3)
(103:20) (114:7) (114:25)
(149:3) (196:1)
**opportunity** (11:1)
(15:10) (33:8) (53:21)
(103:5) (198:9) (239:19)
**opposed** (155:3) (167:10)
**opposite** (125:12)
(170:19) (231:14)
**option** (207:5) (207:6)
(232:1) (254:13)
**options** (138:9) (143:11)
(205:12) (228:23)
**order** (26:9) (26:19)
(30:10) (34:19) (40:9)
(45:14) (45:17) (59:25)
(81:11) (81:19) (149:5)
(164:10) (173:19, (196:12)
(204:12) (215:14) (221:3)
(225:12) (226:16) (227:3)
**orientation** (11:2)
(195:13) (195:20)
**original** (104:14)
**other** (22:1) (25:2) (36:1)
(42:10) (43:20) (47:14)
(48:21) (53:9) (61:13)
(63:18) (69:19) (75:17)
(76:22) (83:4) (88:2) (89:5)
(91:2) (95:19) (98:11)
(110:8) (129:3) (129:16)
(130:2) (130:20) (131:7)
(132:4) (133:10) (133:21)
(133:22) (134:1) (141:11)
(143:11) (144:23) (146:22)
(148:5) (150:24) (165:22)
(166:13) (167:4) (170:9)
(171:21) (172:24) (176:20)
(197:1) (197:2) (198:25)
(199:8) (201:7) (201:18)
(212:9) (216:20) (218:18)
(223:15) (225:3) (227:10)
(229:10) (229:21) (230:3)
(231:14) (235:5) (236:8)
(246:2) (246:12) (260:8)
**others** (49:22) (75:15)
(137:19) (229:24) (240:10)
**otherwise** (26:19) (33:23)
(34:9) (86:18) (95:15)
(161:18) (211:17) (221:16)
**ought** (37:14) (71:17)

our                                                                                                                                     personal    282

(86:1)(87:7)(114:2)(212:7)
**our** (15:10)(65:12)(69:4)
(75:12)(75:16)(75:22)
(83:11)(89:12)(116:19)
(116:20)(116:22)(118:10)
(118:12)(120:12)(121:14)
(122:10)(137:17)(163:16)
(192:20)(226:18)(239:19)
(241:14)(250:9)
**out** (6:14)(10:7)(11:16)
(14:9)(17:12)(20:10)
(20:17)(25:10)(28:20)
(28:21)(29:5)(30:2)
(31:21)(37:12)(44:15)
(44:16)(44:22)(50:7)
(60:17)(74:9)(81:2)(81:7)
(85:21)(93:8)(97:1)
(100:10)(104:13)(104:15)
(106:14)(106:21)(107:15)
(109:2)(112:5)(113:18)
(115:6)(117:7)(119:5)
(123:5)(124:15)(126:11)
(126:15)(130:2)(131:4)
(138:11)(139:20)(140:12)
(142:4)(145:1)(145:9)
(147:1)(148:15)(150:2)
(150:14)(151:16)(151:22)
(154:2)(154:4)(156:9)
(163:4)(163:7)(164:22)
(166:16)(169:17)(174:7)
(176:7)(177:8)(179:18)
(179:22)(184:22)(185:19)
(189:9)(189:11)(190:6)
(194:15)(198:18)(202:18)
(206:25)(208:12)(209:7)
(213:16)(215:7)(226:17)
(226:18)(231:18)(234:20)
(239:24)(241:21)(242:7)
(242:23)(242:24)(250:20)
**outcome** (141:5)(232:22)
**outpouring** (150:4)
**outside** (41:5)(118:16)
(118:20)(129:24)(142:7)
(197:25)(224:1)(224:2)
(225:25)(257:14)
**over** (5:22)(9:24)(10:1)
(10:7)(11:4)(63:19)
(67:15)(71:16)(82:18)
(86:12)(92:24)(101:20)
(102:4)(104:16)(127:17)
(149:15)(158:22)(163:15)
(165:13)(176:4)(179:8)
(182:10)(185:21)(189:13)
(191:18)(194:11)(212:8)
(222:19)(228:5)(232:9)
(232:18)(244:6)(247:16)
**oversee** (241:1)
**overt** (122:5)
**overturn** (152:21)
**overwhelming** (162:15)
**own** (57:3)(65:25)(87:2)
(135:7)(142:5)(167:15)
(172:14)(173:11)(245:16)
(245:24)

---

**P**

---

**packets** (107:4)
**page** (3:4)(6:17)(7:6)
(16:12)(17:5)(18:3)
(24:24)(49:15)(49:16)
(50:20)(50:21)(51:2)
(60:18)(61:11)(63:19)
(86:6)(86:12)(104:20)
(114:2)(119:19)(155:11)
(155:24)(202:3)(202:6)
(234:7)(234:11)(234:23)
(236:19)(243:19)(243:25)

(244:6)(245:2)(247:1)
(247:16)
**paid** (240:9)(240:12)
(240:18)(242:16)
**pain** (30:1)
**painfully** (29:22)
**panel** (6:15)(10:14)
(10:16)(96:18)(96:22)
(102:11)(102:13)(102:18)
(175:6)(179:20)(194:20)
(194:22)(194:24)
**paper** (211:2)
**paraphrase** (42:10)(228:8)
**pardon** (119:25)
**parent** (136:3)(136:20)
(136:22)(142:12)(142:16)
(144:14)(168:9)
**parents** (141:23)(168:17)
**park** (209:7)
**parker** (1:21)(5:20)
(9:22)(101:17)(181:19)
(185:6)(188:23)(193:21)
**parks** (2:16)(13:12)
(44:15)(57:17)(57:18)
(57:21)(57:22)(58:16)
(59:3)(59:4)(59:7)(59:9)
(70:16)(70:17)(79:12)
(79:14)(79:15)(83:1)
(93:3)(93:6)(93:20)
(93:22)(93:25)(95:25)
(105:20)(153:4)(169:25)
(172:1)(172:17)(173:10)
(180:25)(197:8)(233:23)
(239:18)
**parlor** (17:15)(151:1)
(151:16)
**parole** (33:4)(128:18)
(128:19)(132:12)(161:14)
(170:12)(171:8)(173:22)
(218:19)(220:8)(220:9)
(228:15)(235:12)(248:13)
(250:23)(254:14)
**part** (31:18)(32:10)
(32:15)(32:25)(33:17)
(33:20)(34:8)(35:2)(63:2)
(82:12)(118:14)(123:21)
(127:5)(127:6)(129:6)
(130:21)(130:23)(131:18)
(139:18)(142:14)(163:16)
(169:8)(183:18)(197:4)
(199:14)(201:1)(214:25)
(215:1)(219:6)(219:18)
(240:25)(247:7)
**partiality** (261:10)
**participant** (45:12)
(46:5)(46:19)(47:22)
(227:24)
**participate** (227:16)
**participated** (227:11)
(259:5)
**participating** (43:21)
(88:18)(102:25)
**particular** (15:2)(16:3)
(16:20)(24:14)(47:23)
(49:9)(55:24)(56:6)
(61:14)(78:3)(78:12)
(85:18)(95:12)(107:12)
(132:25)(139:10)(148:11)
(150:10)(156:25)(166:16)
(171:23)(177:9)(194:2)
(198:5)(200:18)(201:13)
(201:15)(221:5)(229:7)
(238:3)
**particularly** (130:10)
(199:6)(204:11)(242:15)
**parties** (43:13)(82:18)
(226:13)(260:10)(260:15)

(261:9)
**parts** (31:18)(67:9)
(67:10)(182:4)(199:13)
(200:25)
**party** (45:17)
**pass** (12:6)(104:5)
(196:12)(238:14)
**past** (35:7)(78:4)(78:7)
(84:21)(150:19)(151:25)
(165:10)(166:18)(244:23)
(261:7)
**pattern** (134:19)(159:12)
(252:15)
**pay** (209:18)
**payroll** (109:2)
**pays** (241:9)
**peace** (26:10)(55:7)
(203:5)
**peach** (225:24)
**peculiar** (201:13)
**penalty** (6:21)(6:22)
(7:2)(7:4)(14:19)(16:13)
(16:18)(16:24)(16:25)
(19:19)(19:21)(24:23)
(25:1)(25:6)(25:7)(25:20)
(27:3)(28:2)(45:19)
(46:21)(53:25)(54:1)
(54:25)(60:7)(60:12)
(60:19)(60:22)(61:12)
(61:21)(62:4)(62:9)
(62:11)(62:14)(63:7)
(63:14)(63:16)(64:14)
(70:21)(76:6)(87:23)
(90:9)(90:20)(91:25)
(92:1)(92:6)(92:16)
(114:2)(114:8)(115:2)
(115:22)(116:14)(116:17)
(116:18)(118:9)(119:20)
(120:13)(121:14)(122:8)
(127:22)(127:25)(128:2)
(128:22)(132:9)(134:4)
(139:11)(139:23)(140:7)
(141:1)(141:12)(146:3)
(146:14)(147:16)(152:16)
(152:22)(154:25)(155:4)
(163:23)(170:13)(173:19)
(179:24)(179:25)(186:13)
(186:19)(186:21)(187:10)
(190:9)(190:11)(190:13)
(190:25)(198:23)(199:9)
(201:17)(201:21)(201:22)
(202:8)(202:11)(202:24)
(205:9)(218:12)(218:14)
(218:16)(220:16)(234:8)
(234:12)(234:25)(235:6)
(235:18)(243:8)(243:13)
(243:16)(243:20)(244:1)
(244:3)(244:8)(244:14)
(244:16)(244:19)(244:23)
(244:25)(245:4)(245:6)
(245:12)(245:25)(249:2)
(249:11)(249:14)(249:25)
(250:14)(251:17)(251:19)
(251:25)(252:12)(252:18)
(254:14)
**pencil** (97:12)(176:13)
**penitentiary** (75:16)
(92:8)(128:24)(129:10)
(152:12)(162:1)
**people** (14:8)(14:12)
(14:13)(14:15)(14:23)
(15:9)(15:21)(18:8)
(18:11)(23:16)(23:19)
(24:20)(26:13)(29:2)
(33:1)(36:21)(37:23)
(38:7)(39:2)(39:4)(41:4)
(41:12)(43:9)(43:16)

(48:11)(49:17)(50:14)
(53:6)(53:8)(53:9)(66:1)
(66:12)(69:7)(71:16)
(78:13)(88:12)(89:6)
(96:20)(108:4)(109:4)
(109:17)(110:12)(110:13)
(110:15)(110:16)(110:19)
(112:8)(112:9)(113:18)
(113:25)(114:9)(118:16)
(118:21)(118:24)(121:24)
(122:14)(122:20)(123:2)
(123:6)(124:22)(129:10)
(129:17)(130:2)(130:20)
(131:19)(131:22)(133:5)
(133:11)(133:13)(133:19)
(133:22)(134:1)(135:4)
(135:12)(135:18)(136:1)
(136:15)(137:24)(139:20)
(144:23)(146:21)(147:6)
(148:1)(150:3)(157:25)
(161:21)(161:25)(165:4)
(165:20)(165:22)(166:7)
(168:5)(168:18)(169:10)
(170:21)(175:6)(175:7)
(198:14)(198:15)(198:18)
(198:22)(198:25)(200:19)
(203:7)(207:13)(211:19)
(214:21)(214:22)(218:20)
(220:13)(223:15)(223:23)
(228:21)(229:19)(229:21)
(229:23)(233:1)(235:5)
(235:13)(235:22)(237:6)
(239:20)(242:11)(243:9)
(247:18)(249:19)
**percent** (61:25)(62:3)
(69:4)(113:20)(127:2)
(160:8)(160:9)(242:18)
**peremptory** (175:8)
**perfect** (89:8)
**perfectly** (248:5)
**period** (103:2)(176:6)
(240:16)(240:18)(241:13)
(243:13)
**person** (14:22)(14:24)
(18:7)(18:18)(18:25)
(21:1)(25:6)(25:25)(26:4)
(26:14)(31:20)(33:5)
(36:18)(43:15)(49:9)
(50:24)(53:3)(54:17)
(56:15)(64:10)(64:12)
(65:19)(67:14)(67:15)
(73:22)(76:12)(76:23)
(77:1)(77:5)(77:12)
(77:18)(78:4)(78:12)
(79:3)(79:22)(85:12)
(87:23)(88:13)(90:2)
(92:3)(109:15)(115:15)
(116:16)(117:21)(125:8)
(128:15)(128:22)(132:10)
(134:13)(134:25)(135:2)
(135:12)(135:23)(137:2)
(137:7)(137:10)(138:4)
(138:8)(138:16)(148:17)
(148:23)(150:7)(150:8)
(150:12)(151:5)(152:6)
(158:8)(158:16)(159:6)
(163:10)(163:23)(165:14)
(165:17)(173:21)(187:9)
(198:6)(199:16)(200:7)
(200:9)(201:5)(201:8)
(201:20)(202:15)(202:17)
(203:8)(205:7)(205:14)
(218:8)(218:13)(219:1)
(219:2)(232:24)(243:15)
(245:13)(245:19)(245:20)
(246:16)
**personal** (7:7)(24:22)

personally                                                                    publicity   283

(51:20)(51:25)(53:11)
(87:3)(163:25)(170:2)
(170:3)(170:25)(171:1)
(171:12)(173:11)(228:12)
(244:15)(245:17)(245:24)
personally  (165:2)
persons  (129:3)(202:10)
(202:13)
person's  (21:10)(48:22)
(49:15)(64:10)(68:10)
(79:5)(81:9)(85:20)
(88:23)(149:7)(151:5)
(213:22)(218:6)(224:1)
(245:23)(246:13)
petty  (143:6)
phase  (31:19)(32:12)
(32:13)(32:25)(33:24)
(64:18)(71:5)(71:12)
(83:14)(84:13)(84:18)
(201:9)(219:5)
physical  (89:2)(168:22)
physically  (94:16)
pick  (66:2)(131:19)
picked  (30:15)(190:17)
(235:4)
picking  (102:1)
picks  (209:7)
picture  (125:23)(136:23)
piece  (19:7)(22:23)
(48:24)(125:20)(126:16)
(211:2)(232:3)
pin  (18:24)(143:8)
(224:12)(258:12)
pinpoint  (41:23)
place  (22:25)(44:10)
(66:23)(109:20)(109:21)
(118:19)(129:23)(142:1)
(149:7)(241:4)
places  (138:9)
plan  (226:17)
plans  (28:20)(28:21)
(206:23)(206:25)
play  (47:3)(89:9)
(124:17)(136:14)(163:16)
(167:16)(201:11)(223:14)
playground  (29:5)(30:15)
playing  (216:11)
plays  (136:4)
please  (5:8)(5:11)(8:9)
(9:19)(50:20)(71:7)(96:6)
(96:10)(96:12)(96:17)
(101:4)(174:7)(174:23)
(178:16)(178:18)(181:18)
(184:21)(188:13)(193:1)
(193:13)(239:5)(261:5)
plenty  (97:21)
plot  (226:18)
plus  (26:8)(27:10)
(31:15)(203:2)(203:11)
(204:14)
pocket  (148:15)
point  (10:11)(19:25)
(20:19)(21:18)(28:11)
(29:11)(31:22)(36:16)
(38:17)(39:21)(41:14)
(41:24)(43:6)(46:20)
(46:22)(48:12)(64:19)
(72:19)(72:25)(79:18)
(94:25)(99:13)(102:10)
(104:11)(125:14)(141:1)
(177:12)(194:18)(194:19)
(198:13)(198:21)(208:21)
(208:22)(216:10)(229:12)
(229:24)(231:17)(232:16)
(248:3)(255:1)(258:13)
points  (20:17)(213:16)
police  (23:20)(24:3)

(24:6)(156:1)(216:1)
(216:12)
pool  (198:14)(198:16)
poor  (50:5)
population  (129:7)
(130:20)
portion  (66:21)
portions  (260:8)
position  (47:18)(77:10)
possession  (52:4)(52:5)
possibility  (37:19)
(37:21)(77:14)(99:4)
(123:18)(175:17)(221:25)
possible  (36:6)(37:21)
(41:17)(64:7)(127:13)
(222:2)(232:23)(233:2)
possibly  (15:6)(25:2)
(29:25)(54:22)(61:13)
(254:2)
potential  (155:4)(240:15)
potentially  (18:6)
(107:18)(134:11)(134:14)
(241:17)(241:18)
poverty  (89:3)(94:17)
power  (111:3)
powerful  (52:15)
preconceived  (19:13)
(75:19)(98:19)
predetermined  (61:6)
predict  (36:5)(241:20)
prediction  (76:13)
(82:14)(160:25)(162:6)
predictor  (78:6)
predispositions  (137:18)
present  (5:3)(61:17)
(79:4)(100:22)(153:18)
(178:9)(238:22)
presented  (199:13)
(232:3)(235:11)
presiding  (1:21)(5:22)
(9:24)(10:1)(101:19)
(181:21)(188:24)(194:1)
presumably  (38:20)
presume  (19:24)(20:11)
(34:9)(34:13)(65:18)
(65:21)(65:23)(66:15)
(210:20)(210:22)(211:1)
(219:19)(219:21)
presumed  (20:8)(33:22)
(34:7)(64:24)
presumes  (62:11)(161:16)
presumption  (33:19)
(33:23)(65:14)(65:17)
(157:19)(161:12)(211:16)
(219:8)(219:10)(219:17)
(250:20)
pretrial  (99:14)(176:22)
(177:12)
pretty  (25:13)(109:2)
(109:7)(111:18)(112:11)
(112:21)(117:15)(124:20)
(127:2)(129:3)(129:19)
(148:22)(159:12)(164:9)
(166:9)(172:9)(190:24)
(199:12)(202:22)(215:7)
prevail  (17:21)
prevails  (92:13)
prevent  (7:8)(7:11)
(183:3)(184:6)
prey  (131:15)
price  (209:18)
primer  (200:23)
principles  (19:22)
(22:12)(210:16)
prior  (81:24)(81:25)
(82:5)(82:6)(82:9)(225:20)
prison  (17:24)(29:3)

