*AP-76207*

REPORTER'S RECORD        **ORIGINAL**

VOLUME 19 OF _____ VOLUMES

CAUSE NO. F08-24667-Y

THE STATE OF TEXAS        ) IN THE CRIMINAL DISTRICT
                          )
VERSUS                    ) COURT NUMBER 7
                          )
JAMES GARFIELD BROADNAX   ) DALLAS COUNTY, TEXAS

-------------------------------
INDIVIDUAL VOIR DIRE
-------------------------------

**FILED IN**
**COURT OF CRIMINAL APPEALS**

**SEP 16 2010**

**Louise Pearson, Clerk**

On the 10th day of June, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause; and the following proceedings were had before the HONORABLE QUAY PARKER, Judge Presiding, held in Dallas, Dallas County of Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.

HEATHER H. VEZINA, CSR
214.653.5786

A P P E A R A N C E S


MS. ANDREA HANDLEY
SBOT NO. 08898800
-and-
MR. GORDON HIKEL
SBOT NO. 00787696
-and-
MS. ELAINE EVANS
SBOT NO. 24032880
        ASSISTANT DISTRICT ATTORNEYS
        CRIMINAL DISTRICT ATTORNEY'S OFFICE
        DALLAS COUNTY, TEXAS
        FRANK CROWLEY COURTS BUILDING
        133 NORTH INDUSTRIAL BOULEVARD
        DALLAS, TEXAS 75207-4399

            APPEARING ON BEHALF OF THE STATE OF TEXAS


MR. BRAD LOLLAR
SBOT NO. 12508700
        ATTORNEY AT LAW
        1700 COMMERCE STREET
        SUITE 404
        DALLAS, TEXAS 75201
        (214) 384-8178
-and-
MR. DOUGLAS H. PARKS
SBOT NO. 15520000
        ATTORNEY AT LAW
        321 CALM WATER LANE
        HOLLY LAKE RANCH, TEXAS 75765
        (214) 521-2670 (DALLAS OFFICE)
        (903) 769-3120 (HOLLY LAKE OFFICE)
-and-
MS. KERI MALLON
SBOT NO. 24049165
        ASSISTANT PUBLIC DEFENDER
        DALLAS COUNTY PUBLIC DEFENDER'S OFFICE
        FRANK CROWLEY COURTS BUILDING
        133 NORTH INDUSTRIAL BOULEVARD
        DALLAS, TEXAS 75207-4399
        (214) 653-3550

            APPEARING ON BEHALF OF THE DEFENDANT

CHRONOLOGICAL VENIREPERSON INDEX

(VOLUME 19)

JUNE 10, 2009

| VENIREPERSON | State | Defense | Page | Vol. |
|---|---|---|---|---|
| LEAH KUNARD | 10 | 56 | | 19 |
| State's challenge for cause | | | 76 | |
| Court's ruling | | | 77 | |
| Venireperson accepted | | | 77 | |
| KRISTI DAVIS | 85 | | | 19 |
| State's challenge for cause | | | 108 | |
| Court's ruling | | | 108 | |
| Venireperson excused for cause | | | 108 | |
| AURORA BARBOSA | 110 | | | 19 |
| State's challenge for cause | | | 112 | |
| Court's ruling | | | 112 | |
| Venireperson excused for cause | | | 112 | |
| CARLA GAYNOR | 114 | | | 19 |
| State's challenge for cause | | | 115 | |
| Court's ruling | | | 115 | |
| Venireperson excused for cause | | | 115 | |
| MARY HINTON | 117 | | | 19 |
| State's challenge for cause | | | 118 | |
| Court's ruling | | | 118 | |
| Venireperson excused for cause | | | 118 | |
| ERIC COLEMAN (absent) | | | | 19 |
| Venireperson excused by agreement of parties | | | 123 | |
| PEGGY FINCHER | 130 | | | 19 |
| State's challenge for cause | | | 134 | |
| Court's ruling | | | 134 | |
| Venireperson excused for cause | | | 134 | |

ALPHABETICAL VENIREPERSON INDEX

(VOLUME 19)

| VENIREPERSON | State | Defense | Vol. |
|---|---|---|---|
| AURORA BARBOSA | 110 | | 19 |
| ERIC COLEMAN (absent) | | | 19 |
| KRISTI DAVIS | 85 | | 19 |
| PEGGY FINCHER | 130 | | 19 |
| CARLA GAYNOR | 114 | | 19 |
| MARY HINTON | 117 | | 19 |
| LEAH KUNARD | 10 | 55 | 19 |

| | | |
|---|---|---|
| Court adjourned.............................134 | | 19 |
| Court Reporter's certificate...............135 | | 19 |


EXHIBIT INDEX

STATE'S EXHIBITS

| NUMBER | DESCRIPTION | |
|---|---|---|
| 1 | JUROR QUESTIONNAIRE AND NCIC PRINTOUT OF PEGGY FINCHER, VENIREPERSON NO. 387 (STATE'S EXHIBIT NO. 1 WAS OFFERED ON PAGE 110 OF VOL. 20.) | 19 |

HEATHER H. VEZINA, CSR
214.653.5786

P R O C E E D I N G S

(9:00 a.m.)

(Open court, defendant present.)

THE COURT: Bring Ms. Kunard in.

THE BAILIFF: All rise for the juror.

(Venireperson Kunard enters courtroom.)

THE COURT: Hi, Ms. Kunard. How are you doing this morning?

VENIREPERSON KUNARD: Good. How are you?

THE COURT: I've understand you've been up all night, and so --

VENIREPERSON KUNARD: Yes, I've been up since 3:00 yesterday.

THE COURT: -- it's been a long day, hasn't it?

VENIREPERSON KUNARD: Yes.

THE COURT: Bless your heart. Go ahead and have a seat there

Thank you, ladies and gentlemen. Be seated, please.

And, Heather, I'd like for the record to reflect this is Prospective Juror No. 401, Leah Michelle Kunard.

Is that -- am I pronouncing your last name --

VENIREPERSON KUNARD: Correct. Yes.

THE COURT: Okay. Very good. And welcome.

VENIREPERSON KUNARD: Thank you.

THE COURT: Glad you're here this morning. And we'll try to get this over with as quick as we can because I know you're headed home to get some rest.

VENIREPERSON KUNARD: Yes.

THE COURT: Okay. So we'll try to get you out of here just as quick as we can. I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas. And Judge Michael Snipes has asked me to assist him in the trial of this capital murder case by presiding over the jury selection process, the individual voir dire examination is what we call it. And so that explains to you what I'm doing here today instead of Judge Snipes, and, consequently, why you're here today.

VENIREPERSON KUNARD: Okay.

THE COURT: So, anyway, you'll probably recall it's been over a month ago now --

VENIREPERSON KUNARD: Uh-huh.

THE COURT: -- that y'all got together, probably four or 500 of you, in central jury, and Judge Snipes talked to the group at that time. At some point in the proceedings, he asked everybody on the panel to stand up and raise their right hand and he administered the oath of a prospective juror. Do you recall that?

VENIREPERSON KUNARD: Uh-huh.

THE COURT: Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON KUNARD: Uh-huh.

THE COURT: All right. And let me ask you to do something. I know you're sleepy and you're tired, but my court reporter, Heather, can -- I can see your answers and I can see you nod your head --

VENIREPERSON KUNARD: Yes.

THE COURT: -- uh-huh and huh-uh --

VENIREPERSON KUNARD: I will try to articulate.

THE COURT: -- but, yes, that's it, exactly. I was just fixing to ask you if you wouldn't mind articulating --

VENIREPERSON KUNARD: Sure.

THE COURT: -- so she can write it down on her machine, because she's taking down everything that's said in this proceeding, so, okay.

Well, back to your oath. I know you took the oath, you told me, and I'll remind you that you are still under that oath, and what you're sworn to do are basically two things. Number one, tell the truth or give truthful answers. We know you'd do that anyway. But also to be responsive, second thing is to be responsive to each and every question that's asked to you by the attorneys. Okay?

VENIREPERSON KUNARD: Okay.

THE COURT: And, incidentally, referring to the questions asked to you by the attorneys, have you had an opportunity to read your orientation guide here?

VENIREPERSON KUNARD: Yes.

THE COURT: Okay. Now, that's just a very basic explanation, I guess, if you will, of the law and some of the procedural aspects and the special issues that are going to be involved in the trial of this case. And what the attorneys are going to do, they're going to expound on that. They're going to broaden, explain to you more about the law, make sure you understand it. When you understand it, then they're going to start asking you questions to get your ideas, your opinions, your thoughts concerning the law and some of the procedural aspects involved in the trial of the case.

So there's not going to be anything that's going to be embarrassing and it's not a quiz that you've got to pass or fail. In fact, there's no right or wrong answers at all. Okay?

VENIREPERSON KUNARD: Okay.

THE COURT: All right. So with that, then,

let me introduce the attorneys that are going to be participating in this trial. Seated right across, kind of catercorner from me is Mr. Gordon Hikel.

MR. HIKEL: Good morning.

THE COURT: And he's going to be talking to you today for the State of Texas. And Ms. Andrea Handley --

MS. HANDLEY: Good morning.

VENIREPERSON KUNARD: Good morning.

THE COURT: -- is seated next to him, and then Ms. Elaine Evans is down there. And these ladies and gentleman comprise the prosecution team, a part of it. There's, I think, two more attorneys that are members of the prosecution team that aren't here today, but, anyway, they're charged with the responsibility of prosecuting this case.

And then seated next to me down this way is Mr. Brad Lollar and Mr. Doug Parks, and on the very end down there, Ms. Keri Mallon.

MS. MALLON: Good morning.

THE COURT: And they're -- these attorneys, these three attorneys comprise the Defense team, and they represent Mr. James Broadnax who is the defendant on the very end down there. All right?

Mr. Hikel, we're ready for your voir dire examination.

MR. HIKEL: Thank you, Your Honor.

THE COURT: Yes, sir.

LEAH KUNARD,

Venireperson No. 401, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Ms. Kunard, again, good morning.

A. Good morning.

Q. Besides being tired, how are you doing this morning?

A. I'm okay. I'm actually getting over being sick, too, so this could have been a really bad morning for this.

Q. The court reporter sitting to my right reminded me this morning that I talk really fast.

A. Okay.

Q. So I promised her I'd do my best to slow down.

A. Okay.

Q. If, while I'm talking to you, I am talking too fast or say something you don't understand, just let me know, I'll slow down, try to repeat myself. Okay?

A. Okay.

Q. So are you an RN? Is that correct?

A. Correct. Uh-huh.

Q. Where do you -- at Children's Hospital?

A. Children's, uh-huh. Children's Medical Center.

Q. Children's. How long have you been working as an RN?

A. Three years this month.

Q. Three years. Okay. And what is your shift? What shift do you currently work there?

A. I work night shift, so I'm in -- I have to clock in at 7:00 p.m., and then if I'm lucky, I get out between 7:30 and 8:00.

Q. If you're lucky?

A. Yeah.

Q. So on the days when you're unlucky, what time would you normally -- what time would you get off?

A. It all depends on my patient assignment. If I have a kid that's really sick or if there's something that's going on during shift change, I just have to stay however long it takes to stabilize the kid and get my charting completed.

Q. Okay. So that's not something you can pass on to another -- the incoming nurse or someone else?

A. No. I mean, once you get to the point where the patient's stable, you can pass off enough and give report to day shift and they will take over; but until that happens, you have to stay.

Q. Okay. This trial is slated to start, I believe, August 10th and may last for approximately two weeks. Okay? We normally start at nine o'clock in the morning --

A. Uh-huh.

Q. -- and go until 4:30, 5:00. If you are selected as a juror, in the light of your work schedule and what you just mentioned in terms of not being able to leave a kid who may be sick, will you be able to perform your duties as a juror if selected as one?

A. I already talked to my manager, my team leaders about the potential scheduling conflicts, and they said that if I were to be selected to the jury, then they would be able to -- basically I think I'd be excused from all my shifts during those two weeks, so I wouldn't be required to be at the hospital if I was required to be here instead.

Q. Okay. So that -- and that wouldn't be any problem or anything in terms of promotions slowing down or anything like that if you have to be removed for two weeks?

A. No, I don't think so. I'm not sure exactly how the pay works because I know, I mean, I got paid for juror's duty for the previous, like, month and a half ago when we were here and I'll get paid again for today

because I was supposed to go back in to work tonight but I can't do that if I can't sleep.

Q. Right.

A. But I -- I don't know if they can do that for two whole weeks, but --

Q. Uh-huh.

A. -- I mean, I'm not in any sort of financial, like, dire straits, so I would be okay.

Q. Okay. And so you are still in the process of trying to work with your employer? Whether or not it would be a problem if you're a juror and you have to sit for two weeks, you're still trying to resolve that issue?

A. Correct. Yeah. And especially since I work night shift, it makes it a little bit more difficult --

Q. Uh-huh.

A. -- so there would be no way that I could work nights and do this during the day.

Q. Right.

A. So I would have to be excused from work probably for the entirety of the two weeks.

Q. Okay. And you're almost sure that that's not going to be a problem?

A. Yeah. Uh-huh.

Q. Okay. Because as the Judge reminded you, at this point here, you know, no right or wrong answers.

A. Uh-huh.

Q. We're just here to find out from you, because I'm going to talk to you for about --

MR. HIKEL: Is it two hours, Brad, or is it 45 minutes?

A. Please say 45.

THE COURT: Gordon, 45.

MR. HIKEL: Okay. Thank you, Judge.

Q. (BY MR. HIKEL) Then when I'm done, one of the lawyers here will talk to you also.

A. Uh-huh.

Q. And essentially what we're doing during this time is to find out from you what your thoughts and your opinions are about the law as it pertains to the death penalty, because as you may know from coming here April 24th and filling out the big questionnaire with the big panel in the morning --

A. Uh-huh.

Q. -- and this morning reading the brochure, you realize that this is a case where it's a capital murder case, and one of the possible punishments in a capital murder case is the death penalty, okay, or as you reflected in your questionnaire, life without the possibility of parole. So those are the two possible sentences should the defendant be found guilty of capital

murder.

Now, and so it will be two weeks. And so we want to know from you if at any point, you know, you tell us, look, I just can't do this for -- either because of my work schedule, because of the nature of what's involved in here, seeking the death penalty, I just can't do it. No one will quarrel with you. No one's going to call your dad who's a police officer and say, hey, guess what Leah told us, she can't -- you know. It's entirely up to you. Okay?

A. Okay.

Q. Now, having said that, let's look at your questionnaire. There's some things I wanted to ask you about your questionnaire.

A. Sure.

Q. And are you a fan of Oprah?

A. No.

Q. No. Okay. I'm not either.

A. Okay.

Q. Interesting. The first question you were asked there, are you in favor of the death penalty, and you said yes. Okay. And you said that you wish it could be avoided, and you go on, you say, but it's a necessary evil. Tell us what you mean as to why you see it as being something that's evil, albeit a necessary one.

A. I'm -- as a Christian, because of my faith, I don't feel that it's any person's right to take someone else's life, so --

Q. Okay.

A. -- that's why I feel it's a necessary evil. Unfortunately, I mean, humans are broken people, so I think that there are some things in life that are just necessary evils that occur that can't really necessarily be avoided, but I wish it could be different.

Q. Okay. Well, you understand that you've taken one oath now, but if you are selected as a juror, one of 12, you will take another oath. And that other -- have you ever served as a juror before?

A. I have not, no. Huh-uh.

Q. Okay. The other oath that you will take if you become a juror will say essentially this, that you and each of you do solemnly swear that in the case of the State of Texas against the defendant, James Broadnax, you will a true verdict render according to the law and the evidence, so help you God. That would be the oath you would be required to take.

Now, you mentioned that because of your religious beliefs, which none of us here will question or challenge, you believe that that's an issue that should be reserved to God himself or --

A. Uh-huh.

Q. -- himself or herself or itself.

A. Uh-huh.

Q. And in light of those religious beliefs and understanding that as a juror one of the possible verdicts that could be rendered in this case, depending on the evidence and how these issues are answered, is the death penalty, tell us what consternation do you have with being called upon to do that as a juror?

A. I mean, I wouldn't -- I don't suppose I would be, like, opposed to doing it. I wouldn't refuse. I wouldn't exactly be thrilled about having someone's life in my hands, but, I mean, I would consider the case. I mean, I would -- I mean, it would -- I wouldn't take it lightly, for sure --

Q. Uh-huh.

A. -- I mean.

Q. Okay. Well, I'm going to tell you, I think all of us here are reassured of the fact that you're not going to take this lightly, because I'll tell you, none of us sitting here, whether it's the lawyers from the State or the Defense, take anything lightly at all because it is our firm belief that we have the quality and quantity of evidence that could convince 12 fair and impartial jurors that what we would like to see ultimately is someday in Huntsville that young man is strapped to a gurney and is executed for the crimes we believe he committed. Okay? Of course, whether or not that happens depends on whether you're a juror and the other 11 jurors, if you're one of those, and how these issues are answered.

Now, and we know it isn't anything that's lightly -- to be taken lightly, but we respect the fact that you and many other people have religious beliefs that make this difficult for them or make it where they can't do it. And so what we're trying to determine here this morning is in light of your religious beliefs and the fact that -- and we'll talk about the many times you mentioned in your questionnaire where you believe only God should have the right to do that, and knowing that, if you become a juror, you will be faced square with that issue. Here's my religious beliefs on one hand. Here's what I swore to do as a juror. Can I really do it? And that's a question for you.

Because if you tell us, look, you know, I have friends of mine who are professionals and we sit there all day and we debate the death penalty as an intellectual exercise. Okay? And some of them voice their opinions, say, look, you know what, I think it's necessary, but I can't do it for these reasons. And I

respect them for that.

I'm sure that you understand that where you're sitting today and if you become a juror, it's not going to be an intellectual exercise. It's going to be for real.

A. Right.

Q. And you'll have to answer the question if we prove to you beyond a reasonable doubt he's guilty of the offense of capital murder and you answer yes to Issue Number 1, yes to Issue Number 2, and no to Issue Number 3, he will get the death penalty. And the question for you is: Will you be able to take part in a process that you know ultimately could lead to the death of that young man sitting at the end of the table?

A. I could --

Q. Okay.

A. -- if necessary.

Q. I see that you're -- we're just talking here now and tears are welling up in your eyes, so you need to tell us now --

A. Oh.

Q. -- if you can't do it.

A. That's actually probably fatigue --

Q. Okay.

A. -- and my allergies actually.

Q. Okay. All right. Now, so by you meaning that it's a necessary evil, you mean that it is something that you wish we didn't have, but since we have it, "it" meaning the death penalty, that you're fine -- you're fine with it?

A. Yes.

Q. Is that what you mean by that?

A. Uh-huh.

Q. Is that yes?

A. Uh-huh.

Q. All right. If you could turn to page 2 of your questionnaire, please, the second question there which asks about any moral or religious or personal beliefs that would prevent you from sitting in judgment, you put no, but then you put the words sitting in judgment in quotation marks. Why is that?

A. I guess just my feelings that God's the only person who should ever sit in judgment of another human.

Q. Okay.

A. So I've never seen it in black and white like that. I just -- yeah, I just put it in quotes for however you-all presented it.

Q. Okay. Now, and you say that. Okay. And, in fact, you go on to say in the very same sentence there, that while you don't have a problem with it, you do go on

to say, but I do believe, and you included the word only God should sit in judgment of another human being. First question: Do you see your responsibility, if you're a juror, if you're picked as a juror in this case, that you'll be sitting in judgment of the defendant?

A. Yes.

Q. You do?

A. Uh-huh.

Q. Okay. How do you rectify for us, then, if you acknowledge that you'll be sitting in judgment, but you go on to say that only God should do that, how do you rectify those two things?

A. I guess ultimately that, you know, me and the other people on the jury might, you know, sit in judgment of him on his days here on earth, but ultimately God's the one who judges him for his -- you know, the rest of his life, so, I mean, I may have whatever hand in what goes down here on earth, but, I guess, ultimately, I mean, God decides someone's eternal judgment, so...

Q. Okay. And so, yes, you understand that you'll be sitting in judgment, you can do that; but you believe in the eternal sense, that God will be the one who will actually be sitting in judgment of his soul?

A. Correct.

Q. Now, you understand that you as a juror could be sitting in judgment of his life, correct?

A. Correct.

Q. Okay. And you're saying that when you take that oath as a juror that you will be able to render a true verdict according to the evidence and the law as given to you?

A. Correct.

Q. All right. Now, you go on there again on page 2, as you repeated on page 1, the best argument for the death penalty, and again you use the word necessary evil.

A. Uh-huh.

Q. And then on page 2, when you're asked for the best argument again, once again you repeated, no one except God should do it.

A. Uh-huh.

Q. And so I'm only on page 2, and thus far, you're pretty firm and clear that this is -- this process here, the death penalty or deciding upon another person's life, is something that should be entirely reserved only for God. Am I correct?

A. In a perfect world, yeah.

Q. Okay. All right. But I'm assuming you understand that this is an imperfect world in which we live, and given the imperfect world in which we live, if

you're called upon to do it, yes, you can, you can do it?

A. Correct.

Q. What church do you belong to?

A. I was raised Lutheran, but in high school, I stepped away from that church and actually spent some time really not attending church.

Q. Uh-huh.

A. Moved down here to Dallas three years ago, and I guess only in this past year started attending church again. And I go to either IBC, Irving Bible Church, or the Village Church, and they're both nondenominational Christian churches.

Q. Okay. The Village Church, is that in Highland Park?

A. Yes. Uh-huh.

Q. Okay. Either of those two churches, do you know what their official position is on the death penalty?

A. I don't. I do not.

Q. Okay. Do you attend Sunday school classes there at either one of the churches?

A. Huh-uh. I don't.

Q. Do you have conversations with anyone there like a deacon, an elder, the pastor, the leader, or anything like that?

A. I have not.

Q. Okay. Do you have friends there at the church, either church, that you look up to, you respect because of their -- either their position in the church or their positions on certain issues?

A. No, not really. I mean, I only recently started. It's been about a year now since I've been going to IBC, but I only recently started going to the Village a couple months ago, and I just -- I usually go and I attend service and leave, so...

Q. Okay. All right. My -- recently -- my ex-wife is also an RN. Do you have other friends who are RNs or colleagues that you have had conversations about the death penalty with?

A. I've not really. Huh-uh.

Q. Okay. This is your first time ever being asked to consider the death penalty --

A. Yes.

Q. -- in this context here?

A. Yeah.

Q. Now, between April 24th and today, and on April 24th, I believe Judge Snipes made it clear from the questionnaire and the talking to the jurors that this is a death penalty case. Okay? Did you understand that?

A. Correct. Uh-huh.

Q. Okay. Between April 24th and today, what

thought have you given to your position on the death penalty? Where do I stand on it?

A. I thought quite a lot about it that day like after I got done filling out the questionnaire but only really just kind of briefly, I mean, on and off. I really had kind of forgotten about it until I got the phone call again about coming in --

Q. Uh-huh.

A. -- in here. But, I mean, I was pretty satisfied with my answers. I mean, when I sat down with the questionnaire originally, like, I had to skip like all the questions until I could like sit and really think about it for a while because I hadn't had to think about it for a long time, but I feel like, I mean, I got my -- how I feel across on the questionnaire fairly well, so I don't feel that -- I mean, I don't feel that my stance or my opinions have changed any since --

Q. Okay.

A. -- the time I filled out the questionnaire.

Q. All right. So between April 24th, you said you didn't think about it, but you thought about it when you got the phone call. It that because you didn't want to think about it because it was too much of a weighty matter or you were too busy with other things?

A. Just other stuff going on, yeah.

Q. Okay. All right. And when you got the call from, I believe, Sharon, you then thought about it again?

A. Uh-huh.

Q. Okay. Would you turn to page 4 of your questionnaire, please. The very top where you're asked the question about what crimes do you think the death penalty should be available in Texas, you mentioned there are certain heinous -- heinous (pronunciation)? Heinous?

A. Heinous.

THE COURT: Heinous.

Q. (BY MR. HIKEL) -- or malicious crimes, and then you give us some examples. Are those the examples of which you meant by using those two terms, malicious or heinous crimes?

A. Uh-huh.

Q. Taking the lives of innocent victims, sexual harassment, and rape, all with intent to do these things?

A. Uh-huh.

Q. Was that yes?

A. Yes.

Q. I'm only asking because she has to --

A. Yes, I know.

Q. Yeah. Okay. I must tell you that in Texas, we have -- the death penalty is reserved for certain kinds of crimes. In a way, you're correct. If someone is

intentionally killed in the process of being raped, an aggravated rape and the person is killed, the person who committed that crime could be charged with capital murder. If a police officer's killed in the line of duty, intentionally or knowingly, or a child under six years, or multiple people in the same criminal episode or multiple people pursuant to the same common scheme, those are all cases where a person who commits those crimes will be eligible for the death penalty. It's a capital murder case.

In this particular case, I don't know if you read in your brochure that what this young man is charged with is capital murder in that he's accused of committing a robbery or attempt to commit a robbery, and in the process of doing that, he intentionally killed someone. Okay? And I know we use the word "intentionally," and what that means basically is it was the person's conscious objective to achieve the result. It wasn't an accident. It wasn't a mistake. That's what I wanted to do and that's what was done. Okay?

Now, I said that to say on page 4, looking at your second question, you mentioned there, do you agree, and you were asked this whole long question there, and you say robbery is certainly on the lower end, so to speak. What do you mean by -- what did you mean by that?

A. I mean, honestly, I was kind of surprised that -- I mean, I knew to be charged for capital murder, you know, you had to intentionally kill someone and along with some sort of secondary crime.

Q. Right.

A. I was just kind of surprised that robbery could be considered a secondary crime, because I don't -- I mean, I guess, maybe it's so everyday, it happens a lot --

Q. Uh-huh.

A. -- and it doesn't -- I don't know. I don't really know how to describe it. I was just not really sure that -- I mean, I guess robbery is an offensive enough crime to warrant that.

Q. Okay. Well, first of all, tell me what is your understanding as to what robbery is. When you say -- when you say it happens every day, what is your understanding of what a robbery offense is?

A. I mean, I guess when, I mean, places of business or homes or, you know, people are, I guess, stood up and things that belong to them are taken by force --

Q. Okay.

A. -- or --

Q. Or?

A. -- with violence.

29

Q. Okay. And I mentioned to you earlier that under Texas law and in this specific instance that the defendant is charged with capital murder because we've alleged that in the course of a robbery, the same thing where you mention here, it's in the lower end and you're surprised by it, in that he committed the offense or attempted to commit the offense of robbery, and in the course of either doing that or attempting to do that, he intentionally killed someone.

Now, in light of your view that you were surprised with robbery being one of the offenses eligible or where a capital murder can -- it can be in the context of a capital murder, tell us what are your feelings about that position that you have knowing that in this specific case, that's exactly what we're talking about?

A. Oh, I guess I would just need to know more of the details of the actual crime.

Q. All right.

A. I don't -- I mean, I feel like a lot of that would be circumstantial --

Q. Uh-huh.

A. -- just depending on exactly how things were done, and why and where and the details.

Q. Okay. Tell me what are the details you think you would need to know before you can tell us how you

30

feel about the fact that -- not necessarily whether he's guilty or not, but just how do you feel as a potential -- as a juror that Texas law allows for the death penalty where someone is intentionally killed in the context of committing or attempting to commit a robbery? I mean, what else would you need to know that would tell us what your position is on that?

A. I guess motive and the manner in which it was done, if there was a lot of violence or weapons involved, and, you know, a lot of maybe damage to property --

Q. Uh-huh.

A. -- and stuff, you know, if it affected a lot of innocent people.

Q. All right. Well, in this case, we're only seeing one person, the indictment is there, and you understand by robbery, it's simply taking of another person's property where either violence is accompanied by the taking of the property or the threat of violence. Okay? And whether the property be a pen or the property be a car or anything, it's still the person's property.

Now, when you say you need to know the attendant circumstances, do you have some idea in your mind as to how important you think the property ought to have been before you can say, yeah, I believe that's a robbery, and if a death occurred, then I can follow the

31

law and render a true verdict according to my oath?

A. I mean, I guess, I don't think -- I mean, I think really the robbery -- I mean, I'm curious. I would like to know the details in order to see the whole picture, but I think it's secondary to the fact that someone was murdered.

Q. Uh-huh.

A. So I'm not overly concerned with the details of the robbery --

Q. Uh-huh.

A. -- as long as, I mean, the facts are there and it did occur in conjunction with a murder.

Q. Okay. Well, you know right now my colleague is sitting right here, Andrea Handley. And Andrea Handley is a senior colleague of mine, and I want her position at the DA's office. And if I get up in front of all these people here and I kill Ms. Handley, I stab her like 50-something times and I laugh about it, and finally, you know, I say, okay, I was just sick and tired of her bossing me around, I didn't like her anyway, and I laugh about it. I say, I meant to kill her. Do you understand that as bad as that particular crime is, it is not a capital felony under Texas law? Do you understand that?

A. Correct.

Q. Okay. If, on the other hand, she's not wearing

32

a watch, but, you know, she has $5 in her purse, and I'm flat broke. Okay? She makes more money than I do, but she's senior to me. And I kill her for the price of taking her $5. Do you understand that that offense, I could be charged with capital murder even though it's only $5?

A. Yes.

Q. Now, do you have an issue with that, the mere fact that it was $5 that I took from her?

A. No.

Q. Okay. So the value of the property in question or if it be -- and by value, I don't mean necessarily the psychic value but the monetary value attached to the property that was taken, you don't have an issue with that, do you?

A. No.

Q. Okay. All right. We ask you there on page 4 about the scale using 1 to 10, and you came up with a 6. Tell us, what is the thought process you did to come up with the number 6?

A. I guess that it -- it leans more towards the end of my believing that it's, you know, something that's important to engage in --

Q. Uh-huh.

A. -- but that, I mean, I'm not overly sold on the

idea because of basically my spiritual kind of beliefs.

Q. Uh-huh.

A. So 6 just seemed great enough to show you that --

Q. Uh-huh.

A. -- I mean, how I feel that I do believe it is something that should and does occur, but that it's not something I'm, you know, entirely sold on.

Q. Let me ask you something, Ms. Kunard. If you were the governor of Texas for a day, we said, you know, you're a smart young lady and you become the governor for one day, and as part of the process, you're given the choice that you can change, do away with, amend, or change any law in the State of Texas, what would you do with the death penalty?

A. I don't think I would change it.

Q. Okay. Would you increase more crimes or decrease the number of crimes that are eligible for it or leave it just as it is?

A. I would probably just leave it as it is because I don't feel like I know enough about it in one day to --

Q. Well, assuming you have your advisors and they will sit and talk to you about here's the law in Texas --

A. Uh-huh.

Q. -- here are all the crimes where a person can get the death penalty or capital murder.

A. Uh-huh.

Q. Once you get that information, would you like to say I would like to change some of them?

A. No, I don't think so.

Q. Okay. Tell us something, what is it about sexual harassment, the offense, the incident of sexual harassment that you believe is worthy of the death penalty? What is your thought process on that one? That's on page 4 at the top.

A. Well, I mean, right. I mean, not just sexual -- sexual harassment on its own. I mean coupled with, you know, other sort of criminal acts, certainly probably not on its own, but I guess just because it affects a person's dignity and their life in more than just a physical way --

Q. Uh-huh.

A. -- so I think that it's more detrimental to an individual's, you know -- I don't know.

Q. Well, what would be the other attendant circumstances you would want along with sexual harassment to say, ah-ha, if I see sexual harassment plus this, whatever this is, that should be a death penalty?

A. Well, I mean, probably murder or, I mean -- I mean, I know it doesn't work this way, but, I mean, if it

were somebody who was like a repeat offender and sexually harassed more than one, you know, individual --

Q. Uh-huh.

A. -- for, you know, an extended amount of time, I would think that that would be --

Q. Okay.

A. -- appropriate.

Q. So, in other words, the only other attendant circumstances you would want is, here is the act of sexual harassment --

A. Uh-huh.

Q. -- even though no one is killed, but if it's done by someone who is a repeat offender or to multiple people, you would want that person to be charged with a capital murder where he is eligible for the death penalty, for sexual harassment if he's a repeat offender or multiple victims?

A. Yeah.

Q. Okay.

A. I would guess.

Q. Can I ask you why? What is it about sexual harassment? Because you have sexual harassment and you have rape.

A. Uh-huh.

Q. Is there anything in particular about a sexual harassment incident, because it's not a crime in Texas. It violates a Federal statute, Title VII, but it's not a crime.

A. Right. Well, I mean, I probably -- I mean, I don't even necessarily just mean sexual harassment. I mean more along the lines of that leading into rape or some sort of a sexual violent, like, act, not necessarily just sexual harassment just in and of itself as a standalone entity. I mean if it would instigate or lead into rape or some sort of other sexual offense like that.

Q. Okay. So that person should be eligible for a death penalty?

A. Uh-huh.

Q. Okay. Would you turn to page 5 of your questionnaire, please. It's interesting that you mentioned earlier that you have strong Christian beliefs that causes you some consternation with the death penalty. On page 5, you're asked this concept, which I believe is a Biblical one, do you believe in an eye for an eye, and you said no. Tell us why you said that.

A. I guess in other Biblical terms, I think you should turn the other cheek. I mean, just because somebody does something bad to you doesn't mean you should turn around and do it to them. I don't think that that's the way things should work, so...

37

Q. Okay. And so even though -- so you believe it's important that we turn the other cheek?

A. I mean, I think it's a personal choice. I'm not saying that the State of Texas needs to do that, but just a personal choice in your life. I don't think that if someone does something wrong to you, that means that you should turn around and wrong them in return.

Q. Okay. All right. Same on page 5, when you're asked about the purpose of life without parole, what does it serve. You said, I believe it would be punishment, but you said while absolving others of the burden of taking another's life. What do you mean by that?

A. I mean I don't think anybody enjoys sitting on a jury and condemning someone to -- to death. I don't think there's -- I mean, ultimately, I think as humans we all -- I mean, I don't think anyone's ever a hundred percent comfortable with that. It doesn't matter how many times you do it, so, I mean, I do think that it's something that if, you know, people take their job seriously as jurors or attorneys or whatever, that it is probably something that's difficult to, you know, to swallow sometimes.

Q. Uh-huh.

A. So it would be nice if we didn't have to deal with such weighty issues.

38

Q. But you see that as being a burden more than just simply being a responsibility as a juror? You see that as a burden?

A. I think it can be. Uh-huh.

Q. Okay. Do you think if you were to become a juror that you would see it not as a responsibility to follow your oath, but it would be as a burden because --

A. In some ways.

Q. Because it's interesting you said it absolves others, but if you become a juror, you understand that you will become the other because --

A. Right.

Q. -- you will be the one making that decision?

A. Correct.

Q. Okay. But in your mind, it will be a burden to do that, to follow that oath?

A. In some ways, yes, just because it goes against my ultimate belief that I don't really have the right to judge someone, but that doesn't mean that I may not have to at some point or that I wouldn't be able to if I needed to.

Q. Okay. All right. Now, let's pretend, okay, you have become a juror and we, the State, have to prove to you beyond a reasonable doubt that the defendant committed the offense of capital murder, in that he

39

killed someone intentionally in the course of taking a person's property. That's stage one of the trial.

A. Okay.

Q. And then you come back in and you have to answer these special issues here. You only -- I have to take them in the order as they are presented. Consider 1, then 2, and then 3. And you only get to 2 if you answer Special Issue 1 yes. You only get to Issue 3, if you answer this Special Issue yes. In other words, if you answer either one of them no --

A. Uh-huh.

Q. -- 1 or 2 no, then you stop. The trial is finished. So that if a person is convicted of capital murder, what is the automatic sentence that he gets after being convicted of capital murder?

A. The automatic sentence?

Q. Uh-huh.

A. I think isn't it life without parole?

Q. Okay. All right. Life without parole. You are asked as a juror to presume that the answer to these questions 1 and 2 is no until we, the State of Texas, prove to you beyond a reasonable doubt that the answers to 1 and 2 ought to be yes.

A. Okay.

Q. Yes, that there's a possibility he'll commit

40

crimes of violence in the future, crimes of violence that will constitute a continuing threat to society. Okay? If he's convicted of capital murder, where would you expect his society to be?

A. Where would I -- I'm sorry?

Q. If the defendant, if any defendant is convicted of capital murder --

A. Uh-huh.

Q. -- and you have to answer this question, would he be a continuing threat to society, what society are we talking about there?

A. If he's been convicted? Well, I guess, the society that he'd be living in, in prison, I guess.

Q. Okay. Do you believe that as a juror, you can -- if you found someone guilty of capital murder, meaning that you have found that he has intentionally killed someone, taken their property, regardless of the value of the property, that he -- that he intentionally killed that person for that purpose, do you believe that you can ever have any basis of answering Special Issue Number 1 no, or do you think it's automatic that the answer would be yes?

A. Probably automatic.

Q. Tell me why would it be automatically yes. Is it because of the nature of the crime?

41

A. Yeah.

Q. Now, you do understand that the law is that we, the State, have to prove to you beyond a reasonable doubt that the answer is yes, meaning that the same way if he doesn't -- the same way today you are to presume he's innocent of what he's accused of doing, you have to give him the same presumption when you come to Issue Number 1, which is that starting off, the answer is no, the State, you prove to me beyond a reasonable doubt that the answer is yes. You're saying, though, that if you find someone guilty of intentionally killing another person for the purpose of taking that person's property, regardless of the value of the property, that you would automatically answer Special Issue Number 1 yes?

A. I mean, it wouldn't be automatic. I would want to know -- I mean, I would want to know the details of the crime and the character of the person, and I would just -- I would want to know some more of the circumstances surrounding the --

Q. Uh-huh.

A. -- the actual act. I don't believe that if one person does something once it necessarily means they're going to do it again, so...

Q. Okay. Because you do understand that before you can find him -- before you can get to Issue Number 1, you

42

have learned about the attending circumstances of the crime, because that's why the -- that's how you answered the question, did we prove to you beyond a reasonable doubt that he committed capital murder. Yes, we proved it, or, no, we haven't.

I mean, for example, we allege in the indictment that he shot and killed someone with a deadly weapon, a firearm. If in the middle of the trial, though, the M.E. -- well, the M.E. comes to court and testifies that while this person was, in fact, killed, and the defendant gets up on the stand and says, oh, yeah, I killed him, I meant to kill him, I wanted to take his property, but the M.E. said, and that's why -- and, you know, and the M.E. gets on the stand and says, yeah, the person is dead, but he wasn't shot, he was stabbed to death. And we have alleged in the indictment that he was shot, okay, but the evidence proves he was stabbed, what verdict would you render in that situation?

A. I would say yes.

Q. Would it be guilty or would it be not guilty of the crime?

A. Oh, guilty.

Q. Tell me why. Because, remember now, we have to prove to you what we allege in the indictment. We alleged that the defendant shot and killed the person.

43

A. Uh-huh.

Q. Medical examiner comes to court and testifies, sure enough, the person is dead, no dispute there.

A. But they were stabbed.

Q. But the cause of death wasn't a gunshot. It was a stab wound. We've alleged gunshot. What would your verdict have to be in that situation?

A. I don't know that I could come to a verdict because it doesn't sound like the evidence goes with what y'all are trying to prove.

Q. Right. So in that case, you would have to find him not guilty because --

A. Right.

Q. -- because we didn't prove it --

A. Right.

Q. -- correct?

A. Right.

Q. Would you have any problem with doing that?

A. No. Huh-uh.

Q. Okay. All right. Let's jump to Issue Number 2. There's a whole lot of words there that the legislators have written for us, Ms. Kunard, but basically what it is, is we call it in Texas the law of the parties. This is what it says: My colleague and I decide that we want to go rob a bank. We're Government

44

employees. We don't make enough money. Okay? And we're sitting at her kitchen table and we made up -- make up this plan. Because I'm bigger and I'm badder, I'm going to go in the bank. She's going to stay outside and just rev the engine waiting for me. Okay?

And she said, okay, just go in there and rob the bank and come back. Get as much money as you can. I'm walking towards the bank. When I get to the door, it dawned on me, oh, I forgot my mask. She said, oh, not a problem. Just take care of it, is what she tells me. I go in there and it's lunchtime. There's two clerks in there. I kill them, and I take the money. Okay? What crime can I be charged with for killing these two bank employees and taking the money?

A. Well, same thing we're talking about today, right?

Q. Capital murder?

A. Capital murder.

Q. Okay. My colleague who never came into the bank but sat outside in the car waiting to rev -- rev the engine, what crime can she be charged with?

A. I'm not exactly sure how that works. I mean, I know she would be associated with it. It would be some kind of an accomplice, but I'm not sure --

Q. Okay.

45

A. -- exactly how the law works in regards to that.

Q. Texas law says that she can also be charged with the same crime that I can --

A. Okay.

Q. -- capital murder, because either she aided, abetted, she solicited, encouraged, directed, aided or attempted to aid me in the commission of the crime. We talked about it. We planned it. You know, she knew I was going in there. I told her what I was going to do. Now, she can be charged on what's called the law of parties for the same crime I can be charged with, even though I did the killing. Do you have an issue with that particular law where in light of your beliefs and everything, I kill the person, but my colleague who never came into the bank can also, is also, can be charged with capital murder whereby he or she can get the death penalty? Would you have a problem in following that law if that law becomes applicable in this particular case?

A. No, because she still had the malicious intent to do the same thing that you did, so...

Q. Okay. So you'd be fine and be able to follow your oath?

A. Uh-huh.

Q. Was that yes?

A. Yes.

46

Q. Okay. All right. If you answer that question yes, we get to the final one, Issue Number 3, which says you consider all of the evidence, all of it. And it's like your last chance to say, okay, because if you say yes to 1, yes to 2, the defendant is sitting square on the death penalty. The presumption that life without parole has gone away because you have found he's a continuing threat to society. You have found that whether he's a party or a principal, in other words, the triggerman with the gun, depending on if you answer that yes, it means that he has now squarely earned a death penalty sentence.

But as a jury, you have one last chance to say, you know what, okay, let me look at the crime itself, his background and everything, and ask myself -- and it can be anything, his age, how he was raised, anything, and you ask yourself this question: Do I find that all those things about him rises to a level where it's not just mitigating, but if you can look on the board there with me, the sixth -- can you see there --

A. Yes.

Q. -- by the Judge, the third one --

THE COURT: Oh, excuse me.

Q. (BY MR. HIKEL) -- right before the word "mitigating," what is the word you see there before

47

mitigating?

A. Sufficient.

Q. Okay. What does that mean to you?

A. I mean, enough.

Q. Okay. All right. So not just that things may be mitigating, age or how he was raised or his morals, all those things, but does it rise to the level where it's sufficiently mitigating --

A. Uh-huh.

Q. -- that would cause me as a juror to say I don't want to give him the -- I don't want to give the death penalty. I don't want to answer this question no. I want to answer this question yes. And if I answer this yes, what I've done is reverse what I've done here in 1 and 2 and given him life without parole. Okay? Do you understand that?

A. Yes.

Q. Okay. Do you have any questions of me about how this works or anything like that?

A. No.

Q. Between your sister and your dad, who has more influence on you in terms of your belief about the death penalty and why?

A. I'm not really sure that, I mean, either one as an individual. I'm not really -- like I said in my

48

questionnaire, I've not really talked to my family much about this in depth and especially not recently.

Q. Uh-huh.

A. I mean, probably my dad's job as a police officer is more influential than my sister's job as a social worker, but I can't say that one or the other of them as individuals influenced me more than the other.

Q. Okay. Your sister, is that the same sister with the psychology degree that works in the mental health field?

A. Correct. Well, she used to, yeah. Uh-huh.

Q. Okay. All right. One last thing I want to ask you, on page 11, and I'm just about out of time, page 11, you mentioned an interesting concept there where we asked you the question, regardless of what the Judge says the law is, the jury should do what they believe is the right thing. And you used an interesting concept called internal moral compass. What does that mean?

A. I guess, I mean, ultimately, we as individuals stand alone with our own beliefs and what we believe is right and wrong, and while we can listen to people, you know, who may know more about a certain topic or, you know, something more than we do, I mean, ultimately, we're guided by our own choices and our beliefs and what we think is right or wrong.

49

Q. Uh-huh.

A. I mean, I don't think you should be -- I guess I'm just saying you shouldn't be influenced by other people's, you know, decisions or opinions or beliefs. You know, you should have your own.

Q. Did you understand that that question is asking you not just about any person but about the Judge --

A. Uh-huh.

Q. -- who tells you what the law is. Are you saying that by your answer that you believe there's room for you to disregard what the Judge said and let your internal compass guide you?

A. Not if it's an objective statement that has to do with the law.

Q. Okay. Well, you understand that's what it was asking you there, right?

A. I guess I didn't know. I didn't understand exactly that's what it was saying.

Q. Okay. Now understanding what it's asking you about the law, what would your answer be now that you're fully aware of what the question is asking you there?

A. I mean, I would -- I would agree with it. Oh, no, I would disagree with it.

Q. Okay. Tell me why.

A. I mean, I think if it's an objective thing, then

50

it's black and white, and if it's, you know, what the Judge -- I mean, it's not an issue of whether or not I believe, you know, the defendant did what they did or if it deserved the punishment, it's just to me that's an objective statement about, like, regarding the law, not necessarily about what I feel --

Q. Uh-huh.

A. -- like, personally about whether or not someone like what level of punishment they should receive from a crime that's committed.

Q. So meaning that you, once the Judge gives you the law, because you will be given the law --

A. The law --

Q. -- as a juror.

A. -- is the law.

Q. Right.

A. It's black and white.

Q. That you understand you'll be guided by the law according to what your oath says, the law and the evidence, rather than your own internal moral compass?

A. Correct.

Q. All right. Do you have any questions for me, Ms. Kunard?

A. I do not.

Q. Okay. Okay. I think I'm -- yeah, an

51

interesting question from my colleagues. How would your -- how would your religious convictions influence you in the process of deciding Issue Number 3? Take your time and look at it and tell us what you see in Number 3.

A. I mean, I can understand how I could say yes to the first two, and then based off of, you know, the decision-making process regarding Special Issue Number 3 that I could backtrack, like you said --

Q. Right.

A. -- and, you know, you know, choose life in prison without parole over the death penalty.

Q. Right. But what I'm asking, I guess, is tell me, okay, you are sitting in a room --

A. Uh-huh.

Q. -- you're a juror, you're one of the 12 we've been discussing. And we respect the fact that you have very strong religious convictions. What we're trying to determine is, tell us what would be the interplay with you and your religious beliefs and everything as you go about trying to answer Special Issue Number 3? Because you've said to us, I don't agree with eye for an eye, which is a religious concept --

A. Right.

Q. -- but I believe in the religious concept of

52

mercy or those kinds of things like that --

A. Right.

Q. -- and all that. Tell us how does all that come into play as you seek to answer Issue Number 3?

A. I guess just that, I mean, I would like to be able to take into consideration, you know, a person's character and background and maybe why they did the things they did, and if you can kind of determine -- I know it's a difficult thing to determine if someone would be a repeat offender, you know, you know, I mean, I would like to consider all those things before I would sentence somebody to death, but I'm -- I mean, if -- if like it says, that there's sufficient evidence and belief that, you know, it's -- it warrants the punishment that it does, then I wouldn't -- you know, I wouldn't have an issue going forward with that.

Q. So you can say yes, he's a future danger, yes, to that one, Number 1?

A. Right.

Q. And still go back and say yes to Number 3, also, that even though he is a future danger, he would commit crimes, be a continuing threat to society, he did cause this person's death intentionally for property, but I can still go back and look at Number 3 and say, yes, he should live and not die?

A. Probably the likelihood of being able to do that is slim, because, I mean, if I said yes to Number 1, then I don't think that necessarily there's probably much of a way to be able to backtrack your way out of -- out of it, but, I mean, I'm not saying there isn't a chance.

Q. Right. Now, what you've been saying now, you never get to 3 unless you answered yes to 1 --

A. Right.

Q. -- and yes to 2.

A. Right.

Q. So it's not if I say yes. You will have to say yes to 1 and 2 to get to 3.

A. Correct.

Q. Okay. And you can say yes to 1, yes to 2, he intentionally killed this person, and still then go back on 3 and say, but even though I say yes to 1 and 2, I want to say yes to 3 also and not let this person get the death penalty?

A. Probably. I mean, I might be able to.

Q. You might be able to?

A. Uh-huh.

Q. You're going back to Kansas City on vacation and you get onto the plane and ask the pilot -- and you're walking by the pilot, you hear the pilot and the co-pilot having a conversation. And the pilot says, you know what, guy, it's my first time flying. I'm not sure I can really do this, you know, but guess what, I'm going to really try my best and fly this plane to Kansas. And you overhear this conversation. Do you get on the plane to go to Kansas with the pilot flying the plane?

A. No.

Q. You wouldn't do that, right?

A. Especially because I have a fear of flying.

Q. Okay. Okay. Finally, and then I'm done, as you look at Issue Number 3, do you believe that because of your religious values, okay, and because of your belief that you believe life without parole is almost equivalent to the death penalty, do you believe that your religious beliefs obligate you to answer Special Issue Number 3 yes?

A. I don't feel obligated, no.

Q. Okay. But it will weigh on your process of deliberating, deciding whether you should answer yes?

A. Yes.

Q. But you don't know as you speak here to us today to what extent it will weigh on your -- your religious beliefs versus the evidence and all those things; you don't know what interplay would be between your religious beliefs and all the evidence, the circumstances of the offense, the defendant's background, and all those

things, his personal moral culpability, you don't know to what extent those two will be interplaying, beliefs versus those things?

A. I mean, no, if I -- if I feel like there's sufficient evidence, then --

Q. Right.

A. -- I mean, like I said, I wouldn't -- I would be able to do whatever was necessary to, I mean, abide by the law. I'm not saying that it wouldn't -- I mean it wouldn't still be in the back of my mind, but, no, I mean, if I have the sufficient evidence like it says here --

Q. Right.

A. -- then I would be able to go forward with whatever sentence.

Q. Okay. Ms. Kunard, thank you for your time, ma'am.

A. You're welcome.

THE COURT: All right. Thank you. Ms. Kunard, would you like to take a short recess, get a drink of water or anything?

VENIREPERSON KUNARD: No. That's okay.

THE COURT: You're good to go?

VENIREPERSON KUNARD: Yeah.

THE COURT: Okay. Mr. Parks.

MR. PARKS: Thank you, Your Honor.

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. PARKS:

Q. Ms. Kunard, I'm Doug Parks.

A. Nice to meet you.

Q. And I'm not going to reintroduce everybody. I know you're tired and you've been up a long time. I'm going to try to hold my portion of this to about 20, 25 minutes, but I'm not promising I'll be able to do that.

A. Okay.

Q. But I'm going to try and get you on out of here so you can get some rest.

A. Thank you.

Q. Let me start this way. We've been talking about eye for an eye. The State of Texas doesn't believe in an eye for an eye, at least not as that is explained to us by many prospective jurors which they take to mean a life for a life. If you take a life, you forfeit your life. The State of Texas doesn't take that attitude. If it did, we wouldn't be bothered with all of these questions and these issues that we're talking about today.

The position that the State of Texas takes is that the appropriate punishment for capital murder in this State is life without parole, and it is appropriate

57

to execute only those few incorrigibles who cannot even be incarcerated without further violent acts towards others or the likelihood of that happening. So this process is designed to identify, so far as we're able to, those persons that the State of Texas has singled out for execution from those that are not, from those for whom the life without parole punishment is, in fact, appropriate. Okay? That's the kind of default position, to use the computer term. Are you with me on that?

A. Uh-huh.

Q. And we all use terms, everyone that comes down here almost without exception states to some extent or another basically what you have said to us regarding the death penalty; that is, on the first page here, you put the death penalty is sometimes a just punishment for crimes committed. And on the second page, down toward the middle, you indicate some actions are deserving of -- of this. Nothing wrong with those positions.

The problem with them, though, philosophically is this: What is just for one might not be just for another. What's deserving for one might not be deserving for another. So the problem that our legislators had to try to solve was how do we objectively try to determine which capital murderers are executed and which capital murderers were designated to die in the

58

penitentiary whenever at whatever cause.

And let me just say, Ms. Kunard, that life without parole in the State of Texas means exactly that. I know that you've expressed some concerns that people sometimes get out of the penitentiary early and go out and commit other offenses, and I'm not going to get into that debate with you. I just want you to know that for purposes of answering these questions and answering our questions that life without parole means exactly that, life without parole, and that the law in the State of Texas is always satisfied with a verdict of life without parole.

The State of Texas is not looking for jurors who are anxious to give the death penalty. Okay? We're looking for jurors who can objectively determine whether or not the defendant is, in fact, guilty, because that's the first hurdle, if you will, that the prosecution has to get over before we can even start thinking about whether or not a person will receive the death penalty. And it may be that they can do that. It may be that they cannot do that. Certainly we're not conceding here that they can get a guilty verdict for capital murder in this case.

We're talking about these issues simply because this is the only time we can talk to you about

59

them. And you shouldn't take that as any indication we believe -- you know, we always make this little statement, the State always makes this little speech that they've got, they believe, the kind and type of case that will justify a death penalty. Well, that, and we often say, and a buck sixty will get you a cup of coffee at the concession stand. The same as my opinion about what is the right thing and a buck sixty will get you a cup of coffee. We're advocates. It's our job to advocate for our particular position. It's your job as a juror to be the judge of the facts and not take one side or the other side and to objectively as possible make a determination whether the State has proven that which the law insists that it must do. Does that make sense to you?

A. Uh-huh. Yes.

Q. We can't tell, we know -- I'm not trying to pull the wool over your eyes. We know what the facts in this case are. We might dispute what they've got, but we can't tell the jurors what the facts are and so that you as a prospective juror don't have any idea, can't have any idea what would be contested as far as the guilt/innocence stage of the trial is concerned. Okay? You haven't heard any evidence. You don't know.

A. Right.

Q. All I can tell you is that it is the State's

60

responsibility to prove everything they have put in that indictment beyond a reasonable doubt, just like Mr. Hikel told you.

A. Okay.

Q. And it's not up to you to help them or it's not up to you to help us.

A. Uh-huh.

Q. It's did they prove it, and the example he gave was -- they -- they choose what they put in there. That indictment is essentially written by the prosecutors. So the law says, you say what's in the indictment, now you prove what's in the indictment. If you don't, tough luck. Make sense to you?

A. Yes.

Q. And we don't know in any individual case whether it's identity that's at issue. In some cases, it might be whether or not the defendant is legally insane. It might be in some cases whether or not a defendant acted in self-defense. It might be in other cases what we call the culpable mental state.

You'll notice in the indictment the State must prove that Mr. Broadnax intentionally caused the death of another person. There are four culpable mental states in Texas: intentional, knowing, reckless, and with criminal negligence. I'm not going to go into

detail with you about that. If it becomes important later on and you as a juror have to make a decision about a culpable mental state, then the Judge, in the Court's Charge, will instruct you about that and you will have all the law you need to know in order to make the proper decision in the case.

The point is that the law allows either side to offer evidence of the state or condition of the defendant's mind at the time of the offense if there was an offense committed. Okay? So that the jury could make a determination if it is at issue what sort of culpable mental state that the person had. Does that make sense to you?

A. Yes.

Q. So that's just like any other element in the indictment.

A. Okay.

Q. Obviously, if the defendant is found not guilty, there's an end to the trial. If he's found guilty of some lesser offense than capital murder, then the jury would determine what his punishment would be within the range that the law provides for whatever offense that might be. And only if he is convicted of capital murder would the jury ever be confronted with these issues. Okay?

A. Okay.

Q. Now, the first special issue is exactly the same, I suppose you'd say, as the indictment. It is intended that the State have to prove each and every thing that is in that special issue the same as they had to prove each and every element of the indictment. They must prove it beyond a reasonable doubt. Okay?

Now, jurors are not allowed to rewrite that question. They're not allowed to go back in the jury room and decide, okay, listen, I've heard all I need to hear about this case, this guy deserves the death penalty. Remember we used that word earlier. The just thing to do here would be the death penalty. We stay away from those because those are subjective determinations. This is an objective issue, so it would be wrong for a jury to go back and decide what they ultimately wanted to happen and then answer these questions in a way that it satisfies as to what they wanted to happen. Do you understand what I'm saying?

A. Yes.

Q. Again, the law says, listen, you know, just because a person is guilty of capital murder doesn't mean they're going to be a continuing danger to a penitentiary society. We recognize that some will and some won't. Now, the law doesn't say, you know, we think that 10 percent will be or 1 percent will be or 1 in a thousand will be. We just need to determine if this particular defendant is one that fits into that category. And it -- and you can't change the words. You can't change probability to possibility. If they'd have meant possibility, they could have put it in there.

Now, by the same token, you can't change probability to absolutely, because it would be impossible to prove either of those two extremes. And we've -- while there's no legal definition for probability, everybody in the courts is pretty much satisfied with more likely than not. Is it more likely than not that that particular person, based upon all you have heard about him in the evidence, is one of those few incorrigibles who cannot even be incarcerated without fear of further violence from him? And, you see, it's not just a probability that something might happen sometime. Probability that the defendant would. You can't change that would to could. See what I'm saying?

A. Uh-huh.

Q. It says what it says.

A. Right.

Q. It means what it means. Would commit criminal acts, that's plural, so, you know, it's looking for what it continues to say there. Acts of violence that would constitute a continuing threat to society, ongoing, forever. If you want -- however you think that they intended that to mean, but you can't ignore the word "continuing." Do you see what I'm saying?

A. Uh-huh.

Q. So is that a hard thing for the State of Texas to prove? Some jurors think it's extremely hard for them to prove. Others think not so hard. Others, we've talked to some that wouldn't even require any proof other than proving the defendant is guilty. But if proving he was guilty proves that question, you know, we're really talking apples and oranges here. The first phase of the trial, they've got to prove the apple; that is, did he do the offense. At this phase, they've got to prove something different from that. And -- and I don't -- I suggest to you that -- that it is intended that they have a burden there, and that the jury ought to place the burden. Do you feel like you could do that, make an objective determination?

A. Yes.

Q. And if -- if you felt like, you know, they just haven't gotten there for me, you know, even though I recognize this is a person who's -- who is a capital murderer, he's not one of those few incorrigibles that the courts talk about. He's not going to continue to be

65

a threat to society. I'm going to answer it no. You have an absolute not only right but duty to do that.

A. Uh-huh.

Q. And if you do that, then the trial's over. You would return that verdict, and the Judge would sentence the defendant to life without the possibility of parole. He wouldn't go home. You know a lot of people feel like, you know, gosh, if we don't -- he's not going to be punished if we don't assess the death penalty. Well, that, of course, is ridiculous.

I believe you put in your questionnaire that you consider life without parole a substantial punishment.

A. Uh-huh.

Q. It's just not the same thing as a death penalty, right?

A. Correct.

Q. If Special Issue Number 2 is given, and I will tell you, Ms. Kunard, that it is not always, and we don't know as we sit here today whether the Judge will give the jury in this case that issue or not. The first special issue is always given. The third special issue is always given. The second one is only given if that has been raised by the evidence during the course of the trial. So we won't know until the trial's over whether or not

66

Judge Snipes feels like that is an appropriate question to ask.

A. Uh-huh.

Q. So I don't really do a lot of talking about Special Issue Number 2. It's the same, as far as the burden of proof is concerned, if you get to Special Issue Number 2, the State still has got to prove that to you beyond a reasonable doubt. And if the answer is no, again, the trial is over and it would be a life without parole sentence. And only if it's yes or yes and yes would a jury ever get to Special Issue Number 3. Okay?

A. Okay.

Q. Now, Special Issue Number 3 is in many ways very different from all of the other decisions you've been called upon to make. There's a potential of four decisions that you would have to make as a juror in a case of this kind. Three of them are based on the evidence with the burden of proof on the State.

A. Uh-huh.

Q. When you get to Special Issue Number 3, that changes. There is no burden of proof, okay, on either side. And a lot of other things change also. Okay. How to put this. You -- you said something in your questionnaire that speaks to that very issue, quite frankly, and Mr. Hikel pointed it out to you, when you

67

referred to your internal moral compass. You see these other issues really have nothing to do with anything other than objectively looking at the evidence and placing the burden and the standard that the law provides and simply answering a question did he do it, would he be a future danger, was he a party; and the answer to those questions are yes or no. Okay?

Now, it used to be that we didn't have Special Issue Number 3, and jurors who were brought down here like yourself and put on juries where the State was seeking the death penalty had only to make objective decisions from the evidence without regard to what they believe was the right and proper thing to do under the circumstances, so that a juror could listen to evidence and follow their oath, find the defendant guilty, answer the special issues as they then existed, and if they answered them yes and yes, then the defendant was sentenced to death. Even if the jury collectively or any one of those jurors felt, to use your words, from their internal moral compass that was not the right thing to do in that case, too bad. They had to do it and then just live with it as best they could.

The Supreme Court of the United States essentially forced that question on the State of Texas to give jurors an opportunity to take into consideration

68

things just like it points out. The defendant's character, they can consider the circumstances of the crime, all of the evidence, his background, moral personal culpability in the matter, just to reassess and make their own -- and instead of internal moral compass what our case law refers to is their own individual moral judgment. So it's almost the same terminology that you used, to use their own individual moral judgment to determine whether there is something about the defendant or his character or his background or anything in the evidence that you've heard that would, to the individual juror's mind, justify changing that death sentence to a life sentence. See what I'm saying?

A. Uh-huh.

Q. Okay. And it is -- there's very little guidance to jurors, frankly, other than their own internal moral compass, if you will, because each juror must determine for himself and herself what they consider to be mitigation, mitigating, and what weight to be given that mitigation. And the law doesn't require that there be any consensus on the jury as to what is or is not mitigating. What is mitigating to one juror might not be to another and might actually be aggravating to another. Even if all the jurors agreed on what was mitigating, they would not have to agree on what weight to be given.

69

It might be sufficiently mitigating for one juror and not to another. You see?

So that ultimately each juror is not only given the opportunity but given the responsibility of making their own individual moral judgment and decision about what ought to happen. Does that make sense to you?

A. Yes.

Q. Yeah. Now, while we can't tell you what is or is not mitigating, I can tell you some of the things that jurors have talked about that may or may not be something that you would hear in this case, but we're just talking generically about things that people have indicated. Some people indicate youth could be mitigating. Now, a person has got to be at least 18 years of age before they can be tried for the death penalty.

A. Uh-huh.

Q. But some jurors could say to us that if a person is in their late teens, early 20s, that might be something that they would want to take into consideration. Evidence -- neurological evidence shows us more and more that very often, particularly in males, there again, y'all have it over us, our brains don't mature very often, particularly the frontal lobe, which is the part of the brain that gives us our good judgment --

70

A. Uh-huh.

Q. -- doesn't develop very often until a person is around 25 years of age, and, you know, that conforms with something that I've always said, that there's some force above that takes boys' brains away from them when they get about 13 years old and doesn't give it back until they're 30. It's curious that insurance companies have known this for years and years and years --

A. Right.

Q. -- because they charge about three times as much in insurance for male drivers until they get to be 25 years old.

A. Right.

Q. You know, and that may or may not be something that a juror would want to consider, but they could if they wished to.

A. Okay.

Q. Our law says that if a person is mentally retarded, it's unconstitutional to execute them. But you know what our law says is that in order to be mentally retarded, a person has got to test two standard deviations below the norm and have substantial social disabilities, if you would. That's not exactly the words, but close enough. And all that manifests before the age of 18, which basically means a 70 on a good IQ

71

test and so that there's a lot of room for a person to have a fairly substantial mental disability, intellectual disability, and not meet the standard of mental retardation.

And if a jury heard evidence of that, that's something they could take into consideration if they wanted to. Mental illness is another issue. A person who because of mental illness doesn't know the difference between right and wrong has a legal excuse. We don't -- we don't prosecute people who are criminally insane. We don't turn them loose on the streets either, so don't worry about that, but -- and I'm not suggesting that we'd be dealing with that here, but a person can be pretty darn mentally ill and not meet the definition of legal insanity. So we could refer to something along those lines, but does all of that kind of make sense --

A. Yes, sir.

Q. -- to you? And, you know, and jurors can take into consideration -- well, none of us were raised in a vacuum. We all have issues in our backgrounds. Now, that may not be -- you know, rise to a level, but, again, it might. You know if there's evidence of physical or sexual abuse as a child or psychological abuse as a child or issues that would have not allowed a person maybe to grow up in a way that -- that most people would be able

72

to. You know, people say to us, well, everybody makes a decision about how they are. They don't really. I think that, you know, a lot of our decisions are made for us. If a mother chooses to drink or take drugs while the child is in utero, that's not a decision that child makes. And if that has had an effect on their brain, that's not their decision. Issues like that. You see?

And that's the good thing about this particular special issue. It allows jurors to hear more than just what happened but to fill out the entire picture for the juror, because we're asking jurors to make a very, very important decision, and you've pointed out just how important you see that decision to be. And it's only fair that we give them as much information as we possibly can. Okay?

A. Okay.

Q. And then it comes down to -- to the juror to assimilate all of that information and ultimately make their own -- own decision on the individual moral judgment based upon the evidence that they've heard. And I can tell you, Ms. Kunard, that not only do you not have to agree with any other juror about what is mitigating, you don't have to justify your own personal moral judgment to anyone, not to your fellow jury members, not to the Court, not to any of us, any more than you have to

73

justify the decision that you made to leave the Lutheran church and go to the church that you're going to now. That's your own personal moral decision in the matter. It would not be appropriate, I would submit to you, for me as an Episcopalian to try to tell you that what you had done and the decision that you made was not right and that you needed to come on over to the Church of the Holy Cross in Oak Lawn, you see. I get to make my decision about that. You get to make your decision about that. And we need to respect each other's decisions and accept those. Does that make sense to you?

A.   Uh-huh.

Q.   And the same is true back in the jury room. It may well be that jurors would have come to a different moral judgment about the matter at the end of the day. But your only responsibility is to deliberate your verdict. We don't define that term for you. Okay? If you look in the dictionary, what that means -- what that says is it means to carefully consider. And I would expect you to carefully consider your verdict, as I would any other member of the jury. But, ultimately, once you've made up your mind, you don't have to justify it, you don't have to defend it, you don't have to argue about it. It doesn't mean the best debater wins. You do have a responsibility to respect the other jurors'

74

personal moral judgment as they would yours. Does that all make sense to you?

A.   Yes.

Q.   And at the end of the day, here is how much power, I guess we'd say, that we give jurors in these kinds of cases. We give them a great responsibility, so we give them a great deal of latitude so that if you were to listen to all of the evidence in the case, and say, you know what, I cannot point to any one individual thing that I believe is sufficiently mitigating, but I'm considering everything that I've heard, and I believe that mercy is the appropriate response here. I believe that life in the penitentiary is adequate punishment and that mercy is in order and that is my personal moral judgment in the matter. And you're absolutely entitled to that if that's the way you feel, or any other member of the jury would be able to do the very same thing. So we give you a great deal of discretion along with that great deal of responsibility. Do you feel like I've -- you've understood everything that's gone on so far, Ms. Kunard?

A.   Yes.

Q.   Are you ready to go home and get some rest?

A.   Yes, but just whenever. There's no rush. It's okay.

75

Q.   Thank you, ma'am. Thank you. All right.

THE COURT:  Thank you, Mr. Parks.

Ms. Kunard, I'm going to ask you -- thank you very much for your time this morning, and let me ask you to step out with my bailiff and I'll confer with the attorneys and then I'll bring you back and have a decision for you. Okay?

VENIREPERSON KUNARD:  Okay.

THE COURT:  Great. Thank you.

(Venireperson Kunard exits courtroom.)

THE COURT:  Okay. All right. Mr. Hikel, does the State have a challenge for cause?

MR. HIKEL:  Judge, I don't know what to think of this juror. I really don't know.

THE REPORTER:  I'm sorry. I couldn't hear you.

MR. HIKEL:  I don't know what to think of this juror. I mean, the questionnaire says one thing, and --

THE COURT:  You can be seated.

MR. HIKEL:  -- she says something else. I would like to believe her when she says, yes, she can do it in spite of the fact that she said several times only God has the right to sit in judgment of another human being, as she says in her questionnaire. I would like to

76

believe her when she says, you know, she can do it, even though she says that it's --

THE COURT:  Well, do you have a challenge for cause? That was the question.

MR. HIKEL:  Yes, I do. As I keep saying --

THE COURT:  Well, go ahead.

MR. HIKEL:  -- I'm listing for the record the reasons why we have a challenge for cause.

THE COURT:  All right.

MR. HIKEL:  I'd like to -- because I think she's a vacillating juror, essentially. And I believe she's vacillating between her answers in the questionnaire and her answers here today when she says that the issue of the issue death penalty is a burden, and so I believe, Judge, under, you know, the case of Wainwright v. Witt, I think she's a vacillating juror to the point where her beliefs in capital punishment are such that I believe they would prevent her or substantially impair her from performing her duties as a juror in accordance with the law and instructions. And so for that reason, I would challenge her for cause.

THE COURT:  Okay. Does the Defense have a challenge for cause?

MR. PARKS:  No, Your Honor.

THE COURT:  Okay. A response?

77

MR. PARKS: Well, only that she hasn't vacillated one iota, and if we select jurors based on just getting ones who don't consider it to be any kind of burden to them, well, that's -- she's qualified, Judge.

THE COURT: State's challenge for cause is denied. And, let's see, there's her -- Ms. Kunard --

MR. HIKEL: 22.

THE BAILIFF: Number 22.

THE COURT: -- will be Number 22.

Okay. Would you bring Ms. Kunard back in and I'll give her kind of our little instructions and then we'll take a break.

(Venireperson Kunard enters courtroom.)

THE BAILIFF: Have a seat.

THE COURT: Yes, ma'am. Just go ahead and have a seat here again.

Thank you, ladies and gentlemen. Be seated, please.

Ms. Kunard, you've been qualified as juror -- Prospective Juror No. 22, which means that you're going to be on -- what we're doing is we're picking a panel of about 48 to 50 people, just qualifying them, making sure they can follow the law and so forth.

VENIREPERSON KUNARD: Uh-huh.

THE COURT: And then once we get that panel

78

picked --

VENIREPERSON KUNARD: Uh-huh.

THE COURT: -- then the attorneys will make their strikes from that panel, and then the juror will be -- the 12 people that aren't struck by either side will become the jury --

VENIREPERSON KUNARD: Okay.

THE COURT: -- so, and you'll probably find out whether or not you're on this jury the latter part of July.

VENIREPERSON KUNARD: Okay.

THE COURT: Okay? So, because we're not even halfway through --

VENIREPERSON KUNARD: Uh-huh.

THE COURT: -- with qualifying our panel at this point. You kind of got in on the early going, and so we've got a few more weeks to do this, but, anyway --

VENIREPERSON KUNARD: That's fine.

THE COURT: -- Judge Snipes' coordinator, more than likely, or Judge Snipes will send you a letter advising you of whether or not you're on the jury.

Now, what I would like for you to do, we anticipate that the evidence in this case will start August the 10th, and it will probably take about the week of August the 10th through the next week, which I want

79

you to pencil in on your calendar from August the 10th through August the 21st.

VENIREPERSON KUNARD: Okay.

THE COURT: Now, that weekend, you would have a weekend there that you won't be working but there will be 10 working days. Might not take that long. Hopefully it won't.

VENIREPERSON KUNARD: Uh-huh.

THE COURT: But, there again, we think we anticipate that that would be enough time, an adequate enough time. So I'll ask you to do that. And then, of course, in late July or July, if you find out that you're not on the jury, then you can cancel that and you can do anything you want to do. But --

VENIREPERSON KUNARD: Okay.

THE COURT: -- also, when you came in, you indicated that you knew nothing about this case, hadn't heard anything?

VENIREPERSON KUNARD: Right.

THE COURT: If you had heard something, you didn't remember anything about it, and that's the way I want to keep you. I don't want you going back in the archives looking up any old newspaper articles or, you know, looking up any, oh, TV accounts or anything like that.

80

VENIREPERSON KUNARD: Uh-huh.

THE COURT: Also, at any point in the future if there's any newspaper articles or anything that appears on TV, I don't want you to read it. I don't want you to listen to it.

VENIREPERSON KUNARD: Uh-huh.

THE COURT: I want to keep you, you know, just the way you are right now. Because if you're on this jury, then the first thing Judge Snipes will do is to swear in the jury and you'll take an oath at that time, as Mr. Hikel has already indicated, that you'll be sworn then to render a verdict based solely upon the evidence and the law. And so we don't want you coming in with any predisposed ideas about what the evidence might be or what you've read or heard --

VENIREPERSON KUNARD: Okay.

THE COURT: -- about the case. Okay? All right. Anything else, Mr. Hikel?

MR. HIKEL: No, Your Honor.

THE COURT: Okay. Mr. Parks?

MR. PARKS: Thank you.

THE COURT: Thank you very much. Go home and get some rest.

VENIREPERSON KUNARD: Thank you.

(Venireperson Kunard exits courtroom.)

81

THE COURT: Okay. We'll be in recess for 10 minutes.

(Recess, 10:26-10:40.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson Davis enters the courtroom.)

THE COURT: Hi, Ms. Davis. How are you doing? Just have a seat right there, if you would, please.

VENIREPERSON DAVIS: Hello.

THE COURT: Thank you, ladies and gentlemen. Be seated, please.

Heather I'd like for the record to reflect this is Prospective Juror No. 521, Kristi Nicole Davis.

And how are you this morning, Ms. Davis?

VENIREPERSON DAVIS: Good. How are you?

THE COURT: Good to meet you. I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas, and Judge Michael Snipes is the Presiding Judge over this capital murder case. He's asked me to assist him in the jury selection process in this case. So that explains to you what I'm doing here today instead of Judge Snipes who's upstairs in his courtroom taking care of the ordinary business of the court while I'm down here in this jury selection process.

82

But, anyway, you'll recall, oh, it's probably been over a month ago that you all got together in central jury and there was probably, what four or 500 of you or something like that. Judge Snipes talked to the group at that time. At some point in the proceedings, he asked everybody on the panel to stand up, raise their right hand, and he administered the oath of a prospective juror to each panel member. Do you recall that?

VENIREPERSON DAVIS: Yes.

THE COURT: Were you one of the panel members that stood and took the oath at that time?

VENIREPERSON DAVIS: Yes, sir.

THE COURT: Very good. I'll just remind you, you're still under that oath, and what you've been sworn to do is, number one, give us truthful answers, which we know you'd do that anyway, but also, secondly, to be responsive to each and every question that's asked to you either by myself or by the attorneys that will be involved in the -- in the voir dire examination. All right?

VENIREPERSON DAVIS: Yeah.

THE COURT: Okay. Now, then, also during that time, you filled out a questionnaire, and I know you haven't seen it since then, but the attorneys are going

83

to ask you questions, I'm sure, about some of your responses to some of the questions and want you to expand on them or explain them or whatever their questions might be about that, so I want you to have that to refer to. Also, did you have an opportunity to read your little orientation guide?

VENIREPERSON DAVIS: Yes.

THE COURT: Okay.

VENIREPERSON DAVIS: Uh-huh.

THE COURT: Now, that has to do with what we're here about today. That's just an introductory -- some introductory information concerning the law, procedural aspects, the special issues that will be involved in the trial of this case or any capital murder case. And the attorneys -- what's going to happen here today, they're going to -- that is just kind of your introduction. They're going to expand on the law, explaining it to you. Once you understand it, then they're going to ask you questions about how you feel about it to get your ideas, your thoughts, your opinions, if you will, concerning the law, the procedural aspects, and the special issues involved in the case.

Now, let me just tell you, there's no right or wrong answers to any of their questions. There's not anything that's going to embarrass you. You know,

84

just -- just relax and give us audible answers because my court reporter -- I can see you nod your head when you're answering me, you know, it's a natural thing that we all do, but in order for her to be able to write it down, you're going to have to give a verbal response to every question. Will you do that for me?

VENIREPERSON DAVIS: Yes.

THE COURT: Very good. Thank you, ma'am. I know you will.

Now, let me introduce you to the attorneys that are involved in this. Ms. Andrea Handley --

MS. HANDLEY: Good morning.

VENIREPERSON DAVIS: Good morning.

THE COURT: -- seated right here, and she will be talking to you for the State of Texas. Seated next to her is Ms. Elaine Evans, and then on down from Ms. Evans is Mr. Gordon Hikel. All three of these ladies and gentleman are assistant district attorneys here in Dallas County, and with two other assistant district attorneys are the prosecution team in this case and are charged with the responsibility of prosecuting this case, so.

And then seated next to me on down here is the Defense team, Mr. Brad Lollar.

MR. LOLLAR: Good morning.

85

THE COURT: Mr. Doug Parks.

MR. PARKS: Morning.

THE COURT: Next to him on the very end, the better looking of that group, is Keri Mallon, and these three attorneys comprise the Defense team. And seated on the end down there is Mr. James Broadnax, and he's the defendant in the case. All right.

Ms. Handley?

MS. HANDLEY: Thank you, Your Honor. I appreciate it.

KRISTI DAVIS,

Venireperson No. 521, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. Good morning. How are you doing?

A. Good. How are you?

Q. I'm just fine. Thank you for asking. Let me tell you what we're doing, Ms. Davis. You remember you came down that day to the central jury room and there were literally hundreds of people there, and everybody sat down and they filled out a questionnaire. And since that time, we've come back and we actually read every questionnaire and we actually bring every person down here. And the reason we bring hundreds, there were literally hundreds that came in that morning and there

86

were hundreds that came in the afternoon.

And the reason we do that is because this is a different kind of case. You know, this is a case where we're seeking the death penalty. And we bring hundreds of people in because the fact of the matter is, this is not the kind of case for everybody. Okay? Some people just -- just flat out are not able to sit on the case because they already have plans in August, and I want to talk to you about that. Okay? And some people can't sit on this case because they just can't -- it's not the kind of case for them. Okay?

And I want to tell you, there's nothing wrong with that, first of all. Okay? We wouldn't bring hundreds of people down here if it was the right case for everybody. Instead, we'd probably just go in and call 12 people to come in, and go, all right, sit down, take a seat, we're going to do this case. And does that make sense to you?

A. Yes, it does.

Q. Hundreds of people, because it's not the right thing for everybody, and I want to tell you there's nothing wrong with that. Okay? I think that some people get the idea that I've been called to jury duty and I've been called on a case, you know, like this, and, therefore, it's my obligation to come down here and tell

87

these attorneys what they want to hear or it's my obligation to tell them that -- that I can do it and I will do it when the fact of the matter is it's not the right case for them. I think that they get the impression that they're under some kind of legal obligation of sorts or some obligation as a citizen to come down here and say that they can and will do it and that is it the right case for them and that they are A-OK with it, you know. And that's not your obligation. It's not anybody's obligation. Okay?

Because there's nothing wrong with that. All right? That's why we call hundreds of people down here because there's many, many people, hundreds of people who will tell us truthfully, it isn't the right case for me. Call me on a burglary case or maybe call ne on a DWI case, but I can't tell you a hundred percent with certainty that I can do this case. Okay?

A. Okay.

Q. So I want to talk to you about a few issues, and, I guess, we'll first start out on some technical things because we've had some people who have already made plans in August, and if you've already made your plans, then you've made your plans, okay, and we can't run afoul of that. But have you already moved, first of all?

88

A. No. We're closing on our house tomorrow --

Q. Okay.

A. -- and moving this weekend.

Q. Moving this weekend. Okay. Are you moving outside of Dallas County? Do you know?

A. We're moving to Coppell, and I think parts of it may not -- I'm not sure.

Q. That's right. Parts of it are not Dallas County. And so have you inquired into that? Do you know yet if you're still going to be living in Dallas County?

A. I think we are --

Q. Okay.

A. -- going to be living in Dallas County, but I'm not 100 percent positive.

MR. LOLLAR: I can check.

THE COURT: Let me ask her. That way we can get this checked out before we go too much further.

MS. HANDLEY: Okay.

THE COURT: What is your new address that you're moving to this weekend?

VENIREPERSON DAVIS: It's 1717 East Belt Line Road.

THE COURT: 1717 East Belt Line Road.

VENIREPERSON DAVIS: And it's an apartment.

THE COURT: Okay. And do you know the ZIP

89

code?

VENIREPERSON DAVIS: 75019.

MR. LOLLAR: And that is the City of Coppell?

VENIREPERSON DAVIS: Yes.

MS. MALLON: 75 --

VENIREPERSON DAVIS: -- 019.

Q. (BY MS. HANDLEY) Okay. Mr. Lollar will check it out, because that's one of the technical reasons why somebody may not be qualified, you know, if you're not actually living in Dallas County, so we'll check that out too.

But we've also had jurors, as I said before, who have already made plans for August, and we're not asking them to necessarily change their plans, particularly when they're going out of town. And do you have your questionnaire in front of you?

A. Yes, ma'am.

Q. I was looking there on your -- on your plans, and you said that on page 17, you -- well, let me tell you this, that we're going to start this trial on August the 10th. Okay?

A. Okay.

Q. And we have anticipated that it may take two weeks to try this case. All right? And that's just the

90

actual putting on of the evidence in the case. Now, what I cannot tell you how long it will take is how long it will take the jury to deliberate. Okay? There's no telling how long. People have deliberated for days at times, and that's appropriate. They have to talk and deliberate as long as it takes them. So outside of the two weeks, I can't tell you how long it would take a jury to deliberate. But, nevertheless, there you go. Starting on August 10th --

A. Okay.

Q. -- that's when we're starting. And I notice that you've got in here a lot of people that you know that are getting married.

A. Yeah.

Q. Right?

A. Right.

Q. And that you have, as it says there, two plans -- two weddings to attend in August. Are those weddings out of town?

A. There's one wedding that is August the 8th in Houston and one wedding is in October in South Carolina.

Q. Okay. This -- this one about -- you said something about during the first week of August, that's the one you're talking about there?

A. The first week of August, we're going to South

91

Carolina just for a vacation.

Q. How long are you going to stay?

A. We'll probably return on the 8th or 9th.

Q. Okay. And then you said you have a wedding after that?

A. That same weekend, right.

Q. That same weekend in Houston?

A. Right.

Q. And then was there another wedding or am I -- was I just misreading that?

A. There is two. I mean there's the one in October and August.

Q. In October. I don't think this thing will go into October. Now, you also work full-time, correct?

A. Right.

Q. And you work for, sounds like a mortgage company?

A. Yes, ma'am.

Q. Okay. A lot of people are refinancing now, huh?

A. Uh-huh.

Q. I just did that, just closed this week. Again, you know, these trials go on during the day, and we work 9:00 to 5:00. And for the most part, you can usually go home at night. Once a jury goes to deliberations, if you have not reached your verdict, you know, and you get

92

tired or such as that, you might not necessarily go home. Instead you would be what we call sequestered where you would have to go to a hotel room and you don't have the phone, you don't have the TV and the Internet and such as that because the purpose is to block off communications with the outside world.

So you're going to miss at the very least two weeks of work and maybe more. Okay? I don't know your situation with your -- with your employer. Are they going to miss you?

A. Actually, one of our senior analysts just put in her two weeks' notice, so we're going to be really shorthanded. And I don't know if they have plans to hire anyone to replace her, so we're just taking on her work.

Q. You're -- you're doing the work of at least one and a half people right now --

A. Right.

Q. -- probably two? Some people have told us that, look, you know, I've got a situation at work, we're shorthanded. I can try to give this a hundred percent of my time and concentration, but the reality of it is, I'm going to be thinking about what's going on at work. I'm going be distracted, you know, because there's a lot going on there. It's a bad time for me, and I cannot tell you that I won't be distracted by my work. And

93

there's nothing wrong with that. It's just truthful. You don't want to go, well, I'll try, you know, and then we get you on a jury and we don't have a hundred percent of your time and attention. It wouldn't be fair to the defendant, and it wouldn't be fair to the State, you know. And that's something where you have to soul search on that, and, again, there's no wrong answers here. Nobody's going to say that you're not a person who didn't step up to the plate. But do you think, given your situation with having to take on the workload of an employee who's left now, that you would be distracted if you had to come down here every day from 9:00 to 5:00 at least for two to three weeks?

A. It depends on if they can find someone to do my work for me while I'm gone.

Q. And if they can't?

A. If they can't, I don't know. I mean, my work is not something that I can take home. It's something I can only do in the office.

Q. Uh-huh.

A. So, I mean, I guess everyone else there would just have to do it for me.

Q. Maybe then the work of three people, huh?

A. Right.

Q. Yeah.

94

A. But if they agreed to do that and if no more people are leaving.

Q. That's a lot of ifs.

A. You know, I mean, yeah.

Q. That's a lot of ifs, so you can't tell us with 100 percent certainty that you've got that resolved and that that wouldn't be a distraction?

A. No, not without asking around.

Q. Sure. And I appreciate that. I get that, and there's nothing wrong with that, you know. There are a lot of people who are capable of doing that and can tell us a hundred percent certain, you know, you've got a hundred percent of my concentration and attention on this case; and there's others who say, there's too many ifs and intangibles and I can't make that representation to you. And that's fine. Do you feel that you're that person at this point, you can't give us your 100 percent certainty that you'll give us your time and your consideration on this case if you're selected?

A. Right. I can't a hundred percent say that at this time.

Q. Okay. Okay. Fair enough. And I appreciate your honest answer there. You know, that's -- that's one reason why somebody may not be qualified for this particular case, just because of that, because they

95

cannot give us a hundred percent of their -- of their time and their concentration.

Another reason why people are sometimes not right for this case is, is because, well, just that, they're just not right for this case. Okay? They may be a perfect juror for any other kind of case but not this particular case. I mean, I think you have a pretty good appreciation here from reading from your questionnaire, Ms. Davis, that you understand the magnitude of what we're doing here, don't you?

A. Yes, ma'am.

Q. And we're talking about potentially having you take part in killing someone, have a juror take part in that, you know. And for some people, it's a tremendous burden. You know, it's -- it's a lot to take on. You've never even sat on jury duty before, have you?

A. No, ma'am.

Q. It's a way to start, isn't it? Heck of a way to start. It's like, you know, trying to make a wedding cake before you've ever even made a cupcake, you know. It's a real leap. Some people will -- you know, can tell us that they can do it even in spite of that, and some people, to be honest, will tell us that I'm not the right person for this case, and I know you've got hundreds of other people to choose from, and maybe you need to look

96

at the other hundred people that are out there.

And I want to talk to you about that because -- because I'm seeing that from your questionnaire that we asked you on the first page, are you in favor of the death penalty, and you said no. And I'll tell you, that's perfectly fine, you know. There's a lot of people out there who are not in favor of the death penalty. It's a law we have. It's -- it's a -- a right on the State that we can pursue that if we believe that the facts indicate it. But -- but it doesn't mean that you have to like it and it doesn't mean that you have to morally believe in it and it doesn't mean that you have to necessarily take part in it, you know. It is a big deal, and it is not for everybody.

I will tell you this, and I'll only tell you this to impress upon you the importance of a case like this, but, you know, what I say doesn't matter right now and what they say doesn't matter right now. What I want to hear from you is how you feel right now, and you've only taken an obligation to tell us the truth and tell us your feelings. Okay? There are no right or wrong answers here, but just to impress upon you what's going on here, if I as a representative of the State am able to prove beyond a reasonable doubt that the defendant is guilty of capital murder, then I'm entitled to a verdict

**97**

of guilty.

And that means one of two things is going to happen to the defendant in this case. He'll either spend the rest of his life in prison or he will receive the death penalty. If he receives the death penalty from a jury, the Judge doesn't then take the verdict and go, you know, I don't think you reached the right verdict. I don't think it's the right thing to do here. I'm going to change it now. He has no choice at that point other than to sign the warrant for his death, a warrant of execution that calls for exactly that to happen. He will be transferred to Huntsville, Texas, and he will stay there until the day of his execution. And it doesn't matter what he does while he's in prison from the time you return your verdict till the date that he's set for execution. It's going to happen. Okay? There's no turning around.

You've placed in your questionnaire several things in here about what if a person rehabilitates themselves or what if a person has a change of heart or what if a person comes to Christ. Well, I can tell you right now, it doesn't matter. It doesn't matter. It doesn't matter if a defendant gets down there and does have a change of heart. It doesn't matter if he comes to Christ.

**98**

MR. LOLLAR: Judge, excuse me. I'm going to have to object. If the juror feels that's a mitigating circumstance, as an official of the court, it does matter.

MS. HANDLEY: I said after the verdict is rendered, Your Honor.

THE COURT: Yes, I understand.

Q. (BY MS. HANDLEY) After the verdict -- after the verdict is rendered, it doesn't matter, you know. What's done is done. Okay? He can make a complete about-face. Come to Christ. Change his mind. Rehabilitate. He could -- he could work on a cure for cancer, bring peace to the Middle East, you know, be helping other inmates. It doesn't matter, Ms. Davis. He's going to die. Okay? Whether he likes it or not or whether you like it or not at that point, he's going to die. Okay? And I tell you that just to impress upon you the finality of being a part of this. Okay? Do you understand that?

A. Yes, ma'am.

Q. Okay. And he will be taken into a chamber and he will be given a lethal injection and he will be fed poison in his veins until he dies. Okay? How do you feel about that?

A. I've actually done some research on it online because I wanted to know what it was, and I read about

**99**

all the different drugs that they use, and there's even litigation going on about the lethal injection right now.

Q. Uh-huh.

A. But -- and I've had time to think about what -- how I feel about the death penalty, and I still am not in favor of it.

Q. Yeah. I understand. I think there's even some litigation out there that maybe the lethal injection is not humane, you know.

A. Right.

Q. That that might be an unresolved issue out there --

A. Right.

Q. -- you know. Is that one of the things that you read --

A. Yes, ma'am.

Q. -- that it does constitute cruel and unusual punishment?

A. Yes, ma'am. I read about the American Medical Association saying that sometimes, you know, they've done autopsies on the body and discovered that they weren't -- they were not unconscious or they were still aware, things like that.

Q. Yeah. Yeah. Pretty bad, huh?

A. Yes, ma'am.

**100**

Q. Pretty bad. And -- and for some people, there's some people who say, oh, that doesn't matter to me; and there are some people who say, that's not for me, you know, that's -- that's not something that I'm comfortable with participating in. Are you comfortable with what you read?

A. What do you mean?

Q. With what you read, that they're saying that some people were not unconscious?

A. No, I'm not comfortable with that.

Q. Okay. Okay. You know, you said, you know, on the first page of your questionnaire on here, you said, no, you're not in favor of the death penalty, and that's fine. A lot of people aren't. You said, I'm truly undecided. I haven't thought about it much. We know now that you've done some more research on the Internet. Death is a very serious thing. I guess I can see the pros and cons; so I would have to think about it some more. And it sounds like you have. You've done some research there and looked into the death penalty.

And -- and what I look at, because I see it a couple times here throughout your questionnaire and I think these are your honest answers, you know, is that you said throughout here a couple times, I'm unsure. I'm unsure and I'm undecided. And a lot of people feel that

101

way.

And let me -- let me ask you -- let me give you a little scenario. Okay? Are you going to fly to Houston for the wedding?

A. Possibly.

Q. Okay. Let's say you and your husband, you're getting on the plane to go to Houston to go to the wedding and you see the pilot standing there at the gate at the -- you know how they stand there and they greet you as you come in?

A. Uh-huh.

Q. And you say to him, hey, do you know how to fly this plane? And he says, I'm not sure.

A. I would turn around and --

Q. You would get off of there, wouldn't you?

A. Yeah.

Q. You would. I'm not sure you know how to fly this plane. You'd turn around and get off of there. And so I -- I, you know, I see some people who say, I'm just not sure about being on a case like this, you know. And I only give you that hypothetical and that analogy to kind of bring that home to you.

A. Uh-huh.

Q. You know, that I think sometimes you really have to be sure about something before you're willing to take

102

that leap and you're willing to involve yourself in something like that.

A. Right.

Q. And do you still have those feelings of -- of being unsure about how you feel about this whole thing, and, particularly, taking part in the death of another person?

A. No. I'm -- now that I've had time to research it, I'm very positive that I'm not in favor of the death penalty.

Q. Okay. Okay. And I know you say you're very positive that you're not in favor of it. And so in terms of you not being sure about whether or not you would want to take part in it, are you telling me that, part and parcel, then, you're sure now that you don't want to take part in something like this?

A. Exactly.

Q. Okay. You know, you -- we also asked you on page 1 there with reference to the death penalty which of the following statements best represents your feelings, and you circled number three. A lot of people do. You said, although I do not believe the death penalty ever ought to be invoked, as long as the law provides for it, I could assess it under the proper set of circumstances.

Well, I think -- and you correct me if you

103

have any different feelings on this, okay -- but I think that it's a lot easier to talk about the death penalty academically than to actually do it. You know?

A. Right.

Q. We can sit around with our friends and our coworkers and we can talk about things at the watercooler, you know, or we can talk about a lot of things academically and maybe even intellectually, but then when it actually comes to doing it, well, that's a whole different show, you know, because I could talk about doing something all day long, but if you told me to do it, I'm going to tell you I can't.

A. Uh-huh.

Q. Let me give you another analogy and we'll see if this doesn't help to illustrate or help maybe explain your feelings about -- because you said you are not in favor of the death penalty and you are not comfortable taking part in this. You've seen these big tall buildings out here in Downtown Dallas?

A. Yes, ma'am.

Q. They're like eighty, a hundred stories high, aren't they?

A. Uh-huh.

Q. Okay. Well, if you asked me how I feel about clean windows on 80-story buildings, I'd tell you I'm a

104

hundred percent for it. I'd tell you that I think the windows should be cleaned. I think somebody needs to be up there doing it. I think that that job should be taken seriously and done well. Academically, I am all for people getting up there and washing windows on the 80th floor of a skyscraper.

Now, if you said, well, I'm glad that you think it should be done and I'm glad that you academically and intellectually appreciate the necessity of it and that there's a place for it in this society, so here's a squeegee and here's a bucket of sudsy water and you need to get on the scaffold now because we're about to raise you up 80 floors. I would tell you, no, I'm not going to do it. I'm not going to do it. Somebody needs to do it, but I'm not the person for it, you know. And I could stand there and I could say, well, I think I can do it, I'm not sure if I can do it, and I can even say everybody wants me to be brave about it, you know, so I'm going to say, okay, I'll suck it up and I'll do it, you know. I might even go that far and get on that thing with the nervous legs and grab that squeegee, and as they took me up 80 stories into the air, I'm going to tell you, the reality of it is I would not be comfortable. Okay?

A. Right.

**105**

Q. And the reality of it is even though I told people I think I can do it, I'll be brave about it, the reality of it is I'm not concentrating on the task at hand. I'm not giving it 100 percent of my time and my concentration and my effort. I'm thinking about other things, you know. And for some people, the death penalty is like that. You know, that they say intellectually, academically, I see that there's probably a place for that. I see that somebody -- somebody has to do it and somebody probably should do it in a lot of instances. But I'm not the person to make that decision because of my uncertainty or me being unsure or how I am against the death penalty. Do you see yourself anywhere in that analogy?

A. Yes, ma'am. I was looking at the choices here, and I think now that I've had time to think about it, I would probably pick four or five instead of three.

Q. Okay. So, in truthfulness, what you're telling us is that, really, when it comes down to it, the statement that better describes you and your honest feelings are where it ends, may be appropriate in some cases, but I personally could never return a verdict which assessed the death penalty; or even number five, you're telling us, I could never under any circumstances return a verdict which assessed the death penalty. Is

**106**

that more properly your feelings?

A. Yes, ma'am.

Q. And your feelings are your feelings, and I wouldn't try to change how you honestly feel, Ms. Davis, so can I talk you into something else now?

A. You can try.

Q. I can try, but are you going to stand by your convictions and that that's the way you feel?

A. Yes. Yes, ma'am. I mean, before I came to this and before I did this questionnaire, I never really thought about it before --

Q. Uh-huh.

A. -- because I never really needed to.

Q. A lot of people don't.

A. So, you know, now, I mean, this is the first time I've really sat down and thought about it.

Q. Yeah.

A. So, yeah, now that I've had that opportunity to really think and do some research, I definitely am more positive about number four and five.

Q. Okay. Well, I'm going to tell you what, Ms. Davis, then we're not going to -- we're not going to take any more of your time. Okay?

A. Okay.

Q. But thank you for coming here today.

**107**

A. Sure.

Q. I appreciate it. Thank you so much.

A. Sure.

THE COURT: Thank you, Ms. Handley.

And thank you, Ms. Davis, for being here. We appreciate the time and effort, and, incidentally, you do live in Dallas County. Thank you very much.

VENIREPERSON DAVIS: Thanks. Can I leave this here?

THE COURT: Yeah. Just leave this here with me.

MR. LOLLAR: Thank you.

MR. PARKS: What just happened?

THE COURT: Huh?

MR. PARKS: What just happened?

THE COURT: I excused her.

MR. PARKS: For what?

MS. HANDLEY: Oh, I thought you guys --

THE COURT: Brad did.

MR. LOLLAR: I gave him the --

THE COURT: He gave me the high sign.

MR. PARKS: Not once was the law ever explained to her.

THE COURT: Okay.

MS. HANDLEY: We can try a couple ones, too,

**108**

if you'd like.

THE COURT: Okay. Here we go. Here we go.

MR. PARKS: We have.

THE COURT: Hey. Hey. Hey.

MS. HANDLEY: We just --

THE COURT: Talk to me. Okay. Here we go. Does the State have a challenge for cause?

MS. HANDLEY: We do, Your Honor. We would challenge Juror Number 401 -- I'm sorry. That's the last one.

THE COURT: 521.

MS. HANDLEY: -- 521 -- I beg your pardon, Your Honor -- Kristi Davis. She has consistently maintained here that she could not render a verdict of the death penalty as even stated after careful thought and consideration, her true feelings are that she would -- she could never under any circumstances return a verdict of death and does not believe in the death penalty and could not be a fair and impartial juror in this case and does have a bias against the law that we have a right to depend on.

THE COURT: Mr. Lollar?

MR. LOLLAR: We -- we heard the same thing.

THE COURT: Okay. All right. The State's challenge for cause is granted, and Prospective Juror

109

No. 521, Kristi Davis, is excused from further jury service in this case. Okay.

MS. HANDLEY: Did we discuss with His Honor the person this afternoon?

THE COURT: Okay. Who is this now?

THE REPORTER: Is this on the record?

MS. HANDLEY: Just talk first.

THE COURT: We're just talking.

THE REPORTER: Off the record?

THE COURT: Off the record.

(Recess, 11:10-1:16.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson No. 455 enters the courtroom.)

THE COURT: Ms. Barbosa, go ahead and have a seat right here, if you would, please, ma'am. Thank you.

Thank you, ladies and gentlemen, be seated, please.

Good afternoon, Ms. Barbosa. How are you this afternoon?

VENIREPERSON BARBOSA: Nervous.

THE COURT: Huh?

VENIREPERSON BARBOSA: Nervous.

THE COURT: Nervous? Well, don't be nervous. I'm Judge Parker, and I'm presiding for Judge

110

Snipes over the jury selection process, so that's what I'm doing here today.

And I'd like for the record to reflect, Heather, that this is Prospective Juror No. 455, Aurora, is that correct, Aurora Barbosa?

VENIREPERSON BARBOSA: Uh-huh.

THE COURT: B-a-r-b-o-s-a. All right. Ms. Evans is going to talk to you at this time, one of the assistant district attorneys, Ms. Evans.

MS. EVANS: Thank you, Your Honor.

AURORA BARBOSA,

Venireperson No. 455, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Good afternoon, Ms. Barbosa.

A. Hi.

Q. Do you recall filling out the questionnaire in the big panel?

A. Uh-huh.

Q. Is that a yes?

A. (Moving head up and down.)

THE COURT: I think you'll have to speak out loud because my court reporter is taking down everything that I say and you say and Ms. Evans says. Okay?

111

VENIREPERSON BARBOSA: Okay.

THE COURT: So, I mean, I can see you answer, and Ms. Evans knows when you say uh-huh and huh-uh, but she can't write that on her machine.

VENIREPERSON BARBOSA: Okay.

THE COURT: Okay? Good. Very good. Thank you.

MS. EVANS: Thank you, Judge.

Q. (BY MS. EVANS) And, Ms. Barbosa, I noticed from your questionnaire, you say you just don't really think anybody should have the death penalty, regardless of how bad the crime was; is that right?

A. Right.

Q. And regarding your beliefs on the death penalty, you say, I could never under any circumstances return a verdict which assessed the death penalty, and you circled number five; is that correct?

A. Correct.

Q. Is that still how you feel today?

A. Yes, ma'am.

Q. Okay. Thank you, Ms. Barbosa.

THE COURT: Any questions?

MR. LOLLAR: We have no questions. Thank you, Ms. Barbosa.

THE COURT: Thank you, Ms. Barbosa, for

112

being here and for coming in. We appreciate your time, and I'm going to excuse you from further jury service in this case. Thank you.

(Venireperson Barbosa exits courtroom.)

THE COURT: Thank you very much. Thank you. Be seated. Okay.

Does the State have a challenge for cause?

MS. EVANS: Your Honor, the State would challenge Juror No. 455, Ms. Barbosa, for cause in that she could never assess the death penalty under any circumstance.

THE COURT: Any objection?

MR. LOLLAR: No, Your Honor.

THE COURT: All right. Thank you. Prospective Juror No. 455, Aurora Barbosa, the State's challenge for cause will be granted, and Ms. Barbosa will be excused from further jury service in this case.

All right. Let's see. Next I have is Gaylord; is that right?

MS. EVANS: Gaynor.

THE COURT: Gaynor. Excuse me. I'm sorry. I was trying to read it over there. Yes, Ms. Gaynor, please.

THE BAILIFF: All rise for the juror.

(Venireperson Gaynor enters courtroom.)

113

THE COURT: Hi, Ms. Gaynor, how are you doing?

VENIREPERSON GAYNOR: Fine. Thank you.

THE COURT: Have a seat right there, if you would, please, ma'am.

Thank you, ladies and gentlemen. Be seated, please.

I'd like for the record to reflect this is Prospective Juror No. 663, Carla Elizabeth Gaynor, G-a-y-n-o-r, correct, Ms. Gaynor?

VENIREPERSON GAYNOR: Yes, sir.

THE COURT: How are you?

VENIREPERSON GAYNOR: Good.

THE COURT: I'm Judge Parker. I'm a Senior District Judge from McKinney, and Judge Snipes has asked me to assist him in the jury selection process, so that's what I'm doing here this afternoon. I'm going to give to you your questionnaire because Ms. Evans who is going to talk to you at this time will have some questions concerning some of your responses and whatnot.

VENIREPERSON GAYNOR: Sure.

THE COURT: All right. Thank you very much. Ms. Evans.

MS. EVANS: Thank you, Judge.

CARLA GAYNOR.

114

Venireperson No. 663, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Ms. Gaynor, in your questionnaire, I noticed that you mentioned several times that you believe very strongly in the commandment thou shall not kill; is that correct?

A. Yes, ma'am.

Q. And so you have a religious belief that would prevent you from exercising the death penalty; is that fair to say?

A. Yes, ma'am.

Q. And with regards to that, you circled number five, I could never under any circumstances return a verdict which assessed the death penalty; is that correct?

A. Yes, ma'am.

Q. And is that how you feel today?

A. Absolutely.

Q. Okay. Thank you.

A. Thank you.

THE COURT: All right. Thank you very much. Oh, excuse me. I'm sorry.

MR. LOLLAR: We have no questions. Thank you again.

115

THE COURT: Thank you, Ms. Gaynor. We appreciate you being here. You're excused.

VENIREPERSON GAYNOR: All right. Thank you very much.

THE COURT: Thank you, ma'am.

VENIREPERSON GAYNOR: Good luck.

THE COURT: Thank you.

(Venireperson Gaynor exits courtroom.)

THE COURT: Thank you. Be seated.

Does the State have a challenge for cause?

MS. EVANS: Your Honor, the State would challenge Juror No. 663, Ms. Gaynor, in that she could not follow the law. She cannot under any circumstance return a verdict of death.

MR. LOLLAR: No objection.

THE COURT: Thank you. State's challenge for cause, Prospective Juror No. 663, Carla Gaynor, is granted, and the prospective juror is excused from further jury service in this case. Okay.

And let's see.

THE BAILIFF: Coleman is not here yet, Your Honor, and Mary Hinton is.

THE COURT: Okay. Let's see what we've got. So Coleman's not here. So let's take Hinton then, huh?

116

MS. HANDLEY: Sure.

MR. LOLLAR: Sure.

THE COURT: Okay. Bring Ms. Hinton in.

THE BAILIFF: All rise for the juror.

(Venireperson Hinton enters courtroom.)

THE COURT: Ms. Hinton, yes, ma'am. Come on in, if you would, please, ma'am. Just right here, if you would, just go ahead and have a seat right there for me please, ma'am.

VENIREPERSON HINTON: Thank you, sir.

THE COURT: Thank you. Be seated, please, ladies and gentlemen.

Good afternoon, Ms. Hinton. How are you doing?

VENIREPERSON HINTON: Fine, sir. You?

THE COURT: Good. I'm fine. Thank you. I'm Judge Parker, and I'm a Senior District Judge from McKinney, Texas, and I'm assisting Judge Snipes who is the Presiding Judge in this case in this jury selection process.

And I'd like for the record to reflect this is Prospective Juror No. 782, Mary Hinton, H-i-n-t-o-n.

All right. Ms. Hinton, I'm going to have one of the assistant district attorneys visit with you at this time. Here's your questionnaire that you filled out

117

over a month ago, I imagine it has been now, and she's got some questions that she'll want you to refer to your questionnaire with regard to. All right?

Ms. Evans, you may proceed.

MS. EVANS: Thank you, Your Honor.

MARY HINTON,

Venireperson No. 782, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Ms. Hinton, with regards to your questionnaire, I see that you have a religious belief that it's not for you to say if a human being should be executed; is that correct?

A. That's correct.

Q. Okay. And that's -- that's God's role, to judge; fair to say?

A. Yes, it is.

Q. And with regards to your feelings on the death penalty, you circled number four, I believe that the death penalty is appropriate in some murder cases, but I could never return a verdict which assessed the death penalty; is that correct?

A. That's true, because, see, I got to live with that. You know, I just couldn't live with that.

Q. Okay.

118

A. I just couldn't do that.

Q. Okay. Thank you, Ms. Hinton.

THE COURT: Okay.

MR. LOLLAR: We have no questions. Thank you.

THE COURT: Okay. Thank you for coming in, Ms. Hinton. We appreciate it very much. You can just give that to my bailiff, and we thank you for being here. You're excused now. You're free to go. Thank you for your time and your service. All right?

VENIREPERSON HINTON: Thank you.

MS. EVANS: Thank you, Ms. Hinton.

THE COURT: Thank you. Bye-bye.

(Venireperson Hinton exits courtroom.)

THE COURT: Thank you. You can be seated. All right.

Does the State have a challenge for cause?

MS. EVANS: Your Honor, the State would challenge Juror No. 782, Ms. Hinton, in that she cannot follow the law. She could never under any circumstance return a verdict of death.

MR. LOLLAR: No objection.

THE COURT: Then Prospective Juror No. 782, Mary Hinton, the State's challenge for cause is granted, and Ms. Hinton is excused from further jury service.

119

I don't know if Mr. Coleman has shown up, but if he hasn't, y'all want to go ahead and deal with Ms. Fincher?

MR. PARKS: Sure. But before we do that --

THE COURT: Yes, sir.

MR. PARKS: -- I wanted to take up one more thing with the -- with the State. We have here --

THE BAILIFF: Judge, I've called the hall for Mr. Coleman and I've had him check upstairs with Judge Snipes' court, and he's not here. Would you like me to try to call him while we do Ms. Fincher?

THE COURT: Why don't you try to call him and just kind of see if he's on his way or if he's not coming. That way, we can put it on the record. I mean, if he's not coming in, he's a five, so.

MR. PARKS: Here is an e-mail that Sharon received. I am sorry to bother you, but my name is Philip Swift. I came down for an interview concerning an upcoming trial. At that time, I was unable to serve because of hearing problems. I was embarrassed by this fact. I have always been able to do what is expected of me. From that interview, I recently purchased hearing aids to help me hear well.

He wonders if we might reconsider and bring him back for a do-over. Here is -- here is what I have

120

instructed Sharon to say to him. Sorry. We have to take people in order, and we have passed you by. Is that satisfactory with you?

MS. HANDLEY: Sure.

THE COURT: Do you want me to make that a part of the record?

MR. PARKS: No.

THE COURT: Okay.

THE REPORTER: Do you want this on the record?

THE COURT: Off the record.

(Off-the-record discussion, 1:27-1:28.)

THE COURT: Keri, are you going to do it, or Doug? Are you done?

MR. PARKS: I'm done.

MS. MALLON: Do you want to add --

THE COURT: Andrea, do you want to put anything further on the record?

MS. HANDLEY: Only that we discussed this and I think both parties are in agreement that we do not need to bring this particular juror back, that it was for those reasons, the hearing, plus there was some additional concerns from both parties, so not a necessity to bring this juror back. We're both in agreement on that.

121

THE COURT: Okay. Mr. Parks?

MR. PARKS: That's true.

THE COURT: Okay. Very good. Thank you.

THE BAILIFF: I have a report on Mr. Coleman.

THE COURT: Yes, sir.

THE BAILIFF: We talked to him on the phone. He was not aware --

THE COURT: Hang on just a minute. Let's get this -- I'll get this on the record here. This is Cause Number -- I mean this is Prospective Juror No. 677, Eric Coleman. Excuse me. Go ahead.

THE BAILIFF: He was not aware that he was supposed to be here today, and I gave him Sharon Johnson's phone number to reschedule.

THE COURT: Okay.

THE BAILIFF: He was not in a place where he could come in.

THE COURT: Do you all want to just go ahead and put on the record that you can agree to excuse him or challenge him for cause? Because he's a five.

MS. MALLON: We need him on the record.

THE COURT: You need him to come in?

MR. LOLLAR: I don't think we need him to come in, frankly.

122

THE COURT: Okay. Well, I don't either, but I am --

MS. HANDLEY: We'll put on the record --

THE COURT: I'll make him come in if anybody wants him to.

Just a minute. We're not on the record.

(Off-the-record discussion, 1:29-1:31.)

THE COURT: We're going on the record, Heather.

Okay, Andrea. Go ahead.

MS. HANDLEY: Your Honor, in addition to the bailiff telling us that he talked to Mr. Coleman and he said he wasn't advised, it's our understanding he was advised by the court coordinator to be here. But he's also stated from his questionnaire that he is a five and that under no circumstances could he return a verdict of a death penalty. He's also stated in his questionnaire that he has religious and moral and personal beliefs that would prevent him from sitting in judgment as well as from returning a verdict that would result in the execution of another human being. He's also put on here that he saw the case on TV and he saw the defendant talking to Shaun Rabb on Channel 4 News.

I -- I would submit that we don't need to actually go through the exercise of bringing this young

123

man down here, that he's -- he's not a qualified juror.

THE COURT: Mr. Lollar?

MR. LOLLAR: We have no objection.

THE COURT: All right. Then I will -- can we just say that he's excused by agreement?

MR. LOLLAR: Yes, sir.

MS. HANDLEY: Yes, sir.

THE COURT: Okay. Then, Prospective Juror No. 677, Eric Coleman, is excused by agreement. Thank you very much.

And you can call Mr. Coleman and tell him he doesn't have to come down.

THE BAILIFF: Yes, sir, I'll do that.

THE COURT: Thank you so much.

MR. HIKEL: Ms. Fincher, tomorrow's her birthday, Judge, so don't forget to tell her that, happy birthday.

THE COURT: Oh, is it?

THE BAILIFF: All rise for the juror.

(Venireperson Fincher enters courtroom.)

THE COURT: Ms. Fincher, yes, ma'am. Just go ahead and have a seat right there, if you would, please, ma'am. And how are you this afternoon?

VENIREPERSON FINCHER: Fine.

THE COURT: Good. We're glad to have you

124

here today.

Let the record reflect this is Prospective Juror No. 387, Peggy June Fincher, F-i-n-c-h-e-r, Ms. Fincher, I'm Judge Parker, Quay Parker.

VENIREPERSON FINCHER: Nice to meet you.

THE COURT: I'm a Senior District Judge from McKinney, Texas, and Judge Michael Snipes who is the Presiding Judge over this case has asked me to assist him in the jury selection process, so that's what I'm doing here today.

VENIREPERSON FINCHER: Okay.

THE COURT: Now, Ms. Fincher, let me -- let's see. You're going have a birthday tomorrow, right?

VENIREPERSON FINCHER: (Moving head up and down.)

THE COURT: And you'll be 29?

VENIREPERSON FINCHER: You got it.

THE COURT: Do you want us to sing Happy Birthday to you?

VENIREPERSON FINCHER: No.

THE COURT: No? Okay. All right. Well, that was a wise choice, wise decision there, I think. Ms. Fincher, let me ask you this. You were obviously born, then, June the 11th, 1951, correct?

VENIREPERSON FINCHER: Yes, sir.

125

THE COURT: And your Social Security number is, as it is on here, it's 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, correct?

VENIREPERSON FINCHER: Yes.

THE COURT: And you live at 518 Huntington Court, Irving, Texas 75061?

VENIREPERSON FINCHER: Yes, sir.

THE COURT: Is that correct?

VENIREPERSON FINCHER: Yes.

THE COURT: The reason I'm asking all that, Ms. Fincher, I've got -- I have here, it looks like it was a misdemeanor theft probation; is that right?

VENIREPERSON FINCHER: For me?

THE COURT: Yeah, for you.

VENIREPERSON FINCHER: No.

THE COURT: That's not you?

VENIREPERSON FINCHER: No.

THE COURT: Okay. Well, I have a -- I have a -- same Social Security number, I've got the same birth date. Were you ever placed on probation for anything?

VENIREPERSON FINCHER: No.

THE COURT: This says it was a theft case, 750, Penal Code 31.03(a). And it says level or degree, it was a felony. Was it a felony? Huh?

VENIREPERSON FINCHER: I haven't had any charges.

126

THE COURT: You haven't had any charges?

VENIREPERSON FINCHER: No.

THE COURT: Filed September the 1st, 1993.

VENIREPERSON FINCHER: '93?

THE COURT: Uh-huh.

VENIREPERSON FINCHER: Huh-uh.

THE COURT: No?

VENIREPERSON FINCHER: I've never had any kind of -- the only thing I've ever had is one hot check.

THE COURT: Okay. Well, that's what it is.

VENIREPERSON FINCHER: But it wasn't $750. It was a hot check, and I wasn't on probation. I just went and paid the check.

THE COURT: It was less than $750.

VENIREPERSON FINCHER: Oh. I just went and paid the check.

THE COURT: Okay. All right. Well, let me ask you a little bit about that, because you called it a hot check. We call it theft by check. It's the same thing.

VENIREPERSON FINCHER: Okay.

THE COURT: Now, did you -- you went ahead -- you got noticed, I guess. Did you ever get arrested for it?

VENIREPERSON FINCHER: I got arrested.

127

THE COURT: You got arrested, so you went to jail and booked out and --

VENIREPERSON FINCHER: Yeah.

THE COURT: -- then you paid the check off. Were you placed on probation?

VENIREPERSON FINCHER: No. I just went to Ellis County and paid the DA's office on the check.

THE COURT: Okay. And did you pay a fine or court costs or anything like that or did you just pay the check?

VENIREPERSON FINCHER: I don't know. I just went down there and paid what they told me to pay.

THE COURT: Okay.

VENIREPERSON FINCHER: I think it was -- I think the check was like a hundred and something.

THE COURT: A hundred and something bucks?

VENIREPERSON FINCHER: Yeah.

THE COURT: And you paid how much? Just paid that amount?

VENIREPERSON FINCHER: I think I just paid for the check. I'm not real sure because it's been a long time ago.

THE COURT: Yeah. It was in '93.

VENIREPERSON FINCHER: But I was not on probation.

128

THE COURT: You were not on probation?

VENIREPERSON FINCHER: No.

THE COURT: You were never placed on probation?

VENIREPERSON FINCHER: No.

THE COURT: Or even a deferred?

VENIREPERSON FINCHER: Huh-uh.

THE COURT: Do you know what a deferred --

VENIREPERSON FINCHER: Yeah.

THE COURT: -- adjudication is?

VENIREPERSON FINCHER: No, I wasn't on that either.

THE COURT: You weren't on that either?

VENIREPERSON FINCHER: No.

THE COURT: Okay. Have you had any other theft by check cases --

VENIREPERSON FINCHER: No.

THE COURT: -- or -- or hot check cases --

VENIREPERSON FINCHER: No.

THE COURT: -- besides that one?

VENIREPERSON FINCHER: No.

THE COURT: That was it?

VENIREPERSON FINCHER: That's it.

THE COURT: Okay. All right. Any other questions?

129

MR. PARKS: Did she ever go in front of a judge?

THE COURT: What, Doug?

MR. PARKS: Did she ever go in front of a judge on that?

THE COURT: Well, did you go in front of a judge and pay your fine there, or how did that happen? Do you recall what happened, how you went and paid?

VENIREPERSON FINCHER: Well, I got arrested when I went to visit somebody in the Dallas County Jail.

THE COURT: Okay.

VENIREPERSON FINCHER: Maybe --

THE COURT: Well, did they have a warrant for you, I guess?

VENIREPERSON FINCHER: Uh-huh, there was a warrant.

THE COURT: Okay.

VENIREPERSON FINCHER: And I went to Lew Sterrett and I got bonded out, and then I just called the DA's office and I sent them whatever. I didn't go to the DA's office.

THE COURT: And it was in Ellis County? Is that where?

VENIREPERSON FINCHER: It was Ellis County.

THE COURT: Okay.

130

VENIREPERSON FINCHER: And I think I just sent them the money that they said I needed to send in for the check.

THE COURT: Okay.

MS. EVANS: Your Honor, I just have one additional question from the State.

THE COURT: Yes, ma'am, Ms. Evans, go ahead.

PEGGY FINCHER,
Venireperson No. 387, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Ms. Fincher, do you recall whenever you came down for the big panel, you filled out this really long questionnaire --

A. Uh-huh.

Q. -- 18 pages long? You were asked the question, I believe, if you yourself, close friends or family members had ever been accused, arrested, or convicted of a crime above the level of a traffic ticket.

A. Uh-huh.

Q. And you answered yes, you know, that I think you had a couple of sons and your husband and daughter had been arrested, accused, or convicted of some type of offense, but you did not list this hot check charge on here --

131

A. Oh.

Q. -- that you were arrested for, correct?

A. I guess I didn't understand that that was a -- I mean, I -- like he said, I considered it a hot check, and I didn't know, you know, it was just -- I didn't understand that that was considered more than a -- than a traffic violation.

Q. I understand.

A. So I evidently answered it wrong and --

THE COURT: Okay.

A. -- I mean, I --

Q. (BY MS. EVANS) That's okay. I just wanted to clarify --

A. -- just didn't understand that that's --

Q. -- that you did not --

THE COURT: That's fine.

Q. (BY MS. EVANS) -- include it, correct?

A. Yeah. That's fine.

Q. Okay.

THE COURT: Yeah. And I do have it. If you'd like to look at your questionnaire, here's the -- here's the response that you had, and I'd just like for you to check that.

VENIREPERSON FINCHER: Yeah, I listed them all except for mine.

132

THE COURT: Okay. All right.

VENIREPERSON FINCHER: That's fine.

THE COURT: All right. Thank you so much.

VENIREPERSON FINCHER: Uh-huh.

THE COURT: Any other questions, Ms. Evans?

MS. EVANS: Nothing from the State.

THE COURT: Mr. Parks -- or Mr. Lollar?

MR. LOLLAR: It sounds to me like this is something you can get expunged off your record.

VENIREPERSON FINCHER: Yeah, I probably need to check into that, huh?

MR. LOLLAR: Yeah.

VENIREPERSON FINCHER: Because if it says I was on probation, I was not on probation.

MR. LOLLAR: Right. Sometimes people come in and pay a fine or pay, you know, pay off the check and pay a fine. Unfortunately, that constitutes a final conviction for our purposes --

VENIREPERSON FINCHER: Uh-huh.

MR. LOLLAR: -- of picking a jury. And we can't tell from -- the State's had their investigators call down to Ellis County, and now it's in their records section someplace --

VENIREPERSON FINCHER: Okay.

MR. LOLLAR: -- and they can't find it or

133

they have to go drag it out of the warehouse or something. But the bottom line is, this is something that I think you can probably have expunged off your record.

VENIREPERSON FINCHER: Okay.

MR. LOLLAR: And you may want to do that --

VENIREPERSON FINCHER: All right.

MR. LOLLAR: -- just so you can be on a jury in the future.

VENIREPERSON FINCHER: Oh, okay.

MR. LOLLAR: Okay?

VENIREPERSON FINCHER: So that takes me off this jury?

THE COURT: It does.

MR. LOLLAR: Yeah.

THE COURT: I knew we'd make you unhappy.

MS. HANDLEY: Does that break your heart?

THE COURT: Anything else?

MR. LOLLAR: No, Your Honor.

MS. EVANS: Nothing for the State.

THE COURT: All right. Thank you, Ms. Fincher. We appreciate your time very much. Thank you for being here with us.

(Venireperson Fincher exits courtroom.)

THE COURT: Okay. So does the State have a

134

challenge for cause?

MS. EVANS: Your Honor, the State would submit Juror No. 387 for this theft charge, that she apparently paid a fine for as well as she did not disclose it on her questionnaire.

MR. LOLLAR: Well, we'll agree on the first issue but not on the second.

THE COURT: That she didn't disclose it on the questionnaire?

MR. LOLLAR: Right. We don't think that's a disqualifier.

THE COURT: Oh, okay. All right. State's challenge for cause will be granted.

Okay. Well, I think that does it, doesn't it? All right. Boys and girls, that was a quick afternoon.

(End of proceedings, 1:42 p.m.)

135

CERTIFICATE

THE STATE OF TEXAS    )

COUNTY OF DALLAS    )

I, Heather H. Vezina, Deputy Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE ___ DAY OF _____, 2009.

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

136

DISCLOSURE

Note: Supreme Court Rule Adopted and Promulgated in Conformity with Chapter 52 of the Government Code, V.T.C.A.

Please be advised that pursuant to Supreme Court Rule IV, B.4. With regards to disclosure, I, to the best of my knowledge, have no existing or past financial, business, professional, family or social relationships with any of the parties or their attorneys which might reasonably create an appearance of partiality, except as follows:

_____

_____

_____

_____

HEATHER H. VEZINA, CSR #6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

Jury Questionaires

Exhibits

Cannot be copied

are    137

```
------------------------
            -
------------------------
            A
```

abetted  (45:6)
abide  (55:8)
able  (12:8)(12:9)(12:14)
(19:12)(22:4)(38:20)
(45:21)(52:6)(53:1)(53:4)
(53:19)(53:20)(55:8)
(55:14)(56:9)(57:4)
(71:25)(74:17)(84:4)
(86:7)(96:23)(119:21)
about-face  (98:10)
above  (70:5)(130:19)
(135:7)
above-entitled  (1:19)
above-styled  (135:11)
absent  (3:17)(4:5)
absolute  (65:2)
absolutely  (63:8)(74:15)
(114:19)
absolves  (38:9)
absolving  (37:11)
abuse  (71:23)
academically  (103:3)
(103:8)(104:4)(104:9)
(105:8)
accept  (73:10)
accepted  (3:6)
accident  (27:19)
accompanied  (30:17)
accomplice  (44:24)
accordance  (76:20)
according  (16:19)(22:5)
31:1)(50:19)
accounts  (79:24)
accused  (27:13)(41:6)
(130:18)(130:23)
achieve  (27:18)
acknowledge  (21:10)
across  (9:2)(25:15)
act  (35:9)(36:7)(41:21)
acted  (60:18)
actions  (57:17)
acts  (34:13)(57:2)
(63:24)(63:25)
actual  (29:17)(41:21)
(90:1)
actually  (10:12)(19:23)
(19:25)(21:23)(23:5)
(68:23)(85:22)(85:23)
(89:11)(92:11)(98:24)
(103:3)(103:9)(122:25)
add  (120:16)
addition  (122:11)
additional  (120:23)
(130:6)
address  (88:19)
adequate  (74:13)(79:10)
adjourned  (4:12)
adjudication  (128:10)
administered  (6:25)(82:7)
adopted  (136:2)
advised  (122:13)(122:14)
(136:5)
advising  (78:21)
advisors  (33:22)
advocate  (59:9)
advocates  (59:9)
affected  (30:12)
affects  (34:14)
afoul  (87:24)
after  (25:4)(39:14)
(91:5)(98:5)(98:8)(108:15)
afternoon  (86:1)(109:4)

(109:19)(109:20)(110:16)
(113:17)(116:13)(123:23)
(134:16)
again  (10:8)(12:25)
(22:8)(22:10)(22:14)
(23:10)(25:7)(26:2)
(41:23)(62:21)(66:9)
(69:22)(71:21)(77:16)
(79:9)(91:21)(93:7)
(114:25)
against  (16:18)(38:17)
(105:12)(108:20)
age  (46:16)(47:6)(69:14)
(70:3)(70:25)
aggravated  (27:2)
aggravating  (68:23)
ago  (6:19)(12:24)(23:8)
(24:8)(82:2)(117:1)
(127:22)
agree  (27:23)(49:22)
(51:22)(68:25)(72:22)
(121:20)(134:6)
agreed  (68:24)(94:1)
agreement  (3:18)(120:20)
(120:24)(123:5)(123:9)
ahead  (5:17)(76:6)
(77:15)(109:15)(116:8)
(119:2)(121:12)(121:19)
(122:10)(123:22)(130:7)
ahead -- you  (126:23)
ah-ha  (34:22)
aid  (45:7)
aided  (45:5)(45:6)
aids  (119:23)
air  (104:22)
albeit  (15:25)
all  (5:5)(5:11)(7:6)
(8:23)(8:25)(9:24)(11:15)
(12:15)(17:18)(17:22)
(18:22)(20:1)(20:11)
(22:8)(22:23)(24:10)
(25:11)(25:20)(26:1)
(26:17)(27:8)(28:15)
(29:18)(30:14)(31:16)
(32:17)(33:25)(37:8)
(37:16)(38:22)(39:19)
(43:20)(46:1)(46:3)
(46:18)(47:5)(47:7)
(48:12)(50:22)(52:3)
(52:11)(54:22)(54:24)
(54:25)(55:19)(56:21)
(57:11)(59:25)(61:5)
(62:10)(63:13)(66:14)
(68:3)(68:24)(70:24)
(71:16)(71:20)(72:18)
(74:2)(74:8)(75:1)(75:11)
(76:9)(80:17)(81:5)(82:2)
(82:20)(84:3)(84:17)
(85:7)(86:13)(86:16)
(87:12)(87:25)(89:25)
(99:1)(103:11)(104:4)
(108:24)(109:13)(110:7)
(112:14)(112:18)(112:24)
(113:22)(114:22)(115:3)
(116:4)(116:23)(117:3)
(118:10)(118:16)(121:19)
(123:4)(123:19)(124:21)
(125:9)(126:17)(128:24)
(131:25)(132:1)(132:3)
(133:7)(133:21)(134:12)
(134:15)(135:8)(135:11)
allege  (42:6)(42:24)
alleged  (29:4)(42:16)
(42:25)(43:6)
allergies  (19:25)
allowed  (62:8)(62:9)
(71:24)

allows  (30:3)(61:7)(72:9)
almost  (13:21)(54:12)
(57:12)(68:7)
alone  (48:20)
along  (28:3)(34:21)
(36:6)(71:15)(74:18)
alphabetical  (4:1)
already  (12:11)(80:11)
(86:8)(87:21)(87:22)
(87:24)(89:14)
also  (8:1)(14:10)(24:11)
(45:2)(45:15)(52:20)
(53:17)(66:22)(79:16)
(80:2)(82:17)(82:23)
(83:5)(89:13)(91:14)
(102:18)(122:15)(122:17)
(122:21)
although  (102:22)
always  (58:11)(59:2)
(59:3)(65:19)(65:22)
(70:4)(119:21)
amend  (33:13)
american  (99:19)
amount  (35:4)(127:19)
analogy  (101:21)(103:14)
(105:14)
analysts  (92:11)

```
            -
```

-and-  (2:4)(2:5)(2:15)
(2:19)

```
            A
```

andrea  (2:3)(9:6)(31:14)
(84:11)(120:17)(122:10)
another  (11:21)(16:12)
(20:18)(21:2)(22:19)
(30:16)(41:11)(57:13)
(57:21)(57:22)(60:23)
(68:23)(69:2)(71:7)
(75:24)(91:9)(95:3)
(102:6)(103:14)(122:21)
another's  (37:12)
answer  (19:7)(19:9)
(39:4)(39:7)(39:9)(39:10)
(39:20)(40:9)(40:22)
(41:4)(41:8)(41:9)(41:14)
(46:1)(46:10)(47:12)
(47:13)(49:10)(49:20)
(51:21)(52:4)(54:14)
(54:18)(62:17)(65:1)
(66:8)(67:6)(67:15)
(94:23)(111:3)
answered  (17:7)(18:6)
(42:2)(53:7)(67:17)
(130:21)(131:9)
answering  (40:20)(58:8)
(67:5)(84:3)
answers  (7:9)(7:25)
(8:23)(13:25)(25:10)
(39:22)(76:12)(76:13)
(82:16)(83:24)(84:1)
(93:7)(96:22)(100:23)
anticipate  (78:23)(79:10)
anticipated  (89:24)
anxious  (58:14)
any  (12:18)(13:7)(15:3)
(16:2)(20:13)(25:17)
(33:14)(40:6)(40:20)
(43:18)(47:18)(49:7)
(50:22)(59:1)(59:20)
(59:21)(59:23)(60:15)
(61:15)(64:9)(67:18)
(68:21)(72:22)(72:25)
(73:21)(74:9)(74:16)
(77:3)(79:23)(79:24)
(80:2)(80:3)(80:14)

(83:14)(83:24)(95:6)
(103:1)(105:24)(106:23)
(108:17)(111:15)(111:22)
(112:10)(112:12)(114:14)
(115:13)(118:20)(125:24)
(126:1)(126:8)(128:15)
(128:24)(132:5)(135:15)
(136:9)
anybody  (37:13)(111:11)
(122:4)
anybody's  (87:10)
anyone  (23:22)(72:24)
(92:14)
anyone's  (37:16)
anything  (8:20)(12:19)
(12:20)(17:22)(18:7)
(23:23)(30:20)(35:25)
(46:16)(46:17)(47:19)
(55:21)(67:2)(68:10)
(79:14)(79:18)(79:21)
(79:24)(80:3)(80:18)
(83:25)(120:18)(125:19)
(127:9)(133:18)
anyway  (6:18)(7:25)
(9:15)(31:20)(78:17)
(82:1)(82:17)
anywhere  (105:13)
a-ok  (87:8)
apartment  (88:24)
apparently  (134:4)
appearance  (136:10)
appearing  (2:10)(2:24)
appears  (80:4)
apple  (64:13)
apples  (64:12)
applicable  (45:18)
appreciate  (85:10)(94:9)
(94:22)(104:9)(107:2)
(107:6)(112:1)(115:2)
(118:7)(133:22)
appreciation  (95:8)
appropriate  (35:7)
(56:24)(56:25)(57:8)
(66:1)(73:4)(74:12)(90:5)
(105:21)(117:20)
approximately  (12:2)
april  (14:15)(24:20)
(24:25)(25:20)
archives  (79:2?)
are  (5:7)(5:9)(7:22)
(7:23)(8:12)(8:13)(9:1)
(9:13)(10:10)(10:24)
(12:6)(13:9)(14:14)
(14:24)(15:16)(15:21)
(16:6)(16:7)(16:11)(17:7)
(17:19)(18:6)(18:21)
(19:19)(24:11)(26:8)
(26:12)(27:8)(28:20)
(28:21)(29:13)(29:24)
(31:11)(33:18)(33:25)
(39:6)(39:19)(40:10)
(41:5)(43:10)(49:9)
(51:14)(57:6)(57:9)
(57:17)(57:24)(58:14)
(59:18)(59:19)(60:23)
(62:8)(62:14)(66:17)
(67:7)(71:10)(72:2)(72:3)
(74:23)(76:17)(80:8)
(81:7)(81:15)(81:16)
(82:25)(84:11)(84:18)
(84:20)(85:15)(85:16)
(86:7)(87:8)(88:4)(88:8)
(88:11)(90:13)(90:18)
(91:2)(91:19)(92:9)(94:2)
(94:10)(94:11)(95:3)
(96:1)(96:4)(96:7)(96:21)
(100:3)(100:5)(100:23)

aren't                                                                                    but        138

(101:3) (102:14) (103:16)
(103:17) (105:21) (106:3)
(106:7) (108:16) (109:19)
(113:1) (113:12) (116:13)
(120:13) (120:14) (120:20)
(123:23)
**aren't** (9:14) (78:5)
(100:14) (103:22)
**argue** (73:23)
**argument** (22:9) (22:14)
**around** (31:20) (36:24)
(37:7) (70:3) (94:8) (97:17)
(101:14) (101:18) (103:5)
**arrested** (126:24)
(126:25) (127:1) (129:9)
(130:18) (130:23) (131:2)
**articles** (79:23) (80:3)
**articulate** (7:13)
**articulating** (7:16)
**ask** (7:6) (7:15) (15:13)
(32:17) (33:9) (35:21)
(46:15) (46:17) (48:12)
(53:23) (66:2) (75:3) (75:4)
(79:11) (83:1) (83:19)
(88:16) (101:2) (124:23)
(126:18)
**asked** (6:11) (6:24) (8:2)
(8:6) (15:20) (22:13)
(24:15) (26:5) (27:23)
(36:18) (37:9) (39:20)
(48:14) (81:20) (82:6)
(82:18) (96:4) (102:18)
(103:24) (113:15) (124:8)
(130:16)
**asking** (8:17) (26:21)
(49:6) (49:16) (49:19)
(49:21) (51:13) (72:11)
(85:17) (89:15) (94:8)
(125:9)
**asks** (20:13)
**aspects** (8:11) (8:19)
(83:13) (83:21)
**assess** (65:9) (102:24)
(112:10)
**assessed** (105:23)
(105:25) (111:16) (114:15)
(117:21)
**assignment** (11:15)
**assimilate** (72:18)
**assist** (6:11) (81:20)
(113:16) (124:8)
**assistant** (2:7) (2:21)
(84:18) (84:19) (110:9)
(116:24)
**assisting** (116:18)
**associated** (44:23)
**association** (99:20)
**assuming** (22:23) (33:22)
**attached** (32:13)
**attempt** (27:14)
**attempted** (29:7) (45:7)
**attempting** (29:8) (30:5)
**attend** (23:19) (24:9)
(90:18)
**attendant** (30:22) (34:20)
(35:8)
**attending** (23:6) (23:9)
(42:1)
**attention** (93:4) (94:13)
**attitude** (56:20)
**attorney** (2:13) (2:17)
**attorneys** (2:7) (8:3)
(8:6) (8:13) (9:1) (9:13)
(9:21) (9:22) (37:20) (75:6)
(78:3) (82:19) (82:25)
(83:15) (84:10) (84:18)
(84:20) (85:5) (87:1)

(110:9) (116:24) (136:9)
**attorney's** (2:7)
**audible** (84:1)
**august** (12:2) (78:24)
(78:25) (79:1) (79:2) (86:8)
(87:22) (89:14) (89:21)
(90:9) (90:18) (90:20)
(90:23) (90:25) (91:12)
**aurora** (3:10) (4:4)
(110:4) (110:5) (110:12)
(112:15)
**automatic** (39:14) (39:16)
(40:21) (40:23) (41:15)
**automatically** (40:24)
(41:13)
**autopsies** (99:21)
**available** (26:7)
**avoided** (15:23) (16:9)
**aware** (49:21) (99:22)
(121:8) (121:13)
**away** (23:5) (33:13) (46:7)
(62:14) (70:5)

## B

**back** (7:21) (13:1) (39:4)
(44:7) (52:20) (52:24)
(53:15) (53:22) (55:10)
(62:9) (62:16) (70:6)
(73:13) (75:6) (77:10)
(79:22) (85:22) (119:25)
(120:21) (120:24)
**background** (46:15) (52:7)
(54:25) (68:3) (68:10)
**backgrounds** (71:20)
**backtrack** (51:9) (53:4)
**bad** (10:13) (31:22)
(36:23) (67:21) (92:24)
(99:24) (100:1) (111:12)
**badder** (44:3)
**bailiff** (5:5) (75:5)
(77:8) (77:14) (81:5)
(109:13) (112:24) (115:21)
(116:4) (118:8) (119:8)
(121:4) (121:7) (121:13)
(121:17) (122:12) (123:13)
(123:19)
**bank** (43:25) (44:4) (44:7)
(44:8) (44:13) (44:19)
(45:15)
**barbosa** (3:10) (4:4)
(109:15) (109:19) (109:21)
(109:23) (110:5) (110:6)
(110:12) (110:16) (111:1)
(111:5) (111:9) (111:21)
(111:24) (111:25) (112:4)
(112:9) (112:15) (112:16)
**b-a-r-b-o-s-a** (110:7)
**based** (51:7) (63:13)
(66:17) (72:20) (77:2)
(80:12)
**basic** (8:10)
**basically** (7:24) (12:14)
(27:17) (33:1) (43:23)
(57:13) (70:25)
**basis** (40:20)
**become** (16:16) (18:16)
(19:3) (33:11) (38:5)
(38:10) (38:11) (38:23)
(78:6)
**becomes** (45:18) (61:1)
**been** (5:10) (5:12) (5:14)
(10:13) (11:3) (24:6)
(30:24) (40:12) (51:17)
(53:6) (56:7) (56:15)
(65:23) (66:14) (77:19)
(82:2) (82:15) (86:23)
(86:24) (117:1) (119:21)

(127:21) (130:18) (130:23)
**been over** (6:19)
**before** (1:21) (16:13)
(29:25) (30:24) (41:24)
(41:25) (46:24) (46:25)
(52:11) (58:18) (69:14)
(70:24) (88:17) (89:13)
(95:16) (95:20) (101:25)
(106:9) (106:10) (106:11)
(119:4)
**beg** (108:12)
**behalf** (2:10) (2:24)
**being** (10:10) (10:12)
(12:8) (15:25) (17:9) (21:2)
(24:15) (27:1) (29:11)
(38:1) (38:2) (39:15) (53:1)
(75:25) (98:17) (101:20)
(102:5) (102:13) (105:12)
(107:5) (112:1) (115:2)
(117:12) (118:8) (122:21)
(133:23)
**belief** (17:23) (38:18)
(47:22) (52:13) (54:11)
(114:9) (117:11)
**beliefs** (16:23) (17:4)
(18:9) (18:12) (18:17)
(20:13) (33:1) (36:16)
(45:13) (48:20) (48:24)
(49:4) (51:20) (54:14)
(54:22) (54:24) (55:2)
(76:17) (111:14) (122:18)
**believe** (12:1) (16:24)
(18:3) (18:14) (21:1)
(21:21) (24:21) (26:2)
(30:24) (33:6) (34:8)
(36:19) (37:1) (37:10)
(40:14) (40:19) (41:21)
(48:16) (48:20) (49:10)
(50:3) (51:25) (54:10)
(54:12) (54:13) (56:16)
(59:2) (59:4) (65:11)
(67:13) (74:10) (74:11)
(74:12) (75:22) (76:1)
(76:11) (76:15) (76:18)
(96:9) (96:12) (102:22)
(108:18) (114:5) (117:19)
(130:17)
**believing** (32:22)
**belong** (23:3) (28:21)
**below** (70:22)
**belt** (88:21) (88:23)
**besides** (10:10) (128:20)
**best** (10:18) (22:9)
(22:14) (54:3) (67:22)
(73:24) (102:20) (136:6)
**better** (85:4) (105:20)
**between** (11:9) (24:20)
(24:25) (25:20) (47:21)
(54:23) (71:9) (76:12)
**beyond** (19:8) (38:24)
(39:22) (41:3) (41:9) (42:3)
(60:2) (62:7) (66:8) (96:24)
**bias** (108:20)
**bible** (23:10)
**biblical** (36:19) (36:21)
**big** (14:16) (96:14)
(103:19) (110:19) (130:13)
**bigger** (44:3)
**birth** (125:18)
**birthday** (123:16)
(123:17) (124:13) (124:19)
**bit** (13:14) (126:18)
**black** (20:20) (50:1)
(50:17)
**bless** (5:17)
**block** (92:5)
**board** (46:20)

**body** (99:21)
**bonded** (129:19)
**booked** (127:2)
**born** (124:24)
**bossing** (31:20)
**both** (23:11) (120:20)
(120:23) (120:24)
**bother** (119:17)
**bothered** (56:21)
**bottom** (133:2)
**boulevard** (2:9) (2:22)
(135:21) (136:19)
**boys** (134:15)
**boys'** (70:5)
**brad** (2:12) (9:18) (14:4)
(84:24) (107:19)
**brain** (69:24) (72:6)
**brains** (69:22) (70:5)
**brave** (104:18) (105:2)
**break** (77:12) (133:17)
**briefly** (25:5)
**bring** (5:4) (75:6) (77:10)
(85:23) (85:24) (86:4)
(86:13) (98:12) (101:22)
(116:3) (119:24) (120:21)
(120:24)
**bringing** (122:25)
**broaden** (8:14)
**broadnax** (1:7) (9:23)
(16:18) (60:22) (85:6)
**brochure** (14:19) (27:12)
**broke** (32:2)
**broken** (16:6)
**brought** (67:9)
**buck** (59:6) (59:8)
**bucket** (104:11)
**bucks** (127:16)
**building** (2:8) (2:22)
**buildings** (103:19)
(103:25)
**burden** (37:11) (38:1)
(38:3) (38:7) (38:15)
(64:17) (64:18) (66:6)
(66:18) (66:21) (67:4)
(76:14) (77:4) (95:15)
**burglary** (87:15)
**business** (28:19) (81:24)
(136:8)
**busy** (25:24)
**but** (7:8) (7:14) (7:25)
(9:15) (11:24) (13:1) (13:4)
(13:5) (15:23) (16:9)
(16:11) (17:13) (18:8)
(18:25) (20:3) (20:15)
(21:1) (21:10) (21:15)
(21:18) (21:21) (22:23)
(23:4) (24:7) (25:4) (25:9)
(25:14) (25:21) (30:2)
(31:5) (32:1) (32:2) (32:13)
(32:25) (33:7) (34:14)
(34:25) (35:12) (36:2)
(37:4) (37:11) (38:1) (38:7)
(38:10) (38:15) (38:19)
(42:13) (42:15) (42:17)
(43:4) (43:5) (43:22)
(44:20) (44:24) (45:14)
(46:13) (46:19) (47:7)
(48:6) (49:7) (51:13)
(51:25) (52:12) (52:23)
(53:5) (53:16) (54:2)
(54:17) (54:20) (55:10)
(56:9) (56:12) (59:18)
(64:3) (64:10) (65:2) (69:4)
(69:11) (69:17) (70:15)
(70:19) (70:24) (71:12)
(71:13) (71:16) (71:21)
(72:10) (73:16) (73:21)

(74:10)(74:24)(78:17)
(79:5)(79:9)(79:14)(82:1)
(92:17)(82:25)(84:4)
(87:16)(87:24)(88:13)
(89:13)(90:8)(92:21)
(93:9)(94:1)(95:6)(96:10)
(96:17)(96:22)(99:4)
(103:1)(103:8)(103:11)
(104:15)(105:11)(105:22)
(106:7)(106:25)(111:4)
(117:20)(119:2)(119:4)
(119:17)(122:1)(122:14)
(126:11)(127:24)(130:24)
(133:2)(134:7)
**bye-bye**  (118:13)

### C

**cake**  (95:20)
**calendar**  (79:1)
**call**  (6:14)(15:8)(25:7)
(25:22)(26:1)(43:23)
(60:19)(86:15)(87:12)
(87:15)(92:2)(119:11)
(119:12)(123:11)(126:19)
(132:22)
**called**  (17:9)(23:1)
(45:10)(48:17)(66:15)
(86:23)(86:24)(119:8)
(126:18)(129:19)
**calls**  (97:11)
**calm**  (2:17)
**came**  (1:19)(32:18)
(44:19)(45:15)(79:16)
(85:19)(85:25)(86:1)
(106:9)(119:18)(130:12)
**can**  (6:5)(6:9)(7:8)(7:9)
(7:18)(11:20)(11:23)
(13:4)(18:18)(21:21)
(23:1)(29:12)(29:25)
(30:24)(30:25)(33:13)
(33:25)(35:21)(38:4)
(40:15)(40:20)(41:25)
(44:7)(44:13)(44:21)
(45:2)(45:3)(45:10)
(45:11)(45:15)(45:16)
(46:16)(46:19)(46:20)
(48:21)(51:6)(52:8)
(52:17)(52:23)(53:14)
(54:1)(56:13)(58:15)
(58:18)(58:20)(58:22)
(58:25)(59:25)(68:2)
(69:9)(69:15)(71:13)
(71:18)(72:15)(72:21)
(75:20)(75:22)(76:1)
(77:23)(79:13)(84:2)
(87:2)(87:7)(87:17)
(88:15)(88:16)(91:23)
(92:20)(93:14)(93:18)
(94:11)(95:21)(95:22)
(96:9)(97:21)(98:10)
(100:1)(103:5)(103:6)
(103:7)(104:16)(104:17)
(105:2)(106:5)(106:6)
(106:7)(107:8)(107:25)
(111:2)(118:7)(118:15)
(119:14)(121:20)(123:4)
(123:11)(132:9)(133:3)
(133:8)
**cancel**  (79:13)
**cancer**  (98:12)
**cannot**  (57:1)(58:21)
(63:15)(74:9)(90:2)
(92:24)(95:1)(115:13)
(118:19)
**can't**  (13:2)(15:4)(15:6)
(15:9)(16:8)(18:11)
(18:25)(19:22)(48:6)

(59:16)(59:19)(59:20)
(63:4)(63:5)(63:7)(63:19)
(64:3)(69:8)(86:9)(86:10)
(87:16)(87:23)(90:7)
(93:16)(93:17)(94:5)
(94:15)(94:17)(94:20)
(103:12)(111:4)(132:21)
(132:25)
**capable**  (94:11)
**capital**  (6:12)(14:20)
(14:21)(14:25)(19:9)
(27:3)(27:9)(27:13)(28:2)
(29:3)(29:12)(29:13)
(31:23)(32:5)(34:1)
(35:15)(38:25)(39:13)
(39:15)(40:3)(40:7)
(40:15)(42:4)(44:17)
(44:18)(45:5)(45:16)
(56:24)(57:24)(57:25)
(58:22)(61:20)(61:23)
(62:22)(64:23)(76:17)
(81:20)(83:14)(96:25)
**car**  (30:20)(44:20)
**care**  (44:10)(81:23)
**careful**  (108:15)
**carefully**  (73:19)(73:20)
**carla**  (3:12)(4:8)(113:9)
(113:25)(115:17)
**carolina**  (90:21)(91:1)
**case**  (6:12)(8:12)(8:19)
(9:16)(14:20)(14:21)
(14:22)(16:17)(17:6)
(17:13)(21:4)(24:23)
(27:10)(27:11)(29:15)
(30:14)(43:11)(45:18)
(58:23)(59:4)(59:18)
(60:15)(61:6)(62:11)
(65:21)(66:17)(67:21)
(68:6)(69:11)(74:8)
(76:15)(78:23)(79:17)
(80:17)(81:20)(81:21)
(83:14)(83:15)(83:22)
(84:20)(84:21)(85:7)
(86:3)(86:6)(86:7)(86:10)
(86:11)(86:14)(86:17)
(86:24)(87:4)(87:8)
(87:15)(87:16)(87:17)
(89:25)(90:1)(94:14)
(94:19)(94:25)(95:4)
(95:5)(95:6)(95:7)(95:24)
(96:16)(97:3)(101:20)
(108:20)(109:2)(112:3)
(112:17)(115:19)(116:19)
(122:22)(124:8)(125:21)
**cases**  (27:8)(60:16)
(60:18)(60:19)(74:6)
(105:22)(117:20)(128:16)
(128:18)
**category**  (63:4)
**catercorner**  (9:3)
**cause**  (1:3)(1:20)(3:5)
(3:8)(3:9)(3:10)(3:11)
(3:13)(3:14)(3:15)(3:16)
(3:19)(3:20)(43:5)(47:10)
(52:22)(58:1)(75:12)
(76:4)(76:8)(76:21)
(76:23)(77:5)(108:7)
(108:25)(112:7)(112:9)
(112:16)(115:10)(115:17)
(118:17)(118:24)(121:11)
(121:21)(134:1)(134:13)
(135:11)
**caused**  (60:22)
**causes**  (36:17)
**center**  (11:2)
**central**  (6:22)(82:3)
(85:19)

**certain**  (24:4)(26:8)
(26:24)(48:22)(94:12)
**certainly**  (27:24)(34:13)
(58:21)
**certainty**  (87:17)(94:6)
(94:18)
**certificate**  (4:13)
**certification**  (135:22)
(136:20)
**certify**  (135:6)(135:13)
**challenge**  (3:5)(3:8)
(3:10)(3:13)(3:15)(3:19)
(16:24)(75:12)(76:3)
(77:5)(108:7)(108:9)
(108:25)(112:7)(112:9)
(112:16)(115:10)(115:12)
(115:16)(118:17)(118:19)
(118:24)(121:21)(134:1)
(134:13)
**chamber**  (98:20)
**chambers**  (135:12)
**chance**  (46:4)(46:13)
(53:5)
**change**  (11:17)(33:13)
(33:14)(33:16)(34:4)
(63:4)(63:5)(63:7)(63:19)
(66:22)(89:15)(97:9)
(97:20)(97:24)(98:11)
(106:4)
**changed**  (25:17)
**changes**  (66:21)
**changing**  (68:12)
**channel**  (122:23)
**chapter**  (136:3)
**character**  (41:17)(52:7)
(68:2)(68:10)
**charge**  (61:4)(70:10)
(130:24)(134:3)
**charged**  (9:15)(27:3)
(27:12)(28:2)(29:3)(32:5)
(35:14)(44:13)(44:21)
(45:2)(45:10)(45:11)
(45:15)(84:21)
**charges**  (125:25)(126:1)
**charting**  (11:19)
**check**  (88:15)(89:8)
(89:11)(119:9)(126:9)
(126:12)(126:13)(126:16)
(126:19)(127:4)(127:7)
(127:10)(127:15)(127:21)
(128:16)(128:18)(130:3)
(130:24)(131:4)(131:23)
(132:11)(132:16)
**checked**  (88:17)
**cheek**  (36:22)(37:2)
**child**  (27:5)(71:23)(72:5)
**children's**  (11:1)(11:2)
(11:3)
**choice**  (33:13)(37:3)
(37:5)(97:9)(124:22)
**choices**  (48:24)(105:15)
**choose**  (51:11)(60:9)
(95:25)
**chooses**  (72:4)
**christ**  (97:21)(97:25)
(98:11)
**christian**  (16:1)(23:12)
(36:16)
**chronological**  (3:1)
**church**  (23:3)(23:5)
(23:6)(23:9)(23:10)
(23:11)(23:13)(24:1)
(24:2)(24:3)(73:2)(73:7)
**churches**  (23:12)(23:16)
(23:20)
**circled**  (102:21)(111:16)

(114:13)(117:19)
**circumstance**  (98:3)
(112:11)(115:13)(118:20)
**circumstances**  (30:22)
(34:21)(35:9)(41:19)
(42:1)(54:24)(67:14)
(68:2)(102:24)(105:24)
(108:17)(111:15)(114:14)
(122:16)
**circumstantial**  (29:20)
**citizen**  (87:6)
**city**  (53:22)(89:3)
**clarify**  (131:13)
**classes**  (23:19)
**clean**  (103:25)
**cleaned**  (104:2)
**clear**  (22:18)(24:21)
**clerks**  (44:11)
**clock**  (11:8)
**close**  (70:24)(130:17)
**closed**  (91:21)
**closing**  (88:1)
**code**  (89:1)(125:22)
(136:4)
**coffee**  (59:6)(59:9)
**coleman**  (3:17)(4:5)
(115:21)(119:1)(119:9)
(121:5)(121:12)(122:12)
(123:9)(123:11)
**coleman's**  (115:24)
**colleague**  (31:13)(31:15)
(43:24)(44:19)(45:14)
**colleagues**  (24:12)(51:1)
**collectively**  (67:18)
**come**  (32:19)(39:4)(41:7)
(43:8)(44:7)(52:3)(73:7)
(73:14)(85:22)(86:16)
(86:25)(87:7)(93:12)
(98:11)(101:10)(116:6)
(121:18)(121:23)(121:25)
(122:4)(123:12)(132:15)
**comes**  (42:9)(43:2)
(57:11)(72:17)(97:21)
(97:24)(103:9)(105:19)
**comfortable**  (37:17)
(100:4)(100:5)(100:10)
(103:17)(104:23)
**coming**  (14:15)(25:7)
(80:14)(106:25)(112:1)
(118:6)(119:14)(119:15)
**commandment**  (114:6)
**commerce**  (2:13)
**commission**  (45:7)
**commit**  (27:14)(29:7)
(30:5)(39:25)(52:21)
(58:6)(63:23)
**commits**  (27:8)
**committed**  (18:3)(27:3)
(29:6)(38:25)(42:4)
(50:10)(57:16)(61:10)
**committing**  (27:13)(30:5)
**common**  (27:7)
**communications**  (92:6)
**companies**  (70:7)
**company**  (91:17)
**compass**  (48:18)(49:12)
(50:20)(67:1)(67:20)
(68:5)(68:17)
**complete**  (98:10)
**completed**  (11:19)
**comprise**  (9:12)(9:22)
(85:5)
**computer**  (57:9)
**computer-aided**  (1:24)
**computerized**  (1:23)
**conceding**  (58:21)
**concentrating**  (105:3)

concentration (92:21) (94:13) (95:2) (105:5)
concept (36:18) (48:14) (48:17) (51:23) (51:25)
concerned (31:8) (59:22) (66:6)
concerning (8:18) (83:12) (83:21) (113:20) (119:18)
concerns (58:4) (120:23)
concession (59:7)
condemning (37:14)
condition (61:8)
confer (75:5)
conflicts (12:12)
conformity (136:3)
conforms (70:3)
confronted (61:24)
conjunction (31:12)
cons (100:18)
conscious (27:18)
consensus (68:21)
consequently (6:16)
consider (17:13) (24:16) (39:6) (46:3) (52:11) (65:12) (68:2) (68:18) (70:15) (73:19) (73:20) (77:3)
consideration (52:6) (67:25) (69:20) (71:6) (71:19) (94:19) (108:16)
considered (28:7) (131:4) (131:6)
considering (74:11)
consistently (108:13)
consternation (17:8) (36:17)
constitute (40:2) (64:1) (99:17)
constitutes (132:17)
contains (135:7)
contested (59:21)
context (24:18) (29:12) (30:4)
continue (64:25)
continues (63:25)
continuing (40:2) (40:10) (46:8) (52:22) (62:23) (64:1) (64:4)
conversation (53:25) (54:4)
conversations (23:22) (24:12)
convicted (39:13) (39:15) (40:3) (40:6) (40:12) (61:23) (130:18) (130:23)
conviction (132:18)
convictions (51:2) (51:18) (106:8)
convince (17:24)
coordinator (78:19) (122:1)
co-pilot (53:24)
coppell (88:6) (89:4)
correct (6:1) (10:24) (10:25) (13:13) (21:24) (22:1) (22:2) (22:7) (22:21) (23:2) (24:24) (26:25) (31:24) (38:14) (43:16) (48:1) (50:21) (53:13) (65:17) (91:14) (102:25) (110:5) (111:17) (111:18) (113:10) (114:7) (114:16) (117:13) (117:14) (117:22) (124:24) (125:2) (125:7) (131:2) (131:17) (135:7)
correctly (135:14)
costs (127:9)

could (10:13) (13:16) (15:22) (16:9) (17:6) (17:24) (19:13) (19:15) (20:11) (21:25) (25:12) (27:3) (28:6) (32:5) (43:8) (51:6) (51:9) (61:10) (63:6) (63:19) (64:18) (67:14) (67:22) (69:13) (69:17) (70:15) (71:6) (71:15) (98:12) (102:24) (103:10) (104:16) (105:22) (105:24) (108:14) (108:17) (108:19) (111:15) (112:10) (114:14) (115:12) (117:21) (118:20) (121:18) (122:16)
couldn't (75:15) (117:24) (118:1)
counsel (135:9)
county (1:7) (1:22) (2:8) (2:21) (84:19) (88:5) (88:9) (88:10) (88:13) (89:11) (107:7) (127:7) (129:10) (129:22) (129:24) (132:22) (135:3) (135:6)
couple (24:8) (100:22) (100:24) (107:25) (130:22)
coupled (34:12)
course (18:3) (29:4) (29:8) (39:1) (65:10) (65:24) (79:12)
court (1:6) (4:12) (4:13) (5:3) (5:4) (5:7) (5:10) (5:14) (5:17) (6:2) (6:4) (6:8) (6:18) (6:21) (7:3) (7:6) (7:8) (7:11) (7:14) (7:18) (8:5) (8:9) (8:25) (9:5) (9:10) (9:21) (10:3) (10:15) (14:7) (26:10) (42:9) (43:2) (46:23) (55:19) (55:23) (55:25) (67:23) (72:25) (75:2) (75:9) (75:11) (75:20) (76:3) (76:6) (76:9) (76:22) (76:25) (77:5) (77:9) (77:15) (77:25) (78:3) (78:8) (78:12) (78:15) (78:19) (79:4) (79:9) (79:16) (79:20) (80:2) (80:7) (80:17) (80:20) (80:22) (81:1) (81:4) (81:7) (81:11) (81:17) (81:24) (82:11) (82:14) (82:23) (83:8) (83:10) (84:2) (84:8) (84:14) (85:1) (85:3) (88:16) (88:19) (88:23) (88:25) (98:3) (98:7) (107:4) (107:10) (107:14) (107:16) (107:19) (107:21) (107:24) (108:2) (108:4) (108:6) (108:11) (108:22) (108:24) (109:5) (109:8) (109:10) (109:12) (109:15) (109:22) (109:24) (110:7) (110:23) (110:24) (111:2) (111:6) (111:22) (111:25) (112:5) (112:12) (112:14) (112:21) (113:1) (113:4) (113:12) (113:14) (113:22) (114:22) (115:1) (115:5) (115:7) (115:9) (115:16) (115:23) (116:3) (116:6) (116:11) (116:16) (118:3) (118:6) (118:13) (118:15) (118:23) (119:5) (119:10) (119:12) (120:5) (120:8) (120:11) (120:13) (120:17) (121:1) (121:3) (121:6)

(121:9) (121:16) (121:19) (121:23) (122:1) (122:4) (122:8) (122:14) (123:2) (123:4) (123:8) (123:14) (123:18) (123:21) (123:25) (124:6) (124:12) (124:16) (124:18) (124:21) (125:1) (125:4) (125:5) (125:7) (125:9) (125:13) (125:15) (125:17) (125:21) (126:1) (126:3) (126:5) (126:7) (126:10) (126:14) (126:17) (126:22) (127:1) (127:4) (127:8) (127:9) (127:13) (127:16) (127:18) (127:23) (128:1) (128:3) (128:6) (128:8) (128:10) (128:13) (128:15) (128:18) (128:20) (128:22) (128:24) (129:3) (129:6) (129:11) (129:13) (129:17) (129:22) (129:25) (130:4) (130:7) (131:10) (131:16) (131:20) (132:1) (132:3) (132:5) (132:7) (133:14) (133:16) (133:18) (133:21) (133:25) (134:8) (134:12) (135:4) (135:5) (135:12) (135:20) (136:2) (136:5) (136:18)
courtroom (5:6) (75:10) (77:13) (80:25) (81:6) (81:23) (109:14) (112:4) (112:25) (115:8) (116:5) (118:14) (123:20) (133:24)
courts (2:8) (2:22) (63:11) (64:25)
court's (3:6) (3:8) (3:11) (3:13) (3:16) (3:20) (61:3)
coworkers (103:6)
create (136:10)
crime (27:3) (28:4) (28:7) (28:14) (29:17) (31:22) (36:1) (36:3) (40:25) (41:17) (42:2) (42:21) (44:13) (44:21) (45:3) (45:7) (45:11) (46:14) (50:10) (68:3) (111:12) (130:19)
crimes (18:2) (26:6) (26:11) (26:14) (26:25) (27:8) (33:17) (33:18) (33:25) (40:1) (52:22) (57:16)
criminal (1:5) (2:7) (27:6) (34:13) (60:25) (63:23) (135:5) (135:20) (136:18)
criminally (71:10)
cross (73:8)
crowley (2:8) (2:22)
cruel (99:17)
csr (135:19) (136:17)
culpability (55:1) (68:4)
culpable (60:20) (60:23) (61:3) (61:11)
cup (59:6) (59:8)
cupcake (95:20)
cure (98:12)
curious (31:3) (70:7)
currently (11:7)

**D**

dad (15:8) (47:21)
dad's (48:4)
dallas (1:7) (1:22) (2:8) (2:9) (2:14) (2:18) (2:21) (2:23) (23:8) (84:19) (88:5)

(88:8) (88:10) (88:13) (89:11) (103:19) (107:7) (129:10) (135:3) (135:6) (135:21) (136:19)
damage (30:10)
danger (52:17) (52:21) (62:23) (67:6)
darn (71:14)
da's (31:16) (127:7) (129:20) (129:21)
date (97:15) (125:19)
daughter (130:22)
davis (3:7) (4:6) (81:6) (81:7) (81:10) (81:14) (81:15) (81:16) (82:10) (82:13) (82:22) (83:7) (83:9) (84:7) (84:13) (85:11) (85:18) (88:21) (88:24) (89:2) (89:5) (89:7) (95:9) (98:14) (106:4) (106:22) (107:5) (107:8) (108:13) (109:1)
dawned (44:9)
day (1:18) (5:14) (11:24) (13:17) (18:22) (25:3) (28:17) (33:10) (33:12) (33:21) (73:15) (74:4) (85:19) (91:22) (93:12) (97:13) (103:11) (135:17)
days (11:13) (21:15) (79:6) (90:4)
deacon (23:23)
dead (42:15) (43:3)
deadly (42:7)
deal (37:24) (74:7) (74:18) (74:19) (96:14) (119:2)
dealing (71:13)
death (14:14) (14:22) (15:6) (15:21) (17:8) (18:22) (19:11) (19:13) (20:4) (22:10) (22:19) (23:17) (24:13) (24:16) (24:23) (25:1) (26:6) (26:24) (27:9) (30:3) (30:25) (33:15) (34:1) (34:8) (34:23) (35:15) (36:12) (36:17) (37:14) (42:16) (43:5) (45:16) (46:6) (46:11) (47:11) (47:22) (51:12) (52:12) (52:23) (53:18) (54:13) (57:14) (57:15) (58:14) (58:19) (59:5) (60:23) (62:11) (62:13) (65:9) (65:15) (67:11) (67:18) (68:12) (69:15) (76:14) (86:4) (96:5) (96:8) (97:5) (97:10) (99:5) (100:13) (100:17) (100:20) (102:6) (102:9) (102:19) (102:22) (103:2) (103:17) (105:6) (105:13) (105:23) (105:25) (108:15) (108:18) (111:11) (111:14) (111:16) (112:10) (114:10) (114:15) (115:14) (117:18) (117:20) (117:21) (118:21) (122:17)
debate (18:22) (58:7)
debater (73:24)
decide (43:25) (62:10) (62:16)
decides (21:19)
deciding (22:19) (51:3) (54:18)
decision (38:13) (61:2) (61:6) (69:5) (72:2) (72:5)

decision-making                                                    evans    141

(72:7)(72:12)(72:13)
(72:19)(73:1)(73:3)(73:6)
(73:8)(73:9)(75:7)
(105:11)(124:22)
decision-making  (51:8)
decisions  (49:4)(66:14)
(66:16)(67:12)(72:3)
(73:10)
decrease  (33:18)
default  (57:8)
defend  (73:23)
defendant  (2:24)(5:3)
(9:23)(14:25)(16:18)
(21:5)(29:3)(38:24)(40:6)
(42:11)(42:25)(46:5)
(50:3)(58:16)(60:17)
(60:18)(61:18)(63:3)
(63:18)(64:10)(65:6)
(67:15)(67:17)(68:9)
(81:4)(85:7)(93:5)(96:24)
(97:3)(97:23)(109:12)
(122:22)
defendant's  (54:25)
(61:9)(68:1)
defender  (2:21)
defender's  (2:21)
defense  (3:4)(4:3)(9:22)
(17:22)(56:2)(76:22)
(84:24)(85:5)
deferred  (128:6)(128:8)
define  (73:17)
definitely  (106:19)
definition  (63:10)(71:14)
degree  (48:9)(125:22)
deliberate  (73:16)(90:3)
(90:6)(90:8)
aliberated  (90:4)
deliberating  (54:18)
deliberations  (91:24)
denied  (77:6)
depend  (108:21)
depending  (17:6)(29:22)
(46:10)
depends  (11:15)(18:4)
(93:14)
depth  (48:2)
deputy  (135:4)(135:20)
(136:18)
describe  (28:12)
describes  (105:20)
description  (4:17)
deserved  (50:4)
deserves  (62:11)
deserving  (57:17)(57:21)
(57:22)
designated  (57:25)
designed  (57:4)
detail  (61:1)
details  (29:17)(29:23)
(29:24)(31:4)(31:8)(41:16)
determination  (59:12)
(61:11)(64:19)
determinations  (62:15)
determine  (18:11)(51:19)
(52:8)(52:9)(57:24)
(58:15)(61:21)(63:2)
(68:9)(68:17)
detrimental  (34:18)
develop  (70:2)
deviations  (70:22)
dictionary  (73:18)
did  (24:23)(27:25)
(31:12)(32:19)(42:3)
(45:12)(45:20)(49:6)
(50:3)(52:7)(52:8)(52:22)
(56:21)(60:8)(64:13)
(67:5)(83:5)(91:21)

(106:10)(107:19)(109:3)
(126:22)(126:23)(127:8)
(127:9)(129:1)(129:4)
(129:6)(129:7)(129:13)
(130:24)(131:15)(134:4)
didn't  (20:3)(25:21)
(25:22)(31:20)(37:24)
(43:14)(49:17)(67:8)
(79:21)(93:8)(129:20)
(131:3)(131:5)(131:14)
(134:8)
die  (52:25)(57:25)
(98:14)(98:16)
dies  (98:22)
difference  (71:8)
different  (16:9)(64:15)
(66:14)(73:14)(86:3)
(99:1)(103:1)(103:10)
difficult  (13:14)(18:10)
(37:21)(52:9)
dignity  (34:15)
dire  (1:12)(6:13)(9:25)
(10:6)(13:8)(56:2)(82:20)
(85:13)(110:14)(114:2)
(117:8)(130:10)
directed  (45:6)
disabilities  (70:23)
disability  (71:2)(71:3)
disagree  (49:23)
disclose  (134:5)(134:8)
disclosure  (136:6)
discovered  (99:21)
discretion  (74:18)
discuss  (109:3)
discussed  (120:19)
discussing  (51:17)
discussion  (120:12)
(122:7)
dispute  (43:3)(59:18)
disqualifier  (134:11)
disregard  (49:11)
distracted  (92:23)
(92:25)(93:11)
distraction  (94:7)
district  (1:5)(2:7)
(6:10)(81:18)(84:18)
(84:19)(110:9)(113:15)
(116:17)(116:24)(124:6)
(135:5)(135:20)(136:18)
does  (33:7)(36:23)(37:6)
(37:9)(41:22)(47:3)(47:7)
(48:18)(52:3)(52:15)
(59:14)(61:12)(69:6)
(71:16)(73:11)(74:1)
(75:12)(76:22)(86:17)
(86:19)(97:14)(97:23)
(98:3)(99:17)(108:7)
(108:18)(108:20)(112:7)
(115:10)(118:17)(133:14)
(133:17)(133:25)(134:14)
doesn't  (28:11)(34:25)
(36:23)(37:17)(38:19)
(41:5)(43:9)(56:16)
(56:20)(62:22)(62:25)
(68:20)(70:2)(70:6)(71:8)
(73:24)(96:10)(96:11)
(96:12)(96:17)(96:18)
(97:6)(97:13)(97:22)
(97:23)(97:24)(98:9)
(98:14)(100:2)(103:15)
(123:12)(134:14)
doing  (5:8)(6:15)(10:10)
(14:12)(17:11)(27:15)
(29:8)(41:6)(43:18)
(77:21)(81:8)(81:22)
(85:15)(85:18)(92:15)
(94:11)(95:10)(103:9)

(103:11)(104:3)(110:2)
(113:2)(113:17)(116:14)
(124:9)
done  (14:9)(25:4)(27:20)
(29:23)(30:9)(35:13)
(47:14)(54:9)(73:6)
(98:10)(98:24)(99:20)
(100:16)(100:19)(104:4)
(104:8)(120:14)(120:15)
don't  (10:21)(12:22)
(13:4)(16:2)(17:10)
(20:25)(23:18)(23:21)
(25:16)(27:11)(28:7)
(28:11)(29:19)(31:2)
(32:12)(32:14)(33:16)
(33:21)(34:5)(34:19)
(36:5)(36:24)(37:5)
(37:13)(37:14)(37:16)
(38:18)(41:21)(43:8)
(44:1)(47:10)(47:11)
(47:12)(49:2)(51:22)
(53:3)(54:16)(54:20)
(54:23)(55:1)(59:20)
(59:23)(60:12)(60:15)
(64:15)(65:8)(65:9)
(65:19)(66:4)(69:22)
(71:9)(71:10)(71:11)
(72:2)(72:23)(73:17)
(73:22)(73:23)(75:13)
(75:14)(75:17)(77:3)
(79:22)(80:4)(80:13)
(91:13)(92:3)(92:4)(92:8)
(92:13)(93:2)(93:3)
(93:17)(95:10)(97:7)
(97:8)(102:15)(106:14)
(109:24)(111:10)(119:1)
(119:12)(121:24)(122:1)
(122:24)(123:16)(127:11)
(134:10)
door  (44:8)
do-over  (119:25)
doubt  (19:8)(38:24)
(39:22)(41:3)(41:9)(42:4)
(60:2)(62:7)(66:8)(96:24)
doug  (9:18)(56:4)(85:1)
(120:14)(129:3)
douglas  (2:16)
down  (7:18)(7:19)(9:11)
(9:17)(9:19)(9:24)(10:18)
(10:22)(12:19)(21:18)
(23:8)(25:10)(57:11)
(57:16)(67:9)(72:17)
(81:24)(84:4)(84:16)
(84:23)(85:6)(85:19)
(85:21)(85:23)(86:14)
(86:16)(86:25)(87:7)
(87:12)(93:12)(97:23)
(105:19)(106:16)(110:22)
(110:24)(119:18)(123:1)
(123:12)(124:15)(127:12)
(130:13)(132:22)
downtown  (103:19)
drag  (133:1)
drink  (55:21)(72:4)
drivers  (70:11)
drugs  (72:4)(99:1)
during  (11:17)(12:15)
(13:17)(14:12)(65:24)
(82:23)(90:23)(91:22)
duties  (12:10)(76:19)
duty  (12:24)(27:5)(65:2)
(86:23)(95:16)
dwi  (87:16)

---
**E**
---

each  (8:2)(16:17)(62:4)
(62:6)(68:17)(69:3)

(73:10)(82:8)(82:18)
earlier  (29:1)(36:16)
(62:12)
early  (58:5)(69:18)
(78:16)
earned  (46:11)
earth  (21:15)(21:18)
easier  (103:2)
east  (88:21)(88:23)
(98:13)
effect  (72:6)
effort  (105:5)(107:6)
eighty  (103:21)
either  (15:4)(15:18)
(23:10)(23:16)(23:20)
(24:2)(24:3)(29:8)(30:17)
(39:10)(45:5)(47:24)
(61:7)(63:9)(66 21)
(71:11)(78:5)(82:19)
(97:3)(122:1)(128:12)
(128:13)
elaine  (2:6)(9:11)(84:16)
elder  (23:23)
element  (61:15)(62:6)
eligible  (27:9)(29:11)
(33:18)(35:15)(36:11)
elizabeth  (113:9)
ellis  (127:7)(129:22)
(129:24)(132:22)
else  (11:21)(30:6)
(75:21)(80:18)(93:21)
(106:5)(133:18)
else's  (16:3)
e-mail  (119:16)
embarrass  (83:25)
embarrassed  (119:20)
embarrassing  (8:21)
employee  (93:11)
employees  (44:1)(44:14)
employer  (13:10)(92:9)
encouraged  (45:6)
end  (9:18)(9:24)(19:14)
(27:24)(29:5)(32:21)
(61:19)(73:15)(74:4)
(85:3)(85:6)(134:17)
ends  (105:21)
engage  (32:23)
engine  (44:5)(44:21)
enjoys  (37:13)
enough  (11:23)(28:14)
(33:3)(33:21)(43:3)(44:1)
(47:4)(70:24)(79:10)
(79:11)(94:22)
enters  (5:6)(77:13)
(81:6)(109:14)(112:25)
(116:5)(123:20)
entire  (72:10)
entirely  (15:9)(22:20)
(33:8)
entirety  (13:20)
entitled  (74:15)(96:25)
entity  (36:9)
episcopalian  (73:5)
episode  (27:6)
equivalent  (54:12)
eric  (3:17)(4:5)(121:12)
(123:9)
especially  (13:13)(48:2)
(54:8)
essentially  (14:12)
(16:16)(60:10)(67:24)
(76:11)
eternal  (21:19)(21:22)
evans  (2:6)(9:11)(84:16)
(84:17)(110:8)(110:10)
(110:11)(110:15)(110:25)
(111:3)(111:8)(111:9)

(112:8) (112:20) (113:18) (113:23) (113:24) (114:3) (115:11) (117:4) (117:5) (117:9) (118:12) (118:18) (130:5) (130:7) (130:11) (131:12) (131:17) (132:5) (132:6) (133:20) (134:2)

**even** (32:5) (35:12) (36:5) (37:1) (45:11) (52:21) (53:16) (57:1) (58:18) (63:15) (64:9) (64:22) (67:18) (68:24) (76:1) (78:13) (95:16) (95:20) (95:22) (99:1) (99:7) (103:8) (104:17) (104:20) (105:1) (105:23) (108:15) (128:6)

**ever** (16:13) (20:18) (24:15) (37:16) (40:20) (61:24) (66:11) (95:20) (102:22) (107:22) (125:19) (126:9) (126:23) (129:1) (129:4) (130:18)

**every** (8:2) (28:17) (62:4) (62:6) (82:18) (84:5) (85:22) (85:23) (93:12)

**everybody** (6:24) (56:6) (63:11) (72:1) (82:6) (85:20) (86:6) (86:15) (86:21) (96:14) (104:18)

**everyday** (28:8)

**everyone** (57:11) (93:21)

**everything** (7:19) (45:14) (46:15) (51:20) (60:1) (74:11) (74:20) (110:24)

**evidence** (16:20) (17:7) (17:24) (22:5) (42:17) (43:9) (46:3) (50:20) (52:13) (54:22) (54:24) (55:5) (55:11) (59:23) (61:8) (63:14) (65:24) (66:18) (67:3) (67:12) (67:14) (68:3) (68:11) (69:20) (71:5) (71:22) (72:20) (74:8) (78:23) (80:13) (80:15) (90:1) (135:8)

**evidently** (131:9)

**evil** (15:24) (15:25) (16:5) (20:2) (22:11)

**evils** (16:8)

**exactly** (7:15) (12:22) (17:12) (29:15) (29:22) (44:22) (45:1) (49:18) (58:3) (58:9) (62:2) (70:23) (97:11) (102:17)

**examination** (6:14) (10:1) (10:6) (56:2) (82:20) (85:13) (110:14) (114:2) (117:8) (130:10)

**examiner** (43:2)

**example** (42:6) (60:8)

**examples** (26:12)

**except** (22:15) (131:25) (136:10)

**exception** (57:12)

**excuse** (46:23) (71:9) (98:1) (112:2) (112:21) (114:23) (121:12) (121:20)

**excused** (3:9) (3:11) (3:14) (3:16) (3:18) (3:20) (12:14) (13:19) (107:16) (109:1) (112:17) (115:2) (115:18) (118:9) (118:25) (123:5) (123:9)

**execute** (57:1) (70:19)

**executed** (18:2) (57:24)

(117:12)

**execution** (57:6) (97:11) (97:13) (97:16) (122:21) (122:25)

**exercise** (18:23) (19:4)

**exercising** (114:10)

**exhibit** (4:15) (4:19)

**exhibits** (4:16) (135:14)

**existed** (67:16)

**existing** (136:7)

**exits** (75:10) (80:25) (112:4) (115:8) (118:14) (133:24)

**expand** (83:2) (83:17)

**expect** (40:4) (73:20)

**expected** (119:21)

**expires** (135:22) (136:20)

**explain** (8:14) (83:3) (103:15)

**explained** (56:17) (107:23)

**explaining** (83:18)

**explains** (6:14) (81:22)

**explanation** (8:10)

**expound** (8:14)

**expressed** (58:4)

**expunged** (132:9) (133:3)

**extended** (35:4)

**extent** (54:21) (55:2) (57:12)

**extremely** (64:7)

**extremes** (63:9)

**ex-wife** (24:10)

**eye** (36:19) (36:20) (51:22) (56:16) (56:17)

**eyes** (19:19) (59:17)

## F

**faced** (18:16)

**fact** (8:22) (17:19) (18:8) (18:13) (20:24) (30:1) (31:5) (32:9) (42:10) (51:17) (57:7) (58:16) (75:23) (86:5) (87:3) (119:21)

**facts** (31:11) (59:11) (59:17) (59:19) (96:10)

**fail** (8:22)

**fair** (17:24) (72:14) (93:4) (93:5) (94:22) (108:19) (114:11) (117:16)

**fairly** (25:15) (71:2)

**faith** (16:1)

**family** (48:1) (130:17) (136:8)

**fan** (15:16)

**far** (22:17) (57:4) (59:21) (66:5) (74:20) (104:20)

**fast** (10:16) (10:21)

**fatigue** (19:23)

**favor** (15:21) (96:5) (96:7) (99:6) (100:13) (102:9) (102:12) (103:17)

**fear** (54:8) (63:16)

**fed** (98:21)

**federal** (36:2)

**feel** (16:2) (16:5) (25:14) (25:15) (25:16) (29:19) (30:1) (30:2) (33:6) (33:21) (50:6) (54:16) (55:4) (64:18) (65:7) (74:16) (74:19) (83:19) (94:16) (96:19) (98:23) (99:5) (100:25) (102:5) (103:24) (106:4) (106:8) (111:19) (114:18)

**feelings** (20:17) (29:13) (96:21) (102:4) (102:20)

(103:1) (103:16) (105:21) (106:1) (106:3) (108:16) (117:18)

**feels** (66:1) (98:2)

**fellow** (72:24)

**felony** (31:23) (125:23)

**felt** (64:21) (67:19)

**few** (57:1) (63:14) (64:24) (78:17) (87:19)

**field** (48:10)

**filed** (126:3)

**fill** (72:10)

**filled** (25:19) (82:24) (85:21) (116:25) (130:13)

**filling** (14:16) (25:4) (110:18)

**final** (46:2) (132:17)

**finality** (98:17)

**finally** (31:18) (54:9)

**financial** (13:7) (136:7)

**fincher** (3:19) (4:7) (4:18) (119:3) (119:11) (123:15) (123:20) (123:21) (123:24) (124:3) (124:4) (124:5) (124:11) (124:12) (124:14) (124:17) (124:20) (124:23) (124:25) (125:3) (125:6) (125:8) (125:10) (125:12) (125:14) (125:16) (125:20) (125:24) (126:2) (126:4) (126:6) (126:8) (126:11) (126:15) (126:21) (126:25) (127:3) (127:6) (127:11) (127:14) (127:17) (127:20) (127:24) (128:2) (128:5) (128:7) (128:9) (128:11) (128:14) (128:17) (128:19) (128:21) (128:23) (129:9) (129:12) (129:15) (129:18) (129:24) (130:1) (130:8) (130:12) (131:24) (132:2) (132:4) (132:10) (132:12) (132:19) (132:24) (133:5) (133:7) (133:10) (133:12) (133:22) (133:24)

**f-i-n-c-h-e-r** (124:3)

**find** (14:2) (14:13) (41:10) (41:25) (43:11) (46:17) (67:15) (78:8) (79:12) (93:14) (132:25)

**fine** (20:4) (20:5) (45:21) (78:18) (85:17) (94:16) (96:6) (100:14) (113:3) (116:15) (116:16) (123:24) (127:8) (129:7) (131:16) (131:18) (132:2) (132:16) (132:17) (134:4)

**finished** (39:13)

**firearm** (42:8)

**firm** (17:23) (22:18)

**first** (15:20) (21:2) (24:15) (28:15) (51:7) (54:1) (57:14) (58:17) (62:2) (64:12) (65:21) (80:9) (86:13) (87:20) (87:24) (90:23) (90:25) (96:4) (100:12) (106:15) (109:7) (134:6)

**fits** (63:3)

**five** (105:17) (105:23) (106:20) (111:17) (114:14) (119:15) (121:21) (122:15)

**fixing** (7:15)

**flat** (32:2) (86:7)

**floor** (104:6)

**floors** (104:13)

**fly** (54:3) (101:3)

(101:12) (101:17)

**flying** (54:1) (54:5) (54:8)

**follow** (30:25) (38:7) (38:16) (45:21) (67:15) (77:23) (115:13) (118:20)

**following** (1:16) (1:20) (45:17) (102:20)

**follows** (10:5) (85:12) (110:13) (114:1) (117:7) (130:9) (136:11)

**for** (3:5) (3:8) (3:9) (3:10) (3:11) (3:13) (3:14) (3:15) (3:16) (3:19) (3:20) (5:5) (5:21) (9:6) (9:25) (10:13) (12:2) (12:20) (12:23) (12:24) (12:25) (13:4) (13:12) (13:20) (14:3) (15:4) (17:15) (18:2) (18:10) (18:19) (18:25) (19:1) (19:5) (19:12) (20:21) (21:9) (21:16) (22:9) (22:13) (22:20) (25:13) (25:14) (26:24) (27:9) (28:2) (30:3) (32:3) (33:10) (33:11) (33:18) (35:4) (35:15) (35:16) (36:11) (36:19) (40:19) (41:11) (42:6) (43:22) (44:5) (44:13) (45:11) (49:11) (50:22) (51:22) (52:23) (55:16) (56:16) (56:17) (56:19) (56:24) (57:5) (57:6) (57:15) (57:20) (57:21) (57:22) (58:7) (58:13) (58:15) (58:22) (59:9) (61:22) (62:16) (63:10) (63:24) (64:6) (64:7) (64:22) (68:18) (69:1) (69:15) (70:8) (70:11) (71:1) (72:3) (72:11) (73:4) (73:17) (75:4) (75:7) (75:12) (76:4) (76:7) (76:8) (76:21) (76:23) (77:5) (78:22) (81:1) (81:5) (81:13) (84:4) (84:6) (84:15) (85:17) (86:6) (86:11) (86:14) (86:21) (87:4) (87:8) (87:15) (89:14) (90:4) (91:1) (91:16) (91:23) (92:24) (93:13) (93:15) (93:22) (94:24) (95:4) (95:5) (95:6) (95:14) (95:24) (96:14) (97:10) (97:11) (97:15) (98:12) (100:1) (100:3) (101:4) (102:23) (104:1) (104:4) (104:10) (104:15) (105:6) (105:8) (106:25) (107:5) (107:17) (108:7) (108:25) (109:13) (109:25) (110:3) (111:25) (112:1) (112:7) (112:9) (112:16) (112:24) (113:8) (115:10) (115:17) (116:4) (116:8) (116:21) (117:11) (118:6) (118:8) (118:10) (118:17) (118:24) (119:9) (119:18) (119:25) (120:21) (121:21) (123:19) (125:12) (125:13) (125:19) (126:24) (127:21) (129:14) (130:3) (130:13) (131:2) (131:22) (131:25) (132:18) (133:20) (133:23) (134:1) (134:3) (134:4) (134:13) (135:5) (135:9)

**force** (28:21) (30:4)

forced                                                                have    143

forced  (67:24)
foregoing  (135:7)
forever  (64:2)
rfeit  (56:19)
forget  (123:16)
forgot  (44:9)
forgotten  (25:6)
forth  (77:23)
forward  (52:16)(55:14)
found  (14:25)(40:15)
(40:16)(46:7)(46:8)
(61:18)(61:19)
four  (6:22)(60:23)
(66:15)(82:3)(105:17)
(106:20)(117:19)
frank  (2:8)(2:22)
frankly  (66:25)(68:16)
(121:25)
free  (118:9)
friends  (18:21)(24:1)
(24:11)(103:5)(130:17)
from  (6:10)(9:3)(12:14)
(13:19)(14:2)(14:13)
(14:15)(15:3)(17:21)
(20:14)(23:5)(24:21)
(26:2)(32:9)(50:9)(51:1)
(57:6)(62:14)(63:16)
(64:15)(66:14)(67:12)
(67:19)(70:5)(76:19)
(78:4)(79:1)(81:18)
(84:16)(93:12)(95:8)
(95:25)(96:3)(96:19)
(97:5)(97:14)(109:1)
(111:9)(112:2)(112:17)
(113:15)(114:10)(115:18)
(116:17)(118:25)(119:22)
120:23)(122:15)(122:19)
122:20)(124:6)(130:6)
(132:6)(132:21)
front  (31:16)(89:17)
(129:1)(129:4)(129:6)
frontal  (69:23)
full-time  (91:14)
fully  (49:21)
further  (57:2)(63:16)
(88:17)(109:1)(112:2)
(112:17)(115:19)(118:25)
(120:18)(135:13)
future  (40:1)(52:17)
(52:21)(67:6)(80:2)(133:9)

### G

garfield  (1:7)
gate  (101:8)
gave  (60:8)(107:20)
(107:21)(121:14)
gaylord  (112:19)
gaynor  (3:12)(4:8)
(112:20)(112:21)(112:22)
(112:25)(113:1)(113:3)
(113:9)(113:10)(113:11)
(113:13)(113:21)(113:25)
(114:4)(115:1)(115:3)
(115:6)(115:8)(115:12)
(115:17)
g-a-y-n-o-r  (113:10)
generically  (69:12)
gentleman  (9:12)(84:18)
gentlemen  (5:19)(77:17)
(81:12)(109:17)(113:6)
(116:12)
get  (6:5)(6:6)(6:8)
(8:17)(11:9)(11:14)
(11:18)(11:22)(12:25)
(19:11)(31:16)(34:1)
(34:3)(39:7)(39:8)(41:25)
(44:7)(44:8)(45:16)(46:2)
(53:7)(53:12)(53:17)
(53:23)(54:4)(55:20)
(56:12)(56:13)(58:5)
(58:6)(58:18)(58:22)
(59:6)(59:8)(66:6)(66:11)
(66:20)(70:6)(70:11)
(73:8)(73:9)(74:23)
(77:25)(80:23)(83:20)
(86:23)(87:4)(88:17)
(91:25)(93:3)(94:9)
(101:15)(101:18)(104:12)
(104:20)(121:10)(126:23)
(132:9)
gets  (39:14)(42:11)
(42:14)(97:23)
getting  (10:12)(77:3)
(90:13)(101:7)(104:5)
girls  (134:15)
give  (7:24)(11:23)
(26:12)(41:6)(47:11)
(58:14)(65:20)(67:25)
(70:6)(72:14)(74:5)(74:6)
(74:7)(74:18)(77:11)
(82:16)(84:1)(84:5)
(92:20)(94:17)(94:18)
(95:1)(101:2)(101:21)
(103:14)(113:17)(118:8)
given  (22:5)(22:25)
(25:1)(33:12)(47:15)
(50:12)(65:18)(65:22)
(65:23)(68:19)(68:25)
(69:4)(93:9)(98:21)
(135:16)
gives  (50:11)(69:24)
giving  (105:4)
glad  (6:4)(104:7)(104:8)
(123:25)
god  (16:20)(16:25)
(18:15)(21:2)(21:11)
(21:19)(21:22)(22:15)
(22:21)(75:24)
god's  (20:17)(21:15)
(117:15)
goes  (21:18)(38:17)
(43:9)(91:24)
going  (8:12)(8:13)(8:14)
(8:16)(8:20)(8:21)(9:1)
(9:5)(11:17)(13:22)(14:3)
(15:7)(17:18)(17:20)
(19:4)(24:7)(25:25)
(41:23)(44:3)(44:4)(45:9)
(52:16)(53:22)(54:2)
(56:6)(56:8)(56:12)(58:6)
(60:25)(62:23)(64:25)
(65:1)(65:8)(73:2)(75:3)
(77:21)(78:16)(79:22)
(82:25)(83:15)(83:16)
(83:17)(83:19)(83:25)
(84:5)(86:17)(88:10)
(88:13)(89:16)(89:21)
(90:25)(91:2)(92:7)
(92:10)(92:12)(92:22)
(92:23)(92:24)(93:8)
(96:22)(97:2)(97:8)
(97:16)(98:1)(98:14)
(98:16)(99:2)(101:3)
(103:12)(104:14)(104:19)
(104:22)(106:7)(106:21)
(106:22)(110:8)(112:2)
(113:17)(113:18)(116:23)
(120:13)(122:8)(124:13)
gone  (46:7)(74:20)(93:15)
good  (5:9)(6:2)(9:4)
(9:8)(9:9)(9:20)(10:8)
(10:9)(55:23)(69:24)
(70:25)(72:8)(81:16)
(81:17)(82:14)(84:8)
(84:12)(84:13)(84:25)
(85:15)(85:16)(95:7)
(109:19)(110:16)(111:6)
(113:13)(115:6)(116:13)
(116:16)(121:3)(123:25)
gordon  (2:4)(9:3)(14:7)
(84:17)
gosh  (65:8)
got  (6:21)(8:22)(12:23)
(25:4)(25:6)(25:14)
(25:22)(26:1)(59:4)
(59:18)(64:13)(64:14)
(66:7)(69:14)(70:21)
(78:16)(78:17)(82:2)
(90:12)(92:19)(94:6)
(94:12)(95:24)(115:24)
(117:2)(117:23)(124:17)
(125:10)(125:18)(126:23)
(126:25)(127:1)(129:9)
(129:19)
gotten  (64:22)
government  (43:25)(136:4)
governor  (33:10)(33:11)
grab  (104:21)
granted  (108:25)(112:16)
(115:18)(118:24)(134:13)
great  (33:3)(74:6)(74:7)
(74:18)(74:19)(75:9)
greet  (101:9)
group  (6:23)(82:5)(85:4)
grow  (71:25)
guess  (8:10)(15:8)
(20:17)(21:13)(21:18)
(23:9)(28:8)(28:13)
(28:19)(28:20)(29:16)
(30:8)(31:2)(32:21)
(34:14)(35:20)(36:21)
(40:12)(40:13)(48:19)
(49:2)(49:17)(51:13)
(52:5)(54:2)(74:5)(87:20)
(93:21)(100:17)(126:23)
(129:14)(131:3)
guidance  (68:15)
guide  (8:7)(49:12)(83:6)
guided  (48:24)(50:18)
guilt/innocence  (59:22)
guilty  (14:25)(19:8)
(30:2)(40:15)(41:11)
(42:20)(42:22)(58:16)
(58:22)(61:18)(61:19)
(62:22)(64:10)(64:11)
(67:15)(96:25)(97:1)
guilty because  (43:12)
gun  (46:10)
gunshot  (43:5)(43:6)
gurney  (18:2)
guy  (54:1)(62:11)
guys  (107:18)

### H

had  (1:20)(8:6)(24:12)
(25:6)(25:11)(25:13)
(28:3)(45:19)(57:23)
(61:12)(62:5)(67:11)
(67:21)(72:6)(73:6)
(79:20)(87:21)(89:13)
(93:12)(99:4)(102:8)
(105:16)(106:18)(119:9)
(125:24)(126:1)(126:8)
(126:9)(128:15)(130:18)
(130:22)(131:22)(132:21)
hadn't  (25:13)(79:17)
half  (12:24)(92:16)
halfway  (78:13)
hall  (119:8)
hand  (6:25)(18:17)
(21:17)(31:25)(82:7)
(105:4)(135:16)
handley  (2:3)(9:7)(9:8)
(31:14)(31:17)(84:11)
(84:12)(85:8)(85:9)
(85:14)(88:18)(89:8)
(98:5)(98:8)(107:4)
(107:18)(107:25)(108:5)
(108:8)(108:12)(109:3)
(109:7)(116:1)(120:4)
(120:19)(122:3)(122:11)
(123:7)(133:17)
hands  (17:13)
hang  (121:9)
happen  (62:17)(62:19)
(63:17)(69:6)(83:15)
(97:3)(97:11)(97:16)
(129:7)
happened  (72:16)(107:13)
(107:15)(129:8)
happening  (57:3)
happens  (11:25)(18:4)
(28:8)(28:17)
happy  (123:16)(124:18)
harassed  (35:2)
harassment  (26:17)(34:7)
(34:8)(34:12)(34:21)
(34:22)(35:10)(35:16)
(35:22)(36:1)(36:5)(36:8)
hard  (64:6)(64:7)(64:8)
has  (6:11)(26:21)(32:1)
(40:16)(46:7)(46:11)
(47:21)(49:13)(57:5)
(58:17)(59:13)(65:23)
(66:7)(69:14)(70:21)
(71:9)(72:6)(75:24)
(80:15)(83:10)(97:9)
(97:20)(105:9)(108:13)
(113:15)(117:1)(119:1)
(122:18)(124:8)
hasn't  (5:14)(77:1)
(119:2)
have  (5:18)(8:6)(10:13)
(11:3)(11:8)(11:16)
(11:17)(11:25)(12:20)
(13:11)(13:19)(16:12)
(16:14)(17:8)(17:23)
(18:9)(18:15)(18:21)
(19:7)(20:3)(20:25)
(21:17)(23:22)(23:25)
(24:1)(24:11)(24:12)
(25:1)(25:17)(26:24)
(29:14)(30:22)(30:24)
(32:8)(32:14)(33:22)
(35:22)(35:23)(36:16)
(37:24)(38:18)(38:19)
(38:23)(39:4)(39:5)(40:9)
(40:16)(40:20)(41:3)
(41:6)(42:1)(42:16)
(42:23)(43:7)(43:11)
(43:18)(43:22)(45:12)
(45:17)(46:7)(46:8)
(46:13)(47:18)(49:5)
(50:22)(51:17)(52:15)
(53:11)(54:8)(55:11)
(57:13)(59:20)(60:1)
(61:2)(61:4)(62:4)(63:5)
(63:6)(63:13)(64:16)
(65:2)(66:16)(67:2)(67:8)
(68:25)(69:10)(69:12)
(69:22)(70:7)(70:22)
(71:2)(71:20)(71:24)
(72:21)(72:23)(72:25)
(73:14)(73:22)(73:23)
(73:25)(75:6)(75:12)
(76:3)(76:8)(76:22)
(77:14)(77:16)(79:5)
(81:8)(83:4)(83:5)(84:5)

**haven't**                                                    **importance** 144

(86:8)(87:21)(87:24)
(88:9)(89:14)(89:17)
(89:24)(90:4)(90:5)
(90:17)(91:4)(91:25)
(92:3)(92:4)(92:13)
(92:18)(93:3)(93:6)
(93:22)(95:7)(95:13)
(95:16)(96:8)(96:11)
(96:12)(96:13)(97:24)
(98:2)(100:18)(100:19)
(101:24)(102:4)(103:1)
(108:3)(108:7)(108:20)
(108:21)(109:15)(110:23)
(111:11)(111:23)(112:7)
(112:18)(113:4)(113:19)
(114:9)(114:24)(115:10)
(116:8)(116:23)(117:11)
(118:4)(118:17)(119:7)
(119:21)(119:25)(120:1)
(120:2)(121:4)(123:3)
(123:12)(123:22)(123:25)
(124:13)(125:10)(125:17)
(128:15)(129:13)(130:5)
(131:20)(133:1)(133:3)
(133:25)(136:7)
**haven't** (42:5)(59:23)
(64:22)(82:25)(100:15)
(125:24)(126:1)
**having** (15:12)(17:12)
(53:25)(93:10)(95:12)
**head** (7:9)(84:2)(110:22)
(124:14)
**headed** (6:6)
**health** (48:9)
**hear** (53:24)(62:11)
(69:11)(72:9)(75:15)
87:1)(96:19)(119:23)
**.eard** (1:19)(59:23)
(62:10)(63:13)(68:11)
(71:5)(72:20)(74:11)
(79:18)(79:20)(80:15)
(108:23)
**hearing** (119:20)(119:22)
(120:22)
**heart** (5:17)(97:20)
(97:24)(133:17)
**heather** (5:21)(7:8)
(81:13)(110:4)(122:9)
(135:4)(135:19)(136:17)
**heck** (95:18)
**he'd** (40:13)
**heinous** (26:8)(26:9)
(26:10)(26:14)
**held** (1:21)
**he'll** (39:25)(97:3)
**hello** (81:10)
**help** (16:20)(60:5)(60:6)
(103:15)(119:23)
**helping** (98:13)
**her** (7:19)(10:18)(31:15)
(31:17)(31:19)(31:20)
(31:21)(32:1)(32:3)(32:4)
(32:9)(44:2)(45:9)(75:22)
(75:25)(76:1)(76:12)
(76:13)(76:17)(76:18)
(76:19)(76:21)(77:6)
(77:11)(84:4)(84:16)
(88:16)(92:12)(92:14)
(107:16)(107:23)(108:16)
(111:4)(123:15)(123:16)
(134:5)
**here** (6:4)(6:9)(6:15)
(6:16)(8:7)(9:14)(12:17)
(12:25)(13:25)(14:2)
(14:10)(14:15)(15:6)
(16:23)(17:19)(17:21)
(18:11)(19:18)(21:15)

(21:18)(22:18)(23:8)
(24:18)(25:9)(29:5)
(31:14)(31:17)(33:25)
(35:9)(39:5)(47:14)
(54:20)(55:12)(56:12)
(57:12)(57:14)(58:21)
(62:13)(64:12)(65:20)
(67:10)(71:13)(74:4)
(74:12)(76:13)(77:16)
(81:22)(81:24)(83:11)
(83:15)(84:14)(84:18)
(84:23)(85:24)(86:14)
(86:25)(87:7)(87:13)
(90:12)(93:7)(93:12)
(95:8)(95:10)(96:22)
(96:23)(97:8)(97:19)
(100:12)(100:22)(100:24)
(103:19)(105:15)(106:25)
(107:5)(107:9)(107:10)
(108:2)(108:6)(108:14)
(109:16)(110:2)(112:1)
(113:17)(115:2)(115:21)
(115:24)(116:7)(118:9)
(119:7)(119:10)(119:16)
(119:25)(121:10)(121:14)
(122:14)(122:21)(123:1)
(124:1)(124:10)(125:2)
(125:10)(130:25)(133:23)
**hereby** (135:6)
**here's** (18:17)(33:23)
(104:11)(116:25)(131:21)
(131:22)
**herself** (17:2)(68:18)
**he's** (9:5)(19:8)(27:13)
(30:1)(35:16)(40:3)
(40:12)(41:5)(41:6)(46:7)
(46:9)(52:17)(61:19)
(64:24)(64:25)(65:8)
(81:20)(85:6)(97:14)
(97:15)(98:14)(98:16)
(119:10)(119:13)(119:15)
(121:21)(122:14)(122:17)
(122:21)(123:1)(123:5)
**hey** (15:8)(101:12)(108:4)
**high** (23:4)(103:21)
(107:21)
**highland** (23:13)
**hikel** (2:4)(9:3)(9:4)
(9:25)(10:2)(10:7)(14:4)
(14:8)(14:9)(26:11)
(46:24)(60:2)(66:25)
(75:11)(75:13)(75:17)
(75:21)(76:5)(76:7)
(76:10)(77:7)(80:11)
(80:18)(80:19)(84:17)
(123:15)
**him** (6:12)(9:10)(21:15)
(21:16)(41:7)(41:25)
(42:12)(43:12)(46:18)
(47:11)(47:15)(63:14)
(63:16)(81:21)(85:3)
(101:12)(107:20)(113:16)
(119:9)(119:11)(119:12)
(119:25)(120:1)(121:7)
(121:14)(121:20)(121:21)
(121:22)(121:23)(121:24)
(122:4)(122:5)(122:19)
(123:11)(124:8)
**himself** (16:25)(17:2)
(68:18)
**hinton** (3:15)(4:9)
(115:22)(115:24)(116:3)
(116:5)(116:6)(116:10)
(116:13)(116:15)(116:22)
(116:23)(117:6)(117:10)
(118:2)(118:7)(118:11)
(118:12)(118:14)(118:19)

(118:24)(118:25)
**h-i-n-t-o-n** (116:22)
**hire** (92:13)
**his** (21:15)(21:16)
(21:17)(21:23)(22:1)
(40:4)(42:13)(46:15)
(46:16)(47:6)(55:1)
(61:21)(68:3)(68:10)
(81:23)(97:4)(97:10)
(97:13)(98:11)(98:22)
(109:3)(119:13)(122:15)
(122:17)
**hold** (56:8)
**holly** (2:18)(2:19)
**holy** (73:7)
**home** (6:6)(65:7)(74:23)
(80:22)(91:24)(92:2)
(93:18)(101:22)
**homes** (28:20)
**honest** (94:23)(95:23)
(100:23)(105:20)
**honestly** (28:1)(106:4)
**honor** (10:2)(56:1)
(76:24)(80:19)(85:9)
(98:6)(108:8)(108:13)
(109:3)(110:11)(112:8)
(112:13)(115:11)(115:22)
(117:5)(118:18)(122:11)
(130:5)(133:19)(134:2)
**honorable** (1:21)
**hopefully** (79:7)
**hospital** (11:1)(12:16)
**hot** (126:9)(126:12)
(126:19)(128:18)(130:24)
(131:4)
**hotel** (92:3)
**hours** (14:4)
**house** (88:1)
**houston** (90:21)(91:7)
(101:4)(101:7)
**how** (5:7)(5:9)(10:10)
(11:3)(12:22)(17:7)(18:5)
(21:9)(21:11)(25:15)
(28:12)(29:22)(29:25)
(30:2)(30:23)(33:6)
(37:17)(42:2)(44:22)
(45:1)(46:16)(47:6)
(47:18)(51:1)(51:2)(51:6)
(52:3)(57:23)(66:22)
(72:2)(72:13)(74:4)(81:7)
(81:15)(81:16)(83:19)
(85:15)(85:16)(90:2)
(90:4)(90:7)(91:2)(96:19)
(98:22)(99:5)(101:9)
(101:12)(101:17)(102:5)
(103:24)(105:12)(106:4)
(109:19)(111:11)(111:19)
(113:1)(113:12)(114:18)
(116:13)(123:23)(127:18)
(129:7)(129:8)
**however** (11:18)(20:22)
(64:2)
**huh** (91:19)(93:23)
(99:24)(107:14)(109:22)
(115:25)(125:23)(132:11)
**huh-uh** (7:11)(16:14)
(23:21)(24:14)(43:19)
(111:4)(126:6)(128:7)
**human** (20:18)(21:2)
(75:24)(117:12)(122:21)
**humane** (99:9)
**humans** (16:6)(37:15)
**hundred** (37:16)(87:16)
(92:20)(93:3)(94:12)
(94:13)(94:20)(95:1)
(96:1)(103:21)(104:1)
(127:15)(127:16)

**hundreds** (85:20)(85:24)
(85:25)(86:1)(86:4)
(86:14)(86:20)(87:12)
(87:13)(95:24)
**huntington** (125:4)
**huntsville** (18:1)(97:12)
**hurdle** (58:17)
**husband** (101:6)(130:22)
**hypothetical** (101:21)

---

**I**

**ibc** (23:10)(24:7)
**i'd** (5:21)(10:18)(12:14)
(76:10)(81:13)(103:25)
(104:1)(110:3)(113:8)
(116:21)(131:22)
**idea** (30:22)(33:1)
(59:20)(59:21)(86:23)
**ideas** (8:17)(80:14)
(83:20)
**identify** (57:4)
**identity** (60:16)
**ifs** (94:3)(94:5)(94:14)
**ignore** (64:3)
**ill** (71:14)
**i'll** (7:22)(10:22)
(12:25)(17:20)(56:9)
(75:5)(75:6)(77:11)
(79:11)(82:14)(93:2)
(96:6)(96:15)(104:19)
(105:2)(121:10)(122:4)
(123:13)
**illness** (71:7)(71:8)
**illustrate** (103:15)
**i'm** (6:9)(6:10)(6:15)
(10:12)(10:20)(11:8)
(11:9)(12:22)(13:7)(14:3)
(14:9)(15:18)(16:1)
(17:18)(19:2)(22:17)
(22:23)(26:21)(31:3)
(31:8)(32:1)(32:25)(33:8)
(37:3)(40:5)(44:3)(44:8)
(44:22)(44:24)(47:24)
(47:25)(48:13)(49:3)
(50:25)(51:13)(52:12)
(53:5)(54:1)(54:2)(54:9)
(55:9)(56:4)(56:6)(56:7)
(56:9)(56:12)(58:6)
(59:16)(60:25)(62:19)
(63:19)(64:4)(65:1)
(68:13)(71:12)(74:10)
(75:3)(75:15)(76:7)
(81:17)(81:18)(81:22)
(81:24)(83:1)(85:17)
(88:7)(88:13)(92:21)
(92:22)(93:15)(95:23)
(96:3)(96:25)(97:8)(98:1)
(100:4)(100:10)(100:14)
(100:24)(100:25)(101:13)
(101:17)(101:19)(102:8)
(102:9)(103:12)(103:25)
(104:7)(104:8)(104:13)
(104:14)(104:15)(104:17)
(104:18)(104:22)(105:3)
(105:4)(105:5)(105:11)
(106:21)(108:9)(109:25)
(110:2)(112:2)(112:21)
(113:14)(113:17)(114:23)
(116:16)(116:17)(116:18)
(116:23)(120:15)(124:4)
(124:6)(124:9)(125:9)
(127:21)
**imagine** (117:1)
**impair** (76:19)
**impartial** (17:25)(108:19)
**imperfect** (22:24)(22:25)
**importance** (96:16)

important                                                                                          keep        145

| | | | |
|---|---|---|---|
| important (30:23)(32:23) (37:2)(61:1)(72:12)(72:13) possible (63:8) ±press (96:16)(96:22) (98:17) impression (87:5) in the (82:20) incarcerated (57:2) (63:15) incident (34:7)(36:1) incidentally (8:5)(107:6) include (131:17) included (21:1)(135:10) incoming (11:21) incorrigibles (57:1) (63:15)(64:24) increase (33:17) index (3:1)(4:1)(4:15) indicate (57:17)(69:13) (96:10) indicated (69:12)(79:17) (80:11) indication (59:1) indictment (30:15)(42:7) (42:16)(42:24)(60:2) (60:10)(60:11)(60:12) (60:21)(61:16)(62:3)(62:6) individual (1:12)(6:13) (35:2)(47:25)(60:15) (68:6)(68:8)(68:11)(69:5) (72:19)(74:9) individuals (48:7)(48:19) individual's (34:19) industrial (2:9)(2:22) (135:21)(136:19) influence (47:22)(51:2) nfluenced (48:7)(49:3) influential (48:5) information (34:3) (72:14)(72:18)(83:12) injection (98:21)(99:2) (99:8) inmates (98:13) innocent (26:16)(30:13) (41:6) inquired (88:9) insane (60:17)(71:10) insanity (71:15) insists (59:13) instance (29:2) instances (105:10) instead (6:15)(12:17) (68:5)(81:22)(86:15) (92:2)(105:17) instigate (36:9) instruct (61:4) instructed (120:1) instructions (76:20) (77:11) insurance (70:7)(70:11) intangibles (94:15) intellectual (18:23) (19:4)(71:2) intellectually (103:8) (104:9)(105:7) intended (62:4)(64:3) (64:16) intent (26:17)(45:19) intentional (60:24) intentionally (27:1) (27:5)(27:15)(27:16) (28:3)(29:9)(30:4)(39:1) (40:16)(40:18)(41:11) (52:23)(53:15)(60:22) interesting (15:20) (36:15)(38:9)(48:14) (48:17)(51:1) | internal (48:18)(49:12) (50:20)(67:1)(67:20) (68:5)(68:16) internet (92:4)(100:16) interplay (51:19)(54:23) interplaying (55:2) interview (119:18) (119:22) into (36:6)(36:10) (44:19)(45:15)(52:4) (52:6)(58:6)(60:25)(63:3) (67:25)(69:19)(71:6) (71:19)(88:9)(91:14) (98:20)(100:20)(104:22) (106:5)(132:11) introduce (9:1)(84:10) introduction (83:17) introductory (83:11) (83:12) investigators (132:21) invoked (102:23) involve (102:1) involved (8:12)(8:19) (15:6)(30:9)(82:20) (83:14)(83:22)(84:11) iota (77:2) irving (23:10)(125:5) isn't (18:7)(39:18) (53:5)(87:14)(95:18) issue (13:12)(16:24) (18:17)(19:9)(19:10) (32:8)(32:14)(39:8)(39:9) (40:20)(41:7)(41:14) (41:25)(43:20)(45:12) (46:2)(50:2)(51:3)(51:8) (51:21)(52:4)(52:16) (54:10)(54:14)(60:16) (61:11)(62:2)(62:5) (62:15)(65:18)(65:21) (65:22)(66:5)(66:6) (66:11)(66:13)(66:20) (66:24)(67:9)(71:7)(72:9) (76:14)(99:11)(134:7) issues (8:11)(17:7) (18:6)(24:4)(37:25)(39:5) (56:22)(58:24)(61:24) (67:2)(67:16)(71:20) (71:24)(72:7)(83:13) (83:22)(87:19) its (34:12)(34:14) it's (5:14)(6:19)(8:21) (14:20)(15:9)(15:23) (16:2)(16:5)(17:21) (18:24)(19:3)(19:4)(20:2) (24:6)(27:9)(28:8)(29:5) (30:16)(30:20)(31:5) (32:5)(32:22)(33:7) (34:18)(35:12)(36:1) (36:2)(36:15)(37:1)(37:3) (37:18)(38:9)(40:21) (44:11)(46:3)(46:19) (47:8)(49:13)(49:19) (49:25)(50:1)(50:2)(50:4) (50:17)(52:9)(52:14) (53:11)(54:1)(59:9) (59:10)(60:5)(60:8) (60:16)(63:16)(63:24) (64:7)(65:15)(66:5) (66:10)(68:7)(70:7) (70:19)(72:14)(74:24) (76:2)(82:1)(84:3)(86:10) (86:20)(86:25)(87:1) (87:3)(87:9)(88:21) (88:24)(92:24)(93:1) (93:18)(95:14)(95:15) (95:18)(95:19)(95:21) (96:8)(97:8)(97:16) | (103:2)(117:11)(122:13) (125:2)(126:19)(127:21) (132:22) itself (17:2)(36:8) (46:15) i've (5:10)(5:12)(20:20) (24:6)(24:14)(47:14) (48:1)(62:10)(70:4) (74:11)(74:19)(86:23) (92:19)(98:24)(99:4) (102:8)(105:16)(106:16) (106:18)(119:8)(119:9) (125:10)(125:18)(126:8) (126:9) ——————— J ——————— jail (127:2)(129:10) james (1:7)(9:23)(16:18) (85:6) job (37:19)(48:4)(48:5) (59:9)(59:10)(104:3) johnson's (121:15) judge (1:21)(6:9)(6:10) (6:11)(6:15)(6:22)(13:24) (14:8)(24:21)(38:19) (46:22)(48:15)(49:7) (49:11)(50:2)(50:11) (59:11)(61:3)(65:5) (65:20)(66:1)(75:13) (76:15)(77:4)(78:19) (78:20)(80:9)(81:17) (81:18)(81:19)(81:23) (82:4)(97:6)(98:1) (109:25)(111:8)(113:14) (113:15)(113:24)(116:17) (116:18)(116:19)(117:16) (119:8)(119:10)(123:16) (124:4)(124:6)(124:7) (124:8)(129:2)(129:5) (129:7) judges (21:16) judgment (20:14)(20:15) (20:18)(21:2)(21:5) (21:10)(21:14)(21:19) (21:21)(21:23)(22:1) (68:7)(68:8)(69:5)(69:25) (72:20)(72:24)(73:15) (74:1)(74:15)(75:24) (122:19) july (78:10)(79:12) jump (43:20) june (1:18)(3:3)(124:3) (124:24) juries (67:10) juror (4:18)(5:5)(5:22) (7:1)(12:7)(12:10)(13:11) (16:11)(16:13)(16:16) (17:5)(17:9)(18:4)(18:16) (18:18)(19:3)(21:4) (21:25)(22:4)(30:3)(38:2) (38:6)(38:10)(38:23) (39:20)(40:14)(47:10) (50:14)(51:16)(59:10) (59:20)(61:2)(66:16) (67:14)(68:17)(68:22) (69:1)(69:3)(70:15) (72:11)(72:17)(72:22) (75:14)(75:18)(76:11) (76:16)(76:20)(77:20) (78:4)(81:5)(81:14)(82:8) (95:6)(95:13)(98:2) (108:9)(108:19)(108:25) (109:13)(110:4)(112:9) (112:15)(112:24)(113:9) (115:12)(115:17)(115:18) (116:4)(116:22)(118:19) (118:23)(120:21)(120:24) | (121:11)(123:1)(123:8) (123:19)(124:3)(134:3) jurors (17:25)(18:5) (24:22)(37:20)(56:18) (58:13)(58:15)(59:19) (62:8)(64:7)(67:9)(67:19) (67:25)(68:16)(68:24) (69:10)(69:17)(71:18) (72:9)(72:11)(73:14) (74:5)(77:2)(89:13) juror's (12:24)(68:12) jurors' (73:25) jury (6:13)(6:22)(12:13) (21:14)(37:14)(46:13) (48:16)(61:10)(61:20) (61:24)(62:9)(62:16) (64:17)(65:21)(66:11) (67:18)(68:21)(71:5) (72:24)(73:13)(73:21) (74:17)(78:6)(78:9) (78:21)(79:13)(80:9) (80:10)(81:21)(81:25) (82:3)(85:19)(86:23) (90:3)(90:7)(91:24)(93:3) (95:16)(97:6)(109:1) (110:1)(112:2)(112:17) (113:16)(115:19)(116:19) (118:25)(124:9)(132:20) (133:8)(133:13) just (6:9)(7:15)(8:9) (10:21)(11:17)(12:8) (14:2)(15:4)(15:6)(16:7) (19:18)(20:17)(20:21) (24:8)(25:5)(25:25)(28:6) (28:12)(29:16)(29:22) (30:2)(31:19)(33:3) (33:19)(33:20)(34:11) (34:14)(34:15)(36:5) (36:8)(36:22)(37:4)(38:2) (38:17)(44:4)(44:6) (44:10)(46:19)(47:5) (48:13)(49:3)(49:7)(50:4) (52:5)(57:15)(57:20) (57:21)(58:2)(58:7)(60:2) (61:15)(62:12)(62:21) (63:2)(63:17)(64:21) (65:15)(67:21)(68:1) (68:4)(69:11)(72:10) (72:13)(74:24)(77:3) (77:15)(77:22)(80:8) (81:8)(82:14)(83:11) (83:16)(83:23)(84:1) (85:17)(86:7)(86:10) (86:15)(89:25)(91:1) (91:10)(91:21)(92:11) (92:14)(93:1)(93:22) (94:25)(95:4)(95:5) (96:22)(98:17)(101:19) (107:10)(107:13)(107:15) (108:5)(109:7)(109:8) (111:10)(116:7)(116:8) (117:24)(118:1)(118:7) (119:13)(121:9)(121:19) (122:6)(123:5)(123:21) (126:12)(126:15)(127:6) (127:9)(127:11)(127:18) (127:20)(129:19)(130:1) (130:5)(131:5)(131:12) (131:14)(131:22)(133:8) just -- i (41:18) justify (59:5)(68:12) (72:23)(73:1)(73:22) ——————— K ——————— kansas (53:22)(54:3) (54:5) keep (76:5)(79:22)(80:7) |

keri                                                                                                    ma'am      146

keri (2:20) (9:19) (85:4) (120:13)

id (11:16) (11:18) (12:9) .ll (28:3) (31:17) (31:21) (32:3) (42:12) (44:12) (45:14) (114:6)

killed (27:1) (27:2) (27:4) (27:15) (29:9) (30:4) (35:12) (39:1) (40:17) (40:19) (42:7) (42:10) (42:12) (42:25) (53:15)

killing (41:11) (44:13) (45:12) (95:13)

kind (9:2) (25:5) (25:6) (28:1) (28:6) (33:1) (44:24) (52:8) (57:8) (59:4) (66:17) (71:16) (77:3) (77:11) (78:16) (83:16) (86:3) (86:6) (86:10) (87:5) (95:6) (101:22) (119:13) (126:9)

kinds (26:24) (52:1) (74:6)

kitchen (44:2)

knew (28:2) (45:8) (79:17) (133:16)

know (6:6) (7:7) (7:21) (7:25) (10:22) (12:23) (13:4) (13:25) (14:15) (15:3) (15:9) (18:7) (18:20) (18:24) (19:13) (21:13) (21:14) (21:16) (23:16) (26:22) (27:11) (27:16) (28:3) (28:11) (28:12) (28:20) (29:16) (29:25) (30:6) (30:10) (30:12) (30:21) (31:4) (31:13) (31:19) (32:1) (32:22) (33:8) (33:10) (33:21) (34:13) (34:19) (34:25) (35:2) (35:4) (37:19) (37:21) (41:16) (41:18) (42:14) (43:8) (44:23) (45:8) (46:14) (48:22) (48:23) (49:4) (49:5) (49:17) (50:1) (50:3) (51:7) (51:11) (52:6) (52:9) (52:10) (52:14) (52:15) (53:25) (54:2) (54:20) (54:23) (55:1) (56:7) (58:4) (58:7) (59:2) (59:16) (59:17) (59:23) (60:15) (61:5) (62:21) (62:25) (63:24) (64:11) (64:21) (64:22) (65:7) (65:8) (65:20) (65:25) (70:3) (70:14) (70:20) (71:8) (71:18) (71:21) (71:22) (72:1) (72:3) (74:9) (75:13) (75:14) (75:17) (76:1) (76:15) (79:24) (80:7) (82:17) (82:24) (83:25) (84:3) (84:9) (86:3) (86:24) (87:9) (88:5) (88:9) (88:25) (89:10) (90:12) (91:22) (91:25) (92:8) (92:13) (92:19) (92:23) (93:2) (93:6) (93:17) (94:4) (94:10) (94:12) (94:23) (95:14) (95:15) (95:19) (95:20) (95:21) (95:24) (96:6) (96:13) (96:17) (97:7) (98:9) (98:13) (98:25) (99:9) (99:14) (99:20) (100:4) (100:11) (100:15) (100:23) (101:9) (101:12) (101:17) (101:19) (101:20) (101:24) (102:11) (102:18) (103:3) (103:7)

(103:10) (104:15) (104:18) (104:20) (105:6) (105:7) (106:15) (117:24) (119:1) (127:11) (128:8) (130:21) (131:5) (132:16)

knowing (18:15) (29:14) (60:24)

knowingly (27:5)

knowledge (136:7)

known (70:8)

knows (111:3)

kristi (3:7) (4:6) (81:14) (85:11) (108:13) (109:1)

kunard (3:5) (4:10) (5:4) (5:6) (5:7) (5:9) (5:12) (5:16) (5:23) (6:1) (6:3) (6:7) (6:17) (6:20) (7:2) (7:5) (7:10) (7:12) (7:17) (8:4) (8:8) (8:24) (9:9) (10:4) (10:8) (33:9) (43:22) (50:23) (55:16) (55:20) (55:22) (55:24) (56:4) (58:2) (65:19) (72:21) (74:21) (75:3) (75:8) (75:10) (77:6) (77:10) (77:13) (77:19) (77:24) (78:2) (78:7) (78:11) (78:14) (78:18) (79:3) (79:8) (79:15) (79:19) (80:1) (80:6) (80:16) (80:24) (80:25)

## L

ladies (5:19) (9:11) (77:17) (81:11) (84:17) (109:17) (113:6) (116:12)

lady (33:11)

lake (2:18) (2:19)

lane (2:17)

last (5:24) (12:2) (46:4) (46:13) (48:12) (108:9)

late (69:18) (79:12)

later (61:2)

latitude (74:7)

latter (78:9)

laugh (31:18) (31:20)

law (2:13) (2:17) (8:10) (8:15) (8:18) (14:14) (16:19) (22:5) (29:2) (30:3) (31:1) (31:23) (33:14) (33:23) (41:2) (43:23) (45:1) (45:2) (45:10) (45:13) (45:17) (45:18) (48:16) (49:9) (49:14) (49:20) (50:5) (50:12) (50:13) (50:15) (50:18) (50:19) (55:9) (58:10) (59:13) (60:11) (61:5) (61:7) (61:22) (62:21) (62:25) (67:4) (68:6) (68:20) (70:18) (70:20) (76:20) (77:23) (80:13) (83:12) (83:17) (83:21) (96:8) (102:23) (107:22) (108:20) (115:13) (118:20)

lawn (73:8)

lawyers (14:10) (17:21)

lead (19:13) (36:9)

leader (23:23)

leaders (12:11)

leading (36:6)

leah (3:5) (4:10) (5:22) (10:4) (15:9)

leans (32:21)

leap (95:21) (102:1)

learned (42:1)

least (56:17) (69:14)

(92:7) (92:15) (93:13)

leave (12:8) (24:9) (33:19) (33:20) (73:1) (107:8) (107:10)

leaving (94:2)

left (93:11)

legal (63:10) (71:9) (71:14) (87:5)

legally (60:17)

legislators (43:22) (57:23)

legs (104:21)

less (126:14)

lesser (61:20)

let (7:6) (9:1) (10:21) (33:9) (46:14) (49:11) (53:17) (56:15) (58:2) (75:4) (83:23) (84:10) (85:17) (88:16) (89:20) (101:2) (103:14) (124:2) (124:12) (124:23) (126:17)

lethal (98:21) (99:2) (99:8)

let's (15:12) (38:22) (43:20) (77:6) (101:6) (112:18) (115:20) (115:23) (115:24) (121:9) (124:13)

letter (78:20)

level (46:18) (47:7) (50:9) (71:21) (125:22) (130:19)

lew (129:18)

life (14:23) (16:3) (16:7) (17:12) (21:17) (22:1) (22:19) (34:15) (37:5) (37:9) (37:12) (39:18) (39:19) (46:6) (47:15) (51:11) (54:12) (56:18) (56:19) (56:25) (57:7) (58:2) (58:9) (58:10) (58:11) (65:6) (65:12) (66:9) (68:13) (74:13) (97:4)

light (12:7) (17:4) (18:12) (29:10) (45:13)

lightly (17:15) (17:20) (17:22) (18:8)

like (5:21) (12:20) (12:24) (13:8) (17:11) (17:25) (20:20) (23:22) (23:24) (25:3) (25:11) (25:12) (25:14) (29:19) (31:4) (31:17) (31:20) (33:21) (34:3) (34:4) (35:1) (36:7) (36:10) (43:9) (46:4) (47:19) (47:25) (50:5) (50:8) (50:9) (51:9) (52:1) (52:5) (52:11) (52:12) (55:4) (55:7) (55:11) (55:20) (60:2) (61:15) (64:18) (64:21) (65:7) (66:1) (67:10) (68:1) (72:7) (74:19) (75:22) (75:25) (76:10) (78:22) (79:24) (81:13) (82:4) (86:24) (91:16) (95:19) (96:11) (96:16) (98:15) (99:23) (100:19) (101:20) (102:2) (102:16) (103:21) (105:7) (108:1) (110:3) (113:8) (116:21) (119:10) (125:10) (127:9) (127:15) (131:4) (131:21) (131:22) (132:8)

likelihood (53:1) (57:3)

likely (63:12) (78:20)

likes (98:15)

line (27:4) (88:22) (88:23) (133:2)

lines (36:6) (71:16)

list (130:24)

listed (131:24)

listen (48:21) (62:10) (62:21) (67:14) (74:8) (80:5)

listing (76:7)

literally (85:20) (85:25)

litigation (99:2) (99:8)

little (13:14) (59:2) (59:3) (68:15) (77:11) (83:5) (101:3) (126:18)

live (22:25) (52:25) (67:22) (107:7) (117:23) (117:24) (125:4)

lives (26:16)

living (40:13) (88:10) (88:13) (89:11)

lobe (69:23)

lollar (2:12) (9:18) (84:24) (84:25) (88:15) (89:3) (89:8) (98:1) (107:12) (107:20) (108:22) (108:23) (111:23) (112:13) (114:24) (115:15) (116:2) (118:4) (118:22) (121:24) (123:2) (123:3) (123:6) (132:7) (132:8) (132:12) (132:15) (132:20) (132:25) (133:6) (133:8) (133:11) (133:15) (133:19) (134:6) (134:10)

long (5:14) (11:3) (11:18) (25:14) (27:23) (31:11) (56:7) (79:6) (90:2) (90:4) (90:6) (90:7) (91:2) (102:23) (103:11) (127:22) (130:13) (130:16)

look (15:4) (15:12) (18:20) (18:24) (24:2) (46:14) (46:19) (51:4) (52:24) (54:10) (73:18) (92:19) (95:25) (100:21) (131:21)

looked (100:20)

looking (27:21) (58:13) (58:15) (63:24) (67:3) (79:23) (79:24) (85:4) (89:19) (105:15)

looks (125:10)

loose (71:11)

lot (25:3) (28:9) (29:19) (30:9) (30:10) (30:12) (43:21) (65:7) (66:4) (66:22) (71:1) (72:3) (90:12) (91:19) (92:23) (94:3) (94:5) (94:11) (95:15) (96:7) (100:14) (100:25) (102:21) (103:2) (103:7) (105:10) (106:14)

loud (110:24)

lower (27:24) (29:5)

luck (60:13) (115:6)

lucky (11:9) (11:11)

lunchtime (44:11)

lutheran (23:4) (73:1)

## M

ma'am (55:17) (75:1) (77:15) (84:8) (89:18) (91:18) (95:11) (95:17) (98:19) (99:16) (99:19) (99:25) (103:20) (105:15) (106:2) (106:9) (109:16) (111:20) (113:5) (114:8) (114:12) (114:17) (115:5) (116:6) (116:7) (116:9) (123:21) (123:23) (130:7)

machine                                                                                          not      147

machine (1:24)(7:19)(111:4)
...de (24:21)(44:2)(72:3)(73:1)(73:6)(73:22)(87:22)(87:23)(89:14)(95:20)
magnitude (95:9)
maintained (108:14)
make (8:15)(18:10)(44:1)(44:2)(59:2)(59:12)(59:14)(60:13)(61:2)(61:5)(61:10)(61:12)(64:18)(66:15)(66:16)(67:11)(68:5)(69:6)(71:16)(72:12)(72:18)(73:8)(73:9)(73:11)(74:2)(78:3)(86:17)(94:15)(95:19)(98:10)(105:11)(120:5)(122:4)(133:16)
makes (13:14)(32:2)(59:3)(72:1)(72:6)
making (38:13)(69:5)(77:23)
male (70:11)
males (69:21)
malicious (26:11)(26:13)(45:19)
mallon (2:20)(9:19)(9:20)(85:4)(89:6)(120:16)(121:22)
man (18:1)(19:14)(27:12)(123:1)
manager (12:11)
manifests (70:24)
manner (30:8)
many (18:9)(18:13)(37:18)(56:18)(66:13)(87:13)(94:14)
marks (20:16)
married (90:13)
mary (3:15)(4:9)(115:22)(116:22)(117:6)(118:24)
mask (44:9)
matter (25:24)(37:17)(68:4)(73:3)(73:15)(74:15)(86:5)(87:3)(96:17)(96:18)(97:14)(97:22)(97:23)(97:24)(98:4)(98:9)(98:14)(100:2)
mature (69:23)
may (12:2)(12:9)(14:15)(21:17)(38:19)(47:5)(48:22)(58:20)(69:10)(70:14)(71:21)(73:14)(88:7)(89:10)(89:24)(94:24)(95:5)(105:21)(117:4)(133:6)
maybe (28:8)(30:10)(52:7)(71:24)(87:15)(92:8)(93:23)(95:25)(99:8)(103:8)(103:15)(129:12)
mckinney (6:10)(81:18)(113:15)(116:18)(124:7)
mean (11:22)(12:23)(13:7)(15:24)(16:6)(17:10)(17:13)(17:14)(17:17)(20:2)(20:7)(21:17)(21:19)(24:5)(25:5)(25:9)(25:10)(25:14)(25:16)(27:25)(28:1)(28:2)(28:8)(28:13)(28:19)(29:19)(30:5)(31:2)(31:3)(31:11)(32:12)(32:25)(33:6)(34:11)(34:12)(34:24)(34:25)(36:4)(36:5)(36:6)

(36:9)(36:22)(36:23)(37:3)(37:12)(37:13)(37:15)(37:16)(37:18)(38:19)(41:15)(41:16)(42:6)(44:22)(47:3)(47:4)(47:24)(48:4)(48:18)(48:19)(48:23)(49:2)(49:22)(49:25)(50:2)(51:6)(52:5)(52:10)(52:12)(53:2)(53:5)(53:19)(55:4)(55:7)(55:8)(55:9)(55:11)(56:18)(62:22)(64:3)(73:24)(75:18)(91:11)(93:17)(93:21)(94:4)(95:7)(96:10)(96:11)(96:12)(100:7)(106:9)(106:15)(111:2)(119:14)(121:11)(131:4)(131:11)
meaning (20:1)(20:4)(40:16)(41:4)(50:11)
means (27:17)(37:6)(41:22)(46:11)(58:3)(58:9)(63:23)(70:25)(73:18)(73:19)(77:20)(97:2)
meant (26:13)(31:21)(42:12)(63:6)
medical (11:2)(43:2)(99:19)
meet (56:5)(71:3)(71:14)(81:17)(124:5)
member (73:21)(74:16)(82:8)
members (7:4)(9:14)(72:24)(82:12)(130:18)
mental (48:9)(60:20)(60:23)(61:3)(61:12)(71:2)(71:3)(71:7)(71:8)
mentally (70:18)(70:20)(71:14)
mention (29:5)
mentioned (12:8)(16:22)(18:14)(26:7)(27:22)(29:1)(36:16)(48:14)(114:5)
mercy (52:1)(74:12)(74:14)
mere (32:8)
michael (6:11)(81:19)(124:7)
michelle (5:22)
middle (42:8)(57:17)(98:13)
might (21:14)(53:19)(53:20)(57:20)(57:21)(59:18)(60:16)(60:18)(60:19)(61:23)(63:17)(68:22)(68:23)(69:1)(69:18)(71:22)(79:6)(80:15)(83:3)(92:1)(99:11)(104:20)(119:24)(136:9)
mind (7:16)(30:23)(38:15)(55:10)(61:9)(68:12)(73:22)(98:11)
mine (18:21)(31:15)(131:25)
minute (121:9)(122:6)
minutes (14:5)
misdemeanor (125:11)
misreading (91:10)
miss (92:7)(92:10)
mistake (27:19)
mitigating (46:19)(46:25)(47:1)(47:6)(47:8)(68:19)(68:22)(68:24)

(69:1)(69:9)(69:13)(72:22)(74:10)(98:2)
mitigation (68:19)(68:20)
monetary (32:13)
money (32:2)(44:1)(44:7)(44:12)(44:14)(130:2)
month (6:19)(11:5)(12:24)(82:2)(117:1)
months (24:8)
moral (20:13)(48:18)(50:20)(55:1)(67:1)(67:20)(68:3)(68:5)(68:6)(68:8)(68:16)(69:5)(72:19)(72:23)(73:3)(73:15)(74:1)(74:14)(122:18)
morally (96:12)
morals (47:6)
more (8:15)(9:13)(13:14)(29:16)(32:2)(32:21)(33:17)(34:15)(34:18)(35:2)(36:6)(38:1)(41:18)(47:21)(48:5)(48:7)(48:22)(48:23)(63:12)(69:21)(72:9)(72:25)(78:17)(78:20)(92:8)(94:1)(100:16)(100:19)(106:1)(106:19)(106:23)(119:6)(131:6)
morning (5:8)(6:4)(9:4)(9:8)(9:9)(9:20)(10:8)(10:9)(10:11)(10:13)(10:16)(12:4)(14:17)(14:19)(18:12)(75:4)(81:15)(84:12)(84:13)(84:25)(85:2)(85:15)(85:25)
mortgage (91:16)
most (71:25)(91:23)
mother (72:4)
motive (30:8)
moved (23:8)(87:24)
moving (88:3)(88:4)(88:6)(88:20)(110:22)(124:14)
much (25:23)(44:7)(48:1)(53:3)(63:11)(70:10)(72:14)(74:4)(75:4)(80:22)(88:17)(100:15)(107:2)(107:7)(112:5)(113:22)(114:23)(115:4)(118:7)(123:10)(123:14)(127:18)(132:3)(133:22)
multiple (27:6)(27:7)(35:13)(35:17)
murder (6:12)(14:20)(14:22)(15:1)(19:9)(27:4)(27:10)(27:13)(28:2)(29:3)(29:12)(29:13)(31:12)(32:5)(34:1)(34:24)(35:15)(38:25)(39:14)(39:15)(40:3)(40:7)(40:15)(42:4)(44:17)(44:18)(45:5)(45:16)(56:24)(58:22)(61:20)(61:23)(62:22)(81:20)(83:14)(96:25)(117:20)
murdered (31:6)
murderer (64:24)
murderers (57:24)(57:25)
must (26:23)(59:14)(60:22)(62:7)(68:17)
myself (10:22)(46:15)(82:19)

**N**

name (5:25)(119:17)
natural (84:3)
nature (15:5)(40:25)
ncic (4:18)
necessarily (16:8)(30:1)(32:12)(36:5)(36:7)(41:22)(50:6)(53:3)(89:15)(92:1)(96:13)
necessary (15:23)(15:25)(16:5)(16:8)(18:25)(19:17)(20:2)(22:10)(55:8)
necessity (104:9)(120:23)
need (19:19)(29:16)(29:25)(30:6)(30:21)(61:5)(62:10)(63:2)(73:10)(95:25)(104:12)(120:21)(121:22)(121:23)(121:24)(122:4)(132:10)
needed (38:21)(73:7)(106:13)(130:2)
needs (37:4)(104:2)(104:14)
negligence (60:25)
nervous (104:21)(109:21)(109:23)(109:24)(109:25)
neurological (69:20)
never (20:20)(44:19)(45:14)(53:7)(95:16)(105:22)(105:24)(106:10)(106:13)(108:17)(111:15)(112:10)(114:14)(117:21)(118:20)(126:8)(128:3)
nevertheless (90:8)
new (88:19)
news (122:23)
newspaper (79:23)(80:3)
next (9:10)(9:17)(78:25)(84:16)(84:23)(85:3)(112:18)
nice (37:24)(56:5)(124:5)
nicole (81:14)
night (5:11)(11:8)(13:14)(91:24)
nights (13:17)
nine (12:3)
nobody's (93:8)
nod (7:9)(84:2)
nondenominational (23:11)
none (16:23)(17:20)(71:19)
norm (70:22)
normally (11:14)(12:3)
north (2:9)(2:22)(135:21)(136:19)
not (8:20)(8:21)(11:20)(12:8)(12:22)(13:7)(13:10)(13:21)(15:18)(16:14)(17:19)(18:3)(19:3)(23:6)(23:18)(23:25)(24:5)(24:14)(28:12)(30:1)(30:2)(31:8)(31:22)(31:25)(32:25)(33:7)(34:11)(34:13)(36:1)(36:2)(36:7)(37:3)(38:6)(38:19)(42:20)(43:12)(44:9)(44:22)(44:24)(46:19)(47:5)(47:24)(47:25)(48:1)(48:2)(49:7)(49:13)(50:2)(50:5)(50:8)(50:24)(52:25)(53:5)(53:11)(53:17)(54:1)(55:9)(56:6)(56:9)(56:17)(57:6)(57:20)(57:21)(58:6)(58:13)(58:16)(58:19)

note                                                                    parole    148

(58:21)(59:11)(59:16)
(60:5)(60:17)(60:18)
(60:25)(61:18)(62:8)
(62:9)(63:12)(63:17)
(64:8)(64:24)(64:25)
(65:2)(65:8)(65:15)
(65:19)(65:21)(65:25)
(67:20)(68:21)(68:22)
(68:25)(69:1)(69:3)(69:9)
(69:10)(70:14)(70:23)
(71:3)(71:12)(71:14)
(71:21)(71:24)(72:5)
(72:7)(72:21)(72:24)
(72:25)(73:4)(73:6)(78:9)
(78:12)(78:21)(79:6)
(79:13)(83:24)(86:6)
(86:7)(86:10)(86:20)
(87:3)(87:9)(87:10)(88:7)
(88:8)(88:14)(89:10)
(89:14)(91:25)(92:1)
(93:8)(93:18)(94:8)
(94:24)(95:3)(95:5)(95:6)
(95:23)(96:7)(96:14)
(98:15)(99:5)(99:9)
(99:22)(100:3)(100:4)
(100:9)(100:10)(100:13)
(101:13)(101:17)(101:20)
(102:9)(102:12)(102:13)
(102:22)(103:16)(103:17)
(104:13)(104:14)(104:15)
(104:17)(104:23)(105:3)
(105:4)(105:11)(106:22)
(107:22)(108:14)(108:18)
(108:19)(114:6)(115:13)
(115:21)(115:24)(117:11)
(119:10)(119:13)(119:15)
(120:20)(120:23)(121:8)
(121:13)(121:17)(122:6)
(123:1)(125:15)(127:21)
(127:24)(128:1)(130:24)
(131:15)(132:14)(134:4)
(134:7)
note   (136:2)
nothing   (57:18)(67:2)
(79:17)(86:12)(86:22)
(87:11)(93:1)(94:10)
(132:6)(133:20)
notice   (60:21)(90:11)
(92:12)
noticed   (111:9)(114:4)
(126:23)
now   (6:19)(8:9)(15:2)
(15:12)(16:11)(16:22)
(18:7)(19:18)(19:20)
(20:1)(20:23)(21:25)
(22:8)(24:6)(24:20)
(27:21)(29:10)(30:21)
(31:13)(32:8)(38:22)
(41:2)(42:23)(45:10)
(46:11)(49:19)(49:20)
(53:6)(60:11)(62:2)(62:8)
(62:25)(63:7)(66:13)
(67:8)(69:8)(69:13)
(71:20)(73:2)(78:22)
(79:4)(80:8)(82:23)
(83:10)(83:23)(84:10)
(90:1)(91:14)(91:19)
(92:16)(93:11)(96:17)
(96:18)(96:19)(97:9)
(97:22)(99:2)(100:15)
(102:8)(102:15)(104:7)
(104:12)(105:16)(106:5)
(106:15)(106:18)(109:5)
(117:1)(118:9)(124:12)
(126:22)(132:22)
number   (1:6)(4:17)(7:24)
(19:10)(32:20)(33:18)

(40:21)(41:7)(41:14)
(41:25)(46:2)(51:3)(51:8)
(51:21)(52:4)(52:18)
(52:20)(52:24)(53:2)
(54:10)(54:14)(65:18)
(66:5)(66:7)(66:11)
(66:13)(66:20)(67:9)
(77:8)(77:9)(82:16)
(102:21)(105:23)(106:20)
(108:9)(111:17)(114:13)
(117:19)(121:11)(121:15)
(125:1)(125:18)
numbered   (1:20)(135:11)
nurse   (11:21)

## O

oak   (73:8)
oath   (7:1)(7:4)(7:21)
(7:22)(7:23)(16:11)
(16:12)(16:15)(16:20)
(22:4)(31:1)(38:7)(38:16)
(45:22)(50:19)(67:15)
(80:10)(82:7)(82:12)
(82:15)
object   (98:2)
objection   (112:12)
(115:15)(118:22)(123:3)
objective   (27:18)(49:13)
(49:25)(50:5)(62:15)
(64:19)(67:11)
objectively   (57:23)
(58:15)(59:12)(67:3)
obligate   (54:14)
obligated   (54:16)
obligation   (86:25)(87:2)
(87:6)(87:9)(87:10)(96:20)
obviously   (61:18)(124:23)
occur   (16:8)(31:12)(33:7)
occurred   (30:25)(135:11)
o'clock   (12:3)
october   (90:21)(91:11)
(91:13)(91:14)
off   (11:14)(11:23)(25:5)
(41:8)(51:7)(92:5)
(101:15)(101:18)(109:9)
(109:10)(120:11)(127:4)
(132:9)(132:16)(133:3)
(133:12)
offender   (35:1)(35:13)
(35:16)(52:10)
offense   (19:9)(28:18)
(29:6)(29:7)(32:4)(34:7)
(36:10)(38:25)(54:25)
(61:9)(61:10)(61:20)
(61:22)(64:14)(130:24)
offenses   (29:11)(58:6)
offensive   (28:13)
offer   (61:8)
offered   (4:20)(135:15)
office   (2:7)(2:18)(2:19)
(2:21)(31:16)(93:19)
(127:7)(129:20)(129:21)
(135:16)
officer   (15:8)(48:5)
officer's   (27:4)
official   (23:17)(98:3)
(135:4)(135:20)(136:18)
off-the-record   (120:12)
(122:7)
often   (59:5)(69:21)
(69:23)(70:2)
old   (70:6)(70:12)(79:23)
once   (11:22)(22:14)
(34:3)(41:22)(50:11)
(73:21)(77:25)(83:18)
(91:24)(107:22)
one   (7:3)(7:24)(12:10)

(14:9)(14:21)(15:7)
(15:25)(16:11)(17:5)
(18:5)(18:17)(21:16)
(21:22)(22:14)(23:20)
(29:11)(30:15)(33:12)
(33:21)(34:9)(35:2)
(35:12)(36:19)(38:13)
(39:2)(39:10)(41:21)
(46:2)(46:13)(46:22)
(47:24)(48:6)(48:12)
(51:16)(52:18)(57:20)
(57:21)(59:11)(63:3)
(63:14)(64:24)(65:23)
(67:19)(68:22)(69:1)
(74:9)(75:18)(77:2)
(82:11)(82:16)(89:9)
(90:20)(90:21)(90:22)
(90:24)(91:11)(92:11)
(92:15)(94:23)(97:2)
(99:14)(108:10)(110:8)
(116:24)(119:6)(126:9)
(128:20)(130:5)
ones   (77:3)(107:25)
one's   (15:7)
ongoing   (64:1)
online   (98:24)
only   (18:14)(20:17)
(21:1)(21:11)(22:17)
(22:20)(23:9)(24:5)(24:7)
(25:4)(26:21)(30:14)
(32:6)(35:8)(39:5)(39:7)
(39:8)(57:1)(58:25)
(61:23)(65:2)(65:23)
(66:10)(67:11)(69:3)
(72:14)(72:21)(73:16)
(75:23)(77:1)(93:19)
(96:15)(96:20)(101:21)
(120:19)(126:9)
onto   (53:23)
open   (5:3)(81:4)(109:12)
(135:12)
opinion   (59:7)
opinions   (8:17)(14:14)
(18:24)(25:17)(49:4)
(83:20)
opportunity   (8:7)(67:25)
(69:4)(83:5)(106:18)
opposed   (17:11)
oprah   (15:16)
oranges   (64:12)
order   (31:4)(39:6)(61:5)
(70:20)(74:14)(84:4)
(120:2)
ordinary   (81:24)
orientation   (8:7)(83:6)
originally   (25:11)
other   (16:12)(16:15)
(18:5)(18:9)(21:14)
(24:11)(25:24)(25:25)
(31:25)(34:13)(34:20)
(35:8)(36:10)(36:21)
(36:22)(37:2)(38:11)
(39:9)(46:9)(48:6)(48:7)
(49:3)(58:6)(59:11)
(60:19)(61:15)(64:9)
(66:14)(66:22)(67:2)
(67:3)(68:16)(72:22)
(73:21)(73:25)(74:16)
(84:19)(95:6)(95:25)
(96:1)(97:9)(98:13)
(105:5)(128:15)(128:24)
(132:5)(135:8)
others   (37:11)(38:10)
(57:3)(64:8)(94:14)
other's   (73:10)
ought   (30:23)(39:23)
(64:17)(69:6)(102:23)

our   (17:23)(48:20)
(48:24)(57:22)(58:8)
(59:9)(59:10)(68:6)
(69:22)(69:24)(70:18)
(70:20)(71:20)(72:3)
(77:11)(78:15)(88:1)
(92:11)(103:5)(122:13)
(132:18)
out   (6:9)(11:9)(14:2)
(14:13)(14:16)(25:4)
(25:19)(48:13)(53:4)
(56:12)(57:5)(58:5)
(66:25)(68:1)(72:10)
(72:13)(75:5)(78:9)
(79:12)(82:24)(85:21)
(86:7)(87:20)(88:17)
(89:9)(89:11)(89:16)
(90:19)(96:1)(96:7)(99:8)
(99:11)(103:19)(110:18)
(110:23)(116:25)(127:2)
(129:19)(130:13)(133:1)
outside   (44:4)(44:20)
(88:5)(90:6)(92.6)
over   (6:5)(6:13)(10:12)
(11:24)(51:12)(58:18)
(59:17)(65:4)(65:25)
(66:9)(69:22)(73:7)
(81:20)(82:2)(110:1)
(112:22)(117:1)(124:8)
overhear   (54:4)
overly   (31:8)(32:25)
own   (34:12)(34:14)
(48:20)(48:24)(49:5)
(50:20)(68:5)(68:6)(68:8)
(68:16)(69:5)(72:19)
(72:23)(73:3)

## P

page   (3:4)(4:20)(20:11)
(22:9)(22:13)(22:17)
(26:4)(27:21)(32:17)
(34:10)(36:14)(36:18)
(37:8)(48:13)(57:14)
(57:16)(89:20)(96:4)
(100:12)(102:19)
pages   (130:16)
paid   (12:23)(12:25)
(126:13)(126:16)(127:4)
(127:7)(127:12)(127:18)
(127:19)(127:20)(129:8)
(134:4)
panel   (6:24)(7:3)(14:17)
(77:22)(77:25)(78:4)
(78:15)(82:6)(82:8)
(82:11)(110:19)(130:13)
parcel   (102:15)
pardon   (108:12)
park   (23:14)
parker   (1:21)(6:10)
(81:18)(109:25)(113:14)
(116:17)(124:4)
parks   (2:16)(9:18)
(55:25)(56:1)(56:3)(56:4)
(75:2)(76:24)(77:1)
(80:20)(80:21)(85:1)
(85:2)(107:13)(107:15)
(107:17)(107:22)(108:3)
(119:4)(119:6)(119:16)
(120:7)(120:15)(121:1)
(121:2)(129:1)(129:4)
(132:7)
parole   (14:24)(37:9)
(39:18)(39:19)(46:7)
(47:15)(51:12)(54:12)
(56:25)(57:7)(58:3)(58:9)
(58:10)(58:12)(65:6)
(65:12)(66:10)

part                                                                     put    149

part (9:12)(19:12)
(33:12)(69:24)(78:9)
?1:23)(95:13)(96:13)
?8:18)(102:6)(102:14)
(102:16)(103:18)(120:6)
partiality (136:10)
participating (9:2)
(100:5)
particular (27:11)
(31:22)(35:25)(45:13)
(45:18)(59:10)(63:3)
(63:13)(72:9)(94:25)
(95:7)(120:21)
particularly (69:21)
(69:23)(89:16)(102:6)
parties (3:18)(43:24)
(45:11)(120:20)(120:23)
(135:10)(135:15)(136:9)
parts (88:6)(88:8)
party (46:9)(67:6)
pass (8:22)(11:20)(11:23)
passed (120:2)
past (23:9)(136:7)
pastor (23:23)
patient (11:15)
patient's (11:23)
pay (12:23)(127:8)
(127:9)(127:12)(129:7)
(132:16)(132:17)
peace (98:12)
peggy (3:19)(4:7)(4:18)
(124:3)(130:8)
pen (30:19)
penal (125:22)
penalty (14:15)(14:22)
(15:6)(15:21)(17:8)
18:22)(19:11)(20:4)
(22:10)(22:19)(23:17)
(24:13)(24:16)(24:23)
(25:2)(26:7)(26:24)(27:9)
(30:3)(33:15)(34:1)(34:9)
(34:23)(35:16)(36:12)
(36:18)(45:17)(46:6)
(46:12)(47:12)(47:23)
(51:12)(53:18)(54:13)
(57:14)(57:15)(58:14)
(58:19)(59:5)(62:12)
(62:13)(65:9)(65:15)
(67:11)(69:15)(76:14)
(86:4)(96:5)(96:8)(97:5)
(99:5)(100:13)(100:20)
(102:10)(102:19)(102:22)
(103:2)(103:17)(105:6)
(105:13)(105:23)(105:25)
(108:15)(108:19)(111:11)
(111:14)(111:16)(112:10)
(114:10)(114:15)(117:19)
(117:20)(117:22)(122:17)
pencil (79:1)
penitentiary (58:1)
(58:5)(62:23)(74:13)
people (16:6)(18:9)
(21:14)(27:6)(27:7)
(28:20)(30:13)(31:17)
(35:14)(37:19)(48:21)
(58:4)(65:7)(69:12)
(69:13)(71:10)(71:25)
(72:1)(77:22)(78:5)
(85:20)(86:5)(86:6)(86:9)
(86:14)(86:20)(86:22)
(87:12)(87:13)(87:14)
(87:21)(90:4)(90:12)
(91:19)(92:16)(92:18)
(93:23)(94:2)(94:11)
(95:3)(95:14)(95:21)
(95:23)(95:25)(96:1)
(96:7)(100:1)(100:2)

(100:3)(100:9)(100:14)
(100:25)(101:19)(102:21)
(104:5)(105:2)(105:6)
(106:14)(120:2)(132:15)
people's (49:4)
percent (37:17)(63:1)
(87:16)(88:14)(92:20)
(93:3)(94:6)(94:12)
(94:13)(94:17)(94:20)
(95:1)(104:1)(105:4)
perfect (22:22)(95:6)
perfectly (96:6)
perform (12:9)
performing (76:19)
person (20:18)(27:2)
(27:8)(30:15)(33:25)
(35:14)(36:11)(39:13)
(40:19)(41:11)(41:17)
(41:22)(42:10)(42:15)
(42:25)(43:3)(45:14)
(49:7)(53:15)(53:17)
(58:19)(60:23)(61:12)
(62:22)(63:13)(64:23)
(69:14)(69:17)(70:2)
(70:18)(70:21)(71:1)
(71:7)(71:13)(71:24)
(85:23)(93:8)(94:17)
(95:24)(97:19)(97:20)
(97:21)(102:7)(104:15)
(105:11)(109:4)
personal (20:13)(37:3)
(37:5)(55:1)(68:4)(72:23)
(73:3)(74:1)(74:14)
(122:18)
personally (50:8)(105:22)
persons (57:5)
person's (16:2)(22:19)
(27:17)(30:17)(30:20)
(34:15)(39:2)(41:12)
(52:6)(52:23)
pertains (14:14)
phase (64:12)(64:14)
philip (119:18)
philosophically (57:20)
phone (25:7)(25:22)
(92:4)(121:8)(121:15)
physical (34:16)(71:22)
pick (105:17)
picked (21:4)(78:1)
picking (77:22)(132:20)
picture (31:5)(72:11)
pilot (53:23)(53:24)
(53:25)(54:5)(101:8)
place (64:17)(104:10)
(105:8)(121:17)
placed (97:18)(125:19)
(127:5)(128:3)
places (28:19)
placing (67:4)
plan (44:3)
plane (53:23)(54:3)
(54:4)(54:5)(101:7)
(101:13)(101:18)
planned (45:8)
plans (86:8)(87:22)
(87:23)(89:14)(89:15)
(89:19)(90:18)(92:13)
plate (93:9)
play (52:4)
please (5:20)(14:6)
(20:12)(26:5)(36:15)
(77:18)(81:9)(81:12)
(109:16)(109:18)(112:23)
(113:5)(113:7)(116:7)
(116:9)(116:11)(123:23)
(136:5)
plural (63:24)

plus (34:22)(120:22)
point (6:23)(11:22)
(13:25)(15:3)(38:20)
(61:7)(74:9)(76:17)
(78:16)(80:2)(82:5)
(94:17)(97:9)(98:16)
pointed (66:25)(72:12)
points (68:1)
poison (98:22)
police (15:8)(27:4)(48:4)
portion (56:8)
portions (135:8)
position (23:17)(24:3)
(25:1)(29:14)(30:7)
(31:15)(56:23)(57:8)
(59:10)
positions (24:4)(57:18)
positive (88:14)(102:9)
(102:12)(106:20)
possibility (14:24)
(39:25)(63:5)(63:6)(65:6)
possible (14:21)(14:24)
(17:5)(59:12)
possibly (72:15)(101:5)
potential (12:12)(30:2)
(66:15)
potentially (95:12)
power (74:5)
predisposed (80:14)
present (5:3)(81:4)
(109:12)
presented (20:22)(39:6)
presiding (1:21)(6:12)
(81:19)(109:25)(116:19)
(124:8)
presume (39:20)(41:5)
presumption (41:7)(46:6)
pretend (38:22)
pretty (22:18)(25:9)
(63:11)(71:13)(95:7)
(99:24)(100:1)
prevent (20:14)(76:18)
(114:10)(122:19)
previous (12:24)
price (32:2)
principal (46:9)
printout (4:18)
prison (40:13)(51:12)
(97:4)(97:14)
probability (63:5)(63:8)
(63:10)(63:17)(63:18)
probably (6:18)(6:22)
(13:19)(19:23)(33:20)
(34:13)(34:24)(36:4)
(37:21)(40:23)(48:4)
(53:1)(53:3)(53:19)(78:8)
(78:24)(82:2)(82:3)
(86:15)(91:3)(92:18)
(105:8)(105:10)(105:17)
(132:10)(133:3)
probation (125:11)
(125:19)(126:12)(127:5)
(127:25)(128:1)(128:4)
(132:14)
problem (12:19)(13:11)
(13:22)(20:25)(43:18)
(44:10)(45:17)(57:19)
(57:22)
problems (119:20)
procedural (8:11)(8:19)
(83:13)(83:21)
proceed (117:4)
proceeding (7:20)
proceedings (1:19)(1:20)
(1:23)(6:24)(82:6)
(134:17)(135:9)(135:14)
process (6:13)(13:9)

(19:13)(22:18)(27:1)
(27:15)(32:19)(33:12)
(34:9)(51:3)(51:8)(54:17)
(57:4)(81:21)(81:25)
(110:1)(113:16)(116:20)
(124:9)
produced (1:24)
professional (136:8)
professionals (18:21)
promised (10:18)
promising (56:9)
promotions (12:19)
promulgated (136:3)
pronouncing (5:24)
pronunciation (26:8)
proof (64:9)(66:6)
(66:18)(66:21)
proper (61:5)(67:13)
(102:24)
properly (106:1)
property (30:10)(30:17)
(30:18)(30:19)(30:20)
(30:23)(32:11)(32:14)
(39:2)(40:17)(40:18)
(41:12)(41:13)(42:13)
(52:23)
pros (100:18)
prosecute (71:10)
prosecuting (9:16)(84:21)
prosecution (9:12)(9:14)
(58:17)(84:20)
prosecutors (60:10)
prospective (5:22)(7:1)
(56:18)(59:20)(7:20)
(81:14)(82:8)(108:25)
(110:4)(112:15)(113:9)
(115:17)(115:18)(116:22)
(118:23)(121:11)(123:8)
(124:2)
prove (19:8)(38:23)
(39:22)(41:3)(41:9)(42:3)
(42:24)(43:10)(43:14)
(60:1)(60:8)(60:12)
(60:22)(62:4)(62:6)(62:7)
(63:9)(64:7)(64:8)(64:13)
(64:14)(66:7)(96:24)
proved (42:4)
proven (59:13)
proves (42:17)(64:11)
provides (61:22)(67:4)
(102:23)
proving (64:10)
psychic (32:13)
psychological (71:23)
psychology (48:9)
public (2:21)
pull (59:16)
punished (65:9)
punishment (37:10)(50:4)
(50:9)(52:14)(56:24)
(57:7)(57:15)(61:21)
(65:13)(74:13)(76:17)
(99:18)
punishments (14:21)
purchased (119:22)
purpose (37:9)(40:19)
(41:12)(92:5)
purposes (58:8)(132:18)
purse (32:1)
pursuant (27:7)(136:5)
pursue (96:9)
put (20:14)(20:15)
(20:21)(57:14)(60:1)
(60:9)(63:6)(65:11)
(66:23)(67:10)(92:11)
(119:14)(120:17)(121:20)
(122:3)(122:21)

putting                                                                                                        same      150

| | | | |
|---|---|---|---|
| **putting** (90:1) | (23:6)(24:5)(24:14)(25:5) | (79:21)(85:18) | (50:16)(50:22)(51:10) |
| **Q** | (25:6)(25:12)(28:12) | **remind** (7:22)(82:14) | (51:13)(51:24)(52:2) |
| | (31:3)(38:18)(47:24) | **reminded** (10:15)(13:24) | (52:19)(53:6)(53:8) |
| **ialified** (77:4)(77:19) | (47:25)(48:1)(54:2)(54:3) | **removed** (12:20) | (53:10)(54:7)(55:6) |
| (89:10)(94:24)(123:1) | (64:11)(66:4)(67:2)(72:2) | **render** (16:19)(22:4) | (55:13)(55:19)(59:8) |
| **qualifying** (77:22)(78:15) | (75:14)(92:12)(101:24) | (31:1)(42:18)(80:12) | (59:24)(63:22)(65:2) |
| **quality** (17:23) | (105:19)(106:10)(106:13) | (108:14) | (65:16)(67:13)(67:20) |
| **quantity** (17:24) | (106:16)(106:19)(111:10) | **rendered** (17:6)(98:6) | (70:9)(70:13)(71:9)(73:6) |
| **quarrel** (15:7) | (130:13) | (98:9) | (75:1)(75:11)(75:24) |
| **quay** (1:21)(6:9)(81:18) | **reason** (76:21)(85:24) | **repeat** (10:22)(35:1) | (76:9)(79:19)(80:8) |
| (124:4) | (86:2)(94:24)(95:3)(125:9) | (35:13)(35:16)(52:10) | (80:18)(81:8)(82:7) |
| **question** (8:2)(15:20) | **reasonable** (19:8)(38:24) | **repeated** (22:9)(22:14) | (82:21)(83:23)(84:14) |
| (16:23)(18:19)(19:7) | (39:22)(41:3)(41:9)(42:3) | **replace** (92:14) | (85:7)(86:14)(86:16) |
| (19:12)(20:12)(21:3) | (60:2)(62:7)(66:8)(96:24) | **report** (11:23)(121:4) | (86:20)(87:4)(87:8) |
| (26:6)(27:22)(27:23) | **reasonably** (136:10) | **reported** (1:23)(135:12) | (87:12)(87:14)(88:8) |
| (32:11)(40:9)(42:3)(46:1) | **reasons** (18:25)(76:8) | **reporter** (7:8)(10:15) | (89:25)(90:15)(90:16) |
| (46:17)(47:12)(47:13) | (89:9)(120:22) | (75:15)(84:2)(109:6) | (91:6)(91:8)(91:15) |
| (48:15)(49:6)(49:21) | **reassess** (68:4) | (109:9)(110:24)(120:9) | (92:16)(92:17)(93:24) |
| (51:1)(62:9)(64:11)(66:1) | **reassured** (17:19) | (135:5)(135:20)(136:18) | (94:20)(95:4)(95:5) |
| (67:5)(67:24)(76:4) | **recall** (6:19)(7:1)(82:1) | **reporter's** (1:1)(1:24) | (95:23)(96:9)(96:17) |
| (82:18)(84:6)(130:6) | (82:8)(110:18)(129:8) | (4:13)(135:10) | (96:18)(96:19)(96:21) |
| (130:16) | (130:12) | **represent** (9:23) | (97:7)(97:8)(97:22)(99:2) |
| **questionnaire** (4:18) | **receive** (50:9)(58:19) | **representation** (94:15) | (99:10)(99:13)(102:3) |
| (14:16)(14:23)(15:13) | (97:4) | **representative** (96:23) | (103:4)(104:25)(108:21) |
| (15:14)(18:14)(20:12) | **received** (119:17) | **represents** (102:20) | (108:24)(109:16)(110:7) |
| (24:22)(25:4)(25:11) | **receives** (97:5) | **requested** (135:9) | (111:12)(111:13)(112:14) |
| (25:15)(25:19)(26:5) | **recently** (24:5)(24:7) | **require** (64:9)(68:20) | (112:18)(112:19)(113:4) |
| (36:15)(48:1)(65:11) | (24:10)(48:2)(119:22) | **required** (12:16)(16:21) | (113:22)(114:22)(115:3) |
| (66:24)(75:18)(75:25) | **recess** (55:20)(81:1) | **reschedule** (121:15) | (116:7)(116:8)(116:23) |
| (76:13)(82:24)(85:21) | (81:3)(109:11) | **research** (98:24)(100:16) | (117:3)(118:10)(118:16) |
| (85:23)(89:17)(95:8) | **reckless** (60:24) | (100:20)(102:8)(106:19) | (123:4)(123:22)(124:13) |
| (96:4)(97:18)(100:12) | **recognize** (62:24)(64:23) | **reserved** (16:25)(22:20) | (124:21)(125:11)(126:17) |
| (100:22)(106:10)(110:18) | **reconsider** (119:24) | (26:24) | (128:24)(132:1)(132:3) |
| (111:10)(113:18)(114:4) | **record** (1:1)(1:24)(5:21) | **resolve** (13:12) | (132:15)(133:7)(133:21) |
| (116:25)(117:3)(117:10) | (76:7)(81:13)(109:6) | **resolved** (94:6) | (134:10)(134:12)(134:15) |
| (122:15)(122:17)(130:14) | (109:9)(109:10)(110:3) | **respect** (18:8)(19:1) | **rise** (5:5)(47:7)(71:21) |
| 131:21)(134:5)(134:9) | (113:8)(116:21)(119:14) | (24:2)(51:17)(73:10) | (81:5)(109:13)(112:24) |
| **questions** (8:6)(8:17) | (120:6)(120:10)(120:11) | (73:25) | (116:4)(123:19) |
| (25:12)(39:21)(47:18) | (120:18)(121:10)(121:20) | **respective** (135:15) | **rises** (46:18) |
| (50:22)(56:21)(58:8) | (121:22)(122:3)(122:6) | **response** (74:12)(76:25) | **rns** (24:11) |
| (58:9)(62:18)(67:7)(83:1) | (122:8)(124:2)(132:9) | (84:5)(131:22) | **road** (88:22)(88:23) |
| (83:2)(83:3)(83:19) | (133:4)(135:10) | **responses** (83:2)(113:20) | **rob** (43:25)(44:6) |
| (83:24)(111:22)(111:23) | **records** (132:22) | **responsibility** (9:15) | **robbery** (27:14)(27:24) |
| (113:19)(114:24)(117:2) | **rectify** (21:9)(21:12) | (21:3)(38:2)(38:6)(60:1) | (28:6)(28:13)(28:16) |
| (118:4)(128:25)(132:5) | **refer** (71:15)(83:4) | (69:4)(73:16)(73:25) | (28:18)(29:4)(29:7) |
| **quick** (6:5)(6:9)(134:15) | (117:2) | (74:6)(74:19)(84:21) | (29:11)(30:5)(30:16) |
| **quite** (25:3)(66:24) | **reference** (102:19) | **responsive** (8:1)(82:18) | (30:25)(31:3)(31:9) |
| **quiz** (8:21) | **referred** (67:1) | **rest** (6:6)(21:16)(56:13) | **role** (117:15) |
| **quotation** (20:16) | **referring** (8:5) | (74:23)(80:23)(97:4) | **room** (49:10)(51:14) |
| **quotes** (20:21) | **refers** (68:6) | **result** (27:18)(122:20) | (62:10)(71:1)(73:13) |
| **R** | **refinancing** (91:19) | **retardation** (71:4) | (85:19)(92:3) |
| | **reflect** (5:22)(81:13) | **retarded** (70:19)(70:21) | **rule** (136:2)(136:6) |
| **rabb** (122:23) | (110:3)(113:8)(116:21) | **return** (37:7)(65:5) | **ruling** (3:6)(3:8)(3:11) |
| **raise** (6:25)(82:7) | (124:2) | (91:3)(97:15)(105:22) | (3:13)(3:16)(3:20) |
| (104:13) | **reflected** (14:23) | (105:25)(108:17)(111:15) | **run** (87:24) |
| **raised** (23:4)(46:16) | **reflects** (135:14) | (114:14)(115:14)(117:21) | **rush** (74:24) |
| (47:6)(65:24)(71:19) | **refuse** (17:11) | (118:21)(122:16) | **S** |
| **ranch** (2:18) | **regard** (67:12)(117:3) | **returning** (122:20) | |
| **range** (61:22) | **regarding** (50:5)(51:8) | **rev** (44:5)(44:20) | **said** (7:20)(12:12) |
| **rape** (26:17)(27:2) | (57:13)(111:14) | **reverse** (47:14) | (15:12)(15:22)(25:20) |
| (35:23)(36:6)(36:10) | **regardless** (40:17) | **rewrite** (62:8) | (27:21)(33:10)(36:20) |
| **raped** (27:1) | (41:12)(48:15)(111:11) | **ridiculous** (65:10) | (37:10)(37:11)(38:9) |
| **rather** (50:20) | **regards** (45:1)(114:13) | **right** (6:25)(7:6)(8:22) | (42:13)(44:6)(44:9) |
| **reached** (91:25)(97:7) | (117:10)(117:18)(136:6) | (8:25)(9:2)(9:24)(10:15) | (47:25)(49:11)(51:9) |
| **read** (8:7)(27:12)(80:4) | **rehabilitate** (98:11) | (13:3)(13:18)(13:25) | (51:22)(53:2)(55:7) |
| (80:15)(83:5)(85:22) | **rehabilitates** (97:19) | (16:2)(18:15)(19:6)(20:1) | (57:13)(66:23)(70:4) |
| (98:25)(99:15)(99:19) | **reintroduce** (56:6) | (20:11)(22:8)(22:23) | (75:23)(89:13)(89:20) |
| (100:6)(100:8)(112:22) | **relationships** (136:8) | (24:10)(25:20)(26:1) | (90:22)(91:4)(96:5)(98:5) |
| **reading** (14:19)(95:8) | **relax** (84:1) | (28:5)(29:18)(30:14) | (100:11)(100:12)(100:14) |
| **ready** (9:25)(74:23) | **religious** (16:23)(17:4) | (31:13)(31:14)(32:17) | (100:24)(102:22)(103:16) |
| **real** (19:5)(95:21) | (18:9)(18:12)(18:17) | (34:11)(36:4)(37:8) | (104:7)(122:13)(130:2) |
| (127:21) | (20:13)(51:2)(51:18) | (38:12)(38:18)(38:22) | (131:4) |
| **reality** (92:21)(104:23) | (51:20)(51:23)(51:25) | (39:19)(43:11)(43:13) | **same** (20:24)(27:6)(27:7) |
| (105:1)(105:3) | (54:11)(54:13)(54:21) | (43:15)(43:17)(43:20) | (29:4)(37:8)(41:4)(41:5) |
| **realize** (14:20) | (54:23)(114:9)(117:11) | (44:16)(46:1)(46:24) | (41:7)(44:15)(45:3) |
| **really** (10:13)(10:16) | (122:18) | (47:5)(48:12)(48:16) | (45:11)(45:20)(48:8) |
| (11:16)(16:8)(18:18) | **remember** (42:23)(62:12) | (48:21)(48:25)(49:16) | (59:7)(62:3)(62:5)(63:7) |

sat                                                                    sorts      151

| | | | |
|---|---|---|---|
| (65:15)(66:5)(68:7) (73:13)(74:17)(91:6) 91:7)(108:23)(125:18) .26:19) | security (125:1)(125:18) see (7:8)(7:9)(15:24) (17:25)(19:18)(21:3) | (118:19)(118:20)(129:1) (129:4)(134:3)(134:4) (134:8) | (81:23)(82:4)(110:1) (113:15)(116:18)(124:7) snipes' (78:19)(119:10) |

**sat** (25:10)(44:20)
(85:21)(95:16)(106:16)
**satisfactory** (120:3)
**satisfied** (25:9)(58:11)
(63:11)
**satisfies** (62:18)
**saw** (122:22)
**say** (10:21)(14:6)(15:8)
(15:23)(16:16)(18:24)
(20:23)(20:24)(21:1)
(21:11)(27:21)(27:24)
(28:16)(28:17)(30:21)
(30:24)(31:19)(31:21)
(34:4)(34:22)(42:19)
(46:4)(46:14)(47:10)
(48:6)(51:6)(52:17)
(52:20)(52:24)(53:11)
(53:14)(53:16)(53:17)
(58:2)(59:6)(60:11)(62:3)
(62:25)(63:25)(69:17)
(72:1)(74:5)(74:8)(87:7)
(93:8)(94:14)(94:20)
(96:17)(96:18)(100:2)
(100:3)(101:6)(101:12)
(101:19)(102:11)(104:16)
(104:17)(104:19)(105:7)
(110:25)(111:3)(111:10)
(111:15)(114:11)(117:12)
(117:16)(120:1)(123:5)
**saying** (22:3)(37:4)
(41:10)(49:3)(49:10)
(49:18)(53:5)(53:6)(55:9)
62:19)(63:19)(64:4)
68:13)(76:5)(99:20)
(100:8)
**says** (42:11)(42:14)
(43:24)(45:2)(46:2)
(48:15)(50:19)(52:13)
(53:25)(55:11)(60:11)
(62:21)(63:21)(70:18)
(70:20)(73:19)(75:18)
(75:21)(75:22)(75:25)
(76:1)(76:2)(76:13)
(90:17)(101:13)(110:25)
(125:21)(125:22)(132:13)
**sbot** (2:3)(2:5)(2:6)
(2:12)(2:16)(2:20)
**scaffold** (104:12)
**scale** (32:18)
**scenario** (101:3)
**schedule** (12:7)(15:5)
**scheduling** (12:12)
**scheme** (27:7)
**school** (23:4)(23:19)
**seal** (135:16)
**search** (93:6)
**seat** (5:18)(77:14)
(77:16)(81:8)(86:17)
(109:16)(113:4)(116:8)
(123:22)
**seated** (5:19)(9:2)(9:10)
(9:17)(75:20)(77:17)
(81:12)(84:14)(84:15)
(84:23)(85:5)(109:17)
(112:6)(113:6)(115:9)
(116:11)(118:15)
**second** (8:1)(20:12)
(27:22)(57:16)(65:23)
(134:7)
**secondary** (28:4)(28:7)
(31:5)
**secondly** (82:17)
**section** (132:23)

**security** (125:1)(125:18)
**see** (7:8)(7:9)(15:24)
(17:25)(19:18)(21:3)
(31:4)(34:22)(38:1)(38:2)
(38:6)(46:20)(46:25)
(51:4)(63:16)(63:19)
(64:4)(67:1)(68:13)(69:2)
(72:7)(72:13)(73:8)(77:6)
(84:2)(100:17)(100:21)
(101:8)(101:19)(103:14)
(105:8)(105:9)(105:13)
(111:2)(112:18)(115:20)
(115:23)(117:11)(117:23)
(119:13)(124:13)
**seeing** (30:15)(96:3)
**seek** (52:4)
**seeking** (15:6)(67:11)
(86:4)
**seemed** (33:3)
**seen** (20:20)(82:25)
(103:18)
**select** (77:2)
**selected** (12:6)(12:10)
(12:13)(16:11)(94:19)
**selection** (6:13)(81:21)
(81:25)(110:1)(113:16)
(116:19)(124:9)
**self-defense** (60:19)
**send** (78:20)(130:2)
**senior** (6:10)(31:15)
(32:3)(81:18)(92:11)
(113:14)(116:17)(124:6)
**sense** (21:22)(59:14)
(60:13)(61:12)(69:6)
(71:16)(73:11)(74:2)
(86:18)
**sent** (129:20)(130:2)
**sentence** (20:24)(39:14)
(39:16)(46:12)(52:11)
(55:15)(65:5)(66:10)
(68:12)(68:13)
**sentenced** (67:18)
**sentences** (14:25)
**september** (126:3)
**sequestered** (92:2)
**serious** (100:17)
**seriously** (37:20)(104:4)
**serve** (37:10)(119:19)
**served** (16:13)
**service** (24:9)(109:2)
(112:2)(112:17)(115:19)
(118:10)(118:25)
**set** (97:15)(102:24)
**several** (75:23)(97:18)
(114:5)
**sexual** (26:16)(34:7)
(34:11)(34:12)(34:21)
(34:22)(35:10)(35:16)
(35:21)(35:22)(35:25)
(36:5)(36:7)(36:8)(36:10)
(71:23)
**sexually** (35:1)
**shall** (114:6)
**sharon** (26:2)(119:16)
(120:1)(121:14)
**shaun** (122:23)
**she** (7:18)(15:9)(26:21)
(32:1)(32:2)(44:6)(44:9)
(44:10)(44:21)(44:23)
(45:2)(45:5)(45:6)(45:8)
(45:10)(45:16)(45:19)
(48:11)(75:21)(75:22)
(75:23)(75:25)(76:1)
(76:2)(76:13)(77:1)
(84:14)(108:13)(108:14)
(108:16)(108:17)(111:4)
(112:10)(115:12)(115:13)

(118:19)(118:20)(129:1)
(129:4)(134:3)(134:4)
(134:8)
**she'll** (117:2)
**she's** (7:19)(31:25)
(32:3)(44:4)(76:11)
(76:12)(76:16)(77:4)
(117:1)
**shift** (11:6)(11:7)(11:8)
(11:17)(11:24)(13:14)
**shifts** (12:15)
**short** (55:20)
**shorthanded** (92:13)
(92:20)
**shot** (42:7)(42:15)
(42:17)(42:25)
**should** (14:25)(16:24)
(18:15)(20:18)(21:2)
(21:11)(22:15)(22:20)
(26:7)(33:7)(34:23)
(36:11)(36:22)(36:24)
(36:25)(37:7)(48:16)
(49:2)(49:5)(50:9)(52:25)
(54:18)(104:2)(104:3)
(104:8)(105:10)(111:11)
(117:12)
**shouldn't** (49:3)(59:1)
**show** (33:3)(103:10)
**shown** (119:1)
**shows** (69:20)
**sick** (10:12)(11:16)
(12:9)(31:19)
**side** (59:11)(59:12)
(61:7)(66:22)(78:5)
**sign** (97:10)(107:21)
**simply** (30:16)(38:2)
(58:24)(67:5)
**since** (5:13)(13:13)
(20:3)(24:6)(25:17)
(82:25)(85:21)
**sing** (124:18)
**singled** (57:5)
**sir** (10:3)(71:17)(82:13)
(113:11)(116:10)(116:15)
(119:5)(121:6)(123:6)
(123:7)(123:13)(124:25)
(125:6)
**sister** (47:21)(48:8)
**sister's** (48:5)
**sit** (13:11)(18:21)
(20:18)(21:2)(21:14)
(25:12)(33:23)(65:20)
(75:24)(86:7)(86:9)
(86:16)(103:5)
**sitting** (10:15)(17:21)
(19:3)(19:14)(20:14)
(20:15)(21:5)(21:10)
(21:21)(21:23)(22:1)
(31:14)(37:13)(44:2)
(46:5)(51:14)(122:19)
**situation** (42:18)(43:7)
(92:9)(92:19)(93:10)
**six** (27:5)
**sixth** (46:20)
**sixty** (59:6)(59:8)
**skip** (25:11)
**skyscraper** (104:6)
**slated** (12:1)
**sleep** (13:2)
**sleepy** (7:7)
**slim** (53:2)
**slow** (10:18)(10:22)
**slowing** (12:19)
**smart** (33:11)
**snipes** (6:11)(6:15)
(6:23)(24:21)(66:1)
(78:20)(80:9)(81:19)

(81:23)(82:4)(110:1)
(113:15)(116:18)(124:7)
**snipes'** (78:19)(119:10)
**social** (48:6)(70:22)
(125:1)(125:18)(136:8)
**society** (40:2)(40:4)
(40:10)(40:13)(46:8)
(52:22)(62:24)(64:1)
(65:1)(104:10)
**sold** (32:25)(33:8)
**solely** (80:12)
**solemnly** (16:17)
**solicited** (45:6)
**solve** (57:23)
**some** (6:6)(6:23)(8:11)
(8:18)(15:13)(16:7)
(18:23)(23:5)(26:12)
(28:4)(30:22)(34:4)(36:7)
(36:10)(36:17)(38:8)
(38:17)(38:20)(41:18)
(44:23)(56:13)(57:12)
(57:17)(58:4)(60:16)
(60:18)(61:20)(62:24)
(64:7)(64:9)(69:9)(69:13)
(69:17)(70:4)(74:23)
(80:23)(82:5)(83:1)(83:2)
(83:12)(86:6)(86:9)
(86:22)(87:5)(87:6)
(87:20)(87:21)(92:18)
(95:14)(95:21)(95:22)
(98:24)(99:7)(100:1)
(100:2)(100:3)(100:9)
(100:16)(100:18)(100:19)
(101:19)(105:6)(105:21)
(106:19)(113:19)(113:20)
(117:2)(117:20)(120:22)
(130:23)
**somebody** (35:1)(36:23)
(52:12)(89:10)(94:24)
(104:2)(104:14)(105:9)
(105:10)(129:10)
**someday** (18:1)
**someone** (11:21)(16:2)
(26:25)(27:15)(28:3)
(29:9)(30:4)(31:6)(35:13)
(37:6)(37:14)(38:19)
(39:1)(40:15)(40:17)
(41:10)(42:7)(50:8)(52:9)
(93:14)(95:13)
**someone's** (17:12)(21:19)
**someplace** (132:23)
**something** (7:7)(10:21)
(11:16)(11:20)(15:25)
(20:2)(22:20)(32:22)
(33:7)(33:8)(33:9)(34:6)
(36:23)(37:6)(37:19)
(37:21)(41:22)(48:23)
(63:17)(64:15)(66:23)
(68:9)(69:10)(69:19)
(70:4)(70:14)(71:6)
(71:15)(75:21)(79:20)
(82:4)(90:23)(93:6)
(93:18)(100:4)(101:25)
(102:2)(102:16)(103:11)
(106:5)(127:15)(127:16)
(132:9)(133:2)
**sometime** (63:18)
**sometimes** (37:22)(57:15)
(58:5)(95:3)(99:20)
(101:24)(132:15)
**sons** (130:22)
**sorry** (40:5)(75:15)
(108:9)(112:21)(114:23)
(119:17)(120:1)
**sort** (13:7)(28:4)(34:13)
(36:7)(36:10)(61:11)
**sorts** (87:6)

soul                                                                                                    that's    152

soul (21:23)(93:6)
sound (43:9)
sounds (91:16)(100:19)
(132:8)
south (90:21)(90:25)
speak (27:25)(54:20)
(110:23)
speaks (66:24)
special (8:11)(39:5)
(39:8)(39:9)(40:20)
(41:14)(51:8)(51:21)
(54:14)(62:2)(62:5)
(65:18)(65:21)(65:22)
(66:5)(66:6)(66:11)
(66:13)(66:20)(67:9)
(67:16)(72:9)(83:13)
(83:22)
specific (29:2)(29:14)
speech (59:3)
spend (97:3)
spent (23:5)
spiritual (33:1)
spite (75:23)(95:22)
square (18:16)(46:5)
squarely (46:11)
squeegee (104:11)(104:21)
stab (31:17)(43:6)
stabbed (42:15)(42:17)
(43:4)
stabilize (11:18)
stable (11:23)
stage (39:2)(59:22)
stance (25:16)
stand (6:25)(25:2)
(42:11)(42:14)(48:20)
(59:7)(82:6)(101:9)
(104:16)(106:7)
standalone (36:9)
standard (67:4)(70:21)
(71:3)
standing (101:8)
start (8:16)(12:1)(12:3)
(56:15)(58:18)(78:23)
(87:20)(89:21)(95:18)
(95:19)
started (23:9)(24:6)
(24:7)
starting (41:8)(90:9)
(90:11)
state (1:5)(2:10)(3:4)
(4:3)(9:6)(10:6)(16:18)
(17:22)(33:14)(37:4)
(38:23)(39:21)(41:3)
(41:8)(56:16)(56:20)
(56:23)(56:25)(57:5)
(58:3)(58:10)(58:13)
(59:3)(59:13)(60:20)
(60:21)(61:3)(61:8)
(61:12)(62:4)(64:6)(66:7)
(66:18)(67:10)(67:24)
(75:12)(84:15)(85:13)
(93:5)(96:9)(96:23)
(108:7)(110:14)(112:7)
(112:8)(114:2)(115:10)
(115:11)(117:8)(118:17)
(118:18)(119:7)(130:6)
(130:10)(132:6)(133:20)
(133:25)(134:2)(135:2)
(135:6)
stated (108:15)(122:15)
(122:17)
statement (49:13)(50:5)
(59:3)(105:20)
statements (102:20)
states (57:12)(60:24)
(67:23)
state's (3:5)(3:8)(3:10)

(3:13)(3:15)(3:19)(4:16)
(4:19)(59:25)(77:5)
(108:24)(112:15)(115:16)
(118:24)(132:21)(134:12)
statute (36:2)
stay (11:17)(11:25)
(44:4)(62:13)(91:2)(97:12)
stenotype (1:23)
step (75:5)(93:9)
stepped (23:5)
sterrett (129:19)
still (7:23)(13:9)
(13:12)(30:20)(45:19)
(52:20)(52:24)(53:15)
(55:10)(66:7)(82:15)
(88:10)(99:5)(99:22)
(102:4)(111:19)
stood (7:4)(28:20)(82:12)
stop (39:12)
stories (103:21)(104:22)
straits (13:8)
strapped (18:2)
street (2:13)
streets (71:11)
strikes (78:4)
strong (36:16)(51:18)
strongly (114:6)
struck (78:5)
stuff (25:25)(30:12)
subjective (62:14)
submit (73:4)(122:24)
(134:3)
substantial (65:12)
(70:22)(71:2)
substantially (76:19)
such (37:25)(76:18)
(92:1)(92:5)
suck (104:19)
sudsy (104:11)
sufficient (47:2)(52:13)
(55:5)(55:11)
sufficiently (47:8)
(69:1)(74:10)
suggest (64:16)
suggesting (71:12)
suite (2:14)
sunday (23:19)
suppose (17:10)(62:3)
supposed (13:1)(121:14)
supreme (67:23)(136:2)
(136:5)
sure (7:17)(8:15)(12:22)
(13:21)(15:15)(17:15)
(19:2)(28:13)(43:3)
(44:22)(44:24)(47:24)
(54:1)(77:23)(83:1)(88:7)
(94:9)(101:13)(101:17)
(101:20)(101:25)(102:13)
(102:15)(104:17)(107:1)
(107:3)(113:21)(116:1)
(116:2)(119:4)(120:4)
(127:21)
surprised (28:1)(28:6)
(29:6)(29:11)
surrounding (41:19)
swallow (37:22)
swear (16:17)(80:10)
swift (119:18)
swore (18:18)
sworn (7:23)(80:12)
(82:16)

---

### T

table (19:14)(44:2)
take (11:24)(16:2)
(16:12)(16:15)(16:21)
(17:14)(17:20)(17:22)

(19:12)(22:3)(37:19)
(39:5)(42:12)(44:10)
(44:12)(51:3)(52:6)
(55:20)(56:18)(56:19)
(56:20)(59:1)(59:11)
(67:25)(69:19)(71:6)
(71:18)(72:4)(77:12)
(78:24)(79:6)(80:10)
(86:16)(89:24)(90:2)
(90:3)(90:7)(93:10)
(93:18)(95:13)(95:15)
(96:1)(97:6)(101:25)
(102:14)(102:15)(106:23)
(115:24)(119:6)(120:1)
taken (16:10)(18:8)
(28:21)(32:14)(40:17)
(96:20)(98:20)(104:3)
takes (11:18)(56:23)
(70:5)(90:6)(133:12)
taking (7:19)(26:16)
(30:16)(30:18)(32:4)
(37:12)(39:1)(41:12)
(44:14)(81:23)(92:14)
(102:6)(103:18)(110:24)
talk (10:16)(14:3)
(14:10)(18:13)(33:23)
(58:25)(64:25)(86:9)
(87:19)(90:5)(96:2)
(103:2)(103:6)(103:7)
(103:10)(106:5)(108:6)
(109:7)(110:8)(113:19)
talked (6:23)(12:11)
(45:8)(48:1)(64:9)(69:10)
(82:4)(121:7)(122:12)
talking (9:5)(10:20)
(19:18)(24:22)(29:15)
(40:11)(44:15)(56:15)
(56:22)(58:24)(64:12)
(66:4)(69:11)(84:15)
(90:24)(95:12)(109:8)
(122:23)
tall (103:18)
task (105:3)
team (9:12)(9:14)(9:22)
(12:11)(84:20)(84:24)
(85:5)
tears (19:19)
technical (87:20)(89:9)
teens (69:18)
tell (7:24)(15:3)(15:24)
(17:8)(17:18)(17:20)
(18:20)(19:20)(26:23)
(28:15)(29:13)(29:24)
(29:25)(30:6)(32:19)
(34:6)(36:20)(40:24)
(42:23)(49:24)(51:4)
(51:13)(51:19)(52:3)
(59:16)(59:19)(59:25)
(65:19)(69:8)(69:9)
(72:21)(73:5)(83:23)
(85:18)(86:12)(86:21)
(86:25)(87:2)(87:14)
(87:16)(89:20)(90:2)
(90:7)(92:25)(94:5)
(94:11)(95:21)(95:23)
(96:6)(96:15)(96:20)
(97:21)(98:16)(103:12)
(103:25)(104:1)(104:13)
(104:22)(106:21)(123:11)
(123:16)(132:21)
telling (90:4)(102:14)
(105:18)(105:24)(122:12)
tells (44:10)(49:9)
term (57:9)(73:17)
terminology (68:7)
terms (12:8)(12:19)
(26:13)(36:21)(47:22)

(57:11)(102:12)
test (70:21)(71:1)
testified (10:5)(85:12)
(110:13)(114:1)(117:7)
(130:9)
testifies (42:10)(43:2)
texas (1:5)(1:7)(1:22)
(2:8)(2:9)(2:10)(2:14)
(2:18)(2:23)(6:11)(9:6)
(16:18)(26:7)(26:23)
(29:2)(30:3)(31:23)
(33:10)(33:14)(33:23)
(36:1)(37:4)(39:21)
(43:23)(45:2)(56:16)
(56:20)(56:23)(57:5)
(58:3)(58:11)(58:13)
(60:24)(64:6)(67:24)
(81:19)(84:15)(97:12)
(116:18)(124:7)(125:5)
(135:2)(135:6)(135:21)
(136:19)
than (32:2)(34:15)(35:2)
(38:1)(48:5)(48:7)(48:23)
(50:20)(61:20)(63:12)
(64:10)(67:3)(68:16)
(72:10)(72:25)(78:20)
(97:10)(103:3)(126:14)
(131:6)
thank (5:19)(6:3)(10:2)
(14:8)(55:16)(55:19)
(56:1)(56:14)(75:1)(75:2)
(75:3)(75:9)(77:17)
(80:21)(80:22)(80:24)
(81:11)(84:8)(85:9)
(85:17)(106:25)(107:2)
(107:4)(107:5)(107:7)
(107:12)(109:16)(109:17)
(110:11)(111:6)(111:8)
(111:21)(111:24)(111:25)
(112:3)(112:5)(112:14)
(113:3)(113:6)(113:22)
(113:24)(114:20)(114:21)
(114:22)(114:24)(115:1)
(115:3)(115:5)(115:7)
(115:9)(115:16)(116:10)
(116:11)(116:16)(117:5)
(118:2)(118:4)(118:6)
(118:8)(118:9)(118:11)
(118:12)(118:13)(118:15)
(121:3)(123:9)(123:14)
(132:3)(133:21)(133:22)
thanks (107:8)
that's (7:14)(7:19)(8:2)
(8:9)(8:20)(11:16)(11:17)
(11:20)(13:21)(15:25)
(16:5)(16:24)(18:7)
(18:19)(19:23)(27:19)
(27:20)(29:15)(30:24)
(32:22)(34:10)(36:25)
(37:21)(39:2)(42:2)
(42:13)(49:15)(49:18)
(50:4)(50:10)(55:22)
(57:8)(58:16)(60:16)
(61:15)(63:24)(70:23)
(71:5)(72:5)(72:7)(72:8)
(73:3)(74:16)(74:20)
(77:4)(78:18)(79:21)
(82:18)(83:11)(83:25)
(87:9)(87:12)(88:8)(89:9)
(89:25)(90:5)(90:11)
(90:23)(93:6)(94:3)(94:5)
(94:16)(94:23)(96:6)
(98:2)(100:3)(100:4)
(100:13)(103:9)(106:8)
(108:9)(110:1)(113:16)
(117:14)(117:15)(117:23)
(121:2)(124:9)(125:15)

theft                                                                    trying        153

theft (126:10) (128:23) (131:12) (131:14) (131:16) (131:18) (132:2) (134:10)

left (125:11) (125:21) (126:19) (128:16) (134:3)

their (6:25) (18:24) (23:17) (24:3) (34:15) (37:19) (40:17) (67:15) (67:19) (68:5) (68:6) (68:8) (68:16) (69:5) (69:18) (72:6) (72:7) (72:19) (78:4) (82:7) (83:3) (83:24) (89:15) (95:1) (95:2) (132:21) (132:22) (136:9)

them (18:10) (18:23) (19:1) (28:21) (34:4) (36:24) (37:7) (39:6) (39:10) (44:12) (48:7) (57:19) (59:1) (60:5) (64:7) (66:17) (67:17) (70:5) (70:19) (71:11) (72:14) (74:6) (74:7) (77:4) (77:23) (83:3) (86:11) (87:2) (87:4) (87:8) (89:15) (90:6) (129:20) (130:2) (131:24)

themselves (97:20)

then (8:16) (8:25) (9:11) (9:17) (11:9) (12:13) (14:9) (20:15) (21:9) (22:13) (26:2) (26:11) (30:25) (39:4) (39:7) (39:12) (49:25) (51:7) (52:15) (53:2) (53:15) (54:9) (55:5) (55:14) (61:3) (61:20) (62:17) (65:4) (67:16) (67:17) (67:21) (72:17) (75:6) (77:12) (77:25) (78:3) (78:4) (79:11) (79:13) (80:9) (80:12) (82:23) (82:25) (83:18) (84:16) (84:23) (87:23) (91:4) (91:9) (93:2) (93:23) (96:25) (97:6) (102:15) (103:9) (106:22) (115:24) (118:23) (123:4) (123:8) (124:24) (127:4) (129:19)

there (5:18) (9:11) (9:19) (9:24) (11:7) (13:16) (15:21) (16:7) (18:22) (20:12) (20:24) (22:8) (23:19) (23:22) (24:1) (26:7) (27:22) (27:23) (30:9) (30:15) (31:11) (32:17) (35:25) (40:11) (43:3) (43:21) (44:6) (44:11) (44:12) (45:9) (46:20) (46:25) (48:14) (49:16) (49:21) (53:5) (60:9) (60:23) (61:9) (63:6) (63:25) (64:17) (64:22) (66:21) (68:9) (68:20) (69:22) (79:5) (79:9) (81:8) (82:3) (85:6) (85:19) (85:20) (85:24) (85:25) (89:19) (90:8) (90:17) (90:24) (91:9) (91:11) (92:24) (93:21) (94:10) (94:23) (96:1) (96:7) (96:21) (97:13) (97:23) (99:8) (99:12) (100:3) (100:20) (101:8) (101:9) (101:15) (101:18) (102:19) (104:3) (104:5) (104:16) (112:22) (113:4) (116:8) (120:22) (123:22) (124:22) (127:12) (129:7) (129:15)

therefore (86:25)

there's (8:20) (8:22) (9:13) (11:16) (15:13) (37:15) (39:25) (43:21) (44:11) (49:10) (52:13) (53:3) (55:4) (61:19) (63:10) (66:15) (68:15) (70:4) (71:1) (71:22) (74:24) (77:6) (80:3) (83:23) (83:24) (86:12) (86:21) (87:11) (87:13) (90:3) (90:20) (91:11) (92:23) (93:1) (93:7) (94:10) (94:14) (96:6) (97:16) (99:1) (99:7) (100:1) (104:10) (105:8)

these (9:11) (9:21) (9:22) (17:7) (18:5) (18:25) (26:17) (31:16) (39:5) (39:20) (44:13) (56:21) (56:22) (58:8) (58:24) (61:24) (62:17) (67:1) (74:5) (84:17) (85:4) (87:1) (91:22) (100:23) (103:18)

they (9:22) (11:24) (12:12) (12:13) (13:4) (18:10) (33:22) (39:6) (43:4) (48:16) (50:3) (50:9) (52:7) (52:8) (56:18) (58:20) (58:22) (59:4) (60:1) (60:8) (60:9) (62:5) (62:6) (62:16) (62:18) (63:6) (64:2) (64:16) (64:21) (67:12) (67:16) (67:21) (67:22) (68:2) (68:18) (68:25) (69:14) (69:19) (70:5) (70:10) (70:11) (70:15) (70:16) (71:6) (72:2) (74:1) (76:18) (77:23) (85:21) (86:8) (86:10) (87:1) (87:4) (87:7) (87:8) (90:5) (92:9) (92:13) (93:14) (93:16) (93:17) (94:1) (94:25) (95:5) (95:22) (96:18) (99:1) (99:21) (99:22) (101:9) (103:22) (104:21) (105:7) (127:12) (129:13) (130:2) (132:25) (133:1)

they'd (63:5)

they're (8:13) (8:14) (8:16) (9:15) (9:21) (23:11) (41:22) (62:9) (62:23) (70:7) (83:16) (83:17) (83:19) (87:5) (89:16) (95:5) (100:8) (103:21)

they've (59:4) (59:18) (64:13) (64:14) (72:20) (99:20)

thing (8:1) (29:4) (44:15) (45:20) (48:12) (48:17) (49:25) (52:9) (59:8) (62:5) (62:13) (64:6) (65:15) (67:13) (67:20) (72:8) (74:9) (74:17) (75:18) (80:9) (84:3) (86:21) (91:13) (97:8) (100:17) (102:5) (104:20) (108:23) (119:7) (126:9) (126:20)

things (7:24) (15:13) (16:7) (21:12) (25:24) (26:17) (28:21) (29:22) (36:25) (46:18) (47:5) (47:7) (52:1) (52:8) (52:11) (54:22) (55:1) (55:3) (66:22) (68:1) (69:9) (69:12) (87:21) (97:2) (97:19) (99:14) (99:23)

there (103:6) (103:8) (105:6)

think (9:13) (12:14) (12:22) (16:7) (17:18) (18:24) (25:12) (25:13) (25:21) (25:23) (26:6) (29:24) (30:23) (31:2) (31:3) (31:5) (33:16) (34:5) (34:18) (35:5) (36:21) (37:13) (37:15) (37:16) (37:18) (38:4) (38:5) (39:18) (40:21) (48:25) (49:2) (49:25) (50:25) (53:3) (62:25) (64:2) (64:7) (64:8) (72:2) (75:14) (75:17) (76:10) (76:16) (79:9) (86:22) (87:4) (88:6) (88:11) (91:13) (93:9) (95:7) (97:7) (97:8) (99:4) (99:7) (100:18) (100:23) (101:24) (102:25) (103:1) (104:1) (104:2) (104:3) (104:8) (104:16) (105:2) (105:16) (106:19) (110:23) (111:10) (120:20) (121:24) (124:22) (127:14) (127:15) (127:20) (130:1) (130:21) (133:3) (134:10) (134:14)

thinking (58:18) (92:22) (105:5)

third (46:22) (65:22)

those (12:15) (14:24) (17:4) (18:5) (21:12) (23:16) (26:12) (26:13) (27:7) (27:8) (46:18) (47:7) (52:1) (52:11) (54:22) (54:25) (55:2) (55:3) (57:1) (57:5) (57:6) (57:18) (62:14) (63:9) (63:14) (64:24) (67:6) (67:19) (71:15) (73:11) (90:18) (102:4) (120:22)

thou (114:6)

though (32:5) (35:12) (37:1) (41:10) (42:9) (45:12) (52:21) (53:16) (57:19) (64:22) (76:2) (105:1)

thought (25:1) (25:3) (25:21) (26:2) (32:19) (34:9) (100:15) (106:11) (106:16) (107:18) (108:15)

thoughts (8:18) (14:13) (83:20)

thousand (63:2)

threat (30:18) (40:2) (40:10) (46:8) (52:22) (64:1) (65:1)

three (9:22) (11:5) (11:6) (23:8) (66:17) (70:10) (84:17) (85:5) (93:13) (93:23) (102:21) (105:17)

thrilled (17:12)

through (78:13) (78:25) (79:2) (122:25)

throughout (100:22) (100:24)

thus (22:17)

ticket (130:19)

till (97:15)

time (6:23) (7:4) (11:13) (11:14) (14:13) (23:6) (24:15) (25:14) (25:19) (35:4) (48:13) (51:4) (54:1) (55:16) (56:7) (58:25) (61:9) (75:4) (79:10) (79:11) (80:11) (82:5)

times (18:13) (31:18) (37:18) (70:10) (75:23) (90:5) (100:22) (100:24) (114:5)

tired (7:7) (10:10) (31:19) (56:7) (92:1)

title (36:2)

today (6:15) (6:16) (9:6) (9:14) (12:25) (19:3) (24:20) (24:25) (41:5) (44:15) (54:20) (56:22) (65:20) (76:13) (81:22) (83:11) (83:16) (106:25) (110:2) (111:19) (114:18) (121:14) (124:1) (124:10)

together (6:21) (82:2)

token (63:7)

told (7:22) (15:9) (45:9) (60:3) (92:18) (103:11) (105:1) (127:12)

tomorrow (88:1) (124:13)

tomorrow's (123:15)

tonight (13:1)

too (10:13) (10:20) (25:23) (25:24) (67:21) (88:17) (89:12) (94:14) (107:25)

took (7:4) (7:21) (32:9) (82:12) (104:22)

top (26:5) (34:10)

topic (48:22)

tough (60:12)

toward (57:16)

towards (32:21) (44:8) (57:2)

town (89:16) (90:19)

traffic (130:19) (131:7)

transcription (1:25) (135:8) (135:13)

transferred (97:12)

tremendous (95:14)

trial (6:12) (8:12) (8:19) (9:2) (12:1) (39:2) (39:12) (42:8) (59:22) (61:19) (64:13) (65:24) (66:9) (83:14) (89:21) (119:19)

trials (91:22)

trial's (65:4) (65:25)

tried (69:15)

triggerman (46:10)

true (16:19) (22:4) (31:1) (73:13) (108:16) (117:23) (121:2) (135:7)

truly (100:14) (135:14)

truth (7:24) (96:20)

truthful (7:25) (82:16) (93:1)

truthfully (87:14)

truthfulness (105:18)

try (6:5) (6:8) (7:12) (10:22) (54:3) (56:8) (56:12) (57:23) (57:24) (73:5) (89:25) (92:20) (93:2) (106:4) (106:6) (106:7) (107:25) (119:11) (119:12)

trying (13:10) (13:12) (18:11) (43:10) (51:18)

turn                                                                                              weeks        154

(51:21)(59:16)(95:19)
(112:22)
irn    (20:11)(26:4)
36:14)(36:22)(36:24)
(37:2)(37:7)(71:11)
(101:14)(101:18)
**turning**  (97:17)
**two**  (7:24)(9:13)(12:2)
(12:15)(12:20)(13:5)
(13:12)(13:20)(14:4)
(14:24)(15:2)(21:12)
(23:16)(26:13)(44:11)
(44:13)(51:7)(55:2)(63:9)
(70:21)(84:19)(89:24)
(90:7)(90:17)(90:18)
(91:11)(92:8)(92:12)
(92:18)(93:13)(97:2)
**type**  (59:4)(130:23)

### U

**uh-huh**  (6:20)(7:2)(7:5)
(7:11)(10:25)(11:2)(12:5)
(13:6)(13:15)(13:23)
(14:1)(14:11)(14:18)
(17:1)(17:3)(17:16)(20:8)
(20:10)(21:8)(22:12)
(22:16)(23:7)(23:15)
(24:24)(25:8)(26:3)
(26:15)(26:18)(28:10)
(29:21)(30:11)(31:7)
(31:10)(32:24)(33:2)
(33:5)(33:24)(34:2)
(34:17)(35:3)(35:11)
(35:24)(36:13)(37:23)
(38:4)(39:11)(39:17)
(40:8)(41:20)(43:1)
45:23)(47:9)(48:3)
(48:11)(49:1)(49:8)(50:7)
(51:15)(53:21)(57:10)
(59:15)(60:7)(63:20)
(64:5)(65:3)(65:14)(66:3)
(66:19)(68:14)(69:16)
(70:1)(73:12)(77:24)
(78:2)(78:14)(79:8)(80:1)
(80:6)(83:9)(91:20)
(93:20)(99:3)(101:11)
(101:23)(103:13)(103:23)
(106:12)(110:6)(110:20)
(111:3)(126:5)(129:15)
(130:15)(130:20)(132:4)
(132:19)
**ultimate**  (38:18)
**ultimately**  (18:1)(19:13)
(21:13)(21:15)(21:18)
(37:15)(48:19)(48:23)
(62:17)(69:3)(72:18)
(73:21)
**unable**  (119:19)
**uncertainty**  (105:12)
**unconscious**  (99:22)
(100:9)
**unconstitutional**  (70:19)
**undecided**  (100:15)
(100:25)
**under**  (7:23)(27:5)(29:1)
(31:23)(67:13)(76:15)
(82:15)(87:5)(102:24)
(105:24)(108:17)(111:15)
(112:10)(114:14)(115:13)
(118:20)(122:16)(135:16)
**understand**  (5:10)(8:15)
(8:16)(10:21)(16:10)
(19:2)(21:20)(21:25)
(22:24)(24:23)(30:16)
(31:21)(31:23)(32:4)
(38:10)(41:2)(41:24)
(47:16)(49:6)(49:15)

(49:17)(50:18)(51:6)
(62:19)(83:18)(95:9)
(98:7)(98:18)(99:7)
(131:3)(131:6)(131:8)
(131:14)
**understanding**  (17:5)
(28:16)(28:18)(49:19)
(122:13)
**understood**  (74:20)
**unfortunately**  (16:6)
(132:17)
**unhappy**  (133:16)
**united**  (67:23)
**unless**  (53:7)
**unlucky**  (11:13)
**unresolved**  (99:11)
**unsure**  (100:24)(100:25)
(102:5)(105:12)
**until**  (11:24)(12:6)
(25:6)(25:12)(39:21)
(65:25)(70:2)(70:6)
(70:11)(97:13)(98:22)
**unusual**  (99:17)
**upcoming**  (119:19)
**upon**  (17:9)(22:19)(23:1)
(63:13)(66:15)(72:20)
(80:12)(96:16)(96:22)
(98:17)
**upstairs**  (81:23)(119:9)
**use**  (22:10)(27:16)(57:9)
(57:11)(67:19)(68:8)(99:1)
**used**  (48:11)(48:17)
(62:12)(67:8)(68:8)
**using**  (26:13)(32:18)
**usually**  (24:8)(91:23)
**utero**  (72:5)

### V

**vacation**  (53:22)(91:1)
**vacillated**  (77:2)
**vacillating**  (76:11)
(76:12)(76:16)
**vacuum**  (71:20)
**value**  (32:11)(32:12)
(32:13)(40:18)(41:13)
**values**  (54:11)
**veins**  (98:22)
**venireperson**  (3:1)(3:4)
(3:6)(3:9)(3:11)(3:14)
(3:16)(3:18)(3:20)(4:1)
(4:3)(4:19)(5:6)(5:9)
(5:12)(5:16)(6:1)(6:3)
(6:7)(6:17)(6:20)(7:2)
(7:5)(7:10)(7:12)(7:17)
(8:4)(8:8)(8:24)(9:9)
(10:5)(55:22)(55:24)
(75:8)(75:10)(77:13)
(77:24)(78:2)(78:7)
(78:11)(78:14)(78:18)
(79:3)(79:8)(79:15)
(79:19)(80:1)(80:6)
(80:16)(80:24)(80:25)
(81:6)(81:10)(81:16)
(82:10)(82:13)(82:22)
(83:7)(83:9)(84:7)(84:13)
(85:12)(88:21)(88:24)
(89:2)(89:5)(89:7)(107:8)
(109:14)(109:21)(109:23)
(110:6)(110:13)(111:1)
(111:5)(112:4)(112:25)
(113:3)(113:11)(113:13)
(113:21)(114:1)(115:3)
(115:6)(115:8)(116:5)
(116:10)(116:15)(117:7)
(118:11)(118:14)(123:20)
(123:24)(124:5)(124:11)
(124:14)(124:17)(124:20)

(124:25)(125:3)(125:6)
(125:8)(125:12)(125:14)
(125:16)(125:20)(125:24)
(126:2)(126:4)(126:6)
(126:8)(126:11)(126:15)
(126:21)(126:25)(127:3)
(127:6)(127:11)(127:14)
(127:17)(127:20)(127:24)
(128:2)(128:5)(128:7)
(128:9)(128:11)(128:14)
(128:17)(128:19)(128:21)
(128:23)(129:9)(129:12)
(129:15)(129:18)(129:24)
(130:1)(130:9)(131:24)
(132:2)(132:4)(132:10)
(132:13)(132:19)(132:24)
(133:5)(133:7)(133:10)
(133:12)(133:24)
**verbal**  (84:5)
**verdict**  (16:19)(22:5)
(31:1)(42:18)(43:7)(43:8)
(58:11)(58:22)(65:5)
(73:17)(73:20)(80:12)
(91:25)(96:25)(97:6)
(97:7)(97:15)(98:5)(98:8)
(98:9)(105:22)(105:25)
(108:14)(108:18)(111:16)
(114:15)(115:14)(117:21)
(118:21)(122:16)(122:20)
**verdicts**  (17:6)
**versus**  (1:6)(54:22)(55:3)
**very**  (6:2)(8:9)(9:18)
(9:24)(20:24)(26:5)
(51:18)(66:13)(66:24)
(68:15)(69:21)(69:23)
(70:2)(72:12)(74:17)
(75:4)(80:22)(82:14)
(84:8)(85:3)(92:7)
(100:17)(102:9)(102:11)
(107:7)(111:6)(112:5)
(113:22)(114:5)(114:22)
(115:4)(118:7)(121:3)
(123:10)(133:22)
**vezina**  (135:4)(135:19)
(136:17)
**victims**  (26:16)(35:17)
**view**  (29:10)
**vii**  (36:2)
**village**  (23:11)(23:13)
(24:8)
**violates**  (36:2)
**violation**  (131:7)
**violence**  (28:25)(30:9)
(30:17)(30:18)(40:1)
(63:16)(63:25)
**violent**  (36:7)(57:2)
**visit**  (116:24)(129:10)
**voice**  (18:23)
**voir**  (1:12)(6:13)(9:25)
(10:6)(56:2)(82:20)
(85:13)(110:14)(114:2)
(117:8)(130:10)
**vol**  (3:4)(4:3)(4:20)
**volume**  (1:2)(3:2)(4:2)
**volumes**  (1:2)

### W

**wainwright**  (76:16)
**waiting**  (44:5)(44:20)
**walking**  (44:8)(53:24)
**want**  (15:3)(25:22)
(31:15)(34:21)(35:9)
(35:14)(41:15)(41:16)
(41:18)(43:25)(47:11)
(47:12)(47:13)(48:12)
(53:17)(58:7)(64:2)
(69:19)(70:15)(78:25)

(79:14)(79:22)(80:4)
(80:7)(80:13)(83:2)(83:4)
(86:8)(86:12)(86:21)
(87:1)(87:19)(93:2)(96:2)
(96:18)(102:13)(102:15)
(117:2)(119:2)(120:5)
(120:9)(120:16)(120:17)
(121:19)(124:18)(133:6)
**wanted**  (15:13)(27:19)
(42:12)(62:17)(62:19)
(71:7)(98:25)(119:6)
(131:12)
**wants**  (104:18)(122:5)
**warehouse**  (133:1)
**warrant**  (28:14)(97:10)
(129:13)(129:16)
**warrants**  (52:14)
**was**  (4:19)(7:15)(12:16)
(13:1)(23:4)(25:9)(25:23)
(26:19)(27:17)(27:20)
(28:1)(28:6)(28:12)(30:8)
(30:9)(31:6)(31:19)(32:9)
(32:14)(35:1)(42:10)
(42:15)(42:16)(42:17)
(43:5)(45:9)(45:24)
(46:16)(47:6)(49:15)
(49:18)(55:8)(57:23)
(60:9)(61:9)(64:11)(67:6)
(67:10)(67:13)(67:17)
(67:20)(68:24)(73:6)
(76:4)(82:3)(86:14)
(89:19)(91:9)(91:10)
(98:25)(105:15)(107:22)
(111:12)(112:22)(119:19)
(119:20)(120:21)(120:22)
(121:8)(121:13)(121:17)
(122:13)(124:22)(125:11)
(125:21)(125:23)(126:12)
(126:14)(127:14)(127:15)
(127:23)(127:24)(128:22)
(129:15)(129:22)(129:24)
(131:3)(131:5)(131:6)
(132:14)(134:15)
**washing**  (104:5)
**wasn't**  (27:18)(27:19)
(42:15)(43:5)(122:13)
(126:11)(126:12)(128:11)
**watch**  (32:1)
**water**  (2:17)(55:21)
(104:11)
**watercooler**  (103:7)
**way**  (9:17)(13:16)(26:25)
(34:16)(34:25)(36:25)
(41:4)(41:5)(53:4)(56:15)
(62:18)(71:25)(74:16)
(79:21)(80:8)(88:16)
(95:18)(101:1)(106:8)
(119:13)(119:14)
**ways**  (38:8)(38:17)(66:13)
**weapon**  (42:8)
**weapons**  (30:9)
**wearing**  (31:25)
**we'd**  (71:12)(74:5)
(86:15)(133:16)
**wedding**  (90:20)(90:21)
(91:4)(91:9)(95:19)
(101:4)(101:8)
**weddings**  (90:18)(90:19)
**week**  (78:24)(78:25)
(90:23)(90:25)(91:21)
**weekend**  (79:4)(79:5)
(88:3)(88:4)(88:20)(91:6)
(91:7)
**weeks**  (12:2)(12:15)
(12:21)(13:5)(13:12)
(13:20)(15:2)(78:17)
(89:25)(90:7)(92:8)(93:13)

weeks'                                                    write  155

| | | | |
|---|---|---|---|
| weeks' (92:12) | (66:25)(70:5)(75:22) | (58:17)(58:19)(59:5) | words (20:15)(35:8) |
| weigh (54:17)(54:21) | (76:1)(76:13)(79:16) | (59:6)(59:8)(61:4)(62:24) | (39:9)(43:21)(46:9)(63:4) |
| ight (68:19)(68:25) | (84:2)(87:3)(89:16) | (63:1)(63:2)(65:18) | (67:19)(70:24) |
| ighty (25:23)(37:25) | (90:11)(103:9)(105:19) | (65:20)(68:17)(77:9) | work (11:7)(11:8)(12:7) |
| welcome (6:2)(55:18) | (111:3)(129:10) | (78:3)(78:4)(78:6)(78:20) | (13:1)(13:10)(13:13) |
| well (7:21)(16:10) | whenever (58:1)(74:24) | (78:23)(78:24)(79:6) | (13:16)(13:19)(15:5) |
| (17:18)(25:15)(28:15) | (130:12) | (80:9)(82:19)(83:13) | (34:25)(36:25)(91:14) |
| (30:14)(31:13)(33:22) | where (11:1)(11:22) | (83:21)(84:6)(84:9) | (91:16)(91:22)(92:8) |
| (34:11)(34:20)(34:24) | (14:20)(18:10)(18:14) | (84:15)(87:3)(87:7) | (92:14)(92:15)(92:19) |
| (36:4)(40:12)(42:9) | (19:2)(25:2)(26:5)(27:8) | (87:14)(89:8)(90:2)(90:3) | (92:22)(92:25)(93:15) |
| (44:15)(48:11)(49:15) | (29:5)(29:12)(29:23) | (91:13)(95:21)(95:23) | (93:17)(93:23)(98:12) |
| (59:5)(65:9)(71:19)(72:1) | (30:4)(30:17)(33:25) | (96:15)(97:4)(97:11) | worker (48:6) |
| (73:14)(76:3)(76:6)(77:1) | (35:15)(40:3)(40:5) | (97:12)(98:20)(98:21) | working (11:3)(79:5) |
| (77:4)(89:20)(93:2)(95:4) | (45:13)(46:18)(47:7) | (112:16)(113:19)(123:4) | (79:6) |
| (97:21)(102:25)(103:9) | (48:14)(67:10)(76:17) | (134:13) | workload (93:10) |
| (103:24)(104:4)(104:7) | (86:3)(92:3)(93:6) | willing (101:25)(102:1) | works (12:23)(44:22) |
| (104:16)(106:21)(109:24) | (105:21)(121:17)(129:23) | windows (103:25)(104:2) | (45:1)(47:19)(48:9) |
| (119:23)(122:1)(122:19) | whereby (45:16) | (104:5) | world (22:22)(22:24) |
| (124:21)(125:17)(126:10) | whether (13:10)(17:21) | wins (73:24) | (22:25)(92:6) |
| (126:17)(129:6)(129:9) | (18:3)(18:4)(30:1)(30:19) | wise (124:22) | worry (71:12) |
| (129:13)(134:4)(134:6) | (46:9)(50:2)(50:8)(54:18) | wish (15:22)(16:9)(20:3) | worthy (34:8) |
| (134:14) | (58:15)(58:19)(59:13) | wished (70:16) | would (11:14)(12:14) |
| we'll (6:5)(6:8)(18:13) | (60:15)(60:17)(60:18) | with (6:5)(8:25)(9:15) | (13:8)(13:11)(13:16) |
| (77:12)(81:1)(87:20) | (65:20)(65:25)(68:9) | (13:10)(14:16)(15:7) | (13:19)(16:20)(16:21) |
| (89:11)(91:3)(103:14) | (78:9)(78:21)(98:15) | (17:9)(18:16)(20:5) | (17:10)(17:13)(17:14) |
| (122:3)(134:6) | (102:13) | (20:25)(23:22)(24:13) | (17:25)(20:14)(26:4) |
| welling (19:19) | which (16:23)(20:12) | (25:10)(25:24)(26:17) | (29:16)(29:20)(29:25) |
| went (126:13)(126:15) | (22:24)(22:25)(26:13) | (27:3)(27:13)(28:4) | (30:6)(31:3)(33:14) |
| (126:22)(127:1)(127:6) | (30:8)(36:18)(41:8)(46:2) | (28:25)(29:3)(29:11) | (33:16)(33:17)(33:20) |
| (127:12)(129:8)(129:10) | (51:23)(56:18)(57:24) | (31:8)(31:12)(32:5)(32:8) | (34:3)(34:4)(34:20) |
| (129:18) | (57:25)(59:13)(69:23) | (32:14)(32:18)(32:20) | (34:21)(35:5)(35:9) |
| were (1:20)(7:3)(12:13) | (70:25)(77:20)(78:25) | (33:13)(33:15)(34:12) | (35:14)(35:20)(36:9) |
| (12:25)(15:20)(25:24) | (82:17)(102:19)(105:23) | (34:21)(35:14)(36:17) | (36:14)(37:10)(37:24) |
| (27:23)(29:10)(29:22) | (105:25)(111:16)(114:15) | (37:17)(37:25)(42:7) | (38:6)(38:7)(40 3)(40:5) |
| (33:10)(35:1)(38:5)(43:4) | (117:21)(135:11)(136:9) | (43:9)(43:18)(44:13) | (40:9)(40:22)(40:24) |
| (57:25)(67:9)(71:19) | while (10:20)(20:25) | (44:21)(44:23)(45:2) | (41:13)(41:15)(41:16) |
| 74:7)(82:11)(85:20) | (25:13)(37:11)(42:10) | (45:11)(45:12)(45:15) | (41:17)(41:18)(42:18) |
| (85:24)(86:1)(99:22) | (48:21)(63:10)(69:8) | (46:10)(46:20)(48:8) | (42:19)(42:20)(43:6) |
| (100:9)(124:23)(125:19) | (72:4)(81:24)(93:15) | (48:20)(49:14)(49:22) | (43:11)(43:18)(44:23) |
| (127:5)(128:1)(128:3) | (97:14)(119:11) | (49:23)(51:19)(51:22) | (45:17)(47:10)(49:20) |
| (130:16)(131:2)(135:12) | white (20:20)(50:1) | (52:16)(54:5)(55:14) | (49:22)(49:23)(51:1) |
| we're (9:25)(14:2) | (50:17) | (56:21)(57:9)(57:18) | (51:2)(51:19)(52:5)(52:9) |
| (14:12)(18:11)(19:18) | who (9:23)(12:9)(18:21) | (57:19)(58:7)(58:11) | (52:10)(52:11)(52:21) |
| (29:15)(30:14)(43:25) | (20:18)(21:16)(21:22) | (60:25)(61:1)(61:24) | (54:23)(55:7)(55:14) |
| (44:1)(44:15)(48:24) | (24:11)(27:2)(27:8)(35:1) | (63:1)(66:18)(67:2) | (55:20)(59:21)(61:21) |
| (51:18)(56:22)(57:4) | (35:13)(44:19)(45:14) | (67:22)(70:3)(71:13) | (61:24)(62:13)(62:15) |
| (58:14)(58:21)(58:24) | (47:21)(48:22)(49:9) | (72:22)(74:18)(75:5) | (63:8)(63:18)(63:19) |
| (59:9)(64:11)(69:11) | (57:1)(58:14)(58:15) | (76:20)(78:15)(80:14) | (63:23)(63:25)(65:5) |
| (72:11)(77:21)(78:12) | (63:15)(64:23)(67:9) | (83:10)(84:19)(84:21) | (66:9)(66:11)(66:16) |
| (83:11)(85:18)(86:4) | (71:8)(71:10)(77:3) | (86:13)(86:22)(87:9) | (67:5)(68:11)(68:25) |
| (86:17)(88:1)(88:6) | (87:14)(87:21)(89:14) | (87:11)(87:17)(92:6) | (69:11)(69:19)(70:15) |
| (89:14)(89:21)(90:11) | (93:8)(94:11)(94:14) | (92:9)(93:1)(93:10)(94:5) | (70:23)(71:24)(71:25) |
| (90:25)(92:12)(92:14) | (96:7)(100:2)(100:3) | (94:10)(100:5)(100:8) | (73:4)(73:14)(73:19) |
| (92:19)(95:10)(95:12) | (101:19)(109:5)(113:18) | (100:10)(102:19)(103:5) | (73:20)(74:1)(74:17) |
| (104:12)(106:22)(109:8) | (116:18)(124:7) | (104:21)(107:10)(109:3) | (75:22)(75:25)(76:18) |
| (120:24)(122:6)(122:8) | whole (13:5)(27:23) | (114:13)(116:24)(117:3) | (76:21)(77:10)(78:22) |
| (123:25) | (31:4)(43:21)(102:5) | (117:10)(117:18)(117:23) | (79:4)(79:10)(81:8)(90:7) |
| weren't (99:21)(128:13) | (103:10) | (117:24)(119:2)(119:7) | (92:2)(92:3)(93 11) |
| we've (29:3)(43:6) | whom (57:6) | (119:9)(120:3)(133:23) | (93:21)(100:18)(101:14) |
| (51:16)(56:15)(63:9) | who's (15:8)(64:23) | (136:3)(136:6)(136:9) | (101:15)(101:17)(102:13) |
| (64:8)(78:17)(85:22) | (81:23)(93:11) | within (61:21) | (104:13)(104:23)(105:17) |
| (87:21)(89:13)(115:23) | why (6:16)(15:24)(16:5) | without (14:23)(37:9) | (108:8)(108:17)(109:16) |
| whatever (21:17)(34:23) | (20:16)(29:23)(35:21) | (39:18)(39:19)(46:6) | (112:8)(113:5)(114:9) |
| (37:20)(55:8)(55:15) | (36:20)(40:24)(42:2) | (47:15)(51:12)(54:12) | (115:11)(116:7)(116:8) |
| (58:1)(61:22)(83:3) | (42:13)(42:23)(47:23) | (56:25)(57:2)(57:7) | (118:18)(119:10)(122:19) |
| (129:20) | (49:24)(52:7)(76:8) | (57:12)(58:3)(58:9) | (122:20)(122:24)(123:22) |
| whatnot (113:20) | (87:12)(89:9)(94:24) | (58:10)(58:11)(63:15) | (134:2) |
| what's (15:5)(45:10) | (95:3)(119:12) | (65:6)(65:12)(66:9) | wouldn't (7:15)(12:15) |
| (57:21)(60:11)(60:12) | will (7:12)(8:10)(11:24) | (67:12)(94:8) | (12:18)(17:10)(17:11) |
| (83:15)(92:22)(96:22) | (12:9)(14:10)(15:2)(15:7) | witt (76:16) | (17:12)(17:14)(38:20) |
| (98:9) | (16:12)(16:15)(16:16) | wonders (119:24) | (41:15)(52:15)(54:7) |
| when (8:16)(11:13) | (16:19)(16:23)(18:16) | won't (62:24)(65:25) | (55:7)(55:9)(55:10) |
| (12:25)(14:9)(22:3) | (19:11)(19:12)(21:22) | (79:5)(79:7)(92:25) | (56:21)(64:9)(65:7) |
| (22:13)(25:10)(25:21) | (22:4)(27:9)(33:23) | wool (59:17) | (86:13)(93:4)(93:5)(94:7) |
| (26:1)(28:16)(28:17) | (38:11)(38:13)(38:15) | word (21:1)(22:10) | (101:15)(106:4) |
| (28:19)(30:21)(37:8) | (40:2)(50:12)(53:11) | (27:16)(46:24)(46:25) | wound (43:6) |
| (41:7)(44:8)(66:20) | (54:17)(54:21)(55:2) | (62:12)(64:3) | write (7:18)(84:4)(111:4) |

zip    156

**writing**

| | | |
|---|---|---|
| writing (135:9) | (94:18)(110:23)(124:16) | (102:1)(105:13)(130:17) |
| written (43:22)(60:10) | young (18:1)(19:14) | youth (69:13) |
| ~ong (8:22)(13:25) | (27:12)(33:11)(122:25) | you've (5:10)(8:21) |
| 7:6)(37:7)(48:21) | your (5:17)(5:24)(7:8) | (16:10)(51:22)(53:6) |
| (48:25)(57:18)(62:16) | (7:9)(7:21)(8:7)(8:17) | (56:7)(58:4)(66:14) |
| (71:9)(83:24)(86:13) | (8:18)(9:25)(10:2)(11:6) | (68:11)(72:12)(73:22) |
| (86:22)(87:11)(93:1) | (12:7)(12:9)(13:10) | (74:20)(77:19)(80:15) |
| (93:7)(94:10)(96:21) | (14:13)(14:23)(15:8) | (82:15)(87:22)(87:23) |
| (131:9) | (15:12)(15:14)(16:22) | (90:12)(94:6)(94:12) |
| | (18:12)(18:14)(19:19) | (95:15)(95:20)(95:24) |
| | (20:11)(21:3)(24:15) | (96:19)(97:18)(100:16) |

## Y

| | | |
|---|---|---|
| y'all (6:21)(43:10) | (25:1)(26:4)(27:12) | (100:19)(103:18) |
| (69:22)(119:2) | (27:22)(28:15)(28:17) | |
| yeah (11:12)(13:13) | (29:10)(29:13)(30:7) | ## Z |
| (13:23)(20:21)(22:22) | (30:22)(33:22)(34:9) | |
| (24:19)(25:25)(26:23) | (36:14)(37:5)(38:7) | zip (88:25) |
| (30:24)(35:18)(41:1) | (38:15)(43:6)(45:13) | |
| (42:12)(42:14)(48:11) | (45:22)(46:4)(47:21) | |
| (50:25)(55:24)(69:8) | (47:22)(48:8)(49:5) | |
| (82:22)(90:14)(93:25) | (49:10)(49:11)(49:20) | |
| (94:4)(99:7)(99:24) | (50:19)(50:20)(51:2) | |
| (101:16)(106:17)(106:18) | (51:3)(51:20)(53:4) | |
| (107:10)(125:13)(127:3) | (54:11)(54:13)(54:17) | |
| (127:17)(127:23)(128:9) | (54:21)(54:23)(55:16) | |
| (131:18)(131:20)(131:24) | (56:1)(56:19)(59:10) | |
| (132:10)(132:12)(133:15) | (59:17)(65:11)(66:23) | |
| year (23:9)(24:6) | (67:1)(67:19)(72:23) | |
| years (11:5)(11:6)(23:8) | (72:24)(73:3)(73:9) | |
| (27:6)(69:14)(70:3)(70:6) | (73:16)(73:20)(73:22) | |
| (70:8) | (75:4)(76:24)(79:1) | |
| yes (5:12)(5:16)(6:1) | (80:19)(83:1)(83:5) | |
| (6:7)(7:10)(7:14)(8:8) | (83:16)(83:20)(84:2) | |
| (10:3)(15:22)(19:9) | (85:9)(87:9)(87:22) | |
| (19:10)(20:6)(20:9)(21:6) | (87:23)(88:19)(89:17) | |
| (21:20)(23:1)(23:15) | (89:19)(91:25)(92:9) | |
| (24:17)(26:19)(26:20) | (93:4)(93:9)(94:17) | |
| 26:22)(32:7)(38:17) | (94:18)(94:23)(95:8) | |
| 39:8)(39:9)(39:23) | (96:3)(96:21)(97:15) | |
| (39:25)(40:22)(40:24) | (97:18)(98:6)(100:12) | |
| (41:4)(41:10)(41:14) | (100:22)(100:23)(101:6) | |
| (42:4)(42:19)(45:24) | (102:20)(103:16)(105:20) | |
| (45:25)(46:2)(46:5) | (106:1)(106:3)(106:7) | |
| (46:11)(46:21)(47:13) | (106:23)(108:8)(108:12) | |
| (47:14)(47:17)(51:6) | (108:13)(110:11)(111:10) | |
| (52:17)(52:20)(52:24) | (111:14)(112:1)(112:8) | |
| (53:2)(53:7)(53:9)(53:11) | (112:13)(113:18)(113:20) | |
| (53:12)(53:14)(53:16) | (114:4)(115:11)(115:21) | |
| (53:17)(54:15)(54:18) | (116:25)(117:2)(117:5) | |
| (54:19)(59:15)(60:14) | (117:10)(117:18)(118:10) | |
| (61:14)(62:20)(64:20) | (118:18)(122:11)(125:1) | |
| (66:10)(67:7)(67:17) | (129:7)(130:5)(130:22) | |
| (69:7)(71:17)(74:3) | (131:21)(132:9)(133:3) | |
| (74:22)(74:24)(75:22) | (133:17)(133:19)(133:22) | |
| (76:5)(77:15)(82:10) | (134:2) | |
| (82:13)(83:7)(84:7) | you're (6:4)(6:6)(6:16) | |
| (86:19)(89:5)(89:18) | (7:7)(7:23)(11:11)(11:13) | |
| (91:18)(95:11)(98:7) | (13:11)(13:12)(13:21) | |
| (98:19)(99:16)(99:19) | (17:19)(18:4)(18:5)(19:3) | |
| (99:25)(103:20)(105:15) | (19:18)(20:4)(21:3)(21:4) | |
| (106:2)(106:9)(110:21) | (22:3)(22:13)(22:17) | |
| (111:20)(112:22)(113:11) | (23:1)(26:5)(26:25)(29:5) | |
| (114:8)(114:12)(114:17) | (33:11)(33:12)(36:18) | |
| (116:6)(117:17)(119:5) | (37:8)(41:10)(49:20) | |
| (121:6)(123:6)(123:7) | (51:16)(53:22)(53:23) | |
| (123:13)(123:21)(124:25) | (55:18)(55:23)(56:7) | |
| (125:3)(125:6)(125:8) | (73:2)(74:15)(77:21) | |
| (130:7)(130:21) | (78:9)(78:21)(79:12) | |
| yesterday (5:13) | (80:8)(82:15)(84:2)(84:5) | |
| yet (88:10)(115:21) | (88:10)(88:20)(89:10) | |
| you-all (20:22) | (90:24)(92:7)(92:15) | |
| you'd (7:25)(45:21) | (93:8)(94:16)(94:19) | |
| (62:3)(82:17)(101:18) | (100:13)(101:6)(101:25) | |
| (108:1)(131:21) | (102:1)(102:11)(102:12) | |
| you'll (6:18)(19:7) | (102:15)(105:18)(105:24) | |
| (21:5)(21:10)(21:20) | (115:2)(118:9)(124:13) | |
| (50:18)(60:21)(78:8) | yours (74:1) | |
| (80:10)(80:11)(82:1) | yourself (46:17)(67:10) | |