AP-76207

REPORTER'S RECORD

VOLUME 20 OF _____ VOLUMES ORIGINAL

CAUSE NO. F08-24667-Y

THE STATE OF TEXAS      ) IN THE CRIMINAL DISTRICT
                        )
VERSUS                  ) COURT NUMBER 7
                        )
JAMES GARFIELD BROADNAX ) DALLAS COUNTY, TEXAS

----------------------------
INDIVIDUAL VOIR DIRE
----------------------------

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2010

Louise Pearson, Clerk

On the 11th day of June, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause; and the following proceedings were had before the HONORABLE QUAY PARKER, Judge Presiding, held in Dallas, Dallas County of Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.

HEATHER H. VEZINA, CSR
214.653.5786

A P P E A R A N C E S

MS. ANDREA HANDLEY
SBOT NO. 08898800
-and-
MR. GORDON HIKEL
SBOT NO. 00787696
-and-
MS. ELAINE EVANS
SBOT NO. 24032880
    ASSISTANT DISTRICT ATTORNEYS
    CRIMINAL DISTRICT ATTORNEY'S OFFICE
    DALLAS COUNTY, TEXAS
    FRANK CROWLEY COURTS BUILDING
    133 NORTH INDUSTRIAL BOULEVARD
    DALLAS, TEXAS 75207-4399

        APPEARING ON BEHALF OF THE STATE OF TEXAS


MR. BRAD LOLLAR
SBOT NO. 12508700
    ATTORNEY AT LAW
    1700 COMMERCE STREET
    SUITE 404
    DALLAS, TEXAS 75201
    (214) 384-8178
-and-
MR. DOUGLAS H. PARKS
SBOT NO. 15520000
    ATTORNEY AT LAW
    321 CALM WATER LANE
    HOLLY LAKE RANCH, TEXAS 75765
    (214) 521-2670 (DALLAS OFFICE)
    (903) 769-3120 (HOLLY LAKE OFFICE)
-and-
MS. KERI MALLON
SBOT NO. 24049165
    ASSISTANT PUBLIC DEFENDER
    DALLAS COUNTY PUBLIC DEFENDER'S OFFICE
    FRANK CROWLEY COURTS BUILDING
    133 NORTH INDUSTRIAL BOULEVARD
    DALLAS, TEXAS 75207-4399
    (214) 653-3550

        APPEARING ON BEHALF OF THE DEFENDANT

## CHRONOLOGICAL VENIREPERSON INDEX

### (VOLUME 20)

JUNE 11, 2009

| VENIREPERSON | State | Defense | Page | Vol. |
|---|---|---|---|---|
| | | | | 20 |
| BRUCE McDONALD | 10 | 50 | | |
| Defense's challenge for cause | | | 86 | |
| Court's ruling | | | 89 | |
| Defense's objection to Court's ruling | | | 89 | |
| Venireperson accepted | | | 89 | |
| | | | | 20 |
| SHERYL ANN LANE | 100 | | | |
| Venireperson disqualified by Court | | | 107 | |
| Defense's objection to Court's ruling | | | 107 | |
| | | | | 20 |
| DON MILLS | 113 | | | |
| State's challenge for cause | | | 115 | |
| Court's ruling | | | 115 | |
| Venireperson excused for cause | | | 115 | |
| | | | | 20 |
| MARGO PARKER | 117 | | | |
| State's challenge for cause | | | 119 | |
| Court's ruling | | | 119 | |
| Venireperson excused for cause | | | 119 | |
| | | | | 20 |
| VICKI ROACH | 126 | | | |
| State's challenge for cause | | | 141 | |
| Court's ruling | | | 141 | |
| Venireperson excused for cause | | | 141 | |
| | | | | 20 |
| CHRISTIE PRICE (absent) | | | | |
| Venireperson excused by agreement of parties | | | 143 | |
| | | | | 20 |
| JUAN AGUILERA | 145 | | | |
| State's challenge for cause | | | 146 | |
| Court's ruling | | | 147 | |
| Venireperson excused for cause | | | 147 | |

ALPHABETICAL VENIREPERSON INDEX

(VOLUME 20)

| VENIREPERSON | State | Defense | Vol. |
|---|---|---|---|
| JUAN AGUILERA | 145 | | 20 |
| SHERYL ANN LANE | 100 | | 20 |
| BRUCE McDONALD | 10 | 50 | 20 |
| DON MILLS | 113 | | 20 |
| MARGO PARKER | 117 | | 20 |
| CHRISTIE PRICE (absent) | | | 20 |
| VICKI ROACH | 126 | | 20 |

Court adjourned.............................147    20

Court Reporter's certificate...............148    20

EXHIBIT INDEX

STATE'S EXHIBITS

| NUMBER | DESCRIPTION | PAGE | VOL. |
|---|---|---|---|
| 1 | JUROR QUESTIONNAIRE AND NCIC PRINTOUT OF PEGGY FINCHER, VENIREPERSON NO. 387 (STATE'S EXHIBIT NO. 1 IS ATTACHED TO VOLUME NO. 19) | 110 | 20 |

DEFENSE EXHIBITS

| NUMBER | DESCRIPTION | PAGE | VOL. |
|---|---|---|---|
| 1 | JUROR QUESTIONNAIRE AND NCIC PRINTOUT OF SHERYL ANN LANE, VENIREPERSON NO. 317 | 103 | 20 |

PROCEEDINGS

(9:03 a.m.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson McDonald enters courtroom.)

THE COURT: Good morning, Mr. McDonald. How are you, sir?

VENIREPERSON McDONALD: I'm all right.

THE COURT: I'm Quay Parker. I'm a Senior District Judge from McKinney. Go ahead and have a seat here. That will be fine right there. That way you won't forget it when you leave. It will be right there by the door for you.

Yes. Thank you, ladies and gentlemen. Be seated. All right.

Heather, I'd like for the record to reflect that this is Prospective Juror No. 451, Bruce McDonald, capital M-c, capital D-o-n-a-l-d; is that correct?

VENIREPERSON McDONALD: Correct.

THE COURT: Mr. McDonald, we're glad to have you here this morning on such kind of a nasty morning, but we're glad that you made an extra effort to be with us today and I appreciate you for your time and your effort to be here this morning.

As I introduced myself to you, I'm Judge Quay Parker. I'm a Senior District Judge from McKinney. And Judge Michael Snipes is the Presiding Judge over this case, and he's asked me to assist him in the jury selection process while he's upstairs in his courtroom taking care of the daily matters of the court. So that's what I'm doing down here is assisting him in picking this jury. So, anyway, that's what I'm doing here today instead of Judge Snipes, but, also, that's why you're here today.

VENIREPERSON McDONALD: Correct.

THE COURT: And you'll recall, Mr. McDonald, that, oh, it's probably been over a month ago now that everybody, the whole panel met down in central jury, I guess it was. And Judge Snipes talked to the panel members at that time, went over a few things with them; and at some point in the proceedings, he asked the entire panel to stand up, raise their right hand and he administered the oath of a prospective juror to each panel member. Do you recall that?

VENIREPERSON McDONALD: I do.

THE COURT: Good. And were you one of the panel members that stood and took the oath at that time?

VENIREPERSON McDONALD: I was.

THE COURT: Very good. I'll just remind you that you're still under your oath. And what you've been sworn to do are actually two things: to give truthful answers, but we know you'd do that anyway, but, secondly, that you would be responsive to each and every question that's asked to you by the attorneys or by me, and we know you'll do that as well.

Now, let me tell you a little bit about what's going to happen here today. Have you had an opportunity to read the instruction guide here?

VENIREPERSON McDONALD: I have.

THE COURT: Good. And that's kind of an introduction to what the attorneys are going to be talking to you about today. It just kind of gave you a little primer on capital murder versus murder, and they're going to go into more detail about that with you. What's going to happen is that they're going to explain the law to you; and when you understand that, because we know that you have, more than likely -- most of the folks that come down here have never been exposed to that before, never even thought too much about capital murder cases.

So, anyway, they're going to tell you what the law is and then they're going to ask you questions about how you feel, you know, your thoughts, your ideas, your opinions, concerning the law, the procedural aspects, maybe the special issues that are involved in the trial of this case.

So, anyway, there's no right or wrong answers to any of their questions. This isn't a quiz that you've got to pass, you know, or if you fail it, you know, you can't be on the jury. It's not anything like that at all. They're just trying to figure out just, you know, kind of your feelings on the law as it might be applied in this case. So, anyway, I'm sure they'll have questions regarding some of your answers and responses in your questionnaire. I know it's been over a month since you've seen that, but they have -- they each have a copy of it. They've all read it, and so I'm sure both sides will take an opportunity to kind of ask you to turn to a certain page and question and then, you know, maybe expound on your answer, because I know you didn't have a whole lot of time or room, and, you know, and in some of those questions, your ideas may have changed, you know, now that you've had time to think about it a little bit and know that, you know, what sort of a case this is that you're involved in, you might -- you know, your attitudes or ideas or thoughts might have changed along the line there, which is fine, you know. And that's what they're going to try to find out.

Okay. Anyway, let me introduce you to the attorneys that are going to be participating in this voir

**9**

dire examination. Seated right across from me here and next to my court reporter is Mr. Gordon Hikel, and Mr. Hikel will be talking to you today on behalf of the State of Texas. And seated next to him is Ms. Andrea Handley, and then down from her is Ms. Elaine Evans.

MS. EVANS: Good morning.

THE COURT: And all three of these ladies and gentleman are assistant district attorneys here in Dallas County, and I think there's two other members of the prosecution team, but they comprise the prosecution team and they're charged with the responsibility of prosecuting this case.

And then seated next to me and down this way is Mr. Brad Lollar.

MR. LOLLAR: Good morning.

THE COURT: And then Mr. Doug Parks next to him, and on the end down there, Ms. Keri Mallon.

MS. MALLON: Good morning.

THE COURT: And the three of them are -- these three attorneys are the Defense team, and they represent Mr. James Broadnax who is on the end down there. All right?

VENIREPERSON McDONALD: Yeah.

THE COURT: Very good. Thank you very much.

**10**

And, Mr. Hikel, I believe we're ready for your voir dire examination.

MR. HIKEL: Thank you, Your Honor. May it please the Court?

THE COURT: Yes, sir.

BRUCE McDONALD.
Venireperson No. 451, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Mr. McDonald, good morning again, sir.

A. Hi.

Q. Back on April 24th, you came to this building here along with about three or 400 other people and you filled out this very lengthy questionnaire where we asked you everything about your life, and I'm going to ask you a couple questions based on some of the answers you gave. If during this process, I've been told I talk real fast, slow me down. If you don't understand, tell me, and I'll repeat or rephrase. Okay?

A. Okay.

Q. Now, I've been doing this now about 15 years, and we -- I've never had a juror or a person come to the courthouse and say, hey, Mr. Hikel, Gordon, I want to volunteer as a juror. I want to do this thing. Now, I have lots of friends who are -- you know, believe in our

**11**

Constitution, believe in our system, but they all work, and they say to me, look, Gordon, you know, I know it's important, civic responsibility, but I've got a job to do. Now, and if I don't work, I don't eat. Usually what I say to them is, you know, if you were charged with a crime and you have a choice between a person who is unemployed, maybe lives on the street, not having anything to do with his life, or someone who's educated, Mr. McDonald, has a job, ties to the community, which would you prefer? And they all will say, obviously, the guy who has ties to the community. He works. He has a job, takes care of his family, and those kind of things.

Now, having said all that, I am not going to be insensitive to the fact that you told us on page 12 of your questionnaire that you are a commission employee, and you said if you don't work or drive, you don't eat, so we're mindful of that fact. Having said all of that, tell us this morning, this trial is slated to begin on or about August 10th, and the lawyers and the Judge, we believe it will last approximately two weeks, maybe till August 21st, 24th. We don't know how long it will take the jury to deliberate once they get the case.

If you are to be selected as a juror in light of your employment position status, tell us, what would that do?

**12**

A. Two weeks would cost me anywhere from 1800 to $2,000 dollars in income --

Q. Uh-huh.

A. -- that I would lose.

Q. Uh-huh.

A. At my -- at the current economics on the deal, I I may have an extra hundred dollars a pay period that I would call as discretionary.

Q. Uh-huh.

A. So $1200, it would take me almost a year to recover --

Q. That money?

A. -- the money that we've lost --

Q. Uh-huh.

A. -- on the deal. I am a single homeowner and a daughter in college, so --

Q. Uh-huh.

A. -- that's...

Q. Yes, sir. In Sherman?

A. No -- yeah, she's up in Austin College.

Q. Okay. My daughter is going to start school in about two months, and I'm going to be paying for that myself.

I believe you said to us that now in light of your employment situation that if you were selected as

person. So if I, for example, kill one of my colleagues here intentionally and I laugh about it in front of your face and stomp on her and all those things, and that's all I do -- I hate to say that's all I do -- but kill her, that is not a capital murder crime because while I intentionally killed her, there wasn't the aggravating circumstances, the robbery or felony or something. But if I do that, intentionally kill her and then take her property, regardless of the value of the property, the law says that I can be charged with capital murder.

Now, we don't in Texas, obviously, believe in eye for an eye, as I believe you also said you don't, and the reason for that is simply, if we did, every time someone commits an intentional murder, we would charge them with capital murder, so we don't. So what we do is this: We have the responsibility, the burden of presenting the evidence to the jurors, the 12 of you, to answer, first of all, in the first stage of the trial whether or not the State has proven beyond a reasonable doubt whether the person is guilty of the offense as charged. In this case, the defendant is charged with capital murder in the context of killing someone intentionally while in the course of robbing or attempting to rob the person in question.

So in this trial or any other trial, whether it was stealing a bicycle, or in this case, capital murder, we have a two-part or what's called a bifurcated trial. In the very first part of the trial, your job as a juror is to answer one simple question: Has the State of Texas proven to me beyond a reasonable doubt -- and we'll talk about that fancy word -- that the defendant committed the crime as they have alleged in the indictment, the piece of paper which is no evidence of guilt? It just tells the citizen what he's accused of, and it tells the State what we have to prove. Okay? So in the first part of the trial, that's the only question you're seeking to answer. Now, those three -- have you ever been on a jury before in a criminal case?

A. Not in a criminal case.

Q. Okay. I noticed in your questionnaire, you mentioned you have, but they settled before the final outcome?

A. Yeah. I've been called for a couple of --

Q. Uh-huh.

A. -- juries or selections of six-men juries for civil in Mesquite --

Q. Uh-huh.

A. -- and some traffic, but --

Q. Okay.

A. -- then there was, like I say, one that we were impaneled and heard a little bit of testimony, and then --

Q. They settled?

A. -- they settled.

Q. Okay.

A. Typical, I guess, jury gets impaneled, and then they go, well, maybe --

THE COURT: Yeah.

A. -- maybe we'll take the plea or --

Q. (BY MR. HIKEL) Resolve this?

A. Yeah.

Q. Okay. Well, the principle is still the same in that it's a bifurcated trial where there is part one and there's part two. Part one is: Has the State proved to me he's guilty, yes or no? If you say -- you and the other 11 jurors say yes, you've proved to me beyond a reasonable doubt that he's guilty as charged, then and only then do they go into the stage two, part two of the trial called the punishment phase. If he's found guilty of capital murder, only then do you look at those three special issues.

Now, before you can decide whether or not he's guilty, there's certain fundamental principles of law that applies to this defendant as well as every other defendant who is charged with a crime. One is the indictment, the piece of paper right here, is no evidence of guilt, as I said before what it is. Number two, that there is a presumption of innocence that the defendant has. Basically what that means is this: If I were to commit a crime in front of all of these people here, and then the State were to charge me with a crime, even though there are all these witnesses, that jury that has been impaneled to hear my case will be instructed also that unless and until the State has proven to the jurors beyond a reasonable doubt that I'm guilty, you, the jurors, are to presume that I'm innocent. Okay? So there's that fundamental presumption you must abide by that as he sits there, he's innocent of the charges until we prove that. Okay?

Number three, witnesses. You'll hear from the various categories of witnesses. Some may be police officers, some may be civilians, medical personnel. What the law provides is this: Before a witness takes the stand and testifies, you must presume and give all witnesses the same level. Until and unless you heard what they have to say, then you evaluate the testimony to say I believe all of what they said, some of what they said, or none of what they said, so that their credibility as a witness or as a police officer is to be assessed once they take the stand and testify, not before

they testify. Do you understand the difference there?

A. Right.

Q. Okay. Next presumption is that -- you've heard about the Fifth Amendment. All of us has the right, if we're accused of a crime, to not testify. It makes sense. If I, the State, do the accusing, then it's only right we should do the proving. And here's what I mean by that, how important that is. For example, in the indictment, we have alleged that the defendant intentionally has killed someone by shooting the person with a firearm, a deadly weapon, while in the course of committing a robbery or attempting to commit robbery. Okay? So the cause of death that we have alleged in the indictment is by gunshot. Okay?

Now, here at the trial, the medical examiner comes to court. He or she testifies, yes, the person is, in fact, dead; but when I performed the autopsy, I saw no signs of gunshot. In fact, what I saw are 50 stab wounds. Okay? And that's the evidence that you have before you. We alleged gunshot. Evidence shows stab wounds. In that situation, what has to be your verdict as to the guilt or innocence of the defendant?

A. You're not guilty.

Q. Exactly.

A. Because you alleged gunshot --

Q. Right.

A. -- and they died elsewise.

Q. Very good. Now, I said that to say this: Let's say in that scenario, the defendant does not testify, and you say, you know what, this doesn't make sense to me. This guy is dead. Everything shows me in this evidence that the defendant caused the death of this person, but the mere fact he didn't take the stand and testify or this little thing called technicality, you know what, I'm going to tip the scale in the favor of the State because we know he did it, we can't let him go. The law says you can't do that. And because we know you're a law-abiding citizen, you will abide by the oath that says, you know, you're going to hold us, we do the accusing, let us do the proving, so in that scenario, you have to find him, as you said, not guilty. Okay?

We mentioned this term "beyond a reasonable doubt." I'll tell you, there was a time when our own law defined what the term meant. It was a very complicated, convoluted term, and the big-shot lawyers in Austin realized that you guys, the jurors, you were smart enough to figure it out for yourself. Beyond a reasonable doubt simply means just what it says. Beyond a reasonable doubt. It doesn't say beyond all doubts. It doesn't say beyond every doubt. It doesn't say beyond all shadow of

a doubt. It says beyond a reasonable doubt. Now, what does that mean to you, Mr. McDonald?

A. Well, I would think that a reasonable that, I guess, on a scale, more than 50 percent of the evidence.

Q. Uh-huh. Okay.

A. Yeah.

Q. All right. So, in other words, if I put on the case, you know, we put on our case, in any criminal case, bicycle theft or capital murder, and there's the close of evidence, you know, for the jurors to go back there and say, well, you know what, they didn't prove to me that an alien didn't come down and kill this guy, you know, that's possible. They didn't prove to me that, you know, maybe it was Jack the Ripper who did it, that's possible, but it's not reasonable. And so we can't sit there and think of possibilities to say because of these possibilities that exist, it causes me to have reasonable doubt. It has to be a doubt that's based upon reason and common sense. Okay?

A. Yeah.

Q. Now, so here we are, stage one of the trial. We've presented our evidence and you guys, the jurors, have made the decision that, yes, the State has proven to me beyond a reasonable doubt that he's guilty of the offense of capital murder.

We then move on to part two, act two, called punishment. Now, if it were automatic that you find someone guilty of intentionally killing someone while taking their property, if it were automatic that he gets the death penalty, there would be no need for these three special issues here, correct? Do you agree with me?

A. Yeah.

Q. All right. So the law says this: The same way in part one I asked you to assume to give him his right, the right to be presumed innocent until we have proven him guilty, when you come to part two where we have these special issues, there's another presumption that the law says that you must abide by, and this is it. You must accept the premise that life without possibility of parole is the right sentence unless and until the State proves otherwise.

And here's how we prove otherwise. Special Issue Number 1, you are then as a juror, with the other 11 jurors, asked this question: Do you find from the evidence, again, the evidence, beyond a reasonable doubt that there is a probability -- we'll come back to that word -- that the defendant would commit criminal acts of violence that will constitute a continuing threat to society? Now, the word "probability," as you would imagine, is to be distinguished from the word

25

"possibility." Anything is possible. I can win the New York City Marathon when it's run next month. Maybe if I'm the only one who shows up, I'll win it. But if I show up with all the other competitors, it ain't probable that I'm going to win it because, you know, I'm a big guy, six foot three, 245, not in that good of shape to run a marathon. But it's possible, if no one else shows up. It's not probable.

Now, tell me what comes to mind to you, Mr. McDonald, when you hear the two words "possible" versus "probable."

A. Possible indicates something that could likely happen.

Q. Okay.

A. Probable is something that is more likely to happen.

Q. Okay.

A. There's -- yep.

Q. Very good. In fact, jurors have told us that many times that the word "probability" means more likely than not. Now, you will not find a definition of the word "probability," and the reason for that is, again, the legislators in Austin who drew up these three special issues believe that the jurors are intelligent enough to figure out the word "probability." And as you said, it

26

means more likely than not.

Now, notice it says, would commit criminal acts of violence. It doesn't say what kinds of criminal acts of violence, whether it be another robbery or another murder or a sexual assault or anything. All it says is, criminal acts of violence, which, again, isn't defined for you. But, certainly, if I were to take my fist and just punch this court reporter right here next to me, I just didn't like her for some odd reason, I just decked her in the face, would that, in your mind, be an example of what a criminal act of violence is?

A. Probably not.

Q. Okay. Tell me why not.

A. I think of, you know, criminal act is --

Q. Uh-huh.

A. -- I guess, you know, theft or death --

Q. Uh-huh.

A. -- you know, ongoing, you know, violence. I mean, who knows why you, you know, popped a person.

Q. Okay. Well, now you're right. Notice it says acts, plural, acts of violence. But let me say this, if I were to punch the court reporter, she's doing her work right now, I just deck her for no reason. You're sitting right here, you watch me deck her. Is that an assault?

A. I'd consider it an assault.

27

Q. Okay. Is an assault a crime?

A. Possibly. That depends on the circumstances.

Q. Right.

A. I mean, there may have been something in y'all's past that I don't know about --

Q. Right.

A. -- that...

Q. Okay. Well, you'd agree with me there that I may have some justification as to why I punched her when you hear the whole story, but if all of the facts that you know is what I've just given to you, she's doing her work, minding her business, and I just sucker punched her, that I could be charged with the offense of assault, whether or not I have an excuse for it is something that comes afterwards, but that in and of itself is an act of violence, correct?

A. Correct.

Q. Okay. Now, and, certainly, it's up to you as a juror in answering the question whether or not I pose what's called a future danger. In other words, we ask you to somehow look into the future and try to predict is there a probability that the defendant that I found guilty of capital murder will be a future threat to society. Now, here is the thing now. One of the many ways the law provides for you to do that is this: You

28

may conclude as a juror -- actually, I believe if you turn to your questionnaire on page 4, we ask you if, based solely on the severe facts and circumstances, whether or not you think certain crimes would call for the death penalty. You put yes, and you put multiple death, person has no regard for other life.

Now, let me make this absolutely clear, the distinction here, Mr. McDonald. Under the law, Texas law, you may conclude as a juror that the facts alone are sufficient to answer the question for you that, yes, the State has proven to me beyond a reasonable doubt Special Issue Number 1, that he's a future danger based solely on the facts. Here's the difference, though. You cannot automatically assume or say that because I have found him guilty of capital murder, intentionally killing someone, that that answer to Number 1 is automatically yes, because if that were the case, there would be no reason to have it in the law. So you have to decide whether or not we've proven it to you beyond a reasonable doubt, and part and parcel in that process is that you can use the facts of the crime alone. You may say, okay, that's just one thing in the equation, I need more. And that's the reason why the legislature said, yes, you know, you ask yourself this question, what do I know about the defendant? What has the State proven to me that allows

me as a juror to conclude beyond a reasonable doubt that he poses a future danger to society? Okay? So you may use the facts alone, but it can't be an automatic decision. Guilty of capital murder, Number 1 Issue, yes, it can't be that. Do you understand the difference there?

A. Okay.

Q. Now, we said before that if you, as a juror, find the defendant guilty of capital murder, what is the automatic sentence that he gets automatically? What are the choices he gets in sentence?

A. Either life imprisonment without parole --

Q. Right.

A. -- or death --

Q. Okay.

A. -- are the two choices.

Q. Okay. Now, as I said before, if he's found guilty of capital murder as charged in the indictment, he automatically gets life in prison without parole. You are to presume as a juror that's the proper sentence. Under Texas law, the legislature wants you to presume it's the proper sentence unless and until the State can prove to you otherwise by the way you answer these special issues. So if he's found guilty of capital murder, where would he spend the rest of his life? What would be his society?

A. If he's found guilty of capital murder and the State does not prove --

Q. These issues.

A. -- these issues?

Q. Right.

A. Then, he would, you know, be in one of the Texas penitentiaries.

Q. Okay. For the rest of his life?

A. For the rest of his life.

Q. So when you hear the word "society," what do you think of when you hear the word "society," for meaning?

A. Outside people that, I guess, I associate with, that's society.

Q. Right.

A. Those that have not committed crimes against --

Q. Uh-huh.

A. -- the out -- or the general populace.

Q. Okay. Now, obviously, if the legislators provided for these special issues here and they say to you as a juror that if someone is found guilty of capital murder where the State is seeking death, and he is found guilty, he or she automatically gets life in prison without parole, but they say to you, it is not an automatic decision where he gets death, you have to answer these issues. And if they say to you that one of the issues you have to answer is whether or not he's a future danger to his society, to -- to society, and if he is going to spend his life in prison, it means that what? The society you're asked to then consider is the prison society, correct?

A. Uh-huh.

Q. Do you agree with me that there are nurses or perhaps doctors who provide medical care to inmates in prisons?

A. Yes.

Q. Do you believe that there are, perhaps, clergy members who visit people in prison?

A. Yes.

Q. Do you believe that there are other family members who visit their loved ones in prison?

A. Yes.

Q. Do you believe that there are, perhaps, inmates in prison who may be charged with DWI versus people who are charged with murder or capital murder?

A. Yes.

Q. And that there may be situations where there may be interaction among these various inmates?

A. Yes.

Q. Do you believe that inmates have the right to, while serving their time and paying their debt to society, that they have a right to not have violence visited upon them in prison?

A. Yes.

Q. Okay. Now, so given all of those possibilities of things that happen in that society, where there's doctors, nurses, clergy, all those things, teachers, the law asks you to try to predict, you know, look into the future, so to speak, and based on the evidence, the evidence, answer the question: Is he a future danger?

Now, they are labeled Issues 1, 2, and 3 for that reason. They are to be taken in that order. If you answer Special Issue Number 1 yes, then and only then you move on to Issue Number 2. If you answer no to Special Issue Number 1, the trial stops, and he gets his sentence of life in prison without parole, which means just that, life in prison without parole.

Issue Number 2 has a whole lot of words, but basically what it is, in Texas, we call it the law of the parties. And all it means is this, by illustration, if Ms. Handley and myself decide to commit a crime, we sit down and we talk about it, we plan it out. I want to hit a lick of this 7-Eleven tonight because I'm a Government employee, tough economic times, Commissioners want to cut my salary, I need some more money. Okay? We decide

33

let's scope the joint out. And I told her I did that, and guess what? I realize between 12:00 and 1:00 in the morning, there's only one clerk there, a female, all by her lonesome self, easy target, easy pickings. But here's the deal, Ms. Handley. I'm bigger and badder. Let me go into the store. But in case I've got to make a quick getaway, you sit outside and rev the engine of the car, just wait for me.

She says, all right, let's do it. And I say, let me take this gun, this piece, just in case, you know, things get out of hand, take care of my business. I'm walking in there, twelve, one o'clock in the morning. I go to the clerk. And just before I leave Ms. Handley, I realize, guess what, this -- this joint has cameras, and I don't have my mask. There's a witness there, probably going to ID me. I have a funny accent, balding, distinguishing features. She's going to pick me out easily. I told my friend that, Ms. Handley. She says, just -- just take care of it.

I go in there, I get the money, and I shoot and I kill the clerk because I don't want to leave any witnesses, and I blow out the cameras and all that stuff. Clerk's dead. I've got the money. What crime can I be charged with, the shooter?

A. Capital murder.

34

Q. Okay. Because I robbed and I intentionally killed. I mean, there can be no doubt. I put a gun to her head and I pulled the trigger. What is -- my conscious objective is to kill her. All right? Ms. Handley never came into the store. She just sat outside. We talked about it. We discussed it. We planned it and everything. What can she be charged with?

A. At least accessory to the murder. I don't -- I don't know the law well enough to know whether she'd be charged with the crime, but she would definitely be an accessory.

Q. Okay. Very good. Here's what the law says in Texas: If you as a juror find from the facts and the evidence that Ms. Handley either solicited, encouraged, directed, aided, or attempted to aid me in committing the crime, she can be charged with exactly what I'm charged with, capital murder. You'll have to determine it from the facts of the case. Now, certainly, if we're sitting and planned the crime, she knows I have a gun, comes to the store, and I tell her, I don't have my mask but I'm going to take care of the business of leaving witnesses, could there be any doubt that she knew exactly what I was about to do?

A. I would believe not.

Q. Right. So the law provides that she shouldn't

35

get a break only because there was only one gun that was used. If she helped me, planned it, aided, encouraged me, she should be charged like me. That's what Special Issue Number 2 is about. If you find, based on the evidence, and we don't know what the evidence will be, that the defendant was a party, in the ways I've mentioned just now, then that issue will be answered yes. Okay?

If you answer yes to 1 and yes to 2, he is sitting, the defendant is sitting square on the death penalty because you've said he's a future danger and he either anticipated someone would be killed, he caused someone's death, or he intended someone be killed. But here's what the law says, though. So here's this window, and when the window is slammed shut, it's a death penalty. So here we are. You found him guilty of capital murder. You answer Issue Number 1 yes. The window comes down. You answer Issue Number 2 yes. The window comes this way again. But notice the window isn't closed fully, and here's why. The law says as to Issue Number 3 take into consideration all of the evidence, all of the evidence, the circumstances of the offense, meaning you can look at the crime again, the defendant's background, the defendant's moral culpability, all of those things. Do you find that there is a sufficient

36

mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than death be imposed?

Now, Mr. McDonald, there's a reason why we have and the legislators put in the special issue the word "sufficient" right before the word "mitigating." Here is why. You may hear, I don't know, but from the evidence again, about the defendant's age, his background, whether he was raised by a single mother or single father, a bad mother, a bad dad, that he had bad friends who influenced him to do certain things. You may hear things that he was fed, I don't know, cat food all his life, or dog food. He was chained up in the closet all his life. You may hear all those things about the defendant's background so that you may think, oh, man, this dude really had it -- had it rough. That was really a rough life, and I think it's mitigating. I think I should give this defendant a chance because it's mitigating. Well, the law says that when you consider all the evidence, the question isn't whether or not there's something about the defendant that's mitigating, what is the word it says right before mitigating?

A. Sufficient. Is there more --

Q. Sufficient.

A. Yeah.

Q. Right. Is there something that I've heard in this trial that tells me that because of all the things I've heard about the defendant, whether he was high on drugs or not, and I know in your questionnaire you mentioned that on page 6 when you were told about voluntary intoxication, on page 5, you said, yes, you agree with Texas law that it's not a defense to a crime, but on page 6, you are told that it may be, it may be a mitigating factor, and you said that you disagree with that. Now, let me just say this to you. I can't tell you as a juror what you must accept as sufficiently mitigating or not. That's entirely up to you. The only thing that the law says is if it's proven to you that someone is mentally retarded, then you have to accept that as a mitigating factor because we can't put people who are mentally retarded to death.

But other than that, anything else you hear, he was high on drugs or alcohol at the time voluntarily, his age, his upbringing, his parents, you can hear all of that stuff. Here's what the law says: You don't have to accept it as being sufficiently mitigating, but you can't close off your mind to say, look, I'll tell you right now, if I say yes to 1 and yes to 2, ain't no way in the world I'm going to say yes to 3. I'm going to say no because I want him dead. You can't close off your mind

to hear any evidence, because, again, you're asked to consider all of the evidence.

Now, if you look at 1 with me, look at 2. Do you notice in the second sentence of 1 and 2, you'll find the words "beyond a reasonable doubt"? Okay. But in Issue Number 3, you don't find that term there. And here's the reason why. As to Issue Number 3, there's no burden of proof on either side. You'll just hear -- and the purpose of that is because we want to give the jurors a chance before you say that window ought to be slammed shut, the law wants to give you a chance to consider every possible thing about the defendant before you decide the answer to Number 3 ought to be no. And if you say the answer is no to Number 3, what happens is the defendant gets a death sentence. Do you understand that?

A. Yes, I do.

Q. Okay. But, again, what you want to consider sufficiently mitigating is entirely up to you as a juror as you deliberate with your other jurors. And when you go upstairs in the courtroom, if you become a juror, you will notice that you will be in a room with 11 other people. Why do you think that's the case? Why are you jurors kept together as opposed to 12 separate rooms?

A. I'm not sure why you would not separate them. I know that you would, yeah, sequester people to keep

outside influences --

Q. Right.

A. -- from causing a change or influencing.

Q. Right.

A. But I seem to recall, you know, being instructed in other juries that, you know, you're not supposed to talk about the case amongst yourselves --

Q. Right.

A. -- so...

Q. Well, let me --

A. I mean, until time to deliberate, I mean, during -- during the course of the trial --

Q. Right.

A. -- you know, my opinion is my opinion and I'm not supposed to influence you --

Q. Right.

A. -- or somebody else until said time.

Q. Okay. You're absolutely right there. The law provides for a time where jurors can be sequestered, but you only become sequestered once a case is handed to you and you begin your process of deliberating. One side can request, Judge, we want the jurors to be sequestered in a nice hotel somewhere in Dallas County, paid for by the County and all this stuff, but until the case is handed to you for your consideration, you will not be

sequestered.

A. Right.

Q. You're right also that while the case is going on, while you're hearing evidence, you can't sit and decide for yourself, I think the State has already proved to me he's guilty, or whatever the case may be. Okay? So you can't do that, but once you all get the case together, the reason why you're all together is because the law wants you to deliberate --

A. Right.

Q. -- discuss. Otherwise, if that were not the case, we would put you in 12 separate rooms and say, come up with your verdict by yourself. But, no, they want you to be together to discuss and deliberate.

Now, we don't expect when jurors come to this building, Mr. McDonald, for them to be totally unaware of what goes on around them in the world, in their society. We know from your questionnaire on page 3, you mentioned that you may have heard something about this case on the radio because you're a fan of the radio, and you drive 10 hours a day.

Let me say this. There's nothing wrong with you as a potential juror having heard about this case, but here's the difference, though. Whatever you may have heard about this case, you cannot bring it into the

41

courtroom with you and tell the other jurors, guess what, I don't care what these lawyers in there are telling me, let me tell you what I heard on the radio, and I know this guy's already guilty. Okay? You understand that?

A. Right.

Q. And the reason is because while you may have heard about it, it can't influence you as to his guilt or innocence because, again, the presumption of innocence, he's cloaked with that as well as every other person accused of a crime. Okay? So can you promise us that whatever you may have heard about this case on the radio that you will not allow it to influence you in your deliberations as a juror, if selected as one?

A. I can.

Q. Okay. All right. You mentioned on page 5 when asked, what would be important to you in deciding between life without parole and the death penalty. You used an interesting word called remorse. How would you expect in a trial for that to manifest itself? What do you mean by the word "remorse"?

A. It would be hard to, I guess, you know, totally identify. I guess you kind of know it when you see it --

Q. Okay.

A. -- type -- type deal. I mean, if a person sits stoically, you know, the entire time and just has no

42

emotions --

Q. Right.

A. -- about what's going on, I would consider that an unremorseful opinion.

Q. All right. And, now, when you mentioned remorse, you're talking about remorse in the context of deciding between death versus life, not guilt versus innocence, correct?

A. Correct.

Q. Okay. All right. You also mentioned about on page 8 of your questionnaire, let's see, you mentioned about the death penalty being misused in young adults. What did you mean by that? Was it page 8? Oh, I'm sorry. It was page 4.

A. Yeah.

Q. Page 4, yeah.

A. I -- I guess I have a tough time with, you know, young people --

Q. Uh-huh.

A. -- being put to death.

Q. Tell us why.

A. I mean, they're there -- unless, I guess, the crime was just that --

Q. Uh-huh.

A. -- you know, heinous or whatever. Life is, you

43

know, valuable.

Q. Right.

A. And I just hate to see one wasted when there is so much, you know, more --

Q. Potential?

A. -- potential, you know, down -- down the road.

Q. Now, you understand under Texas law, we can't put someone to death for a crime, he has to be at least 18 years or older. Do you understand that?

A. Correct.

Q. Now, I'm going to ask you this, Mr. McDonald, because I know we can sit here and discuss in an academic sense the death penalty, but you have to come to realize that this, what you're doing here now, this is the real thing. Now, it's obvious by looking at the defendant that he is, as you say on page 4, a young adult. And you did say that you think it's misused against young adults.

Now, let me just say this to you. Under the law, if we prove to you beyond a reasonable doubt that that young adult is guilty of capital murder as alleged in the indictment, and you then answer Special Issue Number 1, yes; Issue Number 2, yes; and Issue Number 3, no, that we are entitled to a verdict that would result in that young adult being put to death.

44

MR. PARKS: Your Honor, we object to that as being a misstatement of the law in suggesting to this juror that he cannot consider a person's youth in mitigation and find that sufficient to answer Special Issue Number 3 yes.

MR. HIKEL: I believe I've said several times to Mr. McDonald you can consider any evidence you want to consider, including his age.

THE COURT: Anything can be considered as mitigating evidence, whatever -- whatever that might be in your mind, and it just has to be sufficient --

MR. HIKEL: Thank you.

THE COURT: -- sufficiently mitigating. It could be any one thing, his age, upbringing. It could be a combination of several things, so...

Q. (BY MR. HIKEL) Okay. And contrary to what the lawyer has said, not mitigating, sufficiently mitigating. You may conclude that because he's young, I think that in and of itself it's sufficiently mitigating. That's entirely up to you. I cannot commit you to whether or not you will agree today that merely because of his age that you will find that to be a sufficiently mitigating factor. But what I can tell you is this, you have got to consider everything.

Let me go back to my statement again and ask

45

you this question, Mr. McDonald: In light of your consternation that's reflected on page 4 that the death penalty is misused against young adults, this is what would be classified as a young adult, and if we prove to you beyond a reasonable doubt that he is guilty of capital murder as charged in that indictment and that he intentionally killed someone in the course of a robbery and you say, yes, I find him guilty, and you answer Number 1, yes; Number 2, yes; Number 3 no, do you understand that the Judge will have no discretion but to sign the death warrant that would suddenly result in that young man being put to death?

A. I do.

Q. You understand that?

A. (Nods head.)

Q. Now, in light of what you said on page 4, tell me what consternation does that cause you, if any?

A. If the, you know, circumstances warrant, then, you know, I guess, you know, the death penalty is the prescribed, you know, penalty. Again, as the State, you would have to prove, you know, the case that he was guilty of the crime and then Special Issues 1 and 2, and then Special Issue 3 would fall amongst the 12, you know, jurors at that time.

Q. You're absolutely correct when you say it would

46

fall among the jurors because it's entirely up to you what you want to consider as sufficiently mitigating, entirely. And you're absolutely correct in saying that, Mr. McDonald, and which we will not argue with you on that because it's entirely in your purview as a juror to determine is something sufficiently mitigating. Okay?

You mentioned about life without parole being cheaper than the death penalty, and on page 5 of your questionnaire, I believe as to whether or not you believe there are -- what's your belief about it?

A. I can't prove it, sir. I will call that hearsay evidence --

Q. Okay.

A. -- that what I've heard or, you know, out and about that somebody that is incarcerated in a prison for life costs the taxpayers and the State less money just to incarcerate them rather than go through the numerous appeals.

Q. Right.

A. And then whether they are set free or put to death --

Q. Okay.

A. -- from a monetary standpoint, it's less expensive.

Q. Okay. I just have two more very quick questions

47

here and then --

A. Like I say, I may be right or wrong on that, but that's what I've heard.

Q. Okay. But even assuming if that's correct, assume that's correct, that would not prevent you as a juror from following your oath and considering the evidence in determining whether or not we've proven he's guilty and whether or not you can consider these three special issues?

A. No, it would not.

Q. Okay. All right. Finally, and I forgot to ask you this follow-up question about the youth of the -- determining he's a young adult factor. While I cannot tell you as a juror that you have to consider young adult, it is entirely up to you, as a sufficiently mitigating factor, my question to you is this: In light of your answer on page 4, will you always find in a situation if you're called upon as a juror that a person, a young adult, given, as you've said, there is so much more potential for a future good act, will you always find someone's youthful status or age to be a sufficiently mitigating factor?

A. No.

Q. Okay. You will consider that as well as everything else that you heard, correct?

48

A. Correct.

Q. Okay. Mr. McDonald, do you have any questions for me? Because this is probably the one time you can ask a lawyer a question for free without being billed for it.

A. No. I have plenty of friends, no.

Q. Okay. All right. Oh, there's a blank page you left there, I forgot to ask you about, on page 9. You put yes, but you didn't tell us why on page 9, the second to last on the bottom.

A. I've been through a divorce. I worked as an in-house representative for courier companies at three or four of the different law firms here in Dallas. None of the current people in front of us have I ever been associated with.

Q. Okay. That may be a good thing, so. Including myself.

A. Yeah. But, like I said, none of them have, you know, worked at the law firms or been associated with; but the only dealings I have had, you know, personally with -- inside the courthouse personally has been through a divorce.

Q. Okay. All right, Mr. McDonald. Thank you for your time, sir.

MR. HIKEL: Thank you, Judge.

49

THE COURT: Thank you.

Mr. McDonald, how are you doing?

VENIREPERSON McDONALD: Doing quite well.

THE COURT: Okay. Would you like to take a short recess, get a drink of water, walk around a little bit or go to the restroom or anything like that?

VENIREPERSON McDONALD: I'm good if they are.

MR. PARKS: I'm not.

THE COURT: You're not. Okay. All right. All right. Doug, we'll take -- let's take about a five-minute recess for Doug.

(Recess, 9:56-10:12.)

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson McDonald enters courtroom.)

THE COURT: Come on in, Mr. McDonald. Just go ahead and have a seat there again, if you would, please, sir.

VENIREPERSON McDONALD: Thank you, Judge.

THE COURT: Okay. Let's see. Mr. Lollar, are you going or Mr. Parks?

MR. PARKS: It will be me.

THE COURT: Mr. Parks. Okay. Mr. Parks.

50

VOIR DIRE EXAMINATION BY THE DEFENSE

BY MR. PARKS:

Q. Mr. McDonald, how are you?

A. Doing fine. Thank you.

Q. Mr. McDonald, I'm Doug Parks, as you've been told about half a dozen times now. And, obviously, I'm going to have some questions for you. Probably going to spend about the same amount of time that Mr. Hikel spent with you. But you can be comforted in knowing that when I'm through, you're done talking to lawyers. Okay? And you can go on about your business.

A. Okay.

Q. And speaking of business --

A. Can I get that in writing?

THE COURT: He wants that is writing, Doug.

MR. PARKS: Huh?

THE COURT: He wants that in writing.

Q. (BY MR. PARKS) It's on the record.

THE COURT: It's on the record.

Q. (BY MR. PARKS) You can have that if you're willing to pay the court reporter.

Speaking of business, let's talk about this because --

A. Okay.

Q. -- frankly, Mr. McDonald, you know, thank

51

goodness my children are up and out of school, but I've gone through that business of having daughters in private school and working for myself and only making money if I'm out working and earning. And I know what that would have done for me several years ago when they were in school, and I can only imagine, as a single father, the pressures that you have also. And I listened to what you had to say and have no dispute with what you have to say about you're being able to serve in spite of the financial hardship that that would put on you.

My concern is this, as, obviously, you know, I've got to look out here for Mr. Broadnax, and I have no doubt that you're absolutely sincere in what you tell us. But by the same token, I've got to have a concern that, you know, are we putting someone on the jury that if some unforeseen expense comes up or if this trial takes longer than we thought that it would, if the jury's been out for a while and it's beginning -- shoes are beginning to get tight, is there going to be a temptation to say, hey, you know, all right, we've been talking about this for a long time now, I give up. I've got to go home. I've got to go back to work. Anything like that, that I have any fear of, any reasonable fear of? Because once you're on this jury, you're on it.

A. I'd like to say, yes, I would, but I want to

52

say, no, that I believe that I could give my full attention to the trial. Unexpected expenses show up all the time.

Q. Uh-huh.

A. Coming into work today, I could have easily been somebody that was in the side of a ditch and had $1,500 worth of truck repair. That's two weeks worth of employment, and I would have figured a way to pay for $1,500 to put my truck back together.

Q. Sure.

A. So, yeah, it would be an inconvenience. I don't believe it would realistically keep me from having an open mind.

Q. You saw how many people came down to that jury room the other day. It's not like you're the only fellow left that can do this --

A. Correct.

Q. -- deal. But you're saying to us that if you are selected, you're going to put your financial issues and work issues aside and -- and fully concentrate on this case?

A. I believe I could.

Q. Okay. Can you assure us that you can do that?

A. I can't assure anything other than the next breath.

53

Q. Well --

A. I mean, you're asking me to -- I mean, to the best -- to the best of my ability, I will give, you know, devote a hundred percent of, you know, my attention to the matter at hand.

Q. Okay. And you said the magic words, because typically what we ask people is, can you give us a hundred percent assurance that you can do this, and you basically have just told me that. Is that what I'm --

A. Yes.

Q. -- hearing? All right. Fair enough. Well, I'm going to leave that alone then, and we'll go on to something else.

Mr. McDonald, I'm going to basically talk to you in about three areas. I want to talk to you a little bit about your questionnaire. I'm going to talk to you about the areas of the guilt/innocence phase of the trial, and then I want to talk to you about the punishment phase of a capital murder trial. By talking to you about the punishment phase, I do not intend to convey to you any indication that we are conceding guilt/innocence in this case. Do you understand that?

A. Correct.

Q. It's just that this is the only time we have to talk to jurors. And if we are going to talk to you about

54

the punishment phase and make sure you understand what the law is, we have to do it now. Okay?

Another thing I'm not going to do, Mr. McDonald, is tell you what you have or what you must or must not say to me. The purpose of this is for you to tell me the truth. That's the oath that you took. And you can tell me anything you want to tell me. There are no right or wrong answers to any of these issues, so I'm not going to instruct you what you need to say in order to be, quote, a good juror or a qualified juror. We'll make those decisions for ourselves. You just tell us how you feel about these matters and leave the rest of that to us. Is that fair enough?

A. Uh-huh.

Q. One of the good things about this country is we're all entitled to our own opinions.

A. (Nods head.)

Q. And we're entitled to express our opinions, and we're entitled not to have to justify our opinions if we don't wish to. Does that make sense to you?

A. It does.

Q. Okay. Well, that's all we're really asking of you. You don't have to justify anything. Just tell us how you really feel about these issues, and we'll deal with that.

55

With respect to your questionnaire, I know it's been a little while since you filled that out, Mr. McDonald. Have you had a chance to review it at all before we started here much today?

A. I'm only reviewing the questions that you bring to my attention.

Q. Okay. So far, has there been anything brought to your attention that -- that -- that you would have changed, or did you fill this out pretty carefully and told us what you meant?

A. I believe it still holds true today.

Q. So if you were -- if we were to give you a blank one of these and tell you to fill it out, it's going to look pretty much exactly like this one?

A. I'd like to think that it would.

Q. Okay. Fair enough. You told us that you are in favor of the death penalty. That is the most common answer that we get from prospective jurors, and, certainly that's no surprise to us. Let me ask you, though, Mr. McDonald, in that belief, what purpose do you believe the death penalty serves that a life without parole would not serve?

A. I don't know. Maybe closure for the aggrieved party.

Q. Uh-huh.

56

A. If somebody is allowed to continue living, then the aggrieved party feels like, you know, they're having to suffer, you know, every day knowing that the person that caused them --

Q. Uh-huh.

A. -- a death in their family is still -- still alive.

Q. Sure. And that's not an uncommon response for us to hear. We also hear sometimes people say, well, it's just -- just seems to me that maybe justice would require that. Sometimes we hear jurors tell us that perhaps what -- it's just a deserved punishment for taking a life. All of those things are fairly common responses that we hear, and, frankly, Mr. McDonald, none of which have anything to do with the law in the State of Texas, because, you see, what's justice for one person might not be for another.

The law is not -- as harsh as this may sound, the law is not down here to give closure to -- to families. That's just not the purpose of the criminal justice system. And so we need to keep those issues in mind as we -- as we talk here. Okay? And I'll get back into that a little bit more. Okay?

Now, I know you've told us that you listen to the radio a great deal because you're out and about

57

all day long.

A. Yeah.

Q. Who do you mostly listen to?

A. It's mostly the talk radios. I'll catch WBAP, 820, 660, 570, 1080. Most of the time toward the end of the day, I may turn it over to some of the more classical, you know, music, but it's mostly talk radio.

Q. And for lack of a better way of describing it, is it mostly what's considered to be right-wing talk radio shows?

A. Certainly.

Q. I know KLIF is, or 570.

A. Right. They're all conservative talk radio --

Q. Okay.

A. -- with, I guess, with the exception of 1080.

Q. Yeah. Midday 1080 is kind of, sort of those two guys kind of --

A. Yeah.

Q. -- go --

A. Yeah. We flip through. A lot of it depends on, I guess, the subject that they're broaching that day or how much I've -- how much I've heard of it. I mean, I listen to it, and if it seems like I've heard the same thing for two or three days, then I start looking for music. But being in the car for 10 hours a day, the

58

music radio plays the same music day in and day out and you can only hit so many stations.

Q. My son-in-law gave me a Sirius receiver, and I turned it to the comedy things. And after they started playing them about the third time, I just unplugged it and put it back in the console. You know, at any rate...

A. Yeah.

Q. Do you think -- you indicate that you believe you've heard about this case. Was that in a generic sense or do you believe that you recall --

A. I -- I --

Q. -- this case specifically?

A. No, I -- just in a generic. I mean, I may have heard it as a news broadcast.

Q. Okay.

A. And it's in one ear and out the other as -- but to say I definitely heard about this case, without hearing more about it, I --

Q. Okay.

A. -- couldn't tell you anything. If somebody showed me the style of the case, you know, it says State of Texas versus, you know, James Broadnax, I wouldn't know --

Q. What that was about?

59

A. -- what that was about.

Q. Well, up at the top of page 3, we indicate that it is alleged that on June 19th, 2008, Stephen Swan and Matthew Butler were shot to death outside a Garland music studio during the course of a robbery. Those are the allegations we've agreed upon. Does that -- does that spark any recollection in your memory at all?

A. Not enough to --

Q. Say --

A. -- to be a, you know, total influence.

Q. Okay. One of the things -- questions it does call to my mind, at least, Mr. McDonald, if you flip on over to page 4, you can see that the allegations there are that two people were shot to death. Then over here on 4 at about mid page, you indicate that there are some crimes that call for the death penalty solely because of the facts which would include multiple deaths. And I guess my question to you is this, is that if you heard evidence that indicated to you that more than one person was killed at the same episode, would that be a case in which you believe that you would automatically vote for the death penalty?

A. It would certainly have a bearing on the -- on the outcome of the case. I mean, more than one indicates that, at least to me, that the first one, you know, may

60

have been kind of an accident, you didn't, you know, truly think about it. If you've killed a second person, then you're, I guess, pushing -- you know, you're pushing the envelope a little bit.

Q. Okay. Let's talk about that for just a moment, and we'll come back to that, probably, when we revisit these special issues. And I want to make sure that you understand what the law requires of the State of Texas in this case.

Mr. Hikel indicated to you early on in his portion of the voir dire that in the State of Texas, it is capital murder if a person intentionally or knowingly causes the other -- another person's death during the course of various things, and that's true, but it's not accurate, okay, in all cases, because -- and he explained to you the difference between intentional and knowingly. In an intentional killing, that's when a person has made up his mind what he wants to do, set a goal of ending another person's life; whereas, knowingly, a person can act -- he -- he can do an act that's clearly dangerous to human life that causes death without really intending that death be caused, still be guilty of murder, can still be guilty of some forms of capital murder, but not the kind of case that we're trying here today.

In this case, the law requires an

61

intentional act, okay, that -- that a person not just intended the act that he did, it requires an intentional result, that he wanted the person to be killed, to be dead. It's not an accident in no way, shape, or form. Okay? Essentially what our law says is a person acts intentionally when it is his conscious objective or desire to cause the result, not just do the act. Okay? There's a difference there. Because if I do an act that's clearly dangerous to human life, that might be speeding through a school zone at 80 miles an hour, that may be shooting someone in what I considered to be a non-lethal place, and yet a death is caused. You know, I didn't intend to cause the death. I did intend to do the act that caused the death. Do you see the difference?

A. Okay.

Q. Do you?

A. I believe so.

Q. Okay. We use an example sometimes. I'll use it. I don't like examples because I use up my time, but, you know, there's a difference between me making a decision to rob the 7-Eleven store and not leave any witnesses, like the example that Mr. Hikel gave you, and I shoot everybody because I want them dead so they can't identify me. There's another situation maybe if I say to the clerk, I don't want you to follow me out of the

62

store. I don't want you to see what I'm driving, and I don't want you to see which direction I'm going, so don't you come from behind that counter. And as I'm leaving, the clerk comes around the corner anyway, so I shoot him in the leg to keep him from following me out and seeing which way I'm going to go.

Now, I haven't shot him with the intention of killing him. I shot him with the intention of keeping him from following me out of the store. So when a bullet hits a femoral artery and he bleeds to death before the ambulance can come there, I have caused his death. But I didn't shoot him with that intention. I shot him with another intention. You see, there's a difference between intending to do an act that causes death and intending to cause death and doing whatever it takes to accomplish that goal. Are you with me?

A. Okay.

Q. Okay. So what the law requires is, is that in a capital murder of this kind, before a person can be found guilty of capital murder, the jury must believe from the evidence beyond a reasonable doubt that he not only killed someone during the course of the robbery, but that's what he wanted to do. He set that as his goal. Are you with me?

A. Okay.

63

Q. Okay. Let me tell you what it's not. Okay? It's not an accident like we talked about before. It's not a mistake. It's not some lesser culpable mental state, like knowingly or recklessly or with criminal negligence. It's not in self-defense. Sometimes people will say to us, well, you know, I could consider not giving someone the death penalty even though they killed someone intentionally if they did it in self-defense. Well, if they did it in self-defense, that's a legal justification. They wouldn't be guilty of anything. Okay? And if they had a legal excuse, they wouldn't be guilty of anything.

And you'd probably think, well, what in the world would a legal excuse to kill somebody be? If a person is criminally insane, if they have no concept of the difference between right and wrong, then we excuse their intentional killing in law. Now, that's not a common thing and it's a hard thing to show. Okay? But it happens occasionally that someone in fact is just so mentally ill and out of it that they don't have any idea that what they're doing is wrong. And I think we probably generally see that in people who believe that they hear voices that require them to do that or the devil has required them to do it or God is requiring them to do that, some such serious delusion like that. See

64

what I'm saying? So we deal with those people in another way, not through the criminal justice system.

So whatever else we're talking about, we're not talking about any of those things. Are you with me?

A. Correct.

Q. Okay. Now, you've also indicated to us that you think that if someone who kills during a crime -- we're still on page 4, it's that top -- the very top of the page -- the death of a child you believe is a crime that -- where the death penalty should be available, and it is if the child is younger than six years of age. Why they picked six years, don't ask me. That's the legislature. That's just what they picked. So, you know, a child who is seven years old, not a death penalty. Death while committing another crime, you see, and that's the kind of crime that is alleged here. Okay?

Again, is that something that you believe if you saw multiple deaths and another crime yet being committed, in your way of thinking, that's going to always be a death penalty case?

A. I'd like to think so. I mean, you're committing one crime --

Q. Sure.

A. -- and now you're committing, you know, the

second crime --

Q. Right.

A. -- of taking somebody's life.

Q. And you're adding another --

A. And you've -- and you've -- and you've got a -- usually a weapon --

Q. Uh-huh.

A. -- that's out and pointing, probably, I mean, so, yeah, I would like to think that I would probably feel that way.

Q. Okay. We'll talk about that again some more, as I say, when we get over here to these -- to these special issues. I wanted to go through the -- through the questionnaire, like I told you I was going to do.

I guess on page 5, while I'm thinking about it, Mr. McDonald, I want to visit with you just a little bit about your response to that question down here as to what would be important to you in deciding whether a person received the death sentence rather than a life sentence in a capital murder case, and you put remorse. And in discussing that more fully, you indicated to Mr. Hikel that you would basically base that on how -- how you perceived the defendant during the course of the trial? Did I misunderstand you?

A. That -- that's the only opportunity I would have to interact with a person on trial is from where I'm sitting and how they're sitting.

Q. Okay.

A. That may sound judgmental, but that's what you've asked, you know, 12 jurors to do is to be, you know, judgmental based on evidence that you've presented, and fortunately or unfortunately the defendant, sitting in a juror box, is part of the presentation. And if he --

Q. I --

A. -- he or she sits there, and, I don't want to say, is not involved in the case or gives a nondescript, could-care-less, you know, inattentive type of attitude to what's going on around him, that would show, you know, I guess, he could care less whether he lives or dies.

Q. Okay. So that part -- part of your decision-making process, if I understand you correctly, would be based upon how you perceive the defendant during the course of the trial?

A. That -- that would be in the penalty phase.

Q. In the penalty phase.

A. In the penalty phase. As far as the decision as to guilt or innocence would be based on the facts --

Q. Evidence.

A. -- you know, brought forth.

Q. Sure. Okay. And that's -- that's what I thought I understood you to say earlier, and I wanted to make sure while I was on that page and not flipping past it. We will probably revisit that again in a few minutes. I want to -- I'm not altogether done with your questionnaire, Mr. McDonald, but I do want to get on, and I'll come back to some of this as it applies to where we're going to be. It will make a little bit more sense, I think, if we do it that way.

I see your daughter is at Austin College up in Sherman; is that right?

A. Correct.

Q. And how is she classified now?

A. Sophomore going into her junior year.

Q. Very good. What's she studying? Do you know?

A. Whatever she wants at the moment. Like I say, it's a -- it's liberal arts school, and that's where she wanted to go and she was able to get in, so...

Q. It's a good school. There's no question about that. And my youngest daughter -- don't feel bad if you're not sure. My youngest daughter is writing her dissertation for a Ph.D., and I still don't know what in the dickens really it's on. It's some sort of archaeology. She studies bones.

A. Yeah.

Q. She can grind somebody's tooth down, in a machine, that's 5,000 or 10,000 years old and tell you whether they're men or women, how old they were, and what their primary diet was and all that.

A. Yeah.

Q. I don't understand any of it, but, anyway, it's good to see your kids learn things you don't know.

All right. Guilt/innocence stage of a trial. Capital murder is no different from any other kind of case. The juror is expected to presume the accused to be innocent, put the burden of proof on the State, and we expect the State and require the State to prove everything that they've put in their indictment beyond a reasonable doubt. You understand all of those concepts?

A. I do.

Q. Okay. Now, some of the things that you see in the indictment are defined for you. Some of the things that you see in that indictment are not defined for you. The special issues over here, nothing is defined for you. What does the law say about that? Well, it says that if we define a term for you, then you are expected to accept that definition, even if you might have one different from that that you would use in your daily life. So that when I say to you, for instance, that the

69

law says intentional means the conscious objective or desire to cause the result, then that's what you have to accept as a true definition.

Where we do not define terms or words, then you are free to use your own definition that you would use in your day-to-day life. Does that make sense to you?

A. Okay.

Q. Okay. One of the things that we do not define for jurors is beyond a reasonable doubt. Okay? Now, if I understood what you told Mr. Hikel earlier in his portion of the voir dire is that to you, beyond a reasonable doubt means more than 50 percent of the evidence. Did I hear you correctly in that?

A. You did.

Q. Okay. So would I be right in assuming that if the State of Texas were to prove to you from the evidence more likely than not the defendant is guilty exactly as he's charged in the indictment, that for you would be a guilty verdict?

A. If they were to prove, you know, beyond -- well, not beyond but, you know, reasonable doubt, that, you know, more than 50 percent of the stuff that they showed me, then I would be, you know, compelled to, you know, find guilt.

70

Q. Okay. Fair enough. And you understand that the same burden applies to these first two special issues, that they have to prove those beyond a reasonable doubt?

A. I do.

Q. And then would your answer basically be the same, that if their evidence showed more than 50 percent, that would meet the standard of beyond a reasonable doubt for you?

A. It would.

Q. Okay. Fair enough. Do you presume Mr. Broadnax to be innocent?

A. I have no choice. The State has not proved, you know, one way or the other, and all people are presumed innocent --

Q. Okay.

A. -- you know, until otherwise...

Q. I'm going to dispute what you said, but I agree with what you said.

A. Yeah.

Q. You do have a choice. You don't have to presume he's innocent.

A. In -- in the trial, I do.

Q. Exactly.

A. I mean, like, right now, I could have any opinion I want to. If I'm a juror, then I am obligated

71

to presume that he is innocent.

Q. Yeah. And -- and the difference is, and here's the way I really like to put it. You know, I've been around enough people to know that there's a significant portion of our population that for personal reasons they don't presume anybody to be innocent.

A. Yeah.

Q. Now, they can set that personal opinion aside when they come to act as jurors and require the State to prove their case. And that really is -- the question is, is that can you not make up your mind at this point one way or the other and require the State to do what the State's required to do and prove it to you?

A. I could. Like I say, I don't --

Q. You didn't form any opinions about this case?

A. I haven't formed any opinions. I haven't had much thought about this case since a month ago --

Q. Okay.

A. -- other than the fact that I hadn't heard from anybody and was hoping that I wouldn't be here today.

Q. And time is ticking. You know, you've -- you've invested about half of my time already, so you're making good progress toward getting out of here. Now, whether you have to come back or not, we will talk about that, but for today, at least, we'll get you back out in the

72

rain. All right?

I want to move on, Mr. McDonald. I'm satisfied what you've told us regarding the guilt/innocence phase of the trial. Let me go back a second and I'll revisit that in a minute.

Let's look at Special Issue Number 1, and the context of this special issue, Mr. McDonald, is this: That no jury is ever, ever asked this question unless they have already heard evidence that convinced them and 11 other people beyond a reasonable doubt that the defendant is an intentional murderer and that he killed someone during the course of the commission of another offense, another felony offense. So that question is only asked about persons who are convicted capital murderers. Are you with me?

A. Okay.

Q. All right. So, you know, it goes back to that -- that old thing that we talked about earlier. We will occasionally have jurors say, well, you know, now I've got to look to see if it was an accident. Now I've got to look to see if it was self -- no. No. No. No. Those issues have all been settled. Are you with me?

A. Okay.

Q. Okay. So what the law says is this: That a juror can answer -- well, first they say -- the law says

that a juror's to presume that the answer to that question is no. Okay? And that they should only answer that question yes if the State proves to them beyond a reasonable doubt that it should be answered yes. Are you with me?

A. Okay.

Q. All right. So the law says that a juror can, they don't have to, but they can answer Special Issue Number 1 just on the facts of the case that they've just heard regardless of anything, if -- if there's not one other scrap of evidence off -- if they believe the facts of the case, the fact that the defendant was -- intentionally killed someone during the course of the commission of another offense, that if those facts alone satisfy the juror that a person about whom they're answering this question would probably commit criminal acts of violence that could constitute a continuing danger to society, then they're justified in answering that question yes. Now, they don't have to.

They're entitled to require the State to prove more than just the fact that the defendant is an intentional murderer during the course of another offense. It's up to the juror. Okay? How do you feel about that? If you were shown from the evidence beyond a reasonable doubt that the defendant was guilty of an intentional murder during the course of another offense, how do you believe that would affect your answer in Special Issue Number 1?

A. Well, it would be something you'd have to take into consideration. If I understand you, you're basically holding two trials --

Q. Uh-huh.

A. -- in this. The first one is whether he's guilty or not.

Q. Right.

A. And just because we found him guilty on the first part does not necessarily require us to find him guilty of Special Issue Number 1 unless there are additional evidences brought forth that would indicate to me that he would, you know, potentially, you know, harm somebody else --

Q. Okay.

A. -- in the future. Is that --

Q. That's exactly what the law would expect of you. Do you have any idea, Mr. McDonald, what sort of evidence that you might like to hear? And let me just tell you, so you'll know. In the guilt/innocence phase of the trial, the rules are pretty strict about what can and cannot be admitted, because the issue there is simply, as one lawyer I know used to say, it is simply did he do it. And so only those things that are relevant to that issue are admissible as a juror. But once -- and not just in a capital murder case but any other kind of a case, once a person is found guilty and you move into the punishment phase of the trial, almost everything is admissible. Okay?

A. Right.

Q. So you're not really restricted with what you can hear. So knowing that, are there -- do you have in mind what you would like to hear to try to answer that question as best you could?

A. Well, any -- I guess, in the -- in the first part of the trial, you cannot go back into prior history. You're not concerned with anything else. You're only concerned with the facts pertaining to that particular case. In Special Issue 1, if I understand it, the entire person's life --

Q. Yes.

A. -- is open for discussion at that point. And so, as I say, you know, anything's fair at that point.

Q. Okay.

A. I mean, I'm sure the district attorney would bring in any prior offenses that he may have -- you know, be guilty for. And as a defense, you would bring in friends, family, clergy, anybody that would speak to the character of the witness. Is that a pretty -- pretty fair assumption?

Q. Sure. And I guess the issue -- you see what they're really looking for here, Mr. McDonald, and I want to make sure that you understand what the legislature had in mind when they gave us Special Issue Number 1. They had in mind the intention of trying to identify what the Court of Criminal Appeals has referred to as those few incorrigibles who cannot even be locked up in the penitentiary without further -- fear of further acts of violence against others.

So, obviously, the intent of the legislature is, is that just because a person's been found guilty of capital murder doesn't mean they're going to be a future danger in the penitentiary. We need to decide who is, and how are we going to figure that out? And the -- the fear that I have, particularly with persons such as yourself who have fairly strong opinions about these matters, and you're entitled to your opinions, is that despite what I say and despite what -- what these issues say, there's going to be a great temptation, I think, in any capital murder case to want to go back into the jury room and make a decision about what you think ought to happen to this person and then answer these questions in order to fit the result that you want. And, of course,

77

that's not what the law contemplates. You see what I'm saying?

So that what I'm looking for as a juror, to be real honest with you, is somebody who can say, I have the mental discipline to be able to say no to Special Issue Number 1 if I don't think the State has proven it to me, even if I believe with every bone in my body the defendant deserves the death penalty. Are you such a person?

A.  I'd like to think so.

Q.  Okay. That's -- that's putting it pretty plain, isn't it? But you understand what I'm talking about?

A.  Right.

Q.  Now, this isn't -- this is just like that indictment. You wouldn't find somebody guilty of capital murder if the State didn't prove it to you. You shouldn't. No -- no juror should answer that question yes unless the State has proven exactly what the law expects to be proven, not whether or not it's justice, not whether or not it's deserved, or not anything to do with closure to the family. That's got to all be put aside and just look at that question and say: Did they prove to me that this is one of those few incorrigibles who cannot even be incarcerated without further acts of violence towards others in probability? Does that make

78

sense to you?

A.  It does.

Q.  So would it seem to you reasonable to expect that a person's past history might be a reasonable guide to what they would do in the future? If they had a history of violent acts both outside incarceration and inside incarceration, that that might be relevant to telling you what they would do in the future?

A.  I would like to use the word I get on my investment portfolios, but, yeah, it's, you know, past history, you know, unfortunately sometimes does tell you what somebody's going to do in the future.

Q.  And, likewise, if a person had no history of violence before that particular incident --

A.  And likewise if they --

Q.  -- would that be instructive to you?

A.  Yeah. If there was no prior history of violence or -- the chances of them doing so in the future would probably be less. And if less, then Number 1 would be a no.

Q.  And you see how that's supposed to work and that the jury really is supposed to answer that question just like they answered guilt/innocence, based on the evidence, not what their gut tells them ought to happen, that kind of thing. Does that make sense to you?

79

A.  It does.

Q.  You could do that?

A.  I'd like to think so.

Q.  Let me -- and let me make one more point, try to make another point to illustrate that. Mr. Hikel told you, and I'm not disputing what he says, that, you know, the society in which the defendant would be, would be the penitentiary. And there's no question that there are inmates in the penitentiary and there are guards in the penitentiary and there are doctors and nurses and things like that. But just showing that there are people in the penitentiary, do you consider that evidence that a person would actually harm those people if given an opportunity?

A.  I think you've changed societies, you know, at that point. You've gone from an outside --

Q.  Uh-huh.

A.  -- to prison society in which laws and rules and accepted behavior are one and you've traded them by an action for another one, and now you are, I guess, forced to live by, you know, the new rules of your new society, and he probably, you know, would not be a danger to a prison society --

Q.  Right.

A.  -- whereas he may be on the outside.

Q.  And you see where you could say, look, I've

80

heard the evidence as the juror, and I believe, based on what I've heard, that if this person were out living among us, he'd be a future danger, but I've got to answer that question in the context of where he's going to be. Do you see the difference?

A.  Yep.

Q.  And you can -- I guess, can -- can you imagine a situation where a person might be a danger on the outside but would not be a danger in the penitentiary?

A.  I could.

Q.  Who runs the penitentiary, do you think? Inmates?

A.  To a certain degree. I mean, they've got their own, I guess, standards and hierarchy within the penitentiary, and, of course, they've got to abide by the laws that -- and the guards. I mean, it's --

Q.  Do you --

A.  I mean --

Q.  I mean, do you think that they just wander wherever they want to --

A.  No. No. They -- they --

Q.  -- and do whatever it is they want to do?

A.  No, I don't think to that regard. I mean, they do have, I guess, you know, set social, you know, standing, but that's --

Q. Do you think that it might be instructive to you in answering that question to hear from somebody who would tell you? I mean, it's one thing to say that there are nurses at the penitentiary. It would actually be more important to you to know what access an inmate might have to those people in order to do them harm than just the fact that they're there. Does that make sense to you?

A. It does. I would like to believe that when an inmate is taken to a facility that they are in a supervised manner.

Q. Sure.

A. It's not here's your pass, go see the nurse, and you go down the hallway.

Q. Right.

A. You're in supervised custody.

Q. Let me pause just a moment, Mr. McDonald.

MR. PARKS: I didn't write it down. Does anybody have a clue as to how much time I have left?

THE COURT: Yeah, I do. You started at 10:12, so probably another two or three minutes.

MR. PARKS: That -- that few? All right.

THE COURT: That few.

Q. (BY MR. PARKS) Time just flies when you're having fun.

I'm going to skip Special Issue Number 2 and go straight to Special Issue Number 3.

THE COURT: Can you see?

VENIREPERSON McDONALD: You're fine, Judge.

Q. (BY MR. PARKS) And the context of that, and I'm going to talk a little faster, the context of that is you never get to that question unless you've answered, yes, he's guilty; yes, he's a future danger; and if you've been given Special Issue Number 2, yes, to that one also. So you're answering that question about a person who is an intentional murderer who killed during the course of another offense and you've found from the evidence that he's probably going to commit acts of violence in the future that would constitute a continuing danger to society. That's the context. Okay?

What the law contemplates is that a juror reassess all of the information that they have heard, including a person's background, character, and the things that are mentioned in Special Issue Number 3. I want to go over to page 8 in your questionnaire, down toward the bottom, where it says: Some people feel genetics, circumstances of birth, upbringing, and environment should be considered when determining the proper punishment of someone convicted of a crime. What do you think? And you answered, all have a knowledge of

right from wrong, and sometimes the way those are brought -- and, frankly, I -- I'm not sure what --

A. I think it's into, into focus.

Q. Okay. Okay. Into focus. Okay. And what I'm -- I'm taking from that is the answer to that question is, no, you don't believe that those things ought to be taken into consideration if a person knows the difference between right and wrong. Am I right or wrong about that?

A. To be honest with you, I'm not sure what I wrote or how it applies to the question.

Q. All right. Well, let me -- let me --

A. I mean --

Q. -- just ask it this way: Do you believe, after you found someone guilty of capital murder, do you believe that their circumstances of birth or upbringing or environment is something you should or that you could consider, or do you consider those things to be irrelevant at that point?

A. I believe that they probably should have a little bit of bearing on that. I don't know so much about, you know, the genetics or the circumstances, but I do believe that, you know, upbringing and the environment that they're around --

Q. Uh-huh.

A. -- plays a lot because that's where they get their moral -- moral compassing.

Q. Okay. Fair enough. What about voluntary intoxication? We -- we broached that issue over on page 6, and you indicated that that was not something that you would consider in mitigation or consider in answering Special Issue Number 3. As you can see, you don't have to. The question asks, you may consider it. Some jurors do, will consider it in answering Special Issue Number 3. Some jurors will not. How do you feel about that?

A. That's, I guess, like the man says, I mean, intoxication just releases some of the, you know, inhibitions that you may have already, you know, had, and -- and so I, you know, wouldn't, you know, consider it as much. I mean, it would be a low --

Q. Do you think you would consider it at all?

A. I don't know.

Q. Okay. Fair enough. Basically one last question, Mr. McDonald. And, again, here, just tell me in all honesty how you feel about this. When you get to Special Issue Number 3, you know that you're answering that question about a person who's a murderer, a capital murderer, that you found to be a continuing danger. I understand that you would consider some of the things

that we've talked about, circumstances of birth, environment, that you would consider those -- those things. Do you believe that once you get to Special Issue Number 3, knowing that you were talking about an intentional murderer, do you believe that you would ever find anything to be sufficiently mitigating to change a death sentence to a life sentence for someone you believe would be a continuing danger?

A. To be a continuing danger, I don't think that I probably could, but I have never been confronted in those circumstances where I've had to make --

Q. That decision?

A. -- a decision on somebody's life.

Q. Sure.

A. And until that point happens, I couldn't tell you, you know, yes or no. I guess it's kind of like some of the kids in the military or whatever, you know, could you pull the trigger; and until you're confronted with it --

Q. You don't know.

A. -- I don't know.

Q. Fair enough, Mr. McDonald. Do you have any questions of me?

A. Not at the moment.

Q. Are you done with this? Thank you, sir.

A. All right.

THE COURT: Thank you, Mr. McDonald. I'm going to ask you to step outside, if you would, please, sir, with my bailiff and let me confer with the attorneys, and then I'll bring you back and give you the result.

VENIREPERSON McDONALD: Okay.

THE COURT: Okay. Thank you, sir.

(Venireperson McDonald exits courtroom.)

THE COURT: Thank you. You can be seated.

Okay. Mr. Hikel, does the State have a challenge for cause?

MR. HIKEL: No, Your Honor.

THE COURT: And, Mr. Parks, does the Defense have a challenge for cause?

MR. PARKS: Yes, Your Honor, we do.

THE COURT: Okay.

MR. PARKS: First, I will challenge Mr. McDonald for the reason that he could not and would not consider voluntary intoxication in answering Special Issue Number 3. I think we've made it pretty clear in the record that that's something that will be a part of this defendant's mitigation case, if we reach that stage of the trial. And that under Lockett versus Ohio and Morgan versus Illinois and Eddings versus Oklahoma that

we are entitled to a jury, a complete jury, which can at least consider those mitigation issues that will be presented in the case, and that the juror's refusal to consider any relevant mitigating evidence that will be presented and give it no weight whatsoever, as I believe Mr. McDonald has clearly indicated, is not qualified, and to seat him would be a violation of this defendant's rights under the Sixth, Eighth, and Fourteenth Amendments of the Constitution.

Additionally, we will challenge Mr. McDonald because of his view of beyond a reasonable doubt which is essentially no more than a preponderance of the evidence. He told Mr. Hikel that all it was going to take is something more than 50 percent to convince him beyond a reasonable doubt. I revisited that with him. Mr. Hikel then followed up on him. I revisited with him. He said very clearly that if the State proved to him 50 percent or more that that would satisfy him with respect to beyond a reasonable doubt.

Now, I don't know what beyond a reasonable doubt is because we don't define it, but I know that it's more than a preponderance of the evidence, and I believe that he would not give this defendant the benefit of the law in that regard and is therefore disqualified.

MR. HIKEL: Judge.

THE COURT: Mr. Hikel, yes, sir. You can stay seated.

MR. HIKEL: As to the issue of voluntary intoxication, first of all, as I'm sure the Court is aware, what the law says is that you may consider it. So, certainly, it's suggested that the juror has a choice to or not to consider it by the use of word "may."

Beyond that, this juror particularly said that, yes, he can consider it. It would be a low thing, but he will consider it. Certainly, his answers to the question suggest that he will consider it, which is all the law requires him to do.

In addition to that, the issue of beyond a reasonable doubt, while he may have said, yes, 50 percent, he said more than 50 percent. I don't know if he meant by that 99 percent or he meant 51 percent. He said more than 50 percent. Mr. Parks then asked him a question whether or not he used -- his use of the word 50 percent is equivalent to preponderance of the evidence was never something that was explored with the juror. He understands that it's entirely up to him what the terms mean, beyond a reasonable doubt. It's in the province of the juror, and he has said several times that, yes, he can abide by the law and hold the State to its burden of proof, which is that of beyond a reasonable doubt,

89

whatever that term means to him, Judge, so we believe he's a qualified juror.

THE COURT: Okay. Thank you. The Defense's challenge for cause is overruled.

Okay. So Mr. McDonald becomes No. 23.

MR. HIKEL: Yes, sir.

THE COURT: If you would, bring Mr. McDonald back in.

MR. PARKS: Judge, may the record reflect --

THE COURT: Hang on just a minute. I'm sorry?

MR. PARKS: -- that this is not an acceptable juror for the Defense.

THE COURT: Yes, sir. So noted.

Do you-all want to take a short recess and then we'll get him back in here and then just go right in to our second one?

MS. EVANS: Can we talk about the second one?

THE COURT: Oh, okay. All right. We'll do that.

THE REPORTER: Do you want this on the record?

THE COURT: Well, not just yet.

(Off-the-record discussion, 11:05-11:07.)

90

(Open court, defendant present.)

THE BAILIFF: All rise for the juror.

(Venireperson McDonald enters courtroom.)

THE COURT: Go ahead and have a seat, Mr. McDonald.

Thank you, ladies and gentlemen. Be seated, please.

Mr. McDonald, you've been qualified as Prospective Juror No. 23. And what we're doing here, Mr. McDonald, we're qualifying a panel of 48 to 50 prospective jurors. And then at some point in time, probably in July, the -- both sides have a number of peremptory strikes and they'll make their strikes and the jury will be the first 12 that aren't struck by either side.

So I can't tell you if you're going to be on the jury or not, but you'll be notified in July, probably late July, as to whether or not you're on the jury. Now, if you're on the jury, here's what I would like for you to do, a couple of things. Number one, I think it's already been mentioned to you that we anticipate that the evidence in this case is going to start August the 10th, and it will probably take about two weeks.

So I'd like for you to pencil in on your calendar those two weeks. In the event that you are

91

selected for jury service, then you would report for jury duty on August the 10th. And I anticipate that the presentation of the evidence in this case will take the next two weeks, so we're looking at from August the 10th through the 21st. And, of course, there won't be anything on the weekends, I mean, you know.

And you won't be sequestered unless you might be in deliberation. If you're on the jury and the jury is still deliberating and it comes time that, you know, everybody's worn out and still issues are unresolved, then Judge Snipes then may want to sequester you in a hotel just kind of to keep you from not being able to, you know, converse with anybody not of your own jury.

VENIREPERSON McDONALD: Right.

THE COURT: So, anyway, but other than that, I mean, as far as the trial goes, you won't be sequestered. Okay? So the other thing is pretrial publicity. You said that you had heard a little something about that or thought you had --

VENIREPERSON McDONALD: Like I said--

THE COURT: -- but you can't remember any details or anything like that?

VENIREPERSON McDONALD: No.

THE COURT: So, and that's the way I want to

92

keep you. I don't want you going back and looking it up on the Internet or trying to go into the archives of the Dallas Morning News or anything and trying to find old newspaper articles about, you know, what happened or TV accounts or anything like that.

Also, anything from this point forward, and I'm sure if you're on the jury and you're during the trial, I'm sure Judge Snipes will constantly remind the jurors, admonish the jurors not to watch any TV accounts, not to read any newspaper articles concerning the case during the trial.

But there might be some pretrial stuff, you know, you know, information that comes either by -- through the newspaper or TV or radio, and I know you listen to a lot of radio, so if those -- if something about this case comes on, I don't want you listening to it. I don't want you watching it on TV. I don't want you reading the newspaper article about it. Okay?

VENIREPERSON McDONALD: Okay.

THE COURT: All right. Because when -- if you're on this jury, the first thing that Judge Snipes is going to do August the 10th is to administer the oath of a jury to you jurors. And in that oath, it will be different than the one that you're under today, and that is that you will be sworn to make your decision in this

93

case based solely upon two things. And the first one is the evidence that will be presented in the trial of the case, and that evidence will only come from the witness stand; and, secondly, the law that Judge Snipes will give to you in his written charges to the jury. So those are the only two things that you could make your decision in this case on, so we don't want you to have any -- come in with any preconceived ideas, you know, about what you think the evidence is or should be or that sort of thing. Okay? Good enough?

VENIREPERSON McDONALD: Yeah.

THE COURT: Good enough. All right. Well, thank you so much for your time.

VENIREPERSON McDONALD: Thank you, Judge.

THE COURT: We appreciate it very much. Pleasure getting acquainted with you, and thank you for your participation, and end of July, you'll know something.

VENIREPERSON McDONALD: Phone call or letter?

THE COURT: Probably a letter. I want to say it will probably be in writing, could be a phone call, or both, you know. The coordinator may call you and let you know and then something comes in the mail in writing, a letter from Judge Snipes or something like

94

that. Okay?

VENIREPERSON McDONALD: Okay. Thank you very much.

THE COURT: Very good. Thank you very much.

MR. HIKEL: Thank you.

MR. PARKS: Thank you.

(Venireperson McDonald exits courtroom.)

THE COURT: Okay. Let's take a short recess. All right.

(Recess, 11:12-11:23.)

(Open court, defendant present.)

THE COURT: Let's bring in Ms. Lane, please.

THE BAILIFF: All rise for the juror.

(Venireperson Lane enters courtroom.)

THE COURT: Hi, Ms. Lane. How are you this morning?

VENIREPERSON LANE: All right.

THE COURT: Come on in and have a seat right here, if you would, please, ma'am. Just go ahead and have a seat.

Thank you, ladies and gentlemen. Be seated, please.

And, Heather, I'd like for the record to reflect that this is Prospective Juror No. 317, Sheryl

95

Ann Lane.

And how are you this morning, Ms. Lane?

VENIREPERSON LANE: I'm dry.

THE COURT: Well, at least you're dry. Yeah, we are dry in here, aren't we, which is a good thing today. Apologize for you waiting out there, but, as you know, we've been busy in here, so it just takes us a while to kind of get around. And I'm Judge Quay Parker. I'm a Senior District Judge from McKinney, Texas. And Judge Michael Snipes is the Presiding Judge in this case, and Judge Snipes has asked me to assist him in the jury selection process. So he's upstairs in his courtroom taking care of the everyday business of the court, and he has me down here helping with this case by going through, presiding over the jury selection process, so --

VENIREPERSON LANE: Okay.

THE COURT: -- that explains to you what I'm doing here today and also why you're here today. Okay?

VENIREPERSON LANE: Thank you.

THE COURT: And you've had a moment to read your questionnaire, correct?

VENIREPERSON LANE: Yes.

THE COURT: And you'll probably recall, oh, it's been over a month ago now, that everyone got

96

together in central jury. There was probably, what, 400 of you or so?

VENIREPERSON LANE: Yeah.

THE COURT: A bunch of folks. A bunch of folks there that day. And Judge Snipes went over a few things with the panel. And at some point in the proceedings, he asked everybody to stand up, raise their right hand, and he administered the oath of a prospective juror to everyone on the panel. Do you recall that?

VENIREPERSON LANE: Yes.

THE COURT: Were you one of the panel members that stood up at that time and took the oath?

VENIREPERSON LANE: Yeah. Everybody took the oath.

THE COURT: Everybody did, and you were one of them, correct?

VENIREPERSON LANE: Yes.

THE COURT: Okay. And I'll just remind you that you're still under your oath.

VENIREPERSON LANE: Yes.

THE COURT: And what you've been sworn to do, number one, is to give truthful answers, which we know you'll do that, and also to be responsive to each and every question that is asked to you either by me or by the attorneys that will be involved in the jury -- in

97

this voir dire examination.

VENIREPERSON LANE: Okay.

THE COURT: Okay. All right. Now, then, one little matter I need to take up with you, if you can hear me over the thunder and all, it's been called to my attention, I've been looking through your questionnaire that I have here and I'm going to give that to you in just a moment. But it's been called to my attention that you had a -- was it a theft by check case? I mean, I know it's an old case. It looks like it was in August of '77. Do you recall that? It was an insufficient funds, sometimes they refer to them as hot check cases, sometimes they refer to them as theft by check cases, insufficient fund check. Do you recall that?

VENIREPERSON LANE: Not really.

THE COURT: No, you don't?

VENIREPERSON LANE: I mean, that's been so long ago, I might have had a check that was returned.

THE COURT: Yeah. But nothing really stands out in your mind about -- let's see. It was a -- do you recall anything that happened? It looks like you might have paid a fine. Well, first of all, let me check and make sure that we even have the right information here. Your name is Sheryl Ann Lane, right?

VENIREPERSON LANE: Yes.

98

THE COURT: Okay. And let's see. Let me get your birth date here. I may need some help. January the 30th of '55; is that correct?

VENIREPERSON LANE: Yeah, that's me.

THE COURT: Okay. All right. And I think I've got a Social Security number here too. Let's see here. It's really getting nasty out there, isn't it, and loud. Let's see here. Let me find that Social Security number. There it is. Okay. Let's see what you've got there and let see me see if I have it. See if it matches up, if I can find it. I had it here a minute ago.

Do you recall getting any probation? Or it shows me here that you got four months' probation and a fine of $30 and then probably restitution. I don't see on here where it says there was restitution, but do you remember anything like that?

VENIREPERSON LANE: I don't ever remember being on probation for anything.

THE COURT: Well, it just shows here --

VENIREPERSON LANE: I might have had a check and it was -- and that's so long ago and the check -- might have paid for the check, but I don't ever remember doing probation.

THE COURT: It just shows me here that it was probation. You don't remember getting arrested or

99

anything like that?

VENIREPERSON LANE: (Moving head side to side.)

THE COURT: No. Okay. And I just noticed on your questionnaire, I turned over here to page 9 where the question was, do you know anyone -- do you know anyone who is now or ever been in jail or in prison --

VENIREPERSON LANE: Uh-huh.

THE COURT: -- which would include yourself or any family members or anything, and you've listed a brother and a nephew, I think, and, you know, a couple people like that, but there wasn't anything there about yourself or about this case. And that's the reason I asked you if you even remembered it, you know. But let's see. Social Security number, I thought it had it there.

MS. EVANS: I don't think it lists one, Your Honor.

THE COURT: It doesn't list one? I see an SID number. Would that be with regard to a warrant or something like that?

MS. EVANS: That's just a state ID number.

THE COURT: Oh, a state ID number.

MS. EVANS: It does list a birthplace, Your Honor, of Illinois.

THE COURT: Were you born in Illinois?

100

VENIREPERSON LANE: Chicago.

THE COURT: Chicago, Illinois. Yeah. Okay. Well, any other questions that you might have --

MS. EVANS: Just briefly.

THE COURT: -- regarding this particular issue here, Ms. Evans?

MS. EVANS: Just briefly, Your Honor.

THE COURT: Yeah. Go ahead.

SHERYL ANN LANE.

Venireperson No. 317, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Ms. Lane, did you live in Tallahassee, Florida, for a period of time?

A. I went to school at Florida State.

Q. Okay. And during what time period was that?

A. Oh.

Q. It know it's probably been a while?

A. Yeah. I'm 54. Let's see. I graduated from high school in '73, so it had to be maybe '74, '75. It could have been during that time.

Q. Okay.

A. Yeah. I think I graduated in '73. It's been so long ago.

Q. That's okay. For about how many years did you

101

live in Tallahassee, based on your recollection?

A.   Probably about for a good long time after, maybe seven -- five, six, seven years.  I can't remember.  My mother got sick, and --

Q.   Okay.

A.   -- when she became ill, I moved back to Tampa.

Q.   Okay.  But you were in Tallahassee, Florida, in the '70s?

A.   Yes.

Q.   Okay.  And you don't recall being arrested back in August of 1977 for an offense?

A.   No.  I've never been arrested.

Q.   Okay.  Thank you.

THE COURT:  Anything further, Ms. Evans?

MS. EVANS:  No, Your Honor.

THE COURT:  Mr. Lollar, do you have anything?

MR. LOLLAR:  I don't think so.

THE COURT:  Okay.  All right.  Well, let me ask you just to step out here for a minute and let me confer with the attorneys.

VENIREPERSON LANE:  Okay.  That's fine.

THE COURT:  And then I'll get -- I'll get back with you and let you know.

VENIREPERSON LANE:  Okay.  No problem.

102

(Venireperson Lane exits courtroom.)

THE COURT:  Thank you.  You can be seated.  Well, see right here -- I'm on the record -- see right here what I noticed, see, there's probation, four months.

MR. LOLLAR:  Uh-huh.  Right.  Uh-huh.

THE COURT:  So that indicates to me that there's a conviction.

MR. LOLLAR:  Well, disposition, it says adjudication withheld.

THE COURT:  Withheld.  Yeah.  And I don't know what that means, but --

MR. LOLLAR:  So it seems like it was an unadjudicated.

THE COURT:  Could have been like a deferred or something like that.

MR. LOLLAR:  Uh-huh.

THE COURT:  Or -- or -- or we don't know what the adjudication was.

MS. HANDLEY:  Exactly.

THE COURT:  Whether -- whether it was guilty or, I mean, whether it was a conviction or not a conviction.  And it just says adjudication withheld.  I don't know what that --

MR. LOLLAR:  Right.

103

MS. EVANS:  And these frequently don't report.

THE COURT:  Disposition of it says adjudication withheld.

MR. PARKS:  Sounds like the adjudication was withheld, just like it says.

MS. EVANS:  But the end results are not always reported on here unless the reporting agency reports it.  As we saw was the case yesterday when we had to dig deeper down in Ellis County to find out because it doesn't list at all --

THE COURT:  Yeah.

MS. EVANS:  -- what had happened on that case, and I just -- I don't think on a case of this magnitude we can rely upon this and even what adjudication withheld means down in Florida.  We know what it means to us here.

THE COURT:  Yeah.

MS. EVANS:  But I think, Your Honor, that you are given discretion in determining whether or not this juror is qualified based on the case law, and the State feels out of an abundance of caution that we cannot allow this juror to be qualified.

MR. LOLLAR:  On the other hand, Your Honor, and if we could ask that be marked as an exhibit that we

104

can introduce in regard to this --

THE COURT:  Sure.

MR. LOLLAR:  -- we will mark this as Defendant's Jury Selection Exhibit No. 1.

THE COURT:  There you go.

MR. LOLLAR:  How about that?

THE COURT:  I like that.

MR. LOLLAR:  What this is, for the record, is an NCIC that was run on Ms. Lane by the district attorney's office.  And we're looking at the last page of the exhibit where it indicates that this lady was charged with fraud, insufficient funds check, and that happened in Leon County, Florida.

THE COURT:  Uh-huh.

MR. LOLLAR:  And it looks like the date of arrest was August 16th, 1977, and what this reflects is in regard to disposition was adjudication withheld, four months' probation, $30 fine, 24 hours community service, restitution, and court costs.  So it's -- you know, based on the face of it, this is not a disqualifying thing.  This is not -- this does not appear to be a conviction for this offense, and I don't think that there's any evidence in the record which would justify holding this juror as not qualified.  She has testified here herself this morning, she was never arrested for this offense.

105

She says she might have had a bounced check, which is what this would be. But based on this record, we don't feel that there is any justification for excluding her as a juror in this case when she otherwise appears to be qualified.

THE COURT: Do you need this?

MS. EVANS: No, Your Honor. If I could respond briefly --

THE COURT: Go ahead.

MS. EVANS: -- to that.

THE COURT: Excuse me. Are you through, Mr. Lollar?

MR. LOLLAR: Yes.

THE COURT: Okay. Thank you.

MS. EVANS: This juror has indicated that she can't recall and looks very puzzled whenever we're asking her questions about this incident. She doesn't recall being placed on probation; however, the record on the NCIC clearly is showing that she was placed on probation. And I think that's the problem here that this juror is not able to give us any information regarding what the ultimate outcome was because she doesn't even recall being on probation. And I think that that's the ultimate issue is that we don't really know what the outcome was.

106

There's just not enough information upon which to rely to allow this juror to sit on a case of this magnitude as well as the fact she indicates on her questionnaire that she has never served as a juror before. And so, certainly, no other court has relied upon this or deemed -- I mean, she has not been held to be an acceptable juror before. Now, I don't know that she's been called before, but I think that based on the information that we have and the information that this juror is not able to provide to us, we just simply cannot rely on this juror being qualified given the information we have before us.

MR. LOLLAR: And in response, I would say that there is no evidence before the Court that she's not a qualified juror.

THE COURT: Okay. All right. Well, my thinking on this is that from what I'm looking at here, I know that there was some sort of disposition of the case, so to my way of thinking, even though she may not remember an arrest, to my way of thinking, there had to be an arrest because there had to be -- she made a trip before the court, before a judge, somebody had to assess probation at four months, had to fine her $30, had to assess 24 hours community service and restitution and court costs, so, you know, a judge had to do that.

107

MS. EVANS: Sure.

THE COURT: Now, so there was some disposition to the case. I don't know Florida law. I don't know if when it says adjudication withheld, whether it was adjudicated and resulted in a final conviction but they're just not telling us in this report because they don't know because the case is so old or whether it was something like what we would call a deferred and she lived her probation down and the case was ultimately dismissed. It doesn't say that either. So I don't know.

But I'm going to err on the side of caution and I'm going to say that in my discretion, I can't run the risk of putting somebody, you know, possibly that could be a juror in this case that would not be qualified, so...

MR. LOLLAR: Would the Court please note our exception?

THE COURT: Yes, sir. Yes, sir. So noted.

MR. PARKS: Let the record also reflect that this potential juror is an African-American woman.

THE COURT: Yes, sir. Yes, sir. The record will reflect that Ms. Lane is an African-American woman.

MR. LOLLAR: All right. So what did I say that was, Defendant's --

MS. EVANS: Your Honor, if I could briefly

108

add to the record as well that the State also relied on the same reasoning and basis for arguing to the Court that we should excuse the juror yesterday which was a white female because we just didn't have enough information to rely upon --

THE COURT: Right.

MS. EVANS: -- and we believe that she had a theft conviction out of Ellis County.

THE COURT: Well, and another thing that concerns me was that Ms. Lane, even though she may truthfully not recall this, having been so old, she hadn't listed it in her questionnaire --

MS. EVANS: Sure.

THE COURT: -- and put everybody on notice that it was out there, whatever the status of it. Okay. Go ahead and bring Ms. Lane back in and I'll let her go and --

THE BAILIFF: Yes, sir.

THE COURT: I don't think we need to do anything. I don't think -- I don't think there needs to be a challenge for cause.

THE BAILIFF: All rise for the juror.

(Venireperson Lane enters courtroom.)

THE COURT: Yes, Ms. Lane, go ahead and have a seat there again, if you would, please, ma'am. And,

109

Ms. Lane, I just wanted to bring you back and thank you for your time --

VENIREPERSON LANE: Uh-huh.

THE COURT: -- and effort in being with us today, but I am going to excuse you and release you from any further jury service in this case.

VENIREPERSON LANE: Okay.

THE COURT: Thank you so much for being here.

VENIREPERSON LANE: Thank you.

THE COURT: You be careful going home --

VENIREPERSON LANE: I know.

THE COURT: -- or to work or wherever you're headed.

MR. LOLLAR: Thank you, Ms. Lane.

THE COURT: Thank you, Ms. Lane. Bye-bye.

(Venireperson Lane exits courtroom.)

THE COURT: I'm just going to put on here juror disqualified because of theft conviction.

And you know what I'm going to do, Brad, if it's okay with you, I'm going to take your exhibit and I'm going to staple it to the back of her questionnaire.

MR. LOLLAR: Okay.

THE COURT: And then that way, it will all be together.

110

MR. LOLLAR: Okay.

THE COURT: Is that all right?

MR. LOLLAR: Sure.

THE COURT: Because you'd need that anyway.

MR. LOLLAR: We'll ask for the record that her questionnaire be a part of Defendant's Jury Selection Exhibit No. 1.

THE COURT: Okay. Very good.

MR. LOLLAR: Thank you.

MR. PARKS: Excellent.

(Recess, 11:41-1:27.)

(Open court, defendant present.)

MS. EVANS: State would offer State's Exhibit No. 1, the juror questionnaire of Juror No. 387, Peggy Fincher, to which the Judge also stapled her NCIC criminal history to. This juror was challenged for cause on the basis that she has what we believe to be a theft conviction and the Judge granted that challenge for cause.

THE COURT: Uh-huh.

(State's Exhibit No. 1 attached to Volume No. 19.)

THE COURT: Now, let's see. You want to keep that, though, don't you, to make a copy?

MS. EVANS: Uh-huh.

111

THE COURT: Okay. All right. Now, what else? We're ready to get these other folks in here.

Now, let's see. Now, we didn't do -- we didn't do a challenge for cause on that last one. I just --

MR. HIKEL: Excused.

THE COURT: -- yeah, I disqualified is what I put on the -- yeah, disqualify is what I put on the questionnaire, so...

(Recess, 1:29-1:30.)

(Open court, defendant present.)

THE COURT: Bring in Ms. Price.

THE BAILIFF: Judge, I don't think she's made it in yet.

THE COURT: Oh, she hasn't? Well, okay.

THE BAILIFF: She's one of the ones that hasn't made it in.

THE COURT: Well, check. And if she hasn't made it here, then bring in Juan Aguilera.

THE BAILIFF: And he hasn't made it in.

THE COURT: He hasn't made it in either?

THE BAILIFF: No, sir. The only two that are here are just Don Mills and Margo Parker --

THE COURT: Okay.

THE BAILIFF: -- as well as Vicki Roach.

112

THE COURT: Okay. All right. Those are the only two here?

MS. EVANS: And Ms. Roach.

THE COURT: Ms. Roach is here. Okay. Don Mills then.

THE BAILIFF: All rise for the juror.

(Venireperson Mills enters courtroom.)

THE COURT: Come in. How are you, sir?

VENIREPERSON MILLS: Fine.

THE COURT: Just go ahead and have a seat right there, if you would, please. You're Mr. Mills, right?

VENIREPERSON MILLS: Yes.

THE COURT: Now, how are you, Mr. Mills? I'm Judge Quay Parker.

VENIREPERSON MILLS: Nice to meet you.

THE COURT: I'm a Senior District Judge from McKinney, Texas, and Judge Michael Snipes is the Presiding Judge over this case, but he's asked me to assist him in the jury selection process. So that's why I'm here today instead of Judge Snipes. He's upstairs in his courtroom taking care of the day-to-day matters of the court while I'm down here helping him in this jury selection process.

Let's see. Now, let me get your --

113

Mr. Mills, let me get your -- we had a few that hadn't shown up yet, so I don't want to get them too much out of order. There we go. Okay. I don't think this will take very long, Mr. Mills, so let me just let the assistant -- one of the assistant district attorneys, Mr. Gordon Hikel, is going to talk to you at this time. And this is Mr. Hikel right down there on the end, so he'll be visiting with you for a few minutes.

VENIREPERSON MILLS: Okay.

THE COURT: Go ahead, Mr. Hikel.

MR. HIKEL: Thank you, Your Honor.

DON MILLS,

Venireperson No. 708, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Mr. Mills, good afternoon, sir.

A. Hi.

Q. You remember back on April 24th you filled out a questionnaire that you have in your hands there?

A. Yes.

Q. And on the very first page, you were asked a question about which one of these five viewpoints here correctly reflects your feelings on the death penalty. And you circled number four which specifies that while you believe it's appropriate in some murder cases, you

114

personally could never return a verdict which assessed the death penalty. Do you see that choice there?

A. Yes.

Q. Do you still feel that way today?

A. Yes.

Q. Okay. And you made it clear on your questionnaire, several answers you said that is not your place to do it, you just can't do it; is that correct?

A. Correct.

Q. And you still feel that way today?

A. Correct.

Q. Okay.

MR. HIKEL: I have no further questions, Judge.

THE COURT: Do you have any questions, Mr. Lollar?

MR. LOLLAR: Has Oak Cliff washed away? We both live down there, so.

VENIREPERSON MILLS: Kessler Park is still there.

MR. LOLLAR: Okay. Thank you, Mr. Mills.

VENIREPERSON MILLS: Is that it?

THE COURT: Yes, sir, that's it. Thank you very much for being here. You're excused.

VENIREPERSON MILLS: Thank you.

115

THE COURT: Thank you, sir.

(Venireperson Mills exits courtroom.)

THE COURT: Thank you. Be seated. Okay. Mr. Hikel?

MR. HIKEL: Yes. Because Juror No. 708 has a bias against the law that the State has the right to rely on, the State will challenge for cause.

MR. LOLLAR: No objection.

THE COURT: Okay. State's challenge for cause is granted. Prospective Juror No. 708, Don F. Mills is excused. Okay. That takes care of that one.

Let's see. Margo Parker, I think you said, was here, so bring Ms. Parker in.

THE BAILIFF: All rise for the juror.

(Venireperson Parker enters courtroom.)

THE COURT: Hi, Ms. Parker. How are you this afternoon?

VENIREPERSON PARKER: Fine.

THE COURT: Just have a seat right there, if you would, please, ma'am.

And thank you, ladies and gentlemen. Be seated, please.

Thank you for being here this afternoon.

VENIREPERSON PARKER: Uh-huh.

THE COURT: I'm Judge Quay Parker. I guess

116

we might be related somewhere back down the line, but, anyway, Judge Michael Snipes is the Presiding Judge over this case, but Judge Snipes has asked me to assist him in this jury selection process. So that's what I'm doing here today --

VENIREPERSON PARKER: Okay.

THE COURT: -- while Judge Snipes is upstairs in his courtroom taking care of the day-to-day matters of the court. He's got me down here assisting him in this case.

VENIREPERSON PARKER: Okay.

THE COURT: Anyway, we just wanted to get you in and ask you two or three questions. Don't think it will take very long. Ms. Parker, you'll recall probably, oh, it's been over a month ago when everybody got together in central jury, and at some point in the proceedings, Judge Snipes had everybody raise their hand and he administered the oath of a prospective juror to each panel member. Do you recall that?

VENIREPERSON PARKER: Uh-huh.

THE COURT: Okay. Were you one of the panel members who stood and took the oath at that time?

VENIREPERSON PARKER: Yes, sir.

THE COURT: Okay. All right. This little question and answer period, there's no right or wrong

117

answer, just how you feel concerning the law and some of the procedural aspects involved in the case. The attorneys are going to ask you some questions about your responses in your questionnaire. I know you haven't seen it in quite -- well, since then, since that day, probably, so I want to give that to you --

VENIREPERSON PARKER: Okay.

THE COURT: -- and so you can refer to it. And Mr. Gordon Hikel who is an assistant district attorney --

VENIREPERSON PARKER: Hi.

THE COURT: -- here in Dallas County is going to talk to you at this time. Okay?

VENIREPERSON PARKER: All right.

THE COURT: Mr. Hikel.

MR. HIKEL: Thank you, Your Honor.

THE COURT: Yes, sir.

MARGO PARKER,

Venireperson No. 768, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MR. HIKEL:

Q. Ms. Parker, good afternoon, ma'am.

A. Hi.

Q. Back on about April 24th, you filled out a questionnaire the Judge just gave to you there?

118

A. Yes, sir.

Q. On the very first page of the questionnaire, you were asked the question at the very bottom, which one of these five views or feelings best represents yours as pertaining to the death penalty.

A. Uh-huh.

Q. Okay. You circled number four which says that while you believe it's appropriate in some murder cases that you personally could never return a verdict which assessed the death penalty. Is that still how -- that's the way you feel today still?

A. Uh-huh. I do.

Q. Is that yes?

A. Yes, sir.

Q. Okay.

MR. HIKEL: No further questions, Judge.

THE COURT: All right. Thank you, Ms. Parker. We appreciate you being here. I told you it wasn't going to take very long.

VENIREPERSON PARKER: Okay.

THE COURT: But we do thank you for the time and effort you made to be with us this afternoon.

VENIREPERSON PARKER: Thank you.

THE COURT: Thank you very much, and you are excused.

119

VENIREPERSON PARKER: All right.

THE COURT: Thank you, ma'am.

VENIREPERSON PARKER: Bye-bye.

(Venireperson Parker exits courtroom.)

THE COURT: Okay.

MR. HIKEL: Go ahead?

THE COURT: Yes. Go ahead.

MR. HIKEL: Judge, Juror No. 768, the State would move to strike her for cause because based on her opinions of the death penalty, she has a bias against the law that the State is entitled to rely upon.

THE REPORTER: I'm sorry. Mr. Hikel, I couldn't hear you. Based on her?

MR. HIKEL: Yeah, I'm sorry. Based upon her -- what did I say, Brad?

MR. LOLLAR: Inability to follow the law.

MR. HIKEL: Yes. That's good enough.

THE COURT: Sounds good to me.

Okay. The State's challenge for cause will be granted, Prospective Juror No. 768, Margo Parker. Okay.

MR. PARKS: Price or Aguilera, either one of them show?

THE BAILIFF: No. But if you give me a minute and I'll go out in the hallway out there and check

120

to see if they're here.

THE COURT: Well, why don't we go ahead and before you do that, do you want to go ahead and get Ms. Price in here?

THE BAILIFF: Yes, sir.

THE COURT: Or excuse me, Ms. Roach. I'm sorry. I was looking at the wrong line. Ms. Roach. And then we can --

MR. PARKS: She's a full talker.

MR. HIKEL: She's a talker.

THE COURT: I know. I know. If they're not here, I mean, he can call and find out if they're coming in and if they come in, they can just wait. They should have been here.

THE BAILIFF: All rise for the juror.

(Venireperson Roach enters courtroom.)

THE COURT: Hi. Come in. How are you doing this afternoon? Just go ahead and have a seat right there, if you would, please, ma'am. Now, wait just a minute.

Go ahead. Be seated, please.

Let me find your questionnaire, Ms. Roach, Juror No. 519. Okay. Well, it's right here on top. There we go.

I would like for the record to reflect this

121

is Prospective Juror No. 519, Vicki, V-i-c-k-i, Roach, R-o-a-c-h. Are you related to any of the Roaches up in Collin County?

VENIREPERSON ROACH: Not that I know of.

THE COURT: There's two Judge Roaches up there. One's the district attorney now.

VENIREPERSON ROACH: No.

THE COURT: And his son is a district judge.

VENIREPERSON ROACH: Not that I know of.

THE COURT: Judge Roach who is now the DA was a district judge for years up there. It's kind of an unusual last name.

VENIREPERSON ROACH: It is.

THE COURT: So, anyway. Well, I'm Judge Quay Parker. I'm a Senior District Judge from Collin County, from McKinney, and the Presiding Judge is Judge Michael Snipes.

VENIREPERSON ROACH: Okay.

THE COURT: And Judge Snipes has asked me to assist him in this capital murder trial by presiding over the jury selection process, so, and I'm just telling you that to let you know why I'm here --

VENIREPERSON ROACH: Okay.

THE COURT: -- today instead of Judge Snipes who, incidentally, is also here today, but he's up in his

122

courtroom taking care of the day-to-day matters of the court while he's got me down here presiding over the jury selection process, so, anyway, and, consequently, that's why you're here today.

Everybody has a copy of your questionnaire that you filled out probably over a month ago now.

VENIREPERSON ROACH: Probably. Uh-huh.

THE COURT: Do you recall when everybody got together over a month ago --

VENIREPERSON ROACH: Yes.

THE COURT: -- and Judge Snipes talked to the panel?

VENIREPERSON ROACH: Uh-huh.

THE COURT: And then at some point in the proceedings, he had everybody stand up, raise their right hand, he administered the oath of a prospective juror to each of the panel members --

VENIREPERSON ROACH: Uh-huh.

THE COURT: -- I mean simultaneously, but you know, everybody --

VENIREPERSON ROACH: Yes.

THE COURT: Did you stand and take the oath at that time?

VENIREPERSON ROACH: Yes.

THE COURT: Okay. Very good. I'll just

123

remind you, you are still under that oath. And what you've been sworn to do, number one, is to give truthful answers, but we know you'd do that anyway; and, secondly, for you to respond to each and every question that is asked to you by either me or the attorneys that will be involved in this voir dire examination.

VENIREPERSON ROACH: Okay.

THE COURT: Okay. Now, have you had a chance -- and it looks like we've got several of them stacked up here, and I'm going to leave you with one.

VENIREPERSON ROACH: Okay.

THE COURT: Have you had an opportunity to look over the juror information guide there, I guess?

VENIREPERSON ROACH: Uh-huh.

THE COURT: I've forgotten what we called it now, but anyway, and you've had a chance to read that?

VENIREPERSON ROACH: Yes.

THE COURT: Well, that just kind of gives you a preview of what the attorneys are going to talk to you about today.

VENIREPERSON ROACH: Okay.

THE COURT: What they're -- kind of the way this is going to happen, they're going to explain the law to you in more detail than what you've already read. This is just kind of an introduction so that you kind of

12

have an idea of what they're talking about, and they'll explain it in more detail, then, maybe using examples and hypotheticals and that sort of thing.

VENIREPERSON ROACH: Okay.

THE COURT: And then once you understand it, then they're going to ask you question about your ideas, your opinions, your thoughts, concerning the law and the procedural aspects and the special issues --

VENIREPERSON ROACH: Okay.

THE COURT: -- that would be involved in the trial of this case or any capital murder case, for that matter. Okay?

VENIREPERSON ROACH: Okay.

THE COURT: Now, let me just tell you, Ms. Roach, there's no right or wrong answers to any of their questions. This is not a quiz.

VENIREPERSON ROACH: Uh-huh.

THE COURT: There's nothing going to be embarrassing asked to you or anything like that, so just relax, and I know it's kind of a strange situation --

VENIREPERSON ROACH: Uh-huh.

THE COURT: -- for you to be in, and most everybody comes in a little nervous, but we're all -- nobody's here to trip you up or trick you or anything like that.

125

VENIREPERSON ROACH: Okay.

THE COURT: I'm going to give you your questionnaire. I know you haven't seen it in over a month, but they're going to want you to turn to certain questions. They'll tell you which ones --

VENIREPERSON ROACH: Okay.

THE COURT: -- and probably ask you why you responded in a certain way or to expand that response, you know, what have you. All right?

VENIREPERSON ROACH: All right.

THE COURT: Okay. Now, let me introduce you to the attorneys that are going to be involved in this -- in this case. This is Ms. Elaine Evans seated right across from me. And next to her is Ms. Andrea Handley. And then next to her is Mr. Gordon Hikel.

MR. HIKEL: Hello, ma'am.

THE COURT: And these ladies and gentleman are all three assistant district attorneys here in Dallas County, and there's two other attorneys that are members of the prosecution team, but they comprise three-fifths, I guess, of the prosecution team and they're charged with the responsibility of prosecuting this case.

And then seated next to me down here, Mr. Brad Lollar, Mr. Doug Parks, and on the end down there, Ms. Keri Mallon. And these three attorneys are

126

comprising the Defense --

VENIREPERSON ROACH: Okay.

THE COURT: -- team, and then seated next to Ms. Mallon is Mr. James Broadnax and he's the defendant in this case and their client. All right?

VENIREPERSON ROACH: All right.

THE COURT: Go ahead, Ms. Evans. Thank you.

VICKI ROACH,

Venireperson No. 519, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. EVANS:

Q. Good afternoon, Ms. Roach.

A. Good afternoon.

Q. Did you come by boat or car today?

A. Car. I know.

Q. I didn't know if people were having to float in at this point.

A. It's pretty bad, yes.

Q. We couldn't hear a lot of the jurors this morning because it was so noisy with all the thunder booms, so maybe we'll at least be able to carry on a conversation in normal tones of voice.

A. Yes.

Q. Great. Well, as the Judge told you, there are

127

no right or wrong answers.

A. Okay.

Q. I like to think of a trial as being in three phases. Some people cut it down to two, but I really say there's three, and this is the first phase. And it's the only opportunity that the lawyers have to talk to you.

A. Okay.

Q. You know, during the trial, we can't poll you and say, hey, what do you think about that now, you know, and then say, well, we don't like how they answered. I mean, this is our only opportunity --

A. Okay.

Q. -- so we just want to know how you feel about certain things as we talk to you here today in this portion of the trial. And then if you are asked to serve as a juror, you will go on and then hear evidence in that second phase, the guilt/innocence phase. And if you find the defendant guilty of capital murder, and only if you find the defendant guilty of capital murder, will you go on then to answer the special issues in the punishment phase of the trial. Okay?

So that's kind of how things will proceed. And we'll talk a bit more about the process in a bit. But, first, I want to refer to your questionnaire. I notice in there you were kind of asked a question at one

128

point or another, and, like I said, it's been a month --

A. Uh-huh.

Q. -- so you probably don't remember a lot about the questions in here, hope to put them out of your mind maybe. But at one point, you were asked if you think that jurors should do what they think they should do or should they go by the law as the Judge gives it to you. And you answered very appropriately, you have to go by the law. And that's why we talk to you is we want to make sure, first, that you understand the law, and, secondly, if you were seated as a juror, are you going to be able to follow the law as given to you, because not everybody -- you know, we've talked to some people that come in and they are so strongly in favor of the death penalty that they would, you know, for every single person that is found guilty of capital murder, they would automatically, you know, split decision there, they would say, hey, you know, death, maybe hang them out on the courthouse lawn.

We've talked to other people who would say, I could never under any circumstance, I don't care if it's the most heinous, horrible, horrific crime I've ever seen, they could never give the death penalty for their own personal, moral, religious reasons. And we're not here to judge any of that.

A. Okay.

Q. But based on your questionnaire, it looks like you're very level-headed, fair-minded, and could base your verdict on the law and the --

A. Uh-huh.

Q. -- evidence as given to you, and I appreciate you saying that you have to go by law, by the law. I see that you've never served as a juror before; is that correct?

A. That's true.

Q. And, you know, you don't have to have served as a juror to be able to sit here on a capital murder jury, and you don't have to remember the laws that we talk about here today because they will be given to you at a later date if you were to serve as a juror in this case. Okay?

A. Okay.

Q. But let's look at some of your thoughts and beliefs on the death penalty.

A. Okay.

Q. I see on the first page, you are in favor of the death penalty, and you say that if you take a person's life, you should pay for it with your life.

A. Uh-huh.

Q. And then on the very next page, page 2 at the top, you do check the blank, yes, that you do agree, while you're in favor of the death penalty in some cases, a life sentence rather than death would be appropriate under the proper circumstances in some cases as well.

A. Uh-huh.

Q. Is that how you feel?

A. I do.

Q. And, so, basically that is all that we could ask of any qualified juror is just will you wait and listen to the evidence, the facts of the case, the circumstances of it --

A. Uh-huh.

Q. -- wait to hear what you hear, wait until the State proves to you --

A. Uh-huh.

Q. -- if we're able to, the elements of the indictment that a person is guilty of capital murder and then, again, wait in that punishment phase before you wait and assess have we proven to you beyond a reasonable doubt the issues in Special Issue 1 and Special Issue 2 and Special Issue 3, because each phase, the guilt/innocence phase is separate from the punishment phase. It stands alone. So just because you find somebody guilty of capital murder, you don't automatically then jump and say, well, guilty of capital

murder, they're getting the death penalty. You don't even go back there and answer those questions in such a way to say, hey, should we vote life or should we vote -- vote -- vote death.

A. Uh-huh.

Q. You don't do that. You answer by way of special issues, and based on how you answer those determines whether or not the person is sentenced to life without parole or receives the death penalty.

A. Uh-huh.

Q. So it's just very important to wait if and until the State proves to you what we are required to prove to you before you make any decision. Okay? And it appears, like I said, that you can do that.

And going on in your questionnaire, I do see that you're in favor of an eye for an eye, but you also right below that say that a lifetime in prison is equivalent, in your mind, to the death penalty. Can you explain what you mean by that?

A. I just think that's kind of a death to me. I mean, I would -- it would be -- to me, it would be like living -- I mean, it's not living. You're confined, and I don't know.

Q. I understand what you're saying, and I appreciate that basically to lose your freedom --

A. Yes.

Q. -- for the rest of your life and live in prison, in your mind --

A. It would be kind of a death.

Q. -- would kind of be a death sentence, correct? But can you also appreciate that death is different, the death penalty is a different --

A. Yes.

Q. -- type of punishment than life without parole?

A. Yes.

Q. And do you still believe that it's called for in certain circumstances?

A. In certain circumstances, yes.

Q. Okay. And no one's going to ask you today to tell us, okay, in what situation and what circumstance can you think of in your mind that would be a death penalty case.

A. Uh-huh.

Q. Okay? Now tell us one that would be a life without parole case. No one's going to tie you down to that or hold you to that. Okay? We just want you basically -- you've probably heard the phrase, you know it when you see it.

A. Uh-huh.

Q. If it is the type and quality of the case that

you believe deserves answering the special issues in such a way, yes, yes, and no, that would then render a death sentence, we just ask that you do that. Okay?

A. Uh-huh.

Q. And, also, on page 5, you do say, while we're not going to hold you down to give us examples --

A. Right.

Q. -- you do say what would be important to you in deciding whether a person receives death instead of life would be how the murder was done.

A. Uh-huh.

Q. What do you mean by that?

A. If you set out, if that's what you were intending to do, if it was an accidental -- you know, that's to me somewhat different.

Q. Okay.

A. Unless it happened to one of my family members, then it might be different.

Q. Hey, I think even the most staunch opponent of the death penalty, if it happened to one of their family members --

A. Yeah.

Q. -- they may view it differently.

A. Yes.

Q. So I understand what you're saying. Let me clarify for you, and, like I said, we're going to go more into the law in this case here in a bit. But when you say if it was something intentional --

A. Uh-huh.

Q. -- that they set out to do, that, in fact, is the type of case that you would hear evidence on in this capital murder, because capital murder in this case is going to be murder plus a robbery as the aggravating factor.

A. Uh-huh.

Q. There's all sorts of other ways to commit capital murder, and we'll talk about that as well.

A. Okay.

Q. But in this case, we're talking about murder plus a robbery. Okay? And in this type of capital murder, it has to be intentional.

A. Uh-huh.

Q. No mistake about it. No accident. It is what the person set out to do was to cause the death. Okay?

A. Uh-huh.

Q. The State has to prove that to you --

A. Okay.

Q. -- beyond a reasonable doubt. So just because it's that type of case --

A. Uh-huh.

Q. -- that we are going to have to prove to you an intentional act, that it was not a mistake, it wasn't an accident, and that it happened in the course of a robbery, do you think that all of those are deserving of the death penalty?

A. Yes.

Q. Okay. Let me explain to you, there could be -- we're -- we're going to come back to that.

A. Okay.

Q. Let me first ask you or explain to you that if you -- like you said, if it was an accident --

A. Uh-huh.

Q. -- basically, that person would be not guilty.

A. Okay.

Q. Because we wouldn't have proved to you that it was an intentional act. Okay?

A. Yes.

Q. It's -- we'd have to prove to you it was what someone set out as doing, so you wouldn't even be called upon --

A. Uh-huh.

Q. -- to assess any punishment or called upon to answer special issues --

A. Uh-huh.

Q. -- because it would be not guilty. Make sense to you?

A. Yes.

Q. And the same goes if you heard evidence that something happened in self-defense. Those are legal justifications, defenses, you know, mistake, accident.

A. Uh-huh.

Q. We would not have proven our case to you at that point. Okay?

A. Okay.

Q. And we just ask that you wait and determine, have we proven it to you. Can you do that?

A. Uh-huh.

Q. Okay. Looking at page 3, and you may have just misunderstood what we were asking you here. The last question, What one hears in the news media is a better source of information than testimony one hears in the courtroom, and you said that you agree with that. What do you mean by that?

A. As far as this case? I mean...

Q. For -- well, yeah. Let me give you --

A. Uh-huh.

Q. And I think I know what you're getting at.

A. Uh-huh.

Q. Sometimes the media reports things that people don't hear.

137

A.  Uh-huh.

Q.  Is that what you're meaning?

A.  Or if you saw something.

Q.  Okay.  I think I know what you're saying, but, basically, the laws that will be given to you is that you are only allowed to render a verdict based on the law and the evidence as it comes from that witness stand and from the law the Judge gives you.  Okay?

A.  Uh-huh.

Q.  Evidence only comes from the witness stand, not from any outside source.  And so, basically, if you heard something in the news media --

A.  Uh-huh.

Q.  -- or if you saw something with your own eyes --

A.  Uh-huh.

Q.  -- that did not occur there in the courtroom --

A.  Uh-huh.

Q.  -- in the form of evidence, it would not be something you could consider in your deliberations.  Does that make sense?

A.  It makes sense.  It would be -- probably be -- it might be kind of hard --

Q.  Okay.  But --

A.  -- to me.

Q.  -- could you assure both parties that if you

138

were instructed to do that, that you would not consider any outside information in rendering a verdict in this case?

A.  I mean, I could say yes, but I don't know.  I mean, would it really affect me?  Yes.  I have seen -- I have -- I did see it on the news.

Q.  Okay.  Okay.  I'm glad you brought that up.  Because here, I think, at the time, it didn't ring a bell to you.

A.  No.

Q.  When you say that you did and you have seen this on the news --

A.  Uh-huh.

Q.  -- what did you see on the news?

A.  I saw the interview.

Q.  The interview of?

A.  From the jail, I guess the reporter was interviewing him.

Q.  Okay.  And when you say him, are you referring to this defendant?

A.  Uh-huh.

Q.  Okay.  Based on the interview that you saw from the jail --

A.  Uh-huh.

Q.  -- have you already formed an opinion as to the

139

guilt of --

A.  He said he --

Q.  -- this defendant?

A.  He said he did it.  I'm sorry.

Q.  That's okay.  She can only take down one of us.

A.  Okay.

Q.  Go ahead.

A.  He said he did it, and I was -- I was thinking how can -- how can someone sit there and say they did it and it's, you know, on the record, it's filmed, and then plead not guilty.

Q.  Okay.

A.  It's --

Q.  And so I understand what you're saying now.  So based on what you saw, have you already formed an opinion?

A.  Well, he said he did it.  I mean --

Q.  Okay.

A.  -- I just want to be very honest.

Q.  I -- no.  We just want to know your answer because this defendant, as is every criminal defendant, whether it's a speeding ticket, a DWI --

A.  Uh-huh.

Q.  -- or this capital murder, they're entitled to the presumption of innocence.

14

A.  I understand.

Q.  So if you tell me you can't do it, nobody's going to --

A.  I don't know.

Q.  -- hold that against you.  Okay?  And so as he sits here right now, you would presume him --

A.  Guilty.

Q.  -- to be guilty?

A.  Yeah.  Because I don't think you'd go on TV and say you did it --

Q.  Okay.

A.  -- if you didn't do it.

Q.  I understand.  Thank you.

A.  I'm sorry.

MS. HANDLEY:  Don't apologize.

THE COURT:  Well, thank you so much, Ms. Roach.  We appreciate the time and effort you've made to be with us today.  Thank you so much.  And I'm going to excuse you from further jury service in this case.

VENIREPERSON ROACH:  All right.

MS. HANDLEY:  Thank you, ma'am.

THE COURT:  Thank you so much.  Appreciate your time.

VENIREPERSON ROACH:  Thank you.

THE COURT:  Bye-bye.

THE BAILIFF: Here's your excuse right here, Ms. Roach.

(Venireperson Roach exits courtroom.)

THE COURT: Okay. Ms. Evans, would you like -- does the State have a challenge for cause?

MS. EVANS: Yes, Your Honor. State would submit Juror No. 519, Vicki Roach, in that she cannot afford this defendant his presumption of innocence.

MR. LOLLAR: No objection.

THE COURT: Okay. Thank you. The State's challenge for cause is granted. Prospective Juror No. 519, Vicki Roach, will be excused from further jury service in this case.

We're off the record now.

(Off-the-record discussion, 1:57-1:57.)

(Open court, defendant present.)

THE COURT: Let me go ahead and put on the record that my bailiff did call Ms. Price who is Prospective Juror No. 341, Christie, C-h-r-i-s-t-i-e, Price, P-r-i-c-e, and that Ms. Price informed my bailiff that her daughter had suffered an acute asthma attack and that she was taking care of her and could not leave her, and so that was the reason that she hadn't shown up yet for her jury service in this case.

And I will just ask the State, can you agree, Ms. Price has reflected that she's a five on her questionnaire, saying that she could never under any circumstances return a verdict which assessed the death penalty, and then also she says, I don't favor the death penalty -- question number one, or it's not numbered, but, anyway, it says, Do you favor the death penalty, and she checked no. And then in her explanation she says, I don't favor the death penalty because I'm a true believer in God and a faithful Christian and the Lord's word says thou shalt not kill and that's what I live and believe in. And then I'm sure there's other points in her questionnaire where she refers to her Christian belief and -- and her not being in favor of the death penalty.

MS. HANDLEY: She does.

THE COURT: Ms. Handley, do you have anything else you'd like to add to that?

MS. HANDLEY: No, sir. We agree to that, throughout her questionnaire she states she has moral, religious, and personal beliefs that prevent her from sitting in judgment of another human being in addition to returning a verdict that would result in the execution of another human being. It's pretty obvious from her questionnaire, we have -- we take no qualms with what the Court has stated.

THE COURT: Yeah. Okay.

MR. LOLLAR: Well, the Defense thinks she would be a fine juror.

THE COURT: Right. I'm sure you do.

MR. PARKS: But in light of her medical emergency, we'll agree.

THE COURT: Okay. All right.

MS. HANDLEY: Please note the sarcasm for the record from defense counsel.

THE COURT: So should I just let the record reflect that she's being excused by agreement of parties?

MR. LOLLAR: Yes, sir.

MS. HANDLEY: Yes.

THE COURT: All right. Very good. Thank you very much. And Prospective Juror No. 5 -- or excuse me, I'm sorry -- 341, Ms. Christie Price, will be excused by agreement of parties. Okay.

Now, let's see, Mr. Augusta is here now?

THE BAILIFF: Aguilera.

THE COURT: Aguilera. I'm sorry. Aguilera.

THE BAILIFF: All rise for the juror.

(Venireperson Aguilera enters courtroom.)

THE COURT: Come in, yes, sir. How are you today?

VENIREPERSON AGUILERA: Good.

THE COURT: Good. Mr. Aguilera, is that correct?

VENIREPERSON AGUILERA: Yes.

THE COURT: Yeah. Just go ahead and have a seat there, if you would, please, sir.

Thank you, ladies and gentlemen. Be seated, please.

And this is Prospective Juror No. 496, Juan Aguilera. And, Mr. Aguilera, I'm Judge Quay Parker. I'm a Senior District Judge from up the road here in McKinney.

VENIREPERSON AGUILERA: Nice to meet you.

THE COURT: And thank you. Nice to meet you, sir. Thank you for being here. And Judge Michael Snipes is the Presiding Judge over this case, but Judge Snipes has asked me to assist him in the jury selection process, so that explains to you why I'm here today instead of Judge Snipes.

VENIREPERSON AGUILERA: Okay.

THE COURT: And, consequently, that's why you're here today too. So we're just going to get right in to the lawyers speaking to you.

And, Ms. Evans, are you going to be the one or Ms. Handley?

MS. HANDLEY: I'll go ahead and ask.

145

THE COURT: Ms. Handley. All right. Yeah, Ms. Handley. Go ahead.

JUAN AGUILERA

Venireperson No. 496, testified as follows:

VOIR DIRE EXAMINATION BY THE STATE

BY MS. HANDLEY:

Q. How are you this afternoon?

A. Good.

Q. Okay. I'm glad you made it here all right with all this rain. I'm just going to ask you a couple questions. Okay?

A. Okay.

Q. I noticed from your questionnaire, sir, that you -- when asked about your feelings about the death penalty, you stated that you were not in favor of it. You said, I'm not in favor of any laws that could take anybody's life. You then also, with reference to what best represents your feelings, you circled number five, where you said, I could never under any circumstances return a verdict which assessed the death penalty. Are those your feelings, sir?

A. Yes.

Q. You'd also stated throughout your questionnaire, particularly on page 2, that you do have moral, religious, and personal beliefs that would prevent you

146

from sitting in judgment of another person, in addition to returning a verdict that may result in the execution of another human being. Is that still your --

A. Yes.

Q. -- feelings today, sir? Okay.

MS. HANDLEY: Then that's all the questions I have, Your Honor.

MR. LOLLAR: We have no questions. Thank you.

THE COURT: All right. Thank you very much for being here, Mr. Aguilera. You can just leave that right there.

VENIREPERSON AGUILERA: All right.

THE COURT: Good to go. Thank you, sir.

VENIREPERSON AGUILERA: Thank you.

THE COURT: Appreciate your time.

(Venireperson Aguilera exits courtroom.)

THE COURT: Okay. Ms. Handley --

MS. HANDLEY: Yes, sir.

THE COURT: -- does the State have a challenge for cause?

MS. HANDLEY: We would challenge Juror No. 496 in having a bias against law that we have a right to depend on, Your Honor.

THE COURT: Okay.

147

MR. LOLLAR: No objection.

THE COURT: All right. Thank you. Then Prospective Juror No. 496, Juan Aguilera, the State's challenge for cause will be granted, and Mr. Aguilera will be excused from further jury service in this case.

(End of proceedings, 3:29 p.m.)

148

CERTIFICATE

THE STATE OF TEXAS    )

COUNTY OF DALLAS      )

I, Heather H. Vezina, Deputy Official Court Reporter in and for Criminal District Court No. 7 of Dallas County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE 24th DAY OF _____ 2009.

HEATHER H. VEZINA, CSR No. 6559
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

149

DISCLOSURE

Note: Supreme Court Rule Adopted and Promulgated in Conformity with Chapter 52 of the Government Code, V.T.C.A.

Please be advised that pursuant to Supreme Court Rule IV, B.4. With regards to disclosure, I, to the best of my knowledge, have no existing or past financial, business, professional, family or social relationships with any of the parties or their attorneys which might reasonably create an appearance of partiality, except as follows:

HEATHER H. VEZINA, CSR #6589
Deputy Official Court Reporter
Criminal District Court No. 7
133 North Industrial Boulevard
Dallas, Texas 75207
Certification Expires 12/31/11

Jury Questionaires

Exhibits

Cannot be Copied

appeals    150

------------------------

## —

------------------------

## A

abide  (20:12)(22:13)
(24:13)(80:15)(88:24)
ability  (13:23)(53:3)
able  (51:9)(67:18)(77:5)
(91:13)(105:21)(106:10)
(126:22)(128:12)(129:12)
(130:16)
above  (148:7)
above-entitled  (1:19)
above-styled  (148:11)
absent  (3:17)(4:9)
absolutely  (28:7)(39:18)
(45:25)(46:3)(51:13)
abundance  (103:22)
academic  (43:12)
accent  (33:16)
accept  (24:14)(37:11)
(37:14)(37:21)(68:23)
(69:3)
acceptable  (89:13)(106:7)
accepted  (3:7)(79:18)
access  (81:5)
accessory  (34:8)(34:11)
accident  (60:1)(61:4)
(63:2)(72:20)(134:18)
(135:3)(135:11)(136:5)
accidental  (133:14)
accomplish  (62:15)
accounts  (92:5)(92:9)
accurate  (60:15)
accused  (18:9)(21:5)
(41:10)(68:11)
accusing  (21:6)(22:14)
acquainted  (93:16)
across  (9:1)(125:14)
act  (24:1)(26:11)(26:14)
(27:15)(47:20)(60:20)
(61:1)(61:2)(61:7)(61:8)
(61:14)(62:14)(71:9)
(135:2)(135:16)
action  (79:19)
acts  (24:22)(26:3)(26:4)
(26:6)(26:21)(61:5)
(73:17)(76:10)(77:24)
(78:6)(82:13)
actually  (7:1)(28:1)
(79:13)(81:4)
acute  (141:21)
add  (108:1)(142:16)
adding  (65:4)
addition  (88:13)(142:20)
(146:1)
additional  (74:14)
additionally  (87:10)
adjourned  (4:12)
adjudicated  (107:5)
adjudication  (102:10)
(102:19)(102:23)(103:4)
(103:5)(103:16)(104:17)
(107:4)
administer  (92:22)
administered  (6:18)
(96:8)(116:18)(122:16)
admissible  (75:2)(75:6)
admitted  (74:24)
admonish  (92:9)
adopted  (149:2)
adult  (43:16)(43:21)
(43:25)(45:4)(47:13)
(47:15)(47:19)
adults  (42:12)(43:18)
(45:3)

advised  (149:5)
affect  (74:2)(138:5)
afford  (141:8)
african-american
after  (58:4)(83:14)
(101:2)
afternoon  (113:16)
(115:17)(115:23)(117:22)
(118:22)(120:18)(126:13)
(126:14)(145:7)
afterwards  (27:15)
again  (10:10)(16:9)
(24:20)(25:22)(26:6)
(35:19)(35:23)(36:8)
(38:1)(38:17)(41:8)
(44:25)(45:20)(49:18)
(64:18)(65:11)(67:4)
(84:20)(108:25)(130:18)
against  (30:16)(43:17)
(45:3)(76:11)(115:6)
(119:10)(140:5)(146:23)
age  (16:17)(36:8)(37:19)
(44:8)(44:14)(44:22)
(47:21)(64:11)
agency  (103:8)
aggravated  (16:4)
aggravating  (16:25)
(17:6)(134:8)
aggrieved  (55:23)(56:2)
ago  (6:12)(51:5)(71:17)
(95:25)(97:18)(98:11)
(98:21)(100:24)(116:15)
(122:6)(122:9)
agree  (24:6)(27:8)(31:8)
(37:7)(44:21)(70:17)
(130:1)(136:17)(142:1)
(142:17)(143:5)
agreed  (59:6)
agreement  (3:18)(143:10)
(143:17)
aguilera  (3:19)(4:4)
(111:19)(119:22)(143:19)
(143:20)(143:22)(143:25)
(144:1)(144:3)(144:9)
(144:12)(144:19)(145:3)
(146:11)(146:13)(146:15)
(146:17)(147:3)(147:4)
ahead  (5:10)(49:18)
(90:4)(94:20)(100:8)
(105:9)(108:16)(108:24)
(112:10)(113:10)(119:6)
(119:7)(120:2)(120:3)
(120:18)(120:21)(126:7)
(139:7)(141:17)(144:4)
(144:25)(145:2)
aid  (34:15)
aided  (34:15)(35:2)
ain't  (25:4)(37:23)
alcohol  (37:18)
alien  (23:12)
alive  (56:7)
all  (5:4)(5:8)(5:15)
(8:6)(8:12)(9:7)(9:22)
(11:1)(11:10)(11:13)
(11:17)(15:1)(16:20)
(17:3)(17:4)(17:18)(20:5)
(20:7)(20:19)(20:22)
(21:4)(22:24)(22:25)
(23:7)(24:8)(25:4)(26:5)
(27:10)(32:5)(32:7)
(32:20)(33:3)(33:9)
(33:22)(34:4)(35:21)
(35:24)(36:12)(36:14)
(36:20)(37:2)(37:19)
(38:2)(39:24)(40:7)(40:8)
(41:15)(42:5)(42:10)
(47:11)(48:7)(48:23)

(49:10)(49:11)(49:15)
(51:20)(52:2)(53:11)
(54:16)(54:22)(55:3)
(56:13)(57:1)(57:13)
(59:7)(60:15)(68:4)(68:8)
(68:14)(70:13)(72:1)
(72:17)(72:22)(73:7)
(77:21)(81:22)(82:17)
(82:25)(83:12)(84:17)
(84:21)(86:1)(87:13)
(88:4)(88:11)(89:20)
(90:2)(92:20)(93:12)
(94:9)(94:14)(94:18)
(97:3)(97:5)(97:22)(98:5)
(101:19)(103:11)(106:16)
(107:23)(108:22)(109:24)
(110:2)(111:1)(112:1)
(112:6)(115:14)(116:24)
(117:14)(118:17)(119:1)
(120:15)(124:23)(125:9)
(125:10)(125:18)(126:5)
(126:6)(126:21)(130:8)
(134:11)(135:4)(140:20)
(143:6)(143:14)(143:21)
(145:1)(145:9)(145:10)
(146:6)(146:10)(146:13)
(147:2)(148:8)(148:11)
allegations  (59:6)(59:13)
alleged  (18:7)(21:9)
(21:13)(21:20)(21:25)
(43:21)(59:3)(64:16)
allow  (41:12)(103:23)
(106:2)
allowed  (56:1)(137:6)
allows  (28:25)
almost  (12:10)(75:5)
alone  (28:9)(28:21)
(29:3)(53:12)(73:14)
(130:23)
along  (8:21)(10:13)
alphabetical  (4:1)
already  (40:5)(41:4)
(71:22)(72:9)(84:14)
(90:21)(123:24)(138:25)
(139:15)
also  (6:8)(13:21)(16:7)
(17:12)(20:8)(40:3)
(42:10)(51:7)(56:9)(64:6)
(82:10)(92:6)(95:19)
(96:23)(107:19)(108:1)
(110:15)(121:25)(131:16)
(132:6)(133:5)(142:4)
(145:17)(145:23)
altogether  (67:5)
always  (47:17)(47:20)
(64:21)(103:8)
ambulance  (62:11)
amendment  (21:4)
amendments  (87:8)
among  (31:23)(46:1)(80:3)
amongst  (39:7)(45:23)
amount  (50:8)

## —

-and-  (2:4)(2:5)(2:15)
(2:19)

## A

andrea  (2:3)(9:4)(125:14)
ann  (3:8)(4:5)(4:24)
(95:1)(97:24)(100:9)
another  (24:12)(26:4)
(26:5)(54:3)(56:17)
(60:13)(60:19)(61:24)
(62:13)(64:1)(64:15)
(64:19)(65:4)(72:13)
(73:14)(73:22)(74:1)

(79:5)(79:19)(81:21)
(82:12)(108:9)(128:1)
(142:20)(142:22)(146:1)
(146:3)
answer  (8:15)(17:18)
(18:4)(18:12)(28:10)
(28:16)(29:23)(31:1)
(31:2)(32:10)(32:13)
(32:14)(35:9)(35:17)
(35:18)(38:13)(38:14)
(43:22)(44:4)(45:8)
(47:17)(55:18)(70:5)
(72:25)(73:1)(73:2)(73:8)
(74:2)(75:10)(76:24)
(77:17)(78:22)(80:3)
(83:5)(116:25)(117:1)
(127:20)(131:2)(131:6)
(131:7)(135:23)(139:20)
answered  (14:5)(15:22)
(35:7)(73:4)(78:23)(82:7)
(82:25)(127:10)(128:8)
answering  (27:19)(73:16)
(73:18)(81:2)(82:10)
(84:7)(84:9)(84:22)
(86:20)(133:1)
answers  (7:2)(8:3)(8:9)
(10:16)(54:8)(88:10)
(96:22)(114:7)(123:3)
(124:15)(127:1)
anticipate  (90:21)(91:2)
anticipated  (35:12)
any  (8:3)(13:25)(17:25)
(23:8)(33:21)(34:22)
(38:1)(44:7)(44:14)
(45:17)(48:2)(51:23)
(53:21)(54:8)(58:6)(59:7)
(61:21)(63:20)(64:4)
(68:6)(68:9)(70:24)
(71:15)(71:16)(74:20)
(75:3)(75:12)(75:23)
(76:22)(85:22)(87:4)
(91:22)(92:9)(92:10)
(93:7)(93:8)(98:12)
(99:10)(100:3)(104:22)
(105:3)(105:21)(109:6)
(114:15)(121:2)(124:11)
(124:15)(128:21)(128:25)
(130:9)(131:13)(135:22)
(137:11)(138:2)(142:2)
(145:16)(145:19)(148:15)
(149:9)
anybody  (71:6)(71:20)
(75:25)(81:19)(91:13)
anybody's  (145:17)
anyone  (99:6)(99:7)
anything  (8:5)(11:8)
(25:1)(26:5)(37:17)(44:9)
(49:6)(51:22)(52:24)
(54:7)(54:23)(55:7)
(56:15)(58:21)(63:10)
(63:12)(73:10)(75:14)
(77:20)(85:6)(91:6)
(91:23)(92:3)(92:5)(92:6)
(97:21)(98:16)(98:18)
(99:1)(99:10)(99:12)
(101:14)(101:17)(108:20)
(124:19)(124:24)(142:16)
anything's  (75:20)
anyway  (6:7)(7:2)(7:21)
(8:2)(8:8)(8:24)(62:4)
(68:6)(91:16)(110:4)
(116:2)(116:12)(121:14)
(122:3)(123:3)(123:16)
(142:6)
anywhere  (12:1)
apologize  (95:6)(140:15)
appeals  (46:18)(76:8)

HEATHER H. VEZINA, CSR

appear                                                                    big-shot    151

| | | | |
|---|---|---|---|
| appear (104:21) | (77:22) | (29:3)(29:10)(30:25) | (33:13)(36:6)(36:22) |
| appearance (149:10) | ask (7:22)(8:13)(10:15) | automatically (14:3) | (38:10)(38:12)(55:4) |
| appearing (2:10)(2:24) | (13:21)(27:20)(28:2) | (28:14)(28:16)(29:10) | (62:10)(62:19)(63:2) |
| appears (105:4)(131:13) | (28:23)(43:11)(44:25) | (29:19)(30:23)(59:21) | (78:14)(106:5)(106:7) |
| applied (8:8) | (47:11)(48:4)(48:8)(53:7) | (128:17)(130:25) | (106:8)(106:12)(106:14) |
| applies (19:24)(67:7) | (55:19)(64:12)(83:14) | autopsy (21:17) | (106:22)(120:3)(129:8) |
| (70:2)(83:11) | (86:3)(101:20)(103:25) | available (64:10) | (130:18)(131:13) |
| appreciate (5:23)(93:15) | (110:5)(116:13)(117:3) | aware (88:5) | begin (11:18)(39:21) |
| (118:18)(129:6)(131:25) | (124:6)(125:7)(130:8) | away (114:17) | beginning (51:18)(51:19) |
| (132:6)(140:17)(140:22) | (132:14)(133:3)(135:10) | | behalf (2:10)(2:24)(9:3) |
| (146:16) | (136:10)(141:25)(144:25) | **B** | behavior (79:18) |
| appropriate (113:25) | (145:10) | back (10:12)(23:10) | behind (62:3) |
| (118:8)(130:3) | asked (6:3)(6:16)(7:4) | (24:21)(44:25)(51:22) | being (14:19)(37:21) |
| appropriately (128:8) | (10:14)(15:3)(15:4)(24:9) | (52:9)(56:22)(58:6)(60:6) | (39:5)(42:12)(42:20) |
| approximately (11:20) | (24:19)(31:5)(38:1) | (67:7)(71:24)(71:25) | (43:25)(44:2)(45:12) |
| april (10:12)(113:18) | (41:16)(66:5)(72:8) | (72:4)(72:17)(75:13) | (46:8)(48:4)(51:9)(57:25) |
| (117:24) | (72:14)(88:17)(95:11) | (76:22)(86:5)(89:8) | (64:19)(91:12)(98:18) |
| archaeology (67:24) | (96:7)(96:24)(99:14) | (89:16)(92:1)(101:6) | (101:10)(105:18)(105:23) |
| archives (92:2) | (112:19)(113:21)(116:3) | (101:10)(101:24)(108:16) | (106:11)(109:4)(109:8) |
| are (5:7)(7:1)(7:11) | (118:3)(121:19)(123:5) | (109:1)(109:22)(113:18) | (114:24)(115:23)(118:18) |
| (7:25)(8:25)(9:8)(9:19) | (124:19)(127:15)(127:25) | (116:1)(117:24)(131:2) | (127:3)(142:13)(142:20) |
| (9:20)(10:25)(11:15) | (128:5)(144:16)(145:14) | (135:8) | (142:22)(143:10)(144:14) |
| (11:23)(13:17)(14:5) | asking (53:2)(54:22) | background (35:24)(36:9) | (146:3)(146:11) |
| (14:8)(14:18)(14:20) | (105:17)(136:14) | (36:15)(82:18) | belief (46:10)(55:20) |
| (15:3)(15:5)(15:22) | asks (32:8)(84:8) | bad (36:10)(67:20) | (142:12) |
| (16:17)(20:7)(20:11) | aspects (7:25)(117:2) | (126:19) | beliefs (129:19)(142:19) |
| (21:18)(23:21)(24:18) | (124:8) | badder (33:5) | (145:25) |
| (25:24)(28:9)(29:10) | assault (16:5)(26:5) | bailiff (5:4)(49:15) | believe (10:1)(10:25) |
| (29:16)(29:20)(31:8) | (26:24)(26:25)(27:1) | (86:4)(90:2)(94:14) | (11:1)(11:20)(12:24) |
| (31:12)(31:15)(31:18) | (27:13) | (108:18)(108:22)(111:13) | (14:14)(14:21)(14:22) |
| (31:20)(32:11)(32:12) | assess (106:22)(106:24) | (111:16)(111:20)(111:22) | (14:25)(15:12)(17:11) |
| (35:16)(37:8)(37:16) | (130:19)(135:22) | (111:25)(112:6)(115:14) | (17:12)(20:22)(25:24) |
| (38:22)(41:2)(43:24) | assessed (20:25)(114:1) | (119:24)(120:5)(120:15) | (28:1)(31:12)(31:15) |
| (46:10)(46:20)(49:2) | (118:10)(142:3)(145:20) | (141:1)(141:18)(141:20) | (31:18)(31:25)(34:24) |
| (49:8)(49:22)(50:3)(51:1) | assist (6:3)(95:11) | (143:19)(143:21) | (44:6)(46:9)(46:10)(52:1) |
| (51:15)(51:18)(52:19) | (112:20)(116:3)(121:20) | balding (33:17) | (52:12)(52:22)(55:11) |
| (53:21)(53:25)(54:7) | (144:16) | base (65:22)(129:3) | (55:21)(58:9)(58:11) |
| (55:16)(56:13)(59:5) | assistant (2:7)(2:21) | based (10:16)(23:18) | (59:21)(61:17)(62:20) |
| (59:14)(59:15)(62:16) | (9:8)(113:4)(113:5) | (28:3)(28:12)(32:9)(35:4) | (63:22)(64:9)(64:18) |
| (62:24)(64:4)(68:18) | (117:9)(125:18) | (66:6)(66:18)(66:23) | (73:11)(74:2)(77:7)(80:1) |
| (68:19)(68:22)(69:5) | assisting (6:6)(116:9) | (78:23)(80:1)(93:1) | (81:9)(83:6)(83:14) |
| (70:13)(72:14)(72:15) | associate (30:13) | (101:1)(103:21)(104:19) | (83:16)(83:20)(83:23) |
| (72:22)(73:4)(74:13) | associated (48:15)(48:19) | (105:2)(106:8)(119:9) | (85:3)(85:5)(85:7)(87:5) |
| (74:23)(75:1)(75:2)(75:9) | assume (24:9)(28:14) | (119:13)(119:14)(129:2) | (87:22)(89:1)(108:7) |
| (76:16)(77:8)(79:8)(79:9) | (47:5) | (131:7)(137:6)(138:22) | (110:17)(113:25)(118:8) |
| (79:10)(79:11)(79:18) | assuming (47:4)(69:16) | (139:15) | (132:11)(133:1)(142:10) |
| (79:19)(81:4)(81:10) | assumption (76:2) | basically (20:4)(32:19) | believer (142:8) |
| (82:19)(83:1)(85:25) | assurance (53:8) | (53:9)(53:14)(65:22) | bell (138:8) |
| (87:1)(90:25)(91:10) | assure (52:23)(52:24) | (70:5)(74:6)(84:19) | below (131:17) |
| (93:5)(94:16)(95:2)(95:5) | (137:25) | (130:8)(131:25)(132:22) | benefit (87:23) |
| (103:7)(103:20)(105:11) | asthma (141:21) | (135:13)(137:5)(137:11) | best (53:3)(75:11) |
| (111:23)(112:1)(112:8) | attached (4:20)(110:21) | basis (108:2)(110:17) | (118:4)(145:18)(149:6) |
| (112:14)(115:16)(117:3) | attack (141:21) | bearing (59:23)(83:21) | better (57:8)(136:15) |
| (118:24)(120:17)(121:2) | attempted (34:15) | became (101:6) | between (11:6)(16:9) |
| (123:1)(123:19)(125:12) | attempting (17:24)(21:12) | become (38:20)(39:20) | (33:2)(41:16)(42:7) |
| (125:18)(125:19)(125:25) | attention (14:11)(14:22) | becomes (89:5) | (60:16)(61:20)(62:13) |
| (126:25)(127:15)(128:11) | (14:23)(52:2)(53:4)(55:6) | been (6:12)(6:25)(7:18) | (63:16)(83:8) |
| (128:14)(129:21)(131:12) | (55:8)(97:6)(97:8) | (8:10)(10:17)(10:21) | beyond (17:19)(18:5) |
| (135:1)(135:4)(136:4) | attitude (66:13) | (18:13)(18:18)(20:8) | (19:16)(20:10)(22:17) |
| (137:6)(138:19)(143:23) | attitudes (8:20) | (27:4)(48:11)(48:14) | (22:22)(22:23)(22:24) |
| (144:23)(145:7)(145:20) | attorney (2:13)(2:17) | (48:19)(48:21)(50:5) | (22:25)(23:1)(23:24) |
| areas (53:15)(53:17) | (75:22)(117:10)(121:6) | (51:18)(51:20)(52:5) | (24:20)(28:11)(28:19) |
| aren't (90:14)(95:5) | attorneys (2:7)(7:4) | (55:2)(55:7)(60:1)(71:3) | (29:1)(38:5)(43:20)(45:5) |
| argue (46:4) | (7:11)(8:25)(9:8)(9:20) | (72:22)(76:13)(82:9) | (62:21)(68:14)(69:10) |
| arguing (108:2) | (86:5)(96:25)(101:21) | (85:10)(90:8)(90:21) | (69:12)(69:21)(69:22) |
| around (40:17)(49:5) | (113:5)(117:3)(123:5) | (95:7)(95:25)(96:21) | (70:3)(70:7)(72:10)(73:3) |
| (62:4)(66:14)(71:4) | (123:19)(125:12)(125:18) | (97:5)(97:6)(97:8)(97:17) | (73:24)(87:11)(87:15) |
| (83:24)(95:8) | (125:19)(125:25)(149:9) | (99:7)(100:18)(100:21) | (87:19)(87:20)(88:8) |
| arrest (104:16)(106:20) | attorney's (2:7)(104:10) | (100:23)(101:12)(102:15) | (88:13)(88:22)(88:25) |
| (106:21) | august (11:19)(11:21) | (106:6)(106:8)(108:11) | (130:19)(134:23) |
| arrested (98:25)(101:10) | (90:22)(91:2)(91:4) | (116:15)(120:14)(123:2) | bias (115:6)(119:10) |
| (101:12)(104:25) | (92:22)(97:10)(101:11) | (128:1) | (146:23) |
| artery (62:10) | (104:16) | before (1:21)(7:19) | bicycle (18:1)(23:9) |
| article (92:18) | augusta (143:18) | (14:12)(15:14)(16:24) | bifurcated (18:2)(19:13) |
| articles (92:4)(92:10) | austin (12:20)(22:20) | (18:13)(18:16)(19:22) | big (25:5) |
| arts (67:17) | (25:23)(67:10) | (20:2)(20:18)(20:25) | bigger (13:25)(33:5) |
| aside (52:20)(71:8) | automatic (24:2)(24:4) | (21:20)(29:8)(29:17) | big-shot (22:20) |

billed                                                                                          chicago      152

billed   (48:4)
birth   (82:22) (83:16)
(85:1) (98:2)
birthplace   (99:23)
bit   (7:6) (8:18) (19:1)
(49:6) (53:16) (56:23)
(60:4) (65:17) (67:8)
(83:21) (127:23) (134:2)
blank   (48:7) (55:12)
(130:1)
bleeds   (62:10)
blow   (33:22)
boat   (126:15)
body   (77:7)
bone   (77:7)
bones   (67:24)
booms   (126:22)
born   (99:25)
both   (8:12) (78:6) (90:12)
(93:23) (114:18) (137:25)
bottom   (48:10) (82:21)
(118:3)
boulevard   (2:9) (2:22)
(148:21) (149:19)
bounced   (105:1)
box   (66:8)
brad   (2:12) (9:14)
(109:20) (119:15) (125:24)
break   (35:1)
breath   (52:25)
briefly   (100:4) (100:7)
(105:8) (107:25)
bring   (40:25) (55:5)
(75:23) (75:24) (86:5)
(89:7) (94:12) (108:16)
(109:1) (111:12) (111:19)
(115:13)
broached   (84:4)
broaching   (57:21)
broadcast   (58:15)
broadnax   (1:7) (9:21)
(51:12) (58:23) (70:10)
(126:4)
brother   (99:11)
brought   (55:7) (66:25)
(74:14) (83:2) (138:7)
bruce   (3:5) (4:6) (5:17)
(10:6)
building   (2:8) (2:22)
(10:12) (40:16)
bullet   (62:9)
bunch   (96:4)
burden   (17:16) (38:8)
(68:11) (70:2) (88:24)
burglarizing   (16:5)
burglary   (16:23)
business   (27:12) (33:11)
(34:21) (50:11) (50:13)
(50:22) (51:2) (95:13)
(149:8)
busy   (95:7)
but   (5:22) (6:8) (7:2)
(8:11) (9:10) (11:1) (11:3)
(13:12) (17:4) (17:7)
(18:16) (18:23) (21:17)
(22:7) (23:15) (25:3) (25:7)
(26:7) (26:21) (27:10)
(27:15) (29:3) (30:24)
(32:18) (33:4) (33:6)
(34:10) (34:20) (35:13)
(35:19) (36:7) (37:8)
(37:17) (37:21) (38:5)
(38:17) (39:5) (39:19)
(39:24) (40:7) (40:13)
(40:24) (43:13) (44:23)
(45:10) (47:2) (47:4) (48:9)
(48:18) (48:20) (50:9)

(51:1) (51:14) (51:25)
(52:18) (57:7) (57:25)
(58:17) (60:14) (60:23)
(61:19) (62:11) (62:22)
(63:18) (66:4) (67:6) (68:6)
(69:22) (70:17) (71:25)
(73:8) (75:2) (75:3) (77:12)
(78:10) (79:11) (80:3)
(80:9) (80:25) (83:22)
(85:10) (87:21) (88:10)
(90:17) (91:16) (91:22)
(92:12) (95:6) (97:8)
(97:19) (98:15) (98:22)
(99:12) (99:14) (101:7)
(102:12) (103:7) (103:19)
(105:2) (106:8) (107:5)
(107:11) (109:5) (112:19)
(116:1) (116:3) (118:21)
(119:24) (121:25) (122:19)
(123:3) (123:16) (124:23)
(125:4) (125:20) (127:4)
(127:24) (128:5) (129:2)
(129:18) (131:16) (132:6)
(134:2) (134:14) (137:4)
(137:23) (138:4) (142:6)
(143:4) (144:15)
butler   (59:4)
bye-bye   (109:16) (119:3)
(140:25)

### C

calendar   (90:25)
call   (12:8) (28:4) (32:19)
(46:11) (59:12) (59:16)
(93:19) (93:23) (107:8)
(120:12) (141:18)
called   (18:2) (18:18)
(19:19) (22:9) (24:1)
(27:20) (41:18) (47:18)
(97:5) (97:8) (106:8)
(123:15) (132:11) (135:19)
(135:22)
calm   (2:17)
came   (1:19) (10:12) (34:5)
(52:14)
cameras   (33:15) (33:22)
can   (13:10) (13:12)
(13:18) (14:10) (14:11)
(14:24) (15:18) (15:24)
(16:7) (16:18) (16:21)
(17:10) (19:22) (25:1)
(28:20) (29:22) (33:24)
(34:2) (34:7) (34:16)
(35:3) (37:19) (39:19)
(39:21) (41:10) (41:14)
(43:12) (44:7) (44:9)
(44:23) (47:8) (48:3) (50:9)
(50:11) (50:14) (50:20)
(51:6) (52:16) (52:23)
(53:7) (53:8) (54:7) (58:2)
(59:13) (60:19) (60:20)
(60:22) (62:11) (62:19)
(68:1) (71:8) (71:11)
(72:25) (73:7) (73:8)
(74:23) (75:9) (77:4) (80:7)
(82:3) (84:7) (86:10) (87:1)
(88:1) (88:9) (88:24)
(89:18) (97:4) (98:11)
(102:2) (103:15) (104:1)
(117:8) (120:8) (120:12)
(120:13) (131:14) (131:18)
(132:6) (132:16) (136:11)
(139:5) (139:9) (141:25)
(146:11)
cannot   (28:13) (40:25)
(44:3) (44:20) (47:13)
(74:24) (75:13) (76:9)

(77:24) (103:22) (106:10)
(141:7)
can't   (8:5) (13:12)
(22:11) (22:12) (23:15)
(29:3) (29:5) (37:10)
(37:15) (37:21) (37:25)
(40:4) (40:7) (41:7) (43:7)
(46:11) (52:24) (61:23)
(90:16) (91:22) (101:3)
(105:16) (107:12) (114:8)
(127:8) (140:2)
capital   (5:18) (7:13)
(7:19) (14:1) (15:19)
(15:25) (16:7) (16:19)
(16:22) (17:5) (17:10)
(17:15) (17:22) (18:1)
(19:20) (23:9) (23:25)
(27:23) (28:15) (29:4)
(29:9) (29:18) (29:24)
(30:2) (30:21) (31:20)
(33:25) (34:17) (35:17)
(43:21) (45:6) (53:19)
(60:12) (60:23) (62:19)
(62:20) (65:20) (68:9)
(72:15) (75:3) (76:14)
(76:22) (77:15) (83:15)
(84:23) (121:20) (124:11)
(127:18) (127:19) (128:16)
(129:12) (130:17) (130:24)
(130:25) (134:7) (134:12)
(134:15) (139:24)
car   (33:8) (57:25)
(126:15) (126:16)
care   (6:5) (11:12) (31:9)
(33:11) (33:19) (34:21)
(41:2) (66:15) (95:13)
(112:22) (115:11) (116:8)
(122:1) (128:21) (141:22)
careful   (109:11)
carefully   (14:12) (55:9)
carry   (126:22)
case   (6:3) (8:1) (8:8)
(8:19) (9:12) (11:22) (13:9)
(13:24) (14:1) (14:10)
(14:16) (15:19) (17:21)
(18:1) (18:13) (18:14)
(20:8) (23:8) (28:17) (33:6)
(33:10) (34:18) (38:22)
(39:7) (39:20) (39:24)
(40:3) (40:6) (40:7) (40:12)
(40:20) (40:23) (40:25)
(41:11) (45:21) (52:21)
(53:22) (58:10) (58:13)
(58:18) (58:22) (59:20)
(59:24) (60:9) (60:24)
(60:25) (64:21) (65:20)
(66:12) (68:10) (71:10)
(71:15) (71:17) (73:9)
(73:12) (75:3) (75:4)
(75:16) (76:22) (86:23)
(87:3) (90:22) (91:3)
(92:10) (92:16) (93:1)
(93:3) (93:7) (95:11)
(95:14) (97:9) (97:10)
(99:13) (103:9) (103:14)
(103:21) (105:4) (106:2)
(106:18) (107:3) (107:7)
(107:9) (107:14) (109:6)
(112:19) (116:3) (116:10)
(117:2) (124:11) (125:13)
(125:22) (126:5) (129:15)
(130:10) (132:17) (132:20)
(132:25) (134:2) (134:6)
(134:7) (134:14) (134:24)
(136:7) (136:19) (138:3)
(140:19) (141:13) (141:24)
(144:15) (147:5)

cases   (7:20) (60:15)
(97:12) (97:13) (113:25)
(118:8) (130:2) (130:4)
cat   (36:12)
catch   (57:4)
categories   (20:16)
cause   (1:3) (1:20) (3:5)
(3:10) (3:11) (3:13) (3:14)
(3:15) (3:16) (3:19) (3:20)
(16:2) (16:10) (16:12)
(21:13) (45:17) (51:7)
(61:13) (62:15) (69:2)
(86:12) (86:15) (89:4)
(108:21) (110:16) (110:19)
(111:4) (115:7) (115:10)
(119:9) (119:19) (134:19)
(141:5) (141:11) (146:21)
(147:4) (148:11)
caused   (22:7) (35:12)
(56:4) (60:22) (61:12)
(61:14) (62:11)
causes   (23:17) (60:13)
(60:21) (62:14)
causing   (39:3)
caution   (103:22) (107:11)
central   (6:13) (96:1)
(116:16)
certain   (8:14) (16:12)
(19:23) (28:4) (36:11)
(80:13) (125:4) (125:8)
(127:14) (132:12) (132:13)
certainly   (26:7) (27:18)
(34:18) (55:19) (57:11)
(59:23) (88:6) (88:10)
(106:5)
certificate   (4:13)
certification   (148:22)
(149:20)
certify   (148:6) (148:13)
chained   (36:13)
challenge   (3:5) (3:10)
(3:13) (3:15) (3:19) (86:12)
(86:15) (86:18) (87:10)
(89:4) (108:21) (110:18)
(111:4) (115:7) (115:9)
(119:19) (141:5) (141:11)
(146:21) (146:22) (147:4)
challenged   (110:16)
chambers   (148:12)
chance   (36:18) (38:10)
(38:11) (55:3) (123:9)
(123:16)
chances   (78:18)
change   (39:3) (85:6)
changed   (8:17) (8:21)
(55:9) (79:14)
chapter   (149:3)
character   (76:1) (82:18)
charge   (17:14) (20:6)
charged   (9:11) (11:5)
(15:18) (15:20) (15:24)
(16:7) (16:19) (16:22)
(17:10) (17:21) (19:17)
(19:25) (27:13) (29:18)
(31:19) (31:20) (33:24)
(34:7) (34:10) (34:16)
(35:3) (45:6) (69:19)
(104:11) (125:21)
charges   (20:13) (93:5)
cheaper   (46:8)
check   (97:9) (97:12)
(97:13) (97:14) (97:18)
(97:22) (98:20) (98:21)
(98:22) (104:12) (105:1)
(111:18) (119:25) (130:1)
checked   (142:7)
chicago   (100:1) (100:2)

child

child (16:17)(64:9) (64:11)(64:14)
children (51:1)
choice (11:6)(13:8) (70:12)(70:20)(88:6) (114:2)
choices (29:11)(29:16)
christian (142:9)(142:12)
christie (3:17)(4:9) (141:19)(143:16)
c-h-r-i-s-t-i-e (141:19)
chronological (3:1)
circled (15:4)(113:24) (118:7)(145:18)
circumstance (36:1) (128:21)(132:15)
circumstances (17:7) (27:2)(28:3)(35:22)(36:1) (45:18)(82:22)(83:16) (83:22)(85:1)(85:11) (130:4)(130:10)(132:12) (132:13)(142:3)(145:19)
citizen (18:9)(22:13)
city (25:2)
civic (11:3)
civil (18:21)
civilians (20:17)
clarify (134:1)
classical (57:7)
classified (45:4)(67:13)
clear (28:7)(86:21) (114:6)
clearly (60:20)(61:9) (87:6)(87:17)(105:19)
clergy (31:12)(32:7) (75:25)
clerk (33:3)(33:13) (33:21)(61:25)(62:4)
clerk's (33:23)
client (126:5)
cliff (114:17)
cloaked (41:9)
close (23:9)(37:22) (37:25)
closed (35:20)
closet (36:13)
closure (55:23)(56:19) (77:21)
clue (81:19)
code (149:4)
colleagues (17:1)
college (12:16)(12:20) (67:10)
collin (121:3)(121:15)
combination (44:15)
come (7:18)(10:22) (23:12)(24:11)(24:21) (40:12)(40:15)(43:13) (49:17)(60:6)(62:3) (62:11)(67:7)(71:9) (71:24)(93:3)(93:7) (94:19)(112:8)(120:13) (120:17)(126:15)(128:14) (135:8)(143:23)
comedy (58:4)
comes (21:16)(25:9) (27:15)(34:19)(35:18) (35:19)(51:16)(62:4) (91:9)(92:13)(92:16) (93:24)(124:23)(137:7) 137:10)
comforted (50:9)
coming (52:5)(120:12)
commerce (2:13)
commission (11:15) (72:12)(73:14)
commissioners (32:24)

commit (20:5)(21:12) (24:22)(26:2)(32:21) (44:20)(73:16)(82:13) (134:11)
commits (15:25)(17:14)
committed (18:7)(30:16) (64:20)
committing (21:12) (34:15)(64:15)(64:22) (64:25)
common (23:19)(55:17) (56:13)(63:18)
community (11:9)(11:11) (104:18)(106:24)
companies (48:12)
compassing (84:2)
compelled (69:24)
competitors (25:4)
complete (87:1)
complicated (22:19)
comprise (9:10)(125:20)
comprising (126:1)
computer-aided (1:24)
computerized (1:23)
conceding (53:21)
concentrate (13:23) (52:20)
concept (63:15)
concepts (68:15)
concern (51:11)(51:14)
concerned (14:7)(75:14) (75:15)
concerning (7:24)(92:10) (117:1)(124:7)
concerns (108:10)
conclude (28:1)(28:9) (29:1)(44:18)
conduct (16:12)
confer (86:4)(101:21)
confined (131:22)
conformity (149:3)
confronted (85:10)(85:18)
conscious (16:2)(16:10) (34:4)(61:6)(69:1)
consequently (122:3) (144:20)
conservative (57:13)
consider (14:11)(26:25) (31:5)(36:19)(38:2) (38:11)(38:17)(42:3) (44:3)(44:7)(44:8)(44:24) (46:2)(47:8)(47:14) (47:24)(63:6)(79:12) (83:18)(84:6)(84:8)(84:9) (84:15)(84:17)(84:25) (85:2)(86:20)(87:2)(87:4) (88:5)(88:7)(88:9)(88:10) (88:11)(137:19)(138:1)
consideration (35:21) (39:25)(74:5)(83:7)
considered (44:9)(57:9) (61:11)(82:23)
considering (14:14)(47:6)
console (58:6)
constantly (92:8)
consternation (45:2) (45:17)
constitute (24:23) (73:17)(82:14)
constitution (11:1)(87:9)
contains (148:7)
contemplates (77:1) (82:16)
context (17:22)(42:6) (72:7)(80:4)(82:5)(82:6) (82:15)
continue (56:1)

continuing (24:23) (73:17)(82:14)(84:24) (85:8)(85:9)
contrary (44:16)
conversation (126:23)
converse (91:13)
convey (53:21)
convicted (72:14)(82:24)
conviction (102:8) (102:22)(102:23)(104:21) (107:5)(108:8)(109:19) (110:18)
convince (87:14)
convinced (72:9)
convoluted (22:20)
coordinator (93:23)
copy (8:11)(110:24) (122:5)
corner (62:4)
correct (5:18)(5:19) (6:10)(13:4)(24:6)(27:16) (27:17)(31:6)(42:8)(42:9) (43:10)(45:25)(46:3) (47:4)(47:5)(47:25)(48:1) (52:17)(53:23)(64:5) (67:12)(95:22)(96:16) (98:3)(114:8)(114:9) (114:11)(129:9)(132:5) (144:2)(148:7)
correctly (66:17) (113:23)(148:14)
correctly in (69:14)
cost (12:1)
costs (46:16)(104:19) (106:25)
could (13:1)(13:9) (13:13)(14:14)(14:25) (25:12)(27:13)(34:22) (44:14)(52:1)(52:5) (52:22)(63:6)(66:15) (70:24)(71:14)(73:17) (75:11)(79:2)(79:25) (80:10)(83:17)(85:10) (85:17)(86:19)(93:6) (93:22)(100:21)(102:15) (103:25)(105:7)(107:14) (107:25)(114:1)(118:9) (128:21)(128:23)(129:3) (130:8)(135:7)(137:19) (137:25)(138:4)(141:22) (142:2)(145:16)(145:19)
could-care-less (66:13)
couldn't (58:21)(85:15) (119:13)(126:20)
counsel (143:8)(148:9)
counter (62:3)
country (54:15)
county (1:7)(1:22)(2:8) (2:21)(9:9)(39:23)(39:24) (103:10)(104:13)(108:8) (117:12)(121:3)(121:16) (125:19)(148:3)(148:6)
couple (10:16)(18:18) (90:20)(99:11)(145:10)
courier (48:12)
course (16:3)(16:16) (17:23)(21:11)(39:12) (45:7)(59:5)(60:14) (62:22)(65:23)(66:19) (72:12)(73:13)(73:22) (74:1)(76:25)(80:15) (82:12)(91:5)(135:3)
court (1:6)(3:8)(4:12) (4:13)(5:3)(5:6)(5:9) (5:20)(6:5)(6:11)(6:21) (6:24)(7:10)(9:2)(9:7) (9:16)(9:19)(9:24)(10:4)

(10:5)(19:8)(21:16)(26:8) (26:22)(44:9)(4!:13) (49:1)(49:4)(49:10) (49:14)(49:17)(49:21) (49:24)(50:15)(50:17) (50:19)(50:21)(76:8) (81:20)(81:23)(82:3) (86:2)(86:8)(86:10) (86:14)(86:17)(88:1) (88:4)(89:3)(89:7)(89:10) (89:14)(89:20)(89:24) (90:1)(90:4)(91:16) (91:22)(91:25)(92:20) (93:12)(93:15)(93:21) (94:4)(94:8)(94:11) (94:12)(94:16)(94:19) (95:4)(95:14)(95:18) (95:21)(95:24)(96:4) (96:11)(96:15)(96:18) (96:21)(97:3)(97:16) (97:19)(98:1)(98:5) (98:19)(98:24)(99:4) (99:9)(99:18)(99:22) (99:25)(100:2)(100:5) (100:8)(101:14)(101:16) (101:19)(101:23,(102:2) (102:7)(102:11)(102:15) (102:18)(102:21)(103:3) (103:12)(103:18)(104:2) (104:5)(104:7)(104:14) (104:19)(105:6)(105:9) (105:11)(105:14)(106:5) (106:14)(106:16)(106:22) (106:25)(107:2)(107:16) (107:18)(107:21)(108:2) (108:6)(108:9)(108:14) (108:19)(108:24)(109:4) (109:8)(109:11)(109:13) (109:16)(109:18)(109:24) (110:2)(110:4)(110:8) (110:12)(110:20)(110:23) (111:1)(111:7)(111:11) (111:12)(111:15)(111:18) (111:21)(111:24)(112:1) (112:4)(112:8)(112:10) (112:14)(112:17)(112:23) (113:10)(114:15)(114:23) (115:1)(115:3)(115:9) (115:16)(115:19)(115:25) (116:7)(116:9)(116:12) (116:21)(116:24)(117:8) (117:12)(117:15)(117:17) (118:17)(118:21)(118:24) (119:2)(119:5)(119:7) (119:18)(120:2)(120:6) (120:11)(120:17)(121:5) (121:8)(121:10)(121:14) (121:19)(121:24)(122:2) (122:8)(122:11)(122:14) (122:19)(122:22)(122:25) (123:8)(123:12)(123:15) (123:18)(123:22)(124:5) (124:10)(124:14)(124:18) (124:22)(125:2)(125:7) (125:11)(125:17)(126:3) (126:7)(140:16)(140:22) (140:25)(141:4)(141:10) (141:16)(141:17)(142:15) (142:24)(142:25)(143:3) (143:6)(143:9)(143:14) (143:20)(143:23)(144:1) (144:4)(144:13)(144:21) (145:1)(146:10)(146:14) (146:16)(146:18)(146:20) (146:25)(147:2)(148:4) (148:5)(148:12)(148:20) (149:2)(149:5)(149:18)

courthouse                                                                    don't        154

courthouse (10:23)
(48:21)(128:19)
courtroom (5:5)(6:4)
(38:20)(41:1)(49:16)
(86:9)(90:3)(94:7)(94:15)
(95:13)(102:1)(108:23)
(109:17)(112:7)(112:22)
(115:2)(115:15)(116:8)
(119:4)(120:16)(122:1)
(136:17)(137:16)(141:3)
(143:22)(146:17)
courts (2:8)(2:22)
court's (3:6)(3:9)(3:11)
(3:13)(3:16)(3:20)
create (149:10)
credibility (20:24)
crime (11:6)(15:25)
(17:5)(18:7)(19:25)(20:5)
(20:6)(21:5)(27:1)(28:21)
(32:21)(33:23)(34:10)
(34:16)(34:19)(35:23)
(37:7)(41:10)(42:23)
(43:8)(45:22)(64:7)(64:9)
(64:15)(64:16)(64:19)
(64:23)(65:1)(82:24)
(128:22)
crimes (16:18)(28:4)
(30:16)(59:16)
criminal (1:5)(2:7)
(16:16)(18:13)(18:14)
(23:8)(24:22)(26:2)(26:3)
(26:6)(26:11)(26:14)
(56:20)(63:4)(64:2)
(73:16)(76:8)(110:16)
(139:21)(148:5)(148:20)
(149:18)
criminally (63:15)
crowley (2:8)(2:22)
csr (148:19)(149:17)
culpability (35:24)
culpable (63:3)
current (12:6)(48:14)
custody (81:16)
cut (32:24)(127:4)

**D**

dad (36:10)
daily (6:5)(68:24)
dallas (1:7)(1:22)(2:8)
(2:9)(2:14)(2:18)(2:21)
(2:23)(9:9)(39:23)(48:13)
(92:3)(117:12)(125:18)
(148:3)(148:6)(148:21)
(149:19)
danger (27:20)(28:12)
(29:2)(31:3)(32:10)
(35:11)(73:18)(76:15)
(79:21)(80:3)(80:8)(80:9)
(82:8)(82:15)(84:24)
(85:8)(85:9)
dangerous (60:20)(61:9)
date (98:2)(104:15)
(129:15)
daughter (12:16)(12:21)
(67:10)(67:20)(67:21)
(141:21)
daughters (51:2)
day (1:18)(40:21)(52:15)
(56:3)(57:1)(57:6)(57:21)
(57:25)(58:1)(96:5)
(117:5)(148:17)
days (57:24)
day-to-day (69:6)
(112:22)(116:8)(122:1)
dead (21:17)(22:6)
(33:23)(37:25)(61:4)
(61:23)

deadly (21:11)
deal (12:6)(12:15)(33:5)
(41:24)(52:18)(54:24)
(56:25)(64:1)
dealings (48:20)
death (14:4)(15:4)(15:6)
(15:23)(21:13)(22:7)
(24:5)(26:16)(28:5)(28:6)
(29:14)(30:22)(30:25)
(35:10)(35:13)(35:15)
(36:3)(37:16)(38:15)
(41:17)(42:7)(42:12)
(42:20)(43:8)(43:13)
(43:25)(45:2)(45:11)
(45:12)(45:19)(46:8)
(46:21)(55:17)(55:21)
(56:6)(59:4)(59:14)
(59:16)(59:22)(60:13)
(60:21)(60:22)(61:12)
(61:13)(61:14)(62:10)
(62:11)(62:14)(62:15)
(63:7)(64:9)(64:10)
(64:14)(64:15)(64:21)
(65:19)(77:8)(85:7)
(113:23)(114:2)(118:5)
(118:10)(119:10)(128:14)
(128:18)(128:23)(129:19)
(129:22)(130:2)(130:3)
(131:1)(131:4)(131:9)
(131:18)(131:20)(132:4)
(132:5)(132:6)(132:7)
(132:16)(133:2)(133:9)
(133:20)(134:19)(135:5)
(142:3)(142:4)(142:6)
(142:8)(142:13)(145:14)
(145:20)
deaths (59:17)(64:19)
debt (32:1)
decide (14:19)(19:22)
(28:18)(32:21)(32:25)
(38:13)(40:5)(76:15)
deciding (14:18)(41:16)
(42:7)(65:18)(133:9)
decision (23:23)(29:4)
(30:25)(61:21)(66:22)
(76:23)(85:12)(85:13)
(92:25)(93:6)(128:17)
(131:13)
decision-making (66:17)
decisions (54:11)
deck (26:23)(26:24)
decked (26:10)
deemed (106:6)
deeper (103:10)
defendant (2:24)(5:3)
(13:22)(17:21)(18:6)
(19:24)(19:25)(20:3)
(21:9)(21:22)(22:4)(22:7)
(24:22)(27:22)(28:25)
(29:9)(35:6)(35:10)
(36:18)(36:21)(37:3)
(38:12)(38:15)(43:15)
(49:14)(65:23)(66:7)
(66:18)(69:18)(72:11)
(73:12)(73:21)(73:25)
(77:8)(79:7)(87:23)(90:1)
(94:11)(110:12)(111:11)
(126:4)(127:18)(127:19)
(138:20)(139:3)(139:21)
(141:8)(141:16)
defendant's (14:2)
(35:23)(35:24)(36:8)
(36:15)(86:23)(87:7)
(104:4)(107:24)(110:6)
defender (2:21)
defender's (2:21)
defense (3:4)(4:3)(4:21)

(9:20)(37:7)(50:1)(75:24)
(86:14)(89:13)(126:1)
(143:1)(143:8)
defenses (136:5)
defense's (3:5)(3:6)
(3:9)(89:3)
deferred (102:15)(107:8)
define (68:22)(69:4)
(69:9)(87:21)
defined (22:19)(26:7)
(68:18)(68:19)(68:20)
definitely (34:10)(58:18)
definition (25:21)
(68:23)(69:3)(69:5)
degree (80:13)
deliberate (11:22)
(38:19)(39:11)(40:9)
(40:14)
deliberating (39:21)
(91:9)
deliberation (91:8)
deliberations (41:13)
(137:19)
delusion (63:25)
depend (146:24)
depending (14:5)(15:22)
depends (27:2)(57:20)
deputy (148:4)(148:20)
(149:18)
describing (57:8)
description (4:17)(4:22)
deserved (56:12)(77:20)
deserves (14:21)(14:23)
(77:8)(133:1)
deserving (135:4)
desire (61:7)(69:2)
despite (76:20)
detail (7:14)(123:24)
(124:2)
details (91:23)
determine (34:17)(46:6)
(136:10)
determines (131:7)
determining (14:20)
(47:7)(47:13)(82:23)
(103:20)
devil (63:24)
devote (53:4)
dickens (67:23)
did (17:13)(22:11)
(23:14)(33:1)(42:13)
(43:17)(55:9)(61:2)
(61:13)(63:8)(63:9)
(65:24)(69:14)(69:15)
(75:1)(77:22)(96:15)
(100:13)(100:25)(107:23)
(119:15)(122:22)(126:15)
(137:16)(138:6)(138:11)
(138:14)(139:4)(139:8)
(139:9)(139:17)(140:10)
(141:18)
didn't (8:15)(22:8)
(23:11)(23:12)(23:13)
(26:9)(48:9)(60:1)(61:13)
(62:12)(71:15)(77:16)
(81:18)(108:4)(111:3)
(111:4)(126:17)(138:8)
(140:12)
died (22:2)
dies (14:21)(66:15)
diet (68:4)
difference (16:8)(21:1)
(28:13)(29:5)(40:24)
(60:16)(61:8)(61:14)
(61:20)(62:13)(63:16)
(71:2)(80:5)(83:8)
different (48:13)(68:9)

(68:24)(92:24)(132:6)
(132:7)(133:15)(133:18)
differently (133:23)
difficult (13:11)
dig (103:10)
dire (1:12)(9:1)(10:2)
(10:8)(50:1)(60:11)
(69:12)(97:1)(100:11)
(113:14)(117:20)(123:6)
(126:11)(145:5)
directed (34:15)
direction (62:2)
disagree (37:9)
discipline (77:5)
disclosure (149:6)
discretion (45:10)
(103:20)(107:12)
discretionary (12:8)
discuss (40:11)(40:14)
(43:12)
discussed (34:6)
discussing (65:21)
discussion (75:19)
(89:25)(141:15)
dismissed (107:10)
disposition (102:9)
(103:3)(104:17)(106:18)
(107:3)
dispute (51:8)(70:17)
disputing (79:6)
disqualified (3:8)
(87:24)(109:19)(111:7)
disqualify (111:8)
disqualifying (104:20)
dissertation (67:22)
distinction (28:8)
distinguished (24:25)
distinguishing (33:17)
distracted (13:1)
district (1:5)(2:7)
(5:10)(6:1)(9:8)(75:22)
(95:9)(104:9)(112:17)
(113:5)(117:9)(121:6)
(121:8)(121:11)(121:15)
(125:18)(144:10)(148:5)
(148:20)(149:18)
ditch (52:6)
divorce (48:11)(48:22)
doctors (31:9)(32:7)
(79:10)
does (22:4)(23:2)(30:3)
(45:17)(54:20)(54:21)
(59:6)(59:11)(68:21)
(69:6)(74:12)(77:25)
(78:2)(78:11)(78:25)
(79:1)(81:7)(81:9)(81:18)
(86:11)(86:14)(99:23)
(104:21)(137:19)(142:14)
(146:20)
doesn't (22:5)(22:24)
(22:25)(26:3)(76:14)
(99:18)(103:11)(105:17)
(105:22)(107:10)
dog (36:13)
doing (6:6)(6:7)(10:21)
(26:22)(27:11)(43:14)
(49:2)(49:3)(50:4)(62:15)
(63:21)(78:18)(90:9)
(95:19)(98:23)(116:4)
(120:17)(135:19)
dollars (12:2)(12:7)
don (3:10)(4:7)(111:23)
(112:5)(113:12)(115:10)
d-o-n-a-l-d (5:18)
done (50:10)(51:5)(67:5)
(85:25)(133:10)
don't (10:18)(11:4)

door                                                                    faithful   155

(11:16)(11:21)(13:17)
(13:25)(15:2)(17:11)
(17:12)(17:15)(27:5)
(33:15)(33:21)(34:8)
(34:9)(34:20)(35:5)(36:7)
(36:12)(37:20)(38:6)
(40:15)(41:2)(52:11)
(54:20)(54:23)(55:23)
(61:19)(61:25)(62:1)
(62:2)(63:20)(64:12)
(66:11)(67:20)(67:22)
(68:6)(68:7)(70:20)(71:6)
(71:14)(73:8)(73:19)
(77:6)(80:23)(83:6)
(83:21)(84:8)(84:18)
(85:9)(85:20)(85:21)
(87:20)(87:21)(88:15)
(92:1)(92:16)(92:17)
(93:7)(97:16)(98:14)
(98:17)(98:22)(98:25)
(99:16)(101:10)(101:18)
(102:11)(102:18)(102:24)
(103:1)(103:14)(104:22)
(105:2)(105:24)(106:7)
(107:3)(107:4)(107:7)
(107:10)(108:19)(108:20)
(110:24)(111:13)(113:2)
(113:3)(116:13)(120:2)
(127:10)(128:3)(128:21)
(129:11)(129:13)(130:24)
(131:1)(131:6)(131:23)
(136:25)(138:4)(140:4)
(140:9)(140:15)(142:4)
(142:8)
door  (5:13)
doubt  (17:20)(18:5)
(19:17)(20:10)(22:18)
(22:22)(22:24)(22:25)
(23:1)(23:18)(23:24)
(24:20)(28:11)(28:19)
(29:1)(34:2)(34:22)(38:5)
(43:20)(45:5)(51:13)
(62:21)(68:14)(69:10)
(69:13)(69:22)(70:3)
(70:7)(72:10)(73:4)
(73:25)(87:11)(87:15)
(87:19)(87:21)(88:14)
(88:22)(88:25)(130:20)
(134:23)
doubts  (22:24)
doug  (9:16)(49:11)
(49:12)(50:5)(50:15)
(125:24)
douglas  (2:16)
down  (6:6)(6:13)(7:18)
(9:5)(9:13)(9:17)(9:21)
(10:18)(23:12)(32:22)
(35:18)(43:6)(52:14)
(56:19)(65:17)(68:1)
(81:14)(81:18)(82:20)
(95:14)(103:10)(103:16)
(107:9)(112:23)(113:7)
(114:18)(116:1)(116:9)
(122:2)(125:23)(125:24)
(127:4)(132:20)(133:6)
(139:5)
dozen  (50:6)
drew  (25:23)
drink  (49:5)
drive  (11:16)(40:21)
driving  (62:1)
drugs  (37:4)(37:18)
dry  (95:3)(95:4)(95:5)
dude  (36:16)
during  (10:17)(39:12)
(59:5)(60:13)(62:22)
(64:7)(65:23)(66:18)

(72:12)(73:13)(73:22)
(74:1)(82:11)(92:7)
(92:11)(100:16)(100:21)
(127:8)
duty  (16:14)(16:15)(91:2)
dwi  (31:19)(139:22)

**E**

each  (6:18)(7:3)(8:11)
(96:23)(116:19)(122:17)
(123:4)(130:21)
ear  (58:17)
earlier  (67:2)(69:11)
(72:18)
early  (60:10)
earning  (51:4)
easily  (33:18)(52:5)
easy  (33:4)
eat  (11:4)(11:16)
economic  (32:24)
economics  (12:6)
eddings  (86:25)
educated  (11:8)
effort  (5:22)(5:24)
(109:4)(118:22)(140:17)
eighth  (87:8)
either  (29:12)(34:14)
(35:12)(38:8)(90:14)
(92:13)(96:24)(107:10)
(111:21)(119:22)(123:5)
elaine  (2:6)(9:5)(125:13)
elements  (130:16)
ellis  (103:10)(108:8)
else  (13:15)(25:7)
(37:17)(39:17)(47:25)
(53:13)(64:3)(74:16)
(75:14)(111:2)(142:16)
elsewise  (22:2)
embarrassing  (124:19)
emergency  (143:5)
emotions  (42:1)
employee  (11:15)(32:24)
employment  (11:24)
(12:25)(13:10)(14:10)
(52:8)
encouraged  (34:14)(35:2)
end  (9:17)(9:21)(13:22)
(57:5)(93:17)(103:7)
(113:7)(125:24)(147:6)
ending  (60:18)
engine  (33:7)
enough  (22:21)(25:24)
(34:9)(53:11)(54:13)
(55:16)(59:8)(70:1)
(70:10)(71:4)(84:3)
(84:19)(85:22)(93:10)
(93:12)(106:1)(108:4)
(119:17)
enters  (5:5)(49:16)
(90:3)(94:15)(108:23)
(112:7)(115:15)(120:16)
(143:22)
entire  (6:16)(41:25)
(75:17)
entirely  (37:12)(38:18)
(44:20)(46:1)(46:3)(46:5)
(47:15)(88:21)
entitled  (43:24)(54:16)
(54:18)(54:19)(73:20)
(76:19)(87:1)(119:11)
(139:24)
envelope  (60:4)
environment  (82:23)
(83:17)(83:23)(85:2)
episode  (16:16)(59:20)
equation  (28:22)
equivalent  (88:19)

(131:18)
err  (107:11)
essentially  (61:5)(87:12)
evaluate  (20:21)
evans  (2:6)(9:5)(9:6)
(89:18)(99:16)(99:21)
(99:23)(100:4)(100:6)
(100:7)(100:12)(101:14)
(101:15)(103:1)(103:7)
(103:13)(103:19)(105:7)
(105:10)(105:15)(107:1)
(107:25)(108:7)(108:13)
(110:3)(110:25)(112:3)
(125:13)(126:7)(126:12)
(141:4)(141:6)(144:23)
even  (7:19)(14:9)(20:6)
(47:4)(63:7)(68:23)(76:9)
(77:7)(77:24)(97:23)
(99:14)(103:15)(105:22)
(106:19)(108:10)(131:2)
(133:19)(135:19)
event  (90:25)
ever  (18:13)(48:14)
(72:8)(85:5)(98:17)
(98:22)(99:7)(128:22)
every  (7:3)(16:20)
(17:13)(19:24)(22:25)
(38:12)(41:9)(56:3)(77:7)
(96:24)(123:4)(128:15)
(139:21)
everybody  (6:13)(61:23)
(96:7)(96:13)(96:15)
(108:14)(116:15)(116:17)
(122:5)(122:8)(122:15)
(122:20)(124:23)(128:13)
everybody's  (91:10)
everyday  (95:13)
everyone  (95:25)(96:9)
everything  (10:15)
(13:15)(22:6)(34:7)
(44:24)(47:25)(68:13)
(75:5)
evidence  (13:24)(14:12)
(17:17)(18:8)(20:1)
(21:19)(21:20)(22:6)
(23:4)(23:10)(23:22)
(24:20)(32:9)(32:10)
(34:14)(35:5)(35:21)
(35:22)(36:8)(36:20)
(38:1)(38:2)(40:4)(44:7)
(44:10)(46:12)(47:7)
(59:19)(62:21)(66:6)
(66:24)(69:14)(69:17)
(70:6)(72:9)(73:11)
(73:24)(74:21)(78:24)
(79:12)(80:1)(82:13)
(87:4)(87:13)(87:22)
(88:19)(90:22)(91:3)
(93:2)(93:3)(93:9)
(104:23)(106:14)(127:16)
(129:6)(130:10)(134:6)
(136:3)(137:7)(137:10)
(137:18)(148:8)
evidences  (74:14)
exact  (15:13)
exactly  (21:24)(34:16)
(34:22)(55:14)(69:18)
(70:23)(74:19)(77:18)
(102:20)
examination  (9:1)(10:2)
(10:8)(50:1)(97:1)
(100:11)(113:14)(117:20)
(123:6)(126:11)(145:5)
examiner  (21:15)
example  (16:4)(17:1)
(21:8)(26:11)(61:18)
(61:22)

examples  (61:19)(124:2)
(133:6)
excellent  (110:10)
except  (149:10)
exception  (57:15)(107:17)
excluding  (105:3)
excuse  (27:14)(63:11)
(63:14)(63:16)(105:11)
(108:3)(109:5)(120:6)
(140:19)(141:1)(143:15)
excused  (3:11)(3:14)
(3:16)(3:18)(3:20)(111:6)
(114:24)(115:11)(118:25)
(141:12)(143:10)(143:16)
(147:5)
execution  (142:21)(146:2)
exhibit  (4:15)(4:19)
(103:25)(104:4)(104:11)
(109:21)(110:7)(110:14)
(110:21)
exhibits  (4:16)(4:21)
(148:14)
exist  (23:17)
existing  (149:7)
exits  (86:9)(94:7)
(102:1)(109:17)(115:2)
(119:4)(141:3)(146:17)
expand  (125:8)
expect  (40:15)(41:18)
(68:12)(74:19)(78:3)
expected  (68:10)(68:22)
expects  (77:19)
expense  (51:16)
expenses  (52:2)
expensive  (46:24)
expires  (148:22)(149:20)
explain  (7:16)(15:5)
(123:23)(124:2)(131:19)
(135:7)(135:10)
explained  (60:15)
explains  (95:18)(144:17)
explanation  (142:7)
explored  (88:20)
exposed  (7:18)
expound  (8:15)
express  (54:18)
extra  (5:22)(12:7)
eye  (17:12)(131:16)
eyes  (137:14)

**F**

face  (17:3)(26:10)
(104:20)
facility  (81:10)
fact  (11:14)(11:17)
(13:2)(21:17)(21:18)
(22:8)(25:19)(63:19)
(71:19)(73:12)(73:21)
(81:7)(106:3)(134:5)
factor  (37:9)(37:15)
(44:23)(47:13)(47:16)
(47:22)(134:9)
facts  (27:10)(28:3)
(28:9)(28:13)(23:21)
(29:3)(34:13)(34:18)
(59:17)(66:23)(73:9)
(73:11)(73:14)(75:15)
(130:10)
fail  (8:4)
fair  (13:5)(53:11)
(54:13)(55:16)(70:1)
(70:10)(75:20)(76:2)
(84:3)(84:19)(85:22)
fairly  (56:13)(76:18)
fair-minded  (129:3)
fairness  (13:21)
faithful  (142:9)

fall                                                                going    156

fall  (45:23)(46:1)
families  (56:20)
family  (11:12)(31:15)
 (56:6)(75:25)(77:21)
 (99:10)(133:17)(133:20)
 (149:8)
fan  (40:20)
fancy  (18:6)
far  (14:7)(55:7)(66:22)
 (91:17)(136:19)
fast  (10:18)
faster  (82:6)
father  (36:10)(51:6)
favor  (15:3)(15:5)
 (22:10)(55:17)(128:14)
 (129:21)(130:2)(131:16)
 (142:4)(142:6)(142:8)
 (142:13)(145:15)(145:16)
fear  (51:23)(76:10)
 (76:17)
features  (33:17)
fed  (36:12)
feel  (7:23)(54:12)
 (54:24)(65:10)(67:20)
 (73:23)(82:21)(84:10)
 (84:21)(105:3)(114:4)
 (114:10)(117:1)(118:11)
 (127:13)(130:6)
feelings  (8:7)(113:23)
 (118:4)(145:14)(145:18)
 (145:21)(146:5)
feels  (56:2)(103:22)
fellow  (52:15)
felony  (15:25)(16:23)
 (17:7)(72:13)
female  (33:3)(108:4)
femoral  (62:10)
few  (6:15)(67:4)(76:8)
 (77:23)(81:22)(81:23)
 (96:5)(113:1)(113:8)
fifth  (21:4)
figure  (8:6)(22:22)
 (25:25)(76:16)
figured  (52:8)
fill  (55:9)(55:13)
filled  (10:14)(55:2)
 (113:18)(117:24)(122:6)
filmed  (139:10)
final  (18:16)(107:5)
finally  (47:11)
financial  (51:10)(52:19)
 (149:7)
fincher  (4:18)(110:15)
find  (8:23)(13:18)
 (22:15)(24:2)(24:19)
 (25:21)(29:9)(34:13)
 (35:4)(35:25)(38:5)(38:6)
 (44:4)(44:22)(45:8)
 (47:17)(47:21)(69:25)
 (74:12)(77:15)(85:6)
 (92:3)(98:8)(98:11)
 (103:10)(120:12)(120:22)
 (127:17)(127:19)(130:23)
fine  (5:11)(8:22)(50:4)
 (82:4)(97:22)(98:14)
 (101:22)(104:18)(106:23)
 (112:9)(115:18)(143:2)
firearm  (21:11)
fireman  (16:14)
fireperson  (16:14)
firms  (48:13)(48:19)
first  (17:18)(18:3)
 (18:11)(59:25)(70:2)
 (72:25)(74:8)(74:12)
 (75:12)(86:18)(88:4)
 (90:14)(92:21)(93:1)
 (97:22)(113:21)(118:2)

 (127:5)(127:24)(128:10)
 (129:21)(135:10)
fist  (26:8)
fit  (76:25)
five  (101:3)(113:22)
 (118:4)(142:1)(145:18)
five-minute  (49:12)
flies  (81:24)
flip  (57:20)(59:12)
flipping  (67:3)
float  (126:17)
florida  (100:13)(100:15)
 (101:7)(103:16)(104:13)
 (107:3)
focus  (13:23)(83:3)(83:4)
folks  (7:18)(96:4)(96:5)
 (111:2)
follow  (61:25)(119:16)
 (128:12)
followed  (87:16)
following  (1:18)(1:20)
 (47:6)(62:5)(62:9)
follows  (10:7)(100:10)
 (113:13)(117:19)(126:10)
 (145:4)(149:11)
follow-up  (47:12)
food  (36:12)(36:13)
foot  (25:6)
for  (3:5)(3:10)(3:11)
 (3:13)(3:14)(3:15)(3:16)
 (3:19)(3:20)(5:4)(5:13)
 (5:16)(5:23)(10:1)(12:22)
 (13:12)(16:4)(16:6)(17:1)
 (17:12)(17:13)(18:18)
 (18:20)(21:8)(22:22)
 (23:10)(24:5)(25:22)
 (26:7)(26:9)(26:23)
 (27:14)(27:25)(28:4)
 (28:6)(28:10)(30:9)
 (30:10)(30:12)(30:20)
 (32:11)(33:8)(39:19)
 (39:23)(39:25)(40:5)
 (40:16)(41:19)(43:8)
 (46:15)(47:20)(48:3)
 (48:4)(48:12)(48:23)
 (49:12)(49:15)(50:7)
 (51:3)(51:5)(51:12)
 (51:18)(51:21)(52:8)
 (54:5)(54:11)(55:23)
 (56:8)(56:12)(56:16)
 (56:17)(57:8)(57:24)
 (57:25)(59:16)(59:21)
 (60:5)(67:22)(68:18)
 (68:19)(68:20)(68:22)
 (68:25)(69:10)(69:19)
 (70:8)(71:5)(71:25)
 (75:19)(75:24)(76:4)
 (77:3)(79:19)(85:7)
 (86:12)(86:15)(86:19)
 (89:4)(89:13)(90:2)
 (90:19)(90:24)(91:1)
 (93:13)(93:16)(94:14)
 (94:24)(95:6)(98:18)
 (98:22)(100:14)(100:25)
 (101:2)(101:11)(101:20)
 (104:8)(104:22)(104:25)
 (105:3)(108:2)(108:21)
 (108:22)(109:2)(109:8)
 (110:5)(110:16)(110:18)
 (111:4)(112:6)(113:8)
 (114:24)(115:7)(115:9)
 (115:14)(115:23)(118:21)
 (119:9)(119:19)(120:15)
 (120:25)(121:11)(123:4)
 (124:11)(124:22)(128:15)
 (128:23)(129:23)(131:16)
 (132:2)(132:11)(134:1)

 (136:20)(141:5)(141:11)
 (141:24)(143:7)(143:21)
 (144:14)(146:11)(146:21)
 (147:4)(148:5)(148:9)
forced  (79:19)
foregoing  (148:7)
forethought  (15:10)
forfeited  (15:11)
forget  (5:12)
forgot  (47:11)(48:8)
forgotten  (123:15)
form  (61:4)(71:15)
 (137:18)
formed  (71:16)(138:25)
 (139:15)
forms  (60:23)
forth  (66:25)(74:14)
fortunately  (66:7)
forward  (92:6)
found  (14:2)(19:19)
 (27:22)(28:14)(29:17)
 (29:24)(30:2)(30:21)
 (30:22)(35:16)(62:19)
 (74:11)(75:4)(76:13)
 (82:12)(83:15)(84:24)
 (128:16)
four  (48:13)(98:13)
 (102:4)(104:17)(106:23)
 (113:24)(118:7)
fourteenth  (87:8)
frank  (2:8)(2:22)
frankly  (50:25)(56:14)
 (83:2)
fraud  (104:12)
free  (46:20)(48:4)(69:5)
freedom  (131:25)
frequently  (103:1)
friend  (33:18)
friends  (10:25)(36:11)
 (48:6)(75:25)
from  (5:10)(6:1)(9:1)
 (9:5)(12:1)(20:15)(24:19)
 (24:25)(34:13)(34:17)
 (36:7)(39:3)(40:18)
 (46:23)(47:6)(52:12)
 (55:18)(62:3)(62:5)(62:9)
 (62:20)(66:1)(68:9)
 (68:24)(69:17)(71:19)
 (73:24)(79:15)(81:2)
 (82:12)(83:1)(83:5)(91:4)
 (91:12)(92:6)(93:3)
 (93:25)(95:9)(100:19)
 (106:17)(109:5)(112:17)
 (121:15)(121:16)(125:14)
 (130:2)(137:7)(137:10)
 (137:11)(138:17)(138:22)
 (140:19)(141:12)(142:19)
 (142:22)(143:8)(144:10)
 (145:13)(146:1)(147:5)
front  (17:2)(20:5)(48:14)
full  (14:22)(14:23)
 (52:1)(120:9)
fully  (35:20)(52:20)
 (65:21)
fun  (81:25)
fund  (97:14)
fundamental  (19:23)
 (20:12)
funds  (97:11)(104:12)
funny  (33:16)
further  (76:10)(77:24)
 (101:14)(109:6)(114:13)
 (118:16)(140:19)(141:12)
 (147:5)(148:13)
future  (27:20)(27:21)
 (27:23)(28:12)(29:2)
 (31:3)(32:9)(32:10)

 (35:11)(47:20)(74:18)
 (76:14)(78:5)(78:8)
 (78:12)(78:18)(80:3)
 (82:8)(82:14)

## G

garfield  (1:7)
garland  (59:4)
gave  (7:12)(10:17)(58:3)
 (61:22)(76:6)(117:25)
general  (30:18)
generally  (63:22)
generic  (58:10)(58:14)
genetics  (82:22)(83:22)
gentleman  (9:8)(14:20)
 (125:17)
gentlemen  (5:14)(90:6)
 (94:22)(115:21)(144:6)
get  (11:22)(15:15)
 (33:11)(33:20)(35:1)
 (40:7)(49:5)(50:14)
 (51:19)(55:18)(56:22)
 (65:12)(67:6)(67:18)
 (71:25)(78:9)(82:7)(84:1)
 (84:21)(85:3)(89:16)
 (95:8)(98:2)(101:23)
 (111:2)(112:25)(113:1)
 (113:2)(116:12)(120:3)
 (144:21)
getaway  (33:7)
gets  (13:25)(14:2)(14:4)
 (16:21)(19:6)(24:4)
 (29:10)(29:11)(29:19)
 (30:23)(30:25)(32:15)
 (38:15)
getting  (71:23)(93:16)
 (98:7)(98:12)(98:25)
 (131:1)(136:22)
give  (7:1)(14:10)(15:5)
 (20:19)(24:9)(36:18)
 (38:9)(38:11)(51:21)
 (52:1)(53:3)(53:7)(55:12)
 (56:19)(86:5)(87:5)
 (87:23)(93:4)(96:22)
 (97:7)(105:21)(117:6)
 (119:24)(123:2)(125:2)
 (128:23)(133:6)(136:20)
given  (27:11)(32:5)
 (47:19)(79:13)(82:9)
 (103:20)(106:11)(128:12)
 (129:6)(129:14)(137:5)
 (148:16)
gives  (66:12)(123:18)
 (128:7)(137:8)
giving  (63:7)
glad  (5:20)(5:22)(138:7)
 (145:9)
goal  (60:18)(62:16)
 (62:23)
god  (63:24)(142:9)
goes  (40:17)(72:17)
 (91:17)(136:3)
going  (7:7)(7:11)(7:14)
 (7:15)(7:21)(7:22)(8:23)
 (8:25)(10:15)(11:13)
 (12:21)(12:22)(13:11)
 (22:10)(22:14)(25:5)
 (31:4)(33:16)(33:17)
 (34:21)(37:24)(40:3)
 (42:3)(43:11)(49:22)
 (50:7)(51:19)(52:19)
 (53:12)(53:14)(53:16)
 (53:25)(54:3)(54:9)
 (55:13)(62:2)(62:6)
 (64:20)(65:14)(66:14)
 (67:8)(67:14)(70:17)
 (76:14)(76:16)(76:21)

gone

(78:12) (80:4) (82:1) (82:6)
(82:13) (86:3) (87:13)
(90:16) (90:22) (92:1)
(92:22) (95:15) (97:7)
(107:11) (107:12) (109:5)
(109:11) (109:18) (109:20)
(109:21) (109:22) (113:6)
(117:3) (117:13) (118:19)
(123:10) (123:19) (123:23)
(124:6) (124:18) (125:2)
(125:4) (125:12) (128:11)
(131:15) (132:14) (132:20)
(133:6) (134:1) (134:8)
(135:1) (135:8) (140:3)
(140:18) (144:21) (144:23)
(145:10)
**gone** (51:2) (79:15)
**good** (5:6) (6:21) (6:24)
(7:10) (9:6) (9:15) (9:18)
(9:24) (10:10) (22:3) (25:6)
(25:19) (34:12) (47:20)
(48:16) (49:7) (54:10)
(54:15) (67:15) (67:19)
(68:7) (71:23) (93:10)
(93:12) (94:4) (95:5)
(101:2) (110:8) (113:16)
(117:22) (119:17) (119:18)
(122:25) (126:13) (126:14)
(143:14) (143:25) (144:1)
(145:8) (146:14)
**goodness** (51:1)
**gordon** (2:4) (9:2) (10:23)
(11:2) (113:5) (117:9)
(125:15)
**got** (8:4) (11:3) (33:6)
(33:23) (44:24) (51:12)
(51:14) (51:21) (51:22)
(65:5) (72:20) (72:21)
(77:21) (80:3) (80:13)
(80:15) (95:25) (98:6)
(98:9) (98:13) (101:4)
(116:9) (116:16) (122:2)
(122:8) (123:9)
**government** (32:23) (149:4)
**graduated** (100:19)
(100:23)
**granted** (110:18) (115:10)
(119:20) (141:11) (147:4)
**great** (56:25) (76:21)
(126:25)
**grind** (68:1)
**guards** (79:9) (80:16)
**guess** (6:14) (15:7)
(15:10) (16:14) (19:6)
(23:4) (26:16) (30:13)
(33:2) (33:14) (41:1)
(41:21) (41:22) (42:17)
(42:22) (45:19) (57:15)
(57:21) (59:18) (60:3)
(65:15) (66:15) (75:12)
(76:3) (79:19) (80:7)
(80:14) (80:24) (84:12)
(85:16) (115:25) (123:13)
(125:21) (138:17)
**guide** (7:8) (78:4) (123:13)
**guilt** (14:19) (18:9)
(20:2) (21:22) (41:7) (42:7)
(66:23) (69:25) (139:1)
**guilt/innocence** (53:17)
(53:22) (68:8) (72:4)
(74:22) (78:23) (127:17)
(130:22)
**guilty** (14:2) (14:19)
(17:20) (19:15) (19:17)
(19:19) (19:23) (20:10)
(21:23) (22:16) (23:24)
(24:3) (24:11) (27:23)

(28:15) (29:4) (29:9)
(29:18) (29:24) (30:2)
(30:21) (30:23) (35:16)
(40:6) (41:4) (43:21) (45:5)
(45:8) (45:22) (47:8)
(60:22) (60:23) (62:20)
(63:10) (63:12) (69:18)
(69:20) (73:25) (74:9)
(74:11) (74:13) (75:4)
(75:24) (76:13) (77:15)
(82:8) (83:15) (102:21)
(127:18) (127:19) (128:16)
(130:17) (130:24) (130:25)
(135:13) (135:25) (139:11)
(140:7) (140:8)
**gun** (33:10) (34:2) (34:19)
(35:1)
**gunshot** (21:14) (21:18)
(21:20) (21:25)
**gut** (78:24)
**guy** (11:11) (22:6) (23:12)
(25:6)
**guys** (22:21) (23:22)
(57:17)
**guy's** (41:4)

## H

**had** (1:20) (7:7) (8:18)
(10:22) (13:7) (13:19)
(36:10) (36:16) (48:20)
(51:8) (52:6) (55:3) (63:11)
(71:16) (76:5) (76:7) (78:5)
(78:13) (84:14) (85:11)
(91:19) (91:20) (95:21)
(97:9) (97:18) (98:11)
(98:20) (99:15) (100:20)
(103:9) (103:13) (105:1)
(106:20) (106:21) (106:22)
(106:23) (106:25) (108:7)
(113:1) (116:17) (122:15)
(123:8) (123:12) (123:16)
(141:21)
**hadn't** (71:19) (108:12)
(113:1) (141:23)
**half** (50:6) (71:22)
**hallway** (81:14) (119:25)
**hand** (6:17) (33:11) (53:5)
(96:8) (103:24) (116:17)
(122:16) (148:16)
**handed** (39:20) (39:24)
**handley** (2:3) (9:5)
(32:21) (33:5) (33:14)
(33:18) (34:5) (34:14)
(102:20) (125:14) (140:15)
(140:21) (142:14) (142:15)
(142:17) (143:7) (143:13)
(144:24) (144:25) (145:1)
(145:2) (145:6) (146:6)
(146:18) (146:19) (146:22)
**hands** (113:19)
**hang** (89:10) (128:18)
**happen** (7:7) (7:15)
(25:13) (25:16) (32:6)
(76:24) (78:24) (123:23)
**happened** (92:4) (97:21)
(103:13) (104:12) (133:17)
(133:20) (135:3) (136:4)
**happens** (16:3) (38:14)
(63:19) (85:15)
**hard** (41:21) (63:18)
(137:22)
**hardship** (51:10)
**harm** (74:15) (79:13) (81:6)
**harsh** (56:18)
**has** (11:9) (11:11) (16:22)
(16:25) (17:19) (18:4)
(19:14) (20:4) (20:7) (20:9)

(21:4) (21:10) (21:21)
(23:18) (23:23) (28:6)
(28:11) (28:25) (32:18)
(33:15) (40:5) (41:25)
(43:8) (44:11) (44:17)
(48:21) (55:7) (60:17)
(63:24) (70:12) (76:8)
(77:6) (77:18) (87:6) (88:6)
(88:23) (95:11) (95:14)
(104:24) (105:15) (106:4)
(106:5) (106:6) (110:17)
(114:17) (115:5) (115:6)
(116:3) (119:10) (121:19)
(122:5) (134:16) (134:21)
(142:1) (142:18) (142:24)
(144:16)
**hasn't** (111:15) (111:17)
(111:18) (111:20) (111:21)
**hate** (17:4) (43:3)
**have** (5:10) (5:20) (7:7)
(7:9) (7:17) (7:18) (8:8)
(8:11) (8:15) (8:17) (8:21)
(10:25) (11:6) (12:7)
(17:16) (18:2) (18:7)
(18:10) (18:12) (18:16)
(20:21) (21:9) (21:13)
(21:19) (22:15) (23:17)
(23:23) (24:10) (24:11)
(25:19) (27:4) (27:9)
(27:14) (28:14) (28:18)
(30:16) (30:25) (31:2)
(31:25) (32:2) (33:15)
(33:16) (34:17) (34:19)
(34:20) (36:5) (37:14)
(37:20) (40:19) (40:24)
(41:6) (41:11) (42:17)
(43:13) (44:24) (45:10)
(45:21) (46:25) (47:14)
(48:2) (48:6) (48:14)
(48:18) (48:20) (49:18)
(50:7) (50:20) (51:5) (51:7)
(51:8) (51:12) (51:14)
(51:23) (52:5) (52:8) (53:9)
(53:24) (54:2) (54:4)
(54:19) (54:23) (55:3)
(55:8) (56:15) (58:14)
(59:23) (60:1) (62:11)
(63:15) (63:20) (65:25)
(68:23) (69:2) (70:3)
(70:12) (70:20) (70:24)
(71:24) (72:9) (72:19)
(72:22) (73:8) (73:19)
(74:4) (74:20) (75:9)
(75:23) (76:17) (76:18)
(77:4) (80:24) (81:6)
(81:19) (82:17) (82:25)
(83:20) (84:8) (84:14)
(85:10) (85:22) (86:11)
(86:15) (88:14) (90:4)
(90:12) (93:7) (94:19)
(94:21) (97:7) (97:18)
(97:22) (97:23) (98:10)
(98:20) (98:22) (100:3)
(100:21) (101:16) (102:15)
(105:1) (106:9) (106:12)
(108:4) (108:24) (112:10)
(113:19) (114:13) (114:15)
(115:19) (120:14) (120:18)
(123:8) (123:12) (124:1)
(125:9) (127:6) (128:8)
(129:7) (129:11) (129:13)
(130:19) (135:1) (135:15)
(135:18) (136:7) (136:11)
(136:13) (138:5) (138:6)
(138:11) (138:25) (139:15)
(141:5) (142:15) (142:23)
(144:4) (145:24) (146:7)

(146:8) (146:20) (146:23)
(149:7)
**haven't** (62:7) (71:16)
(117:4) (125:3)
**having** (11:7) (11:13)
(11:17) (40:23) (51:2)
(52:12) (56:2) (81:25)
(108:11) (126:17) (146:23)
**head** (34:3) (45:15)
(54:17) (99:2)
**headed** (109:14)
**hear** (20:8) (20:15)
(25:10) (27:10) (30:11)
(30:12) (36:7) (36:12)
(36:14) (37:17) (37:19)
(38:1) (38:8) (56:9) (56:11)
(56:14) (63:23) (69:14)
(74:21) (75:9) (75:10)
(81:2) (97:5) (119:13)
(126:20) (127:16) (130:13)
(134:6) (136:25)
**heard** (1:19) (19:1)
(20:20) (21:3) (37:1) (37:3)
(40:19) (40:23) (40:25)
(41:3) (41:7) (41:11)
(46:14) (47:3) (47:25)
(57:22) (57:23) (58:10)
(58:15) (58:18) (59:18)
(71:19) (72:9) (73:10)
(80:1) (80:2) (82:17)
(91:19) (132:22) (136:3)
(137:11)
**hearing** (40:4) (53:11)
(58:19)
**hears** (136:15) (136:16)
**hearsay** (46:11)
**heather** (5:16) (94:24)
(148:4) (148:19) (149:17)
**he'd** (80:3)
**heinous** (42:25) (128:22)
**held** (1:21) (106:6)
**he'll** (113:7)
**hello** (125:16)
**help** (98:2)
**helped** (35:2)
**helping** (95:14) (112:23)
**her** (9:5) (17:3) (17:5)
(17:6) (17:8) (26:9) (26:10)
(26:22) (26:23) (26:24)
(27:9) (27:11) (27:12)
(27:13) (33:1) (33:4) (34:3)
(34:4) (34:20) (67:14)
(67:21) (105:3) (105:17)
(106:3) (106:23) (107:9)
(108:12) (108:16) (109:22)
(110:6) (110:15) (119:9)
(119:13) (125:14) (125:15)
(141:21) (141:22) (141:24)
(142:1) (142:7) (142:11)
(142:12) (142:13) (142:18)
(142:19) (142:22) (143:4)
**her -- what** (119:15)
**here** (5:11) (5:24)
(6:6) (6:7) (6:9) (7:7) (7:8)
(7:18) (9:1) (9:8) (10:13)
(15:15) (17:2) (20:1) (20:5)
(21:15) (23:21) (24:6)
(26:8) (26:24) (27:24)
(28:8) (30:20) (35:16)
(36:7) (43:12) (43:14)
(47:1) (48:13) (51:12)
(55:4) (56:19) (56:22)
(59:14) (60:24) (64:16)
(65:12) (65:17) (68:20)
(71:20) (71:23) (76:4)
(84:20) (89:16) (90:9)
(94:20) (95:5) (95:7)

**hereby**                                                                              **into**    158

(95:14)(95:19)(97:7)
(97:23)(98:2)(98:6)(98:7)
(98:8)(98:11)(98:13)
(98:15)(98:24)(99:5)
(100:6)(101:20)(102:3)
(102:4)(103:8)(103:17)
(104:24)(105:20)(106:17)
(109:9)(109:18)(111:2)
(111:19)(111:23)(112:2)
(112:4)(112:21)(112:23)
(113:22)(114:24)(115:13)
(115:23)(116:5)(116:9)
(117:12)(118:18)(120:1)
(120:4)(120:12)(120:14)
(120:23)(121:22)(121:25)
(122:2)(122:4)(123:10)
(124:24)(125:18)(125:23)
(127:14)(128:4)(128:25)
(129:12)(129:14)(134:2)
(136:14)(138:8)(140:6)
(141:1)(143:18)(144:10)
(144:14)(144:17)(144:21)
(145:9)(146:11)
**hereby** (148:6)
**here's** (21:7)(24:17)
(28:13)(33:5)(34:12)
(35:14)(35:20)(37:20)
(38:7)(40:24)(71:2)
(81:13)(90:19)(141:1)
**herself** (104:24)
**he's** (6:3)(6:4)(18:9)
(19:15)(19:17)(19:19)
(19:23)(20:13)(23:24)
(28:12)(29:17)(29:24)
(30:2)(31:2)(35:11)(40:6)
(41:9)(44:18)(47:7)
(47:13)(69:19)(70:21)
(74:8)(80:4)(82:8)(82:13)
(89:2)(95:12)(112:19)
(112:21)(116:9)(121:25)
(122:2)(126:4)
**hey** (10:23)(13:2)(51:20)
(127:9)(128:18)(131:3)
(133:19)
**hierarchy** (80:14)
**high** (37:3)(37:18)
(100:20)
**hikel** (2:4)(9:2)(9:3)
(10:1)(10:3)(10:9)(10:23)
(19:10)(44:6)(44:12)
(44:16)(48:25)(50:8)
(60:10)(61:22)(65:22)
(69:11)(79:5)(86:11)
(86:13)(87:13)(87:16)
(87:25)(88:1)(88:3)(89:6)
(94:5)(111:6)(113:6)
(113:7)(113:10)(113:11)
(113:15)(114:13)(115:4)
(115:5)(117:9)(117:15)
(117:16)(117:21)(118:16)
(119:6)(119:8)(119:12)
(119:14)(119:17)(120:10)
(125:15)(125:16)
**him** (6:3)(6:6)(9:4)
(9:17)(22:11)(22:15)
(24:9)(24:11)(28:14)
(35:16)(36:11)(37:25)
(45:8)(62:4)(62:5)(62:7)
(62:8)(62:9)(62:12)
(66:14)(74:11)(74:12)
(87:7)(87:14)(87:15)
(87:16)(87:17)(87:18)
(88:12)(88:17)(88:21)
(89:1)(89:16)(95:11)
(112:20)(112:23)(116:3)
(116:10)(121:20)(138:18)
(138:19)(140:6)(144:16)

**his** (6:4)(11:8)(11:12)
(24:9)(29:25)(30:1)(30:9)
(30:10)(31:3)(31:4)
(32:15)(36:8)(36:13)
(36:14)(37:19)(41:7)
(44:8)(44:14)(44:22)
(60:10)(60:18)(61:6)
(62:11)(62:23)(69:11)
(87:11)(88:10)(88:18)
(93:5)(95:12)(112:22)
(116:8)(121:8)(121:25)
(141:8)
**history** (75:14)(78:4)
(78:6)(78:11)(78:13)
(78:17)(110:16)
**hit** (32:22)(58:2)
**hits** (62:10)
**hold** (22:14)(88:24)
(132:21)(133:6)(140:5)
**holding** (74:6)(104:23)
**holds** (55:11)
**holly** (2:18)(2:19)
**home** (16:5)(51:22)
(109:11)
**homeowner** (12:15)
**honest** (77:4)(83:10)
(139:19)
**honesty** (84:21)
**honor** (10:3)(44:1)
(86:13)(86:16)(99:17)
(99:24)(100:7)(101:15)
(103:19)(103:24)(105:7)
(107:25)(113:11)(117:16)
(141:6)(146:7)(146:24)
**honorable** (1:21)
**hope** (128:4)
**hoping** (71:20)
**horrible** (128:22)
**horrific** (128:22)
**hot** (97:12)
**hotel** (39:23)(91:12)
**hour** (61:10)
**hours** (40:21)(57:25)
(104:18)(106:24)
**how** (5:6)(7:23)(11:21)
(14:5)(15:22)(21:8)
(24:17)(41:18)(49:2)
(50:3)(52:14)(54:11)
(54:24)(57:22)(65:22)
(65:23)(66:2)(66:18)
(67:13)(68:3)(73:23)
(74:2)(76:16)(78:21)
(81:19)(83:11)(84:10)
(84:21)(94:16)(95:2)
(100:25)(104:6)(112:8)
(112:14)(115:16)(117:1)
(118:10)(120:17)(127:10)
(127:13)(127:22)(130:6)
(131:7)(133:10)(139:9)
(143:23)(145:7)
**however** (105:18)
**huh** (50:16)
**human** (60:21)(61:9)
(142:20)(142:22)(146:3)
**hundred** (12:7)(53:4)
(53:8)
**hypotheticals** (124:3)

**I**

**i'd** (5:16)(26:25)(51:25)
(55:15)(64:22)(77:10)
(79:3)(90:24)(94:24)
**idea** (15:5)(63:20)
(74:20)(124:1)
**ideas** (7:23)(8:17)(8:21)
(15:16)(93:8)(124:6)
**identify** (41:22)(61:24)

(76:7)
**ill** (63:20)(101:6)
**i'll** (6:24)(10:19)
(22:18)(25:3)(37:22)
(56:22)(57:4)(61:18)
(67:7)(72:5)(86:5)(96:18)
(101:23)(108:16)(119:25)
(122:25)(144:25)
**illinois** (86:25)(99:24)
(99:25)(100:2)
**illustrate** (79:5)
**illustration** (32:20)
**i'm** (5:8)(5:9)(5:25)
(6:1)(6:6)(6:7)(8:8)
(8:12)(10:15)(12:22)
(13:2)(13:3)(20:10)
(20:11)(22:9)(25:3)(25:5)
(32:23)(33:5)(33:12)
(34:16)(34:20)(37:24)
(38:24)(39:14)(42:13)
(43:11)(49:7)(49:9)(50:5)
(50:6)(50:10)(51:4)(53:9)
(53:11)(53:14)(53:16)
(54:3)(54:8)(55:5)(62:1)
(62:2)(62:3)(62:6)(64:1)
(65:15)(66:1)(67:5)
(70:17)(70:25)(72:2)
(75:22)(77:1)(77:3)
(77:12)(79:6)(82:1)(82:5)
(83:2)(83:5)(83:10)(86:2)
(88:4)(89:10)(92:7)(92:8)
(95:3)(95:8)(95:9)(95:18)
(97:7)(100:19)(102:3)
(106:17)(107:11)(107:12)
(109:18)(109:20)(109:21)
(109:22)(112:15)(112:17)
(112:21)(112:23)(115:25)
(116:4)(119:12)(119:14)
(120:6)(121:14)(121:15)
(121:21)(121:22)(123:10)
(125:2)(138:7)(139:4)
(140:14)(140:18)(142:8)
(142:11)(143:3)(143:16)
(143:20)(144:9)(144:17)
(145:9)(145:10)(145:16)
**imagine** (24:25)(51:6)
(80:7)
**impaneled** (19:1)(19:6)
(20:8)
**important** (11:3)(14:8)
(21:8)(41:16)(65:18)
(81:5)(131:11)(133:8)
**imposed** (36:3)
**imprisonment** (29:12)
(36:2)
**inability** (119:16)
**inattentive** (66:13)
**incarcerate** (46:17)
**incarcerated** (46:15)
(77:24)
**incarceration** (78:6)
(78:7)
**incident** (78:14)(105:17)
**incidentally** (121:25)
**include** (59:17)(99:9)
**included** (148:10)
**including** (44:8)(48:16)
(82:18)
**income** (12:2)
**inconvenience** (52:11)
**incorrigibles** (76:9)
(77:23)
**index** (3:1)(4:1)(4:15)
**indicate** (58:9)(59:2)
(59:15)(74:14)
**indicated** (59:19)(60:10)
(64:6)(65:21)(84:5)(87:6)

(105:15)
**indicates** (25:12)(59:24)
(102:7)(104:11)(106:3)
**indication** (53:21)
**indictment** (18:8)(20:1)
(21:9)(21:14)(29:18)
(43:22)(45:6)(68:13)
(68:18)(68:19)(69:19)
(77:15)(130:17)
**individual** (1:12)(14:21)
**industrial** (2:9)(2:22)
(148:21)(149:19)
**influence** (39:15)(41:7)
(41:12)(59:10)
**influenced** (36:11)
**influences** (39:1)
**influencing** (39:3)
**information** (82:17)
(92:13)(97:23)(105:21)
(106:1)(106:9)(106:11)
(108:5)(123:13)(136:16)
(138:2)
**informed** (141:20)
**inhibitions** (84:14)
**in-house** (48:12)
**inmate** (81:5)(81:10)
**inmates** (31:9)(31:18)
(31:23)(31:25)(79:9)
(80:12)
**innocence** (14:19)(20:3)
(21:22)(41:8)(42:8)
(66:23)(139:25)(141:8)
**innocent** (20:11)(20:13)
(24:10)(68:11)(70:11)
(70:14)(70:21)(71:1)(71:6)
**insane** (63:15)
**insensitive** (11:14)
**inside** (48:21)(78:7)
**instance** (68:25)
**instead** (6:8)(112:21)
(121:24)(133:9)(144:18)
**instruct** (54:9)
**instructed** (20:8)(39:5)
(138:1)
**instruction** (7:8)
**instructive** (78:16)(81:1)
**insufficient** (97:11)
(97:14)(104:12)
**intelligent** (25:24)
**intend** (53:20)(61:13)
**intended** (35:13)(61:2)
**intending** (60:21)(62:14)
(133:14)
**intent** (76:12)
**intention** (62:7)(62:8)
(62:12)(62:13)(76:7)
**intentional** (16:1)
(16:22)(17:14)(60:16)
(60:17)(61:1)(61:2)
(63:17)(69:1)(72:11)
(73:22)(74:1)(82:11)
(85:5)(134:3)(134:16)
(135:2)(135:16)
**intentionally** (16:8)
(16:9)(16:10)(16:13)
(16:21)(17:2)(17:6)(17:8)
(17:23)(21:10)(24:3)
(28:15)(34:1)(45:7)
(60:12)(61:6)(63:8)(73:13)
**interact** (66:1)
**interaction** (31:23)
**interesting** (41:18)
**internet** (92:2)
**interview** (138:15)
(138:16)(138:22)
**interviewing** (138:18)
**into** (7:14)(19:18)

intoxication                                                                                    know        159

(27:21) (32:8) (33:6) (34:5)
(35:21) (40:25) (52:5)
(56:23) (67:14) (74:5)
(75:4) (75:13) (76:22)
(83:3) (83:4) (83:7) (92:2)
(134:2)
**intoxication** (37:6)
(84:4) (84:13) (86:20) (88:4)
**introduce** (8:24) (104:1)
(125:11)
**introduced** (5:25)
**introduction** (7:11)
(123:25)
**invested** (71:22)
**investment** (78:10)
**involved** (7:25) (8:20)
(66:12) (96:25) (117:2)
(123:6) (124:10) (125:12)
**involving** (15:25)
**irrelevant** (83:19)
**isn't** (8:3) (26:6) (35:19)
(36:20) (77:12) (77:14)
(98:7)
**issue** (24:18) (28:12)
(29:4) (32:13) (32:14)
(32:15) (32:18) (35:4)
(35:7) (35:17) (35:18)
(35:20) (36:5) (38:6) (38:7)
(43:22) (43:23) (44:5)
(45:23) (72:6) (72:7) (73:8)
(74:3) (74:13) (74:24)
(75:2) (75:16) (76:3) (76:6)
(77:6) (82:1) (82:2) (82:9)
(82:19) (84:4) (84:7)
(84:10) (84:22) (85:4)
(86:21) (88:3) (88:13)
(100:6) (105:24) (130:20)
(130:21)
**issues** (7:25) (14:5)
(14:6) (15:22) (19:21)
(24:6) (24:12) (25:24)
(29:24) (30:4) (30:5)
(30:20) (31:1) (31:2)
(32:11) (45:22) (47:9)
(52:19) (52:20) (54:8)
(54:24) (56:21) (60:7)
(65:13) (68:20) (70:2)
(72:22) (76:20) (87:2)
(91:10) (124:8) (127:20)
(130:20) (131:7) (133:1)
(135:23)
**its** (88:24)
**it's** (6:12) (8:5) (8:10)
(11:2) (14:8) (19:13) (21:6)
(23:15) (25:2) (25:7) (25:8)
(27:18) (29:22) (35:15)
(36:17) (36:18) (37:7)
(37:13) (43:15) (43:17)
(44:19) (46:1) (46:5)
(46:23) (50:18) (50:19)
(51:18) (52:15) (53:24)
(55:2) (55:13) (56:10)
(56:12) (57:4) (57:7)
(58:17) (60:14) (61:4)
(63:1) (63:2) (63:3) (63:5)
(63:18) (64:8) (67:17)
(67:19) (67:23) (68:6)
(73:23) (77:19) (77:20)
(78:10) (80:16) (81:3)
(81:13) (83:3) (85:16)
(87:21) (88:6) (88:21)
(88:22) (90:20) (95:25)
(97:5) (97:8) (97:10) (98:7)
(100:18) (100:23) (104:19)
(109:21) (113:25) (116:15)
(118:8) (120:23) (121:11)
(124:20) (126:19) (127:5)

(128:1) (128:22) (131:11)
(131:22) (132:11) (134:24)
(135:18) (139:10) (139:13)
(139:22) (142:5) (142:22)
**itself** (27:15) (41:19)
(44:19)
**i've** (10:17) (10:21)
(10:22) (11:3) (18:18)
(27:11) (33:6) (33:23)
(35:6) (37:1) (37:3) (44:6)
(46:14) (47:3) (48:11)
(51:1) (51:12) (51:14)
(51:21) (51:22) (57:22)
(57:23) (71:3) (72:20)
(79:25) (80:2) (80:3)
(85:11) (97:6) (98:6)
(101:12) (123:15) (128:22)

## J

**jack** (23:14)
**jail** (99:7) (138:17)
(138:23)
**james** (1:7) (9:21) (58:23)
(126:4)
**january** (98:2)
**job** (11:3) (11:9) (11:12)
(18:3)
**joint** (33:1) (33:14)
**juan** (3:19) (4:4) (111:19)
(144:8) (145:3) (147:3)
**judge** (1:21) (5:10) (5:25)
(6:1) (6:2) (6:8) (6:14)
(11:19) (13:5) (39:22)
(45:10) (48:25) (49:20)
(82:4) (87:25) (89:1) (89:9)
(91:11) (92:8) (92:21)
(93:4) (93:14) (93:25)
(95:8) (95:9) (95:10)
(95:11) (96:5) (106:22)
(106:25) (110:15) (110:18)
(111:13) (112:15) (112:17)
(112:18) (112:19) (112:21)
(114:14) (115:25) (116:2)
(116:3) (116:7) (116:17)
(117:25) (118:16) (119:8)
(121:5) (121:8) (121:10)
(121:11) (121:14) (121:15)
(121:16) (121:19) (121:24)
(122:11) (126:25) (128:7)
(128:25) (137:8) (144:9)
(144:10) (144:14) (144:15)
(144:18)
**judgment** (142:20) (146:1)
**judgmental** (66:4) (66:6)
**july** (90:12) (90:17)
(90:18) (93:17)
**jump** (130:25)
**june** (1:18) (3:3) (59:3)
**junior** (67:14)
**juries** (18:20) (39:6)
**juror** (4:18) (4:23) (5:4)
(5:17) (6:18) (10:22)
(10:24) (11:23) (13:1)
(13:9) (14:9) (18:4) (24:18)
(27:19) (28:1) (28:9) (29:1)
(29:8) (29:20) (30:21)
(34:13) (37:11) (38:18)
(38:20) (40:23) (41:13)
(44:3) (46:5) (47:6) (47:14)
(47:18) (49:15) (54:10)
(66:8) (68:10) (70:25)
(72:25) (73:7) (73:15)
(73:23) (75:2) (77:3)
(77:17) (80:1) (82:16)
(88:6) (88:8) (88:20)
(88:23) (89:2) (89:13)
(90:2) (90:9) (94:14)

(94:25) (96:9) (103:21)
(103:23) (104:24) (105:4)
(105:15) (105:21) (106:2)
(106:4) (106:7) (106:10)
(106:11) (106:15) (107:14)
(107:20) (108:3) (108:22)
(109:19) (110:14) (110:16)
(112:6) (115:5) (115:10)
(115:14) (116:18) (119:8)
(119:20) (120:15) (120:23)
(121:1) (122:16) (123:13)
(127:16) (128:11) (129:8)
(129:12) (129:15) (130:9)
(141:7) (141:11) (141:19)
(143:2) (143:15) (143:21)
(144:8) (146:22) (147:3)
**jurors** (14:6) (17:17)
(19:16) (20:9) (20:11)
(22:21) (23:10) (23:22)
(24:19) (25:19) (25:24)
(38:9) (38:19) (38:23)
(39:19) (39:22) (40:15)
(41:1) (45:24) (46:1)
(53:25) (55:18) (56:11)
(66:5) (69:10) (71:9)
(72:19) (84:9) (84:10)
(90:11) (92:9) (92:23)
(126:20) (128:6)
**juror's** (14:23) (73:1)
(87:3)
**jury** (6:3) (6:7) (6:13)
(8:5) (11:22) (15:15)
(18:13) (19:6) (20:7)
(51:15) (51:24) (52:14)
(62:20) (72:8) (76:22)
(78:22) (87:1) (90:14)
(90:17) (90:18) (90:19)
(91:1) (91:8) (91:9) (91:14)
(92:7) (92:21) (92:23)
(93:5) (95:12) (95:15)
(96:1) (96:25) (104:4)
(109:6) (110:6) (112:20)
(112:23) (116:4) (116:16)
(121:21) (122:2) (129:12)
(140:19) (141:12) (141:24)
(144:16) (147:5)
**jury's** (51:17)
**just** (6:24) (7:12) (8:6)
(13:6) (15:7) (15:15) (18:9)
(22:23) (26:8) (26:9)
(26:23) (27:11) (27:12)
(28:21) (32:16) (33:8)
(33:10) (33:13) (33:19)
(34:5) (35:7) (37:10) (38:8)
(41:25) (42:23) (43:3)
(43:19) (44:11) (46:16)
(46:25) (49:17) (53:9)
(53:24) (54:11) (54:23)
(56:10) (56:12) (56:20)
(58:5) (58:14) (60:5) (61:1)
(61:7) (63:19) (64:13)
(65:16) (73:9) (73:21)
(74:11) (74:21) (75:3)
(76:13) (77:14) (77:22)
(78:22) (79:11) (80:19)
(81:6) (81:17) (81:24)
(83:14) (84:13) (84:20)
(89:10) (89:16) (89:24)
(91:12) (94:20) (95:7)
(96:18) (97:8) (98:19)
(98:24) (99:4) (99:21)
(100:4) (100:7) (101:20)
(102:23) (103:6) (103:14)
(106:1) (106:10) (107:6)
(108:4) (109:1) (109:18)
(111:5) (111:23) (112:10)
(113:4) (114:8) (115:19)

(116:12) (117:1) (117:25)
(120:13) (120:18) (120:19)
(121:21) (122:25) (123:18)
(123:25) (124:14) (124:19)
(127:13) (130:9) (130:23)
(131:11) (131:20) (132:21)
(133:3) (134:23) (136:10)
(136:13) (139:19) (139:20)
(141:25) (143:9) (144:4)
(144:21) (145:10) (146:11)
**justice** (56:10) (56:16)
(56:21) (64:2) (77:19)
**justification** (27:9)
(63:10) (105:3)
**justifications** (136:5)
**justified** (73:18)
**justify** (54:19) (54:23)
(104:23)

## K

**keep** (38:25) (52:12)
(56:21) (62:5) (91:12)
(92:1) (110:24)
**keeping** (62:8)
**kept** (38:23)
**keri** (2:20) (9:17) (125:25)
**kessler** (114:19)
**kidnapping** (16:4) (16:24)
**kids** (68:7) (85:17)
**kill** (16:3) (16:13)
(16:15) (17:1) (17:4) (17:8)
(23:12) (33:21) (34:4)
(63:14) (142:10)
**killed** (16:21) (17:6)
(21:10) (34:2) (35:12)
(35:13) (45:7) (59:20)
(60:2) (61:3) (62:22) (63:7)
(72:12) (73:13) (82:11)
**killing** (16:1) (16:25)
(17:22) (24:3) (28:15)
(60:17) (62:8) (63:17)
**kills** (64:7)
**kind** (5:21) (7:10) (7:12)
(8:7) (8:13) (11:12) (13:3)
(41:22) (57:16) (57:17)
(60:1) (60:24) (62:19)
(64:16) (68:10) (75:3)
(78:25) (85:16) (91:12)
(95:8) (121:11) (123:18)
(123:22) (123:25) (124:20)
(127:22) (127:25) (131:20)
(132:4) (132:5) (137:22)
**kinds** (16:18) (16:24)
(26:3)
**klif** (57:12)
**knew** (34:22)
**know** (7:2) (7:5) (7:17)
(7:23) (8:4) (8:5) (8:7)
(8:10) (8:14) (8:15) (8:16)
(8:17) (8:19) (8:20) (8:22)
(10:25) (11:2) (11:5)
(11:21) (13:11) (13:13)
(13:17) (13:18) (13:25)
(14:18) (14:22) (15:9)
(15:10) (22:5) (22:9)
(22:11) (22:12) (22:13)
(23:8) (23:10) (23:11)
(23:12) (23:13) (25:5)
(26:14) (26:16) (26:18)
(26:19) (27:5) (27:11)
(28:23) (28:24) (30:7)
(32:8) (33:11) (34:9) (35:5)
(36:7) (36:12) (37:4)
(38:25) (39:5) (39:6)
(39:14) (40:18) (41:3)
(41:21) (41:22) (41:25)
(42:17) (42:25) (43:1)

knowing                                                                                                    made    160

(43:4) (43:6) (43:12)
(45:18) (45:19) (45:20)
(45:21) (45:23) (46:14)
(48:19) (48:20) (50:25)
(51:4) (51:11) (51:15)
(51:20) (53:3) (53:4) (55:1)
(55:23) (56:2) (56:3)
(56:24) (57:7) (57:12)
(58:6) (58:22) (58:23)
(58:24) (59:10) (59:25)
(60:1) (60:3) (61:12)
(61:20) (63:6) (64:14)
(64:25) (66:5) (66:6)
(66:13) (66:14) (66:25)
(67:15) (67:22) (68:7)
(69:21) (69:22) (69:23)
(69:24) (70:13) (70:16)
(71:3) (71:4) (71:21)
(72:17) (72:19) (74:15)
(74:22) (74:25) (75:20)
(75:23) (78:10) (78:11)
(79:6) (79:14) (79:20)
(79:21) (80:24) (81:5)
(83:21) (83:22) (83:23)
(84:13) (84:14) (84:15)
(84:18) (84:22) (85:16)
(85:17) (85:20) (85:21)
(87:20) (87:21) (88:15)
(91:6) (91:10) (91:13)
(92:4) (92:13) (92:14)
(93:8) (93:17) (93:23)
(93:24) (95:7) (96:23)
(97:10) (99:6) (99:11)
(99:14) (100:18) (101:24)
(102:12) (102:18) (102:24)
(103:16) (104:19) (105:24)
(106:7) (106:18) (106:25)
(107:3) (107:4) (107:7)
(107:10) (107:13) (109:12)
(109:20) (117:4) (120:11)
(121:4) (121:9) (121:22)
(122:20) (123:3) (124:20)
(125:3) (125:9) (126:16)
(126:17) (127:8) (127:9)
(127:13) (128:13) (128:15)
(128:17) (128:18) (129:11)
(131:23) (132:22) (133:14)
(136:5) (136:22) (137:4)
(138:4) (139:10) (139:20)
(140:4)
**knowing**    (50:9) (56:3)
(75:9) (85:4)
**knowingly**    (16:8) (16:9)
(16:11) (16:13) (60:12)
(60:16) (60:19) (63:4)
**knowledge**    (82:25) (149:7)
**knows**    (26:19) (34:19)
(83:7)

**L**

**labeled**    (32:11)
**lack**    (57:8)
**ladies**    (5:14) (9:7) (90:6)
(94:22) (115:21) (125:17)
(144:6)
**lady**    (104:11)
**lake**    (2:18) (2:19)
**lane**    (2:17) (3:8) (4:5)
(4:24) (94:12) (94:15)
(94:16) (94:18) (95:1)
95:2) (95:3) (95:17)
(95:20) (95:23) (96:3)
(96:10) (96:13) (96:17)
(96:20) (97:2) (97:15)
(97:17) (97:24) (97:25)
(98:4) (98:17) (98:20)
(99:2) (99:8) (100:1)

(100:9) (100:13) (101:22)
(101:25) (102:1) (104:9)
(107:22) (108:10) (108:16)
(108:23) (108:24) (109:1)
(109:3) (109:7) (109:10)
(109:12) (109:15) (109:16)
(109:17)
**last**    (11:20) (48:10)
(84:19) (104:10) (111:4)
(121:12) (136:14)
**late**    (90:18)
**later**    (14:7) (129:15)
**laugh**    (17:2)
**law**    (2:13) (2:17) (7:16)
(7:22) (7:24) (8:7) (16:18)
(17:10) (19:24) (20:18)
(22:11) (22:18) (24:8)
(24:12) (27:25) (28:8)
(28:9) (28:18) (29:21)
(32:8) (32:19) (34:9)
(34:12) (34:25) (35:14)
(35:20) (36:19) (37:7)
(37:13) (37:20) (38:11)
(39:18) (40:9) (43:7)
(43:20) (44:2) (48:13)
(48:19) (54:2) (56:15)
(56:18) (56:19) (60:8)
(60:25) (61:5) (62:18)
(63:17) (68:21) (69:1)
(72:24) (72:25) (73:7)
(74:19) (77:1) (77:18)
(82:16) (87:24) (88:5)
(88:12) (88:24) (93:4)
(103:21) (107:3) (115:6)
(117:1) (119:11) (119:16)
(123:23) (124:7) (128:7)
(128:9) (128:10) (128:12)
(129:4) (129:7) (134:2)
(137:6) (137:8) (146:23)
**law-abiding**    (22:12)
**lawn**    (128:19)
**laws**    (15:18) (79:17)
(80:16) (129:13) (137:5)
(145:16)
**lawyer**    (44:17) (48:4)
(74:25)
**lawyers**    (11:19) (22:20)
(41:2) (50:10) (127:6)
(144:22)
**learn**    (68:7)
**least**    (34:8) (43:8)
(59:12) (59:25) (71:25)
(87:2) (95:4) (126:22)
**leave**    (5:12) (33:13)
(33:21) (53:12) (54:12)
(61:21) (123:10) (141:22)
(146:11)
**leaving**    (34:21) (62:3)
**left**    (48:8) (52:16) (81:19)
**leg**    (62:5)
**legal**    (63:9) (63:11)
(63:14) (136:4)
**legislators**    (25:23)
(30:19) (36:5)
**legislature**    (28:23)
(29:21) (64:13) (76:5)
(76:12)
**lengthy**    (10:14)
**leon**    (104:13)
**less**    (46:16) (46:23)
(66:15) (78:19)
**lesser**    (63:3)
**let**    (7:6) (8:24) (13:21)
(15:17) (22:11) (22:14)
(26:21) (28:7) (33:6)
(33:10) (37:10) (39:10)
(40:22) (41:3) (43:19)

(44:25) (55:19) (63:1)
(72:4) (74:21) (79:4)
(81:17) (83:12) (86:4)
(93:24) (97:22) (98:1)
(98:8) (98:10) (101:19)
(101:20) (101:24) (107:19)
(108:16) (112:25) (113:1)
(113:4) (120:22) (121:22)
(124:14) (125:11) (133:25)
(135:7) (135:10) (136:20)
(141:17) (143:9)
**let's**    (15:1) (22:3) (33:1)
(33:9) (42:11) (49:11)
(49:21) (50:22) (60:5)
(72:6) (94:8) (94:12)
(97:20) (98:1) (98:6) (98:8)
(98:9) (99:14) (100:19)
(110:23) (111:3) (112:25)
(115:12) (129:18) (143:18)
**letter**    (93:20) (93:21)
(93:25)
**level**    (20:20)
**level-headed**    (129:3)
**liberal**    (67:17)
**lick**    (32:23)
**life**    (10:15) (11:8) (14:4)
(15:9) (15:11) (15:21)
(24:14) (28:6) (29:12)
(29:19) (29:25) (30:9)
(30:10) (30:23) (31:4)
(32:16) (32:17) (36:2)
(36:13) (36:14) (36:17)
(41:17) (42:7) (42:25)
(46:7) (46:16) (55:21)
(56:13) (60:19) (60:21)
(61:9) (65:3) (65:19)
(68:25) (69:6) (75:17)
(85:7) (85:13) (129:23)
(130:3) (131:3) (131:8)
(132:2) (132:9) (132:19)
(133:9) (145:17)
**lifetime**    (131:17)
**light**    (11:24) (12:24)
(45:1) (45:16) (47:16)
(143:4)
**like**    (5:16) (8:5) (13:15)
(18:25) (26:9) (35:3) (47:2)
(48:18) (49:4) (49:6)
(51:22) (51:25) (52:15)
(55:14) (55:15) (56:2)
(57:23) (61:19) (61:22)
(63:2) (63:4) (63:25)
(64:2) (65:9) (65:14)
(67:16) (70:24) (71:3)
(71:14) (74:21) (75:10)
(77:10) (77:14) (78:9)
(78:23) (79:3) (79:11)
(81:9) (84:12) (85:16)
(90:19) (90:24) (91:21)
(91:23) (92:5) (93:25)
(94:24) (97:10) (97:21)
(98:16) (99:1) (99:12)
(99:20) (102:13) (102:15)
(102:16) (103:5) (103:6)
(104:7) (104:15) (107:8)
(120:25) (123:9) (124:19)
(124:25) (127:3) (127:10)
(128:1) (129:2) (131:14)
(131:21) (134:1) (135:11)
(142:16)
**like -- does**    (141:5)
**likely**    (7:17) (25:12)
(25:15) (25:20) (26:1)
(69:18)
**likewise**    (78:13)
**likewise if**    (78:15)
**line**    (8:21) (16:14)

(16:15) (116:1) (120:7)
**list**    (99:18) (99:23)
(103:11)
**listed**    (99:10) (108:12)
**listen**    (56:24) (57:3)
(57:23) (92:15) (130:9)
**listened**    (51:7)
**listening**    (92:16)
**lists**    (99:16)
**little**    (7:6) (7:13) (8:18)
(19:1) (22:9) (49:5) (53:15)
(55:2) (56:23) (60:4)
(65:16) (67:8) (82:6)
(83:21) (91:19) (97:4)
(116:24) (124:23)
**live**    (79:20) (100:13)
(101:1) (114:18) (132:2)
(142:10)
**lived**    (107:9)
**lives**    (11:7) (14:20)
(66:15)
**living**    (56:1) (80:2)
(131:22)
**locked**    (76:9)
**lockett**    (86:24)
**lollar**    (2:12) (9:14)
(9:15) (49:21) (101:16)
(101:18) (102:6) (102:9)
(102:13) (102:17) (102:25)
(103:24) (104:3) (104:6)
(104:8) (104:15) (105:12)
(105:13) (106:13) (107:16)
(107:23) (109:15) (109:23)
(110:1) (110:3) (110:5)
(110:9) (114:16) (114:17)
(114:21) (115:8) (119:16)
(125:24) (141:9) (143:1)
(143:12) (146:8) (147:1)
**lonesome**    (33:4)
**long**    (11:21) (13:9)
(51:21) (57:1) (97:18)
(98:21) (100:24) (101:2)
(113:4) (116:14) (118:19)
**longer**    (51:17)
**look**    (11:2) (13:11)
(19:20) (27:21) (32:8)
(35:23) (37:22) (38:3)
(51:12) (55:14) (72:6)
(72:20) (72:21) (77:22)
(79:25) (123:13) (129:18)
**looking**    (43:15) (57:24)
(76:4) (77:3) (91:4) (92:1)
(97:6) (104:10) (106:17)
(120:7) (136:13)
**looks**    (15:20) (97:10)
(97:21) (104:15) (105:16)
(123:9) (129:2)
**lord's**    (142:9)
**lose**    (12:4) (13:25)
**losing**    (13:3)
**lost**    (12:13)
**lot**    (8:16) (32:18) (57:20)
(84:1) (92:15) (126:20)
(128:3)
**lots**    (10:25)
**loud**    (98:8)
**loved**    (31:16)
**low**    (84:16) (88:9)

**M**

**ma'am**    (94:20) (108:25)
(115:20) (117:22) (119:2)
(120:19) (125:16) (140:21)
**machine**    (1:24) (68:2)
**made**    (5:22) (23:23)
(60:17) (86:21) (106:21)
(111:14) (111:17) (111:19)

magic  (111:20)(111:21)(114:6)
(118:22)(140:17)(145:9)
magic  (53:6)
magnitude  (103:15)(106:3)
mail  (93:24)
make  (13:13)(13:20)
(22:5)(28:7)(33:6)(54:1)
(54:11)(54:20)(60:7)
(67:3)(67:8)(69:6)(71:11)
(76:5)(76:23)(77:25)
(78:25)(79:4)(79:5)(81:7)
(85:11)(90:13)(92:25)
(93:6)(97:23)(110:24)
(128:10)(131:13)(135:25)
(137:20)
makes  (21:5)(137:21)
making  (13:2)(14:12)
(51:3)(61:20)(71:22)
mallon  (2:20)(9:17)
(9:18)(125:25)(126:4)
man  (36:15)(45:12)(84:12)
manifest  (41:19)
manner  (81:11)
many  (25:20)(27:24)
(52:14)(58:2)(100:25)
marathon  (25:2)(25:7)
margo  (3:12)(4:8)
(111:23)(115:12)(117:18)
(119:20)
mark  (104:3)
marked  (103:25)
mask  (33:15)(34:20)
matches  (98:10)
matter  (53:5)(97:4)
(124:12)
matters  (6:5)(54:12)
(76:19)(112:22)(116:9)
(122:1)
matthew  (59:4)
may  (8:17)(10:3)(12:7)
(20:16)(20:17)(27:4)
(27:9)(28:1)(28:9)(28:21)
(29:2)(31:19)(31:22)
(36:7)(36:11)(36:14)
(36:15)(37:8)(40:6)
(40:19)(40:24)(41:6)
(41:11)(44:18)(47:2)
(48:16)(56:18)(57:6)
(58:14)(59:25)(61:11)
(66:4)(75:23)(79:24)
(84:8)(84:14)(88:5)(88:7)
(88:14)(89:9)(91:11)
(93:23)(98:2)(106:19)
(108:10)(133:23)(136:13)
(146:2)
maybe  (7:25)(8:14)(11:7)
(11:20)(13:1)(15:7)(19:7)
(19:9)(23:14)(25:2)
(55:23)(56:10)(61:24)
(100:20)(101:2)(124:2)
(126:22)(128:5)(128:18)
m-c  (5:18)
mcdonald  (3:5)(4:6)(5:5)
(5:6)(5:8)(5:17)(5:19)
(5:20)(6:10)(6:11)(6:20)
(6:23)(7:9)(9:23)(10:6)
(10:10)(11:9)(13:8)(15:1)
(23:2)(25:10)(28:8)(36:4)
(40:16)(43:11)(44:7)
(45:1)(46:4)(48:2)(48:23)
(49:2)(49:3)(49:7)(49:16)
(49:17)(49:20)(50:3)
(50:5)(50:25)(53:14)
(54:4)(55:3)(55:20)
(56:14)(59:12)(65:16)
(67:6)(72:2)(72:7)(74:20)
(76:4)(81:17)(82:4)

(84:20)(85:22)(86:2)
(86:7)(86:9)(86:19)(87:6)
(87:10)(89:5)(89:7)(90:3)
(90:5)(90:8)(90:10)
(91:15)(91:21)(91:24)
(92:19)(93:11)(93:14)
(93:19)(94:2)(94:7)
mckinney  (5:10)(6:1)
(95:9)(112:18)(121:16)
(144:11)
mean  (14:14)(14:18)
(21:7)(23:2)(26:19)(27:4)
(34:2)(39:11)(41:19)
(41:24)(42:13)(42:22)
(53:2)(57:22)(58:14)
(59:24)(64:22)(65:8)
(70:24)(75:22)(76:14)
(80:13)(80:16)(80:18)
(80:19)(80:23)(81:3)
(83:13)(84:12)(84:16)
(88:22)(91:6)(91:17)
(97:9)(97:17)(102:22)
(106:6)(120:12)(122:19)
(127:11)(131:19)(131:21)
(131:22)(133:12)(136:18)
(136:19)(138:4)(138:5)
(139:17)
meaning  (16:23)(30:12)
(35:23)(137:2)
means  (20:4)(22:23)
(25:20)(26:1)(31:4)
(32:16)(32:20)(69:1)
(69:13)(89:1)(102:12)
(103:16)(103:17)
meant  (16:3)(22:19)
(55:10)(88:16)
media  (136:15)(136:24)
(137:12)
medical  (20:17)(21:15)
(31:9)(143:4)
meet  (70:7)(112:16)
(144:12)(144:13)
member  (6:19)(116:19)
members  (6:15)(6:22)
(9:9)(31:13)(31:16)
(96:12)(99:10)(116:22)
(122:17)(125:19)(133:17)
(133:21)
memory  (59:7)
men  (68:3)
mental  (63:3)(77:5)
mentally  (37:14)(37:16)
(63:20)
mentioned  (15:3)(16:24)
(18:16)(22:17)(35:7)
(37:5)(40:19)(41:15)
(42:5)(42:10)(42:11)
(46:7)(82:19)(90:21)
mere  (22:8)
merely  (44:21)
mesquite  (18:21)
met  (6:13)
michael  (6:2)(95:10)
(112:18)(116:2)(121:17)
(144:14)
mid  (59:15)
midday  (57:16)
might  (8:7)(8:20)(8:21)
(44:10)(56:17)(61:9)
(68:23)(74:21)(78:4)
(78:7)(80:8)(81:1)(81:5)
(91:8)(92:12)(97:18)
(97:21)(98:20)(98:22)
(100:3)(105:1)(116:1)
(133:18)(137:22)(149:9)
miles  (61:10)
military  (85:17)

mills  (3:10)(4:7)
(111:23)(112:5)(112:7)
(112:9)(112:11)(112:13)
(112:14)(112:16)(113:1)
(113:4)(113:9)(113:12)
(113:16)(114:19)(114:21)
(114:22)(114:25)(115:2)
(115:11)
mind  (15:2)(25:9)(26:10)
(37:22)(37:25)(44:11)
(52:13)(56:22)(59:12)
(60:18)(71:11)(75:10)
(76:6)(76:7)(97:20)
(128:4)(131:18)(132:3)
(132:16)
mindful  (11:17)
minding  (27:12)
minute  (72:5)(89:10)
(98:11)(101:20)(119:25)
(120:20)
minutes  (67:5)(81:21)
(113:8)
misstatement  (44:2)
mistake  (63:3)(134:18)
(135:2)(136:5)
misunderstand  (65:24)
misunderstood  (136:14)
misused  (42:12)(43:17)
(45:3)
mitigating  (36:1)(36:6)
(36:17)(36:19)(36:21)
(36:22)(37:9)(37:12)
(37:15)(37:21)(38:18)
(44:10)(44:13)(44:17)
(44:18)(44:20)(44:23)
(46:2)(46:6)(47:16)
(47:22)(85:6)(87:4)
mitigation  (44:4)(84:6)
(86:23)(87:2)
moment  (60:5)(67:16)
(81:17)(85:24)(95:21)
(97:8)
monetary  (16:6)(46:23)
money  (12:12)(12:13)
(13:3)(32:25)(33:20)
(33:23)(46:16)(51:3)
month  (6:12)(8:10)(25:2)
(71:17)(95:25)(116:15)
(122:6)(122:9)(125:4)
(128:1)
months  (12:22)(102:5)
(106:23)
months'  (98:13)(104:18)
moral  (35:24)(84:2)
(128:24)(142:18)(145:24)
more  (7:14)(7:17)(16:15)
(23:4)(25:15)(25:20)
(26:1)(28:22)(32:25)
(36:23)(43:4)(46:25)
(47:20)(56:23)(57:6)
(58:19)(59:19)(59:24)
(65:11)(65:21)(67:8)
(69:13)(69:18)(69:23)
(70:6)(73:21)(79:4)(81:5)
(87:12)(87:14)(87:18)
(87:22)(88:15)(88:17)
(123:24)(124:2)(127:23)
(134:1)
morgan  (86:25)
morning  (5:6)(5:21)
(5:24)(9:6)(9:15)(9:18)
(10:10)(11:18)(33:3)
(33:13)(92:3)(94:17)
(95:2)(104:25)(126:21)
most  (7:17)(55:17)(57:5)
(124:22)(128:22)(133:19)
mostly  (57:3)(57:4)

(57:7)(57:9)
mother  (36:9)(36:10)
(101:4)
move  (24:1)(32:14)(72:2)
(75:4)(119:9)
moved  (101:6)
moving  (99:2)
much  (7:19)(9:25)(43:4)
(47:19)(55:4)(55:14)
(57:22)(71:17)(81:19)
(83:21)(84:16)(93:13)
(93:15)(94:3)(94:4)
(109:8)(113:2)(114:24)
(118:24)(140:16)(140:18)
(140:22)(143:15)(146:10)
multiple  (28:5)(59:17)
(64:19)
murder  (7:13)(7:20)
(14:1)(15:19)(16:7)
(16:19)(16:22)(16:23)
(17:5)(17:10)(17:14)
(17:15)(17:22)(18:2)
(19:20)(23:9)(23:25)
(26:5)(27:23)(28:15)
(29:4)(29:9)(29:18)
(29:25)(30:2)(30:22)
(31:20)(33:25)(34:8)
(34:17)(35:17)(43:21)
(45:6)(53:19)(60:12)
(60:22)(60:23)(62:19)
(62:20)(65:20)(68:9)
(74:1)(75:3)(76:14)
(76:22)(77:16)(83:15)
(113:25)(118:8)(121:20)
(124:11)(127:18)(127:19)
(128:16)(129:12)(130:17)
(130:24)(131:1)(133:10)
(134:7)(134:8)(134:12)
(134:14)(134:16)(139:24)
murderer  (72:11)(73:22)
(82:11)(84:23)(84:24)
(85:5)
murderers  (72:15)
music  (57:7)(57:25)
(58:1)(59:4)
must  (20:12)(20:19)
(24:13)(37:11)(54:4)
(54:5)(62:20)
myself  (5:25)(12:23)
(32:21)(48:17)(51:3)

**N**

name  (97:24)(121:12)
nasty  (5:21)(98:7)
ncic  (4:18)(4:23)(104:9)
(105:19)(110:15)
necessarily  (74:12)
need  (24:5)(28:22)
(32:25)(54:9)(56:21)
(76:15)(97:4)(98:2)
(105:6)(108:19)(110:4)
needs  (108:20)
negligence  (63:5)
nephew  (99:11)
nervous  (124:23)
never  (7:18)(7:19)
(10:22)(34:5)(82:7)
(85:10)(88:20)(101:12)
(104:25)(106:4)(114:1)
(118:9)(128:21)(128:23)
(129:8)(142:2)(145:1)
new  (25:1)(79:20)
news  (58:15)(92:3)
(136:15)(137:12)(138:6)
(138:12)(138:14)
newspaper  (92:4)(92:10)
(92:14)(92:18)

next

162

| | | | |
|---|---|---|---|
| next (9:2)(9:4)(9:13)(9:16)(21:3)(25:2)(26:8)(52:24)(91:4)(125:14)(125:15)(125:23)(126:3)(129:25) | (35:19)(38:4)(38:21)(108:14)(127:25) | occasionally (63:19)(72:19) | overruled (75:19)(90:1)(94:11)(110:12)(111:11)(141:16)(148:12) |
| nice (39:23)(112:16)(144:12)(144:13) | noticed (18:15)(99:4)(102:4)(145:13) | occur (137:16) | opinion (39:14)(42:4)(70:25)(71:8)(138:25)(139:16) |
| nobody's (124:24)(140:2) | notified (90:17) | occurred (148:11) | opinions (7:24)(54:16)(54:18)(54:19)(71:15)(71:16)(76:18)(76:19)(119:10)(124:7) |
| nods (45:15)(54:17) | now (6:12)(7:6)(8:18)(10:21)(10:24)(11:4)(11:13)(12:24)(15:17)(17:11)(18:12)(19:22)(21:15)(22:3)(23:1)(23:21)(24:2)(24:24)(25:9)(25:21)(26:2)(26:20)(26:23)(27:18)(27:24)(28:7)(29:8)(29:17)(30:19)(32:5)(32:11)(34:18)(35:7)(36:4)(37:10)(37:23)(38:3)(40:15)(42:5)(43:7)(43:11)(43:14)(43:15)(43:19)(45:16)(50:6)(51:21)(54:2)(56:24)(62:7)(63:17)(64:6)(64:25)(67:13)(68:17)(69:10)(70:24)(71:8)(71:23)(72:19)(72:20)(73:19)(77:14)(79:19)(87:20)(90:18)(95:25)(97:3)(99:7)(106:7)(107:2)(110:23)(111:1)(111:3)(112:14)(112:25)(120:19)(121:6)(121:10)(122:6)(123:8)(123:16)(124:14)(125:11)(127:9)(132:19)(139:14)(140:6)(141:14)(143:18) | o'clock (33:12) | |
| noisy (126:21) | | odd (26:9) | opponent (133:19) |
| nondescript (66:12) | | off (37:22)(37:25)(73:11)(141:14) | opportunity (7:8)(8:13)(65:25)(79:13)(123:12)(127:6)(127:11) |
| none (20:23)(48:13)(48:18)(56:14) | | offense (17:20)(23:25)(27:13)(35:22)(72:13)(73:14)(73:23)(74:1)(82:12)(101:11)(104:22)(104:25) | opposed (38:23) |
| non-lethal (61:12) | | offenses (75:23) | order (32:12)(54:9)(76:25)(81:6)(113:3) |
| normal (126:23) | | offer (110:13) | other (9:9)(10:13)(15:19)(16:1)(17:25)(19:16)(19:24)(23:7)(24:18)(25:4)(27:20)(28:6)(31:15)(37:17)(38:19)(38:21)(39:6)(41:1)(41:9)(52:15)(52:24)(58:17)(60:13)(68:9)(70:13)(71:12)(71:19)(72:10)(73:11)(75:3)(91:16)(9 :18)(100:3)(103:24)(106:5)(111:2)(125:19)(128:20)(134:11)(142:11)(148:8) |
| north (2:9)(2:22)(148:21)(149:19) | | offered (148:15) | |
| not (8:5)(11:7)(11:13)(13:2)(13:8)(15:16)(16:20)(17:5)(17:19)(18:14)(19:22)(20:25)(21:5)(21:23)(22:4)(22:16)(23:15)(25:6)(25:8)(25:21)(26:1)(26:12)(26:13)(27:14)(27:19)(28:4)(28:19)(30:3)(30:16)(30:24)(31:2)(32:2)(34:24)(36:20)(37:4)(37:7)(37:12)(38:24)(39:6)(39:15)(39:25)(40:11)(41:12)(42:7)(44:17)(44:21)(46:4)(46:9)(47:5)(47:7)(47:8)(47:10)(49:9)(49:10)(52:15)(53:20)(54:3)(54:5)(54:9)(54:19)(55:22)(56:8)(56:17)(56:18)(56:19)(56:20)(59:8)(60:14)(60:23)(61:1)(61:4)(61:7)(61:21)(62:21)(63:1)(63:2)(63:3)(63:5)(63:6)(63:17)(64:2)(64:4)(64:14)(66:12)(67:3)(67:5)(67:21)(68:19)(69:4)(69:9)(69:18)(69:22)(70:12)(71:11)(71:24)(73:10)(74:9)(74:12)(75:3)(75:8)(75:14)(77:1)(77:19)(77:20)(78:24)(79:6)(79:21)(80:9)(81:13)(83:2)(83:10)(84:5)(84:10)(85:24)(86:19)(86:20)(87:6)(87:23)(88:7)(88:18)(89:12)(89:24)(90:17)(90:18)(91:12)(91:13)(92:9)(92:10)(97:15)(102:22)(103:7)(103:20)(104:20)(104:21)(104:24)(105:21)(106:1)(106:6)(106:10)(106:14)(106:19)(107:6)(107:14)(108:11)(114:7)(120:11)(121:4)(121:9)(124:16)(128:12)(128:24)(131:8)(131:22)(133:6)(135:2)(135:13)(135:25)(136:7)(137:10)(137:16)(137:18)(138:1)(139:11)(141:22)(142:5)(142:10)(142:13)(145:15)(145:16) | office (2:7)(2:18)(2:19)(2:21)(104:10)(148:16) | |
| | officer (16:13)(20:24) | |
| | officers (20:17) | |
| | official (148:4)(148:20)(149:18) | others (76:11)(77:25) |
| | off-the-record (89:25)(141:15) | otherwise (24:16)(24:17)(29:23)(40:11)(70:16)(105:4) |
| | ohio (86:24) | ought (38:10)(38:13)(76:23)(78:24)(83:7) |
| | oklahoma (86:25) | our (10:25)(11:1)(15:18)(22:18)(23:8)(23:22)(54:16)(54:18)(54:19)(61:5)(71:5)(89:17)(107:16)(127:11)(136:7) |
| | old (16:17)(64:14)(68:2)(68:3)(72:18)(92:3)(97:10)(107:7)(108:11) | |
| | older (43:9) | ourselves (54:11) |
| | once (11:22)(20:25)(39:20)(40:7)(51:24)(75:2)(75:4)(85:3)(124:5) | out (8:6)(8:23)(10:14)(13:20)(22:22)(25:25)(30:18)(32:22)(33:1)(33:11)(33:18)(33:22)(46:14)(51:1)(51:4)(51:12)(51:18)(55:2)(55:9)(55:13)(56:25)(58:1)(58:17)(61:25)(62:5)(62:9)(63:20)(65:8)(71:23)(71:25)(76:16)(80:2)(91:10)(95:6)(97:20)(98:7)(101:20)(103:10)(103:22)(108:8)(108:15)(113:2)(113:18)(117:24)(119:25)(120:12)(122:6)(128:4)(128:18)(133:13)(134:5)(134:19)(135:19) |
| | one (6:21)(13:6)(14:3)(15:9)(15:21)(16:15)(17:1)(18:4)(18:25)(19:13)(19:14)(19:25)(23:21)(24:9)(25:3)(25:7)(27:24)(28:22)(30:7)(31:1)(33:3)(33:12)(35:1)(39:21)(41:13)(43:3)(44:14)(48:3)(54:15)(55:13)(55:14)(56:16)(58:17)(59:11)(59:19)(59:24)(59:25)(64:23)(68:23)(69:9)(70:13)(71:11)(73:10)(74:8)(74:25)(77:23)(79:4)(79:18)(79:19)(81:3)(82:9)(84:19)(89:17)(89:19)(90:20)(92:24)(93:1)(96:11)(96:15)(96:22)(97:4)(99:16)(99:18)(111:4)(111:16)(113:5)(113:22)(115:11)(116:21)(118:3)(119:22)(123:2)(123:10)(127:25)(128:5)(132:19)(133:17)(133:20)(136:15)(136:16)(139:5)(142:5)(144:23) | |
| note (107:16)(143:7)(149:2) | number (1:6)(4:17)(4:22)(20:2)(20:15)(24:18)(28:12)(28:16)(29:4)(32:13)(32:14)(32:15)(32:18)(35:4)(35:17)(35:18)(35:21)(38:6)(38:7)(38:13)(38:14)(43:23)(44:5)(45:9)(72:6)(73:9)(74:3)(74:13)(76:6)(77:6)(78:19)(82:1)(82:2)(82:9)(82:19)(84:7)(84:10)(84:22)(85:4)(86:21)(90:12)(90:20)(96:22)(98:6)(98:9)(99:15)(99:19)(99:21)(99:22)(113:24)(118:7)(123:2)(142:5)(145:18) | | |
| noted (89:14)(107:18) | numbered (1:20)(142:5)(148:11) | ones (31:16)(111:16)(125:5) | outcome (18:17)(59:24)(105:22)(105:25) |
| nothing (40:22)(68:20)(97:19)(124:18) | numerous (46:17) | one's (121:6)(132:14)(132:20) | outside (30:13)(33:7)(34:6)(39:1)(59:4)(78:6)(79:15)(79:24)(80:8)(86:3)(137:11)(138:2) |
| notice (26:2)(26:20) | nurse (81:13) | ongoing (26:18) | |
| | nurses (31:8)(32:7)(79:10)(81:4) | only (18:11)(19:18)(19:20)(21:6)(25:3)(32:13)(33:3)(35:1)(37:12)(39:20)(48:20)(51:3)(51:6)(52:15)(53:24)(55:5)(58:2)(62:21)(65:25)(72:14)(73:2)(75:1)(75:15)(93:3)(93:6)(111:22)(112:2)(127:6)(127:11)(127:18)(137:6)(137:10)(139:5) | over (6:2)(6:12)(6:15)(8:10)(57:6)(59:13)(59:14)(65:12)(68:20)(82:20)(84:4)(95:15)(95:25)(96:5)(97:5)(99:5)(112:19)(116:2)(116:15)(121:20)(122:2)(122:6)(122:9)(123:13)(125:3)(144:15) |
| | **O** | | |
| | oak (114:17) | | |
| | oath (6:18)(6:22)(6:25)(13:6)(22:13)(47:6)(54:6)(92:22)(92:23)(96:8)(96:12)(96:14)(96:19)(116:18)(116:22)(122:16)(122:22)(123:1) | | |
| | object (44:1) | | |
| | objection (3:6)(3:9)(115:8)(141:9)(147:1) | open (5:3)(49:14)(52:13) | overruled (89:4) |
| | objective (16:2)(16:10)(34:4)(61:6)(69:1) | | |
| | obligated (70:25) | | |
| | obvious (43:15)(142:22) | | |
| | obviously (11:10)(17:11)(30:19)(50:6)(51:11)(76:12) | | |

HEATHER H. VEZINA, CSR

own                                                                                              proceedings 163

own (22:18)(54:16)(69:5) (80:14)(91:13)(128:24) (137:14)

**P**

page (3:4)(4:17)(4:22) (8:14)(11:14)(15:3) (15:14)(28:2)(37:5)(37:6) (37:8)(41:15)(42:11) (42:13)(42:14)(42:16) (43:16)(45:2)(45:16) (46:8)(47:17)(48:7)(48:8) (48:9)(59:2)(59:13) (59:15)(64:8)(64:9) (65:15)(67:3)(82:20) (99:5)(104:10)(113:21) (118:2)(129:21)(129:25) (133:5)(136:13)(145:24)
paid (39:23)(97:22) (98:22)
panel (6:13)(6:14)(6:17) (6:19)(6:22)(90:10)(96:6) (96:9)(96:11)(116:19) (116:21)(122:12)(122:17)
paper (18:8)(20:1)
parcel (28:20)
parents (37:19)
park (114:19)
parker (1:21)(3:12)(4:8) (5:9)(6:1)(95:9)(111:23) (112:15)(115:12)(115:13) (115:15)(115:16)(115:18) (115:24)(115:25)(116:6) (116:11)(116:14)(116:20) (116:23)(117:7)(117:11) (117:14)(117:18)(117:22) (118:18)(118:20)(118:23) (119:1)(119:3)(119:4) (119:20)(121:15)(144:9)
parks (2:16)(9:16)(44:1) (49:9)(49:22)(49:23) (49:24)(49:25)(50:2) (50:5)(50:16)(50:18) (50:20)(81:18)(81:22) (81:24)(82:5)(86:14) (86:16)(86:18)(88:17) (89:9)(89:12)(94:6) (103:5)(107:19)(110:10) (119:22)(120:9)(125:24) (143:4)
parole (14:4)(15:21) (24:15)(29:12)(29:19) (30:24)(32:16)(32:17) (36:2)(41:17)(46:7) (55:22)(131:9)(132:9) (132:20)
part (18:3)(18:11) (19:13)(19:14)(19:18) (24:1)(24:9)(24:11) (28:20)(66:8)(66:16) (74:12)(75:13)(86:22) (110:6)
partiality (149:10)
participating (8:25)
participation (93:17)
particular (75:16) (78:14)(100:5)
particularly (76:17) (88:8)(145:24)
parties (3:18)(32:20) (137:25)(143:11)(143:17) (148:10)(148:15)(149:9)
party (35:6)(55:24)(56:2)
pass (8:4)(81:13)
past (27:5)(67:3)(78:4) (78:10)(149:7)
pause (81:17)

pay (12:7)(50:21)(52:8) (129:23)
paying (12:22)(32:1)
peggy (4:18)(110:15)
penalty (14:5)(15:4) (15:6)(15:23)(24:5)(28:5) (35:11)(35:16)(41:17) (42:12)(43:13)(45:3) (45:19)(45:20)(46:8) (55:17)(55:21)(59:16) (59:22)(63:7)(64:10) (64:15)(64:21)(66:20) (66:21)(66:22)(77:8) (113:23)(114:2)(118:5) (118:10)(119:10)(128:15) (128:23)(129:19)(129:22) (130:2)(131:1)(131:9) (131:18)(132:7)(132:17) (133:20)(135:5)(142:4) (142:5)(142:6)(142:8) (142:13)(145:15)(145:20)
pencil (90:24)
penitentiaries (30:8)
penitentiary (76:10) (76:15)(79:8)(79:9) (79:10)(79:12)(80:9) (80:11)(80:15)(81:4)
people (10:13)(16:16) (20:5)(30:13)(31:13) (31:19)(37:15)(38:22) (38:25)(42:18)(48:14) (52:14)(53:7)(56:9) (59:14)(63:5)(63:22) (64:1)(70:13)(71:4) (72:10)(79:11)(79:13) (81:6)(82:21)(99:12) (126:17)(127:4)(128:13) (128:20)(136:24)
perceive (66:18)
perceived (65:23)
percent (23:4)(53:4) (53:8)(69:13)(69:23) (70:6)(87:14)(88:15) (88:16)(88:17)
peremptory (90:13)
performed (21:17)
perhaps (31:9)(31:12) (31:18)(56:12)
period (12:7)(100:14) (100:16)(116:25)
person (10:22)(11:6) (14:22)(15:18)(15:20) (15:24)(16:3)(16:18) (17:1)(17:20)(17:24) (21:10)(21:16)(22:7) (26:19)(28:6)(41:9) (41:24)(47:18)(56:3) (56:16)(59:19)(60:2) (60:12)(60:17)(60:19) (61:1)(61:3)(61:5)(62:19) (63:15)(65:19)(66:1) (73:15)(75:4)(76:24) (77:9)(78:13)(79:12) (80:2)(80:8)(82:10)(83:7) (84:23)(128:16)(130:17) (131:8)(133:9)(134:19) (135:13)(146:1)
personal (71:5)(71:8) (128:24)(142:19)(145:25)
personally (48:20) (48:21)(114:1)(118:9)
personnel (20:17)
persons (72:14)(76:17)
person's (14:18)(14:22) (15:9)(16:2)(44:3)(60:13) (60:19)(75:17)(76:13) (78:4)(82:18)(129:22)

pertaining (75:15)(118:5)
phase (19:19)(53:17) (53:19)(53:20)(54:1) (66:20)(66:21)(66:22) (72:4)(74:22)(75:5) (127:5)(127:17)(127:21) (130:18)(130:21)(130:22) (130:23)
phases (127:4)
phone (93:19)(93:22)
phrase (132:22)
pick (33:17)
picked (64:12)(64:13)
picking (6:6)
pickings (33:4)
piece (18:8)(20:1)(33:10)
place (61:12)(114:8)
placed (105:18)(105:19)
plain (77:11)
plan (32:22)
planned (34:7)(34:19) (35:2)
playing (58:5)
plays (58:1)(84:1)
plea (19:9)
plead (139:11)
please (10:4)(49:19) (86:3)(90:7)(94:13) (94:20)(94:23)(107:16) (108:25)(112:11)(115:20) (115:22)(120:19)(120:21) (143:7)(144:5)(144:7) (149:5)
pleasure (93:16)
plenty (48:6)
plural (26:21)
plus (16:23)(134:8) (134:15)
point (6:16)(71:11) (75:19)(75:20)(79:4) (79:5)(79:15)(83:19) (85:15)(90:11)(92:6) (96:6)(116:16)(122:14) (126:18)(128:1)(128:5) (136:8)
pointing (65:8)
points (142:11)
police (16:13)(20:16) (20:24)
poll (127:8)
popped (26:19)
populace (30:18)
population (71:5)
portfolios (78:10)
portion (60:11)(69:12) (71:5)(127:15)
portions (148:8)
pose (27:19)
poses (29:2)
position (11:24)
possibilities (23:16) (23:17)(32:5)
possibility (24:14)(25:1) (25:1)(25:7)(25:10) (25:12)(38:12)
possible (23:13)(23:14) (25:1)(25:7)(25:10) (25:12)(38:12)
possibly (27:2)(107:13)
potential (40:23)(43:5) (43:6)(47:20)(107:20)
potentially (74:15)
preconceived (93:8)
predict (27:21)(32:8)
prefer (11:10)(13:8)
premeditated (15:10)
premise (24:14)
preponderance (87:12) (87:22)(88:19)

prescribed (45:20)
present (5:3)(49:14) (90:1)(94:11)(110:12) (111:11)(141:16)
presentation (66:8)(91:3)
presented (13:24)(23:22) (66:6)(87:3)(87:5)(93:2)
presenting (17:17)
presiding (1:21)(6:2) (95:10)(95:15)(112:19) (116:2)(121:16)(121:20) (122:2)(144:15)
pressures (51:7)
presume (20:11)(20:19) (29:20)(29:21)(68:10) (70:10)(70:20)(71:1) (71:6)(73:1)(140:6)
presumed (24:10)(70:13)
presumption (20:3) (20:12)(21:3)(24:12) (41:8)(139:25)(141:8)
pretrial (91:18)(92:12)
pretty (55:9)(55:14) (74:23)(76:1)(77:11) (86:21)(126:19)(142:22)
prevent (47:5)(142:19) (145:25)
preview (123:19)
price (3:17)(4:9) (111:12)(119:22)(120:4) (141:18)(141:20)(142:1) (143:16)
p-r-i-c-e (141:20)
primary (68:4)
primer (7:13)
principle (19:12)
principles (19:23)
printout (4:18)(4:24)
prior (75:13)(75:23) (78:17)
prison (14:4)(15:21) (29:19)(30:23)(31:4) (31:6)(31:13)(31:16) (31:19)(32:3)(32:16) (32:17)(46:15)(79:17) (79:22)(99:7)(131:17) (132:2)
prisons (31:10)
private (51:2)
probability (24:21) (24:24)(25:20)(25:22) (25:25)(27:22)(77:25)
probable (25:4)(25:8) (25:11)(25:15)
probably (6:12)(13:13) (26:12)(33:16)(48:3) (50:7)(60:6)(63:13) (63:22)(65:8)(65:9)(67:4) (73:16)(78:19)(79:21) (81:21)(82:13)(83:20) (85:10)(90:12)(90:17) (90:23)(93:21)(93:22) (95:24)(96:1)(98:14) (100:18)(101:2)(116:15) (117:6)(122:6)(122:7) (125:7)(128:3)(132:22) (137:21)
probation (98:12)(98:13) (98:18)(98:23)(98:25) (102:4)(104:18)(105:18) (105:20)(105:23)(106:23) (107:9)
problem (101:25)(105:20)
procedural (7:14)(117:2) (124:8)
proceed (127:22)
proceedings (1:19)(1:20)

process                                                                                          response    164

**process** (1:23)(6:16)(96:7)
(116:17)(122:15)(147:6)
(148:9)(148:14)
process (6:4)(10:17)
(28:20)(39:21)(66:17)
(95:12)(95:15)(112:20)
(112:24)(116:4)(121:21)
(122:3)(127:23)(144:17)
**produced** (1:24)
**professional** (149:8)
**progress** (71:23)
**promise** (41:10)
**promising** (14:9)
**promulgated** (149:3)
**proof** (38:8)(68:11)
(88:25)
**proper** (29:20)(29:22)
(82:24)(130:4)
**property** (17:9)(24:4)
**prosecuting** (9:12)
(125:22)
**prosecution** (9:10)
(125:20)(125:21)
**prospective** (5:17)(6:18)
(55:18)(90:9)(94:25)
(96:8)(115:10)(116:18)
(119:20)(121:1)(122:16)
(141:11)(141:19)(143:15)
(144:8)(147:3)
**prove** (18:10)(20:14)
(23:11)(23:13)(24:17)
(29:23)(30:3)(43:20)
(45:4)(45:21)(46:11)
(68:13)(69:17)(69:21)
(70:3)(71:10)(71:13)
(73:21)(77:16)(77:23)
(131:12)(134:21)(135:1)
(135:18)
**proved** (19:14)(19:16)
(40:5)(70:12)(87:17)
(135:15)
**proven** (17:19)(18:5)
(20:9)(23:23)(24:10)
(28:11)(28:19)(28:25)
(37:13)(47:7)(77:6)
(77:18)(77:19)(130:19)
(136:7)(136:11)
**proves** (24:16)(73:3)
(130:14)(131:12)
**provide** (15:18)(31:9)
(106:10)
**provided** (30:20)
**provides** (20:18)(27:25)
(34:25)(39:19)
**province** (88:22)
**proving** (21:7)(22:15)
**public** (2:21)
**publicity** (91:19)
**pull** (85:18)
**pulled** (34:3)
**punch** (26:8)(26:22)
**punched** (27:9)(27:12)
**punishment** (19:19)(24:2)
(53:19)(53:20)(54:1)
(56:12)(75:5)(82:24)
(127:20)(130:18)(130:22)
(132:9)(135:22)
**purpose** (15:15)(38:9)
(54:5)(55:20)(56:20)
**pursuant** (149:5)
**purview** (46:5)
**pushing** (60:3)
**put** (23:7)(23:8)(28:5)
(34:2)(36:5)(37:15)
(40:12)(42:20)(43:8)
(43:25)(45:12)(46:20)
(48:9)(51:10)(52:9)

(52:19)(58:6)(65:20)
(68:11)(68:13)(71:3)
(77:21)(108:14)(109:18)
(111:8)(128:4)(141:17)
**putting** (51:15)(77:11)
(107:13)
**puzzled** (105:16)

**Q**

**qualified** (54:10)(87:6)
(89:2)(90:8)(103:21)
(103:23)(104:24)(105:5)
(106:11)(106:15)(107:15)
(130:9)
**qualifying** (90:10)
**quality** (132:25)
**qualms** (142:23)
**quarrel** (15:16)
**quay** (1:21)(5:9)(6:1)
(95:8)(112:15)(115:25)
(121:15)(144:9)
**question** (7:3)(8:14)
(17:24)(18:4)(18:11)
(24:19)(27:19)(28:10)
(28:24)(32:10)(36:20)
(45:1)(47:12)(47:16)
(48:4)(59:18)(65:17)
(67:19)(71:10)(72:8)
(72:14)(73:2)(73:3)
(73:16)(73:19)(75:11)
(77:17)(77:22)(78:22)
(79:8)(80:4)(81:2)(82:7)
(82:10)(83:6)(83:11)
(84:8)(84:20)(84:23)
(88:11)(88:18)(96:24)
(99:6)(113:22)(116:25)
(118:3)(123:4)(124:6)
(127:25)(136:15)(142:5)
**questionnaire** (4:18)
(4:23)(8:10)(10:14)
(11:15)(15:2)(15:13)
(18:15)(28:2)(37:4)
(40:18)(42:11)(46:9)
(53:16)(55:1)(65:14)
(67:6)(82:20)(95:22)
(97:6)(99:5)(106:4)
(108:12)(109:22)(110:6)
(110:14)(111:9)(113:19)
(114:7)(117:4)(117:25)
(118:2)(120:22)(122:5)
(125:3)(127:24)(129:2)
(131:15)(142:2)(142:12)
(142:18)(142:23)(145:13)
(145:23)
**questions** (7:22)(8:3)
(8:9)(8:17)(10:16)(46:25)
(48:2)(50:7)(55:5)(59:11)
(76:24)(85:23)(100:3)
(105:17)(114:13)(114:15)
(116:13)(117:3)(118:16)
(124:16)(125:5)(128:4)
(131:2)(145:11)(146:6)
(146:8)
**quick** (33:7)(46:25)
**quite** (49:3)(117:5)
**quiz** (8:3)(124:16)
**quote** (54:10)

**R**

**radio** (40:20)(40:21)
(41:3)(41:11)(56:25)
(57:7)(57:10)(57:13)
(58:1)(92:14)(92:15)
**radios** (57:4)
**rain** (72:1)(145:10)
**raise** (6:17)(96:7)
(116:17)(122:15)

**raised** (36:9)
**ranch** (2:18)
**rate** (58:7)
**rather** (36:2)(46:17)
(65:19)(130:3)
**reach** (86:23)
**reaching** (14:12)
**read** (7:8)(8:12)(92:10)
(95:21)(123:16)(123:24)
**reading** (92:18)
**ready** (10:1)(111:2)
**real** (10:17)(43:14)(77:4)
**realistically** (52:12)
**realize** (33:2)(33:14)
(43:13)
**realized** (22:21)
**really** (36:16)(54:22)
(54:24)(60:21)(67:23)
(71:3)(71:10)(75:8)(76:4)
(78:22)(97:15)(97:19)
(98:7)(105:24)(127:4)
(138:5)
**reason** (17:13)(23:18)
(25:22)(26:9)(26:23)
(28:17)(28:23)(32:12)
(36:4)(38:7)(40:8)(41:6)
(86:19)(99:13)(141:23)
**reasonable** (17:19)(18:5)
(19:17)(20:10)(22:17)
(22:22)(22:23)(23:1)
(23:3)(23:15)(23:17)
(23:24)(24:20)(28:11)
(28:19)(29:1)(38:5)
(43:20)(45:5)(51:23)
(62:21)(68:14)(69:10)
(69:13)(69:22)(70:3)
(70:7)(72:10)(73:4)
(73:25)(78:3)(78:4)
(87:11)(87:15)(87:19)
(87:20)(88:14)(88:22)
(88:25)(130:19)(134:23)
**reasonably** (16:11)
(149:10)
**reasoning** (108:2)
**reasons** (16:6)(71:5)
(128:24)
**reassess** (82:17)
**recall** (6:11)(6:19)
(39:5)(58:11)(95:24)
(96:9)(97:11)(97:14)
(97:21)(98:12)(101:10)
(105:16)(105:18)(105:23)
(108:11)(116:14)(116:19)
(122:8)
**received** (65:19)
**receiver** (58:3)
**receives** (131:9)(133:9)
**recess** (49:5)(49:12)
(49:13)(89:15)(94:9)
(94:10)(110:11)(111:10)
**recklessly** (63:4)
**recollection** (59:7)
(101:1)
**record** (1:1)(1:24)(5:16)
(50:18)(50:19)(86:22)
(89:9)(89:23)(94:24)
(102:3)(104:8)(104:23)
(105:2)(105:18)(107:19)
(107:21)(108:1)(110:5)
(120:25)(139:10)(141:14)
(141:18)(143:8)(143:9)
(148:10)
**recover** (12:11)
**refer** (97:12)(97:13)
(117:8)(127:24)
**reference** (145:17)
**referred** (76:8)

**referring** (138:19)
**refers** (142:12)
**reflect** (5:16)(89:9)
(94:25)(107:19)(107:22)
(120:25)(143:10)
**reflected** (45:2)(142:1)
**reflects** (104:16)
(113:23)(148:14)
**refusal** (87:3)
**regard** (28:6)(80:23)
(87:24)(99:19)(104:1)
(104:17)
**regarding** (8:9)(72:3)
(100:5)(105:21)
**regardless** (17:9)(73:10)
**regards** (149:6)
**related** (116:1)(121:2)
**relationships** (149:8)
**relax** (124:20)
**release** (109:5)
**releases** (84:13)
**relevancy** (14:16)
**relevant** (75:1)(78:7)
(87:4)
**relied** (106:5)(108:1)
**religious** (128:24)
(142:19)(145:25)
**rely** (103:15)(106:2)
(106:11)(108:5)(115:7)
(119:11)
**remember** (91:22)(98:16)
(98:17)(98:22)(98:25)
(101:3)(106:20)(113:18)
(128:3)(129:13)
**remembered** (99:14)
**remind** (6:24)(92:8)
(96:18)(123:1)
**reminded** (13:5)
**remorse** (41:18)(41:20)
(42:6)(65:20)
**render** (133:2)(137:6)
**rendering** (138:2)
**repair** (52:7)
**repeat** (10:19)
**rephrase** (10:19)
**report** (91:1)(103:2)
(107:6)
**reported** (1:23)(103:8)
(148:12)
**reporter** (9:2)(26:8)
(26:22)(50:21)(89:22)
(119:12)(138:17)(148:5)
(148:20)(149:18)
**reporter's** (1:1)(1:24)
(4:13)(148:10)
**reporting** (103:8)
**reports** (103:9)(136:24)
**represent** (9:21)
**representative** (48:12)
**represents** (118:4)
(145:18)
**request** (39:22)
**requested** (148:9)
**require** (56:11)(63:23)
(68:12)(71:9)(71:12)
(73:20)(74:12)
**required** (63:24)(71:13)
(131:12)
**requires** (60:8)(60:25)
(61:2)(62:18)(88:12)
**requiring** (63:24)
**resolve** (19:10)
**respect** (55:1)(87:19)
**respective** (148:15)
**respond** (105:8)(123:4)
**responded** (125:8)
**response** (56:8)(65:17)

responses                                                                set        165

(106:13)(125:8)
responses (8:9)(56:14)
(117:4)
responsibility (9:11)
(11:3)(17:16)(125:22)
responsive (7:3)(96:23)
rest (29:25)(30:9)
(30:10)(54:12)(132:2)
restitution (98:14)
(98:15)(104:19)(106:24)
restricted (75:8)
restroom (49:6)
result (16:12)(43:24)
(45:11)(61:3)(61:7)(69:2)
(76:25)(86:6)(142:21)
(146:2)
resulted (107:5)
results (16:2)(16:11)
(103:7)
retaliation (16:5)
retarded (37:14)(37:16)
return (114:1)(118:9)
(142:3)(145:20)
returned (97:18)
returning (142:21)(146:2)
rev (33:7)
review (55:3)
reviewing (55:5)
revisit (60:6)(67:4)
(72:5)
revisited (87:15)(87:16)
right (5:8)(5:11)(5:12)
(5:15)(6:17)(8:2)(9:1)
(9:22)(15:1)(20:1)(21:2)
(21:4)(21:7)(22:1)(23:7)
(24:8)(24:9)(24:10)
(24:15)(26:8)(26:20)
(26:23)(26:24)(27:3)
(27:6)(29:13)(30:6)
(30:15)(31:25)(32:2)
(33:9)(34:4)(34:25)(36:6)
(36:22)(37:1)(37:22)
(39:2)(39:4)(39:8)(39:13)
(39:16)(39:18)(40:2)
(40:3)(40:10)(41:5)
(41:15)(42:2)(42:5)
(42:10)(43:2)(46:19)
(47:2)(47:11)(48:7)
(48:23)(49:10)(49:11)
(51:20)(53:11)(54:8)
(57:13)(63:16)(65:2)
(67:11)(68:8)(69:16)
(70:24)(72:1)(72:17)
(73:7)(74:10)(75:7)
(77:13)(79:23)(81:15)
(81:22)(83:1)(83:8)
(83:12)(86:1)(89:16)
(89:20)(91:15)(92:20)
(93:12)(94:9)(94:18)
(94:19)(96:8)(97:3)
(97:23)(97:24)(98:5)
(101:19)(102:3)(102:6)
(102:25)(106:16)(107:23)
(108:6)(110:2)(111:1)
(112:1)(112:11)(112:12)
(113:7)(115:6)(115:19)
(116:24)(116:25)(117:14)
(118:17)(119:1)(120:18)
(120:23)(122:15)(124:15)
(125:9)(125:10)(125:13)
126:5)(126:6)(127:1)
(131:17)(133:7)(140:6)
(140:20)(141:1)(143:3)
(143:6)(143:14)(144:21)
(145:1)(145:9)(146:10)
(146:12)(146:13)(146:23)
(147:2)

rights (87:8)
right-wing (57:9)
ring (138:8)
ripper (23:14)
rise (5:4)(49:15)(90:2)
(94:14)(108:22)(112:6)
(115:14)(120:15)(143:21)
risk (107:13)
roach (3:15)(4:10)
(111:25)(112:3)(112:4)
(120:6)(120:7)(120:16)
(120:22)(121:1)(121:4)
(121:7)(121:9)(121:10)
(121:13)(121:18)(121:23)
(122:7)(122:10)(122:13)
(122:18)(122:21)(122:24)
(123:7)(123:11)(123:14)
(123:17)(123:21)(124:4)
(124:9)(124:13)(124:15)
(124:17)(124:21)(125:1)
(125:6)(125:10)(126:2)
(126:6)(126:9)(126:13)
(140:17)(140:20)(140:24)
(141:2)(141:3)(141:7)
(141:12)
r-o-a-c-h (121:2)
roaches (121:2)(121:5)
road (43:6)(144:10)
rob (17:24)(61:21)
robbed (34:1)
robbery (16:4)(16:23)
(17:7)(21:12)(26:4)(45:7)
(59:5)(62:22)(134:8)
(134:15)(135:4)
robbing (17:23)
room (8:16)(38:21)
(52:15)(76:23)
rooms (38:23)(40:12)
rough (36:16)(36:17)
rule (149:2)(149:6)
rules (74:23)(79:17)
(79:20)
ruling (3:6)(3:9)(3:11)
(3:13)(3:16)(3:20)
run (25:2)(25:7)(104:9)
(107:12)
runs (80:11)

### S

said (11:13)(11:16)
(11:17)(12:24)(15:12)
(15:14)(16:20)(17:12)
(20:2)(20:22)(20:23)
(22:3)(22:16)(25:25)
(28:23)(29:8)(29:17)
(35:11)(37:6)(37:9)
(39:17)(44:6)(44:17)
(45:16)(47:19)(48:18)
(53:6)(70:17)(70:18)
(87:17)(88:8)(88:14)
(88:15)(88:17)(88:23)
(91:19)(114:7)(115:12)
(128:1)(131:14)(134:1)
(135:11)(136:17)(139:2)
(139:4)(139:8)(139:17)
(145:16)(145:19)
said-- (91:21)
salary (32:25)
same (16:16)(19:12)
(20:20)(24:8)(50:8)
(51:14)(57:23)(58:1)
(59:20)(70:2)(70:6)
(108:2)(136:3)
sarcasm (143:7)
sat (34:5)
satisfied (72:3)
satisfy (73:15)(87:18)

saw (21:17)(21:18)
(52:14)(64:19)(103:9)
(137:3)(137:14)(138:15)
(138:22)(139:15)
say (10:23)(11:2)(11:5)
(11:10)(13:5)(13:11)
(15:17)(16:20)(17:4)
(18:25)(19:15)(19:16)
(20:21)(20:22)(22:3)
(22:4)(22:5)(22:24)
(22:25)(23:11)(23:16)
(26:3)(26:21)(28:14)
(28:21)(30:20)(30:24)
(31:1)(33:10)(37:10)
(37:22)(37:23)(37:24)
(38:10)(38:14)(40:12)
(40:22)(43:16)(43:17)
(43:19)(45:8)(45:25)
(47:2)(51:8)(51:20)
(51:25)(52:1)(54:5)(54:9)
(56:9)(58:18)(59:9)
(61:14)(63:6)(65:12)
(66:12)(67:2)(67:16)
(68:21)(68:25)(71:14)
(72:19)(72:25)(74:25)
(75:20)(76:20)(76:21)
(77:4)(77:5)(77:22)
(79:25)(81:3)(93:22)
(106:13)(107:10)(107:12)
(107:23)(119:15)(127:4)
(127:9)(127:10)(128:18)
(128:20)(129:22)(130:25)
(131:3)(131:17)(133:5)
(133:8)(134:3)(138:4)
(138:11)(138:19)(139:9)
(140:10)
saying (46:3)(52:18)
(64:1)(77:2)(129:7)
(131:24)(133:25)(137:4)
(139:14)(142:2)
says (17:10)(22:11)
(22:13)(22:23)(23:1)
(24:8)(24:13)(26:2)(26:6)
(26:20)(33:9)(33:19)
(34:12)(35:14)(35:20)
(36:19)(36:22)(37:13)
(37:20)(58:22)(61:5)
(68:21)(69:1)(72:24)
(72:25)(73:7)(79:6)
(82:21)(84:12)(88:5)
(98:15)(102:9)(102:23)
(103:3)(103:6)(105:1)
(107:4)(118:7)(142:4)
(142:6)(142:7)(142:9)
sbot (2:3)(2:5)(2:6)
(2:12)(2:16)(2:20)
scale (22:10)(23:4)
scenario (22:4)(22:15)
school (12:21)(51:1)
(51:3)(51:6)(61:10)
(67:17)(67:19)(100:15)
(100:20)
scope (33:1)
scrap (73:11)
seal (148:16)
seat (5:10)(49:18)(87:7)
(90:4)(94:19)(94:21)
(108:25)(112:10)(115:19)
(120:18)(144:5)
seated (5:15)(9:1)(9:4)
(9:13)(86:10)(88:2)(90:6)
(94:22)(102:2)(115:3)
(115:22)(120:21)(125:13)
(125:23)(126:3)(128:11)
(144:6)
second (38:4)(48:9)
(60:2)(65:1)(72:5)(89:17)

(89:18)(127:17)
secondly (7:2)(93:4)
(123:3)(128:11)
security (98:6)(98:8)
(99:15)
see (41:22)(42:11)(43:3)
(49:21)(56:16)(59:13)
(61:14)(62:1)(62:2)
(62:13)(63:22)(63:25)
(64:15)(67:10)(68:7)
(68:17)(68:19)(72:20)
(72:21)(76:3)(77:1)
(78:21)(79:25)(80:5)
(81:13)(82:3)(84:7)
(97:20)(98:1)(98:6)(98:8)
(98:9)(98:10)(98:14)
(99:15)(99:18)(100:19)
(102:3)(102:4)(110:23)
(111:3)(112:25)(114:2)
(115:12)(120:1)(129:7)
(129:21)(131:15)(132:23)
(138:6)(138:14)(143:18)
seeing (62:5)
seeking (18:12)(30:22)
seem (39:5)(78:3)
seems (56:10)(57:23)
(102:13)
seen (8:11)(117:4)
(125:3)(128:23)(138:5)
(138:11)
selected (11:23)(12:25)
(13:19)(14:9)(41:13)
(52:19)(91:1)
selection (6:4)(15:15)
(95:12)(95:15)(104:4)
(110:6)(112:20)(112:24)
(116:4)(121:21)(122:3)
(144:16)
selections (18:20)
self (33:4)(72:21)
self-defense (63:5)
(63:8)(63:9)(133:4)
senior (5:9)(6:1)(95:9)
(112:17)(121:15)(144:10)
sense (21:6)(22:5)
(23:19)(43:13)(54:20)
(58:11)(67:8)(69:6)(78:1)
(78:25)(81:7)(135:25)
(137:20)(137:21)
sentence (24:15)(29:10)
(29:11)(29:20)(29:22)
(32:15)(36:2)(38:4)
(38:15)(65:19)(65:20)
(85:7)(130:3)(132:5)
(133:3)
sentenced (131:8)
sentences (14:3)(15:21)
separate (38:23)(38:24)
(40:12)(130:22)
sequester (38:25)(91:11)
sequestered (39:19)
(39:20)(39:22)(40:1)
(91:7)(91:18)
serious (63:25)
serve (13:19)(51:9)
(55:22)(127:15)(129:15)
served (106:4)(129:8)
(129:11)
serves (55:21)
service (91:1)(104:18)
(106:24)(109:6)(140:19)
(141:13)(141:24)(147:5)
serving (32:1)
set (46:20)(60:18)
(62:23)(71:8)(80:24)
(133:13)(134:5)(134:19)
(135:19)

settled                                                           stood        166

settled (18:16)(19:3)
(19:4)(72:22)
seven (64:14)(101:3)
several (44:6)(44:15)
(51:5)(88:23)(114:7)
(123:9)
severe (28:3)
sexual (16:5)(26:5)
shadow (22:25)
shalt (142:10)
shape (25:6)(61:4)
she (15:20)(15:25)
(21:16)(30:23)(33:9)
(33:18)(34:5)(34:7)
(34:10)(34:16)(34:19)
(34:22)(34:25)(35:2)
(35:3)(66:11)(67:13)
(67:15)(67:16)(67:17)
(67:18)(67:24)(68:1)
(101:6)(104:24)(104:25)
(105:1)(105:4)(105:16)
(105:17)(105:19)(105:22)
(106:3)(106:4)(106:6)
(106:19)(106:21)(107:8)
(108:7)(108:10)(108:11)
(110:17)(111:15)(111:18)
(119:10)(139:5)(141:7)
(141:22)(141:23)(142:2)
(142:4)(142:7)(142:12)
(142:14)(142:18)(143:1)
she'd (34:9)
sherman (12:19)(67:11)
sheryl (3:8)(4:5)(4:24)
(94:25)(97:24)(100:9)
she's (12:20)(26:22)
(27:11)(33:17)(106:8)
(106:14)(111:13)(111:16)
(120:9)(120:10)(142:1)
(143:10)
shoes (51:18)
shoot (33:20)(61:23)
(62:4)(62:12)
shooter (33:24)
shooting (21:10)(61:11)
short (49:5)(89:15)(94:8)
shot (59:4)(59:14)(62:7)
(62:8)(62:12)
should (21:7)(35:3)
(36:18)(64:10)(73:2)
(73:4)(77:17)(82:23)
(83:17)(83:20)(93:9)
(108:3)(120:13)(128:6)
(128:7)(129:23)(131:3)
(143:9)
shouldn't (34:25)(77:17)
show (25:4)(52:2)(63:18)
(66:14)(119:23)
showed (58:22)(69:23)
(70:6)
showing (79:11)(105:19)
shown (73:24)(113:2)
(141:23)
shows (21:20)(22:6)
(25:3)(25:7)(57:10)
(98:13)(98:24)
shows here (98:19)
shut (35:15)(38:11)
sick (101:4)
sid (99:19)
side (38:8)(39:21)(52:6)
(90:15)(99:2)(99:3)
(107:11)
sides (8:12)(90:12)
sign (45:11)
significant (71:4)
signs (21:18)
simple (18:4)

simply (17:13)(22:23)
(74:25)(106:10)
simultaneously (122:19)
since (8:10)(55:2)
(71:17)(117:5)
sincere (51:13)
single (12:15)(36:9)
(36:10)(51:6)(128:15)
sir (5:7)(10:5)(10:10)
(12:19)(15:2)(46:11)
(48:24)(49:19)(85:25)
(86:4)(86:8)(88:1)(89:6)
(89:14)(107:18)(107:21)
(108:18)(111:22)(112:8)
(113:16)(114:23)(115:1)
(116:23)(117:17)(118:1)
(118:14)(120:5)(142:17)
(143:12)(143:23)(144:5)
(144:14)(145:13)(145:21)
(146:5)(146:14)(146:19)
sirius (58:3)
sit (23:15)(32:21)(33:7)
(40:4)(43:12)(106:2)
(129:12)(139:9)
sits (20:13)(41:24)
(66:11)(140:6)
sitting (13:22)(26:23)
(34:18)(35:10)(66:2)
(66:7)(142:20)(146:1)
situation (12:25)(13:7)
(13:10)(14:10)(21:21)
(47:18)(61:24)(80:8)
(124:20)(132:15)
situations (31:22)
six (16:17)(25:6)(64:11)
(64:12)(101:3)
six-men (18:20)
sixth (87:8)
skip (82:1)
slammed (35:15)(38:10)
slated (11:18)
slow (10:18)
smart (22:21)
snipes (6:2)(6:8)(6:14)
(91:11)(92:8)(92:21)
(93:4)(93:25)(95:10)
(95:11)(96:5)(112:18)
(112:21)(116:2)(116:3)
(116:7)(116:17)(121:17)
(121:19)(121:24)(122:11)
(144:15)(144:16)(144:18)
social (80:24)(98:6)
(98:8)(99:15)(149:8)
societies (79:14)
society (24:24)(27:24)
(29:2)(30:1)(30:11)
(30:12)(30:14)(31:3)
(31:5)(31:6)(32:2)(32:6)
(40:18)(73:18)(79:7)
(79:17)(79:20)(79:22)
(82:15)
solely (28:3)(28:12)
(59:16)(93:1)
solicited (34:14)
some (6:16)(8:9)(8:16)
(10:16)(16:17)(18:23)
(20:16)(20:17)(20:22)
(26:9)(27:9)(32:25)(50:7)
(51:16)(57:6)(59:15)
(60:23)(63:3)(63:25)
(65:11)(67:7)(67:23)
(68:17)(68:18)(82:21)
(84:9)(84:10)(84:13)
(84:25)(85:16)(90:11)
(92:12)(96:6)(98:2)
(106:18)(107:2)(113:25)
(116:16)(117:1)(117:3)

(118:8)(122:14)(127:4)
(128:13)(129:18)(130:2)
(130:4)
somebody (39:17)(46:15)
(52:6)(56:1)(58:21)
(63:14)(74:16)(77:4)
(77:15)(81:2)(106:22)
(107:13)(130:24)
somebody's (65:3)(68:1)
(78:12)(85:13)
somehow (27:21)
someone (11:8)(16:1)
(16:21)(17:14)(17:22)
(21:10)(24:3)(28:15)
(30:21)(35:12)(35:13)
(37:14)(43:8)(45:7)
(51:15)(61:11)(62:22)
(63:7)(63:8)(63:19)(64:7)
(72:12)(73:13)(82:24)
(83:15)(85:7)(135:19)
(139:9)
someone's (16:5)(35:13)
(47:21)
something (13:10)(16:25)
(17:7)(25:12)(25:15)
(27:4)(27:14)(36:21)
(37:1)(40:19)(46:6)
(53:13)(64:18)(74:4)
(83:17)(84:5)(86:22)
(87:14)(88:20)(91:20)
(92:15)(93:18)(93:24)
(93:25)(99:20)(102:16)
(107:8)(134:3)(136:4)
(137:3)(137:12)(137:14)
(137:19)
sometimes (56:9)(56:11)
(61:18)(63:5)(78:11)
(83:1)(97:12)(97:13)
(136:24)
somewhat (133:15)
somewhere (15:13)(39:23)
(116:1)
son (121:8)
son-in-law (58:3)
sophomore (67:14)
sorry (42:14)(89:11)
(119:12)(119:14)(120:7)
(139:4)(140:14)(143:16)
(143:20)
sort (8:19)(57:16)
(67:23)(74:20)(93:9)
(106:18)(124:3)
sorts (134:11)
sound (56:19)(66:4)
sounds (103:5)(119:18)
source (136:16)(137:11)
spark (59:7)
speak (13:6)(32:9)(75:25)
speaking (50:13)(50:22)
(144:22)
special (7:25)(14:6)
(19:21)(24:6)(24:12)
(24:17)(25:23)(28:11)
(29:24)(30:20)(32:13)
(32:14)(35:3)(36:5)
(43:22)(44:4)(45:22)
(45:23)(47:9)(60:7)
(65:12)(68:20)(70:2)
(72:6)(72:7)(73:8)(74:3)
(74:13)(75:16)(76:6)
(77:5)(82:1)(82:2)(82:9)
(82:19)(84:7)(84:9)
(84:22)(85:3)(86:20)
(124:8)(127:20)(130:20)
(130:21)(131:6)(133:1)
(135:23)
specifically (58:13)

specifies (113:24)
speeding (61:10)(139:22)
spend (29:25)(31:4)(50:8)
spent (50:8)
spite (51:9)
split (128:17)
square (35:10)
stab (21:18)(21:20)
stacked (123:10)
stage (17:18)(19:18)
(23:21)(68:8)(86:23)
stand (6:17)(20:19)
(20:25)(22:8)(93:4)(96:7)
(122:15)(122:22)(137:7)
(137:10)
standard (70:7)
standards (80:14)
standing (80:25)
standpoint (46:23)
stands (97:19)(130:23)
staple (109:22)
stapled (110:15)
start (12:21)(57:24)
(90:22)
started (55:4)(58:4)
(81:20)
state (1:5)(2:10)(3:4)
(4:3)(9:4)(10:8)(14:8)
(17:19)(18:4)(18:10)
(19:14)(20:6)(20:9)(21:6)
(22:10)(23:23)(24:15)
(28:11)(28:25)(29:22)
(30:3)(30:22)(40:5)
(45:20)(46:16)(56:15)
(58:22)(60:8)(60:11)
(63:4)(68:12)(69:17)
(70:12)(71:9)(71:12)
(73:3)(73:20)(77:6)
(77:16)(77:18)(86:11)
(87:17)(88:24)(99:21)
(99:22)(100:11)(100:15)
(103:22)(108:1)(110:13)
(113:14)(115:6)(115:7)
(117:20)(119:8)(119:11)
(126:11)(130:14)(131:12)
(134:21)(141:5)(141:6)
(141:25)(145:5)(146:20)
(148:2)(148:6)
stated (142:24)(145:15)
(145:23)
statement (44:25)
states (142:18)
state's (3:10)(3:13)
(3:15)(3:19)(4:16)(4:19)
(71:13)(110:13)(110:21)
(115:9)(119:19)(141:10)
(147:3)
stations (58:2)
status (11:24)(47:21)
(108:15)
staunch (133:19)
stay (88:2)
stealing (18:1)
stenotype (1:23)
step (86:3)(101:20)
stephen (59:3)
still (6:25)(19:12)
(55:11)(56:6)(60:22)
(60:23)(64:8)(67:22)
(91:9)(91:10)(96:19)
(114:4)(114:10)(114:19)
(118:10)(118:11)(123:1)
(132:11)
still your (146:3)
stoically (41:25)
stomp (17:3)
stood (6:22)(96:12)

stops                                                                                    there's    167

| | | | |
|---|---|---|---|
| (116:22) | takes (11:12)(20:18) | (25:21)(26:1)(36:3) | (63:24)(72:10)(73:3) |
| stops (32:15) | (51:17)(62:15)(95:7) | (37:17)(46:8)(46:17) | (78:18)(78:24)(79:18) |
| store (33:6)(34:5) | (115:11) | (51:17)(52:24)(59:19) | (81:6)(96:16)(97:12) |
| (34:20)(61:21)(62:1)(62:9) | taking (6:5)(24:4) | (59:24)(64:11)(65:19) | (97:13)(113:2)(119:23) |
| story (27:10) | (56:13)(65:3)(83:5) | (69:13)(69:18)(69:23) | (123:9)(128:4)(128:18) |
| straight (82:2) | (95:13)(112:22)(116:8) | (70:6)(71:19)(73:21) | then (7:22)(8:14)(9:5) |
| strange (124:20) | (122:1)(141:22) | (81:6)(87:12)(87:14) | (9:13)(9:16)(14:20) |
| street (2:13)(11:7) | talk (10:17)(14:6)(18:6) | (87:22)(88:15)(88:17) | (15:11)(17:8)(18:25) |
| strict (74:23) | (32:22)(39:7)(50:22) | (91:16)(92:24)(123:24) | (19:2)(19:6)(19:17) |
| strike (119:9) | (53:14)(53:15)(53:16) | (130:3)(132:9)(136:16) | (19:18)(19:20)(20:6) |
| strikes (90:13) | (53:18)(53:25)(56:22) | thank (5:14)(9:24)(10:3) | (20:21)(21:6)(24:1) |
| strong (76:18) | (57:4)(57:7)(57:9)(57:13) | (44:12)(48:23)(48:25) | (24:18)(30:7)(31:5) |
| strongly (128:14) | (60:5)(65:11)(71:24) | (49:1)(49:20)(50:4) | (32:13)(35:7)(37:14) |
| struck (90:14) | (82:6)(89:18)(113:6) | (50:25)(85:25)(86:2) | (43:22)(45:18)(45:22) |
| studies (67:24) | (117:13)(123:19)(127:6) | (86:8)(86:10)(89:3)(90:6) | (45:23)(46:20)(47:1) |
| studio (59:5) | (127:14)(127:23)(128:9) | (93:13)(93:14)(93:16) | (53:12)(53:18)(56:1) |
| studying (67:15) | (129:13)(134:12) | (94:2)(94:4)(94:5)(94:6) | (57:24)(59:14)(60:3) |
| stuff (33:23)(37:20) | talked (6:14)(34:6) | (94:22)(95:20)(101:13) | (63:16)(68:22)(69:2) |
| (39:24)(69:23)(92:12) | (63:2)(72:18)(85:1) | (102:2)(105:14)(109:1) | (69:4)(69:24)(70:5) |
| style (58:22) | (122:11)(128:13)(128:20) | (109:8)(109:10)(109:15) | (70:25)(73:18)(76:24) |
| subject (57:21) | talker (120:9)(120:10) | (109:16)(110:9)(113:11) | (78:19)(86:5)(87:16) |
| submit (141:7) | talking (7:12)(9:3) | (114:21)(114:23)(114:25) | (88:17)(89:16)(90:11) |
| such (5:21)(63:25) | (42:6)(50:10)(51:20) | (115:1)(115:3)(115:21) | (91:1)(91:11)(93:24) |
| (76:17)(77:8)(131:2) | (53:19)(64:3)(64:4) | (115:23)(117:16)(118:17) | (97:3)(98:14)(101:23) |
| (133:1) | (77:12)(85:4)(124:1) | (118:21)(118:23)(118:24) | (109:24)(111:19)(112:5) |
| sucker (27:12) | (134:14) | (119:2)(126:7)(140:13) | (117:5)(120:8)(122:14) |
| suddenly (45:11) | tallahassee (100:13) | (140:16)(140:18)(140:21) | (124:2)(124:5)(124:6) |
| suffer (56:3) | (101:1)(101:7) | (140:22)(140:24)(141:10) | (125:15)(125:23)(126:3) |
| suffered (141:21) | tampa (101:6) | (143:14)(144:6)(144:13) | (127:10)(127:15)(127:16) |
| sufficient (28:10) | target (33:4) | (144:14)(146:8)(146:10) | (127:20)(129:25)(130:18) |
| (35:25)(36:6)(36:23) | taxpayers (46:16) | (146:14)(146:15)(147:2) | (130:25)(133:2)(133:18) |
| (36:24)(44:4)(44:11) | teachers (32:7) | that's (6:5)(6:7)(6:8) | (139:10)(142:4)(142:7) |
| sufficiently (37:11) | team (9:10)(9:11)(9:20) | (7:4)(7:10)(8:22)(12:18) | (142:11)(145:17)(146:6) |
| (37:21)(38:18)(44:13) | (125:20)(125:21)(126:3) | (15:12)(17:3)(17:4) | (147:2) |
| (44:17)(44:19)(44:23) | technicality (22:9) | (18:11)(21:19)(23:13) | there (5:11)(5:12)(8:22) |
| (46:2)(46:6)(47:15) | tell (7:6)(7:21)(10:18) | (23:14)(23:18)(28:21) | (9:17)(9:22)(13:17)(15:3) |
| (47:22)(85:6) | (11:18)(11:24)(13:6) | (28:22)(29:20)(30:14) | (16:25)(17:6)(18:25) |
| suggest (88:11) | (22:18)(25:9)(26:13) | (35:3)(36:21)(37:12) | (19:13)(20:3)(20:7) |
| suggested (88:6) | (34:20)(37:10)(37:22) | (38:22)(44:20)(45:2) | (20:13)(21:1)(22:18) |
| suggesting (44:2) | (41:1)(41:3)(42:21) | (47:3)(47:4)(47:5)(52:7) | (23:10)(23:15)(24:5) |
| suite (2:14) | (44:23)(45:16)(47:14) | (54:6)(54:22)(55:19) | (24:21)(27:4)(27:8) |
| supervised (81:11)(81:16) | (48:9)(51:13)(54:4)(54:6) | (56:8)(56:20)(60:14) | (27:22)(28:17)(29:6) |
| supposed (39:6)(39:15) | (54:7)(54:11)(54:23) | (60:17)(60:20)(61:9) | (31:8)(31:12)(31:15) |
| (78:21)(78:22) | (55:13)(56:11)(58:21) | (62:23)(63:9)(63:17) | (31:18)(31:22)(33:3) |
| supreme (149:2)(149:5) | (63:1)(68:2)(74:22) | (64:12)(64:13)(64:16) | (33:12)(33:16)(33:20) |
| sure (8:8)(8:12)(38:24) | (78:11)(81:3)(84:20) | (64:20)(65:8)(65:25) | (34:2)(34:22)(35:1) |
| (52:10)(54:1)(56:8)(60:7) | (85:15)(90:16)(124:14) | (66:4)(67:1)(67:17)(68:2) | (35:25)(36:23)(37:1) |
| (64:24)(67:1)(67:3) | (125:5)(132:15)(132:19) | (69:2)(74:19)(77:1) | (38:6)(39:18)(41:2) |
| (67:21)(75:22)(76:3) | (140:2) | (77:11)(77:21)(78:21) | (42:22)(43:3)(46:10) |
| (76:5)(81:12)(83:2) | telling (41:2)(78:8) | (80:25)(82:15)(84:1) | (47:19)(48:8)(49:18) |
| (83:10)(85:14)(88:4) | (107:6)(121:21) | (84:12)(86:22)(91:25) | (51:19)(54:7)(55:7) |
| (92:7)(92:8)(97:23) | tells (18:9)(18:10) | (97:17)(98:4)(98:21) | (59:13)(59:15)(61:8) |
| (104:2)(107:1)(108:13) | (37:2)(78:24) | (99:13)(99:21)(100:25) | (62:11)(66:11)(74:13) |
| (110:3)(128:10)(142:11) | temptation (51:19)(76:21) | (101:22)(105:20)(105:23) | (74:24)(75:9)(78:17) |
| (143:3) | term (22:17)(22:19) | (112:20)(114:23)(116:4) | (79:8)(79:9)(79:10) |
| surprise (55:19) | (22:20)(38:6)(68:22)(89:1) | (118:10)(119:17)(122:3) | (79:11)(81:3)(81:7)(91:5) |
| swan (59:3) | terms (13:21)(13:23) | (127:22)(128:9)(129:10) | (92:12)(95:6)(96:1)(96:5) |
| sworn (7:1)(92:25) | (14:1)(69:4)(88:21) | (131:20)(133:13)(133:15) | (98:7)(98:9)(98:10) |
| (96:21)(123:2) | testified (10:7)(100:10) | (139:5)(142:10)(144:20) | (98:15)(99:12)(99:15) |
| system (11:1)(56:21) | (104:24)(113:13)(117:19) | (146:6) | (104:5)(105:3)(106:14) |
| (64:2) | (126:10)(145:4) | theft (23:9)(26:16) | (106:18)(106:20)(106:21) |
| | testifies (20:19)(21:16) | (97:9)(97:13)(108:8) | (107:2)(108:15)(108:20) |
| **T** | testify (20:25)(21:1) | (109:19)(110:17) | (108:25)(112:11)(113:3) |
| table (13:22) | (21:5)(22:4)(22:8) | their (6:17)(8:3)(20:23) | (113:7)(113:19)(114:2) |
| take (8:13)(11:21) | testimony (19:1)(20:21) | (24:4)(31:16)(32:1) | (114:18)(114:20)(115:19) |
| (12:10)(13:9)(15:9)(17:8) | (136:16) | (40:18)(56:6)(63:17) | (117:25)(119:25)(120:19) |
| (19:9)(20:25)(22:8)(26:7) | texas (1:5)(1:7)(1:22) | (68:4)(68:13)(70:6) | (120:24)(121:6)(121:11) |
| (33:10)(33:11)(33:19) | (2:8)(2:9)(2:10)(2:14) | (71:10)(78:24)(80:13) | (123:13)(125:25)(126:25) |
| (34:21)(35:21)(49:4) | (2:18)(2:23)(9:4)(15:17) | (83:16)(84:2)(90:13) | (127:25)(128:17)(131:2) |
| (49:11)(74:4)(87:14) | (16:18)(17:11)(18:5) | (96:7)(116:17)(122:15) | (135:7)(137:16)(139:9) |
| (89:15)(90:23)(91:3) | (28:8)(29:21)(30:7) | (124:16)(126:5)(128:23) | (144:5)(146:12) |
| (94:8)(97:4)(109:21) | (32:19)(34:13)(37:7) | (133:20)(149:9) | therefore (87:24) |
| (113:3)(116:14)(118:19) | (43:7)(56:16)(58:23) | them (6:15)(9:19)(11:5) | there's (8:2)(9:9) |
| (122:22)(129:22)(139:5) | (60:8)(60:11)(69:17) | (15:16)(17:15)(32:3) | (19:14)(19:23)(20:12) |
| (142:23)(145:16) | (95:10)(112:18)(148:2) | (38:24)(40:16)(40:17) | (23:9)(24:12)(25:18) |
| taken (13:6)(32:12) | (148:6)(148:21)(149:19) | (46:17)(48:18)(56:4) | (32:6)(33:3)(33:15)(36:4) |
| (81:10)(83:7) | than (7:17)(13:25)(23:4) | (58:5)(61:23)(63:23) | (36:21)(38:7)(40:22) |

HEATHER H. VEZINA, CSR

these        uncommon   168

(48:7) (61:8) (61:20)
(61:24) (62:13) (67:19)
(71:4) (73:10) (76:21)
(79:8) (102:4) (102:8)
(104:22) (106:1) (116:25)
(121:5) (124:15) (124:18)
(125:19) (127:5) (134:11)
(142:11)
**these** (9:7) (9:20) (14:5)
(15:22) (20:5) (20:7)
(23:16) (24:5) (24:11)
(25:23) (29:23) (30:4)
(30:5) (30:20) (31:1)
(31:23) (41:2) (47:8) (54:8)
(54:12) (54:24) (55:13)
(60:7) (65:12) (70:2)
(76:18) (76:20) (76:24)
(103:1) (111:2) (113:22)
(118:4) (125:11) (125:25)
**they** (8:11) (9:10) (9:20)
(11:1) (11:2) (11:10)
(11:22) (15:22) (18:7)
(18:16) (19:3) (19:4) (19:7)
(19:18) (20:21) (20:22)
(20:23) (20:25) (21:1)
(22:2) (23:11) (23:13)
(30:20) (30:24) (31:1)
(32:2) (32:11) (32:12)
(40:13) (46:20) (49:7)
(51:5) (58:4) (61:23) (63:7)
(63:8) (63:9) (63:10)
(63:11) (63:15) (63:20)
(63:23) (64:12) (64:13)
(68:3) (69:21) (69:23)
(70:3) (71:5) (71:8) (71:9)
(72:9) (72:25) (73:2) (73:8)
(73:11) (73:19) (76:6)
(77:22) (78:5) (78:8)
(78:15) (78:23) (80:19)
(80:20) (80:21) (80:22)
(80:23) (81:10) (82:17)
(83:20) (84:1) (97:12)
(97:13) (107:6) (120:13)
(125:20) (127:10) (128:6)
(128:7) (128:14) (128:15)
(128:16) (128:17) (128:23)
(129:14) (133:23) (134:5)
(139:9)
**they'll** (8:8) (90:13)
(124:1) (125:5)
**they're** (7:14) (7:15)
(7:21) (7:22) (8:6) (8:22)
(9:11) (42:22) (56:2)
(57:13) (57:21) (63:21)
(66:2) (68:3) (73:15)
(73:18) (73:20) (76:4)
(76:14) (81:7) (83:24)
(107:6) (120:1) (120:11)
(120:12) (123:22) (123:23)
(124:1) (124:6) (125:4)
(125:21) (131:1) (139:24)
**they've** (8:12) (68:13)
(73:9) (80:13) (80:15)
**thing** (10:24) (22:9)
(27:24) (28:22) (37:13)
(38:12) (43:15) (44:14)
(48:16) (54:3) (57:24)
(63:18) (72:18) (78:25)
(81:3) (88:9) (91:18)
(92:21) (93:10) (95:6)
(104:20) (108:9) (124:3)
**things** (6:15) (7:1)
(11:12) (13:3) (13:17)
(13:19) (13:20) (16:24)
(17:3) (32:6) (32:7) (33:11)
(35:25) (36:11) (36:12)
(36:14) (37:2) (44:15)

(54:15) (56:13) (58:4)
(59:11) (60:14) (64:4)
(68:7) (68:17) (68:18)
(69:9) (75:1) (79:10)
(82:19) (83:6) (83:18)
(84:25) (85:3) (90:20)
(93:1) (93:6) (96:6)
(127:14) (127:22) (136:24)
**think** (8:18) (9:9) (13:25)
(23:3) (23:16) (26:14)
(28:4) (30:12) (36:15)
(36:17) (38:22) (40:5)
(43:17) (44:19) (55:15)
(58:9) (60:2) (63:13)
(63:21) (64:7) (64:22)
(65:9) (67:9) (76:21)
(76:23) (77:6) (77:10)
(79:3) (79:14) (80:11)
(80:19) (80:23) (81:1)
(82:25) (83:3) (84:17)
(85:9) (86:21) (90:20)
(93:9) (98:5) (99:11)
(99:16) (100:23) (101:18)
(103:14) (103:19) (104:22)
(105:20) (105:23) (106:8)
(108:19) (108:20) (111:13)
(113:3) (115:12) (116:13)
(127:3) (127:9) (128:5)
(128:6) (131:20) (132:16)
(133:19) (135:4) (136:22)
(137:4) (138:8) (140:9)
**thinking** (13:2) (64:20)
(65:15) (106:17) (106:19)
(106:20) (139:8)
**thinks** (143:1)
**third** (58:5)
**those** (8:17) (11:12)
(13:3) (15:13) (15:24)
(16:17) (16:24) (17:3)
(18:12) (19:20) (30:16)
(32:5) (32:7) (35:25)
(36:14) (54:11) (56:13)
(56:21) (57:16) (59:5)
(64:1) (64:4) (68:14) (70:3)
(72:25) (73:14) (75:1)
(76:8) (77:23) (79:13)
(81:6) (83:1) (83:6) (83:18)
(85:2) (85:10) (87:2)
(90:25) (92:15) (93:5)
(112:1) (131:2) (131:7)
(135:4) (136:4) (145:21)
**thou** (142:10)
**though** (20:7) (28:13)
(35:14) (40:24) (55:20)
(63:7) (106:19) (108:10)
(110:24)
**thought** (7:19) (51:17)
(67:2) (71:17) (91:20)
(99:15)
**thoughts** (7:23) (8:21)
(15:16) (124:7) (129:18)
**threat** (24:23) (27:23)
**three** (9:7) (9:19) (9:20)
(10:13) (14:5) (18:12)
(19:20) (20:15) (24:5)
(25:6) (25:23) (47:8)
(48:12) (53:15) (57:24)
(81:21) (116:13) (125:18)
(125:25) (127:3) (127:5)
**three-fifths** (125:20)
**through** (46:17) (48:11)
(48:21) (50:10) (51:2)
(57:20) (61:10) (64:2)
(65:13) (91:5) (92:14)
(95:15) (97:6) (105:11)
**throughout** (142:18)
(145:23)

**thunder** (97:5) (126:21)
**ticket** (139:22)
**ticking** (71:21)
**tie** (132:20)
**ties** (11:9) (11:11)
**tight** (51:19)
**till** (11:20)
**time** (5:23) (6:15) (6:22)
(8:16) (8:18) (14:11)
(16:21) (17:13) (22:18)
(32:1) (37:18) (39:11)
(39:17) (39:19) (41:25)
(42:17) (45:24) (48:3)
(48:24) (50:8) (51:21)
(52:3) (53:24) (57:5) (58:5)
(61:19) (71:21) (71:22)
(81:19) (81:24) (90:11)
(91:9) (93:13) (96:12)
(100:14) (100:16) (100:21)
(101:2) (109:2) (113:6)
(116:22) (117:13) (118:21)
(122:23) (138:8) (140:17)
(140:23) (146:16)
**times** (25:20) (32:24)
(44:7) (50:6) (88:23)
**tip** (22:10)
**today** (5:23) (6:7) (6:9)
(7:7) (7:12) (9:3) (44:21)
(52:5) (55:4) (55:11)
(60:24) (71:20) (71:25)
(92:24) (95:6) (95:19)
(109:5) (112:21) (114:4)
(114:10) (116:5) (118:11)
(121:24) (121:25) (122:4)
(123:20) (126:15) (127:14)
(129:14) (132:14) (140:18)
(143:24) (144:17) (144:21)
(146:5)
**today's** (13:15)
**together** (38:23) (40:8)
(40:14) (52:9) (96:1)
(109:25) (116:16) (122:9)
**token** (51:14)
**told** (10:17) (11:14)
(25:19) (33:1) (33:18)
(37:5) (37:8) (50:6) (53:9)
(55:10) (55:16) (56:24)
(65:14) (69:11) (72:3)
(79:5) (87:13) (118:18)
(126:25)
**tones** (126:23)
**tonight** (32:23)
**too** (7:19) (98:6) (113:2)
(144:21)
**took** (6:22) (54:6) (96:12)
(96:13) (116:22)
**tooth** (68:1)
**top** (59:2) (64:8) (120:23)
(130:1)
**total** (59:10)
**totally** (40:16) (41:21)
**tough** (32:24) (42:17)
**toward** (57:5) (71:23)
(82:21)
**towards** (77:25)
**traded** (79:18)
**traffic** (18:23)
**transcription** (1:25)
(148:8) (148:13)
**trial** (8:1) (11:18)
(17:18) (17:25) (18:3)
(18:11) (19:13) (19:19)
(21:15) (23:21) (32:15)
(37:2) (39:12) (41:19)
(51:16) (52:2) (53:18)
(53:19) (65:24) (66:1)
(66:19) (68:9) (70:22)

(72:4) (74:23) (75:5)
(75:13) (86:24) (91:17)
(92:8) (92:11) (93:2)
(121:20) (124:11) (127:3)
(127:8) (127:15) (127:21)
**trials** (74:6)
**trick** (124:24)
**trigger** (34:3) (85:18)
**trip** (106:21) (124:24)
**truck** (52:7) (52:9)
**true** (55:11) (60:14)
(69:3) (129:10) (142:8)
(148:7)
**truly** (60:2) (148:14)
**truth** (54:6)
**truthful** (7:1) (96:22)
(123:2)
**truthfully** (13:7) (108:11)
**try** (8:23) (27:21) (32:8)
(75:10) (79:4)
**trying** (8:6) (60:24)
(76:7) (92:2) (92:3)
**turn** (8:13) (15:1) (28:2)
(57:6) (125:4)
**turned** (58:4) (99:5)
**twelve** (33:12)
**two** (7:1) (9:9) (11:20)
(12:1) (12:22) (14:3)
(15:21) (16:15) (19:14)
(19:18) (20:2) (24:1)
(24:11) (25:10) (29:16)
(46:25) (52:7) (57:16)
(57:24) (59:14) (70:2)
(74:6) (81:21) (90:23)
(90:25) (91:4) (93:1) (93:6)
(111:22) (112:2) (116:13)
(121:5) (125:19) (127:4)
**two-part** (18:2)
**type** (41:24) (66:13)
(132:9) (132:25) (134:6)
(134:15) (134:24)
**typical** (19:6)
**typically** (53:7)

---
### U

**uh-huh** (12:3) (12:5)
(12:9) (12:14) (12:17)
(13:14) (13:16) (14:15)
(15:8) (18:19) (18:22)
(23:5) (26:15) (26:17)
(30:17) (31:7) (42:19)
(42:24) (52:4) (54:14)
(55:25) (56:5) (65:7) (74:7)
(79:16) (83:25) (99:8)
(102:6) (102:17) (104:14)
(109:3) (110:20) (110:25)
(115:24) (116:20) (118:6)
(118:12) (122:7) (122:13)
(122:18) (123:14) (124:17)
(124:21) (128:2) (129:5)
(129:24) (130:5) (130:12)
(130:15) (131:5) (131:10)
(132:18) (132:24) (133:4)
(133:11) (134:4) (134:10)
(134:17) (134:20) (134:25)
(135:12) (135:21) (135:24)
(136:6) (136:12) (136:21)
(136:23) (137:1) (137:9)
(137:13) (137:15) (137:17)
(138:13) (138:21) (138:24)
(139:23)
**ultimate** (14:1) (105:22)
(105:24)
**ultimately** (107:9)
**unadjudicated** (102:14)
**unaware** (40:17)
**uncommon** (56:8)

under                                                                      we're    169

**under** (6:25)(16:17)(16:18)(28:8)(29:21)(43:7)(43:19)(86:24)(87:8)(92:24)(96:19)(123:1)(128:21)(130:4)(142:2)(145:19)(148:16)
**understand** (7:16)(10:18)(21:1)(29:5)(38:15)(41:4)(43:7)(43:9)(45:10)(45:14)(53:22)(54:1)(60:8)(66:17)(68:6)(68:14)(70:1)(74:5)(75:16)(76:5)(77:12)(84:25)(124:5)(128:10)(131:24)(133:25)(139:14)(140:1)(140:13)
**understands** (88:21)
**understood** (67:2)(69:11)
**unemployed** (11:7)
**unexpected** (52:2)
**unforeseen** (51:16)
**unfortunately** (66:7)(78:11)
**unless** (20:9)(20:20)(24:15)(29:22)(42:22)(72:9)(74:13)(77:18)(82:7)(91:7)(103:8)(133:17)
**unplugged** (58:5)
**unremorseful** (42:4)
**unresolved** (91:11)
**until** (20:9)(20:13)(20:20)(24:10)(24:15)(29:22)(39:11)(39:17)(39:24)(70:16)(85:15)(85:18)(130:13)(131:11)
**unusual** (121:12)
**upbringing** (15:7)(37:19)(44:14)(82:22)(83:16)(83:23)
**upon** (23:18)(32:3)(47:18)(59:6)(66:18)(93:1)(103:15)(106:1)(106:6)(108:5)(119:11)(119:14)(135:20)(135:22)
**upstairs** (6:4)(38:20)(95:12)(112:21)(116:8)
**use** (28:20)(29:3)(61:18)(61:19)(68:24)(69:5)(69:6)(78:9)(88:7)(88:18)
**used** (15:13)(35:2)(41:17)(74:25)(88:18)
**using** (124:2)
**usually** (11:4)(13:18)(65:6)

**V**

**valuable** (43:1)
**value** (17:9)
**various** (20:16)(31:23)(60:14)
**venireperson** (3:1)(3:4)(3:7)(3:8)(3:11)(3:14)(3:16)(3:18)(3:20)(4:1)(4:3)(4:19)(4:24)(5:5)(5:8)(5:19)(6:10)(6:20)(6:23)(7:9)(9:23)(10:7)(49:3)(49:7)(49:16)(49:20)(82:4)(86:7)(86:9)(90:3)(91:15)(91:21)(91:24)(92:19)(93:11)(93:14)(93:19)(94:2)(94:7)(94:15)(94:18)(95:3)(95:17)(95:20)(95:23)(96:3)(96:10)(96:13)(96:17)(96:20)(97:2)(97:15)(97:17)

(97:25)(98:4)(98:17)(98:20)(99:2)(99:8)(100:1)(100:10)(101:22)(101:25)(102:1)(108:23)(109:3)(109:7)(109:10)(109:12)(109:17)(112:7)(112:9)(112:13)(112:16)(113:9)(113:13)(114:19)(114:22)(114:25)(115:2)(115:15)(115:18)(115:24)(116:6)(116:11)(116:20)(116:23)(117:7)(117:11)(117:14)(117:19)(118:20)(118:23)(119:1)(119:3)(119:4)(120:16)(121:4)(121:7)(121:9)(121:13)(121:18)(121:23)(122:7)(122:10)(122:13)(122:18)(122:21)(122:24)(123:7)(123:11)(123:14)(123:17)(123:21)(124:4)(124:9)(124:13)(124:17)(124:21)(125:1)(125:6)(125:10)(126:2)(126:6)(126:10)(140:20)(140:24)(141:3)(143:22)(143:25)(144:3)(144:12)(144:19)(145:4)(146:13)(146:15)(146:17)
**verdict** (14:12)(14:13)(21:21)(40:13)(43:24)(69:20)(114:1)(118:9)(129:4)(137:6)(138:2)(142:3)(142:21)(145:20)(146:2)
**versus** (1:6)(7:13)(25:11)(31:19)(42:7)(58:23)(86:24)(86:25)
**very** (6:24)(9:24)(10:14)(14:8)(18:3)(22:3)(22:19)(25:19)(34:12)(46:25)(64:8)(67:15)(87:17)(93:15)(94:3)(94:4)(105:16)(110:8)(113:4)(113:21)(114:24)(116:14)(118:2)(118:3)(118:19)(118:24)(122:25)(128:8)(129:3)(129:25)(131:11)(139:19)(143:14)(143:15)(146:10)
**vezina** (148:4)(148:19)(149:17)
**vicki** (3:15)(4:10)(111:25)(121:1)(126:9)(141:7)(141:12)
**v-i-c-k-i** (121:1)
**view** (87:11)(133:23)
**viewpoints** (113:22)
**views** (118:4)
**violation** (87:7)
**violence** (24:23)(26:3)(26:4)(26:6)(26:11)(26:18)(26:21)(27:16)(32:2)(73:17)(76:11)(77:25)(78:14)(78:17)(82:14)
**violent** (78:6)
**visit** (31:13)(31:16)(65:16)
**visited** (32:3)
**visiting** (113:8)
**voice** (126:23)
**voices** (63:23)
**voir** (1:12)(8:25)(10:2)(10:8)(50:1)(60:11)(69:12)(97:1)(100:11)(113:14)(117:20)(123:6)(126:11)(145:5)

**vol** (3:4)(4:3)(4:17)(4:22)
**volume** (1:2)(3:2)(4:2)(4:20)(110:21)
**volumes** (1:2)
**voluntarily** (37:18)
**voluntary** (37:6)(84:3)(86:20)(88:3)
**volunteer** (10:24)
**vote** (59:21)(131:3)(131:4)

**W**

**wait** (33:8)(120:13)(120:19)(130:9)(130:13)(130:18)(130:19)(131:11)(136:10)
**waiting** (95:6)
**walk** (49:5)
**walking** (33:12)
**wander** (80:19)
**want** (10:23)(10:24)(13:18)(32:22)(32:24)(33:21)(37:25)(38:9)(38:17)(39:22)(40:13)(44:8)(46:2)(51:25)(53:15)(53:18)(54:7)(60:7)(61:23)(61:25)(62:1)(62:2)(65:16)(66:11)(67:5)(67:6)(70:25)(72:2)(76:4)(76:22)(76:25)(80:20)(80:22)(82:20)(89:15)(89:22)(91:11)(91:25)(92:1)(92:16)(92:17)(93:7)(93:21)(110:23)(113:2)(117:6)(120:3)(125:4)(127:13)(127:24)(128:9)(132:21)(139:19)(139:20)
**wanted** (61:3)(62:23)(65:13)(67:2)(67:18)(109:1)(116:12)
**wants** (29:21)(38:11)(40:9)(50:15)(50:17)(60:18)(67:16)
**warrant** (36:1)(45:11)(45:18)(99:19)
**was** (6:14)(6:23)(13:19)(16:1)(16:10)(18:1)(18:25)(22:18)(22:19)(23:14)(34:22)(35:1)(35:6)(36:9)(36:12)(36:13)(36:16)(36:37:3)(37:18)(42:13)(42:14)(42:23)(45:21)(52:6)(58:10)(58:25)(59:1)(59:20)(65:14)(67:3)(67:18)(68:4)(71:20)(72:20)(72:21)(73:12)(73:25)(78:17)(84:5)(87:13)(88:20)(96:1)(97:9)(97:10)(97:11)(97:18)(97:20)(98:15)(98:21)(98:25)(99:6)(100:16)(102:13)(102:19)(102:21)(102:22)(103:5)(103:9)(104:9)(104:11)(104:16)(104:17)(104:25)(105:19)(105:22)(105:25)(106:18)(107:2)(107:5)(107:7)(107:9)(107:24)(108:3)(108:10)(108:15)(110:16)(115:13)(120:7)(121:11)(126:21)(133:10)(133:14)(134:3)(134:19)(135:2)(135:11)(135:16)

(135:18)(138:17)(139:8)(141:22)(141:23)
**washed** (114:17)
**wasn't** (17:6)(99:12)(118:19)(135:2)
**wasted** (43:3)
**watch** (26:24)(92:9)
**watching** (92:17)
**water** (2:17)(49:5)
**way** (5:11)(9:13)(13:18)(15:14)(24:8)(29:23)(35:19)(37:23)(52:8)(57:8)(61:4)(62:6)(64:2)(64:20)(65:10)(67:9)(70:13)(71:3)(71:12)(83:1)(83:14)(91:25)(106:19)(106:20)(109:24)(114:4)(114:10)(118:11)(123:22)(125:8)(131:3)(131:6)(133:2)
**ways** (27:25)(35:6)(134:11)
**wbap** (57:4)
**weapon** (21:11)(65:6)
**we'd** (135:18)
**weekends** (91:6)
**weeks** (11:20)(12:1)(52:7)(90:23)(90:25)(91:4)
**weight** (87:5)
**well** (7:5)(14:8)(19:7)(19:12)(19:24)(23:3)(23:11)(26:20)(27:8)(34:9)(36:19)(39:10)(41:9)(47:24)(49:3)(53:1)(53:11)(54:22)(56:9)(59:2)(63:6)(63:9)(63:13)(68:21)(69:21)(72:19)(72:25)(74:4)(75:12)(83:2)(89:24)(93:12)(95:4)(97:22)(98:19)(100:3)(101:19)(102:3)(102:9)(106:3)(106:16)(108:1)(108:9)(111:15)(111:18)(111:25)(117:5)(120:2)(120:23)(121:14)(123:18)(126:25)(127:10)(130:4)(130:25)(134:12)(136:20)(139:17)(140:16)(143:1)
**we'll** (14:6)(18:6)(19:9)(24:21)(49:11)(53:12)(54:10)(54:24)(60:6)(65:11)(71:25)(89:16)(89:20)(110:5)(126:22)(127:23)(134:12)(143:5)
**went** (6:15)(96:5)(100:15)
**were** (1:20)(6:21)(11:5)(12:25)(18:25)(20:4)(20:6)(22:21)(24:2)(24:4)(26:7)(26:22)(28:17)(37:5)(40:11)(51:5)(55:12)(59:4)(59:14)(68:3)(69:17)(69:21)(73:24)(80:2)(85:4)(96:11)(96:15)(99:25)(101:7)(113:21)(116:21)(118:3)(126:17)(127:25)(128:5)(128:11)(129:15)(133:13)(136:14)(138:1)(145:15)(148:12)
**we're** (5:20)(5:22)(10:1)(11:17)(21:5)(34:18)(54:16)(54:18)(54:19)(54:22)(60:24)(64:3)(64:7)(67:8)(90:9)(90:10)(91:4)(104:10)(105:16)(111:2)(124:23)(128:24)

we've                                                                  yes          170

**we've** (130:16) (133:5) (134:1) (134:14) (135:8) (141:14) (144:21)
**re've** (12:13) (23:22) (28:19) (47:7) (51:20) (59:6) (85:1) (86:21) (95:7) (123:9) (128:13) (128:20)
**whatever** (40:6) (40:24) (41:11) (42:25) (44:10) (62:15) (64:3) (67:16) (80:22) (85:17) (89:1) (108:15)
**what's** (7:7) (7:15) (18:2) (27:20) (42:3) (46:10) (56:16) (57:9) (66:14) (67:15)
**whatsoever** (87:5)
**when** (5:12) (7:16) (15:3) (15:20) (21:17) (22:18) (24:11) (25:2) (25:10) (27:9) (30:11) (30:12) (35:15) (36:19) (37:5) (38:19) (40:15) (41:15) (41:22) (42:5) (43:3) (45:25) (50:9) (51:5) (60:6) (60:17) (61:6) (62:9) (65:12) (68:25) (71:9) (76:6) (81:9) (81:24) (82:23) (84:21) (92:20) (101:6) (103:9) (105:4) (107:4) (116:15) (122:8) (132:23) (134:2) (138:11) (138:19) (145:14)
**whenever** (105:16)
**where** (10:14) (13:7) (14:2) (14:11) (16:18) (19:13) (24:11) (29:25) (30:22) (30:25) (31:22) (32:6) (39:19) (64:10) (66:1) (67:7) (67:17) (69:4) (79:25) (80:4) (80:8) (82:21) (84:1) (85:11) (98:15) (99:5) (104:11) (142:12) (145:19)
**whereas** (60:19) (79:24)
**wherever** (80:20) (109:13)
**whether** (14:20) (17:19) (17:20) (17:25) (19:22) (26:4) (27:14) (27:19) (28:4) (28:18) (31:2) (34:9) (36:9) (36:20) (37:3) (44:21) (46:9) (46:20) (47:7) (47:8) (65:18) (66:15) (68:3) (71:23) (74:8) (77:19) (77:20) (88:18) (90:18) (102:21) (102:22) (103:20) (107:4) (107:7) (131:8) (133:9) (139:22)
**which** (8:22) (11:9) (18:8) (26:6) (32:16) (46:4) (56:15) (59:17) (59:21) (62:2) (62:6) (79:7) (79:17) (87:1) (87:11) (88:11) (88:25) (95:5) (96:22) (99:9) (104:23) (105:1) (106:2) (108:3) (110:15) (113:22) (113:24) (114:1) (118:3) (118:7) (118:9) (125:5) (142:3) (145:20) (148:11) (149:9)
**while** (6:4) (17:5) (17:23) (21:11) (24:3) (32:1) (40:3) (40:4) (41:6) (47:13) (51:18) (55:2) (64:15) (65:15) (67:3) (88:14) (95:8) (100:18) (112:23)

(113:24) (116:7) (118:8) (122:2) (130:2) (133:5)
**white** (108:4)
**who** (9:21) (10:25) (11:6) (11:11) (19:25) (23:14) (25:3) (25:23) (26:19) (31:9) (31:13) (31:16) (31:19) (36:11) (37:16) (57:3) (63:22) (64:7) (64:14) (72:14) (76:9) (76:15) (76:18) (77:4) (77:24) (80:11) (81:2) (82:11) (99:7) (116:22) (117:9) (121:10) (121:25) (128:20) (141:18)
**whole** (6:13) (8:16) (27:10) (32:18)
**whom** (73:15)
**who's** (11:8) (84:23)
**why** (6:8) (15:5) (26:13) (26:19) (27:9) (28:23) (35:20) (36:4) (36:7) (38:7) (38:22) (38:24) (40:8) (42:21) (48:9) (64:11) (95:19) (112:20) (120:2) (121:22) (122:4) (125:7) (128:9) (144:17) (144:20)
**will** (5:11) (5:12) (8:13) (9:3) (11:10) (11:20) (11:21) (13:24) (20:8) (22:13) (24:23) (25:21) (27:23) (35:5) (35:7) (38:21) (39:25) (41:12) (44:21) (44:22) (45:10) (46:4) (46:11) (47:17) (47:20) (47:24) (49:23) (53:3) (63:6) (67:4) (67:8) (71:24) (72:19) (84:9) (84:10) (86:18) (86:22) (87:2) (87:4) (87:10) (88:10) (88:11) (90:14) (90:23) (91:3) (92:8) (92:23) (92:25) (93:2) (93:3) (93:4) (93:22) (96:25) (104:3) (107:22) (109:24) (113:3) (115:7) (116:14) (119:19) (123:5) (127:16) (127:19) (127:22) (129:14) (130:9) (137:5) (141:12) (141:25) (143:16) (147:1) (147:5)
**willing** (50:21)
**win** (25:1) (25:3) (25:5)
**window** (35:14) (35:15) (35:18) (35:19) (38:10)
**wish** (54:20)
**with** (5:22) (6:15) (7:14) (9:11) (10:13) (11:5) (11:8) (14:9) (15:10) (15:16) (15:18) (15:20) (15:24) (16:7) (16:19) (16:22) (17:10) (17:15) (17:21) (19:25) (20:6) (21:11) (24:6) (24:18) (25:4) (27:8) (27:13) (30:13) (31:8) (31:19) (31:20) (33:24) (34:7) (34:10) (34:16) (34:17) (37:7) (37:9) (38:3) (38:19) (38:21) (40:13) (40:22) (41:1) (41:9) (42:17) (46:4) (48:15) (48:19) (48:21) (50:9) (51:8) (54:25) (55:1) (56:15) (57:15) (62:7) (62:8) (62:12) (62:16) (62:24) (63:4) (64:1) (64:4) (65:16) (66:1) (67:5)

(70:18) (72:15) (72:22) (73:5) (75:8) (75:14) (75:15) (76:17) (77:4) (77:7) (77:21) (83:10) (85:18) (85:25) (86:4) (87:15) (87:16) (87:18) (88:20) (91:13) (93:8) (93:16) (95:14) (96:6) (97:4) (99:19) (101:21) (101:24) (104:12) (109:4) (109:21) (113:8) (118:22) (123:10) (125:21) (126:21) (129:23) (136:17) (137:14) (140:18) (142:23) (145:9) (145:17) (149:3) (149:6) (149:9)
**withheld** (102:10) (102:11) (102:23) (103:4) (103:6) (103:16) (104:17) (107:4)
**within** (80:14)
**without** (14:4) (15:21) (24:14) (29:12) (29:19) (30:24) (32:16) (32:17) (36:2) (41:17) (46:7) (48:4) (55:21) (58:18) (60:21) (76:10) (77:24) (131:8) (132:9) (132:20)
**witness** (20:18) (20:24) (33:15) (76:1) (93:3) (137:7) (137:10)
**witnesses** (20:7) (20:15) (20:16) (20:20) (33:22) (34:21) (61:22)
**woman** (107:20) (107:22)
**women** (68:3)
**won't** (5:11) (15:10) (91:5) (91:7) (91:17)
**word** (18:6) (24:22) (24:24) (24:25) (25:20) (25:22) (25:25) (30:11) (30:12) (36:6) (36:22) (41:18) (41:20) (78:9) (88:7) (88:18) (142:9)
**words** (15:14) (15:19) (16:1) (23:7) (25:10) (27:20) (32:18) (38:5) (53:6) (69:4)
**work** (11:1) (11:4) (11:16) (13:13) (13:20) (26:22) (27:12) (51:22) (52:5) (52:20) (78:21) (109:13)
**worked** (48:11) (48:19)
**working** (51:3) (51:4)
**works** (11:11)
**world** (13:15) (37:24) (40:17) (63:14)
**worn** (91:10)
**worth** (52:7)
**would** (7:3) (11:10) (11:25) (12:1) (12:4) (12:8) (12:10) (13:8) (13:20) (16:12) (17:14) (23:3) (24:5) (24:22) (24:24) (26:2) (26:10) (28:4) (28:17) (29:25) (30:1) (30:7) (34:10) (34:24) (35:12) (38:24) (38:25) (40:12) (41:16) (41:18) (41:21) (42:3) (43:24) (45:4) (45:11) (45:21) (45:23) (45:25) (47:5) (47:10) (49:4) (49:18) (51:4) (51:10) (51:17) (51:25) (52:8) (52:11) (52:12) (55:8) (55:15) (55:22) (56:10) (59:17)

(59:20) (59:21) (59:23) (63:14) (65:9) (65:18) (65:22) (65:25) (66:14) (66:18) (66:20) (66:23) (68:24) (69:5) (69:16) (69:19) (69:24) (70:5) (70:7) (70:9) (73:16) (74:2) (74:4) (74:14) (74:15) (74:19) (75:10) (75:22) (75:24) (75:25) (78:3) (78:5) (78:8) (78:9) (78:16) (78:18) (78:19) (79:7) (79:13) (79:21) (80:9) (81:3) (81:4) (81:9) (82:14) (84:6) (84:16) (84:17) (84:25) (85:2) (85:5) (85:8) (86:3) (86:19) (87:7) (87:18) (87:23) (88:9) (89:7) (90:19) (91:1) (94:20) (99:9) (99:19) (104:23) (105:2) (106:13) (107:8) (107:14) (107:16) (108:25) (110:13) (112:11) (115:20) (119:9) (120:19) (120:25) (124:10) (128:15) (128:16) (128:17) (128:20) (130:3) (131:21) (132:4) (132:5) (132:16) (132:19) (133:2) (133:8) (133:10) (134:6) (135:13) (135:25) (136:7) (137:18) (137:21) (138:1) (138:5) (140:6) (141:4) (141:6) (142:21) (143:2) (144:5) (145:25) (146:22)
**wouldn't** (58:23) (63:10) (63:11) (71:20) (77:15) (84:15) (135:15) (135:19)
**wounds** (21:19) (21:21)
**write** (81:18)
**writing** (50:14) (50:15) (50:17) (67:21) (93:22) (93:25) (148:9)
**written** (93:5)
**wrong** (8:2) (40:22) (47:2) (54:8) (63:16) (63:21) (83:1) (83:8) (83:9) (116:25) (120:7) (124:15) (127:1)
**wrote** (83:10)

### Y

**y'all's** (27:4)
**yeah** (9:23) (12:20) (18:18) (19:8) (19:11) (23:6) (23:20) (24:7) (36:25) (38:25) (42:15) (42:16) (48:18) (52:11) (57:2) (57:16) (57:18) (57:20) (58:8) (65:9) (67:25) (68:5) (70:19) (71:2) (71:7) (78:10) (78:17) (81:20) (93:11) (95:5) (96:3) (96:13) (97:19) (98:4) (100:2) (100:8) (100:19) (100:23) (102:11) (103:12) (103:18) (111:7) (111:8) (119:14) (133:22) (136:20) (140:9) (142:25) (144:4) (145:1)
**year** (12:10) (67:14)
**years** (10:21) (16:17) (43:9) (51:5) (64:11) (64:12) (64:14) (68:2) (100:25) (101:3) (121:11)
**yep** (25:18) (80:6)
**yes** (5:14) (10:5) (12:19)

yesterday                                                                    zone        171

(15:4) (19:15) (19:16)
(21:16) (23:23) (28:5)
(28:10) (28:16) (28:23)
(29:4) (31:11) (31:14)
(31:17) (31:21) (31:24)
(32:4) (32:13) (35:8) (35:9)
(35:17) (35:18) (37:6)
(37:23) (37:24) (38:16)
(43:23) (44:5) (45:8) (45:9)
(48:9) (51:25) (53:10)
(73:3) (73:4) (73:19)
(75:18) (77:18) (82:7)
(82:8) (82:9) (85:16)
(86:16) (88:1) (88:9)
(88:14) (88:23) (89:6)
(89:14) (95:23) (96:10)
(96:17) (96:20) (97:25)
(101:9) (105:13) (107:18)
(107:21) (108:18) (108:24)
(112:13) (113:20) (114:3)
(114:5) (114:23) (115:5)
(116:23) (117:17) (118:1)
(118:13) (118:14) (119:7)
(119:17) (120:5) (122:10)
(122:21) (122:24) (123:17)
(126:19) (126:24) (130:1)
(132:1) (132:8) (132:10)
(132:13) (133:2) (133:24)
(135:6) (135:17) (136:2)
(138:4) (138:5) (141:6)
(143:12) (143:13) (143:23)
(144:3) (145:22) (146:4)
(146:19)
**yesterday** (103:9) (108:3)
**yet** (61:12) (64:19)
(89:24) (111:14) (113:2)
(141:23)
**york** (25:2)
**you-all** (89:15)
**you'd** (7:2) (13:1) (27:8)
(63:13) (74:4) (110:4)
(123:3) (140:9) (142:16)
(145:23)
**you'll** (6:11) (7:5)
(20:15) (34:17) (38:4)
(38:8) (74:22) (90:17)
(93:17) (95:24) (96:23)
(116:14)
**young** (42:12) (42:18)
(43:16) (43:17) (43:21)
(43:25) (44:18) (45:3)
(45:4) (45:12) (47:13)
(47:14) (47:19)
**younger** (64:11)
**youngest** (67:20) (67:21)
**your** (5:23) (6:25) (7:23)
(7:24) (8:7) (8:9) (8:10)
(8:15) (8:17) (8:20) (10:2)
(10:3) (10:15) (11:15)
(11:24) (12:25) (13:10)
(13:23) (14:9) (14:10)
(14:11) (15:2) (15:11)
(15:15) (16:10) (16:12)
(17:2) (18:3) (18:15)
(21:21) (26:10) (28:2)
(37:4) (37:22) (37:25)
(38:19) (39:21) (39:25)
(40:13) (40:18) (41:12)
(42:11) (44:1) (44:11)
(45:1) (46:5) (46:9) (46:10)
(47:6) (47:17) (48:24)
(50:11) (52:19) (53:16)
(55:1) (55:8) (59:7) (64:20)
(65:17) (66:16) (67:5)
(67:10) (68:7) (68:24)
(69:5) (69:6) (70:5) (71:11)
(74:2) (76:19) (79:20)

(81:13) (82:20) (86:13)
(86:16) (90:24) (91:13)
(92:25) (93:6) (93:13)
(93:17) (95:22) (96:19)
(97:6) (97:20) (97:24)
(98:2) (99:5) (99:16)
(99:23) (100:7) (101:1)
(101:15) (103:19) (103:24)
(105:7) (107:25) (109:2)
(109:21) (112:25) (113:1)
(113:11) (113:19) (113:23)
(114:6) (114:7) (117:3)
(117:4) (117:16) (120:22)
(122:5) (124:6) (124:7)
(125:2) (127:24) (128:4)
(129:2) (129:4) (129:18)
(129:23) (131:15) (131:18)
(131:25) (132:2) (132:3)
(132:16) (137:14) (137:19)
(139:20) (140:23) (141:1)
(141:6) (145:13) (145:14)
(145:18) (145:21) (145:23)
(146:7) (146:16) (146:24)
**you're** (6:8) (6:25) (8:20)
(16:11) (18:12) (21:23)
(22:12) (22:14) (26:20)
(26:23) (31:5) (38:1) (39:6)
(39:18) (40:3) (40:4) (40:8)
(40:20) (42:6) (43:14)
(45:25) (46:3) (47:18)
(49:10) (50:10) (50:20)
(51:9) (51:13) (51:24)
(52:15) (52:18) (52:19)
(53:2) (56:25) (60:3)
(64:22) (64:25) (65:4)
(67:21) (71:22) (74:5)
(75:8) (75:14) (75:15)
(76:19) (81:16) (81:24)
(82:4) (82:10) (84:22)
(85:18) (90:16) (90:18)
(90:19) (91:8) (92:7)
(92:21) (92:24) (95:4)
(95:19) (96:19) (109:13)
(112:11) (114:24) (122:4)
(129:3) (130:2) (131:16)
(131:22) (131:24) (133:25)
(136:22) (137:2) (137:4)
(139:14) (144:21)
**yours** (118:4)
**yourself** (22:22) (28:24)
(40:5) (40:13) (76:18)
(99:9) (99:13)
**yourselves** (39:7)
**youth** (44:3) (47:12)
**youthful** (47:21)
**you've** (6:25) (8:4) (8:11)
(8:18) (13:6) (19:16) (21:3)
(35:11) (47:19) (50:5)
(56:24) (58:10) (60:2)
(64:6) (65:5) (66:5) (66:6)
(71:21) (72:3) (79:14)
(79:15) (79:18) (82:7)
(82:8) (82:12) (90:8)
(95:21) (96:21) (98:9)
(99:10) (123:2) (123:16)
(123:24) (129:8) (132:22)
(140:17)

---
### Z
---

**zone** (61:10)