REPORTER'S RECORD

VOLUME 41 OF _____

CAUSE NO. F08-24667

| | |
|---|---|
| THE STATE OF TEXAS | IN THE CRIMINAL DISTRICT |
| VS. | COURT NO. 7 |
| JAMES BROADNAX | DALLAS COUNTY, TEXAS |

PRETRIAL HEARING

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2010

Louise Pearson, Clerk

**ON THE 27TH DAY OF JULY, 2009,** the following proceedings came on for hearing in the above-entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.

Proceedings reported by oral stenography.

— — — — —

SHARINA A. FOWLER, CSR
214-653-5696

A P P E A R A N C E S

**DAVID ALEX**
SBOT NO.
**ANDREA HANDLEY**
SBOT NO. 08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas   75207
214-653-3600

FOR THE STATE OF TEXAS


**DOUG PARKS**
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120

**BRAD LOLLAR**
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 450
Dallas, Texas   75201
214-384-8178

**KERI MALLON**
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
131 N. Industrial Blvd., LB2
Dallas, Texas   75270-4399
214-653-3600

FOR THE DEFENDANT

INDEX

                                                            PAGE VOL

Proceedings, July 27, 2009

APPEARANCES                                                    2

MOTION TO STAY HEARING                                        4

TESTIMONY OF KIMBERLY LEACH
    Direct Examination by Mr. Alex                            8
    Cross Examination by Mr. Lollar                          33
    Redirect Examination by Mr. Alex                         61
    Recross Examination by Mr. Lollar                        63

TESTIMONY OF CHRISTIE HICKLEN
    Direct Examination by Mr. Alex                           65
    Cross Examination by Mr. Lollar                          73

TESTIMONY OF JANET COOK
    Direct Examination by Mr. Lollar                         84

TESTIMONY OF LANCE PLATT, Ph.D.
    Direct Examination by Mr. Lollar                         91
    Cross Examination by Mr. Alex                            96
    Redirect Examination by Mr. Lollar                      101
    Recross Examination by Mr. Alex                         102

COURT REPORTER'S CERTIFICATE                                110

INDEX OF EXHIBITS

** RO - Record Only                    ## DO - Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|---|---|---|---|---|
| State's: | | | | |
| No. 16 | Business Records Affidavit | 12 | 12 | |
| Defendant's: | | | | |
| No. 1 | CV, K. Leach | 35 | 36 | |
| No. 2 | Media Relations Report | 35 | 36 | |
| No. 3 | Health Screening Assessment | 38 | 39 | |
| No. 4 | Mental Health Screening | 43 | 45 | |
| No. 5 | Contents of Court's File | 48 | 49 | |
| Nos. 6-7 | Suicide Information Log | 75 | 76 | |
| No. 8 | Report of J. Cook Letter to Sheriff Valdez | 88 | 89 | |
| No. 9 | CV, L. Platt | 91 | 92 | |
| No. 10 | Report of L. Platt | 91 | 92 | |

Page 1

REPORTER'S RECORD
VOLUME _____ OF _____
CAUSE NO. F08-24667

THE STATE OF TEXAS          | IN THE CRIMINAL DISTRICT

VS.                         | COURT NO. 7

JAMES BROADNAX             | DALLAS COUNTY, TEXAS

PRETRIAL HEARING

ON THE 27TH DAY OF JULY, 2009, the following proceedings came on for hearing in the above-entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.
Proceedings reported by oral stenography.
- - - - -

Page 2

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO. 08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas  75207
214-653-3600

FOR THE STATE OF TEXAS

DOUG PARKS
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120
BRAD LOLLAR
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 450
Dallas, Texas  75201
214-384-8178

KERI MALLON
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
131 N. Industrial Blvd., LB2
Dallas, Texas  75270-4399
214-653-3600

FOR THE DEFENDANT

Page 3

INDEX

|  | PAGE | VOL |
|---|---|---|
| Proceedings, July 27, 2009 | | |
| APPEARANCES | 2 | |
| MOTION TO STAY HEARING | 4 | |
| TESTIMONY OF KIMBERLY LEACH | | |
| Direct Examination by Mr. Alex | 8 | |
| Cross Examination by Mr. Lollar | 33 | |
| Redirect Examination by Mr. Alex | 61 | |
| Recross Examination by Mr. Lollar | 63 | |
| TESTIMONY OF CHRISTIE HICKLEN | | |
| Direct Examination by Mr. Alex | 65 | |
| Cross Examination by Mr. Lollar | 73 | |
| TESTIMONY OF JANET COOK | | |
| Direct Examination by Mr. Lollar | 84 | |
| TESTIMONY OF LANCE PLATT, Ph.D. | | |
| Direct Examination by Mr. Lollar | 91 | |
| Cross Examination by Mr. Alex | 96 | |
| Redirect Examination by Mr. Lollar | 101 | |
| Recross Examination by Mr. Alex | 102 | |
| COURT REPORTER'S CERTIFICATE | 110 | |

Page 4

INDEX OF EXHIBITS

** RO - Record Only          †† DO - Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|---|---|---|---|---|
| State's: | | | | |
| No. 16 | Business Records | 12 | 12 | |
|  | Affidavit | | | |
| Defendant's: | | | | |
| No. 1 | CV, K. Leach | 35 | 36 | |
| No. 2 | Media Relations | 35 | 36 | |
|  | Report | | | |
| No. 3 | Health Screening | 38 | 39 | |
|  | Assessment | | | |
| No. 4 | Mental Health | 43 | 45 | |
|  | Screening | | | |
| No. 5 | Contents of Court's | 48 | 49 | |
|  | File. | | | |
| Nos. 6-7 | Suicide Information | 75 | 76 | |
|  | Log | | | |
| No. 8 | Report of J. Cook | 88 | 89 | |
|  | Letter to Sheriff Valdez | | | |
| No. 9 | CV, L. Platt | 91 | 92 | |
| No. 10 | Report of L. Platt | 91 | 92 | |

Case 3:15-cv-01758-N Document 41-15 Filed 06/29/16 Page 6 of 45 PageID 9766

Page 4

PROCEEDINGS

[Defendant present; 8:50 a.m.]

THE COURT: This is Cause No. F08-24667. The Court has set a hearing on a motion to suppress for this morning at 8:30. However, the Court of Appeals granted a motion in part -- the Stay Hearing -- to impart the Stay Hearing. However, it is my understanding that that does not apply to all individuals who had interviews with the defendant.

Is that right, Mr. Alex?

MR. ALEX: Judge, the stay and the mandamus that I have looked at -- and I'm going to refer to -- only at this point apply to Steve Pickett, his cameraman, Mr. Larkins and Shaun Rabb. I have not seen any documents related to an emergency stay or mandamus as it relates to either Rebecca Lopez or Ellen Goldberg.

THE COURT: And that's consistent with what I have as well.

Do you have anything to the contrary, Mr. Lollar?

MR. LOLLAR: No, sir.

THE COURT: Okay. Are there attorneys here that represent Ms. Lopez or Ms. Goldberg?

MR. FULLER: Mark Fuller for Ellen Goldberg.

Page 5

MS. ZMUD: Shannon Zmud, WFAA and Rebecca Lopez.

THE COURT: What is your position as to whether or not the stay applies to Ms. Lopez or Ms. Goldberg?

MR. FULLER: Your Honor, we -- we just got this order after business hours on Friday, but as I read the order it is not limited to just Shaun Rabb and Steve Pickett and Troy Larkins. In fact, it says, "Hearing on Motion to Suppress," period.

We didn't know about this. We still have not seen the motion papers. Given that it is up to the Court of Appeals, and it looks like the Court of Appeals may take this opportunity to provide some more guidance on this new statute, and we would like an opportunity to participate in that proceeding. So we hope to file our own writ to join the proceeding that's already under way today. We don't think that will delay the writ that's already up to the court already.

We would request that Your Honor read this order more narrowly than we do, to stay for the time being, as to Ms. Goldberg and Ms. Lopez so that we may address this issue with the Court of Appeals.

THE COURT: What's the State's position on that?

Page 6

MS. HANDLEY: Your Honor, we --

THE COURT: It does say --

MS. HANDLEY: It does and my initial response is that it might apply to every single journalist involved in the case. But I read the petition and the petition makes no mention of the other reporters.

In my opinion, the order, Staying of Proceedings, is limited to those journalists who are a party to the Petition for Writ of Mandamus currently filed in the COA. It's certainly within the Court's discretion as to how it wants to handle the other two reporters --

THE COURT: Yeah. I'm not going to take a chance. If I did and I was wrong, then we'd have a significant problem. If we just stay it, we can resolve the whole thing anyway. We're going to have to hear it one way or the other eventually anyway, so I'm going to grant the motion to stay the proceedings.

Do y'all need a copy of what the other parties filed, or do you already have it?

MR. FULLER: We are actually, Your Honor, sending a messenger to the Court of Appeals this morning. We will pull their paper, and I do have a copy of the order.

THE COURT: Okay. Go ahead and get

Page 7

started on that.

MR. FULLER: Thank you, Your Honor.

THE COURT: Well, we're going to continue the case then until further notice. Be reminded that we had hearings on Thursday and Friday already. And, you know, we may be able to do it today. I don't know.

MR. ALEX: Judge, we -- We -- We -- There is some things we can -- and we can do this tomorrow. I believe the Defense has a DRE expert this morning; is that correct?

MR. LOLLAR: Well, he's coming this afternoon.

MR. ALEX: And I've got a --

THE COURT: Off the record.

[Pause in proceedings.]

THE COURT: On the record in The State of Texas versus James Broadnax.

Mr. Alex, if you'll call your first witness, please.

MR. ALEX: State will call Kimberly Leach, Your Honor.

Whereupon,

KIMBERLY LEACH,

having been first duly cautioned and sworn, testified as follows:

Page 8

DIRECT EXAMINATION

BY MR. ALEX:

Q. State your full name, ma'am.

A. Kimberly Leach.

Q. Ms. Leach, what do you do for a living?

A. I'm the public information officer for the Dallas County Sheriffs Department.

Q. And how long have you been doing that?

A. Little over a year.

Q. Tell the Judge -- I guess, just for the record -- I'm sure the judge knows what public information officer is, but for the record would you describe your duties as they now exist.

A. I handle all the media relations for the department. That includes doing any kind of interviews that I need to do that -- for information that involves the department. I also handle interview requests for inmates who are housed at the jail.

Q. Would that include, like, putting out media advisories?

A. That's correct.

Q. And are you a police officer, a sworn peace officer in the State of Texas?

A. No, sir.

Q. Have you ever been?

Page 9

A. No, sir.

Q. And your job with the -- with Dallas County Sheriffs Department, is that who you work for?

A. Yes.

Q. That is strictly in a media-type person; is that correct?

A. That's correct.

Q. What did you do before that?

A. I worked in television as a newscast producer for about 25 years.

Q. And what station -- Where did work?

A. I worked at Fox 4, I worked at NBC 5 and also CBS 11.

Q. So you're familiar with the media industry?

A. Correct.

Q. And when a person wants to interview somebody in the Dallas County jail, would a person -- a person or entity -- would you be the contact person for that?

A. Yes, sir.

Q. And have you established some sort of guidelines. if you will. of how to make that contact?

A. Yes. sir.

Q. Can you tell the judge just generally how that happens? Let's say, I'm Fox 4 and I want to interview James Broadnax. How does that -- How does that -- How

Page 10

is that accomplished?

A. Typically, the media will either e-mail me or fax. Sometimes they do both. It's a form letter -- generally a form letter -- that they've had -- it's basic information, the defendant's name, their book-in number, cell number, that kind of thing. Usually they'll say something, like, "Dear So-and-so, I would like to interview you regarding your case, give you an opportunity to tell your side of the story. If you are in agreement, please contact the PIO," and it gives my name and the fax number."

Then they either sign it, "Yes," that they agree to do it, or, "No," they do not. It is witnessed by an officer and he signs the form as well and it is faxed back over to me. I keep all of those in my files.

Q. And in all of this process, is this initiated by the media folks?

A. Correct.

Q. In other words -- And we're -- And now I want to stick strictly to the case of James Broadnax that we're here for today, okay?

A. Okay.

Q. And let's talk about that case. Did you receive a request from the media to interview him?

A. Correct, I received multiple requests.

Page 11

Q. And at any point, did you send out anything to any of the media saying, "Hey, you guys need to come over here and interview this guy."

A. No, sir.

Q. Anybody from the Dallas Sheriffs' Department that you're aware of?

A. No, sir.

Q. If that was going to take place officially, it would have to go through you; is that right?

A. That's correct.

Q. And what I'm talking about is sort of the media advisory?

A. Right. No, sir. Nothing like that happens.

Q. And the different media outlets that wanted to talk to Mr. Broadnax, they would fax you over their requests; is that correct?

A. Fax or e-mail, correct.

Q. And you provided to me a number of items; is that correct?

A. Correct.

Q. Tell me how you keep these items? Where are they kept?

A. I keep them in a 3-ring binder in my office. Once I get them back, I just -- I keep them on record so that I have them in case I have to refer back to them.

Page 12

[State's Exhibit No. 16 was marked for identification.]

Q. [By Mr. Alex] State's Exhibit No. 16, does this appear to be -- and it has "Business Records Affidavit" on there as well. Does this appear to be a document you provided to me?

A. Yes, that is correct. That is it.

Q. Just for the -- for the --

MR. ALEX: We'll offer this for the record at this time. And may the record reflect that this whole packet has previously been provided to the Defense as part of Discovery in the case.

THE COURT: What's the exhibit number on this --

MR. ALEX: State's Exhibit 16 for the hearing. I think I'll just call it "Pretrial 16," if that's okay.

THE COURT: Yes, sir.

MR. LOLLAR: No objection for purposes of this hearing.

THE COURT: It's admitted.

[State's Exhibit No. 16 was admitted into evidence.]

THE COURT: Mr. Alex, could you state again what that is exactly?

Page 13

MR. ALEX: State's Exhibit Pretrial No. 16.

THE COURT: Which is what?

MR. ALEX: Which is an affidavit of several requests from the media to speak to James Broadnax and Damarius Cummings.

THE COURT: Can I see that, please?

[Court reviews exhibit.]

Q. [By Mr. Alex] Ms. Leach, I'm going to leave that one with the judge and I'm going to provide you with another copy so that we can --

MR. ALEX: Do you have your copy, Mr. Lollar?

MR. LOLLAR: No, sir.

Q. [By Mr. Alex] We'll use the -- camera, Ms. Leach, if that's okay.

A. Sure.

Q. I'll give you the equivalent of what the judge has, State's Exhibit Pretrial No. 16. Let's just start with the general notes. Are you -- You told the judge that you are not law enforcement. Have you ever been to law school or know anything about the Fifth Amendment and those kind of laws? Are you an expert in way in that area?

A. No, I'm not.

Page 14

Q. The right to an attorney or any of those kinds of things?

A. Not really, no.

Q. And so then if someone requests to speak to an inmate from the outside, the media, is there any consideration given to the fact that this person may or may not have an attorney?

A. I believe that a person's rights, whether they're in jail or not is -- You know, that's their right. I mean, I -- I don't feel like it's my job to stand in their way if they want to talk to the media. That's their right.

Q. So you're --

MR. PARKS: Your Honor, clearly for the record, may we ask that she answer that question yes or no, also?

THE COURT: Yes, sir. Sustained.

Q. [By Mr. Alex] You know what, I'll ask the question again and -- What I'm asking you is, if you -- Let me ask it in a hypothetical. If a lawyer contacts you and says, "No one is to have contact with my client," what would you do?

A. Then I wouldn't let them have contact.

Q. So you --

A. I would tell the media they have to go to the

Page 15

attorney, and I've done that in the past.

Q. So you do give consideration to the fact that a person may be represented by counsel?

A. Correct.

Q. But you wouldn't have any opinion as to whether or not you were legally obligated to do that or not, would you?

A. Correct.

Q. And in this case, did you receive -- I'm going to show you as a part of the package of State's Exhibit 16 for the pretrial, a document that you'll see on the document screen that we're going to zoom in on, hopefully.

Does that appear to be a request from Brad Lollar regarding James -- Is it --

A. Right.

Q. Can you tell the date of that request from Mr. Lollar and the nature of that request?

A. This one -- It's hard to see, but I think it says, "6/24, 12:21:49 p.m."

Q. And the nature of the request is what?

A. Stating that they do not want James Broadnax to have restricted contact with his client -- or they want to have restricted contact with the client, no media, no law enforcement, interviews, etcetera.

**SHARINA FOWLER, CSR  214-653-5696**

Page 12 - Page 15

Case 3:15-cv-01758-N    Document 41-15    Filed 06/29/16     Page 9 of 45     PageID 9769

Page 16

Q. And you -- Would that have been received directly by you?

A. Either myself or the attorney who is next door to me and she would usually bring it to my attention right away.

Q. Now this appears to be from -- The "from" line says, "Vicki Duron." Do you know who that is?

A. Correct. That's another -- That's another avenue that can come to me. She works over on the jail side.

Q. And it is to -- Who is it to?

A. Let's see. To Lee DeVaney who's Captain DeVaney. Again, that's on the jail side and so they would get it and they would forward it to me.

Q. So it would have trickled down to you from there; is that correct?

A. Correct.

Q. So you would have gotten it at some point on the 24th perhaps?

A. Sometime, yes.

Q. And you don't have any independent recollection of whether you've seen this, do you?

A. No. I do so many of these everyday. I don't -- I just have to go by the form there.

Q. But it wouldn't have been prior to the 24th --

Page 17

A. Definitely not.

Q. And when you look at the top of this document I'm going to show you -- When I first came and talked to you down in your office, did you have this stuck to your board over there?

A. Yes, sir.

Q. Do you do that with requests from --

A. Yes, sir.

Q. Tell the Court why you do that.

A. The minute I get them, I post them to my wall right by my computer so if there is a hold on someone or an attorney says, "Please have them contact the attorney before they talk to the inmate," I check my wall. I only have a couple out there -- maybe three or four -- at a time. That's why -- how I do it.

Q. So that's just sort of a double-check for you if you get a request, you'll check that on the wall.

A. Right.

Q. And this was still on the wall when you and I spoke?

A. Correct.

Q. And that would have been in 2009?

A. Correct.

Q. At the time of this document, it appears to be faxed June 25, 2008; is that correct?

Page 18

A. Correct.

Q. So it's possible that you didn't even get this until June 25th?

A. Possible.

Q. But at the faceline, we're talking about June 24th and sometime after 12:00 p.m.

A. That's correct.

Q. Prior to June 24th, 12:00 p.m., did you get requests -- You can use the document -- Do you have the document there?

A. Yes.

Q. Did you get requests from Channels 4, 5, 8 and 11 to speak specifically to James Broadnax?

A. Correct. Yes, I did.

Q. And all of those would have been prior to you having any notice that an attorney didn't want him to speak to anyone; is that correct?

A. That's correct.

Q. The documents that you have here, State's Exhibit Pretrial No. 16, do they -- go through those documents, if you will, and we'll talk to the judge about them for Channels 4, 5, 8 and 11.

A. Okay.

Q. Let's start with -- we'll just go in order -- Channel 4. We're going to put those documents up there

Page 19

again. This is in the packet, for the record, from State's Exhibit 16 from pretrial.

Is there a reference here to four documents?

A. Yes.

Q. And if you can for the Court, would you just kind of give him an explanation of why -- Apparently, one of them has to deal with Mr. Cummings; is that correct?

A. Correct.

Q. We'll set those aside for now, okay?

A. All right.

Q. And then the two documents that are left deal with James Broadnax; is that correct?

A. That's correct.

Q. One of them is signed and one of them is not. Can you explain to the Court what that's about?

A. The first one comes over without it being signed and that's usually what they send to me. If it's e-mailed, I print it out. If it's faxed, I take it off the fax and I make sure it has the person's correct name, and I usually look that up on AIS. For instance, on the first one that Fox sent over, they did not put the book-in number or West Tower. These are some things that I require.

Page 20

So I had to go in and look that up, put that on there and then I faxed that one over to the jail. What comes back is where they signed, "Yes," or "No," stating that they want to do an interview and then it's signed and witnessed.

Q. And then after it's signed by the defendant, James Broadnax, is that when you notify the TV station?

A. Correct. Usually the guard will send it back over to me, fax it back over, and then I contact the media and say the inmate has said yes to the interview.

THE COURT: Let me interrupt you for a second, Mr. Alex. The Court reviewed State's Exhibit 16 and I have signed agreements to talk with reporters for Channels 8, 4 and 11, but not 5.

Is that correct?

MR. ALEX: That's right, Judge.

THE COURT: Well, just so you'll know, I have done that.

Q. [By Mr. Alex] And we'll kind of speed things up a little bit. Those documents were Channel 4. The judge is able to read. He's got the copy up there.

The description you just gave, did that happen the same with 4, 8 and 11, if we talk about the two documents in particular as it relates to James Broadnax?

Page 21

A. That's correct.

Q. And that process was followed in the same manner; is that correct?

A. That's correct.

THE COURT: And all of these are dated June 20th; is that right?

MR. ALEX: Yes, and these -- These were faxed -- The fax date at the top --

Q. [By Mr. Alex] Let's say, for instance, Channel 8 is June 20th; is that correct?

A. Channel 8?

Q. Yes, ma'am.

A. June 20th, that's correct.

Q. And then --

THE COURT: As I have it, they're all June 20th.

MR. ALEX: Okay.

THE WITNESS: Uh-huh.

THE COURT: And the point being, for the record, that they're all before Mr. Lollar notified the sheriff that he didn't want his client talking to the press, correct?

MR. ALEX: Yes, sir.

THE WITNESS: That is correct.

Q. [By Mr. Alex] And then on Channel 5 -- I

Page 22

think I asked you a little while ago, the scenario with Channel 5. Can you tell the judge, if you can -- We've got two documents here, one for Damarius and one for James. Let's just talk about the one for James Broadnax.

We've got a copy here that is modified; is that correct?

A. Yes, that's correct, but I do believe I have that in my file. If I failed to give that to you, I'm sorry.

Q. And you can provide that to the Court this morning?

THE COURT: And that's which one?

MR. ALEX: Channel 5.

THE COURT: So all four of them eventually did interview him?

THE WITNESS: Yes.

MR. ALEX: Yes.

THE COURT: Are we going to be seeing those this morning?

MR. ALEX: Yes. She's going to go -- I didn't want to stop what we were doing for her to go get them, but we can at least go through the direct, and perhaps cross, unless you want her to go get them now.

THE COURT: Is there somebody else who can go it for her such as David?

Page 23

MR. ALEX: I don't know.

Can we go off the record?

THE COURT: Yes, sir.

[Off the record discussion.]

[Brief recess taken.]

Q. [By Mr. Alex] Ms. Leach, as it relates to -- After you get these requests from the media -- I imagine this would be an answer from the jail saying, "Yes, the defendant does want to speak to the media."

Now, what do you do? Do you, yourself, call the media in these cases, or do you have any recollection of that?

A. Correct. I either call them or e-mail them. In this case -- if I can -- because there were two defendants and it was a -- I remember specifically because I had to stagger the interviews for two separate people on two separate floors because they both had agreed to do it.

Q. So you had a little bit of a logistics planning to do between Damarius Cummings and the defendant, James Broadnax, two different floors, four different news stations; is that correct?

A. Correct.

Q. And did you accompany the media to these interviews?

Page 24

A. Correct.

Q. And, if you can, tell the Court did James Broadnax do an interview with all four new stations?

A. Yes, he did.

Q. And did Damarius Cummings?

A. Yes.

Q. Did you sit in on both of those, or do you recall which ones you sat in on?

A. I believe I sat in on the ones with Broadnax and I had another officer escort the others up to the second floor.

Q. And tell the judge just how this took place. Was there an instruction where they went to see Cummings first and then came to see Broadnax, or how did that take place?

A. The way I set it up was, I told the media they would have 30 minutes a piece because I have to account for that there's meal times and things like that. So because there was so many -- and this was unusual -- I said, "You're going to get 30 minutes each. We'll start it at a certain time. After 30 minutes, I'm cutting it off," and that's why I stayed down with the Broadnax interviews.

Once the 30 minutes were up, I told them

Page 25

to go upstairs and the officer escorted them upstairs and then I escorted the next media in so I could kind of keep it on track.

Q. Now you may have told them 30 minutes, but would you be surprised if all of them were just about 15 minutes?

A. Not really.

Q. And is it --

A. That's the maximum, by the way.

Q. Is it possible you only gave them 15 minutes?

A. Could be.

Q. And the first station to interview Mr. Broadnax -- and you've -- you've reviewed these interviews; is that correct?

A. Correct.

Q. And when that interview took place -- I want to sort of paint a picture for the Court -- who all was there and the dynamics of that interview, okay?

A. Okay.

Q. And then I'm going to ask you some specific questions, all right?

A. Okay.

Q. Have you ever been in a situation to be involved with, like, a police interrogation? Have you ever been in a room when the police interrogated someone?

Page 26

A. No.

Q. Have you ever taken part in any type of police interrogation?

A. No.

Q. And when the defendant was brought to the interview room, was he brought in by jail personnel?

A. Correct.

Q. When he was brought in -- and I'm going to ask you a series of questions that's going to border on kind of silly, but I need to know.

When he was brought in, what was his general demeanor like? Was he combative with the folks at the jail, or was he cooperative?

A. He was fairly cooperative. Looked a little aloof, but fairly cooperative.

Q. Was he saying anything, like, "No, no. You can't make me do it." Anything that gave you the indication that this was not voluntary?

A. No, sir.

Q. Was anybody wearing any sidearms, any firearms, any weapons in the room where he was at?

A. Don't believe so.

Q. Anything about that that made you feel that this wasn't a voluntary statement given by the defendant?

A. Not at all.

Page 27

Q. What about the media on the other side? Were they offering any $100 bills or any incentives to talk to them?

A. No, I don't allow that.

Q. And you would have taken control of that part of the room; is that correct?

A. That's correct.

Q. Was there anything dividing you and the defendant in the interview?

A. Yes, the glass partition.

Q. So when the media speaks to the defendant in this case, they would have been divided by a glass partition. How was communication --

A. Typically what they do is, they send the mic through and the officer will go around, you know, on the other side and mic up the person then they talk through the phone.

Q. We're going to do this sort of in a general fashion. Did all the media personnel identify themselves to Mr. Broadnax?

A. Yes, they did.

Q. Did they have him identify himself?

A. Yes.

Q. Was it clear in your mind -- and this is sort of a conclusion, but you were there. Was it clear in

Page 28

your mind that the defendant wanted to speak to the media?

A. Yes.

Q. If at any time while you were there you had thought the defendant was not there voluntarily, would you have done anything?

A. Yes, I would have.

Q. What would you have done?

A. I would have -- I would have stopped it. There was an occasion -- if I can say this -- with another person that was being interviewed, cried, got upset and moments later his attorney actually showed up. It was a case with Shaun Rabb.

We stepped out of the -- Well, before we stepped out of the room, I said, "Shaun, let's step out. Let's give them a chance to talk." He was totally agreeable. We did, they asked us to stop and they took -- the guy continued to say, by the way -- the inmate said, "No, I want to talk. I want to talk," but once we stepped out they decided not to and so we left. I escorted the media out.

Q. So there is a bit of discretion on your part in this interviewing process; is that correct?

A. Correct.

Q. And throughout these interviews, did you ever

Page 29

get the impression that this was not something being done voluntarily by the defended?

A. No.

Q. And is your belief that you sat in on all four of the news stations, 4, 5, 8 and 11, as they interviewed the defendant, James Broadnax?

A. I remember specifically for the first two, and I think back and forth because I may have stepped out in the hallway to negotiate some of the logistics that I had to. But, for the most part, yes, I was there during them.

Q. And do you recall who all would have been in the room? Let's say, for instance, Channel 4. Obviously, Shaun Rabb was in there; is that correct?

A. That's correct, with his cameraman.

Q. And that -- And we'll talk about that side of the room that you-all were on, him, his cameraman and yourself?

A. Correct.

Q. But that would have been the only three people in the room on that side?

A. I believe so.

Q. And the other side would have been the defendant and any jailers who may have been standing by?

A. That's correct.

Page 30

Q. Then with Channel 5, would that have been a reporter by the name of Ellen Goldberg and her camera person?

A. That's correct.

Q. Anybody else in the room other than yourself and those people?

A. I don't believe so.

Q. And just so we're clear, you don't have any written notes about any of this, do you? You're going strictly off of memory; is that correct?

A. For the most part, yes.

Q. And then as it relates to Channel 8, would that have been Rebecca Lopez and her camera person?

A. That's correct.

Q. And yourself and no one else that you can recall?

A. There might have been a Dallas Morning News reporter, which is usually -- they come by themselves because it's print. I'm trying to remember if there was, but...

Q. There could have been a Dallas Morning News person in the room as the interview was going on?

A. Could be because WFAA and BELO are together -- I mean, Dallas Morning News and WFAA are BELO, so sometimes that happens. I'm trying to remember if that

Page 31

was the case.

Q. But you don't have any independent recollection of that?

A. No.

Q. Could I ask that you look through the documents that we have up there, State's Exhibit 16 for pretrial. Maybe you can tell me if there was a request -- a timely request -- by the Dallas Morning News that was signed by the defendant. When I say "timely," I'm talking about something prior to --

A. Oh, yes, there was. Yes.

Q. And you're looking at a document from the Dallas Morning News that has a June 20, 2008, at 4:20 p.m. date on it?

A. That's correct. They probably -- Typically, what they do is they go in together.

Q. Again, you don't have any independent recollection of that, do you?

A. No.

Q. This signature on back actually has a date on it as well; is that correct?

A. That's correct.

Q. And that's June 23, 2009?

A. For which one? I'm sorry.

Q. June -- James Broadnax is --

Page 32

A. Yes, that's correct.

Q. And the 23rd would have been the date of these interviews; is that correct?

A. I believe so.

THE COURT: Did you say 2009, Mr. Alex?

