76207

REPORTER'S RECORD

VOLUME 42 OF ___

CAUSE NO. F08-24667-Y

| THE STATE OF TEXAS | IN THE CRIMINAL DISTRICT |
| VS. | COURT NO. 7 |
| JAMES GARFIELD BROADNAX | DALLAS COUNTY, TEXAS |

PRETRIAL HEARING

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2010

Louise Pearson, Clerk

**ON THE 30TH DAY OF JULY, 2009,** the following proceedings came on for hearing in the above-entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.

Proceedings reported by oral stenography.

— — — — —

SHARINA A. FOWLER, CSR
214-653-5696

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO.08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas   75207
214-653-3600

FOR THE STATE OF TEXAS


DOUG PARKS
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120

BRAD LOLLAR
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 450
Dallas, Texas   75201
214-384-8178

KERI MALLON
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
131 N. Industrial Blvd., LB2
Dallas, Texas   75270-4399
214-653-3600

FOR THE DEFENDANT

SHARINA A. FOWLER, CSR
214-653-5696

INDEX

PAGE VOL

Proceedings, July 30, 2009

APPEARANCES                                    2

BATSON CHALLENGE HEARING                       5

COURT REPORTER'S CERTIFICATE                   48

INDEX OF EXHIBITS

** RO - Record Only                    ## DO - Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|---|---|---|---|---|
| State's: | | | | |
| [None.] | | | | |
| Defendant's | | | | |
| No. 1 | Jury Questionnaires of Accepted Jurors | 17 | 18 | |
| No. 2 | Qualified Juror Questionnaires | 17 | 18 | |
| No. 3 | Voir Dire Examination of Robert Patterson | 22 | 22 | |
| No. 4 | Voir Dire Examination of Kelly McDonald | 21 | 22 | |
| No. 5 | Robert Patterson Jury Questionnaire | 25 | 25 | |

SHARINA A. FOWLER, CSR
214-653-5696

Page 1

REPORTER'S RECORD
VOLUME ___ OF ___
CAUSE NO. F08-24667-X

THE STATE OF TEXAS        |    IN THE CRIMINAL DISTRICT

VS.                       |    COURT NO. 7

JAMES GARFIELD BROADNAX   |    DALLAS COUNTY, TEXAS

PRETRIAL HEARING

ON THE 30TH DAY OF JULY, 2009, the following proceedings came on for hearing in the above-entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.
Proceedings reported by oral stenography.
- - - - -

Page 2

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO. 08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas  75207
214-653-3600

FOR THE STATE OF TEXAS


DOUG PARKS
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120
BRAD LOLLAR
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 453
Dallas, Texas  75201
214-384-8178

KERI MALLON
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
133 N. Industrial Blvd., LB2
Dallas, Texas  75270-4399
214 653 3600

FOR THE DEFENDANT

Page 3

INDEX

|                                  | PAGE | VOL |
|----------------------------------|------|-----|
| Proceedings, July 30, 2009       |      |     |
| APPEARANCES                      | 2    |     |
| BATSON CHALLENGE HEARING         | 5    |     |
| COURT REPORTER'S CERTIFICATE     | 48   |     |

Page 4

INDEX OF EXHIBITS

** RO – Record Only          ## DO – Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|--------|-------------|---------|----------|------|
| State's: | | | | |
| (None.) | | | | |
| Defendant's | | | | |
| No. 1 | Jury Questionnaires of Accepted Jurors | 17 | 18 | |
| No. 2 | Qualified Juror Questionnaires | 17 | 18 | |
| No. 3 | Voir Dire Examination of Robert Patterson | 22 | 22 | |
| No. 4 | Voir Dire Examination of Kelly McDonald | 21 | 22 | |
| No. 5 | Robert Patterson Jury Questionnaire | 25 | 25 | |

P R O C E E D I N G S

Page 5

[Defendant present; 8:58 a.m.]

THE COURT: This is the State of Texas versus James Garfield Broadnax. This is Cause No. F08-24667. We are in session this morning on an issue of a Batson challenge that specifically pertains to one juror and one juror only, Robert Patterson. He was Juror No. 930 and 37 on the list of qualified jurors of 48.

The Court asked for a briefing on this in lite of the recent Greer decision and in lite of Miller-El, Miller-El being 545 U.S. 240-41. The Greer decision being 2009, West Law of 1591694.

The Court notes the States contention that Greer is not necessarily met or given its procedural posture as far as being appealed. Nevertheless, the Court does accept the logic in the Greer case, particularly as it quotes the Miller-El case, which, of course, is mandatory authority.

As I said the other day, this hearing has nothing to do with the Court's personal and professional regards for all of the lawyers in this case from both sides, which is as high as could be. I have considered the briefs on this case which were excellent from both sides. Based on that, there's some preliminary decisions that I've made as far as what I don't think is really an

Page 6

issue.

In favor of the State, I mean, it is clear that Mr. Patterson did previously serve as a foreman on two occasions, one of those occasions being where a not guilty verdict was returned. And, also, that Mr. Patterson, on his own, came up with the notion of jury nullification, which is rather striking.

On the other hand, favoring the Defense is the fact that one hundred percent of the African-Americans in the strike range were struck and this resulted in a disproportionate number of African-Americans being struck from the panel.

Quoting now in the Miller-El Case, 545 U.S., 240-241, relied on the reversing of that case or a Batson contention. The prosecutors used a preemptory strikes against 10 out of 11 available African-American veniremen was, quote, remarkable, and not likely caused by happenstance. That's what the case said there.

So the Court concludes initially that this is a very close case frankly. I think it turns -- or at least that's the way I'm going to come out on it -- on the issue of comparative juror analysis, which the State didn't really address in a significant way in their brief, but to which the Defense did. So I'll hear from the State as to that exact point, because how I come out

Page 7

on this I think is going to be what decision I make.

Whoever is arguing for the State.

MR. ALEX: That would be me, Your Honor. I understand the Court's preliminary rulings, Judge. I do have one other question. Is the Court going to entertain any live testimony? I know we talked about --

THE COURT: No, sir.

MR. ALEX: Thank you, sir.

To go strictly to the point of juror -- a comparative analysis, Judge. We believe that brief did cover comparative analysis in that when we analyzed the five reasons that we struck Mr. Patterson with every other juror, if there are no -- An example is the very first reason that we struck Mr. Patterson was because of his statement to the Defense when they were asking the questions, "I guess I would put the death penalty in the same category as I would put abortion. I te issue with it. I don't believe that I'm in favor of the death penalty. I don't believe that I'm in favor of abortion, but each is the law and I accept each of them."

That would be in order of importance. That would be the very first reason we would strike Mr. Patterson, because he said he is not in favor of the death penalty. In our brief, when we say that no one else on this jury, that is currently on this jury, had

Page 8

expressed the notion that they were not in favor of the death penalty, that's the comparative analysis. It is comparing the juror that we struck with everyone else.

We struck everyone within the strike line who had said that very same thing, whether it was on their questionnaire or whether it was during live voir dire. That analysis is about as clear as you can get. It's not like we can go back and say, well, we found this juror that said that, and we found this -- There is none, and that's the analysis.

Judge, really that could end the inquiry completely because if you think about it, if I'm trying a death penalty case, I've got to use my preemptory to strike people who are not favorable to my case. If a guy says, "I'm not in favor of the death penalty," it would be ridiculous for me to leave him on the jury. What's even more important -- I think what's really important to note is, it wasn't when we were asking the questions.

If the inquiry, based on Miller-El and Greer, is within its pretext, which is the basis of the analysis. We have to look at the fact that when we were talking to Mr. Patterson about this issue, we accepted what he put on paper. We didn't go ask him -- We didn't start asking him a bunch of questions to get him off the jury, which we could have, if he had said something we

Page 9

didn't like to that degree. We didn't.

When we passed Mr. Patterson on that particular issue, he was fine. We didn't make a motion to strike him for cause. It wasn't until after the Defense started asking the questions. Actually, it wasn't even in response to a question on this particular issue, they were just giving the juror a statement saying that, "Everybody sitting on this jury is going to believe in the death penalty, everybody is going to be in favor of it, so when you go back there you can't skip over these steps."

Mr. Patterson interrupted Mr. Lollar in the middle of him saying it and he said, "Excuse me, sir, but I don't believe I'm in favor of the death penalty." You have to te that in context, Judge. If you were to find that it was pre-textual -- at least on this one issue, which I think is the most important issue -- then you would also have to find that we went after him when we were talking to him, which we did not. It came out unexpectedly, I'm sure, when Mr. Lollar was talking to him, and he was very clear about it and that was that he's not in favor of the death penalty.

It would be -- It would -- An analogy would be if I was trying a possession of marijuana case and a guy says, "Well, I believe pot should be legal,

Page 10

but, you know what, I could follow it," I would use a preemptory on that guy everyday all day, regardless of his race, if he's green, blue or black.

It is the same thing we're doing here, Judge. The other factors -- You're going to find that there's other people --

THE COURT: Hold on. Before we leave there, would you address the Defense contentions that are on Page 3 of their brief?

MR. ALEX: I certainly will, Judge. The Defense contentions are comparing apples to oranges. What the Defense is saying is that, okay, here are other people who are like-minded with Mr. Patterson, but there's nothing that could be further from the truth, Judge. There's absolutely nobody else on this jury that -- What they cite to you here are people who said they're a 5 on a scale of 1 to 10. There's a whole lot of people who were a 5 on a scale of 1 to 10. That's one of the reasons we used.

Then they cite to you other reasons that are not the reason we struck the jury. No where on Page 3 does the Defense claim that we left someone on the jury who said they were not in favor of the death penalty. Now, they tried to sum up the fact that there are other 5's on the jury, there are other people

Page 11

likewise.

Kelly McDonald stated she was a 5 on the scale. On her questionnaire she had no strong feelings one way or the other, and if the law allows the death penalty, the law should be followed. Ms. McDonald never said she was not in favor of the death penalty. There's a huge distinction there.

They also quote Juror No. 11, John Cantwell. He was a 5 on the scale. Again, we're not striking Mr. Patterson because he was a 5 or a 6 or anything else. In his questionnaire he said the death penalty is an inappropriate penalty in some cases.

How does that compare with what Mr. Patterson said? Mr. Patterson said he was not in favor. Juror No. 12, Emily Blevins, was a 5 on the scale. Apples to oranges, Judge.

With the two on the questionnaire, as well as the other jurors listed here, indicated that she believed the death penalty was appropriate in some cases and she could impose it. That's a different statement in what Mr. Patterson said. He didn't say he believed the death penalty was appropriate, he said he wasn't in favor of it and he didn't believe in it. So that comparison is not comparing the reason we struck Mr. Patterson with these other jurors.

Page 12

That's the first and primary reason Mr. Patterson was struck. We go down and list the five reasons he was struck, Judge. The second in significance would be the jury nullification issue --

THE COURT: I've already --

MR. ALEX: I won't go into that.

The third one would be when Ms. Handley was questioning the juror and he said -- I'll quote for the record -- "If someone grew up in a neighborhood, crime infested, no parental or adult control, had been involved in a gang early on, the only family they knew, and simply had a history of criminal activity, there had been no attempts of anyone trying to help this individual, I cannot blame that individual one hundred percent for the circumstances they find themselves in."

That was in response to an open-ended question by Ms. Handley asking, "Well, what would you think would be sufficiently mitigating to save someone's life."

Now, that's the third reason as to what we are saying we --

THE COURT: How do you distinguish what Mr. Patterson said from what Mr. Stinson said?

MR. ALEX: Again, Judge, there are other jurors who said that, you know, a person's background

Page 13

would come into play when they are thinking about mitigation. We're not disputing that. But there is no one else who looked right into the Defense's trial strategy notebook to an open-ended question and hit all the points that they're going to try to make in the trial.

If you look at the voir dire that they've done consistently, you look at the questions they asked the witnesses, even in the pretrial hearing, each one of these points that Mr. Patterson came up with on his own is right out of their trial strategy notebook. And there's no one on the jury that fit all these points in exactly the way they're going to present their case. That would get any prosecutor's hair standing up on their head if they already know that the juror told you, "I will save somebody's life under these circumstances," and we know that counsel is going to get all of these -- I don't think they're all going to be proven up, but I know that the issue that the jury already has in mind -- That's the scenario where I would save someone's life.

Now, let's compare that to what they said other jurors have said. Other jurors have said they would consider that in mitigation, but none of those in response to an open-ended question about what it would te for your to save someone's life, hit each and every one

Page 14

of those points right out of his notebook. If they did, Judge, my point being, first and foremost, is when we start Miller-El, the Court says -- the Court of Criminal Appeals has held it was fair treatment is not shown when the State strikes a juror because of multiple characteristics and does not strike jurors of other races who shared one or more of those characteristics.

Now, there are going to be at least two of these characteristics that other jurors share. What I'm saying to the Court is, if those were the -- if that was the only reason that Mr. Patterson was given, we in all likelihood would not have struck him because we didn't strike other people who said that because -- The confidence that I have in my case, I think I'm going to be able to dispute that notion, but that's -- If that was the only thing he had said, there's a good chance we wouldn't have struck Mr. Patterson.

