# TAMES Barcode Cover Sheet



34c14be35c8a4f5fa57c252796a7ef9c

**Case Number:** WR-81,573-01

**Style:** Broadnax, James Garfield

**Event Date:** 10/22/2014

**Event Details:** HABEAS CORPUS RECEIVED - 11.071/This Court/11.071 WRIT RECD/11.071/

**Filename:** WR-81,573-01 11.071 WRIT RECD 11.071 10-22-2014

**Document Description:** RECORD--Volume 2 of 3

**Document Remarks:** 3 Volumes CR

**Document(s):**

**Generated By:** bhooper

**Generated On:** 10/27/2014 11:07:20 AM

SCANNED
APR 05 2015

Ex Parte:

JAMES GARFIELD BROADNAX

CAUSE NO.: F-0824667 Y

IN THE CRIMINAL DISTRICT COURT NO. 7

DALLAS COUNTY, TEXAS

This document contains some
pages that are of poor quality
at the time of imaging.

# DEATH PENALTY

### POST CONVICTION WRIT OF HABEAS CORPUS
### (ART. 11.07, V. A. C. C. P.)

ATTORNEY FOR APPLICANT:

LYDIA M. V. BRANDT
THE BRANDT LAW FIRM, P.C.
P.O. BOX 850843
RICHARDSON, TX 75085-0843

ATTORNEY FOR STATE:

HON. CRAIG WATKINS

FRANK CROWLEY COURTHOUSE

DALLAS, TX 75207-4313

GARY FITZSIMMONS
DISTRICT CLERK
FRANK CROWLEY COURTHOUSE
133 N RIVERFRONT BLVD., LB 12
DALLAS, TEXAS 75207-4313

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 2 2 2014

Abel Acosta, Clerk

EX PARTE                                    Cause No.F0824667-Y

JAMES GARFIELD BROADNAX          IN THE CRIMINAL DISTRICT COURT NO. 7

                                         DALLAS COUNTY, TEXAS

_____

# *INDEX*

## (VOL. 2)

| | |
|---|---|
| Clerk's Cover | VOL.2-01 |
| Writ Exhibits II of II 12-20-2011 *(continuance of Vol. 1)* | VOL.2-02 |
| State's Motion to Extend Filing of Original Answer to Application for Writ Habeas Corpus 4-12-2012 | VOL.2-132 |
| State's Original Answer 6-15-2012 | VOL.2-136 |
| Respondent's Proposed Order Designating Issues  (ODI) 6-15-2012 | VOL.2-176 |
| Agreed Order Designating Issues  (ODI) 7-13-2012 | VOL.2-178 |
| Miscellaneous Correspondence(Email to Judge) 8-03-2012 | VOL.2-182 |
| Agreed Order Designating Issues  (ODI) 9-11-2012 | VOL.2-184 |
| Miscellaneous Correspondence(Email for Judge) 11-13-2012 | VOL.2-188 |
| Miscellaneous Correspondence(email to Judge) 11-27-2012 | VOL.2-199 |
| Motion To Quash Subpoena) 12-04-2012 | VOL.2-207 |
| Motion for Court Ordered Discovery 12-06-2012 | VOL.2-217 |
| Motion For Disclosure Of Defense Counsel's Files 12-06-2012 | VOL.2-276 |
| Order 12-06-2012 | VOL.2-280 |
| Docket Sheet 12-07-2012 | VOL.2-284 |
| Order 12-12-2012 | VOL.2-285 |
| Motion to Reconsider & Rescind 12-18-2012 | VOL.2-286 |

State's Filing Of Additional Exhibits 10-04-2013                    VOL.2-339

Clerk Certificate                                                    VOL.2-352

No.  F-0824667 Y

*Ex Parte:*

JAMES GARFIELD BROADNAX

**Application for Writ of Habeas Corpus**

**CRIMINAL DISTRICT COURT NO. 7**

**Dallas County, Texas**

## CLERK'S  COVER  SHEET

Applicant's Name: **JAMES GARFIELD BROADNAX**

Offense: **CAP MUR FEL**

Case No.: **F08-24667-Y**

Plea to Offense: **Not Guilty**

Sentence:  **DEATH  - TDCJ;**Fine:  **$0** ; Court Costs: **$460.00**

Trial Date : **August 21, 2009**

Judge's Name: **Judge Michael Snipes**

Appeal: **YES**

Court of Appeals Cause Number: **AP-76,207**

Reporter:  **UNKNOWN**
(If Applicable)

Hearing Held: **NO**

Findings of Fact & Conclusions Filed: **YES**
(Pertaining to the Application for Writ)

Recommendation: **DENY**
(Trial Court's recommendation regarding Application)

Judge's Name: **Judge Michael Snipes**

Name of Counsel if Applicant is represented: **Lydia M. V. Brandt**

1

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS §  IN THE _Criminal_ DISTRICT COURT _No. 7_
VS. _James Broadnax_ §  OF DALLAS COUNTY, TEXAS

Appointment Date: _2-11-09_  Disposition Date: _____  Partial/Supplemental Payment Request: YES / **NO**
Dates of Jail Visits: _____
OFFENSE: _Cap. Murder_     CASE NO.: _F08-24667-Y_     GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA-(JURY TRIAL)--TBC--REVOCATION HEARING--COMPETENCY HEARING

- ☐ A.  I request standard compensation for this case as follows (check one):
    - ☐ PROBATION VIOLATION.......$300    ☐ STATE JAIL/3RD DEGREE FELONY.........$400
    - ☐ 2ND DEGREE FELONY...............$500    ☐ 1ST DEGREE FELONY/MINI-CAP.............$600
    - ☐ CONTESTED TRIAL................☐$800 (Full day)........☐$400 (Half day)
    - ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)    Search Made for previous payment

- ☐ B.  I request additional compensation (at the rate of $100 per hour) in the amount of $_____ for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled "Detailed List of Legal Services Provided."  Date 6/9/09

- ☒ C.  Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _3,050.00_ for services performed and/or $ _____ for voir dire and each day of trial as listed on the attached "Detailed List of Legal Services Provided."

- ☐ D.  Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____ for services performed as listed on the attached "Detailed List of Legal Services Provided."

- ☐ E.  I request payment for expert witness/investigator expenses in the amount of $_____ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _3,050.00_  COURT APPROVED AMOUNT: $ _3,050._

### AFFIRMATION

I, the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law.   Date: _____

ATTORNEY INFORMATION (Print):          (For Auditor Use Vendor I D. _____)
Name _Douglas H. Parks_          State Bar No. _15520000_
Mailing Address: _321 Calm Water Lane  Holly Lake Ranch, TX 75765_
         Number  Street  Suite         City  State  Zip
Telephone: _(214) 521-2670_  Soc. Sec. No. _____
         (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I, the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas for services performed in the amount shown above.

_2 Jun 09_          _____
Date                Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

2

## SUMMARY OF SERVICES
### Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*

| Date | Service | Time |
|------|---------|------|
| 5-26-09 | To Court to begin voir dire. | 8.00 |
| 5-27-09 | To Court to continue voir dire. | 8.50 |
| 5-28-09 | To Court to continue voir dire. | 7.00 |
| 5-29-09 | To Court to continue voir dire. | 7.00 |
| TOTAL TIME | | 30.50 |

30.50 HOURS @ $150.00 PER HOUR = $3,050.00

3

**REQUEST FOR PAYMENT BY APPOINTED COUNSEL**

STATE OF TEXAS § IN THE _Criminal_ DISTRICT COURT _No. 2_
VS. _James Broadway_ § OF DALLAS COUNTY, TEXAS

Appointment Date: _2/1-08_ Disposition Date: _____ Partial/Supplemental Payment Request: (YES / NO
Dates of Jail Visits: _____

OFFENSE: _Cap. Murder_    CASE NO.: _F09-24667-FY_   GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SE'    " A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIR~ ···· ···· IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B"
This case has been finally disposed of in the following manner (circle one):

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL—TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
  ☐ PROBATION VIOLATION.......$300     ☐ STATE JAIL/3ᴿᴰ DEGREE FELONY.........$400
  ☐ 2ᴺᴰ DEGREE FELONY..............$500     ☐ 1ˢᵀ DEGREE FELONY/MINI-CAP.............$600
  ☐ CONTESTED TRIAL.................☐$800 (Full day)...
  ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$500 (Agreed)

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $ _____ for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled "Detailed List of Legal Services Provided."

☒ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour (in the amount of $ 9.9 $ _600.00_ for services performed and/or $ _4,725.00_ for voir dire and each day of trial as listed on the attached "Detailed List of Legal Services Provided."

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____ for services performed as listed on the attached "Detailed List of Legal Services Provided."

☐ E. I request payment for expert witness/investigator expenses in the amount of $ _PAY_ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _5,325.00_   COURT APPROVED AMOUNT: $ _5,325.00_

**AFFIRMATION**

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law.   Date: _____

ATTORNEY INFORMATION (Print): 
Name: _Douglas H. Parks_   State Bar No. _15520000_

Mailing Address: _321 Calm Water Lane_   _Holly Lake Ranch_  _TX_  _75765_
        Number         Street   Suite      City      State    Zip
Telephone _(214) 521-2670_   Soc. Sec. No _____
                                  (Not required if S.S. number is on file with County Auditor's Office)
TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_10 June 2009_          _____
Date                      Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

4

## SUMMARY OF SERVICES
Cause No. F08-24667-FY
*The State of Texas v. James Garfield Broadnax*
May 31, 2009 through June 4, 2009

| Date | Service | Time |
|------|---------|------|
| 5-31-09 | Review questionnaires; organize file. | 2.50 |
| 6-1-09 | To Court to continue voir dire. | 8.50 |
| 6-2-09 | To Court to continue voir dire. | 8.00 |
| 6-3-09 | To Court to continue voir dire. | 7.50 |
| 6-3-09 | Download qualified venireperson photos; review questionnaires. | 1.50 |
| 6-4-09 | To Court to continue voir dire. | 7.50 |
| TOTAL TIME | | 35.50 |

35.50 HOURS @ $150.00 = $5,325.00

5

44U1 6185

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

STATE OF TEXAS § IN THE _Criminal_ DISTRICT COURT _No. 7_
VS. _James Broadway_ § OF DALLAS COUNTY, TEXAS

Appointment Date: _2-16-08_ Disposition Date: _____ Partial/Supplemental Payment Request: (YES) NO
Dates of Jail Visits: _____

OFFENSE: _Cap. Murder_      CASE NO.: _F08-24667-FY_      GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".
This case has been finally disposed of in the following manner (circle one):

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
    ☐ PROBATION VIOLATION........$300    ☐ STATE JAIL/3RD DEGREE FELONY........$400
    ☐ 2ND DEGREE FELONY............$500    ☐ 1ST DEGREE FELONY/MIN.CAP........$600
    ☐ CONTESTED TRIAL................☐$800 (Full day).......☐$400 (Half day)
    ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $ _6-23-2009_ for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

☐ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _1,080.00_ for services performed and/or $ _3,750.00_ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____ for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E. I request payment for ~~expert witness/investigator~~ expenses in the amount of $ _140.94_ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _4,970.94_    COURT APPROVED AMOUNT: $ _4,970.94_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies of anything else of value for said services.

_Douglas H. Parks_ , Attorney at Law    Date: _____

ATTORNEY INFORMATION (Print)    (For Auditor Use) Vendor I D _____ )
Name _Douglas H. Parks_    State Bar No _15520000_
Mailing Address: _321 Calm Water Lane_ _Holly Lake Ranch, TX 75765_
    Number  Street    City    State    Zip
Telephone: _(214) 521-2667_  Soc. Sec. No. _____
    (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_16 Jun 09_ _____    _Michael R. Snipes_ _____
Date    Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

6

**SUMMARY OF SERVICES**
Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*
June 5, 2009 through June 11, 2009

| Date | Service | Time |
|---|---|---|
| 6-7-09 | Review questionnaires. | 1.50 |
| 6-8-09 | To Court to continue voir dire. | 7.00 |
| 6-8-09 | Update primary trial notebook; email mitigation investigator; begin review of school and medical records. | 3.60 |
| 6-9-09 | To Court to continue voir dire. | 6.50 |
| 6-10-09 | To Court to continue voir dire. | 5.50 |
| 6-11-09 | To Court to continue voir dire. | 6.00 |
| 6-11-09 | Review additional materials and update primary trial notebook; review questionnaires. | 2.10 |
| TOTAL TIME | | 32.20 |

32.20 HOURS @ $150.00 = $4,830.00

**TO EXPENSES**

| 4-8-09 | FedEx Kinkos - Copying | $140.94 |
|---|---|---|

TOTAL AMOUNT REQUESTED         $4,970.94

7

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS __James Broadway__ §   IN THE _Criminal_ DISTRICT COURT _No. 7_
VS. §   OF DALLAS COUNTY. TEXAS

Appointment Date: _2-11-08_ Disposition Date: _____   Partial/Supplemental Payment Request: (YES) NO
Dates of Jail Visits: _____
OFFENSE: _Cap. Murder_     CASE NO.: _FO8-24667-FY_     GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA. TRIAL. CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW. I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE. ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".
**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL—TBC--REVOCATION HEARING--COMPETENCY HEARING

A.  I request standard compensation for this case as follows (check one):
- PROBATION VIOLATION........$300     STATE JAIL/3RD DEGREE FELONY........$400
- 2ND DEGREE FELONY..............$500     1ST DEGREE FELONY/MINI-CAP........$600
- CONTESTED TRIAL.................$800 (Full day).......$400 (Half day)
- COMPETENCY HEARING........$600 (Contested)......$300 (Agreed)

B.  I request additional compensation (at the rate of $100 per hour) in the amount of $ _____
for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained. I must attach the form entitled *"Detailed List of Legal Services Provided."*

C.  Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of
$ _1,080.00_ for services performed and/or $ _3,750.00_ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

D.  Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____
for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

E.  I request payment for ~~expert witness/investigator~~ expenses in the amount of $ _140.94_ for services
performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _4,970.94_   COURT APPROVED AMOUNT: $ _4,970.94_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law.   Date: _____

ATTORNEY INFORMATION (Print)   (For Auditor Use Vendor I.D. _____ )
Name _Douglas H. Parks_   State Bar No _15520000_
Mailing Address: _321 Calm Water Lane Holly Lake Ranch, TX 75765_
Number     Street     Suite     City     State     Zip
Telephone: _(214) 521-2670_ Soc. Sec. No. _____
(Not required if S.S. number is on file with County Auditor's Office)
TO THE COMMISSIONERS COURT OF DALLAS COUNTY. TEXAS:
I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure. to be paid from the General Fund of Dallas County. Texas. for services performed in the amount shown above.

_16 Jun 09_     _____
Date     Judge
Reason for Denial or variation: Request exceeds flat rate. Request exceeds hourly rate. Other, see attached.

8

## SUMMARY OF SERVICES
Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*
June 5, 2009 through June 11, 2009

| Date | Service | Time |
|------|---------|------|
| 6-7-09 | Review questionnaires. | 1.50 |
| 6-8-09 | To Court to continue voir dire. | 7.00 |
| 6-8-09 | Update primary trial notebook; email mitigation investigator; begin review of school and medical records. | 3.60 |
| 6-9-09 | To Court to continue voir dire. | 6.50 |
| 6-10-09 | To Court to continue voir dire. | 5.50 |
| 6-11-09 | To Court to continue voir dire. | 6.00 |
| 6-11-09 | Review additional materials and update primary trial notebook; review questionnaires. | 2.10 |
| TOTAL TIME | | 32.20 |

32.20 HOURS @ $150.00 = $4,830.00

## TO EXPENSES

| 4-8-09 | FedEx Kinkos - Copying | $140.94 |
|--------|------------------------|---------|

TOTAL AMOUNT REQUESTED        $4,970.94

9



FedEx Kinko's
3905 Oaklawn Ave Ste 110
Dallas, TX 75219-4007
(214) 522-7434

4/8/2009                    11:16:08 AM CST
Trans.: 7208                Branch: 0191
Register: 003               Till:T291943
Team Member: Ingrid L.
Customer: Doug Parks

SALE

*01910037208*

CAP MURDER                      130.20
                    4 @ 65.1000

FS BW SS Standard               130.20 T
0001        2,604.00 @ 0.1000
Item Discount Amt.      0.0500
Price                   0.0500


Total Discount                  130.20
Sub-Total                       130.20
Deposit                           0.00
 Tax                             10.74
Total                           140.94
    Visa (S)                    140.94
    Account:  8163
    Auth: 08702A (A)
Total Tender                    140.94
Change Due                        0.00

Thank you for visiting

FedEx Kinko's
Make It. Print It. Pack It. Ship It.
www.fedexkinkos.com

Customer Copy

10

59603                                                                    4407-6185

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE _Criminal_ DISTRICT COURT _No. 7_ |
| VS. _James Broadway_ | § | OF DALLAS COUNTY. TEXAS |

Appointment Date: _2-11-09_ Disposition Date: _____ Partial/Supplemental Payment Request: YES / NO
Dates of Jail Visits: _____

| OFFENSE: | CASE NO.: | GRADE: |
|---|---|---|
| _Cap. Murder_ | _F08-24667-FY_ /? | _Death Penalty_ |

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL. PLEA, TRIAL. CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW. I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE. ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL—TBC--REVOCATION HEARING--COMPETENCY HEARING

A.  I request standard compensation for this case as follows (check one):
- ☐ PROBATION VIOLATION........$300     ☐ STATE JAIL/3RD DEGREE FELONY........$400
- ☐ 2ND DEGREE FELONY..............$500     ☐ 1ST DEGREE FELONY/MINI-CAP............$600
- ☐ CONTESTED TRIAL................☐$800 (Full day)........☐$400 (Half day)
- ☐ COMPETENCY HEARING... .....☐$600 (Contested)......☐$300 (Agreed)

☐ B.  I request additional compensation (at the rate of $100 per hour) in the amount of $ _____ for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

C.  Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _450.00_ for services performed and/or $ _4,050.00_ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D.  Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____ for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E.  I request payment for expert witness/investigator expenses in the amount of $ _____ for services performed as listed on the attached itemized bill.

**TOTAL AMOUNT REQUESTED: $ _4,500.00_   COURT APPROVED AMOUNT: $ _4,500.00_**

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies for anything else of value for said services.

_____ , Attorney at Law.   Date. _____

ATTORNEY INFORMATION (Print):                      (For Auditor Use Vendor I.D _____ )

Name _Douglas H. Parks_ _____ State Bar No. _15520000_

Mailing Address: _321 Calm Water Lane   Holly Lake Ranch, TX  75765_
                    Number          Street          City       State       Zip

Telephone: _(214) 521-2670_ Suite ___ Soc. Sec. No. _____
                                                     (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS.

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel. that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05. Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas. for services performed in the amount shown above.

_23 June 09_
Date                                             Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

11

*Cap Murder Death*

120 44076185

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS § IN THE _Criminal_ DISTRICT COURT _No. 7_
vs. _James Broadnax_ § OF DALLAS COUNTY, TEXAS

Appointment Date: _2-11-09_ Disposition Date: _____ Partial/Supplemental Payment Request: YES/NO
Dates of Jail Visits: _____

OFFENSE: _Cap Murder_ CASE NO.: _F08-24667-Y_ GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
    ☐ PROBATION VIOLATION.......$300    ☐ STATE JAIL/3RD DEGREE FELONY.........$400
    ☐ 2ND DEGREE FELONY..............$500    ☐ 1ST DEGREE FELONY/MINI-CAP.............$600
    ☐ CONTESTED TRIAL................☐$800 (Full day)........☐$400 (Half day)
    ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $_____
for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

_See Attached - Supplemental._

☒ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of
$_____ for services performed and/or $_1,525.00_ for voir dire and each day of
trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____
for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E. I request payment for expert witness/investigator expenses in the amount of $_____ for services
performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _1,525.00_ COURT APPROVED AMOUNT: $ _1,525.00_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law Date: _____

ATTORNEY INFORMATION (Print): (For Auditor Use Vendor I.D _____)
Name _Douglas H. Parks_ State Bar No. _15520000_

Mailing Address: _321 Calm Water Lane_ _Holly Lake Ranch_ _TX_ _75765_
    Number    Street    Suite    City    State    Zip
Telephone: _(214) 521-2670_ Soc. Sec. No. _____
    (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_25 JUN 09_ _____
Date                              Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached. 12

## SUMMARY OF SERVICES
Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*
May 26, 2009 through May 29, 2009

| Date | Service | Time |
|------|---------|------|
| 5-26-09 | To Court to begin voir dire. | 8.00 |
| 5-27-09 | To Court to continue voir dire. | 8.50 |
| 5-28-09 | To Court to continue voir dire. | 7.00 |
| 5-29-09 | To Court to continue voir dire. | 7.00 |
| TOTAL HOURS | | 30.50 |

30.50 HOURS @ $150.00 PER HOUR = $4,575.00

$4,575.00 less $3,050 paid per invoice paid 6-29-09 = $1,525.00

**THIS IS AN AMENDED AND SUPPLEMENTAL PAYMENT REQUEST DUE TO ERROR IN CALCULATION ON ORIGINAL PAYMENT REQUEST OF 6-29-09.**

13

**REQUEST FOR PAYMENT BY APPOINTED COUNSEL**

Death Pen

THE STATE OF TEXAS          §    IN THE _Criminal_ DISTRICT COURT _No. 7_
VS _James Broadnax_          §    OF DALLAS COUNTY, TEXAS

Appointment Date: _2-11-09_  Disposition Date: _____  Partial/Supplemental Payment Request: (YES) / NO
Dates of Jail Visits: _____
OFFENSE. _Cap Murder_          CASE NO.: _F08-24667-Y_          GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA. TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL—TBC--REVOCATION HEARING–COMPETENCY HEARING

☐ A.  I request standard compensation for this case as follows (check one):
    ☐ PROBATION VIOLATION.......$300    ☐ STATE JAIL/3RD DEGREE FELONY.........$400
    ☐ 2ND DEGREE FELONY..............$500    ☐ 1ST DEGREE FELONY/MINI-CAP............$600
    ☐ CONTESTED TRIAL................☐$800 (Full day).........☐$400 (Half day)
    ☐ COMPETENCY HEARING. ......☐$600 (Contested)......☐$300 (Agreed)

☐ B.  I request additional compensation (at the rate of $100 per hour) in the amount of $_____ for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

☑ C.  Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _1,425.00_ for services performed and/or $ _3,000.00_ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D.  Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____ for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E.  I request payment for expert witness/investigator expenses in the amount of $ _____ for services performed as listed on the attached itemized bill.

**TOTAL AMOUNT REQUESTED: $ _4,425.00_  COURT APPROVED AMOUNT: $ _4,425._**

**AFFIRMATION**

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____ , Attorney at Law.    Date: _____

ATTORNEY INFORMATION (Print);          (For Auditor Use Vendor I.D. _____ )
Name _Douglas H. Parks_          State Bar No. _15520000_
Mailing Address: _321 Calm Water Lane    Holly Lake Ranch, Tx 75765_
    Number    Street          Suite          City          State          Zip
Telephone: _(214) 521-2670_    Soc. Sec. No. _____
    (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:
    I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_29 Jun 09_          _Michael R. Snipes_
Date          Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

14

*Death Pen*

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS § IN THE _Criminal_ DISTRICT COURT _No. 7_
VS. _James Broadnax_ § OF DALLAS COUNTY, TEXAS

Appointment Date: *2-11-09* Disposition Date: _____ Partial/Supplemental Payment Request: (YES) NO
Dates of Jail Visits: _____

OFFENSE: _Cap. Murder_ CASE NO.: _F08-24662-FY_ GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
   ☐ PROBATION VIOLATION........$300     ☐ STATE JAIL/3RD DEGREE FELONY.........$400
   ☐ 2ND DEGREE FELONY...............$500     ☐ 1ST DEGREE FELONY/MINI-CAP....... .......$600
   ☐ CONTESTED TRIAL.................☐$800 (Full day).......☐$400 (Half day)
   ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $ _____
   for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

☒ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ *2,400.00* for services performed and/or $ *7,425.00* for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____
   for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E. I request payment for expert witness/investigator expenses in the amount of $ _____ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ *9,825.00* COURT APPROVED AMOUNT: $ *9,825.00*

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law   Date: _____

ATTORNEY INFORMATION (Print):                              (For Auditor Use Vendor I.D. _____ )

Name _Douglas H. Parks_ _____ State Bar No _15520000_

Mailing
Address: _321 Calm Water Lane   Holly Lake Ranch, TX 75765_
         Number    Street    Suite          City          State      Zip

Telephone: _(214) 521-2670_ Soc. Sec. No _____
(Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas for services performed in the amount shown above.

_14 July 09_
Date                                    Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

15



## SUMMARY OF SERVICES
Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*
June 29, 2009 through July 10, 2009

| Date | Service | Time |
|------|---------|------|
| 6-29-09 | To Court to continue voir dire. | 7.00 |
| 6-29-09 | To Oak Lawn office to meet with Dr. ***; pull and review added questionnaires; research gang issue. | 3.50 |
| 6-30-09 | To Court to continue voir dire. | 8.50 |
| 7-1-09 | To Court to continue voir dire. | 2.50 |
| 7-2-09 | To Court to continue voir dire. | 2.50 |
| 7-5-09 | Pull and review remaining questionnaires. | 2.00 |
| 7-6-09 | To Court to continue voir dire; pretrial conference with David Alex. | 6.50 |
| 7-6-09 | Re-pull new list of questionnaires and review. | 1.00 |
| 7-7-09 | To Court to continue voir dire. | 7.00 |
| 7-7-09 | Pull questionnaires for new schedule; review to end of week. | 1.00 |
| 7-8-09 | To Court to continue voir dire. | 7.00 |
| 7-9-09 | To Court to continue voir dire.  Finish pool selection. | 8.50 |
| 7-10-09 | Final organization of jury pool; to courthouse to meet Brad Lollar, Brendan Ross; Keri Mallon for conference; to Public Defender's Office to review and rate prospective jurors. | 8.50 |
| **TOTAL TIME** | | 65.50 |

65.50 HOURS @ $150.00 = $9,825.00

16

59603

4407-6185

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS __Broadway__ § IN THE __Criminal__ DISTRICT COURT __No. 7__
VS. __James Broadway__ § OF DALLAS COUNTY, TEXAS

Appointment Date: __2-11-09__ Disposition Date: __8-21-09__ Partial/Supplemental Payment Request: YES / NO

Dates of Jail Visits: _____

OFFENSE: __Cap. Murder__   CASE NO.: __F-08-24667-FY__   GRADE: __Death Penalty__

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A.  I request standard compensation for this case as follows (check one):
    ☐ PROBATION VIOLATION.......$300    ☐ STATE JAIL/3RD DEGREE FELONY.........$400
    ☐ 2ND DEGREE FELONY.............$500    ☐ 1ST DEGREE FELONY/MINI-CAP.............$600
    ☐ CONTESTED TRIAL...............☐$800 (Full day).......☐$400 (Half day)
    ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)

☐ B.  I request additional compensation (at the rate of $100 per hour) in the amount of $_____
for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

☒ C.  Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ __1,095.00__ for services performed and/or $ __15,000.00__ for trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D.  Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____
for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☐ E.  I request payment for expert witness/investigator expenses in the amount of $_____ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ __16,095.00__ COURT APPROVED AMOUNT: $ __16,695.00__

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law.    Date: _____

ATTORNEY INFORMATION (Print):    (For Auditor Use Vendor I.D. _____)

Name __Douglas H. Parks__    State Bar No. __15520000__

Mailing Address: __321 Calm Water Lane  Holly Lake Ranch, Tx   75765__
    Number    Street    Suite    City    State    Zip

Telephone: __(214) 521-2670__    Soc. Sec. No. _____
    (Not required if S.S number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

__28 AUG 09__
Date    Judge

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

17

## SUMMARY OF SERVICES
Cause No. F08-24667-FY
*The State of Texas v. James Broadnax*
August 10, 2009 through August 21, 2009

| Date | Activity | Time |
|------|----------|------|
| 8-10-09 | To Court for jury trial and return. Prepare for tomorrow. | Trial Day |
| 8-11-09 | To Court to continue jury trial and return. Prepare for tomorrow. | Trial Day |
| 8-12-09 | To Court to continue jury trial and return. Prepare for tomorrow. | Trial Day |
| 8-13-09 | To Court to continue jury trial and return. Prepare for tomorrow. | Trial Day |
| 8-14-09 | To Court to continue jury trial and return. Prepare for tomorrow. | Trial Day |
| 8-16-09 | To hotel to meet with witnesses; preparation for witness testimony; review court's charge and prepare objections. | 7.30 |
| 8-17-09 | To Court to continue trial and return. Prepare for tomorrow. | Trial Day |
| 8-18-09 | To Court to continue trial and return. Prepare for tomorrow. | Trial Day |
| 8-19-09 | To Court to continue trial and return. Prepare for tomorrow. | Trial Day |
| 8-20-09 | To Court to continue trial and return. Prepare for tomorrow. | Trial Day |
| 8-21-09 | To Court to continue and complete trial. | Trial Day |

18

TOTAL DAYS = 10 @ $1,500.00 PER DAY = $15,000.00

7.3 HOURS @ $150.00 = $1,095.00

TOTAL REQUEST FOR PAYMENT = $16,095.00

19

108761                                                                    4407-6186

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS _Broadway_ §   IN THE _Criminal_ DISTRICT COURT _No. 7_
vs. _James Broadway_ §   OF DALLAS COUNTY, TEXAS

Appointment Date: _____ Disposition Date: _8-21-09_ Partial/Supplemental Payment Request: YES / NO
Dates of Jail Visits: _____
OFFENSE: _Cap. Murder_        CASE NO.: _F08-24667_        GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".
This case has been finally disposed of in the following manner (circle one):

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
    ☐ PROBATION VIOLATION........$300    ☐ STATE JAIL/3RD DEGREE FELONY.........$400
    ☐ 2ND DEGREE FELONY...............$500    ☐ 1ST DEGREE FELONY/MINI-CAP............$600
    ☐ CONTESTED TRIAL.................☐$800 (Full day).........☐$400 (Half day)
    ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed) Search made for previous payment

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $ _____
for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

☐ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _____ for services performed and/or $ _____ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____
for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☑ E. I request payment for expert witness/investigator expenses in the amount of $ _8,380.00_ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _8,380.00_    COURT APPROVED AMOUNT: $ _8,380.00_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law    Date. _____

ATTORNEY INFORMATION (Print):                    (For Auditor Use Vendor I.D. _1552-0000_ )
Name _Gilda Kessner_                              State Bar No. _15520000_
Mailing Address: _P.O. Box 181954    Dallas, TX    75218-1954_
    Number   Street   Suite   City   State   Zip
Telephone: _____ Soc. Sec. No. _75-2828281_
(Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:
I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_____          _____
Date                                 Judge
Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

20

**Gilda Kessner, Psy.D., P.C.**

PO Box 181954
Dallas, TX 75218-1954
214.455.7692

| Bill To: | In Reference To: |
|---|---|
| Doug Parks<br>321 Calm Water Lane<br>Holly Lake Ranch, Texas 75765 | State of Texas vs. Jar<br>Cause No. F08-24667 |

| DATE | SERVICE PROVIDED | HOURS | R |  |
|---|---|---|---|---|
| 7/10/2009 | Research & Literature Review | 2 | | |
| 7/15/2009 | Attorney Conference, Travel | 3 | | |
| 7/15/2009 | Records Review | 4 | | |
| 7/16/2009 | Attorney Conference | 0.5 | | |
| 7/22/2009 | Research & Literature Review | 2 | | |
| 7/27/2009 | Records Review | 3 | 200.00 | 600.00 |
| 8/2/2009 | Telephone Conference: Attorney | 0.3 | 200.00 | 60.00 |
| 8/3/2009 | Records Review | 3.4 | 200.00 | 680.00 |
| 8/11/2009 | Attorney Conference, Travel | 2.5 | 200.00 | 500.00 |
| 8/12/2009 | Attorney Conference, Testimony Observation, Travel | 4.5 | 200.00 | 900.00 |
| 8/14/2009 | Testimony Observation, Travel | 2.5 | 200.00 | 500.00 |
| 8/17/2009 | Testimony Observation, Attorney Conference, Travel | 6.4 | 200.00 | 1,280.00 |
| 8/18/2009 | Records Review | 2.5 | 200.00 | 500.00 |
| 8/19/2009 | Testimony Observation, Attorney Conference, Travel | 1.7 | 200.00 | 340.00 |
| 8/19/2009 | Testimony Observation, Attorney Conference, Travel | 3.6 | 200.00 | 720.00 |

| Payable: Gilda Kessner, Psy.D., P.C.<br>Tax ID 75-2828281, Texas Lic. 2-6886 | **Total** | $8,380.00 |
|---|---|---|

21

# *Tab* 20C

22

4407
6185

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS    §   IN THE _Criminal_ DISTRICT COURT _No.7_
VS. _James Broadnax_    §   OF DALLAS COUNTY, TEXAS

Appointment Date: _____ Disposition Date: _____ Partial/Supplemental Payment Request YES / NO
Dates of Jail Visits: _____

| OFFENSE: | CASE NO.: | GRADE: |
|---|---|---|
| _Cap. Murd._ | _F08-24667-FY_ | _Death Penalty_ |

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B"

**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL—TBC—REVOCATION--TBC--COMPETENCY HEARING

☐ A. I request standard compensation for this case as follows (check one):
     ☐ PROBATION VIOLATION........$300    ☐ STATE JAIL/3RD DEGREE FELONY........$400
     ☐ 2ND DEGREE FELONY...............$500    ☐ 1ST DEGREE FELONY/MIN-CAP.............$600
     ☐ CONTESTED TRIAL.................☐$800 (Full day).........☐$400 (Half day)
     ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$___ (Agreed)

☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $_____
     for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled "Detailed List of Legal Services Provided."

☐ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $_____ for services performed and/or $_____ for voir dire and each day of trial as listed on the attached "Detailed List of Legal Services Provided."

☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____ for services performed as listed on the attached "Detailed List of Legal Services Provided."

☒ E. I request payment for expert witness/investigator expenses in the amount of $ _4,512.00_ for services performed as listed on the attached itemized bill.

**TOTAL AMOUNT REQUESTED: $** _4,512.00_    **COURT APPROVED AMOUNT: $** _4,512.00_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law.   Date: _5-6-09_

ATTORNEY INFORMATION (Print):     (For Auditor Use Vendor I.D. _____)
Name _Brendan Ross Mitigation_    State Bar No _15520000_

Mailing Address: _3767 Forest Lane_ _124 PMB 1257 Dallas, TX 75244_
    Number     Street _2604_     Suite    City    State    Zip
Telephone. _214-360-2604_    Soc. Sec. No. _____
     (Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:

I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_7 MAY 2009_
Date                _Michael R. Snipes_
                Judge          23

Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

# Brendan Ross Mitigation
## EIN 20-1183967

**James Broadnax**
**Hourly Charges**

Initial Billing

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 2/25/2009 | Consult with D. Parks re: case set up | 0.50 | $ 75.00 | $ 37.50 |
| | Fax requests and sample court order | 0.25 | 75.00 | 18.75 |
| | Email V. Duhon | 0.13 | 75.00 | 9.75 |
| | Setup Broadnax case file | 0.75 | 75.00 | 56.25 |
| 2/27/2009 | Initial meeting with client | 3.00 | 75.00 | 225.00 |
| | Initial contact with expert witness 1 | 1.00 | 75.00 | 75.00 |
| 3/2/2009 | Write up interview notes | 2.00 | 75.00 | 150.00 |
| | Scan MHMR records | 2.00 | 75.00 | 150.00 |
| | Contact expert witness #1 | 0.50 | 75.00 | 37.50 |
| | Notorize releases | 0.50 | 75.00 | 37.50 |
| | Contacted investigator re: expert witness #1 | 0.25 | 75.00 | 18.75 |
| | Contact expert witness #1 re: records | 0.50 | 75.00 | 37.50 |
| 3/3/2009 | Contacted  Clinton Primary school | 0.25 | 75.00 | 18.75 |
| | Faxed request to Clinton Primary | 0.50 | 75.00 | 37.50 |
| | Contacted Yerger Middle school | 0.25 | 75.00 | 18.75 |
| | Faxed request to Yerger | 0.50 | 75.00 | 37.50 |
| | Contacted Hope high school | 0.25 | 75.00 | 18.75 |
| | Faxed request to Hope high school | 0.50 | 75.00 | 37.50 |
| | Contacted Garland learning center | 0.25 | 75.00 | 18.75 |
| | Faxed request to Garland learning center | 0.50 | 75.00 | 37.50 |
| | Contact Kilpartick elementary | 0.25 | 75.00 | 18.75 |
| | Contacted by Jan at Kilpartick elementary | 0.75 | 75.00 | 56.25 |
| | Contacted community hospital of Monteray | 0.25 | 75.00 | 18.75 |
| | Contacted county of Monterrey | 0.25 | 75.00 | 18.75 |
| | Contacted VA of Monterrey | 0.50 | 75.00 | 37.50 |
| | Contacted Monterrey County Superior court | 0.25 | 75.00 | 18.75 |
| 3/5/2009 | Research Fort Ord hospital | 2.00 | 75.00 | 150.00 |
| | Research Gangster diciples of Dallas | 1.00 | 75.00 | 75.00 |
| | Contacted Hope high school re: record request | 0.50 | 75.00 | 37.50 |
| | Contacted by Charles George of Hope highschool | 0.50 | 75.00 | 37.50 |
| 3/11/2009 | Prepare for client interview | 2.50 | 75.00 | 187.50 |
| | Scan and print client records | 0.50 | 75.00 | 37.50 |
| | Write letter to SSA re: employment records | 1.75 | 75.00 | 131.25 |
| | Attemp contact with A. Kelly | 0.13 | 75.00 | 9.75 |
| | Attempt contact with T. Thompson | 0.50 | 75.00 | 37.50 |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 29 of 263   PageID 11017

# Brendan Ross Mitigation
# EIN 20-1183967

## James Broadnax
## Hourly Charges

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 3/12/2009 | Trip to Dallas county; Interview client | 4.00 | 75.00 | 300.00 |
| 3/13/2009 | Wrtie up interview notes | 1.00 | 75.00 | 75.00 |
| | Fax Doug Parks | 0.50 | 75.00 | 37.50 |
| 3/19/2009 | Meet with investigator @ Dallas county | 4.00 | 75.00 | 300.00 |
| 3/21/2009 | Read/review Broadnax discovery | 6.00 | 75.00 | 450.00 |
| 3/22/2009 | Scan discovery | 3.00 | 75.00 | 225.00 |
| | Read/review Broadnax discovery | 3.50 | 75.00 | 262.50 |
| 3/24/2009 | Contact Hope Police department | 0.25 | 75.00 | 18.75 |
| | Faxed record requst to Hope PD | 0.50 | 75.00 | 37.50 |
| | Contact Arkadelphia Police department | 0.25 | 75.00 | 18.75 |
| | Faxed record request to Arkadelphia PD | 0.50 | 75.00 | 37.50 |
| | Conact Texarkana PD | 0.25 | 75.00 | 18.75 |
| | Faxed record request to Texarkana PD | 0.50 | 75.00 | 37.50 |
| | Contacted A. Kelly | 0.50 | 75.00 | 37.50 |
| | Contacted Sonic Corporate office | 0.50 | 75.00 | 37.50 |
| | Faxed record requst to Sonic Corporate office | 0.50 | 75.00 | 37.50 |
| 3/25/2009 | Contacted manager at Sonic in Hope, Arkansas | 1.00 | 75.00 | 75.00 |
| | Contacted Ashdown Highschool | 0.25 | 75.00 | 18.75 |
| | Faxed record request to Ashdown | 0.50 | 75.00 | 37.50 |
| 3/26/2009 | Trip to Dallas county; Interview client | 4.00 | 75.00 | 300.00 |
| 3/31/2009 | Contact Ashdown school | 0.25 | 75.00 | 18.75 |
| | Fax record reqeust to Ashdown High school | 0.50 | 75.00 | 37.50 |
| | Contacted Mt. Vernon High school | 0.25 | 75.00 | 18.75 |
| | Fax record request to Vernon High school | 0.50 | 75.00 | 37.50 |
| | | 59.01 | 75.00 | $ 4,425.75 |

# Brendan Ross Mitigation
## EIN 20-1183967

**James Broadnax**
**Expenses**

| Date | Place | Billable |
|------|-------|----------|
| 2/27/2009 | Parking Dallas County | $ 5.00 |
| | Mileage to Dallas County 40.6 round trip (40.6 miles * $.585/per mile) | $ 23.75 |
| 3/12/2009 | Parking Dallas County | 5.00 |
| | Mileage to Dallas County 40.6 round trip (40.6 miles * $.585/per mile) | $ 23.75 |
| 3/26/2009 | Parking Dallas County | 5.00 |
| | Mileage to Dallas County 40.6 round trip (40.6 miles * $.585/per mile) | $ 23.75 |

$86.25

Case 3:15-cv-01758-N Document 42-3 Filed 06/29/16 Page 30 of 263 PageID 11018

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS      §    IN THE _Criminal_ DISTRICT COURT _No. 7_
VS. _James Broadnax_     §    OF DALLAS COUNTY, TEXAS

Appointment Date: _____ Disposition Date: _____ Partial/Supplemental Payment Request: YES / NO
Dates of Jail Visits: _____
OFFENSE: _Cap. Murder_    CASE NO.: _F08-24667-FY_    GRADE: _Death Penalty_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA. TRIAL. CONTINUATION OF COMMUNITY SUPERVISION. OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW. I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".
**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA--JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

❏ A. I request standard compensation for this case as follows (check one):
     ❏ PROBATION VIOLATION.......$300    ❏ STATE JAIL/3ᴿᴰ DEGREE FELONY.........$400
     ❏ 2ᴺᴰ DEGREE FELONY.............$500    ❏ 1ˢᵀ DEGREE FELONY/MINI-CAP...........$600
     ❏ CONTESTED TRIAL................❏$800 (Full day)........❏$400 (Half day)
     ❏ COMPETENCY HEARING........❏$600 (Contested)......❏$300 (Agreed)

❏ B. I request additional compensation (at the rate of $100 per hour) in the amount of $ _____
for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

❏ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $ _____ for services performed and/or $ _____ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

❏ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $ _____ for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

☒ E. I request payment for expert witness/investigator expenses in the amount of $ _____ for services performed as listed on the attached itemized bill.

TOTAL AMOUNT REQUESTED: $ _11,331.60_    COURT APPROVED AMOUNT: $ _11,331.60_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_Douglas H. Parks_ Attorney at Law.    Date: _____

ATTORNEY INFORMATION (Print). _Pay:_    (For Auditor Use Vendor I.D. _____ )
Name _Brendan Ross Mitigation_   State Bar No. _15520000_

Mailing Address _3767 Forest Lane, Ste 124 PMB 1257 Dallas Tx 75244_
Number    Street    Suite    City    State    Zip
Telephone: _(214) 366-2604_   Soc. Sec. No. _EID # 20-1183967_
(Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY. TEXAS:
     I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05. Texas Code of Criminal Procedure. to be paid from the General Fund of Dallas County, Texas. for services performed in the amount shown above.

_30 Jun 09_          _R. Sipes_
Date                Judge

Reason for Denial or variation: ❏ Request exceeds flat rate. ❏ Request exceeds hourly rate. ❏ Other, see attached.

27

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 32 of 263   PageID 11020

Brendan Ross Mitigation
3767 Forest Lane, STE 124, PMB 1257
Dallas, Texas 75244
EID No. 20-1183967

**James Broadnax**

| | |
|---|---|
| Expenses To Date Billing | $ 692.85 |
| Hourly Charges Billing | $ 10,638.75 |
| **Mitigation Billing** | $ 11,331.60 |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 33 of 263   PageID 11021

# Brendan Ross Mitigation
# EIN 20-1183967

**James Broadnax**
**Expenses**

| Date | Place | Billable |
|---|---|---|
| 5/15/2009 | Mileage to El Dorado, AR 650 round trip (650 miles * $.585/per mile) | $ 380.25 |
| 5/16/2009 | Courtyard Marriot, El Dorado, AR | 117.52 |
| 5/16/2009 | Out of town lunch | 14.03 |
| 5/16/2009 | Out of town meal | 40.48 |
| 5/17/2009 | Out of town meal | 56.07 |
| 5/18/2009 | Ace Parking, Frank Crowley Courts | 5.00 |
| 6/3/2009 | Check 1258, Social Security Administration | 79.50 |

$692.85



**COURTYARD**
**Marriott**

Courtyard by Marriott
Texarkana

5001 N.cowhorn Creek Loop
Texarkana, Tx. 75503
T 903 334.7400



B. Ross

Room: 318

Room Type: GENR

Number of Guests: 1

Rate: $104.00          Clerk:

| Date | Description | Charges | Credits |
|---|---|---|---|
| 16May09 | Room Charge | 104.00 | |
| 16May09 | Occupancy Sales Tax | 2.08 | |
| 16May09 | City Tax | 5.20 | |
| 16May09 | State Occupancy Tax | 6.24 | |
| 17May09 | Master Card | | 117.52 |
| | Card #: MCXXXXXXXXXXXXX5708/XXXX | | |
| | Amount:  117.52 Auth: 279367  Signature on File | | |
| | This card was electronically swiped on 16May09 | | |

Balance:          0.00

As a Marriott Rewards member, you could have earned points towards your free dream vacation today. Start earning points and elite status, plus enjoy exclusive member offers. Enroll today at the front desk, MarriottRewards.com, or 801-468-4000.

Want your final hotel bill by email?  Just ask the Front Desk!  See "Internet Privacy Statement" on Marriott.com.

30

**BRENDAN ROSS MITIGATION**    02-05    1258
214-388-2604
3810 NORTHVIEW LN.
DALLAS, TX 75229-2738    6/3/08    32-2/1110 TX
                                        178
                                        Date

Pay to the
Order of _Social Security Administration_  $ 79.50

_Seventy nine and 50/100_ _____ Dollars

**Bank of America**

ACH R/T 111000025

For _Records for A.J. Kelly_    _Brandon Ross_    MP

⑂111000025⑂ 00⬛⬛⬛⬛⬛ 1258
_James Broadway's Mother_

31

El Dorado, Arkansas
5/16



**ECK**

2·15 +
4·95 +
4·95 +
5·75 +
6·75 +
12·50 +
37·05
···3·43
40·48

$40.48

2x BRD/Pudd    4,95 x 2

Tax
Total
Thank You — Please Come Again

SYSCO CORPORATION, HOUSTON, TX    Reorder # 4977062

32

```
B A C K U P   P R I N T E R
C A S H I E R   # 2   P R I N
```

```
***** YOU MAY BE A WINNER *****
* To complete a Guest Survey & *
* enter a monthly drawing for  *
*     your chance to win a     *
*    Cracker Barrel Rocker...   *
*                              *
*    CALL: 1-888-678-5845      *
  ACCESS CODE: 375-136-983-130
*                              *
* Enter access code above to   *
*   take survey. Access Code    *
* expires 7 days from today.    *
* For Sweepstakes rules visit   *
*    www.CrackerBarrel.com      *
* * * * * * * * * * * * * * * *
```



```
      009831
```

```
   Cracker Barrel Store #375
          Texarkana, TX
1039983 VALENTIONO C          1
---------------------------------
TBL 141/1    9 8 3 1     GST 2
      MAY16'09  7:02PM
---------------------------------
 1 ICED TEA SWEET       1.89
 1 1/2 BEANS&GREENS     4.79
 1 WATER                0.00
 1 1/2 BEANS&GREENS     4.79
   014270
 1 TOOTSIE ROLL         1.49
   Subtotal            12.96
   Tax                  1.07
   Total          1 4 . 0 3
   CASH               20.00
   Change Due           5.97
--1205154 CLOSED MAY16  7:32PM--
```

```
500 N. COLLEGE
EL DORADO, AR. 71730

XPRESS DEAL INC. 1
500 N COLLEGE
EL DORADO              AR
DLR# 0004083201S

05/16/09        18:15:2
M/C             ACCT#
**** **** **** 1950
RCPT# 9-3771
INV# 151509
REF# 96000730083
AUTH# 00 APPR 938865

PUMP# 7          SELF
PREMIUM       11.488G
PRICE/LTR      $2.509
FUEL TOTAL    $28.82
TOTAL         $28.82

THANK YOU!!
COME BACK SOON!!
```

33

*Broadnax*

CANTINA LOREDO
GOURMET MEXICAN FOOD
4835 Royal Lane Suite 755
Dallas, TX 75229
214 265-1610

Server: Jesus 235          DOB: 05/18/2009
01:35 PM                         07:19 2009
Table: 19/1                       1. 19005

N°                                 01°13:7
Card XXXXXXXXXX5787
Magnetic card present: card Reader F
Approval: 707147

+Amount               15.07

+ Tip   ............

= Total  *56.07*

X  ...................................

JOIN THE CLUB!
SIGN UP FOR OUR RECEIPT
TO RECEIVE SPECIAL OFFERS
AND INFORMATION

*Broadnax*

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#221959
05/18/09 11:43   L# 3 All 1   Txn#523754
05/18/09 09:50 In   05/18/09 11:43 Out
CASH PAID      $   5.00-
Thank You
Have A Nice Day

34

# Brendan Ross Mitigation
## EIN 20-1183967

**James Broadnax**
**Hourly Charges**

Second Billing
June 23, 2009

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 4/6/2009 | Resend releases pending | 2.50 | $ 75.00 $ | 187.50 |
| | Produce case snapshot for defense team | 1.00 | 75.00 | 75.00 |
| 4/8/2009 | Research timeline | 2.00 | 75.00 | 150.00 |
| | Contacted Mt. Vernon high school | 0.25 | 75.00 | 18.75 |
| | Faxed request to Mt. Vernon | 0.75 | 75.00 | 56.25 |
| 4/13/2009 | Contacted MHMR re: records | 0.50 | 75.00 | 37.50 |
| | Contacted expert witness x3 re: record exchange | 1.50 | 75.00 | 112.50 |
| | Contacted attorney re: eligible records/ expert witness | 0.25 | 75.00 | 18.75 |
| | Re-contact MHMR-Dallas County | 0.50 | 75.00 | 37.50 |
| | Attempt to contact V. Duron re: interview | 0.13 | 75.00 | 9.75 |
| | Contacted Medical Park Hospital/ sent request | 0.75 | 75.00 | 56.25 |
| 4/14/2009 | Attempt to contact V. Duron re: interview | 0.13 | 75.00 | 9.75 |
| | Contact A. Hollis @ CPS | 0.13 | 75.00 | 9.75 |
| | Contact Hope Sonic Drive In | 0.50 | 75.00 | 37.50 |
| | Scan/copy MHMR records | 1.50 | 75.00 | 112.50 |
| | Faxed record release to Sonic | 0.50 | 75.00 | 37.50 |
| | Re-contacted Y. Russell | 0.25 | 75.00 | 18.75 |
| | Contacted investigator re: expert witness #1 | 0.25 | 75.00 | 18.75 |
| | Contact expert witness #1 re: records | 1.00 | 75.00 | 75.00 |
| 4/15/2009 | Read discovery | 2.00 | 75.00 | 150.00 |
| | Research Ancestry.com for birth records | 1.75 | 75.00 | 131.25 |
| | Contacted by Sonic staff re: employment records | 0.50 | 75.00 | 37.50 |
| | Drive to courthouse for records | 1.25 | 75.00 | 93.75 |
| | Contacted Hope high school | 0.25 | 75.00 | 18.75 |
| | Read discovery prior to meeting | 2.00 | 75.00 | 150.00 |
| | Contacted Garland learning center | 0.25 | 75.00 | 18.75 |
| | Copy records at FedEx | 0.50 | 75.00 | 37.50 |

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

**Second Billing**
**June 23, 2009**

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 40 of 263   PageID 11028

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 4/16/2009 | Meeting with expert witness | 4.00 | 75.00 | 300.00 |
| | Contact from D. Parks | 0.13 | 75.00 | 9.75 |
| | Attempt contact with V. Duron | 0.13 | 75.00 | 9.75 |
| | Faxed record request to College Hill middle school | 0.75 | 75.00 | 56.25 |
| | FedEx package to J. Broadnax | 1.00 | 75.00 | 75.00 |
| | Contacted by Earl with metro care re: records request | 0.50 | 75.00 | 37.50 |
| | Seperating duplicate records from client file | 1.50 | 75.00 | 112.50 |
| 4/17/2009 | Contact V. Duron re: reschedule | 0.25 | 75.00 | 18.75 |
| | Contact expert witness | 0.50 | 75.00 | 37.50 |
| | Review new records | 2.00 | 75.00 | 150.00 |
| 4/20/2009 | Contact A. Kelly to setup meeting | 0.25 | 75.00 | 18.75 |
| 4/27/2009 | Reviewing discovery | 5.50 | 75.00 | 412.50 |
| 4/28/2009 | Emailed J. Niland and research defense related topics | 1.25 | 75.00 | 93.75 |
| 5/4/2009 | Attempt to contact A. Kelly x 5 | 1.00 | 75.00 | 75.00 |
| | Attempt contact M. Owens | 0.13 | 75.00 | 9.75 |
| | Attempt to contact D. King | 0.13 | 75.00 | 9.75 |
| | Attempt to contact A. Gatewood | 0.13 | 75.00 | 9.75 |
| | Contacted by expert witness | 0.50 | 75.00 | 37.50 |
| | Contacted by T. McGarrahan re: interview | 0.13 | 75.00 | 9.75 |
| | Contacted by T. McGarrahan re: interview | 0.75 | 75.00 | 56.25 |
| | Attempt to contact T. Thompson | 0.13 | 75.00 | 9.75 |
| 5/5/2009 | Contacted by expert witness | 0.75 | 75.00 | 56.25 |
| 5/9/2009 | Contacted by G. Aaron re: cancelation of visit | 0.50 | 75.00 | 37.50 |
| | Reading discovery | 2.00 | 75.00 | 150.00 |
| | Scan discovery | 2.00 | 75.00 | 150.00 |
| | Research birth and marriage licenses | 1.00 | 75.00 | 75.00 |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 41 of 263   PageID 11029

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 5/10/2009 | Attempt contact with R. Cummings LM x 2 | 0.50 | 75.00 | 37.50 |
| | Attempt contact with D. King | 0.13 | 75.00 | 9.75 |
| | Attempt contact with A. Kelly | 0.13 | 75.00 | 9.75 |
| | Contacted Kevon Eason | 0.50 | 75.00 | 37.50 |
| | Contacted Jackie Eason | 0.13 | 75.00 | 9.75 |
| | Contacted R. Mercer | 0.13 | 75.00 | 9.75 |
| | Review records for timeline | 2.00 | 75.00 | 150.00 |
| | Re-attempt to contact T. Thompson | 0.13 | 75.00 | 9.75 |
| 5/11/2009 | Contact with B. Brown re: family interviews | 0.50 | 75.00 | 37.50 |
| | Preparing for family interviews | 5.00 | 75.00 | 375.00 |
| | Contact family prior to interview | 4.00 | 75.00 | 300.00 |
| 5/14/2009 | Meeting with J. Broadnax, Dallas county | 3.00 | 75.00 | 225.00 |
| | Reading interview materials | 2.50 | 75.00 | 187.50 |
| 5/15/2009 | Drive time to El Dorado, Arkansas | 7.00 | 75.00 | 525.00 |
| | Reviewing arrest records | 3.00 | 75.00 | 225.00 |
| | Reviewing jail records | 1.50 | 75.00 | 112.50 |
| | Fax record request to Ashdown High school | 0.50 | 75.00 | 37.50 |
| | Contacted T. Thompson re: apt | 0.25 | 75.00 | 18.75 |
| 5/16/2009 | Contacted A. Mercer x3 | 0.50 | 75.00 | 37.50 |
| | Request records from military | 1.00 | 75.00 | 75.00 |
| | Re-contact A. Mercer | 0.50 | 75.00 | 37.50 |
| | Interview with J. Aaron | 4.00 | 75.00 | 300.00 |
| | Interview with K. Eason | 1.75 | 75.00 | 131.25 |
| 5/17/2009 | Contact J. May re: interview | 1.00 | 75.00 | 75.00 |
| | Visit to Pinehurst Village for photos | 0.75 | 75.00 | 56.25 |
| | Contact C. Holyfield re: pictures | 0.25 | 75.00 | 18.75 |
| | Contact Warner J. Mercer re: appt | 0.25 | 75.00 | 18.75 |
| | Interview with F. Mazone | 1.50 | 75.00 | 112.50 |

Case 3:15-cv-01758-N Document 42-3 Filed 06/29/16 Page 42 of 263 PageID 11030

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 5/18/2009 | Contacted testing expert re: results of testing | 0.75 | 75.00 | 56.25 |
| | Contacted L. Hennessey | 0.25 | 75.00 | 18.75 |
| | Contacted F. Mazone | 0.50 | 75.00 | 37.50 |
| | Interview with J. Thompson | 3.00 | 75.00 | 225.00 |
| | Interview with T. Thompson | 4.00 | 75.00 | 300.00 |
| | Drive home from El Dorado, AR | 6.50 | 75.00 | 487.50 |
| 6/3/2009 | Contacted expert witness re: results of additional testing | 0.50 | 75.00 | 37.50 |
| | Email contact info to defense team | 0.13 | 75.00 | 9.75 |
| 6/4/2009 | Entering data on timeline | 1.50 | 75 00 | 112.50 |
| | Email contact info to defense team | 0.13 | 75.00 | 9.75 |
| | Letter to SSA | 1.50 | 75.00 | 112.50 |
| | Reviewing interview notes | 3.00 | 75.00 | 225.00 |
| 6/8/2009 | Organizing interviews | 1.25 | 75.00 | 93.75 |
| 6/9/2009 | Contacted Children's Medical Center | 0.25 | 75.00 | 18.75 |
| | Sent record request to CMC | 0.50 | 75.00 | 37.50 |
| | Research hospitals | 0.25 | 75.00 | 18.75 |
| | Type email to D. Parks re: contact information | 0.25 | 75.00 | 18.75 |
| 6/10/2009 | Contacted A. Kelly re: email from Doug | 1.50 | 75.00 | 112.50 |
| | Contacted J. Aaron | 0.25 | 75.00 | 18.75 |
| | Attempt contact T. Thompson left VM | 0.25 | 75.00 | 18.75 |
| | Attempt contact K. Eason | 0.13 | 75.00 | 9.75 |
| | Contacted Juanita re: A. Kelly | 0.50 | 75.00 | 37.50 |
| | Emailed defense team re: progress report | 0.13 | 75.00 | 9.75 |
| | Re-contacted by Juanita | 0.25 | 75.00 | 18.75 |
| | Re-contacted by K. Eason re: A Kelly's location | 0.50 | 75.00 | 37.50 |
| | Contacted D. Parks re: meeting | 0.25 | 75.00 | 18.75 |
| | Type and print telephone interview | 0.50 | 75.00 | 37.50 |

# Brendan Ross Mitigation
## EIN 20-1183967

**James Broadnax**
**Hourly Charges**

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 6/11/2009 | Emailed B. Lollar re: meetings | 0.25 | 75.00 | 18.75 |
| | Research family of A. Kelly | 1.75 | 75.00 | 131.25 |
| 6/12/2009 | Attempt to contact T. Thompson | 0.50 | 75.00 | 37.50 |
| | Contacted K. Eason re: meeting family | 0.25 | 75.00 | 18.75 |
| | Review and re-read discovery in preparation for meeting | 1.50 | 75.00 | 112.50 |
| | Contacted by A. Kelly re: troubles with job | 0.50 | 75.00 | 37.50 |
| 6/13/2009 | Prepare for defense team meeting | 3.00 | 75.00 | 225.00 |
| | Contact A. Kelly re: her trip to Dallas x2 | 0.50 | 75.00 | 37.50 |
| | Contacted by K. Eason and A. Kelly | 0.75 | 75.00 | 56.25 |
| 6/14/2009 | Defense team meeting | 2.50 | 75.00 | 187.50 |
| 6/15/2009 | Review records provided at team meeting | 2.00 | 75.00 | 150.00 |
| | Email G. Kessner | 0.25 | 75.00 | 18.75 |
| | Enter data onto timeline | 1.50 | 75.00 | 112.50 |
| | Consult with new Psychologist | 0.50 | 75.00 | 37.50 |
| | Research physicians and health care providers | 1.00 | 75.00 | 75.00 |
| 6/16/2009 | Return email from G. Kessner | 0.50 | 75.00 | 37.50 |
| | Reading records from meeting with team | 1.00 | 75.00 | 75.00 |
| | Attempt contact with N. Martin | 0.25 | 75.00 | 18.75 |
| | Attempt contact with K. Martin | 0.13 | 75.00 | 9.75 |
| | Contact T. Thompson re: A. Kelly location | 0.50 | 75.00 | 37.50 |
| | Resend records requests to pending files | 2.00 | 75.00 | 150.00 |
| | | 141.85 $ | 75.00 $ | 10,636.75 |

10/6/09

## REQUEST FOR PAYMENT BY APPOINTED COUNSEL

THE STATE OF TEXAS § IN THE _Criminal_ DISTRICT COURT _7_
VS. _James Broadnax_ § OF DALLAS COUNTY, TEXAS

Appointment Date: _____ Disposition Date: _8-31-09_ Partial/Supplemental Payment Request: YES / NO
Dates of Jail Visits: _____
OFFENSE: _Capital Murder_    CASE NO.: _F0824667_    GRADE: _F1_

I UNDERSTAND THAT I MAY BE COMPENSATED UNDER SECTION "A" BELOW ONLY IF THE CASE HAS BEEN FINALLY DISPOSED OF EITHER BY A DISMISSAL, PLEA, TRIAL, CONTINUATION OF COMMUNITY SUPERVISION, OR COMPETENCY DISPOSITION. I FURTHER UNDERSTAND THAT WHEN I AM COMPENSATED UNDER SECTION "A" BELOW, I AM NOT REQUIRED TO LIST THE LEGAL SERVICES PROVIDED. IF THERE ARE EXCEPTIONAL CIRCUMSTANCES IN THE CASE, ADDITIONAL COMPENSATION MAY BE REQUESTED AS PROVIDED IN SECTION "B".
**This case has been finally disposed of in the following manner (circle one):**

DISMISSAL--AGREED PLEA--OPEN PLEA–JURY TRIAL--TBC--REVOCATION HEARING--COMPETENCY HEARING

  ☐ A. I request standard compensation for this case as follows (check one):
      ☐ PROBATION VIOLATION.......$300      ☐ STATE JAIL/3RD DEGREE FELONY........$400
      ☐ 2ND DEGREE FELONY..............$500      ☐ 1ST DEGREE FELONY/MINI-CAP............$600
      ☐ CONTESTED TRIAL.................☐$800 (Full day)........☐$400 (Half day)
      ☐ COMPETENCY HEARING........☐$600 (Contested)......☐$300 (Agreed)

  ☐ B. I request additional compensation (at the rate of $100 per hour) in the amount of $_____
      for services performed. If I am requesting additional compensation, or if I am requesting compensation for services performed prior to counsel being retained, I must attach the form entitled *"Detailed List of Legal Services Provided."*

  ☐ C. Death Penalty Case. I request compensation at the rate of $150.00 per hour in the amount of $_____ for services performed and/or $_____ for voir dire and each day of trial as listed on the attached *"Detailed List of Legal Services Provided."*

  ☐ D. Appeal/Writ. I request compensation (at the rate of $100 per hour) in the amount of $_____
      for services performed as listed on the attached *"Detailed List of Legal Services Provided."*

  ☒ E. I request payment for expert witness/investigator expenses in the amount of $_34625 35_ for services performed as listed on the attached itemized bill.   3372.73

      3372.73

**TOTAL AMOUNT REQUESTED: $**_34625.35_.    **COURT APPROVED AMOUNT: $**_37,025_

### AFFIRMATION

I the undersigned attorney, am appointed to represent the above-named defendant and am requesting payment in accordance with the laws of the State of Texas. I further affirm to the truth and correctness to the information stated above, and that I have not received any other monies or anything else of value for said services.

_____, Attorney at Law   Date: _9/9/09_

ATTORNEY INFORMATION (Print):   Pay to me (For Auditor Use Vendor I.D _30-1183967_
Name _Keri Hallin_ act of Brendan Ross State Bar No. _24047165_
Mailing Address. _3767 Forest Lane 124 PMB 1357 Dallas TX 75244_
Telephone: Number _214_ Street _757-0272_ Suite ____ City ____ State ____ Zip ____
Soc. Sec. No. _____
(Not required if S.S. number is on file with County Auditor's Office)

TO THE COMMISSIONERS COURT OF DALLAS COUNTY, TEXAS:
    I the undersigned Judge of Dallas County, Texas do hereby certify that the defendant in the above cause(s) has on file with this court an affidavit reflecting indigency and an inability to afford counsel, that the attorney shown above has been appointed to represent the defendant and that said attorney is entitled under Article 26.05, Texas Code of Criminal Procedure, to be paid from the General Fund of Dallas County, Texas, for services performed in the amount shown above.

_10 Sep 09_            _____
Date                            Judge
Reason for Denial or variation: ☐ Request exceeds flat rate. ☐ Request exceeds hourly rate. ☐ Other, see attached.

972 739.2917

**Brendan Ross Mitigation**
3767 Forest Lane, STE 124, PMB 1257
Dallas, Texas 75244
EID No. 20-1183967

**James Broadnax**

**Final Billing**
September 8, 2009

**☐ COPY**

| | |
|---|---|
| Expenses To Date Billing | $ 10,434.70 |
| Hourly Charges Billing | $ 23,590.65 |
| **Mitigation Billing** | **$ 34,025.35** |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 46 of 263   PageID 11034

## Brendan Ross Mitigation
### EIN 20-1183967

**James Broadnax**
**Expenses**

| Date | Place | Billable |
|------|-------|----------|
| 8/13/2009 | Mileage to DFW for witness pickup 34.2 miles RT * $.585/per mile | 20.00 |
|  | Walgreens photo expense | 0.57 |
|  | Walgreens photo expense II | 0.76 |
| 8/14/2009 | Mileage to DFW for witness pickup 34.2 miles RT * $.585/per mile | 20.00 |
|  | Petty cash for meal expenses | 240.00 |
| 8/15/2009 | TGIF Gift Cards 10 @ $50/per | 500.00 |
|  | Witness gas expense | 26.01 |
|  | Ace Parking, Frank Crowley Courts | 5.00 |
|  | Love's Travel stop meal expense for witnesses | 7.73 |
|  | TGIF Restaurant meal expense for witnesses | 25.50 |
| 8/16/2009 | Delta Flight for two mitigation witnesses | 1,323.40 |
|  | SpringHill Suites for mitigation assistant | 144.84 |
|  | Golden Corral Meal expense 1 | 23.78 |
|  | Golden Corral Meal expense 2 | 12.50 |
|  | Gators Meal expense for witnesses-late night arrival | 54.23 |
| 8/17/2009 | Star Parking | 5.00 |
|  | Weiss Cafeteria witness meal expense | 11.56 |
|  | Golden Corral Meal expense | 38.99 |
|  | Petty cash to witness for meal expense | 20.00 |
|  | Subway Gift Cards | 142.15 |
|  | TGIF Restaurant meal expense for witness | 9.19 |
| 8/18/2009 | Air Tran flight for witness | 730.20 |
|  | Luggage Fee for Georgia witness | 30.00 |
|  | Mileage to airport from trial 81 miles RT * $.585/per mile | 47.39 |
|  | Meal expense | 28.66 |
|  | Weiss Cafeteria | 11.06 |
| 8/19/2009 | Ace Parking, Frank Crowley Courts | 10.00 |
|  | Petty cash to witness for meal expense | 200.00 |

Case 3:15-cv-01758-N Document 42-3 Filed 06/29/16 Page 47 of 263 PageID 11035

# Brendan Ross Mitigation
## EIN 20-1183967

**James Broadnax**
**Expenses**

Final Billing
September 8, 2009

| Date | Place | Billable |
|------|-------|----------|
| 8/20/2009 | Mileage to Paris, TX to drop off witness 397.8 miles RT * $.585/mile | 232.71 |
| | Petty cash expense for meals | 80.00 |
| | Marriot Springhill Suites for witness lodging | 4,933.44 |
| 8/28/2009 | Gas expense; Witness return trip to Arkansas | 41.32 |
| 8/29/2009 | Meal expense for team meeting | 17.00 |
| 8/1/2009 | Betty Brown Expenses | 366.93 |
| | | $10,434.70 |

43



| Date | Task | Hours | Rate | | Billing |
|------|------|-------|------|---|---------|
| 6/19/2009 | Visit with client at jail | 2 50 | $ 75.00 | $ | 187 50 |
| | Produce case accessment for defense team | 1.00 | 75.00 | | 75 00 |
| | Contact Dr. Mayo re: records | 0 15 | 75 00 | | 11.25 |
| | Contact Dr  Hagood re: records | 0.15 | 75 00 | | 11.25 |
| 6/22/2009 | Fax record request to Dr  Mayo; second attempt | 0.25 | 75 00 | | 18 75 |
| 6/23/2009 | Contacted by Hempstead County re: records | 0.15 | 75.00 | | 11 25 |
| 6/24/2009 | Contacted St. Michaels Hospital | 0.13 | 75.00 | | 9.75 |
| 6/26/2009 | Attempt contact with J. Aaron; LM for A. Kelly x 3 | 0 75 | 75 00 | | 56.25 |
| 6/27/2009 | Attempt contact with A. Kelly x 2 | 0.50 | 75.00 | | 37 50 |
| | Contacted J  Aaron re: new cell number | 0.50 | 75.00 | | 37.50 |
| 6/28/2009 | Attempt contact with T. Thompson LM for A. Kelly x 4 | 1.00 | 75 00 | | 75 00 |
| 6/29/2009 | Attempt contact with J. Aaron; LM for A. Kelly x 3 | 0.75 | 75.00 | | 56 25 |
| | Attempt contact with T. Thompson LM for A. Kelly x 3 | 0.75 | 75.00 | | 56 25 |
| | Contacted by J. Aaron re: contact/ visitation schedule | 0.50 | 75.00 | | 37 50 |
| | Organize case files/ resend all outstanding releases | 3.50 | 75.00 | | 262 50 |
| 6/30/2009 | Contact Dallas County Jail re: visitation | 0.50 | 75 00 | | 37.50 |
| | Contact A. Kelly re: upcoming schedule | 0.50 | 75.00 | | 37.50 |
| | Client visitation | 1 50 | 75 00 | | 112.50 |
| 7/1/2009 | Contact Dallas County Jail re: visitation | 0.50 | 75.00 | | 37.50 |
| | Contacted A. Kelly re. D. Maxwell | 0.50 | 75.00 | | 37.50 |
| 7/2/2009 | Research D. Maxwell credentals | 1 50 | 75.00 | | 112.50 |
| | Research R. Wimbley | 0.75 | 75.00 | | 56.25 |
| | Attempt to contact A. Kelly/ T. Thompson x 4 | 0.75 | 75.00 | | 56 25 |

44

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 49 of 263   PageID 11037

Brendan Ross Mitigation
EIN 20-1183967

James Broadnax
Hourly Charges

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 7/3/2009 | Contacted witness re: visitation | 0.25 | 75.00 | 18.75 |
| | Contacted Mt Vernon high school | 0.25 | 75.00 | 18.75 |
| | Attempt to contact A. Kelly x 3 | 0.75 | 75.00 | 56.25 |
| | Contacted by A. Kelly re: visitation on Sunday | 0.50 | 75.00 | 37.50 |
| 7/6/2009 | Attempt to contact A. Kelly x 3 | 0.50 | 75.00 | 37.50 |
| | Contact Juanita Mays to assist in family communication | 0.50 | 75.00 | 37.50 |
| 7/7/2009 | Attempt to contact T. Thompson | 0.13 | 75.00 | 9.75 |
| | Research current address of D. Maxwell | 0.50 | 75.00 | 37.50 |
| | Construct letter to D. Maxwell | 0.50 | 75.00 | 37.50 |
| | Research R. Wimbley | 0.50 | 75.00 | 37.50 |
| | Email to expert witness | 0.13 | 75.00 | 9.75 |
| | Type interview notes | 1.50 | 75.00 | 112.50 |
| | Copy/Scan records from TDCJ | 3.00 | 75.00 | 225.00 |
| 7/8/2009 | Review medical records from Parkland | 2.00 | 75.00 | 150.00 |
| | Prepare records for defense team | 2.00 | 75.00 | 150.00 |
| | Research Walmart in El Dorado, AR | 0.25 | 75.00 | 18.75 |
| | Contact Walmart re-directed to HR | 0.25 | 75.00 | 18.75 |
| | Contacted Audrey Kelly at Walmart re: meeting | 1.00 | 75.00 | 75.00 |
| 7/9/2009 | Contacted expert witness re: records | 0.13 | 75.00 | 9.75 |
| | Attempt contact with client family members | 0.13 | 75.00 | 9.75 |
| | Attempt contact with D. Maxwell | 0.13 | 75.00 | 9.75 |
| | Ancestry.com search for Richard Wimbley | 0.50 | 75.00 | 37.50 |
| | Contact Juanita Mays re: Richard Wimbley | 0.25 | 75.00 | 18.75 |
| | Contacted D. Maxwell re: trial | 1.50 | 75.00 | 112.50 |
| | Resent releases re: records | 0.75 | 75.00 | 56.25 |
| | Attempt contact with N. Martin | 0.13 | 75.00 | 9.75 |
| | Attempt contact with M. Owens | 0.13 | 75.00 | 9.75 |
| | Attempt contact with T Thompson | 0.13 | 75.00 | 9.75 |
| | Email to defense team | 0.13 | 75.00 | 9.75 |
| | Compose letter to A Kelly | 0.50 | 75.00 | 37.50 |
| | Contact 2nd defense witness | 0.50 | 75.00 | 37.50 |
| | Contact F. Mazone | 0.25 | 75.00 | 18.75 |
| | Attempt contact with N. Martin | 0.13 | 75.00 | 9.75 |
| | Contact Arkadelphia Medical Clinic | 0.50 | 75.00 | 37.50 |
| | Contact Dr. Mayo re: records/ Resent releases | 0.75 | 75.00 | 56.25 |
| | Contact Arkadelphia Police Department | 0.25 | 75.00 | 18.75 |
| | Contact Clark County District Court re: records | 0.50 | 75.00 | 37.50 |
| | Mailed invoice re: Clark County request | 0.50 | 75.00 | 37.50 |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 50 of 263   PageID 11038

Brendan Ross Mitigation
EIN 20-1183967

James Broadnax
Hourly Charges

Final Billing
September 8, 2009

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 7/13/2009 | Research/ review medical records | 2.00 | 75.00 | 150.00 |
| | Prepare timeline re-construction to reflect new records | 3.00 | 75.00 | 225 00 |
| | Contact Texarkana, AR Salvation Army-R. Wimbley | 0 50 | 75.00 | 37.50 |
| | Contact Texarkana, Texas Salvation Army-R. Wimbley | 0.50 | 75.00 | 37 50 |
| | Contact Oklahoma City Salvation Army re: R. Wimbley | 0.50 | 75.00 | 37.50 |
| | Contact all expert witnesses; trial preparation | 2.50 | 75 00 | 187.50 |
| | Attempt contact with N. Martin | 0.13 | 75.00 | 9.75 |
| 7/14/2009 | Contacted by defense team re: emergency meeting | 0.75 | 75.00 | 56.25 |
| | Consult with expert witness re: meeting | 0.50 | 75 00 | 37 50 |
| | Research Broadnax history-Ancestry.com | 2.00 | 75.00 | 150.00 |
| | Faxed affadavit to Dr. Mayo | 0 25 | 75.00 | 18 75 |
| 7/15/2009 | Contact with defense team member | 0.25 | 75.00 | 18.75 |
| | Mailed check for records to Medical Park | 0.25 | 75.00 | 18.90 |
| 7/16/2009 | Contact Dallas County | 0.50 | 75.00 | 37 50 |
| | Contact Dallas County re: Sheriffs Dept | 0.13 | 75.00 | 9 75 |
| | Contacted by V. Duron of Dallas County | 0.25 | 75.00 | 18.75 |
| 7/23/2009 | Research A. Kelly employment history | 0.50 | 75.00 | 37.50 |
| | Contact Pilgrim's Pride re: A. Kelly | 0.25 | 75.00 | 18.75 |
| | Contact J&J Trucking re: A. Kelly/ Faxed request | 0.75 | 75.00 | 56.25 |
| | Contact expert witness regarding new information | 0.75 | 75.00 | 56.25 |
| | Research Greyhound bus contact information | 2.25 | 75 00 | 168.75 |
| 7/28/2009 | Email investigator re' bus schedule | 0 25 | 75 00 | 18 75 |
| 8/1/2009 | Mitigation preparation/witnesses | 10 00 | 75 00 | 750 00 |
| 8/2/2009 | Mitigation preparation/ witnesses; attorney; hotel search | 10 00 | 75.00 | 750 00 |
| 8/3/2009 | Trial | 5 50 | 75 00 | 412.50 |
| 8/4/2009 | Contact all expert witnesses; trial preparation | 11.50 | 75 00 | 862.50 |
| 8/5/2009 | Drive to Arkansas; contact witnesses; arrange appts | 16.00 | 75.00 | 1,200 00 |

46

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 51 of 263   PageID 11039

**Brendan Ross Mitigation**
EIN 20-1183967

James Broadnax
Hourly Charges

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 8/6/2009 | Arkansas for interviews and subpoena deliveries | 9.00 | 75 00 | 675.00 |
| | Drive home from Arkansas and Texarkana, Tx | 6.50 | 75.00 | 487.50 |
| 8/7/2009 | Prepare witness interviews | 5 00 | 75.00 | 375.00 |
| | Prepare material for defense team meeting | 6.00 | 75.00 | 450 00 |
| 8/8/2009 | Defense team meeting plus preparation | 5.50 | 75 00 | 412.50 |
| 8/9/2009 | Contact with mitigation witnesses/review | 5.50 | 75.00 | 412.50 |
| 8/10/2009 | Mitigation preparation for trial | 9.00 | 75 00 | 675.00 |
| | Timeline review | 3 00 | 75.00 | 225 00 |
| 8/11/2009 | Edit Broadnax timeline | 3.00 | 75.00 | 225.00 |
| | Mitigation preparation for trial | 10.00 | 75 00 | 750 00 |
| | Prepare family photographs | 2 75 | 75.00 | 206 25 |
| 8/12/2009 | Mitigation preparation for trial | 16.00 | 75.00 | 1,200.00 |
| | Review trial notes for meeting | 2 00 | 75.00 | 150 00 |
| 8/13/2009 | Mitigation preparation for trial | 16 00 | 75.00 | 1,200 00 |
| 8/14/2009 | Mitigation preparation for trial | 14 00 | 75.00 | 1,050 00 |
| 8/15/2009 | Defense team meeting | 5.50 | 75 00 | 412 50 |
| | Contact witness list re: trial travel arrangements | 2 50 | 75.00 | 187.50 |
| 8/16/2009 | Pick up and manage witnesses for trial | 5 00 | 75.00 | 375 00 |
| | Manage witness dinner arrangements | 1 00 | 75.00 | 75 00 |

47

Case 3:15-cv-01758-N    Document 42-3    Filed 06/29/16    Page 52 of 263    PageID 11040

**Brendan Ross Mitigation**
**EIN 20-1183967**

James Broadnax
Hourly Charges

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 8/17/2009 | Trial | 9.00 | 75.00 | 675 00 |
| | Manage witness dinner arrangements | 1.00 | 75 00 | 75 00 |
| 8/18/2009 | Trial | 9 00 | 75.00 | 675 00 |
| | Arrangements for witness meals | 1.00 | 75.00 | 75.00 |
| 8/19/2009 | Deliver family member to airport following trial | 2.00 | 75 00 | 150 00 |
| | Trial | 9.50 | 75.00 | 712 50 |
| 8/20/2009 | Trial | 9.50 | 75.00 | 712.50 |
| | Deliver family member to Paris, TX following trial | 4 00 | 75 00 | 300.00 |
| 8/1/2009 | Bettty Brown Hours | 29.15 | 40.00 | 1,166.00 |
| | | 314.54 $ 75.00 $ | | 23,590.65 |

48

**Brendan Ross Mitigation**
**EIN 20-1183967**

| Date | Place | Billable |
|------|-------|----------|
| 6/17/2009 | Courtyard Marriot - two rooms | 117.55 *paid alre* |
| 6/19/2009 | Ace Parking, Frank Crowley Courts | 5.00 |
| 6/24/2009 | Arkadelphia Medical Clinic | 25.00 |
| 6/26/2009 | Ace Parking, Frank Crowley Courts | 4.00 |
| 7/7/2009 | LocatePlus online search Richard Wimbley<br>Intelus online search<br>Mileage to Hickory Creek, TX for witness 43.12 RT * $.585/per mile | *crim bkgrd ck* 3.00 - *online search (Ric paid)*<br>17.00 *against rent in a/c*<br>25.22 23.72 |
| 7/10/2009 | Ace Parking, Frank Crowley Courts | 5.00 |
| 7/15/2009 | Healthport | 24.51 |
| 7/23/2009 | Clark County District Court Records Fee | 10.00 |
| 8/4/2009 | Ace Parking, Frank Crowley Courts<br>Review records, contact all expert witnesses *(See itemized time file is + me. not amount)* | 2.00<br>11.50 |
| 8/5/2009 | Union Square Guest Quarters - two rooms<br>Meal Expense witness/ Lunch<br>Meal expense witness/ Dinner<br>Hope, Ark meal expenses<br>Drive to Arkansas 719.8 miles RT * $.585/mile *Brendan Ross/Betty Brown* | 147.38<br>19.44<br>11.26<br>85.00<br>421.08 395.89 *Betty Darryl Maxwell* |
| 8/6/2009 | Shell Gas for mitigation witness | 46.47 |
| 8/10/2009 | Ace Parking, Frank Crowley Courts<br>UPS shipping fee re: subpoena to Georgia | 8.00<br>62.37 |
| 8/11/2009 | Ace Parking, Frank Crowley Courts | 4.00 |
| 8/12/2009 | Mileage to DFW for witness pickup 34.2 miles RT * $.585/per mile | 20.00 *require Martin Wynn*<br>18 31 *P/u* |

*55 mileage*

**Brendan Ross Mitigation**
**EIN 20-1183967**

James Broadnax
Expenses

Final Billing
September 8, 2009

| Date | Place | Billable |
|---|---|---|
| 8/13/2009 | Mileage to DFW for witness pickup 34.2 miles RT * $.585/per mile | |
| | Walgreens photo expense | 0.57 |
| | Walgreens photo expense II | 0.76 |
| 8/14/2009 | Mileage to DFW for witness pickup 34.2 miles RT * $.585/per mile | 240.00 |
| | Petty cash for meal expenses | 500.00 |
| 8/15/2009 | TGIF Gift Cards 10 @ $50/per | 28.01 |
| | Witness gas expense | 5.00 |
| | Ace Parking, Frank Crowley Courts | 7.73 |
| | Love's Travel stop meal expense for witnesses | 25.50 |
| | TGIF Restaurant meal expense for witnesses | |
| 8/16/2009 | Delta Flight for two mitigation witnesses | 1,323.40 |
| | SpringHill Suites for mitigation assistant | 144.84 |
| | Golden Corral Meal expense 1 | 23.78 |
| | Golden Corral Meal expense 2 | 12.50 |
| | Gators Meal expense for witnesses-late night arrival | 54.23 |
| 8/17/2009 | Star Parking | 5.00 |
| | Weiss Cafeteria witness meal expense | 11.56 |
| | Golden Corral Meal expense | 38.99 |
| | Petty cash to witness for meal expense | 20.00 |
| | Subway Gift Cards | 142.15 |
| | TGIF Restaurant meal expense for witness | 9.19 |
| 8/18/2009 | Air Tran flight for witness | 730.20 |
| | Luggage Fee for Georgia witness | 30.00 |
| | Mileage to airport from trial 81 miles RT * $.585/per mile | 47.39 |
| | Meal expense | 28.68 |
| | Weiss Cafeteria | 11.08 |
| 8/19/2009 | Ace Parking, Frank Crowley Courts | 10.00 |
| | Petty cash to witness for meal expense | 200.00 |

Page 3 of 9

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 55 of 263   PageID 11043

## Brendan Ross Mitigation
### EIN 20-1183967

**James Broadnax**
**Expenses**

Final Billing
September 8, 2009

| Date | Place | Billable |
|------|-------|----------|
| 8/20/2009 | Mileage to Paris, TX to drop off witness 397.8 miles RT * $.585/mile _Return defendant @ home_ ~~232.71~~ _218.79_ | |
| | Petty cash expense for meals | 80.00 |
| | Marriot Springhill Suites for witness lodging _no prev. listed_ | ~~4,933.44~~ _4928.18_ |
| 8/28/2009 | Gas expense; Witness return trip to Arkansas _Darryl Maxwell - last witness_ | 41.32 |
| 8/29/2009 | Meal expense for team meeting _Fruit for group - BR, Brad Lollar; Doug Parks & Ken Mallon_ | 17.00 _liquor_ |
| 8/1/2009 | Betty Brown Expenses _see receipt_ | ~~366.93~~ _347.64_ |

~~$10,434.70~~

_10139.01_

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 56 of 263   PageID 11044

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 6/19/2009 | Visit with client at jail | 2.50 | $ 75 00 | $ 187 50 |
| | Produce case accessment for defense team | 1.00 | 75.00 | 75 00 |
| | Contact Dr Mayo re: records | 0.15 | 75.00 | 11 25 |
| | Contact Dr. Hagood re records | 0.15 | 75 00 | 11.25 |
| 6/22/2009 | Fax record request to Dr. Mayo, second attempt | 0 25 | 75.00 | 18.75 |
| 6/23/2009 | Contacted by Hempstead County re records | 0.15 | 75.00 | 11 25 |
| 6/24/2009 | Contacted St. Michaels Hospital | 0.13 | 75.00 | 9 75 |
| 6/26/2009 | Attempt contact with J. Aaron; LM for A Kelly x 3 | 0 75 | 75.00 | 56 25 |
| 6/27/2009 | Attempt contact with A. Kelly x 2 | 0.50 | 75 00 | 37.50 |
| | Contacted J. Aaron re: new cell number | 0.50 | 75.00 | 37.50 |
| 6/28/2009 | Attempt contact with T. Thompson LM for A. Kelly x 4 | 1.00 | 75.00 | 75.00 |
| 6/29/2009 | Attempt contact with J. Aaron, LM for A. Kelly x 3 | 0.75 | 75 00 | 56.25 |
| | Attempt contact with T Thompson LM for A Kelly x 3 | 0.75 | 75 00 | 56 25 |
| | Contacted by J. Aaron re. contact/ visitation schedule | 0.50 | 75.00 | 37.50 |
| | Organize case files/ resend all outstanding releases | 3.50 | 75.00 | 262.50 |
| 6/30/2009 | Contact Dallas County Jail re: visitation | 0.50 | 75 00 | 37 50 |
| | Contact A. Kelly re: upcoming schedule | 0 50 | 75.00 | 37.50 |
| | Client visitation | 1.50 | 75.00 | 112.50 |
| 7/1/2009 | Contact Dallas County Jail re: visitation | 0.50 | 75.00 | 37.50 |
| | Contacted A. Kelly re: D Maxwell | 0.50 | 75.00 | 37 50 |
| 7/2/2009 | Research D. Maxwell credentials | 1.50 | 75 00 | 112.50 |
| | Research R. Wimbley | 0.75 | 75.00 | 56 25 |
| | Attempt to contact A. Kelly/ T. Thompson x 4 | 0.75 | 75 00 | 56.25 |

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 57 of 263   PageID 11045

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 7/3/2009 | Contacted witness re visitation | 0.25 | 75.00 | 18 75 |
| | Contacted Mt Vernon high school | 0.25 | 75.00 | 18 75 |
| | Attempt to contact A. Kelly x 3 | 0.75 | 75.00 | 56 25 |
| | Contacted by A. Kelly re. visitation on Sunday | 0.50 | 75 00 | 37 50 |
| 7/6/2009 | Attempt to contact A Kelly x 3 | 0.50 | 75 00 | 37 50 |
| | Contact Juanita Mays to assist in family communication | 0.50 | 75.00 | 37.50 |
| 7/7/2009 | Attempt to contact T Thompson | 0 13 | 75.00 | 9.75 |
| | Research current address of D Maxwell | 0 50 | 75.00 | 37 50 |
| | Construct letter to D Maxwell | 0 50 | 75.00 | 37 50 |
| | Research R. Wimbley | 0 50 | 75.00 | 37.50 |
| | Email to expert witness | 0.13 | 75 00 | 9 75 |
| | Type interview notes | 1.50 | 75 00 | 112.50 |
| | Copy/Scan records from TDCJ | 3 00 | 75.00 | 225 00 |
| 7/8/2009 | Review medical records from Parkland | 2.00 | 75.00 | 150.00 |
| | Prepare records for defense team | 2.00 | 75.00 | 150.00 |
| | Research Walmart in El Dorado, AR | 0.25 | 75.00 | 18 75 |
| | Contact Walmart re-directed to HR | 0.25 | 75 00 | 18 75 |
| | Contacted Audrey Kelly at Walmart re: meeting | 1.00 | 75.00 | 75.00 |
| 7/9/2009 | Contacted expert witness re records | 0.13 | 75 00 | 9 75 |
| | Attempt contact with client family members | 0.13 | 75 00 | 9.75 |
| | Attempt contact with D. Maxwell | 0.13 | 75.00 | 9.75 |
| | Ancestry com search for Richard Wimbley | 0 50 | 75.00 | 37.50 |
| | Contact Juanita Mays re Richard Wimbley | 0.25 | 75.00 | 18 75 |
| | Contacted D Maxwell re trial | 1.50 | 75 00 | 112.50 |
| | Resent releases re. records | 0 75 | 75 00 | 56.25 |
| | Attempt contact with N. Martin | 0.13 | 75.00 | 9.75 |
| | Attempt contact with M Owens | 0.13 | 75 00 | 9 75 |
| | Attempt contact with T. Thompson | 0.13 | 75.00 | 9.75 |
| | Email to defense team | 0.13 | 75 00 | 9 75 |
| | Compose letter to A. Kelly | 0.50 | 75 00 | 37.50 |
| | Contact 2nd defense witness | 0.50 | 75 00 | 37.50 |
| | Contact F. Mazone | 0 25 | 75.00 | 18.75 |
| | Attempt contact with N. Martin | 0 13 | 75.00 | 9 75 |
| | Contact Arkadelphia Medical Clinic | 0 50 | 75.00 | 37.50 |
| | Contact Dr. Mayo re: records/ Resent releases | 0 75 | 75.00 | 56.25 |
| | Contact Arkadelphia Police Department | 0.25 | 75 00 | 18.75 |
| | Contact Clark County District Court re records | 0.50 | 75 00 | 37 50 |
| | Mailed invoice re. Clark County request | 0 50 | 75 00 | 37 50 |

Page 6 of 9

Case 3:15-cv-01758-N   Document 42-3   Filed 06/29/16   Page 58 of 263   PageID 11046

**Brendan Ross Mitigation**
EIN 20-1183967

**James Broadnax**
**Hourly Charges**

Final Billing
September 8, 2009

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 7/13/2009 | Research/ review medical records | 2.00 | 75 00 | 150.00 |
| | Prepare timeline re-construction to reflect new records | 3.00 | 75 00 | 225 00 |
| | Contact Texarkana, AR Salvation Army-R. Wimbley | 0.50 | 75.00 | 37.50 |
| | Contact Texarkana, Texas Salvation Army-R. Wimbley | 0.50 | 75.00 | 37 50 |
| | Contact Oklahoma City Salvation Army re. R. Wimbley | 0.50 | 75.00 | 37 50 |
| | Contact all expert witnesses; trial preparation | 2.50 | 75.00 | 187.50 |
| | Attempt contact with N. Martin | 0.13 | 75 00 | 9 75 |
| 7/14/2009 | Contacted by defense team re: emergency meeting | 0 75 | 75.00 | 56 25 |
| | Consult with expert witness re: meeting | 0.50 | 75.00 | 37.50 |
| | Research Broadnax history-Ancestry.com | 2 00 | 75.00 | 150 00 |
| | Faxed affadavit to Dr. Mayo | 0 25 | 75.00 | 18.75 |
| 7/15/2009 | Contact with defense team member | 0.25 | 75.00 | 18.75 |
| | Mailed check for records to Medical Park | 0.25 | 75.00 | 18 90 |
| 7/16/2009 | Contact Dallas County | 0 50 | 75.00 | 37 50 |
| | Contact Dallas County re: Sheriffs Dept | 0 13 | 75.00 | 9 75 |
| | Contacted by V. Duron of Dallas County | 0.25 | 75.00 | 18 75 |
| 7/23/2009 | Research A Kelly employment history | 0.50 | 75.00 | 37 50 |
| | Contact Pilgrim's Pride re: A Kelly | 0 25 | 75.00 | 18.75 |
| | Contact J&J Trucking re: A Kelly/ Faxed request | 0.75 | 75.00 | 56.25 |
| | Contact expert witness regarding new information | 0.75 | 75 00 | 56 25 |
| | Research Greyhound bus contact information | 2.25 | 75 00 | 168 75 |
| 7/28/2009 | Email investigator re. bus schedule | 0.25 | 75 00 | 18.75 |
| 8/1/2009 | Mitigation preparation/witnesses | 10.00 | 75.00 | 750.00 |
| 8/2/2009 | Mitigation preparation/ witnesses; attorney, hotel search | 10 00 | 75 00 | 750.00 |
| 8/3/2009 | Trial | 5.50 | 75.00 | 412.50 |
| 8/4/2009 | Contact all expert witnesses; trial preparation | 11.50 | 75 00 | 862.50 |
| 8/5/2009 | Drive to Arkansas; contact witnesses; arrange appts | 16 00 | 75.00 | 1,200.00 |

54

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

Final Billing
September 8, 2009

| Date | Task | Hours | Rate | Billing |
|---|---|---|---|---|
| 8/6/2009 | Arkansas for interviews and subpoena deliveries | 9 00 | 75 00 | 675 00 |
|  | Drive home from Arkansas and Texarkana, Tx | 6 50 | 75.00 | 487.50 |
| 8/7/2009 | Prepare witness interviews | 5 00 | 75.00 | 375.00 |
|  | Prepare material for defense team meeting | 6 00 | 75.00 | 450 00 |
| 8/8/2009 | Defense team meeting plus preparation | 5 50 | 75.00 | 412.50 |
| 8/9/2009 | Contact with mitigation witnesses/review | 5 50 | 75.00 | 412.50 |
| 8/10/2009 | Mitigation preparation for trial | 9 00 | 75 00 | 675.00 |
|  | Timeline review | 3.00 | 75 00 | 225 00 |
| 8/11/2009 | Edit Broadnax timeline | 3.00 | 75.00 | 225 00 |
|  | Mitigation preparation for trial | 10.00 | 75.00 | 750 00 |
|  | Prepare family photographs | 2 75 | 75.00 | 206 25 |
| 8/12/2009 | Mitigation preparation for trial | 16.00 | 75.00 | 1,200 00 |
|  | Review trial notes for meeting | 2.00 | 75.00 | 150.00 |
| 8/13/2009 | Mitigation preparation for trial | 16 00 | 75 00 | 1,200.00 |
| 8/14/2009 | Mitigation preparation for trial | 14.00 | 75.00 | 1,050.00 |
| 8/15/2009 | Defense team meeting | 5 50 | 75.00 | 412 50 |
|  | Contact witness list re: trial travel arrangements | 2.50 | 75 00 | 187.50 |
| 8/16/2009 | Pick up and manage witnesses for trial | 5.00 | 75.00 | 375.00 |
|  | Manage witness dinner arrangements | 1 00 | 75 00 | 75.00 |

**Brendan Ross Mitigation**
**EIN 20-1183967**

**James Broadnax**
**Hourly Charges**

Final Billing
September 8, 2009

| Date | Task | Hours | Rate | Billing |
|------|------|-------|------|---------|
| 8/17/2009 | Trial | 9.00 | 75 00 | 675.00 |
| | Manage witness dinner arrangements | 1 00 | 75.00 | 75.00 |
| 8/18/2009 | Trial | 9 00 | 75.00 | 675.00 |
| | Arrangements for witness meals | 1.00 | 75.00 | 75.00 |
| 8/19/2009 | Deliver family member to airport following trial | 2.00 | 75.00 | 150.00 |
| | Trial | 9.50 | 75.00 | 712 50 |
| 8/20/2009 | Trial | 8.50 | 75.00 | 712.50 |
| | Deliver family member to Paris, TX following trial | 4 00 | 75.00 | 300.00 |
| 8/1/2009 | Bettty Brown Hours | 29.15 | 40.00 | 1,166.00 |
| | | 314.64 | $ 75.00 | $ 23,590.65 |



## COURTYARD
### Marriott

Courtyard by Marriott
Texarkana

5001 N cowhorn Creek Loop
Texarkana Tx. 75503
T 903 334 7400



B. Ross

Room: 327

Room Type: GENR

Number of Guests: 1

Rate: $104.00    Clerk:

| Date | Description | Charge | |
|---|---|---|---|
| 16May09 | Room Charge | 104.00 | |
| 16May09 | Occupancy Sales Tax | 2.08 | |
| 16May09 | City Tax | 5.20 | |
| 16May09 | State Occupancy Tax | 6.24 | |
| 17May09 | Master Card | | 117.52 |

Card #: MCXXXXXXXXXXXXX5708/XXXX
Amount:  117.52 Auth: 337642 Signature on File
This card was electronically swiped on 16May09

Balance:    0.00

As a Marriott Rewards member, you could have earned points towards your free dream vacation today. Start earning points and elite status, plus enjoy exclusive member offers. Enroll today at the front desk, MarriottRewards.com, or 801-468-4000.

Want your final hotel bill by email?  Just ask the Front Desk!  See "Internet Privacy Statement" on Marriott.com.

57



**COURTYARD**
**Marriott**

Courtyard by Marriott
Texarkana

5001 N cowhorn Creek Loop
Texarkana, Tx 75503
T 903 334 7400



B. Ross



Room: 318

Room Type GENR

Number of Guests: 1

Rate: $104 00       Clerk:

| Date | Description | | Charges |
|---|---|---|---|
| 16May09 | Room Charge | | 104.00 |
| 16May09 | Occupancy Sales Tax | | 2 08 |
| 16May09 | City Tax | | 5.20 |
| 16May09 | State Occupancy Tax | | 6.24 |
| 17May09 | Master Card | | 117.52 |
| | Card #: MCXXXXXXXXXXXX5708/XXXX | | |
| | Amount:   117.52 Auth: 279367  Signature on File | | |
| | This card was electronically swiped on 16May09 | | |
| | | Balance: | 0.00 |

As a Marriott Rewards member, you could have earned points towards your free dream vacation today. Start earning points and elite status, plus enjoy exclusive member offers. Enroll today at the front desk, MarriottRewards.com, or 801-468-4000.

Want your final hotel bill by email?  Just ask the Front Desk!  See "Internet Privacy Statement" on Marriott.com.

58

3rd
Billing

Broadnax
6/19/2009

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#225058
06/19/09 15:06   L# 3 A# 1   Txn#532171
06/19/09 12:52 In   06/19/09 15:06 Out
CASH PAID     $    5.00-
            Thank You
        Have A Nice Day

59

*Arkadelphia Medical Clinic*
*3004 West Pine Street*
*Arkadelphia, Arkansas 71923*
*(870) 246-2471*
*Fax: (870) 246-2476*
*Federal Tax ID: 73-1582733*



RECEIVED
JUN 2 9 2009
BY: *BK*

## Statement

RE:   Medical Records
       Patient: ~James G Broadnay~

DOB 10-31-88

DATE: 6/24/09        **Charge for Medical Records**                    $25.00

✓

pd ck# 1268
7/14/09
$25.00          ✓

~James Broadnay~

Ace Parking          ✓
Frank Crowley Courts
Garage C

Rcpt#225614
06/26/09 14:07   LN 3 AH 1   Txn#533791
06/26/09 12:45 In   06/26/09 14:07 Out
CASH PAID     $   4.00-
Thank You
Have A Nice D✓

Driving Directions from Cox Ln & Forest Ln, Dallas, TX to Starbucks, 4000 FM 2181 ...



# MAPQUEST.

Sorry! When printing directly from the browser your directions or map may not print correctly. For best results, try clicking the Printer-Friendly button.

**Cox Ln & Forest Ln**
Dallas, TX 75244

**Starbucks**
4000 FM 2181
Hickory Creek, TX 75065
Website | 940-498-4880

Total Estimated Time: 27 minutes
Total Estimated Distance: 21.56 miles

Total Estimated Fuel Cost: Fuel Co█

▼ Directions from A to B:

1: Start out going WEST on FOREST LN toward MARSH LN    1.2 mi
2: Turn RIGHT onto WEBB CHAPEL RD    0.3 mi
3: Turn LEFT onto LYNDON B JOHNSON FWY/ I-635 W/ LBJ FWY    0.1 mi
4: Merge onto I-635 W via the ramp on the LEFT    1.0 mi
5: Merge onto I-35E N via EXIT 27B toward DENTON.    17.7 mi
6: Take EXIT 457B toward FM-2181/ HUNDLEY DR/ SWISHER RD.    0.1 mi
7: Turn SLIGHT LEFT onto S STEMMONS FWY    0.7 mi
8: Turn LEFT onto SWISHER RD    0.5 mi
9: End at 4000 FM 2181 Hickory Creek, TX 75065

Estimated Time: 27 minutes    Estimated Distance: 21.56 miles

Total Estimated Time: 27 minutes    Total Estimated Distance: 21.56 miles

All rights reserved. Use subject to License/Copyright Map Legend
Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use

http://www.mapquest.com/maps?1c=Dallas&1s=TX&1a=Cox+Ln+%26+Forest+Ln&1z=7...    7/7/2009

Broadway Gar.

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#000446
07/10/09 14:20    LH 4 AH  9    Txn#710000
07/10/09 11:16 In    07/10/09 14:20 Out
CASH PAID    $    5.00
Thank You
Have A Nice Day

62

**HealthPort**
P.O. Box 409740
Atlanta, Georgia 30384-9740
Fed Tax ID 58 - 2659941
(770) 754 - 6000



## HealthPort.
**INVOICE**

Invoice #: 0056381795
Date:       5/2/2009
Customer #: 1499486

| Ship to: |
| --- |

BRENDAN ROSS
BRENDAN ROSS
3767 FOREST LANE STE 124
PMB 1257
DALLAS, TX 75244

| Bill to. |
| --- |

BRENDAN ROSS
BRENDAN ROSS
3767 FOREST LANE STE 124
PMB 1257
DALLAS, TX 75244

| Records from |
| --- |

MEDICAL PARK HOSPITAL
20001 S. MAIN ST.
HOPE, AR 71801

**Requested By:** BRENDAN ROSS
**Patient Name:** BROADDNAX JAMES G

DOB:   103188
SSN:   *****2794

| Description | Quantity | Unit Price | Amount |
| --- | --- | --- | --- |
| Basic Fee | | | 15.00 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Paper) 1 | 16 | 0.50 | 8.00 |
| Shipping/Handling | | | 1.51 |
| Subtotal | | | 24.51 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 24.51 |
| Balance Due | | | 24.51 |

*Pd ck# 1273 7/15/09 $24.51* ✓

**Pay your invoice online at www.HealthPortPay.com**

Terms: Net 30 days    **Please remit this amount : $ 24.51 (USD)**

---

✂

**HealthPort**
P.O. Box 409740
Atlanta, Georgia 30384-9740
Fed Tax ID 58 - 2659941
(770) 754 - 6000

| Invoice #: 0056381795 |
| --- |
| Check # _____ |
| Payment Amount $_____ |

# Please return stub with payment.
Please include invoice number on check.
To pay invoice online, please go to www.HealthPortPay.com or call (770) 754 6000.

63

# UNION SQUARE GUEST QUARTERS
234 EAST MAIN
EL DORADO, AR 71730
OFFICE:870-864-9700 / OFFICE:870-866-6999 / Fax:OFFICE

## Guest Charges -

| Name | Brendan Ross | Arr - Dep | 8/5/2009 - 8/6/2009 | Charges | $129.00 |
|---|---|---|---|---|---|
| Address | | Recorded | 8/5/2009 | Tax | $18.38 |
| City | Dallas | Confirmation | 19987 | Total | $147 38 |
| State | TX | Party | 2 / 0 | Paid | $147.38 |
| Postal Code | 75229 | Credit Card | xxxx5708 | Due | $0.00 |
| Telephone | 214-957-0298 | | 09/2011 | | |

| Date | Description | Quantity | Amount | Tax | Total |
|---|---|---|---|---|---|
| 8/5/2009 | EAST7 | 1 | $129.00 | $18.38 | $147.38 |
| 8/10/2009 | Mastercard   ****5708 | Brendan Ross | | | ($147.38) |

| Tax and Gratuity Detail: | ELDO LODGI | $3.87 | | Total | $147.38 |
|---|---|---|---|---|---|
| | AR LODGING | $2.58 | | Paid | $147.38 |
| | AR SALES TA | $11.93 | | Due | $0.00 |

**Our Policies** This is your folio policy. Change it by clicking on Tools>Print Options

| Office Use Only | Cash |
|---|---|
| | Check # _____ |
| | Credit Card _____ |
| | Gift Certificate _____ |

---

**UNITED STATES POSTAL SERVICE**

## CUSTOMER'S RECEIPT

| SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION  NOT NEGOTIABLE | Pay to | Clark County District Court | KEEP THIS RECEIPT FOR YOUR RECORDS |
|---|---|---|---|
| | Address | PO Box 449 | |
| | | Arkadelphia AR 71923 | |

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
|---|---|---|---|---|
| 16491008755 | 2009-07-23 | 752301 | $10.00 | 0010 |

---

Printed on 8/10/2009 2:20:05 PM            UNION SQUARE GUEST QUAR            Page 1 of 1

64

*Broadnax*

## Chili's
### Grill & Bar
### Texarkana
#042 LINDSEY          T045
08/05/09 13:17:00    #0054

## CHECK    #0077

```
2 BEVERAGE          4.50
2 SOUP,SALAD&CHIP   3.58
Subtotal          17.36
Sales Tax          1.48
TOTAL             19.44
```
--------------------------------
THANK YOU

*Broadnay*

1281 N Hervey
Hope AR 71881

SHELL            . 57521977863
1.91 N HERVEY
HOPE
71881

MASTERCARD

DIMOND
LUS               5146
PRICE GAL       2.649
FUEL TOT

Total = 946.47

CRIP Credit      $46.47

---

*Lunch*

Great People -- Great Prices

Your Cashier Is:

*Broadnax*

220 S. WEST AVE.
EL DORADO, ARKANSAS PHONE 863-4081
TERM# 3       STORE#40      OPERATOR#105

Thank You Card Number XXX XXX5104
*** SPECIAL ***

```
WATER           2.9
MANDARIN ORA    1.3
             1.5
             0.7
```

SUBTOTAL
TAX
TOTAL            11.85

20.00

08/05/09 19:51:12

$ 19.44
  11.85
  46.47
-------
$ 77.76

*Broadnax*

65



# GUEST CHECK

# uniforms inc.

*custom apparel since 19?5*

1489 Prudential Drive
Dallas, TX, 75235
Phone:    214.630.0924
Fax:      214.638.7613

## Invoice

Uniforms, Inc

| Date | Page |
|---|---|
| Aug 10, 2009 | 1 |
| Invoice Number | |
| IN00325141 | |

**Sold To:**

ALAN ROSS

**Ship To:**

ALAN ROSS

Ship Via: Customer Pickup

| Order No. | Order Date | Customer No. | Salesperson | PO Number | Terms |
|---|---|---|---|---|---|
| OR00361492 | Aug 10, 2009 | 12012 | HOUSE | | DUE END OF NEXT MO. |

| Qty. Ord. | Qty. Shp. | Qty. B/O | Item Number | Description | Unit Price | UOM | Extended Price |
|---|---|---|---|---|---|---|---|
| | | | MC0000 | FREIGHT | | | 62.37 |

*[handwritten: Kevin saw, George in ... Audrey ... over month for ... Regina Williams ... Vernon Martin]*

```
749082    AUG 10, 2009    ACT WT  0.1 LBS    #PK 1
SERVICE 1DM                 BILL WT  1.0 LBS
TRACKING# 1Z74908215551666600    ALL CURRENCY USD
REF 1:PER ALAN ROSS
REF 2:                      [handwritten: 464 5½ 6456]

HANDLING CHARGE 0.00        FRT: SHP
SHIPMENT PUB RATE CHARGES:      SVC  67.52 USD
DV 0.00        COD   0.00      RS  0.00
DC 0.00        DGD   0.00
AH 0.00        PR    0.00    ROD  0 00
TOT PUB CHG  67.52      PUB+HANDLING    67.52
```

*[handwritten text]*

**Comments:**

*[signature: Broadway]*

| | |
|---|---|
| Subtotal | 62.37 |
| Total sales tax | 5.15 |
| Total amount | 67.52 |
| Less payment | 0.00 |
| Less pmt. disc | 0.00 |
| Amount due | $67.52 |

67

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#229656
08/19/09 15:41  LN 3 AM  8  Txn#544820
08/19/09 08:31 In  08/19/09 15:41 Out
CASH PAID  $  5.00-
Thank You
Have A Nice Day

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#229645
08/19/09 13:43  LN 3 AM  8  Txn#544731
08/19/09 10:16 In  08/19/09 13:43 Out
CASH PAID  $  5.00-
Thank You
Have A Nice Day

WEISS
ENTERPRISE
CROWLEY

DATE 08.18.'09  TUE

STUFF POT X1  $3.15
TO GO CONT X1  $0.30
HAM & CHEZ X1  $2.55
TO GO CONT X1  $0.30
HAM & CHEZ X1  $2.55
TO GO CONT X1  $0.30
SM DRINK X1  $1.07
TAXABLE 1  $10.22
TAX TOTAL  $0.84
TOTAL  $11.06
CASH  $11.06
CLERK 1  NO.000234
TIME 11:45  0002

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#303006
08/17/09 12:00  LN 4 AM  6  Txn#710192
08/17/09 09:29 In  08/17/09 12:00 Out
CASH PAID  $  5.00-
Thank You
Have A Nice Day

68



## Walgreens
### The Pharmacy America Trusts · Since 1901"

I'm IGOR. Thank you for allowing me to serve you today.

446      10  9405   05507  025

I'm Kennedy. Thank you for allowing me to serve you today.

120      10  9407   05507  025

RFN# 0550-7259-4071-0909-1320

| PHOTOFINISHING | 1A | .57 |
| PHOTOFINISHING | 1 | .76 |
| SUBTOTAL | | 1.33 |
| A=8.25% SALES TAX | | .11 |
| TOTAL | | 1.44 |
| CASH | | 1.44 |
| CHANGE | | .00 |



13022 Preston Road Dallas, TX





total shown below.
Pump#:  4
  8.003 G @ $  2.499
SUPE/Self    $ 20.00
mnstr        $  2.29
arizona      $  0.99
20 oz Dr.Pep$  1.39
Sales Tax    $  0.39

Total        $ 25.06

Tell us about
your shopping
experience by
logging onto
Survey.Chevron.com

THANK YOU FOR
CHOOSING CHEVRON

$ 1.44 ✓
5.00
25.06
5.00
───────
$ 36.50

No Parking
Frank Crowley Courts
Garage C

05/14/09 17:19
05/14/09 14:10 In   05/14/09 17:19 Out
CASH PAID    $  5.00

Thank You
Have A Nice Day

69

TGI FRIDAY'S #0252
DALLAS
THE MOST FUN IN THE WEST END

60 JOEY E

----------------------------------------
Tbl 500/2        Chk 5120          Gst 0
          ...'09 07:40PM
----------------------------------------

   ***************7993
   G CARD SALE              50.00
   ***************7985
   G CARD SALE              50.00
   ***************7074
   G CARD SALE              50.00
   ***************7082
   G CARD SALE              50.00
   ***************7215
   G CARD SALE              50.00

   Subtotal                  0.00
   Svc Chg                 500.00
07:44PM Amt. Due          500.00

   If you were not told about the
   Give Me More Stripes Program
   Ask to see a manager for a free
              appetizer
   Questions ? Comments?
          ... M 214-744-2936

EXXON EXPRESS PAY

DLR# 4693180
SUPER STATION
HOPE
08/15/09        08:23    AR
                         ACCT#
MasterCard X1562 15C
INV# CFS6780
AUTH# 501244
PUMP# 4
Regular
SELF           10.4 9G
PRICE/GAL
FUEL TOTAL     $2.4 9
               $26.01

TOTAL

*Parking Total - $22.00*



CVS
for all the ways you care

1001 ROSS AVE. #112, DALLAS, TX
STORE:214-880-9905

REG#01 TRAN#6881 CSHR#787156 STR#8391

ExtraCare Card #: ********7784

1 BRTHSVRS 3HRD 1.27      1 99B
1 SUBWAY $20 GC 3016     20 00N
1 SUBWAY $20 GC 3016     20.00N
1 SUBWAY $20 GC 3016     20 00N
1 SUBWAY $20 GC 3016     20 00N
1 SUBWAY $20 GC 3016     20.00N
1 SUBWAY $20 GC 3016     20.00N
1 SUBWAY $20 GC 3016     20 00N

8 ITEMS
    SUBTOTAL            141 99
    TX 8 25% TAX          .16
    TOTAL              142.15
    MASTERCARD         142 15
    ***********5708        MS
    CHANGE                 00
THANK YOU. SHOP 24 HOURS AT CVS.COM

70

Page 1 of 3

 **DELTA**

(Scan this barcode at a Delta Self-Service Kiosk to access your reservation.)

## Your Receipt and Itinerary

BRENDAN ROSS
3810 NORTHVIEW LANE
DALLAS TX 75229

Thank you for choosing Delta. We encourage you to review this information before your trip. If you need to contact Delta or check on your flight information, go to delta.com, call 800-221-1212 or call the number on the back of your SkyMiles® card.

Now, managing your travel plans just got easier. You can exchange, reissue and refund electronic tickets at delta.com. Take control and make changes to your itineraries at delta.com/itineraries.

Speed through the airport. Check-in online
for your flight.                    -> **Check-in**

## Flight Information

```
DELTA CONFIRMATION #:  COTNQ3
TICKET #:  00623137485250
```

| Day | Date | Flight | Status | Bkng Class | City | Time | Meals/ Other | Seat/ Cabin |
|---|---|---|---|---|---|---|---|---|
| Sun | 16AUG | NORTHWEST AIRLINES 3188* *Operated by MESABA AVIATION | OK | Y | LV MUSKEGON AR DETROIT METRO | 455P 607P | | ** |
| Sun | 16AUG | NORTHWEST AIRLINES 1187 | OK | Y | LV DETROIT METRO AR DALLAS/FTWORTH | 730P 920P | F | ** |
| Tue | 18AUG | DELTA 2869* *Operated by NORTHWEST AIRLINES As NW Flt 1182 | OK | B | LV DALLAS/FTWORTH AR DETROIT METRO | 250P 639P | | ** COACH |
| Tue | 18AUG | DELTA 3984* *Operated by MESABA DBA NORTHWEST As NW Flt 3191 | OK | B | LV DETROIT METRO AR MUSKEGON | 725P 838P | | ** COACH |

Check your flight information online at delta.com or call the Delta Flightline at 800-325-1999

Baggage and check-in requirements vary by airport and airline, so please check with the operating carrier on your ticket.
Please review Delta's check-in Requirements and baggage guidelines for details.

You must be checked in and at the gate at least 15 minutes before your scheduled departure time for travel inside the United States.

**Key to Terms**
# - Arrival date different than departure date
** - See Seats on delta.com
*** - Multi meals
*S$ - Multiple seats
AR - Arrives
B - Breakfast
C - Bagels/Beverages
D - Dinner

You must be checked in and at the gate at least 45 minutes before your scheduled departure time for international travel.
For tips on flying safely with laptops, cell phones, and other battery-powered devices, please visit http://SafeTravel.dot.gov.

F - Food available for purchase
L - Lunch
LV - Departs
M - Movie
R - Refreshments - Complimentary
S - Snack
T - Cold meal
V - Snacks for Sale

## Passenger Information

DARNELL WYNN JR

## Billing Details

## Receipt Information

Fare Details: MKG NW X/DTT NW DFW720.00Y0 DL X/DTT DL MKG471.63BA00A0RQ USD11 91.63END ZP MKGDTWDFWDTW XF MKG4.5DTW4.5DFW4.5DTW4.5

| | | | |
|---|---|---|---|
| Fare: | 1191.63 USD | Form of Payment | CA*************5708 |
| Tax: | 131.77 TX | | |
| Total: | 1323.40 USD | | |

Note: When using certain vouchers to purchase tickets, remaining credits may not be refunded. Additional charges and/or credits may apply and are displayed in the sections below.

This ticket is non-refundable unless issued at a fully refundable fare. Any change to your itinerary may require payment of a change fee and increased fare. Failure to appear for any flight without notice to Delta will result in cancellation of your remaining reservation.

## Detailed Tax Information

**Total Tax: 131.77 USD**

| XF | 18.00 | ZP | 14.40 | AY | 10.00 | US | 89.37 |
|---|---|---|---|---|---|---|---|

## Ticketing Details

Scan this barcode at a Delta Self-Service Kiosk to access your reservation.

TICKET #:  00623137485250
Issue Date:  08/14/09  Expiration:  08/14/10
Place of Ticket Issue:  WWWRES
Issuing Agent Id:  DL/WW
Ticket Issue date:  14AUG09
Not Transferable

Save money when you    Great Rates and 500    Hotel Search by The    Up to 25,000 bonus

You must be checked in and at the gate at least 45 minutes before your scheduled departure time for international travel.
For tips on flying safely with laptops, cell phones, and other battery-powered devices, please visit

http://SafeTravel.dot.gov

F - Food available for purchase
L - Lunch
LV - Departs
M - Movie
R - Refreshments - Complimentary
S - Snack
T - Cold meal
V - Snacks for Sale

## Passenger Information

VICKY DIGGS

## Billing Details

## Receipt Information

Fare Details: MKG NW X/DTT NW DFW720.00Y0 DL X/DTT DL MKG471.63BA00A0RQ USD11
91.63END ZP MKGDTWDFWDTW XF MKG4.5DTW4.5DFW4.5DTW4.5

| Fare: | 1191.63 USD | Form of Payment | CA************5708 |
| Tax: | 131.77 TX | | |
| Total: | 1323.40 USD | | |



Note: When using certain vouchers to purchase tickets, remaining credits may not be refunded. Additional charges and/or credits may apply and are displayed in the sections below.

This ticket is non-refundable unless issued at a fully refundable fare. Any change to your itinerary may require payment of a change fee and increased fare. Failure to appear for any flight without notice to Delta will result in cancellation of your remaining reservation.

## Detailed Tax Information

**Total Tax: 131.77 USD**

| XF | 18.00 | ZP | 14.40 | AY | 10.00 | US | 89.37 |

## Ticketing Details

Scan this barcode at a Delta Self-Service Kiosk to access your reservation.



TICKET #:  00623137485246
Issue Date:  08/14/09  Expiration:  08/14/10
Place of Ticket Issue:  WWWRES
Issuing Agent Id:  DL/WW
Ticket Issue date:  14AUG09
Not Transferable

Save money when you        Great Rates and 500        Hotel Search by The        Up to 25,000 bonus

file://C:\Users\Brendan\AppData\Local\Microsoft\Windows\Temporary Internet Files\Con...    8/15/2009

73



**SPRINGHILL SUITES·**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N  Lamar St
Dallas, Tx 75202
t(214) 999 0500

B. Brown

Room: 402

Room Type: KSTE

Number of Guests: 1

Rate: $109.00        Clerk:

Arrive: 15Aug09  Time: 04:46PM        Depart: 17Aug09    Time: 06:28AM        Folio Number· 73784

| Date | Description | Charges | Credits |
|---|---|---|---|
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | · Sales Tax | 1.49 | |
| | **Balance:** | **144.84** | |

As a Marriott Rewards member, you could have earned points towards your free dream vacation today. Start earning points and elite status, plus enjoy exclusive member offers. Enroll today at the front desk, MarriottRewards.com, or 801-468-4000.

Want your final hotel bill by email?  Just ask the Front Desk!  See "Internet Privacy Statement" on Marriott com.

74

```
        TGI FRIDAY'S #0262
             DALLAS
    THE MOST FUN IN THE WEST EN
  Date:        Aug15'09 06:04P
  Card Type:   MASTERCARD
  Acct #:      XXXXXXXXXXXX95
  Card Entry:  SWIPED
  Ins Type:    PURCHASE
  Trans Key:   BFF0003953482?
  Auth Code:   00748Z
  Check:       1008
  Table:       74/1
  Server:      17 JAMAL B

  Subtotal:           25.5

  TOTAL        $_____
```

Darryl Marvel

```
        GATORS CROL N ROC
        WWW.GATORSDALLAS.COM

  01814    Table 998  #Party 1
  MIKI J   Svrck: 50 23:11 08/16/09

  IED CHEESE
    LY, 1 fries, mustard,
    fries, mustard
  LONG ISLAND                4.00
  LETHAL (1), 16 oz.
  BACARDI                    6.00
```
Darrell Wynn
Vickie



24.23

26 23

```
        TGI FRIDAY'S #0262
             DALLAS
    THE MOST FUN IN THE WEST END

  5001 TO GO T
  ---------------------------------
  Tbl 5001/1     Chk 5306        Gst 1
           Aug17'09 02:   PM
  ---------------------------------
    *TO  GO*
    JD BURGER                   8.49
  ---------------------------------


  Amt. Due                      9.19

   If you were not told about the
   Give Me More Stripes Program
   Ask to see a manager for a free
             appetizer
      Questions ? Comments?
   James Kaylor GM  214-744-2936
```
Darryl Marvel

Darryl Marvel

## Love's Travel Stops
## Store #279 Mt. Vernon TX

```
  Store #79        Sat 8/15/2009
  H5-0000004277     9:58:06 AM
  Associate: SUSAN V.
  ----------------------------------
  1 CHICKEN BREAST   1.99    10
  1 CHICKEN LEG      1.29    10
  1 CHICKEN LEG      1.    10
  1 CHICKEN WING     1.29    10
  1 JALAPENO         0.29    10
  1 COKE 14OZ EACH   0.99     1
  ----------------------------------
       Sub-Total     7.14
            Tax      0.59
       Balance Due  -7.73
  ==================================
  EXACT CHANGE      20.00
  YOUR CHANGE       12.27

       Thank
         Co
```

75

# AirTran

go. there's nothing stopping you.

**my account    reservations    check-in    flight times    travel info    specials    programs**

## reservations

log in

flights

book flights

find itinerary

booking overview

route map

policies

hotels

cars

vacations

cruises

purchase gift certificates

## itinerary

Thank you for choosing AirTran Airways.
We will send you an email message containing your itinerary. To ensure you receive the message, you may wish to add confirmations@airtran.com to your address book

confirmation number: **D3YCXL**

Booking date: Fri, Aug 14, 2009    Status: Confirmed
Should our flight schedule change, we will notify you by email as early as possible.

Please print this page.    print version ▶

📅 Import into Outlook Calendar: Departing flight and returning flight

**itinerary tools**

**Seats:**
You can choose or change seat assignments here.

change seats ▶

**Change/Cancel:**

change flights ▶

cancel flights ▶


- Get the AirTran Discount in Dallas/Fort Worth.
- Up to 20% off and double A+ credits.
- Learn about other special offers.

 HOTELS
Save time and money when you book your hotel with AirTran Vacations. See hotel availability and rates for Dallas/Fort Worth for this trip.

### flight details

((✈))   Wi-Fi now onboard every AirTran flight.

Departing. Saturday, August 15, 2009    $164.00 - Coach

Atlanta, GA (ATL)    to Dallas/Fort Worth, TX (DFW)    Flight 114
5.38 PM    6:50 PM

Returning Tuesday, August 18, 2009    $374.00 - Coach

Dallas/Fort Worth, TX (DFW)    to Atlanta, GA (ATL)    Flight 110
6:30 PM    9:28 PM

### passengers and seat assignments

| Passenger | A+ Number | ATL-DFW | DFW-ATL |
|---|---|---|---|
| Nequia Martin Wynn | | — | 18F |

### contact information

Audrey Kelly
221 N. Bradley
El Dorado, AR  71730
United States of America

brmitigation@att.net
870-639-3146 (Tel)
404-542-6456 (Alt)

### pricing

*Total for 1 passenger (full detail)*

| | |
|---|---|
| Fare price | $500.47 |
| Taxes/fees: | $58.73 |
| Seat fees. | $6.00 |

### payments

*Payment via Credit Card*

| | |
|---|---|
| Form of payment | MasterCard |
| Payment status: | Confirmed |
| Payment amount | $355.20 |

AirTran Reservations - Itinerary

Page 1 of 3

about airtran   a2b t

**AirTran**

my account   reservations   ch·

| | search | 90 |

pping you.

programs

reservations

log in

flights

book flights

find itinerary

booking overview

route map

policies

hotels

cars

vacations

cruises

purchase gift certificates

### itinerary

Thank you for choosing
We will send you an er
receive the message, )
address book.

confirmation nui

Booking date: Fri. Au
Should our fight sche
possible

Please print thit

Import into Outlo·

**Airtran Payment Receipt**

Date :        19Aug09
Confirmation Number : D3YCXL
Receipt/Auth #       D3YCXL-07

Received : MasterCard      15.00

                        15.00 USD
                        $15.00
                        $15.00 USD
Remarks :   XXXXXXXXXXXX5708

Received by Agent : 110984

Signature: _____

iry tools

hoose or
at assignments

| seats ▶ |

Cancel:

| flights ▶ |
| flights ▶ |

 Hertz

- Get the AirTran Discount in Dallas/Fort Worth.
- Up to 20% off and double A+ credits.
- Learn about other special offers

AirTran HOTELS

Save time and money when you book your hotel
with AirTran Vacations. See hotel availability and
rates for Dallas/Fort Worth for this trip

### flight details

Departing: Saturday, August 15, 2009

Atlanta, GA (ATL)
5.38 PM

Returning: Tuesday, August 18, 2009

Dallas/Fort Worth, TX (DFW)
6:30 PM

((•✈•))   Wi-Fi now onboard every AirTran flight.

$164.00 - Coach

to Dallas/Fort Worth, TX (DFW)        Flight 114
6.50 PM

$374.00 - Coach

to Atlanta, GA (ATL)        Flight 110
9 28 PM

### passengers and seat assignments

| Passenger | A+ Number | ATL-DFW | DFW-ATL |
|---|---|---|---|
| Nequia Martin Wynn | | --- | 18F |

### contact information

Audrey Kelly
221 N Bradley
El Dorado, AR  71730
United States of America

brmitigation@att net
870-639-3146 (Tel)
404-542-6456 (Alt)

### pricing

Total for 1 passenger (full detail)

| | |
|---|---|
| Fare price. | $500 47 |
| Taxes/fees: | $58 73 |
| Seat fees | $6 00 |

### payments

Payment via Credit Card

| | |
|---|---|
| Form of payment: | MasterCard |
| Payment status: | Confirmed |
| Payment amount: | $355.20 |

Reservations - Itinerary

| | | | |
|---|---|---|---|
| Change fees | $150.00 | **Payment via Cash/Check** | |
| Service fees | $15.00 | Form of payment | CA |
| Total price: | $730.20 | Payment status. | Confirmed |
| | | Payment amount | $15.00 |
| | | **Payment via Credit Card** | |
| | | Form of payment | MasterCard |
| | | Payment status. | Confirmed |
| | | Payment amount. | $81.00 |
| | | **Payment via Credit Card** | |
| | | Form of payment | MasterCard |
| | | Payment status | Confirmed |
| | | Payment amount. | $279.00 |

## terms and conditions

**Fare Restrictions**

Coach

- Q Fare Class
- Coach Class Fare
- Non-refundable
- Changes may be made for a fee of $75 per person plus any applicable increase in fare
- Advance seat assignment is available for a small fee, or you may select your seats upon check-in at no cost.
- Reservations may be obtained or changed through an AirTran Airways Telephone Reservations Center for an additional $15.00 per person.
- Additional baggage fees may apply

Coach

- Y Fare Class
- Coach Class Fare
- Non-refundable
- Changes may be made for a fee of $75 per person plus any applicable increase in fare.
- This fare offers advance seat assignment. After completing your reservation, click on the 'Reserve Seats' button on the Receipt page to select your seats.
- Reservations may be obtained or changed through an AirTran Airways Telephone Reservations Center for an additional $15.00 per person.
- Additional baggage fees may apply.

**Conditions of Contract:**
All AirTran Airways coach tickets are non-refundable and a $75 fee per person applies to any change made after purchase. plus any applicable increase in airfare. Business class tickets (A and J fare classes only, not including promotional fares) are fully refundable and no fee applies to changes. Additional baggage fees may apply

Cancellations must be made at least one hour prior to departure or customer forfeits reservation and any monies paid against the reservation. This reservation is non-transferable - no name changes allowed

**Baggage Policies:** Familiarize yourself with our baggage policies prior to your travel.

**Ticket Counter Check-In Requirements**
AirTran Airways recommends that passengers arrive at the airport 120 minutes prior to the scheduled departure of their flight. Due to security requirements, passengers and their baggage will not be accepted at the ticket counter less than 45 minutes prior to the scheduled departure of their flight (some smaller airports may accept baggage up to 30 minutes prior to scheduled departure time)

**Gate Check-In Requirements**
Customers must present themselves at the flight departure gate no later than ten minutes prior to the scheduled departure of their flight. Failure to comply will cause the customer to lose their reservation and, if so, they will not be eligible for denied boarding compensation

## destinations

Visit our Travel Info section to learn more about travel to Atlanta, GA and Dallas/Fort Worth, TX.



Airways Reservations                                    Page 1 of 3

# airTran.com

# receipt & itinerary

Thank you for choosing AirTran Airways.
We will send you an email message containing your itinerary. To ensure you receive the message, you may wish
to add confirmations@airtran.com to your address book.

confirmation number: **D3YCXL**

**Booking date:** Fri, Aug 14, 2009    **Status:** Confirmed
Should our flight schedule change, we will notify you by email as early as possible.

## Flight Details

Departing: **Saturday, August 15, 2009**

| **Atlanta, GA (ATL)** 5:38 PM | to | **Dallas/Fort Worth, TX (DFW)** 6:50 PM | Flight 114 | Coach |

Returning: **Tuesday, August 18, 2009**

| **Dallas/Fort Worth, TX (DFW)** 6:30 PM | to | **Atlanta, GA (ATL)** 9:28 PM | Flight 110 | Coach |

## Passengers and Seat Assignments

| Passenger | A+ Number | ATL-DFW | DFW-ATL |
|-----------|-----------|---------|---------|
| Nequia Martin Wynn | | — | 18F |

### Contact Information
Audrey Kelly
221 N. Bradley
El Dorado, AR  71730
United States of America

brmitigation@att.net
870-639-3146 (Tel)
404-542-6456 (Alt)

## Pricing

*Total for 1 passenger (full detail)*

| Fare price: | $500.47 |
| Taxes/fees: | $58.73 |
| Seat fees: | $6.00 |
| Change fees: | $150.00 |
| Service fees: | $15.00 |
| **Total price:** | **$730.20** |

## Payments

*Payment via Credit Card*
| Form of payment: | MasterCard |
| Payment status: | Confirmed |
| Payment amount: | $355.20 |

*Payment via Cash/Check*
| Form of payment: | CA |
| Payment status: | Confirmed |
| Payment amount: | $15.00 |

*Payment via Credit Card*
| Form of payment: | MasterCard |
| Payment status: | Confirmed |
| Payment amount: | $81.00 |

*Payment via Credit Card*

79

Broadnax Case

9/17 ✓

Recieved 20.00 to eat
Clara Holyfield ✓



GOLDEN CORRAL #?50..

Ticket # 0457

|  |  |  |
|---|---|---|
| .... | $ | 9.99 |
| ... L! | $ | 9.99 |
| ... OZ BEVERAGE | $ | 1.99 |
| w/ til | $ | 0.00 |
| SUB |  | 21.97 |
| SALES .. | $ | 1.81 |
| TOTAL | $ | 23.78 |
| VISA | $ | 23.78 |
| XXXX77XXXXX8524 |  |  |
| CHANGE DUE | $ | 0.00 |

SEP .. 0?    6-19.a    SUNDAY

GRILL # *****

Clara Holyfield ✓

SERVI.. COP
An .. .....
...
.... #.    XXXX8524
Exp Date:    ../XX
Auth Code:    094357
Check:    2128
Server:    101 AM CASHI
REGINAL HOLYFIELD

Subtotal.    -12.50

TIP: ..........

TOTAL:..........

Thank You!

GUEST COPY
(for your records)

WEISS
ENTERPRISE
CROWLEY

DATE 08.17.'09    MON

|  |  |
|---|---|
| VEGGIE #1 | $1.06 |
| VEGGIE #1 | $1.06 |
| RED DRINK #1 | $1.33 |
| LUNCH PLATE #1 | $5.90 |
| RED DRINK #1 | $1.33 |
| TAXABLE 1 | $10.68 |
| TAX TOTAL | $0.88 |
| TOTAL | $11.56 |
| CASH | $11.56 |
| CLERK 1 | NO.000059 |
| TIME 10:40 | 0002 |

TERMINAL I.D.:    LK625324
MERCHANT #:    000083364732
VISA
XXXXXXXXXX8524
SALE
BATCH: 000494    INV: 000030
DATE: AUG 17, 09    15141
RRN: 322923966170  AUTH: 081898
AUS RESPONSE: 0

TOTAL    $8.64



Ticket # 0101

|  |  |
|---|---|
| ..TTL: | 99 |
| FFET | 99 |
| -FFET | 99 |
| C CHIL BUF 9-10Y | 99 |
| . OZ BEVERAGE | 99 |
| 16 OZ BEVERAGE | 99 |
| 16 OZ BEVERAGE | 99 |
| SUB | 93 |
| SALES TAX | 96 |
| TOTAL    $ | 9 |
| CASH | 00 |
| CHANGE DUE | 11 |

9/17, 9    01    12:53pm

GRILL # **** ✓

Jackie Day & Kevin, Bran    38⁹⁹

**** $1,000 WINNER EVERY D.
take our online survey .
www.goldencorral-listens
Disponible en Espanol
CODE: 3590-70010-1028

received $30 on gas
Jackie Aaron

80



```
       434317695881
   LAKEVIEW CAR WASH
   4100 LAKEVIEW PKWY
   ROWLETT, TX 75088
       972-463-3585

TERMINAL ID.:              085

MASTERCARD
############5708
SALE
BATCH: 000046     INV: 000078
DATE: Aug 28, 09     TIME: 13:13

               AUTH:918220

TOTAL              $41.32


         THANK YOU FOR
         YOUR BUSINESS!

         (customer copy)
```



```
           S North Market
           Dallas, TX 75202
           214 651-8475

Server: Oscar               08/18/09
Table 126                     3.07
Guests: 2                     ....

SOFT DRINK (2 @2.25)           .50
  HOUSE TRIO                    ...
  STUFFED MUSHROOM
  LASAGNE                        .9?
   House Salad
   Ranch
  GROUP 1610
  STUFFED MUSHROOM               .
  LASAGNE                      19.99
   Bowl tasting

  Total                       2  18
  ...                         3.18

  ....                         .. 55

  Balance Due                 8.10
```

**SPRINGHILL SUITES**
*Marriott*

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate: $0.00    Clerk: KEM

Arrive. 15Aug09  Time:          Depart: 04Sep09    Time: 12:07PM    Folio Number: G2034

| Date | Description | Charges | Credits |
|---|---|---|---|
| 31Aug09 | Market Packaged Food | | 6.24 |
| 31Aug09 | Sales Tax | | 0.51 |
| 31Aug09 | Bottled Water | | 5.00 |
| 31Aug09 | Sales Tax | | 0.41 |
| 02Sep09 | LD | 6.90 | |
| 04Sep09 | Master Card | | 4928.18 |
| | Card #: MCXXXXXXXXXXXXX5708/XXXX | | |
| | Amount: 4928.18 Auth: 375299 Signature on File | | |

Charges Transferred FROM 45611 KELLY/ALDREE

| 19Aug09 | Room Charge | 109.00 | |
| 19Aug09 | State Occupancy Tax | 6.54 | |
| 19Aug09 | City Tax | 9.81 | |

Total Charges Transferred FROM 45611          125.35

Charges Transferred FROM 73777 MAXWELL/DARRYL

| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6 54 | |
| 15Aug09 | City Tax | 9.81 | |
| 15Aug09 | Valet Parking | 18.00 | |
| 15Aug09 | Sales Tax | 1.49 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | Sales Tax | 1.49 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9 81 | |
| 17Aug09 | Valet Parking | 18.00 | |
| 17Aug09 | Sales Tax | 1.49 | |
| 18Aug09 | Room Charge | 109.00 | |
| 18Aug09 | State Occupancy Tax | 6.54 | |
| 18Aug09 | City Tax | 9.81 | |
| 18Aug09 | Valet Parking | 18.00 | |
| 18Aug09 | Sales Tax | 1.49 | |

Total Charges Transferred FROM 73777          579.36

82

**SPRINGHILL SUITES·**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N. Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate:  $0.00        Clerk: KEM

Arrive: 15Aug09  Time:         Depart. 04Sep09    Time: 12:07PM     Folio Number: G2034

| Date | Description | Charges | Credits |
|---|---|---|---|
| | Charges Transferred FROM 73778 MARTIN/NEQUIA | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73778 | 376.05 | |
| | Charges Transferred FROM 73783 WYNN/DARRELL | | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73783 | 376.05 | |
| | Charges Transferred FROM 73784 BROWN/BETTY | | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | Sales Tax | 1.49 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |

83

**SPRINGHILL SUITES**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N. Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate: $0.00          Clerk: KEM

Arrive: 15Aug09  Time:                    Depart: 04Sep09    Time: 12:07PM    Folio Number: G2034

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|
| 17Aug09 | City Tax | 9.81 | |
| 17Aug09 | LD 903-784-1264(1) | 18.43 | |
| 17Aug09 | Sales Tax | 0.51 | |
| 17Aug09 | Valet Parking | 18.00 | |
| 17Aug09 | Sales Tax | 1.49 | |
| 17Aug09 | Market Packaged Food | 6.24 | |
| | Total Charges Transferred FROM 73784 | 440.21 | |
| | **Charges Transferred FROM 73785 THOMPSON/TERESA** | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 15Aug09 | Valet Parking | 18.00 | |
| 15Aug09 | Sales Tax | 1.49 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | Sales Tax | 1.49 | |
| | Total Charges Transferred FROM 73785 | 289.68 | |
| | **Charges Transferred FROM 73798 AARON/JACKIE** | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | Sales Tax | 1.49 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| 17Aug09 | Valet Parking | 18.00 | |
| 17Aug09 | Sales Tax | 1.49 | |

84



**SPRINGHILL SUITES·**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N. Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate: $0.00      Clerk: KEM

Arrive: 15Aug09  Time:          Depart: 04Sep09   Time: 12:07PM     Folio Number: G2034

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|
| | Total Charges Transferred FROM 73798 | 415.03 | |
| | **Charges Transferred FROM 73799 EASON/KEVIN** | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Sales Tax | 0.41 | |
| 16Aug09 | Bottled Water | 5.00 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73799 | 381.46 | |
| | **Charges Transferred FROM 73800 HOLYFIELD/CLARA** | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73800 | 376.05 | |
| | **Charges Transferred FROM 73883 KELLY/ALDREE** | | |
| 15Aug09 | Room Charge | 109.00 | |
| 15Aug09 | State Occupancy Tax | 6.54 | |
| 15Aug09 | City Tax | 9.81 | |
| 15Aug09 | LD 870-639-3314(1) | 25.33 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |

85

**SPRINGHILL SUITES'**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Milligan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate: $0.00    Clerk: KEM

Arrive: 15Aug09  Time:      Depart: 04Sep09    Time: 12:07PM    Folio Number: G2034

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 21.89 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 18.43 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 16.71 | |
| 15Aug09 | LD 870-639-3314(1) | 21.89 | |
| 15Aug09 | LD 870-639-3314(1) | 18.43 | |
| 15Aug09 | LD 870-639-3314(1) | 109.00 | |
| 16Aug09 | Room Charge | 6.54 | |
| 16Aug09 | State Occupancy Tax | 9.81 | |
| 16Aug09 | City Tax | 16.71 | |
| 16Aug09 | LD 870-639-3314(1) | 16.71 | |
| 16Aug09 | LD 870-639-3314(1) | 18.43 | |
| 16Aug09 | LD 870-639-3314(1) | 109.00 | |
| 17Aug09 | Room Charge | 6.54 | |
| 17Aug09 | State Occupancy Tax | 9.81 | |
| 17Aug09 | City Tax | | 25.33 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 21.89 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 18.43 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 16.71 |
| 18Aug09 | Rebate-Long Distance | | 20.16 |
| 18Aug09 | Rebate-Long Distance | | 21.89 |
| 18Aug09 | Rebate-Long Distance | | 18.43 |
| 18Aug09 | Rebate-Long Distance | | 20.16 |
| 18Aug09 | Room Charge | 109.00 | |

86



**SPRINGHILL SUITES·**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N. Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate: $0.00    Clerk: KEM

Arrive: 15Aug09  Time:          Depart: 04Sep09    Time: 12:07PM    Folio Number: G2034

| Date | Description | Charges | Credits |
|---|---|---|---|
| 18Aug09 | State Occupancy Tax | 6.54 | |
| 18Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73883 | 512.93 | |
| | **Charges Transferred FROM 73924 DIGGS/VICKY** | | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73924 | 250.70 | |
| | **Charges Transferred FROM 73927 PIERCE/BARRY** | | |
| 16Aug09 | Room Charge | 109.00 | |
| 16Aug09 | State Occupancy Tax | 6.54 | |
| 16Aug09 | City Tax | 9.81 | |
| 16Aug09 | Valet Parking | 18.00 | |
| 16Aug09 | Sales Tax | 1.49 | |
| 17Aug09 | Room Charge | 109.00 | |
| 17Aug09 | State Occupancy Tax | 6.54 | |
| 17Aug09 | City Tax | 9.81 | |
| 17Aug09 | Valet Parking | 18.00 | |
| 17Aug09 | Sales Tax | 1.49 | |
| 18Aug09 | Room Charge | 109.00 | |
| 18Aug09 | State Occupancy Tax | 6.54 | |
| 18Aug09 | City Tax | 9.81 | |
| 18Aug09 | Valet Parking | 18.00 | |
| 18Aug09 | Sales Tax | 1.49 | |
| 19Aug09 | Room Charge | 109.00 | |
| 19Aug09 | State Occupancy Tax | 6.54 | |
| 19Aug09 | City Tax | 9.81 | |
| | Total Charges Transferred FROM 73927 | 559.87 | |

87

**SPRINGHILL SUITES**
**Marriott.**

SpringHill Suites by Marriott
Dallas Downtown
West End

1907 N. Lamar St
Dallas, Tx 75202
t(214) 999 0500

Brendan Ross Mitigan

3767 Forest Lane

Dallas TX 75244

Ross

Room: GRP

Room Type: HSE

Number of Guests: 0

Rate:  $0.00        Clerk: KEM

Arrive: 15Aug09  Time:          Depart: 04Sep09    Time: 12:07PM        Folio Number: G2034

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|
|  | Charges Transferred FROM 73976 PFAFF/NICKLOE |  |  |
| 17Aug09 | Room Charge | 109.00 |  |
| 17Aug09 | State Occupancy Tax | 6.54 |  |
| 17Aug09 | City Tax | 9 81 |  |
|  | Total Charges Transferred FROM 73976 | 125.35 |  |
|  | Charges Transferred FROM 74181 KELLY/ALDREE |  |  |
| 20Aug09 | Room Charge | 109.00 |  |
| 20Aug09 | State Occupancy Tax | 6.54 |  |
| 20Aug09 | City Tax | 9.81 |  |
|  | Total Charges Transferred FROM 74181 | 125.35 |  |
|  | Balance: | 0.00 |  |

As a Marriott Rewards member, you could have earned points towards your free dream vacation today. Start earning points and elite status, plus enjoy exclusive member offers. Enroll today at the front desk, MarriottRewards.com, or 801-468-4000.

Want your final hotel bill by email?  Just ask the Front Desk!  See "Internet Privacy Statement" on Marriott.com.

88

# Betty Ellis-Brown, MSSW, LCSW

## Invoice: Broadnax

| Date | Time | Description | Hours |
|---|---|---|---|
| | | | Hours |
| 8/16/2009 | 2:30 PM | Left Paris for Dallas | |
| | 4:45 PM | Arrive Springhill Suite (Marriott, 1905 Lamar, Dallas) | 2.25 |
| | | Interview two witnesses; ascertain who has own transportation | 1.15 |
| | 10:00 PM | Spoke with Brendan Ross, made plans for Monday transportation to courthouse | 0.25 |
| 8/17/2009 | 8.00 AM | Transport witnesses to courthouse and take to appropriate floor | |
| | | Return to hotel to get other witnesses and take to courthouse | 3.00 |
| | 1:00 PM | Keep up with witnesses; assured they arrive at courthouse | 2.00 |
| | 5:00 PM | Meet Moneygram witness | 1.50 |
| | | Reimburse witnesses for gas and meals | |
| | 6:30 PM | Dinner and discussion of case with prof. witness | 1.50 |
| | 10:00 PM | Call from hotel desk re: witness very angry | 0.50 |
| | | Had her come to room and get $12.00 | |
| 8/18/2009 | 8:15 AM | Transport witnesses to courthouse and stay to monitor witnesses | 5.00 |
| | 1:45 PM | Transport 3 witnesses to DFW gates for flights | 1.00 |
| | 2:45 AM | Left DFW and returned to Paris | 3.00 |
| 8/21/2009 | 8:00 AM | Transporation of Audrey Kelley, witness, from Paris, TX to El Dorado, AR and return to Paris. | 8.00 |

Total Hours 29.15

**11.75 hours X $40.00 = $1,166.00**

*Betty Ellis - Brown MSSW, LCSW*
*Lic # SW 10436*

89

*Team Meeting*

CAFE PACIFIC

24 HIGHLAND PARK VILLAGE
DALLAS TX 75205
214-526-1170
Date: May08'09 08:49PM
Card Type: MASTERCARD
Acct #: XXXXYXXXXXXX6023
Exp Date: XX/XX
Auth Code: 35/156
Check: 39'4
Table: 22/1
Server: 1017 PETER W
CHARLES & PUSS

Subtotal: 224.40

TIP: 40.00

TOTAL: 264.40

Thank You!

GUEST COPY
(for your records)

*Doug Pucks*

*Broadnay*

BURGE'S SMK. TURKEYS & HAMS
Since 1962
Hwy 29
Lewisville, AR 71845
800-921-4292

Server: JACK                     05/15/2009
Fast Close/1                       2:26 PM
Guests: 0

#10040

RO BFF  ANTWICH (2 @5.79)      11.58
         STED                    3.19
         FER
                                 1.69
                                 1.19

                                17.65
                                 1.63

Total                           19.28

Balance Due                     19.28

THANKS FOR STOPPING IN ! !
BE SURE TO STOP BY OUR
LITTLE ROCK LOCATION
OR SEE OUR WEBSITE
www  okedturkeys.com

*Broadnay*

EXXON EXPRESS PAY

FOOD FAST #97 , 4595939
3758 Lamar
PARIS , TX

05/16/2009 12:11:07 PM 3123

MasterCard X5788    MCRD
ROSS/BRENDAN C
INVOICE HQV8498
AUTH 964479

PUMP#2
Supreme             18.459G
PRICE/GAL          $ 2.519
FUEL TOTAL          $26.35
          -----------
          Total = $26.35

CRIND Credit         $26.35

Credit

*$264.40*
*19.28*
*26.35*
*20.00*
—————
*$310.03*

*Broadnap*

Cash Receipt

90

Received $ 30⁰⁰ gas money
& subway gift card for $20⁰⁰

*Denron Thompson*

Total - $50⁰⁰

I received $20⁰⁰
subway card

I received $20 subway card
& one $20 for Naquin

*Kelly*
*Valerie Wynn*
Jackie Aaron  Reid $20 subway
card

I received $20 subway card

Daniel #203

Received $12 for Dinner

*Vickey Diggs*

TOTAL - $162.00

91

I BArry L. Pierie recieved From Brendan Ross
$150.00 Dollars on 8:19:09

Barry Pierie

Witnessed By Audrey J. Kelly

*Betty*

\$100 ——

40 *Audrey*
*Argueta*

100. *Diana*
*Lynch*

\$240
*mitigation*
*party*

Flying Saucer Draught Emporium
4821 Bass Pro
Garland, TX 75043
972-226-0725

| | |
|---|---|
| Server: Rachel | DOB: 08/29/2009 |
| 11:29 PM | 08/29/2009 |
| 200/1 | 3/30104 |

M/C                                    3145798
Card #XXXXXXXXXXXXX57C8
Magnetic card present. ROSS BRENDAN C
Approval: 624778

Amount:        14.00

+ Tip: _____

= Total: _____ 17.⁰⁰

X_____

WARNING!! If paying with debit
card, YOUR bank could hold 20%
or more as a temporary pending
charge. This is NOT the policy
of the Flying Saucer. Thanks!
www. b e e r k n u r d .com

Sign a copy and return

559482

| | | |
|---|---|---|
| custoners order no | phone | date |
| name | | |
| address | | |
| city, state zip | | |
| sold by | cash ☐  charge ☐  c.o.d. ☐  on acct ☐ | shipping information |

# 219

(Broadnax Case)

| quantity | description | price | amount |
|---|---|---|---|
| 1 | 20    wing    12 X 12 | | |
| 2 | | | |
| 3 | | | |
| 4 | Vickie Diggs | | |
| 5 | Darrell Wynn | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | Ace Parking | | |
| 12 | Frank Crowley Courts  Garage C | 91 | 18 |
| 13 | | | |
| 14 | | | |

received

2 eds

Recpt#309016
09/17/09 09:51    LN 4 A# 6    Txn#209005
09/17/09 09:35 In    09/17/09 09:51 Out
CASH PAID    $    2.00
Thank You
Have A Nice Day

Ace Parking
Frank Crowley Courts
Garage C

Recpt#309225
09/10/09 15:44    LN 4 A# 9    Txn#209271
09/10/09 09:34 In    09/10/09 15:44 Out
CASH PAID    $    5.00
Thank You
Have A Nice Day

94

```
      WEISS
    ENTERPRISE
     CROWLEY
-------------------

DATE 08.19.'09    WED

MED DRINK X1     $1.33
BLUE PLATE X1    $5.57
TAXABLE 1        $6.90
TAX TOTAL        $0.57
TOTAL            $7.47
CASH             $7.47
CLERK 1     NO.000085
TIME 11:24        0002
```

```
      WEISS
    ENTERPRISE
     CROWLEY
-------------------


DATE 08.19.'09    WED


BLUE PLATE X1    $5.57
SM DRINK X1      $1.07
MISC X1          $0.10
MISC X1          $0.10
BLUE PLATE X1    $5.57
SM DRINK X1      $1.07
TAXABLE 1       $13.48
TAX TOTAL        $1.11
TOTAL           $14.59
CASH            $14.59
CLERK 1     NO.000080
TIME 11:22        0002
```

```
     Ace Parking
  Frank Crowley Courts
      Garage C


Rcpt#229797
08/20/09 15:58   Ln 3 A# 8   Txn#545166
08/20/09 08:46 In  08/20/09 15:58 Out
CASH PAID     $    5.00-
       Thank You
     Have A Nice Day
```

```
     Ace Parking
  Frank Crowley Courts
      Garage C


Rcpt#301666
08/12/09 14:19   Ln 4 A# 9   Txn#272020
08/12/09 08:39 In  08/12/09 14:19 Out
CASH PAID     $    5.00-
       Thank You
     Have A Nice Day
```

```
     Ace Parking
  Frank Crowley Courts
      Garage C


Rcpt#302154
08/17/09 17:07   Ln 4 A# 9   Txn#220409
08/17/09 07:56 In  08/17/09 17:07 Out
CASH PAID     $    5.00-
       Thank You
     Have A Nice Day
```

95



# Betty Ellis-Brown, MSSW, LCSW

## Invoice: Broadnax Expenses

| | | | |
|---|---|---|---|
| 8/16/2009 | Mileage | To Springhill Marriott, Dallas and DFW airport (147 miles X .585) | .55  30.85  ~~$86.00~~ |
| 8/17/2009 | Meal | Weiss Enterprise Crowley - Gill and Hawple | $22.73 |
| 8/18/2009 | Meal | Weiss Enterprise Crowley - Jackie, witness | $9.60  in with receipts |
| | Parking | Frank Crowley Courts, Garage C | $5.00 |
| | Toll | DFW Airport | $1.00  on toll tag |
| | Mileage | To Paris, TX (125 miles X .585) .55 | ~~$73.13~~ 68.75 |
| 8/21/2009 | Meal | Skaggs Country Store - Audrey Kelly | .55  $6.26 |
| | Mileage | From Paris, TX to El Dorado, AR and return (279 miles X .585) | ~~$163.22~~ 153.45 |

2nd leg of return trip
for defendant's mother          **Total Expenses ~~$366.93~~**

34764

```
   WEISS
 ENTERPRISE
  CROWLEY

  Meal Jackie
   & witness

DATE 08.18.'09    TUE

LUNCH ENTR X1    $3.75
LUNCH ENTR X1    $3.75
FF OR W/SAND X1  $1.07
TO GO CONT X1    $0.30
TAXABLE 1        $8.87
TAX TOTAL        $0.73
TOTAL            $9.60
CASH            $20.00
CHANGE         $10.40
CLERK 1     NO.000009
TIME 11:15       0001
```

```
    WEISS
 ENTERPRISE
  CROWLEY

  Med Gill
   & people

DATE 08.17.'09    MON

LUNCH PLATE X1    $5.90
MED DRINK X1      $1.33
POWER ADE X1      $1.95
NAME COOKIE X1    $1.00
B & J POP X1      $0.75
BUTT SC FOT X1    $2.29
LUNCH ENTR X1     $3.75
CHEZ PIZZA X1     $4.03
TAXABLE 1        $21.00
TAX TOTAL         $1.73
TOTAL            $22.73
CASH            $25.00
CHANGE           $2.27
CLERK 1     NO.000005
TIME 11:12       0001
```

Betty Ellis-Brown MSSW, LCSW
Lic # SW 10436

DALLAS/FORT WORTH
INT'L AIRPORT

$1.00

Ace Parking
Frank Crowley Courts
Garage C

Rcp#229501
08/18/09 13:17   L# 3 A# 6   Txn#544423
08/18/09 10:31 In   08/18/09 13:17 Out
CASH PAID      $   5.00-
Thank You
Have A Nice Day

WELCOME TO
Skaggs Country Store

THANKS, COME AGAIN

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#228193
08/04/09 13:58   L# 3 A# 8   Txn#5409%
08/04/09 13:38 In   08/04/09 13:58 Out
CASH PAID     $   2.00-
Thank You
Have A Nice Day

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#301342
09/10/09 15:05   L# 4 A# 9   Txn#726031
09/10/09 09:07 In   08/10/09 15:05 Out
CASH PAID     $   5.00-
Thank You
Have A Nice Day

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#228768
08/11/09 10:08   L# 3 A# 8   Txn#54250
08/11/09 08:46 In   08/11/09 10:08 Out
CASH PAID     $   4.00-
Thank You
Have A Nice Day

Ace Parking
Frank Crowley Courts
Garage C

Rcpt#228698
08/10/09 12:00   L# 3 A# 8   Txn#542283
08/10/09 11:06 In   08/10/09 12:00 Out
CASH PAID     $   3.00-
Thank You
Have A Nice Day

# *Tab* 21

Fax:                    Jun 25 2008 01:01pm  P001/002
                                                        Page 1

**From:**     Vicki Duron
**To:**       DeVaney, Lee
**Date:**     6/24/2008 12:21:49 PM
**Subject:**  **Defense Attorney Request**

At the request of the Attorney of Record, Brad Lollar, to Inmate Broadnax, James  BNO 08047374 West Tower 3P12, we were advised that he requests restricted contact with his client. The specific request is NO MEDIA, NO LAW ENFORCEMENT Interviews etc. He stated that he will advise his client of the same.

Thank you for your cooperation in this matter.

Vicki Duron
Ext. 2603


CC:        Birdwell, Mona;  Bryan, Michael;  Fowler, Kelvin;  Hines, Laura;  Wooden, Mark

# *Tab* 22

Prosecutors undecided on pursuing death penalty in Farmers Branch p...    http://www.dallasnews.com/news/community-news/carrollton-farme...

Share



news

The Dallas Morning News

# Prosecutors undecided on pursuing death penalty in Farmers Branch police officer's 1983 slaying

By SCOTT GOLDSTEIN / The Dallas Morning
News.sgoldstein@dallasnews.com
Published 01 September 2010 12:33 PM



The Dallas County District Attorney's office has not decided whether to pursue the death penalty in the capital murder case against a man accused of killing a Farmers Branch police officer 27 years ago

Assistant District Attorney Mindy Sauter told State District Judge Mike Snipes during a hearing this morning that she did not know when a decision would be made about the punishment for Gary Wayne Pettigrew if he is convicted. The only two sentencing options for a capital murder conviction are death or life in prison.

Wednesday's court appearance was the first for Pettigrew, 63, who was indicted and arrested last week in the August 1983 fatal shooting of Officer Lowell Clayton "L.C." Tribble The 38-year-old officer was on his way back to work about 1 a.m after dropping off flu medicine at his home for his sick 2-year-old son when he was gunned down inside his patrol car. His slaying had been the longest unsolved cop killing in Texas.

Also during this morning's hearing at the Frank Crowley Courts Building, Snipes appointed Dallas defense attorneys Paul Johnson and Lalon "Clipper" Peale to represent Pettigrew, who maintained his innocence in an interview at the Dallas County Jail on Monday.

Pettigrew, looking disheveled and dressed in gray-and-white Dallas County Jail garb, said little during the hearing. Snipes explained to him the importance of having legal representation.

"It probably was not the smartest thing for you to do to go on television and talk to reporters," Snipes said "I'm 99.9 percent sure you wouldn't have done that if Mr Johnson was already assigned to the case "

### FROM THE WEB

**AI Business**
10 Signs Your Employees Are Having an Office Romance

**Huffington Post**
Christopher Walken Reacts To Natalie Wood Case Reopening

**Newsmax.com**
World's Greatest Retirement Lie Dupes Baby Boomers

**The Stir By CafeMom**
Latest Sandusky News Shows His Family Life Was Disturbing, Too

**HealthCentral com**
8 Restaurant Meals That Are Bad for Your Heart

What's this?

# *Tab* 23

## AFFIDAVIT OF JENNIFER R. REIF

I, Jennifer R. Reif, state that the following is true and correct to the best of my knowledge:

1.  My name is Jennifer R. Reif. I am over 18 years of age and otherwise competent to give this affidavit.

2.  I am providing this affidavit at the request of counsel for James Broadnax. The facts in this affidavit are based on juror interviews conducted by Safa Ansari-Bayegan and myself on November 5-6, 2011.

3.  I graduated from University of Houston Law Center in May 2011 and I am currently completing a post-graduate legal fellowship with Texas Defender Service.

4.  On November 5, 2011, we interviewed juror Alex James Folz at his home and spoke with him again by phone on November 6, 2011. Mr. Folz discussed his decision about whether Mr. Broadnax would constitute a continuing threat to society, and which evidence stood out in his mind. His response included the television interviews Mr. Broadnax conducted with reporters, the callousness of the act, other incidents in the jail that were brought up, and phone conversations recorded at the jail with family members of Mr. Broadnax. Mr. Folz elaborated about the television interviews and stated the most troubling aspects were the callousness of Mr. Broadnax and his comments regarding the victims and their families, specifically, "Fuck them and Fuck their families."

5.  On November 5, 2011, we interviewed juror John Vessels at his home. Mr. Vessels discussed some of the most memorable evidence being the television interviews Mr. Broadnax conducted with reporters. His impressions from the interviews were that Mr. Broadnax was completely heartless, callous, he was bragging about the incident, proud of his actions, he had no remorse, and the event was pre-calculated.

6.  On November 6, 2011, we interviewed juror William Kreighbaum at his home. Mr. Kreighbaum stated some of the most damaging evidence for Mr. Broadnax was his confession to the news reporter and his lack of remorse in the television interviews.

Jennifer R. Reif Affidavit – Page 1 of 2

104

FURTHER AFFIANT SAYETH NOT.

_____
Jennifer R. Reif

Sworn to before me this 10th day of __Navember_____ 2011.


NICHOLAS MATTHEW MENSCH
Notary Public, State of Texas
Commission Expires 02-18-2014

_____
Notary Public-State of Texas

My commission expires: 2-18-2014

# *Tab* 24

AFFIDAVIT OF FACT

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on this day personally appeared Clifton Jenkins, who being by me duly sworn, did depose and state upon his oath as following.

My name is Clifton Jenkins. I am over twenty-one years of age and am fully competent to make this affidavit.

1.  I was appointed as the fact investigator in the state capital habeas litigation styled: Ex parte James Garfield Broadnax, Criminal District Court #7, Cause No. F08-24677-Y, Texas Court of Criminal Appeals, AP-76-207

2.  I am a private investigator License No. A05152, under the Texas Occupations Code and Rules Approved by the Department of Public Safety. I have been appointed by various state and federal court judges over the past twenty (20) years. I worked with defense attorneys in both capital and non-capital cases.

3.  On March 30th, 2011, the Honorable Michael Snipes of Criminal District Court #7, Dallas County, Texas appointed me the Fact Investigator to assist defense counsel in the preparation of the state Application for Writ of Habeas Corpus on behalf of the Applicant, James Garfield Broadnax, who was found guilty of capital murder and was sentenced to death.

4.  A due diligence investigation into how the media learns about the location of a capital murder suspect in the Dallas County jail does not appear to have been done before the August 4, 2009 suppression hearing in the Broadnax case. Based on my investigation, had such an investigation been done, defense counsel would have learned that the media can and does obtain location information from various public information sources without prior law enforcement contact. They also would have learned that sometimes, to avoid answering questions, the media invokes legal privilege even outside a courtroom setting. With these facts, defense counsel would have been alerted to possible problems asserting "reporters as state agents," and been on notice to explore other theories as well.

107

Page 2

My investigation was as follows:

a.    I did an internet search on the four (4) TV news media
      stations assinging   reporters to make jail interviews
      with Ex parte James Broadnax.  I viewed and noted
      the   addresses and telephone numbers for Channel 4,
      Channel 5,  Channel 8, and Channel 11.

b.    I went to WFAA Channel 8 located a 606 Young Street.
      The assignment editor directed me to go to the Belo
      Legal Office and talk to Channel Eights attorneys.
      I met with two attorneys who stated that they prefered
      not to give information about how they know when a
      suspect is incarcerated in the Dallas Jail System.
      They also stated there are laws to protect them from
      giving out that information.

c.    I then went to KDFW Fox 4 located at 400 N. Griffin
      Street.  I was told by security that I couldn't
      enter the building without an appointment.  I contacted
      Channel fours assignment editor who refered me to
      the news director's voice mail.  I left my cell phone
      number and waited for his return call for several days.
      He returned my call informing me that he didn't care
      to give any information  on locating jail suspects. t.

d.    I contacted channel five's assignment editor and asked
      him how they know movements and locations of capital
      murder suspects that have been arrested.  He stated that
      locations can  be   found by calling the agency that
      arrested the suspect, by doing a online record search
      of jail lookup, and by contacting the Dallas County
      Sheriffs Department.  When they locate the suspect,
      they fax a request for inmate visitation.

e.    I contacted KTVT channel eleven's assignment editor
      and inquired how they know the locations of high
      profile murder suspects that have been arrested.
      He informed me that they can get that by calling
      the arresting law enforcement angency, by doing a
      websearch of Dallas County.Org, by doing a Dallas
      County JI54 computer check, or by contacting the
      the Dallas County Sheriffs Department Inmate
      Location desk.


FURTHER AFFIANT SAYETH NOT.


108

Page   3


X _____
                          Clifton Jenkins

                          Private Investigator
                          license #  A05152
                          2951 Harlee Drive
                          Farmers Branch,Tx
                          (469)438-7959

SUBSCRIBED AND SWORN TO before me this _16_ day of _December_ 2011

_____
              Notary Public

# *Tab* 25

110

State of Texas        )
                     )
County of Bexar     )

## AFFIDAVIT OF DWIGHT STEWART
### (Materially False and Misleading Gang Membership Testimony)

Re:    James Garfield Broadnax
        Criminal District Court #7, Dallas County, TX, No. F08-24667-Y
        Ex parte Broadnax, Writ No. AP-76, 207

BEFORE ME, the undersigned authority, on this day personally appeared Dwight Stewart, who by me duly sworn, did depose and state upon oath as follows:

1. My name is Dwight Stewart. I am over twenty-one years of age and am fully competent to make this affidavit.

2. **QUESTION(S) PRESENTED: I have been asked by the defense team in the State Habeas proceedings for James Garfield Broadnax, to act as an expert and opine on:**
   a. Whether the prosecution created a materially false and misleading impression that Broadnax was a gang member, thus creating the misperception that Broadnax was a future danger.
   b. Whether the defense knew or should have known at the time of the trial of James Broadnax of the criteria for "combination" or "criminal street gang" as set out in TEX. CODE CRIM. PROC. Chapter 61, and challenged the false and misleading testimony sponsored by the prosecution.

3. **CONCLUSIONS:**
   a. The testimony of Detective Nelson created the false and misleading impression that Mr. Broadnax was a gang member attempting to attribute to Mr. Broadnax gang criteria based on TEX. CODE CRIM. PROC. Art. 61.02 (c) (2) (iv, v). However, as more fully discussed below, the Gangster Disciples and Folk Nation is not recognized a Dallas criminal street gang. Further, the various signs, lyrics,

Page 1 of 9

111

and drawings, which Detective Nelson testified about, do not support the statutory criteria from which gang membership can be attributed to Mr. Broadnax. It appears that any "gang" persona attributable to Mr. Broadnax is simply the efforts of a scared young man from an impoverished and high risk ground attempting to protect himself, and/or exhibit the free speech rights of an aspiring rap artist.

b. Since 2006, I have presented Continuing Legal Education (CLE) seminars at a variety of venues including The Center for American and International Law (CAILAW) in Plano, Texas on the subject of gang education, specifically for attorneys practicing capital defense. Through such education, counsel for Mr. Broadnax knew or should have known to investigate whether or not Mr. Broadnax was listed in the Dallas Gang database, and in particular that the lack of specific gang-related tattoos is a strong indicator that Mr. Broadnax was not a gang member.

## 4. BASES OF CONCLUSIONS:

During the punishment phase of the trial, the prosecution created a materially false and misleading impression that Broadnax was a member of a "combination" or "criminal street gang," and the Gangster Disciples in particular because Broadnax does not meet the criteria as set out in TEX. CODE CRIM. PROC. Chapter 61.

### a. TEXAS STATUTE: "Combination" and "Criminal Street Gang"

TEX. CODE CRIM. PROC. Art. 61.01. is a "Compilation of Information Pertaining to Criminal Combinations and Criminal Street Gangs. It refers to TEX. PENAL CODE 71.01 to define "Combination" and "Criminal Street Gang."

TEX. PENAL CODE 71.01 defines "Combination" to mean "three or more persons who collaborate in carrying on criminal activities..." It defines "Criminal street gang" to mean "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities."

TEX. CODE CRIM. PROC. Art. 61.02 (c)(2)(C) sets out a list of criteria in (i-viii), two of which must be present before an individual can be identified as a member of a "combination" or

Page 2 of 9

112

"criminal street gang." The two criteria that Detective Nelson unsuccessfully attempted to show were:

TEX. CODE CRIM. PROC. Art. 61.02 (c)(2)(iv), which states that there must be "evidence that the individual frequents a documented area of a criminal street gang and associates with known criminal street gang members;" and

TEX. CODE CRIM. PROC. Art. 61.02 (c)(2)(v), which states that there must be "evidence that the individual uses, in more than an incidental manner, criminal street gang dress, hand signals, tattoos, or symbols, including expressions of letters, numbers, words, or marks, regardless of how or the means by which the symbols are displayed, that are associated with a criminal street gang that operates in an area frequented by the individual and described by Subparagraph (iv)."

b. Gangster Disciples & Folks Nation - Not a Dallas Criminal Street Gang

(1) Gangster Disciples

Based on his testimony, Detective Nelson was unaware of a "documented area" in the Dallas/Fort Worth area that is frequented by Gangster Disciples. [CITE TO RECORD] Furthermore, he made no attempt to offer evidence that Mr. Broadnax was associated with or frequented any area in which the Gangster Disciples operated as a criminal street gang in the Dallas/Fort Worth area. The testimony of Detective Nelson offers no evidence that Mr. Broadnax had anything other than an incidental use of various gang references.

Further, Mr. Broadnax is not listed in any Dallas gang database. Further, Mr. Broadnax does not have any specific gang-related tattoos, which is a strong indicator that Mr. Broadnax was not a gang member.

(2) Folk Nation

The basis for the misleading impression given by Detective Nelson appears to have been based, in part, on televised recordings of a statement made by Broadnax which included the words, "wrapped my flag around it, 'cause I'm a Folk" (RR 49:83 and State Exhibit 404). Broadnax's reference to "Folk" or the Folk Nation has no current meaning. The term relates to an affiliation dating back some 30 years ago before Broadnax's birth which is no longer valid. In

Page 3 of 9

113

current gang terminology, members reference their individual gangs, with signs and symbols. I observed no mentioned of "Gangster Disciples" in the televised interviews.

Only one televised interview provided the "Folk" reference which Detective Nelson testified was a "shout out to the gang" (RR 49:88). Based on my experience with gangs, a true gang member would have taken the opportunity to use all three media outlets to shout out to his fellow gang members and establish his reputation. Broadnax did not avail himself of this opportunity. Detective Nelson testified in response to a hypothetical question by the prosecution that if the defendant was arrested while wearing something wrapped around his head, that potentially could be a flag by stating, 'a flag is their bandana" (RR 49:88). In my expert opinion, a bandana is not a significant gang symbol given my observation that bandanas are regularly worn by a variety of individuals in our current society who have no association whatsoever with gangs.

### (3) A Gangsta Wanna-be

Often young men like Mr. Broadnax, who was 19 years old at the time of his arrest, who come from a high risk backgrounds operate on the fringe of gang membership as "gang wannabes" without ever actually being a part of an organized street gang. Gang membership may seem appealing, particularly to a Black boy for whom society offers few opportunities to overcome severe poverty.

Further, young men facing incarceration often have real and legitimate fears of danger and vulnerability within jail or prison walls. It is not unusual for such a young person to try to establish a tough or unafraid persona by claiming gang membership in the hope that by doing so, he will be left alone and can survive unhurt or avoid physical or sexual attack.

Finally because of the popularity of gangsta rap, most young Black men like Mr. Broadnax are well versed in gang language, both verbal and nonverbal. Consequently acquiring a gang persona may simply demonstrate the efforts of a scared young man in an attempt to protect himself and overcome his fears.

Page 4 of 9

114

### c. No Evidence that Items Showed Broadnax As Gang Member

As demonstrated below, the various items to which Detective Nelson referred, do not rise to the level of indicia of gang membership by Mr. Broadnax

#### (1) OG74

Detective Nelson testified that he based his opinion, in part, on statements made during a recorded phone call made between Broadnax and his mom's boyfriend during which Broadnax asked if he was a member of OG74 and the man replied, 'yeah I remember that.' Broadnax replied that he was a member of that organization (RR 49:94-95, State Exhibit 553). Based on my personal knowledge of Black culture, "OG" is often used generically to denote an older man's knowledge and experience. Since no corroboration was given regarding the veracity of this man's assertion, a reasonable person with knowledge of Black culture might suggest that his statement was braggadocio rather than statement of fact.

#### (2) Drawing and Lyrics

Detective Nelson testified at length about the notebooks found in the victim's car which were alleged to belong to Mr. Broadnax and contained raps lyrics and gang symbols (RR 49:105). The prosecution states in their question, "You can't say that he actually made these drawings; is that right?" Detective Nelson gives a non-responsive answer, "This is what was presented to me, sir. I wasn't there when he did it" (RR 49:112). As a gang expert, I would have testified that a notebook as described in the testimony containing rap lyrics and gang symbols, could, in fact, be just that without implying character as suggested in the hypothetical question and response between the prosecution and Detective Nelson: "If he had them in his possession, it would say something about who he is; is that correct?" – Answer by Detective Nelson: "Yes" (RR 49:112). Detective Nelson also testified that the drawings on their own, without an association with a gang member, "could just be something they like to draw" (RR 49:104).

Detective Nelson testified: "He's writing lyrics to songs that he's coming up with" and answers affirmatively that "These would be things that he would be creating in his mind though" (RR 49:122). He also testified that the lyrics were "tagged by—with J.B. all throughout" (RR 49:109). The use of the word "tagged" impermissibly suggested a gang affiliation. Detective

Nelson should have simply referred to "J.B." as a signature of the original lyrics, and a matter of establishing ownership of Mr. Broadnax's creative property.

As a gang expert, I recognize that popular culture has embraced rap music which utilizes gang symbols and references. To suggest that writing rap lyrics and drawing symbols identify a person as a gang member is a gross over statement. Particularly among African American males, the rap persona which utilizes many gang references, denotes a macho reputation, financial success and attractiveness to the opposite sex. Gang symbolism is merely a prop to portray these characteristics.

### (3) Tattoo & MOB

Detective Nelson testified that a tattoo denoting "MOB" suggests the Gangster Disciples' rivalry with the Bloods gang. He goes on to state that it can also mean "money over bitches" but connects the statement to "street hustling" (RR 49:113). As a gang expert, I would have testified that MOB is a popular tattoo that is frequently seen on popular rap stars and in its popular usage, has no relevance to gang membership.

### (4) Jail Cell Contents

The district attorney's investigator, Darrell Doty, testified about photos and various items taken from Mr. Broadnax's cell. None of this satisfies the statutory criteria because, as Investigator Doty acknowledged, he had no idea who placed scratches in the paint denoting gang symbols on the cell walls (RR 49:43-44). Hence, without credible evidence, Investigator Doty's testimony attributing gang membership to Mr. Broadnax created the false and misleading impression that certain gang symbols were the product of Mr. Broadnax's efforts.

In summary, it is my expert opinion, the prosecution failed to provide credible and sufficient evidence that Mr. Broadnax was a gang member and thereby created a materially false and misleading impression that he was a member of a "combination" or "criminal street gang," in particular the Gangster Disciples, thereby creating the misperception that Mr. Broadnax was a future danger.

Page 6 of 9

116

    d. **Defense counsel knew or should have known of the existence of the statutory criteria for gang membership and rebutted the prosecution's evidence**

Since 2006, I have presented Continuing Legal Education (CLE) seminars at a variety of venues including The Center for American and International Law (CAILAW) in Plano, Texas on the subject of gang education, specifically for attorneys practicing capital defense. Thus, counsel for Mr. Broadnax knew or should have known to investigate whether or not Mr. Broadnax was listed in the Dallas Gang database.

Although State witness, Melody Nelson, Asst. Warden with the TDCJ Institutional Division testified that Gangster Disciples are not recognized as a security threat that requires automatic administration segregation, but are instead considered a 'clique' (RR 49:164), defense counsel offered no cross-examination of the State's primary gang witness, Detective Nelson. Likewise, defense counsel did not cross-examine the prosecution's investigator, Mr. Doty, relating to his testimony of gang signs within the jail cell and the misleading implication of Mr. Broadnax's gang membership.

If I had been asked to testify as a gang expert on behalf of Mr. Broadnax, I could have offered the following testimony:

    A. gang activity is not a solo activity but requires three or more members who provide structure and hierarchy and operate together in criminal enterprise. There is no evidence that Mr. Broadnax had any gang associates or entered into any criminal gang enterprise.

    B. attraction to gang membership can be a result of poverty, social isolation and alienation from family in an effort to find identity and belonging in a surrogate-type gang family.

5. **BACKGROUND AND EDUCATION:**
    (5) Degree: BA degree in Criminal Justice, University of Texas at San Antonio
    (6) Memberships:
        o  Member of the Hays County Gang Task Force
        o  Counter Terrorism Work Group with FBI

Page 7 of 9

117

- o Nationally Certified Gang Awareness Trainer specializing in gangs K-12, Chinese Gangs, Military Gangs, and International Gangs (National Gang Crime Research Center, Chicago, IL)
- o Former member of Texas Gang Investigator Association
- o Coastal Bend Gang Task Force
- o International Latino Gang Investigators Association
- o Hays Consolidated Independent School District Drug and Gang committee.

(7) Trainer & Educator - Conducted specialized trainings to Law Enforcement, School Administrators, Capital Defense Attorneys and other stakeholders throughout Texas, Ohio, Georgia, Florida, Maryland, Kansas, Arizona, and Arkansas, including:

- o Texas Criminal Defense Lawyers (TCDLA) & Center for American and International Law (CAILAW) Capital Trial Mitigation Conferences
- o DARE conferences
- o School Based Law Enforcement Conference
- o National Association of Blacks in Criminal Justice Conference, National Association of School Resource Conference
- o Texas Alliance of Black Educators Conference
- o Texas Homeland Security Conference
- o Texas Association of School Boards Conference
- o Juvenile Justice Summit
- o Texas Violent Gang Task Force
- o Texas School Safety Center School based law enforcement conference
- o Texas School Safety Center School Administrators Conference and others.

(8) Gang Expert - Consulting and Testifying Expert:

- o Testified and consulted numerous times on gang-related issues for the defense on capital cases in Harris, Hidalgo, Travis and Bexar Counties, Texas as well as Tulsa County, Oklahoma

6. **MATERIALS REVIEWED: In reaching my professional opinion, I have reviewed the following materials:**

# Tab 26

119

a. Trial Transcript, State of Texas v. Broadnax, Criminal District Court #7, Dallas County, TX No. F08-24667-Y.

    i. Volume 49, in particular the testimony of the following witnesses for the State of Texas: DPD Officer David Barger, DA Investigator Darrell Doty, Detective Barrett Nelson (the State's gang expert); Assistant Warden, TDCJ Institutional Division Melody Nelson.

    ii. State Exhibit 404 (Televised Interviews w/Mr. Broadnax

b. Trial Transcript, State of Texas v. Broadnax, Criminal District Court #7, Dallas County, TX No. F08-24667-Y.

    i. Volume 51, witness for the defense, Gary Aaron

c. TEX. CODE CRIM. PROC. Art. 61.01 to Art. 61.12 (attached as Exhibit A)

d. Texas Department of Public Safety, Criminal Intelligence Service, Texas Gangs: An Overview of Security Threat Groups and Other Major Gangs in Texas (July 2007) (attached as Exhibit B).

7. I have read this affidavit. I affirm that it is true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

_____
Dwight Stewart
2747 Point Sur
Converse, Texas 78109
(210) 875-3281

SUBSCRIBED AND SWORN TO before me on ___November 10___, 2011.

_____
Notary Public



DIANNE DAVIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 09-09-2014

**Page 9 of 9**

120

State of Texas          }}

County of Dallas        }}

**Affidavit of John F. Edens, Ph.D.**

Re: Ex parte James Broadnax, F08-24667-Y, Criminal District Court No. 7, Dallas County, TX

Comes the Affiant, John Edens, Ph.D., who, after first being duly sworn, states the following:

1. My name is John F. Edens, Ph.D., and I am a licensed psychologist in the state of Texas (license number 31105) and a Professor in the Department of Psychology at Texas A&M University (TAMU). Over the years I have been actively involved in education and training in the areas of psychological assessment, forensic psychology, research methodology, and professional ethics. I have taught multiple courses in these areas to hundreds of graduate and undergraduate students. I also have conducted numerous advanced training workshops in these and related areas for mental health, legal and criminal justice professionals for the last several years. Since 2000, I have also consulted on numerous federal and state death penalty cases in regards to the assessment of "future dangerousness" and the role of mental health evidence, such as psychopathic personality disorder (psychopathy) and antisocial personality disorder (APD).

2. I have conducted research on psychological assessment and the prediction of human behavior since the 1990s and have published over a hundred peer-reviewed journal articles, book chapters, and professional manuals related to these topics. Most of my research has focused on forensic and correctional assessment issues, such as the potential for engaging in future violence and other forms of socially deviant behavior.[1] For example, I was a co-investigator on a $1.3 million research grant from the National Institute of Mental Health that examined the role of psychopathy and APD in the adjustment and future conduct of criminal offenders. Additionally, I am the lead author of the *Personality Assessment Inventory Interpretive Report for Correctional Settings* (PAI-CS),[2] which is an empirically derived, actuarial interpretative system designed to aid in the identification of inmates who have mental health problems and/or are likely to have difficulties adjusting to prison. I also have published extensively on controversies concerning various psychological tests and assessment instruments used in forensic and correctional settings, as well as controversies concerning psychopathy and APD and their use in the legal system.[3] Additionally, I have consulted with numerous prosecution offices, defense teams, and state agencies (e.g., probation departments) on issues related to forensic mental health assessment, particularly in terms of the scientific reliability and validity of various tests and assessment methodologies used to assess recidivism risk.

3. Because of my background and expertise in forensic and correctional psychology, I am frequently called on to evaluate the work of other social scientists and mental health professionals. For example, I am a former Associate Editor for the peer-reviewed scientific journal, *Assessment*. In that capacity, I was responsible for judging the scientific merit of research manuscripts submitted for publication and making editorial decisions—with input from peer reviewers—regarding whether these research reports were scientifically rigorous and warranted publication. I also have been appointed to the editorial boards of various psychology-law journals (*Law and Human Behavior, Behavioral Science and the Law, International Journal of Forensic Mental Health*) and journals specifically addressing psychological assessment (*Psychological Assessment, Journal of Personality Assessment*), where I serve as a peer

121

reviewer of articles submitted for publication. In this capacity, I provide the Editor or Associate Editor with a review of the methodological rigor of the research and a recommendation concerning its overall contribution to the scientific literature. Over the course of my career I have been asked to serve as an editor or reviewer for hundreds of scientific research reports from a multitude of social science and medical journals.

4. I am familiar with the research literature on the *Hare Psychopathy Checklist-Revised* (PCL-R)[4] and have used it in both clinical and research settings. The PCL-R is a 20-item checklist of psychopathic traits (e.g., remorselessness, grandiosity, superficial charm) that typically is scored based on a semi-structured interview and review of available collateral information. Examinees can receive a score ranging from 0 (zero) to 40, with higher scores indicating that they are more psychopathic. Aside from conducting quite a bit of scientific research on Dr. Hare's instruments,[5] particularly their relationship to violence,[6] I also have published extensively on the potential misuses and abuses of these scales in forensic evaluations,[7] especially in the context of capital murder trials. I am also familiar with the Diagnostic and Statistical Manual-4th Edition (DSM-IV) diagnosis of APD, having lectured on the DSM-IV in graduate and undergraduate courses and having published several federally-funded, scientific research articles regarding various controversies regarding APD specifically.[8]

5. I have been contacted by Lydia Brandt, defense counsel for James Broadnax, to determine if I could serve as a consultant on this case with the following questions in mind:

1. At the time of the Broadnax trial, was it scientifically defensible to use the DSM-IV APD diagnosis in a death penalty trial setting to evaluate whether a defendant will be a future danger and thus should be put to death? (Vol 50, Lane testimony, pp. 77- 170, in particular, pp. 109-111, 145-160)

2. At the time of the Broadnax trial, was it scientifically appropriate to use the Hare PCL-R, and its characteristics of psychopathic personality in a death penalty trial setting to evaluate whether a defendant will be a future danger and thus should be put to death? (Vol 52, Price testimony pp. 216-231, 239- 263, in particular pp. 225-226, 229, 248-259)

3. At the time of the Broadnax trial, was it common knowledge among the mental health professionals that it is not scientifically appropriate to use either APD from the DSM-IV or the Hare PCL-R in a death penalty trial setting to determine whether a defendant will be a future danger and thus should be put to death?

4. At the time of the Broadnax trial, would there have been a lack of reasonable due diligence in failing to call a rebuttal witness to challenge/explain the misuse of the Hare PCL-R and characteristics of psychopathic personality in a death penalty trial setting for the future dangerousness determination?

6. In response to these questions, at the time of the Broadnax trial I am of the opinion that, for purposes of addressing future dangerousness, there was essentially no scientific justification for introducing into evidence an APD diagnosis, which in this case was merely a clinical impression documented by one of the witnesses in jail medical records. Following the introduction of APD evidence, there was no legitimate scientific reason to have then introduced evidence concerning the PCL-R in this case, in particular equating it with the DSM-IV diagnosis of APD. Once introduced, there is a strong probability that the PCL-R stigmatized the defendant with an irrelevant and pejorative label ("psychopath") and set of personality traits (e.g., superficial charm, grandiosity) having little or nothing to do with his likelihood of future dangerousness if

122

not put to death. At the time of the trial, published scholarly reviews criticizing the use of psychopathy and APD diagnoses in capital murder cases were available in the scientific literature and mental health professionals who work in this area are familiar with these research findings. As such, numerous experts would have been available to aid in a challenge to the introduction of this evidence or, at a minimum, serve as a rebuttal witness to the expert witnesses called by the prosecution. Information supporting these opinions is detailed in paragraphs 7 through 14 below.


SOURCES OF INFORMATION

7. The following is a list of documents and other sources of information that I have reviewed for this case (citations for all scientific research are provided in endnotes in the text):

a) Broadnax Trial Transcript: Vol. 50; Vol. 52 (pp. 152-296)
b) Broadnax Trial Defense Exhibits 13-14, 20-33
c) MyFOXdfw.com video of jailhouse interview of James Broadnax (dated June 23, 2008)
   (http://www.myfoxdfw.com/dpp/news/GRAPHIC_VIDEO_F_Victims_Families)
d) NBC Dallas-Ft. Worth video of jailhouse interview of James Broadnax (dated May 28, 2009)
   (http://www.nbcdfw.com/news/local/Jailhouse_Interview_James_Broadnax_Dallas-Fort_Worth.html)


8. The use of a DSM-IV diagnosis of APD to address the issue of future dangerousness in capital murder trials is fraught with numerous problems, which have been documented in several peer-reviewed publications over the past several decades.[9] For example, most individuals in prisons can be diagnosed as having APD, with some studies indicating as many as 80% of prisoners meeting the diagnostic criteria. As such, evidence of this disorder does little to winnow the pool of potentially death-eligible defendants. As well, even when APD assessments are based on structured diagnostic interviews (which increases accuracy), rates of agreement across diagnosticians are relatively poor. That is, who does and does not get diagnosed with this disorder is somewhat dependent on who conducts the evaluation. Even assuming that assessments are reliable at a given point in time (e.g., during early adulthood), the frequency of diagnoses of APD decreases with age, showing a much lower prevalence among older adults than younger adults. Additionally, many prosecution-retained experts who frequently testify concerning future dangerousness rely on APD diagnoses to inform their predictions. Despite the ostensibly scientific nature of these assessments, such predictions have demonstrated remarkably poor accuracy in identifying prison inmates who will go on to commit serious acts of violence,[10] often dramatically exaggerating the likelihood of continued serious aggression by individuals such as Mr. Broadnax. In sum, there appears to be a misplaced reliance in the record on the probative value of APD diagnoses in capital murder cases and essentially no reliance on a well-developed body of research findings that have identified scientific risk factors for prison violence among convicted murderers and other prisoners.[11]


9. During the testimony of Dr. Jack Randall Price, the diagnosis of APD and the Hare PCL-R were essentially treated as equivalent or interchangeable mental health concepts.[12] They are not. The PCL-R is a commercially-marketed, proprietary rating scale based on the conceptual model of psychopathy espoused by Dr. Hare, a Canadian psychology professor (emeritus). A diagnosis of APD is based on the criteria detailed in the DSM-IV Text Revision. Although the DSM does make passing reference to "psychopathy" and there is *some* overlap in the current diagnostic criteria for APD and the individual items that are scored on the PCL-R, it is indefensible to treat the two as synonymous. Aside from the fact that the PCL-R contains

123

several more diagnostic items than does the APD diagnosis, more problematic is the fact that, noted above, the majority of prison inmates would meet the diagnostic criteria for APD, yet only a much smaller percentage (usually in the 15%-30% range) would be "diagnosable" as psychopathic on the PCL-R (typically scoring at or above 30 on this scale). Although most prisoners who would be classified as "psychopaths" on the PCL-R would also meet criteria to be diagnosed as having APD, the reverse is not true: many prisoners who meet criteria for APD would *not* be classified as psychopathic (>/= 30) on the PCL-R.[13] As such, to treat the two disorders as interchangeable or equivalent is at best confusing and at worst misleading. As such, I see no legitimate scientific reason for the introduction of evidence concerning the PCL-R in response to any questions regarding whether Mr. Broadnax met criteria for APD.

10. The introduction of evidence concerning the PCL-R during the trial of Mr. Broadnax raises numerous problems. Foremost, the term "psychopath" and the traits typically associated with the PCL-R (e.g., remorselessness, callousness, grandiosity, superficial charm) are likely to unfairly prejudice jurors against a capital defendant. These characteristics are very stigmatizing, evoking images of fictional villains like Hannibal Lecter, as well as real-world serial killers such as Ted Bundy and Jeffrey Dahmer.[14] In a series of research studies[15] in which my colleagues and I experimentally manipulated the presence of psychopathy evidence in mock capital cases, we found that defendants who were described as psychopaths were viewed as considerably more dangerous than defendants who were not described as psychopaths, even though all other facts of the cases were identical. More importantly, in these studies support for executing a psychopathic defendant was considerably higher than support for executing him when not described as psychopathic. For example, in one of these studies,[16] 60% of the participants in the psychopathy testimony condition indicated they would support a death sentence for the defendant, whereas only 38% did so when he was described as non-mentally disordered, and only 30% did so when he was described as psychotic (e.g., experiencing delusions and hallucinations).

11. Of note, the unfair prejudicial effects of introducing the PCL-R in the trial of Mr. Broadnax are likely magnified by statements made during direct testimony by Dr. Price that there is essentially no treatment for psychopathy.[17] Early reviews of the psychopathy/treatment literature were quite pessimistic, with some even arguing that treatment might make psychopaths worse. More recent published scientific research, however, suggests that there are interventions that can significantly reduce the likelihood of future violent behavior among individuals with psychopathic traits, particularly those who are relatively young.[18] As such, asserting that psychopaths cannot be treated runs counter to what is currently known about treatment efficacy with these individuals—but it does bolster the inaccurate and invalid stereotype of a capital defendant as a hopeless case who will never be anything other than a dangerous predator.

12. Another significant problem concerning introduction of evidence regarding the PCL-R is that, noted above, it has been shown to artificially increase the inaccurate perception that a capital defendant will be dangerous in the future. At present there is little evidence to support the assertion that psychopathy scores actually have any clear bearing on a convicted capital defendant's likelihood of engaging in future violence in U.S. prisons. That is, the available scientific studies suggest that PCL-R scores are at best very weakly related to violent behavior in U.S. prisons. This assertion is based on the results of a published meta-analysis[19] in which my colleagues and I statistically aggregated the results of all available individual research studies examining the relationship between PCL-R scores and violence in U.S. prisons, which consisted of an aggregated sample size of over 800 inmates across five individual studies. I am not aware of any published studies of the PCL-R in the U.S. that have examined whether it can reliably predict the violent behavior of capital defendants, life sentenced offenders, or those

124

offenders who are in administrative segregation—but the fact that it has not performed well in five U.S. prison studies of non-capital offenders suggests that its poor accuracy would be similar or worse among capital defendants serving life sentences.[20]

13. Aside from having an unfair prejudicial impact and having little or no demonstrated probative value concerning future dangerousness in capital cases, it is also worth stressing that a growing body of scientific research indicates that PCL-R scores are highly *unreliable* in "real world" criminal cases (as opposed to controlled scientific research studies). Initially this concern was based primarily on several anecdotal examples of large scoring disparities across experts testifying about the same defendant in criminal cases.[21] More recently, however, several "field studies" of the PCL-R have reported that in adversarial settings experts disagree considerably on the scoring of this rating scale and, not surprisingly, results also suggest that prosecution experts tend to give higher scores than do defense experts.[22] It is unclear whether prosecution witnesses overestimate psychopathy, defense witnesses underestimate psychopathy, or both, but the key point is that how psychopathic a defendant is described to be at trial appears to some extent contingent on who conducts the examination.

14. To summarize my professional opinions in regards to the trial of Mr. Broadnax, there seems to be no scientifically valid or reliable reason to have introduced evidence concerning the PCL-R in this case in response to earlier evidence and testimony concerning APD—which is itself largely extraneous to a scientifically based assessment of risk factors for future violence in prison. Once introduced, there is a strong probability that the PCL-R unfairly stigmatized the defendant with an irrelevant and pejorative label ("psychopath") and set of personality traits (e g., superficial charm, grandiosity, conning/manipulative). Given that (a) the PCL-R has little or no predictive validity in relation future dangerousness in capital murder trials and (b) scores provided by examiners in adversarial settings seem highly unreliable, I am of the opinion that it has little or no probative value in capital cases, in addition to being unfairly prejudicial. Obviously it is the role of the legal system (rather than social scientists) to determine the legal admissibility of mental health evidence in terms of its probative and prejudicial value, but to the extent that admissibility is to be informed by scientific data, the above-noted research findings lead me to the opinion that the PCL-R should not be introduced in cases such as that of Mr. Broadnax. Given that this evidence was introduced, I am of the opinion that an expert familiar with this area of research should have been called to rebut this evidence rather than simply let it go unchallenged. At a minimum, the cross-examination of Dr. Price should have addressed the points I have noted above regarding the limitations of APD and PCL-R evidence in these cases.

I affirm that the foregoing paragraphs, numbered one through 14, are true and correct to the best of my knowledge.

_____                    Nov. 3, 2011
John F. Edens, Ph.D.                                Date
5215 Cascades Dr.
College Station, TX 77845
(979) 422-6599

MICHELLE ELAINE BROWN
Notary Public, State of Texas
My Commission Expires
May 09, 2015

Michelle Elaine Brown
11·3·2011

125

## Endnotes

[1] See, e.g: Buffington-Vollum. J. K . Edens. J. F., Johnson. D W., & Johnson. J. (2002). Psychopathy as a predictor of institutional misbehavior among sex offenders: A prospective replication. *Criminal Justice and Behavior, 29*, 497-511.

Douglas, K. S., Vincent, G., & Edens, J. F. (2006). Risk for criminal recidivism: The role of psychopathy In C. Patrick (Ed.), *Handbook of psychopathy* (pp 533-554). New York: Guilford.

Edens, J. F., Buffington-Vollum, J. K., Colwell, K. W., Johnson, D. W., & Johnson, J. (2002). Psychopathy and institutional misbehavior among incarcerated sex offenders: A comparison of the Psychopathy Checklist-Revised and the Personality Assessment Inventory. *International Journal of Forensic Mental Health, 1*. 49-58.

Edens, J. F., & Campbell, J. S. (2007). Identifying youths at risk for institutional misconduct: A meta-analytic investigation of the Psychopathy Checklist measures. *Psychological Services, 4*, 13-27.

Edens, J. F., Campbell, J. S., & Weir, J. M. (2007). Youth psychopathy and criminal recidivism: A meta-analysis of the Psychopathy Checklist measures. *Law and Human Behavior. 31*, 53-75.

Edens, J. F., & Cahill, M. A. (2007). Psychopathy in adolescence and criminal recidivism in young adulthood: Longitudinal results from a multi-ethnic sample of youthful offenders. *Assessment, 14*, 57-64.

Edens, J. F., Poythress, N. G., & Lilienfeld, S. O. (1999). Identifying inmates at risk for disciplinary infractions: A comparison of two measures of psychopathy *Behavioral Sciences and the Law, 17*, 435-443.

Edens, J. F., & Ruiz, M. A. (2006). On the validity of validity scales: The importance of defensive responding in the prediction of institutional misconduct *Psychological Assessment, 18*, 220-224.

Edens, J. F., Skeem, J. L., & Douglas, K. S. (2006). Incremental validity analyses of the Violence Risk Appraisal Guide and the Psychopathy Checklist. Screening Version in a civil psychiatric sample. *Assessment, 13*, 368-374.

[2] Edens, J. F., Ruiz, M. A.. & PAR Staff. (2005). *Personality Assessment Inventory Interpretive Report for Correctional Settings (PAI-CS)*. Odessa, FL: Psychological Assessment Resources. Inc.

[3] See, e.g: Amenta, A. E., Guy, L. S., & Edens, J. F. (2003). Sex offender risk assessment A cautionary note regarding measures attempting to quantify violence risk. *Journal of Forensic Psychology Practice, 3*, 39-50.

Edens, J. F. (2006). Unresolved controversies concerning psychopathy: Implications for clinical and forensic decision-making. *Professional Psychology: Research and Practice, 37*. 59-65.

Edens, J. F., Buffington-Vollum. J. K., Keilen, A., Roskamp, P., & Anthony, C. (2005). Predictions of future dangerousness in capital murder trials: Is it time to "disinvent the wheel?" *Law and Human Behavior, 29*, 55-86.

Edens. J. F., & Cox. J. (in press). Examining the prevalence, role and impact of evidence regarding antisocial personality, sociopathy and psychopathy in capital cases: A survey of defense team members. *Behavioral Sciences and the Law*

Edens. J. F.. & Douglas, K. S. (2006). Assessment of interpersonal aggression and violence: Introduction to the special issue. *Assessment, 13*, 1-6.

Edens, J. F., Magyar, M. S., & Cox, J. (in press). Taking psychopathy measures "out of the lab" and into the legal system: Some practical concerns. In K. Kiehl & W. Sinnott-Armstrong (Eds.), *Handbook of psychopathy and law* New York: Oxford University Press.

Edens, J. F., & Otto, R. K. (2001). Release decision making and planning. In J. B. Ashford, B D. Sales, & W. H. Reid (Eds.), *Treating adult and juvenile offenders with special needs* (pp. 335-371). Washington, DC American Psychological Association.

Edens, J. F., & Petrila, J. (2006). Legal and ethical issues in the assessment and treatment of psychopathy. In C. Patrick (Ed.), *Handbook of psychopathy* (pp 573-588). New York: Guilford.

Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society?" *Journal of Psychiatry and Law, 29*, 433-481.

Edens, J. F., Skeem, J. L., Cruise, K. R., & Cauffman, E. (2001). Assessment of 'juvenile psychopathy' and its association with violence: A critical review. *Behavioral Sciences and the Law, 19*, 53-80.

126

[4] Hare, R. D. (2003). *The Hare Psychopathy Checklist-Revised technical manual* (2nd ed.). Toronto: Multi-Health Systems.

[5] DeMatteo, D., & Edens, J. F. (2006). The role and relevance of the Psychopathy Checklist-Revised in court: A case law survey of U.S. courts (1991-2004) *Psychology, Public Policy, and Law, 12*, 214-241.

Douglas, K. S., Herbozo, S., Poythress, N. G., Belfrage, H., & Edens, J. F. (2006). Psychopathy and suicide: A multi-sample investigation. *Psychological Services, 3*, 97-116.

Edens, J. F., Marcus, D. K., Lilienfeld, S. O., & Poythress, N. G. (2006). Psychopathic, not psychopath: Taxometric evidence for the dimensional structure of psychopathy. *Journal of Abnormal Psychology, 115*, 131-144.

McCoy, W. K., & Edens, J. F. (2006). Do black and white youths differ in levels of psychopathic traits? A meta-analysis of the Psychopathy Checklist measures. *Journal of Consulting and Clinical Psychology, 74*, 386-392.

Poythress, N. G., Lilienfeld, S. O., Skeem, J. L., Douglas, K. S., Edens, J. F., Epstein. M., & Patrick, C. J. (2010). Using the PCL-R to help estimate the validity of two self-report measures of psychopathy with offenders. *Assessment, 17*, 206-219.

Skeem, J. L., Edens, J. F., Camp, J., & Colwell, L. H (2004). Are there racial differences in levels of psychopathy? A meta-analysis. *Law and Human Behavior, 28*, 505-527.

Skeem, J. L., Edens, J. F., Sanford, G. M., & Colwell, L. (2003) Psychopathic personality and racial/ethnic differences reconsidered: A reply to Lynn (2002). *Personality and Individual Differences, 35*, 1439-1462.

Skeem, J. L., Poythress, N. G., Edens, J. F., Lilienfeld, S O., & Cale, E. (2003). Psychopathic personality or personalities? Exploring potential variants of psychopathy and their implications for risk assessment. *Aggression and Violent Behavior, 8*, 513-546

[6] Buffington-Vollum, J. K., Edens, J F., Johnson, D. W., & Johnson, J (2002). Psychopathy as a predictor of institutional misbehavior among sex offenders: A prospective replication. *Criminal Justice and Behavior, 29*, 497-511.

Douglas, K. S., Vincent, G., & Edens, J. F. (2006). Risk for criminal recidivism: The role of psychopathy. In C. Patrick (Ed.), *Handbook of psychopathy* (pp. 533-554). New York: Guilford.

Edens, J.F., & Cahill, M.A. (2007). Psychopathy in adolescence and criminal recidivism in young adulthood: Longitudinal results from a multiethnic sample of youthful offenders. *Assessment, 14*, 57-64.

Edens, J.F., Campbell, J.S., & Weir, J.M. (2007). Youth psychopathy and criminal recidivism: A meta-analysis of the Psychopathy Checklist measures. *Law and Human Behavior, 31*, 53-75.

Edens, J. F., Poythress, N. G., & Lilienfeld, S. O. (1999). Identifying inmates at risk for disciplinary infractions· A comparison of two measures of psychopathy. *Behavioral Sciences and the Law. 17*, 435-443

Edens, J F., Poythress, N. G., Lilienfeld, S O., & Patrick, C J. (2008). A prospective comparison of two measures of psychopathy in the prediction of institutional misconduct. *Behavioral Sciences and the Law, 26*, 529-541.

Edens, J F., Skeem, J. L., & Douglas, K. S. (2006). Incremental validity analyses of the Violence Risk Appraisal Guide and the Psychopathy Checklist: Screening Version in a civil psychiatric sample. *Assessment. 13*, 368-374.

[7] DeMatteo, D., & Edens, J. F. (2006). The role and relevance of the Psychopathy Checklist-Revised in court: A case law survey of U.S. courts (1991-2004) *Psychology, Public Policy. and Law, 12*, 214-241.

Edens, J. F. (2001). Misuses of the Hare Psychopathy Checklist-Revised in court Two case examples *Journal of Interpersonal Violence, 16.* 1082-1093.

Edens, J. F. (2006) Unresolved controversies concerning psychopathy: Implications for clinical and forensic decision-making. *Professional Psychology. Research and Practice, 37*, 59-65

Edens, J. F., Colwell, L. H., Desforges, D. M., & Fernandez, K. (2005) The impact of mental health evidence on support for capital punishment: Are defendants labeled psychopathic considered more deserving of death? *Behavioral Sciences and the Law, 23*, 603-625.

Edens, J. F., Desforges, D. M., Fernandez, K., & Palac, C. A. (2004). Effects of psychopathy and violence risk testimony on mock juror perceptions of dangerousness in a capital murder trial. *Psychology, Crime, and Law, 10*, 393-412.

127

Edens, J F., Magyar, M. S., & Cox, J. (in press). Taking psychopathy measures "out of the lab" and into the legal system: Some practical concerns. In K. Kiehl & W Sinnott-Armstrong (Eds ), *Handbook of psychopathy and law.* New York: Oxford University Press.

Edens, J. F., & Petrila, J. (2006). Legal and ethical issues in the assessment and treatment of psychopathy. In C Patrick (Ed.), *Handbook of psychopathy* (pp. 573-588). New York: Guilford.

Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society?" *Journal of Psychiatry and Law, 29,* 433-481.

Edens, J. F., Skeem, J. L., Cruise, K. R., & Cauffman, E. (2001). Assessment of 'juvenile psychopathy' and its association with violence: A critical review. *Behavioral Sciences and the Law, 19,* 53-80.

Edens, J F., & Vincent, G. M (in press) Juvenile psychopathy: A clinical construct in need of restraint? *Journal of Forensic Psychology Practice.*

Guy, L. S., & Edens, J F. (2003) Juror decision-making in a mock sexually violent predator trial: Gender differences in the impact of divergent types of expert testimony. *Behavioral Sciences and the Law, 21,* 215-237.

Guy, L. S., & Edens, J. F. (2006). Gender differences in attitudes toward psychopathic sexual offenders. *Behavioral Sciences and the Law, 24,* 65-85.

[8] E g., Douglas, K S., Lilienfeld, S. O., Skeem, J L., Poythress, N. G., Edens, J. F., & Patrick, C. J. (2008). Relation of antisocial and psychopathic traits to suicide-related behavior among offenders. *Law and Human Behavior, 32,* 511-525.

Edens, J. F., & Cox, J. (in press). Examining the prevalence, role and impact of evidence regarding antisocial personality, sociopathy and psychopathy in capital cases: A survey of defense team members. *Behavioral Sciences and the Law.*

Guy, L. S., Poythress, N G., Douglas, K S, Skeem, J L. & Edens, J F. (2008) Correspondence between self-report and interview-based assessments of Antisocial Personality Disorder. *Psychological Assessment, 20,* 47-54.

Marcus, D. K., Lilienfeld, S. O., Edens, J. F, & Poythress, N. G. (2006). Is Antisocial Personality Disorder continuous or categorical? A taxometric analysis. *Psychological Medicine, 36,* 1571-1582.

Poythress, N. G., Edens, J. F., Skeem, J. L., Lilienfeld, S. O., Douglas, K. S., Frick, P. J, Patrick, C. J., Epstein, M., & Wang, T. (2010). Identifying subtypes among offenders with Antisocial Personality Disorder: A cluster-analytic study. *Journal of Abnormal Psychology, 119,* 389-400.

[9] E. g., Cunningham, M. D., & Reidy, T. J. (1998). Antisocial personality disorder and psychopathy: Diagnostic dilemmas in classifying patterns of antisocial behavior in sentencing evaluations. *Behavioral Sciences and the Law. 16,* 333-351.

Cunningham, M. D., & Reidy, T. J. (1999). Don't confuse me with the facts. Common errors in violence risk assessment at capital sentencing. *Criminal Justice & Behavior, 26,* 20-43.

Cunningham, M. D., & Reidy, T. J. (2002) Violence risk assessment at federal capital sentencing: Individualization, generalization, relevance, and scientific standards. *Criminal Justice and Behavior, 29,* 512-537.

Ewing, C. P. (1983). "Dr. Death" and the case for an ethical ban on psychiatric and psychological predictions of dangerousness in capital sentencing proceedings. *American Journal of Law and Medicine, 8,* 408-428.

[10] E.g., Edens, J. F., Buffington-Vollum, J K, Keilen, A., Roskamp, P., & Anthony, C. (2005). Predictions of future dangerousness in capital murder trials: Is it time to "disinvent the wheel?" *Law and Human Behavior, 29,* 55-86.

Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society?" *Journal of Psychiatry and Law. 29,* 433-481.

Marquart, J. W., Ekland-Olson, S., & Sorensen, J. (1994) *The rope, the chair, and the needle: Capital punishment in Texas, 1923-1990.* Austin, TX: University of Texas Press.

Marquart, J. W., & Sorensen, J. (1988). Institutional and postrelease behavior of Furman-commuted inmates in Texas. *Criminology. 26,* 677-693.

Marquart, J. W., & Sorensen, J. (1989). A national study of the Furman-commuted inmates: Assessing the threat to society from capital offenders. *Loyola of Los Angeles Law Review, 23,* 5-28.

[11] Cunningham, M. D., & Sorensen, J. R. (2006) Actuarial models for assessing prison violence risk: Revisions and extensions of the Risk Assessment Scale for Prison (RASP). *Assessment. 13*, 253-265.

Cunningham, M. D., Sorensen, J. R., & Reidy, T. J. (2005). An actuarial model for assessment of prison violence risk among maximum security inmates. *Assessment, 12*, 40-49.

Flanagan, T. J. (1980). Time served and institutional misconduct: patterns of involvement in disciplinary infractions among long-term and short-term inmates *Journal of Criminal Justice, 8*, 357-367.

Gendreau, P., Goggin, C., & Law. M A. (1997). Predicting prison misconducts. *Criminal Justice and Behavior, 24*, 414-432.

Sorensen, J. R., & Pilgrim, R. L. (2000). An actuarial risk assessment of violence posed by capital murder defendants. *Journal of Criminal Law & Criminology, 90*, 1251-1270.

Zamble, E (1992). Behavior and adaptation in long-term prison inmates: Descriptive longitudinal results. *Criminal Justice and Behavior, 19*, 409-425.


[12] Broadnax trial transcript, Vol. 52, p. 241.


[13] Hare, R. D. (2003). *The Hare Psychopathy Checklist-Revised technical manual* (2nd ed.). Toronto: Multi-Health Systems.


[14] Helfgott, J. B. (1997, March). *The popular conception of the psychopath: Implications for criminal justice policy and practice.* Paper presented at the 34th Annual Meeting of the Academy of Criminal Justice Sciences, Louisville, KY.


[15] Edens, J. F., Desforges, D. M., Fernandez, K., & Palac. C. A. (2004). Effects of psychopathy and violence risk testimony on mock juror perceptions of dangerousness in a capital murder trial. *Psychology, Crime, and Law, 10*, 393-412.

Edens, J. F., Davis, K. M., Smith, K , & Guy, L. S (in press). No sympathy for the devil: Attributing psychopathic traits to capital murderers also predicts support for executing them. *Personality Disorders: Theory, Research, and Treatment.*

Edens, J. F., Guy, L. S., & Fernandez, K. (2003). Psychopathic traits predict attitudes toward a juvenile capital murderer. *Behavioral Sciences and the Law, 21*, 807-828.


[16] Edens, J. F., Colwell, L. H., Desforges, D. M., & Fernandez, K. (2005). The impact of mental health evidence on support for capital punishment: Are defendants labeled psychopathic considered more deserving of death? *Behavioral Sciences and the Law, 23*, 603-625.


[17] Broadnax trial transcript, Vol 52, p. 258.


[18] See, e.g., Caldwell, M , Skeem, J., Salekin, R., & Van Ryboek, G. (2006). Treatment response of adolescent offenders with psychopathy features: A two-year follow-up. *Criminal Justice and Behavior. 33*, 571-596.

Caldwell, M. (2011). Treatment-related changes in behavioral outcomes of psychopathy facets in adolescent offenders. *Law and Human Behavior. 35*, 275-287.

D'Silva, K., Duggan, C., & McCarthy, L. (2004). Does treatment really make psychopaths worse? A review of the evidence. *Journal of Personality Disorders, 18*, 163-177

Skeem, J. L., Monahan. J., & Mulvey, E. P. (2002). Psychopathy, treatment involvement, and subsequent violence among civil psychiatric patients. *Law and Human Behavior. 26*, 577-603.

Skeem, J.L., Polaschek, D.L., & Manchak, S. (2009). Appropriate treatment works, but how? Rehabilitating general, psychopathic, and high-risk offenders. In J. Skeem. K. Douglas, & S. Lilienfeld (Eds.), *Psychological Science in the Courtroom: Consensus and Controversy* (358-384). New York, NY: Guilford.


[19] Guy, L. S., Edens, J. F., Anthony, C., & Douglas, K. S. (2005). Does psychopathy predict institutional misconduct among adults? A meta-analytic investigation. *Journal of Consulting and Clinical Psychology, 73*, 1056-1064.


[20] Cunningham, M. D., & Sorensen, J. R (2006). Actuarial models for assessing prison violence risk: Revisions and extensions of the Risk Assessment Scale for Prison (RASP). *Assessment, 13*, 253-265.

Cunningham. M. D., Sorensen, J. R., & Reidy, T. J. (2005) An actuarial model for assessment of prison violence risk among maximum security inmates. *Assessment, 12,* 40-49.

Edens, J. F , Buffington-Vollum, J. K., Keilen, A., Roskamp. P., & Anthony, C. (2005). Predictions of future dangerousness in capital murder trials: Is it time to "disinvent the wheel?" *Law and Human Behavior, 29,* 55-86.

Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society?" *Journal of Psychiatry and Law, 29,* 433-481.

Marquart, J. W., Ekland-Olson, S., & Sorensen, J. (1989). Gazing into the crystal ball: Can jurors accurately predict future dangerousness in capital cases? *Law and Society Review, 23,* 449-468.

Marquart, J. W., Ekland-Olson, S , & Sorensen, J (1994). *The rope, the chair, and the needle: Capital punishment in Texas, 1923-1990.* Austin, TX: University of Texas Press.

Marquart, J. W , & Sorensen, J (1988) Institutional and postrelease behavior of Furman-commuted inmates in Texas. *Criminology, 26,* 677-693.

Marquart, J. W., & Sorensen. J. (1989). A national study of the Furman-commuted inmates: Assessing the threat to society from capital offenders *Loyola of Los Angeles Law Review, 23,* 5-28.

Sorensen, J R., & Pilgrim, R. L. (2000). An actuarial risk assessment of violence posed by capital murder defendants. *Journal of Criminal Law & Criminology, 90,* 1251-1270.

Sorensen, J. R., & Wrinkle, R.D. (1996) No hope for parole: Disciplinary infractions among death-sentenced and life-without-parole inmates *Criminal Justice and Behavior, 23,* 542-552.

Zamble, E. (1992) Behavior and adaptation in long-term prison inmates Descriptive longitudinal results *Criminal Justice and Behavior, 19,* 409-425.

[21] Edens, J. F. (2006). Unresolved controversies concerning psychopathy: Implications for clinical and forensic decision-making. *Professional Psychology: Research and Practice, 37,* 59-65.

Edens, J. F., & Petrila, J. (2006). Legal and ethical issues in the assessment and treatment of psychopathy. In C. Patrick (Ed.), *Handbook of psychopathy* (pp. 573-588) New York: Guilford.

Edens. J. F., & Vincent, G. M. (2008). Juvenile psychopathy: A clinical construct in need of restraint? *Journal of Forensic Psychology Practice, 8,* 186-197.

People v. Parker, Cal. App. Unpub LEXIS 2243 (2006).

R. v. K.S., O.J. No. 3826, LEXIS 4498 (2004),

[22] Boccaccini, M.T., Turner, D.T. & Murrie, D.C. (2008). Do some evaluators report consistently higher or lower scores on the PCL-R?: Findings from a statewide sample of sexually violent predator evaluations. *Psychology, Public Policy, and Law, 14,* 262–283.

Edens, J.F., Boccaccini, M.T., & Johnson, D.W. (2010). Inter-rater reliability of the PCL-R total and factor scores among psychopathic sex offenders: Are personality features more prone to disagreement than behavioral features? *Behavioral Sciences and the Law, 28,* 106-119.

Lloyd, C.D., Clark, H.J., & Forth, A.E. (2010). Psychopathy, expert testimony and indeterminate sentences: Exploring the relationship between Psychopathy Checklist-Revised testimony and trial outcome in Canada. *Legal and Criminological Psychology, 15,* 323-339

Miller, C., Otto, R.K., & Kimonis, E. (March, 2010). *Reliability of PCL-R scoring in sexually violent predator proceedings* Paper presented at the annual meeting of the American Psychology-Law Society, Vancouver, BC, Canada.

Murrie, D.C., Boccaccini, M., Johnson, J. & Janke, C. (2008). Does interrater (dis)agreement on Psychopathy Checklist scores in sexually violent predator trials suggest partisan allegiance in forensic evaluations? *Law and Human Behavior, 32,* 352–362.

Murrie, D C , Boccaccini, M., Turner, D., Meeks, M., Woods, C., & Tussey. C. (2009). Rater (dis)agreement on risk assessment measures in sexually violent predator proceedings: Evidence of adversarial allegiance in forensic evaluation? *Psychology, Public Policy, and Law, 15,* 19-53.

Cause No. W08-24667-Y

2012 APR 12 PH 3: 01

EX PARTE§IN CRIMINAL DISTRICT
§
§COURT NUMBER 7 OF
JAMES GARFIELD BROADNAX,§
Applicant§DALLAS COUNTY, TEXAS

### STATE'S MOTION TO EXTEND
### THE TIME FOR FILING ITS ORIGINAL ANSWER
### TO APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

Respondent in this matter, the State of Texas, through the Criminal District Attorney of Dallas County, respectfully requests that the time for filing its Original Answer in this cause be extended. In support of this motion, the State would show the Court the following:

I.

Applicant was convicted of the capital murder of Stephen Swan, and the jury answered the special issues in a manner requiring the imposition of the death penalty. On August 20, 2009, this Court assessed punishment at death.

II.

Applicant filed an original application for writ of habeas corpus on December 20, 2011. *See* Tex. Code Crim. Proc. Ann. art. 11.071 (West Supp. 2011). The State's answer was due April 18, 2012. The State requests an additional 60 days, until June 17, 2012, to file its answer. *See* Tex. Code Crim. Proc. Ann. art. 11.071, § 7(a) (allowing the State to

**COPY**

132

request an extension of 60 days to file its answer).  The State has requested no previous extension of time.

### III.

The particular circumstances justifying this motion are as follows:  The undersigned attorney prepared for and second-chaired a State writ hearing in *Ex parte Mark Allen Robertson*, W89-85961-L, which lasted four days; filed three State's briefs in direct appeals; filed one State's response and one supplemental State's response in post-conviction DNA cases under Chapter 64 of the Texas Code of Criminal Procedure; had an in-chambers meeting with the trial court in a Chapter 64 proceeding; and filed 17 State's responses and one supplemental State's response to non-capital writs of habeas corpus. The undersigned attorney has been working diligently on its writ response in this case, but will require 60 more days to better vet applicant's arguments.

### IV.

For these reasons, the State respectfully requests that the deadline for filing its original answer be extended to June 17, 2012.

Respectfully submitted,

AMY SUE MELO MURPHY
Bar No. 240041545
Assistant Criminal District Attorney
Dallas County District Attorney
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3639

2

133

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing motion has been served on Lydia Brandt,

Attorney for Applicant, The Brandt Law Firm, P.O. Box 850843, Richardson, Texas, 75085-

0843, by depositing same in the United States mail on April 13, 2012.

AMY SUE MELO MURPHY

3

## ORDER

Having considered the foregoing Motion, the Court hereby (GRANTS) (~~DENIES~~) the State's requested extension of time to file its Original Answer until June 17, 2012.

SIGNED this ___13___ day of April 2012.

JUDGE MICHAEL SNIPES
Criminal District Court Number 7
Dallas County, Texas

4

135

CAUSE NO. W08-24667-Y(A)

IN

CRIMINAL DISTRICT COURT NO. 7

OF DALLAS COUNTY, TEXAS

Trial Court Cause No. F08-24667-Y

---

## EX PARTE JAMES GARFIELD BROADNAX

---

STATE'S ORIGINAL ANSWER
TO APPLICATION FOR WRIT OF HABEAS CORPUS
IN DEATH PENALTY CASE

---

Counsel of Record:

Craig Watkins
District Attorney
Dallas County, Texas

Amy Sue Melo Murphy
Assistant District Attorney
State Bar No. 24041545
133 N. Riverfront Blvd., LB-19
Dallas, Texas  75207-4399
(214) 653-3639
(214) 653-3643 *fax*
amy.murphy@dallascounty.org

136

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. 2

PROCEDURAL HISTORY ........................................................................ 4

FACTUAL SUMMARY ............................................................................. 5

    Evidence At Guilt/Innocence Phase ................................................... 5
    The State's Punishment Evidence ...................................................... 8
    Applicant's Punishment Evidence ..................................................... 9

SUMMARY OF ARGUMENT ................................................................. 10

RESPONSE ............................................................................................... 12

    Response to Grounds One and Two:  Applicant's Lack of Counsel During His Interviews with the Media Did Not Violate His Due Process Rights; There Was No State Action. ............................................................................... 12

        *Applicant's Claims are Procedurally Barred.* ........................... 13

        *The Media Interviews Were Not "Critical Stages."* .................. 14

        *Applicant Has Not Established that His Equal Protection Rights Were Violated.* ................................................................. 18

        *Applicant's Contention That the Interviews Were Material and Unfairly Prejudicial Is of No Moment.* ............................... 19

        *There is No Constitutional Requirement that an Inmate Must Knowingly or Voluntarily Consent to Media Interviews.* ........... 21

        *Conclusion.* .............................................................................. 22

    Response to Ground Three:  Applicant Has Failed to Prove By A Preponderance of the Evidence that His Trial Counsel Was Ineffective for Failing to Investigate and Raise the Sixth Amendment Claim. ............................................................. 22

        *Applicant Has Not Shown That a Motion to Suppress the Media Interviews Due to a Violation of Applicant's Sixth Amendment Rights Would Have Been Granted.* ...................... 24

        *There is a Need for Further Evidence.* ..................................... 24

Response to Ground Four: Applicant Has Not Established That the Complained-Of Testimony Was False or Misleading. ........................................................... 25

    *Applicant's Claim is Procedurally Barred.* .............................................. *25*

    *Applicant's Allegation is Not Cognizable in Writ of Habeas Corpus.* ....................................................................................................... *26*

    *Detective Nelson's Testimony Was Neither False Nor Misleading.* ........................................................................................... *26*

Response to Ground Five: Applicant's First Amendment Rights Were Not Violated. .................................................................................................................. 29

    *Applicant's Claim is Procedurally Barred.* .............................................. *29*

    *Applicant's Writings Were Not Protected By the First Amendment.* ............................................................................................... *30*

Response to Ground Six: Trial Counsel was Not Ineffective For Failing to Refute the State's Evidence that Applicant Was a Member of a Criminal Street Gang. ....................................................................................................................... 31

    *Trial Counsel Was Not Ineffective For His Investigation Regarding Gang Membership.* ............................................................... *32*

    *Counsel Was Not Ineffective For Failing to Object to Detective Nelson's Testimony or in His Cross-Examination of Detective Nelson.* ................................................................................... *33*

    *Counsel Was Not Ineffective For Failing to Call a Gang Expert.* ....................................................................................................... *34*

Response to Ground Seven: Dr. Price's Testimony Regarding Anti-Social Personality Disorder and the Hare Psychopathy Checklist Was Neither False Nor Misleading. ................................................................................................. 35

    *Applicant's Allegation is Not Cognizable in Writ of Habeas Corpus.* ....................................................................................................... *35*

    *Dr. Price's Testimony Was Neither False Nor Misleading.* ...................... *35*

Response to Ground Eight: Trial Counsel Was Not Ineffective In His Treatment of Testimony Regarding Anti-Social Personality Disorder and Psychopathy... 38

CERTIFICATE OF SERVICE ................................................................................ 40

3

TO THE HONORABLE COURT:

Respondent, the State of Texas, files this original answer to James Garfield Broadnax's application for writ of habeas corpus filed pursuant to article 11.071 of the Texas Code of Criminal Procedure.

## **PROCEDURAL HISTORY**

A Dallas County jury found applicant guilty of capital murder. (CR: 698; RR47: 203). In accordance with the jury's answers to the special issues, the trial court sentenced applicant to death on August 20, 2009. (CR: 650-51, 698; RR54: 4-7). Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b), (e)(1), (g) (West Supp. 2011). On December 14, 2011, the Court of Criminal Appeals affirmed applicant's conviction. *See Broadnax v. State*, No. AP-76,207, 2011 Tex. Crim. App. Unpub. LEXIS 920 (Tex. Crim. App. Dec. 14, 2011) (not designated for publication).

Applicant filed his application for writ of habeas corpus on December 20, 2011. The State's response was due on April 18, 2012. On April 12, 2012, the State moved for an extension of time. This Court granted the State's motion. The State's response is now due on June 17, 2012.

4

139

## FACTUAL SUMMARY

### EVIDENCE AT GUILT/INNOCENCE PHASE

In the early morning hours of June 19, 2008, the bodies of Stephen Swan[1] and Matthew Butler were found outside their recording studio in Garland, Texas. (RR45: 67-72, 81, 86-88, 107). Both men had multiple gunshot wounds and were deceased by the time emergency personnel arrived. (RR45: 56; RR46: 21-22; RR48: 39-45).

The same day, applicant and his cousin, Demarius Cummings, arrived at applicant's aunt's house. (RR45: 199-200, 205, 210-11). While there, Applicant told Evelyn Barg that he and Cummings had "hit a lick." (RR45: 211-12). Barg took this to mean that the men had stolen the Crown Victoria that they had arrived at the house in. (RR45: 205, 214-15). During the men's short stay at the house, Barg saw Stephen Swan's identification card and several of his credit cards. (RR45: 217-18, 228). After the men left, Barg saw a news report on the murders of Stephen and Matthew and realized that applicant and Cummings must have been involved. (RR45: 220-21). Barg called the police only fifteen minutes after the men had left. (RR45: 228).

That evening, applicant and Cummings were arrested in Texarkana, Texas, after police ran the vehicle identification number of the car in which they were driving – Stephen's Crown Victoria – and found that it was wanted in connection with a double

---

[1] Applicant was charged with and found guilty of the murder of Stephen Swan in the course of committing or attempting to commit robbery. (CR: 2).

5

140

homicide. (RR45: 105, 232-34, 250-52).

Following his arrest, applicant gave interviews to several media outlets. (RR45: 117, 270-71; RR46: 216, 219; SX18; SX403-SX407). In his multiple interviews, Applicant admitted that he and Cummings took the train from Dallas to downtown Garland with the sole intention of robbing someone. After they had walked around for a time, applicant began to get desperate because the trains had stopped running and it was a "long walk back to Dallas." The men then saw Stephen and Matthew coming out of the music studio. Applicant asked Matthew[2] if he had a cigarette. When Matthew reached for one, applicant shot him and then turned and shot Matthew. When each man attempted to stand up, applicant shot him in the head; applicant shot Matthew twice in the head. Applicant and Cummings then "ran through their pockets" and stole Stephen's car. (SX18; SX403-SX407).

The defensive theory at trial was that applicant was suffering from the effects of PCP at the time of the offense and at the time he gave the interviews to the media. (RR47: 187-91). In support of his theory, applicant called a witness who testified that at the time of the media interviews, applicant was in the Closed Behavioral Observation Unit of the Dallas County Jail. (RR47: 161-62).

In further support of his theory, applicant called a psychological assessor and a

---

[2] In his interviews, applicant refers to the men as "the driver" and "the passenger." (SX18; SX403-407). The evidence at trial showed that Stephen was the owner of the car and suffered two gunshot wounds; the State, therefore, assumes that Stephen was the man applicant referred to as "the driver" and Matthew was the man applicant referred to as "the passenger." (RR45: 105; RR46: 21-22, 25).

6

psychiatrist that worked at the Dallas County Jail. (RR47: 18, 69, 71). The psychological assessor testified that applicant told him that he had smoked marijuana laced with PCP, also known as "wet," two to three days prior to being booked into the jail. (RR47: 34). Applicant also told the assessor that he had auditory hallucinations and that he was paranoid because he thought he had been set up. (RR47: 31-32). The assessor placed him on suicidal precautions and referred him for a psychiatric follow up. (RR47: 36-37, 42).

The jail psychiatrist, Dr. Haideh Mirmesdagh, testified that applicant also told her that he was paranoid, had auditory hallucinations, and had last used drugs a few days prior. (RR47: 69, 71, 79-80). Dr. Mirmesdagh questioned if applicant was still suffering the effects of the drugs at the time. (RR47: 87-88). On cross examination, Dr. Mirmesdagh testified that applicant was put in the Closed Behavioral Observation Unit solely because he had been arrested for a multiple homicide. (RR47: 104). She also testified that in filling out her form, she relied on the information provided by applicant, that applicant's statements regarding his auditory hallucinations were not consistent with others who have auditory hallucinations, and that she did not note any objective signs of his auditory hallucinations. (RR47: 92-96).

7

142

THE STATE'S PUNISHMENT EVIDENCE

In addition to evidence of a prior misdemeanor and testimony from Matthew's mother, Stephen's brother, an assistant warden with the Texas Department of Criminal Justice, and the medical examiner, the State also presented evidence that during a search of applicant's cell, jail authorities found an individual razorblade and other contraband. (RR49: 43-47, 55-56).

The State also played several phone calls made by applicant while he was in jail. In the calls, applicant bragged about fighting with jail staff and other inmates, demonstrated a complete lack of remorse for the murders, threatened further violence against those in the jail, and admitted that he was not intoxicated at the time of the media interviews. (RR48: 96-98; RR52: 195-99, 203-07; SX544; SX545; SX552; SX592).

In addition, the State presented evidence that while in jail, applicant was involved in two separate fights with inmates, one while coming back from court and the other during recreation time. Applicant was also involved in a fight with a member of the jail's Special Response Team who was conducting a routine search of applicant's cell. (RR48: 131, 138-51, 179-80, 207-09, 230-32).

Finally, the State offered expert testimony from a member of the Dallas Police Department's Gang Unit. (RR49: 77-81). The expert, Barrett Nelson, testified that he reviewed the media tapes, applicant's phone calls, and items found in applicant's cell. (RR49: 83). Nelson concluded that applicant, through his own admissions, was a member of the Gangster Disciples, a criminal street gang whose members often commit

8

143

double homicides and aggravated robberies. (RR49: 83-125).

APPLICANT'S PUNISHMENT EVIDENCE

At the punishment phase, applicant presented expert testimony on general brain development and the effects of PCP use on the human brain. According to Dr. Cheryl Silver, applicant's brain would not have been fully developed at the time of the offenses because he was only nineteen years old. (RR50: 45).

Dr. Frank Lane, a jail physician who treated applicant, testified that applicant told him that he was having hallucinations, was paranoid, and did not remember talking to the media. (RR50: 77-82, 86). Applicant also told him that he had used PCP at the time of the offense. Based on what Dr. Lane saw, he concluded that applicant was most likely suffering from mood and perceptual disturbances due to use of PCP. (RR50: 88-89). According to Dr. Lane, PCP can be stored in the fat cells of the brain and its effects can reoccur for some time after use of the drug. (RR50: 89-90). After a follow-up interview several months later, however, Dr. Lane opined that applicant was no longer suffering from the effects of PCP, but was, rather, suffering from post-traumatic stress disorder and an antisocial personality disorder. (RR50: 97-99). In addition, applicant called an addiction expert to testify at the punishment phase. The expert, based on his review of the arrest video, the media interviews, and applicant's medical records from the jail, opined that applicant was still under the effects of PCP at the time he gave the interviews to the media. (RR50: 171-72, 175-76, 200-01).

Applicant also called Tre'Vaun Miller, an inmate that applicant had fought with

9

144

during their recreation time. (RR50: 280-81). According to Miller, he and applicant had been in a verbal disagreement for several days because Miller had complained about being in jail, and applicant told him to "Chill and give it up to God." (RR50: 284-85, 287). Miller was so upset by applicant's advice that when the officer in charge of recreation time was not looking, he assaulted applicant, who only hit him back in self-defense. (RR50: 286).

The majority of applicant's evidence at punishment focused on his childhood. Applicant presented several family members and family friends who testified that applicant had moved around throughout his childhood, that his mother was involved in multiple physically abusive relationships, that his mother was physically abusive to him and one of his sisters, and that he was often sent to live with an aunt who treated him poorly because he was a mixed race. (RR50: 232, 250, 255-57, 288-98, 300-02, 304-05; RR51: 33-35, 38-40, 42-43, 45-47, 54-55, 57-61, 74-76, 100, 229, 236-37, 260-61, 265-68; RR52: 39, 42-43, 46-47, 103-04, 160, 162, 168-70).

## SUMMARY OF ARGUMENT

Response to Grounds One and Two: Applicant has not previously claimed that he had a Sixth Amendment right to counsel during his interviews with the media, that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional because they fail to allow for the appointment of counsel during media interviews, or that his Equal Protections rights were

10

145

violated; these allegations are, therefore, procedurally barred. In any event, applicant had no right to counsel during the media interviews because they were not "critical stages." Moreover, applicant has failed to show that his right to Equal Protection under the law was denied. Finally, there is no constitutional requirement that consent to interviews with private media outlets be made "knowingly or voluntarily."

Response to Ground Three: Applicant has not met his burden of proving that his trial counsel was ineffective for failing to raise the precise claims he now raises in his first and second grounds for relief. There is no merit to the claims, and trial counsel should not be held ineffective for failing to make frivolous objections.

Response to Ground Four: Applicant's allegation that Detective Nelson's testimony regarding applicant's membership in a criminal street gang was false and misleading is procedurally barred because he has not previously raised this claim. Moreover, because applicant's allegations actually appear to be that Detective Nelson's testimony did not meet statutory requirements, his argument is not cognizable in writ of habeas corpus. In any event, applicant has failed to show that the detective's testimony was false and misleading.

Response to Ground Five: Applicant's argument is procedurally barred because he has not previously alleged that his writings were protected by the First Amendment to the United States Constitution. In any event, applicant's writings were not protected by the First Amendment and were, thus, properly used to prove applicant's membership in a

11

146

criminal street gang.

Response to Ground Six: Applicant has not met his burden of showing that trial counsel was ineffective for failing to refute the State's evidence that applicant was a member of a criminal street gang. Further, counsel should not be held ineffective for failing to object to Detective Nelson's testimony on First Amendment grounds or on the grounds that it did not meet the statutory requirements because such objections would have been frivolous.

Response to Ground Seven: Applicant's allegation that Dr. Price's testimony was false and misleading is not cognizable because it is actually an attack on the admissibility of Dr. Price's testimony. In any event, applicant has failed to establish that Dr. Price's testimony was false and misleading.

Response to Ground Eight: Applicant has not met his burden of proving that trial counsel was ineffective in his handling of testimony of anti-social personality disorder and psychopathy.

## RESPONSE

### RESPONSE TO GROUNDS ONE AND TWO: APPLICANT'S LACK OF COUNSEL DURING HIS INTERVIEWS WITH THE MEDIA DID NOT VIOLATE HIS DUE PROCESS RIGHTS; THERE WAS NO STATE ACTION.

In his first and second grounds for relief, applicant alleges that he was entitled to the appointment of counsel to represent him during his various interviews with the media. According to applicant, because he was not provided with counsel during the interviews,

12

147

his procedural and substantive due process rights were violated. Applicant further alleges that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional because they fail to allow for the appointment of counsel during media interviews. Applicant further alleges that his Equal Protection rights were violated. Applicant's allegations are procedurally barred. In any event, all of the allegations are wholly without merit.

## Applicant's Claims are Procedurally Barred.

Matters not raised at trial cannot form the basis for habeas relief. *See Ex parte Dutchover*, 779 S.W.2d 76, 77 (Tex. Crim. App. 1989); *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989); *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974) ("The same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."). Additionally, habeas corpus is not to be used as a substitute for appeal. *Ex parte Clore*, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985) (en banc). If a claim could have been raised on appeal, but was not, the applicant is procedurally barred from raising the issue for the first time through habeas. *See Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007); *see, e.g., Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998) (holding that because claims concerning the jury charge at punishment should have been raised on direct appeal, the claims will not be addressed on habeas). Finally, habeas corpus is not to be used to relitigate matters that were addressed on appeal. *See Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994); *see, e.g., Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex.

13

148

Crim. App. 1984) (holding that matters addressed on direct appeal need not be addressed on habeas.)

Applicant has not previously asserted that he had a Sixth Amendment right to counsel during the media interviews, that his due process rights were violated by the lack of counsel during the interviews, that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional, or that his right to Equal Protection was violated. Instead, at trial and on appeal, applicant alleged a violation of his Fifth Amendment rights and argued that he was incapacitated and could not have consented to the interviews. (RR43: 101-09); *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *28-30. The trial court's ruling on the admissibility of the media interviews was solely on Fifth Amendment grounds, and applicant did not seek to get a further ruling. (RR43: 111-13). Consequently, all of applicant's allegations in his first and second grounds for relief are procedurally barred.

**The Media Interviews Were Not "Critical Stages."**

The Sixth Amendment right of the accused to assistance of counsel in all criminal prosecutions is limited by its terms: "it does not attach until a prosecution is commenced." *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008). The United States Supreme Court has, for the purposes of right to counsel, pegged commencement to the "initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* Once attachment occurs, the accused at least is entitled to the presence of appointed counsel

14

during any "critical stage" of the postattachment proceedings. *Id.* at 212. Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself. *Id.* Generally, an article 15.17 initial appearance and magistration marks the initiation of adversarial judicial proceedings in Texas and "plainly signals" the attachment of a defendant's Sixth Amendment right to counsel. *Pecina v. State*, 361 S.W.3d 68, 77 (Tex. Crim. App. 2012) (citing *Rothgery*, 554 U.S. at 212).

In support of his argument, applicant points to several facts and circumstances surrounding the timing of the appointment of his lead counsel, Brad Lollar. According to applicant, all of the facts and circumstances that he points to indicate that Lollar was not appointed within an adequate amount of time. (Broadnax's Writ App., pp. 7-20). Consequently, applicant's argument appears to be that counsel was not appointed within a reasonable time after attachment to allow for adequate representation at the media interviews, which he asserts was a "critical stage." This argument appears to be linked to applicant's challenge to the constitutionality of the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases because they do not anticipate the fact that the media may want to speak with an inmate prior to the appointment of counsel. Applicant's arguments are wholly without merit and some of the arguments have previously been raised and rejected.

The State does not dispute that attachment occurred when applicant went before

15

150

the magistrate on June 21, 2008. At that point, he was entitled to the appointment of counsel within a reasonable time to allow for adequate representation during any "critical stage." The fact that counsel may not have been appointed until after the media interviews in this case is of no moment; the media interviews were not critical stages.

A critical stage is a proceeding between an individual and an agent of the State that amounts to a "trial-like confrontation," at which counsel would help the accused in coping with legal problems or meeting with his adversary. *United States v. Ash*, 413 U.S. 300, 312-13 (1973); *see also Rothgery*, 554 U.S. at 212 n.15. Accordingly, in order for a stage to be "critical" for purposes of the Sixth Amendment, there necessarily must be interaction with a State agent. The trial court and the Court of Criminal Appeals have already decided that, for the purposes of the Fifth Amendment, the reporters were not agents of the State. (RR43: 111-13); *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *28-30. Consequently, the issue of whether the reporters were State agents has already been decided, and applicant has not pointed to any case law indicating that determining State agency for the purposes of the Sixth Amendment differs from determining State agency for Fifth Amendment purposes. Applicant's grounds, insofar as they necessarily allege a State agency, have already been raised and rejected, and are thus procedurally barred. *See Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998) (holding that claims raised and considered on direct appeal cannot be relitigated through habeas corpus).

16

151

In any event, applicant has not cited to any authority that indicates that interviews conducted by private media outlets are "critical stages" deserving of Sixth Amendment or any other constitutional protections. Instead, applicant repeatedly cites to the concurring opinion in *Rothgery*, which suggests that any time there is a showing of a need for counsel, the proceeding is a "critical stage." (Broadnax Writ App., pp. 20-21). Applicant relies on this concurrence to assert that because the reporters had more education and social advantages than he, he was entitled to counsel to protect him against the reporters. (Broadnax Writ App., pp. 28-30).

Applicant also argues that the United States Supreme Court's decision in *White v. Maryland*, 373 U.S. 59 (1963) is directly applicable to his case. (Broadnax Writ App., pp. 30-31). *White* is, however, completely distinguishable from the instant case. In *White*, the Supreme Court held that a preliminary hearing where White entered a plea was a "critical stage" requiring counsel. *White*, 373 U.S. at 59-60. The hearing in *White* clearly involved State action. The media interviews in this case did not involve any State action.

The fact that the reporters were not State agents during the interviews has previously been decided. Moreover, applicant has not cited to any authority indicating that the media interviews were subject to constitutional protections. Finally, because applicant was not entitled to counsel at the media interviews, the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty

17

Cases cannot be unconstitutional for failing to provide for the appointment of counsel within an adequate time to allow representation during media interviews. Applicant's first and second grounds for relief should, therefore, be denied.

**<u>Applicant Has Not Established that His Equal Protection Rights Were Violated.</u>**

Applicant also alleges that his right to Equal Protection was violated because his co-defendant, Demarius Cummings, was appointed counsel one day prior to him, despite the fact that they both requested the appointment of counsel at the same time. (Broadnax Writ. App., pp. 31-32). According to applicant, he was harmed by this violation because he gave interviews to the media on the intervening day. *Id.*

Here, both Cummings and applicant were appointed counsel within the statutorily-required time frame. *See* Tex. Code Crim. Proc. art. 1.051(i) (West Supp. 2011). Applicant has not shown that there is any constitutional right to have counsel appointed at the exact same time as all other inmates who request the appointment of counsel on a particular day. Moreover, to the extent that applicant appears to imply that the trial court somehow violated the statutory requirements by appointing counsel at different times, such an argument is not cognizable on appeal. Habeas corpus is available only to review jurisdictional defects or denials of fundamental or constitutional rights. *See Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989). Claims alleging a violation of a statute are not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002). This portion of applicant's second ground for relief should be denied.

18

153

## Applicant's Contention That the Interviews Were Material and Unfairly Prejudicial Is of No Moment.

Applicant also alleges that "[t]he media interviews were material and unfairly prejudicial, rendering defense counsel ineffective throughout the entirety of trial." (Broadnax Writ App., pp. 32-33). In the body of his argument, applicant asserts that (1) counsel would have stopped the media interviews had he been appointed sooner; (2) Dallas County judges, prosecutors, and defense bar are aware that the media seeks to have access to persons accused of capital crimes, including applicant; (3) the presiding judge in this case, Judge Michael Snipes, is aware of the material and unfair prejudice done by uncounseled media interviews; (4) the media interviews were the focal point at both phases of the trial; (5) the Court of Criminal Appeals referred to the media interviews in upholding the sufficiency of the evidence to support the jury's determination that applicant was a future danger; and (6) the media interviews heavily influenced the jury's verdict.[3] (Broadnax Writ App., pp. 33-41). It is not clear why applicant raises such assertions. These assertions do not have any bearing on whether the trial court violated his Sixth Amendment rights, whether the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional, or whether applicant's right to Equal Protection was violated. Consequently, all of these allegations should be denied.

---

[3] The State objects to the admission of Broadnax's Writ Exhibit 23, the affidavit of Jennifer Reif, as inadmissible. *See* Tex. R. Evid. 606(b). The statements made by the jurors as relayed in Ms. Reif's affidavit concern juror deliberations and do not meet either of the exceptions set forth in the Rule.

19

To the extent that applicant's allegations appear to be a harm analysis, the denial of the Sixth Amendment right to counsel during a critical stage is structural error and is not subject to a harm analysis. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006). Moreover, even if a harm analysis applied to such a violation, the analysis is not whether the violation was material and unfairly prejudicial, but whether the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the conviction or the punishment assessed. Tex. R. App. P. 44.2(a). Nevertheless, because applicant did not have a Sixth Amendment right to counsel during the media interviews, whether error is structural or subject to a harmless-error review is of no moment.

To the extent that applicant's allegations can be viewed as an attack on the admissibility of the media interviews, such an argument is not cognizable in a writ of habeas corpus because claims alleging a violation of a statute, rule, or non-constitutional doctrine are not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d at 109. Consequently, applicant's allegations are procedurally barred.

In any event, applicant's allegations regarding the admissibility of the media interviews are of no moment. Applicant did not have a Sixth Amendment right to counsel during the media interviews. Consequently, the media interviews were admissible.

Finally, to the extent that applicant's allegations may be deemed an allegation of

20

155

ineffective assistance of counsel, applicant raises this same issue in his third ground for relief, below.

Because applicant's confusing allegations have no place in Sixth Amendment or Equal Protection jurisprudence and are otherwise not cognizable and of no moment, these allegations should be denied.

## There is No Constitutional Requirement that an Inmate Must Knowingly or Voluntarily Consent to Media Interviews.

Applicant further alleges that he did not knowingly or voluntarily consent to the media interviews. According to applicant, "there was an unequal power balance between educated reporters, and [applicant], an uneducated, impoverished 19 year[-old], suffering from a drug induced psychosis, who was left to fend for himself against the onslaught of media." (Broadnax Writ App., pp. 41).

Habeas corpus is available only to review jurisdictional defects or denials of fundamental or constitutional rights. *See Ex parte Banks*, 769 S.W.2d at 540. Here, applicant does not cite to any fundamental or constitutional right that was allegedly violated. Thus, his arguments regarding lack of consent to the interviews are not cognizable. Moreover, there is no constitutional right that requires that consent to interviews with private media outlets be made "knowingly and voluntarily." Finally, to the extent that applicant appears to be alleging that the Fifth Amendment guaranteed such a right, the Court of Criminal Appeals has already held that applicant had no Fifth Amendment rights during his media interviews because the reporters were not acting as

21

156

State agents. *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *28-30. Consequently, applicant's allegations have already been raised and rejected, and are thus procedurally barred. *See Ex parte Ramos*, 977 S.W.2d at 617. Because applicant's claims are not cognizable and have previously been raised and rejected, they should be denied.

**Conclusion.**

Applicant's claims in his first and second grounds for relief are procedurally barred and several are not cognizable in writ of habeas corpus. Moreover, the media interviews were not "critical stages" for purposes of the Sixth Amendment. Consequently, applicant's Sixth Amendment, Due Process, and Equal Protection rights were not violated, and the Texas Fair Defense Act and the Dallas County Procedures for Appointment of Counsel in Death Penalty Cases are not unconstitutional. Applicant's first and second grounds for relief should, therefore, be denied.

> **RESPONSE TO GROUND THREE: APPLICANT HAS FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HIS TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND RAISE THE SIXTH AMENDMENT CLAIM.**

In his third ground for relief, applicant alleges that trial counsel was ineffective for failing to investigate and raise the precise Sixth Amendment claims he raises in his first and second grounds for relief. Applicant further alleges that he was prejudiced by trial counsel's failure to challenge the admissibility of the media interviews on Sixth Amendment grounds because the interviews were a vital part of both phases of the trial.

22

Applicant's allegations are wholly without merit.

The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (explaining the standard under *Strickland*).

Effective assistance of counsel does not mean errorless counsel. *See Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See Ex parte McFarland*, 163 S.W.3d 743, 753 (Tex. Crim. App. 2005); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This highly deferential review is applied to avoid "the distorting effect of hindsight." *Ex parte McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

23



## Applicant Has Not Shown That a Motion to Suppress the Media Interviews Due to a Violation of Applicant's Sixth Amendment Rights Would Have Been Granted.

Applicant's argument is essentially that counsel was ineffective for failing to raise at trial the precise Sixth Amendment arguments applicant now raises on habeas review. As discussed at length above, however, applicant was not entitled to representation of counsel during the media interviews because they were not "critical stages" for purposes of the Sixth Amendment. Consequently, trial counsel should not be held ineffective for failing to investigate and ultimately argue a claim that would have been rejected by the trial court. *See generally Edmond v. State*, 116 S.W.3d 110, 115 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding that trial counsel "is not ineffective for failing to make a frivolous objection"). Applicant's third ground for relief should, therefore, be denied.

## There is a Need for Further Evidence.

Although the above demonstrates that applicant was provided with effective assistance of counsel, the State recognizes that further evidence is needed regarding counsel's representation of applicant. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

24

**RESPONSE TO GROUND FOUR: APPLICANT HAS NOT ESTABLISHED THAT THE COMPLAINED-OF TESTIMONY WAS FALSE OR MISLEADING.**

In his fourth ground for relief, applicant alleges that Detective Barrett Keith Nelson gave false and misleading testimony regarding applicant's gang membership. According to applicant, Detective Nelson's testimony was false and misleading because he did not follow the statutory criteria of articles 61.01 and 61.01 of the Texas Code of Criminal Procedure in determining that applicant was a member of the criminal street gang the Gangster Disciples. (Broadnax Writ App., pp. 55-65).

**Applicant's Claim is Procedurally Barred.**

Matters not raised at trial cannot form the basis for habeas relief. *See Ex parte Dutchover*, 779 S.W.2d at 77; *Ex parte Crispen*, 777 S.W.2d at 105; *Ex parte Bagley*, 509 S.W.2d at 333. Additionally, habeas corpus is not to be used as a substitute for appeal. *Ex parte Clore*, 690 S.W.2d at 900. If a claim could have been raised on appeal, but was not, the applicant is procedurally barred from raising the issue for the first time through habeas. *See Ex parte Cruzata*, 220 S.W.3d at 520; *see, e.g., Ex parte Ramos*, 977 S.W.2d at 617. Finally, habeas corpus is not to be used to relitigate matters that were addressed on appeal. *See Ex parte Drake*, 883 S.W.2d at 215; *see, e.g., Ex parte Acosta*, 672 S.W.2d at 472.

At a pre-trial hearing, applicant objected to Detective Nelson's testimony as inadmissible under Rules 401 and 403 of the Texas Rules of Evidence, as well as under the First and Fourteenth Amendments to the United States Constitution. *Broadnax*, 2011

25

Tex. Crim. App. Unpub. LEXIS 920, at *44 n.90. On appeal, applicant argued that the trial court erred in admitting Detective Nelson's testimony because he was not a qualified expert and because his testimony was not relevant and was unfairly prejudicial. *See id.* at *44-49. Because applicant has never claimed that Detective Nelson's testimony was false or misleading, his fourth ground for relief is procedurally barred.

**Applicant's Allegation is Not Cognizable in Writ of Habeas Corpus.**

Applicant's allegation that Detective Nelson's testimony was false and misleading is based in large part on his claim that the testimony did not meet the statutory requirements set forth in Chapter 61 of the Texas Code of Criminal Procedure. (Broadnax Writ App., pp. 55-62). Applicant's reliance on Chapter 61 is not clear. Chapter 61 does not govern the admission of evidence regarding gang membership but, rather, governs the compilation of information pertaining criminal street gangs into databases. *See* Tex. Code Crim. Proc. Ann. arts. 61.01-61.12 (West 2006 & Supp. 2011). To the extent that it appears applicant is alleging a statutory violation in the admission of Detective Nelson's testimony, this is not cognizable in writ of habeas corpus. *See Ex parte Graves*, 70 S.W.3d at 109.

**Detective Nelson's Testimony Was Neither False Nor Misleading.**

Further, there is no merit to applicant's argument that Detective Nelson's testimony regarding applicant's gang membership was false and misleading.

A conviction procured through the use of false testimony is a denial of the due

26

process guaranteed by the Federal Constitution.[4] *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). The use of false testimony at the punishment phase is also a due-process violation. *Id.* A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Id.* It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence. *Id.*

Though case law in this area frequently refers to "perjured" testimony, there is no requirement that the offending testimony be criminally perjurious. *Id.* It is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* These rules are not aimed at preventing the crime of perjury – which is punishable in its own right – but are designed to ensure that the defendant is convicted and sentenced on truthful testimony. *Id.* at 477-78.

To constitute a violation of due process under Federal precedent, the State must knowingly use false testimony. *Id.* at 478. The Court of Criminal Appeals allows applicants to prevail on due-process claims when the State has unknowingly used false testimony. *Id.* Even under this expanded notion of due process, however, the State's knowledge is still a relevant factor to determine the standard the Court uses for reviewing an applicant's habeas claim. *Id.*

---

[4] Applicant not only alleges a violation of due process, but of the Eighth Amendment right against cruel and unusual punishment. Given that use of false testimony is a violation of due process, applicant's argument regarding the Eighth Amendment is not clear.

27

The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The Court of Criminal Appeals has characterized this as a requirement that the false testimony must have been material. *Id.* This standard is more stringent than the standard applied to *Brady* claims of suppressed evidence, which requires the defendant to show a "reasonable probability" that the suppression of evidence affected the outcome. *Id.* The "reasonable likelihood" standard is equivalent to the standard for constitutional error, which "requires the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) (plurality op.)).

Even if conflicting testimony is presented, that fact alone would not indicate perjury. *Losada v. State*, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986); *Brown v. State*, 477 S.W.2d 617, 623 (Tex. Crim. App. 1972).

The State recognizes that further evidence is needed regarding Detective Nelson's testimony. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

28

163

## RESPONSE TO GROUND FIVE: APPLICANT'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.

In his fifth ground for relief, applicant alleges that the State violated his First Amendment rights by using his various writings to demonstrate that he was a member of a street gang. Applicant's allegations are procedurally barred and wholly without merit.

### Applicant's Claim is Procedurally Barred.

Matters not raised at trial cannot form the basis for habeas relief. *See Ex parte Dutchover*, 779 S.W.2d at 77; *Ex parte Crispen*, 777 S.W.2d at 105; *Ex parte Bagley*, 509 S.W.2d at 333. Additionally, habeas corpus is not to be used as a substitute for appeal. *Ex parte Clore*, 690 S.W.2d at 900. If a claim could have been raised on appeal, but was not, the applicant is procedurally barred from raising the issue for the first time through habeas. *See Ex parte Cruzata*, 220 S.W.3d at 520. Finally, habeas corpus is not to be used to relitigate matters that were addressed on appeal. *See Ex parte Drake*, 883 S.W.2d at 215.

At a pre-trial hearing, applicant objected to Detective Nelson's testimony as inadmissible under Rules 401 and 403 of the Texas Rules of Evidence, as well as under the First and Fourteenth Amendments to the United States Constitution. *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *44 n.90. On appeal, applicant argued that the trial court erred in admitting Detective Nelson's testimony because he was not a qualified expert and because his testimony was not relevant and was unfairly prejudicial. *See id.* at *44-49. Because applicant has never claimed that Detective Nelson's testimony

29

regarding applicant's various writings violated his First Amendment rights, applicant's allegations are procedurally barred.

**Applicant's Writings Were Not Protected By the First Amendment.**

During the punishment phase, Detective Nelson testified that he reviewed some of the writings and artwork found in applicant's cell and notebooks found in Swan's car. Detective Nelson testified that several of applicant's artwork and writings indicated that he was a member of the Gangster Disciples, a criminal street gang. (RR49: 97-125). Applicant alleges that the State violated his rights under the First Amendment to the United States Constitution by using his writings to demonstrate that he was a member of a criminal street gang. (Broadnax Writ App., pp. 66-67).

States cannot criminalize thoughts. *Goldberg v. State*, 95 S.W.3d 345, 373 (Tex. Crim. App. 2002). In this case, applicant was not on trial for the ideas expressed in his writings and art work; he was on trial for murder. *See id.*

Nevertheless, the First Amendment also prevents a State from using evidence of a defendant's abstract beliefs against him at trial, unless those beliefs have a bearing on the issues in the case. *See id.* (citing *Dawson v. Delaware*, 503 U.S. 159, 167-68 (1992)). The issue is not, therefore, whether applicant's writings and artwork were protected First Amendment speech, but whether they were relevant to an issue in the case. *See id.* at 374.

At trial and on appeal, applicant alleged that Detective Nelson's testimony was not relevant. Both the trial court and the Court of Criminal Appeals held that the evidence

30

165

was, indeed, relevant. *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *44-49. Consequently, to the extent that applicant's argument necessarily involves a determination of relevancy, this portion of applicant's argument has been previously raised and rejected, and is thus procedurally barred. *See Ex parte Ramos*, 977 S.W.2d at 617. In any event, applicant has not offered any explanation as to why the relevancy determinations previously made by the trial court and the Court of Criminal Appeals should not be applied in a First Amendment context.

Because evidence regarding applicant's membership in a criminal street gang was relevant. The State did not violate applicant's First Amendment right to free speech in using his writings or artwork to prove his gang membership. Applicant's fifth ground for relief should, therefore, be denied.

### RESPONSE TO GROUND SIX: TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REFUTE THE STATE'S EVIDENCE THAT APPLICANT WAS A MEMBER OF A CRIMINAL STREET GANG.

In his sixth ground for relief, applicant alleges that trial counsel was ineffective for failing to refute the State's evidence that applicant was a member of the Gangster Disciples, a criminal street gang. Applicant's contentions are wholly without merit.

The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686; *Hernandez*, 726 S.W.2d at 57. An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's

31

166

representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

Effective assistance of counsel does not mean errorless counsel. *See Ex parte Kunkle*, 852 S.W.2d at 505. To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See Ex parte McFarland*, 163 S.W.3d at 753; *Jackson*, 877 S.W.2d at 771. This highly deferential review is applied to avoid "the distorting effect of hindsight." *Ex parte McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

Applicant alleges that trial counsel was ineffective because he (1) conducted only a superficial investigation into applicant's gang membership; (2) failed to object to Detective Nelson's testimony and/or effectively cross-examine Detective Nelson; and (3) failed to rebut Detective Nelson's testimony with a defense gang expert. (Broadnax Writ. App., pp. 70-73).

## Trial Counsel Was Not Ineffective For His Investigation Regarding Gang Membership.

Applicant alleges that his trial counsel was ineffective because he conducted only a superficial investigation into applicant's gang membership. According to applicant, counsel merely hired a mitigation expert who only spent one hour investigating the Gangster Disciples, the criminal street gang applicant is a member of. (Broadnax Writ.

32

167

App., p. 70).

The State recognizes that further evidence is needed regarding trial counsel's representation. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

**Counsel Was Not Ineffective For Failing to Object to Detective Nelson's Testimony or in His Cross-Examination of Detective Nelson.**

Applicant further alleges that his trial counsel was ineffective for failing to object to Detective Nelson's testimony and/or cross-examine Detective Nelson to show that (1) the criteria set forth in Chapter 61 was not met, (2) applicant does not have any gang tattoos, and (3) applicant was not located in the Dallas gang database. Applicant further alleges that counsel was ineffective for failing to object to the admission of Detective Nelson's testimony as a violation of the First Amendment. (Broadnax Writ App., pp. 71).

As previously noted in response to applicant's fourth ground for relief, applicant's reliance on Chapter 61 of the Code of Criminal Procedure is not clear. Chapter 61 does not govern the admission of evidence regarding gang membership but, rather, governs the compilation of information pertaining to criminal street gangs into databases. *See* Tex. Code Crim. Proc. Ann. arts. 61.01-61.12 (West 2006 & Supp. 2011). Moreover, as explained at length in response to applicant's fifth ground for relief, the State's use of

33

168

applicant's writings and artwork to prove gang membership was not prohibited by the First Amendement. Consequently, counsel should not be held ineffective for failing to make an incomprehensible legal argument. *See generally Edmond*, 116 S.W.3d at 115 (holding that trial counsel "is not ineffective for failing to make a frivolous objection").

The State recognizes that further evidence is needed regarding trial counsel's representation. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

## Counsel Was Not Ineffective For Failing to Call a Gang Expert.

Finally, applicant alleges that trial counsel was ineffective for failing to call a gang expert who would have refuted Detective Nelson's testimony. (Broadnax Writ App., pp. 72-73).

The State recognizes that further evidence is needed regarding trial counsel's representation. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

34

169



**RESPONSE TO GROUND SEVEN: DR. PRICE'S TESTIMONY REGARDING ANTI-SOCIAL PERSONALITY DISORDER AND THE HARE PSYCHOPATHY CHECKLIST WAS NEITHER FALSE NOR MISLEADING.**

In his seventh ground for relief, applicant alleges that Dr. Jack Price's testimony was false and misleading and violated his due process and Eighth Amendment rights. According to applicant, who relies heavily on an affidavit made by his own expert, "[t]here seems to be no scientifically valid or reliable reason to have introduced evidence concerning the PCL-R in this case in response to earlier testimony concerning APD – which is itself largely extraneous to a scientifically based assessment of risk factors for future violence in prison." (Broadnax Writ App., p. 83).

**Applicant's Allegation is Not Cognizable in Writ of Habeas Corpus.**

Although applicant couches his argument as a violation of due process due to false and misleading testimony, his argument actually appears to be that Dr. Price's testimony did not meet the requirements of Texas Rule of Evidence 702 and *Kelly v. State*, 824 S.W.3d 568 (Tex. Crim. App. 1992). Such an argument is an attack on the admissibility of the evidence and is not cognizable in writ of habeas corpus. *See Ex parte Graves*, 70 S.W.3d at 109.

**Dr. Price's Testimony Was Neither False Nor Misleading.**

Further, there is no merit to applicant's argument that Dr. Price's testimony was false and misleading.

At the conclusion of a hearing held outside the presence of the jury, the trial court ruled that Dr. Price's testimony was admissible under Rules of Evidence 401, 403, and

35

170

702, and pursuant to *Kelly*. (RR52: 216-230). During the State's rebuttal at punishment, Dr. Price used a Power Point presentation to educate the jury on the 20 traits of psychopathic personality disorder. (RR52: 241-43, 245, 248-59; State's Ex. at Trial 597). The State made it clear during Dr. Price's testimony that he was not going to testify as to whether applicant was a psychopath, but rather give the jury the known traits of a psychopath and let the jury determine if the traits applied to applicant. (RR52: 244).

A conviction procured through the use of false testimony is a denial of the due process guaranteed by the Federal Constitution.[5] *Ex parte Ghahremani*, 332 S.W.3d at 477. The use of false testimony at the punishment phase is also a due-process violation. *Id.* A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Id.* It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence. *Id.*

Though case law in this area frequently refers to "perjured" testimony, there is no requirement that the offending testimony be criminally perjurious. *Id.* It is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* These rules are not aimed at preventing the crime of perjury – which is punishable in its own right – but are

---

[5] Applicant not only alleges a violation of due process, but of the Eighth Amendment right against cruel and unusual punishment. Given that use of false testimony is a violation of due process, applicant's argument regarding the Eighth Amendment is not clear.

36

designed to ensure that the defendant is convicted and sentenced on truthful testimony. *Id.* at 477-78.

To constitute a violation of due process under Federal precedent, the State must knowingly use false testimony. *Id.* at 478. The Court of Criminal Appeals allows applicants to prevail on due-process claims when the State has unknowingly used false testimony. *Id.* Even under this expanded notion of due process, however, the State's knowledge is still a relevant factor to determine the standard the Court uses for reviewing an applicant's habeas claim. *Id.*

The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* (quoting *Agurs*, 427 U.S. at 103). The Court of Criminal Appeals has characterized this as a requirement that the false testimony must have been material. *Id.* This standard is more stringent than the standard applied to *Brady* claims of suppressed evidence, which requires the defendant to show a "reasonable probability" that the suppression of evidence affected the outcome. *Id.* The "reasonable likelihood" standard is equivalent to the standard for constitutional error, which "requires the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Bagley*, 473 U.S. at 680, n.9).

Even if conflicting testimony is presented, that fact alone would not indicate perjury. *Losada*, 721 S.W.2d at 312; *Brown*, 477 S.W.2d at 623.

37

172

The State recognizes that further evidence is needed regarding Dr. Price's testimony. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

### RESPONSE TO GROUND EIGHT: TRIAL COUNSEL WAS NOT INEFFECTIVE IN HIS HANDLING OF TESTIMONY REGARDING ANTI-SOCIAL PERSONALITY DISORDER AND PSYCHOPATHY.

In his eighth ground for relief, applicant alleges that his trial counsel was ineffective for (1) opening the door to Dr. Price's testimony, (2) failing to use Dr. Frank Lane or another defense expert to explain why anti-social personality disorder is not a good indicator of future dangerousness and why it was not intended for use in a criminal setting, and (3) failing to cross examine Dr. Price altogether and to rebut the reliability and validity of the PCL-R in the future dangerousness determination. (Broadnax Writ App., p. 88).

The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686; *Hernandez*, 726 S.W.2d at 57. An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

38

173

proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

Effective assistance of counsel does not mean errorless counsel. *See Ex parte Kunkle*, 852 S.W.2d at 505. To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See Ex parte McFarland*, 163 S.W.3d at 753; *Jackson*, 877 S.W.2d at 771. This highly deferential review is applied to avoid "the distorting effect of hindsight." *Ex parte McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

The State recognizes that further evidence is needed regarding trial counsel's representation. The State requests that this Court issue an order designating issues to be resolved by affidavits, depositions, interrogatories, or evidentiary hearing. Pending production of evidence substantiating applicant's claim, the State denies applicant's allegations.

Respectfully submitted,

Amy Sue Melo Murphy
Assistant District Attorney
State Bar No. 24033062
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3639
(214) 653-3643 *fax*
amy.murphy@dallascounty.org

Craig Watkins
Criminal District Attorney
Dallas County, Texas

39

174

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing response has been served on Lydia M.V. Brandt, attorney for applicant, at THE BRANDT LAW FIRM, P.C., P.O. Box 850843, Richardson, Texas 75085 by depositing same in the United States mail, postage prepaid, on June 18, 2012.

Amy Sue Melo Murphy

40

175

Cause No. W08-24667-Y(A)

|                          |   |                         |
|--------------------------|---|-------------------------|
| EX PARTE                 | § | IN THE CRIMINAL DISTRICT |
|                          | § | COURT NO. 7 OF          |
| JAMES GARFIELD BROADNAX  | § | DALLAS COUNTY, TEXAS    |

## RESPONDENT'S PROPOSED ORDER DESIGNATING THE ISSUES TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS, INTERROGATORIES, OR EVIDENTIARY HEARING

Having considered the application for writ of habeas corpus in the above-captioned cause, the Respondent's original answer, and the documents of the court, the Court **ORDERS** that the issues to be resolved include applicant's allegations of ineffectiveness against his trial counsel, as set out in grounds three, four, six, seven, and eight of his application for writ of habeas corpus.

A Dallas County jury convicted applicant of the capital murder of Stephen Swan and, on August 20, 2009, answered the special issues in a manner requiring the imposition of a death sentence. Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b), (e)(1) (West Supp. 2011). On December 20, 2011, the Court of Criminal Appeals affirmed applicant's conviction and sentence on direct appeal. *See Broadnax v. State*, No. AP-76,207, 2011 Tex. Crim. App. Unpub. LEXIS 920 (Tex. Crim. App. Dec. 14, 2011). Applicant now attacks his conviction and sentence through an application for writ of habeas corpus that he filed in the trial court on December 20, 2011.

The Court designates the following as issues to be resolved outside of the official transcript and court documents:

1. In ground three, applicant alleges that trial counsel was ineffective for failing to investigate and raise the precise Sixth Amendment claims he now raises in his first and second grounds;

2. In ground four, applicant alleges that Detective Barrett Keith Nelson gave false and misleading testimony regarding applicant's membership in a criminal street gang;

3. In ground six, applicant alleges that trial counsel was ineffective for failing to refute the State's evidence that applicant was a member of a criminal street gang;

1

4.   In ground seven, applicant alleges that Dr. Jack Price's testimony was false and misleading;

5.   In ground eight, applicant contends counsel was ineffective during punishment for failing to refute and/or minimize Dr. Price's testimony.

The CLERK IS **ORDERED** to send a copy of this order to the applicant and a copy of this order to the Respondent.

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE RESPONDENT'S PROPOSED ORDER DESIGNATING THE ISSUES TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS, INTERROGATORIES, OR EVIDENTIARY HEARINGS.

SIGNED this _____ day of _____, 2012.


_____
Michael Snipes, Judge Presiding
Criminal District Court No. 7
Dallas County, Texas


Respectfully submitted,


Amy Sue Melo Murphy (21431545)
Assistant District Attorney
Frank Crowley Courthouse
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207
(214) 653-3639
(214) 653-3643 (FAX)

I hereby certify that a copy of the foregoing proposed order has been served on Lydia M.V. Brandt at THE BRANDT LAW FIRM, P.C., P.O. Box 850843, Richardson, Texas 75085, by depositing same in the United States mail, postage prepaid, on June 18, 2012.


Amy Sue Melo Murphy

2

177

IN THE
TEXAS COURT OF CRIMINAL APPEALS
and
CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TX

| | |
|---|---|
| Ex Parte James Garfield Broadnax,<br>*Applicant,* | TCCA No. AP 76,207<br>Trial Court Cause No. wr08-24667-Y |

**AGREED ORDER DESIGNATING THE ISSUES
TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS,
INTERROGATORIES, AND/OR EVIDENTIARY HEARING**

Having considered the Application for Writ of Habeas Corpus in the above-captioned cause, including the separate volumes of exhibits, the Motion for Oral Argument, and the Motion for Evidentiary Hearing (hereinafter collectively referred to as "Application"), the Respondent's original answer, and the documents of the court, the Court **ORDERS** that the issues to be resolved are Issues One through and including Eight, as set out in the Application.

A Dallas County jury convicted Applicant of the capital murder of Stephen Swan on August 12, 2009. (RR Vol. 47:203; CR 3:635). On August 20, 2009, the jurors answered "yes" to the future dangerousness special issue No. 1, and "no" to the mitigation special issue No. 2. (RR Vol. 54:4-5; CR 3:650, 651). On August 21, 2009, the trial judge sentenced Broadnax to death. (RR Vol. 54:7; CR 3:698). On December 14, 2011, the Texas Court of Criminal Appeals affirmed Applicant's conviction and sentence of death. *Broadnax v. State,* No. AP-76,207, 2011 WL 6225399 (Tex. Crim. App. Dec. 14, 2011). On December 20, 2011, Applicant filed his Application, in which he collaterally attacks his conviction and sentence.

The Court designates the following issues to be resolved outside of the official transcript and court documents:

178

1.    GROUND ONE (Denial of *Procedural* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his procedural 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

2.    GROUND TWO (Denial of *Substantive* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his substantive 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

3.    GROUND THREE (IAC & Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his federal constitutional right to effective assistance of counsel, who failed to perform an adequate investigation into, and develop and present, the facts of Lollar's appointment and the media interviews

4.    GROUND FOUR: (False and Misleading Gang Testimony – 8th & 14th amendment violation). Mr. Broadnax was denied his right to due process and to be free from cruel and unusual punishment, through false and misleading evidence of gang affiliation sponsored by the prosecution

5.    GROUND FIVE: (Free Speech & Gang Evidence – 1st and 14th amendment violations). Mr. Broadnax was denied his right to free speech by materially false and misleading evidence of gang affiliation

6.    GROUND SIX: (IAC & Gang Evidence – 6th & 14th amendment violation). Mr. Broadnax was denied his right to effective assistance of counsel, who failed to object to, and/or properly cross examine on, and/or call its own defense gang expert to refute evidence of gang affiliation

7.    GROUND SEVEN: (ASPD & PCL-R – Use of False and Misleading Evidence – 8th and 14th amendment violations). Mr. Broadnax was denied his right to due process, and to be free from cruel and unusual punishment when the prosecution used materially false and misleading evidence of future dangerousness based on ASPD and PCL-R

8.    GROUND EIGHT (IAC & ASPD, PCL-R – 6th and 14th amendment violations). Mr. Broadnax was denied his right to effective assistance of trial counsel, who sponsored defense expert testimony of ASPD, which opened the door to the prosecutor-sponsored, unreliable and invalid testimony on psychopathy and ASPD

The clerk is ORDERED to send a copy of this order to the Applicant (Broadnax), to the

2

179

Applicant's attorney (Brandt), and a copy of this order to Respondent's attorney (Murphy).

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE AGREED PROPOSED ORDER SUBMITTED BY THE APPLICANT AND THE STATE OF TEXAS DESIGNATING THE ISSUES TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS, INTERROGATORIES, AND/OR EVIDENTIARY HEARINGS.

SIGNED this _13_ day of _JULY_, 2012.

_____
Michael Snipes, Judge Presiding
Criminal District Court No. 7
Dallas County, Texas

## AGREEMENT TO PROPOSED ORDER

I certify that on July 13, 2012, that on behalf of the party that I represent, that party

agrees to the aforementioned Agreed Proposed Order Designating the Issues:

_____
Amy Sue Melo Murphy, Esq.
SBOT No. 24041545
Assistant District Attorney
Counsel for the State of Texas
Attn: Capital Writs – Appellate Section
Dallas County District Attorney's Office
Frank Crowley Courthouse
133 N. Riverfront Blvd., LB-19
Dallas, TX 75207

_____
Lydia M.V. Brandt, Esq.
SBOT No. 00795262
Attorney for James Broadnax
P.O. Box 850843
Richardson, TX 75085-0843

3

## CERTIFICATE OF SERVICE

I certify that on July 13, 2012, I caused a copy of the foregoing Proposed Order

Designating the Issues to be sent by email, and also in paper format by depositing the same

in the U.S. Mail, postage prepaid, to:

> Amy Sue Melo Murphy
> Attn: Capital Writs – Appellate Section
> Dallas County District Attorney's Office
> Frank Crowley Courthouse
> 133 N. Riverfront Blvd., LB-19
> Dallas, TX 75207

_Lydia M.V. Brandt_

—————————————————————
Lydia M.V. Brandt

cc:    Judge Michael Snipes
       Criminal District Court #7
       Frank Crowley Court Building
       133 North Industrial Blvd.
       Dallas, TX 75207

       Attn: Betty Hooper
       Clerk of Court
       Texas Court of Criminal Appeals
       Supreme Court Building
       201 West 14th Street, RM 106
       Austin, TX   78701

       James Broadnax #999549
       TDCJ, Polunsky Unit
       3872 FM 350 South
       Livingston, TX 77351-8580

4

181

## Sharon A Johnson

From:      Amy Murphy
Sent:      Friday, August 03, 2012 9:34 PM
To:        Michael Snipes; Lydia Brandt; Sharon A Johnson
Subject:   RE: Broadnax Writ Hearing

Judge;  I am sorry.  I misunderstood you this morning.

My apologies for my earlier email indicating that you had approved a two day hearing.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

From: Michael Snipes
Sent: Friday, August 03, 2012 14:23
To: Amy Murphy; Lydia Brandt; Sharon A Johnson
Subject: RE: Broadnax Writ Hearing

The hearing will be completed in a day.

From: Amy Murphy
Sent: Thursday, August 02, 2012 3:35 PM
To: Lydia Brandt; Sharon A Johnson
Cc: Michael Snipes
Subject: RE: Broadnax Writ Hearing

I agree, two days.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

From: Lydia Brandt [lydiamb@airmail.net]
Sent: Thursday, August 02, 2012 15:26
To: Sharon A Johnson
Cc: Amy Murphy; Michael Snipes
Subject: Re: Broadnax Writ Hearing
I expect the hearing to take at least two days.  We did a day and half in Ruiz with less than
10 witnesses.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

1

182

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- SHARONA.JOHNSON@dallascounty.org wrote:

From: Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, "lydiamb@airmail.net" <lydiamb@airmail.net>
Subject: Broadnax Writ Hearing
Date: Thu, 2 Aug 2012 15:24:38 -0500

Judge Snipes sent an email stating that the date for the writ hearing is December 7, 2012 at 9:00 am.  Just making sure everyone got the email.

Also, based on his review of the issues the Judge anticipates the hearing should not take any longer than one day.  If the parties believe the hearing will require more than one day, they need to meet with the Judge to discuss scheduling.

Thank you.

Sharon Johnson

Court coordinator

Criminal District Court 7

972-739-3905

183

F0824667-Y

**IN THE**
**TEXAS COURT OF CRIMINAL APPEALS**
**and**
**CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TX**

Ex Parte James Garfield Broadnax,
*Applicant,*

TCCA No. AP 76,207
Trial Court Cause No. wr08-24667-X

2012 SEP 11 AM 8:41 FILED

**AGREED ORDER DESIGNATING THE ISSUES**
**TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS,**
**INTERROGATORIES, AND/OR EVIDENTIARY HEARING**

Having considered the Application for Writ of Habeas Corpus in the above-captioned cause, including the separate volumes of exhibits, the Motion for Oral Argument, and the Motion for Evidentiary Hearing (hereinafter collectively referred to as "Application"), the Respondent's original answer, and the documents of the court, the Court **ORDERS** that the issues to be resolved are Issues One through and including Eight, as set out in the Application.

A Dallas County jury convicted Applicant of the capital murder of Stephen Swan on August 12, 2009. (RR Vol. 47:203; CR 3:635). On August 20, 2009, the jurors answered "yes" to the future dangerousness special issue No. 1, and "no" to the mitigation special issue No. 2. (RR Vol. 54:4-5; CR 3:650, 651). On August 21, 2009, the trial judge sentenced Broadnax to death. (RR Vol. 54:7; CR 3:698). On December 14, 2011, the Texas Court of Criminal Appeals affirmed Applicant's conviction and sentence of death. *Broadnax v. State*, No. AP-76,207, 2011 WL 6225399 (Tex. Crim. App. Dec. 14, 2011). On December 20, 2011, Applicant filed his Application, in which he collaterally attacks his conviction and sentence.

The Court designates the following issues to be resolved outside of the official transcript and court documents:

184

1. GROUND ONE (Denial of *Procedural* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his procedural 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

2. GROUND TWO (Denial of *Substantive* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his substantive 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

3. GROUND THREE (IAC & Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his federal constitutional right to effective assistance of counsel, who failed to perform an adequate investigation into, and develop and present, the facts of Lollar's appointment and the media interviews

4. GROUND FOUR: (False and Misleading Gang Testimony – 8th & 14th amendment violation). Mr. Broadnax was denied his right to due process and to be free from cruel and unusual punishment, through false and misleading evidence of gang affiliation sponsored by the prosecution

5. GROUND FIVE: (Free Speech & Gang Evidence – 1st and 14th amendment violations). Mr. Broadnax was denied his right to free speech by materially false and misleading evidence of gang affiliation

6. GROUND SIX: (IAC & Gang Evidence – 6th & 14th amendment violation). Mr. Broadnax was denied his right to effective assistance of counsel, who failed to object to, and/or properly cross examine on, and/or call its own defense gang expert to refute evidence of gang affiliation

7. GROUND SEVEN: (ASPD & PCL-R – Use of False and Misleading Evidence – 8th and 14th amendment violations). Mr. Broadnax was denied his right to due process, and to be free from cruel and unusual punishment when the prosecution used materially false and misleading evidence of future dangerousness based on ASPD and PCL-R

8. GROUND EIGHT (IAC & ASPD, PCL-R – 6th and 14th amendment violations). Mr. Broadnax was denied his right to effective assistance of trial counsel, who sponsored defense expert testimony of ASPD, which opened the door to the prosecutor-sponsored, unreliable and invalid testimony on psychopathy and ASPD

The clerk is ORDERED to send a copy of this order to the Applicant (Broadnax), to the

2

185

Applicant's attorney (Brandt), and a copy of this order to Respondent's attorney (Murphy).

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE AGREED PROPOSED ORDER SUBMITTED BY THE APPLICANT AND THE STATE OF TEXAS DESIGNATING THE ISSUES TO BE RESOLVED BY AFFIDAVITS, DEPOSITIONS, INTERROGATORIES, AND/OR EVIDENTIARY HEARINGS.

SIGNED this ____2____ day of ____A U G____, 2012.

Michael Snipes, Judge Presiding
Criminal District Court No. 7
Dallas County, Texas

## AGREEMENT TO PROPOSED ORDER

I certify that on July 13, 2012, that on behalf of the party that I represent, that party

agrees to the aforementioned Agreed Proposed Order Designating the Issues:

Amy Sue Melo Murphy, Esq.
SBOT No. 24041545
Assistant District Attorney
Counsel for the State of Texas
Attn: Capital Writs – Appellate Section
Dallas County District Attorney's Office
Frank Crowley Courthouse
133 N. Riverfront Blvd., LB-19
Dallas, TX 75207

Lydia M.V. Brandt, Esq.
SBOT No. 00795262
Attorney for James Broadnax
P.O. Box 850843
Richardson, TX 75085-0843

3

186

## CERTIFICATE OF SERVICE

I certify that on July 13, 2012, I caused a copy of the foregoing Proposed Order

Designating the Issues to be sent by email, and also in paper format by depositing the same

in the U.S. Mail, postage prepaid, to:

Amy Sue Melo Murphy
Attn: Capital Writs – Appellate Section
Dallas County District Attorney's Office
Frank Crowley Courthouse
133 N. Riverfront Blvd., LB-19
Dallas, TX 75207


_____

Lydia M.V. Brandt

cc:    Judge Michael Snipes
Criminal District Court #7
Frank Crowley Court Building
133 North Industrial Blvd.
Dallas, TX 75207

Attn: Betty Hooper
Clerk of Court
Texas Court of Criminal Appeals
Supreme Court Building
201 West 14th Street, RM 106
Austin, TX  78701

James Broadnax #999549
TDCJ, Polunsky Unit
3872 FM 350 South
Livingston, TX 77351-8580

4

187

## Sharon A Johnson

| | |
|---|---|
| **From:** | Michael Snipes |
| **Sent:** | Tuesday, November 13, 2012 12:00 PM |
| **To:** | Lydia Brandt; Kerry Young; Sharon A Johnson; Jennifer Bennett |
| **Cc:** | Amy Murphy; Anna Kubalak |
| **Subject:** | RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg |

As of now, I am going to see where we are at the end of Dec 7 and then I may or may not continue it. The trial itself was only a week. I will be reasonable, but I have special set jury trials on both Dec 3 and Dec 10.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22 AM
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

1

188

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were:  Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

2

189

OBJECTION:  The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."  Harrington v. Richter, 131 S. Ct. 770, 787 (2011).  Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants.  Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement.  The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel.  It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever.  Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify.  Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA;

3

190

sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:    Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

4

191

**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:15:06 -0600**

**Show Full Headers | Print | Close Printer View**

**From:**    Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
**To:**      Amy Murphy <Amy.Murphy@dallascounty.org>, "lydiamb@airmail.net"
             <lydiamb@airmail.net>
**Subject:** Broadnax Writ Hearing
**Date:**    Thu 08/02/12 03:24 PM

*Judge Snipes sent an email stating that the date for the writ hearing is December 7, 2012 at 9:00 am. Just making sure everyone got the email.*

*Also, based on his review of the issues the Judge anticipates the hearing should not take any longer than one day. If the parties believe the hearing will require more than one day, they need to meet with the Judge to discuss scheduling.*

*Thank you.*

*Sharon Johnson*

*Court coordinator*

*Criminal District Court 7*

*972-739-3905*

**Exhibit A**

**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:15:06 -0600**

**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:16:03 -0600**

**Show Full Headers | Print | Close Printer View**

**From:**    "Lydia Brandt" <lydiamb@airmail.net>
**To:**      "Amy Murphy" <Amy.Murphy@dallascounty.org>
**Subject:** RE: Broadnax Writ Hearing
**Date:**    Fri 08/03/12 07:29 AM

I can not meet Amy.  I am up to my teeth in work and it is about an hour
and half to just drive down there and back. And I am racing against
several dead lines.

Can you ask on behalf of the state and defense (with my permission) to
have the hearing scheduled for two days, the 6th and 7th?

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax



The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Writ Hearing
Date: Thu, 2 Aug 2012 19:38:34 -0500

Lydia,

I already left for the day when you sent your message.  Can you meet
tomorrw?  I will be at work from 8 to 2:30

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

---

From: Lydia Brandt [lydiamb@airmail.net]
Sent: Thursday, August 02, 2012 16:40
To: Amy Murphy
Subject: RE: Broadnax Writ Hearing

Hi Amy,  the court coordinator wrote:

If the parties believe the hearing will require more than one day, they
need to meet with the Judge to discuss scheduling.

I can't get down there right now.  Though I am always worried about ex
parte problems, can you ask the judge for two days like thursday and
friday the 6th and 7th?


Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>, Sharon A Johnson
<SHARONA.JOHNSON@dallascounty.org>
CC: Michael Snipes <Michael.Snipes@dallascounty.org>
Subject: RE: Broadnax Writ Hearing
Date: Thu, 2 Aug 2012 15:35:21 -0500

I agree, two days.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639


From: Lydia Brandt [lydiamb@airmail.net]
Sent: Thursday, August 02, 2012 15:26
To: Sharon A Johnson
Cc: Amy Murphy; Michael Snipes
Subject: Re: Broadnax Writ Hearing

I expect the hearing to take at least two days.  We did a day and half
in Ruiz with less than 10 witnesses.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- SHARONA.JOHNSON@dallascounty.org wrote:

From: Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, "lydiamb@airmail.net"
<lydiamb@airmail.net>
Subject: Broadnax Writ Hearing
Date: Thu, 2 Aug 2012 15:24:38 -0500


Judge Snipes sent an email stating that the date for the writ hearing is
December 7, 2012 at 9:00 am.  Just making sure everyone got the email.

Also, based on his review of the issues the Judge anticipates the
hearing should not take any longer than one day.  If the parties believe
the hearing will require more than one day, they need to meet with the
Judge to discuss scheduling.



Thank you.



Sharon Johnson

Court coordinator

Criminal District Court 7

972-739-3905




**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:16:03 -0600**

**Lydia Brandt (lydlamb@airmail.net) - Tue, 11/13/12 06:16:12 -0600**

**Show Full Headers | Print | Close Printer View**

**From:**    Amy Murphy <Amy.Murphy@dallascounty.org>
**To:**       Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>, "lydlamb@airmail.net"
           <lydlamb@airmall.net>
**Subject:** Broadnax Hearing
**Date:**     Fri 08/03/12 09:29 AM

I spoke with the Judge.  Two days, the hearing can be two days, the 6th and the 7th.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

**Lydia Brandt (lydlamb@airmall.net) - Tue, 11/13/12 06:16:12 -0600**



196

Internet America - Airmail Web Access                    http://mail.airmail.net/email/scripts/view.pl?&mid=612&folder=I...

**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:16:35 -0600**

**Show Full Headers | Print | Close Printer View**

**From:**    Amy Murphy <Amy.Murphy@dallascounty.org>
**To:**      Michael Snipes <Michael.Snipes@dallascounty.org>, Lydia Brandt<lydiamb@airmail.net>, Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
**Subject:** RE: Broadnax Writ Hearing
**Date:**    Fri 08/03/12 09:37 PM



Judge; I am sorry. I misunderstood you this morning.

My apologies for my earlier email indicating that you had approved a two day hearing.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

From: Michael Snipes
Sent: Friday, August 03, 2012 14:23
To: Amy Murphy; Lydia Brandt; Sharon A Johnson
Subject: RE: Broadnax Writ Hearing

The hearing will be completed in a day.

From: Amy Murphy
Sent: Thursday, August 02, 2012 3:35 PM
To: Lydia Brandt; Sharon A Johnson
Cc: Michael Snipes
Subject: RE: Broadnax Writ Hearing

I agree, two days.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639


From: Lydia Brandt [lydiamb@airmail.net]
Sent: Thursday, August 02, 2012 15:26
To: Sharon A Johnson
Cc: Amy Murphy; Michael Snipes
Subject: Re: Broadnax Writ Hearing
I expect the hearing to take at least two days. We did a day and half in Ruiz with less than 10 witnesses.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

197

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- SHARONA.JOHNSON@dallascounty.org wrote:

From: Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, "lydiamb@airmail.net" <lydiamb@airmail.net>
Subject: Broadnax Writ Hearing
Date: Thu, 2 Aug 2012 15:24:38 -0500

Judge Snipes sent an email stating that the date for the writ hearing is December 7, 2012 at 9:00 am.  Just making sure everyone got the email.

Also, based on his review of the issues the Judge anticipates the hearing should not take any longer than one day.  If the parties believe the hearing will require more than one day, they need to meet with the Judge to discuss scheduling.


Thank you.


Sharon Johnson

Court coordinator

Criminal District Court 7

972-739-3905


**Lydia Brandt (lydiamb@airmail.net) - Tue, 11/13/12 06:16:35 -0600**

## Michael Snipes

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 27, 2012 3:37 PM
**To:** Michael Snipes; Anna Kubalak
**Cc:** Amy Murphy; Sharon A Johnson
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - other matters

Thank you **Judge** for letting me know that Mr. Broadnax has been bench warranted to arrive in Lew Sterritt on November 29 if I need to see him.

Hi **Amy and Ana**, The defense will call Edens and Stewart in lieu of affidavits, and call its witnesses in the order that it deems best. So the defense does not agree to the State's counter offer.

Also Amy, because I had not heard back from you or Anna, I wanted to be sure that you are aware of the Dec 6, 2012 hearing at 8:00 am in Judge Snipes court that will be transcribed, and that I had also listed Catherine Bernhard as a witness to testify at the evidentiary hearing.

Finally, I did not hear back from state on whether the state has Defense Exhibit No. 8, the Janet Cook report and letter to Sheriff Valdez. It was admitted into evidence in the pretrial hearing on July 27, 2009, Exhibit 8, but it is nowhere in the record volumes that I have. The defense exhibit 8 that is incorporated into the record is completely different. It is imperative that the Defense Exhibit No. 8, the Janet Cook report and letter to Sheriff Valdez, be made a part of the record.

Does the state have a copy and will it make it available to the defense?

Lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>, Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony
Date: Tue, 27 Nov 2012 15:23:47 -0600

As you know, I am in trial on December 6.. I will have Mr. Broadnax in court on the 7th, but not the 6th, although he has been bench warranted to arrive in Lew Sterritt on November 29 if you need to see him.

-----Original Message-----
From: Amy Murphy
Sent: Tuesday, November 27, 2012 12:45 PM
To: Michael Snipes; Lydia Brandt
Cc: Anna Kubalak

1

199

Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

The State does NOT agree. One of the only reason the State agreed to have a hearing in this case was to have the chance to cross examine your experts, experts you now claim the trial attorneys were ineffective for not calling to testify at trial. The other reason the State agreed to a hearing is to allow the trial attornies to defend themselves.

I propose that, in an effort to speed up the hearing, we start with the relevant witnesses to the actual claims in the application: Doug, Brad, Stewart, and Edens. After those witnesses testify, then we can handle the remainder of the witnesses. Please let me know if you are amenable to this proposal.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

---

From: Michael Snipes
Sent: Tuesday, November 27, 2012 9:56
To: Lydia Brandt
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

I WILL agree, but not forcing the state to do so. That's up to them.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 27, 2012 9:49 AM
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

Dear ADAs Murphy and Kubalak and Judge Snipes,

I would like to enter into agreement with the DA (and with the approval of the court) to have the expert affidavits of Dwight Stewart and John Edens admitted as evidence at the evidentiary hearing, instead of calling them to testify in person at the evidentiary hearing. I believe that this will accomplish Mr. Broadnax's purpose, while at the same time saving costs and substantial money in having to bring them in from out of town.

The two affidavits are exhibits 25 (stewart) and 26 (edens) attached to the state habeas application.

Please let me know if the DA and court will agree so I can let my two experts know asap.

Thank you,
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

2

200

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
CC: Amy Murphy <Amy.Murphy@dallascounty.org>, Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit
Date: Mon, 26 Nov 2012 11:19:21 -0600

Don't forget about chambers meeting on Dec 6 at 8. Does this need to be on the record?


From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Monday, November 26, 2012 8:44 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit


Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

3

201

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.


From: Amy Murphy
Sent: Tuesday, November 13, 2012 3:24 PM
To: Lydia Brandt
Cc: Michael Snipes; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg


Lydia,


I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.

4

Thank you,


Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

(214) 653-3639

_____

From: Lydia Brandt [lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 10:22
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days.  So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing.  I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E
email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

5

203

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 8:49 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
Subject: Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas

6

204

jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

7

205

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

8

W08-24667-Y(A)

2012 DEC -4  PM 2: 34

| | | |
|---|---|---|
| EX PARTE | § | IN THE CRIMINAL DISTRICT |
| | § | COURT NO. 7 OF |
| JAMES GARFIELD BROADNAX | § | DALLAS COUNTY, TEXAS |

## STATE'S MOTION TO QUASH SUBPOENA

COMES NOW the State of Texas, by and through its Criminal District Attorney of Dallas County, and files this Motion to Quash Subpoena. The State presents the following in support of the motion:

## INTRODUCTION

The parties to this suit are the State of Texas and James Garfield Broadnax. This motion relies on a subpoena, which is attached as Exhibit A and incorporated by reference for all purposes. On November 30, 2012, the State received a *subpoena* commanding "the custodian of records Dallas County District Attorney's Office" to appear on December 7, 2012 at 9:00 a.m. and produce the following:

> [A]ll correspondence (by way of example but not limitation, emails, telephone messages, faxes, letters) from the [insert Dallas Sheriffi's [sic] office, DA, DPD] to any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision),
>
> AND ALSO from any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision) to the [insert Dallas Sheriffi's [sic] office, DA, DPD] that pertains to each of the following individuals/defendants:
>
> > Menager, Chloe, Dallas County Court Cause No. F12-59888
> > Broadnax, James, Dallas County Court Cause No. F08-24667-Y
> > Cummings, Demarius, Dallas County Court Cause No. F08-24628
> > Davis, Franklin, Dallas County Court Cause No. F12-12630

STATE'S MOTION TO QUASH SUBPOENA                                                    Page 1

207

Jones, Justin, Dallas County Court Cause No. F12-61728
Payne, Charles, Dallas County Court Cause No. F09-50173, F09-50174, F09-50175
Pettigrew, Gary Wayne, Dallas County Court Cause No. F10-00854-Y, CDC #7
Sparks, Robert, Dallas County Court Cause No. F08-01020"

*See* Exhibit A.

## SUBSTANTIVE GROUNDS FOR QUASHING THE SUBPOENA

The State asks the Court to quash the instant subpoena on the following grounds:

### (1) Law Enforcement Privilege - Pending Criminal Case

The State relies upon the litigation exception, which particularly addresses the component of litigation. *See* Tex. Gov't Code Ann. § 552.103(a) (West 2012) (providing that information related to litigation to which the State or a political subdivision is a party is confidential). The requested information is confidential under the litigation exception because the State is a party to the pending prosecution of the listed cases. *See* Tex. Gov't Code Ann. § 552.103(a) (West 2012); Attorney Gen. Op. JM-1048 at 4 (1989) (this enacted to prevent use of the Public Information Act as a method of avoiding the rules of civil discovery). The litigation exception continues until the defendant has exhausted all appellate and postconviction remedies. *See* Tex. Gov't Code Ann. § 552.103(b) (West 2012).

### (2) Opposing Counsel in This Case

It is highly improper to subpoena opposing counsel to testify in a pending case. Rule 501 allows the elected District Attorney, Craig Watkins, or any of his Assistant

STATE'S MOTION TO QUASH SUBPOENA                    **Page 2**

District Attorneys or other staff members to claim the lawyer-client privilege on behalf of the State. Tex. R. Evid. 503(c). The State may prevent its lawyers or lawyers' representatives from disclosing any fact which came to the knowledge of the lawyer by reason of the attorney-client privilege. Tex. R. Evid. 503(b)(2).

### (3) Failure to Comply with article 39.14 - Non-Party Witness

Generally, criminal defendants in Texas have no right of discovery. *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex. Crim. App. 1990), *overruled on other grounds, Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). Criminal discovery is governed by Chapter 39 of the Texas Code of Criminal Procedure. *See State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 144 (Tex. App. – Dallas 1987, orig. proceeding) (holding Legislature intended Chapter 39 to be a comprehensive statute and criminal discovery orders must fall within its confines). Article 39.14 does not provide for pretrial discovery from non-party witnesses. *Martin v. Darnell*, 960 S.W.2d 838, 842 (Tex. App. – Amarillo 1997, no pet.) (holding criminal defendant not entitled to subpoena records of non-party witness).

### (4) Failure to Comply with article 39.14 - No Good Cause Shown

Article 39.14(a) requires a showing of showing of good cause by the defendant before the court orders the State to produce, copy or permit inspection of documents and/or other tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody

or control of the State or any of its agencies. Tex. Code. Crim. Proc. Ann. art. 39.14(a) (West Supp. 2012); *see also Massey v. State*, 933 S.W.2d 141, 153 (Tex. Crim. App. 1996) (requiring a good cause showing before a defendant is entitled to discovery).

The defendant fails to state any cause for requesting this information. Defendant has not filed a brief in support of the subpoena. Defendant's bald assertion that he wants this information, without some showing of cause, is insufficient to support the subpoena.

### (5) Failure to Comply with article 39.14 - Not Material to this Case

Additionally, article 39.14(a) requires that the requested items be material to some matter in the case at bar. *See* Tex. Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2012). In this case, the criminal defendant has not made the required showing that the information he seeks is material and favorable to his defense. *See, e.g., Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (requiring defendant to make a specific, affirmative showing by sworn evidence or facts that the testimony would be material and favorable to him).

It does not appear that the defendant presented this Court with sworn facts indicating that any material possessed by the subpoenaed witness would be favorable to him. Moreover, the requested information is immaterial to the specific issues before this Court. As such, it would be inadmissible and this subpoena should be quashed.

STATE'S MOTION TO QUASH SUBPOENA

Page 4

### (6) Failure to Comply with article 39.14 - Work Product Exception

Alternatively, article 39.14(a) explicitly excepts "the work product of counsel in the case and their investigators and their notes or report" from discovery. Tex. Code Crim. Proc. Ann. art. 39.14(a) (West Supp. 2012). It further provides that a defendant's discovery rights "shall not extend to written communications between the State or any of its agents or representatives or employees." *Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998).

Caselaw supports these protections. Generally, the following items are exempt from discovery:  (1) prosecution files and papers, (2) prosecution worksheets, and (3) factual memoranda concerning the arrest of a defendant or investigation of a case. *See, e.g., Brem v. State*, 571 S.W.2d 314, 322 (Tex. Crim. App. 1978); *Gowan v. State*, 927 S.W.2d 246, 249 (Tex. App. – Fort Worth 1996, pet. ref'd). It is essential that an attorney "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Skinner v. State*, 956 S.W.2d 532, 538 (Tex. Crim. App. 1997). If work product materials were made available to opposing counsel on demand, much of what is reduced to writing would remain unwritten, culminating in the inefficiency, unfairness and sharp practices demoralizing the practice of law. *Id*. Thus, the requested materials should fall within the work product exemption in article 39.14(a), and they are not discoverable.

**(7) Failure to Comply with Chapter 24 - No Statement of Materiality**

When an application for subpoena of a witness is filed, the application must comply with the requirements of article 24.03, which requires that the defendant state that the testimony of that witness is material to the defense. Tex. Code Crim. Proc. Ann. art. 24.03(a) (West 2009). The subpoena attached as Exhibit A fails to set forth the required statements. The subpoena is fundamentally defective on its face and should be quashed.

**(8) Failure to Comply with Chapter 24 - No Actual Materiality**

Furthermore, the defendant would be unable to prove the requisite element of materiality to support this subpoena. *See Coleman v. State*, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998) (defendant must make a plausible showing by sworn evidence or agreed facts that a witness's testimony would be both material and favorable to the defense).

The defendant has the burden of proving materiality. *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997). Usually, a determination of materiality involves a balancing of the strength of the exculpatory evidence against the evidence supporting conviction. *Castaneda v. State*, 28 S.W.3d 216, 222 (Tex. App. -- El Paso 2000, no pet.).

The witness's testimony and the requested documents would have to be both material and favorable to the defendant regarding the issues before this court. The

STATE'S MOTION TO QUASH SUBPOENA                                    Page 6

testimony and documents the defendant seeks would be neither material nor favorable to him in these writ proceedings.

### (9) Attorney-Client Privilege

The State may prevent its lawyers or lawyers' representatives from disclosing any other fact which came to the knowledge of the lawyer by reason of the attorney-client privilege. Tex. R. Evid. 601(b)(2). This privilege extends to agents and employees of the attorney. Thus, any testimony or records from the custodian of records for the Dallas County District Attorney's Office would be protected by the privilege.

### PRAYER

For these reasons, the State requests that the Court and opposing counsel take notice of the filing of this motion, and that after final hearing, this Court quash the subpoena.

Respectfully submitted,

CRAIG WATKINS
Criminal District Attorney
Dallas County, Texas

Lisa Smith
Assistant District Attorney
Texas Bar No. 00787131
Dallas County District Attorney's Office
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3630; (214) 653-3643 (fax)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was emailed to applicant's counsel, Lydia Brandt, at lydiamb@airmail.net, on December 4, 2012.

_Lisa Smith_

Lisa Smith

Case 3:15-cv-01758-N Document 42-3 Filed 06/29/16 Page 219 of 263 PageID 11207

## THE STATE OF TEXAS
## TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
## OF THE STATE OF TEXAS – GREETINGS:
## YOU ARE HEREBY COMMANDED TO SUMMON

CUSTODIAN OF RECORDS DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 N. RIVERFRONT BLVD.
DALLAS TX

To be and appear before the <u>CRIMINAL</u> District Court <u>#7</u> of Dallas County, Texas at the courthouse of said

County, in the City of Dallas, on the 7TH day of <u>DECEMBER</u> , 20 12 , at 9:00 o'clock <u>A.</u> M., Then and there to

testify as a witness in behalf of the <u>DEFENDANT</u> in a criminal Action pending in said court, wherein THE STATE

OF TEXAS is Plaintiff, and <u>JAMES GARFIELD</u> BROADNAX, Defendant No. F08-24667-Y

**DUECES TECUM (IF APPLICABLE)**        ☐ NOT APPLICABLE
and that he bring with him and produce in said Court, at said time and place,

desired as evidence in said Criminal action, to-wit: in a certain suit pending in said court.

and there remain from day to day and from term to term until discharged by the Court
HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

**OUT OF COUNTY (IF APPLICABLE)**        ☒ NOT APPLICABLE
A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as
Fines and costs in other criminal cases.

WITNESS MY OFFICIAL SIGNATURE, THIS 30th day of NOVEMBER , 20 12
GARY FITZSIMMONS

Clerk, District Courts
Dallas, County Texas

By _D. SANCHEZ_      Deputy

---

NO. F08-24667-Y

215

<u>CRIMINAL</u> DISTRICT COURT #7
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS
VS.

JAMES GARFIELD BROADNAX

CAPITAL MURDER FEL

SUBPOENA

ISSUED
This <u>30th</u> day of NOVEMBER, 20 <u>12</u>
GARY FITZSIMMONS

Clerk, District Courts
Dallas County, Texas
By <u>D. SANCHEZ</u> Deputy

ATTORNEY:

LYDIA BRANDT
972-699-7020

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. RIVERFRONT BLVD.
DALLAS, TEXAS 75207

*received by Lt. Brown*

NOV 3 0 2012 *at 2:37 P.m.*

*TO: Michael J. Sandlin*
*[illegible] rice Jenkins*

Produce all correspondence (by way of example but not limitation, emails, telephone messages, faxes, letters) from the [insert Dallas Sheriffi's office, DA, DPD] to any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision),

AND ALSO from any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision) to the [insert Dallas Sheriffi's office, DA, DPD] that pertains to each of the following individuals/defendants:

Menager, Chloe, Dallas County Court Cause No. F12-59888
Broadnax, James, Dallas County Court Cause No. F08-24667-Y
Cummings, Demarius, Dallas County Court Cause No. F08-24828
Davis, Franklin, Dallas County Court Cause No. F12-12630
Jones, Justin, Dallas County Court Cause No. F12-61728
Payne, Charles, Dallas County Court Cause No. F09-50173, F09-50174, F09-50175
Pettigrew, Gary Wayne,Dallas County Court Cause No. F10-00854-Y, CDC #7
Sparks, Robert, Dallas County Court Cause No.F08-01020

216

IN THE
TEXAS COURT OF CRIMINAL APPEALS
and
CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TX

|  |  |  |
|---|---|---|
| EX PARTE JAMES BROADNAX, | ) ) ) ) | |
| APPLICANT | ) ) ) ) | Writ Case No. AP-76,207 Trial Ct. # F08-24667-Y |

## MOTION FOR COURT-ORDERD DISCOVERY
## FOR COURT-ORDER BRADY MATERIAL FROM DALLAS DA
## &
## FOR CONTINUANCE OF THE EVIDENTIARY HEARING[1]

Applicant, JAMES BROADNAX, pursuant to Section 9 of Article 11.071 of the Texas Code of Criminal Procedure, asks this court for an order of discovery of evidence, as more particularly described below, and a reasonable time to conduct that discovery.

Currently the court has set a one-day evidentiary hearing to be held December 7, 2012. Mr. Broadnax also requests that if the discovery proves fruitful, that the court allow him one or more additional days for the evidentiary hearing beyond the December 7, 2012 hearing, so that he can bring forth his proof.

As ground therefore, Mr. Broadnax would show as follows:

---

[1]  Mr. Broadnax does not waive his attorney client privilege or work product privilege when referring specifically to certain facts that are necessary to show that court-ordered discovery is required to develop the facts of his claim.

217

## I.

## THE *BROADNAX* CLAIMS

Claims 1, 2, and 3 are premised on Mr. Broadnax assertion that he was deprived of his Sixth Amendment right to counsel with respect to the media interviews which took on June 23, 2008, while he was incarcerated in the Dallas County Jail (formally known as the Lew Sterret Justice Center). Mr. Broadnax contends that these media interviews were sufficiently solicited, encouraged, and coordinated with the Texarkana police, the Garland police, the Dallas Police, and the Dallas County Sheriff's Office so as to make the persons conducting the interviews agents of the State of Texas for purposes of the Sixth Amendment right to counsel, and to make the interviews a critical stage of the proceedings. Because Mr. Broadnax' right to counsel attached no later than June 21, 2008 he was entitled to the assistance and presence of counsel with respect to and during the June 23, 2008 media interviews.

### Preliminary Facts

Stephen Swan and Matthew Butler were murdered around 1:00 a.m. on June 19, 2008, in Garland, Texas. Mr. Broadnax and his codefendant, Damarius Cummings, were initially arrested in connection with the murders and taken to jail in Texarkana, Texas, around midnight on June 19, 2008.

On June 20, 2008, Mr. Broadnax and Mr. Cummings were transported from the Texarkana jail to the Garland City jail. (Vol 41:100). When he was in the Garland jail, Mr. Broadnax was advised of his right to counsel, and invoked that right. (Vol 41:48). Mr. Cummings admitted involvement in the murders and implicated Mr. Broadnax.

On June 21, 2008, around 2:51 am, Mr. Broadnax was booked into Dallas County Jail.

2

218

(Exhibit G:    Broadnax Book-in Dallas County Jail; State Hab. App. Exhibit 3). About two hours later, he was taken before a Dallas County Magistrate and arraigned at 5:45 am. (Def Exhibit 9). In the presence of one or more Dallas County jailers, the Magistrate Judge advised Mr. Broadnax of his right to counsel. Mr. Broadnax completed the Defendant's Affidavit of Indigence, and in writing invoked his right to counsel. (Def Exhibit 9).

The Dallas County jail records show that Mr. Broadnax had been placed in the psych unit of the jail where he was evaluated on the morning of June 23, 2008, by Psych assessor, Jason Varghese, and psychiatrist Dr. H. Mirmesdagh. Mr. Broadnax was diagnosed as being psychotic due to polysubstance abuse. (RR 43:74; 50:85-86). Mr. Broadnax's medical records also reflect that before his arrest, and on June 23, 2008, Mr. Broadnax had been having auditory and visual hallucinations and was delusional, and that he was on "whack" [the street term for PCP] at the time of the commission of the charged offense. (RR 50:86-87). PCP is a substance that can cause psychosis even a month after its ingestion. (RR 50:89-92). Mr. Broadnax was 19 years old at the time.

At least as early as Friday, June 20, 2008, at 7:38, while Mr. Broadnax was still in the Garland City Jail and before he was taken to Dallas County Jail, WFAA TV Channel 8, had faxed a letter to Kim Leach. Ms. Leach was the Public Information Officer for Dallas County Sheriff's Department, which was responsible for the inmates in the Dallas County Jail. She was responsible for transmitting the WFAA Channel 8 letter to Mr. Broadnax. The letter recites that WFAA "would like to request an on-camera interviews with you [Mr. Broadnax], which would "allow you to tell our viewers your side of the story" about the recent incarceration because "it is important to hear your side." (Vol 41:18-21; State's Exhibit 16; State Hab. App. Exhibit 7).

Likewise on Friday, June 20, 2008, while Mr. Broadnax was still in the Garland City Jail and

3

219

before he was taken to Dallas County Jail, Fox 4, KDFX Television faxed a letter to Kim Leach, so she could transmit the letter to Mr. Broadnax. Fox 4 also requested an interview stating that Mr. Broadnax "will be given this opportunity to tell your side of the story," and that if he was interested, "please notify the Sheriff's department as soon as they deliver this letter." (State Hab. App. Exhibit 7).

The language in the media letters is substantially similar to, or verbatim, from the language of a sample media request letter, drafted by and made a part of the policy and procedures of the Dallas County Sheriff's Office. Exhibit A: Dallas Sheriff's Office Inmate Interview Requests from the Media, 2 pages.

Ms. Leach forwarded these requests to the jail on Monday morning, June 23, 2008 at 10:08 am. The media outlets have refused to disclose specific information about how they became aware of Mr. Broadnax circumstances so quickly after his arrest an incarceration in the Garland jail, and even before his availability for such media interviews in the Dallas County jail.

The Dallas County jailers knew about Broadnax mental condition and that his request for counsel would result in appointment of counsel in the near future. The Dallas County jailers expedited the requests for media interviews with Mr. Broadnax, thereby ensuring that the interviews took place before counsel was appointed. The Dallas County Sheriff's Office's handling of media requests for interviews with capital defendants at least as of the date of Mr. Broadnax's incarceration and continuing to the current day, demonstrates a policy and practice of soliciting, encouraging and facilitating such media interviews to ensure that they take place before defense counsel has access to the defendant.

Indeed, Janet Cook counsel for capital defendant Charles Payne, wrote a letter of complaint

4

to Sheriff Lupe Valdez, which recites in pertinent part:

> I was denied access to my client; my client was denied access to his attorney and investigator by the Sheriff's Office in a timely manner. I believe it was done intentionally to allow Fox news to get in and interview a potential death penalty defendant. The interview would not have happened without the Sheriff's office aiding Fox 4 to have access to my client and denying me access. My investigator and I were there prior to Fox 4's arrival and were kept waiting longer than 15 minutes after they were taken upstairs.

Exhibit C:  Janet Cook, Assistant Public Defender letter and Affidavits of Fact of Janet Cook and of Investigator Elizabeth Christian (admitted as Defense Exhibit 8, in the July 27, 2009 pretrial hearing, p. 89).

The media interviews of Mr. Broadnax occurred around 1:00 pm on June 23, 2008, (Vol 41:22, 24, 32), before his counsel, Brad Lollar, was appointed on June 24, 2008. The media interviews of Mr. Broadnax focused on three main topics:

- Did you do it?
- Are you remorseful?
- What punishment do you deserve?

In Mr. Broadnax's case, as with numerous other defendants in Dallas County, the video interview by the media were obtained by the prosecution and introduced at trial and published to the jury. The prosecutor referred to the videotapes in opening statement. (RR 45:56-58). Then the prosecutor presented its evidence in guilt/innocence phase on August 10 & 11, 2009. (RR 45, 46, 47). As promised in the opening statement, the prosecutor played the media interviews of Mr. Broadnax on each day. (August 10, 2009 – RR 45:125 – Channel 11; RR 45:277 – Channel 5); (August 11, 2009 – RR 46:230 – Channel 4). The videotapes became the focal point on the future dangerousness special issue in the punishment phase. (RR 50:212-213; (RR 52:248-249; RR 53: 68-69, 74).

5

221

Even the Texas Court of Criminal Appeals in its direct appeal opinion relied primarily on the television interviews to support a finding of future dangerousness. Slip Op. *Broadnax v. State*, slip op. No. AP,76, 207 (Tex. Crim. App. 2011) *H. Sufficiency of the Evidence – Future Dangerousness.*

## Texas Is Among a Minority of States, Who Fail to Appoint Counsel at the Time of Arraignment

In *Rothgery v. Gillespie County*, TX, 554 U.S. 191, 194 (2008), the Supreme Court held that the Sixth Amendment right to counsel attaches at the Texas article 15.17 hearing (the "initial appearance" or "arraignment"). In its Answer, the State of Texas concedes that the Sixth Amendment rights of Mr. Broadnax attached at arraignment. Answer, p. 15 ("The State does not dispute that attachment occurs when applicant [Broadnax] went before the magistrate on June 21, 2008.").

There are 43 jurisdictions that appoint counsel "before, at, or just after initial appearance." *Rothgery*, 554 U.S. at 205, n.14. Texas is not one of them – a position that is contrary to the ABA's position "that counsel should be appointed 'certainly no later than the accused's initial appearance before a judicial officer.'" *Rothgery*, 554 U.S. at 205. *Rothgery* noted that "to the extent these States [including Texas] have been denying appointed counsel on the heels of the first appearance, they are a distinct minority," and added that the Court had not been "offered an acceptable justification for the minority practice" in Texas. *Rothgery*, 554 U.S. at 205.

6

222

### The Gap: 1 Working Day

Before the 2002 amendment to the Texas Fair Defense Act [TEX. CODE CRIM. PROC. Art. 1.051( c)], capital defendants were appointed counsel almost simultaneously with arraignment. Capital defense counsel who agreed to accept appointment were required to go to the jail to see the capital defendant within 30 minutes to an hour of the call, whether it was at night or on a Saturday or Sunday or holiday.

The 2002 amendment incorporated a "1 Working Day Rule" into the Texas Fair Defense Act, TEX. CODE CRIM. PROC. Art. 1.051( c) (requiring appointment of counsel within 1 working day from the date the district court is assigned the case). As a result, capital defense counsel can be appointed hours, days, weeks, even months after arraignment and written request for counsel. This is because "1 Working Day," does not include a Saturday, Sunday, or holiday. And worse, in Dallas County, the clock does not begin until the capital case finds its home in the "assigned" court. As a result of Dallas County court assignment procedures, Mr. Broadnax was not appointed counsel until June 24, 2008, four days after he was arrested and taken before a judge in Texarkana, two full days after his arraignment before a magistrate in Dallas County and one day after the media interviews took place on June 23, 2008.

### <u>The Media Interviews – A Critical Stage</u>

The media interviews of potential capital defendants, routinely take place in the Dallas County jail promptly after arrest and book-in, but before counsel is appointed or has access to the defendant. The media interviews are a "critical stage" in the legal proceedings – a post attachment proceeding at which counsel must be present, unless the right to counsel has been validly waived.

7

*See Rothgery*, 554 U.S. at 211.

The Dallas Sheriff's Office (DSO) works in tandem with the media to make interviews with capital defendants happen. DSO has a procedure and a form letter that DSO created especially for the media, which they use to pattern a request to interview the capital defendant. The DSO form letter reads:

> Channel "?" requests an interview with you regarding the charges that have been filed against you. We would like to give you an opportunity to tell your side of the story. If you are interested, please sign below so that the Sheriffs Department can notify us as soon as they receive your response about your situation."

Exhibit A: Dallas Sheriff's Office Inmate Interview Requests from the Media, 2 pages. The media outlets based their requests to interview Mr. Broadnax on this or a comparable DSO form. Exhibit B: Broadnax Media Requests (Fox 4 News, WFFA Channel 8).

The DSO procedure instructs the media to fax or email the media letter request. Although the DSO procedure recites that "your request will be forwarded to the inmate when time permits," almost always, the DSO provides unbridled, quick access of the media to the capital defendant. Indeed, the DSO has deliberately delayed capital defense counsel's access to her client, so that the Fox 4 employees (media) could interview the capital defendant, such as Mr. Payne. *See supra State v Broadnax*, July 27, 2009 pretrial hearing at p.86, Defense Exhibit 8.

In Mr. Broadnax's case, the media interview requests received from the Dallas County Sheriff's Officer contained a faxed time/date stamp of 10:08 am, June 23, 2008 (bottom). State App Exhibit 6: Business Records Affidavit, and Sheriff's Dept Records (Media Requests).[3] During the

---

[3] The fax time/date stamp at the top shows a date of June 20, 2008 at 7:38. Mr. Broadnax was not at the Dallas County jail at that time; he was in the Garland facility. *See* Exhibit G: Broadnax (from State Hab. App. Exhibit 3: Business Records Affidavit, and Sheriff's Dept Records (Dallas County Book In). *See also* RR 39:14-15. Even as early as June 20, 2008, Mr.

8

suppression hearing on the media interviews, Steve Pickett, the first reporter to interview Mr. Broadnax was not asked what time he had conducted the interview. However, the record does reflect that the second interview of Mr. Broadnax by Channel 8 was conducted in the early afternoon about 12:30 pm or 1:00 pm. (RR 43:49, 55).

Dallas County law enforcement consistently gives the media quick and unfettered access to capital defendants prior to the appointment of defense counsel. The quick access of the media to interview a capital defendant, before the capital defendant has been appointed counsel, are occurring with increasing frequency in Dallas County. Mr. Broadnax alleges, upon information and belief, that Dallas County law enforcement solicit and encourage and facilitate interviews of capital defendants by local media outlets as a means of obtaining incriminating statements from defendants who have asserted the right to counsel, or failed to incriminate themselves in statements to law enforcement, or as insurance if the defense succeeds in suppressing a law-enforcement-obtained confession.

In *Moulton*, the Supreme Court held:

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. See *Henry*, 447 U.S., at 276, 100 S.Ct., at 2189 (POWELL, J., concurring). However, *knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity.* Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between

---

Broadnax had requested appointment of counsel when he in the Garland jail.

9

225

,

the accused and a state agent.

*Maine v. Moulton*, 474 U.S. 159, 176 (1985).

The State is, and has been, exploiting the 1 Working Day Rule by using these media interviews as an opportunity to confront Mr. Broadnax, and other similarly situated capital defendants, without counsel being present. In Mr. Broadnax's case, the media interviews were a critical stage in the legal proceedings and events that "so prejudice[d] the outcome of the defendant's prosecution that, as a practical matter, [Mr. Broadnax had to] be represented ... in order to enjoy genuinely effective assistance of counsel." *Rothgery v. Gillespie County*, TX, 554 U.S. 191, 217 (2008).

## II.

## MEDIA & DISCOVERY REQUEST

Upon information and belief, law enforcement officials act in tandem with the media; such that those media interviews of the capital defendant culminate in admissions-against-interest, which become part of the evidence in the prosecution's case-in-chief.

Mary Burdette, the mitigation investigator in this state habeas proceeding, conducted an email interview of a former Ft. Worth Star Telegram reporter, Diane Hunt. Ms. Hunt had been assigned to cover the criminal courts. Ms. Burdette asked Ms. Hunt how the media outlet initially learns of a capital offense and the defendant involved. Ms. Burdette attests that Ms. Hunt stated:

> 5.      ... that other reporters are assigned to the 'jail beat' and keep tabs on what is happening regarding arrests and charges. These reporters utilize a variety of means in order to acquire this information but includes use of contacts and relationships with law enforcement who sometimes give the reporters a 'heads up' if a big arrest is about to be made or has been made. *These are*

10

226

*relationships developed over the course of time between media and law enforcement as part of a reporter's professional efforts to report the news.*

Exhibit D: Affidavit of Burdette, dated December 1, 2012.

Mr. Broadnax seeks discovery and a continuance of the evidentiary hearing because he has attempted to, but was blocked, in his efforts to investigate the communications between the media and law enforcement in his case.

### A.    The Media Investigation

In December, 2011, Mr. Broadnax had attempted to learn about the interactions between the media and law enforcement in his case through the efforts of his investigator, Mr. Clifton Jenkins. Mr. Jenkins attempted to communicate with employees at Channels 4, 5, 8, and 11 to learn the media sources for Mr. Broadnax's case.

The employees of Channels 4, 5, 8, and 11 were unwilling to disclose that information. The media asserted First Amendment privilege. Mr. Cliff Jenkins attested that in December 2011, he had attempted to communicate with both WFAA Channel 8 and KDFW Fox 4, but both media outlets declined to provide any information. *See* Exhibit 24 to State Habeas Application: Affidavit of Jenkins, dated December 16, 2011, para. 4. When he contacted employees of Channel 5 and 11, the information he was provided was very general, despite having asked about Mr. Broadnax's case in particular. *Id.*

Mr. Jenkins tried again on November 19, 2012 to contact the media to learn about how they learned of Mr. Broadnax's case, Mr. Jenkins attests that both Channels 5 and 11 were unwilling to provide any more information than they had in December 2011, and referred Mr. Jenkins to their

11

227

legal counsel. Exhibit E: Affidavit of Clifton Jenkins, dated November 26, 2012.

Because Channels 5 and 11 had shown some willingness in December 2011 to engage in some communication, undersigned counsel, Brandt, attempted to speak with the assignment editors at Channels 5 and 11 about Mr. Broadnax's case. However, those employees referred Brandt to the attorneys representing the particular media outlet. Brandt's affidavit recites:

4.    On November 19, 2012, I called Steven Wright, the assignments editor at NBC Channel 5. I identified my self as an attorney who represented Mr. Broadnax, who was filmed by Channel 5. *I asked Mr. Wright if he would be willing to speak with me. Mr. Wright said no.* I asked Mr. Wright if he was, or could refer me to the assignments editor who handled the Broadnax case. Again he said no. Mr. Wright said he would transfer me back to the operator who could put me through to the media's attorneys. When Mr. Wright returned me to the operator, Sharla? (spelling), she said there were no attorneys on premises and that she did not know who the media's attorneys were.

5.    On November 19, 2012, I called Mike Pool, the assignments editor at Channel 11. I identified my self as an attorney who represented Mr. Broadnax, who was filmed by Channel 11. *I asked Mr. Pool if he would be willing to speak with me. Mr. Pool said no, that he was not authorized to speak on behalf of station.* Mr. Pool immediately said I would have to speak with the media's attorneys in New York, Andrew Siegel, 212-975-4480. Mr. Pool said he had given Mr. Cliff Jenkins, the fact investigator in Broadnax, this same information.

Exhibit F: Affidavit of Lydia Brandt, November 19, 2012.

Mr. Broadnax has also sought this information in other ways, as for example, by records requests for communications to/from the media outlets and (1) law enforcement, (2) the Dallas District Attorney's Office, and (3) the Dallas Police Department. Those requests are currently outstanding. *See Brady* section, *infra.*

12

228

## III.

## DEFENDANTS & DISCOVERY REQUEST

Upon information and belief, Mr. Broadnax asserts that jailers encourage the defendants to talk to the media. To further investigate this, Brandt sought to speak with the defendants who had been identified to her as having been interviewed by the media. Those defendants include:

1. Cummings, DeMarius, F08-24628
2. Davis, Franklin, F12-12630
3. Escamilla, Licho, F01-59398
4. Jones, Justin, F12-61728
5. Menager, Clohe, F12-59888
6. Palmer, William, F12-00445 and F12-51648
7. Payne, Charles, F09-50173, F09-50174, F09-50175
8. Pettigrew, Gary Wayne, F10-00854-Y
9. Sparks, Robert, F08-01020

Mr. Broadnax had made a good faith attempt to learn from these various defendants their version of how the media came to learn of them, and the course of communications that ultimately resulted in the videotaped interviews. However, the investigation was stymied either because counsel refused to allow her to interview the defendant, or the defendants refused to communicate with her.

*See e.g.,* Redacted Email dated 11/20/12 6:38 PM from Karo Johnson to Lydia Brandt ("lydia, at this time, I respectfully decline your request to interview palmer or davis. karo."); Email dated 11/15/12 9:09 PM from Mary Margaret Penrose to Lydia Brandt ("I cannot agree to give access to Mr. Escamilla or to encourage him to provide an affidavit in this case. I cannot compromise his interests as his case is currently pending before the Fifth Circuit Court of Appeals."); In a November 19, 2012 telephone message, Paul Brauchle said he had several clients who were interviewed, but did not return any further phone calls to provide additional detail; Email dated 11/19/12 4:09 PM

13

229

from Catherine Bernhard to Lydia Brandt ("You do NOT have my permission to interview my client Clohe Menager."); Mr. Pettigrew did not return undersigned counsel's phone calls; Email dated 11/22/12 01:59:50 PM from Seth Kretzer to Lydia Brandt (Although Mr. Kretzer agreed, he stated that he wanted to be present for an interview of his client, Charles Payne, and was not available until after December 7, 2012 because he working on Mr. Payne's federal habeas petition at this time. Mr. Kretzer did not provide any information about a definite date on which he would be available).

## IV.

## *BRADY* OBLIGATION OF THE STATE OF TEXAS
## MEDIA &
## DALLAS DISTRICT ATTORNEY, DALLAS SHERIFF'S OFFICE, DALLAS POLICE DEPARTMENT

Mr. Broadnax has made several requests for documentation, which are still outstanding. Among other things, Mr. Broadnax issued a subpoena to the Dallas County Sheriff's Office on November 15, 2012. On November 23, 2012, the Sheriff's Office responded with 3 inches of paper at a cost of $64.10. It was not responsive to the request. Among other things, Mr. Broadnax had specifically requested the media request interview forms filed by each news station that was signed by defendants who either consented or declined a media interview. The defendants had been identified by name, book in number, case number, and entry date. Mr. Broadnax made a follow-up email request on December 3, 2012.

On November 30, 2012, Mr. Broadnax also made a request to:

the Dallas Police Department;
the Dallas District Attorney's Office; and
the Dallas Sheriff's Department

14

230

to produce all correspondence (by way of example but not limitation, emails, telephone messages, faxes, letters) from the Dallas Sheriff's Office, Dallas District Attorney's Office, and the Dallas Police Department *to* any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision), AND ALSO *from* any media outlet (including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo, Univision) to the Dallas Sheriff's Office, Dallas District Attorney's Office, and the Dallas Police Department that pertains to each of the following individuals/defendants, who had been identified as having been interviewed prior to counsel being appointed or on the heels of appointment:

1. James Broadnax, # F08-24667-Y
2. Cummings, DeMarius, F08-24628
3. Davis, Franklin, F12-12630
4. Escamilla, Licho, F01-59398
5. Jones, Justin, F12-61728
6. Menager, Clohe, F12-59888
7. Palmer, William, F12-00445 and F12-51648
8. Payne, Charles, F09-50173, F09-50174, F09-50175
9. Pettigrew, Gary Wayne, F10-00854-Y
10. Sparks, Robert, F08-01020

The requests are outstanding.

On December 4, 2012, the State of Texas filed a motion to quash the subpoena served on the Dallas District Attorney's office.

The State of Texas has a *Brady* obligation to fulfill these requests. The State has asserted in its Answer that the media is not a state agent. Answer at p.16. It relies solely on this court ruling at the pre-trial suppression hearing. Upon information and belief, the State of Texas has not done any due diligence to discover if in fact there are and have been communications between law enforcement and the media that prove the court ruling in error.

This documentation may show state action on the part of state officials acting in tandem wit the media. *Brady v. Maryland*, 373 U.S. 83, 84 (1963). Upon information and belief, the State of Texas has not made any good faith efforts to search for and produce this *Brady* material.

15

231

# IV.

## DISCOVERY REQUESTS
## &
## CONTINUANCE OF THE EVIDENTIARY HEARING

Accordingly, Mr. Broadnax seeks the following from this court:

### A.    Request #1 – Media

Mr. Broadnax seeks an order from this Court that Channels 4, 5, 8, and 11, who interviewed

Mr. Broadnax in the gap between arraignment and appointment of counsel, identify and produce for

deposition duces tecum:

employees of Channels 4, 5, 8, and 11, who had direct contact with law enforcement, and by
which the media initially learned of:

1.    the criminal offense conduct of Mr. Broadnax in Garland, TX,
2.    Mr. Broadnax's arrest in the following days in Texarkana, TX,
3.    Mr. Broadnax's transfer to Garland, TX, and
4.    Mr. Broadnax's transfer to the Dallas County jail.

### B.    Request #2 – Defendants

Mr. Broadnax seeks an order from this Court to depose the defendants identified below:

1.    Cummings, DeMarius, F08-24628
2.    Davis, Franklin, F12-12630
3.    Escamilla, Licho, F01-59398
4.    Jones, Justin, F12-61728
5.    Menager, Clohe, F12-59888
6.    Palmer, William, F12-00445 and F12-51648
7.    Payne, Charles, F09-50173, F09-50174, F09-50175
8.    Pettigrew, Gary Wayne, F10-00854-Y
9.    Sparks, Robert, F08-01020

16

232

### C.    Request #3 – *Brady* Obligation of the State of Texas

Mr. Broadnax requests that this Court enter an order requiring that the State of Texas satisfy

its *Brady* obligation to produce all correspondence (by way of example but not limitation, emails,

telephone messages, faxes, letters) from the Dallas Sheriff's Office, Dallas District Attorney's Office,

and the Dallas Police Department *to* any media outlet (including by way of example, Channels 4, 5,

8, 11, 21, 33, Dallas Morning News, Telemundo, Univision), AND ALSO *from* any media outlet

(including by way of example, Channels 4, 5, 8, 11, 21, 33, Dallas Morning News, Telemundo,

Univision) to the Dallas Sheriff's Office, Dallas District Attorney's Office, and the Dallas Police

Department that pertains to each of the following individuals/defendants, who had been identified

as having been interviewed prior to counsel being appointed or on the heels of appointment:

1. James Broadnax, # F08-24667-Y
2. Cummings, DeMarius, F08-24628
3. Davis, Franklin, F12-12630
4. Escamilla, Licho, F01-59398
5. Jones, Justin, F12-61728
6. Menager, Clohe, F12-59888
7. Palmer, William, F12-00445 and F12-51648
8. Payne, Charles, F09-50173, F09-50174, F09-50175
9. Pettigrew, Gary Wayne, F10-00854-Y
10. Sparks, Robert, F08-01020

### D.    Request #4 – Continuance of the Evidentiary Hearing

Mr. Broadnax detailed his discovery requests. Currently the court has set a one-day

17

evidentiary hearing to be held December 7, 2012. Mr. Broadnax also requests that if the discovery and/or *Brady* search proves fruitful, that the court allow him one or more additional days for the evidentiary hearing beyond the December 7, 2012 hearing, so that he can bring forth his proof.

A proposed order has been attached for the Court's convenience.

Date:  December 6, 2012

*Lydia M.V. Brandt*

_____
Lydia M.V. Brandt
Texas Bar No. 00795262
THE BRANDT LAW FIRM, P.C.
P.O. Box 850843
Richardson, Texas   75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR BROADNAX

## CERTIFICATE OF SERVICE

I certify that on December 6, 2012, I hand delivered a copy of the foregoing to:

Attn: Amy Murphy, Assistant District Attorney
Capital Writs – Appellate Section
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, TX 75207

*Lydia M.V. Brandt*

_____
Lydia M.V. Brandt

cc:    Mr. James G. Broadnax
        #999-549
        Polunsky Unit, TDCJ
        3872 FM 350 South
        Livingston, TX 77351-8580

18

234

# EXHIBITS

Exhibit A:    Dallas Sheriff's Office Inmate Interview Requests from the Media, 2 pages

Exhibit B:    Broadnax Media Requests (Fox 4, WFFA Channel 8)

Exhibit C:    Janet Cook, Assistant Public Defender letter and Affidavits of Fact of Janet Cook and of Investigator Elizabeth Christian

Exhibit D:    Affidavit of Burdette, dated December 1, 2012

Exhibit E:    Affidavit of Clifton Jenkins, dated November 26, 2012

Exhibit F:    Affidavit of Lydia Brandt, November 19, 2012

Exhibit G:    Broadnax Book-in Dallas County Jail (State Hab. App. Exhibit 3)

19

235

CAUSE NO.  F08-24667-Y

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL COURT |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES GARFIELD BROADNAX | § | NO. 7 |

### AFFIDAVIT OF RECORDS

Before me, the undersigned authority, personally appeared **ELIZABETH LUTTON**, for the **Dallas Sheriff's Office ("DSO")** who, being by me duly sworn, deposed as follows:

My name is **ELIZABETH LUTTON**. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am a custodian of the records of the **Dallas Sheriff's Office ("DSO")**, Dallas County, Texas. Attached hereto are **2 pages** of records from **DSO**. These said **2 pages** of records are kept by **Dallas Sheriff's Office** the regular course of business of **DSO** for an employee or representative of **DSO**, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such records; and the records were made at or near the time or reasonably soon thereafter. The record attached hereto is the original or exact duplicate of the original.

AFFIANT

SWORN AND SUBSCRIBED TO before me on this the ____ day of ____, 2012,

[SEAL]  JEANETTE F. BROWN
Notary Public
STATE OF TEXAS
My Comm. Exp. Feb. 07, 2014

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

MY COMMISSION EXPIRES: 02-07-2014

236

# INMATE INTERVIEW REQUESTS FROM THE MEDIA

Those members of the media who wish to request an interview with an inmate currently incarcerated in the Dallas County jail should write a short letter to the inmate indicating:

1. The inmate's full name, BNO (booking number), jail tower, cell number and D.O.B.
2. Your name and media affiliation
3. The purpose of your interview request
4. Please leave a space with a signature line for the inmate to sign yes or no to your request and a place for the officer to sign as a witness

Your request can be e-mailed to the Media Relations Unit at sheriffmedia@DallasCounty.org or faxed to (214) 653-2892.

If e-mailed or faxed, your request will be forwarded to the inmate when time permits. An inmate must be assigned housing for the request to be presented. When an answer is received, you will be notified by return e-mail or phone call from the Media Relations Unit.

*Inmates will not be coached or coerced into granting an interview for any reason.

*If approved by the inmate, interviews are only allowed between 8:00a.m. – 4:30p.m. M-F.

*Interviews may be denied based upon jail staffing, emergency conditions or the inmate's physical or mental condition at the time of the request.

*No interviews will be scheduled during court appearances or medical appointments.

If you need further information, please contact the P.I.O.

Carmen Castro
Public Information Officer/Media Relations
Dallas County Sheriff's Department
133 N. Industrial Blvd., LB-31
Dallas, Texas 75207-4313

237

# media logo on this request form

**MEDIA INMATE INTERVIEW REQUEST**

Date:   May 1, 2010

Name:   Smith, John

DOB:   1960-08-05

BNO:   09079432 (this is the inmate's booking number)

Jail Location:   North Tower

Tank Location:   2W 06

**Info above can be found by visiting
http://www.dallascounty.org/jaillookup/search.jsp It also helps as a guide for your
reporter to know what tower the interview will take place in)**

Mr. Smith,

Channel "?" requests an interview with you regarding the charges that have been filed against
you.  We would like to give you an opportunity to tell your side of the story.  If you are
interested, please sign below so that the Sheriff's Department can notify us as soon as they
receive your response.

Thank you,

Name of reporter

_____

Yes, I would like to be interviewed.

_____

No, I would not like to be interviewed.

_____

Officer/Badge# (Witness)

**Please fax back to the P.I.O. Carmen Castro at 214-653-2892

238

CAUSE NO. F08-24667-Y

THE STATE OF TEXAS          CRIMINAL DISTRICT COURT #7

v.

JAMES G. BROADNAX          DALLAS COUNTY, TEXAS

## AFFIDAVIT

Before me, the undersigned authority, personally appeared ___Elizabeth Lutton___, who, being by me duly sworn, deposed as follows:

My name is Elizabeth Lutton, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am a custodian of the records of **Dallas Sheriff's Office (DSO), Dallas County, Texas.** Attached hereto are **4 pages** of records from **DSO**. This said **4 pages** of records are kept by **DSO** in the regular course of business, and it was the regular course of business of **DSO** for an employee or representative of **DSO**, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the __20__ day of June , 2011___.
My commission expires: ___9/13/2011___

_____
Notary Public, State of Texas
Notary's printed name:
Roberta Denise Whited



WFAA NEWS          Fax:9999999999          Jun 20 2008   7:38   P.05

5E

*JAmes Broadnax*
*Bro 080417374*
*West Tower*
*03 P 05*

Mr. Broadnax:

On behalf of WFAA TV channel 8 , I would like to request an on-camera interview with you.

This would allow you to tell our viewers your side of the story regarding your recent incarceration. We firmly believe in telling both sides of a story and understand it is important to hear your side.

Thank you for your time and consideration

Carlos Rosales
WFAA Assignment editor
214-977-6213

*Yes, James Broadnax*

*No,*

*DSD Spratling #5795*
*Officer/Badge# witness*


# KDFW Fox Television

### FOX TELEVISION STATIONS, INC. ● A UNIT OF FOX INC.

June 20, 2008

James Gerdield Broadnax        B NO O8O47374
Lew Sterrett                           WEST Tower
                                         O3 POS

James,

KDFW-TV Fox 4 would like to request an interview with you regarding the charges that have been filed against you. We are hoping by speaking with you, you will be given this opportunity to tell your side of the story. If you are interested in talking with KDFW-TV Fox 4, please notify the Sheriff's department as soon as they deliver this letter.

Yes _____

No _____

Thank you for your consideration,

Gregg Millett
Assignments Editor
KDFW Fox 4 News
214-720-3155

_____
OFFicer/Badge # (witness)

Fax to P.I.O. Kim leach
214-653-2852

400 N. Griffin Street
Dallas, Texas 75202
Tel 214.720.4444

241

Kimberlee Leach - Broadnax.doc

Page :



# KDFW Fox Television
FOX TELEVISION STATIONS, INC. ● A UNIT OF FOX INC.

June 20, 2008

James Gerdield Broadnax
Lew Sterrett

*BNO 08047374*
*WEST Tower*
*O3 POS*

*1:20*

James,

KDFW-TV Fox 4 would like to request an interview with you regarding the charges that have been filed against you. We are hoping by speaking with you, you will be given this opportunity to tell your side of the story. If you are interested in talking with KDFW-TV Fox 4, please notify the Sheriff's department as soon as they deliver this letter.

Yes: *James Broadnax*

No _____

Thank you for your consideration,

Gregg Millett
Assignments Editor
KDFW Fox 4 News
214-720-3155

*Spratting #5795*
*Officer/Badge # (Witness)*

*Fax to P.I.O. Kimbeach*
*214-653-2852*

400 N. Griffin Street
Dallas, Texas 75202
Tel 214.720.4444

WFAA NEWS                    Fax:9999999999              Jun 20 2008    7:38      P.05

*JAMES Broadnax*
*BRW 08047374*
*West Tower*
*03 # 05*

Mr. Broadnax:

On behalf of WFAA TV channel 8 , I would like to request an on-camera interview with you.

This would allow you to tell our viewers your side of the story regarding your recent incarceration. We firmly believe in telling both sides of a story and understand it is important to hear your side.

Thank you for your time and consideration

Carlos Rosales
WFAA Assignment editor
214-977-6213

*Yes,*

*No,*

*Officer/Badge# witness*

243



# Dallas County
## Public Defender's Office



January 14, 2009

Sheriff Lupe Valdez
Dallas County Sheriff's Office
133 N. Industrial, LB 31
Dallas, TX 75207

RE: Charles Patrick Payne
Book In Number: 09001412

Dear Sheriff Valdez:

I was denied access to my client; my client was denied access to his attorney and investigator by the Sheriff's Office in a timely manner. I believe it was done intentionally to allow Fox news to get in and interview a potential death penalty defendant. The interview would not have happened without the Sheriff's office aiding Fox 4 to have access to my client and denying me access. My investigator and I were there prior to Fox 4's arrival and were kept waiting longer than 15 minutes after they were taken upstairs.

My Investigator, Christian Smith, and I went to Lew Sterrett West Tower to visit with our client Charles Patrick Payne on Tuesday January 13, 2009 about noon. When we arrived we gave our credentials and were told it would be a minute. After a couple of minutes someone from the Sheriff's office media department arrived with a reporter and cameraman from Fox 4 news. The Sheriff's employee walked into the booth looked at our paperwork along with the officers on duty in the booth and they looked at us. The media employee then walked out of the booth and took the Fox 4 employees up to the 3rd floor. My investigator asked if there was a problem and we were told that it would take some time before we were able to see our client due to it being the end of the lunch time and they were picking up trays. At this time, I asked the officers in the booth if the news personnel were going up to talk to my client. I believe it was Officer Salazar that stated he did not know who they were going to interview. We waited and then my investigator asked again if there was a problem. At this point we were told they were waiting on clarification or a phone call from someone. We waited a few more minutes and then asked again what the problem was. At this point they stated they were checking on my investigator's clearance. At this time she asked if they needed her Sterrett Justice Center card in addition to her Dallas County ID and driver's license. They stated they did not need that. Approximately 5 minutes later, my investigator again asked what the problem was and they stated they were waiting to hear back again. My investigator again showed her Sterrett Justice Center card for the second time and he stated that was all they needed and if she had shown that earlier (which she had) they would have let us up to the 3rd floor already. When we arrived on the 3rd floor, we showed our paperwork and they directed us to Booth J. In Booth J my client was being interviewed by the Fox 4 personnel with the Sheriff's office employee present.

The actions of the Sheriff's office violated my client's 6th amendment right to counsel. If

anything like this ever happens again, I will have no choice but to recommend to my client to file a civil rights lawsuit against the Sheriff's Department.

Respectfully,


Janet Cook
Assistant Public Defender
Dallas County, TX


cc: Lynn Richardson
Chief Public Defender
Dallas County, Texas

245



# AFFIDAVIT IN ANY FACT
### THE STATE OF TEXAS
### COUNTY OF DALLAS

BEFORE ME, <u>Eddy Herrera</u>, A Notary Public in and for said County, State of Texas, on this day personally appeared <u>Janet Cook</u> Who, after being by me duly sworn, on oath deposes and says:

January 14, 2009

RE: Charles Patrick Payne
Book In Number: 09001412

On January 13, 2009 I was denied access to my client, Charles Patrick Payne; my client was denied access to his attorney and investigator by the Sheriff's Office in a timely manner. I believe it was done intentionally to allow Fox news to get in and interview a potential death penalty defendant. The interview would not have happened without the Sheriff's office aiding Fox 4 to have access to my client and denying me access. My investigator and I were there prior to Fox 4's arrival and were kept waiting longer than 15 minutes after they were taken upstairs.

My Investigator, Christian Smith, and I went to Lew Sterrett West Tower to visit with our client Charles Patrick Payne on Tuesday January 13, 2009 about noon. When we arrived we gave our credentials and were told it would be a minute. After a couple of minutes someone from the Sheriff's office media department, who I have since learned was Kim Leach, arrived with a reporter and cameraman from Fox 4 news. Ms. Leach walked into the booth looked at our paperwork which is the Request for Inmate Interview that has my client's name and identifies me as his attorney. Then she, along with the officers on duty in the booth, looked over at us. Ms. Leach then walked out of the booth and took the Fox 4 employees up to the 3rd floor. My investigator asked if there was a problem and we were told that it would take some time before we were able to see our client due to it being the end of the lunch time and they were picking up trays. At this point I said to my investigator, I guess it's not a problem for Fox news to go while they are picking up trays. At this time, I asked the officers in the booth if the news personnel were going up to talk to my client. I believe it was Officer Salazar that stated he did not know who they were going to interview. We waited and then my investigator asked again if there was a problem. At this point we were told they were waiting on clarification or a phone call from someone. We waited a few more minutes and then asked again what the problem was. At this point they stated they were checking on my investigator's clearance. At this time she asked if they needed her Sterrett Justice Center card in addition to her Dallas County ID and driver's license. They stated they did not need that. Approximately 5 minutes later, my investigator again asked what the problem was and they stated they were waiting to hear back again. My investigator again showed her Sterrett Justice Center card for the second time and he stated that was all they needed and if she had shown that earlier (which she had) they would have let us up to

246

the 3rd floor already. When we arrived on the 3rd floor, we showed our paperwork and they directed us to Booth J. In Booth J my client was being interviewed by the Fox 4 personnel with the Sheriff's office employee present.

Respectfully,

Janet Cook
Assistant Public Defender

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 14 January 2009 A.D.

_____
Notary   Public ,   State of Texas

247



**Dallas County**
Public Defender's Office

January 13, 2009

Public Information Officer,
Kim Leach
Dallas Sheriff's Office

Please be advised that I am requesting that the media not be allowed to contact my client, Charles Patrick Payne, BIN 09001412.

If you have any questions you may contact me at 214-653-3550 or 214-761-1360.

Sincerely,

Janet Cook
Assistant Public Defender
Dallas County, Texas

---

DLS CO PUBLIC DEFENDER Fax:2148752363

## ** Transmit Confirmation Report **

P.1                                                  Jan 13 2009 03:20pm

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| DALLAS CO. SHERI | Normal | 13.03:19pm | 0'22" | 1 | # O K | Manual |

249

*AFFIDAVIT IN ANY FACT*

THE STATE OF TEXAS

BEFORE ME, BILL GOODWIN

COUNTY OF DALLAS

A Notary Public in and for said County, State of Texas, on this day personally appeared, <u>Elizabeth Christian Smith</u>, who, after being by me duly sworn, on oath deposes and says that I am competent and qualified to make this affidavit and I have personal knowledge of the fact stated herein and they are true and correct:

I.

I further declare that:

My name is E. Christian Smith. I am an investigator with the Dallas County Public Defender's office and I have been appointed to represent Charles Patrick Payne, Book In Number:09001412. On Tuesday January 13, 2009 I went with his attorney, Janet Cook to visit him in the West Tower of Lew Sterrett. I supplied my Dallas County ID card and my driver's license along with the sheet requesting visitation. These are the same credentials I have provided to visit clients in the jail over the last two years. Shortly after we arrived, 1-2 minutes, a team from Fox 4 news arrived with an employee of the Sheriff's department. We were waiting to see Mr. Payne prior to their arrival. The employee from the Sheriff's office walked through to the booth and spoke with the officers on duty. At one point, she looked at our forms (requesting to see our client), looked at us and went back to speaking with the officers. She exited the booth and came around and took the reporter and cameraman up to the 3rd floor. We were told it would be a while to see our client due to it being lunchtime. (I am not sure if this was before or after she took them upstairs.) Ms. Cook asked the officer in the booth if it was our client they were going to interview. The officer stated he did not know who they were going to interview. I asked if there was a problem and was told that he was waiting on a phone call from upstairs when it would be ok for us to go up. After at least 5 more minutes, I again asked if there was a problem. This time I was told they were trying to verify my credentials. I attempted to give them my Lew Sterrett Justice Center card and was told they did not need the card. I stated something to them about this being his attorney and what was the problem. I was just told we would need to wait a minute. After approximately 5 more minutes, I again asked was there a problem. This time I handed him the Lew Sterrett Justice Center card thru the slot and he stated that was all he needed, I should have just shown this in the first place and we could go up. Not only had I attempted to give him this card earlier, I have been told on previous visits to the jail that I did not need to show that, that I only needed to show the Dallas County ID and driver's license. I have not in the last two years ever had a problem when going to visit a client. When we arrived on the 3rd floor, Fox 4 news was interviewing our client in booth J. I believe we were intentionally held up from being able to meet with our client in order for a news interview to be conducted.

**I HAVE PERSONAL KNOWLEDGE OF THE ABOVE AND I SWEAR THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT.**

_____
**AFFIANT**

**SUBSCRIBED AND SWORN TO BEFORE ME THIS** 16th **DAY OF** January **, 20**09.

_____
**NOTARY PUBLIC**
**Dallas County, Texas**

BILL GOODWIN
Notary Public, State of Texas
My Commission Expires
DECEMBER 05, 2010

Commission expires _____

BILL GOODWIN
Notary Public, State of Texas
My Commission Expires
DECEMBER 05, 2010

250

REPORTER'S RECORD

VOLUME 44 OF

CAUSE NO. F08 24567

| THE STATE OF TEXAS | IN THE CRIMINAL DISTRICT |
| VS. | COURT NO. 7 |
| JAMES BROADNAX | DALLAS COUNTY, TEXAS |

PRETRIAL HEARING

ON THE 27TH DAY OF JULY, 2009, the following proceedings came on for hearing in the above entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.

Proceedings reported by oral stenography.

- - - - -

SHARINA A. FOWLER, CSR          251
214-653-5696

2

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO.08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas   75207
214-653-3600

FOR THE STATE OF TEXAS

DOUG PARKS
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120

BRAD LOLLAR
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 450
Dallas, Texas   75201
214-384-8178

KERI MALLON
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
131 N. Industrial Blvd., LB2
Dallas, Texas   75270-4399
214-653-3600

FOR THE DEFENDANT

SHARINA A. FOWLER, CSR
214-653-5696

252

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO.08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas   75207
214-653-3600

FOR THE STATE OF TEXAS


DOUG PARKS
SBOT NO. 15520000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 77765
903-769-3120

BRAD LOLLAR
SBOT NO. 12508700
Attorney at Law
1700 Commerce, Suite 450
Dallas, Texas   75201
214-384-8178

KERI MALLON
SBOT NO. 24049165
Assistant Public Defender
Frank Crowley Courts Building
131 N. Industrial Blvd., LB2
Dallas, Texas   75270-4399
214-653-3600

FOR THE DEFENDANT

4

INDEX OF EXHIBITS

** RO - Record Only                    ## DO - Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|---|---|---|---|---|
| State's: | | | | |
| No. 16 | Business Records Affidavit | 12 | 12 | |
| Defendant's: | | | | |
| No. 1 | CV, K. Leach | 35 | 36 | |
| No. 2 | Media Relations Report | 35 | 36 | |
| No. 3 | Health Screening Assessment | 38 | 39 | |
| No. 4 | Mental Health Screening | 43 | 45 | |
| No. 5 | Contents of Court's File | 48 | 49 | |
| Nos. 6-7 | Suicide Information Log | 75 | 76 | |
| No. 8 | Report of J. Cook Letter to Sheriff Valdez | 88 | 89 | |
| No. 9 | CV, L. Platt | 91 | 92 | |
| No. 10 | Report of L. Platt | 91 | 92 | |

BROADNAX, JAMES 7/27/09                    CondenseIt!™

Page 1

REPORTER'S RECORD
VOLUME ___ OF ___
CAUSE NO. F-08-73667

THE STATE OF TEXAS              IN THE CRIMINAL DISTRICT

VS.                             COURT NO.

JAMES BROADNAX               DALLAS COUNTY, TEXAS

---

PRETRIAL HEARING

---

ON THE 27TH DAY OF JULY, 2009, the following proceedings came on for hearing in the above-entitled and numbered cause before the Honorable Mike Snipes, Judge Presiding for the Criminal District Court No. 7, held in Dallas, Dallas County, Texas.

Proceedings reported by oral stenography.

Page 3

INDEX

|  | PAGE VOL. |
|---|---|
| Proceedings, July 27, 2009 | |
| APPEARANCES | 2 |
| MOTION TO STAY HEARING | 4 |
| TESTIMONY OF KIMBERLY LEACH | |
| Direct Examination by Mr. Alex | 8 |
| Cross Examination by Mr. Lollar | 33 |
| Redirect Examination by Mr. Alex | 61 |
| Recross Examination by Mr. Lollar | 63 |
| TESTIMONY OF CHRISTIE HICKLEN | |
| Direct Examination by Mr. Alex | 65 |
| Cross Examination by Mr. Lollar | 73 |
| TESTIMONY OF JANET COOK | |
| Direct Examination by Mr. Lollar | 84 |
| TESTIMONY OF LANCE PLATT, Ph.D. | |
| Direct Examination by Mr. Lollar | 91 |
| Cross Examination by Mr. Alex | 96 |
| Redirect Examination by Mr. Lollar | 101 |
| Recross Examination by Mr. Alex | 102 |
| COURT REPORTER'S CERTIFICATE | 110 |

Page 2

A P P E A R A N C E S

DAVID ALEX
SBOT NO.
ANDREA HANDLEY
SBOT NO. 08898800
Assistant Criminal
District Attorneys of Dallas
Frank Crowley Courts Building
133 N. Industrial Blvd.
Dallas, Texas 75207
214-653-3600

FOR THE STATE OF TEXAS

DOUG PARKS
SBOT NO. 15524000
Attorney at Law
321 Calm Water Lane
Holly Lake Ranch, Texas 75765
903-769-3120
BRAD LOLLAR
SBOT NO. 12509700
Attorney at Law
1702 Commerce, Suite 350
Dallas, Texas 75201
214-384-9179

FRED MARSH
SBOT NO. 20141610
Assistant Public Defender
Frank Crowley Courts Building
133 N. Industrial Blvd., LB7
Dallas, Texas 75207-4399
214-653-3607

FOR THE DEFENDANT

Page 4

INDEX OF EXHIBITS

** RO - Record Only          ## DO - Demonstrative Only

| Number | Description | Offered | Admitted | Vol. |
|---|---|---|---|---|
| State's: | | | | |
| No. 16 | Business Records Affidavit | 12 | 12 | |
| Defendant's: | | | | |
| No. 1 | CV, K. Leach | 35 | 36 | |
| No. 2 | Media Relations Report | 35 | 36 | |
| No. 3 | Health Screening Assessment | 38 | 39 | |
| No. 4 | Mental Health Screening | 43 | 45 | |
| No. 5 | Contents of Court's File | 49 | 49 | |
| Nos. 6-7 | Suicide Information Log | 75 | 76 | |
| No. 8 | Report of J. Cook Letter to Sheriff Valdez | 98 | 99 | |
| No. 9 | CV, L. Platt | 91 | 92 | |
| No. 10 | Report of L. Platt | 91 | 92 | |

Page 84

motion --

THE COURT: Off the record.

[Off the record discussion.]

Whereupon,

JANET COOK,

having been first duly cautioned and sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LOLLAR:

Q. State your name, please.

A. Janet Cook.

Q. What is your occupation or profession?

A. I am an assistant public defender in Dallas County.

Q. And how long have you been with the Dallas County Public Defender's office?

A. I started in August of '99. I was there until January of -- I believe it was 2002 or 2003 -- No, 2003, and then went to the -- as a senior staff attorney here in Dallas County working with Keri Young. I was there until March of 2006 when you rehired me for the Public Defender's Office.

Q. And to which court are you currently assigned?

A. 283rd, Judge Rick Magnis.

Q. And let me ask you, do you recall the events of

Page 85

January 13, 2009, as --

A. Yes.

Q. -- it relates to one of the defendants that you were appointed to represent?

A. Yes.

Q. And who was that defendant?

A. Charles Patrick Payne.

Q. And what was he charged with?

A. He's charged with one count of capital murder and two counts of attempted capital murder.

Q. Do you recall on what day you were appointed?

A. The very next day after the offense and -- I believe the offense was January 6th, so I would have been appointed the next morning, January the 7th. Or the offense was January 7th and I was appointed January 8th. I'm -- It's one of those two dates.

Q. Do you recall where Mr. Payne was being housed in the Dallas County jail at that time?

MR. ALEX: Judge, I'm going to object to relevance unless counsel can -- can give some proffer as to what Payne's case has to do with this.

THE COURT: Well, I think I know, but go ahead. Say -- Say what that is, why you --

MR. LOLLAR: Well, yes.

THE COURT: -- think it's relevant.

Page 86

MR. LOLLAR: Ms. Cook will testify that she and her investigator went over to the Dallas County jail to see Mr. Payne, that they were held up down at the -- oh, the booth downstairs where you present your credentials and get the badges.

THE COURT: So that the media can talk to them?

MR. LOLLAR: And she will further state that Kim Leach arrived with Shaun Rabb and his cameraman; that Ms. Leach walked into the booth where the credentials were, looked at our paperwork and saw the request for inmate interview that had her client's name and identifies her as his attorney. Then Ms. Leach looked over at Ms. Cook and her investigator. Ms. Leach then walked out of the booth and took the Fox 4 employees up.

The people downstairs kept holding them up --

THE COURT: And why is that relevant to this case?

MR. LOLLAR: We think that -- Well, and to wrap up, then she was finally allowed to go up to see her client and found him being interviewed with Shaun Rabb.

We think that this shows the Court a

Page 87

pattern of behavior by the public information officer, that she will perhaps put her perceptions of needing to help the press over the rights -- the substantial constitutional rights of the defendant as is reflected here in this case and as reflected in --

THE COURT: Any objection to my accepting your proffer as being what this witness would say?

MR. LOLLAR: Judge, can I ask -- It's all summarized here for the Court. If I can get Ms. Cook to identify the report, then I'll submit that.

THE COURT: Do you have objection?

MR. ALEX: I don't know what the report says. Judge. I'm prosecuting Charles Payne and I get the impression that they're here to try to make a record of something to use in that case, which is highly improper.

THE COURT: I -- I don't think they're doing that.

MR. ALEX: Well, I represent -- I'm -- I'm prosecuting Mr. Payne and Ms. Cook knows that. This looks to me like something that has been going on in the Payne case for some time now. It has nothing to do with this case at all, Judge. All these particulars and specifics has what to do with this case?

MR. PARKS: But, David, you brought the subject up to --

BROADNAX, JAMES 7/27/09                 CondcnseIt!™

**Page 88**

MR ALEX: I brought --

MR. PARKS: -- holster --

MR. ALEX: -- the subject up?

MR. PARKS: David, you --

UNKNOWN SPEAKER: What attorney was sitting downstairs with James Broadnax? What does this got to do with it?

THE COURT: What's that Defense exhibit?

MR. LOLLAR: No. 8, Your Honor.

THE COURT: Why can't you just offer it, I'll admit it and I'll consider it.

MR. LOLLAR: Okay.

THE COURT: Can we do that?

[Defendant's Exhibit No. 8 was marked for identification.]

MR. LOLLAR: We'll offer Defendant's Exhibit No. 8, which is a report that Ms. Cook did and a letter of complaint to Sheriff Valdez.

THE COURT: Okay.

MR. ALEX: And I object to all of this, Judge. I think it's totally irrelevant and improper.

MR. LOLLAR: Judge, if I could ask just one more question.

THE COURT: The objection is overruled. Defense Exhibit 8 is admitted.

**Page 89**

[Defendant's Exhibit No. 8 was admitted into evidence.]

Q. [By Mr. Lollar] Ms. Cook, where is Mr. Payne now?

A. Right now he is in Vernon. He's been found incompetent to stand trial at this time.

Q. Do you know where he was housed at the time y'all went over to try and see him?

A. On the 13th he was on -- in the third floor, west tower.

MR. LOLLAR: That's all the questions we have.

THE COURT: Cross examination?

MR. ALEX: No, sir.

THE COURT: You may step down, ma'am.

MR. LOLLAR: May Ms. Cook be excused?

THE COURT: Yes, sir. Anything else from the Defense?

MR. LOLLAR: Not at this time.

THE COURT: Anything from the State?

MR. ALEX: Nothing further at this time.

THE COURT: When are we starting up again?

MR. LOLLAR: We await the arrival of Dr. Platt, and I think he -- I thought we were going to go ahead and have the hearings this morning, so I told

**Page 90**

him to be here this afternoon. He's driving up from College Station, so it should be 1:00 or so.

THE COURT: Let's start at 2:00.

MR. ALEX: Could we get a ruling from the Court of Appeals -- Criminal Appeals, I guess, today -- The reporters were told to be here today, I guess, with a court order. When -- When would you want to proceed?

THE COURT: I don't think we're going to get an answer from them today because the deadline for filing a briefing on that is the 29th, which is Wednesday.

MR. ALEX: The 29th?

THE COURT: Yes.

MR. LOLLAR: Close of business Wednesday.

THE COURT: So we're not going to -- this is not going to be resolved until probably Thursday or so.

We're in recess until 2:00.

[Recess taken from 10:52 a.m. to 2:19 p.m.]

THE COURT: Back on the case in Broadnax. This is a continuation of Rule 702 through 705, expert witness hearings.

Mr. Lollar, if you'll call your first witness.

**Page 91**

MR. LOLLAR: We'll call Lance Platt.

Whereupon,

LANCE PLATT, Ph.D.,

having been first duly cautioned and sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LOLLAR:

Q. Would you state your name, please?

A. Lance Platt, P-l-a-t-t.

Q. Mr. Platt, what is your occupation or profession?

A. I'm a self employed consultant, consulting on drug and alcohol cases.

[Defendant's Exhibit Nos. 9 through 10 were marked for identification.]

Q. [By Mr. Lollar] Let me show you, Mr. Platt, your -- Defendant's Exhibit No. 9 and 10. Is Defendant's Exhibit No. 9 a CV of yours?

A. It is.

Q. And is No. 10 your report which you wrote to me?

A. It is.

MR. LOLLAR: We'd offer Defendant's 9 and 10.

THE COURT: Any objection?

BROADNAX, JAMES 7/27/09      CondenseIt!™

## Page 108

know from what I could hear him say.

MR. LOLLAR: I'm sorry?

THE COURT: I thought he said he didn't really know in this particular case.

MR. LOLLAR: Well, he says he's an 8 to 10 on a scale of 1 to 10, if the defendant was under the influence based on what he saw in the medical records and based on what he heard the defendant say in the interviews.

THE COURT: Have you got any reported case law where this kind of testimony came in? Because I just --

MR. LOLLAR: On drug recognition?

THE COURT: -- went through about 40 cases and I didn't see one.

MR. LOLLAR: I'll get some for the Court.

THE COURT: Okay. Because I'm concerned about the reliability of this and the possibility of it confusing the jury, even if it is reliable.

MR. LOLLAR: Okay.

MR. ALEX: And in particular, when we talk about DRE, usually there's some kind of interview done with a particular defendant --

THE COURT: That's what I'm talking about.

MR. LOLLAR: I don't know that I'd agree

## Page 109

with that. Most --

THE COURT: Well, I --

MR. LOLLAR: -- of the time, they're called upon to look at videotapes.

THE COURT: Just see if you can get me something. I just went through about 50 cases in my annotations here and I don't see it.

MR. LOLLAR: Okay.

MR. ALEX: I didn't either.

THE COURT: I'm going to defer a ruling on this for now.

What else do we have?

MR. LOLLAR: We have a couple of juror issues that we need to discuss off the record.

THE COURT: Okay. Off the record.

[Whereupon, this days proceedings were concluded. To be continued in the next numbered volume.]

## Page 110

THE STATE OF TEXAS     X

COUNTY OF DALLAS     X

## Page 4

I, Sharina Fowler, Deputy Official Court County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND, this the _____ day of March, 2010

Sharina A. Fowler, Texas CSR #6132
Expiration Date: 12/31/11
Deputy Official Court Reporter
Criminal District Court No. 7
Dallas County, Texas
Crowley Courts Building
Dallas, Texas
214-653-5696

# AFFIDAVIT OF FACT

STATE OF TEXAS          )
                              )
COUNTY OF TARRANT       )

Re:     James Garfield Broadnax
        Criminal District Court #7, Dallas County, TX, No. F08-24667-Y
        Ex parte Broadnax, Writ No. AP-76, 207

BEFORE ME, the undersigned authority, on this day personally appeared Mary Burdette, MSSW, who by me duly sworn, did depose and state upon her oath as follows:

1. My name is Mary Burdette. I am over twenty-one years of age and am fully competent to make this affidavit.

2. I am James Broadnax's court appointed mitigation specialist and hold a master degree in social work.

3. Over the course of my practice as a mitigation specialist, I became acquainted with Dianna Hunt, who, at the time, was a reporter for the Fort Worth Star-Telegram newspaper, assigned to cover the criminal courts. Ms. Hunt has since left Fort Worth and resides and works in Lafayette, Louisiana.

4. I contacted her and asked for information regarding the practice of news reporting on arrests, indictments and trials for persons charged with criminal offenses.

5. She indicated to me that other reporters are assigned to the 'jail beat' and keep tabs on what is happening regarding arrests and charges. These reporters utilize a variety of means in order to acquire this information but includes use of contacts and relationships with law enforcement who sometimes give the reporters a 'heads up' if a big arrest is about to be made or has been made. These are relationships developed over the course of time between media and law enforcement as part of a reporter's professional efforts to report the news.

6. She gave me the impression that this is the general practice for obtaining news regarding crime stories in both Fort Worth and Dallas, Texas.

FURTHER AFFIANT SAYETH NOT.

Mary Burdette, MSSW

SUBSCRIBED AND SWORN TO before me this 1st day of Dec, 2012.

Notary Public

GRANT BURDETTE MCDERMED
Notary Public, State of Texas
My Commission Expires
July 18, 2016

259