# TAMES Barcode Cover Sheet



8b8b3d37074d4880b7d53c9cce53ac93

| | |
|---|---|
| **Case Number:** | WR-81,573-01 |
| **Style:** | Broadnax, James Garfield |
| **Event Date:** | 10/22/2014 |
| **Event Details:** | HABEAS CORPUS RECEIVED - 11.071/This Court/11.071 WRIT RECD/11.071/ |
| **Filename:** | WR-81,573-01 11.071 WRIT RECD 11.071 10-22-2014 |
| **Document Description:** | RECORD--Volume 3 of 3 |
| **Document Remarks:** | 3 Volumes CR |
| **Document(s):** | |
| **Generated By:** | bhooper |
| **Generated On:** | 10/27/2014 11:08:03 AM |

SCANNED

APR 0 5 2016

378

Ex Parte:

JAMES GARFIELD BROADNAX

CAUSE NO.: F-0824667 Y

IN THE CRIMINAL DISTRICT COURT NO. 7

DALLAS COUNTY, TEXAS

This document contains some
pages that are of poor quality
at the time of imaging.

# DEATH PENALTY

---

POST CONVICTION WRIT OF HABEAS CORPUS
(ART. 11.07, V. A. C. C. P.)

---

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 2 2 2014

Abel Acosta, Clerk

ATTORNEY FOR APPLICANT:

LYDIA M. V. BRANDT
THE BRANDT LAW FIRM, P.C.
P.O. BOX 850843
RICHARDSON, TX 75085-0843

ATTORNEY FOR STATE:

HON. CRAIG WATKINS

FRANK CROWLEY COURTHOUSE

DALLAS, TX 75207-4313

GARY FITZSIMMONS
DISTRICT CLERK
FRANK CROWLEY COURTHOUSE
133 N RIVERFRONT BLVD., LB 12
DALLAS, TEXAS 75207-4313

EX PARTE                                    Cause No.F0824667-Y

JAMES GARFIELD BROADNAX              IN THE CRIMINAL DISTRICT COURT NO. 7

                                          DALLAS COUNTY, TEXAS

## *INDEX*

### (VOL. 3)

| | |
|---|---|
| Clerk's Cover | VOL.3-01 |
| State's Filing Of Additional Exhibits 10-04-2013 *(continuance of Vol.2)* | VOL.3-02 |
| State's Motion To Show Cause For Court Reporter's Failure To File Reporter's Record Of Writ Hearing 5-22-2014 | VOL.3-73 |
| Response To State's Motion To Show Cause For Court Reporter's Failure To File Reporter's Record Of Writ Hearing 5-28-2014 | VOL.3-83 |
| State's Proposed Findings Of Fact and Conclusions of Law, 6-24-2014 | VOL.3-89 |
| Broadnax's Proposed Findings Of Fact And Conclusions Of Law 6-24-2014 | VOL.3-130 |
| Applicant's Notice Of Clarification Of Defense 6-24-2014 | VOL.3-213 |
| Order Granting Clerk's Motion to Amended clerk's electronic file criminal writ appeal 9-03-2014 | VOL.3-221 |
| Clerks Motion To Amend Clerk's Electronic File In Criminal Writ/Appeal 9-03-2014 | VOL.3-222 |
| Finding of Facts 9-17-2014 | VOL.3-224 |
| Objection to the Findings of Fact and Conclusion of Law Signed By Judge Snipes On September 17, 2014-10-08-2014 | VOL.3-258 |
| Indictment 9-15-2008 | VOL.3-301 |
| Jury Charge - Verdict 8-12-2009 | VOL3-303 |

Jury Charge - Punishment 8-19-2009                    VOL.3-320

Judgment 8-21-2009                                    VOL.3-330

Docket Sheet 7-7-2010                                 VOL.3-333

Appeals Court Mandate 1-11-2012                       VOL.3-346

Certificate of Service                                VOL.3-347

Clerk Certificate                                     VOL.3-348

No. F-0824667 Y

**Ex Parte:**                                      **Application for Writ of Habeas Corpus**

JAMES GARFIELD BROADNAX              **CRIMINAL DISTRICT COURT NO. 7**

                                                   **Dallas County, Texas**

## CLERK'S COVER SHEET

Applicant's Name: **JAMES GARFIELD BROADNAX**

Offense: **CAP MUR FEL**

Case No.: **F08-24667-Y**

Plea to Offense: **Not Guilty**

Sentence: **DEATH - TDCJ;**Fine: **$0** ; Court Costs: **$460.00**

Trial Date : **August 21, 2009**

Judge's Name: **Judge Michael Snipes**

Appeal: **YES**

Court of Appeals Cause Number: **AP-76,207**

Reporter: **UNKNOWN**
(If Applicable)

Hearing Held: **NO**

Findings of Fact & Conclusions Filed: **YES**
(Pertaining to the Application for Writ)

Recommendation: **DENY**
(Trial Court's recommendation regarding Application)

Judge's Name: **Judge Michael Snipes**

Name of Counsel if Applicant is represented: **Lydia M. V. Brandt**

1

# Message



| From: | Lydia Brandt | Sent: | 11/7/2012 4:02:33 PM |
|-------|-------------|-------|---------------------|

To:     Amy Murphy
CC:     Anna Kubalak; Michael Snipes
Subject:  Re: Witness List

Amy,

I am still preparing and don't have my list ready.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: "lydiamb@airmail.net" <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>, Michael Snipes <Michael.Snipes@dallascounty.org>
Subject: Witness List
Date: Wed, 7 Nov 2012 15:54:25 -0600

Lydia,

As we previously agreed (to notify the other party of the witnesses to be called at the writ hearing by
November 7th), I am sending you a list of witnesses I may call at the hearing on December 7, 2012.

I do not think that I will call any witnesses, but below are the witnesses I may need to call. I will let
you know after I have had more time to prep if I will call these witnesses:

David Alex
Andrea Handley
BK Nelson
Dr. Price

Also, as I have not received your list at the time of this email, if you do not call the three
defense attorneys (Lollar, Parks, and Mallin) or either of your new experts (Stewart and Eden), I will
call these witnesses. to testify at the hearing.

In addition, as you know, Grace Shin was assisting with the writ hearing. Sadly, Grace's mother passed
away this weekend. She is busy taking care of herself and her family at this time. Anna Kubalak has

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 7 of 215    PageID 11351

graciously stepped in to take Grace's place.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

# Message



| | | |
|---|---|---|
| **From:** | Lydia Brandt | **Sent:** 11/13/2012 7:09:27 AM |

**To:** Michael Snipes; Amy Murphy; Anna Kubalak
**CC:** Sian Schilhab; SHARON A JOHNSON; LISA SMITH; Kerry Young
**Subject:** Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens

Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Expert(s) on first amendment law

cc:  Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 11 of 215    PageID 11355

# Message



| | | | |
|---|---|---|---|
| **From:** | Michael Snipes | **Sent:** | 11/13/2012 11:59:58 AM |

**To:** Lydia Brandt; Kerry Young; SHARON A JOHNSON; Jennifer Bennett
**CC:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

As of now, I am going to see where we are at the end of Dec 7 and then I may or may not continue it. The trial itself was only a week. I will be reasonable, but I have special set jury trials on both Dec 3 and Dec 10.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22 AM
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

8

Quest Software Archive Manager : Print Message                    Page 2 of 5

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the
defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The
defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December
7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts
(August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the
hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the
extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my
requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those
settings were:  Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing;
Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris,
2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other
two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

   Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

   Other persons, who I have been told have relevant information about media interviews of Dallas County

Case 3:15-cv-01758-N   Document 42-5   Filed 06/29/16   Page 15 of 215   PageID 11359

criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 16 of 215    PageID 11360

# Message



| From: | Michael Snipes | Sent: | 11/13/2012 11:59:58 AM |
|---|---|---|---|

**To:** Lydia Brandt; Kerry Young; SHARON A JOHNSON; Jennifer Bennett
**CC:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

As of now, I am going to see where we are at the end of Dec 7 and then I may or may not continue it. The trial itself was only a week. I will be reasonable, but I have special set jury trials on both Dec 3 and Dec 10.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22 AM
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 – Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

Quest Software Archive Manager : Print Message                    Page 2 of 5

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6-2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22-2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County.

criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 21 of 215    PageID 11365

# Message



| From: | Michael Snipes | Sent: | 11/13/2012 3:54:35 PM |
|---|---|---|---|
| To: | Amy Murphy; Lydia Brandt | | |
| CC: | Anna Kubalak | | |
| Subject: | RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg | | |

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.


**From:** Amy Murphy
**Sent:** Tuesday, November 13, 2012 3:24 PM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg


Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.

Thank you,

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639


---

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A
thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all
you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith;
Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A
thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments.  Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List

Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were:  Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION:  The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants.  Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement.  The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel.  It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays

Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
   Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
   Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N   Document 42-5   Filed 06/29/16   Page 27 of 215   PageID 11371

# Message

| | | | |  |
|---|---|---|---|---|
| **From:** | Lydia Brandt | **Sent:** | 11/13/2012 10:22:19 AM | |

**To:**    Michael Snipes
**CC:**    Amy Murphy; Anna Kubalak
**Subject:**  RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young

23

**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6-2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22-2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the

unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
   Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
   Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt,

Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

No.  F-1254982 L

*Ex Parte:*                                    **Application for Writ of Habeas Corpus**

JAMES GARFIELD BROADNAX          **CRIMINAL DISTRICT COURT NO. 7**

**Dallas County, Texas**

## CLERK'S  COVER  SHEET

Applicant's Name: **JAMES GARFIELD BROADNAX**

Offense: **CAP MUR FEL**

Case No.: **F08-24667-Y**

Plea to Offense: **Not Guilty**

Sentence:  **DEATH  - TDCJ;**Fine:  **$0 ;** Court Costs: **$460.00**

Trial Date : **August 21, 2009**

Judge's Name: **Judge Michael Snipes**

Appeal: **YES**

Court of Appeals Cause Number: **AP-76,207**

Reporter:  **UNKNOWN**
(If Applicable)

Hearing Held: **NO**

Findings of Fact & Conclusions Filed: **YES**
(Pertaining to the Application for Writ)

Recommendation: **DENY**
(Trial Court's recommendation regarding Application)

Judge's Name: **Judge Michael Snipes**

Name of Counsel if Applicant is represented: **Lydia M. V. Brandt**

1

Quest Software Archive Manager : Print Message                    Page 1 of 3

# Message

| | | | |
|---|---|---|---|
| **From:** | Lydia Brandt | **Sent:** | 11/7/2012 4:02:33 PM |



**To:** Amy Murphy
**CC:** Anna Kubalak; Michael Snipes
**Subject:** Re: Witness List

Amy,

I am still preparing and don't have my list ready.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: "lydiamb@airmail.net" <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>, Michael Snipes <Michael.Snipes@dallascounty.org>
Subject: Witness List
Date: Wed, 7 Nov 2012 15:54:25 -0600

Lydia,

As we previously agreed (to notify the other party of the witnesses to be called at the writ hearing by
November 7th), I am sending you a list of witnesses I may call at the hearing on December 7, 2012.

I do not think that I will call any witnesses, but below are the witnesses I may need to call. I will let
you know after I have had more time to prep if I will call these witnesses:

David Alex
Andrea Handley
BK Nelson
Dr. Price

Also, as I have not received your list at the time of this email, if you do not call the three
defense attorneys (Lollar, Parks, and Mallin) or either of your new experts (Stewart and Eden), I will
call these witnesses. to testify at the hearing.

In addition, as you know, Grace Shin was assisting with the writ hearing. Sadly, Grace's mother passed
away this weekend. She is busy taking care of herself and her family at this time. Anna Kubalak has

Case 3:15-cv-01758-N   Document 42-5   Filed 06/29/16   Page 33 of 215   PageID 11377

graciously stepped in to take Grace's place.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

Quest Software Archive Manager : Print Message                    Page 3 of 3

Case 3:15-cv-01758-N Document 42-5 Filed 06/29/16 Page 35 of 215 PageID 11379

# Message



| | | | |
|---|---|---|---|
| From: | Lydia Brandt | Sent: | 11/13/2012 7:09:27 AM |
| To: | Michael Snipes; Amy Murphy; Anna Kubalak | | |
| CC: | Sian Schilhab; SHARON A JOHNSON; LISA SMITH; Kerry Young | | |
| Subject: | Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List | | |

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens

Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

   Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

   Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Expert(s) on first amendment law

cc:  Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:  Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy, Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message

Page 3 of 3

# Message

| | | | |
|---|---|---|---|
| From: | Michael Snipes | Sent: | 11/13/2012 11:59:58 AM |

To:     Lydia Brandt; Kerry Young; SHARON A JOHNSON; Jennifer Bennett
CC:     Amy Murphy; Anna Kubalak
Subject:   RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

As of now, I am going to see where we are at the end of Dec 7 and then I may or may not continue it. The trial itself was only a week. I will be reasonable, but I have special set jury trials on both Dec 3 and Dec 10.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22 AM
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

9

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County

criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

# Message



| From: | Michael Snipes | Sent: | 11/13/2012 11:59:58 AM |
|---|---|---|---|

To:     Lydia Brandt; Kerry Young; SHARON A JOHNSON; Jennifer Bennett
CC:     Amy Murphy; Anna Kubalak
Subject:   RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

As of now, I am going to see where we are at the end of Dec 7 and then I may or may not continue it. The trial itself was only a week. I will be reasonable, but I have special set jury trials on both Dec 3 and Dec 10.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22 AM
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 45 of 215    PageID 11389

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Other persons, who I have been told have relevant information about media interviews of Dallas County

Quest Software Archive Manager : Print Message                    Page 4 of 5

criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

# Message

| From: | Michael Snipes | Sent: | 11/13/2012 3:54:35 PM |  |
|---|---|---|---|---|

To:      Amy Murphy; Lydia Brandt
CC:      Anna Kubalak
Subject:  RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.


**From:** Amy Murphy
**Sent:** Tuesday, November 13, 2012 3:24 PM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg


Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.

Thank you,

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639


---

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A
thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all
you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 8:49 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith;
Kerry Young
Subject: Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A
thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List

Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays

Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John

Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.

Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy, Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message                    Page 5 of 5

# Message



| From: | Lydia Brandt | Sent: | 11/13/2012 10:22:19 AM |
|---|---|---|---|
| To: | Michael Snipes | | |
| CC: | Amy Murphy; Anna Kubalak | | |
| Subject: | RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg | | |

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days.  So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing.  I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young

**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 55 of 215    PageID 11399

unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt,

Quest Software Archive Manager : Print Message                                    Page 4 of 5

Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message

# Message

| | | | | |
|---|---|---|---|---|
| **From:** | Lydia Brandt | **Sent:** | 11/20/2012 1:52:18 PM |  |

**To:**    Amy Murphy; SHARON A JOHNSON
**CC:**    Michael Snipes
**Subject:**    RE: Broadnax: evidence

Dear Amy and Sharon (and Judge Snipes),

Judge Snipes suggested that we might want to set a specific date and time to see him. **Sharon**, I don't know if you keep the judge's calendar. If so, is it possible to visit with the judge about my motion concerning the evidentiary hearing and other issues on December 6, 2012 (the date before the 12-7-2012 hearing) at whatever time is convenient for Judge Snipes?

**Amy,** is this date okay with you? **Sharon** could you give Amy and I a time certain?

**Also Amy**, when you return from California, are you available to meet on Dec 3, (Monday) to go thru exhibits and see if the DA has any objection; otherwise, we both agree to have them admitted into evidence.

Please let me know. And everyone have a Happy Thanksgiving.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: Michael Snipes <Michael.Snipes@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax: evidence
Date: Tue, 20 Nov 2012 13:14:53 -0600

Sorry for the tardiness of this email. I am visitng my grandmother in California.

Yes, I am amenable.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

From: Michael Snipes
Sent: Monday, November 19, 2012 10:14
To: Lydia Brandt; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax: evidence

28

I am.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Friday, November 16, 2012 4:36 PM
To: Amy Murphy; Anna Kubalak
Cc: Michael Snipes
Subject: Broadnax: evidence

Hi Amy,

To help move the hearing along, I was hoping that we could agree ahead of the hearing to evidence to be admitted without objections by either side.

Are you amenable to that?

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message    Page 3 of 3

Quest Software Archive Manager : Print Message

# Message



| | | | | |
|---|---|---|---|---|
| From: | Michael Snipes | | Sent: | 11/20/2012 3:37:52 PM |

To: Lydia Brandt; Amy Murphy; SHARON A JOHNSON
CC: Jennifer Bennett; SNEHA PATEL
Subject: RE: Broadnax: evidence

I will see you all at 8 AM on December 6. I am in trial then on the Roemheld case, thus the need for the early setting. The writ hearing will proceed on December 7, as previously scheduled. We will see where we are at the end of that day on the Broadnax matter.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 20, 2012 1:52 PM
**To:** Amy Murphy; Sharon A Johnson
**Cc:** Michael Snipes
**Subject:** RE: Broadnax: evidence

Dear Amy and Sharon (and Judge Snipes),

Judge Snipes suggested that we might want to set a specific date and time to see him. **Sharon**, I don't know if you keep the judge's calendar. If so, is it possible to visit with the judge about my motion concerning the evidentiary hearing and other issues on December 6, 2012 (the date before the 12-7-2012 hearing) at whatever time is convenient for Judge Snipes?

**Amy**, is this date okay with you? **Sharon** could you give Amy and I a time certain?

**Also Amy**, when you return from California, are you available to meet on Dec 3, (Monday) to go thru exhibits and see if the DA has any objection; otherwise, we both agree to have them admitted into evidence.

Please let me know. And everyone have a Happy Thanksgiving.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Amy.Murphy@dallascounty.org wrote:

From: Amy Murphy <Amy.Murphy@dallascounty.org>
To: Michael Snipes <Michael.Snipes@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax: evidence
Date: Tue, 20 Nov 2012 13:14:53 -0600

Sorry for the tardiness of this email. I am visitng my grandmother in California.

Yes, I am amenable.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

---

From: Michael Snipes
Sent: Monday, November 19, 2012 10:14
To: Lydia Brandt; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax:  evidence

I am.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Friday, November 16, 2012 4:36 PM
To: Amy Murphy; Anna Kubalak
Cc: Michael Snipes
Subject: Broadnax: evidence

Hi Amy,

To help move the hearing along, I was hoping that we could agree ahead of the hearing to evidence to be admitted without objections by either side.

Are you amenable to that?

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message

# Message



| | | | |
|---|---|---|---|
| **From:** | Lydia Brandt | **Sent:** | 11/26/2012 8:43:40 AM |

**To:** Lydia Brandt
**CC:** Michael Snipes; Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit

Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

34

o

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.

**From:** Amy Murphy
**Sent:** Tuesday, November 13, 2012 3:24 PM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your
rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of
professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not
waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do
not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks
away.

Thank you,

35

Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

(214) 653-3639

---

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were:   Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing;

Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following

further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
 Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N  Document 42-5  Filed 06/29/16  Page 70 of 215  PageID 11414

# Message

| | | | | |
|---|---|---|---|---|
| From: | Lydia Brandt | Sent: | 11/26/2012 3:38:29 PM |  |

To:      Michael Snipes
CC:      Amy Murphy; Anna Kubalak
Subject:      RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit

Yes, please if we could have 12-6-2012 transcribed on the record. I have calendared the 6th of Dec at 8:00 am and likely will arrive a ahead of time because of traffic.

For the evid hearing on the 7th, I will have the subpoenas served so that everyone shows before 9:00 am in your courtroom.

I stopped by the ADA's office today and neither Amy Murphy nor Anna Kubalak were in and do not come in until Wed or Thursday of this week. As I understand it, Amy was in California last week, so I assume she has rec'd or will receive these emails.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
CC: Amy Murphy <Amy.Murphy@dallascounty.org>, Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit
Date: Mon, 26 Nov 2012 11:19:21 -0600

Don't forget about chambers meeting on Dec 6 at 8. Does this need to be on the record?

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Monday, November 26, 2012 8:44 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit

Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice

(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.

**From:** Amy Murphy
**Sent:** Tuesday, November 13, 2012 3:24 PM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your
rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of
professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not
waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do
not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks
away.

Thank you,

Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

43

(214) 653-3639

---

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

From: Lydia Brandt [mailto:lydiamb@airmail.net]

**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 – Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process

violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General

Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:    Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Quest Software Archive Manager : Print Message

Quest Software Archive Manager : Print Message                          Page 1 of 8

# Message



From:      Lydia Brandt              Sent:      11/27/2012 9:48:35 AM

To:        Michael Snipes
CC:        Amy Murphy; Anna Kubalak

Subject:   RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony


Dear ADAs Murphy and Kubalak and Judge Snipes,

I would like to enter into agreement with the DA (and with the approval of the court) to have the expert affidavits of Dwight Stewart and John Edens admitted as evidence at the evidentiary hearing, instead of calling them to testify in person at the evidentiary hearing. I believe that this will accomplish Mr. Broadnax's purpose, while at the same time saving costs and substantial money in having to bring them in from out of town.

The two affidavits are exhibits 25 (stewart) and 26 (edens) attached to the state habeas application.

***Please let me know if the DA and court will agree so I can let my two experts know asap.***

Thank you,
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
CC: Amy Murphy <Amy.Murphy@dallascounty.org>, Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit
Date: Mon, 26 Nov 2012 11:19:21 -0600

Don't forget about chambers meeting on Dec 6 at 8. Does this need to be on the record?


From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Monday, November 26, 2012 8:44 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit

49

Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.

P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

— Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt.  Please do so unless exigent circumstances arise.  Thank you.

**From:** Amy Murphy
**Sent:** Tuesday, November 13, 2012 3:24 PM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week.  I do appreciate your rather lengthy witness list.  However, you have indicated that you reserve the right to add witnesses.  Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday.  I do not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.

Thank you,

Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

(214) 653-3639

**From:** Lydia Brandt [lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 10:22
**To:** Michael Snipes
**Cc:** Amy Murphy; Anna Kubalak
**Subject:** RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

**From:** Lydia Brandt [mailto:lydiamb@airmail.net]
**Sent:** Tuesday, November 13, 2012 8:49 AM
**To:** Lydia Brandt
**Cc:** Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
**Subject:** Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments.  Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the
defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing.  The
defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December
7, 2012.  However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts
(August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the
hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the
extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my
requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date.  Those
settings were:   Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing;
Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris,
2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed).  The other
two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION:  The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal
habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional
challenges to state convictions."  Harrington v. Richter, 131 S. Ct. 770, 787 (2011).  Thus, it is Mr. Broadnax's

contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
    Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
    Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information.  Any other interception or use of these materials is strictly prohibited.  If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 86 of 215    PageID 11430

# Message

| | | | | |
|---|---|---|---|---|
| **From:** | Michael Snipes | **Sent:** | 11/27/2012 3:23:49 PM |  |

**To:**      Amy Murphy; Lydia Brandt; SHARON A JOHNSON

**Subject:**  RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

As you know, I am in trial on December 6.. I will have Mr. Broadnax in court on the 7th, but not the 6th, although he has been bench warranted to arrive in Lew Sterrit on November 29 if you need to see him.

-----Original Message-----
From: Amy Murphy
Sent: Tuesday, November 27, 2012 12:45 PM
To: Michael Snipes; Lydia Brandt
Cc: Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

The State does NOT agree. One of the only reason the State agreed to have a hearing in this case was to have the chance to cross examine your experts, experts you now claim the trial attorneys were ineffective for not calling to testify at trial. The other reason the State agreed to a hearing is to allow the trial attornies to defend themselves.

I propose that, in an effort to speed up the hearing, we start with the relevant witnesses to the actual claims in the application: Doug, Brad, Stewart, and Edens. After those witnesses testify, then we can handle the remainder of the witnesses. Please let me know if you are amenable to this proposal.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

From: Michael Snipes
Sent: Tuesday, November 27, 2012 9:56
To: Lydia Brandt
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

I WILL agree, but not forcing the state to do so. That's up to them.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 27, 2012 9:49 AM
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

Dear ADAs Murphy and Kubalak and Judge Snipes,

I would like to enter into agreement with the DA (and with the approval of the court) to have the expert affidavits of Dwight Stewart and John Edens admitted as evidence at the evidentiary hearing, instead of calling them to testify in person at the evidentiary hearing. I believe that this will accomplish Mr. Broadnax's purpose, while at the same time saving costs and substantial money in having to bring them in from out of town.

The two affidavits are exhibits 25 (stewart) and 26 (edens) attached to the state habeas application.

Please let me know if the DA and court will agree so I can let my two experts know asap.

Thank you,
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843

(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
CC: Amy Murphy <Amy.Murphy@dallascounty.org>, Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit
Date: Mon, 26 Nov 2012 11:19:21 -0600

Don't forget about chambers meeting on Dec 6 at 8. Does this need to be on the record?


From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Monday, November 26, 2012 8:44 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit


Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

58

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.

From: Amy Murphy
Sent: Tuesday, November 13, 2012 3:24 PM
To: Lydia Brandt
Cc: Michael Snipes; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.

Thank you,

Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

(214) 653-3639

_____

From: Lydia Brandt [lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 10:22
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 8:49 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
Subject: Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments. Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net

The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>, "Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing. The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012. However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6- 2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22- 2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 92 of 215    PageID 11436

Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie
Parks, Doug
Sanchez, Juan
Tatum, John
Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc: Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS: Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy, Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 93 of 215    PageID 11437

# Message



| | | | |
|---|---|---|---|
| From: | Lydia Brandt | Sent: | 11/27/2012 3:37:26 PM |

To:     Michael Snipes; Anna Kubalak
CC:     Amy Murphy; SHARON A JOHNSON
Subject:   RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - other matters

Thank you **Judge** for letting me know that Mr. Broadnax has been bench warranted to arrive in Lew Sterritt on November 29 if I need to see him.

Hi **Amy and Ana**, The defense will call Edens and Stewart in lieu of affidavits, and call its witnesses in the order that it deems best. So the defense does not agree to the State's counter offer.

Also Amy, because I had not heard back from you or Anna, I wanted to be sure that you are aware of the Dec 6, 2012 hearing at 8:00 am in Judge Snipes court that will be transcribed, and that I had also listed Catherine Bernhard as a witness to testify at the evidentiary hearing.

Finally, I did not hear back from state on whether the state has Defense Exhibit No. 8, the Janet Cook report and letter to Sheriff Valdez. It was admitted into evidence in the pretrial hearing on July 27, 2009, Exhibit 8, but it is nowhere in the record volumes that I have. The defense exhibit 8 that is incorporated into the record is completely different. It is imperative that the Defense Exhibit No. 8, the Janet Cook report and letter to Sheriff Valdez, be made a part of the record.

Does the state have a copy and will it make it available to the defense?

Lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>, Sharon A Johnson <SHARONA.JOHNSON@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony
Date: Tue, 27 Nov 2012 15:23:47 -0600

As you know, I am in trial on December 6.. I will have Mr. Broadnax in court on the 7th, but not the 6th, although he has been bench warranted to arrive in Lew Sterritt on November 29 if you need to see him.

-----Original Message-----
From: Amy Murphy
Sent: Tuesday, November 27, 2012 12:45 PM
To: Michael Snipes; Lydia Brandt
Cc: Anna Kubalak

Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

The State does NOT agree. One of the only reason the State agreed to have a hearing in this case was to have the chance to cross examine your experts, experts you now claim the trial attorneys were ineffective for not calling to testify at trial. The other reason the State agreed to a hearing is to allow the trial attornies to defend themselves.

I propose that, in an effort to speed up the hearing, we start with the relevant witnesses to the actual claims in the application: Doug, Brad, Stewart, and Edens. After those witnesses testify, then we can handle the remainder of the witnesses. Please let me know if you are amenable to this proposal.

Amy
Amy Sue Melo Murphy
Assistant District Attorney
Appellate Division
(214) 653-3639

_____

From: Michael Snipes
Sent: Tuesday, November 27, 2012 9:56
To: Lydia Brandt
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

I WILL agree, but not forcing the state to do so. That's up to them.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 27, 2012 9:49 AM
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - expert affidavits admitted as evid in lieu of live testimony

Dear ADAs Murphy and Kubalak and Judge Snipes,

I would like to enter into agreement with the DA (and with the approval of the court) to have the expert affidavits of Dwight Stewart and John Edens admitted as evidence at the evidentiary hearing, instead of calling them to testify in person at the evidentiary hearing. I believe that this will accomplish Mr. Broadnax's purpose, while at the same time saving costs and substantial money in having to bring them in from out of town.

The two affidavits are exhibits 25 (stewart) and 26 (edens) attached to the state habeas application.

Please let me know if the DA and court will agree so I can let my two experts know asap.

