# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

JAMES GARFIELD BROADNAX,

        Petitioner,

    v.

LORIE DAVIS,
Director, Texas Department
of Criminal Justice,
Correctional Institutions Division,

        Respondent.

Civil Action No. 3:15 Civ. 01758

**<u>CAPITAL CASE</u>**

---

## REPLY BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS BY A PRISONER IN STATE CUSTODY

---

### PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Steven C. Herzog
Adam Ross Mandelsberg
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

### BURLESON, PATE & GIBSON, LLP

Camille M. Knight
900 Jackson Street, Suite 330
Dallas, TX 75202
(214) 871-4900

Counsel for Petitioner James Garfield Broadnax

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................1

    I.     MR. BROADNAX'S CONSTITUTIONAL RIGHTS WERE VIOLATED
          DURING JURY SELECTION .....................................................................1

         A.    Mr. Broadnax's *Batson* Rights Were Violated by the Prosecutors'
             Peremptory Strikes of Every Minority Venire Member ............................1

              1.    The Prosecution's Case Files Should Be Considered in
                    Connection with Mr. Broadnax's *Batson* Claims ...........................6

         B.    The Trial Court's Denial of Mr. Broadnax's "For Cause"
             Challenge to the Seating of a Juror Admittedly Unable to Consider
             Mitigating Evidence Violated His Clearly Established
             Constitutional Rights ...............................................................................6

              1.    The Procedural Bar Is Inapplicable to Mr. Broadnax's "For
                    Cause" Challenge to the Seating of Juror Vessels ........................10

    II.    MR. BROADNAX'S CONSTITUTIONAL RIGHTS WERE VIOLATED
          DURING THE PENALTY PHASE OF HIS TRIAL ...........................................11

         A.    The Admission of Improper and Misleading Testimony that Mr.
             Broadnax Is a "Psychopath," and the State's Arguments Based on
             that Testimony, Violated Mr. Broadnax's Constitutional Rights .............11

              1.    Dr. Thorne's Affidavit Is Properly Considered in
                    Connection with Mr. Broadnax's Claims .....................................14

          B.    Mr. Broadnax's Trial Counsel Was Ineffective for Failing to Rebut
              Dr. Price's Misleading Testimony and Establish that Mr. Broadnax
              in Fact Was Not a "Psychopath" .............................................................15

    III.    THE ADMISSION OF THE FRUITS OF AN UNCOUNSELED
          CUSTODIAL INTERROGATION VIOLATED MR. BROADNAX'S
          CONSTITUTIONAL RIGHTS ..........................................................................18

          A.    Mr. Broadnax's Fifth Amendment Rights Were Violated ........................18

          B.    Mr. Broadnax's Sixth Amendment Rights Were Plainly Violated............19

               1.    The Trial Court's Admission of Mr. Broadnax's
                    Uncounseled Interrogations Abridged His Right to Counsel ........19

                2.    The Texas Fair Defense Act Violates the Sixth Amendment........21

i

**TABLE OF CONTENTS**
**(cont.)**

**Page**

    3.    Mr. Broadnax's Fifth and Sixth Amendment Claims Are
Not Procedurally Barred ...................................................................21

IV.    MR. BROADNAX HAS ESTABLISHED HE IS ENTITLED TO RELIEF
FOR ADDITIONAL CONSTITUTIONAL VIOLATIONS ..................................23

V.    CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*People* v. *Ackley*,
870 N.W.2d 858 (Mich. 2015)......................................................................................................17

*Barefoot* v. *Estelle*,
463 U.S. 880 (1983)......................................................................................................................14

*Batson* v. *Kentucky*,
476 U.S. 79 (1986)................................................................................................................ *passim*

*Bell* v. *Wolfish*,
441 U.S. 520 (1979)......................................................................................................................24

*United States* v. *Blocker*,
104 F.3d 720 (5th Cir. 1997) .......................................................................................................19

*Boyd* v. *Puckett*,
905 F.2d 895 (5th Cir. 1990) .......................................................................................................10

*Brewer* v. *Williams*,
430 U.S. 387 (1977)......................................................................................................................20

*Broadnax* v. *Texas*,
No. AP-76207, 2011 WL 6225399 (Tex. Crim. App. Dec. 14, 2011).........................................10

*United States* v. *Cohen*,
796 F.2d 20 (2d Cir. 1986)...........................................................................................................24

*Corwin* v. *Johnson*,
150 F.3d 467 (5th Cir. 1998) .......................................................................................................12

*Cullen* v. *Pinholster*,
563 U.S. 170 (2011)....................................................................................................................6, 7

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)......................................................................................................................14

*Dawson* v. *Delaware*,
503 U.S. 159 (1992)......................................................................................................................24

*Dickens* v. *Ryan*,
740 F.3d 1302 (9th Cir. 2014) .......................................................................................................7

*Dickerson* v. *United States*,
530 U.S. 428 (2000)......................................................................................................................23

iii

**TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

*Dorsey* v. *Quarterman*,
    494 F.3d 527 (5th Cir. 2007) .........................................................................................10

*Eddings* v. *Oklahoma*,
    455 U.S. 104 (1982).........................................................................................................9

*Escamilla* v. *Stephens*,
    749 F.3d 380 (5th Cir. 2014) ................................................................................ *passim*

*United States* v. *Fields*,
    483 F.3d 313 (5th Cir. 2007) .........................................................................................14

*Foster* v. *Chatman*,
    136 S. Ct. 1737 (2016)..............................................................................................3, 4, 5

*Giglio* v. *United States*,
    405 U.S. 150 (1972)..........................................................................................11, 12, 14

*United States* v. *Guanespen-Portillo*,
    514 F.3d 393 (5th Cir. 2008) .........................................................................................23

*Hayes* v. *Thaler*,
    361 F. App'x 563 (5th Cir. 2010) ................................................................................6, 24

*Johnson* v. *Mississippi*,
    486 U.S. 578 (1988)..................................................................................................11, 14

*King* v. *Rudd*,
    168 Eng. Rep. 160 (K.B. 1783) (Lord Mansfield, C.J.).......................................................23

*United States* v. *Lovasco*,
    431 U.S. 783 (1977)..........................................................................................................12

*Lutz* v. *Collins*,
    No. 04-08-00496-CV, 2009 WL 330958 (Tex. App. Feb. 11, 2009) ..................................24

*Martinez* v. *Ryan*,
    566 U.S. 1 (2012)..................................................................................................11, 18, 22

*Miller-El* v. *Dretke*,
    545 U.S. 231 (2005)..........................................................................................................4, 5

*Miranda* v. *Arizona*,
    384 U.S. 436 (1966)..............................................................................................18, 19, 23

**TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

*Montejo* v. *Louisiana*,
　556 U.S. 778 (2009)...................................................................................................19

*Morgan* v. *Illinois*,
　504 U.S. 719 (1992)....................................................................................................9

*Payne* v. *Tennessee*,
　501 U.S. 808 (1991)...................................................................................................11

*United States* v. *Posada Carriles*,
　541 F.3d 344 (5th Cir. 2008) .....................................................................................19

*Rideau* v. *Louisiana*,
　373 U.S. 723 (1966)...................................................................................................20

*Arizona* v. *Roberson*,
　486 U.S. 675 (1988)...................................................................................................19

*Ross* v. *Oklahoma*,
　487 U.S. 81 (1988)......................................................................................................9

*Rothgery* v. *Gillespie Cnty.*,
　554 U.S. 191 (2008)...................................................................................................21

*Sawyer* v. *Whitley*,
　505 U.S. 333 (1992)......................................................................................12, 15, 22

*Schneckloth* v. *Bustamante*,
　412 U.S. 218 (1973)...................................................................................................23

*Soria* v. *Johnson*,
　207 F.3d 232 (5th Cir. 2000) ..................................................................................9, 10