(33:3)(38:21)(38:22)
(38:23)(38:25)(42:19)
(54:17)(54:19)(55:6)
(73:2)(75:14)(75:22)
(81:12)(90:17)(117:21)
(128:17)(128:19)(129:23)
(130:4)(130:5)(130:10)
(130:18)(131:6)(131:18)
(132:5)(132:11)(133:4)
(133:10)(138:19)(139:1)
(205:15)(205:16)(207:15)
(220:8)(223:6)(223:7)
(223:9)(223:23)(226:8)
(233:2)(245:11)(256:7)
prisoners  (40:23)(54:21)
prisons  (223:15)
private  (156:2)
pro  (44:12)
probability  (35:24)
(36:3)(37:19)(37:20)
(37:23)(160:1)(160:3)
(160:6)(160:23)(161:7)
(221:23)(221:24)(221:25)
(222:4)(256:5)(256:17)
probably  (10:7)(23:2)
(23:5)(59:14)(60:15)
(70:12)(76:15)(77:2)
(83:10)(102:6)(113:8)
(115:3)(115:5)(117:3)
(117:4)(121:23)(124:19)
(124:21)(128:1)(130:15)
(132:7)(133:13)(134:21)
(135:11)(135:17)(139:8)
(146:25)(147:1)(149:18)
(149:19)(160:6)(166:2)
(169:12)(182:10)(194:11)
(199:23)(206:2)(208:10)
(212:18)(231:9)(240:23)
(256:4)(257:8)
problem  (55:14)(113:9)
(125:1)(135:20)(215:3)
procedural  (11:5)(11:25)
(103:12)(103:23)(195:23)
(196:5)
proceed  (6:3)(153:7)
(154:7)(179:10)(189:21)
proceedings  (1:19)(1:20)
(1:23)(10:11)(102:10)
(194:19)(259:13)(260:9)
(260:14)
process  (5:23)(10:1)
(53:18)(101:21)(122:11)
(132:18)(181:22)(183:18)
(185:11)(189:1)(194:3)
(194:7)(235:23)
produced  (1:24)
productive  (115:16)
professional  (261:8)
professor  (111:18)
project  (117:24)(118:10)
(119:10)(122:17)
promises  (70:1)
prompting  (95:14)
promulgated  (261:3)
pronounce  (192:22)
pronouncing  (193:18)
pronunciation  (185:2)
(200:4)
proof  (20:9)(37:15)
(64:22)(77:25)(78:1)
(80:19)(83:5)(157:16)
(212:5)(212:7)(237:19)
(238:5)(238:6)(250:9)
(253:3)(254:5)
proper  (31:11)(34:10)
(34:14)(49:20)(53:22)
(56:5)(90:2)(114:5)

(201:25)(220:1)(247:20)
property  (129:17)
(232:25)(248:22)(255:25)
proposition  (30:20)
propositions  (20:14)
(210:16)
prosecuting  (13:8)
(105:16)(197:5)
prosecution  (61:17)
(79:4)(84:10)(105:13)
(105:14)(117:14)(161:11)
(197:2)(197:4)
prosecutor  (64:20)(80:5)
(80:7)(117:8)(164:5)
(189:19)
prosecutors  (156:1)
prosecutor's  (58:6)
(82:20)(118:2)
prospective  (5:12)(9:4)
(10:13)(89:1)(93:16)
(96:15)(102:12)(175:3)
(178:20)(181:2)(181:23)
(184:10)(184:24)(188:5)
(188:19)(192:17)(193:13)
(194:21)
protection  (131:25)
prove  (20:6)(20:9)
(20:12)(20:16)(20:18)
(20:20)(21:3)(26:18)
(26:23)(31:6)(32:4)
(34:20)(35:17)(40:11)
(40:15)(42:8)(42:20)
(55:22)(65:2)(65:4)
(67:25)(71:24)(72:7)
(75:20)(77:15)(77:18)
(77:19)(83:6)(83:9)
(95:20)(117:20)(152:10)
(157:21)(161:6)(161:18)
(203:13)(204:16)(211:3)
(211:16)(212:11)(212:12)
(213:6)(213:8)(213:15)
(213:18)(213:19)(214:1)
(217:2)(217:3)(217:20)
(219:22)(219:24)(220:11)
(221:3)(221:4)(221:16)
(222:24)(223:24)(224:16)
(225:4)(226:10)(235:25)
(236:1)(236:2)(236:15)
(238:6)(238:7)(249:12)
proved  (21:12)(27:14)
(33:22)(34:9)(35:21)
(36:22)(36:23)(37:17)
(39:8)(42:9)(46:14)
(64:12)(201:3)(205:25)
(214:6)(214:9)(219:11)
(221:22)(222:11)(222:12)
(226:2)
proven  (19:25)(34:15)
(67:1)(72:7)(89:24)
(92:20)(92:24)(210:23)
(244:16)
proves  (79:23)
provide  (190:22)
provided  (233:8)(252:21)
(257:3)
provider  (207:23)
provides  (29:15)(51:3)
(77:17)(86:13)(114:4)
proving  (20:17)(22:6)
(79:19)(213:16)(221:13)
(253:3)
psychological  (135:7)
psychologically  (135:23)
public  (2:21)(63:5)
(156:6)
publicity  (99:13)(99:14)
(176:22)(177:12)

pull (25:10)(202:18)
punishable (244:2)
punishment (15:18)
(16:14)(16:19)(16:22)
(28:3)(28:5)(28:8)(28:23)
(30:18)(31:1)(32:12)
(47:1)(49:20)(51:5)
(51:11)(56:2)(60:19)
(71:5)(71:12)(72:9)
(72:10)(83:14)(84:13)
(84:17)(86:15)(90:2)
(157:6)(200:14)(200:15)
(201:9)(201:10)(202:5)
(205:7)(205:11)(205:19)
(206:20)(209:24)(210:5)
(218:8)(247:3)(247:7)
(247:20)(250:20)
punishments (128:16)
puppets (57:25)
purpose (54:14)(58:13)
(60:12)(83:22)(243:4)
pursuant (261:5)
pursued (118:9)
pushed (169:12)
put (17:5)(29:3)(40:23)
(47:17)(50:7)(63:12)
(65:3)(75:7)(75:14)
(85:21)(92:8)(92:24)
(104:22)(104:23)(114:1)
(126:8)(126:23)(128:23)
(147:24)(183:17)(199:22)
(202:9)(203:17)(208:20)
(213:4)(215:18)(216:2)
(216:3)(230:4)(230:19)
(231:15)(234:25)(236:18)
(237:13)(242:20)(244:18)
(248:1)
puts (120:25)
putting (54:17)(129:13)
(183:3)

## Q

qualifications (213:22)
qualified (14:12)(14:14)
(14:18)(14:22)(14:25)
(15:3)(15:6)(15:7)(15:9)
(16:4)(18:18)(18:24)
(18:25)(19:8)(93:19)
(95:22)(96:14)(107:16)
(107:17)(108:12)(109:12)
(175:8)(180:22)(198:12)
(198:15)(198:16)(198:21)
(198:25)(199:3)(200:6)
(200:18)(215:11)
qualifying (96:20)(175:6)
quality (156:14)
qualms (204:3)
quantified (190:17)
quay (1:21)(5:20)(9:22)
(101:17)(181:18)(185:6)
(188:23)(193:21)
question (7:14)(10:23)
(17:3)(17:15)(17:18)
(18:15)(24:25)(35:14)
(35:16)(36:9)(36:25)
(39:8)(39:15)(39:17)
(40:9)(41:17)(41:19)
(42:11)(42:13)(42:22)
(43:1)(46:2)(46:18)
(48:19)(49:15)(49:17)
(57:3)(57:5)(63:21)
(73:17)(75:2)(75:3)(75:6)
(76:20)(77:5)(77:11)
(78:5)(78:16)(79:11)
(80:25)(81:4)(82:1)(82:7)
(82:18)(83:3)(84:5)(84:6)
(94:5)(102:24)(103:2)

(104:20)(112:8)(118:18)
(119:12)(120:8)(120:25)
(132:15)(132:20)(132:21)
(133:23)(134:15)(135:3)
(135:22)(139:7)(146:11)
(151:1)(152:13)(155:19)
(156:11)(156:25)(169:5)
(172:20)(195:8)(202:14)
(209:23)(221:4)(223:22)
(224:3)(224:20)(224:21)
(226:1)(228:2)(228:3)
(230:2)(244:6)(244:7)
(244:10)(249:6)(250:3)
(258:10)
questioning (124:2)
questionnaire (6:14)
(6:17)(8:9)(10:6)(14:9)
(14:15)(15:4)(15:14)
(16:11)(46:25)(49:14)
(59:14)(60:18)(61:1)
(70:11)(70:13)(70:18)
(83:21)(86:5)(94:13)
(104:14)(107:14)(113:23)
(114:6)(119:18)(146:1)
(155:9)(179:19)(179:23)
(182:7)(182:24)(185:18)
(186:12)(186:19)(189:10)
(190:5)(191:2)(194:16)
(199:10)(202:3)(215:5)
(230:14)(234:20)(239:24)
(243:14)(243:19)(247:8)
(249:1)
questionnaires (14:10)
(198:7)(242:24)
questions (6:13)(7:18)
(7:21)(7:22)(11:23)(12:5)
(12:11)(33:7)(33:8)
(33:13)(33:16)(37:10)
(50:18)(50:19)(53:17)
(56:24)(57:12)(59:21)
(82:22)(90:24)(92:3)
(93:4)(103:19)(104:16)
(104:21)(117:12)(132:18)
(136:11)(136:13)(152:25)
(154:15)(155:8)(180:9)
(180:10)(182:13)(183:13)
(185:15)(185:25)(186:25)
(189:14)(192:1)(195:24)
(196:8)(218:25)(219:1)
(219:3)(227:25)(230:12)
(233:25)(246:3)(250:2)
(251:3)(252:15)(257:7)
quick (44:7)(135:13)
(198:18)
quickly (134:20)
quite (15:6)(18:13)
(22:5)(148:1)(191:3)
(191:8)(213:6)(213:8)
(228:6)(228:7)(254:20)
quiz (12:5)(104:4)

## R

radio (100:1)(100:3)
(177:16)
raise (10:12)(68:16)
(102:11)(171:13)(194:20)
raised (50:5)(63:25)
(85:13)(85:20)(89:14)
(136:19)(136:21)(144:1)
(144:14)(167:22)
raising (88:23)
ranch (2:18)
range (28:2)(28:8)
(30:17)(56:3)(72:9)(88:8)
(205:12)(209:25)
rank (156:8)
rate (165:21)

rather (58:5)(115:14)
(131:3)(138:2)(148:2)
(156:14)(190:19)(228:15)
(245:14)
reach (33:15)(55:20)
(57:9)(124:18)(134:20)
reached (43:6)(54:17)
reaction (137:16)(191:8)
read (7:13)(11:1)(14:10)
(33:8)(70:25)(99:16)
(99:25)(103:5)(155:23)
(158:21)(163:1)(163:4)
(163:7)(176:24)(195:12)
(195:20)(218:22)(228:9)
(245:1)
reading (14:15)(71:16)
(71:17)(100:8)(146:1)
(177:14)(198:7)(243:14)
ready (9:6)(44:19)
(181:9)(192:23)(197:14)
(226:22)(226:24)(258:16)
real (54:8)(58:12)
(70:10)(70:14)
really (33:11)(37:4)
(37:5)(48:24)(60:25)
(65:14)(82:3)(94:8)
(101:11)(102:22)(103:11)
(104:25)(106:15)(109:12)
(110:9)(114:11)(115:19)
(117:11)(118:17)(120:7)
(121:4)(130:23)(136:16)
(140:14)(141:14)(142:22)
(145:19)(146:2)(154:18)
(156:7)(156:15)(164:12)
(164:15)(167:17)(169:6)
(190:16)(190:19)(198:18)
(211:20)(233:4)(240:14)
(240:20)(242:17)(249:7)
(254:22)
reason (19:25)(34:13)
(94:1)(118:8)(136:6)
(163:15)(210:22)(219:21)
reasonable (20:12)(21:3)
(22:6)(32:4)(34:21)
(35:24)(37:13)(37:18)
(46:15)(55:22)(65:5)
(68:12)(68:16)(72:14)
(76:14)(89:25)(122:21)
(152:5)(152:10)(157:16)
(158:16)(159:25)(161:6)
(162:20)(173:16)(201:3)
(211:17)(211:18)(211:24)
(213:7)(213:19)(217:21)
(220:12)(221:11)(221:13)
(221:22)(253:4)
reasonably (261:10)
reasoning (246:23)
reasons (170:11)(172:25)
recall (6:14)(10:9)
(10:14)(98:15)(102:4)
(102:15)(177:1)(179:18)
(194:11)(194:15)(194:22)
receivables (109:1)
receive (128:18)(163:23)
(218:8)(219:2)
received (245:13)
receives (33:5)
receptive (199:9)
recess (58:18)(100:20)
(100:21)(153:10)(153:14)
(153:17)(178:7)(178:8)
(238:20)(238:21)
reckless (25:24)
recklessly (68:20)
recognize (18:17)(75:1)
recognizes (74:22)(75:3)
reconsider (39:16)(47:9)

(225:10)(232:17)(232:19)
(232:22)
reconsideration (233:9)
reconsidered (37:8)
record (1:1)(1:24)
(81:25)(93:24)(95:25)
(96:3)(178:19)(193:13)
(229:24)(233:12)(258:3)
(260:10)
refer (35:16)(66:22)
(132:22)(189:18)(220:24)
reference (6:25)
referred (128:24)
reflect (96:1)(96:4)
(178:20)(193:13)
reflects (260:14)
refrain (177:14)
regard (246:3)
regarding (179:23)
(186:13)(190:8)
regardless (14:24)
(62:13)(77:21)(88:20)
(200:14)(251:20)(255:25)
regards (186:18)(261:6)
regular (164:18)(164:21)
rejected (94:6)
relation (24:9)
relationships (261:8)
relax (12:6)(153:14)
relevant (78:2)(78:18)
(78:19)(81:8)(82:1)
(82:10)(94:6)
religion (6:21)
religious (7:7)(171:14)
(183:2)(184:6)
rely (142:18)
remarried (144:16)
remember (33:18)(35:17)
(46:25)(66:23)(176:21)
(219:7)
remind (10:19)(102:21)
(195:3)
removed (148:22)
render (70:1)(200:16)
(205:16)
rendon (3:12)(4:9)
(178:11)(178:12)(178:14)
(178:22)(178:24)(179:1)
(179:2)(179:3)(179:5)
(179:6)(179:12)(179:18)
(180:12)(180:14)(180:17)
(180:21)(181:2)
r-e-n-d-o-n (179:2)
(181:3)
rent (110:1)
rephrase (11:19)(12:8)
replace (109:16)
report (98:25)(114:19)
reported (1:23)(260:12)
reporter (12:10)(38:10)
(70:15)(260:5)(260:20)
(261:18)
reporter's (1:1)(1:24)
(4:14)(260:10)
reports (99:12)(99:18)
(177:9)(177:13)
represent (13:17)
(197:10)(239:18)
representative (26:22)
(236:22)
represented (120:10)
represents (7:1)
requested (260:9)
require (83:12)
requirement (85:17)
(85:19)
research (128:1)

resides                                                                                                                saying    285

resides (256:6)
respect (17:6)(23:20)
(71:5)(127:22)
respected (171:2)
respective (260:15)
response (95:9)(104:23)
responses (94:13)
(104:17)(185:25)(189:15)
(196:1)
responsibilities (109:7)
responsibility (13:8)
(105:15)(197:5)
responsible (186:14)
(186:15)
responsive (10:22)
(102:24)(195:8)
rest (38:19)(54:17)
(83:15)(83:18)(223:5)
(226:8)
restraints (242:14)
restrictions (108:10)
result (93:10)(152:15)
(174:11)(246:19)
resulted (7:9)(14:17)
retire (69:19)
return (7:3)(14:17)
(19:5)(20:6)(22:18)
(53:22)(61:18)(63:6)
(67:1)(71:25)(72:1)
(95:21)(152:7)(179:25)
(186:20)(188:2)(190:12)
(190:18)(198:23)(200:12)
(204:12)
returned (15:17)(32:21)
(62:2)(219:15)
returning (7:9)(65:6)
returns (62:14)
revenge (147:16)(148:8)
review (35:3)(83:21)
(214:23)
reviewing (122:18)
revisit (75:8)(83:2)
(86:6)
revisiting (117:15)
revolves (208:1)
rhodes (3:17)(4:10)
(184:14)(184:16)(184:17)
(184:19)(185:1)(185:4)
(185:5)(185:6)(185:8)
(185:12)(185:16)(185:20)
(185:23)(186:3)(186:6)
(186:10)(187:1)(187:5)
(187:8)(187:12)(187:15)
(187:17)(187:20)(187:22)
(188:5)
r-h-o-d-e-s (185:5)
rid (54:3)(54:4)(128:12)
ride (204:18)
ridiculously (162:18)
right (5:7)(7:15)(7:24)
(8:1)(8:19)(8:24)(9:3)
(9:6)(9:7)(10:5)(10:12)
(11:13)(12:4)(13:18)
(16:15)(16:17)(16:22)
(17:4)(17:22)(21:17)
(21:21)(21:22)(21:23)
(22:12)(23:15)(25:11)
(31:24)(32:10)(33:8)
(33:23)(34:3)(34:4)
(34:10)(34:12)(34:16)
(34:18)(35:10)(35:18)
(35:20)(35:22)(36:11)
(36:17)(37:22)(38:24)
(39:4)(40:20)(42:3)(42:5)
(42:18)(43:10)(47:7)
(47:13)(47:23)(48:1)
(51:2)(51:19)(53:12)

(54:10)(55:12)(56:9)
(59:2)(59:9)(59:10)
(59:20)(61:4)(62:15)
(63:17)(67:15)(67:17)
(67:22)(68:2)(69:18)
(69:19)(69:21)(71:4)
(72:5)(72:12)(72:13)
(72:17)(73:7)(73:12)
(73:16)(73:18)(74:1)
(74:3)(74:6)(74:12)
(74:15)(74:19)(74:22)
(74:25)(78:1)(79:3)(80:2)
(81:5)(81:6)(82:2)(82:15)
(82:16)(82:17)(84:1)
(84:14)(84:24)(86:10)
(86:24)(87:14)(87:20)
(88:11)(88:21)(90:2)
(91:17)(91:21)(92:8)
(93:5)(93:10)(93:15)
(95:17)(96:5)(96:10)
(97:5)(97:12)(98:24)
(99:8)(100:12)(100:16)
(101:7)(101:18)(101:24)
(102:11)(102:20)(103:22)
(104:2)(104:10)(104:24)
(106:3)(106:11)(106:17)
(108:2)(109:21)(109:23)
(109:25)(111:22)(111:24)
(113:11)(113:13)(113:16)
(114:16)(114:24)(116:2)
(116:13)(117:8)(117:19)
(118:6)(119:2)(119:17)
(121:20)(122:9)(122:16)
(122:25)(124:14)(124:25)
(125:11)(126:9)(126:15)
(126:19)(127:20)(127:21)
(128:3)(128:20)(129:1)
(129:21)(131:1)(131:7)
(131:15)(131:16)(131:21)
(131:22)(132:13)(132:19)
(133:2)(134:3)(134:12)
(135:21)(138:12)(138:15)
(139:2)(140:18)(142:3)
(144:2)(144:4)(144:5)
(144:17)(149:2)(151:23)
(153:2)(154:6)(154:14)
(155:6)(157:10)(157:12)
(157:18)(157:19)(157:20)
(157:25)(158:1)(158:14)
(158:17)(160:15)(161:13)
(161:19)(162:24)(163:12)
(164:2)(166:6)(166:8)
(168:5)(168:7)(169:2)
(170:4)(170:7)(171:2)
(174:5)(174:7)(174:12)
(174:16)(174:22)(175:5)
(177:2)(177:18)(178:3)
(178:16)(180:18)(181:18)
(182:1)(182:16)(184:9)
(184:21)(185:7)(186:1)
(188:13)(188:22)(190:5)
(192:3)(192:19)(192:25)
(193:20)(194:21)(195:2)
(195:9)(195:11)(195:15)
(196:8)(196:22)(197:13)
(197:14)(199:20)(199:24)
(202:19)(204:8)(207:2)
(207:8)(207:16)(209:19)
(211:15)(212:7)(212:19)
(212:23)(212:24)(212:25)
(213:13)(216:25)(219:12)
(220:5)(222:2)(222:3)
(222:15)(222:18)(223:3)
(224:13)(229:6)(229:13)
(230:22)(231:21)(231:23)
(232:7)(233:13)(233:18)
(237:5)(237:7)(237:15)