MR. ALEX: 2008. I'm sorry. June 23rd of 2008.

Q. [By Mr. Alex] That doesn't help with your memory at all, does it?

A. Like I said, I do so many of these that --

Q. That's okay. We're not presenting any reporters from the Dallas Morning News to the court, so it's not that big of an issue.

If there was somebody else there and they were doing anything improper that would effect the defendant's ability to give a voluntary statement, you would have remembered that; is that correct?

A. Oh, definitely, yes.

Q. When the interview concluded, were you there -- Were you there on each occasion when the interviews concluded?

A. I believe so.

Q. And when they were all over with, was the defendant, James Broadnax, was he escorted out?

A. Correct.

Page 33

Q. When he was escorted out, that would have also been by the jail personnel; is that correct?

A. Yes, sir.

Q. And was there anything about his exit that would have made you think that this was not a voluntary statement?

A. No, sir.

Q. And at that point, would the media have had to exit as well?

A. Correct.

Q. And you don't have any other written reports or notes as it relates to this -- these interviewing processes other than what you've given me and what you're having somebody else search for; is that correct?

A. Correct.

MR. ALEX: That's all I have, Judge. I'll pass the witness.

THE COURT: Cross examination?

CROSS EXAMINATION

BY MR. LOLLAR:

Q. Ms. Leach, good morning. How are you?

A. I'm good. Thank you.

Q. Ms. Leach, I want to ask you some things about what you've testified to here today. You said you've been with the sheriffs' office a little over a year?

Page 34

A. Yes.

Q. When exactly did you start?

A. May 12th of '08.

Q. I'm sorry?

A. May 12th of '08.

Q. May 12th. And, Ms. Leach, as far as your hiring, did you learn what the job description of the Public Information Officer was with the Dallas County Sheriffs' Office?

A. Yes.

Q. Do you remember that job description?

A. I don't remember it in detail. I have a general knowledge of it because I'm familiar with the position.

Q. Does it require you to have some basic understandings of the constitutional rights of the defendant?

A. It probably does. And I do have some because I have been a journalist for 25 years, so...

Q. Well, I say that because you indicated to Mr. Alex that you don't know anything about the Fifth Amendment and you don't know anything about right to counsel. Is that true, you've never heard of the Fifth Amendment?

A. He asked me if I had any legal background

Page 35

experience. That I do not. I have general knowledge, as I stated.

[Defendant's Exhibit No. 1 was marked for identification.]

THE COURT: This is Defense Exhibit 1 for the purposes of the hearing and the motion to suppress statements.

Q. [By Mr. Lollar] Let me show you, Ms. Leach, what's been marked here as Defendant's Exhibit No. 1. Do you recognize that as being part of your job description?

A. Uh-huh.

Q. Yes?

A. Uh-huh.

THE COURT: You've got to say yes or no, ma'am.

THE WITNESS: Oh, I'm sorry. Yes.

[Defendant's Exhibit No. 2 was marked for identification.]

Q. [By Mr. Lollar] Let me show you what's been marked as Defendant's Exhibit No. 2. Is this a page off of the Dallas County Sheriffs' Office website as it applies to media relations?

A. Yes, it is.

MR. LOLLAR: We would offer Defendant's 1 and 2.

Page 36

THE COURT: Any objection?

MR. ALEX: I have no objection, Judge.

THE COURT: Those are admitted.

[Defendant's Exhibit Nos. 1 through 2 were admitted into evidence.]

Q. [By Mr. Lollar] You see there under the heading, "Media Community Relations Unit." Is that the unit that you are in charge of?

A. Yes, sir.

Q. And do you see here where I have highlighted in yellow on this page, "However certain information must be withheld from the news media in order to protect the constitutional rights of the accused."

A. Uh-huh. Correct.

Q. You're familiar with that?

A. Uh-huh. Correct.

Q. So you have to have some basic understanding about constitutional rights afforded to a defendant to --

A. Right. I have general understanding.

Q. And then down at the bottom here, it talks about the scope and content of release of information. Again, it kind of limits the information that you can disclose, which is not legally privileged and which would not prejudice the rights of suspects.

Page 37

A. Yeah. Based on certain information, yes.

Q. So you acknowledge that -- Well, that's kind of within your purview to make sure that whatever you're doing doesn't violate the constitutional rights of the people who are jailed in the jail -- the Dallas County jail -- who have yet to stand trial.

A. Correct.

Q. And then I want to direct your attention also to Defendant's Exhibit No. 2. This is the media relations page from the website, and specifically the area that I have highlighted here, "Interviews may be denied based upon jail staffing, emergency conditions, or the inmates physical or mental condition at the time of the request."

Do you see that?

A. That's correct.

Q. Specifically in regards to June 23rd, Ms. Leach -- Let me back up. You said you started getting these media requests on June the 20th; is that correct?

A. I believe so.

Q. I believe that would have been a Friday; is that right?

A. Yes.

Q. And Mr. Broadnax was actually not brought into

Page 38

y'all's jail until after midnight on that Friday; is that --

A. Could be.

Q. Are you aware that when he was brought in that he was screened by the people you have over there doing the screening and they referred him to the psychiatric department. Are you --

A. Parkland medical does do screening on all inmates, yes.

Q. And they referred him to the psychiatric unit for them to look at.

A. Okay.

Q. Are you aware that at that time they placed him into what's called the closed behavioral observation?

A. No.

[Defendant's Exhibit No. 3 was marked for identification.]

Q. [By Mr. Lollar] I'm going to show you what I've marked as Defendant's Exhibit No. 3 and see if you recognize that page.

A. I don't. I don't usually see the medical information.

Q. Would this be a form that appears to be filled out at central intake, the health screening assessment?

A. I -- Yes. Central intake, yes, it does.

Page 39

Q. Does this appear to have been signed at 2:42 in the morning?

A. Sure looks like it, yes.

Q. On June 23, 2008?

A. Yes.

Q. Correct?

A. Yes.

Q. And does that, in fact, deal with James Broadnax?

A. Yes.

Q. Date of birth, 10/30/88?

A. Yes.

MR. LOLLAR: We would offer Defendant's 3.

THE COURT: Any objection?

MR. ALEX: I have no objection, Your Honor.

THE COURT: Defense Exhibit 3 is admitted.

[Defendant's Exhibit No. 3 was admitted into evidence.]

Q. [By Mr. Lollar] You see on the screening here, the screening assessment, the big stamp, "See Nurse."

A. Yes.

Q. And you see here on Page 2, that they referred Mr. Broadnax to the -- Mr. Broadnax to the psychiatric

Page 40

department?

A. Yes.

Q. And do you see right up here on disposition, you have a list of six different things, and --

A. Yes.

Q. -- that's housing assignments; is that correct?

A. I suppose.

Q. Well, "GP" is, like, general population?

A. Yes.

Q. "OBO" is open behavioral observation; is that correct?

A. Correct.

Q. "CBO" is closed behavioral observation; is that --

A. Correct.

Q. And are you familiar with the difference between open behavioral observation and closed behavioral observation?

A. Yes.

Q. What is it?

A. Many people come in under open. If they get put under the OBO, they can make a statement, like -- You know, if they're picked up for a DUI and say, "I'm so upset. I just want to kill myself," you know, they may not mean it, but they're still going to be placed under

Page 41

an OBO.

Closed BO, I believe, is someone that maybe they have more serious -- you know, talked about -- I don't know. I'm not a medical person.

Q. But you're familiar with an area in your jail called closed behavioral observation?

A. Yes, general understanding.

Q. And that's for those who have exhibited mental trauma or mental disturbance to the degree where they think they might be harmful to themselves or others?

A. Sure.

Q. So they're put in a single cell in the psych ward; is that right?

A. Yes.

Q. And that's what CBO is?

A. Yes.

Q. So are you familiar, Ms. Leach, that come Monday morning when reporters came to see Mr. Broadnax, you had to go get him out of closed behavioral observation in the psych ward of the jail?

A. I did not do that, no, sir. And on AIS, it did not say closed BO. That's a medical determination and the medical staff over there will make that determination. If someone was under closed BO, they would not allow them to do the interview.

Page 42

Q. Are you saying -- Well, let me make sure of what you are saying.

MR. LOLLAR: Does the Court have the request --

THE COURT: Yes.

Q. [By Mr. Lollar] So when a news station e-mails you or faxes you a request, how --

A. Right.

Q. -- do you get it to the defendant?

A. I fax it over to the jail.

Q. So would you have to have found out where Mr. Broadnax was located before --

A. Sometimes they put it on there because they can get it online.

Q. For instance, I'm looking here at the one from Channel 8 and --

A. Right.

Q. And somebody has handwritten right there, "James Broadnax," with his book-in number, "West Tower, 3P5."

A. Right. That's me.

Q. That's your handwriting?

A. Yes, it is.

Q. And you know what 3P5 is?

A. You know, honestly, I know that there is people

Page 43

that are held in different locations. I'm not one hundred percent sure, to be honest. I mean, I don't know the difference if they're in a single cell or not.

Q. Well, 3P is the psych ward, isn't it?

A. I suppose if you say it is.

Q. Ma'am? I'm sorry.

A. If you say it is, yes.

Q. Are you aware that at 7:19 in the morning on June 23rd, the psychiatric department had done a further screening of Mr. Broadnax in his cell 3P05?

A. I don't check that. I mean, I don't -- I don't go in there and check that. I mean, I do check it on occasion, but I don't check it if they update it and then if they put the information if they change it, things like that. I don't check it frequently, like, all day.

[Defendant's Exhibit No. 4 was marked for identification.]

Q. [By Mr. Lollar] Let me show you Defendant's Exhibit No. 4 and ask you if you recognize this as being a form from the Dallas County jail, Health -- Mental Health Screening.

A. Dallas County Jail Mental Health Screening, yes, that's what it says.

Q. Is that in regard, again, with James Broadnax?

A. Yes, James Broadnax.

Page 44

Q. Let me show you the date and time. You see they had him located in 3P05.

A. Uh-huh.

Q. You see that this was logged on June 23rd of '08?

A. June 23rd, okay.

Q. And the time --

MR. ALEX: May I approach, Your Honor?

THE COURT: Sure.

MR. ALEX: Just to see what they're looking at.

THE COURT: Okay.

Q. [By Mr. Lollar] 7:19 in the morning. Do you see that?

A. It states it on the form, yes.

Q. And that's the form that they filled in?

A. Right. When it's entered into the system, I don't know.

Q. Well, it will tell us right up there when it's entered into the system. But the actual form was filled out at 7:19 a.m. on June 23rd; is that correct?

A. That's what it looks like, yes.

MR. LOLLAR: We'll offer Defendant's Exhibit No. 4.

MR. ALEX: No objection, Judge.

Page 45

THE COURT: Exhibit 4 is admitted.

[Defendant's Exhibit No. 4 was admitted into evidence.]

Q. [By Mr. Lollar] Ms. Leach, does this appear to be a screening by a guy by the name of Jason Varghese, V-a-r-g-h-e-s-e, who is the psych assessor for the jail?

A. That's what it looks like on the form, yes.

Q. Done June 23rd of '08?

A. Yes.

Q. And does he state in his report that the defendant states that he has audio hallucinations?

A. Yes.

MR. ALEX: Judge, at this point, I'm going to have to object. The witness has already testified that she has no knowledge of this form or anything that leads to any further questions about it. IT's totally irrelevant to the question of whether or not the defendant voluntarily gave a statement as it relates to this witness. She testified that she has no knowledge of this form or anything on this form.

THE COURT: Let me have it and then I can read it. It's in evidence.

MR. ALEX: I object to any further questions for this witness as to this document. She's already testified that she has no particular knowledge

Page 46

about it.

[Court reviews Defense Exhibit No. 4.]

THE COURT: I've considered Defense Exhibit 4. For the record I want you to publish those portions of it that you think that need to be on there. You don't need to question the witness about it. I do want the record to show that it's in evidence and I have considered it.

Q. [By Mr. Lollar] Ms. Leach, do you see in regards to Defendant's Exhibit No. 4, that the defendant stated he was having audio hallucinations?

A. It does show it on this form.

Q. And in regards to his mental status observation, he was disheveled, dysphoric, dramatic and agitation?

A. Yes, on this form it does say that.

Q. Does it state that he was smoking wet marijuana two to three days ago?

A. It does.

Q. Wet blunt?

A. Yes.

Q. And Page 3 of this exhibit called for a referral to a psychiatrist because the defendant was suffering severe agitation, aggression and combativeness?

A. It shows that, yes.

Page 47

Q. Now, let me show you this one, the last page of this exhibit. It's by a Dr. Mirmesdagh. It's M-i-r-m-e-s-d-a-g-h.

A. Uh-huh.

Q. Do you know that doctor?

A. No.

Q. Do you know that that's the psychiatrist?

A. I don't.

Q. That works it the jail?

A. Yeah. I don't know all the medical staff, no.

Q. Do you see that the doctor noted on her exam that the defendant was having hallucinations and delusions and is paranoid?

A. Yes, it looks like that.

Q. And do you see the notation, "Keep CBO."

A. See it on the form, yes.

Q. And that, again, would be closed behavioral observation?

A. Yes.

Q. So you take him from closed behavioral observation on the morning of June 23rd to do these media interviews. Is that a fair statement?

A. It looks like it.

Q. Are you aware that -- Did you ever talk to the Garland police about this defendant?

Page 48

A. I don't recall.

Q. Are you aware that when the Garland police were talking to him he had requested the appointment of a lawyer?

A. No.

Q. But then he was brought down to your jail; is that right?

A. Correct.

Q. On June 20 -- 21st of 2008?

A. I believe so.

Q. Are you aware that he was arraigned June 21st at 5:45 in the morning?

A. I'd have to look at those forms. I mean, if it's there, I'm sure it's correct.

MR. LOLLAR: Judge, we'd ask the Court to take judicial knowledge of the papers in the Court's file. I've got a copy of them here.

THE COURT: Any objection to that?

[Defendant's Exhibit No. 5 was marked for identification.]

MR. ALEX: I have no objection to Defendant's 5.

THE COURT: Court does take Judicial notice of the contents of the file. Defendant's 5 is admitted.

Page 49

[Defendant's Exhibit No. 5 was admitted into evidence.]

Q. [By Mr. Lollar] Ms. Leach, does this appear to be an affidavit of indigence in regard to James Broadnax and the arraignment sheet?

A. That's what it looks like, yes.

Q. Looks like he was arraigned by Judge Jonathan Vickery at 5:45 on the morning of June 21, 2008; is that correct?

A. Yes, that's what it looks like.

Q. And the third sheet is the Instructions Relating to Preliminary Initial Appearance, referring the case to Criminal District Court No. 1; is that right?

A. Yes.

Q. And you see as part of this that the judge says, "The defendant having stated he was indigent and unable to employ counsel, was placed under oath and inquiry was made in the following factors: the defendant's income and source of income, property owned, outstanding obligations, necessary expenses, number and ages of dependents, spousal income and other matters indicating that he is in fact indigent."

A. Correct.

Q. And, further, on the 24th day of June, '08, "I have been advised by the Court of my right to

Page 50

representation by counsel in the trial of the charges pending against me. I certify that I am without means to employ counsel of my own choosing, and I hereby request the Court to appoint counsel for me."

A. Okay.

Q. Signed by James Broadnax at 5:45 in the morning on June 21st.

A. Uh-huh.

Q. So is it fair to state that at the time you let the media talk to him, he had twice requested appointment of counsel, once to the Garland police and once with the magistrate at Sterrett?

A. That's the first I've heard of it.

Q. Do you ever make any inquiries about that type of thing, either determining whether or not a person --

A. No, sir. I get too many of these on a daily basis. No, sir.

Q. I'm sorry?

A. No, sir. I get too many of these on a daily basis. I send them over and I let the inmates, because I believe it's their right to say yes or no.

Q. It's their right when --

A. That's right.

Q. -- you get them out of the psych ward, do you think they might have been fully informed?

Page 51

A. I had no knowledge that he was a closed BO. That's, again, a determination by the medical people and I'm not a medical person.

Q. Did you make any inquires as to his mental condition?

A. When it goes over to the jail, those folks -- the medical people who are trained in that capacity make that call. If I were to see it -- If it were in the system -- If I were to see it in the AIS system that it said closed BO, then likely I would not send it over. If I do not see that, then I leave it up to the medical personnel who are trained.

Q. Would you have looked at the AIS system to see where the defendant was in jail at the time?

A. I looked, yes.

Q. And you're saying he did not show to be in CBO?

A. I didn't see closed BO, no.

Q. Are you saying now that had you seen a closed behavioral observation notation, you wouldn't have allowed the press up to see him?

A. Perhaps not.

Q. But you don't know who made the call in this case?

A. No, sir, because I'm not medically trained on that. I send it over and there's staff that are trained.

Page 56

the fax comes over, I am a very task-oriented person and I send it right over.

Q. So to recap and sum up, you got these interview requests, you allowed these four television stations, and maybe the Dallas Morning News --

A. Correct.

Q. -- to interview him on the morning of June 21st?

A. Correct.

Q. And you made no attempt to find out whether or not he requested a lawyer by then?

A. Correct.

Q. And you made no attempt to find out what his mental state was?

A. If it's not in AIS, I sent it over and let the medical personnel, you are correct, make that call.

Q. And you took these reporters over to the hospital wing, the side wing there in the west tower of the Dallas County jail?

A. I took them to the west tower, yes, I did.

Q. Now, you mentioned another incident where you were talking about another guy that you and Shaun Rabb had gone to see.

A. Another guy? I'm sorry?

Q. Is that right?

Page 57

A. I don't know what you mean by "another guy." Are you talking about the other inmate?

Q. Yes.

A. Yes, the other inmate that was -- Yes, involved with us.

Q. Do you remember when that was?

A. I'm sorry?

Q. Do you remember when that was?

A. Yes. Like I said, I staggered the interviews --

Q. No, no. I'm sorry. I think we're talking about different things. You mentioned in your direct examination that there had been instances in the past --

A. Oh, okay. Oh, yes. Correct.

Q. You had stopped an interview.

A. Yes, that's right.

Q. Do you remember who the person was that you were talking about in that particular instance?

A. I sure do.

Q. What was his name?

A. I don't remember the person's name, but I remember the instance. It was the person who shot the Dallas police officer. Originally he had denied request for interviews and I faxed it back to all of the stations saying that the inmate had declined to interview.

Page 58

This particular person had reached out to this minister and asked that he contact Shaun Rabb. Shaun Rabb is a reporter, but he's also a minister. I sent a fax back over because Shaun had called me and said, "He wants to talk to me." I said, "Okay. He's declined always before, but I'll send it back over."

I sent it back over and sure enough he signed "Yes." We went over to do the interview. I received nothing from any of the attorneys that he did not want to talk. We started the interview process. He was very emotional, very distraught, crying. Within about seven or eight minutes, his attorney showed up --

Q. You said you didn't receive any requests from attorneys about his interview with Shaun Rabb; is that right?

A. I do not recall that I did.

Q. Do you see the lady sitting right back here on the fourth row? Do you recognize her?

A. Yes.

Q. Tell me about her.

A. She -- I think she's the one that showed up during the interview.

MR. ALEX: Judge, may I inquire, are we talking about a different incident?

MR. LOLLAR: Yes.

Page 59

MR. ALEX: We're talking about Payne?

MR. LOLLAR: I'm going to object to all of this, Judge. This is totally irrelevant and --

MR. LOLLAR: We'll show --

MR. ALEX: -- it's a fishing exhibition --

MR. LOLLAR: -- relevance.

MR. ALEX: -- to, apparently, at this point, have a hearing on Mr. Payne. This has nothing to do with Mr. Broadnax.

THE COURT: I don't agree with that. Overruled.

Go ahead. Overruled.

Q. [By Mr. Lollar] Do you recall, Ms. Leach, seeing this attorney down at the check-in booth where you check in to go up to the jail?

A. I do after the fact. I didn't know who she was at the time. We had scheduled an interview three days in advance on this particular person. The person had signed it and, like I said, it had been three days later that we did the actual interview. I had no idea who she was.

Q. And the defendant that we're talking about is a guy by the name of Charles Patrick Payne; is that correct?

A. That sounds right.

Q. And he was charged with capital murder?

Page 60

A. Right.

Q. In the murder of a Dallas police officer?

A. Right.

Q. And this event happened back on January 13, 2009?

A. I'd have to double check, but if you say that's the date.

Q. Ms. Leach, did you become aware of that his attorney was over there trying to get up to see him --

MR. ALEX: Judge, I'm going to object again to relevance.

THE COURT: I take it the relevance of this is, your theory is that she acted differently with regard to permitting access to this defendant than she did in another case; is that right?

MR. LOLLAR: Well, the point I'm trying to make, Judge, is this being the public information officer, I think wants to have good working relationships with the press. I think that's part of her job, what she perceives to be part of her job.

And when reporters come saying they want to talk to somebody, she'll do what she can do to help them talk to somebody, even to the point -- and that's what we're fixing to get to -- where this attorney was held up until Shaun Rabb could go up and interview him

Page 61

and get that interview which was played on television that night with Mr. Payne talking about his shooting a police officer.

THE WITNESS: That's not correct.

MR. ALEX: Can I just weigh in here a second. That's a pending case in another court that the public defender is defending and I am also prosecuting on. This is not the forum to --

THE COURT: Okay. I'll sustain the objection, but I understand your point.

MR. LOLLAR: Judge, I don't think I have any further questions.

THE COURT: Redirect?

REDIRECT EXAMINATION

BY MR. ALEX:

Q. You made a remark about that if he was in the CBO, you might not have allowed this interview. Do you recall that?

A. Yes, sir.

Q. And when a person goes to closed behavioral observation, they could be sent directly from intake when they first get there according to Mr. Lollar and the documents he provided; is that correct?

A. Right.

Q. You have no way of knowing what the person who

Page 62

was doing the screening was thinking when they sent him to closed behavioral observation; is --

A. That's correct.

Q. In fact, you weren't aware of that document at all, were you?

A. No, sir.

Q. And then if he -- if the person that's doing the screening and looking at that document is giving you information that this is high profile, double homicide robbery, double murder, it's totally within their purview to send them up to suicide watch or CBO, closed behavioral observation; is that correct?

A. Yes.

Q. With no other indication at all?

A. That's right.

Q. And the document there that counsel showed you, you hadn't seen it before; is that right?

A. Not until today.

Q. And on the second page, there are numerous questions in mental health screening; is that correct?

A. Yes, sir.

Q. And the judge has this up there. Take for me, if you will -- and I'll make a proffer to the Court -- that all of these questions were answered, "No." There's nothing on this form that would refer -- that would tell

Page 63

a person, "Here's a person that has a psychological problem."

A. Correct.

Q. Except that he's seeing some stuff; is that correct?

A. That's correct.

Q. And you have no way of knowing if that was just something the person said, "This is a high profile, double homicide. I'm going to send him over there where he'll be by himself."

You have no way of knowing that, do you?

A. I don't.

Q. And you would not be the proper person to answer that question, would --

A. That is correct.

MR. ALEX: That's all I have, Judge.

RECROSS EXAMINATION

BY MR. LOLLAR:

Q. Well, everything you just said is pure hypothesis on your part. You don't know why they put him in closed behavioral observation, do you?

A. I'm not a medical person, as I said. I don't know.

MR. LOLLAR: That's all we have.

THE COURT: May the witness be excused for

Page 64

purposes of this hearing?

MR. ALEX: I have nothing further for this witness in this hearing, Judge.

MR. LOLLAR: No objection.

THE COURT: You may step down, ma'am. Thank you for your testimony.

What further says the State?

MR. ALEX: Judge, I just need one second to see if the CSO officer is here. I called while we were doing that.

THE COURT: Okay. We're in recess.

[Recess taken from 10:12 a.m. to 10:20 a.m.]

MR. ALEX: Just by way of proffer, Judge, there are numerous occasions in there where the reporter made a reference to the fact that -- This is State's Exhibit 17 for the pretrial, Judge.

THE COURT: All right.

MR. ALEX: There are many statements in here in which the reporter states in a dialogue portion. In addition to that, they asked the defendant whether or not he wants to talk to them in which he said, "Yes."

THE COURT: Okay.

MR. ALEX: The State will call Ms. Hicklen.

Page 65

Whereupon,

CHRISTIE HICKLEN,

having been first duly cautioned and sworn, testified as follows:

DIRECT EXAMINATION

BY MR. ALEX:

Q. State your name, ma'am.

A. Christie Hicklen.

Q. Is it Hicklen with an "L" on the end?

A. Yes.

Q. What do you do for a living?

A. I work for the Dallas County Sheriffs' Department as a detention service officer.

Q. And the particular area that you work in?

A. Mine is the west tower.

Q. West tower?

A. Uh-huh. Mental health.

Q. Mental health?

A. Uh-huh.

THE COURT: Would you spell your name for the record?

THE WITNESS: C-h-r-i-s-t-i-e, H-i-c-k-l-e-n.

Q. [By Mr. Alex] Ms. Hicklen, you know why you're here; is that right?

Page 66

A. Yes.

Q. Were you the person back on June 23, 2008, that would have physically went and retrieved the defendant, James Broadnax, to bering him to interviews with the media?

A. Yes.

Q. For the record, do you see James Broadnax in the courtroom today?

A. I do.

Q. If this is chair 1, 2, 3, 4, 5 and 6, which chair is he sitting in?

A. 6.

Q. And for the record, you're referring to the gentleman that's sitting directly in front of me; is that correct?

A. Yes.

MR. ALEX: May the record reflect that the witness has identified the defendant in open court.

THE COURT: Is there an objection.

MR. LOLLAR: No, Judge.

THE COURT: The record will so reflect.

Q. [By Mr. Alex] Ms. Hicklen, what working in the west tower mental health as a detention service officer, do you have to have any special training other than the regular detention service officer to work in the mental

Page 67

health unit?

A. Yes.

Q. How much training is that?

A. 40 hours.

Q. Would I be correct to say that for a detention service officer, safety is the number one rule?

A. Yes, it is.

Q. On this particular day, June 23, 2008, would it have been somewhere between noon and 1:00 -- and if you don't know, that's okay -- that you would have went and got the defendant for the interviews?

A. It was between noon and 1:00.

Q. When you went to the defendant's holding place, can you describe where he was being held?

Let me ask it this way: Was he in the mental health unit there?

A. Yes.

Q. And is there a difference between a behavioral observation and a closed behavioral observation, or do they say open and closed?

A. There is a difference between open and closed.

Q. Tell the judge what the difference is.

A. Well, in an open tank, the inmates are able to come and go out of their cell as they wish, whereas if you're in a closed tank -- And in his case, he was in a

Page 68

tank -- in a suicidal tank. The only time he would come out is if he was being interviewed by a psychiatric doctor.

Q. So he was in the suicide area. Do you have a suicide area in this behavioral observation area?

A. Well, actually suicide is different from a closed observation tank. You know, once you're in suicide, you're housed there until a doctor sees differently. They'll either -- They will either move you to a closed tank or an open tank depending on the individuals behavior.

Q. Very good. And how were you -- How did it come to be your job to retrieve the defendant to bring him to these interviews? How were you selected?

A. Well, I was just in the area at the time. I was a floor officer at the time. When the control center officer notified that particular tank and said that Mr. Broadnax had a visit then, I was the officer that was there to transport him to visitation.

Q. So your understanding was that he had a visit. Did you know at that time that it was the media?

A. No.

Q. When you went to get him to go to his visit, can you describe his demeanor? How was he acting?

A. His demeanor was okay. He wasn't combative

Page 69

or -- I didn't second guess taking Mr. Broadnax out to go to his visit.

Q. When you say you didn't "second guess," let me give you a couple of different hypotheticals. If he was -- If you thought he was dangerous at all to you, himself or anybody else, would that violate your number as far as taking him out?

A. By myself, yes.

Q. You would have brought other folks into the situation?

A. Right. I would have asked additional officers to assist me.

Q. The second part of this hypothetical is, if he was in there -- for lack of a better term -- he was obviously psychotic, talking to -- Let me ask you that: Was he talking to himself?

A. No.

Q. Did he drool?

A. No.

Q. Did he have any indicators of a person who was suffering from -- And you're not a medical doctor; is that right?

A. No, I'm not a medical doctor.

Q. How long have you worked in mental health?

A. I've been in mental health a little bit over a

Page 70

year now.

Q. And at that time, how long had you been in mental health?

A. Maybe, about ten months.

Q. And prior to that, you had been in the jail for how long?

A. I've been in the jail a total of four years.

Q. And you've seen people that showed signs of what you thought might have been psychotic, right?

A. Right.

Q. Did you see any of those signs in the defendant?

A. No.

Q. Did you let him know he had a visit?

A. I let him know he had a visit.

Q. Did he say, "No, I don't want to go."

A. No.

Q. Were you aware at all that he had already signed the consent form to speak to the media? Was any of that brought to your attention?

A. Not at all.

Q. So when you went and took him to his visit, where did y'all go?

A. We went to the visitation booth.

Q. Did you have somebody else with you when you

Page 71

went?

A. There were additional officers there. Initially -- They came after. I escorted him out of the tank myself and additional officers came to the visitation area once we were back there.

Q. And you had no concern for your safety at that point other than the general, like, I would imagine you were always on guard; is that right?