But when you combine that with the very first reason, and the very first reason is the only one that I would sit back and say, "We can't leave Mr. Patterson on the jury," but these are other things that he said that as Miller-El has said that when they share one or more of those characteristics, the State can use a preemptory strike. And that's the other point that I wanted to make.

Page 15

And then if we go to the fourth reason, Judge, the fourth reason, I think is also a reason that's shared with other folks. That is he was -- he was -- Mr. Patterson was disagreeing with the notion that punching someone in the face is a criminal act of violence. I will agree that there were other jurors who said the same thing. But, again, if we look at Miller-El, Miller-El said that, "You know what, if there's a couple of reasons that other people shared, that's not a problem."

It's if there are multiple reasons, they all don't share those multiple reasons, that is not evidence of a pre-textural strike that Batson would not allow.

Judge, just to sum up the comparisons, we believe that, one, two and five, the reasons. First being, him not being in favor. Two and five, which the judge has ten note of already, the jury nullification. And, five, being the foreman of a jury that found someone not guilty of murder are not shared by anyone else. And under Miller-El, that's enough.

Because we cited either reasons that other people have shared doesn't mean that it's a pre-textual strike. All it means is, if those were the only two reasons, he probably wouldn't have been struck. But

Page 16

we've got to include those reasons because it all adds up to who Mr. Patterson is and the reason -- ultimate reasons he was struck for cause as a preemptory.

Under Greer, I think the law cited in Miller-El is pretty clear and I think the record is pretty clear. The biggest distinction between this case and Greer is, they didn't really have a record. In Greer, the record was very sparse. The records did not support the prosecutors' said reason for the strike.

Here, the record is as clear as it can be. We have the record, they didn't have the record. We can check it to see whether or not the reasons we're telling the Court are supported by the record, and they are supported by the record for reasons one, two and five are shared by no one else.

I would sum up for the Court that reason one alone is enough for any prosecutor trying a death penalty case to strike a person, regardless of their color, who says to the Court and says to the lawyers that they don't believe in the death penalty. In comparison, there is no other juror who was not struck that said that.

Thank you.

THE COURT: Before you begin, Mr. Lollar, I would also note for the record that I agree with your

## Page 17

footnote two, that any of the factors listed in the Miller-El case or Greer case have no application here, that is, "Whether the party used a jury shuffle in a manner that appeared to be racially discriminatory, whether the party employed a formal policy to exclude minorities from a jury trial at the time of trial."

That obviously did not te place here. "And whether the party failed to question the challenged venire member," when obviously it was rigorously questioned. So none of those factors apply.

Mr. Lollar.

MR. LOLLAR: Judge, since the Court has provided comparison --

I guess we should designate this as Patterson Batson Hearing Defense Exhibit No. 1?

[Defendant's Exhibit Nos. 1 through 2 were marked for identification.]

MR. LOLLAR: We would offer for the purposes of the Court's consideration in this hearing, Defense Exhibit No. 1, which are the jury questionnaires of the jurors that have been accepted by both sides.

Defendant's Exhibit No. 2 is the jury questionnaires of the balance of the group of 48 that was qualified. We'd ask the Court to te into consideration all of the jury questionnaires, not only for this

## Page 18

hearing, but also in regard to the other previous Batson hearing we had with Judge Parker and Judge Baird.

Obviously, in our previous discussion with Judge Parker and Judge Baird, both sides approved the questionnaires. The Court -- The judges approved the questionnaire and we'd ask the Court to te knowledge that they did that.

THE COURT: Any objection?

MR. ALEX: No, sir.

MR. LOLLAR: And, Judge, again; our objections for the record are --

THE COURT: Those are admitted.

[Defendant's Exhibit Nos. 1 through 2 were admitted into evidence.]

MR. LOLLAR: -- under Article 35.261 of the Texas Code of Criminal Procedure. The Supreme Court's cases and Miller-El versus Dretke, Batson versus Kentucky and Snyder versus Louisiana -- which I have a copy of here for the Court -- in 2008.

THE COURT: Is this Snyder case after Miller-El?

MR. PARKS: Yes, sir.

MR. LOLLAR: Yes, sir. I believe that's the most recent case from the Supreme Court. And the objections --

## Page 19

THE COURT: Give me a minute to look at it.

MR. ALEX: May I inquire if there's a copy for the State? If the Court is going to consider --

MR. PARKS: It's referenced in the brief.

MR. ALEX: All right. You gave him a copy, but I don't have a copy.

MR. PARKS: I may have one with me. Let me see if I do.

[Brief pause in proceedings.]

THE COURT: Mr. Lollar, in your arguments, if you could address the Supreme Courts statements on Page 4, "Step 3 of the Batson inquiry involves an evaluation of the prosecutor's credibility and the best evidence of discriminatory intent often would be the demeanor of the attorney who exercises the challenge," which in my judgment would weigh in favor of the State here. Otherwise, the Snyder versus the Louisiana case is factual and distinguishable from this case in my judgment.

MR. LOLLAR: I brought it to the Court's attention because it was a capital murder trial in which the State struck 100% of the blacks on the qualifying panel.

## Page 20

Judge, our objections, of course, stem from Batson versus Kentucky, which recognize that the defendant in a criminal case has a constitutional right under the 14th Amendment not to have minority members of his jury struck. In Batson, of course, you have a black defendant, a white victim and the State in Kentucky struck all of the available black members from the jury panel.

[Unintelligible] versus Alabama handed down two years later -- still under the 14th Amendment -- says that a juror has a right not to be struck because of their race. The subsequent cases that stem from the Supreme Court of the United States and the Court of Criminal Appeals in Austin have adopted those we use, as has the legislature in the State of Texas in Article 35.261.

In regard to the points that the State has made as to why they struck Mr. Patterson and in regard as to what the Court has observed -- Can I put some things on the record?

They say they struck him because he was on a jury and they found the defendant not guilty. Juror No. 4 -- I'm sorry -- Juror No. 3, Alex Folz, whose panel number is 227, also served on a jury that found a defendant not guilty.

Page 21

Juror No. 8, whose panel number is 684 -- And if the Court would like to see his questionnaire about this, I can dig that out from the exhibit.

[Brief pause in proceedings.]

MR. LOLLAR: Here is his questionnaire. What I'm talking about is down at the bottom of Page 10 and the top of Page 11. Mr. Stinson, whom the State did not strike, told us that he had been a member of a jury that found a defendant guilty. He goes on to tell us in his questionnaire that he found out information after the conclusion of that trial which disturbed him greatly.

We asked him about that in the voir dire of Mr. Stinson. What he said was, he found out after the fact when the lawyers came back to talk to him, that there was some other information about the case that had he known while he was a juror and had that information been admitted as a juror, he would have found the defendant not guilty. He was very upset about that and that's why -- what he notes in his written questionnaire.

In regards to the juror nullification point, Judge, I think the Court -- Let me make sure these are in the record.

[Defendant's Exhibit 4 was marked for identification.]

MR. ALEX: Judge, at this point, my

Page 22

reading of Greer says that if I don't object when counsel misstates the facts, that I've accepted them for the record. I have to object to the statement of facts as not being complete that counsel just gave to the Court. If I can rebut, I will. If you want me to make the objection right now, I will.

THE COURT: You can rebut.

MR. ALEX: Okay.

[Defendant's Exhibit No. 3 was marked for identification.]

MR. LOLLAR: I'd like to offer Defense Exhibit 3, which is the transcription of the voir dire examination of Mr. Patterson for the record. I would like to ask the Court, also, to te into consideration Defense Exhibit No. 4, which is the transcription of the voir dire examination of Juror Kelly Lynn McDonald.

THE COURT: Is there any objection to Defendant's Exhibits 3 and 4?

MR. ALEX: No, sir.

THE COURT: Those are admitted.

[Defendant's Exhibit Nos. 3 through 4 were admitted into evidence.]

MR. LOLLAR: Ms. McDonald was not struck by the State. She's on the jury as Juror No. 4, and her panel number was 272.

Page 23

In regard to the State's reason that they -- one of the reasons they say they struck Mr. Patterson was because he brought up the subject of jury nullification. I asked the Court to te into consideration the context in which he made that statement. As you can see in his transcription --

THE COURT: Where is that in there?

MR. LOLLAR: One of the ones I have...

Mr. Parks, the record should reflect, is the lawyer who talked to Mr. Patterson. I did not.

MS. MALLON: Judge, I could probably find that for you quickly.

MR. LOLLAR: The context in which he made that statement was Mr. Parks explaining in regard to special issue number one out of two and three. He was particularly talking about special issue number three and about how the law -- the former law in Texas, we didn't have special issue number three, that that was indeed mandated for us by the Supreme Court of the United States, particularly in regard to a jury not having a vehicle by which they could express under the, then, current Texas law, their desire to spare the death penalty and assess a life sentence.

It is in that context that he starts -- It is the -- He asked the question, "Is that what you

Page 24

mean by jury nullification." So I ask the Court to te into consideration the context in which he made that statement. I'll also point out to the Court that then Juror No. 4, Kelly McDonald, is a criminal lawyer. She surely knows about the concept of jury nullification. Juror No. 1, Jerome Williams, is a paralegal who has worked for a criminal lawyer. He certainly knows about the idea of jury nullification.

Mr. Patterson mentioned jury nullification because Mr. Parks was explaining to him how in prior Texas law there was no vehicle by which a jury could save the life of a defendant if they wanted to. It was in that context that he made that statement.

Secondly, Mr. Alex says that the State struck Mr. Patterson because he said that he was not in favor of the death penalty. On the first page of his juror questionnaire -- I believe this is in the record, but if it's not --

THE COURT: I have it.

MR. LOLLAR: Is it part of the record?

THE COURT: Yes. If it's not, it is now.

MR. LOLLAR: You want me to mark it?

THE COURT: Yeah, I guess, out of an abundance of caution.

[Defendant's Exhibit No. 5 was marked for

Page 25

identification.]

MR. ALEX: Patterson's questionnaire?

MR. LOLLAR: Yes.

MR. ALEX: Okay.

MR. LOLLAR: We'd offer Defense Exhibit No. 5.

THE COURT: Is there any objection?

MR. ALEX: No, sir.

THE COURT: 5 is admitted.

[Defendant's Exhibit No. 5 was admitted into evidence.]

MR. LOLLAR: Mr. Alex said the State struck this guy because he said he was not in favor of the death penalty. Page 1 of his questionnaire, "Are you in favor of the death penalty," and he said, "Yes."

He goes on to explain, "I accept it as being an option."

I would ask the Court to compare and contrast that to the juror questionnaire of Juror No. 4, Kelly McDonald. It is part of Defendant Exhibit No. 1.

The Court has heard what the State has said about Mr. Patterson going on to explain about his feelings about the death penalty, that he's not necessarily for it, he's not against it. He knows it's the law, he can follow the law and if the State meets

Page 26

their burden, he will assess the death penalty. That's what he told us in his voir dire examination and that's contained in the Court's file.

If you compare that to what Ms. McDonald says, she says, yeah, she's for it on Page 1. "She has no strong feelings one way or the other. If the law of the State allows it and necessary proof is made, I believe the law should be followed."

That's exactly the same thing. It's the same concept exactly that Mr. Patterson said. I'll point out again that this is a lady who now works for the Bureau of Prisons, she's a lawyer and she used to do death penalty writs. She worked for a defense lawyer in Missouri and did death penalty writs and they didn't strike her, but left her on the jury.

I'd point out to the Court also, Juror No. 1, when asked about his feelings about the death penalty, Jerome Williams, who is Panelist No. 6, said he would hedge on the imposition of the death penalty. Juror No. 3, Alex Folz, Panel No. 227, says, "He wouldn't push for the death penalty if it weren't the law."

Juror No. 9 who is Panelist No. 874, says he -- he told us he's in favor of the death penalty in theory, but it bothered him. And the first alternate -- who I understand may now have actually moved up into the

Page 27

panel or may move up to the panel because of the illness of one of the other jurors, and his number -- panel number is 1094, told us this, "As a teen I was very torn on the issue of the death penalty. I'm torn on the issue of the death penalty still."

So if the State is claiming they struck Mr. Patterson because of reservations he had, there are six jurors who also expressed reservations about the imposition of the death penalty, and yet they didn't strike them.

In regard to the issue -- that's another reason they say they struck Mr. Patterson was -- he said he wouldn't consider it as a criminal act of violence that constituted a continuing threat to society if the evidence showed that the -- a person hit somebody else.

Well, again, the context in what he said was -- and it's contained there in his transcript -- he would want to see the context in which the two got into a fight, an altercation. That's in his transcript. Compare and contrast that to Juror No. 4, Kelly McDonald's again, contained in her transcript there, she also would not consider it necessarily to be a criminal act of violence for a person to -- who was in the penitentiary to hit somebody else, she would want to see the context in which it happened. She specifically said,

Page 28

"If they're having a fight about a bet that they made, she would not consider that a criminal act of violence if it constituted a continued threat to society. Her way to handle that, since she works for the Bureau of Prisons and is quite familiar with it, is to put them in different housing, which is entirely reasonable.