Thank you,
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you

have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
CC: Amy Murphy <Amy.Murphy@dallascounty.org>, Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit
Date: Mon, 26 Nov 2012 11:19:21 -0600

Don't forget about chambers meeting on Dec 6 at 8. Does this need to be on the record?

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Monday, November 26, 2012 8:44 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional witness & missing exhibit

Hi Amy,

I have an additional witness to add to my witness list, Catherine Bernhard.

Also, do you have Defense Exhibit 8, that was admitted in the July 27, 2009 pretrial hearing (Vol 41) (and also
listed in the Master Index).
It is identified as Report of J. Cook, Letter to Sheriff Valdez. This document is no where in my file and the
defense exhibits volume, exhibit 3, is something else entirely.

If you do have it and can make it available to me (scan and email if possible) I would appreciate it.
Thank you,

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>
Cc: <Amy.Murphy@dallascounty.org>, <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:11:37 -0800

Dear Judge Snipes and Amy,

The list of witnesses I identified by name on my witness list should take care of your concern, Amy. I will draw from them to call at the hearing.

As to those persons that the witness list identifies generically on the bottom of the list, obviously I can't and won't call at the 12-7-2012 hearing. This is an issue that I would still like to take up with the judge. As I mentioned in my earlier email, it is for this reason, that I continue to work on the motion for evid hg and other issues in the hope that the judge will permit a continuance of the hearing for a later date(s).

I hope, Amy, that you and I can get together to set a date and then call Judge Snipes office so we both see Judge Snipes to address the defense issues concerning its motion about the evidentiary hearing. I will call you when I get the motion completed, Amy.

I have been summoned for jury duty tomorrow and don't expect to be around for most/all of the day.

lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is intended for the exclusive use of the addressee(s) and may contain confidential, privileged, or proprietary information. Any other interception or use of these materials is strictly prohibited. If you have received these materials in error, please notify me immediately by telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Amy Murphy <Amy.Murphy@dallascounty.org>, Lydia Brandt <lydiamb@airmail.net>
CC: Anna Kubalak <Anna.Kubalak@dallascounty.org>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg
Date: Tue, 13 Nov 2012 15:54:32 -0600

I agree Ms. Brandt. Please do so unless exigent circumstances arise. Thank you.

From: Amy Murphy
Sent: Tuesday, November 13, 2012 3:24 PM
To: Lydia Brandt
Cc: Michael Snipes; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Lydia,

I thought that both parties had agreed to have the witness lists to each other by last week. I do appreciate your rather lengthy witness list. However, you have indicated that you reserve the right to add witnesses. Out of professional courtesy, and in light of the fact that the State needs to prepare for all witnesses so that we do not waste valuable court time, can you please have a list of witnesses to the Judge and myself by this Friday. I do

67

not think that this is being unreasonable, given the upcoming holiday and the fact that the hearing is only weeks away.


Thank you,


Amy

Amy Sue Melo Murphy

Assistant District Attorney

Appellate Division

(214) 653-3639


_____

From: Lydia Brandt [lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 10:22
To: Michael Snipes
Cc: Amy Murphy; Anna Kubalak
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 - additional time and timing of evid hg

Dear Judge Snipes,

Thank you for your response. I believe the evidentiary hearing will take a minimum of 3-4 days. So that I am prepared to discuss the issue with you, I am in the process of drafting a motion concerning this and other issues relating to the evidentiary hearing. I hope to have it researched and drafted within the next several days.

Once I have completed it, I will call the ADAs Murphy and Kubalak, and also arrange with your court coordinator for a date and time so that all of us can meet with you and discuss the amount of time and the timing of the evidentiary hearing.

Thank you for your openness to reconsider this matter.

I will be back in touch with everyone soon.
lydia

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX 75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information. Any other
interception or use of these materials is strictly prohibited. If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- Michael.Snipes@dallascounty.org wrote:

From: Michael Snipes <Michael.Snipes@dallascounty.org>
To: Lydia Brandt <lydiamb@airmail.net>
Subject: RE: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List
Date: Tue, 13 Nov 2012 08:53:20 -0600

Also, I don't why you have been having a hard time seeing me; I haven't missed a day of work this year and all you have to do is call ahead, but I am sorry if you feel that I have been unavailable.

From: Lydia Brandt [mailto:lydiamb@airmail.net]
Sent: Tuesday, November 13, 2012 8:49 AM
To: Lydia Brandt
Cc: Michael Snipes; Amy Murphy; Anna Kubalak; sian.schilhab@txcourts.gov; Sharon A Johnson; Lisa Smith; Kerry Young
Subject: Re: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Attached R Omitted Attachments A thru E email; Defense Objection and Witness List

I inadvertently omitted attaching the email attachments.  Here they are emails Exhibits A thru and including E.

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

--- lydiamb@airmail.net wrote:

From: "Lydia Brandt" <lydiamb@airmail.net>
To: "Michael Snipes" <Michael.Snipes@dallascounty.org>, "Amy Murphy" <Amy.Murphy@dallascounty.org>,
"Anna Kubalak" <Anna.Kubalak@dallascounty.org>
Cc: "Sian Schilhab" <sian.schilhab@txcourts.gov>, "Sharon Johnson" <sajohnson@dallascounty.org>, "Lisa
Smith" <LISA.SMITH@dallascounty.org>, "Kerry Young" <Kerry.Young@dallascounty.org>
Subject: Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207 -- Defense Objection and Witness List
Date: Tue, 13 Nov 2012 05:09:23 -0800

Broadnax Cause No. WR08-24667-Y, TCCA No. AP-76,207

Dear Judge Snipes and ADA's Amy Murphy and Anna Kubalak:

I am responding to ADA Murphy's 11-7-2012 email listing the witnesses of the prosecution, reciprocating with the defense (Broadnax) witness list (below), and objecting to the single-day ruling for the evidentiary hearing.  The defense acknowledges that the court has twice ruled that the evidentiary hearing will be a single day, December 7, 2012.  However, I did want the judge to know that ADA Murphy and I had made three, good-faith attempts (August 2, 2012, August 16, 2012, October 26, 2012) to visit with Judge Snipes about additional time for the hearing.

I was not with ADA Murphy on August 2, 2012 when she spoke with Judge Snipes because I had had the extraordinary situation that in the past 5 months, the Amarillo and Dallas DAs set 4 executions despite my requests with the trial courts, following unsuccessful negotiations with the prosecution, to not set a date. Those settings were: Hines, 6-6-2012 - 2nd execution setting, withdrawn by court order for further DNA testing; Balentine, 3rd execution setting 8-22-2012, stayed by Supreme Court and case currently pending in SCT; Harris, 2nd executing setting, 9-20-2012 (executed); and Hines, 3rd execution setting 10-24-2012 (executed). The other two times Judge Snipes was not available when Murphy and Brandt came by.

OBJECTION: The Supreme Court has emphasized that "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, it is Mr. Broadnax's contention that the fact-development-limitation as a result of a single-day hearing results in federal due process violations of meaningful opportunity to be heard in state and federal court, adversely impacts Mr. Broadnax's right to meaningful review in state and federal court, and limits the state and federal courts' ability to make a reasonable determination of the facts.

The Order Designating Issues sets out eight (8) issues. A particularly complex fact situation in the case is the unlimited access of the media to criminal defendants. Upon information and belief, this media access appears to be a systemic problem in Dallas County, (and to Mr. Broadnax in particular), and is done at encouragement of law enforcement. The media contact often occurs, as it did in Mr. Broadnax's case, in the interim between arraignment (and 2 requests for counsel by Mr. Broadnax) but prior to appointment of counsel. It resulted in a violation of Broadnax's substantive and procedural rights to counsel and to a fair trial because the media interviews occurred at a critical stage in the post attachment proceedings, making it impossible for defense counsel to render any meaningful assistance whatsoever. Rothgery, 554 U.S. 191, 212 (2008).

DEFENSE WITNESS LIST: The defense acknowledges that twice the court has ruled that the evidentiary hearing will be a single day, although given the length of the defense witness list, it is obvious that it is unlikely that all or even most of the witnesses can be called to testify. Mr. Broadnax reserves the right to amend the defense witness list.

Defense (Broadnax) Witness List

Shawn Rabb
Rebecca Lopez
Steven Pickette
Ellen Goldberg
Kim Leach
Audrey Kelly
Mary Burdette
Cliff Jenkins
Dr. John Edens
Dwight Stewart
Maurice Owens
Nequia Williams
Keerin Martin
Clara Holyfield
Juanita Mays
Teresa Thompson
Jackie Aaron
Kevon Eason
Casey Norman
David Alex
Andrea Handley
Brauchle, Paul
Busbey, Brook
Franklin, Richard
Johnson, Karo
Johnson, Paul
Lollar, Brad
McClung, Robbie

Parks, Doug
Sanchez, Juan
Tatum, John
   Capital defendants who have been interviewed by the media before appointment of counsel, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
   Other persons, who I have been told have relevant information about media interviews of Dallas County criminal defendants, and following further investigation to confirm their identities and the relevancy of their information, I will provide their names, etc.
Expert(s) on first amendment law

cc:   Lisa Smith, ADA Dallas County; Kerry Young, Staff Attorney Dallas County; Sian Schilhab, General Counsel TCCA; sharon Johnson, court coordinator

SEE ATTACHED EXHIBITS:   Exhibit A: Email dated Thur 08/02/12 03:24 PM from Sharon Johnson to Murphy and Brandt, Subject: Broadnax Writ Hearing; Exhibit B: Email dated Fri 08/03/12 07:29 AM From Brandt to Murphy,  Subject: Broadnax Writ Hearing; Exhibit C: Email dated Fri 08/03/12 09:29 AM from Murphy to Brandt, Subject: Broadnax Hearing; Exhibit D: Email from Snipes, J. dated Friday, August 03, 2012 14:23 to Murphy, Brandt, Johnson, Subject Broadnax Writ Hearing ("The hearing will be completed in a day"); Exhibit E: Email dated  Fri 08/03/12 09:37 PM from Murphy to Snipes, J. cc: Brandt and Johnson, Subject: Broadnax Writ Hearing

Lydia M.V. Brandt, Esq.
lydiamb@airmail.net
The Brandt Law Firm, P.C.
P.O. Box 850843
Richardson, TX  75085-0843
(972) 699-7020 Voice
(972) 699-7030 Fax

The information contained in this electronic mail and any attachments is
intended for the exclusive use of the addressee(s) and may contain
confidential, privileged, or proprietary information.  Any other
interception or use of these materials is strictly prohibited.  If you
have received these materials in error, please notify me immediately by
telephone and destroy all electronic, paper, or other versions.

Case 3:15-cv-01758-N    Document 42-5    Filed 06/29/16    Page 102 of 215    PageID 11446

No. W08-24667-Y (A)

FILED

2014 MAY 22 PM 2:29

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____DEPUTY

Ex parte                              §            In the Criminal

James Broadnax                        §            District Court No. 7

                                      §            Dallas County, Texas

## STATE'S MOTION TO SHOW CAUSE FOR COURT REPORTER'S FAILURE TO FILE REPORTER'S RECORD OF WRIT HEARING

The State of Texas, by and through its Criminal District Attorney of Dallas County, moves this Court to order the court reporter, Sharon Hazelwood, to appear in open court to show cause as to why she should not be held in contempt for failing to file the reporter's record from the writ hearing in this case. In support of this motion, the State presents the following:

(1)

Applicant received the death sentence on August 21, 2009. Pursuant to article 11.071 of the criminal procedure code, applicant filed his original state habeas application on December 20, 2011. The State filed its response on June 15, 2012. The Court conducted a hearing on the writ application on December 6 and 7, 2012.

Under article 11.071, the court reporter is required to prepare a transcript of the writ hearing no later than the 30th day after the date the hearing ends and

73

file the transcript with the clerk of the convicting court. Tex. Code Crim. Proc. Ann. art. 11.071, § 5(d) (West Supp. 2013). Thus, the record from the writ hearing in this case was due on or before January 6, 2013. The record is now overdue by a year and four months.

The court reporter has prepared a draft of the record and provided each party a copy to review. She sent the transcript of the first day of the hearing on September 10, 2013; she sent the transcript for the second day of the hearing on October 4, 2013. On November 25, 2013, defense writ counsel emailed the court reporter complaining of errors in the record and providing a detailed list of corrections.

The errors were not significant; they related almost entirely to the index and exhibit volumes. Moreover, both parties met with the court reporter to review those errors and reached an agreement on the corrections that needed to be made. Still the record has not been filed.

The State has attempted to facilitate the record's filing without the Court's intervention. Below is a summary of the most recent efforts made to get a final draft of the record completed and filed:

> (1) On April 9, 2014, the State emailed the court reporter asking if she had made the corrections and filed the record. The court

2

74

reporter emailed another draft for the parties to review that same day.

(2) On April 15, 2014, the State emailed the court reporter again asking if she had filed the record; she replied that she had not.

(3) On April 22, 2014, defense writ counsel informed the State that she had not reviewed the latest draft because her computer had crashed.

(4) On April 23, 2014, defense writ counsel informed the court reporter and the State that some of the errors still had not been corrected. She provided the court reporter with a list of the uncorrected errors. The court reporter responded that she would make the corrections that weekend and send it directly to the Court of Criminal Appeals.

(5) On April 24, 2014, defense counsel told the court reporter that she wanted to review the record again before it was filed.

(6) On May 7, 2014, the State emailed the court reporter asking what day she had filed the record. The court reporter replied that she had not corrected or filed the record yet, that she would send a corrected draft to the parties to review again, and then she would mail it to the Court of Criminal Appeals on Monday, May 12, 2014. The State replied that no further review was necessary and that the court reporter should simply make the corrections and file the record. Furthermore, the State informed the court reporter that if the record was not filed by the end of the week, the State would notify the Court.

(7) On May 12, 2014, the undersigned counsel again emailed the court reporter asking if the record had been filed, and the court reporter has not responded by email, phone, or in person.

3

Because the foregoing efforts have failed, the State now asks the Court to intervene. In particular, the State asks the Court to order the court reporter to appear in open court to show cause why she should not be held in contempt for failing to file the reporter's record of the writ hearing. Furthermore, the State asks the Court to order Ms. Hazelwood to appear with a final, corrected draft of the record and to file it with the court clerk when she appears. If the court reporter appears without a final draft of the record, the State asks the Court to order that Ms. Hazelwood not take on any additional reporting duties until she has completed and filed the record in this case.

Respectfully submitted,

Lisa Smith (SBT 00787131)
Assistant District Attorney
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3630
Lisa.smith@dallascounty.org

Craig Watkins
Criminal District Attorney
Dallas County, Texas

### Certificate of Service

The State emailed a copy of this motion to defense writ counsel, Lydia Brandt, at lydiamb@airmail.net, on May 22, 2014.

Lisa Smith

4

76

NO. W08-24667-Y(A)

| Ex parte | § | In the Criminal |
|---|---|---|
| James Broadnax | § | District Court No. 7 |
| | § | Dallas County, Texas |

## PROPOSED ORDER TO APPEAR AND SHOW CAUSE

The Court orders court reporter Sharon Hazelwood to appear before it on May ____, 2014 at _____ to appear to show cause for failing to file the reporter's record of the writ hearing in this cause. Furthermore, the Court orders Ms. Hazelwood to bring a corrected, final draft of the record and file it with the clerk of this Court on the date of appearance.

_____

Judge Mike Snipes

5

77

No. W08-24667-Y (A)

FILED

2014 MAY 22  PM 2: 29

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____DEPUTY

| | | |
|---|---|---|
| Ex parte | § | In the Criminal |
| | | |
| James Broadnax | § | District Court No. 7 |
| | | |
| | § | Dallas County, Texas |

## STATE'S MOTION TO SHOW CAUSE FOR COURT REPORTER'S FAILURE TO FILE REPORTER'S RECORD OF WRIT HEARING

The State of Texas, by and through its Criminal District Attorney of Dallas County, moves this Court to order the court reporter, Sharon Hazelwood, to appear in open court to show cause as to why she should not be held in contempt for failing to file the reporter's record from the writ hearing in this case. In support of this motion, the State presents the following:

(1)

Applicant received the death sentence on August 21, 2009. Pursuant to article 11.071 of the criminal procedure code, applicant filed his original state habeas application on December 20, 2011. The State filed its response on June 15, 2012. The Court conducted a hearing on the writ application on December 6 and 7, 2012.

Under article 11.071, the court reporter is required to prepare a transcript of the writ hearing no later than the 30th day after the date the hearing ends and

78

file the transcript with the clerk of the convicting court. Tex. Code Crim. Proc. Ann. art. 11.071, § 5(d) (West Supp. 2013). Thus, the record from the writ hearing in this case was due on or before January 6, 2013. The record is now overdue by a year and four months.

The court reporter has prepared a draft of the record and provided each party a copy to review. She sent the transcript of the first day of the hearing on September 10, 2013; she sent the transcript for the second day of the hearing on October 4, 2013. On November 25, 2013, defense writ counsel emailed the court reporter complaining of errors in the record and providing a detailed list of corrections.

The errors were not significant; they related almost entirely to the index and exhibit volumes. Moreover, both parties met with the court reporter to review those errors and reached an agreement on the corrections that needed to be made. Still the record has not been filed.

The State has attempted to facilitate the record's filing without the Court's intervention. Below is a summary of the most recent efforts made to get a final draft of the record completed and filed:

> (1) On April 9, 2014, the State emailed the court reporter asking if she had made the corrections and filed the record. The court

2

reporter emailed another draft for the parties to review that same day.

(2) On April 15, 2014, the State emailed the court reporter again asking if she had filed the record; she replied that she had not.

(3) On April 22, 2014, defense writ counsel informed the State that she had not reviewed the latest draft because her computer had crashed.

(4) On April 23, 2014, defense writ counsel informed the court reporter and the State that some of the errors still had not been corrected. She provided the court reporter with a list of the uncorrected errors. The court reporter responded that she would make the corrections that weekend and send it directly to the Court of Criminal Appeals.

(5) On April 24, 2014, defense counsel told the court reporter that she wanted to review the record again before it was filed.

(6) On May 7, 2014, the State emailed the court reporter asking what day she had filed the record. The court reporter replied that she had not corrected or filed the record yet, that she would send a corrected draft to the parties to review again, and then she would mail it to the Court of Criminal Appeals on Monday, May 12, 2014. The State replied that no further review was necessary and that the court reporter should simply make the corrections and file the record. Furthermore, the State informed the court reporter that if the record was not filed by the end of the week, the State would notify the Court.

(7) On May 12, 2014, the undersigned counsel again emailed the court reporter asking if the record had been filed, and the court reporter has not responded by email, phone, or in person.

Because the foregoing efforts have failed, the State now asks the Court to intervene. In particular, the State asks the Court to order the court reporter to appear in open court to show cause why she should not be held in contempt for failing to file the reporter's record of the writ hearing. Furthermore, the State asks the Court to order Ms. Hazelwood to appear with a final, corrected draft of the record and to file it with the court clerk when she appears. If the court reporter appears without a final draft of the record, the State asks the Court to order that Ms. Hazelwood not take on any additional reporting duties until she has completed and filed the record in this case.

Respectfully submitted,

Lisa Smith (SBT 00787131)
Assistant District Attorney
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3630
Lisa.smith@dallascounty.org

Craig Watkins
Criminal District Attorney
Dallas County, Texas

### Certificate of Service

The State emailed a copy of this motion to defense writ counsel, Lydia Brandt, at lydiamb@airmail.net, on May 22, 2014.

Lisa Smith

4

81

NO. W08-24667-Y(A)

| Ex parte | § | In the Criminal |
| James Broadnax | § | District Court No. 7 |
| | § | Dallas County, Texas |

## PROPOSED ORDER TO APPEAR AND SHOW CAUSE

The Court orders court reporter Sharon Hazelwood to appear before it on May ____, 2014 at _____ to appear to show cause for failing to file the reporter's record of the writ hearing in this cause. Furthermore, the Court orders Ms. Hazelwood to bring a corrected, final draft of the record and file it with the clerk of this Court on the date of appearance.

_____
Judge Mike Snipes

5

82

FILED

2014 MAY 28 AM 9:29

GA... ...  ...ONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____DEPUTY

IN THE
TEXAS COURT OF CRIMINAL APPEALS
and
CRIMINAL DISTRICT COURT #7
OF DALLAS COUNTY, TEXAS

)
)
EX PARTE JAMES BROADNAX.            )
)            Writ Case No. AP-76.207
APPLICANT                           )            Trial Ct. # F08-24667-Y
)
)

RESPONSE TO STATE'S MOTION
TO SHOW CAUSE FOR COURT REPORTER'S
FAILURE TO FILE REPORTER'S RECORD OF WRIT HEARING

Applicant, JAMES BROADNAX. files this response to the State's Motion To Show Cause

For Court Reporter's Failure to File Reporter's Record of Writ Hearing (Show Cause Motion) filed

by the State of Texas on May 22, 2014. The State seeks to have the court enter an order that the

court reporter, Sharon Hazelwood, appear in court to show cause as to why she should not be held

in contempt for failing to file the reporter's record from the writ hearing held December 6 and 7,

2012.

1.      The defense agrees that the record of the December 6 and 7, 2012 needs to be filed

because it is more than a year since the hearing had been held. The defense disagrees with assertions

made in the State's Show Cause Motion.

2.      Among other things, the State of Texas makes an untrue assertion:

On November 25, 2013, defense writ counsel emailed the court reporter complaining

83

of errors in the record and providing a detailed list of corrections. *The errors were not significant; they related almost entirely to the index and exhibit volumes.*

3.      The errors that remain outstanding as of the filing of this Response *are* significant and must be corrected. These errors extend beyond the index and exhibit volumes.[1]

4.      Even the State of Texas agrees that errors remain in the hearing volume itself (not just the exhibits and index) as reflected in the March 28, 2014 email of Anna Kubalak, assistant district attorney representing the State of Texas, to the court reporter. Ms. Kubalak's email advises the court reporter about errors that – even after the 3rd revision -- remain *not* corrected to date. Ms. Kubalak's email of March 28, 2014 (Exhibit 1, attached) to the court reporter recites:

> Also, in her amended errata sheet dated 2/2/14, Lydia pointed out some errors in the text of the Dec. 7 hearing (volume 3). I agree that the following changes should be made:
>
> p. 98, line 14: "State's Exhibit Number 2" should be "Defense Exhibit Number 13"
>
> p. 165, line 17: "BY MS. BRANDT" should be "BY MS. MURPHY"
>
> p. 166, line 14: "Harris" should be "Hare"
>
> p. 168, line 3: "MS. BRANDT" should be "MS. MURPHY"
>
> p. 168, line 4: "MS. MURPHY" should be "MS. BRANDT"
>
> Thanks.
>
> Anna

---

[1]     Contrary to the State's assertion, the exhibits are an essential part of the writ hearing and the witnesses testified as to them and they must be in correct order and number to understand what transpired at the hearing. Although corrections to the exhibits have been made, corrections to the transcript itself remain outstanding.

2

84

5.      These errors are significant because they attribute the exhibits and the direct and cross examination of witnesses to the wrong party, thereby confusing (as well as misrepresenting) what transpired at the hearing.  The HARE psychopathy checklist is referred to as the HARE, not the "Harris."  As the case moves into later stages of the habeas proceedings before the Texas Court of Criminal Appeals, and the federal courts, no one would know what was being referred to when the transcript uses the word, Harris.

6.      The court reporter had assigned the task of making the corrections to another individual.  The work product that results is apparently not being proof read by the court reporter to ensure all the corrections have been made.  Instead, the court reporter has been sending the revisions, 1st, 2nd and the 3rd, to the parties for proof reading.  And errors remain, despite a written errata sheet provided to the court reporter by the defense.

7.      If the court reporter chooses not to proof read to ensure the corrections are made, then undersigned counsel has no choice except to request that the court reporter send the 4th revision to the parties for their review.  The transcript of the writ hearing can not just be filed without ensuring that it is a correct and accurate reflection of what occurred.  Otherwise, the transcript misrepresents what transpired at the hearing.

Accordingly, Applicant too asks this court to enter an order that the court reporter have the corrections made to the transcript and proof read the work and ensure the corrections are made, or that the 4th revision be provided to the parties for further review and correction if necessary.

3

85

Lydia M.V. Brandt
Texas Bar No. 00795262
THE BRANDT LAW FIRM, P.C.
P.O. Box 850843
Richardson, Texas  75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR APPLICANT

## CERTIFICATE OF SERVICE

I, Lydia M.V. Brandt, certify that on May 28, 2014, I caused a copy of the foregoing to be mailed by U.S. mail and email to:

Lisa Smith and Ana Kubalak
Assistant Dallas District Attorneys
lisa.smith@dallascounty.org
anna.kubalak@dallascounty.org
Appellate Division, Capital Post-Conviction
Dallas District Attorney's Office
FRANK CROWLEY COURTS BUILDING
133 N RIVERFRONT BOULEVARD, LB 19
DALLAS, TEXAS 75207-4399
(214)653-3600 Office
(214) 653-5774 FAX

_____
Lydia M.V. Brandt, Esq.

cc:   Mr. James Broadnax #999549
      Polunsky Unit, TDCJ
      3872 FM 350 South
      Livingston, TX 77351-8580

4

86

**Exhibit 1**
Email Anna Kubalak, Assistant Dallas District Attorney, March 28, 2014

**Related Searches:**



?

## Web Mail

## Internet America

## Online Documents

## Web-Based Email

## Web Usability

How's the record looking? Will we have a completed record soon? We really need to get it filed so that we can get the findings filed and the writ dispo'd.

Thanks!

**From:** Anna Kubalak
**Sent:** Friday, March 28, 2014 12:02 PM
**To:** Sharon Hazlewood
**Cc:** Lydia Brandt; Lisa Smith
**Subject:** Broadnax Record

Hi Sharon,

I noticed that the "Exhibit Index" pages in both the Master Index and the Dec. 7 hearing volume do not include any reference to State's Exhibit Number 1. This was the power-point presentation (print version) offered and admitted during the State's direct examination of Dwight Stewart (Vol. 3, p. 81). I've attached a copy for your reference. It was reproduced in the original exhibits volume you sent; it just doesn't appear in the index

Also, in her amended errata sheet dated 2/2/14, Lydia pointed out some errors in the text of the Dec. 7 hearing (volume 3). I agree that the following changes should be made:

1  p. 98, line 14: "State's Exhibit Number 2" should be "Defense Exhibit Number 13"

2  p. 165, line 17: "BY MS. BRANDT" should be "BY MS. MURPHY"

3  p. 166, line 14: "Harris" should be "Hare"

4. p. 168, line 3: "MS. BRANDT" should be "MS. MURPHY"

5  p. 168, line 4: "MS. MURPHY" should be "MS. BRANDT"

Thanks.
Anna

Anna Kubalak
Assistant District Attorney
Appellate Division
Dallas County District Attorney's Office
(214) 653-3639
(214) 653-3643 (fax)

W08-24667-Y(A)

FILED
2014 JUN 24 PM 12: 03
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____DEPUTY

Ex Parte                        §        In the Criminal District

James Garfield Broadnax                   Court No. 7

                                §        of Dallas County, Texas

## STATE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the application for writ of habeas corpus, the State's original answer, official court documents and records, and the Court's personal experience and knowledge, the Court makes the following findings of fact and conclusions of law:

## PROCEDURAL HISTORY

A Dallas County jury found applicant guilty of capital murder. (CR: 698; RR47: 203). In accordance with the jury's answers to the special issues, the trial court sentenced applicant to death on August 20, 2009. (CR: 650-51, 698; RR54: 4-7). Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b), (e)(1), (g) (West Supp. 2013). On December 14, 2011, the Court of Criminal Appeals affirmed applicant's conviction. *See Broadnax v. State*, No. AP-76,207, 2011 Tex. Crim. App. Unpub. LEXIS 920 (Tex. Crim. App. Dec. 14, 2011) (not designated for publication).

Applicant filed his application for writ of habeas corpus on December 20, 2011. Applicant alleged eight grounds for relief. The State filed its original answer to the application on June 15, 2012. A hearing was conducted in this Court on December 7, 2012. (Writ RR3: 1).[1]

_____

[1] The State will refer to the reporter's record from the trial as RR# and the reporter's record from the writ hearing as Writ RR#.