*Sorto* v. *Davis*,
　859 F.3d 356 (5th Cir. 2017) ...................................................................................8, 25

*Stone* v. *Powell*,
　428 U.S. 465 (1976)...................................................................................................24

*Strickland* v. *Washington*,
　466 U.S. 668 (1984)......................................................................................15, 16, 17

*Styron* v. *Johnson*,
　262 F.3d 438 (5th Cir. 2001) .....................................................................................24

**TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

*Trevino* v. *Thaler*,
    133 S. Ct. 1911 (2013)......................................................................................11, 18, 22

*Vinson* v. *Mackie*,
    No. 14-cv-14542, 2016 WL 6595021 (E.D. Mich. Nov. 8, 2016).....................................14, 15

*Wessinger* v. *Cain*,
    No. 04-cv-637, 2015 WL 4527245 (M.D. La. July 27, 2015) ............................7, 8, 14, 18, 24

*Wessinger* v. *Vannoy*,
    864 F.3d 387 (5th Cir. 2017) ...................................................................................8

*Wiggins* v. *Smith*,
    539 U.S. 510 (2003)................................................................................................16, 17

*Woods* v. *Donald*,
    135 S. Ct. 1372 (2015)................................................................................................20

**STATUTES**

28 U.S.C. § 2254(d) ......................................................................................................4

Tex. Code Crim. Proc., art. 37.071 § 2(b)(1)...............................................................15

Texas Fair Defense Act (FDA, Act 2001, 77th Legislature) ....................................21, 23

**OTHER AUTHORITIES**

U.S. Const. amend. I......................................................................................................24, 25

U.S. Const. amend. IV ...................................................................................................24

U.S. Const. amend. V..................................................................................... *passim*

U.S. Const. amend. VI .................................................................................... *passim*

U.S. Const. amend. VIII................................................................................... *passim*

U.S. Const. amend. XIV ................................................................................. *passim*

## PRELIMINARY STATEMENT

James Broadnax was convicted of capital murder on the basis of a confession extracted after he had requested a lawyer and while he was delusional and suffering from drug-induced psychosis.  He was sentenced to death based on false testimony and argument that he was a psychopath (which he is not) and that he was a gang member (which he is not).  And he was convicted and sentenced to death by a jury that was illegally selected by prosecutors who struck every minority juror, in violation of *Batson.*  These errors and more raise profound questions about Mr. Broadnax's guilt, the appropriateness of his death sentence, and the fundamental fairness of his trial.

The Director's defenses are primarily procedural; the Director seeks to avoid the merits of Mr. Broadnax's arguments and relies instead on arguments that his claims are procedurally barred, that new evidence should not be considered, or that the state court decisions, even if wrong, should be accorded deference.  We respectfully submit that, for the reasons detailed in the First Amended Petition and this Reply, the Court should reject the Director's defenses and grant Mr. Broadnax relief.  The Director's arguments are not well founded, and her procedural arguments are subject to exceptions that permit this Court to consider the merits where the claims raise issues of substantial injustice or actual innocence—as these claims do.

The Court should issue a writ of habeas corpus and vacate Mr. Broadnax's conviction and sentence.

## ARGUMENT

I.    **MR. BROADNAX'S CONSTITUTIONAL RIGHTS WERE VIOLATED DURING JURY SELECTION**

A.    **Mr. Broadnax's *Batson* Rights Were Violated by the Prosecutors' Peremptory Strikes of Every Minority Venire Member**

The Constitution's guarantee of Equal Protection prohibits the exclusion of jurors on the basis of their race or assumptions which arise from their race.  *Batson* v. *Kentucky*, 476

U.S. 79, 97-98 (1986).  Here, the prosecution struck all eight minority members of the venire available to serve on Mr. Broadnax's jury, in violation of *Batson*.

The documents recently produced by the Dallas County District Attorney's Office confirm that the prosecutors struck jurors because of their race.  Exhibit A to the Corrected Declaration of Camille M. Knight (ECF 52-1), a spreadsheet used by the prosecution during jury selection, lists the races of the prospective jurors, with the names of the black venire members in bold.  This spreadsheet was created to help the prosecution exercise peremptory strikes to exclude the African-American jurors.

In her Answer, the Director misleadingly suggests that this list was not used by prosecutors during jury selection but was "created in preparation for a second *Batson* hearing held *after* the jury had been selected."  (Answer at 64)  The Director points not to direct evidence or testimony concerning the creation and use of the spreadsheet, but only to the fact that a version of the spreadsheet was attached to an email dated July 22, 2009.  The Director argues that because jury selection concluded on July 20, 2009, the spreadsheet was created after jury selection.  The spreadsheet attached to the July 22 email contains the typewritten portion of Exhibit A, but does not include the handwriting on that document.

The timeline and the handwritten notes on Exhibit A demonstrate that the Director is wrong.  The July 22 email describes the document as a spreadsheet of "the names of African American jurors on the 'qualified pool' of 47."  (Answer at 65)  But this version of the spreadsheet does not reflect the full qualified pool.  On July 9, 2009, venire member George Paradise was accepted to the qualified pool as qualified juror number 47.  But one member of the venire, Ruby Woodward, was subsequently admitted to a hospital because she was suffering from severe brain trauma (RR37: 48-49), and on July 17, three days before jury selection, a forty-eighth qualified juror, James McElroy, was accepted to the qualified pool in order to replace Ms. Woodward.  (RR37: 47-48)

2

The spreadsheet attached to the email provided by the Director lists only the first forty-seven qualified jurors.  It includes Ms. Woodward but not Mr. McElroy.  Such a document would only have been prepared in the time between the acceptance of the forty-seventh qualified juror, Mr. Paradise, and the acceptance of the forty-eighth qualified juror, Mr. McElroy.  Thus, this version of the spreadsheet was prepared between July 9 and July 17, before jury selection took place on July 20.

This conclusion is confirmed by the handwriting on Exhibit A.  In that document, Mr. McElroy is added by hand as qualified juror number 48.  His name was obviously added by hand to the already existing typewritten document on July 17, 2009, when he was added to the venire.  Similarly, the other handwritten notes on Exhibit A were made during jury selection.  They include marginal annotations identifying the venire members who were selected to be on the jury, along with their juror numbers.  It thus appears that although the spreadsheet was marked up by hand during jury selection, the District Attorney's Office never updated the original digital file.  As a consequence, when preparing for the *Batson* hearing to defend their discriminatory strikes, the by-now outdated document was attached to the July 22, 2009 email.

Exhibit A thus confirms that the prosecution selected the jury on the basis of race.  The Director argues that even if these explicitly racial materials were prepared for use at the initial round of jury selection, "such evidence does not show that the challenges were racially motivated."  (Answer at 65)  The Director cites no authority for this proposition and the Supreme Court has consistently instructed otherwise.  Most recently, in *Foster* v. *Chatman*, 136 S. Ct. 1737 (2016), the Court granted habeas relief to a Georgia prisoner convicted of murder and sentenced to death under circumstances similar to the present case.  There, the prosecution's case file contained copies of a jury venire list on which the names of each African-American venire member—and only those venire members—were highlighted, with a legend noting that the highlighting "represents Blacks."  *Id.* at 1744.  In addition, the file contained a typed list of the

3

qualified jurors, with "N" (for "no") appearing beside the names of every qualified African-American venire member but only certain white jurors. *Id.*

The Court concluded that the prosecution's various pretextual explanations for striking two black prospective jurors failed for two main reasons. First, the jury venire list, which Foster obtained through the Georgia Open Records Act, "plainly belie[d] the State's claim that it exercised its strikes in a 'color-blind' manner." *Id.* at 1755. Second, many of the answers African-American venire members offered during *voir dire* that prosecutors characterized as problematic were functionally equivalent to responses given by white jurors who were not challenged by the State. *Id.* at 1750. Accordingly, the Court held that habeas relief was warranted because "[t]wo peremptory strikes on the basis of race are two more than the Constitution allows." *Id.* at 1755.[1]

Similarly, in *Miller-El* v. *Dretke*, 545 U.S. 231, 240-41 (2005), the Court found a *Batson* violation where the prosecution struck 10 of 11, or 91% of the African-American venire members. The court explained that "[h]appenstance is unlikely to produce this disparity." *Id.* at 241. The Court also found the prosecutors' explanation for striking an African-American venire member who expressed reservations about the death penalty not credible, when compared to their decision not to strike a white juror who admitted to "mixed feelings" about the death penalty. *Id.* at 247. The Court noted that while there were other differences between the two prospective jurors, "[n]one of our cases announces a rule that no comparison is probative unless the situation of the individuals compared is identical in all respects, and there is no reason to accept one." *Id.* at 247 n.6.