(237:20)(238:15)(239:4)
(240:13)(241:22)(242:4)
(242:6)(242:25)(243:23)
(244:4)(244:5)(244:18)
(245:22)(247:6)(247:16)
(247:22)(248:2)(248:5)
(248:6)(248:8)(249:4)
(252:11)(254:4)(256:22)
(257:10)(259:6)(259:7)
rights (95:2)(131:9)
righty (243:4)
rise (5:4)(9:10)(29:17)
(68:7)(85:23)(100:25)
(178:10)(181:12)(184:15)
(188:9)(193:2)
road (44:8)(59:13)
(101:19)(181:20)(185:7)
rob (44:10)(44:21)
(217:23)(227:1)
robbed (227:4)(235:17)
robbery (39:24)(45:5)
(129:13)(158:13)(203:10)
(225:6)(226:18)(232:25)
(244:13)
robbing (141:9)(152:7)
(217:22)(248:22)(255:25)
roger (3:14)(4:11)
(181:7)(181:8)(181:23)
(182:19)(184:10)
room (30:5)(63:1)(123:7)
(124:17)(170:16)(213:5)
(218:18)(239:14)
rough (128:3)(130:5)
(136:2)
row (52:13)(128:25)
(129:4)
rule (261:2)(261:6)
ruling (3:6)(3:8)(3:9)
(3:13)(3:15)(3:18)(3:20)
(3:23)
run (109:1)(126:11)
(150:14)(169:11)
run-on (228:16)
rushed (106:14)

## S

safe (131:1)(131:3)
(131:7)(131:23)(166:1)
safely (75:16)
safety (47:15)(132:4)
(228:19)(254:16)(254:20)
said (7:1)(7:10)(17:6)
(17:21)(18:4)(25:2)(28:7)
(45:21)(49:16)(49:21)
(51:17)(53:21)(60:25)
(61:11)(66:23)(68:24)
(92:9)(92:20)(94:4)
(94:10)(94:11)(94:12)
(94:13)(94:14)(94:15)
(98:23)(105:24)(107:9)
(110:21)(113:17)(119:22)
(120:1)(122:6)(123:6)
(124:24)(127:22)(132:10)
(144:9)(154:4)(154:25)
(155:1)(158:2)(165:10)
(168:5)(168:14)(176:21)
(198:2)(202:2)(202:5)
(230:20)(230:21)(234:7)
(234:12)(234:23)(236:20)
(237:6)(244:4)(244:8)
(244:14)(244:24)(245:4)
(245:6)(247:5)(247:22)
(258:11)
same (18:3)(26:13)
(30:17)(32:24)(43:16)
(124:11)(126:4)(141:10)
(165:2)(165:3)(172:23)

(203:8)(207:20)(216:20)
(246:8)
sat (15:13)(16 3)(22:17)
(90:5)(200:20)(206:19)
satisfied (62:8)
satisfies (80:9)
saturday (176:4)
save (208:5)
saw (15:14)(35:2)
(203:19)(239:24)(254:23)
say (14:16)(14:23)
(16:22)(17:2)(19:6)(19:8)
(20:23)(20:24)(21:7)
(22:4)(23:10)(23:18)
(27:9)(27:12)(28:11)
(29:2)(29:11)(33:3)
(36:11)(36:21)(37:4)
(37:19)(37:23)(38:1)
(38:4)(39:16)(39:18)
(39:24)(40:21)(41:4)
(41:12)(42:10)(44:4)
(44:8)(44:18)(44:19)
(48:11)(50:24)(53:4)
(53:5)(53:8)(53:9)(56:8)
(58:6)(59:25)(60:13)
(61:20)(65:16)(65:18)
(65:20)(65:24)(66:4)
(66:8)(69:9)(69:12)
(73:21)(76:11)(76:19)
(76:22)(78:3)(79:6)
(80:15)(82:4)(82:7)
(83:5)(83:18)(86:16)
(86:21)(87:16)(88:1)
(88:3)(89:1)(89:5)(90:9)
(97:2)(98:12)(108:12)
(109:4)(109:21)(113:25)
(114:9)(115:1)(116:14)
(120:15)(121:16)(121:23)
(124:8)(124:19)(124:20)
(124:22)(125:1)(125:2)
(126:3)(126:8)(126:16)
(126:21)(127:2)(128:11)
(128:14)(129:23)(131:2)
(131:18)(134:24)(136:1)
(136:12)(140:7)(141:6)
(141:20)(141:24)(142:20)
(143:1)(143:10)(144:9)
(144:13)(146:13)(148:8)
(149:9)(149:18)(150:18)
(150:23)(154:17)(156:5)
(157:15)(160:7)(164:16)
(164:25)(165:19)(165:25)
(169:9)(169:20)(170:18)
(176:8)(180:6)(186:13)
(191:7)(191:10)(191:22)
(198:22)(199:1)(200:2)
(206:18)(207:4)(207:13)
(209:14)(210:14)(211:10)
(211:19)(211:22)(212:6)
(213:6)(213:23)(215:13)
(216:11)(216:13)(216:14)
(216:21)(217:6)(220:13)
(221:18)(222:4)(222:10)
(224:22)(225:17)(226:2)
(226:25)(228:22)(229:19)
(229:21)(229:23)(229:25)
(230:8)(231:3)(235:5)
(235:14)(235:15)(235:18)
(237:6)(241:12)(243:18)
(246:4)(246:11)(247:9)
(249:11)(251:16)(255:18)
(256:11)(256:23)
saying (39:24)(41:10)
(47:6)(48:15)(49:25)
(51:8)(65:15)(70:12)
(71:2)(75:25)(77:20)
(86:17)(112:6)(114:20)

says                                                                                    sir        286

(119:8)(119:10)(138:10)
(140:5)(141:17)(142:25)
(146:19)(148:16)(148:21)
(149:14)(149:15)(164:6)
(164:7)(164:24)(167:24)
(172:20)(203:24)(228:24)
(230:21)(231:21)(233:9)
(233:18)(236:24)(246:23)
**says** (12:10)(18:25)
(21:7)(21:10)(34:7)
(35:23)(38:1)(43:13)
(44:10)(44:15)(44:20)
(51:2)(65:15)(66:22)
(66:24)(67:13)(74:9)
(77:21)(83:24)(85:22)
(86:13)(86:22)(87:22)
(119:23)(146:9)(149:1)
(159:24)(161:5)(167:3)
(170:1)(170:8)(171:6)
(172:2)(172:9)(173:21)
(186:20)(214:2)(214:4)
(216:23)(226:22)(226:25)
(246:20)(246:25)(247:18)
**sbot** (2:3)(2:5)(2:6)
(2:12)(2:16)(2:20)
**scale** (63:11)(234:24)
(244:18)
**scare** (217:9)
**scenario** (29:10)(139:10)
(207:17)
**schedule** (112:7)
**scheduling** (176:17)
**schlueter** (3:14)(4:11)
(181:5)(181:6)(181:7)
(181:8)(181:9)(181:13)
(181:14)(181:16)(181:24)
(181:25)(182:2)(182:6)
(182:9)(182:12)(182:15)
(182:19)(182:23)(183:16)
(183:19)(183:21)(183:23)
(183:24)(184:1)(184:10)
**s-c-h-l-u-e-t-e-r**
**schlueter's** (184:11)
**school** (109:24)(110:21)
(111:5)(112:16)(163:6)
(207:24)
**science** (110:22)
**scooters** (129:19)
**scope** (116:24)
**scout** (207:25)
**scrambling** (113:12)
(113:14)(113:16)
**screwed** (131:4)
**seal** (260:16)
**season** (109:21)
**seat** (5:7)(95:1)(96:10)
(101:3)(153:21)(175:1)
(178:15)(181:17)(184:20)
(188:15)(193:8)(238:25)
(258:21)
**seated** (5:11)(8:19)
(9:17)(9:18)(13:9)(93:14)
(96:12)(105:17)(153:23)
(174:15)(178:17)(184:2)
(184:23)(187:23)(193:12)
(196:23)(197:7)(239:5)
(257:20)
**second** (7:6)(7:14)
(29:24)(30:1)(32:12)
(32:24)(32:25)(33:24)
(43:2)(43:8)(49:17)
(208:8)(219:5)(219:6)
(219:18)(243:25)(244:6)
**second-guess** (62:15)
**seconds** (162:11)
**section** (128:23)
**see** (5:25)(12:15)(16:21)

(17:2)(18:11)(22:11)
(24:24)(26:16)(37:14)
(37:20)(38:25)(39:19)
(40:8)(41:4)(41:24)(42:4)
(43:3)(43:14)(49:16)
(53:17)(54:11)(59:9)
(60:8)(60:12)(64:3)(64:5)
(66:3)(67:25)(72:4)
(72:10)(79:6)(82:24)
(85:19)(90:24)(91:4)
(101:5)(109:10)(117:10)
(118:25)(119:1)(120:4)
(120:24)(122:24)(125:3)
(128:7)(132:16)(133:19)
(135:4)(137:11)(139:9)
(139:17)(142:24)(145:13)
(146:19)(148:5)(156:4)
(156:11)(159:4)(159:5)
(159:7)(159:13)(160:19)
(160:24)(161:5)(174:1)
(182:23)(186:18)(195:12)
(198:9)(198:10)(208:21)
(208:22)(209:5)(221:11)
(221:24)(223:7)(224:1)
(224:23)(224:25)(225:10)
(225:19)(225:21)(231:25)
(234:3)(235:21)(240:2)
(240:25)(242:3)(243:18)
(245:7)(248:3)(248:10)
(254:1)(254:2)
**seeing** (117:25)(139:14)
(139:17)(164:17)(164:19)
(229:5)
**seek** (116:18)(120:13)
(121:14)(122:8)
**seeking** (115:22)(116:1)
(117:25)(243:9)
**seem** (143:5)(154:17)
(159:11)
**seemed** (141:4)(141:5)
(154:3)
**seems** (117:2)(117:10)
(120:9)(134:19)(134:23)
(243:15)(245:9)(245:19)
(248:15)(248:25)
**seen** (11:10)(18:11)
(57:24)(104:15)(114:6)
(122:17)(145:11)(166:3)
(182:11)(199:10)(245:2)
(246:13)
**sees** (29:5)(30:1)
**select** (107:12)(122:8)
(198:15)
**selected** (16:4)(107:17)
(175:2)
**selecting** (198:4)
**selection** (5:23)(10:1)
(101:21)(181:21)(185:11)
(189:1)(194:3)(194:6)
**selective** (116:20)
**self-awareness** (135:24)
**self-control** (137:21)
**self-defense** (26:5)
(74:4)(217:10)(217:14)
**self-explanatory** (172:9)
**semester** (111:7)
**send** (228:21)
**senior** (5:21)(9:23)
(101:17)(181:19)(185:6)
(188:23)(193:21)
**sense** (15:11)(15:12)
(27:6)(27:7)(34:17)
(34:22)(35:12)(43:23)
(45:25)(46:8)(46:9)
(49:11)(50:11)(51:12)
(69:13)(73:19)(74:20)
(80:10)(80:11)(86:3)

(91:14)(125:23)(161:14)
(161:22)(162:4)(162:5)
(170:14)(171:10)(173:1)
(173:6)(173:12)(173:24)
(201:18)(211:25)(216:16)
(220:2)(230:10)
**sentence** (27:23)(28:2)
(33:6)(33:15)(34:4)(34:5)
(34:10)(34:11)(34:14)
(34:19)(34:20)(34:21)
(35:9)(35:10)(38:17)
(42:14)(46:21)(47:13)
(47:14)(47:24)(47:25)
(48:3)(49:7)(49:8)(54:18)
(54:25)(83:8)(94:25)
(128:18)(132:15)(132:25)
(133:1)(134:10)(134:16)
(141:14)(170:12)(170:13)
(173:19)(173:23)(219:2)
(219:20)(220:1)(220:7)
(220:10)(223:3)(226:4)
(226:5)(228:3)(228:4)
(228:14)(228:16)(229:6)
(229:8)(229:13)(234:17)
(245:14)(248:13)(250:14)
(250:18)(251:4)(256:12)
(256:13)(258:6)
**sentenced** (161:21)
**sentencing** (184:7)
**separate** (32:13)(128:23)
(219:7)
**serious** (73:11)
**seriously** (18:19)
**servants** (63:5)
**serve** (18:5)(18:9)
(61:25)(132:11)(180:22)
(187:11)
**served** (156:13)
**serves** (54:14)(60:13)
**service** (8:6)(62:20)
(133:13)(176:7)(184:12)
(187:19)(259:6)
**services** (108:24)
**serving** (129:10)(130:25)
(131:6)(240:10)
**set** (20:10)(29:6)(29:17)
(31:21)(71:21)(114:5)
(127:8)(209:20)
**sets** (142:13)
**setting** (118:16)(126:24)
(127:18)
**several** (199:11)
**sexual** (89:3)(168:23)
(203:10)
**sexually** (94:16)
**shaking** (22:11)
**shall** (86:19)(86:21)
**shape** (157:8)
**she** (8:23)(12:14)(44:10)
(44:11)(44:12)(44:14)
(44:15)(44:20)(45:6)
(45:9)(45:11)(45:12)
(45:16)(45:19)(45:21)
(45:24)(52:8)(66:23)
(79:11)(84:17)(94:2)
(94:4)(94:6)(94:10)
(94:12)(94:13)(94:14)
(94:15)(94:20)(95:15)
(95:16)(95:17)(95:18)
(95:22)(96:4)(127:8)
(127:17)(144:18)(144:24)
(145:1)(145:5)(145:6)
(145:8)(182:13)(188:1)
(226:19)(226:21)(226:22)
(226:25)(227:6)(227:9)
(227:10)(227:11)(227:16)
(250:9)(258:5)(258:6)

(258:11)(258:12)
**she'd** (94:14)
**sheer** (30:2)(208:12)
**she'll** (105:7)
**she's** (44:23)(52:10)
(52:11)(93:18)(180:21)
(222:19)
**shoot** (25:11)(44:22)
(64:1)(165:6)(202:20)
(217:9)(227:2)
**shooter** (88:20)
**shooting** (21:1)(21:6)
(143:2)(213:25)(214:7)
**shoots** (29:6)(208:15)
(209:8)
**shop** (44:12)(200:11)
**short** (58:17)(153:10)
(238:17)
**shot** (63:25)(66:24)
(116:4)(148:14)(227:4)
**should** (14:24)(17:4)
(17:6)(17:7)(17:21)
(18:15)(19:13)(25:1)
(34:21)(35:9)(35:18)
(36:25)(43:7)(45:16)
(49:19)(50:14)(51:17)
(61:12)(64:1)(67:1)
(86:25)(87:1)(87:8)
(106:16)(115:19)(117:21)
(118:9)(121:9)(122:11)
(132:1)(132:8)(132:17)
(134:15)(148:17)(149:16)
(158:23)(176:17)(177:12)
(202:8)(203:14)(203:18)
(204:4)(205:24)(206:5)
(207:2)(207:14)(209:12)
(210:4)(212:11)(218:8)
(218:15)(218:19)(218:20)
(220:12)(220:16)(227:6)
(232:17)(235:11)(235:18)
(244:8)(247:7)(247:13)
(247:20)
**shouldn't** (117:12)
(122:11)(131:15)(141:11)
(212:11)
**show** (40:16)(69:3)
(78:10)(79:2)(81:5)
(81:14)(117:20)(152:4)
(199:1)(199:2)(212:9)
(226:7)(234:15)
**showed** (198:6)(231:6)
(234:16)
**shows** (66:25)(120:21)
(198:24)(245:3)
**shy** (22:5)
**side** (13:9)(68:3)(82:8)
(96:23)(96:24)(149:16)
(149:19)(150:3)(175:8)
(175:12)(199:1)(212:8)
(216:20)
**sides** (16:4)(62:20)
(149:19)(150:4)(166:23)
(243:5)
**sign** (199:2)
**significantly** (63:13)
**silly** (124:23)
**silver** (144:1)
**similar** (201:17)
**simplified** (151:20)
**simply** (76:15)(116:9)
(204:21)(250:8)
**since** (14:10)(22:7)
(161:11)(182:11)
**single** (136:3)(136:19)
(136:22)(139:16)(141:22)
(144:14)(168:9)(208:8)
**sir** (6:2)(57:19)(96:3)

(101:4)(102:16)(153:20)
(174:13)(177:25)(179:3)
(181:18)(183:14)(183:22)
(183:25)(187:25)(188:13)
(188:21)(189:2)(189:7)
(189:12)(189:17)(191:23)
(196:21)(239:8)
**sit** (14:12)(15:6)(15:11)
(19:23)(20:24)(24:22)
(44:15)(69:24)(70:17)
(71:16)(76:5)(107:16)
(107:18)(108:20)(210:19)
(210:25)(213:22)(218:18)
(226:22)(233:11)
**sits** (29:23)(64:25)
(157:18)(208:8)
**sitting** (7:8)(29:19)
(34:4)(34:10)(38:10)
(38:17)(42:15)(44:7)
(46:21)(46:22)(127:19)
(213:23)(220:10)(223:2)
(223:6)(223:7)(226:4)
(228:4)(229:6)
**situation** (28:1)(35:7)
(49:9)(60:23)(61:15)
(67:12)(74:7)(85:16)
(132:23)(134:20)(137:17)
(137:22)(137:25)(139:19)
(140:6)(140:10)(143:4)
(144:22)(159:11)(164:21)
(165:3)(167:7)(169:11)
(173:14)(206:22)(240:11)
(241:6)(242:21)(246:15)
**situational** (134:18)
(233:7)
**situations** (51:25)
(246:13)
**six** (15:21)(15:22)
(20:18)(26:12)(203:6)
(213:17)
**sixth** (95:3)
**skeptical** (124:20)(125:5)
**skepticism** (124:16)
**skip** (82:18)
**skipped** (163:15)
**slated** (107:19)
**sleeps** (208:9)
**slinging** (151:12)
**slipped** (87:12)
**slips** (246:14)
**slowly** (29:21)(147:14)
**smack** (222:18)
**small** (108:13)(125:20)
(125:23)(137:3)
**smart** (154:18)
**smoke** (211:10)
**snap** (28:17)(207:1)
**snatches** (74:8)
**snipes** (5:22)(9:24)
(9:25)(10:3)(10:10)(97:8)
(99:21)(99:24)(101:19)
(102:2)(102:9)(175:21)
(181:21)(185:10)(185:14)
(188:24)(189:4)(194:1)
(194:4)(194:14)(194:19)
(252:13)(253:14)(259:2)
**snuck** (127:17)
**sober** (231:18)
**social** (120:6)(261:8)
**societal** (147:1)
**society** (36:1)(38:16)
(38:25)(39:5)(39:11)
(40:18)(75:21)(81:17)
(91:21)(131:2)(133:5)
(133:22)(134:1)(140:25)
(150:11)(150:13)(160:3)
(160:24)(190:23)(221:8)