A. Right.

Q. As far as the way he was acting, you had no real concerns for your safety, he wasn't aggressive towards you or anything like that?

A. No.

Q. And when you got to the visitation, what -- what was going on?

A. Well, they were -- the news media was setting up and I asked him, "Do you want to interview," and he said that he did. So they had the microphone that I assisted with, you know, putting it on his -- on his suit -- on the jumper. I just placed him in the cell that he was interviewed in and just waited on the outside of the door until the interview was finished.

Q. And on the way up to doing the interview, did you have any discussions with him as to what he should do or should not do?

Page 72

A. Not at all.

Q. Was the first time you realized this was a media interview when you saw them and you asked him did he want to interview with these folks? Was that the first time you realized it was the media when you got up there and saw --

A. Right. Once we came inside, yes. Uh-huh.

Q. And you asked him specifically at that point whether he wanted to interview with these -- it was obvious they were reporters out there; is that right?

A. Right. There was different sets of -- different stations, you know. Each one, I asked him was he okey with doing an interview.

Q. And he said to you, "Yes."

A. Right.

Q. At that point, would you have known anything specific about his mental state, if the doctors had diagnosed him or if he had seen anybody? Would you know any of that information at that time?

A. Whether or not he had been diagnosed with anything?

Q. Yes, ma'am.

A. No.

Q. He was in suicide watch; is that right?

A. Right.

Page 73

Q. And just to recap, you brought him up at the request of -- Was it the sergeant?

A. No. It would be the control center officers, because that's their first stopping point once they get to whatever floor the inmate may be on. They would notify the floor officers or the floor side officer that an inmate has a visit, whether it be an attorney visit or whatever.

MR. ALEX: That's all I have, Judge. I'll pass the witness.

THE COURT: Cross examination?

CROSS EXAMINATION

BY MR. LOLLAR:

Q. Ms. Hicklen, just a few questions for you. Did you make notes or any kind of recordation of what you're testifying about?

A. No.

Q. So this is all just from your memory?

A. Yes.

Q. June the 23rd of 2008?

A. Right.

Q. And this is July 27, 2009, for the record. Where is 3P5?

A. It's in the west tower, third floor of the west tower.

Page 74

Q. And what kind of a cell is that?

A. 3P5 is a open tank.

Q. You mean, an --

A. Open observation tank meaning the inmate -- No, I'm sorry. It's a closed tank. And that means, again, you're in a closed tank. The inmate is allowed one hour a day to come out for recreation.

Q. And who gets placed in closed behavioral observation?

A. Depending on -- The doctors decide who gets placed. We don't. I guess if you have -- If you don't get along well with other inmates, or whatever the case may be, the doctors are the ones who determine who goes in open and closed. That's normally the relationship between the inmate and the doctor.

Q. I'll show you what's been marked as State's Exhibit 16. Kimberly Leach just told us this is -- her handwriting here.

A. Uh-huh.

Q. Do you see what tank these requests were sent to?

A. 3P5.

Q. 3P5?

A. Uh-huh.

Q. And that would be your -- that's what you would

Page 75

describe as being closed behavioral observation?

A. Yes.

[Defendant's Exhibit Nos. 6 through 7 were marked for identification.]

Q. [By Mr. Lollar] Let me show you what's been marked as Defendant's Exhibits 6 and 7. I show you this to ask you to take a look at them.

A. Okay.

Q. You testified that you went and got him out of suicide --

A. Uh-huh.

Q. Did you see here that Defendant's Exhibit 7 is the suicide information log?

A. Right.

Q. And it shows when a person is placed on suicide prevention; is that correct?

A. Yes.

Q. And what was the date and the time at which he was placed on suicide prevention?

MR. LOLLAR: Well, we'll go ahead and offer Defendant's Exhibits 6 and 7.

MR. ALEX: You're offering this whole thing as 7?

MR. LOLLAR: Uh-huh.

MR. ALEX: Are these just the medical

Page 76

records?

MR. LOLLAR: Yes.

MR. ALEX: I have no objection, Judge, for them being offered now. I do object to the continuing to ask the witness about documents that they have no knowledge of. I think the Court can review the documents as they come in. The witness -- Well, I guess the witness can say whether she has any knowledge of them or not.

I'll withdraw the objection.

THE COURT: And the net affect of it is going to be the same however I'm going to consider them.

Defense Exhibit 7 is admitted.

[Defendant's Exhibit No. 7 was admitted into evidence.]

Q. [By Mr. Lollar] Let me show you what has been marked as Defendant's Exhibit No. 6. Do you recognize this as the Dallas County jail health -- mental health clinic note brief?

A. Uh-huh.

Q. Yes?

A. Yes.

Q. And the second page of that, does that indicate actually that he was placed in suicide prevention after the interviews were conducted?

Page 77

MR. ALEX: Judge, again, the witness cannot properly answer that question. She doesn't have personal knowledge. The documents that they have there speak for themselves, and there are other documents that will complete the whole story. To ask the witness these questions at this point is totally misleading the Court.

THE COURT: I guarantee you, I'm not being misled. But it does seem to me to be -- I mean, why can't I just look at them?

MR. LOLLAR: Well, you can. I was going to ask the witness to look at Defendant's Exhibit No. 7, and is this the Lew Sterrett, west tower jail facility suicide observation log?

THE WITNESS: That is the log.

Q. [By Mr. Lollar] Are the people in charge of suicide prevention required to see a person every fifteen minutes?

A. Yes.

Q. And do they make a log of what they observe?

A. That's correct.

Q. Is that what this is?

A. Yes.

Q. And this would be in regard to James Broadnax?

A. Yes.

Q. Does it show when he was placed on suicide

Page 78

prevention?

A. Yes.

Q. What was the date he was placed on?

A. 6/23/08.

Q. And what time was he placed on suicide prevention?

A. 2:20 p.m.

Q. 2:20 p.m. And actually these notations start running at 2:00 that afternoon; is that correct?

A. [Nods head affirmatively.]

Q. And then there are notations for every fifteen minutes, around the clock, for actually the next three days. Does that appear to be correct?

A. Ask me that again.

Q. These notations -- Are these made every fifteen minutes, around the clock?

A. Yes, they are.

Q. For a person in suicide precaution?

A. Yes.

Q. So having seen the documents we've shown you here, that you went and got him from 3P5, and he wasn't placed in suicide prevention until after the television interviews were over.

Does that freshen your recollection?

A. I don't know if -- There should be other

Page 79

suicide logs that started before then because his was pulled for the interviews prior to apply.

Q. Well, I agree with that, but I think all the interviews were over with by 2:00.

A. I can't say because the shift changed for me. Actually, before I left, there were -- they were still conducting interviews.

Q. All right. Thank you.

THE COURT: Anything else?

MR. ALEX: I have nothing further, Judge.

THE COURT: May the witness be excused for the purposes of this hearing?

MR. ALEX: No objection to that, Judge.

MR. LOLLAR: No objection.

THE COURT: Thank you for your testimony, ma'am. You may step down.

What further says the State?

MR. ALEX: Judge, other than the testimony of the reporters and perhaps a cameraman, that's all I've got for now.

THE COURT: So do you agree that I'm -- it would be appropriate for me to defer a ruling on this until such time as we figure out what the Court of Appeals is going to do?

MR. LOLLAR: Yes, sir. I have a witness

Page 80

to call, though.

THE COURT: Hold on. Now, let's say that the Court of Appeals grants the Motion to Suppress filed by the reporter's lawyers.

MR. ALEX: The Motion to Suppress, Judge, or are we talking --

THE COURT: The testimony of those reporters.

MR. ALEX: Okay.

THE COURT: Where are we then as far as alternate methods of offering the tapes?

MR. ALEX: Well, I -- That's a two-fold question, Judge. The Defense has filed a Motion to Suppress and asked the Court to have a hearing on it. I think you've already granted that. I'd have to confer with my --

THE COURT: Granted the motion to have a hearing?

MR. ALEX: Well, when we did the pretrial, I think you granted the motion for a hearing on the Motion to Suppress and we set it for a date.

THE COURT: Right.

MR. ALEX: And you --

THE COURT: I didn't grant the Motion to Suppress, though.

Page 81

MR. ALEX: No, sir, you just granted a hearing. And I believe -- I mean, I'll have to -- I'll talk to my fellow advisors, but that -- once the hearing had been granted to have the Motion to Suppress heard, I think that's a condition precedent to me offering the tapes. You have to make a ruling of some sort that it's voluntary. If that's not done, I don't know that we can --

THE COURT: Well, that's not my inquiry.

MR. ALEX: Oh, okay. I'm sorry.

THE COURT: My inquiry is this: Let's suppose that you don't have the reporters to use to lay your predicate for the foundation in the admissibility of the tapes in case the Court of Appeals says they do not have to testify? Do you have another way of getting the tapes on than using the reporters? That's my question.

MR. ALEX: I believe that the law is that we can use the business records extension. However, Judge, I do believe there is going to be a confrontation clause issue as it relates to -- And I mean if the Defense wants to waive all this, I'm fine with that. But I think there's going to be a confrontation clause as it relates to the voluntariness of the statements. I --

THE COURT: Here's my deal. It looks to me like -- I'm not saying -- I don't know what the

Page 82

Court of Appeals is going to do. It looks to me like preliminarily that if they say the reporters don't have to testify, that that ends this whole inquiry, that we don't need to get into voluntariness because we've got no witnesses to get the tapes in through.

MR. ALEX: Well, and I would agree with you if the Defense is going to waive their right to the Motion to Suppress. I just don't know that they are, Judge, and I think -- And I could be wrong, but I think if they -- if they raise the issue, then I think it has to be dealt with pretrial as a condition precedent for it to come in.

THE COURT: But isn't it muted?

MR. ALEX: I don't think they can mute the defendant's rights as it relies --

THE COURT: If it's not coming in anyway, then what's the point of having a Motion to Suppress?

MR. LOLLAR: That's mute. I thought that's what we were doing is having evidence relevant to the Motion to Suppress the tapes.

THE COURT: Right. But, what I'm saying is -- and tell me if I'm wrong -- is if the reporters are not allowed to testify, then regardless of anything having to do with voluntariness, the tapes don't come in. Am I missing something on that? I think

Page 83

Mr. Parks is agreeing with me.

MR. LOLLAR: We agree with that. Now, they're going to say "business records," and we're going to say, "No," because of Melindasdiaz [phonetic] versus Massachusetts, which came down here June the 25th.

MR. ALEX: Well, I think that the business records at first -- at first blush is probably -- I mean, they passed a specific statute saying that they're --

THE COURT: Okay. Let me call a timeout. I need for y'all to do some research on this, okay? Because I don't know what the Court of Appeals is going to do. Let's -- Assuming arguendo that they don't let the reporters testify, then we've got to get over whether this comes in or not and I --

MR. ALEX: Well, I can almost guarantee you, Judge, if they make the ruling contrary to these tapes coming in, that we're not going to sit on our hands and let it stay there. I mean, this is the crux of our case and I think it not only -- not only does it work an injustice to the case, but if they have filed a motion for -- a Motion to Suppress the evidence, I don't think that the Court of Appeals on an evidentiary matter as it relates to the reporters would be the final stay in that.

MR. PARKS: David, how does our filing a

Page 84

motion --

THE COURT: Off the record.

[Off the record discussion.]

Whereupon,

JANET COOK,

having been first duly cautioned and sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LOLLAR:

Q. State your name, please.

A. Janet Cook.

Q. What is your occupation or profession?

A. I am an assistant public defender in Dallas County.

Q. And how long have you been with the Dallas County Public Defender's office?

A. I started in August of '99. I was there until January of -- I believe it was 2002 or 2003 -- No, 2003, and then went to the -- as a senior staff attorney here in Dallas County working with Keri Young. I was there until March of 2006 when you rehired me for the Public Defender's Office.

Q. And to which court are you currently assigned?

A. 283rd, Judge Rick Magnis.

Q. And let me ask you, do you recall the events of

Page 85

January 13, 2009, as --

A. Yes.

Q. -- it relates to one of the defendants that you were appointed to represent?

A. Yes.

Q. And who was that defendant?

A. Charles Patrick Payne.

Q. And what was he charged with?

A. He's charged with one count of capital murder and two counts of attempted capital murder.

Q. Do you recall on what day you were appointed?

A. The very next day after the offense and -- I believe the offense was January 6th, so I would have been appointed the next morning, January the 7th. Or the offense was January 7th and I was appointed January 8th. I'm -- It's one of those two dates.

Q. Do you recall where Mr. Payne was being housed in the Dallas County jail at that time?

MR. ALEX: Judge, I'm going to object to relevance unless counsel can -- can give some proffer as to what Payne's case has to do with this.

THE COURT: Well, I think I know, but go ahead. Say -- Say what that is, why you --

MR. LOLLAR: Well, yes.

THE COURT: -- think it's relevant.

Page 86

MR. LOLLAR: Ms. Cook will testify that she and her investigator went over to the Dallas County jail to see Mr. Payne, that they were held up down at the -- oh, the booth downstairs where you present your credentials and get the badges.

THE COURT: So that the media can talk to them?

MR. LOLLAR: And she will further state that Kim Leach arrived with Shaun Rabb and his cameraman; that Ms. Leach walked into the booth where the credentials were, looked at our paperwork and saw the request for inmate interview that had her client's name and identifies her as his attorney. Then Ms. Leach looked over at Ms. Cook and her investigator. Ms. Leach then walked out of the booth and took the Fox 4 employees up.

The people downstairs kept holding them up --

THE COURT: And why is that relevant to this case?

MR. LOLLAR: We think that -- Well, and to wrap up, then she was finally allowed to go up to see her client and found him being interviewed with Shaun Rabb.

We think that this shows the Court a

Page 87

pattern of behavior by the public information officer, that she will perhaps put her perceptions of needing to help the press over the rights -- the substantial constitutional rights of the defendant as is reflected here in this case and as reflected in --

THE COURT: Any objection to my accepting your proffer as being what this witness would say?

MR. LOLLAR: Judge, can I ask -- It's all summarized here for the Court. If I can get Ms. Cook to identify the report, then I'll submit that.

THE COURT: Do you have objection?

MR. ALEX: I don't know what the report says, Judge. I'm prosecuting Charles Payne and I get the impression that they're here to try to make a record of something to use in that case, which is highly improper.

THE COURT: I -- I don't think they're doing that.

MR. ALEX: Well, I represent -- I'm -- I'm prosecuting Mr. Payne and Ms. Cook knows that. This looks to me like something that has been going on in the Payne case for some time now. It has nothing to do with this case at all, Judge. All these particulars and specifics has what to do with this case?

MR. PARKS: But, David, you brought the subject up to --

**Page 88**

MR. ALEX: I brought --

MR. PARKS: -- bolster --

MR. ALEX: -- the subject up?

MR. PARKS: David, you --

UNKNOWN SPEAKER: What attorney was sitting downstairs with James Broadnax? What does this got to do with it?

THE COURT: What's that Defense exhibit?

MR. LOLLAR: No. 8, Your Honor.

THE COURT: Why can't you just offer it, I'll admit it and I'll consider it.

MR. LOLLAR: Okay.

THE COURT: Can we do that?

[Defendant's Exhibit No. 8 was marked for identification.]

MR. LOLLAR: We'll offer Defendant's Exhibit No. 8, which is a report that Ms. Cook did and a letter of complaint to Sheriff Valdez.

THE COURT: Okay.

MR. ALEX: And I object to all of this, Judge. I think it's totally irrelevant and improper.

MR. LOLLAR: Judge, if I could ask just one more question.

THE COURT: The objection is overruled. Defense Exhibit 8 is admitted.

**Page 89**

[Defendant's Exhibit No. 8 was admitted into evidence.]

Q. [By Mr. Lollar] Ms. Cook, where is Mr. Payne now?

A. Right now he is in Vernon. He's been found incompetent to stand trial at this time.

Q. Do you know where he was housed at the time y'all went over to try and see him?

A. On the 13th he was on -- in the third floor, west tower.

MR. LOLLAR: That's all the questions we have.

THE COURT: Cross examination?

MR. ALEX: No, sir.

THE COURT: You may step down, ma'am.

MR. LOLLAR: May Ms. Cook be excused?

THE COURT: Yes, sir.

Anything else from the Defense?

MR. LOLLAR: Not at this time.

THE COURT: Anything from the State?

MR. ALEX: Nothing further at this time.

THE COURT: When are we starting up again?

MR. LOLLAR: We await the arrival of Dr. Platt, and I think he -- I thought we were going to go ahead and have the hearings this morning, so I told

**Page 90**

him to be here this afternoon. He's driving up from College Station, so it should be 1:00 or so.

THE COURT: Let's start at 2:00.

MR. ALEX: Could we get a ruling from the Court of Appeals -- Criminal Appeals, I guess, today -- The reporters were told to be here today, I guess, with a court order. When -- When would you want to proceed?

THE COURT: I don't think we're going to get an answer from them today because the deadline for filing a briefing on that is the 29th, which is Wednesday.

MR. ALEX: The 29th?

THE COURT: Yes.

MR. LOLLAR: Close of business Wednesday.

THE COURT: So we're not going to -- this is not going to be resolved until probably Thursday or so.

We're in recess until 2:00.

[Recess taken from 10:52 a.m. to 2:19 p.m.]

THE COURT: Back on the case in Broadnax. This is a continuation of Rule 702 through 705, expert witness hearings.

Mr. Lollar, if you'll call your first witness.

**Page 91**

MR. LOLLAR: We'll call Lance Platt.

Whereupon,

LANCE PLATT, Ph.D., having been first duly cautioned and sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LOLLAR:

Q. Would you state your name, please?

A. Lance Platt, P-l-a-t-t.

Q. Mr. Platt, what is your occupation or profession?

A. I'm a self employed consultant, consulting on drug and alcohol cases.

[Defendant's Exhibit Nos. 9 through 10 were marked for identification.]

Q. [By Mr. Lollar] Let me show you, Mr. Platt, your -- Defendant's Exhibit No. 9 and 10. Is Defendant's Exhibit No. 9 a CV of yours?

A. It is.

Q. And is No. 10 your report which you wrote to me?

A. It is.

MR. LOLLAR: We'd offer Defendant's 9 and 10.

THE COURT: Any objection?

SHARINA FOWLER, CSR 214-653-5696

Page 92

MR. ALEX: No objection.

THE COURT: Defense Exhibits 9 and 10 are admitted.

[Defendant's Exhibit Nos. 9 through 10 were admitted into evidence.]

Q. [By Mr. Lollar] Dr. Platt, could you give us some idea of your background and experience?

A. Certainly. I have a master's degree and a doctorate degree from Texas A&M University, both of which are in education. I was a police officer with the City of College Station Police Department from '92 to '99. I served in several capacities there.

I went to work for the State of Texas with the Texas Engineering Extension Service in 1999 -- the latter part of '99. While I was there, I assisted in running the state's standardized field sobriety testing program, as well as the drug recognition expert program. I've taught numerous courses in drug recognition, identification to attorneys, probation, parole officers, to teachers. The main pipeline for my teaching comes through the Correctional Management Institute of Texas, which is at Sam Houston State University.

Q. What is that?

A. It's just a part of the criminal justice college at Sam Houston State.

Page 93

Q. And, Mr. Platt, when did you get your Ph.D.?

A. I got my Ph.D. in 2004.

Q. From where?

A. Texas A&M.

Q. Have you been called before as a drug recognition expert in this county and many other counties across Texas?

A. Not in this particular county. I did take the drug recognition expert program training. I didn't complete it. I was about three evaluations short in the field. I took the phenolic exam and all that. To compensate for that, I took the Forbstein course on drunk driving at the University of Indiana and completed that.

Q. Dr. Platt, let me ask you, did I submit to you for your review a number of different things? I think I sent you the copies of the Texarkana Police Department in-car video. I think I sent you copies of the four interviews that were conducted of the defendant on June 23, 2008. I think I sent you reports, I think I sent you the medical records from the Dallas County Jail.

Have you had a chance to review all those things?

A. I did.

Q. And based upon your review of those records and

Page 94

those videotapes, did you form a conclusion, or any conclusions, about the defendant in this case, James Broadnax?

A. My conclusion as far as the interviews go or pre-interviews?

A. Well, let me start by asking, did you come to any conclusions about whether or not his appearance, when he was first brought into jail, is consistent with the person who was using wet?

A. Based upon what I read from the jail intake forms, it did appear that there was a possibility that Mr. Broadnax could have possibly been under the influence of wet due to his combative behavior that he displayed when he came in. I don't know for sure. I know that he had admitted to smoking previous.

I also know that the jail staff certified him as having mental psychosis, I believe is what they called it, and mental aggression.

Q. And you saw that they eventually diagnosed him with a polysubstance abuse induced psychosis?

A. Eventually, yes.

Q. And he was placed in a special unit there in the jail for a person with mental illnesses?

A. That's what they wrote down, yes.

Q. All right, sir. Upon his entry into the jail,

Page 95

did you note in the medical records that he had elevated temperature, elevated pulse rate and elevated blood pressure?

A. Based upon what I saw on the intake form, yes.

Q. And would those be all consistent with a person who is coming down off of wet or having used wet?

A. It's possible. I would think he would be more on the upside of the drug than the downside.

Q. Now, did you come to learn that he had been examined by the medical staff there in the jail on the morning of June 23rd before he was taken before the television reporters to do their interviews?

A. I believe a couple of different medical folks looked at him.

Q. And did you see where they were saying that he was having auditory hallucinations and was acting psychotically?

A. I did read that, yes.

Q. And, Doctor, do you have an opinion based upon what you saw, about whether or not it was proper for the jail personnel to allow him to be seen by the media in the condition that he was in?

A. I don't know exactly what their policy and procedure is. I haven't seen it. I would -- I would -- In my opinion, it probably would have been best to let

Page 96

him talk to an attorney first. I don't know what their policy and procedure is.

Q. Did you come to an opinion as to whether or not -- Well, did you see in the records that following the time he was diagnosed with polysubstance induced psychosis, he was then diagnosed with just plain psychosis and has been treated up to this day with anti-psychotic medication?

A. I read that, yes.

MR. LOLLAR: Judge, that would be the testimony -- the areas of questioning that I would talk to Dr. Platt about.

We'll pass the witness.

THE COURT: Cross examination?

MR. ALEX: Yes, sir.

CROSS EXAMINATION

BY MR. ALEX:

Q. Is Dr. Platt all right?

A. That's fine, sir.

Q. Doctor, I've looked at your education and experience and you're not a medical doctor, right?

A. No, sir, I'm not. I'm a Ph.D.

Q. So the basis of your opinion -- First, let me see if I can -- if I can -- if I've got it clear the opinions that you're going to give correctly, okay?

Page 97

A. Okay.

Q. Your first opinion is the defendant's appearance when brought to jail, and I'm assuming you were looking at the book-in photo?

A. [No response.]

Q. Well, let me see if I can -- Let me start over.

His appearance is conclusive with someone who was under the influence of wet. Is that your first opinion that I heard you say?

A. Not -- Not the appearance. It's based on what I read in the report. I never saw a picture of him when he was booked.

Q. So when you say "appearance," you're talking about from what you read in the documents?

A. Yes, sir.

Q. And that was based -- You said it was primarily on his combativeness?

A. I said it was possible, yes, sir.

Q. And the other thing that I heard was the -- Counsel went through and talked about the blood pressure and his vital signs at the time he was brought to jail. Did you have an -- I'm not sure if I got an opinion there. Did you have an opinion about whether he was -- those were signs and symptoms of wet or --

Page 98

A. Well, my opinion on that is, if -- if they were -- if they were high, it would be if he was on the up -- the upside of the drug. If he was on the downside going down, then it probably would have dropped.

Q. That's what I thought I heard you say. Okay. So if you were giving an opinion on that, if those things were indicative, he would have had to use within the last three or four hours?

A. Within the last, probably, ten to fifteen hours, I would say.

Q. And then he asked you a question about whether it was proper to let the defendant talk to the media. Now, is that an opinion you plan on giving to the jury when the jury is in the -- in this trial as to whether it was appropriate or not?

A. Yes.

Q. Your opinion was, it was not appropriate for the jail to let him talk to the media because of what?

A. Well, my opinion, basically -- What it was -- What I started out saying, I don't know what the policies and procedures are for Dallas County. It would seem to me it would be reasonable if a person is diagnosed with this alleged behavior, you might want to let him see a lawyer to determine -- The lawyer may say, "Yeah, go ahead and talk. I don't care." But I would give him

Page 99

that opportunity.

Q. And the alleged behavior we're talking about -- that's what I'm trying to get to -- what it is that you're basing that opinion on?

A. The -- The medical report from the jail psychiatrist and jail medical staff.

Q. Well, you're not a doctor, though, are you?

A. No, sir.

Q. So that opinion really would be better for a doctor. Wouldn't you agree with that?

A. Possibly. I mean, I know what a psychosis is, I mean, but, yeah, you're correct.

Q. But you're not really qualified to say whether or not someone is mentally prepared enough to speak to somebody from the media, are you?

A. No, sir.

Q. And you really can't -- If you had to give -- I heard you say possibly he was under the influence of wet when he was booked in to jail, and I kinda get that as sort of an overarching opinion you're going to give.

If you had to give -- Possibly is a huge, huge word. I'm not quite sure -- If you were to say 10, that you were certain he was under the influence when he was booked into the Dallas County jail, and 1 would be you were uncertain, where would your certainty fit on

Page 100

this possible scale?

A. I would say it was a bit more towards the 1.

Q. Okay. Very good.

A. Just based upon what I -- the length of time that was -- the smoking had occurred.

Q. So you're aware that he had -- at the time he was booked into the Dallas County jail, he had been in Garland for some time -- in the Garland jail for some time.

A. I thought they -- I didn't know he was in the Garland jail. I thought they took him straight from the interview room to here.

Q. No. He was arrested on the 19th, but he wasn't booked into the Dallas County jail until the 21st.

Were you aware of that?

A. No, sir.

Q. Would that affect any of your opinions on whether he was still under the influence? I mean, you've already said your opinion was a 1, which would be on the low end of the scale. Would that change your opinion lower than that?

A. In two days -- If two days had elapsed with no smoking, I would say that the opinion would be a 1. I mean, he still may have metabolized the drug in his system, but I don't believe it's going to be psychoactive

Page 101

at that time.

MR. ALEX: That's all I have, Judge.

REDIRECT EXAMINATION

BY MR. LOLLAR:

Q. Dr. Platt, I want to ask you about one other thing. You had mentioned to me that in viewing the -- one of the television interviews when James says that at the time of the shooting that all he could see was colors, that that has a particular name that is important in your community, and what is that?

A. Well, basically, when you deal with a -- with a drug such as PCP. PCP is a unique-type drug in that it has different types of factors that goes along with it. You can have central nervous system depressant-type factors, you can have stimulant-type factors and behavior, you can have hallucogenic-type factors or behaviors.

People have been known to develop a process that's called synesthesia. Basically what that is, is the transposing of the senses. I guess a good example would be you -- instead of seeing colors, you actually hear colors or you see sounds, things of that nature. It's prevalent with hallucogenic-type drugs. With PCP it's very possible it could have happened, because PCP can give you so many different types of

Page 102

properties, depending on the dosage load.

Q. Is that something that you're aware happens with people who take PCP?

A. I've dealt with people that have been under the influence of PCP, and based upon what they said, yes.

Q. So that would be consistent with a person who is under the influence of PCP?

A. It's a possibility, yes.

Q. Thank you, Dr. Platt.

RECROSS EXAMINATION

BY MR. ALEX:

Q. And, I guess -- So this is another opinion that you plan on testifying to in front of the jury that at the time of the offense, the defendant was under the influence of PCP? Is that one of your opinions?

A. I can't be sure about that, sir.

Q. All right. So you don't plan on giving that opinion to the jury; is that correct?

A. I know that he said he -- he said he smoked within a certain amount of time. Based on the amount of time, it's possible he could have been under the influence. But do I know one hundred percent for certain -- and I want to be absolutely clear on that -- No, I don't know one hundred percent for certain.

Q. Dr. Platt, I'm not trying to be argumentative,

Page 103

but I just -- I'm just trying to figure out what you're going to tell the jury when you're up here and the jury is in the box.

A. Sure.

Q. Are you planning on giving an opinion about the state of mind of the defendant at the time of the offense? Is that part of your opinion?

A. Based upon what I read, my opinion at the time of the offense is that he very well could have been under the influence of wet.

Q. Very well could have been?

A. Yes, sir.

Q. Okay. That's kind of like that word "possibly," right?

A. Yeah.

Q. Again, I'm going to ask you for a -- on a 1 to 10 -- And I'm not -- I'm not calling you as a witness, the Defense is, so I'm not asking you if you have formed an opinion today. All I'm asking you is if you intend to give that opinion to the jury.

Do you --

A. I understand.

Q. -- know that off the top of your head? Have y'all talked about that? I just heard him ask you questions about it, so I'm assuming that's part of what

Page 104

your opinion is going to be to the jury. Am I right about that?

A. Based on what I testified to today, yes. That was my understanding of what this hearing was about.

Q. Very good. So on a scale of 1 to 10, your opinion as to whether he was under the influence at the time of the offense -- the PCP -- what would that be?

A. I would say it would be an 8 to 10.

Q. I'm sorry?

A. 8 to 10.

Q. Tell me what the basis of that is?

A. The basis of that is an admission, that the drug was taken -- smoked -- and some of the indicators that he had said that he experienced.