In regard to that, Judge, we think if we view the comparative analysis required by the Supreme Court and the Court of Criminal Appeals for the reasons stated by the State, they haven't shown anything but the fact that he's black, just like they struck every other black juror and the only hispanic juror in the panel.

THE COURT: Thank you, Mr. Lollar.

Mr. Alex?

MR. ALEX: Judge, in response to some of the factual allegations made by counsel, first, counsel was ming an analysis of this juror Stinson and Folz, and the statements that he made were factually in -- well, incomplete, I guess.

Stinson was not the foreman of a jury like Mr. Patterson was, and Stinson was talking about Nevada law when they were ming that distinguishment, which is hugely different than what we're talking about here in Texas. The key to him being a foreman, Judge, is that when he was responding to the Defense's questions

Page 29

about -- responding directly to the Defense and said, "Hey, listen. Y'all are saying everybody is in favor of the death penalty. I'm not."

The reason why that's really scary of a guy whose been a foreman twice is he's likely to be the foreman on this jury which is purely a distinction between somebody who was just a member of a jury than somebody who was a foreman, and Mr. Lollar just happened to leave out the fact that he wasn't the foreman.

In addition, Folz that he quoted that also served on a jury was not the foreman of that jury and it was a DWI versus what we're talking about here as a murder case. There's a huge distinction in a member of a DWI and a foreman of a murder case. Mr. Lollar left those things out.

As it relates to the other argument, when it comes to Mr. Patterson not being in favor of the death penalty, Judge, we're not arguing to use that. When we finished talking to Mr. Patterson, we were okay with Mr. Patterson. His questionnaire said he believed in the death penalty, his questionnaire said everything that was fine with us. The fact is that he said that other people shared with probably would not have got him struck, but the fact of the matter is, he brought it up while Mr. Lollar or Mr. Parks, whichever one it was, was saying

Page 30

that, "You know what, Mr. Patterson? Everybody on this jury is going to be in favor of the death penalty. You've already told us that on your questionnaire."

Mr. Patterson corrected that, Judge. He stopped him. If you look at the context of how that happened, he stopped Mr. Parks or Mr. Lollar, whichever one it was, in the middle of what they were saying. And he wants to make it crystal clear, "You know what, y'all might have read what I said and heard what I said, but y'all need to know that I could be the foreman of this jury and I'm not in favor of the death penalty. This is the kind of person I am."

He said more than once during the -- The context was that other people -- The question was asked: "How did you become the foreman?"

"Well, people just saw who I was and they elected me the foreman."

I believe that what Mr. Patterson had at that point was a conscious -- a crisis of his conscious. He already left the impression that he was in favor of the death penalty. Mr. Parks or Mr. Lollar had said it to him two or three times, "We're about to be done," and this man stood up and basically said, "You know, folks. Y'all need to know this about me before we finish this."

That's the reason he was struck, Judge,

Page 31

the primary reason he was struck. The other thing that Mr. Lollar has mentioned to the Court about the disparate treatment, especially when we started talking about Ms. McDonald, Ms. McDonald said specifically as it relates to Special Issue No. 3, "Mitigation evidence better be damn good to convince me to say yes, because at this time I have answered to yes to Special Issue No. 1. Other jurors would not be able to change my mind on this issue."

That's about as strong as you get. That's a far cry from the attitude that Mr. Patterson exhibited when he corrected Mr. Lollar. Judge, the other folks -- The quotes that Mr. Lollar gave you from the questionnaires were not in response to whether you were in favor of the death penalty. We could go through questionnaire after questionnaire where people said things that could give me some cause. I didn't strike Mr. Paterson for those responses to those questions, just like I didn't strike these people. What I struck him for, Judge, was primarily because he doesn't believe in the death penalty. And if we put him back on, we would be finding that there was a pretext and we struck him merely because of his race.

But what we'd actually be doing if we put him on because of his race, which is the essence of the

Page 32

fact, we would be treating him differently because he is black. We'd be saying to the other 12 folks over here, "We don't trust y'all because y'all are white."

That's the essence of what Batson should do away with. We shouldn't have [unintelligible] in this courthouse and we shouldn't say that a jury should be composed of an Asian-American, African or any of this. Just people who, after the process is done, that's who we wind up with. We have no control over how many folks are in our strikeline who believe in the death penalty.

MR. LOLLAR: Your Honor, the transcription of Mr. Patterson's voir dire testimony would reflect that he never, ever stopped the proceedings, stood up and said, "I may be foreman and I want y'all to know I'm not in favor of the death penalty." That's nowhere in his voir dire. That did not happen.

In regard to kelly McDonald's explanation about Special Issue No. 3, remember this is the juror, the lawyer, who said she would not consider a hitting to be a criminal act of violence necessarily. She would want to see the context in which it happened. The prosecutor who questioned her, Ms. Evans, went on to say, "Then what would you consider to be a criminal act of violence?"

She works for the Bureau of Prisons and

Page 33

she says, "Well, certainly if they had injured, stabbed or otherwise hurt a prison guard."

So the very next thing that Ms. Evans talks to her about is Special Issue No. 3. She said -- In answering that, the context in which she mes her answers are, "If I had found a person guilty of capital murder and I had found he had stabbed a prison guard, then whatever mitigating circumstances have to be pretty good."

She said she could still do it and she said that, you know, later on in talking to her about the necessity that each juror impose their own personal judgement, she said, "If I have made my own personal moral judgement one way or the other, nobody else is going to change my opinion."

THE COURT: The problem with all of these cases, of course, is that if you grant a Batson challenge it implies some sort of nefarious intent on the part of the prosecutors. When you say it's a pretext, you're essentially saying that the prosecutors are lying. That's the problem with the whole line of cases.

Having said that, again, I -- it does concern me quite a bit that one hundred percent of the African-American jurors were struck from the panel and that there are none on the jury.

Page 34

I'm going to te a 15-minute recess so I can consider this more. I also have a verdict in my other case.

MR. PARKS: Judge, I was the person who inquired of Mr. Patterson so we don't have to keep batting that around.

THE COURT: Thank you.

[Recess ten from 9:47 a.m. to 10:01 a.m.]

THE COURT: We're back on the record in Broadnax. Again, I want to compliment all the lawyers in this case, generally for their performance in the many other cases I've seen them in, and specifically to this case.

The problem in this case is, again, as I have said, one could conclude if I grant a Batson challenge that Mr. Alex's reasons for challenge were contextual, that being false. That's -- If I was a subjective finder of the intent of Mr. Alex or his team, I would not conclude that. But I'm not in the business of ming subjective decisions, so I have to look at the criteria that's set out in the Miller-El case and the logic contained in Greer. It states the factors that are to be applied, it doesn't state which one weighs more than the other or anything of that sort.

Page 35

I'm going to grant the Batson challenge and I'm going to do so because of the fact that there are no African-American jurors on this jury and there was a disproportionate number of African-Americans who were struck. This is not to be considered in any way as some sort of negative context on any lawyers in this case. It's because I simply have to look at the factors that are contained in the Miller-El and I made my decision based on that.

It is my intention to restore Mr. Patterson to the jury. I will allow the State to strike whoever they want to strike. For example, you might consider the juror that's ailing, but you get to make that decision, Mr. Alex, and you can do so now or later.

Do you want to do that now or do you want to do it later?

MR. LOLLAR: Your Honor, may I inquire about something?

THE COURT: Yes.

MR. LOLLAR: Since the way we did it was, the first juror had to be either accepted or struck, and then the next juror up had to be accepted or struck. I understand that the State's able now to strike only those jurors after Patterson?

Page 36

THE COURT: What's the State's position on that?

MR. ALEX: I've got to confer with my legal counsel, Judge.

THE COURT: I'll let you do that. The [unintelligible] struck venireperson is a remedy that the Court can fashion that was specifically set out in State ex. rel. Curry v. Bowman at 885 SW 2nd, 421, Texas Criminal Appellate decision out of 1993.

MR. ALEX: I'm sorry, Judge. I --

THE COURT: What did you decide?

MR. ALEX: Can we have a little bit of time, Judge? I --

THE COURT: Sure. I've got other business.

We're in recess.

[Recess ten from 10:05 a.m. to 11:53 a.m.]

THE COURT: This is State of Texas versus James Garfield Broadnax. The Court previously granted the Batson motion as to Juror No. 45. The State has asked for the Court to hold the case in abeyance while the State contemplates what -- what procedure they want to te at this time, and I will grant that.

In the meantime, as soon as you're ready

Page 37

to go on the diminished capacity hearing, we'll go on that.

MR. LOLLAR: Judge, in regard to the Batson hearing we just held this morning, can I ask about the trial briefs that were submitted by the State and the Defendant be made part of the record?

THE COURT: They are part of the record as are the briefs on diminished capacity.

MR. ALEX: We can go forward now, Judge.

THE COURT: All right. As I understand it, Mr. Lollar, you hope to introduce evidence during the case in chief on guilt or innocence regarding diminished capacity.

Is that correct, sir?

MR. LOLLAR: Regarding the defendant's mental state at the time of the commission of the offense as it would relate to the culpable mental state of the defendant in the hopes of negating the state's proof as regard to an intentional act committed by the defendant.

THE COURT: And your brief is styled, "Trial Brief Regarding Diminished Capacity."

MR. LOLLAR: Yes, and I think that's part of the confusion about the whole line of cases is calling it diminished capacity because there is diminished capacity. Then there is what we have in Texas, which is

Page 38

simply pointing out to the jury that because of the defendant's mental state at the time of the commission of the offense allowable under 3836, that that goes to their -- the State's lack of proof about the culpable mental state required for a conviction of capital murder.

Now, that's where all the confusion in these cases comes from, is by calling it diminished capacity. We can call it whatever we want to call it. It's a lack -- It's not a defense and not offered as a defense. It's simply a lack of proof.

THE COURT: Mr. Alex?

MR. ALEX: Judge, and that's what the statute specifically prohibits. The statute that I'm referring to is 804. Specifically it says -- And for purposes of this argument, Judge, my understanding of the defendant's proof or evidence to be offered in the case, per their experts, which is the two witnesses that I'm objecting to to testify. One is the DRE expert that's going to say he was under the influence at the time of the offense.

The other one is an expert that's going to say that somehow because he was under the influence, he could not form the mental state to commit this offense. Specifically, that's what the statute says. You can't do it. Intoxication is not a defense.

Page 39

The only way it can be used as a defense is if it's involuntary intoxication and it rises to the level of insanity. Now, counsel can say that it was his mental state at the time of the offense and not say intoxication. If that's what he's offering, then that's a whole different issue.

The evidence that we've heard here from these experts all have to deal with voluntary intoxication, which we think is not relevant, for one, because the statue doesn't allow it. Two, there's no way for him to get a charge on voluntary intoxication going towards a lesser included offense.

In our brief, we cite numerous cases to support the notion that voluntary intoxication -- What happens is, he's going to say that voluntary intoxication is what's causing his mental impairment. But you can't leave out the fact that the voluntary intoxication is why he's saying he doesn't have the capacity to commit the offense.

The statue, the black letter rules it out. In all the cases that we cited, they all spe to that exact issue.

THE COURT: Do you wish to be heard further?

MR. LOLLAR: Well, Judge, I will simply

Page 40

restate that we are not offering it as a defense. Not as any type of defense, not as an affirmative defense or otherwise. We're simply saying it goes to lack of proof on the part of the State's evidence to negate that a culpable mens rea required of the offense of capital murder.

We think what's permissible under Jackson v. State, 160 SW 3rd, 568. Under Ruffin v. State, 2008-TX-1211.351. Under Mays v. State, 2009-TX-0424.527, and under the federal authority, Park versus Arizona, 548 US, 2006.

THE COURT: Is that it?

MR. LOLLAR: And specifically because in a prosecution for murder, Article 3836 explicitly allows evidence as to the -- "All relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." It's specifically allowed under state statute.

THE COURT: Mr. Alex, are you asking the Court to deny the Defense the opportunity to put both Dr. Roach and Dr. Platt on at all during the case in chief, or only in a specific and limited way?

MR. ALEX: I'm -- I'm saying that their testimony is only relevant in punishment, Judge, because the statute specifically says it. It can't be offered as

Page 41

a defense and the case law all says that includes lesser included offenses.

THE COURT: So your request of me is that Dr. Platt and Dr. Roach not be allowed to testify in the guilt/innocence phase of the case?

MR. ALEX: Yes, sir, on the grounds of relevancy.

THE COURT: And you oppose that, and you've already stated why, right?

MR. LOLLAR: Yes, sir. We will also be introducing the jail records showing the statements made by the defendant which became the basis of the medical health professionals' actions subsequent to his injury in the Dallas County jail and those records to show what they show.

THE COURT: Mr. Alex, do you oppose that as well?

MR. LOLLAR: Oh, and the videotapes. Let's not forget the videotapes that the State is going to introduce where he talks about his state of mind at the time of the commission of the offense.