89

## TABLE OF CONTENTS

The following table indicates the pages on which the Court's findings and conclusions for each ground may be found:

LENGTH OF EVIDENTIARY HEARING: ...........................................................................2
GROUNDS ONE AND TWO.........................................................................................3
GROUND THREE....................................................................................................11
GROUND FOUR......................................................................................................17
GROUND FIVE.......................................................................................................25
GROUND SIX.........................................................................................................27
GROUND SEVEN ...................................................................................................29
GROUND EIGHT....................................................................................................35

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law:

### LENGTH OF EVIDENTIARY HEARING:

1.  Applicant asked the Court to grant him several days over which to present evidence in the form of live testimony.

2.  The Court declined that request, limiting the parties to one full day of testimony (December 7, 2012). *See* "State's Filing of Additional Exhibit" (filed 10/4/13). On December 6, 2012, however, the Court agreed to reconsider this limitation and informed the parties that it could hear testimony on December 10 and 11, 2012, if necessary. (Writ RR3: 6).

3.  In the end, the Court determined that no additional evidence by way of live testimony was necessary.

4.  Nevertheless, neither party has been limited in presenting evidence in other forms since the December 2012 hearing. *See* "State's Filing of Additional Exhibit" (filed 10/4/13); Applicant's "Motion to Reconsider & Rescind the 12-12-2012 Order, to Reopen the Evidentiary Hearing, & to Compel Rosales, Lopez, and WFAA-TV to Testify & Produce Documents" (filed 12/18/12).

2

## GROUNDS ONE AND TWO:
### Lack of Counsel During Media Interviews

In his first and second grounds for relief, applicant alleges that he was entitled to the appointment of counsel to represent him at the time of his various interviews with the media. According to applicant, the failure to appoint counsel prior to the media interviews violated his Sixth Amendment right to counsel and his Fourteenth Amendment rights to procedural and substantive due process and to equal protection. Applicant further alleges that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional because they fail to provide for the assistance of counsel during media interviews.

### *Claims Are Procedurally Barred*

5.  Matters not raised at trial cannot form the basis for habeas relief. *See Ex parte Dutchover*, 779 S.W.2d 76, 77 (Tex. Crim. App. 1989); *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989); *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974) ("The same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."). Additionally, habeas corpus is not to be used as a substitute for appeal. *Ex parte Clore*, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985) (en banc).

6.  If a claim could have been raised on appeal, but was not, the applicant is procedurally barred from raising the issue for the first time through habeas. *See Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007); *see, e.g., Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998) (holding that because claims concerning the jury charge at punishment should have been raised on direct appeal, the claims will not be addressed on habeas).

7.  Finally, habeas corpus is not to be used to relitigate matters that were addressed on appeal. *See Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994); *see, e.g., Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984) (holding that matters addressed on direct appeal need not be addressed on habeas).

3

8.  Applicant could have but did not previously assert at trial or on appeal that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional. Therefore, these claims are procedurally barred.

9.  Applicant could have but did not previously assert at trial or on appeal that his constitutional right to equal protection was violated. Therefore, this claim is procedurally barred.

10. Applicant's allegation that the media interviews violated his constitutional rights to procedural and substantive due process could have been but was not presented on appeal. Therefore, this claim is procedurally barred.

11. At trial and on appeal, applicant alleged a violation of his Sixth Amendment rights and argued that he was incapacitated and could not have consented to the interviews.  (RR43: 101-09); *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *28-30.

12. Applicant's first and second grounds for relief necessitate a finding of State agency in order to be granted. *United States v. Ash*, 413 U.S. 300, 312-13 (1973); *see also Rothgery*, 554 U.S. at 212 n.15.

13. This Court and the Court of Criminal Appeals have already rejected applicant's Sixth Amendment claim that the reporters were acting as agents of the State during the interviews. (RR43: 111-13); *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *28-30.

14. Applicant is procedurally barred from relitigating the issue of State agency on habeas and, thus, his Sixth Amendment claim should be dismissed.

### *Applicant's Rights to Counsel and Due Process Were Not Violated by Media Interviews*

15. The United States Supreme Court has held that the Sixth Amendment right of the accused to assistance of counsel in all criminal prosecutions is limited by its terms: "it does not attach

4

until a prosecution is commenced." *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008).

16. The United States Supreme Court has, for purposes of the right to counsel, pegged commencement to the "initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any "critical stage" of the post-attachment proceedings. *Id.* at 212. Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself. *Id.*

17. Generally, an article 15.17 initial appearance and magistration marks the initiation of adversarial judicial proceedings in Texas and "plainly signals" the attachment of a defendant's Sixth Amendment right to counsel. *Pecina v. State*, 361 S.W.3d 68, 77 (Tex. Crim. App. 2012) (citing *Rothgery*, 554 U.S. at 212).

18. Applicant's argument appears to be that counsel was not appointed soon enough to provide him with adequate representation at the media interviews, which he asserts was a "critical stage." In support of his arguments, applicant points to several facts and circumstances surrounding the timing of the appointment of his lead counsel, Brad Lollar. (Broadnax's Writ App., pp. 7-20).

19. Furthermore, applicant appears to be arguing that the Texas Fair Defense Act and the Dallas County Procedures for the Appointment of Counsel in Death Penalty Cases are unconstitutional because (1) they do not anticipate that the media may want to speak with an inmate prior to the appointment of counsel and (2) they do not provide for the appointment of counsel before a media interview occurs.

20. Applicant's arguments are inherently flawed.

21. The United States Supreme Court has held that a critical stage is a proceeding between an individual and an agent of the State that amounts to a "trial-like confrontation," at which counsel would

5

93



help the accused in coping with legal problems or meeting with his adversary. *United States v. Ash*, 413 U.S. 300, 312-13 (1973); *see also Rothgery*, 554 U.S. at 212 n.15. Accordingly, in order for a stage to be "critical" for purposes of the Sixth Amendment, there necessarily must be interaction with a State agent.

22.    Attachment occurred when applicant went before the magistrate on June 21, 2008; at that point, he was entitled to the appointment of counsel within a reasonable time to allow for adequate representation during any "critical stage."

23.    But the reporters were not acting as agents of the State. (RR43: 111-13).

24.    Because the reporters were not acting as agents of the State during their interviews, the interviews were not critical stages. *See Ash*, 413 U.S. at 312-13; *see also Rothgery*, 554 U.S. at 212 n.15.

25.    The fact that counsel may not have been appointed until after the media interviews in this case is of no moment because the media interviews were not critical stages.

26.    Applicant presents no legal authority supporting his proposition that interviews conducted by private media outlets are critical stages, and the Court finds there is no such authority.

27.    Applicant argues that the United States Supreme Court's decision in *White v. Maryland*, 373 U.S. 59 (1963) is directly applicable to his case. However, *White* is distinguishable from the instant case. In *White*, the Supreme Court held that a preliminary hearing where White entered a plea was a "critical stage" requiring counsel. *White*, 373 U.S. at 59-60. The hearing in *White* clearly involved State action. The media interviews in this case did not involve any State action.

28.    Applicant fails to establish by a preponderance of the evidence that his Sixth Amendment right to counsel or his due process rights were violated.

29.    Applicant's Sixth Amendment right to effective assistance of counsel and his due process rights were not violated.

6

94

### *Applicant's Equal Protection Rights Were Not Violated by Media Interviews*

Applicant alleges that his right to equal protection was violated because his co-defendant, Demarius Cummings, was appointed counsel one day prior to him, despite the fact that they requested the appointment of counsel at the same time.

30.    The Equal Protection Clause requires that all similarly situated persons be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

31.    The purpose of the Equal Protection Clause is to prevent the government from discriminating against any person or class of persons. *Ingram v. State*, 124 S.W.3 d672, 677 (Tex. App. – Eastland 2003, no pet.).

32.    Equal protection is implicated if a classification interferes with a fundamental right or burdens a suspect class. *Clark v. State*, 665 S.W.2d 476, 580-81 (Tex. Crim. App. 1984).

33.    If no fundamental right or suspect classifications are involved, the challenged government action does not violate equal protection "so long as unequal treatment of persons is based upon a reasonable and substantial classification of person." *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987). More simply put, the classification will not be set aside if it is rationally related to a legitimate state interest. *Clark*, 665 S.W.2d at 481.

34.    Lastly, equal protection does not require things that are different in fact to be treated in law as though they were the same. *Smith v. State*, 898 S.W.2d 838, 847 (Tex. Crim. App. 1995).

35.    Applicant and his codefendant were not treated differently. Each was arraigned, permitted to invoke their right to counsel, and received counsel within 3 days of their request.

36.    As constitutionally required, the appointment of counsel for both occurred within a reasonable amount of time from their request for counsel.

7

95

37.  Applicant's attorney was appointed and notified of his appointment the morning after Cummings attorney was appointed. At this point, applicant had already given the complained-of media interviews.

38.  The delay was not the product of any discriminatory intent, however. The Court notified applicant's counsel of his appointment at the earliest opportunity, after receiving notification of applicant's arraignment and invocation of his right to counsel.

39.  The appointment of applicant's counsel was not delayed because of applicant's race or any other suspect classification. And the delay did not implicate any fundamental right of applicant's. As previously noted, applicant had no right to counsel at the time of his media interviews. The only constitutional right implicated by the media interviews was applicant's First Amendment right to free speech. Ironically, applicant's appointed counsel arguably violated this right when, without first consulting applicant, he directed the Sheriff's Office to disallow any future media interviews.

40.  Applicant fails to prove by a preponderance of the evidence a violation of his constitutional right to equal protection.

41.  The Court concludes that applicant's right to equal protection was not violated.

42.  Applicant also argues a violation of a statute, namely Texas Code of Criminal Procedure 1.051(i), in the delay of appointment of his trial counsel.

43.  Habeas corpus is available only to review jurisdictional defects or denials of fundamental or constitutional rights. *See Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989). Claims alleging a violation of a statute are not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002).

44.  To the extent applicant's claim alleges a statutory violation, it is not cognizable on habeas and, thus, it is procedurally barred.

8

96

45.      Even assuming this allegation was cognizable, applicant fails to prove by a preponderance of the evidence any statutory violation.

46.      Cummings and applicant were appointed counsel within the statutorily-required time frame, and there is no statutory requirement that co-defendant's be appointed counsel at the same time. *See* Tex. Code Crim. Proc. art. 1.051(i) (West Supp. 2013).

47.      There was no statutory violation.

48.      Lastly, applicant fails to prove he was harmed by any violation, constitutional or statutory.

49.      On habeas review, applicant bears the burden of proving by a preponderance of the evidence that the alleged error actually contributed to his conviction or punishment. *Ex parte Fierro*, 943 S.W.2d 370, 374-75 (Tex. Crim. App. 1996).

50.      As previously noted, the decision to speak to the media belonged to applicant, and applicant fails to show that he would have taken counsel's advice and declined the interviews. Thus, even if applicant had been appointed counsel at the same time as his codefendant, the State may still have had access to applicant's statements to the media.

### Applicant's Contention that the Interviews Were Material and Unfairly Prejudicial

Applicant also alleges that "[t]he media interviews were material and unfairly prejudicial, rendering defense counsel ineffective throughout the entirety of trial." In the body of his argument, applicant asserts that (1) counsel would have stopped the media interviews had he been appointed sooner; (2) Dallas County judges, prosecutors, and the defense bar are aware that the media seeks to have access to persons accused of capital crimes, including applicant; (3) the presiding judge in this case is aware of the material and unfair prejudice done by uncounseled media interviews; (4) the media interviews were the focal point at both phases of the trial; (5) the Court of Criminal Appeals referred to the media interviews in upholding the sufficiency of the evidence to support the jury's determination that applicant was a future danger; and (6) the media interviews heavily influenced the jury's verdict.

9

97

51.    This allegation does not present a constitutional violation distinct from the previously addressed claims. Rather, it appears to be a harm argument regarding the alleged Sixth Amendment violation.

52.    As set out above, however, the Court found and concluded that there was no Sixth Amendment or other constitutional violation. Therefore, a harm analysis is unnecessary.

53.    If applicant's allegations were intended as a separate, non-constitutional challenge to the admissibility of the media interviews, they are not cognizable.

54.    The alleged violation of a statute, rule, or non-constitutional doctrine is not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002).

55.    To the extent these allegations are premised on the affidavit of Jennifer Reif (Applicant's Exhibit 23), the affidavit is not competent evidence and is inadmissible under Texas Rule of Evidence 606(b).

56.    Ms. Reif, an intern for the Texas Defender Service, interviewed three of applicant's jurors – John Vessels, William Kreighbaum, and Alex James Folz – about applicant's media interviews and the role those interviews played in their deliberations. (Applicant's Exhibit 23).

57.    Rule 606(b) prohibits testimony or affidavits from a juror "as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict." There are only two exceptions to this prohibition. A juror may attest (1) to whether an outside influence was improperly brought to bear upon any juror and (2) to rebut a claim that the juror was not qualified to serve. Tex. R. Evid. 606(b).

58.    The jurors' statements to Ms. Reif do not meet either of the exceptions of Rule 606(b).

10

98

### *There is No Constitutional Requirement that an Inmate Knowingly and Voluntarily Consent to Media Interviews*

59.      Lastly, applicant alleges that he did not knowingly or voluntarily consent to the media interviews.

60.      Habeas corpus is available only to review jurisdictional defects or denials of fundamental or constitutional rights. *See Ex parte Banks*, 769 S.W.2d at 540.

61.      Applicant does not cite to any fundamental or constitutional right that was allegedly violated. Thus, this allegation is not cognizable. *See Ex parte Banks*, 769 S.W.2d at 540.

62.      Moreover, applicant could have but did not raise on direct appeal the allegation that his consent to the interviews was unknowing and involuntary. Thus, it is procedurally barred.

63.      Lastly, even assuming applicant's allegation is of constitutional dimension, it fails on the merits.

64.      Applicant fails to prove by a preponderance of the evidence that his consent to the media interviews was unknowing and involuntary.

65.      Applicant's consent to the media interviews was knowing and voluntary.

66.      In sum, all of the relief requested in applicant's first and second grounds should be denied.

### GROUND THREE:
### Counsel's Investigation and Presentation of Sixth Amendment Claim

In his third ground for relief, applicant alleges that trial counsel was ineffective for failing to investigate and raise the precise Sixth Amendment claims he raises in his first and second grounds for relief. Applicant alleges that he was prejudiced by trial counsel's failure to challenge the admissibility of the media interviews on Sixth Amendment grounds because the interviews were a vital part of both phases of the trial.

11

99

67.  The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

68.  An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (explaining the standard under *Strickland*).

69.  Effective assistance of counsel does not mean errorless counsel. *See Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993).

70.  To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See Ex parte McFarland*, 163 S.W.3d 743, 753 (Tex. Crim. App. 2005); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This highly deferential review is applied to avoid "the distorting effect of hindsight." *Ex parte McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

71.  Contrary to applicant's allegation, trial counsel did object to the admissibility of the media interviews based on violations of the Sixth Amendment. (RR43: 105-06).

72.  As previously stated, the reporters were not agents of the State and the media interviews were not "critical stages." Consequently, applicant's Sixth Amendment right to counsel was not violated during the media interviews.

73.  Thus, the objection regarding the right to counsel at the media interviews would have been frivolous.

12

74.    The statements made by Ms. Wrisner to writ counsel regarding the appointment of counsel are unsworn. Therefore, the Court will not rely upon them. (Writ App., p. 12).

75.    Catherine Bernhard, a criminal defense attorney, testified at the writ hearing held on December 7, 2012. (Writ RR3: 22-23). Ms. Bernhard testified regarding her personal experience regarding the past and present procedures on being appointed counsel in capital murder cases and her experience handling media interviews in the high-profile cases. (Writ RR3: 22-49).

76.    Brooke Busbee, a criminal defense attorney, testified at the writ hearing held on December 7, 2012. (Writ RR3: 51). Ms. Busbee testified regarding her own personal experience regarding media interviews in high-profile cases. (Writ RR3: 51-65).

77.    Although much attention during the testimony was given to the change in appointment procedures for capital cases in 2002, Ms. Busbee testified that media interviews still occurred under the prior procedures. (RR2: 68).

78.    William E. Karo Johnson, a criminal defense attorney, testified at the writ hearing held on December 7, 2012. (Writ RR3: 88). Mr. Johnson testified regarding his personal experience with being appointed to high-profile capital murder cases that involve media interviews. (Writ RR3: 88-108).

79.    The testimony of Ms. Bernhard, Ms. Busbee, and Mr. Johnson established that in 2002, the Texas Fair Defense Act allowed for a greater time in which counsel could be appointed.

80.    The testimony of Ms. Bernhard, Ms. Busbee, and Mr. Johnson did not establish that there is state action in media interviews.

81.    The testimony of Ms. Bernhard, Ms. Busbee, and Mr. Johnson did not establish that the Texas Fair Defense Act was unconstitutional.

82.    The testimony of Ms. Bernhard, Ms. Busbee, and Mr. Johnson did not establish that the defense's representation in this case fell below an objective standard of reasonableness.

101



83. The testimony of Ms. Bernhard, Ms. Busbee, and Mr. Johnson did not establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

84. Brad Lollar was lead counsel for applicant during trial. (Writ RR3: 119). Douglas Parks was applicant's second-chair counsel during trial and was responsible for conducting legal research. (Writ RR3: 119, 123). Attorney Kerri Mallon had a limited role in applicant's trial team. (Writ RR3: 119).

85. Brad Lollar and Douglas Parks testified at the hearing held on December 7, 2012. The Court finds that Mr. Parks and Mr. Lollar were credible witnesses.

86. Mr. Lollar has been an attorney for 35 years and a criminal defense attorney since 1982. (Writ RR3: 131).

87. Mr. Parks was licensed to practice law in 1970 and has been active in criminal defense since 1972. (Writ RR3: 114). He has focused on criminal defense work since the late 1970's. (Writ RR3: 114). He is the criminal defense lawyer member of the committee for the First Administrative District that approves the applications of other lawyers to be on the list of lawyers who can be appointed as first and second-chair counsel in capital cases. (Writ RR3: 116).

88. The Court finds that based on their extensive experience, trial counsel made a sound and reasonable strategic decision regarding which legal arguments to raise and pursue in challenging the admissibility of the media interviews. (Writ RR3: 121-25, 128).

89. Mr. Parks did not review the record prior to his testimony at the writ hearing held on December 7, 2012. (Writ RR3: 120). Mr. Parks remembered that he talked with Mr. Lollar regarding strategy to exclude the videotapes of the media interviews. (Writ RR3: 121).

90. Their strategy was to show that the media interviews of applicant were a product of state action. (Writ RR3: 121).

14

91. Although Mr. Parks could not recall if the defense team had discussed challenging the constitutionality of the Texas Fair Defense Act, he would not have made the challenge because the trial court had already decided that there was no State action. Without state action, such a challenge could not succeed. (Writ RR3: 128).

92. Mr. Lollar chose not to challenge the constitutionality of the Texas Fair Defense Act because their primary position was that the Sheriff's Department was active in facilitating the interviews. (Writ RR3: 154).

93. Defense counsel did, in fact, object to the admission of the media interviews on Sixth and Fourteenth Amendment grounds. (Writ RR3: 155; RR43: 105-06).

94. Applicant was booked into the Dallas County Jail in the early morning hours of June 21, 2008. (Writ RR3: 136). He appeared before Judge Jonathan Vickery approximately three hours after his book-in and requested the appointment of an attorney. (Writ RR3: 137).

95. Sharon Johnson, court coordinator for Criminal District Court Number 7, contacted Mr. Lollar on June 24, 2008 at the start of the business day regarding his appointment in this case. (Writ RR3: 135).

96. Shortly thereafter, Mr. Lollar typed a letter to the Dallas County Sheriff's Department stating that applicant was not to be interviewed by media or law enforcement. (Writ RR3: 135-36). This was standard practice for Mr. Lollar in handling his high-profile cases. (Writ RR3: 136).

97. At a pretrial hearing, Kimberly Leach, an employee of the Dallas County Jail, testified that she was in charge of getting the media's requests for interviews to inmates, including applicant. (RR41: 8).

98. At a pretrial hearing, Ms. Leach outlined the process of getting the media's requests to inmates, including the procedure used in this case. (RR41: 9-29).

15

99.    Trial counsel attempted to use Ms. Leach's testimony at the pretrial hearing to establish state action in support of the constitutional challenges to the media interviews. (RR43: 105-09).

100.    Mr. Lollar was satisfied with calling Ms. Leach as the only witness regarding the procedure by which the media obtained access to applicant. (Writ RR3: 150, 152).

101.    The reporters and assignments editors would not speak with the defense team outside of court. (Writ RR3: 151).

102.    The defense team attempted to establish state action by showing that the Dallas County Sheriff's Office facilitated the interviews, that the sheriff's deputies were present during the interviews, and that applicant had refused to speak with law enforcement but was willing to speak with the media. (Writ RR3: 152-53).

103.    During the pretrial hearing, Mr. Lollar sought to make clear that the defense's position was that lawyers are not appointed quickly enough to prevent media interviews. (Writ RR3: 155-56, 164).

104.    The crux of the defensive theory at trial was that applicant was intoxicated at the time of the offense and during the media interviews. (Writ RR3: 124-25).

105.    Although counsel can advise a client not to speak with the media, the ultimate decision is left to the client.

106.    An inmate can make admissions by telephone calls and written word.

107.    Media interviews can be used by an accused to deny involvement in the charged offense or to downplay their role in the charged offense. (Writ RR3: 125).

108.    Indeed, applicant first denied involvement in the murders to Channel 11. (Writ RR3: 125).

109.    Applicant fails to rebut the presumption that counsels' decisions regarding what challenges to raise regarding the media interviews constituted sound, reasonable trial strategy.

16

104

110.    Applicant fails to establish a constitutional deficiency in counsels' decisions regarding what challenges to raise regarding the media interviews.

111.    Counsels' attempts to exclude applicant's statements during the media interviews did not fall below an objective standard of reasonableness.

112.    Also, there is no reasonable probability that had counsel raised additional constitutional challenges to the media interviews, the result of the proceeding would have been different.

113.    Counsel was not constitutionally ineffective.

114.    The relief requested in Ground Three should be denied.

**GROUND FOUR:**
**Detective B. K. Nelson's Testimony**

In his fourth ground for relief, applicant alleges that his federal constitutional rights to due process and to be free from cruel and unusual punishment were violated when Detective Barrett Keith Nelson gave false and misleading testimony for the State regarding applicant's gang membership. According to applicant, Detective Nelson's testimony was false and misleading because he did not follow the statutory criteria of section 71.01 of the Texas Penal Code and article 61.02 of the Texas Code of Criminal Procedure in determining that applicant was a member of the criminal street gang the Gangster Disciples.

*The Allegations Are Not Cognizable in a Writ of Habeas Corpus*

115.    Claims alleging a violation of a statute are not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d at 109.

116.    Applicant's allegation that Detective Nelson's testimony was false and misleading is based in large part on his claim that the testimony did not meet the statutory requirements set forth in Chapter 61 of the Texas Code of Criminal Procedure.

117.    Chapter 61 does not govern the admission of evidence regarding gang membership but, rather, governs the compilation of

17

information pertaining to criminal street gangs into intelligence databases. *See* Tex. Code Crim. Proc. Ann. arts. 61.01-61.12 (West 2006 & Supp. 2013).

118.    Applicant's reliance on Chapter 61 of the Texas Code of Criminal Procedure is misplaced.

119.    To the extent applicant is alleging a statutory violation, his fourth ground for relief is procedurally barred and relief should be denied.

### *Claims Procedurally Barred*

120.    The Court of Criminal Appeals has held that matters not raised at trial cannot form the basis for habeas relief. *See Dutchover*, 779 S.W.2d at 77; *Crispen*, 777 S.W.2d at 105; *Bagley*, 509 S.W.2d at 333 ("The same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."). At the pre-trial hearing, applicant objected to Detective Nelson's testimony under Rules 401 and 403 of the Texas Rules of Evidence and the First and Fourteenth Amendments to the United States Constitution. (RR40: 6, 35).

121.    To the extent applicant contends that Detective Nelson's testimony should have been excluded because it did not comply with the requirements of article 61.02 of the criminal procedure code and section 71.01 of the penal code, he could have raised these contentions at trial, but did not. Thus, they are procedurally barred and should be dismissed.

### *Applicant's Due Process Rights Not Violated by Admission of Detective Nelson's Testimony*

122.    A conviction procured through the use of false testimony is a denial of the due process guaranteed by the Federal Constitution. *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). The use of false testimony at the punishment phase is also a due-process violation. *Id.* A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Id.*

18

It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence. *Id.*

123.    Though case law in this area frequently refers to "perjured" testimony, there is no requirement that the offending testimony be criminally perjurious. *Id.* It is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* These rules are not aimed at preventing the crime of perjury – which is punishable in its own right – but are designed to ensure that the defendant is convicted and sentenced on truthful testimony. *Id.* at 477-78.

124.    To constitute a violation of due process under federal precedent, the State must knowingly use false testimony. *Id.* at 478. The Court of Criminal Appeals allows applicants to prevail on due-process claims when the State has unknowingly used false testimony. *Id.* Even under this expanded notion of due process, however, the State's knowledge is still a relevant factor to determine the standard the Court uses for reviewing an applicant's habeas claim. *Id.*

125.    The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The Court of Criminal Appeals has characterized this as a requirement that the false testimony must have been material. *Id.* This standard is more stringent than the standard applied to *Brady* claims of suppressed evidence, which requires the defendant to show a "reasonable probability" that the suppression of evidence affected the outcome. *Id.* The "reasonable likelihood" standard is equivalent to the standard for constitutional error, which "requires the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) (plurality op.)).

126.    The Court notes that even if conflicting testimony is presented, that fact alone would not indicate perjury. *Losada v. State*, 721

19

S.W.2d 305, 312 (Tex. Crim. App. 1986); *Brown v. State*, 477 S.W.2d 617, 623 (Tex. Crim. App. 1972).

127. In addition to his due process claim, applicant alleges a violation of the Eighth Amendment's proscription against cruel and unusual punishment.

128. The use of false testimony is a violation of due process. It does not implicate the Eighth Amendment. Thus, applicant's reliance on the Eighth Amendment is misplaced.

129. At trial, Detective Nelson testified that he has been a member of the Dallas Police Department's Gang Unit for twelve years. (RR49: 79-81). At the request of the Dallas County District Attorney's Office, he researched the criminal street gangs Gangster Disciples and Folk Nation. (RR49: 82-83).

130. Detective Nelson testified that the Gangster Disciples and Folk Nation were originally founded in Chicago and are primarily Midwestern gangs. (RR49: 85-86). It is not common to come into contact with a member of the Gangster Disciples in the Dallas/Fort Worth area. (RR49: 82).

131. Detective Nelson reviewed the media interviews, applicant's phone calls, photographs of applicant's jail cell, and art, letters, and other writings found in applicant's notebooks. (RR49: 83-130).

132. According to Detective Nelson, the Gangster Disciples is a part of the Folk Nation and is a criminal gang involved in multiple criminal activities. (RR49: 86, 91-93).

133. After reviewing the media interviews, applicant's phone calls, photographs of applicant's jail cell, and art, letters, and other writings found in applicant's notebooks, Detective Nelson concluded that applicant had self-admitted to being a member of the Gangster Disciples. (RR49: 84-133).

134. Detective Nelson testified that the term "Folk" is indicative of the Folk Nation, that the Gangster Disciples use a pitchfork as a symbol of their gang, that the number 74 is a direct reference to

20

the Gangster Disciples (G being the seventh letter of the alphabet and D the second), that the six-pointed star of David is used by the Gangster Disciples as a symbol of their gang, and that Gangster Disciples utilize wings in their drawings. (RR49: 84-103).

135.    Detective Nelson based his opinion on the following: (1) applicant's repeated use of the word "Folk" in his writings and in one of the media interviews; (2) applicant's use of a pitchfork hand-signal during one of the media interviews; (3) applicant's reference to wrapping his flag around his pistol during one of the media interviews; (4) applicant's repeated use of the pitchfork in his drawings; (5) applicant's reference to his mother's boyfriend as an OG74; (6) applicant's use of the six-pointed star of David in his artwork; (7) applicant's sign of allegiance to the founder of the Black Gangster Disciples in his writings; and (8) applicant's use of wings in his artwork. (RR49: 84-103).

136.    Applicant presented the affidavit and testimony of Dwight Stewart in support of his claim that Detective Nelson testified falsely.