---

[1] The Director's suggestion (Answer at 67 & n.33) that this Court should ignore *Foster* is both remarkable and incorrect. *Foster* held that the state court unreasonably applied "clearly established Federal law," 28 U.S.C. § 2254(d), in denying *Batson* challenges, as of the petitioner's trial 31 years earlier. *See Foster* v. *Chatman*, 136 S. Ct. 1737, 1761 (2016) (Alito, J., concurring). It is thus indisputable that these same principles applied at the time of Mr. Broadnax's trial eight years ago.

In Mr. Broadnax's case, we have *both* contemporaneous documents like those the Court in *Foster* found established a *Batson* violation, and statistical disparities and implausible explanations like those the Court in *Miller-El* found sufficient.  The spreadsheet with African-American jurors' names "bolded" is essentially the same as the document *Foster* found to "plainly belie" the State's claim that it had acted in a "'color-blind' manner."  And while *Miller-El* found that "happenstance" was "unlikely" to result in 91% of the African-American prospective jurors being struck, 545 U.S. at 241, in Mr. Broadnax's case, the prosecution struck **100%** of the African-Americans.  As in *Miller-El*, minority jurors were struck from Mr. Broadnax's jury after providing functionally equivalent responses to their white counterparts.  For instance, Venire Members Vation, Rivera, Long, Morrison, and Patterson each expressed similar support for the death penalty—on both a quantitative and qualitative basis—to white jurors on the panel.  (*See* First Am. Pet. at 56 n.21, 58, 60-61, 64-65, 67-68)[2]  And the prosecution's explanations for its strikes were illogical and inconsistent.  For example, prosecutors asserted that they were striking all jurors who selected option 3 on a juror questionnaire, a choice which indicated that the juror was categorically opposed to the death penalty.  (RR38: 14)  But five of the eight minority jurors struck circled option 2 ("I believe that the death penalty is appropriate in some murder cases, and I could return a verdict in a proper case which assessed the death penalty.").  (Ex. A at 2)  The prosecution also improperly relied upon the "feeling" they had about certain black and Hispanic venire members.  (RR38: 24)

Finally, the trial court here actually found that the prosecution violated *Batson*.  It unfortunately reached that conclusion only after the prosecution had improperly struck seven minority jurors, and thus failed to correct seven of the eight *Batson* violations.  After denying

---

[2] The Director fails to engage in a side-by-side comparison of white and minority venire members as prescribed by *Miller-El*.  Such a comparison shows, for example, that Jurors Clements and McDonald were seated while Venire Member Vation was struck, even though each quantified their support for the death penalty as a "5" out of 10.  (*See* First Am. Pet. at 58-59)

defense objections to the State's peremptory strikes of the first seven minority jurors, the trial court sustained the defense's motion as to Juror Patterson, the sole remaining African-American venire member.  The court explained that its finding of a violation of the Constitution's Equal Protection Clause was based, in part, on "the fact that there are no African-American jurors on this jury and there was a disproportionate number of African-Americans who were struck." (RR42: 35)  The trial court specifically found that Mr. Broadnax had "shown and the record supports that there was evidence of disparate treatment on the part of the State."  (CR3: 618, Order on Def.'s Batson Objection 1, Aug. 7, 2009)

The trial court's *Batson* ruling as to Juror Patterson establishes that the prosecution's explanations lacked credibility and that there was "evidence of disparate treatment" during the jury selection process.  As the Fifth Circuit held in sustaining another habeas petitioner's *Batson* challenge notwithstanding AEDPA's "deferential review standards," a trial court's finding of a *Batson* violation as to even a single juror carries an implicit finding of prosecutorial incredibility.  *See Hayes* v. *Thaler*, 361 F. App'x 563, 564, 574 & n.10 (5th Cir. 2010).

Taken together, the evidence establishes that the prosecution's strikes of the minority venire members were racially motivated and violated Mr. Broadnax's constitutional rights.  The Court should issue a writ of habeas corpus vacating Mr. Broadnax's conviction and sentence.

### 1. The Prosecution's Case Files Should Be Considered in Connection with Mr. Broadnax's *Batson* Claims

Unable to credibly contest the significance of the newly disclosed prosecution documents, the Director seeks to avoid the true facts by asking that this evidence be shuttered from judicial review under *Cullen* v. *Pinholster*, 563 U.S. 170 (2011).  The Director's reliance on *Pinholster* is misplaced.

6

The evidence at issue—the newly discovered spreadsheet and photo set—was not available to trial counsel or state habeas counsel.  At the time of Mr. Broadnax's trial and state habeas petition, the Dallas County District Attorney's office had a policy that it would not provide such documents to a defendant because they were work product.  (Brandt Aff. ¶ 5)  The Yeatts affidavit, attached as Exhibit A to the Director's Answer, makes clear that the District Attorney later decided to make these "work product" materials available to federal habeas counsel.  Thus, these materials were not available to trial or state habeas counsel, and they should be considered here because there was no way they could have been presented to the state courts.

The Supreme Court discussed this precise possibility, namely the presentation of new evidence bearing on a claim previously presented in state court, in their *Pinholster* opinions. In her dissent, Justice Sotomayor considered the case of a hypothetical petitioner who raised an unsuccessful *Brady* claim in state court, and who later obtained disclosure of additional, previously-withheld *Brady* material after the state court's adjudication of the petitioner's claim. *Pinholster*, 563 U.S. at 214-215 (Sotomayor, J., dissenting).  Justice Sotomayor pointed out that such a petitioner might, under the logic of the *Pinholster* ruling, be disadvantaged, even when compared to a petitioner who failed to present evidence that was available, but was not presented as result of previous counsel's ineffectiveness.  The majority responded that this was not so, and that the dissent's "hypothetical petitioner may well have a new claim." *Pinholster*, 563 U.S. at 186 n. 10.

Since *Pinholster*, several Courts of Appeals, including the Fifth Circuit, have had occasion to address such a circumstance.  Those rulings establish that *Pinholster* does not bar new evidence that "fundamentally alter[s]" the claim originally presented to the state court. S*ee* *Dickens* v. *Ryan*, 740 F.3d 1302, 1320 (9th Cir. 2014); *Escamilla* v. *Stephens*, 749 F.3d 380, 395 (5th Cir. 2014).  The decision in *Wessinger* v. *Cain*, No. 04-cv-637, 2015 WL 4527245

7

(M.D. La. July 27, 2015), *rev'd on other grounds sub. nom. Wessinger* v. *Vannoy*, 864 F.3d 387 (5th Cir. 2017), which applied the Fifth Circuit's ruling in *Escamilla* to new mitigation evidence, illustrates how this doctrine is applied.  The court in *Wessinger* noted that the materials before it went "way beyond what Petitioner presented to the state courts for consideration of this claim below," and concluded that the additional evidence "fundamentally alter[ed] the claim that was presented to the state court such that this Court considers the claim anew."  2015 WL 4527245, at \*6 & n.3.