(223:2)(223:8)(223:9)
(223:23)(247:22)(256:4)
(256:6)(256:7)
**some** (7:2)(10:11)(11:5)
(14:13)(14:22)(18:11)
(23:7)(36:21)(37:23)
(39:9)(41:3)(41:12)
(41:18)(44:7)(44:13)
(48:11)(49:17)(49:21)
(51:15)(51:24)(51:25)
(53:6)(53:8)(54:13)
(59:14)(61:3)(63:6)
(64:10)(66:3)(67:18)
(72:7)(76:7)(76:11)
(77:20)(78:3)(78:19)
(79:2)(79:8)(82:5)(84:15)
(86:25)(87:1)(87:25)
(89:1)(98:22)(98:25)
(102:10)(104:11)(104:17)
(106:20)(106:25)(107:4)
(108:3)(108:4)(111:20)
(112:7)(112:9)(119:18)
(121:24)(126:11)(126:20)
(130:19)(136:1)(137:18)
(137:24)(146:25)(147:1)
(147:25)(148:1)(154:15)
(159:23)(165:7)(165:13)
(165:21)(182:13)(185:24)
(185:25)(189:11)(189:14)
(189:15)(190:12)(194:18)
(194:19)(198:18)(198:22)
(198:25)(199:13)(200:18)
(200:19)(201:7)(201:17)
(211:10)(211:19)(211:22)
(215:13)(220:13)(221:6)
(222:4)(222:23)(229:10)
(229:19)(229:23)(235:5)
(235:13)(236:8)(237:6)
(239:11)(240:9)(247:18)
**somebody** (14:18)(22:21)
(27:25)(36:22)(40:17)
(44:2)(45:1)(45:16)
(45:20)(45:24)(46:5)
(46:11)(74:8)(87:12)
(127:17)(140:16)(141:8)
(143:2)(148:13)(152:1)
(156:14)(206:2)(217:22)
(220:14)(222:13)(225:4)
(225:18)(227:17)(227:24)
(232:14)(232:24)(235:11)
(235:15)(235:16)(235:17)
(241:3)(246:12)(246:14)
(255:24)
**somebody's** (36:11)(41:8)
(129:14)(151:8)(152:23)
(216:12)(225:16)(236:14)
**someday** (146:20)
**someone** (49:20)(64:8)
(66:3)(73:21)(76:17)
(90:1)(116:4)(148:21)
(156:12)(162:1)(163:14)
(171:4)(184:7)(186:15)
(190:21)(244:1)(247:21)
**someone's** (186:14)
**something** (12:7)(12:18)
(23:8)(26:6)(26:8)(26:9)
(31:6)(37:14)(37:23)
(40:7)(41:4)(43:12)
(47:12)(47:19)(47:20)
(47:22)(48:20)(48:21)
(48:23)(50:3)(52:2)
(52:20)(53:13)(58:5)
(59:11)(61:22)(63:22)
(65:17)(68:22)(80:1)
(82:15)(85:17)(87:6)
(87:12)(87:17)(88:12)
(94:14)(102:7)(104:23)

(107:7)(110:6)(111:17)
(111:21)(115:16)(119:6)
(120:10)(122:4)(123:21)
(124:12)(125:2)(132:8)
(137:3)(138:3)(141:22)
(143:13)(159:17)(159:18)
(160:6)(160:11)(160:12)
(161:2)(162:10)(162:14)
(164:9)(164:19)(167:25)
(168:10)(168:22)(169:20)
(169:25)(170:3)(171:1)
(183:3)(190:22)(199:20)
(202:10)(204:23)(205:4)
(211:11)(216:18)(217:14)
(224:22)(224:25)(225:10)
(226:13)(229:4)(229:11)
(230:18)(231:2)(231:11)
(233:13)(234:4)(234:17)
(236:6)(236:16)(238:25)
(241:23)(242:5)(246:14)
**something's** (95:13)
(125:25)
**sometimes** (43:14)(52:18)
(62:22)(71:15)(115:17)
(144:2)(155:15)(168:5)
(254:15)
**somewhat** (58:3)(58:4)
(149:10)
**somewhere** (176:10)
(209:24)
**son** (29:25)(208:10)
(217:17)
**son's** (208:15)
**sorry** (8:10)(95:24)
(153:7)(155:18)(160:20)
(214:14)(221:19)
**sort** (60:22)(61:7)
(66:10)(75:10)(77:10)
(81:7)(81:21)(90:6)(100:9)
**sorts** (89:4)
**sound** (19:10)(28:20)
(34:24)(149:17)(187:14)
(244:15)(245:16)
**sounded** (164:6)(164:8)
**sound-mind** (206:22)
**sounds** (44:11)(144:13)
(206:15)(206:17)(207:7)
(207:11)
**southern** (240:4)
**speak** (46:4)(120:3)
(120:19)(164:12)(227:23)
**speaking** (120:19)
(128:21)(133:7)(133:20)
(141:2)(142:12)(143:1)
(191:20)(226:14)
**speaks** (84:3)(94:19)
(132:23)
**special** (11:5)(11:25)
(35:15)(37:9)(43:2)(43:8)
(47:4)(50:1)(51:6)(59:18)
(71:22)(72:4)(72:11)
(72:16)(72:22)(78:3)
(79:19)(80:22)(81:8)
(82:22)(83:3)(83:20)
(87:18)(88:2)(90:14)
(91:1)(91:3)(91:4)(91:8)
(91:23)(92:2)(92:5)(94:2)
(94:3)(94:7)(94:8)(94:18)
(95:20)(103:24)(140:15)
(141:1)(152:19)(157:7)
(158:3)(158:7)(158:19)
(158:25)(161:10)(161:17)
(162:23)(162:25)(163:9)
(163:14)(163:20)(163:21)
(167:19)(170:17)(171:21)
(172:8)(172:15)(173:14)
(173:17)(195:23)(196:6)

(218:22)(220:20)(220:23)
(220:24)(226:12)(228:5)
(251:6)(251:13)(252:6)
(252:19)(253:3)(253:10)
(253:16)(253:23)(254:8)
(258:7)
**specialized** (216:7)
**specifically** (24:17)
(40:21)(83:22)
**specifics** (40:19)(118:5)
**spend** (17:24)(38:19)
(115:6)(130:11)
**spending** (62:23)(81:12)
**spent** (63:4)(130:12)
**spit** (123:5)
**spoke** (141:18)
**spoon** (144:1)
**spouse** (244:22)
**stabbed** (21:12)(66:25)
(214:6)
**stabbing** (214:12)
**stacked** (139:21)(141:3)
(141:19)(141:20)(143:11)
(164:8)(164:17)
**stage** (59:16)(69:1)
(79:1)(83:17)
**stand** (10:12)(21:10)
(22:19)(22:24)(23:16)
(23:24)(69:13)(83:15)
(83:18)(102:11)(152:22)
(194:20)(213:1)(214:4)
(216:14)(216:22)
**standard** (216:5)
**standing** (148:22)
**standpoint** (75:24)
(83:10)(131:2)
**stanley** (24:1)
**start** (11:23)(112:4)
(134:21)(139:13)(139:14)
(139:17)(139:18)(139:21)
(145:15)(148:20)(148:21)
(175:21)(216:10)(231:17)
(240:6)(257:6)
**started** (172:19)(233:22)
(239:25)
**starting** (135:1)(221:10)
(250:20)
**starts** (37:12)(99:14)
(231:16)
**state** (1:5)(2:10)(3:4)
(4:3)(6:7)(8:20)(14:1)
(20:7)(22:5)(25:4)(26:23)
(27:14)(37:16)(37:17)
(60:10)(61:16)(63:2)
(63:3)(64:21)(67:24)
(68:10)(68:16)(71:23)
(72:6)(77:17)(77:25)
(78:1)(78:10)(79:12)
(83:6)(83:13)(83:15)
(86:7)(87:22)(89:24)
(95:4)(95:9)(106:8)
(114:21)(172:6)(174:16)
(177:20)(179:9)(179:14)
(180:19)(180:20)(182:21)
(184:3)(184:5)(186:8)
(187:24)(187:25)(190:1)
(192:9)(192:11)(197:20)
(201:3)(212:6)(213:6)
(228:20)(235:23)(236:22)
(237:8)(239:21)(243:8)
(244:11)(249:20)(252:24)
(257:21)(260:2)(260:6)
**stated** (6:20)(23:20)
(24:5)(46:25)(84:17)
(95:20)(199:12)(199:14)
**statement** (16:13)(17:20)
(50:13)(64:3)

statements                                                                                    thank        288

statements  (69:6)(199:11)
states  (20:3)(20:22)
(21:25)(22:17)(23:8)
(23:17)(43:13)(43:19)
(45:14)(45:17)(95:3)
(210:25)(211:5)(212:10)
(212:18)(213:1)(216:9)
(227:9)(230:16)
state's  (3:5)(3:12)
(3:15)(3:17)(3:20)(9:3)
(70:14)(70:16)(81:5)
(95:23)(181:1)(184:10)
(188:4)(192:16)(215:13)
(215:14)(253:2)
stay  (107:6)(142:1)
stays  (42:17)(226:4)
steadfastly  (95:15)
steal  (131:20)
stealing  (129:12)(129:14)
stenotype  (1:23)
step  (44:1)(93:7)(174:7)
(204:15)(227:15)(257:14)
still  (7:4)(7:16)(10:20)
(83:20)(87:6)(90:12)
(90:14)(90:19)(95:20)
(102:21)(109:18)(113:1)
(117:25)(121:15)(121:22)
(128:6)(137:25)(152:22)
(159:12)(166:3)(166:4)
(166:9)(169:15)(180:3)
(183:8)(186:21)(187:7)
(190:15)(191:20)(195:3)
(205:4)(205:5)(232:15)
(232:16)(240:2)(250:9)
(253:10)
stole  (159:18)
stomp  (25:12)
stood  (10:17)(102:18)
(194:25)
stop  (228:2)
store  (44:21)(126:11)
(226:24)
story  (125:25)(126:1)
street  (2:13)(17:10)
(66:6)
strict  (83:10)
strictly  (149:1)(200:13)
strikes  (96:23)(175:9)
strong  (70:14)(70:15)
(243:9)(243:13)
stronger  (135:12)
strongly  (191:15)
(234:24)(235:1)(243:16)
struck  (96:24)(175:12)
studies  (61:24)(69:3)
studying  (110:22)
stuff  (112:21)(113:4)
(113:12)(131:20)(178:2)
subject  (30:17)(116:12)
(130:18)(240:20)
subjected  (87:23)
submit  (29:1)(33:10)
(37:3)(198:20)(204:8)
(206:1)(233:6)(235:23)
submits  (253:16)
submitted  (116:19)(255:9)
such  (14:13)(84:21)
(86:7)(89:2)(92:6)
(107:25)(112:17)(114:8)
(117:24)(123:22)(129:6)
(187:9)(190:18)(215:22)
(228:21)(249:24)(251:3)
suffer  (208:11)
suffering  (30:3)(208:7)
suffers  (208:7)
sufficient  (83:7)(91:25)
(94:5)(94:24)(152:21)

(163:22)(173:4)(173:9)
(173:18)(173:22)(228:13)
(230:10)(238:9)(254:24)
(256:12)(256:25)(258:6)
sufficiently  (47:12)
(49:5)(49:10)(50:9)
(230:2)(256:25)
sugar  (106:17)(107:4)
suggest  (62:15)(66:5)
(80:7)(172:6)
suggestion  (171:24)
suite  (2:14)
summarize  (237:15)
summer  (111:7)
sun  (29:17)(207:25)
sunday  (126:6)(126:10)
(176:4)
supplied  (45:9)
support  (141:23)(141:25)
(142:1)(142:15)(190:25)
supports  (36:7)
suppose  (67:16)(127:13)
(140:1)(152:1)
supposedly  (140:2)
supreme  (95:5)(261:2)
(261:5)
sure  (10:9)(35:1)(36:8)
(38:15)(55:13)(59:7)
(59:15)(61:23)(89:20)
(92:18)(99:20)(99:24)
(103:3)(103:11)(104:6)
(104:17)(104:18)(106:15)
(109:15)(109:17)(111:4)
(111:18)(113:19)(114:3)
(114:18)(117:13)(121:25)
(125:18)(126:22)(127:21)
(130:4)(130:13)(133:12)
(136:24)(138:4)(140:11)
(142:8)(144:2)(144:13)
(144:21)(147:15)(150:1)
(150:3)(151:3)(155:7)
(155:10)(156:19)(156:24)
(157:1)(157:4)(161:21)
(162:11)(164:13)(169:6)
(177:10)(187:6)(189:14)
(192:24)(204:5)(211:20)
(211:23)(224:8)(232:23)
(234:23)(240:14)(240:23)
(254:1)(257:17)(258:24)
surrounding  (149:11)
survival  (142:5)
survive  (109:18)(142:10)
suspicious  (121:15)
swayed  (190:24)
swing  (29:6)
sworn  (10:21)(102:22)
(195:4)
sympathy  (29:10)
system  (31:17)(54:19)
(75:16)(114:8)(117:11)
(118:19)(120:1)(122:12)
(122:13)(130:24)(141:23)
(142:1)(142:15)(143:23)
(148:3)(200:25)(205:6)
(215:1)(219:6)(248:7)

**T**

table  (13:10)(44:7)
(105:17)(167:3)
take  (18:19)(31:10)
(41:12)(50:1)(50:2)
(58:17)(62:20)(64:13)
(69:25)(75:25)(77:10)
(82:13)(88:15)(96:23)
(97:16)(97:17)(98:4)
(100:19)(107:22)(109:14)
(109:16)(118:15)(127:4)

(132:1)(138:2)(144:24)
(147:19)(148:14)(148:15)
(149:7)(149:9)(152:6)
(153:10)(153:13)(154:19)
(157:7)(171:25)(180:6)
(185:17)(189:9)(201:14)
(206:24)(212:25)(216:14)
(216:22)(226:20)(230:24)
(232:25)(238:17)(238:20)
(241:4)(247:12)(254:9)
(254:10)
taken  (108:5)(119:5)
takes  (21:10)(29:4)
(116:15)(173:15)(173:17)
(184:13)(214:4)
taking  (12:10)(23:16)
(83:24)(101:22)(108:16)
(140:17)(172:10)(186:14)
(186:15)(187:2)(189:5)
(194:5)(228:9)(244:11)
(245:16)(248:22)(255:25)
talk  (5:24)(19:16)
(20:23)(24:16)(24:18)
(31:4)(31:13)(53:21)
(59:13)(59:16)(59:17)
(60:15)(63:18)(64:17)
(66:2)(66:18)(66:22)
(67:5)(71:5)(71:18)(78:2)
(103:16)(108:21)(113:23)
(156:6)(157:2)(157:11)
(158:3)(163:19)(171:24)
(198:8)(198:9)(198:17)
(198:21)(217:1)(218:7)
(239:19)(239:23)(243:7)
(248:3)
talked  (10:11)(32:4)
(64:20)(65:4)(66:20)
(122:12)(164:4)(235:10)
(238:4)(254:19)
talking  (31:2)(44:1)
(49:24)(51:6)(59:10)
(71:11)(83:2)(87:9)
(105:7)(107:13)(107:14)
(119:9)(154:1)(155:12)
(156:8)(157:6)(160:7)
(169:16)(179:9)(182:3)
(186:2)(189:19)(195:17)
(196:6)(196:20)(199:23)
(210:17)(229:14)(231:4)
(238:11)(246:15)(246:16)
(248:11)(248:16)(248:19)
(253:12)
targets  (131:13)
taught  (142:4)(142:11)
(168:5)(168:8)
tax  (110:5)
teachers  (133:14)
team  (13:6)(13:17)
(105:13)(105:15)(105:18)
(105:25)(106:1)(197:2)
(197:5)(197:9)
tears  (29:25)(208:10)
technically  (202:25)
teens  (165:16)
tell  (10:25)(11:18)
(14:7)(16:1)(16:16)(18:5)
(19:9)(23:10)(24:1)(25:4)
(28:11)(28:19)(37:14)
(42:6)(46:20)(48:1)(48:2)
(48:8)(59:12)(59:20)
(59:25)(60:1)(60:6)
(60:18)(61:11)(64:10)
(65:10)(69:22)(72:18)
(76:5)(76:8)(77:16)
(77:22)(86:6)(107:25)
(112:9)(116:10)(116:17)
(118:1)(125:24)(128:13)

(133:14)(140:14)(145:25)
(148:25)(155:3)(159:5)
(195:19)(198:11)(199:11)
(200:1)(200:3)(200:6)
(200:22)(204:16)(214:19)
(214:25)(215:6)(215:10)
(216:1)(219:1)(221:12)
(224:17)(228:8)(228:18)
(229:16)(242:13)(242:16)
(243:14)(246:3)
telling  (47:6)(150:6)
(170:21)(172:20)(172:22)
(196:7)(225:9)(228:24)
(243:1)
tells  (18:6)(20:4)(20:5)
(47:23)(69:25)(146:8)
(211:2)(211:3)(215:16)
(229:5)(235:12)
ten  (52:12)(145:22)
tend  (147:13)
tending  (191:15)
term  (115:25)(160:13)
(254:18)
termed  (80:5)
terminology  (173:4)
terms  (23:15)(37:10)
(44:1)(115:13)(116:21)
(128:14)(146:19)(147:13)
(147:24)(157:14)(160:5)
(221:2)(230:18)
territory  (107:1)
test  (23:23)(196:11)
testified  (6:6)(13:25)
(106:7)(179:13)(182:20)
(186:7)(189:25)(197:19)
testify  (21:22)(21:24)
(22:7)(23:19)(24:14)
(69:9)(212:19)(213:1)
(213:9)
testifying  (22:22)
testimony  (122:20)
(166:14)(240:6)
texas  (1:5)(1:7)(1:22)
(2:8)(2:9)(2:10)(2:14)
(2:18)(2:23)(9:23)(25:2)
(25:4)(31:16)(43:12)
(51:3)(51:8)(60:11)(63:2)
(63:3)(64:21)(77:18)
(86:7)(86:13)(87:22)
(101:18)(129:9)(132:6)
(165:12)(179:9)(181:20)
(185:7)(188:24)(193:22)
(200:24)(201:19)(202:8)
(205:5)(226:13)(228:20)
(244:11)(260:2)(260:6)
(260:21)(261:19)
than  (11:8)(11:11)
(17:16)(29:25)(37:24)
(38:2)(39:9)(42:21)(58:5)
(80:2)(88:13)(97:17)
(97:20)(103:17)(115:4)
(115:14)(121:23)(124:21)
(131:4)(132:24)(133:3)
(133:25)(135:12)(135:17)
(136:21)(137:19)(140:22)
(144:22)(150:24)(152:11)
(155:12)(156:14)(159:16)
(160:6)(160:8)(160:9)
(160:13)(160:17)(162:20)
(172:2)(176:11)(195:19)
(201:18)(208:10)(212:9)
(216:2)(222:4)(222:25)
(228:15)(245:14)(256:13)
thank  (5:9)(5:10)(6:4)
(6:12)(7:19)(7:22)(7:24)
(8:5)(8:7)(8:11)(8:15)
(8:16)(8:19)(9:16)(9:17)

thanks                                                                                                these      289