Q. The admission and --

A. Indicators.

Q. What are the indicators you relied on?

A. I said that he had experienced synesthesia, seen flashes of light which could be consistent with that type of drug.

Q. Is that it?

A. Yes, sir.

Q. Did you ever interview the defendant?

A. No, sir.

Q. And any articles in particular that you relied

Page 105

on in forming this opinion?

A. I looked at some literature from the National Highway Traffic Safety Administration and the Office of National Drug Control Policy articles, also.

Q. Those have to do specifically with -- Can you give me the names of -- You don't have to give them to me right now, but can you give them to me before we -- before you leave today?

A. I looked at -- I looked into the -- which I'm familiar with the drug recognition expert manual. There's a section in there on PCP. They talk a little bit about the mixing of the drug with the cannabis. I looked at -- I don't remember the exact article, but it was in the ONDCP website. They basically -- they talked about the duration of affects of the drug, you know, what a person could expect to see, what you might not see, things of that nature.

Q. You think you can get me the name of that article?

A. Sure. Yeah, I could. Absolutely.

Q. And you wouldn't mind if I called you and got it from you?

A. Whatever you want to do is fine with me.

Q. Any other articles in particular?

A. Not that I -- that I can think of, no. I

Page 106

did -- I did put in my report of an experience that I had as a police officer of someone who was under the influence.

Q. And did you -- Have you ever done any research of your own on PCP or --

A. I've seen people under the influence and confirmed it with a -- with a test, but I've never given anybody PCP, no. Lord, no. I --

Q. No, I wasn't insinuating that. But you've never been involved with any studies yourself?

A. No.

MR. ALEX: That's all I have, Judge.

MR. LOLLAR: That's all we have.

THE COURT: May the witness be excused for purposes of this hearing?

MR. LOLLAR: Yes, sir.

MR. ALEX: Yes, Judge.

THE COURT: You may step down, sir. Thank you for driving up.

What further says the Defense?

MR. LOLLAR: That's all, Judge. Thank you.

THE COURT: Do you have anything?

MR. ALEX: Yeah, Judge. Our only objection would probably, again, be in the

Page 107

guilt/innocence phase of the trial for the same reason we objected to the doctor who was going to testify about voluntary intoxication in the guilt/innocent phase. This would be the same type of witness.

I would imagine the DRE and doctor would go hand-in-hand in guilt/innocence to try and get a lesser included based upon voluntary intoxication. I think we're --

THE COURT: What about this -- Is that all, your only objection to him?

MR. ALEX: I'm sorry?

THE COURT: Is that your only objection to him?

MR. ALEX: Well, no. Actually, I may want to call him myself, Judge. I don't -- I don't believe he testified that he could say under any certainty that the guy was under the influence at the time he checked into the jail. I'm certainly not going to object to that.

THE COURT: The problem I'm having, Mr. Lollar, is I don't see how this is reliable and relevant testimony.

MR. LOLLAR: Well, he's an expert in drug recognition. He has reviewed the records --

THE COURT: But he said he really didn't

SHARINA FOWLER, CSR  214-653-5696

Page 104 - Page 107

**Page 108**

know from what I could hear him say.

MR. LOLLAR: I'm sorry?

THE COURT: I thought he said he didn't really know in this particular case.

MR. LOLLAR: Well, he says he's an 8 to 10 on a scale of 1 to 10, if the defendant was under the influence based on what he saw in the medical records and based on what he heard the defendant say in the interviews.

THE COURT: Have you got any reported case law where this kind of testimony came in? Because I just --

MR. LOLLAR: On drug recognition?

THE COURT: -- went through about 40 cases and I didn't see one.

MR. LOLLAR: I'll get some for the Court.

THE COURT: Okay. Because I'm concerned about the reliability of this and the possibility of it confusing the jury, even if it is reliable.

MR. LOLLAR: Okay.

MR. ALEX: And in particular, when we talk about DRE, usually there's some kind of interview done with a particular defendant --

THE COURT: That's what I'm talking about.

MR. LOLLAR: I don't know that I'd agree

**Page 109**

with that. Most --

THE COURT: Well, I --

MR. LOLLAR: -- of the time, they're called upon to look at videotapes.

THE COURT: Just see if you can get me something. I just went through about 50 cases in my annotations here and I don't see it.

MR. LOLLAR: Okay.

MR. ALEX: I didn't either.

THE COURT: I'm going to defer a ruling on this for now.

What else do we have?

MR. LOLLAR: We have a couple of juror issues that we need to discuss off the record.

THE COURT: Okay. Off the record.

[Whereupon, this days proceedings were concluded. To be continued in the next numbered volume.]

**Page 110**

| THE STATE OF TEXAS | X |
| COUNTY OF DALLAS | X |

**Page 4**

I, Sharina Fowler, Deputy Official Court County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND, this the _____ day of March, 2010.

Sharina A. Fowler, Texas CSR #6132
Expiration Date: 12/31/11
Deputy Official Court Reporter
Criminal District Court No. 7
Dallas County, Texas
Crowley Courts Building
Dallas, Texas
214-653-5690

BROADNAX, JAMES 7/27/09

**-#-**

## [1]    4:2
#6132 [1]        4:20

**-$-**

$100 [1] 27:2

**-1-**

1 [124]    3:1    4:1
4:8    4:1    5:1
6:1    7:1    8:1
9:1    10:1    11:1
12:1    13:1    14:1
15:1    16:1    17:1
18:1    19:1    20:1
21:1    22:1    23:1
24:1    25:1    26:1
27:1    28:1    29:1
30:1    31:1    32:1
33:1    34:1    35:1
35:3    35:5    35:9
35:24    36:1    36:4
37:1    38:1    39:1
40:1    41:1    42:1
43:1    44:1    45:1
46:1    47:1    48:1
49:1    49:13    50:1
51:1    52:1    53:1
54:1    55:1    56:1
57:1    58:1    59:1
60:1    61:1    62:1
63:1    64:1    65:1
66:1    66:10    67:1
68:1    69:1    70:1
71:1    72:1    73:1
74:1    75:1    76:1
77:1    78:1    79:1
80:1    81:1    82:1
83:1    84:1    85:1
86:1    87:1    88:1
89:1    90:1    91:1
92:1    93:1    94:1
95:1    96:1    97:1
98:1    99:1    99:24
100:1    100:2    100:19
100:23    101:1    102:1
103:1    103:16    104:1
104:5    105:1    106:1
107:1    108:1    108:6
109:1    110:1

10 [124]    1:10    3:10
4:10    4:22    4:10
5:10    6:10    7:10
8:10    9:10    10:10
11:10    12:10    13:10
14:10    15:10    16:10
17:10    18:10    19:10
20:10    21:10    22:10
23:10    24:10    25:10
26:10    27:10    28:10
29:10    30:10    31:10
32:10    33:10    34:10
35:10    36:10    37:10
38:10    39:10    40:10
41:10    42:10    43:10
44:10    45:10    46:10
47:10    48:10    49:10
50:10    51:10    52:10
53:10    54:10    55:10

56:10    57:10    58:10
59:10    60:10    61:10
62:10    63:10    64:10
65:10    66:10    67:10
68:10    69:10    70:10
71:10    72:10    73:10
74:10    75:10    76:10
77:10    78:10    79:10
80:10    81:10    82:10
83:10    84:10    85:10
86:10    87:10    88:10
89:10    90:10    91:10
91:14    91:17    91:20
91:24    92:2    92:4
92:10    93:10    94:10
95:10    96:10    97:10
98:10    99:10    99:22
100:10    101:10    102:10
103:10    103:17    104:5
104:8    104:10    104:10
105:10    106:10    107:10
108:5    108:6    108:10
109:10    4:11

10/30/88 [1]        39:11
101 [1]    3:14
102 [1]    3:14
10:12 [1]        64:12
10:20 [1]        64:13
10:52 [1]        90:19
11 [116]    1:11    3:11
4:11    4:11    5:11
6:11    7:11    8:11
9:11    9:13    10:11
11:11    12:11    13:11
14:11    15:11    16:11
17:11    18:11    18:13
18:22    19:11    20:11
20:14    20:23    21:11
22:11    23:11    24:11
25:11    26:11    27:11
28:11    29:5    29:11
30:11    31:11    32:11
33:11    34:11    35:11
36:11    37:11    38:11
39:11    40:11    41:11
42:11    43:11    44:11
45:11    46:11    47:11
48:11    49:11    50:11
51:11    52:11    53:11
54:11    55:11    56:11
57:11    58:11    59:11
60:11    61:11    62:11
63:11    64:11    65:11
66:11    67:11    68:11
69:11    70:11    71:11
72:11    73:11    74:11
75:11    76:11    77:11
78:11    79:11    80:11
81:11    82:11    83:11
84:11    85:11    86:11
87:11    88:11    89:11
90:11    91:11    92:11
93:11    94:11    95:11
96:11    97:11    98:11
99:11    100:11    101:11
102:11    103:11    104:11
105:11    106:11    107:11
108:11    109:11    4:9
110 [1]    3:15
1114 [1] 4:13

12 [113]    1:12    3:12
4:5    4:5    4:12
4:12    5:12    6:12
7:12    8:12    9:12
10:12    11:12    12:12
13:12    14:12    15:12
16:12    17:12    18:12
19:12    20:12    21:12
22:12    23:12    24:12
25:12    26:12    27:12
28:12    29:12    30:12
31:12    32:12    33:12
34:12    35:12    36:12
37:12    38:12    39:12
40:12    41:12    42:12
43:12    44:12    45:12
46:12    47:12    48:12
49:12    50:12    51:12
52:12    53:12    54:12
55:12    56:12    57:12
58:12    59:12    60:12
61:12    62:12    63:12
64:12    65:12    66:12
67:12    68:12    69:12
70:12    71:12    72:12
73:12    74:12    75:12
76:12    77:12    78:12
79:12    80:12    81:12
82:12    83:12    84:12
85:12    86:12    87:12
88:12    89:12    90:12
91:12    92:12    93:12
94:12    95:12    96:12
97:12    98:12    99:12
100:12    101:12    102:12
103:12    104:12    105:12
106:12    107:12    108:12
109:12    4:10    4:14
12/31/11 [1]        4:21
12508700 [1]        2:13
12:00 [2]        18:6
18:8
12:21:49 [1]        15:20
12th [3]    34:3    34:5
34:6
13 [112]    1:13    3:13
4:13    4:13    5:13
6:13    7:13    8:13
9:13    10:13    11:13
12:13    13:13    14:13
15:13    16:13    17:13
18:13    19:13    20:13
21:13    22:13    23:13
24:13    25:13    26:13
27:13    28:13    29:13
30:13    31:13    32:13
33:13    34:13    35:13
36:13    37:13    38:13
39:13    40:13    41:13
42:13    43:13    44:13
45:13    46:13    47:13
48:13    49:13    50:13
51:13    52:13    53:13
54:13    55:13    56:13
57:13    58:13    59:13
60:4    60:13    61:13
62:13    63:13    64:13
65:13    66:13    67:13
68:13    69:13    70:13
71:13    72:13    73:13
74:13    75:13    76:13

77:13    78:13    79:13
80:13    81:13    82:13
83:13    84:13    85:1
85:13    86:13    87:13
88:13    89:13    90:13
91:13    92:13    93:13
94:13    95:13    96:13
97:13    98:13    99:13
100:13    101:13    102:13
103:13    104:13    105:13
106:13    107:13    108:13
109:13    4:12
131 [1]    2:18
1316 [1] 4:16
133 [1]    2:5
13th [1] 89:9
14 [109]    3:14    4:14
4:14    5:14    6:14
7:14    8:14    9:14
10:14    11:14    12:14
13:14    14:14    15:14
16:14    17:14    18:14
19:14    20:14    21:14
22:14    23:14    24:14
25:14    26:14    27:14
28:14    29:14    30:14
31:14    32:14    33:14
34:14    35:14    36:14
37:14    38:14    39:14
40:14    41:14    42:14
43:14    44:14    45:14
46:14    47:14    48:14
49:14    50:14    51:14
52:14    53:14    54:14
55:14    56:14    57:14
58:14    59:14    60:14
61:14    62:14    63:14
64:14    65:14    66:14
67:14    68:14    69:14
70:14    71:14    72:14
73:14    74:14    75:14
76:14    77:14    78:14
79:14    80:14    81:14
82:14    83:14    84:14
85:14    86:14    87:14
88:14    89:14    90:14
91:14    92:14    93:14
94:14    95:14    96:14
97:14    98:14    99:14
100:14    101:14    102:14
103:14    104:14    105:14
106:14    107:14    108:14
109:14    4:17
15 [112]    3:15    4:15
4:15    5:15    6:15
7:15    8:15    9:15
10:15    11:15    12:15
13:15    14:15    15:15
16:15    17:15    18:15
19:15    20:15    21:15
22:15    23:15    24:15
25:5    25:10    25:15
26:15    27:15    28:15
29:15    30:15    31:15
32:15    33:15    34:15
35:15    36:15    37:15
38:15    39:15    40:15
41:15    42:15    43:15
44:15    45:15    46:15
47:15    48:15    49:15
50:15    51:15    52:15

53:15    54:15    55:15
56:15    57:15    58:15
59:15    60:15    61:15
62:15    63:15    64:15
65:15    66:15    67:15
68:15    69:15    70:15
71:15    72:15    73:15
74:15    75:15    76:15
77:15    78:15    79:15
80:15    81:15    82:15
83:15    84:15    85:15
86:15    87:15    88:15
89:15    90:15    91:15
92:15    93:15    94:15
95:15    96:15    97:15
98:15    99:15    100:15
101:15    102:15    103:15
104:15    105:15    106:15
107:15    108:15    109:15
4:15    4:18
15520000 [1]        2:10
16 [124]    2:16    3:16
4:5    4:16    4:16
5:16    6:16    7:16
8:16    9:16    10:16
11:16    12:1    12:3
12:15    12:16    12:16
12:22    13:2    13:16
13:19    14:16    15:11
15:16    16:16    17:16
18:16    18:20    19:2
19:16    20:12    20:16
21:16    22:16    23:16
24:16    25:16    26:16
27:16    28:16    29:16
30:16    31:6    31:16
32:16    33:16    34:16
35:16    36:16    37:16
38:16    39:16    40:16
41:16    42:16    43:16
44:16    45:16    46:16
47:16    48:16    49:16
50:16    51:16    52:16
53:16    54:16    55:16
56:16    57:16    58:16
59:16    60:16    61:16
62:16    63:16    64:16
65:16    66:16    67:16
68:16    69:16    70:16
71:16    72:16    73:16
74:16    74:17    75:16
76:16    77:16    78:16
79:16    80:16    81:16
82:16    83:16    84:16
85:16    86:16    87:16
88:16    89:16    90:16
91:16    92:16    93:16
94:16    95:16    96:16
97:16    98:16    99:16
100:16    101:16    102:16
103:16    104:16    105:16
106:16    107:16    108:16
109:16    4:20
17 [111]    3:17    4:17
4:17    5:17    6:17
7:17    8:17    9:17
10:17    11:17    12:17
13:17    14:17    15:17
16:17    17:17    18:17
19:17    20:17    21:17
22:17    23:17    24:17
25:17    26:17    27:17

Case 3:15-cv-01758-N   Document 41-15   Filed 06/29/16   Page 33 of 45   PageID 9793

| | | |
|---|---|---|
| 28:17 | 29:17 | 30:17 |
| 31:17 | 32:17 | 33:17 |
| 34:17 | 35:17 | 36:17 |
| 37:17 | 38:17 | 39:17 |
| 40:17 | 41:17 | 42:17 |
| 43:17 | 44:17 | 45:17 |
| 46:17 | 47:17 | 48:17 |
| 49:17 | 50:17 | 51:17 |
| 52:17 | 53:17 | 54:17 |
| 55:17 | 56:17 | 57:17 |
| 58:17 | 59:17 | 60:17 |
| 61:17 | 62:17 | 63:17 |
| 64:17 | 64:17 | 65:17 |
| 66:17 | 67:17 | 68:17 |
| 69:17 | 70:17 | 71:17 |
| 72:17 | 73:17 | 74:17 |
| 75:17 | 76:17 | 77:17 |
| 78:17 | 79:17 | 80:17 |
| 81:17 | 82:17 | 83:17 |
| 84:17 | 85:17 | 86:17 |
| 87:17 | 88:17 | 89:17 |
| 90:17 | 91:17 | 92:17 |
| 93:17 | 94:17 | 95:17 |
| 96:17 | 97:17 | 98:17 |
| 99:17 | 100:17 | 101:17 |
| 102:17 | 103:17 | 104:17 |
| 105:17 | 106:17 | 107:17 |
| 108:17 | 109:17 | 4:19 |
| 4:22 | | |

**1700** [1] 2:14

**18** [110] 3:18  4:18

| | | |
|---|---|---|
| 4:18 | 5:18 | 6:18 |
| 7:18 | 8:18 | 9:18 |
| 10:18 | 11:18 | 12:18 |
| 13:18 | 14:18 | 15:18 |
| 16:18 | 17:18 | 18:18 |
| 19:18 | 20:18 | 21:18 |
| 22:18 | 23:18 | 24:18 |
| 25:18 | 26:18 | 27:18 |
| 28:18 | 29:18 | 30:18 |
| 31:18 | 32:18 | 33:18 |
| 34:18 | 35:18 | 36:18 |
| 37:18 | 38:18 | 39:18 |
| 40:18 | 41:18 | 42:18 |
| 43:18 | 44:18 | 45:18 |
| 46:18 | 47:18 | 48:18 |
| 49:18 | 50:18 | 51:18 |
| 52:18 | 53:18 | 54:18 |
| 55:18 | 56:18 | 57:18 |
| 58:18 | 59:18 | 60:18 |
| 61:18 | 62:18 | 63:18 |
| 64:18 | 65:18 | 66:18 |
| 67:18 | 68:18 | 69:18 |
| 70:18 | 71:18 | 72:18 |
| 73:18 | 74:18 | 75:18 |
| 76:18 | 77:18 | 78:18 |
| 79:18 | 80:18 | 81:18 |
| 82:18 | 83:18 | 84:18 |
| 85:18 | 86:18 | 87:18 |
| 88:18 | 89:18 | 90:18 |
| 91:18 | 92:18 | 93:18 |
| 94:18 | 95:18 | 96:18 |
| 97:18 | 98:18 | 99:18 |
| 100:18 | 101:18 | 102:18 |
| 103:18 | 104:18 | 105:18 |
| 106:18 | 107:18 | 108:18 |
| 109:18 | 4:20 | 4:24 |

**19** [109] 3:19  4:19

| | | |
|---|---|---|
| 4:19 | 5:19 | 6:19 |
| 7:19 | 8:19 | 9:19 |
| 10:19 | 11:19 | 12:19 |
| 13:19 | 14:19 | 15:19 |
| 16:19 | 17:19 | 18:19 |
| 19:19 | 20:19 | 21:19 |
| 22:19 | 23:19 | 24:19 |
| 25:19 | 26:19 | 27:19 |
| 28:19 | 29:19 | 30:19 |
| 31:19 | 32:19 | 33:19 |
| 34:19 | 35:19 | 36:19 |
| 37:19 | 38:19 | 39:19 |
| 40:19 | 41:19 | 42:19 |
| 43:19 | 44:19 | 45:19 |
| 46:19 | 47:19 | 48:19 |
| 49:19 | 50:19 | 51:19 |
| 52:19 | 53:19 | 54:19 |
| 55:19 | 56:19 | 57:19 |
| 58:19 | 59:19 | 60:19 |
| 61:19 | 62:19 | 63:19 |
| 64:19 | 65:19 | 66:19 |
| 67:19 | 68:19 | 69:19 |
| 70:19 | 71:19 | 72:19 |
| 73:19 | 74:19 | 75:19 |
| 76:19 | 77:19 | 78:19 |
| 79:19 | 80:19 | 81:19 |
| 82:19 | 83:19 | 84:19 |
| 85:19 | 86:19 | 87:19 |
| 88:19 | 89:19 | 90:19 |
| 91:19 | 92:19 | 93:19 |
| 94:19 | 95:19 | 96:19 |
| 97:19 | 98:19 | 99:19 |
| 100:19 | 101:19 | 102:19 |
| 103:19 | 104:19 | 105:19 |
| 106:19 | 107:19 | 108:19 |
| 4:21 | 4:26 | |

**1999** [1] 92:14

**19th** [1] 100:13

**1:00** [3] 67:9   67:12
90:2

---

-2-

---

**2** [118] 3:2  3:4

| | | |
|---|---|---|
| 4:2 | 4:9 | 4:2 |
| 5:2 | 6:2 | 7:2 |
| 8:2 | 9:2 | 10:2 |
| 11:2 | 12:2 | 13:2 |
| 14:2 | 15:2 | 16:2 |
| 17:2 | 18:2 | 19:2 |
| 20:2 | 21:2 | 22:2 |
| 23:2 | 24:2 | 25:2 |
| 26:2 | 27:2 | 28:2 |
| 29:2 | 30:2 | 31:2 |
| 32:2 | 33:2 | 34:2 |
| 35:2 | 35:17 | 35:20 |
| 35:25 | 36:2 | 36:4 |
| 37:2 | 37:9 | 38:2 |
| 39:2 | 39:24 | 40:2 |
| 41:2 | 42:2 | 43:2 |
| 44:2 | 45:2 | 46:2 |
| 47:2 | 48:2 | 49:2 |
| 50:2 | 51:2 | 52:2 |
| 53:2 | 54:2 | 55:2 |
| 56:2 | 57:2 | 58:2 |
| 59:2 | 60:2 | 61:2 |
| 62:2 | 63:2 | 64:2 |
| 65:2 | 66:2 | 66:10 |
| 67:2 | 68:2 | 69:2 |
| 70:2 | 71:2 | 72:2 |
| 73:2 | 74:2 | 75:2 |
| 76:2 | 77:2 | 78:2 |
| 79:2 | 80:2 | 81:2 |
| 82:2 | 83:2 | 84:2 |
| 85:2 | 86:2 | 87:2 |
| 88:2 | 89:2 | 90:2 |
| 91:2 | 92:2 | 93:2 |
| 94:2 | 95:2 | 96:2 |
| 97:2 | 98:2 | 99:2 |
| 100:2 | 101:2 | 102:2 |
| 103:2 | 104:2 | 105:2 |
| 106:2 | 107:2 | 108:2 |
| 109:2 | 110:2 | |

**20** [112] 2:20  3:20

| | | |
|---|---|---|
| 4:20 | 4:20 | 5:20 |
| 6:20 | 7:20 | 8:20 |
| 9:20 | 10:20 | 11:20 |
| 12:20 | 13:20 | 14:20 |
| 15:20 | 16:20 | 17:20 |
| 18:20 | 19:20 | 20:20 |
| 21:20 | 22:20 | 23:20 |
| 24:20 | 25:20 | 26:20 |
| 27:20 | 28:20 | 29:20 |
| 30:20 | 31:13 | 31:20 |
| 32:20 | 33:20 | 34:20 |
| 35:20 | 36:20 | 37:20 |
| 38:20 | 39:20 | 40:20 |
| 41:20 | 42:20 | 43:20 |
| 44:20 | 45:20 | 46:20 |
| 47:20 | 48:9 | 48:20 |
| 49:20 | 50:20 | 51:20 |
| 52:20 | 53:20 | 54:20 |
| 55:20 | 56:20 | 57:20 |
| 58:20 | 59:20 | 60:20 |
| 61:20 | 62:20 | 63:20 |
| 64:20 | 65:20 | 66:20 |
| 67:20 | 68:20 | 69:20 |
| 70:20 | 71:20 | 72:20 |
| 73:20 | 74:20 | 75:20 |
| 76:20 | 77:20 | 78:20 |
| 79:20 | 80:20 | 81:20 |
| 82:20 | 83:20 | 84:20 |
| 85:20 | 86:20 | 87:20 |
| 88:20 | 89:20 | 90:20 |
| 91:20 | 92:20 | 93:20 |
| 94:20 | 95:20 | 96:20 |
| 97:20 | 98:20 | 99:20 |
| 100:20 | 101:20 | 102:20 |
| 103:20 | 104:20 | 105:20 |
| 106:20 | 107:20 | 108:20 |
| 4:22 | 4:28 | |

**2002** [1] 84:18

**2003** [2] 84:18   84:18

**2004** [1] 93:2

**2006** [1] 84:21

**2008** [12]                    17:25

| | | |
|---|---|---|
| 31:13 | 32:6 | 32:7 |
| 39:4 | 48:9 | 49:8 |
| 52:25 | 66:2 | 67:8 |
| 73:20 | 93:20 | |

**2009** [8] 1:14  3:3

| | | |
|---|---|---|
| 17:22 | 31:23 | 32:5 |
| 60:5 | 73:22 | 85:1 |

**2010** [1] 4:16

**20th** [5] 21:6  21:10

| | | |
|---|---|---|
| 21:13 | 21:16 | 37:19 |

**21** [112] 1:21  2:21

| | | |
|---|---|---|
| 3:21 | 4:21 | 4:21 |
| 5:21 | 6:21 | 7:21 |
| 8:21 | 9:21 | 10:21 |
| 11:21 | 12:21 | 13:21 |
| 14:21 | 15:21 | 16:21 |
| 17:21 | 18:21 | 19:21 |
| 20:21 | 21:21 | 22:21 |
| 23:21 | 24:21 | 25:21 |
| 26:21 | 27:21 | 28:21 |
| 29:21 | 30:21 | 31:21 |
| 32:21 | 33:21 | 34:21 |
| 35:21 | 36:21 | 37:21 |
| 38:21 | 39:21 | 40:21 |
| 41:21 | 42:21 | 43:21 |
| 44:21 | 45:21 | 46:21 |
| 47:21 | 48:21 | 49:8 |
| 49:21 | 50:21 | 51:21 |
| 52:21 | 53:21 | 54:21 |
| 55:21 | 56:21 | 57:21 |
| 58:21 | 59:21 | 60:21 |
| 61:21 | 62:21 | 63:21 |
| 64:21 | 65:21 | 66:21 |
| 67:21 | 68:21 | 69:21 |
| 70:21 | 71:21 | 72:21 |
| 73:21 | 74:21 | 75:21 |
| 76:21 | 77:21 | 78:21 |
| 79:21 | 80:21 | 81:21 |
| 82:21 | 83:21 | 84:21 |
| 85:21 | 86:21 | 87:21 |
| 88:21 | 89:21 | 90:21 |
| 91:21 | 92:21 | 93:21 |
| 94:21 | 95:21 | 96:21 |
| 97:21 | 98:21 | 99:21 |
| 100:21 | 101:21 | 102:21 |
| 103:21 | 104:21 | 105:21 |
| 106:21 | 107:21 | 108:21 |
| 4:23 | 4:29 | |

**214-384-8178** [1]
2:15

**214-653-3600** [2]
2:6   2:19

**214-653-5696** [1]
4:27

**21st** [5] 48:9  48:11

| | | |
|---|---|---|
| 50:7 | 56:8 | 100:14 |

**22** [111] 1:22  2:22

| | | |
|---|---|---|
| 3:22 | 4:22 | 4:22 |
| 5:22 | 6:22 | 7:22 |
| 8:22 | 9:22 | 10:22 |
| 11:22 | 12:22 | 13:22 |
| 14:22 | 15:22 | 16:22 |
| 17:22 | 18:22 | 19:22 |
| 20:22 | 21:22 | 22:22 |
| 23:22 | 24:22 | 25:22 |
| 26:22 | 27:22 | 28:22 |
| 29:22 | 30:22 | 31:22 |
| 32:22 | 33:22 | 34:22 |
| 35:22 | 36:22 | 37:22 |
| 38:22 | 39:22 | 40:22 |
| 41:22 | 42:22 | 43:22 |
| 44:22 | 45:22 | 46:22 |
| 47:22 | 48:22 | 49:22 |
| 50:22 | 51:22 | 52:22 |
| 53:22 | 54:22 | 55:22 |
| 56:22 | 57:22 | 58:22 |
| 59:22 | 60:22 | 61:22 |
| 62:22 | 63:22 | 64:22 |
| 65:22 | 66:22 | 67:22 |
| 68:22 | 69:22 | 70:22 |
| 71:22 | 72:22 | 73:22 |
| 74:22 | 75:22 | 76:22 |
| 77:22 | 78:22 | 79:22 |
| 80:22 | 81:22 | 82:22 |
| 83:22 | 84:22 | 85:22 |
| 86:22 | 87:22 | 88:22 |
| 89:22 | 90:22 | 91:22 |
| 92:22 | 93:22 | 94:22 |
| 95:22 | 96:22 | 97:22 |
| 98:22 | 99:22 | 100:22 |
| 101:22 | 102:22 | 103:22 |
| 104:22 | 105:22 | 106:22 |
| 107:22 | 108:22 | 4:24 |
| 4:30 | | |