MR. ALEX: Judge, I don't think that we're going to get out of the realm of offering evidence that the defendant may or may not have used drugs before committing this crime. It's going to be an issue in the

Page 42

case, I'm sure.

All I'm saying is, the expert getting up there saying that this goes to his mental state at the time of the offense is not relevant because the law rules it out.

THE COURT: So you're just opposing to the experts testifying?

MR. ALEX: Sure. And any argument contrary to the law that this -- Well, I mean, we can --

THE COURT: Okay. I got it. I got it.

For the reasons that are stated in the State's trial brief, for those reasons, the Court will deny the Defense the opportunity to put either Dr. Platt or Dr. Roach on in the case in chief on guilt or innocence.

Anything else on this matter?

MR. LOLLAR: So that I understand, and I don't want to get cross-ways with the Court, in opening statement and in presentation of the defendant's evidence in the guilt/innocence phase of the trial, would the Court allow introduction of the jail records going to his mental state?

THE COURT: I think I -- You said you didn't oppose that, right?

MR. ALEX: Judge, the only thing I oppose

Page 43

is misstating the law to the jury. All that evidence is going to come in, but nobody can stand up there and say to the jury, "Because he voluntarily used -- "

THE COURT: Well, he's not supposed to get into the law on opening statements anyway, it's just what the evidence will show.

MR. ALEX: I'm going to probably offer the jail records. I mean, the gentleman can say what --

THE COURT: Yes, you can go into the jail records.

MR. LOLLAR: And make comments therefrom? I mean, that's what we're -- talk about how the mind-altering drug that the defendant ingested prior to the time of the commission of the offenses affected his behavior.

MR. ALEX: And that's a punishment issue, Judge. That -- That is the mind altering drug --

THE COURT: All right. I hear you. I'm not going to allow that.

MR. LOLLAR: Please note our exception.

THE COURT: Noted.

Anything else on this?

MR. ALEX: That's all we have, Judge.

MR. LOLLAR: That's all.

THE COURT: Be available to come back

Page 44

down --

MR. LOLLAR: I'm sorry, Judge. For the purpose of this hearing, would the Court consider the testimony that you've heard from Dr. Platt and Dr. Roach to be a proffer --

THE COURT: Yes.

MR. LOLLAR: -- as to what we would have shown and have presented --

THE COURT: Yes.

MR. LOLLAR: -- in the guilt/innocence phase of the trial on behalf of the defendant?

THE COURT: Yes. I want you to be able to preserve your record.

Off the record.

[Pause in proceedings.]

THE COURT: Back on the record in the State versus Broadnax.

I want to ask you, Mr. Lollar, am I correct that the Defense has acquiesced in reinstating the venire member, Mr. Patterson, in lieu of Carl Newray?

MR. LOLLAR: Yes, sir. We prefer that. We are satisfied with the jury as it's currently constituted, feel that both sides -- feel that jury will be fair to both sides. We particularly object to the Court for granting the motion to quash Newray.

Page 45

THE COURT: The Court refers the case of Woods versus State of Texas, decided May 7th, just last month, where the State had argued that the Court was required to call Newray in the case. I granted a Batson challenge and that Court said that that argument had already been decided in the Boones case, B-o-o-n-e-s, and reiterated previous holdings including cases such as State ex. rel. Curry versus Bowman, at 885 SW 2nd, 421.

Accordingly, I declined to call Newray in the case and we will proceed with Juror No. 45, reinstated.

Have you made a decision as to whether or not you're going to mandamus me?

MR. ALEX: We have not, Judge.

THE COURT: If you decide not to, I need to know who you're going to replace it with.

Anything else you want to say?

MR. ALEX: We're not going to -- We're not going to exercise any other strikes.

THE COURT: So where does that leave us then?

MR. ALEX: That leaves us with 13 jurors. I think probably the last one that was on would probably not be on here, but would be our first alternate.

THE COURT: All right. Do you agree with

Page 46

that Mr. Lollar? I think that's right.

MR. LOLLAR: I think we put Mr. Patterson in where he would have been and move everybody else back --

THE COURT: Well, that's what Mr. Alex just said.

MR. LOLLAR: Yeah.

THE COURT: So I'm intending to go on August the 10th, but who knows what's going to happen on the thing with the newspaper deal, and who knows what's going to happen on this. Y'all just let me know whenever you can.

Anything else from anybody?

MR. ALEX: I think we may have agreed to reschedule the evidentiary hearing to next Thursday. Is that right?

MR. LOLLAR: Next Thursday is fine.

MR. ALEX: Next Thursday, that was when I was going to bring all the evidence down.

THE COURT: I didn't know anything about that. Are you asking me to do that?

MR. ALEX: Well, we were -- we were -- Judge, I'm just letting you know that the evidence that we were going to bring down probably for tomorrow --

THE COURT: I mean, I'll grant it. I just

Page 47

wish you would have asked me as opposed to y'all agreeing without asking me.

MR. ALEX: Very well.

MR. LOLLAR: So there's nothing scheduled on this case for tomorrow?

THE COURT: Nothing for tomorrow.

We're in recess.

[Whereupon, this hearing was concluded at 1:55 p.m. To be continued in the next numbered volume.]

Page 48

THE STATE OF TEXAS        X
COUNTY OF DALLAS        X

I, Sharina Fowler, Deputy Official Court Reporter for the Criminal District Court No. 7, Dallas County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND, this the _____ day of March, 2010.

_____
Sharina A. Fowler, Texas CSR #6132
Expiration Date: 12/31/11
Deputy Official Court Reporter
Criminal District Court No. 7
Dallas County, Texas
Crowley Courts Building
Dallas, Texas
214-653-5696

**-#-**

## [1]    4:2
#6132 [1]    48:16

**-1-**

1 [58]    3:1    4:1
4:7    5:1    6:1
7:1    8:1    9:1
10:1    10:17    10:18
11:1    12:1    13:1
14:1    15:1    16:1
17:1    17:15    17:16
17:20    18:1    18:13
19:1    20:1    21:1
22:1    23:1    24:1
24:6    25:1    25:14
25:20    26:1    26:5
26:17    27:1    28:1
29:1    30:1    31:1
31:7    32:1    33:1
34:1    35:1    36:1
37:1    38:1    39:1
40:1    41:1    42:1
43:1    44:1    45:1
46:1    47:1

10 [52]    1:10    3:10
4:10    5:10    6:10
6:16    7:10    8:10
9:10    10:10    10:17
10:18    11:10    12:10
13:10    14:10    15:10
16:10    17:10    18:10
19:10    20:10    21:6
21:10    22:10    23:10
24:10    25:10    26:10
27:10    28:10    29:10
30:10    31:10    32:10
33:10    34:10    35:10
36:10    37:10    38:10
39:10    40:10    41:10
42:10    43:10    44:10
45:10    46:10    47:10
48:10    48:10

100% [1]    19:24
1094 [1] 27:3
10:01 [1]    34:9
10:05 [1]    36:17
10th [1] 46:9
11 [50]    1:11    3:11
4:11    5:11    6:11
6:16    7:11    8:11
9:11    10:11    11:8
11:11    12:11    13:11
14:11    15:11    16:11
17:11    18:11    19:11
20:11    21:7    21:11
22:11    23:11    24:11
25:11    26:11    27:11
28:11    29:11    30:11
31:11    32:11    33:11
34:11    35:11    36:11
37:11    38:11    39:11
40:11    41:11    42:11
43:11    44:11    45:11
46:11    48:11    48:11

11:53 [1]    36:18
12 [49]    1:12    3:12
4:12    5:12    6:12

7:12    8:12    9:12
10:12    11:12    11:15
12:12    13:12    14:12
15:12    16:12    17:12
18:12    19:12    20:12
21:12    22:12    23:12
24:12    25:12    26:12
27:12    28:12    29:12
30:12    31:12    32:2
32:12    33:12    34:12
35:12    36:12    37:12
38:12    39:12    40:12
41:12    42:12    43:12
44:12    45:12    46:12
48:12    48:12

12/31/11 [1]    48:16
12508700 [1]    2:13
13 [48]    1:13    3:13
4:13    5:13    6:13
7:13    8:13    9:13
10:13    11:13    12:13
13:13    14:13    15:13
16:13    17:13    18:13
19:13    20:13    21:13
22:13    23:13    24:13
25:13    26:13    27:13
28:13    29:13    30:13
31:13    32:13    33:13
34:13    35:13    36:13
37:13    38:13    39:13
40:13    41:13    42:13
43:13    44:13    45:13
45:22    46:13    48:13
48:13

131 [1]    2:18
133 [1]    2:5
14 [46]    3:14    4:14
5:14    6:14    7:14
8:14    9:14    10:14
11:14    12:14    13:14
14:14    15:14    16:14
17:14    18:14    19:14
20:14    21:14    22:14
23:14    24:14    25:14
26:14    27:14    28:14
29:14    30:14    31:14
32:14    33:14    34:14
35:14    36:14    37:14
38:14    39:14    40:14
41:14    42:14    43:14
44:14    45:14    46:14
48:14    48:14

14th [2]    20:4    20:10
15 [46]    3:15    4:15
5:15    6:15    7:15
8:15    9:15    10:15
11:15    12:15    13:15
14:15    15:15    16:15
17:15    18:15    19:15
20:15    21:15    22:15
23:15    24:15    25:15
26:15    27:15    28:15
29:15    30:15    31:15
32:15    33:15    34:15
35:15    36:15    37:15
38:15    39:15    40:15
41:15    42:15    43:15
44:15    45:15    46:15
48:15    48:15

15-minute [1]    34:1

15520000 [1]    2:10
1591694 [1]    5:12
16 [45]    2:16    3:16
4:16    5:16    6:16
7:16    8:16    9:16
10:16    11:16    12:16
13:16    14:16    15:16
16:16    17:16    18:16
19:16    20:16    21:16
22:16    23:16    24:16
25:16    26:16    27:16
28:16    29:16    30:16
31:16    32:16    33:16
34:16    35:16    36:16
37:16    38:16    39:16
40:16    41:16    42:16
43:16    44:16    45:16
46:16

160 [1]    40:8
17 [46]    3:17    4:7
4:9    4:17    5:17
6:17    7:17    8:17
9:17    10:17    11:17
12:17    13:17    14:17
15:17    16:17    17:17
18:17    19:17    20:17
21:17    22:17    23:17
24:17    25:17    26:17
27:17    28:17    29:17
30:17    31:17    32:17
33:17    34:17    35:17
36:17    37:17    38:17
39:17    40:17    41:17
42:17    43:17    44:17
45:17    46:17

1700 [1] 2:14
18 [45]    3:18    4:7
4:9    5:18    6:18
7:18    8:18    9:18
10:18    11:18    12:18
13:18    14:18    15:18
16:18    17:18    18:18
19:18    20:18    21:18
22:18    23:18    24:18
25:18    26:18    27:18
28:18    29:18    30:18
31:18    32:18    33:18
34:18    35:18    36:18
37:18    38:18    39:18
40:18    41:18    42:18
43:18    44:18    45:18
46:18

19 [43]    3:19    5:19
6:19    7:19    8:19
9:19    10:19    11:19
12:19    13:19    14:19
15:19    16:19    17:19
18:19    19:19    20:19
21:19    22:19    23:19
24:19    25:19    26:19
27:19    28:19    29:19
30:19    31:19    32:19
33:19    34:19    35:19
36:19    37:19    38:19
39:19    40:19    41:19
42:19    43:19    44:19
45:19    46:19

1993 [1] 36:9
1:55 [1] 47:9

**-2-**

2 [50]    3:2    3:4
4:2    4:9    5:2
6:2    7:2    8:2
9:2    10:2    11:2
12:2    13:2    14:2
15:2    16:2    17:2
17:16    17:22    18:2
18:13    19:2    20:2
21:2    22:2    23:2
24:2    25:2    26:2
27:2    28:2    29:2
30:2    31:2    32:2
33:2    34:2    35:2
36:2    37:2    38:2
39:2    40:2    41:2
42:2    43:2    44:2
45:2    46:2    47:2

20 [46]    2:20    3:20
5:20    6:20    7:20
8:20    9:20    10:20
11:20    12:20    13:20
14:20    15:20    16:20
17:20    18:20    19:20
20:20    21:20    22:20
23:20    24:20    25:20
26:20    27:20    28:20
29:20    30:20    31:20
32:20    33:20    34:20
35:20    36:20    37:20
38:20    39:20    40:20
41:20    42:20    43:20
44:20    45:20    46:20
48:20    48:20

2006 [1] 40:11
2008 [1] 18:19
2008-TX-1211.351
  [1]    40:9
2009 [3] 1:14    3:3
5:12
2009-TX-0424.527
  [1]    40:10
2010 [1] 48:13
21 [48]    1:21    2:21
3:21    4:13    5:21
6:21    7:21    8:21
9:21    10:21    11:21
12:21    13:21    14:21
15:21    16:21    17:21
18:21    19:21    20:21
21:21    22:21    23:21
24:21    25:21    26:21
27:21    28:21    29:21
30:21    31:21    32:21
33:21    34:21    35:21
36:21    37:21    38:21
39:21    40:21    41:21
42:21    43:21    44:21
45:21    46:21    48:21
48:21