137.    In his affidavit, Mr. Stewart made the following statements and conclusions:

(a) that Detective Nelson gave false and misleading testimony regarding applicant's membership in the Gangster Disciples and the Folk Nation;

(b) that applicant did not meet the statutory criteria for gang membership set forth in Chapter 61 of the Texas Code of Criminal Procedure;

(c) that the Gangster Disciples and Folk Nation are not recognized criminal street gangs in Dallas;

(d) that Mr. Stewart has presented Continuing Legal Education seminars on the subject of gang education, specifically for attorneys practicing capital defense;

(e) that Detective Nelson did not offer evidence that applicant was associated with or frequented any area in which the Gangster

21

Disciples operated as a criminal street gang in the Dallas/Fort Worth area;

(f) that Detective Nelson's testimony offered no evidence that applicant had anything other than incidental use of various gang references;

(g) that applicant was not listed in any Dallas gang database;

(h) that applicant does not have any specific gang-related tattoos, which, according to Mr. Stewart, is a strong indicator that applicant is not a gang member;

(i) that one of the bases for concluding that applicant was a member of a gang – applicant's statement during an interview with the media that he was a "Folk" – was misleading because the terms "Folk" and "Folk Nation" have no current meaning;

(j) that members of gangs reference their individual gangs by signs and symbols, and that applicant made no mention of the Gangster Disciples in the media interviews;

(k) that based on his experience, a true gang member would have made a "shout out" to his gang in all of the media interviews, not just one; and

(l) that applicant was not a member of a gang but was, in fact, a "gangsta wanna-be."

(Defense Writ Ex. 25).

138.  At trial, Detective Nelson testified that applicant self-admitted to being a member of the Folk Nation and Gangster Disciples in a phone call to his mother's boyfriend during which applicant asked the man if he was a member of OG74, a reference to the Gangster Disciples. (RR49: 94-95; State's Trial Ex. 553). In his affidavit, Mr. Stewart stated that this was merely a reference to the older man's knowledge and experience. (Defense Writ Ex. 25).

139.  Detective Nelson based part of his opinion regarding applicant's membership in the Gangster Disciples on his review of notebooks

22

110

belonging to applicant that were found in the victim's car. RR49: 105). These notebooks contained rap lyrics that reference the gang and symbols used by the gang. (RR49: 105-33). In his affidavit, Mr. Stewart stated that rap lyrics that reference gang membership denote a macho reputation, not membership in the gang. (Defense Writ Ex. 25). He also stated that gang symbolism is merely a prop to portray a macho reputation, financial success, and attractiveness to the opposite sex. (Defense Writ Ex. 25).

140.    Detective Nelson testified at trial that applicant has a tattoo of "MOB." According to Nelson, "MOB" symbolizes the Gangster Disciples' rivalry with the Bloods gang; it stands for "money over bitches" and is indicative of a mentality of getting money any way possible. (RR49: 111-12). Mr. Stewart stated that "MOB" is a popular tattoo that is frequently seen on rap stars and in its popular usage has no relevance to gang membership. (Defense Writ Ex. 25).

141.    In his affidavit, Mr. Stewart stated that he reviewed the following materials in reaching his professional opinion that applicant was not a member of the Gangster Disciples or Folk Nation: (1) David Barger's testimony; (2) Darrell Doty's testimony; (3) Detective Nelson's testimony; (4) Assistant Warden Melodye Nelson's testimony; (5) and State's Exhibit at Trial 405. (Defense Writ Ex. 25).

142.    Mr. Stewart also testified at the hearing on applicant's application for writ of habeas corpus held on December 7, 2012.

143.    At the hearing, Mr. Stewart testified that he is an educator with the Texas School Safety Center, but that he did not provide his affidavit in his capacity as an educator, that his employer was unaware that he had provided the affidavit, and that his employer was unaware that he was testifying. (Writ RR3: 71).

144.    Mr. Stewart also testified that he was a certified gang awareness trainer. To obtain certification, he only had to take a certain number of classes, and was not required to take an examination. (Writ RR3: 72).

23

111

145.   Mr. Stewart admitted that he did not know that Chapter 61 of the Texas Code of Criminal Procedure does not govern the admissibility of gang testimony. (Writ RR3: 75). He also admitted that he was unaware that the Court of Criminal Appeals had already held that Detective Nelson's testimony was properly admitted at trial. (Writ RR3: 75).

146.   Also, Mr. Stewart acknowledged that the Gangster Disciples are a recognized criminal street gang in Dallas. (Writ RR3: 75).

147.   Although Mr. Stewart stated in his affidavit that applicant was not in the Dallas gang database, at the hearing, he admitted that he did not check the database and does not have access to the database. (Writ RR3: 77).

148.   Also, Mr. Stewart admitted at the hearing that he was unaware that applicant was not from Dallas, but had lived in Michigan and Georgia. (Writ RR3: 78).

149.   Mr. Stewart admitted that he could not testify about the presence of the Gangster Disciples in Michigan or Georgia and that he did not know that Detective Nelson had consulted gang officers in Chicago prior to entering his opinion in this case. (Writ RR3: 78-79).

150.   State's Exhibit 1, which was offered at the hearing, is a printout of a Powerpoint presentation created by Mr. Stewart and used by him in giving presentations as part of his responsibilities with the Texas School Safety Center. (Writ RR3: 79-80). The Powerpoint presentation was created after Stewart provided his affidavit in this case. (Writ RR3: 80). The presentation includes a slide titled "Folk Nation." (Writ RR3: 80). On this slide, Stewart states that the six-point star, the pitchfork, the number 26, and wings are all symbols of Folk Nation. (Writ RR3: 80; State's Hearing Ex. 1).

151.   At the hearing, Mr. Stewart admitted that he did not know that Detective Nelson had relied on the same symbols in reaching his opinion in this case or that applicant had drawn these symbols. (Writ RR3: 80-82).

24

112

152.    At the hearing, Mr. Stewart testified that he did not view any of the exhibits offered during trial that Detective Nelson had relied on in forming his opinion in this case. (Writ RR3: 82, 84).

153.    Finally, Mr. Stewart admitted that he did not know that applicant's brother was a member of the Gangster Disciples. (Writ RR3: 83).

154.    In the end, Mr. Stewart disavowed his entire affidavit accusing Detective Nelson of giving false and misleading testimony and agreed with much of Nelson's trial testimony.

155.    Thus, Mr. Stewart's affidavit is not credible or reliable evidence.

156.    Applicant has not shown that any part of Detective Nelson's testimony was false or misleading.

157.    Detective Nelson was a credible witness.

158.    Detective Nelson's testimony was true and accurate, not false or misleading in any respect.

159.    Applicant's due process rights were not violated by the State's use of Detective Nelson's testimony.

160.    Furthermore, even assuming it was implicated, the Eighth Amendment's proscription against cruel and unusual punishment was not violated by the State's use of Detective Nelson's testimony.

161.    Applicant's fourth ground for relief should be denied.

## GROUND FIVE:
### Applicant's Writings

In his fifth ground for relief, applicant alleges that the State violated his First Amendment rights by using his various writings to demonstrate that he was a member of a street gang.

162.    During the punishment phase, Detective Nelson testified that he reviewed some of the writings and artwork found in applicant's cell and notebooks found in Swan's car. Detective Nelson testified that several of applicant's artwork and writings indicated that he

25

113

was a member of the Gangster Disciples, a criminal street gang. (RR49: 97-125).

163.    Applicant alleges that the State violated his rights under the First Amendment to the United States Constitution by using his writings to demonstrate that he was a member of a criminal street gang.

164.    States cannot criminalize thoughts. *Goldberg v. State*, 95 S.W.3d 345, 373 (Tex. Crim. App. 2002).

165.    Also, the First Amendment prevents a State from using evidence of a defendant's abstract beliefs against him at trial, unless those beliefs have a bearing on the issues in the case. *See id.* (citing *Dawson v. Delaware*, 503 U.S. 159, 167-68 (1992)).

166.    Applicant was not on trial for the ideas expressed in his writings and art work; he was on trial for murder. The issue is not, therefore, whether applicant's writings and artwork were protected First Amendment speech, but whether they were relevant to an issue in the case.

167.    The relevancy of the complained-of evidence has already been raised and rejected. Both this Court and the Court of Criminal Appeals have previously held that the evidence was, indeed, relevant. *Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *44-49.

168.    Thus, applicant's allegation is procedurally barred and should be dismissed. *See Ex parte Ramos*, 977 S.W.2d at 617.

169.    Assuming the claim were reviewable on the merits, however, the complained-of evidence was relevant. *See Broadnax*, 2011 Tex. Crim. App. Unpub. LEXIS 920, at *44-49.

170.    Applicant fails to establish by a preponderance of the evidence any violation of his First Amendment rights.

171.    The State did not violate applicant's First Amendment right to free speech by using his writings or artwork to prove his gang membership.

26

114

172.    Thus, if addressed on the merits, applicant's claim for relief should be denied.

**GROUND SIX:**
**Counsel's Response to State's Evidence that Applicant Was a Member of a Criminal Street Gang**

In his sixth ground for relief, applicant alleges that trial counsel was ineffective for failing to refute the State's evidence that applicant was a member of the Gangster Disciples, a criminal street gang.

173.    The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686; *Hernandez*, 726 S.W.2d at 57.

174.    An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812 (explaining the standard under *Strickland*).

175.    Effective assistance of counsel does not mean errorless counsel. *See Kunkle*, 852 S.W.2d at 505.

176.    To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See McFarland*, 163 S.W.3d at 753; *Jackson*, 877 S.W.2d at 771.

177.    This highly deferential review is applied to avoid "the distorting effect of hindsight." *McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

178.    Applicant alleges that his trial counsel was ineffective because he conducted only a superficial investigation into applicant's gang membership. He claims that counsel should have objected to

27

115

Detective Nelson's testimony and/or cross-examined Detective Nelson to show that (1) the criteria set forth in Chapter 61 was not met, (2) applicant does not have any gang tattoos, and (3) applicant was not located in the Dallas gang database. He also contends that counsel should have objected to the admission of Detective Nelson's testimony as a violation of the First Amendment and should have called a gang expert who would have refuted Detective Nelson's testimony.

179.    At the hearing conducted on applicant's application for writ of habeas corpus, Brad Lollar testified that he made a strategic decision to downplay evidence of applicant's gang membership because there was no evidence that the murders were gang-related. (Writ RR3: 162).

180.    Mr. Lollar made a strategic decision not to call a gang expert. Instead, he decided to call family members, such as applicant's sister, to testify that applicant was not a member of the gang, but was merely a "wannabe" who had learned about the Gangster Disciples from his older brother. (Writ RR3: 162-63).

181.    Mr. Lollar testified that applicant had self-admitted membership in the gang and that it would be difficult to present a credible case that applicant's use of gang symbolism was meaningless. He believed that if he attempted to argue that the symbolism was meaningless, he would lose credibility with the jury. (Writ RR3: 161-62).

182.    Applicant alleges that trial counsel should have called Dwight Stewart to contradict Detective Nelson's testimony. In support of this allegation, applicant relies heavily on Mr. Stewart's affidavit.

183.    As noted above, however, Mr. Stewart's affidavit was not credible or reliable. Stewart disavowed the statements in his affidavit at the writ hearing and agreed with much of Detective Nelson's trial testimony. (Writ RR3: 72-84). Thus, applicant's own witness discredits his claim that a gang expert would have contradicted Nelson's testimony.

184.    As noted above, defense counsel did object to Detective Nelson's testimony on First Amendment grounds. (RR40: 6).

28

116

185.    It would have been futile to object to Detective Nelson's testimony under Chapter 61 of the Texas Code of Criminal Procedure because the chapter deals with the creation of gang intelligence databases by law enforcement agencies and not the admissibility of gang evidence at trial. (Writ RR3: 160).

186.    Applicant fails to rebut the presumption that his trial counsels' response to the State's offer of evidence of his gang membership constituted reasonable trial strategy. He also fails to demonstrate that counsels' response was deficient and that he was prejudiced by any alleged deficiency.

187.    Counsel was not deficient and there is no reasonable probability that, but for counsels' strategic decisions, the result of the proceeding would have been different.

188.    Counsel was not constitutionally ineffective, and relief should be denied.

## GROUND SEVEN:
## Dr. Price's Testimony

In his seventh ground for relief, applicant alleges his federal constitutional rights to due process and freedom from cruel and unusual punishment were violated by false and misleading testimony from Dr. Jack Randall Price concerning anti-social personality disorder (ASPD) and the Hare Psychopathy Checklist – Revised (PCL-R). According to applicant and his current psychological expert, Dr. Edens, "[t]here seems to be no scientifically valid or reliable reason to have introduced evidence concerning the PCL-R in this case in response to earlier testimony concerning ASPD – which is itself largely extraneous to a scientifically based assessment of risk factors for future violence in prison." (Application, p. 83; Defense Writ Ex. 26).

### The Allegations Are Not Cognizable in a Writ of Habeas Corpus

189.    Claims alleging a violation of a statute, rule, or non-constitutional doctrine are not cognizable in a writ of habeas corpus. *Ex parte Graves*, 70 S.W.3d at 109.

190.    Although applicant couches his argument as a violation of due process due to false and misleading evidence, his argument is

29

117

actually that Dr. Price's testimony did not meet the requirements for admissibility under the evidentiary rules governing relevancy, unfairly prejudicial evidence, and expert testimony.

191.    Thus, applicant merely alleges a violation of a rule or non-constitutional doctrine, which is not cognizable in writ of habeas corpus. Because his claim is not cognizable, relief should be denied.

### The Allegations Are Procedurally Barred

192.    Moreover, to the extent applicant merely alleges a violation of evidentiary rules, his claim is procedurally barred.

193.    At trial, applicant objected to the admission of Dr. Price's testimony under Rules of Evidence 401, 403, and 702. He did not, however, challenge the Court's ruling on those objections on direct appeal.

194.    Habeas review is not to be used as a substitute for direct appeal. *Clore*, 690 S.W.2d at 900. If a claim could have been raised on appeal, but was not, the applicant is procedurally barred from raising the issue for the first time on habeas. *See Cruzata*, 220 S.W.3d at 520; *Ramos*, 977 S.W.2d at 617.

195.    Because applicant could have raised his evidentiary-rule-based challenges on appeal but did not, they are procedurally barred and should be dismissed.

### There is No Constitutional Violation.

196.    Even if construed as a constitutional claim, applicant's allegation is meritless.

197.    The Eighth Amendment's proscription against cruel and unusual punishment is not implicated by the State's use of false or misleading testimony. The use of false testimony implicates only applicant's due process rights.

198.    A conviction procured through the use of false testimony is a denial of the due process guaranteed by the federal constitution. *Ghahremani*, 332 S.W.3d at 477. The use of false testimony at the

30

punishment phase is also a due-process violation. *Id.* A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Id.* It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence. *Id.*

199.    Though case law in this area frequently refers to "perjured" testimony, there is no requirement that the offending testimony be criminally perjurious. *Id.* It is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* These rules are not aimed at preventing the crime of perjury – which is punishable in its own right – but are designed to ensure that the defendant is convicted and sentenced on truthful testimony. *Id.* at 477-78.

200.    The presentation of conflicting testimony alone does not establish a due process violation. *Losada*, 721 S.W.2d at 312; *Brown*, 477 S.W.2d at 623.

201.    To constitute a violation of due process under federal precedent, the State must knowingly use false testimony. *Id.* at 478. The Court of Criminal Appeals has held that the State's unknowing use of false testimony may also give rise to a due process claim. *Id.* Even under this expanded notion of due process, however, the State's knowledge is still relevant to determining the standard for reviewing an applicant's habeas claim. *Id.*

202.    The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* (quoting *Agurs*, 427 U.S. at 103). The Court of Criminal Appeals has characterized this as a requirement that the false testimony must have been material. *Id.* This standard is more stringent than the standard applied to *Brady* claims of suppressed evidence, which requires the defendant to show a "reasonable probability" that the suppression of evidence affected the outcome. *Id.* The "reasonable likelihood" standard is equivalent to the standard for constitutional error, which "requires the beneficiary of a constitutional error to prove beyond

31

a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Bagley*, 473 U.S. at 680 n.9).

203.    Applicant fails to establish any due process violation.

204.    Dr. Price testified at trial that he has a Bachelor's, Master's, and Ph.D in psychology, that he has been licensed to practice psychology in Texas since 1983, that he has taught psychology for thirty-eight years, and that he has had a psychology practice for twenty-five years. (RR52: 239-40).

205.    At a hearing held outside the presence of the jury, Dr. Price testified that he had not been asked to testify regarding whether or not applicant was a psychopath, but that his role was to educate the jury on the characteristics of a psychopathic personality. (RR52: 219-20).

206.    At trial, Dr. Price utilized a Power-Point presentation in testifying about the traits of a psychopathic personality. (RR52: 245-46; State's Ex. at trial, 597). He testified regarding the 20 characteristics of psychopathy. (RR52: 249-59). He stated that not all 20 characteristics need to be present in order for a person to be deemed a psychopath. (RR52: 257).

207.    Dr. Price testified that psychopathy is a very persistent condition, that in his experience there is no effective treatment, and that under certain conditions, the behavior can be managed. (RR52: 258).

208.    Dr. Price testified that he did not obtain the 20 characteristics of psychopathy from the DSM-IV, that the DSM-IV does not contain the diagnosis of psychopathy, and that the closest diagnosis to psychopathy that is contained in the DSM-IV is anti-social personality disorder. (RR52: 259).

209.    Dr. Price testified that anyone who has one of the 20 traits discussed is not per se a psychopath. There are people who are immature that would show some of the traits. (RR52: 260, 262-63).

120

210. Dr. Price testified that he testifies 60% of the time on behalf of the State and 40% of the time on behalf of the defense. (RR52: 262).

211. In support of his claim that Dr. Price's testimony was false and misleading, applicant relies heavily on an affidavit from Dr. John Edens. (Defense Writ Ex. 26).

212. In his affidavit, Dr. Edens stated that he is a licensed psychologist in the State of Texas and a Professor in the Department of Psychology at Texas A&M University. Since 2000, he has consulted on numerous federal and state death penalty cases in regards to the assessment of future dangerousness and the role of mental health. He has conducted extensive research on psychological assessment and the prediction of human behavior. He is familiar with the checklist used by Dr. Price in his trial testimony. (Defense Writ Ex. 26). He has published on the potential misuses and abuses of the psychopathy scales in forensic evaluations, especially in the context of capital murder trials. (Defense Writ Ex. 26).

213. Dr. Edens opined that there was essentially no scientific justification for introducing evidence of an anti-social personality disorder diagnosis in applicant's trial. According to Dr. Edens, the diagnosis and presentation of the personality traits of a psychopath had little or nothing to do with applicant's likelihood of future dangerousness if not put to death. (Defense Writ Ex. 26).

214. Dr. Edens stated that at the time of trial, there were published scholarly reviews criticizing the use of psychopathy and anti-social personality disorder diagnoses in capital murder cases. He also stated that numerous experts would have been available to aid in a challenge to the admission of this evidence. (Defense Writ Ex. 26).

215. Dr. Edens stated that Dr. Price treated the diagnoses of anti-social personality disorder and psychopathy as interchangeable. (Defense Writ Ex. 26).

216. Dr. Edens stated that admission of evidence regarding the term "psychopath" and the traits typically associated with it are likely

33

121

to unfairly prejudice jurors against a capital defendant. (Defense Writ Ex. 26).

217.    Dr. Edens stated that he conducted a study in which 60% of the participants would support a death sentence for a defendant who had been described as a psychopath, 38% did so when the defendant was described as non-mentally disordered, and 30% did so when the defendant was described as experiencing delusions and hallucinations. (Defense Writ Ex. 26).

218.    Dr. Edens stated that the unfair prejudicial effects of introducing evidence of the psychopathy checklist were magnified by the direct testimony of Dr. Price that there is essentially no treatment for psychopathy. (Defense Writ Ex. 26).

219.    Dr. Edens stated that there are recent published studies that suggest that there are interventions that can significantly reduce the likelihood for future violent behavior among individuals with psychopathic traits, particularly those who are relatively young. (Defense Writ Ex. 26).

220.    Dr. Edens stated that aside from having an unfair prejudicial impact and having little or no demonstrated probative value concerning future dangerousness in capital cases, it is also worth stressing that a growing body of scientific research indicates that scores using the checklist are highly unreliable in real world criminal cases. (Defense Writ Ex. 26).

221.    In addition to his sworn written statements, Dr. Edens testified at the hearing on applicant's application for writ of habeas corpus held on December 7, 2012.

222.    At the hearing, Dr. Edens testified that he was paid $350 per hour by writ counsel to prepare his affidavit for this case. (Writ RR3: 165).

223.    Dr. Edens testified that the only portions of the record he reviewed prior to his affidavit were provided to him by writ counsel. (Writ RR3: 166-67).

34

224.    Dr. Edens did not recall whether the defense had called mental health experts at trial. (Writ RR3: 167).

225.    Dr. Edens was not aware that trial counsel had a mental health expert that was prepared to rebut Dr. Price's testimony. (Writ RR3: 167).

226.    The gravamen of Dr. Edens' affidavit and testimony concerns not the accuracy of Dr. Price's testimony but its relevance.

227.    Applicant has not shown that Dr. Price's testimony was false, misleading, or perjurious. At most, he has shown a difference of opinion between two qualified experts. If Dr. Edens had testified at applicant's trial, it would simply have been a "battle of the experts."

228.    Dr. Price did not give false, misleading, or perjured testimony.

229.    Applicant's due process rights were not violated by the State's use of Dr. Price's testimony.

230.    Furthermore, even assuming it was implicated, the Eighth Amendment's proscription against cruel and unusual punishment was not violated.

231.    For the above reasons, applicant's seventh ground for relief should be denied.

## GROUND EIGHT:
## Counsel's Handling of Testimony Regarding Anti-Social Personality Disorder and Psychopathy

In his eighth ground for relief, applicant alleges that his trial counsel was ineffective for (1) opening the door to Dr. Price's testimony, (2) failing to use Dr. Frank Lane or another defense expert to explain why anti-social personality disorder is not a good indicator of future dangerousness and why it was not intended for use in a criminal setting, and (3) failing to cross-examine Dr. Price altogether and to rebut the reliability and validity of the PCL-R in the future dangerousness determination.

232.    The Court notes that the benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so

35

123

undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686; *Hernandez*, 726 S.W.2d at 57.

233. An applicant asserting a claim of ineffective assistance has the burden to prove, by a preponderance of the evidence, the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812 (explaining the standard under *Strickland*).

234. Effective assistance of counsel does not mean errorless counsel. *See Kunkle*, 852 S.W.2d at 505.

235. To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *See McFarland*, 163 S.W.3d at 753; *Jackson*, 877 S.W.2d at 771.

236. This highly deferential review is applied to avoid "the distorting effect of hindsight." *McFarland*, 163 S.W.3d at 753 (quoting *Strickland*, 466 U.S. at 689).

237. Applicant alleges that trial counsel did not cross-examine Dr. Price. Applicant is incorrect.

238. The Court told counsel that he would allow a liberal cross-examination of Dr. Price and defense counsel, Doug Parks, effectively questioned him. (RR52: 230, 259-63; Writ RR3: 125-26).

239. In particular, he examined him regarding the fact that psychopathy is not in the DSM-IV, the fact that the closest thing to psychopathy that is in the DSM-IV is anti-social personality disorder, the fact that people may have traits of a psychopath and not be a psychopath, and the fact that some of the traits of a psychopath are traits of an immature person. (Writ RR3: 126).

36

124

240. Also, Mr. Parks objected to the admissibility of Dr. Price's testimony based on Texas Rules of Evidence 401, 403, and 702. (RR52: 227-28).

241. Applicant's trial counsel, Brad Lollar, argued during closing argument that it was not possible for the jury to determine if applicant was a psychopath because it lacked the relevant historical information. (Writ RR3: 160).

242. At the hearing on the writ of habeas corpus held on December 7, 2012, Mr. Lollar testified that the trial team did have a mental health expert – Dr. Gilda Kessner. She sat through Dr. Price's testimony and counsel was prepared to call her if needed. Moreover, defense counsel used Dr. Kessner to prepare their cross-examination questions for Dr. Price. (Writ RR3: 157-58).

243. At the conclusion of Dr. Price's testimony, the entire trial team debated whether to call Dr. Kessner, who was present and prepared to testify. (Writ RR3: 158).

244. If defense counsel had called Dr. Kessner to testify, they risked the possibility that the State would pose a hypothetical question using facts related to applicant and get Kessner to admit that, under the hypothetical, applicant was a psychopath. (Writ RR3: 159).

245. Defense counsel did not want to take that risk because Dr. Price, the State's witness, had not diagnosed applicant as a psychopath. (Writ RR3: 159).

246. Brad Lollar and Doug Parks called other mental health experts during the punishment phase: Jason Varghese, Dr. Haideh Mirmesdagh, Cheryl Silver, and Frank Lane. (Writ RR3: 156-57).

247. The defense used Dr. Lane, a jail psychologist, to show applicant's medical history while in jail, including applicant's substance abuse. (RR50: 77-99).

248. Dr. Lane did indicate that he believed applicant may be a psychopath. (RR50: 99-100). But Mr. Lollar questioned Dr. Lane about his inability to make such a diagnosis because he lacked the necessary information regarding applicant's background and

history.  (RR50: 100). Moreover, no one at trial testified that applicant had been diagnosed with psychopathy.

249.  Trial counsel was not ineffective for calling Dr. Lane or for failing to call another mental health expert.

250.  Applicant fails to rebut the presumption that defense counsel exercised reasonable trial strategy by calling Dr. Lane and not calling another mental health expert.

251.  Counsels' representation did not fall below an objective standard of reasonableness, and there is no reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.

252.  Counsel was not constitutionally ineffective, and relief should be denied.

126

## ORDER

The Court adopts and incorporates the above proposed findings of fact and conclusions of law submitted by the State in *Ex parte James Garfield Broadnax.*

THE CLERK IS **ORDERED** to prepare a transcript of all papers in cause number W08-24667-Y(A) and to transmit same to the Court of Criminal Appeals as provided by article 11.071 of the Texas Code of Criminal Procedure. The transcript shall include certified copies of the following documents:

1. The Application for Writ of Habeas Corpus filed in cause number W08-24667-Y(A), including any exhibits;

2. The State's Original Answer to the Application for Writ of Habeas Corpus filed in cause number W08-24667-Y(A), including any exhibits;

3. The State's and applicant's proposed findings of fact and conclusions of law;

4. Any and all other pleadings filed by either party under cause number W08-24667-Y(A);

5. This Court's findings of fact, conclusions of law, and order;

6. This Court's order designating the issues for further evidence gathering;

7. Any and all other orders issued by the Court under cause number W08-24667-Y(A);

8. The Reporter's Record of the writ hearing (December 6-7, 2012); and

9. The indictment, judgment, sentence, docket sheet, and appellate record in cause number W08-24667-Y(A), unless these have been previously forwarded to the Court of Criminal Appeals.

39

127

THE CLERK IS FURTHER **ORDERED** to send a copy of this Court's findings of fact and conclusions of law, including its order, to Lydia Brandt, attorney for applicant, The Brandt Law Firm, P.C., P.O. Box 850843, Richardson, Texas 75085, and to Lisa Smith, Assistant District Attorney, counsel for the State.

SIGNED the ____ day of _____, 2014.

_____
Judge Michael Snipes
Criminal District Court No. 7
Dallas County, Texas

40

Respectfully Submitted,

*Lisa Smith*

Craig Watkins
Criminal District Attorney
Dallas County, Texas

Lisa Smith (00787131)
Amy Murphy (24041545)
Johanna H. Kubalak (24014297)
Assistant District Attorneys
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB.-19
Dallas, Texas 75207-4399
(214) 653-3630
(214) 653-3643 *fax*
Lisa.Smith@dallascounty.org

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing State's proposed findings of fact and conclusions of law has been emailed to applicant's counsel, Lydia Brandt, at lydiamb@airmail.net, on June 24, 2014.

*Lisa Smith*
Lisa Smith

## CERTIFICATE OF COMPLIANCE

The word count in this document is 11,523. The document was prepared in Microsoft Word 2010.

*Lisa Smith*
Lisa Smith

41

129

FILED

2014 JUN 24 PM 1:

G............ ...!'!UHS
DISTRICT CLERK
DALLAS CO., TEXA'

_____DEP

IN THE
TEXAS COURT OF CRIMINAL APPEALS
and
CRIMINAL DISTRICT COURT NO. 7, DALLAS COUNTY, TX

|  |  |  |
|---|---|---|
| Ex Parte James Garfield Broadnax, | ) | TCCA No. AP 76,207 |
| *Applicant*, | ) | Trial Court Cause No. WR08-24667-Y |
|  | ) |  |
|  | ) |  |

## BROADNAX'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the Application for Writ of Habeas Corpus ("Application") and Exhibits appended to thereto, together with Applicant's Motion for Court-Ordered Discovery For Court-Order Brady Material from Dallas DA & For Continuance of the Evidentiary Hearing, a Motion for Evidentiary Hearing, and Motion for Oral Argument Before the Texas Court of Criminal Appeals, (SWH[1] Vol 4:DX-1 hereinafter "Motion"), filed by James Garfield Broadnax (Applicant or Broadnax), the Answer filed by the State of Texas, official court documents and records, and evidentiary hearing conducted on December 6 and December 7, 2012, the arguments and statements of counsel for both parties, and the Court's personal experience and knowledge, the Court makes the following Findings of Fact and Conclusions of Law (FFCL).