Here, the documents belatedly provided by the District Attorney offer a previously unavailable window into prosecutors' subjective, race-conscious decision making at the time of jury selection.  They are "material and significantly different and stronger than what [Mr. Broadnax] presented to the state court," *Escamilla*, 749 F.3d at 395; *see Wessinger*, 2015 WL 4527245, at \*16 n.3, and should be considered on federal habeas review in assessing Mr. Broadnax's *Batson* claims.  These documents "fundamentally alter" Mr. Broadnax's *Batson* claims by undermining the race-neutral pretextual explanations prosecutors provided for striking every minority venire member from Mr. Broadnax's jury.[3]

Finally, even if the Court were not permitted to consider these materials, Mr. Broadnax has established *Batson* violations without this evidence.  The trial court itself found disparate treatment, and the trial record alone, as summarized in Mr. Broadnax's petition, establishes that this disparate treatment went beyond juror Patterson and extended to the other minority jurors.  Mr. Broadnax has established a violation of the Equal Protection clause and he is entitled to habeas relief.

---

[3] Mr. Broadnax submits that he is not required to establish "cause and prejudice" to present this new evidence to the Court in these circumstances.  But if such a showing were required, he has established cause and prejudice here.  These materials were unavailable to him and his previous counsel, and he was substantially prejudiced by not having these materials when litigating his *Batson* claims before the state courts.  Further, as in *Sorto* v. *Davis*, 859 F.3d 356, 359, 362 (5th Cir. 2017), any exhaustion requirement here would be excused because the new evidence was unavailable to Mr. Broadnax during state court proceedings.

8

**B.      The Trial Court's Denial of Mr. Broadnax's "For Cause" Challenge to the Seating of a Juror Admittedly Unable to Consider Mitigating Evidence Violated His Clearly Established Constitutional Rights**

The Constitution's Due Process Clause requires that a jury in any capital case consider and give effect to "any relevant mitigating evidence." *Eddings* v. *Oklahoma*, 455 U.S. 104, 113-14 (1982).  When a court denies a capital defendant's "for cause" challenge and seats a venire member who cannot consider mitigating evidence, the Eighth and Fourteenth Amendments to the Constitution require that the sentence be overturned.  *See Ross* v. *Oklahoma*, 487 U.S. 81, 85 (1988).

During jury selection, the trial court improperly denied fourteen "for cause" defense challenges to venire members who demonstrated an inability to consider mitigating evidence, resulting in Mr. Broadnax's exhaustion of all of his peremptory challenges on thirteen unqualified venire members and—worse yet—the seating of one such unqualified juror, John Vessels.  During *voir dire*, Juror Vessels stated that he could not imagine any set of circumstances that would sufficiently mitigate against the imposition of a death sentence for a defendant convicted of capital murder.  (RR35: 79-80)  Juror Vessels elaborated on his juror questionnaire that he would not consider mitigating evidence of a defendant's intoxication, genetics, circumstances of birth, upbringing, and environment, absent evidence of "actual organic brain disfunction [sic]."  (RR57: 241, 243)  In effect, Juror Vessels announced his intention not to follow Texas law, which requires jurors to "tak[e] into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant" in determining whether to impose the death penalty on a defendant convicted of capital murder.  (RR53: 5)

Seating such a juror violated clearly established federal law, as announced by the Supreme Court in *Morgan* v. *Illinois*, 504 U.S. 719, 729 (1992), and the Fifth Circuit, *Soria* v. *Johnson*, 207 F.3d 232, 245 (5th Cir. 2000) (a venire member who indicated during *voir dire* that

9

"he could not consider a defendant's youth in mitigation of the death penalty . . . should have been excused for cause").[4]  Mr. Broadnax is entitled to relief for this violation of his Eighth and Fourteenth Amendment rights.

### 1.     The Procedural Bar Is Inapplicable to Mr. Broadnax's "For Cause" Challenge to the Seating of Juror Vessels

The Director's invocation of a procedural bar to preclude Mr. Broadnax's constitutional challenge to the seating of Juror Vessels is doubly misplaced.

*First*, Mr. Broadnax unambiguously objected "for cause" to Juror Vessels's seating (RR38: 80-81), and expressly argued on direct appeal that the denial of his "for cause" challenge to the seating of Juror Vessels violated his constitutional rights.  (D.A. Appellant's Br. at 81)  The Court of Criminal Appeals overruled Mr. Broadnax's asserted point of error concerning the seating of Juror Vessels on its merits in "great deference to the trial court." *Broadnax* v. *Texas*, No. AP-76207, 2011 WL 6225399, at *16 (Tex. Crim. App. Dec. 14, 2011). Because the Court of Criminal Appeals had every opportunity to review the merits of Mr. Broadnax's claim concerning the seating of Juror Vessels—and in fact did so—the claim is not procedurally defaulted and should be reviewed by this Court.

*Second*, assuming *arguendo* that Mr. Broadnax's objection was insufficient because he did not frame his objection to Juror Vessels's seating broadly enough to encompass his responses to juror questionnaires, the failure to properly frame the objection was a product of trial counsel's ineffective assistance.  Trial counsel's error constitutes cause and prejudice and

---

[4] The Director's suggestion that *Soria* was subsequently overruled *sub silentio* (Answer at 108 n.47) is not correct, both as a matter of case law and Fifth Circuit practice.  First, the Fifth Circuit did not overrule *Soria*'s Due Process holding concerning the seating of biased jurors in *Dorsey* v. *Quarterman*, 494 F.3d 527, 533 (5th Cir. 2007), as that was a case in which the allegedly biased venire members were never seated.  Second, the *Dorsey* three-judge panel "was not empowered to overrule" *Soria* under this Circuit's rule that outside of a rehearing *en banc*, "where holdings in two of [the Circuit's] opinions are in conflict, the earlier opinion controls and constitutes the binding precedent in the circuit."  *Boyd* v. *Puckett*, 905 F.2d 895, 897 (5th Cir. 1990).

therefore excuses any procedural bar to this Court's consideration of Mr. Broadnax's claim that

he was deprived of his constitutional right to a jury that could fairly consider mitigating

evidence.  *See Trevino* v. *Thaler*, 133 S. Ct. 1911, 1918-20 (2013); *Martinez*, 566 U.S. at 7-10.

**II.      MR. BROADNAX'S CONSTITUTIONAL RIGHTS WERE VIOLATED DURING THE PENALTY PHASE OF HIS TRIAL**

> **A.      The Admission of Improper and Misleading Testimony that Mr. Broadnax Is a "Psychopath," and the State's Arguments Based on that Testimony, Violated Mr. Broadnax's Constitutional Rights**

The Fourteenth Amendment's Due Process Clause forbids a state court's

admission of evidence that "is so unduly prejudicial that it renders the trial fundamentally

unfair." *Payne* v. *Tennessee*, 501 U.S. 808, 825 (1991).  Separately, the Due Process Clause

prohibits the prosecution from presenting false or misleading evidence at trial.  *Giglio* v. *United*

*States*, 405 U.S. 150, 153-54 (1972).  The Eighth Amendment further imposes "a special need

for reliability in the determination that death is the appropriate punishment in any capital case."

*Johnson* v. *Mississippi*, 486 U.S. 578, 584 (1988).

At Mr. Broadnax's trial, the State presented to the jury false, erroneous, and

irrelevant testimony concerning whether he is a "psychopath."  The State then used that

testimony to argue, as the central reason why Mr. Broadnax should receive the death penalty,

that he *is* a psychopath.  But in fact, the psychologist who testified concerning psychopathy had

not examined or tested Mr. Broadnax, and there was no scientific basis for the introduction of

this testimony.  Nor was there any factual or scientific basis for the prosecution to argue to the

jury that the State had established he was a psychopath.  And in fact, Mr. Broadnax *is not a*

*psychopath*.