(9:18)(13:22)(14:6)(14:7)
(57:12)(57:14)(57:16)
(57:18)(93:1)(93:5)
(93:12)(93:14)(96:12)
(100:13)(100:14)(101:4)
(101:16)(106:5)(106:24)
(152:25)(153:2)(153:8)
(153:22)(154:8)(163:8)
(172:18)(174:2)(174:4)
(174:5)(174:13)(174:15)
(177:24)(177:25)(178:4)
(178:14)(178:17)(179:4)
(179:11)(180:8)(180:11)
(180:14)(180:15)(182:1)
(182:16)(182:18)(183:12)
(183:20)(183:22)(183:24)
(183:25)(184:2)(184:9)
(184:19)(184:22)(184:23)
(186:5)(186:24)(187:15)
(187:17)(187:18)(187:19)
(187:23)(188:4)(188:16)
(189:23)(191:23)(192:2)
(192:3)(192:6)(192:7)
(193:10)(193:12)(193:25)
(197:16)(197:23)(238:12)
(238:15)(239:4)(239:7)
(250:12)(257:11)(257:19)
(258:22)(259:1)(259:8)
(259:10)(259:12)
**thanks** (259:9)
**that there's** (148:18)
**that's** (6:24)(7:18)
(10:23)(13:7)(15:5)(16:1)
(17:7)(17:18)(17:25)
(18:1)(18:6)(21:2)(21:17)
(21:22)(22:16)(23:8)
(23:13)(24:10)(25:5)
(25:13)(26:5)(26:6)
(26:22)(27:2)(27:13)
(29:9)(31:2)(31:3)(31:22)
(32:10)(32:12)(33:15)
(34:3)(34:4)(36:6)(37:24)
(38:3)(38:8)(39:18)
(40:25)(41:3)(42:19)
(46:11)(47:14)(50:4)
(50:7)(50:23)(51:2)
(51:20)(52:11)(52:13)
(52:14)(52:16)(53:7)
(53:13)(55:3)(55:4)(55:5)
(58:12)(59:4)(60:11)
(62:5)(62:6)(62:7)(63:4)
(64:3)(64:7)(66:10)
(66:21)(67:8)(73:25)
(74:16)(75:23)(77:16)
(81:19)(82:12)(82:19)
(84:20)(87:2)(87:6)
(87:17)(88:5)(89:15)
(91:5)(92:10)(92:19)
(93:3)(94:18)(102:1)
(102:3)(102:24)(103:1)
(103:10)(103:12)(104:8)
(104:14)(105:13)(108:3)
(108:16)(110:1)(110:4)
(113:17)(115:19)(116:21)
(120:3)(120:4)(125:25)
(128:11)(130:23)(130:24)
(131:25)(133:23)(134:7)
(136:20)(138:25)(140:14)
(140:17)(140:20)(141:17)
(142:3)(142:10)(142:11)
(142:25)(143:7)(143:14)
(146:8)(147:20)(147:25)
(148:9)(148:18)(150:9)
(151:19)(156:5)(156:6)
(156:17)(156:18)(159:12)
(159:18)(160:7)(161:2)
(165:5)(165:20)(167:4)

(167:5)(168:10)(171:1)
(172:3)(172:14)(172:17)
(173:10)(173:23)(174:2)
(180:5)(181:25)(183:7)
(183:9)(183:11)(185:13)
(187:15)(189:19)(191:19)
(194:10)(195:8)(200:18)
(201:6)(201:9)(201:10)
(201:11)(202:21)(205:9)
(205:10)(205:25)(207:6)
(209:18)(211:16)(212:10)
(215:21)(218:21)(221:7)
(221:20)(224:11)(225:3)
(225:25)(226:3)(226:7)
(228:6)(231:2)(232:10)
(233:8)(234:19)(237:1)
(238:10)(239:3)(241:10)
(241:14)(241:22)(242:4)
(242:10)(242:23)(245:24)
(246:8)(246:20)(246:25)
(248:1)(248:2)(248:10)
(249:16)(249:18)(250:2)
(250:24)(251:19)(252:9)
(252:10)(253:14)(253:15)
(256:20)
**the -- you** (104:23)
**the word** (255:10)
**theft** (210:17)
**their** (10:12)(14:15)
(14:25)(18:13)(18:15)
(23:16)(54:18)(57:25)
(62:2)(63:4)(63:5)(69:4)
(71:25)(87:2)(90:3)(95:4)
(102:11)(106:2)(107:13)
(122:2)(129:2)(129:14)
(133:19)(134:20)(135:7)
(137:8)(144:2)(149:3)
(150:2)(159:8)(159:14)
(168:18)(172:25)(187:7)
(194:20)(198:7)(199:5)
(200:9)(200:12)(200:15)
(200:17)(216:15)(230:22)
(232:25)(235:23)(236:5)
(236:6)(243:13)(245:16)
(245:24)(246:14)(248:22)
(261:9)
**them** (11:19)(12:7)(21:2)
(23:19)(29:16)(62:3)
(62:15)(64:11)(74:9)
(76:10)(78:4)(81:20)
(89:4)(91:18)(107:14)
(108:5)(115:16)(117:4)
(122:2)(130:3)(131:17)
(137:8)(138:18)(141:9)
(148:11)(149:23)(162:19)
(165:18)(166:17)(175:11)
(198:8)(198:22)(201:3)
(213:19)(214:21)(215:23)
(216:14)(216:15)(217:23)
(221:16)(235:17)(240:2)
(241:23)(242:3)(243:11)
(245:10)(248:23)(253:6)
(255:25)
**themselves** (118:20)
(148:2)
**then** (6:3)(11:16)(11:22)
(12:8)(12:24)(13:9)
(13:13)(14:10)(15:2)
(15:24)(19:9)(19:16)
(20:12)(23:9)(23:12)
(24:11)(25:12)(28:3)
(28:9)(32:6)(36:8)(36:24)
(42:11)(42:13)(42:17)
(42:21)(43:1)(44:22)
(46:5)(46:20)(47:14)
(50:8)(50:25)(51:2)
(53:14)(55:6)(55:13)

(59:16)(59:17)(64:9)
(64:12)(66:25)(68:14)
(68:19)(69:19)(71:25)
(72:8)(74:10)(80:22)
(82:6)(84:20)(86:12)
(90:17)(90:21)(92:23)
(92:24)(93:9)(96:22)
(96:23)(96:24)(97:25)
(99:16)(99:24)(103:18)
(104:10)(104:20)(105:8)
(105:17)(105:24)(108:15)
(113:14)(114:6)(115:1)
(123:7)(128:22)(134:1)
(134:20)(135:2)(135:15)
(137:21)(139:18)(140:6)
(140:25)(142:1)(142:18)
(143:1)(147:20)(147:22)
(149:14)(151:17)(151:23)
(152:18)(153:14)(158:19)
(167:4)(169:18)(172:13)
(173:23)(174:9)(175:7)
(175:8)(175:12)(177:13)
(188:7)(190:24)(195:11)
(195:22)(195:24)(196:22)
(196:23)(198:9)(198:15)
(200:14)(201:8)(202:6)
(203:14)(203:19)(204:23)
(205:6)(214:25)(216:15)
(217:23)(219:14)(225:1)
(226:3)(226:11)(226:20)
(227:11)(230:1)(230:7)
(231:19)(233:16)(237:15)
(242:1)(242:5)(244:2)
(244:6)(244:21)(246:2)
(246:20)(246:25)(249:13)
(251:5)(252:8)(252:17)
(253:22)(256:2)(256:18)
(256:19)(256:24)(257:8)
**theoretically** (67:16)
**theory** (78:5)(83:13)
**there** (5:8)(9:17)(11:16)
(13:13)(15:22)(16:12)
(16:17)(16:22)(17:5)
(17:13)(17:15)(17:22)
(19:22)(21:9)(26:4)
(26:23)(26:24)(27:12)
(28:7)(29:11)(29:23)
(31:14)(31:15)(37:18)
(39:2)(39:3)(39:19)(42:2)
(44:9)(47:1)(47:12)
(47:19)(48:8)(48:19)
(49:8)(49:23)(49:24)
(50:24)(51:12)(54:11)
(59:20)(61:15)(67:18)
(71:13)(71:16)(75:1)
(76:3)(76:5)(76:8)(77:22)
(80:18)(82:9)(83:5)(83:7)
(83:9)(84:7)(84:23)
(86:14)(94:5)(96:10)
(98:9)(99:13)(99:22)
(101:4)(101:5)(102:6)
(105:21)(107:1)(108:19)
(108:20)(109:13)(109:17)
(110:18)(111:19)(115:5)
(116:5)(118:8)(120:1)
(120:2)(120:7)(120:9)
(122:21)(123:7)(123:14)
(123:18)(123:19)(123:25)
(124:1)(125:20)(127:20)
(128:8)(129:2)(129:4)
(129:10)(129:16)(129:17)
(129:18)(130:2)(130:19)
(130:25)(133:4)(133:16)
(133:17)(133:18)(133:19)
(134:23)(134:25)(137:12)
(137:24)(139:18)(139:24)
(141:2)(143:18)(145:1)

(145:7)(146:12)(146:17)
(146:25)(147:2)(147:17)
(147:25)(148:16)(149:4)
(149:13)(149:15)(150:1)
(150:2)(152:20)(153:21)
(154:4)(156:9)(156:11)
(156:12)(158:15)(158:20)
(158:21)(159:12)(159:25)
(163:22)(167:7)(169:15)
(171:23)(173:18)(173:21)
(175:1)(176:3)(177:12)
(178:4)(178:16)(181:18)
(184:21)(193:9)(197:10)
(198:25)(199:20)(201:7)
(204:5)(207:2)(208:10)
(210:15)(212:3)(212:9)
(213:18)(214:25)(215:8)
(216:2)(216:3)(217:21)
(218:11)(219:3)(219:10)
(219:17)(221:2)(223:11)
(223:12)(223:14)(223:16)
(225:15)(226:1)(227:1)
(228:6)(228:7)(228:13)
(228:24)(229:4)(229:10)
(229:14)(232:1)(233:2)
(233:8)(234:3)(234:7)
(234:16)(238:8)(238:25)
(239:1)(240:15)(241:3)
(241:7)(254:7)(255:14)
(256:2)(256:10)(256:24)
(257:2)(257:3)
**there's** (12:4)(26:16)
(28:25)(33:23)(35:24)
(39:4)(44:8)(44:16)
(47:11)(47:22)(50:3)
(53:17)(54:20)(67:9)
(67:14)(77:9)(85:17)
(85:19)(85:21)(86:16)
(88:13)(88:23)(92:23)
(105:12)(106:25)(109:15)
(110:16)(112:19)(114:16)
(116:15)(117:1)(117:9)
(118:19)(123:9)(123:10)
(123:13)(124:16)(126:12)
(126:16)(128:6)(128:16)
(133:13)(133:14)(133:16)
(133:17)(134:22)(134:23)
(134:25)(135:1)(137:21)
(138:10)(138:17)(141:12)
(141:25)(143:11)(143:15)
(143:23)(146:11)(146:25)
(147:1)(147:6)(147:7)
(147:22)(148:12)(151:22)
(156:10)(160:10)(161:7)
(166:13)(167:1)(169:10)
(171:19)(172:1)(175:19)
(196:7)(197:1)(201:22)
(204:5)(206:1)(206:17)
(208:5)(211:10)(211:11)
(211:17)(212:8)(216:7)
(221:23)(223:14)(224:5)
(225:14)(228:5)(236:6)
(238:5)(238:9)(255:22)
(256:5)(256:11)(256:17)
**these** (12:5)(13:4)
(13:16)(14:10)(31:2)
(37:9)(37:10)(37:11)
(59:21)(60:1)(61:25)
(62:24)(71:22)(72:4)
(72:11)(72:16)(90:19)
(90:24)(92:3)(95:20)
(105:11)(105:14)(105:25)
(121:6)(122:18)(126:16)
(130:2)(141:11)(147:18)
(154:15)(157:7)(157:12)
(157:25)(158:6)(158:7)
(161:25)(165:9)(169:23)

they                                                                                                    times    290

they    (11:19)(11:20)
(13:17)(14:18)(15:1)
(17:23)(19:17)(19:18)
(20:20)(20:21)(21:6)
(21:10)(21:11)(23:21)
(23:22)(23:24)(24:21)
(27:17)(27:19)(29:2)
(37:8)(37:9)(38:7)(39:3)
(41:9)(42:9)(53:3)(62:4)
(62:5)(62:16)(62:25)
(63:6)(65:2)(65:4)(65:11)
(65:13)(66:5)(66:12)
(66:25)(67:17)(71:17)
(71:22)(71:25)(72:15)
(76:19)(77:14)(77:19)
(81:14)(81:18)(86:18)
(87:13)(87:24)(88:1)
(88:3)(88:4)(88:18)
(89:18)(90:1)(90:7)
(90:19)(90:22)(90:23)
(91:14)(91:25)(92:24)
(94:25)(95:11)(95:20)
(105:24)(108:9)(109:18)
(114:9)(116:16)(116:23)
(117:22)(118:25)(119:1)
(123:1)(125:24)(126:5)
(126:17)(128:17)(128:18)
(128:23)(129:2)(129:5)
(129:18)(131:10)(131:11)
(131:15)(132:11)(132:14)
(134:20)(136:6)(138:1)
(138:2)(138:18)(138:19)
(141:6)(144:6)(146:14)
(147:2)(148:2)(148:5)
(148:13)(149:10)(150:13)
(154:4)(158:11)(161:6)
(161:17)(163:11)(164:1)
(165:17)(166:2)(166:17)
(167:21)(168:8)(168:18)
(169:9)(169:11)(169:17)
(183:17)(185:24)(186:15)
(190:22)(197:9)(198:20)
(200:11)(200:13)(200:16)
(201:21)(202:17)(203:19)
(205:24)(208:5)(209:9)
(212:9)(213:7)(213:8)
(216:7)(216:8)(216:9)
(216:13)(216:14)(218:14)
(218:15)(221:1)(223:11)
(223:14)(225:5)(230:22)
(231:6)(232:14)(235:14)
(235:18)(236:6)(236:15)
(238:7)(239:15)(240:14)
(240:17)(240:19)(242:13)
(242:16)(243:12)(245:5)
(245:6)(245:15)(245:23)
(249:11)(249:12)
they'd   (41:12)(76:19)
they'll    (176:11)
they're    (11:8)(11:16)
(11:23)(13:6)(15:3)(22:5)
(23:21)(30:17)(33:10)
(33:11)(41:3)(43:16)
(49:25)(56:16)(56:22)
(59:23)(62:1)(62:20)
(63:3)(65:15)(71:16)
(76:20)(77:13)(88:15)
(103:18)(104:8)(104:16)
(104:19)(104:21)(105:15)
(107:1)(117:1)(118:17)
(118:18)(118:19)(118:25)
(129:7)(131:13)(134:19)
(140:21)(146:14)(148:1)
(148:9)(148:10)(157:15)

(159:11)(166:4)(166:5)
(167:2)(172:25)(195:24)
(195:25)(196:6)(197:4)
(197:8)(198:25)(199:3)
(209:8)(213:19)(216:4)
(226:2)(231:5)(236:7)
(240:10)(241:11)(241:12)
(242:15)(242:16)
they've   (14:25)(52:1)
(62:1)(62:2)(67:15)
(67:25)(69:5)(69:6)
(92:20)(124:24)(129:19)
(199:4)(201:4)
thing    (17:4)(18:6)(20:1)
(31:11)(32:24)(47:23)
(62:16)(63:18)(65:16)
(66:4)(66:8)(66:9)(66:10)
(71:23)(98:11)(100:9)
(103:14)(115:21)(120:5)
(128:11)(134:18)(135:24)
(137:12)(139:17)(141:15)
(154:24)(155:25)(157:1)
(173:5)(173:8)(176:20)
(201:2)(201:25)(210:23)
(215:24)(219:20)(219:21)
(219:25)(220:1)(225:22)
(225:25)(229:6)(229:13)
(237:7)(237:8)(239:23)
(241:20)(246:8)
things    (22:14)(24:21)
(34:1)(35:6)(35:8)(40:10)
(40:16)(49:8)(49:13)
(65:11)(65:13)(71:16)
(82:13)(89:4)(89:6)(94:7)
(94:10)(94:17)(94:22)
(96:16)(97:6)(100:7)
(102:22)(115:5)(117:10)
(117:11)(119:1)(120:9)
(124:21)(124:23)(125:6)
(128:8)(129:20)(130:10)
(130:11)(138:11)(138:13)
(139:15)(141:4)(141:19)
(141:21)(142:17)(144:10)
(147:13)(149:4)(164:22)
(165:9)(165:22)(169:17)
(169:23)(172:6)(172:13)
(173:5)(175:19)(199:15)
(200:23)(201:7)(220:5)
(223:25)(230:15)(233:7)
(243:18)
think    (5:24)(14:23)
(15:13)(15:22)(16:11)
(17:2)(17:13)(17:18)
(17:21)(18:1)(18:13)
(18:16)(18:25)(22:25)
(25:1)(25:13)(27:14)
(28:23)(33:1)(36:2)(36:6)
(36:24)(38:12)(39:17)
(39:18)(39:21)(40:8)
(40:15)(40:22)(40:25)
(41:17)(43:14)(44:10)
(45:5)(45:8)(46:10)
(46:14)(48:11)(48:18)
(49:21)(50:3)(50:14)
(52:14)(54:2)(54:6)
(54:14)(54:16)(56:5)
(65:13)(65:17)(65:20)
(65:22)(66:11)(66:13)
(70:11)(71:15)(76:8)
(76:18)(77:8)(79:10)
(80:21)(81:3)(81:8)
(83:10)(84:6)(86:25)
(87:4)(87:8)(88:16)
(88:24)(91:3)(96:19)
(97:16)(97:21)(98:4)
(103:11)(112:17)(113:1)
(114:22)(115:3)(115:4)