**23** [116] 1:23  2:23

| | | |
|---|---|---|
| 3:23 | 4:23 | 5:23 |
| 6:23 | 7:23 | 8:23 |
| 9:23 | 10:23 | 11:23 |
| 12:23 | 13:23 | 14:23 |
| 15:23 | 16:23 | 17:23 |
| 18:23 | 19:23 | 20:23 |
| 21:23 | 22:23 | 23:23 |
| 24:23 | 25:23 | 26:23 |
| 27:23 | 28:23 | 29:23 |
| 30:23 | 31:23 | 31:23 |
| 32:23 | 33:23 | 34:23 |
| 35:23 | 36:23 | 37:23 |
| 38:23 | 39:4 | 39:23 |
| 40:23 | 41:23 | 42:23 |
| 43:23 | 44:23 | 45:23 |
| 46:23 | 47:23 | 48:23 |
| 49:23 | 50:23 | 51:23 |
| 52:23 | 52:25 | 53:23 |
| 54:23 | 55:23 | 56:23 |
| 57:23 | 58:23 | 59:23 |
| 60:23 | 61:23 | 62:23 |
| 63:23 | 64:23 | 65:23 |
| 66:2 | 66:23 | 67:8 |
| 67:23 | 68:23 | 69:23 |
| 70:23 | 71:23 | 72:23 |
| 73:23 | 74:23 | 75:23 |
| 76:23 | 77:23 | 78:23 |
| 79:23 | 80:23 | 81:23 |
| 82:23 | 83:23 | 84:23 |
| 85:23 | 86:23 | 87:23 |
| 88:23 | 89:23 | 90:23 |
| 91:23 | 92:23 | 93:20 |
| 93:23 | 94:23 | 95:23 |
| 96:23 | 97:23 | 98:23 |
| 99:23 | 100:23 | 101:23 |
| 102:23 | 103:23 | 104:23 |
| 105:23 | 106:23 | 107:23 |
| 108:23 | 4:25 | 4:31 |

**23rd** [11]                    32:2

| | | |
|---|---|---|
| 32:6 | 37:17 | 43:9 |
| 44:4 | 44:6 | 44:21 |
| 45:8 | 47:21 | 73:20 |
| 95:11 | | |

**24** [110] 1:24  2:24

| | | |
|---|---|---|
| 3:24 | 4:24 | 5:24 |
| 6:24 | 7:24 | 8:24 |
| 9:24 | 10:24 | 11:24 |
| 12:24 | 13:24 | 14:24 |
| 15:24 | 16:24 | 17:24 |
| 18:24 | 19:24 | 20:24 |
| 21:24 | 22:24 | 23:24 |
| 24:24 | 25:24 | 26:24 |
| 27:24 | 28:24 | 29:24 |
| 30:24 | 31:24 | 32:24 |
| 33:24 | 34:24 | 35:24 |
| 36:24 | 37:24 | 38:24 |
| 39:24 | 40:24 | 41:24 |
| 42:24 | 43:24 | 44:24 |
| 45:24 | 46:24 | 47:24 |
| 48:24 | 49:24 | 50:24 |
| 51:24 | 52:24 | 53:24 |
| 54:24 | 55:24 | 56:24 |
| 57:24 | 58:24 | 59:24 |
| 60:24 | 61:24 | 62:24 |
| 63:24 | 64:24 | 65:24 |
| 66:24 | 67:24 | 68:24 |
| 69:24 | 70:24 | 71:24 |
| 72:24 | 73:24 | 74:24 |
| 75:24 | 76:24 | 77:24 |

```
78:24    79:24    80:24
81:24    82:24    83:24
84:24    85:24    86:24
87:24    88:24    89:24
90:24    91:24    92:24
93:24    94:24    95:24
96:24    97:24    98:24
99:24    100:24   101:24
102:24   103:24   104:24
105:24   106:24   107:24
108:24   4:26     4:32
24049165 [1]      2:17
24th [5]  16:19   16:25
18:6      18:8    49:24
25 [113]  1:25    2:25
3:25      4:25    5:25
6:25      7:25    8:25
9:10      9:25    10:25
11:25     12:25   13:25
14:25     15:25   16:25
17:25     17:25   18:25
19:25     20:25   21:25
22:25     23:25   24:25
25:25     26:25   27:25
28:25     29:25   30:25
31:25     32:25   33:25
34:19     34:25   35:25
36:25     37:25   38:25
39:25     40:25   41:25
42:25     43:25   44:25
45:25     46:25   47:25
48:25     49:25   50:25
51:25     52:25   53:25
54:25     55:25   56:25
57:25     58:25   59:25
60:25     61:25   62:25
63:25     64:25   65:25
66:25     67:25   68:25
69:25     70:25   71:25
72:25     73:25   74:25
75:25     76:25   77:25
78:25     79:25   80:25
81:25     82:25   83:25
84:25     85:25   86:25
87:25     88:25   89:25
90:25     91:25   92:25
93:25     94:25   95:25
96:25     97:25   98:25
99:25     100:25  101:25
102:25    103:25  104:25
105:25    106:25  107:25
108:25    4:27    4:33
25th [2]  18:3    83:5
27 [2]    3:3     73:22
27TH [1]          1:14
283rd [1]         84:24
29th [2]  90:10   90:12
2:00 [4]  78:9    79:4
90:3      90:18
2:19 [1]  90:20
2:20 [2]  78:7    78:8
2:42 [1]  39:1
```

-3-

```
3 [116]   3:3     4:3
4:11      4:3     5:3
6:3       7:3     8:3
9:3       10:3    11:3
12:3      13:3    14:3
15:3      16:3    17:3
18:3      19:3    20:3
21:3      22:3    23:3
24:3      25:3    26:3
27:3      28:3    29:3
30:3      31:3    32:3
33:3      34:3    35:3
36:3      37:3    38:3
38:16     38:19   39:3
39:13     39:17   39:19
40:3      41:3    42:3
43:3      44:3    45:3
46:3      46:22   47:3
48:3      49:3    50:3
51:3      52:3    53:3
54:3      55:3    56:3
57:3      58:3    59:3
60:3      61:3    62:3
63:3      64:3    65:3
66:3      66:10   67:3
68:3      69:3    70:3
71:3      72:3    73:3
74:3      75:3    76:3
77:3      78:3    79:3
80:3      81:3    82:3
83:3      84:3    85:3
86:3      87:3    88:3
89:3      90:3    91:3
92:3      93:3    94:3
95:3      96:3    97:3
98:3      99:3    100:3
101:3     102:3   103:3
104:3     105:3   106:3
107:3     108:3   109:3
3-ring [1]        11:23
30 [5]    24:18   24:21
24:22     24:25   25:4
321 [1]   2:11
33 [2]    3:7     4:1
35 [2]    4:8     4:9
36 [2]    4:8     4:9
38 [1]    4:11
39 [1]    4:11
3P [1]    43:4
3P05 [2]  43:10   44:2
3P5 [7]   42:20   42:24
73:23     74:2    74:22
74:23     78:21
```

-4-

```
4 [129]   3:4     3:5
4:4       4:13    4:4
5:4       6:4     7:4
8:4       9:4     9:12
9:24      10:4    11:4
12:4      13:4    14:4
15:4      16:4    17:4
18:4      18:12   18:22
18:25     19:4    20:4
20:14     20:20   20:23
21:4      22:4    23:4
24:4      25:4    26:4
27:4      28:4    29:4
29:5      29:13   30:4
31:4      32:4    33:4
34:4      35:4    36:4
37:4      38:4    39:4
40:4      41:4    42:4
43:4      43:16   43:19
44:4      44:24   45:1
45:2      45:4    46:4
46:4      46:10   47:4
48:4      49:4    50:4
51:4      52:4    53:4
54:4      55:4    56:4
57:4      58:4    59:4
60:4      61:4    62:4
63:4      64:4    65:4
66:4      66:10   67:4
68:4      69:4    70:4
71:4      72:4    73:4
74:4      75:4    76:4
77:4      78:4    79:4
80:4      81:4    82:4
83:4      84:4    85:4
86:4      86:15   87:4
88:4      89:4    90:4
91:4      92:4    93:4
94:4      95:4    96:4
97:4      98:4    99:4
100:4     101:4   102:4
103:4     104:4   105:4
106:4     107:4   108:4
109:4
4.] [1]   46:2
40 [2]    67:4    108:14
43 [1]    4:13
45 [1]    4:13
450 [1]   2:14
48 [1]    4:15
49 [1]    4:15
4:20 [1]  31:14
```

-5-

```
5 [125]   3:5     4:5
4:15      4:5     5:5
6:5       7:5     8:5
9:5       9:12    10:5
11:5      12:5    13:5
14:5      15:5    16:5
17:5      18:5    18:12
18:22     19:5    20:5
20:14     21:5    21:25
22:2      22:5    22:13
23:5      24:5    25:5
26:5      27:5    28:5
29:5      29:5    30:1
30:5      31:5    32:5
33:5      34:5    35:5
36:5      37:5    38:5
39:5      40:5    41:5
42:5      43:5    44:5
45:5      46:5    47:5
48:5      48:19   48:22
48:24     49:1    49:5
50:5      51:5    52:5
53:5      54:5    55:5
56:5      57:5    58:5
59:5      60:5    61:5
62:5      63:5    64:5
65:5      66:5    66:10
67:5      68:5    69:5
70:5      71:5    72:5
73:5      74:5    75:5
76:5      77:5    78:5
79:5      80:5    81:5
82:5      83:5    84:5
85:5      86:5    87:5
88:5      89:5    90:5
91:5      92:5    93:5
94:5      95:5    96:5
97:5      98:5    99:5
100:5     101:5   102:5
103:5     104:5   105:5
106:5     107:5   108:5
109:5     4:2     4:3
50 [1]    109:6
5:45 [3]  48:12   49:8
50:6
```

-6-

```
6 [115]   3:6     4:6
4:6       5:6     6:6
7:6       8:6     9:6
10:6      11:6    12:6
13:6      14:6    15:6
16:6      17:6    18:6
19:6      20:6    21:6
22:6      23:6    24:6
25:6      26:6    27:6
28:6      29:6    30:6
31:6      32:6    33:6
34:6      35:6    36:6
37:6      38:6    39:6
40:6      41:6    42:6
43:6      44:6    45:6
46:6      47:6    48:6
49:6      50:6    51:6
52:6      53:6    54:6
55:6      56:6    57:6
58:6      59:6    60:6
61:6      62:6    63:6
64:6      65:6    66:6
66:10     66:12   67:6
68:6      69:6    70:6
71:6      72:6    73:6
74:6      75:3    75:6
75:6      75:21   76:6
76:17     77:6    78:6
79:6      80:6    81:6
82:6      83:6    84:6
85:6      86:6    87:6
88:6      89:6    90:6
91:6      92:6    93:6
94:6      95:6    96:6
97:6      98:6    99:6
100:6     101:6   102:6
103:6     104:6   105:6
106:6     107:6   108:6
109:6     4:4
6-7 [1]   4:17
6/23/08 [1]       78:4
6/24 [1]  15:20
61 [1]    3:7
63 [1]    3:8
65 [1]    3:9
67 [1]    4:5
6th [1]   85:13
```

-7-

```
7 [121]   1:5     1:7
1:17      3:7     4:7
4:7       5:7     6:7
7:7       8:7     9:7
10:7      11:7    12:7
13:7      14:7    15:7
16:7      17:7    18:7
19:7      20:7    21:7
22:7      23:7    24:7
25:7      26:7    27:7
28:7      29:7    30:7
31:7      32:7    33:7
34:7      35:7    36:7
37:7      38:7    39:7
40:7      41:7    42:7
43:7      44:7    45:7
46:7      47:7    48:7
49:7      50:7    51:7
52:7      53:7    54:7
55:7      56:7    57:7
58:7      59:7    60:7
61:7      62:7    63:7
64:7      65:7    66:7
67:7      68:7    69:7
70:7      71:7    72:7
73:7      74:7    75:3
75:6      75:7    75:12
75:21     75:23   76:7
76:13     76:14   77:7
77:11     78:7    79:7
80:7      81:7    82:7
83:7      84:7    85:7
86:7      87:7    88:7
89:7      90:7    91:7
92:7      93:7    94:7
95:7      96:7    97:7
98:7      99:7    100:7
101:7     102:7   103:7
104:7     105:7   106:7
107:7     108:7   109:7
4:6       4:23
702 [1]           90:22
705 [1]           90:22
73 [1]    3:10
75 [1]    4:17
75201 [1]         2:15
75207 [1]         2:6
75270-4399 [1]
2:19
76 [1]    4:17
77765 [1]         2:11
7:19 [3]  43:8    44:13
44:21
7th [2]   85:14   85:15
```

-8-

```
8 [130]   1:8     2:8
3:6       3:8     4:8
4:19      4:8     5:8
6:8       7:8     8:8
9:8       10:8    11:8
12:8      13:8    14:8
15:8      16:8    17:8
18:8      18:12   18:22
19:8      20:8    20:14
20:23     21:8    21:10
21:11     22:8    23:8
24:8      25:8    26:8
27:8      28:8    29:5
29:8      30:8    30:12
31:8      32:8    33:8
34:8      35:8    36:8
37:8      38:8    39:8
40:8      41:8    42:8
42:16     43:8    44:8
45:8      46:8    47:8
```

| | | |
|---|---|---|
| 48:8 | 49:8 | 50:8 |
| 51:8 | 52:8 | 53:8 |
| 54:8 | 55:8 | 56:8 |
| 57:8 | 58:8 | 59:8 |
| 60:8 | 61:8 | 62:8 |
| 63:8 | 64:8 | 65:8 |
| 66:8 | 67:8 | 68:8 |
| 69:8 | 70:8 | 71:8 |
| 72:8 | 73:8 | 74:8 |
| 75:8 | 76:8 | 77:8 |
| 78:8 | 79:8 | 80:8 |
| 81:8 | 82:8 | 83:8 |
| 84:8 | 85:8 | 86:8 |
| 87:8 | 88:8 | 88:9 |
| 88:14 | 88:17 | 88:25 |
| 89:1 | 89:8 | 90:8 |
| 91:8 | 92:8 | 93:8 |
| 94:8 | 95:8 | 96:8 |
| 97:8 | 98:8 | 99:8 |
| 100:8 | 101:8 | 102:8 |
| 103:8 | 104:8 | 104:8 |
| 104:10 | 105:8 | 106:8 |
| 107:8 | 108:5 | 108:8 |
| 109:8 | 4:6 | |

**810** [1] 4:8
**84** [1] 3:11
**88** [1] 4:19
**89** [1] 4:19
**8:30** [1] 4:5
**8:50** [1] 4:2
**8th** [1] 85:15

## -9-

**9** [119] 1:9 2:9
3:9 4:9 4:21
4:9 5:9 6:9
7:9 8:9 9:9
10:9 11:9 12:9
13:9 14:9 15:9
16:9 17:9 18:9
19:9 20:9 21:9
22:9 23:9 24:9
25:9 26:9 27:9
28:9 29:9 30:9
31:9 32:9 33:9
34:9 35:9 36:9
37:9 38:9 39:9
40:9 41:9 42:9
43:9 44:9 45:9
46:9 47:9 48:9
49:9 50:9 51:9
52:9 53:9 54:9
55:9 56:9 57:9
58:9 59:9 60:9
61:9 62:9 63:9
64:9 65:9 66:9
67:9 68:9 69:9
70:9 71:9 72:9
73:9 74:9 75:9
76:9 77:9 78:9
79:9 80:9 81:9
82:9 83:9 84:9
85:9 86:9 87:9
88:9 89:9 90:9
91:9 91:14 91:17
91:18 91:23 92:2
92:4 92:9 93:9
94:9 95:9 96:9
97:9 98:9 99:9
100:9 101:9 102:9

| | | |
|---|---|---|
| 103:9 | 104:9 | 105:9 |
| 106:9 | 107:9 | 108:9 |
| 109:9 | 4:7 | 4:9 |

**903-769-3120** [1] 2:12
**91** [3] 3:13 4:21 4:22
**92** [2] 4:21 4:22
**96** [1] 3:13

## -A-

**A&M** [2] 92:9 93:4
**a.m** [3] 44:21 64:12 90:19
**a.m.]** [2] 4:2 64:13
**ability** [1] 32:16
**able** [3] 7:6 20:21 67:23
**above** [2] 4:2 4:7
**above-entitled** [1] 1:15
**absolutely** [2] 102:23 105:20
**abuse** [1] 94:20
**accepting** [1] 87:6
**access** [1] 60:14
**accompany** [1] 23:24
**accomplished** [1] 10:1
**according** [1] 61:22
**account** [1] 24:18
**accurate** [1] 54:16
**accused** [1] 36:13
**acknowledge** [1] 37:2
**acted** [1] 60:13
**acting** [3] 68:24 71:10 95:16
**actual** [2] 44:20 59:20
**addition** [1] 64:21
**additional** [3] 69:11 71:2 71:4
**address** [1] 5:23
**Administration** [1] 105:3
**admissibility** [1] 81:13
**admission** [2] 104:12 104:15
**admit** [1] 88:11
**admitted** [18] 4:3 12:21 12:22 36:3 36:5 39:18 39:19 45:1 45:2 48:25 49:1 76:13 76:14 88:25 89:1 92:3 92:5 94:15
**advance** [1] 59:18
**advised** [1] 49:25
**advisories** [1] 8:20

**advisors** [1] 81:3
**advisory** [1] 11:12
**affect** [2] 76:11 100:17
**affects** [1] 105:15
**affidavit** [4] 4:6 12:5 13:4 49:4
**affirmatively.]** [1] 78:10
**afforded** [1] 36:18
**afternoon** [3] 7:12 78:9 90:1
**again** [17] 12:25 14:19 16:13 19:1 31:17 36:23 43:24 47:17 51:2 55:24 60:11 74:6 77:1 78:14 89:22 103:16 106:25
**against** [1] 50:2
**ages** [1] 49:21
**aggression** [2] 46:24 94:18
**aggressive** [1] 71:11
**agitation** [2] 46:15 46:24
**ago** [3] 22:1 46:18 53:7
**agree** [8] 10:13 59:10 79:3 79:21 82:6 83:2 99:10 108:25
**agreeable** [1] 28:17
**agreed** [1] 23:18
**agreeing** [1] 83:1
**agreement** [1] 10:10
**agreements** [1] 20:13
**ahead** [6] 6:25 59:12 75:20 85:23 89:25 98:25
**AIS** [7] 19:22 41:21 51:9 51:13 52:24 53:4 56:15
**alcohol** [1] 91:13
**Alex** [98] 2:2 3:6 3:7 3:9 3:13 3:14 4:10 4:11 7:7 7:13 7:18 7:20 8:2 12:9 12:15 12:24 13:1 13:4 13:12 20:12 20:16 21:7 21:17 21:23 22:13 22:17 22:20 23:1 32:5 32:6 33:16 34:21 36:2 39:15 44:8 44:10 44:25 45:13 45:23 48:21 55:16 58:23 59:1 59:5 59:7 60:10 61:5 61:15 63:16 64:2 64:8 64:14 64:19 64:24 65:6 66:17 73:9 75:22 75:25 76:3 77:1 79:10 79:13 79:18 80:5 80:9 80:12 80:19 80:23 81:1

**81:10** 81:17 82:6
82:14 83:6 83:16
85:19 87:12 87:18
88:1 88:3 88:20
89:14 89:21 90:4
90:12 92:1 96:15
96:17 101:2 102:11
106:12 106:17 106:24
107:11 107:14 108:21
109:9
**Alex]** [11] 12:3 13:9 13:15 14:18 20:19 21:9 21:25 23:6 32:8 65:24 66:22
**alleged** [2] 98:23 99:2
**allow** [4] 27:4 41:25 55:19 95:21
**allowed** [8] 51:20 55:5 55:6 56:4 61:17 74:6 82:23 86:22
**almost** [1] 83:16
**along** [2] 74:12 101:13
**aloof** [1] 26:15
**alternate** [1] 80:11
**always** [3] 53:5 58:6 71:8
**Amendment** [3] 13:22 34:22 34:24
**amount** [2] 102:20 102:20
**ANDREA** [1] 2:3
**annotations** [1] 109:7
**answer** [5] 14:15 23:8 63:14 77:2 90:9
**answered** [1] 62:24
**anti-psychotic** [1] 96:8
**anyway** [3] 6:16 6:17 82:16
**Appeals** [13] 4:5 5:13 5:13 5:23 6:22 79:24 80:3 81:14 82:1 83:12 83:23 90:5 90:5
**appear** [8] 12:4 12:5 15:14 39:1 45:4 49:3 78:13 94:11
**appearance** [6] 49:12 94:7 97:3 97:8 97:11 97:14
**APPEARANCES** [1] 3:4
**applies** [2] 5:4 35:22
**apply** [4] 4:8 4:13 6:4 79:2
**appoint** [1] 50:4
**appointed** [5] 55:15 85:4 85:11 85:14 85:15

**appointment** [2] 48:3 50:10
**approach** [1] 44:8
**appropriate** [3] 79:22 98:15 98:17
**area** [9] 13:24 37:11 41:5 65:14 68:4 68:5 68:5 68:15 71:5
**areas** [1] 96:11
**arguendo** [1] 83:13
**argumentative** [1] 102:25
**arraigned** [2] 48:11 49:7
**arraignment** [1] 49:5
**arrange** [2] 55:2 55:3
**arrangements** [1] 53:24
**arrested** [2] 54:22 100:13
**arrival** [1] 89:23
**arrived** [1] 86:9
**article** [2] 105:13 105:19
**articles** [3] 104:25 105:4 105:24
**aside** [1] 19:11
**assessment** [3] 4:12 38:24 39:22
**assessor** [1] 45:6
**assigned** [1] 84:23
**assignments** [1] 40:6
**assist** [1] 69:12
**assistant** [3] 2:4 2:17 84:13
**assisted** [2] 71:19 92:15
**assuming** [3] 83:13 97:3 103:25
**attempt** [2] 56:10 56:13
**attempted** [1] 85:10
**attention** [3] 16:4 37:8 70:20
**attorney** [19] 2:10 2:14 14:1 14:7 15:1 16:3 17:12 17:12 18:16 28:12 58:12 59:14 60:9 60:24 73:7 84:19 86:13 88:5 96:1
**attorneys** [5] 2:4 4:22 58:9 58:14 92:19
**audio** [2] 45:11 46:11
**auditory** [1] 95:16
**August** [1] 84:17
**avenue** [1] 16:9
**await** [1] 89:23
**aware** [13] 11:6

38:4　38:8　43:8
47:24　48:2　48:11
60:8　62:4　70:18
100:6　100:15　102:2
away [1] 16:5

## -B-

background [2] 34:25
92:7
badge [1]　54:4
badges [1]　86:5
based [16]　37:1
37:12　93:25　94:10
95:4　95:19　97:11
97:17　100:4　102:5
102:20　103:8　104:3
107:7　108:7　108:8
basic [3] 10:4　34:15
36:17
basing [1]　99:4
basis [5] 50:17　50:20
96:23　104:11　104:12
become [1]　60:8
behavior [6]　68:11
87:1　94:13　98:23
99:2　101:16
behavioral [19] 38:14
40:10　40:13　40:17
40:17　41:6　41:19
47:17　47:20　51:19
61:20　62:2　62:12
63:21　67:18　67:19
68:5　74:8　75:1
behaviors [1]　101:17
belief [1]　29:4
BELO [2]　30:23
30:24
bering [1]　66:4
best [1] 95:25
better [2]　69:14
99:9
between [7]　23:20
40:17　67:9　67:12
67:18　67:21　74:15
big [2]　32:13　39:22
bills [1] 27:2
binder [1]　11:23
birth [1] 39:11
bit [6]　20:20　23:19
28:22　69:25　100:2
105:12
blood [2]　95:2
97:21
blunt [1]　46:20
blush [1]　83:7
Blvd [2] 2:5　2:18
BO [7]　41:2　41:22
41:24　51:1　51:10
51:17　52:1
board [1]　17:5
bolster [1]　88:2
book-in [4]　10:5
19:24　42:19　97:4
booked [5]　97:13

99:19　99:24　100:7
100:14
booth [5]　59:14
70:24　86:4　86:10
86:15
border [1]　26:9
bottom [1]　36:21
box [1]　103:3
Brad [2] 2:13　15:14
brief [1] 76:19
briefing [1]　90:10
bring [2]　16:4
68:13
Broadnax [44]　1:6
7:17　9:25　10:20
11:15　13:6　15:22
18:13　19:14　20:7
20:25　22:4　23:21
24:3　24:10　24:15
24:23　25:13　27:20
29:6　31:25　32:24
37:25　39:9　39:25
39:25　41:18　42:12
42:19　43:10　43:24
43:25　49:4　50:6
59:9　66:4　66:7
68:18　69:1　77:23
88:6　90:21　94:3
94:12
brought [15]　26:5
26:6　26:8　26:11
37:25　38:4　48:6
69:9　70:20　73:1
87:24　88:1　94:8
97:3　97:22
Building [3]　2:5
2:18　4:25
business [7]　4:5
5:7　12:4　81:18
83:3　83:6　90:14

## -C-

C [2]　2:1　4:1
C-h-r-i-s-t-i-e [1]
65:22
Calm [1]　2:11
camera [3]　13:15
30:2　30:13
cameraman [5] 4:14
29:15　29:17　79:19
86:9
cannabis [1]　105:12
cannot [1]　77:2
capacities [1]　92:12
capacity [2]　51:7
54:7
capital [3]　59:25
85:9　85:10
Captain [1]　16:12
care [1] 98:25
case [32] 6:5　7:4
10:8　10:20　10:23
11:25　12:12　15:9
23:14　27:12　28:13
31:1　49:13　51:23
60:15　61:6　67:25

74:12　81:14　83:20
83:21　85:21　86:20
87:5　87:15　87:21
87:22　87:23　90:21
94:2　108:4　108:10
cases [4]　23:11
91:13　108:14　109:6
cautioned [4]　7:24
65:3　84:6　91:4
CBO [7] 40:13　41:15
47:15　51:16　55:4
61:17　62:11
CBS [1] 9:13
cell [8]　10:6　41:12
43:3　43:10　54:11
67:24　71:20　74:1
center [2]　68:16
73:3
central [3]　38:24
38:25　101:14
certain [7]　24:22
36:11　37:1　99:23
102:20　102:23　102:24
certainly [3]　6:10
92:8　107:18
certainty [2]　99:25
107:16
CERTIFICATE [1]
3:15
certified [1]　94:16
certify [3]　50:2
4:2　4:10
chair [2] 66:10　66:11
chambers [1]　4:9
chance [3]　6:14
28:16　93:22
change [2]　43:14
100:20
changed [1]　79:5
Channel [11]　18:25
20:20　21:9　21:11
21:25　22:2　22:13
29:13　30:1　30:12
42:16
Channels [3]　18:12
18:22　20:14
charge [2]　36:8
77:15
charged [3]　59:25
85:8　85:9
charges [1]　50:1
Charles [3]　59:22
85:7　87:13
check [9]　17:13
17:17　43:11　43:12
43:12　43:13　43:15
59:15　60:6
check-in [1]　59:14
checked [1]　107:17
choosing [1]　50:3
Christie [3]　3:9
65:2　65:8
City [1] 92:10
clause [2]　81:20
81:22

clear [5] 27:24　27:25
30:8　96:24　102:23
clearly [1]　14:14
client [5]　14:21
15:23　15:24　21:21
86:23
client's [1]　86:12
clinic [1]　76:19
clock [2]　78:12
78:16
Close [1]　90:14
closed [30]　38:14
40:13　40:17　41:2
41:6　41:19　41:22
41:24　47:17　47:20
51:1　51:10　51:17
51:18　52:1　61:20
62:2　62:11　63:21
67:19　67:20　67:21
67:25　68:7　68:10
74:5　74:6　74:8
74:14　75:1
COA [1] 6:10
college [3]　90:2
92:11　92:25
colors [3]　101:9
101:21　101:22
combative [3]　26:12
68:25　94:13
combativeness [2]
46:24　97:18
coming [4]　7:11
82:16　83:18　95:6
Commerce [1]　2:14
communication [1]
27:13
community [2] 36:7
101:10
compensate [1] 93:12
complaint [1]　88:18
complete [2]　77:5
93:10
completed [1]　93:13
computer [1]　17:11
concern [1]　71:6
concerned [1]　108:17
concerns [1]　71:11
concluded [3]　32:19
32:21　109:17
conclusion [3]　27:25
94:1　94:4
conclusions [2] 94:2
94:7
conclusive [1]　97:8
condition [5]　37:13
51:5　81:5　82:11
95:22
conditions [1]　37:12
conducted [2]　76:25
93:19
conducting [1]　79:7
confer [1]　80:15
conference [1]　53:13
confirmed [1]　106:7

confrontation [2]
81:19　81:22
confusing [1]　108:19
consent [1]　70:19
consider [2]　76:12
88:11
consideration [2]
14:6　15:2
considered [2]　46:3
46:8
consistent [5]　4:17
94:8　95:5　102:6
104:19
constitutional [5]
34:16　36:13　36:18
37:4　87:4
consultant [1]　91:12
consulting [1]　91:12
contact [10]　9:18
9:21　10:10　14:21
14:23　15:23　15:24
17:12　20:9　58:2
contacts [1]　14:20
contains [1]　4:4
content [1]　36:22
contents [2]　4:15
48:24
continuation [1]
90:22
continue [1]　7:3
continued [2]　28:18
109:17
continuing [1]　76:4
contrary [2]　4:19
83:17
control [4]　27:5
68:16　73:3　105:4
Cook [11]　3:11
4:19　84:5　84:11
86:1　86:14　87:9
87:19　88:17　89:3
89:16
cooperative [3] 26:13
26:14　26:15
copies [2]　93:17
93:18
copy [7] 6:19　6:23
13:11　13:12　20:21
22:5　48:17
correct [118]　7:10
8:21　9:6　9:7
9:15　10:18　10:25
11:10　11:16　11:17
11:19　11:20　12:7
15:4　15:8　16:8
16:16　16:17　17:21
17:23　17:25　18:1
18:7　18:14　18:17
18:18　19:9　19:10
19:14　19:15　19:21
20:8　20:15　21:1
21:3　21:4　21:10
21:13　21:22　21:24
22:6　22:7　23:13
23:22　23:23　24:1
25:14　25:15　26:7
27:6　27:7　28:23