214-384-8178 [1]
2:15
214-653-3600 [2]
2:6    2:19
214-653-5696 [1]
48:19
22 [50]    1:22    2:22
3:22    4:11    4:11

**-2- 2nd**

4:13    5:22    6:22
7:22    8:22    9:22
10:22    11:22    12:22
13:22    14:22    15:22
16:22    17:22    18:22
19:22    20:22    21:22
22:22    23:22    24:22
25:22    26:22    27:22
28:22    29:22    30:22
31:22    32:22    33:22
34:22    35:22    36:22
37:22    38:22    39:22
40:22    41:22    42:22
43:22    44:22    45:22
46:22    48:22    48:22

227 [2]    20:24    26:20
23 [47]    1:23    2:23
3:23    5:23    6:23
7:23    8:23    9:23
10:23    11:23    12:23
13:23    14:23    15:23
16:23    17:23    18:23
19:23    20:23    21:23
22:23    23:23    24:23
25:23    26:23    27:23
28:23    29:23    30:23
31:23    32:23    33:23
34:23    35:23    36:23
37:23    38:23    39:23
40:23    41:23    42:23
43:23    44:23    45:23
46:23    48:23    48:23

24 [47]    1:24    2:24
3:24    5:24    6:24
7:24    8:24    9:24
10:24    11:24    12:24
13:24    14:24    15:24
16:24    17:24    18:24
19:24    20:24    21:24
22:24    23:24    24:24
25:24    26:24    27:24
28:24    29:24    30:24
31:24    32:24    33:24
34:24    35:24    36:24
37:24    38:24    39:24
40:24    41:24    42:24
43:24    44:24    45:24
46:24    48:24    48:24

240-241 [1]    6:14
240-41 [1]    5:11
24049165 [1]    2:17
25 [49]    1:25    2:25
3:25    4:15    4:15
5:25    6:25    7:25
8:25    9:25    10:25
11:25    12:25    13:25
14:25    15:25    16:25
17:25    18:25    19:25
20:25    21:25    22:25
23:25    24:25    25:25
26:25    27:25    28:25
29:25    30:25    31:25
32:25    33:25    34:25
35:25    36:25    37:25
38:25    39:25    40:25
41:25    42:25    43:25
44:25    45:25    46:25
48:25    48:25

272 [1]    22:25
2nd [2]    36:8    45:8

**-3-**

3 [60]    3:3    4:3
4:11    5:3    6:3
7:3    8:3    9:3
10:3    10:9    10:22
11:3    12:3    13:3
14:3    15:3    16:3
17:3    18:3    19:3
19:14    20:3    20:23
21:3    22:3    22:9
22:12    22:18    22:21
23:3    24:3    25:3
26:3    26:20    27:3
28:3    29:3    30:3
31:3    31:5    32:3
32:18    33:3    33:4
34:3    35:3    36:3
37:3    38:3    39:3
40:3    41:3    42:3
43:3    44:3    45:3
46:3    47:3    48:3
48:3
30 [1]    3:3
30TH [1]    1:14
321 [1]    2:11
35.261 [2]    18:15
20:16
37 [1]    5:7
3836 [2] 38:3    40:14
3rd [1]    40:8

**-4-**

4 [56]    3:4    4:4
4:13    5:4    6:4
7:4    8:4    9:4
10:4    11:4    12:4
13:4    14:4    15:4
16:4    17:4    18:4
19:4    19:14    20:4
20:23    21:4    21:23
22:4    22:15    22:18
22:21    22:24    23:4
24:4    24:4    25:4
25:19    26:4    27:4
27:20    28:4    29:4
30:4    31:4    32:4
33:4    34:4    35:4
36:4    37:4    38:4
39:4    40:4    41:4
42:4    43:4    44:4
45:4    46:4    47:4
421 [2]    36:8    45:8
45 [2]    36:21    45:10
450 [1]    2:14
48 [3]    3:6    5:8
17:23

**-5-**

5 [59]    3:5    3:5
4:5    4:15    5:5
6:5    7:5    8:5
9:5    10:5    10:17
10:18    11:2    11:5
11:9    11:10    11:15
12:5    13:5    14:5
15:5    16:5    17:5

18:5    19:5    20:5
21:5    22:5    23:5
24:5    24:25    25:5
25:6    25:9    25:10
26:5    27:5    28:5
29:5    30:5    31:5
32:5    33:5    34:5
35:5    36:5    37:5
38:5    39:5    40:5
41:5    42:5    43:5
44:5    45:5    46:5
47:5    48:5    48:5
5's [1]    10:25
545 [2]    5:11    6:13
548 [1]    40:11
568 [1]    40:8

**-6-**

6 [49]    3:6    4:6
5:6    6:6    7:6
8:6    9:6    10:6
11:6    11:10    12:6
13:6    14:6    15:6
16:6    17:6    18:6
19:6    20:6    21:6
22:6    23:6    24:6
25:6    26:6    26:18
27:6    28:6    29:6
30:6    31:6    32:6
33:6    34:6    35:6
36:6    37:6    38:6
39:6    40:6    41:6
42:6    43:6    44:6
45:6    46:6    47:6
48:6    48:6
684 [1]    21:1

**-7-**

7 [50]    1:5    1:7
1:17    3:7    4:7
5:7    6:7    7:7
8:7    9:7    10:7
11:7    12:7    13:7
14:7    15:7    16:7
17:7    18:7    19:7
20:7    21:7    22:7
23:7    24:7    25:7
26:7    27:7    28:7
29:7    30:7    31:7
32:7    33:7    34:7
35:7    36:7    37:7
38:7    39:7    40:7
41:7    42:7    43:7
44:7    45:7    46:7
47:7    48:4    48:17
75201 [1]    2:15
75207 [1]    2:6
75270-4399 [1]
2:19
77765 [1]    2:11
7th [1]    45:2

**-8-**

8 [50]    1:8    2:8
3:8    4:8    5:8
6:8    7:8    8:8
9:8    10:8    11:8

12:8    13:8    14:8
15:8    16:8    17:8
18:8    19:8    20:8
21:1    21:8    22:8
23:8    24:8    25:8
26:8    27:8    28:8
29:8    30:8    31:8
32:8    33:8    34:8
35:8    36:8    37:8
38:8    39:8    40:8
41:8    42:8    43:8
44:8    45:8    46:8
47:8    48:8    48:8
804 [1]    38:14
874 [1]    26:22
885 [2]    36:8    45:8
8:58 [1]    5:1

**-9-**

9 [48]    1:9    2:9
3:9    4:9    5:9
6:9    7:9    8:9
9:9    10:9    11:9
12:9    13:9    14:9
15:9    16:9    17:9
18:9    19:9    20:9
21:9    22:9    23:9
24:9    25:9    26:9
26:22    27:9    28:9
29:9    30:9    31:9
32:9    33:9    34:9
35:9    36:9    37:9
38:9    39:9    40:9
41:9    42:9    43:9
44:9    45:9    46:9
47:9
903-769-3120 [1]
2:12
930 [1]    5:7
9:47 [1]    34:8

**-A-**

a.m [2]    34:8    36:17
a.m.] [3] 5:1    34:9
36:18
abeyance [1]    36:22
able [4]    14:15    31:8
35:24    44:12
abortion [2]    7:17
7:19
above [2]    48:4
48:7
above-entitled [1]
1:15
absolutely [1]    10:15
abundance [1]    24:24
accept [3]    5:16
7:20    25:16
accepted [6]    4:8
8:22    17:21    22:2
35:22    35:23
Accordingly [1]
45:9
accused [1]    40:17
acquiesced [1]    44:19
act [7]    15:5    27:13

27:23    28:2    32:20
32:23    37:19
actions [1]    41:13
activity [1]    12:12
addition [1]    29:10
address [3]    6:23
10:8    19:13
adds [1] 16:1
admitted [8]    4:3
18:12    18:14    21:17
22:20    22:22    25:9
25:10
adopted [1]    20:14
adult [1] 12:10
affected [1]    43:14
African [1]    32:7
African-American [3]
6:16    33:24    35:3
African-Americans
[3]    6:10    6:12
35:4
again [10]    11:9
12:24    15:7    18:10
26:11    27:16    27:21
33:22    34:11    34:15
against [2]    6:16
25:24
agree [3] 15:6    16:25
45:25
agreed [1]    46:14
agreeing [1]    47:1
ailing [1]    35:13
Alabama [1]    20:9
Alex [47]    2:2
7:3    7:8    10:10
12:6    12:24    18:9
19:3    19:7    20:23
21:25    22:8    22:19
24:14    25:2    25:4
25:8    25:12    26:20
28:14    28:15    34:19
35:14    36:3    36:10
36:12    37:9    38:11
38:12    40:19    40:23
41:6    41:16    41:22
42:8    42:25    43:7
43:16    43:23    45:14
45:18    45:22    46:5
46:14    46:18    46:22
47:3
Alex's [1]    34:17
allegations [1]    28:16
allow [5]    15:14
35:11    39:10    42:21
43:19
allowable [1]    38:3
allowed [2]    40:18
41:4
allows [3]    11:4
26:7    40:14
alone [1]    16:17
altercation [1]    27:19
altering [1]    43:17
alternate [2]    26:24
45:24

Amendment [2]
20:4    20:10
analogy [1]    9:23
analysis [9]    6:22
7:10    7:11    8:2
8:7    8:10    8:21
28:8    28:17
analyzed [1]    7:11
ANDREA [1]    2:3
answered [1]    31:7
answering [1]    33:5
answers [1]    33:6
anyway [1]    43:5
appealed [1]    5:15
Appeals [3]    14:4
20:14    28:9
APPEARANCES [1]
3:4
appeared [1]    17:4
Appellate [1]    36:9
apples [2]    10:11
11:16
application [1]    17:2
applied [1]    34:24
apply [1]    17:10
appropriate [2] 11:19
11:22
approved [2]    18:4
18:5
argued [1]    45:3
arguing [2]    7:2
29:18
argument [4]    29:16
38:15    42:8    45:5
arguments [1]    19:12
Arizona [1]    40:11
Article [3]    18:15
20:15    40:14
Asian-American [1]
32:7
assess [2]    23:23
26:1
Assistant [2]    2:4
2:17
attempts [1]    12:13
attention [1]    19:23
attitude [1]    31:11
attorney [3]    2:10
2:14    19:17
Attorneys [1]    2:4
August [1]    46:9
Austin [1]    20:14
authority [2]    5:18
40:10
available [3]    6:16
20:7    43:25
away [1] 32:5

**-B-**

B-o-o-n-e-s [1] 45:6
background [1] 12:25
Baird [2]    18:2

18:4
balance [1] 17:23
based [3] 5:24
  8:19  35:9
basis [2] 8:20  41:12
Batson [17] 3:5
  5:5  6:15  15:13
  17:15  18:1  18:17
  19:14  20:2  20:5
  32:4  33:17  34:16
  35:1  36:21  37:4
  45:4
batting [1] 34:6
became [1] 41:12
become [1] 30:15
begin [1] 16:24
behalf [1] 44:11
behavior [1] 43:15
best [1] 19:15
bet [1] 28:1
better [1] 31:6
between [2] 16:6
  29:7
biggest [1] 16:6
bit [2] 33:23  36:12
black [7] 10:3
  20:5  20:7  28:11
  28:12  32:2  39:20
blacks [1] 19:24
blame [1] 12:14
Blevins [1] 11:15
blue [1] 10:3
Blvd [2] 2:5  2:18
Boones [1] 45:6
bothered [1] 26:24
bottom [1] 21:6
Bowman [2] 36:8
  45:8
BRAD [1] 2:13
brief [9] 6:24  7:10
  7:24  10:9  19:6
  37:20  37:21  39:13
  42:12
briefing [1] 5:9
briefs [3] 5:23
  37:5  37:8
bring [2] 46:19
  46:24
Broadnax [5] 1:6
  5:3  34:11  36:20
  44:17
brought [3] 19:22
  23:3  29:24
Building [3] 2:5
  2:18  48:18
bunch [1] 8:24
burden [1] 26:1
Bureau [3] 26:12
  28:4  32:25
business [2] 34:20
  36:15