---

[1]    *See* Table of Abbreviations

1

130

# TABLE OF CONTENTS

TABLE OF ABBREVIATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     History of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       A.     Book-In & Arraignment and Request for Counsel. . . . . . . . . . . . . . . . . . . . . . . . 8
       B.     Despite a Request for Counsel, the Appointment Gap & the Media Interviews. . . 9
       C.     The Suppression Hearing: "Not even close". . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       D.     The Videotapes:  Played by Prosecutor Repeatedly in All Phases of the Trial. . . 16
       E.     The Videotapes:  The Basis for Denial in Direct Appeal. . . . . . . . . . . . . . . . . . . 18
       F.     The State Application: Motion for Discovery & Reconsideration Denied. . . . . . 18 ·

II.    FFCL (Grounds 1, 2 & 3 – incorporated by reference into each other). . . . . . . . . . . . . . 24
       Ground One (Denial of *Procedural* Right to Counsel and Due Process, and to Equal
              Protection, Re: Media Interviews – 6th and 14th amendment violations).  Mr.
              Broadnax was denied his procedural 6th & 14th amendment right to counsel, due
              process of law, and  equal protection, during the media interviews. . . . . . . . . . . 24
       Ground Two (Denial of *Substantive* Right to Counsel and Due Process, and to Equal
              Protection, Re: Media Interviews – 6th and 14th amendment violations).  Mr.
              Broadnax was denied his substantive 6th & 14th amendment right to counsel, due
              process of law, and equal protection, during the media interviews. . . . . . . . . . . . 24
       Ground Three (IAC & Media Interviews – 6th and 14th amendment violations). Mr.
              Broadnax was denied his federal constitutional right to effective assistance of
              counsel, who failed to perform an adequate investigation into, and develop and
              present, the facts of Lollar's appointment and the media interviews. . . . . . . . . . 24
       FINDINGS OF FACT (As to Grounds 1, 2 & 3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
              A.     Book-in Procedures, Arraignment, Request for Counsel & the Dallas County
                     Jailers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
              B.     Court-Appointment Procedure Before & After the Texas Statutes Governing
                     Indigent Defense & The "End of the First-Working-Day" Provision. . . . 26
                     •      Prior to the Year 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
                     •      On or After January 1, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
                     •      On or After September 1, 2007. . . . . . . . . . . . . . . . . . . . . . . . . . 28
              C.     The Statutory "End of the First-Working-Day" Provision by Which the
                     District Court Must Appoint Counsel, Begins to Run *Only After* the Decision
                     to Assign the Capital Case to a Particular District Court is Made.  While the
                     Decision is Being Made, an "Appointment Delay" or "Gap" of One or More
                     Calendar Days Can Run, During Which Time a Capital Defendant is Without
                     Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
              D.     In the Gap Before Counsel is Appointed, the Dallas County Jailers Solicit,
                     Encourage, and Coordinate and Facilitate Interviews of Capital Defendants
                     by the Media, who Are State Agents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

- The Media Inmate Interview-Request Letter is a Sample-Letter Created by the Dallas County Jailers, on which the Media Base Their Requests Almost Verbatim: .............................. 31
- The Language and Elements in the Media Inmate Interview-Request Letters From the Media Are Identical or Substantially Similar to the Sample Media Inmate Interview-Request Letter Created by the Dallas County Jailers.. ........................................ 32
- Franklin Davis. ........................................ 32
- James Broadnax........................................ 34
- The Dallas County Jailers know Capital Defendant (Broadnax) Requested Counsel at the Arraignment, but the Media Inmate Interview-Request Letters Do *Not* Contain Miranda Warnings... 35
- The Media Fax Their Media Inmate Interview-Request Letters to the Public Information Officer for the Dallas County Jailers. ....... 35
- The Public Relations/Information Officer Fills in Required Information that the Media Omitted from the Media Inmate Interview-Request Letters and Faxes the Letters to the Dallas County Jailers Within the Jail, who Have Custody and Control Over the Capital Defendant. ..................................... 36
- The Dallas County Jailers Hand-Deliver the Media Inmate Interview-Request Letters to the Defendant, Encourage Him to Consent, and Witness His Signature. ................................. 36
- The Public Information Officer Sets Up the Interview Room, Determines the Amount of Time for the Interview, and Escorts the Media to the Interviews, while the Dallas County Jailers Stand Next to the Capital Defendant During the Inmate Interviews. ....... 37

E.    The Media Interviews are a Critical Stage in the Legal Proceedings Because They Are Structured to Elicit from a Defendant: a Confession, Statements of Lack of Remorse and that Lethal Injection is an Appropriate Punishment, and Adversely Affect Every Aspect of the Capital Trial Defense. .......... 37

F.    Even in Cases in Which Counsel Has Been Appointed, the Dallas County Jailers Impede Defense-Counsel Access to a Client, to Give the Media Sufficient Time to Conduct the Interviews. ...................... 38
- Charles Payne.. ....................................... 38
- Franklin Davis. ........................................ 38

G.    Cases of Appointment Delays from 2007 to 2012, During Which the Media Interviewed High-Profile Capital Defendants. ..................... 39

H.    The Same Day the Media Interviewed Mr. Broadnax, the U.S. Supreme Court decided *Rothgery*, Which Recognized that Certain Pretrial Events (Such as the Media Interviews) Are So Prejudicial that A Defendant Must Be Represented by Counsel at Those Events in Order to Enjoy Effective Assistance of Counsel at Trial. ................................ 41

I.    There was a Three-Calendar-Days Appointment Delay, During Which the

3

Media Interviewed Mr. Broadnax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

J.     A Capital Defendant's "Consent," Particularly that of Mr. Broadnax, to the Media Interviews, is Not Knowingly or Voluntarily Made . . . . . . . . . . . 43

K.     Because the Videotaped Media Interviews of Mr. Broadnax Were Incriminating, They Were Introduced by the Prosecution, Admitted by the Trial Judge in Every Phase of the Capital Trial, Replayed During Jury Deliberations, and Relied on by the Texas Court of Criminal Appeals to Uphold Mr. Broadnax's Conviction and Sentence of Death. . . . . . . . . . . 44

L.     Ineffective Assistance of Trial Counsel for Mr. Broadnax. . . . . . . . . . . . 46

•     The Roles of the Defense Team. . . . . . . . . . . . . . . . . . . . . . . . . . 46

•     The Defense Trial Theory of the Case: The Media Were Agents of the State Because the Dallas County Jailers Violated Their Own Policy by Providing the Media Access to Mr. Broadnax at a Time When He Was in a Psychotic Rage. . . . . . . . . . . . . . . . . . . . . . 47

•     The Defense Trial Objection. . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

•     Deficient Pre-Trial Investigation (Media): The Defense Did Not Interview any Reporter or Assignment Editor Sufficiently in Advance of Trial Despite the *In*applicability of the Media Shield Laws, and There Was No Defense Request for a Continuance to Do So. . . . 48

•     Deficient Pre-Trial Investigation (Law Enforcement): The Defense Did Not Interview the Dallas County Jailers nor Law Enforcement in Texarkana, Garland, or Dallas, Prior to Trial. . . . . . . . . . . . . . . 49

•     Deficient Pre-Trial Investigation (Capital Defense Bar): The Defense Did Not Interview the Dallas County Capital Defense Bar Prior to Trial Despite Their Willingness to Testify About Their Experience With the Gap & Media Interviews. . . . . . . . . . . . . . . . . . . . . . . 51

•     Because of the Inadequate Pre-Trial Investigation, the Defense Failed to Prove that the Admission of the Videotaped Interviews by the Media Violated Mr. Broadnax's Constitutional Rights, and the Defense Team Had Not Investigated Any Alternatives. . . . . . . . . 51

•     Because the Defense "Had *Not* Thought About It," They Did Not Challenge the Unconstitutionality of the TFDA. . . . . . . . . . . . . . 52

CONCLUSIONS OF LAW (As to Grounds 1, 2 & 3).. . . . . . . . . . . . . . . . . . . . . . . . . . . 55

•     The Media Interviews, Introduced by the State at a Capital Trial, so Prejudice the outcome that a Defendant must be represented to enjoy genuinely effective Assistance of Defense Counsel. . . . . . . . . . . 57

•     The TFDA is Unconstitutional Because Assistance of Counsel in the Wake of a Texas Magistration is Part of the Substantive Guarantee of the Sixth Amendment and a Capital Defendant Like Mr. Broadnax Had a Constitutional Right to Counsel at Texas Magistration. . . 58

•     Under the TFDA, Appointment of Counsel is Unconstitutionally Premised on a Specified Period (Which Can Span Several Calendar Days) After Texas Magistration Rather than on the Need for Counsel

4

at a Critical Stage, including Media Interviews............... 58
- During the Gap Created by the TFDA, the State of Texas Facilitated and Ensured Quick and Preferential Access to Capital Defendants by the Media, who were State Agents, Over and Above that of Defense Counsel. ............................................. 59
- The TFDA Violated Mr. Broadnax's Fifth, Sixth and Fourteenth Amendment rights to Effective Assistance of Counsel, and Right Against Self-Incrimination and Is Unconstitutional. ........... 59
- Trial Counsel Was Constitutionally _In_effective.. .............. 59
- Deficient Performance.................................... 60
- Prejudice. ........................................ 61

III.   FFCL (Grounds 4, 5 & 6 – incorporated by reference into each other)............. 63
Ground Four (False and Misleading Gang Testimony – 8th & 14th amendment violation). Mr. Broadnax was denied his right to due process and to be free from cruel and unusual punishment, through false and misleading evidence of gang affiliation sponsored by the prosecution.................................... 63
Ground Five (Free Speech & Gang Evidence – 1st and 14th amendment violations). Mr. Broadnax was denied his right to free speech by materially false and misleading evidence of gang affiliation. ...................................... 63
Ground Six (IAC & Gang Evidence – 6th & 14th amendment violation). Mr. Broadnax was denied his right to effective assistance of counsel, who failed to object to, and/or properly cross examine on, and/or call its own defense gang expert to refute evidence of gang affiliation.................................... 63
FINDINGS OF FACT (As to Grounds 4, 5 & 6).................................. 63
   A.   The Prosecution Discovery Notices............................. 63
   B.   Prosecution Gang Expert, Detective Nelson...................... 64
   C.   The Jury Notes............................................. 65
CONCLUSIONS OF LAW (As to Grounds 4, 5 & 6).......................... 66
   A.   The Testimony of Nelson Was False and Misleading Testimony....... 66
   B.   The Prosecutor Violated Mr. Broadnax's Free Speech Rights. ........ 70
   C.   Trial Counsel was Constitutionally Ineffective in Failing to Investigate and Challenge the Prosecutor's Gang-Membership Evidence............. 70

IV.   FFCL (Grounds 7 & 8 – incorporated by reference into each other)............... 72
Ground Seven (ASPD & PCL-R – Use of False and Misleading Evidence – 8th and 14th amendment violations). Mr. Broadnax was denied his right to due process, & to be free from cruel and unusual punishment. The prosecutor used materially false and misleading evidence of future dangerousness based on ASPD and PCL-R. .... 72
Ground Eight (IAC & ASPD, PCL-R – 6th and 14th amendment violations). Mr. Broadnax was denied his right to effective assistance of trial counsel, who sponsored defense expert testimony of ASPD, which opened the door to the prosecutor-sponsored, unreliable and invalid testimony on psychopathy and ASPD. ............... 72

5

134

FINDINGS OF FACT (As to Grounds 7 & 8)................................ 72
CONCLUSIONS OF LAW (As to Grounds 7 & 8)............................ 76

CERTIFICATE OF SERVICE. ............................................ 80

6

135

## TABLE OF ABBREVIATIONS

Application                 Application for Writ of Habeas Corpus

State Hab. App. DX-_        Defense exhibits appended to Application for Writ of Habeas Corpus

FFCL                       Findings of Fact and Conclusions of Law

Motion                     Applicant's Motion for Court-Ordered Discovery For Court-Order Brady Material from Dallas DA & For Continuance of the Evidentiary Hearing, a Motion for Evidentiary Hearing, and Motion for Oral Argument  Before the Texas Court of Criminal Appeals, located in SWH Vol 4:DX-1

SWH Vol __: __             State Writ Hearing Volume; followed by the volume number, and page

SWH Vol __: DX-_           State Writ Hearing defense exhibits (DX), followed by the number of the exhibit. All 23 defense exhibits are found in SWH Vol 4. All 23 defense exhibits in the December 6 and December 7, 2012 writ hearing were admitted for records purposes. *See* SWH Vol. 2:27.

                           ***NOTE***: *See* Applicant's, Broadnax, Notice of Clarification of Defense Exhibits Index To  Transcript Volume 4 Of The December 6 & 7, 2012 Evidentiary Hearing

TFDA                       Texas Fair Defense Act

TFFA                       Texas Free Flow Act

Trial Vol. _:_             The trial record volume number, followed by the page number

Trial Clerk's Record Vol._:_    The trial clerk's record volume number, followed by the page number

7

136

## I.      History of the Case

Stephen Swan and Matthew Butler were killed around 1:00 a.m. on June 19, 2008, in Garland, Texas.   Mr. Broadnax and his codefendant, Damarius Cummings, were arrested in connection with the murders and taken to jail in Texarkana, Texas.

### A.      Book-In & Arraignment and Request for Counsel

On June 20, 2008, Mr. Broadnax and Mr. Cummings were transported from the Texarkana jail to the Garland City jail. (Trial Vol. 41:100). When he was in the Garland jail, Mr. Broadnax was advised of his right to counsel, and invoked that right. (Trial Vol. 41:48). Mr. Cummings admitted involvement in the murders and implicated Mr. Broadnax.

On June 21, 2008, a Saturday, around 2:51 am, Mr. Broadnax was booked into Dallas County Jail. (SWH Vol 4:DX-1 Exhibit G:  Broadnax Book-in Dallas County Jail).   The Dallas County Sheriff's Office  (hereinafter "Dallas County Jailers") was responsible for the inmates in the Lew Sterrett Criminal Justice Center (hereinafter "Dallas County Jail," or "Lew Sterrett").  About two hours later, the Dallas County Jailers took Mr. Broadnax before a Dallas County Magistrate, where he was arraigned at 5:45 am. (State Hab. App. DX-5; SWH Vol 3:136-137).  In the presence of one or more Dallas County jailers, the Magistrate Judge advised Mr. Broadnax of his right to counsel. In the presence of the Dallas County Jailers, Mr. Broadnax completed the Defendant's Affidavit of Indigence, and in writing invoked his right to counsel.[2] (State Hab. App. DX-5).

---

[2]     *See  Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 194 (2008) ("this Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. *See Brewer v. Williams,* 430 U.S. 387, 398–399 (1977); *Michigan v. Jackson,* 475 U.S. 625, 629, n. 3 (1986)").

8

137

The Dallas County Jailers then transmitted that paperwork to the clerks for the magistrate judge, who transmit it to the Dallas County Criminal Courts, who assign a particular judge to the case. (SWH Vol 3:133-135). After he had been arraigned, the Dallas County jail records show that Mr. Broadnax had been placed in the psych unit of the jail. No counsel had been appointed for him at the time of arraignment, or immediately thereafter.

On the morning of June 23, 2008, Mr. Broadnax was evaluated by Psych assessor, Jason Varghese, and psychiatrist Dr. H. Mirmesdagh. Mr. Broadnax was diagnosed as being psychotic due to polysubstance abuse. (Trial Vol. 43:74; 50:85-86). Mr. Broadnax's medical records also reflect that before his arrest, and on June 23, 2008, Mr. Broadnax had been having auditory and visual hallucinations and was delusional, and that he was on "whack" [the street term for PCP] at the time of the commission of the charged offense. (Trial Vol. 50:86-87). PCP is a substance that can cause psychosis even a month after its ingestion. (Trial Vol. 50:89-92). Mr. Broadnax was 19 years old at the time.

**B.      Despite a Request for Counsel, the Appointment Gap & the Media Interviews**

The Broadnax case had initially been assigned to the Dallas County Criminal District Court #1 (Judge Robert Burns). The *Broadnax* case was reassigned to Dallas County Criminal District Court #7 (Judge Mike Snipes). On June 24, 2008 – three days after Mr. Broadnax had been arraigned and requested counsel – Judge Snipes appointed counsel (Brad Lollar) as counsel for Mr. Broadnax (SWH Vol 3:137-138), pursuant to TEX. CODE CRIM. PROC. Art. 1.051(I), also known as the Texas Fair Defense Act (TFDA) The TFDA provides that counsel shall be appointed "immediately following the expiration of end of the first working day after the date on which the

9

138

court or the courts' designee receives the defendant's request for appointment of counsel." (SWH Vol 3:132-136, 139-140). The statutory "End of the First-Working-Day" Provision by which the district court must appoint counsel, begins to run *only after* the decision to assign the capital case to a particular district court is made. " [T]here's some period of time that goes by for them to decide which court this particular capital case is going to be assigned to." (SWH Vol 3:94 (Karo Johnson)). Thus, the appointment of counsel in the State of Texas, and in Dallas County in particular, was/is impermissibly premised on a "specified period after [an accused's] magistration," rather than on the need for counsel in a "critical stage" of the postattachment proceedings. *See Rothgery*, 554 U.S. at 217 (Alito, J. concurring, Roberts, Scalia, JJ. join).

While the assignment-decision is being made, an "Appointment Delay" or "Gap" of one or more calendar days (sometime weeks) can run, during which time a capital defendant is without counsel. In the Gap before counsel is appointed, the Dallas County Jailers solicit, encourage, and coordinate and facilitate interviews of capital defendants by the media, who are state agents. The Dallas County Jailers' procedure, which includes a template used by the media to craft their inmate-interview request letters, *infra*, ensures quick and preferential access by the media (over and above access by court-appointed defense counsel) to capital defendants for interviews, before or at the time that counsel is court-appointed. (SWH Vol. 3:56 (Brooke Busby); SWH Vol 3:95 (Karo Johnson)). *Massiah v. United States*, 377 U.S. 201, 202-203(1964). *See Manns v. State*, 122 S.W.3d 171, 187 (Tex. Crim. App. 2003) ("affirmative conduct by a government official is required to convert an entrepreneurial informant into a government agent, ... [citing caselaw from state and federal jurisdictions]).

There was a three-day Gap between arraignment and request for counsel by Mr. Broadnax

10

139

and the appointment of Mr. Lollar, which was the result of the passage of the TFDA in 2002 (and its subsequent amendments). (SWH Vol 3:115-115 (Doug Parks); SWH Vol 3:90-94 (Karo Johnson)).

Prior to the enactment of the TFDA, and for at least a decade in the 1990s, the appointment procedure in Dallas County was that when a defendant had been arraigned on a capital murder charge, the magistrate would telephone one of the lawyers on the list. The magistrate would keep calling until he found someone on the list willing to assist the defendant. (SWH Vol 3:52-53 (Brooke Busby)). Within 30 minutes to an hour of the call from the magistrate, the lawyer who accepted the appointment was required to go to the Dallas County jail where the capital defendant was in custody, and meet with the defendant, even if that lawyer received the telephone call from the magistrate at night. (SWH Vol 3:52-53 (Brooke Busby)); (SWH Vol 3:90 (Karo Johnson)); (SWH Vol 3:115 (Doug Parks)). If the attorney could or would not come to the jail immediately after the magistrate called, the magistrate would choose someone else on the list to ensure immediate access by a capital defendant to counsel. (SWH Vol 3:115 (Doug Parks)).

After the passage of TFDA, a Dallas County court was not obligated to appoint counsel for a capitally-charged defendant until "immediately following the expiration of end of the first working day after the date on which the court or the courts' designee receives the defendant's request for appointment of counsel." TEX. CODE CRIM. PROC. Art. 1.051(I). (SWH Vol 3:115-116 (Doug Parks)). Experienced capital defendant attorneys in Dallas, repeatedly testified to having had many different capitally-charged, high-profile defendants interviewed by the media during the Gap. (SWH Vol 3:26-29; 34-47 (Catherine Bernhart); (SWH Vol 3:58-64 (Brooke Busby)). In some instances, even if an attorney had been appointed, the Dallas County Jailers would impede the attorneys access

11

140

to their client, to allow the media sufficient time to conduct media interviews. (SWH Vol 3:95-96 (Karo Johnson); SWH Vol 4:DX-1C & DX23 Janet Cook Letter to Sheriff Lupe Valdez and trial transcript testimony of Cook).

During the three-day Gap between the arraignment and request for counsel by Mr. Broadnax and the appointment of Mr. Lollar as his defense counsel by the district court to whom the case had been assigned, the Dallas County Sheriff's Office sufficiently solicited, encouraged, and coordinated their efforts with that of the media, so as to provide media outlets superior access to Mr. Broadnax for interviews. These efforts make the media conducting the interviews agents of the State of Texas for purposes of the Sixth Amendment right to counsel, and make the interviews a critical stage of the proceedings.

At least as early as Friday, June 20, 2008, at 7:38, while Mr. Broadnax was still in the Garland City Jail and before he was taken to Dallas County Jail, WFAA TV Channel 8 (as well as other media outlets,[3] including Fox 4 by way of example and not limitation), had faxed an inmate interview request letter to Kim Leach. Ms. Kim Leach was the Public Information Officer/Media Relations for the Dallas County Sheriff's Office. The interview request letters from Channel 8 and Fox 4, and other the local media outlets, were substantially similar to the sample Media Inmate Interview Request letter – a template created by the Media Relations for the Dallas County Sheriff's Office as part of its procedure in giving the media preferential and immediate access to capital defendants. *Compare* SWH Vol 4:DX-1A and DX-14 *with* SWH Vol 4:DX20).

Ms. Leach (and her successor Carmen Castro), corrected any deficiencies in the media letters

---

[3]    The Dallas County Sheriff's Office was not able to produce any of the other media letters.

12

141

to bring them into full compliance with the Dallas County Jailers procedures, and thereafter transmitted the media letters (including Channel 8, Fox 4, and other media letters) to the Dallas County Jailers, who in turn delivered it to Mr. Broadnax. (SWH Vol 3:102-103 (Karo Johnson); SWH Vol 3:140-142 (Brad Lollar)). Neither the template, nor the actual media interview request letters from the news outlets to Mr. Broadnax contained *Miranda* Warnings, notwithstanding that the Dallas County Jailers knew that Mr. Broadnax had invoked his rights to counsel because the Dallas County Jailers are responsible for transmitting the legal forms to/from the magistrate court to the defendants at the time of the arraignment. (SWH Vol 3:106 (Karo Johnson)). The Channel 8 letter recites that WFAA "would like to request an on-camera interview with you [Mr. Broadnax], which would "allow you to tell our viewers your side of the story" about the recent incarceration because "it is important to hear your side." (Trial Vol 41:18-21; SWH Vol 4:DX-20; State Hab. App. DX-7).

Likewise on Friday, June 20, 2008, while Mr. Broadnax was still in the Garland City Jail and before he was taken to the Dallas County Jail, Fox 4, KDFX Television faxed a letter to Kim Leach, so she could transmit the letter to Mr. Broadnax. Fox 4 also requested an interview stating that Mr. Broadnax "will be given this opportunity to tell your side of the story," and that if he was interested, "please notify the Sheriff's department as soon as they deliver this letter." (State Hab. App. Exhibit 7) (SWH Vol 4:DX-20; SWH Vol.3:141-142 (Brad Lollar)).

Ms. Leach forwarded these requests to the Dallas County Jailers on Monday morning, June 23, 2008 at 10:08 am after Mr. Broadnax had been arraigned and in the presence of the Dallas County Jailers had requested counsel, but before the district court appointed counsel for Mr. Broadnax. The Dallas County Jailers also knew about the mental condition of Mr. Broadnax because

13

he was in their care, custody and control.

The media interviews of Mr. Broadnax occurred around 1:00 pm on June 23, 2008, (Trial Vol 41:22, 24, 32), the day before the trial court (Criminal District Court #7, Judge Snipes) had appointed counsel for Mr. Broadnax on June 24, 2008. The media interviews of Mr. Broadnax focused on three main topics:

- Did you do it?
- Are you remorseful?
- What punishment do you deserve?

The answers to these three topics can (and in Mr. Broadnax's case, did) create such prejudicial harm that it adversely effects every aspect of defense counsel's ability to effectively defend a client. (SWH Vol 3:111-112 (Karo Johnson)).

### C.    The Suppression Hearing: "Not even close"

The June 23, 2008 video interviews of Mr. Broadnax by the media were obtained by the prosecution. A suppression hearing was held six (6) days before the guilt/innocence phase began on August 11, 2009. The defense theory challenging the admissibility of the videotapes was that there was State action because the Dallas County Jailers violated their policy by allowing media access to Mr. Broadnax, who was in a psychotic state, and the Dallas County Jailers were present during the interviews.

At the trial suppression hearing, and although the media raised the Texas Free Flow Act (TFFA), Texas common law, and the Texas Constitution as a shield to testifying, the appellate court held that this law did not apply to shield the Texas media from discovery of evidence of the media interviews of Mr. Broadnax, *In re Raab*, 293 S.W.3d 865, 866-67 (Tex. App. Decided July 31,

14

143

2009). Even so, the defense did not file a motion to continue the suppression hearing/trial, and no one on the defense team made any attempt to talk to the beat reporters or any member of the media, or the Dallas County Jailers before the suppression hearing. Thus, defense counsel had done no prior investigation to discover state action, showing how and when law enforcement acted in tandem with the media to make the interviews of Mr. Broadnax happen prior to the appointment of counsel. (SWH Vol 3:151-152 – Brad Lollar testimony). The suppression hearing was, in effect, the first discovery effort of the defense with respect to the media-access issue.

There were no questions at the hearing from the defense about the "who, when, or how" the news station personnel (such as the reporter's assignments editor) *initially* learned that Mr. Broadnax was present at the Dallas County jail (*i.e.,* by a communication initiated by law enforcement, or instead from their own due diligence searches of public information sources).

- Shawn Raab, reporter for KDFX (Channel 4), was asked by the prosecutor: "Before you got the word that you could go out and interview him, had you had any contact with law enforcement about interviewing him?" (Trial Vol. 43:7, 9). His response was vague: it was "company procedure in murder cases, someone at the station files an interview request." (Trial Vol. 43:7).

- Rebecca Lopez, a reporter for WFAA (Channel 8), was asked by the prosecutor whether she had "had any contact with law enforcement as it related to any of the defendant's rights" prior to her assignments editor called to say that Mr. Broadnax had agreed to an interview. Ms. Lopez testified: "I had not had any contact with law enforcement." (Trial Vol. 43:40, 60-61).

- Mr. Steve Pickett, a reporter for Channel 11, (Trial Vol. 45:117). was asked by the prosecutor: "[Prior to getting that assignment, had you had any conversations with anybody from law enforcement about interviewing the defendant?" He answered: "I didn't directly, no." (Trial Vol. 43:66). Thereafter he described the open records process to obtain an interview. (Trial Vol. 43:66).

- Ms. Ellen Goldberg, a reporter for Channel 5, was asked by the prosecutor: "Prior to your interviewing the defendant, did you have any discussions with

15

144

anybody in law enforcement about going over and interviewing the defendant.... Nobody from the Garland jail called you and said Hey, this guy won't talk to us. Will you go make it happen? Didn't happen?" To which Mr. Goldberg responded: "Did not happen." (Trial Vol. 43:88).

Indeed, Mr. Lollar's questioning seemed to indicate that he believed that the reporters had followed a standard open records procedure:

Lollar:    Ms. Goldberg, would it be fair to state that common process in these things is your station to contact the Dallas County jail and ask for permission to see a person that is in the jail, and then they get back with you and let you know whether or not that person has agreed to the interview?

(Trial Vol. 43:91). Yet, Mr. Lollar objected to the admission of the television interviews based on the reporters acting as agents of the state. (Trial Vol. 43:105-106).

The prosecutor re-framed the two (2) issues for resolution at the suppression hearing as being whether reporter(s) who interviewed Mr. Broadnax:

- "were acting as an agent of the State," and
- if they did anything to overcome his free will"

(Trial Vol. 43:5-6, 37, 64, 84).