This enormously prejudicial testimony and argument led directly to

Mr. Broadnax's death sentence.  It had the effect of undermining the persuasive mitigation case

Mr. Broadnax presented at the penalty phase of his trial, a case that had otherwise established

that he was not deserving of the death penalty.  In short, the State's improper actions in presenting this testimony and making these arguments were directly responsible for the imposition of his death sentence.  In admitting Dr. Price's unreliable and misleading testimony, and then permitting prosecutors to diagnose Mr. Broadnax as "a psychopath" who will pose "a continuing threat to society that will not ever change" (RR53: 75-77)—a demonstrable falsehood—the prosecution and trial court abandoned the "fundamental conceptions of justice which lie at the base of our civil and political institutions," making Mr. Broadnax's trial fundamentally unfair.  *United States* v. *Lovasco*, 431 U.S. 783, 790 (1977).[5]

Moreover, *Giglio* makes clear that the presentation of false evidence is itself proscribed by the Fourteenth Amendment, without regard to prejudice.  404 U.S. at 153.  By the State's admission, forensic psychologist J. Randall Price was called to the stand for one reason: to inform "the jury's evaluation of future dangerousness."  (RR52: 191)  Dr. Price testified that he had reviewed Mr. Broadnax's "police reports, medical records, jail phone calls," and other information related to the case in order to "educate" jurors about psychopathy so that they could "apply the facts just as well as" he could.  (R52: 220-21)  Dr. Price was then prompted to run through a checklist of twenty factors from a commercially-marketed scale called the Psychopathy Checklist-Revised ("PCL-R") to inform the jury about the "characteristics of a psychopathic personality."  (R52: 218-22)

Dr. Price's testimony was unreliable, irrelevant, and misleading on its face, and Mr. Broadnax's objection should have been sustained by the trial court.  Dr. Price had never examined, tested, or even met Mr. Broadnax, and so could not provide a medical diagnosis on

---

[5] This fundamental fairness claim is not procedurally barred.  Trial counsel objected to the introduction of this evidence.  (RR52: 192-94, 227-28)  The claim was presented to the state habeas court, which denied the claim primarily on the merits, rejecting the claim "if construed as a constitutional claim."  (S.H. Findings ¶¶ 200-33); *cf. Corwin* v. *Johnson*, 150 F.3d 467, 473 (5th Cir. 1998)  In any event, the admission of Dr. Price's testimony was a "fundamental miscarriage of justice" which would overcome any procedural bar.  *Sawyer*, 505 U.S. at 349.

12

the stand.  (First Am. Pet. at 99-105)  In addition, as Dr. John F. Edens, a forensic psychologist and Texas A&M professor, explained in an affidavit submitted in state habeas proceedings, the PCL-R test itself—the subject of Dr. Price's testimony—is dangerously, and demonstrably, unreliable.  Thus, even if Dr. Price had examined Mr. Broadnax and administered the PCL-R test, which he did not, his testimony should not have been permitted.  (App. 107-11)

In its closing argument, the State compounded the Court's constitutional error. The prosecutor took it upon himself to diagnose Mr. Broadnax as a psychopath:  "Dr. Price told you [psychopathy] can't be cured . . . .  And that's the fact, folks.  He will never change.  He will always be a cold-blooded person with no remorse . . . .  And because he's a psychopath and because he'll never change, it is a continuing threat to society that will not ever change."  (RR53: 75-77)

In making this argument based on the Price testimony, the State was presenting a falsehood to the jury.  The prosecutor had no scientific or evidentiary basis to argue that Mr. Broadnax is a psychopath.  And in fact, he is not.  (App. 8)  Even if one accepts the validity of the PCL-R test, that test actually shows that he is *not* a psychopath.  Dr. Stephen A. Thorne, a licensed psychologist, administered the PCL-R test to Mr. Broadnax and determined that Mr. Broadnax is not a psychopath.  (App. 8)  And because "psychopathy is generally considered to be a personality disorder that is not treatable or curable," Dr. Thorne concluded that had the PCL-R been "properly administered to Mr. Broadnax at the time of his trial in 2008, he would not have been found to be a psychopath at that time."  (App. 8 (emphasis in original))

The Director responds by arguing, in essence, that the Fifth Circuit permits the presentation of junk science "[e]ven in federal death penalty cases."  (Answer at 119)  This is not and cannot be the law.  While the Fifth Circuit has held that the reliability standard for expert testimony prescribed in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), does not apply directly to capital sentencing, *see United States* v. *Fields*, 483 F.3d 313, 341-42

13

(5th Cir. 2007),[6] the Director cites no authority, either in this Circuit or elsewhere, that sanctions the presentation of scientifically false testimony and argument during the penalty phase of a capital case. Indeed, the Supreme Court has instructed that Due Process is *always* incompatible with the "deliberate deception of a court and jurors by the presentation of known false evidence." *Giglio*, 405 U.S. at 153. The testimony and argument here were clearly at odds with the requirements of Due Process and the Eighth Amendment which impose "a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson*, 486 U.S. at 584.[7]

### 1. Dr. Thorne's Affidavit Is Properly Considered in Connection with Mr. Broadnax's Claims

The Director argues that the Court should disregard Dr. Thorne's affidavit. It should not.

A habeas court may review evidence not before the state courts if that evidence fundamentally alters the claim presented to the state court, *see supra* Section I.A.1, or demonstrates the petitioner's actual innocence, including of the death penalty. *See Vinson* v. *Mackie*, No. 14-cv-14542, 2016 WL 6595021, at *1 (E.D. Mich. Nov. 8, 2016) (collecting cases). Here, both exceptions apply.

Dr. Thorne's affidavit establishes that Mr. Broadnax is not a "psychopath"—and was not a "psychopath" as of his sentencing. This now-established fact shows that the State's basis for seeking Mr. Broadnax's execution was pure fiction. Because this evidence is "material and significantly different and stronger than what [Mr. Broadnax] presented to the state court," it "fundamentally alter[s]" the claims presented and should be considered on federal habeas review. *Escamilla*, 749 F.3d at 395; *see Wessinger*, 2015 WL 4527245, at *6 n.3.

---

[6] Mr. Broadnax maintains that *Fields* was wrongly decided, and that the Supreme Court's opinion in *Daubert* plainly abrogated *Barefoot* v. *Estelle*, 463 U.S. 880, 899 (1983).
[7] The Director does not contend that Mr. Broadnax's *Giglio* claim is procedurally barred. (*See* Answer at 124-27 (assessing *Giglio* claim on the merits)).

Dr. Thorne's affidavit also demonstrates Mr. Broadnax's actual innocence of the death penalty. In order to impose a death sentence under Texas law, a jury must find from the evidence beyond a reasonable doubt that there "is a *probability* that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc., art. 37.071 § 2(b)(1) (emphasis added). To meet this burden, the State relied primarily on Dr. Price's testimony and the prosecution's arguments therefrom that Mr. Broadnax was a "psychopath." In light of this new evidence establishing that Mr. Broadnax is not a "psychopath," no reasonable juror would have found him eligible for the death penalty under Texas law. Indeed, absent the now disproven evidence that Mr. Broadnax was a "psychopath" who posed "a continuing threat to society that will not ever change," (RR53: 75-77), there was no basis for the jury to conclude that there was a probability that Mr. Broadnax would in fact "commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc., art. 37.071 § 2(b)(1). Mr. Broadnax is innocent of the death penalty, *Sawyer v. Whitley*, 505 U.S. 333, 350 (1992), and the Court should consider Dr. Thorne's affidavit. *See Vinson*, 2016 WL 6595021, at *1.