(115:12)(115:14)(115:17)
(115:20)(115:22)(116:21)
(116:25)(117:1)(117:3)
(119:6)(119:23)(120:11)
(121:9)(121:19)(121:22)
(121:24)(122:1)(123:13)
(123:25)(124:1)(124:22)
(128:6)(129:22)(130:8)
(130:16)(130:22)(130:23)
(130:24)(130:25)(131:25)
(132:7)(132:17)(132:24)
(133:3)(133:8)(133:9)
(134:7)(134:13)(134:14)
(134:25)(135:1)(135:4)
(135:6)(135:22)(135:23)
(136:13)(136:18)(136:19)
(137:1)(137:7)(137:10)
(137:14)(137:16)(137:17)
(138:18)(139:8)(139:11)
(139:23)(141:2)(141:21)
(141:25)(146:2)(146:3)
(146:12)(146:13)(146:23)
(146:25)(147:6)(147:7)
(147:13)(147:25)(148:12)
(148:16)(148:18)(148:19)
(148:20)(150:9)(150:14)
(154:19)(154:25)(155:25)
(157:9)(158:20)(158:22)
(160:5)(162:6)(162:8)
(162:22)(165:20)(165:21)
(165:25)(166:20)(166:22)
(166:23)(167:13)(167:21)
(168:1)(168:4)(168:9)
(168:10)(171:8)(171:22)
(172:8)(172:19)(173:22)
(174:2)(175:25)(176:11)
(180:5)(185:14)(185:17)
(189:9)(192:19)(199:11)
(202:7)(202:21)(203:17)
(204:3)(207:14)(211:12)
(211:18)(211:23)(215:6)
(216:1)(216:3)(216:18)
(218:19)(218:20)(218:21)
(220:16)(222:17)(222:20)
(223:25)(225:14)(227:6)
(229:20)(229:21)(229:23)
(231:5)(231:8)(231:9)
(231:17)(231:19)(231:20)
(231:25)(232:9)(232:13)
(232:20)(232:21)(232:23)
(233:2)(233:4)(233:7)
(234:22)(236:21)(238:9)
(240:9)(241:14)(241:15)
(241:17)(244:3)(244:7)
(247:21)(248:2)(249:16)
(255:22)(256:11)(256:12)
(258:10)
thinker    (215:19)(237:11)
thinking    (58:12)(104:22)
(104:25)(112:14)(113:4)
(115:7)(130:14)(134:21)
(141:20)(143:12)(143:14)
(146:2)(216:8)(235:7)
thinks    (28:20)(139:19)
(160:11)(206:23)
third    (7:14)(47:3)(77:9)
(129:15)
those    (15:5)(20:13)
(22:12)(27:10)(33:8)
(33:12)(35:8)(57:24)
(65:3)(65:4)(65:9)(65:11)
(65:12)(70:5)(75:12)
(75:15)(77:7)(88:24)
(89:3)(89:6)(94:10)
(94:17)(94:22)(96:23)
(97:24)(98:3)(98:9)
(99:17)(99:18)(100:6)

(107:2)(110:25)(116:23)
(122:19)(122:20)(131:22)
(150:3)(151:4)(155:15)
(175:7)(176:5)(176:13)
(209:24)(212:16)(218:22)
(218:25)(219:7)(232:2)
(248:18)(251:3)(252:3)
(252:6)(252:15)
though    (25:20)(31:4)
(45:15)(47:20)(47:21)
(77:12)(83:21)(121:22)
(127:14)(150:9)(154:17)
(157:6)(202:24)(203:17)
(208:21)(209:23)(221:24)
(228:5)(229:5)(231:25)
(232:16)(236:14)
thought    (49:2)(92:4)
(116:6)(122:10)(124:4)
(128:4)(235:22)
thoughtful    (32:20)
thoughts    (11:24)(75:18)
(103:20)(149:8)(196:1)
threat    (36:1)(38:16)
(39:10)(40:23)(75:21)
(92:21)(160:2)(160:23)
(221:7)(223:2)(233:1)
(256:3)
threaten    (81:17)
threats    (38:6)
three    (13:5)(13:16)
(33:7)(33:12)(44:23)
(48:19)(76:8)(102:6)
(105:11)(105:14)(110:19)
(176:12)(197:9)(202:20)
(225:20)(227:2)
three-fourths    (247:17)
threshold    (164:25)(215:7)
through    (15:10)(33:12)
(37:12)(68:20)(89:6)
(95:14)(98:5)(98:7)
(103:7)(114:6)(117:11)
(119:18)(149:4)(163:1)
(176:3)(199:10)(248:18)
(252:3)(252:5)(258:23)
throughout    (235:22)
(243:19)
tied    (47:18)
till    (42:1)(44:22)(57:8)
time    (8:6)(10:17)(11:16)
(14:7)(17:24)(19:23)
(23:7)(26:13)(43:16)
(62:23)(63:1)(63:5)
(67:24)(68:5)(68:11)
(72:19)(73:1)(80:20)
(87:24)(93:12)(97:21)
(100:15)(101:17)(102:10)
(102:18)(104:11)(105:1)
(106:15)(108:20)(109:16)
(110:6)(110:8)(111:20)
(112:11)(112:25)(113:21)
(115:7)(115:13)(118:21)
(118:22)(124:11)(124:23)
(129:11)(130:12)(130:21)
(130:25)(131:17)(131:18)
(141:10)(142:5)(145:7)
(145:19)(145:20)(160:11)
(175:7)(182:3)(183:14)
(183:23)(187:2)(189:22)
(192:7)(193:25)(194:15)
(194:18)(194:25)(197:25)
(198:8)(203:8)(233:21)
(234:20)(240:16)(240:18)
(241:13)(242:11)(257:6)
times    (18:17)(44:23)
(51:19)(109:11)(125:17)
(147:18)(147:20)(156:11)
(202:20)(227:2)

to -- i  (81:12)
today  (8:6)(10:2)(10:4)(13:7)(18:9)(19:24)(102:2)(102:3)(103:15)(105:14)(110:25)(175:16)(178:13)(180:3)(183:10)(183:11)(185:13)(186:2)(186:22)(189:4)(190:15)(192:5)(194:4)(194:10)(197:22)(210:19)(240:23)(258:23)
toe  (64:1)
together  (43:16)(61:23)(126:2)(226:19)(228:9)
told  (41:13)(50:21)(60:7)(61:24)(69:21)(78:7)(81:24)(86:5)(88:25)(89:21)(91:4)(121:1)(146:18)(159:23)(165:13)(166:13)(243:11)(247:1)(253:6)
tonight  (44:5)(226:17)
too  (12:22)(17:12)(22:12)(23:17)(23:21)(33:24)(118:5)(118:22)(119:22)(120:1)(130:3)(133:12)(148:17)(149:16)(149:18)(149:20)(167:17)(194:10)(201:19)(223:15)
took  (10:17)(45:11)(64:10)(64:12)(66:23)(74:18)(102:18)(158:12)(194:25)(245:23)
tool  (147:16)
tooth  (64:4)
top  (61:10)(108:15)(108:17)(155:24)(202:7)(247:1)
total  (124:21)(125:1)(135:23)
totality  (167:2)
totally  (78:8)(208:22)
touch  (109:3)(126:9)
touched  (126:24)(167:21)(240:20)
tough  (52:13)
toward  (80:19)(82:6)(191:15)
towards  (95:19)(133:25)(149:16)
traffic  (44:9)
training  (216:7)
transcription  (1:25)(260:8)(260:13)
translates  (62:24)
trial  (11:6)(12:1)(13:1)(21:24)(31:17)(31:19)(32:11)(32:12)(32:13)(32:14)(32:25)(33:20)(33:24)(34:8)(59:17)(62:1)(64:18)(69:1)(71:7)(83:17)(91:6)(99:14)(99:21)(99:22)(103:25)(107:19)(115:15)(146:6)(150:8)(157:5)(162:16)(192:14)(200:25)(201:1)(205:6)(219:5)(219:7)(219:19)(242:18)(253:16)
trials  (31:18)(103:13)(200:25)
trick  (151:1)(151:16)
trickier  (138:21)
tricky  (120:5)(160:7)(165:20)
tries  (229:25)
triggerman  (46:3)(46:11)(226:15)(227:12)(227:23)

true  (17:25)(18:15)(23:1)(24:12)(27:13)(41:11)(41:22)(46:11)(46:14)(55:9)(70:1)(88:5)(90:4)(140:20)(168:10)(216:20)(260:7)
truly  (140:5)(260:14)
truth  (69:22)(121:1)(123:14)(216:2)
truthful  (10:21)(102:23)(195:6)
try  (23:13)(43:10)(58:4)(83:11)(97:16)(97:21)(99:6)(107:23)(109:16)(142:9)(154:24)(176:11)(176:16)(177:7)
trying  (11:15)(75:11)(79:8)(79:18)(81:2)(81:7)(84:16)(84:25)(124:15)(143:8)(155:20)(161:20)(164:5)(195:25)(217:23)(225:5)(239:20)(249:18)
turn  (24:24)(25:11)(47:13)(47:24)(48:2)(49:7)(50:9)(54:22)(104:20)(125:13)(179:8)(202:19)(229:8)(232:9)(232:17)(233:3)(238:10)
turned  (145:9)
twenty  (204:9)
two  (26:13)(28:25)(31:18)(33:25)(43:15)(70:5)(77:7)(97:6)(97:16)(97:24)(98:3)(100:7)(102:22)(105:13)(107:23)(108:6)(111:3)(126:3)(126:16)(128:16)(167:7)(167:8)(173:10)(176:2)(176:12)(197:1)(200:25)(203:7)(204:9)(204:10)(204:11)(220:5)(229:25)(240:7)(241:25)
two-thirds  (247:17)
two-week  (176:6)(240:16)(241:13)
type  (76:23)(77:1)(187:11)(243:10)(246:15)(248:16)(249:1)(249:23)
types  (246:2)

**U**

ugliest  (147:24)
uh-huh  (6:16)(10:8)(24:19)(36:10)(41:2)(42:25)(61:2)(84:9)(84:19)(92:22)(102:8)(104:3)(112:12)(112:24)(113:7)(114:13)(116:7)(117:5)(122:23)(123:11)(124:3)(124:7)(124:10)(125:15)(126:3)(126:7)(128:9)(129:8)(133:6)(135:8)(135:14)(135:19)(137:20)(138:6)(139:2)(139:10)(140:9)(140:23)(143:3)(145:3)(146:7)(146:10)(147:23)(148:4)(148:7)(148:25)(149:6)(149:21)(149:24)(155:14)(156:21)(157:13)(158:18)(165:15)(166:15)(166:19)(167:9)(167:12)(167:23)(168:16)(171:16)(179:1)(179:21)(185:23)(187:8)(190:7)(190:10)(190:14)(191:9)(191:11)(193:15)(194:12)(194:17)(196:2)

(196:10)(197:12)(198:1)(198:19)(199:17)(199:21)(201:16)(202:12)(202:23)(203:21)(204:25)(205:13)(206:16)(207:12)(209:2)(209:4)(209:10)(209:16)(210:7)(211:21)(212:13)(212:20)(215:20)(216:6)(217:5)(217:12)(217:18)(218:2)(218:10)(218:23)(219:4)(219:16)(219:23)(220:6)(221:9)(222:6)(223:13)(223:21)(224:24)(225:23)(226:6)(227:13)(227:18)(229:9)(230:6)(231:13)(232:5)(235:8)(236:9)(240:1)(240:8)(241:5)(241:14)(242:12)(242:19)(242:22)(243:6)(243:17)(243:24)(245:1)(245:8)(245:18)(246:10)(246:18)(246:24)(247:4)(247:24)(248:1)(248:14)(248:24)(249:21)(252:16)(253:18)(253:20)(253:24)(254:15)
uh-huhs  (12:21)
ultimately  (15:11)(107:17)(124:18)(128:15)(199:18)(200:15)
uncommon  (65:9)(66:8)(66:9)
under  (10:20)(14:16)(26:12)(29:3)(52:21)(63:6)(74:11)(95:2)(102:21)(114:5)(166:1)(179:24)(186:20)(187:9)(188:1)(195:3)(198:22)(203:6)(207:14)(243:12)(246:9)(260:16)
understand  (11:18)(11:22)(12:7)(12:12)(14:21)(20:13)(20:15)(21:2)(21:21)(22:2)(23:12)(33:12)(36:17)(46:16)(46:17)(52:14)(54:24)(55:13)(59:15)(62:6)(62:7)(62:8)(62:16)(62:18)(62:19)(65:7)(65:8)(65:11)(65:16)(67:4)(69:2)(69:11)(70:3)(71:14)(71:19)(76:7)(78:23)(80:24)(83:23)(85:6)(85:23)(85:24)(99:11)(103:18)(134:4)(134:9)(155:8)(156:19)(157:14)(172:15)(191:1)(195:22)(206:4)(229:14)(234:4)(236:11)(242:11)(250:13)(250:24)(252:5)(253:9)(253:19)(255:6)
understanding  (53:13)(120:16)
understood  (64:20)(82:19)
unfortunate  (89:15)(89:16)(136:14)
unfortunately  (168:17)
unit  (117:14)
united  (95:3)
universal  (108:23)
unless  (38:22)(87:23)(90:24)(162:14)(165:12)
unlikely  (127:15)
unprovoked  (202:20)
until  (16:21)(20:9)(24:21)(30:6)(33:22)(69:17)(79:6)(129:2)

(161:17)(163:21)(208:16)(211:16)(219:24)(220:11)(251:8)
upbringing  (49:15)(49:18)(49:25)(50:5)(85:5)(89:8)(247:19)
upon  (18:18)(20:24)(27:24)(31:5)(31:19)(32:6)(68:5)(68:10)(70:11)(72:6)(72:21)(76:12)(94:1)(94:8)(131:17)(201:1)(204:22)(205:6)(205:11)(206:20)(232:4)(248:25)
upstairs  (101:22)(189:4)(194:4)
use  (21:25)(22:7)(22:18)(23:9)(89:13)(108:10)(111:2)(111:3)(123:23)(211:13)(213:1)(213:9)(246:7)(246:8)
used  (87:8)(89 14)(118:16)(142:7)(254:19)
uses  (86:17)(86:18)
using  (244:16)
utopia  (147:7)
utter  (114:22)

**V**

valid  (152:2)
value  (150:23)
various  (243:18)(248:17)
vault  (74:10)
veer  (139:22)
vending  (239:14)
venireperson  (3:1)(3:4)(3:6)(3:9)(3:11)(3:13)(3:16)(3:18)(3:21)(3:23)(4:1)(4:3)(5:5)(5:9)(5:14)(5:17)(5:19)(6:6)(8:1)(8:4)(8:7)(8:10)(8:12)(8:15)(8:18)(9:11)(9:14)(9:21)(10:5)(10:8)(10:15)(10:18)(10:24)(11:3)(11:13)(11:21)(12:3)(12:13)(12:16)(12:20)(12:23)(13:15)(13:19)(13:25)(43:4)(58:19)(58:21)(58:23)(59:1)(82:25)(93:11)(93:13)(96:8)(96:21)(97:4)(97:10)(97:14)(97:19)(97:23)(98:2)(98:6)(98:10)(98:14)(98:17)(98:21)(98:24)(99:2)(99:8)(99:11)(99:15)(99:19)(99:23)(100:2)(100:5)(100:11)(100:13)(100:16)(100:18)(101:1)(101:7)(101:10)(101:14)(101:24)(102:8)(102:14)(102:16)(102:19)(103:3)(103:7)(103:22)(104:1)(104:3)(104:6)(104:9)(104:12)(104:18)(105:2)(105:6)(105:23)(106:7)(106:24)(107:5)(153:12)(153:19)(153:25)(154:3)(160:21)(174:10)(174:12)(174:14)(174:25)(175:4)(175:10)(175:14)(175:18)(175:23)(176:9)(176:15)(176:19)(176:23)(177:2)(177:5)(177:10)(177:17)(178:1)(178:5)(178:11)(178:14)(178:22)(178:24)(179:1)(179:3)

**verdict**                                                          **were**    292

(179:6) (179:13) (180:14)
(180:17) (181:13) (181:16)
(181:25) (182:6) (182:9)
(182:12) (182:15) (182:20)
(183:16) (183:19) (183:21)
(183:24) (184:1) (184:16)
(184:19) (185:1) (185:4)
(185:8) (185:12) (185:16)
(185:20) (185:23) (186:3)
(186:7) (187:5) (187:8)
(187:12) (187:20) (187:22)
(188:11) (188:14) (188:17)
(188:21) (189:2) (189:7)
(189:12) (189:17) (189:25)
(192:6) (192:8) (193:3)
(193:5) (193:7) (193:10)
(193:15) (193:17) (193:19)
(193:23) (194:8) (194:12)
(194:17) (194:23) (195:1)
(195:5) (195:10) (195:14)
(195:21) (196:2) (196:4)
(196:10) (196:14) (196:25)
(197:12) (197:19) (238:18)
(238:23) (239:2) (250:15)
(250:21) (250:23) (251:1)
(251:5) (251:8) (251:12)
(251:14) (251:22) (251:24)
(252:2) (252:7) (252:11)
(252:16) (252:20) (252:24)
(253:1) (253:4) (253:8)
(253:11) (253:18) (253:20)
(253:24) (254:3) (254:6)
(254:9) (254:12) (254:17)
(254:25) (255:3) (255:7)
(255:16) (255:20) (256:8)
(256:16) (256:22) (257:2)
(257:8) (257:17) (257:18)
(258:19) (258:24) (259:3)
(259:7)
**verdict**   (7:3) (7:9)
(14:17) (15:18) (16:7)
(16:19) (18:21) (19:5)
(20:6) (20:13) (22:18)
(30:23) (31:25) (32:8)
(32:9) (32:17) (32:22)
(50:9) (53:22) (55:20)
(61:18) (62:2) (65:7) (67:1)
(69:17) (70:1) (71:25)
(72:2) (83:13) (90:8)
(95:21) (123:5) (124:18)
(139:12) (152:7) (152:22)
(172:3) (179:25) (186:21)
(188:2) (190:12) (190:18)
(198:24) (199:19) (200:9)
(200:12) (200:16) (200:17)
(201:15) (203:14) (204:13)
(205:16) (205:21) (210:4)
(214:11) (214:13) (217:24)
(218:3) (218:24) (219:15)
(232:9) (232:17) (233:3)
**verdicts**   (19:2) (237:22)
**versa**   (150:20)
**versus**   (1:6) (17:4)
(27:23) (35:10) (47:24)
(54:18) (132:21) (136:5)
(150:12) (228:22) (230:21)
(230:24)
**very**   (5:24) (8:5) (10:19)
(12:24) (13:13) (13:20)
(19:18) (25:8) (33:10)
(46:4) (61:10) (100:12)
(100:17) (105:21) (106:1)
(108:6) (108:13) (114:7)
(115:23) (116:20) (117:3)
(124:5) (128:3) (128:13)
(128:21) (134:20) (137:22)
(142:1) (144:19) (144:22)