28:24  29:14  29:15
29:19  29:25  30:4
30:10  30:14  31:15
31:21  31:22  32:1
32:3  32:17  32:25
33:2  33:10  33:14
33:15  36:14  36:16
37:7  37:16  37:20
39:6  40:6  40:11
40:12  40:15  44:21
48:8  48:14  49:9
49:23  52:10  52:18
52:19  52:21  53:23
54:8  54:9  54:12
56:6  56:9  56:12
56:16  57:14  59:23
61:4  61:23  62:3
62:12  62:20  63:3
63:5  63:6  63:15
66:15  67:5  75:16
77:20  78:9  78:13
99:12  102:18  4:4

**Correctional** [1]
92:21

**correctly** [2]  96:25
4:12

**counsel** [11]  15:3
34:23  49:17  50:1
50:3  50:4  50:11
62:16  85:20  97:21
4:6

**count** [1]  85:9
**counties** [1]  93:6
**counts** [1]  85:10
**county** [29]  1:6
1:18  8:7  9:2
9:17  34:8  35:21
37:5  43:20  43:22
54:8  56:19  65:12
76:18  84:14  84:16
84:20  85:18  86:2
93:6  93:8  93:21
98:21  99:24  100:7
100:14  110:2  4:2
4:24

**couple** [4]  17:14
69:4  95:13  109:13
**course** [1]  93:12
**courses** [1]  92:18
**court** [167]  1:5
1:17  3:15  4:3
4:4  4:5  4:17
4:22  5:3  5:13
5:13  5:19  5:23
5:24  6:2  6:13
6:22  6:25  7:3
7:14  7:16  12:13
12:18  12:21  12:24
13:3  13:7  14:17
17:9  19:6  19:17
20:11  20:12  20:17
21:5  21:15  21:19
22:10  22:12  22:14
22:18  22:24  23:3
24:2  25:17  32:5
32:12  33:18  35:5
35:14  36:1  36:3
39:14  39:17  42:3
42:5  44:9  44:12
45:1  45:21  46:3

48:15  48:18  48:23
48:23  49:13  49:25
50:4  53:11  53:14
55:18  59:10  60:12
61:6  61:9  61:13
62:23  63:25  64:5
64:11  64:18  64:23
65:20  66:18  66:19
66:21  73:11  76:6
76:11  77:6  77:7
79:9  79:11  79:15
79:21  79:23  80:2
80:3  80:7  80:10
80:14  80:17  80:22
80:24  81:9  81:11
81:14  81:24  82:1
82:13  82:16  82:21
83:10  83:12  83:23
84:2  84:23  85:22
85:25  86:6  86:19
86:25  87:6  87:9
87:11  87:16  88:8
88:10  88:13  88:19
88:24  89:13  89:15
89:17  89:20  89:22
90:3  90:5  90:7
90:8  90:13  90:15
90:21  91:25  92:2
96:14  106:14  106:18
106:23  107:9  107:12
107:20  107:25  108:3
108:10  108:14  108:16
108:17  108:24  109:2
109:5  109:10  109:15
4:1  4:8  4:22
4:23

**Court's** [3]  4:15
6:10  48:16
**courtroom** [1]  66:8
**Courts** [3]  2:5
2:18  4:25
**credentials** [2]  86:5
86:11
**cried** [1]  28:11
**criminal** [7]  1:4
1:17  2:4  49:13
90:5  92:24  4:23
**cross** [11]  3:7
3:10  3:13  22:23
33:18  33:19  73:11
73:12  89:13  96:14
96:16
**Crowley** [3]  2:5
2:18  4:25
**crux** [1]  83:19
**crying** [1]  58:11
**CSO** [1]  64:9
**CSR** [1]  4:20
**Cummings** [5]  13:6
19:8  23:20  24:6
24:14
**custody** [1]  54:2
**cutting** [1]  24:22
**CV** [3]  4:8  4:21
91:18

---

**-D-**

**D** [1]  4:1

**daily** [2] 50:16  50:19
**Dallas** [42]  1:6
1:18  1:18  2:4
2:6  2:15  2:19
8:7  9:2  9:17
11:5  30:17  30:21
30:24  31:8  31:13
32:12  34:8  35:21
37:5  43:20  43:22
54:7  56:5  56:19
57:23  60:2  65:12
76:18  84:13  84:15
84:20  85:18  86:2
93:21  98:21  99:24
100:7  100:14  110:2
4:24  4:26
**Damarius** [4]  13:6
22:3  23:20  24:6
**dangerous** [1]  69:5
**date** [13] 15:17  21:8
31:14  31:20  32:2
39:11  44:1  53:5
60:7  75:18  78:3
80:21  4:21
**dated** [1]  21:5
**dates** [1] 85:16
**David** [5]  2:2
22:25  83:25  87:24
88:4
**days** [7] 46:18  59:17
59:19  78:13  100:22
100:22  109:16
**deadline** [1]  90:9
**deal** [5]  19:8  19:13
39:8  81:24  101:11
**dealt** [2] 82:11  102:4
**Dear** [1] 10:7
**decide** [1]  74:10
**decided** [1]  28:20
**decision** [1]  52:3
**declined** [2]  57:25
58:6
**defendant** [46]  2:20
4:9  20:6  23:9
23:20  26:5  26:24
27:9  27:11  28:1
28:5  29:6  29:24
31:9  32:24  34:17
36:18  42:9  45:11
45:18  46:10  46:23
47:12  47:25  49:16
51:14  53:21  59:21
60:14  64:21  66:3
66:18  67:11  68:13
70:12  85:6  87:4
93:19  94:2  98:12
102:14  103:6  104:23
108:6  108:8  108:23
**defendant's** [27]
4:7  10:5  32:16
35:9  35:20  35:24
37:9  38:19  39:13
43:18  44:23  46:10
48:22  48:24  49:19
67:13  75:6  75:12
75:21  76:17  77:11
82:15  88:16  91:17
91:17  91:23  97:2

**defendants** [2]  23:15
85:3
**defended** [1]  29:2
**defender** [3]  2:17
61:7  84:13
**Defender's** [2]  84:16
84:22
**defending** [1]  61:7
**Defense** [16]  7:9
12:11  35:5  39:17
46:2  46:3  76:13
80:13  81:21  82:7
88:8  88:25  89:18
92:2  103:18  106:20
**defer** [2] 79:22  109:10
**definitely** [2]  17:1
32:18
**degree** [3]  41:9
92:8  92:9
**delay** [1]  5:18
**delusions** [1]  47:13
**demeanor** [3]  26:12
68:24  68:25
**Demonstrative** [1]
4:2
**denied** [2]  37:12
57:23
**deny** [1] 55:10
**department** [11] 8:7
8:15  8:17  9:3
11:5  38:7  40:1
43:9  65:13  92:11
93:17
**dependents** [1] 49:21
**depending** [3]  68:10
74:10  102:1
**depressant-type** [1]
101:14
**Deputy** [2]  4:1
4:22
**describe** [4]  8:13
67:14  68:24  75:1
**description** [5]  4:3
20:22  34:7  34:11
35:10
**detail** [1]  34:12
**detention** [4]  65:13
66:23  66:25  67:5
**determination** [3]
41:22  41:24  51:2
**determine** [2]  74:13
98:24
**determining** [1] 50:15
**DeVaney** [2]  16:12
16:13
**develop** [1]  101:18
**diagnosed** [6]  72:18
72:20  94:19  96:5
96:6  98:22
**dialogue** [1]  64:20
**difference** [5]  40:16
43:3  67:18  67:21
67:22
**different** [16]  11:14
23:21  23:21  40:4

43:1  55:8  57:12
58:24  68:6  69:4
72:11  72:12  93:16
95:13  101:13  101:25
**differently** [2]  60:13
68:9
**direct** [11]  3:6
3:9  3:11  3:13
8:1  22:22  37:8
57:12  65:5  84:8
91:6
**directly** [3]  16:2
61:21  66:14
**disclose** [1]  36:24
**Discovery** [1]  12:12
**discretion** [2]  6:11
28:22
**discuss** [1]  109:14
**discussion.]** [2]
23:4  84:3
**discussions** [1] 71:24
**disheveled** [1]  46:14
**displayed** [1]  94:13
**disposition** [1]  40:3
**distraught** [1]  58:11
**District** [5]  1:4
1:17  2:4  49:13
4:23
**disturbance** [1] 41:9
**divided** [1]  27:12
**dividing** [1]  27:8
**doctor** [14]  47:5
47:11  68:3  68:8
69:21  69:23  74:15
95:19  96:20  96:21
99:7  99:10  107:2
107:5
**doctorate** [1]  92:9
**doctors** [3]  72:17
74:10  74:13
**document** [12]  12:6
15:11  15:12  17:2
17:24  18:9  18:10
31:12  45:24  62:4
62:8  62:16
**documents** [17] 4:15
18:19  18:21  18:25
19:4  19:13  20:20
20:24  22:3  31:5
61:23  76:5  76:6
77:3  77:4  78:20
97:15
**doesn't** [3]  32:8
37:4  77:2
**done** [10]  15:1
20:18  28:6  28:8
29:1  43:9  45:8
81:7  106:4  108:22
**door** [2] 16:3  71:22
**dosage** [1]  102:1
**double** [4]  60:6
62:9  62:10  63:9
**double-check** [1]
17:16
**DOUG** [1]  2:9

Case 3:15-cv-01758-N Document 41-15 Filed 06/29/16 Page 38 of 45 PageID 9798

**down** [15]  16:15
17:4  24:23  36:21
48:6  59:14  64:5
79:16  83:5  86:3
89:15  94:24  95:6
98:4  106:18
**downside** [2]  95:8
98:3
**downstairs** [3]  86:4
86:17  88:6
**Dr** [9]  47:2  89:24
92:6  93:15  96:12
96:18  101:5  102:9
102:25
**dramatic** [1]  46:14
**DRE** [3] 7:9  107:5
108:22
**driving** [3]  90:1
93:13  106:19
**drool** [1]  69:18
**dropped** [1]  98:4
**drug** [18]  91:13
92:17  92:18  93:5
93:9  95:8  98:3
100:24  101:12  101:12
104:13  104:20  105:4
105:10  105:12  105:15
107:23  108:13
**drugs** [1]  101:23
**drunk** [1]  93:13
**DSO** [1] 54:11
**due** [1]  94:13
**DUI** [1]  40:23
**duly** [4]  7:24  65:3
84:6  91:4
**duration** [1]  105:15
**during** [2]  29:10
58:22
**Duron** [1]  16:7
**duties** [1]  8:13
**dynamics** [1]  25:18
**dysphoric** [1]  46:14

**-E-**

**E** [4]  2:1  2:1
4:1  4:1
**e-mail** [3]  10:2
11:17  23:13
**e-mailed** [1]  19:20
**e-mails** [1]  42:6
**education** [2]  92:10
96:20
**effect** [1]  32:15
**eight** [1] 58:12
**either** [9]  4:16
10:2  10:12  16:3
23:13  50:15  68:9
68:9  109:9
**elapsed** [1]  100:22
**elevated** [3]  95:1
95:2  95:2
**elevator** [1]  52:12
**Ellen** [3]  4:16
4:25  30:2

**emergency** [2]  4:15
37:12
**emotional** [1]  58:11
**employ** [2]  49:17
50:3
**employed** [1]  91:12
**employees** [2]  54:11
86:15
**end** [2]  65:9  100:20
**ends** [1]  82:3
**enforcement** [3]
13:21  15:25  54:14
**Engineering** [1]
92:14
**entered** [2]  44:17
44:20
**entity** [1]  9:18
**entry** [1] 94:25
**equivalent** [1]  13:18
**escort** [1]  24:11
**escorted** [6]  25:1
25:2  28:21  32:24
33:1  71:3
**established** [1]  9:20
**etcetera** [1]  15:25
**evaluations** [1] 93:10
**event** [1]  60:4
**events** [1]  84:25
**eventually** [4]  6:17
22:14  94:19  94:21
**everyday** [1]  16:23
**evidence** [5]  45:22
46:7  82:19  83:22
4:5
**evidence.]** [8]  12:23
36:5  39:20  45:3
49:2  76:15  89:2
92:5
**evidentiary** [1] 83:23
**exact** [1]  105:13
**exactly** [3]  12:25
34:2  95:23
**exam** [2]  47:11
93:11
**examination** [27]
3:6  3:7  3:7
3:8  3:9  3:10
3:11  3:13  3:13
3:14  3:14  8:1
33:18  33:19  57:13
61:14  63:17  65:5
73:11  73:12  84:8
89:13  91:6  96:14
96:16  101:3  102:10
**examined** [1]  95:10
**example** [1]  101:21
**Except** [1]  63:4
**excused** [4]  63:25
79:11  89:16  106:14
**exhibit** [52]  12:1
12:3  12:13  12:15
12:22  13:1  13:19
15:11  18:20  19:2
20:12  31:6  35:3
35:5  35:9  35:17

35:20  36:4  37:9
38:16  38:19  39:17
39:19  43:16  43:19
44:24  45:1  45:2
46:2  46:4  46:10
46:22  47:2  48:19
49:1  64:17  74:17
75:3  75:12  76:13
76:14  76:17  77:11
88:8  88:14  88:17
88:25  89:1  91:14
91:17  91:18  92:4
**exhibit.]** [1]  13:8
**exhibited** [1]  41:8
**exhibition** [1]  59:5
**exhibits** [5]  4:1
75:6  75:21  92:2
4:13
**exist** [1] 8:13
**exit** [2]  33:4  33:9
**expect** [1]  105:16
**expenses** [1]  49:20
**experience** [4]  35:1
92:7  96:21  106:1
**experienced** [2] 104:14
104:18
**expert** [8]  7:9
13:23  90:22  92:17
93:6  93:9  105:10
107:23
**Expiration** [1]  4:21
**explain** [1]  19:17
**explanation** [1] 19:7
**extension** [2]  81:18
92:14

**-F-**

**F08-24667** [2]  1:3
4:3
**faceline** [1]  18:5
**facilitated** [1]  54:6
**facility** [1]  77:12
**fact** [8]  5:9  14:6
15:2  39:8  49:22
59:16  62:4  64:16
**factors** [5]  49:18
101:13  101:15  101:15
101:16
**failed** [1]  22:8
**fair** [2]  47:22  50:9
**fairly** [2]  26:14
26:15
**familiar** [7]  9:14
34:13  36:15  40:16
41:5  41:17  105:10
**far** [5]  34:6  69:7
71:10  80:10  94:4
**fashion** [1]  27:19
**fax** [11]  10:3  10:11
11:15  11:17  19:21
20:9  21:8  42:10
53:18  56:1  58:4
**faxed** [6]  10:15
17:25  19:20  20:2
21:8  57:24

**faxes** [1]  42:7
**fellow** [1]  81:3
**few** [1]  73:14
**field** [2]  92:16  93:11
**fifteen** [4]  77:16
78:11  78:16  98:9
**Fifth** [3] 13:22  34:21
34:23
**figure** [2]  79:23
103:1
**file** [5]  4:16  5:16
22:8  48:17  48:24
**filed** [5]  6:10  6:20
80:3  80:13  83:21
**files** [1]  10:15
**filing** [2]  83:25
90:10
**filled** [3]  38:23
44:16  44:20
**final** [1]  83:24
**finally** [1]  86:22
**fine** [3]  81:21  96:19
105:23
**finished** [1]  71:22
**firearms** [1]  26:20
**first** [24]  7:18  7:24
17:3  19:18  19:23
24:15  25:12  29:7
50:13  61:22  65:3
72:2  72:5  73:4
83:7  83:7  84:6
90:24  91:4  94:8
96:1  96:23  97:2
97:9
**fishing** [1]  59:5
**fit** [1]  99:25
**fixing** [1]  60:24
**flashes** [1]  104:19
**floor** [10]  24:12
52:9  52:11  52:17
68:16  73:5  73:6
73:6  73:24  89:9
**floors** [2]  23:17
23:21
**folks** [6] 10:17  26:12
51:6  69:9  72:4
95:13
**followed** [1]  21:2
**following** [3]  1:14
49:18  96:4
**follows** [4]  7:25
65:4  84:7  91:5
**Forbstein** [1]  93:12
**foregoing** [1]  4:4
**form** [20]  10:3
10:4  10:14  16:24
38:23  43:20  44:15
44:16  44:20  45:7
45:15  45:20  45:20
46:12  46:16  47:16
62:25  70:19  94:1
95:4
**formed** [1]  103:19
**forming** [1]  105:1
**forms** [2]  48:13

**94:11
forth** [1] 29:8
**forum** [1]  61:8
**forward** [1]  16:14
**found** [3]  42:11
86:23  89:5
**foundation** [1]  81:13
**four** [10] 17:14  19:3
22:14  23:21  24:3
29:4  56:4  70:7
93:18  98:8
**fourth** [1]  58:18
**Fowler** [2]  4:1
4:20
**Fox** [4]  9:12  9:24
19:23  86:15
**Frank** [2]  2:5
2:18
**frequently** [1]  43:15
**freshen** [1]  78:24
**Friday** [4]  5:7
7:5  37:22  38:1
**front** [2] 66:14  102:13
**full** [1]  8:3
**Fuller** [5]  4:24
4:24  5:6  6:21
7:2
**fully** [1] 50:25

**-G-**

**G** [1]  4:1
**Garland** [6]  47:25
48:2  50:11  100:8
100:8  100:11
**general** [9]  13:20
26:12  27:18  34:13
35:1  36:20  40:8
41:7  71:7
**generally** [2]  9:23
10:4
**gentleman** [1]  66:14
**given** [5]  5:12
14:6  26:24  33:13
106:7
**giving** [5]  62:8
98:6  98:13  102:17
103:5
**glass** [2] 27:10  27:12
**goes** [6] 51:6  52:12
52:14  61:20  74:13
101:13
**Goldberg** [6]  4:16
4:23  4:25  5:5
5:22  30:2
**gone** [1] 56:23
**good** [7] 33:21  33:22
60:18  68:12  100:3
101:20  104:5
**GP** [1]  40:8
**grant** [2] 6:18  80:24
**granted** [6]  4:6
80:15  80:17  80:20
81:1  81:4
**grants** [1]  80:3

Case 3:15-cv-01758-N   Document 41-15   Filed 06/29/16    Page 39 of 45   PageID 9799

guarantee [2]  77:7
83:16

guard [2]  20:8
71:8

guards [1]  55:3
guess [9]  8:10
69:1  69:3  74:11
76:7  90:5  90:6
101:20  102:12

guidance [1]  5:14
guidelines [1]  9:21
guilt/innocence [2]
107:1  107:6

guilt/innocent [1]
107:3

guy [8]  11:3  28:18
45:5  56:22  56:24
57:1  59:22  107:17

guys [1]  11:2

-H-

H-i-c-k-l-e-n [1]
65:23

hallucinations [4]
45:11  46:11  47:12
95:16

hallucogenic-type [2]
101:16  101:23

hallway [1]  29:9
HAND [1]  4:15
hand-in-hand [1]
107:6

handle [3]  6:11
8:14  8:17

HANDLEY [3] 2:3
6:1  6:3

hands [1]  83:18
handwriting [2]
42:22  74:18

handwritten [1] 42:18
hard [1]  15:19
harmful [1]  41:10
head [2] 78:10  103:23
heading [1]  36:7
health [17]  4:11
4:13  38:24  43:20
43:21  43:22  62:20
65:17  65:18  66:23
67:1  67:16  69:24
69:25  70:3  76:18
76:18

hear [3]  6:16  101:22
108:1

heard [9]  34:23
50:13  81:4  97:10
97:20  98:5  99:18
103:24  108:8

hearing [22]  1:9
1:15  3:5  4:4
4:6  4:7  5:10
12:16  12:20  35:6
53:13  59:8  64:1
64:3  79:12  80:14
80:18  80:20  81:2
81:3  104:4  106:15

hearings [3]  7:5
89:25  90:23

held [6]  1:17  43:1
53:13  60:25  67:14
86:3

help [3]  32:8  60:22
87:3

helping [1]  54:24
hereby [2]  50:3
4:2

Hey [1]  11:2
Hicklen [8]  3:9
64:25  65:2  65:8
65:9  65:24  66:22
73:14

high [3]  62:9  63:8
98:2

highlighted [2]  36:10
37:11

highly [1]  87:15
Highway [1]  105:3
himself [4]  27:22
63:10  69:6  69:16

hiring [1]  34:7
hold [3]  17:11  55:21
80:2

holding [2]  67:13
86:17

Holly [1]  2:11
homicide [2]  62:9
63:9

honest [1]  43:2
honestly [1]  42:25
Honor [10]  5:6
5:20  6:1  6:21
7:2  7:21  14:14
39:16  44:8  88:9

Honorable [1]  1:16
hope [1] 5:16
hopefully [1]  15:13
hospital [1]  56:18
hour [1] 74:7
hours [4]  5:7
67:4  98:8  98:10

housed [5]  8:18
52:24  68:8  85:17
89:7

housing [1]  40:6
Houston [2]  92:22
92:25

huge [2] 99:21  99:22
hundred [3]  43:2
102:22  102:24

hurt [2]  55:14  55:21
hypothesis [1]  63:20
hypothetical [2]
14:20  69:13

hypotheticals [1]
69:4

-I-

idea [2]  59:20  92:7

identification [1]
92:19

identification.] [9]
12:2  35:4  35:18
38:17  43:17  48:20
75:4  88:15  91:15

identified [1]  66:18
identifies [1]  86:13
identify [3]  27:19
27:22  87:10

illnesses [1]  94:23
imagine [3]  23:7
71:7  107:5

immediately [1]
53:5

impart [1]  4:6
important [1]  101:9
impression [2]  29:1
87:14

improper [3]  32:15
87:15  88:21

in-car [1]  93:18
incentives [1]  27:2
incident [2]  56:21
58:24

include [1]  8:19
included [2]  107:7
4:6

includes [1]  8:15
income [3]  49:19
49:19  49:21

incompetent [1]
89:6

independent [3]
16:21  31:2  31:17

INDEX [2]  3:1
4:1

Indiana [1]  93:13
indicate [1]  76:23
indicated [1]  34:20
indicating [2]  49:22
55:2

indication [2]  26:18
62:14

indicative [1]  98:7
indicators [4]  69:20
104:13  104:16  104:17

indigence [1]  49:4
indigent [2]  49:16
49:22

individuals [2]  4:8
68:11

induced [2]  94:20
96:5

Industrial [2]  2:5
2:18

industry [1]  9:14
influence [15]  94:12
97:9  99:18  99:23
100:18  102:5  102:7
102:15  102:22  103:10
104:6  106:3  106:6
107:17  108:7

information [19]
4:17  8:6  8:12
8:16  10:5  34:8
36:11  36:22  36:23
37:1  38:22  43:14
53:9  54:7  60:17
62:9  72:19  75:13
87:1

informed [1]  50:25
initial [2]  6:3
49:12

initiated [2]  10:16
53:18

injustice [1]  83:21
inmate [13]  14:5
17:13  20:10  28:19
57:2  57:4  57:25
73:5  73:7  74:4
74:6  74:15  86:12

inmates [7]  8:18
37:13  38:9  50:20
55:4  67:23  74:12

inquire [1]  58:23
inquires [1]  51:4
inquiries [1]  50:14
inquiry [4]  49:18
81:9  81:11  82:3

inside [1]  72:7
insinuating [1]  106:9
instance [6]  19:22
21:9  29:13  42:15
57:18  57:22

instances [1]  57:13
instead [1]  101:21
Institute [1]  92:21
instruction [1]  24:14
Instructions [1]
49:11

intake [5]  38:24
38:25  61:21  94:10
95:4

intend [1]  103:20
interrogated [1]
25:25

interrogation [2]
25:24  26:3

interrupt [1]  20:11
interview [43]  8:17
9:16  9:24  10:8
10:24  11:3  20:4
20:10  22:15  24:3
25:12  25:16  25:18
26:6  27:9  30:22
32:19  41:25  55:22
56:3  56:7  57:15
57:25  58:8  58:10
58:14  58:22  59:17
59:20  60:25  61:1
61:17  71:17  71:22
71:23  72:3  72:4
72:9  72:13  86:12
100:12  104:23  108:22

interviewed [5] 28:11
29:5  68:2  71:21
86:23

interviewing [2]
28:23  33:12

interviews [31]  4:8
8:15  15:25  23:16
23:25  24:24  25:14
28:25  32:3  32:20
37:11  47:22  54:6
54:10  54:24  55:5
57:10  57:24  66:4
67:11  68:14  76:25
78:23  79:2  79:4
79:7  93:19  94:4
95:12  101:7  108:9

intoxication [2]
107:3  107:7

investigator [2] 86:2
86:14

involved [4]  6:5
25:24  57:5  106:10

involves [1]  8:16
irrelevant [3]  45:17
59:3  88:21

issue [4] 5:23  32:13
81:20  82:10

issues [1]  109:14
items [2]  11:18
11:21

-J-

J [1]  4:19
jail [54]  8:18  9:17
14:9  16:9  16:13
20:2  23:8  26:6
26:13  33:2  37:5
37:6  37:12  38:1
41:5  41:20  42:10
43:20  43:22  45:6
47:9  48:6  51:6
51:14  52:7  55:3
56:19  59:15  70:5
70:7  76:18  77:12
85:18  86:3  93:21
94:8  94:10  94:16
94:23  94:25  95:10
95:21  97:3  97:22
98:18  99:5  99:6
99:19  99:24  100:7
100:8  100:11  100:14
107:18

jailed [1]  37:5
jailers [1]  29:24
jails [2]  52:6  52:16
James [30]  1:6
7:17  9:25  10:20
13:6  15:15  15:22
18:13  19:14  20:7
20:25  22:4  22:4
23:20  24:3  29:6
31:25  32:24  39:9
42:19  43:24  43:25
49:4  50:6  66:4
66:7  77:23  88:6
94:3  101:7

Janet [3] 3:11  84:5
84:11

January [7]  60:4
84:18  85:1  85:13
85:14  85:15  85:15

| | | |
|---|---|---|
| **Jason** [1] | | 45:5 |
| **job** [8] | 9:2 | 14:10 |
| 34:7 | 34:11 | 35:10 |
| 60:19 | 60:20 | 68:13 |
| **join** [1] | 5:17 | |
| **Jonathan** [1] | | 49:7 |
| **journalist** [2] | 6:5 | |
| 34:19 | | |
| **journalists** [1] | | 6:8 |
| **judge** [60] | | 1:16 |
| 4:11 | 7:7 | 8:10 |
| 8:11 | 9:23 | 13:10 |
| 13:18 | 13:20 | 18:21 |
| 20:16 | 20:21 | 22:2 |
| 24:13 | 33:16 | 36:2 |
| 44:25 | 45:13 | 48:15 |
| 49:7 | 49:15 | 55:16 |
| 58:23 | 59:3 | 60:10 |
| 60:17 | 61:11 | 62:22 |
| 63:16 | 64:3 | 64:8 |
| 64:14 | 64:17 | 66:20 |
| 67:22 | 73:9 | 76:3 |
| 77:1 | 79:10 | 79:13 |
| 79:18 | 80:5 | 80:13 |
| 81:19 | 82:9 | 83:17 |
| 84:24 | 85:19 | 87:8 |
| 87:13 | 87:22 | 88:21 |
| 88:22 | 96:10 | 101:2 |
| 106:12 | 106:17 | 106:21 |
| 106:24 | 107:15 | |
| **judicial** [2] | | 48:16 |
| 48:23 | | |
| **July** [3] | 1:14 | 3:3 |
| 73:22 | | |
| **jumper** [1] | | 71:20 |
| **June** [34] | | 17:25 |
| 18:3 | 18:6 | 18:8 |
| 21:6 | 21:10 | 21:13 |
| 21:16 | 31:13 | 31:23 |
| 31:25 | 32:6 | 37:17 |
| 37:19 | 39:4 | 43:9 |
| 44:4 | 44:6 | 44:21 |
| 45:8 | 47:21 | 48:9 |
| 48:11 | 49:8 | 49:24 |
| 50:7 | 52:25 | 56:7 |
| 66:2 | 67:8 | 73:20 |
| 83:5 | 93:20 | 95:11 |
| **juror** [1] 109:13 | | |
| **jury** [9] | 98:13 | 98:14 |
| 102:13 | 102:18 | 103:2 |
| 103:2 | 103:20 | 104:1 |
| 108:19 | | |
| **justice** [1] | | 92:24 |

**-K-**

| | | |
|---|---|---|
| **K** [1] | 4:8 | |
| **keep** [6] | 10:15 | 11:21 |
| 11:23 | 11:24 | 25:2 |
| 47:15 | | |
| **kept** [2] | 11:22 | 86:17 |
| **Keri** [2] | 2:16 | 84:20 |
| **kill** [1] | 40:24 | |
| **Kim** [1] | 86:9 | |
| **Kimberly** [5] | | 3:6 |
| 7:20 | 7:23 | 8:4 |
| 74:17 | | |
| **kind** [14] | | 8:15 |

| | | |
|---|---|---|
| 10:6 | 13:23 | 19:7 |
| 20:19 | 25:2 | 26:9 |
| 36:23 | 37:2 | 73:15 |
| 74:1 | 103:13 | 108:11 |
| 108:22 | | |
| **kinda** [1] | | 99:19 |
| **kinds** [1] | | 14:1 |
| **knowing** [3] | | 61:25 |
| 63:7 | 63:11 | |
| **knowledge** [10] | 34:13 | |
| 35:1 | 45:15 | 45:19 |
| 45:25 | 48:16 | 51:1 |
| 76:6 | 76:8 | 77:3 |
| **known** [2] | | 72:16 |
| 101:18 | | |
| **knows** [2] | | 8:11 |
| 87:19 | | |