-C-

C [2] 2:1  4:17
Calm [1] 2:11
cannot [1] 12:14
Cantwell [1] 11:9
capacity [8] 37:1
  37:8  37:13  37:21
  37:24  37:25  38:8
  39:18
capital [4] 19:23
  33:6  38:5  40:5
Carl [1] 44:20
case [44] 5:16  5:17
  5:21  5:23  6:13
  6:14  6:18  6:20
  8:13  8:14  9:24
  13:13  14:14  16:6
  16:18  17:2  17:2
  18:20  18:24  19:19
  19:20  20:3  21:15
  29:13  29:14  34:3
  34:12  34:14  34:15
  34:22  35:6  36:22
  37:12  38:16  40:21
  41:1  41:5  42:1
  42:14  45:1  45:4
  45:6  45:10  47:5
cases [12] 11:12
  11:19  18:17  20:12
  33:17  33:21  34:13
  37:23  38:7  39:13
  39:21  45:7
category [1] 7:17
caused [1] 6:17
causing [1] 39:16
caution [1] 24:24
certainly [3] 10:10
  24:7  33:1
CERTIFICATE [1]
  3:6
certify [2] 48:4
  48:9
challenge [8] 3:5
  5:5  19:17  33:17
  34:17  34:17  35:1
  45:5
challenged [1] 17:8
chambers [1] 48:9
chance [1] 14:16
change [2] 31:8
  33:15
characteristics [4]
  14:6  14:7  14:9
  14:23
charge [1] 39:11
check [1] 16:12
chief [3] 37:12  40:22
  42:14
circumstances [4]
  12:15  13:16  33:8
  40:16
cite [3] 10:16  10:20
  39:13
cited [3] 15:22  16:4
  39:21
claim [1] 10:22
claiming [1] 27:6

clear [7] 6:2  8:7
  9:21  16:5  16:6
  16:10  30:8
close [1] 6:20
Code [1] 18:16
color [1] 16:19
combine [1] 14:18
comments [1] 43:11
Commerce [1] 2:14
commission [4] 37:16
  38:2  41:21  43:14
commit [2] 38:23
  39:18
committed [1] 37:19
committing [1] 41:25
comparative [5]
  6:22  7:10  7:11
  8:2  28:8
compare [5] 11:13
  13:21  25:18  26:4
  27:20
comparing [3] 8:3
  10:11  11:24
comparison [3] 11:23
  16:20  17:13
comparisons [1]
  15:15
complete [1] 22:4
completely [1] 8:12
compliment [1] 34:11
composed [1] 32:7
concept [2] 24:5
  26:10
concern [1] 33:23
conclude [2] 34:16
  34:20
concluded [1] 47:8
concludes [1] 6:19
conclusion [1] 21:11
condition [1] 40:16
confer [1] 36:3
confidence [1] 14:14
confusion [2] 37:23
  38:6
conscious [2] 30:19
  30:19
consider [10] 13:23
  19:5  27:13  27:22
  28:2  32:19  32:23
  34:2  35:13  44:3
consideration [5]
  17:19  17:24  22:14
  23:5  24:2
considered [2] 5:22
  35:5
consistently [1]
  13:8
constituted [3] 27:14
  28:3  44:23
constitutional [1]
  20:3
contained [5] 26:3
  27:17  27:21  34:23
  35:8

contains [1] 48:5
contemplates [1]
  36:23
contention [2] 5:13
  6:15
contentions [2] 10:8
  10:11
context [14] 9:15
  23:5  23:13  23:24
  24:2  24:13  27:16
  27:18  27:25  30:5
  30:14  32:21  33:5
  35:6
contextual [1] 34:18
continued [2] 28:3
  47:9
continuing [1] 27:14
contrary [1] 42:9
contrast [2] 25:19
  27:20
control [2] 12:10
  32:9
conviction [1] 38:5
convince [1] 31:6
copy [4] 18:19  19:3
  19:8  19:8
correct [3] 37:14
  44:19  48:5
corrected [2] 30:4
  31:12
correctly [1] 48:10
counsel [8] 13:17
  22:1  22:4  28:16
  28:16  36:4  39:3
  48:7
County [6] 1:6
  1:18  41:14  48:2
  48:4  48:18
couple [1] 15:9
course [4] 5:18
  20:1  20:5  33:17
court [116] 1:5
  1:17  3:6  5:2
  5:9  5:13  5:16
  6:19  7:5  7:7
  10:7  12:5  12:22
  14:3  14:3  14:10
  16:13  16:16  16:19
  16:24  17:12  17:24
  18:5  18:6  18:8
  18:12  18:19  18:20
  18:24  19:1  19:4
  19:12  20:13  20:13
  20:19  21:2  21:21
  22:4  22:7  22:14
  22:17  22:20  23:4
  23:7  23:19  24:1
  24:3  24:19  24:21
  24:23  25:7  25:9
  25:18  25:21  26:16
  28:9  28:9  28:13
  31:2  33:16  34:7
  34:10  35:20  36:1
  36:5  36:7  36:11
  36:14  36:19  36:20
  36:22  37:7  37:10
  37:20  38:11  39:23
  40:12  40:19  40:20

41:3  41:8  41:16
42:6  42:10  42:12
42:18  42:21  42:23
43:4  43:9  43:18
43:21  43:25  44:3
44:6  44:9  44:12
44:16  44:25  45:1
45:1  45:3  45:5
45:15  45:20  45:25
46:5  46:8  46:20
46:25  47:6  48:3
48:4  48:8  48:17
48:17
Court's [6] 5:20
  7:4  17:19  18:17
  19:22  26:3
courthouse [1] 32:6
Courts [4] 2:5
  2:18  19:13  48:18
cover [1] 7:11
credibility [1] 19:15
crime [2] 12:10
  41:25
criminal [20] 1:4
  1:17  2:4  12:12
  14:3  15:5  18:16
  20:3  20:14  24:4
  24:7  27:13  27:22
  28:2  28:9  32:20
  32:23  36:9  48:4
  48:17
crisis [1] 30:19
criteria [1] 34:22
cross-ways [1] 42:18
Crowley [3] 2:5
  2:18  48:18
cry [1] 31:11
crystal [1] 30:8
CSR [1] 48:16
culpable [3] 37:17
  38:4  40:5
current [1] 23:22
Curry [2] 36:8
  45:8

-D-

D [1] 4:17
Dallas [12] 1:6
  1:18  1:18  2:4
  2:6  2:15  2:19
  41:14  48:2  48:4
  48:18  48:19
damn [1] 31:6
Date [1] 48:16
DAVID [1] 2:2
deal [2] 39:8  46:10
death [42] 7:16
  7:18  7:24  8:2
  8:13  8:15  9:9
  9:14  9:22  10:23
  11:4  11:6  11:11
  11:19  11:22  16:17
  16:20  23:22  24:16
  25:14  25:15  25:23
  26:1  26:13  26:14
  26:17  26:19  26:21

26:23    27:4    27:5
27:9    29:3    29:17
29:21    30:2    30:11
30:21    31:15    31:21
32:10    32:15
decide [2]    36:11
45:15
decided [2]    45:2
45:6
decision [7]    5:10
5:12    7:1    35:8
35:14    36:9    45:12
decisions [2]    5:24
34:21
declined [1]    45:9
defendant [16]    2:20
20:3    20:6    20:22
20:25    21:9    21:18
24:12    25:20    37:6
37:18    37:19    41:12
41:24    43:13    44:11
defendant's [7] 4:6
17:22    22:18    37:15
38:2    38:16    42:19
Defender [1]    2:17
defense [26]    6:8
6:24    7:15    9:5
10:8    10:11    10:12
10:22    17:15    17:20
22:11    22:15    25:5
26:13    29:1    38:9
38:10    38:25    39:1
40:1    40:2    40:2
40:20    41:1    42:13
44:19
Defense's [2]    13:3
28:25
degree [1]    9:1
demeanor [1]    19:17
Demonstrative [1]
4:2
deny [2] 40:20    42:13
Deputy [2]    48:3
48:17
Description [1] 4:3
designate [1]    17:14
desire [1]    23:22
different [4]    11:20
28:6    28:23    39:6
differently [1]    32:1
dig [1]    21:3
diminished [7]    37:1
37:8    37:12    37:21
37:24    37:24    38:7
dire [10] 4:11    4:13
8:7    13:7    21:12
22:12    22:16    26:2
32:12    32:16
directly [1]    29:1
disagreeing [1] 15:4
discriminatory [2]
17:4    19:16
discussion [1]    18:3
disparate [1]    31:2
disproportionate [2]
6:11    35:4

dispute [1]    14:15
disputing [1]    13:2
distinction [4]    11:7
16:6    29:6    29:13
distinguish [1]    12:22
distinguishable [1]
19:20
distinguishment [1]
28:22
District [5]    1:4
1:17    2:4    48:4
48:17
disturbed [1]    21:11
doesn't [5]    15:23
31:20    34:24    39:10
39:18
done [3] 13:8    30:22
32:8
DOUG [1]    2:9
down [6]    12:2
20:10    21:6    44:1
46:19    46:24
Dr [8]    40:21    40:21
41:4    41:4    42:13
42:14    44:4    44:4
DRE [1] 38:18
Dretke [1]    18:17
drug [2] 43:13    43:17
drugs [1]    41:24
during [4]    8:6
30:13    37:11    40:21
DWI [2] 29:12    29:14

-E-

E [4]    2:1    2:1
4:17    4:17
early [1] 12:11
either [3]    15:22
35:22    42:13
elected [1]    30:17
Emily [1]    11:15
employed [1]    17:5
end [1]    8:11
entertain [1]    7:6
entirely [1]    28:6
especially [1]    31:3
essence [2]    31:25
32:4
essentially [1]    33:20
evaluation [1]    19:15
Evans [2]    32:22
33:3
everybody [5]    9:8
9:9    29:2    30:1
46:3
everyday [1]    10:2
evidence [16]    15:13
19:16    27:15    31:5
37:11    38:16    39:7
40:4    40:15    41:23
42:19    43:1    43:6
46:19    46:23    48:6
evidence.] [3]    18:14

22:22    25:11
evidentiary [1] 46:15
ex [2]    36:8    45:8
exact [2]    6:25
39:22
exactly [3]    13:13
26:9    26:10
examination [5]
4:11    4:13    22:13
22:16    26:2
example [2]    7:13
35:12
excellent [1]    5:23
exception [1]    43:20
exclude [1]    17:5
Excuse [1]    9:13
exercise [1]    45:19
exercises [1]    19:17
exhibit [15]    17:15
17:16    17:20    17:22
18:13    21:3    21:23
22:9    22:12    22:15
22:21    24:25    25:5
25:10    25:20
exhibited [1]    31:11
exhibits [3]    4:1
22:18    48:11
expert [3]    38:18
38:21    42:2
experts [3]    38:17
39:8    42:7
Expiration [1]    48:16
explain [2]    25:16
25:22
explaining [2]    23:14
24:10
explanation [1] 32:17
explicitly [1]    40:14
express [1]    23:21
expressed [2]    8:1
27:8

-F-

F08-24667 [1]    5:4
F08-24667-Y [1]
1:3
face [1]    15:5
fact [11] 6:9    8:21
10:24    21:14    28:11
29:9    29:22    29:24
32:1    35:2    39:17
factors [5]    10:5
17:1    17:10    34:23
35:7
facts [3] 22:2    22:3
40:15
factual [2]    19:20
28:16
factually [1]    28:18
failed [1]    17:8
fair [2]    14:4    44:24
false [1] 34:18
familiar [1]    28:5

family [1]    12:11
far [3]    5:15    5:25
31:11
fashion [1]    36:7
favor [26]    6:2
7:18    7:19    7:23
8:1    8:15    9:9
9:14    9:22    10:23
11:6    11:15    11:22
15:17    19:18    24:16
25:13    25:15    26:23
29:2    29:17    30:2
30:11    30:20    31:15
32:15
favorable [1]    8:14
favoring [1]    6:8
federal [1]    40:10
feelings [4]    11:3
25:23    26:6    26:17
fight [2] 27:19    28:1
file [1]    26:3
finder [1]    34:19
finding [1]    31:22
fine [3]    9:3    29:22
46:17
finish [1]    30:24
finished [1]    29:19
first [12] 7:14    7:22
12:1    14:2    14:19
14:19    15:16    24:16
26:24    28:16    35:22
45:24
fit [1]    13:12
five [6]    7:12    12:2
15:16    15:17    15:19
16:14
folks [5] 15:3    30:23
31:12    32:2    32:9
follow [2]    10:1
25:25
followed [2]    11:5
26:8
following [1]    1:14
Folz [4]    20:23    26:20
28:17    29:10
footnote [1]    17:1
foregoing [1]    48:5
foreman [14]    6:3
15:19    28:20    28:24
29:5    29:6    29:8
29:9    29:11    29:14
30:10    30:15    30:17
32:14
foremost [1]    14:2
forget [1]    41:19
form [1] 38:23
formal [1]    17:5
former [1]    23:17
forward [1]    37:9
found [11]    8:8
8:9    15:19    20:22
20:24    21:9    21:10
21:13    21:17    33:6
33:7
fourth [2]    15:1

15:2
Fowler [2]    48:3
48:16
Frank [2]    2:5
2:18
frankly [1]    6:20

-G-

G [1]    4:17
gang [1] 12:11
Garfield [3]    1:6
5:3    36:20
generally [1]    34:12
gentleman [1]    43:8
given [2]    5:14
14:11
giving [1]    9:7
goes [5]    21:9    25:16
38:3    40:3    42:3
good [3] 14:16    31:6
33:9
grant [5] 33:17    34:16
35:1    36:24    46:25
granted [2]    36:20
45:4
granting [1]    44:25
greatly [1]    21:11
green [1]    10:3
Greer [11]    5:10
5:11    5:14    5:16
8:20    16:4    16:7
16:8    17:2    22:1
34:23
grew [1] 12:9
grounds [1]    41:6
group [1]    17:23
guard [2]    33:2
33:7
guess [4]    7:16
17:14    24:23    28:19
guilt [2] 37:12    42:14
guilt/innocence [3]
41:5    42:20    44:10
guilty [7]    6:5
15:20    20:22    20:25
21:9    21:18    33:6
guy [5]    8:14    9:25
10:2    25:13    29:5