The trial judge denied the defense Motion to Suppress. (Trial Vol. 43:113). The ruling was based on a finding that "on this record we cannot conclude that the reporter was acting as a State agent when he interviewed appellant," and "whether the defense was able to prove an agency relationship, which they must in order for their argument to succeed, *is not even a close one*." (Trial Vol. 43:113).

**D.    The Videotapes: Played by Prosecutor Repeatedly in All Phases of the Trial**

16

145

The videotaped interviews of Mr. Broadnax were admitted into evidence in the guilt/innocence phase. (Trial Vol 46; SWH Vol 3:151 – Brad Lollar testimony). The prosecutor referred to the videotapes in opening statement. (Trial Vol. 45:56-58). Then the prosecutor presented its evidence, the videotapes of Mr. Broadnax's media interviews, in the guilt/innocence phase on August 10 & 11, 2009. (Trial Vol. 45, 46, 47). As promised in the opening statement, the prosecutor played the media interviews of Mr. Broadnax on each day. (August 10, 2009 – Trial Vol. 45:125 – Channel 11; RR 45:277 – Channel 5); (August 11, 2009 – Trial Vol. 46:230 – Channel 4). The jury returned a verdict of guilty of capital murder. (Trial Vol. 47:203; Trial Clerk's Record 3:635).

The videotapes became the focal point of the future dangerousness special issue in the punishment phase. (Trial Vol. 50:212-213; (Trial Vol. 52:248-249; Trial Vol. 53: 68-69, 74). During their deliberations, the jury sent out a note requesting, among other things: "video of channel 5 interview." (Trial Clerk's Record 3:648). The trial judge responded, in pertinent part: "The Bailiff will come to the jury room and play the video of Channel 5 shortly." (Trial Clerk's Record 3:649).

The jury answered yes to the special issue 1, whether Mr. Broadnax was a future dangerous, and no to the special issue 2, whether there was sufficient mitigating evidence to warrant imposing a life sentence for Mr. Broadnax, instead of death. (Trial Clerk's Record 3:650, 651). On August 21, 2009, the judge imposed a sentence of death on Mr. Broadnax. (Trial Clerk's Record 3:698).

The media interviews of Mr. Broadnax were a "critical stage" in the proceeding, because they were events that "so prejudiced] the outcome of the defendant's prosecution that, as a practical matter, [Mr. Broadnax had to] be represented ... in order to enjoy genuinely effective assistance of counsel." *Rothgery*, 554 U.S. at 217. The media interviews also unfairly prejudiced the outcome of

17

the direct appeal. *See United States v. Wade,* 388 U.S. 218, 225–226 (1967) (The "'right to use counsel at the formal trial [was] a very hollow thing [because] for all practical purposes, the conviction [was] already assured by the pretrial examination' [in the media interviews]").

18

147

### E.    The Videotapes:  The Basis for Denial in Direct Appeal

The Texas Court of Criminal Appeals (TCCA) in its direct appeal opinion relied primarily on the media interviews to support a challenge to the sufficiency of the evidence of future dangerousness.  The TCCA's opinion made fact findings about Mr. Broadnax's lack of remorse and future dangerousness based on his description of the offense during the media interviews.  The Court denied the lack of sufficiency claim:

*H. Sufficiency of the Evidence  – Future Dangerousness*

... sufficient evidence of future dangerousness can be inferred from the offense itself. [footnote 113 omitted].  Here, the appellant confessed to murdering two defenseless men in order to steal their car so he could return home.  The appellant described to reporters how he shot each man a second time after their initial wounds failed to kill them immediately.  Then, when the appellant was sure the victims had expired, he rifled through their pockets.

The probability of appellant's future dangerousness also can be inferred from evidence showing a lack of remorse.  [footnote 114 omitted].  In the same television interviews discussed above, the appellant coldly and calmly walked reporters through the murders.  When asked if he had anything to say to the victims' families, the appellant responded, "Fuck 'em." To the specific question by the interviewer, "Do you have any remorse, none whatsoever?" the appellant only shook his head.

*Broadnax v. State*, 2011 WL 6225399, \*17 (Tex. Crim. App. 2011).

### F.    The State Application:  Motion for Discovery & Reconsideration Denied

In his Application, Mr. Broadnax raised eight (8) grounds for relief.  He also filed a Motion for Court-Ordered Discovery, For Court-Order Brady Material from Dallas DA, & For Continuance of the Evidentiary Hearing, a Motion for Evidentiary Hearing, and Motion for Oral Argument Before the Texas Court of Criminal Appeals (collectively Motion).  The trial court held a hearing

19

148

on the Motion on December 6, 2012, and an evidentiary hearing on December 7, 2012.

On December 6, 2012, following the hearing on the Motion, the court denied the Motion in full ruling:

> The Court, having considered Applicant's Motion for Court-Ordered Discovery and Continuance of the Evidentiary Hearing, the State's Motion to Quash Subpoena, and the arguments of counsel, now enters the following order:
>
> Applicant's request for this Court to order Channels 4, 5, 8, and 11, to identify and produce for deposition duces tecum employees who interviewed James Broadnax between arraignment and appointment of counsel is DENIED.
>
> Applicant's request for this Court to issue an order authorizing the Applicant to depose each of the defendants identified in Applicant's motion is DENIED.
>
> Applicant's request for this Court to enter an order requiring the State of Texas to produce all correspondence of the Dallas Sheriff's Office, the Dallas District Attorney's Office, and the Dallas Police Department to or from any media outlet pertaining to any of the defendants identified in Applicant's motion, is DENIED.
>
> The State's Motion to Quash Subpoena is in all things GRANTED.
>
> Applicant's request for additional days to conduct the evidentiary healing in this case is DENIED at this time.

Court Order, 12-06-2012.

Mr. Broadnax filed a Motion To Reconsider & Rescind the 12-12-2012 Order, To Reopen the Evidentiary Hearing, To Compel Rosales, Lopez, and WFAA-TV To Testify & Produce Documents ("Reconsideration Motion"). Mr. Broadnax argued that the media assertions that they were shielded by the Texas Free Flow Act (TFFA), Texas common law, and the Texas Constitution did not apply. The media had made the arguments prior to the trial of Broadnax, and the court ruled that the evidence sought by the defense was obtained or prepared by the media long before the effective date of the TFFA. *In re Raab*, 293 S.W.3d 865, 866-67 (Tex. App. 2009).

20

149

Nonetheless, the trial Court denied the Reconsideration Motion ruling:

> The Court, having considered Applicant's Motion to Reconsider and Rescind the 12-12-2012 Order, to Reopen the Evidentiary Hearing, and to Compel Rosales, Lopez, and WFAA-TV to Testify and Produce Documents, finds that there is no need to reopen the evidentiary hearing. The Court finds that the Court has sufficient evidence to resolve the issues before the Court. The Court further finds that Rosales, Lopez, and WFAA-TV would not produce any evidence relevant to the Court's determination, IT IS THEREFORE ORDERED that Applicant's Motion to Reconsider is in all things DENIED.

Court Order, 12-20-2012.

At the state writ hearing, Mr. Lollar admitted that in 2008 he knew of the Appointment Delay or Gap prior to his court-appointment to represent Mr. Broadnax, (SWH Vol 3:163 – Brad Lollar testimony), and that he had been one of the court-appointed attorneys who represented capital defendants before and after the passage of the Texas Fair Defense Act and its amendments, which changed the procedure for appointment of counsel in Dallas County from appointment-by-magistrate immediately after arraignment, to appointment by the Assigned Court after the Gap. (SWH Vol 3:163 – Brad Lollar testimony).

At the state writ hearing, Mr. Lollar also admitted that he was responsible for the challenges to the media interviews. (SWH Vol 3:149 – Brad Lollar). Mr. Lollar also admitted that he "absolutely" agreed that there is a systemic problem in Dallas County that is arising as a result of that Gap, but that he did not talk about the Gap or bring in other attorneys to prove that in Dallas County historically there had been a Gap both during and after Mr. Lollar's representation of Mr. Broadnax. (SWH Vol 3:165 – Brad Lollar testimony). Mr. Lollar's rationale to forgo a challenge to the TFDA was that he "had *not* thought about it." Mr. Lollar could not find a particular entry in his billing records that reflected that he had researched the issue about the delay in court-appointments of

21

150

counsel to represent capital defendants at or before initial appearance. (SWH Vol 3:154 – Brad Lollar testimony).

Mr. Parks was the "book" lawyer, who did the constitutional law research at the trial level in the *Broadnax* case. (SWH Vol 3:124 – Doug Parks). Mr. Parks did not research the issue about the Gap, and the media interviews of Mr. Broadnax during the Gap created by the Texas Fair Defense Act and its amendments, either. Mr. Parks was aware that the position of the American Bar Association (ABA) was that counsel should be appointed no later than initial appearance (arraignment or Texas Magistration). (SWH Vol 3:122 – Doug Parks). *Rothgery v. Gillespie County, TX,* 554 U.S. 191 (2008) had been decided June 23, 2008, the same day that Mr. Broadnax had been interviewed by the media, and the day before the appointment of Mr. Brad Lollar, as defense counsel. (SWH Vol 3:123 – Doug Parks). Mr. Parks did not do the research that would have lead him to find *Rothgery*, 123 S.Ct. 258, decided June 23, 2008, decided the same day that Mr. Broadnax was interviewed by the media before the appointment of counsel. (SWH Vol 3:123 – Doug Parks). At the state writ hearing, Mr. Parks admitted that he did not attempt to talk to the reporters who interviewed Mr. Broadnax because Mr. Lollar was handling that portion of the case. (SWH Vol 3:121-122 – Doug Parks).

The performance of defense counsel in challenging the admissibility of the media videotapes was deficient because of the inadequate pre-trial investigation into:

1.  Media: The Defense did not interview any reporter or assignment editor sufficiently in advance of trial despite the *in*applicability of the media shield laws, nor did the defense request a continuance of the trial to do so

2.  Law Enforcement: The Defense did not interview the Dallas County Jailers nor law enforcement in Texarkana, Garland, or Dallas, prior to trial

22

151

3.     <u>Capital Defense Bar</u>:  The Defense did not interview the Dallas County Capital Defense prior to trial despite their willingness to testify about their experience with the Gap and media interviews

Assertions of defense counsel, such as:

1.     Mr. Lollar's rationale to forgo a challenge to the TFDA because he "had *not* thought about it,"

2.     Mr. Parks failure to research and investigate *Rothgery* and a challenge to the constitutionality of the TFDA because he thought it was "fruitless," and

3.     Mr. Parks "ha[d] been doing this a long time"

were not "strategic" decisions because counsel did not fulfill their obligation to conduct a thorough pre-trial investigation into the media interview of Mr. Broadnax before any "strategic" choice was made. *Compare Sears v. Upton*, 130 S.Ct. 3259, 3265 (2010).  Mr. Parks' assertion that a challenge to the constitutionality of the TFDA was "fruitless," is not sustainable as a strategic decision because only after the legal research was performed would counsel have realized that there was a salient issue about the timing of counsel-appointment.[4]  Once they were informed, only then could trial counsel have made an informed strategic decision as to whether to investigate the facts about the timing of appointment of counsel in Dallas. (SWH Vol 3:124 – Doug Parks). *See  Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir.2013) ("counsel must either (1) undertake a reasonable investigation or (2) make an informed strategic decision that investigation is unnecessary.

Likewise, the courts have instructed that "under a *Strickland* analysis, trial counsel must not

---

[4]  *See Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 214 (2008) (Alito, J., and Scalia, concurring) (whether "the assistance of counsel in the wake of a Texas magistration is part of the substantive guarantee of the Sixth Amendment, .... At the same time, we have recognized that certain pretrial events may so prejudice the outcome of the defendant's prosecution that, as a practical matter, the defendant must be represented at those events in order to enjoy genuinely effective assistance at trial. )"

23

152

ignore pertinent avenues of investigation, or even a single, particularly promising investigation lead." *Charles,* 736 F.3d at 390. Hence, Mr. Lollar's rationale to forgo a challenge to the TFDA because he "had *not* thought about it," and Mr. Parks justification that he "ha[d] been doing this a long time" do not suffice as "strategic" decisions either. *See also Kimmelman v. Morrison,* 477 U.S. 365, 385 (1986) ("Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forgo that stage of pretrial preparation and applying a "heavy measure of deference," *ibid.,* to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justifications Morrison's attorney offered for his omission betray a startling ignorance of the law-or a weak attempt to shift blame for inadequate preparation.").

Because the pre-trial investigation into the media interviews by defense counsel was deficient, the a decision to focus on one potentially reasonable trial strategy – that there was State action because the Dallas County Jailers violated their policy by allowing media access to Mr. Broadnax, who was in a psychotic state and were present during the interviews – was not "justified by a tactical decision" when "counsel did not fulfill their obligation to conduct a thorough pre-trial investigation into the media interview of Mr. Broadnax. *See Sears v. Upton,* 130 S.Ct. 3259, 3265 (2010) ("This point is plain in *Williams:* We rejected any suggestion that a decision to focus on one potentially reasonable trial strategy—in that case, petitioner's voluntary confession—was "justified by a tactical decision" when "counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." 529 U.S., at 396. A "tactical decision" is a precursor to concluding that counsel has developed a "reasonable" mitigation theory in a particular case.").

24

153

II.     FFCL (Grounds 1, 2 & 3 – incorporated by reference into each other)

Ground One (Denial of *Procedural* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his procedural 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

Ground Two (Denial of *Substantive* Right to Counsel and Due Process, and to Equal Protection, Re: Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his substantive 6th & 14th amendment right to counsel, due process of law, and equal protection, during the media interviews

Ground Three (IAC & Media Interviews – 6th and 14th amendment violations). Mr. Broadnax was denied his federal constitutional right to effective assistance of counsel, who failed to perform an adequate investigation into, and develop and present, the facts of Lollar's appointment and the media interviews

\*       *Because the facts and conclusions are integral to each of the aforementioned grounds, the following Findings and Conclusions of Law by this Court, are incorporated by reference into each of the Grounds 1, 2 & 3*

## FINDINGS OF FACT (As to Grounds 1, 2 & 3)

The following Findings of Fact are integral to all of the aforementioned grounds and incorporated by reference into each of them.

A.      **Book-in Procedures, Arraignment, Request for Counsel & the Dallas County Jailers**

1.      The Court finds that at the time of Mr. Broadnax's offense conduct, the book-in procedure in Dallas County began with a defendant being brought in by law enforcement to the Dallas County jail, also referred to as Lew Sterrett Criminal Justice Center (hereinafter "Dallas County Jail," or "Lew Sterrett"). (SWH Vol 3:42 – Bernhardt testimony; SWH Vol 3:132-134 – Brad Lollar[5] testimony).

---

[5]      Brad Lollar was first chair in the Broadnax capital murder case. Mr. Lollar graduated from SMU Law School in 1977, and had been doing criminal defense for thirty-five (35) years. He worked for the Dallas District Attorney's Office from 1977 to 1982, and then went into private practice. From 2005 to 2008, Mr. Lollar was appointed as the Chief Public Defender for Dallas County. His wife had been a Dallas County Magistrate for the past seven (7) years and would have presided over the arraignments of defendants in Dallas County. (SWH Vol

25

154

2.  The Court finds that the Dallas County Jail was run by the Dallas County Sheriff's Department (hereinafter "Dallas County Jailers"). (SWH Vol 3:132 – Brad Lollar testimony).

3.  The Court finds that pursuant to the book-in procedures, defendants, including Mr. Broadnax, were placed in a room with a group of other persons accused of various offenses while law enforcement prepared the initial paperwork on the case. That paperwork was then taken to a supervising officer who either approved it or disapproved it or made suggestions to revise it. (SWH Vol 3:133-134 – Brad Lollar testimony).

4.  The Court finds that once the paperwork was completed by law enforcement, the Dallas County Sheriff's Department personnel ("Dallas County Jailers"), brought the defendants, including Mr. Broadnax, into a courtroom to appear before the Dallas County Magistrate. (SWH Vol 3:133-134 – Brad Lollar testimony).

5.  The Court finds that the Dallas County Jailers remained in the courtroom with the defendants, including Mr. Broadnax, while the Dallas County Magistrate conducted the arraignment. The Court finds that the Dallas County Magistrate advised each defendant, including Mr. Broadnax, about the nature of the charge, set bond, and advised the defendants of their rights. (SWH Vol 3:133-134 – Brad Lollar testimony).

6.  The Court finds that thereafter the clerk for the Dallas County Magistrate handed the Dallas County Jailers various forms which include, among others, an affidavit of indigency and request for counsel. (SWH Vol 3:133-134 – Brad Lollar testimony).

7.  The Court finds that the Dallas County Jailers in turn delivered the forms to the defendants, including Broadnax, and handed the defendants a pen,[6] and remained present while the defendants, including Mr. Broadnax completed the forms because a defendant is not allowed to possess a pen while in the Dallas County Jail. (SWH Vol 3:133-134 – Brad Lollar testimony).

8.  The Court finds that the defendants, including Mr. Broadnax, completed the forms in front of the Dallas County Jailers, who witnessed the signatures of the defendants, including that of Mr. Broadnax, because a defendant is not allowed to possess a pen while in the Dallas County Jail. (SWH Vol 3:133-134 – Brad Lollar testimony).

---

3:131-132).

[6]  According to Brad Lollar, Mr. Broadnax's lead defense counsel, Dallas County Jailers hand inmates a pen to sign forms because a defendant is not allowed to possess a pen while in the Dallas County Jail. (SWH Vol 3:133-134 – Brad Lollar testimony).

26

9.  The Court finds that the Dallas County Jailer took the completed forms from the defendants, including Mr. Broadnax, along with the pens, and delivered the completed forms to the clerk for the Dallas County Magistrate, who forwarded them to the district courts. SWH Vol 3:133-134 – Brad Lollar testimony).

10. The Court finds that this procedure, the Dallas County Jailers knew or should have known that a defendant had invoked his rights to counsel because it is done right in front of the Dallas County Jailer, who provided the pen, remained present while the defendants (including Mr. Broadnax) completed the forms requesting counsel, and delivered the completed forms back to the Dallas County Magistrate, who forwarded them to the district courts. (SWH Vol 3:135 – Brad Lollar testimony; SWH Vol 3:106 – William E. Karo Johnson).

**B.    Court-Appointment Procedure Before & After the Texas Statutes Governing Indigent Defense & The "End of the First-Working-Day" Provision**

11.  •    **Prior to the Year 2002:** The Court finds that prior to the year 2002, in Dallas County, the Dallas County Magistrate appointed counsel for a capitally-charged defendant immediately after the arraignment. Drawing from a list of qualified lawyers, the Dallas County Magistrate would call until he found an attorney on the list who was both willing to represent the defendant and report to the Dallas County Jail to meet and advise the defendant within thirty (30) minutes to one (1) hour of receiving the call from the Dallas County Magistrate. (SWH Vol 3:52-53 – Brooke Busby[7] testimony).

12. The Court finds that prior to the year 2002 in Dallas County, within 30 minutes to an hour of the call from the magistrate, the lawyer who accepted the appointment traveled to the Dallas County Jail where the capitally-charged defendant was in custody, and met with the defendant, even if that lawyer received the telephone call from the Dallas County Magistrate at night, on a weekend, on a holiday, or during regular business hours. (SWH Vol 3:52-53 – Brooke Busby testimony); (SWH Vol 3:90 – William E. Karo Johnson[8]); (SWH Vol 3:115 – Doug Parks[9]). If the attorney could not met with the defendant within thirty (30)

---

[7]    Brooke Busby is a criminal defense attorney, who graduated from law school in 1979 and has been doing capital defense since 1989. She practices exclusively in the Dallas County courts and in federal court. She is board certified in criminal law. (SWH Vol 3:51).

[8]    Karo Johnson is a criminal defense attorney who was licensed to practice law in 1976, and his practice is exclusively criminal defense. He represented persons accused of capital crimes. His first capital case was in 1994. (SWH Vol 3:89).

[9]    Doug Parks was licensed to practice law in Texas in 1970, and became active in criminal defense in 1972. (SWH Vol 3:114). He is a board certified criminal defense attorney

27

minutes to one (1) hour, the Dallas County Magistrate would choose someone else on the list for the court-appointment. (SWH Vol 3:115 – Doug Parks).

13.     The Court finds that prior to the year 2002 in Dallas County, the court-appointed attorney would report to central intake at Lew Sterrett, where the defendant was being held. The attorney would go to the information booth when counsel first walked in, was given a badge, and then proceeded to the interview rooms where counsel would meet with the defendant. (SWH Vol 3:90-91 – William E. Karo Johnson).

14.     The Court finds that prior to the year 2002 in Dallas County, appointed counsel would make the defendant aware that he or she was appointed to represent the defendant, explain that their communications were attorney-client information, provide information about the situation that the defendant found himself in, and advised the defendant about the importance of not speaking to anyone except the defense team about the offense. (SWH Vol 3:91 – William E. Karo Johnson).

15.     The Court finds that it was important for the attorney in this first meeting to advise the defendant to remain silent because the court-appointed attorney knew that the defendant would possibly want to talk to other people and that that information could be used against the client. (SWH Vol 3:91 – William E. Karo Johnson).

16.     The Court finds that prior to the year 2002 in Dallas County, during the first meeting between client and attorney, appointed-counsel would explain to the defendant that the people in the jail were not friends, and that these people would only want to talk to the defendant to take advantage of what the defendant told them, not to try to help the defendant. Appointed counsel would also explain that the defendant's case was the most serious case any defendant could ever be charged with, that this was a very critical time in the representation, and it was very important for the defendant/client to follow counsel's advice. (SWH Vol 3:91-92 – William E. Karo Johnson).

17.     The Court finds that prior to the year 2002 in Dallas County, when there was no delay between the arraignment and the appointment of counsel, appointed criminal defense attorneys stopped the State of Texas from extracting a written confession through the media as its agent. (SWH Vol 3:56 – Brooke Busby testimony).

18.     •       **On or After January 1, 2002**: The Court finds that TEX. CODE CRIM. PROC. Art. 1.52 became effective on January 1, 2002. The statute provided in pertinent part: "In a county with a population of 250,000 or more, the court or the court's designee shall appoint

---

and the criminal defense lawyer member of the First Administrative District that approves the applications of other lawyers to be on the list of lawyers who can be appointed to the first chair capital cases and second chair.(SWH Vol 3:116).

28

157

counsel as required by this subsection as soon as possible, but not later than the end of the first working day after the date on which the court or the court's designee receives the defendant's request for appointment of counsel." (SWH Vol 4:DX-3; SWH Vol 3:28 – Catherine Bernhardt[10] testimony). Dallas County was a county with a population of 250,000 or more, and required to follow the dictates of the statute.

19.    •    **On or After September 1, 2007**: The Court finds that on September 1, 2007, the Texas Fair Defense Act (TFDA), TEX. CODE CRIM. PROC. Art. 1.051, Right to Representation by Counsel, became effective.

20.    The Court finds that the TFDA governed the appointment-of-counsel in Mr. Broadnax's case.

21.    The Court finds that TEX. CODE CRIM. PROC. Art. 1.051© provides:

In a county with a population of 250,000 or more, the court or the courts' designee shall appoint counsel as required by this subsection as soon as possible, *but not later than the end of the first working day after the date on which the court or the courts' designee receives the defendant's request for appointment of counsel.* (emphasis supplied).

22.    The Court finds that pursuant to TEX. CODE CRIM. PROC. Art. 1.051, the judge of the district court in Dallas County to which the capital case was assigned, or the court's designee – and not the Dallas County Magistrate – appointed the defense attorney to represent the defendant charged (including Mr. Broadnax). (SWH Vol 3:94 – William E. Karo Johnson).

23.    The Court finds that pursuant to TEX. CODE CRIM. PROC. Art. 1.051, the Dallas County district court *to which the case has been assigned* had "end of the first working day" to appoint an attorney. (SWH Vol 3:116 – Doug Parks).

24.    The Court finds that the "end of the first working day" provision TEX. CODE CRIM. PROC. Art. 1.051 meant one business day in Dallas County. (SWH Vol 3:107-108 – William E. Karo Johnson).

25.    The Court finds that the "end of the first working day" provision does not include Saturdays, Sundays, or holidays. (SWH Vol 3:107-108 – William E. Karo Johnson).

---

[10]    Catherine Bernhardt is a criminal defense attorney who graduated from University of Texas in 1987, and was licensed to practice in 1987. She worked in the Staff Attorney's Office for the Criminal District Courts of Dallas County, followed by employment in the Dallas County Public Defender's Office until September 2002, when she went into private practice doing criminal defense work. (SWH Vol 3:23).

29

158

26.    The Court finds that the Dallas County Procedures for Appointment of Counsel in Death Penalty Case, that were applicable to Mr. Broadnax's 2008 case, contained the same or substantially "end of the first working day" language as in the TFDA. (SWH Vol 3:32 – Bernhardt testimony).

**C.    The Statutory "End of the First-Working-Day" Provision by Which the District Court Must Appoint Counsel, Begins to Run _Only After_ the Decision to Assign the Capital Case to a Particular District Court is Made.  While the Decision is Being Made, an "Appointment Delay" or "Gap" of One or More Calendar Days Can Run, During Which Time a Capital Defendant is Without Counsel**

27.    The Court finds that in Dallas County, after a defendant (including Mr. Broadnax) was arraignment and requested counsel, an administrative decision must be made as to which district court in Dallas County (the "Assigned Court") the capital case would be assigned to, so that the capital case load is evenly distributed among the various district courts. (SWH Vol 3:64 – Busbee testimony; (SWH Vol 3:94 – William E. Karo Johnson).

28.    The Court finds that because of the time it takes to make the administrative decision, a delay ("Appointment Delay" or "Gap") occurs from the time a defendant charged with capital murder (including Mr. Broadnax) requests counsel, and the actual appointment of counsel by the Assigned Court. (SWH Vol 3:27 – Bernhardt testimony; SWH Vol 3:64 –  Brooke Busbee testimony:  There is a delay "because of the way that they parcel out death penalty cases or capital murder cases."); (SWH Vol 3:94 – William E. Karo Johnson testimony: " ... there's some period of time that goes by for them to decide which court this particular capital case is going to be assigned to.").

29.    The Court finds that the Appointment Delay or Gap can be calendar days long. (SWH Vol 3:27 – Bernhardt testimony:  "...there would typically be a day or two, sometimes more, between arraignment and appointment of counsel").

30.    The Court finds that when the court appoints counsel immediately following arraignment for a defendant charged with capital murder in Dallas County, appointed counsel has several options, alone or in combination, that will prevent media interviews of defendants charged with capital murder.

31.    The Court finds that one option is for appointed counsel to advise the client not to give the interviews. (SWH Vol 3:109 – William E. Karo Johnson); (SWH Vol 3:69 – Brooke Busby testimony).

32.    The Court finds that second option is for appointed counsel to send the Sheriff's Office a letter to prevent media access to the client ("Do Not Interview Letter ") (SWH Vol 3:109 – William E. Karo Johnson); (SWH Vol 3:69 – Brooke Busby testimony).

30

33.    The Court finds that a third option is for appointed counsel to seek a court order that the sheriff's department not allow interviews of the client. (SWH Vol 3:109 – William E. Karo Johnson); (SWH Vol 3:69 – Brooke Busby testimony).

34.    The Court finds that Dallas County attorneys appointed to represent defendants charged with a capital offense, such as Brooke Busbee, Catherine Bernhardt, Karo Johnson, and Brad Lollar, send Do Not Interview Letters to the Dallas County Jail and to the police department upon their appointment to prevent access by the media, among others, to their clients. (SWH Vol 3:44 – Catherine Bernhardt testimony; SWH Vol 3:68-69 – Brooke Busbee testimony; SWH Vol 3:96 – William E. Karo Johnson; SWH Vol 3:140 – Brad Lollar testimony).

35.    The Court finds that when a Do Not Interview Letter is received by the Dallas County Jail, the Do Not Interview Letter is effective in preventing the Dallas County Jailers from giving the media access to the capital defendant for interviews. (SWH Vol 3:44 – Bernhardt testimony).

36.    The Court finds that when interviews by the media, or others, take place during the Gap (including in Broadnax's case) it is too late for an attorney appointed-after-the-fact to undo the unfair and prejudicial harm because the defense attorney's efforts can not un-ring the bell. (SWH Vol 3:44 – Catherine Bernhardt testimony; SWH Vol 3:68-69 – Brooke Busbee testimony; SWH Vol 3:96 – William E. Karo Johnson; SWH Vol 3:140 – Brad Lollar testimony).