> **B.      Mr. Broadnax's Trial Counsel Was Ineffective for Failing to Rebut Dr. Price's Misleading Testimony and Establish that Mr. Broadnax in Fact Was Not a "Psychopath"**

A criminal defendant is deprived of his Sixth Amendment right to effective assistance of counsel where: (1) counsel's performance "fell below an objective standard of reasonableness," and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

Here, the prosecution indicated that they intended to call Dr. Price in order to "educate the jury on psychopathy and what a psychopath is." (RR52: 192) At that point, a reasonably competent trial counsel would have readied a rebuttal witness to expose the

15

misleading nature of Dr. Price's testimony and demonstrate that, in fact, Mr. Broadnax is *not* a "psychopath."

*Wiggins* v. *Smith*, 539 U.S. 510 (2003), is instructive. In *Wiggins*, the Court concluded that *Strickland*'s performance standard was not met when defense counsel failed to independently investigate a client's background during the penalty phase of his capital murder trial, in light of reports turned over by prosecutors indicating potentially fruitful grounds for mitigation. The Supreme Court further held that trial counsel's deficient performance met *Strickland*'s prejudice prong because there was "a reasonable probability that at least one juror would have struck a different balance" of mitigating and aggravating factors. *Id.* at 537. Thus, even under AEDPA's deferential review standards, the *Strickland* violation warranted habeas relief. *Id.* at 529, 538.

As in *Wiggins*, Mr. Broadnax's counsel was on notice of the need for further investigation into the reliability and applicability of Dr. Price's testimony. Competent counsel would have both retained an expert to rebut the reliability of the PCL-R test described by Dr. Price (App. 107-11), and to assess whether Mr. Broadnax was, in fact, the "psychopath" the prosecution was portraying him to be. The failure to address this "psychopath" evidence was constitutionally deficient performance. *Wiggins*, 539 U.S. at 525-28. There is no legitimate strategy in which counsel for a defendant facing the death penalty permits his client to be falsely described to the jury as a "psychopath."

Trial counsel's failure to rebut Dr. Price's testimony profoundly prejudiced Mr. Broadnax. Dr. Price (and the prosecutors) became the jury's lone lens into whether Mr. Broadnax was a "psychopath" and their testimony and argument was accepted by the jury. *See People* v. *Ackley*, 870 N.W.2d 858, 867 (Mich. 2015) ("While we cannot say that a battle of the experts would have ensured the defendant's acquittal, counsel's failure to prepare or show up

16

for the battle sufficiently 'undermine[s our] confidence in the outcome' of this case to entitle the defendant to relief." (quoting *Strickland*, 466 U.S. at 694)).

The Director suggests that Mr. Broadnax suffered no prejudice because "Dr. Price did not [himself] state that Broadnax was a psychopath." (Answer at 132)  This argument ignores the reality—and overwhelming impact—of this testimony and the prosecution's use of that testimony.  The lead prosecutor closed his penalty-phase argument by reminding jurors, "Dr. Price told you [psychopathy] can't be cured." (RR53: 75)  On the basis of Dr. Price's testimony, the prosecution urged that jurors return a death sentence on the grounds that "he's a psychopath and because he'll never change, it is a continuing threat to society that will not ever change." (*Id.* at 75-77)

Because there is "a reasonable probability that at least one juror would have" answered the special issue concerning Mr. Broadnax's future dangerousness negatively had trial counsel presented evidence undercutting the reliability of Dr. Price's testimony or demonstrating that Mr. Broadnax was not in fact a "psychopath," counsel's deficient performance resulted in prejudice, depriving Mr. Broadnax of his right to the effective assistance of counsel. *Wiggins*, 539 U.S. at 537.

This claim is not procedurally barred.  Contrary to the Director's suggestion, Mr. Broadnax clearly asserted his claim that trial counsel was deficient for failing to call an expert to disprove Dr. Price's testimony concerning psychopathy on state habeas:  "The failure of defense counsel to adequately investigate, develop and refute the false and misleading evidence of psychopathy, resulted in a breach of duty." (S.H. Appellant's Br. at 90) (quotation marks omitted).  However, to the extent state habeas counsel is found to have failed to adequately raise trial counsel's ineffective assistance, such a failure constitutes cause and prejudice and therefore excuses any procedural bar to this Court's consideration of

17

Mr. Broadnax's claim. *See Trevino* v. *Thaler*, 133 S. Ct. 1911, 1918-20 (2013); *Martinez* v. *Ryan*, 566 U.S. 1, 7-9 (2012).

Moreover, Dr. Thorne's affidavit demonstrates that the State's principal justification for Mr. Broadnax's death sentence was false. This new evidence thus establishes a "material and significantly different and stronger" case of trial counsel's deficient performance than Mr. Broadnax presented in state court. *Escamilla*, 749 F.3d at 395. Had trial counsel properly rebutted the prosecution's portrayal of Mr. Broadnax during the penalty phase, that rebuttal would have shown that Mr. Broadnax is not a psychopath. Because Dr. Thorne's affidavit "fundamentally alter[s]" the claims presented and would have demonstrated Mr. Broadnax's actual innocence of the death penalty (Section II.A.1., *supra*), this evidence and claim should be considered on federal habeas review. *Id.*; *see Wessinger*, 2015 WL 4527245, at *6 n.3.

### III. THE ADMISSION OF THE FRUITS OF AN UNCOUNSELED CUSTODIAL INTERROGATION VIOLATED MR. BROADNAX'S CONSTITUTIONAL RIGHTS

#### A. Mr. Broadnax's Fifth Amendment Rights Were Violated

When an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," the Fifth Amendment demands that he be afforded the opportunity to exercise his "right to the presence of an attorney . . . throughout the interrogation." *Miranda* v. *Arizona*, 384 U.S. 436, 478-79 (1966). Mr. Broadnax was denied his right to counsel both in preparation for and during interrogations conducted by investigative reporters in coordination with the Dallas County Sherriff's Office, while he was in state custody and after he had twice invoked his right to counsel.

The Director argues in response that Mr. Broadnax had been arraigned at the time of these interrogations, as if a criminal defendant's arraignment (while still in a drug-induced psychosis, no less) somehow makes the Fifth Amendment's protection against compelled self-

18

incrimination inoperative.  The Supreme Court has held otherwise.  In *Arizona* v. *Roberson*, 486 U.S. 675 (1988), the Court explained that *Miranda* identified a "right to have counsel present at [any] interrogation" because of the "special ability of the lawyer to help the client preserve his Fifth Amendment rights once the client becomes enmeshed in the adversary process."  *Id.* at 682 n.4.  And in *Montejo* v. *Louisiana*, 556 U.S. 778 (2009), the Court emphasized that its precedents, including *Miranda*, "protect the right to have counsel during custodial interrogation—which right happens to be guaranteed (once the adversary judicial process has begun) by *two* sources of law," the Fifth and Sixth Amendments.  *Id.* at 795.

Contrary to the Director's contention (Answer at 30 n.12), the Fifth Circuit applies the two-pronged test set forth in *Blocker*, 104 F.3d at 725, in assessing alleged violations of the Fifth Amendment.  *See United States* v. *Posada Carriles*, 541 F.3d 344, 355-56 (5th Cir. 2008).  Thus, for the reasons discussed in Mr. Broadnax's opening brief (First Am. Pet. at 21-22), his media interrogators plainly functioned as State agents, since:  (1) the Dallas County Sherriff's Office's facilitated the reporters' interrogations of Mr. Broadax while he was in State custody, and (2) the interviewers' questioning demonstrated a clear intent to "assist law enforcement efforts or to further [their] own ends" by eliciting highly incriminating information to be used against Mr. Broadnax at trial.  *See United States* v. *Blocker*, 104 F.3d 720, 725 (5th Cir. 1997).  These interrogations led to the videotaped confessions that were the principal evidence offered against Mr. Broadnax during the guilt/innocence phase of his trial.