(154:17) (154:19) (170:3)
(171:12) (175:15) (177:24)
(178:4) (180:11) (181:4)
(182:1) (183:23) (185:18)
(187:18) (189:9) (192:4)
(195:2) (197:10) (202:7)
(203:3) (235:24) (238:12)
(243:9) (256:1)
**vezina**   (260:4) (260:19)
(261:17)
**vice**   (150:20)
**victim**   (248:21) (248:22)
**victim's**   (147:16) (149:15)
**views**   (244:22)
**violate**   (95:5)
**violation**   (95:2)
**violence**   (35:25) (36:4)
(38:3) (38:9) (38:13)
(39:10) (77:2) (77:3)
(80:19) (81:15) (82:10)
(92:4) (130:19) (130:22)
(133:5) (133:9) (133:25)
(134:17) (134:22) (134:23)
(152:12) (160:2) (161:8)
(221:7) (222:10) (222:14)
(222:21) (223:1) (224:5)
(256:6)
**violent**   (38:6) (41:9)
(41:10) (130:5) (134:13)
(134:19) (135:16) (135:17)
(136:20) (137:2) (137:8)
(137:12) (137:15) (138:4)
(138:8) (138:17) (138:19)
(159:14) (159:16) (159:19)
(159:20)
**visitors**   (39:5) (133:18)
(223:19)
**voir**   (1:12) (6:7) (14:1)
(57:20) (58:15) (87:5)
(103:1) (106:8) (154:9)
(176:1) (179:14) (182:21)
(186:8) (190:1) (197:15)
(197:20) (239:9)
**vol**   (3:4) (4:3)
**volume**   (1:2) (3:2) (4:2)
**volumes**   (1:2)
**voluntarily**   (246:11)
(246:16)
**voluntary**   (50:21) (51:19)
(68:8) (68:9) (86:8) (87:9)
(87:11) (87:15) (87:17)
(94:11) (168:25) (246:4)
**volunteer**   (207:24)
**volunteering**   (207:24)
**vote**   (33:3) (33:4) (249:24)
**voted**   (55:1)

---
**W**
---

**wait**   (19:8) (23:23) (42:1)
(44:16) (55:19) (56:11)
(56:19) (57:8) (95:16)
(129:2) (216:13) (216:23)
(220:19) (250:6)
**waited**   (219:13)
**waiting**   (160:12)
**waits**   (85:19)
**walk**   (33:12) (129:25)
**wallet**   (129:14)
**walls**   (75:22)
**want**   (12:6) (18:9) (19:16)
(33:12) (55:13) (58:4)
(59:20) (61:23) (71:4)
(75:7) (79:19) (80:12)
(80:14) (83:1) (83:11)
(86:6) (90:22) (90:24)
(99:1) (99:3) (99:16)
(99:17) (101:16) (104:19)

(107:2) (123:13) (124:8)
(129:25) (131:3) (138:22)
(143:15) (143:17) (143:20)
(145:24) (150:17) (153:11)
(155:3) (157:7) (159:4)
(159:5) (159:7) (159:13)
(171:13) (177:3) (177:6)
(189:15) (199:22) (211:12)
(214:22) (234:3) (250:8)
**wanted**   (60:17) (63:18)
(73:8) (73:25) (74:17)
(85:14) (90:1) (148:14)
(155:7) (157:1) (217:9)
(239:23) (258:22)
**wanting**   (11:24)
**wants**   (169:9)
**wardens**   (39:4)
**warrant**   (61:21) (118:4)
(228:14)
**warrants**   (63:15) (116:1)
**wary**   (18:13)
**was**   (15:21) (15:22)
(15:25) (18:10) (25:24)
(26:23) (26:24) (27:12)
(31:7) (31:8) (35:4) (45:11)
(45:12) (46:5) (46:11)
(50:5) (52:6) (54:25)
(59:10) (61:7) (61:14)
(62:3) (63:25) (67:25)
(68:1) (68:5) (68:8) (68:9)
(72:23) (79:3) (80:19)
(82:9) (85:13) (85:16)
(87:25) (88:14) (88:17)
(88:20) (90:8) (92:2)
(94:21) (97:6) (101:11)
(102:6) (106:14) (115:24)
(115:25) (116:4) (116:5)
(118:3) (122:21) (132:22)
(136:3) (136:19) (136:21)
(137:10) (138:24) (139:19)
(139:21) (140:10) (141:3)
(141:9) (141:18) (144:8)
(144:9) (144:10) (144:14)
(144:24) (145:1) (145:5)
(145:6) (145:7) (146:12)
(146:13) (149:13) (149:14)
(150:6) (150:10) (155:20)
(156:5) (156:12) (156:19)
(162:15) (164:8) (164:19)
(166:16) (167:10) (167:15)
(167:17) (169:15) (175:25)
(185:22) (202:25) (209:15)
(210:10) (214:5) (217:21)
(217:22) (219:10) (219:17)
(227:22) (227:23) (227:24)
(231:17) (232:3) (234:7)
(234:16) (234:22) (245:15)
(249:2) (250:10) (254:19)
(254:24) (256:1) (257:3)
**wasn't**   (26:4) (45:12)
(67:13) (74:2) (74:4)
(106:14) (116:9) (126:18)
(126:22) (126:23) (169:6)
(215:1) (217:7) (217:8)
(217:9) (217:10)
**wasted**   (183:15) (187:3)
**wasting**   (155:15)
**watch**   (39:3) (100:1)
(100:8) (120:21) (226:22)
**watches**   (208:11)
**water**   (2:17) (58:24)
(153:11) (153:12) (153:15)
(153:24) (154:1) (238:19)
(239:11)
**watkins**   (117:14) (117:23)
**way**   (11:20) (48:18)
(58:12) (64:14) (67:9)

(70:25) (78:8) (79:13)
(81:4) (82:2) (88:6) (88:25)
(92:6) (95:18) (99:1)
(104:22) (112:19) (122:2)
(123:13) (129:12) (129:14)
(130:24) (143:2) (146:13)
(146:18) (148:6) (157:8)
(164:22) (169:6) (170:18)
(172:14) (184:22) (195:18)
(205:15) (210:18) (215:2)
(215:11) (216:8) (218:21)
(218:24) (231:9) (235:3)
(235:19) (247:17) (247:18)
(249:24) (251:3) (251:19)
(252:17) (256:10) (256:20)
**way-out-there**   (210:10)
**ways**   (115:5) (128:8)
(128:14) (206:2) (206:18)
(207:18)
**we'd**   (49:14) (50:1) (83:11)
**wednesday**   (111:13)
(111:14)
**week**   (97:12) (97:13)
(97:24) (97:25) (108:5)
(111:9) (111:12)
**weekend**   (98:8) (176:5)
**weeks**   (52:12) (97:16)
(97:24) (98:4) (107:23)
(108:6) (176:2) (176:12)
(240:7) (241:25)
**weight**   (85:9) (95:11)
**weird**   (116:3)
**welcome**   (179:6) (238:13)
**well**   (9:17) (18:11) (24:5)
(29:4) (29:10) (29:18)
(34:7) (36:21) (42:1)
(45:21) (48:11) (49:4)
(50:7) (51:18) (53:8) (58:4)
(60:15) (79:12) (80:21)
(81:2) (84:12) (84:15)
(91:17) (95:20) (99:1)
(101:15) (102:3) (102:4)
(102:17) (102:20) (108:21)
(115:13) (115:25) (118:2)
(121:16) (125:21) (127:17)
(128:11) (130:3) (130:9)
(130:22) (133:14) (136:1)
(137:3) (138:16) (141:10)
(141:24) (142:18) (142:20)
(143:1) (143:19) (145:10)
(146:5) (147:20) (149:17)
(150:1) (150:17) (151:16)
(156:10) (159:21) (159:24)
(160:5) (160:7) (164:16)
(166:23) (167:3) (167:19)
(169:14) (172:8) (187:1)
(198:25) (206:14) (207:5)
(207:13) (207:17) (208:2)
(208:18) (208:24) (211:10)
(214:1) (215:13) (219:17)
(229:20) (229:23) (231:2)
(231:3) (235:14) (237:7)
(239:11) (239:15) (239:17)
(242:2) (244:4) (245:9)
(246:20) (249:10) (251:16)
(252:4) (254:9) (255:5)
(256:20) (257:4) (257:10)
**we'll**   (12:7) (58:10)
(59:16) (59:17) (60:4)
(60:15) (94:23)
**went**   (83:14) (103:7)
(131:4)
**were**   (1:20) (6:20) (10:16)
(15:21) (16:3) (16:4) (16:6)
(18:18) (21:12) (25:10)
(28:17) (47:18) (54:2)
(54:24) (59:10) (60:10)

we're                                                                                           with    293

(62:25) (78:10) (78:11)
(80:18) (81:18) (88:3)
(88:4) (88:8) (88:18) (92:3)
(94:5) (102:17) (104:22)
(104:25) (116:24) (122:19)
(122:20) (127:24) (128:8)
(131:3) (138:22) (141:4)
(144:14) (147:2) (154:1)
(164:6) (167:7) (167:21)
(168:8) (169:9) (169:11)
(170:16) (170:17) (170:19)
(179:19) (194:24) (198:20)
(202:18) (222:18) (230:20)
(230:21) (230:22) (231:7)
(232:3) (232:15) (235:25)
(236:6) (243:10) (244:19)
(245:15) (254:19) (260:12)
**we're** (5:23) (5:25) (9:16)
(11:15) (14:8) (14:11)
(15:8) (20:23) (31:2) (35:3)
(44:1) (44:5) (44:7) (47:17)
(49:23) (51:5) (58:13)
(61:23) (62:23) (69:9)
(70:12) (71:11) (71:12)
(71:13) (76:15) (87:9)
(88:25) (96:19) (101:15)
(107:12) (108:6) (110:18)
(113:24) (116:20) (117:20)
(117:25) (118:12) (119:6)
(122:18) (132:9) (133:7)
(133:20) (134:9) (138:13)
(141:10) (157:5) (157:6)
(157:8) (160:7) (160:12)
(162:16) (175:5) (175:6)
(192:20) (197:14) (198:4)
(198:5) (198:7) (218:7)
(226:11) (228:19) (228:20)
(228:22) (229:5) (229:14)
(231:4) (239:20) (246:14)
(246:15) (248:10) (248:16)
(248:19) (249:18) (250:5)
**weren't** (29:21) (140:12)
(208:6) (231:10) (236:5)
(241:3)
**we've** (71:20) (113:13)
(131:17) (160:13) (167:21)
(183:15) (187:3)
**whack** (154:2)
**whatever** (39:3) (73:13)
(74:18) (85:25) (95:11)
(115:24) (118:7) (133:8)
(153:16) (156:10) (196:6)
(211:12) (211:18) (211:23)
(215:15) (221:8) (222:17)
(230:9) (231:19)
**what's** (31:10) (31:16)
(32:8) (42:14) (48:2) (55:5)
(55:8) (80:6) (103:15)
(112:15) (112:16) (121:1)
(142:3) (164:3) (173:23)
(199:12) (200:24) (205:23)
(206:3) (207:1) (209:20)
(218:3) (228:8) (228:18)
(229:19) (253:2) (254:4)
(255:10)
**whatsoever** (14:16)
(206:7) (211:4)
**when** (6:14) (7:6) (10:10)
(11:16) (11:17) (12:11)
(16:12) (16:22) (18:3)
(20:20) (22:16) (37:12)
(49:19) (57:25) (60:21)
(66:18) (66:22) (71:22)
(71:25) (72:13) (73:21)
(76:3) (76:4) (79:15) (84:3)
(84:20) (86:17) (101:6)
(104:22) (108:9) (109:2)

(109:17) (109:21) (110:1)
(111:4) (111:5) (111:19)
(111:25) (112:4) (116:23)
(118:15) (118:16) (118:25)
(119:8) (119:12) (119:15)
(120:9) (120:15) (120:19)
(120:23) (120:24) (124:5)
(128:14) (131:4) (141:20)
(143:10) (145:14) (147:18)
(147:24) (148:8) (148:20)
(148:21) (155:12) (155:25)
(156:6) (156:9) (160:3)
(161:10) (164:7) (164:16)
(164:17) (164:18) (165:17)
(168:4) (175:16) (176:20)
(205:19) (208:20) (209:14)
(212:5) (217:6) (220:25)
(239:24) (242:11) (243:7)
(246:4) (247:20) (254:19)
**whenever** (117:10) (120:8)
(179:19) (179:22)
**where** (7:13) (8:13)
(20:20) (25:6) (26:3)
(28:10) (31:19) (36:17)
(47:18) (54:25) (59:9)
(59:15) (61:7) (61:11)
(64:25) (67:12) (67:20)
(71:21) (74:8) (75:23)
(78:11) (80:15) (86:6)
(112:23) (118:19) (119:19)
(123:22) (125:13) (132:24)
(138:8) (138:17) (138:19)
(139:11) (140:15) (141:3)
(141:15) (142:9) (144:3)
(147:7) (147:20) (151:16)
(155:17) (156:4) (167:7)
(173:14) (178:4) (199:2)
(201:9) (201:11) (211:10)
(215:21) (223:5) (232:10)
(234:10) (239:13) (241:6)
(242:15) (245:7) (246:13)
(248:11) (248:19) (249:6)
(249:7) (250:10) (250:19)
(256:6)
**where's** (38:19)
**whether** (33:5) (40:17)
(45:23) (48:15) (51:15)
(67:15) (67:16) (67:18)
(67:20) (68:13) (68:14)
(68:16) (75:11) (75:25)
(76:12) (80:23) (85:20)
(88:4) (91:7) (91:24)
(94:15) (94:20) (95:12)
(97:1) (107:15) (122:11)
(138:18) (168:22) (176:7)
(201:2) (225:15) (232:17)
(233:13) (235:11) (238:9)
(245:13) (247:7) (247:10)
(247:11) (253:13) (253:16)
(254:13) (254:18)
**which** (7:3) (7:9) (25:6)
(31:17) (39:11) (41:13)
(43:13) (61:10) (82:2)
(97:9) (97:25) (102:23)
(125:12) (130:15) (133:1)
(134:24) (138:7) (140:25)
(149:16) (151:15) (175:7)
(175:24) (179:25) (186:21)
(190:13) (200:25) (226:14)
(243:8) (244:14) (245:24)
(256:6) (260:11) (261:9)
**while** (26:11) (50:13)
(59:17) (93:8) (94:4)
(101:25) (133:3) (140:19)
(141:9) (141:21) (152:12)
(189:8) (194:6) (203:5)
(203:8) (225:5) (240:9)

(242:16) (255:24)
**who** (5:22) (13:18) (14:15)
(14:22) (14:23) (15:10)
(18:12) (18:25) (20:20)
(20:21) (21:20) (24:1)
(27:25) (28:20) (29:4)
(30:14) (37:11) (37:15)
(39:2) (52:6) (61:25)
(62:22) (69:24) (73:8)
(75:14) (75:15) (76:11)
(76:23) (77:1) (77:10)
(88:14) (88:17) (88:20)
(91:19) (96:1) (106:2)
(109:11) (109:15) (122:20)
(126:17) (129:4) (129:18)
(133:11) (133:19) (135:20)
(136:6) (137:10) (137:24)
(142:12) (142:21) (143:12)
(144:16) (150:1) (150:7)
(150:8) (150:10) (150:12)
(151:13) (155:16) (156:12)
(156:15) (169:16) (170:19)
(181:21) (187:10) (194:1)
(197:11) (198:6) (198:14)
(199:1) (199:16) (200:7)
(209:6) (214:21) (214:22)
(214:23) (223:18) (232:24)
(235:16) (239:20) (241:3)
(243:5) (243:10) (243:15)
(245:20) (245:21) (246:16)
(249:19) (252:22) (254:5)
**whole** (29:13) (50:6)
(59:14) (110:14) (115:6)
(128:4) (130:12) (225:20)
(256:1)
**wholeheartedly** (17:20)
**wholly** (199:5)
**who's** (18:14) (117:2)
(129:15) (148:23) (151:11)
(151:12) (151:13) (188:24)
(194:4) (202:15) (202:19)
(205:7) (221:12) (225:19)
(225:21) (235:15)
**whose** (63:5)
**why** (10:3) (45:8) (53:2)
(100:19) (102:3) (104:21)
(106:13) (113:17) (115:21)
(130:16) (153:13) (154:4)
(170:11) (171:5) (173:10)
(185:13) (194:10) (242:23)
(249:10)
**wide** (28:8)
**wife** (74:8)
**will** (11:19) (11:20)
(15:10) (18:5) (19:1) (19:2)
(19:3) (19:5) (19:6) (19:8)
(19:9) (23:18) (23:23)
(31:10) (35:25) (38:2)
(38:4) (38:5) (38:6) (39:10)
(42:21) (46:20) (48:8)
(48:13) (50:15) (51:20)
(53:5) (55:19) (55:23)
(55:25) (56:2) (56:5)
(56:13) (65:10) (69:25)
(70:1) (71:21) (74:23)
(75:3) (76:13) (77:16)
(91:7) (94:22) (96:3)
(96:23) (96:24) (97:1)
(97:8) (97:17) (99:21)
(99:25) (102:4) (102:25)
(103:21) (107:22) (108:1)
(108:4) (108:12) (109:20)
(112:2) (116:17) (121:5)
(123:1) (129:2) (129:4)
(129:5) (132:11) (132:14)
(132:20) (136:12) (137:24)
(142:21) (146:20) (152:11)