**-L-**

| | | |
|---|---|---|
| **L** [3] | 4:21 | 4:22 |
| 65:9 | | |
| **lack** [1] 69:14 | | |
| **lady** [1] 58:17 | | |
| **Lake** [1] 2:11 | | |
| **Lance** [4] | | 3:12 |
| 91:1 | 91:3 | 91:9 |
| **Lane** [1] 2:11 | | |
| **Larkins** [2] | | 4:14 |
| 5:9 | | |
| **last** [3] | 47:1 | 98:7 |
| 98:9 | | |
| **latter** [1] | | 92:15 |
| **law** [8] | 2:10 | 2:14 |
| 13:21 | 13:22 | 15:25 |
| 54:14 | 81:17 | 108:11 |
| **laws** [1] 13:23 | | |
| **lawyer** [6] | | 14:20 |
| 48:4 | 55:15 | 56:11 |
| 98:24 | 98:24 | |
| **lawyers** [2] | | 53:11 |
| 80:4 | | |
| **lay** [1] 81:12 | | |
| **LB2** [1] 2:18 | | |
| **Leach** [26] | | 3:6 |
| 4:8 | 7:20 | 7:23 |
| 8:4 | 8:5 | 13:9 |
| 13:16 | 23:6 | 33:21 |
| 33:23 | 34:6 | 35:8 |
| 37:18 | 41:17 | 45:4 |
| 46:9 | 49:3 | 53:16 |
| 59:13 | 60:8 | 74:17 |
| 86:9 | 86:10 | 86:13 |
| 86:14 | | |
| **leads** [1] 45:16 | | |
| **learn** [2] 34:7 | 95:9 | |
| **least** [1] 22:22 | | |
| **leave** [3] 13:9 | 51:11 | |
| 105:8 | | |
| **Lee** [1] 16:12 | | |
| **left** [3] | 19:13 | 28:20 |
| 79:6 | | |
| **legal** [1] 34:25 | | |
| **legally** [2] | | 15:6 |
| 36:24 | | |

| | | |
|---|---|---|
| **length** [1] | | 100:4 |
| **lesser** [1] | | 107:7 |
| **letter** [4] 4:20 | | 10:3 |
| 10:4 | 88:18 | |
| **letting** [1] | | 55:22 |
| **levels** [1] | | 55:8 |
| **Lew** [1] 77:12 | | |
| **light** [1] 104:19 | | |
| **likely** [1] | | 51:10 |
| **limited** [2] | | 5:8 |
| 6:8 | | |
| **limits** [1] | | 36:23 |
| **line** [1] 16:6 | | |
| **list** [2] 40:4 | | 53:22 |
| **literature** [1] | | 105:2 |
| **living** [2] | | 8:5 |
| 65:11 | | |
| **load** [1] 102:1 | | |
| **located** [2] | | 42:12 |
| 44:2 | | |
| **locations** [1] | | 43:1 |
| **log** [5] | 4:18 | 75:13 |
| 77:13 | 77:14 | 77:19 |
| **logged** [1] | | 44:4 |
| **logistics** [2] | | 23:19 |
| 29:9 | | |
| **logs** [1] 79:1 | | |
| **Lollar** [77] | | 2:13 |
| 3:7 | 3:8 | 3:10 |
| 3:11 | 3:13 | 3:14 |
| 4:20 | 4:21 | 7:11 |
| 12:19 | 13:13 | 13:14 |
| 15:15 | 15:18 | 21:20 |
| 33:20 | 35:24 | 39:13 |
| 42:3 | 44:23 | 48:15 |
| 58:25 | 59:2 | 59:4 |
| 59:6 | 60:16 | 61:11 |
| 61:22 | 63:18 | 63:24 |
| 64:4 | 66:20 | 73:13 |
| 75:20 | 75:24 | 76:2 |
| 77:10 | 79:14 | 79:25 |
| 82:18 | 83:2 | 84:9 |
| 85:24 | 86:1 | 86:8 |
| 86:21 | 87:8 | 88:9 |
| 88:12 | 88:16 | 88:22 |
| 89:11 | 89:16 | 89:19 |
| 89:23 | 90:14 | 90:24 |
| 91:1 | 91:7 | 91:23 |
| 96:10 | 101:4 | 106:13 |
| 106:16 | 106:21 | 107:21 |
| 107:23 | 108:2 | 108:5 |
| 108:13 | 108:16 | 108:20 |
| 108:25 | 109:3 | 109:8 |
| 109:13 | | |
| **Lollar]** [20] | | 35:8 |
| 35:19 | 36:6 | 38:18 |
| 39:21 | 42:6 | 43:18 |
| 44:13 | 45:4 | 46:9 |
| 49:3 | 53:15 | 55:21 |
| 59:13 | 75:5 | 76:16 |
| 77:15 | 89:3 | 91:16 |
| 92:6 | | |
| **look** [11] 17:2 | | 19:22 |
| 20:1 | 31:5 | 38:11 |
| 48:13 | 53:6 | 75:7 |
| 77:9 | 77:11 | 109:4 |
| **looked** [12] | | 4:12 |

| | | |
|---|---|---|
| 26:14 | 51:13 | 51:15 |
| 86:11 | 86:14 | 95:14 |
| 96:20 | 105:2 | 105:9 |
| 105:9 | 105:13 | |
| **looking** [5] | | 31:12 |
| 42:15 | 44:11 | 62:8 |
| 97:4 | | |
| **looks** [12] | | 5:13 |
| 39:3 | 44:22 | 45:7 |
| 47:14 | 47:23 | 49:6 |
| 49:7 | 49:10 | 81:24 |
| 82:1 | 87:20 | |
| **Lopez** [6] | | 4:16 |
| 4:23 | 5:2 | 5:4 |
| 5:22 | 30:13 | |
| **Lord** [1] 106:8 | | |
| **low** [1] 100:20 | | |
| **lower** [1] | | 100:21 |

**-M-**

| | | |
|---|---|---|
| **M-i-r-m-e-s-d-a-g-h** | | |
| [1] | 47:3 | |
| **ma'am** [9] | | 8:3 |
| 21:12 | 35:15 | 43:6 |
| 64:5 | 65:7 | 72:22 |
| 79:16 | 89:15 | |
| **magistrate** [1] | 50:12 | |
| **Magnis** [1] | | 84:24 |
| **main** [1] 92:20 | | |
| **makes** [1] | 6:6 | |
| **MALLON** [1] | 2:16 | |
| **Management** [1] | | |
| 92:21 | | |
| **mandamus** [3] | 4:12 | |
| 4:15 | 6:9 | |
| **manner** [1] | | 21:3 |
| **manual** [1] | | 105:10 |
| **March** [2] | | 84:21 |
| 4:16 | | |
| **marijuana** [1] | 46:17 | |
| **Mark** [1] | | 4:24 |
| **marked** [15] | | 12:1 |
| 35:3 | 35:9 | 35:17 |
| 35:20 | 38:16 | 38:19 |
| 43:16 | 48:19 | 74:16 |
| 75:4 | 75:6 | 76:17 |
| 88:14 | 91:15 | |
| **Massachusetts** [1] | | |
| 83:5 | | |
| **master's** [1] | | 92:8 |
| **matter** [1] | | 83:23 |
| **matters** [1] | | 49:21 |
| **maximum** [1] | | 25:9 |
| **may** [32] 5:14 | | 5:22 |
| 7:6 | 12:10 | 14:6 |
| 14:7 | 14:15 | 15:3 |
| 25:4 | 29:8 | 29:24 |
| 34:3 | 34:5 | 34:6 |
| 37:11 | 40:24 | 44:8 |
| 58:23 | 63:25 | 64:5 |
| 66:17 | 73:5 | 74:13 |
| 79:11 | 79:16 | 89:15 |
| 89:16 | 98:24 | 100:24 |
| 106:14 | 106:18 | 107:14 |
| **me.** [1] | 4:9 | |

| | | |
|---|---|---|
| **meal** [1] 24:19 | | |
| **mean** [21] | | 14:10 |
| 30:24 | 40:25 | 43:2 |
| 43:11 | 43:12 | 48:13 |
| 53:9 | 53:22 | 54:23 |
| 57:1 | 74:3 | 77:8 |
| 81:2 | 81:20 | 83:8 |
| 83:19 | 99:11 | 99:12 |
| 100:18 | 100:24 | |
| **meaning** [1] | | 74:4 |
| **means** [2] | | 50:2 |
| 74:5 | | |
| **media** [47] | | 4:9 |
| 8:14 | 8:19 | 9:14 |
| 10:2 | 10:17 | 10:24 |
| 11:2 | 11:11 | 11:14 |
| 13:5 | 14:5 | 14:11 |
| 14:25 | 15:24 | 20:10 |
| 23:7 | 23:9 | 23:11 |
| 23:24 | 24:17 | 25:2 |
| 27:1 | 27:11 | 27:19 |
| 28:2 | 28:21 | 33:8 |
| 35:22 | 36:7 | 36:12 |
| 37:9 | 37:19 | 47:21 |
| 50:10 | 55:22 | 66:5 |
| 68:21 | 70:19 | 71:16 |
| 72:3 | 72:5 | 86:6 |
| 95:21 | 98:12 | 98:18 |
| 99:15 | | |
| **media-type** [1] 9:5 | | |
| **medical** [30] | | 38:8 |
| 38:21 | 41:4 | 41:22 |
| 41:23 | 47:10 | 51:2 |
| 51:3 | 51:7 | 51:11 |
| 52:12 | 52:14 | 52:15 |
| 52:18 | 55:7 | 55:9 |
| 55:12 | 56:16 | 63:22 |
| 69:21 | 69:23 | 75:25 |
| 93:21 | 95:1 | 95:10 |
| 95:13 | 96:21 | 99:5 |
| 99:6 | 108:7 | |
| **medically** [1] | | 51:24 |
| **medication** [1] | 96:8 | |
| **Melindasdiaz** [1] | | |
| 83:4 | | |
| **memory** [3] | | 30:10 |
| 32:9 | 73:18 | |
| **mental** [23] | | 4:13 |
| 37:13 | 41:8 | 41:9 |
| 43:20 | 43:22 | 46:13 |
| 51:4 | 56:14 | 62:20 |
| 65:17 | 65:18 | 66:23 |
| 66:25 | 67:16 | 69:24 |
| 69:25 | 70:3 | 72:17 |
| 76:18 | 94:17 | 94:18 |
| 94:23 | | |
| **mentally** [1] | | 99:14 |
| **mention** [1] | | 6:6 |
| **mentioned** [3] | | 56:21 |
| 57:12 | 101:6 | |
| **messenger** [1] | 6:22 | |
| **metabolized** [1] | | |
| 100:24 | | |
| **methods** [1] | | 80:11 |
| **mic** [2] 27:14 | | 27:16 |
| **microphone** [1] 71:18 | | |
| **midnight** [1] | | 38:1 |
| **might** [8] | | 6:4 |

Case 3:15-cv-01758-N    Document 41-15    Filed 06/29/16    Page 41 of 45    PageID 9801

30:17 41:10 50:25
61:17 70:9 98:23
105:16
Mike [1] 1:16
mind [4] 27:24 28:1
103:6 105:21
Mine [1] 65:15
minister [2] 58:2
58:3
minute [1] 17:10
minutes [11] 24:18
24:21 24:22 24:25
25:4 25:6 25:10
58:12 77:17 78:12
78:16
Miranda [1] 54:20
mirandized [1] 54:22
Mirmesdagh [1]
47:2
misleading [1] 77:6
misled [1] 77:8
missing [1] 82:25
mixing [1] 105:12
modified [1] 22:5
moments [1] 28:12
Monday [1] 41:18
months [1] 70:4
morning [26] 4:5
6:22 7:10 22:11
22:19 30:17 30:21
30:24 31:8 31:13
32:12 33:21 39:2
41:18 43:8 44:13
47:21 48:12 49:8
50:6 53:3 56:5
56:7 85:14 89:25
95:11
most [4] 29:10 30:11
53:9 109:1
motion [21] 3:5
4:4 4:6 5:10
5:12 6:18 35:6
80:3 80:5 80:13
80:17 80:20 80:21
80:24 81:4 82:8
82:17 82:20 83:21
83:22 84:1
move [1] 68:9
Ms [40] 4:23 4:23
5:1 5:4 5:5
5:22 5:22 6:1
6:3 8:5 13:9
13:16 23:6 33:21
33:23 34:6 35:8
37:18 41:17 45:4
46:9 49:3 53:16
55:16 59:13 60:8
64:25 65:24 66:22
73:14 86:1 86:10
86:13 86:14 86:14
87:9 87:19 88:17
89:3 89:16
multiple [1] 10:25
murder [5] 59:25
60:2 62:10 85:9
85:10
must [1] 36:11

mute [2] 82:14 82:18
muted [1] 82:13

-N-

N [4] 2:1 2:5
2:18 4:1
name [16] 8:3
10:5 10:11 19:21
30:2 45:5 57:20
57:21 59:22 65:7
65:20 84:10 86:12
91:8 101:9 105:18
names [1] 105:6
narrowly [1] 5:21
National [2] 105:2
105:4
nature [4] 15:18
15:21 101:23 105:17
NBC [1] 9:12
necessary [1] 49:20
need [10] 6:19
8:16 11:2 26:10
46:5 46:6 64:8
82:4 83:11 109:14
needing [1] 87:2
negotiate [1] 29:9
nervous [1] 101:14
net [1] 76:11
never [4] 34:23
97:12 106:7 106:10
new [2] 5:15 24:3
news [12] 23:21
29:5 30:17 30:21
30:24 31:8 31:13
32:12 36:12 42:6
56:5 71:16
newscast [1] 9:9
next [6] 16:3 25:2
78:12 85:12 85:14
109:17
night [1] 61:2
NO.08898800 [1]
2:3
nobody [2] 54:16
54:20
noon [2] 67:9 67:12
normally [2] 55:23
74:14
Nos [5] 4:17 36:4
75:3 91:14 92:4
notation [2] 47:15
51:19
notations [3] 78:8
78:11 78:15
note [2] 76:19 95:1
noted [1] 47:11
notes [4] 13:20
30:9 33:12 73:15
nothing [8] 11:13
58:9 59:8 62:25
64:2 79:10 87:21
89:21
notice [3] 7:4
18:16 48:24

notified [2] 21:20
68:17
notify [2] 20:7
73:6
now [26] 8:13 10:19
16:6 19:11 22:23
23:10 25:4 47:1
51:18 52:23 53:6
53:8 54:10 56:21
70:1 76:4 79:20
80:2 83:2 87:21
89:4 89:5 95:9
98:13 105:7 109:11
number [12] 4:3
10:5 10:6 10:11
11:18 12:13 19:24
42:19 49:20 67:6
69:6 93:16
numbered [3] 1:16
109:18 4:8
numerous [3] 62:19
64:15 92:18
Nurse [1] 39:22

-O-

O [1] 4:1
oath [1] 49:17
object [9] 45:14
45:23 55:16 59:2
60:10 76:4 85:19
88:20 107:18
objected [1] 107:2
objection [23] 12:19
36:1 36:2 39:14
39:15 44:25 48:18
48:21 61:10 64:4
66:19 76:3 76:10
79:13 79:14 87:6
87:11 88:24 91:25
92:1 106:25 107:10
107:12
obligated [1] 15:6
obligations [1] 49:20
OBO [3] 40:10 40:22
41:1
observation [24]
38:14 40:10 40:13
40:17 40:18 41:6
41:20 46:14 47:18
47:21 51:19 55:9
61:21 62:2 62:12
63:21 67:19 67:19
68:5 68:7 74:4
74:9 75:1 77:13
observe [1] 77:19
obvious [2] 53:15
72:10
obviously [2] 29:14
69:15
occasion [3] 28:10
32:20 43:13
occasions [1] 64:15
occupation [2] 84:12
91:10
occurred [2] 100:5
4:8

off [12] 7:14 19:20
23:2 24:23 30:10
35:20 55:21 84:2
95:6 103:23 109:14
109:15
offense [7] 85:12
85:13 85:15 102:14
103:7 103:9 104:7
offer [8] 12:9 35:24
39:13 44:23 75:21
88:10 88:16 91:23
offered [3] 4:3
76:4 4:13
offering [4] 27:2
75:22 80:11 81:5
office [9] 11:23
17:4 33:25 34:9
35:21 55:25 84:16
84:22 105:3
Office' [1] 54:8
officer [27] 8:6
8:12 8:22 8:23
10:14 24:11 25:1
27:15 34:8 54:5
54:7 57:23 60:2
60:18 61:3 64:9
65:13 66:23 66:25
67:6 68:16 68:17
68:18 73:6 87:1
92:10 106:2
officers [6] 69:11
71:2 71:4 73:3
73:6 92:19
Official [3] 4:1
4:15 4:22
officially [1] 11:8
okey [1] 72:13
once [12] 11:24
24:25 28:20 50:11
50:11 55:1 55:1
68:7 71:5 72:7
73:4 81:3
ONDCP [1] 105:14
one [37] 6:17 13:10
14:21 15:19 19:8
19:16 19:16 19:18
19:23 20:2 22:3
22:3 22:4 22:12
30:15 31:24 42:15
43:1 47:1 52:6
52:14 55:24 58:21
64:8 67:6 72:12
74:7 85:3 85:9
85:16 88:23 101:5
101:7 102:15 102:22
102:24 108:15
ones [3] 24:9 24:10
74:13
online [1] 42:14
open [12] 40:10
40:17 40:21 66:18
67:20 67:21 67:23
68:10 74:2 74:4
74:14 4:8
opinion [31] 6:7
15:5 95:19 95:25
96:3 96:23 97:2
97:10 97:23 97:24

98:1 98:6 98:13
98:17 98:19 99:4
99:9 99:20 100:19
100:20 100:23 102:12
102:18 103:5 103:7
103:8 103:19 103:20
104:1 104:6 105:1
opinions [3] 96:25
100:17 102:15
opportunity [4] 5:14
5:15 10:9 99:1
oral [1] 1:19
order [8] 5:7 5:8
5:21 6:7 6:24
18:24 36:12 90:7
Originally [1] 57:23
outlets [1] 11:14
outside [3] 14:5
53:13 71:21
outstanding [1] 49:20
overarching [1] 99:20
overruled [3] 59:11
59:12 88:24
own [3] 5:17 50:3
106:5
owned [1] 49:19

-P-

P [3] 2:1 2:1
4:1
P-l-a-t-t [1] 91:9
p.m [6] 15:20 18:6
18:8 31:14 78:7
78:8
p.m.] [1] 90:20
package [1] 15:10
packet [2] 12:11
19:1
page [10] 3:2
35:20 36:11 37:10
38:20 39:24 46:22
47:1 62:19 76:23
paint [1] 25:17
paper [1] 6:23
papers [2] 5:12
48:16
paperwork [1] 86:11
paranoid [1] 47:13
Parkland [1] 38:8
Parks [7] 2:9
14:14 83:1 83:25
87:24 88:2 88:4
parole [1] 92:19
part [18] 4:6 12:12
15:10 26:2 27:5
28:22 29:10 30:11
35:10 49:15 60:19
60:20 63:20 69:13
92:15 92:24 103:7
103:25
participate [1] 5:16
particular [15] 20:24
45:25 57:18 58:1
59:18 65:14 67:8
68:17 93:8 101:9

**particulars**

104:25 105:24 108:4
108:21 108:23

particulars [1] 87:22
parties [3] 6:20
  4:6 4:13
partition [2] 27:10
  27:13
party [1] 6:9
pass [3] 33:17 73:10
  96:13
passed [1] 83:8
past [2] 15:1 57:13
Patrick [2] 59:22
  85:7
pattern [1] 87:1
Payne [11] 59:1
  59:8 59:22 61:2
  85:7 85:17 86:3
  87:13 87:19 87:21
  89:3
Payne's [1] 85:21
PCP [12] 101:12 101:12
  101:24 101:25 102:3
  102:5 102:7 102:15
  104:7 105:11 106:5
  106:8
peace [1] 8:22
pending [2] 50:2
  61:6
people [16] 23:17
  29:20 30:6 37:5
  38:5 40:21 42:25
  51:2 51:7 70:8
  77:15 86:17 101:18
  102:3 102:4 106:6
perceives [1] 60:20
percent [3] 43:2
  102:22 102:24
perceptions [1] 87:2
perhaps [5] 16:19
  22:23 51:21 79:19
  87:2
period [1] 5:10
permitting [1] 60:14
person [43] 9:5
  9:16 9:17 9:17
  9:18 14:6 15:3
  27:16 28:11 30:3
  30:13 30:22 41:4
  50:15 51:3 55:10
  55:10 55:12 56:1
  57:17 57:22 58:1
  59:18 59:18 61:20
  61:25 62:7 63:1
  63:1 63:8 63:13
  63:22 66:2 69:20
  75:15 77:16 78:18
  94:9 94:23 95:5
  98:22 102:6 105:16
person's [3] 14:8
  19:21 57:21
personal [1] 77:3
personnel [6] 26:6
  27:19 33:2 51:12
  56:16 95:21
petition [3] 6:5

6:6 6:9
Ph.D [4] 3:12 91:3
  93:2 96:22
Ph.D. [1] 93:1
phase [2] 107:1
  107:3
phenolic [1] 93:11
phone [1] 27:17
photo [1] 97:4
physical [1] 37:13
physically [2] 52:5
  66:3
picked [1] 40:23
Pickett [2] 4:13
  5:9
picture [2] 25:17
  97:12
piece [1] 24:18
PIO [1] 10:10
pipeline [1] 92:20
place [5] 11:8
  24:13 24:16 25:16
  67:13
placed [14] 38:13
  40:25 49:17 71:20
  74:8 74:11 75:15
  75:19 76:24 77:25
  78:3 78:5 78:22
  94:22
plain [1] 96:6
plan [3] 98:13 102:13
  102:17
planning [2] 23:19
  103:5
Platt [17] 3:12
  4:21 4:22 89:24
  91:1 91:3 91:9
  91:10 91:16 92:6
  93:1 93:15 96:12
  96:18 101:5 102:9
  102:25
played [1] 61:1
point [16] 4:13
  11:1 16:18 21:19
  33:8 45:13 59:8
  60:16 60:23 61:10
  71:7 72:8 72:16
  73:4 77:6 82:17
police [14] 8:22
  25:24 25:25 26:2
  47:25 48:2 50:11
  57:23 60:2 61:3
  92:10 92:11 93:17
  106:2
policies [1] 98:20
policy [3] 95:23
  96:2 105:4
polysubstance [2]
  94:20 96:5
population [1] 40:8
portion [1] 64:20
portions [2] 46:5
  4:5
position [3] 5:3
  5:24 34:14

possibility [3] 94:11
  102:8 108:18
possible [8] 18:2
  18:4 25:10 95:7
  97:19 100:1 101:24
  102:21
possibly [5] 94:12
  99:11 99:18 99:21
  103:14
post [1] 17:10
pre-interviews [1]
  94:5
precaution [1] 78:18
precedent [2] 81:5
  82:11
predicate [1] 81:13
prejudice [1] 36:25
preliminarily [1]
  82:2
Preliminary [1] 49:12
prepared [1] 99:14
present [2] 4:2
  86:4
presenting [1] 32:11
Presiding [1] 1:17
press [6] 21:22 51:20
  53:16 53:24 60:19
  87:3
pressure [2] 95:3
  97:21
pretrial [11] 1:9
  12:16 13:1 13:19
  15:11 18:20 19:2
  31:6 64:17 80:19
  82:11
prevalent [1] 101:23
prevention [7] 75:16
  75:19 76:24 77:16
  78:1 78:6 78:22
previous [1] 94:15
previously [1] 12:11
primarily [1] 97:18
print [2] 19:20 30:19
privileged [1] 36:24
probation [1] 92:19
problem [3] 6:15
  63:2 107:20
procedure [2] 95:24
  96:2
procedures [2] 53:21
  98:21
proceed [1] 90:7
proceeding [2] 5:16
  5:17
proceedings [8] 1:15
  1:19 3:3 6:8
  6:18 109:16 4:5
  4:12
proceedings.] [1]
  7:15
process [5] 10:16
  21:2 28:23 58:10
  101:19
processes [1] 33:13

producer [1] 9:9
profession [2] 84:12
  91:11
proffer [4] 62:23
  64:14 85:20 87:7
profile [2] 62:9
  63:8
program [3] 92:17
  92:17 93:9
proper [3] 63:13
  95:20 98:12
properly [1] 77:2
properties [1] 102:1
property [1] 49:19
prosecuting [3] 61:7
  87:13 87:19
protect [1] 36:12
provide [3] 5:14
  13:10 22:10
provided [4] 11:18
  12:6 12:11 61:23
psych [6] 41:12
  41:20 43:4 45:6
  50:24 52:20
psychiatric [5] 38:6
  38:10 39:25 43:9
  68:2
psychiatrist [3] 46:23
  47:7 99:6
psychoactive [1]
  100:25
psychological [1]
  63:1
psychosis [5] 94:17
  94:20 96:6 96:7
  99:11
psychotic [2] 69:15
  70:9
psychotically [1]
  95:17
public [11] 2:17
  8:6 8:11 34:8
  54:7 60:17 61:7
  84:13 84:16 84:21
  87:1
publish [1] 46:4
pull [1] 6:23
pulled [1] 79:2
pulse [1] 95:2
pure [1] 63:19
purposes [5] 12:19
  35:6 64:1 79:12
  106:15
purview [2] 37:3
  62:10
put [10] 18:25 19:23
  20:1 40:22 41:12
  42:13 43:14 63:20
  87:2 106:1
putting [2] 8:19
  71:19

-Q-

qualified [1] 99:13

**records**

questioning [1] 96:11
questions [11] 25:21
  26:9 45:16 45:24
  61:12 62:20 62:24
  73:14 77:6 89:11
  103:25
quite [1] 99:22

-R-

R [2] 2:1 4:1
Rabb [11] 4:14
  5:8 28:13 29:14
  56:22 58:2 58:3
  58:14 60:25 86:9
  86:24
raise [1] 82:10
Ranch [1] 2:11
rate [1] 95:2
reached [1] 58:1
read [11] 5:7 5:20
  6:5 20:21 45:22
  94:10 95:18 96:9
  97:12 97:15 103:8
real [1] 71:11
realized [2] 72:2
  72:5
really [7] 14:3
  25:7 99:9 99:13
  99:17 107:25 108:4
reason [1] 107:1
reasonable [1] 98:22
Rebecca [3] 4:16
  5:2 30:13
recap [2] 56:3
  73:1
receive [3] 10:24
  15:9 58:13
received [3] 10:25
  16:1 58:9
recess [3] 23:5
  64:11 90:18
recognition [7] 92:17
  92:18 93:6 93:9
  105:10 107:24 108:13
recognize [5] 35:10
  38:20 43:19 58:18
  76:17
recollection [5] 16:21
  23:12 31:2 31:18
  78:24
record [29] 1:1
  4:2 7:14 7:16
  8:11 8:12 11:24
  12:9 12:10 14:15
  19:1 21:20 23:2
  23:4 46:4 46:7
  65:21 66:7 66:13
  66:17 66:21 73:22
  84:2 84:3 87:14
  109:14 109:15 4:7
  4:12
recordation [1] 73:15
records [12] 4:5
  12:4 76:1 81:18
  83:3 83:7 93:21
  93:25 95:1 96:4