-H-

hair [1]    13:14
hand [2] 6:8    48:12
handed [1]    20:9
handle [1]    28:4
Handley [3]    2:3
12:7    12:17
happenstance [1]
6:18
head [1]    13:15
health [1]    41:13
hear [2]    6:24    43:18
heard [5]    25:21

BROADNAX, JAMES — Condensed It!™ — hearing - meets

30:9 39:7 39:23 44:4

**hearing** [14] 1:9 1:15 3:5 5:19 13:9 17:15 17:19 18:1 18:2 37:1 37:4 44:3 46:15 47:8

**hedge** [1] 26:19

**held** [3] 1:17 14:4 37:4

**help** [1] 12:13

**hereby** [1] 48:4

**Hey** [1] 29:2

**high** [1] 5:22

**hispanic** [1] 28:12

**history** [1] 12:12

**hit** [4] 13:4 13:25 27:15 27:24

**hitting** [1] 32:19

**hold** [2] 10:7 36:22

**holdings** [1] 45:7

**Holly** [1] 2:11

**Honor** [3] 7:3 32:11 35:18

**Honorable** [1] 1:16

**hope** [1] 37:11

**hopes** [1] 37:18

**housing** [1] 28:6

**huge** [2] 11:7 29:13

**hugely** [1] 28:23

**hundred** [3] 6:9 12:14 33:23

**hurt** [1] 33:2

**-I-**

**idea** [1] 24:8

**identification.]** [4] 17:17 21:24 22:10 25:1

**illness** [1] 27:1

**impairment** [1] 39:16

**implies** [1] 33:18

**importance** [1] 7:21

**important** [3] 8:17 8:17 9:17

**impose** [2] 11:20 33:12

**imposition** [2] 26:19 27:9

**impression** [1] 30:20

**inappropriate** [1] 11:12

**include** [1] 16:1

**included** [3] 39:12 41:2 48:7

**includes** [1] 41:1

**including** [1] 45:7

**incomplete** [1] 28:19

**indeed** [1] 23:18

**INDEX** [2] 3:1 4:1

**indicated** [1] 11:18

**individual** [2] 12:14 12:14

**Industrial** [2] 2:5 2:18

**infested** [1] 12:10

**influence** [2] 38:19 38:22

**information** [3] 21:10 21:15 21:16

**ingested** [1] 43:13

**injured** [1] 33:1

**injury** [1] 41:13

**innocence** [2] 37:12 42:15

**inquire** [2] 19:3 35:18

**inquired** [1] 34:5

**inquiry** [3] 8:11 8:19 19:14

**insanity** [1] 39:3

**intending** [1] 46:8

**intent** [3] 19:16 33:18 34:19

**intention** [1] 35:10

**intentional** [1] 37:19

**interrupted** [1] 9:12

**intoxication** [8] 38:25 39:2 39:5 39:9 39:11 39:14 39:15 39:17

**introduce** [2] 37:11 41:20

**introducing** [1] 41:11

**introduction** [1] 42:21

**involuntary** [1] 39:2

**involved** [1] 12:11

**involves** [1] 19:14

**issue** [26] 5:5 6:1 6:22 7:17 8:22 9:3 9:7 9:17 9:17 12:4 13:19 23:15 23:16 23:18 27:4 27:4 27:11 31:5 31:7 31:9 32:18 33:4 39:6 39:22 41:25 43:16

**-J-**

**Jackson** [1] 40:8

**jail** [5] 41:11 41:14 42:21 43:8 43:9

**James** [3] 1:6 5:3 36:20

**Jerome** [2] 24:6 26:18

**John** [1] 11:9

**judge** [50] 1:16 7:4 7:10 8:11 9:15 10:5 10:10 10:15 11:16 12:3 12:24 14:2 15:2

15:15 15:15 17:12 18:2 18:2 18:4 18:4 18:10 20:1 21:21 21:25 23:11 28:7 28:15 28:24 29:18 30:4 30:25 31:12 31:20 34:4 36:4 36:10 36:13 37:3 37:9 38:12 38:15 39:25 40:24 41:22 42:25 43:17 43:23 44:2 45:14 46:23

**judgement** [2] 33:13 33:14

**judges** [1] 18:5

**judgment** [2] 19:18 19:21

**July** [2] 1:14 3:3

**juror** [44] 4:9 5:6 5:6 5:7 6:22 7:9 7:13 8:3 8:9 9:7 11:8 11:15 12:8 13:15 14:5 16:21 20:11 20:22 20:23 21:1 21:16 21:17 21:20 22:16 22:24 24:4 24:6 24:17 25:19 25:19 26:16 26:20 26:22 27:20 28:12 28:12 28:17 32:18 33:12 35:13 35:22 35:23 36:21 45:10

**jurors** [18] 4:8 5:7 11:18 11:25 12:25 13:22 13:22 14:6 14:9 15:6 17:21 27:2 27:8 31:8 33:24 35:3 35:25 45:22

**jury** [53] 4:7 4:16 6:7 7:25 7:25 8:16 8:25 9:8 10:15 10:21 10:23 10:25 12:4 13:12 13:19 14:21 15:18 15:19 17:3 17:6 17:20 17:22 17:25 20:5 20:7 20:22 20:24 21:8 22:24 23:4 23:20 24:1 24:5 24:8 24:9 24:11 26:15 28:20 29:6 29:7 29:11 29:11 30:2 30:11 32:6 33:25 35:3 35:11 38:1 43:1 43:3 44:22 44:23

**-K-**

**keep** [1] 34:5

**kelly** [7] 4:14 11:2 22:16 24:4 25:20 27:20 32:17

**Kentucky** [3] 18:18 20:2 20:6

**KERI** [1] 2:16

**key** [1] 28:24

**kind** [1] 30:12

**knew** [1] 12:11

**knowledge** [1] 18:6

**known** [1] 21:16

**knows** [5] 24:5 24:7 25:24 46:9 46:10

**-L-**

**lack** [4] 38:4 38:9 38:10 40:3

**lady** [1] 26:11

**Lake** [1] 2:11

**Lane** [1] 2:11

**last** [2] 45:2 45:23

**law** [22] 2:10 2:14 5:12 7:20 11:4 11:5 16:4 23:17 23:17 23:22 24:11 25:25 25:25 26:6 26:8 26:21 28:22 41:1 42:4 42:9 43:1 43:5

**lawyer** [6] 23:10 24:4 24:7 26:12 26:13 32:19

**lawyers** [5] 5:21 16:19 21:14 34:11 35:6

**LB2** [1] 2:18

**least** [3] 6:21 9:16 14:8

**leave** [6] 8:16 10:7 14:20 29:9 39:17 45:20

**leaves** [1] 45:22

**left** [4] 10:22 26:15 29:14 30:20

**legal** [2] 9:25 36:4

**legislature** [1] 20:15

**lesser** [2] 39:12 41:1

**letter** [1] 39:20

**letting** [1] 46:23

**level** [1] 39:3

**lieu** [1] 44:20

**life** [6] 12:19 13:16 13:20 13:25 23:23 24:12

**like-minded** [1] 10:13

**likelihood** [1] 14:12

**likely** [2] 6:17 29:5

**likewise** [1] 11:1

**limited** [1] 40:22

**line** [3] 8:4 33:21 37:23

**list** [2] 5:7 12:2

**listed** [2] 11:18 17:1

**listen** [1] 29:2

**lite** [2] 5:10 5:10

**live** [2] 7:6 8:6

**logic** [2] 5:16 34:23

**Lollar** [56] 2:13 9:12 9:20 16:24 17:11 17:12 17:18 18:10 18:15 18:23 19:12 19:22 21:5 22:11 22:23 23:8 23:13 24:20 24:22 25:3 25:5 25:12 28:13 29:8 29:14 29:25 30:6 30:21 31:2 31:12 31:13 32:11 35:18 35:21 37:3 37:11 37:15 37:22 39:25 40:13 41:10 41:18 42:17 43:11 43:20 43:24 44:2 44:7 44:10 44:18 44:21 46:1 46:2 46:7 46:17 47:4

**look** [8] 8:21 13:7 13:8 15:7 19:1 30:5 34:21 35:7

**looked** [1] 13:3

**Louisiana** [2] 18:18 19:19

**lying** [1] 33:20

**Lynn** [1] 22:16

**-M-**

**MALLON** [2] 2:16 23:11

**man** [1] 30:23

**mandamus** [1] 45:13

**mandated** [1] 23:19

**mandatory** [1] 5:18

**manner** [1] 17:4

**March** [1] 48:13

**marijuana** [1] 9:24

**mark** [1] 24:22

**marked** [4] 17:17 21:23 22:9 24:25

**matter** [2] 29:24 42:16

**may** [10] 19:3 19:9 26:25 27:1 32:14 35:18 41:24 41:24 45:2 46:14

**Mays** [1] 40:9

**McDonald** [10] 4:14 11:2 11:5 22:16 22:23 24:4 25:20 26:4 31:4 31:4

**McDonald's** [2] 27:21 32:17

**mean** [7] 6:2 15:23 24:1 42:9 43:8 43:12 46:25

**means** [1] 15:24

**meantime** [1] 36:25

**medical** [1] 41:12

**meets** [1] 25:25

member [5] 17:9
21:8   29:7   29:13
44:20
members [2]   20:4
20:7
mens [1] 40:5
mental [9]   37:16
37:17   38:2   38:5
38:23   39:4   39:16
42:3   42:22
mentioned [2]   24:9
31:2
merely [1]   31:23
mes [1]   33:5
met [1]   5:14
middle [2]   9:13
30:7
might [2]   30:9
35:13
Mike [1] 1:16
Miller-El [16]   5:11
5:11   5:17   6:13
8:19   14:3   14:22
15:8   15:8   15:21
16:5   17:2   18:17
18:21   34:22   35:8
mind [5] 13:19   31:8
40:16   41:20   43:17
mind-altering [1]
43:13
ming [3] 28:17   28:22
34:21
minorities [1]   17:6
minority [1]   20:4
minute [1]   19:1
Missouri [1]   26:14
misstates [1]   22:2
misstating [1]   43:1
mitigating [2]   12:18
33:8
mitigation [3]   13:2
13:23   31:5
month [1]   45:3
moral [1]   33:14
morning [2]   5:4
37:4
most [2] 9:17   18:24
motion [3]   9:3
36:21   44:25
move [2]   27:1
46:3
moved [1]   26:25
Ms [10]   11:5   12:7
12:17   22:23   23:11
26:4   31:4   31:4
32:22   33:3
multiple [3]   14:5
15:11   15:12
murder [8]   15:20
19:23   29:13   29:14
33:7   38:5   40:6
40:14

-N-

N [4]   2:1   2:5
2:18   4:17
necessarily [4] 5:14
25:24   27:22   32:20
necessary [1]   26:7
necessity [1]   33:12
need [3] 30:10   30:24
45:15
nefarious [1]   33:18
negate [1]   40:4
negating [1]   37:18
negative [1]   35:6
neighborhood [1]
12:9
Nevada [1]   28:21
never [2]   11:5
32:13
Nevertheless [1]
5:15
Newray [4]   44:20
44:25   45:4   45:9
newspaper [1]   46:10
next [6] 33:3   35:23
46:15   46:17   46:18
47:9
NO.08898800 [1]
2:3
nobody [3]   10:15
33:14   43:2
none [4] 8:10   13:23
17:10   33:25
Nos [3]   17:16   18:13
22:21
note [4]   8:18   15:18
16:25   43:20
notebook [3]   13:4
13:11   14:1
Noted [1]   43:21
notes [2]   5:13
21:19
nothing [4]   5:20
10:14   47:4   47:6
notion [5]   6:6
8:1   14:15   15:4
39:14
now [15] 6:13   10:24
12:20   13:21   14:8
22:6   24:21   26:11
26:25   35:14   35:16
35:24   37:9   38:6
39:3
nowhere [1]   32:15
nullification [9]
6:7   12:4   15:18
21:20   23:4   24:1
24:5   24:8   24:9
number [11]   4:3
6:11   20:24   21:1
22:25   23:15   23:16
23:18   27:2   27:3
35:4
numbered [3]   1:16
47:9   48:8
numerous [1]   39:13