37.    The Court finds that after 2002 with the enactment of Texas law that contains the "end of the first working day" provision, by the time a criminal defense attorney is appointed in Dallas County to represent a defendant indicted for capital murder, the Dallas County Jailers have already provided the media access to defendants charged with a capital offense, including Mr. Broadnax, so sending a Do Not Interview Letter to the Dallas County jail, after the media interviews have happened is pointless and does not have any beneficial effect. (SWH Vol 3:69 – Brooke Busby testimony; SWH Vol 3:49 – Bernhardt testimony).

38.    The Court finds that a capital defendant who is represented, and advised, by counsel not to give a media interview, but does so against the advice of counsel, is situated differently from a capital defendant, who the Dallas County Jailers make available to the media for an interview in the Gap. (SWH Vol 3:48 – Bernhardt testimony).

39.    The Court finds that the media interviews of Mr. Broadnax were a "critical stage" in the proceeding, because they were events that "so prejudiced] the outcome of the defendant's prosecution that, as a practical matter, [Mr. Broadnax had to] be represented ... in order to enjoy genuinely effective assistance of counsel." *Rothgery*, 554 U.S. at 217.

31

160

40. The Court finds that the appointment of counsel in the State of Texas, and in Dallas County in particular, is impermissibly premised on a "specified period after [an accused's] magistration," rather than on the need for counsel in a "critical stage" of the postattachment proceedings. *See Rothgery*, 554 U.S. at 217 (Alito, J. concurring, Roberts, Scalia, JJ. join).

**D.    In the Gap Before Counsel is Appointed, the Dallas County Jailers Solicit, Encourage, and Coordinate and Facilitate Interviews of Capital Defendants by the Media, who Are State Agents**

41. The Court finds that the State of Texas exploits the Appointment Delay or Gap by soliciting, encouraging, and facilitating and coordinating and facilitating interviews of capital defendants by the media, who are the agents of the State of Texas. (SWH Vol 3:47 – Bernhardt testimony).

42. The Court finds that during the Gap, the Dallas County Jailers act in tandem with the media to provide quick and preferential access to the media (over and above access to court-appointed defense counsel) for interviews with capital defendants, before or at the time that counsel is court-appointed. (SWH Vol 3:56 – Brooke Busby testimony; SWH Vol 3:95 – William E. Karo Johnson).

43. The Court finds that the Dallas County Sheriff's Office has implemented a procedure, and created a form letter ("DCS Media Inmate Interview-Request Letter"), for the media to pattern their Media Inmate Interview-Request Letters. (SWH Vol 3:102-105 – William E. Karo Johnson, letter read into the record) (SWH Vol 4:DX-1A & DX-14).

44. **•       The Media Inmate Interview-Request Letter is a Sample-Letter Created by the Dallas County Jailers, on which the Media Base Their Requests Almost Verbatim:** The Court finds that the DCS Media Inmate Interview-Request Letter reads:

> Channel "?" requests an interview with you regarding the charges that have been filed against you. We would like to give you an opportunity to tell your side of the story. If you are interested, please sign below so that the Sheriffs Department can notify us <u>as soon as</u> they receive your response about your situation."

(SWH Vol 3:102-105 – William E. Karo Johnson, letter read into the record; SWH Vol 4:DX-1A & DX-14).

45. The Court finds that the DCS Media Inmate Interview-Request Letter recites four elements that should be in Media Inmate Interview-Request Letter drafted by the media outlets:

> i.       *The Media Logo*: to be reproduced at the top of each of the letter;

32

161

  ii.  ***The Introduction***: "channel ? requests an interview;"

  iii.  ***The Purpose***: "to give you an opportunity to tell your side of the story;"

  iv.  ***The Action Step to Be Taken by the Defendant triggering immediate action by the Dallas County Jailers***: "please sign below so that the Sheriff's Department can notify us as soon as they receive your response."

46. The Court finds that although the Dallas County Jailers know of a defendant's right to, and request for counsel, (including that of Mr. Broadnax), the Media Inmate Interview-Request Letter created by the Dallas County Sheriff's Department for the media, contains no *Miranda* warnings at all. (SWH Vol 3:106 – William E. Karo Johnson).

47. • **The Language and Elements in the Media Inmate Interview-Request Letters From the Media Are Identical or Substantially Similar to the Sample Media Inmate Interview-Request Letter Created by the Dallas County Jailers**: The Court finds that the Media Inmate Interview-Request Letters written the media that are addressed to defendants charged in Dallas County with capital murder, contain language that is identical, or substantially similar, to the Media Inmate Interview-Request Letter created by the Dallas County Sheriff's Office.

48. The Court finds that by reproducing the language that is identical, or substantially similar to, that contained in the DCS Media Inmate Interview-Request Letters, the media is assured of maximum compliance with the procedures of the Dallas County Sheriff's Office, and is given quick and preferential access by the Dallas County Jailers to a capitally-charged defendant, before counsel can be appointed and prevent the interviews from happening. (SWH Vol 3:105 – William E. Karo Johnson).

49. The Court finds that by reproducing language that is identical, or substantially similar to, language contained in the DCS Media Inmate Interview-Request Letter, the media are the agents of the State of Texas. (SWH Vol 3:105 – William E. Karo Johnson).

50. The Court finds the following cases include, by way of example but not limitation, cases in which the media are agents of the State, by using language in their Media Inmate Interview-Request Letters that was identical, or substantially similar, to language contained in the DCS Media Inmate Interview-Request Letter; thus, the media were given quick and preferential access by the Dallas County Jailers to a capitally charged defendant, over that given to appointed counsel:

  a. • **Franklin Davis**: The Court finds that the Media Inmate Interview-Request Letters from the media (CW33 News, KTVT-CBS News, Channels 11 and 21; News 8 WFAA TV; KDFX TV Fox 4; and Dallas Morning News) to Franklin Davis, a defendant charged in 2012 with a capital offense, contained language that was identical, or substantially similar, to the DCS Media Inmate Interview-Request

33

162

Letter. *Compare* SWH Vol 4:DX-1A & DX-14 <u>with</u> SWH Vol 4:DX-13.

b. The Court finds that each of the Media Inmate Interview-Request Letter to Franklin Davis substantially reproduced the four elements set out in DCS Media Inmate Interview-Request Letter :

  i. *The Media Logo*: was reproduced at the top of each of the media request letters;

  ii. *The Introduction*: "channel ? requests an interview;"

  iii. *The Purpose*: "to give you an opportunity to tell your side of the story;"

  iv. ***The Action Step to Be Taken by the Defendant triggering immediate action by the Dallas County Jailers***: "please sign below so that the Sheriff's Department can notify us as soon as they receive your response."

c. The Court finds that the Media Inmate Interview-Request Letter from CW33 News at 9:00, signed by Dan Branch, the editor of the 33 News to Mr. Davis, read:

> "Mr. Davis, *CW33 News would like to request an interview* with you. *We would like to offer you the opportunity to tell your side of the story* regarding that capital murder charge you are facing. Thank you. Dan Branch." (SWH Vol 3:99 – William E. Karo Johnson).

d. The Court finds that the Media Inmate Interview Request Letter from KTVT – CBS 11 News, Channels 11 and 21 to Mr. Davis, read:

> "KTVT – *CBS 11 News requests the opportunity for a brief interview*. We feel you deserve the chance to speak about the charges against you. There are questions about the accuracy of the allegations that we would like to give you the chance to address. *If you are interested, please sign below so that the Sheriff's Department can notify us as soon as they receive your response.* You may call directly at 214-739-1199 if you so choose." (SWH Vol 3:99-100 – William E. Karo Johnson).

e. The Court finds that the Media Inmate Interview Request Letter from News 8 WFAA to Mr. Davis, read:

> "To Mr. Davis. *News 8 WFAA TV would like to request an interview* with you regarding the capital murder charges that have been filed against you in relation to the death of Shania Gray. *We would like to give you an opportunity to tell your story. If you are interested, please sign below so the sheriff's department can notify us as soon as they receive your response.* Thank you for your

34

consideration. Steve Young, assignments editor, News 8 WFAA."
TV."  (SWH Vol 3:100 – William E. Karo Johnson).

f.    The Court finds that the Media Inmate Interview Request Letter from KDFX TV Fox 4 to Mr. Davis read:

> "Dear Mr. Davis, *KDFX TV Fox 4 would like to have the opportunity to talk with you* about your current situation. It would also *allow you to tell your side of what happened* and any other details you would like to share. If you're willing to talk to one of our reporters, *please let the Dallas County Sheriff's Department know of your willingness as soon as they deliver this letter*. Thank you for your consideration and we would appreciate your response as soon as possible." (SWH Vol 3:101 – William E. Karo Johnson).

g.    The Court finds that the Media Inmate Interview Request Letter from the Dallas Morning News to Mr. Davis read:

> "Dear Mr. Davis. *I'm a reporter with the Dallas Morning News*. I'm writing about Shania Gray's death. *I would like to give you the opportunity to tell us what happened* with Shania and the capital murder charge filed against you. We would like to give you an opportunity to tell your side of the story. *If you're interested, please sign below so the Sheriff's Department can notify us as soon as they receive your response*." (SWH Vol 3:101 – William E. Karo Johnson).

h.    •    **James Broadnax**: The Court finds that although a records request to the Dallas County Sheriff's Department returned only two Media Inmate Interview-Request Letters, one from WFAA TV Channel 8 and a second from KDFX TV Fox 4, Ms. Kim Leach, the Public Information Officer/Media Relations for the Dallas County Sheriff's Office, discussed the media requests in a pretrial hearing in the Broadnax case in Criminal District Court No. 7, and stated that she had received similar requests from four different media outlets. (SWH Vol 3:142 – Brad Lollar testimony).

i.    The Court finds that each of the Media Inmate Interview-Request Letters created by the four different media outlets addressed to James Broadnax contained the four elements and used language that was identical, or substantially similar to language contained in the DCS Media Inmate Interview-Request Letter. *Compare* (SWH Vol 4:DX-1A and DX-14 _with_ SWH Vol 4:DX20).

35

164

j.  The Court finds that the Media Inmate Interview Request Letter from KDFX TV Fox 4, Gregg Millett, the Assignments Editor, to Mr. Broadnax contained the media logo at the top of the letter. It read:

> "James, *KDFX TV Fox 4 would like to request an interview with you regarding the charges that have been filed against you. We are hoping by speaking with you, you will be given this opportunity to tell your side of the story.* If you are interested in talking with KDFX-TV Fox 4, *please notify the Sheriff's Department as soon as they deliver this letter.* (SWH Vol 4:DX20).

k.  The Court finds that the Media Inmate Interview Request Letter from WFAA TV Channel 8 to Mr. Broadnax read:

> "Mr. Broadnax: *On behalf of WFAA TV channel 8, I would like to request an interview with you.* This would allow you to tell our viewers your side of the story regarding your recent incarceration. We firmly believe in telling both side of a story and understand it is important to hear your side." . (SWH Vol 4:DX20).

l.  The Court finds that the signature of Mr. Broadnax on the Media Inmate Interview Request Letter from WFAA TV Channel 8 and from KDFX TV Fox 4 were signed by "DSO Spratling #5795 Officer/Badge, Witness." (SWH Vol 4:DX20).

51.  • **The Dallas County Jailers know Capital Defendant (Broadnax) Requested Counsel at the Arraignment, but the Media Inmate Interview-Request Letters Do _Not_ Contain Miranda Warnings**: The Court finds that the Dallas County Jailers know or should know that a capital defendant, such as Mr. Broadnax, requested counsel at the Texas Magistration (arraignment) because the request is made in front of the Dallas County Jailer, who provided the pen, remained present while the defendants (including Mr. Broadnax) completed the forms requesting counsel, and delivered the completed forms back to the Dallas County Magistrate, who forwarded them to the district courts. (SWH Vol 3:135 – Brad Lollar testimony; SWH Vol 3:106 – William E. Karo Johnson).

52.  The Sample Media Inmate Interview-Request Letter created by the Dallas County Jailers, do not contain any Miranda warnings.

53.  • **The Public Relations/Information Officer Fills in Required Information that the Media Omitted from the Media Inmate Interview-Request Letters and Faxes the Letters to the Dallas County Jailers Within the Jail, who Have Custody and Control Over the Capital Defendant** : The Court finds that the media-outlets fax or email their Media Interview Request Letters to the Public Relations/Information Officer, (in Broadnax's

36

case, Ms. Leach). (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 19-20).

54. The Court finds that the Public Information Officer reviews the Media Interview Request-Letters that were faxed or emailed to her looking for missing information that is required, but was omitted by the media in the Media Inmate Interview-Request Letters.

55. The Court finds that if the Media Interview Request Letter does not "ha[ve] the person's correct name," and "the book-in number," the Public Relations Officer "look[s] that up on AIS," and fills in the missing information to ensure the Media outlets are in compliance with the Dallas County Jailers procedures and can have access to the capital defendant. (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 19-20).

56. The Court finds that the Public Relations Officers inserts the missing but required information on the Media Interview Request Letters from the media outlets, and then faxes the Media Interview-Request Letters to the Dallas County Jailers within the jail, who have custody of the capital defendant (Broadnax). (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 19-20).

57. **• The Dallas County Jailers Hand-Deliver the Media Inmate Interview-Request Letters to the Defendant, Encourage Him to Consent, and Witness His Signature**: The Court finds that immediately upon receiving the Media Interview Request Letter from the Public Relations/Information Officer, the Dallas County Jailers hand-deliver the Media Interview Request Letters from the various media-outlets to the capital defendant.

58. The Court finds that when the Dallas County Jailers hand-deliver the Media Interview Request Letters from the various media-outlets to the capital defendant, the Dallas County Jailers encourage the capital defendant to consent to the interviews, hand the capital defendant a pen, and witness the signature of the capital defendant. (Trial Vol 41 - July 27, 2009 suppression hearing:18-21; SWH Vol 3:56 – Brooke Busbee testimony).

59. The Court finds that the Dallas County Jailers place their name, signature, and Badge Number underneath that of the capital defendant's on the Media Inmate Interview-Request Letter. (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 18-21).

60. **•  The Public Information Officer Sets Up the Interview Room, Determines the Amount of Time for the Interview, and Escorts the Media to the Interviews, while the Dallas County Jailers Stand Next to the Capital Defendant During the Inmate Interviews**: The Court finds that the Dallas County Jailers fax back the Media Inmate Interview-Request Letters to the Public Information Officer for the Dallas County Jailers, who sets up the interview room, escorts the media to the room, and determines how much time each media outlet is given for the interview. (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 23-24, 55).

37

166

61.    The Court finds that the Dallas County Jailers remain on the side of the interview room next to the capital defendant during the media interviews. (Trial Vol 41 - July 27, 2009 suppression hearing: pp. 29, 54).

**E.    The Media Interviews are a Critical Stage in the Legal Proceedings Because They Are Structured to Elicit from a Defendant: a Confession, Statements of Lack of Remorse and that Lethal Injection is an Appropriate Punishment, and Adversely Affect Every Aspect of the Capital Trial Defense**

62.    The Court finds that the media interviews consist of three topics:
- Did you do it?
- Are you remorseful?
- Do you deserve capital punishment, specifically lethal injection?

(SWH Vol 3:97, 111-112 – William E. Karo Johnson).

63.    The Court finds that because of the three-prong approach by the media in the interviews, if the videotaped interviews are incriminating, the State of Texas introduces them at each phase of a capital trial. (SWH Vol 3:47 – Bernhardt testimony).

64.    The Court finds the inculpatory statements made by a defendant in a media interview are introduced by the State of Texas as an admission of guilt by the capital defendant at the suppression hearing and in the guilt/innocence phase of the trial.  (SWH Vol 3:47 – Bernhardt testimony).

65.    The Court finds if a defendant is asked in the media interview about remorse and what punishment should be, his or her answer is introduced by the State of Texas in the punishment phase of the trial, particularly if the defendant addresses the issue of capital punishment. (SWH Vol 3:47 – Bernhardt testimony).

66.    The Court finds that the media interviews of a capital defendant are a "critical stage" in the proceeding, because they were events that "so prejudiced] the outcome of the defendant's prosecution that, as a practical matter, be represented ... in order to enjoy genuinely effective assistance of counsel." *Rothgery*, 554 U.S. at 217.

**F.    Even in Cases in Which Counsel Has Been Appointed, the Dallas County Jailers Impede Defense-Counsel Access  to a Client, to Give the Media Sufficient Time to Conduct the Interviews**

38

167

67.     The Court finds that if counsel has been appointed to represent a defendant charged with capital murder, the Dallas County Jailers impede defense-counsel access to a client, to give the media sufficient time to conduct the interviews. (SWH Vol 3:56 – Brooke Busby testimony; SWH Vol 3:95 – William E. Karo Johnson).

68.     The Court finds the following cases are only two examples, of many cases, in which the Dallas County Jailers deliberately delayed appointed counsel access to the client/defendant so that by the media had complete and full access to interview a defendant charged with capital murder:

  a.     •     **Charles Payne**:  The Court finds the Dallas County Jailers deliberately delayed access by Janet Cook, an Assistant Dallas County Public Defender to her client, so that the Fox 4 employees (media) could interview the capital defendant, Mr. Payne. *See supra State v Broadnax*, Trial Vol 41 - July 27, 2009 pretrial hearing at p.86; SWH Vol 4: DX-1C).

       i.     The Court finds the letter from Ms. Cook to Dallas County Sheriff Lupez Valdez reads, in pertinent part:

              I was denied access to my client; my client was denied access to his attorney and investigator by the Sheriff's Office in a timely manner. I believe it was done intentionally to allow Fox news to get in and interview a potential death penalty defendant. The interview would not have happened without the Sheriff's office aiding Fox 4 to have access to my client and denying me access. My investigator and I were there prior to Fox 4's arrival and were kept waiting longer than 15 minutes after they were taken upstairs.

       *State v Broadnax*, Trial Vol 41 - July 27, 2009 pretrial hearing at p.86; SWH Vol 4: DX-1C.

  b.     •     **Franklin Davis**:  The Court finds that Franklin David was a defendant charged with capital murder in Dallas County in 2012.  The Court finds that Mr. William E. Karo Johnson had been appointed to represent Mr. Davis.  The Court finds that Mr. Johnson spent two hours after he had been notified that he had been court-appointed, contacting the other members of the defense team to accompany him.

       i.     The Court finds that Mr. Johnson and co-counsel went to the Dallas County Jail to see Mr. Davis. The Court finds that when the defense team arrived at the Dallas County Jail and submitted their bar cards and drivers' licenses in return for a pass that would allow an attorney/client visit, one of the deputies for the Dallas County Sheriff's Office who was in charge of giving the

39

visitation passes, suggested to Mr. Johnson that the defense team should wait. (SWH Vol 3:95-96 – William E. Karo Johnson).

    ii.    The Court finds that Mr. Johnson said no, that the defense team proceeded to the visitation room, but when Mr. Johnson and co-counsel arrived where Mr. Franklin had been placed by the Dallas County Sheriff's Department, a TV crew was already in the attorney visitation room doing an interview with Mr. Davis.

    iii.    The Court finds that Mr. Johnson went in and told the media that the interview was over, but because the Dallas County Jailers had given the media quick and preferential access to Mr. Davis, the media had already obtained several videotapes interviews.

(SWH Vol 3:96 – William E. Karo Johnson).

## G. Cases of Appointment Delays from 2007 to 2012, During Which the Media Interviewed High-Profile Capital Defendants

69. The Court finds that there are many case examples in which there was an Appointment Delay from 2007 to 2012 (before and after Mr. Broadnax had been charged with capital murder in Dallas County in 2008) during which the Dallas County Jailers provided access to the media for interviews, and that these cases include, by way of example but not limitation:

    a.    The Court finds that Teresa Renee Price was a Dallas County criminal defendant, who had been arraigned for capital murder on January 25, 2012 at 9:47 pm and requested counsel at that time. Ms. Price's case was assigned to Judge Robert Burns, Criminal District Court No. 1. The Court finds that Attorney Bernhardt, a board certified lawyer, was appointed to represent Ms. Price on January 30, 2012 at 10:05 am. The Court finds that there was a lapse of 5 days between arraignment and the actual appointment of criminal defense counsel. (SWH Vol 3:34-36 – Bernhardt testimony).

    b.    The Court finds that Chloe Menager was indicted for capital murder, arraigned on September 7, 2012 at 12:33 am and requested counsel. The Court finds that the case was assigned to Judge Don Adams, Criminal District Court, No. 2., who was then the presiding judge. The Court finds that Attorney Bernhardt, a board certified lawyer, was appointed to represent Chloe Menager on September 7, 2012 at 4:11 pm. The Court finds that in the delay between arraignment and appointment of counsel, numerous media were given access to and interviewed Ms. Menager in the Dallas County Jail. (SWH Vol 3:42 – Bernhardt testimony).

40

169

c.   The Court finds that if Attorney Bernhardt had been appointed prior to the media interviews, she would have advised Chloe Menager not to speak to anyone. The Court finds that Attorney Bernhardt would have been proactive as much as possible, advising Chloe Menager not to speak to anyone, sending a Do Not Interview Letter. (SWH Vol 3:44 – Bernhardt testimony). The Court finds that these actions by Attorney Bernhardt are customary practice among the criminal defense bar in Dallas County, who are appointed to represent defendants, including Mr. Broadnax, who are charged with a capital offense.

d.   The Court finds that in mid-December or late November of 2002, Attorney Brooke Busbee had been asked by Judge Lana McDaniel (203rd District Court, Dallas County, TX) to represent a defendant charged with capital murder. Attorney Busby had been in a jury trial in Judge McDaniel's court. The Court finds that at break, Judge McDaniel asked Attorney Busbee to represent the defendant charged with capital murder. The Court finds that Judge McDaniel gave Attorney Busbee time at lunch to go to the Dallas County jail and talk to her new client. The Court finds that as Attorney Busbee was going to met her client, Attorney Busbee met Bud Gillette, a local newscaster. The Court finds that as Attorney Busbee was on her way to visit her client in the Dallas County Jail, Mr. Gillette and his television crew were leaving the holdover where the defendant/client was in custody of the Dallas County Jailers. The Court finds that as a result of the Appointment Delay, Mr. Gillette had already conducted an interview with the defendant in the interim. (SWH Vol 3:58-59 – Brooke Busby testimony). The Court finds that the Dallas County jailers had encouraged the capital defendant to sign the paper and talk to the media.(SWH Vol 3:56-57 – Brooke Busby testimony).

e.   The Court finds that Attorney Busbee had been appointed in at least six (6) other capital cases in which there had been an Appointment Gap. The Court finds that during the interim, the Dallas County Jailers had given the media access to the defendants and interviewed them. (SWH Vol 3:61 – Brooke Busby testimony). that The Court finds that these cases include, by way of example but not limitation:

   i.   Cause No. F11-61285; Defendant: Galaviz. Ms. Galaviz was arraigned October 26, 2011. The Court finds that Attorney Busby was appointed on November 3 of 2011 to represent Mr. Galaviz. The Court finds that in the Gap, the Dallas County Jailers had given the media access to Ms. Galaviz and there was a significant amount of media coverage of the case. (SWH Vol 3:61 – Brooke Busbee testimony);

   ii.   Cause No. F07-33618; Defendant: Francisco Martinez. Mr. Martinez was arraigned on May 31, 2007; The Court finds that Attorney Busbee was appointed June 4, 2007. The Court finds that the Dallas County Jailers had

41

170

given the media access to Mr. Martinez during the Gap, and there was media coverage.

iii.    Cause No. F07-51820; Defendant: Santiago Lara. Mr. Lara was arraigned May 1, 2007. The Court finds that Attorney Busbee was appointed on May 7, 2007.

iv.    Cause No. F10-13206; Defendant: Amelia Guerrero. Ms. Guerrero was arrested March 25, 2010. The Court finds that Attorney Busbee was appointed on March 30, 2010. The Court finds that the Dallas County Jailers had given the media access to Ms. Guerrero. The Court finds that Ms. Guerrero's case was a high-profile case and had significant media coverage because it was a nanny who had killed one of her charges. The Court finds that if Attorney Busbee had been appointed earlier, she would not have allowed media access to Ms. Guerrero.

v.    Cause No. F07-59596; Defendant: Adrian Lopez. Mr. Lopez was arraigned on November 30, 2007. The Court finds that Attorney Busbee was appointed on December 4, 2007.

vi.    Cause No. F08-53019; Defendant: Raul Salazar. Mr. Salazar was arraigned on March 19, 2008. The Court finds that Attorney Busbee was appointed on March 24, 2008.

(SWH Vol 3:61-64 – Brooke Busbee testimony).

**H.    The Same Day the Media Interviewed Mr. Broadnax, the U.S. Supreme Court decided *Rothgery*, Which Recognized that Certain Pretrial Events (Such as the Media Interviews) Are So Prejudicial that A Defendant Must Be Represented by Counsel at Those Events in Order to Enjoy Effective Assistance of Counsel at Trial**

70.    The Court finds that the U.S. Supreme Court decided *Rothgery* on June 23, 2008, the same day that Mr. Broadnax had been interviewed by the media, and the day before the appointment of Mr. Brad Lollar, as defense counsel.

71.    The Court finds that in *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 194 (2008) the Court – relying on court precedent that is decades old – held "that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. *See Brewer v. Williams*, 430 U.S. 387, 398–399 (1977); *Michigan v. Jackson*, 475 U.S. 625, 629, n. 3 (1986)."

42

72.    The Court finds that in accord with *United States v. Wade*, 388 U.S. 218, 226-227 (1967), "[i]t is central to that [Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.[5] The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment-the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution. *Cf. Pointer v. State of Texas*, 380 U.S. 400."

73.    The Court finds that in *Rothgery*, the Court "recognized that certain pretrial events may so prejudice the outcome of the defendant's prosecution that, as a practical matter, the defendant must be represented at those events in order to enjoy genuinely effective assistance at trial." *Rothgery*, 554 U.S. at 217 (Alito, J. concurring, Roberts, Scalia, JJ. join).

74.    The Court finds that the media interviews, which occur in the Gap, so prejudiced the outcome of the prosecution if capital defendant in Dallas County that, as a practical matter, these defendant must be represented during the media interviews in order to enjoy genuinely effective assistance at trial. *Rothgery*, 554 U.S. at 217 (Alito, J. concurring, Roberts, Scalia, JJ. join).   This because "the presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial." *United States v. Wade*, 388 U.S. 218, 236-237 (1967).

75.    The Court finds that instead, the Texas statute impermissibly and unconstitutionally premises appointment of counsel for a defendant charged with capital murder in Dallas County on a "specified period after [an accused's] magistration," rather than on the need for counsel in a "critical stage" of the post attachment proceedings. *See Rothgery*, 554 U.S. at 216 (Alito, J. concurring, Roberts, Scalia, JJ. join).   (SWH Vol 3:123 – Doug Parks).

76.    The Court finds that the assistance of counsel in the wake of a Texas magistration is part of the substantive guarantee of the Sixth Amendment. *See Rothgery*, 554 U.S. at 216 (Alito, J. concurring, Roberts, Scalia, JJ. join)..

I.    **There was a Three-Calendar-Days Appointment Delay, During Which the Media Interviewed Mr. Broadnax**

77.    The Court finds that Mr. Broadnax had been booked-in at the Dallas County Jail on June 21, 2008 (Saturday), a weekend and that Mr. Broadnax had been arraigned and requested counsel

43

172

that same day. (SWH Vol 3:136-137, 142 – Brad Lollar testimony). SWH Vol 4:DX–1G & DX-16 & DX-17; State App. DX-3 (Book-In) and State App. DX-5 (Affidavit of Indigency containing the request for counsel).

78.    The Court finds that three-days later on Tuesday, June 24, 2008 about 9:00 or 9:30 am,[11] Mr. Lollar had been appointed as Mr. Broadnax's counsel by Criminal District Court No. 7, Judge Snipes. (SWH Vol 3:135-136 – Brad Lollar testimony).

79.    The Court finds that on June 23, 2008, during the Gap, the Dallas County Jailers had given various media outlets access to Mr. Broadnax to conduct videotaped interviews with Mr. Broadnax in the Dallas County Jail where Mr. Broadnax was in custody. (SWH Vol 3:139-140 – Brad Lollar testimony).

80.    The Court finds that the media interviews of Mr. Broadnax were a "critical stage" in his legal proceedings, because they were events that "so prejudiced] the outcome of [his] prosecution that, as a practical matter, [Mr. Broadnax had to] be represented ... in order to enjoy genuinely effective assistance of counsel." *Rothgery*, 554 U.S. at 217.