## B.      Mr. Broadnax's Sixth Amendment Rights Were Plainly Violated

### 1.      The Trial Court's Admission of Mr. Broadnax's Uncounseled Interrogations Abridged His Right to Counsel

The Sixth Amendment guarantees defendants against whom adversary criminal proceedings have been initiated the assistance of counsel at any "critical stage of pretrial proceedings."  *Brewer* v. *Williams*, 430 U.S. 387, 398-99, 404 (1977).

19

The Director concedes that adversary criminal proceedings had begun by the time Mr. Broadnax appeared before a magistrate on July 21, 2008, but contends that the Sixth Amendment was nonetheless inapplicable to Mr. Broadnax's uncounseled interrogations because those interrogations did not amount to a "critical stage" of the proceedings.  The premise is on its face absurd; what could be a more "critical phase" of proceedings than an interrogation that results in videotaped confessions that form the centerpiece of the prosecution's case?  The Director relies on an inapposite decision denying habeas relief to a petitioner whose lawyer was not present during trial testimony that had no relevance to the petitioner's defense, *Woods* v. *Donald*, 135 S. Ct. 1372 (2015).  *Woods* is nothing like Mr. Broadnax's case, in which he was denied counsel with respect to videotaped statements that resulted in his conviction for capital murder.

While *Woods* is not on point, the Supreme Court's decision in *Rideau* v. *Louisiana*, 373 U.S. 723 (1966) is.  That case overturned a conviction based on a defendant's confession during an interview broadcast via "moving picture film."  The *Rideau* Court found the denial of counsel in these circumstances to be a straightforward violation of the "right to counsel."  *Id.* at 724, 726 & n.3.  The Court explained that the right to counsel was plainly implicated when the State failed to appoint counsel to advise a defendant of "his right to stand mute" when confronting a television interview before his community (and prospective jury pool).  *Id.* at 727.

This is precisely the violation suffered by Mr. Broadnax.  Without the benefit of a lawyer who would certainly have advised him to refuse to participate in the media interrogations (as Mr. Broadnax's trial counsel did immediately following his belated appointment, S.H. RR3 at 136), Mr. Broadnax's case, which lacked any real evidence linking him to the crimes, was transformed into one in which the jury viewed videotapes of the media interrogations every day of the guilt phase as well as during the penalty phase.

20

### 2.    The Texas Fair Defense Act Violates the Sixth Amendment

The Director does not deny that Texas embraces a distinct "minority practice" in refusing to appoint a lawyer on behalf of criminal defendants before, at, or immediately after their initial appearance. *See Rothgery* v. *Gillespie Cnty.*, 554 U.S. 191, 205 (2008). Indeed, the Director concedes that the U.S. Supreme Court recently "disapproved of one [Texas] county's practice of waiting to appoint counsel until after a critical stage occurs." (Answer at 48 (emphasis removed))

The practice that the Supreme Court disapproved in *Rothgery* is enshrined in Texas law. The Texas Fair Defense Act sanctions a period of delay after a defendant's right to counsel attaches, regardless of whether an uncounseled defendant encounters a critical stage during that time. The Supreme Court has instructed that "minority" jurisdictions such as Texas must be especially careful to ensure that no critical stage occurs during the state-sanctioned gap between the attachment of a defendant's Sixth Amendment rights and the appointment of counsel. *See Rothgery*, 554 U.S. at 212. Because the Texas Fair Defense Act provides no safeguard to Texas defendants that they will be provided counsel even after that right attaches, it is plainly inconsistent with the Sixth Amendment.

### 3.    Mr. Broadnax's Fifth and Sixth Amendment Claims Are Not Procedurally Barred

The Director argues that Mr. Broadnax's claims arising from his uncounseled media interrogations while in state custody are procedurally barred. They are not.

Mr. Broadnax unambiguously argued at trial and on direct appeal that he was deprived of both his Fifth Amendment rights and his Sixth Amendment right to counsel. (RR43: 105-09; D.A. Appellant's Br. at 86-92) Mr. Broadnax's argument on direct appeal incorporated, by direct quotation, trial counsel's "objection to the introduction of the[] tapes" of Mr. Broadnax's uncounseled interrogations while in State custody "under the Fifth, Sixth, Eight

21

and 14 Amendments of the United States Constitution." (*Id.* at 87)  His argument on direct appeal was thus explicitly grounded on the fact that he endured an uncounseled custodial interrogation conducted by a State agent.  (*Id.* at 89; *see* Answer at 26 n.9)  Indeed, as the Director acknowledges, the Texas Court of Criminal Appeals understood Mr. Broadnax to be appealing on Fifth Amendment grounds.  And so did the State, which noted in its response to Mr. Broadnax's state habeas application that "at trial and on appeal, applicant alleged a violation of his Fifth Amendment rights" in connection with the uncounseled custodial interrogations. (Answer at 25-26 & nn.9 -10; State's Answer to S.H. App. at 14)[8]

With respect to Mr. Broadnax's Sixth Amendment claim, the Director's procedural bar argument ignores the stated basis on which Mr. Broadnax appealed the admission of the recordings, *i.e.*, "the Sixth Amendment to the U.S. Constitution."  (D.A. Appellant's Br. at 89)  As part of his clearly labeled Sixth Amendment claim, Mr. Broadnax specifically identified the fact that "Mr. Lollar had been appointed Mr. Broadnax's attorney . . . the day after the interview" and that Mr. Broadnax was never asked whether he had counsel at the time of the interviews.  (*Id.* at 90)  These facts form the basis for Mr. Broadnax's Sixth Amendment claim that he was denied counsel at a critical stage of the proceedings and they were explicitly noted on his direct appeal.

In any event, the trial court's admission of the fruits of these highly prejudicial constitutional violations was a fundamental miscarriage of justice.  *Sawyer* v. *Whitley*, 505 U.S. 333, 350 (1992).  Without the videotapes, which constituted the only real evidence linking

---

[8] If the court concludes that state habeas counsel failed to adequately raise a Fifth Amendment claim for relief, such a failure would constitutes cause and prejudice and excuse any procedural bar to this Court's consideration of Mr. Broadnax's claim.  *See Trevino* v. *Thaler*, 133 S. Ct. 1911, 1918-20 (2013); *Martinez*, 566 U.S. at 7-9.

Mr. Broadnax to these crimes, no reasonable juror would have found him to be guilty or imposed

a death sentence.[9]

## IV.   MR. BROADNAX HAS ESTABLISHED HE IS ENTITLED TO RELIEF FOR ADDITIONAL CONSTITUTIONAL VIOLATIONS

As discussed in the First Amended Petition, Mr. Broadnax is also entitled to

habeas corpus relief for the following reasons:

- Mr. Broadnax's uncounseled confessions while in State custody were not voluntary, but were the product of coercion in violation of the Fourteenth Amendment.  The Supreme Court has consistently held that a defendant's Due Process rights are rooted not in *Miranda* but in the common law, which rejects any prerequisite that State agents play a proximate role in obtaining a confession for it to be considered involuntary.  *Schneckloth* v. *Bustamante*, 412 U.S. 218, 226 (1973); *see, e.g.*, *King* v. *Rudd*, 168 Eng. Rep. 160, 160-61 (K.B. 1783) (Lord Mansfield, C.J.) (cited in *Dickerson* v. *United States*, 530 U.S. 428, 433 (2000)).  Because Mr. Broadnax's argument on direct appeal incorporated, by direct quotation, trial counsel's objection that his client did not possess "the ability to voluntarily consent," the claim is not procedurally barred.  It is also not barred because the admission of the recordings was a fundamental miscarriage of justice (Section III.B.3, *supra*).  Accordingly, as the Director acknowledges, this claim is subject to *de novo* review.  (Answer at 52 n.28)

- The trial court's failure to hold a hearing to determine the voluntariness of Mr. Broadnax's statements during custodial interrogation violated his Fourteenth Amendment rights.  A defendant need not, as the Director suggests, prove that his confession was the product of State-sponsored coercive conduct in order to trigger a *hearing*, which is required whenever there is "a factual issue about the voluntariness of a confession."  *United States* v. *Guanespen-Portillo*, 514 F.3d 393, 398 (5th Cir. 2008).  Any procedural default on this claim is excused because the admission of the videotapes was a fundamental miscarriage of justice (Section III.B.3, *supra*).