(152:13) (152:22) (153:15)
(154:24) (158:21) (175:8)
(175:21) (177:25) (179:9)
(182:4) (183:5) (185:17)
(186:1) (186:2) (189:9)
(189:14) (198:15) (199:1)
(199:16) (199:18) (200:7)
(200:9) (200:12) (200:13)
(200:16) (200:17) (201:14)
(204:18) (205:21) (206:21)
(207:13) (218:1) (218:14)
(218:16) (219:1) (219:2)
(220:11) (222:9) (222:10)
(222:12) (222:13) (222:25)
(223:1) (233:1) (233:15)
(237:8) (238:1) (253:14)
(253:23) (256:4) (258:12)
**willfully** (245:16)
(245:23)
**willing** (15:1) (16:6)
(51:14) (118:17) (118:24)
(147:4) (152:16) (232:11)
(232:15) (232:16)
**wink** (132:14) (214:22)
**winner** (140:12)
**wish** (215:12)
**with** (11:7) (12:9) (13:6)
(13:7) (17:3) (17:14)
(17:20) (18:3) (19:12)
(20:5) (21:2) (23:20)
(25:13) (31:22) (33:13)
(37:24) (40:25) (46:23)
(49:23) (50:23) (51:18)
(51:25) (52:8) (55:10)
(55:14) (59:24) (60:6)
(60:19) (62:9) (63:25)
(66:24) (66:25) (69:19)
(70:10) (70:21) (71:5)
(71:22) (72:16) (76:6)
(78:21) (79:1) (79:16)
(86:9) (86:16) (86:17)
(89:9) (89:17) (89:18)
(93:1) (93:8) (105:15)
(109:1) (110:15) (110:16)
(110:18) (110:25) (115:15)
(115:16) (117:9) (118:20)
(119:4) (119:20) (120:24)
(123:16) (123:25) (125:2)
(126:20) (127:21) (128:8)
(128:15) (130:3) (136:17)
(138:13) (139:19) (141:16)
(144:1) (144:19) (146:15)
(147:3) (148:12) (148:16)
(148:19) (151:25) (152:3)
(153:16) (155:17) (157:25)
(158:2) (158:22) (162:3)
(163:1) (164:4) (164:14)
(165:2) (166:8) (168:19)
(170:9) (170:23) (171:2)
(171:21) (171:25) (174:8)
(176:1) (179:19) (182:3)
(186:18) (192:4) (197:5)
(204:3) (204:19) (205:20)
(205:22) (206:22) (208:3)
(208:9) (209:12) (211:4)
(211:6) (212:12) (214:1)
(214:7) (215:3) (215:21)
(216:8) (216:21) (217:17)
(218:18) (220:20) (222:5)
(226:12) (231:18) (233:1)
(234:13) (234:25) (235:6)
(236:14) (240:2) (241:23)
(242:3) (243:11) (244:10)
(244:24) (245:3) (246:21)
(247:5) (249:7) (249:18)
(257:15) (258:23) (261:3)
(261:6) (261:9)

within                                                                                    yes        294

| | | | |
|---|---|---|---|
| **within** (56:3)(72:9) (133:5)(205:12)(206:20) (209:24)(223:23) | (75:21)(75:25)(76:1) (76:4)(76:5)(76:15) (76:24)(77:2)(77:3) | (242:17)(244:16)(245:12) (245:25)(247:12)(249:13) (249:14)(250:8)(250:21) | (207:14)(209:25)(244:23) **yelling** (170:21) **yes** (6:2)(6:19)(7:5) |
| **without** (26:7)(33:4) (73:9)(75:15)(89:6) (128:17)(128:19)(132:12) (161:14)(162:1)(170:12) (171:8)(173:22)(202:14) (218:19)(220:8)(220:9) (225:18)(228:15)(235:11) (244:12)(248:13)(250:23) (252:2)(254:14) | (77:18)(77:20)(78:4) (78:15)(78:18)(78:19) (78:21)(79:4)(79:6)(79:8) (79:12)(79:19)(79:24) (80:23)(81:11)(81:14) (81:17)(81:18)(82:1) (82:4)(82:6)(82:10)(83:7) (83:10)(83:20)(84:10) (84:20)(85:7)(85:15) | (251:2)(251:5)(251:9) (251:15)(251:20)(251:23) (252:10)(252:13)(252:17) (255:20)(256:3)(256:5) (256:6)(256:17)(256:25) (257:14)(258:5)(258:10) (258:11)(258:21) **wouldn't** (14:22)(25:17) (29:7)(77:14)(79:20) | (7:17)(10:15)(10:18) (12:17)(13:23)(16:5) (19:11)(21:5)(24:4) (27:21)(27:22)(30:8) (30:11)(30:13)(30:16) (30:19)(30:22)(30:25) (31:12)(32:19)(32:23) (33:9)(33:21)(34:6) (34:23)(34:25)(35:18) |
| **withstand** (170:20) **witness** (22:19)(22:24) (69:13)(182:24)(238:14) **witnesses** (22:15)(23:24) (44:21)(45:22)(84:21) (227:1) | (87:15)(88:1)(88:9) (88:16)(89:4)(90:6) (90:11)(90:13)(91:10) (91:11)(91:25)(92:4) (92:6)(92:9)(92:16) (92:21)(93:25)(94:2) | (89:8)(89:11)(90:23) (92:16)(95:19)(123:7) (123:16)(129:23)(129:24) (130:1)(147:3)(147:12) (150:2)(162:10)(166:2) (167:17)(172:23)(176:4) | (36:9)(36:20)(36:25) (37:25)(38:14)(38:18) (39:17)(39:20)(39:25) (40:9)(41:15)(41:20) (42:6)(42:23)(42:24) (43:1)(44:25)(45:2)(45:4) |
| **woman** (144:24) **women** (122:13)(123:17) **wonderful** (207:22) **wondering** (60:20)(61:14) **won't** (16:21)(19:6) (48:8)(72:10)(101:6) (137:25)(141:24)(146:21) (163:6)(238:3)(258:12) | (94:3)(94:11)(94:14) (94:17)(94:20)(95:1) (95:5)(96:6)(96:10) (96:17)(97:21)(98:1) (98:4)(98:5)(101:4) (102:23)(103:24)(112:20) (113:9)(113:12)(114:15) (114:22)(114:23)(121:23) | (190:19)(215:1)(225:18) (231:9)(231:10)(241:6) (241:7)(241:8)(249:10) (249:12)(251:24)(252:13) **wound** (21:11)(214:5) **write** (12:14)(114:19) **writhe** (30:1) **writing** (260:9) | (45:7)(45:13)(46:15) (46:18)(46:19)(48:14) (48:17)(49:12)(50:16) (51:7)(51:13)(51:16) (51:23)(52:19)(53:15) (53:24)(55:2)(55:11) (55:21)(55:25)(56:4) (56:7)(56:12)(56:14) |
| **word** (51:5)(69:6)(86:17) (86:19)(88:24)(123:23) (216:23) **words** (22:1)(36:2) (43:21)(47:14)(48:22) (154:22)(199:22)(225:4) (227:10)(229:10)(230:3) (246:12) | (121:24)(124:1)(124:12) (124:17)(124:19)(124:20) (124:21)(125:1)(125:2) (127:10)(127:24)(128:7) (131:2)(132:7)(134:1) (134:13)(134:21)(134:24) (135:2)(136:9)(136:12) (136:13)(136:14)(136:18) | **written** (158:20) **wrong** (12:4)(59:21) (62:16)(67:14)(86:17) (104:2)(104:24)(114:16) (125:25)(142:3)(142:17) (148:12)(148:16)(148:19) (164:7)(168:6)(170:22) (196:8)(215:6)(216:8) | (56:24)(57:4)(57:7) (57:11)(57:19)(58:3) (58:6)(62:10)(63:15) (63:21)(64:16)(64:23) (66:14)(69:15)(69:23) (70:4)(70:6)(70:9)(71:1) (71:3)(73:20)(74:21) (76:1)(76:20)(77:5) |
| **wordy** (43:8) **work** (33:4)(107:23) (110:9)(110:11)(110:15) (110:16)(112:10)(112:11) (113:5)(125:21)(151:15) (197:24)(198:11)(200:23) (207:24)(223:11) | (136:19)(137:1)(137:8) (138:1)(138:2)(138:18) (138:19)(138:21)(138:22) (138:23)(139:8)(139:11) (139:20)(140:7)(142:6) (143:1)(143:5)(146:2) (147:9)(148:2)(149:7) | (225:22)(243:15)(247:23) **wrote** (37:10)(37:11) (60:21)(116:23)(146:12) (221:1) | (77:11)(78:5)(78:9) (78:19)(79:21)(80:4) (80:11)(81:13)(81:16) (82:6)(82:7)(82:11) (82:21)(82:25)(83:24) (84:2)(85:8)(86:4)(86:11) |
| **worked** (164:22) **worker** (29:15)(145:6) **workers** (44:6) **working** (98:9)(144:3) (151:15)(176:5) | (149:9)(149:10)(149:11) (149:18)(149:19)(149:22) (150:4)(151:4)(152:7) (152:15)(153:12)(154:4) (156:12)(156:13)(159:4) | **Y** **y'all** (9:15) **yeah** (8:13)(21:7)(42:7) (45:10)(52:17)(82:5) | (88:7)(89:23)(91:1)(91:2) (91:18)(92:2)(92:7) (92:10)(92:20)(94:5) (96:3)(102:14)(102:16) (102:19)(103:7)(109:6) |
| **works** (44:9)(122:2) (160:17)(234:1) **world** (137:25)(138:5) (138:7)(138:8)(138:11) (138:16)(138:17)(138:23) (139:20)(142:7)(156:18) | (159:5)(159:7)(159:13) (159:20)(160:1)(160:2) (160:6)(160:7)(161:7) (162:6)(162:9)(162:11) (162:20)(163:23)(165:1) (165:19)(165:24)(165:25) | (84:15)(84:23)(98:3) (100:23)(101:5)(104:12) (106:19)(108:9)(108:14) (110:10)(110:20)(112:22) (113:15)(117:16)(118:14) (119:5)(119:21)(120:19) | (109:9)(110:24)(111:1) (123:3)(123:20)(125:9) (125:12)(130:7)(131:24) (134:2)(134:6)(134:8) (134:15)(135:3)(140:6) (144:25)(152:9)(152:13) |
| **worried** (118:22) **worry** (44:20)(118:25) (242:5)(243:1) **worst** (137:25)(161:22) **worthwhile** (63:7) | (166:1)(166:2)(166:3) (166:8)(166:20)(166:22) (166:23)(167:1)(167:5) (167:6)(167:16)(167:25) (168:1)(168:2)(168:11) | (122:6)(123:15)(124:19) (127:7)(127:13)(127:14) (128:13)(130:7)(133:15) (135:25)(135:7)(137:23) (139:7)(141:17)(142:24) | (152:14)(152:17)(152:24) (153:20)(155:2)(157:17) (159:22)(161:1)(161:15) (161:24)(162:4)(163:20) (168:20)(168:24)(169:18) |
| **would** (5:8)(7:7)(7:11) (8:9)(8:22)(17:20)(18:1) (18:7)(18:19)(21:3) (21:14)(23:14)(24:24) (25:15)(25:16)(25:18) (29:6)(29:8)(32:1)(37:24) (38:16)(39:24)(40:8) (40:10)(40:11)(40:12) (40:16)(40:17)(40:22) (41:5)(41:14)(41:16) (42:9)(44:10)(45:16) (45:20)(45:24)(46:21) (48:2)(50:20)(51:14) (54:3)(54:4)(54:21) (54:22)(56:8)(60:11) (61:16)(61:21)(63:12) (65:6)(66:8)(68:14) (68:19)(70:7)(70:25) (73:14)(75:1)(75:2)(75:7) (75:10)(75:18)(75:20) | (168:12)(168:24)(169:7) (169:12)(169:19)(169:20) (169:22)(170:20)(171:25) (172:6)(174:7)(174:23) (176:6)(176:17)(178:16) (180:20)(181:18)(183:3) (184:21)(187:25)(188:13) (190:21)(191:22)(192:12) (199:5)(202:21)(204:8) (204:22)(205:6)(207:4) (209:11)(209:14)(210:4) (211:8)(211:10)(213:3) (213:22)(216:4)(216:8) (216:9)(222:5)(223:25) (224:3)(225:16)(225:18) (226:1)(227:17)(227:22) (230:21)(230:23)(230:24) (233:9)(234:17)(235:14) (235:19)(236:13)(236:20) (238:17)(240:15)(241:8) | (143:7)(143:21)(143:22) (143:24)(144:18)(145:12) (145:23)(146:25)(147:9) (147:10)(147:13)(148:8) (150:5)(150:15)(151:19) (151:21)(151:25)(153:25) (154:16)(154:23)(158:25) (160:10)(160:21)(162:8) (166:10)(166:12)(167:4) (168:2)(171:3)(178:25) (182:12)(191:15)(191:20) (197:24)(208:22)(209:5) (209:22)(210:3)(215:8) (224:12)(224:14)(231:17) (233:6)(234:19)(235:2) (237:1)(250:22)(252:9) (254:17)(255:2)(256:8) (258:18) **year** (110:8)(110:9) (112:25) **years** (26:12)(87:24) (87:25)(122:18)(203:6) (204:10)(205:15)(206:21) | (169:19)(169:22)(170:15) (170:23)(171:11)(173:2) (173:7)(173:13)(173:21) (173:25)(174:13)(178:3) (179:3)(180:2)(180:4) (180:7)(181:10)(183:1) (183:5)(183:22)(184:14) (185:4)(186:17)(186:23) (187:5)(187:17)(187:19) (187:25)(188:21)(189:2) (189:7)(189:12)(189:17) (191:4)(191:6)(192:11) (194:23)(195:1)(195:14) (196:21)(198:1)(200:2) (202:4)(206:14)(209:14) (211:7)(211:9)(212:1) (212:17)(213:14)(214:16) (216:3)(216:17)(216:19) (220:3)(221:4)(221:18) (222:1)(222:6)(222:22) (223:10)(223:17)(224:3) |

yet

(224:21)(224:23)(225:2)
(225:7)(225:11)(225:12)
(225:13)(227:5)(227:8)
(227:21)(228:3)(229:15)
(230:11)(233:19)(233:20)
(234:6)(236:12)(237:12)
(237:14)(237:18)(237:21)
(238:18)(239:2)(239:8)
(239:12)(240:3)(241:2)
(241:5)(244:17)(244:20)
(245:4)(245:11)(246:1)
(246:22)(249:3)(249:5)
(249:15)(250:1)(251:1)
(251:12)(251:14)(251:18)
(251:22)(252:1)(252:8)
(253:1)(253:8)(253:11)
(253:20)(255:4)(255:7)
(255:16)(255:21)(256:10)
(256:18)(256:23)(258:8)
yet   (20:9)(46:23)
(117:25)(145:9)(145:11)
(166:5)(226:11)(228:5)
(240:5)
you'd   (10:22)(25:13)
(41:23)(79:1)(195:7)
(224:25)(227:19)(232:4)
(236:4)(240:17)
you'll   (10:9)(12:17)
(18:20)(52:20)(57:3)
(57:5)(57:8)(69:22)(98:8)
(100:6)(107:17)(163:1)
(176:12)(198:14)(237:19)
(253:13)
young   (165:14)(165:19)
(208:6)
younger   (88:8)(165:22)
your   (6:4)(6:21)(7:1)
(7:4)(7:16)(8:5)(8:6)
(8:8)(8:22)(9:2)(10:6)
(10:20)(11:2)(11:14)
(11:24)(12:9)(12:11)
(12:12)(13:22)(14:7)
(15:4)(15:14)(16:7)
(16:11)(18:21)(19:20)
(21:14)(21:19)(22:11)
(22:18)(31:25)(32:8)
(32:17)(32:21)(33:15)
(36:7)(37:11)(41:16)
(42:11)(42:13)(45:11)
(46:15)(46:25)(47:18)
(49:14)(49:23)(50:15)
(50:17)(51:20)(52:6)
(52:8)(53:10)(55:20)
(57:9)(57:18)(59:14)
(59:23)(60:17)(63:25)
(69:8)(69:17)(69:22)
(70:1)(70:11)(70:13)
(70:18)(79:10)(80:22)
(83:2)(86:5)(86:23)(87:4)
(90:6)(90:8)(92:11)
(93:12)(93:22)(94:2)
(95:10)(95:14)(95:22)
(95:25)(97:12)(100:7)
(100:14)(101:6)(101:16)
(103:20)(104:14)(104:17)
(106:5)(109:7)(110:12)
(111:5)(112:7)(113:4)
(113:20)(113:23)(114:6)
(114:14)(114:19)(114:23)
(118:11)(119:18)(121:5)
(121:6)(124:18)(126:22)
(127:16)(127:23)(131:20)
(142:4)(144:14)(146:1)
(147:15)(148:22)(150:16)
(151:9)(155:9)(170:2)
(170:10)(171:5)(171:13)
(171:18)(172:14)(176:13)

(177:23)(179:11)(179:23)
(180:12)(180:20)(180:25)
(181:10)(182:5)(182:18)
(182:23)(183:14)(183:23)
(184:22)(185:18)(185:25)
(186:5)(186:12)(186:19)
(187:2)(187:19)(189:10)
(189:15)(189:23)(190:5)
(191:2)(191:21)(192:7)
(192:11)(193:25)(194:15)
(195:12)(195:20)(195:25)
(196:1)(196:3)(197:15)
(197:16)(199:10)(199:19)
(199:22)(200:2)(201:15)
(202:3)(203:20)(203:22)
(207:1)(208:22)(210:4)
(211:16)(212:19)(214:11)
(214:13)(214:19)(215:5)
(218:3)(218:24)(219:15)
(224:23)(228:23)(230:14)
(231:15)(233:16)(233:20)
(234:4)(234:24)(236:21)
(237:22)(238:10)(239:24)
(240:11)(240:25)(241:4)
(241:9)(241:10)(243:14)
(243:19)(244:22)(245:5)
(245:15)(248:6)(248:25)
(250:4)(250:12)(251:11)
(252:19)(254:13)(259:1)
you're   (8:3)(10:3)
(10:20)(12:11)(15:5)
(15:7)(16:21)(17:11)
(17:22)(18:2)(20:11)
(20:24)(22:11)(23:15)
(27:23)(28:7)(31:22)
(32:24)(35:8)(37:4)
(37:17)(41:10)(43:4)
(43:5)(46:23)(51:1)
(51:11)(51:18)(55:10)
(59:15)(63:12)(69:24)
(70:20)(71:2)(72:1)
(72:21)(75:12)(75:25)
(80:1)(80:9)(80:25)(91:3)
(91:23)(91:24)(96:18)
(97:1)(102:3)(102:21)
(107:16)(109:11)(109:13)
(110:21)(112:17)(113:4)
(114:7)(116:1)(116:5)
(118:22)(119:9)(119:13)
(120:15)(121:13)(122:7)
(122:10)(125:10)(127:22)
(127:23)(135:10)(135:11)
(135:16)(136:11)(141:2)
(141:15)(141:24)(142:4)
(142:5)(142:19)(144:3)
(150:19)(155:12)(160:24)
(162:19)(163:21)(165:12)
(170:21)(171:5)(171:14)
(171:15)(176:7)(176:8)
(179:6)(180:13)(180:15)
(182:24)(194:10)(195:3)
(198:12)(198:13)(199:9)
(199:21)(204:8)(205:10)
(205:18)(206:9)(210:22)
(213:23)(215:11)(215:13)
(215:14)(215:15)(215:18)
(216:10)(220:4)(220:7)
(220:8)(221:12)(221:15)
(227:14)(227:15)(229:5)
(229:22)(231:19)(231:22)
(232:10)(233:18)(237:3)
(237:11)(237:16)(237:20)
(237:22)(238:13)(240:2)
(241:7)(243:1)(246:7)
(246:11)(248:9)(249:24)
(253:25)(254:1)(255:5)
(256:24)(257:4)(257:5)

yours   (244:24)
yourself   (31:22)(45:23)
(49:4)(50:8)(66:4)(107:1)
(130:22)(133:24)(142:17)
(171:7)(171:10)(187:10)
(193:11)(231:22)
youth   (229:20)
you've   (10:20)(11:9)
(12:6)(16:11)(17:12)
(17:13)(22:25)(23:20)
(24:5)(28:7)(28:22)(33:7)
(36:17)(36:22)(36:23)
(39:21)(41:13)(42:4)
(46:18)(51:24)(53:21)
(61:11)(63:11)(64:19)
(65:3)(67:14)(69:17)
(69:21)(78:7)(81:24)
(82:14)(86:5)(86:9)(87:4)
(90:25)(91:1)(91:19)
(102:22)(103:11)(103:17)
(104:4)(114:7)(117:17)
(118:21)(119:16)(122:11)
(126:22)(142:10)(145:21)
(150:16)(158:15)(163:20)
(182:11)(191:12)(191:13)
(191:21)(195:4)(195:12)
(195:20)(196:12)(199:10)
(203:17)(208:18)(212:18)
(216:23)(225:15)(245:2)
(246:13)(255:9)(257:5)