Case 3:15-cv-01758-N Document 41-15 Filed 06/29/16 Page 43 of 45 PageID 9803

107:24 108:7

recreation [1] 74:7

Recross [4] 3:8
3:14 63:17 102:10

Redirect [5] 3:7
3:14 61:13 61:14
101:3

refer [3] 4:12 11:25
62:25

reference [2] 19:3
64:16

referral [1] 46:23

referred [3] 38:6
38:10 39:24

referring [2] 49:12
66:13

reflect [3] 12:10
66:17 66:21

reflected [2] 87:4
87:5

reflects [1] 4:12

regard [4] 43:24
49:4 60:14 77:23

regarding [2] 10:8
15:15

regardless [1] 82:23

regards [3] 37:17
46:10 46:13

regular [2] 53:21
66:25

rehired [1] 84:21

related [1] 4:15

relates [10] 4:16
20:24 23:6 30:12
33:12 45:18 81:20
81:23 83:24 85:3

Relating [1] 49:12

relations [5] 4:9
8:14 35:22 36:7
37:10

relationship [1] 74:14

relationships [1]
60:18

release [1] 36:22

relevance [6] 55:17
55:17 59:6 60:11
60:12 85:20

relevant [4] 82:19
85:25 86:19 107:22

reliability [1] 108:18

reliable [2] 107:21
108:19

relied [2] 104:17
104:25

relies [1] 82:15

remark [1] 61:16

remember [12] 23:15
29:7 30:19 30:25
34:11 34:12 57:6
57:8 57:17 57:21
57:22 105:13

remembered [1]
32:17

reminded [1] 7:4

report [11] 4:10
4:19 4:22 45:10
87:10 87:12 88:17
91:20 97:12 99:5
106:1

reported [3] 1:19
108:10 4:9

reporter [6] 30:2
30:18 58:3 64:15
64:20 4:22

reporter's [5] 1:1
3:15 80:4 4:7
4:10

reporter.] [1] 53:14

reporters [19] 6:6
6:12 20:13 32:12
41:18 52:4 56:17
60:21 72:10 79:19
80:8 81:12 81:16
82:2 82:22 83:14
83:24 90:6 95:12

reports [2] 33:11
93:20

represent [3] 4:23
85:4 87:18

representation [1]
50:1

represented [1] 15:3

request [16] 5:20
10:24 15:14 15:17
15:18 15:21 17:17
31:7 31:8 37:14
42:4 42:7 50:3
57:23 73:2 86:12

requested [4] 48:3
50:10 56:11 4:5

requests [13] 8:17
10:25 11:16 13:5
14:4 17:7 18:9
18:12 23:7 37:19
56:4 58:13 74:20

require [2] 19:25
34:15

required [2] 53:20
77:16

research [2] 83:11
106:4

resolve [1] 6:15

resolved [1] 90:16

respective [1] 4:13

response [1] 6:4

response.] [1] 97:5

responsibility [1]
55:25

restricted [2] 15:23
15:24

retrieve [1] 68:13

retrieved [1] 66:3

review [4] 76:6
93:16 93:22 93:25

reviewed [3] 20:12
25:13 107:24

reviews [2] 13:8
46:2

Rick [1] 84:24

right [75] 4:10

11:9 11:13 14:1
14:10 14:12 15:16
16:5 17:11 17:18
19:12 20:16 21:6
25:21 34:22 36:20
37:23 40:3 41:13
42:8 42:17 42:18
42:21 44:17 44:19
48:7 49:13 49:25
50:21 50:22 50:23
52:13 54:3 54:17
55:11 56:2 56:25
57:16 58:15 58:17
59:24 60:1 60:3
60:15 61:24 62:15
62:17 64:18 65:25
69:11 69:22 70:9
70:10 71:8 71:9
72:7 72:10 72:11
72:15 72:24 72:25
73:21 75:14 79:8
80:22 82:7 82:21
89:5 94:25 96:18
96:21 102:17 103:14
104:1 105:7

rights [9] 14:8
34:16 36:13 36:18
36:25 37:4 82:15
87:3 87:4

RO [1] 4:2

robbery [1] 62:10

room [12] 25:25
26:6 26:21 27:6
28:15 29:13 29:17
29:21 30:5 30:22
54:25 100:12

row [1] 58:18

rule [2] 67:6 90:22

ruling [5] 79:22
81:6 83:17 90:4
109:10

running [2] 78:9
92:16

-S-

S [2] 2:1 4:1

safety [4] 67:6
71:6 71:11 105:3

Sam [2] 92:22 92:25

sat [3] 24:9 24:10
29:4

saw [8] 72:3 72:6
86:11 94:19 95:4
95:20 97:12 108:7

says [14] 5:9 14:21
15:20 16:7 17:12
43:23 49:16 64:7
79:17 81:14 87:13
101:7 106:20 108:5

SBOT [5] 2:2
2:3 2:10 2:13
2:17

scale [4] 100:1 100:20
104:5 108:6

scenario [1] 22:1

scheduled [1] 59:17

school [1] 13:22

scope [1] 36:22

screen [1] 15:12

screened [1] 38:5

screening [14] 4:11
4:14 38:6 38:8
38:24 39:21 39:22
43:10 43:21 43:22
45:5 62:1 62:8
62:20

search [1] 33:14

second [10] 20:12
24:12 53:12 61:6
62:19 64:8 69:1
69:3 69:13 76:23

section [1] 105:11

see [63] 13:7 15:11
15:19 16:12 24:14
24:15 36:6 36:10
37:15 38:19 38:21
39:21 39:22 39:24
40:3 41:18 44:1
44:4 44:10 44:14
46:9 47:11 47:15
47:16 49:15 51:8
51:9 51:11 51:13
51:17 51:20 52:1
52:24 53:6 53:11
53:21 53:25 54:11
56:23 58:17 60:9
64:9 66:7 70:11
74:20 75:12 77:16
86:3 86:22 89:8
95:15 96:4 96:24
97:6 98:23 101:8
101:22 105:16 105:16
107:21 108:15 109:5
109:7

seeing [4] 22:18
59:14 63:4 101:21

seem [2] 77:8 98:21

sees [1] 68:8

selected [1] 68:14

self [1] 91:12

send [12] 11:1
19:19 20:8 27:14
50:20 51:10 51:25
55:24 56:2 58:6
62:11 63:9

sending [1] 6:22

senior [1] 84:19

senses [1] 101:20

sent [12] 19:23 53:18
56:15 58:4 58:7
61:21 62:1 74:20
93:17 93:18 93:20
93:21

separate [2] 23:16
23:17

sergeant [1] 73:2

series [1] 26:9

serious [1] 41:3

served [1] 92:12

service [5] 65:13
66:23 66:25 67:6
92:14

set [4] 4:4 19:11
24:17 80:21

sets [1] 72:11

setting [1] 71:16

seven [1] 58:12

several [3] 13:5
52:15 92:12

severe [1] 46:24

Shannon [1] 5:1

Sharina [2] 4:1
4:20

Shaun [13] 4:14
5:8 28:13 28:15
29:14 56:22 58:2
58:3 58:4 58:14
60:25 86:9 86:23

sheet [2] 49:5 49:11

sheriff [3] 4:20
21:21 88:18

Sheriffs [2] 8:7
9:3

sheriffs' [6] 11:5
33:25 34:9 35:21
54:8 65:12

shift [1] 79:5

shooting [2] 61:2
101:8

short [1] 93:10

shot [1] 57:22

show [18] 15:10
17:3 35:8 35:19
38:18 43:18 44:1
46:7 46:12 47:1
51:16 59:4 74:16
75:5 75:6 76:16
77:25 91:16

showed [5] 28:12
58:12 58:21 62:16
70:8

shown [1] 78:20

shows [3] 46:25
75:15 86:25

side [10] 10:9 16:10
16:13 27:1 27:16
29:16 29:21 29:23
56:18 73:6

sidearms [1] 26:20

sign [1] 10:12

signature [1] 31:20

signed [13] 19:16
19:19 20:3 20:5
20:6 20:13 31:8
39:1 50:6 55:1
58:8 59:18 70:19

significant [1] 6:15

signs [6] 10:14 55:1
70:8 70:11 97:22
97:25

silly [1] 26:10

single [3] 6:4
41:12 43:3

sit [2] 24:8 83:18

sitting [4] 58:17
66:11 66:14 88:6

situation [2] 25:23
69:10

six [1] 40:4

Case 3:16-cv-01456-N   Document 41-15   Filed 06/29/16   Page 44 of 45   PageID 9804

| | | |
|---|---|---|
| smoked [2] | 102:19 | |
| 104:13 | | |
| smoking [4] | 46:17 | |
| 94:15 | 100:5 | 100:23 |
| Snipes [1] | 1:16 | |
| So-and-so [1] | 10:7 | |
| sobriety [1] | 92:16 | |
| someone [9] | 14:4 | |
| 17:11 | 25:25 | 41:2 |
| 41:24 | 52:1 | 97:8 |
| 99:14 | 106:2 | |
| sometime [3] | 16:20 | |
| 18:6 | 53:2 | |
| sometimes [3] | 10:3 | |
| 30:25 | 42:13 | |
| somewhere [1] | 67:9 | |
| sorry [15] | 22:9 | |
| 31:24 | 32:6 | 34:4 |
| 35:16 | 43:6 | 50:18 |
| 56:24 | 57:7 | 57:11 |
| 74:5 | 81:10 | 104:9 |
| 107:11 | 108:2 | |
| sort [8] | 9:20 | 11:11 |
| 17:16 | 25:17 | 27:18 |
| 27:24 | 81:6 | 99:20 |
| sounds [2] | 59:24 | |
| 101:22 | | |
| source [1] | 49:19 | |
| speak [9] | 13:5 | |
| 14:4 | 18:13 | 18:17 |
| 23:9 | 28:1 | 70:19 |
| 77:4 | 99:14 | |
| SPEAKER [1] | 88:5 | |
| speaks [1] | 27:11 | |
| special [4] | 52:11 | |
| 53:24 | 66:24 | 94:22 |
| specific [3] | 25:20 | |
| 72:17 | 83:8 | |
| specifically [7] | 18:13 | |
| 23:15 | 29:7 | 37:10 |
| 37:17 | 72:8 | 105:5 |
| specifics [1] | 87:23 | |
| speed [1] | 20:19 | |
| spell [1] | 65:20 | |
| spoke [1] | 17:20 | |
| spousal [1] | 49:21 | |
| staff [8] | 41:23 | 47:10 |
| 51:25 | 55:7 | 84:19 |
| 94:16 | 95:10 | 99:6 |
| staffing [1] | 37:12 | |
| stagger [1] | 23:16 | |
| staggered [1] | 57:9 | |
| stamp [1] | 39:22 | |
| stand [3] | 14:11 | |
| 37:6 | 89:6 | |
| standardized [1] | | |
| 92:16 | | |
| standing [1] | 29:24 | |
| start [8] | 13:19 | 18:24 |
| 24:21 | 34:2 | 78:8 |
| 90:3 | 94:6 | 97:6 |
| started [6] | 7:1 | |
| 37:18 | 58:10 | 79:1 |
| 84:17 | 98:20 | |

| | | |
|---|---|---|
| starting [1] | 89:22 | |
| state [26] | 1:4 | |
| 2:7 | 7:16 | 7:20 |
| 8:3 | 8:23 | 12:24 |
| 45:10 | 46:17 | 50:9 |
| 53:15 | 56:14 | 64:7 |
| 64:24 | 65:7 | 72:17 |
| 79:17 | 84:10 | 86:8 |
| 89:20 | 91:8 | 92:13 |
| 92:22 | 92:25 | 103:6 |
| 110:1 | | |
| state's [14] | 4:4 | |
| 5:24 | 12:3 | 12:15 |
| 13:1 | 13:19 | 15:10 |
| 18:19 | 19:2 | 20:12 |
| 31:6 | 64:16 | 74:16 |
| 92:16 | | |
| statement [8] | 26:24 | |
| 32:16 | 33:6 | 40:22 |
| 45:18 | 47:22 | 54:17 |
| 54:18 | | |
| statements [4] | 35:7 | |
| 54:12 | 64:19 | 81:23 |
| states [3] | 44:15 | |
| 45:11 | 64:20 | |
| stating [2] | 15:22 | |
| 20:4 | | |
| station [6] | 9:11 | |
| 20:7 | 25:12 | 42:6 |
| 90:2 | 92:11 | |
| stations [6] | 23:22 | |
| 24:4 | 29:5 | 56:4 |
| 57:24 | 72:12 | |
| status [1] | 46:13 | |
| statute [2] | 5:15 | |
| 83:8 | | |
| stay [11] | 3:5 | 4:6 |
| 4:7 | 4:11 | 4:15 |
| 5:4 | 5:21 | 6:15 |
| 6:18 | 83:19 | 83:24 |
| stayed [1] | 24:23 | |
| Staying [1] | 6:7 | |
| stenography [1] | | |
| 1:19 | | |
| step [5] | 28:15 | 64:5 |
| 79:16 | 89:15 | 106:18 |
| stepped [4] | 28:14 | |
| 28:15 | 28:20 | 29:8 |
| Sterrett [2] | 50:12 | |
| 77:12 | | |
| Steve [2] | 4:13 | |
| 5:9 | | |
| stick [1] | 10:20 | |
| still [6] | 5:11 | 17:19 |
| 40:25 | 79:6 | 100:18 |
| 100:24 | | |
| stimulant-type [1] | | |
| 101:15 | | |
| stop [3] | 22:21 | 28:17 |
| 54:17 | | |
| stopped [2] | 28:9 | |
| 57:15 | | |
| stopping [1] | 73:4 | |
| story [2] | 10:9 | 77:5 |
| straight [1] | 100:11 | |
| strictly [3] | 9:5 | |

| | | |
|---|---|---|
| 10:20 | 30:10 | |
| stuck [1] | 17:4 | |
| studies [1] | 106:10 | |
| stuff [1] | 63:4 | |
| styled [1] | 4:7 | |
| subject [2] | 87:25 | |
| 88:3 | | |
| submit [2] | 87:10 | |
| 93:15 | | |
| substantial [1] | 87:3 | |
| such [3] | 22:25 | 79:23 |
| 101:12 | | |
| suffering [2] | 46:24 | |
| 69:21 | | |
| suicidal [1] | 68:1 | |
| suicide [19] | 4:17 | |
| 62:11 | 68:4 | 68:5 |
| 68:6 | 68:8 | 72:24 |
| 75:10 | 75:13 | 75:15 |
| 75:19 | 76:24 | 77:13 |
| 77:16 | 77:25 | 78:5 |
| 78:18 | 78:22 | 79:1 |
| suit [1] | 71:20 | |
| Suite [1] | 2:14 | |
| sum [1] | 56:3 | |
| summarized [1] | | |
| 87:9 | | |
| suppose [3] | 40:7 | |
| 43:5 | 81:12 | |
| suppress [13] | 4:4 | |
| 5:10 | 35:6 | 80:3 |
| 80:5 | 80:14 | 80:21 |
| 80:25 | 81:4 | 82:8 |
| 82:17 | 82:20 | 83:22 |
| surprised [1] | 25:5 | |
| suspects [1] | 36:25 | |
| sustain [1] | 61:9 | |
| Sustained [1] | 14:17 | |
| sworn [5] | 7:24 | |
| 8:22 | 65:3 | 84:6 |
| 91:4 | | |
| symptoms [1] | 97:25 | |
| synesthesia [2] | 101:19 | |
| 104:18 | | |
| system [7] | 44:17 | |
| 44:20 | 51:9 | 51:9 |
| 51:13 | 100:25 | 101:14 |

| -T- | | |
|---|---|---|
| taken.] [1] | 23:5 | |
| taking [2] | 69:1 | |
| 69:7 | | |
| talks [1] | 36:21 | |
| tank [14] | 67:23 | 67:25 |
| 68:1 | 68:1 | 68:7 |
| 68:10 | 68:10 | 68:17 |
| 71:4 | 74:2 | 74:4 |
| 74:5 | 74:6 | 74:20 |
| tapes [8] | 80:11 | 81:6 |
| 81:14 | 81:16 | 82:5 |
| 82:20 | 82:24 | 83:18 |
| task-oriented [1] | | |
| 56:1 | | |
| taught [1] | 92:18 | |

| | | |
|---|---|---|
| teachers [1] | 92:20 | |
| teaching [1] | 92:20 | |
| television [6] | 9:9 | |
| 56:4 | 61:1 | 78:22 |
| 95:12 | 101:7 | |
| temperature [1] | 95:2 | |
| ten [2] | 70:4 | 98:9 |
| term [1] | 69:14 | |
| test [1] | 106:7 | |
| testified [11] | 7:24 | |
| 33:24 | 45:14 | 45:19 |
| 45:25 | 65:3 | 75:9 |
| 84:6 | 91:4 | 104:3 |
| 107:16 | | |
| testify [6] | 81:15 | |
| 82:3 | 82:23 | 83:14 |
| 86:1 | 107:2 | |
| testifying [2] | 73:16 | |
| 102:13 | | |
| testimony [11] | 3:6 | |
| 3:9 | 3:11 | 3:12 |
| 64:6 | 79:15 | 79:18 |
| 80:7 | 96:11 | 107:22 |
| 108:11 | | |
| testing [1] | 92:16 | |
| Texarkana [1] | 93:17 | |
| Texas [21] | 1:4 | |
| 1:6 | 1:18 | 2:6 |
| 2:7 | 2:11 | 2:15 |
| 2:19 | 7:17 | 8:23 |
| 92:9 | 92:13 | 92:14 |
| 92:21 | 93:4 | 93:7 |
| 110:1 | 4:2 | 4:20 |
| 4:24 | 4:26 | |
| Thank [8] | 7:2 | |
| 33:22 | 64:6 | 79:8 |
| 79:15 | 102:9 | 106:18 |
| 106:21 | | |
| themselves [4] | 27:19 | |
| 30:18 | 41:10 | 77:4 |
| theory [1] | 60:13 | |
| they've [1] | 10:4 | |
| thinking [1] | 62:1 | |
| third [6] | 49:11 | 52:9 |
| 52:11 | 52:17 | 73:24 |
| 89:9 | | |
| thought [9] | 28:5 | |
| 69:5 | 70:9 | 82:18 |
| 89:24 | 98:5 | 100:10 |
| 100:11 | 108:3 | |
| three [8] | 17:14 | 29:20 |
| 46:18 | 59:17 | 59:19 |
| 78:12 | 93:10 | 98:8 |
| through [18] | 11:9 | |
| 18:20 | 22:22 | 27:15 |
| 27:16 | 31:5 | 36:4 |
| 53:21 | 55:3 | 75:3 |
| 82:5 | 90:22 | 91:14 |
| 92:4 | 92:21 | 97:21 |
| 108:14 | 109:6 | |
| throughout [1] | 28:25 | |
| Thursday [2] | 7:5 | |
| 90:16 | | |
| timely [2] | 31:7 | |
| 31:9 | | |
| timeout [1] | 83:10 | |

| | | |
|---|---|---|
| times [1] | 24:19 | |
| today [13] | 5:18 | |
| 7:6 | 10:21 | 33:24 |
| 52:24 | 62:18 | 66:8 |
| 90:5 | 90:6 | 90:9 |
| 103:19 | 104:3 | 105:8 |
| together [2] | 30:23 | |
| 31:16 | | |
| tomorrow [1] | 7:9 | |
| too [2] | 50:16 | 50:19 |
| took [10] | 24:13 | 25:16 |
| 28:18 | 56:17 | 56:20 |
| 70:22 | 86:15 | 93:11 |
| 93:12 | 100:11 | |
| top [3] | 17:2 | 21:8 |
| 103:23 | | |
| total [1] | 70:7 | |
| totally [6] | 28:16 | |
| 45:16 | 59:3 | 62:10 |
| 77:6 | 88:21 | |
| towards [2] | 71:12 | |
| 100:2 | | |
| tower [13] | 19:24 | |
| 42:19 | 52:8 | 52:17 |
| 56:18 | 56:20 | 65:15 |
| 65:16 | 66:23 | 73:24 |
| 73:25 | 77:12 | 89:10 |
| track [1] | 25:3 | |
| Traffic [1] | 105:3 | |
| trained [5] | 51:7 | |
| 51:12 | 51:24 | 51:25 |
| 55:9 | | |
| training [3] | 66:24 | |
| 67:3 | 93:9 | |
| transcription [1] | | |
| 4:4 | | |
| transport [1] | 68:19 | |
| transposing [1] | 101:20 | |
| trauma [1] | 41:9 | |
| treated [1] | 96:7 | |
| trial [5] | 37:6 | 50:1 |
| 89:6 | 98:14 | 107:1 |
| trickled [1] | 16:15 | |
| Troy [1] | 5:9 | |
| true [2] | 34:23 | 4:4 |
| truly [1] | 4:12 | |
| try [3] | 87:14 | 89:8 |
| 107:6 | | |
| trying [7] | 30:19 | |
| 30:25 | 60:9 | 60:16 |
| 99:3 | 102:25 | 103:1 |
| TV [1] | 20:7 | |
| twice [1] | 50:10 | |
| two [14] | 6:11 | 19:13 |
| 20:24 | 22:3 | 23:14 |
| 23:16 | 23:17 | 23:21 |
| 29:7 | 46:18 | 85:10 |
| 85:16 | 100:22 | 100:22 |
| two-fold [1] | 80:12 | |
| type [4] | 26:2 | 50:14 |
| 104:20 | 107:4 | |
| types [2] | 101:13 | |
| 101:25 | | |
| Typically [3] | 10:2 | |
| 27:14 | 31:15 | |

Case 3:15-cv-01758-N Document 41-15 Filed 06/29/16 Page 45 of 45 PageID 9805

**-U-**

| | | |
|---|---|---|
| unable [1] | 49:17 | |
| uncertain [1] | 99:25 | |
| under [24] | 5:17 | |
| 36:6 | 40:21 | 40:22 |
| 40:25 | 41:24 | 49:17 |
| 55:9 | 94:12 | 97:9 |
| 99:18 | 99:23 | 100:18 |
| 102:4 | 102:7 | 102:14 |
| 102:21 | 103:9 | 104:6 |
| 106:2 | 106:6 | 107:16 |
| 107:17 | 108:6 | |
| understand [2] | 61:10 | |
| 103:22 | | |
| understandings [1] | | |
| 34:16 | | |
| uniformed [1] | 54:11 | |
| unique-type [1] | 101:12 | |
| unit [9] | 36:7 | 36:8 |
| 38:10 | 52:12 | 52:18 |
| 52:20 | 67:1 | 67:16 |
| 94:22 | | |
| units [2] 52:14 | 52:15 | |
| University [3] | 92:9 | |
| 92:22 | 93:13 | |
| UNKNOWN [1] | | |
| 88:5 | | |
| unless [2] | 22:23 | |
| 85:20 | | |
| unusual [1] | 24:20 | |
| up [52] | 5:12 | 5:19 |
| 18:25 | 19:22 | 20:1 |
| 20:20 | 20:21 | 24:11 |
| 24:17 | 24:25 | 27:16 |
| 28:12 | 31:6 | 37:18 |
| 40:3 | 40:23 | 44:19 |
| 51:11 | 51:20 | 52:2 |
| 52:3 | 53:5 | 53:11 |
| 53:16 | 53:25 | 54:23 |
| 56:3 | 58:12 | 58:21 |
| 59:15 | 60:9 | 60:25 |
| 60:25 | 62:11 | 62:22 |
| 71:17 | 71:23 | 72:5 |
| 73:1 | 86:3 | 86:16 |
| 86:18 | 86:22 | 86:22 |
| 87:25 | 88:3 | 89:22 |
| 90:1 | 96:7 | 98:3 |
| 103:2 | 106:19 | |
| update [1] | 43:13 | |
| updated [1] | 53:8 | |
| upset [2] | 28:12 | |
| 40:24 | | |
| upside [2] | 95:8 | |
| 98:3 | | |
| upstairs [2] | 25:1 | |
| 25:1 | | |
| used [1] 95:6 | | |
| using [2] | 81:16 | |
| 94:9 | | |
| usually [8] | 10:6 | |
| 16:4 | 19:19 | 19:22 |
| 20:8 | 30:18 | 38:21 |
| 108:22 | | |

**-V-**

| | | |
|---|---|---|
| V-a-r-g-h-e-s-e [1] | | |
| 45:6 | | |
| Valdez [2] | 4:20 | |
| 88:18 | | |
| Varghese [1] | 45:5 | |
| Vernon [1] | 89:5 | |
| versus [2] | 7:17 | |
| 83:4 | | |
| Vickery [1] | 49:8 | |
| Vicki [1] | 16:7 | |
| video [1] | 93:18 | |
| videotapes [2] | 94:1 | |
| 109:4 | | |
| viewing [1] | 101:6 | |
| violate [2] | 37:4 | |
| 69:6 | | |
| visit [9] | 68:18 | 68:20 |
| 68:23 | 69:2 | 70:14 |
| 70:15 | 70:22 | 73:7 |
| 73:7 | | |
| visitation [5] | 53:22 | |
| 68:19 | 70:24 | 71:5 |
| 71:14 | | |
| vital [1] 97:22 | | |
| Vol [2] | 3:2 | 4:3 |
| volume [2] | 1:2 | |
| 4:7 | | |
| volume.] [1] | 109:18 | |
| voluntarily [3] 28:5 | | |
| 29:2 | 45:18 | |
| voluntariness [3] | | |
| 81:23 | 82:4 | 82:24 |
| voluntary [7] | 26:18 | |
| 26:24 | 32:16 | 33:5 |
| 81:7 | 107:3 | 107:7 |
| VS [1] | 1:5 | |

**-W-**

| | | |
|---|---|---|
| wait [1] 55:14 | | |
| waited [1] | 71:21 | |
| waive [2] | 81:21 | |
| 82:7 | | |
| walked [2] | 86:10 | |
| 86:15 | | |
| wall [4] 17:10 | 17:13 | |
| 17:17 | 17:19 | |
| wants [7] | 6:11 | |
| 9:16 | 55:2 | 58:5 |
| 60:18 | 64:22 | 81:21 |
| ward [4] 41:13 | 41:20 | |
| 43:4 | 50:24 | |
| warnings [1] | 54:20 | |
| watch [2] | 62:11 | |
| 72:24 | | |
| Water [1] | 2:11 | |
| weapons [1] | 26:21 | |
| wearing [1] | 26:20 | |
| website [3] | 35:21 | |
| 37:10 | 105:14 | |
| Wednesday [2] 90:11 | | |
| 90:14 | | |
| weigh [1] | 61:5 | |
| west [13] | 19:24 | |

| | | |
|---|---|---|
| 42:19 | 52:8 | 52:17 |
| 56:18 | 56:20 | 65:15 |
| 65:16 | 66:23 | 73:24 |
| 73:24 | 77:12 | 89:10 |
| wet [10] 46:17 | 46:20 | |
| 94:9 | 94:13 | 95:6 |
| 95:6 | 97:9 | 97:25 |
| 99:19 | 103:10 | |
| WFAA [3] | 5:1 | |
| 30:23 | 30:24 | |
| whereas [1] | 67:24 | |
| whole [5] | 6:16 | |
| 12:10 | 75:22 | 77:5 |
| 82:3 | | |
| wing [2] 56:18 | 56:18 | |
| wish [1] 67:24 | | |
| withdraw [1] | 76:10 | |
| withheld [1] | 36:12 | |
| within [7] | 6:10 | |
| 37:3 | 58:11 | 62:10 |
| 98:7 | 98:9 | 102:20 |
| without [2] | 19:18 | |
| 50:2 | | |
| witness [33] | 7:19 | |
| 21:18 | 21:24 | 22:16 |
| 33:17 | 35:16 | 45:14 |
| 45:19 | 45:24 | 46:6 |
| 61:4 | 63:25 | 64:3 |
| 65:22 | 66:18 | 73:10 |
| 76:5 | 76:7 | 76:8 |
| 77:1 | 77:5 | 77:11 |
| 77:14 | 79:11 | 79:25 |
| 87:7 | 90:23 | 90:25 |
| 96:13 | 103:18 | 106:14 |
| 107:4 | 4:15 | |
| witnessed [2] | 10:13 | |
| 20:5 | | |
| witnesses [1] | 82:5 | |
| woman [1] | 55:25 | |
| word [2] 99:22 | 103:13 | |
| words [2] | 10:19 | |
| 53:20 | | |
| worked [4] | 9:9 | |
| 9:12 | 9:12 | 69:24 |
| works [3] | 16:9 | |
| 47:9 | 54:1 | |
| wrap [1] 86:22 | | |
| writ [3] 5:17 | 5:18 | |
| 6:9 | | |
| writing [1] | 4:6 | |
| written [2] | 30:9 | |
| 33:11 | | |
| wrong [3] | 6:14 | |
| 82:9 | 82:22 | |
| wrote [2] | 91:20 | |
| 94:24 | | |

**-X-**

| | | |
|---|---|---|
| X [2] | 110:1 | 110:2 |

**-Y-**

| | | |
|---|---|---|
| y'all [6] 6:19 | 54:23 | |
| 70:23 | 83:11 | 89:8 |
| 103:24 | | |
| y'all's [1] | 38:1 | |

| | | |
|---|---|---|
| year [4] 8:9 | 33:25 | |
| 53:7 | 70:1 | |
| years [3] | 9:10 | |
| 34:19 | 70:7 | |
| yellow [1] | 36:11 | |
| yet [1] 37:6 | | |
| you-all [1] | 29:17 | |
| Young [1] | 84:20 | |
| yourself [5] | 23:10 | |
| 29:18 | 30:5 | 30:15 |
| 106:10 | | |

**-Z-**

| | | |
|---|---|---|
| Zmud [2] | 5:1 | |
| 5:1 | | |
| zoom [1] | 15:12 | |

**-[-**

| | | |
|---|---|---|
| [Bench [1] | 53:13 | |
| [Brief [1] | 23:5 | |
| [By [31] 12:3 | 13:9 | |
| 13:15 | 14:18 | 20:19 |
| 21:9 | 21:25 | 23:6 |
| 32:8 | 35:8 | 35:19 |
| 36:6 | 38:18 | 39:21 |
| 42:6 | 43:18 | 44:13 |
| 45:4 | 46:9 | 49:3 |
| 53:15 | 55:21 | 59:13 |
| 65:24 | 66:22 | 75:5 |
| 76:16 | 77:15 | 89:3 |
| 91:16 | 92:6 | |
| [Court [2] | 13:8 | |
| 46:2 | | |
| [Defendant [1] 4:2 | | |
| [Defendant's [15] | | |
| 35:3 | 35:17 | 36:4 |
| 38:16 | 39:19 | 43:16 |
| 45:2 | 48:19 | 49:1 |
| 75:3 | 76:14 | 88:14 |
| 89:1 | 91:14 | 92:4 |
| [No [1] | 97:5 | |
| [Nods [1] | 78:10 | |
| [Off [2] 23:4 | 84:3 | |
| [Pause [1] | 7:15 | |
| [phonetic] [1] | 83:4 | |
| [Recess [2] | 64:12 | |
| 90:19 | | |
| [State's [2] | 12:1 | |
| 12:22 | | |
| [Whereupon [1] | | |
| 109:16 | | |

**-`-**

| | | |
|---|---|---|
| `08 [5] | 34:3 | 34:5 |
| 44:5 | 45:8 | 49:24 |
| `92 [1] | 92:11 | |
| `99 [3] | 84:17 | 92:11 |
| 92:15 | | |

**-I-**

| | | |
|---|---|---|
| I [5] | 1:4 | 1:5 |
| 1:5 | 1:6 | 1:6 |