-O-

O [1]   4:17
object [3]   22:1
22:3   44:24
objecting [1]   38:18
objection [4]   18:8
22:6   22:17   25:7
objections [3]   18:11
18:25   20:1
observed [1]   20:19
obviously [3]   17:7
17:9   18:3
occasions [2]   6:4
6:4
occurred [1]   48:8
off [2]   8:24   44:14
offense [11]   37:16
38:3   38:20   38:23
39:4   39:12   39:19
40:5   40:17   41:21
42:4
offenses [2]   41:2
43:14
offer [4] 17:18   22:11
25:5   43:7
offered [5]   4:3
38:9   38:16   40:25
48:11
offering [3]   39:5
40:1   41:23
Official [3]   48:3
48:12   48:17
often [1] 19:16
once [1] 30:13
one [38]   5:6   5:6
6:4   6:9   7:5
7:24   9:16   10:18
11:4   12:7   12:14
13:3   13:9   13:12
13:25   14:7   14:19
14:23   15:16   16:14
16:15   16:17   19:9
23:2   23:8   23:15
26:6   27:2   29:25
30:7   33:14   33:23
34:16   34:24   38:18
38:21   39:9   45:23
ones [1] 23:8
open [1] 48:8
open-ended [3]   12:16
13:4   13:24
opening [2]   42:18
43:5
opinion [1]   33:15
opportunity [2] 40:20
42:13
oppose [4]   41:8
41:16   42:24   42:25
opposed [1]   47:1
opposing [1]   42:6
option [1]   25:17
oral [1] 1:19
oranges [2]   10:11
11:16

order [1] 7:21
otherwise [3]   19:19
33:2   40:3
own [4]   6:6   13:10
33:12   33:13

-P-

P [3]   2:1   2:1
4:17
p.m [1]   47:9
page [9]   3:2   10:9
10:22   19:14   21:6
21:7   24:16   25:14
26:5
panel [12]   6:12
19:25   20:8   20:24
21:1   22:25   26:20
27:1   27:1   27:2
28:12   33:24
Panelist [2]   26:18
26:22
paper [1]   8:23
paralegal [1]   24:6
parental [1]   12:10
Park [1] 40:10
Parker [2]   18:2
18:4
Parks [11]   2:9
18:22   19:6   19:9
23:9   23:14   24:10
29:25   30:6   30:21
34:4
part [7]   24:20   25:20
33:18   37:6   37:7
37:22   40:4
particular [2]   9:3
9:6
particularly [4] 5:17
23:16   23:20   44:24
parties [2]   48:7
48:11
party [3] 17:3   17:5
17:8
passed [1]   9:2
Paterson [1]   31:18
Patterson [49]   4:12
4:15   5:6   6:3
6:6   7:12   7:14
7:23   8:22   9:2
9:12   10:13   11:10
11:14   11:14   11:21
11:24   12:2   12:23
13:10   14:11   14:17
14:21   15:4   16:2
17:15   20:18   22:13
23:3   23:10   24:9
24:15   25:22   26:10
27:7   27:12   28:21
29:17   29:19   29:20
30:1   30:4   30:18
31:11   34:5   35:11
35:25   44:20   46:2
Patterson's [2] 25:2
32:12
pause [2]   19:11
21:4

penalty [43]   7:16
7:19   7:24   8:2
8:13   8:15   9:9
9:14   9:22   10:24
11:5   11:6   11:12
11:12   11:19   11:22
16:18   16:20   23:23
24:16   25:14   25:15
25:23   26:1   26:13
26:14   26:18   26:19
26:21   26:23   27:4
27:5   27:9   29:3
29:18   29:21   30:2
30:11   30:21   31:15
31:21   32:10   32:15
penitentiary [1]
27:24
people [15]   8:14
10:6   10:13   10:16
10:18   10:25   14:13
15:9   15:23   29:22
30:14   30:16   31:16
31:19   32:8
per [1]   38:17
percent [3]   6:9
12:15   33:23
performance [1]
34:12
permissible [1] 40:7
person [6]   16:18
27:15   27:23   30:12
33:6   34:4
person's [1]   12:25
personal [3]   5:20
33:12   33:13
pertains [1]   5:5
phase [3]   41:5
42:20   44:11
place [1]   17:7
Platt [4] 40:21   41:4
42:13   44:4
play [1] 13:1
point [10]   6:25
7:9   14:2   14:24
21:21   21:25   24:3
26:10   26:16   30:19
pointing [1]   38:1
points [5]   13:5
13:10   13:12   14:1
20:17
policy [1]   17:5
portions [1]   48:6
position [1]   36:1
possession [1]   9:24
posture [1]   5:15
pot [1]   9:25
pre-textual [2]   9:16
15:23
pre-textural [1] 15:13
preemptory [5] 6:15
8:13   10:2   14:24
16:3
prefer [1]   44:21
preliminary [2] 5:24
7:4
present [2]   5:1

13:13

**presentation** [1]
42:19

**presented** [1]    44:8

**preserve** [1]    44:13

**Presiding** [1]    1:17

**pretext** [3]    8:20
31:22    33:19

**pretrial** [2]    1:9
13:9

**pretty** [3]    16:5
16:6    33:8

**previous** [3]    18:1
18:3    45:7

**previously** [2]    6:3
36:20

**primarily** [1]    31:20

**primary** [2]    12:1
31:1

**prison** [2]    33:2
33:7

**Prisons** [3]    26:12
28:4    32:25

**problem** [4]    15:10
33:16    33:21    34:15

**procedural** [1]    5:14

**procedure** [2]    18:16
36:23

**proceed** [1]    45:10

**proceedings** [6] 1:15
1:19    3:3    32:13
48:6    48:10

**proceedings.]** [3]
19:11    21:4    44:15

**process** [1]    32:8

**professional** [1]
5:20

**professionals'** [1]
41:13

**proffer** [1]    44:5

**prohibits** [1]    38:13

**proof** [6]    26:7
37:18    38:4    38:10
38:16    40:3

**prosecution** [1] 40:14

**prosecutor** [2]    16:17
32:22

**prosecutor's** [2]
13:14    19:15

**prosecutors** [3] 6:15
33:19    33:20

**prosecutors'** [1]
16:9

**proven** [1]    13:18

**provided** [1]    17:13

**Public** [1]    2:17

**punching** [1]    15:5

**punishment** [2] 40:24
43:16

**purely** [1]    29:6

**purpose** [1]    44:3

**purposes** [2]    17:19
38:15

**push** [1]    26:21

**put** [10]    7:16    7:17
8:23    20:19    28:5
31:21    31:24    40:20
42:13    46:2

**-Q-**

**qualified** [3]    4:9
5:7    17:24

**qualifying** [1]    19:24

**quash** [1]    44:25

**questioned** [2]    17:10
32:22

**questioning** [1] 12:8

**questionnaire** [19]
4:16    8:6    11:3
11:11    11:17    18:6
21:2    21:5    21:10
21:19    24:17    25:2
25:14    25:19    29:20
29:21    30:3    31:16
31:16

**questionnaires** [7]
4:7    4:10    17:20
17:23    17:25    18:5
31:14

**questions** [7]    7:16
8:18    8:24    9:5
13:8    28:25    31:18

**quickly** [1]    23:12

**quite** [2] 28:5    33:23

**quote** [3]    6:17
11:8    12:8

**quoted** [1]    29:10

**quotes** [2]    5:17
31:13

**Quoting** [1]    6:13

**-R-**

**R** [2]    2:1    4:17

**race** [4]    10:3    20:12
31:23    31:25

**races** [1] 14:6

**racially** [1]    17:4

**Ranch** [1]    2:11

**range** [1]    6:10

**rather** [1]    6:7

**rea** [1]    40:5

**read** [1] 30:9

**reading** [1]    22:1

**ready** [1]    36:25

**really** [6]    5:25
6:23    8:11    8:17
16:7    29:4

**realm** [1]    41:23

**reason** [20]    7:14
7:22    10:21    11:24
12:1    12:20    14:11
14:19    14:19    15:1
15:2    15:2    16:2
16:9    16:16    23:1
27:12    29:4    30:25
31:1

**reasonable** [1]    28:6

**reasons** [19]    7:12
10:19    10:20    12:3
15:9    15:11    15:12
15:16    15:22    15:25
16:1    16:3    16:12
16:14    23:2    28:9
34:17    42:11    42:12

**rebut** [2] 22:5    22:7

**recent** [2]    5:10
18:24

**recess** [3]    34:1
36:16    47:7

**recognize** [1]    20:2

**record** [28]    1:1
4:2    12:9    16:5
16:7    16:8    16:10
16:11    16:11    16:13
16:14    16:25    18:11
20:20    21:22    22:3
22:13    23:9    24:17
24:20    34:10    37:6
37:7    44:13    44:14
44:16    48:7    48:10

**records** [6]    16:8
41:11    41:14    42:21
43:8    43:10

**referenced** [1]    19:6

**referring** [1]    38:14

**refers** [1]    45:1

**reflect** [2]    23:9
32:12

**reflects** [1]    48:10

**regard** [11]    18:1
20:17    20:18    23:1
23:14    23:20    27:11
28:7    32:17    37:3
37:19

**regarding** [3]    37:12
37:15    37:21

**regardless** [2]    10:2
16:18

**regards** [2]    5:21
21:20

**reinstated** [1]    45:11

**reinstating** [1]    44:19

**reiterated** [1]    45:7

**rel** [2]    36:8    45:8

**relate** [1]    37:17

**relates** [2]    29:16
31:5

**relevancy** [1]    41:7

**relevant** [4]    39:9
40:15    40:24    42:4

**relied** [1]    6:14

**remarkable** [1]    6:17

**remedy** [1]    36:6

**remember** [1]    32:18

**replace** [1]    45:16

**reported** [2]    1:19
48:9

**Reporter** [2]    48:4
48:17

**Reporter's** [4]    1:1
3:6    48:7    48:9

**request** [1]    41:3

**requested** [1]    48:6

**required** [4]    28:8
38:5    40:5    45:4

**reschedule** [1]    46:15

**reservations** [2]
27:7    27:8

**respective** [1]    48:11

**responding** [2]    28:25
29:1

**response** [5]    9:6
12:16    13:24    28:15
31:14

**responses** [1]    31:18

**restate** [1]    40:1

**restore** [1]    35:10

**resulted** [1]    6:11

**returned** [1]    6:5

**reversing** [1]    6:14

**ridiculous** [1]    8:16

**right** [14]    13:3
13:11    14:1    19:7
20:3    20:11    22:6
37:10    41:9    42:24
43:18    45:25    46:1
46:16

**rigorously** [1]    17:9

**rises** [1] 39:2

**RO** [1]    4:2

**Roach** [4]    40:21
41:4    42:14    44:4

**Robert** [3]    4:12
4:15    5:6

**Ruffin** [1]    40:8

**rules** [2] 39:20    42:4

**rulings** [1]    7:4

**-S-**

**S** [2]    2:1    4:17

**satisfied** [1]    44:22

**save** [5]    12:18    13:16
13:20    13:25    24:11

**saw** [1]    30:16

**says** [17] 8:15    9:25
14:3    16:19    16:19
20:11    22:1    24:14
26:5    26:5    26:20
26:22    33:1    38:14
38:24    40:25    41:1

**SBOT** [5]    2:2
2:3    2:10    2:13
2:17

**scale** [5] 10:17    10:18
11:3    11:9    11:16

**scary** [1]    29:4

**scenario** [1]    13:20

**scheduled** [1]    47:4

**second** [1]    12:3

**Secondly** [1]    24:14

**see** [7]    16:12    19:10
21:2    23:6    27:18
27:24    32:21

**sentence** [1]    23:23

**serve** [1] 6:3

**served** [2]    20:24
29:11

**session** [1]    5:4

**set** [2]    34:22    36:7

**share** [3] 14:9    14:22
15:12

**shared** [7]    14:7
15:3    15:9    15:20
15:23    16:15    29:23

**Sharina** [2]    48:3
48:16

**show** [4] 40:16    41:14
41:15    43:6

**showed** [1]    27:15

**showing** [1]    41:11

**shown** [3]    14:4
28:10    44:8

**shuffle** [1]    17:3

**sides** [6] 5:22    5:24
17:21    18:4    44:23
44:24

**significance** [1]
12:3

**significant** [1]    6:23

**simply** [6]    12:12
35:7    38:1    38:10
39:25    40:3

**sit** [1]    14:20

**sitting** [1]    9:8

**six** [1]    27:8

**skip** [1]    9:10

**Snipes** [1]    1:16

**Snyder** [3]    18:18
18:20    19:19

**society** [2]    27:14
28:3

**someone** [4]    10:22
12:9    15:5    15:19

**soon** [1] 36:25

**sorry** [3] 20:23    36:10
44:2

**sort** [3]    33:18    34:25
35:6

**spare** [1]    23:22

**sparse** [1]    16:8

**spe** [1]    39:21

**special** [7]    23:15
23:16    23:18    31:5
31:7    32:18    33:4

**specific** [1]    40:22

**specifically** [11]
5:5    27:25    31:4
34:13    36:7    38:13
38:14    38:24    40:13
40:18    40:25

**stabbed** [2]    33:1
33:7

**stand** [1]    43:2

**standing** [1]    13:14

**start** [2] 8:24    14:3

**started** [2]    9:5
31:3

**starts** [1]    23:24