J.    **A Capital Defendant's "Consent," Particularly that of Mr. Broadnax, to the Media Interviews, is Not Knowingly or Voluntarily Made**

81.    The Court finds that it is the experience of Dallas County criminal defense attorneys, appointed to represent defendants charged with capital murder in Dallas County, that their clients frequently have some sort of mental health deficit, as by way of example but not limitation: low intellectual functioning, mental retardation, mental illness, or are young. The Court finds that it is rare that a capital murder defendant is high functioning. (SWH Vol 3:25, 44 – Bernhardt testimony; SWH Vol 3:54 – Brooke Busby testimony).

82.    The Court finds that whether a defendant is mentally impaired or high functioning, the defendant charged with capital murder is, in a sense, in a fog of war, and in need of an attorney to help him or her understand the situation in which the defendant finds himself, and the ramifications of their actions at the beginning of the early stages of the charges and investigation. (SWH Vol 3:93 – William E. Karo Johnson).

83.    The Court finds that without an attorney to advise the defendant during the Gap, a defendant

---

[11]    Although Mr. Lollar's billing records showed an appointment date of June 23, 2008, Mr. Lollar testified that that was a scrivener's error. Mr. Lollar remembers that he had been appointed on Tuesday, June 24, 2008, and not June 23, 2008, because he had already seen several of the interviews that Mr. Broadnax had given to the media which had occurred on Monday, June 23, 2008. (SWH Vol 3:139-140 – Brad Lollar testimony).

44

is unaware that communications, such as those with the media, can be used against the defendant during his trial. (SWH Vol 3:95 – William E. Karo Johnson).

84. The Court finds that without an attorney to advise the defendant, the only people the defendant is going to have contact with is law enforcement or other incarcerated defendants.(SWH Vol 3:91-93 – William E. Karo Johnson).

85. The Court finds that communications between law enforcement and the defendant, and/or between other incarcerated inmates and the defendant, are communications that can be used against the defendant without his knowing consent to the ramifications of having given those communications. (SWH Vol 3:91-93 – William E. Karo Johnson).

86. The Court finds that at the time of the media requests for interviews, James Broadnax had been held in the West Tower in 3P05 in closed behavioral observation. The Court finds that 3P05 is a psychiatric ward for the Dallas County Jail. The Court finds that two hours before the media interviews, Mr. Broadnax had been seen by a jail psychiatrist and psychological assessor, who determined that Mr. Broadnax was psychotic due to polysubstance abuse. (SWH Vol 3:144 – Brad Lollar testimony).

87. The Court finds that Ms. Leach testified that the Dallas County Jailers provided the media with access to conduct videotaped interviews of Mr. Broadnax, despite his psychotic mental state. (SWH Vol 3:149 – Brad Lollar testimony).

**K.    Because the Videotaped Media Interviews of Mr. Broadnax Were Incriminating, They Were Introduced by the Prosecution, Admitted by the Trial Judge in Every Phase of the Capital Trial, Replayed During Jury Deliberations, and Relied on by the Texas Court of Criminal Appeals to Uphold Mr. Broadnax's Conviction and Sentence of Death**

88. The Court finds that the June 23, 2008 video interviews of Mr. Broadnax by the media were obtained by the prosecution representing the State of Texas, and introduced at trial and published to the jury. The prosecutor referred to the videotapes in opening statement. (Trial Vol 45:56-58).

89. The Court finds that the prosecution presented the June 23, 2008 video interviews of Mr. Broadnax by the media in the guilt/innocence phase on August 10 & 11, 2009. (Trial Vol. 45, 46, 47).

90. The Court finds that as promised in the opening statement, the prosecutor played the media interviews of Mr. Broadnax on each day. (August 10, 2009 – Trial Vol. 45:125 – Channel 11; RR 45:277 – Channel 5); (August 11, 2009 – Trial Vol. 46:230 – Channel 4). The Court finds that the jury return a verdict of guilty of capital murder based on the videotaped

174

interviews by the media. (Trial Vol. 47:203; Trial Clerk's Record 3:635).

91.    The Court finds that the videotaped interviews of Mr. Broadnax by the media became the focal point of the future dangerousness special issue in the punishment phase. (Trial Vol. 50:212-213; Trial Vol. 52:248-249; Trial Vol. 53: 68-69, 74).

92.    The Court finds that during their deliberations, the jury in Mr. Broadnax's case sent out a note requesting, among other things: "video of channel 5 interview." (Trial Clerk's Record 3:648). The Court finds that the trial judge responded, in pertinent part: "The Bailiff will come to the jury room and play the video of Channel 5 shortly." (Trial Clerk's Record 3:649).

93.    The Court finds that after viewing the videotaped media interviews of Mr. Broadnax, the jury answered yes to the special issue 1, whether Mr. Broadnax was a future dangerous, and no to the special issue 2, whether there was sufficient mitigating evidence to warrant imposing a life sentence for Mr. Broadnax, instead of death. (Trial Clerk's Record 3:650, 651). The Court finds that on August 21, 2009, the judge imposed a sentence of death on Mr. Broadnax. (Trial Clerk's Record 3:698).

94.    The Court finds that the Texas Court of Criminal Appeals in its direct appeal opinion relied primarily on the media interviews to support a challenge to the sufficiency of the evidence of future dangerousness. *Broadnax v. State*, 2011 WL 6225399, *17 (Tex. Crim. App. 2011) ("sufficient evidence of future dangerousness can be inferred from the offense itself. Here, the appellant confessed to murdering two defenseless men in order to steal their car so he could return home. The appellant described to reporters how he shot each man a second time after their initial wounds failed to kill them immediately. Then, when the appellant was sure the victims had expired, he rifled through their pockets.").

95.    The Court finds that the TCCA's direct appeal opinion made fact findings about Mr. Broadnax's lack of remorse based on his description of the offense during the media interviews. *Broadnax v. State*, 2011 WL 6225399, *17 (Tex. Crim. App. 2011) ("The probability of appellant's future dangerousness also can be inferred from evidence showing a lack of remorse. In the same television interviews discussed above, the appellant coldly and calmly walked reporters through the murders. When asked if he had anything to say to the victims' families, the appellant responded, "Fuck 'em." To the specific question by the interviewer, "Do you have any remorse, none whatsoever?" the appellant only shook his head.").

96.    The Court finds that the TCCA's direct appeal opinion made fact findings about Mr. Broadnax's future dangerousness based on his description of the offense during the media interviews. *Broadnax v. State*, 2011 WL 6225399, *17 (Tex. Crim. App. 2011) ("Finally, in one of the interviews the appellant discussed the probability that he would commit

46

175

criminal acts of violence that would constitute a continuing threat to society[12]”).

---

[12] The *Broadnax* opinion reproduced the exchange between a reporter and Mr. Broadnax captured in the videotape of one of the media interviews:

| | |
|---|---|
| “Reporter: | What do you think's going to happen to you now? |
| Appellant: | Whatever they throw at me. Hopefully the death penalty. |
| Reporter: | Hopefully? |
| Appellant: | Yea. 'Cuz they give me life I'ma' kill somebody else. Straight up. I'm telling you right now. I can't do no motherfuckin' life. I'ma' go crazy. |
| Reporter: | So you want the death penalty? |
| Appellant: | They better. Pick one [the appellant holds up each arm, presumably referencing the lethal injection method of execution]. Or you gon' have some more bodies. |
| Reporter: | Oh, in here you're gonna kill someone? |
| Appellant: | Nah. Whichever penitentiary they send me to. They better put me on death row. Tell you just like I'ma tell the judge. |

We hold that the State presented sufficient evidence to support the jury's finding that the appellant posed a future danger to society.”

*Broadnax*, 2011 WL 6225399 at *17.

47

176

**L.    Ineffective Assistance of Trial Counsel for Mr. Broadnax**

97.    •    <u>The Roles of the Defense Team</u>: The Court finds that Brad Lollar was lead counsel in the *Broadnax* case. (SWH Vol 3:149 – Brad Lollar testimony).

98.    The Court finds that Mr Lollar admitted that he was responsible for the challenges to the media interviews. (SWH Vol 3:149 – Brad Lollar).

99.    The Court finds that as first chair, Mr. Lollar was responsible for the direct and cross-examination of the reporters from Channels 4, 5, and 7. (SWH Vol 3:121 – Doug Parks).

100.    The Court finds that Mr. Doug Parks was second chair in the *Broadnax* case. (SWH Vol 3:123 – Doug Parks).

101.    The Court finds that as second chair in the *Broadnax* case, it was Mr. Parks responsibility to do the research in the *Broadnax* case. The Court finds that when Mr. Parks is in trial, it is his responsibility to do the, quote, book-work. The Court finds that as a book-lawyer, Mr. Parks deals with constitutional issues. (SWH Vol 3:124 – Doug Parks).

102.    The Court finds that it regards Mr. Parks as the book-lawyer in the Broadnax case. (SWH Vol 3:124 – Judge Mike Snipes: The trial judge stated on the record: "I was wondering when you were going to say that. That's what I regard you as [the book lawyer].".

103.    The Court finds that Ms. Keri Mallon was third chair. The Court finds that Ms. Mallon really did not have a particularly active role in the trial of the case. On a very limited basis, she conduct some voir dire and examination of punishment witnesses. (SWH Vol 3:119 – Doug Parks).

104.    •    <u>The Defense Trial Theory of the Case</u>: **The Media Were Agents of the State Because the Dallas County Jailers Violated Their Own Policy by Providing the Media Access to Mr. Broadnax at a Time When He Was in a Psychotic Rage**: The Court finds that the defense theory was that at the time of the media interviews, Mr. Broadnax was in a psychotic rage; and that the Dallas County Sheriff's Office violated its media relations policy (SWH Vol 4:DX-21 (also Defense Trial Exhibit 10)), by making Mr. Broadnax accessible to the media for interviews, and the Dallas County Jailers were present during those interviews. (SWH Vol 3:148-149, 153 – Brad Lollar testimony).

105.    The Court finds that at the time of the media requests for interviews, James Broadnax had been held in the West Tower in 3P05 in closed behavioral observation and that 3P05 is a psychiatric ward for the Dallas County Jail.

106.    The Court finds that two hours before the media interviews, Mr. Broadnax had been seen by

48

177

a jail psychiatrist and psychological assessor, who determined that Mr. Broadnax was psychotic due to polysubstance abuse. (SWH Vol 3:144 – Brad Lollar testimony).

107. The Court finds that the defense team knew, that because their theory-of-the-case was that the media were state agents required the defense to prove state action. (SWH Vol 3:127 – Doug Parks).

108. The Court finds that the defense team failed to meet its burden in proving state action because the pre-trial, defense investigation into the media interviews was inadequate and deficient.

109. • **The Defense Trial Objection**: The Court finds that Mr. Lollar made the following trial objection:

"Our objection to the introduction of these [media video]tapes are under the Fifth, Sixth, Eighth and 14 Amendments of the United States Constitution, Article I, section 92, 13, 15, 19, the Texas State Constitution and Article 38.23 of the Texas Code of Criminal Procedure.

We would suggest to the court that what the Court has seen here is a *concerted effort by law enforcement, that being the Sheriff's Office to get these reporters up to see the defendant in violation of his constitutional rights*.

We suggest that the defendant – *the evidence shows that the defendant had twice requested appointment of counsel*. That had not been complied with. Yet the by the time the Sheriff's Department allowed the defendant to be interviewed, clearly he was in custody. He was in the custody of the Dallas County Jail, and *without the cooperation of the sheriff's Department, as all these reporters stated they would not be able to get up to see the defendant*. (Trial Vol. 43:105-106).

Secondly, *we suggest because the defendant was in the mental state he was, it was a violation of the sheriff's own written policies to allow a defendant to be interviewed in the mental state he was*. The record clearly shows that at the time the defendant was interviewed, he had been seen by the psychiatric staff at the jail. They had noted psychiatric problems. They had ordered him confined in the closed behavioral cell in the psych unit of the medical ward of the third and fourth floor of the West Tower. ..... (Trial Vol. 43:105-106).

....

The right to counsel has been violated in violation of the Fifth Amendment. His right to a fair trial had been violated by all of these proceedings conducted through the Dallas County Sheriff's Office, which is a law-enforcement agency that had care,

49

178

custody and control of the defendant at the time he had allowed them to have them despite their written procedures and policies, which would deny a person of his mental condition being allowed by the Sheriff's Department to make statements to the press.. (Trial Vol. 43:108).

The records reflect that I was not appointed by this Court until the next day following these interviews, and at that time I immediately cut off his access to the press and to other law-enforcement agencies. (Trial Vol. 43:108-109).

110.   •   **Deficient Pre-Trial Investigation (Media): The Defense Did Not Interview any Reporter or Assignment Editor Sufficiently in Advance of Trial Despite the _In_applicability of the Media Shield Laws, and There Was No Defense Request for a Continuance to Do So**

111.   The Court finds that the Texas Free Flow Act (TFDA), Texas common law, and the Texas Constitution did not apply to shield the Texas media from discovery of evidence of the media interviews of Mr. Broadnax. *In re Raab*, 293 S.W.3d 865, 866-67 (Tex. App. Decided July 31, 2009).[13]

112.   The Court finds that there is no record of a request for a trial-continuance made by the defense team after the *In re Raab* decision was released on July 31, 2009, to allow the defense team to investigate and discover "information, documents, or items or the source of any information, document, or item" pertaining to the media interviews of Mr. Broadnax. *See* (Trial Clerk's Record).

---

[13] The Court of Appeals, Dallas ruled in *In re Raab*, 293 S.W.3d 865, 866-67 (Tex. App. 2009), decided July 31, 2009:

Relators argue that the subpoenas cannot be enforced under the Texas Free Flow of Information Act, which was enacted by the legislature on May 13, 2009. *See* Qualified Privilege of a Journalist Not to Testify, 81st Leg., R.S., ch. 29, 2009 Tex. Sess. Law Serv. 29 (Vernon) (to be codified at Tex. Civ. Prac. & Rem.Code §§ 22.021–22.027 and Tex.Code Crim. Proc. Ann. Arts. 38.11 and 38.111). This act, inter alia, creates a "journalist's qualified testimonial privilege in criminal proceedings." The act does not apply in this instance.

By its very terms, the "Act applies only to information, documents, or items or the source of any information, document, or item obtained or prepared for publication in a news medium or communication service provider *on or after* the effective date of this Act." *Id.* at § 3. It is undisputed the evidence sought through the subpoenas relates to information obtained or prepared long before the effective date of the Act."

50

179

113. The Court finds that despite the inapplicability of the TFDA, the first time Mr. Lollar learned what the reporters and/or assignments editors had to say about the media interviews of Mr. Broadnax was when he called them to testify on August 4, 2009 in a pre-trial suppression hearing on the videotaped media interviews of Mr. Broadnax. (Trial Vol 43; SWH Vol 3:151 – Brad Lollar testimony).

114. The Court finds that the suppression hearing was six (6) days before the guilt/innocence phase began on August 11, 2009, at which the videotaped interviews of Mr. Broadnax were discussed in opening argument by the prosecutor, and thereafter admitted into evidence in the guilt/innocence phase. (Trial Vol 46; SWH Vol 3:151 – Brad Lollar testimony).

115. The Court finds that no one on the defense team made any attempt pre-trial or before the suppression hearing to talk to the Dallas County Jailers, the beat reporters, or any member of the media who first learned about the Broadnax offense to discover how and when law enforcement acted in tandem with the media to make the interviews of Mr. Broadnax happen prior to the appointment of counsel. (SWH Vol 3:151-152 – Brad Lollar testimony).

116. The Court finds that Mr. Parks did not attempt to talk to the reporters who interviewed Mr. Broadnax because Mr. Lollar was handling that portion of the case. (SWH Vol 3:121-122 – Doug Parks).

117. • **Deficient Pre-Trial Investigation (Law Enforcement): The Defense Did Not Interview the Dallas County Jailers nor Law Enforcement in Texarkana, Garland, or Dallas, Prior to Trial**

118. The Court finds that although it was the objective the defense to show that there was some state action involved in getting the media quick and preferential access to Mr. Broadnax, so that the videotapes would be suppressed, the Court finds that no one on the defense team made any attempt to talk to the jailers in the City of Garland (where Mr. Broadnax had first been incarcerated) or Texarkana law enforcement (who had arrested Mr. Broadnax), or the Dallas County Jailers (where Mr. Broadnax was held in custody awaiting trial), in order to discover evidence that would have made the media state agents in the media interviews of Mr. Broadnax. (SWH Vol 3:151-152 – Brad Lollar testimony; SWH Vol 3:121-122 – Doug Parks).

119. The Court finds that although Mr. Lollar had introduced a single instance in which the Dallas County Jailers had denied access by an attorney to her client in 2009, (Defense Trial Exhibit

51

180

8 at the July 27, 2009 hearing[14]), neither Mr. Lollar nor anyone else on the defense team made any other attempts to conduct investigation into the Dallas County Jailers interaction with the media, that culminated in media interviews of capital defendants in the days and/or years before and after Mr. Broadnax had been indicted in 2008. (SWH Vol 3:145-146 – Brad Lollar testimony; Trial Vol 41 - July 27, 2009 Trial Reporter's Record).

120. The Court finds that the signature of Dallas County Jailer, Officer Spradling, Badge # 5795, was on the Media Inmate Interview Request Letter from WFAA TV Channel 8 and from KDFX TV Fox 4. (SWH Vol 3:150 – Brad Lollar testimony; SWH Vol 3:121 – Doug Parks).

121. The Court finds that no one on the defense team made any attempt to talk to the Dallas County Jailers who brought the media requests to Mr. Broadnax, not even Officer Spratling, to discover evidence of the interaction between law enforcement and the media that culminated in the media interviews of Mr. Broadnax. (SWH Vol 3:121-122 – Doug Parks; SWH Vol 3:150 – Brad Lollar testimony).

122. • **Deficient Pre-Trial Investigation (Capital Defense Bar): The Defense Did Not Interview the Dallas County Capital Defense Bar Prior to Trial Despite Their Willingness to Testify About Their Experience With the Gap & Media Interviews**

123. The Court finds that after January 1, 2002, criminal defense attorneys in Dallas County became aware of the Appointment Delay or Gap. (SWH Vol 3:26 – Bernhardt testimony).

124. The Court finds that the Appointment Delay or Gap is common knowledge among the criminal defense bar who represent defendants charged with capital offenses in Dallas County. (SWH Vol 3:64 – Busbee testimony).

---

[14] There was a discrepancy in the numbering of the volumes, which writ counsel Brandt, brought to the attention of the court reporter, Sharon Hazelwood. Two July 27, 2009 volumes in the possession of Brandt had been numbered 40 and 41, respectively.

In addition, Trial Exhibit No.8 was missing from the trial exhibits volume. Trial Exhibit No. 8 consisted of the January 14, 2009 letter from Ms. Janet Cook, an Assistant Dallas County Public Defender, to Sheriff Valdez. The Cook letter described the deliberate delay by the Dallas County Jailers in 2009 to deny Ms. Cook access to her client, while the media conducted their interviews of her client. Appended to the Cook letter were the affidavits of Cook and Dallas County Public Defender Investigator Elizabeth Christian Smith. The State of Texas and the defense agreed at the state writ hearing on December 7, 2012 to the authenticity of reproductions of Trial Exhibit No. 8, and the trial judge admit these documents at the state writ hearing as a substitute for the missing Trial Exhibit No. 8. (SWH Vol 3:145-146 – Brad Lollar testimony).

52

181

125. The Court finds that during the Gap, the Dallas County Jailers provide the media with access to defendants charged with capital crimes, including Mr. Broadnax, for purposes of conducting interviews. (SWH Vol 3:45 – Bernhardt testimony; (SWH Vol 3:62-63 – Brooke Busbee testimony; SWH Vol 3:95-96 – William E. Karo Johnson).

126. The Court finds that the interviews routinely take place in the Dallas County Jail promptly after arrest and book-in, but before counsel is appointed or has access to the defendant. (SWH Vol 3:45 – Bernhardt testimony; (SWH Vol 3:62-63 – Brooke Busbee testimony; SWH Vol 3:95-96 – William E. Karo Johnson).

127. The Court finds that Dallas County criminal defense attorneys appointed to represent defendants accuse of capital murder would have made themselves available to testify at Mr. Broadnax's trial about the court-appointment procedure in Dallas County before and after the enactment of the Texas statutes, and their experiences with the Appointment Delay or Gap. (SWH Vol 3:65 – Brooke Busbee testimony).

128. The Court finds that no defense team member for Mr. Broadnax made any attempt to talk to any of the Dallas County capital defenders about their experience with the Appointment Delay or Gap. (SWH Vol 3:121 – Doug Parks).

129. • **Because of the Inadequate Pre-Trial Investigation, the Defense Failed to Prove that the Admission of the Videotaped Interviews by the Media Violated Mr. Broadnax's Constitutional Rights, and the Defense Team Had Not Investigated Any Alternatives**: The Court finds that because of the inadequate pre-trial investigation, the defense team failed to prove that the State of Texas obtained the videotaped statements of Mr. Broadnax in violation of his 5th, 6th, and 14th Amendment rights.

130. The Court finds that because of the inadequate pre-trial investigation, the defense team failed to prove "a concerted effort by law enforcement, that being the Sheriff's Office to get these reporters up to see the defendant in violation of his constitutional rights." (Trial Vol. 43:105-106).

131. The Court finds that because of the inadequate pre-trial investigation, the defense team failed to prove that the media was a state agent of the Dallas County Jailers merely because there was "cooperation of the sheriff's Department, as all these reporters stated they would not be able to get up to see the defendant." (Trial Vol. 43:105-106).

132. The Court finds that because of the inadequate pre-trial investigation, the defense team failed to prove that the Dallas County Jailers "violat[ed] the sheriff's own written policies to allow a defendant to be interviewed in the mental state he was," (Trial Vol. 43:105-106), because Ms. Leach did not realize Mr. Broadnax had been in closed behavioral observation; Ms. Leach had only been working at the Sheriff's Office for about a month. (SWH Vol 3:149

53

182

– Brad Lollar testimony).

133.    The Court finds that because of the inadequate pre-trial investigation, the defense team failed to prove that the Sheriff's Office was facilitating interviews with the defendants prior to the time of getting appointed. (SWH Vol 3:165 – Brad Lollar testimony).

134.    The Court finds that that because of the inadequate pre-trial investigation, the defense team failed to explore any other alternative theories to challenge the admissibility of the videotaped interviews, such as a challenge to the constitutionality of the TFDA and the Appointment Delay or Gap that it created.

135.    •    **Because the Defense "Had *Not* Thought About It," They Did Not Challenge the Unconstitutionality of the TFDA**: The Court finds that that the trial proof and objection made by Mr. Lollar did not preserve Mr. Broadnax's federal constitutional challenge to the unconstitutionality of the TFDA and its "end of the first-working-day" rule that resulted in the Appointment Delay or Gap, and further finds that the Dallas County Jailers were exploiting the Gap to obtain incriminating statements from a capital defendant, and using the media as its State agent to do so. *See In re D.O.,*226 S.W.3d 483, 487 (Tex. App. Houston (1st Dist.) 2006), *citing Maynard v. State*, 685 S.W.2d 60, 64-65 (Tex. Crim. App.1985) ("Specific grounds are required to inform the trial court of the basis of the objection, to afford the trial court the opportunity to rule on the objection, and to provide opposing counsel with an opportunity to supply further testimony.").

136.    The Court finds that Mr. Lollar did not preserve a federal constitutional challenged to the unconstitutionality of the TFDA because his "6th and 14th amendment objection." The Court finds that the objection made by Mr. Lollar did not put the trial court on notice merely because it "talked about appointment of counsel." (SWH Vol 3:155 – Brad Lollar testimony).

137.    The Court finds that Mr. Lollar admitted he did *not* raise a challenge the constitutionality of the Texas Fair Defense Act. (SWH Vol 3:154 – Brad Lollar testimony)

138.    The Court finds that Mr. Lollar admitted that he knew that prior to 2002, the magistrate appointed counsel immediately following arraignment of a capital defendant in the Dallas County, but that the immediate-appointment procedure changed as a result of the enactment of Texas statutes that contained the "end of the first-working-day" provision. (SWH Vol 3:163 – Brad Lollar testimony).

139.    The Court finds that Mr. Lollar admitted that he knew in 2008 of the Appointment Delay or Gap prior to his court-appointment to represent Mr. Broadnax. (SWH Vol 3:163 – Brad Lollar testimony).

54

183

140.   The Court finds that Mr. Lollar admitted that he had been one of the court-appointed attorneys who represented capital defendants before and after the passage of the Texas statutes that changed the procedure for appointment of counsel in Dallas County from appointment-by-magistrate to appointment by the Assigned Court. (SWH Vol 3:163 – Brad Lollar testimony).

141.   The Court finds that Mr. Lollar admitted and knew that in Texas "there was some leeway in our laws to allow for appointment at the first convenience rather than the first necessity." (SWH Vol 3:153-154 – Brad Lollar testimony).

142.   The Court finds that Mr. Lollar admitted and knew in 2008 (at the time he was appointed to represent Mr. Broadnax) that Texas was in the minority and was not among the 43 jurisdictions whose laws required appointment of counsel at or before initial appearance of a defendant. (SWH Vol 3:153-154 – Brad Lollar testimony).

143.   The Court finds that although Mr. Lollar testified that he had done a lot of legal research for the Broadnax case, Mr. Lollar could not find a particular entry in his billing records that reflected that he had researched the issue about the delay in court-appointments of counsel to represent capital defendants at or before initial appearance. (SWH Vol 3:154 – Brad Lollar testimony).

144.   The Court finds that Mr. Lollar admitted that he "absolutely" agreed that there is a systemic problem in Dallas County that is arising as a result of that gap, but that he did not talk about the Gap or bring in other attorneys to prove that in Dallas County historically there had been a Gap both during and after Mr. Lollar's representation of Mr. Broadnax. (SWH Vol 3:165 – Brad Lollar testimony).

145.   The Court finds that on re-direct examination, Mr. Lollar testified that in 2008, he had not thought about challenging the constitutionally of the TFDA on the basis that appointment of counsel was impermissibly premised on a "specified period after [an accused's] magistration," rather than on the need for counsel in a "critical stage" of the postattachment proceedings.(SWH Vol 3:165 – Brad Lollar testimony).

146.   The Court finds that even though Mr. Parks was not aware that there are forty-three (43) jurisdictions that appoint counsel before, at or just after initial appearance, Mr. Parks was aware that the position of the American Bar Association (ABA) was that counsel should be appointed no later than initial appearance (arraignment or Texas Magistration). (SWH Vol 3:122 – Doug Parks).

147.   The Court finds that *Rothgery v. Gillespie County, TX*, 554 U.S. 191 (2008) had been decided June 23, 2008, the same day that Mr. Broadnax had been interviewed by the media, and the day before the appointment of Mr. Brad Lollar, as defense counsel. (SWH Vol 3:123

55

184

– Doug Parks).

148.   The Court finds that *Rothgery* (which had been decided June 23, 2008, the same day that Mr. Broadnax had been interviewed by the media, and the day before the appointment of Mr. Brad Lollar, as defense counsel) placed defense counsel on notice that there was a legal issue arising out of the Gap because the appointment of counsel for Mr. Broadnax had been impermissibly premised on a specified period after his magistration, rather than on the need for counsel during the media interviews, a "critical stage" of the post attachment proceedings. *See Rothgery*, 554 U.S. at 217 (Alito, J. concurring, Roberts, Scalia, JJ. join).. (SWH Vol 3:123 – Doug Parks).

149.   The Court finds that although Mr. Parks was the "book lawyer" and responsible for doing the legal research for the Broadnax case, Mr. Parks did not do the research that would have lead him to find *Rothgery*, 123 S.Ct. 258, decided June 23, 2008, decided the same day that Mr. Broadnax was interviewed by the media before the appointment of counsel. (SWH Vol 3:123 – Doug Parks).

150.   The Court finds that both Mr. Parks and Mr. Lollar failed to explore any other alternative theories, such as challenging the constitutionality of the TX Fair Defense Act because of the "end of the first working provision that was creating a Gap, which the Dallas County Jailers were exploiting. (SWH Vol 3:123 – Doug Parks).

151.   The performance of defense counsel was deficient because as a result of an inadequate investigation, counsel's performance failed to comport with GUIDELINES AND STANDARDS FOR TEX. CAPITAL COUNSEL, TEX. GUIDELINE 11.2 – *The Duty to Assert Legal Claims* (adopted April 21, 2006) (admonishing defense counsel to ensure that a full record is made in a manner that protects the client's rights against later contentions by the government that the claim has been waived, defaulted, not exhausted, or otherwise forfeited).

185