- Mr. Broadnax was denied effective assistance of counsel as required by the Sixth Amendment, when his trial counsel failed to present available expert testimony about Mr. Broadnax's severely limited capacity to consent to the media interrogations.

- After finding a *Batson* violation based on "evidence of disparate treatment [of minority jurors] on the part of the State," the trial court violated Mr. Broadnax's Equal Protection rights by ordering only the reseating of a single African-American juror.  (CR3: 618, Order on Def.'s Batson Objection 1, Aug. 7, 2009)  A single juror's reseating cannot remedy a *Batson* violation affecting the entire jury selection process.  *See Hayes* v. *Thaler*, 361 F. App'x 563, 574-75 & n.10 (5th Cir. 2010).

---

[9] Any procedural bar of Mr. Broadnax's claim that the Texas Fair Defense Act violates the Sixth Amendment on its face is excused by trial counsel's failure to raise such a claim *at trial*.  (*See* First Am. Pet. at 48-49)  The Director's reliance on decisions discussing ineffective assistance of *appellate* counsel is entirely misplaced.  (*See* Answer at 46-47)

- Mr. Broadnax was denied effective assistance of counsel as required by the Sixth Amendment, when his trial counsel failed to object to the trial court's imposition of a constitutionally insufficient remedy for a *Batson* violation.

- The admission of evidence discovered during an illegal and unjustified search of Mr. Broadnax's cell at the behest of State prosecutors violated his Fourth Amendment rights. *Stone* v. *Powell*, 428 U.S. 465 (1976), on which the Director relies to preclude consideration of this claim, is inapposite, because the trial court denied Mr. Broadnax a "full and fair litigation" of his Fourth Amendment claim by declining to resolve any of the factual questions at hand and instead relying on a state court decision that contradicts clearly established federal law forbidding "a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court." *United States* v. *Cohen*, 796 F.2d 20, 23 (2d Cir. 1986)). Far from advocating the creation of a new rule, Mr. Broadnax requests that this Court apply the Supreme Court's decision in *Bell* v. *Wolfish*, 441 U.S. 520, 557 (1979), which underpinned the Texas Court of Criminal Appeals' decision to overrule the state-law decision on which its ruling in this case was based. *See Lutz* v. *Collins*, No. 04-08-00496-CV, 2009 WL 330958, at *4 (Tex. App. Feb. 11, 2009) (recognizing privacy rights for prison inmates).

- The prosecution's introduction of false and misleading evidence at trial concerning Mr. Broadnax's supposed affiliation with a gang violated his Eighth and Fourteenth Amendment rights. As Lisa Taylor-Austin explained in her affidavit, "Mr. Broadnax did not belong to any gang." The purported "admissions" identified by the Director lack any reliable indicators of gang membership. (App. 25-32) Ms. Taylor-Austin's affidavit may be considered on federal habeas review because it "fundamentally alter[s]" the claims presented to the state court by demonstrating the falsity of the evidence on which the State relied. *Escamilla*, 749 F.3d at 395; *see Wessinger*, 2015 WL 4527245, at *6, n.3.

- The qualification of Barrett Keith Nelson as an expert rendered Mr. Broadnax's trial fundamentally unfair, in violation of his Fourteenth Amendment rights. Mr. Nelson lacked any specialized knowledge of the subject of his testimony, the Gangster Disciples gang, and relied exclusively on a website purportedly operated by that gang. Such an investigation is plainly insufficient to confer expertise. Unlike in *Styron* v. *Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001) (cited in Answer at 145), in which the petitioner failed to object at all during trial, here, Mr. Broadnax clearly objected to the admission of Mr. Nelson's testimony during trial both on state evidentiary grounds and because "it is a violation of the 1st and 14th Amendment to the United States Constitution." (RR40: 6) Accordingly, the contemporaneous objection bar is plainly inapplicable.

- Mr. Nelson's testimony also violated Mr. Broadnax's right to free expression under the First and Fourteenth Amendments because Mr. Broadnax's purported gang membership was based entirely on his artistic expressions, which had no bearing on the crime for which he was charged. The Director's reliance on dicta in *Dawson* v. *Delaware*, 503 U.S. 159, 165 (1992), is inapposite since the State did not purport to prove that a Gangster Disciples member would pose any danger *while in prison*, as required to

24

withstand First Amendment scrutiny.[10]

- Trial counsel was constitutionally ineffective in failing to present rebuttal witnesses concerning the testimony about Mr. Broadnax's purported gang membership. In proper context, Mr. Broadnax's actions were entirely inconsistent with gang membership. (App. 25-26) Providing such context was trial counsel's job. The failure to do so led to his client's sentence of death.

- The State violated Mr. Broadnax's Equal Protection rights in seeking the death penalty because of his race. Professor Jonathan Sorensen's study demonstrates that at the time of Mr. Broadnax's conviction, the Dallas County District Attorney disproportionately sought the death penalty against racial minorities while white offenders had to commit more serious crimes in order for the District Attorney to pursue the death penalty. *See Sorto* 859 F.3d 359, 362 (finding exhaustion requirement excused where the evidence at issue was unavailable during state court proceedings). Moreover, because Professor Sorensen's study "fundamentally alter[s]" Mr. Broadnax's Equal Protection claims, it may be freely considered by this Court. *Escamilla*, 749 F.3d at 395.

## V.    CONCLUSION

For the foregoing reasons and those discussed in the First Amended Petition, we respectfully request that this Court issue a writ of habeas corpus and vacate Mr. Broadnax's conviction and sentence.[11] We respectfully further request that the Court order discovery and hold an evidentiary hearing to resolve these claims and any factual issues relating to the claims.

Dated:    October 4, 2017

Respectfully submitted,

By: /s/  Steven C. Herzog

Steven C. Herzog (admitted *pro hac vice*)
  N.Y. Attorney Registration No. 2173623)
  sherzog@paulweiss.com
Adam Ross Mandelsberg (admitted *pro hac vice*)
  N.Y Attorney Registration No. 5237631
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
 1285 Avenue of the Americas
 New York, NY  10019
 (212) 373-3000

Camille M. Knight
  T.X. Bar No. 24027125
  cknight@bp-g.com
BURLESON, PATE & GIBSON LLP
900 Jackson Street, Suite 330
Dallas, TX  75202
(212) 871-4900

*Counsel for Petitioner*
*James Garfield Broadnax*

---

[10] Although the relevant point heading in the Director's Answer suggests that this claim is procedurally barred, the Director states otherwise in a footnote:  "The Director does not believe that a federal procedural bar applies to this claim."  (Answer at 148-49 & n.56)
[11] Mr. Broadnax relies upon the arguments set forth in the First Amended Petition with respect to any claims not discussed herein.

25

## CERTIFICATE OF SERVICE

I hereby certify that, on October 4, 2017, the foregoing document was transmitted electronically via CM/ECF to the Clerk of the Court for filing and transmittal of Notice of Electronic Filing to all attorneys of record who are ECF registrants.

Dated:  October 4, 2017                    */s/ Camille M. Knight*
                                           Camille M. Knight